Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**DEBTORS' MOTION**
**FOR ENTRY OF INTERIM AND FINAL ORDERS**
**(I) AUTHORIZING THE DEBTORS TO (A) PAY PREPETITION EMPLOYEE**
**WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE**
**EXPENSES AND (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS AND**
**(II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state the following in support of this motion (this "Motion"):

**Relief Requested**

1.    The Debtors seek entry of interim and final orders, substantially in the forms

attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"),

authorizing the Debtors to (a) pay prepetition wages, salaries, other compensation, and

reimbursable employee expenses and (b) continue employee compensation and benefits programs

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (N/A); and Voyager Digital, LLC
(8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY
10003.

in the ordinary course, including payment of certain prepetition obligations related thereto. In addition, the Debtors request that the Court schedule a final hearing 21 days after the commencement of these chapter 11 cases, or as soon thereafter as is convenient for the Court to consider approval of this Motion on a final basis.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012.  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 362(d), 363(b), 507(a), and 541(b)(1) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

## Background

5.      On July 5, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Stephen Ehrlich, Chief Executive Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions*

(the "First Day Declaration"), filed contemporaneously with this Motion and incorporated by reference herein.[2]

6.      The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrent with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

**The Debtors' Workforce**

7.      As of the Petition Date, the Debtors employ approximately 351 individuals across the United States, Denmark, Canada, France, and Latin America (each, an "Employee" and collectively, the "Employees") on a part- or full-time basis.  In the United States, the Debtors employ approximately 284 Employees, of which approximately 245 are salaried, exempt, and approximately 39 are nonexempt and paid on an hourly basis.  None of the Employees are represented by a union or collective bargaining unit.

8.      From time to time, the Debtors retain approximately 83 engineering consultants (the "Engineer Consultants") sourced either from technology firms, such as ThoughtWorks, Inc. ("ThoughtWorks"), or direct consultant contracts to provide specialized technology services vital to the operation of the Debtors' business.[3]  The Engineer Consultants roles include project managers, application developers, quality test analysts, and experience designers.  In addition, in

---

[2]    Capitalized terms not defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

[3]    The Debtors retain approximately 73 Engineer Consultants from ThoughtWorks and approximately 10 Engineer Consultants through direct contracts with such Engineer Consultant.

Latin America, the Debtors retain approximately ten consultants ("LatAm Consultants," and together with the Engineer Consultants, the "Independent Contractors") from Terminal.io ("Terminal"), a recruiting and human resources company, to provide specialized regional services relating to software development and engineering.

9.      The Employees and the Independent Contractors perform a wide variety of functions critical to the Debtors' business operations.  For instance, the Employees and Independent Contractors include, among other positions, highly trained engineers with institutional knowledge who are intimately familiar with the technology that is at the core of the Debtors' business, product managers that oversee the various services provided by the Debtors, and customer experience personnel who assist customers in using the Debtors' products and services.  Without the continued, uninterrupted services of their Employees and Independent Contractors, the Debtors' ability to conduct business and administer their estates will be substantially impaired and the Debtors' ongoing business could be severely and adversely affected. Maintaining a properly-incentivized management team and workforce to fulfill the Debtors' obligations with respect to these chapter 11 cases, along with their day-to-day business responsibilities, is vital to maintaining a high level of business performance, in order to maximize value for all of the Debtors' stakeholders.

10.      Moreover, the Employees and Independent Contractors rely exclusively on their compensation and benefits to pay their daily living expenses and to support their families.  These individuals could experience significant financial hardship were the Debtors not permitted to continue paying wages and salaries, providing employee benefits, and maintaining existing employee programs in the ordinary course of business.  Accordingly, the Debtors respectfully

submit that the relief requested herein is necessary and appropriate under the facts and circumstances of these chapter 11 cases.

**Employee Compensation and Benefits**

11.    The Debtors seek to minimize the personal financial hardship their workforce would suffer if Employee-related prepetition obligations are not paid or remitted when due or as expected.  By this Motion, the Debtors seek authority to (a) pay and honor certain prepetition claims relating to, among other things, Wage Obligations, Withholding and Deductions Obligations, Reimbursable Expenses, Health and Welfare Coverage and Benefits, Workers' Compensation Programs, the 401(k) Retirement Savings Plan, Paid Leave, Non-Insider Severance Benefits, and certain other benefits that the Debtors have historically provided in the ordinary course (each as defined below, and collectively, the "Employee Compensation and Benefits") and (b) pay all costs incident to the Employee Compensation and Benefits including any prepetition amounts related thereto.[4]

12.    Subject to Court approval, the Debtors intend to continue their applicable prepetition Employee Compensation and Benefits in the ordinary course.  Out of an abundance of caution, the Debtors further request confirmation of their right to modify, change, and/or discontinue any of their Employee Compensation and Benefits and/or to implement new programs, policies, and benefits in the ordinary course of business on a postpetition basis during these chapter 11 cases without the need for further Court approval, subject to applicable law.

13.    As of the Petition Date, the Debtors estimate that the total amount outstanding on account of the Employee Compensation and Benefits is approximately $2,382,652, $1,810,117 of

---

[4]    The Debtors have provided details regarding certain administrative costs where applicable, but, for the avoidance of doubt, request authority to pay all administrative costs associated with the Employee Compensation and Benefits, regardless of whether such costs are specifically described herein.

which will become due and owing within the first 21 days of these chapter 11 cases. The Debtors

do not believe any Employee is owed prepetition amounts in excess of the $15,150 priority cap set

forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, but out of an abundance of

caution, the Debtors seek to pay any amounts above the cap only under the Final Order.

14.    Specifically, the Debtors seek authority to pay the following aggregate amounts

related to prepetition amounts owed on account of the Employee Compensation and Benefits:

| RELIEF SOUGHT | INTERIM AMOUNT | FINAL AMOUNT |
|---|---|---|
| **Employee Compensation and Benefits** | | |
| Unpaid Wages | $797,640 | $797,640 |
| Unpaid Independent Contractor Obligations | $529,112 | $1,101,647 |
| Director Compensation (Final Order Only) | -- | -- |
| Withholding and Deduction Obligations | $378,540 | $378,540 |
| Payroll Processing Fees | $1,500 | $1,500 |
| Reimbursable Expenses | $45,000 | $45,000 |
| *Employee Compensation Total* | $1,751,792 | $2,324,327 |
| **Benefits and Other Programs** | | |
| Health and Welfare Coverage and Benefits | $38,900 | $38,900 |
| Workers' Compensation Program | $4,250 | $4,250 |
| 401(k) Retirement Savings Plan Contributions | $15,175 | $15,175 |
| Paid and Unpaid Leave | -- | -- |
| Employee Assistance Program | -- | -- |
| Non-Insider Severance Benefits (Final Order Only) | -- | -- |
| Non-Insider Ad Hoc Bonuses (Final Order Only) | -- | -- |
| *Employee Benefits Total* | $58,325 | $58,325 |
| **Total Employee Compensation and Benefits** | $1,810,117 | $2,382,652 |

## I.    Employee Compensation.

### A.    Wage Obligations.

15.    The Debtors pay Employees' wages, salaries, and other compensation (excluding

bonuses, reimbursable expenses, severance, and paid leave) on either a semimonthly or biweekly

basis (collectively, the "Wage Obligations"). Because nonexempt Employees are generally paid

in one-week arrears, certain Employees may be owed accrued but unpaid Wage Obligations as of the Petition Date. Wage Obligations may also be due and owing as of the Petition Date because of, among other things, potential discrepancies between the amounts paid and the amounts that Employees believe they should have been paid, which, upon resolution, may reveal that additional amounts are owed to such Employees. The Debtors' Wage Obligations include payroll payments of approximately $65,000 a month made to non-Debtor Voyager Digital Brokerage LTD for approximately 11 Employees. As of the Petition Date, the Debtors estimate that there are no amounts outstanding with respect to such Wage Obligations.

16.     As of the Petition Date, the Debtors estimate that they owe approximately $797,640 in accrued and unpaid Wages (the "Unpaid Wages"), all of which will become due and owing within the first 21 days of these chapter 11 cases. Accordingly, the Debtors seek authority to pay any accrued Unpaid Wages and to continue to pay Wage Obligations on a postpetition basis in the ordinary course of business and consistent with past practices, including, upon approval of the Final Order, Wage Obligations owed to non-Debtor Voyager Digital Brokerage LTD.

   **B.     Independent Contractor Obligations**

17.     The Debtors pay their Independent Contractors for services performed to support the operations of the Debtors' business (the "Independent Contractor Obligations"). On average, the Debtors pay Terminal approximately $150,000 and ThoughtWorks approximately $1 million per month for any wages and administrative fees required for the employment of the Independent Contractors. Continuing to pay the Independent Contractors is also critical to minimizing any disruptions to the Debtors' business operations. As of the Petition Date, the Debtors estimate that Independent Contractors are owed an aggregate of approximately $1,101,647 on account of accrued but unpaid Independent Contractor Obligations (collectively, the "Unpaid Independent Contractor Obligations"), $529,112 of which will become due and owing within the first 21 days

of these chapter 11 cases. Accordingly, the Debtors seek authority to pay any accrued Unpaid Independent Contractor Obligations and to continue to pay Independent Contractor Obligations on a postpetition basis in the ordinary course of business and consistent with past practices.

### C. Non-Employee Director Compensation (Final Order Only).

18.     The Debtors maintain several boards of directors, which include a total of nine non-Employee directors and one Employee director (each, a "Director"). The Directors' fees are paid quarterly in arrears. Directors are also entitled to expense reimbursement for reasonable out-of-pocket expenses in connection with travel and other business-related expenses arising from their Director duties (the "Director Compensation").

19.     The Debtors do not believe they owe any prepetition amounts on account of the Director Compensation. As such, the Debtors seek authority to pay any prepetition amounts solely out of an abundance of caution, and to continue to pay the Director Compensation on a postpetition basis in the ordinary course of business and consistent with past practices, pursuant to the Final Order only.

## II.     Withholdings, Deductions, and Payroll Processing.

### A.     Withholding and Deduction Obligations.

20.     During each applicable payroll period, and subject to applicable law, the Debtors routinely deduct certain amounts from Employees' paychecks, including any garnishments, child support, or similar deductions, as well as other pre-tax and after-tax deductions payable pursuant to certain employee benefit plans discussed herein, such as an Employee's share of healthcare benefits and insurance premiums, 401(k) contributions, legally ordered deductions, and other miscellaneous deductions (collectively, the "Deductions"). The Debtors remit the Deductions to the appropriate third-party recipients.

21.     In addition to the Deductions, certain federal and state laws require that the Debtors withhold certain amounts from Employees' gross pay related to federal, state, and local income taxes, as well as Social Security and Medicare taxes (collectively, the "Employee Payroll Taxes") for remittance to the appropriate federal, state, and local taxing authorities.  The Debtors must also match the Employee Payroll Taxes from their own funds and pay, based on a percentage of gross payroll, additional amounts for federal and state unemployment insurance and Social Security and Medicare taxes (the "Employer Payroll Taxes," and together with the Employee Payroll Taxes, the "Payroll Taxes," and the Payroll Taxes together with the Deductions, the "Withholding and Deduction Obligations").  The Payroll Taxes are generally processed and forwarded to the appropriate federal, state, and local taxing authorities in accordance with remittance intervals and deadlines established by those taxing authorities.

22.     In the last twelve (12) months, the Debtors accumulated a monthly average of approximately $1,700,00 on account of the Withholding and Deduction Obligations.  As of the Petition Date, the Debtors estimate that they owe approximately $378,540 on account of accrued but unpaid Withholding and Deduction Obligations.  Moreover, the Debtors believe that the Withholding and Deduction Obligations are not property of their estates.  However, out of an abundance of caution, the Debtors seek authority to remit the Withholding and Deduction Obligations to the respective third-party payees and to continue to honor and process the Withholding and Deduction Obligations on a postpetition basis in the ordinary course of business and consistent with past practices.

**B.     Payroll Processing Fees.**

23.     The Debtors contract with TriNet Group, Inc. (the "Wage and Benefit Service Provider") as a third-party payroll service provider to support payroll processing and other payroll-related services related to certain Withholding and Deduction Obligations for the Debtors'

Employees.  Payroll is processed approximately five days before the pay date and the Wage and

Benefit Service Provider pulls the funds from the Debtors' accounts five days before the pay date.

The Debtors pay the Wage and Benefit Service Provider approximately $9,000 per month on

account of such payroll services (the "Payroll Processing Fees").  As of the Petition Date, the

Debtors estimate that they owe the Wage and Benefit Service Provider approximately $1,500 on

account of the Payroll Processing Fees, all of which will become due and owing within the first

21 days of these chapter 11 cases.  Failure to pay the Wage and Benefit Service Provider in the

future could lead to a delay in payroll processing and delayed disbursement of payroll taxes to the

appropriate third parties to the detriment of the Employees and the Debtors' operations.

Accordingly, the Debtors seek authority to remit to the Wage and Benefit Service Provider the

Payroll Processing Fees and to continue administering payroll postpetition in the ordinary course

of business and consistent with past practices.

## III.    Reimbursable Expenses and Corporate Cards.

### A.    Reimbursable Expenses.

24.    In the ordinary course of business, the Debtors pay or reimburse Employees for

certain reasonable and customary approved expenses that such Employees incur in the scope of

their employment (the "Reimbursable Expenses").  Reimbursable Expenses typically include

travel expenses and associated costs such as the cost of Wi-Fi during travel.  Generally, Employees

incur Reimbursable Expenses through the use of personal funds, and the Employee may be held

personally liable for any unpaid obligations.  The Debtors' inability to reimburse such expenses

would impose hardship on such individuals where the obligations were incurred for the Debtors'

benefit.  Employees must provide a receipt for Reimbursable Expenses which are then approved

by the Employee's manager and the head of the department.

25.     Employees who pay for their own Reimbursable Expenses up front apply for reimbursement of such expenses by submitting receipts through SAP Concur ("Concur"), the Debtors' expense management system.   Once the Debtors determine that the charges are for allowable Reimbursable Expenses and comply with the Debtors' policies and procedures, the Debtors typically reimburse such Employees for the Reimbursable Expenses.   Reimbursements are processed using expense management software from Concur.   The Debtors pay approximately $100,000 each quarter for these services, exclusive of incremental transaction fees that are incurred if the contracted base transaction count is exceeded.   Once reimbursements are processed, they are paid through payroll on a nontaxable basis.

26.     Reimbursable Expenses are incurred by the Employees as business expenses on the Debtors' behalf and with the understanding that such expenses will be reimbursed or otherwise covered by the Debtors.   The Debtors' inability to reimburse the Reimbursable Expenses or pay the Corporate Card would impose a hardship on the Employees where such individuals incurred obligations for the Debtors' benefit.

27.     As of the Petition Date, the Debtors estimate that they owe approximately $45,000 on account of Reimbursable Expenses, all of which will become due and owing within the first 21 days of these chapter 11 cases.   Accordingly, to avoid harming Employees who incurred Reimbursable Expenses, the Debtors seek authority to satisfy any accrued but unpaid prepetition Reimbursable Expenses and to continue to pay the Reimbursable Expenses on a postpetition basis in the ordinary course of business and consistent with past practices.

**B.     Corporate Cards.**

28.     In addition to Reimbursable Expenses, the Debtors have historically provided approximately six senior level Employees with credit cards (the "Corporate Cards") issued by Brex to cover legitimate business expenses, including travel expenses and certain vendor payments,

incurred in the ordinary course of business in connection with their employment (the "Corporate Card Program").[5]  The Debtors are not seeking relief with respect to the Corporate Card Program in this Motion.  Instead, they are seeking authority to continue the Corporate Card Program in the ordinary course in the Cash Management Motion.

## IV.    Health and Welfare Coverage and Benefits.

29.    The Debtors offer their Employees the ability to participate in a number of health insurance and benefits programs, including, among other programs, medical, prescription, dental, and vision coverage plans; life and accident insurance; disability insurance; health savings account, health reimbursement account, and flexible spending account programs, and other employee benefit plans (collectively, the "Health and Welfare Coverage and Benefits").

30.    The Debtors' Health and Welfare Coverage and Benefits include:

a.    "Medical and Prescription Coverage": The Debtors provide a combination of fully insured and self-insured medical and prescription insurance programs in conjunction with various insurance carriers, as well as health savings account, health reimbursement account, and flexible spending account programs.  In the past twelve (12) months, the Debtors incurred approximately $1.5 million on account of the Medical and Prescription Coverage.  As of the Petition Date, the Debtors estimate they owe approximately $33,650 on account of incurred but yet unpaid Medical and Prescription Coverage claims and associated administrative fees.

b.    "Life, AD&D, and Disability Insurance Coverage": The Debtors provide Employees with basic life insurance, accidental death and dismemberment insurance, and long-term disability insurance.  In the past twelve (12) months, the Debtors incurred approximately $20,000 on account of the Life, AD&D, and Disability Insurance Coverage, including voluntary products.  As of the Petition Date, the Debtors

---

[5]    The Corporate Card Program is further described in the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief* (the "Cash Management Motion") filed contemporaneously herewith.

estimate they owe approximately $1,000 on account of unpaid Life, AD&D, and Disability Insurance Coverage.

c.   "<u>Dental and Vision Insurance Coverage</u>": The Debtors provide a combination of fully insured and self-insured dental and vision plans in connection with various insurance carriers.  In the past twelve (12) months, the Debtors incurred approximately $100,000 on account of the Dental and Vision Insurance Coverage.  As of the Petition Date, the Debtors estimate they owe approximately $4,250 on account of unpaid Dental and Vision Insurance Coverage.

31.     As of the Petition Date, the Debtors estimate they owe approximately $38,900, in the aggregate, on account of unpaid Health and Welfare Coverage and Benefits, all of which will become due and owing within the first 21 days of these chapter 11 cases.  As described above, failure to continue the Health and Welfare Coverage and Benefits could cause Employees to experience severe hardship and make it difficult to retain the workforce.  Accordingly, the Debtors seek authority to pay any prepetition amounts owed on account of the Health and Welfare Coverage and Benefits and to continue the Health and Welfare Coverage and Benefits on a postpetition basis in the ordinary course of business and consistent with past practices.

**V.    Workers' Compensation Program.**

32.     The Debtors maintain workers' compensation insurance for Employees at the levels required by applicable laws in the states in which the Debtors operate (collectively, the "<u>Workers' Compensation Program</u>").   In certain U.S. states, such as Ohio and Alaska, the Worker's Compensation Program is operated directly by the state.  The Debtors maintain coverage for the Workers' Compensation Program in all other states through The Hartford.  All Employees participate in the Workers' Compensation Program and each Employee is insured up to approximately $2 million per occurrence pursuant to the workers' compensation policy with The Hartford.  The Debtors pay approximately $130,000 annually to the various states and Hartford for maintaining the Workers' Compensation Program.

33.     The Debtors must continue the claim assessment, determination, adjudication, and payment process pursuant to the Workers' Compensation Program without regard to whether such liabilities were outstanding before the Petition Date to ensure that the Debtors comply with applicable workers' compensation laws and requirements.[6]

34.     As of the Petition Date, there are no open claims under the Workers' Compensation Program and the Debtors estimate that they owe approximately $4,250 on account of the Workers' Compensation Program.    Because the Debtors are statutorily and/or contractually obligated to maintain the Workers' Compensation Program, their inability to do so may result in adverse legal consequences that disrupt the chapter 11 process.    Thus, the Debtors request the authority to (a) continue the Workers' Compensation Program in the ordinary course of business on a postpetition basis, and (b) modify the automatic stay solely to allow Employees to assert claims under the Workers' Compensation Program.

**VI.     The 401(k) Plans.**

35.     The Debtors offer their eligible Employees the opportunity to participate in the Voyager Digital, LLC Retirement Plan, a 401(k) retirement savings plan (the "401(k) Retirement Savings Plan") administered by TransAmerica Retirement Solutions, LLC ("TransAmerica").    The 401(k) Retirement Savings Plan allows for Employees to set aside money for retirement by making pre-tax contributions to the 401(k) and/or after-tax contributions to a Roth 401(k) up to limits set by the Internal Revenue Code.    Each Employee's 401(k) contributions are deducted automatically from each paycheck.    The Debtors match the Employees' 401(k) Retirement Savings Plan dollar-for-dollar up to 4% of the Employee's compensation (the "401(k) Retirement Savings Plan

---

[6]    The Debtors' Workers' Compensation Program may change postpetition in the ordinary course of business due to changes in applicable laws and regulations and the Debtors' ability to meet requirements thereunder.

Contributions"). The Employee's contributions are fully vested on the Employee's date of hire, and the Debtors' 401(k) Retirement Savings Plan Contributions are subject to vest 25% for each year of employment. Employees are fully vested in the 401(k) Retirement Savings Plan Contributions after four years of employment. In the last twelve (12) months, the Debtors' monthly payments and disbursements on account of the 401(k) Retirement Savings Plan Contributions averaged approximately $68,450. As of the Petition Date, the Debtors estimate that there is $15,175 outstanding with respect to the 401(k) Retirement Savings Plan. Out of an abundance of caution, the Debtors request authority to honor any prepetition obligations on account of the 401(k) Retirement Savings Plan and to continue the 401(k) Retirement Savings Plan on a postpetition basis in the ordinary course of business consistent with past practice.

**VII.    Paid Leave.**

36.    The Debtors maintain several paid and unpaid leave benefit programs for their Employees, providing paid leave for their Unlimited PTO Policy, Holidays, Other Paid Leave policies, and providing unpaid leave for Family and Medical Leave and other Unpaid Leave policies (each as defined below, and collectively, the "Paid and Unpaid Leave").

37.    The Debtors offer an unlimited paid time off policy ("Unlimited PTO Policy") to the Employees. Under the Unlimited PTO Policy, employees are afforded the flexibility to take planned time off for vacation, sick, or personal reasons to the extent the Employee's supervisors or managers have approved such leave. Employees may begin using this time off after ninety days of employment. As the Debtors employ an Unlimited PTO Policy, there is no accrual of unused PTO and thus Employees will not receive compensation for "unused" vacation time should they stop working for the Debtors for any reason.

38.    In addition, the Debtors provide certain other forms of Paid and Unpaid Leave, including:

- Nine (9) paid holidays throughout the year, during which Employees are not required to work and are paid their base rate of pay (the "<u>Holidays</u>");

- unpaid leave under the Family and Medical Leave Act for: (a) birth, adoption, or foster care, (b) family care, (c) medical emergencies, (d) military exigencies, and (e) military caregiving needs (the "<u>Family and Medical Leave</u>"); and

- other paid and unpaid leaves of absence for personal reasons, many of which are required by law, including missed work time in the ordinary course of business for bereavement leave, jury or court attendance, time spent voting, military leave, or salary continuation medical leave (the "<u>Other Paid Leave</u>") and unpaid leaves of absence for medical leaves, domestic abuse leaves, and personal leaves (the "<u>Unpaid Leave</u>").

These other forms of Paid and Unpaid Leave do not involve incremental cash outlays beyond standard payroll obligations.

39.    The Debtors believe that the continuation of the Unlimited PTO Policy in accordance with prior practice is essential to maintaining Employee morale during these chapter 11 cases.  Further, the policies are broad-based programs upon which all Employees have come to depend.  The Debtors anticipate that their Employees will utilize any Paid Leave in the ordinary course of business, which will not create any material cash flow requirements beyond the Debtors' normal payroll obligations.  As a result, the Debtors seek authority to allow eligible Employees to use their Paid Leave postpetition in the ordinary course of business consistent with past practice.

## VIII.    Additional Benefits Programs.

### A.    The Employee Assistance Program.

40.    The Debtors offer an employee assistance program (the "<u>Employee Assistance Program</u>") to current Employees, which is administered by FEI Behavioral Health through TriNet.  The Employee Assistance Program provides Employees and their family members with confidential guidance and various resources including, without limitation, services for (a) in-person help with short-term issues, (b) unlimited phone access to legal, financial, and

work-life services, (c) a discount on in-person consultations with network lawyers, (d) financial consultations and referrals, and (e) work/life services for assistance with child care, finding movers, kennels and pet care, and vacation planning. The Employee Assistance Program is included in the monthly fee paid to TriNet, and as such, the Debtors do not make any separate payments on account of the Employee Assistance Program. As of the Petition Date, the Debtors estimate that there are no amounts outstanding with respect to the Employee Assistance Program. The Debtors request authority to honor any prepetition obligations on account of the Employee Assistance Program and to continue the Employee Assistance Program on a postpetition basis in the ordinary course of business consistent with past practice.

## IX.    Non-Insider Severance Benefits (Final Order Only).

41.    The Debtors provide severance benefits ("Non-Insider Severance Benefits") to non-insider Employees in the event of a termination by the Debtors that is not for "cause," such as terminations due to a lack of work, a reduction in workforce, or position elimination, pursuant to certain policies maintained by the Debtors (the "Non-Insider Severance Programs"). The Non-Insider Severance Benefits are generally paid in lump sum installments in accordance with the payroll schedule, but the Debtors reserve the discretion to pay severance in a single lump-sum payment.

42.    The Non-Insider Severance Programs are critical to maintaining Employee morale and loyalty. Current Employees depend on the Non-Insider Severance Programs upon their separation from the Debtors, and increased uncertainty around the Non-Insider Severance Programs will have an adverse impact on Employee morale and may cause current Employees to seek outside employment. Any instability in the Debtors' workforce will hinder the Debtors' ability to strengthen their financial and operational foundation at this critical juncture. Moreover, as a condition to receiving benefits under the Non-Insider Severance Programs, the Debtors

17

typically require that each eligible Employee execute a release agreement releasing any claims held against the Debtors.

43.    The Debtors do not believe they owe any prepetition amounts on account of the Non-Insider Severance Benefits.  As such, the Debtors seek authority to pay any prepetition amounts solely out of an abundance of caution, and to continue to pay the Non-Insider Severance Benefits on a postpetition basis in the ordinary course of business and consistent with past practices, pursuant to the Final Order only.

**X.    Non-Insider Ad Hoc Bonuses (Final Order Only).**

44.    The Debtors offer ad hoc bonuses to certain non-insider Employees (the "Non-Insider Ad Hoc Bonuses").  The Non-Insider Ad Hoc Bonuses are contingent upon factors such as the Employees' successful employment for a predetermined period of time, or successful individual and company performance.

45.    The Debtors do not believe they owe any prepetition amounts on account of the Non-Insider Ad Hoc Bonuses.  As such, the Debtors seek authority to pay any prepetition amounts solely out of an abundance of caution, and to continue to pay the Non-Insider Ad Hoc Bonuses on a postpetition basis in the ordinary course of business and consistent with past practices, pursuant to the Final Order only.

**XI.    Key Employee Retention Program.**

46.    The Debtors, in consultation with its advisors, is working to establish an appropriate retention program to incentivize key Employees to remain with the Debtors post-petition while the Employees work to maximize the value of the Debtors' estates.  The Debtors will seek the necessary Court approval at the appropriate time.  For the avoidance of doubt, the Debtors is not seeking approval of a key employee retention program through this motion.

<u>**Basis for Relief**</u>

I.      **Sufficient Cause Exists to Authorize the Debtors to Honor the Employee Compensation and Benefits Obligations.**

      A.      **Certain of the Employee Compensation and Benefits Are Entitled to Priority Treatment.**

      47.      Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle the majority of the Employee Compensation and Benefits to priority treatment.  As priority claims, the Debtors are required to pay these claims in full to confirm a chapter 11 plan.  *See* U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims, given priority under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, for (a) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual and (b) contributions to an employee benefit plan).  To the extent that an Employee receives no more than $15,150 on account of claims entitled to priority, the relief sought with respect to compensation only affects the timing of payments to Employees and does not have any material negative impact on recoveries for general unsecured creditors.  Indeed, the Debtors submit that payment of the Employee Compensation and Benefits at this time enhances value for the benefit of all interested parties.  Finding, attracting, and training new qualified talent would be extremely difficult and would most likely require higher salaries, guaranteed bonuses, and more comprehensive compensation packages than are currently provided to Employees.

      B.      **Payment of Certain Employee Compensation and Benefits Is Required by Law.**

      48.      The Debtors seek authority to pay the Withholding and Deductions Obligations to the appropriate third-party payees.  These amounts principally represent Employee earnings that governments, Employees, and judicial authorities have designated for deduction from Employees' wages.  Indeed, certain Withholding and Deduction Obligations are not property of the Debtors'

estates because the Debtors have withheld such amounts from Employees' wages on another party's behalf. *See* 11 U.S.C. §§ 541(b)(1), (d). Further, federal and state laws require the Debtors to withhold certain tax payments from Employees' wages and to pay such amounts to the appropriate taxing authority. 26 U.S.C. §§ 6672, 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that a state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between the debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). Because the Withholding and Deduction Obligations may not be property of the Debtors' estates, the Debtors request authorization to transmit the Withholding and Deduction Obligations to the proper parties in the ordinary course of business.

49.    Similarly, state laws require the Debtors to maintain the Workers' Compensation Programs. If the Debtors fail to maintain the Workers' Compensation Programs, state laws may prohibit the Debtors from operating in those states. Payment of all obligations related to the Workers' Compensation Programs is therefore crucial to the Debtors' continued operations and the success of these chapter 11 cases.

## II.    Payment of the Employee Compensation and Benefits Is Warranted Under Section 363(b)(1) of the Bankruptcy Code and the Doctrine of Necessity.

50.    Courts generally acknowledge that it is appropriate to authorize the payment (or other special treatment) of prepetition obligations in appropriate circumstances. *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 175 (Bankr. S.D.N.Y. 1989) (granting authority to pay prepetition wages); *see also In re James A. Phillips, Inc.*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (granting authority to pay prepetition claims of suppliers who were potential lien claimants).

In authorizing payments of certain prepetition obligations, courts have relied on several legal theories, rooted in sections 1107(a), 1108, 363(b), 507, and 105(a) of the Bankruptcy Code.

51.    Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." *Id.*  Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.*

52.    Consistent with a debtor's fiduciary duties, courts have also authorized payment of prepetition obligations under section 363(b) of the Bankruptcy Code where a sound business purpose exists for doing so.  *See, e.g.*, *In re Ionosphere Clubs*, 98 B.R. at 175 (discussing prior order authorizing payment of prepetition wage claims pursuant to section 363(b) and noting that relief is appropriate where payment is needed to "preserve and protect its business and ultimately reorganize, retain its currently working employees and maintain positive employee morale"); *see also In re James A. Phillips, Inc.*, 29 B.R. at 397 (considering section 363 in affirming decision allowing the debtor to pay prepetition claims of suppliers who were potential lien claimants). Specifically, the business judgment standard requires that a debtor "articulate some business justification, other than mere appeasement of major creditors . . . ." *In re Ionosphere Clubs*, 98 B.R. at 175.

53.     In addition, courts may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code.  Section 105(a) codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  Under section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business.  *See In re C.A.F. Bindery, Inc.*, 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996); *see also In re Fin. News Network Inc.*, 134 B.R. 732, 735–36 (Bankr. S.D.N.Y. 1991) ("The 'doctrine of necessity' stands for the principle that a bankruptcy court may allow pre-plan payments of prepetition obligations where such payments are critical to the debtor's reorganization.").  Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").  *See Ionosphere Clubs*, 98 B.R. at 176.

54.     The Debtors submit that the payment of the Employee Compensation and Benefits represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is therefore justified under sections 105(a) and 363(b) of the Bankruptcy Code.  Paying prepetition wages, employee benefits, and similar obligations will benefit the Debtors' estates and their creditors by allowing the Debtors' business operations to continue without interruption.  Indeed, the Debtors believe that without the relief requested herein, Employees may seek alternative employment opportunities, perhaps with the Debtors' competitors.  Such a development would deplete the Debtors' workforce, thereby hindering the Debtors' ability to operate their business and likely diminishing stakeholder confidence in the Debtors' ability to successfully reorganize.  The loss of valuable Employees and

the resulting need to recruit new personnel (and the costs attendant thereto) would be distracting at this crucial time when the Debtors need to focus on stabilizing their business operations. Accordingly, there can be no doubt that the Debtors must do their utmost to retain their workforce by, among other things, continuing to honor all wage, benefit, and related obligations, including the prepetition Employee Compensation and Benefits.

55.    In addition, the majority of Employees rely exclusively on the Employee Compensation and Benefits to satisfy their daily living expenses.  Consequently, Employees will be exposed to significant financial difficulties if the Debtors are not permitted to honor their obligations related thereto.  Failure to satisfy such obligations will jeopardize Employee morale and loyalty at a time when Employee support is critical to the Debtors' businesses.  Furthermore, if this Court does not authorize the Debtors to honor their various obligations under the insurance programs described herein, Employees will not receive health coverage and may therefore be obligated to pay certain healthcare claims that the Debtors have not satisfied.  The loss of healthcare coverage will result in considerable anxiety for Employees (and likely Employee attrition) at a time when the Debtors need their Employees to perform their jobs at peak efficiency. Additionally, Employee attrition would cause the Debtors to incur additional expenses to find appropriate and experienced replacements, severely disrupting the Debtors' operations at this critical juncture.

56.    The importance of a debtor's employees to its operations has been repeatedly recognized by courts in this jurisdiction, and such courts have granted relief similar to the relief requested herein.  *See, e.g.*, *In re GTT Communications, Inc.*, No. 21-11880 (MEW) (Bankr. S.D.N.Y. November 30, 2021) (order authorizing debtors to continue employee compensation and benefit programs and pay certain prepetition obligations related thereto on a postpetition basis);

*In re Grupo Posadas S.A.B. de C.V.*, No. 21-11831 (SHL) (Bankr. Nov. 17, 2021) (same);

*In re GBG USA Inc.*, No. 21-11369 (MEW) (Bankr. S.D.N.Y. September 1, 2021) (same);

*In re Lakeland Tours, LLC*, No. 20-11647 (JLG) (Bankr. S.D.N.Y. Aug. 13, 2020) (same);

*In re Jason Indus. Inc.*, No. 20-22766 (RDD) (Bankr. S.D.N.Y. July 27, 2020) (same);

*In re Frontier Commc'ns. Corp.*, No. 20-22476 (RDD) (Bankr. S.D.N.Y. May 26, 2020) (same).

57.     Accordingly, the Debtors respectfully request that the Court authorize the Debtors
to pay any accrued and unpaid prepetition amounts on account of the Employee Compensation
and Benefits and to continue the Employee Compensation and Benefits on a postpetition basis in
the ordinary course of business and consistent with past practices.

## III.    The Debtors Seek a Waiver of the Automatic Stay to the Extent It Applies to Workers' Compensation Claims.

58.     Section 362(a)(1) of the Bankruptcy Code operates to stay:

> [T]he commencement or continuation, including the issuance or
> employment of process, of a judicial, administrative, or other action
> or proceeding against the debtor that was or could have been
> commenced before the commencement of the case under this title, or
> to recover a claim against the debtor that arose before the
> commencement of the case under this title[.]

Section 362 of the Bankruptcy Code, however, permits a debtor or other party-in-interest to request
a modification or termination of the automatic stay for "cause."  11 U.S.C. § 362(d)(1).

59.     If and to the extent that section 362(a) is applicable to claims under the Workers'
Compensation Programs, the Debtors seek authorization, under section 362(d) of the Bankruptcy
Code, to permit current and former employees to proceed with any claims under the Workers'
Compensation Program in the appropriate judicial or administrative forum.  The Debtors believe
that cause exists to modify the automatic stay, if and to the extent applicable, because the Debtors
have an obligation to continue to abide by applicable workers' compensation laws and
requirements, and interrupting the administration of any claims under the Workers' Compensation

Program could have a detrimental effect on the financial well-being and morale of Employees and lead to the departure of certain Employees who are critical at this juncture.  Such departures could cause a severe disruption in the Debtors' businesses to the detriment of all parties-in-interest.

## Processing of Checks and Electronic Fund Transfers Should Be Authorized

60.     The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business.  In addition, under the Debtors' existing cash management system, which is described in further detail in a separate motion, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Employee Compensation and Benefits obligations.  Accordingly, the Debtors believe that checks or wire transfer requests that are not related to authorized payments, will not be honored inadvertently.  Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

## The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

61.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support the relief requested herein.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

62.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**Reservation of Rights**

63.     Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

**Motion Practice**

64.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

## **Notice**

65.     The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable:  (a) the United States Trustee for the Southern District of New York; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the lender under the Debtors' prepetition loan facility; (d) the United States Attorney's Office for the Southern District of New York; (e) the Internal Revenue Service; (f) the Toronto Stock Exchange; (g) the attorneys general in the states where the Debtors conduct their business operations; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

66.     No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order and

Final Order granting the relief requested herein and such other relief as the Court deems

appropriate.

Dated:  July 6, 2022
New York, New York

/s/ Joshua A. Sussberg
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:           jsussberg@kirkland.com
                    cmarcus@kirkland.com
                    christine.okike@kirkland.com
                    allyson.smith@kirkland.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (___) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS**
**TO (A) PAY PREPETITION EMPLOYEE WAGES, SALARIES,**
**OTHER COMPENSATION, AND REIMBURSABLE**
**EXPENSES AND (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS AND**
**(II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"), (a) authorizing, but not directing, the Debtors to (i) pay certain prepetition employee wages, salaries, other compensation, and reimbursable employee expenses and (ii) continue employee benefits programs in the ordinary course, including payment of certain prepetition obligations related thereto; and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012; and that this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (N/A); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in

the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court

having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion

were appropriate under the circumstances and no other notice need be provided; and this Court

having reviewed the Motion and having heard the statements in support of the relief requested

therein at a hearing before this Court (the "Hearing"); and this Court having determined that the

legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief

granted herein; and upon all of the proceedings had before this Court; and after due deliberation

and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____,

2022, at__:__ _.m., prevailing Eastern Time.  Any objections or responses to entry of a final order

on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____, 2022,

and shall be served on:  (a) the Debtors, Voyager Digital Holdings, Inc., 33 Irving Place, Suite

3060, New York, New York 10003, Attn: David Brosgol; (b) proposed counsel to the Debtors,

Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A.

Sussberg, P.C., Christopher Marcus, P.C., Christine A. Okike, P.C., and Allyson B. Smith; (c) the

Office of The United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006,

New York, New York 10014, Attn: Richard Morrissey and Mark Bruh; and (d) counsel to any

statutory committee appointed in these chapter 11 cases.

3.      The Debtors are authorized, but not directed, to continue and/or modify, change, or

discontinue the Employee Compensation and Benefits and to honor and pay, in the ordinary course

and in accordance with the Debtors' prepetition policies and prepetition practices, any obligations

on account of the Employee Compensation and Benefits, irrespective of whether such obligations arose prepetition or postpetition; *provided*, that pending entry of the Final Order, the Debtors shall not make any payment to, or on account of, any individual with respect to any prepetition claim on account of the Employee Compensation and Benefits in excess of the priority cap set forth in sections 507(a)(4) or 507(a)(5) of the Bankruptcy Code; *provided*, *further*, that payments on account of the Director Compensation and Non-Insider Ad Hoc Bonuses, shall not be made by this Interim Order and shall be made solely pursuant to the Final Order.

4.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to any prepetition amounts owed to their Employees.

5.     Nothing in this Interim Order authorizes the Debtors to accelerate any payments, including outstanding claims with respect to Reimbursable Expenses, not otherwise due prior to the date of the Final Hearing.

6.     The Debtors shall not make any non-ordinary course bonus, incentive, or severance payments to their Employees or any Insiders (as such term is defined in section 101(31) of the Bankruptcy Code) without further order of this Court.  For the avoidance of doubt, no bonus, incentive, or severance payments shall be made to any Insider without further order of this Court. Nothing in the Motion or this Interim Order shall constitute a determination by the Court as to whether any individual seeking payment pursuant to this Interim Order is or is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code.  Nothing in the Motion or this Interim Order should be construed as approving any transfer pursuant to section 503(c) of the Bankruptcy Code, and a separate motion will be filed for any requests that are governed by section

503(c) of the Bankruptcy Code; *provided* that nothing herein shall prejudice the Debtors' ability to seek approval for such relief pursuant to section 503(c) of the Bankruptcy Code at a later time.

7.      The automatic stay of section 362(a) of the Bankruptcy Code, to the extent applicable, is hereby lifted to permit, without further order of this Court:  (a) current or former Employees to proceed with their claims (whether arising prior to or subsequent to the Petition Date) under the Workers' Compensation Programs in the appropriate judicial or administrative forum; (b) insurers, including but not limited to The Hartford, and third-party administrators to handle, administer, defend, settle, and/or pay workers' compensation claims and direct action claims; (c) the Debtors to continue the Workers' Compensation Programs and pay any amounts relating thereto in the ordinary course; and (d) insurers, including but not limited to The Hartford, and third-party administrators providing coverage for any workers' compensation or direct action claims to draw on any and all collateral and/or prefunded loss accounts provided by or on behalf of the Debtors therefor, if and when the Debtors fail to pay and/or reimburse any insurers and third-party administrators for any amounts in relation thereto.  The modification of the automatic stay in this paragraph pertains solely to claims under the Workers' Compensation Programs and direct action claims.

8.      Nothing herein (a) alters or amends the terms and conditions of the Workers' Compensation Programs; (b) relieves the Debtors of any of their obligations under the Workers' Compensation Programs; (c) precludes or limits, in any way, the rights of any insurer to contest and/or litigate the existence, primacy, and/or scope of available coverage under the Workers' Compensation Programs; or (d) creates a direct right of action against any insurers or third-party administrators where such right of action does not already exist under non-bankruptcy law.

9.      The Debtors are authorized, but not directed, to forward any unpaid amounts on account of Withholding and Deduction Obligations to the appropriate third-party recipients or taxing authorities in accordance with the Debtors' prepetition policies and practices.

10.     The Debtors are authorized, but not directed, to pay costs and expenses incidental to payment of the Employee Compensation and Benefits obligations, including all administrative and processing costs and payments to outside professionals.

11.     Nothing contained herein is intended or should be construed to create an administrative priority claim on account of the Employee Compensation and Benefits obligations.

12.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order without any duty of further inquiry and without liability for following the Debtors' instructions.

13.     Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed:  (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors

that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  Any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.  The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to any prepetition amounts owed to their Employees.

14.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

15.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

16.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

17.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE [●]
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

---

### FINAL ORDER (I) AUTHORIZING THE DEBTORS
### TO (A) PAY PREPETITION EMPLOYEE WAGES, SALARIES,
### OTHER COMPENSATION, AND REIMBURSABLE
### EXPENSES AND (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS AND
### (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"), (a) authorizing, but not directing, the Debtors to (i) pay certain prepetition employee wages, salaries, other compensation, and reimbursable employee expenses and (ii) continue employee benefits programs in the ordinary course, including payment of certain prepetition obligations related thereto; and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012; and that this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (N/A); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The Debtors are authorized, but not directed, to continue and/or modify, change, or discontinue the Employee Compensation and Benefits and to honor and pay, in the ordinary course and in accordance with the terms of the Debtors' prepetition policies and prepetition practices, any obligations on account of the Employee Compensation and Benefits, irrespective of whether such obligations arose prepetition or postpetition.

3.      The Debtors shall not make any non-ordinary course bonus, incentive, or severance payments to their Employees or any Insiders (as such term is defined in section 101(31) of the Bankruptcy Code) without further order of this Court.  For the avoidance of doubt, no bonus, incentive, or severance payments shall be made to any Insider without further order of this Court. Nothing in the Motion, the Interim Order, or this Final Order shall constitute a determination by the Court as to whether any individual seeking payment pursuant to this Final Order is or is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code.

4.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to any prepetition amounts owed to their Employees.

5.      The automatic stay of section 362(a) of the Bankruptcy Code, to the extent applicable, is hereby lifted to permit, without further order of this Court:  (a) current or former employees to proceed with their claims (whether arising prior to or subsequent to the Petition Date) under the Workers' Compensation Programs in the appropriate judicial or administrative forum; (b) insurers, including but not limited to The Hartford, and third-party administrators to handle, administer, defend, settle, and/or pay workers' compensation claims and direct action claims; (c) the Debtors to continue the Workers' Compensation Programs and pay any amounts relating thereto in the ordinary course; and (d) insurers, including but not limited to The Hartford, and third-party administrators providing coverage for any workers' compensation or direct action claims to draw on any and all collateral and/or prefunded loss accounts provided by or on behalf of the Debtors therefor, if and when the Debtors fail to pay and/or reimburse any insurers and third-party administrators for any amounts in relation thereto.  The modification of the automatic stay in this paragraph pertains solely to claims under the Workers' Compensation Programs and direct action claims.

6.      Nothing herein (a) alters or amends the terms and conditions of the Workers' Compensation Programs; (b) relieves the Debtors of any of their obligations under the Workers' Compensation Programs; (c) precludes or limits, in any way, the rights of any insurer to contest and/or litigate the existence, primacy, and/or scope of available coverage under the Workers'

Compensation Programs; or (d) creates a direct right of action against any insurers or third-party administrators where such right of action does not already exist under non-bankruptcy law.

7.    The Debtors are authorized, but not directed, to forward any unpaid amounts on account of Withholding and Deduction Obligations to the appropriate third-party recipients or taxing authorities in accordance with the Debtors' prepetition policies and practices.

8.    The Debtors are authorized, but not directed, to pay costs and expenses incidental to payment of the Employee Compensation and Benefits obligations, including all administrative and processing costs and payments to outside professionals.

9.    Nothing contained herein is intended or should be construed to create an administrative priority claim on account of the Employee Compensation and Benefits obligations.

10.    The Debtors shall not make any payments on account of any Non-Insider Severance Benefits arising after the Petition Date in violation of section 503(c) of the Bankruptcy Code; *provided* that nothing herein shall prejudice the Debtors' ability to seek approval of relief pursuant to section 503(c) of the Bankruptcy Code at a later time.

11.    The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

12.    Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed:  (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute

any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  Any payment made pursuant to this Final Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

13.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

14.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

15.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

16.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE [●]
UNITED STATES BANKRUPTCY JUDGE