Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC. *et al.*,[1] | Case No. 22-10943 (___) |
| Debtors. | (Joint Administration Requested) |

### DECLARATION OF JARED DERMONT REGARDING THE DEBTORS' MARKETING PROCESS AND IN SUPPORT OF THE DEBTORS' CHAPTER 11 PETITIONS AND FIRST DAY MOTIONS

I, Jared Dermont, declare as follows under penalty of perjury:

1.   I am a Managing Director and head of the Financial Institutions Group (the "FIG Group") at Moelis & Company LLC ("Moelis"), an investment banking firm that has its principal office at 399 Park Avenue, 5th Floor, New York, New York 10022.  Among the businesses and products that fall within the purview of the FIG Group are cryptocurrency, banks, asset managers, securities exchanges, and insurance companies.  I also oversee Moelis' special purpose acquisition company advisory and capital markets businesses.  Moelis has been engaged

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (N/A); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

as the proposed investment banker to the above-captioned debtors and debtors-in-possession (collectively, the "Debtors").

2.  I submit this declaration (this "Declaration") to inform the United States Bankruptcy Court for the Southern District of New York (the "Court") and other parties in interest of the Debtors' prepetition efforts to effectuate an out-of-court transaction as an alternative to filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code.

3.  A detailed description surrounding the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Steve Ehrlich, Co-Founder and Chief Executive Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously with and incorporated by reference herein.

4.  Unless otherwise indicated, all facts set forth in this Declaration are based upon (a) my personal knowledge of the prepetition marketing process, (b) information learned from my review of relevant documents, or (c) information I received from Moelis or the Debtors' other advisors. I am not being specifically compensated for this testimony other than through payments that are proposed to be received by Moelis as a professional retained by the Debtors. If I were called upon to testify, I could and would competently testify to the facts set forth herein. I am authorized to submit this Declaration on behalf of the Debtors.

## Qualifications

5.  Moelis is an investment banking firm with its principal office located at 399 Park Avenue, 5th Floor, New York, New York 10022. Moelis is a registered broker-dealer with the United States Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority. Moelis was founded in 2007 and is a wholly-owned subsidiary of Moelis & Company Group LP. Moelis & Company Group LP, together with its subsidiaries, has

approximately 1,000 employees based in offices in North America, South America, Europe, the Middle East, and Asia. Moelis & Company Group LP is a subsidiary of Moelis & Company, a public company listed on the New York Stock Exchange.

6. Moelis provides a broad range of financial advisory and investment banking services to its clients, including (a) general corporate finance; (b) mergers, acquisitions, and divestitures; (c) corporate restructurings; (d) special committee assignments; and (e) capital raising. Moelis and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 cases. Moelis' business reorganization professionals have served as financial advisors and/or investment bankers in numerous cases, including: *In re Knotel, Inc.*, No. 21-10146 (MFW) (Bankr. D. Del. Mar. 12, 2021); *In re CBL & Assocs. Props., Inc.*, No. 20-35226 (DRJ) (Bankr. S.D. Tex. Dec. 30, 2020); *In re Energy Alloys Holdings, LLC*, No. 20-12088 (MFW) (Bankr. D. Del. Nov. 23, 2020); *In re Jason Indus., Inc.*, No. 20-22766 (RDD) (Bankr. S.D.N.Y. Aug. 27, 2020); *In re The Hertz Corp.*, No. 20-11218 (MFW) (Bankr. D. Del. July 30, 2020); *In re Extraction Oil & Gas, Inc.*, No. 20-11548 (CSS) (Bankr. D. Del. Aug. 11, 2020); *In re The McClatchy Co.*, No, 20-10418 (MEW) (Bankr. S.D.N.Y. May 18, 2020); *In re Internap Technology Solutions Inc.*, No. 20-22393 (RDD) (Bankr. S.D.N.Y. May 5, 2020); *In re Rentpath Holdings, Inc.*, No. 20-10312 (BLS) (Bankr. D. Del. Mar. 10, 2020); *In re Sanchez Energy Corp.*, No. 19-34508 (MI) (Bankr. S.D. Tex. Oct. 21, 2019); *In re Monitronics Int'l, Inc.*, No. 19-33650 (DRJ) (Bankr. S. D. Tex. Aug. 1, 2019); *In re Aegerion Pharmaceuticals, Inc.*, No. 19-11632 (MG) (Bankr. S.D.N.Y. July 10, 2019); *In re Joerns WoundCo Holdings, Inc.*, No. 19-11401 (JTD) (Bankr. D. Del. July 25, 2019); *In re FTD Cos.*, No. 19-11240 (LSS) (Bankr. D. Del. July 2, 2019); *In re Hexion Holdings LLC*, No. 19-10684 (KG) (Bankr. D. Del. May 15, 2019); *In re Aegean Marine Petroleum Network Inc.*,

22-10943-mew    Doc 16    Filed 07/06/22    Entered 07/06/22 04:28:28    Main Document
Pg 4 of 9

No. 18-13374 (MEW) (Bankr. S.D.N.Y. Feb. 20, 2019); *In re Parker Drilling Company, Inc.*, No. 18-36958 (MI) (Bankr. S.D. Tex. Jan. 15, 2019); *In re Aralez Pharmaceuticals US Inc.*, No. 18-12425 (MG) (Bankr. S.D.N.Y. Oct. 31, 2018); *In re iHeartMedia, Inc.*, No. 18-31274 (MI) (Bankr. S.D. Tex. July 24, 2018); *In re Global A&T Electronics Ltd.*, No. 17-23931 (RDD) (Bankr. S.D.N.Y. Feb. 26, 2018); *In re Toys "R" US, Inc.*, No. 17-34665 (KLP) (Bankr. E.D. Va. Nov. 21, 2017); *In re TK Holdings, Inc.*, No. 17-11375 (BLS) (Bankr. D. Del. Aug. 30, 2017); *In re Basic Energy Services, Inc.*, No. 16-12320 (KJC) (Bankr. D. Del. Nov. 17, 2016); *In re UCI International, LLC*, No. 16-11354 (MFW) (Bankr. D. Del. July 12, 2016); *In re AOG Ent., Inc.*, No. 16-11090 (SMB) (Bankr. S.D.N.Y. June 8, 2016); *In re SFX Entertainment, Inc.*, No. 16-10238 (MFW) (Bankr. D. Del. Mar. 21, 2016); *In re American Apparel, Inc.*, No. 15-12055 (BLS) (Bankr. D. Del. Nov. 30, 2015); *In re Allied Nevada Gold Corp.*, No. 15-10503 (MFW) (Bankr. D. Del. Apr. 15, 2015); *In re ITR Concession Co.*, No. 14-34284 (Bankr. N.D. Ill. Oct. 28, 2014); *In re GSE Envt'l, Inc.*, No. 14-11126 (MFW) (Bankr. D. Del. May 30, 2014); *In re MACH Gen, LLC*, No. 14-10461 (MFW) (Bankr. D. Del. Apr. 11, 2014); *In re MPM Silicones, LLC*, No. 14-22503 (RDD) (Bankr. S.D.N.Y. May 16, 2014).

7.      I have over 25 years of investment banking experience advising companies, equity investors, financial vehicles, creditors, and government entities across a broad range of industries and geographies in a broad range of transactions. I also have extensive experience advising on over 50 special purpose acquisition company transactions. Prior to joining Moelis I was a Managing Director at Rothschild, Inc. where I focused on global M&A and restructuring transactions. I hold a Bachelor of Arts degree in economics from Tufts University.

8.      I have been involved in many notable chapter 11 cases and restructuring assignments, including as lead investment banker in Jason Industries' chapter 11 reorganization

4

that included reducing the company's debt load by approximately $250 million, Atrium Companies, Inc.'s chapter 11 reorganization via sale to Golden Gate Capital and Kenner & Company, and Orchard Brands $725 million chapter 11 reorganization; as advisor to the ad hoc committee of bond holders in Chemtura's $2.7 billion chapter 11 reorganization; as advisor to the ad hoc senior secured noteholders in Neenah Enterprises chapter 11 reorganization; as advisor to the ad hoc group of senior unsecured noteholders in Walter Investment Management Corporation's $4.1 billion restructuring; as advisor to the official committee of unsecured creditors of Residential Capital in its $15 billion chapter 11 reorganization; as advisor to New Residential Investment Corporation's $1.2 billion acquisition of select assets from Ditech Holding Corporation pursuant to a section 363 asset sale; and as advisor to Syncora Guarantee Inc. in American Roads LLC's $840 million pre-packaged chapter 11 reorganization.  I have also been involved in numerous restructuring transactions outside of the chapter 11 context, including in advising New Residential Investment Corporation in its $600 million recapitalization and restructuring, Ambac Financial Group in its $18 billion restructuring of Puerto Rico's sales tax financing corporation (COFINA), Syncora Guarantee Inc. in its $13.5 billion reinsurance of financial guarantee policies to Assured Guarantee Corporation and other liability management including the sale of its operating business to GoldenTree Asset Management, and MFA Financial, Inc. in its $5.8 billion restructuring of its repurchase agreement portfolio.

## Overview

9.      Moelis was engaged by the Debtors in June 2022 to advise the Debtors as to strategic alternatives in light of the Debtors' efforts to navigate the recent challenges impacting the cryptocurrency industry.  I have been involved as a senior member of the Moelis team throughout our engagement.

**Marketing Process**

10. Beginning on or about June 20, 2022, Moelis initiated a dual-track marketing campaign to solicit interest in two general deal structures: (a) a sale of the Debtors' entire business to either a financial sponsor or a strategic company in the cryptocurrency industry (a "Sale") and (b) a capital raise whereby a third party (individually or as part of a consortium) would provide a capital infusion into the Debtors' business enterprise (a "Financing," and together with a Sale, a "Transaction") to allow the Debtors to weather the current volatility in public equity markets, the decline in cryptocurrency prices, and dislocation in the cryptocurrency industry caused, in part, by the decline of 3AC and the collapse of the Terra Luna ecosystem. Among the deal structures considered for the Financing were additional debt facilities and the issuance of preferred equity in exchange for capital.

11. To that end, Moelis reached out to 60 potential financial and strategic partners across the globe (collectively, the "Potential Counterparties"), including domestic and international strategic cryptocurrency-related businesses and private equity and other investment firms that currently have crypto-related investments and/or historical experience investing in the cryptocurrency industry. By July 5, 2022, over 20 of the Potential Counterparties had entered into confidentiality agreements with the Debtors. Parties who executed a confidentiality agreement received a copy of the Debtors' investor presentation and access to a virtual data room containing thousands of pages with certain information regarding the Debtors' business operations, finances, material contracts, tax information, and incorporation documents. In addition, parties that signed confidentiality agreements were offered the opportunity to participate in telephone conferences with the Debtors' management team as well as to request additional due diligence information.

12. Simultaneously with their efforts to identify a potential counterparty to effectuate a Sale or Financing, the Debtors, Moelis, and the Debtors' other advisors began to analyze potential strategies to effectuate a standalone chapter 11 plan of reorganization (a "Stand-Alone Restructuring") without the participation of a third-party partner to consummate a Transaction.

13. While the Debtors' marketing efforts yielded one proposal for an out-of-court Financing, the conditions precedent to the proposal and the pro forma capital structure contemplated thereunder were not achievable, and no other Potential Counterparty was willing to participate in an out-of-court Transaction on the timeline required. Among other things, Potential Counterparties expressed concerns regarding current uncertainty in the cryptocurrency market and assumed liabilities on an out-of-court basis. Potential Counterparties were similarly reticent to participate in an out-of-court Financing alone, and the Debtors determined that a group investment could not be marshalled among other viable Potential Counterparties on the timeline required to consummate a Transaction on an out-of-court basis.

14. The aforementioned marketing process produced multiple preliminary proposals from parties willing to participate in an in-court Transaction. However, as of the date hereof, all of the preliminary offers that the Debtors have received require more time to fully develop and structure and must be evaluated for attractiveness against a potential Stand-Alone Restructuring.

15. As the cryptocurrency market continued to deteriorate, the Debtors made the decision to place their platform on "maintenance mode" on July 1, 2022, by prohibiting customer withdrawals and essentially taking their services offline. Once the Debtors platform was on "maintenance mode" it became clear through feedback from the market that an out-of-court Transaction of the type the Debtors needed was not available.

16. In light of the foregoing, the Debtors determined that filing for chapter 11 would maximize their chances of effectuating a Transaction to help stabilize the Debtors' business and preserve the value of the Debtors' enterprise in the best interests of the Debtors and their estates as well as the Debtors' creditors, customers, employees, and all other parties in interest.

17. Following the filing of these chapter 11 cases, Moelis and the Debtors will continue to work with the Potential Counterparties and others with whom Moelis has recently engaged, or may engage with in the future, to advance potential Transaction structures that may be more beneficial to the Debtors and their key stakeholders than any Stand-Alone Restructuring. Moelis is also currently working with the Debtors and their other advisors to identify cost savings and synergies in the context of a combination with a partner pursuant to a chapter 11 plan of reorganization and will evaluate any proposals for a Transaction against a Stand-Alone Restructuring or, alternatively, a Stand-Alone Restructuring that includes a third-party investment from one or a consortium of investors. Whether these chapter 11 cases ultimately conclude with a Transaction or a Stand-Alone Restructuring, the Debtors and Moelis will continue their marketing process aimed at achieving the highest value for the Debtors and all stakeholders available under the circumstances.

[*Remainder of Page Intentionally Left Blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: July 6, 2022
New York, New York

By: */s/ Jared Dermont*
Name: Jared Dermont
Title: Managing Director
Moelis & Company LLC
*Proposed Investment Banker and Financial Advisor to the Debtors and Debtors-in-Possession*