**Hearing Date and Time:  August 4, 2022, at 11:00 a.m. (prevailing Eastern Time)**
**Objection Deadline:  July 28, 2022, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:     (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF DEBTORS' APPLICATION FOR**
**ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT**
**AND RETENTION OF STRETTO, INC. AS ADMINISTRATIVE**
**ADVISOR TO THE DEBTORS EFFECTIVE AS OF THE PETITION DATE**

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Application for Entry of an Order Authorizing the Employment and Retention of Stretto, Inc. as Administrative Advisor to the Debtors Effective as of the Petition Date* (the "Application") will be held on **August 4, 2022, at 11:00 a.m.**, **prevailing Eastern Time** (the "Hearing").  In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted telephonically.  Any parties wishing to participate must do so by making arrangements through CourtSolutions by visiting https://www.court-solutions.com.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Application shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served so as to be actually received by **July 28, 2022, at 4:00 p.m., prevailing Eastern Time**, by (i) the entities on the Master Service List available on the case website of the above-captioned debtors and debtors in possession (the "Debtors") at https://cases.stretto.com/Voyager and (ii) any person or entity with a particularized interest in the subject matter of the Application.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing. Failure to file a timely objection may result in entry of a final order granting the Application as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Application and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/Voyager. You may also obtain copies of the Application and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank]*

Dated:  July 18, 2022          */s/ Joshua A. Sussberg*
New York, New York             **KIRKLAND & ELLIS LLP**
                               **KIRKLAND & ELLIS INTERNATIONAL LLP**
                               Joshua A. Sussberg, P.C.
                               Christopher Marcus, P.C.
                               Christine A. Okike, P.C.
                               Allyson B. Smith (admitted *pro hac vice*)
                               601 Lexington Avenue
                               New York, New York 10022
                               Telephone:    (212) 446-4800
                               Facsimile:    (212) 446-4900
                               Email:        jsussberg@kirkland.com
                                             cmarcus@kirkland.com
                                             christine.okike@kirkland.com
                                             allyson.smith@kirkland.com

                               *Proposed Counsel to the Debtors and Debtors in Possession*

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DEBTORS' APPLICATION FOR ENTRY
## OF AN ORDER AUTHORIZING THE EMPLOYMENT
## AND RETENTION OF STRETTO, INC. AS ADMINISTRATIVE
## ADVISOR TO THE DEBTORS EFFECTIVE AS OF THE PETITION DATE

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this application (this "Application"):[2]

### Relief Requested

1.    The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"), authorizing the employment and retention of Stretto, Inc. ("Stretto") as

administrative advisor ("Administrative Advisor") to the Debtors effective as of the Petition Date,

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]    A detailed description of the Debtors and their business, and the facts and circumstances supporting this Application are set forth in the *Declaration of Stephen Ehrlich, Chief Executive Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 15] (the "First Day Declaration"), filed contemporaneously with the commencement of these chapter 11 cases and incorporated by reference herein.

in accordance with the terms and conditions set forth in that certain Engagement Agreement between the Debtors and Stretto (the "Engagement Agreement"), a copy of which is attached hereto as **Exhibit C**.  In support of the Application, the Debtors submit the declaration of Sheryl Betance (the "Betance Declaration"), attached hereto as **Exhibit B**.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012.  The Debtors confirm their consent to the Court entering a final order in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are section 327(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 2014-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

## Stretto's Qualifications

5.      Stretto is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Stretto's professionals have experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity.  Stretto has acted as the administrative advisor in many large bankruptcy cases

pending in this district, including: *In re A.B.C. Carpet Co., Inc.*, No. 21-11591 (DSJ) (Bankr. S.D.N.Y. Oct. 26, 2021); *In re Kumtor Gold Co. CJSC*, No. 21-11051 (LGB) (Bankr. S.D.N.Y. July 29, 2021); *In re VTES, Inc.*, No. 20-12941 (JLG) (Bankr. S.D.N.Y. Feb. 24, 2021); *In re Furla (U.S.A.), Inc.*, No. 20-12604 (SCC) (Bankr. S.D.N.Y. Jan. 26, 2021); *In re Century 21 Department Stores LLC,* No. 20-12097 (SCC) (Bankr. S.D.N.Y. Nov. 5, 2020); *In re NTS W. USA Corp.*, No. 20-35769 (CGM) (Bankr. S.D.N.Y. Sept. 18, 2020); *In re Lakeland Tours, LLC*, No. 20-11647 (JLG) (Bankr. S.D.N.Y. Sept. 10, 2020); *In re Seabras 1 USA, LLC*, No. 19-14006 (SMB) (Bankr. S.D.N.Y. Jan. 21, 2020); *In re Agera Energy LLC*, No. 19-23802 (RDD) (Bankr. S.D.N.Y. Dec. 17, 2019); and *In re Barneys New York, Inc.*, No. 19-36300 (CGM) (Bankr. S.D.N.Y. Sept. 19, 2019).

### Services to be Provided

6.      Pursuant to the Engagement Agreement, the Debtors seek to retain Stretto to provide, among other things, the following bankruptcy solicitation and administration services, if and to the extent requested by the Debtors:

a.      Assist with, among other things, solicitation, balloting, and tabulation of votes and prepare any related reports, as required in support of confirmation of a chapter 11 plan;

b.      Prepare an official ballot certification and, if necessary, testify in support of the ballot tabulation results;

c.      Assist with the preparation of the Debtors' schedules of assets and liabilities and statements of financial affairs and gather data in conjunction therewith;

d.      Manage and coordinate any distributions pursuant to a chapter 11 plan if designated as distribution agent under such plan; and

e.      Provide claims analysis and reconciliation, case research, depository management, treasury services, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of the Engagement Agreement), and any related services otherwise required by applicable law, governmental regulations, or court rules or orders in connection with these chapter 11 cases.

7.      Stretto's retention as Administrative Advisor will provide the Debtors with experienced professionals and services that are essential to successful chapter 11 cases.  Stretto will coordinate with the Debtors' other retained professionals in these cases to avoid any unnecessary duplication of services.  Accordingly, the relief requested in this Application is in the best interests of the Debtors' estates and all parties in interest.

### Professional Compensation

8.      The fees Stretto will charge in connection with providing services to the Debtors are set forth in the Engagement Agreement.  The Debtors submit that Stretto's rates are competitive and comparable to the rates its competitors charge for similar services.  Indeed, the Debtors conducted a review and competitive comparison of other firms and reviewed the rates of other firms before selecting Stretto as Administrative Advisor.  The Debtors believe Stretto's rates are more than reasonable given the quality of Stretto's services and its professionals' bankruptcy expertise.  Additionally, Stretto will seek reimbursement from the Debtors for reasonable expenses in accordance with the terms of the Engagement Agreement.

9.      Prior to the Petition Date, the Debtors provided Stretto an advance in the amount of $50,000.  Pursuant to the *Order (I) Authorizing and Approving the Appointment of Stretto, Inc. as Claims and Noticing Agent and (II) Granting Related Relief* [Docket No. 67] Stretto was authorized to apply the advance to all prepetition invoices, and thereafter, to have the advance replenished to the original advance amount and to hold the advance under the Engagement Agreement during these chapter 11 cases as security for the payment of fees and expenses incurred under the Engagement Agreement.  However, Stretto will not apply its retainer to any fees and expenses incurred as Administrative Advisor to the Debtors unless and until such fees and

expenses have been approved by the Court in accordance with the proposed order granting this Application.

10.    Stretto intends to apply to the Court for allowance of compensation and reimbursement of expenses incurred after the Petition Date in connection with the services it provides as Administrative Advisor pursuant to the Engagement Agreement. Stretto will comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any orders entered in these chapter 11 cases regarding professional compensation and reimbursement of expenses.

11.    Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend and hold harmless Stretto and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents under certain circumstances specified in the Engagement Agreement, except in circumstances resulting from Stretto's bad faith, gross negligence, willful misconduct, or as otherwise provided in the Engagement Agreement.   The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of an Administrative Advisor in these chapter 11 cases.

### Disinterestedness

12.    Stretto has conducted a conflicts analysis to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Betance Declaration, Stretto is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or

represent any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

13.     Stretto believes that it does not have any relationships with creditors or parties in interest that would present a disqualifying conflict of interest.  Stretto will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## Basis for Relief

14.     Section 327(a) of the Bankruptcy Code provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

15.     Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, and proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee.

Fed. R. Bankr. P. 2014.

16.     In light of the size and complexity of these chapter 11 cases, the Debtors respectfully submit that retaining and employing Stretto pursuant to the terms of the Engagement Agreement is necessary and in the best interests of the Debtors' estates and all parties in interest to these chapter 11 cases.  The Debtors also believe that the terms and conditions of the

Engagement Agreement are reasonable in light of the anticipated high volume of creditors and other parties-in-interest that will be involved in these cases.

17.    The Debtors previously filed an application [Docket No. 5] (the "Section 156(c) Application") for an order appointing Stretto as claims and noticing agent pursuant to section 156(c) of title 28 of the United States Code and section 105(a) of the Bankruptcy Code, which application was granted by this Court on July 13, 2022 [Docket No. 67].  The Debtors believe that administration of these chapter 11 cases will require Stretto to perform duties outside of the scope requested in the Section 156(c) Application.  Accordingly, to help manage administrative tasks with respect to the thousands of creditors and other parties in interest that are expected to be involved in the Debtors' chapter 11 cases, and the complexity of such cases, the Debtors respectfully request the Court enter an order appointing Stretto as the Administrative Advisor in these chapter 11 cases pursuant to section 327(a) of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016.

## Notice

18.    The Debtors will provide notice of this Application to the following parties and/or their respective counsel, as applicable:  (a) the United States Trustee for the Southern District of New York; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the lender under the Debtors' prepetition loan facility; (d) the United States Attorney's Office for the Southern District of New York; (e) the Internal Revenue Service; (f) the Toronto Stock Exchange; (g) the attorneys general in the states where the Debtors conduct their business operations; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

19.    No prior request for the relief sought in this Application has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the

relief requested herein and such other relief as the Court deems appropriate under the

circumstances.

Dated:  July 18, 2022                                    /s/ Stephen Ehrlich
New York, New York                                      Name:  Stephen Ehrlich
                                                        Title:  Co-Founder and Chief Executive Officer
                                                        Voyager Digital Ltd.

## **Exhibit A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## ORDER AUTHORIZING THE EMPLOYMENT
## AND RETENTION OF STRETTO, INC. AS ADMINISTRATIVE
## ADVISOR TO THE DEBTORS EFFECTIVE AS OF THE PETITION DATE

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the retention of Stretto ("Stretto") as administrative advisor ("Administrative Advisor") effective as of the Petition Date pursuant to section 327(a) of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016, all as more fully set forth in the Application; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2] Capitalized terms used but not defined herein have the meanings given to such terms in the Application.

(the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.    The Application is granted as set forth herein.

2.    The Debtors are authorized to retain Stretto as Administrative Advisor effective as of the Petition Date under the terms of the Engagement Agreement, and Stretto is authorized to perform the bankruptcy administration services described in the Application and set forth in the Engagement Agreement, as modified herein.

3.    This Order shall not apply to any services Stretto has sought authorization to render pursuant to the Section 156(c) Application.

4.    Stretto is authorized to take such other action as may be reasonable or necessary to comply with all duties set forth in the Application.

5.    Stretto shall apply to the Court for allowance of compensation and reimbursement of expenses incurred after the Petition Date in accordance with the applicable provisions of the Bankruptcy Code, including sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any orders entered in these cases regarding professional compensation and reimbursement of expenses.

6.    Such other services as may be requested by the Debtors and agreed to by Stretto shall be subject to separate approval by Court order.

7.    The Debtors shall indemnify Stretto under the terms of the Engagement Agreement, as modified pursuant to this Order.

8.    All requests of Stretto for payment of indemnity pursuant to the Engagement Agreement shall be made by means of an application (interim or final as the case may be) and shall

be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Agreement and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, *provided*, *however*, that in no event shall Stretto be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

9.      In the event that Stretto seeks reimbursement from the Debtors for reasonable attorneys' fees in connection with a request by Stretto for payment of indemnity pursuant to the Engagement Agreement, as modified by this Order, the invoices and supporting time records from such attorneys shall be included in Stretto's own application (both interim and final) and such invoices and time records shall be subject to the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

10.      Stretto shall not be entitled to reimbursement by the Debtors for any fees, disbursements and other charges of Stretto's counsel other than those incurred in connection with a request of Stretto for payment of indemnity, retention of Stretto, and preparation of fee applications.

11.      The limitation of liability section in paragraph 10 of the Engagement Agreement is deemed to be of no force or effect with respect to the services to be provided pursuant to this Order.

12.      Stretto shall exclude the Debtors' bankruptcy cases and related information, as well as information regarding any of the Debtors' non-debtor affiliates, from any file sharing arrangement with Xclaim, Inc. or any other entity operating a marketplace or similar service to facilitate trade or resolution of claims held against bankrupt or insolvent entities.

13.     Prior to any increases in Stretto's rates for any individual retained by Stretto and providing services in these cases, Stretto shall file a supplemental affidavit with the Court and provide ten business days' notice to the Debtors, the United States Trustee and any official committee.  The supplemental affidavit shall explain the basis for the requested rate increases in accordance with Section 330(a)(3)(F) of the Bankruptcy Code and state whether the Debtors have consented to the rate increase.  The United States Trustee retains all rights to object to any rate increase on all grounds including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code and all rates and rate increases are subject to review by the Court.

14.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

15.     In the event of any inconsistency between the Engagement Agreement, the Application, and this Order, this Order shall govern.

16.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

17.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

18.     Notwithstanding any term in the Engagement Agreement to the contrary, the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

## Exhibit B

**Betance Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF SHERYL BETANCE**
**IN SUPPORT OF DEBTORS' APPLICATION FOR**
**ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT**
**AND RETENTION OF STRETTO, INC. AS ADMINISTRATIVE**
**ADVISOR TO THE DEBTORS EFFECTIVE AS OF THE PETITION DATE**

I, Sheryl Betance, under penalty of perjury, declare as follows:

1.       I am a Senior Managing Director of Corporate Restructuring at Stretto, Inc. ("Stretto"), a chapter 11 administrative services firm with offices at 410 Exchange, Ste. 100, Irvine, California 92602.  Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.       This declaration (this "Declaration") is made in support of the above-captioned debtors' (collectively, the "Debtors") *Debtors' Application for Entry of an Order Authorizing the Employment and Retention of Stretto, Inc. as Administrative Advisor to the Debtors Effective as of the Petition Date*, which was filed contemporaneously herewith (the "Application").[2]

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

## **Qualifications**

3.      Stretto is a chapter 11 administrator comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Stretto's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity.  Stretto's professionals have acted as official administrative advisor in many large bankruptcy cases in this district and in other districts nationwide.  Stretto's cases include: *In re A.B.C. Carpet Co., Inc.*, No. 21-11591 (DSJ) (Bankr. S.D.N.Y. Oct. 26, 2021); *In re Kumtor Gold Co. CJSC*, No. 21-11051 (LGB) (Bankr. S.D.N.Y. July 29, 2021); *In re VTES, Inc.*, No. 20-12941 (JLG) (Bankr. S.D.N.Y. Feb. 24, 2021); *In re Furla (U.S.A.), Inc.*, No. 20-12604 (SCC) (Bankr. S.D.N.Y. Jan. 26, 2021); *In re Century 21 Department Stores LLC,* No. 20-12097 (SCC) (Bankr. S.D.N.Y. Nov. 5, 2020); *In re NTS W. USA Corp.*, No. 20-35769 (CGM) (Bankr. S.D.N.Y. Sept. 18, 2020); *In re Lakeland Tours, LLC*, No. 20-11647 (JLG) (Bankr. S.D.N.Y. Sept. 10, 2020); *In re Seabras 1 USA, LLC*, No. 19-14006 (SMB) (Bankr. S.D.N.Y. Jan. 21, 2020); *In re Agera Energy LLC*, No. 19-23802 (RDD) (Bankr. S.D.N.Y. Dec. 17, 2019); and *In re Barneys New York, Inc.*, No. 19-36300 (CGM) (Bankr. S.D.N.Y. Sept. 19, 2019).

## **Services to be Rendered**

4.      As Administrative Advisor, Stretto will perform the bankruptcy administration services specified in the Application and the Engagement Agreement.  In performing such services, Stretto will charge the Debtors the rates set forth in the Engagement Agreement, which is attached as **Exhibit C** to the Application.

**Disinterestedness**

5.      Stretto is a "disinterested person" as that term is defined in section 101(14) of the

Bankruptcy Code, in that Stretto and its professional personnel:

      a.      are not creditors, equity security holders, or insiders of the Debtors;

      b.      are not and were not, within two years before the date of the filing of these
              cases, directors, officers, or employees of the Debtors; and

      c.      do not have an interest materially adverse to the interest of the Debtors'
              estates or of any class of creditors or equity security holders, by reason of
              any direct or indirect relationship to, connection with, or interest in, the
              Debtors.

6.      I caused to be submitted for review by our conflicts system the names of potential

parties-in-interest (the "Potential Parties in Interest") in these chapter 11 cases.  A list of Potential

Parties in Interest was provided by the Debtors and included, among other parties, the Debtors,

non-Debtor affiliates, current and former directors and officers of the Debtors, significant

stockholders, lenders, the Debtors' largest unsecured creditors on a consolidated basis, the U.S.

Trustee and persons employed in the office of the U.S. Trustee, and other parties.  The Potential

Parties in Interest list was compared to an internal database that includes, among others, Stretto's

parent entities, affiliates, and subsidiaries.  Stretto's internal database also includes Stone Point

Capital LLC ("Stone Point"), its funds, and each such fund's respective portfolio companies as set

forth in the list most recently provided to Stretto by Stone Point's internal compliance department

(the "Stone Point Searched Parties").  The results of the conflict check were compiled and reviewed

by Stretto professionals under my supervision.  At this time, and as set forth in further detail herein,

Stretto is not aware of any connection that would present a disqualifying conflict of interest.

Should Stretto discover any new relevant facts or connections bearing on the matters described

herein during the period of its retention, Stretto will use reasonable efforts to file promptly a

supplemental declaration.

7.      To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Stretto nor any of its professionals has any materially adverse connection to the Debtors, their creditors, or other relevant parties.

8.      Stretto has and will continue to represent clients in matters unrelated to these chapter 11 cases.  In addition, in matters unrelated to these chapter 11 cases, Stretto and its personnel have and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals, financial institutions, and other parties in interest that may be involved in the Debtors' chapter 11 cases.  Also, the list of Potential Parties in Interest identifies Metropolitan Commercial Bank, one of Stretto's bank vendors, as having a banking relationship with the Debtors.  However, to the best of my knowledge, such relationship is materially unrelated to these chapter 11 cases.  Stretto may also provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases, which services do not directly relate to, or have any direct connection with, these chapter 11 cases or the Debtors.  Based upon a review of the Potential Parties in Interest:

- Teneo has been identified as a Potential Party in Interest.  Harrison Goldin, an employee of Teneo, is a current client of Stretto's chapter 7 software business in his individual capacity, but such relationship is unrelated to the Debtors and their estates, assets, or businesses.

- Berkley Research Group has been identified as a Potential Party in Interest.  Jay Borow, an employee of Berkley Research Group, is a current client of Stretto's chapter 7 software business in his individual capacity, but such relationship is unrelated to the Debtors and their estates, assets, or businesses.

- The list of Potential Parties in Interest includes Amazon Capital Services Inc., which is a defendant to an avoidance action brought under the Bankruptcy Code by a client of Stretto Recovery Services. However, to the best of my knowledge, such relationship is materially unrelated to these chapter 11 cases.

- The list of Potential Parties in Interest includes a competitor of the Debtors that has engaged Stretto in a matter unrelated to these chapter 11 cases.

- Grant Thornton LLP has been identified as a Potential Party in Interest.  John Baumgartner, an employee of Grant Thornton LLP, is a current client of Stretto's chapter 7 software business in his individual capacity, but such relationship is unrelated to the Debtors and their estates, assets, or businesses.

- McCarter & English, LLP has been identified as a Potential Party in Interest.  McCarter & English, LLP is a current client of Stretto's chapter 7 software business, but such relationship is unrelated to the Debtors and their estates, assets, or businesses.

- Additionally, the list of Potential Parties in Interest includes entities, as set forth on **Schedule 1** attached hereto, which are current, former or potential defendants to avoidance actions brought under the Bankruptcy Code by clients of Stretto Recovery Services.  However, to the best of my knowledge, such relationships are materially unrelated to these chapter 11 cases.

9.      To the best of my knowledge, none of Stretto's employees are related to bankruptcy judges in the Southern District of New York, the United States Trustee for the Southern District of New York (the "U.S. Trustee"), or any attorney known by Stretto to be employed in the Office of the U.S. Trustee serving the Southern District of New York.

10.     Certain of Stretto's professionals were partners of or formerly employed by firms that are providing or may provide professional services to parties in interest in these cases.  Except as may be disclosed herein, these professionals did not work on any matters involving the Debtors while employed by their previous firms.  Moreover, these professionals were not employed by their previous firms when these chapter 11 cases were filed.  To the best of my knowledge, none of Stretto's professionals were partners of, or formerly employed within the last three years by firms that are Potential Parties in Interest or that have filed a notice of appearance in these chapter 11 cases.

11.     Stretto and its personnel in their individual capacities regularly utilize the services of law firms, investment banking and advisory firms, accounting firms, and financial advisors. Such firms engaged by Stretto or its personnel may appear in chapter 11 cases representing the Debtors or parties in interest.  Kirkland & Ellis has been identified as a Potential Party in Interest. Stretto has previously utilized the services of Kirkland & Ellis in matters unrelated to these chapter 11 cases.

12.     In April 2017, Stretto was acquired by the Trident VI Funds managed by private equity firm Stone Point.  Stone Point is a financial services-focused private equity firm based in Greenwich, Connecticut.  The firm has raised and managed eight private equity funds—the Trident Funds—with aggregate committed capital of approximately $25 billion.  Stone Point targets investments in the global financial services industry and related sectors.

13.     The following disclosure is made out of an abundance of caution in an effort to comply with the Bankruptcy Code and Bankruptcy Rules.  Stretto has searched the names of the Debtors and the names of the Potential Parties in Interest against the Stone Point Searched Parties. In addition, following the Petition Date, Stretto provided Stone Point with the names of the Debtors, any non-debtor affiliates and the Debtors' significant equity holders, and requested that Stone Point search such names against its investments to confirm whether Stone Point has any relationship to such entities.

14.     Based solely on the foregoing search, Stretto has determined that none of Trident VI Funds, Stone Point, or the Stone Point Searched Parties has been identified on the parties in interest list in these chapter 11 cases as of the date hereof and, to the best of its knowledge, that there are no material connections that require disclosure.  To the extent Stretto learns of any material connections between Stone Point's funds or investments included in the above-described

conflicts search and the Debtors, Stretto will promptly file a supplemental disclosure. Stretto may have had, may currently have, or may in the future have business relationships unrelated to the Debtors with one or more Stone Point entities including, among others, portfolio companies of Stone Point.

15.    From time to time, Stretto partners or employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds, and other types of investment funds (the "Investment Funds"), through which such individuals indirectly acquire a debt or equity security of many companies, one of which may be one of the Debtors or their affiliates, often without Stretto's or its personnel's knowledge. Each Stretto partner or employee generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund, and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security. Each Investment Fund is generally operated as a blind pool, meaning that when the Stretto partners or employees make an investment in the particular Investment Fund, he, she, or they do not know what securities the blind pool Investment Fund will purchase or sell and have no control over such purchases or sales.

16.    From time to time, Stretto partners or employees may personally directly acquire a debt or equity security of a company that may be one of the Debtors or their affiliates. Stretto has a policy prohibiting its partners and employees from using confidential information that may come to their attention in the course of their work. In this regard, subject to the foregoing, all Stretto partners and employees are barred from trading in securities with respect to matters in which Stretto is retained. Subject to the foregoing, upon information and belief, and upon reasonable inquiry through email survey of Stretto's employees, Stretto does not believe that any of its

partners or employees own any debt or equity securities of a company that is either a Debtor or an affiliate of any Debtor.

17.     To the best of my knowledge, Stretto (a) does not hold or represent an interest adverse to the Debtors' estates; (b) is a "disinterested person" that (i) is not a creditor, an equity security holder, or an insider, (ii) is not and was not, within two years before the Petition Date, a director, officer, or employee of any of the Debtors, and (iii) does not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason; and (c) has disclosed all of Stretto's connections with the Debtors, its creditors, any other party in interest, their respective attorneys and accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee.

*[Remainder of page intentionally left blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Dated: July 18, 2022
New York, New York

_/s/ Sheryl Betance_
_____

Sheryl Betance
Senior Managing Director
Stretto
410 Exchange, Ste. 100
Irvine, California 92602

## **Schedule 1**

Alabama Department of Revenue
Amazon Capital Service Inc.
Amazon Web Services Inc.
Arizona Department of Revenue
Atlassian Pty Ltd
BMO Harris Bank N.A.
Color Art Integrated Interiors, LLC
Comptroller of Maryland
CSC Corporation Service Company
Florida Department of Revenue
Georgia Department of Revenue
Idaho State Tax Commission
Illinois Department of Revenue
Indiana Department of Revenue
Iowa Department of Revenue
Kansas Department of Revenue
Kentucky Department of Revenue
Kirkland & Ellis – Stretto Legal Professional
Kforce Inc.
Louisiana Department of Revenue and Taxation
Microsoft
Mississippi Department of Revenue
Nebraska Department of Revenue
NJ Division of Taxation
North Carolina Department of Revenue
Oracle America, Inc
Pennsylvania Department Of Revenue
Regus Management LLC
South Carolina Department of Revenue
Washington State Department of Revenue
Teneo Strategy LLC
Tennessee Department of Revenue
Utah State Tax Commission
Verizon
Virginia Department of Taxation
Wisconsin Department of Revenue

**<u>Exhibit C</u>**

**Engagement Agreement**

DocuSign Envelope ID: 8AB4DD63-1F2F-4F8F-B929-54CAD5E5A465

**STRETTO**

## Services Agreement

This Services Agreement (this "**Agreement**") is entered into as of June 30, 2022 between Stretto, Inc. ("**Stretto**") and Voyager Digital Holdings, Inc. (together with its affiliates and subsidiaries, the "**Company**").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

   (a) Stretto agrees to provide the Company with consulting services regarding (i) legal noticing, maintenance of claims registers, creditor mailing matrices, an electronic platform for filing proofs of claim, plan solicitation, balloting, tabulation of votes, disbursements, and administrative support in preparation of schedules of assets and liabilities and statements of financial affairs ("**Claims Administration, Noticing, and Solicitation Services**"); and (ii) crisis communications, claims analysis and reconciliation, preference analysis and recovery, contract review and analysis, case research, public securities, depository management, treasury services, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement), and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations, or court rules or orders (all such services collectively, the "**Services**").

   (b) The Company acknowledges and agrees that Stretto will often take direction from the Company's representatives, employees, agents, and/or professionals (collectively, the "**Company Parties**") with respect to providing Services hereunder. The parties agree that Stretto may rely upon, and the Company agrees to be bound by, any requests, advice, or information provided by the Company Parties to the same extent as if such requests, advice, or information were provided by the Company.

   (c) The Company agrees and understands that Stretto shall not provide the Company or any other party with legal advice.

2. **Rates, Expenses and Payment**

   (a) Stretto will provide the Services on an as-needed basis and upon request or agreement of the Company. Stretto's charges for Services through the effective date of a chapter 11 plan shall be at the rates attached hereto (the "**Preferred Rate Structure**"). The Company agrees that the Preferred Rate Structure shall not be applicable to Services provided to the entity or entities (including the Company) responsible for implementing a confirmed and effective chapter 11 plan and that such Services will be provided at Stretto's then prevailing rates. The Company agrees to pay for reasonable out of pocket expenses incurred by Stretto in connection with providing Services hereunder.

   (b) Stretto will bill the Company no less frequently than monthly. All invoices shall be due and payable upon receipt. Where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Stretto may require advance or direct payment from the Company before the performance of Services hereunder. If any amount is unpaid

---

[1]      The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case. Each such affiliated entity shall be jointly and severally liable for the Company's fees and expenses.

1

DocuSign Envelope ID: 8AB4DD63-1F2F-4F8F-B929-54CAD5E5A465

 STRETTO

as of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

(c) In the case of a dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Stretto within 10 days of receipt of the invoice.

(d) The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof. Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of, or resulting from any reasonable and documented error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Stretto or paid by Stretto to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Stretto an advance of $50,000. Stretto may use such advance against unpaid fees and expenses hereunder. Stretto may use the advance against all prepetition fees and expenses. Company shall upon Stretto's request, which request may take the form of an invoice, replenish the advance to the original advance amount. Stretto may also, at its option hold such advance to apply against unpaid fees and expenses hereunder.

(h) Stretto reserves the right to make reasonable increases to the Preferred Rate Structure on an annual basis effective on the first business day of each year. If such annual increases represent an increase greater than 10% from the previous year's levels, Stretto shall provide 30 days' notice to the Company of such increases.

(i) Payments to Stretto under the terms of this Agreement for services rendered, may be remitted by Company using either (or both) of the following methods:

> **Wire Transmission**
> Bank Name – Pacific Western Bank
> Bank Address – 110 West A Street, Suite 100, San Diego, CA 92101
> ABA – 122238200
> Account Number – 1000681781
> Account Name – Bankruptcy Management Solutions, Inc.
>
> **Check**
> Stretto
> Attn: Accounts Receivable
> 410 Exchange, Suite 100
> Irvine, CA 92602

3. **Retention in Bankruptcy Case**

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "**Bankruptcy Code**"), the Company promptly shall file any necessary application with the Bankruptcy Court to retain Stretto to provide the Services. The form and substance of such applications and any order approving them shall be reasonably acceptable to Stretto.

(b) If the Company seeks authorization in a chapter 11 case to obtain postpetition financing, including debtor-in-possession loans or use of cash collateral, the Company shall include Stretto's fees and expenses incurred hereunder in any professional compensation carve-out.

(c) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Stretto will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

DocuSign Envelope ID: 8AB4DD63-1F2F-4F8F-B929-54CAD5E5A465

 STRETTO

4. **Confidentiality**

   (a) The Company and Stretto agree to keep confidential all non-public records, systems, procedures, software, and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the receiving party's possession or known to it, independently developed by the receiving party, lawfully obtained by the receiving party from a third party, or required to be disclosed by law, then the receiving party shall bear no responsibility for publicly disclosing such information.

   (b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, (i) such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time, if possible, to seek any remedy available under applicable law to prevent disclosure of the information; and (ii) such party will limit such disclosure to the extent the such party's counsel in good faith determines such disclosure can be limited.

5. **Property Rights**

Stretto reserves to itself and its agents all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation, and any other information or property (collectively, "**Property**") furnished by Stretto for itself or for use by the Company hereunder. The foregoing definition of Property shall include any and all data, from any source, downloaded, stored, and maintained by Stretto's technology infrastructure. Fees and expenses paid by the Company do not vest in the Company any rights in such Property. Such Property is only being made available for the Company's use during and in connection with the Services provided by Stretto hereunder.

6. **Bank Accounts**

At the request of the Company or the Company Parties, Stretto shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction. To the extent that certain financial products are provided to the Company pursuant to Stretto's agreement with financial institutions, Stretto may receive compensation from such institutions for the services Stretto provides pursuant to such agreement.

7. **Term and Termination**

   (a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein). "**Cause**" means (i) bad faith, gross negligence or willful misconduct of Stretto that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay any undisputed Stretto invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the advance held by Stretto where Stretto reasonably believes it likely will not be paid, except due to any delay in payment by the Company pending approval and allowance of such amounts by the Bankruptcy Court during the Company's chapter 11 case.

   (b) If this Agreement is terminated after Stretto is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Stretto of

3

DocuSign Envelope ID: 8AB4DD63-1F2F-4F8F-B929-54CAD5E5A465

 STRETTO

its duties under such retention, which order shall be in form and substance reasonably acceptable to Stretto.

(c) If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Stretto hereunder.

(d) If this Agreement is terminated, Stretto shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Stretto shall provide the necessary staff, services, and assistance required for such an orderly transfer. The Company agrees to pay for such Services pursuant to the Preferred Rate Structure.

## 8. No Representations or Warranties

Stretto makes no representations or warranties, express or implied, regarding the services and products sold or licensed to the Company hereunder or otherwise with respect to this Agreement, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness, or capacity. Notwithstanding the foregoing, if the above disclaimer is not enforceable under applicable law, such disclaimer will be construed by limiting it so as to be enforceable to the extent compatible with applicable law.

## 9. Indemnification

(a) To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Stretto and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents (collectively, the "**Indemnified Parties**") from and against any and all losses, claims, damages, judgments, liabilities, and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "**Losses**") resulting from, arising out of, or related to Stretto's performance hereunder. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party unless caused by bad faith, gross negligence, and/or willful misconduct of the Indemnified Party.

(b) Stretto and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation, or proceeding that either party becomes aware of with respect to the Services provided hereunder.

(c) The Company's indemnification of Stretto hereunder shall exclude Losses resulting from Stretto's bad faith, gross negligence or willful misconduct.

(d) The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

## 10. Limitations of Liability

Except as expressly provided herein, Stretto's liability to the Company for any Losses, unless due to Stretto's bad faith, gross negligence or willful misconduct, shall be limited to the total amount paid by the Company to Stretto for the portion of the particular work that gave rise to the alleged Loss. In no event shall Stretto be liable for any indirect, special, or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

## 11. Company Data

(a) The Company is responsible for, and Stretto does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Stretto and for the output of such information, including, without limitation, with respect to preparation

DocuSign Envelope ID: 8AB4DD63-1F2F-4F8F-B929-54CAD5E5A465



of statements of financial affairs and schedules of assets and liabilities (collectively, "**SOFAs and Schedules**"). Stretto bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

(b) The Company agrees, represents, and warrants to Stretto that before delivery of any information to Stretto: (i) the Company has full authority to deliver such information to Stretto; and (ii) Stretto is authorized to use such information to perform Services hereunder and as otherwise set forth in this Agreement.

(c) Any data, storage media, programs or other materials furnished to Stretto by the Company may be retained by Stretto until the Services provided hereunder are paid in full. The Company shall remain liable for all reasonable and documented fees and expenses incurred by Stretto under this Agreement as a result of data, storage media or other materials maintained, stored, or disposed of by Stretto. Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the Company has not utilized Stretto's Services for a period of 90 days or more, Stretto may dispose of any such materials in a manner to be determined in Stretto's sole reasonable discretion, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice. The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data, or information provided by the Company to Stretto.

(d) Notwithstanding the foregoing, if Stretto is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media, or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

**12. California Consumer Privacy Act.**

(a) Definitions.  In this Section,
   (i) "**CCPA**" means the California Consumer Privacy Act of 2018, including amendments and final regulations;
   (ii) "**Personal Information**" has the same meaning given to such term under section 1798.140 of the CCPA and is limited to any Company data provided to Stretto by the Company in order for Stretto to provide Services under this Agreement; and
   (iii) "**Commercial Purposes**," "**Sell**," "**Business**," and "**Service Provider**" have the same meanings assigned to them in section 1798.140 of the CCPA.

(b) Relationship Between the Parties. To the extent the Company is considered a Business under California law, and subject to the terms of this Section 12, Stretto will act solely as Company's Service Provider with respect to Personal Information.

(c) Restrictions. Stretto certifies it will not: (i) Sell Personal Information or (ii) collect, retain, use, or disclose Personal Information for any purpose other than for the specific purpose of performing the Services specified in this Agreement, including collecting, retaining, using, or disclosing Personal Information for any Commercial Purpose other than providing the Services specified in this Agreement unless otherwise permitted under the CCPA.

**13. Non-Solicitation**

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ, or otherwise retain as employees, consultants, or otherwise, any employees of Stretto during the term of this Agreement and for a period of 12 months after termination thereof unless Stretto provides prior written consent to such solicitation or retention.

**14. Force Majeure**

DocuSign Envelope ID: 8AB4DD63-1F2F-4F8F-B929-54CAD5E5A465

**STRETTO**

Whenever performance by Stretto of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Stretto's reasonable control, then such performance shall be excused.

**15. Choice of Law**

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

**16. Arbitration**

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction.  There shall be three arbitrators named in accordance with such rules. The arbitration shall be conducted in the English language in Irvine, California in accordance with the United States Arbitration Act.  Notwithstanding the foregoing, upon commencement of any chapter 11 case(s) by the Company, any disputes related to this Agreement shall be decided by the bankruptcy court assigned to such chapter 11 case(s).

**17. Integration: Severability; Modifications: Assignment**

(a) Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms, and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements, and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Stretto.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Stretto may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

**18. Effectiveness of Counterparts**

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

**19. Notices**

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

DocuSign Envelope ID: 8AB4DD63-1F2F-4F8F-B929-54CAD5E5A465

**STRETTO**

If to Stretto:

Stretto
410 Exchange, Ste. 100
Irvine, CA 92602
Attn: Sheryl Betance
Tel: 714.716.1872
Email: sheryl.betance@stretto.com

If to the Company:

Voyager Digital Holdings, Inc.
33 Irving Pl, 3rd Floor
New York, NY 10003
Attn: Legal
Email: legaldept@investvoyager.com

With a copy to:

Kirkland & Ellis
601 Lexington Ave
New York, NY 10022
Attn: Josh Sussberg
Jsussberg@kirkland.com

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement effective as of the date first above written.

Stretto

By: _Sheryl Betance_

Title: Senior Managing Director

Voyager Digital Holdings, Inc.

By: Steve Ehrlich

Title: Chief Executive Officer.

7

**Exhibit A**

## GDPR Addendum

This GDPR Addendum is a part of the Services Agreement (the "**Agreement**") by and between Stretto (the "**Processor**")[2] and the Company (together, the "**Parties**").

### RECITALS

**WHEREAS**,

(A)     The Processor and the Company have agreed to the following terms regarding the Processing of Company Personal Data.

(B)     The Company acts as a Controller of the Company Personal Data.

(C)     The Company wishes to subcontract certain Services, pursuant to the Agreement, which imply and require the processing of personal data, to the Processor.

(D)     The Company instructs the Processor to process Company Personal Data.

(E)     The Parties seek to implement a data processing agreement that complies with the requirements of the current legal framework in relation to data processing and with the Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016 on the protection of natural persons with regard to the processing of personal data and on the free movement of such data, and repealing Directive 95/46/EC (General Data Protection Regulation or "**GDPR**").

**NOW THEREFORE**, the Company and the Processor agree as follows:

1.    **Definitions.**  The parties agree that the following terms, when used in this GDPR Addendum, shall have the following meanings.

(a)    "**Addendum**" shall mean this GDPR Addendum;

(b)    "**Company Personal Data**" means any Personal Data Processed by the Processor or a Subprocessor on behalf of the Company pursuant to or in connection with the Agreement, and may include, for example, Personal Data of Company's employees, clients, customers, creditors, equity interest holders, or counter-parties;

(c)    "**Data Protection Laws**" means EU Directive 95/46/EC, as transposed into domestic legislation of each Member State and as amended, replaced or superseded from time to time, including by the GDPR and laws implementing or supplementing the GDPR;

(d)    "**Services**" means the services the Processor provides to the Company pursuant to the Agreement;

(e)    "**Subprocessor**" means any person appointed by or on behalf the Processor to process Personal Data on behalf of the Company in connection with the Agreement;

---

[2] Capitalized terms utilized but not defined in the GDPR Addendum have the meanings ascribed to them in the Agreement.

1

(f)    "**Technical and organizational security measures**" means those measures aimed at protecting Personal Data against accidental or unlawful destruction or accidental loss, alteration, unauthorized disclosure or access, in particular where the processing involves the transmission of data over a network, and against all other unlawful forms of processing;

(g)    The terms "**Commission**", "**Controller**", "**Data Subject**", "**Member State**", "**Personal Data**", "**Personal Data Breach**", "**Processor**", "**Processing**", "**Special Categories of Personal Data**", and "**Supervisory Authority**" shall have the same meaning as in the GDPR, and their derivative terms shall be construed accordingly.

2.    **Obligations of the Company.**  The Company agrees and warrants:

(a)    that the Processing, including the transfer itself, of the Company Personal Data has been and will continue to be carried out in accordance with the relevant provisions of the applicable Data Protection Laws (and, where applicable, has been notified to the relevant authorities of the Member State);

(b)    that it has instructed and throughout the duration of the Services will instruct the Processor to process the Company Personal Data transferred only on the Company's behalf and in accordance with the applicable Data Protection Laws, the Agreement, and this Addendum;

(c)    that the Processor will provide sufficient guarantees in respect of the technical and organizational security measures;

(d)    that after assessment of the requirements of the applicable data protection law, the technical and organizational security measures are appropriate to protect the Company Personal Data against accidental or unlawful destruction or accidental loss, alteration, unauthorized disclosure or access, in particular where the processing involves the transmission of data over a network, and against all other unlawful forms of processing, and that these measures ensure a level of security appropriate to the risks presented by the processing and the nature of the data to be protected having regard to the state of the art and the cost of their implementation;

(e)    that it will ensure compliance with the technical and organizational security measures; and

(f)    that the Company Personal Data transferred to Processor does not include or involve any special categories of data, as defined by Article 9 of the GDPR.

3.    **Obligations of the Processor.**  The Processor agrees and warrants:

(a)    to comply with the Data Protection Laws;

(b)    to process the Company Personal Data only on behalf of the Company and in compliance with its instructions and this Addendum; if it cannot provide such compliance for whatever reasons, it agrees to inform promptly the Company of its inability to comply, in which case the Company is entitled to suspend the processing of data and/or terminate the Agreement;

2



(c)     that it has no reason to believe that the legislation applicable to it prevents it from fulfilling the instructions received from the Company and its obligations under the Agreement and that in the event of a change in this legislation which is likely to have a substantial adverse effect on the warranties and obligations provided by the Clauses, it will promptly notify the change to the Company as soon as it is aware, in which case the Company is entitled to suspend the transfer of data and/or terminate the Agreement;

(d)     that it has implemented reasonable and appropriate technical and organizational security measures before processing the Company Personal Data;

(e)     that it will promptly notify the Company about:

    i.     any legally binding request for disclosure of the Company Personal Data by a law enforcement authority unless otherwise prohibited, such as a prohibition under criminal law to preserve the confidentiality of a law enforcement investigation;

    ii.     any accidental or unauthorized access; and

    iii.     any request received directly from any data subject without responding to that request, unless it has been otherwise authorized to do so by the Company or as required by any applicable law;

(f)     to deal promptly and properly with all inquiries from the Company relating to its Processing of the Company Personal Data and to abide by the advice of the supervisory authority with regard to the processing of the Company Personal Data;

(g)     to take reasonable steps to ensure the reliability of any employee, agent, or contractor of any Subprocessor who may have access to the Company Personal Data, ensuring in each case that access is strictly limited to those individuals who need to know or access the relevant Company Personal Data, as strictly necessary to perform the Services under the Agreement, and to comply with Data Protection Laws in the context of that individual's duties to the Subprocessor, ensuring that all such individuals are subject to confidentiality undertakings or professional or statutory obligations of confidentiality; and

(h)     that it shall not use (or disclose any Company Personal Data to) any Subprocessor unless required or authorized by the Company with prior written consent.

**4.     Obligations after Termination of Personal Data Processing Services.**

(a)     The Parties agree that within 10 business days of the termination of the Agreement or provision of Services, the Processor and any Subprocessor shall, at the choice of the Company, return all Company Personal Data and the copies thereof to the Company or shall destroy all the Company Personal Data and certify to the Company that it has done so, unless legislation imposed upon the Processor prevents it from returning or destroying all or part of the Company Personal Data.  In that case, the Processor warrants that it will guarantee the confidentiality of the Company Personal Data and will not further process the Company Personal Data.

(b)    The Processor and any Subprocessor warrant that upon request of the Company and/or of the supervisory authority, it will submit its data-processing facilities for an audit of the technical and organizational security measures.

**5.**    **Notices.**  All notices and communications given under this Addendum must be delivered as provided for by the Agreement.

## Fee Structure

**Consulting Services and Rates**

*Analyst*                                                    *Waived*
The Analyst processes incoming mail, creditor correspondence and returned mail, and supports the case team with administrative tasks as required.

*Consultant (Associate/Senior Associate)*                    *$70 - $200*
The Associate manages the various data collection processes required by the Chapter 11 process. This includes, among other things, compiling the creditor matrix and Schedules/SOFAs (and generating drafts of same for counsel and advisors), reviewing and processing claims and ballots, overseeing contract review, overseeing all physical and electronic noticing, and generating custom claim and ballot reports.

The Senior Associate leads complex data aggregation projects for compilation of Schedules & SOFA, the creditor matrix and special notice lists. In addition, the Senior Associate oversees quality control and on mailings and reports. Stretto's Senior Associates average over seven years of experience.

*Director/ Managing Director*                                *$210 - $250*
The Director is the primary contact for the company, counsel and other professionals and oversees and supports all aspects of the administration for the entirety of an engagement.

The Managing Director provides industry and/or project specific expertise to support complex matters. Professionals, including Stretto's executive management team will serve in this role when appropriate.

Stretto's Directors and Managing Directors have over fifteen years of experience and are typically former restructuring professionals.

*Executive Management*                                        *Waived*
Our Executive Management team oversees Stretto's Corporate Restructuring group and will provide consulting support to this matter at no charge.

**Solicitation, Balloting and Tabulation Rates**

*Solicitation Associate*                                      *$230*
The Solicitation Associate reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. The Solicitation Associate also prepares customized reports relating to voting and other corporate events, including exchange offers and rights subscriptions. The Solicitation Associate also interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and related communications.

*Director of Securities & Solicitations*                     *$250*
The Director of Securities leads public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of related processes.

1

## Printing & Noticing Services

| | |
|---|---|
| Printing | $0.10 (per image) |
| Postage/Overnight Delivery | Preferred Rates |
| ECF Email Noticing | Waived |
| Fax Noticing | $0.10 (per page) |
| Envelopes | Varies by Size |
| Coordinate and Publish Legal Notices | Preferred Pricing Available on Request |
| Public Securities Events | Varies by Event |

## Electronic Services

| | |
|---|---|
| Case Homepage Set-Up and Hosting | Waived |
| Robotic Process Automation[1] | Starting at $0.48 (per process) |
| Encrypted HTTPS Bandwidth (volume discount applies) | Starting at $0.125 (per MB) |
| Online Monthly Operating Report Platform Subscription | Waived |

## Claims Administration & Management Expenses

| | |
|---|---|
| License Fee and System Maintenance | $0.10 (per creditor per month) |
| Database and System Access (Unlimited Users) | Waived |
| Online Claims Filing Portal | Waived |
| Online Ballots Filing Portal | Waived |
| Preference Analysis (Initial Preference Review) | Standard Hourly Rates |

## Document Management Services

| | |
|---|---|
| Electronic Imaging (Per Imaged Page) | $0.10 |
| FedRAMP Compliant File Retention (volume discount applies) | Starting at $0.125 (per MB) |
| Virtual Data Room | Available on Request |

## Call Center Support Services

| | |
|---|---|
| Case-Specific Toll-Free Number and Voice-Mail Box | Waived |
| Interactive Voice Response (Per Minute) | Waived |
| Monthly Maintenance Charge | Waived |
| Management of Call Center (Per Hour) | Standard Hourly Rates |

## Disbursement Services

| | |
|---|---|
| Check Issuance | Available on Request |
| Account Opening Fee | Available on Request |
| W-9 Mailing and Maintenance of TIN Database | Standard Hourly Rates |
| Disbursements - Record to Transfer Agent | Quoted at Time of Request |

---

[1] Includes ECF docket automation, subscription-based docket notifications, USPS bulk mail operations, address validation, e-filing transactions, cloud computing charges, and related activities