RE: Case Number: 22-10943 (MEW) Ch11

Honorable Judge Wiles,

As many other creditors have described in their letters, Voyager lured us in with false promises and deceptive advertisement, assuring that what made them different was honesty, transparency, and that they were licensed and regulated. While the front facing information on their website reflects the previous values, their customer agreement is completely different.  How can they request protection when they openly misinformed and defrauded so many people?  Please allow me to point out some of the inconsistencies:

- When customers purchased crypto through the app, we were assured that we had purchased and owned crypto, with language such as: you purchased, and you owe.  Contrary to this, the agreement says that customers may be treated as having unsecured claims. The app never communicated to customers that they had purchased an unsecured claim to assets. Furthermore, if Voyager treats crypto as their own assets, did they pay taxes on gains when acquiring these?
- They claim they are commission free, while in the back end, when a purchase is made it they charge more than what they pay for the asset, and they never disclose this to the user. Some lawyers are calling this "spread revenue".
- On the website they describe themselves as a broker, but at the same time they claim they are not a broker, therefore can claim Ch.11.
- On social media communications they say they use "a low-risk approach" while in the background they made large irresponsible undiversified loans with no collateral.
- Days before the bankruptcy in their Q3 earnings call they mentioned they were fully capitalized and strong, when they already knew there would be trouble ahead.  In this same meeting the CEO made this comment: "We are a customer-focused business and therefore concentrate on the safety and security **of customer assets**.  Yet they claim customers do not own their assets.
- They marketed themselves as experienced crypto veterans that could weather any bear market and at the same time, they claim that volatility and macroeconomics are to blame, not the loans that could have been made to other companies with collateral other than crypto.
- They claim they are licensed and regulated, but there are many states that have open cease and desist cases like in TX, with the Texas Securities Board. They recently contacted me about Voyager and informed me that they were not licensed.

I believe **it is impossible for Voyager to restructure** and move the company forward as **they have defrauded their customers** and impacted their lives in so many ways. Ch 11 will mostly benefit Voyager not the customers. How can customers stay with them when Voyager said **customers do not own their assets**. I ask Voyager… What were we purchasing then?   I used this broker to buy Cryptocurrency and they are the custodian of those assets. Therefore, I respectfully request for all my cryptocurrency back in the same form, as it will be worth three times more in a few years.  I certainly would not benefit from VGX tokens, nor the stock of a company that defrauded 2.7 million users.

Please help us recover our savings and punish who have intentionally deceived us.

Sincerely,

Gerardo Pedraza

From https://www.ssb.texas.gov/sites/default/files/2022-04/20220412_FINAL_Voyager_NOH_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.pdf

MISLEADING STATEMENTS ABOUT COMPLIANCE AND REGULATION

17. Voyager claims it is a "fully compliant and licensed crypto broker" and touts its status as a public company, its listing on the Toronto Stock Exchange, and the "trust and transparency" resulting from its being a public company in Canada. These statements are materially misleading or otherwise likely to deceive the public because:

- Respondents are not licensed as money service businesses in Texas to conduct currency exchange or money transmission activities defined by Chapter 151 of the Texas Finance Code;
- Respondents are not registered with the Commodity Futures Trading Commission or the National Futures Association;
- Respondents are not licensed, registered, or qualified, nor are their securities notice filed, with the United States Securities and Exchange Commission;
- Respondents are not registered with the Texas State Securities Board to offer or sell securities in Texas, as required by Section 4004.051 of the Securities Act, and the Voyager Interest Accounts are not registered or permitted for sale in Texas, as required by Section 4003.001 of the Securities Act;
- The Voyager Interest Accounts are not protected by the Securities Investor Protection Corporation, otherwise known as the SIPC, a federally mandated, non-profit, member-funded United States corporation created Notice of Hearing/Voyager Digital Ltd., et al./Page 5 under the Securities Investor Protection Act of 1970 that mandates membership of most US-registered broker-dealers;
- The Voyager Interest Accounts are not insured by the Federal Deposit Insurance Corporation, otherwise known as the FDIC, an agency that provides deposit insurance to depositors in the United States, or the National Credit Union Administration, otherwise known as the NCUA, an agency that regulates and insures credit unions;
- Although Voyager's stock is listed on the Toronto Stock Exchange, the Voyager Interest Accounts are not registered, qualified, or permitted in Canada and Voyager represents Canadian investors cannot invest in the Voyager Interest Accounts;
- The Canadian laws that apply to Voyager's securities listed on the Toronto Stock Exchange do not provide the same regulation or protection as domestic laws that apply to Voyager Interest Accounts Voyager sells exclusively to United States residents; and
- Voyager is not disclosing material risks relevant to these statements, material information including the amount of principal used to fund subsequent transactions, the identity, nature, and creditworthiness of borrowers, the type, nature, and counterparties for transactions involving digital asset exchanges, digital assets, staking, arranging for staking, or proprietary trading, the risks associated with digital asset exchanges, individual digital assets, staking protocols, or proprietarily traded assets, and the profits and/or losses derived from transactions.