**Hearing Date: August 4, 2022, at 11:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: July 28, 2022, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF HEARING
### OF APPLICATION OF VOYAGER DIGITAL
### HOLDINGS, INC. FOR ENTRY OF AN ORDER AUTHORIZING
### THE EMPLOYMENT AND RETENTION OF BERKELEY RESEARCH
### GROUP, LLC AS FINANCIAL ADVISOR EFFECTIVE AS OF JULY 5, 2022

**PLEASE TAKE NOTICE** that a hearing on the *Application of Voyager Digital Holdings, Inc. for Entry of an Order Authorizing the Employment and Retention of Berkeley Research Group, LLC as Financial Advisor Effective as of July 5, 2022* (the "Application") will be held on **August 4, 2022, at 11:00 a.m.**, **prevailing Eastern Time** (the "Hearing"). In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted telephonically. Any parties wishing to participate must do so by making arrangements through CourtSolutions by visiting https://www.court-solutions.com.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Application shall:  (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served so as to be actually received by **July 28, 2022, at 4:00 p.m., prevailing Eastern Time**, by (i) the entities on the Master Service List available on the case website of the above-captioned debtors and debtors in possession (the "Debtors") at https://cases.stretto.com/Voyager and (ii) any person or entity with a particularized interest in the subject matter of the Application.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing.  Failure to file a timely objection may result in entry of a final order granting the Application as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Application and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/Voyager.  You may also obtain copies of the Application and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank]*

2

Dated:  July 20, 2022
New York, New York

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    jsussberg@kirkland.com
cmarcus@kirkland.com
christine.okike@kirkland.com
allyson.smith@kirkland.com

*Proposed Counsel to the Debtors and Debtors in Possession*

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**APPLICATION OF**
**VOYAGER DIGITAL HOLDINGS, INC.**
**FOR ENTRY OF AN ORDER AUTHORIZING THE**
**EMPLOYMENT AND RETENTION OF BERKELEY RESEARCH**
**GROUP, LLC AS FINANCIAL ADVISOR EFFECTIVE AS OF JULY 5, 2022**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>")

respectfully state as follows in support of this application (this "<u>Application</u>"):

<u>**Relief Requested**</u>

1.     The Debtors seek entry of an order (the "<u>Order</u>"), substantially in the form attached

hereto as **<u>Exhibit A</u>**:  (a) approving the employment and retention of Berkeley Research Group,

LLC ("<u>BRG</u>") as financial advisor, effective as of July 5, 2022, in accordance with the terms and

conditions of that certain engagement letter dated as of June 30, 2022 (the "<u>Engagement Letter</u>"),

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

annexed as **Exhibit 1** to the Order; and (b) granting related relief.  In support of this Application, the Debtors rely upon and incorporate by reference the declaration of Mark A. Renzi, a BRG Managing Director (the "Renzi Declaration"), attached hereto as **Exhibit B**.

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012.  The Debtors confirm their consent to the Court entering a final order in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 327(a) and 1107(b) of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

### Background

5.      On July 5, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Stephen Ehrlich, Chief Executive Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 15] (the "First Day Declaration"), incorporated by reference herein.[2]

---

[2]    Capitalized terms not defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

6.      The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 18].  On July 19, 2022 the United States Trustee for the Southern District of New York (the "U.S. Trustee")  appointed an official committee of unsecured creditors [Docket No. 102] (the "Committee").  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

## BRG's Qualifications

7.      The Debtors seek to retain BRG because BRG's corporate finance practice has a wealth of experience in providing financial advisory services in restructuring, sale, and wind down scenarios, and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.   BRG professionals have significant restructuring and industry experience assisting distressed companies with financial and operational challenges and working with management teams and boards of directors of large companies facing financial challenges similar to those of the Debtors.  BRG regularly assists large and complex businesses similar to the Debtors.

8.      BRG has acted as financial advisor, crisis manager, and corporate officer in middle market to large multinational companies in crisis or those in need of performance improvement in specific financial and operational areas across a wide array of industries.   Moreover, the professionals at BRG have assisted and advised debtors, creditors, creditors' committees, bondholders, investors, and others in numerous bankruptcy cases, including the bankruptcy cases of *Intelsat S.A.; Liberty Power Holdings, LLC; The Collected Group, LLC; CBL & Associates Properties, Inc.; Hospital Acquisition LLC (d/b/a LifeCare); rue21, inc.; Sports Authority Holdings, Inc.; Specialty Retail Shops Holding Corp. (a.k.a. Shopko); Brookstone*

*Holding Corp.; American Apparel LLC; Rentpath Holdings, Inc.; MF Global Holdings, Ltd.; Le Tote, Inc.; Chrysler (a.k.a. Old Carco LLC); Southern Foods Group; Speedcast International Limited; The Hertz Corporation, LLC; Borden Dairy Company; Nine West Holdings, Inc.; Verity Health System of California, Inc.; Real Industry, Inc.; M & G USA Corporation; Peabody Energy Corporation; Sabine Oil & Gas Corporation; Molycorp Inc.; Refco, Inc.; Spiegel Inc.; W.R. Grace; Penson Worldwide; Dynegy Holdings, LLC; Calpine Generating Company;* and *Nortel Networks Inc.*[3]  BRG's business, experience, and expertise are further described in the Renzi Declaration.

9.     The individuals who will work on this matter (the "BRG Personnel") have substantial expertise in the areas discussed above, and, if approved, will provide services to the Debtors under an order approving this Application.  The BRG Personnel will work closely with the Debtors' management and professionals throughout the reorganization process.  By virtue of the expertise of its restructuring personnel, BRG is well qualified to provide services to and represent the Debtors' interests in these chapter 11 cases.

10.     Since its engagement, BRG has become familiar with the Debtors and various aspects of their financial affairs, debt structure, operations, and related matters.  Likewise, in providing prepetition services to the Debtors, the BRG Personnel have worked closely with the Debtors' management and its other advisors.  Accordingly, BRG has experience, expertise, and specifically relevant knowledge regarding the Debtors that will assist the Debtors in providing effective and efficient services in this chapter 11 case.  The Debtors submit that the retention of BRG on the terms and conditions set forth herein are necessary and appropriate, in the best interest

---

[3]     The professionals were employed in certain of these engagements prior to joining BRG.

of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

### Services to be Provided

11.    As more fully described in the Engagement Letter, the services being provided by BRG prior to and during these chapter 11 cases include the following:[4]

    a)    supporting the development of restructuring plans, financing, and strategic alternatives for the Debtors;

    b)    preparing various financial analyses to support restructuring alternatives including liquidity forecasts, expense levels and others as necessary;

    c)    providing advice to management on cash conservation measures and liquidity forecasting after analyzing and stress testing weekly cash flows under various scenarios;

    d)    advising the Debtors relative to negotiating with existing lenders and stakeholders;

    e)    participating in board calls as requested;

    f)    assisting the Debtors with the communications and negotiations with various third parties to support restructuring alternatives;

    g)    performing other services as requested or directed by the CFO and CEO, the board of directors of the Debtors, or other personnel of the Debtors as authorized by the foregoing and agreed to by BRG; and

---

[4]    The summaries of the Engagement Letter contained in this Application are provided for purposes of convenience only.  Certain of the work streams outlined in the Engagement Letter were completed prior to the Petition Date or superseded by the filing of these chapter 11 cases.  In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control unless otherwise set forth herein.

> h) assisting the Debtors with activities relating to their chapter 11 cases including, as appropriate, testimony if requested.

12.     It is necessary for the Debtors' reorganization efforts that the Debtors retain and employ BRG to render the foregoing professional services.  The Debtors request authority to retain BRG to provide such independent financial advisory services as are necessary during the pendency of these chapter 11 cases.

**Professional Compensation**

13.     Subject to the Court's approval and in accordance with sections 330 and 331 of the Bankruptcy Code, the applicable Bankruptcy Rules, the Local Rules, and other procedures that may be fixed by the Court, the Debtors request that BRG be compensated on an hourly basis and that BRG receive reimbursement of actual and necessary expenses incurred in connection with its representation of the Debtors in these chapter 11 cases.  In accordance with the terms of the Engagement Letter, the Debtors have agreed to compensate BRG for the work performed in furtherance of these chapter 11 cases.

14.     BRG has informed the Debtors that, subject to the Court's approval, it will charge its standard hourly rates for professional services rendered, plus reimbursement of actual and necessary expenses incurred by BRG.  The hourly rates charged by BRG for the services provided by its personnel differ based upon, among other things, each professional's level of experience, geographic differentials, and types of services being provided.  In the ordinary course of business, BRG periodically revises its hourly rates to reflect promotions and other changes in personnel responsibilities, increases in experience, and increases in the cost of doing business.  Rates are typically adjusted annually.  The proposed rates of compensation are the customary hourly rates in effect when services are performed by the professionals who provide services to the Debtors.

The current standard hourly rates for the BRG Personnel anticipated to be assigned to these cases are as follows:

| Role | Hourly Billing Rate |
|------|---------------------|
| Managing Directors & Directors | $750 - $1,195 |
| Senior Staff | $595 - $725 |
| Junior Staff | $380 - $575 |
| Support Staff | $195 - $300 |

15.     The Debtors believe these rates are consistent with market rates for comparable services.  These hourly rates are subject to periodic adjustment, which shall be noted on the invoices for the first time period in which the revised rates become effective.

16.     BRG will maintain detailed records of actual and necessary costs and expenses incurred in connection with the services it provides to the Debtors.  The Debtors understand that BRG is customarily reimbursed for all expenses incurred in connection with the representation of a client in a given matter, including, but not limited to, travel and lodging expenses, business meals, costs of reproduction, research, communications, BRG's legal counsel, any applicable sales or excise taxes, and other direct expenses.

17.     Further, BRG intends to apply for compensation for professional services rendered in connection with these chapter 11 cases, subject to the Court's approval and in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules and any other applicable orders issued by the Court, on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by BRG in connection with these chapter 11 cases.

### No Adverse Interest

18.     To the best of the Debtors' knowledge, and based upon and subject to the disclosures made in the Renzi Declaration, BRG, to the best of the Debtors' knowledge,

information, and belief, does not represent, and does not hold, any interest adverse to the Debtors or their estates, their creditors, or equity security holders, their respective attorneys and accountants, the U.S. Trustee, any person employed by the U.S. Trustee, or any other party in interest in these chapter 11 cases in the matters for which BRG is to be retained. Furthermore, BRG, to the best of the Debtors' knowledge, is not a "creditor" with respect to fees and expenses of the Debtors within the meaning of section 101(10) of the Bankruptcy Code.

19.     Moreover, the professionals and staff expected to provide services to the Debtors on behalf of BRG are not related to the U.S. Trustee assigned to these chapter 11 cases, any person employed by the U.S. Trustee, or the bankruptcy judge presiding over these chapter 11 cases.

20.     As set forth in the Renzi Declaration, if any new relevant facts or relationships bearing on the matters described herein during the period of BRG's retention are discovered or arise, BRG will use reasonable efforts to promptly supplement its disclosure to the Court.

## No Duplication of Services

21.     The Debtors believe that the services provided by BRG will compliment, and not duplicate, the services that other professionals will be providing to the Debtors in these chapter 11 cases. The Debtors will coordinate with BRG and the Debtors' other professionals to minimize unnecessary duplication of efforts among the Debtors' professionals.

## Indemnification

22.     The Engagement Letter contains standard indemnification language with respect to BRG's services, including, without limitation, an agreement by the Debtors to indemnify BRG and its partners, directors, officers, employees, agents, counsel, and affiliates (each a "BRG Party" and collectively, the "BRG Parties") from and against all claims, losses, damages, liabilities, penalties, and expenses arising out of or in connection with the engagement of BRG that is the subject of the Engagement Letter.

8

23.     The Debtors and BRG believe that the indemnification provisions contained in the

Engagement Letter are customary and reasonable for BRG and comparable firms providing

restructuring services.

24.     The terms and conditions of the indemnification provisions were negotiated by the

Debtors and BRG at arm's length and in good faith.  The provisions contained in the Engagement

Letter, viewed in conjunction with the other terms of the proposed order, are reasonable and in the

best interests of the Debtors, their estates, and creditors in light of the fact that the Debtors require

BRG's services to successfully reorganize.

**Basis for Relief**

25.     Section 327(a) of the Bankruptcy Code provides that a debtor, subject to

court approval:

> [M]ay employ one or more attorneys, accountants, appraisers,
> auctioneers, or other professional persons, that do not hold or
> represent an interest adverse to the estate, and that are disinterested
> persons, to represent or assist the [debtor] in carrying out the
> [debtor's] duties under this title.

11 U.S.C. § 327(a).

26.     Bankruptcy Rule 2014(a), requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name
> of the [firm] to be employed, the reasons for the selection, the
> professional services to be rendered, any proposed arrangement for
> compensation, and, to the best of the applicant's knowledge, all of
> the [firm's] connections with the debtor, creditors, any other party
> in interest, their respective attorneys and accountants, the United
> States trustee, or any person employed in the office of the United
> States trustee.

Fed. R. Bankr. P. 2014(a).

27.     The Debtors believe that retention of BRG as financial advisor to the Debtors is

appropriate under Bankruptcy Code section 327(a).  Furthermore, the requirements set forth by

Bankruptcy Rule 2014 are satisfied by this Application.  The retention of BRG as financial advisor to the Debtors is in the best interests of the Debtors' estates, creditors, and parties in interest.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

28.    To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Notice

29.    The Debtors will provide notice of this Application to the following parties and/or their respective counsel, as applicable:  (a) the U.S. Trustee; (b) the Committee; (c) the lender under the Debtors' prepetition loan facility; (d) the United States Attorney's Office for the Southern District of New York; (e) the Internal Revenue Service; (f) the Toronto Stock Exchange; (g) the attorneys general in the states where the Debtors conduct their business operations; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank]*

WHEREFORE, for the reasons set forth herein, in the Renzi Declaration, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated:  July 20, 2022
New York, New York

*/s/ Stephen Ehrlich*
Name:  Stephen Ehrlich
Title:  Co-Founder and Chief Executive Officer
Voyager Digital Ltd.

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER GRANTING THE APPLICATION**
**OF VOYAGER DIGITAL HOLDINGS, INC. AUTHORIZING**
**THE EMPLOYMENT AND RETENTION OF BERKELEY RESEARCH**
**GROUP, LLC AS FINANCIAL ADVISOR EFFECTIVE AS OF JULY 5, 2022**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order"), (a) authorizing the Debtors to employ and retain Berkeley Research Group, LLC ("BRG") as financial advisor, effective as of July 5, 2022, in accordance with the terms and conditions set forth in the engagement letter dated June 30, 2022 (the "Engagement Letter"), attached hereto as **Exhibit 1**; and (b) granting related relief, all as more fully set forth in the Application; and upon the Renzi Declaration attached as **Exhibit B** to the Application; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]    Capitalized terms used but not otherwise defined in this Order shall have the meanings ascribed to them in the Application.

in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that

the relief requested in the Application is in the best interests of the Debtors' estates, their creditors,

and other parties in interest; and this Court having found that the Debtors' notice of the Application

and opportunity for a hearing on the Application were appropriate under the circumstances and no

other notice need be provided; and this Court having reviewed the Application and having heard

the statements in support of the relief requested therein at a hearing before this Court

(the "Hearing"); and this Court having determined that the legal and factual bases set forth in the

Application and at the Hearing establish just cause for the relief granted herein; and upon all of

the proceedings had before this Court; and after due deliberation and sufficient cause appearing

therefor, it is HEREBY ORDERED THAT:

1.    The Application is granted as set forth herein.

2.    Pursuant to section 327(a) of the Bankruptcy Code, the Debtors are hereby

authorized to retain BRG as financial advisor, effective as of July 5, 2022, pursuant to the terms

and conditions set forth in the Application and the Engagement Letter.

3.    BRG shall file interim and final fee applications for allowance of its compensation

and reimbursement of its expenses with respect to services rendered in these chapter 11 cases with

the Court, in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules,

the Local Rules, the Order Establishing Procedures for Monthly Compensation and

Reimbursement of Expenses of Professionals, dated December 21, 2010 (General Order M-412),

Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New

York, dated January 29, 2013 (General Order M-447), applicable U.S. Trustee guidelines, this

Order, and such other procedures as may be fixed by order of the Court.

4.      Except to the extent set forth herein, the terms of the Engagement Letter, including,

without limitation, the Indemnification Provisions set forth therein, are approved, as modified

herein.

5.      Notwithstanding anything to the contrary in the Engagement Letter, the

indemnification provisions are hereby modified and restated in their entirety as follows:

(i)      All requests of BRG for payment of indemnity pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, *provided, however*, that in no event shall BRG be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

(ii)     In the event that BRG seeks reimbursement from the Debtors for reasonable attorneys' fees in connection with a request by BRG for payment of indemnity pursuant to the Engagement Letter, as modified by this Order, the invoices and supporting time records from such attorneys shall be included in BRG's own application (both interim and final) and such invoices and time records shall be subject to the fee guidelines and the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

(iii)    BRG shall not be entitled to reimbursement by the Debtors for any fees, disbursements and other charges of BRG's counsel other than those incurred in connection with a request of BRG for payment of indemnity, the retention of BRG, and preparation of fee applications, or those incurred in connection with a BRG expert's deposition or testimony within these chapter 11 cases, but only in the instance where counsel to the Debtors is unable to serve as counsel to the testifying expert.

6.      Notwithstanding any provision to the contrary in the Engagement Letter, any

dispute relating to the services provided by BRG shall be referred to arbitration consistent with

the terms of the Engagement Letter only to the extent that this Court does not have, retain or

exercise jurisdiction over the dispute, and 28 U.S.C. § 1334(e)(2) shall govern the form for resolving fee disputes.

7.      BRG shall use reasonable efforts to avoid any unnecessary duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

8.      In connection with any increase in BRG's rates for any individual retained by BRG and providing services in these cases, BRG shall file a supplemental affidavit with the Court and provide ten business days' notice to the Debtors, the United States Trustee for the Southern District of New York ("U.S. Trustee") and any official committee, prior to filing a fee statement or fee application reflecting such an increase. The supplemental affidavit shall explain the basis for the requested rate increases in accordance with Section 330(a)(3)(F) of the Bankruptcy Code and state whether the Debtors have consented to the rate increase. The U.S. Trustee retains all rights to object to any rate increase on all grounds including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

9.      Notwithstanding anything in the Application to the contrary, to the extent that BRG uses the services of independent contractors or subcontractors (collectively, the "Contractors") in these cases, BRG shall (i) pass through the cost of such Contractors to the Debtors at the same rate that BRG pays the Contractors; (ii) seek reimbursement for actual costs only; (iii) ensure that the Contractors are subject to the same conflict checks as required for BRG; and (iv) file with the Court such disclosures required by Bankruptcy Rule 2014. BRG does not intend to use the employees of any foreign affiliate or subsidiary in the course of this engagement.

10.     In the event BRG seeks to use any of its affiliates to perform services for the Debtors, the Debtors shall seek the separate retention of any such affiliates.

11.     To the extent there is any inconsistency between the terms of the Engagement Letter, the Application, and this Order, the terms of this Order shall govern.

12.     The notice requirements of Bankruptcy Rule 6004(a) are deemed waived.

13.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

14.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

15.     Notwithstanding any term in the Engagement Letter to the contrary, this Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

## <u>Exhibit 1</u>

**Engagement Letter**

DocuSign Envelope ID: 9B37B829-9840-4581-A405-416DE8DE085C



**INTELLIGENCE THAT WORKS**

**CONFIDENTIAL**

June 30, 2022

Via Email

Stephen Ehrlich
Chief Executive Officer
Voyager Digital, LLC
33 Irving Plaza, Suite 3060
New York, NY 10003

**Re: Voyager Digital – Restructuring Services**

Dear Mr. Ehrlich,

This letter confirms the engagement of Berkeley Research Group, LLC ("BRG") to provide financial advisory and consulting services to Voyager Digital, LLC ("Client"). This letter and any attachments set forth the agreement ("Agreement") between the parties.

**SCOPE OF SERVICES**

The scope of services under this engagement shall consist of the following activities ("Services"):

- Support the development of restructuring plans, financing, and strategic alternatives for the Client;
- Prepare various financial analysis to support restructuring alternatives including liquidity forecast, expense levels and others as necessary;
- Provide advice to management on cash conservation measures and liquidity forecasting after analyzing and stress testing weekly cash flows under various scenarios;
- Advise the Client relative to negotiating with existing lenders and stakeholders;
- Participate in board calls as requested;
- Assist Client with the communications and negotiations with various third parties to support restructuring alternatives;
- Other services as requested or directed by the CFO and CEO, the board of directors of the Client (the "Board") or other Client personnel as authorized by the foregoing and agreed to by BRG; and
- If a Chapter 11 bankruptcy were to become necessary, assist the Client with activities relating to such bankruptcy including, as appropriate, testimony if requested.

It is understood and agreed that BRG's Services may include advice and recommendations, but that all decisions in connection with the implementation of such advice and recommendations will be the responsibility of Client.

**FEES & EXPENSES**

Client will pay BRG professional fees, which will be based on the actual hours charged at BRG's standard hourly rates, which are in effect when the Services are rendered ("Professional Fees"). Hourly rates may change in the future from time to time and are typically adjusted annually. BRG's current hourly rates are as follows:



| Managing Directors & Directors | $750 – $1,195 |
| Senior Staff | $595 – $725 |
| Junior Staff | $380 – $575 |
| Support Staff | $195 – $300 |

In addition to Professional Fees, BRG will be reimbursed for reasonable and documented direct out-of-pocket expenses including, but not limited to, travel, costs of reproduction, typing, research, communications, computer usage, legal counsel, any applicable sales or excise taxes, and other direct expenses. BRG will provide a reasonably itemized statement of expenses incurred on this engagement, and shall provide copies of original invoice or other documentation on itemized expenses over $75 upon request. Client shall reimburse BRG for reasonable itemized expenses less than $75 without a copy of the original invoice or other documentation.

BRG will bill for Services every two (2) weeks and will provide customary descriptions regarding the Services rendered.  BRG will provide additional details regarding Services rendered upon request by Client. BRG's invoices statements shall be paid within seven (7) days of the invoice date. Client agrees that it will review BRG's invoices upon receipt and will advise BRG of any objection to or dispute with the invoice and the work reflected in the invoice within seven (7) days of the invoice date.

Without liability, BRG reserves the right to withhold delivery of Services, testimony, reports or data (written or oral), or suspend work, if the account on this engagement is not current. A late payment charge of one percent (1%) per month (or the maximum rate permitted by law, whichever is less) may be added to any outstanding invoices that are past due.

Please remit payments by wire to:
Account Name: Berkeley Research Group, LLC
Account No:      8026286672
Bank:               PNC Bank, N.A.
ABA No:          031207607
remitadvice@thinkbrg.com

**CASH ON ACCOUNT**

Initially, Client will forward to BRG the amount of $250,000, which funds will be held "on account" to be applied to BRG's Professional Fees, charges and disbursements for the engagement (the "Initial Cash on Account").  To the extent that this amount exceeds BRG's fees, charges and disbursements upon the completion of the engagement, BRG will refund any unused portion.  Client agrees to increase or supplement the Initial Cash on Account from time to time during the course of the engagement in such amounts as Client and BRG mutually shall agree are reasonably necessary to increase the Initial Cash on Account to a level that will be sufficient to fund Professional Fees, charges, and disbursements to be incurred.

Upon transmittal of an invoice, BRG may immediately draw upon the Initial Cash on Account (as replenished from time to time) in the amount of the invoice.  Client agrees upon submission of each such invoice to promptly wire the invoice amount to BRG as replenishment of the Initial Cash on Account (together with any supplemental amount to which BRG and Client mutually agree), without prejudice to

DocuSign Envelope ID: 9B37B829-9840-4581-A405-416DF8DE085C



Client's right to advise BRG of any differences it may have with respect to such invoice. BRG has the right to apply to any outstanding invoice (including amounts billed prior to the date hereof), up to the remaining balance, if any, of the Initial Cash on Account (as may be supplemented from time to time) at any time subject to (and without prejudice to) Client's opportunity to review BRG's invoices.

## COMPANY RESPONSIBILITIES

Client agrees that the delivery of Services and Professional Fees charged are dependent on timely and effective cooperation from the Client. Accordingly, Client shall furnish to BRG financial information and other information regarding the business of Client as BRG may reasonably request in connection with the Agreement. Client also represents that information furnished to BRG is accurate and complete at the time it is furnished and agrees to keep BRG advised of developments materially affecting Client or its financial position. Client shall make decisions and take further actions, as Client determines in its sole discretion, relating to any recommendations made by BRG in connection with this Agreement.

BRG shall not make any management decisions on behalf of Client and will not be responsible for Client's decision to pursue, or not to pursue, any business strategy or to implement, or not implement, recommendations made by BRG. As part of the Services, BRG may be requested to assist Client (and its legal or other advisors) in negotiating with Client's creditors and equity holders and with other interested parties. In the event that BRG participates in such negotiations, the representations made and the positions advanced will be those of Client and its management, not BRG or its employees.

## CONFIDENTIALITY

BRG shall not disclose any confidential or privileged information to any third party; provided, however, that BRG may disclose confidential or privileged information (a) to BRG's employees, affiliates, vendors or agents who provide Services in connection with this engagement, (b) with Client's written consent, or (c) when legally required to do so. Both parties agree that confidential and proprietary information will not be construed to include information that is available from public sources or sources not subject to obligations of confidentiality to Client. Work papers associated with BRG's consulting Services are the confidential property of BRG.

## OWNERSHIP OF DELIVERABLES & DATA

Client acknowledges and agrees that BRG is the sole owner of any deliverables provided in connection with the Services, including, without limitation, all copyrights, trademarks, patents and trade secrets and other intellectual property rights (including, without limitation, goodwill) therein, and all rights attendant thereto. BRG hereby grants to Client a non-exclusive, royalty-free irrevocable right to use the deliverables for its own internal purposes. To the extent that Client wishes to disclose to any third party the work product of BRG, it will so advise BRG prior to such disclosure. BRG may require any third party to execute a non-reliance and release letter acceptable to BRG in form and substance. Further, BRG will not assume, or be deemed to have assumed, any responsibility, obligation or liability to any third party to which any advice, report or other work product is disclosed or otherwise made available.

Client represents and warrants that Client has any and all necessary right, title, license and authority (including any and all necessary permissions from third-party owners) to transfer to BRG, grant access to BRG or allow BRG to use for the purpose of rendering Services to Client, any and all of the data or other

DocuSign Envelope ID: 9B37B829-9840-4581-A49E-416DE8DE085C



information that Client provides to BRG for such purpose. Client agrees to indemnify BRG against any and liabilities, including liabilities arising from claims brought by third parties and any and all costs of defense, arising from such transfer, access or use.

**CONFLICTS OF INTEREST**

BRG is engaged by many other companies and individuals. It is possible that some of BRG's past, current or future clients had, have or may have disputes or other matters that are adverse to or may not be consistent with the interests of Client. BRG reserves the right to undertake unrelated engagements during and after this engagement by Client, consistent with BRG's internal policies. BRG will not be required to disclose any such unrelated engagements to Client. BRG will institute procedures to protect the confidentiality of information provided by Client in the course of this engagement.

**ARBITRATION**

This Agreement shall be interpreted and controlled by the laws of the state of Delaware. Any controversy, dispute, or claim between Client on the one hand and BRG on the other hand of whatever nature arising out of, in connection with, or in relation to the interpretation, performance or breach of this agreement, including any claim based on contract, tort, or statute ("Claims"), shall be resolved at the request of any party to this agreement, by final and binding arbitration, administered by Judicial Arbitration & Mediation Services, Inc. (JAMS), or its successor entity, pursuant to Streamlined Arbitration Rules & Procedures, and judgment upon any award rendered by the arbitrator may be entered by any State or Federal Court having jurisdiction thereof. Any such arbitration shall take place exclusively in Massachusetts. The prevailing party shall be entitled to reasonable attorneys' fees and costs incurred in any arbitration or litigation brought in connection with this Agreement, as well as reasonable attorneys' fees and costs incurred in appealing or in connection with any action to enforce any judgment entered by the arbitrator in any court having jurisdiction. If a party to any arbitration proceeding filed in connection with this Agreement fails to pay any costs of the arbitration required to be paid by such party in the time required for payment, the arbitrator is authorized to provide an appropriate remedy, including an entry of a default and an arbitration award on the merits against such party.

**INDEMNITY & LIMITATION OF LIABILITY**

Client agrees to indemnify and hold harmless BRG against any and all losses, claims, damages, liabilities, penalties, judgments, awards, costs, fees, expenses and disbursements including, without limitation, defending any action, suit, proceedings or investigation (whether or not in connection with proceedings or litigation in which BRG is a party), directly or indirectly, caused by, relating to, based upon, arising out of or in connection with the engagement of BRG or any Services rendered pursuant to this engagement, unless there is a final non-appealable order of a court of competent jurisdiction finding BRG directly liable for gross negligence or willful misconduct. These indemnification provisions extend to the members, principals, employees, representatives, agents, counsel and affiliates of BRG.

The parties shall not be liable to each other for any delays resulting from circumstances or causes beyond its reasonable control, including, without limitation, fire or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order or requirement of any governmental agency or authority.



Notwithstanding the indemnification and any other terms of this Agreement, the parties shall not be liable to each other for any consequential, incidental, special or punitive damages, nor shall BRG be liable for direct compensatory damages in excess of the fees actually received by BRG for the performance of Services hereunder.

## TERMINATION

Client or BRG may terminate this engagement upon seven (7) days' written notice. In the event the engagement is terminated prior to the completion of Services, Clients agrees to pay BRG for all Professional Fees and expenses incurred through the termination date.

## OTHER TERMS

In the event BRG is requested pursuant to subpoena or other legal process to produce any documents or to provide testimony relating to engagements for Client in judicial or administrative proceedings to which BRG is not a party, Client shall reimburse BRG at standard billing rates for all professional time and expenses, including reasonable attorneys' fees, incurred in preparing for and responding to requests for documents and providing testimony.

Client will only use any advice, report or work product produced under this engagement for making its own internal business decisions. Client will solely rely on its own analysis and review to make any investment or other business decision. BRG will not render an assurance report or assurance opinion as part of this engagement, nor will the Services constitute an audit, review or examination of any entity's financial statements or prospective financial statements in accordance with generally accepted auditing standards or other applicable professional standards. None of the Services or any report will constitute any legal opinion or advice, nor will the Services or any reports constitute a fairness opinion, investment or accounting advice. BRG will not conduct a review to detect fraud or illegal acts, nor will BRG render any opinion as to the fairness or advisability of any proposed transaction. In addition, Client acknowledges that no reliance shall be placed on draft reports, conclusions or advice, whether oral or written, issued by BRG as the same may be subject to further work, revision and other factors which may mean that such drafts are substantially different from any final report issued by BRG. Client will not use the report or work product under this engagement for any use beyond the use set forth in this letter.

Unless otherwise explicitly stated, all provisions of this Agreement shall survive the expiration or termination of this engagement. Neither party may assign, transfer or delegate any of the rights or obligations hereunder without the prior written consent of the other party. The section headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement. This engagement letter and its terms and conditions constitute the entire Agreement between BRG and Client with respect to the subject matter hereof and supersedes all other oral and written representations, understandings or agreements relating to the subject matter hereof. No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby.

DocuSign Envelope ID: 9B37B829-9840-4581-A495-416DE8DE085C



This Agreement may be executed in one or more counterparts, each of which may be signed and transmitted via facsimile or PDF electronic delivery with the same validity as if it were an ink-signed document.

Sincerely,


Mark Renzi
Managing Director


AGREED AND ACCEPTED:

Voyager Digital, LLC

DocuSigned by:

*Steve Ehrlich*

By_____          Dated_____
    3724C7F0863B426...                                    6/30/2022
       Stephen Ehrlich, CEO

**<u>Exhibit B</u>**

**Renzi Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF MARK A. RENZI IN**
**SUPPORT OF THE APPLICATION OF VOYAGER DIGITAL**
**HOLDINGS, INC. FOR ENTRY OF AN ORDER AUTHORIZING**
**THE EMPLOYMENT AND RETENTION OF BERKELEY RESEARCH**
**GROUP, LLC AS FINANCIAL ADVISOR EFFECTIVE AS OF JULY 5, 2022**

I, Mark A. Renzi, hereby declare under penalty of perjury, as follows:

1.        I am a Managing Director with Berkeley Research Group, LLC ("BRG"), a professional services firm with numerous offices throughout the country.  I am duly authorized to execute this declaration (the "Declaration") on behalf of BRG.  I submit this Declaration in connection with the application (the "Application")[2] of the above-captioned debtors and debtors in possession (the "Debtors"), to employ and retain BRG as financial advisor, effective as of July 5, 2022, in accordance with the terms and conditions of that certain engagement letter dated as of June 30, 2022 (the "Engagement Letter").  Except as otherwise noted, I have personal knowledge of the matters set forth herein and, if called as a witness, I could and would testify thereto.[3]

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]    Capitalized terms used but not otherwise defined in this Order shall have the meanings ascribed to them in the Application.

[3]    Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at BRG and are based on information provided by them.

### BRG's Qualifications

2.      BRG's corporate finance practice consists of senior financial, management consulting, accounting, and other professionals who specialize in providing financial, business, and strategic assistance typically in distressed business settings.  BRG has a wealth of experience in providing financial advisory services in and out of court restructuring, sale, and wind down scenarios, and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.  BRG professionals have significant restructuring and industry experience assisting distressed companies with financial and operational challenges and working with management teams and boards of directors of large companies facing financial challenges similar to those of the Debtors.  BRG regularly assists large and complex businesses similar to the Debtors.

3.      BRG has acted as financial advisor, crisis manager, and corporate officer in middle market to large multinational companies in crisis or those in need of performance improvement in specific financial and operational areas across a wide array of industries.  Moreover, the professionals at BRG have assisted and advised debtors, creditors, creditors' committees, bondholders, investors, and others in numerous bankruptcy cases, including the bankruptcy cases of *Intelsat S.A.; Liberty Power Holdings, LLC; The Collected Group, LLC; CBL & Associates Properties, Inc.; Hospital Acquisition LLC (d/b/a LifeCare); rue21, inc.; Sports Authority Holdings, Inc.; Specialty Retail Shops Holding Corp. (a.k.a. Shopko); Brookstone Holding Corp.; American Apparel LLC; Rentpath Holdings, Inc.; MF Global Holdings, Ltd.; Le Tote, Inc.; Chrysler (a.k.a. Old Carco LLC); Southern Foods Group; Speedcast International Limited; The Hertz Corporation, LLC; Borden Dairy Company; Nine West Holdings, Inc.; Verity Health System of California, Inc.; Real Industry, Inc.; M & G USA Corporation; Peabody Energy Corporation;*

*Sabine Oil & Gas Corporation; Molycorp Inc.; Refco, Inc.; Spiegel Inc.; W.R. Grace; Penson Worldwide; Dynegy Holdings, LLC; Calpine Generating Company;* and *Nortel Networks Inc.*[4]

4.      The individuals who will work on this matter (the "BRG Personnel") have substantial expertise in the areas discussed above, and, if approved, will provide services to the Debtors under an order approving the Application.  The BRG Personnel will work closely with the Debtors' management and professionals throughout the reorganization process.  By virtue of the expertise of its restructuring personnel, BRG is well qualified to provide services to and represent the Debtors' interests in these chapter 11 cases.

5.      Since its engagement, BRG has become familiar with the Debtors and various aspects of their financial affairs, debt structure, operations, and related matters.  Likewise, in providing prepetition services to the Debtors, the BRG Personnel have worked closely with the Debtors' management and its other advisors.  Accordingly, BRG has experience, expertise, and specifically relevant knowledge regarding the Debtors that will assist the Debtors in providing effective and efficient services in these chapter 11 cases.  The Debtors believe that the retention of BRG on the terms and conditions set forth herein are necessary and appropriate, in the best interest of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

**Services to be Provided**

6.      As more fully described in the Engagement Letter, the services being provided by BRG prior to and during these chapter 11 cases include the following:[5]

---

[4]    The professionals were employed in certain of these engagements prior to joining BRG.

[5]    The summaries of the Engagement Letter contained in this Application are provided for purposes of convenience only.  Certain of the work streams outlined in the Engagement Letter were completed prior to the  Petition Date or superseded by the filing of these chapter 11 cases.  In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control unless otherwise set forth herein.

a) supporting the development of restructuring plans, financing, and strategic alternatives for the Debtors;

b) preparing various financial analyses to support restructuring alternatives including liquidity forecasts, expense levels and others as necessary;

c) providing advice to management on cash conservation measures and liquidity forecasting after analyzing and stress testing weekly cash flows under various scenarios;

d) advising the Debtors relative to negotiating with existing lenders and stakeholders;

e) participating in board calls as requested;

f) assisting the Debtors with the communications and negotiations with various third parties to support restructuring alternatives;

g) performing other services as requested or directed by the CFO and CEO, the board of directors of the Debtors, or other personnel of the Debtors as authorized by the foregoing and agreed to by BRG; and

h) assisting the Debtors with activities relating to their chapter 11 cases including, as appropriate, testimony if requested.

7.     It is necessary for the reorganization efforts of the Debtors that the Debtors employ BRG to render the foregoing professional services.  The Debtors are requesting authority to retain BRG to provide such independent financial advisory services as are necessary during the pendency of these chapter 11 cases.

**Disinterestedness**

8.      In connection with the proposed employment and retention of BRG by the Debtors, BRG[6] undertook to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors or their estates. Specifically, BRG obtained from the Debtors and/or their representatives the names of individuals and entities that may be parties in interest in these chapter 11 cases ("Potential Parties in Interest"). Accordingly, we are relying on the accuracy and completeness of this information in connection with our conflict review and disclosure.  Such parties are listed on **Schedule 1**.  BRG's internal conflict check procedures consist of querying of the Potential Parties in Interest within an internal computer database containing names of individuals and entities that are present or former clients of BRG.  The database that BRG queries to determine its lack of conflicts and disinterestedness incorporates the names of individuals and entities that are present and former clients both of BRG and all of its affiliates, subsidiary, and parent entities.  Additionally, new matters are circulated to all Directors and Managing Directors of BRG with a request to review and advise of any potential conflict of interest concerns.  All responses are reviewed and addressed by an attorney on BRG's conflicts team.

9.      Based on the results of its review, completed under my supervision, BRG does not have a relationship with any of the parties on **Schedule 1** in matters related to these proceedings. As set forth below and in **Schedule 2**, which is attached hereto, BRG has certain relationships with certain Potential Parties in Interest in these cases, but such relationships are unrelated to the Debtors, or the chapter 11 cases.  To the best of my knowledge, information and belief, neither I

---

[6]     All disclosures contained herein pertaining to relationships with the Potential Parties in Interest or other elements of BRG's disinterestedness encompass both Berkeley Research Group, LLC and its affiliate, subsidiary, and parent entities.

nor any other Managing Director or Director of BRG has any connection with or holds any interest adverse to the Debtors, their estates, creditors, shareholders, or any other Potential Parties in Interest herein or their respective attorneys in the matters for which BRG is proposed to be employed, except that BRG has provided other consulting services, and may in the future provide such services, to certain of the Debtors' creditors or other Potential Parties in Interest in matters unrelated to the Debtors' cases. To the best of my knowledge, no services have been provided to these Potential Parties in Interest in matters materially relating to these chapter 11 cases, nor does BRG's involvement in these cases compromise its ability to continue such consulting services.

10.    Further, as part of its diverse practice, BRG appears in numerous cases, proceedings, and transactions that involve many different professionals, including attorneys, accountants, investment bankers, and financial consultants, who may represent claimants and parties in interest in these chapter 11 cases. Also, BRG has in the past, currently, and may in the future, be represented by several attorneys and law firms, some of whom may be involved in these chapter 11 cases. In addition, BRG has in the past, is currently, and will likely in the future be engaged in matters, unrelated to the Debtors or these chapter 11 cases, in which it works with or against other professionals involved in these cases. Moreover, BRG might have referred work to other professionals who are retained in these chapter 11 cases. Likewise, certain such professionals who are retained in these chapter 11 cases might have referred work to BRG. Based on BRG's current knowledge of the professionals involved, and to the best of my knowledge, insofar as I have been able to ascertain after reasonable inquiry, none of these business relationships create an interest materially adverse to the Debtors in matters upon which BRG is to be employed, and none are in connection with these cases.

11.    To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, and except as set forth herein, neither I nor any of the BRG

Personnel (a) have any connection with the U.S. Trustee, or any employee in the U.S. Trustee's office or (b) are related or connected to any United States Bankruptcy Judge for the Southern District of New York or any of the District Judges for the Southern District of New York who handle bankruptcy cases, except as otherwise set forth herein.

12.    To the best of my knowledge, none of the BRG Personnel is a direct holder of any of the Debtors' securities.  It is possible that certain BRG Personnel or BRG employees, managing directors, board members, equity holders, or affiliates of any of the foregoing, may own interests in mutual funds or other investment vehicles (including various types of private funds) that own the Debtors' or other Potential Parties in Interests' debt or equity securities or other financial instruments including bank loans and other obligations.  Typically, the holders of such interests have no control over investment decisions related to such investment funds or financial instruments.  BRG's policy prohibits its employees from personally trading in the Debtors' securities.

13.    Accordingly, to the best of my knowledge, BRG is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code because BRG and its Managing Directors and Directors:

    a)  are not creditors, equity security holders or insiders of the Debtors;

    b)  are not and were not, within two years before the Petition Date, directors, officers, or employees of the Debtors; and

    c)  do not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors or for any other reason.

14.     From time to time, BRG may be asked to value and manage the liquidation of assets of investment funds.  Such investment funds could, from time to time, take positions in debt or equity of the Debtors, without BRG's knowledge or consent.  BRG has no pecuniary interest in such investment funds, nor will BRG profit from the value realized from the sale of the investment fund's interests in the Debtors.  Under such circumstances, if BRG is providing valuation work on any debt or equity securities of the Debtors for any investment fund for the duration of this engagement, then the BRG employee undertaking such work will be restricted and have no access to the confidential information of the Debtors.  Moreover, to the extent any employee of BRG is utilized by the Debtors for valuation expertise (and, accordingly, given access to confidential information of the Debtors), for the duration of this engagement, that employee will not perform any valuation work on any debt or equity securities of the Debtors for any investment fund.

15.     To the extent I discover any additional facts bearing on the matters described herein and required to be disclosed during the period of the Debtors' retention of BRG, I will supplement the information contained in this Declaration.

16.     By reason of the foregoing, I believe BRG is eligible for employment and retention by the Debtors pursuant to sections 327(a) (as modified by section 1107(b)), 330, and 331 of the Bankruptcy Code and the applicable Bankruptcy Rules and Local Rules.

## **BRG's Compensation**

17.     BRG intends to apply to this Court for allowance of compensation for professional services and reimbursement of expenses incurred in connection with these chapter 11 cases, in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court.

18.     BRG will charge its standard hourly rates for professional services rendered to the Debtors, plus reimbursement of actual and necessary expenses incurred by BRG.  The hourly rates

8

charged by BRG for the services provided by its personnel differ based upon, among other things, each professional's level of experience, geographic differentials, and types of services being provided.  In the ordinary course of business, BRG periodically revises its hourly rates to reflect promotions and other changes in personnel responsibilities, increases in experience, and increases in the cost of doing business.  Rates are typically adjusted annually.

19.    For professional services, fees are based on BRG's standard hourly rates.  The current standard hourly rates for the BRG Personnel anticipated to be assigned to these cases are as follows:

| Role | Hourly Billing Rate |
|------|---------------------|
| Managing Directors & Directors | $750 - $1,195 |
| Senior Staff | $595 - $725 |
| Junior Staff | $380 - $575 |
| Support Staff | $195 - $300 |

20.    These hourly rates are subject to periodic adjustment, which shall be noted on the invoices for the first time period in which the revised rates become effective.  We believe that our standard hourly rates are at or below those of national firms of similar stature to BRG.

21.    Consistent with BRG's policy with respect to its other clients, BRG will charge for all other services provided and for other charges and disbursements incurred in rendering services to the Debtors.  These customary items include, among other things, travel and lodging expenses, business meals, costs of reproduction, research, communications, our legal counsel, any applicable sales or excise taxes, and other direct expenses.  Internal costs or overhead cost and document production services (including regular secretarial and word processing time) will not be charged for separately.

22.     BRG will also request compensation for any time and expenses (including, without limitation, reasonable legal fees and expenses, except in the case of legal fees pertaining to any fee defense) that may be incurred in considering or responding to discovery requests or other requests for documents or information or in participating as a witness or otherwise in any legal, regulatory, or other proceedings, including, without limitation, those other than the instant matter, as a result of BRG's performance of these services.

23.     BRG believes its requested compensation structure is consistent with and typical of compensation arrangements entered into by other comparable firms that render similar services under similar circumstances.  BRG believes that the compensation structure is reasonable, market-based, and designed to compensate BRG fairly for its work and to cover fixed and routine overhead expenses.

24.     Regardless of the time and manner of interim compensation, BRG understands that, subject to this Court's orders, BRG will be required to follow the procedures for final allowance of fees at the end of the bankruptcy cases.

25.     No promises have been made or received by BRG, nor any employee or exclusive independent contractor thereof, as to payment or compensation in connection with these cases other than in accordance with the provisions of section 504 of the Bankruptcy Code.  Except for internal agreements among the employees and exclusive independent contractors of BRG regarding the sharing of revenue or compensation, neither BRG nor any of its employees or independent contractors has entered into an agreement or understanding to share compensation as described in Bankruptcy Code section 504 and Bankruptcy Rule 2016.

26.     To the extent BRG uses the services of independent contractors or subcontractors (the "Contractors") in this chapter 11 case, BRG shall:   (a) pass through the cost of such Contractors to the Debtors at the same rate that BRG pays the Contractors; (b) seek reimbursement

for actual costs only; (c) ensure that the Contractors are subject to the same conflict checks as required for BRG; and (d) file with the Court such disclosures required by Bankruptcy Rule 2014.

27.     To the extent BRG requires services of its international divisions or personnel from specialized practices, the standard hourly rates for that international division or specialized practice will apply.  To be clear, however, to the extent any such services are required, they would be billed in United States currency.

28.     BRG does not believe it is a "creditor" with respect to fees and expenses of the Debtors within the meaning of section 101(10) of the Bankruptcy Code.

29.     BRG received unapplied advance payments from the Debtors in the amount of $250,000.00 (the "Cash on Account").  According to BRG's books and records, during the 90-day period prior to the Petition Date, the Debtors paid BRG $750,000.00 in aggregate for professional services performed and expenses incurred, inclusive of the Cash on Account.

30.     The Debtors and BRG have agreed that any portion of the Cash on Account not used to compensate BRG for its prepetition services and reasonable and documented out-of-pocket expenses will be held and applied against its final postpetition billing and will not be placed in a separate account.

31.     Due to the ordinary course and unavoidable reconciliation of fees and submission of expenses immediately prior, and subsequent to the Petition Date, BRG may have incurred, but not invoiced, fees and reimbursable expenses that relate to the prepetition period.  BRG intends to apply the Cash on Account against such amounts.  As agreed to with the Debtor, the remainder of the Cash on Account will not be segregated by BRG in a separate account and will be held as a general retainer as security for postpetition services and expenses.

## **No Duplication of Services**

32.     BRG believes that the services it provides to the Debtors will compliment, and not duplicate, the services that other professionals will be providing to the Debtors in these chapter 11 cases.    Specifically, BRG will carry out unique functions and will use reasonable efforts to coordinate with the Debtors and the other professionals retained in these chapter 11 cases to avoid the unnecessary duplication of services.

33.     By reason of the foregoing, I believe BRG is eligible for employment and retention by the Debtors pursuant to sections 327(a) (as modified by sections 1107(b)), 330, and 331 of the Bankruptcy Code and the applicable Bankruptcy Rules and Local Rules.

*[Remainder of page intentionally left blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: July 20, 2022                    */s/ Mark A. Renzi*
Boston, Massachusetts                   Mark A. Renzi
                                        Managing Director
                                        Berkeley Research Group, LLC

13

## <u>Schedule 1</u>

**LIST OF POTENTIAL PARTIES IN INTEREST**

**Debtors**
Voyager Digital Holdings, Inc.
Voyager Digital Ltd.
Voyager Digital, LLC

**Current and Former Affiliates**
Coinify Financial Services ApS
Coinify Global Solutions Inc.
Coinify Ltd.
Coinify Payments OU
Coinify Technologies ApS
HTC Trading Inc.
LGO SAS
Voyager Digital Brokerage Canada Ltd.
Voyager Digital Brokerage Ltd.
Voyager Digital Holdings Inc.
Voyager Digital LLC
Voyager Digital Ltd.
Voyager Digital NY LLC
Voyager Europe
Voyager European Holdings ApS
Voyager IP LLC
VYGR Holdings LLC
VYGR Management LLC

**Current and Former Directors and Officers**
Ackart, Jennifer
Akbar Ladhani
Barrilleaux, Janice
Bateman, Lewis
Brandi Reynolds
Brooks, Brian
Brosgol, David
Costantino, Daniel
Dreuzy, Gaspard Aupepin de Lamothe
Egert, Mark
Ehrlich, Stephen
Elliott, Guy
Erin Walmesley
Eytan, Philip
Frizzley, Jill
Gaspard Aupepin de Lamothe Dreuzy
Gidwani, Rakesh
Guy Elliott
Hanshe, Gerard
Hugo, Victor
Jarrett Lilien

Jeffrey B. Lightfoot
Jensen, Marshall
Jordana Keslassy
Keslassy, Jordana
Kramer, Pam
Kreiker, Serge
Ladhani, Akbar
Lavine, Shingo
Legg, Michael
Lewis Bateman
Lightfoot, Jeffrey B.
Lilien, Jarrett
Pohl, Tim
Prithipaul, Ashwin
Psaropoulos, Evan
Ray, Matthew
Reynolds, Brandi
Serge Kreiker
Shingo Lavine
Stevens, Glenn
Toth, Krisztian
Victor Hugo
Vogel, Scott
Walmesley, Erin

**Significant Equityholder**
Alameda Research Ventures LLC

**Bankruptcy Professionals**
Berkeley Research Group LLC
Deloitte & Touche LLP
Fasken Martineau DuMoulin LLP
Grant Thornton LLP
Moelis & Co.
Quinn Emanuel Urquhart & Sullivan LLP
Stretto
Valuation Research Corp.

**Banks**
Signature Bank
Bank of Montreal
BMO
Metropolitan Commercial Bank
Silvergate Bank

**Lending Counterparties**
Alameda Research Ltd.

Alameda Ventures Ltd
Anchorage Digital Bank N.A.
Anchorage Lending CA, LLC
BitGo Prime, LLC
Galaxy Digital LLC
Genesis Global Capital, LLC
JSCT, LLC (Jane Street)
Tai Mo Shan Limited (Jump Operations, LLC)
Tesseract Group Oy
Three Arrows Capital Ltd.
Wintermute Trading Ltd

**Contract Parties**
Amazon.com Inc.
Celsius Network Ltd.
Chainalysis Inc.
Copper Technologies (UK) Ltd.
Cumberland DRW LLC
Dallas Basketball Ltd.
Dinwiddie Corp., The
DV Chain LLC
FiCentive Inc.
Fireblocks Inc.
Fireblocks Ltd.
Gronk Endorsements LLC
JSCT LLC
Landon Cassill Inc.
Ledger Technologies Inc.
Tai Mo Shan Ltd.
Talos Trading Inc.
ThoughtWorks Inc.
Usio Inc.
Wintermute Trading Ltd.

**Customers**
[CONFIDENTIAL]

**Insurance**
CAC Specialty Co.
FirstBrook Cassie & Anderson Ltd.
Great Midwestern Insurance Co.
Hartford Fire Insurance Co.
Hartford Underwriters Insurance Co.
Lloyd's of London Syndicate
MJD3 Associates LLC
Relm Insurance Ltd.
XL Specialty Insurance Co.

**Landlords**
Regus
WeWork Inc.

**Litigation**
Alabama, State of, Securities Commission
Berk, Jordan
California, State of, Business, Consumer Services & Housing Agency, Department of Financial
Protection & Innovation
Cassidy, Mark
Indiana, State of, Securities Division
Kentucky, Commonwealth of, Department of Financial Institutions
New Jersey, State of, Bureau of Securities
Oklahoma, State of, Department of Securities
South Carolina, State of, Securities Commissioner
Texas, State of, Securities Board
US Bank NA
Vermont, State of, Department of Financial Regulation
Washington, State of, Department of Financial Institutions, Securities Division

**Ordinary Course Professionals**
Berger Singerman LLP
Conyers Dill & Pearman LLP
Day Pitney LLP
Frankfurt Kurnit Klein & Selz PC
Jackson Lewis PC
Jenner & Block LLP
Kramer Levin Naftalis & Frankel LLP
Lowenstein Sandler LLP
Mintz & Gold LLP
Paul Hastings LLP
Seyfarth Shaw LLP
Troutman Pepper Hamilton Sanders LLP
Walkers Corporate Ltd.

**Potential M&A Transaction Counterparties**
[CONFIDENTIAL]

**Taxing Authority/ Governmental/**
**Regulatory Agencies**
Alabama, State of, Department of Revenue
Alaska, State of, Department of Revenue
Arizona, State of, Department of Revenue
Arkansas, State of, Department of Finance & Administration
California, State of, Franchise Tax Board
Connecticut, State of, Department of Revenue Services
Delaware, State of, Department of Revenue
Florida, State of, Department of Revenue

4

Georgia, State of, Department of Revenue
Idaho, State of, Tax Commission
Illinois, State of, Department of Revenue
Indiana, State of, Department of Revenue
Iowa, State of, Department of Revenue
Kansas, State of, Department of Revenue
Kentucky, Commonwealth of, Department of Revenue
Louisiana, State of, Department of Revenue
Maine, State of, Department of Revenue Services
Maryland, State of, Comptroller
Michigan, State of, Department of Treasury
Minnesota, State of, Department of Revenue
Mississippi, State of, Department of Revenue
Nebraska, State of, Department of Revenue
New Hampshire, State of, Department of Revenue Administration
New Jersey, State of, Division of Taxation
New Mexico, State of, Department of Tax & Revenue
North Carolina, State of, Department of Revenue
North Dakota, State of, Office of State Tax Commissioner
Oklahoma, State of, Tax Commission
Oregon, State of, Department of Revenue
Pennsylvania, Commonwealth of, Department of Revenue
Rhode Island, State of, Division of Taxation
South Carolina, State of, Department of Revenue
Tennessee, State of, Deparment of Revenue
Texas, State of, Comptroller of Public Accounts
Utah, State of, State Tax Commission
Virgina, Commonwealth of, Department of Taxation
Washington, D.C., Office of Tax & Revenue
West Virginia, State of, Tax Department
Wisconsin, State of, Department of Revenue

**Top 50 Unsecured Creditors**
Alameda Research LLC
[CONFIDENTIAL]

**U.S. Trustee Personnel, Judges, and Court contacts for the Southern District of New York**
Arbeit, Susan
Beckerman, Lisa G.
Bruh, Mark, Esq.
Chapman, Shelley C.
Cornell, Shara
Drain, Robert D.
Garrity, James L., Jr.
Glenn, Martin
Harrington, William K.
Higgins, Benjamin J.

Jones, David S.
Lane, Sean H.
Masumoto, Brian S.
Morris, Cecelia G.
Morrissey, Richard C.
Riffkin, Linda A.
Schwartz, Andrea B.
Schwartzberg, Paul K.
Scott, Shannon
Tiantian, Tara
Velez-Rivera, Andy
Wells, Annie
Wiles, Michael E.
Zipes, Greg M.

**Utilities**
Phone.com Inc.
Verizon Wireless
WeWork Inc.

**Vendors**
15Five Inc.
33 Irving Tenant LLC
A&V Sports Group LLC
Accretive Capital
Accura Advokatpartnerselskab
Accurate Staffing Solutions Corp.
Ackart, Jennifer C.
Actimize lnc.
Acxiom LLC
Ada Support Inc.
Adam Atlas, Attorneys at Law
AdColony Inc.
Adobe
Adperio Network LLC
Advokaadibüroo Cobalt OÜ
Aiven
aktiencheck.de AG
A-LIGN
Alps Consulting LLP
Already Design Co.
Alvarez & Marsal Canada Inc.
Amalgamated Suncoast Portfolio LLC
Amazon
Amazon Web Services
Amazon Web Services Inc.
American Airlines

American Arbitration Association Inc.
Amicaz Group LLC
Angry Pug Sportswear LLC
Aon Consulting Inc.
Apple
Apple Inc.
Apple Search Ads
Appsflyer
Arianna Jonae LLC
Arndt, Krista
Arrow Search Partners
Atlassian
Aura Sub LLC
Authentic8 Inc.
Baker & McKenzie LLP
Bank Khanty-Mansiysk
Barefoot LLC
Barkley, Matthew M.
Bateman Capital Inc.
BDA International Ltd.
Beekman Social LLC
Behmer & Blackford LLP
Belk, Chandler
Benabe, Alejandro
Benchmark Co. LLC, The
Berger Singerman LLP
BetterInvesting Inc.
Beutler Enterprises Inc.
Beyond Studios
Big Outdoor Holdings LLC
BitGo Inc.
Bitrise.io
Blackwired (US) Inc.
Blake Cassels & Graydon LLP
Block Crypto Inc., The
Blockchain Association
Blockdaemon Inc.
BlockWorks Advisors LLC
BlockWorks Group LLC
Bloomberg Finance LP
Botero-Uribe, Sergio
BPM LLP
Brent, Karen
BrightEdge Technologies Inc.
Brill Advisors LLC
British Airways
Broadridge Financial Solutions Inc.

Brooks, Brian P.
Brunson, Jalen
Brunson, Jalen M.
BTC Media Ltd.
BTIG LLC
Buddakan
Business Wire Inc.
Cabezas, Jamie
Campbells LLP
Canada Revenue Agency
Capone, Steven
Carbone
Carbone NYC
Cassill, Landon
Catamorphic Co.
CC API
CC Data
CCM Advisory LLC
CDS Clearing & Depository Services
CDW LLC
Certified Kernel Tech LLC
Chameleon Collective Consulting LLC
Chang Tsi & Co.
Chorba, Phillip J.
Chord Advisors LLC
Citigate Dewe Rogerson Ltd.
Cloud Posse LLC
Cloudflare Inc.
Cloudinary Ltd.
CNSX Markets Inc.
CNW Group Ltd.
Cockroach Labs Inc.
Coding Lobster
Coinbound Inc.
Colaprico, Danielle
ColorArt
Complex Sports & Entertainment LLC
Computershare Ltd.
Conbere, Anders
Concur Technologies Inc.
Consensus 2022
Constant Plan LLC, The
Conyers Dill & Pearman LLP
CorCom LLC
Corey Thomas Design
Corpay One Inc.
Cosmopolitan of Las Vegas, The

Costantino, Dan
Costantino, Daniel
Creative Circle LLC
Crypto Rating Council LLC, The
CXG Holdings Inc.
Cyber Job Central LLC
Cypress Group Staffing Inc.
CyZen Tech Co. Ltd.
Dajax LLC
Dallas Mavericks Inc.
Data.ai Inc.
Datadog Inc.
Daversa Partners Ltd.
David Bolton PC
Davis, Ashtyn
Day Pitney LLP
de Dreuzy, Gaspard
Dechert (Paris) LLP
Delaware, State of, Division of Revenue,
Tax Agency
DeLeon, Zusette
Deloitte & Touche LLP
Delta Air Lines Inc.
Deshchenko, Anton
Devexperts Sofia Ltd.
Dezenhall Resources Ltd.
Diamond Equity Research LLC
Dianomi Inc.
Digital Commerce Bank
Digital Niche Agency
Digital257 Technologies Inc.
Dinwiddie Inc.
Dinwiddie, Spencer
Distinguished Search LLC
Distrust LLC
Docker Inc.
DocuSign Inc.
Donnelley Financial Solutions Canada Corp.
dotdigital Inc.
Dotmailer Inc.
DoubleStruck Designs
Dropbox Inc.
Duane Morris LLP
Duclair, Anthony
Elasticsearch Inc.
Elevate Brand Marketing Inc.
Ellenoff Grossman & Schole LLP

Endeavor Parent LLC
EQS Group AG
Eronin, Max
eSSENTIAL Accessibility Inc.
Esterhuizen, Eben
Exzac Inc.
Eytan, Philip
Fastly Inc.
Feissli, Stefan
Fidelifacts Metropolitan New York Inc.
Figma Inc.
Financial Services Information Sharing &
Analysis Center
Find Your Happy LLC
Finney-Smith, Dorian
FirstBrook Cassie & Anderson Ltd.
Fivetran Inc.
Flint Inc.
Florida, State of, Department of Agriculture
& Consumer Services
Fogie, Seth
Fort Capital Ontario Inc.
Fragomen Del Rey Bernsen & Loewy LLP
Frankfurt Kurnit Klein & Selz PC
Freshworks Inc.
Friends of Falcon Hockey Inc., The
Fundamental Research Corp.
Fusion of Ideas Inc.
Gilja, Neha
GitHub Inc.
Glass Lewis & Co. LLC
Glendale Securities Inc.
Glushon Sports Management
Good Causes Inc.
Goodbay Technologies Inc.
GoodHire
Google Ads Management Ltd.
Google Cloud
Google G Suite
Google LLC
Google Voice Inc.
Gorsuch, Michael
GRA Enterprises LLC
Grant Thornton LLP
Gravitational Inc.
Green, Derek
Green, Sheri

Greenhouse Software Inc.
Greifenkamp, Jonathan
Gronkowski, Chris
Gronkowski, Christopher
Gronkowski, Daniel
Gronkowski, Glenn
Gronkowski, Gordon
Gronkowski, Gordon, Jr.
Gronkowski, Rob
G-Suite Holdings Ltd.
Gyamfi, Andrew
HackerOne Inc.
Hamilton, Kristen
HappyFunCorp LLC
HardHead Marketing
Harris, Lindsey
Harrison, Tom
Hashtag Business LLC
Helman, David
Hill Dickinson LLP
Hireclout Inc.
Holt, Robert B.
Hotjar Ltd.
Hunt, Akeem
ICE Systems Inc.
Impact Tech Inc.
Independent Trading Group (ITG) Inc.
Indianapolis Motor Speedway LLC
Infinite Agency LLC
Infinite IP Corp.
Infinity Consulting Solutions Inc.
Interviewstreet Inc.
Intralinks SA
Intuit Inc.
IPQualityScore
IQTalent Partners Inc.
Ironclad Inc.
Iterable Inc.
JA Visual Solutions LLC
Jackson Lewis PC
Jackson, Davin A.
Jackson, Sean
JDI Studio LLC
Jensen Hughes Inc.
JetBlue Airways Corp.
JetBrains s.r.o.
JFrog Ltd.

Jivaro Professional Headhunters LLC
Johnson Rivers Lyons LLC
Johnson, Estelle
JP Galda & Co.
Jumio Corp.
Karashik, Adam
Kate Leavell Cos. LLC
Kaulig Racing Inc.
KCSA Strategic Communications
Kelber, Maximilian
Ketchum Inc.
Kforce Inc.
KLDiscovery Ontrack LLC
Kleber, Maximilian
Klingenberg, Meghan
Knapp, Marla K.
KnowBe4 Inc.
Korn Ferry (US)
Koto Studio LLC
Kramer Levin Naftalis & Frankel LLP
Kramer, Pamela
Kratka, Mary
Kreiker, Serge
La Cantera Resort & Spa
Lagiglia, Dominique
Lakeshore Securities Inc.
Landgraf, Jennifer
Las Vegas Motor Speedway
LastPass
Laurel Hill Advisory Group LLC
LD Micro Inc.
Learfield Communications LLC
Lee, Janice
Levin Group Ltd.
Lin, Monica
LogMeIn
LogMeIn USA Inc.
Lord, Jessica
Loyalist LLC
Luk, Brian
Lussi, Tyler
Lytham Partners LLC
MaestroQA Inc.
Major Lindsey & Africa LLC
Malocca, Greg
Malwarebytes Inc.
Marcum LLP

Mark Fabiani LLC
Market One Media Group Inc.
Market Rebellion LLC
Marrelli Support Services Inc.
Maxx Management LLC
McCarter & English LLP
McCarthy Lebit Crystal & Liffman Co. LPA
McCrary, Chelsea
McCurdy, Tess
McDonald, Jess
McDonald, Jessica
Mediant Communications Inc.
Medium Rare Live LLC
Meltwater News US Inc.
Merlin Media LLC
MessageBank LLC
Meta Platforms Inc.
Microsoft Corp.
Mintz & Gold LLP
Miro SA
Mitchell, Jonahthan
Mixpanel Inc.
Mobile Action Inc.
Mohseni, Cyrus
monday.com Ltd.
Money Services Business Association Inc.,
The
Mortimer, Kelsey
Motivate Design LLC
Motive Interactive Inc.
Mountain Shadows Resort
MPJ Advisors LLC
MSG Arena LLC
NAI Interactive Ltd.
Nasdaq Corporate Solutions LLC
National Women's Soccer League LLC
NBCN Clearing Inc.
Netki Inc.
Network Redux LLC
New York, State of, Department of Taxation
& Finance
Next for Me Media Inc.
NMLS
Noble Capital Markets
Noble Capital Markets Inc.
Nominis Advisory Ltd.
Ntilikina, Frank

NuMedia LLC
Octive
Ogon LLC
Olivia Faria LLC
Online Business Systems Inc.
OnlineNotary.net
Ontario Securities Commission
OpsGenie
OpsGenie Inc.
Optimal Workshop
Oracle America Inc.
Organic Inc.
OST Labz Pvt. Ltd.
OTC Markets Group Inc.
Owen Bird Law Corp.
Pada Ventures Inc.
Pager Inc.
Pagerduty Inc.
Penn Recruiting LLC
Perkins Coie LLP
Pickwick Capital Partners LLC
Piper Cos. LLC
PitchBook Data Inc.
Plaid Inc.
PN Agency
PopNoggins LLC
PortSwigger Ltd.
Postman Basic Monthly
Powell, Dwight
PR Newswire Inc.
Premier Partnerships Inc.
Pressley, Toni
Printed Threads
Proconsul Capital Ltd.
Project 1972 Inc.
Pro-Sport Media Management LLC
Psaropoulos, Evan
PSAV Inc.
Psyhnov, Timofy
Publicist Inc.
QLUE Forensic Systems Inc.
Quality Wolves
Quantstamp Inc.
Quantum Talent Group, The
QWIL Inc.
Ramnarine, Chandkumar R.
Rashad A. Jennings Inc.

Ratzlaff, Cordell
Reciprocity Inc.
Regus
Regus Management Group LLC
Reisz, Carey
Republic Crypto LLC
Residence Inn by Marriott Dayton
Beavercreek
Ringside Canada Inc.
Ripple, Peter I.
Roadmunk
Rocketship HQ LLC
Rockwell, Fred
Rodriguez, Kevin
Ronick, David
S&S Activewear LLC
Sabetmoghaddam, Paniz
Santoshi Enterprise Ltd.
Santucci, Amanda
Schiff Hardin LLP
Scott, John M.
Seeking Alpha Inc.
Segment.IO Inc.
Seprio LLC
Seyfarth Shaw LLP
Shei, Christopher
Sheraton Grand Nashville Downtown Hotel
Sidoti & Co. LLC
Sift Science Inc.
Silver Management Group Inc.
Singular Research LLC
Slack Technologies LLC
Sloane & Co. LLC
SLS South Beach
Smarsh Inc.
Smart City Networks LP
Snapchat
Snowflake Inc.
Snyk Inc.
Soar, Hannah
Socure Inc.
Soona Co.
Sovran, William O.
Spacelift Inc.
Spatialize
Sports Girls, The
SquareWorks Consulting LLC

Staab, Sam
Staab, Samantha
Standout Tech Solutions LLC
Stephenson, Charles
Sterling Trading Tech
STK International Inc.
Stockhouse Publishing Ltd.
Stockjock.com LP
StockVest Inc.
Stone, Isaiah
Swag.com Inc.
Sweet, Noah C.
Tableau Software Inc.
Tam, Miko
Tapjoy Inc.
Taylor & Gray LLC
Techracers Pvt. Ltd.
Teneo Strategy LLC
Tennessee, State of, Department of Revenue
Terminal Inc.
Thompson House Group
TradingView Inc.
Travelator Inc.
Travelbank Ltd.
Travelers Cos. Inc., The
Troutman Pepper Hamilton Sanders LLP
TSX Inc.
Tuple Technologies Pte. Ltd.
Turnbull, James
Turner, Trea
Turner, Trea V.
Twilio Inc.
Twitter Inc.
Typeform SL
Uber Technologies Inc.
Unique Prints LLC
United Airlines Holdings Inc.
United Parcel Service Inc.
Unity Technologies Corp.
Upside Business Travel
UserTesting Inc.
Valdes-Scantling, Marquez
Valuation Research Corp.
Venture Group Capital LLC
Verizon Wireless Services LLC
Vijay, Kumar B.
Vincent Manufacturing Inc.

Vo, Donna
Vulcanize Inc.
W Dallas - Victory
W New York - Union Square
Walkers Corporate Ltd.
Walkers Ireland LLP
Wall Street Blockchain Alliance
Wall Street Dead aHead Networking LLC
Wandering Bear Inc.
Watt, Ally
Watt, Ally M.
Weisman Tech Law LLC
Westphal, Christen
WeWork Inc.
Whistler Search Partners LLC
White, Jarobi
WilliamsMarston LLC
Willis Towers Watson PLC
Winjit Technologies Pvt. Ltd.
Winslow, The
Wrike Inc.
WRZ Chartered Accountants
Yanpolsky, Andre
Yuen, Eva
Zapier Inc.
Zendesk Inc.
ZeroFox Inc.
Zoom Video Communications Inc.

## Schedule 2

**List of parties in interest, or affiliates thereof, that currently or formerly engage(d) BRG, sorted by their relationship to the Debtors, that are unrelated to these Cases[1]**

**Current and Former Directors and Officers**
Jill Frizzley*

**Bankruptcy Professionals**
Grant Thornton LLP*
Valuation Research Corporation*
Deloitte Tax LLP / Deloitte & Touche*
GRANT THORNTON US*

**Banks**
Signature Bank*
Metropolitan Commercial Bank

**Contract Parties**
Amazon
Metropolitan Commercial Bank
Transaction Counterparties
Nomura International Plc

**Customers**
[CONFIDENTIAL]

**Insurance**
Euclid's Lloyds of London Syndicate
Hartford Fire Insurance Company
Hartford Underwriters Insurance Company

**Landlords**
WeWork Inc.

**Litigation**
State of Washington Department of
Financial Institutions Securities Division*
State of Alabama Securities Commission
State of Vermont Department of Financial
Regulation
U.S. Bank Nat'l Ass'n

**Ordinary Course Professionals**
Kramer Levin Naftalis & Frankel LLP*

Paul Hastings LLP

**Taxing Authorities / Government / Regulatory Agencies**
Alabama Department of Revenue
California Franchise Tax Board*
Comptroller of Maryland
Illinois Department of Revenue*
Michigan Department of Treasury*
Georgia Department of Revenue
Utah State Tax Commission
Mississippi Department of Revenue
North Carolina Department of Revenue

**Utilities**
Verizon Wireless*

**Vendors**
Amazon
Amazon Web Services, Inc
American Airlines
Aon Consulting Inc.
CDW, LLC
Freshworks
Google Ads
Google Cloud
Google G Suite
Google, LLC.
Intuit
Adobe*
Apple*
Apple Inc.*
Apple Search Ads*
Microsoft
Baker & McKenzie LLP*
Oracle America, Inc.
Paul Hastings LLP
Canada Revenue Agency*
Delta Air Lines*
Snapchat
Delta Airlines*

---

[1]    Potential Parties in Interest that are marked with an asterisk are related to closed matters.

Kforce Inc*
Nasdaq Corporate Solutions, LLC*
Twitter Online Ads
Twitter, Inc.
Schiff Hardin LLP*
United Airlines
Tableau Software, Inc.*
Teneo Strategy LLC*

Uber*
UPS*
Verizon Wireless*
WeWork