Hearing Date:  **August 4, 2022, at 11 a.m. (prevailing Eastern Time)**
Objection Deadline:  **July 28, 2022, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF DEBTORS'**
**APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING**
**THE RETENTION AND EMPLOYMENT OF KIRKLAND & ELLIS LLP**
**AND KIRKLAND & ELLIS INTERNATIONAL LLP AS ATTORNEYS FOR**
**THE DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF JULY 5, 2022**

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective as of July 5, 2022* (the "Application") will be held on **August 4, 2022, at 11:00 a.m.**, **prevailing Eastern Time** (the "Hearing").  In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted telephonically.  Any parties wishing to participate must do so by making arrangements through CourtSolutions by visiting https://www.court-solutions.com.

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Application shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served so as to be actually received by **July 28, 2022, at 4:00 p.m., prevailing Eastern Time**, by (i) the entities on the Master Service List available on the case website of the above-captioned debtors and debtors in possession (the "Debtors") at https://cases.stretto.com/Voyager and (ii) any person or entity with a particularized interest in the subject matter of the Application.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing. Failure to file a timely objection may result in entry of a final order granting the Application as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Application and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/Voyager. You may also obtain copies of the Application and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank]*

2

Dated:  July 20, 2022    */s/ Joshua A. Sussberg*
New York, New York    **KIRKLAND & ELLIS LLP**
         **KIRKLAND & ELLIS INTERNATIONAL LLP**
         Joshua A. Sussberg, P.C.
         Christopher Marcus, P.C.
         Christine A. Okike, P.C.
         Allyson B. Smith (admitted *pro hac vice*)
         601 Lexington Avenue
         New York, New York 10022
         Telephone:  (212) 446-4800
         Facsimile:  (212) 446-4900
         Email:   jsussberg@kirkland.com
               cmarcus@kirkland.com
               christine.okike@kirkland.com
               allyson.smith@kirkland.com

         *Proposed Counsel to the Debtors and Debtors in Possession*

Hearing Date:  **August 4, 2022, at 11 a.m. (prevailing Eastern Time)**
Objection Deadline:  **July 28, 2022, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' APPLICATION FOR ENTRY
OF AN ORDER AUTHORIZING THE RETENTION
AND EMPLOYMENT OF KIRKLAND & ELLIS LLP AND
KIRKLAND & ELLIS INTERNATIONAL LLP AS ATTORNEYS FOR THE
DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF JULY 5, 2022**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this application (this "Application") seeking entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to retain and employ Kirkland & Ellis LLP and Kirkland & Ellis International LLP (together, "Kirkland") as their attorneys effective as of the Petition Date (as defined herein).  In support of this Application, the Debtors submit the declaration of Joshua A. Sussberg, the president of Joshua A. Sussberg, P.C., a partner of Kirkland & Ellis LLP, and a partner of Kirkland & Ellis International LLP (the "Sussberg Declaration"),

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

which is attached hereto as **Exhibit B**, and the declaration of Stephen Ehrlich, the Chief Executive Officer of Voyager Digital Holdings, Inc., which is attached hereto as **Exhibit C** (the "Ehrlich Declaration"). In further support of this Application, the Debtors respectfully state as follows.

## Jurisdiction and Venue

1.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent to the Court entering a final order in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 327(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

## Background

4.      On July 5, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On July 6, 2022, the Court entered an order [Docket No. 18] authorizing the joint administration and procedural consolidation of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). On July 19, 2022, the United States Trustee for the Southern District

of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant

to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 102]. No request for the

appointment of a trustee or examiner has been made in these chapter 11 cases.

5.    A description of the Debtors' business, the reasons for commencing the chapter 11

cases, and the relief sought from the Court to allow for a smooth transition into chapter 11 are set

forth in the *Declaration of Stephen Ehrlich, Chief Executive Officer of the Debtors, in Support of*

*Chapter 11 Petitions and First Day Motions*, filed on July 6, 2022 [Docket No. 15], incorporated

herein by reference.

## Relief Requested

6.    By this Application, the Debtors seek entry of the Order authorizing the retention

and employment of Kirkland as their attorneys in accordance with the terms and conditions set

forth in that certain engagement letter between the Debtors and Kirkland effective as of June 17,

2022 (the "Engagement Letter"), a copy of which is attached as **Exhibit 1** to the Order and

incorporated herein by reference.

## Kirkland's Qualifications

7.    The Debtors seek to retain Kirkland because of Kirkland's recognized expertise and

extensive experience and knowledge in the field of debtors' protections, creditors' rights, and

business reorganizations under chapter 11 of the Bankruptcy Code.

8.    Kirkland has been actively involved in major chapter 11 cases and has represented

debtors in many recent cases, including, among others:  *In re HONX, Inc.*, No. 22-90035 (MI)

(Bankr. S.D. Tex. June 24, 2022); *In re Seadrill New Finance Limited*, No. 22-90001 (DRJ)

(Bankr. S.D. Tex. Mar. 10, 2022); *In re Nordic Aviation Capital Designated Activity Company*,

No. 21-33693 (KRH) (Bankr. E.D. Va. Feb. 3, 2022); *In re Carlson Travel, Inc.*, No. 21-90017

(MI) (Bankr. S.D. Tex. Jan. 12, 2022); *In re Riverbed Technology, Inc.*, No. 21-11503 (CTG)

(Bankr. D. Del. Dec. 8, 2021); *In re Washington Prime Grp.*, No. 21-31948 (MI) (Bankr. S.D. Tex. July 27, 2021); *In re Seadrill Limited*, No. 21-30427 (DRJ) (Bankr. S.D. Tex. Apr. 5, 2021); *In re Belk, Inc.*, No. 21-30630 (MI) (Bankr. S.D. Tex. Mar. 31, 2021); *In re Frontera Holdings LLC*, No. 21-30354 (MI) (Bankr. S.D. Tex. Mar. 19, 2021); *In re Seadrill Partners LLC*, No. 20-35740 (DRJ) (Bankr. S.D. Tex. Jan. 15, 2021); *In re Gulfport Energy Corporation*, No. 20-35562 (DRJ) (Bankr. S.D. Tex. Jan. 11, 2021); *In re Bouchard Transportation, Co., Inc.*, No. 20-34682 (DRJ) (Bankr. S.D. Tex. Nov. 23, 2020); *In re Lakeland Tours, LLC*, No. 20-11647 (JLG) (Bankr. S.D.N.Y. Sept. 10, 2020); *In re Jason Industries, Inc.*, No. 20-22766 (RDD) (Bankr. S.D.N.Y. Aug. 27, 2020); *In re Valaris plc*, No. 20-34114 (MI) (Bankr. S.D. Tex. Aug. 19, 2020); *In re Chesapeake Energy Corp.*, No. 20-33233 (DRJ) (Bankr. S.D. Tex. Aug. 12, 2020); *In re Frontier Commc'ns. Corp.*, No. 20-22476 (RDD) (Bankr. S.D.N.Y. May 26, 2020).[2]

9.      In preparing for its representation of the Debtors in these chapter 11 cases, Kirkland has become familiar with the Debtors' business and many of the potential legal issues that may arise in the context of these chapter 11 cases.  The Debtors believe that Kirkland is both well-qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

### Services to be Provided

10.     Subject to further order of the Court, and consistent with the Engagement Letter, the Debtors request the retention and employment of Kirkland to render the following legal services:

---

[2]    Because of the voluminous nature of the orders cited in this Application, they are not attached to this Application. Copies of these orders are available upon request to Kirkland.

a.      advising the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

b.      advising and consulting on the conduct of these chapter 11 cases, including all of the legal and administrative requirements of operating in chapter 11;

c.      attending meetings and negotiating with representatives of creditors and other parties in interest;

d.      taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

e.      preparing pleadings in connection with these chapter 11 cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

f.      representing the Debtors in connection with obtaining authority to continue using cash collateral and postpetition financing;

g.      advising the Debtors in connection with any potential sale of assets;

h.      appearing before the Court and any appellate courts to represent the interests of the Debtors' estates;

i.      advising the Debtors regarding tax matters;

j.      taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

k.      performing all other necessary legal services for the Debtors in connection with the prosecution of these chapter 11 cases, including: (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors' assets; and (iii) advising the Debtors on corporate and litigation matters.

## Professional Compensation

11.    Kirkland intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy

Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of

the Court.  The hourly rates and corresponding rate structure Kirkland will use in these chapter 11

cases are the same as the hourly rates and corresponding rate structure that Kirkland uses in other

restructuring matters, as well as similar complex corporate, securities, and litigation matters

whether in court or otherwise, regardless of whether a fee application is required.  These rates and

the rate structure reflect that such restructuring and other complex matters typically are national in

scope and involve great complexity, high stakes, and severe time pressures.

12.    Kirkland operates in a national marketplace for legal services in which rates are

driven by multiple factors relating to the individual lawyer, his or her area of specialization, the

firm's expertise, performance, and reputation, the nature of the work involved, and other factors.

13.    Kirkland's current hourly rates for matters related to these chapter 11 cases range

as follows:[3]

| Billing Category[4] | U.S. Range |
|---|---|
| Partners | $1,135-$1,995 |
| Of Counsel | $805-$1,845 |
| Associates | $650-$1,245 |
| Paraprofessionals | $265-$495 |

14.    Kirkland's hourly rates are set at a level designed to compensate Kirkland fairly for

the work of its attorneys and paraprofessionals and to cover fixed and routine expenses.  Hourly

---

[3]    For professionals and paraprofessionals residing outside of the U.S., hourly rates are billed in the applicable
currency.  When billing a U.S. entity, such foreign rates are converted into U.S. dollars at the then applicable
conversion rate.  After converting these foreign rates into U.S. dollars, it is possible that certain rates may exceed
the billing rates listed in the chart herein.  While the rate ranges provided for in this Application may change if
an individual leaves or joins Kirkland, if any such individual's billing rate falls outside the ranges disclosed above,
Kirkland does not intend to update the ranges for such circumstances.

[4]    Although Kirkland does not anticipate using contract attorneys during these chapter 11 cases, in the unlikely event
that it becomes necessary to use contract attorneys, Kirkland will not charge a markup to the Debtors with respect
to fees billed by such attorneys.  Any contract attorneys or non-attorneys who are employed by the Debtors in
connection with work performed by Kirkland will be subject to conflict checks and disclosures in accordance
with the requirements of the Bankruptcy Code.

rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[5]

15.    Kirkland represented the Debtors during the one-month period before the Petition Date, using the hourly rates listed above and in the Sussberg Declaration. Moreover, these hourly rates are consistent with the rates that Kirkland charges other comparable chapter 11 clients, regardless of the location of the chapter 11 case.

16.    The rate structure provided by Kirkland is appropriate and not significantly different from (a) the rates that Kirkland charges for other similar types of representations or (b) the rates that other comparable counsel would charge to do work substantially similar to the work Kirkland will perform in these chapter 11 cases.

17.    It is Kirkland's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also Kirkland's policy to charge its clients only the amount actually incurred by Kirkland in connection with such items. Examples of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, airfare, meals, and lodging.

18.    To ensure compliance with all applicable deadlines in these chapter 11 cases, from time to time Kirkland utilizes the services of overtime secretaries. Kirkland charges fees for these services pursuant to the Engagement Letter, which permits Kirkland to bill the Debtors for

---

[5]    For example, like many of its peer law firms, Kirkland typically increases the hourly billing rate of attorneys and paraprofessionals twice a year in the form of: (i) step increases historically awarded in the ordinary course on the basis of advancing seniority and promotion and (ii) periodic increases within each attorney's and paraprofessional's current level of seniority. The step increases do not constitute "rate increases" (as the term is used in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013). As set forth in the Order, Kirkland will provide ten business-days' notice to the Debtors, the U.S. Trustee, and any official committee before implementing any periodic increases, and shall file any such notice with the Court.

overtime secretarial charges that arise out of business necessity. In addition, Kirkland professionals also may charge their overtime meals and overtime transportation to the Debtors consistent with the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Cases* (the "<u>Amended Guidelines</u>") and the Local Rules.

19.     Kirkland currently charges the Debtors $0.16 per page for standard duplication in its offices in the United States. Notwithstanding the foregoing and consistent with the Local Rules and the Amended Guidelines, Kirkland will charge no more than $0.10 per page for standard duplication services in these chapter 11 cases. Kirkland does not charge its clients for incoming facsimile transmissions. Kirkland has negotiated a discounted rate for Westlaw computer-assisted legal research. Computer-assisted legal research is used whenever the researcher determines that using Westlaw is more cost effective than using traditional (non-computer assisted legal research) techniques.

## **<u>Compensation Received by Kirkland from the Debtors</u>**

20.     Per the terms of the Engagement Letter, on June 24, 2022, the Debtors paid $1.0 million to Kirkland, which, as stated in the Engagement Letter, constituted an "advance payment retainer" as defined in Rule 1.15(c) of the Illinois Rules of Professional Conduct and *Dowling v. Chicago Options Assoc., Inc.*, 875 N.E.2d 1012, 1018 (Ill. 2007). Subsequently, the Debtors paid to Kirkland additional advance payment retainers totaling $2 million in the aggregate. As stated in the Engagement Letter, any advance payment retainer is earned by Kirkland upon receipt, any advance payment retainer becomes the property of Kirkland upon receipt, the Debtors no longer have a property interest in any advance payment retainer upon Kirkland's receipt, any advance payment retainer will be placed in Kirkland's general account and will not be held in a

client trust account, and the Debtors will not earn any interest on any advance payment retainer.[6] A chart identifying the statements setting forth the professional services provided by Kirkland to the Debtors and the expenses incurred by Kirkland in connection therewith, as well as the advance payment retainer transferred by the Debtors to Kirkland, before the Petition Date is set forth in the Sussberg Declaration.

21.    Pursuant to Bankruptcy Rule 2016(b), Kirkland has neither shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, associates, and contract attorneys associated with Kirkland or (b) any compensation another person or party has received or may receive.

22.    As of the Petition Date, the Debtors did not owe Kirkland any amounts for legal services rendered before the Petition Date.  Although certain expenses and fees may have been incurred but not yet applied to Kirkland's advance payment retainer, the amount of Kirkland's advance payment retainer always exceeded any amounts listed or to be listed on statements describing services rendered and expenses incurred (on a "rates times hours" and "dates of expenses incurred" basis) before the Petition Date.

### Kirkland's Disinterestedness

23.    To the best of the Debtors' knowledge and as disclosed herein and in the Sussberg Declaration, (a) Kirkland is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and (b) Kirkland has no connection to the

---

[6]    The Engagement Letter provides that Kirkland may continue to hold any remaining prepetition advance payment retainer during the pendency of a chapter 11 case rather than applying such advance payment retainer to postpetition fees and expenses.  Kirkland evaluates whether to retain any remaining prepetition advance payment retainer on a case-by-case basis.  In this particular case, Kirkland has elected not to hold any remaining prepetition advance payment retainer but, instead, will apply any remaining advance payment retainer to postpetition fees and expenses as such fees and expenses are allowed by the Court.

Debtors, their creditors, or other parties in interest, except as may be disclosed in the Sussberg

Declaration.

24.    Kirkland will review its files periodically during the pendency of these chapter 11

cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new

relevant facts or relationships are discovered or arise, Kirkland will use reasonable efforts to

identify such further developments and will promptly file a supplemental declaration, as required

by Bankruptcy Rule 2014(a).

**<u>Supporting Authority</u>**

25.    The Debtors seek retention of Kirkland as their attorneys pursuant to section 327(a)

of the Bankruptcy Code, which provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers,
> auctioneers, or other professional persons, that do not hold or
> represent an interest adverse to the estate, and that are disinterested
> persons, to represent or assist the [debtor] in carrying out the
> [debtor]'s duties under this title.

11 U.S.C. § 327(a).

26.    Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name
> of the [firm] to be employed, the reasons for the selection, the
> professional services to be rendered, any proposed arrangement for
> compensation, and, to the best of the applicant's knowledge, all of
> the [firm's] connections with the debtor, creditors, any other party
> in interest, their respective attorneys and accountants, the United
> States trustee, or any person employed in the office of the United
> States trustee.

Fed. R. Bankr. P. 2014.

27.    The Debtors submit that for all the reasons stated above and in the Sussberg

Declaration, the retention and employment of Kirkland as counsel to the Debtors is warranted.

Further, as stated in the Sussberg Declaration, Kirkland is a "disinterested person" within the

meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the Sussberg Declaration.

### Notice

28.    The Debtors have provided notice of this Application to the following parties: (a) the U.S. Trustee, (b) the Committee; (c) the lender under the Debtors' prepetition loan facility; (d) the United States Attorney's Office for the Southern District of New York; (e) the Internal Revenue Service; (f) the Toronto Stock Exchange; (g) the attorneys general in the states where the Debtors conduct their business operations; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  A copy of this Application is also available on the website of the Debtors' notice and claims agent at https://cases.stretto.com/Voyager.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is required.

### No Prior Request

29.    No prior request for the relief sought in this Application has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.

Dated:  July 20, 2022
        New York, New York

*/s/ Stephen Ehrlich*
Stephen Ehrlich
Voyager Digital Holdings, Inc.
Chief Executive Officer

## EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### ORDER AUTHORIZING THE RETENTION
### AND EMPLOYMENT OF KIRKLAND & ELLIS LLP AND
### KIRKLAND & ELLIS INTERNATIONAL LLP AS ATTORNEYS FOR THE
### DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF JULY 5, 2022

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of an order (the "Order") authorizing the Debtors to retain and employ Kirkland & Ellis LLP and Kirkland & Ellis International LLP (collectively, "Kirkland") as their attorneys effective as of the Petition Date, pursuant to sections 327(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"); and the Court having reviewed the Application, the Declaration of Joshua A. Sussberg, the president of Joshua A. Sussberg, P.C., a partner of Kirkland & Ellis LLP, and a partner of Kirkland & Ellis International LLP (the "Sussberg Declaration"), and the declaration of Stephen Ehrlich, the Chief Executive Officer of Voyager Digital Holdings, Inc. (the "Ehrlich Declaration"); and the Court having found that the Court has jurisdiction over this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that the Application is

a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this

proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

and the Court having found based on the representations made in the Application and in the

Sussberg Declaration that (a) Kirkland does not hold or represent an interest adverse to the

Debtors' estates and (b) Kirkland is a "disinterested person" as defined in section 101(14) of the

Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code; and the Court having

found that the relief requested in the Application is in the best interests of the Debtors' estates,

their creditors, and other parties in interest; and the Court having found that the Debtors provided

adequate and appropriate notice of the Application under the circumstances and that no other or

further notice is required; and the Court having reviewed the Application and having heard

statements in support of the Application at a hearing held before the Court (the "Hearing"); and

the Court having determined that the legal and factual bases set forth in the Application and at the

Hearing establish just cause for the relief granted herein; and any objections to the relief requested

herein having been withdrawn or overruled on the merits; and after due deliberation and sufficient

cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Application is granted to the extent set forth herein.

2.      The Debtors are authorized to retain and employ Kirkland as their attorneys

effective as of the Petition Date in accordance with the terms and conditions set forth in the

Application and in the Engagement Letter attached hereto as **Exhibit 1**.

3.      Kirkland is authorized to provide the Debtors with the professional services as

described in the Application and the Engagement Letter.  Specifically, but without limitation,

Kirkland will render the following legal services:

a.     advising the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

b.     advising and consulting on their conduct during these chapter 11 cases, including all of the legal and administrative requirements of operating in chapter 11;

c.     attending meetings and negotiating with representatives of creditors and other parties in interest;

d.     taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

e.     preparing pleadings in connection with these chapter 11 cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

f.     representing the Debtors in connection with obtaining authority to continue using cash collateral and postpetition financing;

g.     advising the Debtors in connection with any potential sale of assets;

h.     appearing before the Court and any appellate courts to represent the interests of the Debtors' estates;

i.     advising the Debtors regarding tax matters;

j.     taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

k.     performing all other necessary legal services for the Debtors in connection with the prosecution of these chapter 11 cases, including: (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors' assets; and (iii) advising the Debtors on corporate and litigation matters.

4.     Kirkland shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Local Rules, and any other applicable procedures and orders of the Court.

5.      Notwithstanding anything in the Engagement Letter to the contrary, Kirkland shall apply any remaining amounts of its prepetition advance payment retainer as a credit toward postpetition fees and expenses, after such postpetition fees and expenses are approved pursuant to an order of the Court awarding fees and expenses to Kirkland.  Kirkland is authorized without further order of the Court to reserve and apply amounts from the prepetition advance payment retainer that would otherwise be applied toward payment of postpetition fees and expenses as are necessary and appropriate to compensate and reimburse Kirkland for fees or expenses incurred on or prior to the Petition Date consistent with its ordinary course billing practices.

6.      Notwithstanding anything to the contrary in the Application, the Engagement Letter, or the Declarations attached to the Application, the reimbursement provisions allowing the reimbursement of fees and expenses incurred in connection with participating in, preparing for, or responding to any action, claim, suit, or proceeding brought by or against any party that relates to the legal services provided under the Engagement Letter and fees for defending any objection to Kirkland's fee applications under the Bankruptcy Code are not approved pending further order of the Court.

7.      Kirkland shall not charge a markup to the Debtors with respect to fees billed by contract attorneys who are hired by Kirkland to provide services to the Debtors and shall ensure that any such contract attorneys are subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code and Bankruptcy Rules.

8.      The last three sentences of the thirteenth paragraph of the Engagement Letter (titled "File Retention") concerning issues related to attorney-client privilege and the last sentence of the twenty-seventh paragraph of the Engagement Letter (titled "Reimbursement of Fees and Expenses") concerning waivers of objections related to fees are stricken.

9.      Kirkland shall provide ten business-days' notice to the Debtors, the U.S. Trustee, and any official committee before any increases in the rates set forth in the Application or the Engagement Letter are implemented and shall file such notice with the Court.  The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

10.     Kirkland shall not withdraw as Debtors' counsel before the effective date of any chapter 11 plan confirmed in these chapter 11 cases without prior approval of the Court in accordance with Local Rule 2090-1(e).

11.     The Debtors and Kirkland are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

12.     Notice of the Application as provided therein is deemed to be good and sufficient notice of such Application, and the requirements of the Local Rules are satisfied by the contents of the Application.

13.     To the extent the Application, the Sussberg Declaration, the Ehrlich Declaration, or the Engagement Letter is inconsistent with this Order, the terms of this Order shall govern.

14.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

15.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

## **<u>EXHIBIT 1</u>**

**Engagement Letter**

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

Joshua A. Sussberg, P.C.
To Call Writer Directly:
+1 212 446 4829
joshua.sussberg@kirkland.com

601 Lexington Avenue
New York, NY 10022
United States

+1 212 446 4800

www.kirkland.com

Facsimile:
+1 212 446 4900

June 17, 2022

David Brosgol
Voyager Digital Holdings, Inc.
33 Irving Place, Suite 3060
New York, NY 10003

Re:    Retention to Provide Legal Services

Dear Mr. Brosgol:

We are very pleased that you have asked us to represent Voyager Digital Holdings, Inc. and only those affiliates and wholly or partially owned subsidiaries listed in an addendum or supplement to this letter (collectively, "Client") in connection with a potential restructuruing. Please note, the Firm's representation is only of Client; the Firm does not and will not represent any direct or indirect shareholder, director, officer, partner, employee, affiliate, or joint venturer of Client or of any other entity.

**General Terms.**  This retention letter (this "Agreement") sets forth the terms of Client's retention of Kirkland & Ellis LLP (and its affiliated entity Kirkland & Ellis International LLP (collectively, the "Firm")) to provide legal services and constitutes an agreement between the Firm and Client (the "Parties").  This Agreement (notwithstanding any guidelines for outside counsel that Client may provide to the Firm) sets forth the Parties' entire agreement for rendering professional services for the current matter, as well as for all other existing or future matters (collectively, the "Engagement"), except where the Parties otherwise agree in writing.

**Fees.**  The Firm will bill Client for fees incurred at its regular hourly rates and in quarterly increments of an hour (or in smaller time increments as otherwise required by a court).  The Firm reserves the right to adjust the Firm's billing rates from time to time in the ordinary course of the Firm's representation of Client.

Although the Firm will attempt to estimate fees to assist Client in Client's planning if requested, such estimates are subject to change and are not binding unless otherwise expressly and unequivocally stated in writing.

Austin   Bay Area   Beijing   Boston   Brussels   Chicago   Dallas   Hong Kong   Houston   London   Los Angeles   Munich   Paris   Salt Lake City   Shanghai   Washington, D.C.

# KIRKLAND & ELLIS LLP

June 17, 2022
Page 2

**Expenses.**  Expenses related to providing services shall be included in the Firm's statements as disbursements advanced by the Firm on Client's behalf.  Such expenses include photocopying, printing, scanning, witness fees, travel expenses, filing and recording fees, certain secretarial overtime, and other overtime expenses, postage, express mail, and messenger charges, deposition costs, computerized legal research charges, and other computer services, and miscellaneous other charges.  Client shall pay directly (and is solely responsible for) certain larger costs, such as consultant or expert witness fees and expenses, and outside suppliers' or contractors' charges, unless otherwise agreed by the Parties.  By executing this Agreement below, Client agrees to pay for all charges in accordance with the Firm's schedule of charges, a copy of which is attached hereto at Schedule 1, as revised from time to time.

**Billing Procedures.**  The Firm's statements of fees and expenses are typically delivered monthly, but the Firm reserves the right to alter the timing of delivering its statements depending on circumstances.  Client may have the statement in any reasonable format it chooses, but the Firm will select an initial format for the statement unless Client otherwise requests in writing. Depending on the circumstances, however, estimated or summary statements may be provided, with time and expense details to follow thereafter.

**Retainer.**  Client agrees to provide to the Firm an "advance payment retainer," as defined in Rule 1.15(c) of the Illinois Rules of Professional Conduct, *Dowling v. Chicago Options Assoc., Inc.*, 875 N.E.2d 1012, 1018 (Ill. 2007), and *In re Caesars Entm't Operating Co., Inc.*, No. 15-01145 (ABG) (Bankr. N.D. Ill. May 28, 2015) (and cases cited therein), in the amount of $1,000,000.  In addition, Client agrees to provide one or more additional advance payment retainers upon request by the Firm so that the amount of any advance payment retainers remains at or above the Firm's estimated fees and expenses.  The Firm may apply the advance payment retainers to any outstanding fees as services are rendered and to expenses as they are incurred. Client understands and acknowledges that any advance payment retainers are earned by the Firm upon receipt, any advance payment retainers become the property of the Firm upon receipt, Client no longer has a property interest in any advance payment retainers upon the Firm's receipt, any advance payment retainers will be placed in the Firm's general account and will not be held in a client trust account, and Client will not earn any interest on any advance payment retainers; provided, however, that solely to the extent required under applicable law, at the conclusion of the Engagement, if the amount of any advance payment retainers held by the Firm is in excess of the amount of the Firm's outstanding and estimated fees, expenses, and costs, the Firm will pay to Client the amount by which any advance payment retainers exceed such fees, expenses, and costs.  Client further understands and acknowledges that the use of advance payment retainers is an integral condition of the Engagement, and is necessary to ensure that:  Client continues to have access to the Firm's services; the Firm is compensated for its representation of Client; the Firm is not a pre-petition creditor in the event of a Restructuring Case; and that in light of the foregoing, the provision of the advance payment retainers is in Client's best interests.  The fact that Client

# KIRKLAND & ELLIS LLP

June 17, 2022
Page 3

has provided the Firm with an advance payment retainer does not affect Client's right to terminate the client-lawyer relationship.

Please be advised that there is another type of retainer known as a "security retainer," as defined in *Dowling v. Chicago Options Assoc.*, 875 N.E.2d at 1018, and *In re Caesars Entm't Operating Co., Inc.*, No. 15-01145 (ABG) (Bankr. N.D. Ill. May 28, 2015) (and cases cited therein). A security retainer remains the property of the client until the lawyer applies it to charges for services that are actually rendered and expenses that are incurred. Any unearned funds are then returned to the client. In other circumstances not present here, the Firm would consider a security retainer and Client's funds would be held in the Firm's segregated client trust account until applied to pay fees and expenses. Funds in a security retainer, however, can be subject to claims of Client's creditors and, if taken by creditors, may leave Client unable to pay for ongoing legal services, which may result in the Firm being unable to continue the Engagement. Moreover, a security retainer creates clawback risks for the Firm in the event of an insolvency proceeding. The choice of the type of retainer to be used is Client's choice alone, but for the Engagement and for the reasons set forth above, the Firm is unwilling to represent Client in the Engagement without using the advance payment retainer.

**Termination.** The Engagement may be terminated by either Party at any time by written notice by or to Client. The Engagement will end at the earliest of (a) Client's termination of the Engagement, (b) the Firm's withdrawal, and (c) the substantial completion of the Firm's substantive work. If permission for withdrawal is required by a court, the Firm shall apply promptly for such permission, and termination shall coincide with the court order for withdrawal. If this Agreement or the Firm's services are terminated for any reason, such termination shall be effective only to terminate the Firm's services prospectively and all the other terms of this Agreement shall survive any such termination.

Upon cessation of the Firm's active involvement in a particular matter (even if the Firm continues active involvement in other matters on Client's behalf), the Firm will have no further duty to inform Client of future developments or changes in law as may be relevant to such matter. Further, unless the Parties mutually agree in writing to the contrary, the Firm will have no obligation to monitor renewal or notice dates or similar deadlines that may arise from the matters for which the Firm had been retained.

**Cell Phone and E-Mail Communication.** The Firm hereby informs Client and Client hereby acknowledges that the Firm's attorneys sometimes communicate with their clients and their clients' professionals and agents by cell telephone, that such communications are capable of being intercepted by others and therefore may be deemed no longer protected by the attorney-client privilege, and that Client must inform the Firm if Client does not wish the Firm to discuss privileged matters on cell telephones with Client or Client's professionals or agents.

# KIRKLAND & ELLIS LLP

June 17, 2022
Page 4

The Firm hereby informs Client and Client hereby acknowledges that the Firm's attorneys sometimes communicate with their clients and their clients' professionals and agents by unencrypted e-mail, that such communications are capable of being intercepted by others and therefore may be deemed no longer protected by the attorney-client privilege, and that Client must inform the Firm if Client wishes to institute a system to encode all e-mail between the Firm and Client or Client's professionals or agents.

**File Retention.**  All records and files will be retained and disposed of in compliance with the Firm's policy in effect from time to time.  Subject to future changes, it is the Firm's current policy generally not to retain records relating to a matter for more than five years.  Upon Client's prior written request, the Firm will return client records that are Client's property to Client prior to their destruction.  Although we will return your records (i.e., your client file) to you at any time upon your written request, you agree that your client file will not include our Firm's internal files including administrative materials, internal communications, and drafts.  It is not administratively feasible for the Firm to advise Client of the closing of a matter or the disposal of records.  The Firm recommends, therefore, that Client maintain Client's own files for reference or submit a written request for Client's client files promptly upon conclusion of a matter.  Notwithstanding anything to the contrary herein, Client acknowledges and agrees that any applicable privilege of Client (including any attorney-client and work product privilege or any duty of confidentiality) (collectively, the "Privileges") belongs to Client alone and not to any successor entity (including without limitation the Client after a change in control or other similar restructuring or non-restructuring transaction (including without limitation a reorganized Client after the effective date of a plan of reorganization), whether through merger, asset or equity sale, business combination, or otherwise, irrespective of whether such transaction occurs in a Restructuring Case or on an out-of-court basis (in each case, a "Transaction")).  Client hereby waives any right, title, and interest of such successor entity to all information, data, documents, or communications in any format covered by the Privileges that is in the possession of the Firm ("Firm Materials"), to the extent that such successor entity had any right, title, and interest to such Firm Materials.  For the avoidance of doubt, Client agrees and acknowledges that after a Transaction, such successor entity shall have no right to claim or waive the Privileges or request the return of any such Firm Materials; instead, such Firm Materials shall remain in the Firm's sole possession and control for its exclusive use, and the Firm will (a) not waive any Privileges or disclose the Firm Materials, (b) take all reasonable steps to ensure that the Privileges survive and remain in full force and effect, and (c) assert the Privileges to prevent disclosure of any Firm Materials.

**Data Protection.**  You further agree that, if you provide us with personal data, you have complied with applicable data protection legislation and that we may process such personal data in accordance with our Data Transfer and Privacy Policy at www.kirkland.com.  We process your personal data in order to (i) carry out work for you; (ii) share the data with third parties such as expert witnesses and other professional advisers if our work requires; (iii) comply with applicable laws and regulations and (iv) provide you with information relating to our Firm and its services.

# KIRKLAND & ELLIS LLP

June 17, 2022
Page 5

    **Conflicts of Interest.** As is customary for a law firm of the Firm's size, there are numerous business entities, with which Client currently has relationships, that the Firm has represented or currently represents in matters unrelated to Client.

    Further, in undertaking the representation of Client, the Firm wants to be fair not only to Client's interests but also to those of the Firm's other clients.  Because Client is engaged in activities (and may in the future engage in additional activities) in which its interests may diverge from those of the Firm's other clients, the possibility exists that one of the Firm's current or future clients may take positions adverse to Client (including litigation or other dispute resolution mechanisms) in a matter in which such other client may have retained the Firm or one of Client's adversaries may retain the Firm in a matter adverse to another entity or person.

    In the event a present conflict of interest exists between Client and the Firm's other clients or in the event one arises in the future, Client agrees to waive any such conflict of interest or other objection that would preclude the Firm's representation of another client (a) in other current or future matters substantially unrelated to the Engagement or (b) other than during a Restructuring Case (as defined below), in other matters related to Client (such representation an "Allowed Adverse Representation").  By way of example, such Allowed Adverse Representations might take the form of, among other contexts: litigation (including arbitration, mediation and other forms of dispute resolution); transactional work (including consensual and non-consensual merger, acquisition, and takeover situations, financings, and commercial agreements); counseling (including advising direct adversaries and competitors); and restructuring (including bankruptcy, insolvency, financial distress, recapitalization, equity and debt workouts, and other transactions or adversarial adjudicative proceedings related to any of the foregoing and similar matters).

    Client also agrees that it will not, for itself or any other entity or person, assert that either (i) the Firm's representation of Client or any of Client's affiliates in any past, present, or future matter or (ii) the Firm's actual or possible possession of confidential information belonging to Client or any of Client's affiliates is a basis to disqualify the Firm from representing another entity or person in any Allowed Adverse Representation.  Client further agrees that any Allowed Adverse Representation does not breach any duty that the Firm owes to Client or any of Client's affiliates.  Client also agrees that the Firm's representation in the Engagement is solely of Client and that no member or other entity or person related to it (such as a shareholder, parent, subsidiary, affiliate, director, officer, partner, employee, or joint venturer) has the status of a client for conflict of interest purposes.

    In addition, if a waiver of a conflict of interest necessary to allow the Firm to represent another client in a matter that is not substantially related to the Engagement is not effective for any reason, Client agrees that the Firm may withdraw from the Engagement.  Should that occur, Client will not, for itself or any other entity or person, seek to preclude such termination of services or assert that either (a) the Firm's representation of Client or any of Client's affiliates in any past,

## KIRKLAND & ELLIS LLP

June 17, 2022
Page 6

present, or future matter or (b) the Firm's actual or possible possession of confidential information belonging to Client or any of Client's affiliates is a basis to disqualify the Firm from representing such other client or acting on such adverse matter.

It is important that you review this letter carefully and consider all of the advantages and disadvantages of waiving certain conflicts of interests that would otherwise bar the Firm from representing parties with interests adverse to you during the time in which the Firm is representing you. You also understand that because this waiver includes future issues and future clients that are unknown and unknowable at this time, it is impossible to provide you with any more details about those prospective clients and matters. Thus, in choosing to execute this waiver, you have recognized the inherent uncertainty about the array of potential matters and clients the Firm might take on in matters that are adverse to you but have nonetheless decided it is in your interest to waive conflicts of interest regarding the Allowed Adverse Representations and waive rights to prohibit the Firm's potential withdrawal should a conflict waiver prove ineffectual.

The Firm informs Client that certain entities owned by current or former Firm attorneys and senior staff ("attorney investment entities") have investments in funds or companies that may, directly or indirectly, be affiliated with Client, hold investments in Client's debt or equity securities, may be adverse to Client, or conduct commercial transactions with Client (each, a "Passive Holding"). The attorney investment entities are passive and have no management or other control rights in such funds or companies. The Firm notes that other persons may in the future assert that a Passive Holding creates, in certain circumstances, a conflict between the Firm's exercise of its independent professional judgment in rendering advice to Client and the financial interest of Firm attorneys participating in the attorney investment entities, and such other persons might seek to limit Client's ability to use the Firm to advise Client on a particular matter. While the Firm cannot control what a person might assert or seek, the Firm believes that the Firm's judgment will not be compromised by virtue of any Passive Holding. Please let us know if Client has any questions or concerns regarding the Passive Holdings. By executing this letter, Client acknowledges the Firm's disclosure of the foregoing.

**Restructuring Cases**. If it becomes necessary for Client to commence a restructuring case under chapter 11 of the U.S. Bankruptcy Code (a "Restructuring Case"), the Firm's ongoing employment by Client will be subject to the approval of the court with jurisdiction over the petition. If necessary, the Firm will take steps necessary to prepare the disclosure materials required in connection with the Firm's retention as lead restructuring counsel. In the near term, the Firm will begin conflicts checks on potentially interested parties as provided by Client.

If necessary, the Firm will prepare a preliminary draft of a schedule describing the Firm's relationships with certain interested parties (the "Disclosure Schedule"). The Firm will give Client a draft of the Disclosure Schedule once it is available. Although the Firm believes that these

# KIRKLAND & ELLIS LLP

June 17, 2022
Page 7

relationships do not constitute actual conflicts of interest, these relationships must be described and disclosed in Client's application to the court to retain the Firm.

If in the Firm's determination a conflict of interest arises in Client's Restructuring Case requiring separate conflicts counsel, then Client will be required to use separate conflicts counsel in those matters.

**No Guarantee of Success.**  It is impossible to provide any promise or guarantee about the outcome of Client's matters.  Nothing in this Agreement or any statement by Firm staff or attorneys constitutes a promise or guarantee.  Any comments about the outcome of Client's matter are simply expressions of judgment and are not binding on the Firm.

**Consent to Use of Information.**  In connection with future materials that, for marketing purposes, describe facets of the Firm's law practice and recite examples of matters the Firm handles on behalf of clients, Client agrees that, if those materials avoid disclosing Client's confidences and secrets as defined by applicable ethical rules, they may identify Client as a client, may contain factual synopses of Client's matters, and may indicate generally the results achieved.

**Reimbursement of Fees and Expenses.**  Client agrees to promptly reimburse the Firm for all internal or external fees and expenses, including the amount of the Firm's attorney and paralegal time at normal billing rates, as incurred by the Firm in connection with participating in, preparing for, or responding to any action, claim, objection, suit, or proceeding brought by or against any third-party that relates to the legal services provided by the Firm under this Agreement.  Without limiting the scope of the foregoing, and by way of example only, this paragraph extends to all such fees and expenses incurred by the Firm: in responding to document subpoenas, and preparing for and testifying at depositions and trials; and with respect to the filing, preparation, prosecution or defense of any applications by the Firm for approval of fees and expenses in a judicial, arbitral, or similar proceeding.  Further, Client understands, acknowledges, and agrees that in connection with a Restructuring Case, if Client has not objected to the payment of a Firm invoice or to a Firm fee and expense application, has in fact paid such invoice, or has approved such fee and expense application, then Client waives its right (and the right of any successor entity as a result of a Transaction or otherwise) to subsequently object to the payment of fees and expenses covered by such invoice or fee application.

**LLP.**  Kirkland & Ellis LLP is a limited liability partnership organized under the laws of Illinois, and Kirkland & Ellis International LLP is a limited liability partnership organized under the laws of Delaware.  Pursuant to those statutory provisions, an obligation incurred by a limited liability partnership, whether arising in tort, contract or otherwise, is solely the obligation of the limited liability partnership, and partners are not personally liable, directly or indirectly, by way of indemnification, contribution, assessment or otherwise, for such obligation solely by reason of being or so acting as a partner.

## KIRKLAND & ELLIS LLP

June 17, 2022
Page 8


**Governing Law**.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of Illinois, without giving effect to the conflicts of law principles thereof.

**Miscellaneous.**  This Agreement sets forth the Parties' entire agreement for rendering professional services.  It can be amended or modified only in writing and not orally or by course of conduct.  Each Party signing below is jointly and severally responsible for all obligations due to the Firm and represents that each has full authority to execute this Agreement so that it is binding.  This Agreement may be signed in one or more counterparts and binds each Party countersigning below, whether or not any other proposed signatory ever executes it.  If any provision of this Agreement or the application thereof is held invalid or unenforceable, the invalidity or unenforceability shall not affect other provisions or applications of this Agreement which can be given effect without such provisions or application, and to this end the provisions of this Agreement are declared to be severable.  Any agreement or waiver contained herein by Client extends to any assignee or successor in interest to Client, including without limitation the reorganized Client upon and after the effective date of a plan of reorganization in a Restructuring Case.

This Agreement is the product of arm's-length negotiations between sophisticated parties, and Client acknowledges that it is experienced with respect to the retention of legal counsel. Therefore, the Parties acknowledge and agree that any otherwise applicable rule of contract construction or interpretation which provides that ambiguities shall be construed against the drafter (and all similar rules of contract construction or interpretation) shall not apply to this Agreement. The Parties further acknowledge that the Firm is not advising Client with respect to this Agreement because the Firm would have a conflict of interest in doing so, and that Client has consulted (or had the opportunity to consult) with legal counsel of its own choosing.  Client further acknowledges that Client has entered into this Agreement and agreed to all of its terms and conditions voluntarily and fully-informed, based on adequate information and Client's own independent judgment.  The Parties further acknowledge that they intend for this Agreement to be effective and fully enforceable upon its execution and to be relied upon by the Parties.

\* \* \*

# KIRKLAND & ELLIS LLP

June 17, 2022
Page 9


Please confirm your agreement with the arrangements described in this letter by signing the enclosed copy of this letter in the space provided below and returning it to us. Please understand that, if we do not receive a signed copy of this letter within twenty-one days, we will withdraw from representing you in this Engagement.

Very truly yours,

KIRKLAND & ELLIS LLP

By: _____

Printed Name:  Joshua A. Sussberg
Title:  Partner

Agreed and accepted this 17th of June, 2022

VOYAGER DIGITAL HOLDINGS, INC.

DocuSigned by:

By: _____

Name: David Brosgol
Title: General Counsel
139EC73A2D4F474...

# KIRKLAND & ELLIS LLP

June 17, 2022
Page 10

### ADDENDUM: List of Client Affiliates

Voyager Digital Ltd.
Voyager Digital, LLC

**KIRKLAND & ELLIS LLP**

**CLIENT-REIMBURSABLE EXPENSES AND OTHER CHARGES**

*Effective 01/01/2022*

The following outlines Kirkland & Ellis LLP's ("K&E LLP") policies and standard charges for various services performed by K&E LLP and/or by other third parties on behalf of the client which are often ancillary to our legal services. Services provided by in-house K&E LLP personnel are for the convenience of our clients. Given that these services are often ancillary to our legal services, in certain instances it may be appropriate and/or more cost efficient for these services to be outsourced to a third-party vendor. If services are provided beyond those outlined below, pricing will be based on K&E LLP's approximate cost and/or comparable market pricing.

- **Duplicating, Reprographics and Printing**: The following list details K&E LLP's charges for duplicating, reprographics and printing services:

  - Black and White Copy or Print (all sizes of paper):
    - $0.16 per impression for all U.S. offices
    - €0.10 per impression in Munich
    - £0.15 per impression in London
    - HK$1.50 per impression in Hong Kong
    - RMB1.00 per impression in Beijing and Shanghai
  - Color Copy or Print (all sizes of paper):
    - $0.55 per impression
  - Scanned Images:
    - $0.16 per page for black and white or color scans
  - Other Services:
    - CD/DVD Duplicating or Mastering - $7/$10 per CD/DVD
    - Binding - $0.70 per binding
    - Large or specialized binders - $13/$27
    - Tabs - $0.13 per item
    - OCR/File Conversion - $0.03 per page
    - Large Format Printing - $1.00 per sq. ft.

- **Secretarial and Word Processing**: Clients are not charged for secretarial and word processing activities incurred on their matters during standard business hours.

- **Overtime Charges**: Clients will be charged for overtime costs for secretarial and document services work if either (i) the client has specifically requested the after-hours work or (ii) the nature of the work being done for the client necessitates out-of-hours overtime and such work could not have been done during normal working hours. If these conditions are satisfied, costs for related overtime meals and transportation also will be charged.

1

- **Travel Expenses**:  We charge clients our out-of-pocket costs for travel expenses including associated travel agency fees.  We charge coach fares (business class for international flights) unless the client has approved business-class, first-class or an upgrade.  K&E LLP personnel are instructed to incur only reasonable airfare, hotel and meal expenses.  K&E LLP negotiates, uses, and passes along volume discount hotel and air rates whenever practicable.  However, certain retrospective rebates may not be passed along.

- **Catering Charges:**  Clients will be charged for any in-house catering service provided in connection with client matters.

- **Communication Expenses**:  We do not charge clients for telephone calls or faxes made from K&E LLP's offices with the exception of third-party conference calls and videoconferences.

  Charges incurred for conference calls, videoconferences, cellular telephones, and calls made from other third-party locations will be charged to the client at the actual cost incurred.  Further, other telecommunication expenses incurred at third-party locations (e.g., phone lines at trial sites, Internet access, etc.) will be charged to the client at the actual cost incurred.

- **Overnight Delivery/Postage**:  We charge clients for the actual cost of overnight and special delivery (e.g., Express Mail, FedEx, and DHL), and U.S. postage for materials mailed on the client's behalf.  K&E LLP negotiates, uses, and passes along volume discount rates whenever practicable.

- **Messengers**:  We charge clients for the actual cost of a third party vendor messenger.

- **Library Research Services:**  Library Research staff provides research and document retrieval services at the request of attorneys, and clients are charged per hour for these services.  Any expenses incurred in connection with the request, such as outside retrieval service or online research charges, are passed on to the client at cost, including any applicable discounts.

- **Online Research Charges**:  K&E LLP charges for costs incurred in using third-party online research services in connection with a client matter.  K&E LLP negotiates and uses discounts or special rates for online research services whenever possible and practicable and passes through the full benefit of any savings to the client based on actual usage.

- **Inter-Library Loan Services:**  Our standard client charge for inter-library loan services when a K&E LLP library employee borrows a book from an outside source is $25 per title.  There is no client charge for borrowing books from K&E LLP libraries in other cities or from outside collections when the title is part of the K&E LLP collection but unavailable.

- **Off-Site Legal Files Storage**:  Clients are not charged for off-site storage of files unless the storage charge is approved in advance.

- **Electronic Data Storage**:  K&E LLP will not charge clients for costs to store electronic data and files on K&E LLP's systems if the data stored does not exceed 100 gigabytes (GB).  If the data stored for a specific client exceeds 100GB, K&E LLP will charge clients $6.00 per month/per GB for all network data stored until the data is either returned to the client or properly disposed of.  For e-discovery data on the Relativity platform, K&E LLP will also charge clients $6.00 per month/per GB until the data is either returned to the client or properly disposed of.

- **Calendar Court Services**:  Our standard charge is $25 for a court filing and other court services or transactions.

- **Supplies**:  There is no client charge for standard office supplies.  Clients are charged for special items (e.g., a minute book, exhibit tabs/indexes/dividers, binding, etc.) and then at K&E LLP's actual cost.

- **Contract Attorneys and Contract Non-Attorney Billers**:  If there is a need to utilize a contract attorney or contract non-attorney on a client engagement, clients will be charged a standard hourly rate for these billers unless other specific billing arrangements are agreed between K&E LLP and client.

- **Expert Witnesses, Experts of Other Types, and Other Third Party Consultants**:  If there is a need to utilize an expert witness, expert of other type, or other third party consultant such as accountants, investment bankers, academicians, other attorneys, etc. on a client engagement, clients will be requested to retain or pay these individuals directly unless specific billing arrangements are agreed between K&E LLP and client.

- **Third Party Expenditures**: Third party expenditures (e.g., corporate document and lien searches, lease of office space at Trial location, IT equipment rental, SEC and regulatory filings, etc.) incurred on behalf of a client, will be passed through to the client at actual cost.  If the invoice exceeds $50,000, it is K&E LLP's policy that wherever possible such charges will be directly billed to the client.  In those circumstances where this is not possible, K&E LLP will seek reimbursement from our client prior to paying the vendor.

Unless otherwise noted, charges billed in foreign currencies are determined annually based on current U.S. charges at an appropriate exchange rate.

# **EXHIBIT B**

**Sussberg Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF**
**JOSHUA A. SUSSBERG IN SUPPORT OF THE DEBTORS'**
**APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE**
**RETENTION AND EMPLOYMENT OF KIRKLAND & ELLIS LLP AND**
**KIRKLAND & ELLIS INTERNATIONAL LLP AS ATTORNEYS FOR THE**
**DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF JULY 5, 2022**

I, Joshua A. Sussberg, being duly sworn, state the following under penalty of perjury:

1.      I am the president of Joshua A. Sussberg, P.C., a partner of the law firm of Kirkland & Ellis LLP, located at 601 Lexington Avenue, New York, New York 10022, and a partner of Kirkland & Ellis International, LLP (together with Kirkland & Ellis LLP, collectively, "Kirkland"). I am one of the lead attorneys from Kirkland working on the above-captioned chapter 11 cases. I am a member in good standing of the Bar of the State of New York, and I have been admitted to practice in New York. There are no disciplinary proceedings pending against me.

2.      I submit this declaration (the "Declaration") in support of the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

*Effective as of July 5, 2022* (the "Application").[2]  Except as otherwise noted, I have personal knowledge of the matters set forth herein.

### **Kirkland's Qualifications**

3.     The Debtors seek to retain Kirkland because of Kirkland's recognized expertise and extensive experience and knowledge in the field of debtors' protections, creditors' rights, and business reorganizations under chapter 11 of the Bankruptcy Code.

4.     Kirkland has been actively involved in major chapter 11 cases and has represented debtors in many cases, including, among others:   *In re HONX, Inc.*, No. 22-90035 (MI) (Bankr. S.D. Tex. June 24, 2022); *In re Seadrill New Finance Limited*, No. 22-90001 (DRJ) (Bankr. S.D. Tex. Mar. 10, 2022); *In re Nordic Aviation Capital Designated Activity Company*, No. 21-33693 (KRH) (Bankr. E.D. Va. Feb. 3, 2022); *In re Carlson Travel, Inc.*, No. 21-90017 (MI) (Bankr. S.D. Tex. Jan. 12, 2022); *In re Riverbed Technology, Inc.*, No. 21-11503 (CTG) (Bankr. D. Del. Dec. 8, 2021); *In re Washington Prime Grp.*, No. 21-31948 (MI) (Bankr. S.D. Tex. July 27, 2021); *In re Seadrill Limited*, No. 21-30427 (DRJ) (Bankr. S.D. Tex. Apr. 5, 2021); *In re Belk, Inc.*, No. 21-30630 (MI) (Bankr. S.D. Tex. Mar. 31, 2021); *In re Frontera Holdings LLC*, No. 21-30354 (MI) (Bankr. S.D. Tex. Mar. 19, 2021); *In re Seadrill Partners LLC*, No. 20-35740 (DRJ) (Bankr. S.D. Tex. Jan. 15, 2021); *In re Gulfport Energy Corporation*, No. 20-35562 (DRJ) (Bankr. S.D. Tex. Jan. 11, 2021); *In re Bouchard Transportation, Co., Inc.*, No. 20-34682 (DRJ) (Bankr. S.D. Tex. Nov. 23, 2020); *In re Lakeland Tours, LLC*, No. 20-11647 (JLG) (Bankr. S.D.N.Y. Sept. 10, 2020); *In re Jason Industries, Inc.*, No. 20-22766 (RDD) (Bankr. S.D.N.Y. Aug. 27, 2020); *In re Valaris plc*, No. 20-34114 (MI) (Bankr. S.D. Tex. Aug. 19,

---

2     Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

2020); *In re Chesapeake Energy Corp.*, No. 20-33233 (DRJ) (Bankr. S.D. Tex. Aug. 12, 2020);

*In re Frontier Commc'ns. Corp.*, No. 20-22476 (RDD) (Bankr. S.D.N.Y. May 26, 2020).[3]

5.      In preparing for its representation of the Debtors in these chapter 11 cases, Kirkland

has become familiar with the Debtors' business and many of the potential legal issues that may

arise in the context of these chapter 11 cases.  I believe that Kirkland is both well-qualified and

uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

## Services to Be Provided

6.      Subject to further order of the Court and that certain engagement letter dated

June 17, 2022 (the "Engagement Letter"), a copy of which is attached as **Exhibit 1** to the Order,

the Debtors retained Kirkland to render, without limitation, the following legal services:

   a.   advising the Debtors with respect to their powers and duties as debtor in possession in the continued management and operation of their businesses and properties;

   b.   advising and consulting on the conduct of these chapter 11 cases, including all of the legal and administrative requirements of operating in chapter 11;

   c.   attending meetings and negotiating with representatives of creditors and other parties in interest;

   d.   taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

   e.   preparing pleadings in connection with these chapter 11 cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

   f.   representing the Debtors in connection with obtaining authority to continue using cash collateral and postpetition financing;

---

[3]   Because of the voluminous nature of the orders cited in this Declaration, they are not attached to this Declaration. Copies of these orders are available upon request to Kirkland.

g.       advising the Debtors in connection with any potential sale of assets;

h.       appearing before the Court and any appellate courts to represent the interests of the Debtors' estates;

i.       advising the Debtors regarding tax matters;

j.       taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

k.       performing all other necessary legal services for the Debtors in connection with the prosecution of these chapter 11 cases, including: (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors' assets; and (iii) advising the Debtors on corporate and litigation matters.

## **Professional Compensation**

7.       Kirkland intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court.  The hourly rates and corresponding rate structure Kirkland will use in these chapter 11 cases are the same as the hourly rates and corresponding rate structure that Kirkland uses in other debtor representations, and are comparable to the hourly rates and corresponding rate structure that Kirkland uses for complex corporate, securities, and litigation matters whether in court or otherwise, regardless of whether a fee application is required.  These rates and the rate structure reflect that such restructuring and other complex matters typically are national in scope and involve great complexity, high stakes, and severe time pressures.

8.       Kirkland operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors.

4

9.      Kirkland's current hourly rates for matters related to these chapter 11 cases range

as follows:[4]

| Billing Category[5] | U.S. Range |
|---|---|
| Partners | $1,135-$1,995 |
| Of Counsel | $805-$1,845 |
| Associates | $650-$1,245 |
| Paraprofessionals | $265-$495 |

10.      Kirkland's hourly rates are set at a level designed to compensate Kirkland fairly for

the work of its attorneys and paralegals and to cover fixed and routine expenses.  Hourly rates vary

with the experience and seniority of the individuals assigned.  These hourly rates are subject to

periodic adjustments to reflect economic and other conditions.[6]

11.      It is Kirkland's policy to charge its clients in all areas of practice for identifiable,

non-overhead expenses incurred in connection with the client's case that would not have been

incurred except for representation of that particular client.  It is also Kirkland's policy to charge

its clients only the amount actually incurred by Kirkland in connection with such items.  Examples

---

[4]   For professionals and paraprofessionals residing outside of the U.S., hourly rates are billed in the applicable currency.  When billing a U.S. entity, such foreign rates are converted into U.S. dollars at the then applicable conversion rate.  After converting these foreign rates into U.S. dollars, it is possible that certain rates may exceed the billing rates listed in the chart herein.  While the rate ranges provided for in this Application may change if an individual leaves or joins Kirkland, and if any such individual's billing rate falls outside the ranges disclosed above, Kirkland does not intend to update the ranges for such circumstances.

[5]   Although Kirkland does not anticipate using contract attorneys during these chapter 11 cases, in the unlikely event that it becomes necessary to use contract attorneys, Kirkland will not charge a markup to the Debtors with respect to fees billed by such attorneys.  Moreover, any contract attorneys or non-attorneys who are employed by the Debtors in connection with work performed by Kirkland will be subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code.

[6]   For example, like many of its peer law firms, Kirkland typically increases the hourly billing rate of attorneys and paraprofessionals twice a year in the form of:  (i) step increases historically awarded in the ordinary course on the basis of advancing seniority and promotion and (ii) periodic increases within each attorney's and paraprofessional's current level of seniority.  The step increases do not constitute "rate increases" (as the term is used in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013).  As set forth in the Order, Kirkland will provide ten business-days' notice to the Debtors, the U.S. Trustee, and any official committee before implementing any periodic increases, and shall file such notice with the Court.

5

of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, airfare, meals, and lodging.

12.     To ensure compliance with all applicable deadlines in these chapter 11 cases, Kirkland utilizes the services of overtime secretaries.  Kirkland charges fees for these services pursuant to the Engagement Letter between Kirkland and the Debtors, which permits Kirkland to bill the Debtors for overtime secretarial charges that arise out of business necessity.  In addition, Kirkland professionals also may charge their overtime meals and overtime transportation to the Debtors consistent with the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York* and the Local Rules.

13.     Kirkland currently charges the Debtors $0.16 per page for standard duplication in its offices in the United States.  Notwithstanding the foregoing and consistent with the Local Rules, Kirkland will charge no more than $0.10 per page for standard duplication services in these chapter 11 cases.  Kirkland does not charge its clients for incoming facsimile transmissions. Kirkland has negotiated a discounted rate for Westlaw computer-assisted legal research. Computer-assisted legal research is used whenever the researcher determines that using Westlaw is more cost effective than using traditional (non-computer assisted legal research) techniques.

### Compensation Received by Kirkland from the Debtors

14.     Per the terms of the Engagement Letter, on June 24, 2022, the Debtors paid $1 million to Kirkland, which, as stated in the Engagement Letter, constituted an "advance payment retainer" as defined in Rule 1.15(c) of the Illinois Rules of Professional Conduct and *Dowling v. Chicago Options Assoc., Inc.*, 875 N.E.2d 1012, 1018 (Ill. 2007).  Subsequently, the Debtors paid to Kirkland additional advance payment retainers totaling $2 million in the aggregate. As stated in the Engagement Letter, any advance payment retainer is earned by Kirkland upon

6

receipt, any advance payment retainer becomes the property of Kirkland upon receipt, the Debtors

no longer have a property interest in any advance payment retainer upon Kirkland's receipt, any

advance payment retainer will be placed in Kirkland's general account and will not be held in a

client trust account, and the Debtors will not earn any interest on any advance payment retainer.[7]

A chart identifying the statements setting forth the professional services provided by Kirkland to

the Debtors and the expenses incurred by Kirkland in connection therewith, as well as the advance

payment retainer transferred by the Debtors to Kirkland, before the Petition Date is set forth below.

15.    During the 90-day period before the Petition Date, the Debtors paid advance

payment retainer in the following amounts to Kirkland:

| Type of Transaction | Date | Amount of Fees and Expenses Listed on Statement | Amount of Advance Payment Retainer Requested | Amount of Advance Payment Retainer Received | Resulting Advance Payment Retainer Following |
|---|---|---|---|---|---|
| Initial Request for Advance Payment Retainer | 6/17/2022 | | $1,000,000 | | $0.00 |
| Receipt of Initial Advance Payment Retainer | 6/24/2022 | | | $1,000,000 | $1,000,000 |
| Additional Advance Payment Retainer (Full Statement) | 6/24/2022 | | $500,000 | | $1,000,000 |
| Additional Advance Payment Retainer (Full Statement) | 6/29/2022 | | $750,000 | | $1,000,000 |
| Receipt of Additional Advance Payment Retainer | 7/1/2022 | | | $500,000 | $1,500,000 |
| Receipt of Additional Advance Payment Retainer | 7/1/2022 | | | $750,000 | $2,250,000 |
| Statement of Services Rendered and Expenses Incurred | 7/1/2022 | $1,074,000.76 | | | $1,175,999.24 |
| Additional Advance Payment Retainer (Full Statement) | 7/1/2022 | | $750,000 | | $1,175,999.24 |
| Additional Advance Payment Retainer (Full Statement) | 7/5/2022 | | | $750,000.00 | $1,925,999.24 |

---

[7]    The Engagement Letter provides that Kirkland may continue to hold any remaining prepetition advance payment retainer during the pendency of a chapter 11 case rather than applying such advance payment retainer to postpetition fees and expenses. Kirkland evaluates whether to retain any remaining prepetition advance payment retainer on a case-by-case basis. In this particular case, Kirkland has elected not to hold any remaining prepetition advance payment retainer but, instead, will apply any remaining advance payment retainer to postpetition fees and expenses as such fees and expenses are allowed by the Court.

| Statement of Services Rendered and Expenses Incurred | 7/5/2022 | $1,054,792.47 | | | $871,206.77 |
|---|---|---|---|---|---|

16.     As of the Petition Date, the Debtors did not owe Kirkland any amounts for legal services rendered before the Petition Date.  Although certain expenses and fees may have been incurred, but not yet applied to Kirkland's advance payment retainer, Kirkland's total advance payment retainer always exceeded any amounts listed or to be listed on statements describing services rendered and expenses incurred (on a "rates times hours" and "dates of expenses incurred" basis) before the Petition Date.

17.     Pursuant to Bankruptcy Rule 2016(b), Kirkland has not shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, associates, and contract attorneys associated with Kirkland or (b) any compensation another person or party has received or may receive.

**Statement Regarding U.S. Trustee Guidelines**

18.     Kirkland shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Local Rules, and any other applicable procedures and orders of the Court. Kirkland also intends to make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective As of November 1, 2013* (the "Revised UST Guidelines"), both in connection with this Application and the interim and final fee applications to be filed by Kirkland in these chapter 11 cases.

8

### Attorney Statement Pursuant to Revised UST Guidelines

19.        The following is provided in response to the request for additional

information set forth in Paragraph D.1. of the Revised UST Guidelines:

a.   **Question**: Did Kirkland agree to any variations from, or alternatives to, Kirkland's standard billing arrangements for this engagement?

**Answer**: No. Kirkland and the Debtors have not agreed to any variations from, or alternatives to, Kirkland's standard billing arrangements for this engagement.  The rate structure provided by Kirkland is appropriate and is not significantly different from (a) the rates that Kirkland charges for other non-bankruptcy representations or (b) the rates of other comparably skilled professionals.

b.   **Question**: Do any of the Kirkland professionals in this engagement vary their rate based on the geographic location of the Debtors' chapter 11 cases?

**Answer**: No. The hourly rates used by Kirkland in representing the Debtors are consistent with the rates that Kirkland charges other comparable chapter 11 clients, regardless of the location of the chapter 11 case.

c.   **Question**: If Kirkland has represented the Debtors in the 12 months prepetition, disclose Kirkland's billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition.  If Kirkland's billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

**Answer**: Kirkland's current hourly rates for services rendered on behalf of the Debtors range as follows: [8]

| Billing Category | U.S. Range |
|---|---|
| Partners | $1,135-$1,995 |
| Of Counsel | $805-$1,845 |
| Associates | $650-$1,245 |
| Paraprofessionals | $265-$495 |

---

[8]   While the rate ranges provided for in this Application may change if an individual leaves or joins Kirkland, and if any such individual's billing rate falls outside the ranges disclosed above, Kirkland does not intend to update the ranges for such circumstances.

d. **Question**:  Have the Debtors approved Kirkland's budget and staffing plan, and, if so, for what budget period?

**Answer**:  Yes, for the period from July 5, 2022, through November 15, 2022.

### **Kirkland's Disinterestedness**

20.     In connection with its proposed retention by the Debtors in these chapter 11 cases, Kirkland undertook to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors. Specifically, Kirkland obtained from the Debtors and their representatives the names of individuals and entities that may be parties in interest in these chapter 11 cases (the "Potential Parties in Interest") and such parties are listed on **Schedule 1** hereto.  Kirkland has searched its electronic database for its connections to the entities listed on **Schedule 1** hereto.  In addition, after Kirkland identified all client connections with the parties in interest over a specified time period, Kirkland circulated a survey email to all Kirkland attorneys who billed 10 or more hours to such clients during the prior six years.  Further, beyond the individual emails, Kirkland sent a daily report of new matters firm wide.  All Kirkland attorneys are responsible for reviewing the daily report of new matters and raising any potential concerns with respect to new representations.  Kirkland did not receive any answers in the affirmative to these emails.  Additionally, to the extent that I have been able to ascertain that Kirkland has been retained within the last three years to represent any of the Potential Parties in Interest (or their affiliates, as the case may be) in matters unrelated to these cases, such facts are disclosed on **Schedule 2** attached hereto.

21.     Kirkland and certain of its partners and associates may have in the past represented, may currently represent, and likely in the future will represent, entities that may be parties in interest in these chapter 11 cases in connection with matters unrelated (except as otherwise

10

disclosed herein) to the Debtors and these chapter 11 cases.  Kirkland has searched its electronic

database for its connections to the entities listed on **Schedule 1** attached hereto.  The information

listed on **Schedule 1** may have changed without our knowledge and may change during the

pendency of these chapter 11 cases.  Accordingly, Kirkland will update this Declaration as

necessary and when Kirkland becomes aware of additional material information.  The following

is a list of the categories that Kirkland has searched:[9]

| **Schedule** | **Category** |
| --- | --- |
| 1(a) | Current and Former Affiliates |
| 1(b) | Current and Former Directors and Officers |
| 1(c) | Significant Equityholder |
| 1(d) | Bankruptcy Professionals |
| 1(e) | Banks / Lenders / Administrative Agents |
| 1(f) | Contract Parties |
| 1(g) | Customers |
| 1(h) | Insurance |
| 1(i) | Landlords |
| 1(j) | Litigation |
| 1(k) | Ordinary Course Professionals |
| 1(l) | Potential M&A Transaction Counterparties |
| 1(m) | Taxing Authorities / Government / Regulatory Agencies |
| 1(n) | Top 50 Unsecured Creditors |
| 1(o) | U.S. Trustee Personnel, Judges, and Court contacts for the Southern District of New York |
| 1(p) | Utilities |
| 1(q) | Vendors |

22.    To the best of my knowledge, (a) Kirkland is a "disinterested person" within the

meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the

Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and

---

[9]    Kirkland's inclusion of parties in the following Schedules is solely to illustrate Kirkland's conflict search process and is not an admission that any party has a valid claim against the Debtors or that any party properly belongs in the schedules or has a claim or legal relationship to the Debtors of the nature described in the schedules.

(b) Kirkland has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in this Declaration.

23.     Listed on **Schedule 2** to this Declaration are the results of Kirkland's conflicts searches of the above-listed entities.[10]  For the avoidance of doubt, Kirkland will not commence a cause of action in these chapter 11 cases against the entities listed on **Schedule 2** that are current clients of Kirkland (including entities listed below under the "Specific Disclosures" section of this Declaration) unless Kirkland has an applicable waiver on file or first receives a waiver from such entity allowing Kirkland to commence such an action.  To the extent that a waiver does not exist or is not obtained from such entity and it is necessary for the Debtors to commence an action against that entity, the Debtors will be represented in such particular matter by conflicts counsel.

24.     Of the entities listed on **Schedule 2**, only one represented more than one percent of Kirkland's fee receipts for the twelve-month period ending on June 30, 2022.  Blackstone Inc. is an affiliate of PSAV, Inc., a vendor to the Debtors, and represented more than one percent of Kirkland's fee receipts for the twelve-month period ending on June 30, 2022.[11]

25.     Kirkland's conflicts search of the entities listed on **Schedules 1(a) – 1(q)** (that Kirkland was able to locate using its reasonable efforts) reveals, to the best of my knowledge,

---

[10]    As referenced in **Schedule 2**, the term "current client" means an entity listed as a client in Kirkland's conflicts search system to whom time was posted in the 12 months preceding the Petition Date.  As referenced in **Schedule 2**, the term "former client" means an entity listed as a client in Kirkland's conflicts search system to whom time was posted between 12 and 36 months preceding the Petition Date.  As referenced in **Schedule 2**, the term "closed client" means an entity listed as a client in Kirkland's conflicts search system to whom time was posted in the 36 months preceding the Petition Date, but for which the client representation has been closed.  Whether an actual client relationship exists can only be determined by reference to the documents governing Kirkland's representation rather than its potential listing in Kirkland's conflicts search system.  The list generated from Kirkland's conflicts search system is over-inclusive.  As a general matter, Kirkland discloses connections with "former clients" or "closed clients" for whom time was posted in the last 36 months, but does not disclose connections if time was billed more than 36 months before the Petition Date.

[11]    Specific percentages will be disclosed to the U.S. Trustee upon request.

that those Kirkland attorneys and paraprofessionals who previously worked at other law firms that represented such entities in these chapter 11 cases have not worked on matters relating to the Debtors' restructuring efforts while at Kirkland.

26.     Based on the conflicts search conducted to date and described herein, to the best of my knowledge, neither I, Kirkland, nor any partner or associate thereof, insofar as I have been able to ascertain, have any connection with the Debtors, their creditors, or any other parties in interest, their respective attorneys and accountants, the United States Trustee for the Southern District of New York (the "U.S. Trustee"), any person employed by the U.S. Trustee, or any Bankruptcy Judge currently serving on the United States Bankruptcy Court for the Southern District of New York, except as disclosed or otherwise described herein.

27.     Kirkland will review its files periodically during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise, Kirkland will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

28.     Generally, it is Kirkland's policy to disclose entities in the capacity that they first appear in a conflicts search.  For example, if an entity already has been disclosed in this Declaration in one capacity (*e.g.*, a customer), and the entity appears in a subsequent conflicts search in a different capacity (*e.g.*, a vendor), Kirkland does not disclose the same entity again in supplemental declarations, unless the circumstances are such in the latter capacity that additional disclosure is required.

29.     From time to time, certain former partners of Kirkland are entitled to compensation for a limited period of time following their departure from the firm.

13

30.     From time to time, Kirkland has referred work to other professionals to be retained in these chapter 11 cases.  Likewise, certain such professionals have referred work to Kirkland.

31.     Certain insurance companies pay the legal bills of Kirkland clients.  Some of these insurance companies may be involved in these chapter 11 cases.  None of these insurance companies, however, are Kirkland clients as a result of the fact that they pay legal fees on behalf of Kirkland clients.

## Specific Disclosures

32.     As specifically set forth below and in the attached exhibits, Kirkland represents certain of the Debtors' creditors, equity security holders, or other entities that may be parties in interest in ongoing matters unrelated to the Debtors and these chapter 11 cases.  None of the representations described herein are materially adverse to the interests of the Debtors' estates. Moreover, pursuant to section 327(c) of the Bankruptcy Code, Kirkland is not disqualified from acting as the Debtors' counsel merely because it represents certain of the Debtors' creditors, equity security holders, or other entities that may be parties in interest in matters unrelated to these chapter 11 cases.

**A.**     **Connections to Officers and Directors.**

33.     As disclosed below and on **Schedule 2**, Kirkland currently represents, and in the past has represented, certain affiliates, subsidiaries and entities associated with the Debtors' current and recent former officers and directors.  I do not believe that Kirkland's current or prior representation of the affiliates, subsidiaries, and entities associated with certain officers and directors precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

34.    Jill Frizzley, independent director of Voyager Digital, LLC, has served, or may serve from time to time, in various management and/or director capacities of certain former Kirkland clients or affiliates thereof.  I do not believe that Kirkland's current or prior representation of clients for which Ms. Frizzley served or serves in management and/or director capacities precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

35.    Timothy Pohl, independent director of Voyager Digital, LLC, has served, or may serve from time to time, in various management and/or director capacities of certain Kirkland clients or affiliates thereof.  I do not believe that Kirkland's current or prior representation of clients for which Mr. Pohl served or serves in management and/or director capacities precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

36.    Scott Vogel, independent director of Voyager Digital Holdings, Inc., has served, or may serve from time to time, in various management and/or director capacities of certain Kirkland clients or affiliates thereof.  I do not believe that Kirkland's current or prior representation of clients for which Mr. Vogel served or serves in management and/or director capacities precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

37.    Matthew Ray, independent director of Voyager Digital Ltd., has served, or may serve from time to time, in various management and/or director capacities of certain Kirkland clients or affiliates thereof.  I do not believe that Kirkland's current or prior representation of clients for which Mr. Ray served or serves in management and/or director capacities precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

**B.    Connections to Other Entities.**

38.    As disclosed on **Schedule 2**, Kirkland currently represents, and in the past has represented, Alphabet Inc. and various of its subsidiaries and affiliates (collectively, "Alphabet")

15

on a variety of matters.  Alphabet is a vendor of the Debtors.  Kirkland's current and prior representations of Alphabet have been in matters unrelated to the Debtors or these chapter 11 cases. Kirkland has not represented, and will not represent, Alphabet in connection with any matter in these chapter 11 cases during the pendency of these chapter 11 cases.  I do not believe that Kirkland's current or prior representation of Alphabet precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

### C.    Potential M&A Transaction Counterparties.

39.    The Debtors are in discussions with certain parties (and may be in discussions with other parties in the future) regarding potential M&A transactions regarding the Debtors and their businesses.  Due to the inherently competitive nature of this process, it is imperative that the identities of these potential counterparties remain confidential.  Contemporaneously herewith, the Debtors have filed the *Debtors' Omnibus Motion for Entry of an Order Authorizing the Debtors to File Under Seal the Names of Certain Customers and Confidential Parties in Interest Related to the Debtors' Professional Retention Applications* (the "Motion to Seal").  The Motion to Seal seeks authority for the Debtors to redact and file under seal the names of certain potential transaction counterparties whose non-disclosure agreements require that their identities remain confidential.  For the avoidance of doubt, Kirkland will not represent any of the potential counterparties in connection with any matter in these chapter 11 cases.

### D.    Customers.

40.    The large majority of the Debtors' creditors are individual customers, including certain current Kirkland attorneys.  These attorneys have not and will not perform work in connection with Kirkland's representation of the Debtors and will not have access to confidential information related to the representation.  Kirkland's formal ethical screen, as discussed further

16

herein, provides sufficient safeguards and procedures to prevent imputation of conflicts by isolating the customer attorneys and protecting confidential information.

41.     Due to the prevalence of identity theft, phishing scams, and other forms of harassment or stalking, and pursuant to the *Order (I) Authorizing the Debtors to File a Consolidated List of Creditors in Lieu of Submitting a Separate Mailing Matrix for Each Debtor, (II) Authorizing the Debtors to File a Consolidated List of the Debtors' Fifty Largest Unsecured Creditors, (III) Authorizing the Debtors to Redact Certain Personally Identifiable Information, (IV) Approving the Form and Manner of Notifying Creditors of Commencement of These Chapter 11 Cases, and (V) Granting Related Relief* entered on July 8, 2022 [Docket No. 54], it is imperative that certain personally identifiable information of these customers remain confidential and not be publicly disclosed on **Schedule 2**.  Further, the Motion to Seal seeks authority for the Debtors to redact and file under seal the names of their customers (a) as commercial information under section 107(b) of the Bankruptcy Code to prevent the Debtors' competitors from obtaining competitive commercial information regarding the Debtors' customers and (b) as personal information under section 107(c) of the Bankruptcy Code to protect the safety and privacy of their customers from hackers or other targeted attacks.  For the avoidance of doubt, Kirkland will not represent any of the customers in connection with any matter in these chapter 11 cases.

**E.     Other Chapter 11 Professionals.**

42.     As disclosed on **Schedule 2**, Kirkland currently represents, and in the past has represented, certain affiliates, subsidiaries, and entities associated with various professionals that the Debtors seeks to retain in connection with these chapter 11 cases.  Kirkland's current and prior representations of these professionals have been in matters unrelated to the Debtors or these chapter 11 cases.  Kirkland has not represented, and will not represent, any such professionals in

17

connection with any matter in these chapter 11 cases during the pendency of these chapter 11 cases.

I do not believe that Kirkland's current or prior representation of these professionals precludes

Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

43.    The Debtors' proposed investment banker is Moelis & Company LLC ("Moelis").

As disclosed on **Schedule 2**, Kirkland currently represents, and in the past has represented, Moelis,

on a variety of matters.  Kirkland's current and prior representations of Moelis have been in matters

unrelated to the Debtors or these chapter 11 cases.  Kirkland has not represented, and will not

represent, Moelis in connection with any matter in these chapter 11 cases during the pendency of

these chapter 11 cases.  I do not believe that Kirkland's current or prior representation of Moelis

precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

44.    The Debtors' proposed financial advisor is Berkeley Research Group, LLC

("BRG").  As disclosed on **Schedule 2**, Kirkland has in the past represented BRG on a variety of

matters.  Kirkland's prior representations of BRG have been in matters unrelated to the Debtors or

these chapter 11 cases.  Kirkland has not represented, and will not represent, BRG in connection

with any matter in these chapter 11 cases during the pendency of these chapter 11 cases.  I do not

believe that Kirkland's prior representations of BRG precludes Kirkland from meeting the

disinterestedness standard under the Bankruptcy Code.

45.    On July 13, 2022, the Court approved Stretto, Inc. ("Stretto") as the Debtors' notice

and claims agent.[12]  As disclosed on **Schedule 2**, Kirkland has in the past represented Stretto on a

variety of matters.  Kirkland's prior representations of Stretto have been in matters unrelated to

the Debtors or these chapter 11 cases.  Kirkland has not represented, and will not represent, Stretto

---

[12]    *See Order (I) Authorizing and Approving the Appointment of Stretto, Inc. as Claims and Noticing Agent and (II) Granting Related Relief* [Docket No. 67].

in connection with any matter in these chapter 11 cases during the pendency of these chapter 11 cases. I do not believe that Kirkland's prior representations of Stretto precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

**F.    Kirkland Attorney and Employee Investments.**

46.    From time to time, Kirkland partners, of counsel, associates, and employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds, and other types of investment funds (the "Investment Funds"), through which such individuals indirectly acquire an interest in debt or equity securities of many companies, one of which may be one of the Debtors, their creditors, or other parties in interest in these chapter 11 cases, often without Kirkland's knowledge. Each Kirkland person generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund, and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security. The Investment Fund is generally operated as a blind pool, meaning that when the Kirkland persons make an investment in the Investment Fund, he, she, or they do not know what securities the blind pool Investment Fund will purchase or sell, and have no control over such purchases or sales.

47.    From time to time one or more Kirkland partners and of counsel voluntarily choose to form an entity (a "Passive-Intermediary Entity") to invest in one or more Investment Funds. Such Passive-Intermediary Entity is composed only of persons who were Kirkland partners and of counsel at the time of the Passive-Intermediary Entity's formation (although some may later become former Kirkland partners and of counsel). Participation in such a Passive-Intermediary Entity is wholly voluntary and only a portion of Kirkland's partners and of counsel choose to participate. The Passive-Intermediary Entity generally owns substantially less than one percent of

19

any such Investment Fund, does not manage or otherwise control such Investment Fund, and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security. Each Investment Fund in which a Passive-Intermediary Entity invests is operated as a blind pool, so that the Passive-Intermediary Entity does not know what securities the blind pool Investment Funds will purchase or sell, and has no control over such purchases or sales. And, indeed, the Passive-Intermediary Entity often arranges for statements and communications from certain Investment Funds to be sent solely to a blind administrator who edits out all information regarding the identity of the Investment Fund's underlying investments, so that the Passive-Intermediary Entity does not learn (even after the fact) the identity of the securities purchased, sold, or held by the Investment Fund. To the extent the Passive-Intermediary Entity is or becomes aware of the identity of the securities purchased, sold, or held by the Investment Funds ("Known Holdings"), such Known Holdings are submitted to Kirkland's conflict checking system.

48.    From time to time, Kirkland partners, of counsel, associates, and employees personally directly acquire a debt or equity security of a company which may be (or become) one of the Debtors, their creditors, or other parties in interest in these chapter 11 cases. Kirkland has a long-standing policy prohibiting attorneys and employees from using confidential information that may come to their attention in the course of their work, so that all Kirkland attorneys and employees are barred from trading in securities with respect to which they possess confidential information.

**G.    Other Disclosures.**

49.    Certain interrelationships exist among the Debtors. Nevertheless, the Debtors have advised Kirkland that the Debtors' relationships to each other do not pose any conflict of interest because of the general unity of interest among the Debtors. Insofar as I have been able to ascertain,

I know of no conflict of interest that would preclude Kirkland's joint representation of the Debtors in these chapter 11 cases.

50.    As disclosed on **<u>Schedule 2</u>**, Kirkland currently represents Celsius Network LLC and various of its subsidiaries and affiliates (collectively, "<u>Celsius</u>") in its bankruptcy proceedings.  Certain of the Debtors are customers of Celsius.  Kirkland has not represented, and will not represent, the Debtors adverse to Celsius during the pendency of Celsius' bankruptcy proceedings.  Similarly, Kirkland has not represented, and will not represent, Celsius adverse to the Debtors during the pendency of these chapter 11 cases.  I do not believe that Kirkland's current representation of Celsius precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

51.    James H.M. Sprayregen, a Kirkland partner, worked as an attorney at Kirkland from July 1990 until June 2006 and rejoined the firm in December 2008. From June 2006 until December 2008, prior to rejoining the firm, Mr. Sprayregen was co-head of the restructuring group of Goldman Sachs Americas, where he advised U.S. and international clients in restructuring and distressed situations.  An affiliate of Goldman Sachs was a co-client with an affiliate of a confidential potential M&A counterparty to the Debtors.[13]  I do not believe that Mr. Sprayregen's prior employment at Goldman Sachs precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

52.    Susan D. Golden, a Kirkland partner, was employed by the U.S. Trustee for the Southern District of New York from October 2007 to December 2017.  I do not believe that Ms.

---

[13] Kirkland has filed an unredacted specific disclosure disclosing the name of the confidential potential M&A counterparty pursuant to the Motion to Seal.

Golden's prior employment precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

53.     Leila Rachlin, one of Kirkland's managers of legal education and development is the wife of Greg M. Zipes, a trial attorney employed by the U.S. Trustee for the Southern District of New York. I do not believe that this connection precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

54.     Reginald Brown, a Kirkland partner, is a board member of Blackstone Inc., an affiliate of PSAV, Inc., a vendor of the Debtors. Mr. Brown has not billed time to these chapter 11 cases. Out of an abundance of caution, Kirkland has instituted formal measures to screen Mr. Brown from all aspects of Kirkland's representation of the Debtors. I do not believe that this connection precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

55.     Carson Liles, a 2022 Kirkland summer associate, interned with the Honorable Cecilia G. Morris, Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, from May 2020 to August 2020. Mr. Liles had no connection with the Debtors' chapter 11 cases while interning for Judge Morris. I do not believe that this connection precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

56.     Furthermore, prior to joining Kirkland, certain Kirkland attorneys represented clients adverse to Kirkland's current and former restructuring clients. Certain of these attorneys (the "Screened Kirkland Attorneys") will not perform work in connection with Kirkland's representation of the Debtors and will not have access to confidential information related to the representation. Kirkland's formal ethical screen provides sufficient safeguards and procedures to

prevent imputation of conflicts by isolating the Screened Kirkland Attorneys and protecting confidential information.

57.     Under Kirkland's screening procedures, Kirkland's conflicts department distributes a memorandum to all Kirkland attorneys and legal assistants directing them as follows:  (a) not to discuss any aspects of Kirkland's representation of the Debtors with the Screened Kirkland Attorneys; (b) to conduct meetings, phone conferences, and other communications regarding Kirkland's representation of the Debtors in a manner that avoids contact with the Screened Kirkland Attorneys; (c) to take all measures necessary or appropriate to prevent access by the Screened Kirkland Attorneys to the files or other information related to Kirkland's representation of the Debtors; and (d) to avoid contact between the Screened Kirkland Attorneys and all Kirkland personnel working on the representation of the Debtors unless there is a clear understanding that there will be no discussion of any aspects of Kirkland's representation of the Debtors. Furthermore, Kirkland already has implemented procedures to block the Screened Kirkland Attorneys from accessing files and documents related to the Debtors that are stored in Kirkland's electronic document managing system.

## Affirmative Statement of Disinterestedness

58.     Based on the conflicts search conducted to date and described herein, to the best of my knowledge and insofar as I have been able to ascertain, (a) Kirkland is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and (b) Kirkland has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed herein.

*[Remainder of Page Intentionally Left Blank]*

23

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct to the best of my knowledge and belief.

Dated:  July 20, 2022                                        Respectfully submitted,

                                                            /s/ Joshua A. Sussberg
                                                            Joshua A. Sussberg
                                                            as President of Joshua A. Sussberg, P.C., as
                                                            Partner of Kirkland & Ellis LLP; and as Partner
                                                            of Kirkland & Ellis International LLP

## Schedule 1

The following lists contain the names of reviewed entities as described more fully in the *Declaration of Joshua A. Sussberg in Support of the Debtors' Application for the Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective as of July 5, 2022* (the "Sussberg Declaration").[1]  Where the names of the entities reviewed are incomplete or ambiguous, the scope of the search was intentionally broad and inclusive, and Kirkland & Ellis LLP and Kirkland & Ellis International LLP reviewed each entity in its records, as more fully described in the Sussberg Declaration, matching the incomplete or ambiguous name.

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Sussberg Declaration.

# SCHEDULE 1

### List of Schedules

| Schedule | Category |
| --- | --- |
| 1(a) | Current and Former Affiliates |
| 1(b) | Current and Former Directors and Officers |
| 1(c) | Significant Equityholder |
| 1(d) | Bankruptcy Professionals |
| 1(e) | Banks / Lenders / Administrative Agents |
| 1(f) | Contract Parties |
| 1(g) | Customers |
| 1(h) | Insurance |
| 1(i) | Landlords |
| 1(j) | Litigation |
| 1(k) | Ordinary Course Professionals |
| 1(l) | Potential M&A Transaction Counterparties |
| 1(m) | Taxing Authorities / Government / Regulatory Agencies |
| 1(n) | Top 50 Unsecured Creditors |
| 1(o) | U.S. Trustee Personnel, Judges, and Court contacts for the Southern District of New York |
| 1(p) | Utilities |
| 1(q) | Vendors |

# SCHEDULE 1(a)

## Current and Former Affiliates

Coinify Financial Services ApS
Coinify Global Solutions Inc.
Coinify Ltd.
Coinify Payments OU
Coinify Technologies ApS
HTC Trading Inc.
LGO SAS
Voyager Digital Brokerage Canada Ltd.
Voyager Digital Brokerage Ltd.
Voyager Digital Holdings Inc.
Voyager Digital LLC
Voyager Digital Ltd.
Voyager Digital NY LLC
Voyager Europe
Voyager European Holdings ApS
Voyager IP LLC
VYGR Holdings LLC
VYGR Management LLC

## SCHEDULE 1(b)

### Current and Former Directors and Officers

Ackart, Jennifer
Barrilleaux, Janice
Bateman, Lewis
Brooks, Brian
Brosgol, David
Costantino, Daniel
Dreuzy, Gaspard Aupepin de Lamothe
Egert, Mark
Ehrlich, Stephen
Elliott, Guy
Eytan, Philip
Frizzley, Jill
Gidwani, Rakesh
Hanshe, Gerard
Hugo, Victor
Jensen, Marshall
Keslassy, Jordana
Kramer, Pam
Kreiker, Serge
Ladhani, Akbar
Lavine, Shingo
Legg, Michael
Lightfoot, Jeffrey B.
Lilien, Jarrett
Pohl, Tim
Prithipaul, Ashwin
Psaropoulos, Evan
Ray, Matthew
Reynolds, Brandi
Stevens, Glenn
Toth, Krisztian
Vogel, Scott
Walmesley, Erin

# SCHEDULE 1(c)

## **Significant Equityholder**

Alameda Research Ventures LLC

# SCHEDULE 1(d)

## **Bankruptcy Professionals**

Berkeley Research Group LLC
Deloitte & Touche LLP
Fasken Martineau DuMoulin LLP
Grant Thornton LLP
Moelis & Co.
Quinn Emanuel Urquhart & Sullivan LLP
Stretto
Valuation Research Corp.

# SCHEDULE 1(e)

## **Banks / Lenders / Administrative Agents**

Alameda Research Ltd.
Alameda Ventures Ltd
Anchorage Digital Bank NA
Anchorage Lending CA LLC
Bank of Montreal
BitGo Prime LLC
BMO
Galaxy Digital LLC
Genesis Global Capital LLC
Metropolitan Commercial Bank
Signature Bank
Silvergate Bank
Tesseract Group Oy
Three Arrows Capital Ltd.

# SCHEDULE 1(f)

## Contract Parties

Amazon.com Inc.
Celsius Network Ltd.
Chainalysis Inc.
Copper Technologies (UK) Ltd.
Cumberland DRW LLC
Dallas Basketball Ltd.
Dinwiddie Corp., The
DV Chain LLC
FiCentive Inc.
Fireblocks Inc.
Fireblocks Ltd.
Gronk Endorsements LLC
JSCT LLC
Landon Cassill Inc.
Ledger Technologies Inc.
Tai Mo Shan Ltd.
Talos Trading Inc.
ThoughtWorks Inc.
Usio Inc.
Wintermute Trading Ltd.

# SCHEDULE 1(g)

## **Customers**

[CONFIDENTIAL]

# SCHEDULE 1(h)

## **Insurance**

CAC Specialty Co.
FirstBrook Cassie & Anderson Ltd.
Great Midwestern Insurance Co.
Hartford Fire Insurance Co.
Hartford Underwriters Insurance Co.
Lloyd's of London Syndicate
MJD3 Associates LLC
Relm Insurance Ltd.
XL Specialty Insurance Co.

# SCHEDULE 1(i)

## **Landlords**

Regus
WeWork Inc.

# SCHEDULE 1(j)

## Litigation

Alabama, State of, Securities Commission
Berk, Jordan
California, State of, Business, Consumer Services & Housing Agency, Department of Financial
    Protection & Innovation
Cassidy, Mark
Indiana, State of, Securities Division
Kentucky, Commonwealth of, Department of Financial Institutions
New Jersey, State of, Bureau of Securities
Oklahoma, State of, Department of Securities
South Carolina, State of, Securities Commissioner
Texas, State of, Securities Board
US Bank NA
Vermont, State of, Department of Financial Regulation
Washington, State of, Department of Financial Institutions, Securities Division

# SCHEDULE 1(k)

## **Ordinary Course Professionals**

Berger Singerman LLP
Conyers Dill & Pearman LLP
Day Pitney LLP
Frankfurt Kurnit Klein & Selz PC
Jackson Lewis PC
Jenner & Block LLP
Kramer Levin Naftalis & Frankel LLP
Lowenstein Sandler LLP
Mintz & Gold LLP
Paul Hastings LLP
Seyfarth Shaw LLP
Troutman Pepper Hamilton Sanders LLP
Walkers Corporate Ltd.

# SCHEDULE 1(l)

## Potential M&A Transaction Counterparties

[CONFIDENTIAL]

# SCHEDULE 1(m)

## **Taxing Authorities / Government / Regulatory Agencies**

Alabama, State of, Department of Revenue
Alaska, State of, Department of Revenue
Arizona, State of, Department of Revenue
Arkansas, State of, Department of Finance & Administration
California, State of, Franchise Tax Board
Connecticut, State of, Department of Revenue Services
Delaware, State of, Department of Revenue
Florida, State of, Department of Revenue
Georgia, State of, Department of Revenue
Idaho, State of, Tax Commission
Illinois, State of, Department of Revenue
Indiana, State of, Department of Revenue
Iowa, State of, Department of Revenue
Kansas, State of, Department of Revenue
Kentucky, Commonwealth of, Department of Revenue
Louisiana, State of, Department of Revenue
Maine, State of, Department of Revenue Services
Maryland, State of, Comptroller
Michigan, State of, Department of Treasury
Minnesota, State of, Department of Revenue
Mississippi, State of, Department of Revenue
Nebraska, State of, Department of Revenue
New Hampshire, State of, Department of Revenue Administration
New Jersey, State of, Division of Taxation
New Mexico, State of, Department of Tax & Revenue
North Carolina, State of, Department of Revenue
North Dakota, State of, Office of State Tax Commissioner
Oklahoma, State of, Tax Commission
Oregon, State of, Department of Revenue
Pennsylvania, Commonwealth of, Department of Revenue
Rhode Island, State of, Division of Taxation
South Carolina, State of, Department of Revenue
Tennessee, State of, Deparment of Revenue
Texas, State of, Comptroller of Public Accounts
Utah, State of, State Tax Commission
Virgina, Commonwealth of, Department of Taxation
Washington, D.C., Office of Tax & Revenue
West Virginia, State of, Tax Department
Wisconsin, State of, Department of Revenue

## SCHEDULE 1(n)

### Top 50 Unsecured Creditors

Alameda Research LLC
[CONFIDENTIAL]

# SCHEDULE 1(o)

## U.S. Trustee Personnel, Judges, and Court contacts for the Southern District of New York

Arbeit, Susan
Beckerman, Lisa G.
Bruh, Mark, Esq.
Chapman, Shelley C.
Cornell, Shara
Drain, Robert D.
Garrity, James L., Jr.
Glenn, Martin
Harrington, William K.
Higgins, Benjamin J.
Jones, David S.
Lane, Sean H.
Masumoto, Brian S.
Morris, Cecelia G.
Morrissey, Richard C.
Riffkin, Linda A.
Schwartz, Andrea B.
Schwartzberg, Paul K.
Scott, Shannon
Tiantian, Tara
Velez-Rivera, Andy
Wells, Annie
Wiles, Michael E.
Zipes, Greg M.

# SCHEDULE 1(p)

## **Utilities**

Phone.com Inc.
Verizon Wireless
WeWork Inc.

# SCHEDULE 1(q)

### Vendors

15Five Inc.
33 Irving Tenant LLC
A&V Sports Group LLC
Accretive Capital
Accura Advokatpartnerselskab
Accurate Staffing Solutions Corp.
Ackart, Jennifer C.
Actimize lnc.
Acxiom LLC
Ada Support Inc.
Adam Atlas, Attorneys at Law
AdColony Inc.
Adobe
Adperio Network LLC
Advokaadibüroo Cobalt OÜ
Aiven
aktiencheck.de AG
A-LIGN
Alps Consulting LLP
Already Design Co.
Alvarez & Marsal Canada Inc.
Amalgamated Suncoast Portfolio LLC
Amazon
Amazon Web Services
Amazon Web Services Inc.
American Airlines
American Arbitration Association Inc.
Amicaz Group LLC
Angry Pug Sportswear LLC
Aon Consulting Inc.
Apple
Apple Inc.
Apple Search Ads
Appsflyer
Arianna Jonae LLC
Arndt, Krista
Arrow Search Partners
Atlassian
Aura Sub LLC
Authentic8 Inc.
Baker & McKenzie LLP
Bank Khanty-Mansiysk

Barefoot LLC
Barkley, Matthew M.
Bateman Capital Inc.
BDA International Ltd.
Beekman Social LLC
Behmer & Blackford LLP
Belk, Chandler
Benabe, Alejandro
Benchmark Co. LLC, The
Berger Singerman LLP
BetterInvesting Inc.
Beutler Enterprises Inc.
Beyond Studios
Big Outdoor Holdings LLC
BitGo Inc.
Bitrise.io
Blackwired (US) Inc.
Blake Cassels & Graydon LLP
Block Crypto Inc., The
Blockchain Association
Blockdaemon Inc.
BlockWorks Advisors LLC
BlockWorks Group LLC
Bloomberg Finance LP
Botero-Uribe, Sergio
BPM LLP
Brent, Karen
BrightEdge Technologies Inc.
Brill Advisors LLC
British Airways
Broadridge Financial Solutions Inc.
Brooks, Brian P.
Brunson, Jalen
Brunson, Jalen M.
BTC Media Ltd.
BTIG LLC
Buddakan
Business Wire Inc.
Cabezas, Jamie
Campbells LLP
Canada Revenue Agency
Capone, Steven

Carbone
Carbone NYC
Cassill, Landon
Catamorphic Co.
CC API
CC Data
CCM Advisory LLC
CDS Clearing & Depository Services
CDW LLC
Certified Kernel Tech LLC
Chameleon Collective Consulting LLC
Chang Tsi & Co.
Chorba, Phillip J.
Chord Advisors LLC
Citigate Dewe Rogerson Ltd.
Cloud Posse LLC
Cloudflare Inc.
Cloudinary Ltd.
CNSX Markets Inc.
CNW Group Ltd.
Cockroach Labs Inc.
Coding Lobster
Coinbound Inc.
Colaprico, Danielle
ColorArt
Complex Sports & Entertainment LLC
Computershare Ltd.
Conbere, Anders
Concur Technologies Inc.
Consensus 2022
Constant Plan LLC, The
Conyers Dill & Pearman LLP
CorCom LLC
Corey Thomas Design
Corpay One Inc.
Cosmopolitan of Las Vegas, The
Costantino, Dan
Costantino, Daniel
Creative Circle LLC
Crypto Rating Council LLC, The
CXG Holdings Inc.
Cyber Job Central LLC
Cypress Group Staffing Inc.
CyZen Tech Co. Ltd.
Dajax LLC
Dallas Mavericks Inc.

Data.ai Inc.
Datadog Inc.
Daversa Partners Ltd.
David Bolton PC
Davis, Ashtyn
Day Pitney LLP
de Dreuzy, Gaspard
Dechert (Paris) LLP
Delaware, State of, Division of Revenue,
    Tax Agency
DeLeon, Zusette
Deloitte & Touche LLP
Delta Air Lines Inc.
Deshchenko, Anton
Devexperts Sofia Ltd.
Dezenhall Resources Ltd.
Diamond Equity Research LLC
Dianomi Inc.
Digital Commerce Bank
Digital Niche Agency
Digital257 Technologies Inc.
Dinwiddie Inc.
Dinwiddie, Spencer
Distinguished Search LLC
Distrust LLC
Docker Inc.
DocuSign Inc.
Donnelley Financial Solutions Canada Corp.
dotdigital Inc.
Dotmailer Inc.
DoubleStruck Designs
Dropbox Inc.
Duane Morris LLP
Duclair, Anthony
Elasticsearch Inc.
Elevate Brand Marketing Inc.
Ellenoff Grossman & Schole LLP
Endeavor Parent LLC
EQS Group AG
Eronin, Max
eSSENTIAL Accessibility Inc.
Esterhuizen, Eben
Exzac Inc.
Eytan, Philip
Fastly Inc.
Feissli, Stefan

2

Fidelifacts Metropolitan New York Inc.
Figma Inc.
Financial Services Information Sharing &
    Analysis Center
Find Your Happy LLC
Finney-Smith, Dorian
FirstBrook Cassie & Anderson Ltd.
Fivetran Inc.
Flint Inc.
Florida, State of, Department of Agriculture
    & Consumer Services
Fogie, Seth
Fort Capital Ontario Inc.
Fragomen Del Rey Bernsen & Loewy LLP
Frankfurt Kurnit Klein & Selz PC
Freshworks Inc.
Friends of Falcon Hockey Inc., The
Fundamental Research Corp.
Fusion of Ideas Inc.
Gilja, Neha
GitHub Inc.
Glass Lewis & Co. LLC
Glendale Securities Inc.
Glushon Sports Management
Good Causes Inc.
Goodbay Technologies Inc.
GoodHire
Google Ads Management Ltd.
Google Cloud
Google G Suite
Google LLC
Google Voice Inc.
Gorsuch, Michael
GRA Enterprises LLC
Grant Thornton LLP
Gravitational Inc.
Green, Derek
Green, Sheri
Greenhouse Software Inc.
Greifenkamp, Jonathan
Gronkowski, Chris
Gronkowski, Christopher
Gronkowski, Daniel
Gronkowski, Glenn
Gronkowski, Gordon
Gronkowski, Gordon, Jr.

Gronkowski, Rob
G-Suite Holdings Ltd.
Gyamfi, Andrew
HackerOne Inc.
Hamilton, Kristen
HappyFunCorp LLC
HardHead Marketing
Harris, Lindsey
Harrison, Tom
Hashtag Business LLC
Helman, David
Hill Dickinson LLP
Hireclout Inc.
Holt, Robert B.
Hotjar Ltd.
Hunt, Akeem
ICE Systems Inc.
Impact Tech Inc.
Independent Trading Group (ITG) Inc.
Indianapolis Motor Speedway LLC
Infinite Agency LLC
Infinite IP Corp.
Infinity Consulting Solutions Inc.
Interviewstreet Inc.
Intralinks SA
Intuit Inc.
IPQualityScore
IQTalent Partners Inc.
Ironclad Inc.
Iterable Inc.
JA Visual Solutions LLC
Jackson Lewis PC
Jackson, Davin A.
Jackson, Sean
JDI Studio LLC
Jensen Hughes Inc.
JetBlue Airways Corp.
JetBrains s.r.o.
JFrog Ltd.
Jivaro Professional Headhunters LLC
Johnson Rivers Lyons LLC
Johnson, Estelle
JP Galda & Co.
Jumio Corp.
Karashik, Adam
Kate Leavell Cos. LLC

3

Kaulig Racing Inc.
KCSA Strategic Communications
Kelber, Maximilian
Ketchum Inc.
Kforce Inc.
KLDiscovery Ontrack LLC
Kleber, Maximilian
Klingenberg, Meghan
Knapp, Marla K.
KnowBe4 Inc.
Korn Ferry (US)
Koto Studio LLC
Kramer Levin Naftalis & Frankel LLP
Kramer, Pamela
Kratka, Mary
Kreiker, Serge
La Cantera Resort & Spa
Lagiglia, Dominique
Lakeshore Securities Inc.
Landgraf, Jennifer
Las Vegas Motor Speedway
LastPass
Laurel Hill Advisory Group LLC
LD Micro Inc.
Learfield Communications LLC
Lee, Janice
Levin Group Ltd.
Lin, Monica
LogMeIn
LogMeIn USA Inc.
Lord, Jessica
Loyalist LLC
Luk, Brian
Lussi, Tyler
Lytham Partners LLC
MaestroQA Inc.
Major Lindsey & Africa LLC
Malocca, Greg
Malwarebytes Inc.
Marcum LLP
Mark Fabiani LLC
Market One Media Group Inc.
Market Rebellion LLC
Marrelli Support Services Inc.
Maxx Management LLC
McCarter & English LLP

McCarthy Lebit Crystal & Liffman Co. LPA
McCrary, Chelsea
McCurdy, Tess
McDonald, Jess
McDonald, Jessica
Mediant Communications Inc.
Medium Rare Live LLC
Meltwater News US Inc.
Merlin Media LLC
MessageBank LLC
Meta Platforms Inc.
Microsoft Corp.
Mintz & Gold LLP
Miro SA
Mitchell, Jonahthan
Mixpanel Inc.
Mobile Action Inc.
Mohseni, Cyrus
monday.com Ltd.
Money Services Business Association Inc.,
    The
Mortimer, Kelsey
Motivate Design LLC
Motive Interactive Inc.
Mountain Shadows Resort
MPJ Advisors LLC
MSG Arena LLC
NAI Interactive Ltd.
Nasdaq Corporate Solutions LLC
National Women's Soccer League LLC
NBCN Clearing Inc.
Netki Inc.
Network Redux LLC
New York, State of, Department of Taxation
    & Finance
Next for Me Media Inc.
NMLS
Noble Capital Markets
Noble Capital Markets Inc.
Nominis Advisory Ltd.
Ntilikina, Frank
NuMedia LLC
Octive
Ogon LLC
Olivia Faria LLC
Online Business Systems Inc.

OnlineNotary.net
Ontario Securities Commission
OpsGenie
OpsGenie Inc.
Optimal Workshop
Oracle America Inc.
Organic Inc.
OST Labz Pvt. Ltd.
OTC Markets Group Inc.
Owen Bird Law Corp.
Pada Ventures Inc.
Pager Inc.
Pagerduty Inc.
Penn Recruiting LLC
Perkins Coie LLP
Pickwick Capital Partners LLC
Piper Cos. LLC
PitchBook Data Inc.
Plaid Inc.
PN Agency
PopNoggins LLC
PortSwigger Ltd.
Postman Basic Monthly
Powell, Dwight
PR Newswire Inc.
Premier Partnerships Inc.
Pressley, Toni
Printed Threads
Proconsul Capital Ltd.
Project 1972 Inc.
Pro-Sport Media Management LLC
Psaropoulos, Evan
PSAV Inc.
Psyhnov, Timofy
Publicist Inc.
QLUE Forensic Systems Inc.
Quality Wolves
Quantstamp Inc.
Quantum Talent Group, The
QWIL Inc.
Ramnarine, Chandkumar R.
Rashad A. Jennings Inc.
Ratzlaff, Cordell
Reciprocity Inc.
Regus
Regus Management Group LLC

Reisz, Carey
Republic Crypto LLC
Residence Inn by Marriott Dayton
    Beavercreek
Ringside Canada Inc.
Ripple, Peter I.
Roadmunk
Rocketship HQ LLC
Rockwell, Fred
Rodriguez, Kevin
Ronick, David
S&S Activewear LLC
Sabetmoghaddam, Paniz
Santoshi Enterprise Ltd.
Santucci, Amanda
Schiff Hardin LLP
Scott, John M.
Seeking Alpha Inc.
Segment.IO Inc.
Seprio LLC
Seyfarth Shaw LLP
Shei, Christopher
Sheraton Grand Nashville Downtown Hotel
Sidoti & Co. LLC
Sift Science Inc.
Silver Management Group Inc.
Singular Research LLC
Slack Technologies LLC
Sloane & Co. LLC
SLS South Beach
Smarsh Inc.
Smart City Networks LP
Snapchat
Snowflake Inc.
Snyk Inc.
Soar, Hannah
Socure Inc.
Soona Co.
Sovran, William O.
Spacelift Inc.
Spatialize
Sports Girls, The
SquareWorks Consulting LLC
Staab, Sam
Staab, Samantha
Standout Tech Solutions LLC

5

Stephenson, Charles
Sterling Trading Tech
STK International Inc.
Stockhouse Publishing Ltd.
Stockjock.com LP
StockVest Inc.
Stone, Isaiah
Swag.com Inc.
Sweet, Noah C.
Tableau Software Inc.
Tam, Miko
Tapjoy Inc.
Taylor & Gray LLC
Techracers Pvt. Ltd.
Teneo Strategy LLC
Tennessee, State of, Department of Revenue
Terminal Inc.
Thompson House Group
TradingView Inc.
Travelator Inc.
Travelbank Ltd.
Travelers Cos. Inc., The
Troutman Pepper Hamilton Sanders LLP
TSX Inc.
Tuple Technologies Pte. Ltd.
Turnbull, James
Turner, Trea
Turner, Trea V.
Twilio Inc.
Twitter Inc.
Typeform SL
Uber Technologies Inc.
Unique Prints LLC
United Airlines Holdings Inc.
United Parcel Service Inc.
Unity Technologies Corp.
Upside Business Travel
UserTesting Inc.
Valdes-Scantling, Marquez
Valuation Research Corp.
Venture Group Capital LLC
Verizon Wireless Services LLC
Vijay, Kumar B.
Vincent Manufacturing Inc.
Vo, Donna
Vulcanize Inc.

W Dallas - Victory
W New York - Union Square
Walkers Corporate Ltd.
Walkers Ireland LLP
Wall Street Blockchain Alliance
Wall Street Dead aHead Networking LLC
Wandering Bear Inc.
Watt, Ally
Watt, Ally M.
Weisman Tech Law LLC
Westphal, Christen
WeWork Inc.
Whistler Search Partners LLC
White, Jarobi
WilliamsMarston LLC
Willis Towers Watson PLC
Winjit Technologies Pvt. Ltd.
Winslow, The
Wrike Inc.
WRZ Chartered Accountants
Yanpolsky, Andre
Yuen, Eva
Zapier Inc.
Zendesk Inc.
ZeroFox Inc.
Zoom Video Communications Inc.

## SCHEDULE 2

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| 1600 Amphitheatre Pkwy<br>Google Ads Management Ltd.<br>Google Cloud<br>Google G Suite<br>Google LLC<br>Google Voice Inc. | Fitbit Inc.<br>Intersection Holdings, LLC<br>Sidewalk Infrastructure Partners<br>Waymo LLC | Closed<br>Closed<br>Closed<br>Current |
| 33 Irving Tenant LLC | CBRE Caledon Capital Management<br>CBRE Global Investors, Inc.<br>CBRE, Inc. | Closed<br>Closed<br>Current |
| Actimize lnc. | NICE Ltd. | Current |
| Acxiom LLC | Philippe Krakowsky | Former |
| A-LIGN | A-LIGN Holdco, LLC | Closed |
| Alvarez & Marsal Canada Inc. | A&M Capital Advisors Europe, LLP | Current |
| | A&M Capital Advisors GP, LLC | Current |
| | A&M Capital Advisors LLC | Current |
| | A&M Capital Advisors, LP | Current |
| | A&M Capital Europe, SCSp | Current |
| | A&M Capital Europe-GP Associates, LP | Current |
| | A&M Capital Opportunities Fund, LP | Current |
| | A&M Capital Opportunities-GP Associates, LP | Current |
| | A&M Capital Partners, LLC | Current |
| | A&M Capital-GP Associates, LP | Current |
| | A&M Capital-GP Holdings, LP | Current |
| | Alvarez & Marsal AMCO Partners Fund, LP | Current |
| | Alvarez & Marsal Capital LLC | Current |
| | Alvarez & Marsal Capital, LP | Current |
| | Alvarez & Marsal Europe LLP | Current |
| | Alvarez & Marsal Holdings LLC | Current |
| | Alvarez & Marsal Inc. | Current |
| | Alvarez & Marsal Partners Buyout Fund, LP | Current |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | Alvarez & Marsal Partners Europe Buyout Fund, LP | Current |
| | Alvarez & Marsal Partners Europe Fund, LP | Current |
| | Alvarez & Marsal Partners Fund, LP | Current |
| | Alvarez & Marsal Partners Opportunities Fund, LP | Current |
| | Wing Sze Tiffany Wong, Edward Simon Middleton and Wesley Arthur Edwards | Current |
| Amazon Amazon Web Services Amazon Web Services Inc. Amazon.com Inc. | Zoox Labs, Inc. | Current |
| American Airlines | Material Services Company, Inc. | Closed |
| Aon Consulting Inc. | Aon Affinity Administradora de Beneficios Ltda. | Current |
| | Aon Financial Services Group, Inc. | Current |
| | Aon Holdings Corretores de Seguros Ltda. | Current |
| | Aon IP Advantage Fund LP | Current |
| | Aon Risk Services Central, Inc. | Current |
| | Aon Risk Services Cos. Inc. | Current |
| | Aon Risk Services Northeast Inc. | Current |
| | Aon Risk Services Southwest, Inc. | Current |
| | Aon Risk Solutions | Current |
| | Keith R. Moore | Current |
| | UADBB Aon Baltic (Latvia Branch) | Current |
| Apple Apple Inc. Apple Search Ads | Apple Energy LLC Apple Inc. Kazuha Noyes | Current Current Current |
| Arizona, State of, Department of Revenue | Arizona Department of Child Safety | Closed |
| Atlassian OpsGenie OpsGenie Inc. | Atlassian Corporation Plc Atlassian, Inc. | Closed Closed |
| Bank of Montreal BMO | Bank of Montreal BMO Capital Markets | Closed Closed |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | BMO Capital Markets Corp. | Closed |
| | BMO Harris Bank NA | Closed |
| | Bmo Nesbitt Burns Inc. | Closed |
| Big Outdoor Holdings LLC | SunTx Capital Partners | Current |
| Blockchain Association | Blockchain Association | Closed |
| BTIG LLC | BTIG, LLC | Current |
| Business Wire Inc. | Berkshire Hathaway Energy Co. | Closed |
| | BHE Renewables, LLC | Current |
| | BNSF Railway | Current |
| CAC Specialty Co. | Cobbs Allen Capital, LLC | Closed |
| | Michael Rice | Closed |
| Canada Revenue Agency | Canada Pension Plan Investment Board | Current |
| | CPP Investment Board | Current |
| | CPPIB Asia Inc. | Current |
| CDS Clearing & Depository Services | TMX Holdings, LLLP | Current |
| TSX Inc. | TMX Intermediate Holdings, Inc. | Current |
| | TriMedx Holdings, LLC | Current |
| CDW LLC | CDW Corporation | Current |
| | CDW LLC | Current |
| Celsius Network Ltd. | Celsius (AUS) Pty. Ltd. | Current |
| | Celsius EU UAB | Current |
| | Celsius KeyFi LLC | Current |
| | Celsius Lending LLC | Current |
| | Celsius Management Corp. | Current |
| | Celsius Mining IL Ltd. | Current |
| | Celsius Mining LLC | Current |
| | Celsius Network (Gibraitar) Ltd. | Current |
| | Celsius Network Europe | Current |
| | Celsius Network IL Ltd. | Current |
| | Celsius Network IL Ltd. - Bulgaria Branch | Current |
| | Celsius Network Inc. | Current |
| | Celsius Network Leading LLC | Current |
| | Celsius Network Limited | Current |
| | Celsius Network Ltd. (UK) | Current |
| | Celsius Operations LLC | Current |

3

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | Celsius Services CY Ltd. | Current |
| | Celsius US Holding LLC | Current |
| | Celsius US LLC | Current |
| | Celsius USA LLC | Current |
| Chord Advisors LLC WilliamsMarston LLC | WilliamsMarston LLC | Current |
| Citigate Dewe Rogerson Ltd. S&S Activewear LLC | Andrew Campelli | Current |
| | Clayton, Dubilier & Rice Fund X LP | Closed |
| | Clayton, Dubilier & Rice, LLC | Current |
| | David A. Novak | Current |
| | John Krenicki | Current |
| | Kevin Smith | Current |
| | Nathan Sleeper | Current |
| | Richard Schnall | Current |
| | Roberto Quarta | Current |
| | Russell Fradin | Current |
| CNW Group Ltd. | Centerline Capital Management, LLC | Current |
| | Cision, Inc. | Current |
| | Platinum Equity, LLC | Current |
| ColorArt | Cenveo, Inc. | Closed |
| Concur Technologies Inc. | SAP SE | Closed |
| Dallas Basketball Ltd. | Dallas Mavericks Inc. | Current |
| Deloitte & Touche LLP | Deloitte Consulting LLP | Current |
| | Deloitte LLP | Current |
| | Deloitte Tax LLP | Current |
| | Deloitte USA LLP | Current |
| Delta Air Lines Inc. | Delta Air Lines, Inc. | Current |
| Galaxy Galaxy Digital LLC | Galaxy Digital Holdings Ltd. | Closed |
| Georgia, State of, Department of Revenue | State of Georgia | Current |
| Goodbay Technologies Inc. | 24-7 Intouch Holdings, Inc. | Current |
| | Ontario Teachers Pension Plan (Asia) Limited | Closed |
| | Ontario Teachers' Pension Plan Board | Current |
| Grant Thornton LLP | Grant Thornton International Ltd. | Closed |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| Illinois, State of, Department of Revenue | Illinois Executive Ethics Commission | Current |
| | Illinois Torture Inquiry and Relief Commission | Current |
| | Office of the Governor, State of Illinois | Closed |
| Intuit Inc. | Credit Karma Inc. | Current |
| Jenner & Block LLP | Jenner & Block LLP | Closed |
| Jensen Hughes Inc. | Alexander Earls | Former |
| | Gryphon Investors II, LLC | Closed |
| | Gryphon Investors Inc. | Current |
| | Jensen Hughes Holdings Corporation | Current |
| | Keith H. Stimson | Current |
| JSCT LLC | JSPE Ltd. | Current |
| La Cantera Resort & Spa | Pyramid Hotel Group | Current |
| | Samuel L. Katz | Current |
| | TZP Group LLC | Current |
| | TZP Growth Partners I, L.P. | Closed |
| | TZP Small Cap Partners I, L.P. | Closed |
| | TZP Strategies Acquisition Corp. | Current |
| Las Vegas Motor Speedway | Sonic Financial Corporation | Closed |
| | Speedway Motorsports, LLC | Closed |
| Lloyd's of London Syndicate | Lloyd's America, Inc. | Closed |
| LogMeIn
LogMeIn USA Inc. | Francisco Partners GP Splitter, LLC | Current |
| | Francisco Partners II (Cayman) L.P. | Current |
| | Francisco Partners II, LP | Current |
| | Francisco Partners III (Cayman), L.P. | Current |
| | Francisco Partners III (Domestic AIV) Feeder, LLC | Current |
| | Francisco Partners III (Domestic AIV), L.P. | Current |
| | Francisco Partners III LP | Current |
| | Francisco Partners IV, L.P. | Current |
| | Francisco Partners IV-A, L.P. | Current |
| | Francisco Partners Management, L.P. | Current |
| | Francisco Partners Parallel Fund II L.P. | Current |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | Francisco Partners Parallel Fund III (Cayman), L.P. | Current |
| | Francisco Partners Parallel Fund III, L.P. | Current |
| | LogMeIn, Inc. | Current |
| LogMeIn<br>LogMeIn USA Inc. | Elliott Management Corporation | Closed |
| | LogMeIn, Inc. | Current |
| | Mark Cicirelli | Current |
| | Prime Natural Resources, Inc. | Closed |
| | Prosperity Asset Management LLC | Current |
| Meltwater News US Inc. | Meltwater News US Inc. | Current |
| Meta Platforms Inc. | Meta Platforms, Inc. | Current |
| Minnesota, State of, Department of Revenue | Minnesota Department of Human Rights | Current |
| | Minnesota, State of, Office of the Attorney General | Current |
| Moelis & Co. | Atlas Crest Investment Corp. | Current |
| | Atlas Crest Investment Corp. III | Closed |
| | Atlas Crest Investment Corp. IV | Closed |
| | Atlas Crest Investment Corp. V | Closed |
| | MA Investment Management Pty Ltd. | Current |
| | Moelis & Co. | Current |
| | Moelis & Company | Current |
| NBCN Clearing Inc. | National Bank of Canada | Closed |
| New York, State of, Department of Taxation & Finance | Empire State Development | Closed |
| | NYC Department of Small Business Services | Closed |
| | State of New York | Closed |
| Oklahoma, State of, Department of Securities<br><br>Oklahoma, State of, Tax Commission | Oklahoma Tax Commission | Closed |
| Oracle America Inc. | Oracle America Inc. | Closed |
| | Oracle Corporation | Current |
| | Oracle International Corporation | Closed |
| | Oracle USA, Inc. | Closed |

6

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| Pennsylvania, Commonwealth of, Department of Revenue | Office of the General Counsel of Pennsylvania | Current |
| | Office of the Governor of Pennsylvania | Current |
| | Office of the Secretary of State of Pennsylvania | Current |
| | Pennsylvania Higher Education Assistance Agency | Current |
| | Pennsylvania, Commonwealth of, Office of the Secretary | Closed |
| PSAV Inc. | Audio Visual Services Group, Inc. | Closed |
| | BCP (Singapore) VI Cayman Acquisition Co. Ltd. | Closed |
| | BCP VIII, L.P. | Closed |
| | Bilal Khan | Current |
| | Blackstone Advisors India Pvt. Ltd. | Current |
| | Blackstone Alternative Asset Management LP | Closed |
| | Blackstone Alternative Credit Advisors LP | Current |
| | Blackstone Alternative Solutions LLC | Closed |
| | Blackstone Asia | Current |
| | Blackstone CQP Holdco LP | Closed |
| | Blackstone Energy Partners | Closed |
| | Blackstone Family Real Estate Partnership (Offshore) VIISMD L.P. | Current |
| | Blackstone Family Real Estate Partnership Europe IV-SMD L.P. | Current |
| | Blackstone Group International Partners LLP, The | Closed |
| | Blackstone Growth LP | Current |
| | Blackstone Inc. | Current |
| | Blackstone Infrastructure Partners LP | Current |
| | Blackstone ISG-I Advisors LLC | Closed |
| | Blackstone ISG-II Advisors LLC | Closed |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | Blackstone Life Sciences Advisors LLC | Former |
| | Blackstone Management Partners LLC | Current |
| | Blackstone Mortgage Trust Inc. | Closed |
| | Blackstone Property Partners Europe Holdings SARL | Current |
| | Blackstone Property Partners LP | Closed |
| | Blackstone Real Estate | Closed |
| | Blackstone Real Estate Advisors | Closed |
| | Blackstone Real Estate Advisors LP | Current |
| | Blackstone Real Estate Holdings (Offshore) VII-NQ L.P. | Current |
| | Blackstone Real Estate Holdings (Offshore) Vll-NQ - ESC L.P. | Current |
| | Blackstone Real Estate Holdings Europe IV-NQ ESC L.P. | Current |
| | Blackstone Real Estate Investment Trust | Current |
| | Blackstone Real Estate Partners | Current |
| | Blackstone Real Estate Partners (Offshore) Vll.F-NQ L.P. | Current |
| | Blackstone Real Estate Partners (Offshore) Vll.TE.1-8-NQ L.P. | Current |
| | Blackstone Real Estate Partners (Offshore) Vll-NQ L.P. | Current |
| | Blackstone Real Estate Partners Europe IV-NQ L.P. | Current |
| | Blackstone Real Estate Partners Limited | Closed |
| | Blackstone Real Estate Special Situations Advisors LLC | Closed |
| | Blackstone Singapore Pte Ltd. | Current |
| | Blackstone Strategic Capital Holdings LP | Current |
| | Blackstone Strategic Opportunity Fund | Current |
| | Blackstone Strategic Partners | Former |
| | Blackstone Tactical Opportunities | Closed |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | Blackstone Tactical Opportunities Advisors LLC | Current |
| | Blackstone Tactical Opportunities Fund LP | Current |
| | BPP Parker Towers Property Owner LLC | Closed |
| | BPP ST Owner LLC | Current |
| | BRE Atlas Property Owner LLC | Current |
| | BRE Newton Hotels Property Owner LLC | Current |
| | BRE Polygon Property Owner LLC | Current |
| | BRE SH Brisbane Owner LLC | Current |
| | BRE SSP Property Owner LLC | Current |
| | BRE SSP Thousand Oaks LLC | Current |
| | BX CQP Target Holdco LLC | Current |
| | Clarus Ventures LLC | Former |
| | David I. Foley | Current |
| | GSO Capital Partners | Closed |
| | GSO Capital Partners International LLP | Closed |
| | GSO Capital Partners LP | Closed |
| | John-Paul Munfa | Former |
| | Kush Patel | Current |
| | Prakash A. Melwani | Current |
| | Strategic Partners Fund Solutions | Current |
| | The Blackstone Group International Partners LLP | Current |
| | Vikram Suresh | Former |
| QWIL Inc. | John D. Cochran | Current |
| | Lovell Minnick Partners LLC | Current |
| | Robert M. Belke | Current |
| | Spencer P. Hoffman | Current |
| | Steven C. Pierson | Current |
| Regus | IWG plc | Current |
| Regus Management Group LLC | RGN-Group Holdings, LLC and certain of its affiliates | Current |
| SLS South Beach | CIM Global LLC | Current |
| Smarsh Inc. | K1 Investment Management, LLC | Current |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | Smarsh, Inc. | Current |
| Stretto | Eagle Point Credit Management LLC | Current |
| | Stone Point Capital LLC | Current |
| | Stretto | Closed |
| Teneo Strategy LLC | Christopher J. Baldwin | Current |
| | CVC Advisers Company (Luxembourg) S.à r.l. | Current |
| | CVC Advisers Limited | Closed |
| | CVC Asia Pacific Limited | Current |
| | CVC Credit Partners, LLC | Current |
| | CVC European Equity V Limited | Current |
| | Teneo Financial Advisory Limited | Current |
| ThoughtWorks Inc. | Apax Digital LP | Current |
| | Apax Europe V, L.P. | Current |
| | Apax Europe VI LP | Current |
| | Apax Europe VII LP | Current |
| | APAX Excelsior VI, L.P. | Current |
| | APAX Excelsior VI-A C.V. | Current |
| | APAX Excelsior VI-B C.V. | Current |
| | Apax Foundation | Closed |
| | Apax IX EUR | Current |
| | Apax IX USD | Current |
| | Apax Partners Europe Managers Ltd. | Closed |
| | Apax Partners LLP | Current |
| | Apax Partners SAS | Closed |
| | Apax VIII EUR | Current |
| | Apax VIII USD | Current |
| | Thoughtworks Holding Inc. | Current |
| | ThoughtWorks Inc. | Closed |
| Travelator Inc. | U.S. Bank NA | Closed |
| US Bank NA | US Bancorp | Closed |
| Uber Technologies Inc. | Uber Technologies, Inc. | Closed |
| United Airlines Holdings Inc. | United AirLines, Inc. | Current |
| Verizon Wireless Verizon Wireless Services LLC | Verizon Communications Inc. | Current |
| Washington, D.C., Office of Tax & Revenue | DC Superior Court Domestic Relations Panel | Closed |
| WeWork Inc. | Andrew Zloto | Former |

10

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | Bingbai Hou | Former |
| | Fortress Credit Corporation | Current |
| | Fortress Investment Group | Current |
| | SB Group US, Inc. | Current |
| | SB Investment Advisers (UK) Limited | Current |
| | SB Investment Advisers (US) Inc. | Current |
| | SBLA Advisers Corp. | Current |
| | SoftBank Group Corp. | Closed |
| | SoftBank Vision Fund II-2 LP | Current |
| | SoftBank Vision Fund LP | Closed |
| | Son Assets Management LLC | Current |
| | SVF 2 | Current |
| | SVF Holdco (UK) Ltd. | Closed |
| | WeWork Companies LLC | Current |
| | WeWork Property Investors LLC | Closed |
| Willis Towers Watson plc | Willis Towers Watson plc | Current |
| Winjit Technologies Pvt. Ltd. | Schneider Electric Industries SAS | Current |
| XL Specialty Insurance Co. | AXA Real Estate Investment Managers UK Ltd. | Current |
| | AXA REIM SGP | Current |
| | Maestro Health | Current |
| | XL Global Services, Inc. | Closed |
| Confidential | Confidential | Confidential |
| Confidential | Confidential | Confidential |
| Confidential | Confidential | Confidential |
| Confidential | Confidential | Confidential |
| Confidential | Confidential | Confidential |
| Confidential | Confidential | Confidential |
| Confidential | Confidential | Confidential |
| Confidential | Confidential | Confidential |
| Confidential | Confidential | Confidential |

# **EXHIBIT C**

**Ehrlich Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF**
**STEPHEN EHRLICH IN SUPPORT OF THE DEBTORS'**
**APPLICATION FOR THE ENTRY OF AN ORDER AUTHORIZING THE**
**RETENTION AND EMPLOYMENT OF KIRKLAND & ELLIS LLP AND**
**KIRKLAND & ELLIS INTERNATIONAL LLP AS ATTORNEYS FOR THE**
**DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF JULY 5, 2022**

I, Stephen Ehrlich, Chief Executive Officer of Voyager Digital Holdings, Inc. being duly sworn, state the following under penalty of perjury:

1.    I am the Chief Executive Officer of Voyager Digital Holdings, Inc. located at 33 Irving Place, Suite 3060, New York, NY 10003.

2.    I submit this declaration (this "Declaration") in support of the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP as Attorneys for the Debtors and Debtors in Possession Effective as of July 5, 2022* (the "Application").[2]  Except as otherwise noted, I have personal knowledge of the matters set forth herein.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

**The Debtors' Selection of Counsel**

3.      The Debtors recognize that a comprehensive review process is necessary when selecting and managing chapter 11 counsel to ensure that bankruptcy professionals are subject to the same client-driven market forces, scrutiny, and accountability as professionals in non-bankruptcy engagements.

4.      To that end, the review process utilized by the Debtors here assessed potential counsel based on their expertise in the relevant legal issues and in similar proceedings.  Further, the Debtors considered the familiarity, if any, such counsel would have with the Debtors and their businesses.

5.      Ultimately, the Debtors retained Kirkland because of its extensive experience in corporate reorganizations, both out-of-court and under chapter 11 of the Bankruptcy Code.  More specifically, Kirkland is familiar with the Debtors' business operations and many of the potential legal issues that may arise in the context of these chapter 11 cases.  I believe that Kirkland is both well qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

**Rate Structure**

6.      In my capacity as Chief Executive Officer, I am responsible for supervising outside counsel retained by the Debtors in the ordinary course of business.  Kirkland has informed the Debtors that its rates for bankruptcy representations are comparable to the rates Kirkland charges for non-bankruptcy representations.  As discussed below, I am also responsible for reviewing the statements regularly submitted by Kirkland, and can confirm that the rates Kirkland charged the Debtors in the prepetition period are the same as the rates Kirkland will charge the Debtors in the postpetition period.

**<u>Cost Supervision</u>**

7.     The Debtors have approved the prospective budget and staffing plan for the period from July 5, 2022 to November 15, 2022, recognizing that in the course of a large chapter 11 case like these chapter 11 cases, it is possible that there may be a number of unforeseen fees and expenses that will need to be addressed by the Debtors and Kirkland.  The Debtors further recognize that it is their responsibility to monitor closely the billing practices of their counsel to ensure the fees and expenses paid by the estate remain consistent with the Debtors' expectations and the exigencies of the chapter 11 cases.  The Debtors will continue to review the statements that Kirkland regularly submits, and, together with Kirkland, amend the budget and staffing plans periodically, as the case develops.

8.     As they did prepetition, the Debtors will continue to bring discipline, predictability, client involvement, and accountability to the counsel fees and expenses reimbursement process. While every chapter 11 case is unique, these budgets will provide guidance on the periods of time involved the level of the attorneys and professionals that will work on various matters, and projections of average hourly rates for the attorneys and professionals for various matters.

[*Remainder of Page Intentionally Left Blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  July 20, 2022                         Respectfully submitted,

*/s/ Stephen Ehrlich*
Name: Stephen Ehrlich
Title:  Chief Executive Officer