**Hearing Date:  August 4, 2022, at 11:00 a.m. (prevailing Eastern Time)**
**Objection Deadline:  July 28, 2022, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:       (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF HEARING OF APPLICATION OF DEBTORS**
**AND DEBTORS IN POSSESSION FOR ENTRY OF ORDER**
**AUTHORIZING THE EMPLOYMENT AND RETENTION OF**
**MOELIS & COMPANY LLC AS INVESTMENT BANKER, CAPITAL MARKETS**
**ADVISOR, AND FINANCIAL ADVISOR EFFECTIVE AS OF THE PETITION DATE**

**PLEASE TAKE NOTICE** that a hearing on the *Application of Debtors and Debtors in Possession for Entry of Order Authorizing the Employment and Retention of Moelis & Company LLC as Investment Banker, Capital Markets Advisor, and Financial Advisor Effective as of the Petition Date* (the "Application") will be held on **August 4, 2022, at 11:00 a.m.**, prevailing **Eastern Time** (the "Hearing").  In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted telephonically.  Any parties wishing to participate must do so by making arrangements through CourtSolutions by visiting https://www.court-solutions.com.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Application shall:  (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served so as to be actually received by **July 28, 2022, at 4:00 p.m., prevailing Eastern Time**, by (i) the entities on the Master Service List available on the case website of the above-captioned debtors and debtors in possession (the "Debtors")  at  https://cases.stretto.com/Voyager  and  (ii) any  person  or  entity  with  a particularized interest in the subject matter of the Application.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing.  Failure to file a timely objection may result in entry of a final order granting the Application as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Application and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/Voyager.  You may also obtain copies of the Application and other pleadings  filed  in  these  chapter  11  cases  by  visiting  the  Court's  website  at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank]*

Dated:  July 20, 2022

New York, New York

*Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**

**KIRKLAND & ELLIS INTERNATIONAL LLP**

Joshua A. Sussberg, P.C.

Christopher Marcus, P.C.

Christine A. Okike, P.C.

Allyson B. Smith (admitted *pro hac vice*)

601 Lexington Avenue

New York, New York 10022

Telephone:   (212) 446-4800

Facsimile:   (212) 446-4900

Email:   jsussberg@kirkland.com

cmarcus@kirkland.com

christine.okike@kirkland.com

allyson.smith@kirkland.com

*Proposed Counsel to the Debtors and Debtors in Possession*

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**APPLICATION OF DEBTORS**
**AND DEBTORS IN POSSESSION FOR ENTRY OF AN**
**ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF**
**MOELIS & COMPANY LLC AS INVESTMENT BANKER, CAPITAL MARKETS**
**ADVISOR, AND FINANCIAL ADVISOR EFFECTIVE AS OF THE PETITION DATE**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>")

respectfully state as follows in support of this application (this "<u>Application</u>"):

<u>**Relief Requested**</u>

1.      The Debtors seek entry of an order attached hereto as **<u>Exhibit B</u>** (the "<u>Order</u>"):

(a) authorizing the employment and retention of Moelis & Company LLC ("<u>Moelis</u>") to serve as

the Debtors' investment banker, capital markets advisor, and financial advisor effective as of the

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

Petition Date in accordance with the terms and conditions set forth in that certain engagement letter between Moelis, the Debtors, and certain of the Debtors' affiliates, dated as of June 20, 2022 (the "Engagement Letter"), a copy of which is attached as **Exhibit 1** to the Order, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"); (b) approving the provisions of the Engagement Letter, including the compensation arrangements and indemnification, exculpation, contribution, and reimbursement provisions set forth therein; (c) modifying certain timekeeping requirements of rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, dated January 29, 2013 (General Order M-447) (the "Amended Guidelines"), the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330*, effective January 30, 1996 (the "U.S. Trustee Guidelines") of the United States Trustee for Region 2, and any other applicable procedures and orders of the Court (as defined herein) in connection with Moelis' engagement; and (d) granting such other relief as is just and proper.  In support of this Application, the Debtors submit the declaration of Jared Dermont (the "Dermont Declaration"), a copy of which is attached hereto as **Exhibit A** and incorporated herein by reference.  In further support of this Application, the Debtors, by and through their undersigned proposed counsel, respectfully represent:

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012.  The Debtors confirm their consent to the entry of

2

a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.        Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.        The bases for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1.

## **Background**

5.        On July 5, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Stephen Ehrlich, Chief Executive Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 15] (the "First Day Declaration"), incorporated by reference herein.[2]

6.        The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 18].  On July 19, 2022 the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 102] (the "Committee").  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

---

[2]    Capitalized terms used and not defined herein shall have the meanings ascribed to such terms in the First Day Declaration or Engagement Letter, as applicable.

### Moelis' Qualifications

7.      Moelis is an investment banking firm with its principal office located at 399 Park Avenue, 5th Floor, New York, New York 10022.  Moelis is a registered broker-dealer with the United States Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority.  Moelis was founded in 2007 and is a wholly owned subsidiary of Moelis & Company Group LP.  Moelis & Company Group LP, together with its subsidiaries, has approximately 1,000 employees and geographic locations in North America, South America, Europe, the Middle East, and Asia.  Moelis & Company Group LP is a subsidiary of Moelis & Company, a public company listed on the New York Stock Exchange.

8.      Moelis provides a broad range of financial advisory and investment banking services to its clients, including:  (a) general corporate finance; (b) mergers, acquisitions, and divestitures; (c) corporate restructurings; (d) special committee assignments; and (e) capital raising.  Moelis and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 cases.  Moelis' business reorganization professionals have served as financial advisors, capital markets advisors, and/or investment bankers in numerous cases, including: *In re CBL & Assocs. Props., Inc.*, No. 20-35226 (DRJ) (Bankr. S.D. Tex. Aug. 11, 2021); *In re Knotel, Inc.*, No. 21-10146 (MFW) (Bankr. D. Del. June 29, 2021); *In re Energy Alloys Holdings, LLC*, No. 20-12088 (MFW) (Bankr. D. Del. June 28, 2021); *In re Mallinkrodt plc*, No. 20-12522 (JTD) (Bankr. D. Del. Jan. 14, 2021); *In re Jason Indus., Inc.*, No. 20-22766 (RDD) (Bankr. S.D.N.Y. Aug. 26, 2020); *In re Intelsat S.A.*,

No. 20-32299 (KLP) (Bankr. E.D. Va. Sept. 22, 2020); *In re Internap Technology Solutions Inc.*,

No. 20-22393 (RDD) (Bankr. S.D.N.Y. May 5, 2020).[3]

9.     The Debtors have selected Moelis as their investment banker, capital markets

advisor, and financial advisor based upon, among other things:  (a) the Debtors' need to retain a

skilled investment banker, capital markets advisor, and financial advisor to provide advice with

respect to the Debtors' restructuring activities; (b) Moelis' extensive experience and excellent

reputation in providing investment banking, capital markets, and financial advisory services in

complex chapter 11 cases such as these; and (c) Moelis' extensive knowledge of the Debtors, as

described below.  In light of the size and complexity of these chapter 11 cases, Moelis' resources,

capabilities, and experience are crucial to the success of these chapter 11 cases.  An experienced

investment banker, capital markets advisor, and financial advisor such as Moelis, fulfills a critical

service that complements the services provided by the Debtors' other professionals.

10.     Moelis began advising the Debtors on strategic and restructuring initiatives prior to

the commencement of these chapter 11 cases.  Moelis was initially engaged as the Debtors'

investment banker, capital markets advisor, and financial advisor in June 2022 and has provided

advisory services in connection with the Debtors' restructuring efforts since its engagement.

11.     As a result of its prepetition work with the Debtors, Moelis has developed valuable

institutional knowledge regarding the Debtors' businesses, operations, capital structure, and other

material information, and has become well-acquainted with the Debtors' businesses, operations,

and capital structure.

---

[3]     Because of the voluminous nature of the orders cited herein, such orders are not attached to this Application.
Copies of these orders are available upon request of the Debtors' proposed counsel.

12.     Accordingly, the Debtors believe Moelis is well-qualified to represent them in a cost-effective, efficient, and timely manner, and the Debtors submit that the employment and retention of Moelis is in the best interests of the Debtors and their estates, their creditors, and all parties in interest.

## Services to be Provided

13.     Subject to further order of the Court, and as set forth more fully in the Engagement Letter attached as **Exhibit 1** to the Proposed Order, in consideration for the compensation contemplated therein, Moelis has and will perform the following services (the "Services"), as requested, for the Debtors:[4]

    i.      assist the Debtors in reviewing and analyzing the Debtors' results of operations, financial condition, and business plan;

    ii.     assist the Debtors in reviewing and analyzing any potential Restructuring, Sale Transaction, or Capital Transaction;

    iii.    assist the Debtors in negotiating any Restructuring, Sale Transaction, or Capital Transaction;

    iv.     advise the Debtors on the terms of securities it offers in any potential Capital Transaction;

    v.      advise the Debtors on its preparation of information memorandum for a potential Sale Transaction or Capital Transaction (each, an "Information Memo");

    vi.     assist the Debtors in contacting potential acquirers or purchasers of a Capital Transaction ("Purchasers") that Moelis and the Debtors agree are appropriate, and meet with and provide them with the Information Memo and such additional information about the Debtors' assets, properties, or businesses that is acceptable to the Debtors, subject to customary business confidentiality agreements; and

---

[4]     The summary of the Engagement Letter in this Application is qualified in its entirety by reference to the provisions of the Engagement Letter.  To the extent there is any discrepancy between the summary contained herein and the terms set forth in the Engagement Letter, the terms of the Engagement Letter shall control.

      vii.    provide such other financial advisory and investment banking services in connection with a Restructuring, Sale Transaction, or Capital Transaction as Moelis and the Debtors may mutually agree upon in writing.

14.    Such professional services are necessary to the Debtors' restructuring efforts and in the ongoing operation and management of the Debtors' businesses while subject to the Bankruptcy Code.

### Professional Compensation

15.    Moelis' decision to advise and assist the Debtors in connection with these chapter 11 cases is subject to its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for reasonable and documented out-of-pocket expenses it incurs in accordance with its customary billing practices, as set forth in the Engagement Letter.

16.    Moelis does not typically charge for its services on an hourly basis. Instead, it customarily charges a monthly advisory fee plus an additional fee that is contingent upon the occurrence of a specified type of transaction. The Engagement Letter follows this custom in the financial advisory and investment banking industry and sets forth the monthly and transaction-based fees that are to be payable to Moelis.

17.    As set forth more fully in the Engagement Letter, Moelis and the Debtors have agreed on the following terms of compensation and expense reimbursement (the "Fee Structure") pursuant to section 328(a), and not section 330, of the Bankruptcy Code. The Debtors have agreed to pay Moelis the following nonrefundable cash fees:

      i.    **Retainer Fee.** Promptly after execution of the Engagement Letter, a retainer fee of $600,000 (the "Retainer Fee"). The Retainer Fee shall be offset, to the extent previously paid, against the first three Monthly Fees (as defined below).

      ii.    **Monthly Fee.** During the term of the Engagement Letter, a fee of $200,000 per month (the "Monthly Fee"), payable in advance of each month.

7

The Debtors will pay the first Monthly Fee immediately upon execution of the Engagement Letter, and all subsequent Monthly Fees prior to each monthly anniversary of the date of the Engagement Letter. Whether or not a Restructuring, Sale Transaction, or Capital Transaction occurs, Moelis shall earn and be paid the Monthly Fee every month during the term of the Engagement Letter. 50% of the Monthly Fee shall be offset, to the extent previously paid, against the first Sale Transaction Fee and the Restructuring Fee (each as defined below).

iii. **Restructuring Fee.** At the closing of a Restructuring, a fee (the "Restructuring Fee") of $11,000,000. The Debtors will pay a separate Restructuring Fee in respect of each Restructuring in the event that more than one Restructuring occurs.

iv. **Sale Transaction Fee.** At the closing of a Sale Transaction, a non-refundable cash fee (the "Sale Transaction Fee") of $12,000,000.

In the event of a Sale Transaction that is consummated pursuant to Section 363 of the Bankruptcy Code, such Sale Transaction shall trigger a Restructuring Fee. To the extent a Transaction is both a Sale Transaction and a Restructuring Transaction, the Debtors shall pay the Restructuring Fee.

v. **Capital Transaction Fee.** At the closing of a Capital Transaction, a non-refundable cash fee (the "Capital Transaction Fee," and together with the Restructuring Fee and Sale Transaction Fee, collectively, the "Transaction Fees") of:

  a. 4.00% of the aggregate gross amount or face value of capital Raised (as defined below) in the Capital Transaction as equity, equity-linked interests, options, warrants, or other rights to acquire equity interests, plus

  b. 2.00% of the aggregate gross amount of debt obligations and other interests Raised in the Capital Transaction.

The Debtors will pay a separate Capital Transaction Fee in respect of each Capital Transaction in the event that more than one Capital Transaction occurs. "Raised" includes the amount committed to the Debtors, whether or not the Debtors draw the full amount, and whether or not the Debtors apply such amounts to refinance any of the Debtors' obligations.

18.     If, at any time prior to the end of the Tail Period,[5] the Debtors consummate any Restructuring, Sale Transaction, or Capital Transaction or enter into an agreement or a Plan is filed regarding any Restructuring, Sale Transaction, or Capital Transaction, and a Restructuring, Sale Transaction, or Capital Transaction is subsequently consummated, then the Debtors (or their estates) shall pay Moelis the applicable Transaction Fee(s) as specified above.

19.     In addition to any fees payable to Moelis, the Debtors will reimburse Moelis for all reasonable and documented out-of-pocket expenses as they are incurred in performing services pursuant to the Engagement Letter, whether or not the Debtors consummate a Restructuring, Sale Transaction, or Capital Transaction.  Upon execution of the Engagement Letter, the Debtors paid, and will maintain, a $25,000 expense advance for Moelis (the "Expense Retainer").  Moelis will return the unused portion of the Expense Retainer to the Debtors following termination of the Engagement Letter.  Moelis agrees to provide the Debtors with reasonable support for its expenses at the Debtors' request or at the Court's direction.

20.     The Debtors understand that Moelis intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Amended Guidelines, the U.S. Trustee Guidelines, and any other applicable procedures and orders of the Court, including any order granting this Application (to the extent compliance is not waived) and consistent with the proposed compensation set forth in the Engagement Letter.

---

[5]    The "Tail Period" shall end (i) in the case of any Restructuring, Sale Transaction or Capital Transaction consummated out-of-court, 12 months following the expiration or termination of the Engagement Letter or (ii) otherwise 18 months following the expiration or termination of the Engagement Letter.

21.     However, because (a) it is not the general practice of investment banking firms such as Moelis to keep detailed time records similar to those customarily kept by attorneys, (b) Moelis does not ordinarily keep time records on a "project category" basis, and (c) Moelis' compensation is based on a fixed Monthly Fee and fixed transaction fees, the Debtors respectfully request that Moelis' professionals who advise or provide professional services to, or on behalf of, the Debtors only be required to maintain records (in summary format) of the services rendered to the Debtors, including summary descriptions of those services, the approximate time expended in providing those services (in hourly increments), and the identity of the restructuring professionals who provided those services, consistent with its ordinary practice.  Moelis will present such records to the Court in its fee application(s).  Moreover, the Debtors respectfully request that Moelis' restructuring professionals not be required to keep time records on a "project category" basis, that its non-restructuring professionals and personnel in administrative departments (including legal) not be required to maintain any time records, and that it not be required to provide or conform to any schedule of hourly rates.  To the extent that Moelis would otherwise be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Amended Guidelines, the U.S. Trustee Guidelines, or other applicable procedures and orders of the Court, the Debtors respectfully request that this Court waive such requirements.

22.     Moelis will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in these chapter 11 cases.  In the event that Moelis seeks reimbursement for attorneys' fees during the term of these chapter 11 cases, Moelis will include the applicable invoices and supporting time records from such attorneys in Moelis' own applications, both interim and final.  Such invoices and time records will be subject

to the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

23.    The Debtors believe that the Fee Structure is reasonable, consistent with, and typical of compensation arrangements entered into by Moelis and other comparable firms in connection with the rendering of similar services under similar circumstances, both in and out of bankruptcy proceedings.  The Debtors also believe that the Fee Structure reflects a proper balance between a fixed, monthly fee, and a contingency amount, which is tied to the consummation and closing of the transactions and services contemplated by the Debtors and Moelis in the Engagement Letter.  The Fee Structure is consistent with Moelis' normal and customary billing practices for chapter 11 cases of this size and complexity that require the level of scope and services outlined herein.  After arm's-length negotiations, the Debtors believe that the Fee Structure is reasonable, market-based, and designed to compensate Moelis fairly for its work.

24.    Moelis' strategic and financial expertise, as well as its capital markets knowledge, financing skills, restructuring capabilities, and mergers and acquisitions expertise, some or all of which have and will be required by the Debtors during the term of Moelis' engagement, were all important factors to the Debtors in agreeing to the Fee Structure.  The Debtors believe that the ultimate benefit of Moelis' services hereunder cannot be measured by reference to the number of hours to be expended by Moelis' professionals in the performance of such services.  The Debtors and Moelis have agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of Moelis and its professionals in connection with these chapter 11 cases and in light of the fact that (a) such commitment may foreclose other

opportunities for Moelis and (b) the actual time and commitment required of Moelis and its professionals to perform its services under the Engagement Letter may vary substantially from week-to-week and month-to-month, creating "peak load" issues for Moelis.

25.     During the 90-day period prior to the Petition Date, the Debtors paid to Moelis in the ordinary course, certain fees and expense reimbursements due under the Engagement Letter. Specifically, according to the Debtors' books and records, the Debtors paid Moelis (a) the Retainer Fee in the amount of $600,000; (b) Monthly Fees in the amount of $200,000; (c) reimbursement of expenses in the amount of $22.41; and (d) the Expense Retainer in the amount of $25,000. As of the Petition Date, the Debtors do not owe Moelis any fees for services performed or expenses incurred under the Engagement Letter in excess of the Expense Retainer, which Moelis is holding on account for prepetition expenses incurred in connection with the Engagement Letter.

**Indemnification, Exculpation, Contribution, and Reimbursement of Moelis**

26.     As part of the overall compensation payable to Moelis under the terms of the Engagement Letter, the Debtors have agreed to indemnify and exculpate any and all Indemnified Persons (as defined in the Engagement Letter), and pay certain contributions and reimbursements to, Moelis in accordance with the terms and conditions set forth in the Engagement Letter, including Annex B thereto (such provisions, collectively, the "Indemnification Provisions"). As set forth more fully therein, under the Indemnification Provisions, if any Indemnified Person becomes involved in any capacity in any Action (as defined in the Engagement Letter), the Debtors will reimburse such Indemnified Person for the reasonable and documented out-of-pocket costs and expenses (including counsel fees) of investigating, preparing for, and responding to such Action or enforcing the Engagement Letter, as they are incurred. The Debtors will also indemnify and hold harmless any Indemnified Person from and against, and the Debtors each agree that no Indemnified Person shall have any liability to the Debtors or their affiliates, or their respective

owners, directors, officers, employees, security holders, or creditors, for any losses, claims, damages, expenses, or liabilities (collectively, "Losses") (a)(i) related to the Debtors' actions or omissions (or the actions or omissions of the Debtors' officers, directors, employees, and agents other than Moelis) in connection with the Engagement Letter or the matters referred to therein, or (ii) related to or arising out of oral or written statements or omissions made or information provided by the Debtors or their agents in connection with the Engagement Letter or the matters referred to therein (including, without limitation, the Information Memo and any other information provided by or on behalf of the Debtors to any purchaser or seller of a security in any transaction contemplated by the Engagement Letter), or (b) otherwise arising out of, related to, or in connection with the Engagement Letter or Moelis' performance thereunder, or any other services or advice the Debtors request any Indemnified Person to provide (in each case, including prior to the date of the Engagement Letter), except that this clause (b) shall not apply to Losses to the extent such Losses are finally judicially determined to have resulted primarily from the bad faith or gross negligence of such Indemnified Person.[6]

27.    These Indemnification Provisions were negotiated at arm's length and in good faith between the Debtors and Moelis.  The Debtors believe that the Indemnification Provisions in the Engagement Letter reflect the customary qualifications and limits on such terms for financial advisory engagements both out of court and in chapter 11 cases and respectfully submit that the Indemnification Provisions are reasonable, subject to the modifications set forth in the Proposed Order.  The Debtors believe that the proposed modifications to the Indemnification

---

[6]    To the extent there is any inconsistency between the summary of the indemnification provisions set forth in this Application and the indemnifications set forth in Annex B to the Engagement Letter, the terms of the Engagement Letter shall control.

Provisions are appropriate under the circumstances, consistent with recent orders entered in this jurisdiction, and should be approved.

**Efforts to Avoid Duplication of Services**

28.    The Debtors have applied, or expect to apply, to the Court to retain additional professionals, including: (a) Kirkland & Ellis LLP; (b) Berkeley Research Group, LLC ("BRG"); (c) Fasken Martineau DuMoulin LLP; (d) Quinn Emanuel Urquhart & Sullivan, LLP; and (e) Stretto, Inc. ("Stretto").  The Debtors do not believe that the services to be performed by Moelis on behalf of the Debtors will be duplicative of services provided by these additional professionals, including the services of BRG.  BRG, while also a proposed financial advisor, is not being retained to perform the same services as Moelis, as set forth in both retention applications and engagement letters.  The Debtors and Moelis are mindful of the need to avoid duplication of services and appropriate procedures will be implemented to ensure that there is minimal duplication of effort as a result of Moelis' retention as investment banker, capital markets advisor, and financial advisor. The Debtors understand that Moelis will use its reasonable efforts to work cooperatively with the Debtors' other professionals to integrate any respective work performed by those professionals on behalf of the Debtors.

**Moelis' Disinterestedness**

29.    Moelis has reviewed the list of parties in interest provided by the Debtors.  To the best of Moelis' knowledge, information, and belief, as of the date hereof, and except to the extent disclosed herein or in the Dermont Declaration, Moelis:  (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (b) does not hold or represent an interest adverse to the Debtors' estates; and (c) has no connection to the Debtors, their creditors, or related parties except as disclosed in the Dermont Declaration.

30.     Given the large number of parties in interest in these chapter 11 cases, and despite the efforts to identify and disclose Moelis' relationships with parties in interest in these chapter 11 cases, Moelis is unable to state with certainty that every client relationship or other connection has been disclosed in the Dermont Declaration.  Moelis has informed the Debtors that it will make continued inquiries following the filing of this Application, on a periodic basis, with additional disclosures to this Court if necessary or otherwise appropriate.

31.     The Debtors are informed that Moelis will not share any compensation to be paid by the Debtors, in connection with services to be performed after the Petition Date, with any other person, other than principals and employees of Moelis, to the extent required by section 504 of the Bankruptcy Code.

### Basis For Relief

**A.     The Debtors Should be Permitted to Retain and Employ Moelis on the Terms of the Engagement Letter Pursuant to Sections 327 and 328 of the Bankruptcy Code.**

32.     The Debtors seek approval of the retention and employment of Moelis pursuant to sections 327(a) and 328(a) of the Bankruptcy Code.  Section 327(a) of the Bankruptcy Code provides that a debtor in possession "may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist" the debtor in possession in carrying out its duties.  11 U.S.C. § 327(a).

33.     In addition, section 328(a) of the Bankruptcy Code provides, in relevant part, that debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).  Accordingly, section 328 of the Bankruptcy Code permits the compensation

of professionals, including investment bankers, on more flexible terms that reflect the nature of

their services and market conditions.  As the United States Court of Appeals for the Fifth Circuit

recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum (In re Nat'l Gypsum Co.)*:

> Prior to 1978 the most able professionals were often unwilling to
> work for bankruptcy estates where their compensation would be
> subject to the uncertainties of what a judge thought the work was
> worth after it had been done.  That uncertainty continues under the
> present § 330 of the Bankruptcy Code, which provides that the court
> award to professional consultants "reasonable compensation" based
> on relevant factors of time and comparable costs, etc.  Under present
> § 328 the professional may avoid that uncertainty by obtaining court
> approval of compensation agreed to with the trustee (or debtor or
> committee).

123 F.3d 861, 862 (5th Cir. 1997) (internal citations and emphasis omitted).

34.    As discussed above and in the Dermont Declaration, Moelis satisfies the

disinterestedness standard in section 327(a) of the Bankruptcy Code.  Moelis advised the Debtors

prior to the commencement of these chapter 11 cases and, to date has committed a significant

amount of time and effort assisting the Debtors with their restructuring efforts.  Additionally, given

the numerous issues that Moelis may be required to address in the performance of its services for

the Debtors pursuant to the Engagement Letter, Moelis' commitment to the variable level of time

and effort necessary to address all such issues as they arise, and the market prices for Moelis'

services for engagements of this nature, the Debtors believe that the terms and conditions of the

Engagement Letter are fair, reasonable, and market-based under the standards set forth in

section 328(a) of the Bankruptcy Code.

35.    Indeed, the Debtors believe that the Fee Structure appropriately reflects: (a) the

nature and scope of services to be provided by Moelis; (b) Moelis' substantial experience with

respect to investment banking and financial advisory services; and (c) the fee structures typically

utilized by Moelis and other leading investment banks and financial advisors who do not bill their clients on an hourly basis, in bankruptcy or otherwise.

36.    As set forth above, and notwithstanding approval of Moelis' Engagement Letter under section 328 of the Bankruptcy Code, Moelis intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Amended Guidelines, the U.S. Trustee Guidelines, and any other applicable procedures and orders of the Court, with certain limited modifications as set forth herein.  Furthermore, the Debtors propose that their obligation to pay any fee, expense or indemnity to Moelis or an Indemnified Person not be subject to any reduction by way of setoff, recoupment or counterclaim.

37.    The Debtors request that the requirements of Local Rule 2016-1, the Amended Guidelines, the U.S. Trustee Guidelines, and any other applicable procedures and orders of the Court be tailored to the nature of Moelis' engagement and its compensation structure.  Moelis has requested, pursuant to section 328(a) of the Bankruptcy Code, payment of its fees on a fixed-rate and/or fixed-percentage basis.  Additionally, it is not the general practice of investment banking firms like Moelis to keep detailed time records similar to those customarily kept by attorneys.  As discussed above, however, Moelis' restructuring professionals, when formally retained in chapter 11 cases, and when required by Local Rules, do, and in these chapter 11 cases, will, keep summary time records in hourly increments describing their daily activities and the identity of the professionals who performed such tasks.  As such, the Debtors request modification of the requirements under Local Rule 2016-1, the Amended Guidelines, the U.S. Trustee Guidelines, and any other applicable procedures and orders of the Court.

38.    Similar fixed and contingency fee arrangements have been approved and
implemented by courts in other large chapter 11 cases.  *See, e.g., In re MD Helicopters, Inc.*,
No. 22-10263 (KBO) (Bankr. D. Del. May 6, 2022); *In re Energy Alloys Holdings, LLC*,
No. 20-12088 (MFW) (Bankr. D. Del. June 28, 2021); *In re Knotel, Inc.*, No. 21-10146 (MFW)
(Bankr. D. Del. Mar. 12, 2021); *In re Mallinkrodt plc*, No. 20-12522 (JTD) (Bankr. D. Del.
Jan. 14, 2021); *In re Intelsat S.A.*, No. 20-32299 (KLP) (Bankr. E.D. Va. Sept. 22, 2020);
*In re Jason Indus., Inc.*, No. 20-22766 (RDD) (Bankr. S.D.N.Y. Aug. 26, 2020); *In re Internap
Technology Solutions Inc.*, No. 20-22393 (RDD) (Bankr. S.D.N.Y. May 5, 2020).

39.    The Debtors also believe that employment of Moelis effective as of the Petition
Date is warranted under the circumstances of these chapter 11 cases.  Moelis has provided, and
will continue to provide, valuable services to the Debtors regarding the contemplated transactions.
*See, e.g., In re Ark. Co.*, 798 F.2d 645, 648 (3d Cir. 1986) ("[T]he bankruptcy courts have the
power to authorize retroactive employment of counsel and other professionals under their broad
equity power." (collecting cases)).

**B.    The Indemnification Provisions Are Appropriate.**

40.    The Indemnification Provisions, as modified by the Order attached hereto, were
negotiated at arm's-length between the Debtors and Moelis.  The Debtors and Moelis believe that
the Indemnification Provisions are customary and reasonable for investment banking engagements
both out-of-court and in chapter 11 cases.  Similar provisions have been approved by courts in
other large chapter 11 cases.  *See, e.g.*, *In re MD Helicopters, Inc.*, No. 22-10263 (KBO) (Bankr.
D. Del. May 6, 2022); *In re Energy Alloys Holdings, LLC*, No. 20-12088 (MFW) (Bankr. D. Del.
June 28, 2021); *In re Knotel, Inc.*, No. 21-10146 (MFW) (Bankr. D. Del. Mar. 12, 2021);
*In re Mallinkrodt plc*, No. 20-12522 (JTD) (Bankr. D. Del. Jan. 14, 2021); *In re Intelsat S.A.*,
No. 20-32299 (KLP) (Bankr. E.D. Va. Sept. 22, 2020); *In re Jason Indus., Inc.*, No. 20-22766

(RDD) (Bankr. S.D.N.Y. Aug. 26, 2020); *In re Internap Technology Solutions Inc.*, No. 20-22393 (RDD) (Bankr. S.D.N.Y. May 5, 2020).

41.    Accordingly, the Debtors respectfully submit that the terms of the modified Indemnification Provisions are reasonable and customary and should be approved in these chapter 11 cases.

**C.    The Retention of Moelis Is Critical to the Debtors' Chapter 11 Efforts.**

42.    The Debtors submit that the retention of Moelis is in the best interests of all parties in interest in these chapter 11 cases.  As set forth above, Moelis has extensive experience in matters involving complex financial restructurings and an excellent reputation for the services that it has rendered in chapter 11 cases on behalf of debtors and creditor constituencies throughout the United States.  Moelis is a preeminent investment banking, capital markets advisory, and financial advisory firm that is intimately familiar with the Debtors' businesses.  Denial of the relief requested herein will deprive the Debtors of the assistance of Moelis' uniquely qualified professionals who have served them for several weeks prior to the Petition Date and have continued to assist them following the Petition Date.  Indeed, if the Debtors were forced to engage a new investment banker, capital markets advisor, and financial advisor who lacks a thorough understanding of the Debtors' businesses, such change would mandate the commitment of significant resources to educate a replacement, causing significant delay and increased cost.  Based on services performed to date, Moelis was integral in preparing the Debtors for these chapter 11 cases.

43.    Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules to support entry of an order authorizing the Debtors to retain and employ Moelis in these chapter 11 cases on the terms described herein and in the Engagement Letter.

**Notice**

44.     The Debtors will provide notice of this Application to the following parties and/or their respective counsel, as applicable:  (a) the U.S. Trustee; (b) the Committee; (c) the lender under the Debtors' prepetition loan facility; (d) the United States Attorney's Office for the Southern District of New York; (e) the Internal Revenue Service; (f) the Toronto Stock Exchange; (g) the attorneys general in the states where the Debtors conduct their business operations; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

45.     No prior request for the relief sought in this Application has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the

relief requested herein and such other relief as the Court deems appropriate under the

circumstances.

Dated:  July 20, 2022
New York, New York

*Stephen Ehrlich*
Name:  Stephen Ehrlich
Title:  Co-Founder and Chief Executive Officer
Voyager Digital Ltd.

## EXHIBIT A

**Dermont Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
|  | Case No. 22-10943 (MEW) |
| VOYAGER DIGITAL HOLDINGS, INC, *et al.*,[1] | (Jointly Administered) |
| Debtors. |  |

**DECLARATION OF JARED DERMONT IN SUPPORT OF**
**APPLICATION OF DEBTORS AND DEBTORS**
**IN POSSESSION FOR ENTRY OF ORDER AUTHORIZING**
**EMPLOYMENT AND RETENTION OF MOELIS & COMPANY LLC**
**AS INVESTMENT BANKER AND FINANCIAL ADVISOR**
**EFFECTIVE AS OF THE PETITION DATE**

I, Jared Demont, declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury that:

1.      I am a Managing Director at the investment banking firm of Moelis & Company LLC ("**Moelis**").

2.      I am authorized to submit this declaration (the "**Declaration**") in support of the Application of Debtors and Debtors in Possession for Entry of an Order Authorizing the Employment and Retention of Moelis & Company LLC as Investment Banker and Financial Advisor Effective as of the Petition Date (the "**Application**").[2]

3.      The facts set forth in this Declaration are based upon my personal knowledge, upon information and belief, or upon client matter records kept in the ordinary course of business that were reviewed either by me or other employees of Moelis under my supervision

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (N/A); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]      Capitalized terms used but not otherwise defined herein have the meanings given to them in the Application.

and direction.  If called and sworn as a witness, I could and would testify competently to the facts set forth herein.

## MOELIS' QUALIFICATIONS

4.      Moelis is an investment banking firm with its principal office located at 399 Park Avenue, 5th Floor, New York, New York 10022.  Moelis is a registered broker-dealer with the United States Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority.  Moelis was founded in 2007 and is a wholly owned subsidiary of Moelis & Company Group LP.  Moelis & Company Group LP, together with its subsidiaries, has approximately 1,000 employees with geographic locations in North America, South America, Europe, the Middle East, and Asia.  Moelis & Company Group LP is a subsidiary of Moelis & Company, a public company listed on the New York Stock Exchange.

5.      Moelis provides a broad range of financial advisory and investment banking services to its clients, including: (a) general corporate finance; (b) mergers, acquisitions, and divestitures; (c) corporate restructurings; (d) special committee assignments; and (e) capital raising.  Moelis and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 cases.  Moelis' business reorganization professionals have served as financial advisors and/or investment bankers in numerous cases, including: *In re Knotel, Inc.*, No. 21-10146 (MFW) (Bankr. D. Del. Mar. 13, 2021); *In re Mallinkrodt PLC*, No. 20-12522 (JTD) (Bankr. D. Del. Nov. 14, 2021); *In re CBL & Assocs. Props., Inc.*, No. 20-35226 (DRJ) (Bankr. S.D. Tex. Dec. 30, 2020); *In re Energy Alloys Holdings, LLC*, No. 20-12088 (MFW) (Bankr. D. Del. Nov. 23, 2020); *In re Intelsat S.A.* No. 20-32299 (KLP) (Bankr. E.D. Va. Sept. 22, 2020); *In re Jason Indus., Inc.*, No. 20-22766 (RDD) (Bankr. S.D.N.Y. Aug. 27, 2020); *In re The Hertz Corp.*, No. 20-11218 (MFW) (Bankr. D. Del. July 30, 2020); *In re Extraction Oil & Gas, Inc.*, No. 20-11548 (CSS) (Bankr. D. Del. Aug. 11,

2

2020); *In re The McClatchy Co.*, No, 20-10418 (MEW) (Bankr. S.D.N.Y. May 18, 2020); *In re Internap Technology Solutions Inc.*, No. 20-22393 (RDD) (Bankr. S.D.N.Y. May 5, 2020); *In re Whiting Petroleum Corp.*, No. 20- 32021 (DRJ) (Bankr. S.D. Tex. May 6, 2020); *In re Rentpath Holdings, Inc.*, No. 20-10312 (BLS) (Bankr. D. Del. Mar. 10, 2020); *In re Sanchez Energy Corp.*, No. 19-34508 (MI) (Bankr. S.D. Tex. Oct. 21, 2019); *In re Monitronics Int'l, Inc.*, No. 19-33650 (DRJ) (Bankr. S. D. Tex. Aug. 2, 2019); *In re Aegerion Pharmaceuticals, Inc.*, No. 19-11632 (MG) (Bankr. S.D.N.Y. July 10, 2019); *In re Joerns WoundCo Holdings, Inc.*, No. 19-11401 (JTD) (Bankr. D. Del. July 25, 2019); *In re FTD Cos., Inc.*, No. 19-11240 (LSS) (Bankr. D. Del. Jul. 2, 2019); *In re Hexion Holdings LLC*, No. 19-10684 (KG) (Bankr. D. Del. May 15, 2019); *In re Aegean Marine Petroleum Network Inc.*, No. 18-13374 (MEW) (Bankr. S.D.N.Y. Feb. 20, 2019); *In re Parker Drilling Company, Inc.*, No. 18-36958 (MI) (Bankr. S.D. Tex. Jan. 15, 2019); *In re Aralez Pharmaceuticals US Inc.*, No. 18-12425 (MG) (Bankr. S.D.N.Y. Nov. 1, 2018); *In re iHeartMedia, Inc.*, No. 18-31274 (MI) (Bankr. S.D. Tex. July 24, 2018); *In re Global A&T Electronics Ltd*, No. 17-23931 (RDD) (Bankr. S.D.N.Y. Feb. 26, 2018); *In re Toys "R" US, Inc.*, No. 17-34665 (KLP) (Bankr. E.D. Va. Nov. 21, 2017); *In re TK Holdings, Inc.*, No. 17-11375 (BLS) (Bankr. D. Del. Aug. 30, 2017); *In re Basic Energy Services, Inc.*, No. 16-12320 (KJC) (Bankr. D. Del. Nov. 17, 2016); *In re UCI International, LLC*, No. 16-11354 (MFW) (Bankr. D. Del. July 12, 2016); *In re AOG Entm't, Inc.*, No. 16-11090 (SMB) (Bankr. S.D.N.Y. June 8, 2016); *In re SFX Entertainment, Inc.*, No. 16-10238 (MFW) (Bankr. D. Del. Feb. 29, 2016); *In re American Apparel, Inc.*, No. 15-12055 (BLS) (Bankr. D. Del. Nov. 30, 2015); *In re Allied Nevada Gold Corp.*, No. 15-10503 (MFW) (Bankr. D. Del. April 15, 2015); *In re ITR Concession Co. LLC*, No. 14-34284 (Bankr. N.D. Ill. Oct. 28, 2014); *In re GSE Envt'l, Inc.*, No. 14-11126 (MFW) (Bankr. D. Del. May 30, 2014); *In re MACH Gen, LLC*, No. 14-10461 (MFW) (Bankr. D. Del.

April 11, 2014);  *In re MPM Silicones, LLC*, No. 14-22503 (RDD) (Bankr. S.D.N.Y. May 16, 2014).[3]

6.     Moelis began advising the Debtors on strategic and restructuring initiatives prior to the commencement of these chapter 11 cases.  Moelis was initially engaged as the Debtors' investment banker and financial advisor in June 2022 and has provided extensive prepetition services in connection with the Debtors' restructuring efforts since then.

7.     As a result of its prepetition work with the Debtors, Moelis has developed valuable institutional knowledge regarding the Debtors' businesses, operations, capital structure and other material information.  Accordingly, I believe Moelis is well-qualified to represent the Debtors in a cost-effective, efficient and timely manner.

## SERVICES TO BE PROVIDED

8.     Subject to further order of the Court, and as set forth more fully in the Engagement Letter attached to the Proposed Order as Exhibit 1, in consideration for the compensation contemplated therein, Moelis has and will perform the following services the ("**Services**"), as requested, for the Debtors:[4]

(a)     assist the Debtors in reviewing and analyzing the Debtors' results of operations, financial condition and business plan;

(b)     assist the Debtors in reviewing and analyzing any potential Restructuring, Sale Transaction, or Capital Transaction;

(c)     assist the Debtors in negotiating a Restructuring, Sale Transaction, or Capital Transaction;

---

[3]     Because of the voluminous nature of the orders cited herein, such orders are not attached to this Declaration. Copies of these orders are available upon request of the Debtors' proposed counsel.

[4]     The summary of the Engagement Letter in this Declaration is qualified in its entirety by reference to the provisions of the Engagement Letter.  To the extent there is any discrepancy between the summary contained herein and the terms set forth in the Engagement Letter, the terms of the Engagement Letter shall control. Capitalized terms used and not otherwise defined in this Declaration shall have the meanings ascribed to them in the Engagement Letter.

(d)     advise the Debtors on the terms of securities it offers in a potential Capital Transaction;

(e)     advise the Debtors on its preparation of information memoranda for a potential Sale Transaction or Capital Transaction (each, an "**Information Memo**");

(f)     assist the Debtors in contacting potential Acquirers or purchasers of a Capital Transaction ("**Purchasers**") that Moelis and the Debtors agree are appropriate, and meet with and provide them with the Information Memo and such additional information about the Debtors' assets, properties or businesses that is acceptable to the Debtors, subject to customary business confidentiality agreements; and

(g)     provide such other financial advisory and investment banking services in connection with a Restructuring, Sale Transaction, or Capital Transaction as Moelis and the Debtors may mutually agree upon in writing.

9.     I believe these professional services are necessary to the Debtors' restructuring efforts and in the ongoing operation and management of the Debtors' businesses while subject to chapter 11 of the Bankruptcy Code.  Further, if the Debtors request that Moelis perform services not contemplated by the Moelis Engagement Letter, Moelis and the Debtors will agree, in writing, on the terms for such services and seek the Court's approval.  I believe that the employment of Moelis is important to enabling the Debtors to execute their duties as debtors in possession and to effectuate their reorganization efforts.

## PROFESSIONAL COMPENSATION

10.     Moelis' decision to advise and assist the Debtors in connection with these chapter 11 cases is subject to its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices, as set forth in the Engagement Letter.

11.     Moelis does not typically charge for its services on an hourly basis.  Instead, it customarily charges a monthly advisory fee plus an additional fee that is contingent upon the

occurrence of a specified type of transaction.  The Engagement Letter follows this custom in the

financial advisory and investment banking industry and sets forth the monthly and transaction-

based fees that are to be payable to Moelis.

12.     As set forth more fully in the Engagement Letter, Moelis and the Debtors

have agreed on the following terms of compensation and expense reimbursement (the "**Fee**

**Structure**").  The Debtors have agreed to pay Moelis the following nonrefundable cash fees:

(a)     **Retainer Fee.** Promptly after execution of the Engagement Letter, a retainer fee of $600,000 (the "**Retainer Fee**"). The Retainer Fee shall be offset, to the extent previously paid, against the first 3 **Monthly Fees** (as defined below).

(b)     **Monthly Fee.**  During the term of the Engagement Letter, a fee of $200,000 per month (the "**Monthly Fee**"), payable in advance of each month. The Debtors will pay the first Monthly Fee immediately upon execution of this agreement, and all subsequent Monthly Fees prior to each monthly anniversary of the date of this agreement.  Whether or not a Restructuring, Sale Transaction or Capital Transaction occurs, Moelis shall earn and be paid the Monthly Fee every month during the term of this agreement. 50% of the Monthly Fee shall be offset, to the extent previously paid, against the first **Sale Transaction Fee** and the **Restructuring Fee** (each as defined below).

(c)     **Restructuring Fee.**  At the closing of a Restructuring, a fee (the "**Restructuring Fee**") of $11,000,000.  The Debtors will pay a separate Restructuring Fee in respect of each Restructuring in the event that more than one Restructuring occurs.

(d)     **Sale Transaction Fee.**  At the closing of a Sale Transaction, a non-refundable cash fee (the "Sale Transaction Fee") of $12,000,000.

In the event of a Sale Transaction that is consummated pursuant to Section 363 of the Bankruptcy Code, such Sale Transaction shall trigger a Restructuring Fee. To the extent a Transaction is both a Sale Transaction and a Restructuring Transaction, the Debtors shall pay the Restructuring Fee.

(e)     **Capital Transaction Fee.**  At the closing of a Capital Transaction, a non-refundable cash fee (the "**Capital Transaction Fee**") of:

(f)     4.00% of the aggregate gross amount or face value of capital Raised (as defined below) in the Capital Transaction as equity, equity-linked interests, options, warrants or other rights to acquire equity interests, plus

(g)     2.00% of the aggregate gross amount of debt obligations and other interests Raised in the Capital Transaction.

The Debtors will pay a separate Capital Transaction Fee in respect of each Capital Transaction in the event that more than one Capital Transaction occurs. "Raised" includes the amount committed to the Debtors whether or not the Debtors draw the full amount, and whether or not the Debtors apply the amounts to refinance any of their obligations.

13.     If, at any time prior to the end of the Tail Period,[5] the Debtors consummate any Restructuring, Sale Transaction or Capital Transaction or enter into an agreement or a Plan is filed regarding any Restructuring, Sale Transaction or Capital Transaction and a Restructuring, Sale Transaction or Capital Transaction is subsequently consummated, then the Debtors (or their bankruptcy estates) shall pay Moelis the applicable Transaction Fee(s) as specified above..

14.     In addition to any fees payable to Moelis, the Debtors will reimburse Moelis, whether or not the Debtors consummate a Restructuring, Sale Transaction or Capital Transaction, for all of its reasonable and documented out-of-pocket expenses as they are incurred in performing services pursuant to the Engagement Letter.  Such expenses include, without limitation, insourced document production costs, travel costs, and the costs of Moelis' external legal counsel (without the need for such legal counsel to be retained as a professional in these chapter 11 cases and without regard to whether such legal counsel's services satisfy section 330(a)(3)(C) of the Bankruptcy Code).

15.     Moelis intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases,

---

[5]    The "**Tail Period**" shall end (i) in the case of any Restructuring, Sale Transaction or Capital Transaction consummated out-of-court, 12 months following the expiration or termination of this agreement or (ii) otherwise 18 months following the expiration or termination of this agreement.

subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Trustee Guidelines, the Amended Guidelines and any other applicable procedures and orders of the Court, including any order granting this Application (to the extent compliance is not waived) and consistent with the proposed compensation set forth in the Engagement Letter.

16.     However, because (a) it is not the general practice of investment banking firms such as Moelis to keep detailed time records similar to those customarily kept by attorneys, (b) Moelis does not ordinarily keep time records on a "project category" basis, and (c) Moelis' compensation is based on a fixed Monthly Fee and fixed transaction fees, I respectfully request that only Moelis' restructuring professionals who advise or provide professional services to or on behalf of the Debtors be required to maintain records (in summary format) of the services rendered for the Debtors, including summary descriptions of those services, the approximate time expended in providing those services (in hourly increments) and the identity of the professionals who provided those services, consistent with its ordinary practice.  Moelis will present such records to the Court in its fee application(s).  Moreover, I respectfully request that Moelis' restructuring professionals not be required to keep time records on a "project category" basis, that its non-restructuring professionals and personnel in administrative departments (including legal) not be required to maintain any time records, and that we not be required to provide or conform to any schedule of hourly rates.  To the extent that Moelis would otherwise be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Amended Guidelines, the Trustee Guidelines, or other applicable procedures and orders of the Court, I respectfully request that this Court waive such requirements.

17.    Moelis will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in these chapter 11 cases.  In the event that Moelis seeks reimbursement for attorneys' fees during the term of these chapter 11 cases, Moelis will include the applicable invoices and supporting time records from such attorneys in Moelis' own application, both interim and final.  Such invoices and time records will be subject to the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

18.    I believe the Fee Structure is reasonable, consistent with, and typical of compensation arrangements entered into by Moelis and other comparable firms in connection with the rendering of similar services under similar circumstances, both in and out of bankruptcy proceedings.  I also believe that the Fee Structure reflects a proper balance between a fixed, monthly fee, and a contingency amount, which is tied to the consummation and closing of the transactions and services contemplated by the Debtors and Moelis in the Engagement Letter.  The Fee Structure is consistent with Moelis' normal and customary billing practices for cases of this size and complexity that require the level of scope and services outlined herein.  After discussions and arm's-length negotiations with the Debtors, I believe that the Fee Structure is reasonable, market based and designed to compensate Moelis fairly for its work.

19.    I understand that Moelis' strategic and financial expertise, as well as its capital markets knowledge, financing skills, restructuring capabilities and mergers and acquisitions expertise, some or all of which has and will be required by the Debtors during the term of Moelis' engagement, were all important factors in determining the Fee Structure.  I believe

that the ultimate benefit of Moelis' services cannot be measured by reference to the number of hours to be expended by Moelis' professionals in the performance of such services. Moelis and the Debtors have agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of Moelis and its professionals in connection with these chapter 11 cases and in light of the fact that (a) such commitment may foreclose other opportunities for Moelis and (b) the actual time and commitment required of Moelis and its professionals to perform its services under the Engagement Letter may vary substantially from week-to-week and month-to-month, creating "peak load" issues for Moelis.

20.    During the 90-day period prior to the Petition Date, the Debtors paid in the ordinary course certain fees and expense reimbursements due under the Engagement Letter. Specifically, according to the Debtors' books and records, the Debtors paid Moelis (a) the Retainer Fee in the amount of $600,000; (b) Monthly Fees in the amount of $200,000; (c) reimbursement of expenses in the amount of $22.41; and (d) an expense advance retainer in the amount of $25,000 during the 90-day period prior to the Petition Date.

## INDEMNIFICATION, EXCULPATION, CONTRIBUTION AND REIMBURSEMENT OF MOELIS

21.    As part of the overall compensation payable to Moelis under the terms of the Engagement Letter, the Debtors have agreed to indemnify and exculpate any and all Indemnified Persons (as defined in the Engagement Letter), and pay certain contributions and reimbursements to, Moelis in accordance with the terms and conditions set forth in the Engagement Letter, including the annexes thereto (such provisions, collectively, the "**Indemnification Provisions**").  As set forth more fully therein, under the Indemnification Provisions, if any Indemnified Person becomes involved in an becomes involved in any capacity in any Action (as defined in the Engagement Letter), the Debtors will reimburse such Indemnified Person for the

reasonable out-of-pocket costs and expenses (including counsel fees) of investigating, preparing

for and responding to such Action or enforcing the Engagement Letter, as they are incurred.  The

Debtors will also indemnify and hold harmless any Indemnified Person from and against, and the

Debtors each agree that no Indemnified Person shall have any liability to the Debtors or their

affiliates, or their respective owners, directors, officers, employees, security holders or creditors

for, any losses, claims, damages, expenses or liabilities (collectively, "Losses") (A)(i) related to

the Debtors' actions or omissions (or the actions or omissions of the Debtors' officers, directors,

employees and agents other than Moelis) in connection with the Engagement Letter or the matters

referred to therein), or (ii) related to or arising out of oral or written statements of omissions made

or information provided by the Debtors or its agents in connection with the Engagement Letter or

the matters referred to therein (including, without limitation, the Information Memo and any other

information provided by or on behalf of the Debtors to any purchaser or seller of a security in any

transaction contemplated by the Engagement Letter), or (B) otherwise arising out of, related to or

in connection with the Engagement Letter or Moelis' performance thereunder or any other services

or advance the Debtors request any Indemnified Person to provide (in each case, including prior

to the date of the Engagement Letter), except that this clause (B) shall not apply to Losses to the

extent such Losses are finally judicially determined to have resulted primarily from the bad faith

or gross negligence of such Indemnified Person.[6]

       22.     I believe that the Indemnification Provisions are customary and reasonable

terms of consideration for investment bankers and financial advisors such as Moelis in connection

---

[6]    To the extent there is any inconsistency between the summary of the indemnification provisions set forth in this Application and the indemnifications set forth in Annex A to the Engagement Letter, the terms of the Engagement Letter shall control.

with in court and out of court restructuring activities.  Moelis negotiated the Engagement Letter, including the Indemnification Provisions, with the Debtors in good faith and at arm's length.

## EFFORTS TO AVOID DUPLICATION OF SERVICES

23.     The Debtors have applied, or expect to apply, to the Court to retain additional professionals, including: (a) Kirkland & Ellis LLP; and (b) Berkeley Research Group. Moelis is mindful of the need to avoid duplication of services and appropriate procedures will be implemented to ensure that there is minimal duplication of effort as a result of Moelis' retention as investment banker and financial advisor.  Moelis will use its reasonable efforts to work cooperatively with the Debtors' other professionals to integrate any respective work performed by those professionals on behalf of the Debtors.

## MOELIS' DISINTERESTEDNESS

24.     Moelis has undertaken to determine whether it has any conflicts or other relationships that might cause it not to be eligible for employment by the Debtors in these cases. Specifically, Moelis obtained from the Debtors the names of individuals and entities that may be parties in interest in these cases.  Moelis then (a) researched its internal records to determine whether Moelis has any connections with the Debtors and the parties listed on Schedule 1 attached hereto (the "**Potential Parties in Interest**"), and (b) issued a general inquiry to certain of its officers with respect to the Debtors and certain Potential Parties in Interest.

25.     Based on the foregoing inquiry, other than in connection with this engagement and as otherwise disclosed herein, Moelis has no relationships or connections with the Debtors of which I am aware.  In particular, to the best of my knowledge, information and belief, neither I, Moelis, nor any of its professionals:

      i.      is a creditor, equity security holder or insider of the Debtors;

      ii.     is or has been within three years before the Petition Date, a director, officer or employee of the Debtors; or

      iii.    has any interest adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

26.    Accordingly, I believe Moelis is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code and does not hold or represent an interest adverse to the Debtors or their estates.

27.    Neither I nor any of the Moelis professionals who will provide services for the Debtors is related to any Judge of this Court, the U.S. Trustee, or any person employed in the office of the U.S. Trustee assigned to these chapter 11 cases.

28.    To the extent that I have been able to ascertain to date that Moelis has been engaged within the last three years or is currently engaged by any of the Potential Parties in Interest (or their affiliates, as the case may be) in matters unrelated to these cases, such facts are disclosed on Schedule 2 attached hereto. Schedule 2 also sets forth certain other relationships Moelis has with certain Potential Parties in Interest. In addition to the facts disclosed on Schedule 2, Moelis may in the future be engaged by parties that are or may become parties in interest in these cases. As these cases progress, new parties may become parties in interest in these cases and similarly, Moelis may have been engaged, may be currently engaged, and may in the future be engaged by such new parties in interest in matters unrelated to these chapter 11 cases. Also, Moelis may have engaged or had mutual clients with, may currently engage or have mutual clients with, and may in the future engage or have mutual clients with certain law firms, financial advisors, accounting firms, and other professionals that are Potential Parties in Interest or may become parties in interest, all in matters unrelated to these cases. In addition, Moelis may have also been engaged by, be currently engaged by, or in the future be engaged by persons who are creditors or

13

shareholders of the Debtors, otherwise have a business relationship with the Debtors, or who are competitors or customers of the Debtors.  Potential Parties in Interest, persons that may become parties in interest in these cases, and persons that have business relationships with the Debtors, are competitors of the Debtors, or that are customers of the Debtors may be:  (a) parties in interest in other bankruptcy cases where Moelis is acting as investment banker or financial advisor to the debtors or to other parties in interest therein; or (b) may be affiliates of or creditors of persons who Moelis may have been engaged, is currently engaged, or may in the future be engaged by.  In the ordinary course of its business, Moelis may also purchase services or products from Potential Parties in Interest and other persons that are or may become parties in interest in these chapter 11 cases.

29.    Given the large number of parties in interest in these chapter 11 cases, despite the efforts described above to identify and disclose Moelis' relationships with parties in interest in these chapter 11 cases, Moelis is unable to state with certainty that every client relationship or other connection has been disclosed.  In particular, among other things, Moelis may have relationships with persons who are beneficial owners of parties in interest and persons whose beneficial owners include parties in interest or persons who otherwise have relationships with parties in interest.  Moreover, Moelis' employees may have relationships with Potential Parties in Interest, persons that may become parties in interest in these cases, and/or persons that have business relationships with the Debtors, are competitors of the Debtors, or are customers of the Debtors.  Continued inquiry will be made following the filing of the Application, on a periodic basis, with additional disclosures to this Court if necessary or otherwise appropriate.

30.    Moelis Asset Management ("MAM") is an asset management holding company that is controlled by Kenneth Moelis, who also controls Moelis.  MAM holds interests

in various funds, including private equity, credit investments, direct lending and collateralized loan obligations funds. These funds may hold investment positions in various entities from time-to-time, some of which may be parties in interest in these chapter 11 cases. MAM and its subsidiaries are operated in separate legal and operating entities from Moelis and its financial advisory affiliates. MAM and its subsidiaries are separated from Moelis and its financial advisory affiliates by a compliance information barrier that prevents (a) an employee of Moelis and its financial advisory affiliates from disclosing non-public information concerning the Debtors or these cases to any employee of MAM or its subsidiaries, and (b) an employee of MAM or its subsidiaries from disclosing non-public information concerning an investment of a MAM subsidiary to an employee of Moelis or its financial advisory affiliates. No employees of MAM or its subsidiaries will work on these cases, and employees of Moelis working on these cases have no involvement in the investment decisions of MAM's subsidiaries. Based on the business separation and compliance information barriers referred to above, I do not believe that the investment activities of MAM's subsidiaries constitute a conflict of interest that would disqualify Moelis from providing services described in the Engagement Letter.

31.     To the best of my knowledge, information, and belief, some of Moelis' present and future employees may have, or may in the future have, personal investments in funds or other investment vehicles over whose investment decisions such employees have no input or control. Such entities may have made, or may in the future make, investments in the claims or securities of the Debtors, or those of their creditors or other parties in interest in these chapter 11 cases.

32.     Moelis will not share any compensation to be paid by the Debtors in connection with services to be performed after the Petition Date with any other person, other than

other principals and employees of Moelis, to the extent required by section 504 of the Bankruptcy Code.  In the ordinary course of its business, Moelis regularly retains the services of senior advisors with specific industry or other expertise to supplement the investment banking and financial advisory services offered by Moelis' regular employees to Moelis' clients.    Upon Moelis' engagement on a particular assignment, one such senior advisor may be assigned to assist the other Moelis professionals for such engagement.  Such advisor acts under the management of the Moelis Managing Director who retains the lead role and primary responsibility for such assignment.  The fees and expenses of such senior advisor are paid solely by Moelis.

[*The remainder of this page is intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

is true and correct to the best of my knowledge.  Executed on this 20th day of July 2022.

_____

Jared Dermont
Managing Director
Moelis & Company LLC

# SCHEDULE 1

**Potential Parties in Interest**

## List of Schedules

| Schedule | Category |
|----------|----------|
| 1(a) | All Debtors |
| 1(b) | Current and Former Affiliates |
| 1(c) | Current Directors and Officers |
| 1(d) | Former Directors and Officers |
| 1(e) | Significant Equityholder |
| 1(f) | Top 50 Unsecured Creditors |
| 1(g) | Customers |
| 1(h) | Banks |
| 1(i) | Lenders |
| 1(j) | Vendors |
| 1(k) | Contract Parties |
| 1(l) | Landlords |
| 1(m) | Insurance |
| 1(n) | Bankruptcy Professionals |
| 1(o) | Taxing Authorities / Government / Regulatory Agencies |
| 1(p) | Utilities |
| 1(q) | Litigation |
| 1(r) | U.S. Trustee Personnel, Judges, and Court contacts for the Southern District of New York |
| 1(s) | Potential M&A Transaction Counterparties |
| 1(t) | Ordinary Course Professionals |

**(a) All Debtors**

Voyager Digital, LLC
Voyager Digital Holdings, Inc.
Voyager Digital Ltd.

## (b) Current and Former Affiliates

LGO SAS France
Voyager Digital Brokerage Ltd. Canada
Voyager Digital Brokerage Canada Ltd. Canada
HTC Trading, Inc. Cayman Islands
Voyager European Holdings ApS Denmark
Voyager Europe France
Voyager IP, LLC USA Delaware
Voyager Digital, LLC USA Delaware
Voyager Digital NY LLC USA Delaware
VYGR Holdings, LLC USA Delaware
VYGR Management LLC USA Delaware
Coinify Financial Services ApS Denmark
Coinify Technologies ApS Denmark
Coinify Ltd. United Kingdom
Coinify Global Solutions Inc. USA Delaware
Coinify Payments OU Estonia

### (c) Current Directors and Officers

Stephen Ehrlich
Philip Eytan
Krisztian Toth
Jennifer Ackart
Glenn Stevens
Brian Brooks
Ashwin Prithipaul
Evan Psaropoulos
Marshall Jensen
David Brosgol
Scott Vogel
Matt Ray
Tim Pohl
Jill Frizzley
Michael Legg
Daniel Costantino
Janice Barrilleaux
Pam Kramer
Gerard Hanshe
Rakesh Gidwani
Mark Egert

### (d) Former Directors and Officers

Jeffrey B. Lightfoot
Erin Walmesley
Victor Hugo
Gaspard Aupepin de Lamothe Dreuzy
Jarrett Lilien
Guy Elliott
Serge Kreiker
Shingo Lavine
Lewis Bateman
Brandi Reynolds
Akbar Ladhani
Jordana Keslassy

### (e) Significant Equityholder

Alameda Research Ventures LLC

## (f)  Top 50 Unsecured Creditors

Alameda Research
[CONFIDENTIAL]

## (g) Customers

[CONFIDENTIAL]

**(h) Banks**

Metropolitan Commerical Bank
Signature Bank
Bank of Montreal
BMO
Silvergate Bank

**(i)  Lenders**

Three Arrows Capital Ltd.
Alameda Research Ltd.
Alameda Ventures Ltd
Genesis Global Capital, LLC
Galaxy Digital LLC
BitGo Prime, LLC
Anchorage Lending CA, LLC
Anchorage Digital Bank N.A.
Tesseract Group Oy

**(j)  Vendors**

Accretive Capital dba Benzinga
Accura Advokatpartnerselskab
Accurate Staffing Solutions Corp.
Actimize, lnc.
Ada Support Inc.
Adobe
Advokaadibüroo COBALT OÜ (COBALT Law firm)
Aiven
Alejandro Benabe
Ally Watt
Amalgamated Suncoast Portfolio LLC (Charlie Shrem)
Amazon Web Services
Amazon Web Services, Inc
American Airlines
Anthony Duclair
Aon Consulting Inc.
App.bitrise.io
Apple
Apple Inc.
Apple Search Ads
Appsflyer
Arrow Search Partners
Ashtyn Davis
Atlassian
Authentic8, Inc.
Ba Int - Usd
Baker & McKenzie LLP
Barefoot LLC
Bateman Capital Inc
Beekman Social LLC
Behmer & Blackford LLP
Berger Singerman LLP
BetterInvesting
Beutler Enterprises Inc d/b/a Beutler Ink
Beyond Studios
Big Outdoor Holdings, LLC
BitGo, Inc.
Blackwired (US), Inc.
Blockchain Association
Blockdaemon, Inc.
Bloomberg Finance L.P.
BPM LLP
Brill Advisors, LLC
British Airways
Broadridge
BTC Media
Buddakan

Campbells LLP
Canada Revenue Agency
Carbone
Carbone NYC
CC API
CC Data
CCM Advisory LLC
CDW, LLC
Certified Kernel Tech LLC
Chandkumar R Ramnarine
Chandler Belk
Chord Advisors LLC
Chris Gronkowski
Christen Westphal
Christopher Gronkowski(DBA:G13 Endorsements)
Citigate Dewe Rogerson Ltd
Cloud Posse, LLC
Cloudflare, Inc.
CNW Group Ltd.
Cockroach Labs, Inc.
ColorArt
Complex Sports & Entertainment
Computershare
Consensus 2022
CorCom LLC
Cordell Ratzlaff
Crypto Rating Council
CSC (Corporation Service Company)
CXG Holdings, Inc.
Cyber Job Central, LLC
Cypress Group Staffing, Inc.
Daniel Gronkowski
Danielle Colaprico
Data.ai Inc. (Formerly Known As App Annie Inc.)
Datadog, Inc.
Daversa Partners
David Helman
Day Pitney LLP
Delta Air Lines
Delta Airlines
Devexperts Sofia Ltd.
Digital Niche Agency
Distinguished Search LLC
Docker Inc.
Donnelley Financial Solutions Canada Corporation
Dorian Finney-Smith
Dropbox

Dwight Powell
Elasticsearch, Inc
Elevate Brand Marketing
Endeavor Parent, LLC (dba. IMG Models,LLC)
Essential Accessibility Inc
Estelle Johnson
Eva Yuen
Exzac Inc. dba Matrix-IFS
Fastly, Inc.
Figma
Find Your Happy LLC
Fivetran
Fivetran Inc.
Fort Capital Ontario Inc.
Fragomen, Del Rey, Bernsen & Loewy, LLP
Frank Ntilikina
Frankfurt Kurnit Klein & Selz, P.C.
Freshworks
Fundamental Research Corp.
Fusion of Ideas, Inc
G Suite
Github
Github, Inc.
GLENDALE SECURITIES INC.
Glenn Gronkowski
Glushon Sports Management
Goodbay Technologies
GoodHire
Google Ads
Google Cloud
Google G Suite
Google, LLC.
Gordon Gronkowski
Gordon Gronkowski Jr
Gravitational, Inc.
Greenhouse Software, Inc.
Greg Malocca
HackerRank
HappyFunCorp LLC
HardHead Marketing
HiFi Project Inc.
Hireclout, Inc
Hotjar Limited
Impact Tech, Inc
Independent Trading Group (ITG) Inc.
Indianapolis Motor Speedway
Infinite Agency, LLC
Infinite IP Corporation
Infinity Consulting Solutions, Inc

Intuit
IPQualityScore
IQTalent Partners Inc
Ironclad, Inc
Isaiah Stone
Iterable, Inc
JA Visual Solutions LLC
Jackson Lewis P.C.
Jalen Brunson
JDI Studio LLC
Jess McDonald
JetBlue Airways
JetBrains
JFrog INC
Jivaro Professional Headhunters, LLC
Kate Leavell Companies LLC
Kauling Racing, Inc
Kcsa Strategic Communications
Ketchum Inc.
Kforce Inc
KnowBe4 Inc.
Korn Ferry (US)
Koto Studio LLC
Kristen Hamilton
La Cantera Resort & Spa
Landon Cassill
Las Vegas Motor Speedway
Lastpass
LaunchDarkly
Laurel Hill Advisory Group Company
Learfield Communications, LLC
Levin Group Limited
Lindsey Harris
LogMeIn
LogMeIn USA, Inc.
Loyalist, LLC
MaestroQA, Inc.
Major, Lindsey & Africa, LLC
Marcum LLP
Market One Media Group Inc.
Market Rebellion, LLC
Marla K Knapp
Marquez Valdes-Scantling
Mary Kratka
Maximilian Kleber
Maxx Management LLC
McCarter & English, LLP
Medium Rare Live, LLC
Meghan Klingenberg

Meltwater News US Inc
Merlin Media LLC
MessageBank, LLC
Meta Platforms, Inc.
Michael Gorsuch
Microsoft
Miko Tam
Mintz & Gold LLP
Miro
Mixpanel Inc
Mobile Action Inc.
monday.com Ltd
Money Services Business Association
Motivate Design LLC (dba UX Hires)
Mountain Shadows Resort
MPJ Advisors LLC
MSG Arena LLC
Nasdaq Corporate Solutions, LLC
National Women's Soccer League, LLC
Network Redux
Next for Me Media, Inc.
NMLS
NOBLE Capital Markets
Noble Capital Markets, Inc
Nominis Advisory Ltd
Ogon,LLC
Online Business Systems
OpsGenie
Optimal Workshop
Oracle America, Inc.
Organic Inc.
OTC Markets Group Inc.
Pada Ventures,Inc. d/b/a GroWrk Remote
Paypal Transaction - Innovativec
Pickwick Capital Partners, LLC
Piper Companies, LLC
PitchBook Data, Inc.
Plaid Inc.
Popnoggins Llc
PORTSWIGGER
Postman Basic Monthly
Printed Threads
Proconsul Capital Ltd
Project 1972, Inc.
Publicist Inc.
Quantum Talent Group
Reciprocity, Inc.
Regus
Regus Management Group, LLC
Residence Inn by Marriott Dayton Beavercreek

Roadmunk
Rob Gronkowski
Robert B. Holt
S&S Activewear
Sam Staab
Schiff Hardin LLP
Seeking Alpha
Segment.IO, Inc.
Seprio, LLC
Sheraton Grand Nashville Downtown
Sift Science, Inc.
Slack Technologies, LLC
SLS South Beach
Smart City Networks
Snapchat
Snowflake Inc
Snyk Inc.
Socure Inc.
soona
Spacelift, Inc.
Spencer Dinwiddie
Standout Tech Solutions LLC
Swag.com
Tableau Software, Inc.
Taylor & Gray LLC
Teneo Strategy LLC
Terminal, Inc.
The Block Crypto, Inc.
The Cosmopolitan of Las Vegas
The Friends of Falcon Hockey Inc
The Sports Girls
The Winslow
Toni Pressley
Travelbank
Troutman Pepper Hamilton Sanders LLP
TSX Inc.
Tuple
Twilio
Twitter Online Ads
Twitter, Inc.
Tyler Lussi
Typeform, S.l.
Uber
United Airlines
UPS
Upside Business Travel
User Testing, Inc.
Vijay Kumar B
W Dallas - Victory
W New York - Union Square

Walkers Corporate Limited
Wall Street Dead aHead Networking LLC
Weisman Tech Law LLC
WeWork
Whistler Search Partners, LLC
WilliamsMarston LLC
Willis Towers Watson PLC
WINJIT INC
Wrike, Inc.
Zapier
Zendesk, Inc
ZeroFOX, Inc.

## (k) Contract Parties

Copper Technologies (UK) Limited
Chainalysis Inc.
Amazon
Cumberland DRW LLC
Dallas Basketball Limited (Dallas Mavericks)
DV Chain, LLC
Fireblocks Ltd.
Fireblocks Inc.
JSCT, LLC (Jane Street)
Tai Mo Shan Limited
Landon Cassill, Inc.
Ledger Technologies INC
Gronk Endorsements LLC
Dinwiddie, Inc.
Talos Trading, Inc.
ThoughtWorks, Inc.
FiCentive, Inc.
Usio, Inc.
Wintermute Trading Ltd
Celsius

**(l)  Landlords**

WeWork Inc.
Shared Office Space with Fasken Martineau DuMoulin, LLP
Regus

### (m) Insurance

CAC Specialty Co.
Euclid's Lloyds of London Syndicate
FirstBrook Cassie & Anderson Ltd
Great Midwestern Insurance Co.
Hartford Fire Insurance Company
Hartford Underwriters Insurance Company
MJD3 Associates, LLC.
Relm Insurance Limited
XL Specialty Ins. Company

**(n)  Bankruptcy Professionals**

Kirkland & Ellis LLP
Berkeley Research Group, LLC (BRG)
Stretto
Fasken Martineau DuMoulin LLP
Deloitte Tax LLP / Deloitte & Touche
Grant Thornton US / Grant Thornton LLP
Valuation Research Corporation
Quinn Emanuel Urquhart & Sullivan LLP

**(o) Taxing Authorities / Government / Regulatory Agencies**

State of Alabama
State of Alaska
State of Arizona
State of Arkansas
State of California
State of Connecticut
State of Delaware
State of Florida
State of Georgia
State of Idaho
State of Illinois
State of Indiana
State of Iowa
State of Kansas
State of Kentucky
State of Louisiana
State of Maine
State of Maryland
State of Michigan
State of Minnesota
State of Mississippi
State of Nebraska
State of New Hampshire
State of New Jersey
State of New Mexico
State of North Carolina
State of North Dakota
State of Oklahoma
State of Oregon
State of Pennsylvania
State of Rhode Island
State of South Carolina
State of Tennessee
State of Texas
State of Utah
State of Virginia
District of Columbia – Office of Tax and Revenue
State of West Virginia
State of Wisconsin

**(p) Utilities**

WeWork Inc.
Verizon Wireless
Phone.com

## (q) Litigation

Mark Cassidy

Jordan Berk

U.S. Bank Nat'l Ass'n

State of Indiana Securities Division

Commonwealth of Kentucky Department of Financial Institutions

State of New Jersey Bureau of Securities

State of Oklahoma Department of Securities

State of Alabama Securities Commission

Texas State Securities Board

State of Vermont Department of Financial Regulation

State of Washington Department of Financial Institutions Securities Division

Securities Commissioner of South Carolina

State Of California Business, Consumer Services and Housing Agency Department of Financial Protection and Innovation

**(r) U.S. Trustee Personnel, Judges, and Court contacts for the Southern District of New York**

Linda A. Riffkin
Susan Arbeit
Mark Bruh
Shara Cornell
Benjamin J. Higgins
Brian S. Masumoto
Richard C. Morrissey
Andrea B. Schwartz
Paul K. Schwartzberg
Shannon Scott
Tara Tiantian
Andy Velez-Rivera
Annie Wells
Greg M. Zipes
William K. Harrington
Chief Judge Martin Glenn
Judge Lisa G. Beckerman
Judge Shelley C. Chapman
Judge Robert D. Drain
Judge James L. Garrity, Jr.
Judge David S. Jones
Judge Sean H. Lane
Judge Cecelia G. Morris
Judge Michael E. Wiles

**(s)  Potential M&A Transaction Counterparties**

[CONFIDENTIAL]

**(t)  Ordinary Course Professionals**

Teneo
Paul Hastings LLP
Jenner & Block LLP
Lowenstein Sandler LLP
Troutman Pepper Hamilton Sanders LLP
Berger Singerman LLP
Day Pitney LLP
Mintz & Gold LLP
Walkers Corporate Limited
Jackson Lewis P.C.
Frankfurt Kurnit Klein & Selz, P.C.
Kramer Levin Naftalis & Frankel LLP
Seyfarth Shaw LLP
CSC (Corp Service Company)
Conyers Dill & Pearman

## **SCHEDULE 2**

### **Relationship with Potential Parties in Interest**

Moelis (and its financial advisory affiliates) has been engaged within the last three years or is currently engaged by the following Potential Parties in Interest (or one or more of their affiliates, as the case may be) in matters unrelated to these chapter 11 cases (including where the Potential Party in Interest was only a member of an official or an ad hoc creditor committee or an equity committee):

VENDORS – CURRENT CLIENTS AND/OR AFFILIATES
- Aon Consulting, Inc.

VENDORS – PAST CLIENTS AND/OR AFFILIATES
- Canada Revenue Agency
- Learfield Communications, LLC
- United Airlines

TAXING AUTHORITIES – PAST CLIENTS AND/OR AFFILIATES
- State of South Carolina

POTENTIAL M&A TRANSACTION COUNTERPARTIES – CURRENT CLIENTS AND/OR AFFILIATES

- [CONFIDENTIAL]

POTENTIAL M&A TRANSACTION COUNTERPARTIES – PAST CLIENTS AND/OR AFFILIATES

- [CONFIDENTIAL]

LITIGATION PARTIES – PAST CLIENTS AND/OR AFFILIATES
- Securities Commissioner of South Carolina
- State of New Jersey Bureau of Securities
- U.S Bank Nat'l Ass'n

## **EXHIBIT B**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF MOELIS & COMPANY LLC AS INVESTMENT BANKER, CAPITAL MARKETS ADVISOR, AND FINANCIAL ADVISOR EFFECTIVE AS OF THE PETITION DATE

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"):  (a) authorizing the employment and retention of Moelis & Company LLC ("Moelis") to serve as the Debtors' investment banker, capital markets advisor, and financial advisor effective as of the Petition Date pursuant to sections 327(a) and 328(a) of the Bankruptcy Code; (b) approving the provisions of the engagement letter between Moelis and the Debtors, dated as of June 20, 2022 ("Engagement Letter"), attached hereto as **Exhibit 1**, including the compensation arrangements and indemnification, contribution, and reimbursement provisions set forth therein; (c) modifying the timekeeping requirements of Local Rule 2016-1, the Amended Guidelines, the U.S. Trustee Guidelines and any other applicable procedures and orders of the Court in connection with Moelis' engagement; and (d) granting such other relief as is just and proper, all as more fully set forth in the Application; and upon the Dermont Declaration; and this Court having jurisdiction over this

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application or the Engagement Letter, as applicable.

matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012; and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. §157(b); and this Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the relief sought in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest, and that the legal and factual bases set forth in the Application, the Dermont Declaration, and at the Hearing establish just cause for the relief granted herein; and the Court being satisfied, based upon the representations made in the Application and the Dermont Declaration that (a) Moelis does not hold or represent an interest adverse to the Debtors' estates, and (b) Moelis is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code as required by section 327(a) of the Bankruptcy Code; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Application is granted as set forth in this Order, and the provisions set forth in the Engagement Letter (and all attachments thereto) are hereby approved, to the extent provided herein and except as otherwise expressly modified herein to the contrary.

2.      In accordance with sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1, the Debtors are authorized to employ and retain Moelis as their investment banker, capital markets advisor, and financial advisor in these chapter 11 cases in accordance with the terms and conditions set forth in the Engagement Letter, as modified herein, to pay fees and reimburse expenses, and to provide indemnification, contribution, and/or reimbursement to Moelis on the terms and at the times specified in the Engagement Letter as modified herein, effective as of the Petition Date.

3.      Moelis shall be compensated for fees and reimbursed for reasonable and documented out-of-pocket expenses by the Debtors in accordance with the terms of the Engagement Letter, as modified herein, and all fees and out-of-pocket expense reimbursements to be paid to Moelis, including without limitation the Monthly Fees, the Capital Transaction Fee, the Sale Transaction Fee, and the Restructuring Fee, shall be subject to section 328(a) of the Bankruptcy Code, except as set forth herein.

4.      Moelis is authorized to apply the Expense Retainer to any unbilled or otherwise remaining expenses that Moelis becomes aware of during its ordinary course billing review and reconciliation.  Moelis shall apply any remaining amounts of the Expense Retainer as a credit towards postpetition fees and expenses after such postpetition fees and expenses are approved pursuant to the first order of the Court awarding fees and expenses to Moelis.

5.      Notwithstanding anything to the contrary contained herein or in the Application and/or Engagement Letter, Moelis shall file interim and final fee applications for allowance of compensation and reimbursement of reasonable and documented out-of-pocket expenses pursuant to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Amended Guidelines, the U.S. Trustee Guidelines and any other procedures or orders of the

Bankruptcy Court; *provided, however*, the U.S. Trustee retains all rights to respond or object to Moelis' interim and final applications for compensation (including without limitation the Monthly Fees, the Capital Transaction Fee, the Sale Transaction Fee, and the Restructuring Fee) and reimbursement of out-of-pocket expenses pursuant to section 330 of the Bankruptcy Code, and the Court retains jurisdiction to consider the U.S. Trustee's response or objection to Moelis' interim and final fee applications pursuant to section 330 of the Bankruptcy Code; *provided, further*, that "reasonableness" shall be evaluated by comparing (among other things) the fees payable in these chapter 11 cases to fees paid to comparable investment banking firms with similar experience and reputation offering comparable services in other chapter 11 cases and shall not be evaluated solely on an hourly or length-of-case based criteria.

6.     Notwithstanding anything to the contrary in the Application, the Engagement Letter or herein, the requirements of the Bankruptcy Rules, the Local Rules, the Amended Guidelines, the U.S. Trustee Guidelines, and any other procedures or orders of the Court are hereby modified such that Moelis' restructuring professionals, with the exception of clerical and administrative staff, shall be required only to keep summary time records of the services they have performed in one hour increments, Moelis' non-restructuring professionals and personnel in administrative departments (including legal) shall not be required to keep time records, Moelis' professionals shall not be required to keep time records on a project category basis, and Moelis shall not be required to provide or conform to any schedule of hourly rates.

7.     In the event that Moelis seeks reimbursement from the Debtors for attorneys' fees and expenses pursuant to the Application and the Engagement Letter, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Moelis' own applications, both interim and final, and such invoices and time records shall be subject to the approval of the

4

Court pursuant to section 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code, and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code. Attorneys' fees and/or expenses reimbursed under the Engagement Letter shall be limited to those expended in representing Moelis in retention and fee application matters. For the avoidance of doubt, the preceding sentence does not apply to, and in no way limits, the provisions with respect to reimbursement of attorneys' fees and/or expenses set forth in Annex B to the Engagement Letter with respect to indemnification.

8.     The indemnification, exculpation, contribution, and reimbursement provisions included in Annex B to the Engagement Letter are approved, subject during the pendency of these chapter 11 cases to the following modifications:

    a.  Subject to the provisions of subparagraphs (b), (c), and (d) below, the Debtors are authorized to indemnify, and shall indemnify, the Indemnified Persons (as defined in the Engagement Letter) in accordance with the Engagement Letter and to the extent permitted by applicable law, for any claim arising from, related to, or in connection with Moelis' performance of the services described in the Engagement Letter;

    b.  All requests by Indemnified Persons for the payment of indemnification as set forth in the Engagement Letter shall be made by means of an application to the Bankruptcy Court and shall be subject to review by the Bankruptcy Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter; *provided*, *however*, that in no event shall any Indemnified Person be indemnified to the extent that a court determines by final order that such person acted in its own bad-faith, self-dealing, or breach of fiduciary duty (if any), gross negligence, or willful misconduct;

    c.  In no event shall any Indemnified Person be indemnified to the extent the Debtors or a representative of the estate asserts a claim for, and the Court determines by final order that such claim arose out of, such Indemnified Person's own bad-faith, self-dealing, or breach of fiduciary duty (if any), gross negligence, or willful misconduct; and

    d.  If Moelis or any Indemnified Person seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the

Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Moelis' own applications, both interim and final, and such invoices and time records shall be subject to the U.S. Trustee's Guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

9.     Moelis shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

10.     Such services other than set forth in the Application that the Debtors may request that Moelis provide during the course of these chapter 11 cases, and as agreed to by Moelis, shall be subject to separate application and order of this Court.

11.     The Debtors and Moelis are authorized and empowered to take all actions necessary to implement the relief granted in and pursuant to this Order.

12.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

13.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

14.     Notwithstanding any provision to the contrary in the Application or the Engagement Letter, the Bankruptcy Court shall retain jurisdiction to hear and to determine all matters arising from or related to implementation, interpretation, or enforcement of this Order.

15.     To the extent that there is any inconsistency between the Engagement Letter, the Application, the Dermont Declaration, and this Order, the provisions of this Order shall apply.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT 1**

## **Engagement Letter**

June 20, 2022

<u>CONFIDENTIAL</u>

Voyager Digital Holdings, Inc.
33 Irving Place 3rd Floor
New York, NY 10003

Attention: Stephen Ehrlich, Chief Executive Officer

Dear Mr. Ehrlich:

This agreement confirms that, since June 16, 2022, Voyager Digital Holdings, Inc. (together with its affiliates and direct and indirect subsidiaries listed on *Annex A*, the "<u>Company</u>") has engaged Moelis & Company LLC ("<u>Moelis</u>") to act as the Company's financial advisor, capital markets advisor and investment banker in connection with the Company's proposed Restructuring, Sale Transaction or Capital Transaction (each as defined below).

"<u>Restructuring</u>" means any restructuring, reorganization, repayment, refinancing, rescheduling or recapitalization of all or a material portion of the liabilities of the Company (including its direct or indirect subsidiaries), however such result is achieved, including, without limitation, through a plan of reorganization or liquidation (a "<u>Plan</u>") confirmed in connection with a case (a "<u>Bankruptcy Case</u>") commenced by or against the Company or any of its subsidiaries or affiliates under title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), an exchange offer or consent solicitation, covenant relief, a rescheduling of debt maturities, a change in interest rates, a settlement or forgiveness of debt, a conversion of debt into equity, or other amendments to the Company's debt instruments, an issuance of new securities, raising of new debt or equity capital, or a sale, disposition or other transfer (regardless of form), including to existing creditors of the Company, of all or a significant portion of the equity, interests, assets, properties, cash flows or businesses of the Company.

"<u>Sale Transaction</u>" means (a) the sale, disposition or other transfer (in one or a series of transactions) of a significant portion of (i) the equity securities of the Company, or (ii) the assets, properties or businesses of the Company; or, (b) the merger, consolidation, spin-off, split-off, joint venture, partnership, reverse merger or other business combination transaction involving the Company.

"<u>Capital Transaction</u>" means a transaction in which the Company (or any entity formed to acquire the business or assets of the Company) raises or issues any (a) secured or unsecured debt (including, without limitation, any asset-backed debt, or debtor-in-possession financing in connection with a Bankruptcy Case); (b) equity interests (including, without limitation, preferred stock or common stock) or equity-linked interests (including convertible debt); (c) hybrid capital; or (d) options, warrants or other rights to acquire equity interests; provided, however, that the Company's revolving line of credit with Alameda Research announced on June 17, 2022, shall not be considered a Capital Transaction for purposes of this agreement.

A "<u>Transaction</u>" means either a Restructuring, a Sale Transaction and/or a Capital Transaction, as the context requires.

1. As part of our engagement, Moelis will if appropriate and requested:

DocuSign Envelope ID: AC5FD801-9845-456C-8E4D-66A664D64398

MOELIS & COMPANY

(a)     assist the Company in reviewing and analyzing the Company's results of operations, financial condition and business plan;

(b)     assist the Company in reviewing and analyzing any potential Restructuring, Sale Transaction or Capital Transaction;

(c)     assist the Company in negotiating a Restructuring, Sale Transaction or Capital Transaction;

(d)     advise the Company on the terms of securities it offers in a potential Capital Transaction.

(e)     advise the Company on its preparation of information memoranda for a potential Sale Transaction or Capital Transaction (each, an "Information Memo");

(f)     assist the Company in contacting potential Acquirers or purchasers of a Capital Transaction ("Purchasers") that Moelis and the Company agree are appropriate, and meet with and provide them with the Information Memo and such additional information about the Company's assets, properties or businesses that is acceptable to the Company, subject to customary business confidentiality agreements; and

(g)     provide such other financial advisory and investment banking services in connection with a Restructuring, Sale Transaction or Capital Transaction as Moelis and the Company may mutually agree upon.

Please note that Moelis does not provide legal, tax, accounting or actuarial advice. This agreement is not a commitment, express or implied, on the part of Moelis to purchase or place the Capital Transaction or any other financing and it is acknowledged that Moelis' services with respect to a Capital Transaction will be made on a reasonable best efforts basis. Moelis' obligations under this agreement with respect to a Capital Transaction are subject to, among other things: (i) satisfactory completion of its due diligence review and (ii) satisfactory market conditions.

2.   (a) As compensation for our services hereunder, the Company agrees to pay Moelis the following nonrefundable cash fees:

Retainer Fee

(i)     Promptly after execution of this agreement, a retainer fee of $600,000 (the "Retainer Fee"). The Retainer Fee shall be offset, to the extent previously paid, against the first 3 Monthly Fees (as defined below).

Monthly Fee

(ii)     During the term of this agreement, a fee of $200,000 per month (the "Monthly Fee"), payable in advance of each month. The Company will pay the first Monthly Fee immediately upon the execution of this agreement, and all subsequent Monthly Fees prior to each monthly anniversary of the date of this agreement. Whether or not a Restructuring, Sale Transaction or Capital Transaction occurs, Moelis shall earn and be paid the Monthly Fee every month during the term of this agreement. 50% of the Monthly Fee shall be offset, to the extent previously paid, against the first Sale Transaction Fee and the Restructuring Fee (each as defined below).

DocuSign Envelope ID: AC5FD801-9845-456C-8F4D-66A664D64398

**MOELIS & COMPANY**

Restructuring Fee

      (iii)      At the closing of a Restructuring, a fee (the "Restructuring Fee") of $11,000,000. The Company will pay a separate Restructuring Fee in respect of each Restructuring in the event that more than one Restructuring occurs.

Sale Transaction Fee

      (iv)      At the closing of a Sale Transaction, a non-refundable cash fee (the "Sale Transaction Fee") of $12,000,000.

In the event of a Sale Transaction that is consummated pursuant to Section 363 of the Bankruptcy Code, such Sale Transaction shall trigger a Restructuring Fee. To the extent a Transaction is both a Sale Transaction and a Restructuring Transaction, the Company shall pay the Restructuring Fee.

Capital Transaction Fee

      (v)      At the closing of a Capital Transaction, a non-refundable cash fee (the "Capital Transaction Fee") of:

      (a) 4.00% of the aggregate gross amount or face value of capital Raised (as defined below) in the Capital Transaction as equity, equity-linked interests, options, warrants or other rights to acquire equity interests, plus

      (b) 2.00% of the aggregate gross amount of debt obligations and other interests Raised in the Capital Transaction.

The Company will pay a separate Capital Transaction Fee in respect of each Capital Transaction in the event that more than one Capital Transaction occurs. "Raised" includes the amount committed to the Company, whether or not the Company draws the full amount, and whether or not the company applies such amounts to refinance any of its obligations.

The fees set forth in Section 2(a)(iii), (iv), and (v) shall be referred to herein as the "Transaction Fees". The Company agrees that it will pay the applicable Transaction Fee(s) for each Transaction in accordance with the terms hereof.

In connection with a Transaction intended to be consummated in connection with a pre-packaged or pre-arranged Plan, the applicable Transaction Fee(s) shall be earned upon the execution of a definitive agreement with respect to such Plan; provided that if the Plan contemplating such Transaction(s) does not become effective, then Moelis shall credit the applicable Transaction Fee(s) against any future Transaction Fee that becomes due and payable upon the closing of another Transaction.

If, at any time prior to the end of the Tail Period (as defined below), the Company consummates any Restructuring, Sale Transaction or Capital Transaction or enters into an agreement (or a Plan is filed) regarding any Restructuring, Sale Transaction or Capital Transaction and a Restructuring, Sale Transaction or Capital Transaction is subsequently consummated, then the Company (or its bankruptcy estates) shall pay Moelis the applicable fee(s) specified in Section 2(a) above immediately upon the closing of any such

MOELIS & COMPANY

Transaction(s). The "<u>Tail Period</u>" shall end (i) in the case of any Restructuring, Sale Transaction or Capital Transaction consummated out-of-court, 12 months following the expiration or termination of this agreement or (ii) otherwise 18 months following the expiration or termination of this agreement.

(b) Whether or not the Company consummates a Restructuring, Sale Transaction or Capital Transaction, the Company will reimburse Moelis for all of its reasonable and documented out-of-pocket expenses as they are incurred in entering into and performing services pursuant to this agreement. In connection therewith, the Company shall pay Moelis upon execution of this agreement and maintain thereafter a $25,000 expense advance, the unused portion of which Moelis shall return to the Company following termination of this agreement. Moelis agrees to provide the Company with reasonable support for its expenses at the Company's request or at the Bankruptcy Court's direction.

(c) The Company's obligation to pay any fees or expenses set forth herein or to pay any amounts under **Annex B** hereto are not subject to any reduction by way of setoff, recoupment or counterclaim. All fees, expenses and any other amounts payable hereunder are payable in U.S. dollars, free and clear of any withholding taxes or deductions, to the bank account set forth on **Schedule 1**.

(d) If Moelis is required to render services not set forth in this agreement, including, without limitation, producing documents, being deposed, providing testimony, relating to this agreement or the transactions contemplated by this agreement, the Company will pay Moelis additional fees to be mutually agreed for such services, plus reasonable and documented out-of-pocket costs and expenses related thereto.

(e) Moelis will make a substantial commitment of professional time and effort hereunder, which may foreclose other opportunities for it. Moreover, the actual time and effort required for the engagement may vary substantially from time to time. In light of the numerous issues that may arise in engagements such as this, Moelis' commitment of the time and effort necessary to address the issues that may arise in this engagement, Moelis' expertise and capabilities that the Company will require in this engagement, and the market rate for professionals of Moelis' stature and reputation, the parties agree that the fee arrangement provided herein is just and reasonable, fairly compensates Moelis, and provides the requisite certainty to the Company.

3.  If a Bankruptcy Case is commenced:

(a) The Company will use its reasonable best efforts to seek a final order of the Bankruptcy Court authorizing our employment as the Company's financial adviser under this agreement pursuant to, and subject to the standards of review set forth in, section 328(a) of the Bankruptcy Code (and not subject to the standards of review set forth in section 330 of the Bankruptcy Code), <u>nunc pro tunc</u> to the date of the filing of the Bankruptcy Case. The retention application and any order authorizing Moelis' retention must be acceptable to Moelis. Prior to commencing a Bankruptcy Case, the Company will pay all fees then earned and payable and will reimburse Moelis for all expenses that Moelis incurred prior to commencement in accordance with this agreement.

(b) Moelis will have no obligation to provide services unless the Bankruptcy Court approves Moelis' retention in a final non-appealable order acceptable to Moelis under section 328(a) of the Bankruptcy Code within 60 days following the filing of a voluntary chapter 11 case or the entry of an order for relief in any involuntary chapter 11 case. If neither the Company nor Moelis obtain such an order within such 60-day period, or such order is later reversed, vacated, stayed or set aside for any reason, Moelis may terminate this agreement, and the Company shall reimburse Moelis for all fees owing and expenses incurred prior to the date of termination, subject to the requirements of the Bankruptcy Rules, and Moelis shall be

DocuSign Envelope ID: ACFED801-9845-456C-8E4D-66A664D64398

MOELIS & COMPANY

entitled to a contingent claim with respect to any fees that become payable under the last paragraph of Section 2(a).

(c)  Moelis' post-petition compensation, reasonable and documented out-of-pocket expense reimbursements and payment received pursuant to the provisions of **Annex B** shall be entitled to priority as expenses of administration under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect pursuant to one or more financing orders entered by the Bankruptcy Court.  Following entry of an order authorizing our retention, the Company will assist Moelis in preparing, filing and serving fee statements, interim fee applications, and a final fee application.  The Company will support Moelis' fee applications that are consistent with this agreement in papers filed with the Bankruptcy Court and during any Bankruptcy Court hearing. The Company will pay promptly our fees and expenses approved by the Bankruptcy Court and in accordance with the Bankruptcy Rules.

(d)  The Company will use its reasonable best efforts to ensure that, to the fullest extent permitted by law, any confirmed plan of reorganization or liquidation in the Bankruptcy Case contains typical and customary releases (both from the Company and from third parties) and exculpation provisions releasing, waiving, and forever discharging Moelis, its divisions, affiliates, any person controlling Moelis or its affiliates, and their respective current and former directors, officers, partners, managers, members, agents, representatives and employees from any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities related to the Company or the engagement described in this agreement.

The terms of this Section 3 are solely for the benefit of Moelis, and may be waived, in whole or in part, only by Moelis.

4.  The Company will furnish Moelis with all information concerning the Company and, to the extent available to the Company, the Acquirer as Moelis reasonably deems appropriate (collectively, the "Information") to execute this engagement and will provide Moelis with access to the Company's officers, directors, employees, accountants, counsel and other representatives of the Company and, as practicable, those of the Acquirer.  To the best of the Company's knowledge, the Information will be true and correct in all material respects and will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading.  The Company will advise Moelis promptly of any material event or change in the business, affairs, condition (financial or otherwise) or prospects of the Company or, to the Company's knowledge, the Acquirer that occurs during the term of this agreement.  In performing our services hereunder, Moelis will be entitled to use and rely upon the Information as well as publicly available information without independent verification. Moelis is not required to conduct a physical inspection of any of the properties or assets, or to prepare or obtain any independent evaluation or appraisal of any of the assets or liabilities of the Company.  Moelis is not evaluating the solvency of any party under applicable laws relating to bankruptcy, insolvency or similar matters.  Moelis will be entitled to assume that financial forecasts and projections the Company or any Acquirer makes available to Moelis have been reasonably prepared on bases reflecting the best currently available estimates and judgments of the management of the Company or such Acquirer, as the case may be, as to the matters covered thereby.  The Company authorizes Moelis to transmit any Information Memos to potential parties to a Sale Transaction or Capital Transaction.  The Company will be solely responsible for the contents of any Information Memo and all other information provided to prospective Purchasers in a Capital Transaction.

DocuSign Envelope ID: AC5FD801-9845-456C-8F4D-66A664D64398

**MOELIS & COMPANY**

Moelis will not disclose to any third party nonpublic Information concerning the Company or the Transaction parties provided to Moelis in connection with this agreement as long as it remains nonpublic, except (i) as otherwise required by subpoena or court order and for private disclosure to our financial regulatory authorities and (ii) Moelis may provide nonpublic Information to prospective Transaction parties as contemplated by this agreement. This paragraph shall terminate one year following the date of this agreement.

The Company represents and warrants to Moelis that the information provided to any prospective purchaser or seller of a security by or on behalf of the Company in any Restructuring, Sale Transaction or Capital Transaction (or any combination thereof), at the closing thereof, taken as a whole, will not contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make the statements contained therein, in light of the circumstances under which they were made, not misleading.

At the closing of a Capital Transaction pursuant to an exemption from registration other than Section 1145 of the Bankruptcy Code, (i) the Company shall be deemed to make all the representations and warranties to Moelis that the Company has made to purchasers of any security, (ii) the Company shall deliver to Moelis an opinion of Company counsel to the effect that the Capital Transaction was exempt from registration under the Securities Act and which shall also include all opinions delivered to the purchasers of any security, (iii) the Company shall deliver to Moelis from each purchaser of securities for Moelis' express benefit a big boy representation in the form of *Annex C* and make the representation and covenant set forth in *Annex C,* and (iv) the Company will also deliver to Moelis copies of such agreements, opinions, certificates and other documents delivered at the closing as Moelis may reasonably request.

5.    The Company will not disclose, summarize or refer to any of Moelis' advice or the terms of this agreement publicly or to any third party without the prior written consent of Moelis. In the event disclosure is required by subpoena or court order, the Company will provide Moelis with reasonable advance notice and permit Moelis to comment on the form and content of the disclosure. Moelis consents to the inclusion of a summary of its valuation in the disclosure statement for a Plan, if required to be included in such disclosure statement; provided that Moelis and its counsel have approved any reference to or summary or description of the valuation in advance.  Moelis may, at our option and expense after announcement of any Transaction, announce or disclose publicly such transaction and Moelis' role in it for marketing purposes, including, without limitation, on Moelis' website, stating that Moelis has acted as financial advisor and/or investment banker, as applicable, to the Company in connection with any Transaction.  If requested by Moelis, the Company shall include a mutually acceptable reference to Moelis in any public announcement of a Restructuring, a Sale Transaction, or a Capital Transaction. Following a public announcement or public confirmation or Company public filing relating to a potential Transaction, Moelis may also announce or disclose publicly its role in the potential Transaction.

6.    Moelis is an independent contractor with the contractual obligations described herein owing solely to the Company. The parties agree that Moelis is not acting as an agent or fiduciary of the Company or any other party, and the Company agrees to not make any claims against Moelis based on an agency or fiduciary relationship. The Company and Moelis agree to the indemnity and other provisions set forth in *Annex B*. Other than the Indemnified Persons, there are no third party beneficiaries of this agreement. The obligations hereunder of the entities comprising the Company shall be joint and several.

7.    Either the Company or Moelis may terminate this agreement upon written notice thereof to the other party.  In the event of any termination, (i) Moelis will continue to be entitled to the fees and expenses

DocuSign Envelope ID: AC5FD801-9845-456C-8E4D-66A664D64398

# MOELIS & COMPANY

that became payable hereunder prior to termination or expiration and (ii) *Annex B*, the last paragraph of Section 2(a) and Sections 3 through 9 shall remain in full force and effect after the completion, termination or expiration of this agreement.

8.    Moelis is an independent investment bank which is engaged in a range of investment banking activities. Certain affiliates of Moelis are engaged in asset management and other activities for their own account and otherwise.  Moelis and its affiliates may have interests that differ from the interests of the Company.  Moelis and its affiliates have no duty to disclose to any party, or use for the benefit of any party, any information acquired in the course of providing services to any other party, engaging in any transaction or carrying on any other businesses.  Moelis' employees, officers, partners and affiliates may at any time own the Company's securities or those of any other entity involved in any transaction contemplated by this agreement.   Moelis recognizes its obligations under applicable securities laws in connection with the purchase and sale of such securities.

Moelis is required to obtain, verify, and record information that identifies each party with whom it does business in a manner that satisfies the requirements of and in accordance with the USA Patriot Act.  Upon request, each of the parties hereto will provide Moelis with information necessary to verify such party's identity for purposes of the USA Patriot Act.

9.    This agreement and any disputes or claims that may arise out of this agreement shall be governed by and construed in accordance with the internal laws of the State of New York, and this agreement embodies the entire agreement and supersedes any prior written or oral agreement relating to the subject matter hereof, and may only be amended or waived in writing signed by both the Company and Moelis. If any part of this agreement is judicially determined to be unenforceable, it shall be interpreted to the fullest extent enforceable so as to give the closest meaning to its intent, and the remainder of this agreement shall remain in full force and effect. Any proceeding arising out of this agreement shall be heard exclusively in a New York state or federal court sitting in the city and county of New York, to whose jurisdiction and forum Moelis and the Company irrevocably submit. Notwithstanding the foregoing, if the Company becomes a debtor under the Bankruptcy Code any dispute or claim relating to or arising out of this agreement shall be heard and determined by the Bankruptcy Court during the pendency of a Bankruptcy Case.  The Company also irrevocably consents to the service of process in any such proceeding by mail to the Company's address set forth above.   This agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement. This agreement shall be binding upon the Company and Moelis and its and our respective successors and permitted assigns. MOELIS AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS CREDITORS AND SECURITY HOLDERS) WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY PROCEEDING ARISING OUT OF THIS AGREEMENT.

*(Signature page follows)*

MOELIS & COMPANY

Moelis is delighted to accept this engagement and looks forward to working with the Company.  Please sign and return the enclosed duplicate of this agreement.  The individuals signing this agreement each represent that he or she is authorized to execute and deliver it on behalf of the entity whose name appears above his or her signature.

Very truly yours,

MOELIS & COMPANY LLC

By: _____
    Name:  Jared Dermont
    Title:  Managing Director

Agreed to as of the date first written above:

VOYAGER DIGITAL HOLDINGS, INC. (ON BEHALF OF ITSELF AND ITS AFFILIATES AND DIRECT AND INDIRECT SUBSIDIARIES LISTED ON ANNEX A)

By: _____
    Name: Stephen Ehrlich
    Title: Chief Executive Officer

8

M O E L I S & C O M P A N Y

## ANNEX A

Voyager Digital Ltd.
Voyager Digital, LLC
LGO SAS
Voyager Europe
Voyager Digital Brokerage Ltd.
Voyager Digital Brokerage Canada, Ltd.
HTC Trading, Inc.
Voyager Digital, LLC
Voyager IP, LLC
Voyager Digital NY LLC
Voyager Digital Ventures LLLC
VYGR Holding, LLC
VYGR Digital Securities, LLC
VYGR Management LLC
Voyager European Holdings ApS
Coinify ApS
Coinify Financial Services ApS
Coinfy Technologies ApS
Coinify Ltd.
Coinify Global Solutions Inc.
Coinify Payments OU

MOELIS & COMPANY

## ANNEX B

In the event that Moelis or its affiliates or any of Moelis' or Moelis' affiliates' respective current or former directors, officers, partners, managers, members, agents, representatives or employees (including any person controlling Moelis or any of its affiliates) (collectively, the "Indemnified Persons") becomes involved in any capacity in any actual or threatened action, claim, suit, investigation or proceeding (an "Action") arising out of, related to or in connection with this agreement or any matter referred to herein (including, without limitation, related matters prior to the date of this agreement), the Company will reimburse such Indemnified Person for the reasonable and documented out-of-pocket costs and expenses (including counsel fees) of investigating, preparing for and responding to such Action or enforcing this agreement, as they are incurred. The Company will also indemnify and hold harmless any Indemnified Person from and against, and the Company each agrees that no Indemnified Person shall have any liability to the Company or its affiliates, or their respective owners, directors, officers, employees, security holders or creditors for, any losses, claims, damages, expenses or liabilities (collectively, "Losses") (A)(i) related to the Company's actions or omissions (or the actions or omissions of the Company's officers, directors, employees and agents other than Moelis) in connection with the agreement or the matters referred to herein), or (ii) related to or arising out of oral or written statements or omissions made or information provided by the Company or its agents in connection with the agreement or the matters referred to herein (including, without limitation, the Information Memo and any other information provided by or on behalf of the Company to any purchaser or seller of a security in any transaction contemplated by the agreement), or (B) otherwise arising out of, related to or in connection with this agreement or Moelis' performance hereunder or any other services or advice the Company requests any Indemnified Person to provide (in each case, including prior to the date of this agreement), except that this clause (B) shall not apply to Losses to the extent such Losses are finally judicially determined to have resulted primarily from the bad faith or gross negligence of such Indemnified Person.

If such indemnification or limitation on liability for any reason is not available or is insufficient to hold an Indemnified Person harmless, the Company agrees to contribute to the Losses in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Company, on the one hand, and by Moelis, on the other hand, with respect to this agreement or, if such allocation is judicially determined to be unavailable, in such proportion as is appropriate to reflect the relative benefits and relative fault of the Company, on the one hand, and of Moelis, on the other hand, and any other equitable considerations; *provided, however,* that, to the extent permitted by applicable law, in no event shall the Indemnified Persons be responsible for amounts that exceed the fees actually received by Moelis from the Company in connection with this agreement. Relative benefits to the Company, on the one hand, and Moelis, on the other hand, with respect to this agreement shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received or proposed to be received by the Company or its security holders, as the case may be, pursuant to the transaction(s), whether or not consummated, contemplated by this agreement bears to (ii) the fees actually received by Moelis in connection with this agreement.

The Company will not without the prior written consent of Moelis (not to be unreasonably withheld), settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate (a "Settlement") any Action or participate in or facilitate a Settlement of any Action in respect of which indemnification is or may be sought hereunder (whether or not an Indemnified Person is a party thereto) unless such Settlement includes a release of each Indemnified Person from any Losses arising out of such Action. The Company will not permit any such Settlement to include a statement as to, or an admission of, fault or culpability by or on behalf of an Indemnified Person without such Indemnified Person's prior written consent. No

DocuSign Envelope ID: ACFED801-9845-456C-8F4D-66A664D64398

MOELIS & COMPANY

Indemnified Person seeking indemnification, reimbursement or contribution under this agreement will, without the Company's prior written consent (not to be unreasonably withheld), agree to the Settlement of any Action.   The Company's obligations set forth herein shall be in addition to any rights that any Indemnified Person may have at law or otherwise.

Prior to effecting any proposed sale, exchange, dividend or other distribution or liquidation of all or substantially all of its assets or any significant recapitalization or reclassification of its outstanding securities that does not explicitly or by operation of law provide for the assumption of the obligations of the Company set forth herein, the Company will notify Moelis in writing of its arrangements for the Company's obligations set forth herein to be assumed by another creditworthy party (for example through insurance, surety bonds or the creation of an escrow) upon terms and conditions reasonably satisfactory to the Company and Moelis.

MOELIS & COMPANY

## ANNEX C

**Big Boy Representation**

The undersigned Purchaser represents and warrants that (i) the Purchaser is a sophisticated institutional accredited investor with extensive expertise and experience in financial and business matters and in evaluating private companies and purchasing and selling their securities; (ii) the Purchaser has conducted and relied upon its own due diligence investigation of the Company and its own in-depth analysis of the merits and risks of the Capital Transaction in making its investment decision and has not relied upon any information provided by Moelis or any investigation of the Company conducted by Moelis; and (iii) the Purchaser agrees that Moelis shall have no liability to the Purchaser in connection with its purchase of the Capital Transaction.

**Bad Actor Representation and Covenant**

The Company represents and warrants to Moelis that, as of the date of this engagement letter, neither the Company nor any of its respective managing members, general partners, directors and executive officers, any other officers participating in the Capital Transaction, any 20% beneficial owners of the Company, calculated on the basis of total voting power, promoters connected to the Company, nor any persons compensated for soliciting investors, including their directors, general partners and managing members (each, a "Covered Person"), have been convicted of or are otherwise subject to any of the disqualifying events listed in Rule 506(d) of Regulation D under the Securities Act and as of the closing date of any Capital Transaction, neither the Company nor any Covered Person will have been convicted of or otherwise subject to any of the disqualifying events listed in Rule 506(d) of Regulation D under the Securities Act. Furthermore, the Company agrees to notify Moelis immediately if at any time it becomes aware that it or any of its Covered Persons have been convicted of or are otherwise subject to any of the disqualifying events listed in Rule 506(d) of Regulation D under the Securities Act.

DocuSign Envelope ID: AC5FD801-9845-456C-8F4D-66A664D64398

MOELIS & COMPANY

## **SCHEDULE 1**

Wire Instructions:
Beneficiary Account: Moelis & Company LLC
Routing Number: 122016066
Account Number: 412956230
International SWIFT Code: CINAUS6L

City National Bank
525 S. Flower Street
24th Floor
Los Angeles, CA 90071