DocuSign Envelope ID: 3F393D25-ED7E-4912-B9AE-A4B3A873B928

Susheel Kirpalani
Kate Scherling
Zachary Russell
**QUINN EMANUEL URQUHART & SULLIVAN** LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 489-7000
Facsimile: (212) 846-4900

*Proposed Special Counsel to Debtor Voyager Digital, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
:
In re: : Chapter 11
:
VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] : Case No. 22-10943 (MEW)
:
Debtors. : (Jointly Administered)
:
------------------------------------------------------------------x

**NOTICE OF DEBTOR VOYAGER DIGITAL, LLC'S APPLICATION FOR ENTRY OF
AN ORDER PURSUANT TO 11 U.S.C. §§ 327(e) AND 328(a) AND FED. R. BANKR. P.
2014, 2016 AND 5002 AUTHORIZING EMPLOYMENT AND RETENTION OF QUINN
EMANUEL URQUHART & SULLIVAN LLP AS SPECIAL COUNSEL TO VOYAGER
DIGITAL, LLP EFFECTIVE JULY 13, 2022**

      **PLEASE TAKE NOTICE** that a hearing will be held at **11:00 a.m. (prevailing Eastern
Time) on August 4, 2020** (the "Hearing") before the Honorable Michael E. Wiles, United States
Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One
Bowling Green, New York, New York 10004 to consider *Debtor Voyager Digital, LLC's'
Application for Entry of An Order, Pursuant to 11 U.S.C. §§ 327(e) and 328(a) and Fed. R. Bankr.
P. 2014, 2016 and 5002 Authorizing Employment and Retention of Quinn Emanuel Urquhart &*

---

[1]       The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital,
LLC (8013). The location of the Voyager Digital Holdings, Inc.'s and Voyager Digital Ltd.'s principal place of
business is 33 Irving Place, Suite 3060, New York, NY 10003. Voyager Digital, LLC's principal place of business is
701 S Miami Ave, 8th Floor, Miami, FL 33131.

DocuSign Envelope ID: 2F393D25-ED7E-4912-B9AE-A4B3A8730928

*Sullivan, LLP as Special Counsel to Voyager Digital, LLC, Effective July 13, 2022* (the "Application").

**PLEASE TAKE FURTHER NOTICE** that**,** any objections or responses to the relief requested in the Application shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York, and the *Interim Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures, and (II) Granting Related Relief* (Dkt. No. 60); (c) be filed electronically with this Court on the docket of In re Voyager Digital Holdings, Inc., Case No. 22-10943 (MEW) by registered users of this Court's electronic filing system and in accordance with the General Order M-399 (which is available on this Court's website at http://www.nysb.uscourts.gov); and (d) be served so as to be actually received by **July 28, 2022 at 4:00 p.m., prevailing Eastern Time**, by: (i) the Chambers of the Honorable Michael E. Wiles, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004; (ii) the Debtors, Voyager Digital Holdings, LLC, 33 Irving Place, Suite 3060, New York, New York 10003, Attn: David Brosgol; (iii) proposed counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C., Christopher Marcus, P.C., Christine A. Okike, P.C., and Allyson B. Smith; (iv) the United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Richard Morrissey and Mark Bruh, (v) the Committee (as defined herein), and (vii) Quinn Emanuel Urquhart & Sullivan, 51 Madison Ave., New York, NY 10010 (Attn: Susheel Kirpalani and Kate Scherling).

DocuSign Envelope ID: 3F393D25-FD7E-4912-B9AE-A4B3A873B928

**PLEASE TAKE FURTHER NOTICE** that copies of the Application and other pleadings for subsequent hearings may be obtained free of charge by visiting the Stretto, Inc. website at https://cases.strett.com/Voyager.   You may also obtain copies of any pleadings by visiting at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

**PLEASE TAKE FURTHER NOTICE** that _**your rights may be affected**_**.  You should read the Application carefully and discuss them with your attorney, if you have one.  If you do not have an attorney, you may wish to consult with one.**

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or at a later hearing.

**PLEASE TAKE FURTHER NOTICE** that you need not appear at the Hearing if you do not object to the relief requested in the Application.

**PLEASE TAKE FURTHER NOTICE** that if you do not want the Court to grant the relief requested in the Application, or if you want the Court to consider your view on the Application, then you or your attorney must attend the Hearing.  If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Application and may grant the relief requested in the Application with no further notice or opportunity to be heard.

New York, New York          _/s/ Susheel Kirpalani_
Dated:  July 21, 2022          Susheel Kirpalani
                                              Kate Scherling
                                              Zachary Russell
                                              QUINN EMANUEL URQUHART & SULLIVAN LLP
                                              51 Madison Avenue, 22nd Floor
                                              New York, NY 10010
                                              Telephone: 212-849-7000
                                              Facsimile: 212-849-7100

                                              _Proposed Special Counsel to Debtor Voyager Digital, LLC_

DocuSign Envelope ID: 3F393D25-ED7E-4912-B9AE-A4B3A873B928

Susheel Kirpalani
Kate Scherling
Zachary Russell
**QUINN EMANUEL URQUHART & SULLIVAN** LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 489-7000
Facsimile: (212) 846-4900

*Proposed Special Counsel to Debtor Voyager Digital, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                              :

In re:                          :      Chapter 11
                              :

VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1]  :      Case No. 22-10943 (MEW)
                              :

             Debtors.        :      (Jointly Administered)
                              :

------------------------------------------------------------------x

**DEBTOR VOYAGER DIGITAL, LLC'S APPLICATION FOR ENTRY OF AN ORDER**
**PURSUANT TO 11 U.S.C. §§ 327(e) AND 328(a) AND FED. R. BANKR. P. 2014, 2016**
**AND 5002 AUTHORIZING EMPLOYMENT AND RETENTION OF QUINN**
**EMANUEL URQUHART & SULLIVAN, LLP AS SPECIAL COUNSEL TO**
**VOYAGER DIGITAL, LLC EFFECTIVE JULY 13, 2022**

Debtor Voyager Digital, LLC ("Voyager LLC") files this application (the "Application")

for entry of an order, substantially in the form annexed hereto as **Exhibit A** (the "Proposed Order"),

pursuant to sections 327(e) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-

1532 (as amended, the "Bankruptcy Code"), Rules 2014(a), 2016, and 5002 of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local

Bankruptcy Rules for the Southern District of New York (the "Local Rules"), authorizing the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Voyager Digital Holdings, Inc.'s and Voyager Digital Ltd.'s principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.  Voyager Digital, LLC's principal place of business is 701 S Miami Ave, 8th Floor, Miami, FL 33131.

employment and retention of Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel" or the "Firm") as special counsel to Voyager LLC effective July 13, 2022.  In further support of this Application, Voyager LLC respectfully states as follows:

## RELIEF REQUESTED

1.      Voyager LLC respectfully requests authority to employ and retain Quinn Emanuel as special counsel to provide independent advice to, and act at the exclusive direction of, the special committee of Voyager LLC (the "Special Committee") in connection with the Special Committee's Mandate (defined below), effective as of July 13, 2022, in accordance with the terms and conditions of that certain engagement letter dated as of July 16, 2022 (the "Engagement Letter"), annexed as **Exhibit 1** to the Proposed Order; and (b) granting related relief.  In support of this Application, Voyager LLC submits (i) the declaration of Susheel Kirpalani, a Quinn Emanuel partner, annexed hereto as **Exhibit B** (the "Kirpalani Declaration") and (ii) the declaration of Stephen Ehrlich, Chief Executive Officer of Voyager LLC, annexed hereto as **Exhibit C** (the "Ehrlich Declaration").

## JURISDICTION

2.      This Court has jurisdiction to hear the Application under 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections, 327(e) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a), 2016 and 5002, and Local Rules 2014-1 and 2016-1.

## BACKGROUND

5.      On July 5, 2022 (the "Petition Date"), Voyager LLC, Voyager Digital Holdings, Inc. ("Voyager Holdings"), and Voyager Digital Ltd. ("Voyager Ltd." and collectively with

2

DocuSign Envelope ID: 3F393D25-ED7E-4912-B9AE-A4B3A873B92B

Voyager LLC and Voyager Holdings, the "Debtors") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

6.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief*  (Dkt. No. 18).  On July 19, 2022, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 102] (the "Committee").  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

7.      The board of directors of Voyager LLC formally established the Special Committee on July 5, 2022, comprising independent directors Timothy Pohl and Jill Frizzley (the "Independent Directors"), and vested it with authority to, among other things: (a) investigate any historical transactions relating to Voyager LLC, and (b) investigate any potential estate claims and causes of action against insiders of Voyager LLC, including claims arising from its loan to Three Arrows Capital, and (c) perform any other activities consistent with the foregoing that the Special Committee or Voyager LLC's board otherwise deems necessary or appropriate ((a)-(c), the "Special Committee's Mandate").

8.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the filing of these cases is set forth in the *Declaration of Stephen Erlich, Chief Executive Officer of the Debtors, in Support of the Debtors' Chapter 11 Petitions and First Day Orders* (Dkt. No. 15) (the "First Day Declaration").

## QUINN EMANUEL'S QUALIFICATIONS

9.      Voyager LLC seeks to retain Quinn Emanuel as special counsel to render independent advice to, and act at the exclusive direction of, the Special Committee in connection with the Special Committee's Mandate because of the Firm's experience in, among other areas, financial restructuring and litigation.   Quinn Emanuel lawyers have significant experience representing and advising the spectrum of constituents in chapter 11 cases and related proceedings, including, debtors, committees, secured and unsecured creditors, independent or disinterested directors, special committees, shareholders, and others.

10.     Susheel Kirpalani and other attorneys at Quinn Emanuel have (either while at Quinn Emanuel or other firms) served as counsel, including pursuant to section 327(e) of the Bankruptcy Code, to independent directors and/or special committees in numerous bankruptcy cases, including, without limitation:  *J. Crew Group, Inc.*, *J.C. Penney Company, Inc.*, *Intelsat S.A.*, *Belk, Inc.*, *NII Holdings, Inc.*, and as counsel or special counsel to debtors, official committees, non-debtor affiliates, and creditors in numerous other bankruptcy cases, including, without limitation: *Garrett Motion Inc., Avianca Airlines*, *Toys "R" Us, Inc.*, *Motors Liquidation Company, f/k/a General Motors Corporation*, *Peabody Energy Corporation*, *Sanchez Energy Corp., Ultra Petroleum Corp., Alpha Natural Resources, Inc.*, *China Fishery Group Limited (Cayman)*, *DPH Holdings Corp.*, *UTGR, Inc. (d/b/a Twin River)*, *Lehman Brothers Holdings, Inc.*, *Nortel Networks, Inc.*, *Fisker Automotive, Inc.*, *RadioShack Corporation*, *Velo Holdings, Inc.*, *SemGroup, L.P.*, *American Home Mortgage Holdings, Inc.*, *Buffets, Inc.*, *New Stream Secured Capital, L.P.*, *Enron Corp.*, *Safety-Kleen Corp.*, *RCN Corp.*, *Adelphia Communications Corp.*, *Mirant Corp.*, *Tower Automotive, Inc.*, and *Fruit of the Loom, Inc*, and in the Title III readjustments of *the Commonwealth of Puerto Rico* and *COFINA*.   Moreover, Susheel Kirpalani served as

DocuSign Envelope ID: 3F393D25-ED7E-4912-B9AE-A4B3A873B928

examiner and was represented by Quinn Emanuel in the *Dynegy Holdings LLC* and *Cenveo Inc.* chapter 11 cases.

11.     Additionally, Katherine Lemire and other attorneys at Quinn Emanuel have extensive financial services regulatory and enforcement experience, including with respect to matters relating to blockchain and digital assets. Prior to joining Quinn Emanuel, Ms. Lemire led the initial enforcement investigations into violations of the DFS cybersecurity regulations, and initiated multiple enforcement investigations into cryptocurrency businesses.

12.     Quinn Emanuel attorneys' extensive experience in representing special committees and independent directors and conducting investigations, as well as their knowledge of complex bankruptcy, cryptocurrency, and fiduciary issues, and experience practicing before this Court, make Quinn Emanuel ideal to effectively serve the needs of Voyager LLC—particularly, its Special Committee.

## SERVICES TO BE PROVIDED

13.     Voyager LLC has requested that Quinn Emanuel serve as special counsel to provide independent advice to, and at the exclusive direction of, the Special Committee in connection with the Special Committee's Mandate (hereinafter, the "Engagement").

14.     Quinn Emanuel expects to provide various legal services with respect to the Engagement, including, without limitation, interviewing and soliciting information from, and issuing document requests to, individuals and entities with knowledge, information, or documents relevant to the Special Committee's Mandate, conducting legal and factual analyses thereof, and taking direction from and reporting and providing advice to the Special Committee regarding the foregoing.

DocuSign Envelope ID: 2F393D25-FD7E-4912-B9AE-A4B3A873B92B

## PROPOSED COMPENSATION

15.      Subject to this Court's approval and in accordance with the Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals M-412, dated December 21, 2010 (Gonzalez, C.J.), the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases M-447, dated January 29, 2013 (Morris, C.J.), sections 330 and 331 of the Bankruptcy Code, the applicable Bankruptcy Rules, the Local Rules, any order establishing interim compensation procedures in these chapter 11 cases, and any and other procedures that may be fixed by the Court, Voyager LLC requests that Quinn Emanuel be compensated on an hourly basis and that Quinn Emanuel receive reimbursement of actual and necessary expenses incurred in connection with its representation of Voyager LLC in these cases.  In accordance with the terms of the Engagement Letter, Voyager LLC has agreed to compensate Quinn Emanuel for the work performed as special counsel.

16.      Quinn Emanuel has agreed that, subject to this Court's approval, it will apply a 10% discount on its standard billing rates for all timekeepers, which will be applied to the total fees in each invoice.  Applying the 10% discount, Quinn Emanuel's billing rates are: $1,246.50 to $1,917 for partners and counsel; $747 to $1,183.50 for associates; and $432 to $603 for paraprofessionals.

17.      Voyager LLC has been informed that Quinn Emanuel sets its hourly rates on an annual basis.  These hourly rates are subject to periodic adjustments (typically on September 1st of each year) to reflect economic and other conditions.  Quinn Emanuel will provide ten (10) business days' notice of any rate increases to Voyager LLC, the United States Trustee for the Southern District of New York (the "U.S. Trustee"), the Committee, and any other official committee appointed in these cases.

18.     Quinn Emanuel will maintain detailed records of actual and necessary costs and expenses incurred in connection with the legal services it provides to Voyager LLC.  Voyager LLC understands that Quinn Emanuel is customarily reimbursed for all expenses incurred in connection with the representation of a client in a given matter, including, but not limited to, photocopying services, printing, delivery charges, filing fees, postage, "working" meals, and computer research.

19.     Voyager LLC made no payments to Quinn Emanuel during the ninety days immediately preceding the Petition Date, and Quinn Emanuel currently has no claim against Voyager LLC or the Debtors (other than for services rendered to date in connection with the Special Committee's Mandate).

## NO ADVERSE INTEREST

20.     Based on the information provided by Quinn Emanuel, except as described in the Kirpalani Declaration, Quinn Emanuel does not represent or hold any interest adverse to Voyager LLC or its estate with respect to matters on which Quinn Emanuel is to be retained.

21.     Voyager LLC has been informed that Quinn Emanuel will periodically review its files during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise, Quinn Emanuel will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

## NO DUPLICATION OF SERVICES

22.     Voyager LLC believes that the services provided by Quinn Emanuel will not duplicate the services that other professionals will be providing to the Debtors in these chapter 11 cases.  Voyager LLC will coordinate with Quinn Emanuel and its other professionals to minimize unnecessary duplication of efforts among the professionals.  In particular, pursuant to a separate retention application filed with this Court, Voyager LLC and the other Debtors have retained

Kirkland & Ellis LLP ("K&E") pursuant to section 327(a) of the Bankruptcy Code as general bankruptcy counsel to the Debtors. Quinn Emanuel has a narrow focus, limited to the Special Committee's Mandate, and will not act as the Debtors' general bankruptcy counsel in these chapter 11 cases.

## BASIS FOR RELIEF

23.    Retention pursuant to section 327(e) of the Bankruptcy Code is appropriate given the specific scope of the proposed retention and Quinn Emanuel's prepetition representation.

24.    Section 327(e) of the Bankruptcy Code provides that a debtor subject to court approval:

> [M]ay employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).

25.    Retention of an attorney under section 327(e) does not require the same searching inquiry required for a debtor to retain general bankruptcy counsel under section 327(a). *See Meespierson Inc. v. Strategic Telecom Inc.*, 202 B.R. 845, 847 (D. Del. 1996) ("[S]pecial counsel employed under [section] 327(e) need only avoid possessing a conflict of interest concerning the matter at hand.").

26.    Nevertheless, the phrase "does not represent or hold any interest adverse to the debtor or to the estate" requires a factual determination of "all relevant facts surrounding the debtors' case, including, but not limited to, the nature of the debtor's business, all foreseeable employment of special counsel, [and] the expense of replacement counsel . . . ." *In re Woodworkers Warehouse, Inc.*, 323 B.R. 403, 406 (D. Del. 2005). In general, however, subject to

8

DocuSign Envelope ID: 3F393D25-ED7E-4912-B9AE-A4B3A873B928

the requirements of section 327, a debtor-in-possession is entitled to the counsel of its choosing. *In re Vouzianas*, 259 F.3d 103, 108 (2d Cir. 2001) (observing that "[o]nly in the rarest cases should the trustee be deprived of the privilege of selecting his own counsel").

### A.    Quinn Emanuel's Retention Is Necessary And Is In The Best Interests Of The Voyager LLC's Estate.

26.    Voyager LLC, acting through and at the direction of the Special Committee, selected Quinn Emanuel in light of Quinn Emanuel's restructuring and litigation experience and the particular its extensive experience acting as counsel for special committees and independent directors as well as conducting investigations.  As such, Voyager LLC believes it is in the best interests of Voyager LLC's estate to retain Quinn Emanuel as special counsel to provide independent advice to, and act at the sole direction of, the Special Committee in connection with the Special Committee's Mandate.  Moreover, Quinn Emanuel has already begun to gain an understanding of Voyager LLC's businesses and issues relevant to these cases.  Indeed, if Voyager LLC is required to retain different counsel to replace Quinn Emanuel in current matters, Voyager LLC will need to find, educate and integrate new counsel in these matters, and expend significant resources in doing so, rather than devoting its time and focus to their reorganization efforts.  In this respect, retaining Quinn Emanuel will avoid unnecessary administrative expenses and delays, result in cost efficiencies, and provide valuable assistance to the Debtors' efforts to reorganize.

### B.    Quinn Emanuel Neither Holds Nor Represents Any Interest Adverse To Voyager LLC.

27.    Except as set forth below and in the Kirpalani Declaration, based on information provided by Quinn Emanuel, the partners, counsel, and associates of Quinn Emanuel do not represent, and do not hold, any interest adverse to Voyager LLC or its estate, its creditors or equity security holders, its attorneys and accountants, the U.S. Trustee, any person employed by the

9

DocuSign Envelope ID: 2F393D25-ED7E-4912-B9AE-A4B3A873B928

Office of the U.S. Trustee, or any other party in interest in these chapter 11 cases that is connected to matters for which Quinn Emanuel is to be retained.

28.      Moreover, the lawyers and staff expected to provide services to Voyager LLC on behalf of Quinn Emanuel are not related to the U.S. Trustee assigned to these cases, any person employed in the Office of the U.S. Trustee, or the Bankruptcy Judge presiding over these cases.

29.      The Kirpalani Declaration also demonstrates that although Quinn Emanuel represents and has represented several of Voyager LLC's creditors and borrowers (or affiliates thereof) those matters are: not substantially related to the Debtors' bankruptcy cases; the representation is of an affiliate of Voyager LLC's particular creditor or borrower; the representation has concluded; or the representations and the claims of those creditors are immaterial and *de minimis*.  Moreover, Quinn Emanuel will serve as counsel only with respect to the circumscribed Special Committee Mandate.  Voyager LLC is satisfied that Quinn Emanuel does not represent or hold any adverse interest with respect to the Special Committee's Mandate.

## NO PREVIOUS REQUEST

30.      No prior application for the relief requested herein has been made by Voyager LLC to this or any other court.

## NOTICE

31.      Voyager LLC will provide notice of this Application to the following parties and/or their respective counsel, as applicable: (a) the U.S. Trustee; (b) the Committee; (c) the lender under the Debtors' prepetition loan facility; (d) the United States Attorney's Office for the Southern District of New York; (e) the Internal Revenue Service; (f) the Toronto Stock Exchange; (g) the attorneys general in the states where the Debtors conduct their business operations; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Voyager LLC submits that, in light of the nature of the relief requested, no other or further notice need be given.

**WHEREFORE**, Voyager LLC respectfully requests entry of an order substantially in the form annexed as **Exhibit A** hereto: (i) authorizing the employment and retention of Quinn Emanuel as special counsel to Voyager LLC, effective as of July 13, 2022, in accordance with the terms of the Engagement Letter, including Quinn Emanuel's normal hourly rates in effect at the time services are rendered (subject to the 10% discount) and normal reimbursement policies and (ii) granting such further relief as is otherwise necessary or appropriate.

Dated:  July 21, 2022

DocuSigned by:

*Steve Ehrlich*

3724C7F0863B426...

Stephen Ehrlich
Chief Executive Officer
Voyager Digital, LLC

## **Exhibit A**

## **Proposed Order**

DocuSign Envelope ID: 2F393D25-ED7E-4912-B94E-A4B3A873B92B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | : | Case No. 22-10943 (MEW) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

-----------------------------------------------------------------x

### ORDER PURSUANT TO 11 U.S.C. §§ 327(e) AND 328(a) AND FED. R. BANKR. P. 2014, 2016 AND 5002 AUTHORIZING DEBTOR VOYAGER DIGITAL, LLC TO EMPLOY AND RETAIN QUINN EMANUEL URQUHART & SULLIVAN, LLP AS SPECIAL COUNSEL *NUNC PRO TUNC* TO JULY 13, 2022

Upon the application (the "Application")[2] of Voyager Digital, LLC ("Voyager LLC"), a debtor and debtor in possession in the above-captioned case, for entry of an order, pursuant to section 327(e) of the Bankruptcy Code, Bankruptcy Rules 2014(a), 2016 and 5002, and Local Bankruptcy Rules 2014-1 and 2016-1, authorizing Voyager LLC employ and retain Quinn Emanuel as its special counsel, effective as of July 13, 2022; and upon the Kirpalani Declaration and Ehrlich Declaration (together, the "Declarations"); and the Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012; and this proceeding being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue of this proceeding and the Application in this Court being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been given; and the Court having found that

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Voyager Digital Holdings, Inc.'s and Voyager Digital Ltd.'s principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003. Voyager Digital, LLC's principal place of business is 701 S Miami Ave, 8th Floor, Miami, FL 33131.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

DocuSign Envelope ID: 3F393D25-FD7E-4912-B9AE-A4B3A873B928

no other or further notice is needed or necessary; and the Court having found that the relief requested in the Application is in the best interests of the Voyager LLC's estate and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and any objections to the relief requested in the Application having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is hereby **ORDERED** that:

1.    The Application is granted as set forth in this Order.

2.    Pursuant to section 327(e) of the Bankruptcy Code, Voyager LLC is hereby authorized to retain Quinn Emanuel as special counsel, effective as of July 13, 2022, pursuant to the terms and conditions set forth in the Application and the Engagement Letter.

3.    Retention pursuant to section 327(e) of the Bankruptcy Code is appropriate given the specific scope of the proposed retention.

4.    Quinn Emanuel shall file interim and final fee applications for allowance of its compensation and reimbursement of its expenses with respect to services rendered in these chapter 11 cases with the Court, in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, this Order, and such other procedures as may be fixed by order of the Court.

5.    Quinn Emanuel shall use its best efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

6.    Prior to any increases in Quinn Emanuel's rates for providing services in these cases, Quinn Emanuel shall file a supplemental affidavit with the Court and provide ten business

DocuSign Envelope ID: 3F393D25-ED7E-4912-B9AF-A4B3A873B928

days' notice to the Debtors, the U.S. Trustee, the Committee, and any other official committee appointed by the U.S. Trustee, which supplemental affidavit shall explain the basis for the requested rate and state whether Voyager LLC has consented to the rate increase. The U.S. Trustee retains all rights to object to any rate increase on all grounds including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code, and all rates and rate increases are subject to review by the Court.

7.      Notwithstanding anything to the contrary in the Application, the Engagement Letter, or the Declarations attached to the Application, the reimbursement provisions allowing the reimbursement of fees and expenses incurred in connection with participating in, preparing for, or responding to any action, claim, suit, or proceeding brought by or against any party that relates to the legal services provided under the Engagement Letter and fees for defending any objection to Quinn Emanuel's fee applications under the Bankruptcy Code are not approved pending further order of the Court.

8.      To the extent there is any inconsistency between the terms of the Engagement Letter, the Application, and this Order, the terms of this Order shall govern.

9.      Voyager LLC is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

10.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

11.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

DocuSign Envelope ID: 3F393D25-ED7E-4912-B8AE-A4B3A873B928

New York, New York
Date: _____, 2022

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Engagement Letter**

DocuSign Envelope ID: 3F393D25-ED7E-4912-B9AF-A4B3A873B928

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7200**

WRITER'S EMAIL ADDRESS
**susheelkirpalani@quinnemanuel.com**

July 16, 2022

Voyager Digital, LLC
33 Irving Place
New York, New York 10013
Attn: Jill Frizzley, Independent Director
         Timothy Pohl, Independent Director
         David Brosgol, General Counsel

Re:    **Limited Engagement For Voyager Digital, LLC Special Committee**

Dear Ms. Frizzley and Messrs. Pohl and Brosgol:

We are pleased to confirm the engagement of Quinn Emanuel Urquhart & Sullivan, LLP ("**QEU&S**") to act as special counsel to Voyager Digital, LLC ("**Voyager LLC**" or "**you**" or "**Client**") to render independent services at the sole direction of the special committee of Voyager LLC (the "**Special Committee**"), comprising Mr. Timothy Pohl and Ms. Jill Frizzley, (the "**Independent Directors**"), in connection with the Special Committee's (a) investigation of any historical transactions, public reporting, or regulatory issues undertaken by or relating to Voyager LLC, (b) investigation with respect to any potential estate claims and causes of action against insiders of Voyager LLC, and (c) any matters otherwise within the Special Committee's mandate (hereinafter, the "**Engagement**"). The purpose of this letter is to confirm the terms and conditions upon which QEU&S will provide legal services as special counsel to Voyager LLC, as debtor and debtor in possession, pursuant to section 327(e) of the Bankruptcy Code.

*Client*

We have only been engaged for a specified purpose to provide advice to, and to act on behalf of Voyager LLC, acting through the Special Committee. We do not represent and will not be deemed to have been retained by any of Voyager LLC's direct or indirect shareholders and affiliates, including affiliates of Voyager LLC, or by any of their other respective directors, employees, owners, founders, members, shareholders, subsidiaries or partners, or any other person or entity affiliated with the Client by virtue of the Engagement (hereinafter, the "**Affiliates**," with Voyager LLC, the "**Company**"). The Independent Directors shall direct our work in this matter on behalf of the Client and shall control any attorney-client, work product or other privilege or protection from disclosure in connection with our representation. The directors or managers of the

**quinn emanuel urquhart & sullivan, llp**

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON | SALT LAKE CITY
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

Affiliates shall not access the work or privileged material of QEU&S, except as permitted by the Independent Directors.

We understand you have engaged Kirkland & Ellis LLP ("**K&E**") as general bankruptcy counsel to the Company pursuant to section 327(a) of the Bankruptcy Code. Given the scope of the Engagement, the services rendered and functions performed by QE will not be duplicative of work performed by K&E or any other professionals retained by the company.

### Scope of Engagement

You have engaged QEU&S to represent you in connection with the Engagement. QEU&S's services will be limited to the representation of Client in the Engagement. Our services will not extend to other business, personal or legal affairs of Client, or to any other aspect of Client's activities. Our representation will conclude with the restructuring or reorganization of Voyager LLC's assets and liabilities including any potential claims that Voyager LLC may possess against any of its insiders, including claims that could be prosecuted, settled, or released under title 11 of the United States Code, or for any of the reasons stated in the Date of Commencement and Termination of the Engagement section of this letter. QEU&S's receipt or use of confidential or other information from Client or others in the course of this representation does not mean that QEU&S will render any other advice or services either to Client or any other person or entity. Similarly, Client will not look to or rely upon QEU&S for any investment, accounting, financial or other non-legal advice, including without limitation any advice regarding the character or credit of any person with whom Client may be dealing.

### Insurance Coverage and Claims

You understand and agree that QEU&S is not being engaged to advise regarding the existence of any insurance coverage in connection with the circumstances of the Engagement or to advise or assist in the formulation or submission of any insurance claim in connection with the Engagement. If you have not done so already, you should consider tendering this matter to your insurer(s), in order to determine whether there is insurance coverage for any of the claims asserted. Subject to ascertaining whether there are any conflicts, we are happy to expand the Engagement to include such advice, if requested and agreed in writing.

### Responsible Persons – Communications Between QEU&S and Client

We will report directly to the Independent Directors and keep the Independent Directors regularly and currently informed of the status of the Engagement and will consult with them whenever appropriate. Within QEU&S, I will be primarily responsible for the Engagement. My telephone number is **(212) 849-7200** and e-mail address is susheelkirpalani@quinnemanuel.com. It is my policy that all calls will be returned promptly and, in any event, no later than within one business day of receipt of the call; if you have not received a return call within that time, please call again. In the event of an emergency, please call my assistant, Nafeeza Subhan, at (212) 849-7158 and my assistant will endeavor to reach me as soon as practicable thereafter.

DocuSign Envelope ID: 2F393D25-ED7E-4912-B9AE-A4B3A873B928

### *Protection of Client Confidences – High Tech Communication Devices*

We are always mindful of our central obligation to preserve the precious trust which our clients repose in us--their secrets and confidences. We take this duty very seriously and, except to the extent permitted by the applicable rules of professional conduct, we will not disclose any confidential information of yours to any other client or person. Similarly, we cannot disclose to you the confidences of any other client, even when such information relates to matters that might affect you.

In order to meet our obligation to preserve your confidences, it is important that we agree from the outset what kinds of communications technology we will employ in the course of this Engagement. Unless you specifically direct us to the contrary, for purposes of this Engagement, we agree that it is appropriate for us to use fax machines and e-mail in the course of the Engagement without any encryption or other special protections. Please notify me if you have any other requests or requirements in connection with the methods of telecommunication relating to the Engagement.

### *Self-Representation*

QEU&S has designated one of the firm's partners to act as the firm's General Counsel (the "**General Counsel**"). The General Counsel acts as a lawyer to the firm, representing QEU&S in a variety of professional and legal matters and helping attorneys at the firm to comply with their professional and ethical responsibilities to clients. Among other things, the General Counsel provides QEU&S and its attorneys with legal advice concerning professional responsibilities, potential or actual professional liabilities, and other matters. QEU&S also retains outside counsel from time to time to provide similar legal advice to the firm. It is possible that attorneys or staff working on matters for Client may, from time to time, consult with the General Counsel or QEU&S's outside counsel on matters related to our representation of Client. In the course of such consultation, QEU&S's attorneys and/or staff may disclose to the General Counsel or QEU&S's outside counsel privileged information concerning Client's representation, and may receive legal advice related to QEU&S's work on Client's matter, which legal advice QEU&S may or may not disclose to you. QEU&S views such consultations as privileged and not discoverable by anyone, not even the clients about whom such a consultation may take place. By retaining QEU&S, Client acknowledges and consents to QEU&S's attorneys and staff consulting with the General Counsel or QEU&S's outside counsel as they deem necessary, both during QEU&S's representation of Client and after such representation ends, and Client confirms that such communications are privileged and protected against disclosure to you.

### *Responsibilities of Client*

In order to represent you effectively, it is important that you provide us with complete and accurate information regarding the subject matter of the Engagement, and that you keep us informed on a timely basis of all relevant developments. In addition, it is important that Client and its officers and employees provide us with timely assistance and cooperation in connection with the Engagement.

### *Preservation of Electronically Stored Information ("ESI")*

Recent changes in the Federal Rules of Civil Procedure, Federal Rules of Evidence, and case law addressing electronic discovery have profoundly altered the obligations of the parties involved in litigation and their counsel. An understanding of these changes, which relate to the duties of preservation and discovery of electronically stored information ("**ESI**"), is an essential prerequisite to the development of a successful litigation strategy for every client. The duty to preserve potentially relevant information is triggered when litigation is reasonably anticipated or commenced, and the failure to comply with these rules can have dire consequences (including sanctions ranging from monetary penalties, to entry of a default against you/your action being dismissed. In the event Client has not already issued a litigation hold in this matter, we request that you immediately do so. We would be pleased to assist you with preparing the litigation hold and otherwise providing guidance on the duties related to preservation of ESI.

### *No Guarantee of Result*

In providing legal advice to you, I or others at QEU&S may from time to time express opinions or beliefs regarding the likely effectiveness of various courses of action or about results that may be anticipated. You understand that any such statements are opinions and beliefs only and are not promises or guaranties. We cannot and do not guarantee any particular course or outcome of the Engagement.

### *Conflicts Issues*

Our firm has many lawyers and several offices. We may currently or in the future represent one or more other clients in matters involving Voyager LLC, and we may represent parties that are adverse to Voyager LLC in matters unrelated to the Engagement. We are undertaking this Engagement on condition that we may represent other clients in matters in which we do not represent Voyager LLC even if the interests of the other clients are adverse to the Client's (including the appearance on behalf of another client adverse to the Client in litigation or arbitration), <u>provided</u> that the other matter is not substantially related to our representation of the Client in connection with the Engagement and that in the course of representing the Client we do not obtain confidential information from the Client material to the representation of the other client. The Client's express consent to this arrangement is required because of its possible adverse effects on the performance of our duties as attorneys to remain loyal to each client, to maintain client confidences, and to render legal services with vigor and competence. Also, if an attorney does not continue an engagement or is required to withdraw from a matter, the client may incur delay, prejudice or additional cost associated with acquainting new counsel with the matter.

We have disclosed that QEU&S represents Alameda Research Ltd., Alameda Ventures Ltd. and certain other affiliates ("**Alameda**") in a general advisory role, including with regard to cryptocurrencies. Alameda has retained another firm to represent it before the Bankruptcy Court overseeing the Company's chapter 11 cases, and the Engagement does not include QEU&S investigating or asserting any claims against Alameda. Given the lack of overlap in scope between this limited Engagement and our representation of Alameda (which for the avoidance of doubt will not include future advice regarding the Company or these chapter 11 cases), we believe our

DocuSign Envelope ID: 3F393D25-FD7E-4912-B9AE-A4B3A873B928

continued representation of Alameda is appropriate and Alameda has consented to the Engagement. As a condition of this Engagement, any attorney that has provided or will provide advice to Alameda will be walled off from this Engagement, and that no confidential information about Voyager LLC or its Affiliates will be shared with Alameda. You agree to waive any conflict of interest arising out of Quinn Emanuel's representation of Alameda in matters unrelated to the Engagement.

### Bankruptcy Provision

Notwithstanding anything herein to the contrary, we agree to comply with the fee application process and guidelines for payment of fees and reimbursement of expenses imposed by law and any order of the Bankruptcy Court.

### Billings

Our fees are based on the amount of time we spend on this Engagement. Each QEU&S attorney, legal assistant and other timekeeper assigned to this Engagement will have an hourly billing rate. These billing rates, which are set based upon seniority and expertise, are subject to adjustment annually and we will notify you of these changes thirty days in advance of their going into effect. In addition, our associate rates are based on years out of law school, so annually on September 1, each associate's rate moves up to the next higher class rate on our rate schedule; for example, on September 1, 2022, a class of 2021 graduate's rate will move up from a first-year associate rate to a second-year associate rate, and so on. These "class graduation" adjustments are not rate increases, and Client acknowledges and agrees to these associate class adjustments by signing this letter. The standard billing rates of the attorneys whom we anticipate assigning to this Engagement currently range from $2,130 (Susheel Kirpalani) to $830 (first-year associate). We are able to provide you with a 10% discount on our standard billing rates for all timekeepers, which will be applied to the total fees in each invoice. If one of our professionals performs multiple tasks for you during the course of a day, our statement will describe those tasks in a continuous narrative form accompanied by a single time entry for all tasks, a practice known as "block billing." You agree that we may provide our invoices in this manner.

### Estimates

Client understands that it is impossible to determine in advance the amount of fees and costs needed to complete any given matter. From time to time during the course of our Engagement we may provide Client with estimates of costs and fees or projected budgets for our work going forward. Ordinarily, we do not provide these projections unless Client specifically requests us to do so. When we do provide them, we will make a good faith effort to estimate what the future cost will be. However, in no case can such projections be guarantees regarding what the actual cost will be. The cost of litigation may change dramatically based on factors we do not control, including actions taken by our adversary, rulings by the court, or other developments in the litigation. In all instances when we provide such projections, they should be viewed as guidance only. The fees and costs which Client will be liable for will be based on our time charges as set forth in this agreement, and not on any such projections.

DocuSign Envelope ID: 2F393D25-ED7E-4912-B9AE-A4B3A873B92B

*Ancillary Costs*

We will charge separately for certain ancillary services we provide, such as facsimile charges, secretarial and paralegal overtime and word processing. We pass along out-of-pocket costs and charges that we incur on our clients' behalf. These typically include messenger charges, deposition videography and transcript charges and administrative charges. Other charges are based on market, not cost, including service of process, document reproduction ($0.24/page), color document reproduction ($1.00/page), binders, tabs, tab creation, manila folders, redwelds, binding, punching, black and white scanning ($0.18/page), color scanning ($1.50/page), black and white oversized scanning ($0.40-$1.50/page), color oversized scanning ($2.25-$12.50/page), black and white blowbacks ($0.15/page), color blowbacks ($1.00/page), slipsheets ($0.03/page), native file printing ($0.18/page), TIFF generation ($0.02/page), OCR ($0.02-$0.03/page), ECA filtering $15-$75/GB), data processing ($50-$150), image endorsement ($0.02/page), media creation and duplication ($15-$400), document coding ($0.88-$1.50/document), hosting ($10-$20/GB) and litigation support consulting at hourly rates of $175 to $365 per hour, depending on the work performed. Additionally, we charge for computerized legal research (Westlaw or Lexis fees, without any applicable discount), travel costs, meal charges and parking charges (when we are working exclusively on your matter), filing fees, telephone toll charges, fees for experts and other consultants retained on Client's behalf, and similar charges. Our charges may also include cellular or air telephone charges that are not related to the representation, but are necessarily incurred while we are traveling on a client's case. These charges will be at cost. The costs listed are the current rates but may be subject to future adjustment. Client agrees that the ancillary costs described in this paragraph are costs to be paid in addition to our hourly billings, are not "overhead," and are payable separate and apart from our hourly billings in the event of any dispute.

In some cases, particularly if the amount is large, we may forward an invoice from an outside vendor or service directly to Client for payment, which will also be due and payable upon receipt. Failure to pay such invoice upon request will be grounds for us to withdraw from our representation.

In the event Client has supplied us with billing guidelines that are inconsistent with the terms of this Engagement Letter, Client agrees that the terms of this Engagement Letter shall apply unless a copy of Client's billing guidelines are attached to this Engagement Letter countersigned on behalf of QEU&S, in which event Client's billing guidelines shall control.

We will submit bills on a monthly basis. All bills shall be paid within thirty days of receipt by you. The obligation to pay our bills is solely yours and is not contingent upon any judgment or settlement; any right you may have for reimbursement, indemnification, insurance or the like; or your receipt of any other form of payment you may expect to receive from some other party. We reserve the right at our sole discretion to charge interest of 6% per month on invoices that are 90 days or more past due. If Client has any question regarding, or wish to challenge any bill, Client shall notify us promptly of any such question or challenge, and shall in any event pay any portion of such bill that is not subject to question or challenge. Notwithstanding the foregoing and for the avoidance of doubt, the billing and payment provisions described herein are subject to the "Bankruptcy Provision" in this Engagement Letter.

*Award of Costs and Fees*

A court may sometimes order a payment of costs or attorneys' fees by one party to the other. If any fees or costs are paid to us, they will be credited against any amounts Client owes us, but Client will be obligated for any unpaid portion of our statements as they become due. Payment of our statements may not be deferred pending a ruling on an application for attorneys' fees, costs or sanctions or pending the receipt of such an award. Any fee or cost award received from another party will be credited to Client's account, unless it results in a credit balance. If it does, we will refund the balance to Client. If a court awards fees or costs against Client and in favor of an opposing party, Client will be responsible for payment of that amount separately from any amounts due to us.

*Termination*

Above all, our relationship with you must be based on trust, confidence and clear understanding. If you have any questions at any time about this letter or the work that the firm, or any attorney, is performing, please call me or, if you prefer, John Quinn in our Los Angeles office at (213) 443-3000, to discuss it. You may terminate this representation at any time, with or without cause. Subject to the application of the applicable rules of professional responsibility, we also reserve the right to withdraw if, among other things, you fail to make timely payment of any invoice, you fail to cooperate or follow QEU&S's advice on a material matter, or any fact or circumstance arises that, in QEU&S's view, renders our continuing representation unlawful or unethical. Any termination of our representation of you would be subject to such approval as may be required from any court(s) in which we are appearing on your behalf. In the event of termination by either of us, fees and costs for work performed prior to termination will still be payable to the extent permitted by law.

*Date of Commencement and Termination of the Engagement*

The effective date of our agreement to provide services is the date on which we first performed services. The date at the beginning of this letter is for reference only. If this letter is not signed and returned for any reason, Client will be obligated to pay us the reasonable value of any services we have performed as well as the costs we have incurred on Client's behalf.

QEU&S's representation of Client will be considered terminated at the earliest of (i) Client's termination of the representation, (ii) QEU&S's withdrawal from the representation, (iii) the completion of QEU&S's substantive work for the Client, or (iv) following 60 days of inactivity by QEU&S on the matter.

*File Retention and Disposition*

After the Engagement has concluded, and subject to payment of all outstanding fees and disbursements, you may request the return of files pertaining to the Engagement. Client's files will be released only following delivery to QEU&S of a signed release letter containing appropriate directions and acknowledgement of the obligation to pay outstanding fees. QEU&S may charge you for the reasonable costs of retrieval, assembly, copying and transfer of all files or materials in any format. It is our practice to retain the permanent records of the matter, in

accordance with our records retention policy, for a period of not less than 7 years after the Engagement has ended. If you do not request the files in writing before the end of our retention period, upon the expiration of that period we will have no further obligation to retain the files and may, at our discretion, destroy the files without further notice to you.

### Other Litigation or Proceedings

If, as a result of this Engagement, and even if the Engagement has ended, we are required to produce documents or appear as witnesses in any governmental or regulatory examination, audit, investigation or other proceeding or any litigation, arbitration, mediation or dispute involving Client or related persons or entities, Client shall be responsible for the costs and expenses we reasonably incur (including professional and staff time at our then-standard hourly rates). Similarly, if we are sued or subjected to legal or administrative proceedings as a result of our representation of Client in this matter (including unmeritorious disqualification proceedings), Client agrees to indemnify us for any attorney's fees and expenses (including our own professional and staff time at our then-standard hourly rates) we incur as a result. This paragraph is not intended to apply to any claim brought by or on behalf of Client alleging wrongdoing by QEU&S.

### Disputes

Although we think it is unlikely, it is possible that a dispute may arise between us regarding some aspect of the Engagement and our representation of you. If the dispute cannot be resolved amicably through informal discussions, the parties hereto irrevocably submit to the exclusive jurisdiction of any federal or state court located within New York, New York and any appellate court thereof over any dispute arising out of or relating to the Engagement and each party hereby irrevocably agrees that all claims in respect of such dispute or any suit, action proceeding related thereto may be heard and determined in such courts. The parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

WAIVER OF RIGHT TO TRIAL BY JURY. EACH PARTY TO THIS AGREEMENT WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, MATTER OR PROCEEDING REGARDING THIS AGREEMENT OR ANY PROVISION HEREOF.

The Engagement shall be governed by the laws of the State of New York, without regard to the conflict of law provisions thereof that would result in the application of the law of another jurisdiction.

### Binding Agreement

By signing below, Client agrees that Client has had enough time to review this letter, that we have advised you that Client has the right to consult another, independent lawyer about the provisions relating to the waiver of conflicts of interest and any other aspect of this letter as to which Client may wish to avail itself of such advice, and that Client is satisfied that it understands this letter.

Client also agrees that Client has the freedom to select and engage the counsel of its own choice and accordingly that this is an arm's length agreement between parties of equal bargaining strength and that Client has freely determined, without any duress, to sign and agree to these terms.

### *Severability*

Should any part of this Agreement, or language within any provision of this Agreement, be rendered or declared invalid by a court of competent jurisdiction, such invalidation of such part or portion of this Agreement, or any language within a provision of this Agreement, should not invalidate the remaining portions thereof, and they shall remain in full force and effect.

### *Amendments and Additional Engagements*

The provisions of this letter may only be amended in writing, signed by both parties.

If Client later asks us to take on additional assignments, we will send you a supplementary engagement letter reflecting each additional assignment.

If the foregoing accurately reflects our agreement, please confirm that by signing and returning one of the enclosed copies to me. Please do not hesitate to call me to discuss any questions you may have regarding this agreement. In conformance with QEU&S's policies, we cannot commence work on this Engagement until we have received a copy of this letter countersigned by you.

Thank you again for this opportunity to be of service. We look forward to working with you on this Engagement.

Sincerely,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Susheel Kirpalani

Encl.

**[STATEMENT TO BE SIGNED BY CLIENT:]**

I have read the above Engagement Letter and understand and agree to its contents.  The parties to this Engagement hereby agree that a faxed, pdf or electronic signature shall count as the original.

Voyager Digital, LLC:

DocuSigned by:

By: _____

Name: __David Brosgol_____
       139FC73A2D4F474...

Title: __General Counsel_____

Date: __7/16/2022_____

cc: Joshua Sussman, Esq.

99999-77016/13501658.4

10

<u>PRIVILEGED & CONFIDENTIAL, ATTORNEY-CLIENT COMMUNICATION</u>

# GUIDELINES ON PRESERVATION AND PRODUCTION OF ELECTRONICALLY STORED INFORMATION

### INTRODUCTION

Some preliminary background information may assist you in understanding the legal duties now applicable to the preservation and production of electronically stored information. Advancements in information technology have fundamentally changed how we communicate with one another and how companies do business. These changes have resulted in the development of new rules governing discovery in litigation. These new rules are an attempt by our courts to adapt to the changes in today's business world and society which these technological innovations have produced.

These new rules relate to "electronic discovery" and are referred to as "e-discovery rules." Because electronically stored information ("ESI") is particularly vulnerable to accidental deletion, modification or corruption, courts have imposed new duties on both parties and their attorneys to preserve ESI. The new e-discovery rules were enacted to address problems unique to electronic discovery. As used in these guidelines, ESI refers to any type of electronic data or information in any type of format. So long as electronic data is in a fixed tangible form and is capable of being electronically stored, even temporarily, the e-discovery rules apply.

All parties are required to follow these e-discovery rules regardless of how simple or sophisticated their computer system. In other words, it does not matter whether a party is an individual, partnership, joint venture, sole proprietorship or mega-corporation. Nor does it matter whether a party has a single laptop computer or a massive computer network. If a party has any device that generates or stores ESI, whether it be a bank of servers or a single "thumb" drive, a Blackberry, cell phone or any other type of electronic storage device, the e-discovery rules apply.

The duty to preserve potentially relevant ESI is triggered whenever litigation is "reasonably anticipated." The process by which a party identifies and preserves potentially relevant information or evidence including ESI is generally referred to as a "**litigation hold**," and that is how we will refer to the process in these guidelines. The imposition of a litigation hold, among other things, requires the suspension of any document retention/destruction policies or any automated features of a party's computer or email systems that could result in the loss, destruction or deletion of ESI or paper records. For example, if a party recycles its back-up tapes or if its email system automatically deletes emails after a specified time frame, those processes have to be stopped, at least until the party can develop an appropriate strategy for preserving potentially responsive ESI. Otherwise sanctions can be imposed if relevant ESI is lost or destroyed.

The new e-discovery rules mandate a heightened level of cooperation between clients and their counsel in locating and preserving potentially relevant ESI. The new duties which these rules impose on both clients and their counsel profoundly affect the relationship between them. Additionally, the e-discovery rules can dramatically increase the cost of discovery and materially affect how litigation is conducted. Before explaining how electronic discovery works under these rules, it is important to understand how the responsibility for e-discovery compliance has been allocated between clients and their counsel.

### RESPECTIVE DUTIES OF CLIENTS AND THEIR COUNSEL RELATIVE TO E-DISCOVERY

In *Zubulake v Warburg LLC*, 229 F.R.D. 422, 431 (S.D.N.Y. 2004) (*Zubulake V*), a case generally followed throughout the country, the court held that in order to avoid the imposition of discovery sanctions, a party "must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." The court explained that "a party and its counsel must make certain that all sources of potentially relevant information are identified and placed 'on hold.'" 229 F.R.D. at 432. To accomplish this the court explained counsel should:

- Become fully familiar with the client's document retention policies, and data-retention architecture including system-wide backup procedures, recognizing that this will invariably involve speaking with the client's IT personnel; and

- Communicate with "key players" in the litigation to understand how they store information.

The court in *Zubulake* observed that a party's e-discovery obligations do not end with the implementation of a litigation hold. It noted that a party has an ongoing duty to preserve relevant information while the lawsuit remains pending. The court explained that it was not sufficient for counsel to simply notify the client about the need to impose a litigation hold and assume the client will preserve and produce relevant information. Rather, the court concluded that counsel should oversee compliance with the litigation hold and outlined three steps that counsel should take to confirm that the client is complying with its preservation obligation:

*First,* counsel must issue a litigation hold at the outset of litigation or whenever litigation is reasonably anticipated. The litigation hold should be periodically re-issued so that new employees are aware ot it, and so it is fresh in the minds of all employees.

*Second,* counsel should communicate directly with the 'key players' in the litigation so that the preservation duty is clearly communicated to them. As with the

2

DocuSign Envelope ID: 2F393D25-FD7F-4912-B94E-A4B3A873B92B

litigation hold, the key players should be periodically reminded that the preservation duty is still in place.

*Finally,* counsel should instruct all employees to produce electronic copies of their relevant active files, and make sure that all backup media which the party is required to retain has been identified and properly preserved.

*Zubulake V,* 229 F.R.D. at 433-34.

These action steps must be taken at the outset of any lawsuit, and then periodically repeated throughout the litigation. Moreover, attorneys have a continuing obligation to monitor a client's efforts to preserve and produce ESI. It is essential that a client fully cooperate in the process, understanding that these obligations are imposed on all parties as a matter of law, and not by the whim of counsel. Sanctions for noncompliance with these e-discovery obligations can be imposed on both client and counsel alike. Should such a motion ever be filed, it could trigger a number of additional issues that we would need to discuss with you.

Please also be aware that in some cases, e-discovery may generate a significant increase in the cost of defending a lawsuit and in the diversion of personnel and resources needed to address a party's e-discovery obligations. The expense involved in locating, reviewing and producing ESI in some cases may be so significant as to warrant serious consideration of an early resolution of the claim. In other cases, e-discovery costs may have little or no impact on litigation or settlement strategies and merely represent expenses that are now incurred at the beginning of the case, rather than at a later point in time.

WRITTEN GUIDELINES FOR COMPLIANCE WITH THE RULES GOVERNING ESI

The written guidelines set out below are not intended to serve as a mechanical checklist applied in an identical manner in all cases. The process of identifying, preserving and producing ESI can be a highly complex undertaking. There is no "one size fits all" set of rules when it comes to e-discovery. Rather, the principles discussed below should guide you in implementing a process to preserve and produce ESI, tailored to the complexities of a given matter.

1.    *When the Duty to Preserve Evidence is Triggered*

Various statutes and regulations require the preservation of specific types of information in a variety of contexts. However, in the absence of such a statute or regulation, for litigation purposes the duty to preserve is triggered at that point in time when litigation, a governmental investigation, or any adversarial proceeding or process is "reasonably anticipated." When litigation is "reasonably anticipated" requires a reasoned, good-faith analysis of all relevant facts and circumstances.

99999-77016/13501658.4

When a duty to preserve is triggered, the parties should immediately begin the process of attempting to locate and preserve any potentially relevant ESI, regardless of its source or location (*e.g.*, desktop or laptop computer, network server, thumb drive, backup tapes, digital audio recording, voice mail etc.). The duty to preserve continues through the pendency of the proceeding, and includes any relevant evidence that is created *during* the course of the proceedings.

**If you have not already done so, please institute a "litigation hold" on any potentially relevant ESI or other information in accordance with these guidelines.**

2.    *Identify Key Personnel*

"Key Personnel" should be immediately identified for several reasons; first so that they can be notified in writing about their duty to preserve evidence, and second, so that any potentially relevant ESI in their possession, custody or control can be located and preserved. Key Personnel are those individuals who were involved in any aspect of the matter at hand, as well as those individuals who either have or claim to have some knowledge of the matter or any defenses that relate to it, or to the claimed injury or resulting damages, and/or who have in their possession or under their control ESI or any other form of potentially relevant evidence.

The effort to identify the Key Personnel and locate potentially relevant information in their possession should focus on the assertions made and any potential defenses to those assertions. It will also be helpful to identify any other employees or third parties with whom Key Personnel had contact involving the relevant issues so that emails, letters and other communications to and from those individuals or physical evidence in their possession, custody or control can be located and preserved.

**Please prepare a list of all Key Personnel for when we meet in the near future. Please include the work or home addresses, email addresses and phone numbers (for those individuals no longer in your employ), so that we can follow up with them to verify that they have been notified about the need to preserve ESI, understand the ramifications if they fail to do so and to learn how they store information.**

You should expect that at an early stage of this matter our opponent will request a deposition or ask to interview the person(s) most knowledgeable about your computer, email, and record keeping systems. Please identify who that person is or who those persons are, and provide their contact information at our initial meeting. We may ask that one of them attend our initial Rule 26 scheduling conference with opposing counsel if available. **Additionally, please designate someone who could serve as your e-discovery liaison or as our contact person should questions arise about your computer, email or record keeping systems.**

4

DocuSign Envelope ID: 3F393D25-FD7F-4912-B9AE-A4B3A873B92B

3.    *Content and Scope of Litigation Hold Notice*

You should notify Key Personnel in writing about their duty to preserve any evidence, be it paper records or ESI, which is potentially relevant to this matter or any defenses that could be asserted. The written hold notice should broadly describe the nature of the claims being asserted and any defenses to the claims so that your Key Personnel do not inadvertently delete or destroy any potentially relevant ESI or paper records. Your written hold notice should also explain the potential types of ESI that should be preserved and where potential sources of that ESI may be found. We have included a list of possible sources in guideline 6 below. The written hold notice should also explain that sanctions could be imposed in this matter if they fail to preserve relevant information and that the sanctions could range anywhere from the imposition of a large fine to the entry of [a default judgment/the dismissal of the claim].

The written hold notice should be broadly disseminated. The notice should be sent to Key Personnel, to the IT, Information Management and/or Risk Management departments (where applicable), to the persons in charge of departments such as Human Resources, Product Development, Marketing, or any other department where potentially relevant ESI may be located, and to any department heads in which Key Personnel are employed. In addition to the litigation hold notice, those department heads should be provided a list of Key Personnel in their respective departments who you believe may be in possession of potentially relevant ESI. Department heads should be instructed that if they are aware of any other person who may have possession of potentially relevant ESI, they should immediately notify that employee of the litigation hold and also notify a designated member of your legal department who should promptly send a copy of the hold notice to that employee.

Consider designating a member of your legal department to answer any questions which anyone may have about the litigation hold process. You also should consider including a statement in the litigation hold notice explaining that should anyone have a question about the litigation hold process or the obligation to preserve ESI, that they should immediately contact the designated member of your legal department.

The litigation hold notice should periodically be resent to the original Key Personnel and any new employees who have access to potentially relevant ESI which is subject to your litigation hold so they do not inadvertently delete or destroy it. As a lawsuit matures, the litigation hold may need to be modified as issues are added or evolve. Additional employees may need to be notified about the hold when new claims or issues are added or when our opponent's liability theory changes. We will discuss these points with you at our initial meeting.

A party's litigation hold process has been held to be deficient when senior management was not involved in the process. Accordingly, we recommend that the

DocuSign Envelope ID: 2F393D25-ED7E-4012-B9AE-A4B3A873B928

written hold notice be issued either by a member of senior management or by a senior member of your legal department.

Please notify all Key Personnel that we will be contacting them to discuss the topics noted above, and please alert the head of your IT department that we will need to speak with IT staff to learn about your email and information systems, data-retention architecture and document retention practices.

4.      *The Duty to Preserve Includes ESI on Home or Personal Computers or PDAs*

Your written hold notice should advise Key Personnel and others who receive the notice that any potentially relevant ESI created or stored on home or personal computers, PDA's or at locations other than your office(s) or business (locations) must also be preserved, regardless of whether that ESI was transmitted to you, or is now in your possession or is available elsewhere. The existence of potentially relevant ESI on home or external computers or PDA's can raise sensitive privacy issues. The law nevertheless requires that relevant information on home computers or storage devices be preserved and treated in exactly the same way as the ESI located on your business systems.

5.      *The Duty to Preserve Includes ESI in the Possession of Third Parties Under Your Control*

The obligation to preserve potentially relevant evidence extends beyond the ESI in your immediate possession. The duty to preserve potentially relevant ESI extends to any third party who is subject to your direction and under your control. For example, if you have outsourced any accounting, computer or business functions to a third-party vendor ("Application Service Provider"), or have transferred any archived data to a third-party storage facility, you must instruct that third party to preserve any potentially relevant ESI in its possession. Accordingly, you should immediately notify any such third party about the obligation to preserve any of your ESI in its possession. **Please provide us with the current contact information for any third parties who may be in possession of potentially relevant evidence**, including ESI, so that we may follow up and request that they take steps similar to those described in these guidelines.

6.      *Potential Sources of ESI*

The following list is intended to provide examples of the types, sources and formats of ESI that should be located and preserved, where applicable, pursuant to the litigation hold issued in connection with this matter. Because we have not yet spoken with your IT department, we recognize the foregoing list could be over or under inclusive. Thus, you may want to consult with your IT department to tailor the information provided in this guideline. However, you should consider including the type of information outlined below in your written hold notice so that your Key Personnel and others who were sent that notice do not overlook a source or type of potentially relevant ESI:

**Digital Communications** (*e.g.*, e-mail, voicemail, instant messaging (if logged));

6

DocuSign Envelope ID: 2F393D25-FD7E-4912-B9AE-A4B3A873B92B

**Electronic Mail Logging and Routing Data;**

**Word Processing Documents** (*e.g.,* Word or WordPerfect documents and drafts);

**Spreadsheets and Tables** (*e.g.,* Excel or Lotus 123 worksheets);

**Accounting Application Data** (*e.g.,* QuickBooks, Money, Peachtree data files);

**Image and Facsimile Files** (*e.g.* PDF, TIFF, .JPG, GIF, DICOM images);

**Sound Recordings** (*e.g.,* .WAV and .MP3 files);

**Video and Animation** (*e.g.,* .AVI and .MOV files);

**Databases** (*e.g.,* Access, Oracle, SQL Server data, SAP);

**Personal Data Assistants (PDAs)** (*e.g.,* Blackberry, PalmPilot, HP Jornada);

**Contact and Relationship Management Data** (*e.g.,* Outlook, ACT);

**Calendar and Diary Application Data** (*e.g.,* Microsoft Outlook PST, Lotus Notes, third-party internet calendars through mail accounts - Yahoo and Hotmail);

**Online Access Data** (*e.g.,* Temporary Internet Cache Files );

**Presentations** (*e.g.,* PowerPoint, Corel Presentations);

**Network Access and Server Activity Logs;**

**Project Management Application Data** and related documents;

**Computer Aided Design/Drawing Files**; and,

**Backup and Archival Files** (*e.g.,* Zip, GHO).

In addition to preserving the electronic data or files themselves, as explained below you must also preserve all archived data or backup media which may contain potentially relevant ESI until otherwise directed by counsel. This includes magnetic and optical media, hard drives, floppy disks, backup tapes, Jaz cartridges, CD-ROMs and DVDs. Any software necessary to review the data contained on these media also must be preserved. If any backups are made in realtime via the web (*e.g.,* LineVault, e-Vault), they must be preserved and the third party handling this data must be contacted to assist in its retention.

In order to prevent data loss due to normal replacement of outdated computers, systems, hardware or software, you should also preserve all computers, hardware and software no longer in use that were used during the relevant timeframe until it has been

7

DocuSign Envelope ID: 2F393D25-ED7E-4912-B94E-A4B3A873B92B

verified that no potentially relevant ESI is stored on those computers or systems. This includes any servers, desktops, laptops, hard drives, and all associated hardware and software applications.

Some systems have the capability to capture or log instant messages (IM), if that feature has been activated. Does your system have the capability to log IM and, if so, has that feature been activated? Do you have any policy concerning the use of IM for business purposes? If so, please provide us with a copy of that policy at our initial meeting.

If your IT staff has developed a data map covering any aspect of your computer, email or record keeping systems, sometimes referred to as a "topology," please have a copy available at our initial meeting because it will hopefully reduce the amount of time we need to spend with your IT staff learning about those systems.

7.    *Preservation Obligations*

The law governing the preservation of ESI also applies to other forms of evidence, including your paper records. No potentially relevant evidence should be altered or destroyed. Rather, it should be maintained in the way it is kept in the ordinary course of business. All copies, including all duplicates should be preserved. Even if paper copies have been made of electronic files, you should preserve the original electronic files.

The potential for accidental deletion, destruction or corruption of ESI makes it essential that prompt steps be taken to preserve relevant information. Delay in doing so increases the possibility that relevant ESI may lost, thereby exposing you to sanctions. Thus, it is important to quickly act to preserve ESI. The obligation to preserve does not require imaging all computers and email, or freezing all electronic documents and data. Absent extraordinary circumstances, the preservation obligation need only involve steps reasonably necessary to secure potentially relevant evidence necessary for a just and fair resolution of the issues presented.

In some instances, however, it may be prudent to make a forensically sound mirror image of certain computer hard drives to avoid the accidental deletion of ESI due to everyday computer usage. In matters where an employee is believed to have electronically misappropriated company information or property; where particularly critical evidence is recognized to exist on a specific hard drive; where potentially relevant information has been recently deleted and may need to be reconstructed; or where the way in which a computer was used appears to be a potential issue in the case, imaging the computer(s) involved should be considered. In such cases, a bit-by-bit copy of the hard drive should promptly be made. Consider whether to employ a qualified *outside expert,* rather than using your internal IT personnel to complete that work. The use of an outside forensic computer expert will help to insulate you from any adverse consequences resulting from the errant handling of the evidence and will limit the need for your IT personnel to become potential witnesses in the litigation.

99999-77016/13501658.4

DocuSign Envelope ID: 2F393D25-FD7F-4912-B9AE-A4B3A873B928

To prevent the inadvertent destruction of potentially relevant ESI, you are obligated to:

(1) discontinue the destruction of potentially relevant information pursuant to any document retention/destruction policy and/or any automated features of your systems that delete or overwrite information;

(2) temporarily stop the recycling of all backup tapes until otherwise directed by counsel;

(3) preserve any storage devices containing potentially relevant information until the information has been preserved or if necessary, until a forensically sound replica (bit by bit mirror image) is made;

(4) temporarily refrain from installing new software that might overwrite potentially relevant data;

(5) maintain properly working virus protection software to protect the data from loss;

(6) preserve any website content and links;

(7) preserve all login ID's, names and passwords, decryption procedures (and accompanying software), network access codes, manuals, tutorials, written instructions, decompression software;

(8) maintain all other information and tools needed to access, review or reconstruct potentially relevant electronic data;

(9) preserve (do not recycle or dispose of) any computers that may have been used during the relevant timeframe;

(10) preserve (do not reuse) computers of key employees who leave or have left your business until the all relevant information has been preserved; and

(11) suspend all maintenance procedures that could result in the deletion of ESI, including disk defragmenting, on computers that may contain relevant information until any relevant ESI stored on those computers has been preserved or until a forensically sound copy of the hard drive has been made, if necessary.

If you have any document retention or document destruction policy, please provide us with a copy of that policy at our initial meeting. If there is a person who is responsible for auditing and/or enforcing that policy, please provide us with that person's contact information at our meeting. We also need to learn if there are any automated features of your computer, email or record keeping systems automatically or routinely delete ESI. If

99999-77016/13501658.4

DocuSign Envelope ID: 2F393D25-FD7E-4912-B9AE-A4B3A873B928

so, we will need to confirm that those features have been suspended and learn when they were deactivated.

8.      *Document Each Step Taken to Preserve ESI*

To defend against claims that you failed to properly preserve ESI, it is extremely important that a record be kept of every step taken by you to implement the litigation hold and to preserve ESI. Document the names of all employees and department heads to whom the litigation hold notice was sent and record when they were notified. Keep copies of the written hold notice and consider sending two copies of the hold notice to your employees with an instruction that they keep one, and sign and return the other as evidence that they received, read and understood its content. Maintain a log of any verbal instructions given, including when the instructions were given, the persons who provided and received the instructions and a summary of the instructions.

Frequently one party will attempt to discredit the other's effort to preserve ESI in the hope of gaining a tactical advantage through the imposition of sanctions. A comprehensive record documenting all efforts that are taken is necessary so that if challenged in court, your efforts at preserving evidence can be properly defended.

9.      *"Metadata," Embedded Data and Data Created or Stored in Unique or Proprietary Formats*

Every document, report or email created on a computer contains hidden electronic information called "metadata." Metadata is literally defined as "data about data." Metadata is automatically created by your computer and functions like a library catalog card for the computer. Among other things, the metadata will reveal: who created a document, when it was created, who last had access to the document, whether it has been revised and by whom, when that revision was made and the number of versions of a document.

Metadata may contain potentially relevant information that can be used to authenticate an electronic document or email and may be sought in discovery. Metadata should be considered part of the original electronic document and should be preserved. One difficulty in preserving metadata is that by simply opening a document and moving it to a folder to preserve it for discovery purposes will alter several metadata fields including when the document was last accessed and who accessed it.

Besides metadata, there is another form of potentially hidden information that can exist in the electronic version of a document which is manually embedded into a document's content itself through the track changes feature of a word processing program. That embedded data may contain information subject to attorney-client privilege or work product protection.

We need to learn if any of your ESI is created or stored in a unique or proprietary format since that may impact the form of its production. We also need to learn if any

10

DocuSign Envelope ID: 2F393D25-FD7E-4912-B94E-A4B3A873B928

aspect of your ESI is electronically searchable as it is ordinarily maintained since that may also impact the format of its production. Are there any unusual aspects of your computer, email or record keeping systems that could make production of ESI difficult or problematic?

The reason we are raising these questions is that the e-discovery rules provide you some choice as to format in which ESI will be produced. ESI can be electronically produced in either its "native state" or in an imaged format. The term "native" when used in an e-discovery context simply refers to the program or file format in which the document or data was originally created. In other words, if a document was created in WordPerfect, producing it in its native state would require production of it in a WordPerfect format. A commonly used image format is Adobe's Portable Document Format or PDF.

There are advantages and disadvantages to each form of electronic production. Producing ESI in its "native state" would include production of any associated metadata or accompanying embedded data. Additionally, documents produced in their native state can be altered. Native documents cannot be Bates stamped or redacted without altering the original. To view an electronic document in its native state which is created or stored in a unique or proprietary format requires that the party receiving it have access to the same software used to create or store the document. On the other hand, documents produced in an imaged format cannot be altered and will not include any metadata unless metadata fields are loaded into the image. Imaged documents can be redacted and bates stamped, but are more costly and take longer to produce.

You should carefully review all of these subjects with your IT department. Your preferred format of ESI production is an issue which we need to discuss with you at this stage because it is a subject which the court's rules require us to address with opposing counsel at the initial scheduling conference.

10.    *Accessibility of Electronic Data*

The federal rules set up a two-tiered system of ESI discovery. Parties are expected to produce ESI that is readily accessible. However, there is no obligation to produce ESI from sources that are not reasonably accessible because of "undue burden or cost." The following are recognized categories of ESI which generally describe the ways data may be stored relative to its potential accessibility:

**Active data** - computer data which is immediately and easily accessible;

**Backup data** – computer data residing on readily available storage media;

**Archived data** – computer data placed into long term storage on backup tapes or other forms of media that may be periodically recycled or reused.

11

99999-77016/13501658.4

DocuSign Envelope ID: 3F393D25-FD7E-4912-B9AE-A4B3A873B92B

**Legacy data** – computer data created on old, out of date, obsolete or no longer used computer systems and/or hardware or software; and

**Deleted data** – computer data that has been "deleted" from a computer's hard drive but is potentially recoverable through computer forensic techniques;

We need to learn if you have any legacy data or legacy system(s), and, if so, whether there is any data which has not been transferred to the system(s) currently in use, and how far back the legacy data which has not been transferred to your current system goes, as well as whether any of that data might be relevant to the issues in this matter. In that event, we would need to determine what steps would be required, and at what expense, to access, review and produce that legacy data.

In addition, we will need to learn how ESI is stored by its custodians. If your systems are backed up or archived, we need to learn what data is backed up and/or archived, how that is accomplished, how frequently the process occurs, how long the ESI is retained, where the backup tapes or archived media is stored and any rotation cycle. To determine the accessibility of ESI from those sources, we should learn what steps would have to be taken, and at what cost, to restore, search for and produce specific data or information on those tapes. We also need to learn if those backup tapes or archived data is used for any reason other than disaster recovery.

We bear the burden of proving that it would be unduly burdensome or costly to produce ESI from these or any other sources or potential repositories of ESI. Thus, we will need to speak with your IT department to discuss any features of your system(s) or the information stored in various sources that would make production of ESI from those sources unduly burdensome or costly. Your IT department will be of invaluable assistance in evaluating whether we can claim that ESI from any of those sources is inaccessible within the meaning of the e-discovery rules and thereby possibly avoiding the expense of producing ESI from those sources. However, you still need to preserve potentially relevant ESI from those sources until the issue of ESI production from those sources has been resolved by agreement with opposing counsel or an order from the court.

11.    *Processing and Production of ESI*

You need to anticipate that you may have to segregate and process for review and production an unknown quantity of electronic data. One way to limit the cost of e-discovery is to use filtering techniques to reduce the size of the data set that may need to be reviewed for privilege and/or produced in discovery. Common filtering techniques include "de-duplication" of identical documents or emails through the use of "hash methodologies," key-word or concept searches, and screening data by date ranges, custodians and/or file types.

DocuSign Envelope ID: 2F393D25-ED7E-4912-B94E-A4B3A873B92B

These are issues we need to discuss at our initial meeting.  You should assess whether your IT staff has the time and/or capacity to collect and process ESI for production in discovery in this matter.  More importantly, you need to assess whether your IT staff should perform these types of tasks given the range of sanctions that could be imposed if ESI is lost in the process.  Having your IT staff perform these tasks could require that they be deposed and opens their work up to review and potential criticism by our opponent and the court.  It also diverts their attention from company business.  While we have our own experienced IT staff who could provide technical or other assistance, there is a risk that if we assist in or actually perform these tasks, our staff could potentially become witnesses if a motion for sanctions were later filed, and in an extreme case, we could be disqualified from representing you.  **Accordingly, unless it would be cost prohibitive or there are other good reasons not to do so in a given matter, we generally recommend that a qualified outside vendor be considered for managing the recovery and processing of ESI necessary for its production.**  Please let us know if you  have used any e-discovery vendors in the past and, if so, whether you were satisfied with their work and would be willing to use them again.

### OTHER E-DISCOVERY RELATED ISSUES

In addition to the issues noted above, at our initial meeting there are several other points that we need to discuss with you.  They include:

- When the litigation hold was issued or the process began;

- What steps have been taken to implement a litigation hold;

- What documentation do you have concerning the steps taken to implement the litigation hold;

- The name and contact information of the person in charge of the hold process or any member of your legal department designated to answer questions;

- What types of ESI are in your possession, what formats is it stored in, and where are the data repositories or sources for that ESI located;

- How much ESI and how many custodians are involved.

Finally please let us know when the appropriate persons from your IT department are available to meet with us.  We do not want to delay our initial meeting with you to cover these various issues, so our meeting with IT does not have to occur the same day.  Depending upon the complexity of your systems, the meeting with your IT staff could run much longer than our meeting to discuss the issues raised above.

13

DocuSign Envelope ID: 3F393D25-FD7F-4912-B9AE-A4B3A873B92B

**SUMMARY**

The duty to preserve and produce ESI has become central to the litigation process. The tasks required to comply with our respective obligations must be performed at the very beginning of a lawsuit, and again periodically throughout the course of the litigation. At our initial meeting, we will discuss with you the strategic implications of these ESI obligations and how our respective obligations will be met in connection with this matter. At that meeting, we will review with you any steps that have already been taken to preserve ESI and work with you to develop a clear plan to properly preserve and produce any potentially relevant ESI on a going-forward basis.

In some cases, e-discovery costs may have little or no impact on litigation or settlement strategies. In other cases, e-discovery may generate significant costs and require the diversion of personnel and resources needed to address a party's e-discovery obligations. The expense involved in locating, reviewing and producing ESI in some cases may warrant serious consideration of an early resolution of the claim. We will be glad to discuss these and any other issues or questions you may have at our initial meeting in the near future. Of course, should you have any questions about what steps should be taken to preserve ESI prior to our initial meeting, please immediately contact us at your earliest convenience.

99999-77016/13501658.4

## **Exhibit B**

### **Declaration of Susheel Kirpalani**

DocuSign Envelope ID: 2F393D25-ED7E-4912-B94E-A483A873B928

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                                    :
In re:                                              :     Chapter 11
                                                    :
VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1]        :     Case No. 22-10943 (MEW)
                                                    :
                              Debtors.              :     (Jointly Administered)
                                                    :
------------------------------------------------------------------x

**DECLARATION OF SUSHEEL KIRPALANI IN SUPPORT OF DEBTOR VOYAGER DIGITAL, LLC'S APPLICATION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 327(e) AND 328(a) AND FED. R. BANKR. P. 2014, 2016 AND 5002 AUTHORIZING EMPLOYMENT AND RETENTION OF QUINN EMANUEL URQUHART & SULLIVAN, LLP AS SPECIAL COUNSEL TO <u>VOYAGER DIGITAL, LLC EFFECTIVE JULY 13, 2022</u>**

I, Susheel Kirpalani, being duly sworn, hereby state as follows:

1.      I am a partner at the firm of Quinn Emanuel Urquhart & Sullivan, LLP ("<u>Quinn Emanuel</u>" or the "<u>Firm</u>"), proposed special counsel to Voyager Digital, LLC ("<u>Voyager LLC</u>") a debtor and debtor in possession in the above-captioned chapter 11 cases, which maintains offices for the practice of law at 51 Madison Avenue, Floor 22, New York, New York 10010, among other domestic and international offices.  I am admitted in, practicing in, and a member in good standing of, the bar of the State of New York and the bar of the United States District Court for the Southern District of New York, among others.

2.      I submit this declaration (the "<u>Declaration</u>") in connection with the application (the "<u>Application</u>")[2] of Voyager LLC to employ and retain Quinn Emanuel as special counsel to

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Voyager Digital Holdings, Inc.'s and Voyager Digital Ltd.'s principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.  Voyager Digital, LLC's principal place of business is 701 S Miami Ave, 8th Floor, Miami, FL 33131.

[2]      Capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Application.

DocuSign Envelope ID: 3F393D25-ED7F-4912-B9AE-A4B3A873B928

provide independent advice to, and at the exclusive direction of, the Special Committee in connection with the Special Committee's Mandate, in accordance with the terms and conditions of that certain engagement letter dated as of July 16, 2022 (the "Engagement Letter").

3.      Unless otherwise stated in the Declaration, I have personal knowledge of the facts set forth herein and, if called as a witness, I would testify thereto.  Certain of the disclosures set forth herein relate to matters not within my personal knowledge but rather within the knowledge of other attorneys and employees at Quinn Emanuel and are based on information provided to me by them.

## QUINN EMANUEL'S QUALIFICATIONS

4.      I was contacted directly by the Independent Directors (as defined below) to assist them with the Special Committee's Mandate.  My understanding is that they caused Voyager LLC to retain Quinn Emanuel as special counsel to render independent advice to, and act at the exclusive direction of, the Special Committee in connection with the Special Committee's Mandate because of the Firm's experience in, among other areas, financial restructuring and litigation.  Quinn Emanuel lawyers have significant experience representing and advising the spectrum of constituents in chapter 11 cases and related proceedings, including debtors, committees, secured and unsecured creditors, independent or disinterested directors, special committees, shareholders, and others.

5.      I and other attorneys at Quinn Emanuel have (either while at Quinn Emanuel or other firms) served as counsel, including pursuant to section 327(e) of the Bankruptcy Code, to independent directors and/or special committees in numerous bankruptcy cases, including, without limitation: *J. Crew Group, Inc.*, *J.C. Penney Company, Inc.*, *Intelsat S.A.*, *Belk, Inc.*, *NII Holdings, Inc.*, and as counsel or special counsel to debtors, official committees, non-debtor affiliates, and creditors in numerous bankruptcy cases, including, without limitation:  *Garrett Motion Inc.,*

DocuSign Envelope ID: 3F393D25-ED7E-4912-B9AE-A4B3A873B92B

*Avianca Airlines*, *Toys "R" Us, Inc.*, *Motors Liquidation Company, f/k/a General Motors Corporation*, *Peabody Energy Corporation*, *Sanchez Energy Corp., Ultra Petroleum Corp., Alpha Natural Resources, Inc.*, *China Fishery Group Limited (Cayman)*, *DPH Holdings Corp.*, *UTGR, Inc. (d/b/a Twin River)*, *Lehman Brothers Holdings, Inc.*, *Nortel Networks, Inc.*, *Fisker Automotive, Inc.*, *RadioShack Corporation*, *Velo Holdings, Inc.*, *SemGroup, L.P.*, *American Home Mortgage Holdings, Inc.*, *Sentinel Management Group*, *Buffets, Inc.*, *New Stream Secured Capital, L.P.*, *Refco Inc.*, *Enron Corp.*, *Safety-Kleen Corp.*, *RCN Corp.*, *Adelphia Communications Corp.*, *Mirant Corp.*, *Tower Automotive, Inc.*, and *Fruit of the Loom, Inc*, and in the Title III readjustments of *the Commonwealth of Puerto Rico* and *COFINA*.  Moreover, I served as examiner and was represented by Quinn Emanuel attorneys in the *Dynegy Holdings LLC* and *Cenveo Inc.* chapter 11 cases.

6.      Additionally, Katherine Lemire and other attorneys at Quinn Emanuel have extensive financial services regulatory and enforcement experience, including with respect to matters relating to blockchain and digital assets.  Prior to joining Quinn Emanuel, Ms. Lemire led the initial enforcement investigations into violations of the DFS cybersecurity regulations, and initiated multiple enforcement investigations into cryptocurrency businesses.

7.      I believe that Quinn Emanuel's extensive experience in representing special committees and independent directors, as well as its knowledge of complex bankruptcy, cryptocurrency, and fiduciary issues, and experience practicing before this Court, make it ideal to effectively serve the specific needs of Voyager LLC with respect to the Special Committee's Mandate.

### SERVICES TO BE PROVIDED

8.      Voyager LLC has requested that Quinn Emanuel serve as special counsel (the "Engagement") to provide independent advice to, and act at the exclusive direction of, the Special

DocuSign Envelope ID: 3F393D25-ED7E-4912-B9AE-A4B3A873B92B

Committee, comprising Timothy Pohl and Jill Frizzley (the "Independent Directors"), in connection with the Special Committee's (a) investigation of historical transactions, public reporting, or regulatory issues undertaken by or relating to Voyager LLC, and particularly its risk policies and compliance, and (b) investigation of any potential estate claims and causes of action against insiders of Voyager LLC, with a particular focus on Voyager LLC's loan to Three Arrows Capital (the "Special Committee's Mandate").

9.    Quinn Emanuel expects to provide various legal services with respect to the Engagement, including, without limitation, interviewing and soliciting information from, and handling document requests to, individuals and entities with knowledge, information, or documents relevant to the Special Committee's Mandate, conducting legal and factual analyses thereof, and taking direction from and reporting and providing advice to the Special Committee regarding the foregoing.

10.    Pursuant to a separate retention application filed with this Court, Voyager LLC and the other Debtors have retained Kirkland & Ellis LLP ("K&E") pursuant to section 327(a) of the Bankruptcy Code as general bankruptcy counsel to the Debtors.  Quinn Emanuel has a narrow focus, limited to the Special Committee's Mandate, and will not act as the Debtors' general bankruptcy counsel in these chapter 11 cases.  The services rendered and functions performed by Quinn Emanuel are not duplicative of work performed by K&E, or any other professionals retained by the Debtors.

## QUINN EMANUEL'S DISCLOSURE PROCEDURES

11.    Quinn Emanuel has a large and diversified legal practice that encompasses the representation of, and representations adverse to, select individuals, funds, institutions, partnerships, limited liability companies, and corporations, some of which are or may consider

4

DocuSign Envelope ID: 3F393D25-ED7E-4912-B9AE-A4B3A873B92B

themselves to be (or in the case of committees, the members may consider themselves to be) creditors or parties-in-interest in the chapter 11 cases, or otherwise to have interests in these cases.

12.    In preparing this Declaration, I, or persons acting at my direction used a set of procedures developed by Quinn Emanuel to comply with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and order of the Court regarding the retention of professionals by estate fiduciaries under the Bankruptcy Code (the "<u>Quinn Emanuel Disclosure Procedures</u>").    Pursuant to the Quinn Emanuel Disclosure Procedures, I performed, or caused to be performed, the following actions to identify the parties relevant to this Declaration and to ascertain Quinn Emanuel's connection to such parties:

    a.    Quinn Emanuel requested and obtained from the Debtors extensive lists of interested parties and significant creditors.  From that list, Quinn Emanuel identified the parties in interests (the "<u>Potential Parties in Interest</u>") that are related to the Engagement.  The Potential Parties in Interest include: (i) the Debtors; (ii) current and former affiliates of the Debtors; (iii) current and former directors and officers of the Debtors; (iv) members of the Debtors' Risk Committee, Loan Risk Committee, and Loan Book Risk Committee (v) holders of more than 5% of equity in any of the Debtors; (vi) lending counterparties of the Debtors; (vii) the Debtors' ordinary course professionals; (viii) the Debtors' restructuring professionals; (ix) taxing authorities and governmental and regulatory agencies relevant to the Debtors; (x) Judges of the United States Bankruptcy Court for the Southern District of New York; and (xi) employees of the U.S. Trustee.  A copy of the list of the Potential Parties in Interest searched by Quinn Emanuel is annexed hereto as **Schedule 1**.

    b.    Quinn Emanuel then compared the names of each of the Potential Parties in Interest to the names in its master electronic database of the Firm's current and recent clients (the "<u>Client Database</u>").  The Client Database generally includes the name of each current and former client of the Firm, the name of the parties who are or were related or adverse to such current or former client, and the names of the Quinn Emanuel personnel who are or were responsible for the current or former matters for such client since 1999.  Quinn Emanuel maintains the Client Database to include additional entities that become related to current and former clients.

    c.    Quinn Emanuel compared the names included on the Potential Parties in Interest list to the names in the Client Database to identify any matches and to determine whether such matches are current or former clients.  In

addition, an email was issued to all Firm professionals requesting disclosure of information regarding known connections between the Firm on the one hand, and the Potential Parties in Interest, on the other hand.

    d.    Known connections between former or recent clients of the Firm and the Potential Parties in Interest were compiled for purposes of preparing this Declaration.  These connections are listed in **Schedule 2** attached hereto.

13.    As a matter of retention and disclosure policy, I will continue to apply the Quinn Emanuel Disclosure Procedures as additional information concerning entities having a connection to the Engagement is developed and will file appropriate supplemental disclosures with this Court, if warranted.

## CONNECTIONS WITH PARTIES IN INTEREST

14.    To the best of my knowledge, information, and belief, the Quinn Emanuel does not have any connection to the Potential Parties in Interest except as described in this Declaration and the attached **Schedule 2**.  Out of an abundance of caution, I am disclosing certain representations, which are not, to my understanding, disqualifying or problematic under either section 327(e) of the Bankruptcy Code or applicable standards of professional ethics.

15.    No partner, of counsel, or associate of Quinn Emanuel, as far as I have been able to ascertain, has any connection with any Potential Party in Interest, except as set forth below or otherwise in this Declaration, including **Schedule 2**.

16.    Listed on the attached **Schedule 2** are entities or affiliates of entities that (a) are current or former clients of Quinn Emanuel, and (b) may have knowledge or involvement related to the Special Committee's Mandate.  To the extent those entities are current clients of the Quinn Emanuel, the Quinn Emanuel's ongoing representation does not involve or relate to the Debtor or the chapter 11 cases.

    a.    Quinn Emanuel represents Alameda Research Ltd., Alameda Ventures Ltd. and certain of their affiliates ("Alameda") in a general advisory role, including with regard to cryptocurrencies.  Even though (i) the Engagement

does not include Quinn Emanuel asserting any claims against Alameda; (ii) Alameda does not have a seat on the boards of any of the Debtors; and (iii) Alameda represents less than .001% of Quinn Emanuel's revenues in 2022 (Quinn Emanuel did not represent Alameda in 2021), to avoid the potential for conflicts (including conflicting positions): Alameda retained another firm to represent it in the Debtors' chapter 11 cases; Alameda consented to the Engagement; and Quinn Emanuel will not provide any future advice to Alameda regarding Voyager LLC or any of the other Debtors. As a condition of this Engagement, any Quinn Emanuel attorney that has provided or will provide advice to Alameda will be walled off from this Engagement, and no confidential information about Voyager LLC or the other Debtors will be shared with Alameda.

b.    Quinn Emanuel represents Scott Vogel, a member of the board of directors for Voyager Digital Holdings, Inc., in matters wholly unrelated to the Debtors. It is my understanding that Mr. Vogel was only recently appointed to his position at Voyager Digital Holdings, Inc. and was uninvolved in any transactions that are the subject of the Special Committee's Mandate or the Engagement. In any case, Quinn Emanuel has obtained an advance conflicts waiver whereby Mr. Vogel expressly agreed that Quinn Emanuel "may now or in the future represent other clients in Restructuring Matters in which we do not represent [Mr. Vogel] even if the interests of the other clients are adverse to [Mr. Vogel] (including the appearance on behalf of another client adverse to [Mr. Vogel] in negotiation, litigation, or arbitration in Restructuring Matters)" so long as the matters are unrelated, as they are here.

17.    Although Quinn Emanuel represents and has represented several other Potential Parties in Interest listed on **Schedule 2**, Quinn Emanuel's representation of those entities are: not substantially related to the Debtors' bankruptcy cases; the representation is of an affiliate of Voyager LLC's particular creditor or borrower; the representation has concluded; or the representations and the claims of those creditors are immaterial and *de minimis*. Moreover, Quinn Emanuel will serve as counsel only with respect to the circumscribed Special Committee Mandate.

18.    No partner, of counsel, or associate of Quinn Emanuel, as far as I have been able to ascertain, has any connection with any Potential Party in Interest, except as set forth below or otherwise in this Declaration, including **Schedule 2**.

19.    In the event that the Firm must become adverse to any party listed on **Schedule 2**, the Firm will first endeavor to obtain an applicable written conflict waiver from that party. To the

DocuSign Envelope ID: 2F393D25-ED7E-4912-B9AE-A4B3A873B928

extent that a waiver does not exist or is not obtained from such client and it is necessary for Voyager LLC to be adverse to that client, they will be represented in such particular matter by separate counsel.

20.    None of the entities listed on **Schedule 2** represents more than 2% of the Firm's annual revenues.

21.    Quinn Emanuel represents, or has represented in the past, clients that are adverse or potentially adverse to numerous creditors (or affiliates of creditors) of Voyager LLC.

22.    From time to time, Quinn Emanuel has referred work to other professionals retained or that may be retained in these chapter 11 cases.  Likewise, certain such professionals have referred work to Quinn Emanuel.

23.    It is possible that certain Quinn Emanuel attorneys or employees hold interests in mutual funds or other investment vehicles that may own interests in the Debtors.

24.    Despite the efforts described above to identify and disclose Quinn Emanuel's connections with Parties in Interest, because Quinn Emanuel is an international law firm with hundreds of attorneys in several offices worldwide, and because Voyager LLC is a corporate enterprise with numerous creditors and other relationships, I am unable to state with absolute certainty that every client representation or other connection has been disclosed.  If I discover additional information that requires disclosure or modification of this Declaration, I will file a supplemental declaration with the Court.

25.    I do not believe that any of the representations or relationships recited above or listed in **Schedule 2** would give rise to a finding that Quinn Emanuel represents or holds an interest adverse to Voyager LLC with respect to the services for which Quinn Emanuel would be retained.

DocuSign Envelope ID: 2F393D25-FD7E-4912-B94E-A4B3A8730928

26.      Accordingly, to the best of my knowledge, Quinn Emanuel:  (a) is not a creditor, equity security holder, or insider of the Debtors; (b) was not, within two years before the date of filing of the Debtors' chapter 11 petitions, a director, officer, or employee of the Debtors; and (c) does not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders.

27.      Quinn Emanuel will review its client database periodically during the course of its engagement in these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise, Quinn Emanuel will use reasonable efforts to identify such further developments and will file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

## PROFESSIONAL COMPENSATION

28.      Quinn Emanuel intends to apply for allowance of compensation for professional services and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court.  The hourly rates and corresponding rate structure Quinn Emanuel will use in these chapter 11 cases are 10% below the hourly rates and corresponding rate structure that Quinn Emanuel uses in other restructuring matters, as well as in non-restructuring matters, whether in court or otherwise, regardless of whether a fee application is required.

29.      Subject to Court approval and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, applicable U.S. Trustee guidelines, and the Local Rules of this Court, Quinn Emanuel will apply a 10% discount on its standard billing rates for all timekeepers, which standard billing rates currently are:  $1,385 to $2,130 for partners and counsel; $830 to $1,315 for associates; and $480 to $670 for paraprofessionals.

30.     Quinn Emanuel's hourly rates are set at a level designed to compensate Quinn Emanuel fairly for the work of its attorneys and legal assistants and to cover fixed and routine expenses.  The rates and rate structure provided by Quinn Emanuel are appropriate and reflect the complex and time sensitive nature of the matters Quinn Emanuel will be handling.  Voyager LLC has been informed that Quinn Emanuel sets its hourly rates on an annual basis.  Moreover, the hourly rates that Quinn Emanuel will use in these chapter 11 cases are the same hourly rates that Quinn Emanuel uses in non-restructuring matters.

31.     These hourly rates are subject to periodic adjustments (typically on September 1st of each year) to reflect economic and other conditions.  Quinn Emanuel will provide notice of any rate increases to Voyager LLC, the United States Trustee for the Southern District of New York (the "U.S. Trustee"), and any official committee appointed by the U.S. Trustee.

32.     Pursuant to Bankruptcy Rule 2016(b), Quinn Emanuel has neither shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, associates, and contract attorneys associated with Quinn Emanuel or (b) any compensation another person or party has received or may receive.

33.     As of the Petition Date, the Debtors did not owe Quinn Emanuel any amounts for legal services rendered before the Petition Date.

## STATEMENT REGARDING U.S. TRUSTEE GUIDELINES

34.     Consistent with the U.S. Trustee Guidelines, I provide the following information in further support of the Application:

    a.  **Question**:  Did Quinn Emanuel agree to any variations from, or alternatives to, Quinn Emanuel's standard billing arrangements for this engagement?

       **Answer**:  Yes.  Quinn Emanuel agreed to provide a 10% discount to its standard billing rates for this Engagement, which standard rates are not different from (a)

DocuSign Envelope ID: 3F393D25-ED7E-4912-B9AE-A4B3A873B928

the rates that Quinn Emanuel charges for most other non-bankruptcy representations or (b) the rates of other comparably skilled professionals.

b.  **Question**: Do any of the Quinn Emanuel professionals in this engagement vary their rate based on the geographic location of the Debtors' chapter 11 cases?

**Answer**: No. The hourly rates used by Quinn Emanuel in representing Voyager LLC are consistent with the rates that Quinn Emanuel charges other comparable chapter 11 clients, regardless of the location of the chapter 11 case.

c.  **Question**: If Quinn Emanuel has represented the Voyager LLC or any of the other Debtors in the 12 months prepetition, disclose Quinn Emanuel's billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition.  If Quinn Emanuel's billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

**Answer**: Quinn Emanuel did not represent any of the Debtors in the 12 months prepetition.

d.  **Question**: Has Voyager LLC approved Quinn Emanuel's budget and staffing plan, and, if so, for what budget period?

**Answer**:  Quinn Emanuel and the Special Committee intend to develop a prospective budget and staffing plan in a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures.  Consistent with the U.S. Trustee Guidelines, the budget may be amended as necessary to reflect changed or unanticipated developments.

35.    Quinn Emanuel will use reasonable efforts to comply with the U.S. Trustee Guidelines.

36.    By reason of the foregoing, I believe Quinn Emanuel is eligible for employment and retention by Voyager LLC pursuant to sections 327(e) and 328(a) of the Bankruptcy Code and the applicable Bankruptcy Rules and Local Rules.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: New York, New York
     July 21, 2022

*/s/ Susheel Kirpalani*
Susheel Kirpalani
Partner, Quinn Emanuel Urquhart &
Sullivan LP

DocuSign Envelope ID: 3F393D25-ED7E-4912-B9AE-A4B3A973B928

## Schedule 1

**Potential Parties In Interest**

DocuSign Envelope ID: 3F393D25-FD7E-4912-B9AE-A4B3A873B928

## DEBTORS

Voyager Digital Holdings, Inc.
Voyager Digital, LLC
Voyager Digital Ltd.

## CURRENT AND FORMER AFFILIATES

LGO SAS France
Voyager Digital Brokerage Ltd. Canada
Voyager Digital Brokerage Canada Ltd. Canada
HTC Trading, Inc. Cayman Islands
Voyager European Holdings ApS Denmark
Voyager Europe France
Voyager IP, LLC USA Delaware
Voyager Digital, LLC USA Delaware
Voyager Digital NY LLC USA Delaware
VYGR Holdings, LLC USA Delaware
VYGR Management LLC USA Delaware
Coinify Financial Services ApS Denmark
Coinify Technologies ApS Denmark
Coinify Ltd. [United Kingdom]
Coinify Global Solutions Inc. USA Delaware
Coinify Payments OU Estonia

## CURRENT AND FORMER DIRECTORS AND OFFICERS

Ackart, Jennifer
Barrilleaux, Janice
Bateman, Lewis
Brooks, Brian
Brosgol, David
Costantino, Daniel
Dreuzy, Gaspard Aupepin de Lamothe
Egert, Mark
Ehrlich, Stephen
Elliott, Guy
Eytan, Philip
Frizzley, Jill
Gidwani, Rakesh
Hanshe, Gerard
Hugo, Victor
Jensen, Marshall
Keslassy, Jordana
Kramer, Pam
Kreiker, Serge
Ladhani, Akbar
Lavine, Shingo
Legg, Michael

Lightfoot, Jeffrey B.
Lilien, Jarrett
Pohl, Tim
Prithipaul, Ashwin
Psaropoulos, Evan
Ray, Matthew
Reynolds, Brandi
Stevens, Glenn
Toth, Krisztian
Vogel, Scott
Walmesley, Erin

## MEMBERS OF THE RISK COMMITTEE, LOAN RISK COMMITTEE, AND LOAN BOOK RISK COMMITTEE

Brill, David
Brosgol, David
Brosnahan, Jon
Costantino, Daniel
Ehrlich, Stephen
Hanshe, Gerard
Jensen, Marshall
Prithipaul, Ashwin
Psaropoulos, Evan
Whooley, Ryan

## HOLDERS OF MORE THAN 5% EQUITY IN ANY OF THE DEBTORS

Alameda Research Ventures LLC

## LENDING COUNTERPARTIES

Three Arrows Capital Ltd.
Alameda Research Ltd.
Alameda Ventures Ltd
Genesis Global Capital, LLC
Galaxy Digital LLC
BitGo Prime, LLC
Anchorage Lending CA, LLC
Anchorage Digital Bank N.A.
Metropolitan Commercial Bank
Tai Mo Shan Limited
Wintermute Trading Ltd.

## TAXING AUTHORITIES

Alabama Department of Revenue
Alaska Department of Revenue
Arizona Department of Revenue

Arkansas Department of Finance and Administration
California Franchise Tax Board
Connecticut Department of Revenue Services
Delaware Division of Revenue
Florida Department of Revenue
Georgia Department of Revenue
Idaho State Tax Commission
Illinois Department of Revenue
Indiana Department of Revenue
Iowa Department of Revenue
Kansas Department of Revenue
Kentucky Department of Revenue
Louisiana Department of Revenue
Maine Revenue Services
Comptroller of Maryland
Michigan Department of Treasury
Minnesota Department of Revenue
Mississippi Department of Revenue
Nebraska Department of Revenue
New Hampshire Department of Revenue Administration
New Jersey Division of Taxation
New Mexico Tax And Revenue Dept
North Carolina Department of Revenue
North Dakota Office of State Tax Commissioner
Oklahoma Tax Commission
Oregon Department of Revenue
Pennsylvania Department of Revenue
Rhode Island Division of Taxation
South Carolina Department of Revenue
Tennessee Department of Revenue
Texas Comptroller of Pub. Accounts
Utah State Tax Commission
Virginia Department of Taxation
District of Columbia - Office of Tax and Revenue
West Virginia Tax Department
Wisconsin Department of Revenue

**OFFICE OF THE U.S. TRUSTEE**
Linda A. Riffkin
Susan Arbeit
Mark Bruh
Shara Cornell
Benjamin J. Higgins
Brian S. Masumoto
Richard C. Morrissey
Andrea B. Schwartz

DocuSign Envelope ID: 3F393D25-FD7E-4912-B9AE-A4B3A873B928

Paul K. Schwartzberg
Shannon Scott
Tara Tiantian
Andy Velez-Rivera
Annie Wells
Greg M. Zipes
William K. Harrington

### **BANKRUPTCY COURT JUDGES**
Chief Judge Martin Glenn
Judge Lisa G. Beckerman
Judge Shelley C. Chapman
Judge Robert D. Drain
Judge James L. Garrity, Jr.
Judge David S. Jones
Judge Sean H. Lane
Judge Cecelia G. Morris
Judge Michael E. Wiles

DocuSign Envelope ID: 3F393D25-ED7E-4912-B94E-A4B3A873B928

## Schedule 2

### Connections to Potential Parties in Interest

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity that is Client | Status |
|---|---|---|
| Alameda Research | Alameda Research | Current Client |
| Alameda Ventures Ltd | Alameda Ventures Ltd | Current Client |
| Anchorage Digital Bank | Anchorage Digital Bank | Current Client |
| Anchorage Lending CA, LLC | Anchorage Lending CA, LLC | Current Client |
| Genesis Global Capital, LLC | Genesis Global Capital, LLC | Former Client |
| Three Arrows Capital Ltd. | Three Arrows Capital Ltd. | Former Client |
| Scott Vogel | Scott Vogel | Current Client |

## **Exhibit C**

**Declaration of Stephen Ehrlich**

DocuSign Envelope ID: 3F393D25-ED7E-4912-B94E-A4B3A873B928

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                                    :
In re:                                              :    Chapter 11
                                                    :
VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1]        :    Case No. 22-10943 (MEW)
                                                    :
                          Debtors.                  :    (Jointly Administered)
                                                    :
------------------------------------------------------------------x

### DECLARATION OF STEPHEN EHRLICH IN SUPPORT OF DEBTOR VOYAGER DIGITAL, LLC'S APPLICATION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 327(e) AND 328(a) AND FED. R. BANKR. P. 2014, 2016 AND 5002 AUTHORIZING EMPLOYMENT AND RETENTION OF QUINN EMANUEL URQUHART & SULLIVAN, LLP AS SPECIAL COUNSEL TO VOYAGER DIGITAL, LLC EFFECTIVE TO JULY 13, 2022

Pursuant to 28 U.S.C. § 1746, I, Stephen Ehrlich, declare that the following is true to the best of knowledge, information and belief:

1.    I am the Chief Executive Officer of Voyager Digital, LLC ("Voyager LLC" and, together with its affiliated debtors, the "Debtors").

2.    I submit this declaration (the "Declaration") in my capacity as agent of the Special Committee and pursuant to the express authorization of the Independent Directors, in support of the *Debtor Voyager Digital, LLC's Application for Entry of an Order Pursuant to 11 U.S.C. §§ 327(e) and 328(a) and Fed. R. Bankr. P 2014, 2016, and 5002 Authorizing Employment and Retention of Quinn Emanuel Urquhart & Sullivan, LLP as Special Counsel to Voyager Digital, LLC Effective July 13, 2022* (the "Application").[2] Except as otherwise noted, all facts in this

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (N/A); and Voyager Digital, LLC (8013). The location of the Voyager Digital Holdings, Inc.'s and Voyager Digital Ltd.'s principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.  Voyager Digital, LLC's principal place of business is 701 S Miami Ave, 8th Floor, Miami, FL 33131.

[2]    Capitalized terms used but not otherwise defined herein have the meanings set forth in the Application.

DocuSign Envelope ID: 3F393D25-ED7E-4912-B9AE-A483A873B928

Declaration are based on my personal knowledge of the matters set forth herein, information gathered from my review of relevant documents, and information supplied to me by other members of the Debtors' senior management and its advisors.

## VOYAGER LLC'S SELECTION OF QUINN EMANUEL

3.       Voyager LLC is requesting that Quinn Emanuel serve as special counsel to provide independent advice to, and act at the exclusive direction of, the special committee of Voyager LLC (the "Special Committee"), comprising independent directors Timothy Pohl and Jill Frizzley (the "Independent Directors"), in connection with (a) the Special Committee's investigation of historical transactions relating to Voyager LLC, (b) the Special Committee's investigation of potential estate claims and causes of action against insiders of Voyager LLC, including claims arising from its loan to Three Arrows Capital, and (c) the performance of any other activities consistent with the foregoing that the Special Committee or Voyager LLC's board otherwise deems necessary or appropriate ((a)-(c), the "Special Committee's Mandate").

4.       Quinn Emanuel and Voyager LLC memorialized the scope of the proposed Engagement in an engagement letter dated July 16, 2022 (the "Engagement Letter").  A copy of the Engagement Letter is annexed as **Exhibit 1** to the Proposed Order.  Voyager LLC agrees and accepts the retention of Quinn Emanuel as counsel on the terms of the Engagement Letter.

5.       Voyager LLC recognizes when selecting legal counsel in complex chapter 11 cases, a comprehensive review process is necessary to ensure that bankruptcy professionals are subject to the same client-driven market forces, scrutiny, and accountability as professionals in non-bankruptcy engagements.

6.       Voyager LLC has decided to retain Quinn Emanuel as special counsel because, among other reasons, Quinn Emanuel possesses complex chapter 11 experience, experience practicing before this Court, and knowledge of this Court's local rules and procedures, making

Quinn Emanuel ideal to efficiently serve the needs of the Voyager LLC; particularly, its Special Committee. Accordingly, I believe that Quinn Emanuel is both well qualified and uniquely able to provide the specialized legal advice sought by Voyager LLC going forward in an efficient and effective manner and that the retention of Quinn Emanuel is in the best interest of Voyager LLC's estate.

## RATE STRUCTURE

7.      In my capacity as General Counsel of Voyager LLC, I am responsible for supervising outside counsel retained by most of the Debtors in the ordinary course of business. Quinn Emanuel has informed Voyager LLC that its hourly billing rates do not vary as a function of whether the services performed relate to a bankruptcy engagement or a non-bankruptcy engagement. Moreover, Quinn Emanuel has agreed to provide a 10% discount on its standard billing rates for all timekeepers, which will be applied to the total fees in each statement.

## COST SUPERVISION

8.      I have been advised that the Special Committee and Quinn Emanuel plan to develop a prospective budget and staffing plan to comply with the U.S. Trustee's requests for information and additional disclosures and any other orders of the Court, recognizing that in the course of a large chapter 11 case like these chapter 11 cases, it is possible that there may be a number of unforeseen fees and expenses that will need to be addressed by the Special Committee and Quinn Emanuel. Voyager LLC further recognizes that it is responsible to monitor closely the billing practices of Quinn Emanuel to ensure the fees and expenses paid by the estate remain consistent with the Special Committee's expectations and the exigencies of the chapter 11 cases. I am advised that the Special Committee will review the invoices that Quinn Emanuel regularly submits, and, together with Quinn Emanuel, amend the budget and staffing plans periodically, as the case develops.

9.       Voyager LLC will bring discipline, predictability, client involvement, and accountability to Quinn Emanuel's fees and expenses reimbursement process.  While every chapter 11 case is unique, Quinn Emanuel's forthcoming budgets will provide guidance on the periods of time and projections of average hourly rates of the attorneys and professionals that will work on the specified matters for which Quinn Emanuel would be retained.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  July 21, 2022

Stephen Ehrlich
Chief Executive Officer
Voyager Digital, LLC

4