Hearing Date and Time:  **August 4, 2022, at 11:00 a.m. (prevailing Eastern Time)**
Objection Deadline:  **July 28, 2022, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:       (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF HEARING OF DEBTORS' MOTION SEEKING ENTRY OF**
**AN ORDER (I) APPROVING THE BIDDING PROCEDURES AND RELATED DATES**
**AND DEADLINES, (II) SCHEDULING HEARINGS AND OBJECTION DEADLINES**
**WITH RESPECT TO THE DEBTORS' SALE, DISCLOSURE STATEMENT,**
**AND PLAN CONFIRMATION, AND (III) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Motion Seeking Entry of an Order (I) Approving the Bidding Procedures and Related Dates and Deadlines, (II) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Sale, Disclosure Statement, and Plan Confirmation, and (III) Granting Related Relief* (the "Motion") will be held on **August 4, 2022, at 11:00 a.m.**, **prevailing Eastern Time** (the "Hearing").  In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted telephonically.  Any

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

parties wishing to participate must do so by making arrangements through CourtSolutions by visiting https://www.court-solutions.com.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Motion shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served so as to be actually received by **July 28, 2022, at 4:00 p.m., prevailing Eastern Time**, by (i) the entities on the Master Service List available on the case website of the above-captioned debtors and debtors in possession (the "Debtors") at https://cases.stretto.com/Voyager and (ii) any person or entity with a particularized interest in the subject matter of the Motion.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing. Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/Voyager. You may also obtain copies of the Motion and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated:  July 21, 2022          /s/ Joshua A. Sussberg
New York, New York            **KIRKLAND & ELLIS LLP**
                              **KIRKLAND & ELLIS INTERNATIONAL LLP**
                              Joshua A. Sussberg, P.C.
                              Christopher Marcus, P.C.
                              Christine A. Okike, P.C.
                              Allyson B. Smith (admitted *pro hac vice*)
                              601 Lexington Avenue
                              New York, New York 10022
                              Telephone:    (212) 446-4800
                              Facsimile:    (212) 446-4900
                              Email:        jsussberg@kirkland.com
                                           cmarcus@kirkland.com
                                           christine.okike@kirkland.com
                                           allyson.smith@kirkland.com

                              *Proposed Counsel to the Debtors and Debtors in Possession*

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC. *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' MOTION SEEKING ENTRY OF AN ORDER (I) APPROVING
THE BIDDING PROCEDURES AND RELATED DATES AND DEADLINES,
(II) SCHEDULING HEARINGS AND OBJECTION DEADLINES
WITH RESPECT TO THE DEBTORS' SALE, DISCLOSURE STATEMENT,
AND PLAN CONFIRMATION, AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this motion (this "Motion"):

**Relief Requested**

1.    The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"), (a) authorizing and approving the proposed bidding procedures attached

as Exhibit 1 to the Order (the "Bidding Procedures"), (b) establishing certain dates and deadlines

relating to the potential sale of the Debtors' equity and/or all or substantially all of the Debtors'

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC
(8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY
10003.

assets (the "Assets") and scheduling an auction (the "Auction"), if any, (c) approving the manner of notice of the Auction, if any, (d) scheduling dates and deadlines in connection with the approval of a disclosure statement (the "Disclosure Statement"), a sale pursuant to section 363 of the Bankruptcy Code (a "Sale"), and/or confirmation of a chapter 11 plan of reorganization (as defined herein, a "Plan"), and (e) granting related relief.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012.  The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105, 363, 1123, 1125, 1126, and 1128 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rules 2002, 3016, 3017, 3018, 3020, 6004, 9006, and 9007, and rules 2002-1, 3017-1, 3018-1, 3020-1, 6004-1, and 9006-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

## Background

5.      On July 5, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Steve Ehrlich, Chief*

*Executive Officer, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 15] (the "<u>First Day Declaration</u>"), incorporated by reference herein.[2]

6.      The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 18].   On July 19, 2022, the United States Trustee for the Southern District of New York (the "<u>U.S. Trustee</u>") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "<u>Committee</u>") [Docket No. 102]. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

## **Introduction**

7.      As described in greater detail in the First Day Declaration, before the Petition Date, the Debtors faced a short-term "run on the bank" due to the downturn in the cryptocurrency market and the 3AC default and subsequent liquidation.  The Debtors commenced these chapter 11 cases to avail themselves of the benefits afforded under chapter 11, including a breathing spell to focus on ensuring a bright path forward that maximizes the value of their enterprise and for the benefit of all stakeholders.

8.      Before the commencement of these chapter 11 cases, the Debtors and their proposed investment banker, Moelis & Company LLC ("<u>Moelis</u>"), initiated a comprehensive marketing process to solicit interest in two general deal structures:  (a) a Sale of the Debtors' entire business; and (b) a capital infusion whereby a third party (individually or as part of a consortium) would provide the requisite funds necessary (a "<u>Financing</u>," and together with a Sale, a "<u>Transaction</u>") to allow the Debtors to weather the current volatility and dislocation in the

---

[2]    Capitalized terms not defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

cryptocurrency industry. This process, which is described in detail in the *Declaration of Jared Dermont Regarding the Debtors' Marketing Process and in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 16], included an initial outreach to over 60 potential financial and strategic partners globally ("Potential Counterparties")—a process that has now continued in earnest post-petition with outreach to 83 Potential Counterparties in the aggregate. These Potential Counterparties are made up of domestic and international strategic cryptocurrency-related businesses and private equity and other investment firms that currently have crypto-related investments and/or historical experience investing in the cryptocurrency industry.

9. By July 21, 2022, over 37 of the Potential Counterparties have entered into confidentiality agreements with the Debtors. Parties who executed a confidentiality agreement received a copy of the Debtors' investor presentation and access to a virtual data room containing thousands of pages of information regarding the Debtors' business operations, finances, and material contracts. In addition, parties that signed confidentiality agreements were offered the opportunity to participate in telephone conferences with the Debtors' management team as well as to request additional due diligence information.

10. Intent on moving expeditiously through the chapter 11 process and to generate positive momentum, the Debtors filed the *Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 17] on the first day of these cases. To ensure the Debtors are maximizing value, the standalone Plan complements the Debtors' ongoing marketing efforts by setting a floor against which potential Transactions will be measured. In furtherance of this goal, the Debtors seek to establish formal Bidding Procedures to set the guidelines for a potential Transaction. The Transaction will either be consummated through: (a) a Plan; or (b) a Sale of all or substantially all of the Debtors'

Assets.  The Debtors believe that the Bidding Procedures will best facilitate a potential Auction, thereby garnering the best recovery available for all stakeholders.  The Bidding Procedures provide for substantial flexibility with respect to the structure of any Transaction and allow the Debtors to select a Stalking Horse Bidder and provide Bid Protections on the terms described in the Bidding Procedures if the Debtors believe, in an exercise of their business judgement, that doing so will generate the best Transaction for their estates.

11.    The Bidding Procedures proposed herein provide appropriate time for the Debtors to complete their comprehensive marketing process, receive and evaluate bids, execute a stalking horse agreement and, if necessary, hold an Auction to determine the highest or otherwise best bid. The proposed dates and deadlines are critical to driving the Debtors' restructuring to an efficient and value-maximizing conclusion, particularly in view of the industry in which the Debtors operate.  At the same time, the Debtors seek to minimize the time and expense in chapter 11.  The Bidding Procedures will expedite resolution of these chapter 11 cases, will cut off the expenses of administering these cases, and will permit the Debtors to distribute value to their stakeholders in a timely manner.  Approval of the Bidding Procedures at the second day hearing in these chapter 11 cases, along with the proposed Sale Schedule, will provide the Debtors with the most optionality to move expeditiously through these chapter 11 cases should one of the many interested purchasers come forward with a viable indication of interest.

12.    To maximize the competitiveness of any bidding process, the Debtors also seek authority to (a) select one or more bidders to act as a stalking horse bidder (each, a "Stalking Horse Bidder"), and (b) in connection with any Stalking Horse Bidder and related agreement, provide customary bid protections in an amount no greater than three percent of the purchase price contemplated by any stalking horse agreement with a Stalking Horse Bidder (the "Bid

Protections") to the extent the Debtors determine that provision of such Bid Protections would be an actual and necessary cost of preserving the value of the Debtors' estates.

13.     Accordingly, the Debtors respectfully request that the Court grant the relief requested herein as establishing formal Bidding Procedures best positions the Debtors for success in these chapter 11 cases.

**Proposed Sale Process and Selection of Stalking Horse Bidder**

**I.     The Bidding Procedures.**

14.     The Debtors are seeking approval of the Bidding Procedures to establish an open process for the solicitation, receipt, and evaluation of bids on a timeline that allows the Debtors to consummate a sale of the Debtors' equity and/or Assets pursuant to section 363 of the Bankruptcy Code or confirmation of a Plan.  The current marketing process launched prepetition on June 20, 2022.  The Bidding Procedures contemplate that all parties that execute confidentiality agreements in accordance with the Bidding Procedures will continue to have access to the data room throughout the sale process.

15.     The timeline set forth in the Bidding Procedures was calculated to balance the need to provide adequate notice to parties in interest and potential bidders with the need to run an expeditious and efficient sale process.  The Bidding Procedures are designed to generate the highest or otherwise best available recoveries to the Debtors' stakeholders by encouraging prospective bidders to submit competitive, value-maximizing bids.  The Debtors believe that the Bidding Procedures and the timeline set forth therein are in the best interests of the Debtors' estates, will establish whether and to what extent any additional market for the assets exists, and provide interested parties with sufficient opportunity to participate. Because the Bidding Procedures are attached as Exhibit 1 to the Order, they are not restated in their entirety herein.

Generally speaking, however, the Bidding Procedures establish the following, among other things:[3]

a.   the requirements that potential bidders must satisfy to participate in the bidding process and become "Acceptable Bidders" (*see* Bid. Proc., at ¶ A);

b.   the availability of, access to, and conduct during due diligence by Acceptable Bidders (*see* Bid. Proc., at ¶ B);

c.   the deadline and criteria by which the Debtors may select one or more Acceptable Bidders to act as a Stalking Horse Bidder and may provide customary Bid Protections to such Stalking Horse Bidder (*see* Bid. Proc., at ¶ C);

d.   the deadlines and requirements for submitting competing bids and the method and criteria by which such competing bids are deemed to be "Qualified Bids" sufficient to trigger an Auction, including the minimum consideration that must be provided, the terms and conditions that must be satisfied, and the deadline that must be met by any Acceptable Bidder to be considered a "Qualified Bidder" (*see* Bid. Proc., at ¶¶ D, E);

e.   the manner in which Qualified Bids will be evaluated by the Debtors to determine the initial minimum overbid for the Auction (*see* Bid. Proc., at ¶ F);

f.   the conditions for having an Auction and procedures for conducting the Auction, if any (*see* Bid. Proc., at ¶¶ G, H);

g.   the criteria by which the winning bidder or bidders will be selected by the Debtors (*see* Bid. Proc., at ¶ I); and

h.   various other matters relating to the sale process generally, including the designation of the back-up bid, the return of any good faith deposits to Qualified Bidders that submit Qualified Bids, and certain reservations of rights (*see* Bid. Proc., at ¶¶ J–P).

16.    Importantly, the Bidding Procedures recognize the Debtors' fiduciary obligations to maximize value, and, as such, do not impair the Debtors' ability to consider all qualified bid proposals, and preserve the Debtors' right to modify the Bidding Procedures as necessary or

---

[3]   This summary is provided for the convenience of the Court and parties in interest.  To the extent there is any conflict between this summary and the Bidding Procedures, the latter governs in all respects.  Capitalized terms used but not otherwise defined in this summary shall have the meanings set forth in the Bidding Procedures.

appropriate to maximize value for their estates. Moreover, through the Bidding Procedures, the Debtors have agreed to provide substantial information about the ongoing sale process to their stakeholders to ensure that they are apprised of the status and determinations related to the Transaction.

## II.    The Sale and Confirmation Schedules.

17.    The Debtors are seeking approval of the Bidding Procedures and the following proposed timeline for the sale and related plan process in parallel (the dates set forth below, respectively, the "Sale Schedule" and the "Confirmation Schedule") to establish a clear and open process for the solicitation, receipt, and evaluation of third-party bids on a timeline that allows the Debtors to consummate a Sale or a Plan. The Debtors respectfully request that the Court approve the Sale Schedule and Confirmation Schedule.

### a.    The Sale Schedule.

| Action | Description | Deadline |
|---|---|---|
| Bid Deadline | The deadline by which all binding bids must be actually received pursuant to the Bidding Procedures. | August 26, 2022 at 12:00 p.m. prevailing Eastern Time |
| Auction | The date and time of the Auction, if one is needed, which will be held at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022. | August 29, 2022 at 10:00 a.m. prevailing Eastern Time, if needed. |
| Sale Objection Deadline | The deadline by which objections to the entry of an order by the Court approving the Sale must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Sale Objection Deadline"). | 7 calendar days before the Sale Hearing. |
| Sale Hearing | The hearing before the Court to consider approval of the successful bid or bids, pursuant to which the Debtors and the winning bidder or bidders will consummate the Sale. | September 7, 2022 at [●] prevailing Eastern Time, or a soon thereafter as the Debtors may be heard. |

b. **The Confirmation Schedule**.

| Action | Description | Deadline |
|---|---|---|
| Deadline to file Disclosure Statement | The deadline for the Debtors to file the Disclosure Statement. | September 7, 2022 |
| Disclosure Statement Objection Deadline | The deadline by which objections to the Disclosure Statement must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Disclosure Statement Objection Deadline"). | 7 calendar days before the Disclosure Statement Hearing. |
| Disclosure Statement Hearing | The date for the hearing for the Court's approval of the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code (the "Disclosure Statement Hearing"). | October 12, 2022 at [●] prevailing Eastern Time, or as soon thereafter as the Debtors may be heard. |
| Solicitation Deadline | The deadline for distributing solicitation packages, including ballots, to holders of claims entitled to vote to accept or reject the Plan (the "Solicitation Deadline"). | 9 days after the entry of the order approving the Disclosure Statement. |
| Plan Objection and Plan Voting Deadlines | The deadline by which (a) objections to the Plan must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Plan Objection Deadline"), and (b) all ballots must be properly executed, completed, and delivered so that they are actually received by the Debtors' notice, claims, and solicitation agent (the "Plan Voting Deadline"). | 7 calendar days before the Confirmation Hearing. |
| Confirmation Hearing | The hearing before the Court to consider approval of the successful bid or bids and confirmation of the Plan (the "Confirmation Hearing"). | November 23, 2022 at [●] prevailing Eastern Time, or a soon thereafter as the Debtors may be heard. |

18.    The dual timelines contemplated in the foregoing Sale Schedule and Confirmation Schedule are essential for the Debtors' swift emergence from chapter 11 and preserving the value of the Debtors' estates.  Accordingly, the Debtors believe the relief requested by this Motion is in best interest of the Debtors' estates, will provide interested parties with sufficient opportunity to participate, and, therefore, should be approved.

III.    **Form and Manner of Transaction Notice**.

19.    The Auction, if needed, shall be scheduled on a date as selected by the Debtors, and will be held on August 29, 2022 at 10:00 a.m. prevailing Eastern Time (or such other date as selected by the Debtors) at the offices of proposed counsel to the Debtors:  Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York, 10022.

20.    As soon as practicable after entry of the Order, the Debtors will cause the Transaction Notice, substantially in the form attached as Exhibit 2 to the Order, to be served on the parties that receive notice of this Motion.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

21.    In addition, as soon as practicable after entry of the Order, the Debtors will post the Transaction Notice on their restructuring website, https://www.cases.stretto.com/Voyager (the "Case Website") and publish the Transaction Notice, with any modifications necessary for ease of publication, on one occasion in *The New York Times* and *The Financial Times*, to provide notice to any other potential interested parties.

22.    The Transaction Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including the date, time, and place of the Auction (if one is held) and the Bidding Procedures and the dates and deadlines related thereto. Accordingly, the Debtors request that the form and manner of the Transaction Notice be approved and no other or further notice of the Auction be required.

## Basis for Relief

I.    **The Relief Sought in the Order Is in the Best Interests of the Debtors' Estates and Should Be Approved**.

23.    "When conducting an asset sale, the ultimate responsibility of the debtor, and the primary focus of the bankruptcy court, is the maximization of the value of the assets sold."  John

J. Jerome & Robert D. Drain, <u>Bankruptcy Court Is Newest Arena for M&A Action</u>, N.Y.L.J.,

June 3, 1991.  In furtherance of that goal, bidding procedures and bid protections, such as those

proposed here, may be used in court-supervised asset sales because they streamline the acquisition

process, "help to provide an adequate basis by which to compare offers," and maximize value.  *Id.*;

*see also Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated*

*Res., Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (bidding procedures and bid protections "are

important tools to encourage bidding and to maximize the value of the debtor's assets"); *see also*

*In re Metaldyne Corp.,* 409 B.R. 661, 670 (Bankr. S.D.N.Y. 2009) ("[b]idder protections are

granted when a bidder provides a floor for bidding by expending resources to conduct due

diligence and allowing its bid to be shopped around for a higher offer.").  In overseeing an asset

sale subject to an auction process, the bankruptcy court must weigh:

> on the one hand, providing for an orderly bidding process, recognizing the danger
> that absent such a fixed and fair process bidders may decline to participate in the
> auction; and, on the other hand, retaining the liberty to respond to differing
> circumstances so as to obtain the greatest return for the bankrupt estate.

*In re Fin. News Network, Inc.*, 980 F.2d 165, 166 (2d Cir. 1992).  Because the bankruptcy court

must perform this balancing act, "a bankruptcy judge's broad discretionary power in conducting

the sale of a debtor's assets should not be narrowed by technical rules mindlessly followed" that

"reduce the broad discretion and flexibility a bankruptcy court must necessarily have to enhance

the value of the estates before it."  *Id.* at 169–70.

24.    Here, the Debtors submit that the Bidding Procedures are a valid exercise of their

business judgment, fair and appropriate under the circumstances, consistent with procedures

routinely approved by courts in this district, and in the best interest of their estates.  Courts have

consistently held that a debtor's business judgment is entitled to substantial deference with respect

to the procedures to be used in selling an estate's assets.  *See, e.g.*, *In re Integrated Res.*,

147 B.R. at 656 (applying business judgment rule to bidding procedures and incentives and noting that "[c]ourts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence"); *In re Culp*, 550 B.R. 683, 697 (D. Del. 2015) ("'In determining whether to authorize use, sale or lease of property of the estate under Section 363, courts require the [debtor] to show that a sound business purpose justifies such actions.' If the [debtor's] decision evidences a sound business purpose, then the Bankruptcy Court should approve the sale." (quoting *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999))); *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification' . . . ." (internal citations omitted)).

25.     The Debtors believe that the proposed Bidding Procedures will promote active bidding from seriously interested parties and will maximize the value of their assets for the benefit of the Debtors' estates. The proposed Bidding Procedures will allow the Debtors to conduct any Auction in a controlled, fair, and open fashion that will encourage participation by financially capable bidders who can demonstrate the ability to close a Sale or consummate a Plan. In particular, the Bidding Procedures contemplate an open and public marketing process with minimum barriers to entry and provide Potential Counterparties with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed bid.

26.     The Debtors respectfully submit that the proposed Bidding Procedures will encourage competitive bidding, are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings, and are consistent with the controlling legal standard in the Second Circuit. Accordingly, the Debtors request that the Court approve the Bidding Procedures as a valid exercise of the Debtors' business judgment.

## II.    The Bid Protections Have a Sound Business Purpose and Should Be Approved.

27.    The Debtors also seek authority pursuant to the Bidding Procedures to pay customary Bid Protections in the form of a breakup fee, in an amount not to exceed three percent of any proposed purchase price, and expense reimbursement.  The Debtors seek to utilize such authority only in their discretion if the Debtors determine in their business judgment that any such Bid Protections will likely facilitate a competitive bidding and auction process.  Bidding incentives and protections like those proposed here have become commonplace for sales of significant assets under the Bankruptcy Code because they enable debtors to solicit and receive contractually committed offers that would otherwise not be possible absent such incentives and protections, while nevertheless maintaining the possibility of enhanced recoveries through a competitive marketing and sale process.  In particular, the Debtors believe that the ability to offer the Bid Protections provides the Debtors with the tools to negotiate for the best possible offers and to establish a floor for further bidding that may increase the consideration given in exchange for their assets.

28.    Bankruptcy courts in the Second Circuit analyze the appropriateness of bidding incentives such as those proposed here using the "business judgment rule" standard, and courts in this district have considered three questions in particular when considering such incentives:  "(1) is the relationship of the parties who negotiated the break-up fee tainted by self-dealing or manipulation; (2) does the fee hamper, rather than encourage, bidding; (3) is the amount of the fee unreasonable relative to the proposed purchase price?"  *In re Integrated Res.*, 147 B.R. at 657; *see also In re Genco Shipping & Trading Ltd.*, 509 B.R. 455, 465 (Bankr. S.D.N.Y 2014); *In re Metaldyne Corp.*, 409 B.R. 661, 670 (Bankr. S.D.N.Y. 2009).  The answer to each of these questions in this instance is emphatically "no."

13

29.     *First*, the Debtors propose to pay the Bid Protections only in the event they determine, after good faith, arm's-length negotiations, that it would be beneficial for their estates to pay such Bid Protections.  For example, the Debtors seek authority to agree to pay a breakup fee in the event that the Debtors elect to enter into a stalking horse arrangement with a Stalking Horse Bidder.  Courts in this district have held that this is an appropriate, if not ***mandatory*** basis for the provision of a breakup fee.  *See, e.g.*, *In re Integrated Res.*, 147 B.R. at 659–60 ("Break-up fees are important tools to encourage bidding and to maximize the value of the debtor's assets . . . . In fact, because the . . . corporation has a duty to encourage bidding, break-up fees can be ***necessary*** to discharge [such] duties to maximize value."  (emphasis added)); *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (breakup fee "may be legitimately necessary to convince a 'white knight' bidder to enter the bidding by providing some form of compensation for the risks it is undertaking" (quotations omitted)).

30.     *Second*, the Bid Protections would encourage, rather than hamper, bidding.  This is particularly true given that bidders will expend time and resources negotiating, drafting, and performing due diligence activities necessitated by the proposed sale process, despite the fact that their bids will be subject not only to Court approval, but to overbidding by third parties.  Without the Bid Protections, a potential bidder may elect not to participate in the process at all to the detriment of the Debtors' estates.  Further, the Bidding Procedures do not ***require*** the payment of the Bid Protections, the Debtors simply have the ***option*** of paying or otherwise incurring such obligations in the event that they determine, in their business judgment, that offering such Bid Protections will result in a competitive bidding process that will maximize the value of the Debtors' estates.  In that instance, the value created for the Debtors' estates will likely greatly outweigh the cost of any Bid Protections.  In any case, granting the Debtors authority to offer the

Bid Protections sends a strong signal to the market that the Debtors are serious about running a competitive sale process to generate the best result for the Debtors and their estates.

31.    *Third*, the amount of the Bid Protections (not including any expense reimbursement or work fees), if any are offered at all, will not exceed three percent of any proposed purchase price.  This is an amount that is well within market for transactions of this type, and which has been routinely approved by courts in this district.  *See, e.g.*, *In re Metaldyne*, 409 B.R. at 670 ("The total amount of the proposed break-up fee and expense reimbursement is less than 3% of the total purchase price.  This falls within the range of what courts in this jurisdiction have found to be [an] acceptable break-up fees."); *In re Garrett Motion, Inc.*, No. 20-12212 (MEW) (Bankr. S.D.N.Y. Oct. 24, 2020) (approving a breakup fee of three percent); *In re LSC Communications, Inc.*, No. 20-10950 (SHL) (Bankr. S.D.N.Y. June 5, 2020) (same); *In re Barneys New York, Inc.*, No. 19-36300 (CGM) (Bankr. S.D.N.Y. Aug. 22, 2019) (same); *In re Hollander Sleep Products, LLC*, No. 19-11608 (MEW) (Bankr. S.D.N.Y. July 3, 2019) (same); *In re Sears Holdings Corp.*, No. 18-23538 (RDD) (Bankr. S.D.N.Y. Nov. 19, 2018); *In re Hooper Holmes, Inc.*, No. 18-23302 (RDD) (Bankr. S.D.N.Y. Sept. 20, 2018) (same); *In re Nine West Holdings, Inc.*, No. 18-10947 (SCC) (Bankr. S.D.N.Y. May 7, 2018) (same); *ARO Liquidation, Inc.*, No. 16-11275 (SHL) (Bankr. S.D.N.Y. May 4, 2016) (same); *In re The Great Atl. & Pac. Tea Co.*, No. 15-23007 (RDD) (Bankr. S.D.N.Y. Aug. 11, 2015) (same).

32.    Accordingly, for the reasons set forth above, the Debtors respectfully submit that the Court grant the Debtors the authority to incur and pay the Bid Protections in their discretion as a valid exercise of the Debtors' business judgment.  Further, to the extent they are needed, the Debtors shall file a notice of Bid Protections if the Debtors, in their business judgment, determine that Bid Protections are necessary pursuant to any Transaction.

III.    **The Form and Manner of Notice Should Be Approved**.

33.    Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide creditors with 21 days' notice of the Auction.  Pursuant to Bankruptcy Rule 2002(c), such notice must include the time and place of the Auction and the deadline for filing any objections to such a sale.

34.    As soon as reasonably practicable following entry of the Order, the Debtors will cause a notice of the Auction, the Order, and the Bidding Procedures, substantially in the form attached as <u>Exhibit 2</u> to the Order (the "<u>Transaction Notice</u>"), to be served upon (a) the United States Attorney's Office for the Southern District of New York, (b) the Internal Revenue Service, (c) the attorneys general for the states in which the Debtors operate, (d) any parties known or reasonably believed to have expressed an interest in the Debtors' assets, (e) all entities known or reasonably believed to have asserted a lien, encumbrance, claim, or other interest in any of the Debtors' assets, and (f) any party that has requested notice pursuant to Bankruptcy Rule 2002.

35.    The Debtors submit that the Transaction Notice constitutes good and adequate notice of the Auction and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002 and Local Rule 2002-1.  Accordingly, no further notice is necessary and the Debtors request that this Court approve the form and manner of the notice of the Transaction Notice.

IV.    **The Court Should Approve the Disclosure Statement Objection Deadline and the Disclosure Statement Hearing.**

36.    Bankruptcy Rule 3017(a) requires that notice of the hearing to consider the proposed disclosure statement be provided to creditors and other parties in interest.  *See* Fed. R. Bankr. P. 3017(a) (providing that after a disclosure statement is filed, it must be mailed with the notice of the hearing to consider the disclosure statement and any objections or modifications thereto on no less than 28 days' notice thereof); *see also* Fed. R. Bankr. P. 2002(b) (requiring not

less than 28 days' notice by mail of the time for filing objections and the hearing to consider the approval of a disclosure statement). The Debtors intend to file the Disclosure Statement on or before September 7, 2022. Additionally, at least 28 days prior to the Disclosure Statement Objection Deadline, the Debtors will serve all known creditors with a copy of a notice for the hearing on the Disclosure Statement.

37. Accordingly, the proposed Disclosure Statement Objection Deadline and Disclosure Statement Hearing date will provide parties in interest with sufficient notice of the Disclosure Statement Hearing and time to object to the Disclosure Statement.

**V.    The Court Should Approve the Voting Deadline, the Plan Objection Deadline, and the Confirmation Hearing Date.**

38. Section 1128 of the Bankruptcy Code provides that a court shall hold a hearing on confirmation of a plan and provides that parties in interest can object to confirmation. 11 U.S.C. § 1128. Additionally, Bankruptcy Rule 3017(c) provides that, "[o]n or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation." Fed. R. Bankr. P. 3017(c); *see also* Fed. R. Bankr. P. 3017(d) (after approval of a disclosure statement, the debtor must transmit the plan, the approved disclosure statement, a notice of the time within which acceptances and rejections of such plan may be filed, and any other information that the court may direct to certain holders of claims).

39. In accordance with Bankruptcy Rule 3017(c) and section 1128 of the Bankruptcy Code, the Debtors request that the Court (a) establish the Solicitation Deadline, (b) require all objections to the Plan be filed with the Court and served upon the applicable notice parties so as to be actually received on or before the Plan Objection Deadline, (c) require all ballots to accept or reject the Plan be properly executed, completed, and delivered so that they are actually received

by the notice, claims, and solicitation agent on or before the Plan Voting Deadline, and (d) establish

the date for the Confirmation Hearing.  The Debtors further request that the Confirmation Hearing

may be continued from time to time by the Court or the Debtors without further notice to parties

in interest other than such adjournment announced in open court and/or a notice of adjournment

filed with the Court and served on the parties that have requested notice pursuant to Bankruptcy

Rule 2002.

    40.    The timeline contemplated in the Confirmation Schedule provides the Debtors with

the requisite flexibility to pursue a Transaction that can be consummated through a Plan.

Scheduling the Confirmation Hearing on the date requested provides the Debtors with an outside

date for implementation and effectuation of any Transaction on an expedient, but carefully-

calculated timeline.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

    41.    To implement the foregoing successfully, the Debtors request that the Court enter

an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and

that the Debtors have established cause to exclude such relief from the 14-day stay period under

Bankruptcy Rule 6004(h).

### Reservation of Rights

    42.    Nothing contained in this Motion or any actions taken pursuant to any order

granting the relief requested by this Motion is intended or should be construed as (a) an admission

as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to

dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular

claim, (d) an implication or admission that any particular claim is of a type specified or defined in

this Motion or any order granting the relief requested by this Motion, (e) a request or authorization

to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code,

(f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### Motion Practice

43.      This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

### Notice

44.      The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable:  (a) the U.S. Trustee; (b) the Committee; (c) the lender under the Debtors' prepetition loan facility; (d) the United States Attorney's Office for the Southern District of New York; (e) the Internal Revenue Service; (f) the Toronto Stock Exchange; (g) the attorneys general in the states where the Debtors conduct their business operations; (h) the Committee; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

45.      No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the

relief requested herein and such other relief as the Court deems appropriate under the

circumstances.

| | |
|---|---|
| Dated:  July 21, 2022 | */s/ Joshua A. Sussberg* |
| New York, New York | **KIRKLAND & ELLIS LLP** |
| | **KIRKLAND & ELLIS INTERNATIONAL LLP** |

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:           jsussberg@kirkland.com
                     cmarcus@kirkland.com
                     christine.okike@kirkland.com
                     allyson.smith@kirkland.com

*Proposed Counsel to the Debtors and Debtors in Possession*

20

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## ORDER (I) APPROVING THE BIDDING PROCEDURES, (II) SCHEDULING THE BID DEADLINES AND THE AUCTION, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) SCHEDULING HEARINGS AND OBJECTION DEADLINES WITH RESPECT TO THE DEBTORS' SALE, DISCLOSURE STATEMENT, AND PLAN CONFIRMATION (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of the above captioned debtors and debtors in possession (the "Debtors") for the entry of an order (this "Order"), (a) authorizing and approving the bidding procedures attached hereto as **Exhibit 1** (the "Bidding Procedures")[2] in connection with the sale of the Assets, (b) approving the Bid Protections, (c) establishing certain dates and deadlines, including the the Bid Deadline, and the date of the Auction, if any, (d) approving the manner of notice of the Auction, if any, (e) scheduling dates and deadlines in connection with approval of a Sale, Disclosure Statement, and confirmation of a Plan, and (f) granting related relief, as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C.

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]   Capitalized terms used but not defined herein have the meanings given to them in the Bidding Procedures.

§§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS THAT:**

A.    The Debtors have articulated good and sufficient reasons for authorizing and approving the Bidding Procedures, which are fair, reasonable, and appropriate under the circumstances and designed to maximize the recovery on, and realizable value of the Debtors' enterprise, including with respect to the proposed procedures for providing Bid Protections as determined by the Debtors in an exercise of their business judgment.

B.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the preceding findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the preceding conclusions of law constitute findings of fact, they are adopted as such.

C.    The Debtors' proposed notice of the Motion, the Bidding Procedures, the Hearing and the proposed entry of this Order is (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and (iii) adequate and

sufficient under the circumstances of these chapter 11 cases, and no other or further notice is required. A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to following parties and/or their respective counsel, as applicable: (a) the U.S. Trustee; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the lender under the Debtors' prepetition loan facility; (d) the United States Attorney's Office for the Southern District of New York; (e) the Internal Revenue Service; (f) the Toronto Stock Exchange; (g) the attorneys general in the states where the Debtors conduct their business operations; (h) the Committee; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.

        D.      The Bid Procedures comply with the requirements of Local Rule 6004-1.

**IT IS HEREBY ORDERED THAT:**

        1.    The Motion is granted as set forth herein.

        2.    All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled prior to or at the Hearing are overruled.

**I.**        **Important Dates and Deadlines**.

        3.    **Final Bid Deadline**.  August 26, 2022, at 12:00 p.m., prevailing Eastern Time, is the deadline by which all Qualified Bids must be **actually** **received** by the parties specified in the Bidding Procedures.

        4.    **Stalking Horse Bidders and Bid Protections**.  The Debtors, upon entry of this Order and at any time up until two calendar days prior to the Auction, shall be authorized, but are not obligated or directed, in an exercise of their business judgment, to select one or more Stalking Horse Bidders with respect to some or all of the Debtors' Assets and to provide such Stalking Horse Bidders with Bid Protections without further action or order by this Court.

5. **Auction**. August 29, 2022 at 10:00 prevailing Eastern Time is the date and time the Auction, if one is needed, will be held at the offices of proposed counsel to the Debtors: Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York, 10022. The Debtors shall send written notice of the date, time, and place of the Auction to the Qualified Bidders no later than two business days before such Auction, and will post notice of the date, time, and place of the Auction no later than two business days before such Auction on the website of the Debtors' notice, claims, and solicitation agent, Stretto, Inc., at www.cases.stretto.com/Voyager. For the avoidance of doubt, the Debtors may also conduct more than one Auction with respect to non-overlapping material portions of the Debtors' Assets.

6. **Sale Objection Deadline**. August 31, 2022, at 4:00 p.m., prevailing Eastern Time, is the deadline by which objections to the Sale must be filed with the Court and served so as to be actually received by the appropriate notice parties.

7. **Sale Hearing**. September 7, 2022, at [●]:00 [a/p].m., prevailing Eastern Time, is the date and time for the hearing for the Court to consider the Successful Bid or Successful Bids, if needed.

8. **Disclosure Statement Objection Deadline**. October 5, 2022, at 4:00 p.m., prevailing Eastern Time, is the deadline by which objections to the Disclosure Statement must be filed with the Court and served so as to be actually received by the appropriate notice parties.

9. **Disclosure Statement Hearing**. October 12, 2022, at [●]:00 [a/p].m., prevailing Eastern Time, is the date and time for the hearing for the Court to consider approval of the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code.

10. **Solicitation Deadline**. October 21, 2022, is the deadline for distributing solicitation packages, including ballots, to holders of claims entitled to vote to accept or reject the Plan.

4

11.    **Plan Objection Deadline**.  November 16, 2022, at 4:00 p.m., prevailing Eastern Time, is the deadline by which objections to the Plan must be filed with the Court and served so as to be actually received by the appropriate notice parties.

12.    **Voting Deadline**.  November 16, 2022, at 4:00 p.m., prevailing Eastern Time, is the deadline by which all ballots must be properly executed, completed, and delivered so that they are actually received by the Debtors' notice, claims, and solicitation agent, Stretto, Inc.

13.    **Confirmation Hearing**.  November 23, 2022, at [●]:00 [a/p].m., prevailing Eastern Time, is the date and time for the hearing for the Court to consider confirmation of the Plan, if needed.

II.    **Auction, Bidding Procedures, Transaction Notice, and Related Relief**.

14. The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**, are incorporated herein and are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to any proposed Sale.  Any party desiring to submit a Bid shall comply with the Bidding Procedures and this Order.  The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures.

15. The Bid Protections are approved on the terms set forth in the Bidding Procedures and the Debtors are authorized, but not directed, to incur and pay such Bid Protections to any or no Stalking Horse Bidder, in an exercise of their business judgment without further action or order by the Court; *provided* that, for the avoidance of doubt, the amount of any Breakup Fee shall not exceed three percent of any Stalking Horse Bidder's proposed purchase price.

16. No person or entity, other than a Stalking Horse Bidder, shall be entitled to any expense reimbursement, break-up fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file

5

with this Court any request for expense reimbursement or any fee of any nature, whether by virtue of Bankruptcy Code section 503(b) or otherwise.

17. Any deposit provided by a Stalking Horse Bidder or other Qualified Bidder shall be held in escrow by the Debtors or their agent, and shall not become property of the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the applicable escrow agreement or order of this Court.

18. The Transaction Notice, substantially in the form attached hereto as **Exhibit 2**, is hereby approved.  As soon as reasonably practicable following the entry of this Order, the Debtors will cause the Transaction Notice to be served upon (a) the United States Attorney's Office for the Southern District of New York, (b) the Internal Revenue Service, (c) the attorneys general for the states in which the Debtors operate, (d) any parties known or reasonably believed to have expressed an interest in the Debtors' assets, and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002.

**III.    Miscellaneous**.

19. Nothing in this Order or the Bidding Procedures shall be deemed a waiver of any rights, remedies or defenses that any party (including the sureties, the Debtors, the Debtors' lenders, any Stalking Horse Bidder, if applicable, or any other prospective purchaser) has or may have under applicable bankruptcy and non-bankruptcy law, under any indemnity agreements, surety bonds or related agreements or any letters of credit relating thereto, or any rights, remedies or defenses of the Debtors with respect thereto, including seeking Bankruptcy Court relief with regard to the Auction, the Bidding Procedures, the Sale, and any related items (including, if necessary, to seek an extension of the Bid Deadline).

20. The Court, at the request of the Debtors and subject to its availability, may modify the dates of and adjourn any hearing set by this Order without further Order of this Court, *provided* that the Debtors will serve notice to all requisite parties informing them of such modification.

21. The failure to include or reference a particular provision of the Bidding Procedures specifically in this Order shall not diminish or impair the effectiveness or enforceability of such a provision.

22. In the event of any inconsistencies between this Order and the Motion and/or the Bidding Procedures, this Order shall govern in all respects.

23. The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

24. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

25. The requirements set forth in Local Rule 9013-1(a) are satisfied.

26. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

27. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

28. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

29.     This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Order.


New York, New York

Dated: _____, 2022

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1</u>**

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC. *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**BIDDING PROCEDURES FOR THE SUBMISSION, RECEIPT, AND**
**ANALYSIS OF BIDS IN CONNECTION WITH THE SALE OF THE DEBTORS**

On July 5, 2022, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

On [●], 2022, the Bankruptcy Court entered an order [Docket No. [●]] (the "Bidding Procedures Order") approving, among other things, these bidding procedures (the "Bidding Procedures"). These Bidding Procedures set forth the process by which the Debtors are authorized to solicit the highest or otherwise best bids (each, a "Bid") and conduct an auction (the "Auction") for the sale (the "Sale") of 100% of the Debtors' equity or some or all of their assets (the "Assets").

The Sale will be implemented pursuant to section 363 of the Bankruptcy Code or a chapter 11 plan of reorganization (as modified, amended, or supplemented from time to time, the "Plan").

Copies of the Bidding Procedures Order or any other documents in the Debtors' chapter 11 cases are available upon request to Stretto. Inc., by calling (855) 473-8665 (Toll-Free) or (949) 271-6507 (International).  or by visiting www.cases.stretto.com/Voyager/.

**A.    Participation Requirements.**

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in submitting a Bid (a "Potential Bidder") must deliver (unless previously delivered) to each of (i) proposed counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C. (jsussberg@kirkland.com), Christopher Marcus, P.C. (cmarcus@kirkland.com), Christine A. Okike, P.C. (christine.okike@kirkland.com), and Allyson B. Smith (allyson.smith@kirkland.com); and (ii) the Debtors' proposed financial advisor and investment banker to the Debtors, Moelis & Company

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

LLC, 399 Park Avenue, 4th Floor, New York, New York 10022, Attn.: Jared Dermont (jared.dermont@moelis.com), Barak Klein (barak.klein@moelis.com), Mike DiYanni (michael.diyanni@moelis.com), and Brian Tichenor (brian.tichenor@moelis.com) (collectively, the "Notice Parties"):

(i)      a written disclosure of the identity of each entity that will be bidding for 100% of the Debtors' equity or Assets or otherwise participating in connection with such Bid;

(ii)     an executed confidentiality agreement on terms reasonably acceptable to the Debtors (the "Confidentiality Agreement"), to the extent not already executed;

(iii)    a non-binding description of the Assets in which such Potential Bidder may be interested in placing a Bid and a non-binding estimate of the purchase price to be paid, with reasonable specificity, including treatment for the Account Holder Claims;[2] and

(iv)    proof by the Potential Bidder of its financial capacity to close a proposed transaction, which may include current unaudited or verified financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach), the adequacy of which will be assessed by the Debtors and their advisors in their reasonable discretion ((i) through (iv), collectively, the "Bid Documents").

Within four business days after a Potential Bidder delivers the Bid Documents, the Debtors will determine and notify that Potential Bidder, whether such Potential Bidder has submitted acceptable Bid Documents (any such Potential Bidder being referred to as an "Acceptable Bidder").

**B.    Due Diligence.**

(i)      **Access to Due Diligence.**

Only Acceptable Bidders will be eligible to receive due diligence and access to additional non-public information regarding the Assets and the Debtors. The Debtors will provide to each Acceptable Bidder reasonable due diligence information concerning those Assets that are the subject of such Acceptable Bidder's Bid (or such other Assets if the list provided in accordance with A.iii above is amended or modified), as requested by such Acceptable Bidder in writing, as soon as reasonably practicable after such request, but shall only extend to those Assets (or such other Assets if the list provided in accordance with A.iii above is amended or modified) that are the subject of such Acceptable Bidder's Bid. The Debtors will post substantially all written due diligence provided to any Acceptable Bidder to the Debtors' electronic data room. The due

---

[2]    "Account Holder Claims" shall have the meaning ascribed to such term in the *Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 17].

diligence period will end on the Bid Deadline (as defined herein), after which the Debtors will have no obligation to furnish any due diligence information.

In connection with the provision of due diligence information to Acceptable Bidders, the Debtors will not furnish any confidential information relating to the Debtors, the Debtors' Assets or liabilities, or the Sale to any person except an Acceptable Bidder or such Acceptable Bidder's duly-authorized representatives, in each case, to the extent provided in the applicable Confidentiality Agreement and only to the extent of the Assets that are the subject of such Acceptable Bidder's Bid.

The Debtors and their financial advisors will coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders; *provided* that the Debtors may decline to provide such information to Acceptable Bidders who, in the Debtors' reasonable business judgment have not established that such Acceptable Bidders intend in good faith to, or have the capacity to, consummate their Bid. No conditions relating to the completion of due diligence will be permitted to exist after the Bid Deadline (as defined herein).

The Debtors also reserve the right to withhold any diligence materials that the Debtors reasonably determine are sensitive, proprietary, or otherwise not appropriate for disclosure to an Acceptable Bidder who the Debtors reasonably determine is a competitor of the Debtors or is affiliated with any competitor of the Debtors. Neither the Debtors nor their representatives will be obligated to furnish information of any kind whatsoever to any person that is not determined to be an Acceptable Bidder.

Each Acceptable Bidder will be deemed to acknowledge and represent that it: (a) has had an opportunity to conduct any and all due diligence regarding the Debtors' Assets and liabilities that are the subject of the Auction to the extent of the Assets and liabilities that are the subject of their Bid prior to making any such Bids; (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise regarding the Debtors' Assets or liabilities, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures. Neither the Debtors nor any of their employees, officers, directors, affiliates, subsidiaries, representatives, agents, advisors, or professionals are responsible for, and will bear no liability with respect to, any information obtained by Acceptable Bidders in connection with the Sale.

---

The Debtors have designated Moelis & Company LLC, 399 Park Avenue, 4th Floor, New York, New York 10022, Attn: Jared Dermont (jared.dermont@moelis.com), Mike DiYanni (michael.diyanni@moelis.com), Barak Klein (barak.klein@moelis.com, Brian Tichenor (brian.tichenor@moelis.com), Mike Mestayer (michael.mestayer@moelis.com) or Cullen Murphy (cullen.murphy@moelis.com), to coordinate all reasonable requests for additional information and due diligence access.

(ii)    **No Communications Among Acceptable Bidders.**

There must be no communications between and amongst Acceptable Bidders, unless the Debtors have previously authorized such communication in writing. The Debtors reserve the right, in their reasonable business judgment to disqualify any Acceptable Bidders that have communications between and amongst themselves; *provided* that any Acceptable Bidder that believes it has been wrongfully disqualified hereunder may file an emergency motion with the Bankruptcy Court seeking the reversal of such disqualification.

C.    **Stalking Horse Bidders and Bid Protections.**

Upon entry of the Bidding Procedures Order and up until two calendar days prior to the Auction, the Debtors shall be authorized, but not obligated, in an exercise of their business judgment, to:  (a) select one or more Acceptable Bidders to act as stalking horse bidders in connection with the Auction (each, a "Stalking Horse Bidder"); and (b) in connection with any stalking horse agreement with a Stalking Horse Bidder (i) provide a breakup fee (the "Breakup Fee"), and/or (ii) agree to reimburse reasonable and documented out-of-pocket fees and expenses (the "Expense Reimbursement," and together with the Breakup Fee, the "Bid Protections").

D.    **Bid Requirements.**

To be eligible to participate in the Auction, an Acceptable Bidder must deliver to the Debtors and their advisors, a written, irrevocable offer that must be determined by the Debtors, in their business judgment, to satisfy each of the following conditions (collectively, the "Bid Requirements"):

(i)    **Purpose**.  Each Acceptable Bidder must state that the Bid includes an offer by the Acceptable Bidder to acquire the Debtors' equity and/or some or all of the Assets, and identify the Assets with reasonable specificity.

(ii)    **Transaction Structure and Purchase Price**.  Each Bid must clearly set forth the purchase price to be paid for the Assets (the "Purchase Price") and must indicate the source of consideration, including funding commitments, and confirm that such consideration is not subject to any contingencies.  The Bid should include a detailed sources and uses schedule.  Each Bid shall also provide for appropriate treatment for the Account Holder Claims as provided in the Plan.

(iii)    **Bid Deposit**.  Each Bid must be accompanied by a cash deposit equal to ten percent of the net asset Purchase Price of the Bid (the "Good Faith Deposit"), which will be held in an escrow account to be identified and established pursuant to the authority granted by the order authorizing the Debtors to maintain and operate their bank accounts, by wire transfer or certified or cashier's check.

(iv)    **Committed Financing**.  To the extent that a Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate the Sale transaction set forth in its Bid with cash on hand, each Bid must include committed financing documented to the Debtors' satisfaction that demonstrates that the Acceptable Bidder has received sufficient debt and/or equity funding commitments to satisfy the

Acceptable Bidder's Purchase Price and other obligations under its Bid. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtors in their sole discretion.

(v)     **Good Faith Offer**.  Each Bid must constitute a good faith, bona fide offer to purchase all or substantially all the Debtors' equity or Assets.

(vi)    **Marked Agreement**.  Each Bid must be accompanied by clean and duly executed transaction documents including, at a minimum, a chapter 11 plan or a draft asset purchase agreement, the form of which will be provided to any Acceptable Bidder prior to the Bid Deadline (as defined herein), including the exhibits and schedules related thereto and any related material documents integral to such Bid pursuant to which the Acceptable Bidder proposes to effectuate the Sale, along with copies that are marked to reflect any amendments and modifications from the form chapter 11 plan or asset purchase agreement provided, which amendments and modifications may not be materially more burdensome or otherwise inconsistent with these Bidding Procedures. The Debtors, in their reasonable business judgment, will determine whether any such amendments and modifications are materially more burdensome.

(vii)   **No Contingencies**.  A Bid must not be conditioned on any contingency, including, among others, on obtaining any of the following (a) financing, (b) shareholder, board of directors, or other approval, and/or (c) the outcome or completion of a due diligence review by the Acceptable Bidder.

(viii)  **Binding and Irrevocable**.  An Acceptable Bidder's Bid must be irrevocable unless and until the Debtors accept a higher Bid and such Acceptable Bidder is not selected as the Back-Up Bidder (as defined herein).

(ix)    **Joint Bids**.  The Debtors will be authorized to approve joint Bids in their reasonable discretion on a case-by-case basis.

(x)     **Adequate Assurance Information**.  Each Bid must be accompanied by sufficient and adequate financial and other information (the "Adequate Assurance Information") to demonstrate, to the reasonable satisfaction of the Debtors, that such Acceptable Bidder (a) has the financial wherewithal and ability to consummate the acquisition of the Assets (the "Closing"), and (b) can provide adequate assurance of future performance in connection with the proposed transaction. The Bid must also identify a contact person that parties may contact to obtain additional Adequate Assurance Information.

(xi)    **Identity & Corporate Authority**.  Each Bid must fully disclose the identity of each entity that will be participating in connection with such Bid (including any equity owners or sponsors, if the purchaser is an entity formed for the purpose of consummating the acquisition of the Assets), and the complete terms of any such

5

participation, along with sufficient evidence that the Acceptable Bidder is legally empowered, by power of attorney or otherwise, to complete the transactions on the terms contemplated by the parties. A Bid must also fully disclose any connections or agreements with the Debtors, any known, potential, prospective bidder or Qualified Bidder (as defined herein), or any officer, director, or equity security holder of the Debtors.

(xii)    **Authorization**. Each Bid must contain evidence that the Acceptable Bidder has obtained authorization or approval from its board of directors (or a comparable governing body reasonably acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

(xiii)   **No Fees**. Each Acceptable Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed transaction, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code; *provided* that the Debtors are authorized in their discretion to provide the Bid Protections to one or more Stalking Horse Bidders in accordance with these Bidding Procedures.

(xiv)    **Adherence to Bidding Procedures**. By submitting its Bid, each Acceptable Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

(xv)     **Regulatory Approvals and Covenants**. A Bid must set forth each regulatory and third-party approval required for the Acceptable Bidder to consummate the applicable Sale, if any, and the time period within which the Acceptable Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty days following execution and delivery of the Plan and/or asset purchase agreement, those actions the Acceptable Bidder will take to ensure receipt of such approvals as promptly as possible).

(xvi)    **As-Is, Where-Is**. Each Bid must include a written acknowledgement and representation that the Acceptable Bidder (a) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid, and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Acceptable Bidder's proposed purchase and sale agreement for the Assets.

(xvii) **Time Frame for Closing**.  A Bid by an Acceptable Bidder must be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid (as defined herein), within a time frame acceptable to the Debtors.

(xviii) **Consent to Jurisdiction**.  The Acceptable Bidder must submit to the jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bidding Procedures, the Plan, the Sale documents, and the Closing, as applicable.

Bids fulfilling all of the preceding requirements, as determined by the Debtors and their advisors will be deemed to be "Qualified Bids," and those parties submitting Qualified Bids will be deemed to be "Qualified Bidders."  The Debtors reserve the right to work with any Acceptable Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid.  The Debtors may accept a single Qualified Bid or multiple Bids for non-overlapping material portions of the Debtors' Assets such that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders will be treated as a single Qualified Bidder for purposes of the Auction; *provided* that the Debtors also reserve the right to conduct more than one Auction with respect to non-overlapping material portions of the Debtors' Assets).

Within two business days after the Bid Deadline (as defined herein), the Debtors and their advisors will determine which Acceptable Bidders are Qualified Bidders and will notify the Acceptable Bidders whether Bids submitted constitute, alone or together with other Bids, Qualified Bids so as to enable such Qualified Bidders to bid at the Auction.  Any Bid that is not deemed a Qualified Bid will not be considered by the Debtors.  For the avoidance of doubt, any Acceptable Bidders designated as Stalking Horse Bidders by the Debtors and in accordance with these Bidding Procedures will be deemed to be Qualified Bidders, and any stalking horse plan and/or asset purchase agreement submitted by such Stalking Horse Bidders will be deemed Qualified Bids, which qualify such Stalking Horse Bidders to participate in the Auction as Qualified Bidders.

**Bids must be sent to the Notice Parties so as to be actually received no later than August 26, 2022, at 12:00 p.m., prevailing Eastern Time (the "Bid Deadline").**

**E.    Evaluation of Qualified Bids.**

Prior to the Auction, the Debtors and their advisors will evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtors' reasonable business judgment, the highest or otherwise best Bid (the "Initial Minimum Overbid").  For the avoidance of doubt, the Debtors may select more than one Qualified Bid to collectively serve as the Initial Minimum Overbid if each such Qualified Bid contemplates the purchase of different Assets.  In making such determination, the Debtors will take into account, among other things, (i) the amount of the Qualified Bid, (ii) the impact on customers, vendors, and employees, (iii) the certainty of a Qualified Bid leading to a confirmed plan, and (iv) the execution risk attendant to any submitted Bids.  Within 24 hours of such determination, but in no event later than the start of the Auction, the Debtors will distribute

copies of the Initial Minimum Overbid to each Qualified Bidder who has submitted a Qualified Bid.

If any Bid is determined by the Debtors not to be a Qualified Bid, the Debtors will refund such Acceptable Bidder's Good Faith Deposit and all accumulated interest thereon on or within five business days after the Bid Deadline.

**F.    No Qualified Bids.**

If no Qualified Bids are received by the Bid Deadline, then the Auction will not occur.

**G.    Auction.**

If one or more Qualified Bids is received by the Bid Deadline, the Debtors will conduct the Auction with respect to the Debtors' Assets.  For the avoidance of doubt, the Debtors may also conduct more than one Auction with respect to non-overlapping material portions of the Debtors' Assets.  The Auction will commence on August 29, 2022, at 10:00 a.m., prevailing Eastern Time, at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, or such later time or other place as the Debtors will timely notify any Stalking Horse Bidders and all other Qualified Bidders.

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

(i)      the Auction will be conducted openly;

(ii)     only the Qualified Bidders, including any Stalking Horse Bidders, will be entitled to bid at the Auction;

(iii)    the Qualified Bidders, including any Stalking Horse Bidders, must appear in person or through duly-authorized representatives at the Auction;

(iv)     only such authorized representatives of each of the Qualified Bidders (including any Stalking Horse Bidders), the Debtors, and their respective advisors will be permitted to attend the Auction;

(v)      bidding at the Auction will begin at the Initial Minimum Overbid;

(vi)     subsequent Bids at the Auction, including any Bids by any Stalking Horse Bidder, must be made in minimum increments in an amount that the Debtors determine, after payment of the Bid Protections to any Stalking Horse Bidders, if applicable;

(vii)    each Qualified Bidder will be informed of the terms of the previous Bids;

(viii)   the bidding will be transcribed to ensure an accurate recording of the bidding at the Auction;

(ix)     each Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the Sale;

(x)      the Auction will not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an overbid at the Auction to the then prevailing highest Bid, subject to the Debtors' right to require last and final Bids to be submitted on a "blind" basis;

(xi)     the Debtors reserve the right, in their reasonable business judgment, to adjourn the Auction one or more times to, among other things, (a) facilitate discussions between the Debtors and Qualified Bidders, (b) allow Qualified Bidders to consider how they wish to proceed, and (c) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing amount; and

(xii)    the Auction will be governed by such other Auction Procedures as may be announced by the Debtors and their advisors from time to time on the record at the Auction; *provided* that such other Auction Procedures are (a) not inconsistent with the Bidding Procedures Order, the Bankruptcy Code, or any other order of the Bankruptcy Court, (b) disclosed orally or in writing to all Qualified Bidders, and (c) determined by the Debtors, in good faith, to further the goal of attaining the highest or otherwise best offer.

For the avoidance of doubt, nothing in the Auction Procedures will prevent the Debtors from exercising their respective fiduciary duties under applicable law (as reasonably determined in good faith by the Debtors).

## H.     Acceptance of the Successful Bid or Successful Bids.

Upon the conclusion of the Auction (if such Auction is conducted), the Debtors, in the exercise of their reasonable, good-faith business judgment, will identify the highest or otherwise best Qualified Bid or Qualified Bids (each, a "Successful Bid"), which will be determined by considering, among other things, (a) the type and amount of Assets sought to be purchased in the Bid or Bids, (b) the total expected consideration to be received by the Debtors, (c) the likelihood of the Qualified Bidder or Qualified Bidders' ability to close a transaction and the timing thereof (including any anticipated delays to Closing and the cost to the Debtors of such delays), (d) the expected net benefit to the estates, (e) the impact on vendors, customers, and employees (f) the certainty of the Debtors being able to confirm a plan, and (g) any other criteria as may be considered by the Debtors in their reasonable, good-faith business judgment. For the avoidance of doubt, the Debtors may select more than one Qualified Bid to collectively serve as a Successful Bid if each such Qualified Bid contemplates the purchase of different Assets. The Qualified Bidder or Qualified Bidders having submitted the Successful Bid or Successful Bids will be deemed the "Winning Bidder" or "Winning Bidders," as applicable. The Winning Bidder or Winning Bidders and the Debtors must, as soon as commercially reasonably practicable, complete

and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which such Successful Bid or Successful Bids were made.

The Debtors will present the results of the Auction to the Bankruptcy Court at the Sale Hearing or Confirmation Hearing (each as defined herein), at which certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that (a) the Auction was conducted, and the Winning Bidder or Winning Bidders were selected, in accordance with these Bidding Procedures, (b) the Auction was fair in substance and procedure, and (c) consummation of the Successful Bid or Successful Bids will provide the highest or otherwise best value for the Debtors' Assets and is in the best interests of the Debtors' estates.

If an Auction is held, the Debtors will be deemed to have accepted a Qualified Bid only when (a) such Qualified Bid is declared a Successful Bid at the Auction, and (b) definitive documentation has been executed in respect thereof. Such acceptance is conditioned upon approval by the Bankruptcy Court of the Successful Bid or Successful Bids and entry of an order approving such Successful Bid or Successful Bids (in the case of a sale under section 363 of the Bankruptcy Code, the "<u>Sale Order</u>" or in the case of a sale under a chapter 11 plan, the "<u>Confirmation Order</u>").

## I.     Sale Hearing.

In the event a transaction is consummated pursuant to section 363 of the Bankruptcy Code, a hearing before the Bankruptcy Court to consider approval of the Successful Bid or Successful Bids (the "<u>Sale Hearing</u>"), pursuant to which the Debtors and the Winning Bidder or Winning Bidders will consummate the Sale, will be held on September 7, 2022, at [●]:00 a.m., prevailing Eastern Time, before the Honorable Michael E. Wiles, United States Bankruptcy Judge for the Bankruptcy Court for the Southern District of New York at One Bowling Green, New York, New York 10004.

**The Sale Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party.**

At the Sale Hearing, the Debtors will present the Successful Bid or Successful Bids to the Bankruptcy Court for approval.

## J.     Confirmation Hearing.

In the event a transaction is consummated through a Plan, a hearing before the Bankruptcy Court to consider confirmation of the Plan (the "<u>Confirmation Hearing</u>") will be held on [November 23], 2022, at [●]:00 [a/p].m., prevailing Eastern Time, before the Honorable Michael E. Wiles, United States Bankruptcy Judge for the Bankruptcy Court for the Southern District of New York at One Bowling Green, New York, New York 10004, and otherwise in accordance with any scheduling orders entered by the Bankruptcy Court relating to confirmation of the Plan or approval of any disclosure statement related thereto.

**The Confirmation Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Confirmation Hearing. No further notice of any such continuance will be required to be provided to any party.**

At the Confirmation Hearing, the Debtors will present the Plan, which will incorporate the terms of the Successful Bid or Successful Bids, to the Bankruptcy Court for confirmation.

**K.     Designation of Back-Up Bidder or Back-Up Bidders.**

If for any reason the Winning Bidder or Winning Bidders fail to consummate the Qualified Bid or Qualified Bids within the time permitted after the entry of the Sale Order approving the Sale to the Winning Bidder or Winning Bidders, then the Qualified Bidder or Qualified Bidders with the next-highest or otherwise second-best Bid or Bids (each, a "Back-Up Bidder"), as determined by the Debtors after consultation with their advisors, at the conclusion of the Auction and announced at that time to all the Qualified Bidders participating therein, will automatically be deemed to have submitted the highest or otherwise best Bid or Bids (each, a "Back-Up Bid"), and the Debtors will be authorized, but not required, to consummate the transaction pursuant to the Back-Up Bid or Back-Up Bids as soon as is commercially reasonable without further order of the Bankruptcy Court upon at least 24 hours advance notice, which notice will be filed with the Bankruptcy Court. Upon designation of the Back-Up Bidder or Back-Up Bidders at the Auction, the Back-Up Bid or Back-Up Bids must remain open until the Closing of the Successful Bid or Successful Bids, as applicable, notwithstanding any outside date set forth in such Back-Up Bidder or Back-Up Bidders' proposed purchase agreement or chapter 11 plan.

**L.     Return of Good Faith Deposit to Qualified Bidders that Submit Qualified Bids.**

The Good Faith Deposit of the Winning Bidder or Winning Bidders will, upon consummation of the Successful Bid or Successful Bids, become property of the Debtors' estates and be credited to the portion of the Purchase Price. If the Winning Bidder or Winning Bidders (or Back-Up Bidder or Back-Up Bidders, if applicable) fails to consummate the Successful Bid or Successful Bids (or Back-Up Bid or Back-Up Bids, if applicable), then the Good Faith Deposit of such Winning Bidder or Winning Bidders (or Back-Up Bidder or Back-Up Bidders, if applicable) will be irrevocably forfeited to the Debtors and may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors.

The Good Faith Deposit of any unsuccessful Qualified Bidders (except for the Back-Up Bidder or Back-Up Bidders and any Stalking Horse Bidders) will be returned within five business days after consummation of the Sale or upon the permanent withdrawal of the proposed Sale. The Good Faith Deposit of the Back-Up Bidder or Back-Up Bidders, if any, will be returned to such Back-Up Bidder or Back-Up Bidders no later than five business days after the Closing with the Winning Bidder or Winning Bidders. The return of any Good Faith Deposit of any Stalking Horse Bidders will be subject to the terms of such Stalking Horse Bidders' chapter 11 plan or asset purchase agreement, as applicable.

All deposits shall be held in escrow and at no time shall be deemed property of the Debtors' estates absent further order of the Bankruptcy Court.

**M.      Reservation of Rights.**

The Debtors reserve their rights to modify these Bidding Procedures in good faith, to further the goal of attaining the highest or otherwise best offer, or impose, at or prior to the Auction, additional terms and conditions on the Sale. The Debtors shall provide notice of any such modification to any Qualified Bidder, including any Stalking Horse Bidders. Notwithstanding anything to the contrary herein, the Debtors may elect to consummate the Sale under section 363(f) of the Bankruptcy Code as opposed to pursuant to the Plan with the Winning Bidder or Winning Bidders, but, for the avoidance of doubt, the Debtors prefer that the Sale be accomplished through the Plan.

**N.      Consent to Jurisdiction.**

All Qualified Bidders at the Auction will be deemed to have consented to the jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Sale, the Auction, the construction and enforcement of these Bidding Procedures, the Bid Requirements, and/or the Bid Documents, as applicable.

Any parties raising a dispute relating to these Bidding Procedures must request that such dispute be heard by the Bankruptcy Court on an expedited basis.

**O.      Fiduciary Out.**

Nothing in these Bidding Procedures will require the board of directors, board of managers, or such similar governing body of a Debtor or non-debtor affiliate to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent such board of directors, board of managers, or such similar governing body reasonably determines in good faith, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law.

**P.      Sale Is As Is/Where Is.**

The Assets sold pursuant to these Bidding Procedures will be conveyed at the Closing in their then-present condition, "**as is, with all faults, and without any warranty whatsoever, express or implied.**"

*      *      *      *      *

**<u>Exhibit 2</u>**

**Transaction Notice**

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC. *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF BIDDING PROCEDURES,
## POTENTIAL AUCTION, AND SALE HEARING

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors")[2] each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on July 5, 2022 (the "Petition Date").

**PLEASE TAKE FURTHER NOTICE** that on July 21, 2022, the Debtors filed a motion [Docket No. ●] (the "Motion") seeking, among other things, the entry of an order approving (a) bidding procedures (the "Bidding Procedures") in connection with the proposed auction (the "Auction") and sale (the "Sale") of the Debtors' equity or some or all of their (the "Assets") to one or more successful bidders, (b) the selection of a Stalking Horse Bidder and the payment of Bid Protections, in certain instances as set forth in the Bidding Procedures, and (c) scheduling dates and deadlines in connection with approval of the Sale (the "Sale Schedule").

**PLEASE TAKE FURTHER NOTICE** that on [●], 2022, the Bankruptcy Court entered an order [Docket No. [●]] (the "Bidding Procedures Order") granting certain of the relief sought

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]     Capitalized terms used in this notice and not immediately defined have the meanings given to such terms in the Bidding Procedures (as defined herein).

in the Motion, including, among other things, approving the Bidding Procedures and the Sale/Confirmation Schedule.

### Contact Persons for Parties Interested in Submitting a Bid

The Bidding Procedures set forth in detail the requirements for submitting Qualified Bids, and any person interested in making an offer to purchase the Debtors' equity and/or Assets **must** comply strictly with the Bidding Procedures.  **Only Qualified Bids that are submitted in accordance with the Bidding Procedures will be considered by the Debtors**.  Any persons interested in making an offer to purchase the Debtors' equity and/or Assets should contact:

| Proposed Financial Advisor and Investment Banker to the Debtors | Proposed Counsel to the Debtors |
|---|---|
| Moelis & Company LLC<br>399 Park Avenue, 3rd Floor<br>New York, New York 10022<br>Attn:  Jared Dermont jared.dermont@moelis.com)<br>Barak Klein (barak.klein@moelis.com)<br>Michael DiYanni (michael.diyanni@moelis.com)<br>Brian Tichenor (brian.tichenor@moelis.com) | Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn:  Joshua A. Sussberg, P.C. (jsussberg@kirkland.com)<br>Christopher Marcus, P.C. (cmarcus@kirkland.com)<br>Christine A. Okike, P.C. (christine.okike@kirkland.com)<br>Allyson B. Smith (allyson.smith@kirkland.com) |

### Obtaining Information

Copies of the Bidding Procedures Order, the Bidding Procedures, and any other related documents are available upon request to Stretto, Inc., the Debtors' notice and claims agent, by calling  855.473.8665  (Toll-Free)  or  949.271.6507  (International)  or  by  visiting www.cases.stretto.com/Voyager/.

### The Sale/Confirmation Schedule

1.      The deadline to submit a Qualified Bid (the "Bid Deadline") is **August 26, 2022, at 12:00 p.m., prevailing Eastern Time**.

2.      The Auction for the Debtors' equity and/or Assets, if one is necessary, will commence on **August 29, 2022, at 10:00 a.m., prevailing Eastern Time**, at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, or at such later time or other place as the Debtors will timely notify any Stalking Horse Bidders and all other Qualified Bidders.

3.      The deadline to file an objection with the Bankruptcy Court to the Sale is **August 31, 2022, at 4:00 p.m., prevailing Eastern Time** (the "Sale Objection Deadline").

4.      A hearing to consider the Sale will be held before the Honorable Michael E. Wiles of the Bankruptcy Court on **September 7, 2022, at [●]:00 [a/p].m., prevailing Eastern Time**, or such other date as determined by the Bankruptcy Court, at One Bowling Green, New York, New York 10004-1408.

## **Filing Objections to the Sale**

Any objection to the Sale must (a) be in writing, (b) state with specificity the nature of such objection, (c) comply with the applicable provisions of the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and any case management order entered by the Bankruptcy Court, and (d) be filed with the Bankruptcy Court and served upon, so as to be **actually received** on or prior to the Sale Objection Deadline, as applicable, by the following parties (i) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C. (jsussberg@kirkland.com), Christopher Marcus, P.C. (cmarcus@kirkland.com), Christine A. Okike, P.C. (christine.okike@kirkland.com), and Allyson B. Smith (allyson.smith@kirkland.com); (ii) the Debtors' proposed financial advisor and investment banker to the Debtors, Moelis & Company LLC, 399 Park Avenue, 4th Floor, New York, New York 10022, Attn.: Jared Dermont (jared.dermont@moelis.com), Barak Klein (barak.klein@moelis.com), Mike DiYanni (michael.diyanni@moelis.com), and Brian Tichenor (brian.tichenor@moelis.com); and (iii) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, New York 10014, Attn:  Richard Morrissey and Mark Bruh.

## **Consequences of Failing to Timely File an Objection**

**Any party or entity who fails to timely file an objection to the Sale on or before the Sale Objection Deadline, as applicable, in accordance with the Bidding Procedures Order, shall be forever barred from asserting any objection to the Sale.**

\*     \*     \*     \*     \*

3