Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF RESPONSE TO ALAMEDA/FTX PRESS RELEASE

**PLEASE TAKE NOTICE** that, on July 5, 2022, simultaneously with filing petitions for chapter 11 protection, Voyager Digital Holdings, Inc. and the other above-captioned Debtors (the "Debtors") filed the *Joint Plan of Reorganization of Voyager Digital Holdings, Inc., and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 17] (the "Plan");

**PLEASE TAKE NOTICE** that, on July 21, 2022, the Debtors filed the *Motion Seeking Entry of an Order (I) Approving the Bidding Procedures and Related Dates and Deadlines, (II) Scheduling Hearings and Objection Deadlines With Respect To the Debtors' Sale, and (III) Granting Related Relief* [Docket No. 126] (the "Bidding Procedures Motion"), proposing an organized process (the "Process") to evaluate proposed alternatives to the Debtors' proposed Plan;

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

**PLEASE TAKE NOTICE** that, on July 22, 2022, Alameda Ventures Ltd., and FTX Trading, Ltd. (together, "AlamedaFTX"), issued a press release publicly attaching a proposal to purchase certain assets of the Debtors while attempting to circumvent or ignore the Plan and the Process described in the Bidding Procedures Motion filed the day prior; and

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file a response to AlamedaFTX's press release, attached hereto as **Exhibit A**, and the Debtors expressly **reserve all rights** against Alameda, FTX, all of their affiliates, and each such entity's officers, directors, and agents.

*[Remainder of page intentionally left blank]*

Dated:  July 24, 2022  
New York, New York

/s/ Joshua A. Sussberg  
**KIRKLAND & ELLIS LLP**  
**KIRKLAND & ELLIS INTERNATIONAL LLP**  
Joshua A. Sussberg, P.C.  
Christopher Marcus, P.C.  
Christine A. Okike, P.C.  
Allyson B. Smith (admitted *pro hac vice*)  
601 Lexington Avenue  
New York, New York 10022  
Telephone:     (212) 446-4800  
Facsimile:     (212) 446-4900  
Email:          jsussberg@kirkland.com  
                   cmarcus@kirkland.com  
                   christine.okike@kirkland.com  
                   allyson.smith@kirkland.com  

*Proposed Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Response**

Re:  July 22, 2022, Press Release by Alameda and FTX

On July 5, 2022, Voyager filed a proposed stand-alone Plan of Reorganization that would reorganize the company, return to customers all of their cash and as much of the cryptocurrency they placed on Voyager's platform as possible as promptly as possible, and provide customers additional recovery in he form of both the equity of reorganized Voyager and any recovery against Three Arrows Capital.[1]  In parallel, Voyager has engaged with more than 80 third-party investors or buyers to determine whether there is an alternative transaction that would be better for customers than the stand-alone Plan.  On July 21, 2022, Voyager filed a Bidding Procedures Motion seeking to thoroughly and promptly compete that process.[2]

The day after Voyager filed its Bidding Procedures Motion, one of Voyager's competitors and largest stakeholders, Alameda Ventures Ltd. and FTX Trading Ltd. (together, "AlamedaFTX") issued a press release[3] attaching a proposal simultaneously e-mailed to Voyager (the "Proposal"). AlamedaFTX's cover letter openly disparaged Voyager, and the statements AlamedaFTX made to the public about its proposal are, at best, highly misleading.

Voyager will entertain any serious proposal made pursuant to the Bidding Procedures described in its Motion.  It seems clear, however, that AlamedaFTX's Proposal, which was made in contravention of the proposed Bidding Procedures, was designed to generate publicity for itself rather than value for Voyager's customers.

Hopefully customers understand that public dissemination of proposals that subvert a coordinated, confidential, competitive bidding process can have the effect of chilling bidding. AlamedaFTX's actions are **not** value maximizing.   Nevertheless, since the Proposal is now public, we encourage all of our creditors and customers to read it.  Really read it.  And understand it with the benefit of the following analysis.  The AlamedaFTX proposal is nothing more than a liquidation of cryptocurrency on a basis that advantages AlamedaFTX.  It's a low-ball bid dressed up as a white knight rescue.  To anyone who reads the Proposal even in a cursory way, it will be obvious that the stand-alone Plan that Voyager filed is capable of delivering far more value to customers than the AlamedaFTX proposal—which transfers significant value to AlamedaFTX, and completely eliminates the value of assets that are of no interest to AlamedaFTX.

AlamedaFTX essentially proposes a liquidation where FTX serves the role of liquidator. The "fair value" of Voyager's cryptocurrency assets and loans is subject to negotiation with AlamedaFTX.  The Proposal requires converting customer cryptocurrency claims into U.S. dollars based on prices as of July 5, 2022 and paying cryptocurrency claims in U.S. dollars, with customers bearing the tax consequences associated with dollarizing and liquidating their claims.

---

[1]    *Joint Plan of Reorganization of Voyager Digital Holdings, Inc., and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [U.S. Bankruptcy Court for the Southern District of New York, Case No. 22-10943 (MEW), Docket No. 17] (the "Plan")

[2]    *Motion Seeking Entry of an Order (I)Approving the Bidding Procedures and Related Dates and Deadlines, (II) Scheduling Hearings and Objection Deadlines With Respect To the Debtors' Sale, and (III) Granting Related Relief* [U.S. Bankruptcy Court for the Southern District of New York, Case No. 22-10943 (MEW), Docket No. 126] ("the Bidding Procedures Motion")

[3]    https://www.prnewswire.com/news-releases/ftx-proposes-joint-plan-to-offer-early-liquidity-to-voyager-digitals-customers-in-bankruptcy-proceeding-301591902.html

More specifically, the Proposal contemplates a "two-pronged" transaction structure:

- AlamedaFTX purchases Voyager's cryptocurrency assets and cryptocurrency loans at "fair market value," moves the **_cryptocurrency_** into its own account, and moves the **_cash value_** of such assets and loans onto FTX's platform for distribution to customers.

- Customers can elect to open an account with FTX and receive their "share" of the cash through an FTX account. **No customer will be made whole under the Proposal, nor will any cryptocurrency be returned to customers under the Proposal**.

The Proposal harms customers (but benefits AlamedaFTX) for many reasons, including:

- First, the way in which the AlamedaFTX Proposal was made chills bidding and undermines efforts to maximize value that are inherent in a competitive process.

- Second, the cover letter attached to the Proposal suggests that AlamedaFTX believes customer claims based on cryptocurrency investments are "capped" at the U.S. dollar value of those investments on July 5, 2022. Voyager disagrees with the premise of AlamedaFTX's cover letter, and Voyager's proposed stand-alone plan is clear that customer claims are not "capped."

- Third, the Proposal requires converting and paying cryptocurrency claims in U.S. dollars. But it ignores the tax consequences of the transaction—customers may have to pay capital gains or other tax on distributions, diluting their recovery. By contrast, Voyager's stand-alone plan, as proposed, does not aim to dollarize customer claims.

- Fourth, the Proposal would effectively eliminate the VGX token, which Voyager believes would destroy in excess of $100 million in value immediately.

- Fifth, the Proposal declares that there is no value in the Voyager platform and intellectual property, but simultaneously requires a downward price adjustment if Voyager chooses to keep it and sell it to a third party, which makes no sense.

- Sixth, the Proposal burdens Voyager (and customers) with both migration and wind-down expenses, while requiring customers to set up an account on the FTX platform.

More generally, the Proposal contemplates customers "choosing" to receive cash from FTX or retain their claims. But that could create chaos in the process and seriously disadvantage customers who choose not to participate in what Voyager believes a value-weaking proposition. Voyager's ability to reorganize on its own or to consummate a transaction for the remainder of the company to maximize value for all would be at a minimum, stuck in limbo, and potentially forever sacrificed. This problem is exacerbated by the fact that FTX US does not support the majority of the coins offered on Voyager.

The Proposal also makes several false and misleading assertions.

- First, AlamedaFTX states that it will "write-off" its $75 million loan in an effort to provide additional recovery to customers. Voyager believes that AlamedaFTX's loan

is already structurally subordinated to customer claims—it is not entitled to a recovery on account of its loan unless customers are paid in full first. Indeed, AlamedaFTX's publicly stated rationale for providing the $75 million revolver was to protect customers, which is directly contrary to the suggestion in the Proposal that the loan is now somehow *pari passu* with customer accounts. Accordingly, Voyager's proposed stand-alone plan provides that AlamedaFTX will not receive any distribution. The $75 million "write-off" in the Proposal does not increase customer recoveries at all.

- Second, the Proposal states that AlamedaFTX "is open to including or excluding [FBO cash accounts] from the transaction, as best for customers." But cash held in the FBO account is not property of Voyager and is instead property of its customers. Voyager filed a motion to honor withdrawals by customers from the FBO account, which will be heard by the Bankruptcy Court on August 4, 2022. If approved by the Bankruptcy Court, Voyager will work with Metropolitan Commercial Bank to allow customers to withdraw their cash from the FBO account as quickly as possible. It is at best unclear how the FBO account would be handled by AlamedaFTX under the Proposal, and addressing that issue would be critical if the Proposal were otherwise viable. But because Voyager has already sought to resolve customer cash in the FBO account, inclusion or exclusion of FBO accounts from the Proposal is irrelevant.

- Finally, AlamedaFTX states that it "does not ascribe independent value to the Voyager brand or intellectual property." Voyager strongly disputes this statement, which we do not believe even AlamedaFTX believes. Voyager continues to market a sale of its business to potential strategic investors and will continue working to maximize the value of its business. By insisting that it acquire such assets in the Proposal, but refusing to pay for them, AlamedaFTX proposes to pay a reduced price for Voyager's business, further reducing any distributions to customers.

AlamedaFTX's proposal purports to allow customers to be "long crypto" while receiving cash on account of their claim. But all AlamedaFTX's proposal actually does is buy customers' claims at a discount. Again, Voyager has already filed a proposed stand-alone Plan that would reorganize the company, return to customers all of their cash and as much of the cryptocurrency they placed on Voyager's platform as possible as promptly as possible, and provide customers upside in both the value of reorganized Voyager and any recovery from Three Arrows Capital. And Voyager will consider **any serious proposal** that is better for customers than the proposed stand-alone Plan as part of the orderly process described in Voyager's Bidding Procedures Motion.

In the interim, many third parties have speculated that AlamedaFTX—because of its various relationships with Voyager, including as creditor, lender, and equity holder—had an "inside track" to acquire Voyager on some type of sweetheart transaction terms. Nothing could be further from the truth as evidenced by this response. Voyager's process will not be obstructed by anyone, including Alameda/FTX.

By making its Proposal publicly in a press release laden with misleading or outright false claims, AlamedaFTX violated many obligations to the Debtors and the Bankruptcy Court. Voyager reserves all rights and remedies against AlamedaFTX for its clear and intentional subversion of the bankruptcy process and the damages that may be suffered by customers and other

creditors as a result.  Voyager will remain steadfast in its restructuring process, continuing to work toward a value-maximizing transaction that is beneficial to Voyager's customers and stakeholders.