Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC. *et al.*,[1] | Case No. 22-10943 (MEW) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF JARED DERMONT IN SUPPORT OF THE
DEBTORS' MOTION SEEKING ENTRY OF AN ORDER (I) APPROVING
THE BIDDING PROCEDURES AND RELATED DATES AND DEADLINES,
(II) SCHEDULING HEARINGS AND OBJECTION DEADLINES WITH RESPECT
TO THE DEBTORS' SALE, DISCLOSURE STATEMENT AND PLAN
CONFIRMATION, AND (III) GRANTING RELATED RELIEF**

I, Jared Dermont, declare as follows under penalty of perjury:

1.     I am a Managing Director and head of the Financial Institutions Group (the "FIG Group") at Moelis & Company LLC ("Moelis"), an investment banking firm that has its principal office at 399 Park Avenue, 5th Floor, New York, New York 10022.  Among the businesses and products that fall within the purview of the FIG Group are cryptocurrency, banks, asset managers,

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

securities exchanges, and insurance companies. I also oversee Moelis' special purpose acquisition company advisory and capital markets businesses.

2. Moelis has been engaged as the proposed investment banker to the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"). I submit this declaration (this "Declaration") in support of the *Debtors' Motion Seeking Entry of an Order (I) Approving the Bidding Procedures and Related Dates and Deadlines, (II) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Sale, Disclosure Statement, and Plan Confirmation, and (III) Granting Related Relief* [Docket No. 126] (the "Motion"),[2] and to supplement my prior *Declaration of Jared Dermont Regarding the Debtors' Marketing Process and in Support of the Debtors Chapter 11 Petitions and First Day Motions* [Docket No. 16] (the "Previous Declaration").

3. A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Steve Ehrlich, Co-Founder and Chief Executive Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 15] (the "First Day Declaration"), and is incorporated by reference herein.

4. Unless otherwise indicated, all facts set forth in this Declaration are based upon (a) my personal knowledge of the prepetition marketing process, (b) information learned from my review of relevant documents, or (c) information I received from Moelis or the Debtors' other advisors. I am not being specifically compensated for this testimony other than through payments that are proposed to be received by Moelis as a professional retained by the Debtors. If I were

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion or the First Day Declaration (as defined herein), as applicable. The material terms of the Bidding Procedures are set forth in greater detail in the Motion.

2

called upon to testify, I could and would competently testify to the facts set forth herein. I am authorized to submit this Declaration on behalf of the Debtors.

## Qualifications

5.     Moelis is an investment banking firm with its principal office located at 399 Park Avenue, 5th Floor, New York, New York 10022. Moelis is a registered broker-dealer with the United States Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority. Moelis was founded in 2007 and is a wholly-owned subsidiary of Moelis & Company Group LP. Moelis & Company Group LP, together with its subsidiaries, has approximately 1,000 employees based in offices in North America, South America, Europe, the Middle East, and Asia. Moelis & Company Group LP is a subsidiary of Moelis & Company, a public company listed on the New York Stock Exchange.

6.     Moelis provides a broad range of financial advisory and investment banking services to its clients, including (a) general corporate finance; (b) mergers, acquisitions, and divestitures; (c) corporate restructurings; (d) special committee assignments; and (e) capital raising. Moelis and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 cases. Moelis' business reorganization professionals have served as financial advisors and/or investment bankers in numerous cases, including: In re Knotel, Inc., No. 21-10146 (MFW) (Bankr. D. Del. Mar. 12, 2021); In re CBL & Assocs. Props., Inc., No. 20-35226 (DRJ) (Bankr. S.D. Tex. Dec. 30, 2020); In re Energy Alloys Holdings, LLC, No. 20-12088 (MFW) (Bankr. D. Del. Nov. 23, 2020); In re Jason Indus., Inc., No. 20-22766 (RDD) (Bankr. S.D.N.Y. Aug. 27, 2020); In re The Hertz Corp., No. 20-11218 (MFW) (Bankr. D. Del. July 30, 2020); In re Extraction Oil & Gas, Inc., No. 20-11548 (CSS) (Bankr. D. Del. Aug. 11, 2020); In re The McClatchy Co., No. 20-10418 (MEW)

(Bankr. S.D.N.Y. May 18, 2020); In re Internap Technology Solutions Inc., No. 20-22393 (RDD) (Bankr. S.D.N.Y. May 5, 2020); In re Rentpath Holdings, Inc., No. 20-10312 (BLS) (Bankr. D. Del. Mar. 10, 2020); In re Sanchez Energy Corp., No. 19-34508 (MI) (Bankr. S.D. Tex. Oct. 21, 2019); In re Monitronics Int'l, Inc., No. 19-33650 (DRJ) (Bankr. S. D. Tex. Aug. 1, 2019); In re Aegerion Pharmaceuticals, Inc., No. 19-11632 (MG) (Bankr. S.D.N.Y. July 10, 2019); In re Joerns WoundCo Holdings, Inc., No. 19-11401 (JTD) (Bankr. D. Del. July 25, 2019); In re FTD Cos., No. 19-11240 (LSS) (Bankr. D. Del. July 2, 2019); In re Hexion Holdings LLC, No. 19-10684 (KG) (Bankr. D. Del. May 15, 2019); In re Aegean Marine Petroleum Network Inc., No. 18-13374 (MEW) (Bankr. S.D.N.Y. Feb. 20, 2019); In re Parker Drilling Company, Inc., No. 18-36958 (MI) (Bankr. S.D. Tex. Jan. 15, 2019); In re Aralez Pharmaceuticals US Inc., No. 18-12425 (MG) (Bankr. S.D.N.Y. Oct. 31, 2018); In re iHeartMedia, Inc., No. 18-31274 (MI) (Bankr. S.D. Tex. July 24, 2018); In re Global A&T Electronics Ltd., No. 17-23931 (RDD) (Bankr. S.D.N.Y. Feb. 26, 2018); In re Toys "R" US, Inc., No. 17-34665 (KLP) (Bankr. E.D. Va. Nov. 21, 2017); In re TK Holdings, Inc., No. 17-11375 (BLS) (Bankr. D. Del. Aug. 30, 2017); In re Basic Energy Services, Inc., No. 16-12320 (KJC) (Bankr. D. Del. Nov. 17, 2016); In re UCI International, LLC, No. 16-11354 (MFW) (Bankr. D. Del. July 12, 2016); In re AOG Ent., Inc., No. 16-11090 (SMB) (Bankr. S.D.N.Y. June 8, 2016); In re SFX Entertainment, Inc., No. 16-10238 (MFW) (Bankr. D. Del. Mar. 21, 2016); In re American Apparel, Inc., No. 15-12055 (BLS) (Bankr. D. Del. Nov. 30, 2015); In re Allied Nevada Gold Corp., No. 15-10503 (MFW) (Bankr. D. Del. Apr. 15, 2015); In re ITR Concession Co., No. 14-34284 (Bankr. N.D. Ill. Oct. 28, 2014); In re GSE Envt'l, Inc., No. 14-11126 (MFW) (Bankr. D. Del. May 30, 2014); In re MACH Gen, LLC, No. 14-10461 (MFW) (Bankr. D. Del. Apr. 11, 2014); In re MPM Silicones, LLC, No. 14-22503 (RDD) (Bankr. S.D.N.Y. May 16, 2014).

7. I have over 25 years of investment banking experience advising companies, equity investors, financial vehicles, creditors, and government entities across a broad range of industries and geographies in a broad range of transactions. Prior to joining Moelis I was a Managing Director at Rothschild, Inc. where I focused on global M&A and restructuring transactions. I hold a Bachelor of Arts degree in economics from Tufts University.

8. I have been involved in many notable chapter 11 cases and restructuring assignments, including as lead investment banker in Jason Industries' chapter 11 reorganization, Atrium Companies, Inc.'s chapter 11 reorganization via sale to Golden Gate Capital and Kenner & Company, and Orchard Brands $725 million chapter 11 reorganization; as advisor to the ad hoc committee of bond holders in Chemtura's $2.7 billion chapter 11 reorganization; as advisor to the ad hoc senior secured noteholders in Neenah Enterprises chapter 11 reorganization; as advisor to the ad hoc group of senior unsecured noteholders in Walter Investment Management Corporation's $4.1 billion restructuring; as advisor to the official committee of unsecured creditors of Residential Capital in its $15 billion chapter 11 reorganization; as advisor to New Residential Investment Corporation's $1.2 billion acquisition of select assets from Ditech Holding Corporation pursuant to a section 363 asset sale; and as advisor to Syncora Guarantee Inc. in American Roads LLC's $840 million pre-packaged chapter 11 reorganization. I have also been involved in numerous restructuring transactions outside of the chapter 11 context, including advising New Residential Investment Corporation in its $600 million recapitalization and restructuring, Ambac Financial Group in its $18 billion restructuring of Puerto Rico's sales tax financing corporation (COFINA), Syncora Guarantee Inc. in its $13.5 billion reinsurance of financial guarantee policies to Assured Guarantee Corporation and other liability management including the sale of its operating business

5

to GoldenTree Asset Management, and MFA Financial, Inc. in its $5.8 billion restructuring of its repurchase agreement portfolio.

## Overview

9.      As described in greater detail in the Previous Declaration, Moelis was engaged by the Debtors in June 2022 to advise the Debtors as to strategic alternatives in light of the Debtors' efforts to navigate the recent challenges impacting the cryptocurrency industry. I have been involved as a senior member of the Moelis team throughout our engagement.

## Marketing Process

10.     Beginning on or about June 20, 2022, Moelis initiated a dual-track marketing campaign to solicit interest in, among other possible deal structures: (a) a sale of the Debtors' entire business to either a financial sponsor or a strategic company in the cryptocurrency industry (a "Sale") and (b) a capital raise whereby a third party (individually or as part of a consortium) would provide a capital infusion into the Debtors' business enterprise (a "Financing," and together with a Sale, a "Transaction") to allow the Debtors to weather the current volatility in public equity markets, the decline in cryptocurrency prices, and dislocation in the cryptocurrency industry caused, in part, by the decline of 3AC and the collapse of the Terra Luna ecosystem.

11.     To that end, Moelis initially reached out to 60 potential financial and strategic partners across the globe (collectively, the "Potential Counterparties")—a process that has now continued in earnest post-petition with outreach to 83 Potential Counterparties in the aggregate— including domestic and international strategic cryptocurrency-related businesses and private equity and other investment firms that currently have crypto-related investments and/or historical experience investing in the cryptocurrency industry. By July 21, 2022, 37 of the Potential Counterparties had entered into confidentiality agreements with the Debtors. Parties who executed

6

a confidentiality agreement received a copy of the Debtors' investor presentation and access to a virtual data room containing thousands of files with certain information regarding the Debtors' business operations, finances, material contracts, tax information, and incorporation documents. In addition, parties that signed confidentiality agreements were offered the opportunity to participate in telephone conferences with the Debtors' management team as well as to request additional due diligence information.

12. As described in the Motion, the Debtors, intent on moving expeditiously through the chapter 11 process and to generate positive momentum, filed the *Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 17] (the "Plan") on the first day of these cases. The Plan proposes to reorganize the company and return to customers their FBO cash and as much of the cryptocurrency on Voyager's platform as soon as possible. The Plan also proposes to provide customers with additional recovery in the form of both equity of reorganized Voyager and any recovery the Debtors realize from Three Arrows Capital. The standalone Plan complements the Debtors' ongoing marketing efforts by setting a floor against which potential Transactions will be measured. The proposed Bidding Procedures provide the Debtors with the opportunity to continue their marketing process in earnest and to work with Potential Counterparties on the terms of a potential Transaction that may provide more value for stakeholders than the standalone Plan.

13. Importantly, the proposed Bidding Procedures set parameters around the marketing process and the solicitation, receipt, and evaluation of bids. The proposed Bidding Procedures establish an orderly, open process by which serious, sophisticated parties can participate in the marketing process and express legitimate interest in acquiring the Debtors' business. The

7

proposed Bidding Procedures are critical to maintain an orderly process especially in light of the confusion created by third parties publicly disseminating proposals and accompanying statements.

## The Bidding Procedures

14. As noted in the Motion, the Debtors seek approval of the Bidding Procedures to continue the momentum from their prepetition process and work with Potential Counterparties on the terms of a Transaction that will enhance value to the Debtors and all stakeholders under the circumstances. The Bidding Procedures provide the Debtors with the time needed to receive and evaluate bids, hold an Auction if needed, and prepare and negotiate a chapter 11 plan or asset purchase agreement, among other tasks and requirements, all while moving at the pace necessary in chapter 11 cases of this magnitude and complexity.

15. As more fully described in the Bidding Procedures attached to the Motion, the Bidding Procedures contain provisions relating to, among other things, (a) requirements to participate in the bidding process, (b) access to due diligence by Acceptable Bidders, (c) Bid Protections for any Stalking Horse Bidder, (d) Bid Requirements, (e) the evaluation of Qualified Bids by the Debtors, (f) an Auction, (g) the acceptance of any Successful Bids, and (h) the designation of any Back-Up Bidders.

16. The Debtors' proposed dates and deadlines to pursue a Transaction that may be consummated either pursuant to section 363 of the Bankruptcy Code or under a chapter 11 plan (the "Proposed Bidding Procedures") are as follows:

| Action | Description | Deadline |
|---|---|---|
| Bid Deadline | The deadline by which all binding bids must be actually received pursuant to the Bidding Procedures. | August 26, 2022 at 12:00 p.m. prevailing Eastern Time. |
| Auction | The date and time of the Auction, if one is needed, which will be held at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022. | August 29, 2022 at 10:00 a.m. prevailing Eastern Time, if needed. |

| Action | Description | Deadline |
| --- | --- | --- |
| Sale Objection Deadline | The deadline by which objections to the entry of an order by the Court approving the Sale must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Sale Objection Deadline"). | 7 calendar days before the Sale Hearing. |
| Sale Hearing | The hearing before the Court to consider approval of the successful bid or bids, pursuant to which the Debtors and the winning bidder or bidders will consummate the Sale. | September 7, 2022 at [●] prevailing Eastern Time, or as soon thereafter as the Debtors may be heard. |
| Deadline to file Disclosure Statement | The deadline for the Debtors to file the Disclosure Statement. | September 7, 2022. |
| Disclosure Statement Objection Deadline | The deadline by which objections to the Disclosure Statement must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Disclosure Statement Objection Deadline"). | 7 calendar days before the Disclosure Statement Hearing. |
| Disclosure Statement Hearing | The date for the hearing for the Court's approval of the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code (the "Disclosure Statement Hearing"). | October 12, 2022, at [●] prevailing Eastern Time, or as soon thereafter as the Debtors may be heard. |
| Solicitation Deadline | The deadline for distributing solicitation packages, including ballots, to holders of claims entitled to vote to accept or reject the plan (the "Solicitation Deadline"). | 9 days after the entry of the order approving the Disclosure Statement. |
| Plan Objection and Plan Voting Deadlines | The deadline by which (a) objections to the plan must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Plan Objection Deadline"), and (b) all ballots must be properly executed, completed, and delivered so that they are actually received by the Debtors' notice, claims, and solicitation agent (the "Plan Voting Deadline"). | 7 calendar days before the Confirmation Hearing. |
| Confirmation Hearing | The hearing before the Court to consider approval of the successful bid or bids and confirmation of the plan (the "Confirmation Hearing"). | November 23, 2022, at [●] prevailing Eastern Time, or as soon thereafter as the Debtors may be heard. |

17.     Based on my experience, I believe that the Proposed Bidding Procedures are designed with the intent to enhance the value for customers and all stakeholders by facilitating a competitive bidding process in which potential bidders are encouraged to participate and submit

9

competing bids within the specified time frame. Additionally, given the duration and scope of the Debtors' prepetition marketing process, the due diligence conducted to date by potential interested parties, the proposed continuing postpetition marketing process described in the Proposed Bidding Procedures, and the timeline proposed by the Debtors, it is my view that the Proposed Bidding Procedures, including, without limitation, the timeline, are reasonable and appropriate under the circumstances. Under the Proposed Bidding Procedures, the Debtors will have an opportunity to consider all offers and select the offer that they deem to be the highest or otherwise best.

18. With respect to the Bid Protections identified in the Motion, in my experience, stalking horse bidders typically require bid protections similar to the Bid Protections set forth in the Proposed Bidding Procedures (including both the Breakup Fee and the Expense Reimbursement) and such terms are customary and usual under the circumstances.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: July 25, 2022  
New York, New York

By:    */s/ Jared Dermont*  
Name:   Jared Dermont  
Title:    Managing Director  
         Moelis & Company LLC  
         *Proposed Investment Banker and Financial Advisor to the Debtors and Debtors-in-Possession*