Hearing Date: August 4, 2022 at 11:00 a.m. (ET)

Andrew G. Dietderich
Brian D. Glueckstein
Benjamin S. Beller
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Fax: (212) 558-3588

*Counsel for Alameda Research LLC and Affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-10943 (MEW)<br><br>Jointly Administered |

**LIMITED OBJECTION TO DEBTORS' MOTION SEEKING ENTRY OF AN ORDER (I) APPROVING THE BIDDING PROCEDURES AND RELATED DATES AND DEADLINES, (II) SCHEDULING HEARINGS AND OBJECTION DEADLINES WITH RESPECT TO THE DEBTORS' SALE, DISCLOSURE STATEMENT, AND PLAN CONFIRMATION, AND (III) GRANTING RELATED RELIEF**

Alameda Research Ltd., Alameda Ventures Ltd. ("Alameda Ventures") and their affiliates (collectively "Alameda"), by and through its undersigned counsel, hereby submits this limited objection (the "Limited Objection") to the *Debtors' Motion Seeking Entry of an Order (I) Approving the Bidding Procedures and Related Dates and Deadlines, (II) Scheduling*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (N/A); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

*Hearings and Objection Deadlines with Respect to the Debtors' Sale, Disclosure Statement, and Plan Confirmation, and (III) Granting Related Relief* [D.I. 126] (the "Bidding Procedures Motion"), and respectfully states as follows:

### Relevant Background

1. Alameda trades in digital assets for its own account on behalf of private owners. Based on the information disclosed by the Debtors, Alameda is the largest stockholder and largest creditor of the Debtors. Alameda Ventures Ltd. is the only identified creditor of debtor Voyager Digital Holdings, Inc. ("Voyager Holdings"), the holding company that owns 100% of debtor Voyager Digital, LLC ("Voyager Digital"), the Debtors' primary operating company.

2. As the Debtors' financial situation declined, Alameda agreed to provide rescue financing to the Debtors for the express purpose of permitting the Debtors to pay customers for crypto assets that counterparties to the Debtors' lending and related activities failed to return. As Alameda has stated, it has an interest in preserving customer confidence in cryptocurrency investments generally and ensuring any distress does not spread through the market. This benefits Alameda and FTX as leading members of the industry, along with all other crypto firms and crypto investors.

3. Alameda's rescue financing, entered into on June 21, 2022—less than two weeks before the Debtors filed for bankruptcy protection—provided the Debtors up to $200,000,000 in cash or USDC and 15,000 Bitcoin on the terms and conditions set forth in the Loan Agreement. $75,000,000 of that facility was immediately drawn (in USDC), which was the maximum permitted in any rolling 30-day period. Alameda's financing helped stem customer losses but was not enough to prevent the commencement of these cases.

4. These bankruptcy proceedings should be about Voyager's customers, who just want their money back. From the customer's perspective, Voyager solicited customer crypto investments but then lost retail customer money through its lending activities. Then Voyager froze customer withdrawals and commenced these cases. Customers are now stuck in a protracted bankruptcy process without access to their cryptocurrency or its value.

5. Upon customer outcry after the filing of the Debtors' petition in this Court, the first significant insolvency of a U.S. crypto firm, Alameda began considering ways it might be able to mitigate customer losses, illiquidity and risk. There is no resolution regime that applies to crypto firms, despite the similarities to traditional financial institutions. On July 22, 2022, FTX Trading Ltd. and West Realm Shires Inc., operators of the FTX.com and FTX US cryptocurrency exchanges respectively (together "FTX"), and Alameda made a public proposal conveyed to the Debtors for a transaction to provide customers immediate liquidity by moving assets and customer relationships to the respective FTX platform (the "Joint Proposal"). Under the Joint Proposal, the cash value of all appropriate digital assets relating to the retail customer claims and all participating retail customers would move to either FTX.com or, for any customers that are US residents, to FTX.us. Each customer would immediately receive a ratable share of the value of the assets moved, subject to this Court's approval. Customers would receive this value in a liquid account and be able immediately to withdraw the cash or trade in cryptocurrency.

6. The Joint Proposal is not novel; it is informed by similar structures widely used for the resolution of other retail financial institutions, in which customers are transferred to a "good bank" as quickly as possible, often in the first days or weeks of the relevant proceedings. Alameda and FTX believe that Voyager's insolvency is effectively similar to these precedents

and should be resolved in a like manner to protect customers. Although the Debtors did not respond positively to the public proposal, Alameda and FTX continue to advocate for this approach with the Debtors and the Official Committee of Unsecured Creditors (the "Committee"). The Joint Proposal's ability to get liquidity to customers and facilitate its immediate re-deployment into cryptocurrency (for those who want to do so) is compelling when compared with the likely fate of customers in a longer chapter 11. Whether crypto goes up or down in the future, customers should not be trapped. This would be bad for customers and bad for the crypto industry.

7. Alameda and FTX understand that there may be advantages to a longer, more traditional bankruptcy sale process if there are substantial bidders for the going concern of Voyager. **Ultimately the question may come down to the importance of customer liquidity versus the likelihood of a substantial going concern bid from a third party**. This is a business judgment for the Debtors in consultation with stakeholders, including the Committee. If the Debtors and their customers are not interested in pursuing the Joint Proposal to obtain early liquidity by the time the Court considers the Bidding Procedures Motion, Alameda and FTX will move on from the Joint Proposal in its current form and are open to participating in the sale process that the Debtors seek to establish with a view to potentially migrating customers onto the FTX platform in the future should a going concern bidder paying a higher price not emerge.

8. Assuming the Debtors choose the traditional bankruptcy path and do not proceed with the Joint Proposal, Alameda, as a significant stakeholder in these chapter 11 cases, has a limited number of concerns with respect to the proposed Bidding Procedures and submits that modifications are appropriate.

**Limited Objection**

### I. Any Bidding Procedures Should be Modified to Allow All Transaction Proposals.

9.      A primary purpose of bidding procedures is to facilitate the Debtors maximizing the value of its assets for stakeholders.  The Debtors may be presented a proposal in advance of the Bid Deadline[2] that the Debtors wish to proceed with, and the Bidding Procedures should provide the flexibility for the Debtors to abandon the sale process and bring that transaction to the Court.  The Debtors could have indications of interest well in advance of the Bid Deadline given the robust process to find a going concern buyer already conducted.  Any early customer liquidity proposal, such as the Joint Proposal, is premised on acting quickly to protect the Debtors' customers.  The Debtors should remain capable of doing so, notwithstanding any Bidding Procedures and the establishment of a Bid Deadline.

10.     Paragraph O of the Bidding Procedures provides the Debtors a fiduciary out.  In addition, Paragraph 20 of the Proposed Order provides that "[t]he Court, at the request of the Debtors and subject to its availability, may modify the dates of and adjourn any hearing by this Order without further Order of this Court."  These are helpful but Alameda believes the Bidding Procedures and any Order entered by the Court should expressly provide that the Debtors may choose to accept a bid or otherwise pursue approval of a transaction in this Court prior to the Bid Deadline.

11.     Similarly, the Bidding Procedures should not prohibit any party from making any bid to the Debtors at any time.  An Acceptable Bidder should not be penalized for submitting a Bid in accordance with the Bidding Procedures, including being precluded from

---

[2] Any term not defined in this Limited Objection shall have the meaning ascribed to it in the Bidding Procedures Motion.

-5-

making a Bid post-Auction but prior to approval of any transaction as provided for in Section D(xiv).  For example, Alameda is concerned based on statements to date that the Debtors, although actively soliciting Bids, may prefer to pursue their stand-alone plan of reorganization, and thus may eschew Bids in favor of it.  The Bidding Procedures should not include a "standstill" that eliminates competition to this plan.  No party—including one who submitted a Bid—should be precluded from submitting a later bid to provide an alternative prior to a plan confirmation hearing.

12. The Debtors are seeking approval of a Confirmation Schedule as part of their Bidding Procedures Motion.  Alameda supports a prompt resolution of the Debtors' chapter 11 cases because that is in the best interest of the Debtors' customers.  As a result, Alameda does not object to the proposed Confirmation Schedule and the dates contained therein.

13. However, the Debtors chose to file their plan without a disclosure statement.  Based on the plan on file, Alameda has significant concerns about the proposed plan of reorganization and its implications for customers, making it imperative that no party be precluded from submitting a Bid at any time and providing the Debtors and their customer stakeholders other options.

**II.    The Court Should Not Pre-Authorize Bid Protections As Requested.**

14. A break-up fee should only be pre-authorized when it is clear on an available evidentiary record that such fee encourages bidding rather than hampers it.  The Debtors have not provided an evidentiary record to support the extraordinary relief of carte blanche authority to grant a breakup fee of up to 3% of the purchase price with respect to an undisclosed transaction, and therefore that portion of the relief should not be approved.  If the

Court is nonetheless inclined to grant the Debtors some form of pre-authorization to grant bid protections, at least two modifications are required.

15.  *First*, a breakup fee as a percentage of the proposed purchase price is not reasonable when Bids will include the purchase of over $1 billion in actively traded cryptocurrency (and loans denominated in cryptocurrency)—the Debtors' primary assets—that have an ascertainable price in a liquid market.  Alameda proposes that any breakup fee be limited to no more than 3% of the purchase price of assets *other* than actively traded cryptocurrency assets.  If the Debtors determine not to proceed with the Joint Proposal and Alameda participates in the sale process, it could end up as a stalking horse bidder.  Nevertheless, Alameda believes the determination of the break-up fee in this manner is reasonable and fair in light of the nature of the assets marketed.

16.  *Second*, any pre-authorization of Bid Protections should include a requirement that the award of any such Bid Protections have the consent of the Committee.  If the Committee does not agree to the Debtors' proposed award of Bid Protections, the Debtors should be required to come back to this Court for approval on reasonable notice to other parties-in-interest.  *See, e.g.*, *In re Hollander Sleep Products, LLC*, No. 19-11608 (MEW) (Bankr. S.D.N.Y. July 3, 2019) ("The Debtors . . . shall be authorized . . . in an exercise of their business judgment and with the unanimous consent of the Consultation Parties . . . to provide . . . Stalking Horse Bidders with Bid Protections.").

## Conclusion

Alameda respectfully requests that the Bidding Procedures Motion be denied unless the Bidding Procedures are modified as requested herein.

Dated: July 28, 2022
     New York, New York

*/s/ Andrew G. Dietderich*
Andrew G. Dietderich
Brian D. Glueckstein
Benjamin S. Beller
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:   (212) 558-4000
Facsimile:    (212) 558-3588
Email:        dietdericha@sullcrom.com
                gluecksteinb@sullcrom.com
                bellerb@sullcrom.com

*Counsel for Alameda Research LLC and Affiliates*