**UNITED STATES BANKRUPTCY COURT**
**SOUTH DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

In Re:                                                    Chapter 11
                                                          Case No. 22-10943-mew

**VOYAGER DIGITAL HOLDINGS, INC. et. al.[1]**

                **Debtors**
-----------------------------------------------------------------X

### AFFIDAVIT OF MATTHEW LEVITT IN SUPPORT OF LIMITED OBJECTION OF MATTHEW LEVITT TO THE DEBTORS' MOTION TO HONOR WITHDRAWALS AND CROSS MOTION TO HONOR LEVITT'S WITHDRAWAL REQUEST AND GRANT RELATED RELIEF

State of New York      )
                              ss:
County of New York  )

**MATTHEW LEVITT,** being duly sworn, deposes and says:

1.   I am over the age of eighteen years old. I am the a creditor in this bankruptcy matter by virtue of being a customer of Voyager.  I make this affidavit based upon my personal knowledge or upon a review of my business records in Support of my Limited Objection to the Debtor's Motion to honor withdrawals and my Cross Motion to require the Debtor to honor my withdrawal request.

2.   On November 6, 2021, a representative of Voyager informed me that Voyager charged a $50 fee per wire transaction.  In that same conversation on November 6, 2021, the Voyager representative stated that wire transfers carried a *minimum* of $10,000.

3.   From November 2021 through June 2022, Levitt sent eight separate wires into

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (N/A); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

Metropolitan Commercial Bank ("MC Bank"), the Debtor's bank, to fund his Voyager account with no deposit limits.

4.    These wires had no limits and were all received at MC Bank and then made immediately available in my Voyager account usually within 1-3 hours, or if sent after 5 pm Eastern, funds were available by mid-morning the next day.  Ex. A.

5.    On June 14, 2022, Voyager issued a public statement to its customers that "your assets" are safe on the Voyager platform.  Ex. B.

6.    On June 17, 2022, Voyager announced that they were working on signing a term sheet whereby Alameda Research would provide liquidity Voyager to protect customer assets.  Ex. C.

7.    In the public statement announcing this transaction, Voyager conspicuously omitted any mention of the fact that Alameda owed Voyager $376.8 million.  See Declaration of Stephen Ehrlich, Chief Executive Office of the Debtors, in Support of Chapter 11 Petitions and First Day Motions ("Ehrlich Declaration") (ECF Doc. 15) at ¶ 29.

8.    This material omission was clearly meant to induce customers such as myself to leave assets in Voyager as Voyager was clearly concerned about "a run on the bank."

9.    What the June 17th public statement also conspicuously omitted to mention was the fact that a day before (on June 16, 2022) Voyager had engaged the internationally recognized corporate restructuring and bankruptcy law firm, Kirkland & Ellis, LLP ("K&E") and Moelis & Company LLC ("Moelis") an internationally known restructuring financial advisor.  See Ehrlich Declaration at ¶ 59.

10. In other words, the "short-term 'run on the bank' due to the downturn in the cryptocurrency

industry generally and the default of a significant loan made to a third party" which is disingenuously mentioned at paragraph 1 of the Ehrlich Declaration is at the root of the Debtor's problems had clearly begun long before the date that the Debtor made these engagements.

11. On June 22, 2022, Voyager issued a press release stating that the term sheet was signed with Alameda but added that they may issue a notice of default to 3AC on June 24 if no loan payment was received.  Ex. D.

12.  The very next day, Voyager reduced daily withdrawal limits from $25,000 to $10,000 for cash-in-kind transfers via ACH or transfers of crypto currency to exterior wallets.  Ex. E.

13. Upon reading the June 22nd press release, I became extremely concerned that my life savings may be at risk and determined that he needed to withdraw my funds from Voyager without delay.  I initially felt trapped because of the announcement reducing the withdrawal limitation to $10,000.

14.  I reviewed Voyager's User Agreement, Ex. F, to determine whether the daily withdrawal limitations only applied to ACH withdrawals and not to wire withdrawals.

15.  I almost instantly recognized that sections 24 and 25 of the User Agreement did not apply to wire transfers.  Therefore, I reasoned that the aforementioned reduced $10,000 withdrawal limit would not apply to any wire request.

16.  That was because previously, on November 6, 2021, a representative of Voyager informed me that Voyager charged a $50 fee per wire transaction.  In that same conversation on November 6, 2021, the Voyager representative stated that wire transfers carried a *minimum* of $10,000.

17.  On June 23, 2022, sold his Bitcoin holdings to convert the same into U.S. dollars (USD)

so as to have the USD available for an instant wire withdrawal transaction order.  Ex. G. This sale

order was processed instantly meaning Levitt now had the USD equivalent available

instantaneously at MC Bank.

18.   That day I had a crucial conversation with an automated and then live customer

service representative (Vanessa) in which Voyager confirmed that there were no wire limits (as

there were with EFTs).  The Voyager representative then took an order for the wire withdrawal for

my full life's savings.  Ex. H.

19.   Voyager's online customer service portal was the only way provide to me to initiate

or request a wire transaction, and to find out what the parameters of such a transaction would be.

20.   On June 23, the conversation between my and Vanessa, the live agent, continued via

email.  Ex. I.

21.   In sum and substance, I was pleading with Voyager to me my life's savings.

22. At no point was I advised by Voyager live operators that my wire transaction could not be

processed.  At no point was I advised that they otherwise needed to be reviewed for compliance or

fraud prevention.  There was no mention of any time delay of any kind or any prohibition on

sending out wires.

23. I waited until 5 pm EST the next day (June 24th) and the wire was never sent.  At that time

I reasonably assumed that the company was not going to send my funds out in the form of a USD

withdrawal via wire transaction due to lack of customer support response or action as well as the

conflicting official statement from Voyager on June 22, 2022 when they stated that liquidity issues

had been solved.

24. I had to take desperate measures at this point, and the only solution he could come to, under

immense stress and fear in order to recover any of my life savings and based on the lack of information and guidance from Voyager, I bought back Bitcoin. Ex. J.

25. That Bitcoin order was only partially filled, but the fulfillment of the order demonstrates that USD funds were available all day to send my wire and Voyager simply failed to process the same. I instantly began withdrawing $10,000 worth of Bitcoin per day. Once again this was only necessary because of Voyager's inexcusable failure to process the wire withdrawal which I had requested. I had no other way to recover my life savings. Ex. L.

26. On June 28, Voyager's online application asked me to provide a copy of my identification and to provide a photograph. Ex. I. I had only been asked to provide my identification twice before. Once when I opened my account and again in reference to USD transfers. I reasonably assumed, based on this important request, that Voyager was finally prepared to honor my USD withdrawal request and wire transaction order. I emailed Voyager support on the same email chain and asked for them to confirm that they will indeed send out a wire in full if I redeemed my Bitcoin for cash. Voyager never replied and provided precisely zero fiduciary guidance. I kept my holdings in Bitcoin because this was the only way that he could recover any of the funds in my account as Voyager had refused to process my wire orders.

27. On June 30, an entire week after my wire withdrawal request, a live Customer support agent finally replied to the same wire transaction order email chain, "request 643707", contradicting the information I was provided on June 23 by Voyager's customer support. In that June 30 exchange, a customer service representative named Tony stated that withdrawals were now only allowed now through the Voyager app (via ACH) and limited to $10,000 per day. This was the very first instance in which I was indirectly told that Voyager would not honor wire transactions and this policy was never made public.

28. On July 1, 2022, less than 24 hours after Tony's email reply, Voyager froze the platform for trading, deposits and withdrawals.  Ex. K.  To be certain, this was the first time, to my knowledge, that Voyager had frozen withdrawals.


 **/s/ Matthew Levit**
**Matthew Levitt**


**Sworn to before me this 28th**
**Day of July, 2022**

 **/s/ Jeb Singer**
**Jeb Singer**
NYS Notary: 02S16432229
King County
Expiration: April 25, 2026