# STATE OF ALABAMA
## ALABAMA SECURITIES COMMISSION

IN THE MATTER OF:                    )
                                     )
**VOYAGER DIGITAL LTD.,**            )       **ADMINISTRATIVE ORDER**
**VOYAGER DIGITAL HOLDINGS, INC**    )       No. SC-2022- _0006_
and **VOYAGER DIGITAL, LLC,**        )
**RESPONDENTS**                      )

---

### ORDER TO SHOW CAUSE WHY THE ALABAMA SECURITIES COMMISSION SHOULD NOT ORDER RESPONDENTS TO CEASE AND DESIST FROM FURTHER OFFERS OR SALES OF SECURITIES IN THIS STATE

The Alabama Securities Commission ("Commission"), having the authority to administer and provide for the enforcement of all provisions of Title 8, Chapter 6, *Code of Alabama 1975*, the Alabama Securities Act ("Securities Act"), upon due consideration of the subject matter hereof, and having confirmed information of the offers for sale and/or sale of securities, into, within or from the state of Alabama, has determined as follows:

### RESPONDENTS

1.      VOYAGER DIGITAL LTD. ("**VOYAGER LTD**") is incorporated in British Columbia, Canada, and is the parent company for Voyager subsidiaries, including Voyager Digital Holdings, Inc. **VOYAGER LTD** has a mailing address of 33 Irving Plaza, Suite 3060 New York, NY 10003. **VOYAGER LTD** is accessible via the website https://www.investvoyager.com.

2.      VOYAGER DIGITAL HOLDINGS, INC. ("**VOYAGER, INC**") is incorporated in Delaware, and is the holding company for **VOYAGER** subsidiaries in the United States. **VOYAGER, INC** has a mailing address of 33 Irving Plaza, Suite 3060 New York, NY 10003. **VOYAGER, INC** is accessible via the website https://www.investvoyager.com.

3.      VOYAGER DIGITAL LLC ("**VOYAGER, LLC**") is incorporated in Delaware,

Exhibit B

and has a mailing address of 185 Hudson Street, Suite 2500, Jersey City, NJ 07311. **VOYAGER, LLC** is accessible via the website https://www.investvoyager.com.

4.     Collectively the above entities will be referred to hereinafter as **"VOYAGER"** or **"RESPONDENTS."**

## STATEMENT OF FACTS

5.     In its responses to the Alabama Securities Commission visitation letter **VOYAGER** admits that it offers accounts ("Account" or "Accounts") that allow account holders access to custody, trading, data, and referral features along with a rewards program. The response describes the features. "The Custody Feature provides customers the ability to custody their digital assets on the Voyager Platform. The Trading Feature provides customers the ability to trade "spot transactions" between fiat and digital assets. The Data Feature provides customers access to a news feed containing cryptocurrency performance, tracking, and charting tools. The Referral Feature provides customers the ability to earn $25 worth of Bitcoin for each individual customer referral to Voyager that successfully opens and funds an Account with a minimum of $100." In paragraphs 5 through 29 below the facts asserted are based on information contained in **VOYAGER**'s response letters to the Alabama Securities Commission, or the lack thereof, and information on **VOYAGER**'s website.

6.     Account holder agreements authorize **VOYAGER**, without further notice to the holder, to maintain each customer's digital assets in **VOYAGER**'s name, or in another name, and to commingle Account holders' deposits to pledge, repledge, hypothecate, rehypothecate, sell, lend, invest, or otherwise transfer or use any amount of such digital assets, with all attendant rights of ownership. The absence of any type of insurance or other protection to the investor makes it clear that such use or investment by **VOYAGER** is at the Account holder's sole risk.

7.     The Accounts Rewards Program, also sometimes called the Earn Program, ("Rewards Program") pays Account holders digital assets for maintaining a monthly minimum balance of certain digital assets of the same type in their Accounts.  As of March 1, 2022,

VOYAGER's total Reward Account assets under management had a fair market value of $5,061,610,367.00.

8.      By participating in the Rewards Program, Account holders allow **VOYAGER** to utilize their digital assets to loan to institutional borrowers and such loans may not be secured or require the borrower to post collateral – all at **VOYAGER**'s sole discretion. **VOYAGER,** also at its sole discretion, determines the rates of return and rate tiers, if any, for each month.

9.      **VOYAGER** promises to pay the reward assets to Account holders on a monthly basis and considers such rewards an operating expense.

10.      **VOYAGER**'s operating revenue is primarily derived from fees charged for digital asset trading as well as revenue from loans made to its institutional borrowers.

11.      Trading is executed via **VOYAGER**'s proprietary order routing technology that seeks favorable execution prices for its customers. **VOYAGER** generates trading revenue by taking a fraction of the difference between the execution price and the price quoted to the customer. **VOYAGER**, in the 2021 fiscal year, generated approximately $154,000,000 in revenue via trading or approximately 88% of **VOYAGER**'s overall revenue.

12.      **VOYAGER** loans digital assets to financial institutions in exchange for in-kind interest income paid by the borrower. **VOYAGER**, in the 2021 fiscal year, generated approximately $21,000,000 in loan revenue or approximately 12% of **VOYAGER**'s overall revenue.

13.      **VOYAGER** represents that success or failure of a particular Account is "based predominantly on the choices and actions of the individual [Account holder]." However, **VOYAGER** solely controls the way it provides trading and loan services and chooses what digital assets are eligible for the Rewards Program along with the rate of return an Account holder will receive.

14.    **VOYAGER** uses its authority to choose and enter into lending agreements with institutional borrowers. Approximately 15-30% of customer assets are held by institutional borrowers.

15.    **VOYAGER** chooses a third-party, Fireblocks, to manage its crypto assets held internally and as a "settlement layer to transact and settle with pre-approved counterparties or entities." Approximately 30-50% of customer assets are either custodied through Fireblocks or held in storage with Anchorage Digital Bank N.A.

16.    **VOYAGER** chooses Anchorage Digital Bank N.A. to custody customer crypto assets.

17.    **VOYAGER** chooses several other crypto trading platforms to connect to and maintain crypto asset balances to ensure liquidity for trade execution. Approximately 20-50% of customer assets are held in **VOYAGER**-owned accounts on these crypto trading platforms.

18.    **VOYAGER** chooses *not* to insure its customers' assets.

19.    **VOYAGER** implements a due diligence program for all trading partners including assessing their security, reputation, liquidity levels in applicable crypto assets, capitalization, management, internal control practices, and operational risks before utilizing any trading partner.

20.    **VOYAGER** monitors each trading partner to ensure compliance with required legal and regulatory standards.

21.    **VOYAGER** is largely dependent on the performance of its management, key employees, and directors to successfully carry out **VOYAGER**'s business operations. **VOYAGER**, its management, key employees, and directors possess the specialized skills and knowledge necessary to ensure the success of its business and operations. **VOYAGER** does not maintain any "key man insurance" for any of its current executives. Account holders have no role in the management of **VOYAGER**.

22.    **VOYAGER** conducts internal due diligence reviews to determine likely regulatory treatment of digital assets. These reviews may include industry, technological and legal reviews, and an audit committee with ongoing monitoring.

23.    **VOYAGER** recognizes its "compliance and risk management programs may not be effective and may result in outcomes that could materially and adversely affect [**VOYAGER**'s] reputation, financial condition and operating results."

24.    **VOYAGER** discloses that its operational risks could "cause material reputational and financial harm" to **VOYAGER**.

25.    **VOYAGER** recognizes that crypto trading platforms, in part, are largely unregulated and may therefore be more exposed to fraud and failure.

26.    **VOYAGER** acknowledges that **VOYAGER**'s investment strategy may rely heavily on the use of proprietary and non-proprietary software, data and intellectual property that may expose it to substantial risk.

27.    **VOYAGER** discloses the risk that any strategic investments made by **VOYAGER** may not generate positive returns and it "may lose the entirety of such investments."

28.    **VOYAGER** incurs a potentially significant liquidity risk if the aggregate withdrawals by customers exceed the "quantum of uncommitted cryptocurrency available...to satisfy the withdrawal requests."

29.    Alabama residents participating in the Rewards Program must primarily rely on the Respondents' efforts described, in part, in paragraphs 12 through 27 above, in order to receive the promised return payments of digital assets.

30.    As of March 2022, **VOYAGER** had $26,753,379.00 in total assets under management for the 21,155 Alabama residents who are participants in the Rewards Program.

31.    The **VOYAGER** Rewards Program Accounts are not registered with any federal or state securities regulator, nor are they otherwise exempt from registration – as required by law, even though the **VOYAGER** Rewards Program Accounts are securities and subject to such requirements. **VOYAGER** fails to disclose to **VOYAGER** Rewards Account investors that its **VOYAGER** rewards product is not currently registered by federal or state authorities, even though the **VOYAGER** Rewards Program Accounts are securities. Digital assets contained in **VOYAGER** Rewards Program Accounts are not protected by the Securities Investor Protection Corporation ("SIPC"), insured by the Federal Deposit Insurance Corporation ("FDIC"), or insured by the National Credit Union Administration ("NCUA").

## CONCLUSIONS OF LAW

32.    Pursuant to Section 8-6-2(10), *Code of Alabama 1975*, the definition of a "security" includes any "investment contract." The investment program being offered and sold by **VOYAGER,** as described above, constitutes the solicitation of an investment of money; from which an investment return is expected; with such investment return based on the managerial efforts of **RESPONDENTS**. The solicited investments, identified above, are "investment contracts" and are securities under the Securities Act.

33.    Pursuant to Section 8-6-4, *Code of Alabama 1975*, it is unlawful for any person to offer or sell any security in this state unless said security is: (1) registered under the Securities Act; (2) the security is exempt from registration under section 8-6-10; or (3) the transaction is exempt under section 8-6-11. The securities offered by **RESPONDENTS**; to wit: the investment contracts described as Rewards Program Accounts, are neither registered nor subject to a perfected exemption from registration in Alabama and are being offered and/or sold in violation of the Securities Act.

34.    Pursuant to Section 8-6-30, *Code of Alabama 1975*, the burden of proving an exemption from registration or an exception from a definition under the Act is on the person

claiming the exemption or exception. **RESPONDENTS** must demonstrate compliance with the registration provisions of the Act or demonstrate why such instruments should not be required to be registered.

35.    Pursuant to Section 8-6-16, *Code of Alabama 1975*, the Commission may issue a cease-and-desist order, with or without prior hearing, against any person whom the Commission has reason to believe is participating in any act or practice constituting a violation of the Act.

This Order is appropriate in the public interest for the protection of investors and is consistent with the purposes of the Act.

This Order does not prevent the Alabama Securities Commission from seeking such other civil or criminal remedies that are available to it under the Act.

If the allegations set forth herein are found to be true, through either administrative adjudication or default of the **RESPONDENTS**, it is the intention of the Commission to impose sanctions upon the **RESPONDENTS**.  Such sanctions may include, inter alia, an administrative assessment imposed on **RESPONDENTS**, an additional administrative assessment for investigative costs arising from the investigation of the violation(s) described herein against **RESPONDENTS**, and a permanent order to bar **RESPONDENTS** from participation in any securities related industry in the state of Alabama.  Failure to respond within 28 days of service of this Order shall be deemed a waiver of the right to a hearing and will result in the entry of a final order directing **RESPONDENTS** to cease and desist from violating the Alabama Securities Act and permanently barring **RESPONDENTS** from participation in any securities related industry in the state of Alabama.

**ACCORDINGLY, IT IS HEREBY ORDERED** that **RESPONDENTS SHOW CAUSE** to the Commission within 28 days of the date of this **ORDER**, why **RESPONDENTS** should not be ordered to cease and desist from any further violations of the Alabama Securities Act.

Entered at Montgomery, Alabama, this ___29th___ day of __MARCH___, 2022.



ALABAMA SECURITIES COMMISSION
445 Dexter Avenue, Suite 12000
Montgomery, AL  36104
(334) 242-2984
BY:

JOSEPH P. BORG
DIRECTOR

State of California - Department of Financial Protection and Innovation

**STATE OF CALIFORNIA**
**BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY**
**DEPARTMENT OF FINANCIAL PROTECTION AND INNOVATION**

**TO:**   Voyager Digital Ltd.
595 Burrard Street, Suite 2900
Vancouver, B.C., V7X 1J5, Canada

33 Irving Plaza, Suite 3060
New York, NY 10003

Voyager Digital Holdings, Inc.
c/o Corporation Service Company, Registered Agent
251 Little Falls Drive
Wilmington, DE 19808

Voyager Digital, LLC
c/o CSC – Lawyers Incorporating Service (C1592199), Registered Agent
2710 Gateway Oaks Dr Ste 150N
Sacramento, CA 95833

**DESIST AND REFRAIN ORDER**
**(For violations of section 25110 of the Corporations Code)**

The Commissioner of Financial Protection and Innovation (Commissioner) finds that:

1.       Voyager Digital Ltd. is a Canadian entity incorporated in June 1993, with a registered office located in Vancouver, British Columbia and principal place of business in New York, New York. Voyager Digital Ltd. is the parent company of Voyager Digital Holdings, Inc.

2.       Voyager Digital Holdings, Inc., is a Delaware entity incorporated in December 2018, with a registered agent located in Wilmington, Delaware. Voyager Digital Holdings, Inc. is the Delaware holding company of Voyager Digital, LLC.

3.       Voyager Digital, LLC, is a Delaware limited liability company formed in January 2008. Voyager Digital, LLC filed a foreign registration statement with the California Secretary of State on May 5, 2021. It maintains a registered corporate agent for service of process in Sacramento, California.

4.       Voyager Digital Ltd., Voyager Digitals Holdings, Inc., and Voyager Digital, LLC (collectively "**Voyager**") operate as a "crypto asset brokerage" platform offering self-directed trade execution, market data, wallet, and custody services to both retail and institutional customers.

State of California - Department of Financial Protection and Innovation

5.      Voyager offers accounts that allow account holders access to custody, trading, data, and referral features along with a rewards program (the "**Accounts**").

6.      Voyager offers its Accounts through a website accessible to the general public at http://www.investvoyager.com/ and also offers a smartphone application.

7.      Account holder agreements authorize Voyager, without further notice to the holder, to maintain each customer's crypto assets in Voyager's name, or in another name, and to commingle Account holders' deposits to pledge, repledge, hypothecate, rehypothecate, sell, lend, invest, or otherwise transfer or use any amount of such crypto assets, with all attendant rights of ownership, and such use or investment by Voyager is at the Account holder's sole risk.

8.      The Accounts' rewards program (the "**Rewards Program**") pays Account holders crypto assets for maintaining a monthly minimum balance of certain digital assets of the same type in their Accounts. In exchange, Account holders give Voyager the rights to use the deposited crypto assets for various business purposes.

9.      Rewards Program customers receive passive income generated either by Voyager staking crypto assets on its customers' behalf or by lending the crypto assets to large institutional borrowers. Although these payments function similarly to banks or pooled investment vehicles, none of the Voyager entities are registered in this capacity with any relevant authority and none are protected by organizations such as the Federal Deposit Insurance Corporations or the Securities Investor Protection Corporation.

10.     While Voyager refers to payments made to Reward Program participants as "rewards," the payments constitute interest payments for assets placed in the Accounts.

11.     On its website, Voyager provides customers with a list of crypto assets it currently transacts in, along with the interest rate and required minimum balance which customers must maintain in their account to receive monthly interest payments. Annual interest rates on eligible crypto assets for May 2022 range from one-half of one percent (0.5%) to 12 percent (12%).

12.     Rewards Program participants do not engage in substantive Rewards Program-related activities beyond depositing their crypto assets with Voyager; they depend mostly or entirely on Voyager and its business efforts to receive these payments. Voyager funds the Rewards Program

State of California - Department of Financial Protection and Innovation

1  through its business activities, including revenue from crypto asset trading services, revenue from

2  lending to large borrowers, revenue from staking, and revenue from its affiliated crypto asset

3  payments services. As a result, Rewards Program participants' ability to receive interest payments is

4  dependent on the success of Voyager's business.

5      13.    Since approximately November 2019 and to the present date, Voyager has continually

6  been offering and opening Accounts to and for California residents, respectively.

7      14.    Corporations Code section 25110 prohibits the offer or sale of unqualified, non-

8  exempt securities in issuer transactions in the State of California. The Accounts offered and sold by

9  Voyager are securities in the form of investment contracts subject to qualification under the CSL.

10  These securities are being offered or sold in this state in issuer transactions. The Department has not

11  issued a permit or other form of qualification authorizing any person to offer or sell these securities in

12  this state. The offer or sale of these securities is not excepted or exempted from qualification.

13

14      Based on the foregoing findings, the Commissioner is of the opinion that the Accounts are

15  securities, in the nature of investment contracts, as defined at Corporations Code section 25009.

16  These securities are subject to qualification under the Corporate Securities Law of 1968 and are being

17  or have been offered or sold without first being qualified in violation of Corporations Code section

18  25110.

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

DESIST AND REFRAIN ORDER

State of California - Department of Financial Protection and Innovation

1       Under section 25532 of the Corporations Code, Voyager Digital Ltd., Voyager Digital

2 Holdings, Inc., Voyager Digital, LLC, and any of their subsidiaries, are ordered to desist and refrain

3 from the further offers and sale of securities in California, including but not limited to the Accounts,

4 unless such sale has been qualified under Corporations Code section 25111, 25112, or 25113, or

5 unless such security or transaction is exempted or not subject to qualification.

6       This Order is necessary, in the public interest, for the protection of investors and consistent

7 with the purposes, policies, and provisions of the Corporate Securities Law of 1968.

8

9

10 Dated: June 3, 2022               CLOTHILDE V. HEWLITT

11      Sacramento, California        Commissioner of Financial Protection and Innovation

12

13   By_____

14                                     MARY ANN SMITH

15                                     Deputy Commissioner

16                                     Enforcement Division

17

18

19

20

21

22

23

24

25

26

27

28

**FILED**
SECURITIES DIVISION

MAR 29 2022

INDIANA
SECRETARY OF STATE

**STATE OF INDIANA**

**OFFICE OF THE SECRETARY OF STATE**

**SECURITIES DIVISION**

IN THE MATTER OF:                      )
                                       )
VOYAGER DIGITAL, LLC;                  )          Cause 22-0005 CD
                                       )
RESPONDENT.                            )

### CEASE AND DESIST ORDER

Petitioner, the Indiana Office of the Indiana Secretary of State, Securities Division ("Division") has filed a Petition for Cease and Desist Order ("Petition") against Voyager Digital, LLC ("Voyager") alleging violations of the Indiana Uniform Securities Act, Ind. Code § 23-19, *et seq*., ("IUSA") and rules promulgated thereunder, 710 Ind. Admin. Code 4, *et seq*. ("Rules"). The Petition requests the Commissioner issue a cease and desist order against Voyager pursuant to I.C. § 23-19-6-4(a) (2021).

Based on the information presented by the Petition, it appears to the Commissioner that, by offering and selling securities to Indiana residents that are neither registered with the Division, federally covered securities, nor exempt from registration, Voyager has violated I.C. § 23-19-3-1 (2021).

Accordingly, as set out further below, the Commissioner **FINDS** that Voyager has engaged and is engaging in a violation of I.C. § 23-19-3-1 (2021) and may be subject to this Cease and Desist Order ("Order") pursuant to I.C. § 23-19-6-4(a) (2021).

### I.    RESPONDENT

1.      Voyager is a Delaware limited liability company with principal office address of 185 Hudson Street, Suite 2500, Jersey City, New Jersey 07311.

2.      Voyager's registered agent is Corporation Service Company, with maintains a business address of 135 North Pennsylvania Street, Suite 1610, Indianapolis, Indiana 46204.

3.      Voyager filed a foreign registration statement with the Business Services Division of the Indiana Secretary of State's office on April 15, 2021.

4.      Voyager Digital, Ltd., a British Columbia, Canada company, is the parent company of Voyager Digital Holdings, Inc., which in turn is the Delaware holding company for Voyager and its subsidiaries in the United States.

1

5.    Voyager operates a website accessible to the general public at https://www.investvoyager.com/ (the "Voyager Website") and also offers a smartphone application (the "Voyager App").

## II.    FINDINGS OF FACT

6.    Voyager's revenue-generation activities include offerings and services related to cryptocurrencies and digital assets.  This conduct includes trading, lending, borrowing, proprietary trading, and other activities.

7.    Voyager also generates revenue by engaging in the offer and sale of cryptocurrency interest-earning accounts, which Voyager has marketed at times as the "Voyager Interest Program," Voyager Loyalty Program," "Voyager Earn," and the "Voyager Earn Program," ("Voyager Earn Accounts").

8.    Voyager solicits Indiana investors to invest in Voyager Earn Accounts through the Voyager Website and Voyager App.  The Customer Agreement dated January 7, 2022, for Voyager Earn Accounts is made available to the public online ("Customer Agreement").[1]

9.    Investors may open Voyager Earn Accounts through Voyager by transferring cash, cryptocurrency, or other digital assets to Voyager.  Voyager's Customer Agreement provides that a Voyager Earn Account holder relinquishes control over deposited cryptocurrency and that Voyager is free to use those assets as it sees fit without retaining a like amount of the cryptocurrency.  Voyager is also permitted to use the investor's digital assets and cryptocurrency at the investor's sole risk.

10.    The offer to open Voyager Earn Accounts promoted by Voyager is open to investors in Indiana.[2]

11.    Voyager attracts investors by offering lucrative interest rates that investors may

---

[1] www.investvoyager.com/useragreement, last accessed March 28, 2022.

[2] *See*  https://www.investvoyager.com/app/supported-coins, ("Trading on the Voyager app is currently available to all U.S. residents, excluding New York state").   Last accessed March 28, 2022).

*See also* https://investvoyager.zendesk.com/hc/en-us/articles/4407527431323-When-will-Voyager-be-available-in-my-area-, "[w]hen will Voyager be available in my Area? . . . The Voyager app is currently available to U.S. residents of 49 U.S. states and all US territories, with the exception of New York").

2

earn by opening Voyager Earn Accounts. Voyager promotes the interest rates on the Voyager Website and has advertised annual return up to twelve percent (12%) on certain cryptocurrencies or digital assets, as shown from the screenshot below taken from the Voyager Website.



12.    Voyager uses these investment proceeds to generate revenue, which, according to the Terms and Conditions of the Voyager Earn Accounts, includes comingling deposits, transferring deposits, to foreign jurisdictions, lending, pledging, selling, hypothecating, rehypothecating, and otherwise transferring assets to third parties, and engaging in other activities at Voyager's discretion.

13.    To attract investors to transfer assets into Voyager Earn Accounts, Voyager promises to pay investors monthly interest calculated at variable rates that depend on the type of digital asset or cryptocurrency transferred to Voyager, as shown from the screenshots below taken from the Voyager Website.



---

[3] See https://investvoyager.com/, last accessed March 28, 2022.

[ . . . ]

| | | | | | |
|---|---|---|---|---|---|
| **DOT** POLKADOT Min. monthly balance: 20 DOT | 12% | | **USDC** USD COIN Min. monthly balance: 100 USDC | 9% |
| **VGX** VOYAGER TOKEN Min. monthly balance: 100 VGX | 7% | | **MATIC** POLYGON Min. monthly balance: 100 MATIC | 5.25% |
| **ETH** ETHEREUM* Min. monthly balance: 0.5 ETH | 4.25% | | **BTC** BITCOIN* Min. monthly balance: 0.01 BTC | 4.05% |
| **LUNA** TERRA LUNA Min. monthly balance: 10 LUNA | 4% | | **ADA** CARDANO Min. monthly balance: 100 ADA | 4% |
| **SOL** SOLANA Min. monthly balance: 3 SOL | 3% | | **AAVE** AAVE Min. monthly balance: 1 AAVE | 3% |
| **CELO** CELO Min. monthly balance: 50 CELO | 3% | | **COMP** COMPOUND Min. monthly balance: 1 COMP | 3% |
| **DASH** DASH Min. monthly balance: 1.5 DASH | 3% | | **LINK** CHAINLINK Min. monthly balance: 10 LINK | 2.5% |
| **LTC** LITECOIN Min. monthly balance: 2 LTC | 2.5% | | **APE** APECOIN Min. monthly balance: 25 APE | 2% |
| **GRT** THE GRAPH Min. monthly balance: 200 GRT | 2% | | **ALGO** ALGORAND Min. monthly balance: 200 ALGO | 2% |

[4]

14.     While Voyager refers to payments made to Voyager Earn Account holders as "rewards," the payments constitute interest payments for assets placed in Voyager Earn Accounts.  Annual interest rates on eligible cryptocurrencies for March 2022 range from half of one percent (0.5%) to twelve percent (12%).

15.     For example, the chart above represents that, during March 2022, an investor will earn monthly interest on Bitcoin (symbol BTC) invested in a Voyager Earn Account calculated annually at 4.05% of the amount invested.  An investor is entitled to receive this interest if the investor maintains a minimum monthly account balance in his or her Voyager Earn Account greater than or equal to 0.01 BTC.

16.     The Customer Agreement for Voyager Earn Accounts, and describes interest payments for Voyager Earn Accounts as follows:

---

[4]Both images taken from https://investvoyager.com/earn/, last accessed March 28, 2022.  This image is edited for size and so omits other cryptocurrencies for which Voyager offers interest payments.

(B) <u>How Rewards Are Calculated</u>. Rewards earned on Cryptocurrency are variable. Voyager will typically publish anticipated reward rates once per month on or before the first business day of each month. Reward rates may be tiered, with specified rates in effect at any time only applied to specified portions of amounts of Cryptocurrency held in the Account. Rewards will be payable in arrears and added to the Account on or before the fifth business day of each calendar month for the prior calendar month. Voyager uses the daily balance method to calculate the Rewards on the Account. This method applies a daily periodic rate to the specified principal in the Account each day. The daily periodic rate is calculated by dividing the applicable interest rate by three hundred sixty-five (365) days, even in leap years. Voyager will determine the Reward rates and tiers for each month in Voyager's sole discretion, and Customer acknowledges that such Rewards may not be equivalent to benchmark interest rates observed in the market for bank deposit accounts.[5]

17.    As shown above, Voyager represents to its investors that eligible cryptocurrencies and digital assets transferred to Voyager as part of an investor's Voyager Earn Account accrue interest.  Voyager states in its offering that interest is calculated annually and paid out monthly to investors at variable rates.

18.    Voyager Earn Accounts are not protected by the Securities Investor Protection Corporation ("SIPC") a federally mandated, non-profit, member-funded United States corporation created under the Securities Investor Protection Act of 1970 that mandates membership of most registered broker-dealers.

19.    Voyager Earn Accounts are not insured by the Federal Deposit Insurance Corporation ("FDIC"), an agency that provides deposit insurance to depositors in the United States, or the National Credit Union Administration ("NCUA"), an agency that regulates and insures credit unions.[6]

20.    The Voyager Earn Accounts are not registered with the Division or any other securities regulatory authority, nor are they otherwise exempt from registration.

---

[5] *See* www.investvoyager.com/earn/ last accessed March 28, 2022.  The Voyager Website includes a copy of its Customer Agreement, dated January 7, 2022, and which contains similar terms, see www.investvoyager.com/useragreement/, last accessed March 28, 2022.
[6] Voyager does state on the Voyager Website that cash transferred by an investor is held by a banking partner and is FDIC insured up to $250,000.

21.     Voyager is not disclosing material information necessary for investors to evaluate in order to make an informed decision, including information about the risks associated with investing in unregistered securities.

22.     On January 1, 2021, Voyager maintained over 65,000 Voyager Earn Accounts valued at over $230 million in assets.  As of that date, over 900 of these Voyager Earn Accounts were held by Indiana residents with a total value in excess of $1.8 million in assets invested.

23.     By January 1, 2022, those amounts had increased dramatically, as Voyager maintained over 1.4 million Voyager Earn Accounts with approximately $5.8 billion assets invested.  Approximately 22,495 of these Voyager Earn Accounts were held by Indiana residents with a total value exceeding $68 million in assets invested.

### III.     CONCLUSIONS OF LAW

24.     The IUSA regulates the offer and sale of securities in Indiana.

25.     I.C. § 23-19-1-2(28) (2021) defines "security", in relevant part, to include investment contracts, notes, and evidence of indebtedness.

26.     I.C. § 23-19-3-1 (2021) provides that; "[i]t is unlawful for a person to offer or sell a security in this state unless: (1) the security is a federal covered security; (2) the security, transaction, or offer is exempted from registration under IC 23-19-2-1 through IC 23-19-2-3; or (3) the security is registered under this article."

27.     Voyager Earn Accounts constitute investment contracts, notes, and evidence of indebtedness, and so are securities as defined by the IUSA.

28.     Accordingly, by offering and selling Voyager Earn Accounts in Indiana to at least 22,495 investors, Voyager has violated I.C. § 23-19-3-1 (2021).

29.     Because Voyager has engaged, is engaging, and/or is about to engage in a violation of the IUSA and Rules, grounds exist for the Commissioner to issue a cease and desist order pursuant to I.C. § 23-19-6-4(a) (2021).

### IV.     JUDGMENT AND ORDER

For the foregoing reasons, pursuant to I.C. § 23-19-3-1(2021) and I.C. § 23-19-6-4(a) (2021) the Commissioner **ORDERS** Voyager cease and desist from;

      a)   offering and selling securities in Indiana, including but not limited to Voyager Earn Accounts, unless the security is registered with the Division, a federal covered security, or exempt from registration;

b) accepting additional assets into existing Voyager Earn Accounts; and

c) committing any further violations of the IUSA and Rules.

Voyager is ordered to cease and desist from engaging in this conduct on or before May 13, 2022, which is forty-five (45) days following the issuance of this Order.

Nothing in this order precludes Voyager from paying interest or rewards to existing Voyager Earn Account holders or refunding principal to investors in Indiana. Nothing in this order precludes the Division or Commissioner from seeking other remedies for violations of the IUSA or Rules in a subsequent pleading, petition, or other filing, including civil penalties, restitution, disgorgement, costs, and other remedies authorized by the IUSA and Rules.

## V.    NOTICE OF RIGHT TO HEARING

This Order is considered an agency action. Pursuant to I.C. § 23-19-6-4(b) (2021), the Order is effective on date of issuance. Pursuant to I.C. § 23-19-6-4(b) (2021), if a person subject to the order does not submit a written answer and request a hearing and no hearing is otherwise ordered by the Commissioner within forty-five (45) days after the date of service of the Order, the Order becomes final as to that person by operation of law.

If a hearing is requested, it must be held not later than forty-five (45) business days after receipt of said request pursuant to I.C. § 23-19-6-4(c) (2021), unless by agreement of the parties. To request a hearing, please either file a written answer and statement that a party is requesting a hearing over this matter with the Division or request a hearing from the State of Indiana Office of Administrative Law Proceedings ("OALP") in the manner set forth below. Within fifteen (15) days after receipt of a written answer a request for a hearing, the Commissioner will either transmit the matter to the State of Indiana Office of Administrative Law Proceedings ("OALP") or schedule the matter for a hearing at the Securities Division.

To request a hearing from the State of Indiana Office of Administrative Law Proceedings ("OALP") please do one of the following: 1) go online to www.in.gov/oalp and complete a Petition for Review; 2) mail your request; or 3) personally appear at the Office of Administrative Law Proceedings located at 402 W. Washington Street, Rm. W161 / Indianapolis, IN 46204 to file a Petition for Review. You will need this Order to complete your request.

SO ORDERED at Indianapolis, Indiana, this ___29th___ day of _March_, 2022.

HOLLI SULLIVAN
SECRETARY OF STATE

JOHN COCHRAN
SECURITIES COMMISSIONER

8

ENTERED

MAR 2 9 2022

10:08 am

COMMISSIONERS OFFICE

## COMMONWEALTH OF KENTUCKY
## PUBLIC PROTECTION CABINET
## DEPARTMENT OF FINANCIAL INSTITUTIONS
## ADMINISTRATIVE ACTION NO. 2022-AH-0002

| | |
|---|---|
| **DEPARTMENT OF FINANCIAL INSTITUTIONS** | **COMPLAINANT** |
| v.                    **EMERGENCY ORDER TO CEASE AND DESIST** | |
| **VOYAGER DIGITAL LTD.,**<br>**VOYAGER DIGITAL HOLDINGS, INC.,**<br>**and VOYAGER DIGITAL LLC** | **RESPONDENTS** |

The Department of Financial Institutions (hereinafter referenced as the "Department"), pursuant to Kentucky Revised Statute (KRS) 292.470, KRS 292.500, and 808 Kentucky Administrative Regulation (KAR) 10:225, hereby enters this **Emergency Order to Cease and Desist** against Voyager Digital LTD., Voyager Digital Holdings, Inc., and Voyager Digital LLC (hereinafter referenced as "Voyager", the "Company", or "Respondents"). In support thereof, the Department states as follows:

### PARTIES

1.      The Commissioner is responsible for administering the provisions of KRS Chapter 292, the Securities Act of Kentucky ("the Act"), as well as any applicable rules, regulations and orders entered pursuant to the Act.

2.      Voyager Digital Ltd. is incorporated in British Columbia, Canada and is the parent company for Voyager's subsidiaries, including Voyager Digital Holdings, Inc. Respondents have a principal office located at 33 Irving Plaza, Suite 3060, New York, NY 10003.

3.      Voyager Digital Holdings, Inc. is a corporation incorporated in Delaware and is the holding company for Voyager Digital Ltd.'s subsidiaries in the United States, including Voyager Digital LLC. Respondents have a principal office located at 221 River Street 9th Floor, Hoboken,

1 of 13

New Jersey, 07030. Voyager Digital Holdings, Inc. has a registered process agent at Corporation

Service Company, located at 251 Little Falls Drive, Wilmington, DE 19808.

4. . Voyager Digital LLC is a foreign limited liability company incorporated in

Delaware, has a principal office located at 185 Hudson St Ste 2500 Jersey City, NJ 07311, and has

a registered process agent at Corporation Service Company, 421 W Main St., Frankfort, KY 40601.

## STATEMENT OF FACTS

5. On July 16, 2021, the Department began its investigation into Voyager's securities-

related activities. Subsequently, the Department investigated Voyager, learning of the facts and

circumstances described herein.

6. Voyager Digital LLC is a subsidiary of Voyager Digital Ltd. and provides

Respondents' user-facing products and services for customers in the United States.

7. Voyager offers what it refers to as an "Earn Program" (hereinafter "Voyager

Interest Accounts"), which are interest-bearing cryptocurrency accounts that are available on

Voyager's website and proprietary smartphone application.

8. Voyager Interest Accounts can be either individual or corporate accounts and are

offered to anyone of legal age under the laws of the state where the Customer resides, except for

residents of certain foreign jurisdictions. Registering for a Voyager Interest Account requires an

investor to mark a box to indicate the investor has read and accepted Voyager's "Terms of Use."

This document is available on the website via hyperlink, although the investor can mark the box

regardless of whether the hyperlink is opened or the document content is reviewed.

9. Investors open accounts by transferring U.S. dollars or eligible cryptocurrency or

other digital assets to Voyager to invest in the Voyager Interest Accounts. Investors relinquish

control over their deposits and Voyager takes custody and control of the investors' deposits.

Voyager is free to use investors' deposits consistent with the terms of the Voyager Interest Accounts. Voyager's uses for investor deposits include commingling investor deposits into an omnibus account; transferring deposited dollars, cryptocurrencies, and digital assets to foreign jurisdictions; lending, pledging, selling, rehypothecating, and otherwise transferring deposited dollars, cryptocurrencies, and digital assets to unidentified third parties; and engaging in any other activities at Voyager's discretion.

10.    U.S. dollar, cryptocurrency, and digital asset deposits into Voyager Interest Accounts are comingled in omnibus accounts belonging to Voyager and are used by Voyager to fund its revenue-generating activities. Investors who deposit into Voyager Interest Accounts can opt out of earning interest on their deposits but cannot opt out of Voyager taking control of their deposits and using investor deposits as it sees fit.

11.    Voyager generates revenue through cryptocurrency and digital asset trading, lending, borrowing, proprietary trading, and other activities conducted at Voyager's discretion. These activities are funded, in part, by offering its Voyager Interest Accounts to consumers for the deposit of the consumers' cryptocurrencies.

12.    In exchange for consideration received in the present, Voyager promises to pay lucrative interest rates in the future. Voyager currently promotes the interest rates through its website, which recently advertised an annual return of up to 12 percent on certain cryptocurrencies or digital assets for retail investors, which significantly exceeds the rates currently being offered for short-term, investment grade, fixed-income securities or for bank savings accounts.

13.    Voyager sets the interest rates it pays on various cryptocurrencies and digital assets in advance and on a periodic basis. Voyager sets its interest rates based on various considerations and prioritizing Voyager's need for particular cryptocurrencies or digital assets.

14.    Voyager incentivizes investors who invest in the Voyager Interest Accounts to also hold Voyager's native digital token that comes in two iterations, VGX and VGX 2.0, by paying higher rates of interest—which Voyager references as a "boost"—to investors who hold certain amounts of VGX. As an example, Voyager has paid an extra 0.5% interest to Voyager Interest Account holders that hold 500 units of VGX and has paid an extra 1.5% interest to Voyager Interest Account holders that hold 20,000 units of VGX.

15.    The accrual of interest on Voyager Interest Accounts is calculated by using a daily periodic rate applied to the principal in a Voyager Interest Account. Interest is paid the month after it accrues, on or before the fifth business day of each month for the interest accrued for the prior month. Interest payments are denominated in the same type of cryptocurrency or digital asset originally invested.

16.    Voyager's Customer Agreement states that customers grant Voyager the right to loan cryptocurrency held in the Voyager Interest Account to third parties, which may not be secured or otherwise require posted collateral. Furthermore, Voyager states that "[t]he Rewards Program and underlying Loans are not insured." The Customer Agreement's description of risk states that "losses may exceed the principal invested."

17.    Retail investors may withdraw their deposits in the Voyager Interest Accounts at any time, subject to certain processing times and minimum balance requirements, including Voyager's sole discretion to delay or prohibit withdrawals within 60 days of an investor deposit.

18.    On or about July 16, 2021, the Department searched Voyager's website, https://www.investvoyager.com/. The website states, among other things, "Our mission is to provide every investor with a trusted and secured access point to crypto asset trading...Let us be your guide on this journey to the new frontier of investing." In Voyager's "Terms of Use", Voyager

includes a "Disclaimer of Warranties; Limitation of Liability" section, which states in capitalized letters:

THE SERVICES AND THE CONTENT ARE PROVIDED "AS IS" AND "AS AVAILABLE" WITHOUT ANY WARRANTIES OF ANY KIND, INCLUDING THAT THE SERVICES OR CONTENT WILL OPERATE ERROR-FREE OR THAT THE SERVICES, ITS SERVERS, OR THE CONTENT ARE FREE OF COMPUTER VIRUSES OR SIMILAR CONTAMINATION OR DESTRUCTIVE FEATURES

WE DISCLAIM ALL WARRANTIES INCLUDING, BUT NOT LIMITED TO,...FITNESS FOR PARTICULAR PURPOSE AND ANY WARRANTIES ARISING FROM A COURSE OF DEALING, COURSE OF PERFORMANCE, OR USAGE OF TRADE.

Voyager then references that some jurisdictions do not allow exclusion of certain warranties and that none of the disclaimers preclude recovery of damages and loss caused by Voyager's negligence, gross negligence, recklessness, fraud, or other willful, unconscionable or intentional misconduct.

19.    In Voyager's Customer Agreement, Section 5(C) states that in the event Voyager or a custodian become subject to an insolvency proceeding, "it is unclear how Customer Cryptocurrency would be treated and what rights Customer would have to such Cryptocurrency." In Section 7(J), Voyager describes that market volatility and disruption may suspend access to the customer's account, prevent customers from closing any open positions in the account, and Voyager may cease to follow any customer instructions, with the customer presumed to acknowledge that market rates after such an event may differ significantly to what was available before.

20.    In describing the tiers of the Voyager Earn Program, Voyager designates tier one (starting at 500 VGX) as an "Adventurer" with the description "You are a bold investor ready to secure your financial future," tier two (starting at 5,000 VGX) as an "Explorer" with the description "You are a seasoned investor reaping the rewards of your hard-earned investments",

and tier three (starting at 20,000 VGX) as a "Navigator" with the description "You are a master investor taking the reins on your finances and maximizing your rewards." These tiers are premised on what Voyager describes as "VGX staking rewards" for holding Voyager's token in the above-referenced quantities. According to Voyager's white paper regarding the VGX 2.0 token, the only qualification for these tiers is the amount of the token held in the account by the customer, without any reference to reviewing the customer's investment acumen despite each tier's references to a substantially different kinds of investment experience. The white paper describes staking rewards in terms that would be analogous to a 7% monthly dividend and that Voyager will "utilize blockchain staking whenever possible to generate staking yields."

21.    Voyager's "Voyager Cryptocurrency Disclosures" state:

Cryptocurrencies are highly speculative in nature, involve a high degree of risk and can rapidly and significantly decrease in value. It is reasonably possible for the value of Cryptocurrencies to decrease to zero or near zero.

Cryptocurrency held on the Voyager Platform is not protected by FDIC insurance or any other government-backed or third party insurance.

The future development of Cryptocurrencies and their underlying software protocols is uncertain. The slowing or stopping of the development or acceptance of Cryptocurrencies may negatively affect their value.

Cryptocurrencies are not regulated or are lightly regulated in most countries, including the United States...

The value, of Cryptocurrencies may result from the continued willingness of market participants to exchange U.S. Dollars (or other government-backed currencies) for Cryptocurrency. Therefore, should the market for a Cryptocurrency disappear, the Cryptocurrency may suffer a total and permanent loss of value.
...

The software protocols that underlie Cryptocurrencies are typically open source projects...such software protocols are subject to sudden and dramatic changes (including Forks) that might have a significant impact on the availability, usability or value of a given Cryptocurrency.

Voyager's blog, NODE, features a similar excerpt for its "Voyager Cryptocurrency Risk Disclosure", which states that "Cryptocurrencies are highly speculative in nature, involving a high degree of risk and can rapidly and significantly decrease in value. It is reasonably possible for the value of Cryptocurrencies to decrease to zero or near zero. While diversification may help spread risk, it does not assure a profit or protect against loss."

22.    Respondents are not licensed with the United States Securities and Exchange Commission nor are Respondents' Voyager Interest Accounts registered.

23.    Respondents are not registered in Kentucky to offer or sell securities in Kentucky, nor are Respondents' Voyager Interest Accounts registered or permitted for sale in Kentucky.

24.    Respondents are not licensed as a money transmitter in Kentucky to conduct currency exchange or money transmission activities in Kentucky.

25.    Respondents are not registered with the Commodity Futures Trading Commission or its delegee, the National Futures Association.

26.    Respondents' Voyager Interest Accounts are not protected by Securities Investor Protection Corporation, otherwise known as the SIPC, a federally mandated, non-profit, member-funded United States corporation created under the Securities Investor Protection Act of 1970 that mandates membership of most U.S.-registered broker-dealers.

27.    The cryptocurrency contained and/or associated with Voyager Interest Accounts are not insured by the Federal Deposit Insurance Corporation ("FDIC"), an agency that provides deposit insurance to depositors in the United States, or the National Credit Union Administration ("NCUA"), an agency that regulates and insures credit unions.

28.    As of March 2022, Voyager claims it has approximately $5,000,000,000 in assets under management from approximately 1,500,000 Voyager Interest Accounts.

29.    As of March 2022, excluding digital asset and cryptocurrency deposits, Voyager has more than $25,986,412 in total assets under management from more than 15,325 Kentucky residents and businesses, with more than $25,942,012 in assets under management as reward accounts.

## STATUTORY AUTHORITY

30.    KRS 292.310(19) defines a "security", in relevant part, as:

...any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, life settlement investment, voting-trust certificate, certificate of deposit for a security; fractional undivided interest in oil, gas, or other mineral rights; or, in general, any interest or instrument commonly known as a "security[.]"

31.    KRS 292.340 states,

It is unlawful for any person to offer or sell any security in this state, unless the security is registered under this chapter, or the security or transaction is exempt under this chapter, or the security is a covered security.

32.    KRS 292.470 states, in pertinent part,

Whenever it appears to the commissioner that any person has engaged or is about to engage in any act or practice constituting a violation of any provision of this chapter or any rule or order under this chapter, the commissioner may in his or her discretion bring any or all of the following remedies:

(1) Issue a cease and desist order, with or without a prior hearing, appealable to Franklin Circuit Court, against the person or persons engaged in the prohibited activities directing that person or persons to cease and desist from illegal activity. In order to issue an order without prior hearing, the commissioner must find that the delay in issuing a final cease and desist order will cause harm to the public.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

33.    The Department has become aware that Voyager is offering securities in the form of investment contracts in exchange for the deposit of assets with Voyager. These investment

contracts allow passive investors to earn profit in the form of interest on the assets deposited with Voyager and qualify as securities under the Act.

34.     Through Voyager's publicly available website and smartphone application, Respondents have solicited securities in Kentucky.

35.     Voyager has never been registered with the Department and has never sought registration for either itself or its Voyager Interest Accounts.

36.     Pursuant to KRS 292.340, it is unlawful for any person to solicit or sell securities in Kentucky without first being registered with the Department to do so.

37.     Voyager and the Voyager Interest Accounts do not qualify for an exemption from registration.

38.     Based on the facts set forth above, Voyager offered unregistered securities in Kentucky through a publicly available website, in contravention of the Act. These securities were not registered with the Department as required by the Act, do not qualify for an exemption from registration and, unless enjoined, Voyager will continue its conduct without appropriate regulation.

39.     Respondent's management of assets is completely unregulated and is not subject to any government oversight or approval.

40.     Voyager, by failing to register itself and its Voyager Interest Accounts pursuant to the Act, are not abiding by any disclosure requirements regarding the risks of investing with the Company, or the potential losses that an investor can suffer after opening a Voyager Interest Account.

41.     Accounts opened with Voyager are not insured by the Federal Deposit Insurance Corporation, or any other government entity.

42.    This lack of oversight coupled with the extremely volatile nature of the cryptocurrencies used to fund Respondents' Voyager Interest Accounts has resulted in an unregulated market that represents a substantial risk to consumers.

43.    Delay in issuing a final cease and desist order in this case would cause direct harm to the public due to Respondent's current and foreseeable conduct. Failure of the Department to enter an emergency order to cease and desist in this case could result in extensive financial losses to the citizens of the Commonwealth, and consumers harmed in this way may have little to no recourse whatsoever. The emergency nature of this order is essential to protect the interests of the citizens of the Commonwealth due to the high volume of assets and volatile nature of cryptocurrency.

## ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1.    Voyager, shall **CEASE AND DESIST** from soliciting or selling any security in Kentucky unless that security is registered with the Department pursuant to KRS 292.340; and

2.    Voyager, shall **CEASE AND DESIST** from any and all activity which would otherwise violate the Act.

**SO ORDERED** on this the _29th__ day of _March___, 2022.

Charles
A. Vice

Digitally signed by: Charles A.
Vice
DN: CN = Charles A. Vice email
= Charles.Vice@ky.gov. C = US O
= Dept. of Financial Institutions
OU = PPC/DFI/Commissioner
Date: 2022.03.29 09:56:59 -
05'00'

____/s/ *Charles A. Vice*____
CHARLES A. VICE
COMMISSIONER

10 of 13

## NOTICE TO RESPONDENT

You are hereby notified that you are entitled to request an emergency hearing. If requested, an administrative hearing shall be held within ten (10) days pursuant to the provisions of KRS Chapter 13B.125. Please submit any request for hearing, in writing, to Brandon Adcock, Staff Attorney, Kentucky Department of Financial Institutions, 500 Mero Street 2 SW 19, Frankfort, Kentucky 40601. Alternatively, you may also have the right to the judicial review of this Order in Franklin Circuit Court pursuant to KRS 292.470(1).

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Emergency Order to Cease and Desist was sent on this the 29th day of March, 2022 by the method indicated below to the following:

*Via certified mail, return receipt requested:*

Voyager Digital Ltd.
33 Irving Plaza
Suite 3060
New York, NY 10003
*Respondent*

Voyager Digital Holdings, Inc.
221 River Street 9th Floor
Hoboken, New Jersey, 07030
*Respondent*

Corporation Service Company
VOYAGER DIGITAL HOLDINGS, INC.
251 Little Falls Drive
Wilmington, DE 19808
*Registered Agent for Service of Process*

Voyager Digital LLC
185 Hudson St
Ste 2500
Jersey City, NJ 07311

Corporation Service Company
VOYAGER DIGITAL LLC
421 W Main St.
Frankfort, KY 40601
Registered Agent for Service of Process

*Via electronic delivery:*

Brandon Adcock, Staff Attorney III
DEPARTMENT OF FINANCIAL INSTITUTIONS
500 Mero Street, 2 SW 19
Frankfort, KY 40601
*Counsel for Department of Financial Institutions*

Kentucky Department of Financial Institutions

Name: *Allison Reed, by Mary Johnson*

Title: *Executive Staff Advisor*

STATE OF NEW JERSEY
BUREAU OF SECURITIES
P.O. Box 47029
Newark, New Jersey 07101
(973) 504-3600

| | |
|---|---|
| **IN THE MATTER OF:**<br><br>Voyager Digital Ltd., Voyager Digital Holdings, Inc. and Voyager Digital, LLC,<br><br>Respondents. | **SUMMARY CEASE<br>AND DESIST ORDER** |

Pursuant to the authority granted to Amy G. Kopleton, Acting Chief of the New Jersey Bureau of Securities ("Bureau Chief"), under the Uniform Securities Law (1997), N.J.S.A. 49:3-47 to -89 ("Securities Law") and certain regulations thereunder, and based upon documents and information obtained during the investigation by the New Jersey Bureau of Securities ("Bureau"), the Bureau Chief hereby finds that there is good cause and it is in the public interest to enter this Summary Cease and Desist Order ("Order") against Voyager Digital Ltd., Voyager Holdings, Inc. and Voyager Digital, LLC (collectively, "Voyager").

The Bureau Chief makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Voyager Digital, LLC is a financial services company that generates revenue through trading, borrowing, staking, and lending cryptocurrency. Since November 1, 2019, Voyager has been, at least in part, funding its income generating activities, including lending operations, digital asset staking, and proprietary trading, through the sale of unregistered securities in the form of cryptocurrency interest-earning accounts. Voyager refers to these unregistered

1

securities as its "Earn Program,"[1] which is a feature of all Voyager cryptocurrency trading accounts ("Voyager Earn Program Accounts,") unless the account holder opts out.

2.    Voyager solicits investors to invest in the Voyager Earn Program Accounts by depositing certain eligible cryptocurrencies into the investors' Voyager Earn Program Account. After obtaining transfers of cryptocurrencies from retail investors, Voyager then pools these cryptocurrencies together to fund its various income generating activities, including lending operations, proprietary trading, cryptocurrency staking, and investments in other cryptocurrency trading platforms, such as Celsius Network.  In exchange for investing in the Voyager Earn Program Accounts, investors are promised an attractive interest rate that is paid monthly in the same type of cryptocurrency as originally invested.

3.    The Voyager Earn Program Accounts are not registered with the Bureau or any other securities regulatory authority; nor are they otherwise exempt from registration.  Digital assets contained in Voyager Earn Program Accounts are not protected by the Securities Investor Protection Corporation ("SIPC"), insured by the Federal Deposit Insurance Corporation ("FDIC"), or insured by the National Credit Union Administration ("NCUA").  This lack of a protective scheme or regulatory oversight subjects Voyager Earn Program Account investors to additional risks not borne by investors who maintain assets with most SIPC member broker-dealers, or with banks, savings associations, or credit unions, although Voyager does disclose the lack of insurance of digital assets to Voyager Earn Program Account investors.

4.    As of March 1, 2022, Voyager had approximately 1,530,000 Voyager Earn Program Accounts representing approximately $5 billion in assets, of which approximately 52,800 were New Jersey-based accounts representing approximately $197 million in assets.

---

[1] At various times, Voyager has referred to its cryptocurrency interest account product as the Voyager Interest Program and Voyager Rewards.

5.      Despite the Voyager Earn Program Accounts lacking the safeguards that the SIPC, FDIC, and NCUA would offer, and lacking the regulatory oversight of securities registration, by March 1, 2022, Voyager's holdings had mushroomed to the equivalent of approximately $5 billion in cryptocurrency assets from the sale of these unregistered securities in violation of the Securities Law.

6.      The Bureau Chief enters this Order to protect the investing public by halting the offer and sale of these unregistered securities, and the contribution of additional assets to existing Voyager Earn Program Accounts.  Nothing in this order shall preclude Voyager, or any of its affiliates, from paying interest, also known as "Rewards," on the existing Voyager Earn Program Accounts or refunding principal to the Voyager Earn Program Account investors consistent with Voyager's Customer Agreement.

## A.    **The Respondents**

7.      Voyager Digital Ltd. is incorporated in British Columbia, Canada and is the parent company for Voyager's subsidiaries, including Voyager Digital Holdings, Inc.

8.      Voyager Digital Holdings, Inc. is incorporated in Delaware and is the holding company for Voyager Digital Ltd.'s subsidiaries in the United States, including Voyager Digital, LLC.

9.      Voyager Digital, LLC, is a Delaware limited liability company, that effected a foreign entity filing in New Jersey on March 2, 2018, with offices at 185 Hudson Street, Jersey City, New Jersey.  Voyager conducts its business on the internet, through a website accessible to the general public at https://www.investvoyager.com/ (the "Voyager Website"), which is also accessible through Voyager's own proprietary app via smartphone.

10.     Voyager is not presently registered, and has never been registered, in any capacity with the Bureau; nor have the Voyager Earn Program Accounts ever been registered with the

Bureau.

B.    **The Voyager Earn Program Account Securities**

   a.    **Voyager Earn Program**

11.    Voyager offers and sells its Voyager Earn Program Account unregistered securities in the form of individual and corporate accounts. Investors in these accounts ("Earn Program Investors") deposit certain popular cryptocurrencies with Voyager to earn "up to 12% Rewards." The Voyager Earn Program Account "Rewards" rates Voyager advertises are well in excess of the rates currently being offered on short-term investment grade fixed income securities, or on bank savings accounts.

12.    Voyager offers its Voyager Earn Program Accounts to all U.S. residents over the age of eighteen, except residents of New York state.

13.    When an investor signs up with Voyager, they complete a KYC (Know Your Customer) protocol in which they input certain identifying personal information, including name, age and address, and provide verification using an identification document such as a driver's license. To create an account, a user must check a box next to the statement, "By creating an account, you agree to our Terms," with the word "terms" hyperlinking to Voyager's Customer Agreement (the "Voyager Terms"). Links to the Voyager Terms also appear elsewhere on the Voyager Website.

14.    The Voyager Website states that Voyager requires Earn Program Investors to maintain a specified minimum average monthly cryptocurrency balance for an Earn Program Investor to earn interest on Voyager Earn Program Account balances. Specific minimum balances for particular coins are listed on the Voyager app information page for that coin.

15.    Voyager only accepts certain types of cryptocurrencies for deposit in the Voyager Earn Program Accounts. Although Voyager refers to its payments to Earn Program Investors as

4

"Rewards," the term "Rewards" is a substitute for interest.

16.    Voyager Earn Program Investors earn a variable interest rate on their investment and may withdraw their digital assets at any time, subject to certain restrictions, including discretionary decisions by Voyager to "delay, modify or prohibit, in whole or in part, any requested Withdrawal," and withdrawals within sixty days of a cryptocurrency or cash deposit.

17.    The currently monthly interest rates for Earn Program Investors are posted on the Voyager Website.  Voyager's interest rates for deposits of certain cryptocurrencies in its Earn Program Accounts may be "tiered" with specified rates in effect at any time only applied to specified portions of cryptocurrency held in the account, according to the Voyager Terms.  Annual interest rates on eligible cryptocurrencies posted on the Voyager Website for March 2022 ranged from 12% for Polkadot to 0.5% for OMG:

**THIS AREA INTENTIONALLY LEFT BLANK**

| | | |
|---|---|---|
| **DOT** POLKADOT<br>Min. monthly balance: 20 DOT | 12% | |
| **USDC** USD COIN<br>Min. monthly balance: 100 USDC | 9% | |
| **VGX** VOYAGER TOKEN<br>Min. monthly balance: 100 VGX | 7% | |
| **MATIC** POLYGON<br>Min. monthly balance: 100 MATIC | 5.25% | |
| **ETH** ETHEREUM*<br>Min. monthly balance: 0.5 ETH | 4.25% | |
| **BTC** BITCOIN*<br>Min. monthly balance: 0.01 BTC | 4.05% | |
| **ADA** CARDANO<br>Min. monthly balance: 100 ADA | 4% | |
| **LUNA** TERRA LUNA<br>Min. monthly balance: 10 LUNA | 4% | |
| **AAVE** AAVE<br>Min. monthly balance: 1 AAVE | 3% | |
| **CELO** CELO<br>Min. monthly balance: 50 CELO | 3% | |
| **COMP** COMPOUND<br>Min. monthly balance: 1 COMP | 3% | |
| **DASH** DASH<br>Min. monthly balance: 1.5 DASH | 3% | |
| **SOL** SOLANA<br>Min. monthly balance: 3 SOL | 3% | |
| **LINK** CHAINLINK<br>Min. monthly balance: 10 LINK | 2.5% | |
| **LTC** LITECOIN<br>Min. monthly balance: 2 LTC | 2.5% | |
| **BCH** BITCOIN CASH<br>Min. monthly balance: 0.5 BCH | 2% | |
| **ATOM** COSMOS<br>Min. monthly balance: 20 ATOM | 2% | |
| **XTZ** TEZOS<br>Min. monthly balance: 50 XTZ | 2% | |
| **UNI** UNISWAP<br>Min. monthly balance: 10 UNI | 2% | |
| **FIL** FILECOIN<br>Min. monthly balance: 3 FIL | 2% | |
| **STMX** STORMX<br>Min. monthly balance: 5000 STMX | 2% | |
| **GRT** THE GRAPH<br>Min. monthly balance: 200 GRT | 2% | |
| **ALGO** ALGORAND<br>Min. monthly balance: 200 ALGO | 2% | |
| **ZRX** 0X<br>Min. monthly balance: 200 ZRX | 1.5% | |

Search coins                                                          Sort by: Highest rates

| | | |
|---|---|---|
| **UMA** UMA<br>Min. monthly balance: 25 UMA | 1% | |
| **BAT** BASIC ATTENTION TOKEN<br>Min. monthly balance: 300 BAT | 1% | |
| **EOS** EOS<br>Min. monthly balance: 50 EOS | 1% | |
| **OXT** ORCHID<br>Min. monthly balance: 500 OXT | 1% | |
| **XLM** STELLAR LUMENS<br>Min. monthly balance: 1000 XLM | 1% | |
| **ZEC** ZCASH<br>Min. monthly balance: 2 ZEC | 1% | |
| **MANA** DECENTRALAND<br>Min. monthly balance: 1000 MANA | 0.5% | |
| **DOGE** DOGECOIN<br>Min. monthly balance: 1000 DOGE | 0.50% | |
| **KNC** KYBER NETWORK<br>Min. monthly balance: 100 KNC | 0.5% | |
| **OMG** OMG NETWORK<br>Min. monthly balance: 50 OMG | 0.5% | |

*Rewards are paid up to 100 Bitcoin and 500 Ethereum.

6

18.    Voyager also pays interest for deposits of certain stablecoins, which are cryptocurrencies pegged to an external measure of value such as the U.S. dollar, in its Voyager Earn Program Accounts, as explained on the Voyager Website.  For example, Voyager currently pays 9% annual interest on deposits of USDC with a minimum balance of 100 USDC.

19.    Voyager's Customer Agreement describes the interest calculation and payment methodology:

> 10. Rewards Program. By entering into this Customer Agreement, and subject to clause (F) of this Section 10, Customer understands, acknowledges and agrees that Customer is opting into the Voyager Earn Program (the "Rewards Program").  The Rewards Program allows Customer to earn additional Cryptocurrency of the same kind of Cryptocurrency held in Customer's Account (the "Rewards").  The terms and conditions governing the Rewards Program are as follows:

> \*    \*    \*

> (B) How Rewards Are Calculated. Rewards earned on Cryptocurrency are variable. Voyager will typically publish anticipated Rewards rates once per month on or before the first business day of each month. Reward rates may be tiered, with specified rates in effect at any time only applied to specified portions of amounts of Cryptocurrency held in the Account. Rewards will be payable in arrears and added to the Account on or before the fifth business day of each calendar month for the prior calendar month. Voyager uses the daily balance method to calculate the Rewards on the Account. This method applies a daily periodic rate to the specified principal in the Account each day. The daily periodic rate is calculated by dividing the applicable interest rate by three hundred sixty-five (365) days, even in leap years. Voyager will determine the Reward rates and tiers for each month in Voyager's sole discretion, and Customer acknowledges that such Rewards may not be equivalent to benchmark interest rates observed in the market for bank deposit accounts.

**b.    Voyager's Promotion of Earn Program Accounts as Investment Products**

20.    Voyager encourages its Earn Program Investors to think of their Voyager Earn Program Accounts as investments as evidenced by Voyager's own homepage address: https://www.investvoyager.com/ and certain investment-related statements on Voyager's website,

such as "Grow your crypto portfolio" and "journey to the new frontier of investing," as illustrated

in the following:



and

and

## We believe that crypto assets are the future of finance and investing. Together, we are creating the broker that the crypto market deserves.

We are a team of finance and technology industry veterans dedicated to empowering and servicing investors in the most exciting asset class to date – crypto. Our founders have combined their decades worth of experience from leading organizations like E*TRADE, Uber, TradeIt, Lightspeed Financial and more, to bring you Voyager.

Our mission is to provide every investor with a trusted and secure access point to crypto asset trading. We offer best-in-class customer service, incomparable access to the most popular assets and commission-free trading.

Let us be your guide on this journey to the new frontier of investing. Please email contact@investvoyager.com with any inquiries.

**c.** **Voyager's Use of the Earn Program Account Deposit Funds**

21. The Voyager Customer Agreement provides that an Earn Program Investor relinquishes control over the deposited cryptocurrency to Voyager and that Voyager is free to use those assets as it sees fit, including commingling the Earn Program Investor's cryptocurrency with those of other Earn Program Investors, investing those pooled assets, and staking them, or lending them to various third parties, including custodians and other financial institutions. Having relinquished control over the deposited cryptocurrency in their Voyager Earn Program Accounts, the Earn Program Investors are passive investors.

22. Specifically, Paragraph 10. A. "Rewards Program - Overview" of the Voyager Customer Agreement provides:

> (A) Overview. Each Customer participating in the Rewards Program acknowledges and agrees that Voyager may rely on the consent to rehypothecate granted by each customer pursuant to **Section 5(D) – Consent to Rehypothecate** with respect to Cryptocurrency held in

9

such Customer Account. Such consent to rehypothecate expressly includes allowing Voyager to (1) stake Cryptocurrency held in an omnibus fashion through various blockchain protocols (either by delegating Cryptocurrencies to the financial institutions which, in return, stake such Cryptocurrencies or using staking service providers to stake Cryptocurrencies); and (2) lend such Cryptocurrency to various institutional third parties (each, a "Borrower") determined at Voyager's sole discretion (each, a "Loan"). Voyager enters into these Loans as principal and independently negotiates with each Borrower the terms of a Loan, but these Loans are generally unsecured, for a fixed term of less than one year or can be repaid on a demand basis, and provide a fee payable in Cryptocurrency based on the percentage and denominated in the Cryptocurrency lent. Voyager selects which and how much Cryptocurrencies are available for such staking and lending.

23.     In a response to an August 6, 2021 inquiry from the Bureau to Voyager, Voyager noted that "[a]s of the date of the request, all of the outstanding institutional lending activities represent uncollateralized loans."

24.     Paragraph 5.D. of Voyager's Customer Agreement, "Consent to Rehypothecate," further details the status of cryptocurrency deposited with Voyager by Earn Program Investors:

(D)  <u>Consent to Rehypothecate</u>. Customer grants Voyager the right, subject to applicable law, without further notice to Customer, to hold Cryptocurrency held in Customer's Account in Voyager's name or in another name, and to pledge, repledge, hypothecate, rehypothecate, sell, lend, stake, arrange for staking, or otherwise transfer or use any amount of such Cryptocurrency, separately or together with other property, with all attendant rights of ownership, and for any period of time and without retaining a like amount of Cryptocurrency, and to use or invest such Cryptocurrency at Customer's sole risk.

25.     Voyager then pools the deposited cryptocurrencies together with Voyager's other assets in order to, among other income-generating activities, stake them or, invest those pooled assets by making loans to various third parties, including custodians and other financial institutions.

10

26.    Voyager does not disclose certain material information to Earn Program Investors that issuers of registered securities must include in a registration statement and provide to prospective investors in the form of a prospectus pursuant to section 52(d) of the Securities Law.

**d.    The Voyager Earn Program Accounts are Unregistered Securities**

27.    While certain of Voyager's loan products appear to be licensed under various state licensing requirements for money services businesses or money transmitters, and Voyager Digital Ltd. is a registered public company in Canada, the Voyager Earn Program Account is not currently registered with any federal or state securities regulator, nor is it exempt from registration as required by law, even though the Voyager Earn Program Account is a "security" and subject to such requirements.

28.    Voyager fails to disclose to Earn Program Investors that its Earn Program Account is not currently registered by federal or state securities regulatory authorities, even though the Voyager Earn Program Account is a "security" and required to be registered.

**e.    Misrepresentations and Omissions in the Marketing of the Voyager Earn Program Accounts**

29.    Voyager represents to the public on its website that it is "publicly traded, licensed, and regulated."  What Voyager fails to disclose in proximity to its advertising claim that it is "publicly traded," however, is that Voyager Digital, LLC's parent company, Voyager Digital Ltd., is publicly traded *in Canada*, not the U.S., by virtue of its equity securities being listed on the Toronto Stock Exchange.  Thus, Voyager's advertising claim that it is "publicly traded" is inaccurate with respect to Voyager Digital, LLC, which is not a publicly-traded entity, and creates a misleading impression with respect to Voyager Digital, LLC's regulatory status, particularly because Voyager's website notes that "[a]ll services [are] provided by Voyager Digital, LLC. . . ".

11

30.     Voyager's claim to be "licensed" stems from state licensing in far fewer than all U.S. states as a money transmitter, or money services business, which is unrelated to Voyager's offering and selling of unregistered securities, and may convey the misleading impression to unsophisticated investors that Voyager is "licensed" to offer and sell such securities, when it is not.

31.     Notwithstanding its claims to be licensed and regulated, Voyager's Earn Program Accounts are neither licensed nor regulated by the Bureau, and Voyager has not sought to register its Earn Program Account with the Bureau, notwithstanding that it is a security required to be registered with the Bureau.

## CONCLUSIONS OF LAW

### VOYAGER OFFERED AND SOLD UNREGISTERED SECURITIES
### N.J.S.A. 49:3-60

32.     The preceding paragraphs are incorporated by reference as though set forth verbatim herein.

33.     The Voyager Earn Program Account is a security as defined in N.J.S.A. 49:3-49(m).

34.     The Voyager Earn Program Account was and is required to be registered with the Bureau pursuant to N.J.S.A. 49:3-60.

35.     The Voyager Earn Program Account has not been registered with the Bureau, is not exempt from registration, and is not federally covered.

36.     Voyager has offered and sold unregistered securities in violation of N.J.S.A. 49:3-60 and continues to do so.

37.     Each violation of N.J.S.A. 49:3-60 is a separate violation of the Securities Law and is cause for the denial of certain exemptions.

12

38.    N.J.S.A. 49:3-69(a)(1) empowers the Bureau Chief to issue a cease and desist order against persons engaged in prohibited activities, directing them to cease and desist from further illegal activity or doing acts in furtherance thereof.

## CONCLUSION

**THEREFORE,** it is on this 29th day of March 2022, **ORDERED** that:

39.    Effective on April 29, 2022, Voyager and any person, agent, employee, broker, partner, officer, director, affiliate, successor, or stockholder thereof, under any of their direction or control shall CEASE AND DESIST from:

a.    offering for sale any security, including any Voyager Earn Program Account, to or from New Jersey unless the security is registered with the Bureau, is a covered security, or is exempt from registration under the Securities Law;

b.    accepting any additional assets into an existing Voyager Earn Program Account; and

c.    violating any other provisions of the Securities Law and any rules promulgated thereunder for the sale of any security in New Jersey.

40.    Nothing in this order shall preclude Voyager from paying interest, also known as "Rewards," on existing Voyager Earn Program Accounts or refunding principal to Earn Program Account Investors consistent with the Voyager Terms.

41.    All exemptions contained in N.J.S.A. 49:3-50 subsection (a) paragraph 9, 10, and 11 and subsection (b) are hereby DENIED as to Voyager.

42.    All exemptions to the registration requirements provided by N.J.S.A. 49:3-56(b),

N.J.S.A. 49:3-56(c), and N.J.S.A. 49:3-56(g) are hereby DENIED as to Voyager.

Amy G. Kopleton
Acting Chief, New Jersey Bureau of Securities

## NOTICE OF RIGHT TO HEARING

Pursuant to N.J.S.A. 49:3-69(a)(1)(i), the Bureau Chief shall entertain on no less than three days' notice a written application to lift the Order to Cease and Desist on written application of the person subject thereto and in connection therewith may, but need not, hold a hearing and hear testimony, but shall provide to the person subject thereto a written statement of the reasons for the Order to Cease and Desist.

Pursuant to N.J.S.A. 49:3-69(a)(l)(ii), upon service of notice of the Order to Cease and Desist issued by the Bureau Chief, the person subject thereto shall have up to 15 days to respond to the Bureau in the form of a written answer and written request for a hearing. The Bureau Chief shall, within five days of receiving the answer and request for a hearing, either transmit the matter to the Office of Administrative Law for a hearing or schedule a hearing at the Bureau of Securities. Orders issued pursuant to N.J.S.A. 49:3-69 shall be subject to an application to vacate upon 10 days' notice, and a preliminary hearing on the Order shall be held in any event within 20 days after it is requested, and the filing of a motion to vacate the Order shall toll the time for filing an answer and written request for a hearing.

Pursuant to N.J.S.A. 49:3-69(a)(l)(iii), if any person subject to the Order fails to respond by filing a written answer and written request for a hearing with the Bureau or moving to vacate the order within the 15-day prescribed period, that person shall have waived the opportunity to be heard. The Order will be a Final Order and shall remain in effect until modified or vacated.

## NOTICE OF OTHER ENFORCEMENT REMEDIES

You are advised that the Uniform Securities Law provides several enforcement remedies, which are available to be exercised by the Bureau Chief, either alone or in combination. These remedies include, in addition to this action, the right to seek and obtain injunctive and ancillary relief in a civil enforcement action, N.J.S.A. 49:3-69, and the right to seek and obtain civil penalties in an administrative or civil action, N.J.S.A. 49:3-70.1.

You are further advised that the entry of the relief requested does not preclude the Bureau Chief from seeking and obtaining other enforcement remedies against you in connection with the claims made against you in this action.



**STATE OF OKLAHOMA
DEPARTMENT OF SECURITIES
204 NORTH ROBINSON, SUITE 400
OKLAHOMA CITY, OKLAHOMA 73102**

In the Matter of:

Voyager Digital Ltd. and
Voyager Digital Holdings, Inc.,

           Respondents.                     ODS File No. 22-038

<u>ORDER TO CEASE AND DESIST</u>
<u>AND NOTICE OF OPPURTUNITY FOR HEARING</u>

Pursuant to Section 1-602 of the Oklahoma Uniform Securities Act of 2004 ("**Act**"), Okla. Stat. Ann. tit. 71, §§ 1-101 – 1-701 (West 2021), the Enforcement Division of the Oklahoma Department of Securities ("**Department**") investigated Voyager Digital Ltd. and/or Voyager Digital Holdings, Inc., (collectively, "**Voyager**" or the "**Respondents**") to determine whether they have violated, are violating, or are about to violate the Act.

Based thereon, the following Findings of Fact, Authorities, and Conclusions of Law are presented in support of the issuance of this *Order to Cease and Desist* ("**Order**") against the Respondents pursuant to Section 1-604 of the Act.

**Findings of Fact**

1.     Voyager Digital Ltd. is a Canadian entity incorporated in June 1993, with a registered office located in Vancouver, British Columbia.  Voyager Digital Ltd.'s headquarters is located in New York, New York, and is a reporting issuer in each of the provinces and territories of Canada.  Voyager Digital Ltd. is the parent company of Voyager Digital Holdings, Inc.  Voyager Digital Ltd. is not registered under the Act in any capacity.

2.     Voyager Digital Holdings, Inc., is a Delaware entity incorporated in December 2018, with a registered agent located in Wilmington, Delaware.  Voyager Digital Holdings, Inc., is not registered under the Act in any capacity.

3.     Voyager operates as a "crypto asset brokerage" platform offering self-directed trade execution, market data, wallet, and custody services to both retail and institutional customers.

4.      Voyager offers accounts that allow account holders access to custody, trading, data and referral features along with a rewards program (the "**Accounts**").

5.      Account holder agreements authorize Voyager, without further notice to the holder, to maintain each customer's digital assets in Voyager's name, or in another name, and to commingle Account holders' deposits to pledge, repledge, hypothecate, rehypothecate, sell, lend, invest or otherwise transfer or use any amount of such digital assets, with all attendant rights of ownership, and such use or investment by Voyager is at the Account holder's sole risk.

6.      The Accounts' rewards program (the "**Rewards Program**") pays Account holders digital assets for maintaining a monthly minimum balance of certain digital assets of the same type in their Accounts.  In fiscal year 2021, Reward Program participants earned digital assets valued at approximately $46,600,000.

7.      By participating in the Rewards Program, Account holders allow Voyager to utilize their digital assets to loan to institutional borrowers and such loans may not be secured or require the borrower to post collateral – all at Voyager's sole discretion. Voyager, also at its sole discretion, determines the rates of return and rate tiers, if any, for each month.

8.      Voyager promises to pay the reward assets to Account holders on a monthly basis and considers such rewards an operating expense.

9.      Voyager's operating revenue is primarily derived from fees charged for digital asset trading as well as revenue from loans made to its institutional borrowers.

10.     Trading is executed via Voyager's proprietary order routing technology that seeks favorable execution prices for its customers.  Voyager generates trading revenue by taking a fraction of the difference between the execution price and the price quoted to the customer.  Voyager, in the 2021 fiscal year, generated approximately $154,000,000 in revenue via trading or approximately 88% of Voyager's overall revenue.

11.     Voyager loans digital assets to financial institutions in exchange for in-kind interest income paid by the borrower.  Voyager, in the 2021 fiscal year, generated approximately $21,000,000 in loan revenue or approximately 12% of Voyager's overall revenue.

12.     Voyager represents that success or failure of a particular Account is "based predominantly on the choices and actions of the individual [Account holder]." However, Voyager solely controls the manner in which it provides trading and loan services and chooses what digital assets are eligible for the Rewards Program along with the rate of return an Account holder will receive.  Further, Voyager:

a. uses its authority to choose and enter into lending agreements with institutional borrowers. Approximately 15-30% of customer assets are held by institutional borrowers;

b. chooses a third-party, Fireblocks, to manage its crypto assets held internally and as a "settlement layer to transact and settle with pre-approved counterparties or entities." Approximately 30-50% of customer assets are either custodied through Fireblocks or held in storage with Anchorage Digital Bank N.A.;

c. chooses Anchorage Digital Bank N.A. to custody customer crypto assets;

d. chooses several other crypto trading platforms to connect to and maintain crypto asset balances in order to ensure liquidity for trade execution. Approximately 20-50% of customer assets are held in Voyager-owned accounts on these crypto trading platforms;

e. chooses *not* to insure its customers' assets;

f. implements a due diligence program for all trading partners including assessing their security, reputation, liquidity levels in applicable crypto assets, capitalization, management, internal control practices and operational risks before utilizing any trading partner;

g. monitors each trading partner to ensure compliance with required legal and regulatory standards;

h. is largely dependent on the performance of its management, key employees and directors to successfully carry out Voyager's business operations. Voyager, its management, key employees and directors possess the specialized skills and knowledge necessary to ensure the success of its business and operations. Voyager does not maintain any "key man insurance" for any of its current executives. Account holders have no role in the management of Voyager;

i. conducts internal due diligence reviews to determine likely regulatory treatment of digital assets. These reviews may include industry, technological and legal reviews and an audit committee with ongoing monitoring;

3

j.  recognizes its "compliance and risk management programs may not be effective and may result in outcomes that could materially and adversely affect [Voyager's] reputation, financial condition and operating results";

k.  discloses that its operational risks could "cause material reputational and financial harm" to Voyager;

l.  recognizes that crypto trading platforms, in part, are largely unregulated and may therefore be more exposed to fraud and failure;

m.  acknowledges that Voyager's investment strategy may rely heavily on the use of proprietary and non-proprietary software, data and intellectual property that may expose it to substantial risk;

n.  discloses the risk of any strategic investments made by Voyager may not generate positive returns and it "may lose the entirety of such investments"; and

o.  incurs a potentially significant liquidity risk if the aggregate withdrawals by customers exceed the "quantum of uncommitted cryptocurrency available...to satisfy the withdrawal requests."

13.    Oklahoma residents participating in the Rewards Program must primarily rely on the Respondents' efforts described, in part, in Item No. 11 above, in order to receive the promised return payments of digital assets.

14.    As of February 2022, Voyager had approximately 15,538 Oklahoma resident Accounts participating in the Rewards Program with over $44,000,000 in deposits.

To the extent any of these Findings of Fact are more properly characterized as Conclusions of Law, they should be so considered.

## Authorities

1.    Section 1-301 of the Act states, in pertinent part:

It is unlawful for a person to offer or sell a security in [Oklahoma] unless:

1.  The security is a federal covered security;

2. The security, transaction, or offer is exempted from registration under [Sections 1-201 through 1-203 of the Act]; or

3. The security is registered under [the Act].

2.    Section 1-604 of the Act states, in pertinent part:

A. If the Administrator determines that a person has engaged, is engaging, or is about to engage in an act, practice, or course of business constituting a violation of this act or a rule adopted or order issued under this act…the Administrator may:

1. Issue an order directing the person to cease and desist from engaging in the act, practice, or course of business or to take other action necessary or appropriate to comply with this act[.]

\* \* \* \*

B. An order under subsection A of this section is effective on the date of issuance. Upon issuance of the order, the Administrator shall promptly serve each person subject to the order with a copy of the order and a notice that the order has been entered. The order must include a statement whether the Administrator will seek a civil penalty or costs of the investigation, a statement of the reasons for the order, and notice that, within fifteen (15) days after receipt of a request in a record from the person, the matter will be scheduled for a hearing and the hearing shall be commenced within fifteen (15) days of the matter being set for hearing. If a person subject to the order does not request a hearing and none is ordered by the Administrator, within thirty (30) days after the date of service of the order, the order, that may include a civil penalty or costs of the investigation if a civil penalty or costs were sought in the statement accompanying the order, becomes final as to that person by operation of law. If a hearing is requested or ordered, the Administrator, after notice of and opportunity for hearing to each person subject to the order, may modify or vacate the order or extend it until final determination.

## Conclusions of Law

1.    The Accounts are securities, in the nature of an investment contract, as defined in Section 1-102(32) of the Act.

2.    The Accounts have not been registered under Section 1-301 of the Act.

3.      The Administrator is authorized, pursuant to Section 1-604 of the Act, to issue this Order.

4.      It is in the public interest for the Administrator to issue this Order.

To the extent any of these Conclusions of Law are more properly characterized as Findings of Fact, they should be so considered.

## ORDER

**IT IS HEREBY ORDERED** that Voyager Digital Ltd. and Voyager Holdings, Inc., and any of their subsidiaries, immediately cease and desist from offering or selling Accounts to Oklahoma residents that allow participation in the Rewards Program and cease and desist from allowing further deposits into the Rewards Program in already existing Accounts of Oklahoma residents.

Witness my Hand and the Official Seal of the Oklahoma Department of Securities this 29th day of March, 2022.

(SEAL)

_____
MELANIE HALL, ADMINISTRATOR OF THE
OKLAHOMA DEPARTMENT OF SECURITIES

## NOTICE OF OPPORTUNITY FOR HEARING

Pursuant to Section 1-604 of the Act, the Administrator hereby gives notice to the Respondents of their right to request a hearing on this Order. The request for hearing must be received by the Administrator **within thirty (30) days** after service of this Order. The request for hearing must be in writing and the Respondents shall specifically admit or deny each allegation that is contained in the Order.

Within fifteen (15) days after receipt of a request for hearing from the Respondents, this matter will be scheduled for hearing. The hearing shall commence within fifteen (15) days of the matter being set for hearing. Notice of the date, time and location of the hearing shall be given to the Respondents. If a hearing is requested, the Administrator, after notice and opportunity for hearing to the Respondents, may modify or vacate this Order or extend it until final determination.

If Respondents do not request a hearing within thirty (30) days after the date of service of this Order and none is ordered by the Administrator, ***this Order becomes final by operation of law.***

6

Witness my Hand and the Official Seal of the Oklahoma Department of Securities this 29th day of March, 2022.

(SEAL)

_____
MELANIE HALL, ADMINISTRATOR OF THE
OKLAHOMA DEPARTMENT OF SECURITIES

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 29th day of March, 2022, a true and correct copy of the above and foregoing *Order to Cease and Desist and Notice of Opportunity for Hearing* was mailed by electronic and certified mail, return receipt requested, delivery restricted, with postage prepaid thereon, addressed to:

Voyager Digital Ltd.
Voyager Digital Holdings, Inc.
c/o Nick Morgan, Esq.
Paul Hastings LLP
515 South Flower Street, 26th Floor
Los Angeles, CA 90071

nicolasmorgan@paulhastings.com


Brenda London
Paralegal

**ADMINISTRATIVE PROCEEDING**
**BEFORE THE**
**SECURITIES COMMISSIONER OF SOUTH CAROLINA**

| | |
|---|---|
| IN THE MATTER OF:         ) | |
| ) | |
| **Voyager Digital, Ltd.,** ) | **ORDER TO CEASE AND DESIST** |
| **Voyager Digital Holdings, Inc., and** ) | **Matter No. 20221067** |
| **Voyager Digital, LLC,** ) | |
| ) | |
| Respondents.   ) | |
| _____ ) | |

## I.     PRELIMINARY STATEMENT

Pursuant to the authority granted to the Securities Commissioner of South Carolina (the "Securities Commissioner") under the South Carolina Uniform Securities Act of 2005, S.C. Code Ann. § 35-1-101, *et seq.*, and the regulations and rules promulgated thereunder (the "Act"), and delegated to the Securities Division of the Office of the Attorney General of the State of South Carolina (the "Division") by the Securities Commissioner, the Division conducted an investigation into the securities-related activities of Voyager Digital, Ltd. (the "Parent Company"), Voyager Digital Holdings, Inc. (the "Holding Company"), and Voyager Digital, LLC (the "Subsidiary") (collectively, "Voyager" or the "Respondents").  In connection with its investigation, the Division has determined that evidence exists to support the Finding of Facts and Conclusions of Law set forth below, and the issuance of this Order to Cease and Desist.

## II.     JURISDICTION

1.     The Securities Commissioner has jurisdiction over this matter pursuant to S.C. Code Ann. § 35-1-601(a).

### III.    RESPONDENTS

2.      The Parent Company was incorporated on June 25, 1993, pursuant to the British Columbia Business Corporations Act under the entity name 392838 B.C., Ltd.  Thereafter, the Parent Company changed its name to UC Resources, Ltd. on October 31, 2001; to Voyager Digital (Canada), Ltd. on February 6, 2019; and to Voyager Digital, Ltd. on July 16, 2020.  The Parent Company's registered office is located at 595 Burrard Street, Suite 2900, Vancouver, BC, V7X 1J5, Canada.  The Parent Company's headquarters is located at 33 Irving Place, 3rd Floor, New York, New York 10003.

3.      The Holding Company is a Delaware corporation incorporated on January 12, 2018. It is a wholly owned subsidiary of the Parent Company.  The Holding Company, formerly known as CryptoTrading Technologies, Inc. and then CryptoTrading Holdings, Inc., serves as the holding company for the Parent Company's subsidiaries formed and operating in the United States, including the Subsidiary.

4.      The Subsidiary is a Delaware Limited Liability Company formed on January 23, 2018.  It is a wholly owned subsidiary of the Holding Company.  The Subsidiary effected a foreign entity filing in South Carolina on April 15, 2021.

5.      The Respondents are not presently registered, and they have never been registered, in any capacity, with the Division.

### IV.    FINDING OF FACTS

#### A.  VOYAGER'S BUSINESS OPERATIONS

6.      Voyager operates as a cryptocurrency and other digital asset broker that provides retail and institutional customers with access to its digital platform to buy and sell cryptocurrency

and other digital assets (the "Voyager Platform"), and Voyager offers trade execution, market data, digital wallet, and custody services.

7.      The Subsidiary provides Voyager's user-facing products and services for its customers in the United States.

8.      Voyager conducts its business on the internet through a website accessible to the general public at https://www.investvoyager.com (the "Voyager Website"), which is also accessible through Voyager's own proprietary application via smartphone.

9.      Voyager generates revenue through cryptocurrency and digital asset trading, proprietary trading, staking, borrowing, and lending, as well as merchant services.

10.     According to the Voyager Website, Voyager offers accounts to its customers (collectively, the "Voyager Accounts" and individually, a "Voyager Account") with the following features:

> a.      Custody Feature – provides customers the ability to custody their digital assets on the Voyager Platform;
>
> b.      Trading Feature – provides customers the ability to trade "spot transactions" between fiat and digital assets through the Voyager Platform;
>
> c.      Data Feature – provides customers access to a news feed containing cryptocurrency market news and headlines, as well as cryptocurrency performance, tracking, and charting tools;
>
> d.      Referral Feature – provides customers the ability to earn $25 worth of Bitcoin for each individual customer referred to Voyager who successfully opens and funds a Voyager Account with a minimum of $100; and

e.      Rewards Program – operates as a payment-in-kind program whereby customers earn digital assets for maintaining a monthly minimum balance of certain digital assets of the same type in their Voyager Account.

11.     The Voyager Accounts are subject to certain terms and conditions as set forth in a Customer Agreement (the "Customer Agreement").

## B.  THE VOYAGER EARN PROGRAM ACCOUNTS

12.     On October 23, 2019, Voyager launched the aforementioned rewards program, initially referred to as the "Voyager Interest Program," then the "Voyager Rewards Program," and now the "Voyager Earn Program" (collectively, the "Voyager Earn Program Accounts"), as a feature of all Voyager Accounts, unless the account holder opted out.  As the name suggests and as detailed below, the Voyager Earn Program Accounts offered Voyager customers "Rewards" in the form of interest rate incentives for maintaining a certain balance in their Voyager Account.

13.     Since, October 23, 2019, the Voyager Earn Program Accounts have been, at least in part, funding Voyager's income generating activities, including lending operations and proprietary trading, through the offer and sale of unregistered securities in the form of cryptocurrency interest-earning accounts.

14.     Voyager offers its Voyager Earn Program Accounts to all U.S. residents, including South Carolinians, over the age of eighteen, except residents of the State of New York, through Voyager's Website and its smartphone application.

15.     Voyager offers and sells its Voyager Earn Program Accounts by soliciting investors to open a Voyager Account by depositing U.S. dollars, eligible cryptocurrencies, or other digital assets into their Voyager Accounts to invest in the Voyager Earn Program Accounts (collectively, the "Earn Program Investors" and individually, an "Earn Program Investor").

16.     Voyager only accepts certain types of cryptocurrencies for deposit in the Voyager Earn Program Accounts.

17.     The Voyager Website states that Voyager requires the Earn Program Investors to maintain a specified minimum average monthly cryptocurrency balance for an Earn Program Investor to earn interest on the Voyager Earn Program Account balances.  Specific minimum balances for particular types of cryptocurrency are listed on the Voyager Website.

18.     For the Earn Program Investors who deposit certain eligible cryptocurrencies in the Voyager Earn Program Accounts, Voyager offers to pay lucrative interest rates denominated in the same type of cryptocurrency or digital asset originally invested.  Voyager promotes the interest rates through the Voyager Website, which recently advertised an annual return of "up to 12% Rewards" on certain cryptocurrencies or digital assets for retail investors.

19.     The Voyager Earn Program Account "Rewards" rates Voyager advertises are well in excess of the interest rates currently offered for short-term, investment grade, fixed income securities or for bank savings accounts.

20.     Although Voyager refers to its payments to the Earn Program Investors as "Rewards," the term "Rewards" is simply a substitute for interest.

21.     The Earn Program Investors earn a variable interest rate on their investment and may withdraw their digital assets at any time, subject to certain restrictions, including discretionary decisions by Voyager to "delay, modify or prohibit, in whole or in part, any requested Withdrawal," and withdrawals within sixty days of a cryptocurrency or cash deposit.

22.     The Customer Agreement describes the interest calculation and payment methodology:

> 10. Rewards Program.  By entering into this Customer Agreement,
> and subject to clause (F) of this Section 10, Customer understands,

acknowledges and agrees that Customer is opting into the Voyager Earn Program (the "Rewards Program"). The Rewards Program allows Customer to earn additional Cryptocurrency of the same kind of Cryptocurrency held in Customer's Account (the "Rewards"). The terms and conditions governing the Rewards Program are as follows:

(B) <u>How Rewards Are Calculated</u>. Rewards earned on Cryptocurrency are variable. Voyager will typically publish anticipated rewards rates once per month on or before the first business day of each month. Reward rates may be tiered, with specified rates in effect at any time only applied to specified portions of amounts of Cryptocurrency held in the Account. Rewards will be payable in arrears and added to the Account on or before the fifth business day of each calendar month for the prior calendar month. Voyager uses the daily balance method to calculate the Rewards on the Account. This method applies a daily periodic rate to the specified principal in the Account each day. The daily periodic rate is calculated by dividing the applicable interest rate by three hundred sixty-five (365) days, even in leap years. Voyager will determine the Reward rates and tiers for each month in Voyager's sole discretion, and Customer acknowledges that such Rewards may not be equivalent to benchmark interest rates observed in the market for bank deposit accounts.

23.     Voyager sets the interest rates it pays on eligible cryptocurrencies and digital assets in advance, on a periodic basis, and at its sole discretion.

24.     The accrual of interest is calculated using a daily periodic rate applied to the principal in a Voyager Earn Program Account and interest is paid the month after it accrues. Interest is payable on or before the fifth business day of each calendar month for the interest accrued the prior month.

25.     The current monthly interest rates for the Earn Program Investors are posted on the Voyager Website. Voyager's interest rates for deposits of certain cryptocurrencies in the Voyager Earn Program Accounts may be "tiered" with specified rates in effect at any time only applied to specified portions of cryptocurrency held in the account. In March 2022, the annual interest rates

on eligible cryptocurrencies ranged from 12% for the "Polkadot" cryptocurrency to 0.5% for the "OMG" cryptocurrency.

26.     Voyager also pays interest for deposits of certain "stablecoins," which are cryptocurrencies pegged to an external measure of value such as the U.S. dollar, in the Voyager Earn Program Accounts.  For example, in March 2022, according to the Voyager Website, Voyager paid 9% annual interest on deposits of the "USDC" cryptocurrency with a minimum balance of 100 USDC.

27.     The Customer Agreement discloses the status of cryptocurrency deposited by Earn Program Investors in Paragraph 5.D. of the Customer Agreement, "Consent to Rehypothecate,":

> <u>Consent to Rehypothecate</u>.  Customer grants Voyager the right, subject to applicable law, without further notice to Customer, to hold Cryptocurrency held in Customer's Account in Voyager's name or in another name, and to pledge, repledge, hypothecate, rehypothecate, sell, lend, stake, arrange for staking, or otherwise transfer or use any amount of such Cryptocurrency, separately or together with other property, with all attendant rights of ownership, and for any period of time and without retaining a like amount of Cryptocurrency, and to use or invest such Cryptocurrency at Customer's sole risk.

28.     Furthermore, Paragraph 10.A. "Rewards Program – Overview" of the Customer Agreement provides:

> (A) <u>Overview</u>. Each Customer participating in the Rewards Program acknowledges and agrees that Voyager may rely on the consent to rehypothecate granted by each Customer pursuant to **Section 5(d) – Consent to Rehypothecate** with respect to Cryptocurrency held in such Customer Account.  Such consent to rehypothecate expressly includes allowing Voyager to (1) stake Cryptocurrency held in an omnibus fashion through various blockchain protocols (either by delegating Cryptocurrencies to the financial institutions which, in return, stake such Cryptocurrencies or using staking service providers to stake Cryptocurrencies); and (2) lend such Cryptocurrency to various institutional third parties (each, a "Borrower") determined at Voyager's sole discretion (each, a "Loan").  Voyager enters into these Loans as principal and

> independently negotiates with each Borrower the terms of a Loan, but these Loans are generally unsecured, for a fixed term of less than one year or can be repaid on a demand basis, and provide a fee payable in Cryptocurrency based on the percentage and denominated in the Cryptocurrency lent. Voyager selects which and how much Cryptocurrencies are available for such staking and lending.

(emphasis in the original).

29.    The Customer Agreement provides that the Earn Program Investor relinquishes control over their deposits and that Voyager takes legal and beneficial ownership of those deposits.

30.    Voyager then commingles and pools Earn Program Investors' deposits together to fund its various income generating activities, including investing, proprietary trading, staking, borrowing, or lending to various third parties, including custodians and other financial institutions.

31.    Having relinquished control over the deposits in their Voyager Earn Program Accounts, and in exchange for investing in the Voyager Earn Program Account, the Earn Program Investors are passive investors expecting attractive interest rates that are paid monthly in the same type of cryptocurrency or digital assets as originally deposited.

## C.    THE UNDISCLOSED RISKS

32.    Voyager fails to disclose material information necessary for the Earn Program Investors to make an informed decision, including critical material information about the risks associated with purchasing its unregistered securities.

33.    Voyager fails to disclose to Earn Program Investors the following material facts regarding the risks associated with its unregistered Voyager Earn Program Accounts, including:

   a.    The amount of money, cryptocurrency, or digital assets devoted to permissive uses;

   b.    The identity of any borrowers to whom Voyager has lent material amounts of money, cryptocurrency, or digital assets (the "Borrowers");

c.   The nature and creditworthiness of the Borrowers;

d.   The type and nature of transactions involving digital asset exchanges, digital asset staking, or proprietary trading;

e.   The risks associated with digital asset exchanges, individual digital assets, staking protocols, or proprietary traded assets; and

f.   The profits and/or losses derived from transactions effected by Voyager with Earn Program Investors' money.

**D.    THE LACK OF REGISTRATION AND PUBLIC PROTECTIONS**

34.    The Respondents are not licensed, registered, qualified, or notice filed with the United State Securities and Exchange Commission.

35.    The Voyager Earn Program Account is not registered with the Division or any other securities regulatory authority, nor is it exempt from registration.

36.    Voyager fails to disclose to Earn Program Investors that the Voyager Earn Program Account is not currently registered by federal or state securities regulatory authorities.

37.    The Respondents are not licensed as a Money Service Business in South Carolina to conduct currency exchange or money transmission activities.

38.    The deposits contained in the Voyager Earn Program Accounts are not protected by the Securities Investor Protection Corporation ("SIPC"), insured by the Federal Deposit Insurance Corporation ("FDIC"), or insured by the National Credit Union Administration ("NCUA").  This lack of a protective scheme or regulatory oversight subjects the Earn Program Investors to additional risks not borne by investors who maintain assets with most SIPC member broker-dealers, or with banks, savings associations, or credit unions.

**E.    SOUTH CAROLINA INVESTORS**

39.    As of March 1, 2022, Voyager had approximately $5,061,040,605.00 in assets under management, in approximately 1,530,867 Voyager Earn Program Accounts.

40.    As of March 1, 2022, Voyager had approximately $40,553,832.12 in assets under management, in approximately 21,498 Voyager Earn Program Accounts held by South Carolina residents.

## V.    <u>CONCLUSIONS OF LAW</u>

41.    Paragraphs 1 through 40 are incorporated by reference as though fully set forth herein.

42.    The Voyager Earn Program Account is a security as defined in S.C. Code Ann. § 35-1-102(29).

43.    The Voyager Earn Program Account was and is required to be registered with the Division pursuant to S.C. Code Ann. § 35-1-301.

44.    The Voyager Earn Program Account has not been registered with the Division, is not exempt from registration, and is not a federally covered security.

45.    Voyager offered and sold unregistered securities in violation of S.C. Code Ann. § 35-1-301 and continues to do so.

46.    Each violation of S.C. Code Ann. § 35-1-301 is a separate violation of the Act.

47.    The Respondents' violations of the Act set forth above provide the basis for this Order, pursuant to S.C. Code Ann. §§ 35-1-604.

48.    This Order is appropriate and in the public interest, pursuant to the Act.

## VI.    ORDER

**NOW THEREFORE**, pursuant to S.C. Code Ann. § 35-1-604, it is hereby **ORDERED**

that:

A.  Each Respondent and every successor, affiliate, control person, agent, servant, and

employee of each of the Respondents, and every entity owned, operated, or indirectly

or directly controlled by or on behalf of each of the Respondents shall **CEASE AND**

**DESIST** from transacting business in this State in violation of the Act;

B.  Nothing in this Order shall preclude Voyager from paying interest, also known as

"Rewards," on existing Voyager Earn Program Accounts or refunding principal to the

Earn Program Investors consistent with the Voyager Customer Agreement;

C.  The Respondents shall jointly and severally pay a civil penalty in the amount of two

million one hundred forty-nine thousand eight hundred dollars ($2,149,800.00) if this

Order becomes effective by operation of law, or, if a Respondent seeks a hearing and

any legal authority resolves this matter, pay a civil penalty in an amount not to exceed

$10,000.00 for each violation of the Act by the Respondent(s).

## VII.    NOTICE OF OPPORTUNITY FOR HEARING

Each of the Respondents is hereby notified that she/he/it has the right to a formal hearing

on the matters contained herein.  To schedule a hearing, a Respondent must file with the Division

within thirty (30) days after the date of service of this Order, a written Answer specifically

requesting a hearing.  If any Respondent requests a hearing, the Division, within fifteen (15) days

after receipt of a written request, will schedule a hearing for that Respondent.  The written request

shall be delivered to the Office of the Attorney General, 1000 Assembly Street, Columbia, South

Carolina 29201, or mailed to the Office of the Attorney General, Attention:  Securities Division, P.O. Box 11549, Columbia, South Carolina 29211-1549.

In the written Answer, a Respondent, in addition to requesting a hearing, shall admit or deny each factual allegation in this Order, shall set forth specific facts on which the Respondent relies, and shall set forth concisely the matters of law and affirmative defenses upon which the Respondent relies.  If the Respondent is without knowledge or information sufficient to form a belief as to the truth of an allegation, the Respondent shall so state.

Failure by a Respondent to file a written request for a hearing in this matter within the thirty-day (30) period stated above shall be deemed a waiver by that Respondent of the right to such a hearing.  Failure by a Respondent to file an Answer, including a request for a hearing, shall result in this Order's becoming final by operation of law.  The regulations governing the hearing process can be found at S.C. Code of Regulations § 13-604.

This Order does not prevent the Division or any law enforcement agency from seeking additional civil or criminal remedies as are available under the Act, including remedies related to the offers and sales of securities by the Respondents set forth above.

**ENTERED**, this the ⎯6⎯ day of ⎯April⎯, 2022.

ALAN WILSON
SECURITIES COMMISSIONER

By: ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
JONATHAN B. WILLIAMS
Assistant Deputy Attorney General

TRAVIS J. ILES
SECURITIES COMMISSIONER

CLINTON EDGAR
DEPUTY SECURITIES COMMISSIONER

Mail: P.O. BOX 13167
AUSTIN, TEXAS 78711-3167

Phone: (512) 305-8300
Facsimile: (512) 305-8310



### Texas State Securities Board

208 E. 10th Street, 5th Floor
Austin, Texas 78701-2407
www.ssb.texas.gov

E. WALLY KINNEY
CHAIR

KENNY KONCABA
MEMBER

ROBERT BELT
MEMBER

MELISSA TYROCH
MEMBER

EJIKE E OKPA II
MEMBER

FILED
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
4/12/2022 3:43 PM
STATE OFFICE OF
ADMINISTRATIVE HEARINGS
Jessie Harbin, CLERK

ACCEPTED
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
4/12/2022 3:50 PM
STATE OFFICE OF
ADMINISTRATIVE HEARINGS
Jessie Harbin, CLERK

## SOAH DOCKET NO. 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

| | | |
|---|---|---|
| TEXAS STATE SECURITIES BOARD, | § | BEFORE THE STATE OFFICE |
| Petitioner | § | |
| | § | |
| v. | § | |
| | § | OF |
| VOYAGER DIGITAL LTD.; VOYAGER | § | |
| DIGITAL HOLDINGS, INC.; AND | § | |
| VOYAGER DIGITAL LLC | § | |
| Respondents | § | ADMINISTRATIVE HEARINGS |

## VOYAGER DIGITAL LTD.

Service by (1) certified mail, return receipt requested, addressed to 33 Irving Plaza, Ste 3060, New York, New York 10003; (2) certified mail, return receipt requested, addressed to 333 Bay Street, Ste 2400, Toronto, Ontario M5H 2R2; (3) certified mail, return receipt requested, addressed to 27 Hannahs Road, Stamford, Connecticut 06903; (4) certified mail, return receipt requested, addressed to 185 Hudson Street, Ste 2500, Jersey City, New Jersey 07311; (5) certified mail, return receipt requested, addressed to its registered agent for service c/o Corporation Service Company, 211 East 7th Street, Ste 620, Austin, TX 78701; (6) certified mail, return receipt requested, addressed to its counsel Nicolas Morgan, Partner, Paul Hastings LLP, 515 South Flower Street, 25th Floor, Los Angeles, CA 90071; (7) electronic mail at legal@investvoyager.com; and (8) electronic mail to its counsel, Nicolas Morgan, at nicolasmorgan@paulhastings.com.

## VOYAGER DIGITAL HOLDINGS, INC.

Service by (1) certified mail, return receipt requested, addressed to 33 Irving Plaza, Ste 3060, New York, New York 10003; (2) certified mail, return receipt requested, addressed to 333 Bay Street, Ste 2400, Toronto, Ontario M5H 2R2; (3) certified mail, return receipt requested, addressed to 27 Hannahs Road, Stamford, Connecticut 06903; (4) certified mail, return receipt requested, addressed to 185 Hudson Street, Ste 2500, Jersey City, New Jersey 07311; (5) certified mail, return receipt requested, addressed to its registered agent for service c/o Corporation Service Company, 211 East 7th Street, Ste 620, Austin, TX 78701; (6) certified mail, return receipt requested, addressed to its counsel Nicolas Morgan, Partner, Paul Hastings LLP, 515 South Flower Street, 25th Floor, Los Angeles,

CA 90071; (7) electronic mail at legal@investvoyager.com; and (8) electronic mail to its counsel, Nicolas Morgan, at nicolasmorgan@paulhastings.com.

**VOYAGER DIGITAL, LLC**

Service by (1) certified mail, return receipt requested, addressed to 33 Irving Plaza, Ste 3060, New York, New York 10003; (2) certified mail, return receipt requested, addressed to 333 Bay Street, Ste 2400, Toronto, Ontario M5H 2R2; (3) certified mail, return receipt requested, addressed to 27 Hannahs Road, Stamford, Connecticut 06903; (4) certified mail, return receipt requested, addressed to 185 Hudson Street, Ste 2500, Jersey City, New Jersey 07311; (5) certified mail, return receipt requested, addressed to its registered agent for service c/o Corporation Service Company, 211 East 7th Street, Ste 620, Austin, TX 78701; (6) certified mail, return receipt requested, addressed to its counsel Nicolas Morgan, Partner, Paul Hastings LLP, 515 South Flower Street, 25th Floor, Los Angeles, CA 90071; (7) electronic mail at legal@investvoyager.com; and (8) electronic mail to its counsel, Nicolas Morgan, at nicolasmorgan@paulhastings.com.

## NOTICE OF HEARING

This is your OFFICIAL NOTICE that a hearing will commence at **9:00 AM on SEPTEMBER 7, 2022,** before an Administrative Law Judge. The hearing is being held via videoconference for the purpose of determining whether to issue a proposal for decision for the entry of a CEASE AND DESIST ORDER and CEASE PUBLICATION ORDER against Voyager Digital Ltd., Voyager Digital Holdings, Inc., and Voyager Digital, LLC (herein collectively referred to as "Voyager" or as "Respondents").

This hearing will be held pursuant to the Securities Act, Tex. Gov't Code §§ 4001.001-4008.105 (the "Securities Act"), the Rules and Regulations of the State Securities Board, 7 Tex. Admin. Code §§101.1-139.27 (2019) (Tex. State Sec. Bd.) (the "Board Rules"), the Administrative Procedure Act, Tex. Gov't Code Ann. §§2001.001-2001.902 (the "Administrative Procedure Act"), and the Rules of Practice and Procedure of the State Office of Administrative Hearings, 1 Tex. Admin. Code Chapter 155 (2019) (State Ofc. of Admin. Hearings) (the "SOAH Rules").

## THE PARTIES

1. Voyager Digital Ltd. is incorporated in British Columbia, Canada, and its shares trade on the Toronto Stock Exchange under the symbol VOYG. Voyager Digital Ltd. is also the parent company for certain subsidiaries, including Voyager Digital Holdings, Inc.

2. Voyager Digital Ltd. owns Voyager Digital Holdings, Inc., a Delaware company, and Voyager Digital Holdings, Inc., owns Voyager Digital LLC.

3. Voyager Digital, LLC is incorporated in Delaware and is providing Voyager's user-facing products and services for customers in the United States.

OVERVIEW

4.      Respondents are illegally offering and selling unregistered securities in the form of investments in interest-earning digital asset accounts referred to as Voyager's "Interest Program" or "Rewards Program" or "Earn Program" ("Voyager Interest Accounts").

5.      As of March 1, 2022, Voyager had more than $5 billion in assets under management in more than 1.5 million Voyager Interest Accounts, including more than $500 million held in more than 170,000 Voyager Interest Accounts belonging to Texans.

THE VOYAGER INTEREST ACCOUNTS

6.      Texans may purchase investments in Voyager Interest Accounts through Voyager's website or smartphone application.

7.      They open accounts by transferring certain fiat currency, cryptocurrency, or other digital assets to Voyager.

8.      They thereafter use their principal to buy and trade more than 90 defi coins, stablecoins, altcoins, and other digital assets. Voyager represents its trades are "commission-free."

9.      They then earn interest on their purchase of certain digital assets. Voyager sets the interest rates it pays on these digital assets.

10.     The annual interest rates are lucrative – as high as 12 percent – and generally in excess of annual interest rates currently being offered for short-term, investment grade, or fixed-income securities, or for bank savings accounts.

11.     Voyager pays an even higher rate of interest, referred to as a "boost," to investors purchasing certain amounts of VGX, Voyager's native digital token.

12.     The accrual of interest is calculated using a daily periodic rate applied to the principal in a Voyager Interest Account. Voyager pays the interest the month after it accrues in the same type of cryptocurrency or digital asset originally invested.

13.     Investors may withdraw their funds at any time, subject to certain processing times, minimum deposit term, and minimum balance requirements. Voyager, in its sole discretion, may delay, modify, or prohibit any requested withdrawal.

## USE OF PRINCIPAL

14.    After investors provide principal to Voyager, their principal is comingled in omnibus accounts, they relinquish control of their principal and Voyager takes legal and beneficial ownership of the principal.

15.    Voyager is thereafter able to use principal consistent with the terms of use, and as such it may transfer principal to foreign jurisdictions, lend principal, pledge principal, sell principal, rehypothecate principal, transfer principal to unidentified third parties and engage in any other transaction at Voyager's discretion and the depositing investor's sole risk.

16.    Voyager earns revenue through the aforementioned transactions. However, in 2021, around 88 percent of Voyager's revenue was generated by providing investors price quotes for digital assets and then executing the transaction on an exchange for a different amount and keeping the difference between the two prices as its fee or by charging a fee to investors who withdraw digital assets.

## MISLEADING STATEMENTS ABOUT COMPLIANCE AND REGULATION

17.    Voyager claims it is a "fully compliant and licensed crypto broker" and touts its status as a public company, its listing on the Toronto Stock Exchange, and the "trust and transparency" resulting from its being a public company in Canada. These statements are materially misleading or otherwise likely to deceive the public because:

A.    Respondents are not licensed as money service businesses in Texas to conduct currency exchange or money transmission activities defined by Chapter 151 of the Texas Finance Code;

B.    Respondents are not registered with the Commodity Futures Trading Commission or the National Futures Association;

C.    Respondents are not licensed, registered, or qualified, nor are their securities notice filed, with the United States Securities and Exchange Commission;

D.    Respondents are not registered with the Texas State Securities Board to offer or sell securities in Texas, as required by Section 4004.051 of the Securities Act, and the Voyager Interest Accounts are not registered or permitted for sale in Texas, as required by Section 4003.001 of the Securities Act;

E.    The Voyager Interest Accounts are not protected by the Securities Investor Protection Corporation, otherwise known as the SIPC, a federally mandated, non-profit, member-funded United States corporation created

under the Securities Investor Protection Act of 1970 that mandates membership of most US-registered broker-dealers;

F.    The Voyager Interest Accounts are not insured by the Federal Deposit Insurance Corporation, otherwise known as the FDIC, an agency that provides deposit insurance to depositors in the United States, or the National Credit Union Administration, otherwise known as the NCUA, an agency that regulates and insures credit unions;

G.    Although Voyager's stock is listed on the Toronto Stock Exchange, the Voyager Interest Accounts are not registered, qualified, or permitted in Canada and Voyager represents Canadian investors cannot invest in the Voyager Interest Accounts;

H.    The Canadian laws that apply to Voyager's securities listed on the Toronto Stock Exchange do not provide the same regulation or protection as domestic laws that apply to Voyager Interest Accounts Voyager sells exclusively to United States residents; and

I.    Voyager is not disclosing material risks relevant to these statements, material information including the amount of principal used to fund subsequent transactions, the identity, nature, and creditworthiness of borrowers, the type, nature, and counterparties for transactions involving digital asset exchanges, digital assets, staking, arranging for staking, or proprietary trading, the risks associated with digital asset exchanges, individual digital assets, staking protocols, or proprietarily traded assets, and the profits and/or losses derived from transactions.

## THE NOTIFICATION AND REQUEST FOR COMPLIANCE

18.    On or about May 14, 2021, the Enforcement Division of the State Securities Board (the "Enforcement Division") notified Respondents that Respondents may have offered securities in Texas that may not comply with the Securities Act.

19.    The Enforcement Division also explained the regulation of the securities market in Texas, including the identification of laws that require the registration of securities, the registration of dealers and agents, and the truthful disclosure of all known material facts.

20.    Nevertheless, Respondents continued to offer the Voyager Interest Accounts to Texans in violation of Sections 4003.001 and 4004.051 of the Securities Act.

## THE VIOLATIONS OF THE SECURITIES ACT

21.    The Securities Act regulates the offer and sale of securities in Texas.

22.  The investments in the Voyager Interest Accounts are securities as that term is defined by Section 4001.068 of the Securities Act.

23.  Respondents are violating Section 4003.001 of the Securities Act by offering and selling securities in Texas that are not registered or permitted for sale in Texas.

24.  Respondents are violating Section 4004.051 of the Securities Act by offering and selling securities in Texas without first being registered as dealers or agents.

25.  Respondents are offering securities and their offers contain statements that are materially misleading or otherwise likely to deceive the public as described in Section 4007.103 of the Securities Act.

## PRAYER

26.  The Enforcement Division is praying for a proposal for decision for the entry of a cease and desist order that orders Respondents to immediately cease and desist from violating Sections 4003.001 and 4004.051 of the Securities Act and a cease publication order that orders Respondents to cease offering securities through an offer that contains a statement that is materially misleading or otherwise likely to deceive the public.

27.  Nothing set forth herein precludes the Enforcement Division, consistent with applicable law and rule, from pursuing other remedies such as filing an amended Notice of Hearing praying for a proposal for decision that orders the assessment of an administrative fine or the payment of a refund or restitution to Texans.

## EXISTING CLIENT ACCOUNTS

28.  This Notice of Hearing and the prayers contained herein do not preclude Respondents from paying interest or returns to existing clients, refunding principal to investors, or otherwise lawfully dealing with existing clientele.

## THE HEARING

29.  The hearing will be held before the State Office of Administrative Hearings. It will commence at **9:00 AM on SEPTEMBER 7, 2022**.

30.  The State Office of Administrative Hearings may conduct the hearing via Zoom. Zoom is a video conferencing platform for meetings held through the internet. The State Office of Administrative Hearings will provide instructions for accessing the hearing via Zoom.

31.  At the hearing, the Enforcement Division will present testimony and other admissible evidence in support of its prayer for a proposal for decision for the entry of a CEASE AND DESIST ORDER and CEASE PUBLICATION ORDER against

Respondents. Respondents will be afforded the right to present testimony and other evidence related thereto.

<u>LEGAL NOTIFICATIONS</u>

32.  Legal authority and jurisdiction for this matter exist under Section 4007.101 and 7007.103 of the Securities Act, Section 2003.021(b) of the Texas Government Code and Rule 155.51 of the SOAH Rules.

33.  **IF YOU DO NOT FILE A WRITTEN ANSWER OR OTHER WRITTEN RESPONSIVE PLEADING TO THIS NOTICE OF HEARING ON OR BEFORE THE 20TH DAY AFTER THE DATE ON WHICH THIS NOTICE WAS MAILED TO YOU OR PERSONALLY SERVED ON YOU, THE FACTUAL ALLEGATIONS IN THIS NOTICE COULD BE DEEMED ADMITTED, AND THE SECURITIES COMMISSIONER MAY DISPOSE OF THIS CASE WITHOUT A HEARING AND MAY GRANT THE RELIEF SOUGHT IN THIS NOTICE. THE RESPONSE MUST BE FILED IN AUSTIN, TEXAS, WITH THE SECURITIES COMMISSIONER AND THE STATE OFFICE OF ADMINISTRATIVE HEARINGS, AND ALSO SERVED ON THE STAFF OF THE STATE SECURITIES BOARD. IF YOU FAIL TO ATTEND THE HEARING, EVEN IF A WRITTEN ANSWER OR OTHER RESPONSIVE PLEADING HAS BEEN FILED AND SERVED, THE FACTUAL ALLEGATIONS IN THIS NOTICE COULD BE DEEMED ADMITTED, AND THE SECURITIES COMMISSIONER MAY DISPOSE OF THIS CASE WITHOUT A HEARING AND MAY GRANT THE RELIEF SOUGHT IN THIS NOTICE.**

34.  **PARTIES THAT ARE NOT REPRESENTED BY AN ATTORNEY MAY OBTAIN INFORMATION REGARDING CONTESTED CASE HEARINGS ON THE PUBLIC WEBSITE OF THE STATE OFFICE OF ADMINISTRATIVE HEARINGS AT WWW.SOAH.TEXAS.GOV, OR IN PRINTED FORMAT UPON REQUEST TO THE STATE OF ADMINISTRATIVE HEARINGS.**

35.  Respondents may access the Securities Act and the Board Rules through the website of the State Securities Board at www.ssb.texas.gov. Respondents may also access the SOAH Rules through the website of the State Office of Administrative Hearings at www.soah.texas.gov and the Administrative Procedure Act through Texas Legislature Online at statutes.capitol.texas.gov.

36.  The Securities Act authorizes the Texas State Securities Board to pursue administrative, civil, or criminal enforcement cases. The Securities Act and Board Rules also authorize the Texas State Securities Board to share information with and refer cases to other governmental agencies with administrative, civil, or criminal jurisdiction. These other governmental agencies include, without limitation, state and federal regulatory agencies, law enforcement agencies and prosecutors' offices. Therefore, any information provided, filed, or otherwise supplied by Respondents may be shared with these other government agencies and/or used in other cases. Whether the Texas State Securities Board makes its

files available to other governmental agencies or refers cases to other government agencies is typically confidential pursuant to Section 4007.056 of the Securities Act.

37.    Pursuant to Board Rule 105.13, the Enforcement Division is now respectfully requesting and will continue to respectfully request the State Office of Administrative Hearings order all costs charged to the Texas Securities Board by any court reporting service be assessed against Respondents.

38.    Persons with disabilities who need special accommodations at the hearing, whether held at the State Office of Administrative Hearings or through an audio or video conferencing platform, should contact the Docketing Department of the State Office of Administrative Hearings at 512-475-4993 at least one week prior to the hearing.

<u>CONTACT AND FILING INFORMATION</u>

39.    The Enforcement Division is represented by Rachel Anderson Rynders, Attorney, Enforcement Division, and Joe Rotunda, Director of Enforcement, Enforcement Division. Ms. Anderson Rynders' State Bar Card Number is 24103132, her work address 208 E. 10th Street, 5th Floor, Austin, Texas 78701, her telephone number is 512-305-8392, her facsimile number is 512-355-0404, and her email address is rrynders@ssb.texas.gov. Mr. Rotunda's State Bar Card Number is 20429808, his work address is 208 E. 10th Street, 5th Floor, Austin, Texas 78701, his telephone number is 512-305-8392, his facsimile number is 512-355-0404 and his email address is jrotunda@ssb.texas.gov.

40.    The Docketing Office of the State Office of Administrative Hearings is located at 300 W. 15th Street, Austin, Texas 78701, and it may be contacted by telephone at 512-745-3445 and by facsimile at 512-475-4994.

41.    The State Office of Administrative Hearings may conduct the hearing via audio or video conferencing. The audio and video conferencing platforms are secure, free meetings held telephonically or through the internet. The State Office of Administrative Hearings will provide instructions for all hearings held telephonically or through a video conferencing platform.

42.    Pursuant to Board Rule 105.8, all documents filed by any party, other than business records and transcripts, must be contemporaneously served upon Marlene Sparkman, General Counsel and Securities Commissioner's Representative. Ms. Sparkman's address is 208 E. 10th Street, 5th Floor, Austin, Texas 78701, her telephone number is 512-305-8300, her facsimile number is 512-305-8336, and her email address is msparkman@ssb.texas.gov.

Signed on this, the 12th day of April 2022

By: Joe Rotunda

Digitally signed by
Joe Rotunda
Date: 2022.04.12
14:21:24 -05'00'

Joe Rotunda
State Bar No. 24029808
Division Director, Enforcement Division
Texas State Securities Board
208 E. 10th Street, 5th Floor
Austin, Texas 78701
T: 512-305-8392
F: 512-355-0404
E: jrotunda@ssb.texas.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this, the 12th day of April 2022, true and correct copies of this Notice of Hearing are being served on the following parties through the means set forth below:

**MARLENE SPARKMAN**
General Counsel for the State Securities Board and the Securities Commissioner's Representative is being served by electronic mail addressed to msparkman@ssb.texas.gov.

**VOYAGER DIGITAL LTD.**
Service by (1) certified mail, return receipt requested, addressed to 33 Irving Plaza, Ste 3060, New York, New York 10003; (2) certified mail, return receipt requested, addressed to 333 Bay Street, Ste 2400, Toronto, Ontario M5H 2R2; (3) certified mail, return receipt requested, addressed to 27 Hannahs Road, Stamford, Connecticut 06903; (4) certified mail, return receipt requested, addressed to 185 Hudson Street, Ste 2500, Jersey City, New Jersey 07311; (5) certified mail, return receipt requested, addressed to its registered agent for service c/o Corporation Service Company, 211 East 7th Street, Ste 620, Austin, TX 78701; (6) certified mail, return receipt requested, addressed to its counsel Nicolas Morgan, Partner, Paul Hastings LLP, 515 South Flower Street, 25th Floor, Los Angeles, CA 90071; (7) electronic mail at legal@investvoyager.com; and (8) electronic mail to its counsel, Nicolas Morgan, at nicolasmorgan@paulhastings.com.

**VOYAGER DIGITAL HOLDINGS, INC.**
Service by (1) certified mail, return receipt requested, addressed to 33 Irving Plaza, Ste 3060, New York, New York 10003; (2) certified mail, return receipt requested, addressed to 333 Bay Street, Ste 2400, Toronto, Ontario M5H 2R2; (3) certified mail, return receipt requested, addressed to 27 Hannahs Road, Stamford, Connecticut 06903; (4) certified mail, return receipt requested, addressed to 185 Hudson Street, Ste 2500, Jersey City, New Jersey 07311; (5) certified mail, return receipt requested, addressed to its registered agent for service c/o Corporation Service Company, 211 East 7th Street, Ste 620, Austin, TX 78701; (6) certified mail, return receipt requested, addressed to its counsel Nicolas Morgan, Partner, Paul Hastings LLP, 515 South Flower Street, 25th Floor, Los Angeles, CA 90071; (7) electronic mail at legal@investvoyager.com; and (8) electronic mail to its counsel, Nicolas Morgan, at nicolasmorgan@paulhastings.com.

**VOYAGER DIGITAL LLC**
Service by (1) certified mail, return receipt requested, addressed to 33 Irving Plaza, Ste 3060, New York, New York 10003; (2) certified mail, return receipt requested, addressed to 333 Bay Street, Ste 2400, Toronto, Ontario M5H 2R2; (3) certified mail, return receipt requested, addressed to 27 Hannahs Road, Stamford, Connecticut 06903; (4) certified mail, return receipt requested, addressed to 185 Hudson Street, Ste 2500, Jersey City, New Jersey 07311; (5) certified mail, return receipt requested, addressed to its registered agent for service c/o Corporation Service Company, 211 East 7th Street, Ste 620, Austin, TX 78701; (6) certified mail, return receipt requested, addressed to its counsel Nicolas

**STATE OF VERMONT**
**DEPARTMENT OF FINANCIAL REGULATION**

IN RE:                                          )
VOYAGER DIGITAL LTD., VOYAGER                   )
DIGITAL HOLDINGS, INC., AND VOYAGER             )        **DOCKET NO. 22-004-S**
DIGITAL, LLC                                    )
                                                )
                                                )

## SHOW CAUSE ORDER

The Vermont Department of Financial Regulation (the "Department"), having the authority

to administer and provide for the enforcement of all provisions of 9 V.S.A. Chapter 150, the

Vermont Uniform Securities Act of 2002 (the "Securities Act"), upon due consideration of the

subject matter hereof, has determined as follows:

## JURISDICTION

1.      The Commissioner of Financial Regulation is responsible for administering and enforcing

   the securities laws of the State of Vermont and is authorized to investigate companies to

   determine compliance with Vermont law and issue orders imposing remedial actions and

   civil administrative penalties, pursuant to 9 V.S.A. §§ 5601-5605.

2.      Pursuant to 9 V.S.A. § 5604(a)(1), the Commissioner may issue orders or directives to any

   person to cease and desist from specific conduct if the Commissioner finds that the person

   has engaged, is engaging or is about to engage in an act, practice or course of business

   which constitutes a violation of the Securities Act.

3.      Pursuant to 9 V.S.A. § 5604(b) and Section 13 of Department Regulation 82-1 (Revised),

   the Commissioner may issue such orders without prior notice or an opportunity to be heard.

4.      Pursuant to 9 V.S.A. § 5604, the Commissioner may: (1) impose a civil administrative

   penalty for each violation of the Securities Act, an administrative rule of the Department,

1

or an order of the Commissioner relating to securities, of up to $15,000 per violation; and (2) require a company to make restitution or provide disgorgement of any sums shown to have been obtained in violation of the Securities Act, plus interest at the legal rate.

## **RESPONDENTS**

5.    Voyager Digital Ltd. ("Voyager Limited") is incorporated in British Columbia, Canada and conducts business in the State of Vermont through its wholly owned subsidiaries. Voyager Limited's principal place of business is located at 33 Irving Plaza, Suite 3060, New York, New York. Voyager Limited is the parent company for various subsidiaries, including Voyager Digital Holdings, Inc.

6.    Voyager Digital Holdings, Inc. ("Voyager Holdings"), a wholly owned subsidiary of Voyager Limited, is a Delaware corporation that conducts business in the State of Vermont through its wholly owned subsidiaries. Voyager Holdings is the holding company for Voyager Limited's subsidiaries in the United States, including Voyager Digital LLC.

7.    Voyager Digital, LLC ("Voyager") is a Delaware limited liability company that conducts business in the State of Vermont. Voyager's principal place of business is located at 185 Hudson Street, Jersey City, New Jersey. Voyager is a wholly owned subsidiary of Voyager Holdings and Voyager Limited. Voyager provides user-facing products and services to customers in the United States, including in Vermont.

8.    Voyager Limited, Voyager Holdings, and Voyager are referred to herein collectively as the "Respondents."

## BACKGROUND AND FINDINGS OF FACT

### The Crypto Interest Accounts

9.    Voyager is a financial services company that generates revenue by providing execution for customer-initiated trades of certain digital assets and virtual currencies (collectively, "cryptocurrency" or "cryptocurrencies"), lending cryptocurrencies to commercial and institutional borrowers, participating in blockchain and cryptocurrency staking protocols, and engaging in other types of transactions selected and conducted at Voyager's discretion.

10.    Respondents are financing their lending activities and cryptocurrency staking activities through the sale of unregistered securities in the form of interest-earning cryptocurrency accounts (the "Voyager Interest Accounts") to residents of Vermont and investors in other states.

11.    Respondents refer to the interest-earning feature of the Voyager Interest Accounts as Voyager's "Earn Program" or "Rewards Program," and prior to August 20, 2021, as Voyager's "Interest Program."

12.    Respondents conduct their business on the internet, through a website accessible to the general public at https://www.investvoyager.com/ (the "Voyager Website"), as well as through Respondents' proprietary smartphone applications.

13.    Respondents permit Vermont residents and other investors at least eighteen years old to invest in the Voyager Interest Accounts through the Voyager Website or smartphone applications.

14.    Investors open their Voyager Interest Accounts by transferring U.S. dollars or eligible cryptocurrency to Voyager to invest in the Voyager Interest Accounts. Investors relinquish

control over their deposits and Voyager takes legal and beneficial ownership of the investors' deposits.

15. Investors retain the right to withdraw their deposited cryptocurrencies but investors otherwise consent to Voyager's use of such cryptocurrencies consistent with the terms of the Voyager Interest Accounts, including: commingling cryptocurrencies with cryptocurrencies deposited by other investors; holding cryptocurrency held in an investor's account in Voyager's name or in another name; pledging, repledging, hypothecating, rehypothecating, selling, lending, staking, arranging for staking, or otherwise transferring or using any amount of such cryptocurrency, separately or together with other property, with all attendant rights of ownership, and for any period of time and without retaining a like amount of cryptocurrency; and otherwise using or investing such cryptocurrency at the investor's sole risk.

16. In exchange for consideration (*i.e.* deposits and the attendant rights to use them as described above) received in the present, Voyager is promising to pay lucrative interest rates in the future. Voyager is currently promoting the interest rates through the Voyager Website and apps, which advertise annualized returns on cryptocurrencies for retail investors, many of which rates significantly exceed the rates currently being offered on short-term investment grade fixed income securities or on bank savings accounts.

17. Voyager sets the interest rates it pays on various cryptocurrencies in advance, typically on a monthly basis. Voyager sets its interest rates based on various considerations and prioritizing Voyager's need for particular types of cryptocurrencies or digital assets.

18.     The accrual of interest is calculated using a daily periodic rate applied to the principal in a Voyager Interest Account and interest is paid the month after it accrues.  Interest is payable on or before the fifth business day of each month for the interest accrued the prior month.

19.     Interest payments are denominated in the same type of cryptocurrency or digital asset originally invested.

20.     Retail investors may withdraw their cryptocurrencies at any time, subject to certain processing times and minimum balance requirements; however this right is limited by Voyager's sole discretion to delay or prohibit withdrawals.

21.     As of March 1, 2022, Voyager had over $5 billion in outstanding Voyager Interest Account liabilities and more than 1.5 million funded accounts from the sale of Voyager Interest Accounts, nationally.

22.     As of March 1, 2022, more than 1,500 Vermont residents have over $6.3 million invested in Voyager Interest Accounts.

<u>The Lack of Registration and Public Protections</u>

23.     Respondents are not licensed as money transmitters under the Vermont Money Services Act, 8 V.S.A. § 2500, *et seq*.

24.     Respondents are not registered with the Vermont Department of Financial Regulation to offer or sell securities in Vermont.

25.     The Voyager Interest Accounts are not registered or permitted for sale in Vermont, nor do they qualify for any exemption from registration pursuant to the Securities Act.

26.     The Voyager Interest Accounts are not registered for offer or sale with the United States Securities and Exchange Commission (the "<u>SEC</u>").

27.     Respondents did not file or cause to be filed a registration statement with the SEC in connection with the offer and sale of the Voyager Interest Accounts.

28.     Respondents are not disclosing material information to Voyager Interest Account investors that issuers of registered securities must include in a registration statement and provide to prospective investors in the form of a prospectus pursuant to Subchapter 3 of the Securities Act and Section 6-1 of the Vermont Securities Regulations.

29.     The Voyager Interest Accounts are not protected by Securities Investor Protection Corporation, otherwise known as the SIPC, a federally mandated, non-profit, member-funded United States corporation created under the Securities Investor Protection Act of 1970 that mandates membership of most US-registered broker-dealers.

30.     The Voyager Interest Accounts are also not insured by the Federal Deposit Insurance Corporation, otherwise known as the FDIC, an agency that provides deposit insurance to depositors in the United States, or the National Credit Union Administration, otherwise known as the NCUA, an agency that regulates and insures credit unions.

<u>Voyager's Past and Continuing Registration Violations</u>

31.     On June 22, 2021, Voyager applied for a Vermont money transmitter license; Voyager's application remains pending.

32.     On July 1, 2021, as part of its review of Voyager's pending application for a Vermont money transmitter license, the Department directed Voyager to provide an affidavit, signed and dated by an officer of the company, indicating whether or not business has been conducted with any Vermont clients.

33.     On August 3, 2021, Voyager's chief compliance officer provided a statement confirming that "Voyager Digital LLC has not conducted any unlicensed business activities with Vermont clients." Voyager did not provide the required affidavit.

34.     On September 21, 2021, the Department requested that Voyager provide information regarding all financial business engaged in, effected, conducted or facilitated by Voyager or any of its affiliates with any customer, client, borrower, person or entity located or residing in the State of Vermont. Voyager did not provide the requested information.

35.     On February 18, 2022, the Department resent its request and directed Voyager to respond by March 1, 2022. Voyager complied with this final request, and confirmed that over three thousand Vermonters have either signed up for, opened, or invested in Voyager Interest Accounts between December 20, 2020 and February 28, 2022.[1]

36.     Respondents continue to offer the Voyager Interest Accounts to Vermonters without complying with the registration requirements in Vermont law, as set forth in this Show Cause Order.

## CONCLUSIONS OF LAW

37.     Pursuant to 9 V.S.A. § 5301, "[i]t is unlawful for a person to offer or sell a security in this State unless: (1) the security is a federal covered security; (2) the security, transaction, or offer is exempted from registration under sections 5201 through 5203 of this chapter; or (3) the security is registered under this chapter."

---

[1] In addition to the unregistered offering and sale of securities in the form of Voyager Interest Accounts, Voyager's response on March 1, 2022, reported extensive unlicensed business activities with Vermont customers that appear to require a Vermont money transmitter license pursuant to 8 V.S.A., Chapter 79. Such matters are beyond the current scope of this Order, which is limited to enforcement of the Securities Act.

38.    Pursuant to 9 V.S.A § 5102(28), the term "security" includes notes, investment contracts, evidence of indebtedness, and related types of participation in profit-sharing agreements. Section 5102(28)(D) specifies that the Securities Act's definition of security includes "an investment in a common enterprise with the expectation of profits to be derived primarily from the efforts of a person other than the investor and a 'common enterprise' means an enterprise in which the fortunes of the investor are interwoven with those of either the person offering the investment, a third party, or other investors." *Id.* (codifying the definition set forth in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), commonly referred to as the "*Howey* test").

39.    The Voyager Interest Accounts offered by Respondents are securities within the meaning of 9 V.S.A. § 5102(28).

40.    The Voyager Interest Accounts were neither federal covered securities nor registered with the Department nor exempted from registration when Respondents offered or sold them to Vermont investors.

41.    Accordingly, Respondents are in violation of 9 V.S.A. § 5301.

## **ORDER**

ACCORDINGLY, IT IS HEREBY ORDERED that Respondents show cause to the Commissioner, within thirty (30) days of the date of this Order, why an order should not be entered by the Commissioner directing Respondents to cease and desist offering Voyager Interest Accounts in Vermont, and further, as a condition of such order, to pay restitution and meet such other terms and conditions as the Commissioner deems appropriate under 9 V.S.A. § 5604, including, but not limited to a civil penalty of not more than $15,000.00 for each violation.

Dated at Montpelier, Vermont this 29th day of March, 2022.

By: _____

Michael S. Pieciak
Commissioner of Financial Regulation
Vermont Department of Financial Regulation

# STATE OF WASHINGTON
## DEPARTMENT OF FINANCIAL INSTITUTIONS
## SECURITIES DIVISION

| | |
|---|---|
| IN THE MATTER OF DETERMINING Whether there has been a violation of the Securities Act of Washington by:<br><br>Voyager Digital LLC,<br><br>       **Respondents** | Order No.: S-21-3218-22-SC01<br><br>STATEMENT OF CHARGES AND NOTICE OF INTENT TO ENTER ORDER TO CEASE AND DESIST, TO IMPOSE FINES, AND TO CHARGE COSTS |

THE STATE OF WASHINGTON TO:   **Voyager Digital Ltd.**

## STATEMENT OF CHARGES

   Please take notice that the Securities Administrator of the State of Washington has reason to believe that Respondent Voyager Digital LLC has violated the Securities Act of Washington. The Securities Administrator believes those violations justify the entry of an order against the Respondent to cease and desist from such violations and to charge costs pursuant to RCW 21.20.390, and under RCW 21.20.395 to impose a fine. The Securities Administrator finds as follows:

## TENTATIVE FINDINGS OF FACT

### Respondent

   1.  Voyager Digital LLC ("Voyager") is a Delaware limited liability company, originally formed on January 23, 2018. Voyager operates a cryptocurrency trading platform and accompanying iOS and Android applications. In connection with its cryptocurrency trading services, Voyager holds money transmitter licenses in 13 states, including Washington.

### Related Persons

STATEMENT OF CHARGES AND NOTICE
OF INTENT TO ENTER ORDER TO
CEASE AND DESIST, TO IMPOSE A FINE,
AND TO CHARGE COSTS

DEPARTMENT OF FINANCIAL INSTITUTIONS
Securities Division
PO Box 9033
Olympia, WA  98507-9033
360-902-8760

1

2.      Voyager Digital Ltd. is a British Columbia company, originally formed on June 25, 1993, with its principal place of business in Vancouver, British Columbia, Canada.[1] Voyager Digital Ltd. is the sole owner of Voyager, along with several other related entities under the Voyager name.

## Nature of the Conduct

### Overview

3.      Since October 2019, Voyager has offered Voyager Earn, a cryptocurrency investment program which advertises high rates of return for investors. In this program, Voyager customers essentially "deposit" their cryptocurrency with Voyager, assign control rights for the cryptocurrency to Voyager, and earn in-kind interest on the deposited cryptocurrency (for instance, a customer who deposits Bitcoin will receive their interest payments in Bitcoin). Voyager, in turn, lends cryptocurrencies to large borrowers and earns interest on these loans, partly funding the interest payments to Voyager Earn participants.

4.      As of approximately September 2021, over 46,000 Washington residents had established Voyager accounts, which held a collective total of approximately $199 million worth of cryptocurrency. Of these users, slightly over 28,000 have participated in the Voyager Earn program.

### Background Concepts

5.      "Cryptocurrency" refers to a type of digital asset which is designed as a store of value and can be used for various types of transactions with other users of the cryptocurrency. The best-known cryptocurrency ecosystems are Bitcoin and Ethereum. In most cases, transactions involving a particular cryptocurrency are recorded on a "blockchain," a publicly available ledger system which relies on users' collective computing power to record transactions.

---

[1] Voyager Digital Ltd. was originally formed under the name 393838 B.C. Ltd." It adopted the Voyager name in February 2019.

**STATEMENT OF CHARGES AND NOTICE**
**OF INTENT TO ENTER ORDER TO**
**CEASE AND DESIST, TO IMPOSE A FINE,**
**AND TO CHARGE COSTS**

**DEPARTMENT OF FINANCIAL INSTITUTIONS**
**Securities Division**
**PO Box 9033**
**Olympia, WA  98507-9033**
**360-902-8760**

6.      Some cryptocurrency networks, most prominently Ethereum, operate on a "proof of stake" principle, meaning that in order to participate in processing transactions on a particular cryptocurrency's blockchain, a user must lock in, or "stake" a certain minimum amount of that cryptocurrency within the network. Several companies which offer staking and related services have described staking as analogous to a bank account deposit.[2] In exchange for staking their cryptocurrency and participating in the blockchain, the user generally receives in-kind payment of the staked cryptocurrency. In recent years, many cryptocurrency companies have begun offering staking services which streamline or automate staking-related functions and offer the user in-kind interest payments.

**Voyager Earn Program**

7.      Since October 2019, Voyager has offered the Voyager Earn program, in which users deposit their cryptocurrency in a Voyager account and provide Voyager with the rights to use the deposited cryptocurrency for various business purposes. In exchange, Voyager Earn customers receive passive income generated either by Voyager staking cryptocurrency on its customers' behalf or by lending the cryptocurrency to large institutional borrowers. Although these payments function similarly to banks or pooled investment vehicles, Voyager and its affiliated entities are not registered in these capacities with any relevant authority and are not protected by organizations such as the Federal Deposit Insurance Corporation (which protects bank accounts) or the Securities Investor Protection Corporation (which insures brokerage accounts).

8.      On its social media accounts, Voyager has repeatedly characterized the Earn Program as an investment and the accompanying payments as interest payments. For instance, in a June 2021 post on its Twitter account, @InvestVoyager, Voyager advertised that "[t]he voyage to wealth doesn't have to be

---

[2] *See* Coinbase, "What is staking?," *available at* https://www.coinbase.com/learn/crypto-basics/what-is-staking; SoFi, "Guide to Crypto Staking: What It Is, How It Works, and How to Get Started," Oct. 22, 2021, *available at* https://www.sofi.com/learn/content/crypto-staking/.

STATEMENT OF CHARGES AND NOTICE
OF INTENT TO ENTER ORDER TO
CEASE AND DESIST, TO IMPOSE A FINE,
AND TO CHARGE COSTS

DEPARTMENT OF FINANCIAL INSTITUTIONS
Securities Division
PO Box 9033
Olympia, WA  98507-9033
360-902-8760

3

complicated with our easy to navigate app. With over 55 digital assets to choose from and up to 10% interest APR on investments, you can focus on watching your assets grow." Throughout 2021, Voyager regularly advertised its industry-leading interest rates. On its website, Voyager provides customers with a list of cryptocurrencies it currently transacts in, along with the interest rate and required minimum balance which customers must maintain in their account in order to receive monthly interest payments. As of February 2022, Voyager offered the Voyager Earn program for approximately three dozen cryptocurrencies, with annual interest rates ranging from 0.5% to 12%, substantially higher than a fiat-currency savings account.

9.      In its customer agreement, Voyager requires customers to provide it with the authority to "move, transfer, store, control, and rehypothecate digital assets" in their accounts. Voyager generally pools customers' cryptocurrency into an omnibus account, which it uses to (a) stake cryptocurrency on customers' behalf, and (b) facilitate institutional loans to large cryptocurrency borrowers. Although Voyager gives customers the right to opt out of the Voyager Earn program, there is no similar opt-out provision for this pooling or for Voyager's control rights over the cryptocurrency in their accounts.

10.      Voyager Earn participants do not engage in substantive Voyager Earn-related activities beyond depositing their cryptocurrency with Voyager, and depend mostly or entirely on Voyager and its business efforts to receive these payments. Voyager sets its interest rates on a month-to-month basis with no customer input, and has represented to the Securities Division that it generally sets these rates based on "customer acquisition considerations." Voyager funds the Voyager Earn program through its business activities, including revenue from cryptocurrency trading services, revenue from lending to large borrowers, revenue from staking, and revenue from its affiliated cryptocurrency payments services. As a result, Voyager Earn participants' ability to receive interest payments is dependent on the success of Voyager's business.

**STATEMENT OF CHARGES AND NOTICE**
**OF INTENT TO ENTER ORDER TO**
**CEASE AND DESIST, TO IMPOSE A FINE,**
**AND TO CHARGE COSTS**

**DEPARTMENT OF FINANCIAL INSTITUTIONS**
**Securities Division**
**PO Box 9033**
**Olympia, WA  98507-9033**
**360-902-8760**

4

**Registration & Failures to Disclose**

11.    Voyager is not, and has never been, registered to sell its securities in the State of Washington.

12.    Voyager's failure to register its securities offerings with the appropriate authorities has deprived its customers of material information necessary for a fully informed investment decisions. In particular, Voyager failed to disclose any specifics of its institutional lending activities, including how it locates and evaluates potential borrowers, the interest rate(s) at which it lends to institutional borrowers, the steps it takes to guard against the risk of default, and whether any borrowers have previously defaulted. Voyager also failed to disclose information about the total pool of investor funds used in Voyager Earn, its methods for setting interest rates in Voyager Earn, and the circumstances under which a depositor might be unable to withdraw their funds.

Based upon the above Tentative Findings of Fact, the following Conclusions of Law are made:

**CONCLUSIONS OF LAW**

1.    The offer and/or sale of the Voyager Earn program, as described above, constitutes the offer and/or sale of a security as defined in RCW 21.20.005(14) and (17).

2.    Voyager Digital LLC has violated RCW 21.20.140, because, as set forth in the Tentative Findings of Fact, it offered and sold securities for which no registration is on file with the Securities Administrator.

**NOTICE OF INTENT TO ORDER THE RESPONDENT TO CEASE AND DESIST**

Based upon the above Tentative Findings of Fact and Conclusions of Law, the Securities Administrator intends to order, pursuant to RCW 21.20.390(1), that Voyager Digital LLC, and its agents and employees, each shall cease and desist from violations of RCW 21.20.140.

STATEMENT OF CHARGES AND NOTICE
OF INTENT TO ENTER ORDER TO
CEASE AND DESIST, TO IMPOSE A FINE,
AND TO CHARGE COSTS

DEPARTMENT OF FINANCIAL INSTITUTIONS
Securities Division
PO Box 9033
Olympia, WA  98507-9033
360-902-8760

5

## NOTICE OF INTENT TO IMPOSE FINES

Pursuant to RCW 21.20.395, and based upon the Tentative Findings of Fact and Conclusions of Law, the Securities Administrator intends to order that Respondent Voyager Digital LLC shall be liable for and shall pay a fine of $2,800,000.

## NOTICE OF INTENT TO CHARGE COSTS

Pursuant to RCW 21.20.390, and based upon the Tentative Findings of Fact and Conclusions of Law, the Securities Administrator intends to order that Respondent Voyager Digital LLC shall be liable for and shall pay the costs, fees, and other expenses incurred in the administrative investigation and hearing of this matter, in an amount not less than $5,000.

## AUTHORITY AND PROCEDURE

This Statement of Charges is entered pursuant to the provisions of Chapter 21.20 RCW and is subject to the provisions of Chapter 34.05 RCW. The Respondent, Voyager Digital LLC, may make a written request for a hearing as set forth in the NOTICE OF OPPORTUNITY TO DEFEND AND OPPORTUNITY FOR HEARING accompanying this Order. If a Respondent does not make a hearing request in the time allowed, the Securities Administrator intends to adopt the above Tentative Findings of Fact and Conclusions of Law as final and to enter a permanent order to cease and desist as to that Respondent, to impose any fines sought against that respondent, and to charge any costs sought against that Respondent.

STATEMENT OF CHARGES AND NOTICE
OF INTENT TO ENTER ORDER TO
CEASE AND DESIST, TO IMPOSE A FINE,
AND TO CHARGE COSTS

DEPARTMENT OF FINANCIAL INSTITUTIONS
Securities Division
PO Box 9033
Olympia, WA  98507-9033
360-902-8760

6

1 | Signed and Entered this ___29th___ day of ____March_____, 2022.

2

3

4

5 | William M. Beatty
Securities Administrator

6

7 | Approved by:                                          Presented by:

8 | _____           _____
Brian J. Guerard                                      Adam N. Yeaton

9 | Chief of Enforcement                               Financial Legal Examiner

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**STATEMENT OF CHARGES AND NOTICE**
**OF INTENT TO ENTER ORDER TO**
**CEASE AND DESIST, TO IMPOSE A FINE,**
**AND TO CHARGE COSTS**

**DEPARTMENT OF FINANCIAL INSTITUTIONS**
**Securities Division**
**PO Box 9033**
**Olympia, WA  98507-9033**
**360-902-8760**

7





Karima M. Woods, Commissioner

IN THE MATTER OF:                          )
                                           )
Voyager Digital Ltd.,                      )        ADMINISTRATIVE ORDER
Voyager Digital Holdings, Inc., and        )        ORDER NO: SB-02-22
Voyager Digital, LLC,                      )
                                           )
        Respondents.                       )
_____          )

## SUMMARY CEASE AND DESIST ORDER

In accordance with the provisions of the District of Columbia Administrative Procedure Act, D.C. Official Code § 2-501 et seq., the Rules of Practice and Procedures for Hearings, 26 DCMR §B300 et seq., and section 602 of the Securities Act of 2000, D.C. Official Code § 31-5606.02 ("Act"), Voyager Digital Ltd., Voyager Holdings, Inc. and Voyager Digital, LLC (collectively, "Voyager" ("Respondents") are hereby ordered to cease and desist from offering or selling unregistered securities in the District of Columbia, in violation of D.C. Official Code §§ 31-5605.01 and 31-5603.01.

### JURISDICTION

D.C. Official Code § 31-5606.02(a) grants the Commissioner of the Department of Insurance, Securities, and Banking ("Department" or "DISB") the power to issue, without a hearing, a summary order directing the Respondents to cease and desist from engaging in acts or practices which constitute, or will constitute, a violation of any provision of the Act, or any rule or order.

Under D.C. Official Code § 31-5606.02(a)(1), this Summary Order to Cease and

Desist ("Order") constitutes notice of the opportunity for a hearing before the Commissioner, or

her designee, to determine whether the Order should be vacated, modified, or entered as final; and

constitutes notice that the Order will be entered as final if the Respondents do not request a hearing

within 15 days of the receipt of the Order, pursuant to D.C. Official Code § 31-5606.02(a)(2); and

that the Commissioner may bar the Respondents from engaging in the securities business or

investment advisory business in the District, order payment of restitution and impose a fine or

Respondents, pursuant to D.C. Official Code § 31-5606.02(b). In addition, a written answer to the

allegation must be filed with the Commissioner within 10 days of service of this Order, pursuant

to 26 DCMR § B304.

## FINDINGS OF FACT

1.     Voyager Digital, LLC is a financial services company that generates revenue

through trading, borrowing, staking, and lending cryptocurrency.  Since November 1, 2019,

Voyager has been, at least in part, funding its income-generating activities, including lending

operations, digital asset staking, and proprietary trading, through the sale of unregistered securities

in the form of cryptocurrency interest-earning accounts. Voyager refers to these unregistered

securities as its "Rewards Program," which is a feature of all Voyager cryptocurrency trading

accounts ("Voyager Rewards Accounts") unless the account holder opts out.

2.     Voyager solicits investors to invest in the Voyager Rewards Accounts by

depositing certain eligible cryptocurrencies into the investors' Voyager Reward Program

Account. After obtaining transfers of cryptocurrencies from retail investors, Voyager then

pools these cryptocurrencies together to fund its various income-generating activities,

including lending operations, proprietary trading, cryptocurrency staking, and investments in other cryptocurrency trading platforms, such as Celsius Network. In exchange for investing in the Voyager Reward Program Accounts, investors are promised an attractive interest rate that is paid monthly in the same type of cryptocurrency as originally invested.

3.      The Voyager Reward Program Accounts are not registered with the Department or any other securities regulatory authority; nor are they otherwise exempt from registration. Digital assets contained in Voyager Reward Program Accounts are not protected by the Securities Investor Protection Corporation ("SIPC"), insured by the Federal Deposit Insurance Corporation ("FDIC"), or insured by the National Credit Union Administration ("NCUA"). This lack of a protective scheme or regulatory oversight subjects Voyager Reward Program Account investors to additional risks not borne by investors who maintain assets with most SIPC member broker-dealers, or with banks, savings associations, or credit unions, although Voyager does disclose the lack of insurance of digital assets to Voyager Reward Program Account investors.

4.      As of March 1, 2022, Voyager had approximately 1,530,000 Voyager Reward Program Accounts representing approximately $5 billion in assets, of which approximately 52,800 were DC-based accounts representing approximately $197 million in assets.

5.      Despite the Voyager Reward Program Accounts lacking the safeguards that the SIPC, FDIC, and NCUA would offer, and lacking the regulatory oversight of securities registration, by March 1, 2022, Voyager's holdings had mushroomed to the equivalent of approximately $5 billion in cryptocurrency assets from the sale of these unregistered securities.

6.      The Department enters this Order to protect the investing public by halting the

offer and sale of these unregistered securities, and the contribution of additional assets to existing Voyager Reward Program Accounts. Nothing in this order shall preclude Voyager, or any of its affiliates, from paying interest, also known as "Rewards"," on the existing Voyager Reward Program Accounts or refunding principal to the Voyager Reward Program Account investors consistent with Voyager's Customer Agreement.

A.  The Respondents

7.      Voyager Digital Ltd. is incorporated in British Columbia, Canada, and is the parent company for Voyager's subsidiaries, including Voyager Digital Holdings, Inc.

8.      Voyager Digital Holdings, Inc. is incorporated in Delaware and is the holding company for Voyager Digital Ltd.'s subsidiaries in the United States, including Voyager Digital, LLC.

9.      Voyager Digital, LLC, is a Delaware limited liability company, that effected a foreign entity filing in the District of Columbia on October 22, 2018, under the foreign name of Cryptotrading Technologies. It listed its business address at 185 Hudson Street, Suite 2500, Jersey City, NJ 07311, and its registered agent as Corporation Service Company, at 1090 Vermont Avenue NW, Washington, DC 20005. Voyager conducts its business on the internet, through a website accessible to the general public at https://www.investvoyager.com/ (the" Voyager Website"), which is also accessible through Voyager's own proprietary app via smartphone.

10.      Voyager is not presently registered, and has never been registered, in any capacity with the Department; nor have the Voyager Reward Program Accounts ever been registered with

4

the DISB.

B.  The Voyager Reward Program Account Securities

a.      Voyager Reward Program

11.     Voyager offers and sells its Voyager Reward Program Account unregistered securities in the form of individual and corporate accounts. Investors in these accounts ("Rewards Account Investors") deposit certain popular cryptocurrencies with Voyager to earn "up to 12% Rewards." The Voyager Reward Program Account "Rewards" rates Voyager advertises are well in excess of the rates currently being offered on short-term investment-grade fixed income securities, or on bank savings accounts.

12.     Voyager offers its Voyager Reward Program Accounts to all U.S. residents over the age of eighteen, except residents of New York state.

13.     When an investor signs up with Voyager, they complete a KYC (Know Your Customer) protocol in which they input certain identifying personal information, including name, age and address, and provide verification using an identification document such as a driver's license. To create an account, a user must check a box next to the statement, "By creating an Agreement (the "Voyager Terms"). Links to the Voyager Terms also appear elsewhere on the Voyager Website.

14.     The Voyager Website states that Voyager requires Rewards Account Investors to maintain a specified minimum average monthly cryptocurrency balance for a Rewards Account Investor to earn interest on Voyager Reward Program Account balances.

Specific minimum balances for particular accounts are listed on the Voyager app information page for that coin.

15.    Voyager only accepts certain types of cryptocurrencies for deposit in the Voyager Reward Program Accounts. Although Voyager refers to its payments to Reward Program Investors as "Rewards," the term "Rewards" is a substitute for interest.

16.    Voyager Reward Program Investors earn a variable interest rate on their investment and may withdraw their digital assets at any time, subject to certain restrictions, including discretionary decisions by Voyager to "delay, modify or prohibit, in whole or in part, any requested withdrawal," and withdrawals within sixty days of a cryptocurrency or cash deposit.

17.    The current monthly interest rates for Reward Program Investors are posted on the Voyager Website. Voyager's interest rates for deposits of certain cryptocurrencies in its Rewards Program Accounts may be "tiered" with specified rates in effect at any time only applied to specified portions of cryptocurrency held in the account, according to the Voyager Terms. Annual interest rates on eligible cryptocurrencies posted on the Voyager Website for March 2022 ranged from 12% for Polkadot to 0.5% for OMG:

**THIS AREA INTENTIONALLY LEFT BLANK**

| | | |
|---|---|---|
| **DOT** POLKADOT | 12% | |
| Min. monthly balance 20 DOT | | |

| | | |
|---|---|---|
| **USDC** USD COIN | 9% | |
| Min. monthly balance 100 USDC | | |

| | | |
|---|---|---|
| **VGX** VOYAGER TOKEN | 7% | |
| Min monthly bilance 10iJ VGX | | |

| | | |
|---|---|---|
| **MATIC** POLYGON | 5.25% | |
| 11:in. m-onth-iy balance. 100 MATIC | | |

| | | |
|---|---|---|
| **ETH** ETHEREUM* | 4.25% | |
| Min. monih(y ba!ar;ce O 5 ETH | | |

| | | |
|---|---|---|
| **BTC** BITCOIN' | 4.05% | |
| t/.;n mcnthly balanc 0 01 BTC | | |

| | | |
|---|---|---|
| **ADA** CARDANO | 4% | |
| Min monihly balance 100 :AD | | |

| | | |
|---|---|---|
| **LUNA** TERRA LUNA | 4% | |
| Mm Q1<>J'lIhiy balance: 10 LUNA | | |

| | | |
|---|---|---|
| **AAVE** AAVE | 3o/o | |
| Min. monthly 1.alance 1 A.AVE | | |

| | | |
|---|---|---|
| **CELO** CELO | 3% | |
| I'J,n month)' balc:n:.;e· 50 CELO | | |

| | | |
|---|---|---|
| **COMP** COMPOUND | 3% | |
| Min m•Jnfhly balance 1 COMP | | |

| | | |
|---|---|---|
| **DASH** DASH | 3% | |
| Min. mo:'tlhy b sr-ance 1 S DASH | | |

| | | |
|---|---|---|
| **SOL** SOLANA | 3% | |
| Mi'l. monthd balance 3 SOL | | |

| | | |
|---|---|---|
| **LINK** CHAINLINK | 2.5% | |
| M n mcnthly balance 10 UNI¡ | | |

| | | |
|---|---|---|
| **LTC** LITECOIN | 2.5% | |
| Min monthly balance 2 LTC | | |

| | | |
|---|---|---|
| **BCH** BITCOIN CASH | 2% | |
| Min. monthly balance 0.5 BCH | | |

| | | |
|---|---|---|
| **ATOM** COSMOS | 2% | |
| Min monthly balance 20 ATOM | | |

| | | |
|---|---|---|
| **XTZ** TEZOS | 2% | |
| Mm monthly balanc - SO Y.TZ | | |

| | | |
|---|---|---|
| **UNI** UNISWAP | 2% | |
| Mm monthly balance: 10 UNI | | |

| | | |
|---|---|---|
| **FIL** FILECOIN | 2% | |
| Min. monthly balance 3 FIL | | |

| | | |
|---|---|---|
| **STMX** STORMX | 2% | |
| Min monthly balance 5000 STMX | | |

| | | |
|---|---|---|
| **GRT** THE GRAPH | 2% | |
| M,n monthly balance 2{,0 GRT | | |

| | | |
|---|---|---|
| **ALGO** ALGORAND | 2% | |
| Min monthly balance 200 ALGO | | |

| | | |
|---|---|---|
| **ZRX** 0X | 1.5% | |
| t.w. monthly b.n/ilance 200 ZRX | | |

Search coins

**Sort by:** Highest rates

| | | |
|---|---|---|
| **UMA** UMA | 1% | |
| Min monthly balance 25 UM.I | | |

| | | |
|---|---|---|
| **BAT** BASIC ATTENTION TOKEN | 1% | |
| !I.in monthly balance 300 SAT | | |

| | | |
|---|---|---|
| **EOS** EOS | 1% | |
| Min. monthly balance 50 EOS | | |

| | | |
|---|---|---|
| **OXT** ORCHID | 1% | |
| M,n monthly bacance. 500 OXT | | |

| | | |
|---|---|---|
| **XLM** STELLAR LUMENS | 1% | |
| Min monthly balance- 1000 X.M | | |

| | | |
|---|---|---|
| **ZEC** ZCASH | 1% | |
| .;.n m;onthly balance 2 ZEC | | |

| | | |
|---|---|---|
| **MANA** DECENTRALAND | 0.5% | |
| Min. montlhy balance 10VO MANA | | |

| | | |
|---|---|---|
| **DOGE** DOGECOIN | 0.50% | |
| M,n monthly b<1a a 1GOO DOGE | | |

| | | |
|---|---|---|
| **KNC** KYBER NETWORK | 0.5% | |
| Mm. monthly balanc' 100 )NC | | |

| | | |
|---|---|---|
| **OMG** OMG NETWORK | 0.5% | |
| Mhn mxxl'-x/y balance 50 OMG | | |

*Rewards are paid up 10 100 B1tco1n and 500 Ethereum

18.    Voyager also pays interest for deposits of certain stablecoins, which are cryptocurrencies pegged to an external measure of value such as the U.S. dollar, in its Voyager Rewards Accounts, as explained on the Voyager Website. For example, Voyager currently pays 9% annual interest on deposits of USDC with a minimum balance of 100 USDC.

19.    Voyager's Customer Agreement describes the interest calculation and payment methodology:

> 10. Rewards Program. By entering into this Customer Agreement, and subject to clause (F) of this Section 10, Customer understands, acknowledges and agrees that Customer is opting into the Voyager Reward Program (the "Rewards Program"). The Rewards Program allows Customer to earn additional Cryptocurrency of the same kind of Cryptocurrency held in Customer's Account (the "Rewards"). The terms and conditions governing the Rewards Program are as follows:
>
> *    *    *
>
> (B)    How Rewards Are Calculated. Rewards earned on Cryptocurrency are variable. Voyager will typically publish anticipated Rewards rates once per month on or before the first business day of each month. Reward rates may be tiered, with specified rates in effect at any time only applied to specified portions of amounts of Cryptocurrency held in the Account. Rewards will be payable in arrears and added to the Account on or before the fifth business day of each calendar month for the prior calendar month. Voyager uses the daily balance method to calculate the Rewards on the Account. This method applies a daily periodic rate to the specified principal in the account each day. The daily periodic rate is calculated by dividing the applicable interest rate by three hundred sixty-five (365) days, even in leap years. Voyager will determine the Reward rates and tiers for each month in Voyager's sole discretion, and the Customer acknowledges that such Rewards

may not be equivalent to benchmark interest rates observed in the market for bank deposit accounts.

b.     Voyager's Promotion of Reward Program Accounts as Investment Products

20.     Voyager encourages its Reward Program  Investors to think of their Voyager Reward Program Accounts as investments as evidenced by Voyager's own homepage address: https://www.investvoyager.com/ and certain investment-related statements on Voyager's website, such as "Grow your crypto portfolio" and "journey to the new frontier of investing," as illustrated on the website.

c.     Voyager's Use of the Reward Program  Account Deposit Funds

21.     The Voyager Customer Agreement provides that a Reward Program Investor relinquishes control over the deposited cryptocurrency to Voyager and that Voyager is free to use those assets as it sees fit, including commingling the Reward Program  Investor's cryptocurrency with those of other Reward Program  Investors, investing those pooled assets, and staking them, or lending them to various third parties, including custodians and other financial institutions. Having relinquished control over the deposited cryptocurrency in their Voyager Reward Program Accounts, the Reward Program Investors are passive investors.

22.     Specifically, Paragraph 10. A. "Rewards Program – Overview" of the Voyager Customer Agreement provides:

> (A) Overview. Each Customer participating in the Rewards Program acknowledges and agrees that Voyager may rely on the consent to rehypothecate granted by each customer pursuant to **Section S(D) - Consent to Rehypothecate** with respect to

> Cryptocurrency held in such Customer Account. Such consent to rehypothecate expressly includes allowing Voyager to (1) stake Cryptocurrency held in an omnibus fashion through various blockchain protocols (either by delegating Cryptocurrencies to the financial institutions which, in return, stake such Cryptocurrencies or using staking service providers to stake Cryptocurrencies); and (2) lend such Cryptocurrency to various institutional third parties (each, a "Borrower") determined at Voyager's sole discretion (each, a "Loan). Voyager enters into these Loans as principal and independently negotiates with each Borrower the terms of less than one year or can be repaid on a demand basis and provide a fee payable in Cryptocurrency based on the percentage and denominated in the Cryptocurrency lent. Voyager selects which and how many Cryptocurrencies are available for such staking and lending.

23.    In a response to an inquiry from the Department of Insurance, Securities, and Banking to Voyager, requesting a sortable Excel spreadsheet of all Voyager customers located in Washington, D.C., and a complete copy of each customer's file, Voyager noted that "[a]s of the date of the request, all of the outstanding institutional lending activities represent uncollateralized loans."

24.    Paragraph 5.d. of Voyager's Customer Agreement, "Consent to Rehypothecate," further details the status of cryptocurrency deposited with Voyager by Reward Program Investors:

> (D) <u>Consent to Rehypothecate.</u> Customer grants Voyager the right, subject to applicable law, without further notice to Customer, to hold Cryptocurrency held in Customer's Account in Voyager's name or in another name, and to pledge, repledge, hypothecate, rehypothecate, sell lend, stake, arrange for staking, or otherwise transfer or use any amount of such Cryptocurrency, separately or together with other property, with all attendant rights of ownership, and for any period of time and without

retaining a like amount of Cryptocurrency, and to use or invest
such Cryptocurrency at Customer's sole risk.

25.    Voyager then pools the deposited cryptocurrencies together with Voyager's

other assets in order to, among other income-generating activities, stake them or, invest those

pooled assets by making loans to various third parties, including custodians and other

financial institutions.

26.    Voyager does not disclose certain material information to Reward Program

Investors that issuers of registered securities must include in a registration statement and

provide to prospective investors in the form of a prospectus pursuant to section 52(d) of the

Securities Law.

d.    The Voyager Reward Program Accounts are Unregistered Securities

27.    While certain of Voyager's loan products appear to be licensed under various

state licensing requirements for money services businesses or money transmitters, and

Voyager Digital Ltd. Is a registered public company in Canada, the Voyager Reward

Program Account is not currently registered with any federal or state securities regulator,

nor is it exempt from registration as required by law, even though the Voyager Reward

Program Account is a "security" and subject to such requirements.

28.    Voyager fails to disclose to Reward Program Investors that its Reward

Program Account is not currently registered by federal or state securities regulatory

authorities, even though the Voyager Reward Program Account is a "security" and required

to be registered.

        e.    <u>Misrepresentations and Omissions in the Marketing of the Voyager Reward Program Accounts</u>

29.    Voyager represents to the public on its website that it is "publicly traded, licensed, and regulated." What Voyager fails to disclose in proximity to its advertising claim that it is "publicly traded" however, is that Voyager Digital, LLC's parent company, Voyager Digital Ltd., is publicly traded ***in Canada***, not the U.S., by virtue of its equity securities being listed on the Toronto Stock Exchange. Thus, Voyager's advertising claim that it is "publicly traded" is inaccurate with respect to Voyager Digital, LLC, which is not a publicly traded entity, and creates a misleading impression with respect to Voyager Digital, LLC's regulatory status, particularly because Voyager's website notes that "[a]ll services [are] provided by Voyager Digital, LLC…".

30.    Voyager's claim to be "licensed" stems from state licensing in far fewer than all U.S. states as a money transmitter, or money services business, which is unrelated to Voyager's offering and selling of unregistered securities and may convey the misleading impression to unsophisticated investors that Voyager is "licensed" to offer and sell such securities when it is not.

31.    Notwithstanding its claims to be licensed and regulated, Voyager's Reward Program Accounts are neither licensed nor regulated by DISB, and Voyager has not sought to register its Reward Program Account with DISB, notwithstanding that it is a security required to be registered with DISB.

CONCLUSIONS OF LAW

32.    The preceding paragraphs are incorporated by reference as though set forth verbatim herein.

33.    The Voyager Reward Program Account is a security as defined in D.C. Official Code § 31-5601.01 (31).

34.    The Voyager Reward Program Account was and is required to be registered with the DISB pursuant to D.C. Official Code §31-5603.01.

35.    The Voyager Reward Program Account has not been registered with the DISB, is not exempt from registration, and is not federally covered.

36.    Voyager has offered and sold unregistered securities in violation of D.C. Official Code § 31-5603.01 and continues to do so.

37.    Each violation of D.C. Official Code § 31-5603-01 is a separate violation of the Securities Law and is cause for the denial of certain exemptions.

38.    D.C. Official Code § 31-5606.02 empowers the Commissioner to issue a cease-and-desist order against persons engaged in prohibited activities, directing them to cease and desist from further illegal activity or doing acts in furtherance thereof.

## ORDER

The Commissioner hereby finds that there is good cause, and it is in the public interest to enter this Summary Cease and Desist Order ("Order") against Voyager Digital Ltd., Voyager Holdings, Inc. and Voyager Digital, LLC (collectively, "Voyager").

THERFORE, it is on this ___ day of _____ 2022, ORDERED that:

39.    Effective on the date that this Order is entered, Voyager and any person, agent, employee, broker, partner, officer, director, affiliate, successor, or stockholder thereof, under any of their direction or control shall CEASE AND DESIST from:

a.    offering for sale any security, including any Voyager Reward Program Account, to or from the District of Columbia unless the security is registered with the Department, is a covered security, or is exempt from registration under the laws in the District of Columbia;

b.    accepting any additional assets into an existing Voyager Reward Program Account; and

c.    violating any other provisions of the Securities Law and any rules promulgated thereunder for the sale of any security in the District of Columbia.

40.    Nothing in this order shall preclude Voyager from paying interest, also known as "Rewards," on existing Voyager Reward Program Accounts or refunding principal to Reward Program Account Investors consistent with the Voyager Terms.

41.    All exemptions contained in are hereby DENIED as to Voyager.

42.    All exemptions to the registration requirements provided are hereby DENIED as to Voyager.

**SEAL**

**APPROVED and so ORDERED:**

In Witness Whereof, I have hereunto
set my hand and affixed the official seal
of the Department of Insurance, Securities
and Banking, this 19th day of Tuesday
July , 20 22.

_____
Karima Woods, Commissioner

**NOTICE OF OPPORTUNITY OF HEARING**

The Respondent may request a hearing, pursuant to D.C. Official Code § 31-5606.02(a)(1) and § 31-5606.02(a)(2). Whenever the Commissioner determines that a person has engaged, or is about to engage, in an act or practice constituting a violation of any provision of this chapter or any rule or order hereunder, and that immediate action against such person is in the public interest, the Commissioner may issue, without a hearing, a summary order directing the person to cease and desist from engaging in such activity; provided, that the summary cease and desist order shall give the person:

(1) Notice of the opportunity for a hearing before the Commissioner to determine whether the summary cease and desist order should be vacated, modified, or entered as final; and

(2) Notice that the summary cease and desist order will be entered as final if the person does not request a hearing within 15 days of the receipt of the summary cease and desist order.

If a request for a hearing is not received by the Department within 15 days of receipt of this Notice, the Department will proceed with moving forward with a Final Cease and Desist Order against you.

Lilah R. Blackstone, Deputy General Counsel, Office of General Counsel will represent the Department in this matter. A copy of any pleading or other written communication should be delivered to Ms. Blackstone, Department of Insurance, Securities and Banking, 1050 First Street, NE, Suite 801, Washington, DC 20002, or electronically delivered to lilah.blacktone@dc.gov .

Respondent may appear personally at the hearing and may be represented by legal counsel. Respondent has the right to produce witnesses and evidence on Respondent's behalf, to cross-examine witnesses against Respondent, to examine evidence produced, and to have subpoenas issued on Respondent's behalf to require the production of witnesses and evidence.

If Respondent, or any witnesses intended to be call, are deaf or because of a hearing impediment cannot readily understand or communicate the spoken English language, Respondent or Respondent's witnesses may apply to the DISB for the appointment of a qualified interpreter.

Correspondence directed to the Hearing Officer shall be addressed to: Hearing Officer, Department of insurance, Securities and Banking, 1050 First Street, NE, Suite 801, Washington, DC 20002. A copy of any correspondence directed to the Hearing Officer shall also be delivered to Ms. Blackstone at the address stated above.

Respondent's failure to appear at the time and place set for the bearing either

in person or through counsel, or both will not preclude the Hearing Officer's proceeding in the matter and entering an order of default which may result in issuance of a Final Cease and Desist Order pursuant to this Notice.

_____
  Date

_____
  Lilah Blackstone
  Deputy General Counsel
  Office of the General Counsel
  1050 First Street, NE, Suite 801
  Washington, DC 20002
  Telephone: (202) 442-7750

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing SUMMARY CEASE AND DESIST ORDER was, on this _____ day of _____, 2022 mailed first class mail, postage pre-paid, return receipt requested to:

Nick Morgan
Paul Hastings, LLP
515 South Flower Street
25th Floor
Los Angeles, CA 90071

And served by electronic mail to:

contact@investvoyager.com

_____
Signature                                (Date)

Morgan, Partner, Paul Hastings LLP, 515 South Flower Street, 25th Floor, Los Angeles, CA 90071; (7) electronic mail at legal@investvoyager.com; and (8) electronic mail to its counsel, Nicolas Morgan, at nicolasmorgan@paulhastings.com.

By:

Joe Rotunda
State Bar No. 24029808
Division Director, Enforcement Division
Texas State Securities Board
208 E. 10th Street, 5th Floor
Austin, Texas 78701
T: 512-305-8392
F: 512-355-0404
E: jrotunda@ssb.texas.gov