Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | Case No. 22-10943 (MEW) |
| Debtors. | (Jointly Administered) |

**NOTICE OF FILING OF REVISED PROPOSED**
**ORDER PURSUANT TO 11 U.S.C. §§ 327(E) AND 328(A) AND FED.**
**R. BANKR. P. 2014, 2016 AND 5002 AUTHORIZING DEBTOR VOYAGER**
**DIGITAL, LLC TO EMPLOY AND RETAIN QUINN EMANUEL URQUHART &**
**SULLIVAN, LLP AS SPECIAL COUNSEL EFFECTIVE JULY 13, 2022**

**PLEASE TAKE NOTICE** that on July 21, 2022, the above-captioned debtors and debtors

in possession (collectively, the "Debtors") filed *Debtor Voyager Digital, LLC's Application for*

*Entry of An Order, Pursuant to 11 U.S.C. §§ 327(e) and 328(a) and Fed. R. Bankr. P. 2014, 2016*

*and 5002 Authorizing Employment and Retention of Quinn Emanuel Urquhart & Sullivan, LLP as*

*Special Counsel to Voyager Digital, LLC, Effective July 13, 2022* [Docket No. 125]

(the "Application").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file a revised proposed *Order Pursuant to 11 U.S.C. §§ 327(e) and 328(a) and Fed. R. Bankr. P. 2014, 2016 and 5002 Authorizing Employment and Retention of Quinn Emanuel Urquhart & Sullivan, LLP as Special Counsel to Voyager Digital, LLC Effective July 13, 2022* attached hereto as **Exhibit A** (the "Revised Proposed Order").

**PLEASE TAKE FURTHER NOTICE THAT** a comparison between the Revised Proposed Order and the order filed with the Application is attached hereto as **Exhibit B**.

**PLEASE TAKE FURTHER NOTICE** that copies of the Application and other pleadings filed in the above-captioned chapter 11 cases may be obtained free of charge by visiting the website of Stretto at http://www.cases.stretto.com/Voyager.  You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank.]*

Dated:  August 2, 2022
New York, New York

/s/ Joshua A. Sussberg

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:         jsussberg@kirkland.com
               cmarcus@kirkland.com
               christine.okike@kirkland.com
               allyson.smith@kirkland.com

*Proposed Counsel to the Debtors and Debtors in Possession*

## Exhibit A

**Revised Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**ORDER PURSUANT TO 11 U.S.C. §§ 327(e) AND 328(a) AND FED. R. BANKR. P. 2014, 2016 AND 5002 AUTHORIZING DEBTOR VOYAGER DIGITAL, LLC TO EMPLOY AND RETAIN QUINN EMANUEL URQUHART & SULLIVAN, LLP AS SPECIAL COUNSEL EFFECTIVE JULY 13, 2022**

Upon the application (the "Application")[2] of Voyager Digital, LLC ("Voyager LLC"), a debtor and debtor in possession in the above-captioned case, for entry of an order, pursuant to section 327(e) of the Bankruptcy Code, Bankruptcy Rules 2014(a), 2016 and 5002, and Local Bankruptcy Rules 2014-1 and 2016-1, authorizing Voyager LLC employ and retain Quinn Emanuel as its special counsel, effective as of July 13, 2022; and upon the Kirpalani Declaration and Ehrlich Declaration (together, the "Declarations"); and the Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012; and this proceeding being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue of this proceeding and the Application in this Court being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been given; and the Court having found that

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

no other or further notice is needed or necessary; and the Court having found that the relief requested in the Application is in the best interests of the Voyager LLC's estate and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and any objections to the relief requested in the Application having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is hereby **ORDERED** that:

1.        The Application is granted as set forth in this Order.

2.        Pursuant to section 327(e) of the Bankruptcy Code, Voyager LLC is hereby authorized to retain Quinn Emanuel as special counsel, effective as of July 13, 2022, pursuant to the terms and conditions set forth in the Application and the Engagement Letter.

3.        Retention pursuant to section 327(e) of the Bankruptcy Code is appropriate given the specific scope of the proposed retention.

4.        For the avoidance of doubt, and to resolve an informal objection raised by the Office of the United States Trustee, Quinn Emanuel will not perform services for Voyager LLC (or any of the Debtors) that relate to any claim or cause of action that Alameda Research Ventures LLC, Alameda Research Ltd., or Alameda Ventures Ltd. (collectively, "Alameda") may hold against the Debtors, or to any claim or cause of action that the Debtors may have against Alameda; such matters will be handled by the Debtors' general bankruptcy counsel, Kirkland & Ellis, LLP or such other counsel as may be retained by the Debtors.

5.        Quinn Emanuel shall file interim and final fee applications for allowance of its compensation and reimbursement of its expenses with respect to services rendered in these

chapter 11 cases with the Court, in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, this Order, and such other procedures as may be fixed by order of the Court.

6.    Quinn Emanuel shall use its best efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

7.    Prior to any increases in Quinn Emanuel's rates for providing services in these cases, Quinn Emanuel shall file a supplemental affidavit with the Court and provide ten business days' notice to the Debtors, the U.S. Trustee, the Committee, and any other official committee appointed by the U.S. Trustee, which supplemental affidavit shall explain the basis for the requested rate and state whether Voyager LLC has consented to the rate increase.  The U.S. Trustee retains all rights to object to any rate increase on all grounds including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code, and all rates and rate increases are subject to review by the Court.

8.    Notwithstanding anything to the contrary in the Application, the Engagement Letter, or the Declarations attached to the Application, the reimbursement provisions allowing the reimbursement of fees and expenses incurred in connection with participating in, preparing for, or responding to any action, claim, suit, or proceeding brought by or against any party that relates to the legal services provided under the Engagement Letter and fees for defending any objection to Quinn Emanuel's fee applications under the Bankruptcy Code are not approved pending further order of the Court.

9.    To the extent there is any inconsistency between the terms of the Engagement Letter, the Application, and this Order, the terms of this Order shall govern.

10.     Voyager LLC is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

11.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

12.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Date: _____, 2022

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Engagement Letter**

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7200**

WRITER'S EMAIL ADDRESS
**susheelkirpalani@quinnemanuel.com**

July 16, 2022

Voyager Digital, LLC
33 Irving Place
New York, New York 10013
Attn:  Jill Frizzley, Independent Director
        Timothy Pohl, Independent Director
        David Brosgol, General Counsel

Re:    **Limited Engagement For Voyager Digital, LLC Special Committee**

Dear Ms. Frizzley and Messrs. Pohl and Brosgol:

We are pleased to confirm the engagement of Quinn Emanuel Urquhart & Sullivan, LLP ("**QEU&S**") to act as special counsel to Voyager Digital, LLC ("**Voyager LLC**" or "**you**" or "**Client**") to render independent services at the sole direction of the special committee of Voyager LLC (the "**Special Committee**"), comprising Mr. Timothy Pohl and Ms. Jill Frizzley, (the "**Independent Directors**"), in connection with  the Special Committee's (a) investigation of any historical transactions, public reporting, or regulatory issues undertaken by or relating to Voyager LLC, (b) investigation with respect to any potential estate claims and causes of action against insiders of Voyager LLC, and (c) any matters otherwise within the Special Committee's mandate (hereinafter, the "**Engagement**").  The purpose of this letter is to confirm the terms and conditions upon which QEU&S will provide legal services as special counsel to Voyager LLC, as debtor and debtor in possession, pursuant to section 327(e) of the Bankruptcy Code.

*Client*

We have only been engaged for a specified purpose to provide advice to, and to act on behalf of Voyager LLC, acting through the Special Committee.  We do not represent and will not be deemed to have been retained by any of Voyager LLC's direct or indirect shareholders and affiliates, including affiliates of Voyager LLC, or by any of their other respective directors, employees, owners, founders, members, shareholders, subsidiaries or partners, or any other person or entity affiliated with the Client by virtue of the Engagement (hereinafter, the "**Affiliates**," with Voyager LLC, the "**Company**").  The Independent Directors shall direct our work in this matter on behalf of the Client and shall control any attorney-client, work product or other privilege or protection from disclosure in connection with our representation.  The directors or managers of the

**quinn emanuel urquhart & sullivan, llp**
LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON | SALT LAKE CITY
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

Affiliates shall not access the work or privileged material of QEU&S, except as permitted by the Independent Directors.

We understand you have engaged Kirkland & Ellis LLP ("**K&E**") as general bankruptcy counsel to the Company pursuant to section 327(a) of the Bankruptcy Code. Given the scope of the Engagement, the services rendered and functions performed by QE will not be duplicative of work performed by K&E or any other professionals retained by the company.

### Scope of Engagement

You have engaged QEU&S to represent you in connection with the Engagement. QEU&S's services will be limited to the representation of Client in the Engagement. Our services will not extend to other business, personal or legal affairs of Client, or to any other aspect of Client's activities. Our representation will conclude with the restructuring or reorganization of Voyager LLC's assets and liabilities including any potential claims that Voyager LLC may possess against any of its insiders, including claims that could be prosecuted, settled, or released under title 11 of the United States Code, or for any of the reasons stated in the Date of Commencement and Termination of the Engagement section of this letter. QEU&S's receipt or use of confidential or other information from Client or others in the course of this representation does not mean that QEU&S will render any other advice or services either to Client or any other person or entity. Similarly, Client will not look to or rely upon QEU&S for any investment, accounting, financial or other non-legal advice, including without limitation any advice regarding the character or credit of any person with whom Client may be dealing.

### Insurance Coverage and Claims

You understand and agree that QEU&S is not being engaged to advise regarding the existence of any insurance coverage in connection with the circumstances of the Engagement or to advise or assist in the formulation or submission of any insurance claim in connection with the Engagement. If you have not done so already, you should consider tendering this matter to your insurer(s), in order to determine whether there is insurance coverage for any of the claims asserted. Subject to ascertaining whether there are any conflicts, we are happy to expand the Engagement to include such advice, if requested and agreed in writing.

### Responsible Persons – Communications Between QEU&S and Client

We will report directly to the Independent Directors and keep the Independent Directors regularly and currently informed of the status of the Engagement and will consult with them whenever appropriate. Within QEU&S, I will be primarily responsible for the Engagement. My telephone number is **(212) 849-7200** and e-mail address is susheelkirpalani@quinnemanuel.com. It is my policy that all calls will be returned promptly and, in any event, no later than within one business day of receipt of the call; if you have not received a return call within that time, please call again. In the event of an emergency, please call my assistant, Nafeeza Subhan, at (212) 849-7158 and my assistant will endeavor to reach me as soon as practicable thereafter.

***Protection of Client Confidences – High Tech Communication Devices***

We are always mindful of our central obligation to preserve the precious trust which our clients repose in us--their secrets and confidences.  We take this duty very seriously and, except to the extent permitted by the applicable rules of professional conduct, we will not disclose any confidential information of yours to any other client or person.  Similarly, we cannot disclose to you the confidences of any other client, even when such information relates to matters that might affect you.

In order to meet our obligation to preserve your confidences, it is important that we agree from the outset what kinds of communications technology we will employ in the course of this Engagement.  Unless you specifically direct us to the contrary, for purposes of this Engagement, we agree that it is appropriate for us to use fax machines and e-mail in the course of the Engagement without any encryption or other special protections.  Please notify me if you have any other requests or requirements in connection with the methods of telecommunication relating to the Engagement.

***Self-Representation***

QEU&S has designated one of the firm's partners to act as the firm's General Counsel (the "**General Counsel**").  The General Counsel acts as a lawyer to the firm, representing QEU&S in a variety of professional and legal matters and helping attorneys at the firm to comply with their professional and ethical responsibilities to clients.  Among other things, the General Counsel provides QEU&S and its attorneys with legal advice concerning professional responsibilities, potential or actual professional liabilities, and other matters.  QEU&S also retains outside counsel from time to time to provide similar legal advice to the firm.  It is possible that attorneys or staff working on matters for Client may, from time to time, consult with the General Counsel or QEU&S's outside counsel on matters related to our representation of Client.  In the course of such consultation, QEU&S's attorneys and/or staff may disclose to the General Counsel or QEU&S's outside counsel privileged information concerning Client's representation, and may receive legal advice related to QEU&S's work on Client's matter, which legal advice QEU&S may or may not disclose to you. QEU&S views such consultations as privileged and not discoverable by anyone, not even the clients about whom such a consultation may take place.  By retaining QEU&S, Client acknowledges and consents to QEU&S's attorneys and staff consulting with the General Counsel or QEU&S's outside counsel as they deem necessary, both during QEU&S's representation of Client and after such representation ends, and Client confirms that such communications are privileged and protected against disclosure to you.

***Responsibilities of Client***

In order to represent you effectively, it is important that you provide us with complete and accurate information regarding the subject matter of the Engagement, and that you keep us informed on a timely basis of all relevant developments.  In addition, it is important that Client and its officers and employees provide us with timely assistance and cooperation in connection with the Engagement.

### Preservation of Electronically Stored Information ("ESI")

Recent changes in the Federal Rules of Civil Procedure, Federal Rules of Evidence, and case law addressing electronic discovery have profoundly altered the obligations of the parties involved in litigation and their counsel. An understanding of these changes, which relate to the duties of preservation and discovery of electronically stored information ("**ESI**"), is an essential prerequisite to the development of a successful litigation strategy for every client. The duty to preserve potentially relevant information is triggered when litigation is reasonably anticipated or commenced, and the failure to comply with these rules can have dire consequences (including sanctions ranging from monetary penalties, to entry of a default against you/your action being dismissed. In the event Client has not already issued a litigation hold in this matter, we request that you immediately do so. We would be pleased to assist you with preparing the litigation hold and otherwise providing guidance on the duties related to preservation of ESI.

### No Guarantee of Result

In providing legal advice to you, I or others at QEU&S may from time to time express opinions or beliefs regarding the likely effectiveness of various courses of action or about results that may be anticipated. You understand that any such statements are opinions and beliefs only and are not promises or guaranties. We cannot and do not guarantee any particular course or outcome of the Engagement.

### Conflicts Issues

Our firm has many lawyers and several offices. We may currently or in the future represent one or more other clients in matters involving Voyager LLC, and we may represent parties that are adverse to Voyager LLC in matters unrelated to the Engagement. We are undertaking this Engagement on condition that we may represent other clients in matters in which we do not represent Voyager LLC even if the interests of the other clients are adverse to the Client's (including the appearance on behalf of another client adverse to the Client in litigation or arbitration), provided that the other matter is not substantially related to our representation of the Client in connection with the Engagement and that in the course of representing the Client we do not obtain confidential information from the Client material to the representation of the other client. The Client's express consent to this arrangement is required because of its possible adverse effects on the performance of our duties as attorneys to remain loyal to each client, to maintain client confidences, and to render legal services with vigor and competence. Also, if an attorney does not continue an engagement or is required to withdraw from a matter, the client may incur delay, prejudice or additional cost associated with acquainting new counsel with the matter.

We have disclosed that QEU&S represents Alameda Research Ltd., Alameda Ventures Ltd. and certain other affiliates ("**Alameda**") in a general advisory role, including with regard to cryptocurrencies. Alameda has retained another firm to represent it before the Bankruptcy Court overseeing the Company's chapter 11 cases, and the Engagement does not include QEU&S investigating or asserting any claims against Alameda. Given the lack of overlap in scope between this limited Engagement and our representation of Alameda (which for the avoidance of doubt will not include future advice regarding the Company or these chapter 11 cases), we believe our

4

continued representation of Alameda is appropriate and Alameda has consented to the Engagement. As a condition of this Engagement, any attorney that has provided or will provide advice to Alameda will be walled off from this Engagement, and that no confidential information about Voyager LLC or its Affiliates will be shared with Alameda. You agree to waive any conflict of interest arising out of Quinn Emanuel's representation of Alameda in matters unrelated to the Engagement.

### Bankruptcy Provision

Notwithstanding anything herein to the contrary, we agree to comply with the fee application process and guidelines for payment of fees and reimbursement of expenses imposed by law and any order of the Bankruptcy Court.

### Billings

Our fees are based on the amount of time we spend on this Engagement. Each QEU&S attorney, legal assistant and other timekeeper assigned to this Engagement will have an hourly billing rate. These billing rates, which are set based upon seniority and expertise, are subject to adjustment annually and we will notify you of these changes thirty days in advance of their going into effect. In addition, our associate rates are based on years out of law school, so annually on September 1, each associate's rate moves up to the next higher class rate on our rate schedule; for example, on September 1, 2022, a class of 2021 graduate's rate will move up from a first-year associate rate to a second-year associate rate, and so on. These "class graduation" adjustments are not rate increases, and Client acknowledges and agrees to these associate class adjustments by signing this letter. The standard billing rates of the attorneys whom we anticipate assigning to this Engagement currently range from $2,130 (Susheel Kirpalani) to $830 (first-year associate). We are able to provide you with a 10% discount on our standard billing rates for all timekeepers, which will be applied to the total fees in each invoice. If one of our professionals performs multiple tasks for you during the course of a day, our statement will describe those tasks in a continuous narrative form accompanied by a single time entry for all tasks, a practice known as "block billing." You agree that we may provide our invoices in this manner.

### Estimates

Client understands that it is impossible to determine in advance the amount of fees and costs needed to complete any given matter. From time to time during the course of our Engagement we may provide Client with estimates of costs and fees or projected budgets for our work going forward. Ordinarily, we do not provide these projections unless Client specifically requests us to do so. When we do provide them, we will make a good faith effort to estimate what the future cost will be. However, in no case can such projections be guarantees regarding what the actual cost will be. The cost of litigation may change dramatically based on factors we do not control, including actions taken by our adversary, rulings by the court, or other developments in the litigation. In all instances when we provide such projections, they should be viewed as guidance only. The fees and costs which Client will be liable for will be based on our time charges as set forth in this agreement, and not on any such projections.

*Ancillary Costs*

We will charge separately for certain ancillary services we provide, such as facsimile charges, secretarial and paralegal overtime and word processing. We pass along out-of-pocket costs and charges that we incur on our clients' behalf. These typically include messenger charges, deposition videography and transcript charges and administrative charges. Other charges are based on market, not cost, including service of process, document reproduction ($0.24/page), color document reproduction ($1.00/page), binders, tabs, tab creation, manila folders, redwelds, binding, punching, black and white scanning ($0.18/page), color scanning ($1.50/page), black and white oversized scanning ($0.40-$1.50/page), color oversized scanning ($2.25-$12.50/page), black and white blowbacks ($0.15/page), color blowbacks ($1.00/page), slipsheets ($0.03/page), native file printing ($0.18/page), TIFF generation ($0.02/page), OCR ($0.02-$0.03/page), ECA filtering $15-$75/GB), data processing ($50-$150), image endorsement ($0.02/page), media creation and duplication ($15-$400), document coding ($0.88-$1.50/document), hosting ($10-$20/GB) and litigation support consulting at hourly rates of $175 to $365 per hour, depending on the work performed. Additionally, we charge for computerized legal research (Westlaw or Lexis fees, without any applicable discount), travel costs, meal charges and parking charges (when we are working exclusively on your matter), filing fees, telephone toll charges, fees for experts and other consultants retained on Client's behalf, and similar charges. Our charges may also include cellular or air telephone charges that are not related to the representation, but are necessarily incurred while we are traveling on a client's case. These charges will be at cost. The costs listed are the current rates but may be subject to future adjustment. Client agrees that the ancillary costs described in this paragraph are costs to be paid in addition to our hourly billings, are not "overhead," and are payable separate and apart from our hourly billings in the event of any dispute.

In some cases, particularly if the amount is large, we may forward an invoice from an outside vendor or service directly to Client for payment, which will also be due and payable upon receipt. Failure to pay such invoice upon request will be grounds for us to withdraw from our representation.

In the event Client has supplied us with billing guidelines that are inconsistent with the terms of this Engagement Letter, Client agrees that the terms of this Engagement Letter shall apply unless a copy of Client's billing guidelines are attached to this Engagement Letter countersigned on behalf of QEU&S, in which event Client's billing guidelines shall control.

We will submit bills on a monthly basis. All bills shall be paid within thirty days of receipt by you. The obligation to pay our bills is solely yours and is not contingent upon any judgment or settlement; any right you may have for reimbursement, indemnification, insurance or the like; or your receipt of any other form of payment you may expect to receive from some other party. We reserve the right at our sole discretion to charge interest of 6% per month on invoices that are 90 days or more past due. If Client has any question regarding, or wish to challenge any bill, Client shall notify us promptly of any such question or challenge, and shall in any event pay any portion of such bill that is not subject to question or challenge. Notwithstanding the foregoing and for the avoidance of doubt, the billing and payment provisions described herein are subject to the "Bankruptcy Provision" in this Engagement Letter.

### *Award of Costs and Fees*

A court may sometimes order a payment of costs or attorneys' fees by one party to the other. If any fees or costs are paid to us, they will be credited against any amounts Client owes us, but Client will be obligated for any unpaid portion of our statements as they become due. Payment of our statements may not be deferred pending a ruling on an application for attorneys' fees, costs or sanctions or pending the receipt of such an award. Any fee or cost award received from another party will be credited to Client's account, unless it results in a credit balance. If it does, we will refund the balance to Client. If a court awards fees or costs against Client and in favor of an opposing party, Client will be responsible for payment of that amount separately from any amounts due to us.

### *Termination*

Above all, our relationship with you must be based on trust, confidence and clear understanding. If you have any questions at any time about this letter or the work that the firm, or any attorney, is performing, please call me or, if you prefer, John Quinn in our Los Angeles office at (213) 443-3000, to discuss it. You may terminate this representation at any time, with or without cause. Subject to the application of the applicable rules of professional responsibility, we also reserve the right to withdraw if, among other things, you fail to make timely payment of any invoice, you fail to cooperate or follow QEU&S's advice on a material matter, or any fact or circumstance arises that, in QEU&S's view, renders our continuing representation unlawful or unethical. Any termination of our representation of you would be subject to such approval as may be required from any court(s) in which we are appearing on your behalf. In the event of termination by either of us, fees and costs for work performed prior to termination will still be payable to the extent permitted by law.

### *Date of Commencement and Termination of the Engagement*

The effective date of our agreement to provide services is the date on which we first performed services. The date at the beginning of this letter is for reference only. If this letter is not signed and returned for any reason, Client will be obligated to pay us the reasonable value of any services we have performed as well as the costs we have incurred on Client's behalf.

QEU&S's representation of Client will be considered terminated at the earliest of (i) Client's termination of the representation, (ii) QEU&S's withdrawal from the representation, (iii) the completion of QEU&S's substantive work for the Client, or (iv) following 60 days of inactivity by QEU&S on the matter.

### *File Retention and Disposition*

After the Engagement has concluded, and subject to payment of all outstanding fees and disbursements, you may request the return of files pertaining to the Engagement. Client's files will be released only following delivery to QEU&S of a signed release letter containing appropriate directions and acknowledgment of the obligation to pay outstanding fees. QEU&S may charge you for the reasonable costs of retrieval, assembly, copying and transfer of all files or materials in any format. It is our practice to retain the permanent records of the matter, in

accordance with our records retention policy, for a period of not less than 7 years after the Engagement has ended. If you do not request the files in writing before the end of our retention period, upon the expiration of that period we will have no further obligation to retain the files and may, at our discretion, destroy the files without further notice to you.

### *Other Litigation or Proceedings*

If, as a result of this Engagement, and even if the Engagement has ended, we are required to produce documents or appear as witnesses in any governmental or regulatory examination, audit, investigation or other proceeding or any litigation, arbitration, mediation or dispute involving Client or related persons or entities, Client shall be responsible for the costs and expenses we reasonably incur (including professional and staff time at our then-standard hourly rates). Similarly, if we are sued or subjected to legal or administrative proceedings as a result of our representation of Client in this matter (including unmeritorious disqualification proceedings), Client agrees to indemnify us for any attorney's fees and expenses (including our own professional and staff time at our then-standard hourly rates) we incur as a result. This paragraph is not intended to apply to any claim brought by or on behalf of Client alleging wrongdoing by QEU&S.

### *Disputes*

Although we think it is unlikely, it is possible that a dispute may arise between us regarding some aspect of the Engagement and our representation of you. If the dispute cannot be resolved amicably through informal discussions, the parties hereto irrevocably submit to the exclusive jurisdiction of any federal or state court located within New York, New York and any appellate court thereof over any dispute arising out of or relating to the Engagement and each party hereby irrevocably agrees that all claims in respect of such dispute or any suit, action proceeding related thereto may be heard and determined in such courts. The parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

WAIVER OF RIGHT TO TRIAL BY JURY. EACH PARTY TO THIS AGREEMENT WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, MATTER OR PROCEEDING REGARDING THIS AGREEMENT OR ANY PROVISION HEREOF.

The Engagement shall be governed by the laws of the State of New York, without regard to the conflict of law provisions thereof that would result in the application of the law of another jurisdiction.

### *Binding Agreement*

By signing below, Client agrees that Client has had enough time to review this letter, that we have advised you that Client has the right to consult another, independent lawyer about the provisions relating to the waiver of conflicts of interest and any other aspect of this letter as to which Client may wish to avail itself of such advice, and that Client is satisfied that it understands this letter.

Client also agrees that Client has the freedom to select and engage the counsel of its own choice and accordingly that this is an arm's length agreement between parties of equal bargaining strength and that Client has freely determined, without any duress, to sign and agree to these terms.

### *Severability*

Should any part of this Agreement, or language within any provision of this Agreement, be rendered or declared invalid by a court of competent jurisdiction, such invalidation of such part or portion of this Agreement, or any language within a provision of this Agreement, should not invalidate the remaining portions thereof, and they shall remain in full force and effect.

### *Amendments and Additional Engagements*

The provisions of this letter may only be amended in writing, signed by both parties.

If Client later asks us to take on additional assignments, we will send you a supplementary engagement letter reflecting each additional assignment.

If the foregoing accurately reflects our agreement, please confirm that by signing and returning one of the enclosed copies to me. Please do not hesitate to call me to discuss any questions you may have regarding this agreement. In conformance with QEU&S's policies, we cannot commence work on this Engagement until we have received a copy of this letter countersigned by you.

Thank you again for this opportunity to be of service. We look forward to working with you on this Engagement.

Sincerely,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Susheel Kirpalani

Encl.

**[STATEMENT TO BE SIGNED BY CLIENT:]**

I have read the above Engagement Letter and understand and agree to its contents.  The parties to this Engagement hereby agree that a faxed, pdf or electronic signature shall count as the original.

Voyager Digital, LLC:

DocuSigned by:

By: _____

Name: __David Brosgol_____
      139EC73A2D4F474...

Title: __General Counsel_____

Date: __7/16/2022_____

cc: Joshua Sussman, Esq.

99999-77016/13501658.4

PRIVILEGED & CONFIDENTIAL, ATTORNEY-CLIENT COMMUNICATION

# GUIDELINES ON PRESERVATION AND PRODUCTION OF ELECTRONICALLY STORED INFORMATION

## INTRODUCTION

Some preliminary background information may assist you in understanding the legal duties now applicable to the preservation and production of electronically stored information. Advancements in information technology have fundamentally changed how we communicate with one another and how companies do business. These changes have resulted in the development of new rules governing discovery in litigation. These new rules are an attempt by our courts to adapt to the changes in today's business world and society which these technological innovations have produced.

These new rules relate to "electronic discovery" and are referred to as "e-discovery rules." Because electronically stored information ("**ESI**") is particularly vulnerable to accidental deletion, modification or corruption, courts have imposed new duties on both parties and their attorneys to preserve ESI. The new e-discovery rules were enacted to address problems unique to electronic discovery. As used in these guidelines, ESI refers to any type of electronic data or information in any type of format. So long as electronic data is in a fixed tangible form and is capable of being electronically stored, even temporarily, the e-discovery rules apply.

All parties are required to follow these e-discovery rules regardless of how simple or sophisticated their computer system. In other words, it does not matter whether a party is an individual, partnership, joint venture, sole proprietorship or mega-corporation. Nor does it matter whether a party has a single laptop computer or a massive computer network. If a party has any device that generates or stores ESI, whether it be a bank of servers or a single "thumb" drive, a Blackberry, cell phone or any other type of electronic storage device, the e-discovery rules apply.

The duty to preserve potentially relevant ESI is triggered whenever litigation is "reasonably anticipated." The process by which a party identifies and preserves potentially relevant information or evidence including ESI is generally referred to as a "**litigation hold**," and that is how we will refer to the process in these guidelines. The imposition of a litigation hold, among other things, requires the suspension of any document retention/destruction policies or any automated features of a party's computer or email systems that could result in the loss, destruction or deletion of ESI or paper records. For example, if a party recycles its back-up tapes or if its email system automatically deletes emails after a specified time frame, those processes have to be stopped, at least until the party can develop an appropriate strategy for preserving potentially responsive ESI. Otherwise sanctions can be imposed if relevant ESI is lost or destroyed.

The new e-discovery rules mandate a heightened level of cooperation between clients and their counsel in locating and preserving potentially relevant ESI. The new duties which these rules impose on both clients and their counsel profoundly affect the relationship between them. Additionally, the e-discovery rules can dramatically increase the cost of discovery and materially affect how litigation is conducted. Before explaining how electronic discovery works under these rules, it is important to understand how the responsibility for e-discovery compliance has been allocated between clients and their counsel.

### RESPECTIVE DUTIES OF CLIENTS AND THEIR COUNSEL RELATIVE TO E-DISCOVERY

In *Zubulake v Warburg LLC*, 229 F.R.D. 422, 431 (S.D.N.Y. 2004) (*Zubulake V*), a case generally followed throughout the country, the court held that in order to avoid the imposition of discovery sanctions, a party "must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." The court explained that "a party and its counsel must make certain that all sources of potentially relevant information are identified and placed 'on hold.'" 229 F.R.D. at 432. To accomplish this the court explained counsel should:

- Become fully familiar with the client's document retention policies, and data-retention architecture including system-wide backup procedures, recognizing that this will invariably involve speaking with the client's IT personnel; and

- Communicate with "key players" in the litigation to understand how they store information.

The court in *Zubulake* observed that a party's e-discovery obligations do not end with the implementation of a litigation hold. It noted that a party has an ongoing duty to preserve relevant information while the lawsuit remains pending. The court explained that it was not sufficient for counsel to simply notify the client about the need to impose a litigation hold and assume the client will preserve and produce relevant information. Rather, the court concluded that counsel should oversee compliance with the litigation hold and outlined three steps that counsel should take to confirm that the client is complying with its preservation obligation:

*First,* counsel must issue a litigation hold at the outset of litigation or whenever litigation is reasonably anticipated. The litigation hold should be periodically re-issued so that new employees are aware ot it, and so it is fresh in the minds of all employees.

*Second,* counsel should communicate directly with the 'key players' in the litigation so that the preservation duty is clearly communicated to them. As with the

2

99999-77016/13501658.4

litigation hold, the key players should be periodically reminded that the preservation duty is still in place.

*Finally,* counsel should instruct all employees to produce electronic copies of their relevant active files, and make sure that all backup media which the party is required to retain has been identified and properly preserved.

*Zubulake V,* 229 F.R.D. at 433-34.

These action steps must be taken at the outset of any lawsuit, and then periodically repeated throughout the litigation. Moreover, attorneys have a continuing obligation to monitor a client's efforts to preserve and produce ESI. It is essential that a client fully cooperate in the process, understanding that these obligations are imposed on all parties as a matter of law, and not by the whim of counsel. Sanctions for noncompliance with these e-discovery obligations can be imposed on both client and counsel alike. Should such a motion ever be filed, it could trigger a number of additional issues that we would need to discuss with you.

Please also be aware that in some cases, e-discovery may generate a significant increase in the cost of defending a lawsuit and in the diversion of personnel and resources needed to address a party's e-discovery obligations. The expense involved in locating, reviewing and producing ESI in some cases may be so significant as to warrant serious consideration of an early resolution of the claim. In other cases, e-discovery costs may have little or no impact on litigation or settlement strategies and merely represent expenses that are now incurred at the beginning of the case, rather than at a later point in time.

WRITTEN GUIDELINES FOR COMPLIANCE WITH THE RULES GOVERNING ESI

The written guidelines set out below are not intended to serve as a mechanical checklist applied in an identical manner in all cases. The process of identifying, preserving and producing ESI can be a highly complex undertaking. There is no "one size fits all" set of rules when it comes to e-discovery. Rather, the principles discussed below should guide you in implementing a process to preserve and produce ESI, tailored to the complexities of a given matter.

1.    *When the Duty to Preserve Evidence is Triggered*

Various statutes and regulations require the preservation of specific types of information in a variety of contexts. However, in the absence of such a statute or regulation, for litigation purposes the duty to preserve is triggered at that point in time when litigation, a governmental investigation, or any adversarial proceeding or process is "reasonably anticipated." When litigation is "reasonably anticipated" requires a reasoned, good-faith analysis of all relevant facts and circumstances.

When a duty to preserve is triggered, the parties should immediately begin the process of attempting to locate and preserve any potentially relevant ESI, regardless of its source or location (*e.g.*, desktop or laptop computer, network server, thumb drive, backup tapes, digital audio recording, voice mail etc.). The duty to preserve continues through the pendency of the proceeding, and includes any relevant evidence that is created *during* the course of the proceedings.

**If you have not already done so, please institute a "litigation hold" on any potentially relevant ESI or other information in accordance with these guidelines.**

2.      *Identify Key Personnel*

"Key Personnel" should be immediately identified for several reasons; first so that they can be notified in writing about their duty to preserve evidence, and second, so that any potentially relevant ESI in their possession, custody or control can be located and preserved. Key Personnel are those individuals who were involved in any aspect of the matter at hand, as well as those individuals who either have or claim to have some knowledge of the matter or any defenses that relate to it, or to the claimed injury or resulting damages, and/or who have in their possession or under their control ESI or any other form of potentially relevant evidence.

The effort to identify the Key Personnel and locate potentially relevant information in their possession should focus on the assertions made and any potential defenses to those assertions. It will also be helpful to identify any other employees or third parties with whom Key Personnel had contact involving the relevant issues so that emails, letters and other communications to and from those individuals or physical evidence in their possession, custody or control can be located and preserved.

**Please prepare a list of all Key Personnel for when we meet in the near future. Please include the work or home addresses, email addresses and phone numbers (for those individuals no longer in your employ), so that we can follow up with them to verify that they have been notified about the need to preserve ESI, understand the ramifications if they fail to do so and to learn how they store information.**

You should expect that at an early stage of this matter our opponent will request a deposition or ask to interview the person(s) most knowledgeable about your computer, email, and record keeping systems. Please identify who that person is or who those persons are, and provide their contact information at our initial meeting. We may ask that one of them attend our initial Rule 26 scheduling conference with opposing counsel if available. **Additionally, please designate someone who could serve as your e-discovery liaison or as our contact person should questions arise about your computer, email or record keeping systems.**

4

3.      *Content and Scope of Litigation Hold Notice*

You should notify Key Personnel in writing about their duty to preserve any evidence, be it paper records or ESI, which is potentially relevant to this matter or any defenses that could be asserted.  The written hold notice should broadly describe the nature of the claims being asserted and any defenses to the claims so that your Key Personnel do not inadvertently delete or destroy any potentially relevant ESI or paper records.  Your written hold notice should also explain the potential types of ESI that should be preserved and where potential sources of that ESI may be found.  We have included a list of possible sources in guideline 6 below.  The written hold notice should also explain that sanctions could be imposed in this matter if they fail to preserve relevant information and that the sanctions could range anywhere from the imposition of a large fine to the entry of [a default judgment/the dismissal of the claim].

The written hold notice should be broadly disseminated.  The notice should be sent to Key Personnel, to the IT, Information Management and/or Risk Management departments (where applicable), to the persons in charge of departments such as Human Resources, Product Development, Marketing, or any other department where potentially relevant ESI may be located, and to any department heads in which Key Personnel are employed.  In addition to the litigation hold notice, those department heads should be provided a list of Key Personnel in their respective departments who you believe may be in possession of potentially relevant ESI.  Department heads should be instructed that if they are aware of any other person who may have possession of potentially relevant ESI, they should immediately notify that employee of the litigation hold and also notify a designated member of your legal department who should promptly send a copy of the hold notice to that employee.

Consider designating a member of your legal department to answer any questions which anyone may have about the litigation hold process.  You also should consider including a statement in the litigation hold notice explaining that should anyone have a question about the litigation hold process or the obligation to preserve ESI, that they should immediately contact the designated member of your legal department.

The litigation hold notice should periodically be resent to the original Key Personnel and any new employees who have access to potentially relevant ESI which is subject to your litigation hold so they do not inadvertently delete or destroy it.  As a lawsuit matures, the litigation hold may need to be modified as issues are added or evolve.  Additional employees may need to be notified about the hold when new claims or issues are added or when our opponent's liability theory changes.  We will discuss these points with you at our initial meeting.

A party's litigation hold process has been held to be deficient when senior management was not involved in the process.  Accordingly, we recommend that the

5

written hold notice be issued either by a member of senior management or by a senior member of your legal department.

Please notify all Key Personnel that we will be contacting them to discuss the topics noted above, and please alert the head of your IT department that we will need to speak with IT staff to learn about your email and information systems, data-retention architecture and document retention practices.

4.    *The Duty to Preserve Includes ESI on Home or Personal Computers or PDAs*

Your written hold notice should advise Key Personnel and others who receive the notice that any potentially relevant ESI created or stored on home or personal computers, PDA's or at locations other than your office(s) or business (locations) must also be preserved, regardless of whether that ESI was transmitted to you, or is now in your possession or is available elsewhere. The existence of potentially relevant ESI on home or external computers or PDA's can raise sensitive privacy issues. The law nevertheless requires that relevant information on home computers or storage devices be preserved and treated in exactly the same way as the ESI located on your business systems.

5.    *The Duty to Preserve Includes ESI in the Possession of Third Parties Under Your Control*

The obligation to preserve potentially relevant evidence extends beyond the ESI in your immediate possession. The duty to preserve potentially relevant ESI extends to any third party who is subject to your direction and under your control. For example, if you have outsourced any accounting, computer or business functions to a third-party vendor ("Application Service Provider"), or have transferred any archived data to a third-party storage facility, you must instruct that third party to preserve any potentially relevant ESI in its possession. Accordingly, you should immediately notify any such third party about the obligation to preserve any of your ESI in its possession. **Please provide us with the current contact information for any third parties who may be in possession of potentially relevant evidence**, including ESI, so that we may follow up and request that they take steps similar to those described in these guidelines.

6.    *Potential Sources of ESI*

The following list is intended to provide examples of the types, sources and formats of ESI that should be located and preserved, where applicable, pursuant to the litigation hold issued in connection with this matter. Because we have not yet spoken with your IT department, we recognize the foregoing list could be over or under inclusive. Thus, you may want to consult with your IT department to tailor the information provided in this guideline. However, you should consider including the type of information outlined below in your written hold notice so that your Key Personnel and others who were sent that notice do not overlook a source or type of potentially relevant ESI:

**Digital Communications** (*e.g.*, e-mail, voicemail, instant messaging (if logged));

6

**Electronic Mail Logging and Routing Data;**

**Word Processing Documents** (*e.g.,* Word or WordPerfect documents and drafts);

**Spreadsheets and Tables** (*e.g.,* Excel or Lotus 123 worksheets);

**Accounting Application Data** (*e.g.,* QuickBooks, Money, Peachtree data files);

**Image and Facsimile Files** (*e.g.* PDF, TIFF, .JPG, GIF, DICOM images);

**Sound Recordings** (*e.g.,* .WAV and .MP3 files);

**Video and Animation** (*e.g.,* .AVI and .MOV files);

**Databases** (*e.g.,* Access, Oracle, SQL Server data, SAP);

**Personal Data Assistants (PDAs)** (*e.g.,* Blackberry, PalmPilot, HP Jornada);

**Contact and Relationship Management Data** (*e.g.,* Outlook, ACT);

**Calendar and Diary Application Data** (*e.g.,* Microsoft Outlook PST, Lotus Notes, third-party internet calendars through mail accounts - Yahoo and Hotmail);

**Online Access Data** (*e.g.,* Temporary Internet Cache Files );

**Presentations** (*e.g.,* PowerPoint, Corel Presentations);

**Network Access and Server Activity Logs;**

**Project Management Application Data** and related documents;

**Computer Aided Design/Drawing Files;** and,

**Backup and Archival Files** (*e.g.,* Zip, GHO).

In addition to preserving the electronic data or files themselves, as explained below you must also preserve all archived data or backup media which may contain potentially relevant ESI until otherwise directed by counsel. This includes magnetic and optical media, hard drives, floppy disks, backup tapes, Jaz cartridges, CD-ROMs and DVDs. Any software necessary to review the data contained on these media also must be preserved. If any backups are made in realtime via the web (*e.g.,* LineVault, e-Vault), they must be preserved and the third party handling this data must be contacted to assist in its retention.

In order to prevent data loss due to normal replacement of outdated computers, systems, hardware or software, you should also preserve all computers, hardware and software no longer in use that were used during the relevant timeframe until it has been

7

verified that no potentially relevant ESI is stored on those computers or systems. This includes any servers, desktops, laptops, hard drives, and all associated hardware and software applications.

Some systems have the capability to capture or log instant messages (IM), if that feature has been activated. Does your system have the capability to log IM and, if so, has that feature been activated? Do you have any policy concerning the use of IM for business purposes? If so, please provide us with a copy of that policy at our initial meeting.

If your IT staff has developed a data map covering any aspect of your computer, email or record keeping systems, sometimes referred to as a "topology," please have a copy available at our initial meeting because it will hopefully reduce the amount of time we need to spend with your IT staff learning about those systems.

7.    *Preservation Obligations*

The law governing the preservation of ESI also applies to other forms of evidence, including your paper records. No potentially relevant evidence should be altered or destroyed. Rather, it should be maintained in the way it is kept in the ordinary course of business. All copies, including all duplicates should be preserved. Even if paper copies have been made of electronic files, you should preserve the original electronic files.

The potential for accidental deletion, destruction or corruption of ESI makes it essential that prompt steps be taken to preserve relevant information. Delay in doing so increases the possibility that relevant ESI may lost, thereby exposing you to sanctions. Thus, it is important to quickly act to preserve ESI. The obligation to preserve does not require imaging all computers and email, or freezing all electronic documents and data. Absent extraordinary circumstances, the preservation obligation need only involve steps reasonably necessary to secure potentially relevant evidence necessary for a just and fair resolution of the issues presented.

In some instances, however, it may be prudent to make a forensically sound mirror image of certain computer hard drives to avoid the accidental deletion of ESI due to everyday computer usage. In matters where an employee is believed to have electronically misappropriated company information or property; where particularly critical evidence is recognized to exist on a specific hard drive; where potentially relevant information has been recently deleted and may need to be reconstructed; or where the way in which a computer was used appears to be a potential issue in the case, imaging the computer(s) involved should be considered. In such cases, a bit-by-bit copy of the hard drive should promptly be made. Consider whether to employ a qualified *outside expert,* rather than using your internal IT personnel to complete that work. The use of an outside forensic computer expert will help to insulate you from any adverse consequences resulting from the errant handling of the evidence and will limit the need for your IT personnel to become potential witnesses in the litigation.

8

To prevent the inadvertent destruction of potentially relevant ESI, you are obligated to:

(1) discontinue the destruction of potentially relevant information pursuant to any document retention/destruction policy and/or any automated features of your systems that delete or overwrite information;

(2) temporarily stop the recycling of all backup tapes until otherwise directed by counsel;

(3) preserve any storage devices containing potentially relevant information until the information has been preserved or if necessary, until a forensically sound replica (bit by bit mirror image) is made;

(4) temporarily refrain from installing new software that might overwrite potentially relevant data;

(5) maintain properly working virus protection software to protect the data from loss;

(6) preserve any website content and links;

(7) preserve all login ID's, names and passwords, decryption procedures (and accompanying software), network access codes, manuals, tutorials, written instructions, decompression software;

(8) maintain all other information and tools needed to access, review or reconstruct potentially relevant electronic data;

(9) preserve (do not recycle or dispose of) any computers that may have been used during the relevant timeframe;

(10) preserve (do not reuse) computers of key employees who leave or have left your business until the all relevant information has been preserved; and

(11) suspend all maintenance procedures that could result in the deletion of ESI, including disk defragmenting, on computers that may contain relevant information until any relevant ESI stored on those computers has been preserved or until a forensically sound copy of the hard drive has been made, if necessary.

If you have any document retention or document destruction policy, please provide us with a copy of that policy at our initial meeting. If there is a person who is responsible for auditing and/or enforcing that policy, please provide us with that person's contact information at our meeting. We also need to learn if there are any automated features of your computer, email or record keeping systems automatically or routinely delete ESI. If

so, we will need to confirm that those features have been suspended and learn when they were deactivated.

8.      *Document Each Step Taken to Preserve ESI*

To defend against claims that you failed to properly preserve ESI, it is extremely important that a record be kept of every step taken by you to implement the litigation hold and to preserve ESI.  Document the names of all employees and department heads to whom the litigation hold notice was sent and record when they were notified.  Keep copies of the written hold notice and consider sending two copies of the hold notice to your employees with an instruction that they keep one, and sign and return the other as evidence that they received, read and understood its content. Maintain a log of any verbal instructions given, including when the instructions were given, the persons who provided and received the instructions and a summary of the instructions.

Frequently one party will attempt to discredit the other's effort to preserve ESI in the hope of gaining a tactical advantage through the imposition of sanctions. A comprehensive record documenting all efforts that are taken is necessary so that if challenged in court, your efforts at preserving evidence can be properly defended.

9.      *"Metadata," Embedded Data and Data Created or Stored in Unique or Proprietary Formats*

Every document, report or email created on a computer contains hidden electronic information called "metadata."  Metadata is literally defined as "data about data."  Metadata is automatically created by your computer and functions like a library catalog card for the computer.  Among other things, the metadata will reveal: who created a document, when it was created, who last had access to the document, whether it has been revised and by whom, when that revision was made and the number of versions of a document.

Metadata may contain potentially relevant information that can be used to authenticate an electronic document or email and may be sought in discovery.  Metadata should be considered part of the original electronic document and should be preserved. One difficulty in preserving metadata is that by simply opening a document and moving it to a folder to preserve it for discovery purposes will alter several metadata fields including when the document was last accessed and who accessed it.

Besides metadata, there is another form of potentially hidden information that can exist in the electronic version of a document which is manually embedded into a document's content itself through the track changes feature of a word processing program. That embedded data may contain information subject to attorney-client privilege or work product protection.

We need to learn if any of your ESI is created or stored in a unique or proprietary format since that may impact the form of its production.  We also need to learn if any

10

aspect of your ESI is electronically searchable as it is ordinarily maintained since that may also impact the format of its production. Are there any unusual aspects of your computer, email or record keeping systems that could make production of ESI difficult or problematic?

The reason we are raising these questions is that the e-discovery rules provide you some choice as to format in which ESI will be produced. ESI can be electronically produced in either its "native state" or in an imaged format. The term "native" when used in an e-discovery context simply refers to the program or file format in which the document or data was originally created. In other words, if a document was created in WordPerfect, producing it in its native state would require production of it in a WordPerfect format. A commonly used image format is Adobe's Portable Document Format or PDF.

There are advantages and disadvantages to each form of electronic production. Producing ESI in its "native state" would include production of any associated metadata or accompanying embedded data. Additionally, documents produced in their native state can be altered. Native documents cannot be Bates stamped or redacted without altering the original. To view an electronic document in its native state which is created or stored in a unique or proprietary format requires that the party receiving it have access to the same software used to create or store the document. On the other hand, documents produced in an imaged format cannot be altered and will not include any metadata unless metadata fields are loaded into the image. Imaged documents can be redacted and bates stamped, but are more costly and take longer to produce.

You should carefully review all of these subjects with your IT department. Your preferred format of ESI production is an issue which we need to discuss with you at this stage because it is a subject which the court's rules require us to address with opposing counsel at the initial scheduling conference.

10.    *Accessibility of Electronic Data*

The federal rules set up a two-tiered system of ESI discovery. Parties are expected to produce ESI that is readily accessible. However, there is no obligation to produce ESI from sources that are not reasonably accessible because of "undue burden or cost." The following are recognized categories of ESI which generally describe the ways data may be stored relative to its potential accessibility:

**Active data** - computer data which is immediately and easily accessible;

**Backup data** – computer data residing on readily available storage media;

**Archived data** – computer data placed into long term storage on backup tapes or other forms of media that may be periodically recycled or reused.

11

**Legacy data** – computer data created on old, out of date, obsolete or no longer used computer systems and/or hardware or software; and

**Deleted data** – computer data that has been "deleted" from a computer's hard drive but is potentially recoverable through computer forensic techniques;

We need to learn if you have any legacy data or legacy system(s), and, if so, whether there is any data which has not been transferred to the system(s) currently in use, and how far back the legacy data which has not been transferred to your current system goes, as well as whether any of that data might be relevant to the issues in this matter. In that event, we would need to determine what steps would be required, and at what expense, to access, review and produce that legacy data.

In addition, we will need to learn how ESI is stored by its custodians. If your systems are backed up or archived, we need to learn what data is backed up and/or archived, how that is accomplished, how frequently the process occurs, how long the ESI is retained, where the backup tapes or archived media is stored and any rotation cycle. To determine the accessibility of ESI from those sources, we should learn what steps would have to be taken, and at what cost, to restore, search for and produce specific data or information on those tapes. We also need to learn if those backup tapes or archived data is used for any reason other than disaster recovery.

We bear the burden of proving that it would be unduly burdensome or costly to produce ESI from these or any other sources or potential repositories of ESI. Thus, we will need to speak with your IT department to discuss any features of your system(s) or the information stored in various sources that would make production of ESI from those sources unduly burdensome or costly. Your IT department will be of invaluable assistance in evaluating whether we can claim that ESI from any of those sources is inaccessible within the meaning of the e-discovery rules and thereby possibly avoiding the expense of producing ESI from those sources. However, you still need to preserve potentially relevant ESI from those sources until the issue of ESI production from those sources has been resolved by agreement with opposing counsel or an order from the court.

11.    *Processing and Production of ESI*

You need to anticipate that you may have to segregate and process for review and production an unknown quantity of electronic data. One way to limit the cost of e-discovery is to use filtering techniques to reduce the size of the data set that may need to be reviewed for privilege and/or produced in discovery. Common filtering techniques include "de-duplication" of identical documents or emails through the use of "hash methodologies," key-word or concept searches, and screening data by date ranges, custodians and/or file types.

These are issues we need to discuss at our initial meeting. You should assess whether your IT staff has the time and/or capacity to collect and process ESI for production in discovery in this matter. More importantly, you need to assess whether your IT staff should perform these types of tasks given the range of sanctions that could be imposed if ESI is lost in the process. Having your IT staff perform these tasks could require that they be deposed and opens their work up to review and potential criticism by our opponent and the court. It also diverts their attention from company business. While we have our own experienced IT staff who could provide technical or other assistance, there is a risk that if we assist in or actually perform these tasks, our staff could potentially become witnesses if a motion for sanctions were later filed, and in an extreme case, we could be disqualified from representing you. **Accordingly, unless it would be cost prohibitive or there are other good reasons not to do so in a given matter, we generally recommend that a qualified outside vendor be considered for managing the recovery and processing of ESI necessary for its production.** Please let us know if you have used any e-discovery vendors in the past and, if so, whether you were satisfied with their work and would be willing to use them again.

### OTHER E-DISCOVERY RELATED ISSUES

In addition to the issues noted above, at our initial meeting there are several other points that we need to discuss with you. They include:

- When the litigation hold was issued or the process began;

- What steps have been taken to implement a litigation hold;

- What documentation do you have concerning the steps taken to implement the litigation hold;

- The name and contact information of the person in charge of the hold process or any member of your legal department designated to answer questions;

- What types of ESI are in your possession, what formats is it stored in, and where are the data repositories or sources for that ESI located;

- How much ESI and how many custodians are involved.

Finally please let us know when the appropriate persons from your IT department are available to meet with us. We do not want to delay our initial meeting with you to cover these various issues, so our meeting with IT does not have to occur the same day. Depending upon the complexity of your systems, the meeting with your IT staff could run much longer than our meeting to discuss the issues raised above.

13

SUMMARY

The duty to preserve and produce ESI has become central to the litigation process. The tasks required to comply with our respective obligations must be performed at the very beginning of a lawsuit, and again periodically throughout the course of the litigation. At our initial meeting, we will discuss with you the strategic implications of these ESI obligations and how our respective obligations will be met in connection with this matter. At that meeting, we will review with you any steps that have already been taken to preserve ESI and work with you to develop a clear plan to properly preserve and produce any potentially relevant ESI on a going-forward basis.

In some cases, e-discovery costs may have little or no impact on litigation or settlement strategies. In other cases, e-discovery may generate significant costs and require the diversion of personnel and resources needed to address a party's e-discovery obligations. The expense involved in locating, reviewing and producing ESI in some cases may warrant serious consideration of an early resolution of the claim. We will be glad to discuss these and any other issues or questions you may have at our initial meeting in the near future. Of course, should you have any questions about what steps should be taken to preserve ESI prior to our initial meeting, please immediately contact us at your earliest convenience.

14

**<u>Exhibit B</u>**

**Redline**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------

x

|  |  |  |
|---|---|---|
|  | **:** | Chapter 11 |
| In re: | **:** |  |
|  | **:** | Case No. 22-10943 (MEW) |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | **:** |  |
|  | **:** | (Jointly Administered) |
| Debtors. | **:** |  |
|  | **:** |  |

-----------------------------------------------------------------

x

### ORDER PURSUANT TO 11 U.S.C. §§ 327(e) AND 328(a) AND FED. R. BANKR. P. 2014, 2016 AND 5002 AUTHORIZING DEBTOR VOYAGER DIGITAL, LLC TO EMPLOY AND RETAIN QUINN EMANUEL URQUHART & SULLIVAN, LLP AS SPECIAL COUNSEL *NUNC PRO TUNC* TO JULY 13, 2022

Upon the application (the "Application")[2] of Voyager Digital, LLC ("Voyager LLC"), a

debtor and debtor in possession in the above-captioned case, for entry of an order, pursuant to

section 327(e) of the Bankruptcy Code, Bankruptcy Rules 2014(a), 2016 and 5002, and Local

Bankruptcy Rules 2014-1 and 2016-1, authorizing Voyager LLC employ and retain Quinn Emanuel

as its special counsel, effective as of July 13, 2022; and upon the Kirpalani Declaration and

Ehrlich Declaration (together, the "Declarations"); and the Court having jurisdiction over this

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Voyager Digital Holdings, Inc.'s and Voyager Digital Ltd.'s principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003. Voyager Digital, LLC's principal place of business is 701 S Miami Ave, 8th Floor, Miami, FL 33131.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

matter pursuant to 28 U.S.C. § 1334; and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012; and this proceeding being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue of this proceeding and the Application in this Court being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been given; and the Court having found that no other or further notice is needed or necessary; and the Court having found that the relief requested in the Application is in the best interests of the Voyager LLC's estate and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and any objections to the relief requested in the Application having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is hereby **ORDERED** that:

1.      The Application is granted as set forth in this Order.

2.      Pursuant to section 327(e) of the Bankruptcy Code, Voyager LLC is hereby authorized to retain Quinn Emanuel as special counsel, effective as of July 13, 2022, pursuant to the terms and conditions set forth in the Application and the Engagement Letter.

3.      Retention pursuant to section 327(e) of the Bankruptcy Code is appropriate given the specific scope of the proposed retention.

4.      For the avoidance of doubt, and to resolve an informal objection raised by the Office of the United States Trustee, Quinn Emanuel will not perform services for Voyager LLC (or any of the Debtors) that relate to any claim or cause of action that Alameda Research Ventures LLC, Alameda Research Ltd., or Alameda Ventures Ltd. (collectively, "Alameda") may hold

2

against the Debtors, or to any claim or cause of action that the Debtors may have against Alameda; such matters will be handled by the Debtors' general bankruptcy counsel, Kirkland & Ellis, LLP or such other counsel as may be retained by the Debtors.

5.    4.  Quinn Emanuel shall file interim and final fee applications for allowance of its compensation and reimbursement of its expenses with respect to services rendered in these chapter 11 cases with the Court, in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, this Order, and such other procedures as may be fixed by order of the Court.

6.    5.  Quinn Emanuel shall use its best efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

7.    6.  Prior to any increases in Quinn Emanuel's rates for providing services in these cases, Quinn Emanuel shall file a supplemental affidavit with the Court and provide ten business days' notice to the Debtors, the U.S. Trustee, the Committee, and any other official committee appointed by the U.S. Trustee, which supplemental affidavit shall explain the basis for the requested rate and state whether Voyager LLC has consented to the rate increase. The U.S. Trustee retains all rights to object to any rate increase on all grounds including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code, and all rates and rate increases are subject to review by the Court.

8.    7.  Notwithstanding anything to the contrary in the Application, the Engagement Letter, or the Declarations attached to the Application, the reimbursement provisions allowing the reimbursement of fees and expenses incurred in connection with participating in, preparing for, or responding to any action, claim, suit, or proceeding brought by or against any party that relates to the legal services provided under the Engagement Letter and fees for defending any objection to

3

Quinn Emanuel's fee applications under the Bankruptcy Code are not approved pending further order of the Court.

9. ~~8.~~ To the extent there is any inconsistency between the terms of the Engagement Letter, the Application, and this Order, the terms of this Order shall govern.

10. ~~9.~~ Voyager LLC is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

11. ~~10.~~ The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

12. ~~11.~~ The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.


New York, New York
Date: _____, 2022                 _____
                                                THE HONORABLE MICHAEL E. WILES
                                                UNITED STATES BANKRUPTCY JUDGE

4