Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF FILING OF REVISED PROPOSED ORDER**
**(I) APPROVING THE BIDDING PROCEDURES,**
**(II) SCHEDULING THE BID DEADLINES AND THE AUCTION,**
**(III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF,**
**(IV) SCHEDULING HEARINGS AND OBJECTION DEADLINES WITH**
**RESPECT TO THE DEBTORS' SALE, DISCLOSURE STATEMENT,**
**AND PLAN CONFIRMATION AND (V) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that on July 6, 2022, the above-captioned debtors and debtors

in possession (collectively, the "Debtors") filed the *Debtors' Motion Seeking Entry of an Order*

*(I) Approving the Bidding Procedures and Related Dates and Deadlines, (II) Scheduling Hearings*

*and Objection Deadlines with Respect to the Debtors' Sale, Disclosure Statement, and Plan*

*Confirmation, and (III) Granting Related Relief* [Docket No. 126] (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file a revised proposed

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (N/A); and Voyager Digital, LLC
(8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY
10003.

*Order (I) Approving the Bidding Procedures and Related Dates and Deadlines, (II) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Sale, Disclosure Statement, and Plan Confirmation, and (III) Granting Related Relief* attached hereto as **Exhibit A** (the "Revised Proposed Order").

**PLEASE TAKE FURTHER NOTICE THAT** a comparison between the Revised Proposed Order and the order filed with the Motion is attached hereto as **Exhibit B**.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in the above-captioned chapter 11 cases may be obtained free of charge by visiting the website of Stretto at http://www.cases.stretto.com/Voyager.  You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank]*

Dated:  August 2, 2022                 */s/ Joshua A. Sussberg, P.C.*
New York, New York                     **KIRKLAND & ELLIS LLP**
                                       **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                       Joshua A. Sussberg, P.C.
                                       Christopher Marcus, P.C.
                                       Christine A. Okike, P.C.
                                       Allyson B. Smith (admitted *pro hac vice*)
                                       601 Lexington Avenue
                                       New York, New York 10022
                                       Telephone:    (212) 446-4800
                                       Facsimile:    (212) 446-4900
                                       Email:        jsussberg@kirkland.com
                                                     cmarcus@kirkland.com
                                                     christine.okike@kirkland.com
                                                     allyson.smith@kirkland.com

                                       *Proposed Counsel to the Debtors and Debtors in Possession*

**<u>EXHIBIT A</u>**

**Revised Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## ORDER (I) APPROVING THE BIDDING PROCEDURES, (II) SCHEDULING THE BID DEADLINES AND THE AUCTION, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) SCHEDULING HEARINGS AND OBJECTION DEADLINES WITH RESPECT TO THE DEBTORS' SALE, DISCLOSURE STATEMENT, AND PLAN CONFIRMATION AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of the above captioned debtors and debtors in possession (the "Debtors") for the entry of an order (this "Order"), (a) authorizing and approving the bidding procedures attached hereto as **Exhibit 1** (the "Bidding Procedures")[2] in connection with the sale of the Assets, (b) approving the Bid Protections, (c) establishing certain dates and deadlines, including the Bid Deadline, and the date of the Auction, if any, (d) approving the manner of notice of the Auction, if any, (e) scheduling dates and deadlines in connection with approval of a Sale, Disclosure Statement, and confirmation of a Plan, and (f) granting related relief, as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]  Capitalized terms used but not defined herein have the meanings given to them in the Bidding Procedures.

and 1409; and this Court having found that the relief requested in the Motion is in the best interests

of the Debtors' estates, their creditors, and other parties in interest; and this Court having found

that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were

appropriate and no other notice need be provided; and this Court having reviewed the Motion and

having heard the statements in support of the relief requested therein at a hearing before this Court

(the "Hearing"); and this Court having determined that the legal and factual bases set forth in the

Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the

proceedings had before this Court; and after due deliberation and sufficient cause appearing

therefor,

**THE COURT HEREBY FINDS THAT:**

A.      The Debtors have articulated good and sufficient reasons for authorizing and

approving the Bidding Procedures, which are fair, reasonable, and appropriate under the

circumstances and designed to maximize the recovery on, and realizable value of the Debtors'

enterprise, including with respect to the proposed procedures for providing Bid Protections as

determined by the Debtors in an exercise of their business judgment, subject to, and in accordance

with, the procedures contained in this Order and the Bidding Procedures.

B.      The findings and conclusions set forth herein constitute the Court's findings of fact

and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding

pursuant to Bankruptcy Rule 9014.  To the extent that any of the preceding findings of fact

constitute conclusions of law, they are adopted as such.  To the extent any of the preceding

conclusions of law constitute findings of fact, they are adopted as such.

C.      The Debtors' proposed notice of the Motion, the Bidding Procedures, the Hearing

and the proposed entry of this Order is (i) appropriate and reasonably calculated to provide all

interested parties with timely and proper notice, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and (iii) adequate and sufficient under the circumstances of these chapter 11 cases, and no other or further notice is required. A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to the following parties and/or their respective counsel, as applicable: (a) the U.S. Trustee; (b) the Committee; (c) the lender under the Debtors' prepetition loan facility; (d) the United States Attorney's Office for the Southern District of New York; (e) the Internal Revenue Service; (f) the Toronto Stock Exchange; (g) the attorneys general in the states where the Debtors conduct their business operations; (h) the Committee; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.

D.      The Bid Procedures comply with the requirements of Local Rule 6004-1.

**IT IS HEREBY ORDERED THAT:**

1.  The Motion is granted as set forth herein.

2.  All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled prior to or at the Hearing are overruled.

**I.        <u>Important Dates and Deadlines</u>.**

3.  **<u>Final Bid Deadline</u>**.  August 26, 2022, at 12:00 p.m., prevailing Eastern Time, is the deadline by which all Qualified Bids must be **<u>actually</u> <u>received</u>** by the parties specified in the Bidding Procedures.

4.  **<u>Stalking Horse Bidders and Bid Protections</u>**.  Subject in all respects to the noticing requirements and objection procedures set forth in paragraph 15 and 16 of this Order and the Bidding Procedures, the Debtors, upon entry of this Order and at any time up until seven days prior to the Auction, shall be authorized, but are not obligated or directed, in an exercise of their business judgment, to select one or more Stalking Horse Bidders with respect to some or all of the Debtors'

Assets and to provide such Stalking Horse Bidders with Bid Protections without further action or order by this Court.

5. **Auction**.  August 29, 2022 at 10:00 prevailing Eastern Time is the date and time the Auction, if one is needed, will be held at the offices of proposed counsel to the Debtors identified below or, at the election of the Debtors, virtually via Zoom or similar means:  Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York, 10022.  The Debtors shall send written notice of the date, time, and place of the Auction to the Qualified Bidders no later than two business days before such Auction, and will post notice of the date, time, and place of the Auction no later than two business days before such Auction on the website of the Debtors' notice, claims, and solicitation agent, Stretto, Inc., at www.cases.stretto.com/Voyager.  For the avoidance of doubt, the Debtors, after consultation with the Committee, may also conduct more than one Auction with respect to non-overlapping material portions of the Debtors' Assets.

6. **Sale Objection Deadline**.  August 31, 2022, at 4:00 p.m., prevailing Eastern Time, is the deadline by which objections to the Sale must be filed with the Court and served so as to be actually received by the appropriate notice parties; *provided*, *however*, objections relating to the conduct, manner, or results of the Auction, the selection of the Winning Bidder, or any other objections that relate to, or arise from, the Auction must be filed no later than 72 hours following the close of the Auction.

7. **Sale Hearing**.  September 7, 2022, at [●]:00 [a/p].m., prevailing Eastern Time, is the date and time for the hearing for the Court to consider the Successful Bid or Successful Bids, if needed.

8. **Disclosure Statement Objection Deadline**.  Provided that the Debtors have filed the Disclosure Statement on or before August 12, 2022, then September 9, 2022 at 4:00 p.m.,

prevailing Eastern Time is the deadline by which objections to the Disclosure Statement must be filed with the Court and served so as to be actually received by the appropriate notice parties.

9. **Disclosure Statement Hearing**.  Provided that the Debtors have filed the Disclosure Statement on or before August 12, 2022, then September 16, 2022, at [●]:00 [a/p].m., prevailing Eastern Time, is the date and time for the hearing for the Court to consider approval of the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code.

10. **Solicitation Deadline**.  Except as otherwise set forth in an order approving the Disclosure Statement and related deadlines, or any further order of this Court, September 26, 2022, is the deadline for distributing solicitation packages, including ballots, to holders of claims entitled to vote to accept or reject the Plan.

11. **Plan Objection Deadline**.  Except as otherwise set forth in an order approving the Disclosure Statement and related deadlines, or any further order of this Court, October 24, 2022, at 4:00 p.m., prevailing Eastern Time, is the deadline by which objections to the Plan must be filed with the Court and served so as to be actually received by the appropriate notice parties.

12. **Voting Deadline**.  Except as otherwise set forth in an order approving the Disclosure Statement and related deadlines, or any further order of this Court, and subject to all procedures governing voting contained therein, October 24, 2022, at 4:00 p.m., prevailing Eastern Time, is the deadline by which all ballots must be properly executed, completed, and delivered so that they are actually received by the Debtors' notice, claims, and solicitation agent, Stretto, Inc.

13. **Confirmation Hearing**.  Except as otherwise set forth in an order approving the Disclosure Statement and related deadlines, or any further order of this Court, October 31, 2022, at [●]:00 [a/p].m., prevailing Eastern Time, is the date and time for the hearing for the Court to consider confirmation of the Plan, if needed.

II.  **Auction, Bidding Procedures, Transaction Notice, and Related Relief**.

14.    The Bidding Procedures, as attached hereto as **Exhibit 1**, are incorporated herein and are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to any proposed Sale.  Any party desiring to submit a Bid shall comply with the Bidding Procedures and this Order.  The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures; *provided*, *however*, that any modifications to the Bidding Procedures shall not be effective without consent of the Committee or further order of this Court.

15.    The Bid Protections are approved on the terms set forth in the Bidding Procedures and the Debtors are authorized, but not directed, to incur and pay such Bid Protections to any or no Stalking Horse Bidder, in an exercise of their business judgment and following consultation with the Committee, without further action or order by the Court; *provided*, *however*, Bid Protections may not be granted to any Stalking Horse Bidder without filing a notice on the docket (a "Stalking Horse Notice") identifying the Stalking Horse Bidder, the material terms of the Stalking Horse Bid (including the purchase price, the Assets subject to such Stalking Horse Bid, and the treatment of Account Holder Claims), and the amount and terms of any Bid Protections proposed to be offered to the Stalking Horse Bidder, after which the Committee and any party in interest will have an opportunity to object by filing and serving a written objection to the designation of the Stalking Horse Bidder or to the Bid Protections (a "Stalking Horse Objection") within three (3) business days following the filing of such Stalking Horse Notice.

16.    If a timely Stalking Horse Objection is filed, the proposed designation of the Stalking Horse Bidder and Bid Protections shall not be deemed approved unless approved by separate order of the Court. If no Stalking Horse Objection is timely filed and served with respect

to a Stalking Horse Bid, the Bid Protections with respect to such Stalking Horse Bidder shall be deemed approved without further order of the Court upon the expiration of three (3) business days after service of the Stalking Horse Notice, and shall be payable in accordance with, and subject to the terms of, the applicable agreement with the Stalking Horse Bidder.  Except as expressly provided for herein, no other termination payments are authorized or permitted under this Order. In no event shall the amount of any Breakup Fee (if granted) exceed three percent of any Stalking Horse Bidder's proposed purchase price.

17.    No person or entity, other than a Stalking Horse Bidder granted Bid Protections in accordance with this Order, shall be entitled to any expense reimbursement, break-up fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for expense reimbursement or any fee of any nature, whether by virtue of Bankruptcy Code section 503(b) or otherwise.

18.    Any deposit provided by a Stalking Horse Bidder or other Qualified Bidder shall be held in escrow by the Debtors or their agent, and shall not become property of the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the applicable escrow agreement or order of this Court.

19.    The Transaction Notice, substantially in the form attached hereto as **Exhibit 2**, is hereby approved.  As soon as reasonably practicable following the entry of this Order, the Debtors will cause the Transaction Notice to be served upon (a) the United States Attorney's Office for the Southern District of New York, (b) the Committee, (c) the Internal Revenue Service, (d) the attorneys general for the states in which the Debtors operate, (e) any parties known or reasonably

7

believed to have expressed an interest in the Debtors' assets, and (f) any party that has requested notice pursuant to Bankruptcy Rule 2002.

III.   **Miscellaneous**.

20.     The Court, at the request of the Debtors and subject to its availability, may modify the dates of and adjourn any hearing set by this Order without further Order of this Court, *provided* that the Debtors will serve notice to all requisite parties informing them of such modification.

21.     The failure to include or reference a particular provision of the Bidding Procedures specifically in this Order shall not diminish or impair the effectiveness or enforceability of such a provision.

22.     In the event of any inconsistencies between this Order and the Motion and/or the Bidding Procedures, this Order shall govern in all respects.

23.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

24.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

25.     The requirements set forth in Local Rule 9013-1(a) are satisfied.

26.     Notwithstanding anything to the contrary in the Motion, this Order, or any findings announced at the Hearing, nothing in the Motion, this Order, or announced at the Hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the United States Securities and Exchange Commission to challenge transactions involving crypto tokens on any basis is expressly reserved.

27.     Nothing contained in this Order or the Bidding Procedures shall impair, abrogate, or otherwise be deemed a waiver of the Committee's rights to object to the selection of the Winning

Bidder, the Sale, the Disclosure Statement, the Plan, or otherwise, and the rights of the Committee are fully preserved.

28.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

29.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

30.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

31.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.


New York, New York

Dated: _____, 2022

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC. *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### BIDDING PROCEDURES FOR THE SUBMISSION, RECEIPT, AND ANALYSIS OF BIDS IN CONNECTION WITH THE SALE OF THE DEBTORS

On July 5, 2022, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

On [●], 2022, the Bankruptcy Court entered an order [Docket No. [●]] (the "Bidding Procedures Order") approving, among other things, these bidding procedures (the "Bidding Procedures"). These Bidding Procedures set forth the process by which the Debtors are authorized to solicit the highest or otherwise best bids (each, a "Bid") and conduct an auction (the "Auction") for the sale (the "Sale") of 100% of the Debtors' equity or some or all of their assets (the "Assets").

The Sale will be implemented pursuant to section 363 of the Bankruptcy Code or a chapter 11 plan of reorganization (as modified, amended, or supplemented from time to time, the "Plan").

---

Copies of the Bidding Procedures Order or any other documents in the Debtors' chapter 11 cases are available upon request to Stretto. Inc., by calling (855) 473-8665 (Toll-Free) or (949) 271-6507 (International), or by visiting www.cases.stretto.com/Voyager/.

---

### A.    Participation Requirements.

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in submitting a Bid (a "Potential Bidder") must deliver (unless previously delivered) to each of (i) proposed counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C. (jsussberg@kirkland.com), Christopher Marcus, P.C. (cmarcus@kirkland.com), Christine A. Okike, P.C. (christine.okike@kirkland.com), and Allyson B. Smith (allyson.smith@kirkland.com); (ii) the Debtors' proposed financial advisor and investment banker to the Debtors, Moelis & Company

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

LLC, 399 Park Avenue, 4th Floor, New York, New York 10022, Attn.: Jared Dermont (jared.dermont@moelis.com), Barak Klein (barak.klein@moelis.com), Mike DiYanni (michael.diyanni@moelis.com), and Brian Tichenor (brian.tichenor@moelis.com); and (iii) proposed counsel to the Committee, McDermott Will & Emery LLP, One Vanderbilt Avenue, New York, New York 10017, Attn: Darren Azman (dazman@mwe.com) (collectively, the "Notice Parties"):

(i)      a written disclosure of the identity of each entity that will be bidding for 100% of the Debtors' equity or Assets[2] or otherwise participating in connection with such Bid;

(ii)     an executed confidentiality agreement on terms reasonably acceptable to the Debtors (the "Confidentiality Agreement"), to the extent not already executed;

(iii)    a non-binding description of the Assets in which such Potential Bidder may be interested in placing a Bid and a non-binding estimate of the purchase price to be paid, with reasonable specificity, including treatment for the Account Holder Claims;[3] and

(iv)     documents provided by the Potential Bidder evidencing its financial capacity to close a proposed transaction, which may include, without limitation, current unaudited or verified financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach), the adequacy of which will be assessed by the Debtors and their advisors, in their reasonable discretion and in consultation with the Committee and their advisors ((i) through (iv), collectively, the "Bid Documents").

As promptly as practicable, but in no event later than three (3) business days after a Potential Bidder delivers the Bid Documents, the Debtors will determine in their reasonable business judgment, after consultation with the Committee, whether such Potential Bidder has submitted acceptable Bid Documents (any such Potential Bidder being referred to as an "Acceptable Bidder"), and the Debtors will inform such Potential Bidder regarding whether such Potential Bidder is an Acceptable Bidder.  In the event that the Debtors deem that a Potential Bidder has not met the requirements for being deemed an Acceptable Bidder, the Debtors must promptly inform the Committee of such determination (and the reasons therefor).

---

[2]    Capitalized terms used but not defined herein have the meanings given to them in the *Debtors' Motion Seeking Entry of an Order (I) Approving the Bidding Procedures and Related Dates and Deadlines, (II) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Sale, Disclosure Statement, and Plan Confirmation, and (III) Granting Related Relief* [Docket No. 126].

[3]    "Account Holder Claims" shall have the meaning ascribed to such term in the *Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 17].

**B.    Due Diligence.**

(i)    **Access to Due Diligence.**

Only Acceptable Bidders will be eligible to receive due diligence and access to additional non-public information regarding the Assets and the Debtors. The Debtors will provide to each Acceptable Bidder reasonable due diligence information concerning those Assets that are the subject of such Acceptable Bidder's Bid (or such other Assets if the list provided in accordance with A.iii above is amended or modified), as requested by such Acceptable Bidder in writing, as soon as reasonably practicable after such request, but shall only extend to those Assets (or such other Assets if the list provided in accordance with A.iii above is amended or modified) that are the subject of such Acceptable Bidder's Bid. The Debtors will post substantially all written due diligence provided to any Acceptable Bidder to the Debtors' electronic data room. The due diligence period will end on the Bid Deadline (as defined herein), after which the Debtors will have no obligation to furnish any due diligence information, unless otherwise deemed reasonably appropriate by the Debtors after consultation with the Committee.

In connection with the provision of due diligence information to Acceptable Bidders, the Debtors will not furnish any confidential information relating to the Debtors, the Debtors' Assets or liabilities, or the Sale to any person other than an Acceptable Bidder or such Acceptable Bidder's duly-authorized representatives, in each case, to the extent provided in the applicable Confidentiality Agreement and only to the extent of the Assets that are the subject of such Acceptable Bidder's Bid.

The Debtors and their financial advisors will coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders; *provided* that the Debtors may decline to provide such information to Acceptable Bidders who, in the Debtors' reasonable business judgment and after consultation with the Committee, have not established that such Acceptable Bidders intend in good faith to, or have the capacity to, consummate their Bid. No conditions relating to the completion of due diligence will be permitted to exist after the Bid Deadline (as defined herein).

The Debtors also reserve the right in their reasonable business judgment, after consultation with the Committee, to withhold any diligence materials that the Debtors reasonably determine are sensitive, proprietary, or otherwise not appropriate for disclosure to an Acceptable Bidder who the Debtors reasonably determine is a competitor of the Debtors or is affiliated with any competitor of the Debtors. Neither the Debtors nor their representatives will be obligated to furnish information of any kind whatsoever to any person that is not determined to be an Acceptable Bidder.

Each Acceptable Bidder will be deemed to acknowledge and represent that it: (a) has had an opportunity to conduct any and all due diligence regarding the Debtors' Assets and liabilities that are the subject of the Auction to the extent of the Assets and liabilities that are the subject of their Bid prior to making any such Bids; (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise regarding the Debtors'

Assets or liabilities, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures. Neither the Debtors nor any of their employees, officers, directors, affiliates, subsidiaries, representatives, agents, advisors, or professionals are responsible for, and will bear no liability with respect to, any information obtained by Acceptable Bidders in connection with the Sale.

---

The Debtors have designated Moelis & Company LLC, 399 Park Avenue, 4th Floor, New York, New York 10022, Attn: Jared Dermont (jared.dermont@moelis.com), Mike DiYanni (michael.diyanni@moelis.com), Barak Klein (barak.klein@moelis.com, Brian Tichenor (brian.tichenor@moelis.com), Mike Mestayer (michael.mestayer@moelis.com) or Cullen Murphy (cullen.murphy@moelis.com), to coordinate all reasonable requests for additional information and due diligence access.

---

(ii)    **No Communications Among Acceptable Bidders.**

There must be no communications between and amongst Acceptable Bidders, unless the Debtors, after consultation with the Committee, have previously authorized such communication in writing. The Debtors reserve the right, in their reasonable business judgment, after consultation with the Committee, to disqualify any Acceptable Bidders that have communications between and amongst themselves; *provided* that if any Acceptable Bidder that believes it has been wrongfully disqualified hereunder may file an emergency motion with the Bankruptcy Court seeking the reversal of such disqualification.

**C.    Stalking Horse Bidders and Bid Protections.**

Upon entry of the Bidding Procedures Order and up until seven (7) days prior to the Auction, the Debtors shall be authorized, but not obligated, in an exercise of their business judgment and following consultation with the Committee, to: (a) select one or more Acceptable Bidders to act as stalking horse bidders in connection with the Auction (each, a "Stalking Horse Bidder"); and (b) in connection with any stalking horse agreement with a Stalking Horse Bidder (i) provide a breakup fee (the "Breakup Fee"), and/or (ii) agree to reimburse reasonable and documented out-of-pocket fees and expenses (the "Expense Reimbursement," and together with the Breakup Fee, the "Bid Protections"); *provided, however*, Bid Protections may not be granted to any Stalking Horse Bidder without filing a notice on the docket (a "Stalking Horse Notice") identifying the Stalking Horse Bidder, the material terms of the Stalking Horse Bid (including the purchase price, the Assets subject to such Stalking Horse Bid, and the treatment of Account Holder Claims), and the amount and terms of any Bid Protections proposed to be offered to the Stalking Horse Bidder, after which the Committee and any party in interest will have an opportunity to object by filing and serving a written objection to the designation of the Stalking Horse Bidder or to the Bid Protections (a "Stalking Horse Objection") within three (3) business days following the filing of such Stalking Horse Notice. If a timely Stalking Horse Objection is filed, the proposed designation of the Stalking Horse Bidder and Bid Protections shall not be deemed approved unless approved by separate order of the Bankruptcy Court. If no Stalking Horse Objection is timely filed and served with respect to a Stalking Horse Bid, the Bid Protections with respect to such Stalking Horse Bidder shall be deemed approved without further order of the Bankruptcy Court upon the expiration of three (3) business days after service of the Stalking Horse Notice, and shall be payable in accordance with, and subject to the terms of, the applicable agreement with the Stalking

Horse Bidder.  Except as expressly provided for herein, no other termination payments are authorized or permitted under this Order.  In no event shall the amount of any Breakup Fee (if granted) exceed three percent of any Stalking Horse Bidder's proposed purchase price.

**D.    Bid Requirements.**

To be eligible to participate in the Auction, an Acceptable Bidder must deliver to the Debtors and their advisors, a written, irrevocable offer that must be determined by the Debtors, in their business judgment, after consultation with the Committee, to satisfy each of the following conditions (collectively, the "Bid Requirements"):

(i)    **Purpose**.  Each Acceptable Bidder must (a) state that the Bid includes an offer by the Acceptable Bidder to acquire the Debtors' equity and/or some or all of the Assets and identify such Assets with reasonable specificity and (b) if the Acceptable Bidder proposes to consummate the transaction through a Plan, include a Plan that provides for the treatment of claims against the Debtors and the means for implementation of the Plan.

(ii)    **Transaction Structure and Purchase Price**.  Each Bid that includes an offer by the Acceptable Bidder to acquire the Debtors' equity and/or some or all of the Assets must: (a) clearly set forth the purchase price to be paid for the Assets (the "Purchase Price") and must indicate the source of consideration, including funding commitments, and confirm that such consideration is not subject to any contingencies and (b) include a detailed sources and uses schedule.  Each Bid shall also provide for appropriate treatment for the Account Holder Claims as provided in the Plan.

(iii)    **Bid Deposit**.  Each Bid contemplating an acquisition of Assets, or Plan that contemplates additional capital, must be accompanied by a cash deposit equal to ten percent of the net asset Purchase Price of the Bid or the additional capital contemplated (the "Good Faith Deposit"), which will be held in an escrow account to be identified and established pursuant to the authority granted by the order authorizing the Debtors to maintain and operate their bank accounts, by wire transfer or certified or cashier's check.

(iv)    **Committed Financing**.  To the extent that a Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate the Sale or Plan transaction(s) set forth in its Bid with cash on hand, each Bid must include committed financing documented to the Debtors' satisfaction, after consultation with the Committee, that demonstrates that the Acceptable Bidder has received sufficient debt and/or equity funding commitments to satisfy the Acceptable Bidder's Purchase Price and/or other obligations under its Bid.  Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtors in their sole discretion, after consultation with the Committee.

(v)    **Good Faith Offer**.  Each Bid must constitute a good faith, bona fide offer to purchase all or substantially all the Debtors' equity or Assets and in the case of a Plan, provide for the treatment of claims against the Debtors and the means for implementation of the Plan. Bids may be submitted for less than substantially all assets, and the Debtors may consider partial bids in their reasonable business judgment (including if multiple bids taken together would result in a sale of substantially all the Debtors' assets) following consultation with the Committee.

(vi)   **Marked Agreement**.  Each Bid must be accompanied by clean and duly executed transaction documents including, at a minimum, a chapter 11 plan or a draft asset purchase agreement, the form of which will be provided to any Acceptable Bidder prior to the Bid Deadline (as defined herein), including the exhibits and schedules related thereto and any related material documents integral to such Bid pursuant to which the Acceptable Bidder proposes to effectuate the Sale, along with copies that are marked to reflect any amendments and modifications from the form chapter 11 plan or asset purchase agreement provided, which amendments and modifications may not be materially more burdensome or otherwise materially inconsistent with these Bidding Procedures.  The Debtors, in their reasonable business judgment following consultation with the Committee, will determine whether any such amendments and modifications are materially more burdensome.

(vii)  **No Contingencies**.  A Bid must include confirmation that such Bid is not conditioned on any contingency, including, among others, on obtaining any of the following (a) financing, (b) shareholder, board of directors, or other approval, and/or (c) the outcome or completion of a due diligence review by the Acceptable Bidder.

(viii) **Binding and Irrevocable**.  An Acceptable Bidder's Bid must include confirmation that the Bid is irrevocable unless and until the Debtors accept a higher Bid and such Acceptable Bidder is not selected as the Back-Up Bidder (as defined herein).

(ix)   **Joint Bids**.  The Debtors will be authorized to approve joint Bids in their reasonable discretion, after consultation with the Committee, on a case-by-case basis.

(x)    **Adequate Assurance Information**.  Each Bid must be accompanied by sufficient and adequate financial and other information (the "Adequate Assurance Information") to demonstrate, to the reasonable satisfaction of the Debtors after consultation with the Committee, that such Acceptable Bidder (a) has the financial wherewithal and ability to consummate the acquisition of the Assets and/or other transactions contemplated by the Bid (the "Closing"), and (b) can provide adequate assurance of future performance in connection with the proposed transaction.  The Bid must also identify a contact person that parties may contact to obtain additional Adequate Assurance Information.

(xi)   **Identity & Corporate Authority**.  Each Bid must fully disclose the identity of each entity that will be participating in connection with such Bid (including any equity owners or sponsors, if the purchaser is an entity formed for the purpose of

consummating the acquisition of the Assets), and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder is legally empowered, by power of attorney or otherwise, to complete the transactions on the terms contemplated by the parties. A Bid must also fully disclose any connections or agreements with the Debtors, any known, potential, prospective bidder or Qualified Bidder (as defined herein), or any officer, director, equity security holder, or other insider or affiliate of the Debtors.

(xii) **Authorization**. Each Bid must contain evidence that the Acceptable Bidder has obtained authorization or approval from its board of directors (or a comparable governing body reasonably acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

(xiii) **No Fees**. Each Acceptable Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed transaction, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code; *provided* that the Debtors are authorized in their discretion, after consultation with the Committee, to provide the Bid Protections to one or more Stalking Horse Bidders solely in accordance with these Bidding Procedures.

(xiv) **Adherence to Bidding Procedures**. By submitting its Bid, each Acceptable Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

(xv) **Regulatory Approvals and Covenants**. A Bid must set forth each regulatory and third-party approval required for the Acceptable Bidder to consummate the applicable Sale, if any, and the time period within which the Acceptable Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty (30) days following execution and delivery of the Plan and/or asset purchase agreement, those actions the Acceptable Bidder will take to ensure receipt of such approvals as promptly as possible).

(xvi) **As-Is, Where-Is**. Each Bid must include a written acknowledgement and representation that the Acceptable Bidder (a) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid, and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Acceptable Bidder's proposed purchase and sale agreement for the Assets.

(xvii) **Time Frame for Closing**.  A Bid by an Acceptable Bidder must identify a likely date (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid (as defined herein), within a time frame reasonably acceptable to the Debtors after consultation with the Committee.

(xviii) **Consent to Jurisdiction**.  The Acceptable Bidder must submit to the jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bidding Procedures, the Plan, the Sale documents, and the Closing, as applicable.

The Debtors shall promptly (but in no event later than 24 hours following receipt) deliver any and all bids received to the Committee's advisors.  Bids fulfilling all of the preceding requirements, as determined by the Debtors and their advisors, after consultation with the Committee and its advisors, will be deemed to be "Qualified Bids," and those parties submitting Qualified Bids will be deemed to be "Qualified Bidders."  The Debtors reserve the right, after consultation with the Committee, to work with any Acceptable Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid.  The Debtors may accept a single Qualified Bid or multiple Bids for non-overlapping material portions of the Debtors' Assets such that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders will be treated as a single Qualified Bidder for purposes of the Auction; *provided* that the Debtors also reserve the right, after consultation with the Committee, to conduct more than one Auction with respect to non-overlapping material portions of the Debtors' Assets).

Within two (2) business days after the Bid Deadline (as defined herein), the Debtors and their advisors, after consultation with the Committee and its advisors, will determine in their reasonable business judgment, which Acceptable Bidders are Qualified Bidders and will notify the Acceptable Bidders whether Bids submitted constitute, alone or together with other Bids, Qualified Bids so as to enable such Qualified Bidders to bid at the Auction.  Any Bid that is not deemed a Qualified Bid will not be considered by the Debtors.  For the avoidance of doubt, any Acceptable Bidders designated as Stalking Horse Bidders by the Debtors and in accordance with these Bidding Procedures will be deemed to be Qualified Bidders, and any stalking horse plan and/or asset purchase agreement submitted by such Stalking Horse Bidders will be deemed Qualified Bids, which qualify such Stalking Horse Bidders to participate in the Auction as Qualified Bidders.

**Bids must be sent to the Notice Parties so as to be <u>actually</u> <u>received</u> no later than August 26, 2022, at 12:00 p.m., prevailing Eastern Time (the "<u>Bid Deadline</u>").**

**E.      Evaluation of Qualified Bids.**

Prior to the Auction, the Debtors and their advisors, with consultation of the Committee and its advisors, will evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtors' reasonable business judgment, after consultation with the Committee, the highest or otherwise best Bid (the "Initial Minimum Overbid").  For the avoidance of doubt, the Debtors may select more than one Qualified Bid to collectively serve as the Initial Minimum Overbid if each such Qualified

Bid contemplates the purchase of different Assets.  In making such determination, the Debtors will take into account, among other things, (i) the amount of the Qualified Bid, (ii) the impact on customers, vendors, and employees, (iii) the certainty of a Qualified Bid leading to a confirmed plan, (iv) the timing associated with consummating such Qualified Bid, (v) the ability of the Qualified Bidder to obtain appropriate regulatory approvals, (vi) the execution risk attendant to any submitted Bids, and (vii) any other factors deemed relevant by the Debtors, after consultation with the Committee.  Within 24 hours of such determination, but in no event later than the start of the Auction, the Debtors will distribute copies of the Initial Minimum Overbid to each Qualified Bidder who has submitted a Qualified Bid.

If any Bid is determined by the Debtors not to be a Qualified Bid, the Debtors will refund such Acceptable Bidder's Good Faith Deposit and all accumulated interest thereon on or within five (5) business days after the Bid Deadline.

**F.     No Qualified Bids.**

If no Qualified Bids are received by the Bid Deadline, then the Debtors will promptly file a notice on the docket canceling the Auction.

**G.     Auction.**

If one or more Qualified Bids is received by the Bid Deadline, the Debtors will conduct the Auction with respect to the Debtors' Assets.  For the avoidance of doubt, the Debtors, after consultation with the Committee, may also conduct more than one Auction with respect to non-overlapping material portions of the Debtors' Assets.  The Auction will commence on August 29, 2022, at 10:00 a.m., prevailing Eastern Time, at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, or such later time or other place (including virtually) as the Debtors will timely notify any Stalking Horse Bidders and all other Qualified Bidders.

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

(i)     the Auction will be conducted openly;

(ii)    only the Qualified Bidders, including any Stalking Horse Bidders, will be entitled to bid at the Auction;

(iii)   the Qualified Bidders, including any Stalking Horse Bidders, must appear in person or through duly-authorized representatives at the Auction (except to the extent that the Auction is held virtually, in which case such Qualified Bidders must appear virtually);

(iv)    except to the extent agreed upon by the Debtors, after consultation with the Committee, only such authorized representatives of each of the Qualified Bidders (including any Stalking Horse Bidders), the Debtors, the Committee, and their respective advisors will be permitted to attend the Auction;

(v)      bidding at the Auction will begin at the Initial Minimum Overbid;

(vi)     subsequent Bids at the Auction, including any Bids by any Stalking Horse Bidder, must be made in minimum increments (which may include cash or non-cash consideration) in an amount that the Debtors determine in their reasonable business judgment after consultation with the Committee (and in amounts as announced to all Qualified Bidders prior to the commencement of the Auction), after payment of the Bid Protections to any Stalking Horse Bidders, if applicable; the Debtors will estimate the value of non-cash consideration offered, if applicable, in their business judgment, after consultation with the Committee;

(vii)    each Qualified Bidder will be informed of the terms of the previous Bids;

(viii)   the bidding will be transcribed to ensure an accurate recording of the bidding at the Auction;

(ix)     each Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the Sale;

(x)      the Auction will not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an overbid at the Auction to the then prevailing highest Bid, subject to the Debtors' right, after consultation with the Committee, to require last and final Bids to be submitted on a "blind" basis;

(xi)     the Debtors reserve the right, in their reasonable business judgment, after consultation with the Committee, to adjourn the Auction one or more times to, among other things, (a) facilitate discussions between the Debtors and Qualified Bidders, (b) allow Qualified Bidders to consider how they wish to proceed, and (c) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing amount; and

(xii)    the Auction will be governed by such other Auction Procedures as may be announced by the Debtors and their advisors, after consultation with the Committee, from time to time on the record at the Auction; *provided* that such other Auction Procedures are (a) not inconsistent with the Bidding Procedures Order, these Bidding Procedures, the Bankruptcy Code, or any other order of the Bankruptcy Court, (b) disclosed orally or in writing to all Qualified Bidders, and (c) reasonably determined by the Debtors, in good faith, to further the goal of attaining the highest or otherwise best offer.

For the avoidance of doubt, nothing in the Auction Procedures will prevent the Debtors from exercising their respective fiduciary duties under applicable law (as reasonably determined in good faith by the Debtors, after consultation with the Committee).

**H.        Acceptance of the Successful Bid or Successful Bids.**

Upon the conclusion of the Auction (if such Auction is conducted), the Debtors, in the exercise of their reasonable, good-faith business judgment, after consultation with the Committee, will identify the highest or otherwise best Qualified Bid or Qualified Bids (each, a "<u>Successful Bid</u>"), which will be determined by considering, among other things, (a) the type and amount of Assets sought to be purchased in the Bid or Bids, (b) the total expected consideration to be received by the Debtors, (c) the likelihood of the Qualified Bidder or Qualified Bidders' ability to close a transaction and the timing thereof (including any anticipated delays to Closing and the cost to the Debtors of such delays), (d) the expected net benefit to the estates, including treatment of the Account Holder Claims (e) the impact on vendors, customers, and employees, and (f) any other criteria as may be considered by the Debtors and the Committee in their reasonable, good-faith business judgment.    For the avoidance of doubt, the Debtors, after consultation with the Committee, may select more than one Qualified Bid to collectively serve as a Successful Bid if each such Qualified Bid contemplates the purchase of different Assets.    The Qualified Bidder or Qualified Bidders having submitted the Successful Bid or Successful Bids will be deemed the "<u>Winning Bidder</u>" or "<u>Winning Bidders</u>," as applicable. The Winning Bidder or Winning Bidders and the Debtors must, as soon as commercially reasonably practicable, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which such Successful Bid or Successful Bids were made.

The Debtors will present the results of the Auction to the Bankruptcy Court at the Sale Hearing or Confirmation Hearing (each as defined herein), at which certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that (a) the Auction was conducted, and the Winning Bidder or Winning Bidders were selected, in accordance with these Bidding Procedures, (b) the Auction was fair in substance and procedure, and (c) consummation of the Successful Bid or Successful Bids will provide the highest or otherwise best value for the Debtors' Assets and is in the best interests of the Debtors' estates.

If an Auction is held, the Debtors will be deemed to have accepted a Qualified Bid only when (a) such Qualified Bid is declared a Successful Bid at the Auction, and (b) definitive documentation has been executed in respect thereof.    Such acceptance is conditioned upon approval by the Bankruptcy Court of the Successful Bid or Successful Bids and entry of an order approving such Successful Bid or Successful Bids (in the case of a sale under section 363 of the Bankruptcy Code, the "<u>Sale Order</u>" or in the case of a sale under a chapter 11 plan, the "<u>Confirmation Order</u>").

**I.        Sale Hearing.**

In the event a transaction is consummated pursuant to section 363 of the Bankruptcy Code, a hearing before the Bankruptcy Court to consider approval of the Successful Bid or Successful Bids (the "<u>Sale Hearing</u>"), pursuant to which the Debtors and the Winning Bidder or Winning Bidders will consummate the Sale, will be held on September 7, 2022, at [●]:00 a.m., prevailing Eastern Time, before the Honorable Michael E. Wiles, United States Bankruptcy Judge for the Bankruptcy Court for the Southern District of New York at One Bowling Green, New York, New York 10004.

**The Sale Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Sale Hearing.  No further notice of any such continuance will be required to be provided to any party.**

At the Sale Hearing, the Debtors will present the Successful Bid or Successful Bids to the Bankruptcy Court for approval.

**J.      Confirmation Hearing.**

In the event a transaction is consummated through a Plan, a hearing before the Bankruptcy Court to consider confirmation of the Plan (the "Confirmation Hearing") will be held on [October 31], 2022, at [●]:00 [a/p].m., prevailing Eastern Time, before the Honorable Michael E. Wiles, United States Bankruptcy Judge for the Bankruptcy Court for the Southern District of New York at One Bowling Green, New York, New York 10004, or otherwise in accordance with any scheduling orders entered by the Bankruptcy Court relating to confirmation of the Plan or approval of any disclosure statement related thereto.

**The Confirmation Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Confirmation Hearing.  No further notice of any such continuance will be required to be provided to any party.**

At the Confirmation Hearing, the Debtors will present the Plan, which will incorporate the terms of the Successful Bid or Successful Bids, to the Bankruptcy Court for confirmation.

**K.      Designation of Back-Up Bidder or Back-Up Bidders.**

If for any reason the Winning Bidder or Winning Bidders fail to consummate the Qualified Bid or Qualified Bids within the time permitted after the entry of the Sale Order approving the Sale to the Winning Bidder or Winning Bidders, then the Qualified Bidder or Qualified Bidders with the next-highest or otherwise second-best Bid or Bids (each, a "Back-Up Bidder"), as determined by the Debtors after consultation with their advisors and the Committee and its advisors, at the conclusion of the Auction and announced at that time to all the Qualified Bidders participating therein, will automatically be deemed to have submitted the highest or otherwise best Bid or Bids (each, a "Back-Up Bid"), and the Debtors will be authorized, but not required, to consummate the transaction pursuant to the Back-Up Bid or Back-Up Bids as soon as is commercially reasonable without further order of the Bankruptcy Court upon at least 24 hours advance notice, which notice will be filed with the Bankruptcy Court.  Upon designation of the Back-Up Bidder or Back-Up Bidders at the Auction, the Back-Up Bid or Back-Up Bids must remain open until the Closing of the Successful Bid or Successful Bids, as applicable, notwithstanding any outside date set forth in such Back-Up Bidder or Back-Up Bidders' proposed purchase agreement or chapter 11 plan.

**L.      Return of Good Faith Deposit to Qualified Bidders that Submit Qualified Bids.**

The Good Faith Deposit of the Winning Bidder or Winning Bidders will, upon consummation of the Successful Bid or Successful Bids, become property of the Debtors' estates and be credited to the portion of the Purchase Price.  If the Winning Bidder or Winning Bidders (or Back-Up Bidder or Back-Up Bidders, if applicable) fails to consummate the Successful Bid or

Successful Bids (or Back-Up Bid or Back-Up Bids, if applicable), then the Good Faith Deposit of such Winning Bidder or Winning Bidders (or Back-Up Bidder or Back-Up Bidders, if applicable) will be irrevocably forfeited to the Debtors and may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors.

The Good Faith Deposit of any unsuccessful Qualified Bidders (except for the Back-Up Bidder or Back-Up Bidders and any Stalking Horse Bidders) will be returned within five (5) business days after consummation of the Sale or upon the permanent withdrawal of the proposed Sale. The Good Faith Deposit of the Back-Up Bidder or Back-Up Bidders, if any, will be returned to such Back-Up Bidder or Back-Up Bidders no later than five (5) business days after the Closing with the Winning Bidder or Winning Bidders. The return of any Good Faith Deposit of any Stalking Horse Bidders will be subject to the terms of such Stalking Horse Bidders' chapter 11 plan or asset purchase agreement, as applicable.

All deposits shall be held in escrow and at no time shall be deemed property of the Debtors' estates absent further order of the Bankruptcy Court.

**M.    Reservation of Rights.**

Subject to prior written consent of the Committee or further order of the Bankruptcy Court, the Debtors, reserve their rights to modify these Bidding Procedures in good faith, to further the goal of attaining the highest or otherwise best offer, or impose, at or prior to the Auction, additional terms and conditions on the Sale. The Debtors shall provide notice of any such modification to any Qualified Bidder, including any Stalking Horse Bidders. Notwithstanding anything to the contrary herein, the Debtors, after consultation with the Committee, may elect to consummate the Sale under section 363(f) of the Bankruptcy Code as opposed to pursuant to the Plan with the Winning Bidder or Winning Bidders, but, for the avoidance of doubt, the Debtors prefer that the Sale be accomplished through the Plan.

**N.    Consent to Jurisdiction.**

All Qualified Bidders at the Auction will be deemed to have consented to the jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Sale, the Auction, the construction and enforcement of these Bidding Procedures, the Bid Requirements, and/or the Bid Documents, as applicable.

Any parties raising a dispute relating to these Bidding Procedures must request that such dispute be heard by the Bankruptcy Court on an expedited basis.

**O.    Fiduciary Out.**

Nothing in these Bidding Procedures will require the board of directors, board of managers, or such similar governing body of a Debtor or non-debtor affiliate to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent such board of directors, board of managers, or such similar governing body reasonably determines in good faith, after consultation with the Committee, that taking such action, or refraining from taking such

action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law.

**P.      Sale Is As Is/Where Is.**

The Assets sold pursuant to these Bidding Procedures will be conveyed at the Closing in their then-present condition, "**as is, with all faults, and without any warranty whatsoever, express or implied.**"

\* \* \* \* \*

## **Exhibit 2**

**Transaction Notice**

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC. *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF BIDDING PROCEDURES,
## POTENTIAL AUCTION, AND SALE HEARING

      **PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors")[2] each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on July 5, 2022 (the "Petition Date").

      **PLEASE TAKE FURTHER NOTICE** that on July 21, 2022, the Debtors filed a motion [Docket No. 126] (the "Motion") seeking, among other things, the entry of an order approving (a) bidding procedures (the "Bidding Procedures") in connection with the proposed auction (the "Auction") and sale (the "Sale") of the Debtors' equity or some or all of their (the "Assets") to one or more successful bidders, (b) the selection of a Stalking Horse Bidder and the payment of Bid Protections, in certain instances as set forth in the Bidding Procedures, and (c) scheduling dates and deadlines in connection with approval of the Sale (the "Sale Schedule").

      **PLEASE TAKE FURTHER NOTICE** that on [●], 2022, the Bankruptcy Court entered an order [Docket No. [●]] (the "Bidding Procedures Order") granting certain of the relief sought

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]    Capitalized terms used in this notice and not immediately defined have the meanings given to such terms in the Bidding Procedures (as defined herein).

in the Motion, including, among other things, approving the Bidding Procedures and the Sale/Confirmation Schedule.

### Contact Persons for Parties Interested in Submitting a Bid

The Bidding Procedures set forth in detail the requirements for submitting Qualified Bids, and any person interested in making an offer to purchase the Debtors' equity and/or Assets **must** comply strictly with the Bidding Procedures. **Only Qualified Bids that are submitted in accordance with the Bidding Procedures will be considered by the Debtors**. Any persons interested in making an offer to purchase the Debtors' equity and/or Assets should contact:

| **Proposed Financial Advisor and Investment Banker to the Debtors** | **Proposed Counsel to the Debtors** |
|---|---|
| Moelis & Company LLC<br>399 Park Avenue, 3rd Floor<br>New York, New York 10022<br>Attn: Jared Dermont jared.dermont@moelis.com)<br>Barak Klein (barak.klein@moelis.com)<br>Michael DiYanni (michael.diyanni@moelis.com)<br>Brian Tichenor (brian.tichenor@moelis.com) | Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn: Joshua A. Sussberg, P.C. (jsussberg@kirkland.com)<br>Christopher Marcus, P.C. (cmarcus@kirkland.com)<br>Christine A. Okike, P.C. (christine.okike@kirkland.com)<br>Allyson B. Smith (allyson.smith@kirkland.com) |
| **Proposed Financial Advisor to the Committee** | **Proposed Counsel to the Committee** |
| FTI Consulting<br>1166 Avenue of the Americas<br>New York, NY 10036<br>Attn: Steven Simms (Steven.Simms@FTIConsulting.com)<br>Marshall Eisler (Marshall.Eisler@fticonsulting.com) | McDermott Will & Emery LLP<br>One Vanderbilt Avenue<br>New York, New York 10017<br>Attn: Darren Azman (dazman@mwe.com)<br>Charles Gibbs (crgibbs@mwe.com)<br>Gregg Steinman (gsteinman@mwe.com) |

### Obtaining Information

Copies of the Bidding Procedures Order, the Bidding Procedures, and any other related documents are available upon request to Stretto, Inc., the Debtors' notice and claims agent, by calling 855.473.8665 (Toll-Free) or 949.271.6507 (International) or by visiting www.cases.stretto.com/Voyager/.

### The Sale/Confirmation Schedule

1.  The deadline to submit a Qualified Bid (the "Bid Deadline") is **August 26, 2022, at 12:00 p.m., prevailing Eastern Time**.

2.  The Auction for the Debtors' equity and/or or Assets, if one is necessary, will commence on **August 29, 2022, at 10:00 a.m., prevailing Eastern Time**, at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, or at such later time or other place as the Debtors will timely notify any Stalking Horse Bidders and all other Qualified Bidders.

3.  The deadline to file an objection with the Bankruptcy Court to the Sale is **August 31, 2022, at 4:00 p.m., prevailing Eastern Time** (the "Sale Objection Deadline").

4.      A hearing to consider the Sale will be held before the Honorable Michael E. Wiles of the Bankruptcy Court on **September 7, 2022, at [●]:00 [a/p].m., prevailing Eastern Time**, or such other date as determined by the Bankruptcy Court, at One Bowling Green, New York, New York 10004-1408.

## Filing Objections to the Sale

Any objection to the Sale must (a) be in writing, (b) state with specificity the nature of such objection, (c) comply with the applicable provisions of the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and any case management order entered by the Bankruptcy Court, and (d) be filed with the Bankruptcy Court and served upon, so as to be **actually received** on or prior to the Sale Objection Deadline, as applicable, by the following parties (i) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C. (jsussberg@kirkland.com), Christopher Marcus, P.C. (cmarcus@kirkland.com), Christine A. Okike, P.C. (christine.okike@kirkland.com), and Allyson B. Smith (allyson.smith@kirkland.com); (ii) the Debtors' proposed financial advisor and investment banker to the Debtors, Moelis & Company LLC, 399 Park Avenue, 4th Floor, New York, New York 10022, Attn.: Jared Dermont (jared.dermont@moelis.com), Barak Klein (barak.klein@moelis.com), Mike DiYanni (michael.diyanni@moelis.com), and Brian Tichenor (brian.tichenor@moelis.com); (iii) proposed counsel to the Committee, McDermott Will & Emery LLP, One Vanderbilt Avenue, New York, New York 10017, Attn: Darren Azman (dazman@mwe.com), and Charles Gibbs (crgibbs@mwe.com); and (iv) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, New York 10014, Attn:  Richard Morrissey and Mark Bruh.

## Consequences of Failing to Timely File an Objection

**Any party or entity who fails to timely file an objection to the Sale on or before the Sale Objection Deadline, as applicable, in accordance with the Bidding Procedures Order, shall be forever barred from asserting any objection to the Sale.**

\*        \*        \*        \*        \*

## **EXHIBIT B**

**Redline**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER (I) APPROVING THE BIDDING PROCEDURES,**
**(II) SCHEDULING THE BID DEADLINES AND THE AUCTION,**
**(III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF,**
**(IV) SCHEDULING HEARINGS AND OBJECTION DEADLINES WITH**
**RESPECT TO THE DEBTORS' SALE, DISCLOSURE STATEMENT,**
**AND PLAN CONFIRMATION AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the above captioned debtors and debtors in possession (the "Debtors") for the entry of an order (this "Order"), (a) authorizing and approving the bidding procedures attached hereto as **Exhibit 1** (the "Bidding Procedures")[2] in connection with the sale of the Assets, (b) approving the Bid Protections, (c) establishing certain dates and deadlines, including the ~~the~~ Bid Deadline, and the date of the Auction, if any, (d) approving the manner of notice of the Auction, if any, (e) scheduling dates and deadlines in connection with approval of a Sale, Disclosure Statement, and confirmation of a Plan, and (f) granting related relief, as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2] Capitalized terms used but not defined herein have the meanings given to them in the Bidding Procedures.

district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS THAT:**

A.      The Debtors have articulated good and sufficient reasons for authorizing and approving the Bidding Procedures, which are fair, reasonable, and appropriate under the circumstances and designed to maximize the recovery on, and realizable value of the Debtors' enterprise, including with respect to the proposed procedures for providing Bid Protections as determined by the Debtors in an exercise of their business judgment, subject to, and in accordance with, the procedures contained in this Order and the Bidding Procedures.

B.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the preceding findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the preceding conclusions of law constitute findings of fact, they are adopted as such.

C.      The Debtors' proposed notice of the Motion, the Bidding Procedures, the Hearing and the proposed entry of this Order is (i) appropriate and reasonably calculated to provide all

interested parties with timely and proper notice, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and (iii) adequate and sufficient under the circumstances of these chapter 11 cases, and no other or further notice is required. A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to the following parties and/or their respective counsel, as applicable: (a) the U.S. Trustee; (b) the ~~holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis)~~Committee; (c) the lender under the Debtors' prepetition loan facility; (d) the United States Attorney's Office for the Southern District of New York; (e) the Internal Revenue Service; (f) the Toronto Stock Exchange; (g) the attorneys general in the states where the Debtors conduct their business operations; (h) the Committee; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.

D.      The Bid Procedures comply with the requirements of Local Rule 6004-1.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as set forth herein.

2.      All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled prior to or at the Hearing are overruled.

**I.      Important Dates and Deadlines.**

3.      **Final Bid Deadline**.  August 26, 2022, at 12:00 p.m., prevailing Eastern Time, is the deadline by which all Qualified Bids must be **actually received** by the parties specified in the Bidding Procedures.

4.      **Stalking Horse Bidders and Bid Protections**.  ~~The~~Subject in all respects to the noticing requirements and objection procedures set forth in paragraph 15 and 16 of this Order and the Bidding Procedures, the Debtors, upon entry of this Order and at any time up until ~~two~~

~~calendar~~seven days prior to the Auction, shall be authorized, but are not obligated or directed, in an exercise of their business judgment, to select one or more Stalking Horse Bidders with respect to some or all of the Debtors' Assets and to provide such Stalking Horse Bidders with Bid Protections without further action or order by this Court.

5. **Auction**. August 29, 2022 at 10:00 prevailing Eastern Time is the date and time the Auction, if one is needed, will be held at the offices of proposed counsel to the Debtors identified below or, at the election of the Debtors, virtually via Zoom or similar means: Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York, 10022.  The Debtors shall send written notice of the date, time, and place of the Auction to the Qualified Bidders no later than two business days before such Auction, and will post notice of the date, time, and place of the Auction no later than two business days before such Auction on the website of the Debtors' notice, claims, and solicitation agent, Stretto, Inc., at www.cases.stretto.com/Voyager.  For the avoidance of doubt, the Debtors, after consultation with the Committee, may also conduct more than one Auction with respect to non-overlapping material portions of the Debtors' Assets.

6. **Sale Objection Deadline**.  August 31, 2022, at 4:00 p.m., prevailing Eastern Time, is the deadline by which objections to the Sale must be filed with the Court and served so as to be actually received by the appropriate notice parties.; *provided, however,* objections relating to the conduct, manner, or results of the Auction, the selection of the Winning Bidder, or any other objections that relate to, or arise from, the Auction must be filed no later than 72 hours following the close of the Auction.

7. **Sale Hearing**.  September 7, 2022, at [  ]:00 [a/p].m., prevailing Eastern Time, is the date and time for the hearing for the Court to consider the Successful Bid or Successful Bids, if needed.

8. **Disclosure Statement Objection Deadline**. ~~October 5, 2022,~~Provided that the Debtors have filed the Disclosure Statement on or before August 12, 2022, then September 9, 2022 at 4:00 p.m., prevailing Eastern Time~~,~~ is the deadline by which objections to the Disclosure Statement must be filed with the Court and served so as to be actually received by the appropriate notice parties.

9. **Disclosure Statement Hearing**. ~~October 12~~Provided that the Debtors have filed the Disclosure Statement on or before August 12, 2022, then September 16, 2022, at [  ]:00 [a/p].m., prevailing Eastern Time, is the date and time for the hearing for the Court to consider approval of the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code.

10. **Solicitation Deadline**. ~~October~~Except as otherwise set forth in an order approving the Disclosure Statement and related deadlines, or any further order of this Court, September 2~~1~~6, 2022, is the deadline for distributing solicitation packages, including ballots, to holders of claims entitled to vote to accept or reject the Plan.

11. **Plan Objection Deadline**. ~~November 16~~Except as otherwise set forth in an order approving the Disclosure Statement and related deadlines, or any further order of this Court, October 24, 2022, at 4:00 p.m., prevailing Eastern Time, is the deadline by which objections to the Plan must be filed with the Court and served so as to be actually received by the appropriate notice parties.

12. **Voting Deadline**. ~~November 16~~Except as otherwise set forth in an order approving the Disclosure Statement and related deadlines, or any further order of this Court, and subject to all procedures governing voting contained therein, October 24, 2022, at 4:00 p.m., prevailing Eastern Time, is the deadline by which all ballots must be properly executed, completed, and

delivered so that they are actually received by the Debtors' notice, claims, and solicitation agent, Stretto, Inc.

13. **Confirmation Hearing**. ~~November~~Except as otherwise set forth in an order approving the Disclosure Statement and related deadlines, or any further order of this Court, October ~~23~~1, 2022, at [ ]:00 [a/p].m., prevailing Eastern Time, is the date and time for the hearing for the Court to consider confirmation of the Plan, if needed.

## II. Auction, Bidding Procedures, Transaction Notice, and Related Relief.

14. The Bidding Procedures, ~~substantially in the form~~as attached hereto as **Exhibit 1**, are incorporated herein and are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to any proposed Sale. Any party desiring to submit a Bid shall comply with the Bidding Procedures and this Order. The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures; *provided, however, that any modifications to the Bidding Procedures shall not be effective without consent of the Committee or further order of this Court*.

15. The Bid Protections are approved on the terms set forth in the Bidding Procedures and the Debtors are authorized, but not directed, to incur and pay such Bid Protections to any or no Stalking Horse Bidder, in an exercise of their business judgment and following consultation with the Committee, without further action or order by the Court; *provided* ~~that, for the avoidance of doubt, the amount of any Breakup Fee shall not exceed three percent of,~~ *however*, Bid Protections may not be granted to any Stalking Horse Bidder~~'s proposed purchase price.~~ without filing a notice on the docket (a "Stalking Horse Notice") identifying the Stalking Horse Bidder, the material terms of the Stalking Horse Bid (including the purchase price, the Assets subject to such Stalking Horse Bid, and the treatment of Account Holder Claims), and the

amount and terms of any Bid Protections proposed to be offered to the Stalking Horse Bidder, after which the Committee and any party in interest will have an opportunity to object by filing and serving a written objection to the designation of the Stalking Horse Bidder or to the Bid Protections (a "Stalking Horse Objection") within three (3) business days following the filing of such Stalking Horse Notice.

16.    If a timely Stalking Horse Objection is filed, the proposed designation of the Stalking Horse Bidder and Bid Protections shall not be deemed approved unless approved by separate order of the Court. If no Stalking Horse Objection is timely filed and served with respect to a Stalking Horse Bid, the Bid Protections with respect to such Stalking Horse Bidder shall be deemed approved without further order of the Court upon the expiration of three (3) business days after service of the Stalking Horse Notice, and shall be payable in accordance with, and subject to the terms of, the applicable agreement with the Stalking Horse Bidder.  Except as expressly provided for herein, no other termination payments are authorized or permitted under this Order.  In no event shall the amount of any Breakup Fee (if granted) exceed three percent of any Stalking Horse Bidder's proposed purchase price.

17.    16. No person or entity, other than a Stalking Horse Bidder granted Bid Protections in accordance with this Order, shall be entitled to any expense reimbursement, break-up fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for expense reimbursement or any fee of any nature, whether by virtue of Bankruptcy Code section 503(b) or otherwise.

18.    17. Any deposit provided by a Stalking Horse Bidder or other Qualified Bidder shall be held in escrow by the Debtors or their agent, and shall not become property of the

Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the applicable escrow agreement or order of this Court.

19.    ~~18.~~ The Transaction Notice, substantially in the form attached hereto as **Exhibit 2**, is hereby approved.  As soon as reasonably practicable following the entry of this Order, the Debtors will cause the Transaction Notice to be served upon (a) the United States Attorney's Office for the Southern District of New York, (b) the Committee, (c) the Internal Revenue Service, (~~c~~d) the attorneys general for the states in which the Debtors operate, (~~d~~e) any parties known or reasonably believed to have expressed an interest in the Debtors' assets, and (~~e~~f) any party that has requested notice pursuant to Bankruptcy Rule 2002.

**III.    Miscellaneous**.

~~19.    Nothing in this Order or the Bidding Procedures shall be deemed a waiver of any rights, remedies or defenses that any party (including the sureties, the Debtors, the Debtors' lenders, any Stalking Horse Bidder, if applicable, or any other prospective purchaser) has or may have under applicable bankruptcy and non-bankruptcy law, under any indemnity agreements, surety bonds or related agreements or any letters of credit relating thereto, or any rights, remedies or defenses of the Debtors with respect thereto, including seeking Bankruptcy Court relief with regard to the Auction, the Bidding Procedures, the Sale, and any related items (including, if necessary, to seek an extension of the Bid Deadline).~~

20.    The Court, at the request of the Debtors and subject to its availability, may modify the dates of and adjourn any hearing set by this Order without further Order of this Court, *provided* that the Debtors will serve notice to all requisite parties informing them of such modification.

8

21.     The failure to include or reference a particular provision of the Bidding Procedures specifically in this Order shall not diminish or impair the effectiveness or enforceability of such a provision.

22.     In the event of any inconsistencies between this Order and the Motion and/or the Bidding Procedures, this Order shall govern in all respects.

23.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

24.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

25.     The requirements set forth in Local Rule 9013-1(a) are satisfied.

26.     Notwithstanding anything to the contrary in the Motion, this Order, or any findings announced at the Hearing, nothing in the Motion, this Order, or announced at the Hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the United States Securities and Exchange Commission to challenge transactions involving crypto tokens on any basis is expressly reserved.

27.     Nothing contained in this Order or the Bidding Procedures shall impair, abrogate, or otherwise be deemed a waiver of the Committee's rights to object to the selection of the Winning Bidder, the Sale, the Disclosure Statement, the Plan, or otherwise, and the rights of the Committee are fully preserved.

28.     26. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

29.     27. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

30.    28. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

31.    29. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York

Dated: _____, 2022

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____
                                              )

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC. *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

_____

### BIDDING PROCEDURES FOR THE SUBMISSION, RECEIPT, AND ANALYSIS OF BIDS IN CONNECTION WITH THE SALE OF THE DEBTORS

On July 5, 2022, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

On [ ], 2022, the Bankruptcy Court entered an order [Docket No. [ ]] (the "Bidding Procedures Order") approving, among other things, these bidding procedures (the "Bidding Procedures"). These Bidding Procedures set forth the process by which the Debtors are authorized to solicit the highest or otherwise best bids (each, a "Bid") and conduct an auction (the "Auction") for the sale (the "Sale") of 100% of the Debtors' equity or some or all of their assets (the "Assets").

The Sale will be implemented pursuant to section 363 of the Bankruptcy Code or a chapter 11 plan of reorganization (as modified, amended, or supplemented from time to time, the "Plan").

> Copies of the Bidding Procedures Order or any other documents in the Debtors' chapter 11 cases are available upon request to Stretto. Inc., by calling (855) 473-8665 (Toll-Free) or (949) 271-6507 (International), or by visiting www.cases.stretto.com/Voyager/.

**A.    Participation Requirements.**

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in submitting a Bid (a "Potential Bidder") must deliver (unless previously delivered) to each of (i) proposed counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

(jsussberg@kirkland.com), Christopher Marcus, P.C. (cmarcus@kirkland.com), Christine A. Okike, P.C. (christine.okike@kirkland.com), and Allyson B. Smith (allyson.smith@kirkland.com); and (ii) the Debtors' proposed financial advisor and investment banker to the Debtors, Moelis & Company LLC, 399 Park Avenue, 4th Floor, New York, New York 10022, Attn.: Jared Dermont (jared.dermont@moelis.com), Barak Klein (barak.klein@moelis.com), Mike DiYanni (michael.diyanni@moelis.com), and Brian Tichenor (brian.tichenor@moelis.com brian.tichenor@moelis.com); and (iii) proposed counsel to the Committee, McDermott Will & Emery LLP, One Vanderbilt Avenue, New York, New York 10017, Attn: Darren Azman (dazman@mwe.com) (collectively, the "Notice Parties"):

(i)     a written disclosure of the identity of each entity that will be bidding for 100% of the Debtors' equity or Assets[2] or otherwise participating in connection with such Bid;

(ii)    an executed confidentiality agreement on terms reasonably acceptable to the Debtors (the "Confidentiality Agreement"), to the extent not already executed;

(iii)   a non-binding description of the Assets in which such Potential Bidder may be interested in placing a Bid and a non-binding estimate of the purchase price to be paid, with reasonable specificity, including treatment for the Account Holder Claims;[23] and

(iv)    proof documents provided by the Potential Bidder of evidencing its financial capacity to close a proposed transaction, which may include, without limitation, current unaudited or verified financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach), the adequacy of which will be assessed by the Debtors and their advisors, in their reasonable discretion and in consultation with the Committee and their advisors ((i) through (iv), collectively, the "Bid Documents").

Within four As promptly as practicable, but in no event later than three (3) business days after a Potential Bidder delivers the Bid Documents, the Debtors will determine and notify that Potential Bidder in their reasonable business judgment, after consultation with the Committee, whether such Potential Bidder has submitted acceptable Bid Documents (any such Potential Bidder being referred to as an "Acceptable Bidder")., and the Debtors will inform such Potential Bidder regarding whether such Potential Bidder is an Acceptable Bidder. In the event

---

[2]   Capitalized terms used but not defined herein have the meanings given to them in the *Debtors' Motion Seeking Entry of an Order (I) Approving the Bidding Procedures and Related Dates and Deadlines, (II) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Sale, Disclosure Statement, and Plan Confirmation, and (III) Granting Related Relief* [Docket No. 126].

[23]   "Account Holder Claims" shall have the meaning ascribed to such term in the *Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 17].

that the Debtors deem that a Potential Bidder has not met the requirements for being deemed an Acceptable Bidder, the Debtors must promptly inform the Committee of such determination (and the reasons therefor).

**B.    Due Diligence.**

(i)    **Access to Due Diligence.**

Only Acceptable Bidders will be eligible to receive due diligence and access to additional non-public information regarding the Assets and the Debtors.  The Debtors will provide to each Acceptable Bidder reasonable due diligence information concerning those Assets that are the subject of such Acceptable Bidder's Bid (or such other Assets if the list provided in accordance with A.iii above is amended or modified), as requested by such Acceptable Bidder in writing, as soon as reasonably practicable after such request, but shall only extend to those Assets (or such other Assets if the list provided in accordance with A.iii above is amended or modified) that are the subject of such Acceptable Bidder's Bid.  The Debtors will post substantially all written due diligence provided to any Acceptable Bidder to the Debtors' electronic data room.  The due diligence period will end on the Bid Deadline (as defined herein), after which the Debtors will have no obligation to furnish any due diligence information, unless otherwise deemed reasonably appropriate by the Debtors after consultation with the Committee.

In connection with the provision of due diligence information to Acceptable Bidders, the Debtors will not furnish any confidential information relating to the Debtors, the Debtors' Assets or liabilities, or the Sale to any person except other than an Acceptable Bidder or such Acceptable Bidder's duly-authorized representatives, in each case, to the extent provided in the applicable Confidentiality Agreement and only to the extent of the Assets that are the subject of such Acceptable Bidder's Bid.

The Debtors and their financial advisors will coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders; *provided* that the Debtors may decline to provide such information to Acceptable Bidders who, in the Debtors' reasonable business judgment and after consultation with the Committee, have not established that such Acceptable Bidders intend in good faith to, or have the capacity to, consummate their Bid.  No conditions relating to the completion of due diligence will be permitted to exist after the Bid Deadline (as defined herein).

The Debtors also reserve the right in their reasonable business judgment, after consultation with the Committee, to withhold any diligence materials that the Debtors reasonably determine are sensitive, proprietary, or otherwise not appropriate for disclosure to an Acceptable Bidder who the Debtors reasonably determine is a competitor of the Debtors or is affiliated with any competitor of the Debtors.  Neither the Debtors nor their representatives will be obligated to furnish information of any kind whatsoever to any person that is not determined to be an Acceptable Bidder.

Each Acceptable Bidder will be deemed to acknowledge and represent that it:  (a) has had an opportunity to conduct any and all due diligence regarding the Debtors' Assets and liabilities that are the subject of the Auction to the extent of the Assets and liabilities that are the subject of

their Bid prior to making any such Bids; (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise regarding the Debtors' Assets or liabilities, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures. Neither the Debtors nor any of their employees, officers, directors, affiliates, subsidiaries, representatives, agents, advisors, or professionals are responsible for, and will bear no liability with respect to, any information obtained by Acceptable Bidders in connection with the Sale.

> The Debtors have designated Moelis & Company LLC, 399 Park Avenue, 4th Floor, New York, New York 10022, Attn: Jared Dermont (jared.dermont@moelis.com), Mike DiYanni (michael.diyanni@moelis.com), Barak Klein (barak.klein@moelis.com, Brian Tichenor (brian.tichenor@moelis.com), Mike Mestayer (michael.mestayer@moelis.com) or Cullen Murphy (cullen.murphy@moelis.com), to coordinate all reasonable requests for additional information and due diligence access.

4

(ii)    **No Communications Among Acceptable Bidders.**

There must be no communications between and amongst Acceptable Bidders, unless the Debtors, after consultation with the Committee, have previously authorized such communication in writing.    The Debtors reserve the right, in their reasonable business judgment, after consultation with the Committee, to disqualify any Acceptable Bidders that have communications between and amongst themselves; *provided* that if any Acceptable Bidder that believes it has been wrongfully disqualified hereunder may file an emergency motion with the Bankruptcy Court seeking the reversal of such disqualification.

C.    **Stalking Horse Bidders and Bid Protections.**

Upon entry of the Bidding Procedures Order and up until ~~two calendar~~seven (7) days prior to the Auction, the Debtors shall be authorized, but not obligated, in an exercise of their business judgment and following consultation with the Committee, to:  (a) select one or more Acceptable Bidders to act as stalking horse bidders in connection with the Auction (each, a "Stalking Horse Bidder"); and (b) in connection with any stalking horse agreement with a Stalking Horse Bidder (i) provide a breakup fee (the "Breakup Fee"), and/or (ii) agree to reimburse reasonable and documented out-of-pocket fees and expenses (the "Expense Reimbursement," and together with the Breakup Fee, the "Bid Protections")~~.~~*; provided, however,* Bid Protections may not be granted to any Stalking Horse Bidder without filing a notice on the docket (a "Stalking Horse Notice") identifying the Stalking Horse Bidder, the material terms of the Stalking Horse Bid (including the purchase price, the Assets subject to such Stalking Horse Bid, and the treatment of Account Holder Claims), and the amount and terms of any Bid Protections proposed to be offered to the Stalking Horse Bidder, after which the Committee and any party in interest will have an opportunity to object by filing and serving a written objection to the designation of the Stalking Horse Bidder or to the Bid Protections (a "Stalking Horse Objection") within three (3) business days following the filing of such Stalking Horse Notice.  If a timely Stalking Horse Objection is filed, the proposed designation of the Stalking Horse Bidder and Bid Protections shall not be deemed approved unless approved by separate order of the Bankruptcy Court. If no Stalking Horse Objection is timely filed and served with respect to a Stalking Horse Bid, the Bid Protections with respect to such Stalking Horse Bidder shall be deemed approved without further order of the Bankruptcy Court upon the expiration of three (3) business days after service of the Stalking Horse Notice, and shall be payable in accordance with, and subject to the terms of, the applicable agreement with the Stalking Horse Bidder. Except as expressly provided for herein, no other termination payments are authorized or permitted under this Order.  In no event shall the amount of any Breakup Fee (if granted) exceed three percent of any Stalking Horse Bidder's proposed purchase price.

D.    **Bid Requirements.**

To be eligible to participate in the Auction, an Acceptable Bidder must deliver to the Debtors and their advisors, a written, irrevocable offer that must be determined by the Debtors, in their business judgment, after consultation with the Committee, to satisfy each of the following conditions (collectively, the "Bid Requirements"):

(i)    **Purpose**.  Each Acceptable Bidder must (a) state that the Bid includes an offer by the Acceptable Bidder to acquire the Debtors' equity and/or some or all of the Assets, and identify ~~the~~such Assets with reasonable specificity and (b) if the Acceptable Bidder proposes to consummate the transaction through a Plan, include a Plan that provides for the treatment of claims against the Debtors and the means for implementation of the Plan.

(ii)    **Transaction Structure and Purchase Price**.  Each Bid that includes an offer by the Acceptable Bidder to acquire the Debtors' equity and/or some or all of the Assets must: (a) clearly set forth the purchase price to be paid for the Assets (the "Purchase Price") and must indicate the source of consideration, including funding commitments, and confirm that such consideration is not subject to any contingencies. ~~The Bid should~~ and (b) include a detailed sources and uses schedule.  Each Bid shall also provide for appropriate treatment for the Account Holder Claims as provided in the Plan.

(iii)    **Bid Deposit**.  Each Bid contemplating an acquisition of Assets, or Plan that contemplates additional capital, must be accompanied by a cash deposit equal to ten percent of the net asset Purchase Price of the Bid or the additional capital contemplated (the "Good Faith Deposit"), which will be held in an escrow account to be identified and established pursuant to the authority granted by the order authorizing the Debtors to maintain and operate their bank accounts, by wire transfer or certified or cashier's check.

(iv)    **Committed Financing**.  To the extent that a Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate the Sale or Plan transaction(s) set forth in its Bid with cash on hand, each Bid must include committed financing documented to the Debtors' satisfaction, after consultation with the Committee, that demonstrates that the Acceptable Bidder has received sufficient debt and/or equity funding commitments to satisfy the Acceptable Bidder's Purchase Price and/or other obligations under its Bid.  Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtors in their sole discretion, after consultation with the Committee

(v)    **Good Faith Offer**.  Each Bid must constitute a good faith, bona fide offer to purchase all or substantially all the Debtors' equity or Assets. and in the case of a Plan, provide for the treatment of claims against the Debtors and the means for implementation of the Plan. Bids may be submitted for less than substantially all assets, and the Debtors may consider partial bids in their reasonable business judgment (including if multiple bids taken together would result in a sale of substantially all the Debtors' assets) following consultation with the Committee.

(vi)    **Marked Agreement**.  Each Bid must be accompanied by clean and duly executed transaction documents including, at a minimum, a chapter 11 plan or a draft asset purchase agreement, the form of which will be provided to any Acceptable Bidder

6

prior to the Bid Deadline (as defined herein), including the exhibits and schedules related thereto and any related material documents integral to such Bid pursuant to which the Acceptable Bidder proposes to effectuate the Sale, along with copies that are marked to reflect any amendments and modifications from the form chapter 11 plan or asset purchase agreement provided, which amendments and modifications may not be materially more burdensome or otherwise materially inconsistent with these Bidding Procedures. The Debtors, in their reasonable business judgment following consultation with the Committee, will determine whether any such amendments and modifications are materially more burdensome.

(vii)    **No Contingencies**. A Bid must ~~not be~~include confirmation that such Bid is not conditioned on any contingency, including, among others, on obtaining any of the following (a) financing, (b) shareholder, board of directors, or other approval, and/or (c) the outcome or completion of a due diligence review by the Acceptable Bidder.

(viii)    **Binding and Irrevocable**. An Acceptable Bidder's Bid must ~~be~~include confirmation that the Bid is irrevocable unless and until the Debtors accept a higher Bid and such Bidder is not selected as the Back-Up Bidder (as defined herein).

(ix)    **Joint Bids**. The Debtors will be authorized to approve joint Bids in their reasonable discretion, after consultation with the Committee, on a case-by-case basis.

(x)    **Adequate Assurance Information**. Each Bid must be accompanied by sufficient and adequate financial and other information (the "Adequate Assurance Information") to demonstrate, to the reasonable satisfaction of the Debtors after consultation with the Committee, that such Acceptable Bidder (a) has the financial wherewithal and ability to consummate the acquisition of the Assets and/or other transactions contemplated by the Bid (the "Closing"), and (b) can provide adequate assurance of future performance in connection with the proposed transaction. The Bid must also identify a contact person that parties may contact to obtain additional Adequate Assurance Information.

(xi)    **Identity & Corporate Authority**. Each Bid must fully disclose the identity of each entity that will be participating in connection with such Bid (including any equity owners or sponsors, if the purchaser is an entity formed for the purpose of consummating the acquisition of the Assets), and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder is legally empowered, by power of attorney or otherwise, to complete the transactions on the terms contemplated by the parties. A Bid must also fully disclose any connections or agreements with the Debtors, any known, potential, prospective bidder or Qualified Bidder (as defined herein), or any officer, director, ~~or~~ equity security holder, or other insider or affiliate of the Debtors.

7

(xii)   **Authorization**.  Each Bid must contain evidence that the Acceptable Bidder has obtained authorization or approval from its board of directors (or a comparable governing body reasonably acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

(xiii)  **No Fees**.  Each Acceptable Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed transaction, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code; *provided* that the Debtors are authorized in their discretion, after consultation with the Committee, to provide the Bid Protections to one or more Stalking Horse Bidders solely in accordance with these Bidding Procedures.

(xiv)   **Adherence to Bidding Procedures**.  By submitting its Bid, each Acceptable Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

(xv)    **Regulatory Approvals and Covenants**.  A Bid must set forth each regulatory and third-party approval required for the Acceptable Bidder to consummate the applicable Sale, if any, and the time period within which the Acceptable Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty (30) days following execution and delivery of the Plan and/or asset purchase agreement, those actions the Acceptable Bidder will take to ensure receipt of such approvals as promptly as possible).

(xvi)   **As-Is, Where-Is**.  Each Bid must include a written acknowledgement and representation that the Acceptable Bidder (a) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid, and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Acceptable Bidder's proposed purchase and sale agreement for the Assets.

(xvii)  **Time Frame for Closing**.  A Bid by an Acceptable Bidder must ~~be reasonably~~identify a likely date (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid (as defined herein), within a time frame reasonably acceptable to the Debtors after consultation with the Committee.

(xviii) **Consent to Jurisdiction**.  The Acceptable Bidder must submit to the jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any

8

disputes relating to the Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bidding Procedures, the Plan, the Sale documents, and the Closing, as applicable.

The Debtors shall promptly (but in no event later than 24 hours following receipt) deliver any and all bids received to the Committee's advisors. Bids fulfilling all of the preceding requirements, as determined by the Debtors and their advisors, after consultation with the Committee and its advisors, will be deemed to be "Qualified Bids," and those parties submitting Qualified Bids will be deemed to be "Qualified Bidders." The Debtors reserve the right, after consultation with the Committee, to work with any Acceptable Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid. The Debtors may accept a single Qualified Bid or multiple Bids for non-overlapping material portions of the Debtors' Assets such that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders will be treated as a single Qualified Bidder for purposes of the Auction; *provided* that the Debtors also reserve the right, after consultation with the Committee, to conduct more than one Auction with respect to non-overlapping material portions of the Debtors' Assets).

Within two (2) business days after the Bid Deadline (as defined herein), the Debtors and their advisors, after consultation with the Committee and its advisors, will determine in their reasonable business judgment, which Acceptable Bidders are Qualified Bidders and will notify the Acceptable Bidders whether Bids submitted constitute, alone or together with other Bids, Qualified Bids so as to enable such Qualified Bidders to bid at the Auction. Any Bid that is not deemed a Qualified Bid will not be considered by the Debtors. For the avoidance of doubt, any Acceptable Bidders designated as Stalking Horse Bidders by the Debtors and in accordance with these Bidding Procedures will be deemed to be Qualified Bidders, and any stalking horse plan and/or asset purchase agreement submitted by such Stalking Horse Bidders will be deemed Qualified Bids, which qualify such Stalking Horse Bidders to participate in the Auction as Qualified Bidders.

**Bids must be sent to the Notice Parties so as to be <u>actually</u> <u>received</u> no later than August 26, 2022, at 12:00 p.m., prevailing Eastern Time (the "<u>Bid Deadline</u>").**

9

### E.    Evaluation of Qualified Bids.

Prior to the Auction, the Debtors and their advisors, with consultation of the Committee and its advisors, will evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtors' reasonable business judgment, after consultation with the Committee, the highest or otherwise best Bid (the "Initial Minimum Overbid").  For the avoidance of doubt, the Debtors may select more than one Qualified Bid to collectively serve as the Initial Minimum Overbid if each such Qualified Bid contemplates the purchase of different Assets.  In making such determination, the Debtors will take into account, among other things, (i) the amount of the Qualified Bid, (ii) the impact on customers, vendors, and employees, (iii) the certainty of a Qualified Bid leading to a confirmed plan, and (iv) the timing associated with consummating such Qualified Bid, (v) the ability of the Qualified Bidder to obtain appropriate regulatory approvals, (vi) the execution risk attendant to any submitted Bids, and (vii) any other factors deemed relevant by the Debtors, after consultation with the Committee.  Within 24 hours of such determination, but in no event later than the start of the Auction, the Debtors will distribute copies of the Initial Minimum Overbid to each Qualified Bidder who has submitted a Qualified Bid.

If any Bid is determined by the Debtors not to be a Qualified Bid, the Debtors will refund such Acceptable Bidder's Good Faith Deposit and all accumulated interest thereon on or within five (5) business days after the Bid Deadline.

### F.    No Qualified Bids.

If no Qualified Bids are received by the Bid Deadline, then the Debtors will promptly file a notice on the docket canceling the Auction will not occur.

### G.    Auction.

If one or more Qualified Bids is received by the Bid Deadline, the Debtors will conduct the Auction with respect to the Debtors' Assets.  For the avoidance of doubt, the Debtors, after consultation with the Committee, may also conduct more than one Auction with respect to non-overlapping material portions of the Debtors' Assets.  The Auction will commence on August 29, 2022, at 10:00 a.m., prevailing Eastern Time, at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, or such later time or other place (including virtually) as the Debtors will timely notify any Stalking Horse Bidders and all other Qualified Bidders.

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

(i)    the Auction will be conducted openly;

(ii)    only the Qualified Bidders, including any Stalking Horse Bidders, will be entitled to bid at the Auction;

(iii)    the Qualified Bidders, including any Stalking Horse Bidders, must appear in person or through duly-authorized representatives at the Auction (except to the

10

extent that the Auction is held virtually, in which case such Qualified Bidders must appear virtually);

(iv)     except to the extent agreed upon by the Debtors, after consultation with the Committee, only such authorized representatives of each of the Qualified Bidders (including any Stalking Horse Bidders), the Debtors, the Committee, and their respective advisors will be permitted to attend the Auction;

(v)     bidding at the Auction will begin at the Initial Minimum Overbid;

(vi)     subsequent Bids at the Auction, including any Bids by any Stalking Horse Bidder, must be made in minimum increments (which may include cash or non-cash consideration) in an amount that the Debtors determine in their reasonable business judgment after consultation with the Committee (and in amounts as announced to all Qualified Bidders prior to the commencement of the Auction), after payment of the Bid Protections to any Stalking Horse Bidders, if applicable; the Debtors will estimate the value of non-cash consideration offered, if applicable, in their business judgment, after consultation with the Committee;

(vii)     each Qualified Bidder will be informed of the terms of the previous Bids;

(viii)     the bidding will be transcribed to ensure an accurate recording of the bidding at the Auction;

(ix)     each Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the Sale;

(x)     the Auction will not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an overbid at the Auction to the then prevailing highest Bid, subject to the Debtors' right, after consultation with the Committee, to require last and final Bids to be submitted on a "blind" basis;

(xi)     the Debtors reserve the right, in their reasonable business judgment, after consultation with the Committee, to adjourn the Auction one or more times to, among other things, (a) facilitate discussions between the Debtors and Qualified Bidders, (b) allow Qualified Bidders to consider how they wish to proceed, and (c) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing amount; and

(xii)     the Auction will be governed by such other Auction Procedures as may be announced by the Debtors and their advisors, after consultation with the Committee, from time to time on the record at the Auction; *provided* that such other Auction Procedures are (a) not inconsistent with the Bidding Procedures Order, these Bidding Procedures, the Bankruptcy Code, or any other order of the Bankruptcy Court, (b) disclosed orally or in writing to all Qualified Bidders, and

11

(c) reasonably determined by the Debtors, in good faith, to further the goal of attaining the highest or otherwise best offer.

For the avoidance of doubt, nothing in the Auction Procedures will prevent the Debtors from exercising their respective fiduciary duties under applicable law (as reasonably determined in good faith by the Debtors, after consultation with the Committee).

## H.    Acceptance of the Successful Bid or Successful Bids.

Upon the conclusion of the Auction (if such Auction is conducted), the Debtors, in the exercise of their reasonable, good-faith business judgment, after consultation with the Committee, will identify the highest or otherwise best Qualified Bid or Qualified Bids (each, a "Successful Bid"), which will be determined by considering, among other things, (a) the type and amount of Assets sought to be purchased in the Bid or Bids, (b) the total expected consideration to be received by the Debtors, (c) the likelihood of the Qualified Bidder or Qualified Bidders' ability to close a transaction and the timing thereof (including any anticipated delays to Closing and the cost to the Debtors of such delays), (d) the expected net benefit to the estates, including treatment of the Account Holder Claims (e) the impact on vendors, customers, and employees, and (f) the certainty of the Debtors being able to confirm a plan, and (g) any other criteria as may be considered by the Debtors and the Committee in their reasonable, good-faith business judgment.  For the avoidance of doubt, the Debtors, after consultation with the Committee, may select more than one Qualified Bid to collectively serve as a Successful Bid if each such Qualified Bid contemplates the purchase of different Assets.  The Qualified Bidder or Qualified Bidders having submitted the Successful Bid or Successful Bids will be deemed the "Winning Bidder" or "Winning Bidders," as applicable. The Winning Bidder or Winning Bidders and the Debtors must, as soon as commercially reasonably practicable, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which such Successful Bid or Successful Bids were made.

The Debtors will present the results of the Auction to the Bankruptcy Court at the Sale Hearing or Confirmation Hearing (each as defined herein), at which certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that (a) the Auction was conducted, and the Winning Bidder or Winning Bidders were selected, in accordance with these Bidding Procedures, (b) the Auction was fair in substance and procedure, and (c) consummation of the Successful Bid or Successful Bids will provide the highest or otherwise best value for the Debtors' Assets and is in the best interests of the Debtors' estates.

If an Auction is held, the Debtors will be deemed to have accepted a Qualified Bid only when (a) such Qualified Bid is declared a Successful Bid at the Auction, and (b) definitive documentation has been executed in respect thereof.  Such acceptance is conditioned upon approval by the Bankruptcy Court of the Successful Bid or Successful Bids and entry of an order approving such Successful Bid or Successful Bids (in the case of a sale under section 363 of the Bankruptcy Code, the "Sale Order" or in the case of a sale under a chapter 11 plan, the "Confirmation Order").

I.      **Sale Hearing.**

In the event a transaction is consummated pursuant to section 363 of the Bankruptcy Code, a hearing before the Bankruptcy Court to consider approval of the Successful Bid or Successful Bids (the "Sale Hearing"), pursuant to which the Debtors and the Winning Bidder or Winning Bidders will consummate the Sale, will be held on September 7, 2022, at [ ]:00 a.m., prevailing Eastern Time, before the Honorable Michael E. Wiles, United States Bankruptcy Judge for the Bankruptcy Court for the Southern District of New York at One Bowling Green, New York, New York 10004.

**The Sale Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Sale Hearing.  No further notice of any such continuance will be required to be provided to any party.**

At the Sale Hearing, the Debtors will present the Successful Bid or Successful Bids to the Bankruptcy Court for approval.

J.      **Confirmation Hearing.**

In the event a transaction is consummated through a Plan, a hearing before the Bankruptcy Court to consider confirmation of the Plan (the "Confirmation Hearing") will be held on [~~November~~October ~~23~~1], 2022, at [ ]:00 [a/p].m., prevailing Eastern Time, before the Honorable Michael E. Wiles, United States Bankruptcy Judge for the Bankruptcy Court for the Southern District of New York at One Bowling Green, New York, New York 10004, ~~and~~or otherwise in accordance with any scheduling orders entered by the Bankruptcy Court relating to confirmation of the Plan or approval of any disclosure statement related thereto.

**The Confirmation Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Confirmation Hearing.  No further notice of any such continuance will be required to be provided to any party.**

At the Confirmation Hearing, the Debtors will present the Plan, which will incorporate the terms of the Successful Bid or Successful Bids, to the Bankruptcy Court for confirmation.

K.      **Designation of Back-Up Bidder or Back-Up Bidders.**

If for any reason the Winning Bidder or Winning Bidders fail to consummate the Qualified Bid or Qualified Bids within the time permitted after the entry of the Sale Order approving the Sale to the Winning Bidder or Winning Bidders, then the Qualified Bidder or Qualified Bidders with the next-highest or otherwise second-best Bid or Bids (each, a "Back-Up Bidder"), as determined by the Debtors after consultation with their advisors and the Committee and its advisors, at the conclusion of the Auction and announced at that time to all the Qualified Bidders participating therein, will automatically be deemed to have submitted the highest or otherwise best Bid or Bids (each, a "Back-Up Bid"), and the Debtors will be authorized, but not required, to consummate the transaction pursuant to the Back-Up Bid or Back-Up Bids as soon as is commercially reasonable without further order of the Bankruptcy Court upon at least 24 hours advance notice, which notice will be filed with the Bankruptcy Court.  Upon designation of the Back-Up Bidder or Back-Up Bidders at the Auction, the Back-Up Bid or Back-Up Bids

13

must remain open until the Closing of the Successful Bid or Successful Bids, as applicable, notwithstanding any outside date set forth in such Back-Up Bidder or Back-Up Bidders' proposed purchase agreement or chapter 11 plan.

**L.       Return of Good Faith Deposit to Qualified Bidders that Submit Qualified Bids.**

The Good Faith Deposit of the Winning Bidder or Winning Bidders will, upon consummation of the Successful Bid or Successful Bids, become property of the Debtors' estates and be credited to the portion of the Purchase Price.  If the Winning Bidder or Winning Bidders (or Back-Up Bidder or Back-Up Bidders, if applicable) fails to consummate the Successful Bid or Successful Bids (or Back-Up Bid or Back-Up Bids, if applicable), then the Good Faith Deposit of such Winning Bidder or Winning Bidders (or Back-Up Bidder or Back-Up Bidders, if applicable) will be irrevocably forfeited to the Debtors and may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors.

The Good Faith Deposit of any unsuccessful Qualified Bidders (except for the Back-Up Bidder or Back-Up Bidders and any Stalking Horse Bidders) will be returned within five (5) business days after consummation of the Sale or upon the permanent withdrawal of the proposed Sale.  The Good Faith Deposit of the Back-Up Bidder or Back-Up Bidders, if any, will be returned to such Back-Up Bidder or Back-Up Bidders no later than five (5) business days after the Closing with the Winning Bidder or Winning Bidders.  The return of any Good Faith Deposit of any Stalking Horse Bidders will be subject to the terms of such Stalking Horse Bidders' chapter 11 plan or asset purchase agreement, as applicable.

All deposits shall be held in escrow and at no time shall be deemed property of the Debtors' estates absent further order of the Bankruptcy Court.

**M.       Reservation of Rights.**

~~The~~Subject to prior written consent of the Committee or further order of the Bankruptcy Court, the Debtors, reserve their rights to modify these Bidding Procedures in good faith, to further the goal of attaining the highest or otherwise best offer, or impose, at or prior to the Auction, additional terms and conditions on the Sale.  The Debtors shall provide notice of any such modification to any Qualified Bidder, including any Stalking Horse Bidders. Notwithstanding anything to the contrary herein, the Debtors, after consultation with the Committee, may elect to consummate the Sale under section 363(f) of the Bankruptcy Code as opposed to pursuant to the Plan with the Winning Bidder or Winning Bidders, but, for the avoidance of doubt, the Debtors prefer that the Sale be accomplished through the Plan.

**N.       Consent to Jurisdiction.**

All Qualified Bidders at the Auction will be deemed to have consented to the jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Sale, the Auction, the construction and enforcement of these Bidding Procedures, the Bid Requirements, and/or the Bid Documents, as applicable.

Any parties raising a dispute relating to these Bidding Procedures must request that such dispute be heard by the Bankruptcy Court on an expedited basis.

**O.    Fiduciary Out.**

Nothing in these Bidding Procedures will require the board of directors, board of managers, or such similar governing body of a Debtor or non-debtor affiliate to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent such board of directors, board of managers, or such similar governing body reasonably determines in good faith, after consultation with the Committee, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law.

**P.    Sale Is As Is/Where Is.**

The Assets sold pursuant to these Bidding Procedures will be conveyed at the Closing in their then-present condition, "**as is, with all faults, and without any warranty whatsoever, express or implied.**"

※    ※    ※    ※    ※

15

**<u>Exhibit 2</u>**

**Transaction Notice**

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|                                                    |     |                             |
| -------------------------------------------------- | --- | --------------------------- |
| In re:                                             | )   | Chapter 11                  |
|                                                    | )   |                             |
| VOYAGER DIGITAL HOLDINGS, INC. *et al.*,[1]        | )   | Case No. 22-10943 (MEW)     |
|                                                    | )   |                             |
| Debtors.                                           | )   | (Jointly Administered)      |
|                                                    | )   |                             |

**NOTICE OF BIDDING PROCEDURES,**
**POTENTIAL AUCTION, AND SALE HEARING**

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors")[2] each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on July 5, 2022 (the "Petition Date").

**PLEASE TAKE FURTHER NOTICE** that on July 21, 2022, the Debtors filed a motion [Docket No. 126] (the "Motion") seeking, among other things, the entry of an order approving (a) bidding procedures (the "Bidding Procedures") in connection with the proposed auction (the "Auction") and sale (the "Sale") of the Debtors' equity or some or all of their (the "Assets") to one or more successful bidders, (b) the selection of a Stalking Horse Bidder and the payment of Bid Protections, in certain instances as set forth in the Bidding Procedures, and (c) scheduling dates and deadlines in connection with approval of the Sale (the "Sale Schedule").

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]    Capitalized terms used in this notice and not immediately defined have the meanings given to such terms in the Bidding Procedures (as defined herein).

KE 88408586

**PLEASE TAKE FURTHER NOTICE** that on [  ], 2022, the Bankruptcy Court entered an order [Docket No. [  ]] (the "<u>Bidding Procedures Order</u>") granting certain of the relief sought in the Motion, including, among other things, approving the Bidding Procedures and the Sale/Confirmation Schedule.

### Contact Persons for Parties Interested in Submitting a Bid

The Bidding Procedures set forth in detail the requirements for submitting Qualified Bids, and any person interested in making an offer to purchase the Debtors' equity and/or Assets **must** comply strictly with the Bidding Procedures. **Only Qualified Bids that are submitted in accordance with the Bidding Procedures will be considered by the Debtors**. Any persons interested in making an offer to purchase the Debtors' equity and/or Assets should contact:

| Proposed Financial Advisor and Investment Banker to the Debtors | Proposed Counsel to the Debtors |
|---|---|
| Moelis & Company LLC<br>399 Park Avenue, 3rd Floor<br>New York, New York 10022<br>Attn: Jared Dermont jared.dermont@moelis.com)<br>Barak Klein (barak.klein@moelis.com)<br>Michael DiYanni (michael.diyanni@moelis.com)<br>Brian Tichenor (brian.tichenor@moelis.com) | Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn: Joshua A. Sussberg, P.C. (jsussberg@kirkland.com)<br>Christopher Marcus, P.C. (cmarcus@kirkland.com)<br>Christine A. Okike, P.C. (christine.okike@kirkland.com)<br>Allyson B. Smith (allyson.smith@kirkland.com) |
| **Proposed Financial Advisor to the Committee** | **Proposed Counsel to the Committee** |
| FTI Consulting<br>1166 Avenue of the Americas<br>New York, NY 10036<br>Attn: Steven Simms (Steven.Simms@FTIConsulting.com)<br>Marshall Eisler (Marshall.Eisler@fticonsulting.com) | McDermott Will & Emery LLP<br>One Vanderbilt Avenue<br>New York, New York 10017<br>Attn: Darren Azman (dazman@mwe.com)<br>Charles Gibbs (crgibbs@mwe.com)<br>Gregg Steinman (gsteinman@mwe.com) |

### Obtaining Information

Copies of the Bidding Procedures Order, the Bidding Procedures, and any other related documents are available upon request to Stretto, Inc., the Debtors' notice and claims agent, by calling 855.473.8665 (Toll-Free) or 949.271.6507 (International) or by visiting www.cases.stretto.com/Voyager/.

### The Sale/Confirmation Schedule

1. The deadline to submit a Qualified Bid (the "<u>Bid Deadline</u>") is **August 26, 2022, at 12:00 p.m., prevailing Eastern Time**.

2. The Auction for the Debtors' equity and/or or Assets, if one is necessary, will commence on **August 29, 2022, at 10:00 a.m., prevailing Eastern Time**, at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, or at such later time or other place as the Debtors will timely notify any Stalking Horse Bidders and all other Qualified Bidders.

3.      The deadline to file an objection with the Bankruptcy Court to the Sale is **August 31, 2022, at 4:00 p.m., prevailing Eastern Time** (the "Sale Objection Deadline").

4.      A hearing to consider the Sale will be held before the Honorable Michael E. Wiles of the Bankruptcy Court on **September 7, 2022, at [ ]:00 [a/p].m., prevailing Eastern Time**, or such other date as determined by the Bankruptcy Court, at One Bowling Green, New York, New York 10004-1408.

### Filing Objections to the Sale

Any objection to the Sale must (a) be in writing, (b) state with specificity the nature of such objection, (c) comply with the applicable provisions of the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and any case management order entered by the Bankruptcy Court, and (d) be filed with the Bankruptcy Court and served upon, so as to be **actually received** on or prior to the Sale Objection Deadline, as applicable, by the following parties (i) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C. (jsussberg@kirkland.com), Christopher Marcus, P.C. (cmarcus@kirkland.com), Christine A. Okike, P.C. (christine.okike@kirkland.com), and Allyson B. Smith (allyson.smith@kirkland.com); (ii) the Debtors' proposed financial advisor and investment banker to the Debtors, Moelis & Company LLC, 399 Park Avenue, 4th Floor, New York, New York 10022, Attn.: Jared Dermont (jared.dermont@moelis.com), Barak Klein (barak.klein@moelis.com), Mike DiYanni (michael.diyanni@moelis.com), and Brian Tichenor (brian.tichenor@moelis.com); ~~and~~ (iii) proposed counsel to the Committee, McDermott Will & Emery LLP, One Vanderbilt Avenue, New York, New York 10017, Attn: Darren Azman (dazman@mwe.com), and Charles Gibbs (crgibbs@mwe.com); and (iv) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, New York 10014, Attn: Richard Morrissey and Mark Bruh.

### Consequences of Failing to Timely File an Objection

**Any party or entity who fails to timely file an objection to the Sale on or before the Sale Objection Deadline, as applicable, in accordance with the Bidding Procedures Order, shall be forever barred from asserting any objection to the Sale.**

*       *       *       *       *