Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF HEARING OF DEBTORS'
## MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE DEBTORS'
## KEY EMPLOYEE RETENTION PLAN AND (II) GRANTING RELATED RELIEF

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Motion for Entry of an Order (I) Approving the Debtors' Key Employee Retention Plan and (II) Granting Related Relief* (the "Motion,") will be held on **August 16, 2022, at 11:00 a.m., prevailing Eastern Time** (the "Hearing"). In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted telephonically. Any parties wishing to participate must do so by making arrangements through CourtSolutions by visiting https://www.court-solutions.com.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Motion shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General

Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern

District of New York; (c) be filed electronically with the Court on the docket of *In re Voyager*

*Digital Holdings, Inc.*, No. 22-10943 (MEW) by registered users of the Court's electronic filing

system and in accordance with all General Orders applicable to chapter 11 cases in the United

States Bankruptcy Court for the Southern District of New York (which are available on the

Court's website at http://www.nysb.uscourts.gov); and (d) be served so as to be actually received

by **August 9, 2022, at 4:00 p.m., prevailing Eastern Time**, by (i) the entities on the Master

Service List available on the case website of the above-captioned debtors and debtors in

possession (the "<u>Debtors</u>") at https://cases.stretto.com/Voyager and (ii) any person or entity with

a particularized interest in the subject matter of the Motion.

      **PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are

timely filed, served, and received will be considered at the Hearing.  Failure to file a timely

objection may result in entry of a final order granting the Motion as requested by the Debtors.

      **PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings

filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at

https://cases.stretto.com/Voyager.   You may also obtain copies of the Motion and other

pleadings filed in these chapter 11 cases by visiting the Court's website at

http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

      *[Remainder of page intentionally left blank]*

Dated:  August 2, 2022          /s/ Joshua A. Sussberg
New York, New York              **KIRKLAND & ELLIS LLP**
                                **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                Joshua A. Sussberg, P.C.
                                Christopher Marcus, P.C.
                                Christine A. Okike, P.C.
                                Allyson B. Smith (admitted *pro hac vice*)
                                601 Lexington Avenue
                                New York, New York 10022
                                Telephone:    (212) 446-4800
                                Facsimile:    (212) 446-4900
                                Email:        jsussberg@kirkland.com
                                              cmarcus@kirkland.com
                                              christine.okike@kirkland.com
                                              allyson.smith@kirkland.com

                                *Proposed Counsel to the Debtors and Debtors in Possession*

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DEBTORS' MOTION FOR ENTRY OF AN
## ORDER (I) APPROVING THE DEBTORS' KEY
## EMPLOYEE RETENTION PLAN AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>")

respectfully state the following in support of this motion (this "<u>Motion</u>"):

### <u>Relief Requested</u>

1.    The Debtors seek entry of an order, substantially in the form attached hereto as

**<u>Exhibit A</u>** (the "<u>Order</u>"), (a) approving and authorizing the Debtors' proposed key employee

retention plan (the "<u>KERP</u>"), (b) authorizing the Debtors to make payments to certain

non-insider employees under the KERP, and (c) granting certain related relief.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

**Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012.  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 363(b), and 503(c) of title 11 of the United States Code (the "Bankruptcy Code") and rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Background**

5.      On July 5, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Stephen Ehrlich, Chief Executive Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 15] (the "First Day Declaration"), incorporated by reference herein.[2]

6.      The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 18].  On July 19, 2022, the United States Trustee for

---

[2]    Capitalized terms not defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 102] (the "Committee"). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

### Introduction

7.     Cryptocurrency is used to execute transactions on a "blockchain," a digital technology that vets and verifies transactions through a rigorous mathematical process. In the last decade, the cryptocurrency space has grown from a nascent idea to a trillion-dollar industry. The cryptocurrency industry continues to evolve and grow at a historically rapid rate, requiring industry participants to continuously innovate to meet shifting customer demands.

8.     The Debtors operate a cryptocurrency trading platform that allows customers to buy, sell, trade, and store cryptocurrency through an easy-to-use and "accessible-to-all" interface. In just four years, the Debtors' platform evolved from a small startup to an industry-leading trading platform with, at its peak, over $5.9 billion of cryptocurrency assets. The Debtors provide trading services for over 100 unique digital assets on the Debtors' platform, which is one of the few trading platforms that is tailored to retail investors and, prior to the Petition Date, was one of the largest active cryptocurrency trading platforms in the cryptocurrency industry. Voyager's mobile application has been downloaded millions of times and, as of the Petition Date, had over 1.1 million active users. In 2021, Voyager was one of the top ten most downloaded cryptocurrency mobile applications in the world.

9.     The Debtors' employees are exceptionally hard to replace in the marketplace because of their invaluable institutional knowledge and understanding of the cryptocurrency industry. Due to the rapid growth of the cryptocurrency industry, the labor market for employees who possess the qualifications and skills necessary to operate a sophisticated cryptocurrency trading platform is extremely limited — it is likely that the Debtors would struggle to even

source potential candidates who could operate their platform effectively, and hiring a new employee (if even possible) would require the Debtors to incur significant operational and financial costs.    Though the Debtors' trading platform is frozen, the Debtors' employees continue to perform routine maintenance and updates on the Debtors' platform and prepare the Debtors' platform for post-emergence operations.    The Debtors' employees are also working closely with the Debtors' advisors to facilitate the administration of these chapter 11 cases and satisfy all chapter 11 reporting obligations.    Without the continued efforts of the Debtors' employees, the Debtors will not have an operational trading platform or the capability to serve customers at the conclusion of these chapter 11 cases.    The Debtors' ability to quickly "unfreeze" operations is crucial to the Debtors' post-emergence success.    Accordingly, retaining key employees is critical to the Debtors' reorganizational efforts and, ultimately, the Debtors' viability as trading platform.

10.    By this Motion, the Debtors seek approval of the KERP.    The KERP allows the Debtors to retain certain critical non-insider employees and is consistent with retention programs in similar chapter 11 cases.    The KERP provides for payment of cash retention awards to 38 of the Debtors' non-insider employees (each, a "Participant" and, collectively, the "Participants").    No potential Participant is an insider (as defined in the Bankruptcy Code), but instead performs essential accounting, cash and digital asset management, IT infrastructure, legal, and other critical functions for the Debtors.    Importantly, the Debtors' compensation structure for employees historically included a large equity component.    But the value of such compensation has cratered, causing many employees to be compensated below market in the hottest job market in recent memory.    Further, under the Plan, all equity interests in the Debtors will be cancelled upon the Debtors' emergence from chapter 11, which will completely eliminate all equity

compensation paid to the Debtors' employees to date.[3] The departure of the Debtors' key employees during these chapter 11 cases would destroy value, harm the Debtors' restructuring process, and adversely affect the Debtors' ability to operate in the ordinary course upon emergence.

11.     As a result, the Debtors believe that implementation of the KERP is necessary and appropriate to avoid costly disruptions to the Debtors' business and allow the Debtors to resume operations post-emergence.  The Debtors worked with their advisors, including Willis Towers Watson US LLC ("WTW"), an independent compensation consultant, to structure the proposed KERP.  The Debtors, their advisors, and Debtor Voyager Digital, LLC's special committee of independent directors reviewed market data and analyses regarding compensation levels and program structure.  In light of the Debtors' circumstances and their restructuring process, the Debtors and the special committee (in consultation with their advisors) concluded that implementation of the KERP was appropriate and necessary under the circumstances. The KERP contemplates retention payments made to 38 Participants in two installments with a maximum aggregate cost (assuming all payments are made and all employees are retained) of approximately $1,900,000.[4]

12.     The Debtors and their advisors engaged with the U.S. Trustee and the Committee regarding the KERP.  The Debtors provided information regarding program design, cost, and the financial metrics and targets necessary to obtain payouts under the program to the U.S. Trustee and the Committee.

---

[3]    See *Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 17] (the "Plan").

[4]    The Debtors provided the list of proposed Participants, together with their job title, base salary, and proposed payments to counsel to the Committee and the U.S. Trustee before the filing of this Motion.  The Debtors will provide the list to the Court upon request.

13.     The KERP complies with the applicable provisions of the Bankruptcy Code, is similar to plans recently approved in chapter 11 cases, is justified by the facts and circumstances of these cases, and is within the Debtors' sound and reasonable business judgment.  For these reasons and the reasons set forth below, the Debtors respectfully request the Court enter an order authorizing the Debtors to implement the KERP.

<u>**The Key Employee Retention Program**</u>

**I.    The KERP Participants.**

14.     Of the Debtors' approximately 350 current employees, the Debtors have designated 38 key employees as Participants.  The Participants perform a variety of important business functions that are vital to the Debtors' ability to preserve and enhance stakeholder value.  Many of the Participants have developed valuable institutional knowledge regarding the Debtors' operations that would be difficult and expensive to replace, particularly on an expedited basis.   Such Participants are also essential to the successful administration of the Debtors' chapter 11 cases. The cost of the KERP on a Participant-by-Participant basis is likely significantly less than the cost of replacing each Participant. Moreover, the Participants provide important support to the Debtors' advisors in meeting the additional demands imposed by chapter 11.

15.     The Participants may be motivated to leave the Debtors' employ during the pendency of these chapter 11 cases due to, among other things, the uncertainty created by the Debtors' ongoing reorganization and marketing efforts.   Additionally, as noted above, the Participants are meaningfully undercompensated due to the depreciated equity component of their compensation structure and the cancellation of the Debtors' equity interests upon emergence from chapter 11.  Preserving each Participant's institutional and technical knowledge is crucial to the Debtors' ability to maximize value.  The Debtors respectfully submit that the

KERP will increase the likelihood that the Participants are properly incentivized to remain with the Debtors during the restructuring process, thereby preserving value for the Debtors, their estates, their customers and other creditors.

16.     Although certain Participants have titles incorporating the word "head," "director," "vice president," or "chief," no Participant is an "insider" of the Debtors. Specifically, no Participant in the proposed KERP is an employee who: (a) is appointed or hired directly by the Debtors' board of directors; (b) exercises managerial control over, or has responsibility for, the Debtors' operations as a whole; or (c) directs the Debtors' overall corporate policy or governance.

## II.    The Retention Program.

17.     As noted above, the cost of the KERP will not exceed approximately $1,900,000 in the aggregate, even assuming all Participants are successfully retained and earn the proposed payments. The key terms of the KERP are as follows:[5]

- ***Participants***: Limited to 38 non-insider key employees who will remain with the go-forward business, or approximately 11 percent of the Debtors' current workforce. Each Participant is critical employee that performs, among other things, accounting, cash and digital asset management, IT infrastructure, legal, human resources, and other critical functions for the Debtors.

- ***KERP Awards***: KERP awards represent fixed cash amounts payable in two installments based on continued employment of the Participant through the applicable payment dates (except as provided below). KERP awards are equal to 25% of the Participant's annual salary.

- ***Payment Dates***: 50% of each Participant's KERP award will be paid immediately subject to a clawback through emergence from chapter 11, with the remaining 50% paid at the earlier of the date that is (i) twelve months after the effective date of the KERP or (ii) 90 days following emergence from chapter 11.

---

[5] Any description of the KERP contained in this Motion is provided for purposes of convenience only. In the event of any inconsistency between the summary contained herein and the terms and provisions of the KERP, the terms of the KERP shall control unless otherwise set forth herein, *provided* that the terms relating to the total amount of the KERP and the timing of payments provided in this Motion shall control.

- ***Termination of Employment***:    If a Participant voluntarily terminates employment or is terminated for cause prior to the end of the clawback or retention period, the Participant will be required to repay on an after-tax basis, any amounts subject to clawback and forfeit any unpaid KERP award.  If a Participant's employment is terminated due to death, disability, or by the Debtors without cause prior to the end of the clawback or retention period, the clawback will be waived and unpaid retention amounts will vest and be paid.

## III.    Reasonableness of the KERP.

18.    As set forth in the *Declaration of Zachary P. Georgeson in Support of Debtors' Motion for Entry of An Order (I) Approving the Debtors' Key Employee Retention Plan and (II) Granting Related Relief* (the "Georgeson Declaration"), the Debtors, the Debtors' special committee, and each of their respective advisors reviewed the KERP to determine whether the design, structure, and cost of the KERP is reasonable and consistent with market practice.  The Debtors designed the KERP with the goal of maximizing the value of their estates for the benefit of all interested parties and ensuring that the Debtors will be able to operate their business in the ordinary course upon emergence from chapter 11.

19.    The Debtors worked closely with their advisors to ensure that the KERP is reasonable compared with postpetition retention plans implemented in other chapter 11 cases.  In particular, and as set forth in more detail in the Georgeson Declaration, personnel from Willis Towers Watson analyzed comparable non-insider retention plans approved in recent chapter 11 cases.  Willis Towers Watson benchmarked comparable retention plans from select chapter 11 cases of 31 different companies that filed petitions from 2017 through 2020 with pre-petition annual revenues greater than approximately $170 million.  Based on this review of comparable retention plans, the Debtors believe that the total cost of the KERP is reasonable relative to market comparables.

20.    The Debtors submit that the award opportunities in the KERP reflect a reasonable, market-based approach and are justified under the circumstances of these chapter 11 cases.

Further, the KERP's total cost of $1,900,000 is reasonable in absolute terms when compared to the aggregate costs of key employee plans approved in other chapter 11 cases.

## Basis for Relief

### I.    The KERP Is a Sound Exercise of the Debtors' Business Judgment.

21.    The Debtors' implementation of the KERP is a sound exercise of their business judgment.  Section 363(b) of the Bankruptcy Code provides that a debtor "after notice and a hearing may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  To approve the use of estate property under section 363(b)(1) of the Bankruptcy Code, a debtor must show that the decision to use the property outside of the ordinary course of business was based on the debtor's business judgment.  *See, e.g.*, *In re Chateaugay Corp.,* 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining a 363(b) application must find a good business reason to grant such application); *see also In re Lionel Corp.,* 722 F.2d 1063, 1070 (2d Cir. 1983) (requiring "some articulated business justification" to approve the use, sale or lease of property outside the ordinary course of business); *In re Glob. Crossing Ltd.,* 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *In re Ionosphere Clubs, Inc.,* 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting that the standard for determining a Section 363(b) motion is "a good business reason"); *In re Borders Grp., Inc.,* 453 B.R. at 473 ("In approving a transaction conducted pursuant to section 363(b)(1), courts consider whether the debtor exercised sound business judgment.").

22.    Once a debtor articulates a valid business justification, the law vests the debtor's decision to use property outside of the ordinary course of business with a strong presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was taken in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (citations and internal quotations

9

omitted), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993); *see also In re Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) (a "presumption of reasonableness attaches to a debtor's management decisions" and courts will generally not entertain objections to the debtor's conduct after a reasonable basis is set forth). Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

23. The implementation of the KERP is a proper exercise of the Debtors' business judgment and is in the best interests of their estates and the interests of all stakeholders in these chapter 11 cases. The Participants—along with their skills, knowledge, and hard work—are critical to ensuring that the Debtors continue to maximize stakeholder value. The Participants are familiar with the Debtors' businesses and have the experience and knowledge necessary to ensure that the Debtors' will be able to operate their business in the ordinary course upon emergence from chapter 11. The Debtors cannot easily replace the Participants without adversely affecting the Debtors' operating efficiency and distracting management from the Debtors' restructuring efforts. Accordingly, the Debtors' decision to implement the KERP is a valid exercise of business judgment and in the best interest of the Debtors, their estates, and all parties in interest in these chapter 11 cases.

**II.    The KERP Is Justified by the Facts and Circumstances of these Chapter 11 Cases.**

24. Section 503(c)(3) of the Bankruptcy Code permits payments to a debtor's employees outside the ordinary course of business if such payments are justified by "the facts and circumstances of the case." 11 U.S.C. § 503(c)(3). Importantly, section 503(c)(3)'s "facts and circumstances" justification test "creates a standard no different that the business judgment standard under section 363(b) of the Bankruptcy Code." *In re Velo Holdings, Inc.*, 472 B.R. 201, 209 (Bankr. S.D.N.Y. 2012); *In re Borders Grp. Inc.*, 453 B.R. 459, 473–74 (Bankr. S.D.N.Y.

2011) (evaluating debtors' KERP under business judgment rule); *In re Dana Corp.*, 358 B.R. 567, 576–77 (Bankr. S.D.N.Y. 2006) (describing six factors that courts may consider when determining whether the structure of a compensation proposal meets the "sound business judgment test" in accordance with section 503(c)(3) of the Bankruptcy Code).  Accordingly, whether a retention plan is justified by the facts and circumstances of the case and the analysis of whether the approval of such plan is a sound exercise of the debtor's business judgment are the same.

25.    In the context of approving compensation programs, courts in the Second Circuit have considered the factors identified in *In re Dana Corp.*, when determining if a compensation proposal and the process for developing it meet the "sound business judgment" test:

- Is there a reasonable relationship between the plan proposed and the results to be obtained, *i.e.*, will the key employee stay for as long as it takes for the debtor to reorganize or market its assets?

- Is the cost of the plan reasonable in the context of the debtor's assets, liabilities, and earning potential?

- Is the scope of the plan fair and reasonable:  does it apply to all employees, or if not, does it discriminate unfairly?

- Is the plan or proposal consistent with industry standards?

- What were the due diligence efforts of the debtor in investigating the need for a plan, analyzing which key employees need to be incentivized, what is available, and what is generally applicable in a particular industry?

- Did the debtor receive independent counsel in performing due diligence and in creating and authorizing the incentive compensation?

*In re Dana Corp.*, 358 B.R. at 576–77 (Bankr. S.D.N.Y. 2006); *see e.g.*, *In re Residential Capital, LLC,* 491 B.R. 73, 85–86 (Bankr. S.D.N.Y. 2013) (applying the *Dana* factors to the debtors' retention plan for non-insiders and approving the plan as an exercise of sound business judgment); *In re Borders Grp. Inc.,* 453 B.R. at 473–74 (same).  No single factor is dispositive,

and the Court has discretion to weigh each of these factors based on the specific facts and circumstances before it. *See, e.g.*, *In re AMR Corp.*, 490 B.R. 158, 166 (Bankr. S.D.N.Y. 2013). Even the total absence of a factor may be permissible, so long as the interests of the Debtors are sufficiently protected. *See In re Borders Grp., Inc.*, 453 B.R. 459, 477 (finding that the lack of independent counsel was "not fatal" where the presence of other factors ensured "that the [d]ebtors' interests were sufficiently protected."); *In re Glob. Aviation Holdings Inc.*, 478 B.R. 142 (Bankr. E.D.N.Y. 2012) (noting that "the relatively modest size of the proposed bonus payouts made the retention of independent legal counsel economically inefficient."). The Debtors respectfully submit that the proposed KERP satisfies the standard set forth above, each as discussed more fully below.

26. ***First***, there is a reasonable relationship between the KERP and Debtors' need to retain important employees. The KERP will ensure that the Debtors have the appropriate staff on hand to facilitate the reorganization or sale (whatever comes to pass) and the Debtors' operations upon emergence from chapter 11, thereby maximizing value for the Debtors' estates. A failure to retain the Participants would cause the Debtors to incur significant time and money to hire and train replacement employees, which would, in turn, hinder their reorganization to the detriment of all parties in interest.

27. ***Second***, the cost of the KERP is reasonable given the Debtors' assets and liabilities. As discussed above and in the Georgeson Declaration, WTW engaged in a benchmarking analysis to assist the Debtors with the design of the KERP. The costs associated with the KERP are within the range of market practice as compared to plans proposed and approved at similarly situated companies in chapter 11. Accordingly, the costs are reasonable and well-justified given the size of the Debtors' businesses.

28.     *Third*, the scope of the KERP is fair and reasonable.  As noted herein, the Debtors undertook a careful selection process and received input from their advisors in determining the specific employees that should be eligible.  In fact, the 38 Participants represent a small portion of the Debtors' total employee base of approximately 350 people.  These employees are critical to retain for the Debtors to maximize value for stakeholders.

29.     *Fourth*, the Debtors submit that the KERP is consistent with industry practice. As outlined in the Georgeson Declaration, the KERP is cost-effective when compared to retention plans in other, similar chapter 11 cases.  With respect to eligibility, metrics, and payout timing, the KERP is similar to other plans recently approved in chapter 11 cases.

30.     *Fifth*, the Debtors performed due diligence in determining the need for the KERP. In developing the plan, the Debtors' management team consulted with department heads to determine which employees were most critical to retain and most at risk absent an incentive plan. As set forth more fully in the Georgeson Declaration, the Debtors then compared their proposed retention awards for Participants against similarly situated companies in chapter 11.

31.     *Sixth*, the Debtors relied in part on the independent review of WTW and their other advisors in developing the KERP.  Moreover, the Debtors have actively shared information regarding the KERP with the U.S. Trustee and the Committee.  Because of this open engagement, the Debtors believe that the interests of their estates have been adequately protected and that the KERP is justified by the facts and circumstances of these chapter 11 cases.

32.     Accordingly, the Debtors respectfully submit that the KERP satisfies the "business judgment standard" identified in *In re Dana Corp*.  Indeed, courts in this district have routinely granted relief well in excess of that requested herein.  *See, e.g.*, *In re Windstream Holdings, Inc.*, No. 19-22312 (RDD) (Bankr. S.D.N.Y. May 15, 2019) (approving a KERP for up

to $5 million in the aggregate for to-be-determined number of employees); *In re Westinghouse Electric Co. LLC*, No. 17-10751 (MEW) (Bankr. S.D.N.Y. Sept. 12, 2017) (approving a KERP for 210 of the debtors' non-insider employees with total cost of $13,831,879); *In re SunEdison Inc.*, No. 16-10992 (SMB) (Bankr. S.D.N.Y. July 29, 2016) (approving a KERP for 126 employees with an estimated payout of $7.0 million); *In re NII Holdings, Inc.*, No. 14-12611 (Bankr. S.D.N.Y. December 10, 2014) (approving a KERP for twelve employees with an approximate total cost of $1.24 million).

### III.    Section 503(c)(1) of the Bankruptcy Code Is Inapplicable to the KERP.

33.    Because none of the Participants are "insiders" as that term is defined by the Bankruptcy Code, section 503(c)(1) is inapplicable.  Section 503(c)(1) of the Bankruptcy Code restricts payments made to "insiders of the debtor for the purpose of inducing such person to remain with the debtor's business"—*i.e.*, those insider plans that are essentially "pay to stay" plans.  11 U.S.C. 503(c)(1).  By its terms, section 503(c)(1) of the Bankruptcy Code does not apply where—as is the case here—participants in a retention-based program are not insiders.

34.    Section 101(31) of the Bankruptcy Code provides that where a debtor is a corporation, insiders include any "(i) director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor . . . or (iv) relative of a . . . director, officer or person in control of the debtor."  11 U.S.C. § 101(31)(B).  Courts have also concluded that an employee may be an "insider" if such employee has "at least a controlling interest in the debtor or . . . exercise[s] sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets."  *In re Velo Holdings, Inc.,* 472 B.R. 201, 208 (Bankr. S.D.N.Y. 2012) (citations omitted).  An employee's job title, alone, does not make such employee an "insider" as defined by the Bankruptcy Code.  *See In re Borders Grp. Inc.,* 453 B.R. 459, 469 (Bankr. S.D.N.Y. 2011) (noting that "[c]ompanies often give employees the title 'director' or

'director- level,' but do not give them decision-making authority akin to an executive" and concluding that certain "director level" employees in that case were not insiders); *Glob. Aviation*, 478 B.R. at 148 ("The fact that some of the KERP Employees have the word "director" in their titles does not make them insiders. The label an employer chooses to attach to a position is not dispositive for purposes of insider analysis because '[c]ompanies often give employees the title 'director' or 'director-level' but do not give them decision-making authority akin to an executive.'")

35.    Although certain Participants hold titles including the term "head," "director," "vice president," or "chief," none of the Participants are "insiders," as such term is defined by section 101(31) of the Bankruptcy Code.  None of the Participants have discretionary control over substantial budgetary amounts or significant control with respect to the Debtors' corporate policies or governance.  Therefore, the Debtors respectfully submit that none of the Participants constitute "insiders" of the Debtors, and the restrictions of section 503(c)(1) of the Bankruptcy Code is inapplicable to the KERP.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

36.    To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Motion Practice

37.    This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion.  Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

## **Notice**

38.     The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable:  (a) the U.S. Trustee; (b) the Committee; (c) the lender under the Debtors' prepetition loan facility; (d) the United States Attorney's Office for the Southern District of New York; (e) the Internal Revenue Service; (f) the Toronto Stock Exchange; (g) the attorneys general in the states where the Debtors conduct their business operations; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

39.     No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated:  August 2, 2022
New York, New York

/s/ Joshua A. Sussberg
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        jsussberg@kirkland.com
              cmarcus@kirkland.com
              christine.okike@kirkland.com
              allyson.smith@kirkland.com

*Proposed Counsel to the Debtors and Debtors in Possession*

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER (I) APPROVING THE DEBTORS' KEY**
**EMPLOYEE RETENTION PLAN AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) approving and authorizing the Debtors' proposed key employee retention plan (the "KERP"), (b) authorizing the Debtors to make payments to certain non-insider employees under the KERP, and (c) granting certain related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      Pursuant to sections 503(c) and 363(b)(1) of the Bankruptcy Code, the KERP is hereby approved.

3.      The Debtors are authorized, but not directed, to implement the KERP and make the payments contemplated thereunder at the times specified in the Motion.

4.      The Debtors may add a replacement participant(s) to the KERP upon the resignation or the termination for cause of any Participant.

5.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

6.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

7.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

8.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE