

# PROOF OF PUBLICATION

Aug-10, 20 22

I, Edgar Noblesala, in my capacity as a Principal Clerk of the Publisher of The New York Times, a daily newspaper of general circulation printed and published in the City, County and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on

Aug 10, 2022, NYT & Natl, pg B3

Sworn to me this 10th day of August, 2022

_____
Notary Public

Ellen Herb
Notary Public, State of New York
No. 01HE6163785
Qualified in New York County
Commission Expires April 2, 2023

---

Joshua A. Sussberg, P.C., Christopher Marcus, P.C., Christine A. Okike, P.C., Allyson B. Smith (admitted pro hac vice), KIRKLAND & ELLIS LLP, KIRKLAND & ELLIS INTERNATIONAL LLP, 601 Lexington Avenue, New York, New York 10022, Telephone: (212) 446-4800, Facsimile: (212) 446-4900, Counsel to the Debtors and Debtors in Possession

UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK

In re:  ) Chapter 11
VOYAGER DIGITAL HOLDINGS, INC., et al.,[1]  ) Case No. 22-10943 (MEW)
Debtors.  ) (Jointly Administered)

**NOTICE OF BAR DATES FOR SUBMITTING PROOFS OF CLAIM AND CLAIMS UNDER SECTION 503(B)(9) OF THE BANKRUPTCY CODE AGAINST THE DEBTORS**

PLEASE TAKE NOTICE THAT the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") has entered an order (Docket No. 218) (the "Bar Date Order") establishing **5:00 p.m. Eastern Time on October 3, 2022** (the "General Claims Bar Date"), as the last date for each person or entity (including individuals, partnerships, corporations, joint ventures and trusts) to submit a Proof of Claim against any of the Debtors listed below (collectively, the "Debtors"). A copy of the Bar Date Order, and any exhibits thereto are available (i) at the Debtors' expense upon request to Stretto, Inc. (the noticing and claims agent retained in these chapter 11 cases), by calling 855-473-8665 for callers in the United States or by calling 949-271-6507 for callers outside the United States, (ii) for no charge by visiting the Debtors' restructuring website at http://cases.stretto.com/Voyager, or (iii) for a fee via PACER by visiting http://ecf.nysb.uscourts.gov.

The Bar Date Order requires that all entities (collectively, the "Claimants") holding or wishing to assert a claim that arose or is deemed to have arisen prior to July 5, 2022 (the "Petition Date"), against the Debtors ("Claims") to submit a Proof of Claim so as to be actually received by Stretto, Inc. (the "Notice and Claims Agent") on or before the applicable bar date (collectively, the "Bar Dates") as set forth below. None of the bar dates described herein apply to any governmental unit. Pursuant to section 502(b)(9) of the Bankruptcy Code, all governmental units shall have at least 180 days from the commencement of these chapter 11 cases to submit Claims against the Debtors.

**Debtor Name, Last Four Digits of Tax Identification Number, Case Number:** Voyager Digital Holdings, Inc., 7687, 22-10943; Voyager Digital Ltd., 7224, 22-10944; Voyager Digital, LLC, 8013, 22-10945

**General Claims Bar Date** (Applicable to 503(b)(9) Claims). All Claimants holding or wishing to assert a Claim must submit a Proof of Claim with respect to such Claim so as to be **actually received** by the Notice and Claims Agent by **October 3, 2022, at 5:00 p.m. prevailing Eastern Time** (the "General Claims Bar Date"), including parties asserting Claims pursuant to section 503(b)(9) of the Bankruptcy Code.

**Supplemental Bar Date.** In the event the Debtors amend or supplement their schedules of assets and liabilities (collectively, the "Schedules"), the Debtors shall give notice of any such amendment to the holders of any Claim affected thereby, and such holders shall be afforded at least 35 days from the date on which such notice is given to submit a Proof of Claim with respect to such amended Claim (any such date, a "Supplemental Bar Date") or be forever barred from doing so.

**Rejection Bar Date.** If you have a Claim arising from the rejection of an executory contract or unexpired lease, you must submit a Proof of Claim based on such rejection on or before the later of (a) the General Claims Bar Date and (b) any date the Bankruptcy Court may fix in the applicable order authorizing such rejection and, if no such date is provided, 30 days from the date of entry of such order (the "Rejection Bar Date"). The Debtors will provide notice of the Rejection Bar Date to the contract or lease counterparty whose executory contract or lease is being rejected at the time the Debtors reject any executory contract or unexpired lease.

**When and Where To Submit.** Each Proof of Claim, including supporting documentation, must be submitted so that the Notice and Claims Agent **actually receives** the Proof of Claim on or before the applicable Bar Date by: (i) electronically using the interface available on the Notice and Claims Agent's website at https://cases.stretto.com/Voyager, or (ii) first-class U.S. Mail, overnight mail, or other hand-delivery system, which Proof of Claim must include an original signature, at the following address: Voyager Claims Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602.

**PROOFS OF CLAIM SUBMITTED BY FACSIMILE OR ELECTRONIC MAIL WILL NOT BE ACCEPTED AND WILL NOT BE DEEMED TIMELY SUBMITTED.**

**Contents of Proofs of Claim.** Each Proof of Claim must: (i) be written in English; (ii) set forth (A) for any Claim based on cryptocurrency(ies) held in an account on the Debtors' platform, the number of units of each cryptocurrency held in such account;[2] and (B) in the case of any other Claim, the amount of such Claim denominated in United States dollars; (iii) conform substantially with the Proof of Claim Form provided by the Debtors or Official Form 410; (iv) be signed or electronically transmitted through the interface available on the Notice and Claims Agent's website at https://cases.stretto.com/Voyager by the claimant or by an authorized agent or legal representative of the claimant; and (v) unless otherwise consented to by the Debtors in writing, include supporting documentation unless voluminous, in which case a summary must be attached or an explanation provided as to why documentation is not available.

**Section 503(b)(9) Claims.** Vendors and suppliers of goods may be entitled to request an administrative priority Claim under section 503(b)(9) of the Bankruptcy Code to the extent they delivered, and the Debtor received, goods within the twenty-day period prior to the Petition Date. The Bankruptcy Court has deemed the submission of a Proof of Claim as satisfying the procedural requirements for asserting such a Claim under section 503(b)(9) of the Bankruptcy Code. In addition to the other requirements listed above, any Proof of Claim asserting a 503(b)(9) Claim must (i) include the value of the goods delivered to and received by the Debtors in the 20 days prior to the Petition Date; (ii) attach any documentation identifying the particular invoices for which the 503(b)(9) Claim is being asserted; (iii) attach documentation of any reclamation demand made against the Debtors under section 546(c) of the Bankruptcy Code (if applicable); and (iv) set forth whether any portion of the Section 503(b)(9) Claim was satisfied by payments made by the Debtors.

**Consequences of Failing to Timely Submit Your Proof of Claim.** Any holder of a Claim that is not exempted from the requirements of the Bar Date Order, as set forth in paragraph 9 of the Bar Date Order, and that fails to timely file a Proof of Claim in the appropriate form, shall not be treated as a creditor with respect to such Claim for the purposes of voting on any plan of reorganization filed in these cases and participating in any distribution in the Debtors' cases on account of such Claim.

**Reservation of Rights.** Nothing contained in this notice is intended to or should be construed as a waiver of the Debtor's right to: (a) dispute, or assert offsets or defenses against, any submitted Claim or any Claim listed or reflected in the Debtors' Schedules of Assets and Liabilities and/or Schedules of Executory Contracts and Unexpired Leases as to the nature, amount, liability, or classification thereof; (b) subsequently designate any scheduled Claim as disputed, contingent, or unliquidated; and (c) otherwise amend the Schedules.

**Additional Information.** If you have any questions regarding the Claims process and/or if you wish to obtain a copy of the Bar Date Order (which contains a more detailed description of the requirements for submitting Proofs of Claim), a Proof of Claim form or related documents, you may do so by visiting the Debtors' restructuring website at http://cases.stretto.com/Voyager or contacting the Notice and Claims Agent by calling 855-473-8665 for callers in the United States or by calling 949-271-6507 for callers outside the United States and/or writing to the following address: Voyager Claims Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602. Please note that the Notice and Claims Agent cannot advise you how to submit, or whether you should submit, a Proof of Claim.

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2] For the avoidance of doubt, all Claims for cryptocurrency held by any holder must clearly state (i) each type of cryptocurrency held and (ii) the number of units of each cryptocurrency held.



AGENCE FRANCE-PRESSE, VIA GETTY IMAGES
Federal authorities obtained warrants to seize this Gulfstream jet, which they believe is owned by the Russian oligarch Roman Abramovich.

# Advisory Firm Tied To Russian Oligarch Faces U.S. Inquiries



OZAN KOSE/AGENCE FRANCE-PRESSE — GETTY IMAGES
Concord Management, a small investment advisory firm, is at the center of federal inquiries for its role in overseeing investments by Mr. Abramovich, above.

FROM FIRST BUSINESS PAGE

picking potential hedge fund and private equity investments for offshore entities linked to Mr. Abramovich. The firm is led by its founder, Michael Matlin.

A spokesman for Mr. Matlin said he was not available for comment.

Representatives for the S.E.C. and F.B.I. declined to comment.

The investigations began several weeks after The New York Times first reported on Concord's role overseeing hedge fund investments for Mr. Abramovich. The scrutiny by federal authorities comes as some in Congress have pushed to close a loophole that has allowed hedge funds and private equity firms, in some instances, to avoid conducting the same kind of anti-money-laundering and know-your-customer checks that banks and mutual funds routinely have to perform.

That loophole drew fresh attention this year after Russia's invasion of Ukraine and the decision by the British government and the European Union to impose sanctions on Mr. Abramovich. That forced him to sell the famed Chelsea Football Club in London and resulted in authorities freezing more than $13 billion in assets held by banks and financial institutions in Britain, the Cayman Islands, the Isle of Jersey and the British Virgin Islands.

Over the years, dozens of hedge funds and private equity firms have accepted investments from Mr. Abramovich's offshore entities, including many that were arranged by Concord, according to an internal document prepared by one Wall Street firm. The funds were managed by Millennium Management, BlackRock, Paulson, Carlyle Group and D.E. Shaw, among other firms, according to people briefed on the matter and the document.

But the names of most of the hedge funds to which Concord directed investment dollars remain unknown.

Concord kept a low profile. It does not have a website and has about a dozen employees. It is not registered as an investment adviser with U.S. regulators. Its offices, in a nondescript building off a suburban highway, are behind windowless black metal doors. No one answered when reporters knocked on two recent occasions.

Because of the daisy chain of offshore entities used by associates of Mr. Abramovich to invest his money, it is unclear how many hedge fund and private equity firms realized that Concord was representing his interests. In recent years, though, Concord's link to Mr. Abramovich has become more widely known on Wall Street, industry officials said.

Mr. Abramovich, who is also a citizen of Israel and Portugal, earned his billions by buying a state-owned Russian oil company for $200 million and then selling it, years later, for nearly $12 billion. He has close ties to President Vladimir V. Putin of Russia. When Mr. Putin was consolidating power some two decades ago, Mr. Abramovich served as a governor of a Russian province.

While the United States has not placed sanctions on Mr. Abramovich, federal prosecutors in June filed court papers seeking to seize a Boeing 787 Dreamliner and a Gulfstream jet that he is said to own. Federal authorities said the planes, together valued at more

## Use of offshore shell companies to invest in U.S. hedge funds.

than $400 million, had been moved to other countries in violation of U.S. export regulations imposed after Russia's invasion of Ukraine.

The court papers said Mr. Abramovich concealed his ownership of the planes through a series of shell companies in offshore jurisdictions.

Mr. Abramovich hired the law firm Kobre & Kim in July to represent him "in relation to judicial and administrative proceedings" and to lobby the U.S. government, according to a federal filing by the law firm. Kobre & Kim said Mr. Abramovich, in his role as mediator between Russia and Ukraine, "has been heavily involved in advocating for, and coordinating the establishment of humanitarian corridors and other humanitarian rescue missions."

A spokesman for Kobre & Kim declined to comment.

---



WINNIE AU FOR THE NEW YORK TIMES
New York City had accused Chipotle of violating worker protection laws.

# Chipotle to Pay $20 Million To Settle Workplace Case

By NOAM SCHEIBER

New York City said Tuesday that it had reached a settlement potentially worth more than $20 million with the fast-food chain Chipotle Mexican Grill over violations of worker protection laws, the largest settlement of its kind in the city's history.

The action, affecting about 13,000 workers, sends a message "that we won't stand by when workers' rights are violated," Mayor Eric Adams said in a statement.

The city said the settlement covered violations of scheduling and sick leave laws from late November 2017 to late April of this year. Under the settlement, hourly employees of Chipotle in New York City will receive $50 for each week that they worked during that period. Employees who left the company before April 30 will have to file a claim to receive their compensation.

The Fair Workweek Law enacted by the city in 2017 requires fast-food employers to provide workers with their schedules at least two weeks in advance or pay a bonus for the shifts.

The employers must also give workers at least 11 hours off between shifts on consecutive days or get written consent and pay them an extra $100. And the employers must offer workers more shifts before hiring additional employees, to make it easier for them to earn a sustainable income.

Under a separate city law, large employers like Chipotle must provide up to 56 hours of paid sick leave per year.

The city accused Chipotle of violating all these policies.

"We're pleased to be able to resolve these issues," Scott Boatwright, the company's chief restaurant officer, said in a statement. Mr. Boatwright added that the company had carried out a number of changes to ensure compliance with the law, such as new time-keeping technology, and that Chipotle looked forward to "continuing to promote the goals of predictable scheduling and access to work hours for those who want them."

The city filed an initial legal complaint in the case, involving a handful of Chipotle stores, in September 2019, then expanded the case last year to include locations across the city. At the time, the city said the company owed workers over $150 million for the scheduling violations alone. Advocates for the workers said civil penalties could far exceed that amount.

In addition to as much as $20 million in compensation, Chipotle will pay $1 million in civil penalties. A city spokeswoman said the settlement was the fastest way to win relief for workers.

The city said in its statement that it had closed more than 220 investigations and obtained nearly $3.4 million in fines and restitution under the scheduling law, and that it had closed more than 2,300 investigations and obtained nearly $17 million in fines and restitution under the sick leave law. Neither figure includes Tuesday's settlement.

The city spokeswoman said the city had filed more than 135 formal complaints under the two laws, and that many employers settle before the city can file a case.

Chipotle faces pressure over its labor practice on other fronts. Local 32BJ of the Service Employees International Union, which helped prompt the investigation at Chipotle by filing initial complaints in the case, is seeking to unionize Chipotle workers in the city.

Chipotle employees at stores in Maine and Michigan have filed petitions for union elections. The Maine store has been closed, a move that the employees assert was retaliation for the organizing effort. Chipotle has said the closing was a result of staffing issues and not union activity.

---

# Coinbase Reports a 63 Percent Drop in Revenue

By DAVID YAFFE-BELLANY

When the cryptocurrency exchange Coinbase went public in April 2021, it was a triumphant moment for the nascent crypto industry.

But the company has endured a grim 2022, grappling with a crypto market crash that has tanked its stock price and forced it to lay off hundreds of employees.

Those struggles continued on Tuesday when Coinbase reported a 63 percent decline in revenue in the second quarter and swung to a $1.1 billion loss from a year ago.

Blaming the "fast and furious" crypto downturn, the company said revenue was $808 million, down from $2.2 billion a year earlier. Its monthly customer total rose to nine million from 8.8 million last year, but was down from 9.2 million in the last quarter. Coinbase also predicted that its user numbers would continue to fall over the next three months.

In an earnings call on Tuesday, Brian Armstrong, Coinbase's chief executive, emphasized the cyclical nature of crypto and pointed out that the company had survived previous downturns.

"It seems scary," he said. "But it's never as bad as it seems."

The results illustrated the stark challenges facing Coinbase at a turbulent moment for the crypto industry. The prices of the leading digital currencies crashed in May and June as a series of experimental crypto ventures collapsed, plunging investors into financial ruin. The crash has led to layoffs across the industry, dampening the excitement that surged last fall when the price of Bitcoin reached a record high.

As part of the industry meltdown, Coinbase's stock price has fallen about 75 percent since November. The company's success is largely tied to the fluctuations of the broader crypto market. In the second quarter, more than 80 percent of its revenue came from trading fees it charged customers to buy and sell digital assets like Bitcoin and Ether.

In June, Coinbase laid off 18 percent of its staff, or about 1,100 employees. Mr. Armstrong said at the time that the company had "over-hired."

Coinbase's recent struggles have fueled concerns that it may be squandering its early lead in the industry, as competitors like Binance and FTX expand during the downturn.

Despite its early start, Coinbase has never had a strong foothold in the international market, and it recently botched an expansion effort in India. Its most hyped product launch of the year — a marketplace for the digital collectibles known as nonfungible tokens, or NFTs — drew little customer interest. And a hiring spree last year led to overspending and bloat, as the company's expenses more than doubled.

"We probably could have grown slower over the last couple of years," Mr. Armstrong said on the call.

Coinbase has also come under regulatory scrutiny. Last month, the Justice Department filed insider-trading charges against a former Coinbase employee. In a related action, the Securities and Exchange Commission said that it considered some of the digital coins listed on Coinbase's exchange to be securities and, therefore, subject to regulation like stocks or bonds — a stance the company has objected to.

In a letter to shareholders on Tuesday, Coinbase said that the S.E.C. sent the company a "voluntary request for information" in May about that listing process. "We do not yet know if this inquiry



GABBY JONES FOR THE NEW YORK TIMES
Coinbase, the largest cryptocurrency exchange in the U.S., reported a second-quarter loss of $1.1 billion.

will become a formal investigation," the letter said.

Coinbase's competitors appear to be faring better during the downturn. FTX, another crypto exchange, has had financial results that are "ballpark similar" to last year's, according to its

## Blaming a decline on the 'fast and furious' crypto downturn.

chief executive, Sam Bankman-Fried. Binance, the world's largest exchange, announced in June that it was looking to fill 2,000 positions.

Still, Coinbase remains one of the most trusted and recognized crypto brands in the United States, known for its Super Bowl commercial featuring a bouncing QR code. Last week, the company announced a partnership with BlackRock, the world's largest asset manager, to help institutional investors trade Bitcoin.

---

Joshua A. Sussberg, P.C., Christopher Marcus, P.C., Christine A. Okike, P.C., Allyson B. Smith (admitted pro hac vice), KIRKLAND & ELLIS LLP, KIRKLAND & ELLIS INTERNATIONAL LLP, 601 Lexington Avenue, New York, New York 10022, Telephone: (212) 446-4800, Facsimile: (212) 446-4900, Counsel to the Debtors and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| In re: | Chapter 11 |
|---|---|
| VOYAGER DIGITAL HOLDINGS, INC., et al.,[1] | Case No. 22-10943 (MEW) |
| Debtors. | (Jointly Administered) |

NOTICE OF BAR DATES FOR SUBMITTING PROOFS OF CLAIM AND CLAIMS UNDER SECTION 503(B)(9) OF THE BANKRUPTCY CODE AGAINST THE DEBTORS

PLEASE TAKE NOTICE that the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") has entered an order [Docket No. 218] (the "Bar Date Order") establishing 5:00 p.m. Eastern Time on October 3, 2022 (the "General Claims Bar Date"), as the last date for each person or entity (including individuals, partnerships, corporations, joint ventures and trusts) to submit a Proof of Claim against any of the Debtors listed below (collectively, the "Debtors"). A copy of the Bar Date Order, and any exhibits thereto are available (i) at the Debtors' expense upon request to Stretto, Inc. (the noticing and claims agent retained in these chapter 11 cases), by calling 855-473-8665 for callers in the United States or by calling 949-271-6507 for callers outside the United States, (ii) for no charge by visiting the Debtors' restructuring website at http://cases.stretto.com/Voyager, or (iii) for a fee via PACER by visiting http://ecf.nysb.uscourts.gov.

The Bar Date Order requires that all entities (collectively, the "Claimants") holding or wishing to assert a claim that arose or is deemed to have arisen prior to July 5, 2022 (the "Petition Date"), against the Debtors ("Claims") to submit a Proof of Claim so as to be actually received by Stretto, Inc. (the "Notice and Claims Agent") on or before the applicable bar date (collectively, the "Bar Dates") as set forth below. None of the bar dates described herein apply to any governmental unit. Pursuant to section 502(b)(9) of the Bankruptcy Code, all governmental units shall have at least 180 days from the commencement of these chapter 11 cases to submit Claims against the Debtors.

Debtor Name, Last Four Digits of Tax Identification Number, Case Number: Voyager Digital Holdings, Inc., 7687, 22-10943; Voyager Digital Ltd., 7224, 22-10944; Voyager Digital LLC, 8013, 22-10945

General Claims Bar Date (Applicable to 503(b)(9) Claims). All Claimants holding or wishing to assert a Claim must submit a Proof of Claim with respect to such Claim so as to be actually received by the Notice and Claims Agent by October 3, 2022, at 5:00 p.m. prevailing Eastern Time (the "General Claims Bar Date"), including parties asserting Claims pursuant to section 503(b)(9) of the Bankruptcy Code.

Supplemental Bar Date. In the event the Debtors amend or supplement their schedules of assets and liabilities (collectively, the "Schedules"), the Debtors shall give notice of any such amendment to the holders of any Claim affected thereby, and such holders shall be afforded at least 35 days from the date on which such notice is given to submit a Proof of Claim with respect to such amended Claim (any such date, a "Supplemental Bar Date") or be forever barred from doing so.

Rejection Bar Date. If you have a Claim arising from the rejection of an executory contract or unexpired lease, you must submit a Proof of Claim based on such rejection on or before the later of (a) the General Claims Bar Date and (b) any date the Bankruptcy Court may fix in the applicable order authorizing such rejection and, if no such date is provided, 30 days from the date of entry of such order (the "Rejection Bar Date"). The Debtors will provide notice of the Rejection Bar Date to the contract or lease counterparty whose contract or lease is being rejected at the time the Debtors reject any executory contract or unexpired lease.

When and Where To Submit. Each Proof of Claim, including supporting documentation, must be submitted so that the Notice and Claims Agent actually receives the Proof of Claim on or before the applicable Bar Date by: (i) electronically using the interface available on the Notice and Claims Agent's website at https://cases.stretto.com/Voyager, or (ii) first-class U.S. Mail, overnight mail, or other hand-delivery system, which Proof of Claim must include an original signature, at the following address: Voyager Claims Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602.

PROOFS OF CLAIM SUBMITTED BY FACSIMILE OR ELECTRONIC MAIL WILL NOT BE ACCEPTED AND WILL NOT BE DEEMED TIMELY SUBMITTED.

Contents of Proofs of Claim. Each Proof of Claim must: (i) be written in English; (ii) set forth (A) for any Claim based on cryptocurrency(ies) held in an account on the Debtors' platform, the number of units of each cryptocurrency held in such account;[2] and (B) in the case of any other Claim, the amount of such Claim denominated in United States dollars; (iii) conform substantially with the Proof of Claim Form provided by the Debtors or Official Form 410; (iv) be signed or electronically transmitted through the interface available on the Notice and Claims Agent's website at https://cases.stretto.com/Voyager by the claimant or by an authorized agent or legal representative of the claimant; and (v) unless otherwise consented to by the Debtors in writing, include supporting documentation unless voluminous, in which case a summary must be attached or an explanation provided as to why documentation is not available.

Section 503(b)(9) Claims. Vendors and suppliers of goods may be entitled to request an administrative priority Claim under section 503(b)(9) of the Bankruptcy Code to the extent they delivered, and the Debtor received, goods within the twenty-day period prior to the Petition Date. The Bankruptcy Court has deemed the submission of a Proof of Claim as satisfying the procedural requirements for asserting such a Claim under section 503(b)(9) of the Bankruptcy Code. In addition to the other requirements listed above, any Proof of Claim asserting a 503(b)(9) Claim must (i) include the value of the goods delivered to and received by the Debtors in the 20 days prior to the Petition Date; (ii) attach any documentation identifying the particular invoices for which the 503(b)(9) Claim is being asserted; (iii) attach documentation of any reclamation demand made against the Debtors under section 546(c) of the Bankruptcy Code (if applicable); and (iv) set forth whether any portion of the Section 503(b)(9) Claim was satisfied by payments made by the Debtors.

Consequences of Failing to Timely Submit Your Proof of Claim. Any holder of a Claim that is not exempted from the requirements of the Bar Date Order, as set forth in paragraph 9 of the Bar Date Order, and that fails to timely file a Proof of Claim in the appropriate form, shall not be treated as a creditor with respect to such Claim for the purposes of voting on any plan of reorganization filed in these cases and participating in any distribution in the Debtors' cases on account of such Claim.

Reservation of Rights. Nothing contained in this notice is intended to or should be construed as a waiver of the Debtor's right to: (a) dispute, or assert offsets or defenses against, any submitted Claim or any Claim listed or reflected in the Debtors' Schedules of Assets and Liabilities and/or Schedules of Executory Contracts and Unexpired Leases as to the nature, amount, liability, or classification thereof; (b) subsequently designate any scheduled Claim as disputed, contingent, or unliquidated; and (c) otherwise amend the Schedules.

Additional Information. If you have any questions regarding the Claims process and/or if you wish to obtain a copy of the Bar Date Order (which contains a more detailed description of the requirements for submitting Proofs of Claim), a Proof of Claim form or related documents, you may do so by visiting the Debtors' restructuring website at http://cases.stretto.com/Voyager or contacting the Notice and Claims Agent by calling 855-473-8665 for callers in the United States or by calling 949-271-6507 for callers outside the United States and/or writing to the following address: Voyager Claims Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602. Please note that the Notice and Claims Agent cannot advise you how to submit, or whether you should submit, a Proof of Claim.

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.
[2] For the avoidance of doubt, the Common Stock includes the variable voting shares.
[3] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Final Order or the Motion, as applicable.