**Hearing Date: August 24, 2022, at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: August 17, 2022, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF**
**STEPHEN EHRLICH, CHIEF EXECUTIVE**
**OFFICER OF THE DEBTORS, IN SUPPORT OF THE DEBTORS'**
**MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE DEBTORS'**
**KEY EMPLOYEE RETENTION PLAN AND (II) GRANTING RELATED RELIEF**

I, Stephen Ehrlich, hereby declare as follows under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1.      I am the Chief Executive Officer of Voyager Digital Holdings, Inc. ("Voyager"). Voyager is a debtor and debtor in possession in the above-captioned cases along with two of its debtor subsidiaries and affiliates (collectively, the "Debtors").

2.      I am familiar with the Debtors' day-to-day operations, businesses and financial affairs, and books and records including the Debtors' proposed key employee retention plan

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

(the "KERP") as set forth in the *Debtors' Motion for Entry of an Order (I) Approving the Debtors'*
*Key Employee Retention Plan and (II) Granting Related Relief* [Docket No. 212] (the "Motion").[2]

3.      I submit this declaration in support of the Motion. Except as otherwise indicated,
the statements set forth in this declaration are based upon: my personal knowledge; my review of
relevant documents and information concerning the Debtors' operations, financial affairs, and
restructuring initiatives; and information obtained from other members of the Debtors'
management team and advisors. I am authorized to submit this Declaration on behalf of the
Debtors. I am over the age of eighteen, and, if called upon to testify, I could and would testify
competently to the facts and opinions set forth in this declaration.

## Qualifications

4.      I am the Co-Founder and Chief Executive Officer of Voyager Digital, LLC and
have held that position since Voyager Digital's founding in 2018. I am also the Chief Executive
Officer of Voyager Digital Holdings, Inc. Prior to co-founding Voyager Digital, I co-founded and
served as Chief Executive Officer of Voyager Digital Canada Ltd. and served on Voyager Digital
Canada Ltd.'s board of directors. I served as Vice-President, Brokerage of E*Trade Financial
Corporation from 1999 to 2006 and Chief Executive Officer of ETrade Professional Trading from
2002 to 2006 before I founded Lightspeed Financial, LLC in 2006.

## The Debtors' Employees

5.      I believe that the Debtors have a strong and dedicated workforce. I also recognize
that the Debtors' employees would be exceptionally hard and costly to replace in this current
economic climate because of their invaluable institutional knowledge and understanding of the
cryptocurrency industry and the tight labor market.

---

[2]   Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Motion.

6.      Due to the rapid growth of the cryptocurrency industry, the labor market for employees who possess the qualifications and skills necessary to operate a sophisticated cryptocurrency trading platform is extremely limited.  I believe that it is likely that the Debtors would struggle to even adequately source potential candidates who could operate the Voyager platform effectively, and hiring a new employee (if even possible) would require the Debtors to incur significant operational and financial costs.

7.      Despite the fact that the Debtors' trading platform is frozen, the Debtors' employees continue to perform maintenance and updates on the Debtors' platform and prepare the Debtors' platform for post-emergence operations.  The Debtors' employees are also working to return cash to customers following the Court's Order permitting them to do so.  Moreover, I believe that any potential purchaser of the Debtors' assets or equity interests would want reassurance that during the course of their chapter 11 proceedings, the Debtors retained their key employees with the specialized knowledge needed to resume operations at the appropriate time.

8.      The Debtors' employees are also working closely with the Debtors' advisors to facilitate the administration of these chapter 11 cases and satisfy all chapter 11 reporting obligations.  I believe that without the continued efforts of the Debtors' employees, the Debtors will not have an operational trading platform or the capability to serve customers at the conclusion of these chapter 11 cases.  I further believe that the Debtors' ability to quickly "unfreeze" operations is crucial to the Debtors' post-emergence success.  Accordingly, I believe that retaining key employees is critical to the Debtors' reorganizational efforts and, ultimately, the Debtors' viability as a trading platform.  When the KERP program was presented to the independent directors of Voyager Digital, LLC, they unanimously agreed.

**KERP Participants**

9.      Recognizing the compensation issues that have arisen as a result of the chapter 11 process and current market environment, the Debtors engaged Willis Towers Watson US LLC ("Willis Towers Watson"), an independent compensation consultant, to aid in their research and analysis of potential solutions.  The Debtors worked diligently with Willis Towers Watson and their other advisors to structure the proposed KERP.  The Debtors, their advisors, and Debtor Voyager Digital, LLC's special committee of independent directors reviewed market data and analyses regarding compensation levels and program structure.  In light of the Debtors' circumstances and their restructuring process, the Debtors and the special committee (in consultation with their advisors) concluded that implementation of the KERP was appropriate and necessary under the circumstances.

10.     Of the Debtors' approximately 350 current employees, the Debtors identified 38 key non-insider employees as Participants.  The Participants perform a variety of important business functions that are vital to the Debtors' ability to preserve and enhance stakeholder value. These 38 non-insider employees perform essential accounting, cash and digital asset management, IT infrastructure, legal, and other critical functions for the Debtors.

11.     The Participants have deep institutional knowledge of the Debtors' operations, the cryptocurrency industry generally, or both.  Some Participants maintain critical relationships with counterparties that are essential to the Debtors' business.  Further, many Participants are long-tenured employees that developed or helped to build the Debtors' platform.  Failure to retain any of the Participants would result in significant operational disruption and the loss of irreplaceable knowledge of the Debtors' business.

12.    The threat of immediate attrition for the Debtors' critical employees is not hypothetical.  Since the commencement of these chapter 11 cases on July 5, 2022, 12 employees resigned.  Further, since the filing of the Motion on August 2, 2022, two of the Debtors' key employees resigned.  Without the approval of the KERP, additional critical employees may depart during these chapter 11 cases, which would destroy value, harm the Debtors' restructuring process, and adversely affect the Debtors' ability to operate in the ordinary course upon emergence.  The swift implementation of a KERP would help limit further attrition and, by extension, the need to incur significant operational and financial costs to source and hire new employees.

13.    Although certain Participants have titles incorporating the word "officer," "head," "director," "vice president," or "chief," none of the Participants are in reality insiders and merely holding such title conveys no special privileges within the Debtors' hierarchy.  Although the Participants are important to the Debtors' business operations, no Participant in the proposed KERP is an employee who:  (a) sits on, or directly reports to, the Debtors' board of directors; (b) was appointed or hired directly by the Debtors' board of directors; (c) exercises managerial control over, or has responsibility for, the Debtors' operations as a whole; or (d) directs the Debtors' overall corporate policy or governance.  My understanding is that, as a result, none of the Participants is an "insider" under the Bankruptcy Code.

14.    The following chart further details the importance of each Participant to the Debtors and such Participant's supervisor, salary, and proposed KERP award:

| KERP Participants | | | | | | |
|---|---|---|---|---|---|---|
| | Title | Job Description | Supervisor's Name and Title | Hired/Appointed By | Salary | KERP Award |
| 1 | ▮▮▮ | ▮▮▮▮▮ | ▮▮▮ | ▮▮▮ | ▮▮ | ▮▮ |











15.     I believe that certain Participants may be motivated to leave the Debtors' employ during the pendency of these chapter 11 cases due to, among other things, the uncertainty created by the Debtors' ongoing reorganization and marketing efforts.  Importantly, the Debtors' compensation structure for employees historically included a large equity component.  But the value of such compensation has cratered, causing many employees to be compensated below market in the hottest job market in recent memory.  Further, under the Plan, all existing equity interests in the Debtors will be cancelled upon the Debtors' emergence from chapter 11.[3]  I believe that preserving each Participant's institutional and technical knowledge is crucial to the Debtors' ability to maximize value.  I further believe that the KERP will increase the likelihood that the Participants are properly incentivized to remain with the Debtors during the restructuring process, thereby preserving value for the Debtors, their estates, their customers and other creditors.

---

[3]    See *Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 17] (the "Plan").

16.    In light of the foregoing, I believe that the KERP will increase the likelihood that the Participants are properly incentivized to remain with the Debtors during the restructuring process, thereby preserving value for the Debtors, their estates, their customers and other creditors.

*[Remainder of page intentionally left blank.]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:  August 12, 2022
New York, New York

/s/ Stephen Ehrlich
Name:  Stephen Ehrlich
Title:    Co-Founder and Chief Executive Officer; Voyager Digital Ltd.