Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### NOTICE OF FILING OF REVISED PROPOSED ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF MOELIS & COMPANY LLC AS INVESTMENT BANKER AND CAPITAL MARKETS ADVISOR TO THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE

**PLEASE TAKE NOTICE** that on July 20, 2022, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed the *Application of Debtors and Debtors in Possession for Entry of an Order Authorizing the Employment and Retention of Moelis & Company LLC as Investment Banker, Capital Markets Advisor, and Financial Advisor Effective as of the Petition Date* [Docket No. 117] (the "Application").

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

**PLEASE TAKE FURTHER NOTICE** that on August 2, 2022, the Debtors filed the *Notice of Filing of Revised Proposed Order Authorizing the Employment and Retention of Moelis & Company LLC as Investment Banker, Capital Markets Advisor, and Financial Advisor Effective as of the Petition Date* [Docket No. 213] (the "Revised Proposed Order").

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file a revised proposed *Order Authorizing the Employment and Retention of Moelis & Company LLC as Investment Banker and Capital Markets Advisor to the Debtors, Effective as of the Petition Date* attached hereto as **Exhibit A** (the "Second Revised Proposed Order").

**PLEASE TAKE FURTHER NOTICE THAT** a comparison between the Second Revised Proposed Order and the Revised Proposed Order is attached hereto as **Exhibit B**.

**PLEASE TAKE FURTHER NOTICE** that copies of the Application and other pleadings filed in the above-captioned chapter 11 cases may be obtained free of charge by visiting the website of Stretto at http://www.cases.stretto.com/Voyager.  You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank.]*

Dated:  August 14, 2022    /s/ Joshua A. Sussberg
New York, New York    **KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    jsussberg@kirkland.com
    cmarcus@kirkland.com
    christine.okike@kirkland.com
    allyson.smith@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

## Exhibit A

**Revised Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION
### OF MOELIS & COMPANY LLC AS INVESTMENT BANKER AND CAPITAL
### MARKETS ADVISOR TO THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"):  (a) authorizing the employment and retention of Moelis & Company LLC ("Moelis") to serve as the Debtors' investment banker and capital markets advisor, effective as of the Petition Date pursuant to sections 327(a) and 328(a) of the Bankruptcy Code; (b) approving the provisions of the engagement letter between Moelis and the Debtors, dated as of June 20, 2022 ("Engagement Letter"), attached hereto as **Exhibit 1**, including the compensation arrangements and indemnification, contribution, and reimbursement provisions set forth therein; (c) modifying the timekeeping requirements of Local Rule 2016-1, the Amended Guidelines, the U.S. Trustee Guidelines and any other applicable procedures and orders of the Court in connection with Moelis' engagement; and (d) granting such other relief as is just and proper, all as more fully set forth in the Application; and upon the Dermont Declaration; and this Court having jurisdiction over this

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application or the Engagement Letter, as applicable.

matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012; and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. §157(b); and this Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the relief sought in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest, and that the legal and factual bases set forth in the Application, the Dermont Declaration, and at the Hearing establish just cause for the relief granted herein; and the Court being satisfied, based upon the representations made in the Application and the Dermont Declaration that (a) Moelis does not hold or represent an interest adverse to the Debtors' estates, and (b) Moelis is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code as required by section 327(a) of the Bankruptcy Code; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.    The Application is granted as set forth in this Order, and the provisions set forth in the Engagement Letter (and all attachments thereto) are hereby approved, to the extent provided herein and except as otherwise expressly modified herein to the contrary.

2.      In accordance with sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1, the Debtors are authorized to employ and retain Moelis as their investment banker and capital markets advisor in these chapter 11 cases in accordance with the terms and conditions set forth in the Engagement Letter, as modified herein, to pay fees and reimburse expenses, and to provide indemnification, contribution, and/or reimbursement to Moelis on the terms and at the times specified in the Engagement Letter as modified herein, effective as of the Petition Date.

3.      Moelis shall be compensated for fees and reimbursed for reasonable and documented out-of-pocket expenses by the Debtors in accordance with the terms of the Engagement Letter, as modified herein, and all fees and out-of-pocket expense reimbursements to be paid to Moelis, including without limitation the Monthly Fees, the Sale Transaction Fee, and the Restructuring Fee, shall be subject to section 328(a) of the Bankruptcy Code, except as otherwise set forth herein.

4.      Moelis is authorized to apply the Expense Retainer to any unbilled or otherwise remaining expenses that Moelis becomes aware of during its ordinary course billing review and reconciliation.  Moelis shall apply any remaining amounts of the Expense Retainer as a credit towards postpetition fees and expenses after such postpetition fees and expenses are approved pursuant to the first order of the Court awarding fees and expenses to Moelis.

5.      Notwithstanding anything to the contrary contained herein or in the Application and/or Engagement Letter, Moelis shall file interim and final fee applications for allowance of compensation and reimbursement of reasonable and documented out-of-pocket expenses pursuant to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Amended Guidelines, the U.S. Trustee Guidelines and any other procedures or orders of the

Bankruptcy Court; *provided, however*, the U.S. Trustee retains all rights to respond or object to Moelis' interim and final applications for compensation (including without limitation the Monthly Fees, the Sale Transaction Fee, and the Restructuring Fee) and reimbursement of out-of-pocket expenses pursuant to section 330 of the Bankruptcy Code, and the Court retains jurisdiction to consider the U.S. Trustee's response or objection to Moelis' interim and final fee applications pursuant to section 330 of the Bankruptcy Code; *provided, further*, that "reasonableness" shall be evaluated by comparing (among other things) the fees payable in these chapter 11 cases to fees paid to comparable investment banking firms with similar experience and reputation offering comparable services in other chapter 11 cases and shall not be evaluated solely on an hourly or length-of-case based criteria.

6.      Notwithstanding anything to the contrary in the Application, the Engagement Letter or herein, the requirements of the Bankruptcy Rules, the Local Rules, the Amended Guidelines, the U.S. Trustee Guidelines, and any other procedures or orders of the Court, are hereby modified such that Moelis' restructuring professionals, with the exception of clerical and administrative staff, shall be required only to keep reasonably detailed time records of the services they have performed in half-hour increments, Moelis' non-restructuring professionals and personnel in administrative departments (including legal) shall not be required to keep time records, Moelis' professionals shall not be required to keep time records on a project category basis, and Moelis shall not be required to provide or conform to any schedule of hourly rates.

7.      In the event that Moelis seeks reimbursement from the Debtors for attorneys' fees and expenses pursuant to the Application and the Engagement Letter, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Moelis' own applications, both interim and final, and such invoices and time records shall be subject to the approval of the

Court pursuant to section 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code, and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code. Attorneys' fees and/or expenses reimbursed under the Engagement Letter shall be limited to those expended in representing Moelis in retention and fee application matters. For the avoidance of doubt, the preceding sentence does not apply to, and in no way limits, the provisions with respect to reimbursement of attorneys' fees and/or expenses set forth in Annex B to the Engagement Letter with respect to indemnification.

8.    The indemnification, exculpation, contribution, and reimbursement provisions included in Annex B to the Engagement Letter are approved, subject during the pendency of these chapter 11 cases to the following modifications:

a.   All requests of Moelis for payment of indemnity pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, provided, however, that in no event shall Moelis be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct;

b.   In the event that Moelis seeks reimbursement from the Debtors for reasonable attorneys' fees in connection with a request by Moelis for payment of indemnity pursuant to the Engagement Letter, as modified by this Order, the invoices and supporting time records from such attorneys shall be included in Moelis's own application (both interim and final) and such invoices and time records shall be subject to the Fee Guidelines and the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code;

c.   Moelis shall not be entitled to reimbursement by the Debtors for any fees, disbursements and other charges of Moelis's counsel other than those

incurred in connection with a request of Moelis for payment of indemnity, retention of Moelis and preparation of fee applications; and

d.  In no event shall Moelis be indemnified if the Debtor(s) or representatives of the estates assert a claim for, and a court determines by final order that such claim arose out of, Moelis's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

9.      Moelis shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

10.     Notwithstanding anything to the contrary in the Application and/or Engagement Letter, to the extent that Moelis uses the services of independent contractors or employees of foreign affiliates or subsidiaries (collectively, the "Contractors") in these cases, Moelis (i) shall pass-through the cost of such Contractors to the Debtors at the same rate that Moelis pays the Contractors; (ii) shall seek reimbursement for actual out-of-pocket expenses only; and (iii) shall ensure that the Contractors are subject to the same conflict checks and disclosures as required of Moelis by Rule 2014 of the Bankruptcy Rules.

11.     Notwithstanding anything to the contrary in the Application, this Order, or any findings announced at the hearing, nothing in the Application, this Order, or announced at the hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the United States Securities and Exchange Commission to challenge transactions involving crypto tokens on any basis are expressly reserved.

12.     Notwithstanding anything to the contrary contained in the Application, the Engagement Letter or this Order, the Engagement Letter shall be modified as follows:

a.  The definition of "Sale Transaction" shall be deleted in its entirety and replaced with the following:

"Sale Transaction" means (a) the sale, disposition or other transfer (in one or a series of transactions) of all or substantially all (i) the equity securities

6

of the Company, or (ii) the assets, properties or businesses of the Company (excluding for purposes hereof the loan to Three Arrows Capital); or, (b) the merger, consolidation, spin-off, split-off, joint venture, partnership, reverse merger or other business combination transaction involving the Company. For the avoidance of doubt, the sale, disposition, or other transfer (in one or a series of transactions) of all or substantially all of the Company's customer accounts shall constitute a Sale Transaction.

b.  Paragraph 2(a)(iii) is deleted in its entirety and replaced with the following:

Restructuring Fee

At the closing of a Restructuring, a fee (the "Restructuring Fee") of $11,000,000.

In the event of a Crypto Liquidation (as defined below) requiring the Company to retain a third-party to sell crypto and distribute the proceeds through a liquidating plan, 50% of such third party's fees shall be credited against the Restructuring Fee, subject to a crediting cap of $2,000,000. A "Crypto Liquidation" is the sale or conversion into USD of at least 50% of the Company cryptocurrency coins, tokens, or other blockchain-related assets (collectively "Crypto Assets"), which is: (x) executed directly by the Company at prevailing market prices through one or more of its existing liquidity providers; (y) executed on a bilateral basis through bid list requests for the various Crypto Assets (e.g., the Company soliciting Bids Wanted in Competition or "BWICs") in one or more transactions; or (z) executed as a block trade(s) negotiated directly by the Company with one or more of its existing liquidity providers. Notwithstanding the foregoing, any transaction that Moelis had direct involvement in soliciting or negotiating shall not be deemed a Crypto Liquidation.

For the avoidance of doubt, a Crypto Liquidation excludes any transaction in which an Acquirer (i) purchases the Crypto Assets as part of a broader transaction (e.g., the FTX proposal publicly made on July 22nd or any variations thereof), (ii) acquires any other assets of the Company in one or a series of transactions, in addition to the Crypto Assets, or (iii) a transaction which is determined by the Official Committee of Unsecured Creditors to be preferred to a transaction available through the Bidding Procedures process that would not be a Crypto Liquidation

c.  Paragraph 2(a)(iv) is deleted in its entirety and replaced with the following:

Sale Transaction Fee

(iv) At the closing of a Sale Transaction, a non-refundable cash fee (the "Sale Transaction Fee") of $11,000,000.

In the event of a Sale Transaction that is consummated pursuant to Section 363 of the Bankruptcy Code, such Sale Transaction shall trigger a Restructuring Fee that shall be earned and payable at the earlier of the closing of the sale or confirmation of a plan.  In the event that a Sale Transaction is consummated prior to confirmation of a plan, Moelis shall continue to perform its services under this Agreement until effectiveness of a plan of reorganization unless the Company terminates this Agreement in accordance with its terms; provided, however, that in order to effectuate the 50% crediting of Monthly Fees, any additional Monthly Fees shall be reduced in a corresponding manner.  To the extent a Transaction is both a Sale Transaction and a Restructuring, the Company shall pay the Restructuring Fee.  Notwithstanding anything to the contrary contained in this Agreement, in no event shall Moelis be paid (a) more than one Restructuring Fee; (b) more than one Sale Transaction Fee; or (c) both a Restructuring Fee and a Sale Transaction Fee.

13.    The Court is not presently approving paragraph 2(a)(v) of the Engagement Letter, without prejudice to the Debtors' and Moelis' right to seek approval of Capital Transaction Fee terms at a later date.

14.    Such services other than set forth in the Application that the Debtors may request that Moelis provide during the course of these chapter 11 cases, and as agreed to by Moelis, shall be subject to separate application and order of this Court.

15.    The Debtors and Moelis are authorized and empowered to take all actions necessary to implement the relief granted in and pursuant to this Order.

16.    Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

17.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

18.     Notwithstanding any provision to the contrary in the Application or the Engagement Letter, the Bankruptcy Court shall retain jurisdiction to hear and to determine all matters arising from or related to implementation, interpretation, or enforcement of this Order.

19.     To the extent that there is any inconsistency between the Engagement Letter, the Application, the Dermont Declaration, and this Order, the provisions of this Order shall apply.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

## <u>EXHIBIT 1</u>

**Engagement Letter**

June 20, 2022

<u>CONFIDENTIAL</u>

Voyager Digital Holdings, Inc.
33 Irving Place 3rd Floor
New York, NY 10003

Attention: Stephen Ehrlich, Chief Executive Officer

Dear Mr. Ehrlich:

This agreement confirms that, since June 16, 2022, Voyager Digital Holdings, Inc. (together with its affiliates and direct and indirect subsidiaries listed on *Annex A*, the "<u>Company</u>") has engaged Moelis & Company LLC ("<u>Moelis</u>") to act as the Company's financial advisor, capital markets advisor and investment banker in connection with the Company's proposed Restructuring, Sale Transaction or Capital Transaction (each as defined below).

"<u>Restructuring</u>" means any restructuring, reorganization, repayment, refinancing, rescheduling or recapitalization of all or a material portion of the liabilities of the Company (including its direct or indirect subsidiaries), however such result is achieved, including, without limitation, through a plan of reorganization or liquidation (a "<u>Plan</u>") confirmed in connection with a case (a "<u>Bankruptcy Case</u>") commenced by or against the Company or any of its subsidiaries or affiliates under title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), an exchange offer or consent solicitation, covenant relief, a rescheduling of debt maturities, a change in interest rates, a settlement or forgiveness of debt, a conversion of debt into equity, or other amendments to the Company's debt instruments, an issuance of new securities, raising of new debt or equity capital, or a sale, disposition or other transfer (regardless of form), including to existing creditors of the Company, of all or a significant portion of the equity, interests, assets, properties, cash flows or businesses of the Company.

"<u>Sale Transaction</u>" means (a) the sale, disposition or other transfer (in one or a series of transactions) of a significant portion of (i) the equity securities of the Company, or (ii) the assets, properties or businesses of the Company; or, (b) the merger, consolidation, spin-off, split-off, joint venture, partnership, reverse merger or other business combination transaction involving the Company.

"<u>Capital Transaction</u>" means a transaction in which the Company (or any entity formed to acquire the business or assets of the Company) raises or issues any (a) secured or unsecured debt (including, without limitation, any asset-backed debt, or debtor-in-possession financing in connection with a Bankruptcy Case); (b) equity interests (including, without limitation, preferred stock or common stock) or equity-linked interests (including convertible debt); (c) hybrid capital; or (d) options, warrants or other rights to acquire equity interests; provided, however, that the Company's revolving line of credit with Alameda Research announced on June 17, 2022, shall not be considered a Capital Transaction for purposes of this agreement.

A "<u>Transaction</u>" means either a Restructuring, a Sale Transaction and/or a Capital Transaction, as the context requires.

1.  As part of our engagement, Moelis will if appropriate and requested:

DocuSign Envelope ID: AC5FD801-9845-456C-864D-66A664D6439B

MOELIS & COMPANY

(a)     assist the Company in reviewing and analyzing the Company's results of operations, financial condition and business plan;

(b)     assist the Company in reviewing and analyzing any potential Restructuring, Sale Transaction or Capital Transaction;

(c)     assist the Company in negotiating a Restructuring, Sale Transaction or Capital Transaction;

(d)     advise the Company on the terms of securities it offers in a potential Capital Transaction.

(e)     advise the Company on its preparation of information memoranda for a potential Sale Transaction or Capital Transaction (each, an "Information Memo");

(f)     assist the Company in contacting potential Acquirers or purchasers of a Capital Transaction ("Purchasers") that Moelis and the Company agree are appropriate, and meet with and provide them with the Information Memo and such additional information about the Company's assets, properties or businesses that is acceptable to the Company, subject to customary business confidentiality agreements; and

(g)     provide such other financial advisory and investment banking services in connection with a Restructuring, Sale Transaction or Capital Transaction as Moelis and the Company may mutually agree upon.

Please note that Moelis does not provide legal, tax, accounting or actuarial advice. This agreement is not a commitment, express or implied, on the part of Moelis to purchase or place the Capital Transaction or any other financing and it is acknowledged that Moelis' services with respect to a Capital Transaction will be made on a reasonable best efforts basis. Moelis' obligations under this agreement with respect to a Capital Transaction are subject to, among other things: (i) satisfactory completion of its due diligence review and (ii) satisfactory market conditions.

2.   (a) As compensation for our services hereunder, the Company agrees to pay Moelis the following nonrefundable cash fees:

Retainer Fee

(i)     Promptly after execution of this agreement, a retainer fee of $600,000 (the "Retainer Fee"). The Retainer Fee shall be offset, to the extent previously paid, against the first 3 Monthly Fees (as defined below).

Monthly Fee

(ii)    During the term of this agreement, a fee of $200,000 per month (the "Monthly Fee"), payable in advance of each month. The Company will pay the first Monthly Fee immediately upon the execution of this agreement, and all subsequent Monthly Fees prior to each monthly anniversary of the date of this agreement. Whether or not a Restructuring, Sale Transaction or Capital Transaction occurs, Moelis shall earn and be paid the Monthly Fee every month during the term of this agreement. 50% of the Monthly Fee shall be offset, to the extent previously paid, against the first Sale Transaction Fee and the Restructuring Fee (each as defined below).

MOELIS & COMPANY

Restructuring Fee

    (iii)    At the closing of a Restructuring, a fee (the "Restructuring Fee") of $11,000,000.  The Company will pay a separate Restructuring Fee in respect of each Restructuring in the event that more than one Restructuring occurs.

Sale Transaction Fee

    (iv)    At the closing of a Sale Transaction, a non-refundable cash fee (the "Sale Transaction Fee") of $12,000,000.

In the event of a Sale Transaction that is consummated pursuant to Section 363 of the Bankruptcy Code, such Sale Transaction shall trigger a Restructuring Fee. To the extent a Transaction is both a Sale Transaction and a Restructuring Transaction, the Company shall pay the Restructuring Fee.

Capital Transaction Fee

    (v)    At the closing of a Capital Transaction, a non-refundable cash fee (the "Capital Transaction Fee") of:

        (a) 4.00% of the aggregate gross amount or face value of capital Raised (as defined below) in the Capital Transaction as equity, equity-linked interests, options, warrants or other rights to acquire equity interests, plus

        (b) 2.00% of the aggregate gross amount of debt obligations and other interests Raised in the Capital Transaction.

The Company will pay a separate Capital Transaction Fee in respect of each Capital Transaction in the event that more than one Capital Transaction occurs.  "Raised" includes the amount committed to the Company, whether or not the Company draws the full amount, and whether or not the company applies such amounts to refinance any of its obligations.

The fees set forth in Section 2(a)(iii), (iv), and (v) shall be referred to herein as the "Transaction Fees".  The Company agrees that it will pay the applicable Transaction Fee(s) for each Transaction in accordance with the terms hereof.

In connection with a Transaction intended to be consummated in connection with a pre-packaged or pre-arranged Plan, the applicable Transaction Fee(s) shall be earned upon the execution of a definitive agreement with respect to such Plan; provided that if the Plan contemplating such Transaction(s) does not become effective, then Moelis shall credit the applicable Transaction Fee(s) against any future Transaction Fee that becomes due and payable upon the closing of another Transaction.

If, at any time prior to the end of the Tail Period (as defined below), the Company consummates any Restructuring, Sale Transaction or Capital Transaction or enters into an agreement (or a Plan is filed) regarding any Restructuring, Sale Transaction or Capital Transaction and a Restructuring, Sale Transaction or Capital Transaction is subsequently consummated, then the Company (or its bankruptcy estates) shall pay Moelis the applicable fee(s) specified in Section 2(a) above immediately upon the closing of any such

MOELIS & COMPANY

Transaction(s).  The "<u>Tail Period</u>" shall end (i) in the case of any Restructuring, Sale Transaction or Capital Transaction consummated out-of-court, 12months following the expiration or termination of this agreement or (ii) otherwise 18 months following the expiration or termination of this agreement.

(b)  Whether or not the Company consummates a Restructuring, Sale Transaction or Capital Transaction, the Company will reimburse Moelis for all of its reasonable and documented out-of-pocket expenses as they are incurred in entering into and performing services pursuant to this agreement.  In connection therewith, the Company shall pay Moelis upon execution of this agreement and maintain thereafter a $25,000 expense advance, the unused portion of which Moelis shall return to the Company following termination of this agreement.  Moelis agrees to provide the Company with reasonable support for its expenses at the Company's request or at the Bankruptcy Court's direction.

(c)  The Company's obligation to pay any fees or expenses set forth herein or to pay any amounts under *Annex B* hereto are not subject to any reduction by way of setoff, recoupment or counterclaim.  All fees, expenses and any other amounts payable hereunder are payable in U.S. dollars, free and clear of any withholding taxes or deductions, to the bank account set forth on *Schedule 1*.

(d)  If Moelis is required to render services not set forth in this agreement, including, without limitation, producing documents, being deposed, providing testimony, relating to this agreement or the transactions contemplated by this agreement, the Company will pay Moelis additional fees to be mutually agreed for such services, plus reasonable and documented out-of-pocket costs and expenses related thereto.

(e)  Moelis will make a substantial commitment of professional time and effort hereunder, which may foreclose other opportunities for it.  Moreover, the actual time and effort required for the engagement may vary substantially from time to time.  In light of the numerous issues that may arise in engagements such as this, Moelis' commitment of the time and effort necessary to address the issues that may arise in this engagement, Moelis' expertise and capabilities that the Company will require in this engagement, and the market rate for professionals of Moelis' stature and reputation, the parties agree that the fee arrangement provided herein is just and reasonable, fairly compensates Moelis, and provides the requisite certainty to the Company.

3.  If a Bankruptcy Case is commenced:

(a)  The Company will use its reasonable best efforts to seek a final order of the Bankruptcy Court authorizing our employment as the Company's financial adviser under this agreement pursuant to, and subject to the standards of review set forth in, section 328(a) of the Bankruptcy Code (and not subject to the standards of review set forth in section 330 of the Bankruptcy Code), <u>nunc pro tunc</u> to the date of the filing of the Bankruptcy Case.  The retention application and any order authorizing Moelis' retention must be acceptable to Moelis. Prior to commencing a Bankruptcy Case, the Company will pay all fees then earned and payable and will reimburse Moelis for all expenses that Moelis incurred prior to commencement in accordance with this agreement.

(b)  Moelis will have no obligation to provide services unless the Bankruptcy Court approves Moelis' retention in a final non-appealable order acceptable to Moelis under section 328(a) of the Bankruptcy Code within 60 days following the filing of a voluntary chapter 11 case or the entry of an order for relief in any involuntary chapter 11 case.  If neither the Company nor Moelis obtain such an order within such 60-day period, or such order is later reversed, vacated, stayed or set aside for any reason, Moelis may terminate this agreement, and the Company shall reimburse Moelis for all fees owing and expenses incurred prior to the date of termination, subject to the requirements of the Bankruptcy Rules, and Moelis shall be

M O E L I S & C O M P A N Y

entitled to a contingent claim with respect to any fees that become payable under the last paragraph of Section 2(a).

(c) Moelis' post-petition compensation, reasonable and documented out-of-pocket expense reimbursements and payment received pursuant to the provisions of **Annex B** shall be entitled to priority as expenses of administration under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect pursuant to one or more financing orders entered by the Bankruptcy Court. Following entry of an order authorizing our retention, the Company will assist Moelis in preparing, filing and serving fee statements, interim fee applications, and a final fee application. The Company will support Moelis' fee applications that are consistent with this agreement in papers filed with the Bankruptcy Court and during any Bankruptcy Court hearing. The Company will pay promptly our fees and expenses approved by the Bankruptcy Court and in accordance with the Bankruptcy Rules.

(d) The Company will use its reasonable best efforts to ensure that, to the fullest extent permitted by law, any confirmed plan of reorganization or liquidation in the Bankruptcy Case contains typical and customary releases (both from the Company and from third parties) and exculpation provisions releasing, waiving, and forever discharging Moelis, its divisions, affiliates, any person controlling Moelis or its affiliates, and their respective current and former directors, officers, partners, managers, members, agents, representatives and employees from any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities related to the Company or the engagement described in this agreement.

The terms of this Section 3 are solely for the benefit of Moelis, and may be waived, in whole or in part, only by Moelis.

4.    The Company will furnish Moelis with all information concerning the Company and, to the extent available to the Company, the Acquirer as Moelis reasonably deems appropriate (collectively, the "Information") to execute this engagement and will provide Moelis with access to the Company's officers, directors, employees, accountants, counsel and other representatives of the Company and, as practicable, those of the Acquirer. To the best of the Company's knowledge, the Information will be true and correct in all material respects and will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading. The Company will advise Moelis promptly of any material event or change in the business, affairs, condition (financial or otherwise) or prospects of the Company or, to the Company's knowledge, the Acquirer that occurs during the term of this agreement. In performing our services hereunder, Moelis will be entitled to use and rely upon the Information as well as publicly available information without independent verification. Moelis is not required to conduct a physical inspection of any of the properties or assets, or to prepare or obtain any independent evaluation or appraisal of any of the assets or liabilities of the Company. Moelis is not evaluating the solvency of any party under applicable laws relating to bankruptcy, insolvency or similar matters. Moelis will be entitled to assume that financial forecasts and projections the Company or any Acquirer makes available to Moelis have been reasonably prepared on bases reflecting the best currently available estimates and judgments of the management of the Company or such Acquirer, as the case may be, as to the matters covered thereby. The Company authorizes Moelis to transmit any Information Memos to potential parties to a Sale Transaction or Capital Transaction. The Company will be solely responsible for the contents of any Information Memo and all other information provided to prospective Purchasers in a Capital Transaction.

DocuSign Envelope ID: AC5ED801-9845-456C-854D-66A664D64398

**MOELIS & COMPANY**

Moelis will not disclose to any third party nonpublic Information concerning the Company or the Transaction parties provided to Moelis in connection with this agreement as long as it remains nonpublic, except (i) as otherwise required by subpoena or court order and for private disclosure to our financial regulatory authorities and (ii) Moelis may provide nonpublic Information to prospective Transaction parties as contemplated by this agreement. This paragraph shall terminate one year following the date of this agreement.

The Company represents and warrants to Moelis that the information provided to any prospective purchaser or seller of a security by or on behalf of the Company in any Restructuring, Sale Transaction or Capital Transaction (or any combination thereof), at the closing thereof, taken as a whole, will not contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make the statements contained therein, in light of the circumstances under which they were made, not misleading.

At the closing of a Capital Transaction pursuant to an exemption from registration other than Section 1145 of the Bankruptcy Code, (i) the Company shall be deemed to make all the representations and warranties to Moelis that the Company has made to purchasers of any security, (ii) the Company shall deliver to Moelis an opinion of Company counsel to the effect that the Capital Transaction was exempt from registration under the Securities Act and which shall also include all opinions delivered to the purchasers of any security, (iii) the Company shall deliver to Moelis from each purchaser of securities for Moelis' express benefit a big boy representation in the form of **Annex C** and make the representation and covenant set forth in **Annex C,** and (iv) the Company will also deliver to Moelis copies of such agreements, opinions, certificates and other documents delivered at the closing as Moelis may reasonably request.

5.    The Company will not disclose, summarize or refer to any of Moelis' advice or the terms of this agreement publicly or to any third party without the prior written consent of Moelis. In the event disclosure is required by subpoena or court order, the Company will provide Moelis with reasonable advance notice and permit Moelis to comment on the form and content of the disclosure. Moelis consents to the inclusion of a summary of its valuation in the disclosure statement for a Plan, if required to be included in such disclosure statement; provided that Moelis and its counsel have approved any reference to or summary or description of the valuation in advance.   Moelis may, at our option and expense after announcement of any Transaction, announce or disclose publicly such transaction and Moelis' role in it for marketing purposes, including, without limitation, on Moelis' website, stating that Moelis has acted as financial advisor and/or investment banker, as applicable, to the Company in connection with any Transaction. If requested by Moelis, the Company shall include a mutually acceptable reference to Moelis in any public announcement of a Restructuring, a Sale Transaction, or a Capital Transaction. Following a public announcement or public confirmation or Company public filing relating to a potential Transaction, Moelis may also announce or disclose publicly its role in the potential Transaction.

6.       Moelis is an independent contractor with the contractual obligations described herein owing solely to the Company. The parties agree that Moelis is not acting as an agent or fiduciary of the Company or any other party, and the Company agrees to not make any claims against Moelis based on an agency or fiduciary relationship. The Company and Moelis agree to the indemnity and other provisions set forth in **Annex B**. Other than the Indemnified Persons, there are no third party beneficiaries of this agreement. The obligations hereunder of the entities comprising the Company shall be joint and several.

7.    Either the Company or Moelis may terminate this agreement upon written notice thereof to the other party.  In the event of any termination, (i) Moelis will continue to be entitled to the fees and expenses

**MOELIS & COMPANY**

that became payable hereunder prior to termination or expiration and (ii) *Annex B*, the last paragraph of Section 2(a) and Sections 3 through 9 shall remain in full force and effect after the completion, termination or expiration of this agreement.

8. Moelis is an independent investment bank which is engaged in a range of investment banking activities. Certain affiliates of Moelis are engaged in asset management and other activities for their own account and otherwise. Moelis and its affiliates may have interests that differ from the interests of the Company. Moelis and its affiliates have no duty to disclose to any party, or use for the benefit of any party, any information acquired in the course of providing services to any other party, engaging in any transaction or carrying on any other businesses. Moelis' employees, officers, partners and affiliates may at any time own the Company's securities or those of any other entity involved in any transaction contemplated by this agreement. Moelis recognizes its obligations under applicable securities laws in connection with the purchase and sale of such securities.

Moelis is required to obtain, verify, and record information that identifies each party with whom it does business in a manner that satisfies the requirements of and in accordance with the USA Patriot Act. Upon request, each of the parties hereto will provide Moelis with information necessary to verify such party's identity for purposes of the USA Patriot Act.

9. This agreement and any disputes or claims that may arise out of this agreement shall be governed by and construed in accordance with the internal laws of the State of New York, and this agreement embodies the entire agreement and supersedes any prior written or oral agreement relating to the subject matter hereof, and may only be amended or waived in writing signed by both the Company and Moelis. If any part of this agreement is judicially determined to be unenforceable, it shall be interpreted to the fullest extent enforceable so as to give the closest meaning to its intent, and the remainder of this agreement shall remain in full force and effect. Any proceeding arising out of this agreement shall be heard exclusively in a New York state or federal court sitting in the city and county of New York, to whose jurisdiction and forum Moelis and the Company irrevocably submit. Notwithstanding the foregoing, if the Company becomes a debtor under the Bankruptcy Code any dispute or claim relating to or arising out of this agreement shall be heard and determined by the Bankruptcy Court during the pendency of a Bankruptcy Case. The Company also irrevocably consents to the service of process in any such proceeding by mail to the Company's address set forth above. This agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement. This agreement shall be binding upon the Company and Moelis and its and our respective successors and permitted assigns. MOELIS AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS CREDITORS AND SECURITY HOLDERS) WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY PROCEEDING ARISING OUT OF THIS AGREEMENT.

*(Signature page follows)*

DocuSign Envelope ID: AC5FD801-9845-456C-854D-66A664D6A398

MOELIS & COMPANY

Moelis is delighted to accept this engagement and looks forward to working with the Company.  Please sign and return the enclosed duplicate of this agreement.  The individuals signing this agreement each represent that he or she is authorized to execute and deliver it on behalf of the entity whose name appears above his or her signature.

Very truly yours,

MOELIS & COMPANY LLC

By: _____
    Name:  Jared Dermont
    Title:  Managing Director

Agreed to as of the date first written above:

VOYAGER DIGITAL HOLDINGS, INC. (ON BEHALF OF ITSELF AND ITS AFFILIATES AND DIRECT AND INDIRECT SUBSIDIARIES LISTED ON ANNEX A)

By: _____
    Name: Stephen Ehrlich
    Title: Chief Executive Officer

8

M O E L I S  &  C O M P A N Y

## ANNEX A

Voyager Digital Ltd.
Voyager Digital, LLC
LGO SAS
Voyager Europe
Voyager Digital Brokerage Ltd.
Voyager Digital Brokerage Canada, Ltd.
HTC Trading, Inc.
Voyager Digital, LLC
Voyager IP, LLC
Voyager Digital NY LLC
Voyager Digital Ventures LLLC
VYGR Holding, LLC
VYGR Digital Securities, LLC
VYGR Management LLC
Voyager European Holdings ApS
Coinify ApS
Coinify Financial Services ApS
Coinfy Technologies ApS
Coinify Ltd.
Coinify Global Solutions Inc.
Coinify Payments OU

M O E L I S & C O M P A N Y

# ANNEX B

In the event that Moelis or its affiliates or any of Moelis' or Moelis' affiliates' respective current or former directors, officers, partners, managers, members, agents, representatives or employees (including any person controlling Moelis or any of its affiliates) (collectively, the "Indemnified Persons") becomes involved in any capacity in any actual or threatened action, claim, suit, investigation or proceeding (an "Action") arising out of, related to or in connection with this agreement or any matter referred to herein (including, without limitation, related matters prior to the date of this agreement), the Company will reimburse such Indemnified Person for the reasonable and documented out-of-pocket costs and expenses (including counsel fees) of investigating, preparing for and responding to such Action or enforcing this agreement, as they are incurred. The Company will also indemnify and hold harmless any Indemnified Person from and against, and the Company each agrees that no Indemnified Person shall have any liability to the Company or its affiliates, or their respective owners, directors, officers, employees, security holders or creditors for, any losses, claims, damages, expenses or liabilities (collectively, "Losses") (A)(i) related to the Company's actions or omissions (or the actions or omissions of the Company's officers, directors, employees and agents other than Moelis) in connection with the agreement or the matters referred to herein), or (ii) related to or arising out of oral or written statements or omissions made or information provided by the Company or its agents in connection with the agreement or the matters referred to herein (including, without limitation, the Information Memo and any other information provided by or on behalf of the Company to any purchaser or seller of a security in any transaction contemplated by the agreement), or (B) otherwise arising out of, related to or in connection with this agreement or Moelis' performance hereunder or any other services or advice the Company requests any Indemnified Person to provide (in each case, including prior to the date of this agreement), except that this clause (B) shall not apply to Losses to the extent such Losses are finally judicially determined to have resulted primarily from the bad faith or gross negligence of such Indemnified Person.

If such indemnification or limitation on liability for any reason is not available or is insufficient to hold an Indemnified Person harmless, the Company agrees to contribute to the Losses in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Company, on the one hand, and by Moelis, on the other hand, with respect to this agreement or, if such allocation is judicially determined to be unavailable, in such proportion as is appropriate to reflect the relative benefits and relative fault of the Company, on the one hand, and of Moelis, on the other hand, and any other equitable considerations; *provided, however,* that, to the extent permitted by applicable law, in no event shall the Indemnified Persons be responsible for amounts that exceed the fees actually received by Moelis from the Company in connection with this agreement. Relative benefits to the Company, on the one hand, and Moelis, on the other hand, with respect to this agreement shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received or proposed to be received by the Company or its security holders, as the case may be, pursuant to the transaction(s), whether or not consummated, contemplated by this agreement bears to (ii) the fees actually received by Moelis in connection with this agreement.

The Company will not without the prior written consent of Moelis (not to be unreasonably withheld), settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate (a "Settlement") any Action or participate in or facilitate a Settlement of any Action in respect of which indemnification is or may be sought hereunder (whether or not an Indemnified Person is a party thereto) unless such Settlement includes a release of each Indemnified Person from any Losses arising out of such Action. The Company will not permit any such Settlement to include a statement as to, or an admission of, fault or culpability by or on behalf of an Indemnified Person without such Indemnified Person's prior written consent. No

DocuSign Envelope ID: ACFED801-9845-456C-854D-66A664D64398

MOELIS & COMPANY

Indemnified Person seeking indemnification, reimbursement or contribution under this agreement will, without the Company's prior written consent (not to be unreasonably withheld), agree to the Settlement of any Action.   The Company's obligations set forth herein shall be in addition to any rights that any Indemnified Person may have at law or otherwise.

Prior to effecting any proposed sale, exchange, dividend or other distribution or liquidation of all or substantially all of its assets or any significant recapitalization or reclassification of its outstanding securities that does not explicitly or by operation of law provide for the assumption of the obligations of the Company set forth herein, the Company will notify Moelis in writing of its arrangements for the Company's obligations set forth herein to be assumed by another creditworthy party (for example through insurance, surety bonds or the creation of an escrow) upon terms and conditions reasonably satisfactory to the Company and Moelis.

MOELIS & COMPANY

## ANNEX C

### Big Boy Representation

The undersigned Purchaser represents and warrants that (i) the Purchaser is a sophisticated institutional accredited investor with extensive expertise and experience in financial and business matters and in evaluating private companies and purchasing and selling their securities; (ii) the Purchaser has conducted and relied upon its own due diligence investigation of the Company and its own in-depth analysis of the merits and risks of the Capital Transaction in making its investment decision and has not relied upon any information provided by Moelis or any investigation of the Company conducted by Moelis; and (iii) the Purchaser agrees that Moelis shall have no liability to the Purchaser in connection with its purchase of the Capital Transaction.

### Bad Actor Representation and Covenant

The Company represents and warrants to Moelis that, as of the date of this engagement letter, neither the Company nor any of its respective managing members, general partners, directors and executive officers, any other officers participating in the Capital Transaction, any 20% beneficial owners of the Company, calculated on the basis of total voting power, promoters connected to the Company, nor any persons compensated for soliciting investors, including their directors, general partners and managing members (each, a "Covered Person"), have been convicted of or are otherwise subject to any of the disqualifying events listed in Rule 506(d) of Regulation D under the Securities Act and as of the closing date of any Capital Transaction, neither the Company nor any Covered Person will have been convicted of or otherwise subject to any of the disqualifying events listed in Rule 506(d) of Regulation D under the Securities Act. Furthermore, the Company agrees to notify Moelis immediately if at any time it becomes aware that it or any of its Covered Persons have been convicted of or are otherwise subject to any of the disqualifying events listed in Rule 506(d) of Regulation D under the Securities Act.

C 1

M O E L I S & C O M P A N Y

## **SCHEDULE 1**

Wire Instructions:
Beneficiary Account: Moelis & Company LLC
Routing Number: 122016066
Account Number: 412956230
International SWIFT Code: CINAUS6L

City National Bank
525 S. Flower Street
24th Floor
Los Angeles, CA 90071

**<u>Exhibit B</u>**

**Redline**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF MOELIS & COMPANY LLC AS INVESTMENT BANKER AND CAPITAL MARKETS ADVISOR TO THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"):  (a) authorizing the employment and retention of Moelis & Company LLC ("Moelis") to serve as the Debtors' investment banker and capital markets advisor, effective as of the Petition Date pursuant to sections 327(a) and 328(a) of the Bankruptcy Code; (b) approving the provisions of the engagement letter between Moelis and the Debtors, dated as of June 20, 2022 ("Engagement Letter"), attached hereto as **Exhibit 1**, including the compensation arrangements and indemnification, contribution, and reimbursement provisions set forth therein; (c) modifying the timekeeping requirements of Local Rule 2016-1, the Amended Guidelines, the U.S. Trustee Guidelines and any other applicable procedures and orders of the Court in connection with Moelis' engagement; and (d) granting such other relief as is just and proper, all as more fully set forth in the Application; and upon the Dermont Declaration; and this Court having jurisdiction over this

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application or the Engagement Letter, as applicable.

matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012; and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. §157(b); and this Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the relief sought in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest, and that the legal and factual bases set forth in the Application, the Dermont Declaration, and at the Hearing establish just cause for the relief granted herein; and the Court being satisfied, based upon the representations made in the Application and the Dermont Declaration that (a) Moelis does not hold or represent an interest adverse to the Debtors' estates, and (b) Moelis is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code as required by section 327(a) of the Bankruptcy Code; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Application is granted as set forth in this Order, and the provisions set forth in the Engagement Letter (and all attachments thereto) are hereby approved, to the extent provided herein and except as otherwise expressly modified herein to the contrary.

2

2.      In accordance with sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1, the Debtors are authorized to employ and retain Moelis as their investment banker and capital markets advisor in these chapter 11 cases in accordance with the terms and conditions set forth in the Engagement Letter, as modified herein, to pay fees and reimburse expenses, and to provide indemnification, contribution, and/or reimbursement to Moelis on the terms and at the times specified in the Engagement Letter as modified herein, effective as of the Petition Date.

3.      Moelis shall be compensated for fees and reimbursed for reasonable and documented out-of-pocket expenses by the Debtors in accordance with the terms of the Engagement Letter, as modified herein, and all fees and out-of-pocket expense reimbursements to be paid to Moelis, including without limitation the Monthly Fees, the ~~Capital Transaction Fee, the~~ Sale Transaction Fee, and the Restructuring Fee, shall be subject to section 328(a) of the Bankruptcy Code, except as otherwise set forth herein.

4.      Moelis is authorized to apply the Expense Retainer to any unbilled or otherwise remaining expenses that Moelis becomes aware of during its ordinary course billing review and reconciliation.  Moelis shall apply any remaining amounts of the Expense Retainer as a credit towards postpetition fees and expenses after such postpetition fees and expenses are approved pursuant to the first order of the Court awarding fees and expenses to Moelis.

5.      Notwithstanding anything to the contrary contained herein or in the Application and/or Engagement Letter, Moelis shall file interim and final fee applications for allowance of compensation and reimbursement of reasonable and documented out-of-pocket expenses pursuant to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Amended Guidelines, the U.S. Trustee Guidelines and any other procedures or orders of the

3

Bankruptcy Court; *provided, however*, the U.S. Trustee retains all rights to respond or object to Moelis' interim and final applications for compensation (including without limitation the Monthly Fees, the ~~Capital Transaction Fee, the~~ Sale Transaction Fee, and the Restructuring Fee) and reimbursement of out-of-pocket expenses pursuant to section 330 of the Bankruptcy Code, and the Court retains jurisdiction to consider the U.S. Trustee's response or objection to Moelis' interim and final fee applications pursuant to section 330 of the Bankruptcy Code; *provided, further*, that "reasonableness" shall be evaluated by comparing (among other things) the fees payable in these chapter 11 cases to fees paid to comparable investment banking firms with similar experience and reputation offering comparable services in other chapter 11 cases and shall not be evaluated solely on an hourly or length-of-case based criteria.

6.      Notwithstanding anything to the contrary in the Application, the Engagement Letter or herein, the requirements of the Bankruptcy Rules, the Local Rules, the Amended Guidelines, the U.S. Trustee Guidelines, and any other procedures or orders of the Court, are hereby modified such that Moelis' restructuring professionals, with the exception of clerical and administrative staff, shall be required only to keep reasonably detailed time records of the services they have performed in half-hour increments, Moelis' non-restructuring professionals and personnel in administrative departments (including legal) shall not be required to keep time records, Moelis' professionals shall not be required to keep time records on a project category basis, and Moelis shall not be required to provide or conform to any schedule of hourly rates.

7.      In the event that Moelis seeks reimbursement from the Debtors for attorneys' fees and expenses pursuant to the Application and the Engagement Letter, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Moelis' own applications, both interim and final, and such invoices and time records shall be subject to the approval of the

4

Court pursuant to section 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code, and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code. Attorneys' fees and/or expenses reimbursed under the Engagement Letter shall be limited to those expended in representing Moelis in retention and fee application matters. For the avoidance of doubt, the preceding sentence does not apply to, and in no way limits, the provisions with respect to reimbursement of attorneys' fees and/or expenses set forth in Annex B to the Engagement Letter with respect to indemnification.

8.      The indemnification, exculpation, contribution, and reimbursement provisions included in Annex B to the Engagement Letter are approved, subject during the pendency of these chapter 11 cases to the following modifications:

a.  All requests of Moelis for payment of indemnity pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, provided, however, that in no event shall Moelis be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct;

b.  In the event that Moelis seeks reimbursement from the Debtors for reasonable attorneys' fees in connection with a request by Moelis for payment of indemnity pursuant to the Engagement Letter, as modified by this Order, the invoices and supporting time records from such attorneys shall be included in Moelis's own application (both interim and final) and such invoices and time records shall be subject to the Fee Guidelines and the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code;

c.  Moelis shall not be entitled to reimbursement by the Debtors for any fees, disbursements and other charges of Moelis's counsel other than those

5

incurred in connection with a request of Moelis for payment of indemnity, retention of Moelis and preparation of fee applications; and

d.  In no event shall Moelis be indemnified if the Debtor(s) or representatives of the estates assert a claim for, and a court determines by final order that such claim arose out of, Moelis's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

9.      Moelis shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

10.     Notwithstanding anything to the contrary in the Application and/or Engagement Letter, to the extent that Moelis uses the services of independent contractors or employees of foreign affiliates or subsidiaries (collectively, the "Contractors") in these cases, Moelis (i) shall pass-through the cost of such Contractors to the Debtors at the same rate that Moelis pays the Contractors; (ii) shall seek reimbursement for actual out-of-pocket expenses only; and (iii) shall ensure that the Contractors are subject to the same conflict checks and disclosures as required of Moelis by Rule 2014 of the Bankruptcy Rules.

11.     Notwithstanding anything to the contrary in the Application, this Order, or any findings announced at the hearing, nothing in the Application, this Order, or announced at the hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the United States Securities and Exchange Commission to challenge transactions involving crypto tokens on any basis are expressly reserved.

11.12.  Notwithstanding anything to the contrary contained in the Application, the Engagement Letter or this Order, the Engagement Letter shall be modified as follows:

a.  The definition of "Sale Transaction" shall be deleted in its entirety and replaced with the following:

"Sale Transaction" means (a) the sale, disposition or other transfer (in one or a series of transactions) of all or substantially all (i) the equity securities of the Company, or (ii) the assets, properties or businesses of the Company (excluding for purposes hereof the loan to Three Arrows Capital); or, (b) the merger, consolidation, spin-off, split-off, joint venture, partnership, reverse merger or other business combination transaction involving the Company. For the avoidance of doubt, the sale, disposition, or other transfer (in one or a series of transactions) of all or substantially all of the Company's customer accounts shall constitute a Sale Transaction.

b.  Paragraph 2(a)(iii) is deleted in its entirety and replaced with the following:

Restructuring Fee

At the closing of a Restructuring, a fee (the "Restructuring Fee") of $11,000,000.

In the event of a Crypto Liquidation (as defined below) requiring the Company to retain a third-party to sell crypto and distribute the proceeds through a liquidating plan, 50% of such third party's fees shall be credited against the Restructuring Fee, subject to a crediting cap of $2,000,000. A "Crypto Liquidation" is the sale or conversion into USD of at least 50% of the Company cryptocurrency coins, tokens, or other blockchain-related assets (collectively "Crypto Assets"), which is: (x) executed directly by the Company at prevailing market prices through one or more of its existing liquidity providers; (y) executed on a bilateral basis through bid list requests for the various Crypto Assets (e.g., the Company soliciting Bids Wanted in Competition or "BWICs") in one or more transactions; or (z) executed as a block trade(s) negotiated directly by the Company with one or more of its existing liquidity providers. Notwithstanding the foregoing, any transaction that Moelis had direct involvement in soliciting or negotiating shall not be deemed a Crypto Liquidation.

For the avoidance of doubt, a Crypto Liquidation excludes any transaction in which an Acquirer (i) purchases the Crypto Assets as part of a broader transaction (e.g., the FTX proposal publicly made on July 22nd or any variations thereof), (ii) acquires any other assets of the Company in one or a series of transactions, in addition to the Crypto Assets, or (iii) a transaction which is determined by the Official Committee of Unsecured Creditors to be preferred to a transaction available through the Bidding Procedures process that would not be a Crypto Liquidation

c.  Paragraph 2(a)(iv) is deleted in its entirety and replaced with the following:

Sale Transaction Fee

7

(iv) At the closing of a Sale Transaction, a non-refundable cash fee (the "<u>Sale Transaction Fee</u>") of $11,000,000.

In the event of a Sale Transaction that is consummated pursuant to Section 363 of the Bankruptcy Code, such Sale Transaction shall trigger a Restructuring Fee that shall be earned and payable at the earlier of the closing of the sale or confirmation of a plan. In the event that a Sale Transaction is consummated prior to confirmation of a plan, Moelis shall continue to perform its services under this Agreement until effectiveness of a plan of reorganization unless the Company terminates this Agreement in accordance with its terms; <u>provided</u>, <u>however</u>, that in order to effectuate the 50% crediting of Monthly Fees, any additional Monthly Fees shall be reduced in a corresponding manner. To the extent a Transaction is both a Sale Transaction and a Restructuring, the Company shall pay the Restructuring Fee. Notwithstanding anything to the contrary contained in this Agreement, in no event shall Moelis be paid (a) more than one Restructuring Fee; (b) more than one Sale Transaction Fee; or (c) both a Restructuring Fee and a Sale Transaction Fee.

d. ~~Paragraph 2(a)(v) is deleted in its entirety and replaced with the following:~~

d. <u>The Court is not presently approving paragraph 2(a)(v) of the Engagement Letter, without prejudice to the Debtors' and</u>

<u>Moelis' right to seek approval of</u> ~~Capital Transaction Fee~~

12. ~~(v) At the closing of a Capital Transaction, a non-refundable cash fee (the "Capital Transaction Fee") of:~~

13. <u>terms at a later date.</u>

~~(a) 1.00% of the aggregate gross amount of secured debt obligations and other secured interests Raised in the Capital Transaction, plus~~

~~(b) 2.00% of the aggregate gross amount of all debt obligations and other interests not covered by part (a) above Raised in the Capital Transaction, plus~~

~~(c) 4.00% of the aggregate gross amount or face value of capital Raised (as defined below) in the Capital Transaction as equity, equity-linked interests, options, warrants or other rights to acquire equity interests;~~

8

Provided, however, that (1) 25% of any Capital Transaction Fees over $2,000,000 but less than or equal to $7,500,000 shall be credited against the Restructuring Fee or the Sale Transaction Fee and (2) 50% of any Capital Transaction Fees over $7,500,000 shall be credited against the Restructuring Fee or the Sale Transaction Fee.  In the event that either a Sale Transaction Fee or a Restructuring Fee was paid prior to the Capital Transaction, then the Capital Transaction Fee shall be reduced in a corresponding amount to effectuate the crediting formula set forth above.

The Company will pay a separate Capital Transaction Fee in respect of each Capital Transaction in the event that more than one Capital Transaction occurs. "Raised" includes the amount committed to the Company, whether or not the Company draws the full amount, and whether or not the company applies such amounts to refinance any of its obligations.

13.14.  Such services other than set forth in the Application that the Debtors may request that Moelis provide during the course of these chapter 11 cases, and as agreed to by Moelis, shall be subject to separate application and order of this Court.

14.15.  The Debtors and Moelis are authorized and empowered to take all actions necessary to implement the relief granted in and pursuant to this Order.

15.16.  Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

16.17.  The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

17.18.  Notwithstanding any provision to the contrary in the Application or the Engagement Letter, the Bankruptcy Court shall retain jurisdiction to hear and to determine all matters arising from or related to implementation, interpretation, or enforcement of this Order.

18.19.  To the extent that there is any inconsistency between the Engagement Letter, the Application, the Dermont Declaration, and this Order, the provisions of this Order shall apply.

9

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE