Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:       (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC. *et al.*,[1] | Case No. 22-10943 (MEW) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF JARED DERMONT IN SUPPORT
OF THE DEBTORS' MOTION FOR ENTRY OF AN ORDER
(I) APPROVING THE SHARE PURCHASE AGREEMENT BY AND
AMONG VOYAGER EUROPEAN HOLDINGS APS AND ASCENSION APS
AND RELATED DOCUMENTS, (II) AUTHORIZING THE PRIVATE SALE OF
EQUITY INTERESTS IN COINIFY APS, AND (III) GRANTING RELATED RELIEF**

I, Jared Dermont, declare as follows under penalty of perjury:

1.     I am a Managing Director and head of the Financial Institutions Group (the "FIG Group") at Moelis & Company LLC ("Moelis"), an investment banking firm that has its principal office at 399 Park Avenue, 5th Floor, New York, New York 10022. Among the businesses and products that fall within the purview of the FIG Group are cryptocurrency, banks, asset managers,

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

securities exchanges, and insurance companies. I also oversee Moelis' special purpose acquisition company advisory and capital markets businesses.

2. Moelis has been engaged as the proposed investment banker to the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"). I submit this declaration (this "Declaration") in support of the *Debtors' Motion for Entry of an Order (I) Approving the Share Purchase Agreement by and Among Voyager European Holdings ApS and Ascension ApS and Related Documents, (II) Authorizing the Private Sale of Equity Interests in Coinify ApS, and (III) Granting Related Relief* [Docket No. 72] (the "Motion")[2].

3. A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Steve Ehrlich, Co-Founder and Chief Executive Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 15] (the "First Day Declaration"), and is incorporated by reference herein.

4. Unless otherwise indicated, all facts set forth in this Declaration are based upon (a) my personal knowledge of the prepetition and postpetition marketing process, (b) information learned from my review of relevant documents, or (c) information I received from Moelis or the Debtors' other advisors. I am not being specifically compensated for this testimony other than through payments that are proposed to be received by Moelis as a professional retained by the Debtors. If I were called upon to testify, I could and would competently testify to the facts set forth herein. I am authorized to submit this Declaration on behalf of the Debtors.

**Qualifications**

5. Moelis is an investment banking firm with its principal office located at 399 Park Avenue, 5th Floor, New York, New York 10022. Moelis is a registered broker-dealer with the

---

[2] All capitalized terms used herein have the meaning given to them in the Motion.

2

United States Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority. Moelis was founded in 2007 and is a wholly-owned subsidiary of Moelis & Company Group LP. Moelis & Company Group LP, together with its subsidiaries, has approximately 1,000 employees based in offices in North America, South America, Europe, the Middle East, and Asia. Moelis & Company Group LP is a subsidiary of Moelis & Company, a public company listed on the New York Stock Exchange.

6.      Moelis provides a broad range of financial advisory and investment banking services to its clients, including (a) general corporate finance; (b) mergers, acquisitions, and divestitures; (c) corporate restructurings; (d) special committee assignments; and (e) capital raising. Moelis and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 cases. Moelis' business reorganization professionals have served as financial advisors and/or investment bankers in numerous cases, including: In re Knotel, Inc., No. 21-10146 (MFW) (Bankr. D. Del. Mar. 12, 2021); In re CBL & Assocs. Props., Inc., No. 20-35226 (DRJ) (Bankr. S.D. Tex. Dec. 30, 2020); In re Energy Alloys Holdings, LLC, No. 20-12088 (MFW) (Bankr. D. Del. Nov. 23, 2020); In re Jason Indus., Inc., No. 20-22766 (RDD) (Bankr. S.D.N.Y. Aug. 27, 2020); In re The Hertz Corp., No. 20-11218 (MFW) (Bankr. D. Del. July 30, 2020); In re Extraction Oil & Gas, Inc., No. 20-11548 (CSS) (Bankr. D. Del. Aug. 11, 2020); In re The McClatchy Co., No. 20-10418 (MEW) (Bankr. S.D.N.Y. May 18, 2020); In re Internap Technology Solutions Inc., No. 20-22393 (RDD) (Bankr. S.D.N.Y. May 5, 2020); In re Rentpath Holdings, Inc., No. 20-10312 (BLS) (Bankr. D. Del. Mar. 10, 2020); In re Sanchez Energy Corp., No. 19-34508 (MI) (Bankr. S.D. Tex. Oct. 21, 2019); In re Monitronics Int'l, Inc., No. 19-33650 (DRJ) (Bankr. S. D. Tex. Aug. 1, 2019); In re Aegerion Pharmaceuticals, Inc., No. 19-11632 (MG) (Bankr. S.D.N.Y. July 10, 2019); In re Joerns

3

WoundCo Holdings, Inc., No. 19-11401 (JTD) (Bankr. D. Del. July 25, 2019); In re FTD Cos., No. 19-11240 (LSS) (Bankr. D. Del. July 2, 2019); In re Hexion Holdings LLC, No. 19-10684 (KG) (Bankr. D. Del. May 15, 2019); In re Aegean Marine Petroleum Network Inc., No. 18-13374 (MEW) (Bankr. S.D.N.Y. Feb. 20, 2019); In re Parker Drilling Company, Inc., No. 18-36958 (MI) (Bankr. S.D. Tex. Jan. 15, 2019); In re Aralez Pharmaceuticals US Inc., No. 18-12425 (MG) (Bankr. S.D.N.Y. Oct. 31, 2018); In re iHeartMedia, Inc., No. 18-31274 (MI) (Bankr. S.D. Tex. July 24, 2018); In re Global A&T Electronics Ltd., No. 17-23931 (RDD) (Bankr. S.D.N.Y. Feb. 26, 2018); In re Toys "R" US, Inc., No. 17-34665 (KLP) (Bankr. E.D. Va. Nov. 21, 2017); In re TK Holdings, Inc., No. 17-11375 (BLS) (Bankr. D. Del. Aug. 30, 2017); In re Basic Energy Services, Inc., No. 16-12320 (KJC) (Bankr. D. Del. Nov. 17, 2016); In re UCI International, LLC, No. 16-11354 (MFW) (Bankr. D. Del. July 12, 2016); In re AOG Ent., Inc., No. 16-11090 (SMB) (Bankr. S.D.N.Y. June 8, 2016); In re SFX Entertainment, Inc., No. 16-10238 (MFW) (Bankr. D. Del. Mar. 21, 2016); In re American Apparel, Inc., No. 15-12055 (BLS) (Bankr. D. Del. Nov. 30, 2015); In re Allied Nevada Gold Corp., No. 15-10503 (MFW) (Bankr. D. Del. Apr. 15, 2015); In re ITR Concession Co., No. 14-34284 (Bankr. N.D. Ill. Oct. 28, 2014); In re GSE Envt'l, Inc., No. 14-11126 (MFW) (Bankr. D. Del. May 30, 2014); In re MACH Gen, LLC, No. 14-10461 (MFW) (Bankr. D. Del. Apr. 11, 2014); In re MPM Silicones, LLC, No. 14-22503 (RDD) (Bankr. S.D.N.Y. May 16, 2014).

7. I have over 25 years of investment banking experience advising companies, equity investors, financial vehicles, creditors, and government entities across a broad range of industries and geographies in a broad range of transactions. Prior to joining Moelis I was a Managing Director at Rothschild, Inc. where I focused on global M&A and restructuring transactions. I hold a Bachelor of Arts degree in economics from Tufts University.

4

8. I have been involved in many notable chapter 11 cases and restructuring assignments, including as lead investment banker in Jason Industries' chapter 11 reorganization, Atrium Companies, Inc.'s chapter 11 reorganization via sale to Golden Gate Capital and Kenner & Company, and Orchard Brands $725 million chapter 11 reorganization; as advisor to the ad hoc committee of bond holders in Chemtura's $2.7 billion chapter 11 reorganization; as advisor to the ad hoc senior secured noteholders in Neenah Enterprises chapter 11 reorganization; as advisor to the ad hoc group of senior unsecured noteholders in Walter Investment Management Corporation's $4.1 billion restructuring; as advisor to the official committee of unsecured creditors of Residential Capital in its $15 billion chapter 11 reorganization; as advisor to New Residential Investment Corporation's $1.2 billion acquisition of select assets from Ditech Holding Corporation pursuant to a section 363 asset sale; and as advisor to Syncora Guarantee Inc. in American Roads LLC's $840 million pre-packaged chapter 11 reorganization. I have also been involved in numerous restructuring transactions outside of the chapter 11 context, including advising New Residential Investment Corporation in its $600 million recapitalization and restructuring, Ambac Financial Group in its $18 billion restructuring of Puerto Rico's sales tax financing corporation (COFINA), Syncora Guarantee Inc. in its $13.5 billion reinsurance of financial guarantee policies to Assured Guarantee Corporation and other liability management including the sale of its operating business to GoldenTree Asset Management, and MFA Financial, Inc. in its $5.8 billion restructuring of its repurchase agreement portfolio.

**The Sale Process**

9. Based on discussions with the Debtors, it is my understanding that the Debtors sought to effectuate a prepetition private sale of their interests in Coinify ApS (along with its subsidiaries, collectively, "Coinify"), a limited liability corporation organized under the laws of

5

Denmark that is a wholly-owned subsidiary of Voyager European Holdings ApS ("Voyager Europe" or the "Seller"),³ during the several months prior to Moelis' engagement.⁴ It is also my understanding that these efforts failed to produce a viable transaction.

10. On June 20, 2022, the Debtors engaged Moelis to, among other things, solicit interest in a sale of all or part of the Debtors' business to either a financial sponsor or a strategic buyer in the cryptocurrency industry, including domestic and international strategic cryptocurrency-related businesses and private equity and other investment firms that currently have crypto-related investments and/or historical experience investing in the cryptocurrency industry. Among the deal structures considered during the sale process was a sale of the Coinify operations either through a separate private sale or as part of a global sale of the Company's assets. During Moelis' initial outreach, five potential buyers expressed interest in purchasing Coinify separate and apart from the Debtors' other assets. Following a period of due diligence during which three of the five potential buyers obtained access to the virtual data room, the five potential buyers determined they were not interested in moving forward with submitting a bid for the Coinify business.

11. On July 14, 2022, the Debtors announced that Voyager Europe entered into that certain share purchase agreement, dated July 13, 2022, by and among Voyager Europe, as seller, and Ascension, as buyer, substantially in the form attached to the Motion as Exhibit 1 to Exhibit A (the "Share Purchase Agreement" and the transaction contemplated thereby, the "Sale").

---

³   Voyager Europe is itself a wholly-owned subsidiary of Debtor Voyager Digital Ltd. (along with its Debtor and non-Debtor subsidiaries, the "Company")

⁴   A discussion of the Debtors' efforts to divest its Coinify operations prior to Moelis' engagement is set forth in the *Declaration of Steve Ehrlich In Support of the Debtors' Motion for Entry of an Order (I) Approving the Share Purchase Agreement by and Among Voyager European Holdings ApS and Ascension ApS and Related Documents, (II) Authorizing the Private Sale of Equity Interests in Coinify ApS, and (III) Granting Related Relief* (the "Ehrlich Declaration"), filed contemporaneously herewith and incorporated by reference herein.

6

Importantly, the Share Purchase Agreement includes a standard "fiduciary out" that permits the Seller to terminate the transaction should a superior offer be received (the "Fiduciary Out"). On July 14, 2022, the Debtors filed the Motion seeking authority to approve the Share Purchase Agreement.

12. Following the filing of the Motion, Moelis continued to solicit offers from potential parties to purchase Coinify either separately or as part of a global sale transaction of the Voyager business. Moelis contacted 89 potential purchasers regarding Voyager's business, 14 of which specifically expressed interest in potentially acquiring the Coinify assets on a standalone basis. Of those 14 potential purchasers, 13 executed confidentiality agreements and 11 were granted access to the virtual data room containing hundreds of files with certain information regarding Coinify's business operations, finances, material contracts, tax information, and incorporation documents. In addition, parties that signed confidentiality agreements were offered the opportunity to participate in telephone conferences with Coinify's management team in addition to supplementary due diligence information.

13. Ultimately, one potential purchaser provided a non-binding, verbal indication of interest that contemplated a purchase of Coinify. However, following good faith, arm's-length negotiations, including encouragement by the Debtors, the party did not elect to submit a bid. Accordingly, the Company determined, in its business judgment and in consultation with its advisors, that the Sale contemplated under the Share Purchase Agreement represents the most value-enhancing—and only actionable—transaction available for the Coinify assets under the circumstances.

**Conclusion**

14. Based on my understanding of the pre- and post-petition sale efforts of the Company, as described in the Ehrlich Declaration, and the subsequent sale process undertaken by Moelis following the filing of the Motion, I believe that the terms of the Share Purchase Agreement reflect the highest and best available bid for the Coinify assets under the circumstances. Further, based on my experience, my understanding of the Coinify business, and the current market conditions, I believe the subsequent sale process following the filing of the Motion provided sufficient time to potentially interested third parties to ensure the best available purchase terms for an acquisition of Coinify under the circumstances. Accordingly, I believe that consummation of the Sale contemplated under the Share Purchase Agreement represents the best transaction available for the Coinify assets under the circumstances, and the Sale would be in the best interests of the Debtors, their estates, and other parties in interest. For these reasons, I believe that the Motion should be approved.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

| | |
|---|---|
| Dated: August 14, 2022<br>New York, New York | By:    */s/ Jared Dermont*<br>Name:    Jared Dermont<br>Title:    Managing Director<br>           Moelis & Company LLC<br>           *Proposed Investment Banker and*<br>           *Financial Advisor to the Debtors*<br>           *and Debtors-in-Possession* |