Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | Case No. 22-10943 (MEW) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF**
**STEPHEN EHRLICH IN SUPPORT OF THE**
**DEBTORS' MOTION FOR ENTRY OF AN ORDER**
**(I) APPROVING THE SHARE PURCHASE AGREEMENT BY AND**
**AMONG VOYAGER EUROPEAN HOLDINGS APS AND ASCENSION APS**
**AND RELATED DOCUMENTS, (II) AUTHORIZING THE PRIVATE SALE OF**
**EQUITY INTERESTS IN COINIFY APS, AND (III) GRANTING RELATED RELIEF**

Pursuant to 28 U.S.C. § 1746, I, Stephen Ehrlich, Chief Executive Officer of Voyager Digital Holdings, Inc., hereby declare under penalty of perjury:

1.   I submit this declaration (the "Declaration") on behalf of the *Debtors' Motion for Entry of an Order (I) Approving the Share Purchase Agreement by and Among Voyager European Holdings ApS and Ascension ApS and Related Documents, (II) Authorizing the Private Sale of*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

*Equity Interests in Coinify ApS, and (III) Granting Related Relief* [Docket No. 72] (the "Motion"),[2] filed on July 14, 2022.

2. Unless otherwise indicated, all facts set forth in this Declaration are based upon (a) my personal knowledge of the facts described herein, (b) information gleaned from my review of relevant documents, or (c) information I received from the Debtors' advisors. If I were called upon to testify, I could and would competently testify to the facts set forth herein. I am authorized to submit this Declaration on behalf of the Debtors.

**Background**

3. Coinify ApS (along with its subsidiaries, collectively, "Coinify") is a limited liability corporation organized under the laws of Denmark that is a wholly-owned subsidiary of Voyager European Holdings ApS ("Voyager Europe" or the "Seller"); Voyager Europe is itself a wholly-owned subsidiary of Debtor Voyager Digital Ltd. (along with its Debtor and non-Debtor subsidiaries, the "Company").[3] The Company, via Voyager Europe, acquired Coinify in August 2021 in a cash and stock deal valued at approximately $85 million. While the Seller is not a Debtor in these chapter 11 cases, Debtor Voyager Digital Ltd. is the beneficiary of the Seller's ownership of Coinify (and, by extension, the beneficiary of any sale of Coinify).

4. Coinify is a global cryptocurrency payment processor separate and distinct from the Voyager platform that enables buying, selling, and accepting cryptocurrency payment in stores worldwide. In acquiring Coinify, the Debtors were provided with an established gateway to the cryptocurrency payment industry in over 150 countries. However, the Coinify business deteriorated over the course of 2022 and has failed to generate any profit. While the situation is

---

[2]  All capitalized terms used herein have the meaning given to them in the Motion.
[3]  For the avoidance of doubt, Coinify and its subsidiaries are not debtors in these chapter 11 cases.

2

fluid, Coinify currently generates negative cash flow—its continued operations may require as much as $500,000 per month in funding from the Debtors, which funding this Court has not yet been asked to approve, and all of which, if approved, would reduce assets available for distribution to the Debtors' stakeholders.

5. Over the past several months, prior to engaging an investment banker, the Debtors attempted to engage informally with at least two counterparties following receipt of unsolicited indications of interest in a potential spin-off transaction of the Coinify business. Those efforts failed to produce a viable transaction. On June 20, 2022, the Debtors engaged Moelis & Company LLC ("Moelis") to initiate a marketing campaign to solicit interest in a sale of all or part of the Debtors' business to either a financial sponsor or a strategic buyer in the cryptocurrency industry, including domestic and international strategic cryptocurrency-related businesses and private equity and other investment firms that currently have crypto-related investments and/or historical experience investing in the cryptocurrency industry. As set forth in greater detail in the *Declaration of Jared Dermont in Support of the Debtors' Motion for Entry of an Order (I) Approving the Share Purchase Agreement by and Among Voyager European Holdings ApS and Ascension ApS and Related Documents, (II) Authorizing the Private Sale of Equity Interests in Coinify ApS, and (III) Granting Related Relief* (the "Dermont Declaration"), filed contemporaneously herewith, certain parties expressed interest in a sale of the Coinify operations either through a separate private sale or as part of a global sale of the Company's assets.

6. In July 2022, Coinify provided the Debtors with an incident report outlining certain concerns in its financial statements identified following an extensive internal review (the "June 2022 Incident Report"). In summary, the June 2022 Incident Report indicated that, due to several

3

accounting adjustments during the 14-month period reviewed between January 2021 and March 2022, Coinify may have effectively incurred an additional loss of approximately €1.9 million.[4]

7. On June 28, 2022, Ascension ApS ("Ascension" or the "Buyer") submitted an unsolicited offer to purchase Coinify. Ascension is a separate investment vehicle formed approximately one decade ago by certain members of the Coinify management team. Ascension is now run, in part, by individuals who are also senior-level employees of Coinify who were aware of, or involved in the formulation of, the June 2022 Incident Report. Accordingly, the transaction contemplated by the Share Purchase Agreement (as defined below) is, in essence, a management buy-out by senior level executives at Coinify.

8. In the following approximately two weeks, the Debtors and Ascension engaged in arm's length, robust negotiations in which each party was represented by separate counsel. On July 13, 2022, in order to stem the losses generated by Coinify and take advantage of the Buyer's interest in a transaction, Voyager Europe entered into that certain share purchase agreement by and among Voyager Europe, as seller, and Ascension, as buyer, substantially in the form attached to the Motion as Exhibit 1 to Exhibit A (the "Share Purchase Agreement" and the transaction contemplated thereby, the "Sale"). Importantly, the Share Purchase Agreement includes a standard "fiduciary out" that permits the Seller to terminate the transaction should a superior offer be received (the "Fiduciary Out").

9. On July 14, 2022, the Debtors filed the Motion, which seeks approval of the Share Purchase Agreement. Following the filing of the Motion, the Debtors, with the assistance of

---

[4] Coinify and the Debtors continue to review the implications of the June 2022 Incident Report. As a result of the accounting adjustments outlined in the June 2022 Incident Report and the prevailing macro-crypto market conditions, it is difficult for the Debtors to project future monthly revenue and potential cash flow needs. Currently, however, there does not appear to be sufficient capital on the Coinify balance sheet to continue to run the business.

4

Moelis, continued to solicit offers from potential parties to purchase Coinify either separately or as part of a global sale transaction of the Voyager business. During this subsequent sale process, as set forth in greater detail in the Dermont Declaration, the Company received one non-binding, verbal indication of interest to purchase Coinify. On August 8, 2022, the Company filed a notice adjourning the hearing on the Motion[5] while the Company and its advisors engaged in discussions with the potential purchaser. Following good-faith, arm's-length negotiations, including encouragement by the Debtors, ultimately, the party did not elect to submit a formal bid. Accordingly, the Company determined, in its business judgment, that the Sale contemplated under the Share Purchase Agreement represents the most value-enhancing—and only actionable—transaction available for the Coinify assets.

10. For the reasons set forth herein, I believe that entering into the Share Purchase Agreement is a sound exercise of the Company's business judgment and would be in the best interests of the Debtors, their estates, and other parties in interest.

**I.    The Proposed Sale Offers the Debtors the Best Possible Value for Coinify**

**A.    The Negotiated Price is Fair and Reasonable Based on the Market Value of Coinify and Current Market Conditions.**

11. As set forth in the Motion, the Share Purchase Agreement contemplates that the Seller will convey all of its equity interests in Coinify to the Buyer in exchange for $2 million in cash (the "Cash Purchase Price"). The Cash Purchase Price shall be paid in three equal installments: one third to be paid on the closing date of the Sale (the "Closing Date"), one third to be paid one month following the Closing Date, and one third to be paid two months following the Closing Date. The Cash Purchase Price is subject to reduction by any interim working capital

---

[5]   *See* Docket No. 209.

5

funding, capped at $500,000, that the Buyer may provide to the Debtors before the Closing Date. The Share Purchase Agreement also contemplates that, in the event the Buyer resells Coinify on or before the third anniversary of the Closing Date, the Buyer will pay the Seller an earn out equal to 12.5 percent of the subsequent sale price, capped at $15 million (the "Earn Out," and together with the Cash Purchase Price, the "Purchase Price").

12. The contemplated Sale also requires the Buyer to pledge to the Seller, as security for the Cash Purchase Price, a first priority security interest of the Buyer's rights, title, and interests in and to the equity interests of Coinify, pursuant to that certain share pledge agreement attached as Schedule 8.2(d) to the Share Purchase Agreement. The Seller must also ensure that any bona fide proposals of interim loan funding for essential working capital for Coinify obtained between the date of signing of the Share Purchase Agreement and the earlier of (a) the Closing Date and (b) October 1, 2022, is accepted and any such loan financing provided by the Buyer is subject to set-off against the third installment of the Cash Purchase Price. Finally, as discussed above, the Share Purchase Agreement includes the Fiduciary Out, which permitted the subsequent sale process for the Debtors to solicit potential superior offers.

13. Given the volatility in the cryptocurrency market, the costs of continuing to operate Coinify, and the lack of a better alternative transaction, I believe the Purchase Price is fair, reasonable and negotiated in good faith and at arms' length.

**B.    The Sale Agreement Will Allow the Seller Access to Significant Savings.**

14. Effectuating the Sale will also allow the Seller to capture significant costs savings. Given the recently received June 2022 Incident Report and other considerations, it is difficult for the Debtors to precisely quantify the cash burn attributable to Coinify. However, absent the Sale, the Debtors estimate that they would continue to incur up to $500,000 per month in negative cash flow, in addition to other liabilities, in connection with Coinify. More importantly, the Sale—

likely the only going-concern transaction available for the Debtors—will avoid what would be a costly and near-term wind down or liquidation of the Coinify business. The cost of such a wind down or liquidation would likely amount to more than the Purchase Price and would need to be funded by the Debtors, resulting in a corresponding reduction in recoveries to their stakeholders.

**II.        The Buyer is Best Positioned to Offer Maximum Value to Purchase Coinify**

15.    Ascension and its management are, in my estimation, the best available counterparty for a transaction by which the Company can dispose of Coinify. Given their intimate familiarity with the Coinify business, Ascension and its management team are best positioned to extract maximum value from Coinify and therefore better positioned than any other party to offer the highest purchase price for the Company's equity stake in Coinify. Finally, the Buyer is prepared to assume substantially all obligations and liabilities of Coinify.

16.    Given the subsequent marketing and diligence process following the filing of the Motion, I believe that sufficient time has been provided to potentially interested third parties to ensure the best possible purchase terms for an acquisition of Coinify. This is especially true here as time is of the essence. Under Danish law, directors and officers may face personal liability for certain actions, including, potentially, trading activities taken when a company is insolvent. Absent an expedient sale, the Coinify business will have inadequate liquidity and the directors and officers of Coinify would likely be forced to wind down the business, destroying value for all stakeholders. Moreover, the sale of Coinify will allow the Debtors to devote their time and resources to maintaining the Voyager platform and business as a going concern and offers the best chance of saving jobs and maximizing returns for customers.

17.    Without the ability to enter into the Share Purchase Agreement as requested in the Motion, the Seller is at risk of losing a significant opportunity to capitalize on a favorable offer. And due to the pervasive uncertainty in the cryptocurrency market in particular and the

macroeconomy more broadly, it is possible that a delay in approving the Motion could accompany a further decline in digital asset prices. Such a decline would likely diminish the price currently on offer, foreclosing the Seller of its current opportunity.

18. Accordingly, I believe that approval of the Motion, permitting the Seller to enter into the Share Purchase Agreement and related documents will allow the Seller to capitalize on a limited opportunity that will maximize the value of Coinify to the benefit of the Debtors' estates.

[*Remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: August 15, 2022  
New York, New York

/s/ *Stephen Ehrlich*
Name: Stephen Ehrlich
Title: Co-Founder and Chief Executive Officer
Voyager Digital Ltd.