**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] ) | Case No. 22-10943 (MEW) |
| ) | |
| Debtors. ) | (Jointly Administered) |
| ) | |

**ORDER GRANTING THE APPLICATION
OF VOYAGER DIGITAL HOLDINGS, INC. AUTHORIZING
THE EMPLOYMENT AND RETENTION OF BERKELEY RESEARCH
GROUP, LLC AS FINANCIAL ADVISOR EFFECTIVE AS OF JULY 5, 2022**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order"), (a) authorizing the Debtors to employ and retain Berkeley Research Group, LLC ("BRG") as financial advisor, effective as of July 5, 2022, in accordance with the terms and conditions set forth in the engagement letter dated June 30, 2022 (the "Engagement Letter"), attached hereto as **Exhibit 1**; and (b) granting related relief, all as more fully set forth in the Application; and upon the Renzi Declaration attached as Exhibit B to the Application; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2] Capitalized terms used but not otherwise defined in this Order shall have the meanings ascribed to them in the Application.

in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Application is granted and the provisions set forth in the Engagement Letter (and all attachments thereto) are hereby approved, to the extent provided herein and except as otherwise expressly modified herein to the contrary.

2. Pursuant to section 327(a) of the Bankruptcy Code, the Debtors are hereby authorized to retain BRG as financial advisor, effective as of July 5, 2022, pursuant to the terms and conditions set forth in the Application and the Engagement Letter.

3. BRG shall file interim and final fee applications for allowance of its compensation and reimbursement of its expenses with respect to services rendered in these chapter 11 cases with the Court, in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals, dated December 21, 2010 (General Order M-412), the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York, dated January 29, 2013 (General Order M-447), applicable U.S. Trustee guidelines,

this Order, and such other procedures as may be fixed by order of the Court. For billing purposes, BRG shall keep its time records in one-tenth (1/10) hour increments.

4. Except to the extent set forth herein, the terms of the Engagement Letter, including, without limitation, the Indemnity & Limitation of Liability provisions (the "Indemnification Provisions") set forth therein, are approved, as modified herein.

5. Notwithstanding anything to the contrary in the Engagement Letter, there will be no limitation of liability in connection with BRG's retention in these chapter 11 cases and the Indemnification Provisions are hereby modified and restated in their entirety as follows:

(i) All requests of BRG for payment of indemnity pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, *provided, however*, that in no event shall BRG be indemnified to the extent a court determines by final order that any claim or expense has resulted from the bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct on the part of BRG.

(ii) In the event that BRG seeks reimbursement from the Debtors for reasonable attorneys' fees in connection with a request by BRG for payment of indemnity pursuant to the Engagement Letter, as modified by this Order, the invoices and supporting time records from such attorneys shall be included in BRG's own application (both interim and final) and such invoices and time records shall be subject to the fee guidelines and the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

(iii) BRG shall not be entitled to reimbursement by the Debtors for any fees, disbursements, and other charges of BRG's counsel other than those incurred in connection with a request of BRG for payment of indemnity, the retention of BRG, and preparation of fee applications, or those incurred in connection with a BRG expert's deposition or testimony within these chapter 11 cases, but only in the instance where counsel to the Debtors is unable to serve as counsel to the testifying expert.

3

6. Notwithstanding any provision to the contrary in the Engagement Letter, any dispute relating to the services provided by BRG shall be referred to arbitration consistent with the terms of the Engagement Letter only to the extent that this Court does not have, retain, or exercise jurisdiction over the dispute, and 28 U.S.C. § 1334(e)(2) shall govern the form for resolving fee disputes.

7. BRG shall use reasonable efforts to avoid any unnecessary duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

8. In connection with any increase in BRG's rates for any individual retained by BRG and providing services in these cases, BRG shall file a supplemental affidavit with the Court and provide ten business days' notice to the Debtors, the United States Trustee for the Southern District of New York ("U.S. Trustee"), and any official committee prior to filing a fee statement or fee application reflecting such an increase. The supplemental affidavit shall explain the basis for the requested rate increases in accordance with Section 330(a)(3)(F) of the Bankruptcy Code and state whether the Debtors have consented to the rate increase. The U.S. Trustee retains all rights to object to any rate increase on all grounds including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

9. Notwithstanding anything in the Application to the contrary, to the extent that BRG uses the services of independent contractors or subcontractors (collectively, the "Contractors") in these cases, BRG shall (i) pass through the cost of such Contractors to the Debtors at the same rate that BRG pays the Contractors; (ii) seek reimbursement for actual costs only; (iii) ensure that the Contractors are subject to the same conflict checks as required for BRG; and (iv) file with the

Court such disclosures required by Bankruptcy Rule 2014. BRG does not intend to use the employees of any foreign affiliate or subsidiary in the course of this engagement.

10. In the event BRG seeks to use any of its affiliates to perform services for the Debtors, the Debtors shall seek the separate retention of any such affiliates.

11. Notwithstanding any provision to the contrary in either the Renzi Declaration or the Engagement Letter, BRG shall apply any remaining amounts of its Cash on Account (as that term is defined in paragraph 29 of the Renzi Declaration) as a credit toward postpetition fees and expenses after such postpetition fees and expenses are approved pursuant to the first Order of this Court allowing compensation and reimbursement of out-of-pocket expenses to BRG.

12. To the extent there is any inconsistency between the terms of the Engagement Letter, the Application, the Renzi Declaration, and this Order, the terms of this Order shall govern.

13. The notice requirements of Bankruptcy Rule 6004(a) are deemed waived.

14. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

15. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

16. Notwithstanding any term in the Engagement Letter to the contrary, this Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: New York, New York
      August 16, 2022

    /s/ **Michael E. Wiles**
    THE HONORABLE MICHAEL E. WILES
    UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Engagement Letter**

**BRG — INTELLIGENCE THAT WORKS**

**CONFIDENTIAL**

June 30, 2022

Via Email

Stephen Ehrlich
Chief Executive Officer
Voyager Digital, LLC
33 Irving Plaza, Suite 3060
New York, NY 10003

    **Re: Voyager Digital – Restructuring Services**

Dear Mr. Ehrlich,

This letter confirms the engagement of Berkeley Research Group, LLC ("BRG") to provide financial advisory and consulting services to Voyager Digital, LLC ("Client").  This letter and any attachments set forth the agreement ("Agreement") between the parties.

**SCOPE OF SERVICES**

The scope of services under this engagement shall consist of the following activities ("Services"):

- Support the development of restructuring plans, financing, and strategic alternatives for the Client;
- Prepare various financial analysis to support restructuring alternatives including liquidity forecast, expense levels and others as necessary;
- Provide advice to management on cash conservation measures and liquidity forecasting after analyzing and stress testing weekly cash flows under various scenarios;
- Advise the Client relative to negotiating with existing lenders and stakeholders;
- Participate in board calls as requested;
- Assist Client with the communications and negotiations with various third parties to support restructuring alternatives;
- Other services as requested or directed by the CFO and CEO, the board of directors of the Client (the "Board") or other Client personnel as authorized by the foregoing and agreed to by BRG; and
- If a Chapter 11 bankruptcy were to become necessary, assist the Client with activities relating to such bankruptcy including, as appropriate, testimony if requested.

It is understood and agreed that BRG's Services may include advice and recommendations, but that all decisions in connection with the implementation of such advice and recommendations will be the responsibility of Client.

**FEES & EXPENSES**

Client will pay BRG professional fees, which will be based on the actual hours charged at BRG's standard hourly rates, which are in effect when the Services are rendered ("Professional Fees").  Hourly rates may change in the future from time to time and are typically adjusted annually.  BRG's current hourly rates are as follows:



CONFIDENTIAL
June 30, 2022
Page 2 of 6

| | |
|---|---|
| Managing Directors & Directors | $750 – $1,195 |
| Senior Staff | $595 – $725 |
| Junior Staff | $380 – $575 |
| Support Staff | $195 – $300 |

In addition to Professional Fees, BRG will be reimbursed for reasonable and documented direct out-of-pocket expenses including, but not limited to, travel, costs of reproduction, typing, research, communications, computer usage, legal counsel, any applicable sales or excise taxes, and other direct expenses. BRG will provide a reasonably itemized statement of expenses incurred on this engagement, and shall provide copies of original invoice or other documentation on itemized expenses over $75 upon request. Client shall reimburse BRG for reasonable itemized expenses less than $75 without a copy of the original invoice or other documentation.

BRG will bill for Services every two (2) weeks and will provide customary descriptions regarding the Services rendered.  BRG will provide additional details regarding Services rendered upon request by Client. BRG's invoices statements shall be paid within seven (7) days of the invoice date. Client agrees that it will review BRG's invoices upon receipt and will advise BRG of any objection to or dispute with the invoice and the work reflected in the invoice within seven (7) days of the invoice date.

Without liability, BRG reserves the right to withhold delivery of Services, testimony, reports or data (written or oral), or suspend work, if the account on this engagement is not current. A late payment charge of one percent (1%) per month (or the maximum rate permitted by law, whichever is less) may be added to any outstanding invoices that are past due.

<u>Please remit payments by wire to:</u>
Account Name: Berkeley Research Group, LLC
Account No:    8026286672
Bank:          PNC Bank, N.A.
ABA No:        031207607
remitadvice@thinkbrg.com

**CASH ON ACCOUNT**

Initially, Client will forward to BRG the amount of $250,000, which funds will be held "on account" to be applied to BRG's Professional Fees, charges and disbursements for the engagement (the "Initial Cash on Account").  To the extent that this amount exceeds BRG's fees, charges and disbursements upon the completion of the engagement, BRG will refund any unused portion.  Client agrees to increase or supplement the Initial Cash on Account from time to time during the course of the engagement in such amounts as Client and BRG mutually shall agree are reasonably necessary to increase the Initial Cash on Account to a level that will be sufficient to fund Professional Fees, charges, and disbursements to be incurred.

Upon transmittal of an invoice, BRG may immediately draw upon the Initial Cash on Account (as replenished from time to time) in the amount of the invoice.  Client agrees upon submission of each such invoice to promptly wire the invoice amount to BRG as replenishment of the Initial Cash on Account (together with any supplemental amount to which BRG and Client mutually agree), without prejudice to

Matter #44550 Voyager Digital, LLC



CONFIDENTIAL
June 30, 2022
Page 3 of 6

Client's right to advise BRG of any differences it may have with respect to such invoice. BRG has the right to apply to any outstanding invoice (including amounts billed prior to the date hereof), up to the remaining balance, if any, of the Initial Cash on Account (as may be supplemented from time to time) at any time subject to (and without prejudice to) Client's opportunity to review BRG's invoices.

**COMPANY RESPONSIBILITIES**

Client agrees that the delivery of Services and Professional Fees charged are dependent on timely and effective cooperation from the Client. Accordingly, Client shall furnish to BRG financial information and other information regarding the business of Client as BRG may reasonably request in connection with the Agreement. Client also represents that information furnished to BRG is accurate and complete at the time it is furnished and agrees to keep BRG advised of developments materially affecting Client or its financial position. Client shall make decisions and take further actions, as Client determines in its sole discretion, relating to any recommendations made by BRG in connection with this Agreement.

BRG shall not make any management decisions on behalf of Client and will not be responsible for Client's decision to pursue, or not to pursue, any business strategy or to implement, or not implement, recommendations made by BRG. As part of the Services, BRG may be requested to assist Client (and its legal or other advisors) in negotiating with Client's creditors and equity holders and with other interested parties. In the event that BRG participates in such negotiations, the representations made and the positions advanced will be those of Client and its management, not BRG or its employees.

**CONFIDENTIALITY**

BRG shall not disclose any confidential or privileged information to any third party; provided, however, that BRG may disclose confidential or privileged information (a) to BRG's employees, affiliates, vendors or agents who provide Services in connection with this engagement, (b) with Client's written consent, or (c) when legally required to do so. Both parties agree that confidential and proprietary information will not be construed to include information that is available from public sources or sources not subject to obligations of confidentiality to Client. Work papers associated with BRG's consulting Services are the confidential property of BRG.

**OWNERSHIP OF DELIVERABLES & DATA**

Client acknowledges and agrees that BRG is the sole owner of any deliverables provided in connection with the Services, including, without limitation, all copyrights, trademarks, patents and trade secrets and other intellectual property rights (including, without limitation, goodwill) therein, and all rights attendant thereto. BRG hereby grants to Client a non-exclusive, royalty-free irrevocable right to use the deliverables for its own internal purposes. To the extent that Client wishes to disclose to any third party the work product of BRG, it will so advise BRG prior to such disclosure. BRG may require any third party to execute a non-reliance and release letter acceptable to BRG in form and substance. Further, BRG will not assume, or be deemed to have assumed, any responsibility, obligation or liability to any third party to which any advice, report or other work product is disclosed or otherwise made available.

Client represents and warrants that Client has any and all necessary right, title, license and authority (including any and all necessary permissions from third-party owners) to transfer to BRG, grant access to BRG or allow BRG to use for the purpose of rendering Services to Client, any and all of the data or other



information that Client provides to BRG for such purpose. Client agrees to indemnify BRG against any and liabilities, including liabilities arising from claims brought by third parties and any and all costs of defense, arising from such transfer, access or use.

**CONFLICTS OF INTEREST**

BRG is engaged by many other companies and individuals. It is possible that some of BRG's past, current or future clients had, have or may have disputes or other matters that are adverse to or may not be consistent with the interests of Client. BRG reserves the right to undertake unrelated engagements during and after this engagement by Client, consistent with BRG's internal policies. BRG will not be required to disclose any such unrelated engagements to Client. BRG will institute procedures to protect the confidentiality of information provided by Client in the course of this engagement.

**ARBITRATION**

This Agreement shall be interpreted and controlled by the laws of the state of Delaware. Any controversy, dispute, or claim between Client on the one hand and BRG on the other hand of whatever nature arising out of, in connection with, or in relation to the interpretation, performance or breach of this agreement, including any claim based on contract, tort, or statute ("Claims"), shall be resolved at the request of any party to this agreement, by final and binding arbitration, administered by Judicial Arbitration & Mediation Services, Inc. (JAMS), or its successor entity, pursuant to Streamlined Arbitration Rules & Procedures, and judgment upon any award rendered by the arbitrator may be entered by any State or Federal Court having jurisdiction thereof.  Any such arbitration shall take place exclusively in Massachusetts. The prevailing party shall be entitled to reasonable attorneys' fees and costs incurred in any arbitration or litigation brought in connection with this Agreement, as well as reasonable attorneys' fees and costs incurred in appealing or in connection with any action to enforce any judgment entered by the arbitrator in any court having jurisdiction.  If a party to any arbitration proceeding filed in connection with this Agreement fails to pay any costs of the arbitration required to be paid by such party in the time required for payment, the arbitrator is authorized to provide an appropriate remedy, including an entry of a default and an arbitration award on the merits against such party.

**INDEMNITY & LIMITATION OF LIABILITY**

Client agrees to indemnify and hold harmless BRG against any and all losses, claims, damages, liabilities, penalties, judgments, awards, costs, fees, expenses and disbursements including, without limitation, defending any action, suit, proceedings or investigation (whether or not in connection with proceedings or litigation in which BRG is a party), directly or indirectly, caused by, relating to, based upon, arising out of or in connection with the engagement of BRG or any Services rendered pursuant to this engagement, unless there is a final non-appealable order of a court of competent jurisdiction finding BRG directly liable for gross negligence or willful misconduct. These indemnification provisions extend to the members, principals, employees, representatives, agents, counsel and affiliates of BRG.

The parties shall not be liable to each other for any delays resulting from circumstances or causes beyond its reasonable control, including, without limitation, fire or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order or requirement of any governmental agency or authority.



CONFIDENTIAL
June 30, 2022
Page 5 of 6

Notwithstanding the indemnification and any other terms of this Agreement, the parties shall not be liable to each other for any consequential, incidental, special or punitive damages, nor shall BRG be liable for direct compensatory damages in excess of the fees actually received by BRG for the performance of Services hereunder.

**TERMINATION**

Client or BRG may terminate this engagement upon seven (7) days' written notice. In the event the engagement is terminated prior to the completion of Services, Clients agrees to pay BRG for all Professional Fees and expenses incurred through the termination date.

**OTHER TERMS**

In the event BRG is requested pursuant to subpoena or other legal process to produce any documents or to provide testimony relating to engagements for Client in judicial or administrative proceedings to which BRG is not a party, Client shall reimburse BRG at standard billing rates for all professional time and expenses, including reasonable attorneys' fees, incurred in preparing for and responding to requests for documents and providing testimony.

Client will only use any advice, report or work product produced under this engagement for making its own internal business decisions.  Client will solely rely on its own analysis and review to make any investment or other business decision. BRG will not render an assurance report or assurance opinion as part of this engagement, nor will the Services constitute an audit, review or examination of any entity's financial statements or prospective financial statements in accordance with generally accepted auditing standards or other applicable professional standards. None of the Services or any report will constitute any legal opinion or advice, nor will the Services or any reports constitute a fairness opinion, investment or accounting advice. BRG will not conduct a review to detect fraud or illegal acts, nor will BRG render any opinion as to the fairness or advisability of any proposed transaction. In addition, Client acknowledges that no reliance shall be placed on draft reports, conclusions or advice, whether oral or written, issued by BRG as the same may be subject to further work, revision and other factors which may mean that such drafts are substantially different from any final report issued by BRG.  Client will not use the report or work product under this engagement for any use beyond the use set forth in this letter.

Unless otherwise explicitly stated, all provisions of this Agreement shall survive the expiration or termination of this engagement. Neither party may assign, transfer or delegate any of the rights or obligations hereunder without the prior written consent of the other party. The section headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement. This engagement letter and its terms and conditions constitute the entire Agreement between BRG and Client with respect to the subject matter hereof and supersedes all other oral and written representations, understandings or agreements relating to the subject matter hereof.  No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby.



This Agreement may be executed in one or more counterparts, each of which may be signed and transmitted via facsimile or PDF electronic delivery with the same validity as if it were an ink-signed document.

Sincerely,


Mark Renzi
Managing Director



AGREED AND ACCEPTED:

Voyager Digital, LLC

By_____*Steve Ehrlich*_____     Dated__6/30/2022_____
          Stephen Ehrlich, CEO