Hearing Date: August 24, 2022
Hearing Time: 10:00 a.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | Case No. 22-10943 (MEW) |
| | Jointly Administered |
| Debtors. | |

-----------------------------------------------------------------x

**OBJECTION OF THE UNITED STATES TRUSTEE TO (1) DEBTORS'
MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS
TO REDACT AND FILE UNDER SEAL CERTAIN CONFIDENTIAL
INFORMATION RELATED TO THE DEBTORS' KEY EMPLOYEE
RETENTION PLAN, AND (2) TO MOTION OF DEBTORS FOR ENTRY OF
AN ORDER APPROVING DEBTORS' KEY EMPLOYEE RETENTION PLAN**

TO:   **THE HONORABLE MICHAEL E. WILES,
      UNITED STATES BANKRUPTCY JUDGE:**

William K. Harrington, the United States Trustee for Region 2 (the "**United States Trustee**"), hereby submits this objection to the above-captioned Debtors' Motion to Redact and File Under Seal Certain Confidential Information Related to the Debtors' Key Employee Retention Plan (the "**Motion to Seal**") [ECF Doc. No. 284]. The United States Trustee also objects to the Debtors' Motion (the "**Bonus Motion**") for Entry of an Order Approving Debtors'

---

[1] The "Debtors" in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (N/A); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

Key Employee Retention Plan (the "**KERP**") [ECF. Doc. No. 212]. In support thereof, the United States Trustee respectfully states:

## PRELIMINARY STATEMENT

The Debtors seek authority to pay significant bonuses in the total amount of approximately $1.9 million to approximately 38 individuals (the "**KERP Participants**"). The payment of bonuses, let alone bonuses in such a significant sum to such a limited number of individuals under the circumstances that brought Voyager to this Court, should not be countenanced.

As an initial matter, the Debtors seek an order under Bankruptcy Code section 107(b) authorizing the sealing or redaction of virtually all of the pertinent information regarding the names, job titles, supervisor information, salary, and proposed bonus amount of each of the 38 KERP Participants. This is critical information that creditors and other interested parties will need in order to evaluate the Bonus Motion. Although this information was provided to the United States Trustee and selected other parties after the Bonus Motion was filed,[2] that does not obviate the needs for full transparency in these bankruptcy proceedings.

The Debtors seek to meet their heavy burden under Section 107(b) by arguing that the filing of this information will have a negative impact upon the Debtors' business. This broad, vague reference to speculative harm, made without any evidentiary support, does not meet the Debtors' heavy burden. In other words, the Debtors have not shown that any damage that might ensue from the disclosure of this relevant information regarding the KERP Participants

---

[2] The list of KERP Participants was provided to counsel to the Committee and the U.S. Trustee. The Debtors do not state that they intend to share any of the information on the list with anyone other than the Court. See Bonus Motion, ¶ 11, n.4.

outweighs the general policy of transparency on which the public bankruptcy process depends. Therefore, the Court should not permit the sealing or redacting of the information regarding the KERP Participants.

With respect to the Bonus Motion itself, the Court, United States Trustee and other parties-in-interest require more facts with which to determine whether any of the KERP Participants is an "insider" of the Debtors, as that term is defined under the Bankruptcy Code. Should any Participant be considered an insider, the test to be applied to their receiving a bonus would be section 503(b)(1) of the Bankruptcy Code, as opposed to section 503(b)(3), which governs bonuses to be paid to non-insider employees.

Although the Debtors assert that none of the KERP Participants is an insider, (see Bonus Motion, ¶¶ 1, 10, 16, 17, 19, 33, 34, 35), their support for that assertion is found in an unredacted chart that was provided only to the Court, counsel to the Official Committee of Unsecured Creditors (the "**Committee**"), and the United States Trustee.[3]  Other parties-in-interest can only guess who the KERP Participants might be, and whether they might be able to argue that one or more of the KERP Participants is, in fact, an insider. Although the KERP Participants may include officers – and the Bankruptcy Code's definition of "insider" includes officers – the Debtors assert that the characterization of non-insider status to each prospective KERP Participant is appropriate. However, because the Court cannot simply take the Debtors' word for that characterization – and because the list of KERP Participants may well include insiders, any

---

[3]  Based on the United States Trustee's review of the unredacted information, one or more of the KERP Participants may well be classified as an insider under section 101(31) of the Bankruptcy Code.

3

proposed bonus to the KERP Participants must be analyzed within the framework of section 503(c)(1) – which the Debtors have failed to do.

As applied to non-insiders, the KERP in its current form fails to meet the appropriate standard under section 503(c)(3). Specifically, the KERP bonuses are not tied to any identifiable metric that would enable parties-in-interest and the Court to determine whether the bonus payments are reasonable based on the facts and circumstances of these cases. This is of particular significance where, as here, the Debtors' customers have serious concerns about whether they will recover their assets that the Debtors froze on their platform pre-petition. Given that the Bonus Motion provides no way to ascertain the basis for conferring cash awards on the KERP Participants, the Bonus Motion does not provide sufficient information to enable the Court to make an independent determination that the KERP passes muster under the facts and circumstances of these cases.

For all these and additional reasons, as fully detailed below, the United States Trustee respectfully objects to the Bonus Motion.

## BACKGROUND

### General Background

1.     On July 5, 2022 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. ECF Doc. No. 1.

2.     The Debtors continue to operate their businesses and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On July 6, 2022, the Court entered an order authorizing the joint administration and procedural consolidation of the chapter 11 cases. ECF Doc. No. 18.

3. On July 19, 2022, the United States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code. ECF Doc. No. 106. No entity has requested the appointment of a trustee or examiner in these chapter 11 cases.

**The Motion to Seal**

4. On August 12, 2022, the Debtors filed a Motion to Seal. ECF Doc. No. 284.

5. The Debtors seek authorization to redact and file under seal a portion of the Declaration of Stephen Ehrlich, Chief Executive Officer of the Debtors, in Support of the Debtors' Motion for Entry of an Order (I) Approving the Debtors' Key Employee Retention Plan and (II) Granting Related Relief (the "**Ehrlich Declaration**"). Motion to Seal, ¶ 1. Specifically, the Debtors seek the redaction and sealing of the portion of the Ehrlich Declaration that discloses the KERP Participants' job titles, supervisors' names and job titles, and corresponding salary and proposed KERP award . . ." Motion to Seal, ¶¶ 1, 4; Ehrlich Declaration, ¶ 14.

6. The Debtors provided unredacted versions of the Declarations in support of the Bonus Motion solely to the Court, the United States Trustee and counsel to the Committee. See id.

7. No declaration has been filed in support of the Motion to Seal. See ECF Docket Report.

**The Bonus Motion**

8. On August 2, 2022, the Debtors filed the Bonus Motion. No declaration was filed contemporaneously with the Bonus Motion. See ECF Docket Report.

9. On August 9, 2022, in support of the Bonus Motion, the Debtors also filed the Declaration of Zachary P. Georgeson of Willis Towers Watson US LLC, the Debtors' compensation consultant (the "**Georgeson Declaration**"). ECF Doc. No. 258.

5

10. On August 12, 2022, in further support of the Bonus Motion, the Debtors filed the redacted Ehrlich Declaration under seal. ECF Doc. No. 285.

11. As described by the Debtors, the primary purpose of the KERP is to retain key, non-insider employees who perform various essential services for the Debtors. See id., ¶ 10. Moreover, the Debtors' employees have seen the value of their compensation decrease as a result of the decline in the value of the equity component of that compensation. See id.

12. According to the Debtors, of their approximately 350 current employees, 38 are to participate in the bonus program. See id. at ¶ 14. The Bonus Motion, however, is silent with respect to whether any or all of the KERP Participants have participated in pre-petition bonus programs.

13. The KERP contemplates retention-based payments to the KERP Participants in the approximate maximum amount of $1.9 million in two installments. Id. at ¶ 17. The Bonus Motion states that the bonuses will amount to 25 percent of the KERP Participants' annual salaries. Id. Fifty percent of the bonuses are to be paid "immediately,"[4] and the remaining fifty percent is to be paid either 12 months after the KERP's effective date or 90 days after the company's emergence from chapter 11, whichever is earlier. Id.

## DISCUSSION

**The Motion to Seal**

    A. **The Policy of Open Access in Bankruptcy Cases**

---

[4] Presumably, this means upon entry of an Order granting the Bonus Motion.

Bankruptcy Code § 107 sets forth the legal standard applicable to sealing information in bankruptcy cases. *See also* Fed. R. Bankr. P. 9018. Section 107(a) of the Bankruptcy Code provides, in part, that subject to certain limited exceptions:

> a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.

11 U.S.C. § 107(a).

"There is a strong presumption and public policy in favor of public access to court records." In re Borders Grp., Inc., 462 B.R. 42, 46 (Bankr. S.D.N.Y. 2011); see also, Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.), 21 F.3d 24, 26 (2d Cir. 1994) (section 107(a) codifies the policy of open access to bankruptcy court records and "evidences congress's strong desire to preserve the public's right of access to judicial records in bankruptcy proceedings); In re Food Mgmt. Grp., LLC, 359 B.R. 543, 553 (Bankr. S.D.N.Y. 2007) (same). Open access to court records is especially important in bankruptcy cases because it "fosters confidence among creditors regarding the fairness of the bankruptcy system." Food Mgmt., 359 B.R. at 553.

The exceptions to the policy of open access to court records, as such are set forth in Bankruptcy Code § 107(b), are therefore narrow. Borders, 462 B.R. at 47 (citing Orion, 21 F.3d at 27). Section 107(b) does not require sealing an entire document; it mandates only protection of information that falls into sections 107(b)(1) or (b)(2). In re Anthracite Capital, Inc., 492 B.R. 162, 180 (Bankr. S.D.N.Y. 2013). "The public policy favoring public access supports making public as much information as possible while still preserving the confidentiality of protectable information. In re Motors Liquidation Co., 561 B.R. 36, 42 (Bankr. S.D.N.Y. 2016) (citations and internal quotation marks omitted).

The exceptions to public access in bankruptcy cases are "not intended to offer a safe harbor for those who crave privacy or secrecy for its own sake," as is the case here. Anthracite, 492 B.R. at 178. Accordingly, convincing a court to seal documents is a heavy burden. Orion, 21 F.3d at 27. Consistent with the strong policy of open access and the narrowness of its bankruptcy exceptions, the party seeking to seal information has the burden to prove that the information falls within the enumerated exceptions set forth in section 107(b). In re Oldco M Corp., 466 B.R. 234, 237 (Bankr. S.D.N.Y. 2017); In re Northwest Airlines Corp., 363 B.R. 704, 706 (Bankr. S.D.N.Y. 2007). The party seeking to seal must show "compelling or extraordinary circumstances" that warrant sealing information. Food Mgmt., 359 B.R. at 554 (citing Orion, 21 F.3d at 27).

Broad allegations of harm, without specific examples or articulated reasoning, are insufficient for sealing purposes. Miller v. Indiana Hosp., 16 F.3d 549, 551 (3d Cir. 1994); In re Dreier LLP, 485 B.R. 821, 823 (Bankr. S.D.N.Y. 2013) (denying motion to seal excerpt in deposition transcript, finding that movant failed to show that its disclosure would place it at a competitive disadvantage and conclusory statements in the supporting declaration were not probative). "That information might 'conceivably' or 'possibly' fall within a protected category is not sufficient to seal documents." In re FiberMark, Inc., 330 B.R. 480, 506 (Bankr. D. Vt. 2005). Rather, the party seeking to seal information must show a specific threat of harm from public disclosure of the information. See Borders, 462 B.R. at 47-48; see also Orion, 21 F.3d at 27 ("a judge must carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or compelling need.").

    **B.    The Motion to Seal Should Be Denied**

The Debtors are seeking to seal not only the names of the KERP Participants and their supervisors, but also most of the probative information related to the bonuses they are to receive. Such information includes the amounts of the bonuses, the KERP Participants' salaries, their job descriptions, and who hired them. Motion to Seal, ¶¶ 1, 4; Ehrlich Declaration, ¶ 14.[5] The only information that is not redacted is the aggregate amount of the bonuses and the number of participants. See KERP Motion, ¶ 11. With so much probative information sought to be sealed, and with no support, the Motion to Seal falls short of the heavy burden required of the Debtors under our well-settled standards.

The category of information relevant to the Sealing Motion is Section 107(b)(1), which protects "a trade secret or confidential research, development, or commercial information." 11 U.S.C. § 107(b)(1). To the extent implicated here, trade secrets are distinct from commercial information. Borders, 462 B.R. at 47. "Commercial information has been defined as information which would cause an unfair advantage to competitors by providing them information as to the commercial operations" of the requesting party. Orion, 21 F. 3d at 27 (internal quotations omitted); see also Borders, 462 B.R. at 47. "Information is not considered 'commercial' merely because it relates to business affairs." Anthracite, 492 B.R. at 178. Rather, as this Court stated in Borders:

> The term [commercial information] includes situations where a bankruptcy court may reasonably determine that allowing such disclosure would have a chilling effect on business negotiations, ultimately affecting the viability of Debtors. Moreover, the Court must also find that the redacted information is so critical to

---

[5] The chart at paragraph 14 of the Ehrlich Declaration illustrates the broad scope of the information to be sealed or redacted. That paragraph contains a chart with six columns entitled "[Job] Title", "Supervisor's Name and Title", "Hired/Appointed By", "Salary", and "KERP Award", along with 37 rows for the KERP Participants. Ehrlich Declaration, ¶ 14. The entire chart, which begins on page 5 and ends on page 11 of the Ehrlich Declaration, is redacted.

>the operations of the entity seeking the protective order that its disclosure will unfairly benefit the entity's competitors.

Borders, 462 B.R. at 47-48 (internal quotations, citations, and brackets omitted; emphasis added).

Given the strong policy of open access to public Court records, it is settled law in this Court that the "commercial information" exception of section 107(b)(1) "is a narrow one." In re Purdue Pharma L.P., 632 B.R. 32, 39 (Bankr. S.D.N.Y. 2021). Moreover, while any harm to a debtor or a third party would give competitors an unfair advantage, courts "must be careful not to extend the term ["commercial information"] too readily to any disclosure that would allegedly cause harm." Id., 632 B.R. at 40.

Here, the Debtors seek an order sealing not only the identities of the KERP Participants, but also almost all of the information that relates to the purported reasonableness of the bonuses sought in the Bonus Motion. Although the Bonus Motion discloses to parties-in-interest the aggregate amount of the bonuses, the parties have no idea of the amounts that the individual KERP Participants are to receive. Nor are they aware of the base salary amounts or salary ranges of the KERP Participants.[6] Thus, as noted above, the Sealing Motion contains no cognizable justification for the relief the Debtors seek, other than raising fears that the information sought to be sealed would cause harm to the company and its business. These broad and speculative assertions do not demonstrate that all of the redacted information is so critical that disclosure

---

[6] Although the Creditor Matrix Order provides that, under certain conditions, the Debtors must "provide and unredacted version of the Creditor Matrix, Schedules and Statements, and any other filings redacted pursuant to this Order" to "any party in interest upon a request to the Debtors . . . or to the Court that is reasonably related to these chapter 11 cases. Creditor Matrix Order, ECF Doc. No. 54, ¶ 6. The Motion to Seal affords the parties to these cases no opportunity to request access to the redacted information with respect to the Bonus Motion.

would unfairly benefit the Debtors' competitors or harm anyone. See Purdue Pharma, 632 B.R. at 34 (testimony concerning alleged harm that unsealing debtors' records would case considered too speculative to meet narrow standard under section 107(b)(1)).

The Debtors rely entirely on speculative fears in support of the Motion to Seal. According to the Debtors, because they "operate in a highly competitive market," competitors may "poach the Debtor's key employees" if any information regarding the bonuses and the KERP Participants is disclosed. Motion to Seal, ¶ 14. The danger of "poaching" may be an argument in favor of awarding retention bonuses, generally speaking, but unspecified fears of poaching as a result of disclosing any information regarding the proposed bonuses are another matter. These fears are insufficient to enable the Debtors to meet their heavy burden to prove that the job descriptions, supervisors' names and titles, salaries, KERP Participants' salaries and bonuses must all be sealed or redacted. Unsupported, speculative fears – and argument – are not evidence.[7] Moreover, it is not enough that the Debtors raise concerns about the possible consequences of disclosure; they instead must also provide sufficient evidence for a court to reach the independent determination that the disclosure of the redacted information will cause harm to the Debtors. Borders, 462 B.R. at 47-48. The Debtors have failed to do so.

The Debtors have not met their burden of proving that all of the information they seek to seal or redact contains "commercial information" that requires the protection of section 107(b)(1) – and that outweighs the overriding interest of providing transparency that prevails in cases filed under the Bankruptcy Code. Accordingly, Motion to Seal must be denied.

---

[7] For the avoidance of doubt, while the Debtors filed no declarations in support of the Motion to Seal, the Ehrlich Declaration and the Georgeson Declaration were filed in support of the Bonus Motion. See ECF Docket Report.

11

**The Bonus Motion**

    A.    **The Statutory Framework**

Section 503 governs the allowance of administrative expenses "for actual, necessary costs and expenses of preserving a debtor's bankruptcy estate." 11 U.S.C. § 503(b)(1)(A). The two general overriding policies of Section 503 of the Bankruptcy Code are: (i) to preserve the value of the estate for the benefit of its creditors and (ii) to prevent the unjust enrichment of the insiders of the estate at the expense of its creditors. In re Journal Register Co., 407 B.R. 520, 535 (Bankr. S.D.N.Y. 2009) (citing Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc., 789 F.2d 98. 101 (2d Cir. 1960)) (additional citations omitted).

Section 503(c)(1) of the Bankruptcy Code prohibits any transfer:

> made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtors' business, absent a finding by the court based on evidence in the record that

(A)    the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;

(B)    the services provided by the person are essential to the survival of the business; and

(C)    either –

    (i)    the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or

    (ii)    if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of

> such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred;

11 U.S.C. § 503(c)(1).

A transfer to an insider to induce the insider to remain with the debtor's business must satisfy the requirements under subdivisions (A), (B), and (C) of Section 503(c)(1) of the Bankruptcy Code to be subject to this subdivision's exception. 4 Collier on Bankruptcy ¶ 503.17 (15th ed. rev. 2007); see also In re Dana Corp., 358 B.R. 567, 575 (Bankr. S.D.N.Y. 2007) ("Dana II") (summarizing the requirements under Section 503(c)(1) of the Bankruptcy Code). Attempts to characterize what are essentially prohibited retention programs as "incentive" programs to bypass the requirements of Section 503(c)(1) of the Bankruptcy Code are looked upon with disfavor, as the courts consider the circumstances under which particular proposals are made, along with the structure of the compensation packages, when determining whether the compensation programs are subject to section 503(c)(1) of the Bankruptcy Code. See In re Mesa Air Group, Inc., No. 10-10018, 2010 WL 3810899, at *2 (Bankr. S.D.N.Y. Sept. 24, 2010) (citing In re Dana Corp., 351 B.R. 96, 102 n.3 (Bankr. S.D.N.Y. 2006) ("Dana I") (stating that if a bonus proposal "walks like a duck (KERP), and quacks like a duck (KERP), it's a duck (KERP).").

Section 503(c) of the Bankruptcy Code, added in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), was intended to curtail payments of retention incentives to insiders, including bonuses granted to other employees without factual and circumstantial justification. See Journal Register; 407 B.R. at 535; see also In re Pilgrim's Pride Corp., 401 B.R. 229, 234 (Bankr. N.D. Tex. 2009) ("Section 503(c) was enacted to limit a debtor's ability to favor powerful insiders economically and at estate expenses during a chapter

13

11 case.") (additional citations omitted); In re Global Home Prods., LLC, 369 B.R. 778, 783-84 (Bankr. D. Del. 2007) (the amendments were added to "eradicate the notion that executives were entitled to bonuses simply for staying with the Company through the bankruptcy process."). This section establishes specific evidentiary standards that must be met before a bankruptcy court may authorize payments made to an insider for the purpose of inducing such person to remain with a debtor's business. Dana I, 351 B.R. at 100; 11 U.S.C. § 503(c)(1).

If a proposed transfer falls within Section 503(c)(1), then the business judgment rule does not apply, irrespective of whether a sound business purpose may actually exist. Id. The effect of Section 503(c) of the Bankruptcy Code was to put in place "a set of challenging standards" and "high hurdles" for debtors to overcome before the Court is in a position to determine that retention bonuses should be paid. Mesa Air Group, 2010 WL 3810899, at *2 (citing Global Home Prods., 369 B.R. at 785).

### B. The Debtors Have Failed to Establish that Section 503(c)(1) Is Not Applicable to Employees Covered by the KERP

While disclosing that certain of the KERP Participants hold titles such as "head", "director", "vice president", or "chief", the Debtors argue none of the KERP Participants is an insider. Bonus Motion, ¶ 16. The Debtors explain that none of the KERP Participants is appointed directly by the Debtors' board of directors, controls the Debtors' operations as a whole, or directs the Debtors' corporate policy or governance. Id.

The Bonus Motion, however, contains no information regarding the specific duties or authority of any of its KERP Participants. This prevents the Court from being able to evaluate whether the KERP Participants do or do not have control over the Debtors' operations, policy, or budget, or whether they have responsibilities over significant aspects of the company's

operations. Although some of this crucial information appears in the unredacted version of the Ehrlich Declaration, as stated above, only the Court, the United States Trustee, and counsel to the Committee have access to that information.

Even if the KERP Participants are not properly classified as executive officers – and may not have input in the KERP – that alone does not dispose of the question of whether they are insiders. Pursuant to Section 101(31), if a debtor is a corporation, the term "insider" includes an officer of the debtor. 11 U.S.C. § 101(31)(B)(ii). A vice president as an officer is presumptively an insider. In re Foothills Texas, Inc., 408 B.R. 573, 579 (Bankr. D. Del. 2009). Moreover, regardless of title, a person with broad responsibilities over significant aspects of a debtor's business is considered an insider, even if he or she is not a member of senior management. Id. at 584 (finding vice presidents who were not members of senior management, but who had broad responsibilities over significant aspects of debtor's business, to be insiders); see also Borders, 453 B.R. at 469 ("[i]nsider status can also be determined on a case by-case basis based on the totality of the circumstances, including the degree of an individual's involvement in a debtor's affairs"); Office of the U.S. Trustee v. Fieldstone Mortgage Co., No. CCB-08-755, 2008 WL 4826291, *5 (D. Md. Nov. 5, 2008) ("[C]ontrol . . . is an independent additional ground for finding a person an insider, not a feature that officers or directors are required to possess in order to be deemed insiders"); In re Krehl, 86 F.3d 737, 741 (7th Cir. 1996) (definition of insider is illustrative rather than exhaustive); cf. In re Kunz, 489 F.3d 1072 (10th Cir. 2007) (it is not simply the title "director" or "officer" that renders an individual an insider; rather it is the set of legal rights that a typical corporate director or officer holds).

Accordingly, unless the Debtors demonstrate that each of the KERP Participants is not an insider, the officers participating in the KERP are presumed to be insiders. Foothills Texas, 408

B.R. at 584. Insiders are subject to the requirements of Section 503(c)(1) and the Debtors have neither met their burden of proof under that subsection, nor have they rebutted the presumption of insider status absent a discussion of the roles and responsibilities of each KERP Participant. See In re LSC Communications, Inc., 631 B.R. 818, 826 (S.D.N.Y. 2021) (prohibiting board-appointed employees from participating in a KERP "absent a strong showing that they do not perform a significant role in management.")

Because the Debtors have failed to establish that certain of the KERP Participants are not insiders, and because the Debtors have acknowledged that the KERP is primarily for the purpose of retaining their employees, the insider employees fail to satisfy the requirements of Section 503(c)(1).

        C.        **Excluding Insiders, the KERP Does Not Satisfy Section 503(c)(3)**

The KERP also fails the more permissive test of Section 503(c)(3). In order for the bonus plan to pass muster under this Section, the movant must show that it is warranted by "the facts and circumstances of the case." 11 U.S.C. § 503(c)(3); Dana II, 358 B.R. at 576. To evaluate whether a proposed bonus plan passes muster under Section 503(c)(3), courts generally consider the following factors outlined in Dana II:

> [1]    Is there a reasonable relationship between the plan proposed and the results to be obtained, i.e., will the key employee stay for as long as it takes for the debtor to reorganize or market its assets, or, in the case of a performance incentive, is the plan calculated to achieve the desired performance?
>
> [2]    Is the cost of the plan reasonable in the context of the debtor's assets, liabilities and earning potential?
>
> [3]    Is the scope of the plan fair and reasonable; does it apply to all employees; does it discriminate unfairly?
>
> [4]    Is the plan or proposal consistent with industry standards?

[5] What were the due diligence efforts of the debtor in investigating the need for a plan; analyzing which key employees need to be incentivized; what is available; what is generally applicable in a particular industry?

[6] Did the debtor receive independent counsel in performing due diligence and in creating and authorizing the incentive compensation?

Dana II, 358 B.R. at 576-77.[8] "'[T]he court must make its own determination that the transaction will serve the interests of creditors and the debtor's estate.'" GT Advanced Tech. Inc. v. Harrington, No. 15-cv-069- LM, 2015 WL 445950 *7 (D.N.H. July 21, 2015).

Here, the Debtors have failed to satisfy four of the six factors.

1. **The KERP Does Not Establish a Relationship Between Effort and Outcome**

The Debtors have not established a nexus between the KERP and the results sought to be achieved. Even under the less rigorous standards of Sections 503(c)(3) and 363, the benchmarks for the payment of bonuses must be "difficult targets to reach." Dana II, 358 B.R. at 583. But here the KERP contains no individual or company-wide performance metrics. The only prerequisite for the two payments to be made is that the KERP Participants remain with the company through the end of a "clawback or retention period." Bonus Motion, ¶ 17. This,

---

[8] Although some courts in this district have determined that the standard under Section 503(c)(3) is no different than the "business judgment" test under Section 363(b), see In re Residential Capital, LLC, 491 B.R. 73, 84 (Bankr. S.D.N.Y. 2013), these courts and others continue to apply the factors listed by Judge Lifland in Dana II, when determining if the structure and development process of a compensation proposal fulfill the standard of Section 503(c)(3).

however, is the goal in every Chapter 11 case, and one which the KERP Participants will need to accomplish as part of their employment and fiduciary duties even in the absence of the KERP.[9]

Apart from the requirement that the KERP Participants remain with the company for a certain period of time, the KERP places no conditions on whether the participants will earn their bonuses. As noted above, they will receive 50 percent of their bonuses immediately, and the remaining 50 percent on the earlier of 12 months after the KERP's effective date or 90 days following emergence from chapter 11. Id. In other words, the first bonus payment is not contingent on whether the company consummates an asset sale or confirms a chapter 11 plan. In fact, the KERP Participants will receive half of their bonuses even if the company liquidates shortly after the hearing on the Bonus Motion. In other words, even if their continued employment confers no benefit on the estates and the creditors, the KERP Participants would be eligible to receive half of the $1.9 million earmarked for them.

### 2. There is Insufficient Evidence to Conclude That the Costs are Reasonable

The Debtors have a failed to establish whether the KERP is reasonable because there is no historical information to evaluate the proposed retention payments. The Debtors have not disclosed whether the KERP Participants have received pre-petition bonuses or whether they are eligible to receive equity awards in the future. If the Debtors' stock is still trading in the coming months, the KERP Participants may receive value from any such awards. Without further information, the reasonableness of the KERP payments cannot be completely evaluated.

---

[9] Although the Ehrlich Declaration states generally that the Debtors need their employees to maintain "an operational trading platform" or "to serve customers at the conclusion of these chapter 11 cases," (Ehrlich Declaration, ¶ 8), neither the Bonus Motion nor the Ehrlich Declaration explains what distinguishes the KERP Participants from the Debtors' other employees with respect to the company's ability to fulfill these two functions.

### 3. There is Insufficient Evidence that the KERP Does Not Discriminate Unfairly

Given the lack of specific information regarding the KERP Participants in comparison to other employees, neither parties-in-interest nor the Court can determine whether any of the other employees are performing functions comparable to employees included in the KERP. Likewise, entirely unknown is whether the KERP Participants will be retained after the consummation of the Debtors' Plan.

### 4. The Bonus Motion Provides No Basis to Conclude that the KERP is Consistent with Industry Standards

Although the filing of the Bonus Motion was followed by the filing of the Georgeson Declaration, that declaration fails to show that the KERP is "cost-effective." In fact, nothing in either the Bonus Motion or the supporting declarations provides a basis to reach that conclusion. Though the Debtors have attempted to compare the KERP to retention bonus programs in other chapter 11 cases, we still do not know whether, for example, 50 percent of the bonuses in those other cases were paid immediately, or whether they were to be paid in full regardless of the outcome of those cases.[10] Absent additional information, the Debtors cannot satisfy their burden with conclusory statements that the KERP is in line with bonus programs in other cases.

For these reasons, the Debtors have failed to establish that the KERP is justified by the facts and circumstances of this case.

---

[10] According to the Georgeson Declaration, companies offering bonuses "frequently provide for consistent installment payments (*e.g.* two installments representing 50% of the total retention award.)" Georgeson Declaration, ¶ 14. The declaration, however, does not state whether in the comparable cases the first installment is to be paid immediately, or under what conditions employees are entitled to receive the second installment. Here, as noted above, the only requirement for the payment of the first installment is that the KERP Participants remain with the company.

## CONCLUSION

**WHEREFORE,** the United States Trustee respectfully requests that the Court sustain the foregoing Objection, and grant such other and further relief as the Court may deem just and proper.

Dated: New York, New York
August 19, 2022

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, Region 2

By: */s/ Richard C. Morrissey*
Trial Attorney
201 Varick Street, Room 1006
New York, New York 10014
Tel. (212) 510-0500