Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF FILING OF REVISED BIDDING PROCEDURES

**PLEASE TAKE NOTICE** that on July 21, 2022, the above-captioned debtors and debtors

in possession (collectively, the "Debtors") filed the *Debtors' Motion Seeking Entry of an Order*

*(I) Approving the Bidding Procedures and Related Dates and Deadlines, (II) Scheduling Hearings*

*and Objection Deadlines with Respect to the Debtors' Sale, Disclosure Statement, and Plan*

*Confirmation, and (III) Granting Related Relief* [Docket No. 126] (the "Bidding Procedures

Motion").[2]

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]    Capitalized terms used herein but not otherwise defined shall have meanings ascribed to them in the Bidding Procedures Motion.

**PLEASE TAKE FURTHER NOTICE** that on August 5, 2022, the Court entered the *Order (I) Approving the Bidding Procedures and Related Dates and Deadlines, (II) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Sale, Disclosure Statement, and Plan Confirmation, and (III) Granting Related Relief* [Docket No. 248] (the "Bidding Procedures Order"). The approved bidding procedures (the "Bidding Procedures") were attached as Exhibit 1 to the Bidding Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that, since the entry of the Bidding Procedures Order, existing and potentially new bidders have requested additional time to perform diligence and make the best bid they can. The Debtors recognize the need to progress these cases swiftly but cannot do so at the expense of maximizing value. Accordingly, a modest amount of additional time is necessary to ensure value is maximized.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the original Bidding Procedures, the Debtors reserve the right to modify the Bidding Procedures, subject to the prior written consent of the Committee, which the Debtors have obtained. Given the new developments and Debtors' commitment to ensure the most value maximizing transaction is achieved, the Debtors have modified the Bidding Procedures to extend the timeline thereunder as follows:

**Sale Timeline**

| Action | Description | Original Deadline | New Deadline |
|---|---|---|---|
| Bid Deadline | The deadline by which all binding bids must be actually received pursuant to the Bidding Procedures. | August 26, 2022 at 12:00 p.m. prevailing Eastern Time | **September 6, 2022 at 12:00 p.m., prevailing Eastern Time** |
| Auction | The date and time of the Auction, if one is needed, which will be held at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022. | August 29, 2022 at 10:00 a.m. prevailing Eastern Time, if needed | **September 13, 2022 at 10:00 a.m., prevailing Eastern Time, if needed** |

| Action | Description | Original Deadline | New Deadline |
|---|---|---|---|
| Sale Objection Deadline | The deadline by which objections to the entry of an order by the Court approving the Sale must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Sale Objection Deadline"). | September 6, 2022 at 4:00 p.m. prevailing Eastern Time | **September 22, 2022 at 4:00 p.m., prevailing Eastern Time** |
| Sale Hearing | The hearing before the Court to consider approval of the successful bid or bids, pursuant to which the Debtors and the winning bidder or bidders will consummate the Sale. | September 8, 2022 at 11:00 a.m. prevailing Eastern Time | **September 29, 2022 at [●], prevailing Eastern Time, or a soon thereafter as the Debtors may be heard.** |

## Confirmation Timeline

| Action | Description | Original Deadline | New Deadline |
|---|---|---|---|
| Disclosure Statement Objection Deadline | The deadline by which objections to the Disclosure Statement must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Disclosure Statement Objection Deadline"). | September 9, 2022 at 4:00 p.m. prevailing Eastern Time | **September 22, 2022 at 4:00 p.m., prevailing Eastern Time** |
| Disclosure Statement Hearing | The date for the hearing for the Court's approval of the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code (the "Disclosure Statement Hearing"). | September 15, 2022 at 10:00 a.m. prevailing Eastern Time | **September 29, 2022 at [●], prevailing Eastern Time, or a soon thereafter as the Debtors may be heard.** |
| Solicitation Deadline | The deadline for distributing solicitation packages, including ballots, to holders of claims entitled to vote to accept or reject the Plan (the "Solicitation Deadline"). | September 26, 2022 | **October 10, 2022** |

| Action | Description | Original Deadline | New Deadline |
|---|---|---|---|
| Plan Objection and Plan Voting Deadlines | The deadline by which (a) objections to the Plan must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Plan Objection Deadline"), and (b) all ballots must be properly executed, completed, and delivered so that they are actually received by the Debtors' notice, claims, and solicitation agent (the "Plan Voting Deadline"). | October 24, 2022 at 4:00 p.m. prevailing Eastern Time | **November 8, 2022 at 4:00 p.m., prevailing Eastern Time** |
| Confirmation Hearing | The hearing before the Court to consider approval of the successful bid or bids and confirmation of the Plan (the "Confirmation Hearing"). | November 1, 2022 at [●] prevailing Eastern Time, or a soon thereafter as the Debtors may be heard. | **November 15, 2022 at [●], prevailing Eastern Time, or a soon thereafter as the Debtors may be heard.** |

The Debtors believe these limited extensions are appropriate and necessary to keep these cases progressing efficiently, while not precluding adequate evaluation of new indications of interest. The modified Bidding Procedures are attached hereto as **Exhibit A**. A redline showing changes made to the original Bidding Procedures is attached hereto as **Exhibit B**.

   **PLEASE TAKE FURTHER NOTICE** that copies of the modified Bidding Procedures and other pleadings filed in the above-captioned chapter 11 cases may be obtained free of charge by visiting the website of Stretto at http://www.cases.stretto.com/Voyager. You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein..

Dated:  August 22, 2022          */s/ Joshua A. Sussberg*
New York, New York               **KIRKLAND & ELLIS LLP**
                                 **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                 Joshua A. Sussberg, P.C.
                                 Christopher Marcus, P.C.
                                 Christine A. Okike, P.C.
                                 Allyson B. Smith (admitted *pro hac vice*)
                                 601 Lexington Avenue
                                 New York, New York 10022
                                 Telephone:    (212) 446-4800
                                 Facsimile:    (212) 446-4900
                                 Email:        jsussberg@kirkland.com
                                               cmarcus@kirkland.com
                                               christine.okike@kirkland.com
                                               allyson.smith@kirkland.com

                                 *Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Modified Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC. *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**MODIFIED BIDDING PROCEDURES FOR THE SUBMISSION, RECEIPT, AND**
**ANALYSIS OF BIDS IN CONNECTION WITH THE SALE OF THE DEBTORS**

On July 5, 2022, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

On August 5, 2022, the Bankruptcy Court entered an order [Docket No. 248] (the "Bidding Procedures Order") approving, among other things, these bidding procedures (the "Bidding Procedures"). These Bidding Procedures set forth the process by which the Debtors are authorized to solicit the highest or otherwise best bids (each, a "Bid") and conduct an auction (the "Auction") for the sale (the "Sale") of 100% of the Debtors' equity or some or all of their assets (the "Assets").

The Sale will be implemented pursuant to section 363 of the Bankruptcy Code or a chapter 11 plan of reorganization (as modified, amended, or supplemented from time to time, the "Plan").

> Copies of the Bidding Procedures Order or any other documents in the Debtors' chapter 11 cases are available upon request to Stretto. Inc., by calling (855) 473-8665 (Toll-Free) or (949) 271-6507 (International), or by visiting www.cases.stretto.com/Voyager/.

**A.    Participation Requirements.**

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in submitting a Bid (a "Potential Bidder") must deliver (unless previously delivered) to each of (i) proposed counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C. (jsussberg@kirkland.com), Christopher Marcus, P.C. (cmarcus@kirkland.com), Christine A. Okike, P.C. (christine.okike@kirkland.com), and Allyson B. Smith (allyson.smith@kirkland.com); (ii) the Debtors' proposed financial advisor and investment banker to the Debtors, Moelis & Company

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

LLC, 399 Park Avenue, 4th Floor, New York, New York 10022, Attn.: Jared Dermont (jared.dermont@moelis.com), Barak Klein (barak.klein@moelis.com), Mike DiYanni (michael.diyanni@moelis.com), and Brian Tichenor (brian.tichenor@moelis.com); and (iii) proposed counsel to the Committee, McDermott Will & Emery LLP, One Vanderbilt Avenue, New York, New York 10017, Attn: Darren Azman (dazman@mwe.com) (collectively, the "Notice Parties"):

(i)     a written disclosure of the identity of each entity that will be bidding for 100% of the Debtors' equity or Assets[2] or otherwise participating in connection with such Bid;

(ii)    an executed confidentiality agreement on terms reasonably acceptable to the Debtors (the "Confidentiality Agreement"), to the extent not already executed;

(iii)   a non-binding description of the Assets in which such Potential Bidder may be interested in placing a Bid and a non-binding estimate of the purchase price to be paid, with reasonable specificity, including treatment for the Account Holder Claims;[3] and

(iv)    documents provided by the Potential Bidder evidencing its financial capacity to close a proposed transaction, which may include, without limitation, current unaudited or verified financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach), the adequacy of which will be assessed by the Debtors and their advisors, in their reasonable discretion and in consultation with the Committee and their advisors ((i) through (iv), collectively, the "Bid Documents").

As promptly as practicable, but in no event later than three (3) business days after a Potential Bidder delivers the Bid Documents, the Debtors will determine in their reasonable business judgment, after consultation with the Committee, whether such Potential Bidder has submitted acceptable Bid Documents (any such Potential Bidder being referred to as an "Acceptable Bidder"), and the Debtors will inform such Potential Bidder regarding whether such Potential Bidder is an Acceptable Bidder. In the event that the Debtors deem that a Potential Bidder has not met the requirements for being deemed an Acceptable Bidder, the Debtors must promptly inform the Committee of such determination (and the reasons therefor).

---

[2]    Capitalized terms used but not defined herein have the meanings given to them in the *Debtors' Motion Seeking Entry of an Order (I) Approving the Bidding Procedures and Related Dates and Deadlines, (II) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Sale, Disclosure Statement, and Plan Confirmation, and (III) Granting Related Relief* [Docket No. 126].

[3]    "Account Holder Claims" shall have the meaning ascribed to such term in the *Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 17].

**B.**    **Due Diligence.**

(i)    <u>**Access to Due Diligence.**</u>

Only Acceptable Bidders will be eligible to receive due diligence and access to additional non-public information regarding the Assets and the Debtors.  The Debtors will provide to each Acceptable Bidder reasonable due diligence information concerning those Assets that are the subject of such Acceptable Bidder's Bid (or such other Assets if the list provided in accordance with A.iii above is amended or modified), as requested by such Acceptable Bidder in writing, as soon as reasonably practicable after such request, but shall only extend to those Assets (or such other Assets if the list provided in accordance with A.iii above is amended or modified) that are the subject of such Acceptable Bidder's Bid.  The Debtors will post substantially all written due diligence provided to any Acceptable Bidder to the Debtors' electronic data room.  The due diligence period will end on the Bid Deadline (as defined herein), after which the Debtors will have no obligation to furnish any due diligence information, unless otherwise deemed reasonably appropriate by the Debtors after consultation with the Committee.

In connection with the provision of due diligence information to Acceptable Bidders, the Debtors will not furnish any confidential information relating to the Debtors, the Debtors' Assets or liabilities, or the Sale to any person other than an Acceptable Bidder or such Acceptable Bidder's duly-authorized representatives, in each case, to the extent provided in the applicable Confidentiality Agreement and only to the extent of the Assets that are the subject of such Acceptable Bidder's Bid.

The Debtors and their financial advisors will coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders; *provided* that the Debtors may decline to provide such information to Acceptable Bidders who, in the Debtors' reasonable business judgment and after consultation with the Committee, have not established that such Acceptable Bidders intend in good faith to, or have the capacity to, consummate their Bid. No conditions relating to the completion of due diligence will be permitted to exist after the Bid Deadline (as defined herein).

The Debtors also reserve the right in their reasonable business judgment, after consultation with the Committee, to withhold any diligence materials that the Debtors reasonably determine are sensitive, proprietary, or otherwise not appropriate for disclosure to an Acceptable Bidder who the Debtors reasonably determine is a competitor of the Debtors or is affiliated with any competitor of the Debtors.  Neither the Debtors nor their representatives will be obligated to furnish information of any kind whatsoever to any person that is not determined to be an Acceptable Bidder.

Each Acceptable Bidder will be deemed to acknowledge and represent that it:  (a) has had an opportunity to conduct any and all due diligence regarding the Debtors' Assets and liabilities that are the subject of the Auction to the extent of the Assets and liabilities that are the subject of their Bid prior to making any such Bids; (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise regarding the Debtors'

Assets or liabilities, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures. Neither the Debtors nor any of their employees, officers, directors, affiliates, subsidiaries, representatives, agents, advisors, or professionals are responsible for, and will bear no liability with respect to, any information obtained by Acceptable Bidders in connection with the Sale.

---

The Debtors have designated Moelis & Company LLC, 399 Park Avenue, 4th Floor, New York, New York 10022, Attn: Jared Dermont (jared.dermont@moelis.com), Mike DiYanni (michael.diyanni@moelis.com), Barak Klein (barak.klein@moelis.com, Brian Tichenor (brian.tichenor@moelis.com), Mike Mestayer (michael.mestayer@moelis.com) or Cullen Murphy (cullen.murphy@moelis.com), to coordinate all reasonable requests for additional information and due diligence access.

---

(ii)   **No Communications Among Acceptable Bidders.**

There must be no communications between and amongst Acceptable Bidders, unless the Debtors, after consultation with the Committee, have previously authorized such communication in writing. The Debtors reserve the right, in their reasonable business judgment, after consultation with the Committee, to disqualify any Acceptable Bidders that have communications between and amongst themselves; *provided* that if any Acceptable Bidder that believes it has been wrongfully disqualified hereunder may file an emergency motion with the Bankruptcy Court seeking the reversal of such disqualification.

**C.   Stalking Horse Bidders and Bid Protections.**

To the extent the Debtors, in an exercise of their business judgment and following consultation with the Committee, seek to:  (a) select one or more Acceptable Bidders to act as stalking horse bidders in connection with the Auction (each, a "Stalking Horse Bidder"); and (b) in connection with any stalking horse agreement with a Stalking Horse Bidder (i) provide a breakup fee (the "Breakup Fee"), and/or (ii) agree to reimburse reasonable and documented out-of-pocket fees and expenses (the "Expense Reimbursement," and together with the Breakup Fee, the "Bid Protections"), the Debtors will file a notice on the docket (a "Stalking Horse Notice") identifying the Stalking Horse Bidder, the material terms of the Stalking Horse Bid (including the purchase price, the Assets subject to such Stalking Horse Bid, and the treatment of Account Holder Claims), and the amount and terms of any Bid Protections proposed to be offered to the Stalking Horse Bidder, and setting a hearing before the Court for a date that is after three (3) business days after the filing of the Stalking Horse Notice (the "Stalking Horse Hearing"). All parties-in-interest will have the opportunity to object to the Stalking Horse Bidder and/or the Bid Protections at the Stalking Horse Hearing.

**D.   Bid Requirements.**

To be eligible to participate in the Auction, an Acceptable Bidder must deliver to the Debtors and their advisors, a written, irrevocable offer that must be determined by the Debtors, in their business judgment, after consultation with the Committee, to satisfy each of the following conditions (collectively, the "Bid Requirements"):

(i)  **Purpose**.  Each Acceptable Bidder must (a) state that the Bid includes an offer by the Acceptable Bidder to acquire the Debtors' equity and/or some or all of the Assets and identify such Assets with reasonable specificity and (b) if the Acceptable Bidder proposes to consummate the transaction through a Plan, include a Plan that provides for the treatment of claims against the Debtors and the means for implementation of the Plan.

(ii)  **Transaction Structure and Purchase Price**.  Each Bid that includes an offer by the Acceptable Bidder to acquire the Debtors' equity and/or some or all of the Assets must: (a) clearly set forth the purchase price to be paid for the Assets (the "Purchase Price") and must indicate the source of consideration, including funding commitments, and confirm that such consideration is not subject to any contingencies and (b) include a detailed sources and uses schedule.  Each Bid shall also provide for appropriate treatment for the Account Holder Claims as provided in the Plan.

(iii)  **Bid Deposit**.  Each Bid contemplating an acquisition of Assets, or Plan that contemplates additional capital, must be accompanied by a cash deposit equal to the greater of $5,000,000.00 and ten percent (10%) of non-coin related value in cash (the "Good Faith Deposit"), which will be held in an escrow account to be identified and established pursuant to the authority granted by the order authorizing the Debtors to maintain and operate their bank accounts, by wire transfer or certified or cashier's check.

(iv)  **Committed Financing**.  To the extent that a Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate the Sale or Plan transaction(s) set forth in its Bid with cash on hand, each Bid must include committed financing documented to the Debtors' satisfaction, after consultation with the Committee, that demonstrates that the Acceptable Bidder has received sufficient debt and/or equity funding commitments to satisfy the Acceptable Bidder's Purchase Price and/or other obligations under its Bid.  Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtors in their sole discretion, after consultation with the Committee.

(v)  **Good Faith Offer**.  Each Bid must constitute a good faith, bona fide offer to purchase all or substantially all the Debtors' equity or Assets and in the case of a Plan, provide for the treatment of claims against the Debtors and the means for implementation of the Plan. Bids may be submitted for less than substantially all assets, and the Debtors may consider partial bids in their reasonable business judgment (including if multiple bids taken together would result in a sale of substantially all the Debtors' assets) following consultation with the Committee.

(vi)  **Marked Agreement**.  Each Bid must be accompanied by clean and duly executed transaction documents including, at a minimum, a chapter 11 plan or a draft asset purchase agreement, the form of which will be provided to any Acceptable Bidder

prior to the Bid Deadline (as defined herein), including the exhibits and schedules related thereto and any related material documents integral to such Bid pursuant to which the Acceptable Bidder proposes to effectuate the Sale, along with copies that are marked to reflect any amendments and modifications from the form chapter 11 plan or asset purchase agreement provided, which amendments and modifications may not be materially more burdensome or otherwise materially inconsistent with these Bidding Procedures. The Debtors, in their reasonable business judgment following consultation with the Committee, will determine whether any such amendments and modifications are materially more burdensome.

(vii)  **No Contingencies**. A Bid must include confirmation that such Bid is not conditioned on any contingency, including, among others, on obtaining any of the following (a) financing, (b) shareholder, board of directors, or other approval, and/or (c) the outcome or completion of a due diligence review by the Acceptable Bidder.

(viii)  **Binding and Irrevocable**. An Acceptable Bidder's Bid must include confirmation that the Bid is irrevocable unless and until the Debtors accept a higher Bid and such Acceptable Bidder is not selected as the Back-Up Bidder (as defined herein).

(ix)  **Joint Bids**. The Debtors will be authorized to approve joint Bids in their reasonable discretion, after consultation with the Committee, on a case-by-case basis.

(x)  **Adequate Assurance Information**. Each Bid must be accompanied by sufficient and adequate financial and other information (the "Adequate Assurance Information") to demonstrate, to the reasonable satisfaction of the Debtors after consultation with the Committee, that such Acceptable Bidder (a) has the financial wherewithal and ability to consummate the acquisition of the Assets and/or other transactions contemplated by the Bid (the "Closing"), and (b) can provide adequate assurance of future performance in connection with the proposed transaction. The Bid must also identify a contact person that parties may contact to obtain additional Adequate Assurance Information.

(xi)  **Identity & Corporate Authority**. Each Bid must fully disclose the identity of each entity that will be participating in connection with such Bid (including any equity owners or sponsors, if the purchaser is an entity formed for the purpose of consummating the acquisition of the Assets), and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder is legally empowered, by power of attorney or otherwise, to complete the transactions on the terms contemplated by the parties. A Bid must also fully disclose any connections or agreements with the Debtors, any known, potential, prospective bidder or Qualified Bidder (as defined herein), or any officer, director, equity security holder, or other insider or affiliate of the Debtors.

(xii)  **Authorization**. Each Bid must contain evidence that the Acceptable Bidder has obtained authorization or approval from its board of directors (or a comparable governing body reasonably acceptable to the Debtors) with respect to the

6

submission of its Bid and the consummation of the transactions contemplated in such Bid.

(xiii) **No Fees**.  Each Acceptable Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed transaction, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code; *provided* that the Debtors are authorized in their discretion, after consultation with the Committee, to provide the Bid Protections to one or more Stalking Horse Bidders solely in accordance with these Bidding Procedures.

(xiv) **Adherence to Bidding Procedures**.  By submitting its Bid, each Acceptable Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

(xv) **Regulatory Approvals and Covenants**.  A Bid must set forth each regulatory and third-party approval required for the Acceptable Bidder to consummate the applicable Sale, if any, and the time period within which the Acceptable Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty (30) days following execution and delivery of the Plan and/or asset purchase agreement, those actions the Acceptable Bidder will take to ensure receipt of such approvals as promptly as possible).

(xvi) **As-Is, Where-Is**.  Each Bid must include a written acknowledgement and representation that the Acceptable Bidder (a) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid, and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Acceptable Bidder's proposed purchase and sale agreement for the Assets.

(xvii) **Time Frame for Closing**.  A Bid by an Acceptable Bidder must identify a likely date (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid (as defined herein), within a time frame reasonably acceptable to the Debtors after consultation with the Committee.

(xviii) **Consent to Jurisdiction**.  The Acceptable Bidder must submit to the jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bidding Procedures, the Plan, the Sale documents, and the Closing, as applicable.

The Debtors shall promptly (but in no event later than 24 hours following receipt) deliver any and all bids received to the Committee's advisors.  Bids fulfilling all of the preceding requirements, as determined by the Debtors and their advisors, after consultation with the Committee and its advisors, will be deemed to be "Qualified Bids," and those parties submitting Qualified Bids will be deemed to be "Qualified Bidders."  The Debtors reserve the right, after consultation with the Committee, to work with any Acceptable Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid.  The Debtors may accept a single Qualified Bid or multiple Bids for non-overlapping material portions of the Debtors' Assets such that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders will be treated as a single Qualified Bidder for purposes of the Auction; *provided* that the Debtors also reserve the right, after consultation with the Committee, to conduct more than one Auction with respect to non-overlapping material portions of the Debtors' Assets).

Within two (2) business days after the Bid Deadline (as defined herein), the Debtors and their advisors, after consultation with the Committee and its advisors, will determine in their reasonable business judgment, which Acceptable Bidders are Qualified Bidders and will notify the Acceptable Bidders whether Bids submitted constitute, alone or together with other Bids, Qualified Bids so as to enable such Qualified Bidders to bid at the Auction.  Any Bid that is not deemed a Qualified Bid will not be considered by the Debtors.  For the avoidance of doubt, any Acceptable Bidders designated as Stalking Horse Bidders by the Debtors and in accordance with these Bidding Procedures will be deemed to be Qualified Bidders, and any stalking horse plan and/or asset purchase agreement submitted by such Stalking Horse Bidders will be deemed Qualified Bids, which qualify such Stalking Horse Bidders to participate in the Auction as Qualified Bidders.

**Bids must be sent to the Notice Parties so as to be <u>actually</u> <u>received</u> no later than September 6, 2022, at 12:00 p.m., prevailing Eastern Time (the "<u>Bid Deadline</u>").**

**E.    Evaluation of Qualified Bids.**

Prior to the Auction, the Debtors and their advisors, with consultation of the Committee and its advisors, will evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtors' reasonable business judgment, after consultation with the Committee, the highest or otherwise best Bid (the "Initial Minimum Overbid").  For the avoidance of doubt, the Debtors may select more than one Qualified Bid to collectively serve as the Initial Minimum Overbid if each such Qualified Bid contemplates the purchase of different Assets.  In making such determination, the Debtors will take into account, among other things, (i) the amount of the Qualified Bid, (ii) the impact on customers, vendors, and employees, (iii) the certainty of a Qualified Bid leading to a confirmed plan, (iv) the timing associated with consummating such Qualified Bid, (v) the ability of the Qualified Bidder to obtain appropriate regulatory approvals, (vi) the execution risk attendant to any submitted Bids, and (vii) any other factors deemed relevant by the Debtors, after consultation with the Committee.  Within 24 hours of such determination, but in no event later than the start of

8

the Auction, the Debtors will distribute copies of the Initial Minimum Overbid to each Qualified Bidder who has submitted a Qualified Bid.

If any Bid is determined by the Debtors not to be a Qualified Bid, the Debtors will refund such Acceptable Bidder's Good Faith Deposit and all accumulated interest thereon on or within five (5) business days after the Bid Deadline.

**F.     No Qualified Bids.**

If no Qualified Bids are received by the Bid Deadline, then the Debtors will promptly file a notice on the docket canceling the Auction.

**G.     Auction.**

If one or more Qualified Bids is received by the Bid Deadline, the Debtors will conduct the Auction with respect to the Debtors' Assets.  For the avoidance of doubt, the Debtors, after consultation with the Committee, may also conduct more than one Auction with respect to non-overlapping material portions of the Debtors' Assets.  The Auction will commence on September 13, 2022, at 10:00 a.m., prevailing Eastern Time, at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, or such later time or other place (including virtually) as the Debtors will timely notify any Stalking Horse Bidders and all other Qualified Bidders.

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

(i)     the Auction will be conducted openly;

(ii)    only the Qualified Bidders, including any Stalking Horse Bidders, will be entitled to bid at the Auction;

(iii)   the Qualified Bidders, including any Stalking Horse Bidders, must appear in person or through duly-authorized representatives at the Auction (except to the extent that the Auction is held virtually, in which case such Qualified Bidders must appear virtually);

(iv)    except to the extent agreed upon by the Debtors, after consultation with the Committee, only such authorized representatives of each of the Qualified Bidders (including any Stalking Horse Bidders), the Debtors, the Committee, and their respective advisors will be permitted to attend the Auction;

(v)     bidding at the Auction will begin at the Initial Minimum Overbid;

(vi)    subsequent Bids at the Auction, including any Bids by any Stalking Horse Bidder, must be made in minimum increments (which may include cash or non-cash consideration) in an amount that the Debtors determine in their reasonable business judgment after consultation with the Committee (and in amounts as announced to all Qualified Bidders prior to the commencement of the Auction), after payment of

the Bid Protections to any Stalking Horse Bidders, if applicable; the Debtors will estimate the value of non-cash consideration offered, if applicable, in their business judgment, after consultation with the Committee;

(vii)    each Qualified Bidder will be informed of the terms of the previous Bids;

(viii)   the bidding will be transcribed to ensure an accurate recording of the bidding at the Auction;

(ix)     each Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the Sale;

(x)      the Auction will not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an overbid at the Auction to the then prevailing highest Bid, subject to the Debtors' right, after consultation with the Committee, to require last and final Bids to be submitted on a "blind" basis;

(xi)     the Debtors reserve the right, in their reasonable business judgment, after consultation with the Committee, to adjourn the Auction one or more times to, among other things, (a) facilitate discussions between the Debtors and Qualified Bidders, (b) allow Qualified Bidders to consider how they wish to proceed, and (c) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing amount; and

(xii)    the Auction will be governed by such other Auction Procedures as may be announced by the Debtors and their advisors, after consultation with the Committee, from time to time on the record at the Auction; *provided* that such other Auction Procedures are (a) not inconsistent with the Bidding Procedures Order, these Bidding Procedures, the Bankruptcy Code, or any other order of the Bankruptcy Court, (b) disclosed orally or in writing to all Qualified Bidders, and (c) reasonably determined by the Debtors, in good faith, to further the goal of attaining the highest or otherwise best offer.

For the avoidance of doubt, nothing in the Auction Procedures will prevent the Debtors from exercising their respective fiduciary duties under applicable law (as reasonably determined in good faith by the Debtors, after consultation with the Committee).

## H.    Acceptance of the Successful Bid or Successful Bids.

Upon the conclusion of the Auction (if such Auction is conducted), the Debtors, in the exercise of their reasonable, good-faith business judgment, after consultation with the Committee, will identify the highest or otherwise best Qualified Bid or Qualified Bids (each, a "Successful Bid"), which will be determined by considering, among other things, (a) the type and amount of Assets sought to be purchased in the Bid or Bids, (b) the total expected consideration to be received by the Debtors, (c) the likelihood of the Qualified Bidder or Qualified Bidders' ability to close a

transaction and the timing thereof (including any anticipated delays to Closing and the cost to the Debtors of such delays), (d) the expected net benefit to the estates, including treatment of the Account Holder Claims (e) the impact on vendors, customers, and employees, and (f) any other criteria as may be considered by the Debtors and the Committee in their reasonable, good-faith business judgment. For the avoidance of doubt, the Debtors, after consultation with the Committee, may select more than one Qualified Bid to collectively serve as a Successful Bid if each such Qualified Bid contemplates the purchase of different Assets. The Qualified Bidder or Qualified Bidders having submitted the Successful Bid or Successful Bids will be deemed the "Winning Bidder" or "Winning Bidders," as applicable. The Winning Bidder or Winning Bidders and the Debtors must, as soon as commercially reasonably practicable, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which such Successful Bid or Successful Bids were made.

The Debtors will present the results of the Auction to the Bankruptcy Court at the Sale Hearing or Confirmation Hearing (each as defined herein), at which certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that (a) the Auction was conducted, and the Winning Bidder or Winning Bidders were selected, in accordance with these Bidding Procedures, (b) the Auction was fair in substance and procedure, and (c) consummation of the Successful Bid or Successful Bids will provide the highest or otherwise best value for the Debtors' Assets and is in the best interests of the Debtors' estates.

If an Auction is held, the Debtors will be deemed to have accepted a Qualified Bid only when (a) such Qualified Bid is declared a Successful Bid at the Auction, and (b) definitive documentation has been executed in respect thereof. Such acceptance is conditioned upon approval by the Bankruptcy Court of the Successful Bid or Successful Bids and entry of an order approving such Successful Bid or Successful Bids (in the case of a sale under section 363 of the Bankruptcy Code, the "Sale Order" or in the case of a sale under a chapter 11 plan, the "Confirmation Order").

## I.    Sale Hearing.

In the event a transaction is consummated pursuant to section 363 of the Bankruptcy Code, a hearing before the Bankruptcy Court to consider approval of the Successful Bid or Successful Bids (the "Sale Hearing"), pursuant to which the Debtors and the Winning Bidder or Winning Bidders will consummate the Sale, will be held on September 29, 2022, at 11:00 a.m., prevailing Eastern Time, before the Honorable Michael E. Wiles, United States Bankruptcy Judge for the Bankruptcy Court for the Southern District of New York at One Bowling Green, New York, New York 10004.

**The Sale Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party.**

At the Sale Hearing, the Debtors will present the Successful Bid or Successful Bids to the Bankruptcy Court for approval.

## J.    Disclosure Statement Hearing.

On August 12, 2022, the Debtors filed the *Disclosure Statement Relating to the First Amended Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 288] and will seek a hearing before the Bankruptcy Court to consider approval of the adequacy of the Disclosure Statement, solicitation materials, and scheduling of dates related to confirmation of a Plan (the "Disclosure Statement Hearing") on September 29, 2022, before the Honorable Michael E. Wiles, United States Bankruptcy Judge for the Bankruptcy Court for the Southern District of New York, or otherwise in accordance with any scheduling orders entered by the Bankruptcy Court relating to confirmation of the Plan or approval of any disclosure statement related thereto.  The order approving the Disclosure Statement will include the objection and voting deadlines with respect to approval of the Disclosure Statement and confirmation of the Plan.

**The Disclosure Statement Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Disclosure Statement Hearing.  No further notice of any such continuance will be required to be provided to any party.**

## K.    Confirmation Hearing.

The Debtors will seek a hearing before the Bankruptcy Court to consider confirmation of the Plan (the "Confirmation Hearing") on November 15, 2022, before the Honorable Michael E. Wiles, United States Bankruptcy Judge for the Bankruptcy Court for the Southern District of New York, or otherwise in accordance with any scheduling orders entered by the Bankruptcy Court relating to confirmation of the Plan.

**The Confirmation Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Confirmation Hearing.  No further notice of any such continuance will be required to be provided to any party.**

At the Confirmation Hearing, the Debtors will present the Plan, which will incorporate the terms of the Successful Bid or Successful Bids, to the Bankruptcy Court for confirmation.

## L.    Designation of Back-Up Bidder or Back-Up Bidders.

If for any reason the Winning Bidder or Winning Bidders fail to consummate the Qualified Bid or Qualified Bids within the time permitted after the entry of the Sale Order approving the Sale to the Winning Bidder or Winning Bidders, then the Qualified Bidder or Qualified Bidders with the next-highest or otherwise second-best Bid or Bids (each, a "Back-Up Bidder"), as determined by the Debtors after consultation with their advisors and the Committee and its advisors, at the conclusion of the Auction and announced at that time to all the Qualified Bidders participating therein, will automatically be deemed to have submitted the highest or otherwise best Bid or Bids (each, a "Back-Up Bid"), and the Debtors will be authorized, but not required, to consummate the transaction pursuant to the Back-Up Bid or Back-Up Bids as soon as is commercially reasonable without further order of the Bankruptcy Court upon at least 24 hours advance notice, which notice will be filed with the Bankruptcy Court.  Upon designation of the Back-Up Bidder or Back-Up Bidders at the Auction, the Back-Up Bid or Back-Up Bids must

remain open until the Closing of the Successful Bid or Successful Bids, as applicable, notwithstanding any outside date set forth in such Back-Up Bidder or Back-Up Bidders' proposed purchase agreement or chapter 11 plan.

**M.**    **Return of Good Faith Deposit to Qualified Bidders that Submit Qualified Bids.**

The Good Faith Deposit of the Winning Bidder or Winning Bidders will, upon consummation of the Successful Bid or Successful Bids, become property of the Debtors' estates and be credited to the portion of the Purchase Price. If the Winning Bidder or Winning Bidders (or Back-Up Bidder or Back-Up Bidders, if applicable) fails to consummate the Successful Bid or Successful Bids (or Back-Up Bid or Back-Up Bids, if applicable), then the Good Faith Deposit of such Winning Bidder or Winning Bidders (or Back-Up Bidder or Back-Up Bidders, if applicable) will be irrevocably forfeited to the Debtors and may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors.

The Good Faith Deposit of any unsuccessful Qualified Bidders (except for the Back-Up Bidder or Back-Up Bidders and any Stalking Horse Bidders) will be returned within five (5) business days after consummation of the Sale or upon the permanent withdrawal of the proposed Sale. The Good Faith Deposit of the Back-Up Bidder or Back-Up Bidders, if any, will be returned to such Back-Up Bidder or Back-Up Bidders no later than five (5) business days after the Closing with the Winning Bidder or Winning Bidders. The return of any Good Faith Deposit of any Stalking Horse Bidders will be subject to the terms of such Stalking Horse Bidders' chapter 11 plan or asset purchase agreement, as applicable.

All deposits shall be held in escrow and at no time shall be deemed property of the Debtors' estates absent further order of the Bankruptcy Court.

**N.**    **Reservation of Rights.**

Subject to prior written consent of the Committee or further order of the Bankruptcy Court, the Debtors, reserve their rights to modify these Bidding Procedures (including the deadlines in these Bidding Procedures and the Bidding Procedures Order) in good faith, to further the goal of attaining the highest or otherwise best offer, or impose, at or prior to the Auction, additional terms and conditions on the Sale. The Debtors shall provide notice of any such modification to any Qualified Bidder, including any Stalking Horse Bidders. Notwithstanding anything to the contrary herein, the Debtors, after consultation with the Committee, may elect to consummate the Sale under section 363(f) of the Bankruptcy Code as opposed to pursuant to the Plan with the Winning Bidder or Winning Bidders, but, for the avoidance of doubt, the Debtors prefer that the Sale be accomplished through the Plan.

**O.**    **Consent to Jurisdiction.**

All Qualified Bidders at the Auction will be deemed to have consented to the jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Sale, the Auction, the construction and enforcement of these Bidding Procedures, the Bid Requirements, and/or the Bid Documents, as applicable.

Any parties raising a dispute relating to these Bidding Procedures must request that such dispute be heard by the Bankruptcy Court on an expedited basis.

**P.    Fiduciary Out.**

Nothing in these Bidding Procedures will require the board of directors, board of managers, or such similar governing body of a Debtor or non-debtor affiliate to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent such board of directors, board of managers, or such similar governing body reasonably determines in good faith, after consultation with the Committee, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law.

**Q.    Sale Is As Is/Where Is.**

The Assets sold pursuant to these Bidding Procedures will be conveyed at the Closing in their then-present condition, "**as is, with all faults, and without any warranty whatsoever, express or implied.**"

\* \* \* \* \*

## **Exhibit B**

**Redline**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————————————— )
In re:                                            )        Chapter 11
                                                  )
VOYAGER DIGITAL HOLDINGS, INC. *et al.*,[1]     )        Case No. 22-10943 (MEW)
                                                  )
                        Debtors.                  )        (Jointly Administered)
————————————————————————— )

### MODIFIED BIDDING PROCEDURES FOR THE SUBMISSION, RECEIPT, AND ANALYSIS OF BIDS IN CONNECTION WITH THE SALE OF THE DEBTORS

On July 5, 2022, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

On [ ]August 5, 2022, the Bankruptcy Court entered an order [Docket No. [ ]248] (the "Bidding Procedures Order") approving, among other things, these bidding procedures (the "Bidding Procedures"). These Bidding Procedures set forth the process by which the Debtors are authorized to solicit the highest or otherwise best bids (each, a "Bid") and conduct an auction (the "Auction") for the sale (the "Sale") of 100% of the Debtors' equity or some or all of their assets (the "Assets").

The Sale will be implemented pursuant to section 363 of the Bankruptcy Code or a chapter 11 plan of reorganization (as modified, amended, or supplemented from time to time, the "Plan").

---

Copies of the Bidding Procedures Order or any other documents in the Debtors' chapter 11 cases are available upon request to Stretto. Inc., by calling (855) 473-8665 (Toll-Free) or (949) 271-6507 (International), or by visiting www.cases.stretto.com/Voyager/.

---

**A.      Participation Requirements.**

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in submitting a Bid (a "Potential Bidder") must deliver (unless previously delivered) to each of (i) proposed counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

(jsussberg@kirkland.com), Christopher Marcus, P.C. (cmarcus@kirkland.com), Christine A. Okike, P.C. (christine.okike@kirkland.com), and Allyson B. Smith (allyson.smith@kirkland.com); (ii) the Debtors' proposed financial advisor and investment banker to the Debtors, Moelis & Company LLC, 399 Park Avenue, 4th Floor, New York, New York 10022, Attn.: Jared Dermont (jared.dermont@moelis.com), Barak Klein (barak.klein@moelis.com), Mike DiYanni (michael.diyanni@moelis.com), and Brian Tichenor (brian.tichenor@moelis.com); and (iii) proposed counsel to the Committee, McDermott Will & Emery LLP, One Vanderbilt Avenue, New York, New York 10017, Attn: Darren Azman (dazman@mwe.com) (collectively, the "Notice Parties"):

> (i)     a written disclosure of the identity of each entity that will be bidding for 100% of the Debtors' equity or Assets[2] or otherwise participating in connection with such Bid;

> (ii)    an executed confidentiality agreement on terms reasonably acceptable to the Debtors (the "Confidentiality Agreement"), to the extent not already executed;

> (iii)   a non-binding description of the Assets in which such Potential Bidder may be interested in placing a Bid and a non-binding estimate of the purchase price to be paid, with reasonable specificity, including treatment for the Account Holder Claims;[3] and

> (iv)    documents provided by the Potential Bidder evidencing its financial capacity to close a proposed transaction, which may include, without limitation, current unaudited or verified financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach), the adequacy of which will be assessed by the Debtors and their advisors, in their reasonable discretion and in consultation with the Committee and their advisors ((i) through (iv), collectively, the "Bid Documents").

As promptly as practicable, but in no event later than three (3) business days after a Potential Bidder delivers the Bid Documents, the Debtors will determine in their reasonable business judgment, after consultation with the Committee, whether such Potential Bidder has submitted acceptable Bid Documents (any such Potential Bidder being referred to as an "Acceptable Bidder"), and the Debtors will inform such Potential Bidder regarding whether such Potential Bidder is an Acceptable Bidder. In the event that the Debtors deem that a Potential

---

[2]    Capitalized terms used but not defined herein have the meanings given to them in the *Debtors' Motion Seeking Entry of an Order (I) Approving the Bidding Procedures and Related Dates and Deadlines, (II) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Sale, Disclosure Statement, and Plan Confirmation, and (III) Granting Related Relief* [Docket No. 126].

[3]    "Account Holder Claims" shall have the meaning ascribed to such term in the *Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 17].

2

Bidder has not met the requirements for being deemed an Acceptable Bidder, the Debtors must promptly inform the Committee of such determination (and the reasons therefor).

**B.    Due Diligence.**

(i)    **Access to Due Diligence.**

Only Acceptable Bidders will be eligible to receive due diligence and access to additional non-public information regarding the Assets and the Debtors. The Debtors will provide to each Acceptable Bidder reasonable due diligence information concerning those Assets that are the subject of such Acceptable Bidder's Bid (or such other Assets if the list provided in accordance with A.iii above is amended or modified), as requested by such Acceptable Bidder in writing, as soon as reasonably practicable after such request, but shall only extend to those Assets (or such other Assets if the list provided in accordance with A.iii above is amended or modified) that are the subject of such Acceptable Bidder's Bid. The Debtors will post substantially all written due diligence provided to any Acceptable Bidder to the Debtors' electronic data room. The due diligence period will end on the Bid Deadline (as defined herein), after which the Debtors will have no obligation to furnish any due diligence information, unless otherwise deemed reasonably appropriate by the Debtors after consultation with the Committee.

In connection with the provision of due diligence information to Acceptable Bidders, the Debtors will not furnish any confidential information relating to the Debtors, the Debtors' Assets or liabilities, or the Sale to any person other than an Acceptable Bidder or such Acceptable Bidder's duly-authorized representatives, in each case, to the extent provided in the applicable Confidentiality Agreement and only to the extent of the Assets that are the subject of such Acceptable Bidder's Bid.

The Debtors and their financial advisors will coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders; *provided* that the Debtors may decline to provide such information to Acceptable Bidders who, in the Debtors' reasonable business judgment and after consultation with the Committee, have not established that such Acceptable Bidders intend in good faith to, or have the capacity to, consummate their Bid. No conditions relating to the completion of due diligence will be permitted to exist after the Bid Deadline (as defined herein).

The Debtors also reserve the right in their reasonable business judgment, after consultation with the Committee, to withhold any diligence materials that the Debtors reasonably determine are sensitive, proprietary, or otherwise not appropriate for disclosure to an Acceptable Bidder who the Debtors reasonably determine is a competitor of the Debtors or is affiliated with any competitor of the Debtors. Neither the Debtors nor their representatives will be obligated to furnish information of any kind whatsoever to any person that is not determined to be an Acceptable Bidder.

Each Acceptable Bidder will be deemed to acknowledge and represent that it: (a) has had an opportunity to conduct any and all due diligence regarding the Debtors' Assets and liabilities that are the subject of the Auction to the extent of the Assets and liabilities that are the subject of their Bid prior to making any such Bids; (b) has relied solely upon its own independent review,

3

investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise regarding the Debtors' Assets or liabilities, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures.  Neither the Debtors nor any of their employees, officers, directors, affiliates, subsidiaries, representatives, agents, advisors, or professionals are responsible for, and will bear no liability with respect to, any information obtained by Acceptable Bidders in connection with the Sale.

---

The Debtors have designated Moelis & Company LLC, 399 Park Avenue, 4th Floor, New York, New York 10022, Attn: Jared Dermont (jared.dermont@moelis.com), Mike DiYanni (michael.diyanni@moelis.com), Barak Klein (barak.klein@moelis.com, Brian Tichenor (brian.tichenor@moelis.com), Mike Mestayer (michael.mestayer@moelis.com) or Cullen Murphy (cullen.murphy@moelis.com), to coordinate all reasonable requests for additional information and due diligence access.

---

(ii)    **No Communications Among Acceptable Bidders.**

There must be no communications between and amongst Acceptable Bidders, unless the Debtors, after consultation with the Committee, have previously authorized such communication in writing.  The Debtors reserve the right, in their reasonable business judgment, after consultation with the Committee, to disqualify any Acceptable Bidders that have communications between and amongst themselves; *provided* that if any Acceptable Bidder that believes it has been wrongfully disqualified hereunder may file an emergency motion with the Bankruptcy Court seeking the reversal of such disqualification.

**C.    Stalking Horse Bidders and Bid Protections.**

To the extent the Debtors, in an exercise of their business judgment and following consultation with the Committee, seek to:  (a) select one or more Acceptable Bidders to act as stalking horse bidders in connection with the Auction (each, a "Stalking Horse Bidder"); and (b) in connection with any stalking horse agreement with a Stalking Horse Bidder (i) provide a breakup fee (the "Breakup Fee"), and/or (ii) agree to reimburse reasonable and documented out-of-pocket fees and expenses (the "Expense Reimbursement," and together with the Breakup Fee, the "Bid Protections"), the Debtors will file a notice on the docket (a "Stalking Horse Notice") identifying the Stalking Horse Bidder, the material terms of the Stalking Horse Bid (including the purchase price, the Assets subject to such Stalking Horse Bid, and the treatment of Account Holder Claims), and the amount and terms of any Bid Protections proposed to be offered to the Stalking Horse Bidder, and setting a hearing before the Court for a date that is after three (3) business days after the filing of the Stalking Horse Notice (the "Stalking Horse Hearing").  All parties-in-interest will have the opportunity to object to the Stalking Horse Bidder and/or the Bid Protections at the Stalking Horse Hearing.

**D.    Bid Requirements.**

To be eligible to participate in the Auction, an Acceptable Bidder must deliver to the Debtors and their advisors, a written, irrevocable offer that must be determined by the Debtors,

4

in their business judgment, after consultation with the Committee, to satisfy each of the following conditions (collectively, the "Bid Requirements"):

(i)     **Purpose**.  Each Acceptable Bidder must (a) state that the Bid includes an offer by the Acceptable Bidder to acquire the Debtors' equity and/or some or all of the Assets and identify such Assets with reasonable specificity and (b) if the Acceptable Bidder proposes to consummate the transaction through a Plan, include a Plan that provides for the treatment of claims against the Debtors and the means for implementation of the Plan.

(ii)    **Transaction Structure and Purchase Price**.  Each Bid that includes an offer by the Acceptable Bidder to acquire the Debtors' equity and/or some or all of the Assets must: (a) clearly set forth the purchase price to be paid for the Assets (the "Purchase Price") and must indicate the source of consideration, including funding commitments, and confirm that such consideration is not subject to any contingencies and (b) include a detailed sources and uses schedule.  Each Bid shall also provide for appropriate treatment for the Account Holder Claims as provided in the Plan.

(iii)   **Bid Deposit**.  Each Bid contemplating an acquisition of Assets, or Plan that contemplates additional capital, must be accompanied by a cash deposit equal to the greater of $5,000,000.00 and ten percent (10%) of non-coin related value in cash (the "Good Faith Deposit"), which will be held in an escrow account to be identified and established pursuant to the authority granted by the order authorizing the Debtors to maintain and operate their bank accounts, by wire transfer or certified or cashier's check.

(iv)    **Committed Financing**.  To the extent that a Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate the Sale or Plan transaction(s) set forth in its Bid with cash on hand, each Bid must include committed financing documented to the Debtors' satisfaction, after consultation with the Committee, that demonstrates that the Acceptable Bidder has received sufficient debt and/or equity funding commitments to satisfy the Acceptable Bidder's Purchase Price and/or other obligations under its Bid.  Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtors in their sole discretion, after consultation with the Committee.

(v)     **Good Faith Offer**.  Each Bid must constitute a good faith, bona fide offer to purchase all or substantially all the Debtors' equity or Assets and in the case of a Plan, provide for the treatment of claims against the Debtors and the means for implementation of the Plan. Bids may be submitted for less than substantially all assets, and the Debtors may consider partial bids in their reasonable business judgment (including if multiple bids taken together would result in a sale of substantially all the Debtors' assets) following consultation with the Committee.

5

(vi)  **Marked Agreement**.  Each Bid must be accompanied by clean and duly executed transaction documents including, at a minimum, a chapter 11 plan or a draft asset purchase agreement, the form of which will be provided to any Acceptable Bidder prior to the Bid Deadline (as defined herein), including the exhibits and schedules related thereto and any related material documents integral to such Bid pursuant to which the Acceptable Bidder proposes to effectuate the Sale, along with copies that are marked to reflect any amendments and modifications from the form chapter 11 plan or asset purchase agreement provided, which amendments and modifications may not be materially more burdensome or otherwise materially inconsistent with these Bidding Procedures.  The Debtors, in their reasonable business judgment following consultation with the Committee, will determine whether any such amendments and modifications are materially more burdensome.

(vii)  **No Contingencies**.  A Bid must include confirmation that such Bid is not conditioned on any contingency, including, among others, on obtaining any of the following (a) financing, (b) shareholder, board of directors, or other approval, and/or (c) the outcome or completion of a due diligence review by the Acceptable Bidder.

(viii)  **Binding and Irrevocable**.  An Acceptable Bidder's Bid must include confirmation that the Bid is irrevocable unless and until the Debtors accept a higher Bid and such Acceptable Bidder is not selected as the Back-Up Bidder (as defined herein).

(ix)  **Joint Bids**.  The Debtors will be authorized to approve joint Bids in their reasonable discretion, after consultation with the Committee, on a case-by-case basis.

(x)  **Adequate Assurance Information**.  Each Bid must be accompanied by sufficient and adequate financial and other information (the "Adequate Assurance Information") to demonstrate, to the reasonable satisfaction of the Debtors after consultation with the Committee, that such Acceptable Bidder (a) has the financial wherewithal and ability to consummate the acquisition of the Assets and/or other transactions contemplated by the Bid (the "Closing"), and (b) can provide adequate assurance of future performance in connection with the proposed transaction.  The Bid must also identify a contact person that parties may contact to obtain additional Adequate Assurance Information.

(xi)  **Identity & Corporate Authority**.  Each Bid must fully disclose the identity of each entity that will be participating in connection with such Bid (including any equity owners or sponsors, if the purchaser is an entity formed for the purpose of consummating the acquisition of the Assets), and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder is legally empowered, by power of attorney or otherwise, to complete the transactions on the terms contemplated by the parties.  A Bid must also fully disclose any connections or agreements with the Debtors, any known, potential, prospective

bidder or Qualified Bidder (as defined herein), or any officer, director, equity security holder, or other insider or affiliate of the Debtors.

(xii)    **Authorization**.  Each Bid must contain evidence that the Acceptable Bidder has obtained authorization or approval from its board of directors (or a comparable governing body reasonably acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

(xiii)   **No Fees**.  Each Acceptable Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed transaction, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code; *provided* that the Debtors are authorized in their discretion, after consultation with the Committee, to provide the Bid Protections to one or more Stalking Horse Bidders solely in accordance with these Bidding Procedures.

(xiv)    **Adherence to Bidding Procedures**.  By submitting its Bid, each Acceptable Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

(xv)     **Regulatory Approvals and Covenants**.  A Bid must set forth each regulatory and third-party approval required for the Acceptable Bidder to consummate the applicable Sale, if any, and the time period within which the Acceptable Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty (30) days following execution and delivery of the Plan and/or asset purchase agreement, those actions the Acceptable Bidder will take to ensure receipt of such approvals as promptly as possible).

(xvi)    **As-Is, Where-Is**.   Each Bid must include a written acknowledgement and representation that the Acceptable Bidder (a) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid, and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Acceptable Bidder's proposed purchase and sale agreement for the Assets.

(xvii)   **Time Frame for Closing**.  A Bid by an Acceptable Bidder must identify a likely date (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid (as defined

herein), within a time frame reasonably acceptable to the Debtors after consultation with the Committee.

(xviii) **Consent to Jurisdiction**.  The Acceptable Bidder must submit to the jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bidding Procedures, the Plan, the Sale documents, and the Closing, as applicable.

The Debtors shall promptly (but in no event later than 24 hours following receipt) deliver any and all bids received to the Committee's advisors.  Bids fulfilling all of the preceding requirements, as determined by the Debtors and their advisors, after consultation with the Committee and its advisors, will be deemed to be "Qualified Bids," and those parties submitting Qualified Bids will be deemed to be "Qualified Bidders."  The Debtors reserve the right, after consultation with the Committee, to work with any Acceptable Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid.  The Debtors may accept a single Qualified Bid or multiple Bids for non-overlapping material portions of the Debtors' Assets such that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders will be treated as a single Qualified Bidder for purposes of the Auction; *provided* that the Debtors also reserve the right, after consultation with the Committee, to conduct more than one Auction with respect to non-overlapping material portions of the Debtors' Assets).

Within two (2) business days after the Bid Deadline (as defined herein), the Debtors and their advisors, after consultation with the Committee and its advisors, will determine in their reasonable business judgment, which Acceptable Bidders are Qualified Bidders and will notify the Acceptable Bidders whether Bids submitted constitute, alone or together with other Bids, Qualified Bids so as to enable such Qualified Bidders to bid at the Auction.  Any Bid that is not deemed a Qualified Bid will not be considered by the Debtors.  For the avoidance of doubt, any Acceptable Bidders designated as Stalking Horse Bidders by the Debtors and in accordance with these Bidding Procedures will be deemed to be Qualified Bidders, and any stalking horse plan and/or asset purchase agreement submitted by such Stalking Horse Bidders will be deemed Qualified Bids, which qualify such Stalking Horse Bidders to participate in the Auction as Qualified Bidders.

**Bids must be sent to the Notice Parties so as to be <u>actually</u> <u>received</u> no later than ~~August~~<u>September</u> ~~2~~6, 2022, at 12:00 p.m., prevailing Eastern Time (the "<u>Bid Deadline</u>").**

E.      **Evaluation of Qualified Bids.**

Prior to the Auction, the Debtors and their advisors, with consultation of the Committee and its advisors, will evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtors' reasonable business judgment, after consultation with the Committee, the highest and otherwise best Bid (the "Initial Minimum Overbid").  For the avoidance of doubt, the Debtors may select more than one Qualified Bid to collectively serve as the Initial Minimum Overbid if each such Qualified Bid contemplates the purchase of different Assets.  In making such determination, the Debtors will take into account, among other things, (i) the amount of the Qualified Bid, (ii) the impact on customers, vendors, and employees, (iii) the certainty of a Qualified Bid leading to a confirmed plan, (iv) the timing associated with consummating such Qualified Bid, (v) the ability of the Qualified Bidder to obtain appropriate regulatory approvals, (vi) the execution risk attendant to any submitted Bids, and (vii) any other factors deemed relevant by the Debtors, after consultation with the Committee.  Within 24 hours of such determination, but in no event later than the start of the Auction, the Debtors will distribute copies of the Initial Minimum Overbid to each Qualified Bidder who has submitted a Qualified Bid.

If any Bid is determined by the Debtors not to be a Qualified Bid, the Debtors will refund such Acceptable Bidder's Good Faith Deposit and all accumulated interest thereon on or within five (5) business days after the Bid Deadline.

F.      **No Qualified Bids.**

If no Qualified Bids are received by the Bid Deadline, then the Debtors will promptly file a notice on the docket canceling the Auction.

G.      **Auction.**

If one or more Qualified Bids is received by the Bid Deadline, the Debtors will conduct the Auction with respect to the Debtors' Assets.  For the avoidance of doubt, the Debtors, after consultation with the Committee, may also conduct more than one Auction with respect to non-overlapping material portions of the Debtors' Assets.  The Auction will commence on August 29September 13, 2022, at 10:00 a.m., prevailing Eastern Time, at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, or such later time or other place (including virtually) as the Debtors will timely notify any Stalking Horse Bidders and all other Qualified Bidders.

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

(i)      the Auction will be conducted openly;

(ii)     only the Qualified Bidders, including any Stalking Horse Bidders, will be entitled to bid at the Auction;

(iii)    the Qualified Bidders, including any Stalking Horse Bidders, must appear in person or through duly-authorized representatives at the Auction (except to the

9

extent that the Auction is held virtually, in which case such Qualified Bidders must appear virtually);

(iv)    except to the extent agreed upon by the Debtors, after consultation with the Committee, only such authorized representatives of each of the Qualified Bidders (including any Stalking Horse Bidders), the Debtors, the Committee, and their respective advisors will be permitted to attend the Auction;

(v)     bidding at the Auction will begin at the Initial Minimum Overbid;

(vi)    subsequent Bids at the Auction, including any Bids by any Stalking Horse Bidder, must be made in minimum increments (which may include cash or non-cash consideration) in an amount that the Debtors determine in their reasonable business judgment after consultation with the Committee (and in amounts as announced to all Qualified Bidders prior to the commencement of the Auction), after payment of the Bid Protections to any Stalking Horse Bidders, if applicable; the Debtors will estimate the value of non-cash consideration offered, if applicable, in their business judgment, after consultation with the Committee;

(vii)   each Qualified Bidder will be informed of the terms of the previous Bids;

(viii)  the bidding will be transcribed to ensure an accurate recording of the bidding at the Auction;

(ix)    each Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the Sale;

(x)     the Auction will not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an overbid at the Auction to the then prevailing highest Bid, subject to the Debtors' right, after consultation with the Committee, to require last and final Bids to be submitted on a "blind" basis;

(xi)    the Debtors reserve the right, in their reasonable business judgment, after consultation with the Committee, to adjourn the Auction one or more times to, among other things, (a) facilitate discussions between the Debtors and Qualified Bidders, (b) allow Qualified Bidders to consider how they wish to proceed, and (c) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing amount; and

(xii)   the Auction will be governed by such other Auction Procedures as may be announced by the Debtors and their advisors, after consultation with the Committee, from time to time on the record at the Auction; *provided* that such other Auction Procedures are (a) not inconsistent with the Bidding Procedures Order, these Bidding Procedures, the Bankruptcy Code, or any other order of the Bankruptcy Court, (b) disclosed orally or in writing to all Qualified Bidders, and

10

(c) reasonably determined by the Debtors, in good faith, to further the goal of attaining the highest or otherwise best offer.

For the avoidance of doubt, nothing in the Auction Procedures will prevent the Debtors from exercising their respective fiduciary duties under applicable law (as reasonably determined in good faith by the Debtors, after consultation with the Committee).

**H.      Acceptance of the Successful Bid or Successful Bids.**

Upon the conclusion of the Auction (if such Auction is conducted), the Debtors, in the exercise of their reasonable, good-faith business judgment, after consultation with the Committee, will identify the highest or otherwise best Qualified Bid or Qualified Bids (each, a "Successful Bid"), which will be determined by considering, among other things, (a) the type and amount of Assets sought to be purchased in the Bid or Bids, (b) the total expected consideration to be received by the Debtors, (c) the likelihood of the Qualified Bidder or Qualified Bidders' ability to close a transaction and the timing thereof (including any anticipated delays to Closing and the cost to the Debtors of such delays), (d) the expected net benefit to the estates, including treatment of the Account Holder Claims (e) the impact on vendors, customers, and employees, and (f) any other criteria as may be considered by the Debtors and the Committee in their reasonable, good-faith business judgment.  For the avoidance of doubt, the Debtors, after consultation with the Committee, may select more than one Qualified Bid to collectively serve as a Successful Bid if each such Qualified Bid contemplates the purchase of different Assets. The Qualified Bidder or Qualified Bidders having submitted the Successful Bid or Successful Bids will be deemed the "Winning Bidder" or "Winning Bidders," as applicable. The Winning Bidder or Winning Bidders and the Debtors must, as soon as commercially reasonably practicable, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which such Successful Bid or Successful Bids were made.

The Debtors will present the results of the Auction to the Bankruptcy Court at the Sale Hearing or Confirmation Hearing (each as defined herein), at which certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that (a) the Auction was conducted, and the Winning Bidder or Winning Bidders were selected, in accordance with these Bidding Procedures, (b) the Auction was fair in substance and procedure, and (c) consummation of the Successful Bid or Successful Bids will provide the highest or otherwise best value for the Debtors' Assets and is in the best interests of the Debtors' estates.

If an Auction is held, the Debtors will be deemed to have accepted a Qualified Bid only when (a) such Qualified Bid is declared a Successful Bid at the Auction, and (b) definitive documentation has been executed in respect thereof.  Such acceptance is conditioned upon approval by the Bankruptcy Court of the Successful Bid or Successful Bids and entry of an order approving such Successful Bid or Successful Bids (in the case of a sale under section 363 of the Bankruptcy Code, the "Sale Order" or in the case of a sale under a chapter 11 plan, the "Confirmation Order").

11

I.      **Sale Hearing.**

In the event a transaction is consummated pursuant to section 363 of the Bankruptcy Code, a hearing before the Bankruptcy Court to consider approval of the Successful Bid or Successful Bids (the "Sale Hearing"), pursuant to which the Debtors and the Winning Bidder or Winning Bidders will consummate the Sale, will be held on September 8~~8~~29, 2022, at 11:00 a.m., prevailing Eastern Time, before the Honorable Michael E. Wiles, United States Bankruptcy Judge for the Bankruptcy Court for the Southern District of New York at One Bowling Green, New York, New York 10004.

**The Sale Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Sale Hearing.  No further notice of any such continuance will be required to be provided to any party.**

At the Sale Hearing, the Debtors will present the Successful Bid or Successful Bids to the Bankruptcy Court for approval.

J.      **Disclosure Statement Hearing.**

~~The Debtors intend to file a Disclosure Statement on or before~~On August 12, 2022, the Debtors filed the *Disclosure Statement Relating to the First Amended Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 288] and will seek a hearing before the Bankruptcy Court to consider approval of the adequacy of the Disclosure Statement, solicitation materials, and scheduling of dates related to confirmation of a Plan (the "Disclosure Statement Hearing") on September ~~16~~29, 2022, before the Honorable Michael E. Wiles, United States Bankruptcy Judge for the Bankruptcy Court for the Southern District of New York, or otherwise in accordance with any scheduling orders entered by the Bankruptcy Court relating to confirmation of the Plan or approval of any disclosure statement related thereto.  The order approving the Disclosure Statement will include the objection and voting deadlines with respect to approval of the Disclosure Statement and confirmation of the Plan.

**The Disclosure Statement Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Disclosure Statement Hearing.  No further notice of any such continuance will be required to be provided to any party.**

K.      **Confirmation Hearing.**

The Debtors will seek a hearing before the Bankruptcy Court to consider confirmation of the Plan (the "Confirmation Hearing") on ~~October~~November ~~3~~15, 2022, before the Honorable Michael E. Wiles, United States Bankruptcy Judge for the Bankruptcy Court for the Southern District of New York, or otherwise in accordance with any scheduling orders entered by the Bankruptcy Court relating to confirmation of the Plan.

12

**The Confirmation Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Confirmation Hearing.  No further notice of any such continuance will be required to be provided to any party.**

At the Confirmation Hearing, the Debtors will present the Plan, which will incorporate the terms of the Successful Bid or Successful Bids, to the Bankruptcy Court for confirmation.

**L.      Designation of Back-Up Bidder or Back-Up Bidders.**

If for any reason the Winning Bidder or Winning Bidders fail to consummate the Qualified Bid or Qualified Bids within the time permitted after the entry of the Sale Order approving the Sale to the Winning Bidder or Winning Bidders, then the Qualified Bidder or Qualified Bidders with the next-highest or otherwise second-best Bid or Bids (each, a "Back-Up Bidder"), as determined by the Debtors after consultation with their advisors and the Committee and its advisors, at the conclusion of the Auction and announced at that time to all the Qualified Bidders participating therein, will automatically be deemed to have submitted the highest or otherwise best Bid or Bids (each, a "Back-Up Bid"), and the Debtors will be authorized, but not required, to consummate the transaction pursuant to the Back-Up Bid or Back-Up Bids as soon as is commercially reasonable without further order of the Bankruptcy Court upon at least 24 hours advance notice, which notice will be filed with the Bankruptcy Court.  Upon designation of the Back-Up Bidder or Back-Up Bidders at the Auction, the Back-Up Bid or Back-Up Bids must remain open until the Closing of the Successful Bid or Successful Bids, as applicable, notwithstanding any outside date set forth in such Back-Up Bidder or Back-Up Bidders' proposed purchase agreement or chapter 11 plan.

**M.      Return of Good Faith Deposit to Qualified Bidders that Submit Qualified Bids.**

The Good Faith Deposit of the Winning Bidder or Winning Bidders will, upon consummation of the Successful Bid or Successful Bids, become property of the Debtors' estates and be credited to the portion of the Purchase Price.  If the Winning Bidder or Winning Bidders (or Back-Up Bidder or Back-Up Bidders, if applicable) fails to consummate the Successful Bid or Successful Bids (or Back-Up Bid or Back-Up Bids, if applicable), then the Good Faith Deposit of such Winning Bidder or Winning Bidders (or Back-Up Bidder or Back-Up Bidders, if applicable) will be irrevocably forfeited to the Debtors and may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors.

The Good Faith Deposit of any unsuccessful Qualified Bidders (except for the Back-Up Bidder or Back-Up Bidders and any Stalking Horse Bidders) will be returned within five (5) business days after consummation of the Sale or upon the permanent withdrawal of the proposed Sale.  The Good Faith Deposit of the Back-Up Bidder or Back-Up Bidders, if any, will be returned to such Back-Up Bidder or Back-Up Bidders no later than five (5) business days after the Closing with the Winning Bidder or Winning Bidders.  The return of any Good Faith Deposit of any Stalking Horse Bidders will be subject to the terms of such Stalking Horse Bidders' chapter 11 plan or asset purchase agreement, as applicable.

13

All deposits shall be held in escrow and at no time shall be deemed property of the Debtors' estates absent further order of the Bankruptcy Court.

**N.      Reservation of Rights.**

Subject to prior written consent of the Committee or further order of the Bankruptcy Court, the Debtors, reserve their rights to modify these Bidding Procedures (including the deadlines in these Bidding Procedures and the Bidding Procedures Order) in good faith, to further the goal of attaining the highest or otherwise best offer, or impose, at or prior to the Auction, additional terms and conditions on the Sale.  The Debtors shall provide notice of any such modification to any Qualified Bidder, including any Stalking Horse Bidders. Notwithstanding anything to the contrary herein, the Debtors, after consultation with the Committee, may elect to consummate the Sale under section 363(f) of the Bankruptcy Code as opposed to pursuant to the Plan with the Winning Bidder or Winning Bidders, but, for the avoidance of doubt, the Debtors prefer that the Sale be accomplished through the Plan.

**O.      Consent to Jurisdiction.**

All Qualified Bidders at the Auction will be deemed to have consented to the jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Sale, the Auction, the construction and enforcement of these Bidding Procedures, the Bid Requirements, and/or the Bid Documents, as applicable.

Any parties raising a dispute relating to these Bidding Procedures must request that such dispute be heard by the Bankruptcy Court on an expedited basis.

**P.      Fiduciary Out.**

Nothing in these Bidding Procedures will require the board of directors, board of managers, or such similar governing body of a Debtor or non-debtor affiliate to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent such board of directors, board of managers, or such similar governing body reasonably determines in good faith, after consultation with the Committee, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law.

**Q.      Sale Is As Is/Where Is.**

The Assets sold pursuant to these Bidding Procedures will be conveyed at the Closing in their then-present condition, "**as is, with all faults, and without any warranty whatsoever, express or implied.**"

\* \* \* \* \*

14