Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**SUPPLEMENTAL DECLARATION
OF STEPHEN EHRLICH, CHIEF EXECUTIVE
OFFICER OF THE DEBTORS, IN SUPPORT OF THE DEBTORS'
MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE DEBTORS'
KEY EMPLOYEE RETENTION PLAN AND (II) GRANTING RELATED RELIEF**

I, Stephen Ehrlich, hereby declare as follows under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1.    I am the Chief Executive Officer of Voyager Digital Holdings, Inc. ("Voyager"). Voyager is a debtor and debtor in possession in the above-captioned cases along with two of its debtor subsidiaries and affiliates (collectively, the "Debtors").

2.    I am familiar with the Debtors' day-to-day operations, businesses and financial affairs, and books and records including the Debtors' proposed key employee retention plan

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

(the "KERP") as set forth in the *Debtors' Motion for Entry of an Order (I) Approving the Debtors' Key Employee Retention Plan and (II) Granting Related Relief* [Docket No. 212] (the "Motion").[2]

3. On August 12, 2022, I submitted the *Declaration of Stephen Ehrlich, Chief Executive Officer of the Debtors, In Support of the Debtors' Motion for Entry of an Order (I) Approving the Debtors' Key Employee Retention Plan and (II) Granting Related Relief* [Docket No. 285] (the "Original Declaration") in support of the Motion.

4. I submit this supplemental declaration (this "Supplemental Declaration") in order to provide certain updates with respect to the proposed KERP, its participants and the Debtors' employee attrition. Except as otherwise indicated, the statements set forth in this declaration are based upon: my personal knowledge; my review of relevant documents and information concerning the Debtors' operations, financial affairs, and restructuring initiatives; and information obtained from other members of the Debtors' management team and advisors. I am authorized to submit this Supplemental Declaration on behalf of the Debtors. I am over the age of eighteen, and, if called upon to testify, I could and would testify competently to the facts and opinions set forth in this Supplemental Declaration.

**The Debtors' Employees and Participants**

5. The Debtors have always operated with a lean employee base.[3] Given the nature of the Debtors' business, any material attrition of key employees would create challenges for the company going forward.

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Motion.

[3] Due to inadvertent double counting and communication error, the aggregate number of employees stated in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs and (II) Granting Related Relief* [Docket No. 8] (the "Wages Motion") was incorrect. As of the Petition Date, the Debtors and their non-Debtor affiliates employed approximately 328 employees (rather than the 351 stated in the Wages Motion), 259 of which were employed by the Debtors.

2

6. Thus, while reasonable cost-savings measures are helpful, it is far more critical that the Debtors retain essential personnel. The Debtors' key employees will be needed regardless of the outcome of these chapter 11 cases. The Debtors will need those employees in any stand-alone restructuring. The Debtors will need those employees if these chapter 11 cases conclude with a sale to or investment by a buyer that desires to keep the Debtors' operations intact. Even if the Debtors' chapter 11 cases move toward a sale only of customer accounts, employees will be needed to safely and securely work on such a transfer, and the Debtors will need tools to retain employees to do that. If the Debtors' key employees left the company, it is unlikely that the Debtors would be able to replace them under current circumstances, causing challenges for any exit path.

7. Accordingly, the Debtors and their advisors formulated the proposed KERP. The KERP was designed to stem attrition at a critical time. And there has been attrition. The Debtors planned to seek approval of a KERP for 38 key people. One proposed Participant resigned shortly before the Motion was filed. Since the filing of the Motion and the Original Declaration, four additional KERP Participants resigned. These five employees played important roles in the Debtors' daily operations and successful progression of these chapter 11 cases. Their resignations will likely cause the Debtors to incur significant operational and financial costs, including the time and cost associated with attempting to temporarily fill those roles, searching for new employees, hiring and training new employees, if finding employees to replace these employees is even possible, and/or attempting to use consultants billing hourly to perform the work those employees would otherwise be doing.

8. In light of the recent attrition of critical employees and to ensure the Debtors are able to retain key talent, the Debtors have proposed to add one additional Participant (the "Additional Participant") to the KERP. The Additional Participant is Counsel to the

3

Debtors—serving a key role at this pivotal time. The Additional Participant has institutional knowledge of the Debtors' operations in addition to the knowledge required to navigate the uncertain and complex legal aspects of the cryptocurrency industry generally.

9. Although the Additional Participant is important to the Debtors' business operations, the Additional Participant is not an employee who: (a) sits on, or directly reports to, the Debtors' board of directors; (b) was appointed or hired directly by the Debtors' board of directors; (c) exercises managerial control over, or has responsibility for, the Debtors' operations as a whole; or (d) directs the Debtors' overall corporate policy or governance. My understanding is that, as a result, the Additional Participant is not an "insider" under the Bankruptcy Code.

10. Notably, due to the resignations of the Participants described above, the total aggregate cost of the KERP will decrease and there will be fewer total Participants in the KERP, even with the Additional Participant added. Additionally, as part of resolution with the Committee, individual awards are reduced from 25% of annual salary to 22.5% of annual salary.

11. The following chart provides revised KERP award amounts and further details the importance of the Additional Participant to the Debtors and the Additional Participant's supervisor, salary, and proposed KERP award:

| | Title | Job Description | Supervisor's Name and Title | Hired/Appointed By | Salary | KERP Award |
|---|---|---|---|---|---|---|
| | **KERP Participants** | | | | | |
| 1 | ■ | ■ | ■ | ■ | ■ | ■ |
| 2 | ■ | ■ | ■ | ■ | ■ | ■ |


12. As described in detail in my Original Declaration, I believe that preserving each Participant's institutional and technical knowledge is crucial to the Debtors' ability to maximize value. Even while in "sleep mode," the Participants are critical to the continued maintenance of

customer accounts and the platform more generally by, among other things, performing essential security functions and building enhanced features and functionality for the Debtors' system and assets. In the absence of the KERP, there is a very real chance of material further attrition that will limit the Debtors' ability to maximize value for all stakeholders.

13. At the same time, the Debtors have done the hard work to assess whether they can cut costs. They will do so. Specifically, as agreed to by the Debtors and the Committee pursuant to resolution of the Committee's KERP objection, the Debtors will implement additional operational cost-cutting measures by September 22, 2022, resulting in annualized savings of $4.6 million. The Debtors are working to implement this cost cutting over the next month, again seeking to maximize value given the impact any material losses will have on the Debtors' restructuring.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: August 22, 2022
New York, New York

*/s/ Stephen Ehrlich*
Name: Stephen Ehrlich
Title: Co-Founder and Chief Executive Officer: Voyager Digital Ltd.