# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: ) | |
| ) | |
| VOYAGER DIGITAL HOLDINGS, INC., ) | Case No. 22-10943 (MEW) |
| and VOYAGER DIGITAL, LLC ) | |
| ) | Chapter 11 |
| ) | |
| Debtors. ) | |

| | |
|---|---|
| JON GIACOBBE, ) | |
| ) | |
| Plaintiff, ) | Adversary No. |
| ) | |
| --against-- ) | |
| ) | |
| VOYAGER DIGITAL HOLDINGS, INC., ) | |
| and VOYAGER DIGITAL, LLC ) | |
| ) | |
| Defendants. ) | |

Plaintiff brings this adversary proceeding pursuant to 11 U.S.C. § 523(a)(2)(A) and (c), seeking an order determining that the debt owed to it by the defendant is excepted from discharge.

## INTRODUCTION

1. Voyager Digital Holdings, Inc. ("Voyager") is one of the most utilized platforms for new and inexperienced investors to buy cryptocurrency, and it has taken in hundreds of millions of dollars in revenue.

1

2. Voyager owns and runs a multi-billion-dollar mobile application cryptocurrency investment service ("Platform") that places cryptocurrency trade orders for users like the Plaintiff. It specifically targets young and inexperienced customers who are generally new to cryptocurrency trading and tend to conduct their business on mobile apps (rather than sophisticated trading or analysis software), and it does this using youth-focused marketing, promises of interest payments on cryptocurrency holdings, and repeated and consistent representations that Voyager trades are "100% Commission-Free." Voyager also tells its customers that they will receive the best possible price on their trades.

3. These statements and representations were false, deceptive, and misleading when they were made.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. §523. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I).

5. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1409(a).

6. This adversary proceeding relates to *In re Voyager Digital Holdings, Inc., et al.*, Case No. 22-10943 (MEW), now pending in this Court ("Bankruptcy Case").

7. Plaintiff holds a general unsecured claim against the Debtor by virtue of his status as a depositor of and lender to Voyager.

## PARTIES

8. Plaintiff is a New York resident living in New York, New York.

9. Voyager is the debtor in the Bankruptcy case now pending in this Court.

10. Voyager is a Delaware corporation whose principal place of business is in New York.

## VOYAGER'S REPRESENTATIONS AND DECEPTIONS[1]

11. Voyager provides its customers with mobile apps and other means to trade, invest, earn, and secure cryptocurrencies.

12. Voyager advertises and markets itself through print, radio, television, social media, internet communications, and websites.

13. Between at least 2018 and the commencement of the Bankruptcy Case, Voyager has made multiple representations and statements in its advertising and marketing regarding the nature, quality, reliability, safety, and security of the Platform.

---

[1] Many of the general facts and circumstances regarding Voyager's statements and business practices were originally contained in the complaint filed in *Cassidy v. Voyager*, 21-CV-24441, United States District Court for the Middle District of Florida.

14. Voyager stated and represented that it was a "fully compliant and licensed crypto broker".

15. Voyager stated and represented that customer funds invested or deposited on its Platform were insured by the Federal Deposit Insurance Company ("FDIC").

16. Voyager stated and represented that its trades were 100% commission free.

17. Voyager stated and represented that its customers will receive the best possible price on their trades.

18. Voyager also marketed and sold unregistered securities in the form of cryptocurrency interest-earning accounts. They were known as and marketed under various names, such as the "Voyager Interest Program" or the "Voyager Earn Program Account".

## **Fully Compliant and Licensed Crypto Broker**

19. Voyager claims it is a "fully compliant and licensed crypto broker" and markets and advertises its status as a public company, its listing on the Toronto Stock Exchange, and the "trust and transparency" resulting from its being a public company in Canada.

20. These statements are false and misleading or otherwise likely to deceive potential and actual customers because:

   a. It is not licensed as a money service business in New York to conduct currency exchange or money transmission activities. Voyager does not possess a BitLicense in accordance with 23 CRR-NY 200.

b. It is not registered with the Commodity Futures Trading Commission or the National Futures Association.

c. It is not licensed, registered, or qualified, nor are its securities notice filed, with the United States Securities and Exchange Commission.

d. It is not registered with the State of New York to offer or sell securities in New York, and the Voyager Interest Accounts are not registered or permitted for sale in New York.

e. The Voyager Interest Accounts are not protected by the Securities Investor Protection Corporation, otherwise known as the SIPC, a federally mandated, non-profit, member funded United States corporation created under the Securities Investor Protection Act of 1970 that mandates membership of most US-registered broker-dealers.

f. The Voyager Interest Accounts are not insured by the Federal Deposit Insurance Corporation, otherwise known as the FDIC, an agency that provides deposit insurance to depositors in the United States, or the National Credit Union Administration, otherwise known as the NCUA, an agency that regulates and insures credit unions.

g. Although Voyager's stock is listed on the Toronto Stock Exchange, the Voyager Interest Accounts are not registered, qualified, or permitted in Canada and Voyager represents Canadian investors cannot invest in the Voyager Interest Accounts.

h. The Canadian laws that apply to Voyager's securities listed on the Toronto Stock Exchange do not provide the same regulation or protection as domestic laws that apply to Voyager Interest Accounts Voyager sells exclusively to United States residents.

i. Voyager is not disclosing material risks relevant to these statements, material information including the amount of principal used to fund subsequent transactions, the identity, nature, and creditworthiness of borrowers, the type, nature, and counterparties for transactions involving digital asset exchanges, digital assets, staking, arranging for staking, or proprietary trading, the risks associated with digital asset exchanges, individual digital assets, staking protocols, or proprietarily traded assets, and the profits and/or losses derived from transactions.

## **Customer Accounts Are FDIC Insured**

21. On July 28, 2022, the FDIC and the Federal Reserve Board issued a letter demanding Voyager Digital cease and desist from making false or misleading representations regarding the insurance status of its deposits. [Federal Reserve Board - FDIC and Federal Reserve Board issue letter demanding Voyager Digital cease and desist from making false or misleading representations of deposit insurance status](https://www.federalreserve.gov/newsevents/pressreleases/bcreg20220728a.htm)

    https://www.federalreserve.gov/newsevents/pressreleases/bcreg20220728a.htm

22. The letter was announced in a joint press release, which stated:

    The Federal Deposit Insurance Corporation (FDIC) and the Federal Reserve Board today issued a joint letter demanding that the crypto brokerage firm Voyager Digital cease and desist from making false and misleading statements regarding its FDIC deposit insurance status and take immediate action to correct any such prior statements.

    According to the agencies, Voyager and certain officers and employees made various statements online, including on its website, mobile app, and social media accounts, stating or suggesting that:

    1. Voyager itself is FDIC insured;
    2. Customers who invested with the Voyager cryptocurrency platform would receive FDIC insurance coverage for all funds provided to, and held by, Voyager, without reference to the insured depository institution account; and
    3. The FDIC would insure customers against the failure of Voyager itself.

    These representations are false and misleading. Based on the information gathered to date, it appears that these representations likely misled and were relied upon by customers who placed their funds with Voyager and do not have immediate access to their funds.

6

## **100% Commission Free**

23. Voyager's customer marketing materials prominently feature its claim that trades on the Platform are "100% Commission-Free."

24. This claim is false, deceptive, and misleading.

25. Voyager earns commissions on each Platform trade but does not disclose to its customer the fact that commission are earned or their amount.

26. Voyager earns the "spread" (the difference between the "Bid Price" and "Ask Price" on a cryptocurrency) on each trade.

27. Voyager has stated in a writing distributed to investors and others on May 25, 2021, that the "spread" is its main source of revenue.

28. Voyager's Founder and President, Steve Ehrlich, explained the importance of "spread revenue" to his investors when speaking during an earnings call on March 1, 2021:

> With the growth of assets under management, we remind investors of our 2 main revenue sources, spread revenue and interest revenue. Estimated spread revenue is derived by the trading velocity of our assets while interest revenue was driven by the gross interest earned on the overall assets under management. Historically, the company has earned between 10 to 12% annualized revenue on assets under management.
>
> At this point, I would also like to remind investors of certain drivers of our business. As in agency brokerage business, market volatility can often act as our friend. Voyager executes trades and captures spread revenue in both up and down markets. One example of the powerful agency model happened on Tuesday, February 23rd when Bitcoin decreased from a high of $56,000 to $45,000. That day, Voyager experienced a record day for trading volume, revenue and net deposits. Investors were very active buying the dips across all of the coins Voyager offers.

7

## Best Possible Price

29. Voyager's Platform displays what it terms a "Fair Market Price" for each cryptocurrency. That price is somewhere in the middle of the spread.

30. The Platform will automatically execute customer orders at the highest end of the spread, which results in the highest undisclosed commission to the company.

31. When a customer submits a market buy order, the "Estimated Price" for the trade displayed on the Platform defaults to an amount higher than the quoted "Ask Price" at the top end of the spread, so that the order is filled at an amount "less" than the "Estimated Price," but still at the very top end of the spread.

32. For market sell orders, the trade will default to an amount less than the quoted "Bid Price" at the bottom end of the spread so that the order is filled at an amount that is "more" than the "Estimated Price," but still at the bottom end of the spread.

33. Voyager uses proprietary systems called "Smart Order Router," the "Voyager Pricing Engine," and the "Proprietary Fills Algorithm" to execute these improper, misleading, and deceptive practices.

34. The use of these systems to raise the price to Platform customers such as the Plaintiff results in Voyager receiving undisclosed commissions—the customer's money—by and under false pretenses.

## Sale of Unregistered Securities

35. Voyager's sale and use of its "Voyager Interest Program" or the "Voyager Earn Program Account" constitute the sale of unregistered securities.

36. Voyager failed to disclose this fact to its customers.

37. Voyager failed to disclose to its customers that it is not licensed as a money service businesses in New York to conduct currency exchange or money transmission activities. Voyager does not possess a BitLicense in accordance with 23 CRR-NY 200.

38. Voyager failed to disclose to its customers that is not registered with the Commodity Futures Trading Commission or the National Futures Association.

39. Voyager failed to disclose to its customers that it is not licensed, registered, or qualified, nor are its securities notice filed, with the United States Securities and Exchange Commission.

40. Voyager failed to disclose to its customers that it is not registered with the State of New York to offer or sell securities in New York, and the Voyager Interest Accounts are not registered or permitted for sale in New York.

41. Voyager failed to disclose to its customers that the Voyager Interest Accounts are not protected by the Securities Investor Protection Corporation, otherwise known as the SIPC, a federally mandated, non-profit, member funded United States corporation created under the Securities Investor Protection Act of 1970 that mandates membership of most US-registered broker-dealers.

## PLAINTIFF'S ACCOUNT & TRANSACTIONS

42. On or before November of 2018, and continuing until the commencement of the Bankruptcy Case, the Plaintiff saw, heard, and read numerous statements, words, and representations made by Voyager advertising and marketing its Platform.

43. The Plaintiff saw, heard, and read these statements on social media sites, the internet, and in print and other more traditional media.

44. On or about November 28, 2018, Plaintiff received a written invitation or solicitation to open Voyager account, and he then submitted an application to open that account.

45. On or about December 7, 2018, Voyager completed Plaintiff's account registration and activated his account.

46. Between on or about December 21, 2018, and on or about June 23, 2022, the Plaintiff made purchases and sales on the Platform, participated in the staking program, and received payments from Voyager on account of investments.

47. These transactions included purchases and sales in and for the "Voyager Interest Program" or the "Voyager Earn Program Account."

48. Attached as **Exhibit 1** are screenshots of many, but not all, of the Plaintiff's transactions with Voyager.

49. Plaintiff has attempted to access his full and complete trading history on the Platform on multiple recent occasions prior to the commencement of this

action, but the Platform has not, cannot, or will not provide a complete and comprehensive account history.

50. Plaintiff filed claim against Voyager via Stretto on or about July 8, 2022, Case Number 22-10943. Stretto is a platform that offers services to "facilitate every aspect of case and deposit management for its bankruptcy clients." Plaintiff's proof of claim is annexed hereto as **Exhibit 2**.

51. The total amount paid to and invested with Voyager is approximately $150,000.00.

### COUNT I

**Nondischargeable Debt for Money Obtained by False Pretenses, False Representations, or Actual Fraud**

52. Plaintiff realleges and incorporates by reference all previous paragraphs as though fully set forth herein.

53. In numerous instances, in connection with soliciting investments, loans, and trades generally, and from Plaintiff particularly, Voyager expressly or by implication, represented that:

   a. It was a "fully compliant and licensed crypto broker".

   b. Customer funds invested or deposited on its Platform were insured by the Federal Deposit Insurance Company ("FDIC").

   c. Its trades were 100% commission free.

   d. Customers will receive the best possible price on their trades.

11

54. Voyager also marketed and sold unregistered securities in the form of cryptocurrency interest-earning accounts. They were known as and marketed under various names, such as the "Voyager Interest Program" or the "Voyager Earn Program Account".

55. In truth and in fact, Voyager was not fully compliant with its legal and regulatory obligations.

56. In truth and in fact, Voyager's deposits were not FDIC insured.

57. In truth and in fact, customers paid commissions—or spreads—on every trade.

58. In truth and in fact, customers did not get the best possible price because of Voyager's manipulation of the spread on every single trade.

59. In truth and in fact, Voyager's "Voyager Interest Program" or "Voyager Earn Program Account" were unlawful unregistered securities sold under and through false pretenses.

60. Voyager's statements and representations were false and misleading and constitute misrepresentations and deceptive acts or practices in violation of the laws of the State of New York, the State of Delaware, and the United States.

**WHEREFORE**, the Plaintiff respectfully requests that the Court:

A. Determine that the Plaintiff's funds his accounts with the Debtor as of the filing date of the Bankruptcy Case are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A);

B.     Enter judgment against Voyager in the approximate amount of $150,000.00, plus applicable interest in accordance with 28 U.S.C. § 1961, with the exact amount to be determined at trial;

C.     Award Plaintiff the costs and disbursements of this action, including reasonable legal fees, and

D.     Grant Plaintiff such other and further relief as this case may require and the Court deems just, proper, and equitable.

Dated:     New York, New York
             August 30, 2022

*/s/ A. Manny Alicandro, Esq.*

A. Manny Alicandro
11 Broadway, Suite 615
New York, NY 10004
Tel: (646) 509-3842
Email: manny@alicandrolawoffice.com
Attorney for Plaintiff