**Hearing Date:  September 29, 2022, at 2:00 p.m. (prevailing Eastern Time)**
**Objection Deadline:  September 22, 2022, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### NOTICE OF DEBTORS' MOTION
### SEEKING ENTRY OF AN ORDER (I) AUTHORIZING THE
### DEBTORS TO RETURN COLLATERAL AND (II) GRANTING RELATED RELIEF

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Motion Seeking Entry of an Order (I) Authorizing the Debtors to Return Collateral and (II) Granting Related Relief* (the "Motion,") will be held on **September 29, 2022, at 2:00 p.m., prevailing Eastern Time** (the "Hearing").  In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted telephonically.  Any parties wishing to participate must do so by making arrangements through CourtSolutions by visiting https://www.court-solutions.com.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Motion shall:  (a) be in writing; (b) conform to the Federal Rules of Bankruptcy

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served so as to be actually received by **September 22, 2022, at 4:00 p.m., prevailing Eastern Time**, by (i) the entities on the Master Service List available on the case website of the above-captioned debtors and debtors in possession (the "Debtors") at https://cases.stretto.com/Voyager and (ii) any person or entity with a particularized interest in the subject matter of the Motion.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing. Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/Voyager. You may also obtain copies of the Motion and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated: September 12, 2022          */s/ Joshua A. Sussberg*
New York, New York                 **KIRKLAND & ELLIS LLP**
                                   **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                   Joshua A. Sussberg, P.C.
                                   Christopher Marcus, P.C.
                                   Christine A. Okike, P.C.
                                   Allyson B. Smith (admitted *pro hac vice*)
                                   601 Lexington Avenue
                                   New York, New York 10022
                                   Telephone:     (212) 446-4800
                                   Facsimile:     (212) 446-4900
                                   Email:         jsussberg@kirkland.com
                                                  cmarcus@kirkland.com
                                                  christine.okike@kirkland.com
                                                  allyson.smith@kirkland.com

                                   *Counsel to the Debtors and Debtors in Possession*

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' MOTION SEEKING ENTRY OF AN ORDER (I) AUTHORIZING THE
DEBTORS TO RETURN COLLATERAL AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")
respectfully state as follows in support of this motion (this "Motion"):

**Relief Requested**

1.     By this Motion, the Debtors seek entry of an order, substantially in the form
attached hereto as **Exhibit A** (the "Order"):  (a) authorizing and directing the Debtors to return
collateral held on account of certain loans made by Debtor Voyager Digital, LLC and non-Debtor
HTC Trading Inc. (the "Lenders") to Alameda Research Ltd. (together with its affiliates,
"Alameda") as part of and upon Alameda's return of lent cryptocurrency back to the Debtors; and

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC
(8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY
10003.

(b) granting related relief.  In support of this Motion, the Debtors submit the *Declaration of Steve Ehrlich in Support of the Debtors' Motion Seeking Entry of an Order (I) Authorizing the Debtors to Return Collateral and (II) Granting Related Relief* attached hereto as **Exhibit A** (the "Ehrlich Declaration").

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012.  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and rules 2002(a)(2) and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Background

5.      On July 5, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Stephen Ehrlich, Chief*

*Executive Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 15] (the "First Day Declaration"),[2] incorporated by reference herein.

6.      The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 18].  On July 19, 2022, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 102] (the "Committee").  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

## Preliminary Statement

7.      The Debtors operate a cryptocurrency trading platform that allows customers to buy, sell, trade, and store over 100 unique digital assets and cryptocurrency.  Part of the Debtors' prepetition business model included cryptocurrency lending, where the Debtors lent cryptocurrency deposited on their platform to third parties for a negotiated interest rate.  As of the Petition Date, the Debtors had over $1.1 billion of outstanding loan obligations.

8.      Alameda communicated to the Debtors shortly after the Petition Date its willingness to unwind some or all of its outstanding loans from the Debtors.  Since the Petition Date, the Debtors engaged in significant efforts to recall all cryptocurrency loaned to third parties back to the estates.  Because most of the loans to third parties were freely "callable" and non-collateralized, the Debtors have been able to recall a majority of their prepetition loans pursuant to the terms of the applicable loan agreements in the ordinary course of business.  In addition, the

---

[2]    Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

Debtors and certain lenders, including, as discussed below, Alameda, at the Debtors' request, have also agreed to consensually recall several non-callable and non-collateralized loans. As a result, nearly all loans other than the Collateralized Alameda Loans (as defined below) have been unwound as of the date hereof. The Debtors are in the process of recalling an approximately $4 million term loan made to a separate counterparty.

9.      The Debtors are party to ten individual term loans pursuant to that certain master loan agreement with Alameda (each, an "Alameda Loan" and collectively, the "Alameda Loans"). The Debtors hold certain property of Alameda as collateral in the form of certain tokens associated with Alameda in connection with some but not all of the Alameda Loans (such collateral, the "Alameda Loan Collateral" and such Alameda Loans, the "Collateralized Alameda Loans"). The Debtors have no interest in the Alameda Loan Collateral other than as collateral securing the Collateralized Alameda Loans, which they expect would be repaid in the ordinary course of business.

10.     As of the date hereof, the Debtors have recalled eight of the Alameda Loans, including all of Alameda's loans that were fixed term, with terms going to late November and late December, which Alameda agreed, at the Debtors' request, to allow the Debtors to recall early. To complete the Debtors' unwinding of their loan portfolio, the Debtors now seek Court approval to unwind the Collateralized Alameda Loans and, in connection therewith, return the Alameda Loan Collateral. Unwinding the Alameda Loans and returning the Alameda Loan Collateral— which the Debtors are obligated to do upon the repayment of the Collateralized Alameda Loans— is in the best interests of all stakeholders for several reasons.

11.     *First*, unwinding the Alameda Loans, including as a result of Alameda's agreement to unwind term loans not yet matured early, results in a significant net increase in the

4

cryptocurrency held by the Debtors and thus maximizes the value of cryptocurrency distributions that the Debtors can make to creditors on account of their claims.

12.    ***Second***, the FTX Token—one of the coins held as collateral—is not traded on the Debtors' platform and, accordingly, is not held by any of the Debtors' customers. Thus, holding the FTX token as collateral is less desirable than the prompt return of Bitcoin and Ether comprising the loans to Alameda, which are two of the most popular cryptocurrencies held on the Debtors' platform. The monetization of that collateral, if it ever became necessary, would require the Debtors to sell FTX Token and buy different cryptocurrency assets to distribute to account holders. This would result in a taxable event and potentially reduce the value of the Debtors' estates further if the purchased assets have appreciated by more than FTX Token during the pendency of these chapter 11 cases.

13.    ***Third***, the Debtors are marketing a sale of all, or substantially all, of their assets[3], and Alameda is a participant in the Debtors' marketing process.[4] As discussed in the Ehrlich Declaration, some bidders may have reservations about acquiring large loans to a single counterparty, especially a counterparty that may be a competing bidder in the auction.[5] Unwinding the loans eliminates this concern. The Debtors informed Alameda of this concern and Alameda

---

[3]    See *Order (I) Approving the Bidding Procedures, (II) Scheduling the Bid Deadlines and the Auction, (III) Approving the Form and Manner of Notice Thereof, (IV) Scheduling Hearings and Objection Deadlines With Respect to the Debtors' Sale, Disclosure Statement, and Plan Confirmation and (V) Granting Related Relief* [Docket No. 248].

[4]    Alameda and FTX publicly disclosed their bid for the Debtors' assets in July 2022. *See* https://www.prnewswire.com/news-releases/ftx-proposes-joint-plan-to-offer-early-liquidity-to-voyager-digitals-customers-in-bankruptcyproceeding -301591902.html.

[5]    Certain participants in the Debtors' marketing process have previously indicated this concern to the Debtors. See *Notice of Response to Alameda/FTX Press Release* [Docket No. 137].

agreed, at the Debtors' request, to return the fixed-term loans that were not due until late November and late December, which they were under no obligation to do.

14.     ***Finally***, unwinding the outstanding Alameda Loans eliminates the need for bidders to evaluate the credit risk of acquiring the outstanding Alameda Loans.

15.     For the reasons set forth above, and as further discussed below, the Debtors respectfully request that the Court enter an order authorizing the Debtors to effectuate the unwinding of the Collateralized Alameda Loans and, in connection therewith, authorizing and directing the return to Alameda of the Alameda Loan Collateral.

## The Alameda Loans

**I.      The Master Loan Agreement and the Loan Term Sheets.**

16.     On September 2, 2021, Alameda and the Lenders entered into that certain master loan agreement (the "Master Loan Agreement") pursuant to which Alameda may, from time to time, borrow cryptocurrency or government-issued currency from the Lenders. The terms of each Alameda Loan are controlled by a loan term sheet executed by Alameda and the Lenders (each such term sheet, a "Term Sheet"). Each Term Sheet provides the material terms of the corresponding Alameda Loan, including the type of currency or cryptocurrency loaned, the amount of the particular loan, the maturity date of the Alameda Loan, whether the Alameda Loan is callable or has a fixed maturity date, and the amount and type of collateral provided to the Lenders (if any) in connection with the particular loan.

17.     In August 2022, the Lenders and Alameda commenced discussions regarding unwinding the Alameda Loans. At the time, approximately $440 million of Alameda Loans remained outstanding, and the Debtors held approximately $166 million of cryptocurrency as collateral on account of the collateralized Alameda Loans. On September 7, 2022, Alameda

returned approximately $200 million of the Alameda Loans (which were unsecured), including the fixed-term loans, which Alameda agreed to return early, at the Debtors' request. The Debtors now seek to unwind the remaining Alameda Loans, which requires them to return the property of Alameda held as collateral in connection with those loans. Upon return of all cryptocurrency loaned under the Alameda Loan Term Sheets, the Master Loan Agreement and all Alameda Loan Term Sheets will be deemed irrevocably satisfied and cancelled pursuant to the Payoff Letter attached to the Order as **Exhibit 1**. The outstanding Alameda Loans and collateral of Alameda held by the Debtors as of the date hereof are as follows:

| Outstanding Alameda Loans | | | |
|---|---|---|---|
| Loan Date | Loaned Asset | Loan Amount Outstanding (Crypto) | Loan Amount Outstanding ($USD)[6] |
| 06/27/22 | Bitcoin | 6,500 | $126,013,550 |
| 06/28/22 | Ether | 50,000 | $82,507,500 |
| TOTAL | | | $208,521,050 |
| Collateral Held by the Debtors | | | |
| Collateral Asset | | Amount of Collateral Asset Held (Crypto) | Value of Collateral Asset Held ($USD)[7] |
| FTX Token | | 4,650,000 | $121,272,000 |
| Serum | | 63,750,000 | $52,810,500 |
| TOTAL | | | $174,082,500 |

18.    Unwinding the remaining Alameda Loans and returning the Alameda Loan Collateral to Alameda is in the best interests of stakeholders, including customers, because it results in the return of the loaned Bitcoin and Ether—the current value of which exceeds the value of the Alameda Loan Collateral—and, accordingly, provides the Debtors with additional assets to distribute to creditors.

---

[6]    Cryptocurrency values converted to dollars using the prevailing price of the cryptocurrency on September 8, 2022.

[7]    Cryptocurrency values converted to dollars using the prevailing price of the cryptocurrency on September 8, 2022.

## Basis for Relief

**I.    Returning the Alameda Loan Collateral Is a Sound Exercise of the Debtors' Business Judgment and Is in the Best Interests of the Debtors' Estates.**

19.    Section 363(b) of the Bankruptcy Code permits a debtor, subject to court approval, to enter into a transaction outside the ordinary course of its business so long as there is a "sound business purpose" that justifies such action.  See *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); see also *In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003) (stating that judicial approval under section 363 of the Bankruptcy Code requires a showing that there is a good business reason).

20.    Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); see also *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").  Implicit in the fiduciary duties of any debtor-in-possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

21.    Here, unwinding the outstanding Alameda Loans and returning the Alameda Loan Collateral represents a sound exercise of the Debtors' business judgment, will protect, preserve, and maximize the value of the Debtors' estates, and provides the Debtors with certain immediate benefits.

22.    ***First***, unwinding the outstanding Alameda Loans will result in an influx of cryptocurrency assets that exceeds the value of the Alameda Loan Collateral by approximately $34,438,550.

8

23.     **Second**, all of the Alameda Loan Collateral is associated with Alameda or one of its affiliates.  And in particular, a portion of the Alameda Loan Collateral is held in FTX Token. FTX Token is not traded on the Debtors' platform and, therefore, is not held by any account holders.  Conversely, the outstanding Alameda Loans were made in Bitcoin and Ether, two of the most popular cryptocurrencies held on the Debtors' platform.  Thus, it is preferable for the Debtors to obtain the prompt return of Bitcoin and Ether versus continuing to hold the FTX Token as Alameda Loan Collateral. The monetization of that collateral, if it ever became necessary, would require the Debtors to sell FTX Token and buy different cryptocurrency assets to distribute to creditors, resulting in a potentially taxable event and potentially reducing the value of the Debtors' estates further if the purchased assets have appreciated by more than FTX Token during the pendency of these chapter 11 cases.

24.     **Third**, unwinding the outstanding Alameda Loans and returning the Alameda Loan Collateral benefits the Debtors' marketing process by simplifying the assets purchased.  As discussed in the Ehrlich Declaration, some bidders may have reservations about acquiring large loans to a single counterparty, especially a counterparty that may be a competing bidder in the auction.  Unwinding the loans eliminates that concern.  The Debtors made Alameda aware of this concern and Alameda agreed to return the fixed-term loans that were not due until late November and late December, at the Debtors' request, which they were under no obligation to do.

25.     **Fourth**, unwinding the Alameda Loans significantly streamlines the sale process by eliminating the need for bidders to evaluate the credit risk of acquiring the Alameda Loans.

### Motion Practice

26.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

### Waiver of Stay under Bankruptcy Rule 6004(h)

27.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Notice

28.     The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable:  (a) the U.S. Trustee; (b) the Committee; (c) the lender under the Debtors' prepetition loan facility; (d) the United States Attorney's Office for the Southern District of New York; (e) the Internal Revenue Service; (f) the Toronto Stock Exchange; (g) the attorneys general in the states where the Debtors conduct their business operations; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

29.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated:  September 12, 2022
New York, New York

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:         jsussberg@kirkland.com
                cmarcus@kirkland.com
                christine.okike@kirkland.com
                allyson.smith@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## ORDER (I) AUTHORIZING THE DEBTORS TO
## RETURN COLLATERAL AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing and directing the Debtors to return the Alameda Loan Collateral upon the repayment of the Collateralized Alameda Loans; and (b) granting related relief, all as more fully set forth in the Motion and Ehrlich Declaration; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The Debtors are authorized to perform, execute, and deliver all documents, and take all actions, necessary to immediately unwind the Collateralized Alameda Loans in accordance with the terms, conditions, and agreements set forth in the Payoff Letter attached hereto as **Exhibit 1** which is hereby approved.

3.      The Debtors are authorized and directed to return the Alameda Loan Collateral to Alameda in connection with and upon the repayment and unwinding of the Collateralized Alameda Loans pursuant to Paragraph 2 of this Order.

4.      Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual,

2

common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors

expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all

such liens.  Any payment made pursuant to this Order is not intended and should not be construed

as an admission as the validity of any particular claim or a waiver of the Debtors' rights to

subsequently dispute such claim.

5.      Notwithstanding anything to the contrary in the Motion, this Order, or any findings

announced at the Hearing, nothing in the Motion, this Order, or announced at the Hearing

constitutes a finding under the federal securities laws as to whether crypto tokens or transactions

involving crypto tokens are securities, and the right of the United States Securities and Exchange

Commission to challenge transactions involving crypto tokens on any basis is expressly reserved.

6.      Notice of the Motion as provided therein shall be deemed good and sufficient notice

of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied

by such notice.

7.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order

are immediately effective and enforceable upon its entry.

8.      The Debtors are authorized to take all actions necessary to effectuate the relief

granted in this Order in accordance with the Motion.

9.      This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit A</u>**

**Ehrlich Declaration**

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF STEPHEN EHRLICH,**
**CHIEF EXECUTIVE OFFICE OF THE DEBTORS, IN SUPPORT OF THE**
**DEBTORS' MOTION SEEKING ENTRY OF AN ORDER (I) AUTHORIZING THE**
**DEBTORS TO RETURN COLLATERAL AND (II) GRANTING RELATED RELIEF**

I, Stephen Ehrlich, hereby declare as follows under penalty of perjury that the following is

true and correct to the best of my knowledge, information, and belief:

1.    I am the Chief Executive Officer of Voyager Digital Holdings, Inc. ("Voyager").

Voyager is a debtor and debtor in possession in the above-captioned cases along with two of its

debtor subsidiaries and affiliates (collectively, the "Debtors").

2.    I am familiar with the Debtors' day-to-day operations, businesses and financial

affairs, and books and records including Master Loan Agreement, Alameda Loan Term Sheets,

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC
(8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY
10003.

and Alameda Loans as set forth in the *Debtors' Motion Seeking Entry of an Order (I) Authorizing the Debtors to Return Collateral and (II) Granting Related Relief* (the "Motion").[2]

3.    I submit this declaration (this "Declaration") in support of the Motion.  Except as otherwise indicated, the statements set forth in this Declaration are based upon:  my personal knowledge; my review of relevant documents and information concerning the Debtors' operations, financial affairs, and restructuring initiatives; and information obtained from other members of the Debtors' management team and advisors.  I am authorized to submit this Declaration on behalf of the Debtors.  I am over the age of eighteen, and, if called upon to testify, I could and would testify competently to the facts and opinions set forth in this declaration.

### The Alameda Loans

4.    I believe that unwinding the outstanding Alameda Loans and returning the Alameda Loan Collateral is in the best interests of all stakeholders and will maximize the value of the Debtors' estates.  ***First***, unwinding the outstanding Alameda Loans will result in an influx of cryptocurrency assets that exceeds the value of the Alameda Loan Collateral by approximately $34,438,550.  Additionally, a portion of the collateral held on account of the Alameda Loans is held in cryptocurrency that is not traded on the Debtors' platform or held by the Debtors' customers. Conversely, the outstanding Alameda Loans were made in Bitcoin and Ether, two of the most popular cryptocurrencies held on the Debtors' platform.  Recalling the Bitcoin loaned to Alameda also protects against any further deficiency in Bitcoin held by the Debtors. If the Debtors were later unable to unwind the outstanding Alameda Loans, the Debtors will need to sell the collateral on the market and buy other forms of cryptocurrency to distribute to creditors, resulting

---

[2]    Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Motion.

in a taxable event for the Debtors and potentially reducing the value of the Debtors' estates. Ultimately, I believe that returning the Alameda Loan Collateral and unwinding the outstanding Alameda Loans will maximize the distributions that the Debtors can make to creditors on account of their claims.

5.      **Second**, returning the Alameda Loan Collateral and unwinding the outstanding Alameda Loans directly benefits the Debtors' marketing process.  Alameda is a participant in such process.  Some bidders may have reservations about acquiring large loans to a single counterparty, especially a counterparty that may be a competing bidder in the auction.  Unwinding the loans eliminates that concern.  Alameda is aware of this concern and agreed to return the fixed-term loans that were not due until late November and late December, at the Debtors' request, which they were under no obligation to do.

6.      Accordingly, returning the Alameda Loan Collateral and unwinding the outstanding Alameda Loans is in the best interests of the Debtors' estates and should be approved.

*[Remainder of page intentionally left blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct to the best of my knowledge, information and belief.

Dated:  September 12, 2022
New York, New York

/s/ Stephen Ehrlich
Name:  Stephen Ehrlich
Title:  Co-Founder  and  Chief  Executive
Officer; Voyager Digital Ltd.

**<u>Exhibit 1</u>**

**Payoff Letter**