**Hearing Date:  September 29, 2022, at 2:00 p.m. (prevailing Eastern Time)**
**Objection Deadline:  September 22, 2022, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF HEARING OF DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF GRANT THORNTON LLP TO PROVIDE TAX COMPLIANCE SERVICES AND TAX ADVISORY SERVICES EFFECTIVE AS OF JULY 5, 2022

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Application for Entry of an Order Authorizing the Employment and Retention of Grant Thornton LLP to Provide Tax Compliance Services and Tax Advisory Services Effective as of July 5, 2022* (the "Application")
will be held on **September 29, 2022, at 2:00 p.m., prevailing Eastern Time** (the "Hearing").  In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted telephonically.  Any parties wishing to participate must do so by making arrangements through CourtSolutions by visiting https://www.court-solutions.com.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Application shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served so as to be actually received by **September 22, 2022, at 4:00 p.m., prevailing Eastern Time**, by (i) the entities on the Master Service List available on the case website of the above-captioned debtors and debtors in possession (the "Debtors") at https://cases.stretto.com/Voyager and (ii) any person or entity with a particularized interest in the subject matter of the Application.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing. Failure to file a timely objection may result in entry of a final order granting the Application as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Application and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/Voyager. You may also obtain copies of the Application and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank]*

Dated:  September 14, 2022
New York, New York

/s/ Joshua A. Sussberg

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          jsussberg@kirkland.com
                cmarcus@kirkland.com
                christine.okike@kirkland.com
                allyson.smith@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**Hearing Date:  September 29, 2022, at 2:00 p.m. (prevailing Eastern Time)**
**Objection Deadline:  September 22, 2022, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | Case No. 22-10943 (MEW) |
| Debtors. | (Jointly Administered) |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER**
**AUTHORIZING THE EMPLOYMENT AND RETENTION**
**OF GRANT THORNTON LLP TO PROVIDE TAX COMPLIANCE**
**SERVICES AND TAX ADVISORY SERVICES EFFECTIVE AS OF JULY 5, 2022**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>")

respectfully state the following in support of this application (this "<u>Application</u>"):[2]

**<u>Relief Requested</u>**

1.     The Debtors seek entry of an order, substantially in the form attached hereto as

**<u>Exhibit A</u>** (the "<u>Order</u>"):  (a) approving the employment and retention of Grant Thornton LLP

("<u>Grant Thornton</u>") to provide tax accounting, tax compliance services, and tax advisory services

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]     Capitalized terms used in this Application and not immediately defined have the meanings given to such terms elsewhere in this Application.

effective as of July 5, 2022, in accordance with the terms and conditions set forth in that certain engagement letter dated April 1, 2022 (the "Engagement Letter"), and those certain statements of work, dated August 23, 2022 (the "Statements of Work" and together with the Engagement Letter, the "Engagement Agreements"), attached hereto as **Exhibit B**; and (b) granting related relief.  In support of this Application, the Debtors submit the *Declaration of Adam Lehmann in Support of Debtors' Application for Entry of an Order (I) Authorizing the Employment and Retention of Grant Thornton LLP to Provide Tax Compliance Services and Tax Advisory Services Effective as of July 5, 2022* (the "Lehmann Declaration"), attached hereto as **Exhibit C**.

**Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012.  The Debtors confirm their consent to the Court entering a final order in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 327(a) and 328 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

**Background**

5.      On July 5, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and

2

circumstances of these chapter 11 cases is set forth in the *Declaration of Stephen Ehrlich, Chief Executive Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 15] (the "First Day Declaration"), incorporated by reference herein.

6.      The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 18].  On July 19, 2022, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 102] (the "Committee").  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

### Grant Thornton's Qualifications

7.      Grant Thornton is the U.S. member of Grant Thornton International Ltd., a global audit, tax, and advisory organization of separate and independent network firms providing services in more than 135 countries.  Grant Thornton LLP has more than 45 offices in the United States. The professionals in Grant Thornton's Tax Practice consist of senior tax, accounting, and other professionals specializing in tax, financial, business, and strategic advice to enterprises, including distressed enterprises.  Grant Thornton has significant qualifications, experience, and extensive knowledge in the fields of accounting and taxation for large, sophisticated companies, both in and out of chapter 11 bankruptcy.  Accordingly, the Debtors have determined that Grant Thornton has the resources and experience necessary to perform tax accounting, tax compliance services, and tax advisory services in these chapter 11 cases.

8.      Grant Thornton has provided accounting and tax advisory services in numerous large cases in this and other jurisdictions, including:  *In re Bouchard Transp. Co., Inc.*, No. 20-34682 (DRJ) (Bankr S.D. Tex. July 26, 2021); *In re Gulfport Energy Corp.*, No. 20-35562

(DRJ) (Bankr. S.D. Tex. Feb. 4, 2021); *In re Stage Stores, Inc.*, No. 20-32564 (DRJ) (Bankr. S.D. Tex. Sept. 25, 2020); *In re Unit Corp.*, No. 20-32740 (DRJ) (Bankr. S.D. Tex. Sept. 11, 2020); *In re LSC Commc'ns, Inc.*, No. 20-10950 (SHL) (Bankr. S.D.N.Y. Aug. 18, 2020); *In re Akorn, Inc.*, No. 20-11177 (KBO) (Bankr. D. Del. June 23, 2020); *In re Purdue Pharma L.P.*, No. 19-23649 (RDD) (Bankr. S.D.N.Y. Sept. 27, 2021).[3]

9.    The Debtors seek to employ and retain Grant Thornton because of Grant Thornton's relationship with the Debtors and Grant Thornton's expertise and extensive knowledge of federal, state, and local tax matters. Grant Thornton has served as the Debtors' tax consultant since April 2021. By virtue of its prior engagement, Grant Thornton is familiar with the books, records, financial information, and other data maintained by the Debtors and is qualified and best positioned to continue to provide tax consultation services to the Debtors in an efficient and cost-effective manner.

10.    In providing such prepetition professional services to the Debtors, Grant Thornton has become familiar with the Debtors and their businesses, including the Debtors' financial affairs, capital structure, operations, and related matters. In addition, Grant Thornton has provided many of the Services (as defined below) to the Debtors in connection with their restructuring efforts. Accordingly, Grant Thornton is both well-qualified and uniquely able to provide tax compliance services and tax advisory services to the Debtors in these chapter 11 cases in an efficient and timely manner. The Debtors believe that Grant Thornton's employment is in the best interests of the Debtors, their estates, and their creditors.

---

[3]    Because of the voluminous nature of the orders cited herein, such orders are not attached to the Application. Copies of such orders are available on request of the Debtors' counsel.

## Services to be Provided

11.     Subject to further order of the Court and consistent with the Engagement Agreements, Grant Thornton will provide tax compliance services and tax and accounting advisory services as Grant Thornton and the Debtors shall deem appropriate and feasible in order to advise the Debtors during the course of these chapter 11 cases, including, but not limited to the following services (collectively, the "Services"):[4]

(a)     Prepare federal and state corporate income tax returns for the taxable years ending December 31, 2021, and June 30, 2022 (a list of entities is in the Statements of Work attached hereto as **Exhibit B**);

(b)     Assist the Debtors with an initial assessment of how the Debtors' tax revenue recognition methods of accounting may be impacted by Revenue Procedure 2021-34;

(c)     Assist in the computation of book-to-tax differences for "Schedule M" items;

(d)     Identify any "true-ups" in prior year book to tax differences;

(e)     Preliminarily calculate a current income tax liability or asset for the estimated income taxes payable or refundable at the end of the reporting year;

(f)     Preliminarily calculate deferred income tax liabilities and assets for the estimated future income tax effects attributable to temporary differences and carryforwards existing at the end of the applicable reporting year;

(g)     Assist management in the evaluation of the necessity of a valuation allowance, if any;

(h)     Assist management with uncertain tax position reporting by performing certain services;

(i)     Assist management in preliminarily calculating income tax expense for the applicable reporting year;

---

[4]   Further detail on the specific services to be provided by Grant Thornton is outlined in the Statements of Work agreed upon by the Debtors and Grant Thornton consistent with the Engagement Agreements. The current Statements of Work are attached hereto as **Exhibit B**. To the extent that there are any discrepancies between the summary provided herein and the Engagement Agreements, the terms and conditions of the Engagement Agreements shall govern in all respects.

(j)     Prepare journal entries, as may be necessary, to conform to books and records to the preceding, preliminary calculations for management's review/approval;

(k)     Assist management in drafting the income tax footnotes to the financial statements;

(l)     Discuss, if approved by management and necessary in the circumstances, Grant Thornton's services with the independent auditor;

(m)     Assist management in accounting for income taxes during the interim period occurring during the year ending June 30, 2023;

(n)     Calculate the estimated annual effective tax rate applicable to ordinary income or loss from continuing operations in each interim period; and

(o)     Preliminarily compute the income tax (or benefit) applicable to significant, unusual, or infrequently occurring items, discontinued operations, or other comprehensive income.

12.     In addition to the foregoing, Grant Thornton will provide other accounting and tax consultation and advisory services as may be requested from time to time. To the extent those requested services are outside the scope of the Engagement Agreements, Grant Thornton and the Debtors may enter into new statements of work or may amend the Engagement Agreements to reflect any substantive changes.

**Efforts to Avoid Duplication of Services**

13.     The Debtors intend that the services of Grant Thornton will not duplicate the services rendered by any other professional retained in these chapter 11 cases. Grant Thornton understands that the Debtors have retained and may retain additional professionals during the term of the engagement and, to the extent necessary, agrees to work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors. Grant Thornton has been chosen to provide the Services outlined herein, which are distinct from the services to be provided by other professionals. The Debtors will work closely

6

with Grant Thornton and the other professionals to prevent any unnecessary duplication of efforts with respect to the services performed by the other professionals and Grant Thornton.

## Professional Compensation

14.     Pursuant to section 328(a) of the Bankruptcy Code, the Debtors request that the Court approve the retention of Grant Thornton at the rates expressed in the Statements of Work, either based on hours actually expended by each assigned staff member at each staff member's hourly billing rate or based on an otherwise agreed proposal rate.  In the normal course of Grant Thornton's business, hourly rates are subject to periodic increase.  To the extent such hourly rates are increased, Grant Thornton requests that, with respect to the work to be performed after such increase, the rates listed below be amended to reflect the increase.

15.     The Debtors have agreed to compensate Grant Thornton pursuant to the rates agreed upon in the Statements of Work.  Grant Thornton estimates its Services will total approximately $140,000.

16.     Grant Thornton's hourly rates as negotiated with the Debtors for professional services rendered are as follows:[5]

### Tax Compliance/Preparation Services

| Professional | Hourly Rate |
| --- | --- |
| Partner/Managing Director | $1,120 |
| Senior Manager/Director | $955 |
| Manager | $835 |
| Senior Associate | $605 |
| Associate | $415 |

---

[5]   If, in connection with any subsequent agreements, Grant Thornton is retained to perform additional services at different rates, such rates will be disclosed in connection with the relevant agreements.  As stated above, Grant Thornton and the Debtors do not intend to seek separate retention orders with regard to any such agreements.

**Tax Advisory Work**
**(reflecting an approximate 50 percent discount)**

| Professional | Hourly Rate |
| --- | --- |
| Partner/Managing Director | $560 |
| Senior Manager/Director | $475 |
| Senior Associate/Manager | $415 |
| Associate | $300 |
| Paraprofessional | $200 |

17.     Grant Thornton will also seek reimbursement for reasonable, documented, and out-of-pocket expenses incurred, including, but not limited to overtime meals, lodging, travel, and other similar out-of-pocket expenses incurred in providing professional services.

18.     Grant Thornton expects to incur a nominal amount of fees and expenses of its outside counsel incurred in connection with this engagement.  Grant Thornton has retained the law firm of Sklar Kirsh LLP ("Sklar") to represent it on this engagement, including potentially assisting the Debtors in preparing all fee applications and addressing any issues raised by the Debtors or the Office of the United States Trustee related to Grant Thornton's retention to provide tax compliance services and tax advisory services.  Sklar represents Grant Thornton in a similar capacity in other bankruptcy proceedings and has substantial experience with respect to retention matters in this Court.  Thus, Sklar can work on these matters very efficiently as opposed to having unfamiliar counsel work through a description of the engagement, conflicts, matters, and other issues.

19.     Grant Thornton intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330* (the "U.S. Trustee

8

1996 Guidelines"), and any other applicable procedures and orders of the Court, on an hourly basis. To that end, the Debtors have filed the *Debtors' Motion for Entry of an Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief* [Docket No. 95], pursuant to which Grant Thornton intends to submit requests for compensation.

20.    According to Grant Thornton's books and records, during the 90-day period prior to the Petition Date, Grant Thornton received approximately $40,230 from the Debtors for professional services performed and expenses incurred. As of the Petition Date, $5,475 in prepetition amounts were owed to Grant Thornton. Grant Thornton has agreed to waive such prepetition amounts owed as a condition to their being retained in these chapter 11 cases.

**Grant Thornton's Disinterestedness**

21.    In connection with the proposed retention by the Debtors in these chapter 11 cases, Grant Thornton received and reviewed a list of parties-in-interest from the Debtors (the "Parties-In-Interest") and has run a conflict check on the individuals/entities on the list attached hereto as **Schedule 1**. The results of that search are attached hereto as **Schedule 2.**

22.    Grant Thornton has reviewed its internal electronic databases and, to the best of the Debtors' knowledge and except to the extent disclosed herein and in the Lehmann Declaration, Grant Thornton: (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (b) does not hold or represent an interest adverse to the Debtors' estates; and (c) has no connection to the Debtors, their creditors, or their related parties. To the extent that Grant Thornton discovers any new relevant facts or relationships bearing on the matters described herein during the period of Grant Thornton's retention, Grant Thornton will use reasonable efforts to file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

9

**Basis for Relief**

23.     Section 327(a) of the Bankruptcy Code provides that a debtor subject to court

approval:

> [M]ay employ one or more attorneys, accountants, appraisers,
> auctioneers, or other professional persons, that do not hold or
> represent an interest adverse to the estate, and that are disinterested
> persons, to represent or assist the [debtor] in carrying out the
> [debtor]'s duties under this title.

11 U.S.C § 327(a).

24.     Moreover, Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name
> of the [firm] to be employed, the reasons for the selection, the
> professional services to be rendered, any proposed arrangement for
> compensation, and, to the best of the applicant's knowledge, all of
> the [firm's] connections with the debtor, creditors, any other party
> in interest, their respective attorneys and accountants, the United
> States trustee, or any person employed in the office of the United
> States trustee.

Fed. R. Bankr. P. 2014(a).

25.     The terms and conditions of the Engagement Agreements were negotiated by the

Debtors and Grant Thornton at arm's length and in good faith.  The Debtors and Grant Thornton

respectfully submit that the terms of Grant Thornton's retention are customary and reasonable for

accounting and tax consultation engagements, both out of court and in comparable chapter 11

cases, and in the best interests of the Debtors' estates, creditors, and all Parties-In-Interest.

26.     Finally, the Court also has discretion to issue an order approving the employment

of an estate professional effective as of the Petition Date.  *See In re Triangle Chemicals, Inc.*, 697

F.2d 1280, 1288-89 (5th Cir. 1983); Local Rule 2014-1(b).  The Debtors believe that employment

of Grant Thornton effective as of the Petition Date is warranted under the circumstances of these

chapter 11 cases.  More specifically, Grant Thornton has provided, and will continue to provide,

10

valuable services to the Debtors.  *See, e.g.*, *In re Ark. Co.*, 798 F.2d 645, 648 (3d Cir. 1986) (collecting cases) ("[T]he bankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power.").  Since the commencement of these chapter 11 cases, Grant Thornton has been working diligently to undertake its conflicts checking processes in order to be able to submit the Lehmann Declaration in support of this Application.  To the best of the Debtors' knowledge, approval of this Application will not prejudice any parties in interest, because, among other things, the services provided by Grant Thornton will assist the Debtors in their compliance with their taxation requirements, which is in the best interest of the Debtors' estates and their creditor constituencies.

## **Notice**

27.     The Debtors will provide notice of this Application to the following parties and/or their respective counsel, as applicable:  (a) the U.S. Trustee; (b) the Committee; (c) the lender under the Debtors' prepetition loan facility; (d) the United States Attorney's Office for the Southern District of New York; (e) the Internal Revenue Service; (f) the Toronto Stock Exchange; (g) the attorneys general in the states where the Debtors conduct their business operations; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

28.     No prior request for the relief sought in this Application has been made to this or any other court.

*[Remainder of page intentionally left blank]*

11

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated:  September 14, 2022
New York, New York

/s/ *Stephen Ehrlich*
_____
Name:  Stephen Ehrlich
Title:  Co-Founder and Chief Executive Officer
Voyager Digital Ltd.

## **EXHIBIT A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER GRANTING THE DEBTORS' APPLICATION FOR
ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND
RETENTION OF GRANT THORNTON LLP TO PROVIDE TAX COMPLIANCE
SERVICES AND TAX ADVISORY SERVICES EFFECTIVE AS OF JULY 5, 2022**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in

possession (collectively, the "Debtors"), for entry of an order (this "Order") authorizing the

Debtors to retain and employ Grant Thornton LLP ("Grant Thornton") to provide tax compliance

services and tax advisory services effective as of the Petition Date; all as more fully set forth in

the Application and the Lehmann Declaration; and this Court having found that it has jurisdiction

over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of*

*Reference from the United States District Court for the Southern District of New York*, entered

February 1, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2); and this Court having found that venue of this case and the Application in this district

is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief

requested in the Application is in the best interests of the Debtors' estates, their creditors, and other

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]    Capitalized terms used in this Order and not defined have the meanings given to such terms in the Application.

Parties-in-Interest; and this Court having found that the Debtors provided appropriate notice of the Application and the opportunity for a hearing on the Application under the circumstances; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing, if any, before the Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Application is granted as set forth herein, effective as of the Petition Date.

2.      The Debtors are authorized pursuant to sections 327(a) and 328 of the Bankruptcy Code to employ and retain Grant Thornton to provide tax compliance services and tax advisory services accordance with the terms and conditions set forth in the Application and in the Engagement Agreements, subject to the terms of this Order.

3.      Notwithstanding anything in the Engagement Agreements to the contrary, for the avoidance of doubt, the Bankruptcy Court shall have jurisdiction over any and all matters arising under or in connection with Grant Thornton's engagement by the Debtors on behalf of the Debtors and the Engagement Agreements.

4.      Any provision in the Engagement Agreements that would entitle Grant Thornton to an administrative recovery fee for the administrative time incurred in performing the Services shall be of no force or effect.

5.      Grant Thornton shall be compensated for fees and reimbursed for reasonable and necessary documented expenses and will file interim and final fee applications for allowance of its compensation and expenses in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Order Establishing Procedures for Monthly

Compensation and Reimbursement of Expenses of Professionals, dated December 21, 2010 (General Order M-412), Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York, dated January 29, 2013 (General Order M-447), the U.S. Trustee 1996 Guidelines, and any applicable orders of this Court. Without limiting the foregoing, any request for reimbursement of expenses relating to Grant Thornton's counsel, Sklar Kirsh LLP, or for any other professional shall be made in accordance with Local Rule 2016-1.

6.      Grant Thornton shall provide ten business-days' notice to the Debtors, the U.S. Trustee, and the Committee before any increases in the rates set forth in the Application or the Engagement Agreements are implemented and shall file such notice with the Court. The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

7.      In the event that Grant Thornton seeks reimbursement from the Debtors for attorneys' fees and expenses pursuant to the Application and the Engagement Agreements, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Grant Thornton's own applications, both interim and final, and such invoices and time records shall be subject to the approval of the Court pursuant to section 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code. Attorneys' fees and/or expenses reimbursed under the Engagement Agreements shall be limited to those expended in representing Grant Thornton in retention and fee application matters. For the avoidance of doubt, the preceding sentence does not

apply to, and in no way limits, the provisions with respect to reimbursement of attorneys' fees and/or expenses set forth in Engagement Agreements with respect to indemnification.

8.      The indemnification, exculpation, contribution, and reimbursement provisions included in <u>Attachment A</u> to the Engagement Letter are approved, subject during the pendency of these chapter 11 cases to the following modifications:

(a)      All requests of Grant Thornton for payment of indemnity pursuant to the Engagement Agreements shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Agreements and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, provided, however, that in no event shall Grant Thornton be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct;

(b)      In the event that Grant Thornton seeks reimbursement from the Debtors for reasonable attorneys' fees in connection with a request by Grant Thornton for payment of indemnity pursuant to the Engagement Agreements, as modified by this Order, the invoices and supporting time records from such attorneys shall be included in Grant Thornton's own application (both interim and final), and such invoices and time records shall be subject to the Fee Guidelines and the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code;

(c)      Grant Thornton shall not be entitled to reimbursement by the Debtors for any fees, disbursements, and other charges of Grant Thornton's counsel other than those incurred in connection with a request of Grant Thornton for payment of indemnity, retention of Grant Thornton, and preparation of fee applications; and

(d)      In no event shall Grant Thornton be indemnified if the Debtor(s) or representatives of the estates assert a claim for, and a court determines by final order that such claim arose out of, Grant Thornton's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

9.      Notwithstanding anything in the Application to the contrary, to the extent that Grant Thornton uses the services of independent contractors or subcontractors (collectively,

4

the "Contractors") in these cases, Grant Thornton shall (i) pass through the cost of such Contractors to the Debtors at the same rate that Grant Thornton pays the Contractors; (ii) seek reimbursement for actual costs only; (iii) ensure that the Contractors are subject to the same conflict checks as required for Grant Thornton; and (iv) file with the Court such disclosures required by Bankruptcy Rule 2014.

10.    Services other than those set forth in the Application that the Debtors may request that Grant Thornton provide during the course of these chapter 11 cases, and as agreed to by Grant Thornton, shall be subject to separate application and order of this Court.

11.    Notwithstanding any provision to the contrary in the Engagement Agreements, any dispute relating to the services provided by Grant Thornton shall be referred to arbitration or mediation consistent with the terms of the Engagement Agreements only to the extent that this Court does not have, retain, or exercise jurisdiction over the dispute, and 28 U.S.C. § 1334(e)(2) shall govern the forum for resolving fee disputes.

12.    Grant Thornton shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

13.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

14.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

15.    To the extent the Application or Engagement Agreements are inconsistent with this Order, the terms of this Order shall govern.

16.    The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT B

**Engagement Agreements**



April 1, 2021

Voyager Digital Holdings Inc.
33 Irving Place, 3rd Floor
New York, New York 10003

**GRANT THORNTON LLP**
75 State St., 13th Floor
Boston, Massachusetts 02109

**D** + 1 617 723 7900
**F** + 1 617 723 3640
**S** linkd.in/grantthorntonus
twitter.com/grantthorntonus

Dear Mr. Psaropoulos:

Grant Thornton LLP ("Grant Thornton") is pleased to provide tax services (the "Services") to Voyager Digital Holdings Inc. and affiliates ("Client"). The purpose of this letter, Attachment A, and any related Statement(s) of Work (collectively, the "Agreement"), as defined below, is to confirm the scope and terms of the engagement.

The Agreement is intended to remain in effect indefinitely from the date of this letter (the "Effective Date"), unless terminated or modified in accordance with Attachment A. It is structured to facilitate serving Client's current and future tax services needs by allowing multiple tax services to be provided under this Agreement through the execution of additional Statements of Work.

## Providing the services

The Services Grant Thornton provides to Client under this Agreement typically will be set forth in distinct Statements of Work signed by Grant Thornton and Client or Client's authorized representatives, specifying matters including scope, deliverables, timing, fees and payment terms. From time to time in the course of the relationship Grant Thornton may perform services Client explicitly requests without a Statement of Work. This Agreement will cover all services rendered whether the parties execute a Statement of Work. Such services will be billed at Grant Thornton's standard hourly rates as appropriate or as otherwise agreed.

Attachment A is an important part of this Agreement; please read it carefully.

If Client fails to meet any undisputed payment obligation under this Agreement, Grant Thornton may immediately suspend performance of the Services. If we elect to suspend performance due to non-payment, the Services will not be resumed until Client's account is paid as agreed, including the payment of any retainer that may be required for continuing services.

## Grant Thornton's professional responsibilities

The Services will be performed in accordance with the American Institute of Certified Public Accountants' Statements on Standards for Tax Services and other applicable professional standards, and applicable federal and state laws and regulations.

Professional and regulatory standards require Grant Thornton to secure Client's consent prior to providing any Client information to third parties, including Client's request to allow workpaper access to third parties. Grant

U.S. member firm of Grant Thornton International Ltd

DocuSign Envelope ID: 76S0A3Z5-9B41-4933-BE96-D64752295589



Thornton will secure Client's written consent before sharing information with any third-party.

Upon Client's request, we will return documents provided to Grant Thornton as well as provide copies of other Client records to the extent required by applicable professional standards. Client is solely responsible for maintaining its books and records, including retaining copies of filed tax returns, and should not rely on Grant Thornton as a record-keeper.

Generally, the Services will be based upon information furnished by Client, and Grant Thornton will not evaluate nor have any responsibility to verify independently the accuracy, completeness or sufficiency of any such information. However, circumstances may arise where Grant Thornton, in its professional judgment, determines that additional fact gathering and due diligence is required.

Federal and State laws and professional standards impose significant responsibilities on tax return preparers, including non-signing preparers who provide tax advice. Grant Thornton prepares tax returns and/or provides tax advice consistent with these professional responsibilities. Grant Thornton's professional responsibilities may include communicating with Client about differences between standards applicable to tax return preparers and penalty provisions that may be imposed on a taxpayer regarding a tax position. Grant Thornton may not sign a tax return or provide tax advice unless a position is supported by sufficient authority or is appropriately disclosed.

The Internal Revenue Code and Treasury Regulations require taxpayers to disclose certain types of transactions, known as reportable transactions, for which failure to disclose may result in the imposition of substantial penalties. For tax return preparation engagements, a completed and signed Reportable Transactions Questionnaire, and Client's cooperation in regard to any follow-up requests for information, are required prior to processing any tax returns Grant Thornton may be engaged to prepare.

Unless expressly stated otherwise in a Statement of Work, any written advice provided by Grant Thornton is limited to the matters and potential tax consequences specifically addressed therein, and not intended or written as advice on the application or potential application of any penalties that may be imposed under any federal, state, or foreign statute or regulation in any manner.

## Term

This Agreement shall remain in full force and effect in accordance with its terms and conditions and shall constitute legal, valid, binding, and enforceable obligations of both Grant Thornton and Client until terminated by either party in accordance with the termination provision set forth in Attachment A. Because applicable professional standards, law, and regulations may change in the future, Grant Thornton reserves the right to amend this Agreement upon appropriate notice and consent of Client.

DocuSign Envelope ID: 76S0A3Z5-9B41-4933-BF96-D6475229F569



## Other matters

Please confirm acceptance of this Agreement by signing this letter below, signing the enclosed Statement(s) of Work, and returning the complete signed Agreement to Grant Thornton. We look forward to the opportunity to serve you.

Sincerely,

**GRANT THORNTON LLP**

Date: 4/1/2021

Adam Lehmann, Partner

**VOYAGER DIGITAL HOLDINGS INC.**

Date: 6/7/2021 | 9:49 AM PDT

Evan Psaropoulos, Chief Financial Officer

# ATTACHMENT A - STANDARD GRANT THORNTON LLP ENGAGEMENT TERMS

This Attachment A – Standard Grant Thornton LLP Engagement Terms (this "Attachment A") is incorporated into and a part of the attached Engagement Letter by and between Grant Thornton LLP ("Grant Thornton") and Voyager Digital Holdings Inc. ("Client"). Any Statement of Work (a "SOW") attached hereto or referencing this Attachment A is incorporated into and subject to the terms and conditions of this Attachment A. The Engagement Letter, each Statement of Work, and this Attachment A are collectively referred to as the "Agreement". Any capitalized terms in this Attachment A that are not defined shall have the meanings set forth in the Engagement Letter.

**1.    Standards of Performance.** Grant Thornton warrants that it will perform the services described in each SOW (the "Services") and provide any reports, information or other documents (the "Deliverables") specified in each SOW in substantial conformity with all applicable professional standards and the terms and conditions set forth in the Agreement. Accordingly, Grant Thornton's Services and the Deliverables shall be evaluated solely on Grant Thornton's substantial conformance with such terms and conditions, professional standards expressly set forth in the SOW, and applicable law. This warranty is in lieu of, and Grant Thornton expressly disclaims, all other warranties, express, implied, or otherwise, including without limitation, any implied warranties of merchantability or fitness for a particular purpose. Grant Thornton cannot and does not warrant computer hardware, software, or services provided by other parties.

**2.    Management Responsibilities.** Grant Thornton assumes no management responsibilities for Client. Accordingly, Client agrees to perform all management responsibilities and oversee the Services by designating an individual, preferably within senior management, who possesses suitable skill, knowledge, and experience, to evaluate the adequacy and results of the Services performed and accept responsibility for the results of the Services.

Because Grant Thornton cannot assume management responsibilities when providing Services, Client agrees that its management, including its designated representative, will make an informed judgment on the results of the Services and be responsible for making the significant judgments and decisions that are the responsibility of management. In addition, Client agrees to undertake: (a) all management decisions and performance of all management functions, including maintaining all internal books and records; (b) the evaluation of the adequacy and results of the Services and responsibility for such results; and (c) the establishment and maintenance of effective internal controls, including monitoring activities, retaining custody of Client's assets, and controlling Client's premises.

**3.    Business Risk Allocations.** The terms of this Section 3 shall apply regardless of the nature of any claim asserted (including but not limited to contract, statute, tort, strict liability, or negligence, whether by Client, Grant Thornton, or others) but such terms shall not apply to the extent finally determined to be contrary to applicable law.

(a)    With respect to the Services and this Agreement generally, the liability of Grant Thornton and its present, future, and former partners, principals, directors, employees, agents and contractors (collectively referred to as the "Grant Thornton Firm") for all claims, including but not limited to the Grant Thornton Firm's own negligence, shall not exceed and shall be limited to the fees payable for the portion of the work giving rise to such liability. This limitation shall not apply to the extent that it is finally determined that any claims, losses, or damages are the result of the Grant Thornton Firm's willful misconduct or fraud.

(b)    EACH PARTY HEREBY WAIVES, AND IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR, ANY INDIRECT, SPECIAL, CONSEQUENTIAL, PUNITIVE, INCIDENTAL, OR EXEMPLARY DAMAGES OR LOSS, INCLUDING WITHOUT LIMITATION, ANY LOST PROFITS, TAXES, INTEREST, PENALTIES, LOSS OF SAVINGS, OR LOST BUSINESS OPPORTUNITY.

(c)    In responding to any claim asserted, each party may avail itself of any defense available under applicable law, but in no event shall the aggregate liability of each party for any claims, losses or damages related to this Agreement exceed an amount that is proportional to the relative fault of such party that is finally determined to have caused the other party's losses.

(d)    Client shall, upon the receipt of written notice, indemnify, defend, and hold harmless the Grant Thornton Firm from and against any liability, damages, fees, expenses, losses, demands and costs (including reasonable defense costs) (collectively, "Losses") associated with third-party claims arising out of or relating to (i) misrepresentations made by, or false or incomplete information provided by, Client or its agents or representatives or (ii) such third party's use of

DocuSign Envelope ID: 76S0A3Z5-9B41-4933-BF96-D64752290589

Agreement dated    April 1, 2021

or reliance upon the Services or Deliverables. Client agrees to reimburse the Grant Thornton Firm for all reasonable expenses, including reasonable attorneys' fees and expenses, as they are incurred in connection with the investigation of, preparation for, or defense of, any pending or threatened claim or action or proceeding for which the Grant Thornton Firm is entitled to indemnification.

(e)    In the event of any controversy or claim against Grant Thornton arising from or related to the Services, Grant Thornton shall be entitled, at its option, to defend itself from such controversy or claim. Grant Thornton also reserves the right to participate in any settlement, administrative, or judicial proceedings. Grant Thornton's decision to abstain or defend or participate in any proceedings as set forth above shall in no way prejudice its rights to indemnification.

**4.    Use of Documentation and Reliance.**

(a)    Professional standards require Grant Thornton to maintain sufficient documentation to support its work. This documentation may include copies of Client's information. However, to the extent that Grant Thornton has copies of Client's information, Grant Thornton will protect and safeguard Client's information from unauthorized disclosure.

(b)    Unless provided for differently in the applicable SOW, all Deliverables provided by Grant Thornton to Client in performing the Services are the sole and exclusive property of Grant Thornton and are prepared solely for the internal use of Client's management, employees and board of directors. Except as provided below, upon full payment of Grant Thornton's billings, Client shall acquire a limited, perpetual, non-transferable, royalty-free license to use the Deliverables for Client's internal business purposes.

(c)    Client agrees to protect all Deliverables from unauthorized use and prevent disclosure of the Deliverables to third parties who may rely on them.  Further, Grant Thornton has not and shall not be deemed to assume any duties or obligations to any third party.

(d)    If the Client wishes to make reference to Grant Thornton or to disclose or disseminate in any manner and in any medium (e.g., Client website), any portion of any Deliverable to a third party Client agrees to first (i) provide Grant Thornton with a draft of the proposed disclosure, (ii) obtain Grant Thornton's advance written approval, and (iii) if requested by Grant Thornton, obtain from any third party and provide Grant Thornton with a non-disclosure agreement and/or release in a form satisfactory to Grant Thornton  in its sole discretion.

(e)    Grant Thornton shall retain sole and exclusive ownership of and all right, title, and interest in and to any know-how, concepts, techniques, methodologies, ideas, processes, models, templates, tools, utilities, routines, trade secrets, and other intellectual property that (i) existed prior to, or were developed independent of, Client's engagement or (ii) may have been discovered, created, or developed by Grant Thornton as a result of its own efforts during the engagement, which are of general application and do not contain Client's confidential information (collectively, the "Grant Thornton Property"). Client shall acquire no right to or interest in the Grant Thornton Property, except for a non-exclusive, non-transferable, royalty-free right to use such Grant Thornton Property solely in connection with Client's permitted use of the Deliverables to the extent any Grant Thornton Property is incorporated therein. Client will not sublicense or otherwise grant any other party any rights to use, copy, or otherwise exploit or create derivative works from the Grant Thornton Property.

(f)    Except as expressly contemplated by the applicable SOW, Grant Thornton assumes no responsibility to update any conclusions or Deliverables.

**5.    Third-Party Proceedings**. Unless expressly provided for, the Services do not include giving testimony or appearing or participating in discovery proceedings, administrative hearings, court, or other legal or regulatory inquiries or proceedings. Except with respect to a dispute or litigation between Grant Thornton and Client, Grant Thornton's costs (including reasonable attorneys' fees) and time spent in legal and regulatory matters or proceedings relating to Grant Thornton's engagement, whether made at the Client's request or by subpoena, request for testimony, or consultation involving private litigation, arbitration, industry, or government regulatory inquiries, will be billed to Client separately.

**6.    Access to Resources and Information**. Unless specified in a SOW as the responsibility of Grant Thornton to provide, Client shall have obtained on a timely basis as required for Grant Thornton's performance of the Services (i) any internal and third-party permissions, licenses or approvals (including use of any necessary software or data); and (ii) all information, approvals and assistance as may be necessary or as Grant Thornton may reasonably request. Grant Thornton's personnel assigned to any engagement shall not be assumed or deemed to have knowledge of information provided to other Grant Thornton engagement teams or third parties.

DocuSign Envelope ID: 7650A3Z5-9B41-4933-BF96-D647522DE589

Agreement dated    April 1, 2021

**7.    Term and Termination**. This Agreement will commence on the Effective Date and it will not expire, unless earlier terminated as provided in this Section. Grant Thornton and Client shall each have the right to terminate this Agreement (or applicable SOW therein), in whole or in part at any time without further obligation to the other by giving not less than thirty (30) days written notice to the other party. Further, Grant Thornton shall have the right to terminate this Agreement and/or any SOW immediately if it discovers practices by Client that it deems dishonest, fraudulent, or illegal; or Grant Thornton determines that application of or changes in applicable rules or professional standards, such as those established by the American Institute of Certified Public Accountants, Public Company Accounting Oversight Board, or U.S. Securities and Exchange Commission, restrict the Grant Thornton Firm's ability to complete the work.  If either party terminates this Agreement or any SOW as set forth in this Section, Client agrees to pay Grant Thornton for the Services performed, including out-of-pocket expenses and costs, rendered up to the date of such termination.  Grant Thornton retains the right to suspend or terminate the Services in the event of nonpayment.  Services will not be resumed until Client's account is paid as agreed.

**8.    Third-Party Service Providers.**  Grant Thornton LLP is the U.S. member firm of Grant Thornton International Ltd ("GTIL"), a global organization of member firms. Member firms are neither members of one international partnership nor otherwise legal partners with one other. There is no common ownership, control, governance, or agency relationship among member firms.  GTIL and its member firms are not agents of, and do not obligate, one another and are not liable for one another's acts or omissions. In the event Grant Thornton subcontracts some of the Services to a GTIL member firm, Grant Thornton takes sole responsibility for all work performed in relation to the applicable SOW and Client agrees that, with respect to work that is the subject of the SOW, its sole recourse is against Grant Thornton.

Additionally, Grant Thornton may use third parties to provide administrative and operational support to Grant Thornton business operations, or to provide engagement team resource services. All of these third-party service providers are subject to confidentiality obligations to protect the confidentiality of client data. Such entities may be located within or outside the United States.

**9.    Electronic Communications**. During the course of the engagement, the parties may need to electronically transmit confidential information to each other and to third-party service providers or other entities engaged by either Grant Thornton or Client. Electronic methods include telephones, mobile devices, e-mail, cloud services and fax. All forms of electronic communication have inherent security weaknesses, and the risk of compromised confidentiality cannot be eliminated. Client agrees to the use of electronic methods to transmit and receive information, including confidential information. Grant Thornton shall not be liable for any loss, damage, expense, inconvenience, or harm resulting from the loss, delay, interception, corruption, or alteration of any electronic communication due to any reason beyond its reasonable control.

If applicable, Grant Thornton may use automated data gathering tools developed by it, its affiliates, or third-party providers, such as SQL scripts to extract data for further analysis for purposes of the applicable engagement.  These tools are designed to be executed by the Client's information technology professionals within the Client's information systems environment. Client hereby consents and authorizes Grant Thornton to use these tools only for the purpose of performing the applicable engagement.

Grant Thornton shall not be responsible for any service interruptions of, or corruption or damages to, Client's or third-party information systems and the information and data contained therein, including but not limited to denial of access, and automatic shutdown of information systems caused by or resulting from Grant Thornton's performance of the Services.

**10.    Management Representations**. Grant Thornton's findings, conclusions, and recommendations are limited solely to the matters for which Grant Thornton was engaged. No conclusions should be inferred as to any matters not specifically covered by the applicable SOW. Further, the findings, conclusions, and recommendations are based upon the facts and information presented by Client and may be inapplicable if the actual facts differ from those presented in any respect.

Because of the importance of the information that Client provides to Grant Thornton with respect to Grant Thornton's ability to perform the Services, Client hereby releases the Grant Thornton Firm from any liability, damages, fees, expenses, and costs (including defense costs) relating to the Services, that arise from or relate to any information (including representations by management) provided by Client, its personnel or agents, that is misleading or not complete, accurate, or current.

**11.    Confidential Information.**  Each party (the "Disclosing Party") may disclose to the other party (the "Receiving Party") information that it considers confidential or proprietary ("Confidential Information").

(a)    Confidential Information includes but is not limited to (i) reports, financial information, studies, drawings, contracts, business plans, inventions, technical information, know-how, plans, and specifications and (ii) any information or data which is disclosed by a party to the other party under or in contemplation of this Agreement which

Agreement dated    April 1, 2021

has been marked or identified as confidential or which a reasonable person would know to be confidential or proprietary due to the circumstances of its disclosure or is marked as such. Client will provide the minimum amount of Confidential Information and minimum access to such information necessary for Grant Thornton to perform the Services.

(b)    A party's Confidential Information shall not include information that (i) is or becomes part of the public domain through no act or omission of the other party; (ii) was in the other party's lawful possession prior to the disclosure and had not been obtained from the Disclosing Party; (iii) is lawfully disclosed to the other party by a third party without restriction on disclosure; or (iv) is independently developed by one party without use of or reference to the other party's Confidential Information. In addition, nothing contained herein shall be construed as preventing either party from using the information retained from the Confidential Information of the other party as part of its general skill, knowledge, talent, and expertise.

(c)    The Receiving Party agrees to hold in confidence and not to disclose or reveal to any person or entity except its Representatives (as defined below), the Confidential Information of the Disclosing Party. The Receiving Party further agrees to protect the Disclosing Party's Confidential Information in the same manner it protects its own confidential information, provided no less than reasonable care shall be used. The Receiving Party may disclose Confidential Information to its partners, principals, officers, directors, employees, agents, GTIL member firms, and contractors (collectively, its "Representatives") who have a legitimate need to review such information. The Receiving Party shall be responsible for any breach of this Agreement by its Representatives and shall take all reasonable steps to cause its Representatives to comply with the terms hereof.

(d)    If Receiving Party is requested or required by law, regulation, legal process or an oversight body to disclose Confidential Information, Receiving Party will, to the extent practical and legally permitted, notify Disclosing Party of such request or requirement so that Disclosing Party may seek an appropriate protective order or other relief.  In the absence of a protective order or other applicable relief, Receiving Party may disclose the portion of Confidential Information subject to such request or requirement without liability hereunder.

(e)    Grant Thornton may be requested to make certain documentation available to regulators, governmental agencies, or their representatives ("Regulator(s)") pursuant to law or regulations. If requested, access to the documentation will be provided to Regulators under the supervision of Grant Thornton personnel and at a location designated by Grant Thornton. Furthermore, upon request, Grant Thornton may provide photocopies of selected documentation to Regulators. Regulators may intend, or decide, to distribute the photocopies or information contained therein to others, including other governmental agencies. Client hereby authorizes Grant Thornton to allow Regulators access to, and photocopies of, the documentation in the manner discussed above. To the extent legally permissible, Grant Thornton will notify Client of any requests made by Regulators prior to granting access or release of such information to Regulators.

**12.    Privacy.** Grant Thornton will maintain Client's personal information in confidence in accordance with professional standards and governing laws. Client will not provide any personal information unless necessary for Grant Thornton to perform the Services. Client will strictly limit provision of personal information to that personal information essential to Grant Thornton's performance of the Services. Client will anonymize, mask, obfuscate, and/or de-identify all personal information unless Grant Thornton requires otherwise to provide the Services. Client is responsible for obtaining, pursuant to law or regulation, consents for any personal information that Client provides to Grant Thornton.

**13.    Dispute Resolution.**

(a)    Mediation.  Any controversy or claim arising out of or relating to the Services, related fees, or this Agreement shall first be submitted to mediation. A mediator will be selected by agreement of the parties, or if the parties cannot agree, a mediator acceptable to all parties will be appointed by the American Arbitration Association. The mediation will proceed in accordance with the customary practice of mediation and shall be concluded within sixty (60) days from receipt of written notice unless the parties agree otherwise. Any facts disclosed related to the mediation shall be kept confidential and each side shall pay its own costs of the mediation but will share equally the mediator's expenses.

(b)    Arbitration. In the event mediation is not successfully resolved, then the parties agree that such dispute(s) or claim(s) shall be settled by binding arbitration. The provisions herein supersede any contrary arbitral rules that might otherwise apply. The arbitration proceeding shall take place in Chicago, Illinois unless the parties mutually agree to a different location. The proceeding, including any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of any of these procedures, shall be governed

4

Agreement dated     April 1, 2021

by the provisions of the Federal Arbitration Act and will proceed in accordance with the then current Conflict Prevention & Resolution ("CPR") or the similar rules of another arbitration association if one other than CPR is selected, except that pre-hearing discovery shall be limited as provided for herein or unless specifically authorized by the arbitrators. Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of any of these procedures, shall be governed by the Federal Arbitration Act and resolved by the arbitrators.

      i.      To begin the arbitration process, a party shall provide written notice of the issues to be resolved by arbitration (the "Notice") within fifteen (15) days of the parties' agreement to terminate or waive mediation, and the other party shall respond within twenty one (21) days and shall add any other issues to be resolved within the arbitration. The arbitrators shall only resolve those issues identified in the Notice, and issues that are not identified shall not be arbitrated nor brought to court.

      ii.      The arbitration shall be conducted by three (3) arbitrators. Each party shall select an arbitrator experienced in relevant subject matters within twenty-one (21) days of the Notice. The two (2) designated arbitrators shall then select a third neutral arbitrator within twenty-one (21) days of their selection. It is the parties' intention that the two (2) arbitrators selected by the parties be "neutrals" who will not be informed as to which party selected them. If the two (2) arbitrators cannot agree on selection of a third arbitrator within twenty-one (21) days of their appointment, the governing arbitration agency shall request a list of arbitrators and select a third arbitrator under the agency's rules within thirty (30) days. If both parties are in agreement, the dispute may be heard by one (1) arbitrator selected within sixty (60) days following receipt of the Notice.

      iii.      The parties shall not be entitled to discovery except as it directly relates to the underlying Services that are at issue and shall submit a joint proposed schedule to the arbitrators within thirty (30) days of the arbitrators' selection. Other than described herein, no other discovery is allowed except by the arbitrators and only for good cause shown.

      iv.      Except for impeachment-only information, each party must disclose within thirty (30) days after the selection of the arbitrators: (1) the names, addresses, telephone numbers, and email addresses of persons who have knowledge and/or discoverable information relating to the issues submitted for resolution; (2) its claims and defenses; and (3) a computation showing each element of claimed damages.

      v.      The parties shall be entitled to take (i) up to three (3) depositions and (ii) the depositions of any expert witness who will testify in the arbitration proceeding. No deposition shall exceed seven (7) hours. Each testifying expert shall provide the same materials required under Federal Rule of Civil Procedure 26(a)(2)(B). The parties must confer in good faith to resolve all discovery disputes. If they cannot resolve these themselves, the parties must attempt to do so in conference with the arbitrators. If the dispute is not resolved in conference, the arbitrators must promptly rule on the issues. Each side may file dispositive motions without obtaining leave from the arbitrators but must confer with the other side prior to filing any dispositive motions. All motions should be filed no later than sixty (60) days prior to the arbitration hearing, unless agreed otherwise by the parties or ordered by the arbitrators.

      vi.      The arbitrators shall have no authority to award non-monetary equitable relief or indirect, consequential, or punitive damages. The award of the arbitration shall be in writing and shall be accompanied by a well-reasoned opinion. The award issued by the arbitrators may be confirmed in a judgment by any federal or state court of competent jurisdiction. Each party shall be responsible for its own costs associated with the arbitration, except that the costs of the arbitrators shall be equally divided by each side involved in the arbitration. The arbitration proceeding and all information disclosed during the arbitration shall be maintained as confidential, except as required to confirm the award, or disclosed to professional or regulatory bodies, as required by law or a court of law, or in a related confidential mediation or arbitration. The parties agree that arbitration is the sole and exclusive remedy for disputes arising out of or related to this Agreement. If arbitration is initiated and the other party declines to participate and instead initiates litigation elsewhere, doing so will constitute a default judgment.

(c)      Limitation on Period to File Claims. It is expressly agreed by each party that any action, regardless of form, arising out of the Services, whether it be in contract, tort, or otherwise, shall be deemed waived if a claim is asserted more than two (2) years from the earlier of the date that the applicable Deliverable is issued or the Services are completed.

DocuSign Envelope ID: 766C0A3Z5-9B41-4933-BF96-D6475229E589

Agreement dated      April 1, 2021

**14.** **Personnel.**

(a)      During the term of a SOW and for a period of one (1) year after the Services are completed, Client agrees not to solicit, directly or indirectly, or hire, Grant Thornton's personnel performing Services hereunder without Grant Thornton's written consent. If this Section is violated, Client will pay Grant Thornton a fee equal to the hired person's annual salary in effect at the time of the violation as reimbursement for the estimated costs of replacement personnel. The foregoing shall not apply if the individual is hired in response to a general advertisement made available to the public.

(b)      For engagements subject to the SEC independence rules, Client acknowledges that hiring Grant Thornton (or GTIL) personnel participating on an engagement may be perceived as compromising Grant Thornton's objectivity, and if applicable, impairing Grant Thornton's independence. Accordingly, prior to entering into any employment discussions with such personnel, Client agrees to discuss the potential employment, including any applicable independence ramifications, with the engagement partner responsible for the Services.

**15.** **Miscellaneous.**

(a)      No Assignment.  Neither party shall assign any rights, obligations or claims relating to this Agreement without the prior written consent of the other party, except Grant Thornton may assign this Agreement to a successor in interest upon written notice in connection with a change of control or sale of a line of business or all or substantially all of its assets.

(b)      Force Majeure.  Neither party shall be liable for any delay or failure in performance (except for payment obligations) due to any strikes, work stoppages, accidents, acts of war or terrorism, governmental actions, civil or military disturbances, pandemics, epidemics, contagious diseases, nuclear or natural catastrophes or acts of god, or other circumstances beyond its reasonable control.

(c)      No Third-Party Beneficiaries.  No third-party beneficiaries are intended under this Agreement.

(d)      Name Use.  Neither party shall use the other's name, service marks, or trademarks in external publicity materials without prior written consent.

(e)      Governing Law.  This Agreement, including its formation and the parties' respective rights and duties and all disputes that might arise from or in connection with this Agreement or its subject matter, shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to its conflicts of laws rules that would require the application of another state's laws.

(f)      Independent Contractors.  Each party is an independent contractor with respect to the other and shall not be construed as having an employee/employer, trustee, joint venture, agency or fiduciary relationship.

(g)      Effect of Invalidity.  If any portion of this Agreement is held invalid, it is agreed that such invalidity shall not affect any of the remaining portions.  Moreover, if the terms of any provision hereof are determined to be unenforceable under applicable law as a result of their duration, scope, limitation, or exclusions, such provision shall be construed to the extent possible to be valid and enforceable while adhering as closely as possible to the parties intent as contemplated hereby. If because of a change in Client's status or due to any other reason, any provision in this Agreement or the Services hereunder would be prohibited by laws, regulations, or published interpretations by governmental bodies, commissions, state boards of accountancy, or other regulatory agencies, such provision shall, to that extent, be of no further force and effect, and the Agreement shall consist of the remaining portions.

(h)      Entire Agreement.  This Agreement, including any other incorporated attachments, sets forth the entire understanding between and among the parties regarding the Services and the exchange of information and supersedes all prior and contemporaneous agreements (whether written or oral), arrangements and communications which shall hereby be terminated and may not be modified or amended, except by the mutual written agreement of both parties that references and is incorporated into this Agreement. If there is a conflict between this Attachment A, the Engagement Letter, or any SOWs, this Attachment A shall control unless the applicable SOW specifically references the applicable provision of this Attachment A to be overridden. Except as otherwise agreed in an attachment to this Agreement, no "click-through," "shrink-wrap," "browse-wrap," similar agreements or other terms, whether entered into before, on, or after the date of this Agreement, will be effective to add to or modify the terms of this Agreement or alter the relationship of the parties, regardless of any party's (or its personnel's) acceptance of or agreement to such terms by electronic or other means.

Agreement dated    April 1, 2021

(i)    Survival.  The Sections regarding confidentiality, liability limitations, third-party proceedings, indemnification, dispute resolution and any such terms that by their nature should survive shall survive any termination of this Agreement.

16.    **Tax Terms and Conditions.**  This Section 16 is applicable to all Tax Services provided under this Agreement.

(a)    Reportable Transactions. Taxpayers are required to disclose their participation in certain types of transactions ("Reportable Transactions") on forms filed with their federal income tax returns and/or with the IRS Office of Tax Shelter Analysis, and with agencies of certain states (or, in some cases, foreign jurisdictions) that impose similar requirements. Failure to adhere to Reportable Transaction disclosure and filing requirements may result in the imposition of significant penalties under applicable federal, state and/or foreign law. Grant Thornton may be a "Material Advisor" with regard to Services provided to Client and Grant Thornton may be subject to Grant Thornton's own federal and/or state reporting, registration and list maintenance obligations, which are separate and independent of any taxpayer disclosure obligation. Grant Thornton may be required to maintain and disclose to applicable federal and/or state regulatory agencies certain information regarding Client's participation in a Reportable Transaction, including Client's name and federal identification number, and other information as required.

Except as specifically stated in this Agreement, Grant Thornton does not assume any obligation to express any opinion on, provide any advice related to, or identify from any information provided by Client or obtained by Grant Thornton during the course of providing Services to Client under this Agreement, whether any particular transaction is a Reportable Transaction or the potential consequences of non-compliance with disclosure and filing requirements pertaining to a Reportable Transaction. Reliance on any opinion or advice Grant Thornton may provide regarding whether a transaction is or is not a Reportable Transaction and/or any disclosure and filing requirements may not avoid the imposition of any penalty imposed on Client under federal or state law for the failure to comply with such disclosure and filing obligations.

(b)    Privileges Relating to Taxpayer Communications. Any advice given by Grant Thornton with respect to a matter that is within the scope of Grant Thornton's authority to practice before the IRS may be privileged under federal and state laws. This privilege may be asserted in any non-criminal tax matter before the IRS and in any non-criminal tax proceeding in Federal court and may be asserted to the extent such communication would be considered privileged communication if it were between a taxpayer and an attorney. At Client's sole cost and expense, Grant Thornton will cooperate with Client's efforts to assert taxpayer privileges when Grant Thornton receive a demand or inquiry for Client's information to the extent required by law.

(c)    Conditions of Confidentiality Not Imposed. Notwithstanding anything to the contrary herein, Grant Thornton imposes no conditions of confidentiality on any information it provides to Client to the extent that it concerns the tax structure or tax treatment of any transaction.

(d)    No Responsibility to Update. Tax Deliverables will be based on Grant Thornton's interpretation of the federal and state laws, regulations, administrative and judicial pronouncements, and other relevant authorities, in effect when Grant Thornton provides the Tax Deliverables. All of these authorities are subject to change, and such change may be retroactive or prospective in effect. Grant Thornton assumes no responsibility to either advise Client of, or to update conclusions, for changes in respect to federal and state laws, regulations, administrative and judicial pronouncements, and other relevant authorities expressly set forth in this Agreement and applicable law.

(e)    Tax Deliverables. Client is authorized to provide Tax Deliverables to taxing jurisdictions with respect to tax filings contemplated in a SOW.



# Voyager Digital Holdings Inc.

## Statement of Work for Tax Compliance Services

**Effective Date:**    April 1, 2021

This Statement of Work ("Statement of Work") becomes a part of and is subject to the terms and conditions of the Agreement between Voyager Digital Holdings Inc. ("Client") and Grant Thornton LLP ("Grant Thornton") of the same effective date as this Statement of Work.

The purpose of this Statement of Work is to describe the scope of services ("Services") Client is requesting Grant Thornton to perform, and to set forth the agreed fee, timing and other matters related to the Services. Any capitalized terms that are not defined in this Statement of Work shall have the meanings in the Agreement.

## The Services Grant Thornton will provide

### Tax Compliance

The Services Grant Thornton will provide to Client include preparation of the following specific returns and/or forms ("Deliverables") for the designated taxable year(s).

Returns/forms prepared:

**Voyager Digital Holdings Inc.**
- Form 1120  – U.S. Corporate Income Tax Return
- Form CT-3 – General Business Corporation Franchise Tax Return

Taxable year(s) ended: December 31, 2020

Grant Thornton will discuss with Client any circumstances that require additional work, which may include, but are not limited to, work to satisfy obligations under applicable professional standards including additional fact gathering, analysis and preparation of disclosure forms, unforeseen scope changes including additional state returns or previously unidentified transactions or tax positions requiring analysis, and late or incomplete Client provided information. If it appears that the stated fee will be exceeded, Grant Thornton will consult with Client before continuing with the engagement.

### Limitations

Only tax returns and information returns detailed above or in the Addendum are covered by this Statement of Work. Grant Thornton's responsibility under this Statement of Work extends only to Services expressly agreed to provide herein and does not extend to any prior or subsequent periods.

If, based on new reporting requirements or tax law changes, additional analysis or computations are necessary in order to prepare and sign the return(s), Grant Thornton will discuss these out-of-scope services with Client and mutually agree on the fee required to complete the additional work.

The Services do not include assistance with any tax accounting method change (including, but not limited to, method changes relating to ASC 606 and IRC Section 451 revenue recognition, the ASC 842

"Grant Thornton" refers to Grant Thornton LLP, the U.S. member firm of Grant Thornton International Ltd (GTIL), and/or refers to the brand under which the GTIL member firms provide audit, tax and advisory services to their clients, as the context requires. GTIL and each of its member firms are separate legal entities and are not a worldwide partnership. GTIL does not provide services to clients. Services are delivered by the member firms in their respective countries. GTIL and its member firms are not agents of, and do not obligate, one another and are not liable for one another's acts or omissions. In the United States, visit GT.COM for details.

Grant Thornton

leasing standard or the final regulations under IRC Section 263A relating to inventory costs). Such services will be provided under a separate Statement of Work.

Client management is solely responsible for calculating and determining any amounts recorded in the Client's books, records, financial statements and footnotes thereto.

**General tax consulting**

The Services Grant Thornton may provide, upon Client's request, under this Statement of Work consist of routine time-to-time tax consulting services extending beyond the scope of Services defined above that do not exceed $10,000 in fees. This assistance will be provided at Grant Thornton's standard rates.

Services constituting distinct projects or otherwise requiring a separate Statement of Work as may be required, regardless of the nature of service or fees, will be performed under a separate Statement of Work.

When Grant Thornton LLP ("GTUS") provides U.S. federal and state/local tax services to a client of another Grant Thornton International Limited ("GTIL") member firm, GTUS is subject to U.S. professional standards, including but not limited to, IRS Circular 230 and the American Institute of Certified Public Accountants' Statements on Standards for Tax Services. As a result, where GTUS has responsibility as a signing or non-signing return preparer under U.S. professional standards, GTUS, solely in its reasonable professional judgment, will determine the scope of work, including circumstances where GTUS determines in its sole discretion that additional fact gathering, analysis, and due diligence is required to meet GTUS's professional responsibilities.

## Delivering the services

Grant Thornton will discuss with Client an appropriate timeline for providing the Services described above, including an agreed upon timeframe for completion and delivery. Grant Thornton will provide Client with a request for information required to complete the Services based on the mutually agreed timeline.

Grant Thornton's responsibility under this Statement of Work extends only to Services and Deliverables expressly agreed to provide herein, including any addendums to this Statement of Work. Grant Thornton's responsibility does not extend to any prior or subsequent periods and does not include, for example, studies, detailed research or analysis not specifically set forth in this Statement of Work. If such items arise or Client requests additional services, Grant Thornton will provide a fee estimate and a new Statement of Work before investing significant professional time.

The parties enter into this Statement of Work at a time when a national emergency has been declared and the nation is responding to the Coronavirus (COVID-19) pandemic.  Grant Thornton will use reasonable efforts to complete the Services as specified herein, while also taking the steps it deems necessary to protect the health, welfare and safety of its professionals.  Neither party shall be liable for any delay or failure in performance (excluding payment for fees and expenses incurred) due to circumstances resulting from the pandemic which are beyond its reasonable control.

U.S. federal and state tax laws are ever changing and complex. Grant Thornton is only engaged to provide Services expressly set forth in this Statement of Work in accordance with applicable professional standards. Such obligation expressly does not include any obligation or responsibility to identify, suggest, model or advise on tax minimization or deferral opportunities, including but not limited to any such matters that may arise from the recently enacted CARES Act or other legislation or

**Grant Thornton**

regulatory guidance. Grant Thornton welcomes the opportunity to further discuss Client's tax and business objectives.

All engagements undertaken by Grant Thornton are subject to evaluating and resolving any potential or actual conflict of interest or independence concerns. While the occurrence is highly unusual, matters may arise from the ordinary course of either party's business operations, requiring Grant Thornton to resolve a conflict matter and/or terminate or suspend this engagement until any conflict or independence issue is resolved.

### Use of member firms and other third parties

The Grant Thornton International Limited ("GTIL") member firm(s) listed below will assist in providing the Services under this Statement of Work.

- GTI Canada

GTIL member firms are third parties and are not part of one international partnership or otherwise legal partners with each other. There is no common ownership, control, governance, or agency relationship between member firms. Grant Thornton takes sole responsibility for all work performed under this Statement of Work, and Client agrees that, with respect to the Services provided under this Statement of Work, Client's sole recourse is against Grant Thornton.

By signing this Statement of Work, Client consents to the sharing of Client information with the GTIL member firm(s) solely to assist them in providing the Services under this Statement of Work. In the event that services are required from additional GTIL member firms(s), an Addendum to this Statement of Work will be provided to confirm Client consent to share information with the additional GTIL member firm(s).

Additionally, Grant Thornton may use third parties to provide administrative and operational support to Grant Thornton business operations. All of these third-party service providers are subject to confidentiality obligations to protect the confidentiality of client data. Such entities may be located within or outside the United States.

### Use of GT Affiliate

Appropriate use of technology and resources is an important aspect of service delivery. In tax return preparation and tax consulting processes, Grant Thornton uses the technology and resources of GT US Shared Services Center India Private Limited ("GTSSC") and/or the Grant Thornton Knowledge and Capability Center India Private Limited ("KCC"), affiliates of Grant Thornton located in Bangalore, India, to assist in providing tax services. The affiliates' address is No.65/2, Bagmane Tridib, Block "A", 3rd and 4th Floor, Bagmane Tech Park, C.V. Raman Nagar, Bangalore – 560093.

Grant Thornton's contract with such affiliates requires that they maintain the confidentiality of any tax return information provided to them in connection with providing tax services.

Professional and regulatory standards require us to obtain Client's written consent prior to providing Client tax return information to such affiliates, to include only current and prior year(s) information in the possession of Grant Thornton that is necessary for the purpose of providing the Services covered by this Statement of Work.

If Client does not advise Grant Thornton of a specific duration of consent, Client's consent is valid for one year from the date of signature or the time period necessary to complete the Services under this

3

DocuSign Envelope ID: 76E0A3F5-9B41-4933-BE96-D6475229E569

Grant Thornton

Statement of Work, whichever is greater. Client may limit the amount, type, or scope of tax return information disclosed by letting Grant Thornton know in writing.

To acknowledge consent to the disclosure of Client tax return information as set forth above, please sign this Statement of Work.

## Fees and payment terms

### Fees

The fees for the Services under the Statement of Work will be based on Grant Thornton's hourly rates for this type of work. Based on experience and the information received to date, it is anticipated that the fees will range from $25,000 to $30,000, which is neither a maximum nor a fixed fee quotation.

If applicable, Grant Thornton may bill Client for reasonable direct, out-of-pocket expenses, including but not limited to, travel, lodging, overtime meals, and similar expense items.

In addition, Grant Thornton will bill Client an administrative recovery fee equal to six percent (6%) of fees for the administrative time incurred on this engagement.

Grant Thornton's billings are payable upon receipt.

From time to time, Grant Thornton may receive certain incentives in the form of bonuses and rewards from its corporate card and other vendors. Such incentives to the extent received will be retained by Grant Thornton to cover firm expenses.

Client is solely responsible for any applicable taxes related to the Services. Where the Services are subject to U.S. state and local sales, use, VAT or gross receipts taxes, Grant Thornton will collect such taxes from Client in addition to the fees outlined above and remit such taxes to the proper jurisdictions.

The quoted fees and billings are the amount Grant Thornton is entitled to receive from Client net of any and all taxes imposed on Client, including but not limited to U.S. federal, U.S. state/local, and foreign taxes, including withholding tax obligations imposed in connection with fees paid to Grant Thornton from Client (or affiliated or otherwise relates entities) located outside of the United States. Where billings are subject to U.S. state/local sales tax, Grant Thornton will collect such taxes from Client in addition to fees billed for the Services.

## Entire agreement

This Statement of Work represents the parties' entire understanding with respect to the Services described in this document.  This Statement of Work does not modify or amend the Agreement.  In the event of a conflict between this Statement of Work, Attachment A – Standard Grant Thornton LLP Terms and Conditions, and any other exhibit or attachment included in the Agreement, the terms of the Attachment A shall govern.

Grant Thornton

## Agreed and accepted

The undersigned hereby agree to the terms and conditions as set forth.

**GRANT THORNTON LLP**

_____          Date: ___4/1/2021_____
Adam Lehmann, Partner

**VOYAGER DIGITAL HOLDINGS INC.**

_____          Date: ___6/7/2021 | 9:49 AM PDT_____
Evan Psaropoulos, Chief Financial Officer

**DocuSign**

## Certificate Of Completion

| | |
|---|---|
| Envelope Id: 76C0A3759B414933BE96D6475220EE29 | Status: Completed |
| Subject: Please DocuSign: Voyager_Tax Engagement Letter_SOW 4.01.2021.pdf | |
| Source Envelope: | |
| Document Pages: 15 | Signatures: 2 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | Paula Maturo |
| AutoNav: Enabled | | Paula.Maturo@us.gt.com |
| EnvelopeId Stamping: Enabled | | IP Address: 73.126.161.100 |
| Time Zone: (UTC-06:00) Central Time (US & Canada) | | |

### Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Paula Maturo | Location: DocuSign |
| 6/7/2021 11:43:38 AM | Paula.Maturo@us.gt.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Evan Psaropoulos<br>epsaropoulos@investvoyager.com<br>CFO<br>Security Level: Email, Account Authentication<br>(Optional) | *Evan Psaropoulos*<br>A3826FFC8DB945A...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 34.194.146.151 | Sent: 6/7/2021 11:48:08 AM<br>Viewed: 6/7/2021 11:49:23 AM<br>Signed: 6/7/2021 11:49:31 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 6/7/2021 11:49:23 AM<br>ID: 498984aa-1931-4241-928d-a153b466650b | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Catherine Love<br>catherine.love@us.gt.com<br>Grant Thornton LLP<br>Security Level: Email, Account Authentication<br>(Optional) | COPIED | Sent: 6/7/2021 11:49:32 AM |
| **Electronic Record and Signature Disclosure:**<br>Not Offered via DocuSign | | |
| Enrique Hernandez<br>enrique.hernandez@us.gt.com<br>Security Level: Email, Account Authentication<br>(Optional) | COPIED | Sent: 6/7/2021 11:49:32 AM<br>Viewed: 6/7/2021 11:50:16 AM |
| **Electronic Record and Signature Disclosure:**<br>Not Offered via DocuSign | | |
| Adam Lehmann<br>adam.lehmann@us.gt.com<br>Security Level: Email, Account Authentication<br>(Optional) | COPIED | Sent: 6/7/2021 11:49:33 AM |
| **Electronic Record and Signature Disclosure:** | | |

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Accepted: 1/22/2021 8:29:49 AM<br>ID: ed77ce15-cab6-44ca-af7e-86bfb4296744 | | |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 6/7/2021 11:48:08 AM |
| Certified Delivered | Security Checked | 6/7/2021 11:49:23 AM |
| Signing Complete | Security Checked | 6/7/2021 11:49:31 AM |
| Completed | Security Checked | 6/7/2021 11:49:33 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 2/3/2020 9:00:50 AM
Parties agreed to: Evan Psaropoulos, Adam Lehmann

22-10943-mew    Doc 420    Filed 09/14/22    Entered 09/14/22 16:26:20    Main Document
Pg 41 of 101

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Grant Thornton LLP (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Grant Thornton LLP:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: sue.alispahic@us.gt.com

**To advise Grant Thornton LLP of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at sue.alispahic@us.gt.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Grant Thornton LLP**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to sue.alispahic@us.gt.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Grant Thornton LLP**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to sue.alispahic@us.gt.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent..  The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..


**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.


**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Grant Thornton LLP as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Grant Thornton LLP during the course of your relationship with Grant Thornton LLP.



# Voyager Digital Holdings Inc.

## Statement of Work for Tax Compliance Services

**Effective Date:**  August 23, 2022

This Statement of Work ("Statement of Work") becomes a part of and is subject to the terms and conditions of the Agreement between Voyager Digital Holdings Inc. ("Client") and Grant Thornton LLP ("Grant Thornton") dated April 1, 2021.

The purpose of this Statement of Work is to describe the scope of services ("Services") Client is requesting Grant Thornton to perform, and to set forth the agreed fee, timing and other matters related to the Services. Any capitalized terms that are not defined in this Statement of Work shall have the meanings in the Agreement.

## The Services Grant Thornton will provide

### Tax Compliance

The Services Grant Thornton will provide to Client include preparation of the following specific returns and/or forms ("Deliverables") for the designated taxable year(s).

Returns/forms prepared:

- See *Addendum – Listing of returns/forms included in this Statement of Work.*

Taxable year(s) ended: December 31, 2021 and June 30, 2022

Grant Thornton will assist with the preparation of federal and state extension forms for the taxable year(s) ended above, if applicable.

Grant Thornton will discuss with Client any circumstances that require additional work, which may include, but are not limited to, work to satisfy obligations under applicable professional standards including additional fact gathering, analysis and preparation of disclosure forms, unforeseen scope changes including additional state returns or previously unidentified transactions or tax positions requiring analysis, and late or incomplete Client provided information. If it appears that the stated fee will be exceeded, Grant Thornton will consult with Client before continuing with the engagement.

### Revenue recognition assessment

Grant Thornton will assist Client with an initial assessment of how Client's tax revenue recognition methods of accounting may be impacted by Revenue Procedure 2021-34 and final Treasury regulations issued under Internal Revenue Code section 451(b) and (c), which are effective for Client's first taxable year beginning on or after January 1, 2021.

"Grant Thornton" refers to Grant Thornton LLP, the U.S. member firm of Grant Thornton International Ltd (GTIL), and/or refers to the brand under which the GTIL member firms provide audit, tax and advisory services to their clients, as the context requires. GTIL and each of its member firms are separate legal entities and are not a worldwide partnership. GTIL does not provide services to clients. Services are delivered by the member firms in their respective countries. GTIL and its member firms are not agents of, and do not obligate, one another and are not liable for one another's acts or omissions. In the United States, visit GT.COM for details.

U.S. member firm of Grant Thornton International Ltd

**Grant Thornton**

Based on the assessment, if Client determines it would like to further evaluate implementing method of accounting opportunities or otherwise is required to change its method of accounting, such Services will be provided under a separate Statement of Work.

This assessment is limited in scope and will not include estimating any adjustments to taxable income, preparing of any tax filings or detailed analysis of adjustments that may have resulted from Client's adoption of ASC 606 or that may be required under Revenue 2021-34 and/or Internal Revenue Code section 451(b) and (c). Grant Thornton's Services also do not include providing advice on the application of ASC 606 for GAAP accounting purposes.

### Limitations

Only tax returns and information returns detailed above or in the Addendum are covered by this Statement of Work. Grant Thornton's responsibility under this Statement of Work extends only to Services expressly agreed to provide herein and does not extend to any prior or subsequent periods.

If, based on new reporting requirements or tax law changes, additional analysis or computations are necessary in order to prepare and sign the return(s), Grant Thornton will discuss these out-of-scope services with Client and mutually agree on the fee required to complete the additional work.

The Services do not include assistance with any tax accounting method change (including, but not limited to, method changes relating to ASC 606 and IRC Section 451 revenue recognition, the ASC 842 leasing standard or the final regulations under IRC Section 263A relating to inventory costs). Such services will be provided under a separate Statement of Work.

Client management is solely responsible for calculating and determining any amounts recorded in the Client's books, records, financial statements and footnotes thereto.

### General tax consulting

The Services Grant Thornton may provide, upon Client's request, under this Statement of Work consist of routine time-to-time tax consulting services extending beyond the scope of Services defined above that do not exceed $10,000 in fees. This assistance will be provided at Grant Thornton's standard rates.

Services constituting distinct projects or otherwise requiring a separate Statement of Work as may be required, regardless of the nature of service or fees, will be performed under a separate Statement of Work.

## Delivering the services

Grant Thornton will discuss with Client an appropriate timeline for providing the Services described above, including an agreed upon timeframe for completion and delivery. Grant Thornton will provide Client with a request for information required to complete the Services based on the mutually agreed timeline.

Grant Thornton's responsibility under this Statement of Work extends only to Services and Deliverables expressly agreed to provide herein, including any addendums to this Statement of Work. Grant Thornton's responsibility does not extend to any prior or subsequent periods and does not include, for example, studies, detailed research or analysis not specifically set forth in this Statement of Work. If

2

DocuSign Envelope ID: 6090E2F6-89C0-4C37-9A59-40A9D6C46730

such items arise or Client requests additional services, Grant Thornton will provide a fee estimate and a new Statement of Work before investing significant professional time.

The parties enter into this Statement of Work at a time when a national emergency has been declared and the nation is responding to the Coronavirus (COVID-19) pandemic. Grant Thornton will use reasonable efforts to complete the Services as specified herein, while also taking the steps it deems necessary to protect the health, welfare and safety of its professionals. Neither party shall be liable for any delay or failure in performance (excluding payment for fees and expenses incurred) due to circumstances resulting from the pandemic which are beyond its reasonable control.

U.S. federal and state tax laws are ever changing and complex. Grant Thornton is only engaged to provide Services expressly set forth in this Statement of Work in accordance with applicable professional standards. Such obligation expressly does not include any obligation or responsibility to identify, suggest, model or advise on tax minimization or deferral opportunities, including but not limited to any such matters that may arise from the recently enacted CARES Act or other legislation or regulatory guidance. Grant Thornton welcomes the opportunity to further discuss Client's tax and business objectives.

All engagements undertaken by Grant Thornton are subject to evaluating and resolving any potential or actual conflict of interest or independence concerns. While the occurrence is highly unusual, matters may arise from the ordinary course of either party's business operations, requiring Grant Thornton to resolve a conflict matter and/or terminate or suspend this engagement until any conflict or independence issue is resolved.

Additionally, Grant Thornton may use third parties to provide administrative and operational support to Grant Thornton business operations. All of these third-party service providers are subject to confidentiality obligations to protect the confidentiality of client data. Such entities may be located within or outside the United States.

### Use of GT Affiliate

Appropriate use of technology and resources is an important aspect of service delivery. In tax return preparation and tax consulting processes, Grant Thornton uses the technology and resources of GT US Shared Services Center India Private Limited ("GTSSC") and/or the Grant Thornton Knowledge and Capability Center India Private Limited ("KCC"), affiliates of Grant Thornton located in Bangalore, India, to assist in providing tax services. The affiliates' address is No.65/2, Bagmane Tridib, Block "A", 3rd and 4th Floor, Bagmane Tech Park, C.V. Raman Nagar, Bangalore – 560093.

Grant Thornton's contract with such affiliates requires that they maintain the confidentiality of any tax return information provided to them in connection with providing tax services.

Professional and regulatory standards require us to obtain Client's written consent prior to providing Client tax return information to such affiliates, to include only current and prior year(s) information in the possession of Grant Thornton that is necessary for the purpose of providing the Services covered by this Statement of Work.

If Client does not advise Grant Thornton of a specific duration of consent, Client's consent is valid for one year from the date of signature or the time period necessary to complete the Services under this Statement of Work, whichever is greater. Client may limit the amount, type, or scope of tax return information disclosed by letting Grant Thornton know in writing.

Grant Thornton

To acknowledge consent to the disclosure of Client tax return information as set forth above, please sign this Statement of Work.

## Fees and payment terms

### Fees

Our fees for the Services under this Statement of Work will be based on our hourly rates for this type of work discounted by 50%.

| Professional Rank | Rate per Hour |
|---|---|
| Partner | $560 |
| Director/Senior Manager | $475 |
| Manager | $415 |
| Senior Associate | $300 |
| Associate | $200 |

Based on our experience and the information received to date, we anticipate that for the tax year ending December 31, 2021, federal fees will be a range from $30,000 to $35,000. It is anticipated based on state filing obligations, that the state fees will be approximately $22,000.

Based on our experience and the information received to date, we anticipate that for the short tax year ending June 30, 2022, federal fees will be a range from $30,000 to $35,000. It is anticipated based on state filing obligations, that the state fees will be approximately $22,000.

Any additional state filing not included on the addendum where a filing obligation potentially arises will be charged at a fee of $900 per filing. Therefore, it must be understood that it is neither a maximum nor a fixed fee quotation. Quarterly installment payment calculations as applicable will be charged $2,000 per quarter.

The fees for the Revenue Recognition assessment will be $3,000.

The fees to prepare and file Form 1128, Application to Adopt, Change or Retain a Tax Year will be $1,500.

Any services provided in connection with the Client's Chapter 11 filing will be provided at Grant Thornton's standard hourly rates.

### Payment schedule

Upon execution of this Statement of Work Client understands and agrees that Grant Thornton will invoice Client an advance fee totaling 50% of the total fee for Services noted above. The advance fee is reflected in the payment schedule set forth below.

The billings for the Services described in this Statement of Work will be rendered as follows:

4

DocuSign Envelope ID: 6090E2E6-89C0-4C37-9A59-40A6D5Q46Z3D



| Description | Billing Date | Amount to be billed |
|---|---|---|
| First Progress Billing | Upon Execution of Statement of Work | 50% |
| Second Progress Billing | September 30, 2022 | 15% |
| Final Progress Billing | Upon Delivery of Returns | Remainder |

If applicable, Grant Thornton may bill Client for reasonable direct, out-of-pocket expenses, including but not limited to, travel, lodging, overtime meals, and similar expense items.

In addition, Grant Thornton will bill Client an administrative recovery fee equal to 6% of fees for the administrative time incurred on this engagement.

Grant Thornton's billings are payable upon receipt.

From time to time, Grant Thornton may receive certain incentives in the form of bonuses and rewards from its corporate card and other vendors. Such incentives to the extent received will be retained by Grant Thornton to cover firm expenses.

Client is solely responsible for any applicable taxes related to the Services. Where the Services are subject to U.S. state and local sales, use, VAT or gross receipts taxes, Grant Thornton will collect such taxes from Client in addition to the fees outlined above and remit such taxes to the proper jurisdictions.

## Entire agreement

This Statement of Work represents the parties' entire understanding with respect to the Services described in this document.  This Statement of Work does not modify or amend the Agreement.  In the event of a conflict between this Statement of Work, Attachment A – Standard Grant Thornton LLP Terms and Conditions, and any other exhibit or attachment included in the Agreement, the terms of the Attachment A shall govern.

## Agreed and accepted

The undersigned hereby agree to the terms and conditions as set forth.

**GRANT THORNTON LLP**

Adam Lehmann, Partner

Date: 8/24/2022 | 11:21 AM CDT

**VOYAGER DIGITAL HOLDINGS INC.**

Ashwin Prithipaul, Chief Financial Officer

Date: 8/24/2022 | 3:58 PM CDT

5



## Addendum – List of returns/forms included in this Statement of Work

### **Voyager Digital Holdings Inc.**

- Form 1120  – U.S. Corporate Income Tax Return
- Form 6000 – Alaska Corporation Net Income Tax Return
- Form 120 – Arizona Corporation Income Tax Return
- Form 100W – California Corporation Franchise or Income Tax Return
- Form CT-1120 – Connecticut Corporation Business Tax Return
- Form D-20 – District of Columbia Corporation Franchise Tax Return
- Form F-1120 – Florida Corporate Income and Franchise Tax Return
- Form 600 – Georgia Corporate Income Tax Return
- Form 41 – Idaho Corporation Income Tax Return
- Form IL-1120 – Illinois Corporation Income and Replacement Tax Return
- Form 1120-ME – Maine Corporate Income Tax Return
- Form 4891 – Michigan Corporate Income Tax Annual Return
- Form M4 – Minnesota Corporation Franchise Tax Return
- Form CBT-100 – New Jersey Corporation Business Tax Return
- Form CT-3 – New York General Business Corporation Franchise Tax Return
- Form CT-3-M – New York General Business Corporation MTA Surcharge Return
- Form NYC-2 – New York City Business Corporation Tax Return
- Form CD-405 – North Carolina 'C' Corporation Tax Return
- Form 40 – North Dakota Corporation Income Tax Return
- Form OR-20 – Oregon Corporation Excise Tax Return
- Form RCT-101 – Pennsylvania Corporate Net Income Tax Report
- Form SC-1120 – South Carolina 'C' Corporation Income Tax Return
- Form FAE-170 – Tennessee Franchise, Excise Tax Return
- Form 05-102 – Texas Franchise Tax Public Information Report
- Form 05-158 – Texas Franchise Tax Report
- Form TC-20 – Utah Corporation Franchise or Income Tax Return
- Form CO-411 – Vermont Corporate Income Tax Return
- Form 1128 – Application to Adopt, Change or Retain a Tax Year

### Important Information

The returns and other forms listed above are the only Deliverables that Grant Thornton will prepare under this Statement of Work. Grant Thornton is not responsible for the preparation of amended returns, or any non-income tax returns, including, but not limited to, sales and use tax returns, local property tax returns, payroll or other trust tax returns, and information returns for employee benefit plans, unless otherwise stated herein. If there are additional returns or other compliance-related matters to be addressed, please advise Grant Thornton as soon as possible. Subject to appropriate approval and mutual agreement, this Addendum may be amended to include such additional services that Grant Thornton will provide subject to this Agreement. Except where a separate Statement of Work is used, the terms of this Statement of Work and the attached Grant Thornton LLP Engagement Terms (Attachment A) will also apply to any amendments to this Agreement.

"Grant Thornton" refers to Grant Thornton LLP, the U.S. member firm of Grant Thornton International Ltd (GTIL), and/or refers to the brand under which the GTIL member firms provide audit, tax and advisory services to their clients, as the context requires. GTIL and each of its member firms are separate legal entities and are not a worldwide partnership. GTIL does not provide services to clients. Services are delivered by the member firms in their respective countries. GTIL and its member firms are not agents of, and do not obligate, one another and are not liable for one another's acts or omissions. In the United States, visit GT.COM for details.

U.S. member firm of Grant Thornton International Ltd

DocuSign Envelope ID: 6090E2F6-89C0-4C37-9A58-40ACD6C46739

Grant Thornton

**Grant Thornton**

**Voyager Digital Holdings Inc.**
**Statement of Work for Income Tax Provision Preparation Services**
**(For ASC 740 income Tax Preparation Engagements Not Subject to the SEC Independence Rules)**

This Statement of Work ("Statement of Work") dated August 23, 2022 becomes a part of and is subject to the terms and conditions of the Agreement dated April 1, 2021 between Voyager Digital Holdings Inc. ("Client," "Company," or "you") and Grant Thornton LLP ("Grant Thornton," "Firm," or "we"). Any capitalized terms that are not defined in this Statement of Work shall have the meanings in the Agreement.

The purpose of this Statement of Work is to describe the scope of services ("Services") the Company is requesting Grant Thornton to perform, and to set forth the agreed fee, timing and other matters related to the Services.

### The services we will provide

In this engagement, we will assist management with the preparation of income tax accounting and reporting matters in accordance with Generally Accepted Accounting Principles in the US International Financial Reporting Standards (hereinafter "IFRS") as of June 30, 2022 and for the year then ended (the "Reporting Year"). To accomplish this objective, the scope of our Services includes, as may be appropriate, the following assistance to Company management. The services provided under this Statement of Work are not audit services and are subject to audit by the Company's independent auditors. As our Services are subject to the review and approval of the individual that you have designated to oversee this engagement as discussed in Attachment A, Section 1 ("Designated Individual"), we have described any matters undertaken by us as being preliminary in nature.

- Assist the Company in the computation of book-to-tax differences, which are used to arrive at federal taxable income for the Reporting Year ("Schedule M items"). Our assistance is limited to those Schedule M items reported in the prior year's federal income tax return unless otherwise provided herein.

- Reconcile any differences between the prior year's tax provision and the prior year's federal tax return to identify any "true-ups" in prior year book to tax differences.

- Preliminarily calculate a current income tax liability or asset for the estimated income taxes payable or refundable at the end of the Reporting Year, arising from income tax returns filed or to be filed for the Reporting Year.

- Preliminarily calculate deferred income tax liabilities and assets for the estimated future income tax effects attributable to temporary differences and carryforwards existing at the end of the Reporting Year.

- Assist Company management in the evaluation of the necessity of a valuation allowance, if any, against deferred income tax assets existing at the end of the Reporting Year; assist

Statement of Work NonSEC GAO Income Tax Provision Preparation Tax Consulting 04/03/2020 C19

**Grant Thornton LLP**
U.S. member firm of Grant Thornton International Ltd.

**Grant Thornton**

management, as may be necessary, in the evaluation and formulation of tax planning strategies (as defined in ASC 740); and assist management, as may be necessary, in the evaluation and formulation of accounting estimates related to any valuation allowance existing at the end of the Reporting Year.

The determination of the amount of deferred tax asset that is not more likely than not to be realized is the sole responsibility of Management.

- Assist management with uncertain tax position reporting by providing the following assistance:

    – Assist the Company in identifying "open tax years" for the Company's operating jurisdictions.

    – Assist the Company in the inventorying of tax positions on a "unit of account level" for the Company's operating jurisdictions. Management has sole responsibility for determining the appropriate unit of account.

    – Assist the Company with the recognition and measurement steps for tax positions identified. However, supporting documentation and further analysis may require Tax Opinions, Transfer Pricing documentation, Nexus and Permanent Establishment studies, Earnings and Profits studies, and similar substantial tax projects, all of which are outside the scope of this engagement. These projects will be covered under the terms of other statement of work or engagement letters with us or other unrelated tax advisors engaged by the Company.

    – Assist the Company in determining the penalty and interest implications of the tax positions

- Assist management to preliminarily calculate income tax expense for the Reporting Year, including the current and deferred income tax components, and preliminarily allocate such expense (or benefit) to continuing operations and other intraperiod items.

- Prepare journal entries, as may be necessary, to conform the Company's books and records to the preceding, preliminary calculations for management's review/approval.

- Assist management to draft the income tax footnotes to the financial statements for the Reporting Year based on the preceding, preliminary calculations.

- Discuss, if approved by management and as necessary in the circumstances, our Services with the Company's independent auditors.

We will also assist Company management in the accounting for income taxes during each interim period occurring during the year ending June 30, 2023. Our Services for each interim

Statement of Work NonSEC GAO Income Tax Provision Preparation Tax Consulting 04/03/2020 C19

Grant Thornton LLP
U.S. member firm of Grant Thornton International Ltd.

**Grant Thornton**

period include, as may be necessary, the preceding matters and the following assistance to Company management:

- Calculation of the estimated annual effective tax rate ("ETR") applicable to ordinary income or loss from continuing operations in each interim period, and in the determination of whether any item should be treated as an adjustment to the ETR or as a discrete item in that interim period; and

- Preliminarily compute the income tax (or benefit) applicable to significant, unusual or infrequently occurring items; discontinued operations; or other comprehensive income.

We will document the preceding Services through providing the related workpapers ("Income Tax Provision Workpapers") to the Designated Individual. The Designated Individual should review and approve the Income Tax Provision Workpapers, reflecting the preliminary calculations, and retain them as part of the Company's original books and records. Accordingly, and for purposes of Attachment A, Section 3, the copy of the Income Tax Provision Workpapers retained by Grant Thornton does not constitute the Company's original books and records.

The Income Tax Provision Workpapers will not express an opinion (or any other form of limited assurance or advice) as to whether the income tax accounting and reporting by the Company is in accordance with International Financial Reporting Standards ("IFRS"). Once approved, the Designated Individual can forward, at his or her discretion, the Income Tax Provision Workpapers to the Company's independent auditors who are solely responsible for opining whether the Company's financial statements, including income tax accounting and reporting, are prepared in accordance with GAAP.

Accounting and financial reporting advice
The Services performed pursuant to this Statement of Work are not intended to and do not include an engagement or other undertaking to provide oral advice or the issuance of a written report on the application of accounting principles pursuant to Statement on Auditing Standards (SAS) No. 50 (AU Section 625), as amended and issued by the American Institute of Certified Public Accountants. Accordingly, our Services will not be directed toward the application of ASC 740 to specified transactions involving the Company's facts and circumstances. We would be pleased to work with you to develop a separate engagement for that purpose.

Limitations and exclusions
Our Services are not, and should not be construed as, constituting advice regarding the tax treatment or tax structure of any matter. Accordingly, any written advice under this Statement of Work is not intended by Grant Thornton to be used, and cannot be used, by any person for the purposes of avoiding penalties that may be imposed under the Internal Revenue Code or any state, local, or foreign legal authority.

We recognize that the Company may desire the performance of services in addition to the specific income tax accounting-related services covered under this Statement of Work.

**Grant Thornton**

Whether such additional services are tax or accounting-related, we will be pleased to discuss them with you.  We will provide such out-of-scope services only as set forth pursuant to a separate statement of work.  For your convenience and understanding, and only for purposes of example and not as a complete listing, the following limitations and exclusions apply to the scope of the Services under this Statement of Work:

- **Uncertain tax positions and income tax contingencies.** Unless separately engaged to do so, Grant Thornton will not express an opinion on the possible outcome of an uncertain tax position or an income tax contingency.

- **Preparation of federal Schedule UTP.**  Starting with the 2010 tax year, new federal tax return requirements require reporting of detailed information on uncertain tax positions reflected in audited financial statements.  The Services provided under this Statement of Work do not include assistance with the preparation or review of federal Schedule UTP.  We would be pleased to discuss providing assistance with the preparation of Schedule UTP and provide you a fee estimate and a new Statement of Work for such assistance.

- **Obligations and Apportionment Percentages.**  The scope of the Services does not include assisting Company management in determining each income tax return filing obligation of the Company for the Reporting Year.  Instead, we will provide the Services solely based on the income tax returns filed by the Company for the tax year immediately preceding the Reporting Year.

  Further, the scope of the Services does not include assisting Company management in determining or calculating the apportionment percentages, which are used to apportion taxable income for the Reporting Year, in each jurisdiction in which the Company has an income tax return filing obligation.  Instead, we will provide the Services solely based on a blended state income tax rate, as reflected in the Company's income tax provision calculations for the tax year immediately preceding the Reporting Year.

- **Other examples of limitations and exclusions.**  The scope of our Services does not include:

  - Transfer pricing requirements under Section 482 of the Code.

  - The determination or calculation of any limitation imposed by any taxing authority with respect to tax attribute carryforwards, including but not limited to Section 382 of the Code with respect to net operating loss and other carryforward limitations.

  - Nonrecurring items and other matters of tax significance that may arise during the course of the Reporting Year.  Such items include, but are not limited to, assistance and planning for acquisitions (including the income tax accounting for a business combination not specifically acknowledged in the Statement of Work), assistance with income tax examinations and audits, and particular tax matters.

Statement of Work NonSEC GAO Income Tax Provision Preparation Tax Consulting 04/03/2020 C19

**Grant Thornton LLP**
U.S. member firm of Grant Thornton International Ltd.

DocuSign Envelope ID: E4618C42-8835-40D6-A294-125667E68BEE

Grant Thornton

   &ndash;  Documentation or review of the income tax process and internal control environment under Section 404 of the Sarbanes-Oxley Act of 2002 or similar requirements of foreign standards.

## Management responsibilities

The Company acknowledges that its financial statements, including income tax accounting and reporting in accordance with generally accepted accounting principles, are the responsibility of its management. Management is also responsible for:

- Adopting sound accounting principles and for establishing and maintaining effective internal control that will, among other things, initiate, record, process, and report transactions (as well as events and conditions) consistent with management's assertions embodied in such financial statements

- Identifying and ensuring that the Company complies with the laws and regulations applicable to its activities

- Informing us of any significant or material income tax-related internal control weaknesses noted in management's internal control report or the external auditor's opinion on the effectiveness of internal controls

- Making complete and accurate financial records and related information available to us including, but not limited to, income tax returns and income tax provision workpapers for the tax year immediately preceding the Reporting Year

- Providing full access by us to Company personnel with information relevant to the performance of our Services

- Providing to us the facts, circumstances and assumptions relevant to the Company's income tax accounting and reporting, and informing us of changes in facts, circumstances, and assumptions

- Understanding and acknowledging management's responsibilities with regard to the Services, as well as any relevant facts, circumstances, assumptions, and sources of information upon which the income tax provision is based

- Reviewing and approving the Income Tax Provision Workpapers in a timely manner in order that Grant Thornton may accomplish its responsibilities hereunder.

Accordingly, we will require management's cooperation during the course of our Services. Attachment A, Section 1, outlines additional management participation and responsibilities.

## Delivering the services

We will discuss with you an appropriate timeline for providing the Services described above, including an agreed upon timeframe for completion. We will provide the Company with a

DocuSign Envelope ID: E4518C42-8835-40D6-A294-1256675E6BEF

**Grant Thornton**

6

request for information required to complete the Services based on the mutually agreed timeline.

The Grant Thornton International Limited (GTIL) member firm(s) in Canada, third party(s), will assist in providing the services under this Statement of Work. GTIL member firms are not part of one international partnership or otherwise legal partners with each other. There is no common ownership, control, governance, or agency relationship between member firms. Grant Thornton takes sole responsibility for all work performed under this Statement of Work, and you the agree that, with respect to the services provided under this Statement of Work , your sole recourse is against Grant Thornton. By signing this Statement of Work you consent to our sharing of your information with the GTIL member firm(s) in Toronto, Canada – GT Canada, solely to assist them in providing the services under this Statement of Work.

The parties are entering into this Statement of Work at a time when a national emergency has been declared and the nation is responding to the Coronavirus (COVID-19) pandemic. Grant Thornton will use reasonable efforts to complete the Services as specified herein, while also taking the steps it deems necessary to protect the health, welfare and safety of its professionals. Neither party shall be liable for any delay or failure in performance (excluding payment for fees and expenses incurred) due to circumstances resulting from the pandemic which are beyond its reasonable control.

US federal and state tax laws are ever changing and complex. Grant Thornton is only engaged to provide Services expressly set forth in this Statement of Work in accordance with applicable professional standards. Such obligation expressly does not include any obligation or responsibility to identify, suggest, model or advise on tax minimization or deferral opportunities, including but not limited to any such matters that may arise from the recently enacted CARES Act or other legislation or regulatory guidance. As your tax advisor, we welcome the opportunity to discuss your tax and business objectives and how we may serve you.

Our responsibility under this Statement of Work extends only to Services we expressly agree to provide herein. Our responsibility does not include, for example, studies, detailed research or analysis not specifically set forth in this Statement of Work. If such items arise or you request additional Services we will provide you a fee estimate and a new Statement of Work before we invest significant professional time.

The Services under this Statement of Work do not include providing any tax advice to you regarding the federal or state tax impact of Tax Cuts and Jobs Act of 2017 (TCJA). We welcome the opportunity to assist you in both understanding and advising you on optional and required actions under TCJA under a separate Statement of Work.

All engagements undertaken by Grant Thornton are subject to evaluating and resolving any potential or actual conflict of interest or independence concerns. While the occurrence is

DocuSign Envelope ID: E4618C42-8835-40D6-A204-1256675E6BEF

**Grant Thornton**

highly unusual, matters may arise from the ordinary course of our business operations, or yours, requiring us to resolve a conflict matter and/or terminate or suspend this engagement until any conflict or independence issue is resolved.

Additionally, Grant Thornton may use third-parties to provide administrative and operational support to Grant Thornton business operations. All of these third party service providers are subject to confidentiality obligations to protect the confidentiality of client data. Such entities may be located within or outside the United States.

### Use of GT Affiliate

Appropriate use of technology and resources is an important aspect of serving you. In our tax return preparation and tax consulting processes, we use the technology and resources of GT US Shared Services Center India Private Limited ("GTSSC") and/or the Grant Thornton Knowledge and Capability Center India Private Limited ("KCC"), affiliates of Grant Thornton located in Bangalore, India, to assist in providing tax services. Our affiliates' address is No.65/2, Bagmane Tridib, Block "A", 3rd and 4th Floor, Bagmane Tech Park, C.V. Raman Nagar, Bangalore – 560093.

The Firm's contract with such affiliates requires that they maintain the confidentiality of any tax return information provided to them in connection with providing tax services.

Professional and regulatory standards require us to obtain your written consent prior to providing your tax return information to such affiliates. Your authorization includes only prior year(s) and current year information in the possession of Grant Thornton that is necessary for the purpose of providing the Services covered by this Statement of Work.

If you do not advise us that you wish to limit the duration of your consent, your consent is valid for one year from the date of signature or the time period necessary to complete the Services under this Statement of Work, whichever is greater. If you wish, you may limit the amount, type, or scope of tax return information disclosed by letting us know in writing.

To acknowledge your consent to the disclosure of your tax return information as set forth above, please sign this Statement of Work.

## Fees and payment terms

### Fees

Our fees for the Services under the Statement of Work will be based on our hourly rates for this type of work. Based on our experience and the information received to date, we anticipate that the fees will range from $49,000 to $71,000 (see breakout below.) Therefore, it must be understood that it is neither a maximum nor a fixed fee quotation.

**Grant Thornton**

8

| Professional Rank | Rate per Hour |
|---|---|
| Partner | $1,120 |
| Director/Senior Manager | $955 |
| Manager | $835 |
| Senior Associate | $605 |
| Associate | $415 |

| | |
|---|---|
| Consolidated US Provision (including compilation of global footnote) | $35,000 - $45,000 |
| Canadian Provision | $12,000 - $15,000 |
| Quarterly preparation and review | $8,000 - $12,000 per quarter |

We will discuss with you circumstances that require us to do additional work which may include, but are not limited to, work to satisfy our obligations under applicable professional standards including additional fact gathering, analysis and preparation of disclosure forms, unforeseen scope changes including additional state returns or previously unidentified transactions or tax positions requiring analysis, and late or incomplete client provided information. If it appears that the stated fee will be exceeded, we will consult with you before continuing with the engagement.

Additional tax consulting efforts with respect to Non-US tax matters will be provided at Grant Thornton's standard hourly rate. This would include assistance with Canadian and Danish tax matters.

Any services provided in connection with the Client's Chapter 11 filing will be provided at Grant Thornton's standard hourly rates.

Finally, any tax consulting efforts relating to non-income tax matters (e.g. VAT and/or sales and use tax) will be provided at Grant Thornton's standard hourly rates.

Transition Costs
Transition time will be incurred prior to beginning delivering services under this Statement of Work which includes configuring Grant Thornton proprietary spreadsheet tools and the configuration of third-party licensed provision software (ONESOURCE Tax Provision) to ready it to accept data from the aforementioned spreadsheet tools and other manual entries and

The Company is compensating Grant Thornton for this transition time, and upon the termination of Grant Thornton's tax provision preparation services, is entitled to receive the "Administration" ONESOURCE Tax Provision export templates and its most recent annual and interim period dataset templates upon request, as those templates exist as of the end of the

**Grant Thornton**

engagement for these services. The 2021 fee for the use of this software will be billed directly for a fee of $1,600.

**Payment schedule**

Upon execution of this Statement of Work you understand and agree that we will invoice you an advance fee totaling 50% of the engagement fee noted above for the annual provision. The advance fee you pay will be taken into account in connection with the fee set forth in this Statement of Work. The residual fees will be billed on a quarterly basis in conjunction with the work performed for the interim periods.

In addition, we will bill for our expenses, which includes 6.0 percent of fees to cover items such as copies, postage, supplies, computer and technology usage, software licensing, research and library databases and similar expense items. Our billings are payable upon receipt.

We also want you to be aware that from time to time, Grant Thornton LLP may receive certain incentives in the form of bonuses and rewards from its corporate card and other vendors. Such incentives to the extent received will be retained by Grant Thornton to cover firm expenses.

## Independence

The performance of the Services will impair our independence. Accordingly, we will not be able to audit the Company's financial statements or internal control over financial reporting, perform any interim reviews, or perform any other services if we are required to be independent of the Company for either the financial reporting periodsin which the Services are performed or the financial reporting periods for which the Services are applicable.

## Entire agreement

This Statement of Work represents the parties' entire understanding with respect to the Services in this document. This Statement of Work does not modify or amend the Agreement. In the event of a conflict between this Statement of Work, Attachment A – Standard Grant Thornton LLP Terms and Conditions, and any other exhibit or attachment included in the Agreement, the terms of the Attachment A shall govern.

## Agreed and accepted

The undersigned hereby agree to the terms and conditions as set forth above.

**VOYAGER DIGITAL HOLDINGS INC.**

By: _Ashwin Prithipaul_                    Date: ___9/12/2022 | 2:04 PM CDT___
      10476FEAEED54C9...
Ashwin Prithipaul, Chief Financial Officer

**GRANT THORNTON LLP**

DocuSigned by:

*Adam Lehmann*

A5D3B204A90A45D...

Adam Lehmann, Partner

Date: ___9/12/2022 | 1:43 PM CDT___

Statement of Work NonSEC GAO Income Tax Provision Preparation Tax Consulting 04/03/2020 C19

**Grant Thornton LLP**
U.S. member firm of Grant Thornton International Ltd.

**DocuSign**

## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: E4618C42883540D6A2041256675E6BEE | | Status: Completed |
| Subject: Please DocuSign: 2021_Voyager_Digital Holdings Inc._Provision SOW_8.22.pdf | | |
| Source Envelope: | | |
| Document Pages: 10 | Signatures: 2 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | Michelle Langley |
| AutoNav: Enabled | | 1901 S Meyers Rd, STE 455 |
| EnvelopeId Stamping: Enabled | | Oakbrook Terrace, IL  60181 |
| Time Zone: (UTC-06:00) Central Time (US & Canada) | | Michelle.Langley@us.gt.com |
| | | IP Address: 174.242.80.87 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Michelle Langley | Location: DocuSign |
| 9/9/2022 11:57:17 AM | Michelle.Langley@us.gt.com | |

## Signer Events — Signature — Timestamp

| Signer Events | Signature | Timestamp |
|---|---|---|
| Adam M Lehmann<br>adam.m.lehmann@us.gt.com<br>Partner<br>Security Level: Email, Account Authentication<br>(Optional) | *DocuSigned by:*<br>[signature]<br>A5D3B204A90A45D...<br><br>Signature Adoption: Uploaded Signature Image<br>Using IP Address: 134.238.172.133 | Sent: 9/9/2022 12:01:22 PM<br>Viewed: 9/12/2022 1:43:22 PM<br>Signed: 9/12/2022 1:43:30 PM |
| **Electronic Record and Signature Disclosure:**<br>Not Offered via DocuSign | | |
| Ashwin Prithipaul<br>aprithipaul@investvoyager.com<br>CFO<br>Ash Prithipaul<br>Security Level: Email, Account Authentication<br>(Optional) | *DocuSigned by:*<br>[signature]<br>10476FEAEED54C9...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 100.8.109.90 | Sent: 9/12/2022 1:43:32 PM<br>Viewed: 9/12/2022 2:03:50 PM<br>Signed: 9/12/2022 2:04:50 PM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 9/12/2022 2:03:50 PM<br>ID: c8d02326-c916-4608-b050-06a78b699f8e | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Catherine Love<br>catherine.love@us.gt.com<br>Grant Thornton LLP<br>Security Level: Email, Account Authentication<br>(Optional) | **COPIED** | Sent: 9/12/2022 2:04:51 PM<br>Viewed: 9/12/2022 2:06:17 PM |
| **Electronic Record and Signature Disclosure:**<br>Not Offered via DocuSign | | |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 9/9/2022 12:01:22 PM |
| Certified Delivered | Security Checked | 9/12/2022 2:03:50 PM |
| Signing Complete | Security Checked | 9/12/2022 2:04:50 PM |
| Completed | Security Checked | 9/12/2022 2:04:52 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on 9/23/2021 7:06:20 AM
Parties agreed to: Ashwin Prithipaul

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Grant Thornton LLP (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

## Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

## Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

## Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

## All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Grant Thornton LLP:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: hypercare@us.gt.com

**To advise Grant Thornton LLP of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at hypercare@us.gt.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Grant Thornton LLP**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to hypercare@us.gt.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Grant Thornton LLP**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to hypercare@us.gt.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..


**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.


**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Grant Thornton LLP as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Grant Thornton LLP during the course of your relationship with Grant Thornton LLP.

**<u>EXHIBIT C</u>**

**Lehmann Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF ADAM**
**LEHMANN IN SUPPORT OF DEBTORS'**
**APPLICATION FOR ENTRY OF AN ORDER**
**AUTHORIZING THE EMPLOYMENT AND RETENTION**
**OF GRANT THORNTON LLP TO PROVIDE TAX COMPLIANCE**
**SERVICES AND TAX ADVISORY SERVICES EFFECTIVE AS OF JULY 5, 2022**

I, Adam Lehmann, being duly sworn, state the following under penalty of perjury:

1.      I am a Partner of Grant Thornton LLP ("Grant Thornton"), which has a place of business at 90 State House Square, 10th Floor, Hartford, CT 06103.  Grant Thornton is the United States member firm of Grant Thornton International Ltd.

2.      I submit this declaration on behalf of Grant Thornton (the "Declaration") in support of the application (the "Application") of the above-captioned debtors and debtors in possession (collectively, the "Debtors") pursuant to sections 327(a) and 328 of the Bankruptcy Code for authorization to employ and retain Grant Thornton to provide tax compliance services and tax

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

advisory services effective as of the Petition Date.[2]  If called and sworn as a witness, I could and would testify competently to the matters set forth herein.[3]

### **Grant Thornton's Qualifications**

3.      Grant Thornton is the United States member of Grant Thornton International Ltd., a global audit, tax, and advisory organization of separate and independent network firms providing services in more than 135 countries, including more than 45 offices in the United States.  Each member firm is a separate legal entity.  The professionals in Grant Thornton's tax practice consist of senior tax, accounting, and other professionals specializing in tax, financial, business, and strategic advice to enterprises, including distressed enterprises.  Grant Thornton has significant qualifications, experience, and extensive knowledge in the fields of accounting and taxation for large, sophisticated companies, both in and out of chapter 11 bankruptcy.  Accordingly, Grant Thornton has the resources and experience necessary to perform accounting and tax services in these chapter 11 cases.

4.      Grant Thornton has provided accounting and tax advisory services in numerous large cases, including:  *In re Bouchard Transp. Co., Inc.*, No. 20-34682 (DRJ) (Bankr S.D. Tex. July 26, 2021); *In re Gulfport Energy Corp.*, No. 20-35562 (DRJ) (Bankr. S.D. Tex. Feb. 4, 2021); *In re Stage Stores, Inc.*, No. 20-32564 (DRJ) (Bankr. S.D. Tex. Sept. 25, 2020); *In re Unit Corp.*, No. 20-32740 (DRJ) (Bankr. S.D. Tex. Sept. 11, 2020); *In re LSC Commc'ns, Inc.*, No. 20-10950 (SHL) (Bankr. S.D.N.Y. Aug. 18, 2020); *In re Akorn, Inc.*, No. 20-11177 (KBO) (Bankr. D. Del.

---

[2]    Capitalized terms not otherwise defined in this Declaration shall have the meanings ascribed to them in the Application.

[3]    Certain of the disclosures herein relate to matters within the knowledge of other professionals at Grant Thornton.

June 23, 2020); *In re Purdue Pharma L.P.*, No. 19-23649 (RDD) (Bankr. S.D.N.Y. Sept. 27, 2021).[4]

5.      Grant Thornton has served as the Debtors' tax consultant since April 2021.  By virtue of its prior engagement, Grant Thornton is familiar with the books, records, financial information, and other data maintained by the Debtors and is qualified and best positioned to continue to provide tax consultation services to the Debtors in an efficient and cost-effective manner.

6.      In providing such prepetition professional services to the Debtors, Grant Thornton has become familiar with the Debtors and their businesses, including the Debtors' financial affairs, capital structure, operations, and related matters.  In addition, Grant Thornton has provided many of the Services (as defined below) to the Debtors in connection with their restructuring efforts. Accordingly, Grant Thornton is both well-qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

<u>**Services to be Provided**</u>

7.      Subject to further order of the Court and consistent with the Engagement Agreements, Grant Thornton will provide tax compliance services and tax and accounting advisory services as Grant Thornton and the Debtors shall deem appropriate and feasible in order to advise the Debtors during the course of these chapter 11 cases, including, but not limited to the following services (collectively, the "<u>Services</u>"):[5]

---

[4]    Because of the voluminous nature of the orders cited herein, such orders are not attached to the Application. Copies of such orders are available on request of the Debtors' counsel.

[5]    Further detail on the specific services to be provided by Grant Thornton is outlined in the Statements of Work agreed upon by the Debtors and Grant Thornton consistent with the Engagement Agreements.  The current Statements of Work are attached to the Application as <u>Exhibit B</u>.  To the extent that there are any discrepancies between the summary provided herein and the Engagement Agreements, the terms and conditions of the Engagement Agreements shall govern in all respects.

(a)     Prepare federal and state corporate income tax returns for the taxable years ending December 31, 2021, and June 30, 2022 (a list of entities is in the Statements of Work attached hereto as **Exhibit B**);

(b)     Assist the Debtors with an initial assessment of how the Debtors' tax revenue recognition methods of accounting may be impacted by Revenue Procedure 2021-34;

(c)     Assist in the computation of book-to-tax differences for "Schedule M" items;

(d)     Identify any "true-ups" in prior year book to tax differences;

(e)     Preliminarily calculate a current income tax liability or asset for the estimated income taxes payable or refundable at the end of the reporting year;

(f)     Preliminarily calculate deferred income tax liabilities and assets for the estimated future income tax effects attributable to temporary differences and carryforwards existing at the end of the applicable reporting year;

(g)     Assist management in the evaluation of the necessity of a valuation allowance, if any;

(h)     Assist management with uncertain tax position reporting by performing certain services;

(i)     Assist management in preliminarily calculating income tax expense for the applicable reporting year;

(j)     Prepare journal entries, as may be necessary, to conform to books and records to the preceding, preliminary calculations for management's review/approval;

(k)     Assist management in drafting the income tax footnotes to the financial statements;

(l)     Discuss, if approved by management and necessary in the circumstances, Grant Thornton's services with the independent auditor;

(m)     Assist management in accounting for income taxes during the interim period occurring during the year ending June 30, 2023;

(n)     Calculate the estimated annual effective tax rate applicable to ordinary income or loss from continuing operations in each interim period; and

4

22-10943-mew    Doc 420    Filed 09/14/22    Entered 09/14/22 16:26:20    Main Document
Pg 71 of 101

(o)    Preliminarily compute the income tax (or benefit) applicable to significant, unusual, or infrequently occurring items, discontinued operations, or other comprehensive income.

8.    In addition to the foregoing, Grant Thornton will provide other accounting and tax consultation and advisory services as may be requested from time to time.  To the extent those requested services are outside the scope of the Engagement Agreements, Grant Thornton and the Debtors may enter into new statements of work or may amend the Engagement Agreements to reflect any substantive changes.

## Efforts to Avoid Duplication of Services

9.    Grant Thornton intends that the services of Grant Thornton will not duplicate the services rendered by any other professional retained in these chapter 11 cases.  Grant Thornton understands that the Debtors have retained and may retain additional professionals during the term of the engagement and, to the extent necessary, agrees to work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.  Grant Thornton understands that it has been chosen to provide the Services outlined herein, which are distinct from the services to be provided by other professionals.  Grant Thornton will work with the Debtors and the Debtors' other professionals to prevent any unnecessary duplication of efforts with respect to the services performed by the other professionals and Grant Thornton.

## Professional Compensation

10.    Grant Thornton will also seek reimbursement for reasonable, documented, out-of-pocket expenses incurred, including, but not limited to, meals, lodging, travel, photocopying, delivery service, postage, vendor charges, and other out-of-pocket expenses incurred in providing professional services.

5

11.     Grant Thornton expects to incur a nominal amount of fees and expenses of its outside counsel incurred in connection with this engagement.  Grant Thornton has retained the law firm of Sklar Kirsh LLP ("Sklar") to represent it on this engagement, including potentially assisting the Debtors in preparing all fee applications and addressing any issues raised by the Debtors or the Office of the United States Trustee related to Grant Thornton's retention to provide tax compliance services and tax advisory services.  Sklar represents Grant Thornton in a similar capacity in bankruptcy proceedings and has substantial experience with respect to retention matters in this Court.  Thus, Sklar can work on these matters very efficiently, as opposed to having unfamiliar counsel work through a description of the engagement, conflicts, matters, and similar issues.

12.     Grant Thornton intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330* (the "U.S. Trustee 1996 Guidelines"), and any other applicable procedures and orders of the Court. To that end, the Debtors have filed the *Debtors' Motion for Entry of an Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief* [Docket No. 95], pursuant to which Grant Thornton intends to submit requests for compensation.

13.     According to Grant Thornton's books and records, during the 90-day period prior to the Petition Date, Grant Thornton received approximately $40,230 from the Debtors for professional services performed and expenses incurred.  As of the Petition Date, $5,475 in

6

prepetition amounts were owed to Grant Thornton.  Grant Thornton has agreed to waive such prepetition amounts owed as a condition to their being retained in these chapter 11 cases.

14.    I believe the Engagement Agreements and the hourly rates contemplated therein are consistent with and typical of compensation arrangements entered into by Grant Thornton and other comparable firms in connection with the rendering of similar services under similar circumstances.  I believe that the terms and conditions in the Engagement Agreements are in fact reasonable, consistent with the market for providers of similar services, and designed to compensate Grant Thornton fairly for its work.

## Grant Thornton's Disinterestedness

15.    In connection with its proposed retention by the Debtors in these cases, Grant Thornton received and reviewed a list of the Parties-In-Interest, and has run a conflict check on the individuals and entities on the list attached hereto as **Schedule 1**.  The results of that search are attached hereto as **Schedule 2.**

16.    Grant Thornton's review consisted of queries of internal databases and lists containing names of individuals and entities that are present or recent and former clients including vendors of Grant Thornton in order to identify potential relationships.  These databases and lists include vendor activity, engagement activity, or potential engagement activity dating back three years to present.  An international relationship check was sent to Grant Thornton International Ltd. member firms in which international entities were identified.  An internal database search was requested in order for them to report their existing and past relationships.  A summary of those current potential relationships that Grant Thornton was able to identify using its reasonable efforts is reflected in **Schedule 2** attached hereto.  On an ongoing basis, Grant Thornton will conduct further reviews of its professional contacts as it becomes aware of new parties of interest, as is

7

stated below.  To the best of my knowledge, Grant Thornton:  (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (b) does not hold or represent an interest adverse to the Debtors' estates; and (c) has no connection to the Debtors, their creditors, or their related parties.  To the extent that Grant Thornton discovers any new relevant facts or relationships bearing on the matters described herein during the period of Grant Thornton's retention, Grant Thornton will use reasonable efforts to file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

17.    To the best of my knowledge, except as set forth herein and in **Schedule 2** attached hereto and incorporated herein by reference, (a) Grant Thornton has no connections with the creditors, any other party-in-interest, or their respective attorneys and accountants; and (b) the Grant Thornton partners and professionals working on these matters are not relatives of and have no known connection with the United States Trustee of the Southern District of New York or of any known employee in the office thereof, or any United States Bankruptcy Judge of the Southern District of New York.

18.    Grant Thornton has in the past been retained by, and presently provides and likely in the future will provide services for, certain creditors of the Debtors, other parties-in-interest and their respective attorneys and accountants in matters unrelated to such parties' claims against the Debtors or interests in these chapter 11 cases.  Grant Thornton currently performs, has previously performed or may have performed such services for the entities listed in **Schedule 2**, however, except as disclosed herein, such services, to the extent performed by Grant Thornton, are unrelated to the Debtors or their chapter 11 cases.

19.     Grant Thornton has not provided, and will not provide, any professional services to any of the creditors, other parties-in-interest, or their respective attorneys and accountants with regard to any matter related to these chapter 11 cases.

20.     Grant Thornton is the United States member firm of Grant Thornton International, Ltd., a United Kingdom cooperative of member firms, each a separate legal entity, located worldwide.  Only Grant Thornton is being retained in these matters.  Grant Thornton cannot assure that an engagement will not be accepted by a foreign member firm of Grant Thornton International for another party that may bear upon Grant Thornton's engagement by the Debtors.  However, to the extent Grant Thornton is aware of such engagement and believes such engagement may bear upon Grant Thornton's engagement by the Debtors, Grant Thornton will file a supplemental declaration with the Bankruptcy Court.

21.     As part of its practice, Grant Thornton appears in many cases, proceedings, and transactions involving many different law firms, financial consultants, and investment bankers in matters unrelated to these bankruptcy cases.  Grant Thornton has not identified any material relationships or connections with any law firm, financial consultant, or investment banker involved in these chapter 11 cases that would cause it to be adverse to the Debtors, the Debtors' estates, any creditor, or any other party-in-interest.  If and when additional information becomes available with respect to any other relationships that may exist between Grant Thornton, foreign member firms of Grant Thornton International Ltd., or their partners and professionals and the Debtors, creditors, or any other parties in interest that may affect these cases, supplemental declarations describing such information shall be filed with this Court.

*[Remainder of page intentionally left blank]*

9

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  September 14, 2022

_____

Adam Lehmann
Partner
Grant Thornton LLP

10

## **SCHEDULE 1**

| Entity Name | Role in Bankruptcy |
|---|---|
| Voyager Digital, LLC | Debtor |
| Voyager Digital Holdings, Inc. | Debtor |
| Voyager Digital Ltd. | Debtor |
| LGO SAS France | Current and Former Affiliates |
| Voyager Digital Brokerage Ltd. Canada | Current and Former Affiliates |
| Voyager Digital Brokerage Canada Ltd. Canada | Current and Former Affiliates |
| HTC Trading, Inc. Cayman Islands | Current and Former Affiliates |
| Voyager European Holdings ApS Denmark | Current and Former Affiliates |
| Voyager Europe France | Current and Former Affiliates |
| Voyager IP, LLC USA Delaware | Current and Former Affiliates |
| Voyager Digital, LLC USA Delaware | Current and Former Affiliates |
| Voyager Digital NY LLC USA Delaware | Current and Former Affiliates |
| VYGR Holdings, LLC USA Delaware | Current and Former Affiliates |
| VYGR Management LLC USA Delaware | Current and Former Affiliates |
| Coinify Financial Services ApS Denmark | Current and Former Affiliates |
| Coinify Technologies ApS Denmark | Current and Former Affiliates |
| Coinify Ltd. [United Kingdom] | Current and Former Affiliates |
| Coinify Global Solutions Inc. USA Delaware | Current and Former Affiliates |
| Coinify Payments OU Estonia | Current and Former Affiliates |
| Stephen Ehrlich | Directors and Officers |
| Philip Eytan | Directors and Officers |
| Krisztian Toth | Directors and Officers |
| Jennifer Ackart | Directors and Officers |
| Glenn Stevens | Directors and Officers |
| Brian Brooks | Directors and Officers |
| Ashwin Prithipaul | Directors and Officers |
| Evan Psaropoulos | Directors and Officers |
| Marshall Jensen | Directors and Officers |
| David Brosgol | Directors and Officers |
| Scott Vogel | Directors and Officers |
| Matt Ray | Directors and Officers |
| Tim Pohl | Directors and Officers |
| Jill Frizzley | Directors and Officers |
| Michael Legg | Directors and Officers |
| Daniel Costantino | Directors and Officers |
| Janice Barrilleaux | Directors and Officers |
| Pam Kramer | Directors and Officers |
| Gerard Hanshe | Directors and Officers |
| Rakesh Gidwani | Directors and Officers |
| Mark Egert | Directors and Officers |
| Jeffrey B. Lightfoot | Directors and Officers |

| Entity Name | Role in Bankruptcy |
|---|---|
| Erin Walmesley | Directors and Officers |
| Victor Hugo | Directors and Officers |
| Gaspard Aupepin de Lamothe Dreuzy | Directors and Officers |
| Jarrett Lilien | Directors and Officers |
| Guy Elliott | Directors and Officers |
| Serge Kreiker | Directors and Officers |
| Shingo Lavine | Directors and Officers |
| Lewis Bateman | Directors and Officers |
| Brandi Reynolds | Directors and Officers |
| Akbar Ladhani | Directors and Officers |
| Jordana Keslassy | Directors and Officers |
| Alameda Research Ventures LLC | Equityholders |
| Alameda Research | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |

| Entity Name | Role in Bankruptcy |
|---|---|
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| Metropolitan Commercial Bank | Debtor Bank Accounts |
| Signature Bank | Debtor Bank Accounts |
| Bank of Montreal | Debtor Bank Accounts |
| BMO | Debtor Bank Accounts |
| Silvergate Bank | Debtor Bank Accounts |
| Three Arrows Capital Ltd. | Lendee |
| Alameda Research Ltd. | Lendee |
| Alameda Ventures Ltd | Lendee |
| Genesis Global Capital, LLC | Lendee |
| Galaxy Digital LLC | Lendee |
| BitGo Prime, LLC | Lendee |
| Anchorage Lending CA, LLC | Lendee |
| Anchorage Digital Bank N.A. | Lendee |
| Tesseract Group Oy | Lendee |
| Accretive Capital dba Benzinga | Vendors |
| Accura Advokatpartnerselskab | Vendors |
| Accurate Staffing Solutions Corp. | Vendors |
| Actimize, lnc. | Vendors |
| Ada Support Inc. | Vendors |
| Adobe | Vendors |

| Entity Name | Role in Bankruptcy |
|---|---|
| Advokaadibüroo COBALT OÜ (COBALT Law firm) | Vendors |
| Aiven | Vendors |
| Amalgamated Suncoast Portfolio LLC (Charlie Shrem) | Vendors |
| Amazon Web Services | Vendors |
| Amazon Web Services, Inc | Vendors |
| American Airlines | Vendors |
| Anthony Duclair | Vendors |
| Aon Consulting Inc. | Vendors |
| App.bitrise.io | Vendors |
| Apple | Vendors |
| Apple Inc. | Vendors |
| Apple Search Ads | Vendors |
| Appsflyer | Vendors |
| Arrow Search Partners | Vendors |
| Atlassian | Vendors |
| Authentic8, Inc. | Vendors |
| Ba Int - Usd | Vendors |
| Baker & McKenzie LLP | Vendors |
| Barefoot LLC | Vendors |
| Bateman Capital Inc | Vendors |
| Bates Group LLC | Vendors |
| Beekman Social LLC | Vendors |
| Behmer & Blackford LLP | Vendors |
| Berger Singerman LLP | Vendors |
| BetterInvesting | Vendors |
| Beutler Enterprises Inc d/b/a Beutler Ink | Vendors |
| Beyond Studios | Vendors |
| Big Outdoor Holdings, LLC | Vendors |
| BitGo, Inc. | Vendors |
| Blackwired (US), Inc. | Vendors |
| Blockchain Association | Vendors |
| Blockdaemon, Inc. | Vendors |
| Bloomberg Finance L.P. | Vendors |
| BPM LLP | Vendors |
| Brill Advisors, LLC | Vendors |
| British Airways | Vendors |
| Broadridge | Vendors |
| BTC Media | Vendors |
| Buddakan | Vendors |

4

| Entity Name | Role in Bankruptcy |
|---|---|
| Campbells LLP | Vendors |
| Canada Revenue Agency | Vendors |
| Carbone | Vendors |
| Carbone NYC | Vendors |
| CC API | Vendors |
| CC Data | Vendors |
| CCM Advisory LLC | Vendors |
| CDW, LLC | Vendors |
| Certified Kernel Tech LLC | Vendors |
| Chandkumar  R Ramnarine | Vendors |
| Chord Advisors LLC | Vendors |
| Christopher Gronkowski(DBA:G13 Endorsements) | Vendors |
| Citigate Dewe Rogerson Ltd | Vendors |
| Cloud Posse, LLC | Vendors |
| Cloudflare, Inc. | Vendors |
| CNW Group Ltd. | Vendors |
| Cockroach Labs, Inc. | Vendors |
| ColorArt | Vendors |
| Complex Sports & Entertainment | Vendors |
| Computershare | Vendors |
| Consensus 2022 | Vendors |
| CorCom LLC | Vendors |
| Cordell Ratzlaff | Vendors |
| Crypto Rating Council | Vendors |
| CSC (Corporation Service Company) | Vendors |
| CXG Holdings, Inc. | Vendors |
| Cyber Job Central, LLC | Vendors |
| Cypress Group Staffing, Inc. | Vendors |
| Daniel Gronkowski | Vendors |
| Data.ai Inc. (Formerly Known As App Annie Inc.) | Vendors |
| Datadog, Inc. | Vendors |
| Daversa Partners | Vendors |
| Day Pitney LLP | Vendors |
| Delta Air Lines | Vendors |
| Delta Airlines | Vendors |
| Devexperts Sofia Ltd. | Vendors |
| Digital Niche Agency | Vendors |
| Distinguished Search LLC | Vendors |
| Docker Inc. | Vendors |
| Donnelley Financial Solutions Canada Corporation | Vendors |
| Dropbox | Vendors |

| Entity Name | Role in Bankruptcy |
|---|---|
| Elasticsearch, Inc | Vendors |
| Elevate Brand Marketing | Vendors |
| Endeavor Parent, LLC (dba. IMG Models,LLC) | Vendors |
| Essential Accessibility Inc | Vendors |
| Eva  Yuen | Vendors |
| Exzac Inc. dba Matrix-IFS | Vendors |
| Fastly, Inc. | Vendors |
| Figma | Vendors |
| Fivetran | Vendors |
| Fivetran Inc. | Vendors |
| Fort Capital Ontario Inc. | Vendors |
| Fragomen, Del Rey, Bernsen & Loewy, LLP | Vendors |
| Frankfurt Kurnit Klein & Selz, P.C. | Vendors |
| Freshworks | Vendors |
| Fundamental Research Corp. | Vendors |
| Fusion of Ideas, Inc | Vendors |
| G Suite | Vendors |
| Github | Vendors |
| Github, Inc. | Vendors |
| GLENDALE SECURITIES INC. | Vendors |
| Goodbay Technologies | Vendors |
| GoodHire | Vendors |
| Google Ads | Vendors |
| Google Cloud | Vendors |
| Google G Suite | Vendors |
| Google, LLC. | Vendors |
| Gordon Gronkowski | Vendors |
| Gordon Gronkowski Jr | Vendors |
| Gravitational, Inc. | Vendors |
| Greenhouse Software, Inc. | Vendors |
| HackerRank | Vendors |
| HappyFunCorp LLC | Vendors |
| HardHead Marketing | Vendors |
| HiFi Project Inc. | Vendors |
| Hireclout, Inc | Vendors |
| Hotjar Limited | Vendors |
| Impact Tech, Inc | Vendors |
| Independent Trading Group (ITG) Inc. | Vendors |
| Indianapolis Motor Speedway | Vendors |
| Infinite Agency, LLC | Vendors |
| Infinite IP Corporation | Vendors |

| Entity Name | Role in Bankruptcy |
|---|---|
| Infinity Consulting Solutions, Inc | Vendors |
| Intuit | Vendors |
| IPQualityScore | Vendors |
| IQTalent Partners Inc | Vendors |
| Ironclad, Inc | Vendors |
| Iterable, Inc | Vendors |
| JA Visual Solutions LLC | Vendors |
| Jackson Lewis P.C. | Vendors |
| JDI Studio LLC | Vendors |
| JetBlue Airways | Vendors |
| JetBrains | Vendors |
| JFrog INC | Vendors |
| Jivaro Professional Headhunters, LLC | Vendors |
| Kate Leavell Companies LLC | Vendors |
| Kauling Racing, Inc | Vendors |
| Kcsa Strategic Communications | Vendors |
| Ketchum Inc. | Vendors |
| Kforce Inc | Vendors |
| KnowBe4 Inc. | Vendors |
| Korn Ferry (US) | Vendors |
| Koto Studio LLC | Vendors |
| La Cantera Resort & Spa | Vendors |
| Las Vegas Motor Speedway | Vendors |
| Lastpass | Vendors |
| LaunchDarkly | Vendors |
| Laurel Hill Advisory Group Company | Vendors |
| Learfield Communications, LLC | Vendors |
| Levin Group Limited | Vendors |
| LogMeIn | Vendors |
| LogMeIn USA, Inc. | Vendors |
| Loyalist, LLC | Vendors |
| MaestroQA, Inc. | Vendors |
| Major, Lindsey & Africa, LLC | Vendors |
| Marcum LLP | Vendors |
| Market One Media Group Inc. | Vendors |
| Market Rebellion, LLC | Vendors |
| Marla K Knapp | Vendors |
| Maxx Management LLC | Vendors |
| McCarter & English, LLP | Vendors |
| Medium Rare Live, LLC | Vendors |
| Meltwater News US Inc | Vendors |

| Entity Name | Role in Bankruptcy |
|---|---|
| Merlin Media LLC | Vendors |
| MessageBank, LLC | Vendors |
| Meta Platforms, Inc. | Vendors |
| Michael Gorsuch | Vendors |
| Microsoft | Vendors |
| Mintz & Gold LLP | Vendors |
| Miro | Vendors |
| Mixpanel Inc | Vendors |
| Mobile Action Inc. | Vendors |
| monday.com Ltd | Vendors |
| Money Services Business Association | Vendors |
| Motivate Design LLC (dba UX Hires) | Vendors |
| Mountain Shadows Resort | Vendors |
| MPJ Advisors LLC | Vendors |
| MSG Arena LLC | Vendors |
| Nasdaq Corporate Solutions, LLC | Vendors |
| National Women's Soccer League, LLC | Vendors |
| Network Redux | Vendors |
| Next for Me Media, Inc. | Vendors |
| NMLS | Vendors |
| NOBLE Capital Markets | Vendors |
| Noble Capital Markets, Inc | Vendors |
| Nominis Advisory Ltd | Vendors |
| Ogon,LLC | Vendors |
| Online Business Systems | Vendors |
| OpsGenie | Vendors |
| Optimal Workshop | Vendors |
| Oracle America, Inc. | Vendors |
| Organic Inc. | Vendors |
| OTC Markets Group Inc. | Vendors |
| Pada Ventures,Inc. d/b/a GroWrk Remote | Vendors |
| Paypal Transaction - Innovativec | Vendors |
| Pickwick Capital Partners, LLC | Vendors |
| Piper Companies, LLC | Vendors |
| PitchBook Data, Inc. | Vendors |
| Plaid Inc. | Vendors |
| Popnoggins Llc | Vendors |
| PORTSWIGGER | Vendors |
| Postman Basic Monthly | Vendors |
| Printed Threads | Vendors |
| Proconsul Capital Ltd | Vendors |

| Entity Name | Role in Bankruptcy |
|---|---|
| Project 1972, Inc. | Vendors |
| Publicist Inc. | Vendors |
| Quantum Talent Group | Vendors |
| Reciprocity, Inc. | Vendors |
| Regus | Vendors |
| Regus Management Group, LLC | Vendors |
| Residence Inn by Marriott Dayton Beavercreek | Vendors |
| Roadmunk | Vendors |
| Robert B. Holt | Vendors |
| S&S Activewear | Vendors |
| Schiff Hardin LLP | Vendors |
| Seeking Alpha | Vendors |
| Segment.IO, Inc. | Vendors |
| Seprio, LLC | Vendors |
| Sheraton Grand Nashville Downtown | Vendors |
| Sift Science, Inc. | Vendors |
| Slack Technologies, LLC | Vendors |
| SLS South Beach | Vendors |
| Smart City Networks | Vendors |
| Snapchat | Vendors |
| Snowflake Inc | Vendors |
| Snyk Inc. | Vendors |
| Socure Inc. | Vendors |
| soona | Vendors |
| Spacelift, Inc. | Vendors |
| Standout Tech Solutions LLC | Vendors |
| Swag.com | Vendors |
| Tableau Software, Inc. | Vendors |
| Taylor & Gray LLC | Vendors |
| Teneo Strategy LLC | Vendors |
| Terminal, Inc. | Vendors |
| The Block Crypto, Inc. | Vendors |
| The Cosmopolitan of Las Vegas | Vendors |
| The Friends  of Falcon Hockey Inc | Vendors |
| The Sports Girls | Vendors |
| The Winslow | Vendors |
| Travelbank | Vendors |
| Troutman Pepper Hamilton Sanders LLP | Vendors |
| TSX Inc. | Vendors |
| Tuple | Vendors |
| Twilio | Vendors |

| Entity Name | Role in Bankruptcy |
|---|---|
| Twitter Online Ads | Vendors |
| Twitter, Inc. | Vendors |
| Typeform, S.l. | Vendors |
| Uber | Vendors |
| United Airlines | Vendors |
| UPS | Vendors |
| Upside Business Travel | Vendors |
| User Testing, Inc. | Vendors |
| Vijay Kumar B | Vendors |
| W Dallas - Victory | Vendors |
| W New York - Union Square | Vendors |
| Walkers Corporate Limited | Vendors |
| Wall Street Dead aHead Networking LLC | Vendors |
| Weisman Tech Law LLC | Vendors |
| WeWork | Vendors |
| Whistler Search Partners, LLC | Vendors |
| WilliamsMarston LLC | Vendors |
| WINJIT INC | Vendors |
| Wrike, Inc. | Vendors |
| Zapier | Vendors |
| Zendesk, Inc | Vendors |
| ZeroFOX, Inc. | Vendors |
| Alejandro Benabe | Vendors |
| Ally Watt | Vendors |
| Ashtyn Davis | Vendors |
| Chandler Belk | Vendors |
| Chris Gronkowski | Vendors |
| Christen Westphal | Vendors |
| Danielle Colaprico | Vendors |
| David Helman | Vendors |
| Dorian Finney-Smith | Vendors |
| Dwight Powell | Vendors |
| Estelle Johnson | Vendors |
| Find Your Happy LLC | Vendors |
| Frank Ntilikina | Vendors |
| Glenn Gronkowski | Vendors |
| Glushon Sports Management | Vendors |
| Greg Malocca | Vendors |
| Isaiah Stone | Vendors |
| Jalen Brunson | Vendors |
| Jess McDonald | Vendors |

| Entity Name | Role in Bankruptcy |
|---|---|
| Kristen Hamilton | Vendors |
| Landon Cassill | Vendors |
| Lindsey Harris | Vendors |
| Marquez Valdes-Scantling | Vendors |
| Mary Kratka | Vendors |
| Maximilian Kleber | Vendors |
| Meghan Klingenberg | Vendors |
| Miko Tam | Vendors |
| Rob Gronkowski | Vendors |
| Sam Staab | Vendors |
| Spencer Dinwiddie | Vendors |
| Toni Pressley | Vendors |
| Trea Turner | Vendors |
| Tyler Lussi | Vendors |
| Willis Towers Watson PLC | Vendors |
| Copper Technologies (UK) Limited | Contract Counterparties |
| Chainalysis Inc. | Contract Counterparties |
| Amazon | Contract Counterparties |
| Cumberland DRW LLC | Contract Counterparties |
| Dallas Basketball Limited (Dallas Mavericks) | Contract Counterparties |
| DV Chain, LLC | Contract Counterparties |
| Fireblocks Ltd. | Contract Counterparties |
| Fireblocks Inc. | Contract Counterparties |
| JSCT, LLC (Jane Street) | Contract Counterparties |
| Tai Mo Shan Limited | Contract Counterparties |
| Landon Cassill, Inc. | Contract Counterparties |
| Ledger Technologies INC | Contract Counterparties |
| Gronk Endorsements LLC | Contract Counterparties |
| Dinwiddie, Inc. | Contract Counterparties |
| Talos Trading, Inc. | Contract Counterparties |
| ThoughtWorks, Inc. | Contract Counterparties |
| FiCentive, Inc. | Contract Counterparties |
| Usio, Inc. | Contract Counterparties |
| Wintermute Trading Ltd | Contract Counterparties |
| Celsius | Contract Counterparties |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |

| Entity Name | Role in Bankruptcy |
|---|---|
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |

| Entity Name | Role in Bankruptcy |
|---|---|
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |

| Entity Name | Role in Bankruptcy |
|---|---|
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |

| Entity Name | Role in Bankruptcy |
|---|---|
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |

| Entity Name | Role in Bankruptcy |
|---|---|
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| Shared Office Space with Fasken Martineau DuMoulin, LLP | Landlords |
| WeWork Inc. | Landlords |
| WeWork Inc. | Landlords |
| WeWork Inc. | Landlords |
| WeWork Inc. | Landlords |
| CAC Specialty Co. | Insurance Broker |
| Euclid's Lloyds of London Syndicate | Insurance Carrier |
| FirstBrook Cassie & Anderson Ltd | Insurance Broker |
| Great Midwestern Insurance Co. | Surety |
| Hartford Fire Insurance Company | Insurance Carrier |

| Entity Name | Role in Bankruptcy |
|---|---|
| Hartford Underwriters Insurance Company | Insurance Carrier |
| MJD3 Associates, LLC. | Surety Broker |
| Relm Insurance Limited | Insurance Carrier |
| XL Specialty Ins. Company | Insurance Carrier |
| XL Specialty Ins. Company | Insurance Carrier |
| Teneo | Ordinary Course Professionals |
| Paul Hastings LLP | Ordinary Course Professionals |
| Jenner & Block LLP | Ordinary Course Professionals |
| Lowenstein Sandler LLP | Ordinary Course Professionals |
| Troutman Pepper Hamilton Sanders LLP | Ordinary Course Professionals |
| Berger Singerman LLP | Ordinary Course Professionals |
| Day Pitney LLP | Ordinary Course Professionals |
| Mintz & Gold LLP | Ordinary Course Professionals |
| Walkers Corporate Limited | Ordinary Course Professionals |
| Jackson Lewis P.C. | Ordinary Course Professionals |
| Frankfurt Kurnit Klein & Selz, P.C. | Ordinary Course Professionals |
| Kramer Levin Naftalis & Frankel LLP | Ordinary Course Professionals |
| Seyfarth Shaw LLP | Ordinary Course Professionals |
| Conyers Dill & Pearman | Ordinary Course Professionals |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |

| Entity Name | Role in Bankruptcy |
|---|---|
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| Kirkland & Ellis LLP | Bankruptcy Professionals |
| Moelis & Company | Bankruptcy Professionals |
| Berkeley Research Group, LLC (BRG) | Bankruptcy Professionals |
| Stretto | Bankruptcy Professionals |
| Fasken Martineau DuMoulin LLP | Corporate Counsel |
| Quinn Emmanuel | Special Counsel |
| Grant Thornton US / Grant Thornton LLP | Tax |
| Deloitte Tax LLP / Deloitte & Touche | Tax |
| Valuation Research Corp. | Valuation Services |
| State of Alabama | Alabama Department of Revenue |
| State of Alabama | Department of Revenue |
| State of Arizona | Arizona Department of Revenue |
| State of Arkansas | Department of Finance and Administration |
| State of California | California Franchise Tax Board |
| State of Connecticut | Department of Revenue Services |
| State of Delaware | Division of Revenue |
| State of Florida | Florida Department of Revenue |
| State of Georgia | Georgia Department of Revenue |
| State of Idaho | Idaho State Tax Commission |
| State of Illinois | Department of Revenue |
| State of Indiana | Indiana Department of Revenue |
| State of Iowa | Department of Revenue |
| State of Kansas | Kansas Department of Revenue |
| State of Kentucky | Kentucky Department of Revenue |
| State of Louisiana | Louisiana Department of Revenue |
| State of Maine | Maine Revenue Services |
| State of Maryland | Comptroller of Maryland |

| Entity Name | Role in Bankruptcy |
| --- | --- |
| State of Michigan | Michigan Department of Treasury |
| State of Minnesota | Minnesota Department of Revenue |
| State of Mississippi | Mississippi Department of Revenue |
| State of Nebraska | Department of Revenue |
| State of New Hampshire | Department of Revenue Administration |
| State of New Jersey | New Jersey Division of Taxation |
| State of New Mexico | New Mexico Tax And Revenue Dept |
| State of North Carolina | Department of Revenue |
| State of North Dakota | Office of State Tax Commissioner |
| State of Oklahoma | Tax Commission |
| State of Oregon | Oregon Department of Revenue |
| State of Pennsylvania | Department of Revenue |
| State of Rhode Island | Division of Taxation |
| State of South Carolina | South Carolina Department of Revenue |
| State of Tennessee | Tennessee Department of Revenue |
| State of Texas | Texas Comptroller of Pub. Accounts |
| State of Utah | State Tax Commission |
| State of Virginia | Department of Taxation |
| District of Columbia - Office of Tax and Revenue | 1101 4th St., SW, Suite 270 West |
| State of West Virginia | West Virginia Tax Department |
| State of Wisconsin | Wisconsin Department of Revenue |
| WeWork Inc. | Utilities |
| Verizon Wireless | Utilities |
| Phone.com | Utilities |
| Linda A. Riffkin | Office of the US Trustee |
| Susan Arbeit | Office of the US Trustee |
| Mark Bruh | Office of the US Trustee |
| Shara Cornell | Office of the US Trustee |
| Benjamin J. Higgins | Office of the US Trustee |
| Brian S. Masumoto | Office of the US Trustee |
| Richard C. Morrissey | Office of the US Trustee |
| Andrea B. Schwartz | Office of the US Trustee |
| Paul K. Schwartzberg | Office of the US Trustee |
| Shannon Scott | Office of the US Trustee |
| Tara Tiantian | Office of the US Trustee |
| Andy Velez-Rivera | Office of the US Trustee |
| Annie Wells | Office of the US Trustee |
| Greg M. Zipes | Office of the US Trustee |
| William K. Harrington | Office of the US Trustee |
| Chief Judge Martin Glenn | Judge |
| Judge Lisa G. Beckerman | Judge |

| Entity Name | Role in Bankruptcy |
|---|---|
| Judge Shelley C. Chapman | Judge |
| Judge Robert D. Drain | Judge |
| Judge James L. Garrity, Jr. | Judge |
| Judge David S. Jones | Judge |
| Judge Sean H. Lane | Judge |
| Judge Cecelia G. Morris | Judge |
| Judge Michael E. Wiles | Judge |

## SCHEDULE 2

*List of Potential Parties in Interest Grant Thornton*
*May Have Represented in Matters Unrelated to the Chapter 11 Cases*

Grant Thornton or its affiliates currently perform, or have previously performed, services in matters unrelated to the chapter 11 cases for the following individuals or entities or have other relationships with such entities, such as banking relationships:

**RELATIONSHIPS KNOWN AS OF AUGUST 15, 2022:**

(The subtitles included in the following table refer to
the categories used by the Debtors in Schedule 1)

| Matched Entity | Category with Respect to Party in Interest[1] | Relationship to Grant Thornton |
|---|---|---|
| [Confidential] | Transaction Counterparties | Client Relationship |
| Amazon | Contract Counterparties | Client Relationship |
| Anchorage Digital Bank N.A. | Lendee | Client Relationship |
| [Confidential] | Transaction Counterparties | Client Relationship |
| Berger Singerman LLP | Ordinary Course Professionals | Internal Legal Matter |
| Berkeley Research Group, LLC (BRG) | Bankruptcy Professionals | Client Relationship |
| [Confidential] | Transaction Counterparties | Client Relationship |
| [Confidential] | Transaction Counterparties | Client Relationship |
| [Confidential] | Transaction Counterparties | Client Relationship |
| Dallas Basketball Limited (Dallas Mavericks) | Contract Counterparties | Business Relationship |
| [Confidential] | Customers | Client Relationship |
| [Confidential] | Top Unsecured Creditors | Client Relationship |

---

[1]    These categories correspond to the categories listed in Schedule 1 and are for purposes of a conflicts check only. They should not be relied upon by any party as a list of creditors or for any other purpose.

| Matched Entity | Category with Respect to Party in Interest[1] | Relationship to Grant Thornton |
|---|---|---|
| Deloitte Tax LLP / Deloitte & Touche | Ordinary Course Professionals | Client Relationship |
| [Confidential] | Transaction Counterparties | Client and Business Relationship |
| [Confidential] | Transaction Counterparties | Client Relationship |
| [Confidential] | Transaction Counterparties | Client Relationship |
| Hartford Fire Insurance Company | Insurance Carrier | Client and Business Relationship |
| [Confidential] | Transaction Counterparties | Client Relationship |
| Jenner & Block LLP | Ordinary Course Professionals | Client Relationship |
| [Confidential] | Customers | Client Relationship |
| [Confidential] | Transaction Counterparties | Client Relationship |
| Kirkland & Ellis LLP | Bankruptcy Professionals | Client Relationship |
| Moelis & Company | Bankruptcy Professionals | Client Relationship |
| Paul Hastings LLP | Ordinary Course Professionals | Client Relationship |
| [Confidential] | Transaction Counterparties | Client Relationship |
| Signature Bank | Debtor Bank Accounts | Client Relationship |
| State of Arizona | Taxing Authorities | Client Relationship |
| State of Arkansas | Taxing Authorities | Client Relationship |
| State of California | Taxing Authorities | Client Relationship |
| State of Connecticut | Taxing Authorities | Client and Business Relationship |
| State of Delaware | Taxing Authorities | Client Relationship |
| State of Florida | Taxing Authorities | Client Relationship |

| Matched Entity | Category with Respect to Party in Interest[1] | Relationship to Grant Thornton |
|---|---|---|
| State of Illinois | Taxing Authorities | Client Relationship |
| State of Kansas | Taxing Authorities | Client Relationship |
| State of Michigan | Taxing Authorities | Client Relationship |
| State of New Jersey | Taxing Authorities | Client Relationship |
| State of North Carolina | Taxing Authorities | Client Relationship |
| State of Oklahoma | Taxing Authorities | Client Relationship |
| State of Pennsylvania | Taxing Authorities | Client Relationship |
| State of Rhode Island | Taxing Authorities | Client Relationship |
| State of South Carolina | Taxing Authorities | Client Relationship |
| State of Texas | Taxing Authorities | Client Relationship |
| State of Virginia | Taxing Authorities | Client Relationship |
| [Confidential] | Transaction Counterparties | Client Relationship |
| Talos Trading, Inc. | Contract Counterparties | Client Relationship |
| Teneo | Ordinary Course Professionals | Client Relationship |
| [Confidential] | Customers | Client Relationship |
| [Confidential] | Customers | Client Relationship |
| [Confidential] | Customers | Client Relationship |
| Troutman Pepper Hamilton Sanders LLP | Ordinary Course Professionals | Client Relationship |
| Verizon Wireless | Utilities | Business Relationship |
| WeWork Inc. | Landlords | Client Relationship |

3

| Matched Entity | Category with Respect to Party in Interest[1] | Relationship to Grant Thornton |
| --- | --- | --- |
| XL Specialty Ins. Company | Insurance Carrier | Client Relationship |
| Tesseract Group Oy | Lendee | GT Finland Client Relationship |
| Bank of Montreal | Debtor Bank Accounts | GT Canada Client Relationship |
| Voyager Digital Ltd (f.k.a. Voyager Digital (Canada) Ltd) (OTC:VYGVQ; TSX:VOYG) | Client-Debtor | Client and GT Canada Client Relationship |
| Shared Office Space with Fasken Martineau DuMoulin, LLP | Landlords | GT Canada Other Relationship |
| Kirkland & Ellis LLP | Bankruptcy Professionals | GTIL Client Relationship |
| Amazon | Contract Counterparties | GT UK Client Relationship |
| [Confidential] | Transaction Counterparties | GT UK Client Relationship |

4