**Hearing Date:  September 29, 2022, at 2:00 p.m. (prevailing Eastern Time)**
**Objection Deadline:  September 22, 2022, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### NOTICE OF HEARING OF DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF MARCUM LLP TO PROVIDE AUDITING SERVICES AND FOREIGN COMPLIANCE SERVICES EFFECTIVE AS OF THE PETITION DATE

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Application for Entry of an Order Authorizing the Employment and Retention of Marcum LLP to Provide Auditing Services and Foreign Compliance Services Effective as of the Petition Date* (the "Application") will be held on **September 29, 2022, at 2:00 p.m., prevailing Eastern Time** (the "Hearing").  In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted telephonically.

---

1    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

Any parties wishing to participate must do so by making arrangements through CourtSolutions by visiting https://www.court-solutions.com.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Application shall:  (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served so as to be actually received by **September 22, 2022, at 4:00 p.m., prevailing Eastern Time**, by (i) the entities on the Master Service List available on the case website of the above-captioned debtors and debtors in possession (the "Debtors") at https://cases.stretto.com/Voyager and (ii) any person or entity with a particularized interest in the subject matter of the Application.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing.  Failure to file a timely objection may result in entry of a final order granting the Application as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Application and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/Voyager.  You may also obtain copies of the Application and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated: September 14, 2022        /s/ Joshua A. Sussberg, P.C.
New York, New York               **KIRKLAND & ELLIS LLP**
                                 **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                 Joshua A. Sussberg, P.C.
                                 Christopher Marcus, P.C.
                                 Christine A. Okike, P.C.
                                 Allyson B. Smith (admitted *pro hac vice*)
                                 601 Lexington Avenue
                                 New York, New York 10022
                                 Telephone:    (212) 446-4800
                                 Facsimile:    (212) 446-4900
                                 Email:        jsussberg@kirkland.com
                                               cmarcus@kirkland.com
                                               christine.okike@kirkland.com
                                               allyson.smith@kirkland.com

                                 *Counsel to the Debtors and Debtors in Possession*

Hearing Date: **September 29, 2022, at 2:00 p.m. (prevailing Eastern Time)**
Objection Deadline: **September 22, 2022, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | Case No. 22-10943 (MEW) |
| Debtors. | (Jointly Administered) |

## DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF MARCUM LLP TO PROVIDE AUDITING SERVICES AND FOREIGN COMPLIANCE SERVICES EFFECTIVE AS OF THE PETITION DATE

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state the following in support of this application (this "Application"):[2]

### Relief Requested

1.      The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"):    (a) approving the employment and retention of Marcum LLP

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]   Capitalized terms used in this Application and not immediately defined have the meanings given to such terms elsewhere in this Application.

("Marcum") to provide auditing services and foreign compliance services effective as of July 5, 2022, in accordance with the terms and conditions set forth in that certain engagement letter, dated July 25, 2022 (the "Engagement Letter"), attached hereto as **Exhibit B**; and (b) granting related relief.  In support of this Application, the Debtors submit the *Declaration of Edward F. Bechold in Support of Debtors' Application for Entry of an Order Authorizing the Employment and Retention of Marcum LLP to Provide Auditing Services and Foreign Compliance Services Effective as of the Petition Date* (the "Bechold Declaration"), attached hereto as **Exhibit C**.

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012.  The Debtors confirm their consent to the Court entering a final order in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 327(a) and 328 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

### Background

5.      On July 5, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Stephen Ehrlich, Chief*

2

*Executive Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 15] (the "First Day Declaration"), incorporated by reference herein.

6.      The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 18].  On July 19, 2022, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 102] (the "Committee").  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

## Marcum's Qualifications

7.      Marcum is an national accounting and advisory services firm dedicated to providing companies with a full spectrum of services including tax, audit, assurance, and advisory services, and has an extensive portfolio of industry-focused practices with specialized expertise for both privately held and publicly registered companies.  Marcum's Assurance Services division provides independent audit, attestation, and transaction advisory services and provides clients with an independent and objective view of their financial condition.  Accordingly, the Debtors have determined that Marcum has the resources and experience necessary to perform auditing services and foreign compliance services required pursuant to Canadian generally accepted auditing standards for the financial statements Voyager Digital Ltd. is required to file with the Toronto Stock Exchange.

8.      The Debtors seek to employ and retain Marcum because of Marcum's long-standing advisory relationship with the Debtors and Marcum's expertise and extensive knowledge of Canadian auditing standards.  Marcum has served as the Debtors' Canadian auditor since April 2018.  By virtue of its prior engagement, Marcum is familiar with the books, records,

3

financial information, and other data maintained by the Debtors and is qualified and best positioned to continue to provide auditing services to the Debtors in an efficient and cost-effective manner.

9.      In providing such prepetition professional services to the Debtors, Marcum has become familiar with the Debtors and their business.  Accordingly, Marcum is both well-qualified and uniquely able to provide auditing services and foreign compliance services to the Debtors in these chapter 11 cases in an efficient and timely manner.  The Debtors believe that Marcum's employment is in the best interests of the Debtors, their estates, and their creditors.

## Services to be Provided

10.     Subject to further order of the Court and consistent with the Engagement Letter, Marcum will provide auditing services and foreign compliance services for Canadian debtor entity Voyager Digital Ltd. as Marcum and the Debtors shall deem appropriate and feasible in order to advise the Debtors during the course of these chapter 11 cases, including, but not limited to the following services (collectively, the "Services"):

(a)     Auditing the consolidated statements of financial position of Voyager Digital Ltd. as of June 30, 2022 and the related consolidated statements of loss and comprehensive loss, changes in equity and cash flows for the year then ended, and notes to the financial statements which will be filed with the Toronto Stock Exchange ("TSX" or "Regulators") (the "Audit"); and

(b)     Taking necessary steps related to the Audit as described in the Engagement Letter.

11.     In addition to the foregoing, Marcum will provide other auditing and advisory services as may be requested from time to time.  To the extent those requested services are outside the scope of the Engagement Letter, Marcum and the Debtors may amend the Engagement Letter to reflect any substantive changes.

12.     The Services to be provided by Marcum are essential to the Debtor's operations and would need to be performed by either Marcum or another firm.  As set forth in the Bechold

4

Declaration, the Services to be provided are detailed and complicated.  It would take a substantial amount of time for any other firm to (a) become familiar with the Debtors and their operations and (b) undertake the beginning steps required to perform the necessary audit under the relevant accounting standards, including Canadian generally accepted auditing standards ("CAD GAAS"), and industry guidance provided in "Auditing in the Crypto-Asset Section" published by the Canadian Public Accountability Board ("CPAB").  Marcum is already familiar with the Debtors and their business and has taken steps towards completing the Audit.  The Debtors assert that any change in auditor at this point would incur unnecessary cost (likely at a timing premium) and substantial delay.

### Efforts to Avoid Duplication of Services

13.     The Debtors intend that the services of Marcum will not duplicate the services rendered by any other professional retained in these chapter 11 cases.  Marcum understands that the Debtors have retained and may retain additional professionals during the term of the engagement and, to the extent necessary, agrees to work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.  Marcum has been chosen to provide the Services outlined herein, which are distinct from the services to be provided by other professionals.  The Debtors will work closely with Marcum and the other professionals to prevent any unnecessary duplication of efforts with respect to the services performed by the other professionals and Marcum.

### Professional Compensation

14.     Pursuant to section 328(a) of the Bankruptcy Code, the Debtors request that the Court approve the retention of Marcum at the rates expressed in the Engagement Letter, based on hours actually expended by each assigned staff member at each staff member's hourly billing rate plus direct expenses, including transportation and lodging.  In the normal course of Marcum's

5

business, hourly rates are subject to periodic increase. To the extent such hourly rates are increased, Marcum requests that, with respect to the work to be performed after such increase, the rates listed below be amended to reflect the increase.

15.    The Debtors have agreed to compensate Marcum pursuant to the rates agreed upon in the Engagement Letter. Marcum's hourly rates as negotiated with the Debtors for professional services rendered under the Engagement Letter are as follows:[3]

| Professional | Hourly Rate |
|---|---|
| Partner | $550 - $745 |
| Director/Senior Manager | $405 - $650 |
| Manager | $320 - $520 |
| Supervisors | $230 - $385 |
| Senior/Staff | $165 - $265 |

16.    Marcum will also seek reimbursement for reasonable, documented, and direct expenses incurred, including, but not limited to lodging, travel, and other similar out-of-pocket expenses incurred in providing professional services. In addition, Marcum also seeks reimbursement for an administrative recovery fee equal to three percent of fees for the administrative time incurred in performing the Services.

17.    Marcum expects to incur a nominal amount of fees and expenses of its outside counsel incurred in connection with this engagement. Marcum has retained the law firm of Mintz & Gold LLP to represent it on this engagement, including assisting the Debtors in the preparation of this Application, preparing all fee applications, and addressing any issues raised by the Debtors

---

[3]    If in connection with any subsequent agreements, Marcum is retained to perform additional services at different rates, such rates will be disclosed in connection with the relevant agreements. As stated above, Marcum and the Debtors do not intend to seek separate retention orders with regard to any such agreements.

6

or the U.S. Trustee related to Marcum's retention to provide auditing services and foreign compliance services. Given Mintz & Gold LLP's assistance to date, they can work on these matters very efficiently, as opposed to having unfamiliar counsel having to get up to speed on the scope of the engagement, conflicts, retention matters, and similar issues.

18.     Marcum will maintain detailed, contemporaneous time records in tenths of an hour and will apply to the Court for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330* (the "U.S. Trustee 1996 Guidelines"), and any other applicable procedures and orders of the Court. To that end, the Debtors have filed the *Debtors' Motion for Entry of an Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief* [Docket No. 95], pursuant to which Marcum intends to submit requests for compensation.

19.     During the prepetition period, Marcum was paid monthly progress payments and currently holds $668,000 (the "Retainer"), which has not been applied to the outstanding unbilled work in the amount of $398,847 (the "Outstanding Fees") related to the Services for the period from March 2022 to July 2022. As set forth more fully below, the Debtors seek authority to allow Marcum to apply the Outstanding Fees against the Retainer immediately upon its retention to continue work.

**Marcum's Disinterestedness**

20.     In connection with the proposed retention by the Debtors in these chapter 11 cases, Marcum received and reviewed a list of parties-in-interest from the Debtors (the "Parties-In-Interest") and has run a conflict check on the individuals/entities on the list attached hereto as

7

**Schedule 1**.   Other than as set forth in the Bechold Declaration, Marcum is not aware of any

connection it has with the Parties-In-Interest.

21.    Marcum has reviewed its internal electronic databases and, to the best of the

Debtors' knowledge and except to the extent disclosed herein and in the Bechold Declaration,

Marcum:  (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy

Code; (b) does not hold or represent an interest adverse to the Debtors' estates; and (c) has no

connection to the Debtors, their creditors, or their related parties.  To the extent that Marcum

discovers any new relevant facts or relationships bearing on the matters described herein during

the period of Marcum's retention, Marcum will use reasonable efforts to file promptly a

supplemental declaration, as required by Bankruptcy Rule 2014(a).

## Basis for Relief

22.    Section 327(a) of the Bankruptcy Code provides that a debtor subject to court

approval:

> [M]ay employ one or more attorneys, accountants, appraisers,
> auctioneers, or other professional persons, that do not hold or
> represent an interest adverse to the estate, and that are disinterested
> persons, to represent or assist the [debtor] in carrying out the
> [debtor]'s duties under this title.

11 U.S.C. § 327(a).

23.    Moreover, Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name
> of the [firm] to be employed, the reasons for the selection, the
> professional services to be rendered, any proposed arrangement for
> compensation, and, to the best of the applicant's knowledge, all of
> the [firm's] connections with the debtor, creditors, any other party
> in interest, their respective attorneys and accountants, the United
> States trustee, or any person employed in the office of the United
> States trustee.

Fed. R. Bankr. P. 2014(a).

8

24.     The terms and conditions of the Engagement Letter were negotiated by the Debtors and Marcum at arm's length and in good faith.  The Debtors and Marcum respectfully submit that the terms of Marcum's retention are customary and reasonable for auditing consultation engagements, both out of court and in comparable chapter 11 cases, and in the best interests of the Debtors' estates, creditors, and all parties-in-interest.

25.     Finally, the Court also has discretion to issue an order approving the employment of an estate professional effective as of the Petition Date.  *See In re Triangle Chemicals, Inc.*, 697 F.2d 1280, 1288–89 (5th Cir. 1983); Local Rule 2014-1(b).  The Debtors believe that employment of Marcum effective as of the Petition Date is warranted under the circumstances of these chapter 11 cases.  More specifically, Marcum has provided, and will continue to provide, valuable services to the Debtors.  *See, e.g.*, *In re Ark. Co.*, 798 F.2d 645, 648 (3d Cir. 1986) (collecting cases) ("[T]he bankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power.").  While providing these valuable services following the Debtors' commencement of these cases, Marcum has been working diligently to undertake its conflicts checking processes in order to be able to submit the Bechold Declaration in support of this Application.  To the best of the Debtors' knowledge, approval of this Application will not prejudice any parties in interest, because, among other things, the services provided by Marcum will assist the Debtors in their compliance with their foreign auditing requirements, which is in the best interest of the Debtors' estates and their creditor constituencies.

## Application of the Outstanding Fees

26.     Although Marcum intends to apply for payment of all fees and expenses incurred after the Petition Date pursuant to sections 330 and 331 of the Bankruptcy Code, the Debtors seek the Court's approval to allow Marcum to apply the Outstanding Fees against the Retainer because those amounts are for prepetition work and the Retainer is not property of the estate under section

9

541(a) of the Bankruptcy Code.  If under state law, ownership of a prepetition retainer passes to the professional, a debtor would have no interest in the retainer at the time of the bankruptcy filing, and hence that retainer would not be property of the estate.  *See In re McDonald Bros. Construction, Inc.,* 114 B.R. 989, 997 (Bankr.N.D.Ill.1990).

27.     Indeed, this district has held that retainers are not property of the estate because debtors do not hold legal or equitable title to such property.  *See, e.g.*, *Entegra Power Grp. LLC v. Dewey & Leboeuf LLP (In re Dewey & Leboeuf LLP)*, 493 B.R. 421, 430 (Bankr. S.D.N.Y. 2013) ("[i]f the Retainer is a security retainer, the Retainer would not be property of Dewey's estate because Dewey would hold neither legal nor equitable title under section 541(a)."); *see also In re D.L.I.C., Inc.*, 120 B.R. 348, 351 (Bankr. S.D.N.Y. 1990) (holding that an advance payment retainer belongs to the attorney and is not property of the debtor client's estate).  Therefore, Marcum is allowed to apply the Outstanding Fees against the Retainer because such amount is not part of the Debtors' estates and therefore would not be an impermissible use of estate property.

28.     In the alternative, even if the Retainer was considered property of the estate, the drawdown would be permissible under section 363, as courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate.  *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authorizing debtor to pay prepetition wages under section 363); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (Bankr. S.D.N.Y. 1983) (authorizing the payment of prepetition claims to suppliers); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims like the Outstanding Fees.

10

29.     Pursuant to section 363(b) of the Bankruptcy Code, courts may authorize payment of prepetition obligations where a sound business purpose exists for doing so.  *See In re Ionosphere Clubs*, 98 B.R. at 175.  Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *See, e.g.*, *In re CoServ*, 273 B.R. 497.

30.     In this Circuit, courts may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Under section 105(a) of the Bankruptcy Code, courts may authorize preplan payments of prepetition obligations when essential to the continued operation of a debtor's business.  *See, e.g.*, *In re C.A.F. Bindery, Inc.*, 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996).

31.     Finally, the Debtors act as fiduciaries of the estate under sections 1107 and 1108 of the Bankruptcy Code, who have a duty to protect and preserve the estates' value as a going concern.  *See In re CoServ, 273 B.R. at 497*.

32.     Here, application of the Outstanding Fees against the Retainer is warranted under the circumstances.  Absent payment of the Outstanding Fees, Marcum will not perform the Services, which are essential to the continued operation and value of the Debtors' business.  Substantial delay will result if the Debtors need to retain a new auditor.  Such firm would be required to take time to (a) become familiar with the Debtors and their operations and (b) undertake the steps required to perform the necessary review under the relevant accounting standards including CAD GAAS and industry guidance provided in "Auditing in the Crypto-Asset Section" published by the CPAB.  Marcum is already familiar with the Debtors and their business, having

served as the Debtors' auditor since 2018, and has taken steps towards completing the Audit. Getting another firm up to speed would likely cost more than the Outstanding Fees and may cause the Debtors to miss a September 30, 2022 TSX filing deadline, which the Debtors may require to effectuate a plan of reorganization.  Accordingly, the Debtors assert that allowing Marcum to apply the Outstanding Fees against the Retainer is a sound exercise of their business judgment and their fiduciary duties to the estate and should therefore be authorized by the Court.

## **Notice**

33.    The Debtors will provide notice of this Application to the following parties and/or their respective counsel, as applicable:  (a) the U.S. Trustee; (b) the Committee; (c) the lender under the Debtors' prepetition loan facility; (d) the United States Attorney's Office for the Southern District of New York; (e) the Internal Revenue Service; (f) the Toronto Stock Exchange; (g) the attorneys general in the states where the Debtors conduct their business operations; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

34.    No prior request for the relief sought in this Application has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the

relief requested herein and granting such other relief as the Court deems appropriate under the

circumstances.

Dated:  September 14, 2022                                               */s/ Stephen Ehrlich*
New York, New York                                                   Name:  Stephen Ehrlich
                                                                     Title:  Co-Founder and Chief Executive Officer
                                                                     Voyager Digital Ltd.

## EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## ORDER GRANTING THE DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF MARCUM LLP TO PROVIDE AUDITING SERVICES AND FOREIGN COMPLIANCE SERVICES EFFECTIVE AS OF THE PETITION DATE

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") authorizing the Debtors to retain and employ Marcum LLP ("Marcum") to provide auditing services and foreign compliance services effective as of the Petition Date; all as more fully set forth in the Application and the Bechold Declaration; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this case and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]    Capitalized terms used in this Order and not defined have the meanings given to such terms in the Application.

Application is in the best interests of the Debtors' estates, their creditors, and other Parties-in-Interest; and this Court having found that the Debtors provided appropriate notice of the Application and the opportunity for a hearing on the Application under the circumstances; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing, if any, before the Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Application is granted as set forth herein, effective as of the Petition Date.

2.      The Debtors are authorized pursuant to sections 327(a) and 328 of the Bankruptcy Code to employ and retain Marcum to provide auditing services and foreign compliance services in accordance with the terms and conditions set forth in the Application and in the Engagement Letter, subject to the terms of this Order.

3.      Notwithstanding anything in the Engagement Letter to the contrary, for the avoidance of doubt, the Bankruptcy Court shall have jurisdiction over any and all matters arising under or in connection with Marcum's engagement by the Debtors pursuant to the Engagement Letter.

4.      Marcum shall be compensated for fees and reimbursed for reasonable and necessary expenses and will file interim and final fee applications for allowance of its compensation and expenses in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals, dated December 21, 2010 (General Order M-412), Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New

York, dated January 29, 2013 (General Order M-447), the U.S. Trustee 1996 Guidelines, and any applicable orders of this Court.

5.      Attorneys' fees and/or expenses reimbursed under the Engagement Letter shall be limited to those expended in representing Marcum in retention and fee application matters.

6.      Notwithstanding anything to the contrary in the Application, the Engagement Letter, or the Bechold Declaration, Marcum shall apply any remaining amounts of its prepetition advance payment retainer as a credit toward postpetition fees and expenses, after such postpetition fees and expenses are approved pursuant to an order of the Court awarding fees and expenses to Marcum.  Marcum is authorized without further order of the Court to reserve and apply amounts from the prepetition advance payment retainer that would otherwise be applied toward payment of postpetition fees and expenses as are necessary and appropriate to compensate and reimburse Marcum for fees or expenses incurred on or prior to the Petition Date consistent with its ordinary course billing practices.

7.      Marcum shall provide ten business-days' notice to the Debtors, the U.S. Trustee, and the Committee before any increases in the rates set forth in the Application or the Engagement Letter are implemented and shall file such notice with the Court.  The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

8.      Notwithstanding anything in the Application to the contrary, to the extent that Marcum uses the services of independent contractors or subcontractors (collectively, the "Contractors") in these cases, Marcum shall (i) pass through the cost of such Contractors to the Debtors at the same rate that Marcum pays the Contractors; (ii) seek reimbursement for actual

3

costs only; (iii) ensure that the Contractors are subject to the same conflict checks as required for Marcum; and (iv) file with the Court such disclosures required by Bankruptcy Rule 2014.

9.      Marcum shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

10.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

11.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

12.     To the extent the Application or Engagement Letter are inconsistent with this Order, the terms of this Order shall govern.

13.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

New York, New York
Dated:   ____, 2022

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

**<u>EXHIBIT B</u>**

**Engagement Letter**

DocuSign Envelope ID: 043554C3-0A11-49ED-9D48-2EB1428F59B5



July 25, 2022

Ms. Jennifer Ackart
Chairman of the Audit Committee

Mr. Ashwin ("Ash") Prithipaul
Chief Financial Officer
Voyager Digital Ltd.
33 Irving Place, Suite 3060
New York, NY 10003

Re: Engagement of Marcum LLP

Dear Ms. Ackart and Mr. Prithipaul:

We are pleased to confirm our understanding of the terms and objectives of our engagement and the nature and limitations of the services Marcum LLP ("Marcum," the "Firm," "we," "us" or "our") will provide for the year ending June 30, 2022.

## **Annual Audit**

We will audit the consolidated statements of financial position of Voyager Digital Ltd. (the "Company," "you" or "your") as of June 30, 2022 and the related consolidated statements of loss and comprehensive loss, changes in equity and cash flows for the year then ended, and notes to the financial statements (collectively the "financial statements"), which will be filed with the Toronto Stock Exchange ("TSX" or "Regulators").

The financial statements, including disclosures, are the responsibility of the Company's management. Although management may consult with us regarding accounting principles applied to the financial statements and methods of application, the selection of accounting principles and method of application is a determination made solely by management and the Audit Committee of the Board of Directors or those who have an equivalent responsibility for financial reporting matters ("Audit Committee").

The objective of our engagement is to express an opinion on the Company's financial statements based on our audit. At the conclusion of our audit, we will submit to you a report containing our opinion as to whether the financial statements, taken as a whole, are fairly presented based on International Financial Reporting Standards, as issued by the International Accounting Standards Board ("IFRS"). If during the course of our work it appears for any reason that we will not be in a position to render an unmodified opinion on the financial statements, or that our report will require an explanatory paragraph, we will discuss this with you. If, for any reason, we are unable to complete the audit, or we are unable to form, or have not formed an opinion, we may decline to express an opinion or decline to issue a report as a result of the engagement. If, in our professional judgment, the circumstances require us to do so, we may resign from the engagement prior to completion.



DocuSign Envelope ID: 043554C3-0A11-49ED-9D48-2EB1428F59B5

Voyager Digital Ltd.
July 25, 2022
Page 2

Our audit will be conducted in accordance with the standards of the Canadian generally accepted auditing standards ("CAD GAAS"), including certain industry guidance provided in "Auditing in the Crypto-Asset Section" published by the Canadian Public Accountability Board ("CPAB"), which includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management and evaluating the overall financial statement presentation. Our procedures will include tests of documentary evidence supporting the transactions recorded in the Company's accounts, and direct confirmation of certain assets and liabilities by correspondence with selected customers, creditors and banks. We will also request written representations from your attorneys as part of the engagement, and they may bill you for responding to this inquiry.

In order to allow us to complete our audit in accordance with CAD GAAS the Company's management have responsibility to provide us with:

- Access to all information of which management is aware that is relevant to the preparation of the financial statements such as records, documents and other matters;
- Additional information that we may request from management for the purpose of the audit; and
- Unrestricted access to persons within the entity from whom we determine it necessary to obtain audit evidence.

The Company's management is responsible for establishing and maintaining effective internal control over financial reporting. Accordingly, the safeguarding of assets, evaluation of honesty of employees, maintenance of complete and accurate accounting records and adequate internal control, selection and application of accounting policies, accuracy of financial statements (including adequate disclosures), and compliance with relevant laws and regulations are the responsibilities of management that cannot be delegated to us as auditors. Management is also responsible for critically evaluating and approving any adjusting journal entries or changes to the financial statements that we may propose.

We are responsible to plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement, whether caused by error or fraud. Although not absolute assurance, reasonable assurance is, nevertheless, a high level of assurance. Audits are based on the concept of selective testing of the data underlying the financial statements, which involves judgment regarding the areas to be tested and the nature, timing, extent and results of the tests to be performed. Our audit is not a special audit for the purpose of fraud detection, nor is it a detailed check of transactions of the accounting records. That, coupled with the fact that it is possible to override or circumvent the internal controls established by you to provide assurance, among other things, as to the reliability of financial records, our engagement is subject to the inherent risk that material errors, irregularities, or illegal acts, including fraud, defalcations or misappropriation of assets, will not be detected if they exist. That risk is substantially increased when collusion or forgery exists, or when there are unrecorded transactions or events. However, we are responsible to inform you, the appropriate level of management or the Audit Committee, as appropriate, of all matters of fraud, material errors, and all illegal acts (unless the illegal acts are clearly

DocuSign Envelope ID: 043554C3-0A11-49ED-9D48-2EB1428F59B5

Voyager Digital Ltd.
July 25, 2022
Page 3

inconsequential) that may come to our attention. We strongly urge you to obtain insurance protection against such risks. Our responsibility as auditors is limited to the period covered by our audit and does not extend to any losses that might be incurred during any later periods for which we are not engaged as auditors.

We will obtain an understanding of the Company's internal control over financial reporting sufficient to plan the audit and determine the nature, timing and extent of audit procedures to be performed. This approach is expected to increase the efficiency of our audit. Our audit cannot be relied upon to disclose significant deficiencies or material weaknesses in the design or operation of internal control over financial reporting. However, we will communicate in writing to the Audit Committee and management any significant deficiencies and material weaknesses we have observed in the Company's internal control and possible ways to improve the efficiency of your operations. Should you want us to perform additional attest services related to internal control, we will discuss such matters with you, as you may request. If we become aware that the Audit Committee's oversight of the Company's external financial reporting and internal control over financial reporting is ineffective, we will communicate that conclusion in writing to the Company Board of Directors.

## Timeliness

You acknowledge that we must have sufficient time to conduct our audit engagement of the annual financial statements.  We will require your assistance to provide us with information on a timely basis in order to complete our engagements in an efficient and timely manner. Should we not receive such information and assistance from you with sufficient time to complete our annual engagement procedures, then you acknowledge that we can give no assurances that our annual engagement will be completed prior to the date the Company is required to file its Financial Statements with the Regulators.

## Other Required Services

In addition to auditing or reviewing the annual financial statements for inclusion in the Company's fling with the System for Electronic Document Analysis and Retrieval ("SEDAR"), we are required to perform certain other procedures, although we assume no obligation to perform procedures to corroborate such other information as part of our audit:

1. We must be provided copies of, and read Management's Discussion & Analysis and all other information that is included in the Company's filing to determine if it is materially consistent with the disclosures and assumptions inherent in preparing the annual financial statements.  Also, if we do not participate in the annual meetings of the Audit Committee, we will be required to ascertain that the Audit Committee has been informed of the process used by management to formulate particularly sensitive estimates, changes in significant accounting policies affecting the financial information, adjustments that could have an effect on the Company's financial reporting process, management's determination that uncorrected misstatements are immaterial to the annual financial statements and any other pertinent information.

2. We must be provided copies of, and read any and all press releases that contain any of the Company's financial information prior to its release.

DocuSign Envelope ID: 013554C3-0A11-49ED-9D48-2EB1428F59B5

Voyager Digital Ltd.
July 25, 2022
Page 4

3. We must be provided copies of, and review the officer certifications included in the annual Financial Statements filings.

## **Management Representations**

At the conclusion of our audit, we will request certain written representations from the Chief Executive Officer and Chief Financial Officer, or their equivalents that, among other things, will confirm management's responsibility for the preparation of the annual financial statements in accordance with IFRS, including all applicable pronouncements and financial accounting, controls, and reporting requirements, attesting to the completeness and truthfulness of representations and disclosures made to us during the course of our work, the completeness and availability of all financial records and relevant information, including minutes of the Board of Directors and committee meetings, and, to the best of their knowledge and belief, that the Company is in compliance with all the requirements of Sarbanes-Oxley (or applicable Canadian regulations), including but not limited to, the absence of irregularities involving management or those employees who have significant roles in the Company's internal control over financial reporting. Management is also responsible for adjusting the annual financial statements to correct material misstatements relating to accounts or disclosures and for affirming to the auditor in the representation letter that the effects of any uncorrected misstatements aggregated by the auditor during the current audit pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the annual financial statements taken as a whole.

## **Communication with Audit Committee of the Board of Directors**

As part of our audit engagement, we will ensure that certain additional matters are communicated to the Audit Committee. Such matters include (1) our audit responsibility under CAD GAAS standards; (2) information relating to our independence with respect to the Company; (3) our overall audit strategy, timing of the audit, and significant risks; (4) the Company's selection of and changes in significant accounting policies, including accounting policies for transactions that are controversial, where there is lack of authoritative guidance or consensus, or diversity in practice; (5) the Company's critical accounting policies; (6) critical accounting estimates; (7) significant unusual transactions; (8) our evaluation of the quality of the Company's financial reporting; (9) if applicable, our evaluation of the Company's ability to continue as a going concern; (10) uncorrected and corrected misstatements; (11) difficult or contentious issues about which we consulted with others; (12) any disagreements with management about matters that could be significant to the Company's annual financial statements or our report; (13) any consultations management made with other accountants; (14) any issues discussed with management prior to retention; (15) anticipated modifications to our audit report; (16) any significant difficulties encountered in performing the audit; (17) other information in documents containing audited annual financial statements, such as the Company's annual report; (18) our evaluation of the Company's identification of, accounting for, and disclosure of its relationships and transactions with related parties; (19) other material written communications with management; (20) critical audit matters, if applicable; and (21) other matters as considered necessary.

DocuSign Envelope ID: 043554C3-0A11-49ED-9D48-2EB1428F59B5

Voyager Digital Ltd.
July 25, 2022
Page 5

## Communications with Other Members of the Board of Directors

Under applicable Canadian regulations, depending upon the action taken by the Audit Committee, further communications may need to be made by us to the other members of the Board of Directors. If such further communication needs to be made by us under applicable Canadian laws or regulations, then you understand that the applicable securities laws and Regulators' rules may require, under the circumstances, an immediate, or otherwise prompt, response from these members of the Board of Directors. You further acknowledge that the failure to provide us with a timely, complete and prompt response to any such further communications may require us, under applicable Canadian laws or regulations, to independently notify the Regulators in accordance with the applicable securities laws and the Regulators' rules.

## Reproduction of Auditors' Report and Filing with SEDAR

If you intend to otherwise publish or reproduce the financial statements or any document that make reference to our Firm, you agree to provide us with printers' proofs or masters for our review and approval before printing. You also agree to provide us with a copy of the final reproduced material for our approval before it is distributed. In addition, to avoid unnecessary delay or misunderstanding, it is important that you give us timely notice of your intention to issue any such document.

Our report, or any document that incorporates by reference our report, should not be filed with SEDAR until you have received a manually signed report from us as well as our express authorization in writing, to allow the inclusion of our report in any SEDAR filing by the Company. Also, we are not responsible for reviewing the SEDAR version of the Company's Annual Financial Statements.

With regard to the electronic dissemination of the Company's annual financial statements, including financial statements published electronically on the Company's website, we are not required to read the information contained in those sites or to consider the consistency of other information in the electronic site with the original document.

## Review of Documents for Sale of Securities

The audited financial statements should not be provided or otherwise made available to recipients of any document to be used in connection with the sale of securities (including securities offerings on the Internet) without first submitting copies of the document to us in sufficient time for our required, detailed review and specific approval in writing to allow the inclusion or incorporation by reference of our report in such documents.

## Communications with the Regulators

The annual financial statements and supporting schedules, if required, included in the Company's filings with the TSX are subject to review and comment by the TSX's staff and to their interpretation of the applicable rules and regulations. This may involve discussions and communications with

DocuSign Envelope ID: 043554C3-0A11-49ED-9D48-2EB1428F59B5

Voyager Digital Ltd.
July 25, 2022
Page 6

the Regulator's staff, and/or submission of supplemental data in connection with their review. We will inform each other of any such discussion, communication or submission, which may have a bearing on the financial statements, schedules and other financial data in the filings and furnish each other with copies of related written communications.

Certain Canadian securities laws, together with all Regulator's regulations to implement these laws, imposes additional responsibilities on SEC registrants, their management, audit committees and Boards of Directors, as well as independent auditors regarding the reporting of illegal acts that have or may have occurred. To fulfill our responsibilities under these acts and/or to generally carry out our duties, we may need to consult with your counsel, or counsel of our choosing, or other experts about any such issues, including potential illegal acts of which we become aware. Additional fees that are reasonably incurred, including legal fees incurred, if any, will be billed to you. You agree to cooperate fully with any procedures that we may reasonably deem necessary to perform and you agree that you will be responsible for all reasonably incurred third-party costs including legal and other necessary and appropriate fees we incur as part of any such procedures.

## Assistance By Your Personnel

We will ask that your personnel, to the extent possible, prepare required schedules and analyses, and make selected invoices and other required documents available to our staff on a timely basis. This assistance by your personnel will serve to facilitate the progress of our work and minimize our time requirements.

You acknowledge that your confidential information may be transmitted to us through an information portal or delivery system established by us or on our behalf. You shall notify us in writing of your employees, representatives, or other agents to be provided access to such portal or system; upon the termination of such status, you shall immediately notify us in writing. You acknowledge that you are responsible for the actions of your current and former employees, representatives, or other agents in connection with the transmission of your information.

## Independence

Professional standards require that a firm and its members maintain independence throughout the duration of the professional relationship with a client. In order to preserve the integrity of our relationship, no offer of employment shall be discussed with any Marcum professionals assigned to the audit: (i) including within the one-year period prior to the commencement of the year-end engagement, or (ii) in any capacity that is not in compliance with Sarbanes-Oxley or any future requirements issued by the CAD GAAS standards.

Pursuant to professional standards, should such an offer of employment be made, or employment commences that is not in compliance with Canadian regulations or CAD GAAS, our independence will be compromised. As such, we will be required to resign from the engagement. Furthermore, we strive to maintain a staff of quality, trained professionals. In recognition of the investment we have made to recruit and develop our personnel, we ask that you agree to the following. In the event that any of our employees assigned to this engagement accepts a position of employment with your

DocuSign Envelope ID: 043554C3-0A11-49ED-9D48-2EB1428F59B5

*Voyager Digital Ltd.*
*July 25, 2022*
*Page 7*

Company, or any of its related parties or affiliates at any time while we are performing services for you or within one year thereafter, , you agree to pay us a placement fee equal to the employee's annual compensation in effect on the date such employment was contracted. Such fee is payable when the employee accepts such a position. Notwithstanding the foregoing, the restriction set forth in the prior sentence does not apply to our employees who seek employment with you in response to an advertisement placed in the public domain.

### Confidentiality/Access to Working Papers

To the extent that, in connection with this engagement, Marcum comes into possession of your Confidential Information (defined below), Marcum will not, except as described herein, disclose such information to any third party without consent, except (a) as may be required by law, regulation, judicial or administrative process with proper jurisdiction, or in accordance with applicable professional standards to the extent that any such disclosure is subject to a non-disclosure agreement or obligation and Marcum remains responsible in the event of unauthorized further disclosure, or if disclosure is required, in the reasonable opinion of counsel, in connection with litigation pertaining to the subject matter of this engagement letter *provided however*, that to the extent legally permitted and feasible, Marcum shall provide to the Company prompt prior written notice of such requirement so that the Company may seek a protective order or other appropriate remedy and/or waive compliance with the terms of this Agreement, or (b) to the extent such information (i) shall have otherwise become publicly available (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of a disclosure by Marcum in breach hereof, (ii) becomes available to Marcum on a non-confidential basis from a source other than you, your employees or agents which is not prohibited from disclosing such information to Marcum by obligation to you, (iii) is known by Marcum prior to its receipt from you, your employees or agents without any obligation of confidentiality with respect thereto, or (iv) is developed by Marcum independently of any disclosures made by you or your employees or agents to Marcum of such information. You authorize Marcum to participate in discussions with and to disclose your information to your agents, representatives, administrators or professional advisors (including accountants, attorneys, financial and other professional advisors), their respective officers, directors or employees, and other parties as you may direct. In addition, you acknowledge and agree that any such information that comes to the attention of Marcum in the course of performing this engagement may be considered and used by Marcum in the context of responding to its professional obligations as your independent accountants. "Confidential Information" shall be sensitive or valuable non-public information about the Company's business, that would reasonably be deemed confidential or proprietary, including, but not limited to (i) information expressly or implicitly marked or disclosed as confidential, including, without limitation, all forms and types of financial, business, legal, regulatory, scientific, technical, economic, or engineering information including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing; (ii) information traditionally recognized as proprietary trade secrets; and (iii) all copies of any of the foregoing or any analyses,

DocuSign Envelope ID: 043554C3-0A11-49ED-9D48-2EB1428F59B5

Voyager Digital Ltd.
July 25, 2022
Page 8

studies or reports that contain, are based on, or reflect any of the foregoing. At all times the Marcum shall protect and preserve the Confidential Information as confidential, using no less care than that with which it protects and preserves its own highly confidential and proprietary information (but in no event less than a reasonable degree of care), and shall not use the Confidential Information for any purpose except in connection with a possible as contemplated in connection with this engagement.

The working papers prepared in conjunction with our engagement are the sole and exclusive property of Marcum and constitute confidential information. These working papers will be retained by us in accordance with applicable laws and with our Firm's policies and procedures. However, we may be required, by law or regulation, to make certain working papers available to regulatory authorities for their review, and upon request, we may be required to provide such authorities with photocopies of selected working papers.

Pursuant to the regulations of the Canadian Public Accountability Board ("CPAB"), the Firm is subject to a periodic inspection process. During the course of an inspection, selected working papers and financial reports, on a sample basis, will be inspected by an outside party on a confidential basis. Consequently, the accounting and/or auditing work we performed for you may be selected. Your signing this letter represents your acknowledgment and permission to allow such access should your engagement be selected for review.

As a result of our prior or future services to you, we may be required or requested to provide information or documents to you or a third-party in connection with a legal or administrative proceeding (including a grand jury investigation) that is primarily focused on you and in which we are not a party (a "Third-Party Request"). If this occurs, we shall be entitled to reasonable compensation for our time and reimbursement for our reasonable out-of-pocket expenditures (including legal fees) in complying with such request or demand. In the even that a Third-Party Request involves multiple clients of ours, then any compensation charges and expenses shall be divided proportionately among our clients. This is not intended, however, to relieve us of our duty to observe the confidentiality requirements of our profession.

## Canadian Public Accountability Board ("CPAB") Participation Fee

Under the terms of our registration with CPAB, we will be charged a participation fee based on the audit fees charged each year by us to the Company. The fee from CPAB will be determined as a percentage of the actual audit fee, and is levied to fund the cost of the new Canadian public accounting oversight program. This fee will be charged as a disbursement and added to the fees we charge in the normal course of our audit and related services engagement.

## Third-Party Service Providers

Marcum may use or subcontract the services to its affiliates, subsidiaries and/or third parties, including contractors and subcontractors, in each case within or outside of the United States (each, a "Subcontractor") in connection with the provision of services and/or for internal, administrative

Voyager Digital Ltd.
July 25, 2022
Page 9

and/or regulatory compliance purposes. You agree that Marcum may provide Confidential Information and other information Marcum receives in connection with this agreement to Subcontractors for such purposes. Marcum maintains internal policies, procedures and safeguards to protect the confidentiality of your information and Marcum will remain responsible for the both work performed by such Subcontractors and the Subcontractors' obligations to protect the Confidential Information.

**Dispute Resolution Procedure, Waiver of Jury Trial and Jurisdiction and Venue for Any and All Disputes Under This Engagement Letter and Governing Law**

**AS A MATERIAL INDUCEMENT FOR US TO ACCEPT THIS ENGAGEMENT AND/OR RENDER THE SERVICES TO THE COMPANY IN ACCORDANCE WITH THE PROVISIONS OF THIS ENGAGEMENT LETTER:**

*The Firm and the Company each hereby knowingly, voluntarily and intentionally waive any right either may have to a trial by jury with respect to any litigation based hereon, or arising out of, under or in connection with this engagement letter and/or the services provided hereunder, or any course of conduct, course of dealing, statements (whether verbal or written) or actions of either party. The Firm and the Company each expressly agree and acknowledge that the Supreme Court of the State of New York, County of New York, Commercial Division, and the United States District Court for the Southern District of New York, Manhattan Courthouse, shall each have exclusive and sole jurisdiction and venue for any respective state or federal actions arising from, relating to or in connection with this engagement letter, or any course of conduct, course of dealing, statement or actions of either party. If and only if the action does not satisfy the damage prerequisite for jurisdiction in the County of New York Commercial Division, then any such state court action shall be brought in the County of Suffolk, Commercial Division.*

*The terms and provisions of this engagement letter, any course of conduct, course of dealing and/or action of the Firm and/or the Company and our relationship with you shall be governed by the laws of the State of New York to the extent said laws are not inconsistent with the Federal Securities Laws and Rules, Regulations and Standards thereunder. In any litigation brought by either the Firm or the Company, the prevailing party shall be entitled to an award of its reasonable attorneys' fees and costs incurred, including through all appeals.*

We acknowledge your right to terminate our services at any time, and you acknowledge our right to resign at any time (including instances where in our judgment, our independence has been impaired or we can no longer rely on the integrity of management), subject in either case to our right to payment for all direct and indirect charges including out-of-pocket expenses incurred through the date of termination or resignation or thereafter as circumstances and this agreement may require, plus applicable interest, costs, fees and attorneys' fees.

DocuSign Envelope ID: 043554C3-0A11-49ED-9D48-2EB1428F59B5

Voyager Digital Ltd.
July 25, 2022
Page 10

## Other Services

We are always available to meet with you and/or other executives at various times throughout the year to discuss current business, operational, accounting and auditing matters affecting your Company. Additional requested services must be pre-approved by the Audit Committee and must not be a prohibited service pursuant to the rules and interpretations of Sarbanes-Oxley. We will also be pleased, at your request, to attend your Board of Directors' and Stockholders' meetings.

## Timeline

Marcum's engagement ends on the earlier of termination (including without limitation, our resignation or declining to issue a report or other work product) or Marcum's delivery of its report. Any follow-up services that might be required will be a separate, new engagement. The terms and conditions of that new engagement will be governed by a new, specific engagement letter for that service.

## Fees

Our fee will be based on the services to be provided hereunder, the timeliness and completeness of the information and documentation provided to us, firm technology, firm processes, and time required of personnel at our standard hourly rates. Our standard hourly rates vary according to the level of the personnel assigned to your engagement. You will also be billed for travel and other out-of-pocket costs as incurred, as well as an administrative fee of 3% of our professional fees as an allocation of overhead expenses that are not billed as direct reimbursable expenses. Our invoices for these fees will be rendered as the work progresses, and are due and payable upon presentation. In the event that you dispute any of the fees or expenses on a specific invoice, you agree to make commercially reasonable efforts to notify us within twenty (20) days of receipt of the invoice of such dispute. Prior to the commencement of the services described above, any past due balances are required to be paid in full. In accordance with our Firm policies, should any invoice remain unpaid for more than thirty (30) days, we reserve the right to defer providing any additional services until all outstanding invoices are paid in full. Amounts past due sixty (60) days from the invoice date will incur a finance charge of 1% per month. Nothing herein shall be construed as extending the due date of payments required under this agreement, and you agree that we are not responsible for the impact on the Company of any delay that results from such non-payment by you.

Our services are normally billed at our standard hourly rates plus direct expenses, including transportation and lodging, and are subject to adjustment from time-to-time and at least annually effective September 1, as follows:

| | |
|---|---|
| Partners | $550 - $745 rate per hour |
| Directors & Senior Managers | $405 - $650 rate per hour |
| Managers | $320 - $520 rate per hour |
| Supervisors | $230 - $385 rate per hour |
| Seniors & Staff | $165 - $265 rate per hour |

DocuSign Envelope ID: 043554C3-0A11-49ED-9D48-2EB1428F59B5

Voyager Digital Ltd.
July 25, 2022
Page 11

Additional services provided beyond the described scope of services will be billed separately.

**<u>Agreement</u>**

This letter comprises the complete and exclusive statement of the agreement between the parties, superseding all proposals oral or written and all other communications between the parties. If any provision of this letter is determined to be unenforceable, all other provisions shall remain in force. It is hereby understood and agreed that this engagement is being undertaken solely for the benefit of the Company and that no other person or entity shall be authorized to enforce the terms of this engagement. The undersigned represents and warrants that it has the requisite authority and consents to enter into and perform this Agreement and the obligations herein for and on behalf of Voyager Digital Ltd.

If you agree with the terms of our engagement, as described in this letter, and you have consented to the accompanying Electronic Record and Signature Disclosure, please affix your e-signature and return the letter to us via DocuSign and we will return a fully executed letter to you.

We appreciate the opportunity to be of service to you and believe this letter accurately summarizes the significant terms of our engagement. If you have any questions, please let us know.

Very truly yours,

Marcum LLP

*Edward F. Bechold*

Edward F. Bechold, CPA

Date Signed:  9/13/2022

MJJ/mm

DocuSign Envelope ID: 013554C3-0A11-49ED-9D48-2EB1428F59B5

Voyager Digital Ltd.
July 25, 2022
Page 12

**ACCEPTED**

This letter correctly sets forth the agreement of Voyager Digital Ltd.

Signature:_____          Date:___9/12/2022_____
        Jennifer Ackart
        Chairman of the Audit Committee

Signature:_____          Date:___9/12/2022_____
        Ash Prithipaul
        Chief Financial Officer

s:\business\word_processing\common\finalized\voyager digital ltd\2022\eng-rep\184134 voyager digital ltd aud eng 0622.docx

## EXHIBIT C

**Bechold Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DECLARATION OF EDWARD F. BECHOLD IN SUPPORT OF DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF MARCUM LLP TO PROVIDE AUDITING SERVICES AND FOREIGN COMPLIANCE SERVICES EFFECTIVE AS OF THE PETITION DATE

I, Edward F. Bechold, being duly sworn, state the following under penalty of perjury:

1.      I am a Partner of Marcum LLP ("Marcum").  I am an Engagement Partner in Marcum's Assurance Services group.

2.      I submit this declaration on behalf of Marcum (the "Declaration") in support of the application (the "Application") of the above-captioned debtors and debtors in possession (collectively, the "Debtors") pursuant to sections 327(a) and 328 of the Bankruptcy Code for authorization to employ and retain Marcum to provide auditing services and foreign compliance services effective as of the Petition Date.[2]

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]   Capitalized terms not otherwise defined in this Declaration shall have the meanings ascribed to them in the Application.

3.      I have personal knowledge of the matters set forth herein and, if called as a witness, I could and would testify thereto.

4.      Marcum is full-service accounting, audit and advisory services firm dedicated to providing companies with a full spectrum of services including tax, audit, assurance, and advisory services, and has an extensive portfolio of industry-focused practices with specialized expertise for both privately held and publicly registered companies.  Marcum's Assurance Services division provides independent audit, attestation, and transaction advisory services and provides clients with an independent and objective view of their financial condition.  Accordingly, the Debtors have determined that Marcum has the resources and experience necessary to perform auditing services and foreign compliance services required pursuant to Canadian generally accepted auditing standards for the financial statements the Debtors are required to file with the Toronto Stock Exchange.  Marcum is headquartered in New York, and maintains offices across the country, in China, Ireland and Grand Cayman.  Marcum employs over 3,500 employees globally.

5.      Marcum has developed an understanding of the above-captioned Debtors' financial history, business operations and the industry in which the Debtors operate through its prepetition engagement by the Debtors.  Marcum has therefore accumulated significant knowledge regarding the Debtors.  Its professionals have worked closely with the Debtors' management and other professionals and have become well-acquainted with the Debtors' operations, creditors, business, and related matters.  Accordingly, Marcum has developed significant relevant experience regarding the Debtors that will assist it in providing effective and efficient services in these Chapter 11 cases.

6.      Subject to the Court's approval, and per the terms of the engagement letter Marcum executed with Debtors annexed to the Application as Exhibit B (the "Engagement Letter"),

2

Marcum will provide various services that may include, but are not necessarily limited to, the following services (the "Services"):

    (a)    Auditing the consolidated statements of financial position of Voyager Digital Ltd. as of June 30, 2022 and the related consolidated statements of loss and comprehensive loss, changes in equity and cash flows for the year then ended, and notes to the financial statements which will be filed with the Toronto Stock Exchange ("TSX" or "Regulators") (the "Audit"); and

    (b)    Taking necessary steps related to the Audit as described in the Engagement Letter.

7.    Subject to this Court's approval of the relief requested in the Application, Marcum will provide the Services to the Debtors and coordinate with the Debtors' other retained professionals to avoid unnecessary duplication of services.

8.    As set forth in the Engagement Letter, Marcum's services of the nature to be rendered to the Debtors are normally billed based on hours actually expended by each assigned staff member at each staff member's hourly billing rate plus direct expenses, including transportation and lodging, and are subject to adjustment from time-to-time and at least annually effective September 1, as follows:

| Professional | Hourly Rate |
|---|---|
| Partner | $550 - $745 |
| Director/Senior Manager | $405 - $650 |
| Manager | $320 - $520 |
| Supervisors | $230 - $385 |
| Senior/Staff | $165 - $265 |

9.    During the prepetition period, Marcum was paid monthly progress payments and currently holds $668,000 (the "Retainer"), which has not been applied to the outstanding unbilled work in the amount of $398,847 (the "Outstanding Fees") related to the Services for the period

from March 2022 to July 2022.  As set forth more fully in the Application, the Debtor seeks authority to allow Marcum to apply the Outstanding Fees against the Retainer immediately upon its retention to continue work.

10.    As set forth in the Application, the Services to be provided by Marcum are essential to the Debtor's operations and would need to be performed by either Marcum or another firm. This is a detailed and complicated engagement.  Any other firm would be required to take time to (a) become familiar with the Debtors and their operations and (b) undertake the beginning steps required to perform the necessary audit under the relevant accounting standards including Canadian generally accepted auditing standards ("CAD GAAS"), and industry guidance provided in "Auditing in the Crypto-Asset Section" published by the Canadian Public Accountability Board ("CPAB").  Marcum is already familiar with the Debtors and their business and has taken steps towards completing the Audit.  I believe a change in auditor at this point would incur an unnecessary cost (likely at a timing premium) and substantial delay.

11.    Marcum understands that any compensation paid to it following application of the Retainer to the Outstanding Fees must be approved by this Court upon application consistent with the Bankruptcy Code, the Bankruptcy Rules, or further order of this Court.  In addition, Marcum will also seek reimbursement for actual and necessary out-of-pocket expenses incurred in connection with its engagement by the Debtors in these chapter 11 cases, which may include, but are not limited to, postage, overnight mail, courier delivery, transportation, airfare, meals, and lodging.  Expenses for actual costs incurred will be charged in accordance with the applicable rules and guidelines of this Court.

12.    Other than as set forth herein or in the Engagement Letter, there is no other arrangement between the Debtors and Marcum for compensation to be paid in these chapter 11

4

cases.  Other than with respect to the Outstanding Fees, Marcum is not a creditor of the Debtors'

estate and has been fully paid by the Debtor for all prepetition services rendered.

13.    Marcum has retained the law firm of Mintz & Gold LLP to represent it on this

engagement, including assisting the Debtors in the preparation of this Application, preparing all

fee applications, and addressing any issues raised by the Debtors or the U.S. Trustee related to

Marcum's retention to provide auditing services and foreign compliance services.  Given Mintz &

Gold LLP's assistance to date, they can work on these matters very efficiently, as opposed to

having unfamiliar counsel get up to speed on the scope of the engagement, conflicts, retention

matters, and similar issues.

14.    Marcum will maintain detailed, contemporaneous time records in tenths of an hour

and will apply to the Court for compensation for professional services rendered and reimbursement

of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy

Rules, the Local Rules, the *U.S. Trustee Guidelines for Reviewing Applications for Compensation*

*and Reimbursement of Expenses Filed under 11 U.S.C. § 330* (the "U.S. Trustee 1996

Guidelines"), and any other applicable procedures and orders of the Court.  To that end, the

Debtors have filed the *Debtors' Motion for Entry of an Order (I) Establishing Procedures for*

*Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II)*

*Granting Related Relief* [Docket No. 95], pursuant to which Marcum intends to submit requests

for compensation.  Marcum has agreed to accept as compensation such sums as may be allowed

by the Court and understands that interim fee and final fee awards are subject to approval by this

Court.

15.    Going forward, Marcum will apply to the Court for allowances of compensation

and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy

Code, including, but not limited to Sections 330 and 331 of the Bankruptcy Code, the Bankruptcy

Rules, the Local Rules, and the U.S. Trustee 1996 Guidelines, and further orders of this Court, for

all services performed and expenses incurred after its retention date.

16.    Marcum has not agreed to share compensation received in connection with the

Debtors' proceedings with any other entity, except as permitted under the Bankruptcy Code for

sharing among members and associates of Marcum.

17.    I believe the Engagement Letter and the hourly rates contemplated herein are

consistent with and typical of compensation arrangements entered into by Marcum and other

comparable firms in connection with the rendering of similar services under similar circumstances.

I believe that the terms and conditions in the Engagement Letter are in fact reasonable, consistent

with the market for providers of similar services, and designed to compensate Marcum fairly for

its work.

### Marcum's Disinterestedness

18.    Marcum is not aware of any past or present relationship that would disqualify

Marcum from representing the Debtors.  In connection with its proposed retention by the Debtors

in these chapter 11 cases, Marcum performed a lengthy conflicts analysis to determine whether it

had any conflicts or other relationships that might cause it to hold or represent an interest adverse

to the Debtors or might cause it to not be disinterested.  Specifically, Marcum obtained from the

Debtors and/or their representatives a list of the Debtors' known creditors, landlords, parties to

executory contracts, members, directors, officers, debtors, and financial institutions, the United

States Trustee for Region 2, and members of his office, and the names of individuals and entities

that may be parties-in-interest in these Chapter 11 cases (the "Potential Parties-in-Interest") that

were reasonably made known to Marcum by the Debtors.

6

19.     A list of the Potential Parties in Interest is annexed hereto as **Schedule 1**.  Marcum's review consisted of a query of the Potential Parties-in-Interest within its internal computer database ("Database") containing names of individuals and entities that are present or former clients of Marcum.   Only individuals and entities that are party to active matters are considered in determining conflicts.  In addition, an email is sent to all Marcum's professionals inquiring of any potential connections with the Potential Parties-in-Interest.

20.     If additional potential parties in interest are reasonably made known to Marcum, it will review its connection with such parties and supplement this Declaration if additional information requiring disclosure is discovered.

21.     To the best of my knowledge, there are no Potential Parties-in-Interest that are current clients of Marcum in any matter related to the Debtors, their affiliates, or these cases. Marcum provides services and advice in many areas.  As part of its diverse practice, Marcum participates in cases, proceedings and transactions that involve many different professionals, including attorneys, accountants, investment bankers and financial consultants, some of whom may represent claimants and parties-in-interest in the Debtors' chapter 11 cases now or in the future.   Also, Marcum has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in these proceedings.

22.     In addition, Marcum has in the past, may currently, and will likely in the future, be working with or against other professionals involved in this case in matters unrelated to the Debtors or these chapter 11 cases.  Likewise, certain such professionals who are retained in these chapter 11 cases might have referred work to Marcum.  From time to time, Marcum may have provided services, and Marcum currently and likely in the future will continue to provide services, to certain

creditors of the Debtors and various other parties adverse to the Debtors in matters wholly unrelated to these chapter 11 cases.  As described herein, however, Marcum has undertaken a detailed search to determine, and to disclose, whether it either is providing or has provided services to any Potential Party-In-Interest in such unrelated matters.  Based on my current knowledge of the professionals involved, and to the best of my knowledge, information, and belief, after reasonable inquiry, I have been able to conclude that none of these relationships disclosed herein constitute interests adverse to the Debtors in matters upon which Marcum is to be employed, and none are in connection with Debtors' chapter 11 cases.

23.     In addition, Marcum has previously appeared, currently appears, and expects to appear in the future in cases unrelated to these chapter 11 cases before each of the judges of the United States Bankruptcy Court for the Southern District of New York and in which the attorneys, professionals and staff of the Office of the United States Trustee may be involved.

24.     It is possible that certain Marcum employees, principals, managing directors, board members, equity holders, or affiliates of any of the foregoing, may own interests in mutual funds or other investment vehicles (including various types of private funds) that own debt, equity securities, or other financial instruments, including bank loans and other obligations, of certain Potential Parties-in-Interest in this matter.  Typically, the holders of such interests have no control over investment decisions related to such investment funds or financial instruments.  Marcum's policy prohibits its employees from personally trading in a debtor's securities.

25.     Currently, Marcum intends to use DMCL, LLP (chartered professional accountants) ("DMCL") as a sub-contractor during this engagement.  DMCL has offices throughout Canada including at 1500 - 1140 West Pender St. Vancouver, BC V6E 4G1.  Marcum intends to utilize DMCL to serve as a quality control auditor to ensure that auditing standards

8

applied during the course of the audit engagement are performed in accordance with Canadian Auditing Standards. Marcum will ensure that DMCL runs an appropriate conflicts check before utilizing its services. To the extent this check returns any potential conflicts Marcum will report same to the Court prior to moving forward.

26.    The only connection Marcum has with any Potential Parties-In-Interest about which I am aware is that Marcum is represented by Mintz & Gold, LLP ("M&G") in this matter. M&G previously represented the Debtors in unconnected matters including customer disputes, responding to court, legal, and regulatory subpoenas, and providing general advice on consumer facing issues.

27.    Other than as set forth above, to the best of my knowledge, information and belief, after reasonable inquiry, neither I nor any member of Marcum, nor any principal or professional employee of Marcum have any connection with the Debtors, its creditors, landlords, parties to executory contracts, members, directors, officers, financial institutions, any other party-in-interest, their current respective attorneys, accountants or professionals, the United States Trustee for Region 2 or any person employed in the office of the United States Trustee for Region 2, or are related or connected to any United States Bankruptcy Judge for the Southern District of New York or any of the District Judges for the Southern District of New York who handle bankruptcy cases, nor do we hold or represent any entity having, an adverse interest in connection with the Debtors' chapter 11 cases and Marcum is a disinterested person, as I understand that term to be defined in Section 101(14) of the Bankruptcy Code.

28.    Neither I, Marcum, nor any professional employee of Marcum is a related party to the Debtors, its creditors, or any other party-in-interest herein, or their respective attorneys in the matter for which Marcum is proposed to be retained.

29.     To the best of my knowledge, information, and belief, after reasonable inquiry, it is my understanding that Marcum has not been retained to assist any entity or person other than the Debtors on matters relating to, or in direct connection with, these chapter 11 cases.  Marcum may, however, continue to provide professional services to entities or persons that may be creditors or equity security holders of the Debtors or other parties-in-interest in these chapter 11 cases; *provided* such services do not relate to, or have any direct connection with these chapter 11 cases or the Debtors.

30.     Despite the efforts described above to identify and disclose the connections that Marcum has with Potential Parties-in-Interest in these chapter 11 cases, because the Debtors are a complex enterprise with numerous creditors and other relationships, Marcum is unable to state with certainty that every client relationship or other connection has been disclosed.

31.     It is Marcum's policy and intent to update and expand its ongoing relationship search for additional parties-in-interest in an expedient manner.  If any new material relevant facts or relationships are discovered or arise, Marcum will promptly file a supplemental disclosure. Marcum reserves the right to supplement the recitations in this Declaration in the event that Marcum discovers any facts bearing on matters described in this Declaration regarding Marcum's employment and retention by the Debtors.

32.     Based upon all the foregoing, I respectfully submit that Marcum neither holds nor represents any interest adverse to the Debtors herein or their estates, in the matters upon which it is to be engaged, and Marcum is a disinterested party as defined in Section 101(14) of the Bankruptcy Code.

33.     Marcum has not shared or agreed to share any of its compensation with any other person, other than a principal, professional or employee of Marcum, as permitted by Section 504

10

of the Bankruptcy Code. The proposed engagement of Marcum is not prohibited by Bankruptcy Rule 5002.

WHEREFORE, the Declarant respectfully requests the entry of the order annexed to the Application together with such other and further relief as is proper.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 14, 2022

*/s/ Edward F. Bechold*
Edward F. Bechold
Partner
Marcum LLP

11

**SCHEDULE 1**

| Entity Name | Role in Bankruptcy |
| --- | --- |
| Voyager Digital, LLC | Debtor |
| Voyager Digital Holdings, Inc. | Debtor |
| Voyager Digital Ltd. | Debtor |
| LGO SAS France | Current and Former Affiliates |
| Voyager Digital Brokerage Ltd. Canada | Current and Former Affiliates |
| Voyager Digital Brokerage Canada Ltd. Canada | Current and Former Affiliates |
| HTC Trading, Inc. Cayman Islands | Current and Former Affiliates |
| Voyager European Holdings ApS Denmark | Current and Former Affiliates |
| Voyager Europe France | Current and Former Affiliates |
| Voyager IP, LLC USA Delaware | Current and Former Affiliates |
| Voyager Digital, LLC USA Delaware | Current and Former Affiliates |
| Voyager Digital NY LLC USA Delaware | Current and Former Affiliates |
| VYGR Holdings, LLC USA Delaware | Current and Former Affiliates |
| VYGR Management LLC USA Delaware | Current and Former Affiliates |
| Coinify Financial Services ApS Denmark | Current and Former Affiliates |
| Coinify Technologies ApS Denmark | Current and Former Affiliates |
| Coinify Ltd. [United Kingdom] | Current and Former Affiliates |
| Coinify Global Solutions Inc. USA Delaware | Current and Former Affiliates |
| Coinify Payments OU Estonia | Current and Former Affiliates |
| Stephen Ehrlich | Directors and Officers |
| Philip Eytan | Directors and Officers |
| Krisztian Toth | Directors and Officers |
| Jennifer Ackart | Directors and Officers |
| Glenn Stevens | Directors and Officers |
| Brian Brooks | Directors and Officers |
| Ashwin Prithipaul | Directors and Officers |
| Evan Psaropoulos | Directors and Officers |
| Marshall Jensen | Directors and Officers |
| David Brosgol | Directors and Officers |
| Scott Vogel | Directors and Officers |
| Matt Ray | Directors and Officers |
| Tim Pohl | Directors and Officers |
| Jill Frizzley | Directors and Officers |
| Michael Legg | Directors and Officers |
| Daniel Costantino | Directors and Officers |
| Janice Barrilleaux | Directors and Officers |
| Pam Kramer | Directors and Officers |
| Gerard Hanshe | Directors and Officers |
| Rakesh Gidwani | Directors and Officers |

| Entity Name | Role in Bankruptcy |
|---|---|
| Mark Egert | Directors and Officers |
| Jeffrey B. Lightfoot | Directors and Officers |
| Erin Walmesley | Directors and Officers |
| Victor Hugo | Directors and Officers |
| Gaspard Aupepin de Lamothe Dreuzy | Directors and Officers |
| Jarrett Lilien | Directors and Officers |
| Guy Elliott | Directors and Officers |
| Serge Kreiker | Directors and Officers |
| Shingo Lavine | Directors and Officers |
| Lewis Bateman | Directors and Officers |
| Brandi Reynolds | Directors and Officers |
| Akbar Ladhani | Directors and Officers |
| Jordana Keslassy | Directors and Officers |
| Alameda Research Ventures LLC | Equityholders |
| Alameda Research | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |

| Entity Name | Role in Bankruptcy |
|---|---|
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| [Confidential] | Top Unsecured Creditors |
| Metropolitan Commercial Bank | Debtor Bank Accounts |
| Signature Bank | Debtor Bank Accounts |
| Bank of Montreal | Debtor Bank Accounts |
| BMO | Debtor Bank Accounts |
| Silvergate Bank | Debtor Bank Accounts |
| Three Arrows Capital Ltd. | Lendee |
| Alameda Research Ltd. | Lendee |
| Alameda Ventures Ltd | Lendee |
| Genesis Global Capital, LLC | Lendee |
| Galaxy Digital LLC | Lendee |
| BitGo Prime, LLC | Lendee |
| Anchorage Lending CA, LLC | Lendee |
| Anchorage Digital Bank N.A. | Lendee |
| Tesseract Group Oy | Lendee |
| Accretive Capital dba Benzinga | Vendors |
| Accura Advokatpartnerselskab | Vendors |
| Accurate Staffing Solutions Corp. | Vendors |
| Actimize, lnc. | Vendors |

| Entity Name | Role in Bankruptcy |
| --- | --- |
| Ada Support Inc. | Vendors |
| Adobe | Vendors |
| Advokaadibüroo COBALT OÜ (COBALT Law firm) | Vendors |
| Aiven | Vendors |
| Amalgamated Suncoast Portfolio LLC (Charlie Shrem) | Vendors |
| Amazon Web Services | Vendors |
| Amazon Web Services, Inc | Vendors |
| American Airlines | Vendors |
| Anthony Duclair | Vendors |
| Aon Consulting Inc. | Vendors |
| App.bitrise.io | Vendors |
| Apple | Vendors |
| Apple Inc. | Vendors |
| Apple Search Ads | Vendors |
| Appsflyer | Vendors |
| Arrow Search Partners | Vendors |
| Atlassian | Vendors |
| Authentic8, Inc. | Vendors |
| Ba Int - Usd | Vendors |
| Baker & McKenzie LLP | Vendors |
| Barefoot LLC | Vendors |
| Bateman Capital Inc | Vendors |
| Bates Group LLC | Vendors |
| Beekman Social LLC | Vendors |
| Behmer & Blackford LLP | Vendors |
| Berger Singerman LLP | Vendors |
| BetterInvesting | Vendors |
| Beutler Enterprises Inc d/b/a Beutler Ink | Vendors |
| Beyond Studios | Vendors |
| Big Outdoor Holdings, LLC | Vendors |
| BitGo, Inc. | Vendors |
| Blackwired (US), Inc. | Vendors |
| Blockchain Association | Vendors |
| Blockdaemon, Inc. | Vendors |
| Bloomberg Finance L.P. | Vendors |
| BPM LLP | Vendors |
| Brill Advisors, LLC | Vendors |
| British Airways | Vendors |
| Broadridge | Vendors |

| Entity Name | Role in Bankruptcy |
| --- | --- |
| BTC Media | Vendors |
| Buddakan | Vendors |
| Campbells LLP | Vendors |
| Canada Revenue Agency | Vendors |
| Carbone | Vendors |
| Carbone NYC | Vendors |
| CC API | Vendors |
| CC Data | Vendors |
| CCM Advisory LLC | Vendors |
| CDW, LLC | Vendors |
| Certified Kernel Tech LLC | Vendors |
| Chandkumar  R Ramnarine | Vendors |
| Chord Advisors LLC | Vendors |
| Christopher Gronkowski(DBA:G13 Endorsements) | Vendors |
| Citigate Dewe Rogerson Ltd | Vendors |
| Cloud Posse, LLC | Vendors |
| Cloudflare, Inc. | Vendors |
| CNW Group Ltd. | Vendors |
| Cockroach Labs, Inc. | Vendors |
| ColorArt | Vendors |
| Complex Sports & Entertainment | Vendors |
| Computershare | Vendors |
| Consensus 2022 | Vendors |
| CorCom LLC | Vendors |
| Cordell Ratzlaff | Vendors |
| Crypto Rating Council | Vendors |
| CSC (Corporation Service Company) | Vendors |
| CXG Holdings, Inc. | Vendors |
| Cyber Job Central, LLC | Vendors |
| Cypress Group Staffing, Inc. | Vendors |
| Daniel Gronkowski | Vendors |
| Data.ai Inc. (Formerly Known As App Annie Inc.) | Vendors |
| Datadog, Inc. | Vendors |
| Daversa Partners | Vendors |
| Day Pitney LLP | Vendors |
| Delta Air Lines | Vendors |
| Delta Airlines | Vendors |
| Devexperts Sofia Ltd. | Vendors |
| Digital Niche Agency | Vendors |
| Distinguished Search LLC | Vendors |
| Docker Inc. | Vendors |

| Entity Name | Role in Bankruptcy |
|---|---|
| Donnelley Financial Solutions Canada Corporation | Vendors |
| Dropbox | Vendors |
| Elasticsearch, Inc | Vendors |
| Elevate Brand Marketing | Vendors |
| Endeavor Parent, LLC (dba. IMG Models,LLC) | Vendors |
| Essential Accessibility Inc | Vendors |
| Eva  Yuen | Vendors |
| Exzac Inc. dba Matrix-IFS | Vendors |
| Fastly, Inc. | Vendors |
| Figma | Vendors |
| Fivetran | Vendors |
| Fivetran Inc. | Vendors |
| Fort Capital Ontario Inc. | Vendors |
| Fragomen, Del Rey, Bernsen & Loewy, LLP | Vendors |
| Frankfurt Kurnit Klein & Selz, P.C. | Vendors |
| Freshworks | Vendors |
| Fundamental Research Corp. | Vendors |
| Fusion of Ideas, Inc | Vendors |
| G Suite | Vendors |
| Github | Vendors |
| Github, Inc. | Vendors |
| GLENDALE SECURITIES INC. | Vendors |
| Goodbay Technologies | Vendors |
| GoodHire | Vendors |
| Google Ads | Vendors |
| Google Cloud | Vendors |
| Google G Suite | Vendors |
| Google, LLC. | Vendors |
| Gordon Gronkowski | Vendors |
| Gordon Gronkowski Jr | Vendors |
| Gravitational, Inc. | Vendors |
| Greenhouse Software, Inc. | Vendors |
| HackerRank | Vendors |
| HappyFunCorp LLC | Vendors |
| HardHead Marketing | Vendors |
| HiFi Project Inc. | Vendors |
| Hireclout, Inc | Vendors |
| Hotjar Limited | Vendors |
| Impact Tech, Inc | Vendors |
| Independent Trading Group (ITG) Inc. | Vendors |
| Indianapolis Motor Speedway | Vendors |

| Entity Name | Role in Bankruptcy |
| --- | --- |
| Infinite Agency, LLC | Vendors |
| Infinite IP Corporation | Vendors |
| Infinity Consulting Solutions, Inc | Vendors |
| Intuit | Vendors |
| IPQualityScore | Vendors |
| IQTalent Partners Inc | Vendors |
| Ironclad, Inc | Vendors |
| Iterable, Inc | Vendors |
| JA Visual Solutions LLC | Vendors |
| Jackson Lewis P.C. | Vendors |
| JDI Studio LLC | Vendors |
| JetBlue Airways | Vendors |
| JetBrains | Vendors |
| JFrog INC | Vendors |
| Jivaro Professional Headhunters, LLC | Vendors |
| Kate Leavell Companies LLC | Vendors |
| Kauling Racing, Inc | Vendors |
| Kcsa Strategic Communications | Vendors |
| Ketchum Inc. | Vendors |
| Kforce Inc | Vendors |
| KnowBe4 Inc. | Vendors |
| Korn Ferry (US) | Vendors |
| Koto Studio LLC | Vendors |
| La Cantera Resort & Spa | Vendors |
| Las Vegas Motor Speedway | Vendors |
| Lastpass | Vendors |
| LaunchDarkly | Vendors |
| Laurel Hill Advisory Group Company | Vendors |
| Learfield Communications, LLC | Vendors |
| Levin Group Limited | Vendors |
| LogMeIn | Vendors |
| LogMeIn USA, Inc. | Vendors |
| Loyalist, LLC | Vendors |
| MaestroQA, Inc. | Vendors |
| Major, Lindsey & Africa, LLC | Vendors |
| Marcum LLP | Vendors |
| Market One Media Group Inc. | Vendors |
| Market Rebellion, LLC | Vendors |
| Marla K Knapp | Vendors |
| Maxx Management LLC | Vendors |
| McCarter & English, LLP | Vendors |

| Entity Name | Role in Bankruptcy |
|---|---|
| Medium Rare Live, LLC | Vendors |
| Meltwater News US Inc | Vendors |
| Merlin Media LLC | Vendors |
| MessageBank, LLC | Vendors |
| Meta Platforms, Inc. | Vendors |
| Michael Gorsuch | Vendors |
| Microsoft | Vendors |
| Mintz & Gold LLP | Vendors |
| Miro | Vendors |
| Mixpanel Inc | Vendors |
| Mobile Action Inc. | Vendors |
| monday.com Ltd | Vendors |
| Money Services Business Association | Vendors |
| Motivate Design LLC (dba UX Hires) | Vendors |
| Mountain Shadows Resort | Vendors |
| MPJ Advisors LLC | Vendors |
| MSG Arena LLC | Vendors |
| Nasdaq Corporate Solutions, LLC | Vendors |
| National Women's Soccer League, LLC | Vendors |
| Network Redux | Vendors |
| Next for Me Media, Inc. | Vendors |
| NMLS | Vendors |
| NOBLE Capital Markets | Vendors |
| Noble Capital Markets, Inc | Vendors |
| Nominis Advisory Ltd | Vendors |
| Ogon,LLC | Vendors |
| Online Business Systems | Vendors |
| OpsGenie | Vendors |
| Optimal Workshop | Vendors |
| Oracle America, Inc. | Vendors |
| Organic Inc. | Vendors |
| OTC Markets Group Inc. | Vendors |
| Pada Ventures,Inc. d/b/a GroWrk Remote | Vendors |
| Paypal Transaction - Innovativec | Vendors |
| Pickwick Capital Partners, LLC | Vendors |
| Piper Companies, LLC | Vendors |
| PitchBook Data, Inc. | Vendors |
| Plaid Inc. | Vendors |
| Popnoggins Llc | Vendors |
| PORTSWIGGER | Vendors |
| Postman Basic Monthly | Vendors |

| Entity Name | Role in Bankruptcy |
|---|---|
| Printed Threads | Vendors |
| Proconsul Capital Ltd | Vendors |
| Project 1972, Inc. | Vendors |
| Publicist Inc. | Vendors |
| Quantum Talent Group | Vendors |
| Reciprocity, Inc. | Vendors |
| Regus | Vendors |
| Regus Management Group, LLC | Vendors |
| Residence Inn by Marriott Dayton Beavercreek | Vendors |
| Roadmunk | Vendors |
| Robert B. Holt | Vendors |
| S&S Activewear | Vendors |
| Schiff Hardin LLP | Vendors |
| Seeking Alpha | Vendors |
| Segment.IO, Inc. | Vendors |
| Seprio, LLC | Vendors |
| Sheraton Grand Nashville Downtown | Vendors |
| Sift Science, Inc. | Vendors |
| Slack Technologies, LLC | Vendors |
| SLS South Beach | Vendors |
| Smart City Networks | Vendors |
| Snapchat | Vendors |
| Snowflake Inc | Vendors |
| Snyk Inc. | Vendors |
| Socure Inc. | Vendors |
| soona | Vendors |
| Spacelift, Inc. | Vendors |
| Standout Tech Solutions LLC | Vendors |
| Swag.com | Vendors |
| Tableau Software, Inc. | Vendors |
| Taylor & Gray LLC | Vendors |
| Teneo Strategy LLC | Vendors |
| Terminal, Inc. | Vendors |
| The Block Crypto, Inc. | Vendors |
| The Cosmopolitan of Las Vegas | Vendors |
| The Friends  of Falcon Hockey Inc | Vendors |
| The Sports Girls | Vendors |
| The Winslow | Vendors |
| Travelbank | Vendors |
| Troutman Pepper Hamilton Sanders LLP | Vendors |
| TSX Inc. | Vendors |

| Entity Name | Role in Bankruptcy |
|---|---|
| Tuple | Vendors |
| Twilio | Vendors |
| Twitter Online Ads | Vendors |
| Twitter, Inc. | Vendors |
| Typeform, S.l. | Vendors |
| Uber | Vendors |
| United Airlines | Vendors |
| UPS | Vendors |
| Upside Business Travel | Vendors |
| User Testing, Inc. | Vendors |
| Vijay Kumar B | Vendors |
| W Dallas - Victory | Vendors |
| W New York - Union Square | Vendors |
| Walkers Corporate Limited | Vendors |
| Wall Street Dead aHead Networking LLC | Vendors |
| Weisman Tech Law LLC | Vendors |
| WeWork | Vendors |
| Whistler Search Partners, LLC | Vendors |
| WilliamsMarston LLC | Vendors |
| WINJIT INC | Vendors |
| Wrike, Inc. | Vendors |
| Zapier | Vendors |
| Zendesk, Inc | Vendors |
| ZeroFOX, Inc. | Vendors |
| Alejandro Benabe | Vendors |
| Ally Watt | Vendors |
| Ashtyn Davis | Vendors |
| Chandler Belk | Vendors |
| Chris Gronkowski | Vendors |
| Christen Westphal | Vendors |
| Danielle Colaprico | Vendors |
| David Helman | Vendors |
| Dorian Finney-Smith | Vendors |
| Dwight Powell | Vendors |
| Estelle Johnson | Vendors |
| Find Your Happy LLC | Vendors |
| Frank Ntilikina | Vendors |
| Glenn Gronkowski | Vendors |
| Glushon Sports Management | Vendors |
| Greg Malocca | Vendors |
| Isaiah Stone | Vendors |

| Entity Name | Role in Bankruptcy |
|---|---|
| Jalen Brunson | Vendors |
| Jess McDonald | Vendors |
| Kristen Hamilton | Vendors |
| Landon Cassill | Vendors |
| Lindsey Harris | Vendors |
| Marquez Valdes-Scantling | Vendors |
| Mary Kratka | Vendors |
| Maximilian Kleber | Vendors |
| Meghan Klingenberg | Vendors |
| Miko Tam | Vendors |
| Rob Gronkowski | Vendors |
| Sam Staab | Vendors |
| Spencer Dinwiddie | Vendors |
| Toni Pressley | Vendors |
| Trea Turner | Vendors |
| Tyler Lussi | Vendors |
| Willis Towers Watson PLC | Vendors |
| Copper Technologies (UK) Limited | Contract Counterparties |
| Chainalysis Inc. | Contract Counterparties |
| Amazon | Contract Counterparties |
| Cumberland DRW LLC | Contract Counterparties |
| Dallas Basketball Limited (Dallas Mavericks) | Contract Counterparties |
| DV Chain, LLC | Contract Counterparties |
| Fireblocks Ltd. | Contract Counterparties |
| Fireblocks Inc. | Contract Counterparties |
| JSCT, LLC (Jane Street) | Contract Counterparties |
| Tai Mo Shan Limited | Contract Counterparties |
| Landon Cassill, Inc. | Contract Counterparties |
| Ledger Technologies INC | Contract Counterparties |
| Gronk Endorsements LLC | Contract Counterparties |
| Dinwiddie, Inc. | Contract Counterparties |
| Talos Trading, Inc. | Contract Counterparties |
| ThoughtWorks, Inc. | Contract Counterparties |
| FiCentive, Inc. | Contract Counterparties |
| Usio, Inc. | Contract Counterparties |
| Wintermute Trading Ltd | Contract Counterparties |
| Celsius | Contract Counterparties |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |

| Entity Name | Role in Bankruptcy |
|---|---|
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |

| Entity Name | Role in Bankruptcy |
|---|---|
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |

| Entity Name | Role in Bankruptcy |
|---|---|
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |

| Entity Name | Role in Bankruptcy |
|---|---|
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |

| Entity Name | Role in Bankruptcy |
|---|---|
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| [Confidential] | Customers |
| Shared Office Space with Fasken Martineau DuMoulin, LLP | Landlords |
| WeWork Inc. | Landlords |
| WeWork Inc. | Landlords |
| WeWork Inc. | Landlords |
| WeWork Inc. | Landlords |
| CAC Specialty Co. | Insurance Broker |
| Euclid's Lloyds of London Syndicate | Insurance Carrier |
| FirstBrook Cassie & Anderson Ltd | Insurance Broker |

| Entity Name | Role in Bankruptcy |
|---|---|
| Great Midwestern Insurance Co. | Surety |
| Hartford Fire Insurance Company | Insurance Carrier |
| Hartford Underwriters Insurance Company | Insurance Carrier |
| MJD3 Associates, LLC. | Surety Broker |
| Relm Insurance Limited | Insurance Carrier |
| XL Specialty Ins. Company | Insurance Carrier |
| XL Specialty Ins. Company | Insurance Carrier |
| Teneo | Ordinary Course Professionals |
| Paul Hastings LLP | Ordinary Course Professionals |
| Jenner & Block LLP | Ordinary Course Professionals |
| Lowenstein Sandler LLP | Ordinary Course Professionals |
| Troutman Pepper Hamilton Sanders LLP | Ordinary Course Professionals |
| Berger Singerman LLP | Ordinary Course Professionals |
| Day Pitney LLP | Ordinary Course Professionals |
| Mintz & Gold LLP | Ordinary Course Professionals |
| Walkers Corporate Limited | Ordinary Course Professionals |
| Jackson Lewis P.C. | Ordinary Course Professionals |
| Frankfurt Kurnit Klein & Selz, P.C. | Ordinary Course Professionals |
| Kramer Levin Naftalis & Frankel LLP | Ordinary Course Professionals |
| Seyfarth Shaw LLP | Ordinary Course Professionals |
| Conyers Dill & Pearman | Ordinary Course Professionals |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |

| Entity Name | Role in Bankruptcy |
|---|---|
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| [Confidential] | Transaction Counterparties |
| Kirkland & Ellis LLP | Bankruptcy Professionals |
| Moelis & Company | Bankruptcy Professionals |
| Berkeley Research Group, LLC (BRG) | Bankruptcy Professionals |
| Stretto | Bankruptcy Professionals |
| Fasken Martineau DuMoulin LLP | Corporate Counsel |
| Quinn Emmanuel | Special Counsel |
| Grant Thornton US / Grant Thornton LLP | Tax |
| Deloitte Tax LLP / Deloitte & Touche | Tax |
| Valuation Research Corp. | Valuation Services |
| State of Alabama | Alabama Department of Revenue |
| State of Alabama | Department of Revenue |
| State of Arizona | Arizona Department of Revenue |
| State of Arkansas | Department of Finance and Administration |
| State of California | California Franchise Tax Board |
| State of Connecticut | Department of Revenue Services |
| State of Delaware | Division of Revenue |
| State of Florida | Florida Department of Revenue |
| State of Georgia | Georgia Department of Revenue |
| State of Idaho | Idaho State Tax Commission |
| State of Illinois | Department of Revenue |
| State of Indiana | Indiana Department of Revenue |
| State of Iowa | Department of Revenue |
| State of Kansas | Kansas Department of Revenue |
| State of Kentucky | Kentucky Department of Revenue |
| State of Louisiana | Louisiana Department of Revenue |

| Entity Name | Role in Bankruptcy |
| --- | --- |
| State of Maine | Maine Revenue Services |
| State of Maryland | Comptroller of Maryland |
| State of Michigan | Michigan Department of Treasury |
| State of Minnesota | Minnesota Department of Revenue |
| State of Mississippi | Mississippi Department of Revenue |
| State of Nebraska | Department of Revenue |
| State of New Hampshire | Department of Revenue Administration |
| State of New Jersey | New Jersey Division of Taxation |
| State of New Mexico | New Mexico Tax And Revenue Dept |
| State of North Carolina | Department of Revenue |
| State of North Dakota | Office of State Tax Commissioner |
| State of Oklahoma | Tax Commission |
| State of Oregon | Oregon Department of Revenue |
| State of Pennsylvania | Department of Revenue |
| State of Rhode Island | Division of Taxation |
| State of South Carolina | South Carolina Department of Revenue |
| State of Tennessee | Tennessee Department of Revenue |
| State of Texas | Texas Comptroller of Pub. Accounts |
| State of Utah | State Tax Commission |
| State of Virginia | Department of Taxation |
| District of Columbia - Office of Tax and Revenue | 1101 4th St., SW, Suite 270 West |
| State of West Virginia | West Virginia Tax Department |
| State of Wisconsin | Wisconsin Department of Revenue |
| Verizon Wireless | Utilities |
| Phone.com | Utilities |
| Linda A. Riffkin | Office of the US Trustee |
| Susan Arbeit | Office of the US Trustee |
| Mark Bruh | Office of the US Trustee |
| Shara Cornell | Office of the US Trustee |
| Benjamin J. Higgins | Office of the US Trustee |
| Brian S. Masumoto | Office of the US Trustee |
| Richard C. Morrissey | Office of the US Trustee |
| Andrea B. Schwartz | Office of the US Trustee |
| Paul K. Schwartzberg | Office of the US Trustee |
| Shannon Scott | Office of the US Trustee |
| Tara Tiantian | Office of the US Trustee |
| Andy Velez-Rivera | Office of the US Trustee |
| Annie Wells | Office of the US Trustee |
| Greg M. Zipes | Office of the US Trustee |
| William K. Harrington | Office of the US Trustee |
| Chief Judge Martin Glenn | Judge |

| Entity Name | Role in Bankruptcy |
|---|---|
| Judge Lisa G. Beckerman | Judge |
| Judge Shelley C. Chapman | Judge |
| Judge Robert D. Drain | Judge |
| Judge James L. Garrity, Jr. | Judge |
| Judge David S. Jones | Judge |
| Judge Sean H. Lane | Judge |
| Judge Cecelia G. Morris | Judge |
| Judge Michael E. Wiles | Judge |