Hearing Date: October 19, 2022
Hearing Time: 2:00 p.m. (Eastern Time)

Richard M. Pachulski (admitted *pro hac vice*)
Alan J. Kornfeld
Debra I. Grassgreen (admitted *pro hac vice*)
Jason H. Rosell
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone:  (310) 277-6910
Email:    rpachulski@pszjlaw.com
          akornfeld@pszjlaw.com
          dgrassgreen@pszjlaw.com
          jrosell@pszjlaw.com

*Counsel to Creditor Pierce Robertson*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*, | Case No. 22-10943 (MEW) |
| | (Jointly Administered) |
| Debtors.[1] | |

------------------------------------------------------------x

**OBJECTION OF PIERCE ROBERTSON**
**TO DISCLOSURE STATEMENT RELATING TO THE**
**FIRST AMENDED JOINT PLAN OF REORGANIZATION**
**OF VOYAGER DIGITAL HOLDINGS, INC. AND ITS DEBTOR**
**AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Pierce Robertson ("Robertson"), a creditor in the above-captioned chapter 11 cases (the "Chapter 11 Cases") and the lead plaintiff in the putative class-action litigation filed in the United States District Court for the Southern District of Florida (the "Florida District Court"), captioned *Roberson, et al. v. Cuban, et al.*, No. 1:22-cv-22538-RKA (S.D. Fla. Aug. 10, 2022) (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Voyager Digital Holdings, Inc.'s and Voyager Digital Ltd.'s principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003. Voyager Digital, LLC's principal place of business is 701 S. Miami Ave, 8th Floor, Miami, FL 33131.

DOCS_SF:107933.1

"Robertson Class Action"), by and through his undersigned counsel, respectfully submits this objection (the "Objection") to the (i) *Motion for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates With Respect Thereto* [Docket No. 289] (the "Motion") and (ii) *Disclosure Statement Relating to the First Amended Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 288] (the "Disclosure Statement"). In support of this Objection, Robertson respectfully states as follows:[2]

## PRELIMINARY STATEMENT

1. The Disclosure Statement is little more than a placeholder disclosure statement and lacks the most basic information – let alone "adequate information" within the meaning of section 1125 of the Bankruptcy Code – such as a liquidation analysis, the results of the investigation by the Special Committee (defined below), a description of pending litigation, and a description of the claims to be released under the Plan (defined below).

2. In addition to the lack of adequate information contained in the Disclosure Statement, the non-consensual third party releases contained in the Plan render it patently unconfirmable. As a result, the Debtors should not be authorized to waste estate resources soliciting a plan until this Court is comfortable that the proposed releases are more likely than not confirmable over the objection of a dissenting creditor.

3. The solicitation playbook being followed by the Debtors is not uncommon in

---

[2] On September 20, 2022 – 2 calendar days before the deadline to object to the Disclosure Statement – the Debtors filed a notice [Docket No. 441] continuing the deadline to object to the Disclosure Statement to October 12, 2022. However, the Debtors do not disclose in such notice any intent to amend the Disclosure Statement or Plan and provide no guidance concerning the auction and sale process. Accordingly, in the interest of facilitating a revised and acceptable version of the Disclosure Statement and Plan, Robertson files this Objection to apprise all parties in interest of the shortcomings of the current versions of the Disclosure Statement and Plan.

2

DOCS_SF:107933.1

current chapter 11 practice – file a placeholder plan and disclosure statement at the outset of the case and start the clock.[3] However, in this instance, the Disclosure Statement requires *material modifications* to meet the requirements of section 1125 of the Bankruptcy Code and the Plan requires *material modifications* to the releases. Under these circumstances, the Motion and Disclosure Statement should be denied in their entirety.

## RELEVANT BACKGROUND

### A. The Securities Class Actions

1. On April 28, 2022, Mark Cassidy, on behalf of himself, and all others similarly situated, filed an *Amended Class Action Complaint and Demand for Jury Trial* in the putative class action litigation pending in the United States District Court for the Southern District of Florida, captioned *Cassidy, et al. v. Voyager Digital Ltd., et al.*, No. 1:21-cv-24441-CMA (S.D. Fla. Apr. 28, 2022) (the "Cassidy Class Action"). The Cassidy Class Action asserts various causes of action against the Debtors under federal and state securities law and violations of consumer-protection claims under New Jersey and Florida law. Upon the commencement of the Chapter 11 Cases (defined below), the Cassidy Class Action was stayed and administratively closed.

2. On August 10, 2022, Robertson and his co-plaintiffs filed the Robertson Class Action in the Florida District Court. The current defendants in the Robertson Class Action are Stephen Ehrlich, Mark Cuban, and the Dallas Basketball Limited d/b/a Dallas Mavericks (the "Dallas Mavericks"). The Robertson Class Action asserts various causes of action against Mr. Ehrlich, Mr. Cuban, and the Dallas Mavericks, including aiding and abetting the Debtors' alleged fraud claimed in the Cassidy Class Action and violations under federal and state securities law and

---

[3] The form of ballots attached to the Motion highlight the Debtors' rush to get something on file and start the clock, as the proposed ballots do not contain any disclosure regarding the proposed releases, let alone the requisite conspicuous notice. Nor do the proposed ballots provide an option to opt-out of the releases, which opt-out was contemplated in the Motion, Disclosure Statement, and Plan.

3

violations of state consumer-protection laws.

B.   **The Chapter 11 Cases and Appointment of the Special Committee**

3.   On July 5, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), thereby commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases").

4.   On the Petition Date, the board of directors of debtor Voyager Digital LLC ("Voyager Digital") formally established a special committee (the "Special Committee"), comprising independent directors Timothy Pohl and Jill Frizzley, and vested it with authority to, among other things: (a) investigate any historical transactions relating to Voyager Digital, (b) investigate any potential estate claims and causes of action against insiders of Voyager Digital, and (c) perform any other activities consistent with the foregoing that the Special Committee or Voyager Digital's board otherwise deems necessary or appropriate (the "Investigation").

5.   On September 13, 2022, the Debtors, the Special Committee, and the Committee entered into that certain *Common Interest Confidentiality Stipulation and Protective Order* [Docket No. 408], which recognizes that the Special Committee has agreed to allow the Committee to participate in the Investigation and that the Debtors desire to have the Investigation completed prior to the Bankruptcy Court's consideration of the Plan.

C.   **The Disclosure Statement and Plan Releases**

6.   On August 12, 2022, the Debtors filed the Disclosure Statement and the *First Amended Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 287] (the "Plan"). The Plan is governed by New York law. Plan at Art. I(D).

DOCS_SF:107933.1

7. The Plan provides comprehensive releases of claims by the Debtors (Art. VIII(B)) and by third parties (Art. VIII(C)). Specifically, Article VIII(B) of the Plan (the "Estate Releases") provides, in pertinent part (emphasis added):

> . . . each Released Party is hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Debtors, the Reorganized Debtors, and their Estates . . . from any and all Causes of Action . . . based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), their capital structure, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan . . . .

8. Article VIII(C) of the Plan (the "Third Party Releases") provides, in pertinent part (emphasis added):

> . . . each Released Party is hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Releasing Parties . . . from any and all Causes of Action . . . based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), their capital structure, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors . . . ..
>
> Entry of the Confirmation Order shall . . . constitute the Bankruptcy Court's finding that each release described in this Article VIII.C is . . . a bar to any of the Releasing Parties or the Debtors or Reorganized Debtors or their respective Estates asserting any Cause of Action related thereto, of any kind, against any of the Released Parties or their property.

9. Alarmingly, **neither the Estate Releases nor the Third Party Releases appear to contain the usual exceptions for fraud, willful misconduct, or gross negligence**. *In re SunEdison, Inc.*, 576 B.R. 453, 457 (Bankr. S.D.N.Y. 2017) (observing that the plan releases contained the "usual exceptions" for "fraud, willful misconduct, or gross negligence.").

10. The Plan defines "Released Parties" as, among others, the Debtors, the Reorganized

5

Debtors, and each of their current and former directors, managers, officers, assigns, subsidiaries, affiliates, partners, principals, employees, agents, consultants, and representatives. Plan at Art. I(A)(105). In other words, "Released Parties" includes Ehrlich and may or may not include the remaining defendants in the Robertson Class Action, namely Cuban and the Dallas Mavericks.

11. The Plan defines "Releasing Parties" as, among others, (a) the Debtors; (b) the Reorganized Debtors; (c) all Holders of Claims that vote to accept the Plan; (d) all Holders of Claims that are deemed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (e) all Holders of Claims or Interests that are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan; and (g) all Holders of Claims who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan. Plan at Art. I(A)(106).

**D.    The Robertson Adversary Proceeding**

12. On August 15, 2022, in a letter to counsel to the plaintiffs in the Robertson Class Action (the "Committee Letter"), the Committee asserts that certain causes of action in the Robertson Class Action are property of the Debtors' estates and that such claims "must be preserved for the benefit of all general unsecured creditors" – *i.e.*, the same constituents who stand to directly benefit from the Robertson Class Action. A true and correct copy of the Committee Letter is attached hereto as Exhibit A.

13. On August 22, 2022, the Debtors initiated the above-captioned adversary proceeding (the "Adversary Proceeding") to extend the automatic stay under section 362 of the Bankruptcy Code to the Robertson Class Action or, in the alternative, to enjoin the prosecution of the Robertson Class Action pursuant to section 105 of the Bankruptcy Code.

14.     On August 26, 2022, the Committee filed a motion to intervene in the Adversary Proceeding [Adversary Proceeding Docket No. 9] (the "Motion to Intervene"), asserting, among other things, that the estate assets that are the subject of the Robertson Class Action "must be preserved while the Committee conducts its investigation into various potential estate causes of action, including potential actions against certain of the Class Action Defendants." Motion to Intervene at ¶ 22.

**OBJECTION**

**A.      The Disclosure Statement Contains Inadequate Information**

15.     A disclosure statement cannot be approved unless it contains "adequate information." In determining whether a plan proponent has provided "adequate information" to creditors and parties in interest, the standard is not whether the failure to disclose information would harm creditors but whether "hypothetical reasonable investors receive such information as will enable them to evaluate for themselves what impact the information might have on their claims and on the outcome of the case, and to decide for themselves what course of action to take." *In re Applegate Prop., Ltd.*, 133 B.R. 827, 831 (Bankr. W.D. Tex. 1991). Significantly, even if more thorough disclosure would not have affected an objecting creditor's vote, that creditor still has standing to object because inadequate disclosure may have induced other creditors to approve the plan. *Everett v. Perez (In re Perez)*, 30 F.3d 1209, 1217 (9th Cir. 1994). For a creditor to fairly evaluate the results of a proposed plan, the court must ensure that a disclosure statement sets forth "all those factors presently known to the plan proponent to bear upon the success or failure of the proposals contained in the plan." *See In re Jeppson*, 66 B.R. 269, 292 (Bankr. D. Utah 1986).

16.     The Disclosure Statement lacks adequate information necessary for creditors to evaluate the Plan as required by section 1125 of the Bankruptcy Code. Among the information

missing from the Disclosure Statement is the following:

- Neither the liquidation analysis (Exhibit B to the Disclosure Statement), the financial projections (Exhibit C to the Disclosure Statement), nor the valuation analysis (Exhibit D to the Disclosure Statement) has been filed as of the filing of this Objection.

- The Disclosure Statement does not contain any financial projections whatsoever to enable creditors to evaluate the projected recovery of their claims.

- The Disclosure Statement fails to describe the securities fraud claims asserted against the Debtors in the Cassidy Class Action.

- The Disclosure Statement fails to describe the securities fraud claims asserted against Mr. Ehrlich, Mr. Cuban, and the Dallas Mavericks in the Robertson Class Action, which may represent a significant source of recovery for creditors.

- The definitions of "Released Parties" and "Releasing Parties" are broadly defined and bracketed in the Plan and the Disclosure Statement does not specifically identify such parties. For example, it is unclear whether Mr. Cuban and the Dallas Mavericks are "Released Parties."

- The Plan provides for general unsecured creditors to receive their *pro rata* share of the "Claims Allocation Pool," which is an undefined term.

- The Disclosure Statement does not include the results of the Investigation, which is critical to understanding the claims that the Debtors propose to release under the Plan. It is not sufficient for the Debtors to provide the results of the Investigation prior to a hearing on confirmation of the Plan. Instead, it must be included in the Disclosure Statement to give parties in interest sufficient time to consider whether to vote to accept or reject the Plan and/or opt-out of the releases contained therein.

- The Disclosure Statement does not include a description of the claims being released by the Debtors or the potential value of such claims.

- The Disclosure Statement does not include a description of the claims against Mark Cuban and the Dallas Mavericks that the Committee asserts belong to the Debtors' estates, as reflected in the Committee Letter.

17.    Whether a disclosure statement contains "adequate information" should be assessed from the perspective of the claim or interest holders with the ability to vote or take action on a plan. The Disclosure Statement fails to satisfy section 1125 of the Bankruptcy Code in numerous

8

material respects. It omits basic information about matters of primary concern to creditors – including the estates' claims being released and projected recoveries. Absent such disclosures, creditors simply have not been provided "adequate information" to make an informed decision as whether to accept, reject, or oppose the Plan – and certainly not enough information to decide whether to opt-out of the proposed releases. Accordingly, the Bankruptcy Court should deny approval of the Disclosure Statement.

B.  **The Non-Consensual Third Party Releases Render the Plan Patently Unconfirmable**

18. The Disclosure Statement should not be approved because the Plan is not capable of being confirmed. *See In re Moshe*, 567 B.R. 438, 444 (Bankr. E.D.N.Y. 2017); *In re Quigley Co.*, 377 B.R. 110, 115 (Bankr. S.D.N.Y. 2007); *In re Market Square Inn, Inc.*, 163 B.R. 64, 68 (Bankr. W.D. Pa. 1994) ("Where it is clear that a plan of reorganization is not capable of confirmation, it is appropriate to refuse the approval of the disclosure statement.") (citing *In re Filcas of America, Inc.*, 147 B.R. 297 (Bankr. D.N.H. 1992)). "If the disclosure statement describes a plan that is so fatally flawed that confirmation is impossible, the court should exercise its discretion to refuse to consider the adequacy of disclosures. *Such an exercise of discretion is appropriate because undertaking the burden and expense of plan distribution and vote solicitation is unwise and inappropriate if the proposed plan could never legally be confirmed*." *In re Phoenix Petroleum Co.*, 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001) (citations omitted) (emphasis added). *See also In re Felicity Assocs.*, 197 B.R. 12, 14 (Bankr. D.R.I. 1996) ("It has become standard Chapter 11 practice that 'when an objection raises substantive plan issues that are normally addressed at confirmation, it is proper to consider and rule upon such issues prior to confirmation, where the proposed plan is arguably unconfirmable on its face.'"). The primary reason to evaluate confirmability is to "avoid engaging in a wasteful and fruitless exercise of

9

sending the disclosure statement to creditors and soliciting votes on the proposed Plan when the plan is unconfirmable on its face. Such an exercise in futility only serves to further delay a debtor's attempts to reorganize." *In re Atlanta West VI*, 91 B.R. 620, 622 (Bankr. N.D. Ga. 1988).

19. The Motion should be denied because the Disclosure Statement describes a Plan put forward by the Debtors that contains non-consensual third party releases, rendering it unconfirmable on its face.

### i. The Third Party Releases Are Non-Consensual Third Party Releases.

20. The Third Party Releases contained in the Plan apply, in pertinent part, to:

   a. all Holders of Claims or Interests that are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan;[4]

   b. all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan; and

   c. all Holders of Claims who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan.

21. In other words, holders of claims against the Debtors that ***do not vote on the Plan*** or vote to reject the Plan but fail to affirmatively opt-out of the releases provided in the Plan are deemed to release the "Released Parties" (including Stephen Ehrlich) from any causes of action relating to the Debtors, including claims arising from fraud and violations of securities laws.

22. As drafted, the Third Party Releases are non-consensual. This court has previously observed in *Aegean Marine* that ***consensual*** releases include "creditors and holders of interests who ***did not vote*** for the Plan (or who were not eligible to vote) but who nevertheless have submitted forms in which they ***affirmatively elected to grant the requested releases***." *In re Aegean Marine Petroleum Network Inc.*, 599 B.R. 717, 720 (Bankr. S.D.N.Y. 2019) (emphasis added). In

---

[4] This provision also violates the best interests of creditors test, as holders of claims or interests that are deemed to reject the Plan would at least retain their direct claims in the context of a chapter 7.

10

other words, the determination of whether a release was consensual turned on whether the creditor took affirmative action.

23. This approach is in line with the bankruptcy court's approach in *SunEdison*. In *SunEdison*, the plan defined releasing parties to include "all Holders of Claims entitled to vote for or against the Plan that do not vote to reject the Plan" (referred to as the "Non-Voting Releasors"). The *SunEdison* court, applying traditional contract principles under New York law, recognized that absent a duty to speak, silence does not constitute consent, and in the context of soliciting third party releases in a plan, a creditor does not have a duty to speak. *SunEdison*, 576 B.R. at 457. *See also In re Chassix Holdings, Inc.*, 533 B.R. 64, 81 (Bankr. S.D.N.Y. 2015) ("Charging all inactive creditors with full knowledge of the scope and implications of the proposed third party releases, and implying a "consent" to the third party releases based on the creditors' inaction, is simply not realistic or fair, and would stretch the meaning of "consent" beyond the breaking point."); *In re Washington Mut. Inc.*, 442 B.R. 314, 355 (Bankr. D. Del. 2011) ("Failing to return a ballot is not a sufficient manifestation of consent to a third party release. Therefore, the Court concludes that any third party release is effective only with respect to those who affirmatively consent to it by voting in favor of the Plan and not opting out of the third party releases.") (citations omitted).

24. Here, the Third Party Releases apply to creditors (a) who are not entitled to vote, (b) who do not vote, or (c) who reject the Plan (*i.e.*, reject the offer), but fail to properly opt-out of the Third Party Releases. Under these circumstances, the creditors have not consented to the Third Party Releases. As a result, the Third Party Releases must be approved (which they should not be) as non-consensual third party releases.

    **ii.**     **Non-Consensual Third Party Releases Are Not Permissible.**

25. The permissibility of non-consensual third party releases is a hotly contested topic.

11

However, in this district, the court in *In re Purdue Pharma, L.P.*, 635 B.R. 26 (S.D.N.Y. 2021), has succinctly held that the "Bankruptcy Code does not authorize [] non-consensual non-debtor releases: not in its express text []; not in its silence []; and not in any section or sections of the Bankruptcy Code that, read singly or together, purport to confer generalized or "residual" powers on a court sitting in bankruptcy." *Id.* at 37-38.

26.  In reaching its conclusion that non-consensual third party releases are prohibited, the *Purdue* court provided an example of direct (non-derivative) claims that would otherwise be stripped from the non-debtor:

> Example: nearly all of the State Appellants have a law under which individuals who serve in certain capacities in a corporation are individually and personally liable for their personal participation in certain unfair trade practices. As Judge Drain recognized (see In re Purdue Pharma L.P., 2021 Bankr. LEXIS 2555, 2021 WL 4240974, at *44), the liability imposed by these statutes is not derivative; the claims arise out of a separate and independent duty that is imposed by statute on individuals who, by virtue of their positions, personally participated in acts of corporate fraud, misrepresentation and/or willful misconduct. Liability under those laws is limited to persons who occupied the roles of officer, manager or director of a corporation - which means that there is considerable factual overlap, perhaps even complete congruence, between those claims and the derivative claims against the same individuals that Judge Drain had undoubted authority to release and enjoin. But it is undisputed that these laws impose liability, and even penalties, on such persons independent of any corporate liability (or lack of same), and independent of any claim the corporation could assert against them for faithless service as a result of those same acts.

*Id.* at 91.  The description of these direct (non-derivative) claims is also applicable to the types of direct (non-derivative) claims asserted against Ehrlich, Cuban, and the Dallas Mavericks in the Robertson Class Action.  For the same reasons as stated in *Purdue*, these claims should not be stripped from creditors without their consent – and certainly without any consideration provided by Ehrlich, Cuban, and the Dallas Mavericks.

27.  As this court has previously acknowledged in *Aegean Marine*, the ordering of an

12

involuntary release of third party claims against a non-debtor is "an extraordinary thing" that is "different . . . from what courts ordinarily do." *Aegean Marine*, 599 B.R. at 723. Unfortunately, this court finds itself in another "odd situation where [it is] being asked to use an unwritten authority to release non-debtor officers and directors from claims when the Bankruptcy Code would bar [it] from giving similar relief to those persons if they were debtors in their own cases." *Id.* at 726 (recognizing that under section 523(a)(19) of the Bankruptcy Code, liabilities for violations of the securities laws are not dischargeable).

28. This court previously acknowledged that a bankruptcy court generally "has no power to say what happens to property that belongs to a third party, even if that third party is a creditor" and declined to issue "a ruling that extinguishes one non-debtor's claim against another non-debtor." *Id.* at 723. Moreover, this Court previously acknowledged that "[i]f claimants have the right to recover from individual directors, there is no reason why they should be deprived of those potential recoveries." *Id.* at 729. The same reasoning applies here. To the extent the Plan contains non-consensual third party releases that strip creditors of their direct (non-derivative) claims against third parties, the Plan is patently unconfirmable.

## CONCLUSION

29. For the reasons discussed above, the (a) Disclosure Statement contains inadequate information, failing to provide the most basic information necessary for a creditor to make an informed decision to accept or reject the Plan and (b) the Plan is patently unconfirmable because it contains prohibited non-consensual third party releases. As a result of these shortcomings, the Motion and Disclosure Statement should be denied in its entirety to avoid the cost and expense associated with soliciting a doomed plan.

| Dated: September 21, 2022 | PACHULSKI STANG ZIEHL & JONES LLP |
|---|---|
| | */s/ Jason H. Rosell* |
| | Richard M. Pachulski (admitted *pro hac vice*) |
| | Alan J. Kornfeld |
| | Debra I. Grassgreen (admitted *pro hac vice*) |
| | Jason H. Rosell |
| | 10100 Santa Monica Boulevard, 13th Floor |
| | Los Angeles, CA 90067 |
| | Telephone: (212) 561-7700 |
| | Email:  rpachulski@pszjlaw.com |
| | akornfeld@pszjlaw.com |
| | dgrassgreen@pszjlaw.com |
| | jrosell@pszjlaw.com |
| | |
| | *Counsel to Creditor Pierce Robertson* |

# **EXHIBIT A**

**Committee Letter**

# **EXHIBIT A**

**Committee Letter**



**mwe.com**

Darren Azman
Attorney at Law
dazman@mwe.com
+1 212 547 5615

August 15, 2022

**VIA EMAIL AND FEDEX**

**THE MOSKOWITZ LAW FIRM, PLLC**
c/o Adam M. Moskowitz
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
adam@moskowitz-law.com

     RE: *In re Voyager Digital Holdings, Inc., et al.* (Bankr. S.D.N.Y. 22-10943 (MEW))

Dear Mr. Moskowitz,

  This firm is counsel to the Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases (the "Chapter 11 Cases") of Voyager Digital Holdings, Inc., Voyager Digital Ltd. ("Voyager Limited"), and Voyager Digital, LLC ("Voyager LLC" and, collectively, the "Debtors"). As you know, on July 6, 2022, the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). On July 19, 2022, the Office of the United States Trustee appointed the Committee, which is comprised of seven of the Debtors' customers. The Committee and its members owe fiduciary duties to the Debtors' general unsecured creditors, which includes a duty to maximize their recoveries. Accordingly, the Committee has a responsibility to ensure that property of the Debtors' estates is preserved for the benefit of unsecured creditors.

  We write to you in response to the putative class action (the "Class Action") that your clients commenced against Mark Cuban, Dallas Basketball Limited, d/b/a Dallas Mavericks (the "Mavericks"), and Stephen Ehrlich (collectively, the "Defendants") on August 10, 2022 by filing the *Class Action Complaint and Demand for Jury Trial* (the "Complaint"), *Robertson, et al. v. Cuban, et al.* (S.D. Fla. 22-22538-RKA). The Complaint includes causes of action that are property of the Debtors' estates. Accordingly, by commencing the Class Action, your clients violated the automatic stay imposed under Bankruptcy Code section 362 in the Chapter 11 Cases. For the reasons set forth below, we hereby request that you voluntarily dismiss the Class Action by no later than August 19, 2022.

  A.  **The Automatic Stay**

  The commencement of a bankruptcy case results in the imposition of an automatic stay that acts as an injunction against all parties from taking certain actions, including "any act to obtain possession of

---

One Vanderbilt Avenue   New York NY 10017-3852   Tel +1 212 547 5400   Fax +1 212 547 5444

*US practice conducted through McDermott Will & Emery LLP.*

August 15, 2022
Page 2

property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). When the automatic stay is willfully violated, section 362(k)(1) provides that "the individual injured by such violation . . . shall recover actual damages, including attorneys' fees . . . ." 11 U.S.C. § 362(k)(1). A "willful" violation of the automatic stay means only that the violator (i) take a deliberate action (*e.g.*, filing the Class Action) and (ii) with knowledge of the automatic stay. *In re Crysen/Montenay Energy Co.,* 902 F.2d 1098, 1105 (2d Cir. 1990).

B.      **Property of the Estate**

The commencement of a bankruptcy case forms an estate that, pursuant to Bankruptcy Code section 541, includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). This includes all "rights of action" assertable by the debtor based on state or federal law. If a company is in bankruptcy, those claims belong to the estate, and "creditors lack standing to assert" those claims. *In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014).

"[A]mong the claims that only a debtor—and not a debtor's creditors—may pursue is a 'general claim,' understood to be a claim 'with no particularized injury arising from it,' and which could be 'brought by any creditor of [a] debtor . . . .'" *Soundview Elite*, 565 B.R. 534, 544 (Bankr. S.D.N.Y. 2017) (quoting *St. Paul Fire & Marine Ins. Co.*, 884 F.2d 688, 701 (2d Cir. 1989)). A common "general claim" is a "derivative claim," which has been defined as "[a] claim based on rights 'derivative' of, or 'derived' from, the debtor . . . ." *Id.* (quoting *Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d 81, 89 (2d Cir. 2014)). Conversely, a claim is not property of the estate, but rather a creditor claim, when the claim particularly injures a creditor. *See In re Tronox*, 855 F.3d 84, 100 (2d Cir. 2017).

To determine whether a claim is derivative or direct, courts look to state law. *In re SemCrude L.P.*, 796 F.3d 310, 316 (3d Cir. 2015)—more specifically, the law of the state law in which the entity was formed. *In re CD Liquidation Co., LLC*, 462 B.R. 124, 131 (Bankr. D. Del. 2011). In the bankruptcy context, when determining whether a claim is (A) derivative (*i.e.*, general) or (B) particular, courts are tasked with "inquir[ing] into the factual origins of the injury and, more importantly, into the nature of the legal claims asserted." *Madoff*, 740 F.3d at 89. Where a cause of action is based on facts "generally available to any creditor," and recovery would "serve to increase the pool of assets available to all creditors," then the cause of action is "general," and therefore, property of the estate. *Emoral, Inc.*, 740 F.3d at 881; *SemCrude*, 796 F.3d at 317-19, 321-22. On the other hand, if the claim "arises from the wrongdoer's breach of a separate legal obligation owed to the victim . . . that results in an injury particularized to the victim," then the claim is non-derivative. *Sec In'r Prot. Corp v. Bernard L. Madoff Inv. Sec. LLC*, Case No. 08-01789 (SMB), 2017 WL 921963, at *4 (Bankr. S.D.N.Y. Mar. 7, 2017). Ultimately, if the claim "is a general one . . . , the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action." *St. Paul*, 884 F.2d at 701.



August 15, 2022
Page 3

C. **<u>Delaware Law Applies</u>**

Voyager Limited and Voyager LLC are Delaware entities, and thus Delaware law applies. Delaware courts "look to the nature of the wrong and to whom the relief should go" when determining whether a claim is derivative. *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004). The test under Delaware law "turns solely on the following questions: (1) who suffered the alleged harm (the corporation or the suing [party], individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the [suing party], individually)?" *Tooley*, 845 A.2d at 1033. Moreover, "[t]he [suing party's] claimed direct injury must be independent of any alleged injury to the corporation. The [suing party] must demonstrate that the duty breached was owed to the [suing party] and that he or she can prevail without showing an injury to the corporation." *Id*. at 1039.

The classification of causes of action in the Complaint is not binding. *In re MultiPlan Corp. Stockholders Litig.*, 268 A.3d 784, 801 (Del. Ch. 2022). Instead, the court must "'look to all the facts of the complaint and determine for itself' whether a claim is direct or derivative." *Id.* "[A] claim is not 'direct' simply because it is pleaded that way, and . . . does not talismanically create a direct action." *Dieterich v. Harrer*, 857 A.2d 1017, 1027 (Del. Ch. 2004); *see Dieterich v. Harrer*, 857 A.2d 1017 at 1027, 2004 WL 1739664, at *9 (Del. Ch. Aug.3, 2004) ("a claim is not 'direct' simply because it is pleaded that way . . . . Instead the court must look to all the facts of the complaint and determine for itself whether a direct claim exists.").

D. **<u>The Class Action Improperly Seeks to Circumvent the Automatic Stay</u>**

The Class Action is merely a recitation of the first class action (the "<u>Prepetition Class Action</u>") filed by your clients against Voyager Limited and Voyager LLC on December 24, 2021. The only difference is that Voyager Limited and Voyager LLC were replaced as defendants with Cuban, Ehrlich, and the Mavericks. The Complaint begins by directly quoting the first eight paragraphs of the Prepetition Complaint, and all but three paragraphs from the factual allegations in the Prepetition Complaint are included in the Complaint.[1] The fact that the Debtors are not named as defendants does not now move the Class Action outside the bounds of the automatic stay. *See In re Continental Airlines*, 177 B.R. 475, 479 (D. Del. 1993) (class actions against non-debtors cannot be used to circumvent the stay when the debtor is the real party defendant).

E. **<u>Under Delaware Law, the Class Action Claims are Derivative and Thus Violate the Automatic Stay</u>**

The causes of action asserted in the Complaint allege only indirect harm to the plaintiffs—harm that derives from an asserted direct injury to the Debtors relating to negligent management, aiding and abetting breach of fiduciary duties, fraudulent transfers, and similar claims, each of which can only be

---

[1] Paragraphs 20, 21, and 24, which pertain to marketing by the Debtors.



August 15, 2022
Page 4

brought by the Debtors. In considering the nature of such claims, two things are clear. *First*, the Debtors suffered the alleged harm from the acts of the Defendants, and any harm to your clients was secondary. *Second*, the secondary harm is not particular as to your clients. Rather, all of the Debtors' creditors suffered the same general harm.

The gravamen of the Class Action is that the Defendants conspired together and with the Debtors to induce customers to invest in the Debtors and use the Debtors' platform. As part of this conspiracy, the plaintiffs allege that the Defendants received substantial commissions. If these allegations are true, and the Defendants were conducting fraudulent schemes to use the Debtors to induce consumers to use the Debtors' platform for the Defendants' own enrichment, the Debtors are the victims, and any injury resulting from the Defendants' actions is common to all creditors. *See In re Barkany*, 542 B.R. 662, 692 (Bankr. E.D.N.Y. 2015) (finding that the injury to defrauded investors was no different than the injury to other defrauded investors); *see also Albert v. Alex. Brown Mgmt. Servs.*, 2005 WL 2130607, at *13 (Del. Ch. Aug. 26, 2005) (claims for failure to provide competent and active management are "clearly derivative").

Moreover, any improper commissions or payments that the Defendants received from the Debtors are subject to avoidance as fraudulent transfers. Courts have uniformly held that these types of claims are derivative in nature. *See, e.g.*, *In re Tronox Inc.*, 549 B.R. 21, 42 (S.D.N.Y. 2016) (applying Delaware law and holding that "[t]he classic case" of a derivative action is fraudulent conveyance or undercapitalization); *MultiPlan*, 268 A.3d at 801 (finding that overpayment claims, or claims causing an exchange of assets or equity at a loss to the corporation are "normally viewed as exclusively derivative under the *Tooley* analysis") (internal quotations omitted); *In re JMO Wind Down, Inc.*, Case No. 16-10682 (BLS), 2018 WL 1792185, at *8 (Bankr. D. Del. April 13, 2018) ("As such, the Court finds that fraudulent transfer claims constitute derivative claims because the alleged injury is to the general creditor body and the recovery returns to the estate."); *Verizon Commc'ns Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* Case No. N18C-08-086 EMD CCLD, 2021 WL 710816, at *11 (Del. Super. Ct. Feb. 23, 2021) ("Because that recovery would serve to increase the pool of assets available to all creditors, fraudulent transfer claims are derivative as a matter of federal bankruptcy law.") (internal quotations omitted).

The Class Action also includes claims for aiding and abetting breaches of fiduciary duties. These claims are unequivocally property of the estate. "Aiding and abetting has been recognized as a 'dependent' claim," and "the derivative nature of an aiding and abetting claim will exist only with the success of the breach of fiduciary duty claim." *In re Draw Another Circle.*, 602 B.R. 878, 904 (Bankr. D. Del. 2019). "Any breach of fiduciary duty harms the corporation [and] . . . [a]s such, those claims belong to the [estate] to pursue." *In re JMO Wind Down, Inc.*, 2018 WL 1792185, at *8; *see also LaSala v. Bordier et Cie*, 519 F.3d 121, 130 (3d Cir. 2008) ("[W]here alleged breach of fiduciary duty harmed the corporation, alleged aiding-and-abetting claim is derivative in nature") (citing *In re First Interstate Bancorp Cons. S'holder Litig.*, 729 A.2d 851, 864 (Del. Ch. 1998)).



August 15, 2022
Page 5

      For the foregoing reasons, the claims asserted in the Class Action are property of the Debtors' estates. These claims must be preserved for the benefit of all general unsecured creditors. If necessary, the Committee is prepared to seek relief from the Bankruptcy Court to enforce the automatic stay and seek damages for the willful stay violation. Moreover, if for any reason the Bankruptcy Court finds that some of the asserted causes of action are *not* property of the Debtors' estates, the Committee intends to seek, in the alternative, enjoinment of the Class Action given the impact that the Class Action will have on the Chapter 11 Cases and the ability to recover funds from the same Defendants for the benefit of all general unsecured creditors. Courts have held that when a creditor's claims are so closely related to a debtor's claims, third party actions should be enjoined because the estate claims have the potential to reduce such creditor's injury and, until then, it is impossible to measure the creditor's damages. *See In re Giga Watt Inc.*, Case No. 18-03197-FPC7, 2021 WL 4436941, at *10 (Bankr. E.D. Wa. Sep. 26, 2021) (enjoining direct claims when they threaten the orderly procedure of bankruptcy where all creditors are treated equally); *see Madoff*, 429 B.R. 423, 435-37 (Bankr. S.D.N.Y. 2010) (quoting *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003); *see also Fisher v. Apostolou*, 155 F.3d 876, 881-83 (7th Cir. 1998).

      Again, the Committee requests that you voluntarily dismiss the Class Action by no later than August 19, 2022. If you are unwilling to do so, the Committee will have no choice but to seek judicial intervention from the Bankruptcy Court.

Best,

_____
Darren Azman

cc: Charles R. Gibbs (crgibbs@mwe.com)
    Joseph B. Evans (jbevans@mwe.com)
    Gregg Steinman (gsteinman@mwe.com)
    Joseph M. Kaye (joseph@moskowitz-law.com)
    Barbara C. Lewis (barbara@moskowitz-law.com)
    Josh Sussberg (jsussberg@kirkland.com)
    Christine Okike (christine.okike@kirkland.com)

