Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF RESPONSE TO WAVE FINANCIAL INTERVIEW

**PLEASE TAKE NOTICE** that, on August 5, 2022, the Court entered the *Order (I) Approving the Bidding Procedures and Related Dates and Deadlines, (II) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Sale, Disclosure Statement, and Plan Confirmation, and (III) Granting Related Relief* [Docket No. 248] (the "Bidding Procedures Order"). The approved bidding procedures (the "Bidding Procedures") were attached as Exhibit 1 to the Bidding Procedures Order;

**PLEASE TAKE NOTICE** that, on September 6, 2022, the Debtors filed the *Notice of Auction* [Docket No. 379];

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

**PLEASE TAKE NOTICE** that, on September 13, 2022, pursuant to the Bidding Procedures Order, the Debtors commenced the Auction that was confidential and subject to the terms of the confidentiality agreements between the Debtors and the Auction participants, including Wave Financial Group, LLC. ("Wave");

**PLEASE TAKE NOTICE** that, on September 26, 2022, the Debtors filed the *Notice of Successful Bidder* [Docket No. 457] announcing that, upon the conclusion of the Auction, the Debtors, in the exercise of their business judgement, and in consultation with the Committee, selected West Realm Shires Inc. ("FTX US") as the Winning Bidder;

**PLEASE TAKE NOTICE** that, on September 28, 2022, the Debtors filed the *Debtors' Motion for Entry of An Order (I) Authorizing Entry Into the Asset Purchase Agreement and (II) Granting Related Relief* [Docket No. 472] (the "APA Motion");

**PLEASE TAKE NOTICE** that, on September 28, 2022, a representative of Wave, participated in an interview for an article on Cointelegraph.com and made numerous false assertions regarding the Debtors and what Wave had previously agreed contractually would be a confidential Auction; and

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file a response to Wave's public statements, attached hereto as **Exhibit A**, and the Debtors expressly **reserve all rights and claims against Wave**, its affiliates, and its officers, directors, and agents, including the ability, in the Debtors' discretion, to withhold Wave's bid deposit.

*[Remainder of page intentionally left blank]*

Dated:  September 29, 2022
New York, New York

/s/ Joshua A. Sussberg

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:     (212) 446-4900
Email:          jsussberg@kirkland.com
                    cmarcus@kirkland.com
                    christine.okike@kirkland.com
                    allyson.smith@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Response**

Re:  September 28, 2022, Interview from Wave

A Wave representative participated in an interview (the "Interview") reported in an article on cointelegraph.com titled "Voyager's auction did not serve depositors' best interests, alleges Wave Financial rep" (the "Article").[1]   The Article is riddled with misstatements and factual inaccuracies.  The statements apparently made by Wave during the Interview were in direct violation of the Wave's NDA, and Wave's decision to participate in the Interview, resulting in numerous misstatements in the Article, was a direct effort to undermine the successful sale process that is firmly in the best interest of Voyager's stakeholders.

On September 13, 2022, Voyager commenced an auction ("Auction") for the sale of its business and/or its assets.  Before the auction, Voyager engaged in an extensive marketing process, engaging with approximately 90 parties.  Parties who submitted preliminary bids for Voyager's business were invited to participate in the auction.  Wave was one of those parties.

The Auction lasted 13 days.  It was comprehensive, thorough, and extremely competitive. Voyager engaged in extensive, thorough negotiations with every party that participated, with the sole goal of obtaining the highest and best bid and maximizing value for customers.  Voyager and its advisors were unequivocally clear to each bidder regarding the criteria their bid was evaluated on, and we worked with each bidder to address the shortcomings in their respective bids.

With respect to Wave, Voyager and its advisors were unequivocal on a basic point: financial commitments were required given the contingencies and uncertainties in its proposal. Wave was and is well aware of these requirements.  The Debtors' advisors repeatedly informed Wave and its representatives of the need for committed financing *long before the Auction* during the hundreds of hours of management meetings and advisor calls and correspondences beginning before the Debtors filed their cases on July 5, 2022.  Any rational debtor would require such commitments given the nature of Wave's proposal.

Wave never submitted a qualified bid.  Although it did make a proposal, it was immediately clear that Wave had not listened to the Debtors' feedback, as its bid had severe deficiencies both facially and compared to other bids received.  Among other issues, Wave's bid was predicated on obtaining financing from a third-party investor, but Wave could not, and would not, produce any financing commitments that indicated Wave could close the transaction at all, let alone on the timing required.  Bids received from other parties either included financing commitments, or did not require financing. Without financing, Wave's "bid" was simply not actionable.

Wave withdrew from the Auction due to its inability to address these deficiencies.  In fact, Wave barely made its way out of the starting block:  Wave informed the Debtors that it would be unable to confirm viable financing on September 15, 2022—11 days before the Auction ended, and thus Wave was not involved in most of the discussions and negotiations that took place during that period.  Wave never confirmed its ability to close a deal even after it withdrew from the Auction.

---

[1]    https://cointelegraph.com/news/voyager-s-auction-did-not-serve-depositors-best-interests-alleges-wave-financial-rep

Like all other parties invited to the Auction, Wave executed a confidentiality agreement (the "<u>NDA</u>"). The NDA provides that, among other things, Wave is prohibited from discussing the auction process or disclosing any participants in the auction (including itself). Wave's statements violate its NDA, but more importantly, are completely meritless and disingenuous.

The assertions that Wave took a "white knight approach" in the process and "better offers were available but passed over" are simply wrong. The Debtors' advisors engaged with Wave over its bid and its significant deficiencies, including its inability to deliver any financing necessary to implement Wave's proposed transaction. Wave needed to include a strategic partner in its bid, and together with its partner, submitted a joint bid. That bid required backstop commitments. Wave had none. It thus withdrew and requested that its bid deposit be returned, while its strategic partner became a credible participant in the robust Auction.

Any suggestion that better, actionable bids were available to Voyager during the Auction is completely irresponsible. If better bids were available, Voyager would have accepted them. Wave's false statements appear to be a publicity stunt in an attempt to regain credibility lost in the marketplace as a result of its weak performance at the Auction.

By making misleading or outright false statements in a public interview, Wave flagrantly violated its obligations to the Debtors and the Bankruptcy Court. Voyager reserves all rights, including withholding its bid deposit, against Wave for its clear and intentional subversion of the process and the damages that may be suffered by customers and other creditors as a result.

At the end of the day, all creditors will have the opportunity to vote on Voyager's plan of reorganization and the proposed sale to FTX US. Parties that object have every right to voice their opinion, and in fact Voyager has a "fiduciary out" that would require it to accept a higher or better proposal. But no such proposal was made at the Auction. Wave certainly never made anything even approaching a higher and better proposal. Voyager will remain steadfast in its restructuring process and is committed to securing the best outcome possible for customers.

* * * * *