**Hearing Date and Time: October 18, 2022, at 2:00 p.m. (prevailing Eastern Time)**
**Objection Deadline: October 11, 2022, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | Case No. 22-10943 (MEW) |
| Debtors. | (Jointly Administered) |

**NOTICE OF HEARING OF DEBTORS' APPLICATION**
**FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO**
**EMPLOY AND RETAIN DELOITTE & TOUCHE LLP AS ACCOUNTING**
**ADVISORS EFFECTIVE AS OF AUGUST 24, 2022**

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Application for Entry of an Order Authorizing the Debtors to Employ and Retain Deloitte & Touche LLP as Accounting Advisors Effective as of August 24, 2022* (the "Application") will be held on **October 18, 2022, at 2:00 p.m.**, prevailing Eastern Time (the "Hearing"). In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted telephonically. Any parties wishing to participate must do so by making arrangements through CourtSolutions by visiting https://www.court-solutions.com.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Application shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served so as to be actually received by **October 11, 2022, at 4:00 p.m., prevailing Eastern Time**, by (i) the entities on the Master Service List available on the case website of the above-captioned debtors and debtors in possession (the "Debtors") at https://cases.stretto.com/Voyager and (ii) any person or entity with a particularized interest in the subject matter of the Application.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing. Failure to file a timely objection may result in entry of a final order granting the Application as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Application and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/Voyager. You may also obtain copies of the Application and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated:  September 29, 2022          /s/ Joshua A. Sussberg
New York, New York                 **KIRKLAND & ELLIS LLP**
                                   **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                   Joshua A. Sussberg, P.C.
                                   Christopher Marcus, P.C.
                                   Christine A. Okike, P.C.
                                   Allyson B. Smith (admitted *pro hac vice*)
                                   601 Lexington Avenue
                                   New York, New York 10022
                                   Telephone:    (212) 446-4800
                                   Facsimile:    (212) 446-4900
                                   Email:        jsussberg@kirkland.com
                                                 cmarcus@kirkland.com
                                                 christine.okike@kirkland.com
                                                 allyson.smith@kirkland.com

                                   *Counsel to the Debtors and Debtors in Possession*

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) Case No. 22-10943 (MEW) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## DEBTORS' APPLICATION FOR
## ENTRY OF AN ORDER AUTHORIZING THE DEBTORS
## TO EMPLOY AND RETAIN DELOITTE & TOUCHE LLP
## AS ACCOUNTING ADVISORS EFFECTIVE AS OF AUGUST 24, 2022

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>")

respectfully state the following in support of this application (this "<u>Application</u>"):

### Relief Requested

1.     The Debtors seek entry of an order, substantially in the form attached hereto as

**<u>Exhibit A</u>** (the "<u>Order</u>"), authorizing the Debtors to employ and retain Deloitte & Touche LLP

("<u>Deloitte & Touche</u>") as their accounting advisors effective as of August 24, 2022, pursuant to

the terms and conditions set forth in that certain engagement letter, dated August 24, 2022, between

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

the Debtors and Deloitte & Touche, to provide accounting advisory services (the "Engagement Letter"), attached as Exhibit 1 to the Order.

2.      In support of this Application, the Debtors submit the declaration of Todd Bauer, a partner at Deloitte & Touche (the "Bauer Declaration"), which is attached hereto as **Exhibit B** and incorporated herein by reference.

### Jurisdiction and Venue

3.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012.  The Debtors confirm their consent to the Court entering a final order in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The bases for the relief requested herein are sections 327(a), 328(a), and 1107(b) of title 11 of the United States Code (the "Bankruptcy Code"), rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

### Background

6.      On July 5, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Stephen Ehrlich, Chief*

*Executive Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 15] (the "First Day Declaration"), incorporated by reference herein.[2]

7.      The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 18]. On July 19, 2022, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 102] (the "Committee"). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

## Deloitte & Touche's Qualifications

8.      Deloitte & Touche is a professional services firm with offices across the United States. Deloitte & Touche has significant experience providing accounting advisory services and has performed such services in large and complex chapter 11 cases on behalf of debtors throughout the United States. Deloitte & Touche's accounting advisory services fulfill an important need and are not provided by any of the Debtors' other professionals.

9.      In addition, since approximately July 2020, Deloitte & Touche has provided various accounting-related professional services to the Debtors. In providing such prepetition professional services to the Debtors, Deloitte & Touche has become familiar with the Debtors and their financial affairs, debt structure, business operations, and related matters. Having worked with the Debtors' management, Deloitte & Touche has developed relevant experience and knowledge regarding the Debtors that will assist it in providing effective and efficient services during these chapter 11 cases. Accordingly, Deloitte & Touche is both well-qualified and able to provide the accounting advisory

---

[2]      Capitalized terms not defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

services for the Debtors during these chapter 11 cases in a cost-effective, efficient, and timely manner.

10.    The Debtors would be prejudiced if Deloitte & Touche's engagement by the Debtors pursuant to this Application was not approved. Finding a replacement for Deloitte & Touche and bringing such professional up to speed would be expensive and time consuming for the Debtors and would cause both delay and disruption to their reorganization efforts. It is thus critical that Deloitte & Touche's retention sought herein be approved.

## Services To Be Rendered

11.    Subject to this Court's approval, Deloitte & Touche will provide accounting advisory services for the Debtors in accordance with the terms and conditions set forth in the Engagement Letter, as requested by the Debtors and agreed to by Deloitte & Touche, as follows (the "Services"):

    a.    Reviewing the Debtors' management's revised internal control design and implementation and providing recommendations on gaps and deficiencies, excluding controls related to lending of digital assets.

    b.    Providing advice and recommendations for the Debtors' management's consideration on the regulatory requirements associated with listing on the Toronto Stock Exchange or NASDAQ, and internal control requirements associated with various listing options.

    c.    Providing advice and recommendations for the Debtors' management's consideration on blockchain audit readiness topics.

    d.    Gaining an understanding of the Debtors' accounting treatment of digital asset transactions under U.S. GAAP, SEC rules and regulations, and IFRS.

    e.    Researching and communicating relevant accounting literature and guidance under U.S. GAAP, SEC rules and regulations, and IFRS related to digital asset transactions.

    f.    Reading and providing advice and recommendations for the Debtors' management's consideration on the relevant policies and procedures on digital asset transactions.

12.     The Services that Deloitte & Touche will provide to the Debtors are necessary to the Debtors in the administration of their bankruptcy cases.  Subject to this Court's approval of this Application, Deloitte & Touche is willing to serve as the Debtors' accounting advisors to perform these important services.

### Professional Compensation

13.     Deloitte & Touche's retention by the Debtors is conditioned upon its ability to be retained in accordance with its terms and conditions of employment, including the proposed compensation arrangements set forth in the Engagement Letter.

14.     Subject to Court approval, and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and such other procedures as may be established by order of this Court, the Debtors will compensate Deloitte & Touche in accordance with the terms and conditions of the Engagement Letter, which, in relevant part, provides for the following compensation structure.

15.     Pursuant to the terms of the Engagement Letter, Deloitte & Touche will bill the Debtors fees that are based on the amount of professional time required and the experience level of the professionals involved.

16.     Deloitte & Touche will charge the Debtors the following hourly rates for accounting advisory services rendered pursuant to the Engagement Letter:

| Professional Level | Hourly Rate |
|---|---|
| Partner / Principal / Managing Director | $850 |
| Senior Manager | $750 |
| Manager | $650 |
| Senior | $550 |
| Consultant | $450 |
| Offshore Resources - Blended Rate | $350 |

17.     Hourly rates are revised periodically in the ordinary course of Deloitte & Touche's business.  Deloitte & Touche shall advise the Debtors of any new rates should it institute a rate change during these chapter 11 cases.  Such changes will be noted on the invoices for the first time period in which a revised rate becomes effective.

18.     In addition to the fees set forth above, actual, reasonable, and necessary expenses, including reasonable travel, meals, lodging, mileage expenses, technology- and administrative-related charges, and other expenses incurred in providing Deloitte & Touche's services, will be included in the total amount billed.

19.     Prior to the Petition Date, Deloitte & Touche provided professional services to the Debtors.  In the ninety (90) days prior to the Petition Date, the Debtors paid Deloitte & Touche approximately $25,665 for services performed and/or to be performed.  As of the Petition Date, no amount was outstanding with respect to the invoices issued by Deloitte & Touche prior to such date.

20.     As described in the Bauer Declaration, some services incidental to the tasks to be performed by Deloitte & Touche in these chapter 11 cases may be performed by personnel now employed by or associated with affiliates of Deloitte & Touche, or their respective subsidiaries, including subsidiaries located outside of the United States.

21.     Deloitte & Touche has received no promises regarding compensation in these chapter 11 cases other than in accordance with the Bankruptcy Code and as set forth in the Bauer Declaration.  Deloitte & Touche has no agreement with any nonaffiliated or unrelated entity to share any compensation earned in these chapter 11 cases.

### Indemnification

22.     As part of the overall compensation payable to Deloitte & Touche under the terms of the Engagement Letter, the Debtors have agreed to the certain indemnification obligations as set forth in the general business terms attached to the Engagement Letter (the "Indemnification Provisions"), subject to modification by the Order.

23.     The Engagement Letter was negotiated by the Debtors and Deloitte & Touche at arms' length and in good faith. The Debtors believe that the Indemnification Provisions are appropriate and reasonable for the types of engagements covered by the Engagement Letter, both out-of-court and in chapter 11 cases.

### Applications for Compensation

24.     Deloitte & Touche intends to file interim and final fee applications for the allowance of compensation for the services rendered and reimbursement of expenses incurred consistent and in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of this Court, including the Order granting this Application (to the extent compliance is not waived), and/or any applicable guidelines issued by the U.S. Trustee (collectively, the "Fee Guidelines"), consistent with the proposed compensation set forth in this Application and the Engagement Letter. Deloitte & Touche has agreed to accept as compensation such sums as may be allowed by this Court and understands that interim and final fee awards are subject to approval by this Court.

25.     The Debtors request that Deloitte & Touche be permitted to submit monthly invoices for services rendered and expenses incurred under the Engagement Letter. Such invoices will contain reasonable detail in support of any fees (in one-tenth of an hour increments) consistent with any rules, guidelines, and/or administrative orders promulgated by the Court that apply to these chapter 11 cases. The Debtors request authority to pay such invoices, after appropriate

review, in a manner consistent with the payment of other retained professionals in these chapter 11 cases and consistent with any administrative orders, if any, that would apply to interim payments. All payments rendered pursuant to Deloitte & Touche's retention by the Debtors must be approved by an order of this Court and based upon the filing by Deloitte & Touche of appropriate interim and final applications for allowance of compensation and reimbursement of expenses.

### Efforts to Avoid Duplication of Services

26.     The Debtors believe that the services provided by Deloitte & Touche will not unnecessarily duplicate or overlap with the services that other professionals will be providing to the Debtors in these chapter 11 cases. The Debtors will coordinate with Deloitte & Touche and the Debtors' other professionals to minimize unnecessary duplication of efforts among the Debtors' professionals.

### Deloitte & Touche's Disinterestedness

27.     As set forth in the Bauer Declaration, to the best of the Debtors' knowledge, Deloitte & Touche is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

28.     Further, to the best of the Debtors' knowledge, except as set forth in the Bauer Declaration: (a) neither Deloitte & Touche, nor any partner, principal, or managing director of Deloitte & Touche (collectively, the "Engagement Professionals") who are anticipated to provide the services for which Deloitte & Touche is to be retained holds any interest adverse to the Debtors; (b) Deloitte & Touche and the Engagement Professionals have no relationship to the Debtors, their significant creditors, certain other significant parties in interest, or to the attorneys that are known to be assisting the Debtors in these chapter 11 cases, except as stated herein or in any attachment hereto; and (c) there is no connection between the personnel of Deloitte & Touche or

its affiliates who are anticipated to provide services to the Debtors and the United States Bankruptcy Judge presiding in these chapter 11 cases, the U.S. Trustee for Region 2, the Assistant U.S. Trustee for Region 2, or the attorneys therefor assigned to these chapter 11 cases.

29.     As set forth in the Bauer Declaration, if any new material facts of relationships are discovered or arise, Deloitte & Touche will promptly file a supplemental disclosure with this Court.

## Basis for Relief

30.     The Debtors submit that the retention of Deloitte & Touche under the terms described herein is appropriate under sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code. Section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).  Section 327(a) of the Bankruptcy Code, in turn, authorizes a debtor in possession to employ professionals that "do not hold or represent an interest adverse to the estate, and that are disinterested persons[.]" 11 U.S.C. § 327(a).  Section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

31.     Section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers and financial advisors, on more flexible terms that reflect the nature of their services and market conditions.  As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Secs. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d at 862 (footnote omitted).

32.     For the reasons set forth in the Bauer Declaration, Deloitte & Touche does not "hold or represent an interest adverse to the estate." Moreover, Deloitte & Touche is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code. As demonstrated in the Bauer Declaration, Deloitte & Touche satisfies this standard.

33.     Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a). Additionally, Local Rule 2014-1 requires an entity seeking approval of employment under section 327(a) of the Bankruptcy Code to "state specific facts showing the reasonableness of the terms and conditions of the employment, including the terms of any retainer, hourly fee or contingent fee arrangement." All of those requirements have been satisfied by this Application, the Bauer Declaration, and the Order.

34.     Furthermore, pursuant to section 1107(b) of the Bankruptcy Code, Deloitte's prepetition relationship with the Debtors does not preclude Deloitte & Touche's retention as the Debtors' postpetition accounting advisors.

35.     The Debtors believe that Deloitte & Touche is well qualified to serve as the Debtors' accounting advisors in these chapter 11 cases with respect to the matters identified in the Engagement Letter and summarized herein.  More specifically, Deloitte & Touche has provided, and will continue to provide, valuable services to the Debtors.  *See, e.g.*, *In re Ark. Co.*, 798 F.2d 645, 648 (3d Cir. 1986) (collecting cases) ("[T]he bankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power.").  To the best of the Debtors' knowledge, approval of this Application will not prejudice any parties-in-interest, because, among other things, the services provided by Deloitte & Touche will enable the Debtors to comply with their accounting and financial reporting requirements, which is certainly in the best interest of the Debtors' estates and their creditor constituencies.

### Relief as of August 24, 2022 is Appropriate

36.     The Debtors believe that the retention of Deloitte & Touche effective as of August 24, 2022, is warranted under the circumstances of these chapter 11 cases.  More specifically, Deloitte & Touche has provided, and will continue to provide, valuable services to the Debtors.  To the best of the Debtors' knowledge, approval of such relief will not prejudice any parties in interest, because, among other things, the services provided by Deloitte & Touche will enable the Debtors to comply with their reporting requirements, which is in the best interest of the Debtors' estates and their creditor constituencies.

### Notice

37.     The Debtors will provide notice of this Application to the following parties and/or their respective counsel, as applicable:  (a) the U.S. Trustee; (b) the Committee; (c) the lender under the Debtors' prepetition loan facility; (d) the United States Attorney's Office for the Southern District of New York; (e) the Internal Revenue Service; (f) the Toronto Stock Exchange; (g) the attorneys general in the states where the Debtors conduct their business operations; and

(h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

38.    No prior request for the relief sought in this Application has been made to this or any other court.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the

relief requested herein and such other relief as the Court deems appropriate.


Dated:  September 29, 2022          /s/ Joshua A. Sussberg
New York, New York                 **KIRKLAND & ELLIS LLP**
                                   **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                   Joshua A. Sussberg, P.C.
                                   Christopher Marcus, P.C.
                                   Christine A. Okike, P.C.
                                   Allyson B. Smith (admitted *pro hac vice*)
                                   601 Lexington Avenue
                                   New York, New York 10022
                                   Telephone:    (212) 446-4800
                                   Facsimile:    (212) 446-4900
                                   Email:        jsussberg@kirkland.com
                                                 cmarcus@kirkland.com
                                                 christine.okike@kirkland.com
                                                 allyson.smith@kirkland.com

                                   *Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————————————————— )
                                                  )
In re:                                            )        Chapter 11
                                                  )
VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1]      )        Case No. 22-10943 (MEW)
                                                  )
                              Debtors.            )        (Jointly Administered)
————————————————————————————— )

**ORDER AUTHORIZING THE DEBTORS TO**
**EMPLOY AND RETAIN DELOITTE & TOUCHE LLP AS**
**ACCOUNTING ADVISORS EFFECTIVE AS OF AUGUST 24, 2022**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") authorizing the Debtors to employ and retain Deloitte & Touche LLP ("Deloitte & Touche") as accounting advisors, effective as of July 5, 2022, pursuant to the terms and conditions set forth in the Engagement Letter, attached hereto as **Exhibit 1**, as more fully set forth in the Application; and upon the *Declaration of Todd Bauer in Support of the Debtors' Application for Entry of an Order Authorizing the Debtors to Employ and Retain Deloitte & Touche LLP as Accounting Advisors Effective as of August 24, 2022* (the "Bauer Declaration"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that

the relief requested in the Application is in the best interests of the Debtors' estates, their creditors,

and other parties in interest; and this Court having found that the Debtors' notice of the Application

and opportunity for a hearing on the Application were appropriate under the circumstances and no

other notice need be provided; and this Court having reviewed the Application and having heard

the statements in support of the relief requested therein at a hearing before this Court

(the "Hearing"); and this Court having determined that the legal and factual bases set forth in the

Application and at the Hearing establish just cause for the relief granted herein; and it appearing

that Deloitte & Touche does not hold or represent an adverse interest to the Debtors or their estates

and that it is disinterested under section 101(14) of the Bankruptcy Code; and upon all of the

proceedings had before this Court; and after due deliberation and sufficient cause appearing

therefor, it is HEREBY ORDERED THAT:

1.      The Application is granted as set forth herein.

2.      In accordance with sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code,
Bankruptcy Rule 2014, and Local Rules 2014-1 and 2016-1, the Debtors are authorized to employ
and retain Deloitte & Touche as accounting advisors to the Debtors on the terms and conditions
set forth in the Application and the Engagement Letter, effective as of August 24, 2022.

3.      The terms and conditions of the Engagement Letter are reasonable and, as modified
by this Order, are approved.

4.      Deloitte & Touche shall be compensated in accordance with sections 330 and 331
of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, this Order, and any other
applicable orders of this Court.

5.      Deloitte & Touche shall include in its fee applications, among other things, contemporaneous time records setting forth a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors in one-tenth hour increments.

6.      In the event that the rates of compensation for the services increase from the rates disclosed for services in the Application or the Engagement Letter, Deloitte & Touche will file a supplemental declaration with this Court describing such increased rates and serve such supplemental declaration upon the Debtors and the United States Trustee at least ten (10) business days prior to the effective date of such increases, which supplemental declaration shall explain the basis for the requested rate increases in accordance with section 330(a)(3)(F) of the Bankruptcy Code and indicate whether the Debtors have received notice of and approved the proposed rate increase.

7.      Notwithstanding anything in the Application or the Engagement Letter to the contrary, prior to the effective date of a chapter 11 plan, this Court retains exclusive jurisdiction over all matters arising out of and/or pertaining to Deloitte & Touche's engagement until such jurisdiction is relinquished.

8.      The indemnification provisions set forth in the Engagement Letter are hereby approved, subject to the following modifications with respect to the services performed thereunder from August 24, 2022, through the effective date of a chapter 11 plan:

    a.      All requests for payment of indemnity, contribution, or otherwise pursuant to the indemnification provisions shall be made by means of a fee application (interim or final) and shall be subject to the approval and review by this Court to ensure that such payment conforms to the terms of the indemnification provisions and is reasonable based on the circumstances of the litigation or settlement in respect of which indemnity is sought; *provided*, *however*, that in no event shall an indemnified party be indemnified or receive contribution to the extent that any claim arose or

3

expense has resulted from any such losses finally judicially determined by a court of competent jurisdiction to have primarily resulted from the gross negligence, willful misconduct, or bad faith of any indemnified parties;

b.    In no event shall any indemnified party be indemnified or receive contribution or other payment of an indemnity claim under the indemnification provisions if the Debtors or a representative of the Debtors' estates asserts a claim for, and a court determines by final order that, such claim primarily arose out of the gross negligence, willful misconduct, or intentional fraud of such indemnified party; and

c.    In the event an indemnified party seeks reimbursement of attorneys' fees from the Debtors in connection with the payment of an indemnity claim pursuant to the indemnification provisions, the invoices and supporting time records from such attorneys shall be attached to Deloitte & Touche's own interim and/or final fee applications, and such invoices and time records shall be subject to the applicable Fee Guidelines and the approval of this Court under the standards of section 330 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

9.    Notwithstanding anything in the Engagement Letter to the contrary, the following provisions are hereby modified with respect to services performed thereunder for the Debtors from August 24, 2022, through the effective date of a chapter 11 plan, as follows:

a.    Section 10 of the General Business Terms appended to the Engagement Letter shall be deemed deleted and replaced with the following:

Nothing contained in the Agreement shall alter in any way the duties imposed by law on Deloitte & Touche in respect of the Services provided hereunder. It is understood and agreed that, with respect to the relationship between Deloitte & Touche, on the one hand, and Client, on the other hand, each party hereto is an independent contractor and neither party is nor shall be considered to be, nor shall purport to act as, the other's agent, distributor, partner, joint venture, or representative.

b.    Section 6(a) of the General Business Terms appended to the Engagement Letter shall be deemed deleted.

10.    To the extent the Debtors and Deloitte & Touche enter into any additional engagement letter(s) for additional services, the Debtors will file such engagement letter(s) with the Court and serve such engagement letter(s) upon the applicable notice parties. Absent any

4

objection filed within 14 days after the filing and service of any additional engagement letter(s), Deloitte & Touche shall be deemed authorized and approved to provide and be compensated for such additional services pursuant to this Order and the terms of such additional engagement letter(s).  To the extent any such parties object to such additional engagement letter(s), the Debtors will promptly schedule a hearing before the Court within 10 days of receipt of any such objection or as soon thereafter as practicable.  All additional services will be subject to the provisions of this Order.

11.     Notwithstanding anything in the Application or the Engagement Letter to the contrary, to the extent that Deloitte & Touche uses the services of independent contractors, which are not affiliates or subsidiaries of Deloitte & Touche (collectively, the "Contractors") in these chapter 11 cases, Deloitte & Touche shall (i) pass-through the cost of such Contractors to the Debtors at the same rate that Deloitte & Touche pays the Contractors, (ii) seek reimbursement for actual costs only, (iii) ensure that the Contractors are subject to the same conflict checks as required for Deloitte & Touche, and (iv) file with the Court such disclosures required by Bankruptcy Rule 2014.

12.     The Debtors and Deloitte & Touche are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

13.     The Debtors will coordinate with Deloitte & Touche and the Debtors' other professionals to minimize unnecessary duplication of efforts among the Debtors' professionals.

14.     To the extent that there may be any inconsistency between the terms of the Application, the Bauer Declaration, the Engagement Letter, and this Order, the terms of this Order shall govern.

15.     Notice of the Application as provided herein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

16.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

## **Exhibit 1**

**Engagement Letter**

# Deloitte.

**Deloitte & Touche LLP**
555 West 5th Street
Suite 2700
Los Angeles, CA 90013-1010
USA

Tel: +1 213 688 0800
Fax: +1 213 688 0100
www.deloitte.com

August 24, 2022

Ashwin Prithipaul
Chief Financial Officer
Voyager Digital Holdings, Inc.
33 Irving Plaza Suite 3060
New York, NY 10003

Dear Mr. Prithipaul:

This engagement letter is to confirm the engagement of Deloitte & Touche LLP ("D&T" or "we" or "our") to provide Voyager Digital Holdings, Inc. and its subsidiaries (collectively, the "Client" or "you" or "your") accounting advisory services in connection with recommendations on blockchain audit readiness described below (the "Services").

## SCOPE OF SERVICES

**The Services to be provided by D&T are expected to consist of:**

- Review Client management's revised internal control design and implementation and provide recommendations on gaps and deficiencies, excluding controls related to lending of digital assets.

- Providing advice and recommendations for Client management's consideration on the regulatory requirements associated with listing on the Toronto Stock Exchange ("TSX") or NASDAQ, and internal control requirements associated with various listing options.

- Providing advice and recommendations for Client management's consideration on blockchain audit readiness topics.

- Gaining an understanding of the Client's accounting treatment of digital asset transactions under U.S. GAAP, SEC rules and regulations, and IFRS.

- Researching and communicating relevant accounting literature and guidance under U.S. GAAP, SEC rules and regulations, and IFRS related to digital asset transactions

- Reading and providing advice and recommendations for Client management's consideration on the relevant policies and procedures on digital asset transactions.

All services mentioned above exclude advice and recommendations on digital asset lending related considerations.

The Services will be performed in accordance with the *Statement on Standards for Consulting Services* issued by the American Institute of Certified Public Accountants (AICPA).

## DELIVERABLES

There will be no D&T report or deliverables issued under this engagement. During this engagement, we may provide verbal and written comments and observations as well as potential recommended modifications to internal Client documents. Client management will be solely responsible to review and make all decisions with respect to potential modifications and ultimate approval and acceptance of any comments or observations made by D&T.

Documentation and analyses prepared in connection with the Services shall merely represent the results of the engagement team's research and understanding of similar transactions in the industry and shall not represent an opinion of D&T on any accounting position.

## ENGAGEMENT TEAM

Our engagement team will be composed of practitioners with experience in accounting for transactions under U.S. GAAP, SEC rules and regulations, and IFRS and has been selected to align the team's skills with the technical and practical necessities of the engagement.

| Name | Engagement Role | Deloitte U.S. Firm |
|------|-----------------|--------------------|
| Todd Bauer | Lead Client Service Partner | Deloitte & Touche LLP |
| Mike Marzelli | Industry Advisory Partner | Deloitte & Touche LLP |
| Daniel Israel | Senior Manager | Deloitte & Touche LLP |
| Vivien Tse | Senior Manager | Deloitte & Touche LLP |

The engagement team will, as they consider necessary, call on other individuals with specialized knowledge and experience to assist in the performance of our Services including professionals from certain affiliates of Deloitte & Touche, including those located outside of the United States.

## FEES AND TIMING

The Services are expected to be performed in Los Angeles, CA. This engagement letter is for the period beginning August 24, 2022 through June 30, 2023.

Our hourly rates and professional fees reflect the complex, technical nature of the work to be performed and the need for experienced resources to perform this work. The professional fees for the engagement will be based on actual time incurred by each individual on the project and the respective rate for that level in the following table:

| Resource Level | Hourly Rate |
|---|---|
| Partner, Principal, or Managing Director | $850 |
| Senior Manager | $750 |
| Manager | $650 |
| Senior | $550 |
| Consultant | $450 |
| Offshore Resources – Blended Rate | $350 |

Should specialists or professionals in other countries be required, such applicable rates will also be discussed and agreed upon in advance.

We understand that you will reimburse us for all reasonable expenses incurred in performing our Services on this engagement (including, but not limited to, our reasonable travel, meals, lodging, and mileage expenses) as well as technology- and administrative-related charges.

Fees for this engagement will be billed periodically as the work progresses for fees accrued and expenses incurred by us since our last invoice in performing our Services.

## ACKNOWLEDGMENTS AND AGREEMENTS

**Client management acknowledges and agrees to the following:**

- Client management is responsible for the coordination of obtaining the preapproval of the Board of Directors, in accordance with the Board of Directors' preapproval process, for the Services to be provided by D&T to the Client.

- We will not perform in a capacity equivalent to that of management or an employee of the Client, including assuming any financial reporting oversight role; authorizing, executing, or consummating any transactions, or otherwise exercising authority on behalf of the Client or having the authority to do so; supervising employees of the Client in the performance of their activities; reporting to the board of directors on behalf of management of the Client; or providing any legal advice with respect to, or conducting a legal review of, any documents, records, or policies of the Client; preparing source documents or originating data, in electronic or other form, evidencing the occurrence of any transactions; or recording of any amounts in books and records of the Client.

- The Client agrees that the Services may include advice and recommendations, but agrees that the Client will be solely responsible for the financial statements and all decisions regarding the accounting treatment of any item or transaction (including decisions regarding its compliance with U.S. GAAP, SEC rules and regulations, and IFRS). Furthermore, the Client shall be solely responsible for, among other things (1) designating a member of management with appropriate technical accounting and reporting knowledge to oversee the Services and to sustain meaningful and substantial involvement in all phases of this engagement; and (2) any forward-looking information (including any models, projections, forecasts, budgets, synergies, feasibility analyses, assumptions, estimates, methodologies, or bases for support). For the avoidance of doubt, we will be responsible for the performance of the Services.

- The Services will not constitute an engagement to provide audit, compilation, review, or attest services as described in the pronouncements on professional standards issued by the AICPA, the U.S. Public Company Accounting Oversight Board, or other regulatory body and, therefore, we will not express an opinion or any other form of assurance as a result of performing the Services.

DocuSign Envelope ID: BF8A5AB1-68D7-4AAE-AF9F-FE918BC2E575

- The Client will not seek our opinion, and we will not provide any such opinion, on the application of accounting principles in connection with this engagement. Furthermore, Client management agrees that it will not represent to any third parties that it has obtained such opinion from us under this engagement. If such opinion is requested under the requirements of AU 625, Reports on the Application of Accounting Principles, any such services requested of us would be subject to (1) a determination by us as to whether such services can be rendered, (2) additional client acceptance procedures, and (3) a separate, signed engagement letter with terms and conditions that are acceptable to us and the Client. We are under no obligation to perform such an engagement, if requested.

- We will not be responsible for the accuracy or completeness of any data made available to us through any third-party tool, database, or software application. The Company further acknowledges and agrees that D&T will have no responsibility for evaluating the functionality of such third-party tool, database, or software application, nor for any results obtained by D&T through the use of such third-party tool, database, or software application.

- The assignment of any ranking or rating and resulting prioritization of recommendations is subjective; others, utilizing the same information, may arrive at different results. Client management is responsible for the final determination of the appropriate scale to be utilized for rankings, the definitions for each ranking on the scale, and the assignment of prioritization to each recommended action item. Deliverables that include any prioritization, categorization, or rating ranking will not be considered an opinion expressed by D&T.

- Because of the inherent limitations of internal control over financial reporting, including the possibility of collusion or improper management override of controls, material misstatements due to error or fraud may occur and not be detected.

- The Services provided under this engagement letter should not be used as the sole basis for management's assertion in connection with the Sarbanes-Oxley Act. D&T will make no representations or warranties nor provide any assurances that (1) the Client's disclosure controls and procedures and the internal control and procedures for financial reporting are compliant with the certification requirement and internal control reporting requirement of the Sarbanes-Oxley Act, or (2) the Client's plans are sufficient to address and correct any shortcomings that would prohibit the Client from making the required certification or from reporting under the Sarbanes-Oxley Act.

- Management is responsible for informing the Client's auditors and the Audit Committee of the Client's board of directors of all deficiencies in the design or operation of internal control over financial reporting, including separately disclosing all such deficiencies that management believes to be significant deficiencies or material weaknesses in internal control over financial reporting. In addition, D&T's personnel performing the Services may communicate directly to the Client's independent accountants such findings and information that have been previously communicated to the management of the Client.

- The Client agrees that any deliverables provided to the Client hereunder by D&T may be disclosed to the Board of Directors and the Audit Committee of the Client only for their informational purposes and solely in their capacity as a member of such Board or Committee.

## OTHER MATTERS

The Client agrees that it will promptly seek the Bankruptcy Court's approval of this engagement.  The application, proposed order and other supporting documents (collectively, the "Application") submitted to the Bankruptcy Court seeking its approval of this engagement must be satisfactory to D&T in all respects.  In addition to D&T's other rights or remedies hereunder, D&T may, in its sole discretion and without any liability arising therefrom, terminate this engagement in the event that (a) a third party objects or threatens to object, or D&T reasonably believes that a third party may object, in the form of an objection or otherwise, to D&T's retention by the Client on the terms and conditions set forth in this letter, (b) a final order authorizing the employment of D&T is not issued by the Bankruptcy Court on or before sixty (60) days from the date of this letter on the terms and conditions set forth herein or on such other terms and conditions as are satisfactory to D&T, or (c) the Application is denied by the Bankruptcy Court.  In any such event, the Client hereby agrees to withdraw or amend, promptly upon D&T's request, any Application filed or to be filed with the Bankruptcy Court to retain D&T's services.

For purposes of this letter, "Bankruptcy Court" shall mean the bankruptcy court with which the Client has commenced its chapter 11 case.

* * * * * *

During this engagement, the Client may request that D&T perform additional services that are not encompassed by this engagement letter. D&T may perform such additional services upon receipt of a separate signed engagement letter with terms and conditions that are acceptable to D&T and the Client.

This engagement letter, incorporating by reference the attached General Business Terms in Exhibit A, constitutes the entire agreement between the Client and D&T with respect to this engagement; supersedes all other oral and written representations, understandings, or agreements relating to this engagement; and may not be amended except by the mutual written agreement of the Client and D&T.

Please indicate your acceptance of this agreement by signing in the space provided below and returning this engagement letter to us. A duplicate of this engagement letter is provided for your records.

Yours truly,

*Deloitte & Touche LLP*

Accepted and Agreed to by Voyager Digital Holdings, Inc.  on behalf of itself and its subsidiaries:

By: _____

Title: CFO
_____

Date: 26-Aug-2022 | 7:38:15 AM PDT
_____

DocuSign Envelope ID: BF8A5AB1-68D7-4AAE-AF9F-FE918BC2F575

## EXHIBIT A — GENERAL BUSINESS TERMS

1. **Services.** The services provided by D&T (the "Services") under the engagement letter to which these terms are attached (the "Engagement Letter") may include advice and recommendations, but D&T will not make any decisions on behalf of Client in connection with the implementation of such advice and recommendations. For purposes of these terms and the Engagement Letter, "Client" shall mean the entity as defined in the Engagement Letter. Voyager Digital Holdings, Inc. represents and warrants that it has the power and authority to execute this agreement on behalf of, and to bind, itself and its subsidiaries.

2. **Payment of Invoices.** Client will compensate D&T under the terms of the Engagement Letter for the Services performed and expenses incurred, through the term or effective date of termination of this engagement. Subject to any applicable Bankruptcy Court orders, rules or procedures, D&T's invoices are due upon receipt. Subject to any applicable Bankruptcy Court orders, rules or procedures, if payment is not received within thirty (30) days of receipt of an invoice (a) such invoice shall accrue a late charge equal to the lesser of (i) 1½% per month or (ii) the highest rate allowable by law, in each case compounded monthly to the extent allowable by law, and (b) D&T may also suspend or terminate the Services. Client shall be responsible for any taxes imposed on the Services or on this engagement, other than taxes imposed by employment withholding for D&T's personnel or on D&T's income or property.

3. **Term.** Unless terminated sooner as set forth below, this engagement shall terminate upon the completion of the Services. Either party may terminate this engagement, with or without cause, by giving thirty (30) days' prior written notice to the other party. In the event of a termination for cause, the breaching party shall have the right to cure the breach within the notice period. D&T may terminate this engagement upon written notice to Client if D&T determines that the performance of any part of the Services would be in conflict with law, or independence or professional rules.

4. **Deliverables.**

   **(a)** D&T has rights in, and may, in connection with the performance of the Services, use, create, modify, or acquire rights in, works of authorship, materials, information, and other intellectual property (collectively, the "D&T Technology").

   **(b)** Upon full payment to D&T hereunder, and subject to the terms and conditions contained herein, (i) the tangible items specified as deliverables or work product in the Engagement Letter (the "Deliverables") shall become the property of Client, and (ii) D&T hereby grants Client a royalty-free, fully paid-up, worldwide, nonexclusive license to use the D&T Technology contained in the Deliverables in connection with the use of such Deliverables. Except for the foregoing license grant, D&T or its licensors retain all rights in and to all D&T Technology.

   **(c)** To the extent any D&T Technology provided to Client hereunder constitutes inventory within the meaning of section 471 of the Internal Revenue Code, such D&T Technology is licensed to Client by D&T as agent for Deloitte & Touche Products Company LLC on the terms and conditions contained herein. The rights granted in this Section 4 do not apply to any D&T Technology that is subject to a separate license agreement between Client and any third party (including D&T's affiliates).

5. **Limitation on Warranties.** This is a services engagement. D&T warrants that it shall perform the Services in good faith and with due professional care. D&T DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

DocuSign Envelope ID: BF8A5AB1-68D7-4AAE-AF6F-FE918BC2E675

**6.  Limitation on Damages and Indemnification.**

**(a)** D&T, its subsidiaries and subcontractors, and their respective personnel shall not be liable to Client for any claims, liabilities, or expenses relating to this engagement ("Claims") for an aggregate amount in excess of the fees paid by Client to D&T pursuant to this engagement, except to the extent resulting from the recklessness, bad faith, or intentional misconduct of D&T or its subcontractors. In no event shall D&T, its subsidiaries or subcontractors, or their respective personnel be liable to Client for any loss of use, data, goodwill, revenues, or profits (whether or not deemed to constitute a direct Claim), or any consequential, special, indirect, incidental, punitive, or exemplary loss, damage, or expense relating to this engagement.

**(b)** Client shall indemnify and hold harmless D&T, its subsidiaries and subcontractors, and their respective personnel from all Claims, except to the extent resulting from the recklessness, bad faith, or intentional misconduct of D&T or its subcontractors.

**(c)** In circumstances where any limitation on damages or indemnification provision hereunder is unavailable, the aggregate liability of D&T, its subsidiaries and subcontractors, and their respective personnel for any Claim shall not exceed an amount that is proportional to the relative fault that the conduct of D&T and its subcontractors bears to all other conduct giving rise to such Claim.

**7.  Client Responsibilities.** Client shall cooperate with D&T in the performance of the Services, including providing D&T with reasonable facilities and timely access to data, information, and personnel of Client. With respect to the data and information provided by Client to D&T or its subcontractors for the performance of the Services, Client shall have all rights required to provide such data and information, and shall do so only in accordance with applicable law and with any procedures agreed upon in writing. Client shall be solely responsible for, among other things (a) the performance of its personnel and agents; (b) the accuracy and completeness of all data and information provided to D&T for purposes of the performance of the Services; (c) making all management decisions, performing all management functions, and assuming all management responsibilities; (d) designating a competent management member to oversee the Services; (e) evaluating the adequacy and results of the Services; (f) accepting responsibility for the results of the Services; and (g) establishing and maintaining internal controls, including monitoring ongoing activities. D&T's performance is dependent upon the timely and effective satisfaction of Client's responsibilities hereunder and timely decisions and approvals of Client in connection with the Services. D&T shall be entitled to rely on all decisions and approvals of Client.

**8.  Force Majeure.** Neither party shall be liable for any delays or nonperformance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order, or requirement of any governmental agency or authority.

**9.  Limitation on Actions.** No action, regardless of form, relating to this engagement, may be brought by either party more than one year after the cause of action has accrued, except that an action for nonpayment may be brought by a party not later than one year following the due date of the last payment owing to the party bringing such action.

**10. Independent Contractor.** Each party hereto is an independent contractor and neither party is, nor shall be considered to be, nor shall purport to act as, the other's agent, partner, fiduciary, joint venturer, or representative.

**11. Confidentiality and Internal Use.**

**(a)** All Services and Deliverables shall be solely for Client's benefit, and are not intended to be relied upon by any person or entity other than Client. Client shall not disclose the Services or Deliverables, or refer to the Services or Deliverables in any communication, to any person or entity except (i) as specifically set forth in the Engagement Letter, or (ii) to Client's contractors solely for the purpose of their providing services to Client relating to the subject matter of this engagement, provided that such contractors comply with the restrictions on disclosure set forth in this sentence. Client, however, may create its own materials based on the content of such Services and Deliverables and use and disclose such Client-created materials for external purposes, provided that, Client does not in any way, expressly or by implication, attribute such materials to D&T or its subcontractors.

**(b)** To the extent that, in connection with this engagement, either party (each, the "receiving party") comes into possession of any confidential information of the other (the "disclosing party"), it will not disclose such information to any third party without the disclosing party's consent, using at least the same degree of care as it employs in maintaining in confidence its own confidential information of a similar nature, but in no event less than a reasonable degree of care. The disclosing party hereby consents to the receiving party disclosing such information: (i) as expressly permitted in the Engagement Letter; (ii) to contractors providing administrative, infrastructure, and other support services to the receiving party and subcontractors providing services in connection with this engagement, in each case, whether located within or outside of the United States, provided that such contractors and subcontractors have agreed to be bound by confidentiality obligations similar to those in this Section 11(b); (iii) as may be required by law or regulation, or to respond to governmental inquiries, or in accordance with applicable professional standards or rules, or in connection with litigation or arbitration pertaining hereto; or (iv) to the extent such information (a) is or becomes publicly available other than as the result of a disclosure in breach hereof, (b) becomes available to the receiving party on a nonconfidential basis from a source that the receiving party believes is not prohibited from disclosing such information to the receiving party, (c) is already known by the receiving party without any obligation of confidentiality with respect thereto, or (d) is developed by the receiving party independently of any disclosures made to the receiving party hereunder. In addition, any such information may be used by Deloitte & Touche LLP or any related entity of D&T in the context of responding to its professional obligations as the independent accountants for Client. Nothing in this Section 11(b) shall alter Client's obligations under Section 11(a). D&T, however, may use and disclose any knowledge and ideas acquired in connection with the Services to the extent they are retained in the unaided memory of its personnel.

**(c)** No provision of these terms or the Engagement Letter is or is to be construed as a condition of confidentiality within the meaning of PCAOB Release 2005-014, Internal Revenue Code Sections 6011 and 6111 or the regulations thereunder, any related Internal Revenue Service guidance, or any other similar law, with respect to any Services, Deliverables, or other materials of any kind provided hereunder relating to tax treatment or tax structure (collectively referred to as "Subject Tax Planning Advice"). Notwithstanding anything herein to the contrary, no provision of these terms or the Engagement Letter shall place any limitation on Client's disclosure of any Subject Tax Planning Advice. The Services and Deliverables shall be solely for Client's benefit, and this engagement does not create privity between D&T and any person or party other than Client ("third party"). Neither the Services nor any Deliverables are intended for the express or implied benefit of any third party. Unless otherwise agreed to in writing by D&T, no third party is entitled to rely in any manner or for any purpose on the Services or Deliverables. In the event of any unauthorized reliance on any Subject Tax Planning Advice, Client agrees to indemnify and hold harmless D&T, its subcontractors, and their respective personnel from all third-party claims, liabilities, costs, and expenses.

DocuSign Envelope ID: BF8A5AB1-68D7-4AAE-AF9F-FE918BC2F575

**12. Survival and Interpretation.** All provisions that are intended by their nature to survive performance of the Services shall survive such performance, or the expiration or termination of this engagement. For purposes of these terms and the Engagement Letter, "D&T" shall mean Deloitte & Touche LLP. No affiliated or related entity of D&T, or such entity's personnel, shall have any liability hereunder to Client and Client will not bring any action against any such affiliated or related entity or such entity's personnel in connection with this engagement. Without limiting the foregoing, such affiliated and related entities are intended third-party beneficiaries of these terms, and may in their own right enforce such terms. Each of the provisions of these terms shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise, notwithstanding the failure of the essential purpose of any remedy. Any references herein to the term "including" shall be deemed to be followed by "without limitation."

**13. Assignment and Subcontracting.** Except as provided below, neither party may assign any of its rights or obligations (including interests or Claims) relating to this engagement or the Services, without the prior written consent of the other party. Client hereby consents to D&T subcontracting or assigning any portion of the Services to any affiliate or related entity, whether located within or outside of the United States. No such subcontracting shall relieve D&T of its obligations hereunder. Services performed hereunder by D&T's subcontractors shall be invoiced as professional fees on the same basis as Services performed by D&T's personnel unless otherwise agreed.

**14. Dispute Resolution.** Any controversy or claim between the parties arising out of or relating to these terms, the Engagement Letter, or this engagement (a "Dispute") shall be resolved by mediation or binding arbitration as set forth below.

**(a) Mediation.** All Disputes shall first be submitted to nonbinding confidential mediation by written notice to the parties, and shall be treated as compromise and settlement negotiations under the standards set forth in the Federal Rules of Evidence and all applicable state counterparts, together with any applicable statutes protecting the confidentiality of mediations or settlement discussions. If the parties cannot agree on a mediator, the International Institute for Conflict Prevention and Resolution ("CPR"), at the written request of a party, shall designate a mediator.

**(b) Arbitration Procedures.** If a Dispute has not been resolved within 90 days after the effective date of the written notice beginning the mediation process (or such longer period, if the parties so agree in writing), the mediation shall terminate and the Dispute shall be settled by binding arbitration to be held in New York, New York. The arbitration shall be conducted in accordance with the CPR Rules for Non-Administered Arbitration that are in effect at the time of the commencement of the arbitration, except to the extent modified by this Section 14 (the "Rules").

The arbitration shall be conducted before a panel of three arbitrators. Each of Client and D&T shall designate one arbitrator in accordance with the "screened" appointment procedure provided in the Rules and the two party-designated arbitrators shall jointly select the third in accordance with the Rules. No arbitrator may serve on the panel unless he or she has agreed in writing to enforce the terms of the Engagement Letter (and its appendices) and to abide by the terms of this Section 14. Except with respect to the interpretation and enforcement of these arbitration procedures (which shall be governed by the Federal Arbitration Act), the arbitrators shall apply the governing law set forth in Section 18 in connection with the Dispute. The arbitrators shall have no power to award damages inconsistent with these terms or the Engagement Letter, including the limitation on liability and indemnification provisions contained herein. The arbitrators may render a summary disposition relative to all or some of the issues, provided that the responding party has had an adequate opportunity to respond to any such application for such disposition. Discovery shall be conducted in accordance with the Rules.

DocuSign Envelope ID: BF8A5AB1-68D7-4AAE-AF9F-FE918BC2E575

All aspects of the arbitration shall be treated as confidential, as provided in the Rules. Before making any disclosure permitted by the Rules, a party shall give written notice to all other parties and afford such parties a reasonable opportunity to protect their interests. Further, judgment on the arbitrators' award may be entered in any court having jurisdiction.

**(c) Costs.** Each party shall bear its own costs in both the mediation and the arbitration; however, the parties shall share the fees and expenses of both the mediators and the arbitrators equally.

15. **Non-exclusivity.** D&T may (a) provide any services to any person or entity, and (b) develop for itself, or for others, any materials or processes, including those that may be similar to those produced as a result of the Services, provided that D&T complies with its obligations of confidentiality set forth hereunder.

16. **Non-solicitation.** During the term of this engagement and for a period of one (1) year thereafter, each party agrees that its personnel (in their capacity as such) who had substantive contact with personnel of the other party in the course of this engagement shall not, without the other party's consent, directly or indirectly employ, solicit, engage, or retain the services of such personnel of the other party. In the event a party breaches this provision, the breaching party shall be liable to the aggrieved party for an amount equal to thirty percent (30%) of the annual base compensation of the relevant personnel in his or her new position. Although such payment shall be the aggrieved party's exclusive means of monetary recovery from the breaching party for breach of this provision, the aggrieved party shall be entitled to seek injunctive or other equitable relief. This provision shall not restrict the right of either party to solicit or recruit generally in the media.

17. **Entire Agreement, Amendment, and Notices.** These terms, and the Engagement Letter, including attachments, constitute the entire agreement between the parties with respect to this engagement; supersede all other oral and written representations, understandings, or agreements relating to this engagement; and may not be amended except by a written agreement signed by the parties. In the event of any conflict or ambiguity between these terms and the Engagement Letter, these terms shall control. All notices hereunder shall be (a) in writing; (b) delivered to the representatives of the parties at the addresses set forth in the Engagement Letter, unless changed by either party by notice to the other party; and (c) effective upon receipt.

18. **Governing Law and Severability.** These terms, the Engagement Letter, including attachments, and all matters relating to this engagement shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof). If any provision of these terms or the Engagement Letter is unenforceable, such provision shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

**DocuSign**

## Certificate Of Completion

Envelope Id: BF8A5AB168D74AAEAE5FFF918BC2E57F                    Status: Completed
Subject: Please DocuSign: Voyager ARA Engagement Letter
Use Case: Engagement Letter
Data Classification: Confidential
WBS (N/A if not available): N/A
Source Envelope:
Document Pages: 10                    Signatures: 1                    Envelope Originator:
Certificate Pages: 5                  Initials: 0                      Daniel Israel
AutoNav: Enabled                                                      Two Jericho Plaza 3rd Floor
EnvelopeId Stamping: Enabled                                          ATTN: Accounts Payable
Time Zone: (UTC-08:00) Pacific Time (US & Canada)                     Jericho, NY  11753

                                                                     IP Address: 168.149.160.131

## Record Tracking

Status: Original                      Holder: Daniel Israel           Location: DocuSign
        8/24/2022 4:28:36 PM

| Signer Events | Signature | Timestamp |
| --- | --- | --- |
| Ashwin Prithipaul<br><br>CFO<br>Ash Prithipaul<br>Security Level: Email, Account Authentication (None) | *(signature)*<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 100.8.109.90 | Sent: 8/24/2022 4:31:41 PM<br>Viewed: 8/24/2022 5:57:47 PM<br>Signed: 8/26/2022 7:38:15 AM |

**Electronic Record and Signature Disclosure:**
   Accepted: 8/24/2022 5:57:47 PM
   ID: b21ad95e-b882-490a-9b3d-cbb954a3a9b5
   Company Name: Deloitte

| In Person Signer Events | Signature | Timestamp |
| --- | --- | --- |

| Editor Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Agent Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Intermediary Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Certified Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Carbon Copy Events | Status | Timestamp |
| --- | --- | --- |
| Mig Bukauskaite<br><br>Security Level: Email, Account Authentication (None) | COPIED | Sent: 8/24/2022 4:31:42 PM<br>Viewed: 8/26/2022 7:40:12 AM |

**Electronic Record and Signature Disclosure:**
   Not Offered via DocuSign

| | | |
| --- | --- | --- |
| Todd Bauer<br><br>Audit & Assurance Partner<br>Deloitte<br>Security Level: Email, Account Authentication (None) | COPIED | Sent: 8/24/2022 4:31:42 PM |

**Electronic Record and Signature Disclosure:**

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Not Offered via DocuSign | | |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 8/24/2022 4:31:42 PM |
| Certified Delivered | Security Checked | 8/24/2022 5:57:47 PM |
| Signing Complete | Security Checked | 8/26/2022 7:38:15 AM |
| Completed | Security Checked | 8/26/2022 7:38:15 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

## DISCLOSURE

From time to time, Deloitte USA LLP, Deloitte LLP and their respective subsidiaries (collectively, "we", "us" or "Company") may be required by law to provide to you certain written notices or disclosures related to the use of DocuSign and/or electronic signatures ("Disclosures"). Described below are the terms and conditions for providing to you such Disclosures electronically through the DocuSign, Inc. (DocuSign) electronic signing system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to these terms and conditions, please confirm your agreement by clicking the 'I agree' checkbox.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after signing session and, if you elect to create a DocuSign signer account, you may access them for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.0000 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive Disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required Disclosures only in paper format. How you must inform us of your decision to receive future Disclosures in paper format and withdraw your consent to receive Disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required Disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required Disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper Disclosures. To indicate to us that you are changing your mind, you must withdraw your consent using the DocuSign 'Withdraw Consent' form on the signing page of a DocuSign envelope instead of signing it. This will indicate to us that you have withdrawn your consent to receive required Disclosures electronically from us and you will no longer be able to use the DocuSign system to receive required Disclosures electronically from us or to sign electronically documents from us.

### All Disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all Disclosures that are required to be provided or made available to you. To reduce the chance of you inadvertently not receiving any Disclosures, we prefer to provide all of the required Disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the Disclosures electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the Disclosures electronically from us.

### How to contact Deloitte:

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive Disclosures electronically as follows:

**To advise Deloitte of your new e-mail address**

To let us know of a change in your e-mail address where we should send Disclosures electronically to you, you must send an email message to us at Deloitte Global eSignature Support and in the body of such request you must state: your previous e-mail address and your new e-mail address. We do not require any other information from you to change your email address. In addition, you must notify DocuSign, Inc. to arrange for your new email address to be reflected in your DocuSign account by following the process for changing e-mail in the DocuSign system.

**To request paper copies from Deloitte**

To request delivery from us of paper copies of the Disclosures previously provided by us to you electronically, you must send us an e-mail to Deloitte Global eSignature Support and in the body of such request you must state your e-mail address, full name, US Postal address, and telephone number.

**To withdraw your consent with Deloitte**

To inform us that you no longer want to receive future Disclosures in electronic format you may:
i. decline to sign a document from within your DocuSign session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;
ii. send us an e-mail to Deloitte Global eSignature Support and in the body of such request you must state your e-mail, full name, US Postal Address, and telephone number. We do not need any other information from you to withdraw consent. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process.

**Required hardware and software**

| Operating Systems: | Windows® 2000, Windows® XP, Windows Vista®; Mac OS® X |
|---|---|
| Browsers: | Final release versions of Internet Explorer® 6.0 or above (Windows only); Mozilla Firefox 2.0 or above (Windows and Mac); Safari™ 3.0 or above (Mac only) |
| PDF Reader: | Acrobat® or similar software may be required to view and print PDF files |
| Screen Resolution: | 800 x 600 minimum |
| Enabled Security Settings: | Allow per session cookies |

** These minimum requirements are subject to change. If these requirements change, you will be asked to re-accept the disclosure. Pre-release (e.g. beta) versions of operating systems and browsers are not supported.

**Acknowledging your access and consent to receive materials electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic Disclosures that we will provide to you, please verify that you were able to read this electronic disclosure and that you also were able to print on paper or electronically save this page for your future reference and access or that you were able to e-mail this disclosure and consent to an address where you will be able to print on paper or save it for your future reference

and access. Further, if you consent to receiving Disclosures exclusively in electronic format on the terms and conditions described above, please let us know by clicking the 'I agree' button below.

By checking the 'I agree' box, I confirm that:

- I can access and read this Electronic CONSENT TO ELECTRONIC RECEIPT OF ELECTRONIC CONSUMER DISCLOSURES document; and
- I can print on paper the disclosure or save or send the disclosure to a place where I can print it, for future reference and access; and
- Until or unless I notify Deloitte as described above, I consent to receive exclusively through electronic means all Disclosures that are required to be provided or made available to me by Deloitte.

**<u>Exhibit B</u>**

**Bauer Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

<table>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>In re:</td><td>)</td><td>Chapter 11</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>VOYAGER DIGITAL HOLDINGS, INC., <em>et al.</em>,[1]</td><td>)</td><td>Case No. 22-10943 (MEW)</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Debtors.</td><td>)</td><td>(Jointly Administered)</td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

### DECLARATION OF TODD BAUER
### IN SUPPORT OF THE DEBTORS' APPLICATION
### FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO
### EMPLOY AND RETAIN DELOITTE & TOUCHE LLP AS ACCOUNTING
### ADVISORY SERVICES PROVIDER EFFECTIVE AS OF AUGUST 24, 2022

I, Todd Bauer, under penalty of perjury, declare as follows:

1.       I am a partner of the firm of Deloitte & Touche LLP ("Deloitte & Touche"), which has an office at 555 West 5th Street, Suite 2700, Los Angeles, CA 90013. I am duly authorized to make and submit this declaration (the "Declaration") on behalf of Deloitte & Touche as accounting advisory services provider for the above-captioned debtors and debtors in possession (the "Debtors") in support of the *Debtors' Application for Entry of an Order Authorizing the Debtors to Employ and Retain Deloitte & Touche LLP as Accounting Advisory Services Provider Effective as of August 24, 2022* (the "Application").[2]

2.       The Debtors seek to retain Deloitte & Touche pursuant to the terms and conditions set forth in that certain engagement letter, dated August 24, 2022, between the Debtors

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

and Deloitte & Touche to provide certain accounting advisory services (the "Engagement Letter").
A copy of the Engagement Letter is attached to the Order as Exhibit 1.

3.      The statements set forth in this Declaration are based upon my personal knowledge, information and belief, and/or client matter records kept in the ordinary course of business that were reviewed by me or other personnel of Deloitte & Touche or its affiliates.

### Deloitte & Touche's Qualifications

4.      Deloitte & Touche is a public accounting firm with offices across the United States.  Deloitte & Touche has significant experience performing accounting advisory services and has performed such services in large and complex chapter 11 cases on behalf of debtors throughout the United States.  Such experience renders Deloitte & Touche well-qualified and able to provide services to the Debtors during the pendency of these chapter 11 cases in a cost-effective, efficient, and timely manner.  Deloitte & Touche's services fulfill an important need and are not provided by any of the Debtors' other professionals.

5.      In addition, since approximately July 2020, Deloitte & Touche has provided various accounting related professional services to the Debtors.  In providing such prepetition professional services to the Debtors, Deloitte & Touche has become familiar with the Debtors and their financial affairs, debt structure, business operations, and related matters.  Having worked with the Debtors' management, Deloitte & Touche has developed relevant experience and knowledge regarding the Debtors that will assist it in providing effective and efficient services during the Chapter 11 Cases.  In addition, Deloitte & Touche is a global leader in providing accounting advisory services, including with respect to blockchain technology, tokens, and cryptocurrency.  Deloitte & Touche's experience advising clients across industries on digital asset accounting issues has uniquely positioned Deloitte & Touche to provide effective and efficient services to the Debtors during these chapter 11 cases.  Accordingly, Deloitte & Touche is both

2

well-qualified and able to provide the services for the Debtors during these chapter 11 cases in a cost-effective, efficient, and timely manner.

**Deloitte & Touche's Disinterestedness**

**A.    Additional Background Information Related to Deloitte & Touche**

6.      Deloitte Touche Tohmatsu Limited ("DTTL") is a United Kingdom private company limited by guarantee.  DTTL itself does not provide services to clients.  Each of the member firms of DTTL (each, a "DTTL Member Firm") is a legally separate and distinct entity. The DTTL Member Firms are primarily organized on an individual country or regional basis, and operate within the legal and regulatory framework of their particular jurisdiction(s).  The DTTL Member Firm structure reflects the fact that the DTTL Member Firms are not affiliates, subsidiaries, or branch offices of each other or of a global parent.  Rather, they are separate and independent firms that have come together to practice under a common brand and shared methodologies, client service standards, and other professional protocols and guidelines.  DTTL Member Firm partners and/or principals are generally the sole owners of their respective DTTL Member Firms.  There is no overlap with respect to a partner's or principal's ownership in its respective DTTL Member Firm and any other DTTL Member Firm.  Profits are not shared between or among the DTTL Member Firms.

7.      In the United States, Deloitte LLP is a DTTL Member Firm.  Like DTTL, Deloitte LLP does not provide services to clients.  Rather, Deloitte LLP has operating affiliates that perform services for clients, including Deloitte & Touche, Deloitte Tax LLP ("Deloitte Tax"), Deloitte Consulting LLP ("Deloitte Consulting"), Deloitte Financial Advisory Services LLP ("Deloitte FAS"), and Deloitte Transactions and Business Analytics LLP ("DTBA") (Deloitte LLP and each of the foregoing, and together with their respective direct and indirect subsidiaries,

3

collectively, the "Deloitte U.S. Entities"). The partners and/or principals of each operating affiliate of Deloitte LLP are owners of their respective affiliate along with, directly or indirectly, Deloitte LLP. Generally, each affiliate's respective partners and principals are also partners and principals, as applicable, of Deloitte LLP.

### B.    Conflicts Check Process, Generally

8.    As described herein, for the most part, the conflicts searches conducted by Deloitte & Touche involve checking client and other databases of the Deloitte U.S. Entities. Given the separateness of the various DTTL Member Firms as described above, the Deloitte U.S. Entities do not have the capability to directly check the client or other databases of any of the non-U.S. DTTL Member Firms or their respective affiliates or subsidiaries. However, notwithstanding the separateness of the DTTL Member Firms, as described below, the Deloitte U.S. Entities' checking procedures in bankruptcy cases do result in the gathering of certain information related to the DTTL Member Firms.

9.    When any of Deloitte LLP's operating affiliates, such as Deloitte & Touche, is to be the subject of an application to be retained in a chapter 11 case, a process commences regarding checking connections to the debtor, its affiliates and the debtor's parties in interest (as provided by the debtors). With the assistance of the Deloitte U.S. Entities' conflicts team (the "Conflicts Team"), a series of conflicts checking procedures are undertaken, including checking a number of Deloitte U.S. Entities' databases for their connections. Additionally, the Conflicts Team performs procedures to identify certain relationships of other DTTL Member Firms, as described below:

    a.    With respect to the debtor and debtor affiliates, the Conflicts Team will:

        i.    Initiate cross-border check requests to the DTTL Member Firm(s) where the debtor or debtor affiliate is domiciled (i.e., the country of incorporation or the entity's headquarters, as the case may be) based

4

upon information provided by the debtors and research by the Conflicts Team of publicly available information. The DTTL Member Firm(s) will then search applicable local databases to identify client or non-client relationships in their jurisdiction (such as lender, vendors, business relationship entities or third parties associated with a client engagement);

ii.    Perform a search of the cross-border conflict check requests the Conflicts Team has previously received from other DTTL Member Firms, which are submitted when a DTTL Member Firm seeks to commence an engagement with or involving a U.S. entity.[3] This search is conducted to identify whether those prospective engagements involved the debtor or its affiliates domiciled in the U.S. as the engaging client or non-client relationship (such as business relationship entities or third parties associated with a client engagement); and

iii.    Perform a search of the database system associated with audit and other related independence requirements (the "Independence Database") to identify possible connections with debtor and debtor affiliates with respect to whom such requirements are actually or potentially implicated. Each DTTL Member Firm is required to input its respective audit and attest clients into the Independence Database, and all DTTL Member Firms have access to the Independence Database.[4] Each entity in the Independence Database has a designated partner who is responsible for approving and monitoring services for entities included in its corporate tree. The Independence Database includes audit and attest clients of the various DTTL Member Firms, as well as certain other non-clients thereof.

b.    With respect to the debtor's parties in interest, the Conflicts Team will:

i.    Perform a search of the cross-border conflict check requests the Conflicts Team has previously received from other DTTL Member Firms (described above) to identify whether those prospective engagements involved a U.S.-domiciled party in interest as a direct attest or litigation client or business relationship entity; and

ii.    Perform a search of the Independence Database to determine

---

[3]   These cross-border conflict check requests are pursuant to a policy adopted by DTTL Member Firms.

[4]   Inputting audit and attest clients into the Independence Database is a policy followed by DTTL Member Firms so that such relationships are tracked in connection with such firms' independence requirements.

5

whether a party in interest is identified therein.

10.    Based upon the foregoing, it is my understanding that the overall design and implementation of Deloitte U.S. Entities' current procedures provide a reasonable level of comfort that relationships and potential conflicts related to a debtor will be identified.

### C.    Disinterestedness of Deloitte & Touche in the Chapter 11 Cases

11.    Subject to the foregoing, to the best of my information, knowledge, and belief based on reasonable inquiry:  (a) neither I, Deloitte & Touche, nor any partner, principal, or managing director of Deloitte & Touche that is anticipated to provide the services for which Deloitte & Touche is to be retained (the "Engagement Partners/Principals/Managing Directors") holds any interest adverse to the Debtors; and (b) Deloitte & Touche has no relationship to the Debtors, their significant creditors, certain other significant parties-in-interest, or to the attorneys that are known to be assisting the Debtors in these chapter 11 cases, except as stated herein or in any attachment hereto.

12.    In connection with Deloitte & Touche's retention by the Debtors in these chapter 11 cases, Deloitte & Touche undertook searches to determine, and to disclose, whether it or its affiliates is or has been employed by or has other relationships with the Debtors or their affiliates, subsidiaries, directors, or officers, or any of the Debtors' significant creditors, customers, equity security holders, professionals, or other entities with significant relationships with the Debtors (the "Potential Parties-in-Interest"), whose specific names were provided to Deloitte & Touche by the Debtors, listed on **Schedule 1** attached hereto.  To check upon and disclose possible relationships with significant Potential Parties-in-Interest in these chapter 11 cases, Deloitte & Touche researched its client databases and performed reasonable due diligence to determine whether it or its affiliates had any relationships with the Debtors or the significant Potential Parties-in-Interest.

6

13.     With respect to Deloitte & Touche's conflicts checks conducted in these cases, if a database query identified a potential connection between a Potential Party-in-Interest and a Deloitte U.S. Entity or DTTL Member Firm, an email was sent to certain of the Deloitte U.S. Entity's and/or DTTL Member Firm's individuals, as applicable, associated with such Potential Party-in-Interest to confirm whether or not the relationship with such Potential Party-in-Interest related or currently relates to the Debtors' Chapter 11 Cases.  Responses to these emails were consolidated and subsequently reviewed.  As stated in this Declaration, these processes result in the disclosures that are set forth herein, including the disclosure of certain connections with Potential Parties-in-Interest that do not relate to the Debtors' Chapter 11 Cases.  The identified potential connections to the Potential Parties-in-Interest are included on **Schedule 2** appended hereto, and such connections do not relate to the Chapter 11 Cases.

14.     Deloitte & Touche and its affiliates have relationships with thousands of clients, some of which may be creditors of the Debtors or other Potential Parties-in-Interest. Accordingly, Deloitte & Touche and/or its affiliates have had, currently have and/or may have in the future banking or other relationships with such parties, or provided, may currently provide, and/or may provide in the future professional services to certain of these parties in matters unrelated to these chapter 11 cases.  From time to time, Deloitte & Touche and its affiliates have provided or may currently provide services, and likely will continue to provide services, to certain creditors of the Debtors and various other parties potentially adverse to the Debtors in matters unrelated to these chapter 11 cases, except as set forth herein or in the attachments hereto. Additionally, certain significant Potential Parties-in-Interest have or may have provided goods or services, may currently provide goods or services, and/or may in the future provide goods or services to Deloitte & Touche and/or its affiliates and the Engagement

Partners/Principals/Managing Directors in matters unrelated to these chapter 11 cases. A listing of parties with such connections is attached to this Declaration as **Schedule 2**.

15.     Deloitte & Touche believes that the relationships described herein or reflected on **Schedule 2** have no bearing on the services for which Deloitte & Touche's retention is being sought by the Debtors in these chapter 11 cases. Furthermore, such relationships do not impair Deloitte & Touche's disinterestedness, and Deloitte & Touche does not represent an adverse interest in connection with these chapter 11 cases.

16.     Despite the efforts described above to identify and disclose Deloitte & Touche's connections with the significant Potential Parties-in-Interest in these chapter 11 cases, because Deloitte & Touche is a nationwide firm with many personnel, Deloitte & Touche is unable to state with certainty that every client relationship or other connection has been disclosed. In this regard, if Deloitte & Touche discovers additional material information that it determines requires disclosure, it will file a supplemental disclosure promptly with the Court.

17.     To the best of my knowledge, based on the internal search discussed above, Deloitte & Touche has determined that certain relationships should be disclosed as follows:

a.  Deloitte & Touche and/or its affiliates provide services in matters unrelated to these chapter 11 cases to certain of the Debtors' largest unsecured creditors and other Potential Parties-in-Interest or their affiliates listed on **Schedule 2**.

b.  Law firms identified on **Schedule 2**, including Baker & McKenzie LLP; Berger Singerman LLP; Campbells LLP; Day Pitney LLP; Fasken Martineau DuMoulin LLP; Fragomen, Del Rey, Bernsen & Lowey, LLP; Frankfurt Kurnit Klein & Selz, P.C.; Jackson Lewis P.C.; Jenner & Block LLP; Kirkland & Ellis LLP; Kramer Levin Naftalis & Frankel LLP; Lowenstein Sandler LLP; Major, Lindsey & Africa, LLC; Marcum LLP; McCarter & English LLP; Mintz & Gold LLP; Paul Hastings LLP; Quinn Emanuel Urquhart & Sullivan LLP; Seyfarth Shaw LLP; and Troutman Pepper Hamilton Sanders LLP; have provided, currently provide and may in the future provide legal services to Deloitte & Touche or its affiliates in matters unrelated to these chapter 11 cases, and/or Deloitte & Touche or its affiliates have provided, currently provide and may in the future provide services to such firms or their clients.

c.   In the ordinary course of its business, Deloitte & Touche and its affiliates have business relationships in unrelated matters with its principal competitors, which together with their affiliates may be Potential Parties-in-Interest in these chapter 11 cases.  For example, from time to time, Deloitte & Touche and one or more of such entities may work on assignments for the same client or may otherwise engage each other for various purposes.

d.   Certain financial institutions or their respective affiliates (including U.S. Bank National Association) listed on **__Schedule 2__** (i) are lenders to an affiliate of Deloitte & Touche (Deloitte & Touche is a guarantor of such indebtedness) and/or (ii) have financed a portion of the capital and/or capital loan requirements of various partners and principals, respectively, of Deloitte & Touche and its affiliates.  In addition, certain institutions, or their respective affiliates, including BMO, provide asset management services for, and/or have a similar role with respect to investments of, certain pension, benefit and similar funds sponsored by affiliates of Deloitte & Touche.

e.   Certain DTTL Member Firms and/or their affiliates have provided, currently provide or may in the future provide professional services to certain non-Debtor affiliates of the Debtors, in matters unrelated to these chapter 11 cases.  In particular, the DTTL Member Firm located in Denmark have performed and continue to perform certain audit and attest services to such non-Debtor affiliates.[5]

f.   Deloitte & Touche performed queries regarding whether any of the Engagement Partners/Principals/Managing Directors and other professional personnel performing services for the Debtors has bought, sold, traded, or stored cryptocurrency through or on the Debtors' platform.  In making such inquires, I understand that prior to the Petition Date, one member of the Deloitte & Touche engagement team, Daniel Israel, held and traded a de minimis amount of cryptocurrency in an account with the Debtors to better understand how the Debtors' platform worked.  In November 2021, Mr. Israel liquidated all of his positions in this account and has held nothing in the account as of the Petition Date.  Except for the foregoing disclosure, Deloitte & Touche represents that it did not receive any other affirmative responses to any of the aforementioned questions.[6]

g.   Certain Potential Parties-in-Interest may be adverse to and/or involved in

---

[5]   As noted above, each of the DTTL Member Firms is a separate and independent legal entity.  It is not Deloitte & Touche's practice to undertake conflicts checks with DTTL Member Firms for the purpose of identifying relationships that they may have with the Debtors and other parties-in-interest and Deloitte & Touche does not maintain a database for the purpose of identifying all such relationships.

[6]   Other Deloitte U.S. Entities' personnel may have such a relationship with the Debtors; however, Deloitte & Touche's inquiry did not encompass all such personnel.

litigation matters with Deloitte & Touche or its affiliates in connection with matters unrelated to these chapter 11 cases.

h.  Deloitte & Touche has provided and continues to provide audit services to certain Potential Parties-in-Interest and/or their affiliates in matters unrelated to these chapter 11 cases.  In its capacity as independent auditor, Deloitte & Touche also provides such clients with ordinary course accounting advice and conducts typical audit procedures that may arise from such Potential Parties-in-Interest's business arrangements with the Debtors.

i.  Deloitte Consulting and certain of its affiliates have provided and will continue to provide services to the Executive Office of the United States Trustee in matters unrelated to these chapter 11 cases.

18.    Furthermore, through reasonable inquiry, I do not believe there is any connection between the personnel of Deloitte & Touche or its affiliates who are anticipated to provide services to the Debtors and the United States Bankruptcy Judge presiding in these chapter 11 cases, the United States Trustee for Region 2 (the "U.S. Trustee"), the Assistant U.S. Trustee for Region 2, and the attorney therefor assigned to the chapter 11 cases.

19.    Except as may be disclosed herein, to the best of my knowledge, information, and belief, Deloitte & Touche and the Engagement Partners/Principals/Managing Directors do not hold or represent any interest adverse to the Debtors, and I believe that Deloitte & Touche is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

**Scope of Services**

20.    Subject to the Court's approval, and as set forth more fully in the Engagement Letter,[7] in consideration for the compensation contemplated therein, Deloitte & Touche has agreed to provide accounting advisory services for the Debtors in accordance with the

---

[7]    If there is an inconsistency between the description of the services in the Engagement Letter and this Declaration, the description in the Engagement Letter shall control.

terms and conditions set forth in the Engagement Letter, and as requested by the Debtors and agreed to by Deloitte & Touche, as follows:

> a.    Review the Debtors' management's revised internal control design and implementation and provide recommendations on gaps and deficiencies, excluding controls related to lending of digital assets;

> b.    Providing advice and recommendations for the Debtors' management's consideration on the regulatory requirements associated with listing on the Toronto Stock Exchange ("TSX") or NASDAQ, and internal control requirements associated with various listing options;

> c.    Providing advice and recommendations for the Debtors' management's consideration on blockchain audit readiness topics;

> d.    Gaining an understanding of the Debtors' accounting treatment of digital asset transactions under U.S. GAAP, SEC rules and regulations, and IFRS;

> e.    Researching and communicating relevant accounting literature and guidance under U.S. GAAP, SEC rules and regulations, and IFRS related to digital asset transactions; and

> f.    Reading and providing advice and recommendations for the Debtors' management's consideration on the relevant policies and procedures on digital asset transactions.

21.    Deloitte & Touche respectfully requests that its retention be made effective as of August 24, 2022, so that Deloitte & Touche may be compensated for the professional services it has provided before the Application is heard by the Court.  Deloitte & Touche has provided services to the Debtors in advance of approval of this Application in anticipation that its retention would be approved effective as of August 24, 2022.  Deloitte & Touche submits that these circumstances are of a nature warranting retroactive approval.

### Professional Compensation

22.    Subject to Court approval, and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and such other procedures as may be fixed by order of the Court, the Debtors will compensate Deloitte & Touche in accordance with

the terms and conditions of the Engagement Letter, which, in relevant part, provide for the following compensation structures.

23.    Pursuant to the terms and conditions of the Engagement Letter, Deloitte & Touche will bill the Debtors fees and expenses based on the amount of professional time required and the experience level of the professionals involved.  Deloitte & Touche will bill for such services at the hourly rates set forth in the table below:

| Professional Level | Hourly Rates |
|---|---|
| Partner / Principal / Managing Director | $850 |
| Senior Manager | $750 |
| Manager | $650 |
| Senior | $550 |
| Consultant | $450 |
| Offshore Resources- Blended Rate | $350 |

24.    Hourly rates are revised periodically in the ordinary course of Deloitte & Touche's business.  Deloitte & Touche shall advise the Debtors of any new rates should it institute a rate change during these chapter 11 cases.  Such changes will be noted on the invoices for the first time period in which a revised rate becomes effective.

25.    In addition to the fees set forth above, actual, reasonable and necessary expenses, including travel, report production, delivery services, and other expenses incurred in providing Deloitte & Touche's services will be included in the total amount billed.

26.    Deloitte & Touche intends to file interim and final fee applications for the allowance of compensation for professional services rendered and reimbursement of expenses incurred consistent and in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any applicable orders of this Court, including the Order granting this Application (to the extent compliance is not waived), and/or any applicable guidelines

12

issued by the U.S. Trustee, consistent with the proposed compensation set forth in the Application and the Engagement Letter. Deloitte & Touche has agreed to accept as compensation such sums as may be allowed by this Court and understands that interim and final fee awards are subject to approval by this Court.

27.     Deloitte & Touche will maintain records in support of any fees incurred in connection with the services it performs in these chapter 11 cases by category and nature of the services rendered and will provide reasonably detailed descriptions of those services rendered on behalf of the Debtors, the time expended in provided those services, and the individuals who provided professional services for the Debtors. Deloitte & Touche will present such records to the Court in its fee applications to the Court. Deloitte & Touche requests that the invoices, after appropriate review, be paid in a manner consistent with the payment of other retained professionals in these chapter 11 cases and consistent with any administrative orders, if any, that would apply to interim payments. I understand that all payments rendered pursuant to Deloitte & Touche's retention by the Debtors must be approved by an order of this Court and based upon the filing by Deloitte & Touche of appropriate interim and final applications for allowance of compensation and reimbursement of expenses.

28.     Prior to the Petition Date, Deloitte & Touche provided professional services to the Debtors. In the ninety (90) days prior to the Petition Date, the Debtors paid Deloitte approximately $25,665 for services performed prior to such date. As of the Petition Date, no amount was outstanding with respect to the invoices issued by Deloitte & Touche.

29.     Some services incidental to the tasks to be performed by Deloitte & Touche in these chapter 11 cases may be performed by personnel now employed by or associated with affiliates of Deloitte & Touche, such as Deloitte FAS, DTBA, Deloitte & Touche, and Deloitte

13

Consulting, or their respective subsidiaries, including subsidiaries located outside of the United States. For example, a portion of the accounting services will be performed, at Deloitte & Touche's direction, by its indirect subsidiary, Deloitte & Touche Services India Private Limited ("Deloitte & Touche India"). A specifically assigned team of personnel from Deloitte & Touche India will assist in the accounting services under the supervision, and with the input, of personnel of Deloitte & Touche. The hourly rates charged to clients by Deloitte & Touche for services performed by Deloitte & Touche India personnel are comparable to the market rates charged for similar services by Deloitte & Touche, but, do not directly correlate with the hourly rates attributed to such services by Deloitte & Touche India. The connections of Deloitte & Touche India (along with the connections of Deloitte & Touche and its other affiliates) to the Potential Parties-in-Interest searched by Deloitte & Touche are set forth in **Schedule 2** to this Declaration.

30. Deloitte & Touche has received no promises regarding compensation in these chapter 11 cases other than in accordance with the Bankruptcy Code and as set forth in this Declaration. Deloitte & Touche has no agreement with any nonaffiliated or unrelated entity to share any compensation earned in these chapter 11 cases.

### Efforts to Avoid Duplication of Services

31. The services performed by Deloitte & Touche will not unnecessarily duplicate or overlap with the other services performed by the Debtors' other retained professionals. Deloitte & Touche understands that the Debtors have retained and may retain additional professionals during the term of the Engagement Letter, and Deloitte & Touche agrees to work cooperatively with the Debtors to avoid unnecessary duplication of services.

14

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  September 29, 2022

_/s/ Todd Bauer_
Todd Bauer
Partner
Deloitte & Touche LLP

15

## Schedule 1

**Potential Parties-in-Interest List**

| |
|---|
| Akbar Ladhani |
| Alabama Department of Revenue |
| Alabama Securities Commission |
| Alameda Research Ltd. |
| Alameda Research Ventures LLC |
| Alameda Ventures Ltd |
| Alaska Department of Revenue |
| Alejandro Benabe |
| Ally Watt |
| Amazon |
| Amazon Web Services, Inc |
| American Airlines |
| Anchorage Digital Bank N.A. |
| Anchorage Lending CA, LLC |
| Anthony Duclair |
| Aon Consulting Inc. |
| App.bitrise.io |
| Apple Inc. |
| Apple Search Ads |
| Appsflyer |
| Arizona Department of Revenue |
| Arkansas Department of Finance and Administration |
| Arrow Search Partners |
| Ashtyn Davis |
| Ashwin Prithipaul |
| Atlassian |
| Authentic8, Inc. |
| Ba Int - Usd |
| Baker & McKenzie LLP |
| Bank of Montreal |
| Barefoot LLC |
| Bateman Capital Inc |
| Bates Group LLC |
| Beekman Social LLC |
| Behmer & Blackford LLP |
| Berger Singerman LLP |
| Berkeley Research Group, LLC |
| BetterInvesting |

| |
|---|
| Beutler Enterprises Inc (d/b/a Beutler Ink) |
| Beyond Studios |
| Big Outdoor Holdings, LLC |
| BitGo Prime, LLC |
| BitGo, Inc. |
| Blackwired (US), Inc. |
| Blockchain Association |
| Blockdaemon, Inc. |
| Bloomberg Finance L.P. |
| BMO |
| BPM LLP |
| Brandi Reynolds |
| Brian Brooks |
| Brill Advisors, LLC |
| British Airways |
| Broadridge |
| BTC Media |
| Buddakan |
| CAC Specialty Co. |
| California Franchise Tax Board |
| California State Business, Consumer Services and Housing Agency Department of Financial Protection and Innovation |
| Campbells LLP |
| Canada Revenue Agency |
| Carbone NYC |
| CC API |
| CC Data |
| CCM Advisory LLC |
| CDW, LLC |
| Celsius |
| Certified Kernel Tech LLC |
| Chainalysis Inc. |
| Chandkumar R Ramnarine |
| Chandler Belk |
| Chord Advisors LLC |
| Christen Westphal |
| Christopher Gronkowski (DBA:G13 Endorsements) |
| Citigate Dewe Rogerson Ltd |
| Cloud Posse, LLC |
| Cloudflare, Inc. |
| CNW Group Ltd. |

| |
|---|
| Cockroach Labs, Inc. |
| Coinify Financial Services ApS |
| Coinify Global Solutions Inc. |
| Coinify Ltd. |
| Coinify Payments OU |
| Coinify Technologies ApS |
| ColorArt |
| Complex Sports & Entertainment |
| Computershare |
| Connecticut Department of Revenue Services |
| Consensus 2022 |
| Conyers Dill & Pearman |
| Copper Technologies (UK) Limited |
| CorCom LLC |
| Cordell Ratzlaff |
| Crypto Rating Council |
| CSC (Corporation Service Company) |
| Cumberland DRW LLC |
| CXG Holdings, Inc. |
| Cyber Job Central, LLC |
| Cypress Group Staffing, Inc. |
| Dallas Basketball Limited (Dallas Mavericks) |
| Daniel Costantino |
| Daniel Gronkowski |
| Danielle Colaprico |
| Data.ai Inc. (Formerly Known As App Annie Inc.) |
| Datadog, Inc. |
| Daversa Partners |
| David Brosgol |
| David Helman |
| Day Pitney LLP |
| Delaware Division of Revenue |
| Delta Airlines |
| Devexperts Sofia Ltd. |
| Digital Niche Agency |
| Dinwiddie, Inc. |
| Distinguished Search LLC |
| District of Columbia Office of Tax and Revenue |
| Docker Inc. |

3

| |
|---|
| Donnelley Financial Solutions Canada Corporation |
| Dorian Finney-Smith |
| Dropbox |
| DV Chain, LLC |
| Dwight Powell |
| Elasticsearch, Inc |
| Elevate Brand Marketing |
| Endeavor Parent, LLC (dba. IMG Models, LLC) |
| Erin Walmesley |
| Essential Accessibility Inc |
| Estelle Johnson |
| Euclid's Lloyds of London Syndicate |
| Eva Yuen |
| Evan Psaropoulos |
| Exzac Inc. (dba Matrix-IFS) |
| Fasken Martineau DuMoulin LLP |
| Fastly, Inc. |
| FiCentive, Inc. |
| Figma |
| Find Your Happy LLC |
| FIREBLOCKS INC. |
| Fireblocks Ltd. |
| FirstBrook Cassie & Anderson Ltd |
| Fivetran Inc. |
| Florida Department of Revenue |
| Fort Capital Ontario Inc. |
| Fragomen, Del Rey, Bernsen & Loewy, LLP |
| Frank Ntilikina |
| Frankfurt Kurnit Klein & Selz, P.C. |
| Freshworks |
| Fundamental Research Corp. |
| Fusion of Ideas, Inc |
| G Suite |
| Galaxy Digital LLC |
| Gaspard Aupepin de Lamothe Dreuzy |
| Genesis Global Capital, LLC |
| Georgia Department of Revenue |
| Gerard Hanshe |
| Github, Inc. |
| Glendale Securities INC. |
| Glenn Gronkowski |

| |
|---|
| Glenn Stevens |
| Glushon Sports Management |
| Goodbay Technologies |
| GoodHire |
| Google Ads |
| Google Cloud |
| Google G Suite |
| Google, LLC. |
| Gordon Gronkowski |
| Gordon Gronkowski Jr |
| Grant Thornton LLP |
| Gravitational, Inc. |
| Great Midwestern Insurance Co. |
| Greenhouse Software, Inc. |
| Greg Malocca |
| Gronk Endorsements LLC |
| Guy Elliott |
| HackerRank |
| HappyFunCorp LLC |
| HardHead Marketing |
| Hartford Fire Insurance Company |
| Hartford Underwriters Insurance Company |
| HiFi Project Inc. |
| Hireclout, Inc |
| Hotjar Limited |
| HTC Trading, Inc. |
| Idaho State Tax Commission - Collections |
| Illinois - Department of Revenue |
| Impact Tech, Inc |
| Independent Trading Group Inc. |
| Indiana Department of Revenue |
| Indiana State Securities Division |
| Indianapolis Motor Speedway |
| Infinite Agency, LLC |
| Infinite IP Corporation |
| Infinity Consulting Solutions, Inc |
| Intuit |
| IOWA Department of Revenue |
| IPQualityScore |
| IQTalent Partners Inc |
| Ironclad, Inc |
| Isaiah Stone |
| Iterable, Inc |

| |
|---|
| JA Visual Solutions LLC |
| Jackson Lewis P.C. |
| Jalen Brunson |
| Janice Barrilleaux |
| Jarrett Lilien |
| JDI Studio LLC |
| Jeffrey B. Lightfoot |
| Jenner & Block LLP |
| Jennifer Ackart |
| Jess McDonald |
| JetBlue Airways |
| JetBrains |
| JFrog INC |
| Jill Frizzley |
| Jivaro Professional Headhunters, LLC |
| Jordan Berk |
| Jordana Keslassy |
| JSCT, LLC (Jane Street) |
| Kansas Department of Revenue |
| Kate Leavell Companies LLC |
| Kauling Racing, Inc |
| Kcsa Strategic Communications |
| Kentucky Department of Financial Institutions |
| Kentucky Department of Revenue |
| Ketchum Inc. |
| Kforce Inc |
| Kirkland & Ellis LLP |
| KnowBe4 Inc. |
| Korn Ferry |
| Koto Studio LLC |
| Kramer Levin Naftalis & Frankel LLP |
| Kristen Hamilton |
| Krisztian Toth |
| La Cantera Resort & Spa |
| Landon Cassill, Inc. |
| Las Vegas Motor Speedway |
| Lastpass |
| LaunchDarkly |
| Laurel Hill Advisory Group Company |
| Learfield Communications, LLC |
| Ledger Technologies INC |
| Levin Group Limited |

| |
|---|
| Lewis Bateman |
| LGO SAS |
| Lindsey Harris |
| LogMeIn |
| LogMeIn USA, Inc. |
| Louisiana Department of Revenue |
| Lowenstein Sandler LLP |
| Loyalist, LLC |
| MaestroQA, Inc. |
| Maine Revenue Services |
| Major, Lindsey & Africa, LLC |
| Marcum LLP |
| Mark Cassidy |
| Mark Egert |
| Market One Media Group Inc. |
| Market Rebellion, LLC |
| Marla K Knapp |
| Marquez Valdes-Scantling |
| Marshall Jensen |
| Mary Kratka |
| Maryland Comptroller |
| Matt Ray |
| Maximilian Kleber |
| Maxx Management LLC |
| McCarter & English, LLP |
| Medium Rare Live, LLC |
| Meghan Klingenberg |
| Meltwater News US Inc |
| Merlin Media LLC |
| MessageBank, LLC |
| Meta Platforms, Inc. |
| Metropolitan Commerical Bank |
| Michael Gorsuch |
| Michael Legg |
| Michigan Department of Treasury |
| Microsoft |
| Miko Tam |
| Minnesota Department of Revenue |
| Mintz & Gold LLP |
| Miro |
| Mississippi Department of Revenue |
| Mixpanel Inc |
| MJD3 Associates, LLC. |

| |
|---|
| Mobile Action Inc. |
| Moelis & Company |
| Monday.com Ltd |
| Money Services Business Association |
| Motivate Design LLC (dba UX Hires) |
| Mountain Shadows Resort |
| MPJ Advisors LLC |
| MSG Arena LLC |
| Nasdaq Corporate Solutions, LLC |
| National Women's Soccer League, LLC |
| Nebraska Department of Revenue |
| Network Redux |
| New Hampshire Department of Revenue Administration |
| New Jersey Bureau of Securities |
| New Jersey Division of Taxation |
| New Mexico Tax And Revenue Dept |
| Next for Me Media, Inc. |
| NMLS |
| Noble Capital Markets, Inc |
| Nominis Advisory Ltd |
| North Carolina Department of Revenue |
| North Dakota Office of State Tax Commissioner |
| Ogon, LLC |
| Oklahoma Department of Securities |
| Oklahoma Tax Commission |
| Online Business Systems |
| OpsGenie |
| Optimal Workshop |
| Oracle America, Inc. |
| Oregon Department of Revenue |
| Organic Inc. |
| OTC Markets Group Inc. |
| Pada Ventures, Inc. (d/b/a GroWrk Remote) |
| Pam Kramer |
| Paul Hastings LLP |
| Paypal Transaction - Innovativec |
| Pennsylvania Department of Revenue |
| Philip Eytan |
| Phone.com |
| Pickwick Capital Partners, LLC |
| Piper Companies, LLC |

| |
|---|
| PitchBook Data, Inc. |
| Plaid Inc. |
| Popnoggins Llc |
| PORTSWIGGER |
| Postman Basic Monthly |
| Printed Threads |
| Proconsul Capital Ltd |
| Project 1972, Inc. |
| Publicist Inc. |
| Quantum Talent Group |
| Quinn Emmanuel |
| Rakesh Gidwani |
| Reciprocity, Inc. |
| Regus |
| Regus Management Group, LLC |
| Relm Insurance Limited |
| Residence Inn by Marriott (Dayton Beavercreek) |
| Rhode Island Division of Taxation |
| Roadmunk |
| Rob Gronkowski |
| Robert B. Holt |
| S&S Activewear |
| Sam Staab |
| Schiff Hardin LLP |
| Scott Vogel |
| Seeking Alpha |
| Segment.IO, Inc. |
| Seprio, LLC |
| Serge Kreiker |
| Seyfarth Shaw LLP |
| Sheraton Grand Nashville Downtown |
| Shingo Lavine |
| Sift Science, Inc. |
| Signature Bank |
| Silvergate Bank |
| Slack Technologies, LLC |
| SLS South Beach |
| Smart City Networks |
| Snapchat |
| Snowflake Inc |
| Snyk Inc. |
| Socure Inc. |

| |
|---|
| soona |
| South Carolina Department of Revenue |
| South Carolina Securities Commissioner |
| Spacelift, Inc. |
| Spencer Dinwiddie |
| Standout Tech Solutions LLC |
| Stephen Ehrlich |
| Stretto |
| Swag.com |
| Tableau Software, Inc. |
| Tai Mo Shan Limited |
| Talos Trading, Inc. |
| Taylor & Gray LLC |
| Teneo Strategy LLC |
| Tennessee Department of Revenue - Collections |
| Terminal, Inc. |
| Tesseract Group Oy |
| Texas Comptroller of Public Accounts |
| Texas State Securities Board |
| The Block Crypto, Inc. |
| The Cosmopolitan of Las Vegas |
| The Friends of Falcon Hockey Inc |
| The Sports Girls |
| The Winslow |
| ThoughtWorks, Inc. |
| Three Arrows Capital Ltd. |
| Tim Pohl |
| Toni Pressley |
| Travelbank |
| Trea Turner |
| Troutman Pepper Hamilton Sanders LLP |
| TSX Inc. |
| Tuple |
| Twilio |
| Twitter Online Ads |
| Twitter, Inc. |
| Tyler Lussi |
| Typeform, S.l. |
| Uber |
| United Airlines |
| UPS |
| Upside Business Travel |

| |
|---|
| US Bank National Association |
| User Testing, Inc. |
| Usio, Inc. |
| Utah State Tax Commission |
| Valuation Research Corp. |
| Verizon Wireless |
| Vermont Department of Financial Regulation |
| Victor Hugo |
| Vijay Kumar B |
| Virginia Department of Taxation |
| Voyager Digital Brokerage Canada Ltd. |
| Voyager Digital Brokerage Ltd. |
| Voyager Digital Holdings, Inc. |
| Voyager Digital Ltd. |
| Voyager Digital NY LLC |
| Voyager Digital, LLC |
| Voyager Europe |
| Voyager European Holdings ApS |
| Voyager IP, LLC |
| VYGR Holdings, LLC |
| VYGR Management LLC |
| W Dallas (Victory) |
| W New York (Union Square) |
| Walkers Corporate Limited |
| Wall Street Dead aHead Networking LLC |
| Washington State Department of Financial Institutions Securities Division |
| Weisman Tech Law LLC |
| West Virginia Tax Department |
| WeWork Inc. |
| Whistler Search Partners, LLC |
| WilliamsMarston LLC |
| Willis Towers Watson PLC |
| WINJIT INC |
| Wintermute Trading Ltd |
| Wisconsin Department of Revenue |
| Wrike, Inc. |
| XL Specialty Ins. Company |
| Zapier |
| Zendesk, Inc |
| ZeroFOX, Inc. |

## Schedule 2

### Potential Parties-in-Interest with Connections

Potential parties-in-interest or their affiliates for whom Deloitte & Touche LLP or its affiliates, or certain non-U.S. member firms of Deloitte Touche Tohmatsu Limited, has provided or is currently providing services in matters unrelated to these chapter 11 cases, or with whom such parties have other relationships, including banking relationships.

| |
|---|
| Alabama Department of Revenue |
| Alabama Securities Commission |
| Alaska Department of Revenue |
| Amazon |
| Amazon Web Services, Inc |
| American Airlines |
| Anchorage Digital Bank N.A. |
| Aon Consulting Inc. |
| Apple Inc. |
| Apple Search Ads |
| Appsflyer |
| Arizona Department of Revenue |
| Arkansas Department of Finance and Administration |
| Atlassian |
| Authentic8, Inc. |
| Baker & McKenzie LLP |
| Bank of Montreal |
| Barefoot LLC |
| Berger Singerman LLP |
| Berkeley Research Group, LLC |
| Big Outdoor Holdings, LLC |
| BitGo Prime, LLC |
| BitGo, Inc. |
| Blockdaemon, Inc. |
| Bloomberg Finance L.P. |
| BMO |
| BPM LLP |
| Brian Brooks |
| British Airways |
| Broadridge |
| CAC Specialty Co. |
| California Franchise Tax Board |

| |
|---|
| California State Business, Consumer Services and Housing Agency Department of Financial Protection and Innovation |
| Campbells LLP |
| Canada Revenue Agency |
| CDW, LLC |
| Celsius |
| Certified Kernel Tech LLC |
| Chainalysis Inc. |
| Chord Advisors LLC |
| Citigate Dewe Rogerson Ltd |
| Cloudflare, Inc. |
| CNW Group Ltd. |
| Cockroach Labs, Inc. |
| Coinify Financial Services ApS |
| Coinify Global Solutions Inc. |
| Coinify Ltd. |
| Coinify Payments OU |
| Coinify Technologies ApS |
| Computershare |
| Connecticut Department of Revenue Services |
| CSC (Corporation Service Company) |
| Data.ai Inc. (Formerly Known As App Annie Inc.) |
| Datadog, Inc. |
| Day Pitney LLP |
| Delaware Division of Revenue |
| Delta Airlines |
| District of Columbia Office of Tax and Revenue |
| Docker Inc. |
| Donnelley Financial Solutions Canada Corporation |
| Dropbox |
| Elasticsearch, Inc |
| Endeavor Parent, LLC (dba. IMG Models, LLC) |
| Exzac Inc. (dba Matrix-IFS) |
| Fasken Martineau DuMoulin LLP |
| Fastly, Inc. |
| Figma |
| FIREBLOCKS INC. |

| |
|---|
| Fireblocks Ltd. |
| Fivetran Inc. |
| Florida Department of Revenue |
| Fragomen, Del Rey, Bernsen & Loewy, LLP |
| Frankfurt Kurnit Klein & Selz, P.C. |
| Freshworks |
| Galaxy Digital LLC |
| Genesis Global Capital, LLC |
| Georgia Department of Revenue |
| Github, Inc. |
| Goodbay Technologies |
| GoodHire |
| Google Ads |
| Google Cloud |
| Google G Suite |
| Google, LLC. |
| Grant Thornton LLP |
| Gravitational, Inc. |
| Great Midwestern Insurance Co. |
| Greenhouse Software, Inc. |
| HackerRank |
| Hartford Fire Insurance Company |
| Hartford Underwriters Insurance Company |
| Hotjar Limited |
| HTC Trading, Inc. |
| Idaho State Tax Commission - Collections |
| Illinois - Department of Revenue |
| Impact Tech, Inc |
| Indiana Department of Revenue |
| Indiana State Securities Division |
| Intuit |
| IOWA Department of Revenue |
| Ironclad, Inc |
| Jackson Lewis P.C. |
| Jenner & Block LLP |
| JetBlue Airways |
| JetBrains |
| JSCT, LLC (Jane Street) |
| Kansas Department of Revenue |
| Kentucky Department of Financial Institutions |
| Kentucky Department of Revenue |
| Ketchum Inc. |

| |
|---|
| Kforce Inc |
| Kirkland & Ellis LLP |
| KnowBe4 Inc. |
| Korn Ferry |
| Kramer Levin Naftalis & Frankel LLP |
| La Cantera Resort & Spa |
| Landon Cassill, Inc. |
| Lastpass |
| LaunchDarkly |
| Learfield Communications, LLC |
| Ledger Technologies INC |
| LGO SAS |
| LogMeIn |
| LogMeIn USA, Inc. |
| Louisiana Department of Revenue |
| Lowenstein Sandler LLP |
| Maine Revenue Services |
| Major, Lindsey & Africa, LLC |
| Marcum LLP |
| McCarter & English, LLP |
| Meltwater News US Inc |
| Meta Platforms, Inc. |
| Metropolitan Commerical Bank |
| Michael Gorsuch |
| Michigan Department of Treasury |
| Microsoft |
| Minnesota Department of Revenue |
| Mintz & Gold LLP |
| Miro |
| Mississippi Department of Revenue |
| Mixpanel Inc |
| Moelis & Company |
| Monday.com Ltd |
| MSG Arena LLC |
| Nasdaq Corporate Solutions, LLC |
| National Women's Soccer League, LLC |
| Nebraska Department of Revenue |
| New Hampshire Department of Revenue Administration |
| New Jersey Bureau of Securities |
| New Jersey Division of Taxation |
| New Mexico Tax And Revenue Dept |
| Noble Capital Markets, Inc |

| |
|---|
| North Carolina Department of Revenue |
| North Dakota Office of State Tax Commissioner |
| Ogon, LLC |
| Oklahoma Department of Securities |
| Oklahoma Tax Commission |
| Optimal Workshop |
| Oracle America, Inc. |
| Oregon Department of Revenue |
| OTC Markets Group Inc. |
| Paul Hastings LLP |
| Paypal Transaction - Innovativec |
| Pennsylvania Department of Revenue |
| Piper Companies, LLC |
| PitchBook Data, Inc. |
| Plaid Inc. |
| PORTSWIGGER |
| Postman Basic Monthly |
| Quantum Talent Group |
| Quinn Emmanuel |
| Reciprocity, Inc. |
| Regus |
| Regus Management Group, LLC |
| Relm Insurance Limited |
| Residence Inn by Marriott (Dayton Beavercreek) |
| Rhode Island Division of Taxation |
| Roadmunk |
| S&S Activewear |
| Schiff Hardin LLP |
| Seeking Alpha |
| Segment.IO, Inc. |
| Seyfarth Shaw LLP |
| Sheraton Grand Nashville Downtown |
| Sift Science, Inc. |
| Signature Bank |
| Silvergate Bank |
| Slack Technologies, LLC |
| Smart City Networks |
| Snapchat |
| Snowflake Inc |
| Snyk Inc. |
| Socure Inc. |

| |
|---|
| soona |
| South Carolina Department of Revenue |
| South Carolina Securities Commissioner |
| Spacelift, Inc. |
| Stretto |
| Swag.com |
| Tableau Software, Inc. |
| Tai Mo Shan Limited |
| Talos Trading, Inc. |
| Teneo Strategy LLC |
| Tennessee Department of Revenue - Collections |
| Terminal, Inc. |
| Texas Comptroller of Public Accounts |
| Texas State Securities Board |
| The Block Crypto, Inc. |
| The Cosmopolitan of Las Vegas |
| ThoughtWorks, Inc. |
| Travelbank |
| Troutman Pepper Hamilton Sanders LLP |
| TSX Inc. |
| Tuple |
| Twilio |
| Twitter Online Ads |
| Twitter, Inc. |
| Typeform, S.l. |
| Uber |
| United Airlines |
| UPS |
| US Bank National Association |
| User Testing, Inc. |
| Utah State Tax Commission |
| Valuation Research Corp. |
| Verizon Wireless |
| Vermont Department of Financial Regulation |
| Vijay Kumar B |
| Virginia Department of Taxation |
| Voyager Digital Brokerage Canada Ltd. |
| Voyager Digital Brokerage Ltd. |
| Voyager Digital Holdings, Inc. |
| Voyager Digital Ltd. |
| Voyager Digital NY LLC |
| Voyager Digital, LLC |

| |
|---|
| Voyager Europe |
| Voyager European Holdings ApS |
| Voyager IP, LLC |
| VYGR Holdings, LLC |
| VYGR Management LLC |
| Walkers Corporate Limited |
| Washington State Department of Financial Institutions Securities Division |
| West Virginia Tax Department |
| WeWork Inc. |
| WilliamsMarston LLC |
| Willis Towers Watson PLC |
| Wisconsin Department of Revenue |
| Wrike, Inc. |
| XL Specialty Ins. Company |
| Zapier |
| Zendesk, Inc |
| ZeroFOX, Inc. |