Richard M. Pachulski (admitted *pro hac vice*)
Alan J. Kornfeld
Debra I. Grassgreen (admitted *pro hac vice*)
Jason H. Rosell
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Email:    rpachulski@pszjlaw.com
          akornfeld@pszjlaw.com
          dgrassgreen@pszjlaw.com
          jrosell@pszjlaw.com

*Counsel to Creditor Pierce Robertson*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                              :
In re                                         :  Chapter 11
                                              :
VOYAGER DIGITAL HOLDINGS, INC., *et al.*,     :  Case No. 22-10943 (MEW)
                                              :
                                              :  (Jointly Administered)
        Debtors.[1]                           :
------------------------------------------------------------x

**SUPPLEMENTAL OBJECTION OF PIERCE ROBERTSON
TO FIRST AMENDED DISCLOSURE STATEMENT RELATING
TO THE SECOND AMENDED JOINT PLAN OF REORGANIZATION
OF VOYAGER DIGITAL HOLDINGS, INC. AND ITS DEBTOR AFFILIATES
PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Pierce Robertson ("Robertson"), a creditor in the above-captioned chapter 11 cases (the "Chapter 11 Cases") and the lead plaintiff in the putative class-action litigation filed in the United States District Court for the Southern District of Florida (the "Florida District Court"), captioned *Robertson, et al. v. Cuban, et al.*, No. 1:22-cv-22538-RKA (S.D. Fla. Aug. 10, 2022) (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Voyager Digital Holdings, Inc.'s and Voyager Digital Ltd.'s principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003. Voyager Digital, LLC's principal place of business is 701 S. Miami Ave, 8th Floor, Miami, FL 33131.

DOCS_SF:108056.3

"Robertson Class Action"), by and through his undersigned counsel, respectfully submits this supplemental objection (the "Objection") to the *First Amended Disclosure Statement Relating to the Second Amended Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 498] (the "Amended Disclosure Statement").[2] In support of this Objection, Robertson respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Amended Disclosure Statement and Amended Plan (defined below) address many concerns raised by Robertson in the Original Objection (defined below). Nonetheless, the Amended Disclosure Statement is still inadequate and cannot be approved because, among other things, there is a ***lack of conspicuous language regarding the Amended Plan's protection of Stephen Ehrlich's personal assets and a lack of disclosure regarding the D&O Liability Insurance Policies***. Although the Amended Plan appears to eliminate non-consensual third party releases, Article IV(F)(iii) of the Amended Plan prohibits any party from recording a judgment against Stephen Ehrlich or collecting from Stephen Ehrlich's personal assets. ***This is an inappropriate and blatant attempt by the Debtors to backdoor a non-consensual third party release***. Robertson submits that these personal protections are inappropriate and should be removed entirely from the Amended Plan. However, such protections, at a minimum, must be disclosed upfront and in conspicuous language.

2. Other than with respect to the inappropriate protection of Stephen Ehrlich's personal assets, the Amended Plan eliminates non-consensual third party releases (although the scope of the Injunction is an issue to be addressed at confirmation) and instead allows creditors to

---

[2] A capitalized term used but not defined herein shall have the meaning ascribed to it in the Amended Disclosure Statement.

2

opt-in to the third party releases. However, there is *zero economic benefit to creditors that opt-in to the third party releases*. Accordingly, there is no reason to include the third party releases because a rational actor would never opt-in to such a release. As a result, the third party releases should be removed entirely from the Amended Plan.

3. In addition, the Amended Disclosure Statement fails to adequately disclose the fate of VGX – Voyager's cryptocurrency the Debtors asserted less than three (3) months ago was *worth more than $100 million - twice the cash value of the FTX US purchase price under the Asset Purchase Agreement*.

4. Other key defects of the Amended Disclosure Statement are identified below. Unless the issues identified herein are adequately addressed, the Motion and Amended Disclosure Statement should be denied.

**SUPPLEMENTAL RELEVANT BACKGROUND**

5. On July 24, 2022, the Debtors filed the *Notice of Response to Alameda / FTX Press Release* [Docket No. 137] (the "Response to FTX"). A true and correct copy of the Response to FTX is attached hereto as Exhibit A. Pursuant to the Response to FTX, the Debtors asserted that (a) Alameda Ventures Ltd.[3] and FTX Trading, Ltd.[4] attempted to circumvent the Bidding Procedures Motion by issuing a public proposal to purchase certain of the Debtors' assets (the "FTX Public Proposal"), (b) the way in which the FTX Public Proposal was made chilled bidding and undermined the Debtors' efforts to maximize value, (c) the FTX Public Proposal ignores the tax consequences of "dollarizing" cryptocurrency claims, (d) "the [FTX Public Proposal] would

---

[3] The Amended Plan separately classifies Alameda Ventures Ltd.'s general unsecured claim in Class 4, which is purportedly entitled to vote (although Class 4 is receiving 0% recovery and Alameda Ventures Ltd. is an insider). Robertson reserves all rights with respect to Alameda Ventures Ltd.'s right to vote in these Chapter 11 Cases.

[4] Upon information and belief, Alameda Ventures Ltd., and FTX Trading, Ltd. are affiliates of FTX US, the proposed purchaser of the substantially all of the assets of debtor Voyager Digital, LLC (discussed below).

3

effectively eliminate the VGX token, **which Voyager believes would destroy in excess of $100 million in value** immediately." Response to FTX at p. 2. Finally, the Debtors also criticized the FTX Public Proposal because it would require customers to setup an account on the FTX platform and force customers to choose between cash and retaining their claims, an issue "exacerbated by the fact that FTX US does not support the majority of coins offered on Voyager." *Id.*

6. On September 21, 2022, Robertson filed an objection [Docket No. 443] (the "Original Objection") to the (i) *Motion for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates With Respect Thereto* [Docket No. 289] (the "Motion") and (ii) *Disclosure Statement Relating to the First Amended Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 288] (the "Original Disclosure Statement"). The Original Objection is incorporated herein by reference.

7. On September 28, 2022, the above-captioned debtors and debtors in possession (the "Debtors") filed their *Motion for Entry of an Order (I) Authorizing Entry Into the Asset Purchase Agreement and (II) Granting Related Relief* [Docket No. 472] (the "Sale Motion"). Pursuant to the Sale Motion, the Debtors seek authority to enter into the Asset Purchase Agreement with FTX US for the sale of substantially all of the assets (primarily cryptocurrency) of debtor Voyager Digital, LLC.[5]

8. Pursuant to Section 1.1(a) of the Asset Purchase Agreement, FTX US is purchasing "all Cryptocurrency attributable to Voyager Customer accounts on the Voyager platform."

---

[5] On October 10, 2022, Robertson filed an objection [Docket No. 507] to the Sale Motion.

4

9.  Section 11.1(r) of the Asset Purchase Agreement defines "Cryptocurrency" as "digital currency or crypto asset in which transactions are verified and records maintained by a decentralized system using cryptography, rather than by a centralized authority, including stablecoins, digital coins and tokens, such as security tokens, utility tokens and governance tokens." There is no specific carveout of VGX from the definition of Cryptocurrency.

10. On October 5, 2022, the Debtors filed the Amended Disclosure Statement and the *Second Amended Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 496] (the "Amended Plan").

11. Article II of the Amended Disclosure Statement provides (emphasis added):

> Under the Asset Purchase Agreement, FTX US will purchase all Cryptocurrency on the Voyager platform, other than VGX, at fair market value as of a to be determined date. The fair market value of any Cryptocurrency other than VGX will be calculated by Purchaser reasonably and in good faith based on market practice, available pricing information, and mutually agreed principles. ***Following the sale to FTX US, Voyager will wind down and therefore VGX will have no utility going forward. As a result, VGX may decline in value and may have no value post-consummation of the Plan. FTX US will not be assuming Voyager's obligations related to VGX, but has offered to purchase all VGX in the Debtors' Estates for a purchase price of $10 million***.

## OBJECTION

12. <u>Deadline to File the Plan Supplement</u>.  Pursuant to the Motion, the Debtors seek authority to file the Plan Supplement seven (7) calendar days before the Voting Deadline. This is insufficient time. The Plan Supplement will contain critical information that is crucial for a creditor to determine whether to accept or reject the Amended Plan. For example, the Debtors anticipate including the Customer Migration Protocol and the results of the Special Committee's investigation in the Plan Supplement. The Special Committee's investigation will disclose what claims and causes of action will be retained by the Wind-Down Entity and which parties will be expressly carved out of the Released Parties and the Exculpated Parties – information that is crucial

in determining whether to accept or reject the Amended Plan and what election to make vis-à-vis the releases.

13. <u>Robertson Solicitation Package Letter</u>. There is no economic impact on creditors if they do **not** opt-in to the releases under the Amended Plan. Moreover, as set forth in the Amended Disclosure Statement, general unsecured creditors are likely only to recover ~70%. The Robertson Class Action may be the best opportunity for holders of Allowed Account Holder Claims to be made whole. Accordingly, to the extent the third party releases are not removed from the Amended Plan, Robertson respectfully requests that approval of the Amended Disclosure Statement be conditioned on including a letter from Robertson in the Solicitation Package that informs creditors of the Robertson Class Action and advises them that Robertson recommends that creditors do **not** opt-in to the releases (the "<u>Robertson Insert</u>"). The inclusion of the Robertson Insert is crucial in light of the fact that individual creditor names, which creditors account for the vast majority of creditors in these Chapter 11 Cases, have been redacted from all filings (*e.g.*, the creditor matrix, the schedules of assets and liabilities, and the statements of financial affairs). Under these circumstances, there is no effective way for any party, other than the Debtors, to share dissenting views with impacted creditors with respect to the Amended Plan and the opt-in releases.

14. <u>Disclosure of Dollarized Cryptocurrency</u>. The Amended Plan contemplates "dollarizing" cryptocurrency that is not supported on the FTX US platform. In other words, holders of Allowed Account Holder Claims whose cryptocurrency deposits are not supported by FTX US will receive cash rather than crypto in-kind. As set forth in the Amended Disclosure Statement, this "dollarizing" of cryptocurrency will trigger a taxable event for holders of Allowed Account Holder Claims. However, neither the Amended Disclosure Statement nor the Amended Plan identify which cryptocurrency is subject to "dollarizing" – which means creditors being asked

6

to vote on the Amended Plan do not know if they are receiving crypto in-kind or are being cashed out and incurring additional tax liabilities. This information is critical to deciding whether to accept or reject the Amended Plan and should be included in the Amended Disclosure Statement. For example, in the Response to FTX, the Debtors in fact criticized the FTX Public Proposal because it contemplated "dollarizing" cryptocurrency and "ignore[d] the tax consequences of the transaction-customers *may have to pay capital gains or other tax on distributions, diluting their recovery*." Response to FTX at p. 2 (emphasis added).

15. <u>The Protections Provided to Stephen Ehrlich Must be Conspicuous</u>. Article IV(F) of the Amended Plan provides that (emphasis added):

> . . . (i) **any recovery by the Wind-Down Entity (and the beneficiaries thereof) on account of any Non-Released D&O Claim**, including in each case by way of settlement or judgment, **shall be satisfied solely by and to the extent of the proceeds of the Debtors' available D&O Liability Insurance Policies** after payment from such D&O Liability Insurance Policies of any and all covered costs and expenses incurred in connection with the defense of the Non-Released D&O Claims; (ii) any party, including any trustee or any beneficiary of the Wind-Down Entity, seeking to execute, garnish, or otherwise attempt to collect on any settlement of or judgment in the Non-Released D&O Claims shall do so solely upon available insurance coverage from the Debtors' available D&O Liability Insurance Policies; **(iii) no party shall (a) record any judgment against the Chief Executive Officer, or (b) otherwise attempt to collect, directly or indirectly, from the personal assets of the Chief Executive Officer**. . . .

In other words, the Amended Plan effectively releases Stephen Ehrlich from various estate and third party claims and causes of action by protecting his personal assets. The language above specifically prohibits any party from recording a judgment against Stephen Ehrlich or collecting from Stephen Ehrlich's personal assets. ***This is an inappropriate and blatant attempt by the Debtors to backdoor a non-consensual third party release.***

16. Robertson understands that any objection to the scope of the foregoing release is a confirmation issue, but respectfully submits that such treatment must be described in the Amended

7

Disclosure Statement upfront and in conspicuous language (bold and capitalized) – and not buried in the fine print on page 23 of the Amended Disclosure Statement.

17.     *The Details of the D&O Liability Insurance Policies Must be Disclosed*.  As a result of the Debtors' proposed treatment of Non-Released D&O Claims under the Amended Plan (*i.e.*, limiting recoveries to available D&O Liability Insurance Policies), the Debtors must disclose the details of the D&O Liabilities Insurance Policies (*e.g.*, coverage amounts, claims made to date, etc.) in order to provide adequate information to enable creditors to determine whether to accept or reject the Amended Plan.

18.     *The Value Destruction of VGX Must be Explained*.  As discussed above, less than three (3) months ago, the Debtors asserted that VGX was worth in excess of $100 million – twice the cash value of the FTX US purchase price under the Asset Purchase Agreement.  Now, the Debtors appear willing to either part with VGX for $10 million or allow it to become worthless.  As of October 10, 2022, VGX was trading at approximately $0.46, roughly the same price when the Debtors asserted it was worth $100 million (the price on July 24, 2022 was approximately $0.43 as quoted by https://crypto.com/price/voyager-token).  Creditors deserve an explanation regarding the Debtors' about face – including why the Amended Plan / FTX sale is superior to the previously touted "standalone plan" that contemplated the return of cryptocurrency to customers (thereby avoiding previously feared tax consequences) and the preservation of VGX.

19.     Creditors also deserve an explanation regarding the Debtors' future efforts to preserve the value of VGX.  For example, the Amended Disclosure Statement contemplates the "dollarization" of VGX and estimates recoveries on VGX at 70%.  On debtor Voyager Digital, LLC's schedules, the Debtors reported holding 168,668,452.840068 VGX coins as of the Petition Date.  Pursuant to the Amended Disclosure Statement, the Debtors assume a 70% recovery on

8

VGX based on a July 5, 2022 coin price of $0.24. This means the Debtors anticipate a recovery of $28.3 million from the sale of VGX.

20. It is inexplicable who would buy VGX after the effective date of the Amended Plan at this price (or any price above $0.00) if the token is being cancelled.

## CONCLUSION

21. For the reasons discussed above, the Motion and Amended Disclosure Statement should be denied unless the issues raised herein are adequately addressed.

Dated:  October 11, 2022               PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Jason H. Rosell*
Richard M. Pachulski (admitted *pro hac vice*)
Alan J. Kornfeld
Debra I. Grassgreen (admitted *pro hac vice*)
Jason H. Rosell
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (212) 561-7700
Email: rpachulski@pszjlaw.com
           akornfeld@pszjlaw.com
           dgrassgreen@pszjlaw.com
           jrosell@pszjlaw.com

*Counsel to Creditor Pierce Robertson*

**Exhibit A**

**Response to FTX [Docket No. 137]**

DOCS_SF:108056.3

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | Case No. 22-10943 (MEW) |
| Debtors. | (Jointly Administered) |

**NOTICE OF RESPONSE TO ALAMEDA/FTX PRESS RELEASE**

**PLEASE TAKE NOTICE** that, on July 5, 2022, simultaneously with filing petitions for chapter 11 protection, Voyager Digital Holdings, Inc. and the other above-captioned Debtors (the "Debtors") filed the *Joint Plan of Reorganization of Voyager Digital Holdings, Inc., and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 17] (the "Plan");

**PLEASE TAKE NOTICE** that, on July 21, 2022, the Debtors filed the *Motion Seeking Entry of an Order (I) Approving the Bidding Procedures and Related Dates and Deadlines, (II) Scheduling Hearings and Objection Deadlines With Respect To the Debtors' Sale, and (III) Granting Related Relief* [Docket No. 126] (the "Bidding Procedures Motion"), proposing an organized process (the "Process") to evaluate proposed alternatives to the Debtors' proposed Plan;

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

**PLEASE TAKE NOTICE** that, on July 22, 2022, Alameda Ventures Ltd., and FTX Trading, Ltd. (together, "AlamedaFTX"), issued a press release publicly attaching a proposal to purchase certain assets of the Debtors while attempting to circumvent or ignore the Plan and the Process described in the Bidding Procedures Motion filed the day prior; and

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file a response to AlamedaFTX's press release, attached hereto as **Exhibit A**, and the Debtors expressly **reserve all rights** against Alameda, FTX, all of their affiliates, and each such entity's officers, directors, and agents.

[*Remainder of page intentionally left blank*]

2

| | |
|---|---|
| Dated: July 24, 2022<br>New York, New York | */s/ Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>Christopher Marcus, P.C.<br>Christine A. Okike, P.C.<br>Allyson B. Smith (admitted *pro hac vice*)<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:   (212) 446-4800<br>Facsimile:    (212) 446-4900<br>Email:         jsussberg@kirkland.com<br>                    cmarcus@kirkland.com<br>                    christine.okike@kirkland.com<br>                    allyson.smith@kirkland.com<br><br>*Proposed Counsel to the Debtors and Debtors in Possession* |

# Exhibit A

**Response**

4

Re:  July 22, 2022, Press Release by Alameda and FTX

On July 5, 2022, Voyager filed a proposed stand-alone Plan of Reorganization that would reorganize the company, return to customers all of their cash and as much of the cryptocurrency they placed on Voyager's platform as possible as promptly as possible, and provide customers additional recovery in he form of both the equity of reorganized Voyager and any recovery against Three Arrows Capital.[1]  In parallel, Voyager has engaged with more than 80 third-party investors or buyers to determine whether there is an alternative transaction that would be better for customers than the stand-alone Plan.  On July 21, 2022, Voyager filed a Bidding Procedures Motion seeking to thoroughly and promptly compete that process.[2]

The day after Voyager filed its Bidding Procedures Motion, one of Voyager's competitors and largest stakeholders, Alameda Ventures Ltd. and FTX Trading Ltd. (together, "AlamedaFTX") issued a press release[3] attaching a proposal simultaneously e-mailed to Voyager (the "Proposal"). AlamedaFTX's cover letter openly disparaged Voyager, and the statements AlamedaFTX made to the public about its proposal are, at best, highly misleading.

Voyager will entertain any serious proposal made pursuant to the Bidding Procedures described in its Motion.  It seems clear, however, that AlamedaFTX's Proposal, which was made in contravention of the proposed Bidding Procedures, was designed to generate publicity for itself rather than value for Voyager's customers.

Hopefully customers understand that public dissemination of proposals that subvert a coordinated, confidential, competitive bidding process can have the effect of chilling bidding. AlamedaFTX's actions are **not** value maximizing.   Nevertheless, since the Proposal is now public, we encourage all of our creditors and customers to read it.  Really read it.  And understand it with the benefit of the following analysis.  The AlamedaFTX proposal is nothing more than a liquidation of cryptocurrency on a basis that advantages AlamedaFTX.  It's a low-ball bid dressed up as a white knight rescue.  To anyone who reads the Proposal even in a cursory way, it will be obvious that the stand-alone Plan that Voyager filed is capable of delivering far more value to customers than the AlamedaFTX proposal—which transfers significant value to AlamedaFTX, and completely eliminates the value of assets that are of no interest to AlamedaFTX.

AlamedaFTX essentially proposes a liquidation where FTX serves the role of liquidator. The "fair value" of Voyager's cryptocurrency assets and loans is subject to negotiation with AlamedaFTX.  The Proposal requires converting customer cryptocurrency claims into U.S. dollars based on prices as of July 5, 2022 and paying cryptocurrency claims in U.S. dollars, with customers bearing the tax consequences associated with dollarizing and liquidating their claims.

---

[1]   *Joint Plan of Reorganization of Voyager Digital Holdings, Inc., and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [U.S. Bankruptcy Court for the Southern District of New York, Case No. 22-10943 (MEW), Docket No. 17] (the "Plan")

[2]   *Motion Seeking Entry of an Order (I)Approving the Bidding Procedures and Related Dates and Deadlines, (II) Scheduling Hearings and Objection Deadlines With Respect To the Debtors' Sale, and (III) Granting Related Relief* [U.S. Bankruptcy Court for the Southern District of New York, Case No. 22-10943 (MEW), Docket No. 126] ("the Bidding Procedures Motion")

[3]   https://www.prnewswire.com/news-releases/ftx-proposes-joint-plan-to-offer-early-liquidity-to-voyager-digitals-customers-in-bankruptcy-proceeding-301591902.html

More specifically, the Proposal contemplates a "two-pronged" transaction structure:

- AlamedaFTX purchases Voyager's cryptocurrency assets and cryptocurrency loans at "fair market value," moves the **_cryptocurrency_** into its own account, and moves the **_cash value_** of such assets and loans onto FTX's platform for distribution to customers.

- Customers can elect to open an account with FTX and receive their "share" of the cash through an FTX account.  **No customer will be made whole under the Proposal, nor will any cryptocurrency be returned to customers under the Proposal**.

The Proposal harms customers (but benefits AlamedaFTX) for many reasons, including:

- First, the way in which the AlamedaFTX Proposal was made chills bidding and undermines efforts to maximize value that are inherent in a competitive process.

- Second, the cover letter attached to the Proposal suggests that AlamedaFTX believes customer claims based on cryptocurrency investments are "capped" at the U.S. dollar value of those investments on July 5, 2022.  Voyager disagrees with the premise of AlamedaFTX's cover letter, and Voyager's proposed stand-alone plan is clear that customer claims are not "capped."

- Third, the Proposal requires converting and paying cryptocurrency claims in U.S. dollars.  But it ignores the tax consequences of the transaction—customers may have to pay capital gains or other tax on distributions, diluting their recovery.  By contrast, Voyager's stand-alone plan, as proposed, does not aim to dollarize customer claims.

- Fourth, the Proposal would effectively eliminate the VGX token, which Voyager believes would destroy in excess of $100 million in value immediately.

- Fifth, the Proposal declares that there is no value in the Voyager platform and intellectual property, but simultaneously requires a downward price adjustment if Voyager chooses to keep it and sell it to a third party, which makes no sense.

- Sixth, the Proposal burdens Voyager (and customers) with both migration and wind-down expenses, while requiring customers to set up an account on the FTX platform.

More generally, the Proposal contemplates customers "choosing" to receive cash from FTX or retain their claims.  But that could create chaos in the process and seriously disadvantage customers who choose not to participate in what Voyager believes a value-weaking proposition.  Voyager's ability to reorganize on its own or to consummate a transaction for the remainder of the company to maximize value for all would be at a minimum, stuck in limbo, and potentially forever sacrificed.  This problem is exacerbated by the fact that FTX US does not support the majority of the coins offered on Voyager.

The Proposal also makes several false and misleading assertions.

- First, AlamedaFTX states that it will "write-off" its $75 million loan in an effort to provide additional recovery to customers.  Voyager believes that AlamedaFTX's loan

2

is already structurally subordinated to customer claims—it is not entitled to a recovery on account of its loan unless customers are paid in full first. Indeed, AlamedaFTX's publicly stated rationale for providing the $75 million revolver was to protect customers, which is directly contrary to the suggestion in the Proposal that the loan is now somehow *pari passu* with customer accounts. Accordingly, Voyager's proposed stand-alone plan provides that AlamedaFTX will not receive any distribution. The $75 million "write-off" in the Proposal does not increase customer recoveries at all.

- Second, the Proposal states that AlamedaFTX "is open to including or excluding [FBO cash accounts] from the transaction, as best for customers." But cash held in the FBO account is not property of Voyager and is instead property of its customers. Voyager filed a motion to honor withdrawals by customers from the FBO account, which will be heard by the Bankruptcy Court on August 4, 2022. If approved by the Bankruptcy Court, Voyager will work with Metropolitan Commercial Bank to allow customers to withdraw their cash from the FBO account as quickly as possible. It is at best unclear how the FBO account would be handled by AlamedaFTX under the Proposal, and addressing that issue would be critical if the Proposal were otherwise viable. But because Voyager has already sought to resolve customer cash in the FBO account, inclusion or exclusion of FBO accounts from the Proposal is irrelevant.

- Finally, AlamedaFTX states that it "does not ascribe independent value to the Voyager brand or intellectual property." Voyager strongly disputes this statement, which we do not believe even AlamedaFTX believes. Voyager continues to market a sale of its business to potential strategic investors and will continue working to maximize the value of its business. By insisting that it acquire such assets in the Proposal, but refusing to pay for them, AlamedaFTX proposes to pay a reduced price for Voyager's business, further reducing any distributions to customers.

AlamedaFTX's proposal purports to allow customers to be "long crypto" while receiving cash on account of their claim. But all AlamedaFTX's proposal actually does is buy customers' claims at a discount. Again, Voyager has already filed a proposed stand-alone Plan that would reorganize the company, return to customers all of their cash and as much of the cryptocurrency they placed on Voyager's platform as possible as promptly as possible, and provide customers upside in both the value of reorganized Voyager and any recovery from Three Arrows Capital. And Voyager will consider **any serious proposal** that is better for customers than the proposed stand-alone Plan as part of the orderly process described in Voyager's Bidding Procedures Motion.

In the interim, many third parties have speculated that AlamedaFTX—because of its various relationships with Voyager, including as creditor, lender, and equity holder—had an "inside track" to acquire Voyager on some type of sweetheart transaction terms. Nothing could be further from the truth as evidenced by this response. Voyager's process will not be obstructed by anyone, including Alameda/FTX.

By making its Proposal publicly in a press release laden with misleading or outright false claims, AlamedaFTX violated many obligations to the Debtors and the Bankruptcy Court. Voyager reserves all rights and remedies against AlamedaFTX for its clear and intentional subversion of the bankruptcy process and the damages that may be suffered by customers and other

3

creditors as a result.  Voyager will remain steadfast in its restructuring process, continuing to work toward a value-maximizing transaction that is beneficial to Voyager's customers and stakeholders.

4