Hearing Date: October 19, 2022 @ 2:00 p.m. (prevailing Eastern Time)
Re: Docket No.: 289

**MCDERMOTT WILL & EMERY LLP**
Darren Azman
Joseph B. Evans
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone: (212) 547-5400
Facsimile: (212) 547-5444

**MCDERMOTT WILL & EMERY LLP**
Charles R. Gibbs (*pro hac vice* pending)
Grayson Williams (*pro hac vice* pending)
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201-1664
Telephone: (214) 295-8000
Facsimile: (972) 232-3098

*Counsel to the Official Committee of
Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*, | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF FILING OF REDACTED OBJECTION OF THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' MOTION FOR
ENTRY OF AN ORDER APPROVING (I) THE ADEQUACY OF THE AMENDED
DISCLOSURE STATEMENT, (II) SOLICITATION AND NOTICE PROCEDURES,
(III) FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, AND
(IV) CERTAIN DATES WITH RESPECT THERETO**

**PLEASE TAKE NOTICE** that on October 12, 2022, the Official Committee of

Unsecured Creditors (the "Committee") appointed in the above-captioned chapter 11 cases of

Voyager Digital Holdings, Inc., *et al.* (collectively, the "Debtors") filed the *Objection of the*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Voyager Digital Holdings, Inc.'s and Voyager Digital Ltd.'s principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003. Voyager Digital, LLC's principal place of business is 701 S. Miami Ave, 8th Floor, Miami, FL 33131.

*Official Committee of Unsecured Creditors to Debtors' Motion for Entry of an Order*

*Approving (I) the Adequacy of the Amended Disclosure Statement, (II) Solicitation and*

*Notice Procedures, (III) Forms of Ballots and Notices in Connection Therewith, and (IV)*

*Certain Dates With Respect Thereto* (the "Objection") under temporary seal in accordance

with the *Common Interest and Confidentiality Stipulation and Protective Order* [Docket No.

408] (the "Protective Order").

      **PLEASE TAKE FURTHER NOTICE** that the Committee hereby files the redacted

version of the Objection, attached hereto as **Exhibit A**.

      **PLEASE TAKE FURTHER NOTICE** that although the Committee's position is

that the redacted information is not protected information subject to Bankruptcy Code section

107, the Committee is obligated to redact such information in accordance with the Protective

Order.

      **PLEASE TAKE FURTHER NOTICE** that pursuant to the Protective Order, upon

the filing of a notice by the Committee and unless the Debtors provide written notice to the

Committee and file a sealing motion on or before October 19, 2022, the temporary seal will

be lifted.

      **PLEASE TAKE FURTHER NOTICE** that copies of all documents filed in these

chapter 11 cases may be obtained free of charge by visiting the website of Stretto at

https://cases.stretto.com/Voyager.  You may also obtain copies of any pleadings by visiting

the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and

fees set forth therein.

Dated:  New York, New York          **McDermott Will & Emery LLP**
        October 12, 2022

                                    */s/ Darren Azman*
                                    Darren Azman
                                    Joseph B. Evans
                                    One Vanderbilt Avenue
                                    New York, NY 10017-3852
                                    Telephone: (212) 547-5400
                                    Facsimile: (212) 547-5444
                                    E-mail: dazman@mwe.com
                                    E-mail: jbevans@mwe.com

                                    and

                                    Charles R. Gibbs (admitted *pro hac vice*)
                                    Grayson Williams (admitted *pro hac vice*)
                                    2501 North Harwood Street, Suite 1900
                                    Dallas, TX 75201
                                    Telephone: (214) 295-8000
                                    Facsimile: (972) 232-3098
                                    E-mail: cgribbs@mwe.com
                                    E-mail: gwilliams@mwe.com

                                    and

                                    Gregg Steinman (admitted *pro hac vice*)
                                    333 SE 2nd Avenue, Suite 4500
                                    Miami, FL 33131-2184
                                    Telephone: (305) 329-4473
                                    Facsimile: (305) 503-8805
                                    E-mail: gsteinman@mwe.com

                                    *Counsel to the Official*
                                    *Committee of Unsecured Creditors*

**<ins>EXHIBIT A</ins>**

**Objection**

**MᴄDᴇʀᴍᴏᴛᴛ Wɪʟʟ & Eᴍᴇʀʏ LLP**
Darren Azman
Joseph B. Evans
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone: (212) 547-5400
Facsimile: (212) 547-5444

**MᴄDᴇʀᴍᴏᴛᴛ Wɪʟʟ & Eᴍᴇʀʏ LLP**
Charles R. Gibbs (admitted *pro hac vice*)
Grayson Williams (admitted *pro hac vice*)
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201-1664
Telephone: (214) 295-8000
Facsimile: (972) 232-3098

*Counsel to the Official Committee of
Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*, | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO
DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING (I) THE ADEQUACY
OF THE AMENDED DISCLOSURE STATEMENT, (II) SOLICITATION AND NOTICE
PROCEDURES, (III) FORMS OF BALLOTS AND NOTICES IN CONNECTION
THEREWITH, AND (IV) CERTAIN DATES WITH RESPECT THERETO**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the

above-captioned chapter 11 cases (the "Chapter 11 Cases") of Voyager Digital Holdings, Inc., *et*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Voyager Digital Holdings, Inc.'s and Voyager Digital Ltd.'s principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003. Voyager Digital, LLC's principal place of business is 701 S. Miami Ave, 8th Floor, Miami, FL 33131.

*al.* (collectively, the "Debtors") hereby submits the *Objection of the Official Committee of Unsecured Creditors to Debtors' Motion for Entry of an Order Approving (I) the Adequacy of the Amended Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates With Respect Thereto* (the "Objection") to the Debtors' motion [Docket No. 289] (the "Motion") seeking approval of the *First Amended Disclosure Statement Relating to the Second Amended Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 498] (as may be amended, modified, or supplemented, the "Amended Disclosure Statement").[2] In support of the Objection, the Committee respectfully states as follows:[3]

## PRELIMINARY STATEMENT

1.      Since the Committee's appointment, the Committee and its professionals have been laser focused on two primary goals: (1) a prompt recovery to allow Voyager's account holders to regain access to their hard-earned funds, which have been frozen since June 2022, and (2) maximizing the value of the Debtors' estates to ensure a significant recovery to the Debtors' unsecured creditors. The Committee has been steadfast in these pursuits, working quickly and collaboratively with the Debtors and their advisors in connection with a two-week long auction

---

[2]     October 5, 2022, the Debtors filed the Amended Disclosure Statement and their *Second Amended Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 496] (as may be amended, modified, or supplemented, the "Second Amended Plan"). Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Second Amended Plan.

[3]     The Committee remains in active dialogue with the Debtors and the Special Committee (as defined below) regarding the issues addressed in this Objection. Although the Debtors granted the Committee a limited extension to the objection deadline, in light of the timing of the upcoming October 19 hearing in connection with approval of the Debtors' Disclosure Statement, the Committee believed it appropriate to inform the Court and other parties-in-interest regarding the status of the Committee's investigation and current view of the Second Amended Plan and corresponding Amended Disclosure Statement. To the extent the Second Amended Plan or Amended Disclosure Statement are further revised in advance of the hearing, the Committee reserves its right to assert a supplemental objection or otherwise modify the positions taken in this Objection.

process, which ultimately resulted in FTX US being selected by the Debtors, after consultation

with the Committee, as the highest and otherwise best bid to consummate the Sale Transaction.

2.      The Committee remains fully supportive of the Sale Transaction, as the

Committee believes that its consummation will maximize recoveries to the Debtors' unsecured

creditors in the most timely, efficient, and effective manner. But recognizing the critical

importance of this transaction for the Debtors' account holders—dozens of whom have filed

letters on the docket describing the financial hardship that this bankruptcy has caused them—the

Debtors appear to have inexplicably conditioned the proposed Second Amended Plan (and

consummation of the Sale Transaction) on broad releases for Voyager's directors and officers.

This attempt to protect the individuals principally responsible for the Debtors' financial woes is

particularly egregious given that (i) there are colorable and valuable causes of action against

these directors and officers, (ii) the releases are extraneous to effectuation of the Sale

Transaction, and (iii) the beneficiaries of the releases are providing the Debtors with **<u>no</u>**

**<u>consideration whatsoever</u>** in exchange for the releases. The Debtors (or their successor) are left

only with limited means to pursue these causes of action against depleting insurance policies,

which likely results in little or no recovery benefiting unsecured creditors.

3.      In so doing, the Debtors are seeking to take advantage of the critical importance

that the timely consummation of the Sale Transaction provides their account holders by tying the

releases to approval of the Second Amended Plan. As a result, the Debtors have presented the

Committee and its constituents with a Hobson's choice: either support consummation of the Sale

Transaction and the Second Amended Plan, together with effectively full and complete releases

of the Debtors' directors and officers, or risk these Chapter 11 Cases devolving into a morass of

litigation, to the sole detriment of unsecured creditors, whose assets will continue to remain

frozen for a far longer period of time.

4.      To appropriately evaluate the proposed releases in the Second Amended Plan, the

Committee conducted its own extensive investigation of the Debtors' pre-petition conduct. The

findings are sobering. ███████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████

5.      The Special Committee, composed of two independent directors and represented

by Quinn Emanuel, also investigated the very same pre-petition conduct based on the same facts.

Indeed, the Special Committee retains *sole authority* to prosecute, settle, or extinguish any and

all claims or causes of action on behalf of the Debtors. And yet, the Debtors have not produced

the investigation report, or provided any indication of the Special Committee's findings in the

Amended Disclosure Statement. Rather, the Debtors are proceeding full steam ahead into a disclosure statement hearing with a plan that provides substantial releases for the Debtors' officers and directors, with no legal or factual basis to support those releases and no disclosures to the Debtors' stakeholders as to the appropriateness of those releases.

6.      The irony, of course, is that the Committee remains fully supportive of the Sale Transaction and the majority of the Second Amended Plan, but not the releases contained therein.[4] And the Debtors, acting through the Special Committee, should be too. The Sale Transaction is not contingent on the broad releases contained in the Second Amended Plan, and if the Debtors (or the Court) excised such releases from the Second Amended Plan, both the Sale Transaction and the Second Amended Plan could be consummated quickly for the benefit of the Debtors' creditors. But because the Debtors have linked them together, the Debtors' creditors may be left holding the bag; after all, by not supporting the Debtors' Second Amended Plan and the releases contained therein, creditors risk costly delays and reduced recoveries.

7.      Chapter 11, at its core, is focused on maximization of value for creditors. And, in some instances, broad releases further that goal because they provide parties who are willing to contribute valuable consideration to a debtor's estate with certainty and finality. But where, as here, there are valuable causes of action that are proposed to be released in exchange for no consideration whatsoever, Chapter 11's core principle compels the rejection of those releases, particularly where the removal of those releases would have no effect on the Debtors' ability to consummate the Sale Transaction on a stand-alone basis.

---

[4]    The Committee has a number of unresolved issues with the Second Amended Plan. To the extent that these issues are not resolved consensually, the Committee will raise these objections in advance of the Confirmation Hearing.

8.     The Committee believes that the releases contained in the Debtors' Second

Amended Plan are unnecessary, overbroad, self-serving, and threaten to derail the significant

progress made in these Chapter 11 Cases. What's more, the extremely limited exception to these

releases (which allows pursuit of insurance proceeds) is not likely to provide material recovery to

the Debtors' estates. This Court should require the Debtors (and the Special Committee) to put

forward significant disclosures regarding the asserted appropriateness of the release provisions

given that they effectively absolve the Debtors' directors and officers of significant causes of

action for no consideration. In the absence of such disclosure, the Debtors should not be

permitted to solicit the Second Amended Plan unless they excise the releases of the Debtors'

directors and officers. Until these changes are made, the Debtors' Motion for approval of the

Amended Disclosure Statement should be denied.

## **BACKGROUND**

### I.     **The Chapter 11 Cases**

9.     On July 5, 2022 (the "Petition Date"), the Debtors commenced the Chapter 11

Cases by filing petitions for relief under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code"). The Debtors continue to operate their businesses and manage their

properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

10.     On July 19, 2022, the Office of the United States Trustee for the Southern District

of New York appointed the Committee pursuant to Bankruptcy Code section 1102(a). Docket

No. 102.

11.     The Chapter 11 Cases were originally proceeding on a dual track, with the

Debtors pursuing both a restructuring pursuant to the *First Amended Joint Plan of*

*Reorganization of Voyager Digital Holdings, Inc. And Its Debtor Affiliates Pursuant to Chapter*

11 of the Bankruptcy Code [Docket No. 287] (the "Stand-Alone Restructuring") and a sale of the

company either pursuant to an alternative plan or under Bankruptcy Code section 363 (the

"Third-Party Transaction"). In connection with a potential Third-Party Transaction, the Debtors

sought and obtained entry of an order establishing bidding procedures for a potential sale

[Docket No. 248] (the "Bid Procedures Order"). As contemplated by the Bid Procedures Order,

the Debtors conducted a postpetition marketing effort to solicit bids from various potential

transaction partners. Beginning on September 13, 2022, a two-week auction was held during

which multiple interested parties submitted bids.

12.     At the conclusion of the auction, the Debtors, in consultation with the Committee,

selected West Realm Shires Inc. ("FTX US") as the winning bidder. *See* Docket No. 457. On

September 28, 2022, the Debtors filed the Asset Purchase Agreement by and between FTX US,

as Purchaser, and Voyager Digital, LLC, as Seller (the "APA") as Exhibit B to the *Debtors'*

*Motion for Entry of An Order (I) Authorizing Entry Into the Asset Purchase Agreement and (II)*

*Granting Related Relief* [Docket No. 472]. As set forth in the APA, the sale will be

consummated (the "Sale Transaction") through confirmation of a chapter 11 plan, and thus the

Debtors stopped pursuing the Stand-Alone Restructuring.

**II.     The Second Amended Plan and Amended Disclosure Statement**

13.     On July 6, 2022, the Debtors filed their *Joint Plan of Reorganization of Voyager*

*Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*

[Docket No. 17] (the "Original Plan"). On August 12, 2022, the Debtors filed their *First*

*Amended Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and Its Debtor*

*Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 287] (the "First Amended

Plan") and *Disclosure Statement Relating to the First Amended Joint Plan of Reorganization of*

7

*Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the*

*Bankruptcy Code* [Docket No. 288] (the "Original Disclosure Statement"). Both the Original

Plan and the First Amended Plan contemplated broad releases to the Debtors' directors and

officers, but each contained a footnote expressly indicating that those provisions remain subject

to the Special Committee's (as defined below) ongoing investigation.

14.     On October 5, 2022, the Debtors filed the Amended Disclosure Statement and

Second Amended Plan. The Second Amended Plan removed the footnote described above

indicating that the release provisions remain subject to the Special Committee's ongoing

investigation. And although the Second Amended Plan does preserve some ability of the Wind-

Down Trust to pursue certain causes of action against Mr. Ehrlich under Art. IV.F., that ability is

significantly limiting and likely would result in little or no proceeds ultimately flowing to the

Debtors' estates.

15.     The Motion was scheduled to be heard on September 16, 2022 (the "Initial

Disclosure Statement Hearing"), but the hearing was continued twice and is currently scheduled

for October 19, 2022.

**III.    The Special Committee and Committee Investigations**

16.     On the Petition Date, the board of directors of Debtor Voyager LLC established a

special committee (the "Special Committee"), comprising independent directors Timothy Pohl

and Jill Frizzley, and vested the Special Committee with authority to, among other things: (i)

investigate any historical transactions relating to Voyager LLC; (ii) investigate any potential

estate claims and causes of action against insiders of Voyager LLC, including claims arising

from its loan to Three Arrows Capital ("3AC"); and (iii) perform any other activities consistent

with the foregoing that the Special Committee or Voyager LLC's board otherwise deemed

necessary or appropriate. Furthermore, the Special Committee was vested with the "sole authority to prosecute, settle, or extinguish any and all claims and causes of action arising from the historical transactions that are investigated by the Special Committee."

17.     On July 16, 2022, the Special Committee retained Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), with such retention being approved by the Court on August 4, 2022. *See* Docket No. 242. Quinn Emanuel, at the direction of the Special Committee, led an investigation in accordance with the Special Committee Mandate (the "SC Investigation"). The Special Committee served informal document requests on the Debtors, and later conducted informal interviews of certain key directors, officers, and employees of the Debtors.

18.     To ensure that the SC Investigation was fair, comprehensive, and transparent, the Committee conducted its own investigation alongside the Special Committee (the "UCC Investigation"). The Debtors and the Special Committee agreed to cooperate with the Committee, which included producing documents to the Committee and allowing the Committee to participate in the informal interviews. The Committee expected that the Special Committee would complete its investigation on or before the Initial Disclosure Statement Hearing. However, to date, the Special Committee has not produced a report or a summary of its findings to the Committee.

19.     Moreover, the Debtors have not included *any* information about the SC Investigation in the Amended Disclosure Statement. The Amended Disclosure Statement merely states that (i) the SC Investigation remains ongoing and (ii) to the extent the Special Committee determines there are viable claims, such parties will be carved out of the releases. Amended Disclosure Statement, Art. III(M). As noted above, however, the footnotes stating that the releases were subject to the ongoing investigation have been deleted. And the Second Amended

Plan itself offers no indication that releases of directors and officers will be stripped out, or

otherwise not approved by the Special Committee.

20.     As noted above, the UCC Investigation revealed ████████████████████

██████████████████████████████████████████████████████████

████████████████████████████ The Committee believes that these

causes of action, if pursued, can result in significant additional proceeds flowing to the Debtors'

estates, which would materially increase recoveries to the Debtors' unsecured creditors.

## OBJECTION

## I.     The Amended Disclosure Statement Fails to Provide Adequate Information.

21.     Bankruptcy Code section 1125 prohibits solicitation of votes on a chapter 11 plan

prior to court approval of a written disclosure statement containing "adequate information." See

11 U.S.C. § 1125(b). "Adequate information" is:

> information of a kind, and in sufficient detail, as far as is reasonably
> practicable in light of the nature and history of the debtor and the
> condition of the debtor's books and records . . . that would
> enable . . . a hypothetical reasonable investor typical of holders of
> claims or interests of the relevant class to make an informed
> judgment about the plan . . .

11 U.S.C. § 1125(a)(1); *see also Momentum Mfg. Corp. v. Employee Creditors Comm. (In re

Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994).

22.     The fundamental purpose of a disclosure statement is to provide creditors with

sufficient information to allow them to make an informed choice on whether to approve or reject

the plan. *See In re Duratech Indus.*, 241 B.R. 291, 298 (Bankr. E.D.N.Y. 1999), *aff'd*, 241 B.R.

283 (E.D.N.Y. 1999). To this end, a disclosure statement must provide sufficient information to

apprise creditors of the risks and financial consequences of the proposed plan. *In re McLean

Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) ("[S]ubstantial financial information with

respect to the ramifications of any proposed plan will have to be provided to, and digested by, the creditors and other parties in interest in order to arrive at an informed decision concerning the acceptance or rejection of a proposed plan"). Although adequacy of disclosure is determined on a case-by-case basis, the disclosure must, at a minimum, "contain simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible [Bankruptcy] Code alternatives so that [creditors] can intelligently accept or reject the plan." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988).

23.      The "adequate information" requirement establishes a floor, not a ceiling, for disclosure to creditors. *In re Adelphia Commc'ns Corp.*, 352 B.R. 592, 596 (Bankr. S.D.N.Y. 2006) (citing *Century Glove, Inc. v. First Am. Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988)). Once the adequate information floor has been satisfied, debtors may include additional information, provided such information is accurate and its inclusion is not misleading. *Adelphia*, 352 B.R. at 596.

24.      The importance of the disclosure requirements of section 1125 cannot be overstated, particularly in cases like these. Because the Bankruptcy Code defines "adequate information" by reference to the "typical" holder in the "relevant class," the level of disclosure that is "adequate" necessarily varies based upon the particular characteristics of a given creditor group. *See In re Bloomingdale Partners*, 155 B.R. 961, 972 (Bankr. N.D. Ill. 1993) ("Depending on the level of sophistication among 'typical' holders in each 'relevant class', the required information for each relevant class may vary."). Thus, "a proper disclosure statement must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991) (emphasis added). In these Chapter 11 Cases, "average"

creditors are the Debtors' customers, consisting primarily of unrepresented individuals with
minimal legal experience, many of whom have expressed concerns—through letters filed on the
Court's docket—regarding wrongdoing by the Debtors' directors and officers. Accordingly, if
there were ever cases that demanded heightened disclosure regarding potential releases, it is
these. In light of this reality, the information contained in the Amended Disclosure Statement is
woefully inadequate.

> **A.      The Amended Disclosure Statement Fails to Provide Information Regarding the Second Amended Plan's Releases.**

25.      The Second Amended Plan and Disclosure Statement fail to provide creditors
with sufficient information regarding the scope, application, and propriety of the releases. In fact,
the Committee (and likely most creditors) is puzzled as to the release provisions that the Debtors
are actually seeking approval to solicit. Not only should the Debtors be required to identify, with
specificity, the extent and application of the releases that they seek, but they should be required
to articulate the basis for those releases (including the limitations contained with respect to
insurance proceeds) and the position of the Debtors and Special Committee with respect to the
appropriateness of these provisions. The Amended Disclosure Statement must therefore be
further amended to include sufficient information for creditors to be informed of the nature and
breadth of those releases.

26.      ***First***, it is not clear that the Debtors are seeking releases of the Debtors' directors
and officers. Although, as noted above, the Original Plan, First Amended Plan, and Original
Disclosure Statement contained express reservations that such releases remain subject to the SC
Investigation, no such language is included in the Second Amended Plan. That said, the
definitions of "Releasing Parties" and "Released Parties" remain bracketed, while the Disclosure
Statement appears to read as though each of those parties are entitled to releases. The Debtors

12

should not be permitted to solicit votes on a plan that remains subject to change on this critical

issue, as creditors will not be able to assess the appropriateness of release provisions that are

bracketed and remain subject to change.

27.      *Second*, the Amended Disclosure Statement provides no description of either the

SC Investigation or the UCC Investigation. The Amended Disclosure Statement merely states

that the SC Investigation is ongoing, provides no description of the Special Committee's efforts

to investigate these matters (including serving informal document requests and conducting a

dozen informal interviews), and does not provide any factual findings or conclusions in

connection with this investigation. And yet, the Disclosure Statement provides a perfunctory

statement that the Released Parties "made substantial and valuable contributions" to the Chapter

11 Cases. Amended Disclosure Statement, Art. III(M). Not only is that insufficient legal support

to establish that the releases of directors and officers are permitted, but it provides creditors with

little or no disclosure regarding these matters.

28.      Indeed, after two and a half months, multiple document requests, and twelve

interviews, the Debtors unfairly expect creditors to adequately evaluate releases of directors and

officers with zero information about the SC Investigation. The Debtors fail to even inform

creditors when the SC Investigation will conclude, and how and when the conclusions of the

investigation will be communicated to voting parties so that they have full information before

casting their ballots. Instead, the Debtors merely kick the can down the road.

29.      *Third*, certain of the Second Amended Plan's release provisions are inconsistent

with one another and raise certain questions regarding the application of the releases. By way of

example, Article VIII provides for full and complete releases of the Voyager Released

Employees, but carves out acts for gross negligence, willful misconduct, and actual fraud. But

then Article IV.F provides for a limited carve-out from the releases with the ability of the Wind-Down Trust to pursue certain "Non-Released D&O Claims" (with significant restrictions on such pursuit), but only with respect to Mr. Ehrlich in connection with the 3AC loan approval. It is unclear whether these "Non-Released D&O Claims" would also include any causes of action against other directors and officers for gross negligence, willful misconduct, or actual fraud.

30.     Similarly, Article IV.F preserves the "Non-Released D&O Claims" but only "against the Debtors' Chief Executive Officer that are expressly related to approval of the 3AC Loan **and not released pursuant to the Plan**." Given that Article VIII of the Second Amended Plan provides an extremely broad release of the Voyager Released Employees and specifically releases Mr. Ehrlich for claims relating to the 3AC Loan, it appears that the bolded and underline language would render the rest of Article IV.F meaningless. Although this result is presumably not the intent of the Debtors, the language of the Second Amended Plan must be modified to be precise as to what is (and what is not) being released under the Second Amended Plan.

31.     Prior to spending significant sums of money to solicit the Second Amended Plan and Amended Disclosure Statement to the Debtors' creditors, the Debtors must remedy these issues. In the absence of further disclosures and clarity regarding the nature, extent, and appropriateness of the releases of the Debtors' directors and officers, the Amended Disclosure Statement should not be approved.

**B.      To the Extent the Second Amended Plan Includes Broad Releases of the Debtors' Directors and Officers, Such Provisions are Inappropriate and Impermissible**

32.     A chapter 11 plan may, of course, "provide for the settlement or adjustment of any claim or interest belonging to the debtor or the estate." *See* 11 U.S.C. § 1123(b)(3)(A). "Courts analyze settlements under section 1123 by applying the same standard applied under Rule 9019 of the Bankruptcy Rules." *In re NII Holdings, Inc.*, 536 B.R. 61, 98 (Bankr. S.D.N.Y.

14

2015); *Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co., Inc.)*, 177 B.R. 791, 794

n. 4 (S.D.N.Y. 1995) ("Irrespective of whether a claim is settled as part of a plan pursuant to

section 1123(b)(3)(A) of the Bankruptcy Code or pursuant to separate motion under Bankruptcy

Rule 9019, the standards applied by the Bankruptcy Court for approval are the same."), *aff'd*, 68

F.3d 26 (2d Cir. 1995); *In re Woodbridge Grp. of Companies, LLC*, 592 B.R. 761, 772 (Bankr.

D. Del. 2018) ("The standards for approving settlements under Rule 9019 or as part of a plan are

the same."). The Second Amended Plan sets forth exceedingly broad releases in favor of the

Debtors' directors and officers. *See* Second Amended Plan, Art. VIII.B. For the reasons

discussed below, among others, the releases are impermissible.

33.    As an initial matter, the broad release provisions in favor of the Debtors' directors

and officers are unjustifiable because the Debtors are not receiving *any* consideration in

exchange for such releases, notwithstanding the presence of viable and valuable causes of action

against the directors and officers that may significantly impact recoveries for unsecured

creditors. Nor are such releases required by FTX US to close the Sale Transaction.

34.    Yet, in the face of these significant hurdles, the Debtors take the position that the

release provisions are justified because the Released Parties "have made substantial and valuable

contributions to the Debtors' chapter 11 process through efforts to market and sell the Debtors'

assets and negotiate and implement the Plan." Amended Disclosure Statement, Art. III(M). In

other words, the Debtors believe that the directors and officers should receive releases for

continuing to do their jobs during the Chapter 11 Cases. However, simply doing a job that you

are already being compensated for is not a "substantial contribution" that warrants releases. *See*

*In re Congoleum Corp.*, 362 B.R. 167, 193 (Bankr. D.N.J. 2007) (finding that any contributions

of the D&Os in the form of negotiating the chapter 11 plan while also managing to continue the

company's profitability was "unpersuasive" to justify their release "because the officers and

directors have been paid millions of dollars post-petition to do just that").

35.     Even assuming sufficient consideration was being provided in exchange for the

Debtors' proposed releases of directors and officers (which it is not), the Debtors are unable to

demonstrate that these releases are permissible without providing additional evidence meriting

inclusion in the Second Amended Plan. In determining whether to approve a debtor's release of

non-debtors in a chapter 11 plan, courts have considered: (1) whether there is an identity of

interest between the debtor and non-debtor such that a suit against the non-debtor will deplete the

estate's resources; (2) whether there is a substantial contribution to the plan by the non-debtor;

(3) the necessity of the release to the reorganization; (4) whether there is an overwhelming

acceptance of the plan and release by creditors and interest holders; and (5) whether the plan

provides for payment of all or substantially all of the claims of creditors and interest holders. *See,

e.g.*, *In re Wash. Mut., Inc.*, 442 B.R. 314, 346 (Bankr. D. Del. 2011) (citing *In re Zenith Elecs.

Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999)); *In re Indianapolis Downs, LLC*, 486 B.R. 286,

303 (Bankr. D. Del. 2013) (applying the same five-factor test).

36.     The releases of the Debtors' directors and officers contained in the Second

Amended Plan fail to satisfy at least four of the five *Zenith* factors: (i) there is no identity of

interest between many of the released parties and the Debtors; (ii) the Debtors are not receiving

any consideration in exchange for these releases; (iii) the releases of the Debtors' directors and

officers are not necessary to a reorganization because the Debtors are not reorganizing; and (iv)

the Debtors' Second Amended Plan indicates that it is unlikely that all or substantially all

creditors will be paid in full.

37.     The remaining factor—whether there is an overwhelming acceptance of the plan and release by creditors—cannot be evaluated until the Confirmation Hearing. Complicating this factor even further, it is reasonable to expect that many (if not most) creditors who may vote to accept the Second Amended Plan will have done so despite their objection to the releases because they will not want to cause further delay in receiving distributions. This appears to be precisely what the Debtors are counting on; the Debtors are inappropriately leveraging the financial hardship (which they caused) of the Debtors' customers by dangling prompt payment—but **only if** they agree to the releases of the Debtors' directors and officers. Thus, accepting votes of the Debtors' customers should not be considered indicative of whether creditors actually support the releases proposed in the Debtors' Second Amended Plan. Put simply, confirmation of the Second Amended Plan is the only option currently available to returning cryptocurrency to customers quickly, and the Debtors have inappropriately hijacked the process to extract otherwise patently impermissible releases from the Debtors' customers. The Debtors should not be permitted to gain unfair leverage in this fashion.

38.     Although the propriety of the proposed releases is an issue for the Confirmation Hearing (assuming the Debtors remedy the disclosure issues identified above), the Court should require the Debtors to add a third option on the voting ballots to be distributed to the Debtors' creditors. Specifically, the Committee respectfully requests that voting ballots include a third option stating: **ACCEPT** (vote FOR) the Plan but **OBJECT** to the releases of the estate claims against directors and officers. Doing so will provide the Court with additional information at confirmation to determine whether overwhelming acceptance of the Second Amended Plan *actually* weighs in the Debtors' favor. Although the Committee does not believe that this simple modification of the solicitation materials infringes on the Debtors' exclusivity, out of an

abundance of caution and solely to the extent the Court believes necessary, the Committee seeks limited relief under Bankruptcy Code section 1121 to effectuate this modification. Of course, amending the Second Amended Plan to remove the releases of directors and officers resolves these glaring deficiencies and would permit the Debtors to proceed with confirmation of a further modified Second Amended Plan.

## II.    The Committee Should be Authorized to Send a Letter to Voting Creditors.

39.    As described above, the Amended Disclosure Statement does not describe the SC Investigation or the UCC Investigation. It devotes a single paragraph to its description of the SC investigation that merely states that the SC Investigation is ongoing and a promise that if viable claims exist, the Debtors will carve out those claims from the release provisions. The Committee has a duty to ensure that its constituents are adequately informed regarding its investigation of these issues and, prior to voting whether to accept or reject the Second Amended Plan, that creditors have the benefit of reviewing the Committee's recommendation.

40.    Accordingly, the Committee respectfully requests that it be permitted to send a letter, which it intends to file in advance of the upcoming hearing (the "Committee Letter"), and which will contain information regarding the UCC Investigation and a recommendation to general unsecured creditors regarding the Second Amended Plan. Courts routinely authorize committees to send letters to creditors setting forth the committee's position on proposed plans. *See, e.g.*, *In re Purdue Pharma L.P.*, Case No. 19-23469 (Bankr. S.D.N.Y. 2019) (allowing creditors' committee to send letter outlining the committee's position on the proposed plan); *In re Hooper Holmes, Inc., D/B/A Provant Health, et al.*, No. 18-23302 (Bankr. S.D.N.Y. 2018) (approving letter from official committee of unsecured creditors urging creditors to vote in favor of plan). Therefore, the Committee respectfully requests that the Court authorize the Committee

Letter to be sent to general unsecured creditors so that they properly evaluate the Second

Amended Plan and the Amended Disclosure Statement.

## **RESERVATION OF RIGHTS**

41.    This Objection is submitted without prejudice to, and with a full reservation of,

the Committee's rights to object to confirmation of the Second Amended Plan on any basis, or to

supplement this Objection in writing or at the hearing on the Amended Disclosure Statement

including, without limitation, in the event the Debtors further amend or otherwise modify the

Amended Disclosure Statement or the Second Amended Plan. The Committee also reserves its

right to object to the Amended Disclosure Statement and Second Amended Plan to the extent

that any plan supplement materials filed by the Debtors materially impact distributions to

creditors.[5]

## **CONCLUSION**

WHEREFORE, for the reasons stated, the Committee respectfully requests that this

Court: (i) deny approval of the Amended Disclosure Statement at this time; or, alternatively,

(ii) to the extent this Court determines approval of the Amended Disclosure Statement is

warranted, (x) condition such approval on, and delay solicitation of the Second Amended Plan

pending, the revision of the Amended Disclosure Statement and proposed solicitation materials

as described in this Objection, and (y) authorize the Committee Letter to be sent to Holders of

Account Holder Claims and General Unsecured Claims in a manner determined by the

---

[5]    Pursuant to the Second Amended Plan, the Plan Supplement will include the Schedule of Retained Causes of Action and the Restructuring Transactions Memorandum. The Debtors have not provided such documents to the Committee and the Second Amended Plan does not grant the Committee consent rights over such documents. Both documents may have a material impact on the Committee's position with respect to the Second Amended Plan and creditor distributions. For example, the Committee may disagree with claims that are excluded from the Schedule of Retained Causes of Action.

Committee, including, without limitation, as part of the Debtors' solicitation package; and (iii)

grant the Committee such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         October 12, 2022

MCDERMOTT WILL & EMERY LLP

*/s/ Darren Azman*
Darren Azman
Joseph B. Evans
One Vanderbilt Avenue
New York, NY 10017-3852
Telephone: (212) 547-5400
Facsimile: (212) 547-5444
E-mail: dazman@mwe.com
E-mail: jbevans@mwe.com

*and*

Charles R. Gibbs (admitted *pro hac vice*)
Grayson Williams (admitted *pro hac vice*)
2501 North Harwood Street, Suite 1900
Dallas, TX 75201
Telephone: (214) 295-8000
Facsimile: (972) 232-3098
E-mail: crgibbs@mwe.com
E-mail: gwilliams@mwe.com

*and*

Gregg Steinman (admitted *pro hac vice*)
333 SE 2nd Avenue, Suite 4500
Miami, FL 33131-2184
Telephone: (305) 329-4473
Facsimile: (305) 503-8805
E-mail: gsteinman@mwe.com

*Counsel to the Official Committee of
Unsecured Creditors*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of October 2022, I caused a true and correct copy of the foregoing *Notice of Filing of Redacted Objection of the Official Committee of Unsecured Creditors to Debtors' Motion for Entry of an Order Approving (I) the Adequacy of the Amended Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto* (the "Notice of Filing") to be served on the Service List via (i) electronic notification pursuant to the CM/ECF system for the United States Bankruptcy Court for the Southern District of New York and (ii) e-mail, as indicated in the service list attached hereto.

I further certify that I caused the Notice of Filing to be served on the 13th day of October 2022 by First Class U.S. Mail, as indicated in the service list attached hereto.

I further certify that I caused an unredacted version of the *Objection of the Official Committee of Unsecured Creditors to Debtors' Motion for Entry of an Order Approving (I) the Adequacy of the Amended Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto* to be served on counsel for the Debtors and the U.S. Trustee via e-mail on the 12th day of October 2022.

/s/ Darren Azman
Darren Azman

# SERVICE LIST

| Name | Attention | Address 1 | Address 2 | City | State | Zip | Country | Email | Method of Service |
|------|-----------|-----------|-----------|------|-------|-----|---------|-------|-------------------|
| DISTRICT OF COLUMBIA | OFFICE OF THE ATTORNEY GENERAL | 400 6TH STREET NW | | WASHINGTON | DC | 20001 | | OAG@DC.GOV | VIA E-MAIL |
| FRANCINE DE SOUSA | C/O SISKINDS LLP | ATTN: ANTHONY O'BRIEN | 100 LOMBARD STREET SUITE 302 | TORONTO | ON | M5C1M3 | | ANTHONY.OBRIEN@SISKINDS.COM | VIA E-MAIL |
| FRANCINE DE SOUSA | C/O SISKINDS LLP | ATTN: MICHAEL G. ROBB & GARETT M. HUNTER | 275 DUNDAS STREET UNIT 1 | LONDON | ON | N6B3L1 | | MICHAEL.ROBB@SISKINDS.COM GARETT.HUNTER@SISKINDS.COM | VIA E-MAIL |
| GOOGLE, LLC | | 1600 AMPHITHEATRE PKWY | | MOUNTAIN VIEW | CA | 94043 | | COLLECTIONS@GOOGLE.COM | VIA E-MAIL |
| INTERNAL REVENUE SERVICE | | PO BOX 7346 | | PHILADELPHIA | PA | 19101-7346 | | | VIA FIRST CLASS MAIL |
| OFFICE OF THE UNITED STATES TRUSTEE | FOR THE SOUTHERN DIST OF NEW YORK | ATTN: RICHARD C. MORRISSEY, ESQ. AND MARK BRUH, ESQ. | 201 VARICK STREET, ROOM 1006 | NEW YORK | NY | 10014 | | RICHARD.MORRISSEY@USDOJ.GOV MARK.BRUH@USDOJ.GOV | VIA E-MAIL |
| SECURITIES & EXCHANGE COMMISSION | | 100 F STREET NE | | WASHINGTON | DC | 20549 | | SECBANKRUPTCY-OGC-ADO@SEC.GOV | VIA E-MAIL |
| SECURITIES & EXCHANGE COMMISSION | NEW YORK REGIONAL OFFICE | 100 PEARL STREET SUITE 20-100 | | NEW YORK | NY | 10004-2616 | | NYROBANKRUPTCY@SEC.GOV | VIA E-MAIL |
| SECURITIES & EXCHANGE COMMISSION | NEW YORK REGIONAL OFFICE | ATTN: ANDREW CALAMARI REGIONAL DIRECTOR | 200 VESEY STREET SUITE 400 | NEW YORK | NY | 10281-1022 | | BANKRUPTCYNOTICESCHR@SEC.GOV | VIA E-MAIL |
| STATE OF ALABAMA | OFFICE OF THE ATTORNEY GENERAL | 501 WASHINGTON AVE | | MONTGOMERY | AL | 36104 | | CONSUMERINTEREST@ALABAMAAG.GO | VIA E-MAIL |
| STATE OF ALASKA | OFFICE OF THE ATTORNEY GENERAL | 1031 W 4TH AVE, STE 200 | | ANCHORAGE | AK | 99501 | | ATTORNEY.GENERAL@ALASKA.GOV | VIA E-MAIL |
| STATE OF ARIZONA | OFFICE OF THE ATTORNEY GENERAL | 2005 N CENTRAL AVE | | PHOENIX | AZ | 85004 | | AGINFO@AZAG.GOV | VIA E-MAIL |
| STATE OF ARKANSAS | OFFICE OF THE ATTORNEY GENERAL | 323 CENTER ST, STE 200 | | LITTLE ROCK | AR | 72201 | | OAG@ARKANSASAG.GOV | VIA E-MAIL |
| STATE OF CALIFORNIA | OFFICE OF THE ATTORNEY GENERAL | PO BOX 944255 | | SACRAMENTO | CA | 94244-2550 | | XAVIER.BECERRA@DOJ.CA.GOV | VIA E-MAIL |
| STATE OF COLORADO | OFFICE OF THE ATTORNEY GENERAL | RALPH L. CARR JUDICIAL BUILDING | 1300 BROADWAY, 10TH FL | DENVER | CO | 80203 | | CORA.REQUEST@COAG.GOV | VIA E-MAIL |
| STATE OF CONNECTICUT | OFFICE OF THE ATTORNEY GENERAL | 165 CAPITOL AVENUE | | HARTFORD | CT | 06106 | | ATTORNEY.GENERAL@CT.GOV | VIA E-MAIL |
| STATE OF FLORIDA | OFFICE OF THE ATTORNEY GENERAL | THE CAPITOL PL01 | | TALLHASSEE | FL | 32399 | | ASHLEY.MOODY@MYFLORIDALEGAL.CO | VIA E-MAIL |
| STATE OF GEORGIA | OFFICE OF THE ATTORNEY GENERAL | 40 CAPITOL SQ SW | | ATLANTA | GA | 30334 | | | VIA FIRST CLASS MAIL |
| STATE OF HAWAII | OFFICE OF THE ATTORNEY GENERAL | 425 QUEEN STREET | | HONOLULU | HI | 96813 | | HAWAIIAG@HAWAII.GOV | VIA E-MAIL |
| STATE OF IDAHO | OFFICE OF THE ATTORNEY GENERAL | 700 W. JEFFERSON ST, SUITE 210 | PO BOX 83720 | BOISE | ID | 83720 | | LAWRENCE.WASDEN@AG.IDAHO.GOV AGWASDEN@AG.IDAHO.GOV | VIA E-MAIL |
| STATE OF ILLINOIS | OFFICE OF THE ATTORNEY GENERAL | JAMES R. THOMPSON CENTER | 100 W. RANDOLPH ST | CHICAGO | IL | 60601 | | INFO@LISAMADIGAN.ORG | VIA E-MAIL |
| STATE OF INDIANA | OFFICE OF THE INDIANA ATTORNEY GENERAL | INDIANA GOVERNMENT CENTER SOUTH | 302 W WASHINGTON ST, 5TH FLOOR | INDIANAPOLIS | IN | 46204 | | | VIA FIRST CLASS MAIL |
| STATE OF IOWA | OFFICE OF THE ATTORNEY GENERAL | HOOVER STATE OFFICE BUILDING | 1305 E. WALNUT STREET | DES MOINES | IA | 50319 | | CONSUMER@AG.IOWA.GOV | VIA E-MAIL |
| STATE OF KANSAS | ATTN: ATTORNEY GENERAL DEREK SCHMIDT | 120 SW 10TH AVE, 2ND FLOOR | | TOPEKA | KS | 66612 | | DEREK.SCHMIDT@AG.KS.GOV | VIA E-MAIL |
| STATE OF KENTUCKY | ATTORNEY GENERAL - DANIEL CAMERON | 700 CAPITAL AVENUE, SUITE 118 | | FRANKFORT | KY | 40601 | | | VIA FIRST CLASS MAIL |
| STATE OF LOUISIANA | DEPT. OF JUSTICE - ATTORNEY GENERAL'S OFFICE | 300 CAPITAL DRIVE | | BATON ROUGE | LA | 70802 | | ADMININFO@AG.STATE.LA.US | VIA E-MAIL |
| STATE OF MAINE | OFFICE OF THE ATTORNEY GENERAL | 6 STATE HOUSE STATION | | AUGUSTA | ME | 04333 | | ATTORNEY.GENERAL@MAINE.GOV | VIA E-MAIL |
| STATE OF MARYLAND | OFFICE OF THE ATTORNEY GENERAL | 200 ST. PAUL PLACE | | BALTIMORE | MD | 21202 | | OAG@OAG.STATE.MD.US | VIA E-MAIL |
| STATE OF MASSACHUSETTS | ATTORNEY GENERAL'S OFFICE | 1 ASHBURTON PLACE, 20TH FLOOR | | BOSTON | MA | 02108 | | | VIA FIRST CLASS MAIL |
| STATE OF MICHIGAN | DEPARTMENT OF ATTORNEY GENERAL | 525 W OTTAWA ST | | LANSING | MI | 48906 | | | VIA FIRST CLASS MAIL |
| STATE OF MINNESOTA | OFFICE OF THE ATTORNEY GENERAL | 445 MINNESOTA ST, STE 1400 | | ST. PAUL | MN | 55101 | | ATTORNEY.GENERAL@AG.STATE.MN.US | VIA E-MAIL |
| STATE OF MISSISSIPPI | OFFICE OF THE ATTORNEY GENERAL | WALTER SILLERS BUILDING | 550 HIGH ST, PO BOX 220 | JACKSON | MS | 39201 | | | VIA FIRST CLASS MAIL |
| STATE OF MISSOURI | OFFICE OF THE ATTORNEY GENERAL | SUPREME COURT BUILDING | 207 W HIGH ST | JEFFERSON CITY | MO | 65101 | | CONSUMER.HELP@AGO.MO.GOV | VIA E-MAIL |
| STATE OF MONTANA | OFFICE OF THE ATTORNEY GENERAL | JUSTICE BUILDING, 3RD FLOOR | 215 N SANDERS, PO BOX 201401 | HELENA | MT | 59602 | | CONTACTDOJ@MT.GOV | VIA E-MAIL |
| STATE OF NEBRASKA | OFFICE OF THE ATTORNEY GENERAL | 2115 STATE CAPITOL | | LINCOLN | NE | 68509 | | | VIA FIRST CLASS MAIL |
| STATE OF NEVADA | OFFICE OF THE ATTORNEY GENERAL | OLD SUPREME COURT BUILDING | 100 N CARSON ST | CARSON CITY | NV | 89701 | | | VIA FIRST CLASS MAIL |
| STATE OF NEW HAMPSHIRE | OFFICE OF THE ATTORNEY GENERAL | NH DEPARTMENT OF JUSTICE | 33 CAPITOL ST. | CONCORD | NH | 03301 | | ATTORNEYGENERAL@DOJ.NH.GOV | VIA E-MAIL |
| STATE OF NEW JERSEY | OFFICE OF THE ATTORNEY GENERAL | RICHARD J. HUGHES JUSTICE COMPLEX | 25 MARKET ST 8TH FL, WEST WING BOX 080 | TRENTON | NJ | 08611 | | | VIA FIRST CLASS MAIL |
| STATE OF NEW MEXICO | OFFICE OF THE ATTORNEY GENERAL | 408 GALISTEO STREET | VILLAGRA BUILDING | SANTA FE | NM | 87501 | | HBALDERAS@NMAG.GOV | VIA E-MAIL |
| STATE OF NEW YORK | OFFICE OF THE ATTORNEY GENERAL | THE CAPITOL | 2ND FLOOR | ALBANY | NY | 12224 | | | VIA FIRST CLASS MAIL |
| STATE OF NORTH CAROLINA | OFFICE OF THE ATTORNEY GENERAL | 114 W EDENTON ST | | RALEIGH | NC | 27603 | | | VIA FIRST CLASS MAIL |
| STATE OF NORTH DAKOTA | OFFICE OF THE ATTORNEY GENERAL | STATE CAPITOL, 600 E | DEPT. 125 | BISMARCK | ND | 58505 | | NDAG@ND.GOV | VIA E-MAIL |
| STATE OF OHIO | OFFICE OF THE ATTORNEY GENERAL | STATE OFFICE TOWER | 30 E BROAD ST 14TH FL | COLUMBUS | OH | 43215 | | | VIA FIRST CLASS MAIL |
| STATE OF OKLAHOMA | OFFICE OF THE ATTORNEY GENERAL | 313 NE 21ST ST | | OKLAHOMA CITY | OK | 73105 | | QUESTIONS@OAG.OK.GOV | VIA E-MAIL |
| STATE OF OREGON | OFFICE OF THE ATTORNEY GENERAL | 1162 COURT ST NE | | SALEM | OR | 97301-4096 | | ELLEN.ROSENBLUM@DOJ.STATE.OR.US ATTORNEYGENERAL@DOJ.STATE.OR.U | VIA E-MAIL |
| STATE OF PENNSYLVANIA | OFFICE OF THE ATTORNEY GENERAL | STRAWBERRY SQUARE 16TH FL | | HARRISBURG | PA | 17120 | | | VIA FIRST CLASS MAIL |
| STATE OF RHODE ISLAND | OFFICE OF THE ATTORNEY GENERAL | 150 S MAIN ST | | PROVIDENCE | RI | 02903 | | AG@RIAG.RI.GOV | VIA E-MAIL |
| STATE OF SOUTH CAROLINA | OFFICE OF THE ATTORNEY GENERAL | PO BOX 11549 | | COLUMBIA | SC | 29211 | | | VIA FIRST CLASS MAIL |
| STATE OF SOUTH CAROLINA | OFFICE OF THE ATTORNEY GENERAL | REMBERT C. DENNIS BLDG | 1000 ASSEMBLY ST RM 519 | COLUMBIA | SC | 29201 | | | VIA FIRST CLASS MAIL |
| STATE OF SOUTH DAKOTA | OFFICE OF THE ATTORNEY GENERAL | 1302 E HIGHWAY 14, STE 1 | | PIERRE | SD | 57501-8501 | | | VIA FIRST CLASS MAIL |

| Name | Firm/Attorney | Address 1 | Address 2 | City | State | Zip | Email | Method |
|---|---|---|---|---|---|---|---|---|
| STATE OF TENNESSEE | OFFICE OF THE ATTORNEY GENERAL | PO BOX 20207 | | NASHVILLE | TN | 37202-0207 | | VIA FIRST CLASS MAIL |
| STATE OF TEXAS | OFFICE OF THE ATTORNEY GENERAL | 300 W. 15TH ST | | AUSTIN | TX | 78701 | | VIA FIRST CLASS MAIL |
| STATE OF UTAH | OFFICE OF THE ATTORNEY GENERAL | UTAH STATE CAPITOL COMPLEX | 350 NORTH STATE ST STE 230 | SALT LAKE CITY | UT | 84114 | UAG@UTAH.GOV | VIA E-MAIL |
| STATE OF VERMONT | OFFICE OF THE ATTORNEY GENERAL | 109 STATE ST. | | MONTPELIER | VT | 05609 | AGO.INFO@VERMONT.GOV | VIA E-MAIL |
| STATE OF VIRGINIA | OFFICE OF THE ATTORNEY GENERAL | 202 N. NINTH ST. | | RICHMOND | VA | 23219 | MAIL@OAG.STATE.VA.US | VIA E-MAIL |
| STATE OF WASHINGTON | OFFICE OF THE ATTORNEY GENERAL | 1125 WASHINGTON ST SE | | OLYMPIA | WA | 98501 | | VIA FIRST CLASS MAIL |
| STATE OF WASHINGTON | OFFICE OF THE ATTORNEY GENERAL | PO BOX 40100 | | OLYMPIA | WA | 98504-00 | | VIA FIRST CLASS MAIL |
| STATE OF WEST VIRGINIA | OFFICE OF THE ATTORNEY GENERAL | STATE CAPITOL, 1900 KANAWHA | BUILDING 1 RM E-26 | CHARLESTON | WV | 25305 | CONSUMER@WVAGO.GOV | VIA E-MAIL |
| STATE OF WISCONSIN | OFFICE OF THE ATTORNEY GENERAL | 17 WEST MAIN STREET, ROOM 114 EAST P | | MADISON | WI | 53702 | | VIA FIRST CLASS MAIL |
| STATE OF WYOMING | OFFICE OF THE ATTORNEY GENERAL | 109 STATE CAPITOL | | CHEYENNE | WY | 82002 | | VIA FIRST CLASS MAIL |
| TORONTO STOCK EXCHANGE | | 300 - 100 ADELAIDE ST. | | WEST TORONTO | ON | M5H 1S3 | WEBMASTER@TMX.COM | VIA E-MAIL |
| UNITED STATES ATTORNEY'S OFFICE | SOUTHERN DISTRICT OF NEW YORK | ONE ST. ANDREWS PLAZA | | NEW YORK | NY | 10007 | | VIA FIRST CLASS MAIL |
| UNITED STATES DEPARTMENT OF | ATTORNEY GENERAL OF THE U.S. | 950 PENNSYLVANIA AVE, NW | | WASHINGTON | DC | 20530-0001 | | VIA FIRST CLASS MAIL |
| KELLEHER PLACE MANAGEMENT, LLC | HORWOOD MARCUS & BERK CHARTERED | 500 W. MADISON ST. | SUITE 3700 | CHICAGO | IL | 60661 | AHAMMER@HMBLAW.COM NDELMAN@HMBLAW.COM | VIA ECF |
| METROPOLITAN COMMERCIAL BANK | BALLARD SPAHR LLP | 200 IDS CENTER | 80 SOUTH 8TH STREET | MINNEAPOLIS | MN | 55402-2119 | SINGERG@BALLARDSPAHR.COM | VIA E-MAIL |
| METROPOLITAN COMMERCIAL BANK | WACHTELL, LIPTON, ROSEN & KATZ | 51 WEST 52ND STREET | | NEW YORK | NY | 10019-6150 | RGMASON@WLRK.COM ARWOLF@WLRK.COM AKHERRING@WLRK.COM | VIA E-MAIL VIA E-MAIL VIA E-MAIL |
| JASON RAZNICK | JAFFE RAITT HEUER & WEISS, P.C. | 27777 FRANKLIN ROAD | SUITE 2500 | SOUTHFIELD | MI | 48034 | PHAGE@JAFFELAW.COM | VIA ECF |
| STEVI LAIRD | FORSHEY & PROSTOK LLP | 777 MAIN STREET | SUITE 1550 | FORT WORTH | TX | 76102 | BFORSHEY@FORSHEYPROSTOK.COM | VIA ECF |
| ORACLE AMERICA, INC. | BUCHALTER, A PROFESSIONAL CORPORA | 425 MARKET ST. | SUITE 2900 | SAN FRANCISCO | CA | 94105 | SCHRISTIANSON@BUCHALTER.COM | VIA ECF |
| ALAMEDA RESEARCH LLC & AFFILIATES | SULLIVAN & CROMWELL LLP | 125 BROAD STREET | | NEW YORK | NY | 10004 | DIETDERICHA@SULLCROM.COM GLUECKSTEINB@SULLCROM.COM BELLERB@SULLCROM.COM | VIA ECF VIA ECF VIA E-MAIL |
| VOYAGER DIGITAL HOLDINGS, INC., ET AL. | KIRKLAND & ELLIS LLP KIRKLAND & ELLIS INTERNATIONAL LLP | 601 LEXINGTON AVENUE | | NEW YORK | NY | 10022 | JSUSSBERG@KIRKLAND.COM CMARCUS@KIRKLAND.COM CHRISTINE.OKIKE@KIRKLAND.COM ALLYSON.SMITH@KIRKLAND.COM | VIA ECF VIA E-MAIL VIA E-MAIL VIA E-MAIL |
| EMERALD OCEAN ISLE, LLC, AMANO GLOBAL HOLDINGS, INC., SHINGO LAVINE, AND ADAM LAVINE | C/O GOLDSTEIN & MCCLINKOCK LLLP | ATTN: MATTHEW E. MCCLINTOCK, HARLEY GOLDSTEIN, AND STEVE YACHIK | 111 W WASHINGTON STREET SUITE 1221 | CHICAGO | IL | 60602 | MATTM@GOLDMCLAW.COM HARLEYG@RESTRUCTURINGSHOP.COM STEVENY@GOLDMCLAW.COM | VIA E-MAIL VIA E-MAIL VIA E-MAIL |
| EMERALD OCEAN ISLE, LLC, AMANO GLOBAL HOLDINGS, INC., SHINGO LAVINE, AND ADAM LAVINE | C/O LAW OFFICES OF DOUGLAS T. TABACHNIK, P.C. | ATTN: DOUGLAS T. TABACHNIK | 63 WEST MAIN STREET SUITE C | FREEHOLD | NJ | 07728-2141 | DTABACHNIK@DTTLAW.COM | VIA E-MAIL |
| MATTHEW EDWARDS | C/O LIZ GEORGE AND ASSOCIATES | ATTN: LYSBETH GEORGE | 8101 S. WALKER SUITE F | OKLAHOMA CITY | OK | 73139 | GEORGELAWOK@GMAIL.COM | VIA ECF |
| TEXAS STATE SECURITIES BOARD | OFFICE OF THE ATTORNEY GENERAL OF TEXAS | ATTN: ABIGAIL R RYAN, LAYLA D MILLIGAN & JASON B BINFORD | BANKRUPTCY & COLLECTIONS DIVISION PO BOX 12548 | AUSTIN | TX | 78711-2548 | ABIGAIL.RYAN@OAG.TEXAS.GOV LAYLA.MILLIGAN@OAG.TEXAS.GOV JASON.BINFORD@OAG.TEXAS.GOV | VIA E-MAIL VIA E-MAIL VIA E-MAIL |
| OFFICE OF THE ATTORNEY GENERAL OF TEXAS | | ATTN: ROMA N. DESAI | BANKRUPTCY & COLLECTIONS DIVISION PO BOX 12548 | AUSTIN | TX | 78711-2548 | ROMA.DESAI@OAG.TEXAS.GOV | VIA ECF |
| OFFICE OF THE ATTORNEY GENERAL | BANKRUPTCY DIVISION | ATTN: MARVIN E. CLEMENTS, JR. | BANKRUPTCY DIVISION P O BOX 20207 | NASHVILLE | TN | 37202-0207 | AGBANKNEWYORK@AG.TN.GOV | VIA ECF |
| VERMONT DEPARTMENT OF FINANCIAL REGULATION | ASSISTANT GENERAL COUNSEL | ATTN: JENNIFER ROOD | 89 MAIN STREET THIRD FLOOR | MONTPELIER | VT | 05620 | JENNIFER.ROOD@VERMONT.GOV | VIA ECF |
| ROBERT SNYDERS & LISA SNYDERS | C/O JOHNSON, POPE, BOKOR, RUPPEL & BURNS, LLP | ATTN: ANGELINA E. LIM | 401 E JACKSON STREET SUITE 3100 | TAMPA | FL | 33602 | ANGELINAL@JPFIRM.COM | VIA ECF |
| MICHAEL LEGG | C/O MCCARTHY, LEBIT, CRYSTAL & LIFFMAN CO | ATTN: ROBERT R. KRACHT & NICHOLAS R. OLESKI | 1111 SUPERIOR AVENUE EAST SUITE 2700 | CLEVELAND | OH | 44114 | RRK@MCCARTHYLEBIT.COM NRO@MCCARTHYLEBIT.COM | VIA E-MAIL VIA ECF |
| MICHAEL GENTSCH | C/O BARSKI LAW PLC | ATTN: CHRIS D. BRASKI | 9375 E. SHEA BLVD. STE 100 | SCOTTSDALE | AZ | 85260 | CBARSKI@BARSKILAW.COM | VIA ECF |
| ILLINOIS SECRETARY OF STATE | C/O OFFICE OF THE ATTORNEY GENERAL | ATTN: JOHN P. REDING | 100 W. RANDOLPH ST FLOOR 13 | CHICAGO | IL | 60601 | JOHN.REDING@ILAG.GOV | VIA ECF |
| GEORGIA DEPARTMENT OF BANKING AND FINANCE | | ATTN: NATHAN HOVEY, ASSISTANT ATTORNEY GENERAL | DEPARTMENT OF LAW 40 CAPITOL SQUARE SW | ATLANTA | GA | 30334 | NHOVEY@LAW.GA.GOV | VIA ECF |
| MARK CUBAN AND DALLAS BASKETBALL LIMITED, D/B/A DALLAS MAVERICKS | C/O BROWN RUDNICK LLP | ATTN: SIGMUND S. WISSNER-GROSS ESQ. & KENNETH J. AULET | SEVEN TIMES SQUARE | NEW YORK | NY | 10036 | SWISSNER-GROSS@BROWNRUDNICK.COM KAULET@BROWNRUDNICK.COM | VIA ECF VIA E-MAIL |
| MARK CUBAN AND DALLAS BASKETBALL LIMITED D/B/A DALLAS MAVERICKS | C/O BROWN RUDNICK LLP | ATTN: STEPHEN A. BEST ESQ & RACHEL O. WOLKINSON, ESQ. | 601 THIRTEENTH STREET NW SUITE 600 | WASHINGTON | DC | 2005 | SBEST@BROWNRUDNICK.COM RWOLKINSON@BROWNRUDNICK.COM | VIA E-MAIL VIA E-MAIL |
| ED BOLTON | C/O AKERMAN LLP | ATTN: R. ADAM SWICK, JOHN H. THOMPSON, JOANNE GELFAND | 1251 AVENUE OF THE AMERICAS, 37TH FL | NEW YORK | NY | 10020 | ADAM.SWICK@AKERMAN.COM; JOHN.THOMPSON@AKERMAN.COM; JOANNE.GELFAND@AKERMAN.COM | VIA ECF VIA ECF VIA ECF |
| JON GIACOBBE | | ATTN: A. MANNY ALICANDRO | 11 BROADWAY, SUITE 615 | NEW YORK | NY | 10004 | MANNY@ALICANDROLAWOFFICE.COM | VIA ECF |
| WELLS FARGO BANK, N.A. | C/O ALDRIDGE PITE, LLP | ATTN: GREGORY WALLACH | FIFTEEN PIEDMONT CENTER 3575 PIEDMONT ROAD, N.E. | ATLANTA | GA | 30305 | GWALLACH@ALDRIDGEPITE.COM | VIA ECF |
| AD HOC GROUP OF EQUITY INTEREST HOLDERS | C/O KILPATRICK TOWNSEND & STOCKTON LLP | ATTN: DAVID M. POSNER & KELLY E. MOYNIHAN | THE GRACE BUILDING 1114 AVENUE OF THE | NEW YORK | NY | 10036 | DPOSNER@KILPATRICKTOWNSEND.COM KMOYNIHAN@KILPATRICKTOWNSEND.C | VIA ECF |
| AD HOC GROUP OF EQUITY INTEREST HOLDERS | C/O KILPATRICK TOWNSEND & STOCKTON LLP | ATTN: PAUL M. ROSENBLATT | 1100 PEACHTREE STREET NE SUITE 2800 | ATLANTA | GA | 30309 | PROSENBLATT@KILPATRICKTOWNSEND. COM | VIA E-MAIL |
| PIERCE ROBERTSON | C/O PACHULSKI STANG ZIEHL & JONES LLP | ATTN: RICHARD M. PACHULSKI, ALAN J. KORNFELD, DEBRA I. GRASSGREEN, AND JASON H. ROSELL | 10100 SANTA MONICA BLVD 13TH FLOOR | LOS ANGELES | CA | 90067 | RPACHULSKI@PSZJLAW.COM AKORNFELD@PSZJLAW.COM DGRASSGREEN@PSZJLAW.COM JROSELL@PSZJLAW.COM | VIA E-MAIL VIA E-MAIL VIA E-MAIL VIA ECF |

| STATE OF WASHINGTON | OFFICE OF ATTORNEY GENERAL | ATTN: STEPHEN MANNING, ASSISTANT ATTORNEY GENERAL | GOVERNMENT COMPLIANCE AND ENFORCEMENT DIVISION P.O. BOX 40100 | OLYMPIA | WA | 98504-4010 | | STEPHEN.MANNING@ATG.WA.GOV | VIA ECF |
|---|---|---|---|---|---|---|---|---|---|
| MARCUM LLP | MINTZ & GOLD LLP | ATTN: ANDREW R. GOTTESMAN | 600 THIRD AVENUE, 25TH | NEW YORK | NY | 10016 | | GOTTESMAN@MINTZANDGOLD.COM | VIA ECF |