| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date: October 19, 2022<br>Hearing Time: 2:00 pm |
| ------------------------------------------------------- x<br>In re                                                                    :<br>                                                                              :<br>VOYAGER DIGITAL HOLDINGS, *et al.*,           :<br>                                                                              :<br>                                              Debtors.            :<br>                                                                              :<br>------------------------------------------------------- x | Chapter 11<br><br>Case No. 22-10943 (MEW)<br><br>Jointly Administered |

**OBJECTION OF THE UNITED STATES TRUSTEE TO FIRST
AMENDED DISCLOSURE STATEMENT RELATING TO SECOND
AMENDED JOINT PLAN OF REORGANIZATION OF VOYAGER
DIGITAL HOLDINGS, INC., AND ITS DEBTOR AFFILIATES
PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

TO:    **THE HONORABLE MICHAEL E. WILES,
         UNITED STATES BANKRUPTCY JUDGE:**

William K. Harrington, the United States Trustee for Region 2 (the "**United States Trustee**"), hereby submits this objection (the "**Objection**") to the First Amended Disclosure Statement Relating to the Second Amended Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 Plan of the Bankruptcy Code (the "**Disclosure Statement**"). ECF No. 498.[1] In support thereof, the United States Trustee respectfully submits as follows:

**PRELIMINARY STATEMENT**

The Disclosure Statement should not be approved because it fails to provide creditors with sufficient information to allow them to make an informed choice as to whether to approve or reject the Plan. The Disclosure Statement fails to state that the Plan it supports is a liquidating

---

[1] On October 5, 2022, the Debtors filed a Second Amended Joint Chapter 11 Plan of Reorganization of voyager Digital Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (the "**Plan**") (ECF No. 496). The Objection is hereby incorporated, as appropriate, with respect to the Plan and the Disclosure Statement.

plan – even though the Plan is premised on the sale of substantially all the Debtors' assets. Thus, the Disclosure Statement should make clear that, if the Plan is, in fact, a liquidating plan, there is to be no discharge under section 1141(d) of the Bankruptcy Code.

In addition, the Disclosure Statement lists no justification for the inclusion of third-party releases in the Plan. Although the Plan, as amended, now allows parties-in-interest to opt into the third-party releases, neither the Plan nor the Disclosure Statement explain why such releases are warranted. As to the parties' ability to opt into the releases, although the Plan provides for a procedure whereby certain parties-in-interest may "opt in" to third-party releases, as of this writing, the Disclosure Statement does not include the form of ballots to be distributed to the voting and non-voting parties-in-interest. This information is crucial to determine whether parties in all classes will be able to opt into the third-party releases.

Further, one party is to receive special protection under the Plan. That party is the Debtors' Chief Executive Officer (the "**CEO**"), who is the beneficiary of an injunctive provision that effectively shields him and his assets from third-party claims. Parties-in-interest can neither opt into or out of this provision. They should be afforded the opportunity to weigh in on this provision, which appears to function as a nonconsensual release.

With respect to avoidance actions, certain such actions are to be included among the assets that the Debtors are selling to FTX US, whereas other actions are to be excluded. The Disclosure Statement does not identify which causes of action are to be transferred to the purchaser and which are to be retained. A Special Committee appointed by two independent directors of debtor Voyager Digital, LLC, was established to investigate certain claims against third parties, and its investigation is ongoing. The question as to which causes of action are to be

transferred to the purchaser is to be answered in the Plan Supplement, so that, at this time, the parties cannot evaluate this aspect of the Plan.

Although the Wind-Down Entity may carve out certain parties from the definitions of Released Parties, that information is not to be disclosed until the filing of the Plan Supplement one week before the voting deadline. Accordingly, though the scope of the definition of the Released Parties and Exculpated Parties may be overbroad, parties-in-interest and the Court will not know how broad those definitions are until the Plan Supplement is filed. Parties will not have sufficient time to decide whether to opt into the third-party releases.

## BACKGROUND

### General Background

1. Voyager Digital Holdings, Inc., and its affiliated entities (collectively, "**Voyager**" or the "**Debtors**") commenced voluntary cases under chapter 11 of the Bankruptcy Code on July 5, 2022 (the "**Petition Date**"). ECF Doc. No. 1.

2. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure. ECF No. 73.

4. Before the Petition Date, Voyager operated a cryptocurrency trading platform that has enabled its "customers to buy, sell, and store cryptocurrency." *See* Disclosure Statement, section II, pg. 16 of 186, ECF Doc. No. 498.

5. On September 28, 2022, the Debtors filed a Motion for Entry of an Order (I) Authorizing Entry Into the Asset Purchase Agreement (the "**APA**") and (II) Granting Related Relief. ECF Doc. No. 472 (the "**APA Motion**"). In the APA Motion, the Debtors seek approval of the APA with FTX US with respect to the sale of substantially all of the Debtors' assets.

6. Among the assets excluded under the APA are "Retained Avoidance Actions." APA, ¶ 24, pg. 12 of 109, § 1.1(d), pg. 37 of 109, ECF Doc. No. 472. That term is defined in the APA to include certain avoidance actions, as "any claims for actual fraudulent transfers." APA, § 11.1(ggg), ECF Doc. No. 472.

7. The Debtors filed the Plan and accompanying Disclosure Statement on October 5, 2022. ECF Doc. Nos. 496, 498.

8. Article I of the Plan defines "Related Party" (¶ 98), "Released Parties" (¶ 99), "Released Professionals" ¶ 100, "Released Voyager Employees" (¶ 101), and "Releasing Parties" (¶ 102).

9. The Plan provides for "Non-Released D&O Claims." Included in this provision is a subsection that precludes any party from either recording a judgment against the CEO or otherwise attempting to collect from his personal assets. Plan, Art. IV, F(iii).

10. Under the Plan, certain "Causes of Action" arising under chapter 5 of the Bankruptcy Code, as well as claims arising from any alleged breach of fiduciary duty, are not to be transferred under the Plan.[2] *See* Plan, Art. I.A.28. ECF Doc. No. 496, pg. 11-12 of 139.

## OBJECTION

**A.    General Standards**

Section 1125 of the Bankruptcy Code provides that a disclosure statement must contain "adequate information" describing a confirmable plan. 11 U.S.C. § 1125. The Bankruptcy Code defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable a such a hypothetical reasonable investor . . . to make an informed judgment about the plan. . . .

11 U.S.C. § 1125(a)(1); *see also Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994); *In re Adelphia Commc'ns Corp.*, 352 B.R. 592, 596 (Bankr. S.D.N.Y. 2006); *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 54 (S.D.N.Y. 1999).

To be approved, a disclosure statement must include sufficient information to apprise creditors of the risks and financial consequences of the proposed plan. *See In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) ("substantial financial information with respect to the ramifications of any proposed plan will have to be provided to, and digested by, the creditors and other parties in interest in order to arrive at an informed decision concerning the acceptance

---

[2] A Schedule of Retained Causes of Action is to appear in the forthcoming Plan Supplement. Plan, Art. I.A.85, 108. ECF Doc. No. 496, pg. 16, 19 of 139.

or rejection of a proposed plan"). Although the adequacy of the disclosure statement is determined on a case-by-case basis, the disclosure statement must "contain simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible [Bankruptcy Code] alternatives. . . ." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988).

Section 1125 of the Bankruptcy Code is biased towards more disclosure rather than less. *See In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990). The "adequate information" requirement merely establishes a floor, and not a ceiling, for disclosure to voting creditors. *Adelphia*, 352 B.R. at 596 (citing *Century Glove, Inc. v. First American Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988)). Once the "adequate disclosure" floor is satisfied, additional information can go into a disclosure statement too, at least so long as the additional information is accurate, and its inclusion is not misleading. *Adelphia*, 352 B.R. at 596. The purpose of the disclosure statement is to give creditors enough information so that they can make an informed choice of whether to approve or reject the debtor's plan. *In re Duratech Indus.*, 241 B.R. 291, 298 (Bankr. E.D.N.Y. 1999), *aff'd*, 241 B.R. 283 (E.D.N.Y. 1999). The disclosure statement must inform the average creditor what it will receive and when and what contingencies might intervene. *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

**B.      The Disclosure Statement Fails to State Whether the Plan is a Liquidating Plan**

The Disclosure Statement describes the Plan it supports simply as the "Second Amended Joint Plan." Disclosure Statement, pg. 1 of 186, ECF Doc. No. 498. The Disclosure Statement

does not state, however, whether the Plan is a plan of liquidation or of reorganization.[3]  Although the Plan states that it "contemplates liquidating the Debtors' business and remaining assets," Plan, IV.A., pg. 26 of 186, ECF Doc. No. 496, it does not state conspicuously that it is, in fact, a liquidating plan.  The omission is significant as under the Bankruptcy Code, the confirmation of a chapter 11 plan does not discharge a debtor if "the plan provides for the liquidation of all or substantially all of the property of the estate."  11 U.S.C. § 1141(d)(1)(A).  As the Plan contemplates the sale of substantially all of the Debtors' assets, one might assume that this is a liquidating plan, but it is up to the plan proponents to make this clear.  It is also incumbent on the Debtors to make clear whether the Debtors are entitled to a discharge under section 1141(d) of the Bankruptcy Code.[4]

**C.    The Disclosure Statement Contains no Justification for the Third-Party Releases[5]**

Although the Plan, as modified, provides that the third-party releases are effective only against parties that opt into the releases, neither the Disclosure Statement nor the Plan provides any basis for the releases.  Instead, the Plan merely lists in the definitions section all of the parties to be released – "Related Parties," the "Released Parties" (which definition includes the Related Parties), the "Released Professionals," and the Released Voyager Employees."  *See* Plan,

---

[3] On August 12, 2022, the Debtors, at ECF Doc. No. 288, filed a Disclosure Statement supporting the Debtors' First Amended Joint Plan *of Reorganization*.  Disclosure Statement, pg. 1, ECF Doc. No. 498 (emphasis added).

[4] Although the Disclosure Statement explains that, "[s]ubject to certain limited exceptions," the confirmation of "a plan of reorganization discharges a debtor from any debt that arose" pre-confirmation, Disclosure Statement, Art. II.R, pg. 25 of 186, ECF Doc. No. 498, it does not disclose whether any of those "limited exceptions" or the term "plan of reorganization" apply here.  *See also id.* at Art. VIII.4, pg. 57 of 186.

[5] The United States Trustee reserves all rights to raise any, and all, statutory, constitutional, and caselaw arguments with respect to confirmation of the Plan.

7

Art. I, ¶¶ 98-101. Armed with only a list of third parties to be released but given no information as to what any of these parties did to earn such releases, parties have no way to make an informed decision as to whether to opt into the third-party releases.

**D.    The Disclosure Statement Does Not Include the Form of Ballots**

As this Court has noted, unimpaired classes should be provided with a notice of non-voting status with an optional release opt-in form. *In re Chassix Holdings, Inc.,* 533 B.R. 64, 82 (Bankr. S.D.N.Y. 2015). Although the Plan describes a procedure whereby certain parties-in-interest may "opt in" to third-party releases, as of this writing, the Disclosure Statement does not include the form of ballots to be distributed to the voting and non-voting parties-in-interest. This information is crucial to determine whether parties in all classes will be able to opt into the third-party releases. Until a satisfactory form of ballot to be circulated to the non-voting creditors is provided, the Disclosure Statement should not be approved.

**E.    There Should Be No Special Nonconsensual Release for the CEO**

In a Plan provision that reserves claims or causes of action against the CEO to the Wind-Down Entity, one subsection of this provision purports to enjoin parties from either recording judgments against the CEO or otherwise attempting to collect from his assets. Plan, Art. IV, F(iii). This injunctive provision appears to wall off the CEO's assets from third-party claims. The Plan's opt-in provision regarding third-party releases do not apply to this section of the Plan. At the very least, Article IV, F(iii) should be included among the provisions that appear on the ballots for parties to be given the opportunity to opt into the third-party releases. Absent such opportunity, the CEO would effectively be receiving a nonconsensual release.

**F.     The Plan and the Asset Purchase Agreement Contain Contradictory Provisions Regarding Avoidance Actions**

As noted above, certain causes of action, including avoidance actions, are to be transferred to the purchaser under the APA.  *See* APA, § 1.1(d), ECF Doc. No. 472.  However, other causes of action, again including certain avoidance actions are not to be transferred to the purchaser.  These latter claims are described in the Plan as "Causes of Action" arising under chapter 5 of the Bankruptcy Code, as well as claims arising from any alleged breach of fiduciary duty, are not to be transferred under the Plan.  *See* Plan, Art. I.A.28.  ECF Doc. No. 496, pg. 11-12 of 139.  The Disclosure Statement and Plan do not disclose precisely which causes of action are to be retained.  That information will be disclosed in the Plan Supplement, which is to be filed one week before ballots are due.  Plan, Art. I.A.85, 108.  ECF Doc. No. 496, pg. 16, 19 of 139.

The mystery concerning which causes of action are to be transferred under the APA is significant because, as the Disclosure Statement states, the Special Committee that has been investigating causes of action, remains active.  See Disclosure Statement, Art. III.M, pg. 46 of 186, ECF Doc. No. 498.  Causes of action against certain targets of the Special Committee's investigation will be retained by the Wind-Down Entity and will thus not be acquired by the purchaser under the APA.  However, as the Special Committee is continuing its work, parties-in-interest and the Court have no way of knowing whether this ongoing investigation is targeting causes of action, that is, assets, that are to be sold under the APA.

That the Wind-Down Entity may carve out certain parties from the definitions of Released Parties at a future date, Disclosure Statement, Art. III.M., pg. 24 of 186, ECF Doc. No. 498, means that parties will not have sufficient time to evaluate a revised list of Released Parties

before the deadline to object to confirmation – and to opt into the releases. The identity of the Released Parties is not to be disclosed until the filing of the Plan Supplement one week before the voting deadline. Either the Disclosure Statement or the Plan objection deadline should be modified to give the parties enough time to analyze this critical information that will be disclosed in the forthcoming Plan Supplement.

To the extent that the revelation concerning which causes of action will and will not be sold must await the filing of the Plan Supplement, parties-in-interest should be afforded additional time – more than one week – to evaluate this aspect of the Disclosure Statement and Plan.

WHEREFORE, the United States Trustee respectfully requests that the Court sustain the Objection of the United States Trustee and grant such other relief as is just and proper.

Dated: New York, New York
October 14, 2022

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, Region 2

By: */s/ Richard C. Morrissey*
Richard C. Morrissey
Trial Attorney
201 Varick Street, Room 1006
New York, New York 10014
Tel. (212) 510-0500