Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF FILING**
**REVISED PROPOSED ORDER AUTHORIZING THE**
**DEBTORS TO EMPLOY AND RETAIN DELOITTE & TOUCHE LLP AS**
**ACCOUNTING ADVISORS EFFECTIVE AS OF AUGUST 24, 2022**

**PLEASE TAKE NOTICE** that on September 29, 2022, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed the *Debtors' Application for Entry of an Order Authorizing the Debtors to Employ and Retain Deloitte & Touche LLP as Accounting Advisors Effective as of August 24, 2022* [Docket No. 479] (the "Application").

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file a revised proposed *Order Authorizing the Debtors to Employ and Retain Deloitte & Touche LLP as Accounting*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

*Advisors Effective as of August 24, 2022,* attached hereto as **Exhibit A** (the "Revised Proposed Order").

PLEASE TAKE FURTHER NOTICE THAT a comparison between the Revised Proposed Order and the order filed with the Application is attached hereto as **Exhibit B**.

PLEASE TAKE FURTHER NOTICE that copies of the Application and other pleadings filed in the above-captioned chapter 11 cases may be obtained free of charge by visiting the website of Stretto at http://www.cases.stretto.com/Voyager.  You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank.]*

**<u>Exhibit A</u>**

**Revised Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER AUTHORIZING THE DEBTORS TO**
**EMPLOY AND RETAIN DELOITTE & TOUCHE LLP AS**
**ACCOUNTING ADVISORS EFFECTIVE AS OF AUGUST 24, 2022**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") authorizing the Debtors to employ and retain Deloitte & Touche LLP ("Deloitte & Touche") as accounting advisors, effective as of July 5, 2022, pursuant to the terms and conditions set forth in the Engagement Letter, attached hereto as **Exhibit 1**, as more fully set forth in the Application; and upon the *Declaration of Todd Bauer in Support of the Debtors' Application for Entry of an Order Authorizing the Debtors to Employ and Retain Deloitte & Touche LLP as Accounting Advisors Effective as of August 24, 2022* (the "Bauer Declaration"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that

the relief requested in the Application is in the best interests of the Debtors' estates, their creditors,

and other parties in interest; and this Court having found that the Debtors' notice of the Application

and opportunity for a hearing on the Application were appropriate under the circumstances and no

other notice need be provided; and this Court having reviewed the Application and having heard

the statements in support of the relief requested therein at a hearing before this Court

(the "Hearing"); and this Court having determined that the legal and factual bases set forth in the

Application and at the Hearing establish just cause for the relief granted herein; and it appearing

that Deloitte & Touche does not hold or represent an adverse interest to the Debtors or their estates

and that it is disinterested under section 101(14) of the Bankruptcy Code; and upon all of the

proceedings had before this Court; and after due deliberation and sufficient cause appearing

therefor, it is HEREBY ORDERED THAT:

1.      The Application is granted to the extent set forth herein.

2.      In accordance with sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code,
Bankruptcy Rule 2014, and Local Rules 2014-1 and 2016-1, the Debtors are authorized to employ
and retain Deloitte & Touche as accounting advisors to the Debtors on the terms and conditions
set forth in the Application and the Engagement Letter, as the Engagement Letter has been
modified by this Order and subject to the terms of this Order effective as of August 24, 2022.

3.      The terms and conditions of the Engagement Letter are reasonable and, as modified
by this Order, are approved.

4.      Deloitte & Touche shall be compensated in accordance with sections 330 and 331
of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, this Order, and any other
applicable orders of this Court.

5.      Deloitte & Touche shall include in its fee applications, among other things, contemporaneous time records setting forth a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors in one-tenth hour increments.

6.      In the event that the rates of compensation for the services increase from the rates disclosed for services in the Application or the Engagement Letter, Deloitte & Touche will file a supplemental declaration with this Court describing such increased rates and serve such supplemental declaration upon the Debtors and the United States Trustee at least ten (10) business days prior to the effective date of such increases, which supplemental declaration shall explain the basis for the requested rate increases in accordance with section 330(a)(3)(F) of the Bankruptcy Code and indicate whether the Debtors have received notice of and approved the proposed rate increase.

7.      Notwithstanding anything in the Application or the Engagement Letter to the contrary, prior to the effective date of a chapter 11 plan, this Court retains exclusive jurisdiction over all matters arising out of and/or pertaining to Deloitte & Touche's engagement, including without limitation any disputes as to fees or as to the services provided by Deloitte & Touche, until such jurisdiction is relinquished.

8.      The indemnification provisions set forth in the Engagement Letter are hereby approved, subject to the following modifications with respect to the services performed thereunder from August 24, 2022, through the effective date of a chapter 11 plan:

     a.      All requests for payment of indemnity, contribution, or otherwise pursuant to the indemnification provisions shall be made by means of a fee application (interim or final) and shall be subject to the approval and review by this Court to ensure that such payment conforms to the terms of the indemnification provisions and is reasonable based on the circumstances of the litigation or settlement in respect of which indemnity is sought;

3

*provided*, *however*, that in no event shall an indemnified party be indemnified or receive contribution to the extent that any claim arose or expense has resulted from any such losses finally judicially determined by a court of competent jurisdiction to have primarily resulted from the gross negligence, willful misconduct, or bad faith of any indemnified parties;

b.    In no event shall any indemnified party be indemnified or receive contribution or other payment of an indemnity claim under the indemnification provisions if the Debtors or a representative of the Debtors' estates asserts a claim for, and a court determines by final order that, such claim primarily arose out of the gross negligence, willful misconduct, or intentional fraud of such indemnified party; and

c.    In the event an indemnified party seeks reimbursement of attorneys' fees from the Debtors in connection with the payment of an indemnity claim pursuant to the indemnification provisions, the invoices and supporting time records from such attorneys shall be attached to Deloitte & Touche's own interim and/or final fee applications, and such invoices and time records shall be subject to the applicable Fee Guidelines and the approval of this Court under the standards of section 330 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

9.    Notwithstanding anything in the Engagement Letter to the contrary, the following provisions are hereby modified with respect to services performed thereunder for the Debtors from August 24, 2022, through the effective date of a chapter 11 plan, as follows:

a.    Section 10 of the General Business Terms appended to the Engagement Letter shall be deemed deleted and replaced with the following:

Nothing contained in the Agreement shall alter in any way the duties imposed by law on Deloitte & Touche in respect of the Services provided hereunder.  It is understood and agreed that, with respect to the relationship between Deloitte & Touche, on the one hand, and Client, on the other hand, each party hereto is an independent contractor and neither party is nor shall be considered to be, nor shall purport to act as, the other's agent, distributor, partner, joint venture, or representative.

b.    Section 6(a) of the General Business Terms appended to the Engagement Letter shall be deemed deleted.

c.    Section 6(b) of the General Business Terms appended to the Engagement Letter is hereby modified so as to provide that the proposed limitation of liability to the amount of fees paid shall apply only to the extent that Deloitte

4

& Touche's liability is based on negligence. That limitation shall not apply
to the extent that Deloitte & Touche's liability is based on gross negligence,
willful misconduct, or fraud.

d.    Disputes relating to the services provided by Deloitte Tax shall not be
referred to arbitration or mediation unless this Court does not have, retain,
or exercise jurisdiction over the dispute.

10.    To the extent the Debtors and Deloitte & Touche enter into any additional
engagement letter(s) for additional services, the Debtors will file such engagement letter(s) with
the Court and serve such engagement letter(s) upon the applicable notice parties. Absent any
objection filed within 14 days after the filing and service of any additional engagement letter(s),
Deloitte & Touche shall be deemed authorized and approved to provide and be compensated for
such additional services pursuant to this Order and the terms of such additional engagement
letter(s). To the extent any such parties object to such additional engagement letter(s), the Debtors
will promptly schedule a hearing before the Court within 10 days of receipt of any such objection
or as soon thereafter as practicable. All additional services will be subject to the provisions of this
Order.

11.    Notwithstanding anything in the Application or the Engagement Letter to the
contrary, to the extent that Deloitte & Touche uses the services of independent contractors, which
are not affiliates or subsidiaries of Deloitte & Touche (collectively, the "Contractors") in these
chapter 11 cases, Deloitte & Touche shall (i) pass-through the cost of such Contractors to the
Debtors at the same rate that Deloitte & Touche pays the Contractors, (ii) seek reimbursement for
actual costs only, (iii) ensure that the Contractors are subject to the same conflict checks as required
for Deloitte & Touche, and (iv) file with the Court such disclosures required by Bankruptcy Rule
2014.

12.    The Debtors and Deloitte & Touche are authorized to take all actions necessary to
effectuate the relief granted pursuant to this Order in accordance with the Application.

13.     The Debtors will coordinate with Deloitte & Touche and the Debtors' other professionals to minimize unnecessary duplication of efforts among the Debtors' professionals.

14.     To the extent that there may be any inconsistency between the terms of the Application, the Bauer Declaration, the Engagement Letter, and this Order, the terms of this Order shall govern.

15.     Notice of the Application as provided herein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

16.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.


New York, New York
Dated: _____, 2022

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1</u>**

**Engagement Letter**

# Deloitte.

**Deloitte & Touche LLP**
555 West 5th Street
Suite 2700
Los Angeles, CA 90013-1010
USA

Tel: +1 213 688 0800
Fax: +1 213 688 0100
www.deloitte.com

August 24, 2022

Ashwin Prithipaul
Chief Financial Officer
Voyager Digital Holdings, Inc.
33 Irving Plaza Suite 3060
New York, NY 10003

Dear Mr. Prithipaul:

This engagement letter is to confirm the engagement of Deloitte & Touche LLP ("D&T" or "we" or "our") to provide Voyager Digital Holdings, Inc. and its subsidiaries (collectively, the "Client" or "you" or "your") accounting advisory services in connection with recommendations on blockchain audit readiness described below (the "Services").

## SCOPE OF SERVICES

**The Services to be provided by D&T are expected to consist of:**

- Review Client management's revised internal control design and implementation and provide recommendations on gaps and deficiencies, excluding controls related to lending of digital assets.

- Providing advice and recommendations for Client management's consideration on the regulatory requirements associated with listing on the Toronto Stock Exchange ("TSX") or NASDAQ, and internal control requirements associated with various listing options.

- Providing advice and recommendations for Client management's consideration on blockchain audit readiness topics.

- Gaining an understanding of the Client's accounting treatment of digital asset transactions under U.S. GAAP, SEC rules and regulations, and IFRS.

- Researching and communicating relevant accounting literature and guidance under U.S. GAAP, SEC rules and regulations, and IFRS related to digital asset transactions

- Reading and providing advice and recommendations for Client management's consideration on the relevant policies and procedures on digital asset transactions.

All services mentioned above exclude advice and recommendations on digital asset lending related considerations.

The Services will be performed in accordance with the *Statement on Standards for Consulting Services* issued by the American Institute of Certified Public Accountants (AICPA).

DocuSign Envelope ID: BF8A5AB1-68D7-4AAE-AE8F-FE918BC2E57E

## DELIVERABLES

There will be no D&T report or deliverables issued under this engagement. During this engagement, we may provide verbal and written comments and observations as well as potential recommended modifications to internal Client documents. Client management will be solely responsible to review and make all decisions with respect to potential modifications and ultimate approval and acceptance of any comments or observations made by D&T.

Documentation and analyses prepared in connection with the Services shall merely represent the results of the engagement team's research and understanding of similar transactions in the industry and shall not represent an opinion of D&T on any accounting position.

## ENGAGEMENT TEAM

Our engagement team will be composed of practitioners with experience in accounting for transactions under U.S. GAAP, SEC rules and regulations, and IFRS and has been selected to align the team's skills with the technical and practical necessities of the engagement.

| Name | Engagement Role | Deloitte U.S. Firm |
|---|---|---|
| Todd Bauer | Lead Client Service Partner | Deloitte & Touche LLP |
| Mike Marzelli | Industry Advisory Partner | Deloitte & Touche LLP |
| Daniel Israel | Senior Manager | Deloitte & Touche LLP |
| Vivien Tse | Senior Manager | Deloitte & Touche LLP |

The engagement team will, as they consider necessary, call on other individuals with specialized knowledge and experience to assist in the performance of our Services including professionals from certain affiliates of Deloitte & Touche, including those located outside of the United States.

## FEES AND TIMING

The Services are expected to be performed in Los Angeles, CA. This engagement letter is for the period beginning August 24, 2022 through June 30, 2023.

Our hourly rates and professional fees reflect the complex, technical nature of the work to be performed and the need for experienced resources to perform this work. The professional fees for the engagement will be based on actual time incurred by each individual on the project and the respective rate for that level in the following table:

| Resource Level | Hourly Rate |
|---|---|
| Partner, Principal, or Managing Director | $850 |
| Senior Manager | $750 |
| Manager | $650 |
| Senior | $550 |
| Consultant | $450 |
| Offshore Resources – Blended Rate | $350 |

Should specialists or professionals in other countries be required, such applicable rates will also be discussed and agreed upon in advance.

We understand that you will reimburse us for all reasonable expenses incurred in performing our Services on this engagement (including, but not limited to, our reasonable travel, meals, lodging, and mileage expenses) as well as technology- and administrative-related charges.

Fees for this engagement will be billed periodically as the work progresses for fees accrued and expenses incurred by us since our last invoice in performing our Services.

## ACKNOWLEDGMENTS AND AGREEMENTS

**Client management acknowledges and agrees to the following:**

- Client management is responsible for the coordination of obtaining the preapproval of the Board of Directors, in accordance with the Board of Directors' preapproval process, for the Services to be provided by D&T to the Client.

- We will not perform in a capacity equivalent to that of management or an employee of the Client, including assuming any financial reporting oversight role; authorizing, executing, or consummating any transactions, or otherwise exercising authority on behalf of the Client or having the authority to do so; supervising employees of the Client in the performance of their activities; reporting to the board of directors on behalf of management of the Client; or providing any legal advice with respect to, or conducting a legal review of, any documents, records, or policies of the Client; preparing source documents or originating data, in electronic or other form, evidencing the occurrence of any transactions; or recording of any amounts in books and records of the Client.

- The Client agrees that the Services may include advice and recommendations, but agrees that the Client will be solely responsible for the financial statements and all decisions regarding the accounting treatment of any item or transaction (including decisions regarding its compliance with U.S. GAAP, SEC rules and regulations, and IFRS). Furthermore, the Client shall be solely responsible for, among other things (1) designating a member of management with appropriate technical accounting and reporting knowledge to oversee the Services and to sustain meaningful and substantial involvement in all phases of this engagement; and (2) any forward-looking information (including any models, projections, forecasts, budgets, synergies, feasibility analyses, assumptions, estimates, methodologies, or bases for support). For the avoidance of doubt, we will be responsible for the performance of the Services.

- The Services will not constitute an engagement to provide audit, compilation, review, or attest services as described in the pronouncements on professional standards issued by the AICPA, the U.S. Public Company Accounting Oversight Board, or other regulatory body and, therefore, we will not express an opinion or any other form of assurance as a result of performing the Services.

- The Client will not seek our opinion, and we will not provide any such opinion, on the application of accounting principles in connection with this engagement. Furthermore, Client management agrees that it will not represent to any third parties that it has obtained such opinion from us under this engagement. If such opinion is requested under the requirements of AU 625, Reports on the Application of Accounting Principles, any such services requested of us would be subject to (1) a determination by us as to whether such services can be rendered, (2) additional client acceptance procedures, and (3) a separate, signed engagement letter with terms and conditions that are acceptable to us and the Client. We are under no obligation to perform such an engagement, if requested.

- We will not be responsible for the accuracy or completeness of any data made available to us through any third-party tool, database, or software application. The Company further acknowledges and agrees that D&T will have no responsibility for evaluating the functionality of such third-party tool, database, or software application, nor for any results obtained by D&T through the use of such third-party tool, database, or software application.

- The assignment of any ranking or rating and resulting prioritization of recommendations is subjective; others, utilizing the same information, may arrive at different results. Client management is responsible for the final determination of the appropriate scale to be utilized for rankings, the definitions for each ranking on the scale, and the assignment of prioritization to each recommended action item. Deliverables that include any prioritization, categorization, or rating ranking will not be considered an opinion expressed by D&T.

- Because of the inherent limitations of internal control over financial reporting, including the possibility of collusion or improper management override of controls, material misstatements due to error or fraud may occur and not be detected.

- The Services provided under this engagement letter should not be used as the sole basis for management's assertion in connection with the Sarbanes-Oxley Act. D&T will make no representations or warranties nor provide any assurances that (1) the Client's disclosure controls and procedures and the internal control and procedures for financial reporting are compliant with the certification requirement and internal control reporting requirement of the Sarbanes-Oxley Act, or (2) the Client's plans are sufficient to address and correct any shortcomings that would prohibit the Client from making the required certification or from reporting under the Sarbanes-Oxley Act.

- Management is responsible for informing the Client's auditors and the Audit Committee of the Client's board of directors of all deficiencies in the design or operation of internal control over financial reporting, including separately disclosing all such deficiencies that management believes to be significant deficiencies or material weaknesses in internal control over financial reporting. In addition, D&T's personnel performing the Services may communicate directly to the Client's independent accountants such findings and information that have been previously communicated to the management of the Client.

- The Client agrees that any deliverables provided to the Client hereunder by D&T may be disclosed to the Board of Directors and the Audit Committee of the Client only for their informational purposes and solely in their capacity as a member of such Board or Committee.

## OTHER MATTERS

The Client agrees that it will promptly seek the Bankruptcy Court's approval of this engagement.  The application, proposed order and other supporting documents (collectively, the "Application") submitted to the Bankruptcy Court seeking its approval of this engagement must be satisfactory to D&T in all respects.  In addition to D&T's other rights or remedies hereunder, D&T may, in its sole discretion and without any liability arising therefrom, terminate this engagement in the event that (a) a third party objects or threatens to object, or D&T reasonably believes that a third party may object, in the form of an objection or otherwise, to D&T's retention by the Client on the terms and conditions set forth in this letter, (b) a final order authorizing the employment of D&T is not issued by the Bankruptcy Court on or before sixty (60) days from the date of this letter on the terms and conditions set forth herein or on such other terms and conditions as are satisfactory to D&T, or (c) the Application is denied by the Bankruptcy Court.  In any such event, the Client hereby agrees to withdraw or amend, promptly upon D&T's request, any Application filed or to be filed with the Bankruptcy Court to retain D&T's services.

For purposes of this letter, "Bankruptcy Court" shall mean the bankruptcy court with which the Client has commenced its chapter 11 case.

* * * * * *

During this engagement, the Client may request that D&T perform additional services that are not encompassed by this engagement letter. D&T may perform such additional services upon receipt of a separate signed engagement letter with terms and conditions that are acceptable to D&T and the Client.

This engagement letter, incorporating by reference the attached General Business Terms in Exhibit A, constitutes the entire agreement between the Client and D&T with respect to this engagement; supersedes all other oral and written representations, understandings, or agreements relating to this engagement; and may not be amended except by the mutual written agreement of the Client and D&T.

Please indicate your acceptance of this agreement by signing in the space provided below and returning this engagement letter to us. A duplicate of this engagement letter is provided for your records.

Yours truly,

*Deloitte & Touche LLP*

Accepted and Agreed to by Voyager Digital Holdings, Inc.  on behalf of itself and its subsidiaries:

By: _____

Title: CFO
_____

Date: 26-Aug-2022  |  7:38:15 AM PDT
_____

## EXHIBIT A — GENERAL BUSINESS TERMS

1. **Services.** The services provided by D&T (the "Services") under the engagement letter to which these terms are attached (the "Engagement Letter") may include advice and recommendations, but D&T will not make any decisions on behalf of Client in connection with the implementation of such advice and recommendations. For purposes of these terms and the Engagement Letter, "Client" shall mean the entity as defined in the Engagement Letter. Voyager Digital Holdings, Inc. represents and warrants that it has the power and authority to execute this agreement on behalf of, and to bind, itself and its subsidiaries.

2. **Payment of Invoices.** Client will compensate D&T under the terms of the Engagement Letter for the Services performed and expenses incurred, through the term or effective date of termination of this engagement. Subject to any applicable Bankruptcy Court orders, rules or procedures, D&T's invoices are due upon receipt. Subject to any applicable Bankruptcy Court orders, rules or procedures, if payment is not received within thirty (30) days of receipt of an invoice (a) such invoice shall accrue a late charge equal to the lesser of (i) 1½% per month or (ii) the highest rate allowable by law, in each case compounded monthly to the extent allowable by law, and (b) D&T may also suspend or terminate the Services. Client shall be responsible for any taxes imposed on the Services or on this engagement, other than taxes imposed by employment withholding for D&T's personnel or on D&T's income or property.

3. **Term.** Unless terminated sooner as set forth below, this engagement shall terminate upon the completion of the Services. Either party may terminate this engagement, with or without cause, by giving thirty (30) days' prior written notice to the other party. In the event of a termination for cause, the breaching party shall have the right to cure the breach within the notice period. D&T may terminate this engagement upon written notice to Client if D&T determines that the performance of any part of the Services would be in conflict with law, or independence or professional rules.

4. **Deliverables.**

   **(a)** D&T has rights in, and may, in connection with the performance of the Services, use, create, modify, or acquire rights in, works of authorship, materials, information, and other intellectual property (collectively, the "D&T Technology").

   **(b)** Upon full payment to D&T hereunder, and subject to the terms and conditions contained herein, (i) the tangible items specified as deliverables or work product in the Engagement Letter (the "Deliverables") shall become the property of Client, and (ii) D&T hereby grants Client a royalty-free, fully paid-up, worldwide, nonexclusive license to use the D&T Technology contained in the Deliverables in connection with the use of such Deliverables. Except for the foregoing license grant, D&T or its licensors retain all rights in and to all D&T Technology.

   **(c)** To the extent any D&T Technology provided to Client hereunder constitutes inventory within the meaning of section 471 of the Internal Revenue Code, such D&T Technology is licensed to Client by D&T as agent for Deloitte & Touche Products Company LLC on the terms and conditions contained herein. The rights granted in this Section 4 do not apply to any D&T Technology that is subject to a separate license agreement between Client and any third party (including D&T's affiliates).

5. **Limitation on Warranties.** This is a services engagement. D&T warrants that it shall perform the Services in good faith and with due professional care. D&T DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

DocuSign Envelope ID: BF8A5AB1-68D7-4AAE-AF8F-FF918BC2E57E

**6.  Limitation on Damages and Indemnification.**

**(a)** D&T, its subsidiaries and subcontractors, and their respective personnel shall not be liable to Client for any claims, liabilities, or expenses relating to this engagement ("Claims") for an aggregate amount in excess of the fees paid by Client to D&T pursuant to this engagement, except to the extent resulting from the recklessness, bad faith, or intentional misconduct of D&T or its subcontractors. In no event shall D&T, its subsidiaries or subcontractors, or their respective personnel be liable to Client for any loss of use, data, goodwill, revenues, or profits (whether or not deemed to constitute a direct Claim), or any consequential, special, indirect, incidental, punitive, or exemplary loss, damage, or expense relating to this engagement.

**(b)** Client shall indemnify and hold harmless D&T, its subsidiaries and subcontractors, and their respective personnel from all Claims, except to the extent resulting from the recklessness, bad faith, or intentional misconduct of D&T or its subcontractors.

**(c)** In circumstances where any limitation on damages or indemnification provision hereunder is unavailable, the aggregate liability of D&T, its subsidiaries and subcontractors, and their respective personnel for any Claim shall not exceed an amount that is proportional to the relative fault that the conduct of D&T and its subcontractors bears to all other conduct giving rise to such Claim.

**7.  Client Responsibilities.** Client shall cooperate with D&T in the performance of the Services, including providing D&T with reasonable facilities and timely access to data, information, and personnel of Client. With respect to the data and information provided by Client to D&T or its subcontractors for the performance of the Services, Client shall have all rights required to provide such data and information, and shall do so only in accordance with applicable law and with any procedures agreed upon in writing. Client shall be solely responsible for, among other things (a) the performance of its personnel and agents; (b) the accuracy and completeness of all data and information provided to D&T for purposes of the performance of the Services; (c) making all management decisions, performing all management functions, and assuming all management responsibilities; (d) designating a competent management member to oversee the Services; (e) evaluating the adequacy and results of the Services; (f) accepting responsibility for the results of the Services; and (g) establishing and maintaining internal controls, including monitoring ongoing activities. D&T's performance is dependent upon the timely and effective satisfaction of Client's responsibilities hereunder and timely decisions and approvals of Client in connection with the Services. D&T shall be entitled to rely on all decisions and approvals of Client.

**8.  Force Majeure.** Neither party shall be liable for any delays or nonperformance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order, or requirement of any governmental agency or authority.

**9.  Limitation on Actions.** No action, regardless of form, relating to this engagement, may be brought by either party more than one year after the cause of action has accrued, except that an action for nonpayment may be brought by a party not later than one year following the due date of the last payment owing to the party bringing such action.

**10. Independent Contractor.** Each party hereto is an independent contractor and neither party is, nor shall be considered to be, nor shall purport to act as, the other's agent, partner, fiduciary, joint venturer, or representative.

**11. Confidentiality and Internal Use.**

**(a)** All Services and Deliverables shall be solely for Client's benefit, and are not intended to be relied upon by any person or entity other than Client. Client shall not disclose the Services or Deliverables, or refer to the Services or Deliverables in any communication, to any person or entity except (i) as specifically set forth in the Engagement Letter, or (ii) to Client's contractors solely for the purpose of their providing services to Client relating to the subject matter of this engagement, provided that such contractors comply with the restrictions on disclosure set forth in this sentence. Client, however, may create its own materials based on the content of such Services and Deliverables and use and disclose such Client-created materials for external purposes, provided that, Client does not in any way, expressly or by implication, attribute such materials to D&T or its subcontractors.

**(b)** To the extent that, in connection with this engagement, either party (each, the "receiving party") comes into possession of any confidential information of the other (the "disclosing party"), it will not disclose such information to any third party without the disclosing party's consent, using at least the same degree of care as it employs in maintaining in confidence its own confidential information of a similar nature, but in no event less than a reasonable degree of care. The disclosing party hereby consents to the receiving party disclosing such information: (i) as expressly permitted in the Engagement Letter; (ii) to contractors providing administrative, infrastructure, and other support services to the receiving party and subcontractors providing services in connection with this engagement, in each case, whether located within or outside of the United States, provided that such contractors and subcontractors have agreed to be bound by confidentiality obligations similar to those in this Section 11(b); (iii) as may be required by law or regulation, or to respond to governmental inquiries, or in accordance with applicable professional standards or rules, or in connection with litigation or arbitration pertaining hereto; or (iv) to the extent such information (a) is or becomes publicly available other than as the result of a disclosure in breach hereof, (b) becomes available to the receiving party on a nonconfidential basis from a source that the receiving party believes is not prohibited from disclosing such information to the receiving party, (c) is already known by the receiving party without any obligation of confidentiality with respect thereto, or (d) is developed by the receiving party independently of any disclosures made to the receiving party hereunder. In addition, any such information may be used by Deloitte & Touche LLP or any related entity of D&T in the context of responding to its professional obligations as the independent accountants for Client. Nothing in this Section 11(b) shall alter Client's obligations under Section 11(a). D&T, however, may use and disclose any knowledge and ideas acquired in connection with the Services to the extent they are retained in the unaided memory of its personnel.

**(c)** No provision of these terms or the Engagement Letter is or is to be construed as a condition of confidentiality within the meaning of PCAOB Release 2005-014, Internal Revenue Code Sections 6011 and 6111 or the regulations thereunder, any related Internal Revenue Service guidance, or any other similar law, with respect to any Services, Deliverables, or other materials of any kind provided hereunder relating to tax treatment or tax structure (collectively referred to as "Subject Tax Planning Advice"). Notwithstanding anything herein to the contrary, no provision of these terms or the Engagement Letter shall place any limitation on Client's disclosure of any Subject Tax Planning Advice. The Services and Deliverables shall be solely for Client's benefit, and this engagement does not create privity between D&T and any person or party other than Client ("third party"). Neither the Services nor any Deliverables are intended for the express or implied benefit of any third party. Unless otherwise agreed to in writing by D&T, no third party is entitled to rely in any manner or for any purpose on the Services or Deliverables. In the event of any unauthorized reliance on any Subject Tax Planning Advice, Client agrees to indemnify and hold harmless D&T, its subcontractors, and their respective personnel from all third-party claims, liabilities, costs, and expenses.

12. **Survival and Interpretation.** All provisions that are intended by their nature to survive performance of the Services shall survive such performance, or the expiration or termination of this engagement. For purposes of these terms and the Engagement Letter, "D&T" shall mean Deloitte & Touche LLP. No affiliated or related entity of D&T, or such entity's personnel, shall have any liability hereunder to Client and Client will not bring any action against any such affiliated or related entity or such entity's personnel in connection with this engagement. Without limiting the foregoing, such affiliated and related entities are intended third-party beneficiaries of these terms, and may in their own right enforce such terms. Each of the provisions of these terms shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise, notwithstanding the failure of the essential purpose of any remedy. Any references herein to the term "including" shall be deemed to be followed by "without limitation."

13. **Assignment and Subcontracting.** Except as provided below, neither party may assign any of its rights or obligations (including interests or Claims) relating to this engagement or the Services, without the prior written consent of the other party. Client hereby consents to D&T subcontracting or assigning any portion of the Services to any affiliate or related entity, whether located within or outside of the United States. No such subcontracting shall relieve D&T of its obligations hereunder. Services performed hereunder by D&T's subcontractors shall be invoiced as professional fees on the same basis as Services performed by D&T's personnel unless otherwise agreed.

14. **Dispute Resolution.** Any controversy or claim between the parties arising out of or relating to these terms, the Engagement Letter, or this engagement (a "Dispute") shall be resolved by mediation or binding arbitration as set forth below.

   (a) **Mediation.** All Disputes shall first be submitted to nonbinding confidential mediation by written notice to the parties, and shall be treated as compromise and settlement negotiations under the standards set forth in the Federal Rules of Evidence and all applicable state counterparts, together with any applicable statutes protecting the confidentiality of mediations or settlement discussions. If the parties cannot agree on a mediator, the International Institute for Conflict Prevention and Resolution ("CPR"), at the written request of a party, shall designate a mediator.

   (b) **Arbitration Procedures.** If a Dispute has not been resolved within 90 days after the effective date of the written notice beginning the mediation process (or such longer period, if the parties so agree in writing), the mediation shall terminate and the Dispute shall be settled by binding arbitration to be held in New York, New York. The arbitration shall be conducted in accordance with the CPR Rules for Non-Administered Arbitration that are in effect at the time of the commencement of the arbitration, except to the extent modified by this Section 14 (the "Rules").

   The arbitration shall be conducted before a panel of three arbitrators. Each of Client and D&T shall designate one arbitrator in accordance with the "screened" appointment procedure provided in the Rules and the two party-designated arbitrators shall jointly select the third in accordance with the Rules. No arbitrator may serve on the panel unless he or she has agreed in writing to enforce the terms of the Engagement Letter (and its appendices) and to abide by the terms of this Section 14. Except with respect to the interpretation and enforcement of these arbitration procedures (which shall be governed by the Federal Arbitration Act), the arbitrators shall apply the governing law set forth in Section 18 in connection with the Dispute. The arbitrators shall have no power to award damages inconsistent with these terms or the Engagement Letter, including the limitation on liability and indemnification provisions contained herein. The arbitrators may render a summary disposition relative to all or some of the issues, provided that the responding party has had an adequate opportunity to respond to any such application for such disposition. Discovery shall be conducted in accordance with the Rules.

All aspects of the arbitration shall be treated as confidential, as provided in the Rules. Before making any disclosure permitted by the Rules, a party shall give written notice to all other parties and afford such parties a reasonable opportunity to protect their interests. Further, judgment on the arbitrators' award may be entered in any court having jurisdiction.

**(c) Costs.** Each party shall bear its own costs in both the mediation and the arbitration; however, the parties shall share the fees and expenses of both the mediators and the arbitrators equally.

15. **Non-exclusivity.** D&T may (a) provide any services to any person or entity, and (b) develop for itself, or for others, any materials or processes, including those that may be similar to those produced as a result of the Services, provided that D&T complies with its obligations of confidentiality set forth hereunder.

16. **Non-solicitation.** During the term of this engagement and for a period of one (1) year thereafter, each party agrees that its personnel (in their capacity as such) who had substantive contact with personnel of the other party in the course of this engagement shall not, without the other party's consent, directly or indirectly employ, solicit, engage, or retain the services of such personnel of the other party. In the event a party breaches this provision, the breaching party shall be liable to the aggrieved party for an amount equal to thirty percent (30%) of the annual base compensation of the relevant personnel in his or her new position. Although such payment shall be the aggrieved party's exclusive means of monetary recovery from the breaching party for breach of this provision, the aggrieved party shall be entitled to seek injunctive or other equitable relief. This provision shall not restrict the right of either party to solicit or recruit generally in the media.

17. **Entire Agreement, Amendment, and Notices.** These terms, and the Engagement Letter, including attachments, constitute the entire agreement between the parties with respect to this engagement; supersede all other oral and written representations, understandings, or agreements relating to this engagement; and may not be amended except by a written agreement signed by the parties. In the event of any conflict or ambiguity between these terms and the Engagement Letter, these terms shall control. All notices hereunder shall be (a) in writing; (b) delivered to the representatives of the parties at the addresses set forth in the Engagement Letter, unless changed by either party by notice to the other party; and (c) effective upon receipt.

18. **Governing Law and Severability.** These terms, the Engagement Letter, including attachments, and all matters relating to this engagement shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof). If any provision of these terms or the Engagement Letter is unenforceable, such provision shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

**DocuSign**

## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: BF8A5AB168D74AAEAE5FFF918BC2E57F | | Status: Completed |
| Subject: Please DocuSign: Voyager ARA Engagement Letter | | |
| Use Case: Engagement Letter | | |
| Data Classification: Confidential | | |
| WBS (N/A if not available): N/A | | |
| Source Envelope: | | |
| Document Pages: 10 | Signatures: 1 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | Daniel Israel |
| AutoNav: Enabled | | Two Jericho Plaza 3rd Floor |
| EnvelopeId Stamping: Enabled | | ATTN: Accounts Payable |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | Jericho, NY  11753 |
| | | IP Address: 168.149.160.131 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Daniel Israel | Location: DocuSign |
| 8/24/2022 4:28:36 PM | | |

## Signer Events

| Signer Events | Signature | Timestamp |
|---|---|---|
| Ashwin Prithipaul | *[signature]* | Sent: 8/24/2022 4:31:41 PM |
| | | Viewed: 8/24/2022 5:57:47 PM |
| CFO | | Signed: 8/26/2022 7:38:15 AM |
| Ash Prithipaul | | |
| Security Level: Email, Account Authentication (None) | Signature Adoption: Drawn on Device | |
| | Using IP Address: 100.8.109.90 | |
| **Electronic Record and Signature Disclosure:** | | |
| Accepted: 8/24/2022 5:57:47 PM | | |
| ID: b21ad95e-b882-490a-9b3d-cbb954a3a9b5 | | |
| Company Name: Deloitte | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Mig Bukauskaite | **COPIED** | Sent: 8/24/2022 4:31:42 PM |
| | | Viewed: 8/26/2022 7:40:12 AM |
| Security Level: Email, Account Authentication (None) | | |
| **Electronic Record and Signature Disclosure:** | | |
| Not Offered via DocuSign | | |
| Todd Bauer | **COPIED** | Sent: 8/24/2022 4:31:42 PM |
| Audit & Assurance Partner | | |
| Deloitte | | |
| Security Level: Email, Account Authentication (None) | | |
| **Electronic Record and Signature Disclosure:** | | |

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Not Offered via DocuSign | | |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 8/24/2022 4:31:42 PM |
| Certified Delivered | Security Checked | 8/24/2022 5:57:47 PM |
| Signing Complete | Security Checked | 8/26/2022 7:38:15 AM |
| Completed | Security Checked | 8/26/2022 7:38:15 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on 3/27/2020 12:42:09 AM
Parties agreed to: Ashwin Prithipaul

## DISCLOSURE

From time to time, Deloitte USA LLP, Deloitte LLP and their respective subsidiaries (collectively, "we", "us" or "Company") may be required by law to provide to you certain written notices or disclosures related to the use of DocuSign and/or electronic signatures ("Disclosures"). Described below are the terms and conditions for providing to you such Disclosures electronically through the DocuSign, Inc. (DocuSign) electronic signing system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to these terms and conditions, please confirm your agreement by clicking the 'I agree' checkbox.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after signing session and, if you elect to create a DocuSign signer account, you may access them for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.0000 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive Disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required Disclosures only in paper format. How you must inform us of your decision to receive future Disclosures in paper format and withdraw your consent to receive Disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required Disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required Disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper Disclosures. To indicate to us that you are changing your mind, you must withdraw your consent using the DocuSign 'Withdraw Consent' form on the signing page of a DocuSign envelope instead of signing it. This will indicate to us that you have withdrawn your consent to receive required Disclosures electronically from us and you will no longer be able to use the DocuSign system to receive required Disclosures electronically from us or to sign electronically documents from us.

### All Disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all Disclosures that are required to be provided or made available to you. To reduce the chance of you inadvertently not receiving any Disclosures, we prefer to provide all of the required Disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the Disclosures electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the Disclosures electronically from us.

### How to contact Deloitte:

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive Disclosures electronically as follows:

**To advise Deloitte of your new e-mail address**

To let us know of a change in your e-mail address where we should send Disclosures electronically to you, you must send an email message to us at Deloitte Global eSignature Support and in the body of such request you must state: your previous e-mail address and your new e-mail address. We do not require any other information from you to change your email address. In addition, you must notify DocuSign, Inc. to arrange for your new email address to be reflected in your DocuSign account by following the process for changing e-mail in the DocuSign system.

**To request paper copies from Deloitte**

To request delivery from us of paper copies of the Disclosures previously provided by us to you electronically, you must send us an e-mail to Deloitte Global eSignature Support and in the body of such request you must state your e-mail address, full name, US Postal address, and telephone number.

**To withdraw your consent with Deloitte**

To inform us that you no longer want to receive future Disclosures in electronic format you may:
i. decline to sign a document from within your DocuSign session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;
ii. send us an e-mail to Deloitte Global eSignature Support and in the body of such request you must state your e-mail, full name, US Postal Address, and telephone number. We do not need any other information from you to withdraw consent. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process.

**Required hardware and software**

| Operating Systems: | Windows® 2000, Windows® XP, Windows Vista®; Mac OS® X |
|---|---|
| Browsers: | Final release versions of Internet Explorer® 6.0 or above (Windows only); Mozilla Firefox 2.0 or above (Windows and Mac); Safari™ 3.0 or above (Mac only) |
| PDF Reader: | Acrobat® or similar software may be required to view and print PDF files |
| Screen Resolution: | 800 x 600 minimum |
| Enabled Security Settings: | Allow per session cookies |

** These minimum requirements are subject to change. If these requirements change, you will be asked to re-accept the disclosure. Pre-release (e.g. beta) versions of operating systems and browsers are not supported.

**Acknowledging your access and consent to receive materials electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic Disclosures that we will provide to you, please verify that you were able to read this electronic disclosure and that you also were able to print on paper or electronically save this page for your future reference and access or that you were able to e-mail this disclosure and consent to an address where you will be able to print on paper or save it for your future reference

and access. Further, if you consent to receiving Disclosures exclusively in electronic format on the terms and conditions described above, please let us know by clicking the 'I agree' button below.

By checking the 'I agree' box, I confirm that:

- I can access and read this Electronic CONSENT TO ELECTRONIC RECEIPT OF ELECTRONIC CONSUMER DISCLOSURES document; and
- I can print on paper the disclosure or save or send the disclosure to a place where I can print it, for future reference and access; and
- Until or unless I notify Deloitte as described above, I consent to receive exclusively through electronic means all Disclosures that are required to be provided or made available to me by Deloitte.

**<u>Exhibit B</u>**

**Redline**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER AUTHORIZING THE DEBTORS TO**
**EMPLOY AND RETAIN DELOITTE & TOUCHE LLP AS**
**ACCOUNTING ADVISORS EFFECTIVE AS OF AUGUST 24, 2022**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") authorizing the Debtors to employ and retain Deloitte & Touche LLP ("Deloitte & Touche") as accounting advisors, effective as of July 5, 2022, pursuant to the terms and conditions set forth in the Engagement Letter, attached hereto as **Exhibit 1**, as more fully set forth in the Application; and upon the *Declaration of Todd Bauer in Support of the Debtors' Application for Entry of an Order Authorizing the Debtors to Employ and Retain Deloitte & Touche LLP as Accounting Advisors Effective as of August 24, 2022* (the "Bauer Declaration"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that

the relief requested in the Application is in the best interests of the Debtors' estates, their creditors,

and other parties in interest; and this Court having found that the Debtors' notice of the Application

and opportunity for a hearing on the Application were appropriate under the circumstances and no

other notice need be provided; and this Court having reviewed the Application and having heard

the statements in support of the relief requested therein at a hearing before this Court

(the "Hearing"); and this Court having determined that the legal and factual bases set forth in the

Application and at the Hearing establish just cause for the relief granted herein; and it appearing

that Deloitte & Touche does not hold or represent an adverse interest to the Debtors or their estates

and that it is disinterested under section 101(14) of the Bankruptcy Code; and upon all of the

proceedings had before this Court; and after due deliberation and sufficient cause appearing

therefor, it is HEREBY ORDERED THAT:

1.      The Application is granted ~~as~~to the extent set forth herein.

2.      In accordance with sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code,
Bankruptcy Rule 2014, and Local Rules 2014-1 and 2016-1, the Debtors are authorized to employ
and retain Deloitte & Touche as accounting advisors to the Debtors on the terms and conditions
set forth in the Application and the Engagement Letter, as the Engagement Letter has been
modified by this Order and subject to the terms of this Order effective as of August 24, 2022.

3.      The terms and conditions of the Engagement Letter are reasonable and, as modified
by this Order, are approved.

4.      Deloitte & Touche shall be compensated in accordance with sections 330 and 331
of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, this Order, and any other
applicable orders of this Court.

5.      Deloitte & Touche shall include in its fee applications, among other things, contemporaneous time records setting forth a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors in one-tenth hour increments.

6.      In the event that the rates of compensation for the services increase from the rates disclosed for services in the Application or the Engagement Letter, Deloitte & Touche will file a supplemental declaration with this Court describing such increased rates and serve such supplemental declaration upon the Debtors and the United States Trustee at least ten (10) business days prior to the effective date of such increases, which supplemental declaration shall explain the basis for the requested rate increases in accordance with section 330(a)(3)(F) of the Bankruptcy Code and indicate whether the Debtors have received notice of and approved the proposed rate increase.

7.      Notwithstanding anything in the Application or the Engagement Letter to the contrary, prior to the effective date of a chapter 11 plan, this Court retains exclusive jurisdiction over all matters arising out of and/or pertaining to Deloitte & Touche's engagement, including without limitation any disputes as to fees or as to the services provided by Deloitte & Touche, until such jurisdiction is relinquished.

8.      The indemnification provisions set forth in the Engagement Letter are hereby approved, subject to the following modifications with respect to the services performed thereunder from August 24, 2022, through the effective date of a chapter 11 plan:

    a.      All requests for payment of indemnity, contribution, or otherwise pursuant to the indemnification provisions shall be made by means of a fee application (interim or final) and shall be subject to the approval and review by this Court to ensure that such payment conforms to the terms of the indemnification provisions and is reasonable based on the circumstances of the litigation or settlement in respect of which indemnity is sought;

*provided*, *however*, that in no event shall an indemnified party be indemnified or receive contribution to the extent that any claim arose or expense has resulted from any such losses finally judicially determined by a court of competent jurisdiction to have primarily resulted from the gross negligence, willful misconduct, or bad faith of any indemnified parties;

b.    In no event shall any indemnified party be indemnified or receive contribution or other payment of an indemnity claim under the indemnification provisions if the Debtors or a representative of the Debtors' estates asserts a claim for, and a court determines by final order that, such claim primarily arose out of the gross negligence, willful misconduct, or intentional fraud of such indemnified party; and

c.    In the event an indemnified party seeks reimbursement of attorneys' fees from the Debtors in connection with the payment of an indemnity claim pursuant to the indemnification provisions, the invoices and supporting time records from such attorneys shall be attached to Deloitte & Touche's own interim and/or final fee applications, and such invoices and time records shall be subject to the applicable Fee Guidelines and the approval of this Court under the standards of section 330 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

9.    Notwithstanding anything in the Engagement Letter to the contrary, the following provisions are hereby modified with respect to services performed thereunder for the Debtors from August 24, 2022, through the effective date of a chapter 11 plan, as follows:

a.    Section 10 of the General Business Terms appended to the Engagement Letter shall be deemed deleted and replaced with the following:

Nothing contained in the Agreement shall alter in any way the duties imposed by law on Deloitte & Touche in respect of the Services provided hereunder.  It is understood and agreed that, with respect to the relationship between Deloitte & Touche, on the one hand, and Client, on the other hand, each party hereto is an independent contractor and neither party is nor shall be considered to be, nor shall purport to act as, the other's agent, distributor, partner, joint venture, or representative.

b.    Section 6(a) of the General Business Terms appended to the Engagement Letter shall be deemed deleted.

c.    Section 6(b) of the General Business Terms appended to the Engagement Letter is hereby modified so as to provide that the proposed limitation of liability to the amount of fees paid shall apply only to the extent that Deloitte

4

& Touche's liability is based on negligence.  That limitation shall not apply to the extent that Deloitte & Touche's liability is based on gross negligence, willful misconduct, or fraud.

d.    Disputes relating to the services provided by Deloitte Tax shall not be referred to arbitration or mediation unless this Court does not have, retain, or exercise jurisdiction over the dispute.

10.    To the extent the Debtors and Deloitte & Touche enter into any additional engagement letter(s) for additional services, the Debtors will file such engagement letter(s) with the Court and serve such engagement letter(s) upon the applicable notice parties.  Absent any objection filed within 14 days after the filing and service of any additional engagement letter(s), Deloitte & Touche shall be deemed authorized and approved to provide and be compensated for such additional services pursuant to this Order and the terms of such additional engagement letter(s).  To the extent any such parties object to such additional engagement letter(s), the Debtors will promptly schedule a hearing before the Court within 10 days of receipt of any such objection or as soon thereafter as practicable.  All additional services will be subject to the provisions of this Order.

11.    Notwithstanding anything in the Application or the Engagement Letter to the contrary, to the extent that Deloitte & Touche uses the services of independent contractors, which are not affiliates or subsidiaries of Deloitte & Touche (collectively, the "Contractors") in these chapter 11 cases, Deloitte & Touche shall (i) pass-through the cost of such Contractors to the Debtors at the same rate that Deloitte & Touche pays the Contractors, (ii) seek reimbursement for actual costs only, (iii) ensure that the Contractors are subject to the same conflict checks as required for Deloitte & Touche, and (iv) file with the Court such disclosures required by Bankruptcy Rule 2014.

12.    The Debtors and Deloitte & Touche are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

13.     The Debtors will coordinate with Deloitte & Touche and the Debtors' other professionals to minimize unnecessary duplication of efforts among the Debtors' professionals.

14.     To the extent that there may be any inconsistency between the terms of the Application, the Bauer Declaration, the Engagement Letter, and this Order, the terms of this Order shall govern.

15.     Notice of the Application as provided herein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

16.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE