Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF FILING**
**REVISED PROPOSED ORDER AUTHORIZING THE**
**DEBTORS TO EMPLOY AND RETAIN DELOITTE TAX LLP**
**AS TAX SERVICES PROVIDER EFFECTIVE AS OF AUGUST 1, 2022**

**PLEASE TAKE NOTICE** that on September 29, 2022, the above-captioned debtors and

debtors in possession (collectively, the "Debtors") filed the *Application to Employ Deloitte Tax*

*LLP as Tax Services Provider /Debtors' Application for Entry of an Order Authorizing the Debtors*

*to Employ and Retain Deloitte Tax LLP as Tax Services Provider Effective as of August 1, 2022*

[Docket No. 478] (the "Application").

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file a revised proposed

*Order Authorizing the Debtors to Employ and Retain Deloitte Tax LLP as Tax Services Provider*

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
      number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC
      (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY
      10003.

*Effective as of August 1, 2022*, attached hereto as **Exhibit A** (the "Revised Proposed Order").

**PLEASE TAKE FURTHER NOTICE THAT** a comparison between the Revised Proposed Order and the order filed with the Application is attached hereto as **Exhibit B**.

**PLEASE TAKE FURTHER NOTICE** that copies of the Application and other pleadings filed in the above-captioned chapter 11 cases may be obtained free of charge by visiting the website of Stretto at http://www.cases.stretto.com/Voyager.  You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank.]*

## Exhibit A

**Revised Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**ORDER AUTHORIZING THE DEBTORS**
**TO EMPLOY AND RETAIN DELOITTE TAX LLP**
**AS TAX SERVICES PROVIDER EFFECTIVE AS OF AUGUST 1, 2022**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") authorizing the Debtors to employ and retain Deloitte Tax LLP ("Deloitte Tax") as tax services provider, effective as of August 1, 2022, pursuant to the terms and conditions set forth in the Engagement Letter, attached hereto as **Exhibit 1**, as more fully set forth in the Application; and upon the *Declaration of Ala'a Boulos in Support of the Debtors' Application for Entry of an Order Authorizing the Debtors to Employ and Retain Deloitte Tax LLP as Tax Services Provider Effective as of August 1, 2022* (the "Boulos Declaration"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Application is necessary and in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and it appearing that Deloitte Tax does not hold or represent an adverse interest to the Debtors or their estates and that it is disinterested under section 101(14) of the Bankruptcy Code; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Application is granted to the extent set forth herein.

2.      In accordance with sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rules 2014-1 and 2016-1, the Debtors are authorized to employ and retain Deloitte Tax as tax services provider to the Debtors on the terms and conditions set forth in the Application and the Engagement Letter, as the Engagement Letter has been modified by this Order and subject to the terms of this Order effective as of August 1, 2022.

3.      The terms and conditions of the Engagement Letter are reasonable and, as modified by this Order, are approved.

4.      Deloitte Tax shall be compensated in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, this Order, and any other applicable orders of this Court.

5.      Deloitte Tax shall include in its fee applications, among other things, contemporaneous time records setting forth a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors in one-tenth hour increments.

6.      In the event that the rates of compensation for the services increase from the rates disclosed for services in the Application or the Engagement Letter, Deloitte Tax will file a supplemental declaration with this Court describing such increased rates and serve such supplemental declaration upon the Debtors and the United States Trustee at least ten (10) business days prior to the effective date of such increases, which supplemental declaration shall explain the basis for the requested rate increases in accordance with section 330(a)(3)(F) of the Bankruptcy Code and indicate whether the Debtors have received notice of and approved the proposed rate increase.

7.      Notwithstanding anything in the Application or the Engagement Letter to the contrary, prior to the effective date of a chapter 11 plan, this Court retains exclusive jurisdiction over all matters arising out of and/or pertaining to Deloitte Tax's engagement, including without limitation any disputes as to fees or as to the services provided by Deloitte Tax, until such jurisdiction is relinquished.

8.      The indemnification provisions set forth in the general business terms attached to the Engagement Letter are hereby approved, subject to the following modifications with respect to the services performed thereunder from August 1, 2022, through the effective date of a chapter 11 plan:

        a.      All requests for payment of indemnity, contribution, or otherwise pursuant to the indemnification provisions shall be made by means of a fee application (interim or final) and shall be subject to the approval and review by this Court to ensure that such payment conforms to the terms of the

3

indemnification provisions and is reasonable based on the circumstances of the litigation or settlement in respect of which indemnity is sought; *provided*, however, that in no event shall an indemnified party be indemnified or receive contribution to the extent that any claim arose or expense has resulted from any such losses finally judicially determined by a court of competent jurisdiction to have primarily resulted from the recklessness, intentional fraud, intentional misconduct, or bad faith of any indemnified parties;

b.      In no event shall any indemnified party be indemnified or receive contribution or other payment of an indemnity claim under the indemnification provisions if the Debtors or a representative of the Debtors' estates asserts a claim for, and a court determines by final order that, such claim primarily arose out of the recklessness, intentional fraud, intentional misconduct, or bad faith of such indemnified party; and

c.      In the event an indemnified party seeks reimbursement of attorneys' fees from the Debtors in connection with the payment of an indemnity claim pursuant to the indemnification provisions, the invoices and supporting time records from such attorneys shall be attached to Deloitte Tax's own interim and/or final fee applications, and such invoices and time records shall be subject to the applicable Fee Guidelines and the approval of this Court under the standards of section 330 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

9.      Notwithstanding anything in the Engagement Letter to the contrary, the following provisions are hereby modified with respect to services performed thereunder for the Debtors from August 1, 2022, through the effective date of a chapter 11 plan, as follows:

a.      The last sentence of Section 1(c) of the General Business Terms appended to the Engagement Letter shall be deemed deleted and replaced with the following:

Nothing contained in the Agreement shall alter in any way the duties imposed by law on Deloitte Tax in respect of the Services provided hereunder.  It is understood and agreed that, with respect to the relationship between Deloitte Tax, on the one hand, and Client, on the other hand, each party hereto is an independent contractor and neither party is nor shall be considered to be, nor shall purport to act as, the other's agent, distributor, partner, joint venture, or representative.

b.      Section 6(b) of the General Business Terms appended to the Engagement Letter shall be deemed deleted.

4

    c.     Section 6(a) of the General Business Terms appended to the Engagement Letter is hereby modified so as to provide that the proposed limitation of liability to the amount of fees paid shall apply only to the extent that Deloitte Tax's liability is based on negligence. That limitation shall not apply to the extent that Deloitte Tax's liability is based on gross negligence, willful misconduct, or fraud.

    d.     Disputes relating to the services provided by Deloitte Tax shall not be referred to arbitration or mediation unless this Court does not have, retain, or exercise jurisdiction over the dispute.

10.    To the extent the Debtors and Deloitte Tax enter into any additional engagement letter(s) for additional services, the Debtors will file such engagement letter(s) with the Court and serve such engagement letter(s) upon the applicable notice parties. Absent any objection filed within 14 days after the filing and service of any additional engagement letter(s), Deloitte Tax shall be deemed authorized and approved to provide and be compensated for such additional services pursuant to this Order and the terms of such additional engagement letter(s). To the extent any of such parties object to such additional engagement letter(s), the Debtors will promptly schedule a hearing before the Court within 10 days of receipt of any such objection or as soon thereafter as practicable. All additional services will be subject to the provisions of this Order.

11.    Notwithstanding anything in the Application or the Engagement Letter to the contrary, to the extent that Deloitte Tax uses the services of independent contractors, which are not affiliates or subsidiaries of Deloitte Tax (collectively, the "Contractors") in these chapter 11 cases, Deloitte Tax shall (i) pass-through the cost of such Contractors to the Debtors at the same rate that Deloitte Tax pays the Contractors, (ii) seek reimbursement for actual costs only, (iii) ensure that the Contractors are subject to the same conflict checks as required for Deloitte Tax, and (iv) file with the Court such disclosures required by Bankruptcy Rule 2014.

12.    The Debtors and Deloitte Tax are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

13.     The Debtors will coordinate with Deloitte Tax and the Debtors' other professionals to minimize unnecessary duplication of efforts among the Debtors' professionals.

14.     To the extent that there may be any inconsistency between the terms of the Application, the Boulos Declaration, the Engagement Letter, and this Order, the terms of this Order shall govern.

15.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

16.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

## **Exhibit 1**

**Engagement Letter**

DocuSign Envelope ID: 518D20E6-C1E0-47EE-AB68-9CB1E1DGA751

# Deloitte.

**Deloitte Tax LLP**
30 Rockefeller Plaza
New York, NY 10112
Tel: 212-492-4000
Fax: 212-489-1687
www.deloitte.com

August 1, 2022

Ashwin Prithipaul
Chief Financial Officer
Voyager Digital Holdings, Inc.
33 Irving Plaza Suite 3060
New York, NY 10003

Dear Ashwin:

Thank you for choosing Deloitte Tax LLP ("Deloitte Tax" or "our") to provide tax advisory services (the "Services") to Voyager Digital Holdings, Inc. and its subsidiaries and/or affiliates ("Client") in connection with Client's financial restructuring and bankruptcy filing under Chapter 11 of Title 11 the U.S. Code. This engagement letter (the "Engagement Letter") describes the scope of our Services, the respective responsibilities of Deloitte Tax and Client, and the fees associated with such Services.

Client and Deloitte Tax agree that the terms of this Engagement Letter will apply to all Services provided by Deloitte Tax to Client during the period beginning August 1, 2022, unless such services are the subject of a separate written agreement entered into between Deloitte Tax and Client.

## SCOPE OF SERVICES

Deloitte Tax has agreed to perform the Services set forth below related to tax matters arising in connection with Client's debt restructuring and/or bankruptcy filing. The Services, as requested by Client and agreed to by Deloitte Tax, are as follows:

a) Advise Client as it consults with its legal and financial advisors on the cash tax effects of restructuring, bankruptcy and the post-restructuring tax profile, including transaction costs and/or plan of reorganization tax costs, and the cash tax effects of the Chapter 11 filing and emergence transaction, including obtaining an understanding of Client's financial advisors' valuation model to consider the tax assumptions contained therein;

b) Advise Client regarding the restructuring and bankruptcy emergence process from a tax perspective, including analyzing various structuring alternatives and modification of debt;

c) Advise Client on the cancellation of debt income for tax purposes under Internal Revenue Code ("IRC") section 108, including cancellation of debt income generated from a restructuring, bankruptcy emergence transaction, and/or modification of the debt;

d) Advise Client on post-restructuring tax attributes and post-bankruptcy tax attributes (tax basis in assets, tax basis in subsidiary stock and net operating loss carryovers) available under the applicable tax regulations and the reduction of such attributes based on Client's operating projections; including a technical analysis of the effects of Treasury Regulation Section 1.1502-28 and the interplay with IRC sections 108 and 1017;

e) Advise Client on net built-in gain or net built-in loss position at the time of "ownership change" (as defined under IRC section 382), including limitations on use of tax losses generated from post-restructuring or post-bankruptcy asset or stock sales;

DocuSign Envelope ID: 518D20E6-C1E0-47EE-AB68-9CB1E1DGA751

Voyager Digital Holdings, Inc.
August 1, 2022
Page 2

f)   If eventually applicable, advise Client on the effects of tax rules under IRC sections 382(l)(5) and (l)(6) pertaining to the post-bankruptcy net operating loss carryovers and limitations on their utilization, and Client's ability to qualify for IRC section 382(l)(5).

g)   Advise Client as to the treatment of post-petition interest for federal and state income tax purposes, including the applicability of the interest limitations under IRC section 163(j);

h)   Advise Client as to the state and federal income tax treatment of pre-petition and post-petition reorganization costs including restructuring-related professional fees and other costs, the categorization and analysis of such costs, and the technical positions related thereto;

i)   Advise Client with its evaluation and modeling of the tax effects of liquidating, disposing of assets, merging or converting entities as part of the restructuring, including the effects on federal and state tax attributes, state incentives, apportionment and other tax planning;

j)   Advise Client regarding tax basis calculation methodologies to account for disposed digital assets, particularly the determination of cost basis and calculations of gain/loss on disposition;

k)   Advise Client on state income tax treatment and planning for restructuring or bankruptcy provisions in various jurisdictions including cancellation of indebtedness calculations, adjustments to tax attributes and limitations on tax attribute utilization;

l)   Advise Client regarding potential U.S. tax information reporting obligations and withholding obligations that may arise relating to distributions to claimants;

m)   Advise Client regarding potential U.S. tax information reporting obligations and withholding obligations relating to payroll tax withholding, independent contractors, and payments to vendors;

n)   Advise Client regarding non-U.S. tax information obligations with respect to sales and dispositions of digital assets in non-U.S. jurisdictions, as applicable;

o)   Advise Client regarding potential intercompany claims between Client's affiliates, as well as relevant cross-border tax considerations related to the intercompany claims;

p)   Advise Client on responding to tax notices and audits from various taxing authorities;

q)   Assist Client with identifying potential tax refunds and advise Client on procedures for tax refunds from tax authorities;

r)   Advise Client on income tax return reporting of restructuring and/or bankruptcy issues and related matters;

s)   Assist Client with documenting as appropriate, the tax analysis, development of Client's opinions, recommendation, observations, and correspondence for any proposed restructuring alternative tax issue or other tax matter described above (does not include preparation of information for tax provision or financial reporting purposes);

t)   Advise Client with non-U.S. tax implications and structuring alternatives;

Voyager Digital Holdings, Inc.
August 1, 2022
Page 3

u) Advise Client with its efforts to calculate tax basis in the stock of each of Client's subsidiaries or other equity interests;

v) Advise Client with its efforts to calculate tax basis in assets by entity;

w) Assist Client to analyze its domestic and cross-border lending transaction flows to determine whether the lending activities are respected as loans for income tax purposes as well as consider tax consequences of potential unwinding of the lending transactions;

x) Assist Client to consider potential exposure related to cross-border pricing of intercompany transaction flows;

y) Assist Client to consider potential exposure related to transaction taxes (e.g., VAT, sales and use tax) that may apply to certain non-exempt entities and/or transaction types;

z) Assist Client to consider tax consequences of any digital asset based compensation plans for which Client may be liability to its employees;

aa) As requested by Client and as may be agreed to by Deloitte Tax, advise Client regarding other state, federal, or international income tax questions that may arise in the course of this engagement;

bb) As requested by Client and as may be agreed to by Deloitte Tax, assist in documenting as appropriate, the tax analysis, development of Client's opinions, recommendation, observations, and correspondence for any proposed debt restructuring or combination alternative tax issue or other tax matter described above; and

The performance of the Services by Deloitte Tax may be based upon a review of various documentation including, but not limited to, legal opinions and books and records (collectively, "books and records") relevant to Client's transactions and business activity that Client provides to Deloitte Tax. With respect to such Services, Deloitte Tax is entitled to assume without independent verification the accuracy of all representations, assumptions, information and data provided by Client and its representatives. Deloitte Tax may ask Client to clarify or supplement information provided in this context.

**TAX POSITIONS AND POTENTIAL PENALTIES**

In accordance with our professional standards, should Deloitte Tax become aware during the performance of our Services of tax positions for which Client or Deloitte Tax may be subject to potential penalties by taxing authorities, Deloitte Tax will discuss whether such penalties may be avoided through adequate disclosure to taxing authorities. Client should be aware that in certain instances, the disclosure requirements applicable to Deloitte Tax, as a tax return preparer, may exceed those applicable to Client.

**REPORTABLE TRANSACTIONS**

The IRS and several states have promulgated rules that require taxpayers to disclose their participation in reportable transactions by attaching a disclosure form to their federal and/or state income tax returns and,

DocuSign Envelope ID: 548D30E6-C1E0-47EE-AB68-9CB1E1DCA751

Voyager Digital Holdings, Inc.
August 1, 2022
Page 4

when necessary, by filing a copy of that disclosure form with the IRS and/or the applicable state authority. These rules impose significant disclosure obligations that may encompass transactions entered into in the normal course of business. The Services that are the subject of this Engagement Letter do not include any obligation by Deloitte Tax to identify any reportable transactions or disclosure obligations. Any services regarding reportable transactions will be provided under the terms of a separate engagement letter. Client is responsible for ensuring that it has properly disclosed all reportable transactions; failure to make required disclosure will result in substantial penalties. Deloitte Tax will not be liable for any penalties resulting from Client's failure to accurately and timely file any required reportable transaction disclosure.

## ACKNOWLEDGMENTS AND AGREEMENTS

The Services will be performed in accordance with the *Statement on Standards for Consulting Services* established by the American Institute of Certified Public Accountants ("AICPA"). Services to be performed by Deloitte Tax will be established by mutual agreement and can be changed or modified in the same manner. Deloitte Tax will promptly inform Client of any circumstances that warrant a change in the scope of the specific services to be provided, and similarly, Client agrees to notify Deloitte Tax promptly if modifications to the Services are requested.

Client acknowledges and agrees that the Services provided pursuant to this Engagement Letter will be based solely upon:

a) The representations, information, documents and other facts provided to Deloitte Tax by Client, its personnel and any representatives thereof;

b) Deloitte Tax's assumption that there will be timely execution, delivery, and performance, as may be required, by any representation or documents submitted by Client with respect to the Deloitte Tax Services;

c) Client's understanding that Deloitte Tax will only be responsible to provide tax advice with respect to the specific matter, transaction or question actually presented by Client, including the type of tax and the taxing jurisdiction specifically identified by Client (e.g., federal, foreign, state, local, sales, excise, etc.);

d) Client's understanding that any tax advice provided pursuant hereto will be based upon the law, regulations, cases, rulings, and other tax authority in effect at the time specific tax advice is provided. If there are subsequent changes in or to the foregoing tax authorities (for which Deloitte Tax shall have no specific responsibility to advise Client), Client acknowledges that such changes may result in that tax advice being rendered invalid or necessitate (upon Client's request) a reconsideration of that prior tax advice;

e) Client's understanding that the results of Deloitte Tax's tax advice may be audited and challenged by the IRS and other tax agencies, who may not agree with our positions. In this regard, Client understands that the result of any tax advice is not binding on the IRS, other tax agencies or the courts and should never be considered a representation, warranty, or guarantee that the IRS, other tax agencies or the courts will concur with our advice or opinion;

f) Client's understanding that the review of documents [and tax returns] under this Engagement Letter does not constitute an engagement to provide audit, compilation, review or attest services as

DocuSign Envelope ID: 548D20E6-C1E0-47EE-AB68-9CB1E1DCA751

Voyager Digital Holdings, Inc.
August 1, 2022
Page 5

described in the pronouncements on professional standards issued by the AICPA or the U.S. Public Company Accounting Oversight Board;

g)  Client's understanding that Deloitte Tax, as a result of providing such tax advice, is under no obligation to represent Client with respect to any such challenge or an administrative or judicial challenge thereof.  Deloitte Tax may be available to represent Client before the appropriate taxing authorities, if permissible, for an additional fee that is mutually agreed upon; and

h)  Client's understanding that Client will maintain ultimate responsibility for all management decisions and management functions.  Client understands and agrees that the ultimate responsibility with respect to the appropriate application and interpretation of any oral or written communications rests with management of Client.  Deloitte Tax will not be held liable for any misinterpretations of oral or written communications regarding the application of tax advice.

Although Deloitte Tax may in certain circumstances provide Client with drafts of a deliverable before it is finalized, Client understands that Client may not rely upon any of the analysis, conclusions, or recommendations unless and until the final deliverable is issued.  Any part of our analysis, including the recommendations or conclusions may change between the time of any draft and the issuance of a final deliverable.

## CONSENT FOR DISCLOSURE AND USE OF TAX RETURN INFORMATION

Client authorizes that any and all information (i) furnished to Deloitte Tax for or in connection with the Services under this Engagement Letter, (ii) derived or generated by Deloitte Tax from the information described in (i) above, or (iii) associated with prior years' tax return information in the possession of Deloitte Tax may, for a period of up to eight (8) years from the end of the tax year to which the information relates, be disclosed to and considered and used by any Deloitte Tax affiliate, related entity (or its affiliate) or subcontractor, in each case, whether located within or outside the United States, engaged directly or indirectly in providing Services under this Engagement Letter, tax planning or preparation of tax returns, audited financial statements, or other financial statements or financial information as required by a government authority, municipality or regulatory body.  Disclosures under this paragraph may consist of all information contained in Client's tax returns; if Client wishes to request a more limited disclosure of tax return information, Client must inform Deloitte Tax.  Client acknowledges that Client's tax return information may be disclosed to Deloitte Tax affiliates, related entities (or their affiliates) or subcontractors located outside of the United States.

## FEES AND EXPENSES

The Deloitte Tax fees for Services are based on the amount of professional time incurred and the below agreed-upon hourly rates.  The hourly rates (in $ US) vary depending upon the experience level of the professionals involved.

| | |
|---|---|
| Partner/Principal/Managing Director | $1,160 |
| Senior Manager | $1,020 |
| Manager | $870 |
| Senior | $750 |
| Staff | $630 |

DocuSign Envelope ID: 518D20E6-C1E0-47EE-AB68-9CB1E1DGA751

Voyager Digital Holdings, Inc.
August 1, 2022
Page 6

In the normal course of business, Deloitte Tax revises its hourly rates to reflect changes in responsibilities, increased experience, geographical differentials, and increased costs of doing business. Changes in the foregoing agreed-upon hourly rates will be subject to Client's approval in advance and will be noted on the invoices for the first time period in which the revised rates become effective.

Reasonable out-of-pocket expenses, including travel (with air travel based on coach fares), and an allocation of estimated administrative and technology costs incurred (e.g., report production, research materials, document delivery services, and other administrative and technology costs) are reflected as additional amounts on the bills.

In addition, in connection with the engagement Deloitte Tax will be entitled to compensation for any time and actual reasonable out-of-pocket expenses including, without limitation, reasonable legal fees and expenses that may be incurred in considering or responding to discovery requests or other requests for documents or information, or in participating as a witness or otherwise in any legal, regulatory, or other proceedings relating to the Client, including, without limitation, those relating to Client but arising other than as a result of or in connection with this agreement.

Deloitte Tax expects to apply for compensation for professional services rendered and for reimbursement of expenses incurred, in accordance with applicable provisions of Title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure, the applicable local rules of bankruptcy procedure (the "Local Rules") and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under Bankruptcy Code § 330. In such event, payment of fees and reimbursement of expenses will be subject to ultimate allowance and approval by the Bankruptcy Court (as defined below). However, in the interim, Client will ask the Bankruptcy Court for approval to allow Deloitte Tax to submit invoices to Client for prompt payment in accordance with the Local Rules or practices of the Bankruptcy Court regarding monthly payment of professional fees and expenses. Accordingly, Deloitte Tax will provide Client with an invoice on a periodic basis, with the invoice due and payable pursuant to the payment procedures adopted by the Bankruptcy Court in Client's Chapter 11 proceeding. If applicable, payment of these invoices will be made by Client on an interim basis subject to approval and allowance upon application to and order by the Bankruptcy Court.

Client agrees that Client will promptly seek the Bankruptcy Court's approval of this engagement and the Engagement Letter. The application, proposed order and other supporting documents (collectively, the "Application") submitted to the Bankruptcy Court seeking its approval of this engagement must be satisfactory to Deloitte Tax in all respects. In addition to Deloitte Tax's other rights or remedies hereunder, Deloitte Tax may, in its sole discretion and without any liability arising there from, terminate this engagement in the event that (a) a third party objects or threatens to object, or Deloitte tax reasonably believes that a third party may object, in the form of an objection or otherwise, to Deloitte Tax's retention by Client on the terms and conditions set forth in this Engagement Letter, (b) a final order authorizing the employment of Deloitte Tax is not issued by the Bankruptcy Court on or before sixty (60) days from the filing date of Client's Chapter 11 petition on the terms and conditions set forth herein, or on such other terms and conditions as are satisfactory to Deloitte Tax, or (c) the Application is denied by the Bankruptcy Court. In such event, Client hereby agrees to withdraw or amend, promptly upon Deloitte Tax's request, any Application filed or to be filed with the Bankruptcy Court to retain Deloitte Tax's services in the Chapter 11 proceeding.

Voyager Digital Holdings, Inc.
August 1, 2022
Page 7

For purposes of this Engagement Letter, "Bankruptcy Court" shall mean the United States Bankruptcy Court with which Client has filed a Chapter 11 petition.

**ACCEPTANCE**

This Engagement Letter, together with the General Business Terms attached hereto, constitutes the entire agreement between Client and Deloitte Tax with respect to this engagement, supersedes all other oral and written representations, understandings or agreements relating to this engagement, and may not be amended except by the mutual written agreement of the Client and Deloitte Tax.

Please indicate your acceptance of this agreement by signing in the space provided below and returning a copy of this Engagement Letter to our office. Your signature constitutes Client's consent to disclosure and use of Client's tax return information in the manner described above. Your signature also constitutes acknowledgment of receipt of the attached Privacy Notice.

Thank you for giving Deloitte Tax the opportunity to serve you. If you have any questions regarding the Services described in this Engagement Letter, or any other assistance that Deloitte Tax may provide to you, please feel free to contact Elias Tzavelis at (212) 436-7815or Ala'a Boulos at (713) 982-3805
Very truly yours,

**DELOITTE TAX LLP**

By: _____

Ala'a Boulos
Partner

**AGREED AND ACCEPTED**

Voyager Digital Holdings, Inc., on behalf of itself and its subsidiaries and/or affiliates

By: _____        Date: _04-Aug-2022 | 7:03:41 PM EDT_____

Ashwin Prithipaul

DocuSign Envelope ID: 518D20E6 C1E0 47EE A868 9CB1E1DGA751

## DELOITTE TAX LLP GENERAL BUSINESS TERMS

**1.    Contract and Parties.**

(a)  The engagement letter and any appendices and exhibits other than these General Business Terms ("Engagement Letter") issued by Deloitte Tax LLP ("Deloitte Tax") and addressed to the Client, a particular work order associated with such Engagement Letter ("Work Order"), if any, and these General Business Terms (together, the "Contract") constitute the whole agreement between the Client and Deloitte Tax in relation to the services, delivered work product (including Advice as defined below) described in the Contract to be provided by Deloitte Tax (the "Services") and Deloitte Tax's responsibilities for providing the Services. Capitalized terms not defined in these General Business Terms shall have the meaning given to them in the Engagement Letter.

(b)  This Contract is between the Client and Deloitte Tax. For the purposes of this Contract:

"Client" shall mean the entity specified in the Engagement Letter and shall include such of the Client's subsidiaries and/or affiliates as identified in the Engagement Letter and/or Work Order or, if none is identified, all of the Client's subsidiaries and affiliates. The signatory of the Engagement Letter represents and warrants that it has the power and authority to (i) sign the Contract, and (ii) to bind, itself and its subsidiaries and/or affiliates.

"Advice" shall mean all advice, opinions, reports and other work product in any form (including Deliverables) provided by or on behalf of Deloitte Tax and/or its Subcontractors as part of the Services.

"Content" means any publications, thought pieces or other content or materials that are provided by Deloitte Tax or through the Deloitte Technologies that are not an output of the Services.

"Deliverables" means any and all tangible work outputs of the Services to be delivered by Deloitte Tax as part of the Services, including written returns, reports, documents and other materials.

(c)  Deloitte Tax may subcontract any Services under this Contract to any other Deloitte Entity and/or to any other third party, in either case whether within or outside of the United States (collectively "Subcontractor"). Additionally, Deloitte Tax may utilize other Deloitte Entities and third parties (in either case whether within or outside the United States) to provide administrative, infrastructure, hosting, the use of cloud-based solutions and other support services to Deloitte Tax (including with respect to the Deloitte Technologies). The Client's relationship is solely with Deloitte Tax as the entity contracting to provide the Services. Each party to the Contract is an independent contractor and neither party is, nor shall be considered to be, the other's agent, distributor, partner, fiduciary, joint venturer, co-owner, or representative.

(d)  Deloitte Tax remains responsible to the Client for all of the Services performed or to be performed under this Contract, including Services performed by its Subcontractors. Accordingly, to the fullest extent possible under applicable law (i) none of the Deloitte Entities (except Deloitte Tax) will have any liability to the Client; (ii) the Client will not bring any claim or proceedings of any nature (whether in contract, tort, breach of statutory duty or otherwise, and including, but not limited to, a claim for negligence) in any way in respect of or in connection with this Contract against any of the Deloitte Entities (except Deloitte Tax); and (iii) the Client will also ensure that no Client subsidiary or affiliate which is not a party to the Contract brings any claim or proceedings of any nature (whether in contract, tort, breach of statutory duty or otherwise, and including, but not limited to, a claim for negligence) in any way in respect of or in connection with this Contract against any of the Deloitte Entities.

(e)  "Deloitte Entities" means Deloitte Touche Tohmatsu Limited, a UK private company limited by guarantee ("DTTL"), its member firms and their respective subsidiaries and affiliates (including Deloitte Tax), their predecessors, successors and assignees, and all partners, principals, members, owners, directors, employees, subcontractors (including the Subcontractors) and agents of all such entities. Neither DTTL nor, except as

DocuSign Envelope ID: 548D20E6-C1E0-47EE-AB68-9CB1E1DGA7E4

expressly provided herein, any member firm of DTTL, has any liability for each other's acts or omissions. Each member firm of DTTL is a separate and independent legal entity operating under the names "Deloitte", "Deloitte & Touche", "Deloitte Touche Tohmatsu" or other related names; and services are provided by member firms or their subsidiaries or affiliates and not by DTTL.

**2.    Responsibilities of the Client and of Deloitte Tax.**

**(a)    Responsibilities of the Client**

(i)    The Client shall cooperate with Deloitte Tax and its Subcontractors in connection with the performance of the Services, including, without limitation, providing Deloitte Tax and its Subcontractors with reasonable facilities and timely access to data, information and personnel of the Client. The Client shall be responsible for the performance of its personnel and third parties retained by the Client, for the timeliness, accuracy and completeness of all data and information (including all financial information and statements) provided to Deloitte Tax and its Subcontractors by or on behalf of the Client and for the implementation of any Advice provided. Deloitte Tax and its Subcontractors may use and rely on information and data furnished by the Client or others without verification. The performance of the Services is dependent upon the timely performance of the Client's responsibilities under the Contract and timely decisions and approvals of the Client in connection with the Services. Deloitte Tax and its Subcontractors shall be entitled to rely on all decisions and approvals of the Client.

(ii)    The Client shall be solely responsible for, among other things: (A) making all management decisions, performing all management functions and assuming all management responsibilities; (B) designating one or more individuals who possess suitable skill, knowledge, and/or experience, preferably within senior management to oversee the Services; (C) evaluating the adequacy and results of the Services; (D) accepting responsibility for implementing the results of the Services; and (E) establishing and maintaining internal controls, including, without limitation, monitoring ongoing activities. The provisions in the preceding sentence are not intended to and do not alter, modify or change in any manner the duties and obligations of Deloitte Tax as agreed to and set forth in this Contract. With respect to the data and information provided by the Client to Deloitte Tax or its Subcontractors for the performance of the Services, the Client shall have all rights required to provide such data and information and shall do so only in accordance with applicable law and with any procedures agreed upon in writing.

**(b)    Responsibilities of Deloitte Tax**

(i)    The Services provided are not binding on tax or other governmental or regulatory authorities or the courts and do not constitute a representation, warranty, or guarantee that the tax or other governmental or regulatory authorities or the courts will concur with any Advice. Any Services provided by or on behalf of Deloitte Tax will be based upon the law, regulations, cases, rulings, and other tax authority in effect at the time the specific Services are provided. Subsequent changes in or to the foregoing (for which Deloitte Tax shall have no responsibility to advise the Client) may result in the Services provided by or on behalf of Deloitte Tax being rendered invalid.

(ii)    Except as specifically agreed to in writing, Deloitte Tax shall not provide Advice regarding the financial accounting treatment of any transaction implemented from the Services and will not assume any responsibility for any financial reporting with respect to the Services. Deloitte Tax shall have no responsibility to address any legal matters or questions of law, other than tax law in relation to the Services.

(iii) In formulating any Advice as part of the Services, Deloitte Tax may discuss ideas with the Client orally or show the Client drafts of such Advice. To the extent that the content of drafts or oral Advice are expected to be finalized and confirmed to the Client in writing, such confirmed Advice shall supersede any previous drafts or oral Advice and Deloitte Tax shall not be responsible if the Client or others choose to rely on, act or refrain from acting on the basis of any drafts or oral Advice.

(iv) Deloitte Tax will use its reasonable endeavors, acting in a commercially prudent manner, to carry out the Services in accordance with any timetable specified in the Contract. However, it is agreed that any dates specified

DocuSign Envelope ID: 518D20E6-C1E0-47EF-AB68-9CB1E1DCA751

in the Contract for the performance of any part of the Services, including delivery of any Advice, are estimated dates for planning purposes only. Deloitte Tax will notify the Client promptly if it expects or encounters any significant delays which will materially affect achievement of any timetable for delivery of the Services.

(v)  Unless expressly agreed otherwise in writing, each item of Advice will be deemed accepted (and the Services or relevant part completed) when such Advice has been delivered in its final form and no material objection to the Advice or its content is notified by the Client to Deloitte Tax in writing within fourteen (14) days of delivery or when first use of the Advice is made by or on behalf of the Client, whichever occurs first.

### 3.    Payment of Invoices.

Deloitte Tax's invoices are due and payable by the Client upon presentation subject to any applicable Bankruptcy Court orders, rules or procedures. If payment of an invoice is not received within thirty (30) days of the invoice date or such later date as payment is permitted under any applicable Bankruptcy Court orders, rules or procedures ("Due Date"), Deloitte Tax reserves the right to charge interest at the rate of (i) 1½% per month or, if higher, (ii) the rate mandated or allowable by law, in each case compounded monthly to the extent allowable by law. Without limiting its other rights or remedies, Deloitte Tax shall have the right to suspend or terminate the Services entirely or in part if payment is not received by the Due Date. The Client shall be responsible for all taxes, such as VAT, sales and use tax, gross receipts tax, withholding tax, and any similar tax, imposed on or in connection with the Services, other than Deloitte Tax's income and property taxes. If any portion of an invoice is disputed, the Client shall notify Deloitte Tax within fifteen (15) days of receipt of the disputed invoice and pay the undisputed portion of that invoice by the Due Date.

### 4.    Term.

(a)  This Contract or any Work Order hereunder, may be terminated in whole or in part by either party at any time, without cause, by giving written notice to the other party not less than thirty (30) days before the effective date of termination.

(b)  Either party may terminate this Contract or any Work Order hereunder in whole or in part by written notice to the other on or at any time after the occurrence of any a material breach by the other party of an obligation under the Contract or any respective Work Order hereunder and, if the breach is capable of remedy, the defaulting party failing to remedy the breach within 30 days of receipt of notice of such breach.

(c)  Deloitte Tax may terminate this Contract or any Work Order hereunder in whole or in part, with immediate effect upon written notice to the Client if Deloitte Tax determines that (i) a governmental, regulatory, or professional entity, or other entity having the force of law has introduced a new, or modified an existing, law, rule, regulation, interpretation, or decision, the result of which would render Deloitte Tax's performance of any part of the Contract illegal or otherwise unlawful or in conflict with independence or professional rules; or (ii) circumstances change (including, without limitation, changes in ownership of the Client or of its affiliates) so that Deloitte Tax's performance of any part of the Contract would be illegal or otherwise unlawful or in conflict with independence or professional rules.

(d)  Upon termination of the Contract or any Work Order hereunder for any reason, the Client will compensate Deloitte Tax in accordance with the terms of the Contract for the Services performed and expenses incurred through the effective date of termination.

(e)  Termination of any part of the Contract shall not affect the remainder of the Contract. These General Business Terms shall continue to apply to any Work Order in force that has not itself been terminated in accordance with the provisions of Paragraphs 4(a), (b) or (c).

### 5.    Ownership of Deloitte Property & Work Products.

(a)  To the extent that any property (whether tangible or intangible) of any Deloitte Entity is used or developed in connection with this Contract, such property, including work papers, shall remain the property of the relevant Deloitte Entity. Subject to payment of all of Deloitte Tax's fees due in connection with the Services and this Contract, the Client shall obtain a perpetual, royalty-free, non-exclusive, non-transferable license to use any Advice for the purpose set out in the Contract (or in the Advice) and in compliance with the provisions of this Contract. Deloitte Tax shall have ownership (including, without limitation, copyright and other intellectual property ownership) of the Advice and all rights to use and disclose its ideas, concepts, know-how, methods, techniques, processes and skills, and adaptations thereof in conducting its business, and the Client shall ensure that it and its subsidiaries and/or affiliates do not assert or cause to be asserted against any Deloitte Entity any prohibition or restraint from so doing. Any intellectual property and other proprietary rights in the material and data provided by the Client for performing the Services shall remain the property of the Client.

(b)  Deloitte Tax and its Subcontractors, in connection with performing the Services, may develop or acquire general experience, skills, knowledge and ideas. Any Deloitte Entity may use and disclose such experience, skills, knowledge and ideas subject to the obligations of confidentiality set out in Paragraph 10.

(c)  The Client shall also be entitled to have access to and use of those Deloitte Technologies supplied solely for the purposes of receiving the Services, and for no other purposes, in accordance with and subject to the provisions of the terms of use and licenses that may be applicable to such Deloitte Technologies as notified by Deloitte Tax and agreed by the Client (acting reasonably). Client shall be responsible for all personnel (including other third parties, such as advisors) that Client and Deloitte Tax have agreed shall have access to the Deloitte Technologies in connection with the Services.  As between the Client and Deloitte Tax, and for the benefit of the respective Deloitte Entity owning the Deloitte Technologies, Deloitte Tax and/or the respective Deloitte Entity will own and retain ownership of all intellectual property rights and other proprietary rights of any kind in the Deloitte Technologies that are used or developed in connection with this Contract.

(d)  To the extent any Deloitte Technologies provided to Client hereunder constitute inventory within the meaning of section 471 of the Internal Revenue Code, such Deloitte Technologies are licensed to Client by Deloitte Tax as agent for Deloitte Tax Products Company LLC on the terms and conditions contained herein. The rights granted in this Paragraph 5 do not apply to any intellectual property that is subject to a separate mutually executed license agreement between Client and any third party (including Deloitte Tax's affiliates).

(e)  "Deloitte Technologies" means all know-how and software, system interfaces, templates, methodologies, ideas, concepts, techniques, tools, processes, Content and technologies, including cloud-based technologies and algorithms owned by, licensed to or developed by any Deloitte Entity and used by Deloitte Tax and its Subcontractors in performing the Services or its other obligations.

**6.    Limitations on Damages.**

(a)  Deloitte Tax shall not be liable to the Client for any claims, liabilities, losses, damages, costs or expenses arising under or in connection with the Contract ("Claims") for an aggregate amount in excess of the fees paid under the Contract, or the fees paid under a particular Work Order for Claims arising under such Work Order, by the Client to Deloitte Tax, for that part of the Services giving rise to the Claim, except to the extent it is finally determined to have resulted primarily from the recklessness, intentional fraud, intentional misconduct or bad faith of Deloitte Tax, any Deloitte Entity or any Subcontractor retained for providing the Services to the Client.

(b)  In no event shall any Deloitte Entity (including Deloitte Tax and its Subcontractors) be liable whether in contract, tort or otherwise for any losses incurred as a result of loss of use, contracts, data, goodwill, revenues or profits (whether or not deemed to constitute direct Claims) or any consequential, special, indirect, incidental, punitive or exemplary loss, damage, or expense arising under or in connection with the Contract.

(c)  In circumstances where all or any portion of the provisions of this Paragraph 6 are finally determined to be unavailable, the aggregate liability of Deloitte Tax, any other Deloitte Entity (including Subcontractors) and

DocuSign Envelope ID: 518D30E6-C1E0-47EE-AB68-9CB1E1DCA751

their respective personnel for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

(d)  Deloitte Tax's responsibility for the Services is solely toward the Client identified in the Contract or Advice to be entitled to rely on the Services, and not toward any other subsidiary or affiliate of the Client. If more than one Client subsidiary or affiliate is a party to the Contract or is identified in the Contract, Deloitte Tax's responsibility is solely toward the Client for whose benefit the Services were provided.

(e)  The liability cap in Paragraph 6(a) applies in aggregate to each and all Claims which from time to time arise under or in connection with the Contract and the Services, whether such Claims are made at the same or different times or by the Client entity and/or other persons. The liability cap in Paragraph 6(a) also applies to any and all Claims against any other Deloitte Entities, including the Subcontractors, if and only to the extent that it is judicially determined that any of them have any liability under or in connection with the Contract or the Services.

(f)  If the liability exclusion for other Deloitte Entities provided in Paragraph 1(d) is for any reason not effective, then the limitations on liability provided for in this Paragraph 6 shall apply to the other Deloitte Entities (including Subcontractors) as if they were named therein.

(g)  The provisions of Paragraph 6 shall not apply to any liability which by the governing law of the Contract is unlawful to limit or exclude.

**7.  Limitation on Warranties.**

**THIS IS A SERVICES AGREEMENT. DELOITTE TAX WARRANTS THAT IT SHALL PERFORM THE SERVICES IN GOOD FAITH AND WITH DUE PROFESSIONAL CARE AND SKILL. TO THE FULLEST EXTENT PERMITTED BY LAW, DELOITTE TAX DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.**

**8.  Force Majeure.**

Neither party shall be liable for any delays or nonperformance resulting from circumstances or causes beyond its reasonable control, including, without limitation, acts or omissions or the failure to cooperate by the other party (including, without limitation, entities or individuals under its control, or any of their respective officers, directors, employees, other personnel and agents), fire or other casualty, act of God, epidemic, strike or labor dispute, war or other violence, or any law, order, or requirement of any governmental agency or authority.

**9.  Limitation on Actions.**

No action, regardless of form, relating to the Contract or the Services, may be brought by either party more than two years after the cause of action has accrued under applicable law, except that an action for non-payment of Deloitte Tax's invoices by the Client may be brought at any time.

**10.  Confidentiality.**

(a)  To the extent that, in connection with the Contract, Deloitte Tax comes into possession of any tax or other information related to the Services, trade secrets or other proprietary information relating to the Client which is either designated by the disclosing party as confidential or is by its nature clearly confidential ("Confidential Information"), Deloitte Tax shall not disclose such Confidential Information to any third party without the Client's consent. The Client hereby consents to Deloitte Tax disclosing such Confidential Information (i) to contractors providing administrative, infrastructure, hosting, cloud-based solutions and other support services to Deloitte Tax as well as to any Deloitte Entity (including any Subcontractors) and their respective personnel, in any case, whether located within or outside of the United States, provided that such contractors and Subcontractors adhere to confidentiality obligations similar to those in this Paragraph 10; (ii) to Client's legal

DocuSign Envelope ID: 518D20E6-C1E0-47EE-AB68-9CB1E1DGA751

advisors, auditors, and insurers; and (iii) as may be required by law, regulation, judicial or administrative process, or in accordance with applicable professional standards, or in connection with potential or actual mediation, arbitration or litigation. To the extent permitted by applicable law or regulation, Deloitte Tax shall provide the Client with prompt written notice of disclosures required by law, regulation, judicial or administrative process. The obligation of confidentiality shall not apply to the extent such Confidential Information (A) is or becomes publicly available (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of a breach by Deloitte Tax; (B) becomes available to any Deloitte Entity on a non-confidential basis from a source other than the Client which Deloitte Tax reasonably believes is not prohibited from disclosing such Confidential Information to Deloitte Tax by an obligation of confidentiality to the Client; (C) is known by any Deloitte Entity prior to its receipt from the Client without any obligation of confidentiality; or (D) is developed by any Deloitte Entity independently of Confidential Information disclosed by the Client.

(b)  The Client shall not disclose to any third party any Advice without the express written consent of Deloitte Tax, except (i) disclosure may be made to the extent mandatory laws, applicable regulations, rules and professional obligations prohibit limitations on disclosure; (ii) if the Client or its affiliates have securities registered with the United States Securities and Exchange Commission and any Deloitte Entity is the auditor of the Client or any of its affiliates, in which case no restrictions or limitations are placed by Deloitte Tax on the Client's disclosure of the tax treatment or tax structure associated with the tax Services or transactions described in the Contract and the Client acknowledges that none of its other advisors has imposed or will impose restrictions or limitations with such tax treatment or tax structure; (iii) to the extent the United States Internal Revenue Code and applicable Internal Revenue Service guidance relating to confidential tax shelters (or comparable law or guidance from other taxing authorities in other jurisdictions) apply, in which case there are no restrictions or limitations on the disclosure of the tax treatment or tax structure; (iv) to the extent legislation or regulations of any jurisdiction provide for the reporting to the tax authorities of certain tax arrangements or transactions, there shall be no restrictions or limitations on the disclosure of any such arrangements or transactions provided as part of the Advice; (v) the Client may disclose the Advice on a need to know basis to any affiliate that is not a member of the Client for information purposes only, provided that the Client ensures and the recipient undertakes to keep such Advice confidential and not to bring any claim of any kind against any Deloitte Entity in relation to the Advice or the Services; and (vi) on a need to know basis to statutory auditors of the Client in their capacity as such.

(c)  The Client shall use the Advice, solely for the purposes specified in the Contract or Advice and, without limitation, shall not, without the prior written consent of Deloitte Tax, use any Advice, in connection with any business decisions of any third party or for advertisement purposes. All Services are intended only for the benefit of the Client identified in the Contract or Advice as being entitled to rely on the Advice. The mere receipt of any Advice (or any information derived therefrom) by any other persons is not intended to create any duty of care, professional relationship or any present or future liability of any kind between those persons and Deloitte Tax.

## 11.  Assignment.

Neither party may assign or otherwise transfer this Contract without the prior express written consent of the other. Neither party will directly or indirectly agree to assign or transfer to a third party any Claim against the other party arising out of this Contract.

## 12.  Indemnification.

The Client shall indemnify and hold harmless Deloitte Tax, and any other Deloitte Entity from all third-party Claims, except to the extent finally determined to have resulted primarily from the recklessness, intentional fraud, intentional misconduct or bad faith of Deloitte Tax, or any other Deloitte Entity. In circumstances where all or any portion of the provisions of this paragraph are finally determined to be unavailable, the aggregate liability of Deloitte Tax and all other Deloitte Entities (including their respective personnel) for any Claim shall

DocuSign Envelope ID: 548D20E6-C1E0-47EE-AB68-9CB4E1DGA754

not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

**13.  Electronic Communications.**

(a)  Except as instructed otherwise in writing, Deloitte Entities and the Client are authorized to receive properly addressed fax, e-mail (including e-mails exchanged via Internet media) and voicemail communication for both sensitive and non-sensitive documents and other communications concerning this Contract, as well as other means of communication used or accepted by the other. Deloitte Entities may also communicate electronically with tax and other authorities.

(b)  It is recognized that the internet is inherently insecure and that data can become corrupted, communications are not always delivered promptly (or at all) and that other methods of communication may be appropriate. Electronic communications are also prone to contamination by viruses. Each party will be responsible for protecting its own systems and interests and, to the fullest extent permitted by law, will not be responsible to the other on any basis (contract, tort or otherwise) for any loss, damage or omission in any way arising from the use of the internet or from access by any Deloitte Entity personnel to networks, applications, electronic data or other systems of the Client.

**14.  Other Clients.**

Nothing in this Contract will prevent or restrict any Deloitte Entity, including Deloitte Tax, from providing services to other clients (including services which are the same or similar to the Services) or using or sharing for any purpose any knowledge, experience or skills used in, gained or arising from performing the Services subject to the obligations of confidentiality set out in Paragraph 10 even if those other clients' interests are in competition with the Client. Also, to the extent that Deloitte Tax possesses information obtained under an obligation of confidentiality to another client or other third party, Deloitte Tax is not obliged to disclose it to the Client, or use it for the benefit of the Client, however relevant it may be to the Services.

**15.  Staff.**

Deloitte Tax and the Client each agree not to directly or indirectly solicit, employ or engage any personnel of the other party who within six (6) months of such action has been involved directly with the provision of the Services or otherwise directly connected with this Contract, except where an individual responds directly to a general recruitment campaign.

**16.  Destruction of Working Papers.**

Deloitte Tax may retain copies of documents and files provided by the Client in connection with the Services for purposes of compliance with professional standards and internal retention policies. Any documents and files retained by Deloitte Tax on completion of the Services subject to the obligations of confidentiality set forth in Paragraph 10(a) (including documents legally belonging to the Client) may routinely be destroyed in accordance with Deloitte Entities' policies applying from time to time.

**17.  Marketing Material & Use of Name.**

Neither the Deloitte Entities nor the Client shall use the other's name, trademarks, service marks, logos, and/or branding in external publicity material without such other party's prior written consent.

**18.  Spreadsheets, Models and Tools.**

In the course of providing the Services, Deloitte Tax may make reference to spreadsheets, models or tools (together "Models") that the Client provides to Deloitte Tax or requests Deloitte Tax to rely upon ("Client

DocuSign Envelope ID: 548D30E6-C1E0-47EE-AB68-9CB1E1DGA751

Models") or that Deloitte Tax otherwise uses in connection with the Services ("Deloitte Models"). All Models have limitations and may not produce valid results for all possible combinations of input data with the result that actual and potential errors are not detected. Unless otherwise expressly agreed in the Contract: (i) Deloitte Tax will not be responsible for reviewing, testing or detecting any errors in any Client Models; (ii) no Deloitte Model will be provided or treated as Advice; and (iii) where Deloitte Tax provides any Deloitte Model by way of explanation or illustration of any Advice, Deloitte Tax makes no representation, warranty or undertaking (express or implied) of any kind about the accuracy, suitability or adequacy of any such Deloitte Model for the Client's own needs.

### 19. Data Protection.

(a)  Each party shall comply with its respective obligations under the applicable data protection laws to the extent that, in connection with the Contract and the Services, a party stores, processes and transfers any personal data to which data protection laws apply ("Personal Data").

(b)  The Client confirms that it has obtained all legally required authorizations to disclose and/or transfer any Personal Data to Deloitte Tax and its Subcontractors, including across borders and outside the territory of the European Economic Area ("EEA").

(c)  Deloitte Tax may collect data from the Client, other Deloitte Entities, third parties and the data subject directly. Deloitte Tax may for purposes of the collection, use, storage or processing thereof, transfer the Client's and/or the data subject's Personal Data to: (i) administrative contractors, including providers of cloud-based solutions; (ii) another country for legitimate purposes; (iii) another Deloitte Entity.

(d)  To the extent that Deloitte Tax processes Personal Data in or transferred from the EEA in its performance of the Services and to the extent that the EU General Data Protection Regulation 2016/679 ("GDPR") applies, the remainder of the provisions of this Paragraph 19 shall apply.

(e)  In this Paragraph 19, "Data Protection Legislation" means GDPR, together with all other applicable legislation relating to privacy or data protection including any statute or statutory provision which amends, extends, consolidates or replaces the same. The terms "personal data," "data subject," "controller," "processor" and "process" (and its derivatives) shall have the meanings given to them in the Data Protection Legislation.

(f)  The parties acknowledge that certain of the Services may be performed by Deloitte Tax acting as a controller and certain Services may be performed by Deloitte Tax acting as a processor. The Contract shall identify whether it is the understanding of the parties that Deloitte Tax carries out the particular Services as a controller or a processor. In the absence of any such indication, the capacity in which Deloitte Tax acts shall be determined in accordance with the Data Protection Legislation. When acting as a controller, the provisions of Paragraphs 19(a) to (f) and Paragraph 19.1 shall apply. When acting as a processor, the provisions of Paragraphs 19(a) to (f) and Paragraph 19.2 shall apply. Where Deloitte Tax acts as a processor, the Contract shall set out the scope of the processing carried out by Deloitte Tax in relation to the Services.

### 19.1 If Deloitte Tax Is Acting As Data Controller

(a)  Each of the Client and Deloitte Tax shall be considered to be a controller in respect of Personal Data disclosed to Deloitte Tax by or on behalf of the Client and processed in connection with the Contract and the Services and each of the Client and Deloitte Tax shall comply with its obligations as a controller under the Data Protection Legislation in respect of Personal Data processed by it in connection with the Contract and the Services.

(b)  The Client acknowledges that Deloitte Tax may process Personal Data as a controller for the purpose of, or in connection with the Services to comply with: (i) applicable legal, professional or regulatory requirements; (ii)

DocuSign Envelope ID: 548D30E6-C1E0-47EE-AB68-9CB1E1DCA751

requests and communications from competent authorities as permitted by law; and (iii) administrative, financial accounting, risk analysis, client relationship and other reasonable business purposes.

(c)   The Client shall collect any necessary permission, provide any necessary notice and do all such other things as are required under the Data Protection Legislation in order for it to disclose Personal Data to Deloitte Tax for the purposes described in Paragraph 19.1(b) and such other purposes as may be described in the Contract.

(d)   Deloitte Tax shall process the Personal Data as reasonably required to provide the Services, meet its legal or regulatory obligations or for its other reasonable business purposes (including quality control and administration) and may disclose Personal Data to any third parties including its Subcontractors, regulators and any party based in any jurisdiction including a jurisdiction outside the EEA provided that such disclosure is reasonably required in connection with such purposes and is at all times in compliance with the Data Protection Legislation that applies to Deloitte Tax in its performance of the Services.

## 19.2 If Deloitte Tax Is Acting As Data Processor

(a)   Where Deloitte Tax may process Personal Data as a processor Deloitte Tax shall: (i) only process Personal Data: (A) to the extent necessary to provide the Services; (B) in accordance with the specific reasonable instructions of the Client (except to the extent, in the reasonable opinion of Deloitte Tax, such instructions infringe the Data Protection Legislation or other applicable law, in which case Deloitte Tax shall notify the Client); or (C) as required by any competent authority or law that applies to Deloitte Tax in its performance of the Services; (ii) implement appropriate technical and organizational measures designed to provide a level of security appropriate to the risk relating to its processing of the Personal Data and any security measures specified in the Contract; (iii) keep, and require that its personnel and agents keep, Personal Data confidential in accordance with Deloitte Tax's confidentiality obligations contained in Paragraph 10(a); (iv) notify the Client in writing without undue delay, and provide reasonable cooperation after becoming aware of a personal data breach (that is, a breach of security leading to the accidental or unlawful destruction, loss, alteration, unauthorized disclosure of, or access to, Personal Data processed by Deloitte Tax) relating to Personal Data in Deloitte Tax's possession or control; (v) provide reasonable cooperation and assistance to the Client in relation to any request by a data subject to have access to Personal Data held about them or in relation to a reasonable request, allegation or complaint by a competent authority or data subject, including notifying the Client in writing without undue delay of receipt of any such request (except to the extent prevented from doing so by applicable law); (vi) be entitled to recover any reasonable costs incurred in complying with Paragraph 19.2(a)(v) above, or as result of assisting the Client in meeting its obligations under the Data Protection Legislation; (vii) subject to applicable legal, professional or regulatory requirements or business practices, at the reasonable request of the Client, delete or return all Personal Data to the Client on termination or expiry of the Contract and in such circumstance the provisions of Paragraph 19.1 apply.

(b)   To the extent required by Data Protection Legislation applicable to Deloitte Tax in its performance of the Services, Deloitte Tax shall maintain a record of its processing activities and provide such cooperation and information to the Client as is reasonably necessary for the Client to demonstrate compliance with its obligations pursuant to Data Protection Legislation. Such cooperation shall include permitting the Client, at the Client's sole cost and expense, to audit Deloitte Tax's compliance with this Paragraph 19.2 provided that (unless expressly required otherwise by any competent authority): (i) reasonable notice of not less than thirty (30) days is given of any proposed audit and the parties shall, acting reasonably, agree to the scope and parameters of any such audit; (ii) to the extent the audit scope is covered in any audit carried out for Deloitte Tax by an independent third party auditor within twelve (12) months prior to the Client's audit request and there have been no material changes to the controls audited, Deloitte Tax may share the report to the extent relevant to the Client and the disclosure of such report shall be deemed to satisfy the audit request made by the Client; (iii) where, acting reasonably, a specific audit is still required by the Client, such audit shall be conducted during regular business hours, subject to Deloitte Tax's policies and confidentiality requirements and may not unreasonably interfere with Deloitte Tax's business activities; (iv) the audit shall be subject to Deloitte Tax's duties of confidentiality

DocuSign Envelope ID: 548D20E6-C1E0-47EE-AB68-9CB1E1DCA751

owed to any of its clients, personnel or other parties; and (v) the rights granted in this Paragraph 19.2(b) may not be conducted more than once in any calendar year.

(c)  The Client authorizes Deloitte Tax to use any Subcontractor, including any Deloitte Entity, to process Personal Data as a subprocessor of Deloitte Tax provided that Deloitte Tax shall (i) procure that such processing is subject to a written contract or other legal act with such subprocessor containing data protection obligations no less onerous than those set out in this Paragraph 19.2; and (ii) remain liable for the acts and omissions of any such subprocessor with respect to the processing of Personal Data to the same extent Deloitte Tax would be liable if it had caused such acts or omissions. Deloitte Tax's material subprocessors who have been engaged to perform Services for Client, if any, are listed in the Contract.

(d)  Deloitte Tax shall be entitled to (i) transfer Personal Data to, and (ii) process Personal Data in, any jurisdiction including a jurisdiction outside the EEA, including to any Subcontractor, provided that such transfer is either permissible or legitimized by a valid transfer mechanism under Data Protection Legislation or as otherwise permitted under the Contract.

## 20.  Anti-corruption.

Deloitte Tax understands that the Client may be subject to laws that prohibit bribery and/or providing anything of value to government officials with the intent to influence that person's actions in respect of the Client. Deloitte Tax may be subject to similar laws and codes of professional conduct and has its own internal policies and procedures which prohibit illegal or unethical behaviors. In providing the Services, Deloitte Tax undertakes not to offer, promise or give financial or other advantage to another person with the intention of inducing a person to perform improperly or to reward improper behavior for the benefit of the Client, in each case, in violation of applicable law.

## 21.  Disclosure Laws.

The Deloitte Entities may be obligated to notify relevant authorities of certain types of arrangements and of proposals to implement such arrangements. The decision to make such a notification, its timing and content, is a matter that the Deloitte Entities reserve entirely to their sole discretion. The Deloitte Entities may also be obligated to notify those authorities of the participants in those arrangements. The Client may also have obligations under the same legislation to give notification of such arrangements. Where there are other current or future laws or regulations in any jurisdiction that require disclosure relevant to the Deloitte Entities Services, the Deloitte Entities will also comply with those disclosure requirements. For the avoidance of doubt nothing in this Contract restricts the Client from disclosing any Deliverables or other Advice to any relevant authority.

## 22.  Counterparts and Language.

This Contract may be signed in any number of counterparts (whether such counterparts are original or fax or in the form of a pdf attachment to an e-mail). Each signed counterpart shall be deemed to be an original thereof, but all the counterparts shall together constitute one and the same instrument. Where there are versions of the Contract in the English language and another language, in the event of any discrepancies between versions, the English language version shall prevail.

## 23.  Entire Agreement, Modification and Effectiveness.

Nothing discussed prior to execution of the Contract induced, nor forms part of, the Contract except to the extent repeated in this Contract. This Contract supersedes any previous agreement, understanding or communication, written or oral, relating to its subject matter. No variation to the Contract shall be effective unless it is documented in writing and signed by authorized representatives of both parties, provided, however, that the scope of the Services may be changed by agreement of the parties in writing, including by e-mail or fax. If

Deloitte Tax has already started work (e.g., by gathering information, project planning or giving initial advice) at the request of the Client then the Client agrees that this Contract is effective from the start of such work.

## 24.  Survival and Interpretation and Third-Party Beneficiary.

(a)  Any provisions of the Contract which either expressly or by their nature extend beyond the expiration or termination of this Contract shall survive such expiration or termination.

(b)  If any provision of the Contract is found by a court of competent jurisdiction or other competent authorities to be unenforceable, in whole or in part, such provision or the affected part shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein. **Each of the provisions of the Contract or any Work Order shall apply to the fullest extent of the law, whether in contract, statute, tort (including without limitation negligence), or otherwise, notwithstanding the failure of the essential purpose of any remedy.** Any references herein to the term "including" shall be deemed to be followed by "without limitation".

(c)  Deloitte Entities are intended third-party beneficiaries of the Contract. Each such Deloitte Entity may in its own right enforce such terms, agreements and undertakings.

## 25.  Governing Law and Submission to Jurisdiction.

This Contract, and all matters relating to it (including non-contractual obligations) shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof). Any action or proceeding arising out of or relating to this Contract or the Services shall be brought and maintained exclusively in New York County, the State of New York. Subject to Paragraph 26, the parties hereby expressly and irrevocably: (i) submit to the exclusive jurisdiction of such courts for the purposes of any such action or proceeding and (ii) waive, to the fullest extent permitted by law, any defense of inconvenient forum to the venue and maintenance of such action in any such courts. Nothing in this paragraph will prevent either party, at any time before or after the dispute resolution procedures are invoked, from commencing legal proceedings to protect any intellectual property rights, trade secrets or confidential information or to preserve any legal right or remedy. **DELOITTE TAX AND THE CLIENT HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM RELATING TO THE CONTRACT.**

## 26.  Dispute Resolution.

The parties agree to attempt in good faith to resolve any dispute or claim arising out of or in connection with the Contract promptly through negotiations between senior management. If the matter is not resolved through negotiation, then either party may request that a good faith attempt is made to resolve the dispute or claim by participating in an Alternative Dispute Resolution ("ADR") procedure. If the dispute or claim has not been resolved within sixty (60) days of a request being made for reference to ADR, then legal proceedings may be commenced in respect of the matter. Nothing in this paragraph prevent either party, at any time before or after the dispute resolution procedures are invoked, from commencing legal proceedings to protect any intellectual property rights, trade secrets or confidential information or to preserve any legal right or remedy.

## 27.  Third Parties and Internal Use.

Deloitte Tax acknowledges that Deloitte Tax has not placed any limitations on the Client's disclosure of the tax treatment or tax structure associated with the tax services or transactions described in the Contract. Nothing in this paragraph shall be construed as limiting or restricting disclosure of the tax treatment or tax structure of the transaction as described in Rule 3501(c)(i) of PCAOB Release 2005-014, or IRC sections 6011 and 6111 and

DocuSign Envelope ID: 518D30E6-C1E0-47EF-AB68-9CB1E1DCA751

related IRS guidance. The Client acknowledges that none of its other advisors have imposed or will impose any conditions of confidentiality with respect to the tax treatment or tax structure associated with the tax services or transactions described in the Contract. All Services shall be solely for the Client's informational purposes and internal use, and this engagement does not create privity between Deloitte Tax and any person or party other than the Client ("third party"). This engagement is not intended for the express or implied benefit of any third party. Unless otherwise agreed to in writing by Deloitte Tax, no third party is entitled to rely, in any manner or for any purpose, on the advice, opinions, reports, or other Services of Deloitte Tax. In the event of any unauthorized reliance, the Client agrees to indemnify and hold harmless Deloitte Tax and its personnel from all third-party claims, liabilities, costs and expenses.

## Deloitte Tax LLP Privacy Statement

*Last revised: August 17, 2020*

**Introduction**

This Privacy Statement explains what personal information we may collect about you in connection with our services engagement and how this personal information may be used and shared. This Privacy Statement also sets out your rights in relation to your personal information and tells you who you can contact if you have questions.

**To whom does this Privacy Statement apply and what does it cover?**

This Privacy Statement applies to Deloitte Tax LLP (also referred to as "**Deloitte Tax**", "**we**", "**us**", **and** "**our**"), an entity within the Deloitte Network. As used in this Privacy Statement, the "Deloitte Network" refers to one or more of Deloitte Touche Tohmatsu Limited, a UK private company limited by guarantee ("DTTL"), its network of member firms and their related entities. DTTL and each of its member firms are legally separate and independent entities. Please see deloitte.com/about for a detailed description of the legal structure of Deloitte Touche Tohmatsu Limited and its member firms.

This Privacy Statement sets out how we will process your personal information as part of our provision of tax, social security and (in certain jurisdictions outside of the United States) immigration related services as may be relevant to you. Deloitte Tax is providing these services either under a direct contract with you or via a contract with another person (such as a company or a partnership or a trustee) who has asked us to provide the services.

Your personal information will be protected and handled with consideration for its confidentiality and Deloitte Tax will only disclose it as set out in the "To whom will we disclose your personal information?" section below.

In this Privacy Statement, we refer to handling, collecting, protecting and storing your personal information as "processing".

**What personal information do we collect?**

Deloitte Tax may collect personal information relating to you such as:

- name
- contact details (such as work or home address, email and phone numbers)
- date of birth
- government identifiers (such as social security number and passport details)
- financial information
- calendar data (where applicable)

In order to provide services to you, Deloitte Tax may receive and also need to process personal information about you that may be considered special category (or "sensitive") personal information (special category personal information is considered to include information about your health, racial or ethnic origin, political opinions, religious or philosophical beliefs, trade union membership, genetic data, biometric data or sexual orientation). Special category personal information about you includes information that may be reasonably inferred from other information that we receive.

Where we receive special category personal information or other information from which special category personal information can be reasonably inferred, we will require explicit consent in order to process it.

**How do we collect personal information?**

Deloitte Tax may collect personal information about you in different ways:

- you may provide it directly to us
- we may obtain it because of the services that Deloitte Tax provides or has previously provided
- we may receive it from other members of the Deloitte Network or from third parties, such as your employer/partnership, or a tax authority and/or other relevant authority/administrative bodies
- we may observe or infer it from the information you provide to us and/or the way you interact with us

This personal information can be received in any manner, including in-person discussions, telephone conversations, and electronic or other written communications.

Without access to all the personal information that we need, we may be unable to provide or complete the services.

Where another party (such as a company or a partnership or any third parties acting on your or their behalf) provides your personal information to us, they must also comply with their obligations under the relevant privacy laws and regulations. If you believe that the entity for whom you work or a third party has not provided you with details of the personal information that it holds about you and/or has not obtained your authority to provide us with that personal information for processing as described in this Privacy Statement, then please contact such entity directly.

**Disclosing personal information to us relating to third parties**

If any personal information which you provide to us relates to any third party, for example a spouse or civil partner, individuals (including children) who depend on you financially, or a joint account holder or a beneficiary or trustee of a trust, then by providing us with their personal information you will need to ensure that you have obtained any necessary permissions from those persons to the use of their personal information in the way set out in this Privacy Statement, or you are otherwise permitted to give us this personal information. You should share a copy of this Privacy Statement with those other individuals before disclosing any personal information about them to us.

**How do we use your personal information?**

Deloitte Tax processes personal information about you to:

- establish or maintain our relationship with you
- provide services to you and/or family member(s) or to the entity that has engaged us to provide the services

We may also use your personal information for the purposes of, or in connection with:

- compliance with applicable legal, regulatory or professional requirements
- protecting our rights and/or property

**On what basis do we process personal information about you?**

This Privacy Statement sets out the grounds upon which we rely in order to process your personal information.

We may use your personal information for the purposes outlined above because:

(a)  where relevant, we have a contract with you to provide services and processing your personal information is necessary for the performance of such contract;

or (b) we have a legitimate interest in processing your personal information, which may be to:

- provide services to you and/or to the entity that has engaged us to provide the services;
- support the management of our client engagements;
- evaluate, develop or improve our services or products; or
- protect our business interests.

or (c) we are subject to legal, regulatory or professional obligations.

**To whom will we disclose your personal information?**

In connection with one or more of the purposes outlined in this Privacy Statement, we may disclose your personal information to:

- other members of the Deloitte Network
- those with whom you have requested us to share information, such as your spouse or civil partner
- competent authorities, including courts and authorities regulating us or another member of the Deloitte Network, in each case to comply with legal, regulatory or professional obligations or requests
- vendors and administrative, support, infrastructure and other service providers handling your information on our behalf; in each case, such vendors and service providers will be contractually bound by confidentiality and privacy obligations consistent with the obligations in this Privacy Statement

© 2020. For information, contact Deloitte Touche Tohmatsu Limited.

## Deloitte Tax LLP Privacy Statement

Last revised: August 17, 2020

- third parties to whom we disclose information in the course of providing services to you or to the entity that has engaged us to provide the services

Any personal information that we have referenced above under "What personal information do we collect?" may be disclosed to the third parties identified in this section for the purposes set forth herein.

Please note that some of the recipients of your personal information referred to above may be located in countries or regions without data protection rules similar to those in effect in your area of residence. In such cases, adequate safeguards will be in place to protect your personal information.

For further details about the transfers described above and the adequate safeguards used by Deloitte Tax with respect to such transfers, please contact us using the details below.

**Do we sell your personal information?**

We do not sell your personal information.

**How do we keep your personal information secure?**

We have in place reasonable commercial standards of technology and operational security to protect your personal information from loss, misuse and unauthorized access, disclosure, alteration or destruction. Only authorized personnel, with appropriate awareness of privacy obligations, are provided access to your personal information.

**How long will we keep your information?**

We retain personal information as long as is necessary to fulfill the purposes identified in this Privacy Statement or (i) as otherwise necessary to comply with applicable laws or professional standards, or (ii) as long as the period in which litigation or investigations might arise in respect of our services.

**What are your rights in relation to your personal information?**

You have various rights in relation to your personal information. In particular, you have a right to:

- obtain confirmation that we are processing your personal information and request a copy of the personal information we hold about you
- ask that we update the personal information we hold about you, or correct such information that you think is inaccurate or incomplete

Depending on the jurisdiction in which you are located, you may also have the right to:

- ask that we delete personal information that we hold about you, or restrict the way in which we use your personal information
- withdraw consent to our processing of your personal information (to the extent our processing is based on your consent)
- ask us to stop or start sending you marketing messages at any time
- obtain and/or move your personal information to another service provider
- object to our processing of your personal information
- request that we provide the following information regarding the personal information we hold about you:
  - The categories and/or specific pieces of personal information we collected
  - The categories of sources from which personal information is collected
  - The business or commercial purpose for collecting personal information
  - The categories of third parties with whom we shared personal information

Where our processing of special category personal information is reliant on your consent and you withdraw that consent, we will cease processing the relevant information for the purposes of providing our services and the effect may be that we are no longer able to provide the services.

However, we may still retain a copy of the relevant information for as long as necessary to comply with applicable laws or professional standards, or as long as the period in which litigation or investigations might arise in respect of our services.

To exercise any of your rights under applicable law described above regarding your personal information, please complete our Personal Information Request Form (available at https://datasubject.deloitte.com/) or call us at this toll-free number **+1-844-919-0711**. When calling us, please provide your full name, mailing address and email address.

Applicable laws may also give you the right to lodge a complaint with a local supervisory authority related to this Privacy Statement. For individuals in the EU, you may contact your European or Swiss data protection authority regarding our processing of your personal information.

We will not discriminate against you for exercising any of your rights with respect to your personal information.

**How do we verify your identity when you submit a data subject request?**

For certain personal information requests, we must first verify your identity before processing your request. To do so, we may ask you to provide us with your full name, contact information, and relationship to Deloitte. Depending on your request, we may ask you to provide additional information. Once we receive this information, we will then review it and determine whether we are able to match it to the information Deloitte maintains about you to verify your identity.

**How do we process third party requests?**

If you are submitting a personal information request on behalf of someone other than yourself, please contact us at USPrivacyQuestions@deloitte.com and include proof that you are authorized to make the request. This may be in the form of a written authorization signed by the person whom you are acting on behalf of or a valid power of attorney.

**Privacy Shield Notice**

Deloitte LLP and its United States affiliates, including Deloitte Tax, adhere to the EU-U.S. and Swiss Privacy Shield Framework as set forth by the U.S. Department of Commerce with respect to personally identifiable information that is transferred from the European Economic Area, the United Kingdom and Switzerland to the United States within the scope of their Privacy Shield certifications. To learn more, see our Privacy Shield Notice (available at https://www2.deloitte.com/us/en/footerlinks1/privacy-shield.html?icid=bottom_privacy-shield).

**Changes to this Privacy Statement**

In addition to describing our current privacy practices, this Privacy Statement also describes the categories of personal information we collected, disclosed, or sold during the preceding 12 months. We may modify or amend this Privacy Statement from time to time at our discretion. When we make changes to this Privacy Statement, we will amend the revision date at the top of this page and the modified or amended Privacy Statement shall apply to you and your personal information as of that revision date. We encourage you to review the Privacy Statement on our website (available at https://www2.deloitte.com/us/en/footerlinks1/tax-privacy.html?icid=bottom_tax-privacy) periodically to be informed about how we are protecting your personal information.

**Contact us**

If you have any questions or concerns regarding this Privacy Statement or your personal information, please contact our data protection officer by email at USPrivacyQuestions@deloitte.com or call us at +1-844- 919-0711. Our European Union representative, Deloitte Tax EU Privacy Rep Limited, can be contacted by email at EURepresentative@deloitte.com.

**DocuSign**

## Certificate Of Completion

Envelope Id: 518D30F6C1E047EEAD689CD1E1DCA751                    Status: Completed
Subject: Please DocuSign: Voyager DTax Engagement Letter 8-1-22.docx
Use Case: Engagement Letter
Data Classification: Confidential
WBS (N/A if not available): GAA03320-01-01-01-0000
Source Envelope:
Document Pages: 21                 Signatures: 1                    Envelope Originator:
Certificate Pages: 5               Initials: 0                      Danielle Trevino
AutoNav: Enabled                                                   Two Jericho Plaza 3rd Floor
EnvelopeId Stamping: Enabled                                       ATTN: Accounts Payable
Time Zone: (UTC-05:00) Eastern Time (US & Canada)                  Jericho, NY  11753

                                                                  IP Address: 199.247.32.101

## Record Tracking

Status: Original                   Holder: Danielle Trevino       Location: DocuSign
         August 4, 2022 | 17:52

| Signer Events | Signature | Timestamp |
| --- | --- | --- |
| Ashwin Prithipaul<br><br>CFO<br>Ash Prithipaul<br>Security Level: Email, Account Authentication (None) | <br>Signature Adoption: Drawn on Device<br>Using IP Address: 100.8.109.90 | Sent: August 4, 2022 \| 17:57<br>Viewed: August 4, 2022 \| 19:01<br>Signed: August 4, 2022 \| 19:03 |
| **Electronic Record and Signature Disclosure:**<br>  Accepted: August 4, 2022 \| 19:01<br>  ID: df9dc599-84cb-4059-a1b9-7e32a55b0273<br>  Company Name: Deloitte | | |

| In Person Signer Events | Signature | Timestamp |
| --- | --- | --- |

| Editor Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Agent Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Intermediary Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Certified Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Carbon Copy Events | Status | Timestamp |
| --- | --- | --- |

| Witness Events | Signature | Timestamp |
| --- | --- | --- |

| Notary Events | Signature | Timestamp |
| --- | --- | --- |

| Envelope Summary Events | Status | Timestamps |
| --- | --- | --- |
| Envelope Sent | Hashed/Encrypted | August 4, 2022 \| 17:57 |
| Certified Delivered | Security Checked | August 4, 2022 \| 19:01 |
| Signing Complete | Security Checked | August 4, 2022 \| 19:03 |
| Completed | Security Checked | August 4, 2022 \| 19:03 |

| Payment Events | Status | Timestamps |
| --- | --- | --- |

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: March 27, 2020 09:43
Parties agreed to: Ashwin Prithipaul

## DISCLOSURE

From time to time, Deloitte USA LLP, Deloitte LLP and their respective subsidiaries (collectively, "we", "us" or "Company") may be required by law to provide to you certain written notices or disclosures related to the use of DocuSign and/or electronic signatures ("Disclosures"). Described below are the terms and conditions for providing to you such Disclosures electronically through the DocuSign, Inc. (DocuSign) electronic signing system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to these terms and conditions, please confirm your agreement by clicking the 'I agree' checkbox.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after signing session and, if you elect to create a DocuSign signer account, you may access them for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.0000 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive Disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required Disclosures only in paper format. How you must inform us of your decision to receive future Disclosures in paper format and withdraw your consent to receive Disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required Disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required Disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper Disclosures. To indicate to us that you are changing your mind, you must withdraw your consent using the DocuSign 'Withdraw Consent' form on the signing page of a DocuSign envelope instead of signing it. This will indicate to us that you have withdrawn your consent to receive required Disclosures electronically from us and you will no longer be able to use the DocuSign system to receive required Disclosures electronically from us or to sign electronically documents from us.

### All Disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all Disclosures that are required to be provided or made available to you. To reduce the chance of you inadvertently not receiving any Disclosures, we prefer to provide all of the required Disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the Disclosures electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the Disclosures electronically from us.

### How to contact Deloitte:

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive Disclosures electronically as follows:

**To advise Deloitte of your new e-mail address**

To let us know of a change in your e-mail address where we should send Disclosures electronically to you, you must send an email message to us at Deloitte Global eSignature Support and in the body of such request you must state: your previous e-mail address and your new e-mail address. We do not require any other information from you to change your email address. In addition, you must notify DocuSign, Inc. to arrange for your new email address to be reflected in your DocuSign account by following the process for changing e-mail in the DocuSign system.

**To request paper copies from Deloitte**

To request delivery from us of paper copies of the Disclosures previously provided by us to you electronically, you must send us an e-mail to Deloitte Global eSignature Support and in the body of such request you must state your e-mail address, full name, US Postal address, and telephone number.

**To withdraw your consent with Deloitte**

To inform us that you no longer want to receive future Disclosures in electronic format you may:
i. decline to sign a document from within your DocuSign session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;
ii. send us an e-mail to Deloitte Global eSignature Support and in the body of such request you must state your e-mail, full name, US Postal Address, and telephone number. We do not need any other information from you to withdraw consent. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process.

**Required hardware and software**

| Operating Systems: | Windows® 2000, Windows® XP, Windows Vista®; Mac OS® X |
|---|---|
| Browsers: | Final release versions of Internet Explorer® 6.0 or above (Windows only); Mozilla Firefox 2.0 or above (Windows and Mac); Safari™ 3.0 or above (Mac only) |
| PDF Reader: | Acrobat® or similar software may be required to view and print PDF files |
| Screen Resolution: | 800 x 600 minimum |
| Enabled Security Settings: | Allow per session cookies |

\*\* These minimum requirements are subject to change. If these requirements change, you will be asked to re-accept the disclosure. Pre-release (e.g. beta) versions of operating systems and browsers are not supported.

**Acknowledging your access and consent to receive materials electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic Disclosures that we will provide to you, please verify that you were able to read this electronic disclosure and that you also were able to print on paper or electronically save this page for your future reference and access or that you were able to e-mail this disclosure and consent to an address where you will be able to print on paper or save it for your future reference

and access. Further, if you consent to receiving Disclosures exclusively in electronic format on the terms and conditions described above, please let us know by clicking the 'I agree' button below.

By checking the 'I agree' box, I confirm that:

- I can access and read this Electronic CONSENT TO ELECTRONIC RECEIPT OF ELECTRONIC CONSUMER DISCLOSURES document; and
- I can print on paper the disclosure or save or send the disclosure to a place where I can print it, for future reference and access; and
- Until or unless I notify Deloitte as described above, I consent to receive exclusively through electronic means all Disclosures that are required to be provided or made available to me by Deloitte.

## Exhibit B

**Redline**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER AUTHORIZING THE DEBTORS**
**TO EMPLOY AND RETAIN DELOITTE TAX LLP**
**AS TAX SERVICES PROVIDER EFFECTIVE AS OF AUGUST 1, 2022**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") authorizing the Debtors to employ and retain Deloitte Tax LLP ("Deloitte Tax") as tax services provider, effective as of August 1, 2022, pursuant to the terms and conditions set forth in the Engagement Letter, attached hereto as **Exhibit 1**, as more fully set forth in the Application; and upon the *Declaration of Ala'a Boulos in Support of the Debtors' Application for Entry of an Order Authorizing the Debtors to Employ and Retain Deloitte Tax LLP as Tax Services Provider Effective as of August 1, 2022* (the "Boulos Declaration"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Application is necessary and in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and it appearing that Deloitte Tax does not hold or represent an adverse interest to the Debtors or their estates and that it is disinterested under section 101(14) of the Bankruptcy Code; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Application is granted ~~as~~to the extent set forth herein.

2.      In accordance with sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rules 2014-1 and 2016-1, the Debtors are authorized to employ and retain Deloitte Tax as tax services provider to the Debtors on the terms and conditions set forth in the Application and the Engagement Letter, as the Engagement Letter has been modified by this Order and subject to the terms of this Order effective as of August 1, 2022.

3.      The terms and conditions of the Engagement Letter are reasonable and, as modified by this Order, are approved.

4.      Deloitte Tax shall be compensated in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, this Order, and any other applicable orders of this Court.

5.      Deloitte Tax shall include in its fee applications, among other things, contemporaneous time records setting forth a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors in one-tenth hour increments.

6.      In the event that the rates of compensation for the services increase from the rates disclosed for services in the Application or the Engagement Letter, Deloitte Tax will file a supplemental declaration with this Court describing such increased rates and serve such supplemental declaration upon the Debtors and the United States Trustee at least ten (10) business days prior to the effective date of such increases, which supplemental declaration shall explain the basis for the requested rate increases in accordance with section 330(a)(3)(F) of the Bankruptcy Code and indicate whether the Debtors have received notice of and approved the proposed rate increase.

7.      Notwithstanding anything in the Application or the Engagement Letter to the contrary, prior to the effective date of a chapter 11 plan, this Court retains exclusive jurisdiction over all matters arising out of and/or pertaining to Deloitte Tax's engagement, including without limitation any disputes as to fees or as to the services provided by Deloitte Tax, until such jurisdiction is relinquished.

8.      The indemnification provisions set forth in the general business terms attached to the Engagement Letter are hereby approved, subject to the following modifications with respect to the services performed thereunder from August 1, 2022, through the effective date of a chapter 11 plan:

    a.      All requests for payment of indemnity, contribution, or otherwise pursuant to the indemnification provisions shall be made by means of a fee application (interim or final) and shall be subject to the approval and review by this Court to ensure that such payment conforms to the terms of the

indemnification provisions and is reasonable based on the circumstances of the litigation or settlement in respect of which indemnity is sought; *provided*, however, that in no event shall an indemnified party be indemnified or receive contribution to the extent that any claim arose or expense has resulted from any such losses finally judicially determined by a court of competent jurisdiction to have primarily resulted from the recklessness, intentional fraud, intentional misconduct, or bad faith of any indemnified parties;

b.     In no event shall any indemnified party be indemnified or receive contribution or other payment of an indemnity claim under the indemnification provisions if the Debtors or a representative of the Debtors' estates asserts a claim for, and a court determines by final order that, such claim primarily arose out of the recklessness, intentional fraud, intentional misconduct, or bad faith of such indemnified party; and

c.     In the event an indemnified party seeks reimbursement of attorneys' fees from the Debtors in connection with the payment of an indemnity claim pursuant to the indemnification provisions, the invoices and supporting time records from such attorneys shall be attached to Deloitte Tax's own interim and/or final fee applications, and such invoices and time records shall be subject to the applicable Fee Guidelines and the approval of this Court under the standards of section 330 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

9.     Notwithstanding anything in the Engagement Letter to the contrary, the following provisions are hereby modified with respect to services performed thereunder for the Debtors from August 1, 2022, through the effective date of a chapter 11 plan, as follows:

a.     The last sentence of Section 1(c) of the General Business Terms appended to the Engagement Letter shall be deemed deleted and replaced with the following:

Nothing contained in the Agreement shall alter in any way the duties imposed by law on Deloitte Tax in respect of the Services provided hereunder. It is understood and agreed that, with respect to the relationship between Deloitte Tax, on the one hand, and Client, on the other hand, each party hereto is an independent contractor and neither party is nor shall be considered to be, nor shall purport to act as, the other's agent, distributor, partner, joint venture, or representative.

b.     Section 6(b) of the General Business Terms appended to the Engagement Letter shall be deemed deleted.

4

c.    Section 6(a) of the General Business Terms appended to the Engagement Letter is hereby modified so as to provide that the proposed limitation of liability to the amount of fees paid shall apply only to the extent that Deloitte Tax's liability is based on negligence.  That limitation shall not apply to the extent that Deloitte Tax's liability is based on gross negligence, willful misconduct, or fraud.

d.    Disputes relating to the services provided by Deloitte Tax shall not be referred to arbitration or mediation unless this Court does not have, retain, or exercise jurisdiction over the dispute.

10.    To the extent the Debtors and Deloitte Tax enter into any additional engagement letter(s) for additional services, the Debtors will file such engagement letter(s) with the Court and serve such engagement letter(s) upon the applicable notice parties.  Absent any objection filed within 14 days after the filing and service of any additional engagement letter(s), Deloitte Tax shall be deemed authorized and approved to provide and be compensated for such additional services pursuant to this Order and the terms of such additional engagement letter(s).  To the extent any of such parties object to such additional engagement letter(s), the Debtors will promptly schedule a hearing before the Court within 10 days of receipt of any such objection or as soon thereafter as practicable.  All additional services will be subject to the provisions of this Order.

11.    Notwithstanding anything in the Application or the Engagement Letter to the contrary, to the extent that Deloitte Tax uses the services of independent contractors, which are not affiliates or subsidiaries of Deloitte Tax (collectively, the "Contractors") in these chapter 11 cases, Deloitte Tax shall (i) pass-through the cost of such Contractors to the Debtors at the same rate that Deloitte Tax pays the Contractors, (ii) seek reimbursement for actual costs only, (iii) ensure that the Contractors are subject to the same conflict checks as required for Deloitte Tax, and (iv) file with the Court such disclosures required by Bankruptcy Rule 2014.

12.    The Debtors and Deloitte Tax are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

13.      The Debtors will coordinate with Deloitte Tax and the Debtors' other professionals to minimize unnecessary duplication of efforts among the Debtors' professionals.

14.      To the extent that there may be any inconsistency between the terms of the Application, the Boulos Declaration, the Engagement Letter, and this Order, the terms of this Order shall govern.

15.      Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

16.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE