Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**CERTIFICATION OF COUNSEL IN SUPPORT
OF THIRD INTERIM ORDER (I) AUTHORIZING THE DEBTORS
TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT
SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS
RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, AND (D)
CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS, (II) GRANTING
SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION
INTERCOMPANY BALANCES, AND (III) GRANTING RELATED RELIEF**

The undersigned counsel for the above-captioned debtors and debtors-in-possession

(the "Debtors") hereby certifies that:

1.    On July 5, 2022, the Debtors filed the *Debtors' Motion Seeking Entry of Interim*

*and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash*

*Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain*

*Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II)*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

*Granting Superpriority Administrative Expense Status to Postpetition* (the "Cash Management

Motion") [Docket No. 10].

2.    On July 8, 2022, the *Interim Order (I) Authorizing the Debtors to (A) Continue to

Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related

Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany

Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition

Intercompany Balances, and (III) Granting Related Relief* (the "Initial Interim Cash Management

Order") [Docket No. 53] was entered.

3.    On August 4, 2022, the *Second Interim Order (I) Authorizing the Debtors to (A)

Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations

Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform

Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to

Postpetition Intercompany Balances, and (III) Granting Related Relief* (the "Second Interim Cash

Management Order") [Docket No. 237] was entered.

4.    Pursuant to the Second Interim Cash Management Order, objections to the interim

relief requested were due by September 20, 2022, at 4:00 p.m. prevailing Eastern Time.

The Debtors received informal comments from the United States Trustee for the Southern District

of New York (the "Informal Comments").  As of the date hereof, the Debtors have received no

other objections to the relief requested in the Cash Management Motion.

5.    The Debtors hereby file a revised proposed *Third Interim Order (I) Authorizing the

Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain

Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue

to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status*

*to Postpetition Intercompany Balances, and (III) Granting Related Relief,* attached hereto as

**Exhibit A** (the "Proposed Third Interim Cash Management Order").

6.      A redline is attached hereto as **Exhibit B**.

7.      Accordingly, the Debtors respectfully request entry of the Proposed Third Interim

Cash Management Order attached hereto as **Exhibit A** at the Court's earliest convenience.

*[Remainder of page intentionally left blank.]*

Dated:  October 19, 2022
New York, New York

/s/ Joshua A. Sussberg

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        jsussberg@kirkland.com
              cmarcus@kirkland.com
              christine.okike@kirkland.com
              allyson.smith@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

## Exhibit A

**Proposed Third Interim Cash Management Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC. *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**THIRD INTERIM ORDER (I) AUTHORIZING THE DEBTORS
TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT
SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS
RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, AND (D)
CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS, (II) GRANTING
SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION
INTERCOMPANY BALANCES, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a third interim order (this "Interim Order"): (a) authorizing, but not directing, the Debtors to (i) continue to operate their cash management system (the "Cash Management System"); (ii) honor certain prepetition obligations related thereto; (iii) maintain existing Business Forms in the ordinary course of business; and (iv) continue to perform Intercompany Transactions consistent with historical practice; (b) granting superpriority administrative expense status to postpetition intercompany balances; and (c) scheduling a final hearing to consider approval of the Motion on a final basis, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

*from the United States District Court for the Southern District of New York*, entered February 1, 2012; and that this Court having the power to enter an order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors; estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on November 15, 2022, at 11:00 a.m., prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on November 8, 2022, and shall be served on:  (a) the Debtors, Voyager Digital Holdings, LLC, 33 Irving Place, Suite 3060, New York, New York 10003, Attn: David Brosgol; (b) counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C., Christopher Marcus, P.C., Christine A. Okike, P.C., and Allyson B. Smith; (c) the Office of The United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn. Richard Morrissey and Mark Bruh; and (d) counsel to

the Official Committee of Unsecured Creditors appointed in these chapter 11 cases (the "Committee").

3.      The Debtors are authorized, on an interim basis and in their sole discretion, to: (a) continue operating the Cash Management System, substantially as illustrated on **Exhibit 1** attached hereto; (b) honor their prepetition obligations related thereto; and (c) continue to perform Intercompany Transactions consistent with historical practice.

4.      The Debtors shall provide the U.S. Trustee and the advisors to the Committee a full accounting of the cryptocurrency and other digital assets in each Debtor's possession, including where such is held and the source of such cryptocurrency on a bi-weekly basis beginning within five business days hereof.

5.      Notwithstanding anything to the contrary in this Interim Order, nothing herein shall be interpreted as authorizing the Debtors to restart their platform and otherwise allow the buying, selling, trading, or withdrawal of cash or cryptocurrency assets on the Debtors' platform.

6.      The Debtors are authorized, on an interim basis and in their sole discretion, to: (a) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date, including those Bank Accounts identified on **Exhibit 2** attached hereto; (b) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (c) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, and other debits; (d) pay all prepetition Bank Fees; and (e) pay any ordinary course Bank Fees incurred in connection with the Bank Accounts, irrespective of whether such fees arose prior to the Petition Date, and to otherwise perform their obligations under the documents governing the Bank Accounts.

7.      The Debtors are authorized, but not directed, to continue using the Business Forms, *provided* that the Debtors shall ensure that the Business Forms are clearly labeled "Debtor-In-Possession"; *provided*, *further*, with respect to any Business Forms that exist or are generated electronically, to the extent reasonably practicable, the Debtors shall ensure that such electronic Business Forms are clearly labeled "Debtor-In-Possession."

8.      The Banks at which the Bank Accounts are maintained are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession without interruption and in the ordinary course, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be.

9.      Notwithstanding anything provided in this Interim Order to the contrary, Metropolitan Commercial Bank ("MC Bank") is hereby authorized and empowered to, and entry of this Interim Order is evidence that, MC Bank does hereby: (a) delegate to Voyager Digital, LLC all of its rights and authority to investigate, dispute and prosecute any unauthorized or illegitimate ACH Chargebacks under the MC FBO Accounts against third parties, including the right to request from each third-party financial institution operating under the rules of the National Automated Clearing House Association to receive ACH transactions (each an "ACH Processing Bank" or Receiving Depository Financial Institution ("RDFI") and collectively, the "ACH Processing Banks" or "RDFIs") that requests an ACH Chargeback from the MC FBO Accounts that such ACH Processing Bank provide Voyager Digital LLC with a written statement of unauthorized debit provided by the customer to the ACH Processing Bank (each a "Statement" and collectively, the "Statements"); and (b) shall, at Voyager Digital LLC's sole cost and expense and without any

liability or recourse of any kind to MC Bank, use commercially reasonable efforts to assist Voyager Digital LLC, including providing relevant contact information and underlying documentation, in all reasonable efforts it undertakes to investigate, dispute and prosecute any unauthorized or illegitimate ACH Chargebacks. Debtor Voyager Digital, LLC shall address and remedy ACH Chargebacks pursuant to its standard order of operations consistent with past practices and shall have any rights of recovery, including without limitation indemnification rights, of MC Bank against any ACH Processing Bank for any unauthorized ACH Chargebacks.

10.     Notwithstanding any of the above provisions, nothing in this Interim Order shall obligate Wells Fargo to take any actions beyond the requirements contained in the NACHA Operating Rules, which govern ACH transactions. Upon a written request from the Debtors, to the extent required by the NACHA Operating Rules, Wells Fargo shall cooperate in the production of postpetition Statements initiated by Wells Fargo's customers beginning on July 5, 2022 through the duration of the chapter 11 cases. Any requests from the Debtors related to turnover of funds for postpetition unauthorized debits shall be directed to the account holders who initiated said requests, rather than Wells Fargo.

11.     The Debtors will maintain records in the ordinary course reflecting transfers of cash, if any, including Intercompany Transactions, so as to permit all such transactions to be ascertainable. For the avoidance of doubt, the Debtors will not engage in any Intercompany Transactions that involve any payments from a Debtor entity to a non-Debtor entity without prior written consent of the Committee, which such consent shall not be unreasonably withheld.

12.     The Debtors shall provide the Committee with a rolling 13-week cash flow budget as soon as reasonably practicable upon entry of this Interim Order (the "Commencement Date") and every subsequent month thereafter, setting forth all of the Debtors' projected cash receipts and

cash disbursements (by line item), in form and substance reasonably satisfactory to the Committee (the "Budget").  The initial Budget shall be provided to the Committee on the Commencement Date, and each subsequent monthly updated Budget shall be provided on Wednesday for the prior four weeks, *provided* that the Debtors shall provide a weekly report of Budget variances to the Committee on Wednesday for the prior week in form and substance reasonably satisfactory to the Committee on actual results and disbursements of the preceding weekly period.

13.     In the course of providing cash management services to the Debtors, the Banks at which the Bank Accounts are maintained are authorized, without further order of the Court, to deduct the applicable fees and expenses associated with the nature of the deposit and cash management services rendered to the Debtors, whether arising prepetition or postpetition, from the appropriate accounts of the Debtors, and further, to charge back to, and take and apply reserves from, the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, merchant services transactions or other electronic transfers of any kind, regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers and the Banks may, without further order of the Court and notwithstanding section 362 of the Bankruptcy Code, operate under and exercise the rights, powers and privileges available to such Banks under existing agreements with the Debtors.

14.     Each Bank is authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of the Court for: (a) all checks drawn on the Debtors' accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b) all checks or other items deposited in one of the Debtors'

accounts with such Bank prior to the Petition Date which have been dishonored or returned unpaid

for any reason, together with any fees and costs in connection therewith, to the same extent the

Debtors were responsible for such items prior to the Petition Date; (c) all undisputed prepetition

amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the

maintenance of the Cash Management System; and (d) all reversals, returns, refunds, and

chargebacks of checks, deposited items, and other debits credited to Debtor's account after the

Petition Date, regardless of the reason such item is returned or reversed (including, without

limitation, for insufficient funds or a consumer's statutory right to reverse a charge).

15.     Each of the Banks may rely on the representations of the Debtors with respect to

whether any check or other payment order drawn or issued by the Debtors prior to the Petition Date

should be honored pursuant to this or any other order of the Court, and such Bank shall not have

any liability to any party for relying on such representations by the Debtors as provided for herein.

16.     Those agreements existing between the Debtors and the Banks shall continue to

govern the postpetition cash management relationship between the Debtors and Banks, subject to

applicable bankruptcy or other law, all of the provisions of such agreements, including the

termination, fee provisions, rights, benefits, offset rights, right of indemnity and recovery and

remedies afforded under such agreements shall remain in full force and effect and may be

exercised, with respect to any such agreement with any Bank (including, for the avoidance of

doubt, any rights of a Bank to use funds from the Bank Accounts to remedy any overdraft of

another Bank Account to the extent permitted under the applicable deposit agreement and any

rights of a Bank to use and apply any reserve balances or accounts, whether now existing or

hereafter established, for purposes of establishing a reserve), unless the Debtors and such Bank

agree otherwise, and any other legal rights and remedies afforded to the Banks under applicable law shall be preserved, subject to applicable bankruptcy law.

17.    The requirement to establish separate bank accounts for cash collateral and/or tax payments is hereby waived.

18.    Notwithstanding anything to the contrary set forth herein, the Debtors are authorized, but not directed, to continue Intercompany Transactions arising from or related to the operation of their businesses in the ordinary course; *provided* that each Debtor shall (a) continue to pay its own obligations consistent with such Debtor's past practice with respect to Intercompany Transactions and related obligations, and in no event shall any of the Debtors pay for the prepetition or postpetition obligations incurred or owed by any of the other Debtors in a manner inconsistent with past practices; and (b) beginning on the Petition Date, maintain (i) current records of intercompany balances; (ii) a Debtor by Debtor summary on a monthly basis of any postpetition Intercompany Transactions involving the transfer of cash for the preceding month (to be available on the 21st day of the following month); and (iii) reasonable access to the Debtors' advisors with respect to such records.

19.    All postpetition transfers and payments from the Debtors to another Debtor under any postpetition Intercompany Transactions authorized hereunder are hereby accorded superpriority administrative expense status under section 503(b) of the Bankruptcy Code.

20.    Notwithstanding the Debtors use of a consolidated Cash Management System, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of which entity pays those disbursements.  For the avoidance of doubt, all disbursements pursuant to the foregoing shall be made in U.S. dollars.

21.     Those certain existing deposit and service agreements between the Debtors and the Banks shall continue to govern the postpetition cash management relationship between the Debtors and the Banks, and that all of the provisions of such agreements, including, without limitation, the termination, chargeback, and fee provisions, shall remain in full force and effect.

22.     The Debtors and the Banks may, without further order of the Court, agree to and implement changes to the Cash Management System and procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts; *provided* that in the event the Debtors open a new bank account they shall open one at an authorized depository and shall timely indicate the opening of such account on the Debtors' monthly operating report; *provided, further*, that the Debtors shall give notice within five (5) days of the opening of any new bank accounts or closing of any Bank Account to the U.S. Trustee and the Committee.

23.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Bank Fees.

24.     Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors

9

that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. Any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

25.    The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

26.    Nothing in this Interim Order shall modify or impair the ability of any party in interest to contest how the Debtors account, including, without limitation, the validity or amount set forth in such accounting for any Intercompany Transaction or Intercompany Balance. The rights of all parties in interest with the respect thereto are fully preserved.

27.    To the extent any of the Debtors' Bank Accounts are not in compliance with section 345(b) of the Bankruptcy Code or any of the U.S. Trustee's requirements or guidelines, the Debtors shall have until November 1, 2022, without prejudice to seeking an additional extension, to come into compliance with section 345(b) of the Bankruptcy Code and any of the U.S. Trustee's requirements or guidelines; *provided* that nothing herein shall prevent the Debtors or the U.S. Trustee from seeking further relief from the Court to the extent that an agreement cannot be reached. The Debtors may obtain a further extension of the date referenced above by

written stipulation with the U.S. Trustee and filing such stipulation on the Court's docket without the need for further Court order.

28.    Notwithstanding any language to the contrary in the Motion or this Interim Order, no provision of the Motion or this Interim Order shall constitute a finding as to whether the Cash Management System complies with federal or state securities laws, and the right of the United States Securities and Exchange Commission to challenge such transactions on any basis are expressly reserved.

29.    Notwithstanding anything to the contrary in the Motion, this Interim Order, or any findings announced at the Hearing, nothing in the Motion, this Interim Order, or announced at the Hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the United States Securities and Exchange Commission to challenge transactions involving crypto tokens on any basis is expressly reserved.

30.    As soon as practicable after entry of this Interim Order, the Debtors shall serve a copy of this Interim Order on the Banks.

31.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

32.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

33.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

34.     This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Interim Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

## **Exhibit 1**

**Cash Management System Schematic**

## Postpetition Bank Flows



**Exhibit 2**

**Bank Accounts**

| No. | Entity | Bank Name | Last Four Digits of Account No. | Account Type |
|-----|--------|-----------|-------------------------------|--------------|
| 1 | Voyager Digital Holding | Metropolitan Commercial Bank | 0238 | Operating Account |
| 2 | Voyager Digital LLC | Metropolitan Commercial Bank | 0246 | Operating Account |
| 3 | Voyager Digital LLC | Metropolitan Commercial Bank | 0254 | FBO Account |
| 4 | Voyager Digital LLC | Metropolitan Commercial Bank | 0688 | Dormant Account |
| 5 | Voyager Digital LLC | Metropolitan Commercial Bank | 3989 | Operating Account |
| 6 | Voyager Digital LLC | Metropolitan Commercial Bank | 3997 | FBO Account |
| 7 | Voyager Digital LLC | Signature Bank | 5047 | Dormant Account |
| 8 | Voyager Digital Ltd | BMO Bank of Montreal | 2028 | Operating Account |
| 9 | Voyager Digital Ltd | BMO Bank of Montreal | 2296 | Operating Account |
| 10 | Voyager Digital Holdings Inc. | Signature Bank | 1609 | Dormant Account |
| 11 | Voyager Digital LLC | Metropolitan Commercial Bank | 8835 | Debit Card Account |
| 12 | Voyager Digital LLC | Metropolitan Commercial Bank | 8762 | Reserve Account |
| 13 | Voyager Digital Ltd | Signature Bank | 0794 | Operating Account |

## **Exhibit B**

**Redline**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| VOYAGER DIGITAL HOLDINGS, INC. *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

~~**SECOND INTERIM**~~ **THIRD INTERIM** ORDER (I) AUTHORIZING THE DEBTORS
TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT
SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS
RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, AND (D)
CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS, (II) GRANTING
SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION
INTERCOMPANY BALANCES, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession
(collectively, the "Debtors") for entry of a ~~second~~third interim order (this "Interim Order"):
(a) authorizing, but not directing, the Debtors to (i) continue to operate their cash management
system (the "Cash Management System"); (ii) honor certain prepetition obligations related
thereto; (iii) maintain existing Business Forms in the ordinary course of business; and (iv) continue
to perform Intercompany Transactions consistent with historical practice; (b) granting
superpriority administrative expense status to postpetition intercompany balances; and
(c) scheduling a final hearing to consider approval of the Motion on a final basis, all as more fully
set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over
this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

*from the United States District Court for the Southern District of New York*, entered February 1, 2012; and that this Court having the power to enter an order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors; estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "<u>Hearing</u>"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.    The Motion is granted on an interim basis as set forth herein.

2.    The final hearing (the "<u>Final Hearing</u>") on the Motion shall be held on ~~September 27~~<u>November 15</u>, 2022, at 11:00 a.m., prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on ~~September 20,~~ <u>November 8,</u> 2022, and shall be served on:  (a) the Debtors, Voyager Digital Holdings, LLC, 33 Irving Place, Suite 3060, New York, New York 10003, Attn: David Brosgol; (b) ~~proposed~~ counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C., Christopher Marcus, P.C., Christine A. Okike, P.C., and Allyson B. Smith; (c) the Office of The United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn.

Richard Morrissey and Mark Bruh; and (d) counsel to the Official Committee of Unsecured Creditors appointed in these chapter 11 cases (the "Committee") appointed in these chapter 11 cases.").

3.      The Debtors are authorized, on an interim basis and in their sole discretion, to:  (a) continue operating the Cash Management System, substantially as illustrated on **Exhibit 1** attached hereto; (b) honor their prepetition obligations related thereto; and (c) continue to perform Intercompany Transactions consistent with historical practice.

4.      The Debtors shall provide the U.S. Trustee and the advisors to the Committee a full accounting of the cryptocurrency and other digital assets in each Debtor's possession, including where such is held and the source of such cryptocurrency on a bi-weekly basis beginning within five business days hereof.

4.5.    Notwithstanding anything to the contrary in this Interim Order, nothing herein shall be interpreted as authorizing the Debtors to restart their platform and otherwise allow the buying, selling, trading, or withdrawal of cash or cryptocurrency assets on the Debtors' platform.

5.6.    The Debtors are authorized, on an interim basis and in their sole discretion, to:  (a) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date, including those Bank Accounts identified on **Exhibit 2** attached hereto; (b) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (c) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, and other debits; (d) pay all prepetition Bank Fees; and (e) pay any ordinary course Bank Fees incurred in connection with the Bank Accounts, irrespective of whether such fees arose prior to the Petition Date, and to otherwise perform their obligations under the documents governing the Bank Accounts.

6.7.    The Debtors are authorized, but not directed, to continue using the Business Forms, *provided* that the Debtors shall ensure that the Business Forms are clearly labeled "Debtor-In-Possession"; *provided*, *further*, with respect to any Business Forms that exist or are generated electronically, to the extent reasonably practicable, the Debtors shall ensure that such electronic Business Forms are clearly labeled "Debtor-In-Possession."

7.8.    The Banks at which the Bank Accounts are maintained are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession without interruption and in the ordinary course, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be.

8.9.    Notwithstanding anything provided in this Interim Order to the contrary, Metropolitan Commercial Bank ("MC Bank") is hereby authorized and empowered to, and entry of this Interim Order is evidence that, MC Bank does hereby: (a) delegate to Voyager Digital, LLC all of its rights and authority to investigate, dispute and prosecute any unauthorized or illegitimate ACH Chargebacks under the MC FBO Accounts against third parties, including the right to request from each third-party financial institution operating under the rules of the National Automated Clearing House Association to receive ACH transactions (each an "ACH Processing Bank" or Receiving Depository Financial Institution ("RDFI") and collectively, the "ACH Processing Banks" or "RDFIs") that requests an ACH Chargeback from the MC FBO Accounts that such ACH Processing Bank provide Voyager Digital LLC with a written statement of unauthorized debit provided by the customer to the ACH Processing Bank (each a "Statement" and collectively, the "Statements"); and (b) shall, at Voyager Digital LLC's sole cost and expense and without any

liability or recourse of any kind to MC Bank, use commercially reasonable efforts to assist Voyager Digital LLC, including providing relevant contact information and underlying documentation, in all reasonable efforts it undertakes to investigate, dispute and prosecute any unauthorized or illegitimate ACH Chargebacks. Debtor Voyager Digital, LLC shall address and remedy ACH Chargebacks pursuant to its standard order of operations consistent with past practices and shall have any rights of recovery, including without limitation indemnification rights, of MC Bank against any ACH Processing Bank for any unauthorized ACH Chargebacks.

10.    Notwithstanding any of the above provisions, nothing in this Interim Order shall obligate Wells Fargo to take any actions beyond the requirements contained in the NACHA Operating Rules, which govern ACH transactions. Upon a written request from the Debtors, to the extent required by the NACHA Operating Rules, Wells Fargo shall cooperate in the production of postpetition Statements initiated by Wells Fargo's customers beginning on July 5, 2022 through the duration of the chapter 11 cases. Any requests from the Debtors related to turnover of funds for postpetition unauthorized debits shall be directed to the account holders who initiated said requests, rather than Wells Fargo.

9.11.    The Debtors will maintain records in the ordinary course reflecting transfers of cash, if any, including Intercompany Transactions, so as to permit all such transactions to be ascertainable. For the avoidance of doubt, the Debtors will not engage in any Intercompany Transactions that involve any payments from a Debtor entity to a non-Debtor entity without prior written consent of the Committee, which such consent shall not be unreasonably withheld.

10.12.    The Debtors shall provide the Committee with a rolling 13-week cash flow budget as soon as reasonably practicable upon entry of this Interim Order (the "Commencement Date") and every subsequent month thereafter, setting forth all of the Debtors' projected cash receipts and

cash disbursements (by line item), in form and substance reasonably satisfactory to the Committee (the "Budget"). The initial Budget shall be provided to the Committee on the Commencement Date, and each subsequent monthly updated Budget shall be provided on Wednesday for the prior four weeks, *provided* that the Debtors shall provide a weekly report of Budget variances to the Committee on Wednesday for the prior week in form and substance reasonably satisfactory to the Committee on actual results and disbursements of the preceding weekly period.

11.13.  In the course of providing cash management services to the Debtors, the Banks at which the Bank Accounts are maintained are authorized, without further order of the Court, to deduct the applicable fees and expenses associated with the nature of the deposit and cash management services rendered to the Debtors, whether arising prepetition or postpetition, from the appropriate accounts of the Debtors, and further, to charge back to, and take and apply reserves from, the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, merchant services transactions or other electronic transfers of any kind, regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers and the Banks may, without further order of the Court and notwithstanding section 362 of the Bankruptcy Code, operate under and exercise the rights, powers and privileges available to such Banks under existing agreements with the Debtors.

12.14.  Each Bank is authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of the Court for: (a) all checks drawn on the Debtors' accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b) all checks or other items deposited in one of the Debtors'

accounts with such Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to the Petition Date; (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System; and (d) all reversals, returns, refunds, and chargebacks of checks, deposited items, and other debits credited to Debtor's account after the Petition Date, regardless of the reason such item is returned or reversed (including, without limitation, for insufficient funds or a consumer's statutory right to reverse a charge).

13.15.  Each of the Banks may rely on the representations of the Debtors with respect to whether any check or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this or any other order of the Court, and such Bank shall not have any liability to any party for relying on such representations by the Debtors as provided for herein.

14.16.  Those agreements existing between the Debtors and the Banks shall continue to govern the postpetition cash management relationship between the Debtors and Banks, subject to applicable bankruptcy or other law, all of the provisions of such agreements, including the termination, fee provisions, rights, benefits, offset rights, right of indemnity and recovery and remedies afforded under such agreements shall remain in full force and effect and may be exercised, with respect to any such agreement with any Bank (including, for the avoidance of doubt, any rights of a Bank to use funds from the Bank Accounts to remedy any overdraft of another Bank Account to the extent permitted under the applicable deposit agreement and any rights of a Bank to use and apply any reserve balances or accounts, whether now existing or hereafter established, for purposes of establishing a reserve), unless the Debtors and such Bank

agree otherwise, and any other legal rights and remedies afforded to the Banks under applicable law shall be preserved, subject to applicable bankruptcy law.

15.17.  The requirement to establish separate bank accounts for cash collateral and/or tax payments is hereby waived.

16.18.  Notwithstanding anything to the contrary set forth herein, the Debtors are authorized, but not directed, to continue Intercompany Transactions arising from or related to the operation of their businesses in the ordinary course; *provided* that each Debtor shall (a) continue to pay its own obligations consistent with such Debtor's past practice with respect to Intercompany Transactions and related obligations, and in no event shall any of the Debtors pay for the prepetition or postpetition obligations incurred or owed by any of the other Debtors in a manner inconsistent with past practices; and (b) beginning on the Petition Date, maintain (i) current records of intercompany balances; (ii) a Debtor by Debtor summary on a monthly basis of any postpetition Intercompany Transactions involving the transfer of cash for the preceding month (to be available on the 21st day of the following month); and (iii) reasonable access to the Debtors' advisors with respect to such records.

17.19.  All postpetition transfers and payments from the Debtors to another Debtor under any postpetition Intercompany Transactions authorized hereunder are hereby accorded superpriority administrative expense status under section 503(b) of the Bankruptcy Code.

18.20.  Notwithstanding the Debtors use of a consolidated Cash Management System, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of which entity pays those disbursements.  For the avoidance of doubt, all disbursements pursuant to the foregoing shall be made in U.S. dollars.

19.21.  Those certain existing deposit and service agreements between the Debtors and the Banks shall continue to govern the postpetition cash management relationship between the Debtors and the Banks, and that all of the provisions of such agreements, including, without limitation, the termination, chargeback, and fee provisions, shall remain in full force and effect.

20.22.  The Debtors and the Banks may, without further order of the Court, agree to and implement changes to the Cash Management System and procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts; *provided* that in the event the Debtors open a new bank account they shall open one at an authorized depository and shall timely indicate the opening of such account on the Debtors' monthly operating report; *provided, further*, that the Debtors shall give notice within five (5) days of the opening of any new bank accounts or closing of any Bank Account to the U.S. Trustee and the Committee.

21.23.  The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Bank Fees.

22.24.  Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors

9

that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  Any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

23.25.  The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

24.26.  Nothing in this Interim Order shall modify or impair the ability of any party in interest to contest how the Debtors account, including, without limitation, the validity or amount set forth in such accounting for any Intercompany Transaction or Intercompany Balance.  The rights of all parties in interest with the respect thereto are fully preserved.

25.27.  To the extent any of the Debtors' Bank Accounts are not in compliance with section 345(b) of the Bankruptcy Code or any of the U.S. Trustee's requirements or guidelines, the Debtors shall have until September 13November 1, 2022, without prejudice to seeking an additional extension, to come into compliance with section 345(b) of the Bankruptcy Code and any of the U.S. Trustee's requirements or guidelines; *provided* that nothing herein shall prevent the Debtors or the U.S. Trustee from seeking further relief from the Court to the extent that an agreement cannot be reached. The Debtors may obtain a further extension of the date referenced

above by written stipulation with the U.S. Trustee and filing such stipulation on the Court's docket without the need for further Court order.

26.28.  Notwithstanding any language to the contrary in the Motion or this Interim Order, no provision of the Motion or this Interim Order shall constitute a finding as to whether the Cash Management System complies with federal or state securities laws, and the right of the United States Securities and Exchange Commission to challenge such transactions on any basis are expressly reserved.

27.29.  Notwithstanding anything to the contrary in the Motion, this Interim Order, or any findings announced at the Hearing, nothing in the Motion, this Interim Order, or announced at the Hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the United States Securities and Exchange Commission to challenge transactions involving crypto tokens on any basis is expressly reserved.

28.30.  As soon as practicable after entry of this Interim Order, the Debtors shall serve a copy of this Interim Order on the Banks.

29.31.  Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

30.32.  Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

31.33.  The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

~~32.~~34.  This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

## **Exhibit 1**

**Cash Management System Schematic**

# Postpetition Bank Flows



# Postpetition Bank Flows



## Exhibit 2

**Bank Accounts**

| No. | Entity | Bank Name | Last Four Digits of Account No. | Account Type |
|---|---|---|---|---|
| 1 | Voyager Digital Holding | Metropolitan Commercial Bank | 0238 | Operating Account |
| 2 | Voyager Digital LLC | Metropolitan Commercial Bank | 0246 | Operating Account |
| 3 | Voyager Digital LLC | Metropolitan Commercial Bank | 0254 | FBO Account |
| 4 | Voyager Digital LLC | Metropolitan Commercial Bank | 0688 | Dormant Account |
| 5 | Voyager Digital LLC | Metropolitan Commercial Bank | 3989 | Operating Account |
| 6 | Voyager Digital LLC | Metropolitan Commercial Bank | 3997 | FBO Account |
| 7 | Voyager Digital LLC | Signature Bank | 5047 | Dormant Account |
| 8 | Voyager Digital Ltd | BMO Bank of Montreal | 2028 | Operating Account |
| 9 | Voyager Digital Ltd | BMO Bank of Montreal | 2296 | Operating Account |
| 10 | Voyager Digital Holdings Inc. | Signature Bank | 1609 | Dormant Account |
| 11 | Voyager Digital LLC | Metropolitan Commercial Bank | 8835 | Debit Card Account |
| 12 | Voyager Digital LLC | Metropolitan Commercial Bank | 8762 | Reserve Account |
| 13 | Voyager Digital Ltd | Signature Bank | 0794 | Operating Account |