David M. Posner
Kelly E. Moynihan
**KILPATRICK TOWNSEND &
STOCKTON LLP**
The Grace Building
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 775-8700
Facsimile:  (212) 775-8800
Email: dposner@kilpatricktownsend.com
          kmoynihan@kilpatricktownsend.com

Paul M. Rosenblatt, Esq.
**KILPATRICK TOWNSEND &
STOCKTON LLP**
1100 Peachtree Street, N.E.
Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile:  (404) 815-6555
Email: prosenblatt@kilpatricktownsend.com

*Counsel to the Ad Hoc Group of Equity Interest
Holders of Voyager Digital Ltd.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **VOYAGER DIGITAL HOLDINGS, LLC,** *et al.*, | : | **Case No. 22-10943 (MEW)** |
| | : | |
| **Debtors.[1]** | : | **(Jointly Administered)** |
| | : | |
| _____ | : | |
| **THE AD HOC GROUP OF EQUITY INTEREST HOLDERS OF VOYAGER DIGITAL LTD.,** | : | |
| | : | |
| | : | |
| | : | **Adv. Pro. No.** |
| **Plaintiffs,** | : | |
| | : | |
| **against** | : | **COMPLAINT FOR** |
| | : | **DECLARATORY JUDGMENT** |
| **VOYAGER DIGITAL HOLDINGS, INC., VOYAGER DIGITAL LTD., VOYAGER DIGITAL, LLC, and ALAMEDA VENTURES LTD.,** | : | |
| | : | |
| | : | |
| | : | |
| **Defendants.** | : | |
| _____ | | |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

The Ad Hoc Group of Equity Interest Holders (the "AHG" or the "Plaintiff"), comprised holders of equity interests of Voyager Digital Ltd., a debtor and debtor-in-possession in the above-captioned chapter 11 cases and the ultimate direct or indirect holding company of each of the debtors and debtors-in-possession ("TopCo," and collectively with each other debtor in the above-captioned cases, the "Debtors" or the "Company"), by and through undersigned counsel, files this Complaint (the "Complaint") and alleges as follows:

## SUMMARY OF THE ACTION

1.      This action involves the adjudication of over $220 million of claims. An actual, ripe, and justiciable controversy exists on all Counts arising from the factual and legal issue as to whether certain intercompany claims owed as between the Debtors as well as between the Debtors and their non-debtor affiliates are valid intercompany claims, not subject to recharacterization or subordination.

2.      This controversy is one that impacts all aspects of the Chapter 11 Cases and requires the legal determination requested by this Complaint, as such determination does not exist nor is it expected to be adequately obtained through any other means or relief.

3.      This Complaint seeks declaratory relief as to five intercompany claims owed to TopCo and one guaranty claim allegedly owed by TopCo. The gravamen of the relief sought is that TopCo holds claims against other Debtors which are valid and enforceable unsecured claims. These claims are entitled to receive the same treatment as all other general unsecured claims against the same Debtor.

## JURISDICTION AND VENUE

4.      This is an adversary proceeding under Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). It arises in and relates to *In re Voyager Digital*

*Holdings, LLC, et al.*, Chapter 11 Case No. 22-10943 (MEW), pending in the United States Bankruptcy Court for the Southern District of New York (the "Court").

5.      This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.

6.      This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b).

7.      The Plaintiff consents to the entry of final orders or judgments by this Court if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

8.      Venue in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

9.      The Plaintiff seeks and is entitled to declaratory and other relief pursuant to 28 U.S.C. §§ 2201, *et seq.*

## PROCEDURAL BACKGROUND

10.     On July 28, 2022 (the "Petition Date"), the Debtors each filed in the Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code, initiating chapter 11 cases that are being jointly administered and have been consolidated for procedural purposes only under the case number set forth in the caption of this Complaint (the "Chapter 11 Cases").

11.     The Debtors have represented and, upon information and belief, continue to represent that each of the Debtors continues to operate its business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

## PARTIES

12.     The Plaintiff is the Ad Hoc Group of Equity Interest Holders of TopCo. As of November 11, 2022, the AHG is comprised of individual holders of 711,433 shares of Voyager Digital Ltd. One member of the AHG is also lead plaintiff in a (presently stayed) securities class

action pending in Canadian courts[2]. The Debtors' Plan (defined below) provides that the equity interests held by the Plaintiff and other holders of existing equity interests will be entitled to the residual value of Voyager Digital Ltd.'s estate. *See* Case No. 22-10943, Dkt. No. 590, § III.C.11, p. 32-33 of 138.

13.     The Defendants are the Debtors in the above-captioned Chapter 11 Cases. For clarity, the Defendants and their addresses are restated herein. The corporate organization of the Debtors, as well as their jurisdictions of formation, are set forth in the *Declaration of Stephen Ehrlich, Chief Executive Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* [Case No. 22-10943, Dkt. No. 15].

14.     Defendant Voyager Digital Holdings, Inc. ("HoldCo") is a Delaware corporation and Debtor in the above-captioned cases with its principal place of business at 33 Irving Place, Suite 3060, New York, New York 10003.

15.     Defendant Voyager Digital Ltd. (previously defined as "TopCo") is a Canadian corporation and Debtor in the above-captioned cases with its principal place of business at 33 Irving Place, Suite 3060, New York, New York 10003. TopCo's is a Canadian public company and SEDAR[3] reporter.

16.     Defendant Voyager Digital, LLC ("OpCo") is a Delaware limited liability company and Debtor in the above-captioned cases with its principal place of business at 33 Irving Place, Suite 3060, New York, New York 10003.

---

[2] Recovery upon this class action would rank equally with that of all other TopCo equity interests. 11 U.S.C. § 510(b).

[3] "System for Electronic Document Analysis and Retrieval," the Canadian securities reporting and reporting retrieval system.

17.     Defendant Alameda Ventures Ltd. is a foreign limited company with its principal place of business at F20, 1st Floor, Eden Plaza Eden Island, Seychelles.[4]

## FACTUAL ALLEGATIONS

### A.     Debtors' Schedules and Intercompany Claims

18.     On September 15, 2022, the Debtors filed *Schedules of Assets and Liabilities of Voyager Digital Ltd. (Case No. 22-10944)* [Case No. 22-10944, Dkt. No. 8] (the "TopCo Schedules").

19.     The TopCo Schedules reflect that, as of July 5, 2022, Defendant TopCo held $233,125,616.66, which included, among other things, $2,488,537.36 in cash or cash equivalents and $229,939,304.85 in intercompany receivables and investments. *See* Case No. 22-10944, Dkt. No. 8, pp. 26, 34-35 of 47.

20.     The TopCo Schedules reflect that, as of July 5, 2022, Defendant TopCo had $1,572,093.24 in liabilities, of which the Debtors dispute $181,565.95, in addition to certain unliquidated liabilities. *See id.* at pp. 40-41 of 47.

21.     The TopCo Schedules were sworn to be true and correct under penalty of perjury by Stephen Ehrlich, Chief Executive Officer of Voyager Digital Holdings, Inc. *See id.* at p. 47 of 47.

22.     On August 22, 2022, OpCo filed the *Schedules of Assets and Liabilities of Voyager Digital, LLC (Case No. 22-10945)* [Case No. 22-10945, Dkt. No. 9] (the "OpCo Schedules").

23.     The OpCo Schedules reflect the following amounts owed to TopCo: (i) $1,477,523.21; and (ii) $215,981,185.39.  *See* Case No. 22-10945, Dkt. No. 9, p. 5,397 of 5,400. These amounts are not described as contingent, unliquidated, or disputed. *Id.* The OpCo Schedules

---

[4] As of the filing of this Complaint, Alameda Ventures Ltd. was not a debtor in the chapter 11 cases commenced by FTX Trading Ltd., West Realm Shires Services Inc., Alameda Research Ltd., and approximately 130 additional affiliated companies in the United States Bankruptcy Court for the District of Delaware on November 11, 2022.

were sworn to be true and correct under penalty of perjury by Stephen Ehrlich, Chief Executive

Officer of Voyager Digital Holdings, Inc. *See id.* at p. 5,400 of 5,400.

24.     Upon information and belief, on June 22, 2022, HoldCo entered into that certain

agreement for the revolving credit facility dated June 21, 2022, with Alameda Ventures Ltd. as

lender (the "Alameda Loan") to provide a revolving credit facility of $200 million in USD Coin

and 15,000 Bitcoin.

25.     Upon information and belief, $75 million of the Alameda Loan remains

outstanding.

26.     Upon information and belief, TopCo guaranteed the Alameda Loan.

27.     No guarantee of the Alameda Loan by TopCo is reflected in the TopCo Schedules.

28.     On August 22, 2022, HoldCo filed the *Schedules of Assets and Liabilities of

Voyager Digital Holdings, Inc. (Case No. 22-10943)* [Case No. 22-10943, Dkt. No. 321] (the

"HoldCo Schedules").

29.     The HoldCo Schedules reflect the following amounts owed to TopCo: (i)

$6,329,942.50; and (ii) 2,132,044.79. Case No. 22-10943, Dkt. No. 321, p. 41 of 48.

30.     The HoldCo Schedules reflect a general unsecured claim held by Alameda Ventures

Ltd. for the Alameda Loan totaling $75,125,000. *Id*. This claim is listed as contingent,

unliquidated, and disputed. *Id.* The HoldCo Schedules were sworn to be true and correct under

penalty of perjury by Stephen Ehrlich, Chief Executive Officer of Voyager Digital Holdings, Inc.

*See id.* at p. 48 of 48.

31.     On October 24, 2022, the Debtors filed the *First Amended Disclosure Statement

Relating to the Second Amended Joint Plan of Voyager Digital Holdings, Inc. and its Debtor

Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Case No. 22-10943, Dkt. No. 591] (the

"Disclosure Statement").

6

32.     On October 24, 2022, the Debtors filed the *Second Amended Joint Plan of Voyager Digital Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Case No. 22-10943, Dkt. No. 590] (as may be amended, the "Plan").

33.     Pursuant to the Plan, "Intercompany Claims"[5] shall be, "at the option of the Debtors, either (a) Reinstated, or (b) converted to equity, otherwise set off, settled, distributed, contributed, or cancelled, in each case in accordance with the Restructuring Transaction Memorandum." Plan § III.C.9.

**i.      February 2021 Term Loan**

34.     Upon information and belief, on February 12, 2021, OpCo, as borrower, entered into that certain loan agreement with TopCo, as lender, to document a $70 million unsecured loan previously received by OpCo from TopCo (the "February 2021 Term Loan").

35.     Upon information and belief, as of July 5, 2022, the amount outstanding under the February 2021 Term Loan was approximately $78.9 million.

36.     The Debtors state in the Disclosure Statement that they:

> believe, if litigated, that there is a high likelihood that the February 2021 Term Loan would be determined to be a capital contribution due to (i) the lack of repayment history, (ii) the fact that the February 2021 Term Loan was documented significantly after the amount had already been funded to OpCo, (iii) the fact that the February 2021 Term Loan was entered into solely to optimize tax positions, (iv) OpCo is the primary operating entity for Voyager's entire enterprise and TopCo was providing the necessary capital contribution to allow OpCo to operate, (v) the source of repayment was solely dependent on OpCo's business performance, (vi) the identity of interest between OpCo and TopCo, (vii) the absence of security for the advance, and (viii) the absence of a sinking fund to provide for repayment. Although the February 2021 Term Loan was formally documented, other factors, including those mentioned above, support the conclusion that the February 2021 Term Loan is most likely to be a capital contribution.

Disclosure Statement V.C.2.a.i.

---

[5] "Intercompany Claim" is defined under the Plan to mean any Claim held by a Debtor or a Debtor's Affiliate against a Debtor.

ii.    **February 2021 Revolving Loan**

37.    Upon information and belief, on February 12, 2021, OpCo, as borrower, entered

into that certain revolving credit agreement with TopCo, as lender, to document an unsecured

revolving credit facility with borrowing availability of up to $17.5 million provided by TopCo to

OpCo (the "February 2021 Revolving Loan").

38.    Upon information and belief, as of July 5, 2022, the amount outstanding under the

February 2021 Revolving Loan was approximately $1.47 million.

39.    The Debtors state in the Disclosure Statement that they:

> believe, if litigated, that there is a high likelihood that the February 2021 Revolving
> Loan obligation would be determined to be a capital contribution due to (i) the lack
> of repayment history, (ii) the fact that the February 2021 Revolving Loan was
> documented significantly after the amount had already been funded to OpCo,
> (iii) the fact that the February 2021 Revolving Loan was entered into solely to
> optimize tax positions, (iv) OpCo is the primary operating entity for Voyager's
> entire enterprise and TopCo was providing the necessary capital contribution to
> allow OpCo to operate, (v) the source of repayment was solely dependent on
> OpCo's business performance, (vi) the identity of interest between OpCo and
> TopCo, (vii) the absence of security for the advance, and (viii) the absence of a
> sinking fund to provide for repayment. Although the February 2021 Revolving
> Loan was formally documented, other factors, including those mentioned above,
> support the conclusion that the February 2021 Revolving Loan is most likely to be
> a capital contribution.

Disclosure Statement V.C.2.a.ii.

iii.    **November 2021 Intercompany Obligation**

40.    Upon information and belief, in November 2021, TopCo received a third-party

equity investment in the amount of $75 million and pushed such investment down to OpCo (the

"November 2021 Intercompany Obligation").

41.    Upon information and belief, as of July 5, 2022, the amount outstanding on the

November 2021 Intercompany Obligation was approximately $79.27 million.

42.     The Debtors state in the Disclosure Statement that they:

believe, if litigated, that there is a high likelihood that the November 2021
intercompany obligation would be determined to be a capital contribution due to (i)
the absence of instruments of indebtedness, (ii) no existence of a fixed maturity
date or schedule of payments, (iii) no existence of a fixed interest rate and interest
payments, (iv) the source of repayment was solely dependent on OpCo's business
performance, (v) the identity of interest between OpCo and TopCo, (vi) the absence
of security for the advance, and (vii) the absence of a sinking fund to provide for
repayment.

Disclosure Statement V.C.2.a.iii.

**iv.     May 2022 Intercompany Obligation**

43.     Upon information and belief, in May 2022, TopCo received a third-party equity

investment in the amount of $57 million and pushed such investment down to OpCo (the "May

2022 Intercompany Obligation").

44.     Upon information and belief, as of July 5, 2022, the amount outstanding on the May

2022 Intercompany Obligation was approximately $57.8 million.

45.     The Debtors state in the Disclosure Statement that they:

believe, if litigated, that there is a high likelihood that the May 2022 intercompany
obligation would be a capital contribution due to (i) the absence of instruments of
indebtedness, (ii) no existence of a fixed maturity date or schedule of payments,
(iii) no existence of a fixed interest rate and interest payments, (iv) the source of
repayment was solely dependent on OpCo's business performance, (v) the identity
of interest between OpCo and TopCo, (vi) the absence of security for the advance,
and (vii) the absence of a sinking fund to provide for repayment.

Disclosure Statement V.C.2.a.iv.

**v.     HoldCo Promissory Note**

46.     Upon information and belief, on October 26, 2021, HoldCo, as borrower, and

TopCo, as lender, entered into that certain promissory note in the amount of $6 million that matures

on September 30, 2024 (the "HoldCo Promissory Note").

47.     Upon information and belief, as of July 5, 2022, the amount outstanding on the

HoldCo Promissory Note was approximately $6.33 million.

9

48.    The Debtors assert that they believe the HoldCo Promissory Note "may" be determined to be a valid loan.  Disclosure Statement V.C.2.c.

### B.    CCAA Proceeding and Information Officer Reports

49.    On July 8, 2022, this Court entered its *Order (I) Authorizing Voyager Digital Ltd. to Act as Foreign Representative and (II) Granting Related Relief* [Case No. 22-10943, Dkt. No. 52] (the "Foreign Representative Order"). The Court authorized TopCo to act as foreign representative on behalf of the Debtors' estates in an ancillary proceeding (the "CCAA Proceeding") before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") pursuant to Companies' Creditors Arrangement Act (Canada) R.S.C., 1985, c. C-36 (as amended, the "CCAA").

50.    On July 11, 2022, TopCo brought an application before the Canadian Court seeking certain relief pursuant to Part IV of the CCAA.

51.    On July 12, 2022, TopCo obtained two orders of the Canadian Court, which provided for, among other things, initial recognition and the appointment of Alvarez & Marsal Canada Inc. as information officer (the "Information Officer") with respect to the CCAA Proceeding.

52.    On September 30, 2022, the Information Officer filed the *Second Report of Information Officer* (the "Second Report")[6] in the CCAA Proceeding.

53.    In the Second Report, the Information Officer states:

Upon receiving additional information from management of the Voyager Group, as of the Petition Date, the Information Officer understands that the amount owing to [TopCo] from OpCo in respect of unsecured intercompany debt facilities is approximately $217.5 million, including $80.4 million which is documented by way of certain loan agreements and $137.1 million which is characterized as debt on the books and records of [TopCo], but for which no intercompany loan agreements exist.

---

[6] https://www.alvarezandmarsal.com/content/voyager-digital-ltd-information-officer-reports.

In addition, as of the Petition Date, the Information Officer understands the amount owing to [TopCo] from [HoldCo] include (a) approximately $6.3 million in respect of an unsecured intercompany debt facility for which an intercompany loan agreement is in place, and (b) approximately $2.1 million in respect of unsecured intercompany receivables relating to allocations of expenses and management fees, recharges of bills paid on behalf of one another and cash movements between [TopCo] and [HoldCo].

The Information Officer understands amounts owing to [TopCo] from Voyager Group entities (including Non-Debtors) is as follows:

| VDL Intercompany Balances | Total (USD) |
|---|---|
| | |
| **VDL Intercompany Debt** | |
| OpCo | $217,458,709.60 |
| Voyager Holdings | $6,329,942.60 |
| **Total Debtor Intercompany Debt Receivables** | **$223,788,652.20** |
| | |
| **Other Debtor Intercompany Receivables** | |
| Voyager Holdings | $2,132,044.79 |
| **Total Other Debtor Intercompany Receivables** | **$2,132,044.79** |
| | |
| **Non-Debtor Intercompany Receivables** | |
| HTC Trading | $1,122,807.31 |
| LGO SAS | $1,054,238.88 |
| Voyager Digital Brokerage Canada Ltd | $890,403.64 |
| Voyager Digital Brokerage Ltd. | $48,304.60 |
| Voyager European Holdings ApS | $866,982.03 |
| Voyager IP, LLC | $164.40 |
| **Total Non-Debtor Intercompany Receivables** | **$3,982,900.86** |

In addition to the above, based on information provided by management of the Voyager Group, the Information Officer understands that approximately $46 million was advanced to OpCo by [TopCo] in the form of equity and approximately $16 million was advanced to Voyager European Holdings ApS by [TopCo] in the form of equity for the acquisition of Coinify during fiscal year ended June 30, 2022.

Second Report ¶¶ 6.2-6.5.

### C.    Alameda Loan Facility Claim

54.    On July 6, 2022, the Debtors filed the *Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Case No. 22-10943, Dkt. No. 17] (the "Initial Plan").

55.    Under the Initial Plan, the Alameda Loan Facility Claims[7] were to be "cancelled, released, discharged and extinguished as of the [effective date of the Initial Plan], and [would] be of no further force or effect, and [the holders of the Alameda Loan Facility Claims would] not receive any distribution on account of such" claims. Initial Plan § III.C.4.

56.    The treatment under the Initial Plan proposed to cancel and extinguish the Alameda Loan Facility Claims, which would relieve TopCo of its alleged guarantee obligation in connection with the Alameda Loan.

57.    On August 5, 2022, the Court entered its *Order (I) Approving the Bidding Procedures, (II) Scheduling the Bid Deadlines and the Auction, (III) Approving the Form and Manner of Notice Thereof, (IV) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Sale, Disclosure Statement, and Plan Confirmation and (V) Granting Related Relief* [Case No. 22-10943, Dkt. No. 248].

58.    The Debtors commenced an auction (the "Auction") to sell substantially all of their assets on September 13, 2022. On September 26, 2022, the Debtors filed the *Notice of Successful Bidder* [Case No. 22-10943, Dkt. No. 457], declaring West Realm Shires Inc. ("FTX US") as the winning bidder.

59.    The Initial Plan was filed prior to the Auction and selection of FTX US as the winning bidder.

60.    On October 5, 2022, the Debtors filed the *Second Amended Joint Plan of Voyager Digital Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Case No. 22-10943, Dkt. No. 496] (the "October 5 Plan") and the *First Amended Disclosure Statement Relating to the Second Amended Joint Plan of Voyager Digital Holdings, Inc. and its*

---

[7] Under the Initial Plan, "Alameda Loan Facility Claims" means any Claim (as defined under section 101(5) of the Bankruptcy Code) against any Debtor derived from, based upon, or arising under the Alameda Loan Agreement and any fees, costs, and expenses that are reimbursable by any Debtor pursuant to the Alameda Loan Agreement.

*Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Case No. 22-10943, Dkt. No. 498] (the "October 5 Disclosure Statement"). The October 5 Plan incorporated the sale of substantially all of the Debtors' assets to FTX US. The October 5 Plan provided that:

> Pursuant to the [asset purchase agreement between the Debtors and FTX US], all rights, titles, and interests in the Alameda Loan Facility Claims shall be transferred to OpCo, and shall subsequently **be cancelled, released, discharged and extinguished as of the Effective Date, and will be of no further force or effect,** and Holders of Alameda Loan Facility Claims will not receive any distribution on account of such Alameda Loan Facility Claims.

October 5 Plan § III.C.4.b (emphasis added).

61.     The October 5 Disclosure Statement explained that the October 5 Plan "consensually cancels all Alameda Loan Facility Claims." October 5 Disclosure Statement § II, p. 10.

62.     On October 12, 2022, the AHG filed the *Objection of the Ad Hoc Group of Equity Holders to Debtors' Motion for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [Case No. 22-10943, Dkt. No. 524] and a declaration of Matthew Dundon in support of the same [Case No. 22-10943, Dkt. No. 525] (collectively, the "AHG Objection"). The AHG Objection noted that the October 5 Plan cancelled the Alameda Loan Facility Claims thereby eliminating TopCo's only material liability. AHG Objection ¶ 66.

63.     Following the filing of the AHG Objection, the Debtors amended the October 5 Plan on October 17, 2022 [Case No. 22-10943, Dkt. No. 539] (the "October 17 Plan"). The October 17 Plan provided that the Alameda Loan Facility Claims "shall be deemed Allowed, and all rights, titles, and interests in the Alameda Loan Facility Claims shall be conveyed to OpCo, and OpCo shall be entitled to any recovery on account of the Alameda Loan Facility Claims." October 17 Plan § III.C.4.b.

64.    On October 19, 2022, the Court held a hearing at which counsel for the Debtors stated that the treatment of the Alameda Loan Facility Claims in the October 5, 2022 Plan and prior iterations of the Plan, including the Initial Plan, had been a mistake.  The position taken by Debtors' counsel was contrary to the positions taken by the Debtors in the Initial Plan and October 5 Plan despite no material change in the facts aside from the sale of the Debtors' assets to FTX US.

## COUNT I

**(For Declaratory Judgment that the February 2021 Term Loan is Valid
and Enforceable and is Not Subject to Recharacterization or Subordination)**

65.    The Plaintiff repeats and realleges the averments in paragraphs 1 through 64 of this Complaint as if fully set forth herein.

66.    TopCo entered into the February 2021 Term Loan with OpCo, and at least $78.9 million remains outstanding thereunder. The February 2021 Term Loan was formally documented.

67.    TopCo and OpCo included the February 2021 Term Loan obligations in the TopCo Schedules and OpCo Schedules.

68.    The Debtors have stated their belief that the February 2021 Term Loan would be determined to be a capital contribution. This belief is directly contradicted by the sworn TopCo Schedules and OpCo Schedules, which do not dispute the validity of the February 2021 Term Loan.

69.    The Debtors' Disclosure Statement assumes a 0% recovery on all Intercompany Claims, except for the HoldCo Promissory Note.

70.    Value derived from the repayment of the February 2021 Term Loan would benefit the Plaintiff, comprised of equity holders of TopCo.

71.    The Debtors' contradictory pleadings and public filings leave the Plaintiff uncertain as to its rights to TopCo's recovery on the February 2021 Term Loan. The Plaintiff is therefore

entitled to a declaratory judgment and asks this Court to determine its rights with respect to TopCo's recovery on the February 2021 Term Loan.

72.     There is an actual and justiciable controversy that is of sufficient immediacy to warrant judicial relief under 28 U.S.C. § 2201. A prompt resolution of the dispute regarding the validity of the February 2021 Term Loan is necessary to protect the claims of TopCo against OpCo and, in turn, the value of the Plaintiff's equity interests in TopCo.

73.     The Plaintiff requests entry of a declaratory judgment that the February 2021 Term Loan is a valid and enforceable obligation owed by OpCo to TopCo that cannot be recharacterized or subordinated.

## <u>COUNT II</u>

**(For Declaratory Judgment that the February 2021 Revolving Loan is Valid and Enforceable and is Not Subject to Recharacterization or Subordination)**

74.     Plaintiffs repeat and reallege the averments in paragraphs 1 through 73 of this Complaint as if fully set forth herein.

75.     TopCo entered into the February 2021 Revolving Loan with OpCo, and at least $1.47 million remains outstanding thereunder. The February 2021 Revolving Loan was formally documented.

76.     TopCo and OpCo included the February 2021 Revolving Loan obligations in the TopCo Schedules and OpCo Schedules.

77.     The Debtors have stated their belief that the February 2021 Revolving Loan would be determined to be a capital contribution. This belief is directly contradicted by the sworn TopCo Schedules and OpCo Schedules, which do not dispute the validity of the February 2021 Revolving Loan.

78.     The Debtors' Disclosure Statement assumes a 0% recovery on all Intercompany Claims, except for the HoldCo Promissory Note.

79.     Value derived from the repayment of the February 2021 Revolving Loan would benefit the Plaintiff, comprised of equity holders of TopCo.

80.     The Debtors' contradictory pleadings and public filings leave the Plaintiff uncertain as to its rights to TopCo's recovery on the February 2021 Revolving Loan. The Plaintiff is therefore entitled to a declaratory judgment and asks this Court to determine its rights with respect to TopCo's recovery on the February 2021 Revolving Loan.

81.     There is an actual controversy that is of sufficient immediacy to warrant judicial relief under 28 U.S.C. § 2201. A prompt resolution of the dispute regarding the validity of the February 2021 Revolving Loan is necessary to protect the claims of TopCo against OpCo and, in turn, the value of the Plaintiff's equity interests in TopCo.

82.     The Plaintiff requests entry of a declaratory judgment that the February 2021 Revolving Loan is a valid and enforceable obligation owed by OpCo to TopCo that cannot be recharacterized or subordinated.

## COUNT III

**(For Declaratory Judgment that the November 2021 Intercompany Obligation is Valid and Enforceable and is Not Subject to Recharacterization or Subordination)**

83.     The Plaintiff repeats and realleges the averments in paragraphs 1 through 82 of this Complaint as if fully set forth herein.

84.     The November 2021 Intercompany Obligation, totaling at least $79.27 million, owed by OpCo to TopCo remains outstanding.

85.     TopCo and OpCo included the November 2021 Intercompany Obligation in the TopCo Schedules and OpCo Schedules.

86.     The Debtors have stated their belief that the November 2021 Intercompany Obligation would be determined to be a capital contribution. This belief is directly contradicted by

the sworn TopCo Schedules and OpCo Schedules, which do not dispute the validity of the November 2021 Intercompany Obligation.

87.    The Debtors' Disclosure Statement assumes a 0% recovery on all Intercompany Claims, except for the HoldCo Promissory Note.

88.    Value derived from the repayment of the November 2021 Intercompany Obligation would benefit the Plaintiff, comprised of equity holders of TopCo.

89.    The Debtors' contradictory pleadings and public filings leave the Plaintiff uncertain as to its rights to TopCo's recovery on the November 2021 Intercompany Obligation. The Plaintiff is therefore entitled to a declaratory judgment and asks this Court to determine its rights with respect to TopCo's recovery on the November 2021 Intercompany Obligation.

90.    There is an actual controversy that is of sufficient immediacy to warrant judicial relief under 28 U.S.C. § 2201. A prompt resolution of the dispute regarding the validity of the November 2021 Intercompany Obligation is necessary to protect the claims of TopCo against OpCo and, in turn, the value of the Plaintiff's equity interests in TopCo.

91.    The Plaintiff requests entry of a declaratory judgment that the November 2021 Intercompany Obligation is a valid and enforceable obligation owed by OpCo to TopCo that cannot be recharacterized or subordinated.

## COUNT IV

**(For Declaratory Judgment that the May 2022 Intercompany Obligation is Valid
and Enforceable and is Not Subject to Recharacterization or Subordination)**

92.    The Plaintiff repeats and realleges the averments in paragraphs 1 through 91 of this Complaint as if fully set forth herein.

93.    The May 2022 Intercompany Obligation, totaling at least $57.8 million, owed by OpCo to TopCo remains outstanding.

94.     TopCo and OpCo included the May 2022 Intercompany Obligation in the TopCo Schedules and OpCo Schedules.

95.     The Debtors have stated their belief that the May 2022 Intercompany Obligation would be determined to be a capital contribution. This belief is directly contradicted by the sworn TopCo Schedules and OpCo Schedules, which do not dispute the validity of the May 2022 Intercompany Obligation.

96.     The Debtors' Disclosure Statement assumes a 0% recovery on all Intercompany Claims, except for the HoldCo Promissory Note.

97.     Value derived from the repayment of the May 2022 Intercompany Obligation would benefit the Plaintiff, comprised of equity holders of TopCo.

98.     The Debtors' contradictory pleadings and public filings leave the Plaintiff uncertain as to its rights to TopCo's recovery on the May 2022 Intercompany Obligation. The Plaintiff is therefore entitled to a declaratory judgment and asks this Court to determine its rights with respect to TopCo's recovery on the May 2022 Intercompany Obligation.

99.     There is an actual controversy that is of sufficient immediacy to warrant judicial relief under 28 U.S.C. § 2201. A prompt resolution of the dispute regarding the validity of the May 2022 Intercompany Obligation is necessary to protect the claims of TopCo against OpCo and, in turn, the value of the Plaintiff's equity interests in TopCo.

100.     The Plaintiff requests entry of a declaratory judgment that the May 2022 Intercompany Obligation is a valid and enforceable obligation owed by OpCo to TopCo that cannot be recharacterized or subordinated.

## COUNT V

### (For Declaratory Judgment that the HoldCo Promissory Note is Valid and Enforceable and is Not Subject to Recharacterization or Subordination)

101.    The Plaintiff repeats and realleges the averments in paragraphs 1 through 100 of this Complaint as if fully set forth herein.

102.    The HoldCo Promissory Note, totaling at least $6.33 million, owed by HoldCo to TopCo remains outstanding.

103.    TopCo and HoldCo included the HoldCo Promissory Note in the TopCo Schedules and HoldCo Schedules.

104.    The Debtors have stated their belief that the HoldCo Promissory note "may" be determined to be a valid loan.

105.    Value derived from the repayment of the HoldCo Promissory Note would benefit the Plaintiff, comprised of equity holders of TopCo.

106.    The Plaintiff seeks certainty as to its rights to TopCo's recovery on the HoldCo Promissory Note as the Debtors have only asserted that the HoldCo Promissory Note "may" be found to be a valid loan. The Plaintiff is therefore entitled to a declaratory judgment and asks this Court to determine its rights with respect to TopCo's recovery on the HoldCo Promissory Note.

107.    There is an actual controversy that is of sufficient immediacy to warrant judicial relief under 28 U.S.C. § 2201. A prompt resolution of the dispute regarding the validity of the HoldCo Promissory note is necessary to protect the claims of TopCo against HoldCo and, in turn, the value of the Plaintiff's equity interests in TopCo.

108.    The Plaintiff requests entry of a declaratory judgment that the HoldCo Promissory Note is a valid and enforceable obligation owed by HoldCo to TopCo that cannot be recharacterized or subordinated.

## COUNT VI

**(For Declaratory Judgment that the Alameda Loan and/or TopCo's Purported Guarantee
of the Alameda Loan is Invalid and Unenforceable)**

109.    The Plaintiff repeats and realleges the averments in paragraphs 1 through 108 of
this Complaint as if fully set forth herein.

110.    The sworn TopCo Schedules do not reflect any guarantee of the Alameda Loan.

111.    The sworn HoldCo Schedules reflect that the Alameda Loan is unliquidated,
contingent, and disputed by the Debtors.

112.    The Initial Plan and October 5 Plan cancelled the Alameda Loan Claims and
relieved TopCo of any alleged guarantee obligations.

113.    The Initial Plan was filed prior to the Auction.

114.    The October 5 Plan was filed following the conclusion of the Auction and the
selection of FTX US as the winning bidder.

115.    The Debtors' filings prior to the filing of the AHG Objection consistently reflected
the Debtors' dispute of the validity of the Alameda Loan Facility Claims and the cancellation of
the same.

116.    Following the filing of the AHG Objection which noted that the October 5 Plan
cancelled the Alameda Loan Facility Claims thereby eliminating TopCo's only material liability,
the Debtors amended the October 5 Plan. The current Plan removed the cancellation of the
Alameda Loan Facility Claims subsequent to the conveyance of such claims to OpCo and, instead,
provides that the Alameda Loan Facility Claims shall be conveyed to OpCo, and OpCo shall be
entitled to a recovery on account of those claims.

117.    There is an actual controversy that is of sufficient immediacy to warrant judicial
relief under 28 U.S.C. § 2201. A prompt resolution of the dispute regarding the validity of the

Alameda Loan and claims related thereto is necessary to protect the value of the Plaintiff's equity interests in TopCo.

118.    The Plaintiff requests entry of a declaratory judgment that the (a) the Alameda Loan and the purported guarantee of the Alameda Loan by TopCo are each invalid and unenforceable, or (b) the purported guarantee by TopCo of the Alameda Loan is invalid and unenforceable without regard to whether or not the Alameda Loan is enforceable against its borrower, HoldCo.

WHEREFORE, by reason of the foregoing, the Plaintiff requests that the Court enter an order and judgment:

(1)    Declaring the February 2021 Term Loan to be valid and enforceable and not subject to recharacterization or subordination;

(2)    Declaring the February 2021 Revolving Loan to be valid and enforceable and not subject to recharacterization or subordination;

(3)    Declaring the November 2021 Intercompany Obligation to be valid and enforceable and not subject to recharacterization or subordination;

(4)    Declaring the May 2022 Intercompany Obligation to be valid and enforceable and not subject to recharacterization or subordination;

(5)    Declaring the HoldCo Promissory Note to be valid and enforceable and not subject to recharacterization or subordination;

(6)    Declaring the purported guarantee by TopCo of the Alameda Loan to be invalid or unenforceable, on its own or together with the invalidity or unenforceability of the Alameda Loan against its borrower; and

(7)    Granting the Plaintiff such other and further relief as the Court deems just, proper, and equitable, including the costs and expenses of this action.

*[Signature Appears on Following Page]*

Dated: November 11, 2022          /s/ *David M. Posner*
                                  **KILPATRICK TOWNSEND & STOCKTON LLP**
                                  David M. Posner, Esq.
                                  Kelly Moynihan, Esq.
                                  The Grace Building
                                  1114 Avenue of the Americas
                                  New York, New York 10036-7703
                                  Telephone:  (212) 775-8700
                                  Facsimile:  (212) 775-8800
                                  Email:  dposner@kilpatricktownsend.com
                                          kmoynihan@kilpatricktownsend.com

                                  -and-

                                  Paul M. Rosenblatt, Esq.
                                  1100 Peachtree Street NE, Suite 2800
                                  Atlanta, GA 30309
                                  Telephone: (404) 815-6500
                                  Facsimile:  (404) 815-6555
                                  Email: prosenblatt@kilpatricktownsend.com

                                  *Counsel to the Ad Hoc Group of Equity Interest Holders*
                                  *of Voyager Digital Ltd.*