Hearing Date:  December 8, 2022 at 11:00 a.m. (prevailing Eastern Time)
Objection Deadline:  December 1, 2022, at 4:00 p.m. (prevailing Eastern Time)

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC. *et al.*,[1] | Case No. 22-10943 (MEW) |
| Debtors. | (Jointly Administered) |

**NOTICE OF HEARING ON DEBTORS'**
**MOTION FOR ENTRY OF AN ORDER**
**(I) APPROVING THE MEMBERSHIP INTEREST**
**PURCHASE AGREEMENT, BY AND BETWEEN VOYAGER**
**DIGITAL HOLDINGS, INC., MARKET REBELLION, LLC, VYGR**
**HOLDINGS, LLC, AND VYGR MANAGEMENT LLC AND RELATED**
**DOCUMENTS AND AGREEMENTS AND (II) GRANTING RELATED RELIEF**

　　　　**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Motion for Entry of an Order (I) Approving the Membership Interest Purchase Agreement, By and Between Voyager Digital Holdings, Inc., Market Rebellion, LLC, VYGR Holdings, LLC, and VYGR Management LLC and Related Documents and Agreements and (II) Granting Related Relief* (the "Motion"), will be held on **December 8, 2022, at 11:00 a.m.**, **prevailing Eastern Time** (the "Hearing").  In accordance

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

with General Order M-543 dated March 20, 2020, the Hearing will be conducted telephonically.

Any parties wishing to participate must do so by making arrangements through CourtSolutions by

visiting https://www.court-solutions.com.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief

requested in the Motion shall:  (a) be in writing; (b) conform to the Federal Rules of Bankruptcy

Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General

Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern

District of New York; (c) be filed electronically with the Court on the docket of *In re Voyager*

*Digital Holdings, Inc.*, No. 22-10943 (MEW) by registered users of the Court's electronic filing

system and in accordance with all General Orders applicable to chapter 11 cases in the United

States Bankruptcy Court for the Southern District of New York (which are available on the Court's

website at http://www.nysb.uscourts.gov); and (d) be served so as to be actually received by

**December 1, 2022, at 4:00 p.m., prevailing Eastern Time**, by (i) the entities on the Master

Service List available on the case website of the above-captioned debtors and debtors in possession

(the "Debtors")  at  https://cases.stretto.com/Voyager  and  (ii) any  person  or  entity  with  a

particularized interest in the subject matter of the Motion.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are

timely filed, served, and received will be considered at the Hearing.  Failure to file a timely

objection may result in entry of a final order granting the Motion as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings

filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at

https://cases.stretto.com/Voyager.  You may also obtain copies of the Motion and other pleadings

filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in

accordance with the procedures and fees set forth therein.

| Dated: November 17, 2022<br>New York, New York | /s/ Joshua A. Sussberg |
|---|---|

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    jsussberg@kirkland.com
    cmarcus@kirkland.com
    christine.okike@kirkland.com
    allyson.smith@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:       (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC. *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' MOTION FOR**
**ENTRY OF AN ORDER (I) APPROVING**
**THE MEMBERSHIP INTEREST PURCHASE**
**AGREEMENT, BY AND BETWEEN VOYAGER**
**DIGITAL HOLDINGS, INC., MARKET REBELLION, LLC, VYGR**
**HOLDINGS, LLC, AND VYGR MANAGEMENT LLC AND RELATED**
**DOCUMENTS AND AGREEMENTS AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state the following in support of this motion (this "Motion"):

**Relief Requested**

1.      The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"): (a) approving entry into the membership interest purchase agreement, by

and between Voyager Digital Holdings, Inc. ("Voyager"), Market Rebellion, LLC ("Market

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC
(8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY
10003.

Rebellion"), VYGR Holdings, LLC ("Holdings"), and VYGR Management LLC ("Management," and together with Holdings, the "Joint Venture") and any related documents and agreements thereto (collectively, the "Purchase Agreement,"[2] and such sale of equity interests contemplated therein, the "Sale") and (b) granting related relief. In further support of this Motion, the Debtors respectfully submit as follows.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012. The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rules 2002-1 and 6004-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), and the *Sale Guidelines for the Conduct of Asset Sales Established and Adopted by the United States Bankruptcy Court for the Southern District of New York Pursuant to General Order M-383* (the "Sale Guidelines").

---

[2]     The Purchase Agreement, attached as Exhibit 1 to the Order, is in its substantially final form. To the extent any material terms are changed, the Debtors will file the final form of the Purchase Agreement in advance of the Hearing (as defined in the Order).

## Background

5.        On July 5, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Stephen Ehrlich, Chief Executive Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 15] (the "First Day Declaration"), incorporated by reference herein.[3]

6.        The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 18].  On July 19, 2022, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 102] (the "Committee").  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

## The Proposed Sale

### I.        Background.

7.        VYGR Digital Securities, LLC ("VDS"), a California limited liability company, is a subsidiary of Holdings, and was formed as a broker-dealer with the intent of allowing individual investors on the Debtors' platform to trade stock alongside cryptocurrency.  Market Rebellion, a Delaware limited liability company, is a trading application development company that develops algorithms for trading education, content, and other tools to assist independent investors. In July 2021, Voyager entered into the Joint Venture with Market Rebellion under which each entity held 50 percent ownership in Holdings and 50 percent ownership in Management, which

---

[3]    Capitalized terms not defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

served as the management company for Holdings.   The Joint Venture was an effort to increase the trading and investing products provided on the Debtors' platform by allowing individual investors to trade equities, options, and futures.   In the Joint Venture, Market Rebellion was tasked with hiring developers to develop the equity trading software that would complement the Debtors' cryptocurrency trading.   Voyager, on the other hand, was tasked with carrying out any trades that would have been placed through the Debtors' platform.   As of the filing of this Motion, the Joint Venture is still in the development phase.

8.     As part of these chapter 11 cases, the Debtors undertook to market and sell substantially all of their assets.   During the extensive pre- and postpetition marketing process for the Debtors' assets, including a highly competitive two-week auction, no bidder expressed interest in acquiring Voyager's interests in the Joint Venture as a going concern in a standalone sale or in connection with their overall bid for the Debtors' other assets.   As such, the Debtors began to explore alternatives to minimize Voyager's liabilities attributable to the Joint Venture.   In September, 2022, the Debtors initiated discussions with Market Rebellion regarding the sale of Voyager's equity interests in the Joint Venture in exchange for the termination of Voyager's expense obligations.

9.     To avoid the near-term cash burn generated by the Joint Venture, the Debtors seek authority to enter into the Purchase Agreement to effectuate the sale of all of their equity interests in the Joint Venture to Market Rebellion.   Specifically, the Purchase Agreement contemplates that Voyager will convey all of its equity interests in the Joint Venture to Market Rebellion in exchange for (i) the assumption by Market Rebellion of all financial obligations directly or indirectly related to the Joint Venture (including all payroll and other operating expenses) incurred by Holdings and Management on and after October 10, 2022 (the "Funding Obligations"), (ii) the release of

4

Voyager from all Funding Obligations, (iii) the release of Voyager from funding any other amounts required to be funded pursuant to the two side letters, one entered into by Voyager, Market Rebellion, and Holdings, and one entered into by Voyager, Market Rebellion, and Management— each enumerating the obligations and rights of Voyager and Market Rebellion in connection with fundraising and the granting of loans, among other things, and (iv) the conveyance by Holdings following the closing of the Sale of 100% of membership interests of VDS to Voyager (or its successor in interest), and the waiver by Market Rebellion, Management, and Holdings of all rights and interests to any regulatory cash held by VDS and any claims or causes of action held by VDS against any person or entity (collectively, the "Purchase Price").

10.    The Debtors believe the sale of their interests in the Joint Venture is a prudent exercise of their business judgment.  Absent such sale, the Debtors would need to keep funding their share of the Joint Venture's obligations at substantial cost to the Debtors' estates.  Since the beginning of 2022, Voyager has provided approximately $1.14 million to the Joint Venture, which was used to fund Voyager's 50 percent share of operating and payroll expenses of approximately $1,350,000 and expenses in the amount of $150,000 paid to Apex Clearing Corporation, a digital clearing and custody company which provides FINRA-required broker-dealer clearing services. Effectuating the Sale now saves the Debtors approximately $20,000 in Funding Obligations and legal expenses that the Debtors otherwise would have to expend to wind down Voyager's equity interests in the Joint Venture—funds that may instead be distributed for the benefit of the Debtors' creditors.  The Debtors have consulted with the Committee with respect to the Sale, and the Committee has no objection.  For these reasons, the Debtors request approval for Voyager to enter into the Purchase Agreement and to sell all of its equity interests in the Joint Venture to Market Rebellion.

## II. Material Terms of the Purchase Agreement.

11.    The following chart summarizes the key terms and conditions of the Purchase

Agreement:[4]

| Provision | Summary Description |
|---|---|
| Parties | <u>Seller</u>: Voyager Digital Holdings, Inc.<br><br><u>Buyer</u>: Market Rebellion, LLC<br><br><u>Joint Venture</u>: VYGR Holdings LLC and VYGR Management LLC |
| Purchase Price | The Purchase Price encompasses:<br><br>• The Funding Obligations;<br>• The release of Seller from all Funding Obligations;<br>• The release of Seller from funding any other amounts required to be funded pursuant to the Holding Side Letter and the Management Side Letter; and<br>• The conveyance by Holdings following the closing of the Sale of 100% of the membership interests of VDS to Voyager (or its successor in interest), and the waiver by Market Rebellion, Management, and Holdings of all rights and interests to any regulatory cash held by VDS and any claims or causes of action held by VDS against any person or entity. |
| Acquired Assets | 50% equity interests in the Joint Venture. |
| Closing Date | Closing shall occur at 10:00 a.m. Eastern Time two business days following the later of (i) the entry of the Sale Order by the Bankruptcy Court, and (ii) thirty (30) days following the date VDS provides notice to FINRA of the transactions contemplated by the Purchase Agreement, and FINRA shall not have imposed any interim restriction requiring FINRA approval for the Closing; *provided* that in the event that FINRA does impose such interim restriction, the Closing shall occur upon the earlier of such time as (x) the interim restriction has been lifted or (y) FINRA approval has been obtained. |

12.    In the Debtors' business judgment, the Sale is fair, reasonable, and the best

available option to maximize value for the Debtors and all stakeholders.

---

[4]    This summary is provided for the convenience of the Court and parties in interest. To the extent there is any conflict between this summary and the Purchase Agreement, the Purchase Agreement shall govern in all respects. Capitalized terms used in the following summary shall have the meanings ascribed to them in the Purchase Agreement.

## Basis for Relief

I.    **The Sale and Entry Into the Purchase Agreement Should Be Approved as a Sound Exercise of the Debtors' Business Judgment.**

13.    Section 363(b) of the Bankruptcy Code permits a debtor, subject to court approval, to enter into a transaction outside the ordinary course of its business so long as there is a "sound business purpose" that justifies such action.  *See* 11 U.S.C. § 363(b)(1); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (holding that judicial approval under section 363 of the Bankruptcy Code requires a showing that there is a good business reason)*; see also In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003) (same)*.

14.    Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted).  *See also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

15.    When determining whether to approve a proposed sale under section 363 of the Bankruptcy Code, courts apply a business judgment test.  *See*, *e.g.*, *In re MF Glob. Inc.*, 535 B.R. 596, 605 (Bankr. S.D.N.Y. 2015); *Global Crossing Ltd.*, 295 B.R. at 744.  For instance, in *In re Lionel Corp.*, the Court of Appeals for the Second Circuit analyzed several (non-exclusive) factors in conducting a section 363(b) analysis, including whether:  (a) a sound business purpose existed that justified the sale; (b) adequate and reasonable notice was provided to interested parties; (c) the sale value obtained was fair and reasonable; and (d) the debtor acted in good faith.  722 F.2d at 1071–72.

7

16.     Effectuating the Sale and entering into the Purchase Agreement is a sound exercise of the Debtors' business judgment because it will eliminate material cash burn as well as a potentially costly wind down process.  The Sale is the product of an arm's length negotiation between sophisticated parties represented by able counsel.  Selling all of Voyager's equity interests in the Joint Venture will relieve the Debtors of ongoing cash outlays and upkeep costs associated with ownership of the Joint Venture.  Further, because the Debtors are not contemplated to continue operating as a going concern, the Joint Venture interests will inevitably need to be addressed.  Doing so now provides certainty to the Debtors regarding liabilities and obligations under the Joint Venture and preserves value that can otherwise go to stakeholders.  Accordingly, the Debtors have determined that the proposed Sale is the best and most cost-efficient option to dispose of the Joint Venture.  In reaching this conclusion, the Debtors acted on an informed basis, in good faith, and with the honest belief that the Sale is in the best interests of the Debtors' estates. In addition, the Debtors will benefit from the conveyance by Holdings following the closing of the Sale of 100% of the membership interests of VDS to Voyager (or its successor in interest), and the waiver by Market Rebellion, Management, and Holdings of all rights and interests to any regulatory cash held by VDS and any claims or causes of action held by VDS against any person or entity.  Accordingly, the Debtors submit that the sale of all of Voyager's equity interests in the Joint Venture pursuant to the Purchase Agreement should be approved.

## II.    The Proposed Sale is Appropriate Pursuant to Bankruptcy Rule 6004(f).

17.     Bankruptcy Rule 6004(f) authorizes a debtor to sell estate property outside of the ordinary course of business by private sale or public auction.  A court-approved auction process is not required to prove it so under the Bankruptcy Code, Bankruptcy Rules, or Local Rules. *See, e.g.*, *In re The Great Atl. & Pac. Tea Co., Inc.*, 544 B.R. 43, 49–50 (Bankr. S.D.N.Y. 2016) ("[T]here is no rule that . . . asset sales are . . . conditioned on such a requirement

[a formal auction], which does not appear in the Bankruptcy Code or Bankruptcy Rules. The Bankruptcy Court for the Southern District of New York's *Guidelines for the Conduct of Asset Sales* . . . stat[e] that . . . the Court does not express a preference for public sales over private sales as a means to maximize the sale price.") (internal citations and quotations omitted). Additionally, courts have held that a debtor has broad discretion to determine the manner in which its assets are sold. *See In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) (noting that a trustee has ample authority to conduct a sale of estate property through private sale).

18.    In an exercise of their sound business judgment, the Debtors have determined that effectuating the Sale on a private basis is appropriate in light of the facts and circumstances of these chapter 11 cases and is in the best interest of their estates and all parties in interest. The Debtors' previously marketed the Joint Venture during their extensive pre- and postpetition marketing process, including the two-week public auction, but no bidder expressed an interest in acquiring Voyager's interests. Given these circumstances, the Debtors believe that the Sale is value maximizing and appropriate under the circumstances.

## III. Market Rebellion Acted in Good Faith and Is Entitled to Full Protections Pursuant to Section 363(m) of the Bankruptcy Code.

19.    Because Market Rebellion acted in good faith, it is entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with the Sale. Section 363(m) of the Bankruptcy Code provides in pertinent part:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

9

11 U.S.C. § 363(m).  Section 363(m) of the Bankruptcy Code protects a purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal.  Purchasers are provided this protection so long as they purchased the assets in "good faith." *Id.*  Although the Bankruptcy Code does not define "good faith purchaser," the Second Circuit has held that a purchaser's good faith is shown by the integrity of its conduct during the course of the sale proceedings, with a lack of integrity suggesting a lack of good faith.  *See, e.g.*, *In re Gucci*, 126 F.3d 380, 390 (2d Cir. 1997) (a purchaser's good faith is lost by "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders") (internal citations omitted).

20.    Here, the Debtors engaged in good faith, arm's length discussions with Market Rebellion to reach an agreement with Market Rebellion that would be mutually beneficial to both parties.  The Debtors and Market Rebellion were each represented by separate counsel in connection with the negotiation and documentation of the Purchase Agreement.  A fair and transparent process, such as that conducted by the Debtors here, ensures the Sale is at arm's-length, without collusion or fraud, and entered into in good faith.  Accordingly, the Debtors request that the Court determine that Market Rebellion has negotiated and acted at all times in good faith and, as a result, is entitled to the full protections of good faith purchasers under section 363(m) of the Bankruptcy Code.

## IV.    Relief Under Bankruptcy Rules 6004(h) Is Appropriate.

21.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of fourteen days after the entry of the order, unless the court orders otherwise."  The Debtors request that the Order be effective immediately upon its entry by providing that the fourteen-day stay under Bankruptcy Rules 6004(h) is waived.

22.     The purpose of Bankruptcy Rules 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).  Although Bankruptcy Rules 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, the leading treatise on bankruptcy suggests that the fourteen-day stay should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to procedure."  10 *Collier on Bankruptcy* ¶ 6004.10 (15th rev. ed. 2006).  Furthermore, if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.  *Id.*

23.     To maximize the value received for the Joint Venture, the Debtors seek to execute the Sale as soon as possible after the hearing.  Accordingly, the Debtors hereby request that the Court waive the 14-day stay period under Bankruptcy Rules 6004(h).

## **Reservation of Rights**

24.     Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief

11

sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## **Motion Practice**

25.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

## **Notice**

26.     The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable:  (a) the U.S. Trustee; (b) the Committee; (c) the lender under the Debtors' prepetition loan facility; (d) the United States Attorney's Office for the Southern District of New York; (e) the Internal Revenue Service; (f) the Toronto Stock Exchange; (g) the attorneys general in the states where the Debtors conduct their business operations; (h) Market Rebellion; and (i)  any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

27.     No prior request for the relief sought in this Motion has been made to this or any other court.


*[Remainder of page intentionally left blank]*

12

WHEREFORE, the Debtors respectfully request that the Court enter the Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated:  November 17, 2022       */s/ Joshua A. Sussberg*
New York, New York       **KIRKLAND & ELLIS LLP**
     **KIRKLAND & ELLIS INTERNATIONAL LLP**
     Joshua A. Sussberg, P.C.
     Christopher Marcus, P.C.
     Christine A. Okike, P.C.
     Allyson B. Smith (admitted *pro hac vice*)
     601 Lexington Avenue
     New York, New York 10022
     Telephone:  (212) 446-4800
     Facsimile:  (212) 446-4900
     Email:  jsussberg@kirkland.com
           cmarcus@kirkland.com
           christine.okike@kirkland.com
           allyson.smith@kirkland.com

     *Counsel to the Debtors and Debtors in Possession*

## **Exhibit A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## ORDER (I) APPROVING THE MEMBERSHIP INTEREST PURCHASE AGREEMENT, BY AND BETWEEN VOYAGER DIGITAL HOLDINGS, INC., MARKET REBELLION, LLC, VYGR HOLDINGS, LLC, AND VYGR MANAGEMENT LLC AND RELATED DOCUMENTS AND AGREEMENTS AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of the Debtors for entry of an order (this "Order"), (i) approving entry into the membership interest purchase agreement, by and between Voyager Digital Holdings, Inc. ("Voyager"), Market Rebellion, LLC ("Market Rebellion"), VYGR Holdings, LLC ("Holdings"), and VYGR Management LLC and any related documents and agreements thereto (collectively, the "Purchase Agreement") and (ii) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors'

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefore, it is HEREBY FOUND AND DETERMINED THAT:

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     Without limiting the generality of the foregoing, this Court has exclusive in rem jurisdiction over Voyager's equity interests in the Joint Venture (as defined in the Motion) pursuant to 28 U.S.C. § 1334(e), as such equity interests in the Joint Venture (the "Joint Venture Interests") are property of Voyager's chapter 11 estate, and, as a result of such jurisdiction, this Court has all necessary power and authority to grant the relief contained herein. This is a core proceeding within the meaning of 28 U.S.C. § 157(b), and as such, this Court has the authority to enter a final order approving the Sale.

C.     As demonstrated by the evidence presented at the Hearing, proper, timely, adequate, and sufficient notice of the Motion, the Hearing, and the Sale (as defined in the Motion) was provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code and

3

Bankruptcy Rules 2002, 6004, 6006, and 9014, and is deemed sufficient and reasonably calculated

under the circumstances to reach and apprise all known and unknown holders of Encumbrances

(as defined in the Purchase Agreement), and no other or further notice of the Motion, the Hearing

and the Sale is, or shall be, required.

        D.      Voyager has demonstrated that entry into and consummation of the Purchase

Agreement is an exercise of its sound business judgment, and such acts are in the best interests of

the Debtors, their estates, their creditors, and all parties in interest.  The Court finds that Voyager

has articulated good and sufficient business reasons justifying the sale of the Joint Venture

Interests to Market Rebellion pursuant to the terms and conditions set forth in the Purchase

Agreement.

        E.      The Purchase Agreement was negotiated and is undertaken by Voyager and Market

Rebellion at arm's length, without collusion or fraud, and in good faith within the meaning of

section 363(m) of the Bankruptcy Code. All payments to be made by Market Rebellion and other

agreements or arrangements entered into by Market Rebellion in connection with the Sale have

been disclosed, and Market Rebellion has not violated section 363(n) of the Bankruptcy Code by

any action or inaction.  As a result of the foregoing, Market Rebellion is a "good faith" purchaser

within the meaning of section 363(m) of the Bankruptcy Code, and as such, is entitled to all of the

protections afforded thereby, including in the event this Order or any portion thereof is reversed

or modified on appeal.

        F.      Voyager is authorized to sell the Joint Venture Interests free and clear of any and

all Encumbrances because, with respect to each creditor or other person or entity asserting an

Encumbrance, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy

Code has been satisfied.  Each creditor or other person or entity asserting an Encumbrance (i) has,

4

subject to the terms and conditions of this Order, consented to the Sale or is deemed to have

consented to the Sale, (ii) could be compelled in a legal or equitable proceeding to accept money

satisfaction of such Encumbrance, or (iii) otherwise falls within the provisions of section 363(f) of

the Bankruptcy Code.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:

1.     The Motion is granted in its entirety, subject to the terms and conditions

contained herein.

2.     The Purchase Agreement is hereby approved as being in the best interest of

Voyager's estate.   Voyager is hereby authorized and empowered to enter into, consummate,

implement and perform its obligations under the Purchase Agreement, and to execute, deliver, and

perform such other agreements, instruments, and documents and take any other actions that may

be reasonably necessary or desirable to implement and effectuate the terms of the Purchase

Agreement, this Order, and the Sale, including, without limitation, deeds, assignments, and other

instruments of transfer, and to take all further actions as may reasonably be requested by Market

Rebellion for the purpose of assigning, transferring, granting, conveying, and conferring the Joint

Venture Interests to Market Rebellion, as may be necessary or appropriate to the performance of

Voyager's obligations as contemplated by the Purchase Agreement, without any further corporate

action or orders of the Court.

3.     As of the closing date, Voyager shall be, and hereby is, authorized and empowered,

pursuant to sections 105 and 363(b) and (f) of the Bankruptcy Code, to sell and assign the Joint

Venture Interests to Market Rebellion.  The Sale shall constitute a legal, valid, and effective sale

of the Joint Venture Interests notwithstanding any requirement for approval or consent by any

person and vests Market Rebellion with all right, title, and interest of Voyager in and to the Joint

Venture Interests, subject to the obligation of Market Rebellion under the Purchase Agreement to cause Holdings to convey 100% of the membership interests in VYGR Digital Securities, LLC ("VDS") back to Voyager (or its successor in interest).

4.      All of Voyager's Joint Venture Interests to be acquired by Market Rebellion under the Purchase Agreement shall be, as of the closing date, transferred to and vested in Market Rebellion and this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of Voyager's Joint Venture Interests acquired by Market Rebellion under the Purchase Agreement, subject to the obligation of Market Rebellion under the Purchase Agreement to cause Holdings to convey 100% of the membership interests in VDS back to Voyager (or its successor in interest).

5.      Market Rebellion is hereby granted and is entitled to all of the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code.  Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of the Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any sale, transfer, or assignment under the Purchase Agreement or obligation or right granted pursuant to the terms of this Order, and notwithstanding any reversal, modification, or vacatur, any sale, transfer, or assignment shall be governed in all respects by the original provisions of this Order or the Purchase Agreement, as the case may be.

6.      Pursuant to sections 105(a), 363(b) and 363(f) of the Bankruptcy Code, and subject to the obligation of Market Rebellion under the Purchase Agreement to cause Holdings to convey 100% of the membership interests in VDS back to Voyager (or its successor in interest), Voyager is  authorized to transfer, and upon the closing of the Sale, shall transfer to Market Rebellion, all

of Voyager's right, title, and interest in and to, and possession of, the Joint Venture Interests, which shall be immediately vested in Market Rebellion, and, to the extent provided in the Purchase Agreement, such title to the Joint Venture Interests shall be transferred to Market Rebellion free and clear of all Encumbrances, in each case, whether in law or in equity, known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, direct or indirect, and whether arising by agreement, understanding, law, equity or otherwise, and whether occurring or arising before, on or after the Petition Date.

7.      Voyager, Holdings, and Management are further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental authorities any and all certificates, agreements, amendments, applications, or approvals necessary or appropriate to effectuate the Sale contemplated by the Purchase Agreement, including any proration or division of taxes owing on the Joint Venture in accordance with the terms of the Purchase Agreement, any related agreements, and this Order, including any such actions, filings, or recordings as may be required under the Purchase Agreement, appropriate provisions of the applicable laws of all applicable governmental authorities, or as any of the officers of Voyager, Management, Holdings, and Market Rebellion may determine are necessary or appropriate.  The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.

8.      Each and every governmental authority is authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions

7

contemplated by the Purchase Agreement and this Order.

9.      Except to the extent permitted by section 525 of the Bankruptcy Code, no governmental authority may revoke or suspend any permit or license relating to the operation of the Joint Venture sold, transferred, or conveyed to Market Rebellion on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale.

10.     Subject to the terms of the Purchase Agreement, the Purchase Agreement and any related agreements may be waived, modified, amended, or supplemented by agreement of the parties thereto without further action or order of the Court; *provided*, *however*, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the Purchase Agreement and any related agreements.

11.     The failure specifically to include any particular provisions of the Purchase Agreement or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, Voyager, and Market Rebellion that the Purchase Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties to the Purchase Agreement in accordance with this Order.

12.     This Order and the Purchase Agreement shall be binding upon and govern the acts of all persons and entities, including, without limitation, Voyager and Market Rebellion, their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtors' estates, all creditors of the Debtors (whether known or unknown), filing agents, filing officers, title agents, recording agencies, governmental authorities, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any

8

documents or instruments or who may be required to report or insure any title in or to the Joint Venture.

13.     The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to Market Rebellion to the extent necessary, without further order of the Court, to allow Market Rebellion to deliver any notice provided for in the Purchase Agreement and allow Market Rebellion to take any and all actions permitted under the Purchase Agreement in accordance with the terms and conditions thereof.

14.     Voyager will cooperate with Market Rebellion and Market Rebellion will cooperate with Voyager, in a commercially reasonable manner, in each case to ensure that the transaction contemplated by the Purchase Agreement is consummated, and Voyager will make such modifications or supplements to any bill of sale or other document executed in connection with the closing to facilitate such consummation as contemplated by the Purchase Agreement.

15.     This Order shall inure to the benefit of Market Rebellion, Voyager, the Debtors, and their respective successors and assigns, including but not limited to any chapter 11 or chapter 7 trustee that may be appointed in the Debtors' cases, and shall be binding upon any trustee, party, entity, or fiduciary that may be appointed in connection with these cases or any other or further cases involving the Debtors, whether under chapter 7 or chapter 11 of the Bankruptcy Code.

16.     The Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order and the Purchase Agreement in all respects and to decide any disputes concerning this Order and the Purchase Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Purchase Agreement and this Order including, but not limited to, the interpretation of terms, conditions, and provisions hereof and thereof, the status, nature, and extent

of the Joint Venture and all issues and disputes arising in connection with the relief authorized herein.

17.     Notwithstanding Bankruptcy Rules 6004 and 7062, this Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a) and shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.

18.     The provisions of this Order are non-severable and mutually dependent.

19.     To the extent any provisions of this Order conflict with the terms and conditions of the Purchase Agreement, this Order shall govern and control.

20.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Purchase Agreement**

Execution Version

## MEMBERSHIP INTEREST PURCHASE AGREEMENT

This Membership Interest Purchase Agreement (this "**Agreement**") is made November 17, 2022, by and between Voyager Digital Holdings, Inc. ("**Seller**"), Market Rebellion LLC ("**Buyer**"), VYGR Holdings LLC ("**Holdings**"), and VYGR Management LLC ("**Management**").

## RECITALS

A.      Seller and certain of its affiliates filed voluntary petitions for relief commencing cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on July 5, 2022 (the "**Petition Date**"), and are being jointly administered for procedural purposes as *In re Voyager Digital Holdings, Inc., et. al.*, case number 22-10943 (collectively, the "**Chapter 11 Case**");

B.      Seller owns (i) membership interests in Holdings represented by 400,000 common units (the "**Holdings Common Units**"), and (ii) membership interests in Management represented by 50 common units (such Common Units, the "**Management Common Units**").

C.      Holdings is the 100% owner of VYGR Digital Securities, LLC ("**VDS**"), a broker-dealer registered with the Securities and Exchange Commission under the 1934 Act, as amended, a member of the Financial Industry Regulatory Authority ("**FINRA**"), and an introducing broker registered with the Commodity Futures Trading Commission under the Commodity Exchange Act.

D.      Buyer desires to purchase from Seller, and Seller desires to sell to Buyer, all of the Holdings Common Units and all of the Management Common Units (collectively, the "**Securities**"), in a sale authorized by the Bankruptcy Court pursuant to, inter alia, Sections 105 and 363 of the Bankruptcy Code, all on the terms and subject to the conditions set forth in this Agreement and subject to entry by the Bankruptcy Court of an order, in form and substance reasonably acceptable to each of Buyer and Seller (the "**Sale Order**"), approving this Agreement and the sale and transfer of the Securities from Seller to Buyer free and clear of any charge, claim (as defined in Section 101(5) of the Bankruptcy Code), mortgage, lien, encumbrance, option, pledge, hypothecation, security interest or similar interest, preemptive right, right of first refusal, conditional sale or title retention agreements or other similar restriction (collectively, "**Encumbrances**"), other than as set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual promises and of the representations, warranties and covenants hereinafter made, the parties hereto agree as follows:

## AGREEMENT

1.      <u>Conditions to Closing.</u>

A.      The Closing (defined below) of the purchase of the Securities contemplated by this Agreement is conditioned upon the following (the "**Regulatory Condition**"): Thirty (30) days shall have passed from the date VDS provides notice to FINRA of the conveyance of membership interests in VDS to Seller (or its successor in interest), and

FINRA shall not have imposed any interim restriction requiring FINRA approval for the Closing; *provided* that in the event that FINRA does impose such interim restriction, the Closing shall occur upon the earlier of such time as (x) the interim restriction has been lifted or (y) FINRA approval has been obtained.

        B.     The Sale Order shall have been entered by the Bankruptcy Court and shall not have been stayed, amended or modified.

        C.     All representations and warranties of Seller and the Buyer set forth below in Sections 4 and 5, respectively, shall be true and correct as of the Closing, and consummation of the purchase contemplated hereby shall constitute a reaffirmation by Seller and the Buyer that all such respective representations and warranties contained in this Agreement are true and correct in all material respects as of the Closing.

    2.    <u>Purchase and Sale of Units</u>.  On the terms and subject to the conditions herein set forth, (i) Buyer hereby agrees to purchase from Seller, and Seller hereby agrees to sell to Buyer, the Securities, and (ii) Buyer will cause Holdings to convey 100% of the membership interests in VDS to Seller (or its successor in interest).

    3.    <u>Purchase Price</u>.  The purchase price for the Securities shall be as follows (the "**Purchase Price**"):

        A.     The assumption by Buyer of all payroll obligations related to the Joint Venture and all other operating expenses incurred by Holdings and Management (or any of them) from and after October 10, 2022 (the "**Funding Obligations**");

        B.     The release of Seller from all Funding Obligations;

        C.     The release of Seller from funding any other amounts required to be funded pursuant to the Holdings Side Letter and the Management Side Letter (each as defined below); and

        D.     The conveyance following the Closing by Holdings of the membership interests in VDS back to Seller (or its successor in interest), and the waiver by Buyer, Management and Holdings of all rights and interest to any regulatory cash held by VDS and any claims or causes of action held by VDS against any person or entity.

    4.    <u>Representations and Warranties of Seller</u>.  Seller hereby represents and warrants to Buyer as follows:

        A.     <u>Ownership</u>.  Seller is the absolute owner of the Securities and has good and marketable title thereto, free and clear of any Encumbrances, other than (i) with respect to Holdings, (a) the Second Amended and Restated Limited Liability Company Agreement of Holdings dated January 12, 2022 (the "**Holdings LLC Agreement**"), and (b) that certain Side Letter dated July 31, 2021 by and between Seller, Buyer and Holdings (the "**Holdings Side Letter**"), and (ii) with respect to Management, (a) the Amended and Restated Limited Liability Company Agreement of Management dated July 31, 2021 (the "**Management**

**LLC Agreement**"), and (b) that certain Side Letter dated July 31, 2021 by and between Seller, Buyer and Management (the "**Management Side Letter**").

      B.    <u>Authority</u>.  Subject to entry of the Sale Order by the Bankruptcy Court, Seller has full right, power and authority to sell the Securities as provided herein.

      C.    <u>Binding Agreement</u>.  Subject to entry of the Sale Order by the Bankruptcy Court, this Agreement constitutes the valid and legally binding obligation of Seller, enforceable in accordance with its terms and conditions.

      D.    <u>No Other Rights</u>.  Other than the Securities, Seller does not own or have any interest or right in any other equity securities of either Holdings or Management.

5.    <u>Representations and Warranties of Buyer</u>.  Buyer represents and warrants to Seller as follows:

      A.    <u>Authority</u>.  Buyer has full right, power and authority to purchase the Securities as provided herein.

      B.    <u>Binding Agreement</u>.  This Agreement constitutes the valid and legally binding obligation of Buyer, enforceable in accordance with its terms and conditions.

6.    <u>Closing Deliveries of Buyer</u>.  At the Closing (as defined below), in addition to execution of this Agreement, the Buyer shall deliver to Seller the following:

      A.    Assignment Separate from Certificate in the form annexed as <u>Exhibit C</u> hereto transferring the membership interests held by Holdings in VDS to Seller; and

      B.    Any other documents required by this Agreement or reasonably requested by Seller in connection with effectuating the transactions contemplated hereby, including the conveyance by Holdings of the membership interests of VDS.

7.    <u>Closing Deliveries of Seller</u>.  At the Closing, in addition to execution of this Agreement, Seller shall deliver, or caused to be delivered, to Buyer the following:

      A.    Assignments Separate from Certificate in the forms annexed as <u>Exhibit A</u> and <u>Exhibit B</u> hereto, transferring the Securities to Buyer; and

      B.    Any other documents required by this Agreement or reasonably requested by Buyer in connection with effectuating the transactions contemplated hereby.

8.    <u>Closing</u>.  The purchase, sale and conveyance of the Securities contemplated by this Agreement shall take place at a closing (the "**Closing**") to be held by telephone conference and electronic exchange of documents at 10:00 a.m. Eastern Time two (2) business days following the entry of the Sale Order by the Bankruptcy Court and the satisfaction of the Conditions to Closing set forth in Section 1 above.

9.      Covenants.

A.      Seller shall cause VDS to provide the notice to FINRA described in Section 1(A) of this Agreement no later than three (3) business days following the execution of this Agreement.  In addition to and without limiting the foregoing, each of Seller and Buyer agrees to file, as applicable, all other applications, filings, requests and/or notices which may be required to be filed by it in connection with the transactions contemplated hereby with FINRA within ten (10) business days of the date hereof.

B.      Effective as of the Closing, Seller shall cease to be a Member (as defined in each of the Holdings LLC Agreement and the Management LLC Agreement), shall cease to be a party to each of the Holdings LLC Agreement and the Management LLC Agreement, and shall cease to have any liabilities or obligations whatsoever under either of the Holdings LLC Agreement and the Management LLC Agreement; *provided* that, notwithstanding anything to the contrary contained in this Agreement, Seller acknowledges and agrees that Seller shall continue to be bound by the terms of Section 15(f) (Confidentiality and Non-Disclosure) of each of the Holdings LLC Agreement and the Management LLC Agreement.

C.      Effective as of the Closing, Holdings shall cease to be a Member (as defined in that certain Third Amended and Restated Limited Liability Company Agreement of VYGR Digital Securities, LLC (the "**VDS LLC Agreement**"), shall cease to be a party to the VDS LLC Agreement, and shall cease to have any liabilities or obligations whatsoever under the VDS LLC Agreement.

D.      Immediately upon Closing, Buyer shall solely be responsible for paying any and all legal fees or other expenses associated with transferring the Securities to Buyer; *provided* that Buyer shall not be responsible for Seller's legal fees or other expenses associated with preparing and seeking approval of the motion requesting the approval of this Agreement and the entry of the Sale Order (the "**Sale Motion**").

E.      Effective as of the Closing, each of (i) the Account Referral Agreement dated July 31, 2021 between Holdings and VDS, and (ii) the Credit Agreement dated February 8, 2022 between Seller and Holdings (the "Holdings Credit Agreement"), shall automatically terminate.

F.      Effective as of the Closing, each of Buyer, Management and Holdings irrevocably waives and releases all rights and interest to any regulatory cash held by VDS and any claims or causes of action held by VDS against any person or entity.

G.      Prior to Closing, each of Seller and Buyer agrees to use its commercially reasonable efforts to take, or cause to be taken, all action, and to do, or cause to be done as promptly as practicable, all things necessary, proper and advisable under applicable laws or required by any governmental agency or self-regulatory organization ("**SRO**") to consummate and make effective as promptly as practicable the Closing and the transactions contemplated hereby.  Subject to appropriate confidentiality protections, each party hereto shall furnish to the other party such necessary information and reasonable assistance as such other party may reasonably request in connection with the foregoing.  Each of Seller

4

and Buyer shall promptly inform the other of any material oral communication with, and provide copies of material written communications with, any governmental agency or SRO regarding any such filings or any such transaction.

10.    Releases.

A.    For good and valuable consideration, the receipt of which is hereby acknowledged, Seller (individually and on behalf of its predecessors, successors, principals, officers, directors, managers, partners, owners, assigns, heirs, estates, executors, administrators, employees, agents, representatives and attorneys) (collectively, "**Seller Releasors**") does hereby release and discharge Holdings, Management and any of each of their present and former parents, subsidiaries, affiliates, principals, officers, directors, managers, members, shareholders, equity partners, affiliates, partners, owners, directors, trustees, employees (including former employees), and agents, as well as any of their representatives, attorneys, insurers, reinsurers, and/or any of their respective predecessors, successors and assigns (the "**Company Released Parties**") from, and covenants not to sue or otherwise commence any action against any Company Released Party to recover, any and all sums of money, accounts, actions, suits, causes of actions, claims (including claims for contribution and indemnification), demands, charges, complaints, costs, debts, dues, judgments, obligations, contracts, expenses, damages, losses, liabilities, injuries or entitlements (in each case, of whatever kind and character, suspected or unsuspected, direct or indirect, regardless of source or nature, whether known or unknown or contingent or absolute) which heretofore have been or hereafter may be suffered or sustained, that each Seller Releasor now has, owns, holds or claims to have, own or hold, or may have had, owned or held, or may claim to have, own or hold against any Company Released Party up to and including the date hereof with respect to, relating to, or arising in any way out of Seller, its subsidiaries, its business, assets, liabilities, and operations, any interest (debt, equity, or otherwise) in Seller or any of its subsidiaries, any action or omission of any Company Released Party with respect to any of the foregoing, Seller's ownership of the Securities, actions or omissions taken by Seller as a manager or member of either Holdings or Management, including any claims for amounts previously funded by Seller to either Holdings or Management (whether as capital contributions, loans (including pursuant to the Credit Agreement) or otherwise) pursuant to the Holdings LLC Agreement, Management LLC Agreement, Holdings Side Letter, Management Side Letter or otherwise.

B.    For good and valuable consideration, the receipt of which is hereby acknowledged, each of Holdings and Management (each individually and on behalf of its predecessors, successors, principals, officers, directors, managers, members, partners, owners, assigns, heirs, estates, executors, administrators, employees, agents, representatives and attorneys) (collectively, "**Company Releasors**") does hereby release and discharge Seller and any of its present and former parents, subsidiaries, affiliates, principals, officers, directors (including any current or former officers, managers, or directors who served at Seller's request, including any such person that served as a "manager" of Holdings or Management), managers, shareholders, equity partners, affiliates, partners, owners, directors, trustees, employees (including former employees), and agents, as well as any of its representatives, attorneys, insurers, reinsurers, and/or any

of their respective predecessors, successors and assigns (the "**Seller Released Parties**") from, and covenants not to sue or otherwise commence any action against any Seller Released Party to recover, any and all sums of money, accounts, actions, suits, causes of actions, claims (including claims for contribution and indemnification), demands, charges, complaints, costs, debts, dues, judgments, obligations, contracts, expenses, damages, losses, liabilities, injuries or entitlements (in each case, of whatever kind and character, suspected or unsuspected, direct or indirect, regardless of source or nature, whether known or unknown or contingent or absolute) which heretofore have been or hereafter may be suffered or sustained, that each Company Releasor now has, owns, holds or claims to have, own or hold, or may have had, owned or held, or may claim to have, own or hold against any Seller Released Party up to and including the date hereof with respect to, relating to, or arising in any way out of Holdings, Management, its subsidiaries, their business, assets, liabilities, and operations, any interest (debt, equity, or otherwise) in Holdings or Management or any of its Subsidiaries, any action or omission of any Seller Released Party with respect to any of the foregoing, Seller's ownership of the Securities, actions or omissions taken by Seller as a manager or member of either Holdings or Management (including any claims relating to Seller's failure to (i) fund its proportionate amount of funds required for operations on or after October 10, 2022, and (ii) fund any amounts required to be funded pursuant to the Holdings Side Letter and Management Side Letter), or the Holdings LLC Agreement, Management LLC Agreement, Holdings Side Letter, Management Side Letter.

11.    Side Letters.  Upon consummation of the transactions contemplated under this Agreement, the Holdings Side Letter and the Management Side Letter shall automatically terminate (and no obligations thereunder shall survive such termination, including any such obligations that purport to survive such termination, which such provisions the parties hereto agree shall also terminate) with no liability on the part of any party thereto.

12.    Termination.

    A.    This Agreement may be terminated at any time prior to Closing:

        (i)    by mutual written consent of Buyer and Seller;

        (ii)    by Buyer, if Seller withdraws or seeks authority to withdraw the Sale Motion, or seeks (or announces its intention to seek) approval of a sale or transfer of the Securities to any person other than Buyer;

        (iii)    by Buyer, if the Sale Order has not been entered by the Bankruptcy Court by no later than December 9, 2022;

        (iv)    by Buyer, if the Bankruptcy Court shall have entered an order converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code;

(v)     by Buyer, if the Regulatory Condition has not been satisfied by no later than forty-five (45) days after the entry of the Sale Order by the Bankruptcy Court.

B.      Upon termination of this Agreement, all Funding Obligations of Buyer shall immediately cease.

C.      In the event of termination of this Agreement as provided in this Section 12, this Agreement shall forthwith become void and there shall be no liability on the part of either Buyer or Seller, except that Buyer may request the allowance of a claim equal to the amount of all Funding Obligations paid by Buyer prior to termination as an administrative expense under Section 503(b) of Bankruptcy Code.

13.     Notices.  All notices and other communications hereunder shall be in writing and sent via email transmission to the email address(es) given below:

If to Seller, to:

Voyager Digital, LLC
33 Irving Place, 3rd Floor
New York, NY 10003
Attention:      Stephen Ehrlich
                David Brosgol
Email:          sehrlich@investvoyager.com
                dbrosgol@investvoyager.com

with a copy to (which shall not constitute notice):

Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
Attention:      Joshua A. Sussberg, P.C.
                Christine A. Okike, P.C.
                Christopher Marcus
                Allyson B. Smith
Email:          joshua.sussberg@kirkland.com
                christine.okike@kirkland.com
                cmarcus@kirkland.com
                allyson.smith@kirkland.com

If to Buyer, to:

Market Rebellion, LLC
223 W Jackson Boulevard
Suite 350
Chicago, Illinois 60606
Attention:      Dirk Mueller-Ingrand

7

Email:          dirk@marketrebellion.com

with a copy to (which shall not constitute notice):

Ferguson Corporate Law Ltd.
PO Box 1012
Libertyville, Illinois 60048
Attention:    Thomas Ferguson
Email:          thom@fergusoncorplaw.com

14.    <u>Nonsurvival of Representations and Warranties</u>.  The respective representations and warranties of Seller and Buyer contained in this Agreement, and the covenants of Seller and Buyer contained in this Agreement to the extent such covenants require performance prior to the Closing, shall terminate at, and not survive, Closing; <u>provided</u> that this Section 14 shall not limit any covenant or agreement of Buyer or Seller to the extent that its terms require performance after Closing.  Buyer acknowledges and agrees that it is not relying on any other information, statements, representation, or warranty in connection with the transactions contemplated hereby other than as set forth in Section 4.

15.    <u>Further Assurances; Cooperation</u>.  Seller and Buyer will execute and deliver such further documents as the other party may reasonably request in order to effect the transactions contemplated by this Agreement.

16.    <u>Entire Agreement</u>. This Agreement, together with the other documents expressly referred to herein, constitutes the entire agreement among the parties with respect to the subject matter thereof, and supersedes all prior agreements, correspondence, conversations and negotiations with respect to the subject matter hereof.

17.    <u>Severability</u>.  If any provision of this Agreement shall be declared by any court of competent jurisdiction illegal, void or unenforceable, the other provisions shall not be affected but shall remain in full force and effect.

18.    <u>Modification</u>.  This Agreement may not be modified or changed except by an instrument in writing duly executed by the parties hereto, and no waiver of compliance of any provision or condition hereof and no consent provided for herein shall be effective unless evidenced by an instrument in writing duly executed by the party hereto seeking to be charged with such waiver or consent.  No inaction or waiver by any party at any time of any breach or any provision of this Agreement shall be deemed a waiver of a breach or of any other provision herein or a consent to any subsequent breach of the same or any other provision.

19.    <u>Successors and Assigns</u>.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, legal representatives, successors in interest and assigns including, without limitation any trustee or examiner appointed under Section 1104 of the Bankruptcy Code or any trustee appointed under Section 701 of the Bankruptcy Code. Notwithstanding the foregoing, the parties hereto each hereby acknowledge and agree that neither party may assign its rights or obligations hereunder, except as otherwise expressly permitted herein.

20.    <u>Section Headings</u>.  The section headings contained in this Agreement are for references purposes only and shall not affect the meaning or interpretation of this Agreement.

21.    <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and all of which when taken together shall be deemed to be one and the same instrument.  Counterparts may be delivered via facsimile, electronic mail (including pdf or any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

22.    <u>Governing Law</u>.  This Agreement shall be governed by and construed according to the laws of the State of Delaware, and Seller and Buyer hereby agree and consent to the exclusive jurisdiction of the state and federal courts in the State of Delaware and agree not to commence any suit, action, or other proceeding with respect to this Agreement in any other courts.  SELLER AND BUYER EACH HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO THE FOREGOING.

23.    <u>Tax Matters</u>.

(a) The parties hereto intend for U.S. federal and applicable state and local income tax purposes that the purchase and sale of the Holdings Common Units and the purchase and sale of the Management Common Units each be governed by Revenue Ruling 99-6, Situation 1, and shall act consistently therewith for all tax purposes unless otherwise required by applicable law.

(b) Seller and Buyer shall reasonably cooperate as and to the extent reasonably requested by either of them with respect to providing tax information attributable to the transactions contemplated by this Agreement and/or preparing tax returns for tax periods (or portions thereof) ending on or before the date of the Closing (any such period, a "**Pre-Closing Tax Period**").

(c) Notwithstanding anything herein to the contrary, after the Closing, none of Buyer, Holdings, Management, or any of their Affiliates shall (i) make any election under Section 6226(a) of the Internal Revenue Code of 1986, as amended (the "IRC") or any comparable election for state or local tax purposes with respect to Holdings or Management for any Pre-Closing Tax Period, (ii) file (except as set forth in Section 22(d)), re-file, supplement, or amend a tax return of Holdings or Management or their subsidiaries for a Pre-Closing Tax Period; (b) extend or waive the applicable statute of limitations with respect to a tax of Holdings or Management or their subsidiaries for a Pre-Closing Tax Period; (iii) file any ruling or request with any taxing authority that relates to taxes or tax returns of Holdings or Management or their subsidiaries for a Pre-Closing Tax Period; (iv) make or initiate any voluntary contact with any taxing authority (including any voluntary disclosure agreement or similar process) with respect to the filing of any tax returns or payment of any taxes of Holdings or Management or their subsidiaries for a Pre-Closing Tax Period; (v) make or change any tax election for Holdings or Management or their subsidiaries that relates to, or is retroactive to, any Pre-Closing Tax Period, or (vi) take any other action with respect to a Pre-Closing Tax Period to the extent that such action could result in an additional tax liability for, or adversely affect the tax position of, Seller.

9

(d) After the date of the Closing, Buyer shall timely prepare and file all tax returns of Holdings, Management, and their subsidiaries for Pre-Closing Tax Periods the due date of which, taking into account extensions of time to file, is after the date of the Closing.  All such tax returns shall be prepared consistently with past practice to the extent supported at a "more likely than not" (or higher) level of confidence.  Buyer shall submit each such tax return that is a flow-through income tax return to Seller at least 20 business days prior to the due date for filing for Seller's review, comment, and consent (not to be unreasonably withheld, conditioned, or delayed).

(e) Buyer shall reasonably promptly notify Seller of any tax audit, investigation, or other proceeding with respect to any of Holdings, Management, or their subsidiaries for any Pre-Closing Tax Period, provide Seller with copies of all material communications, pleadings, or other notices with respect thereto, and not settle, compromise, or otherwise resolve any such proceeding without the prior written consent of Seller (not to be unreasonably withheld, conditioned, or delayed) if any such action would reasonably be expected to negatively impact Seller.

[Signature Page Follows]

10

Execution Version

IN WITNESS WHEREOF, the parties hereto have executed this Membership Interest Purchase Agreement as of the date first written above.

**Market Rebellion, LLC**

By_____

Its_____ *Managing Partner*

**Voyager Digital Holdings, Inc.**

By_____

Its_____

**VYGR Holdings LLC**

By_____

Its_____ *Manager*

By_____

Its_____

**VYGR Management LLC**

By_____

Its_____ *Manager*

By_____

Its_____

**Execution Version**

IN WITNESS WHEREOF, the parties hereto have executed this Membership Interest Purchase Agreement as of the date first written above.

**Market Rebellion, LLC**

By_____

Its_____


**Voyager Digital Holdings, Inc.**

By _____

Its___Chief Executive Officer_____


**VYGR Holdings LLC**

By_____

Its Co-President and Co-Chief Executive Officer


By_____

Its_____


**VYGR Management LLC**

By_____

Its Co-President and Co-Chief Executive Officer


By_____

Its_____

## Exhibit A

ASSIGNMENT SEPARATE FROM CERTIFICATE


FOR VALUE RECEIVED, Voyager Digital Holdings, Inc., hereby assigns and transfers to Market Rebellion, LLC, all of its membership interests (represented by 400,000 Common Units) in VYGR Holdings LLC, a Delaware limited liability company (the "**Company**"), such membership interest being uncertificated, standing in its name, on the books of the Company, and does hereby irrevocably constitute and appoint _____ its attorney, with full power of substitution, to transfer said membership interests on the books of the Company.

Dated:  [•], 2022

**Voyager Digital Holdings, Inc.**

By_____
Its_____

## Exhibit B

ASSIGNMENT SEPARATE FROM CERTIFICATE


FOR VALUE RECEIVED, Voyager Digital Holdings, Inc., hereby assigns and transfers to Market Rebellion, LLC, all of its membership interests (represented by 50 Common Units) in VYGR Management LLC, a Delaware limited liability company (the "**Company**"), such membership interest being uncertificated, standing in its name, on the books of the Company, and does hereby irrevocably constitute and appoint _____ its attorney, with full power of substitution, to transfer said membership interests on the books of the Company.

Dated:  [•], 2022

**Voyager Digital Holdings, Inc.**

By_____
Its_____

**Exhibit C**

ASSIGNMENT SEPARATE FROM CERTIFICATE

FOR VALUE RECEIVED, VYGR Holdings LLC, hereby assigns and transfers to Voyager Digital Holdings, Inc., all of the membership interests in VYGR Digital Securities LLC, a Delaware limited liability company (the "**Company**"), such membership interest being uncertificated, standing in its name, on the books of the Company, and does hereby irrevocably constitute and appoint _____ its attorney, with full power of substitution, to transfer said membership interests on the books of the Company.

Dated:  [•], 2022

**VYGR Holdings LLC**

By_____
Its_____

By_____
Its_____