Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | Case No. 22-10943 (MEW) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF STEPHEN
EHRLICH IN SUPPORT OF THE
DEBTORS' MOTION FOR ENTRY OF AN
ORDER (I) APPROVING THE MEMBERSHIP
INTEREST PURCHASE AGREEMENT, BY AND BETWEEN
VOYAGER DIGITAL HOLDINGS, INC., MARKET REBELLION, LLC,
VYGR HOLDINGS, LLC, AND VYGR MANAGEMENT LLC AND RELATED
DOCUMENTS AND AGREEMENTS AND (II) GRANTING RELATED RELIEF**

Pursuant to 28 U.S.C. § 1746, I, Stephen Ehrlich, Chief Executive Officer of Voyager Digital Holdings, Inc., hereby declare under penalty of perjury:

1. I submit this declaration (the "Declaration") on behalf of the *Debtors' Motion for Entry of an Order (I) Approving the Membership Interest Purchase Agreement, By and Between Voyager Digital Holdings, Inc., Market Rebellion, LLC, VYGR Holdings, LLC, and VYGR*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

*Management LLC and Related Documents and Agreements and (II) Granting Related Relief* (the "Motion"),[2] filed simultaneously herewith.

2.     Unless otherwise indicated, all facts set forth in this Declaration are based upon (a) my personal knowledge of the facts described herein, (b) information gleaned from my review of relevant documents, or (c) information I received from the Debtors' advisors. If I were called upon to testify, I could and would competently testify to the facts set forth herein. I am authorized to submit this Declaration on behalf of the Debtors.

## Background

3.     VYGR Digital Securities, LLC, a California limited liability company, is a subsidiary of Holdings, and was formed as a broker-dealer with the intent of allowing individual investors on the Debtors' platform to trade stock alongside cryptocurrency. Market Rebellion, a Delaware limited liability company, is a trading application development company that develops algorithms for trading education, content, and other tools to assist independent investors. In July 2021, Voyager entered into the Joint Venture with Market Rebellion under which each entity held 50 percent ownership in Holdings and 50 percent ownership in Management, which served as the management company for Holdings. The Joint Venture was an effort to increase the trading and investing products provided on the Debtors' platform by allowing individual investors to trade equities, options, and futures. In the Joint Venture, Market Rebellion was tasked with hiring developers to develop the equity trading software that would complement the Debtors' cryptocurrency trading. Voyager, on the other hand, was tasked with carrying out any trades that would have been placed through the Debtors' platform. As of the filing of this Motion, the Joint Venture is still in the development phase.

---

[2]   All capitalized terms used herein have the meaning given to them in the Motion.

4.      As part of these chapter 11 cases, the Debtors undertook to market and sell substantially all of their assets.  During the extensive pre- and postpetition marketing process for the Debtors' assets, including a highly competitive two-week auction, no bidder expressed interest in acquiring Voyager's interest in the Joint Venture as a going concern in a standalone sale or in connection with their overall bid for the Debtors' other assets.  As such, the Debtors began to explore alternatives to minimize Voyager's liabilities attributable to the Joint Venture. In September, 2022, the Debtors initiated discussions with Market Rebellion regarding the sale of Voyager's equity interests in the Joint Venture in exchange for the termination of Voyager's expense obligations.

5.      For the reasons set forth herein, I believe that entering into the Purchase Agreement and selling all of Voyager's equity interests in the Joint Venture is a sound exercise of the Debtors' business judgment and would be in the best interests of the Debtors, their estates, and other parties in interest.

**I.      The Proposed Sale Offers the Debtors the Best Possible Value for the Joint Venture.**

      **A.      The Negotiated Purchase Agreement Is Fair and Reasonable Based on the Market Value of the Joint Venture and Current Market Conditions.**

6.      As set forth in the Motion, the Purchase Agreement contemplates that Voyager will convey all of its equity interests in the Joint Venture to Market Rebellion in exchange for (i) the assumption by Market Rebellion of all financial obligations directly or indirectly related to the Joint Venture (including all payroll and other operating expenses) incurred by Holdings and Management on and after October 10, 2022 (the "Funding Obligations"), (ii) the release of Voyager from all Funding Obligations, (iii) the release of Voyager from funding any other amounts required to be funded pursuant to the two side letters, one entered into by Voyager, Market Rebellion, and Holdings, and one entered into by Voyager, Market Rebellion, and Management—

3

each enumerating the obligations and rights of Voyager and Market Rebellion in connection with fundraising and the granting of loans, among other things, and (iv) the conveyance by Holdings following the closing of the Sale of 100% of membership interests of VYGR Digital Securities, LLC ("VDS") to Voyager (or its successor in interest), and the waiver by Market Rebellion, Management, and Holdings of all rights and interest to any regulatory cash held by VDS and any claims or causes of action held by VDS against any person or entity (collectively, the "Purchase Price"). Given the volatility in the cryptocurrency market, the costs of continuing to operate the Joint Venture, and the lack of any alternative transaction, I believe the Purchase Agreement is fair, reasonable, and negotiated in good faith and at arms' length.

**B.    The Purchase Agreement Will Allow Voyager Access to Significant Savings.**

7.    Effectuating the Sale will also allow Voyager to capture significant costs savings. Absent the Sale, the Debtors estimate that Voyager would continue to incur up to $160,000 per month in negative cash flow in connection with the Joint Venture. Since the Debtors would otherwise be required to wind down Voyager's interests in the Joint Venture at their own expense, and in the absence of any alternate interest in Voyager's stake in the Joint Venture, the Sale provides the Debtors with an opportunity to avoid expending additional near-term liquidity that would otherwise be distributable for the benefit of creditors. Specifically, effectuating the Sale saves the Debtors approximately $20,000 in Funding Obligations and legal expenses that the Debtors otherwise would have to expend to wind down Voyager's equity interests in the Joint Venture—funds that may instead be distributed for the benefit of the Debtors' creditors.

**II.    Market Rebellion Is Best Positioned to Offer Maximum Value to the Joint Venture.**

8.    Market Rebellion and its management are, in my estimation, the best available counterparty for a transaction by which the Debtors can dispose of Voyager's interests in the Joint Venture. Given their intimate familiarity with the Joint Venture as its current co-owner, Market

Rebellion is best positioned to extract maximum value from the Joint Venture and therefore better positioned than any other party to offer the best purchase price for Voyager's equity stake in the Joint Venture.

9. Accordingly, I believe that approval of the Motion, permitting Voyager to enter into the Purchase Agreement and related documents and agreements will allow Voyager to capitalize on a limited opportunity that will reduce its liabilities in connection with the Joint Venture and maximize the value of the Debtors to the benefit of the Debtors' estates.

[*Remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: November 17, 2022  /s/ *Stephen Ehrlich*
New York, New York   Name: Stephen Ehrlich
  Title: Co-Founder and Chief Executive Officer
   Voyager Holdings, Inc.