Hearing Date: December 14, at 10:00 a.m. (prevailing Eastern Time)
Objection Deadline: December 7, at 4:00 p.m. (prevailing Eastern Time)

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | Case No. 22-10943 (MEW) |
| Debtors. | (Jointly Administered) |

**NOTICE OF HEARING OF DEBTORS'**
**MOTION FOR ENTRY OF AN ORDER (I) COMPELLING**
**THE RELEASE OF THE RESERVE HELD BY METROPOLITAN COMMERCIAL**
**BANK ON DEBTORS' BANK ACCOUNT AND (II) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Motion for Entry of an Order (I) Compelling the Release of the Reserve Held by Metropolitan Commercial Bank on Debtors' Bank Account and (II) Granting Related Relief* (the "Motion,") will be held on **December 14, 2022, at 10:00 a.m., prevailing Eastern Time** (the "Hearing"). In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted telephonically. Any parties wishing to participate must do so by making arrangements through CourtSolutions by visiting https://www.court-solutions.com.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Motion shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served so as to be actually received by **December 7, 2022, at 4:00 p.m., prevailing Eastern Time**, by (i) the entities on the Master Service List available on the case website of the above-captioned debtors and debtors in possession (the "Debtors") at https://cases.stretto.com/Voyager and (ii) any person or entity with a particularized interest in the subject matter of the Motion.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing. Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/Voyager. You may also obtain copies of the Motion and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

[*Remainder of page intentionally left blank*]

| | |
|---|---|
| Dated: December 2, 2022<br>New York, New York | */s/ Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>Christopher Marcus, P.C.<br>Christine A. Okike, P.C.<br>Allyson B. Smith (admitted *pro hac vice*)<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:   (212) 446-4800<br>Facsimile:    (212) 446-4900<br>Email:          jsussberg@kirkland.com<br>                     cmarcus@kirkland.com<br>                     christine.okike@kirkland.com<br>                     allyson.smith@kirkland.com<br><br>*Counsel to the Debtors and Debtors in Possession* |

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | Case No. 22-10943 (MEW) |
| Debtors. | (Jointly Administered) |

**DEBTORS' MOTION**
**FOR ENTRY OF AN ORDER (I) COMPELLING**
**THE RELEASE OF THE RESERVE HELD BY METROPOLITAN COMMERCIAL**
**BANK ON DEBTORS' BANK ACCOUNT AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (this "Motion"):

**Relief Requested**

1. The Debtors seek entry of an order (the "Order"), substantially in the form attached hereto: (a) compelling the release of the full amount of the $24 million reserve (the "Reserve") held by Metropolitan Commercial Bank ("MC Bank") in the Debtors' MC Bank Master Operating Account[2] and (b) granting related relief.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2] As defined in the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related*

**Jurisdiction and Venue**

2. The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012. The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a), 363(b), 541(b)(1), 1107(a), and 1108 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1(a) of the Bankruptcy Local Rules for the Southern District of New York (the "Local Rules").

**Background**

5. On July 5, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Stephen Ehrlich, Chief Executive Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 15] (the "First Day Declaration"), incorporated by reference herein.

---

*Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief* [Docket No. 10] (the "Cash Management Motion"). Defined terms used but not otherwise defined shall have the meanings ascribed to them in the Cash Management Motion.

6. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 18]. On July 19, 2022, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 102] (the "Committee"). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

### The Debtors' Banking Relationship with MC Bank

7. As more fully detailed in the Cash Management Motion, the Debtors maintain the MC Bank Master Operating Account as a centralized master operating account which funds the Debtors' disbursements, automated-clearing-house ("ACH") transfers, and wires for the Debtors' operating, capital, and general administrative expenses. The Debtors also maintain two "for the benefit of" accounts held at, and maintained by, MC Bank (the "MC FBO Accounts") whereby customers can deposit cash to fund cryptocurrency purchases on the Debtors' platform. Conversely, customers may also request to withdraw cash attributable to the sale of cryptocurrency on the Debtors' platform from the applicable MC FBO Account.

8. As described in the *Supplement to Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to (a) Honor Customer Withdrawals from the MC FBO Accounts, (b) Liquidate Cryptocurrency From Customer Accounts With a Negative Balance, (c) Sweep Cash Held in Third-Party Exchanges, (d) Conduct Ordinary Course Reconciliation of Customer Accounts, and (e) Continue to Stake Cryptocurrency; and (II) Granting Related Relief* [Docket No. 173], customers sometimes seek to reverse their cash deposits after trades have been executed, in which case the customer's bank removes the funds from the applicable MC FBO Account and credits the customer's personal bank account for the original debited amount

6

(each a "Chargeback"). These Chargebacks result in a deficit in the applicable MC FBO Account. The Debtors are responsible for funding the deficit and ensuring that funds sufficient to satisfy Chargebacks and all other customer withdrawals are available in the MC FBO Accounts.

### The Reserve

9. The Reserve is a $24 million earmarked portion of the Debtors' MC Bank Master Operating Account and operates as a hold on the Debtors' cash that the Debtors would otherwise be permitted to access and utilize. The Reserve was put in place to ensure sufficient funds were in the MC FBO Accounts when customers sought to withdraw cash or initiate Chargebacks. Under the terms of the FBO Account Payment Services Agreement, dated June 3, 2019, between Voyager Digital Holdings, Inc. and MC Bank (the "FBO Agreement")[3], the amount of the Reserve was set at three times the daily ACH debit limit. The ACH debit limit as set forth in the ACH Origination Agreement, dated May 9, 2018, between MC Bank and Voyager Digital, LLC (the "ACH Agreement"[4] and, together with the FBO Agreement, the "MC Bank Agreements"), was $100,000 per day. However, per a letter dated March 15, 2021 attached hereto as Exhibit 1, the Debtors and MC Bank agreed to modify the amount of the Reserve to two times the daily ACH debit limit for debit transactions that can be funded to customers' accounts on the Debtors' platform, which at the time was approximately $12 million per day. However, there has been no ACH inbound

---

[3] The FBO Agreement is attached as Exhibit A to the *Notice of Filing of Certain Banking Agreements Related to the Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to (a) Honor Customer Withdrawals from the MC FBO Accounts, (b) Liquidate Cryptocurrency From Customer Accounts With a Negative Balance, (c) Sweep Cash Held in Third-Party Exchanges, (d) Conduct Ordinary Course Reconciliation of Customer Accounts, and (e) Continue to Stake Cryptocurrency; and (II) Granting Related Relief* [Docket No. 145] (the "Notice of MC Bank Agreements").

[4] The ACH Agreement is attached as Exhibit B to the Notice of MC Bank Agreements.

activity since July 6, 2022[5] and therefore no ACH debit activity being funded to customers' accounts.

10. Since entry of the *Order (I) Authorizing the Debtors to (A) Honor Withdrawals from the MC FBO Accounts, (B) Liquidate Cryptocurrency from Customer Accounts with a Negative USD Balance, (C) Sweep Cash Held in Third-Party Exchanges, (D) Conduct Ordinary Course Reconciliation of Customer Accounts, and (E) Continue Staking Cryptocurrency, and (II) Granting Related Relief* [Docket No. 247] (the "FBO Order"), approximately $257 million or 93% of customer funds in the MC FBO Accounts have been withdrawn. As of November 29, 2022, the balance in the MC FBO Accounts is approximately $19,476,962.84, down from approximately $276,339,204.04 on the Petition Date. As described further below, there is a 60-day window beginning on the date of receipt of a customer's ACH transfer sent from the customer's personal account in the applicable MC FBO Account for the customer to initiate a Chargeback. That period has now expired.[6] Given that the risk of Chargebacks has been eliminated, the Reserve on account thereof is no longer justified. Moreover, the Reserve, which accounted for approximately 9% of the total funds in the MC FBO Accounts as of the Petition Date is now approximately 123% of the total funds in the MC FBO Accounts. Such a result no longer acts as a "reserve"—rather it swallows the MC FBO Accounts whole.

11. Although there were some Chargebacks during the 60-day window following the date of receipt of the last ACH deposit in the applicable MC FBO Account, there have been no

---

[5] Although the Debtors froze all trading activity on their platform on July 1, 2022 (the "Freeze Date"), such inbound activity likely occurred after the Freeze Date due to the ordinary course lag resulting from processing ACH transactions and the July 4 holiday. Such ACH inbound activity was received in the applicable MC FBO Account on July 8, 2022.

[6] Such period expired on September 6, 2022, 60 days after July 8, 2022, which is the date that the last ACH deposit initiated on July 6, 2022 arrived in the applicable MC FBO Account.

8

Chargebacks since August 19, 2022, with the exception of one deposit return request occurring on October 13, 2022, which was an isolated incident. The Reserve is not only no longer necessary to protect MC Bank but is unconscionable, especially in light of the collapse of FTX US and its affiliates, which has caused liquidity constraints on the Debtors in light of the now extended timeline of these cases. Accordingly, the Debtors respectfully request that the Reserve be fully released.

## Basis for Relief

**I.    Release of the Reserve Is Warranted Pursuant to Section 363 of the Bankruptcy Code.**

12.    Section 363(c) of the Bankruptcy Code authorizes a debtor in possession to use property of the estate in the ordinary course of business without notice or a hearing. 11 U.S.C. § 363(c). The Debtors believe that the Reserve, which is, in all respects, cash of the Debtors, should be released so that the Debtors may use such cash to bring these chapter 11 cases to conclusion. If, however, the Court were to determine that the release of the Reserve and the use of the cash thereunder is not ordinary course, the Debtors further believe the requested relief herein, is warranted under section 363(b) of the Bankruptcy Code.

13.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." To approve the use of estate property under section 363(b) of the Bankruptcy Code, the Second Circuit requires a debtor to show that the decision to use the property outside of the ordinary course of business was based on the debtor's business judgment. *See In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining a 363(b) application must find a good business reason to grant such application); *see also In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983) (requiring "some articulated business justification" to approve the use, sale or lease of property outside the ordinary course of business);

9

*In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting that the standard for determining a section 363(b) motion is "a good business reason"); *In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003).

14. The business judgment rule shields a debtor's management's decisions from judicial second guessing. *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) (a "presumption of reasonableness attaches to a Debtor's management decisions" and courts will generally not entertain objections to the debtor's conduct after a reasonable basis is set forth). Once a debtor articulates a valid business justification, the law vests the debtor's decision to use property outside of the ordinary course of business with a strong presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (citations and internal quotations omitted), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

15. Here, the Debtors' request that the Reserve be immediately released is an exercise of the Debtors' sound business judgment. Absent release of the Reserve, the Debtors may face a liquidity crisis which will jeopardize the Debtors' ability to return maximum value to their stakeholders. The Reserve was established to protect MC Bank against a risk that no longer exists. A customer has 60 days from the date of receipt of a customer's ACH deposit in the applicable MC FBO Account to initiate a Chargeback of such deposit. Upon initiation of a Chargeback, a customer's personal bank account claws back cash attributable to the ACH deposit from the applicable MC FBO Account and returns such cash to the customer, which causes a deficit in the

applicable MC FBO Account.  Given the Debtors are no longer able to accept ACH deposits and have not received an ACH deposit since July 8, 2022, this look-back period expired on September 6, 2022.  Therefore, MC Bank is no longer at risk that a deficit in the MC FBO Accounts will occur as a result of a Chargeback.  Furthermore, MC Bank is fully protected by the authority granted to the Debtors in the FBO Order to continue to perform under the MC Bank Agreements and fund any deficit in the MC FBO Accounts in the ordinary course of business.  Accordingly, the Reserve no longer serves its intended purpose, and the amount thereunder is no longer necessary nor warranted.

II. **The Debtors are Authorized to Operate their Business in the Ordinary Course of Business in Furtherance of the Debtors' Duties Under Sections 1107(a) and 1108 of the Bankruptcy Code.**

16.    The Debtors, operating their businesses as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code, are fiduciaries "holding the bankruptcy estate and operating the business for the benefit of its creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Implicit in the duties of chapter 11 debtors in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id*.  Moreover, under section 105(a) of the Bankruptcy Code, "the Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code."  11 U.S.C. § 105(a).

17.    The release of the Reserve and use of cash thereunder is necessary for the Debtors to continue to fund these chapter 11 cases.  The ability to access the $24 million Reserve is not only necessary but vital to the Debtors' ability to preserve the estate for the benefit of all stakeholders.  If the Debtors are not able to access the Reserve, the Debtors anticipate they will need to sell cryptocurrency in the near term.

11

18. Therefore, the Debtors submit that the Court has authority to grant the relief requested herein because such relief is necessary for the Debtors to carry out their duties under sections 1107(a) and 1108 of the Bankruptcy Code.

### Waiver of Bankruptcy Rules 6004(a) and 6004(h)

19. The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Reservation of Rights

20. Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

**Motion Practice**

21. This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

**Notice**

22. The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (a) the U.S. Trustee; (b) the Committee; (c) the lender under the Debtors' prepetition loan facility; (d) the United States Attorney's Office for the Southern District of New York; (e) the Internal Revenue Service; (f) the Toronto Stock Exchange; (g) the attorneys general in the states where the Debtors conduct their business operations; (h) MC Bank; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

23. No prior request for the relief sought in this Motion has been made to this or any other court.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors request that the Court enter an order, substantially in the form attached hereto, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

| | |
|---|---|
| Dated:  December 2, 2022<br>New York, New York | */s/ Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>Christopher Marcus, P.C.<br>Christine A. Okike, P.C.<br>Allyson B. Smith (admitted *pro hac vice*)<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:   (212) 446-4800<br>Facsimile:     (212) 446-4900<br>Email:          jsussberg@kirkland.com<br>                     cmarcus@kirkland.com<br>                     christine.okike@kirkland.com<br>                     allyson.smith@kirkland.com<br><br>*Counsel to the Debtors and Debtors in Possession* |

**Exhibit A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) ) ) | Case No. 22-10943 (MEW) |
| Debtors. | ) ) | (Jointly Administered) |

**ORDER (I) COMPELLING THE RELEASE OF THE
RESERVE HELD BY METROPOLITAN COMMERCIAL BANK ON
DEBTORS' BANK ACCOUNT AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) compelling the release of the full amount of the $24 million Reserve held by MC Bank on the Debtors' MC Bank Master Operating Account and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion.

that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.  The Debtors are authorized to compel MC Bank to release the Reserve that MC Bank holds on the Debtors' MC Bank Master Operating Account in its entirety and MC Bank is hereby ordered to release the Reserve immediately upon entry of this Order.

2.  Notwithstanding paragraph 1 of this Order, nothing in this Order modifies, alters, or terminates any other rights the Debtors or MC Bank have under the MC Bank Agreements.

3.  Notwithstanding the relief granted herein and any actions taken pursuant to such relief, nothing contained in the Motion or this Order shall constitute, nor is it intended to constitute: (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim or finding that any particular claim is an administrative expense claim or other priority claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (h) a

concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Order are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens. Any payment made pursuant to this Order should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

4. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

5. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

6. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

7. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
 Dated: _____, 2022

                                                THE HONORABLE MICHAEL E. WILES
                                                UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1</u>**

**March 15, 2021 Letter**

4

Metropolitan Commercial Bank.

March 15

To Whomever It May Concern
Voyager Digital Securities LLC

Dear Sirs:

As you know Voyager operates an E-Wallet and exchange for Crypto Currencies and other digital assets. Voyager uses Usio as a technology provider and Metropolitan Commercial Bank ("MCB" and/or the "Bank") as an ODFI to originate debit transactions to allow customers to fund their E-Wallet managed by Voyager.

Up until now the Bank has required a three business day hold on proceeds from any ACH debit originated by MCB.

Going forward, MCB will require a mutually agreed upon limit of ACH debits that can be funded to the E-Wallet in any calendar day. MCB will place a hold of 2x that daily limit against the Voyager owned account.

The initial value of the reserve was set at $24,000,000 and applied against account number xxx3989 on March 15, 2021 i/n/o Voyager, which the Bank will review on an on-going basis and advise of any required changes in order to continue to meet the 2x the daily limit requirement.

Sincerely,

Nick Rosenberg
EVP

Acknowledged and agreed by:

Name  Stephn Chrlvh

Title  CEO