UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) ) ) | Case No. 22-10943 (MEW) |
| Debtors. | ) ) ) | (Jointly Administered) |

**STIPULATION AND AGREED ORDER BETWEEN
THE DEBTORS, FICENTIVE, INC., AND METROPOLITAN COMMERCIAL BANK**

This stipulation and agreed order (this "Stipulation") is made this 1st day of December, 2022, by each of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), FiCentive, Inc. ("FiCentive"), and Metropolitan Commercial Bank ("MC Bank" and, together with the Debtors and FiCentive, collectively, the "Parties").

**Recitals**

WHEREAS, on July 5, 2022 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court");

WHEREAS, the Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

WHEREAS, prior to the Petition Date, Debtor Voyager Digital, LLC ("Voyager Digital") and FiCentive entered into that certain prepaid marketing and processing agreement, dated as of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

November 5, 2021, for the right to use, distribute, market, promote, and/or sell prepaid stored value cards directly to consumers through and with various affiliates or partners of Voyager Digital (the "Prepaid Card Marketing and Processing Agreement");

WHEREAS, pursuant to the Prepaid Card Marketing and Processing Agreement, the Debtors maintained a prepaid debit card (the "Voyager Debit Card") that allowed customers to indirectly spend USD Coin ("USDC") (a cryptocurrency pegged to the value of the United States dollar) from their account on the Debtors' platform via the Voyager Debit Card;

WHEREAS, the Voyager Debit Card, issued on the MasterCard network, was a prepaid debit card sponsored by MC Bank, an FDIC-insured bank, and managed by FiCentive;

WHEREAS, to use the Voyager Debit Card, customers could either deposit funds through a linked bank account via an ACH debit, or have their employer or any other source of a direct deposit make a direct deposit into the customer's account in order to purchase USDC in the Debtors' digital app or transfer in USDC they already owned directly from their non-Debtor customer account to the Debtors' platform;

WHEREAS, the Debtors maintain a settlement account at MC Bank (the "Voyager Debit Card Account") whereby customer purchases are settled through the account via Mastercard and the Debtors are responsible for ensuring that the corresponding fiat currency is remitted to the Voyager Debit Card Account following customer purchases (and other balance changing activities) on the Voyager Debit Card;

WHEREAS, the Voyager Debit Card carried a zero dollar balance in the system of record managed by FiCentive, and all purchase authorizations were forwarded in real-time for approval or denial via an application programming interface (API) to the Debtors' platform in order to authorize against the customer's USDC balances held in the Debtor's digital app;

WHEREAS, to ensure there were funds sufficient to settle customer debits on the Voyager Debit Card, MC Bank required the Debtors to maintain a reserve account (the "Voyager Debit Card Reserve Account") with a $500,000 prepaid balance (the "Reserve") at MC Bank in the event the Debtors ran into delays with converting USDC to fiat for remittance to the Voyager Debit Card Reserve Account;

WHEREAS, as a result of the trading, deposit, and withdrawal suspension put into effect on July 1, 2022, transaction capability on the Voyager Debit Card was suspended by Voyager; and the Debtors and FiCentive no longer wish to continue their relationship and desire to terminate the Prepaid Card Marketing and Processing Agreement and the related Voyager Debit Card; and

WHEREAS, the Debtors have determined that it is in the best interests of their estates and their creditors that the Debtors enter into this Stipulation on the agreed-upon terms as described herein.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, AND UPON APPROVAL BY THE BANKRUPTCY COURT, IT IS ORDERED AS FOLLOWS:**

1. Upon execution and Court approval of this Stipulation, (a) the Debtors are authorized to terminate the Prepaid Card Marketing and Processing Agreement, which shall be terminated by agreement as of November 30, 2022, and deemed rejected pursuant to section 365 of the Bankruptcy Code, (b) MC Bank is authorized to terminate the Voyager Debit Card program, (c) MC Bank shall return the Reserve to the Debtors as soon as reasonably possible thereafter, and (d) FiCentive is authorized to begin all wind-down activities as required by the Mastercard Rules.

2. The Debtors and FiCentive reserve their rights as to any and all claims and defenses arising out of or related to the Prepaid Card Marketing and Processing Agreement.

3. Nothing in this Stipulation shall constitute or be deemed as: (a) an admission as to the validity of any claim against FiCentive; (b) a waiver or limitation of FiCentive's rights under the Bankruptcy Code or any other applicable law; (c) FiCentive specifically reserves its rights to assert that the wind-down costs and any other costs associated with the termination of the Prepaid Card Marketing and Processing Agreement are administrative expenses under §503(b); and (d) FiCentive specifically retains its rights to file a proof of claim against the appropriate Debtor for its pre-petition debt and damages arising from the rejection of the Prepaid Card Marketing and Processing Agreement and the Debtors specifically reserve their right to object to any proofs of claim filed by FiCentive, including, for the avoidance of doubt, any administrative expense claims.

4. Nothing in this Stipulation shall constitute or be deemed as: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Stipulation; (e) other than with respect to the Prepaid Card Marketing and Processing Agreement, a request or authorization to assume or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code and for the avoidance of doubt, the Prepaid Card Marketing and Processing Agreement is hereby rejected; or (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law.

5. This Stipulation may be signed in counterparts and signatures may be delivered by fax or email, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Each person who executes this Stipulation on behalf of a Party hereto represents that he or she is duly authorized to execute this Stipulation on behalf of such Party.

6. This Stipulation represents the entire agreement between the Parties in respect of the subject matter hereof and shall not be modified, altered, amended, or vacated without the prior written consent of all Parties hereto. No statement made or action taken in the negotiation of this Stipulation may be used by any party for any purpose whatsoever.

7. Each Party represents and warrants to the other Party that it: (a) made this Stipulation freely and voluntarily and with full knowledge of its significance; and (b) has been represented by counsel of its own choice in the negotiations preceding the execution of this Stipulation and in connection with the preparation and execution of this Stipulation.

8. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Stipulation are immediately effective and enforceable upon Court approval.

9. The Bankruptcy Court shall retain exclusive jurisdiction to hear any matters or disputes arising from or relating to this Stipulation. Any request for relief brought before the Bankruptcy Court to resolve a dispute arising from or related to this Stipulation, and the matters agreed to herein, shall be brought on proper notice and in accordance with the relevant Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York.

Dated: December 1, 2022
New York, New York

/s/ Joshua A. Sussberg
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:  jsussberg@kirkland.com
    cmarcus@kirkland.com
    christine.okike@kirkland.com
    allyson.smith@kirkland.com

*Counsel to the Debtors and Debtors in Possession*


/s/ Randall A. Pulman
**PULMAN, CAPPUCCIO & PULLEN, LLP**
Randall A. Pulman
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
Telephone:  (210) 222-9494
Facsimile:  (210) 892-1610
Email:  rpulman@pulmanlaw.com

*Counsel to FiCentive, Inc.*

/s/ Amy R. Wolf
**WACHTELL, LIPTON, ROSEN & KATZ**
Amy R. Wolf
51 West 52nd Street
New York, New York 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000
Email: arwolf@wlrk.com

*Counsel to Metropolitan Commercial Bank*

**SO ORDERED**

New York, New York
Dated: December 6, 2022

s/Michael E. Wiles
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE