AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000
Mitchell P. Hurley
Dean L. Chapman Jr.
mhurley@akingump.com
dchapman@akingump.com

*Attorneys for Celsius Network LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
:
In re:                                                          :      Chapter 11
                                                                :
VOYAGER DIGITAL HOLDINGS, INC., *et al.*,                       :      Case No. 22-10943 (MEW)
                                                                :
                                                                :      Jointly Administered
                                              Debtors.          :
                                                                :
---------------------------------------------------------------X

**DECLARATION OF HOLDEN BIXLER IN SUPPORT OF**
**MOTION OF CELSIUS NETWORK LLC FOR ORDER (I) LIFTING**
**THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. 362(d)(1) AND**
**BANKRUPTCY RULE 4001 AND (II) GRANTING LEAVE**
**TO FILE LATE PROOF OF CLAIM PURSUANT TO**
**BANKRUPTCY RULES 3003(c) AND 9006(b)(1)**

I, Holden Bixler, declare under penalty of perjury:

1. I am a Managing Director at Alvarez & Marsal North America, LLC ("A&M"). Celsius Network LLC ("Celsius") retained A&M to serve as its financial advisor in connection with its chapter 11 case and those of its affiliate debtors, consolidated as *In re: Celsius Network LLC, et al.*, Case No. 22-10964 (MG), filed in the Southern District of New York the ("Celsius Bankruptcy").

2. Since Celsius engaged A&M in mid-June of 2022, I have worked closely with Celsius' management and other professionals with respect to Celsius' restructuring efforts. The

1

efforts of the team have included assisting Celsius in preparing cash flow projections, budgets, and other financial information required in connection with its chapter 11 cases. In my current position, I am responsible for assisting Celsius with certain claims management and reconciliation matters. I am generally familiar with Celsius' books and records that reflect, among other things, Celsius' assets and liabilities and the transfers made by Celsius and its affiliated debtors in the 90 days prior to the Petition Date.

3.  I have read the Motion of Celsius Network LLC for entry of an order (i) lifting the automatic stay to permit commencement of an adversary proceeding against Voyager Digital LLC ("Voyager") to recover preferential transfers and (ii) extending, nunc pro tunc, Celsius' time to file a proof of claim in this action despite passage of the bar date (the "Motion") filed contemporaneously herewith.

4.  I am authorized to submit this declaration (the "Declaration") in support of the Motion. All matters set forth in this Declaration are based on (a) my personal knowledge, (b) my review of relevant documents, (c) my view based on my experience and knowledge of Celsius' books and records, and personnel, (d) information that Celsius and other professionals supplied to me at Celsius' request, or (e) as to matters involving bankruptcy law or rules or other applicable laws, my reliance on the advice of Celsius' counsel or other advisors. If called upon to testify, I could and would testify competently to the facts set forth herein.

**Timeline for Identifying Voyager Digital's Withdrawals from Celsius**

5.  I understand that in the Motion Celsius seeks permission to file a preference action and corresponding claim related to certain amounts withdrawn by Voyager in the 90 days prior to Celsius' bankruptcy filing. I further understand that any such claim would be filed after the

2

October 3, 2022 bar date. The following facts are relevant to the timing of Celsius' discovery of its claim.

6.     On July 13, 2022 (the "Petition Date"), Celsius filed a Chapter 11 Voluntary Petition for Bankruptcy in the Southern District of New York. To prepare its requisite schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases (collectively, the "Schedules") and statements of financial affairs (the "Statements"), Celsius was required to compile information from books, records, and documents relating to hundreds of thousands of claims, assets, and contracts. The collection of this necessary information required a significant expenditure of time and effort on the part of Celsius, its employees, and its advisors including A&M. The preparation of the Schedules and Statements in the Celsius case was uniquely challenging because it is one of the first ever crypto bankruptcies, and there is a lack of precedent.

7.     The work done to gather the information began prior to the Petition Date and continued until the ultimate filing of the Schedules and Statements.

8.     On July 14, 2022, Celsius sought an extension for filing its Schedules and Statements. The bankruptcy court granted that motion. Thereafter, Celsius and A&M continued to identify, gather, analyze, and organize the information required to prepare the Schedules and Statements. This was an iterative process during which Celsius repeatedly produced revised data sets for A&M to review and analyze.

9.     During this time, Celsius compiled information from books, records, and documents relating to the claims of hundreds of thousands of creditors, many of whom were Celsius customers, as well as Celsius' many assets and contracts. That voluminous information was located across various places within Celsius' international organization. The Celsius team

3

worked diligently to provide materials to A&M, but that team was also burdened with significant other workstreams related to the Chapter 11 filing in addition to their regular day-to-day responsibilities.

10. Because of the complexity of the records and the outstanding motions related to the sealing of personally identifiable information, Celsius requested two additional extensions for filing its Schedules and Statements, the first on August 11, 2022 and the second on September 16, 2022. The bankruptcy court overseeing Celsius' bankruptcy granted both extensions.

11. On October 5, 2022, Celsius filed its Schedules and Statements totaling over 30,000 pages. Celsius' statement of transfers occurring in the 90 days prior to the Petition Date alone contained more than three million rows of data.

12. On or around December 9, 2022, in connection with the Debtors' sale of the GK8 assets, Celsius began a limited, preliminary review of potential preference claims associated with only the GK8 entities. Beyond that, Celsius has not undertaken any generalized effort to identify potential preference claims at this time. This is consistent with my experience as a financial advisor to Chapter 11 debtors. In the traditional, freefall Chapter 11 cases I have been involved in where a debtor elected to identify potential preference claims, a fulsome analysis to identify such claims did not commence until after the filing of the Schedules and Statements.

### Voyager's Withdrawals From Its Accounts

13. On November 2, 2022, four weeks after the filing of the Schedules and Statements, A&M was asked about Voyager's withdrawals of crypto assets in the 90 days prior to the filing of Celsius' chapter 11 bankruptcy petition. A&M reviewed the Schedules and Statements, which reflect that Voyager maintained two accounts with Celsius in which Voyager invested a significant

4

amount of crypto currencies. The Schedules and Statements reflect that both accounts included an "Earn" program account and a "Withhold" program account.

14. In the 90 days before Celsius filed its bankruptcy petition, the Debtors' books and records reflect that Voyager transferred coins from the Earn program into its Withhold accounts on fourteen occasions. Those transfers involved crypto assets valued at approximately $7.7 million as of the dates they took place. Specifically, the Debtors' records show that on May 5, 2022, Voyager transferred $474,160.69 worth of cryptocurrency from its Earn program accounts and placed that currency in its Withhold accounts. On May 11, 2022, the Debtors' records reflect that Voyager transferred $3,774,632.91 worth of cryptocurrency from its Earn program accounts and placed that currency in its Withhold accounts. On May 25, 2022, the Debtors' records reflect that Voyager transferred $3,451,881.41 worth of cryptocurrency from its Earn program accounts and placed that currency in its Withhold accounts.

15. Additionally, between May 11, 2022 and June 6, 2022, the Debtors' records reflect that Voyager withdrew $5,897,922.02 worth of cryptocurrency from its Withhold accounts.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 13, 2022

/s/ Holden Bixler
Holden Bixler