**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## <u>SUPPLEMENTAL AFFIDAVIT OF SERVICE</u>

I, Monica Arellano, depose and say that I am employed by Stretto, the claims and noticing agent for the Debtors in the above-captioned cases.

On December 9, 2022, at my direction and under my supervision, employees of Stretto caused the following document to be served via first-class mail on Tuple, LLC at PO Box 441548, Somerville, MA 02144-0035 and on four (4) confidential parties not listed herein, pursuant to USPS forwarding instructions:

- **Notice of Hearing to Consider Confirmation of the Chapter 11 Plan Filed by the Debtors and Related Voting and Objection Deadlines** (Docket No. 593)

Furthermore, on December 12, 2022, at my direction and under my supervision, employees of Stretto caused the following document to be served via first-class mail on six (6) confidential parties not included herein, pursuant to USPS forwarding instructions:

- **Notice of Rescheduled Sale and Disclosure Statement Hearing Date** (Docket No. 365)

Furthermore, on December 12, 2022, at my direction and under my supervision, employees of Stretto caused the following document to be served via first-class mail on thirty-five (35) confidential parties not included herein, pursuant to USPS forwarding instructions:

- **Notice Of Rescheduled Sale and Disclosure Statement Hearing Date** (Docket No. 442)

[THIS SPACE INTENTIONALLY LEFT BLANK]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

Furthermore, on December 12, 2022, at my direction and under my supervision, employees of Stretto caused the following document to be served via first-class mail on one (1) confidential party not included herein, pursuant to USPS forwarding instructions:

- **Notice of Hearing to Consider Approval of Disclosure Statement for the First Amended Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code** (attached hereto as **Exhibit A**)

Furthermore, on December 12, 2022, at my direction and under my supervision, employees of Stretto caused the following documents to be served via first-class mail on fifteen (15) confidential parties not listed herein, pursuant to USPS forwarding instructions:

- **Supplemental Bar Date Notice Package [Customized]**

- **Proof of Claim – Form 410 and Instructions** (Substantially in the Form of **Exhibit A** to **Docket No. 218**)

- **Notice of (I) Filing of Amendment to Schedule of Assets and Liabilities for Voyager Digital, LLC and (II) Deadline Requiring Submission of Proofs of Claim on or Before December 23, 2022 and Related Procedures for Submitting Proofs of Claim in the Above-Captioned Chapter 11 Cases** (Docket No. 666)

Furthermore, on December 13, 2022, at my direction and under my supervision, employees of Stretto caused the following document to be served via first class mail on the service list attached hereto as **Exhibit B**, and on fifty-two (52) confidential parties not listed herein, pursuant to USPS forwarding instructions:

- **Notice of Deadlines Related to the Second Amended Joint Plan of Voyager Digital Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code** (Docket No. 646)

Furthermore, on or before December 14, 2022, at my direction and under my supervision, employees of Stretto caused the following documents to be served via first-class mail on two hundred and sixty-five (265) confidential parties not listed herein, pursuant to USPS forwarding instructions:

- **Solicitation and Voting Procedures** (attached hereto as **Exhibit C**)

- **Voyager Cover Letter in Support of Plan** (attached hereto as **Exhibit D**)

- **Unsecured Creditors Committee Letter in Support of Plan** (attached hereto as **Exhibit E**)

- **[Customized] Class 3 Holders of Account Holder Claims – Ballot for Voting to Accept or Reject the Second Amended Joint Plan of Voyager Digital Holdings, Inc. and its**

Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (attached hereto as **Exhibit F**)

- **Order Approving (I) the Adequacy of the Disclosure Statement, (II) the Solicitation and Notice Procedures, (III) the Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto** (Docket No. 586)

- **Second Amended Joint Plan of Voyager Digital Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code** (Substantially in the Form of **Exhibit A** to **Docket No. 590**)

- **First Amended Disclosure Statement Relating to the Second Amended Joint Plan of Voyager Digital Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code** (Substantially in the Form of **Exhibit A** to **Docket No. 591**)

- **Notice of Hearing to Consider Confirmation of the Chapter 11 Plan Filed by the Debtors and Related Voting and Objection Deadlines** (Docket No. 593)

Dated: December 19, 2022

Monica Arellano

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California,
County of Orange

Subscribed and sworn to (or affirmed) before me on this 19th day of December, 2022, by Monica Arellano, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature: _____

STEPHANIE M. DELGADO
Notary Public - California
Orange County
Commission # 2288834
My Comm. Expires May 17, 2023

# **Exhibit A**

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF HEARING TO CONSIDER**
**APPROVAL OF DISCLOSURE STATEMENT FOR THE FIRST AMENDED**
**JOINT PLAN OF REORGANIZATION OF VOYAGER DIGITAL HOLDINGS, INC.**
**AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**TO ALL PARTIES IN INTEREST**:

**PLEASE TAKE NOTICE THAT** on August 12, 2022, the above-captioned debtors and debtors in possession (collectively, the "Debtors"), filed the *First Amended Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 287] (as may be amended, modified, or supplemented in accordance with the terms therein, the "Plan") and the proposed *Disclosure Statement for the First Amended Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 288] (as may be amended, modified, or supplemented, the "Disclosure Statement").

**PLEASE TAKE FURTHER NOTICE THAT**:

1.    A hearing (the "Hearing") will be held before the Honorable Judge Michael E. Wiles, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), One Bowling Green, Courtroom 617, New York, New York 10004, on **September 15, 2022, at 10:00 a.m.** (prevailing Eastern Time), to consider entry of an order determining, among other things, that the Disclosure Statement contains "adequate information" within the meaning ascribed to such term in section 1125 of the Bankruptcy Code and approving the Disclosure Statement.

2.    Any party in interest wishing to obtain a copy of the Disclosure Statement and the Plan should contact Stretto, Inc., the Debtors' claims, noticing, and solicitation agent, by writing to Voyager Ballot Processing, c/o Stretto 410 Exchange, Suite 100 Irvine, CA 92602, or by email at VoyagerInquiries@Stretto.com with a reference to "In re: Voyager - Solicitation Inquiry" in the subject line. Interested parties may also review the Disclosure Statement and the Plan free of charge at https://cases.stretto.com/Voyager/. In addition, the Disclosure Statement and Plan are on file with the Bankruptcy Court and may be reviewed by accessing the Bankruptcy Court's website: www.nysb.uscourts.gov. Note that a PACER password and login are needed to access documents on the Bankruptcy

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

Court's website. A PACER password can be obtained at: www.pacer.psc.uscourts.gov. Copies of the Disclosure Statement and Plan may also be examined by interested parties during normal business hours at the office of the Clerk of the Bankruptcy Court.

3.    Objections, if any, to approval of the Disclosure Statement must: (a) be in writing, (b) comply with the Bankruptcy Rules and the Bankruptcy Local Rules, (c) set forth the name of the objector and the nature and amount of any claim or interest asserted by the objector against or in the Debtors, (d) state with particularity the legal and factual bases for the objection, and (e) be filed, contemporaneously with a proof of service, with the Bankruptcy Court and served on the following parties by no later than **September 9, 2022, at 4:00 p.m.** (prevailing Eastern Time):

| Debtors |
|---|
| **Voyager Digital Holdings, Inc.**<br>3 Irving Place, Suite 3060,<br>New York, NY 10003<br>Attention: Stephen Ehrlich and David Brosgol |

| Counsel to the Debtors | Counsel to the Committee |
|---|---|
| **Kirkland & Ellis LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Attention:  Joshua A. Sussberg; Christopher Marcus;<br>Christine A. Okike; Allyson B. Smith | **McDermott Will & Emery LLP**<br>One Vanderbilt Avenue<br>New York, NY 10017-3852<br>Attention: Darren Azman; Joseph B. Evans; Grayson<br>Williams; Gregg Steinman |

| United States Trustee |
|---|
| **Office of the United States Trustee for the Southern District of New York**<br>U.S. Federal Office Building<br>201 Varick Street, Room 1006<br>New York, NY 10014<br>Attention: Richard Morrissey; Mark Bruh |

**4.    IF AN OBJECTION TO THE DISCLOSURE STATEMENT IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO THE DISCLOSURE STATEMENT OR THE ADEQUACY THEREOF AND MAY NOT BE HEARD AT THE HEARING.**

5.    The Hearing may be adjourned from time to time without further notice to parties in interest other than by an announcement in Bankruptcy Court of such adjournment on the date scheduled for the Hearing or as indicated in any notice of agenda of matters scheduled for hearing filed by the Debtors with the Bankruptcy Court. The Debtors may modify the Disclosure Statement, if necessary, prior to, during, or as a result of the Hearing without further notice.

[*Remainder of Page Intentionally Left Blank*]

Dated:  August 12, 2022  
New York, New York

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**  
**KIRKLAND & ELLIS INTERNATIONAL LLP**  
Joshua A. Sussberg, P.C.  
Christopher Marcus, P.C.  
Christine A. Okike, P.C.  
Allyson B. Smith (admitted *pro hac vice*)  
601 Lexington Avenue  
New York, New York 10022  
Telephone:    (212) 446-4800  
Facsimile:    (212) 446-4900  
Email:        jsussberg@kirkland.com  
              cmarcus@kirkland.com  
              christine.okike@kirkland.com  
              allyson.smith@kirkland.com  

*Counsel to the Debtors and Debtors in Possession*

# **<u>Exhibit B</u>**



**Exhibit B**
Served via First-Class Mail

| NAME | ATTENTION | ADDRESS 1 | ADDRESS 2 | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|
| CAC Specialty Co. | c/o Cobbs Allen Capital, LLC | 3414 Peachtree Rd NE | Ste 1000 | Atlanta | GA | 30326-1166 |
| Cor Clearing LLC | Luke Holland | 15950 W Dodge Rd | Ste 300 | Omaha | NE | 68118-4009 |
| High Country Search Group | | 900 E Louisiana Ave | Ste 201 | Denver | CO | 80210-1722 |
| Hilltop Securities Inc. | Attn: Bonnie Allen, Corporate Actions | 717 N Harwood St | Ste 3400 | Dallas | TX | 75201-6534 |
| Hilltop Securities Inc. | Rhonda Jackson | 717 N Harwood St | Ste 3400 | Dallas | TX | 75201-6534 |
| Hilltop Securities Inc. | Attn: Corporate Actions | 717 N Harwood St | Ste 3400 | Dallas | TX | 75201-6534 |
| Hilltop Securities Inc. | Attn: Bonnie Allen | 717 N Harwood St | Ste 3400 | Dallas | TX | 75201-6534 |
| Kforce Inc | | 8405 Benjamin Rd | Ste G | Tampa | FL | 33634-1235 |
| Landon Capital Management LLC | | 3414 Peachtree Rd NE | Ste 735 | Atlanta | GA | 30326-1599 |
| Law Office of A. Manny Alicandro | | 11 Broadway | Ste 615 | New York | NY | 10004-1490 |
| North Dakota Department of Financial Institutions | | 1200 Memorial Hwy | | Bismarck | ND | 58504-5262 |
| Ogon LLC. | | 575 5th Ave | Fl 14 | New York | NY | 10017-2452 |
| Stockcross Financial Services, Inc. | Corporate Actions | 9378 Wilshire Blvd | Ste 300 | Beverly Hills | CA | 90212-3168 |
| Stockcross Financial Services, Inc. | Attn: Lisa Brunson | 9378 Wilshire Blvd | Ste 300 | Beverly Hills | CA | 90212-3168 |
| The Moskowitz Law Firm PLLC | Attn: Adam M. Moskowitz, Joseph M. Kaye, Barbara C. Lewis | PO Box 141609 | | Coral Gables | GA | 33114-1609 |

In re: Voyager Digital Holdings, Inc. et al.
Case No. 22-10943 (MEW)

Page 1 of 1

# **<u>Exhibit C</u>**

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## SOLICITATION AND VOTING PROCEDURES

**PLEASE TAKE NOTICE THAT** on October 21, 2022, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order [Docket No. 586] (the "Disclosure Statement Order"): (a) authorizing Voyager Digital Holdings, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors"), to solicit acceptances for the *Second Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 590] (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) approving the *First Amended Disclosure Statement Relating to the Second Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 591] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

      1.      The Voting Record Date.

The Court has approved **October 19, 2022** as the record date for purposes of determining which Holders of Claims in Class 3 (Account Holder Claims), Class 4 (Alameda Loan Facility Claims), Class 5A (OpCo General Unsecured Claims), Class 5B (HoldCo General Unsecured Claims), and Class 5C (TopCo General Unsecured Claims) are entitled to vote on the Plan (the "Voting Record Date").

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]    Capitalized terms not otherwise defined herein shall have the meaning given to them in the *Debtors' Motion for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [Docket No. 289] or the Plan, as applicable.

2.      The Voting Deadline.

The Court has approved **November 29, 2022, at 4:00 p.m.** prevailing Eastern Time as the voting deadline (the "Voting Deadline") for the Plan.  The Debtors may extend the Voting Deadline, in their discretion, without further order of the Court.  The Voting Deadline for any counterparty to an Unexpired Lease or Executory Contract which is identified as rejected through the *Notice Regarding Executory Contracts and Unexpired Leases to be Rejected Pursuant to the Plan* mailed later than five (5) days prior to the Voting Deadline shall be extended by two (2) Business Days.

To be counted as votes to accept or reject the Plan, all ballots (the "Ballots") must be executed, completed, and delivered pursuant to the instructions set forth on the applicable Ballot so that they are **actually received** by Stretto, Inc. (the "Claims, Noticing, and Solicitation Agent") no later than the Voting Deadline.  Delivery of a Ballot to the Claims, Noticing, and Solicitation Agent by e-mail, facsimile, or other electronic means, other than via the Stretto online voting portal at https://cases.stretto.com/Voyager/balloting, shall not be valid.

3.      Form, Content, and Manner of Notices.

(i)      The Solicitation Package.

The following materials shall constitute the solicitation package (the "Solicitation Package"):

a.      a copy of these Solicitation and Voting Procedures;

b.      the applicable opt-in release notice, substantially in form attached as **Exhibit 3A** and **Exhibit 3B** to the Disclosure Statement Order, as applicable;

c.      the applicable form of Ballot, substantially in the form attached as **Exhibit 4A**, **Exhibit 4B**, **Exhibit 4C**, **Exhibit 4D**, or **Exhibit 4E** to the Disclosure Statement Order, as applicable;

d.      a pre-paid, pre-addressed return envelope for Holders of Claims in Class 5A (OpCo General Unsecured Claims), Class 5B (HoldCo General Unsecured Claims), and Class 5C (TopCo General Unsecured Claims);

e.      the Cover Letter, which describes the contents of the Solicitation Package and urges Holders of Claims in each of the Voting Classes to vote to accept the Plan;

f.      the Committee Letter;

g.      the approved Disclosure Statement (and exhibits thereto, including the Plan);

h.      the Disclosure Statement Order (excluding exhibits, except for these Solicitation and Voting Procedures);

i.      the Confirmation Hearing Notice; and

j.      any additional documents that the Court has ordered to be made available.

(ii)      Distribution of the Solicitation Package.

The Solicitation Package shall provide the Plan, the Disclosure Statement, and the Disclosure Statement Order (without exhibits, except the Solicitation and Voting Procedures) in electronic format, and all other contents of the Solicitation Package, including the Ballots and the Cover Letter, shall be provided in paper format, except with respect to Holders of Claims in Class 3 (Account Holder Claims), who shall receive the entire Solicitation Package in electronic format.  Any party that receives the materials in electronic format but would prefer paper format may contact the Claims, Noticing, and Solicitation Agent by:  calling the Claims, Noticing, and Solicitation Agent at (855) 473-

8665 (Toll-Free) or +1 (949) 271-6507 (International); (b) e-mailing the Claims, Noticing, and Solicitation Agent at VoyagerInquiries@Stretto.com with a reference to "In re: Voyager - Solicitation Inquiry" in the subject line; or (c) writing to the Claims, Noticing, and Solicitation Agent at Voyager Inquiries, c/o Stretto 410 Exchange, Suite 100 Irvine, CA 92602.

The Debtors shall serve, or cause to be served, all of the materials in the Solicitation Package (excluding the Ballots) on the U.S. Trustee and all parties who have requested service of papers in this case pursuant to Bankruptcy Rule 2002 as of the Voting Record Date.  In addition, the Debtors shall distribute, or cause to be distributed, the Solicitation Package to all Holders of Claims in the Voting Classes on or before **November 1, 2022** who are entitled to vote, as described in Section 4(i) below.

To avoid duplication and reduce expenses, the Debtors will make every reasonable effort to ensure that any Holder of a Claim who has filed duplicative Claims against a Debtor (whether against the same or multiple Debtors) that are classified under the Plan in the same Voting Class receives no more than one Solicitation Package (and, therefore, one Ballot) on account of such Claim and with respect to that Class as against that Debtor.

     (iii)    <u>Resolution of Disputed Claims for Voting Purposes; Resolution Event</u>.

     a.    If a Claim in a Voting Class is subject to an objection that is filed with the Court on or prior to seven days before the Voting Deadline:  (i) the Debtors shall cause the applicable Holder to be served with the *Notice of Non-Voting Status with Respect to Disputed Claims* substantially in the form annexed as **Exhibit 3C** to the Disclosure Statement Order; and (ii) the applicable Holder shall not be entitled to vote to accept or reject the Plan on account of such Claim unless a Resolution Event (as defined herein) occurs as provided herein.

     b.    If a Claim in a Voting Class is subject to an objection that is filed with the Court less than seven days prior to the Voting Deadline, the applicable Claim shall be deemed temporarily allowed for voting purposes only, without further action by the Holder of such Claim and without further order of the Court, unless the Court orders otherwise.

     c.    A "<u>Resolution Event</u>" means the occurrence of one or more of the following events no later than two business days prior to the Voting Deadline:

          i.    an order of the Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code;

          ii.    an order of the Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a);

          iii.    a stipulation or other agreement is executed between the Holder of such Claim and the Debtors resolving the objection and allowing such Claim in an agreed upon amount; or

          iv.    the pending objection is voluntarily withdrawn by the objecting party.

     d.    No later than one Business Day following the occurrence of a Resolution Event, the Debtors shall cause the Claims, Noticing, and Solicitation Agent to distribute via email, hand delivery, or overnight courier service a Solicitation Package and a pre-addressed, postage pre-paid envelope to the relevant Holder.

     (iv)    <u>Non-Voting Status Notices for Unimpaired Classes and Classes Deemed to Reject the Plan</u>.

Certain Holders of Claims and Interests that are not classified in accordance with section 1123(a)(1) of the Bankruptcy Code or who are not entitled to vote because they are Unimpaired or otherwise presumed to accept the Plan under section 1126(f) of the Bankruptcy Code will receive only the *Notice of Non-Voting Status to Holders of Unimpaired*

*Claims Conclusively Presumed to Accept the Plan*, substantially in the form annexed as **Exhibit 3A** to the Disclosure Statement Order. Such notice will instruct these Holders as to how they may obtain copies of the documents contained in the Solicitation Package (excluding Ballots). Certain Holders of Claims or Interests who are not entitled to vote because they are deemed to reject the Plan under section 1126(g) of the Bankruptcy Code will receive the *Notice of Non-Voting Status to Holders of Impaired Claims and Interests Deemed to Reject the Plan*, substantially in the form annexed as **Exhibit 3B** to the Disclosure Statement Order. Such notice will instruct these Holders as to how they may obtain copies of the documents contained in the Solicitation Package (excluding Ballots). In addition, Holders of Claims or Interests in the classes deemed to reject the Plan will also receive the Disclosure Statement (together with the Plan attached as **Exhibit A** thereto).

       (v)      <u>Notices in Respect of Executory Contracts and Unexpired Leases</u>.

Counterparties to Executory Contracts and Unexpired Leases that receive a *Notice of Rejection of Executory Contracts and Unexpired Leases* substantially in the form attached as **Exhibit 8** or a *Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases* substantially in the form attached as **Exhibit 9** or **Exhibit 10**, as applicable, to the Disclosure Statement Order, may file an objection to the Debtors' proposed assumption, rejection, or cure amount, as applicable. Such objections must be in writing and filed with the Clerk of the United States Bankruptcy Court for the Southern District of New York on or before **November 29, 2022, at 4:00 p.m.** and shall be served as set forth in the applicable notice of assumption or rejection.

       4.      Voting and Tabulation Procedures.

       (i)      <u>Holders of Claims Entitled to Vote</u>.

Only the following Holders of Claims in the Voting Classes shall be entitled to vote with regard to such Claims:

      a.      Holders of Claims who, on or before the Voting Record Date, have timely filed a Proof of Claim (or an untimely Proof of Claim that has been Allowed as timely by the Court under applicable law on or before the Voting Record Date) that: (i) has not been expunged, disallowed, disqualified, withdrawn, or superseded prior to the Voting Record Date; and (ii) is not the subject of a pending objection filed with the Court at least seven (7) days prior to the Voting Deadline, pending a Resolution Event as provided herein; *provided* that a Holder of a Claim that is the subject of a pending objection on a "reduce and allow" basis shall receive a Solicitation Package and be entitled to vote such Claim in the reduced amount contained in such objection absent a further order of the Court;

      b.      Holders of Claims that are listed in the Schedules, *provided* that Claims that are scheduled as contingent, unliquidated, or disputed (excluding such scheduled disputed, contingent, or unliquidated Claims that have been paid or superseded by a timely Filed Proof of Claim) shall be allowed to vote only in the amounts set forth in Section 4(ii) of these Solicitation and Voting Procedures;

      c.      Holders whose Claims arise: (i) pursuant to an agreement or settlement with the Debtors, as reflected in a document filed with the Court; (ii) from an order entered by the Court; or (iii) from a document executed by the Debtors pursuant to authority granted by the Court, in each case regardless of whether a Proof of Claim has been filed or the Claim was scheduled as contingent, unliquidated, or disputed;

      d.      Holders of any Claim that has been temporarily allowed to vote on the Plan pursuant to Bankruptcy Rule 3018; and

      e.      with respect to any Entity described in subparagraphs (a) through (d) above, who, on or before the Voting Record Date, has transferred such Entity's Claim to another Entity, the assignee of such Claim; *provided* that such transfer or assignment has been fully

effectuated pursuant to the procedures set forth in Bankruptcy Rule 3001(e) and such transfer is reflected on the Claims Register on the Voting Record Date.

(ii)    Establishing Claim Amounts for Voting Purposes.

**Filed and Scheduled Claims.**  The Claim amounts established herein shall control for voting purposes only and shall not constitute the Allowed amount of any Claim.  Moreover, any amounts filled in on Ballots by the Debtors through the Claims, Noticing, and Solicitation Agent, as applicable, are not binding for purposes of allowance and distribution. In tabulating votes, the amount of the Claim associated with each claimant's vote shall be determined as follows:

a.    the Claim amount: (i) settled and/or agreed upon by the Debtors, as reflected in a document filed with the Court; (ii) set forth in an order of the Court; or (iii) set forth in a document executed by the Debtors pursuant to authority granted by the Court;

b.    the Claim amount Allowed (temporarily or otherwise) pursuant to a Resolution Event;

c.    the Claim amount contained in a Proof of Claim that has been timely filed (or deemed timely filed by the Court under applicable law), except for any amounts asserted on account of any interest accrued after the Petition Date; *provided*, *however*, that Ballots cast by Holders of Class 5A, Class 5B, and Class 5C Claims who timely file a Proof of Claim in respect of a contingent Class 5A, Class 5B, and/or Class 5C Claim or in a wholly-unliquidated or unknown amount that is not the subject of a pending objection, based on a reasonable review of the Proof of Claim and supporting documentation by the Debtors or their advisors, will count for satisfying the numerosity requirement of section 1126(c) of the Bankruptcy Code and will count in the amount of $1.00 solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code, and, if such Proof of Claim is filed as partially liquidated and partially unliquidated, such Class 5A, Class 5B, and/or Class 5C Claim will be Allowed for voting purposes only in the liquidated amount; *provided*, *further*, *however*, that to the extent that any Claim amount contained in a Proof of Claim is different from the Claim amount set forth in a document filed with the Court referenced in subparagraph (a) above, the Claim amount in the document filed with the Court shall supersede the Claim amount set forth on the respective Proof of Claim;

d.    the Claim amount listed in the Schedules (to the extent such Claim is not superseded by a timely Filed Proof of Claim), provided that such Claim is not scheduled as contingent, disputed, or unliquidated; if a Claim is listed in the Debtors' Schedules as contingent, unliquidated, or disputed and a proof of claim was not (i) filed by the applicable bar date for filing Proofs of Claim established by the Court or (ii) deemed timely filed by an order of the Court prior to the Voting Record Date, such Claim shall be disallowed for voting purposes;

e.    Holders of Proofs of Claim filed for $0.00 or zero (0) Cryptocurrency, as applicable, are not entitled to vote;

f.    Claims that have been paid, scheduled to be paid in the ordinary course, or otherwise satisfied are disallowed for voting purposes;

g.    notwithstanding anything to the contrary contained herein, any creditor who has filed or purchased duplicate Claims within the same Voting Class shall, to the extent possible, be provided with only one Solicitation Package and one Ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to such duplicate Claims; and

h.    in the absence of any of the foregoing, such Claim shall be disallowed for voting purposes.

5

If a Proof of Claim is amended, the last filed Claim shall be subject to these rules and will supersede any earlier filed Claim, and any earlier filed Claim will be disallowed for voting purposes.

    (iii)    <u>Voting and Ballot Tabulation Procedures</u>.

The following voting procedures and standard assumptions shall be used in tabulating Ballots, subject to the Debtors' right to waive any of the below specified requirements for completion and submission of Ballots, so long as such requirement is not otherwise required by the Bankruptcy Code, Bankruptcy Rules, or Local Rules:

a.    each Claim asserted in currency other than U.S. dollars (other than Cryptocurrency) shall be automatically deemed converted to the equivalent U.S. dollar value using the conversion rate for the applicable currency at prevailing market prices as of 8:00 a.m. (prevailing Eastern Time) on the Petition Date;

b.    each Claim asserted in Cryptocurrency shall be automatically deemed converted using the fair market value of the Cryptocurrency (based in U.S. Dollars) as of July 5, 2022 at 00:00 UTC. Such conversion shall be for voting tabulation purposes only and shall not be binding for any other purpose on the Debtors, including, without limitation, for purposes of allowance of, and distribution with respect to, Claims under the Plan;

c.    except as otherwise provided in the Solicitation and Voting Procedures, unless the Ballot being furnished is timely submitted and actually received by the Claims, Noticing, and Solicitation Agent on or prior to the Voting Deadline (as the same may be extended by the Debtors), the Debtors shall reject such Ballot as invalid and, therefore, shall not count it in connection with confirmation of the Plan;

d.    the Claims, Noticing, and Solicitation Agent will date-stamp all Ballots when received. The Claims, Noticing, and Solicitation Agent shall retain the original Ballots and an electronic copy of the same for a period of one year after the Effective Date of the Plan, unless otherwise ordered by the Court;

e.    the Claims, Noticing, and Solicitation Agent shall tabulate Ballots on a Debtor-by-Debtor basis;

f.    the Debtors will file the Voting Report by **<u>December 6, 2022 at 4:00 p.m.</u>** prevailing Eastern Time. The Voting Report shall, among other things, delineate every Ballot that does not conform to the voting instructions or that contains any form of irregularity (each an "<u>Irregular Ballot</u>"), including those Ballots that are late or (in whole or in material part) illegible, unidentifiable, lacking signatures or other necessary information, or damaged. The Voting Report shall indicate the Debtors' decision with regard to such Irregular Ballots;

g.    the method of delivery of Ballots to be sent to the Claims, Noticing, and Solicitation Agent is at the election and risk of each Holder, and except as otherwise provided, a Ballot will be deemed delivered only when the Claims, Noticing, and Solicitation Agent actually receives the executed Ballot;

h.    an executed Ballot is required to be submitted by the Entity submitting such Ballot. Delivery of a Ballot to the Claims, Noticing, and Solicitation Agent by facsimile, or any electronic means other than expressly provided in these Solicitation and Voting Procedures will not be valid;

i.    no Ballot should be sent to the Debtors, the Debtors' agents (other than the Claims, Noticing, and Solicitation Agent), or the Debtors' financial or legal advisors, and, if so sent, will not be counted;

j.   if multiple Ballots are received from the same Holder with respect to the same Claim or Interest prior to the Voting Deadline, the last properly executed Ballot timely received will be deemed to reflect that voter's intent and will supersede and revoke any prior received Ballot;

k.   Holders must vote all of their Claims within a particular Class either to accept or reject the Plan and may not split any votes. Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted. Further, to the extent there are multiple Claims within the same Class, the applicable Debtor may, in its discretion, aggregate the Claims of any particular Holder within a Class for the purpose of counting votes;

l.   a person signing a Ballot in its capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity of a Holder of Claims must indicate such capacity when signing;

m.   the Debtors, subject to a contrary order of the Court, may waive any defects or irregularities as to any particular Irregular Ballot at any time, either before or after the close of voting, and any such waivers will be documented in the Voting Report;

n.   unless waived or as ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted; *provided* that the Debtors shall notify any Holder who submitted a Ballot not in proper form of any such defects and their intent to reject such Ballot if the alleged defects are not remedied prior to the Voting Deadline after receipt of notice of such alleged defect;

o.   in the event a designation of lack of good faith is requested by a party in interest under section 1126(e) of the Bankruptcy Code, the Court will determine whether any vote to accept and/or reject the Plan cast with respect to that Claim will be counted for purposes of determining whether the Plan has been accepted and/or rejected;

p.   subject to any order of the Court, the Debtors reserve the right to reject any and all Ballots not in proper form, the acceptance of which, in the opinion of the Debtors, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules; *provided* that any such rejections will be documented in the Voting Report;

q.   if a Claim has been estimated or otherwise Allowed only for voting purposes by order of the Court, such Claim shall be temporarily Allowed in the amount so estimated or Allowed by the Court for voting purposes only, and not for purposes of allowance or distribution;

r.   if an objection to a Claim is filed, such Claim shall be treated in accordance with the procedures set forth herein;

s.   the following Ballots shall not be counted in determining the acceptance or rejection of the Plan: (i) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of such Claim; (ii) any Ballot cast by any Entity that does not hold a Claim in a Voting Class; (iii) any Ballot cast for an OpCo General Unsecured Claim, HoldCo General Unsecured Claim, or TopCo General Unsecured Claim scheduled as unliquidated, contingent, or disputed for which no Proof of Claim was timely filed by the Voting Record Date (unless the applicable bar date has not yet passed, in which case such Claim shall be entitled to vote in the amount of $1.00); (iv) any unsigned Ballot or Ballot lacking an original signature (for the avoidance of doubt, a Ballot submitted via the Claims, Noticing, and Solicitation Agent's online balloting portal shall be deemed an original signature); (v) any Ballot not marked to accept or reject the Plan or marked both to accept and reject the Plan; (vi) any Ballot transmitted by facsimile, email, or other electronic means not specifically approved pursuant to the Disclosure Statement Order; (vii) any

7

Ballot sent to any of the Debtors, the Debtors' agents or representatives, or the Debtors' advisors (other than the Claims, Noticing, and Solicitation Agent); and (viii) any Ballot submitted by any Entity not entitled to vote pursuant to the procedures described herein;

t.    after the Voting Deadline, no Ballot may be withdrawn or modified without the prior written consent of the Debtors or further order of the Court;

u.    the Debtors are authorized to enter into stipulations with the Holder of any Claim agreeing to the amount of a Claim for voting purposes; and

v.    where any portion of a single Claim has been transferred to a transferee, all holders of any portion of such single Claim will be (a) treated as a single creditor for purposes of the numerosity requirements in section 1126(c) of the Bankruptcy Code (and for the other solicitation and voting procedures set forth herein) and (b) required to vote every portion of such Claim collectively to accept or reject the Plan.  In the event that (a) a Ballot, (b) a group of Ballots within a Voting Class received from a single creditor, or (c) a group of Ballots received from the various Holders of multiple portions of a single Claim or partially reject and partially accept the Plan, such Ballots shall not be counted.

5.    Amendments to the Plan and Solicitation and Voting Procedures.

The Debtors reserve the right to make non-substantive or immaterial changes to the Plan, Disclosure Statement, Disclosure Statement Hearing Notice, Confirmation Hearing Notice, Solicitation Packages, Non-Voting Status Notices, Ballots, Publication Notice, Cover Letter, the Committee Letter, these Solicitation and Voting Procedures, Plan Supplement Notice, Assumption and Assignment Notice, Rejection Notice, and any related documents without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the any materials in the Solicitation Packages before distribution.

*        *        *        *        *

8

# **Exhibit D**



**October 24, 2022**

<u>Subject</u>:  Summary of the Plan, Information Regarding Certain Key Dates, and Certain Other Matters

Dear Stakeholders,

You are receiving this letter because you are entitled to vote on the Debtors' Plan, an important step in the return of value to you and other stakeholders.  This letter and the materials enclosed concern the proposed sale of substantially all the assets of Voyager Digital Holdings, Inc. and its affiliated Debtors to FTX US, following the Debtors' July 5, 2022 voluntary filing of these Chapter 11 Cases.  Your vote to accept or reject the Plan must be received by November 29, 2022, at 4:00 p.m. prevailing Eastern Time.  Instructions on how to vote are included in this Solicitation Package.

As described below and in the Plan and Disclosure Statement also enclosed, the Debtors believe that the sale to FTX US is in the best interest of all stakeholders and, ultimately, is the best possible transaction available.  Holders of Account Holder Claims and Holders of each class of General Unsecured Claims will receive significantly more consideration for their Claims under the Plan than in a liquidation.  As such, Voyager Digital Holdings, Inc. (on behalf of itself and each of the other Debtors) urge you to properly and timely submit your Ballot, in advance of the November 29, 2022 deadline, with a vote to accept the Plan.  Further details and instructions regarding how to get additional information appear on the following pages.

# # #

Voyager Digital Holdings, Inc. and its affiliated debtors and debtors in possession (collectively, the "<u>Debtors</u>")[1] each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Southern District of New York (the "<u>Court</u>") on July 5, 2022 (collectively, the "<u>Chapter 11 Cases</u>").

You have received this letter and the enclosed materials because you are entitled to vote on the *Second Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as modified, amended, or supplemented from time to time, the "<u>Plan</u>").[2]  On October 21, 2022, the Court entered an order [Docket No. 586] (the "<u>Disclosure Statement Order</u>"):  (a) authorizing the Debtors to solicit acceptances for the Plan; (b) approving the *First Amended Disclosure Statement for the Second Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as modified, amended, or supplemented from time to time, the "<u>Disclosure Statement</u>") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "<u>Solicitation Package</u>"); and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan, and for filing objections to the Plan.

The materials in the enclosed Solicitation Package are intended to be self-explanatory.  Should you have any questions, however, please feel free to contact Stretto, Inc., the claims, noticing, and solicitation agent retained by the Debtors in these chapter 11 cases (the "<u>Claims, Noticing, and Solicitation Agent</u>"), by:  (a) calling the Claims, Noticing, and Solicitation Agent at (855) 473-8665 (Toll Free) or +1 (949) 271-6507 (International), (b) writing to the Claims, Noticing, and Solicitation Agent at Voyager Inquiries, c/o Stretto 410 Exchange, Suite 100 Irvine, CA 92602, or (c) e-mailing the Claims, Noticing, and Solicitation Agent at <u>VoyagerInquiries@stretto.com</u> with a reference to "In re

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

Voyager - Solicitation Inquiry" in the subject line.  You may also obtain copies of any pleadings filed with the Court for free by visiting the Debtors' restructuring website, https://cases.stretto.com/Voyager/, or for a fee via PACER at http://pacer.psc.uscourts.gov.  Please be advised that the Claims, Noticing, and Solicitation Agent is authorized to answer questions about, and provide additional copies of, solicitation materials, but may **not** advise you as to whether you should vote to accept or reject the Plan.

As described herein and in the Plan and Disclosure Statement, the Debtors believe that the sale to FTX US is in the best interest of stakeholders and, ultimately, is the most value-maximizing transaction available to the Debtors. **Account Holders and each class of General Unsecured Creditors will receive significantly more consideration on account of their claims under the Plan than they would in a liquidation**:

| Class | Claim or Interest | Amount of Allowed Claims (in $mm) | Plan Recovery | Liquidation Recovery |
|---|---|---|---|---|
| 1 | Secured Tax Claims | $0.0 | N/A | N/A |
| 2 | Other Priority Claims | $0.0 | N/A | N/A |
| 3 | Account Holder Claims | $1,763.9 | 72% | 51 - 60% |
| 4 | Alameda Loan Facility Claims | $75.1 | 0% | 6% |
| 5A | OpCo General Unsecured Claims | $12.1 | 72% | 51% - 60% |
| 5B | HoldCo General Unsecured Claims | $0.0 | 0% | 0% - 0% |
| 5C | TopCo General Unsecured Claims | $2.3 | 0% | 0% - 0% |
| 6 | Section 510(b) Claims | N/A | N/A | N/A |
| 7 | Intercompany Claims | $6.3[3] | 8% | 4%-5% |
| 8 | Intercompany Interests | $0 | 0% | 0% |
| 9 | Existing Equity Interests | $0 | 0% | 0% |

**I. The Sale Transaction**

On September 26, 2022, the Debtors announced that, after multiple rounds of bidding in a highly competitive auction process that lasted two weeks, they selected West Realm Shires Inc. ("FTX US") as the highest and best bid for their assets.  FTX US's bid is valued at approximately $1.422 billion, comprised of (i) the fair market value of all Voyager cryptocurrency at a to-be-determined date in the future, which at current market prices as of September 26, 2022 is estimated to be $1.311 billion, plus (ii) additional consideration that is estimated as providing approximately $111 million of incremental value. The Debtors and FTX US executed an asset purchase agreement (the "Asset Purchase Agreement") memorializing the terms of FTX US's bid on September 27, 2022.

On September 28, 2022, the Debtors filed *Debtors' Motion for Entry of An Order (I) Authorizing Entry Into the Asset Purchase Agreement and (II) Granting Related Relief* [Docket No. 472] (the "Asset Purchase Agreement Motion"). The Asset Purchase Agreement Motion sought approval from the Court to enter into the Asset Purchase Agreement and effectuate the sale transaction through a chapter 11 plan of reorganization.  On October 20, 2022, the Court entered an order approving the Debtors' entry into the Asset Purchase Agreement.

---

[3]    The recovery to Intercompany Claims reflects the assumption for purposes of the recovery analysis that the Intercompany Obligation by HoldCo to TopCo under the Promissory Note is a valid loan and all other Intercompany Obligations are capital contributions.  The Intercompany Obligations and the analysis related thereto are described in greater detail in Article V.C.2 of the Disclosure Statement.

The Debtors believe that the sale to FTX US contemplated by the Asset Purchase Agreement and the Plan is a success for the Debtors and their creditors. The sale transaction maximizes value and minimizes the remaining duration of the Debtors' restructuring by providing a clear path forward for the Debtors to consummate a chapter 11 plan and return value to their customers and other creditors. FTX US's secure trading platform will enable customers to trade and store cryptocurrency after the conclusion of these Chapter 11 Cases.

**II. Plan.**

The Court's order approving the Asset Purchase Agreement only approves entry into the Asset Purchase Agreement. The transactions contemplated by the Asset Purchase Agreement (including distributions to Account Holders) will be effectuated pursuant to the Plan.

The Plan provides, among other things, that upon the Effective Date:

- All Administrative Claims, Priority Tax Claims, Secured Tax Claims, and Other Priority Claims shall be paid in full in Cash, or receive such other customary treatment that renders such Claims Unimpaired under the Bankruptcy Code;

- Each Holder of an Allowed Account Holder Claim shall receive in exchange for such Allowed Account Holder Claim (i) its Pro Rata share of Transferred Cryptocurrency Value, in Cryptocurrency or Cash as provided in the Customer Migration Protocol; (ii) the right to become a Transferred Creditor as provided in the Customer Migration Protocol; (iii) its Pro Rata share of Distributable OpCo Cash; and (iv) to effectuate distributions from the Wind-Down Entity, its Pro Rata share of the Wind-Down Trust Units (if applicable) on account of any recovery of Wind-Down Trust Assets attributable to OpCo; *provided* that any distributions on account of Wind-Down Trust Units shall only be made following payment in full of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Secured Tax Claims, and Allowed Other Priority Claims;

- Each Holder of an Allowed OpCo General Unsecured Claim will receive in exchange for such Allowed OpCo General Unsecured Claim (i) its Pro Rata share of Transferred Cryptocurrency Value, in Cryptocurrency or Cash as provided in the Customer Migration Protocol; (ii) the right to become a Transferred Creditor as provided in the Customer Migration Protocol; (iii) its Pro Rata share of Distributable OpCo Cash; and (iv) to effectuate distributions from the Wind-Down Entity, its Pro Rata share of the Wind-Down Trust Units on account of any recovery of Wind-Down Trust Assets attributable to OpCo; provided that any distributions on account of Wind-Down Trust Units shall only be made following payment in full of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Secured Tax Claims, and Allowed Other Priority Claims;

- Each Holder of an Allowed HoldCo General Unsecured Claim will receive in exchange for such Allowed HoldCo General Unsecured Claim (i) its Pro Rata share of Distributable HoldCo Cash and (ii) to effectuate distributions from the Wind-Down Entity, its Pro Rata share of the Wind-Down Trust Units (if applicable) on account of any recovery of Wind-Down Trust Assets attributable to HoldCo; provided that any distributions on account of Wind-Down Trust Units shall only be made following payment in full of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Secured Tax Claims, and Allowed Other Priority Claims;

- Each Holder of an Allowed TopCo General Unsecured Claim will receive in exchange for such Allowed TopCo General Unsecured Claim (i) its Pro Rata share of Distributable TopCo Cash and (ii) to effectuate distributions from the Wind-Down Entity, its Pro Rata share of the Wind-Down Trust Units (if applicable) on account of any recovery of Wind-Down Trust Assets attributable to TopCo; provided that any distributions on account of Wind-Down Trust Units shall only be made following payment in full of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Secured Tax Claims, and Allowed Other Priority Claims;

- Pursuant to the Asset Purchase Agreement, on the Effective Date, the Alameda Loan Facility Claims shall be deemed Allowed, and all rights, titles, and interests in the Alameda Loan Facility Claims shall be conveyed to OpCo, and OpCo shall be entitled to any recovery on account of the Alameda Loan Facility Claims.  The treatment of Class 4 Alameda Loan Facility Claims is contractually settled pursuant to the Asset Purchase Agreement; and

- Each Holder of Existing Equity Interests or Section 510(b) Claims against TopCo, if any, will receive, to effectuate distributions, if applicable, from the Wind-Down Entity, its Pro Rata share of the Wind-Down Trust Units (if applicable) on account of any recovery of Wind-Down Trust Assets attributable to TopCo, *provided* that any distributions on account of Wind-Down Trust Units shall only be made following payment in full of all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Secured Tax Claims, Allowed Other Priority Claims, and Allowed TopCo General Unsecured Claims.

The following chart summarizes the classification of Claims and Interests set forth in the Plan and indicates whether such class is entitled to vote on the Plan:

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Secured Tax Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | Account Holder Claims | Impaired | Entitled to Vote |
| 4 | Alameda Loan Facility Claims | Impaired | Entitled to Vote |
| 5A | OpCo General Unsecured Claims | Impaired | Entitled to Vote |
| 5B | HoldCo General Unsecured Claims | Impaired | Entitled to Vote |
| 5C | TopCo General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 7 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) |
| 8 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) |
| 9 | Existing Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

## II. The Solicitation Package

This letter is part of your Solicitation Package, which was approved by the Court for distribution to Holders of Claims in connection with the solicitation of votes to accept or reject the Plan.  Please review these materials carefully and follow instructions contained therein.  The Solicitation Package consists of the following:

- a copy of the Solicitation and Voting Procedures;

- the applicable form of Ballot;

- a pre-addressed, postage pre-paid return envelope for Holders of Claims in Class 5A (OpCo General Unsecured Claims), Class 5B (HoldCo General Unsecured Claims), and Class 5C (TopCo General Unsecured Claims);[4]

- this cover letter;

- the Committee Letter;

- the Disclosure Statement (and exhibits thereto, including the Plan);

- the Disclosure Statement Order (without exhibits, except the Solicitation and Voting Procedures); and

- the Confirmation Hearing Notice.

If you have any questions regarding your Solicitation Package, please do not hesitate to reach out to the Claims, Noticing, and Solicitation Agent.

### III. Key Upcoming Dates

The Deadline to vote to accept or reject the Plan is **November 29, 2022 at 4:00 p.m. prevailing Eastern Time**. **You must submit your Ballot per the instructions included in your Ballot by November 29, 2022 at 4:00 p.m. prevailing Eastern Time**.

After votes on the Plan are counted, the Court will hold a hearing to confirm the Plan (the "Confirmation Hearing"). The Confirmation Hearing will be held on **December 8, 2022, at 11:00 a.m.** prevailing Eastern Time. If the Court confirms the Plan at the Confirmation Hearing, the Debtors will seek to effectuate the Plan, consummate the sale of substantially all of the Debtors' assets, and distribute value to Holders of Account Holder Claims, Holders of each class of General Unsecured Claims, and other creditors.

### III. Recommendation

Voyager Digital Holdings, Inc. (on behalf of itself and each of the other Debtors) has approved the filing of the Plan and the solicitation of votes to accept or reject the Plan. The Debtors believe that the acceptance of the Plan is in the best interests of their estates, Holders of Claims or Interests, and all other parties in interest. The Debtors believe that any valid alternative to confirmation of the Plan would result in significant delays, litigation, additional costs, and, ultimately, might result in smaller distributions (or no distributions) on account of Claims asserted in these chapter 11 cases.

---

**THE DEBTORS STRONGLY URGE YOU TO PROPERLY AND TIMELY SUBMIT YOUR BALLOT CASTING A VOTE TO ACCEPT THE PLAN IN ACCORDANCE WITH THE INSTRUCTIONS IN YOUR BALLOT.**

**THE VOTING DEADLINE IS NOVEMBER 29, 2022, AT 4:00 P.M. PREVAILING EASTERN TIME.**

---

Sincerely,

*/s/ Stephen Ehrlich*
Name: Stephen Ehrlich
Title: Co-Founder and Chief Executive Officer
Voyager Digital Holdings, Inc.

---

[4]    Holders of Account Holder Claims shall submit their votes electronically through the Claims, Noticing, and Solicitation Agent's online ballot portal. Please refer to your Ballot for detailed instructions on how to submit your vote.

# **Exhibit E**

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**of Voyager Digital Holdings, Inc.,** *et al.*

Case No. 22-20943 (MEW)
in the United States Bankruptcy Court
for the Southern District of New York

c/o McDermott Will & Emery LLP
One Vanderbilt Avenue
New York, NY 10017-3852

To:    Customers and Creditors of Voyager Digital Holdings, Inc., *et al.*,

## I.    Introduction

The Official Committee of Unsecured Creditors (the "UCC") was appointed by the United States Trustee to represent the interests of all unsecured creditors in the chapter 11 bankruptcy cases (the "Bankruptcy Cases") of Voyager Digital Holdings, Inc., *et al.* (collectively, "Voyager"). We write to advise you of the UCC's position regarding Voyager's revised chapter 11 plan filed on October 24, 2022 (the "Plan").[1] The deadline to vote on whether to accept or reject the Plan is November 29, 2022 (the "Voting Deadline"). On December 8, 2022, the Bankruptcy Court will hold a hearing to consider confirmation of the Plan (the "Confirmation Hearing"). For the reasons set forth below, the UCC recommends that you ***vote to accept the Plan*** and ***opt-in*** to contributing your direct claims to the Wind-Down Entity.

The UCC's primary focus is getting the maximum amount of fiat and crypto returned to creditors as quickly as possible. Maximizing value is not only limited to recovering the greatest amount possible, but also to preserving the amounts that are currently available. Every decision in these Bankruptcy Cases involves your assets because each decision risks the depletion of funds that would otherwise be distributed to you.

## II.    How Did the Settlement Come About?

The UCC has been faced with many difficult decisions throughout the course of these Bankruptcy Cases. Each decision has been made after thorough analysis, research, and discourse to ensure that both sides of each decision have been properly vetted. The UCC's decision with respect to the releases set forth in the Plan was one of the most difficult. The releases contained in the Plan, as described in more detail below, release (in part) Voyager's claims against its directors and officers. Importantly, the releases in the Plan do NOT release, diminish, or in any way affect any claims you, government regulators, or any other third parties may have against Voyager's directors and officers. As you all know, the UCC is comprised of individuals who like you lost substantial amounts of cryptocurrency because of Voyager and those operating Voyager. As you all read in the objection that we filed to Voyager's disclosure statement, the UCC intended to vigorously object to the release of these individuals (collectively, the "Released Parties") from

---

[1]    All documents filed in Voyager's bankruptcy cases are available free of charge at https://cases.stretto.com/voyager/court-docket/. The Plan is available at Docket No. 590.

liability for their actions. It was the UCC's position then, and now, that if the individuals want to be released, then they need to pay for it.

By the same token, the UCC is not going to engage in contentious, expensive, and time-consuming legal battles that drain estate resources and delay your recoveries. The time for gambling with your money is over. Accordingly, the UCC conducted an investigation to determine the most efficient and effective resolution of potential claims against Voyager insiders, including Stephen Ehrlich, Voyager's Chief Executive Officer (CEO), and others.

A special committee of independent directors of Voyager (the "Special Committee") was appointed to investigate claims that Voyager may have against Ehrlich and other insiders. The Special Committee, in turn, hired the law firm of Quinn Emmanuel to conduct an investigation into any such claims. The UCC conducted its own investigation of the claims on behalf of creditors. The UCC investigation revealed that Ehrlich and Voyager's Chief Commercial Officer (CCO) were extremely careless in their investigation of Three Arrows Capital's (3AC) creditworthiness and thus, in their decision to loan almost $1 billion of Voyager assets to 3AC. As a result, the UCC has concluded that the Debtors have valid and substantial claims against Ehrlich and the CCO for breach of their duties of care relating to their role in approving Voyager's ill-fated loans to 3AC.[2]

To ensure that pursuing litigation against Ehrlich is a worthwhile use of resources, however, the Special Committee and the UCC investigated Ehrlich's and the CCO's personal finances to determine the extent of their assets that would be available to pay a judgment if the Wind-Down Entity (as defined in the Plan), which will be governed by a trustee selected by the UCC, successfully prosecuted Voyager's claims against them. In connection with that investigation, both individuals provided written financial disclosures attesting to their assets under penalty of perjury. According to those financial statements, neither Ehrlich nor the CCO currently have substantial assets that would justify the uncertainty and expense of protracted litigation over confirmation of the Plan. Ehrlich's assets are approximately $2.7 million (inclusive of his home), which is likely *less* than the combined legal costs Voyager's estates would incur if the UCC objects to the settlement and releases and Voyager and the Special Committee defend them. In other words, the depletion of assets that would otherwise be available to distribute to creditors is greater than the amount creditors stand to collect if the Wind-Down Entity brought claims against Ehrlich, and they succeed.

In light of the limited collectability, the Special Committee and its counsel negotiated a settlement with Ehrlich and the CCO. In connection with those discussions, the UCC insisted that even if Ehrlich's assets were as limited as he represented in his sworn disclosures, he should not be given a release without making a settlement payment for the benefit of creditors that represents a significant portion of his assets. The proposed settlement reflected in the Plan, though insignificant from the standpoint of the damages caused, does require Ehrlich to pay $1.125 million, which amount represents more than 40% of his assets. Importantly, despite the settlement, the Wind-Down Entity will retain the right to prosecute claims against Ehrlich and the CCO for their role in the 3AC loan, but the recovery is limited to amounts available under applicable D&O insurance policies. Thus, although Voyager is foregoing further claims against Ehrlich's and the

---

[2]    Background regarding the relationship between Voyager and 3AC and Voyager's loan to 3AC can be found beginning on page 36 of Voyager's First Amended Disclosure Statement available at Docket No. 591.

CCO's personal assets, Voyager's rights to sue them have been preserved, albeit capped at the insurance policies.

Moreover, the settlement requires Ehrlich and the CCO to forgo and subordinate any rights they have to the proceeds of the second of Voyager's two $10 million policies (the "Second 10m Policy"). Unlike the earlier $10 million policy, the Second 10m Policy was taken out shortly before the Bankruptcy Cases were filed at a time in which Voyager was insolvent. The UCC believes that the Wind-Down Entity can bring an avoidance action to recover for the benefit of creditors the $10 million Voyager paid to the insurer under that policy. The settlement makes that recovery far more likely.

Further, the settlement requires Ehrlich to subordinate prepetition claims he has against Voyager such that all of your claims must get paid first *in full* before he can recover one dime on any of his prepetition claims. The claims subject to such subordination include his claims for the return of assets that he personally had on the Voyager platform that, like yours, were frozen shortly before the Bankruptcy Cases. The CCO will subordinate half of such claims. Further, both Ehrlich and the CCO agree to certain subordination provisions for indemnification of their legal fees they may otherwise have against Voyager. The UCC insisted on these rights to ensure that Ehrlich receives nothing unless and until you receive everything you lost.

Be assured, Ehrlich's apparent lack of wealth was surprising to the UCC as much as it must be surprising to many of you. There have been numerous reports by the media stating that Ehrlich personally made around $37 million (Canadian) from sales of Voyager's stock last year. During the course of our ongoing investigation, however, we were advised that very little of those proceeds went to Ehrlich personally. Ehrlich was only one of several owners of the consulting company that received the proceeds. That said, although we appreciate the Special Committee and its counsel have satisfied themselves that Ehrlich's financial statements are accurate, the UCC has indicated that between now and the Confirmation Hearing, it intends to vigorously continue its investigation into the accuracy of the financial disclosures by, among other things, interviewing Ehrlich and the CCO, as well as obtaining confirmatory documentation. The UCC will also investigate transfers that Ehrlich made to anyone. If the UCC determines Ehrlich's or the CCO's financial disclosures are not accurate or are misleading – for example, that Ehrlich is hiding assets that could be reached by a judgment against him – the UCC will advise you of this and will promptly pull its support for the releases and settlement contained in the Plan.

As an additional measure of protection for creditors, the UCC negotiated for the Plan to provide an "out" in case the financial disclosures we received prove untrue. Indeed, the Plan states that if a court determines at any point in the future that the financial disclosures we relied upon in agreeing to the settlement are materially inaccurate, the releases of Ehrlich and the CCO shall become void and ineffective – meaning one or both can be sued personally by the Wind-Down Entity on the precise claims that were otherwise released. It is the combination of this protection and the additional investigation we will undertake that gives the UCC confidence in the settlement reached.

If the UCC's investigation confirms the accuracy of the financial disclosure statements, the UCC has decided not to object to the settlement or the releases because, as set forth in greater

detail below, the benefits of the settlement outweigh the costs. For that reason, as well as the reasons set forth below, the UCC encourages you to **vote to accept the Plan**.

### III.    What are the Terms of the Settlement?

Before addressing why we believe the settlement is in your best interests (putting aside strong personal feelings towards those being released), we wanted to provide a brief bullet point summary of the material terms of the settlement. In exchange for Voyager releasing certain claims that can be brought against the Released Parties:

- Ehrlich shall pay $1.125 million, and contribute any tax refund he may be entitled to receive on account of the $1.125 million for the benefit of creditors;
- 3AC claims against Ehrlich and the CCO may still be prosecuted, but they shall be paid solely from the applicable D&O insurance policies;
- Any indemnification claims asserted by Ehrlich and the CCO are subject to certain subordination restrictions to creditor claims;
- Any prepetition claim by Ehrlich against Voyager shall be subordinated in full to creditor claims;
- Any prepetition claim by the CCO for assets he personally has on the Voyager platform will be subordinated in part (half) to creditor claims;
- Ehrlich and the CCO shall not make any claims against the Second 10m Policy, thereby allowing the Wind-Down Entity to attempt to clawback the recently paid $10 million premium from the insurance company; and
- If the financial disclosure statements that were provided by Ehrlich or the CCO are ever adjudicated to have been materially inaccurate, the releases given to them become void and their personal assets thus become subject to any judgment against them.

### IV.    Why Should I Approve of the Settlement?

As an initial matter, the UCC is not happy that Ehrlich is only paying $1.125 million. However, assuming the financial statements are accurate, that $1.125 million represents approximately 60% of Ehrlich's net worth if you do not include his house and 40% of his net worth if you do. If the UCC objects to the settlement and succeeds, it is unclear whether a $1.125 million recovery is possible later, after protracted litigation. There is also a possibility that Ehrlich files for bankruptcy before that date, which would likely result in no recovery for creditors. The UCC is not going to gamble with your assets in an attempt to draw blood from a stone. Doing so would be throwing good money after bad money.

With that said, the individual payment is the least important aspect of the settlement. The critical benefit for creditors is the preservation of (i) assets to be recovered (i.e., insurance policies) and (ii) current assets (i.e., avoiding costly litigation).

**First**, as part of the settlement, the Wind-Down Entity (and therefore, creditors) may benefit from the Second 10m Policy without risk that Ehrlich or the CCO will deplete such policy by filing claims to cover their personal litigation defense costs before the Wind-Down Entity has the opportunity to avoid and recover the $10 million premium paid for the policy. The value preserved through this component of the settlement is up to $10 million. Importantly, if the

settlement fails, that $10 million will be depleted by Ehrlich and others as they defend against the same claims that are being released.

**Second**, reaching a resolution preserves a substantial amount of resources by avoiding protracted litigation over Plan confirmation. Absent a settlement, the UCC intended to object to the releases set forth in the Plan, take depositions, and present witnesses and experts at trial. The Confirmation Hearing would be heavily contested resulting in significant legal fees being incurred and likely a significant extension of time before cryptocurrency and fiat are returned to creditors. Moreover, if the UCC's objections were successful, then the Plan would not be able to be confirmed with the inclusion of the releases. Although the Court could approve the Plan if the releases are removed, Voyager would not have been required to move forward with that result. Instead, Voyager could have simply withdrawn the Plan, which would put the FTX transaction and an expeditious exit from chapter 11 at risk and certainly would have delayed the return of the creditors' monies. The settlement avoids these costly delays and risks that would only serve to reduce and further delay creditor recoveries.

The UCC is tasked with objectively making decisions to increase creditor recoveries, no matter how difficult those decisions are to stomach. The settlement between Voyager, the Special Committee, Ehrlich, and the CCO preserves millions in assets for creditors. If the settlement fails, there is significant risk that creditors will not receive any benefit from these individuals or Voyager's insurance policies, while at the same time incurring substantial litigation costs. It is this cost-benefit analysis guiding the UCC's decision to agree to the settlement.

However, as stated above, the UCC will investigate the accuracy of the sworn financial statements because of the disclosures contained therein are false, the releases **will be void**.

## V.    Contributed Third Party Claims

As an additional benefit of the settlement, Voyager has agreed to include a mechanism for creditors to contribute direct claims to the Wind-Down Entity that they may have against third parties that are affiliated with Voyager and that harmed creditors. Specifically, the ballots that creditors receive to vote on the Plan will include an option to "opt in" to contributing their direct claims to the Wind-Down Entity.

As you know, the UCC conducted an investigation into the Released Parties. The investigation, however, did not include an investigation into claims Voyager and creditors may have against other third parties. Upon the effective date of the Plan, the Wind-Down Entity will conduct an investigation into these third parties. Although the Wind-Down Entity will have standing to pursue causes of action held by Voyager, causes of action held individually by creditors will not be included. If creditors contribute their direct claims against third parties to the Wind-Down Entity, the Trust will have the ability to bolster its causes of action against third parties and create a better chance at a larger recovery for creditors. Accordingly, the UCC strongly encourages creditors to "opt in" to contributing their direct claims so that the Wind-Down Entity can prosecute those claims on your behalf.

## VI.    Why Should I Accept the Plan?

The Plan must be confirmed to ensure that creditors receive distributions in the greatest amount and as quickly as possible. The Plan accomplishes this goal. The UCC fully supports the FTX transaction, which was selected after an extensive marketing and auction process, because the UCC believes that its consummation will maximize recoveries to creditors in the most timely, efficient, and effective manner.

If the Plan is not confirmed, there is risk of delay and a significant reduction to creditor recoveries. That is not a result that the UCC supports.

\*\*\*

For the foregoing reasons, the UCC, urges you to ***vote to accept*** the Plan and ***opt-in*** to contributing your direct claims to the Wind-Down Entity.

Sincerely,

***The Official Committee of
Unsecured Creditors***

# **<u>Exhibit F</u>**

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**BALLOT FOR VOTING TO ACCEPT OR REJECT**
**THE SECOND AMENDED JOINT PLAN OF VOYAGER DIGITAL HOLDINGS, INC.**
**AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**CLASS 3 HOLDERS OF ACCOUNT HOLDER CLAIMS**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**

**THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE CLAIMS, NOTICING, AND SOLICITATION AGENT BY NOVEMBER 29, 2022, AT 4:00 P.M., PREVAILING EASTERN TIME (THE "VOTING DEADLINE").**

---

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), are soliciting votes in accordance with title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), to accept or reject the *Second Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, supplemented, or otherwise modified from time to time, the "Plan"),[2] attached as Exhibit A to the *First Amended Disclosure Statement for the Second Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Disclosure Statement") from Holders of Account Holder Claims, Alameda Loan Facility Claims, OpCo General Unsecured Claims, HoldCo General Unsecured Claims, and TopCo General Unsecured Claims (each, a "Voting Class" and collectively, the "Voting Classes").

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]    Capitalized terms not otherwise defined herein shall have the meaning given to them in the Plan.

1

Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein. A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims in that Voting Class votes to accept the Plan. The Court may confirm the Plan, which contemplates effectuating the Restructuring Transactions, if the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code, and the Plan then would be binding on all Holders of Allowed Claims in the Voting Classes, among others.

You are receiving this ballot (this "Ballot") because you are the Holder of a Class 3 Account Holder Claim in the Plan as of **October 19, 2022** (the "Voting Record Date"). **For additional discussion of the treatment of Class 3 Claims under the Plan and the rights of Holders of Class 3 Claims under the Plan, please read the Disclosure Statement.**

The rights and treatment for each Class are described in the Disclosure Statement, which is included in the package (the "Solicitation Package") you are receiving with this Ballot. If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them from: (a) Stretto, Inc. (the "Claims, Noticing, and Solicitation Agent"), at no charge by: (i) accessing the Debtors' restructuring website at https://cases.stretto.com/Voyager/; (ii) writing to the Claims, Noticing, and Solicitation Agent at Voyager Inquiries, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602; (iii) calling (855) 473-8665 (Toll Free) or +1 (949) 271-6507 (International); or (iv) emailing VoyagerInquiries@stretto.com and referencing "In re Voyager - Solicitation Inquiry" in the subject line; or (b) for a fee via PACER at http://pacer.psc.uscourts.gov.

This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Ballot in error, please contact the Claims, Noticing, and Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

The Court may confirm the Plan and thereby bind all Holders of Claims and Interests. To have your vote count as either an acceptance or rejection of the Plan, you must complete and return this Ballot so that the Claims, Noticing, and Solicitation Agent *actually receives* it on or before the Voting Deadline.

As further described in the Committee Letter, the Committee recommends that you vote to accept the Plan and contribute your third-party claims.

**THE VOTING DEADLINE IS ON NOVEMBER 29, 2022, AT 4:00 P.M., PREVAILING EASTERN TIME.**

Item 1.    **Amount of Class 3 Claims.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of Class 3 Account Holder Claims in the following aggregate principal amount (*please list the number of each type of Cryptocurrency held in your account as of July 5, 2022*):

| |
|---|
| **List of Coins Held on the Debtors' Platform as of the Petition Date** |

Item 2.    **Recovery.**

Pursuant to Article III.B.3 of the Plan, each Holder of an Allowed Account Holder Claim will receive in exchange for such Allowed Account Holder Claim: (i) its Pro Rata share of Transferred Cryptocurrency Value, in Cryptocurrency or Cash as provided in the Customer Migration Protocol; (ii) the right to become a Transferred Creditor as provided in the Customer Migration Protocol; (iii) its Pro Rata share of Distributable OpCo Cash; and (iv) to effectuate distributions from the Wind-Down Entity, its Pro Rata share of the Wind-Down Trust Units (if applicable) on account of any recovery of Wind-Down Trust Assets attributable to OpCo; *provided* that any distributions on account of Wind-Down Trust Units shall only be made following payment in full of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Secured Tax Claims, and Allowed Other Priority Claims.

**Item 3.    Vote on Plan.**

The Holder of the Class 3 Account Holder Claims against the Debtors set forth in Item 1 votes to (please check <u>one</u>):

| | |
|---|---|
| **ACCEPT** (vote FOR) the Plan | **REJECT** (vote AGAINST) the Plan |

**<u>Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1 and Item 3 above.</u>**

**Item 4.    Third-Party Release.**

AS A HOLDER OF A CLASS 3 CLAIM, YOU ARE A "RELEASING PARTY" UNDER THE PLAN IF YOU OPT IN TO THE RELEASES CONTAINED IN THE PLAN.  YOU MAY CHECK THE BOX BELOW TO ELECT TO GRANT THE RELEASE CONTAINED IN ARTICLE VIII.B OF THE PLAN.  YOU WILL BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN <u>ONLY IF</u> (I) THE COURT DETERMINES THAT YOU HAVE THE RIGHT TO OPT IN TO THE RELEASES AND (II) YOU CHECK THE BOX BELOW AND SUBMIT THE OPT IN NOTICE BY THE OPT IN DEADLINE.  YOUR RECOVERY UNDER THE PLAN REMAINS UNAFFECTED WHETHER OR NOT YOU ELECT TO OPT IN TO THE THIRD-PARTY RELEASE.

| | |
|---|---|
| ☐ | **By checking this box, you elect to opt <u>IN</u> to the Third-Party Releases.** |

**Article VIII.B of the Plan contains the following Third-Party Release:**

**Except as expressly set forth in the Plan, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Releasing Parties, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted or assertable on behalf of any of the Debtors, that such Entity would have been legally entitled to assert in its own right (whether individually or collectively or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), their capital structure, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Alameda Loan Facility, the Debtors' out of court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Definitive Documents or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Definitive Documents, the pursuit of consummation of the Plan, the administration and implementation of the Restructuring Transactions, or upon any other act or omission, transaction, agreement, event, or other occurrence related to the Debtors taking place on or before the Effective Date, provided that nothing in Article VIII.B of the Plan shall be construed to release the Released Parties from actual fraud, willful misconduct, or gross negligence as determined by a Final Order.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in Article VIII.B of the Plan, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in Article VIII.B of the Plan is:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good-faith settlement and compromise of such**

**Causes of Action; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; (6) a sound exercise of the Debtors' business judgment; and (7) except to the extent contemplated by Article IV.E and Article IV.F of the Plan, a bar to any of the Releasing Parties or the Debtors or Wind-Down Debtors or their respective Estates or Wind-Down Entity asserting any Cause of Action related thereto, of any kind, against any of the Released Parties or their property.**

Definitions Related to the Debtor Release and the Third-Party Release:

(1)       Under the Plan, "*Released Party*" means, collectively, in each case in its capacity as such:  (a) the Debtors; (b) the Wind-Down Debtors; (c) the Committee, and each of the members thereof; (d) Purchaser and each of its Related Parties; (e) Alameda and each of its Related Parties; (f) each of the Released Professionals; and (g) each of the Released Voyager Employees (subject to the limitations contained in Article IV.E and Article IV.F of the Plan).

(1)       Under the Plan, "*Releasing Party*" means, collectively, in each case in its capacity as such:  (a) the Debtors; (b) the Wind-Down Debtors; (c) the Committee, and each of the members thereof; (d) each of the Released Professionals; (e) each of the Released Voyager Employees; (f) Alameda and each of its Related Parties to the extent Alameda is able to bind such Related Parties; (g)  Purchaser and each of its Related Parties to the extent Purchaser is able to bind such Related Parties; (h) all Holders of Claims that vote to accept the Plan and affirmatively opt into the releases provided by the Plan; (i) all Holders of Claims that vote to reject the Plan and affirmatively opt into the releases provided by the Plan; and (j) all Holders of Claims or Interests that abstain from voting (or are otherwise not entitled to vote) on the Plan and affirmatively opt into the releases provided by the Plan.

<u>**Item 5**</u>.  **Contributed Third-Party Claims.**

Aggregating and contributing your claims to the Wind-Down Entity may enable the pursuit and settlement of such litigation claims in a more efficient and effective manner.  Accordingly, each Holder of a Claim in Class 3 may agree to contribute its Contributed Third-Party Claims to the Wind-Down Entity.

By electing such option on this Ballot, you agree that, subject to the occurrence of the Effective Date and the formation of the Wind-Down Entity, you will be deemed, without further action, (i) to have irrevocably contributed your Contributed Third-Party Claims to the Wind-Down Entity, and (ii) to have agreed to execute any documents reasonably requested by the Debtors or the Wind-Down Entity to memorialize and effectuate such contribution.

**The Committee strongly encourages you to elect to contribute your Contributed Third-Party Claims to the Wind-Down Entity, which will allow the Wind-Down Entity to potentially seek greater recoveries for the benefit of Holders of Claims and Interests.**

> [ ]     **By checking this box, you elect to to contribute your Contributed Third-Party Claims to the Wind-Down Entity.**

Definitions Related to Contributed Third-Party Claims:

Under the Plan, "*Contributed Third-Party Claims*" means all direct Causes of Action that any Contributing Claimant has against any Person (other than a Debtor) that had a direct relationship with the Debtors, their predecessors, or respective affiliates and that harmed such Contributing Claimant in the claimant's capacity as a creditor of Voyager, including (a) all Causes of Action based on, arising out of, or related to the marketing, sale, and issuance of Cryptocurrency that at any point was held or offered on Voyager's platform; (b) all Causes of Action based on, arising out of, or related to the alleged misrepresentation of any of the Debtors' financial information, business operations, or related internal controls; and (c) all Causes of Action based on, arising out of, or related to any alleged failure to disclose, or actual or attempted cover up or obfuscation of, any of the Debtors' conduct prior to the Petition Date; *provided*, *however*, that Contributed

Third-Party Claims do not include (i) any derivative claims of the Debtors; (ii) any direct claims against the Released Parties; (iii) any direct Causes of Action that any Contributing Claimant has against Mark Cuban, Dallas Basketball Limited d/b/a Dallas Mavericks, the National Basketball Association, and any of their Related Parties; or (iv) any direct Causes of Action that any Contributing Claimant, in its capacity as an equity holder of Voyager Digital Ltd., has that are asserted in the currently filed complaint, dated as of July 6, 2022, in the Ontario Superior Court of Justice by Francine De Sousa, against Voyager Digital Ltd., Stephen Ehrlich, Philip Eytan, Evan Psaropoulos, Lewis Bateman, Krisztian Toth, Jennifer Ackart, Glenn Stevens, and Brian Brooks.

**Item 6. Certifications.**

1. The undersigned is (a) the Holder of the Account Holder Claims (Class 3) being voted or (b) the authorized signatory for an entity that is a Holder of such Account Holder Claims;

2. the undersigned has received a copy of the solicitation materials, including the Plan and the Disclosure Statement, and acknowledges that the undersigned's vote as set forth on this Ballot is subject to the terms and conditions set forth therein and herein;

3. the undersigned has cast the same vote with respect to all of its Account Holder Claims (Class 3) in connection with the Plan; and

4. (a) no other Ballot with respect to the same Account Holder Claims (Class 3) identified in Item 1 has been cast or (b) if any other Ballot has been cast with respect to such Account Holder Claims, then any such earlier Ballots are hereby revoked and deemed to be null and void.

**Item 7. Ballot Completion Information.**

Name of Holder: _____

_____

Signature: _____

Signatory Name (if other than the Holder): _____

Title: _____

Address: _____

Email Address: _____

Telephone Number: _____

Date Completed: _____

No fees, commissions, or other remuneration will be payable to any broker, dealer, or other person for soliciting votes on the Plan. This Ballot shall not constitute or be deemed a proof of claim or equity interest or an assertion of a claim or equity interest.

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT IN ACCORDANCE WITH INSTRUCTIONS CONTAINED HEREIN. THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE CLAIMS, NOTICING, AND SOLICITATION AGENT PRIOR TO THE VOTING DEADLINE VIA THE ONLINE VOTING PORTAL AT HTTPS://CASES.STRETTO.COM/VOYAGER/BALLOTING.**

---

**THE VOTING DEADLINE IS NOVEMBER 29, 2022, AT 4:00 P.M., PREVAILING EASTERN TIME.**

**THE CLAIMS, NOTICING, AND SOLICITATION AGENT MUST ACTUALLY RECEIVE THIS CLASS 3 BALLOT ON OR BEFORE THE VOTING DEADLINE.**

---

| Class 3 — Account Holder Claims |
|---|

## INSTRUCTIONS FOR COMPLETING THIS BALLOT

1. The Debtors are soliciting the votes of Holders of Claims with respect to the Plan attached as <u>Exhibit A</u> to the Disclosure Statement. Capitalized terms used in the Ballot or in these instructions (the "<u>Ballot Instructions</u>") but not otherwise defined therein or herein shall have the meanings set forth in the Plan, a copy of which also accompanies the Ballot. **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2. The Plan can be confirmed by the Court and thereby made binding upon the Holders if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one class of Impaired creditors that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code. Please review the Disclosure Statement for more information.

3. This Ballot contains voting options with respect to the Plan.

4. To vote, you <u>MUST</u>: (a) fully complete this Ballot; (b) clearly indicate your decision to accept or reject the Plan in Item 3 of this Ballot; and (c) sign, date, and return this Ballot via the Claims, Noticing, and Solicitation Agent's online voting portal as described more fully below.

   To submit your Ballot via the online voting portal, please visit https://cases.stretto.com/Voyager/balloting and follow the instructions to submit your Ballot.

   **IMPORTANT NOTE: You will need the following information to retrieve and submit your customized E-Ballot:**

   **Unique E-Ballot ID#:** _____

   The Claims, Noticing, and Solicitation Agent's online voting platform is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, e-mail, or other means of electronic transmission will not be counted.

   Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your Ballot. Please complete and submit a Ballot for each E-Ballot ID# you receive, as applicable. Creditors who cast a Ballot using the Claims, Noticing, and Solicitation Agent's online voting portal should <u>NOT</u> also submit a hard copy Ballot.

5. Any Ballot submitted that is incomplete or illegible, indicates unclear or inconsistent votes with respect to the Plan, or is improperly signed and returned will <u>NOT</u> be counted unless the Debtors otherwise determine.

6. To vote, you <u>MUST</u> deliver your completed Ballot so that it is **ACTUALLY RECEIVED** by the Claims, Noticing, and Solicitation Agent on or before the Voting Deadline by one of the methods described above. The Voting Deadline is **November 29, 2022, at 4:00 p.m.** prevailing Eastern Time.

7. Any Ballot received by the Claims, Noticing, and Solicitation Agent after the Voting Deadline will not be counted with respect to acceptance or rejection of the Plan, as applicable, unless the Debtors otherwise determine. No Ballot may be withdrawn or modified after the Voting Deadline without the Debtors' prior consent.

8. Delivery of a Ballot reflecting your vote to the Claims, Noticing, and Solicitation Agent will be deemed to have occurred only when the Claims, Noticing, and Solicitation Agent actually receives the originally executed Ballot (for the avoidance of doubt, a Ballot submitted via the Claims, Noticing, and Solicitation Agent online voting portal shall be deemed to contain an original signature). In all cases, you should allow sufficient time to assure timely delivery.

9.  If you deliver multiple Ballots to the Claims, Noticing, and Solicitation Agent, <u>ONLY</u> the last properly executed Ballot timely received will be deemed to reflect your intent and will supersede and revoke any prior received Ballot(s).

10. You must vote all of your Class 3 Account Holder Claims either to accept or reject the Plan, and may not split your vote.  Further, if a Holder has multiple Claims within Class 3, the Debtors may direct the Claims, Noticing, and Solicitation Agent to aggregate the Claims of any particular Holder within Class 3 for the purpose of counting votes.

11. This Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest, or an assertion or admission of a Claim or an Interest, in the Debtors' Chapter 11 Cases.

12. You should not rely on any information, representations, or inducements made to obtain an acceptance of the Plan that are other than as set forth, or are inconsistent with, the information contained in the Disclosure Statement, the documents attached to or incorporated in the Disclosure Statement, and the Plan.

13. <u>SIGN AND DATE</u> your Ballot.[3]  Please provide your name and mailing address in the space provided on this Ballot if it is different from that set forth on the Ballot or if no address is presented on the Ballot.

14. If your Claim is held in multiple accounts, you may receive more than one Ballot coded for each such account for which your Claims are held.  Each Ballot votes only your Claims indicated on that Ballot.  Accordingly, complete and return each Ballot you receive.

**<u>PLEASE RETURN YOUR BALLOT PROMPTLY</u>**

**<u>IF YOU HAVE ANY QUESTIONS REGARDING THIS CLASS 3 BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE CLAIMS, NOTICING, AND SOLICITATION AGENT AT: (855) 473-8665 (TOLL-FREE) OR +1 (949) 271-6507 (INTERNATIONAL) OR EMAIL VOYAGERINQUIRIES@STRETTO.COM AND REFERENCE "IN RE VOYAGER - SOLICITATION INQUIRY" IN THE SUBJECT LINE.</u>**

---

**THE VOTING DEADLINE IS NOVEMBER 29, 2022, AT 4:00 P.M., PREVAILING EASTERN TIME.**

**THE CLAIMS, NOTICING, AND SOLICITATION AGENT MUST ACTUALLY RECEIVE THIS CLASS 3 BALLOT ON OR BEFORE THE VOTING DEADLINE.**

---

[3]  If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims, Noticing, and Solicitation Agent, the Debtors, the Debtors' counsel, or the Court, must submit proper evidence to the requesting party of authority to so act on behalf of such holder.