**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**STIPULATION AND AGREED ORDER BETWEEN**
**THE DEBTORS AND METROPOLITAN COMMERCIAL BANK**

This stipulation and agreed order (this "Stipulation") is made this 22nd day of December, 2022, by the above-captioned debtors and debtors in possession (collectively, the "Debtors") and Metropolitan Commercial Bank ("MC Bank" and, together with the Debtors the "Parties").

**Recitals**

WHEREAS, on July 5, 2022 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court");

WHEREAS, the Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

WHEREAS, Debtor Voyager Digital Holdings, Inc. ("Voyager") maintains a centralized master operating account at MC Bank (the "Master Operating Account") that funds the Debtors' disbursements, automated-clearing-house ("ACH") transfers, and wires for the Debtors' operating, capital, and general administrative expenses;

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

WHEREAS, Voyager also maintains two "for the benefit of" accounts held at, and maintained by, MC Bank (the "MC FBO Accounts") whereby customers could deposit cash to fund cryptocurrency purchases on the Debtors' platform and request to withdraw cash attributable to the sale of cryptocurrency on the Debtors' platform from the applicable MC FBO Account;

WHEREAS, as of December 21, 2022, the balance of the MC FBO Accounts was approximately $12.7 million, which amount was held across approximately 173,000 individual customers (the "FBO Customers," and the cash held therein by an FBO Customer, such FBO Customer's "FBO Funds");

WHEREAS, customers sometimes seek to reverse their cash deposits after trades have been executed, in which case the customer's bank sometimes attempts to remove the funds from the applicable MC FBO Account and credit the customer's bank account for the original debited amount (each a "Chargeback"), which results in a deficit in the applicable MC FBO Account;

WHEREAS, a reserve was set in the Debtors' Master Operating Account that the Debtors would otherwise be permitted to access to ensure sufficient funds remain in the MC FBO Accounts when customers sought to withdraw cash or initiate Chargebacks (such amount, the "Reserve");

WHEREAS, pursuant to that certain FBO Account Payment Services Agreement, dated June 3, 2019, between Voyager and MC Bank (the "FBO Agreement"), the amount of the Reserve was set at three times the daily ACH debit limit for debit transactions that can be funded to customers' accounts on the Debtors' platform (the "Debit Limit");

WHEREAS, pursuant to a letter dated March 15, 2021, the Debtors and MC Bank agreed (a) to set the Reserve at $24 million in the form of a hold on the Master Operating Account; and (b) that MC Bank would review the amount of the Reserve on an ongoing basis and advise Voyager of any required changes to meet the 2x Debit Limit requirement; and

WHEREAS, the Debtors have requested that MC Bank release the Reserve given the current facts and circumstances, and MC Bank has agreed to do so under the terms and conditions stated herein.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, AND UPON APPROVAL BY THE BANKRUPTCY COURT, IT IS ORDERED AS FOLLOWS:**

1. MC Bank agrees to release and make available to the Debtors $7.5 million of the cash held in the Reserve immediately upon entry of the order approving this Stipulation.

2. The Debtors will inform FBO Customers that they have 30 days following entry of this Stipulation to withdraw their fiat funds from the MC FBO Accounts, as they will be closed 30 days following entry of this Stipulation (the "FBO Closing Date").

3. On the FBO Closing Date, the MC FBO Accounts will be closed, and for any FBO Customer that has not withdrawn their funds, MC Bank will utilize the services of a third-party vendor to process and send a check in the amount of the applicable FBO Customer's FBO Funds to their last known address. MC Bank shall be reimbursed by Voyager for the reasonable and documented cost of the third-party vendor and will have a right of setoff (subject to providing the Debtors with reasonably detailed invoices showing such costs) against the funds remaining in the Reserve to secure such right of reimbursement.

4. On the FBO Closing Date, MC Bank agrees to release and make available to the Debtors the remaining amount held in the Reserve ($16.5 million) less the sum of (x) $1 million (the "Final Reserve"), (y) what MC Bank contends to be its reimbursable fees and expenses under the FBO Agreement and/or the ACH Origination Agreement dated June 9, 2018 (the "ACH Origination Agreement"), which MC Bank has stated is approximately $1.85 million as of December 16, 2022, and (z) solely in the event that the Debtors determine prior to the FBO Closing

Date to open a new account at MC Bank, in accordance with paragraph 6 hereof, $60,000, representing the fee for administering such new account for 6 months. The Debtors shall have ten (10) business days after the presentment to the Debtors of (a) invoices that include time detail with sufficient information to evaluate what was being done and (b) a written explanation with reference to the applicable provisions of the FBO Agreement and/or the ACH Origination Agreement that require the Debtors to reimburse MC Bank for such reimbursable fees to dispute any fees and/or expenses that are not reimbursable under the FBO Agreement or ACH Origination Agreement. If the Debtors and MC Bank are unable to resolve such dispute, such dispute will be set for the next omnibus hearing. If there is no objection within ten (10) business days after such presentment to the Debtors, MC Bank is authorized to apply funds in the Reserve to such reimbursable fees.

5. No later than 90 days following the FBO Closing Date, MC Bank agrees to release and make available to the Debtors the Final Reserve.

6. MC Bank agrees that if the Debtors choose to use MC Bank's services to facilitate the distribution of funds to the Debtors' customers pursuant to a confirmed chapter 11 plan of reorganization or otherwise, then, prior to closing of the MC FBO Accounts, MC Bank will open a new account at MC Bank owned by and titled in the name of the Debtors for such purpose using MC Bank's standard documentation, any changes to which shall be agreed to by MC Bank and the Debtors; *provided* that any such account will be subject to a $10,000 monthly administrative fee.

7. Upon entry of the order approving this Stipulation, the *Debtors' Motion for Entry of an Order (I) Compelling the Release of the Reserve Held by Metropolitan Commercial Bank on Debtors' Bank Account and (II) Granting Related Relief* [Docket No. 690], MC Bank's objection

4

thereto [Docket No. 704], and MC Bank's cross-motion in response thereto [Docket No. 706] shall be deemed resolved in all respects.

8. Nothing in this Stipulation shall constitute or be deemed as: (a) an admission as to the validity of any claim by or against MC Bank; or (b) a waiver or limitation of MC Bank's rights under the Bankruptcy Code or any other applicable law.

9. Nothing in this Stipulation shall constitute or be deemed as: (a) an admission as to the validity of any particular claim by or against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Stipulation; (e) a request or authorization to assume or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law.

10. This Stipulation may be signed in counterparts and signatures may be delivered by fax or email, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Each person who executes this Stipulation on behalf of a Party hereto represents that he or she is duly authorized to execute this Stipulation on behalf of such Party.

11. This Stipulation represents the entire agreement between the Parties in respect of the subject matter hereof and shall not be modified, altered, amended, or vacated without the prior written consent of the Parties. No statement made or action taken in the negotiation of this Stipulation may be used by any party for any purpose whatsoever.

12. Each Party represents and warrants to the other Party that it: (a) made this Stipulation freely and voluntarily and with full knowledge of its significance; and (b) has been

represented by counsel of its own choice in the negotiations preceding the execution of this Stipulation and in connection with the preparation and execution of this Stipulation.

13. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Stipulation are immediately effective and enforceable upon Court approval.

14. The Bankruptcy Court shall retain exclusive jurisdiction to hear any matters or disputes arising from or relating to this Stipulation. Any request for relief brought before the Bankruptcy Court to resolve a dispute arising from or related to this Stipulation, and the matters agreed to herein, shall be brought on proper notice and in accordance with the relevant Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York.

[*Remainder of page intentionally left blank*]

| | |
|---|---|
| Dated: December 22, 2022<br>New York, New York | /s/ *Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>Christopher Marcus, P.C.<br>Christine A. Okike, P.C.<br>Allyson B. Smith (admitted *pro hac vice*)<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:  (212) 446-4800<br>Facsimile:  (212) 446-4900<br>Email:  jsussberg@kirkland.com<br>cmarcus@kirkland.com<br>christine.okike@kirkland.com<br>allyson.smith@kirkland.com<br><br>*Counsel to the Debtors and Debtors in Possession*<br><br>/s/ *Amy R. Wolf*<br>**WACHTELL, LIPTON, ROSEN & KATZ**<br>Richard G. Mason<br>Amy R. Wolf<br>Rosemary Spaziani<br>Angela K. Herring<br>51 West 52nd Street<br>New York, New York 10019<br>Telephone:  (212) 403-1000<br>Facsimile:  (212) 403-2000<br>Email:  rgmason@wlrk.com<br>arwolf@wlrk.com<br>rspaziani@wlrk.com<br>akherring@wlrk.com<br><br>*Counsel to Metropolitan Commercial Bank* |

22-10943-mew    Doc 782    Filed 12/22/22    Entered 12/22/22 17:21:01    Main Document
Pg 8 of 8

**SO ORDERED**

New York, New York
Dated: _____, 2022

                                              THE HONORABLE MICHAEL E. WILES
                                              UNITED STATES BANKRUPTCY JUDGE