<u>Updated</u> **Objection Deadline: January 17, 2023**
**Hearing Date: January 24, 2023 at 11:00 a.m. prevailing Eastern Time**

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000
Mitchell P. Hurley
Dean L. Chapman Jr.
mhurley@akingump.com
dchapman@akingump.com

*Attorneys for Celsius Network LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X
                                                          :
In re:                                                    :          Chapter 11
                                                          :
VOYAGER DIGITAL HOLDINGS, INC., *et al.*,                 :          Case No. 22-10943 (MEW)
                                                          :
                                                          :          Jointly Administered
                                 Debtors.                 :
                                                          :
-------------------------------------------------------------------X

**UPDATED MOTION OF CELSIUS NETWORK LLC FOR ORDER (I) LIFTING THE
AUTOMATIC STAY PURSUANT TO 11 U.S.C. 362(d)(1) AND BANKRUPTCY RULE
4001 AND (II) GRANTING LEAVE TO FILE LATE PROOF OF CLAIM PURSUANT TO
<u>BANKRUPTCY RULES 3003(c) AND 9006(b)(1)</u>[1]**

---

[1] Out of an abundance of caution, this motion has been updated and re-filed to reflect the Court's amended objection deadline of January 17, 2023. *See* So Ordered Joint Stipulation [Docket No. 781]. This updated motion remains unchanged from the motion filed on December 14, 2022 [Docket No. 727] in all other respects.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

JURISDICTION .........................................................................................................................2

BACKGROUND ........................................................................................................................2
    A.    The Voyager Bankruptcy Cases .................................................................2
    B.    The Celsius Bankruptcy Cases....................................................................3
    C.    The Voyager Bar Date Passed While Celsius Was Still Gathering and
           Organizing Information Necessary for its Own Bankruptcy ...................................4
    D.    Celsius Identifies Potential Claim, Meets and Confers with Voyager ....................6

RELIEF REQUESTED AND BASIS FOR RELIEF ....................................................................8
    I.    The Automatic Stay Should Be Lifted to Allow Celsius to Bring an Action
          for Recovery of Preferential Transfers Against Voyager Pursuant to
          Section 547 of the Bankruptcy Code ........................................................9
          A.    The *Sonnax* Factors for Granting a Motion to Lift the Automatic
              Stay .........................................................................................10
          B.    The Applicable *Sonnax* Factors Justify Lifting the Automatic Stay ..........11
    II.    The Court Should Extend Celsius' Time to File a Claim Under Bankruptcy
          Rules 3003(c) and 9006(b)(1)...................................................................14
          A.    The "Excusable Neglect" Standard........................................................15
          B.    An Extension of Celsius' Deadline to File Proof of Claims is
              Warranted ...............................................................................16

NOTICE....................................................................................................................................20

NO PRIOR REQUEST.............................................................................................................21

CONCLUSION .........................................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d. Cir. 1995) ........................................................ 18

*City of New York v. N.Y., N.H. & H.R. Co.*, 344 U.S. 293, 296–97 (1953 .................................... 18

*Eastern Refractories Co. v. Forty Eight Insulations*, 157 F.3d 169, 172 (2d Cir. 1998) ............... 9

*In re AMR Corp.*, 492 B.R. 660, 666 (Bankr. S.D.N.Y. 2013) ................................................. 15, 18

*In re AWMC, Inc.*, 109 B.R. 210, 212 (Bankr. N.D. Tex. 1989) .................................................. 16

*In re Brown*, 311 B.R. 409, 412–13 (E.D. Pa. 2004) ...................................................................... 9

*In re Enron Corp.*, 419 F.3d 115, 128 (2d Cir. 2005) .................................................................. 17

*In re Herman's Sporting Goods, Inc.*, 166 B.R. 581, 584 (Bankr. D.N.J. 1994 ........................... 16

*In re Keene Corp.*, 188 B.R. 903, 913 (Bankr. S.D.N.Y. 1995) .................................................. 16

*In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 121 (Bankr. S.D.N.Y. 2010), aff'd sub nom.
    *CVI GVF (Lux) Master S.a.r.l. v. Lehman Bros. Holdings Inc.*, 445 B.R. 137 (S.D.N.Y. 2011)
    ........................................................................................................................................... 17

*In re Pittsford Polo Club, Inc.*, 188 B.R. 339, 344 (Bankr. W.D.N.Y. 1995) ................................ 9

*In re Project Orange Assocs., LLC*, 432 B.R. 89, 103 (Bankr. S.D.N.Y. 2010) ................. 9, 10, 11

*In re R.H. Macy & Co., Inc.*, 161 B.R. 355, 359 (Bankr. S.D.N.Y. 1993) ................................... 19

*In re Rochester Drug Coop., Inc.*, 620 B.R. 699, 705 (Bankr. W.D.N.Y. 2020) ..................... 12, 14

*In re Shared Techs. Cellular, Inc.*, 293 B.R. 89 (D. Conn. 2003) ................................................ 10

*In re Sonnax Indus.*, 907 F.2d 1280 (2d Cir. 1990) ...................................................................... 10

*In re Sukhu*, Case No. 17-11890 (CGM), 2022 WL 610310, at *7 (S.D.N.Y. Mar. 1, 2022) ........ 11

*In re Thomson McKinnon Securities, Inc.*, 159 B.R. 146, 148 (Bankr. S.D. N.Y. 1993) .............. 19

*In re Wiley*, 288 B.R. 818, 822 (B.A.P. 8th Cir. 2003) ................................................................ 13

*In re Xenon Anesthesia of Texas, PLLC*, 510 B.R. 106, 112 (S.D. Tex. 2014) ............................ 9

*In the Matter of: Sterling United, Inc.*, 674 F. App'x 19, 20 (2d Cir. 2016) ............................... 13

*Krichevsky v. U.S. Bank, N.A.*, 20-CV-2343 (AMD), 2021 WL 9244084 at n.5 (E.D.N.Y. Mar. 22,
    2021) ..................................................................................................................................... 13

*Matter of Papp Int'l, Inc.*, 189 B.R. 944 (Bankr. D. Neb. 1995) ................................................. 16

*Pioneer Investment Services Company v. Brunswick Associates Limited Partnership, et al.*, 507
    U.S. 380 (1993) ........................................................................................................... 15, 16, 18

**STATUTES**

11 U.S.C. § 362(a)(1) ..................................................................................................................... 9

11 U.S.C. § 362(d)(1) ............................................................................................................... 1, 2, 9

1334 ............................................................................................................................................... 2

1409 ............................................................................................................................................... 2

28 U.S.C. § § 1408 ......................................................................................................................... 2

28 U.S.C. § § 157 ........................................................................................................................... 2

28 U.S.C. § 157(b) ......................................................................................................................... 2

Section 547 of the Bankruptcy Code ............................................................................................. 1

**RULES**

4001 ........................................................................................................................................ 1, 2

9006(b)(1) ...................................................................................................................... 1, 2, 15

Rules 3003(c)(3) ................................................................................................................ 1, 2

1. Celsius Network LLC ("Celsius") hereby submits this motion (the "Motion") pursuant to section 362(d)(1) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 3003(c)(3), 9006(b)(1) and 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order (i) lifting the automatic stay to permit commencement of an adversary proceeding against Voyager Digital LLC ("Voyager") to recover preferential transfers and (ii) extending, nunc pro tunc, Celsius' time to file a proof of claim in this action despite passage of the bar date. The Motion is updated solely to reflect the new objection deadline pursuant to the Court's So Ordered Joint Stipulation and Agreed Order signed on December 22, 2022 [Docket No. 781]. In support of this Motion, Celsius respectfully represents as follows:

## PRELIMINARY STATEMENT

2. Both Voyager and Celsius are currently in Chapter 11 reorganization proceedings. They also had a business relationship. Relevant here, Voyager maintained Earn accounts with Celsius, which earned significant rewards for its users. After the Voyager bar date passed, Celsius became aware that Voyager transferred approximately $7.7 million worth of cryptocurrency from its Celsius "Earn" program accounts to so-called "Withhold" program accounts during the 90 days prior to Celsius filing for chapter 11 bankruptcy, and withdrew approximately $5.9 million worth of cryptocurrency from its Withhold accounts. Section 547 of the Bankruptcy Code allows Celsius to claw back that cryptocurrency, and Celsius seeks an order lifting the automatic stay in order to assert such a preference action in its own bankruptcy case. Further, Celsius seeks a nunc pro tunc extension of its time to file a proof of claim. Because Celsius did not receive notice of the Voyager bar date and was otherwise busy processing a massive amount of information for its own bankruptcy, the bar date passed before Celsius became aware of its claim against Voyager.

Accordingly, Celsius asks that this Court grant the limited relief it seeks so that it may pursue its preference action against Voyager and assert a corresponding claim against Voyager in this action. Celsius respectfully submits that such an order would be consistent with the goals and purposes of the Bankruptcy Code and would not interfere with Voyager's bankruptcy action or the rights of any stakeholder therein.[2]

## JURISDICTION

3.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § § 157 and 1334. Venue of these proceedings and this Motion is proper in this district pursuant to 28 U.S.C. § § 1408 and 1409.  This is a core proceeding under 28 U.S.C. § 157(b).

4.      The statutory predicates for the relief sought herein include section 362(d)(1) of the Bankruptcy Code and Rules 3003(c)(3), 9006(b)(1) and 4001 of the Bankruptcy Rules.

## BACKGROUND

### A.      The Voyager Bankruptcy Cases

5.      On July 5, 2022 (the "Petition Date"), Voyager and each of its affiliated debtors (the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Voyager Bankruptcy").  The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b).  On July 19, 2022, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors

---

[2]     Celsius noticed the Motion to be heard on January 24, 2023, the next available omnibus hearing date, in accordance with Paragraphs 1 and 48 of the Case Management Order [No. 22-10943, Docket No. 240] (the "CMO").  For the avoidance of doubt, Celsius acknowledges that it is deemed pursuant to Paragraph 49 of the CMO to have consented to the continuation of the automatic stay pending the conclusion of a final hearing and determination under Bankruptcy Code 362(d) and will not assert the termination of the automatic stay based on Bankruptcy Code section 362(e).

2

(the "Committee").  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

6.      On August 3, 2022, this Court set a bar date of October 3, 2022 for filing unsecured claims in Voyager.  *See Order (I) Setting Deadlines for Submitting Proofs of Claim, (II) Approving Procedures for Submitting Proofs of Claim, and (III) Approving Notice Thereof* [No. 22-10943, Docket No. 218].  Notice of the bar date for Celsius (the "Notice") apparently was sent by Voyager to an incorrect mailing address and, on information and belief, Celsius never received the Notice. *See Affidavit of Service re: Notice of Deadline Requiring Submission of Proofs of Claim, Ex. A* [No. 22-10943, Docket No. 459];  *Declaration of Christopher Ferraro in Support of Motion of Celsius Network LLC for an Order (i) Lifting the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001 and (ii) Granting Leave to File Late Proof of Claim Pursuant to Bankruptcy Rules 3003(c) and 9006(b)(1)* (hereinafter the "Ferraro Decl.") at ¶¶ 6–9 (explaining that: (a) approximately one week before the bar date, Voyager claims to have mailed notice of the bar date to Celsius UK—the wrong entity—instead of Celsius; (b) Voyager mailed that notice to an out of date address in London that Celsius UK no longer occupies; and (c) no Celsius agent or employee ever received the notice).

7.      On November 18, 2022, Voyager filed an amendment to its schedule of assets and liabilities, and gave notice of an extension of the bar date to December 23, 2022 for creditors with a claim arising from that amendment.  *See Amended Schedules* [No. 22-10945, Docket No. 18].

### B.      The Celsius Bankruptcy Cases

8.      Celsius, together with its affiliates, is one of the largest and most sophisticated cryptocurrency-based finance platforms in the world and provides financial services to institutional, corporate, and retail clients across more than 100 countries.  Celsius was created in 2017 to be one of the first cryptocurrency platforms to allow users to transfer their crypto assets

(such transferring customers, the "Users") and (a) earn rewards on such crypto assets and/or (b) take out loans using such transferred crypto assets as collateral.

9.        On July 13, 2022, Celsius and certain of its affiliates and subsidiaries (the "Celsius Debtors") filed voluntary petitions seeking relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Southern District of New York (the "Celsius Bankruptcy").  *See Declaration of Holden Bixler in Support of Motion of Celsius Network LLC Lifting the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001 and (ii) and Granting Relief to File Late Proof of Claims Pursuant to Bankruptcy Rules 3003(c) and 9006(b)(1)* (hereinafter the "Bixler Decl.") at ¶ 6.  The Celsius Bankruptcy cases are being jointly administered for procedural purposes only.  The Celsius Debtors continue to operate their businesses and manage their property as debtors and debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Celsius Bankruptcy cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b).  Celsius retained Alvarez & Marsal North America, LLC ("A&M") to serve as its financial advisor in connection with its chapter 11 case.  *Id*. at ¶¶ 1–2.

### C.        The Voyager Bar Date Passed While Celsius Was Still Gathering and Organizing Information Necessary for its Own Bankruptcy

10.        In connection with its chapter 11 proceedings, Celsius prepared its requisite schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases (collectively, the "Schedules") and statements of financial affairs (the "Statements").  Bixler Decl. at ¶ 6.  To do so, Celsius was required to compile information from books, records, and documents relating to hundreds of thousands of claims, assets, and contracts.  *Id*.  The collection of this necessary information required a significant expenditure of time and effort on the part of Celsius, its employees, and its advisors including

A&M.  *Id*.  The preparation of the Schedules and Statements in the Celsius case was uniquely challenging, including because Celsius filed one of the first crypto bankruptcies, and there is a lack of precedent.  *Id*.

11.    The work done to gather the information began prior to the Petition Date and continued until the ultimate filing of the Schedules and Statements.  *Id*. at ¶ 7.

12.    On July 14, 2022, Celsius sought an extension of time to file its Schedules and Statements.  *Id*. at ¶ 8.  The bankruptcy court granted that motion.  *Id*.  Thereafter, Celsius and A&M continued to identify, gather, analyze, and organize the information required to prepare the Schedules and Statements.  *Id*.  This was an iterative process during which Celsius repeatedly produced revised data sets for A&M to review and analyze.  *Id*.

13.    During this time, Celsius compiled information from books, records, and documents relating to the claims of hundreds of thousands of creditors, many of whom were Celsius customers, as well as Celsius' many assets and contracts.  *Id*. at ¶ 9.  That voluminous information was spread across various locations within Celsius' international organization.  *Id*. Celsius personnel devoted considerable time to locating and gathering the materials, a task made even more challenging by the substantial number of other important activities required by the commencement of the chapter 11 cases, the limited number of employees available to collect the necessary information, the competing demands upon such employees, and the time and attention that Celsius had to devote to the restructuring process.  Ferraro Decl. at ¶ 10.

14.    Because of the complexity of the records and the outstanding motions related to the sealing of personally identifiable information, Celsius requested two additional extensions for filing its Schedules and Statements, the first on August 11, 2022 and the second on September 16,

2022. Bixler Decl. at ¶ 10. The bankruptcy court overseeing Celsius' bankruptcy granted both extensions. *Id*.

15. On October 5, 2022, two days after the Voyager bar date passed, Celsius filed its Schedules and Statements totaling over 30,000 pages. *Id*. at ¶ 11. Celsius' statement of transfers occurring in the 90 days prior to the Petition Date alone contained more than ***three million rows*** of data. *Id*.

**D.    Celsius Identifies Potential Claim, Meets and Confers with Voyager**

16. On November 2, 2022, four weeks after the filing of the Schedules and Statements, A&M was asked about Voyager's withdrawals of crypto assets in the 90 days prior to the filing of Celsius' chapter 11 bankruptcy petition. *Id*. at ¶ 13. The Schedules and Statements indicated that Voyager Digital maintained two accounts with Celsius, both of which included an account in the earn ("Earn") program and a withhold account ("Withhold"), to which Voyager had transferred a significant amount of crypto currencies. *Id*.

17. Through the Earn program, Celsius offers rewards to its Users who transfer their crypto assets to Celsius. *Declaration of Christopher Ferraro, Interim Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer of the Debtors, in Support of the Debtors' Motion Regarding Ownership of Earn Assets and the Sale of Stablecoin* [No. 22-10964, Docket No. 1326] at ¶ 11. Users in the Earn program grant Celsius all rights and title to the crypto assets transferred into the program. *Id*. at ¶ 21. Over time, the User's rewards are credited in the User's Celsius accounts. *Id*. at ¶ 13. A Withhold account, on the other hand, is an account that keeps transfers of assets not supported by the Celsius platform distinct from supported digital asset transfers. *Declaration of Oren Blonstein, Head of Innovation and Chief Compliance Officer of Celsius Network Limited, With Respect to Certain Phase I Issues Pursuant to the Joint Stipulation and Agreed Scheduling Order by and Among the Debtors, the Committee, and the Ad Hoc Groups*

6

*with Respect to the Custody and Withhold Issues* [No. 22-10964, Docket No. 1192] at ¶¶ 5–7. Assets in Withhold accounts are not eligible for the Earn program. *Id*. at ¶ 6. Critically, parties to the Celsius bankruptcy proceedings dispute whether assets held in various Celsius accounts and programs, including Earn program accounts and Withhold accounts, are property of the Celsius Debtors' estate. *See Debtors' Responsive Brief on Phase I Custody and Withhold Issues* [No. 22-10964, Docket No. 1567]. Judge Martin Glenn has already been asked to determine whether Withhold assets transferred from the Earn program are estate property. *Id*.

18.      Relevant to this case, in the 90 days prior to Celsius' bankruptcy, Voyager made multiple transfers of crypto assets from its Earn program accounts to its Withhold accounts and then withdrew most of those crypto assets from its Withhold accounts. Bixler Decl. at ¶¶ 14–15. Specifically, on May 5, 2022, Voyager transferred $474,160.69 worth of cryptocurrency from Earn program accounts to Withhold accounts. *Id*. Later, on May 11, 2022, Voyager transferred $3,774,632.91 worth of cryptocurrency from Earn program accounts to Withhold accounts. *Id*. On May 25, 2022, Voyager transferred $3,451,881.41 worth of cryptocurrency from Earn program accounts to Withhold accounts. *Id*. And between May 11, 2022 and June 6, 2022, Voyager withdrew $5,897,922.02 worth of cryptocurrency from Withhold accounts. *Id*.

19.      Celsius believes that the $7,700,675.01 worth of transfers from Voyager's accounts in the Earn program to the accounts in the Withhold program are likely subject to preference claims by Celsius under section 547 of the Bankruptcy Code. Other withdrawals and transfers may also be subject to challenge.

20.      Because Celsius' bankruptcy case is still at a relatively early stage, Celsius has not yet engaged in a process to identify all potential preferential transactions that occurred in the relevant period. *Id*. at ¶ 12. This is consistent with the normal cadence of complex traditional

chapter 11 cases in which a fulsome analysis to identify preference claims does not typically commence until longer after the filing of the Schedules and Statements. *Id.*

21.     On or around November 5, 2022, Celsius asked Akin Gump to address the potential Voyager preferences as conflicts counsel. *Declaration of Mitchell Hurley in Support of Motion of Celsius Network LLC Lifting the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001 and (ii) and Granting Relief to File Late Proof of Claims Pursuant to Bankruptcy Rules 3003(c) and 9006(b)(1)* (hereinafter the "Hurley Decl.") at ¶ 4.  Thereafter, Akin Gump performed a preliminary investigation on an expedited basis into the relationship between Voyager and Celsius and discovered a potential preference claim that is the basis of the Motion. *Id.*

22.     On November 15, 2022 Akin Gump contacted counsel to Voyager concerning certain of the relief requested in this Motion.  *Id.* at ¶ 5.  After additional conversations with Celsius' counsel, Akin Gump provided a formal letter requesting that Voyager consent to the relief Celsius now seeks, but without the time or expense associated with formal motion practice.  *Id.* Celsius continued to meet and confer with Voyager's counsel after providing the letter, but to date the parties have been unable to reach agreement concerning the relief Celsius seeks.  *Id.*  In the interests of time, Celsius has therefore filed the Motion, though Celsius remains hopeful that a consensual resolution is possible. *Id.*

## RELIEF REQUESTED AND BASIS FOR RELIEF

23.     Celsius respectfully requests that the Court enter an Order (i) lifting the automatic stay in this chapter 11 case to permit Celsius to commence an adversary proceeding in the Celsius chapter 11 case in order to pursue a preference action against Voyager and (ii) extending, *nunc pro tunc*, Celsius' time to file a proof of claim in this action despite passage of the bar date.

I.      **The Automatic Stay Should Be Lifted to Allow Celsius to Bring an Action for Recovery of Preferential Transfers Against Voyager Pursuant to Section 547 of the Bankruptcy Code**

24.     Under the Bankruptcy Code, the filing of a bankruptcy petition automatically stays "the commencement or continuation . . . of a judicial . . . action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy]."  11 U.S.C. § 362(a)(1).  The Bankruptcy Code also provides for the automatic stay to be lifted under certain circumstances.  Section 362(d)(1) provides that "[o]n request of a party in interest . . . the court shall grant relief from the automatic stay . . . by terminating, annulling, modifying, or conditioning such stay . . . (1) for cause, including the lack of adequate protection of an interest in property of such party in interest."  11 U.S.C. § 362(d)(1).

25.     The Bankruptcy Code does not define the phrase "for cause," but courts recognize it as "a broad and flexible concept that must be determined on a case-by-case basis." *In re Project Orange Assocs., LLC*, 432 B.R. 89, 103 (Bankr. S.D.N.Y. 2010) (quoting *In re Brown*, 311 B.R. 409, 412–13 (E.D. Pa. 2004)); *see also Eastern Refractories Co. v. Forty Eight Insulations*, 157 F.3d 169, 172 (2d Cir. 1998) ("[B]ankruptcy courts have the plastic powers to modify or condition an automatic stay so as to fashion the appropriate scope of relief."); *In re Pittsford Polo Club, Inc.*, 188 B.R. 339, 344 (Bankr. W.D.N.Y. 1995) (bankruptcy courts are empowered with "broad discretion to fashion relief from the automatic stay").  Indeed, "[a]llowing a matter to proceed in another forum may constitute cause." *In re Xenon Anesthesia of Texas, PLLC*, 510 B.R. 106, 112 (S.D. Tex. 2014).

26.     And notably, at least one court in this Circuit has used those broad, elastic powers to allow modification of an automatic stay ***in order to allow prosecution of an adversary proceeding between two debtors from two different bankruptcies***—which is exactly the fact pattern that gives rise to this motion. *See, e.g.*, *In re Shared Techs. Cellular, Inc.*, 293 B.R. 89 (D.

Conn. 2003) (finding bankruptcy court's modification of automatic stay to permit debtor in separate bankruptcy to prosecute preference claims in its own bankruptcy case an appropriate exercise of the court's broad powers under section 362).

### A.  The *Sonnax* Factors for Granting a Motion to Lift the Automatic Stay

27.     In determining whether to modify or lift an automatic stay to allow litigation against a debtor to proceed in another forum, courts in this Circuit typically consider the twelve factors set out by the Second Circuit in *In re Sonnax Indus.*, 907 F.2d 1280 (2d Cir. 1990).  Those factors are:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Id.* at 1286.  A court need only apply the factors that are relevant to the particular case, and does not need to give each factor equal weight.  *In re Project Orange Assocs., LLC*, 432 B.R. at 104.

28.     In *In re Shared Techs*, the United States Bankruptcy Court for the District of Connecticut analyzed whether the stay should be lifted in order to allow prosecution of an adversary proceeding between two debtors from two different bankruptcies.  The court explained that lifting the stay was justified because "[w]ithout a stay modification, no further action on the pending litigation is possible," and then lifted the stay for the limited purpose of allowing the movant to proceed in seeking a judgment to recover preferential transfers in an adversary proceeding filed in its own bankruptcy action—which is exactly what Celsius seeks here.  *In re Shared Techs,* 293 B.R at 94..

### B.    The Applicable *Sonnax* Factors Justify Lifting the Automatic Stay

29.    Here, the Court should grant Celsius' motion because the applicable *Sonnax* factors weigh in favor of lifting the automatic stay and none of the factors militate against it.  Specifically, (i) Celsius' preference claims against Voyager are most efficiently litigated in the Celsius action, where legal and factual issues materially similar or identical to issues that will be raised in connection with the Voyager already must be considered and resolved (Factor 10); (ii) the balance of harms favors lifting the stay because Celsius has a preference claim against Voyager, the resolution of which is necessary for the proper adjudication of both Voyager and Celsius' bankruptcy cases (Factor 12); and (iii) because these are discrete claims not connected to a larger issue in Voyager's bankruptcy, there will be no prejudice to other creditors or the broader Voyager restructuring (Factor 7)—whereas leaving the stay in place will continually prejudice Celsius.

Factor 10. Litigation in the Celsius Bankruptcy Serves the Interests of Judicial Economy and the Expeditious and Economical Resolution of Litigation:

30.    First, resolving the preference claim in the Celsius Bankruptcy rather than the Voyager Bankruptcy will serve the interests of judicial economy and the expeditious resolution of litigation because one court will remain the expert tasked with resolving critical issues arising in Celsius preference claims, including issues based on substantially similar facts.  *In re Project Orange Assocs., LLC*, 432 B.R. at 109 (explaining that factor 10 weighed in favor of lifting the stay and allowing litigation to proceed in a different court because the agreements at issue were "complicated, long-term arrangements" that the other court was "quite familiar" with); *see also In re Sukhu*, Case No. 17-11890, 2022 WL 610310, at *7 (S.D.N.Y. Mar. 1, 2022) ("Reviewing the relevant *Sonnax* factors, Judicial Economy suggests that this matter is best settled by the Court in which the litigation was initiated.").

31.    Transfers by Voyager made from Earn accounts to Withhold accounts in the 90 days before Celsius' petition date, or alternatively, based on Voyager's withdrawals from Withhold Accounts in the 90 days before Celsius' petition date may constitute avoidable preferences.  The answer to that question will turn in part on the Celsius bankruptcy court's determination as to whether assets held in the Earn and Withhold accounts are estate property, subjects the Celsius court will soon consider and determine.  The Celsius bankruptcy court will then have to consider whether transfers out of certain kinds of Celsius account(s) constitute preferential transfers.  Not only will it be more *efficient* for one court to familiarize itself sufficiently with issues concerning the Celsius platform to determine these questions, it also will reduce the risk of inconsistency for one court to make determinations about hundreds or perhaps thousands of arguably similar preference claims relating to transfers on and out of the Celsius platform.

32.    Additionally, Voyager may seek to assert a claim in the Celsius Bankruptcy with respect to crypto assets in Earn and/or Withhold accounts.  That in turn may result in disputes such as disallowance litigation under section 502(d), and thus the questions discussed above, including whether Voyager is in receipt of an avoidable preference under section 547 may have to be determined in the Celsius Bankruptcy in any event.  *See In re Rochester Drug Coop., Inc.*, 620 B.R. 699, 705 (Bankr. W.D.N.Y. 2020) ("Judicial economy is served by allowing Echo to resolve its setoff claim for returned goods credit . . . in a single proceeding.").

33.    Allowing the preference action against the Debtor to proceed in the Celsius Bankruptcy, therefore, will avoid multiple courts having to adjudicate the same issues and promote judicial economy.

<u>Factor 12</u>. <u>The Stay Prejudices Celsius and the Balance of Harms Favors Lifting it</u>:

34.     Second, the balance of harms favors lifting the stay because Celsius has a preference claim that must be resolved.  The stay will continue to prejudice Celsius if it remains in place because it will prevent Celsius from pursuing preference claims against Voyager totaling at least approximately $7.7 million in its own bankruptcy case.  *See In re Wiley*, 288 B.R. 818, 822 (B.A.P. 8th Cir. 2003) ("The mere filing of a petition in bankruptcy cannot, in and of itself, erase a plaintiff's claim, its opportunity to litigate, or the fact that the debtor may be liable to the plaintiff in some amount.").

35.     Under section 547(b)(4)(A) of the Bankruptcy Code, a "trustee may, based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses . . . avoid any transfer of an interest of the debtor in property. . . (4) made—(A) on or within 90 days before the date of the filing of the petition," as long as "those interests are not perfected security interests."  *In the Matter of: Sterling United, Inc.*, 674 F. App'x 19, 20 (2d Cir. 2016) (citing 11 U.S.C §§ 547(b)(4)(a), 547(c)(3)).

36.     Here, Voyager transferred coins from Earn accounts to Withhold accounts within 90 days of Celsius filing its petition and then withdrew many of those coins from Withhold accounts within 90 days of Celsius filing its petition.  Celsius seeks to avoid certain of those transfers as preferential under section 547.  Celsius clearly will be prejudiced if it is not permitted to pursue its preference claims against Voyager in its own bankruptcy.  *See Krichevsky v. U.S. Bank, N.A.*, 20-CV-2343 (AMD), 2021 WL 9244084 at n.5 (E.D.N.Y. Mar. 22, 2021) ("I find that these factors favor modification of the automatic stay…. In particular, 'lifting the stay on this limited basis enables [U.S. Bank] to proceed . . . to resolve issues with the property—in which the [other court] has expertise—and furthers the interests of judicial economy.'").

13

37.    By contrast, Voyager will not experience harm if Celsius is allowed to pursue the preference action in the Celsius Bankruptcy.  The alternative would be proceeding by way of proof of claim in the Voyager Bankruptcy, which would be an inefficient way of resolving the merits of the underlying preference action.  Indeed, Voyager might even gain an advantage if the preference action proceeds alongside actions brought by Celsius against other preference defendants facing arguably similar claims arising out of arguably similar circumstances.

Factor 7.  Litigation in the Celsius Bankruptcy Will Not Prejudice Other Creditors:

38.    Finally, Celsius' contemplated preference action against Voyager is a discrete claim that lacks connection to any larger issue in the Voyager Bankruptcy.  The preference litigation in the Celsius Bankruptcy does not prejudice the interests of Debtor's other creditors because Celsius' preference claims are unique to Celsius and not available to all unsecured creditors.  *See In re Rochester Drug Cooperative, Inc.*, 620 B.R. 699, 705 (Bankr. W.D.N.Y. 2020) (finding that factors 7, 10, and 12, weigh most heavily in favor of granting stay relief for party to assert a counterclaim for setoff against the debtor because the alleged setoff claim was not a claim available to all unsecured creditors).  No other Voyager creditor can claw back Celsius coins stored on the Celsius platform.  And whether Voyager or Celsius has a right to these coins is a matter to be resolved solely between Celsius and Voyager and should be resolved in the Celsius Bankruptcy, for all the reasons stated herein.

39.    Thus, there is cause for the automatic stay to be lifted or modified to permit Celsius to assert a preference action against Voyager in the Celsius Bankruptcy.

## II.    The Court Should Extend Celsius' Time to File a Claim Under Bankruptcy Rules 3003(c) and 9006(b)(1)

40.    To ensure that Celsius can recover in the Voyager Bankruptcy any judgment received based on a preference action in the Celsius Bankruptcy, Celsius also asks the Court for

an extension of time to file a proof of claim. Celsius is entitled to such relief primarily because it (i) did not receive notice of the bar date in the Voyager Bankruptcy and (ii) was in the midst of its own massive bankruptcy proceeding when the bar date passed, both of which justify a finding of "excusable neglect" to allow late-filed proof of claims.

A.    The "Excusable Neglect" Standard

41.    Bankruptcy Rule 9006(b)(1) authorizes a bankruptcy court to accept late-filed claims where the failure to act is a result of "excusable neglect," and contemplates that courts are permitted, where appropriate, to accept late filings. Fed. R. Bankr. Proc. 9006(b)(1).

42.    The leading case addressing the "excusable neglect" standard is *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership, et al.*, 507 U.S. 380 (1993). According to the Supreme Court, "excusable neglect" is an elastic concept and includes inadvertence, mistake, or carelessness, as well as intervening circumstances beyond the party's control. *Pioneer*, 507 U.S. at 388, 391. A determination of "excusable neglect" is an equitable consideration where the Court must take into account all relevant circumstances. *Id*. at 395; *see also In re AMR Corp.*, 492 B.R. 660, 666 (Bankr. S.D.N.Y. 2013).

43.    The Supreme Court, noting that one of the aims of chapter 11 of the Bankruptcy Code is to "avoid forfeiture by creditors," determined that there were four key factors to analyze when evaluating whether a claim may be accepted after the bar date as a result of "excusable neglect":

(i)    whether granting the delay will prejudice the debtor;

(ii)    the length of the delay and its impact on efficient court administration;

(iii)    whether the delay was beyond the reasonable control of the person whose duty it was to perform; and

(iii)    whether the creditor acted in good faith.

15

*Pioneer*, 507 U.S. at 385

44.    Importantly, the determination of whether "excusable neglect" is present is factual in nature and falls within the discretion of the bankruptcy court.  *See In re AWMC, Inc.*, 109 B.R. 210, 212 (Bankr. N.D. Tex. 1989) (determination is "fact specific").

**B.    An Extension of Celsius' Deadline to File Proof of Claims is Warranted**

45.    Each of the four key factors set forth by the Supreme Court for permitting late-filed claims is present here.  First, the Debtors would not be prejudiced by the claim being deemed timely filed or the granting of an extension of the bar date.  Second, the delay in the filing of the claim was reasonable under the circumstances and will not have a detrimental effect on the efficiency of court administration.  Third, the reason for the delay was based on excusable neglect. And fourth, Celsius acted in good faith to file proof of its claim as soon as possible.

(i)    *Prejudice to the Debtors*

46.    First, allowing a late-filed claim will not prejudice the Debtors because Voyager is still in the preliminary stages of its bankruptcy and no plan has been confirmed.  *See In re Herman's Sporting Goods, Inc.*, 166 B.R. 581, 584 (Bankr. D.N.J. 1994) ("The absence of a confirmed plan of reorganization indicates a lack of prejudice to the debtor."); *Matter of Papp Int'l, Inc.*, 189 B.R. 944 (Bankr. D. Neb. 1995) ("Several courts have concluded the lack of a confirmed plan indicates a lack of prejudice to the debtor . . . ."); *see also In re Keene Corp.*, 188 B.R. 903, 913 (Bankr. S.D.N.Y. 1995) (stating in connection with finding excusable neglect, "although the principal constituents have negotiated and published a plan, it has not been confirmed.").

47.    Second, the claim itself would be *de minimus* relative to a total unsecured claims pool of $1.85 billion.  *See Notice of Filing of First Amended Disclosure Statement Relating to the Second Amended Joint Plan of Voyager Digital Holdings, Inc. and its Debtor Affiliates Pursuant*

16

to Chapter 11 of the Bankruptcy Code [No. 22-10943, Docket No. 591]. Allowing an additional

claim for approximately $7.7 million relative to an estimated total claims pool of that size will

have very little, if any, effect on this proceeding.

48.     Moreover, on November 18, 2022, Voyager gave notice of an extension of the bar

date to December 23, 2022, for creditors with a claim arising from an amendment to the schedule

of assets and liabilities for Debtor Voyager Digital, LLC. *See Notice of (I) Filing of Amendment*

*to Schedule of Assets and Liabilities for Voyager Digital, LLC and (II) Deadline Requiring*

*Submission of Proofs of Claim on or Before December 23, 2022 and Related Procedures for*

*Submitting Proofs of Claim in the Above-Captioned Chapter 11 Cases* [No. 22-10943, Docket No.

666]. In light of the new deadline for a significant number of parties, it is unlikely that allowing

one additional party (Celsius) to file proof of claims after the original October 3 bar date would

prejudice the Debtors in any meaningful way.

49.     Finally, the preference claim Celsius seeks to file and the circumstances

surrounding it are unique. It is highly unlikely that another Voyager creditor will discover a

preference claim based on its own large bankruptcy action being filed at essentially the same time

as the Voyager bar date. Therefore, it is unlikely that granting Celsius the relief it seeks will result

in a cascade of similar such claims, thereby prejudicing the Debtors.

(ii)     *Length of Delay*

50.     "There is no bright-line rule governing when the lateness of a claim renders it too

late." *In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 121 (Bankr. S.D.N.Y. 2010), aff'd sub

nom. *CVI GVF (Lux) Master S.a.r.l. v. Lehman Bros. Holdings Inc.*, 445 B.R. 137 (S.D.N.Y.

2011). "[T]he lateness of a claim must be considered in the context of the proceeding as a whole."

*In re Enron Corp.*, 419 F.3d 115, 128 (2d Cir. 2005). And, notably, "a claim filed six months late

will not be disruptive at all—if, for example, the proceeding has come to a temporary halt for other

reasons." *Id*.

51.    Here, Celsius worked diligently to gather and organize the information required in

its statements upon filing its bankruptcy petition and that work continued until the morning of

October 5, 2022, when Celsius filed its Schedules and Statements.  Bixler Decl. at ¶¶ 5–14.  As

soon as Celsius became aware of its claim on November 5, 2022, it began the process of preparing

to file a claim, including the retention of conflicts counsel and preparation of this Motion.  Hurley

Decl. at ¶¶ 4–12.  This delay is therefore reasonable.

52.    Furthermore, any claim in respect of the preference action will not have any

meaningful effect on the administration of Voyager's chapter 11 case.

(iii)    *Reason for Delay*

53.    Any delay on the part of Celsius in not timely filing a preference claim is excusable.

Excusable neglect is "not limited strictly to omissions caused by circumstances beyond the control

of the movant." *Pioneer*, 507 U.S. at 392.  "Congress plainly contemplated that the courts would

be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or

carelessness, as well as by intervening circumstances beyond the party's control."  *Id*. at 388.

Further, when "a creditor is not given reasonable notice of the bankruptcy proceeding and the

relevant bar dates, its claim cannot be constitutionally discharged."  *In re AMR Corp*., 492 B.R. at

663 (quoting *Grant v. U.S. Home Corp.* (*In re U.S. Home Corp.*), 223 B.R. 654, 658 (Bankr.

S.D.N.Y. 1998)).  Likewise, "[i]nadequate notice is a defect which precludes discharge of a claim

in bankruptcy." *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d. Cir. 1995).  This is because

"[t]he constitutional standard for due process requires that known creditors in a bankruptcy case

receive actual notice of the bar date." *In re AMR Corp*., 492 B.R. at 663 (citing *City of New York

v. N.Y., N.H. & H.R. Co.*, 344 U.S. 293, 296–97 (1953)).  "In Chapter 11, therefore, a known

creditor must receive proper, adequate notice before its claim is barred forever." *Id*. (citing *Best Prods. Co., Inc.*, 140 B.R. at 357); *see also In re R.H. Macy & Co., Inc.*, 161 B.R. 355, 359 (Bankr. S.D.N.Y. 1993) ("Known creditors . . . must be afforded notice 'reasonably calculated, under all the circumstances, to apprise' them of the pendency of the bar date."). And a creditor who does *not receive* actual notice of the bar date may establish excusable neglect on that ground. *In re Thomson McKinnon Securities, Inc.*, 159 B.R. 146, 148 (Bankr. S.D. N.Y. 1993).

54.    The fact that Celsius never received notice of the Voyager bar date, therefore, is sufficient to establish excusable neglect. Ferraro Decl. at ¶¶ 4–9. But even if Celsius *had* received notice, it would still have a strong claim for excusable neglect because its delay also was the result of being consumed with its own bankruptcy case and in traditional complex chapter 11 filings, preference claims are often not analyzed before filing Schedules and Statements. *See* Bixler Decl. at ¶¶ 5–14. As explained *supra* at ¶ 13, Celsius worked diligently with limited resources to gather and organize the information required for its Schedules and Statements and did not have the resources to undertake an extensive analysis of all potential preference claims before filing its Schedules and Statements—indeed, records of the transactions on the Celsius platform in the 90 days before filing of the bankruptcy petition *alone* accounted for millions of rows of data. *Id*. at ¶ 11. Celsius has not yet conducted a comprehensive preference analysis and only recently began a limited, preliminary review of potential preference claims associated with only the GK8 entities in mid-December 2022, *Id*. at ¶ 12, but has nevertheless already identified its particular preference claim against Voyager. Thus, under the circumstances, it has established excusable neglect.

**(iv)    *Good Faith***

55.    Finally, Celsius acted in good faith. Celsius began exploring its claims against Voyager as soon as it was made aware of the transfers—referring the matter to conflicts counsel, investigating the relevant transactions, consulting with counsel for Voyager in an effort to save

both estates the expense of motion practice, and ultimately filing this motion promptly—and prioritized the preference claims against Voyager long before any others. *Id*. at ¶¶13–18. Through no fault of its own, Celsius did not receive notice of the Voyager bar date. *Id*.

56.     Without receiving notice of the bar date, Celsius could not have been expected to prioritize that date above deadlines in its own bankruptcy. As explained in detail above, Celsius' own bankruptcy required it to process a massive amount of information in a short amount of time. *See supra* at ¶ 13. Because (i) preference claims are usually analyzed after Schedules and Statements are filed in traditional chapter 11 cases and (ii) Celsius did not receive notice of the Voyager bar date, Celsius focused its resources on more pressing deadlines and ultimately filed its Schedules and Statements on October 5, 2022—two days after the Voyager bar date of October 3, 2022. *See supra* at ¶¶ 13–15.

57.     The decision to focus on preparing Schedules and Statements was made in good faith based on the need to comply with the relevant bankruptcy rules.

58.     Accordingly, by virtue of Celsius' good-faith efforts to timely file the claims, the relatively short delay in seeking Court permission to file the claim, the absence of prejudice to the Debtors' estates and the absence of a negative impact on the efficiency of court administration, Celsius respectively submits that, pursuant to Bankruptcy Rules 3003(c) and 9006(b)(1), the Court should conclude that excusable neglect is present and extend, nunc pro tunc, Celsius' time to file a proof of claim to within 14 days of a decision granting such relief.

## NOTICE

59.     Notice of this Motion has been provided to the Debtors, the Office of the U.S. Trustee, and all other parties entitled to notice pursuant to Bankruptcy Rule 2002. Celsius submits that such notice is sufficient and no other or further notice need be provided.

## NO PRIOR REQUEST

60.     No prior request for the relief sought in this Motion has been made by Celsius to this or any other court.

## CONCLUSION

**WHEREFORE**, Celsius respectfully request that the Court (i) enter an Order (a) lifting the automatic stay in this chapter 11 case to permit Celsius to commence an adversary proceeding in Celsius' chapter 11 case in order to pursue a preference action against Voyager and (b) granting leave under Bankruptcy Rules 3003(c) and 9006(b)(1) extending, *nunc pro tunc*, Celsius' time to file a proof of claim to within 14 days of a decision granting such relief and (ii) grant Celsius such other and further relief as the Court deems just, equitable, and proper.

Dated:  New York, New York
        December 23, 2022

AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.
Attorneys for Celsius Network LLC
By:

/s/ *Mitchell P. Hurley*
Mitchell P. Hurley
Dean L. Chapman Jr.
One Bryant Park
New York, New York 10036
(212) 872-1000
mhurley@akingump.com
dchapman@akingump.com

21