DAMIAN WILLIAMS
United States Attorney
Southern District of New York
By: JEAN-DAVID BARNEA
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, NY 10007
(212) 637-2679
Jean-David.Barnea@usdoj.gov

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | Case No. 22-10943 (MEW) |
| Debtors. | |

**NOTICE OF THE UNITED STATES OF AMERICA
CONCERNING THE REVIEW OF CERTAIN TRANSACTIONS
BY THE COMMITTEE ON FOREIGN INVESTMENT IN THE UNITED STATES**

The United States of America respectfully submits this statement to address the possibility that one or more transactions contemplated by the Debtors may be subject to review by the Committee on Foreign Investment in the United States ("CFIUS"), which could affect the ability of the parties to complete the transactions, the timing of completion, or relevant terms. Bankruptcy courts have previously acknowledged that potential national security concerns

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

(including CFIUS review) are relevant factors in bankruptcy proceedings, and specifically in determining whether bidders are qualified.[2]

## I. Background

1. CFIUS is an interagency committee authorized to review certain transactions involving foreign investment in the United States (referred to in the relevant statute and regulations as "covered transactions") in order to determine the effect of such transactions on the national security of the United States, and to mitigate risks arising from those transactions, and to refer transactions to the President requesting his decision on whether to take an action to suspend or prohibit the transaction. *See* 50 U.S.C. § 4565(b)(1)(A), (*l*). Covered transactions include certain transactions that could arise pursuant to a bankruptcy proceeding. *Id.* § 4565(a)(4)(F); 31 C.F.R. § 800.213 note.

2. Section 721 of the Defense Production Act of 1950, as amended (codified at 50 U.S.C. § 4565) ("section 721"), authorizes the President, acting through CFIUS, to review five types of covered transactions:

> (1) any merger, acquisition, or takeover "by or with any foreign person that could result in foreign control of any United States business";
> (2) the purchase or lease by, or concession to, a foreign person of certain real estate in the United States;

---

[2] *See In re Enstrom Helicopter Corp.*, No. 22-90006 (SWD), ECF No. 33, at 1 (Bankr. W.D. Mich. Feb. 9, 2022) (letter from the Court to the parties: "It occurs to me that the sale may raise national security concerns, for example as a covered transaction within the purview of the Committee on Foreign Investment in the United States or similar authority. At the hearing, I will expect some assurance that you have considered the possibility and, if it is an issue in this case, you will be prepared to address it in a way that balances the government's interest in such matters and the estate's interest in an expeditious and unassailable sale." (citation omitted)); *id.* ECF No. 54-1, § III(A)(iii) (Feb. 16, 2022) (court-approved bidding procedures include requirement to submit "information sufficient in the [Chapter 7] Trustee's judgment to determine whether a sale of the Assets to the Potential Bidder: (xx) will be a covered transaction or be subject to any mandatory declaration or other filing with any Governmental Body; and (yy) whether Potential Bidder is a foreign person for purposed of CFIUS or any other Law or regulation").

2

>    (3) any "other investment" by a foreign person that, although does not result in foreign control, affords a foreign person an equity interest [including contingent equity interest] in and specified access to information in the possession of, rights in, or involvement in the decisionmaking of certain U.S. businesses involved in certain critical technologies, critical infrastructure, or sensitive personal data;
>    (4) any change in a foreign person's rights if such change could result in foreign control of a U.S. business or another investment in certain U.S. businesses; and
>    (5) any other transaction, transfer, agreement, or arrangement, the structure of which is designed or intended to evade or circumvent the application of section 721.

50 U.S.C. § 4565(a)(4)(B). The term "control" is defined as "the power, direct or indirect, whether exercised or not exercised, to determine, direct, or decide important matters affecting an entity, subject to regulations prescribed by the Committee." *Id.* § 4565(a)(3); *see also* 31 C.F.R. § 800.208(a) (setting forth an illustrative list of "important matters affecting an entity"), 800.208(c) (setting forth a list of minority shareholder protections that "shall not in themselves be deemed to confer control over an entity").

       3.       The CFIUS regulations define "foreign person" to include any individual that is not a U.S. national, as well as any entity that is organized under a foreign state's laws and that has its principal place of business outside of the United States or is primarily traded on a foreign stock exchange. *See* 31 C.F.R. §§ 800.220 (defining foreign entity), 800.223 (defining foreign national), 800.224 (defining foreign person). Any entity (including an entity organized under U.S. law with its principal place of business in the United States) that is controlled by such a foreign national or foreign entity is also defined to be a foreign person. *See id.* § 800.224(a)(2). A covered transaction could include the acquisition by a foreign national, foreign entity, or foreign government (or by an entity that is a foreign person by virtue of being controlled by one of the foregoing) of an entity engaged in interstate commerce in the United States (a U.S.

3

business) that is in bankruptcy, including components of a business or assets that constitute a U.S. business under the CFIUS regulations. *See id.* Part 800.

4. The members of CFIUS include the Secretaries of the Treasury (chair), State, Defense, Commerce, Energy, and Homeland Security; the Attorney General; the United States Trade Representative; and the Director of the White House Office of Science and Technology Policy. The heads of any other executive department, agency, or office may participate as determined by the President or the Secretary of the Treasury to be appropriate on a case-by-case basis. 50 U.S.C. § 4565(k)(2); Exec. Order No. 11858, 40 Fed. Reg. 20,263 (May 7, 1975), as amended by Exec. Order No. 13456, § 3(b)(iii), 73 Fed. Reg. 4677 (Jan. 25, 2008). The Secretary of Labor and Director of National Intelligence are nonvoting, *ex officio* members.

5. A transaction may be presented to CFIUS for review in one of several different ways, as discussed in greater detail in section II, below. If, based on its review, CFIUS determines that a covered transaction does not raise national security concerns, CFIUS concludes action under section 721, notifies the parties that it has done so, and certifies its findings to committees of jurisdiction in Congress. If CFIUS determines that a transaction does raise national security concerns, it may work with the parties to mitigate those concerns and then conclude action under section 721 subject to risk mitigation conditions. If CFIUS determines that identified national security risks cannot be mitigated and the parties are unwilling to abandon their transaction voluntarily, then CFIUS refers the matter to the President for a decision whether to take action to suspend or prohibit the transaction.

**II.    Procedure**

6. When parties to a transaction determine that the transaction might be a covered transaction, they may opt to voluntarily notify the transaction to CFIUS—before or after the

4

transaction is concluded—through a written notice or an abbreviated filing known as a declaration.

7. Although a notice or declaration submitted on a voluntary basis is the way in which most transactions are presented to CFIUS, section 721 provides that certain transactions *must* be notified to CFIUS through a declaration submitted at least 30 days prior to closing. That requirement applies to certain covered transactions where a foreign government has a substantial interest. 50 U.S.C. § 4565(b)(1)(C)(v)(IV)(bb)(AA). The requirement also applies to covered transactions involving certain U.S. businesses that produce, design, test, manufacture, fabricate, or develop one or more critical technologies. *Id.* § 4565(b)(1)(C)(v)(IV)(cc). Although the obligation in both cases is to submit a declaration, parties have the option of filing a full notice in lieu of submitting a declaration. *Id.* § 4565(b)(1)(C)(v)(IV)(ee). Parties might opt to file a full notice instead of a declaration for various reasons, including if CFIUS has reason to believe that the transaction notified by declaration "may raise national security considerations," it is authorized to request that the parties to the transaction subsequently file a full notice (with no adjustment to the statutory timeline for review of such notice).

8. Where parties to a covered transaction have not voluntarily filed a notice or declaration with CFIUS, CFIUS can unilaterally initiate review of the transaction before or after its completion. *See id.* § 4565(b)(1)(D). The device used for such unilateral initiation is referred to as an "agency notice."

9. After receiving a voluntary notice from the transaction parties, CFIUS generally accepts the notice or, if it determines that the notice is not complete, provides written comments identifying information required to make the notice complete. *Id.* § 4565(b)(1)(C)(i)(II). When CFIUS receives a voluntary notice or agency notice, it first must determine whether the notified

transaction is a covered transaction. If it is a covered transaction, then within 45 days of accepting the notice, CFIUS completes a review to determine the transaction's potential impact on the national security of the United States. *Id.* § 4565(b)(1)(A), (F). (If the transaction is not a covered transaction, then CFIUS must so inform the parties and conclude action on the matter.) Following the 45-day review period, two principal outcomes are possible. First, CFIUS may conclude action with respect to the transaction. *See* 31 C.F.R. § 800.506. Alternatively, if the review brings to light possible risks to U.S. national security, or if CFIUS just needs more time to examine possible risks, CFIUS may initiate an investigation of up to 45 days into the "effects of [the] covered transaction on the national security of the United States." 50 U.S.C. § 4565(b)(2)(A), (C).

10. Upon completion of any investigation, CFIUS may conclude action with respect to the transaction, *see* 31 C.F.R. § 800.508(d), or send a report to the President requesting his or her decision on whether to take an action to suspend or prohibit the transaction, 50 U.S.C. § 4565(d)(1). Ordinarily, CFIUS would send a report to the President only if it had determined that the transaction poses national security concerns that cannot be resolved, and the parties are unwilling to abandon the transaction voluntarily. When CFIUS sends a report to the President, the President has 15 days to decide whether to take action to suspend or prohibit the transaction. *Id.* § 4565(d)(2). The President's decision is not subject to judicial review. *Id.* § 4565(e).

11. CFIUS may seek to mitigate any threat to the national security of the United States that arises as a result of a covered transaction by entering into agreements with a party to the transaction or imposing conditions on the transaction. *See id.* § 4565(*l*)(3)(A).

12. As summarized above, the CFIUS process is governed by certain statutorily prescribed deadlines. However, the time CFIUS actually takes to consider a transaction may be

6

greater than indicated by those deadlines for several reasons, including pre-filing informal consultations between CFIUS and the transaction parties, *id.* § 4565(b)(1)(C)(i)(II); *see also* 31 C.F.R. § 800.501(g) (encouraging such discussions); parties' withdrawal of a notice (which has the effect of stopping the clock), 50 U.S.C. § 4565(b)(1)(C)(ii); and informal discussions regarding possible resubmission following withdrawal (which would cause the clock to re-set and re-start), *id.* § 4565(b)(1)(C)(iii).

**III.    Analysis**

13.    In determining whether to suspend a transaction, refer a transaction to the President, or require mitigation, CFIUS must undertake a risk-based analysis that includes assessment of the potential threat associated with the foreign acquirer based on its capabilities and intentions, vulnerabilities of the U.S. business, and consequences to national security if those vulnerabilities were to be exploited. *Id.* § 4565(*l*)(4)(A); 31 C.F.R. § 800.102 (defining "threat," "vulnerabilities," and "consequences to national security").

14.    In conducting its national security risk analysis, CFIUS considers issues including domestic production needed for projected national defense requirements and the capability and capacity of domestic industries to meet those requirements, the potential effects of the proposed or pending transaction on United States international technological leadership in areas affecting United States national security, the potential national security-related effects on United States critical infrastructure, and the potential national security-related effects on United States critical technologies. *See* 50 U.S.C. § 4565(f).

**IV.    Confidentiality**

15.    In the exercise of its statutory duties, CFIUS necessarily reviews "commercially sensitive" information provided to it by the parties to the transaction under review. *See* U.S. Dep't of Treasury, *CFIUS Notes* (Feb. 19, 2013), https://www.treasury.gov/connect/blog/Pages/

CFIUS-at-a-Glance.aspx.  Such information may include, for example, non-public information about pending transactions, the technical specifications of commercial products and services, entity ownership, and personal identifier information (including Social Security numbers, nationality, and passport numbers) for certain board members, shareholders, and senior officers of transaction parties.  *See, e.g.*, 31 C.F.R. § 800.502(c).  CFIUS also reviews classified and unclassified national security information in determining whether a particular transaction poses a national security risk.  *See generally Ralls Corp. v. Comm. on Foreign Investment*, 758 F.3d 296, 319 (D.C. Cir. 2014) (CFIUS need not disclose classified information supporting official action to parties in providing due process); *see* Testimony of Eric D. Chewning, Dep. Asst. Sec'y of Def. for Mfg. and Indus. Base Policy, Sen. Comm. on Banking, Housing, and Urban Affairs (Jan. 25, 2018), *available at* https://www.banking.senate.gov/imo/media/doc/Chewning%20 Testimony%201-25-18.pdf (describing the threat assessment compiled by intelligence organizations and "relied upon" in CFIUS cases).

16. To protect the integrity of the CFIUS process and U.S. national security, the Defense Production Act expressly recites that "any information or documentary material filed with the President or the President's designee [that is, CFIUS,] pursuant to this section shall be exempt from disclosure under [the Freedom of Information Act], and no such information or documentary material may be made public."  50 U.S.C. § 4565(c)(1).

17. With limited exceptions, all information submitted to CFIUS—whether as part of a formal notice or declaration or otherwise—is treated as confidential.  Not only is CFIUS itself and the personnel who work on CFIUS matters bound by the obligation of confidentiality, but so are Members of Congress and congressional staff to whom certain information about CFIUS cases is disclosed.  The limited exceptions to the confidentiality obligation include, for example,

disclosure as may be relevant to any administrative or judicial action or proceeding. *See id.* § 4565(c).

18.  In formal guidance published pursuant to a statutory directive, *see id.* § 4565(b)(2)(E), CFIUS interprets the confidentiality provision to prohibit it from disclosing any information concerning a particular transaction notified to CFIUS, and any information otherwise disclosed in writing or orally to CFIUS in connection with the Act. That prohibition includes any derivative information, such as any information that would identify the parties to a transaction, the existence of a transaction, and whether or not the parties to the transaction have formally filed a notice with CFIUS:

> To reassure parties that choose to file voluntarily with CFIUS that the sensitive and proprietary business information that they submit to CFIUS will be protected, section 721(c) prohibits CFIUS from disclosing to the public any information filed with CFIUS under section 721, except in certain legal proceedings. This includes the identity of filers and details of a notified transaction, as well as information provided to CFIUS in connection with a transaction never formally notified to CFIUS.

*Guidance Concerning the National Security Review Conducted by the Committee on Foreign Investment in the United States*, 73 Fed. Reg. 74,567, 74,569 (Dec. 8, 2008).

19.  Unauthorized disclosure of certain information or material filed with CFIUS can result in criminal penalties, including fines and imprisonment. *See* 31 C.F.R. § 800.802. "[T]here is . . . a clearly articulated intention, on the part of each of the legislative and executive branches of our government, that the CFIUS process remain confidential." *In re Glob. Crossing Ltd.*, 295 B.R. 720, 724-25 (Bankr. S.D.N.Y. 2003). The CFIUS statutory and regulatory confidentiality provisions apply in bankruptcy. *See id.* Nothing in the CFIUS confidentiality provisions, however, prohibits the public disclosure by a party of documentary material or information that the party itself has filed with CFIUS. *See* 31 C.F.R. § 800.802(d).

Dated: December 30, 2023  
       New York, NY

Respectfully submitted,

DAMIAN WILLIAMS  
United States Attorney  
Southern District of New York

By:   <u>s/Jean-David Barnea</u>  
JEAN-DAVID BARNEA  
Assistant United States Attorney  
86 Chambers Street, 3rd Floor  
New York, NY 10007  
(212) 637-2679  
Jean-David.Barnea@usdoj.gov