Hearing Date: January 10, 2023
Hearing Time: 2:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

In re                                                              Chapter 11

VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1]                       Case No. 22-10943 (MEW)

                                                                   Jointly Administered
                    Debtors.

-----------------------------------------------------------------x

**OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTORS'
MOTIONS (A) FOR ENTRY OF ORDERS (I) AUTHORIZING ENTRY
INTO THE BINANCE US PURCHASE AGREEMENT, AND (B)
(I) SCHEDULING A COMBINED DISCLOSURE STATEMENT
APPROVAL AND PLAN CONFIRMATION HEARING,
(II) CONDITIONALLY APPROVING THE ADEQUACY OF
THE DEBTORS' DISCLOSURE STATEMENT, (III) APPROVING
(A) PROCEDURES FOR SOLICITATION, (B) FORMS OF BALLOTS AND
NOTICES, (C) PROCEDURES FOR TABULATION OF VOTES AND (D)
PROCEDURES FOR OBJECTIONS, AND (IV) GRANTING RELATED RELIEF**

TO:   **THE HONORABLE MICHAEL E. WILES,
      UNITED STATES BANKRUPTCY JUDGE:**

William K. Harrington, the United States Trustee for Region 2 (the "**United States Trustee**"), hereby submits this objection to the above-captioned Debtors' Motions for Entry of Orders (A) (1) Authorizing Entry into the Binance US Purchase Agreement and (II) Granting Related Relief (the "**APA Motion**") [ECF Doc. No. 775], and (B) (I) Scheduling a Combined

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (N/A); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Adequacy of the Debtors' Disclosure Statement, (III) Approving (A) Procedures for Solicitation, (B) Forms of Ballots and Notices, (C) Procedures for Tabulation of Votes, and (D) Procedures for Objections, and (IV) Granting Related Relief (the "**Scheduling Motion**") [ECF Doc. No. 779].  In support thereof, the United States Trustee respectfully states:

## PRELIMINARY STATEMENT

The debtors-in-possession herein (collectively, the "**Debtors**" or "**Voyager**"), having seen the sale of their assets to FTX US collapse in the wake of FTX's descent into bankruptcy, seek through the Scheduling Motion and the APA Motion both the Court's permission to enter into an asset purchase agreement with BAM Trading Services, Inc. d/b/a Binance US ("**Binance US**") and conditional approval of a disclosure statement premised on that sale.  In addition, the Debtors, in the Scheduling Motion, seek approval of, among other things, the form of ballots and the proposed schedule for confirmation of the plan.  The Debtors are asking the Court to grant these motions on shortened notice.

Although the United States Trustee understands that the Debtors' financial condition limits their options, issues surrounding the Debtors proposed replacement purchaser call into question the feasibility of both the proposed sale and the plan on which the sale is based.  Given the Debtors' recent unpleasant experience with FTX US, the Court should not countenance their attempt to rush headlong into another asset purchase agreement without sufficient evidence of due diligence and without affording parties-in-interest a full and fair opportunity for due deliberation.  At present, the APA and the Disclosure Statement lack transparency and contain little information beyond vague statements regarding the Debtors' purported risk assessment regarding Binance US's financial condition, its ability to consummate the sale and its ability to

2

protect customer assets. Unlike a traditional sale of assets, wherein Debtors' creditors and customers look to the proceeds of the sale for their intended recoveries, any future recoveries here by creditors and customers will be entirely dependent on the future viability of Binance US as customer holdings are, in large part, simply being transferred to Binance US's platform. Accordingly, transparency regarding the purchaser is crucial to a creditor's determination as to whether to support the sale and plan.

The Debtors are going forward with the sale transaction even though they concede that they cannot consummate the sale under the APA unless and until Binance US obtains Money Transmitter Licenses from four states. Specifically, the Debtors cannot transfer the customers' cryptocurrency to its platform without those licenses. In the event that the purchaser does not obtain the licenses within six (6) months after the sale closing date, the Debtors, the purchaser will convert any coins it is holding into United States Dollars and transfer those dollars to the Debtors.

While the regulatory process proceeds, Binance US is to have total control over the cryptocurrency of Voyager's customers for up to six (6) months before those customers would gain access to that cryptocurrency. The APA Motion contains no explanation as to why the long-suffering customers, who have not had access to their accounts since before this case was commenced, should be forced to wait for such an extended period to regain access to their cryptocurrency. Furthermore, the APA Motion does not describe the security protocols under which Binance proposes to protect the customers' cryptocurrency it is to hold.

Voyager's customers cannot make an informed decision on the APA and the Disclosure Statement because the fate of their VGX tokens is unclear. The Debtors cannot inform the customers what will happen to the VGX tokens before the APA is approved and the Plan is

3

confirmed. Thus, in deciding whether to object to the APA and the Disclosure Statement now and whether to object to final approval of the Disclosure Statement and confirmation of the Plan later, customers that had VGX tokens on Voyager's platform will be unable to make an informed decision as to whether to accept or reject the treatment of their VGX tokens.

The APA provides that the Debtors will waive any conflict of interest with respect to Paul Hastings, the Debtors regulatory counsel, representing Binance and its affiliates from and after the closing of the sale. Given that Paul Hastings has represented both the seller and the buyer on regulatory matters, this provision of the APA should at the very least be supplemented by a fulsome explanation and justification for the Debtors' waiver. Until then, this provision of the APA should be stricken.

Finally, the Court should direct that a consumer privacy ombudsman be appointed. The APA contains no information regarding Voyager's privacy policies that apply to the customers that provided them personally identifiable information and does not indicate whether the purchaser will be required to comply with the Debtors' privacy policies. Accordingly, to the extent that the Debtors seek to sell personally identifiable information, should the Court approval the Debtors' entry into APA, a consumer privacy ombudsman should be appointed pursuant to Bankruptcy Code section 332(a).

Should the Court approve the APA Motion and the Scheduling Motion, the United States Trustee reserves his rights to object in every way to final approval of the Disclosure Statement, confirmation of the Plan, as well as the sale of Voyager's assets to Binance US, including, among other things, to any Debtor or non-debtor third party releases provided in the Plan and APA and to the adequacy of notice provided therefor.

For all these and additional reasons, as fully detailed below, the United States Trustee respectfully objects to the Scheduling Motion and the APA Motion.

## BACKGROUND

**General Background**

1.  On July 5, 2022 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. ECF Doc. No. 1.

2.  The Debtors continue to operate their businesses and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On July 6, 2022, the Court entered an order authorizing the joint administration and procedural consolidation of the chapter 11 cases. ECF Doc. No. 18.

3.  On July 19, 2022, the United States Trustee appointed an Official Committee of Unsecured Creditors pursuant to section 1102 of the Bankruptcy Code. ECF Doc. No. 106. No entity has requested the appointment of a trustee or examiner in these chapter 11 cases.

4.  On August 5, 2022, the Court entered an Order authorizing the retention and compensation of professionals utilized in the ordinary course of business (the "**OCP Order**"). ECF Doc. No. 44. Paul Hastings LLP ("**Paul Hastings**") is among the ordinary course professionals. *See* OCP Order, Exhibit A, pg. 12 of 15.

5.  After the Debtors had chosen the bid of West Realm Shires, Inc. ("**FTX US**") as the highest and best bid for the estates' assets, FTX US and its related entities filed their own voluntary petitions for relief under chapter 11 in the Bankruptcy Court for the District of Delaware. *See* Scheduling Motion, ¶¶ 6, 7.

5

6.  In the wake of the collapse of both FTX US and its agreement to purchase the Debtors' assets, the Debtors entered into negotiations with other potential bidders and selected the bid of Binance US as the highest and best bid for the estates' assets. *Id.* at ¶ 8; APA Motion, ¶ 8.

7.  On December 21, 2022, the Debtors filed the APA Motion, as well as the Motion to Shorten Time with respect to the APA Motion. ECF Doc Nos. 775, 776.

8.  On December 22, 2022, the Debtors filed the Scheduling Motion. ECF Doc. No. 779.

**The Proposed Asset Purchase Agreement**

9.  The Debtors value the Asset Purchase Agreement (the "**APA**") with Binance US, at an estimated $1.002 billion, plus "at least $20 million of incremental value." *Id.*; APA Motion, ¶¶ 2, 14.

10. The APA provides for a timeline, including a deadline by which the sale transaction must close. Scheduling Motion, ¶ 9; APA Motion, ¶ 14. Should the sale not close by the deadline, the Debtors may opt instead for a "Toggle Transaction" under which the Debtors would return the cryptocurrency, cash, and other customer assets it holds to its customers. *Id.*

11. The Debtors seek to impose a restricted timeline, not only on Binance US, but also on their creditors. *See* Scheduling Motion at ¶¶ 11, 14k. Although the Debtors intend to solicit votes to accept or reject the Debtors' Third Amended Plan (the "**Plan**"), ECF Doc. No. 777, they seek on shortened notice the entry of an order, *inter alia*, approving the APA, scheduling a combined hearing to confirm the Plan and to approve the Debtors' Second Amended Disclosure Statement relating to the Plan (the "**Disclosure Statement**"). *See* Motion to Shorten Time; Scheduling Motion. The Debtors, which filed the APA Motion on December

21, 2022, and the Scheduling Motion on December 22, 2022 – shortly before Christmas Day and ten days before New Year's Day -- also seek the entry of an order conditionally approving the Disclosure Statement, approving the procedures for the solicitation of votes on the Plan, the forms of ballots, and notices and procedures for the tabulation of votes. *See id.* at ¶ 14.

12. Although the Debtors originally sought to set a deadline of December 30, 2022 to object to (1) the APA, (2) conditional approval of the Disclosure Statement, (3) the Plan solicitation procedures, (4) the forms of ballots, and (5) the notices and procedures for the tabulation of votes, the Court extended the objection deadline to January 4, 2023. *See* Order Shortening the Notice Period, dated December 23, 2022, ECF Doc. No. 786; Notice of Adjournment of Hearing on Debtors' APA Motion and Conditional Disclosure Statement, ECF Doc. No. 787. The Court also rescheduled the hearing on the APA Motion and the Scheduling Motion for January 10, 2023. *See id.*

13. Even though one of the principal features of the APA involves the transfer of the customers' cryptocurrency from Voyager's platform to that of Binance US -- and, by necessity, the customers' personally identifiable information -- the APA Motion does not mention the appointment of a Consumer Privacy Ombudsman. *See* APA Motion.

## DISCUSSION

**The APA Motion Should Not Be Granted**

    **A.**     **The Debtors Have Not Demonstrated That They Performed Sufficient Due Diligence Or That The APA Is Feasible**

The Debtors state in the APA Motion that they do not seek either "to effectuate" the sale of Voyager's assets to Binance (the "**Binance US Transaction**") or the Court's approval of the Binance Transaction in the context of the APA Motion. However, they do seek the Court's

permission to enter into the APA at this time. APA Motion, ¶¶ 16, 17. Although the United States Trustee is mindful that section 363(b) of the Bankruptcy Code authorizes chapter 11 debtors to enter into agreements outside of the normal course of business under the "legitimate business justification" standard, *Comm. Of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983), certain provisions of the APA are troubling and should not be approved.

The Debtors have failed to describe with any specificity in the APA Motion the due diligence it undertook with respect to Binance before agreeing to the terms of the APA. Instead, the Debtors made a vague statement that the company and its advisors had taken into account "both the viability and risk factors associated with each proposed transaction" during the auction process.[2] APA Motion, ¶ 12, pg. 9 of 150. The Debtors' failure in this regard is particularly troubling, as the memory of the fate of its asset purchase agreement with FTX is still fresh in the minds of parties-in-interest. Given what the Debtors themselves described as "the shocking collapse of FTX" that had "gutted any possibility of closing the FTX transaction," *id.* at ¶ 1, pg. 5 of 150, one would have thought that the Debtors would undertake an extra effort to assure the parties and the Court that no "shocking" developments would derail the second APA. Unfortunately, the Debtors' general statement that they took "the viability and risk" factors into account is not enough to allay the concerns of Voyager's creditors.

Adding to the uncertainty regarding the APA, on December 30, 2022, the United States of America (the "**Government**"), by its counsel, filed a Notice of the United States of America Concerning the Review of Certain Transactions by the Committee on Foreign Investment in the

---

[2] The Debtors also state that "[b]ased on the diligence [they] have performed . . . they believe that the Binance US Transaction is the highest and best option." APA Motion, ¶ 18.

8

United States (the "**CFIUS Notice**"). ECF Doc. No. 797. Without mentioning either of the parties to the APA by name, the Government explained that it

> respectfully submits this statement to address the possibility that one or more transactions contemplated by the Debtors may be subject to review by the Committee on Foreign Investment in the United States ("CFIUS"), which could affect the ability of the parties to complete the transactions, the timing of completion, or relevant terms.

CFIUS Notice, pg. 1 of 10. In light of the filing of the CFIUS Notice, parties-in-interest and Court need and deserve extra assurance that the APA is feasible that that a repetition of the collapse of the FTX asset purchase agreement is not on the horizon. Instead, to date the Debtors have offered only a vague and wholly inadequate statements that they have performed due diligence on all entities that have submitted bids for the company's assets.

      **B.**      **Under the APA, Binance May Retain Control of the Customers' Cryptocurrency for Up To Six Months Before The Customers Themselves Will Have Access To It**

As the APA explains, a valid Money Transmitter License is a prerequisite for Binance US to transfer the customers' cryptocurrency to its platform. *See* APA, § 6.12(b), attached to APA Motion as Exhibit B, pg. 96 of 150, ECF Doc. No. 775. Without a Money Transmitter License, Binance US cannot "consummate the Transactions or perform its obligations hereunder." *Id.* At this time Binance US does not have a Money Transmitter License in Hawaii, New York, Texas, or Vermont. *Id.*

The United States Trustee's concern in this regard is that under the APA, the Debtors have the option to "deliver [cryptocurrency] Coins [of any User or Eligible Creditor] to Binance US at closing. *Id.* In the event that Binance US does not receive one or more of the aforementioned Money Transmitter Licenses within six (6) months after the sale closing date,

9

Binance US must convert any coins it is holding into United States Dollars and deliver such Dollars to the Debtors. *Id.* Then the Debtors, in turn, are to distribute them in accordance with the Plan. *Id.*

Of course, under this provision of the APA, Binance US – while it waits for the Money Transmitter Licenses to be approved -- may retain possession of the customers' cryptocurrency for a period of up to six (6) months after the closing of the Binance Transaction. To put it another way, the customers affected by this provision of the APA may have no access to their cryptocurrency for up to six (6) months after the closing on the Binance Transaction. Given that this case began with Voyager freezing its platform so as to deny access of its customers to their coins, the APA provision that contemplates the denial of customer access for a much longer period of time seems not only unwarranted, but also manifestly unfair to the customers.

That Binance US may hold the customers' coins for an extended period raised another question: How will the coins be protected? Neither the APA Motion nor the APA itself describes the security protocols that Binance US intends to put into place in the event that the Court approves the Binance Transaction. If the customers are to be denied access to their coins, at the very least Binance US should set forth the measures it is taking to ensure that those coins will be safe and secure.[3]

        **C.**    **The APA Motion Should Not Be Granted and The Disclosure Statement Should Not Be Conditionally Approved Because The APA's Treatment Of VGX Tokens Is Inconsistent With The Treatment Of VGX Tokens Set Forth In The Disclosure Statement**

Section 6.13 of the APA provides as follows:

---

[3] Although the APA states that the "Seller [Voyager] has implemented procedures and controls," APA, § 3.5(d), pg. 65 of 150, ECF Doc. No. 775, the APA does not indicate that the *Purchaser* (Binance US) has done – or intends to do -- the same.

10

> 6.13 <u>VGX Token Listing Review Process</u>. Following the entry of the Agreement Order, Purchaser will initiate and undertake consistent with its policies and past practices an internal review process to determine whether VGX tokens can be listed for trading on the Binance US Platform, which review process will include submitting the VGX token to Purchaser's listing committee for consideration consistent with its policies and past practices.

APA, § 6.13, pg. 57 of 108.

Section IX B.3 of the Disclosure Statement, meanwhile, provides as follows:

> Upon confirmation of the Plan, Binance US will endeavor to list VGX as an approved token on its platform. The Debtors' business operations will be winding down following the Effective Date and consummation of the Sale Transaction. Therefore, in the event that Binance US is unable to approve VGX as a tradeable token on its platform, VGX will have no utility going forward and may have no value. If Binance US does not approve VGX, Voyager will not be able to support commitments to VGX following the Effective Date and the Binance US would not otherwise assume such obligations. In the event that Binance US does not approve VGX, the Debtors will continue to engage with third parties regarding a sale of VGX that may provide additional recovery to Holders of Claims.

Disclosure Statement, § IX B.3., pg. 73 of 211.

Based on the language of these provisions, it appears that the question as to whether the VGX token is to be listed by Binance US's platform is entirely within Binance US's discretion. Moreover, the timing of Binance US's decision concerning the fate of the VGX token is unclear. Although the "internal review process" regarding Binance US's decision on the VGX token is to begin after the entry of the order approving the APA, *see* APA § 6.13, pg. 57 of 108, the APA does not state when that process will end. *See id.* The Disclosure Statement, however, makes clear that "Binance US will endeavor to list VGX as an approved token on its platform" only "[u]pon confirmation of the Plan." Disclosure Statement, § IX B.3., pg. 73 of 211.

11

Accordingly, not only will Voyager's customers concerned about the future of the VGX token have to wait until the approval of the APA and the conditional approval of the Disclosure Statement, but they will have to wait until after confirmation of the Plan. Thus, in deciding whether to object to the APA and the Disclosure Statement now and whether to object to final approval of the Disclosure Statement and confirmation of the Plan later, customers that had VGX tokens on Voyager's platform will be unable to make an informed decision as to whether to accept or reject the treatment of their VGX tokens.[4]

### D.    Paul Hastings

Section 5.8 of the APA provides, in part, as follows:

> <u>Waiver of Conflicts</u>.  Notwithstanding anything to the contrary herein or otherwise, Seller acknowledges that Paul Hastings LLP . . . may have represented and may currently represent the Purchaser or one or more of its Affiliates in connection with the [APA and related agreements] as well as other past and ongoing regulatory matters generally (the "<u>Covered Matters</u>"). . . .  Seller hereby irrevocably waives and will not assert, and will cause each of its Affiliates to waive and not assert, any actual or potential conflict of interest which has or may arise as a result of Paul Hastings' representation of the Purchaser or one or more of its Affiliates, including in any Action, in a Covered Matter, (ii) hereby consents, and will cause each of its Affiliates to consent to, any such representation, even though, in each case, (x) the interests of the Purchaser or such Affiliates may be directly adverse to Seller or its Affiliates, (y) Paul Hastings may have represented Seller or its Affiliates in a substantially related matter, or (z) Paul Hastings may be handling other ongoing matters for Seller or its Affiliates, and (iii) shall cooperate, and shall cause each of its Affiliates to cooperate, with the Purchaser in effectuating the foregoing waiver (including with respect to any objections raised by or before the Bankruptcy Court or the United States Trustee assigned to the Bankruptcy Case in respect of such waiver or representation).

---

[4] Voyager's customers will derive little comfort from the Disclosure Statement's provision that if Binance US decides not to add VGX tokens to its platform, the Debtors will continue to try to sell VGX tokens to third parties.  Disclosure Statement, § IX B.3., pg. 73 of 211.

12

APA, § 5.8. As noted above, Paul Hastings is one of the ordinary course professionals in these cases. *See* OCP Order, ECF Doc. No. 44. To date, although Paul Hastings filed a Declaration of Disinterestedness in accordance with the OCP Order on August 22, 2022, ECF Doc. No. 303, the firm has not filed an updated Declaration since the Debtors decided to enter into the APA. *See* ECF Docket. Absent a much more detailed explanation of Paul Hastings' role as regulatory counsel for both the Debtors and Binance US and their respective affiliates, the waiver embodied in section 5.8 of the APA should not be approved.[5]

      **E.    The Court Should Direct the Appointment of a
           Consumer Privacy Ombudsman**

Because the Debtors are transferring personally identifiable information to the successful bidder, the Bid Procedures Motion should require the appointment of a Privacy Ombudsman. Section 363(b)(1) of the Bankruptcy Code provides:

> The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate, except that if the debtor in connection with offering a product or a service discloses to an individual a policy prohibiting the transfer of personally identifiable information about individuals to persons that are not affiliated with the debtor and if such policy is in effect on the date of the commencement of the case, then the trustee may not sell or lease personally identifiable information to any person unless –
>
> > (A) such sale or lease is consistent with such policy; or
> >
> > (B) after appointment of a consumer privacy ombudsman in accordance with section 332, and

---

[5] The undersigned counsel has reached out to Debtors' main bankruptcy counsel with respect to this issue. Debtors' counsel has agreed to provide more information to parties-in-interest and the Court regarding Paul Hastings' representation of both the Debtors and Binance on regulatory matters. The United States Trustee reserves his rights in every way to pursue his objection to the proposed waiver of Paul Hastings' conflict of interest pending his review of any supplemental documents filed with respect to that firm's representation of the Debtors and Binance.

>> after notice and a hearing, the court approves such sale or such lease –
>>
>>> (i) giving due consideration to the facts, circumstances, and conditions of such sale or such lease; and
>>>
>>> (ii) finding that no showing was made that such sale or such lease would violate applicable nonbankruptcy law.

Section 332 of the Bankruptcy Code provides:

> (a) If a hearing is required under section 363(b)(1)(B), the court shall order the United States trustee to appoint, not later than 7 days before the commencement of the hearing, 1 disinterested person (other than the United States trustee) to serve as the consumer privacy ombudsman in the case and shall require that notice of such hearing be timely given to such ombudsman.
>
> (b) The consumer privacy ombudsman may appear and be heard at such hearing and shall provide to the court information to assist the court in its consideration of the facts, circumstances, and conditions of the proposed sale or lease of personally identifiable information under section 363(b)(1)(B). Such information may include presentation of—
>
>> (1) the debtor's privacy policy;
>> (2) the potential losses or gains of privacy to consumers if such sale or such lease is approved by the court;
>> (3) the potential costs or benefits to consumers if such sale or such lease is approved by the court; and
>> (4) the potential alternatives that would mitigate potential privacy losses or potential costs to consumers.
>
> (c) The consumer privacy ombudsman shall not disclose any personally identifiable information obtained by the ombudsman under this title.

Voyager's customers have disclosed personally identifiable information to Voyager in order to have access to the company's platform. Under the APA, that information is to be shared with Binance US. *See* APA Motion, ¶ 28, pg. 16 of 150; APA, § 1.1(b), pg. 11 of 108. Specifically, Binance is to acquire,

> to the extent permissible by law . . . any Personal Information[6] . . . related to (A) all active and inactive accounts of Users . . . and (B) any other consumers located or having a home address in the United States from whom Personal Information was collected by [Voyager].

*Id.*[7] The Debtors, however, have not disclosed in the APA (i) all of their privacy policies that apply to the individuals that provided them personally identifiable information, and (ii) if a purchaser will be required to comply with the Debtors' privacy policies. Accordingly, if the Debtors seek to sell personally identifiable information, the approval of the APA should require the appointment of a consumer privacy ombudsman pursuant to Bankruptcy Code section 332(a).

For these reasons, the Debtors have failed to establish that the APA Motion and the Scheduling Motion are justified by the facts and circumstances of these cases.

**WHEREFORE,** the United States Trustee respectfully requests that the Court sustain the foregoing Objection and grant such other and further relief as the Court may deem just and proper.

Dated: New York, New York
January 4, 2023

                                                Respectfully submitted,

                                                WILLIAM K. HARRINGTON
                                                UNITED STATES TRUSTEE, Region 2

---

[6] The "Personal Information," as defined in the APA, includes information "that identifies, relates to, describes, could be used to locate or contact . . . a natural Person . . . or is otherwise considered "personally identifiable information." APA, § 11.1(kkk), pg. 89 of 108.

[7] Excluded from the Voyager assets to be transferred to Binance is "Personal Information that is subject to the GDPR or collected from natural persons with addresses outside the United States." APA Motion, ¶ 28, pg. 19 of 150; APA, § 1.2(p), pg. 14 of 108.

By: */s/ Richard C. Morrissey*
Trial Attorney
Office of the United States Trustee – NY Office
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, NY 10004-1408
Tel. (212) 510-0500

16