Hearing Date: January 10, 2023, at 2:00 p.m. (prevailing Eastern Time)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC., et al.,[1] | ) Case No. 22-10943-MEW |
| | ) (Jointly Administered) |
| Debtors. | ) |

LIMITED OBJECTION OF THE NEW YORK STATE DEPARTMENT OF
FINANCIAL SERVICES TO DEBTORS' MOTION FOR ENTRY OF
AN ORDER (I) AUTHORIZING ENTRY INTO THE BINANCE US
ASSET PURCHASE AGREEMENT AND (II) GRANTING RELATED RELIEF

The New York State Department of Financial Services (the "Department" or "DFS"), files this Limited Objection (the "Objection") to the Debtors' Motion for Entry of an Order (I) Authorizing Entry into the Binance US Purchase Agreement and (II) Granting Related Relief [Dkt. No.775] (the "Debtors' Motion"). The Binance US Asset Purchase Agreement ("APA")[2] both furthers Debtors' unlawful unlicensed crypto currency-related activities in New York and does so to the discriminatory disadvantage of New York consumers. Voyager unlawfully opened accounts for New Yorkers without a license, depriving them of the consumer protections inherent in the regulatory supervision that arises from such a license. The APA as proposed exacerbates that consumer injury, as, under the express provisions of the APA, Voyager and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC (8013), collectively all entities are referred to as "Voyager" or the "Debtors." The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2] The APA is attached to the Debtors' Motion as Exhibit B [Dkt. No. 775]. References herein to Binance US refer to BAM Trading Services Inc. d/b/a Binance.US. See Debtors' Motion, ¶ 1 [Dkt. No. 775]. The Debtors' Motion purports only to seek the Court's approval to enter into the APA, and not approval of the transaction itself; Debtors represent that they seek to effectuate the transaction through the *Third Amended Joint Plan of Voyager Digital Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, No. 22-10943 (Bankr. S.D.N.Y.), Dkt. No. 777, Exh. A (the "Plan"). Debtors' Motion, ¶¶ 16-17. This Objection is intended to address reasons for the court to modify or condition approval of Debtors to enter into Section 6.12(b) of the APA, which is objectionable on its face. Relying upon the Debtors' statement, this limited objection focuses on the APA, and not the transaction or Plan.

Binance US have the ability to discriminate against these same New York account holders: not only does the APA contemplate a transfer of the New York account assets to Binance US (which is, like Voyager, not licensed to conduct a virtual currency business in New York), but it also provides that such accounts can be held for up to six months after the Closing Date,[3] during which time the New York account holders will have no control whatsoever over these assets, unlike account holders in states other than New York, Hawaii, Vermont, and Texas,[4] who will be able to trade in Binance US accounts upon the User Asset Migration Date,[5] soon after the Closing Date.[6] The Debtors should not be permitted to further victimize New York consumers by delaying access to these assets through the APA.

## OVERVIEW

1. The Department objects to the Debtors' Motion because neither the Debtors nor Binance US has ever been licensed to engage in crypto currency-related activities in New York, and, to date, neither has satisfied New York licensure requirements despite having submitted applications.[7] Notwithstanding Debtors' non-licensure in New York, Voyager unlawfully opened accounts on its platform on behalf of New Yorkers, without the panoply of consumer protections that flow from a New York license.

---

[3] The "Closing Date" is defined in Section 2.3 of the APA as the date on which the Closing Occurs, which is the delivery of the purchase price and consummation of agreements contemplated by the APA.

[4] Section 6.12(b) of the APA defines "Unsupported Jurisdictions" as New York, Texas, Vermont, and Hawaii. For those account holders in those states, as discussed *infra* at paragraphs 12-14, the APA allows the Debtors to elect whether to send those assets to Binance US or not.

[5] Capitalized terms not defined herein have the definition provided in the APA. *See also* n.12, *infra*.

[6] To the extent that Voyager practically will not choose to exercise the option if Binance US is not licensed before the time set for the transfer, DFS has reached out to Voyager to negotiate a written assurance to this effect but to date those negotiations remain outstanding.

[7] *See Second Amended Disclosure Statement Relating to the Third Amended Joint Plan*, No. 22-10943 (Bankr. S.D.N.Y.), Dkt. No. 778 ("Disclosure Statement"), § IV.J. n.18 (noting Debtors have applications pending in New York).

2

2.      In addition to the prospect of further unlicensed activity in the State of New York, the Objection is primarily based on the discriminatory provisions of Section 6.12(b) of the APA, which give Debtors discretion to transfer assets owed to customer accounts of New Yorkers to Binance US, an unlicensed entity in New York, instead of liquidating and distributing the assets within a short time of the Closing Date. Binance US can then hold these assets for up to six months after the Closing Date before liquidating and transferring back to the Debtors for distribution to the account holders in the event Binance US does not obtain a New York license during that time. During these six months, the New York account holders will have no ability to control the assets in their accounts, including choosing whether or not to sell them should the crypto market continue its precipitous decline. In contrast, account holders in states other than Unsupported Jurisdictions will have the freedom to trade their Coins as they see fit once their assets are migrated and their Binance US accounts are set up.

3.      Thus, for up to six months after the Closing Date, unlike account holder creditors in states where Binance US is licensed, New York account holders will be powerless as they shoulder the uncertainties of Binance US's parent company's future, which some news outlets suggest may be headed toward criminal indictment.[8] Essentially, the Debtors and the APA put New York account holders in the untenable and grossly unfair position of first having been unlawfully signed up as Voyager customers, and then having their already high risk exacerbated by locking up their accounts for up to six months after the Closing Date, helplessly subject to the vicissitudes of the turbulent crypto market, all because they were Voyager customers in a state in which Voyager shunned the law.

---

[8] *E.g., Exclusive; U.S. Justice Dept is split over charging Binance as crypto world falters*, REUTERS, *available at* https://www.reuters.com/markets/us/us-justice-dept-is-split-over-charging-binance-crypto-world-falters-sources-2022-12-12/?utm_source=Sailthru&utm_medium=newsletter&utm_campaign=reuters-business&utm_term=Business%20News%20-%202021%20-%20Master%20List.

## FACTUAL BACKGROUND

4.      The Department supervises and regulates the activities of nearly 3000 financial institutions, including banks, trust companies and insurance companies. DFS is responsible for, among other things, protecting consumers, fighting consumer fraud, and ensuring that regulated entities comply with applicable New York and federal laws and regulations. DFS accomplishes this, among other methods, by investigating and bringing enforcement actions against individuals and entities who may have violated such laws and regulations. *See* New York Financial Services Law §§ 102, 201, 301, 306, 404, 408 ("Applicable Law"). Specifically relevant to this matter, the Department administers and enforces New York's nation-leading virtual currency (also known as "cryptocurrency") regime. *See* 23 N.Y.C.R.R Part 200.

5.      The Debtors are engaged in virtual currency brokerage, custody, and lending businesses, with a customer base purporting to be international in scope.[9] If and to the extent the Debtors' virtual currency business activities are conducted in New York State or with New Yorkers, they would be subject to licensure and regulation under Applicable Law.

6.      To date, the Department has not licensed any of the Debtors to conduct virtual currency business activities in New York State or with New York consumers. The Debtors currently have pending with the Department applications for Voyager Digital New York, LLC, which the Department understands to be a not-yet operational member of the Voyager family of companies, to become licensed as both a virtual currency business and a money transmission business in New York. *See* Disclosure Statement § IV.J. n.18.

---

[9] *Debtors' Motion for Entry of an Order (I) Restating and Enforcing the Worldwide Automatic Stay, Anti-Discrimination Provisions, and Ipso Facto Protections of the Bankruptcy Code, (II) Approving the Form and Manner of Notice, and (III) Granting Related Relief*, No. 22-10943 (Bankr. S.D.N.Y.), Dkt. No. 6, ¶ 8.

7. Despite the fact that none of the Debtors are licensed in New York, the Department is aware of allegations and other information indicating that one or more of the Debtors may have operated and may be continuing to operate in New York in violation of Applicable Law.

8. On July 5, 2002, Voyager filed for bankruptcy and continued to operate its businesses as a debtor-in-possession pursuant to sections 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code").[10]

9. During the latter half of September 2022, after the Debtors' marketing efforts to sell the company, an auction of the Debtors' assets was held and West Realm Shires, Inc. ("FTX") was the winning bidder [Dkt. No. 457]. On October 20, 2022, the Court entered an *Order Authorizing Entry into the Asset Purchase Agreement* with FTX [Dkt. No. 581].

10. On November 11, 2022, FTX filed for bankruptcy and on November 14, 2022, West Realm Shires, Inc. filed for bankruptcy. The Voyager asset sale to FTX did not close.

11. On or about December 21, 2022, the Debtors filed the Debtors' Motion seeking approval to enter into the APA with Binance US [Dkt. No. 775].

## THE APA AND THE PLAN

12. Section 6.12 (b) of the APA, "Crediting of Accounts; Unsupported Jurisdictions, Transfer of Coins to Seller; Liquidations or Distributions by Seller," allows for unjustifiable discriminatory treatment between New York account holders who hail from an "Unsupported Jurisdiction" and account holders in other states:

> (b) Notwithstanding anything to the contrary herein or otherwise, for any Person (including any User or Eligible Creditor) that is located in Hawaii, New York, Texas or Vermont, to the extent that Purchaser does not have a Money Transmitter License or similar license in such jurisdiction or in any other jurisdiction where the applicable Governmental Body asserts after the date of this Agreement that Purchaser or any of its Affiliates requires a Money

---

[10] *Voluntary Petition for Non-Individuals Filing for Bankruptcy*, No. 22-10943 (Bankr. S.D.N.Y.), Dkt. No. 1.

5

> Transmitter License or similar license in order to consummate the Transactions or perform its obligations hereunder (each, an "Unsupported Jurisdiction"), Purchaser and its Affiliates shall not be required to (i) credit or make any payment (with any Coins, cash or otherwise) to any account of such Person (including any User or Eligible Creditor) on the Binance.US Platform, or (ii) permit any such Person or account of such Person on the Binance.US Platform to be active or conduct any trading or investing in Coins. Notwithstanding anything herein to the contrary, prior to the Closing, Seller have the option to elect (upon consultation with professionals representing the committee of unsecured creditors in the Bankruptcy Case) that either (i) Seller shall not deliver to Purchaser any Coins, cash, or other asset with respect to any User or Eligible Creditor located in an Unsupported Jurisdiction or (ii) Seller shall deliver such Coins to Purchaser at Closing. Upon receipt by Purchaser of any Unsupported Jurisdiction Approvals with respect to any Unsupported Jurisdiction(s), which Unsupported Jurisdiction Approvals permit Purchaser to perform its obligations under Section 6.12(a) in such Unsupported Jurisdiction, then Purchaser shall promptly notify Seller of receipt of such Unsupported Jurisdiction Approval and, if Seller has not previously delivered applicable Coins, cash, or other asset with respect to any User or Eligible Creditor located in such Unsupported Jurisdiction then Seller shall so deliver such assets to Purchaser within five (5) Business Days of such notification, and Purchaser shall (following receipt of any applicable assets if required) consummate the actions in such Unsupported Jurisdiction that were restricted by this Section 6.12(b); provided that to the extent Purchaser does not receive such Unsupported Jurisdiction Approval(s) with respect to any Unsupported Jurisdiction prior to the date that is six (6) months following the Closing Date, then to the extent Purchaser is holding any Acquired Coins with respect to Users or Eligible Creditors in such Unsupported Jurisdictions, Purchaser shall convert such Acquired Coins into United States Dollars at the then-prevailing rates (including applicable fees, spreads, costs and expenses) on the Binance.US Platform and deliver such United States Dollars, together with any cash or others assets in respect of such Users or Eligible Creditors to Seller within five (5) Business Days, for further distribution by Seller in accordance with the Plan.

13. Under Section 6.12(b), the Debtors have an option to transfer Coins or assets with respect to an account holder in an Unsupported Jurisdiction to Binance US, another unlicensed entity. After that transfer, Binance US can hold onto the assets[11] and it is only forced to liquidate

---

[11] As Binance US is not licensed in New York, it cannot offer New York account holders an account on the

the Coins and assets six months after the Closing Date. APA, § 6.12(b). Binance US, however, cannot hold the assets of the account holders in the other jurisdictions in the same way. Although the APA provides that the assets of the account holders outside of Unsupported Jurisdictions will be transferred to Binance US, these account holders can set up a Binance US account and begin controlling the assets once that process is complete, which may occur long before account holders in the Unsupported Jurisdictions obtain their distribution.[12]

14.    Additionally, should the Debtors not elect to transfer the Coins and assets of the accounts in the Unsupported Jurisdictions to Binance US, there is no indication of when these funds will be liquidated and distributed. Section 6.12(b) does not provide a date by which this will happen.[13] No binding writing confirms that account holders in Unsupported Jurisdictions will receive their distributions on the same date as those in other jurisdictions.[14]

---

Binance.US Platform.

[12] Under the APA, the User Asset Migration Date is the date by which each User shall have an account on the Binance US platform. APA, § 6.10(c) ("Purchaser shall cause an account to be opened for each User on the Binance.US Platform on or before the User Asset Migration Date.") The User Asset Migration Date is only four weeks after the User Migration Preparation. APA, § 11.1(uuu). Assuming that the User Migration Preparation occurs earlier than five months after the Closing Date, Binance US can lock up funds belonging to account holders in Unsupported Jurisdictions longer than those account holders in other jurisdictions.

[13] Nor does the Plan offer much guidance. The Plan provides that as of the Effective Date, "or as soon as practicable thereafter," each holder shall receive their distribution. Plan, § VI.A. "Account Holder Claims," in both Unsupported Jurisdictions and other jurisdictions, are grouped in Class 3 (Plan, § III.C.3), but the Plan does not state that the timing of distributions to all Class 3 group members will be the same.

[14] Article VI.C.8. of the Plan states that any account holders that do not become "Transferred Creditor[s]," with a Binance US account, will have their account liquidated and delivered to the Debtors for further distribution "within five (5) Business Days" of a date that is three months following the later of the Closing Date or the date on which terms and conditions of the Binance US platform are made available for account holders. Plan, § VI.C.8. However, this does not offer much help. First, does it capture account holders in Unsupported Jurisdictions, who cannot sign onto Binance? If so, it conflicts with section 6.12(b) of the APA, whereby Binance has six months, post-closing, before having to liquidate Coins associated with account holders in Unsupported Jurisdictions. If it does not, it offers no help on when New York residents may expect their cash.

LIMITED OBJECTION

A.  Section 6.12(b) of the APA Allows for Unfair Discrimination

15.     The Debtors' Motion seeks approval only of the APA, not the transaction itself. Debtors' Motion ¶¶ 16-17. Although any objection to the Plan would be premature, approval of the APA necessarily leads to issues with how claims are distributed, as the APA determines, in part, whether account holders receive distributions in Coins or cash. If a sale of assets dictates the terms of an ensuing plan, it may be objectionable. *In re GMC*, 407 B.R. 463, 495 (Bankr. S.D.N.Y. 2010).[15]

16.     Neither the Debtors nor Binance US has a license to conduct crypto currency-related activities in New York. Both the Debtors and Binance US have pending license applications with the Department, which are under review with no expected date for determination.

17.     The failures of the Debtors and Binance to achieve New York licensing cannot properly be the basis to relegate New York account holders to a disadvantaged "Unsupported Jurisdiction" status, where they potentially will have no control whatsoever over their assets for up to six months after the Closing Date, while account holders in other jurisdictions, members of the same class of creditors, will not be subject to the same constraint.

18.     If Voyager elects to turn over the Unsupported Jurisdictions' account assets to Binance, New Yorkers will have no control over those assets for up to six months, during which time (a) Binance's financial condition could deteriorate and New Yorkers' assets could be subjected to and diluted by yet another bankruptcy proceeding, and/or (b) crypto values could continue to fall and New Yorkers will have no choice but to simply watch their assets dissipate;

---

[15] Although DFS is not objecting to the Plan at this juncture, it is forced to highlight issues that may arise if and when the Plan is confirmed. A reorganization plan cannot discriminate between members of a class. 11 U.S.C. § 1123(a)(4).

8

whereas, other creditors in the same class will have the opportunity, upon the User Asset Migration Date, to have control over their assets.[16]

19. Voyager's establishment of any accounts on behalf of New Yorkers constituted unlicensed activity, and the Purchaser in the APA, Binance US, is similarly unlicensed in New York. The licensing status should not unfairly delay any recovery owed to New Yorkers, as compared to account holders in other states.

B. Reports Indicate that Binance US is in Precarious Financial and Reputational Standing

20. As Section 6.12 of the APA subjects New Yorkers to the potential of having their account assets transferred to Binance US, it also subjects those assets to the custodianship of an entity that has not managed to meet New York licensing requirements and that is reported to be in financial trouble and could be facing federal criminal action.[17]

RELIEF REQUESTED

21. The Department requests that the Debtor not be permitted to enter into Section 6.12(b) of the APA as it is currently written.

22. The Department respectfully requests that the Debtors not be permitted to elect to transfer any New York account holder assets to Binance US, unless Binance US obtains some form of licensure in New York prior to the Closing Date that would permit Binance US to transfer in kind assets to New York account holders (rather than cash).

    a. In the event that Binance US does not obtain such New York licensure, the Department seeks a binding assurance that the Debtors will liquidate and

---

[16] The account holders in the other jurisdictions will have the option to keep open a Binance US account or close it and move their assets to a different platform.

[17] *E.g., see* n.7; *see also* Press Release, Statement on Undertaking Given by Binance, *available at* https://www.osc.ca/en/news-events/news/statement-undertaking-given-binance (reporting that the Ontario Securities Commission published an undertaking given by Binance Holdings Limited, related to Binance's false notification to investors of allowed operations in Ontario, and false representation to Canadian regulators that there were trading restrictions for certain accounts).

        distribute the assets owed to the New York account holders before or at the same time that the accounts for users in other Jurisdictions are opened with Binance US (*i.e.*, on the User Asset Migration Date); and/or

    b. In the event that Binance US does obtain such New York licensure, the Department seeks binding assurance that the Debtors will transfer the assets owed to the New York account holders to Binance US at the same time that the accounts for users in other jurisdictions are opened with Binance US (*i.e.*, at the latest, on the User Asset Migration Date).

23.    This result will ensure that the New York account holders will obtain control over the value of their accounts at the same time that the account holders in the other jurisdictions will gain control over their assets. It will also ensure that New Yorkers' assets are not put at greater risk by being under the control of Binance US.

## RESERVATION OF RIGHTS

24.    The Department reserves the right to supplement this Objection or to raise additional or further Objections to the Debtors' Motion at or prior to the Hearing or at any other relevant hearing. Moreover, by raising this Objection at this time, the Department does not waive its right to raise an Objection in the future based upon the same or similar grounds.

## PRAYER

25.    WHEREFORE, based on the foregoing, the New York State Department of Financial Services respectfully requests that the Debtors not be permitted to agree to Section 6.12(b) of the APA as currently written, and instead that any approval of the APA provide that:

        i. the Debtors will not transfer any New York account holder assets to Binance US, unless Binance US obtains some form of licensure from the Department prior to the Closing Date;

10

    ii. In the event that Binance US does obtain such New York licensure, the Department seeks binding assurance that the Debtors will transfer the assets owed to the New York account holders to Binance US at the same time that the accounts for users in other jurisdictions are opened with Binance US (*i.e.*, at the latest, on the User Asset Migration Date);

    iii. In the event that Binance US does not obtain such New York licensure, the Department seeks a binding assurance that the Debtors will liquidate and distribute the assets owed to the New York account holders before or at the same time that the accounts for users in other jurisdictions are opened with Binance US (*i.e.*, on the User Asset Migration Date); and

    iv. for such further and equitable relief that the Court finds appropriate.

Dated: New York, New York  
       January 4, 2023

                                  */s/ Kevin R. Puvalowski*  
                                  Kevin R. Puvalowski  
                                  Acting Executive Deputy Superintendent  
                                  Consumer Protection and Financial Enforcement  
                                  New York State Department of Financial Services  
                                  One State Street  
                                  New York, New York 10004-1511  
                                  (212) 709-7156  
                                  Kevin.Puvalowski@dfs.ny.gov

                                  */s/ Linda Donahue*  
                                  Linda Donahue  
                                  Deputy General Counsel for Litigation  
                                  New York State Department of Financial Services  
                                  One State Street  
                                  New York, New York 10004-1511  
                                  (212) 709-1641  
                                  Linda.Donahue@dfs.ny.gov

*/s/ Jason D. St. John*
Jason D. St. John
Assistant Deputy Superintendent
Consumer Protection and Financial Enforcement
New York State Department of Financial Services
One State Street
New York, New York 10004-1511
(646) 343-4199
Jason.Stjohn@dfs.ny.gov