Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | Case No. 22-10943 (MEW) |
| Debtors. | (Jointly Administered) |
| | **Re Docket Nos.:  778, 779, 807, 808, 809, 811, 813, 814** |

## DEBTORS' OMNIBUS REPLY TO
## OBJECTIONS TO THE DISCLOSURE STATEMENT MOTION

The above-captioned debtors and debtors in possession (collectively, the "Debtors")
respectfully submit this omnibus reply (this "Reply") in support of the *Second Amended
Disclosure Statement Relating to the Third Amended Joint Plan of Voyager Digital Holdings, Inc.
and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 778]
(including all exhibits and other supplements thereto, the "Disclosure Statement," and as modified,
amended, or supplemented, the "Amended Disclosure Statement") and in support of the *Debtors'
Motion for Entry of an Order (I) Scheduling a Combined Disclosure Statement Approval and Plan
Confirmation Hearing, (II) Conditionally Approving the Adequacy of the Debtors' Disclosure*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC
(8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY
10003.

*Statement, (III) Approving (A) Procedures for Solicitation, (B) Forms of Ballots and Notices, (C) Procedures for Tabulation of Votes and (D) Procedures for Objections, and (IV) Granting Related Relief* [Docket No. 779] (the "Disclosure Statement Motion") seeking entry of an order, substantially in the form filed in connection therewith (the "Disclosure Statement Order," as modified, amended, or supplemented, the "Revised Disclosure Statement Order") and in response to the (i) *Limited Objection and Reservation of Rights of the U.S. Securities and Exchange Commission to Debtors' Motions (I) Authorizing Entry into the Binance.US Purchase Agreement and (II) Conditionally Approving the Adequacy of the Debtors' Disclosure Statement* [Docket No. 807] (the "SEC Objection") filed by the U.S. Securities and Exchange Commission (the "SEC"); (ii) *Response of the New Jersey Bureau of Securities to: (A) Debtors' Motion For and Order (I) Authorizing Entry Into the Binance.US Purchase Agreement and (II) Granting Related Relief, (B) Debtors' Motion For, Among Other Things, Conditional Approval of the Adequacy of the Debtors' Disclosure Statement, and (C) Reservation of Rights* [Docket No. 808] (the "New Jersey Objection") filed by the New Jersey Bureau of Securities ("New Jersey"); (iii) *Objection to the Adequacy of Debtors' Second Amended Disclosure Statement* [Docket No. 809] (the "Vermont Objection") filed by the Vermont Department of Financial Regulation ("Vermont"); (iv) *Objection of the United States Trustee to Debtors' Motions (A) for Entry of Orders (I) Authorizing Entry into the Binance.US Purchase Agreement, and (B) (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Adequacy of the Debtors' Disclosure Statement, (III) Approving (A) Procedures for Solicitation, (B) Forms of Ballots and Notices, (C) Procedures for Tabulation of Votes and (D) Procedures for Objections, and (IV) Granting Related Relief* [Docket No. 811] (the "U.S. Trustee Objection") filed by the United States Trustee for Region 2 (the "U.S. Trustee"),

2

(v) *Objection to Debtors' Conditional Disclosure Statement Motion* [Docket No. 813] (the "AlamedaFTX Objection") filed by Alameda Research LLC ("Alameda") and its affiliates (collectively, "AlamedaFTX"); and (vi) *Objection of the Texas State Securities Board and the Texas Department of Banking to the Debtors' Second Amended Disclosure Statement Relating to the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 814] (the "Texas Objection") filed by the Texas State Securities Board and the Texas Department of Banking ("Texas") (together, the "Objections" and the objecting parties, the "Objectors"). In further support of approval of the Amended Disclosure Statement and entry of the Revised Disclosure Statement Order, the Debtors respectfully state as follows: [2]

## **Preliminary Statement**

1. From July through September 2022, the Debtors engaged in significant efforts to market their business and identify the transaction that maximized recoveries to creditors. After a multiweek auction, the Debtors negotiated and executed that certain asset purchase agreement with West Realm Shires, Inc. ("FTX US") (the "FTX US APA" and the transaction contemplated thereunder, the "FTX US Transaction") to sell substantially all of the Debtors' assets to FTX US. The FTX US APA provided for substantial in-kind recoveries to Account Holders, the transfer of substantially all of the customer accounts on the Debtors' platform to FTX US's platform, and the orderly wind down of the Debtors' estates. However, as described in further detail in the Amended

---

[2]    Capitalized terms used but not defined herein have the meaning given to them in the *Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, filed contemporaneously herewith (including all exhibits and other supplements thereto, and as modified, amended, or supplemented, the "Plan") or in the *Debtors' Motion for Entry of an Order (I) Authorizing Entry Into the Binance.US Purchase Agreement and (II) Granting Related Relief* [Docket No. 775] (the "Binance.US APA Motion"), as applicable. Any objection to the Debtors' entry into the Binance.US Asset Purchase Agreement and Binance.US Transaction are addressed in the *Debtors' Omnibus Reply to Objections to APA Motion* (the "Binance.US APA Reply"), filed contemporaneously herewith.

Disclosure Statement, the unprecedented and historic collapse of FTX US led to the collapse of the FTX US Transaction. The Debtors immediately sprang into action, reengaging in negotiations with several interested counterparties on the terms of a potential alternative transaction.

2. Following good-faith, arm's-length negotiations with all interested parties, the Debtors negotiated and entered into an asset purchase agreement (the "Binance.US APA" and the transaction contemplated thereunder, the "Binance.US Transaction") with BAM Trading Services Inc. ("Binance.US"). Similar to the FTX US APA, the Binance.US APA contemplates the sale of substantially all of the Debtors' assets to Binance.US and consummation of the Binance.US Transaction through the Plan. Accordingly, and in connection therewith, the Debtors are seeking conditional approval of the Amended Disclosure Statement.

3. Conditional approval of the Amended Disclosure Statement is appropriate due to the extraordinary events of these chapter 11 cases. The fallout caused by FTX US's egregious conduct before and during these chapter 11 cases and FTX US's subsequent collapse has left the Debtors with tight liquidity and mounting administrative costs. The Debtors must work quickly in order to preserve the value of the Debtors' estates and maximize distributions to creditors. Further, conditional approval of the Amended Disclosure Statement is appropriate because much of the information in the Amended Disclosure Statement has been publicly available for months in the *First Amended Disclosure Statement Relating to the Second Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 591] (the "FTX US Disclosure Statement") and was already approved by the Court [*See* Docket No. 586].

4. The purpose of a disclosure statement is to enable holders of claims and interests to make an informed decision regarding whether to vote to accept or reject a chapter 11 plan as

required by section 1125 of the Bankruptcy Code. While this determination includes considerations of accuracy and fairness, it does not include the consideration of substantive objections a creditor may have to a proposed plan. Instead, the fundamental question at this stage is whether the Amended Disclosure Statement provides adequate information for creditors to make an informed vote on the Plan. There is no serious dispute on that score: it clearly does. The Amended Disclosure Statement provides fulsome, clear, accurate, and fair information sufficient for a creditor to determine how to vote on the Plan, and, therefore, the Debtors respectfully submit that the Amended Disclosure Statement should be conditionally approved, subject to final approval at the Combined Hearing. Creditors had and will continue to have sufficient time to review the information contained in the Amended Disclosure Statement in order to make an informed voting decision with respect to the Plan in advance of the Voting Deadline.

5. The Debtors received six formal objections to the approval of the Amended Disclosure Statement, as well as a number of informal comments. The limited number of objections to the Amended Disclosure Statement is significant, given that the Debtors have over one million customers and other parties in interest in these chapter 11 cases. Notably, not a *single* customer objected to the Amended Disclosure Statement.

6. The objections generally fall into two broad categories: (a) objections to the adequacy of the information contained in the Disclosure Statement and (b) objections to specific Plan provisions that are premature and more appropriately addressed in connection with confirmation of the Plan. As further described herein, the Amended Disclosure Statement satisfies the applicable standards under the Bankruptcy Code and the remaining confirmation-related objections should be considered at the Combined Hearing.

7.        The Debtors have worked, and will continue to work, with each of the Objectors to attempt to resolve their objections consensually ahead of the Combined Hearing.  Of the remaining outstanding objections, those that raise actual disclosure deficiencies have been addressed through additional language in the Amended Disclosure Statement, as described herein and summarized in the chart attached hereto as **Exhibit A** (the "Response Chart").  The other outstanding Objections that seek to address alleged deficiencies of the Plan are not properly before the Court at this juncture, and their consideration is premature.  The Disclosure Statement satisfies the relevant disclosure standards under section 1125 of the Bankruptcy Code, and the Debtors therefore respectfully request that the Court overrule the Objections and enter the Revised Disclosure Statement Order.

**Reply**

**I.    The Amended Disclosure Statement Contains Adequate Information Under Section 1125 of the Bankruptcy Code.**

8.        The Amended Disclosure Statement complies with all relevant sections of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law. Pursuant to section 1125 of the Bankruptcy Code, a disclosure statement must provide holders of claims and interests entitled to vote with "adequate information" regarding the plan.  Section 1125(a)(1) of the Bankruptcy Code states, in relevant part:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

9.      "Adequate information" has been interpreted as information that is "reasonably practicable" to permit an "informed judgment" by creditors voting on a chapter 11 plan. *See In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994).   The adequacy of information in a disclosure statement is determined on a case-by-case basis. *See In re Ionosphere Clubs, Inc.*, 179 B.R. 24, 29 (Bankr. S.D.N.Y. 1995) (the adequacy of a disclosure statement "is to be determined on a case-specific basis under a flexible standard that can promote the policy of Chapter 11 towards fair settlement through a negotiation process between informed interested parties"); *see also In re Oneida Motor Freight, Inc.*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case.").

10.      As demonstrated in the table below and consistent with Second Circuit precedent, the Amended Disclosure Statement contains the categories of information necessary for voting creditors to make an informed judgment to accept or reject the Plan:

| Category | Description | Location in Disclosure Statement |
|---|---|---|
| Treatment of Claims and Interests | A description and summary of the treatment of all Claims and Interests under the Plan. | Article IV.D |
| Debtors' Corporate History, Structure, and Business Overview | An overview of the Debtors' corporate history, business operations, organizational structure, and capital structure. | Article VI |
| Description of Events Leading to these Chapter 11 Cases | An overview of the events leading to the Debtors' filing of these chapter 11 cases, including the making and recalling of the 3AC Loan. | Article VII |
| Prepetition Marketing and Restructuring Efforts | An overview of the Debtors' prepetition efforts to stabilize operations and, in parallel, run a thorough marketing process to solicit a strategic transaction for an out-of-court financing or investment. | Article VII |
| The Special Committee's Investigation, Conclusion, and Proposed Settlements | A detailed description of the Investigation conducted by the Special Committee with respect to, among other things, Voyager's loans to third parties, and the conclusions and proposed settlement recommended by the Special Committee. | Article VII.A.2(b); Article VIII.O |

| Category | Description | Location in Disclosure Statement |
|---|---|---|
| The Releases Contemplated under the Plan | A description of the release provisions sought pursuant to the Plan. | Article IV.P; Article V.A.3 |
| The Debtors' Plan | A description of the Debtors' Plan. | Article V |
| The Proposed Sale to Binance.US | An overview of the Debtors' sale and marketing process after the Petition Date and the details of the proposed Sale to Binance.US contemplated under the Plan. | Article VIII.N |
| Information Regarding Binance.US | Disclosures regarding certain considerations related to Binance.US and the Binance.US Transaction, including: (a) Binance.US's financial wherewithal, both in terms of its ability to consummate the Asset Purchase Agreement as well as its ability to meet obligations to Account Holders and Eligible Creditors (as defined in the Binance.US APA); (b) Binance.US's storing of the cryptocurrency of the Account Holders following the delivery of such Cryptocurrency to Binance.US, including how such cryptocurrency is stored and what measures Binance.US has taken to ensure the secure storage of such cryptocurrency; (c) regulatory considerations; (d) the process of onboarding the Account Holders and Eligible Creditors onto the Binance.US Platform as contemplated under the Asset Purchase Agreement; (e) VGX considerations; (f) data transfer and privacy considerations; and (g) the timing for distributions to Account Holders and Eligible Creditors in Unsupported Jurisdictions. | Article V.B |
| The Toggle Transaction | A description of the "toggle" feature of the Plan, including a detailed summary of the contemplated Binance.US Transaction and, if necessary, Liquidation Transaction. | Article V.B |
| Liquidation Analysis | An analysis of the liquidation value of the Debtors. | Exhibit B |
| Risk Factors | Certain risks associated with the Debtors' business, as well as certain risks associated with forward-looking statements and an overall disclaimer as to the information set forth in the Disclosure Statement. | Article IX |
| Solicitation and Voting Procedures | A description of the procedures for soliciting votes to accept or reject the Plan and voting on the Plan. | Article X |
| Confirmation of the Plan | Confirmation procedures and statutory requirements for confirmation and consummation of the Plan. | Article XI |
| Certain United States Federal Income Tax Consequences of the Plan | A description of certain U.S. federal income tax law consequences of the Plan. | Article XII |
| Recommendation | A recommendation by the Debtors that Holders of Claims in the Voting Classes should vote to accept the Plan. | Article XIII |

11.    The Amended Disclosure Statement contains adequate information to allow creditors to make an informed judgment as to whether to vote to accept or reject the Plan.  It describes in detail, among other things:  (i) the history and background of these chapter 11 cases; (ii) the Debtors' corporate history, structure, and business; (iii) the treatment of each Class of Holders of Claims and Interests under the Plan; (iv) the Debtors' marketing and sale process, and the Debtors' multiweek auction; (v) the collapse of FTX US and the FTX US Transaction; (vi) negotiations with interested third parties on the terms of potential transactions, which ultimately culminated in the Binance.US APA; (vii) the Binance.US Transaction, including a description of the consideration received and the mechanics of the Binance.US Transaction; (viii) information regarding Binance.US and its financial position, regulatory status, and business practices; (ix) a summary of the Customer Onboarding Protocol and distribution mechanics; (x) the Toggle Transaction; (xi) a comparison of the form of, and estimated recoveries of, Holders in connection with the Binance.US Transaction and Toggle Transaction under the Plan to the form of, and estimated recoveries of, Holders in a chapter 7 liquidation scenario; (xii) the Wind-Down Entity, including the assets to be transferred to the Wind-Down Entity and the mechanics of distributions from it; (xiii) the solicitation and voting procedures; (xiv) risk factors to be considered when voting on the Plan; (xv) the Investigation, including details regarding the Special Committee's authority and mandate and the conclusions made and proposed settlements recommended by the Special Committee; and (xvi) certain U.S. federal tax consequences of the Plan.  *See In re Walker*, 198 B.R. 476, 479 (Bankr. E.D. Va. 1996) (holding that, in evaluating the sufficiency of a disclosure statement, "[a] debtor cannot be expected to unerringly predict the future, but rather must provide information on all factors *known to him at the time* that bear upon the success or failure of the proposals set forth in the plan." (emphasis added)).

12.     Moreover, much of the information contained in the Amended Disclosure Statement will be familiar to creditors and the Court—disclosures regarding, among other things, the Debtors' corporate history, the Debtors' marketing and sale process, the releases contemplated under the Plan, potential intercompany claims, and the Special Committee Investigation were previously disclosed in the FTX US Disclosure Statement. The Debtors have updated the Amended Disclosure Statement with additional detail regarding events that have taken place since the FTX US Disclosure Statement was filed, including the collapse of the FTX US Transaction and the events leading up to and including the execution of the Binance.US APA. The Amended Disclosure Statement also includes new disclosures regarding, among other things, the mechanics of the Binance.US Transaction, the Customer Onboarding Protocol, and the Toggle Transaction.

13.     Accordingly, the Disclosure Statement provides creditors with "adequate information," as defined in section 1125(a)(1) of the Bankruptcy Code, to allow creditors to make an informed judgment as to whether to vote to accept or reject the Plan, notwithstanding assertions to the contrary by the Objectors.

**II.     The Amended Disclosure Statement Resolves and Addresses the Disclosure-Related Objections.**

14.     As reflected in the Response Chart, the Debtors have provided enhanced disclosure to resolve objections to the adequacy of information contained in the Amended Disclosure Statement.

> **A.     The Amended Disclosure Statement Provides Adequate Information Regarding the Binance.US Transaction.**

15.     The Vermont Objection alleges that the Amended Disclosure Statement does not include sufficient disclosure regarding the Binance.US Transaction and does not include the Binance.US APA as an attachment to the Disclosure Statement. As an initial matter, the Debtors attached the Binance.US APA as <u>Exhibit D</u> to the Amended Disclosure Statement. In addition to

the extensive detail provided in the Binance.US APA with respect to the Binance.US Transaction, the Amended Disclosure Statement provides creditors with, among other details, a description of the FTX US collapse and abandonment of the FTX Transaction, the recommencement of the marketing process and negotiation of the Binance.US APA, the consideration being offered by Binance.US, the treatment of Account Holders under the Plan, the mechanics of facilitating distributions to Account Holders, including the Rebalancing Exercise, anticipated distributions to Account Holders under the Binance.US Transaction and the Toggle Transaction, and a detailed "Frequently Asked Questions" for Account Holders. *See* Disclosure Statement, Articles II, V.B, VIII.N, Exhibit C.

16.    The Vermont Objection alleges that the description of the Binance.US APA is inaccurate and confusing.    But the Vermont Objection demonstrates a fundamental misunderstanding of the Binance.US Transaction, including the consideration paid by Binance.US and the total value of the Binance.US Transaction.  The Debtors value the Binance.US Transaction at $1.022 billion, which is comprised of $1.002 billion of cryptocurrency on the Debtors' platform plus an additional $20 million of upfront consideration paid by Binance.US.   Binance.US is acquiring substantially all of the cryptocurrency on the Debtors' platform which will be distributed to Account Holders in accordance with the Plan, assuming certain obligations of the Debtors to Account Holders and other creditors, and paying incremental consideration to the Debtors in the amount of $20 million.  The Debtors are not required to transfer cryptocurrency to Binance.US to effectuate the Rebalancing Exercise—the Debtors can use any third-party provider to effectuate that transaction (or series of transactions) subject to Binance.US's right to match more favorable terms provided by a third party.  Pursuant to the Binance.US APA, the Debtors will retain all right, title, and interest in their cryptocurrency prior to closing, including any cryptocurrency rebalanced

with Binance.US or any other third-party.  The Plan and Disclosure Statement set forth the treatment afforded to Account Holders in Supported Jurisdictions and Unsupported Jurisdictions (each as defined in the Binance.US APA).  Account Holders who receive cryptocurrency on Binance.US's platform will have the ability to access, trade, sell, stake, or withdraw their cryptocurrency subject to Binance.US's Terms of Use.

17.    The Amended Disclosure Statement clearly explains the terms and mechanics of the Binance.US Transaction and includes additional clarifying details with respect to the Rebalancing Exercise.  *See* Amended Disclosure Statement, Article V.A.4.  The Debtors also added substantially similar language to the language requested by Vermont to clarify certain points regarding the Rebalancing Exercise.  *See id*.

18.    The Amended Disclosure Statement also provides adequate information with respect to the Debtors' understanding of the tax consequences of the Binance.US Transaction.  *See* Amended Disclosure Statement, Article XII.  Specifically, the Amended Disclosure Statement provides, in part, the Debtors' belief that "amounts [distributed in-kind] may be treated as a non-taxable transaction with respect to the underlying cryptocurrency," but also that, "[w]hether the Plan is structured as a Sale Transaction or a Liquidation Transaction, there is a material risk that U.S. Holders of Account Holder Claims will have a taxable event in connection with the consummation of the Plan or the 'dollarization' of Claims (or separate taxable events for one or both events).  This is the case even though the Sale Transaction contemplates the migration of customers to an acquiring cryptocurrency platform and even though the Liquidation Transaction contemplates that Account Holders can withdraw cryptocurrency from the Voyager platform."  *See* Amended Disclosure Statement, Article XII.C.1(a).

    **B.**    **The Amended Disclosure Statement Provides Adequate Information as to Binance.US's Financial Condition and Solvency and the Feasibility of the Binance.US Transaction.**

19.    New Jersey, Texas, Vermont, the U.S. Trustee, and the SEC each question Binance.US's ability to consummate the Binance.US Transaction. Such concerns are misplaced, and are veiled attempts to override the Debtors' business judgment based on speculation as opposed to the facts.

20.    The Objections are based on unverified media reports and ignore the fact that Binance.US has provided all Objectors with the opportunity to receive financial reports and other diligence evidencing Binance.US's strong financial position, which is particularly puzzling given that according to Binance, *all* of the Objectors that took advantage of that opportunity received said financial reports and related diligence evidencing Binance.US's capitalization. It is unclear why the Objectors feign ignorance of these facts. Additionally, advisors to the Debtors hosted, and continue to host, *weekly* telephone meetings (unless cancelled through mutual agreement of all parties) since the commencement of these chapter 11 cases, where the representative entities of each of the fifty United States may voice any concerns regarding the Debtors' restructuring process generally and any potential transaction partners and structure. Relatedly, New York, New Jersey (through the New Jersey Department of Banking and Insurance), and Vermont were provided with access to Binance.US's financial statements—the same financial statements, showing a well-capitalized company, as the other jurisdictions (including New Jersey) that have granted Binance.US money transmitter licenses authorizations, or exemptions, as applicable. Raising Disclosure Statement objections based on unsubstantiated and unverified media reports while ignoring the substantial information already made available to the Objectors is a naked attempt to undermine the Binance.US Transaction and attack Binance.US.

21.     The Amended Disclosure Statement provides adequate disclosure as to the financial wherewithal of Binance.US and the ability of Binance.US to consummate the proposed transaction.  Based on the Debtors' due diligence, Binance.US is well-capitalized and utilizes a business model that makes it significantly less susceptible to a "run on the bank" than business models of other companies in the cryptocurrency sector.  Among other things, (i) Binance.US holds customer assets on a one-to-one basis, meaning that Binance.US has the ability and liquidity to meet all customer withdrawals at any time; (ii) Binance.US does not lend customer assets out to third parties; (iii) Binance.US's reserves exceed customer deposits; and (iv) Binance.US has ample capital to pay the upfront costs of up to $35 million to consummate the Binance.US Transaction.  *See* Amended Disclosure Statement, Article V.B.

22.     New Jersey and Texas further allege that the Debtors did not conduct sufficient due diligence on Binance.US prior to entry into the Binance.US APA.  New Jersey and Texas are incorrect.  The Debtors disclose the diligence efforts undertaken in connection with the Binance.US APA in the Tichenor Declaration, which included reviews of certain audited financial statements, interim unaudited financial statements, available liquidity related party services agreements, wallet infrastructure, AML/KYC procedures, money transmitter licensing status, and business plans submitted to selected state regulators in connection with the issuance of money transmitter licenses.  *See* Tichenor Declaration ¶ 21.

C.     **The Amended Disclosure Statement Provides Adequate Information Regarding the Transfer of Account Holders and Cryptocurrency to Binance.US.**

23.     Vermont, New Jersey, and Texas each allege that the Disclosure Statement does not describe the entity that will hold Account Holder assets and the jurisdiction of such entity. Vermont Objection ¶ 22; New Jersey Objection ¶¶ 27, 29, 34–35; Texas Objection ¶ 26.  The Amended Disclosure Statement provides that BAM Trading Services Inc. d/b/a Binance.US, a

Delaware corporation, is the entity that will hold Account Holder assets, which shall be treated consistently with all other U.S. customers on the Binance.US platform. *See* Amended Disclosure Statement, Article V.B.

24.     The SEC alleges that the Disclosure Statement contains insufficient disclosure regarding how the Debtors and Binance.US intend to secure customer assets prior to and after consummation of the Binance.US Transaction. The Amended Disclosure Statement describes, in detail, the security protocols that the Debtors have in place to protect Account Holder assets from loss or theft prior to consummation of the Binance.US Transaction. *See id.*  Additionally, the Amended Disclosure Statement provides that the security protocols that Binance.US has in place to ensure the safe storage of customer assets post-closing adhere to the highest industry standards and have been certified as such by various third party industry experts. *See id.*

### D.    The Amended Disclosure Statement Provides Adequate Information as to the Treatment of Account Holders in Unsupported Jurisdictions.

25.     Vermont and Texas allege that the Disclosure Statement contains insufficient disclosure as to the treatment of Account Holders in Unsupported Jurisdictions.  Vermont Objection ¶ 26; Texas Objection ¶ 25.  The Binance.US APA, attached to the Amended Disclosure Statement as Exhibit D, provides a detailed description of the mechanics of distributions to Account Holders in Unsupported Jurisdictions. *See* Binance.US APA, Section 6.12, 6.14.  The Amended Disclosure Statement also contains enhanced disclosure regarding the treatment of Account Holders in Unsupported Jurisdictions under the Plan and the process by which such Account Holders will receive distributions. *See* Amended Disclosure Statement, Article V.B.1(c). Pursuant to the Plan if Binance.US does not receive the necessary regulatory approvals in Unsupported Jurisdictions within six months following the Closing Date (as defined in the Binance.US APA), Account Holders in Unsupported Jurisdictions will, after the expiration of such

six months period, receive the "value [of their Claim] in Cash at which such Net Owned Coins allocable to such Account Holder are liquidated." *See* Plan, Article III.C.3(c); Amended Disclosure Statement, Article IV.D. For the avoidance of doubt, if Binance.US does receive the necessary regulatory approvals in that six-month period, Account Holders in those Unsupported Jurisdictions will receive distributions in-kind.

> **E.    The Amended Disclosure Statement Provides Adequate Information as to the Third-Party Releases.**

26.    Vermont, Texas, and New Jersey raised objections that the Amended Disclosure Statement lacks adequate information pertaining to the Plan's third-party releases. *See* Vermont Objection ¶ 28; Texas Objection ¶ 27; New Jersey Objection ¶ 38. The Amended Disclosure Statement makes clear that the third-party release provisions under the plan are *opt in* releases— allowing voting or non-voting parties who choose to be releasing parties to *opt in* to those releases. *See* Amended Disclosure Statement, Article IV.P. With respect to the Debtor releases, the Amended Disclosure Statement includes significant disclosure surrounding the Special Committee's extensive investigation and settlement agreed upon between the Special Committee, the Debtors, and the Committee. The Court previously determined that the Amended Disclosure Statement included adequate information regarding the releases. *See Disclosure Statement Order*.

27.    To the extent that any objections to the releases remain, such objections are properly addressed at the Combined Hearing. *See In re Drexel Burnham Lambert Grp., Inc.*, No. 90-B-10421, 1992 WL 62758, at *1 (Bankr. S.D.N.Y. Mar. 5, 1992) (stating that objections to a plan of reorganization's releases and injunction provisions were in the nature of confirmation objections and therefore improperly raised as objections to the disclosure statement); *Nielsen v. Specialty Equip. Cos., Inc.*, No. 92-C-20142, 1992 WL 279262, at *3 (N.D. Ill. Sept. 25, 1992) (noting that the bankruptcy court below held that "the validity of releases [is] a plan confirmation

issue" and overruled objections to the disclosure statement regarding the appropriateness of third-party releases). None of the issues raised by the Objectors would render the Plan "patently unconfirmable," and any release-related issues will be addressed at the Combined Hearing.

28. Accordingly, the Objections to the adequate information regarding the third-party releases should be overruled as the Amended Disclosure Statement clearly lays out the scope for the third-party releases and that the third-party releases will only be binding on parties that affirmatively elect to opt into the third-party release provisions under the Plan.

**F. The Amended Disclosure Statement Provides Adequate Information as to the Debtors' Lending Practices and the 3AC Proceeding.**

29. The Vermont Objection alleges that the Disclosure Statement contains inadequate information with respect to the 3AC Liquidation Proceeding. *See* Vermont Objection, ¶ 29. To address this concern, the Debtors have added a description of the material updates in the 3AC Liquidation Proceeding. *See* Amended Disclosure Statement, Article VIII.G. While the Debtors face strict confidentiality limitations on disclosure as part of the Official Committee of Unsecured Creditors in the 3AC Liquidation Proceeding, the Amended Disclosure Statement contains all substantive, non-confidential information the Debtors are permitted to disclose.

**G. The Amended Disclosure Statement Provides Adequate Information as to the Risks Associated with Regulatory Approvals.**

30. The New Jersey Objection asserts that the Debtors have not adequately disclosed certain regulatory risks in connection with Binance.US's business after the Binance.US Transaction is consummated. *See* New Jersey Objection ¶¶ 33, 36. The Amended Disclosure Statement provides that Binance.US does not currently intend to engage in any activities in connection with or related to the Binance.US APA that require registration with the SEC or any other state securities and/or commodities authorities and contains a complete list of each

jurisdiction in which Binance.US holds a money transmitter license, authorization, or exemption.[3] *See* Amended Disclosure Statement, Article V.B.  Further, the Amended Disclosure Statement contains a detailed disclosure of the risks posed to the Debtors in connection with consummation of the Binance.US Transaction in light of the regulatory landscape.  *See* Amended Disclosure Statement, Article IV.J, V.B, IX.D.1.

31.    Texas alleges that the Debtors and Binance.US are both engaged in unauthorized transactions in the State.  *See* Texas Objection ¶¶30–42.  The Debtors address such objections in the Binance.US APA Reply.  However, to clarify governmental regulatory authority with respect to Binance.US and the Debtors, the Debtors already included certain language proposed by Texas into the proposed order filed with the Binance.US APA Motion and have incorporated such language into the Revised Disclosure Statement Order.  *See* Docket No. 775, Ex. A ¶¶ 13–14; Revised Disclosure Statement Order ¶¶ 21–2.

### H.    The Amended Disclosure Statement Provides Adequate Information Regarding the Debtors' Proposed Rebalancing Exercise.

32.    The SEC alleges that the Disclosure Statement does not provide adequate information with respect the proposed Rebalancing Exercise.  The Amended Disclosure Statement explains the need for the Rebalancing Exercise, including an explanation of the "hole" created by the Debtors' loan to 3AC, the process by which the Debtors will effectuate the Rebalancing Exercise, and the types of transactions and market makers that will likely be involved in the Rebalancing Exercise.  *See* Amended Disclosure Statement, Article V.A.4.

---

[3]    Certain jurisdictions do not require money transmitter licenses, authorizations, or exemptions (*e.g.* California and Montana).

33.    Additionally, in response to the SEC's request, the Debtors have clarified that the

Rebalancing Exercise is necessary whether the Debtors pursue the Binance.US Transaction or the

Toggle Transaction.  *See id.*

**I.    The Amended Disclosure Statement Provides Adequate Information With Respect to the Alameda Loan Facility Claims.**

34.    The AlamedaFTX Objection asserts that the Disclosure Statement lacks adequate

information with respect to the basis for the treatment of the Alameda Loan Facility Claims and

AlamedaFTX's purported administrative expense claim and its impact on the Debtors' ability to

confirm the Plan and creditor recoveries.  After defrauding the Debtors and most of the world

while imposing massive damage on these chapter 11 estates and all of the Debtors' customers,

AlamedaFTX's objections evince hypocrisy and chutzpah at its finest.  More importantly and

substantively, AlamedaFTX's objections are frivolous.

35.    *First*—and momentarily putting aside the fact that the Debtors only entered into the

AlamedaFTX Loan Facility based on AlamedaFTX's fraudulent and false representations—as

more fully explained in Section III of this Reply, the Debtors staunchly disagree with

AlamedaFTX's assertion that the Plan treats the Alameda Loan Facility Claims improperly.  The

Amended Disclosure Statement includes additional disclosure regarding the underlying rationale

for the equitable subordination of Alameda Loan Facility Claims.  *See* Amended Disclosure

Statement, Article IV.O.  The Bankruptcy Rules expressly provide for equitable subordination as

part of Plan confirmation.  *See* Bankruptcy Rule 7001(8).  While AlamedaFTX's objection to Plan

treatment is not ripe at this juncture, and instead is more properly considered in connection with

confirmation of the Plan (where the Debtors will demonstrate the legal and factual bases for

subordinating the Alameda Loan Facility Claims) it is hard to imagine AlamedaFTX avoiding

subordination after its admitted, massive, historic fraud.  And in the event the Court somehow

finds subordination improper, the Amended Disclosure Statement provides that "such Alameda Loan Facility Claims shall be *pari passu* with General Unsecured Claims at the applicable Debtor entity" and that, as such, recoveries for other creditors would be reduced.  *See id.*

36.    *Second*, the Debtors dispute that AlamedaFTX holds a preference claim, and, in the event AlamedaFTX is found to have a preference claim, the Debtors also dispute that it would be classified as an administrative expense claim, as described in more detail in Section III of this Reply.  Moreover, AlamedaFTX has yet to file any such claim.  Nevertheless, the Amended Disclosure Statement discloses AlamedaFTX's alleged preference claim and that "the Debtors dispute Alameda's position, but in the event that Alameda were to prevail with its on its alleged preference claim, creditor recoveries would be materially reduced."  *See* Amended Disclosure Statement VII.B.

> **J.    The Amended Disclosure Statement Provides Adequate Information With Respect to the D&O Settlement and Treatment of Certain Intercompany Claims.**

37.    Incredibly, AlamedaFTX asserts that the exact language and level of disclosure that its counsel reviewed and approved in the FTX US Disclosure Statement regarding the D&O Settlement and treatment of Intercompany Claims under the Plan, and that was approved over objections as adequate by the Court nearly two months ago, is somehow insufficient. AlamedaFTX Objection ¶¶ 36–41.  Such assertions are hypocritical and completely baseless.

38.    With respect to the Intercompany Transactions, the Debtors explained at the October 19, 2022 hearing in connection with approval of the FTX US Disclosure Statement (the "FTX US Disclosure Statement Hearing") that the FTX US Disclosure Statement outlined the purpose of the Intercompany Transactions, the basis for recharacterizing them as equity contributions, and the potential risks associated with creditor recoveries if the Intercompany Transactions are determined to be valid loans—all of which is still included in the Amended

Disclosure Statement. *See* Amended Disclosure Statement, Article VI.C.2. While similar objections were raised in response to the FTX US Disclosure Statement, the Court overruled these objections. *See* 10/19/2022 Hr'g Tr. at 70:20–71:1. at 103:4–18.[4]

39. More generally, the Amended Disclosure Statement provides thorough detail with respect to the Intercompany Transactions, including the amount of each intercompany transfer, the transferring and receiving entities involved in the transactions, and the nature and circumstances surrounding each Intercompany Transaction. *See* Amended Disclosure Statement, Article VI.C.2. Further, the Debtors disclose, with respect to each Intercompany Transaction, the assumptions that the Debtors have made regarding whether the Intercompany Transactions are likely to be loans or capital contributions, if litigated, for purposes of estimating recoveries under the Plan. *See id*. The Amended Disclosure Statement assumes that such Intercompany Transactions would be capital contributions and provides that "in the event that any Intercompany Obligation or Intercompany Receivable owed by OpCo one the one hand to TopCo or HoldCo on the other hand is determined to be a loan, recoveries to Account Holders and Holders of OpCo General Unsecured Claims may be reduced." *See id*. In any event, this is a premature Plan objection and the Debtors plan to address Intercompany Claims prior to or at the Combined Hearing.

40. Regarding the D&O Settlement, the Court found at the FTX US Disclosure Statement Hearing that these objections were confirmation-related issues and should be addressed in connection with confirmation. Notably, the Court observed that the FTX US Disclosure Statement included "a quite lengthy description … of the entire process that [the Special

---

[4] Specifically, the Court already determined that the FTX US Disclosure Statement contained sufficient language describing how any surplus at OpCo would flow up to its parent and then to TopCo for distribution to creditors, and any surplus above that would flow to TopCo's equity owners: "That seems like basic corporate law … ." *Id*. at 98:18–99:3, 93:17–20.

Committee] went through and what it propose[d]." 10/19/2022 Hr'g Tr. at 70:20–71:1. Despite

an objector's argument that the FTX US Disclosure Statement failed to state the specific claims

that might exist, *id*. at 73:3–14, 74:8–21—the same argument AlamedaFTX makes here—the

Court found that "the disclosure statement is probably more thorough in this regard . . . than any

other one [the Court had] seen in terms of releases of the Debtors' own claims." *Id*. at 73:21–

74:7. Accordingly, the Court held that "[t]he disclosures on the Debtors' releases are fine," and

"if there are objections, that's a confirmation issue we can hear and resolve at the confirmation

hearing." *Id*. at 78:7–10.

42.    The Amended Disclosure Statement describes, in detail, the process for appointing

independent directors to a Special Committee to investigate potential estate claims, the Special

Committee's extensive investigation, the Special Committee's findings, the Special Committee's

ultimate decision to settle potential estate claims, and its reasons for doing so. *See* Amended

Disclosure Statement, Article VIII.O.

42.    Accordingly, the Debtors respectfully request that the Court overrule all objections

alleging that the Amended Disclosure Statement does not contain adequate information.

## III.    The Remaining Objections Raised Are Confirmation Issues and Should Be Overruled as Premature.[5]

43.    The AlamedaFTX Objection raises additional objections based on various

confirmation-related grounds, each of which is premature, and none of which presents any basis

for the Court to delay approval of the Amended Disclosure Statement and solicitation of the Plan.

The Debtors agree that the Plan must comply with the confirmation requirements in section 1129

of the Bankruptcy Code (and all other applicable provisions) and will be prepared to demonstrate

---

[5]    For the avoidance of doubt, the Debtors reserve the right to respond to any and all objections asserted in connection with confirmation of the Plan.

as much.  But the appropriate time to test such compliance is at the Combined Hearing.  *See, e.g.*, *In re Monroe Well Serv., Inc.*, 80 B.R. 324, 333 n.10 (Bankr. E.D. Pa. 1987) (stating that deciding confirmation issues before disclosure may have a disenfranchising effect because the disclosure statement itself is not mailed to all creditors until after court approval is obtained); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988) ("[C]are must be taken to ensure that the hearing on the disclosure statement does not turn into a confirmation hearing, due process considerations are protected and objections are restricted to those defects that could not be cured by voting . . . .").

44.    Disputed issues related to confirmation are not relevant to assessing whether a disclosure statement contains "adequate information."  *See, e.g.*, *In re Quigley Co., Inc.*, 377 B.R. 110, 119 (Bankr. S.D.N.Y. 2007) (approving the disclosure statement while acknowledging that settlements with the debtors' non-debtor former parent "implicate several confirmation issues"); *In re Hyatt*, 509 B.R. 707, 711 (Bankr. D.N.M. 2014) (approving the disclosure statement because questions about the debtor's proposed classification scheme "require[d] additional evidence that may be presented at a confirmation hearing" and, therefore, the "proposed classification scheme does not render the [p]lan patently unconfirmable as a matter of law.")  In fact, the only time a court may entertain plan objections at a disclosure statement hearing is when any subsequent solicitation would be futile because the proposed plan is "patently unconfirmable."  *See*, *e.g.*, *In re Cardinal Congregate I*, 121 B.R. 760, 763–64 (Bankr. S.D. Ohio 1990) (noting a review of issues affecting confirmation of the plan at the disclosure statement phase is permitted only if the proposed plan is "patently" or "facially" unconfirmable); *see also In re Unichem Corp.*, 72 B.R. 95, 98 (Bankr. N.D. Ill. 1987) (courts should disapprove of the adequacy of a disclosure statement

on confirmability grounds only "where it is readily apparent that the plan accompanying the disclosure statement could ***never*** be legally confirmed") (emphasis added).

45.    A plan is not patently unconfirmable where the debtor can show that "the plan is confirmable or that defects might be cured or involve material facts in dispute." *In re Am. Capital Equip., LLC*, 688 F.3d 145, 155 (3d Cir. 2012).  Rather, "a plan is patently unconfirmable where (1) confirmation defects [cannot] be overcome by creditor voting results and (2) those defects concern matters upon which all material facts are not in dispute or have been fully developed at the disclosure statement hearing." *Id.* at 155 (citing *Monroe Well Serv.*, 80 B.R. at 333).  *See also In re Phoenix Petroleum*, 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001) (finding that unless "the disclosure statement describes a plan that is so fatally flawed that confirmation is impossible" the Court should approve a disclosure statement that otherwise adequately describes the chapter 11 plan at issue).

46.    The Objectors will have ample opportunity to prosecute their confirmation objections in connection with the Combined Hearing, to the extent these issues remain disputed. Nevertheless, to aid the Court's analysis, the Debtors briefly address certain confirmation issues raised in the Objections to eliminate any doubt that such issues do not render the Plan patently unconfirmable.

47.    The AlamedaFTX Objection asserts that the Plan is patently unconfirmable for three reasons.  First, AlamedaFTX asserts that the Plan does not comply with section 1129(b) of the Bankruptcy Code because it unfairly discriminates against Holders of Alameda Loan Facility Claims.  Second, AlamedaFTX alleges that the Plan does not comply with the absolute priority rule and provides AlamedaFTX with less than it would receive under a hypothetical chapter 7

liquidation.  Third, AlamedaFTX asserts that the Plan impermissibly gerrymanders classes of

Claims by separately classifying Alameda Loan Facility Claims from General Unsecured Claims.

48.    Since the outset of these chapter 11 cases and for reasons originally unclear to the

Debtors, AlamedaFTX desperately sought to undermine and sabotage the Debtors' restructuring

efforts at every turn.  AlamedaFTX's effort to front-run the Debtors' marketing process began

when, on July 22, 2022, it issued a press release and low-ball proposal for the Debtors' business

while openly disparaging the Debtors.  AlamedaFTX's blatantly false statements were so

egregious that the Debtors were forced to issue a public response to correct the record. *See Notice

of Response to AlamedaFTX/FTX US Press Release* [Docket No. 137].  AlamedaFTX's claims,

made with full knowledge of their falsity, chilled the Debtors' marketing process and lowered the

floor for potential bids in the Auction.

49.    Prior to the Auction, the Debtors requested that AlamedaFTX repay all outstanding

prepetition loans (some of which were collateralized) that the Debtors made to Alameda to ensure

fairness and equal footing for all participants in the Auction.  AlamedaFTX acquiesced to the

repayment of the prepetition loans once the Debtors communicated that AlamedaFTX's

participation in the Auction was contingent on either repaying the prepetition loans or disclosing

Alameda's financial statements to the other bidders in order to price such loans and to ensure a

level playing field.

50.    The Debtors, the entire cryptocurrency industry, and even the general public now

understand that AlamedaFTX's behavior in the Debtors' chapter 11 cases was a last-ditch effort

to mask the holes on its own balance sheet resulting from their apparent fraud.  AlamedaFTX's

insistence to skirt the Debtors' robust marketing process was a feigned attempt to acquire the

Debtors' cryptocurrency in the quick of night to continue funding its fraud, not to return

cryptocurrency to the Debtors' stakeholders despite AlamedaFTX's former and now-indicted leadership's adamant contentions to the contrary.



See, e.g., @SBF, TWITTER (July 24, 2022, 8:32 P.M. ET), https://twitter.com/SBF_FTX/status/1551364656085602305?s=20&t=67p5C4wkxALBYJjQ1U VCg.

51.    Now, even after causing mass contagion in the entire cryptocurrency market, AlamedaFTX continues to attempt to undercut the Debtors' process and efforts to return cryptocurrency to Account Holders.  Through its objection, AlamedaFTX states that its Claims should not be subordinated and the Plan is patently unconfirmable because AlamedaFTX may, at some future point in time, attempt to bring a preference action in the amount of at least $445 million against the Debtors.  AlamedaFTX's contentions are premature at best.

52.    First, equitable subordination of the Alameda Loan Facility Claims under the Plan is appropriate pursuant to Bankruptcy Rule 7001(8) and the Debtors will further demonstrate the legal and factual bases for such treatment prior to or at the Combined Hearing.  Second, regardless of the Debtors' treatment of the Alameda Loan Facility Claims, the Debtors have solid business justifications to separately classify the Alameda Loan Facility Claims.

53.     Third, AlamedaFTX asserts that it holds a preference claim that is subject to section 503(b) of the Bankruptcy Code despite not having even initiated any preference action, pursuant to which AlamedaFTX bears the burden of proof.  Even if AlamedaFTX did successfully initiate such preference action, the Debtors are armed with numerous viable defenses and counterclaims.

54.     The Court should reject AlamedaFTX's objections and further attempts to thwart the Debtors' restructuring efforts.  The Debtors included disclosure surrounding AlamedaFTX's assertions regarding its preference actions and objection to subordination in the Amended Disclosure Statement.  *See* Amended Disclosure Statement, Article VII.B.  Nothing further is required at this time, as these arguments are both premature and unfounded.  The Debtors reserve any and all rights, claims, and defenses against AlamedaFTX in these chapter 11 cases and elsewhere.

> **A.     The Plan Complies with the Requirements of Section 1129(b) of the Bankruptcy Code.**

55.     The AlamedaFTX Objection asserts that the Plan does not comply with section 1129(b) of the Bankruptcy Code because it unfairly discriminates against Holders of Alameda Loan Facility Claims, in violation of the absolute priority rule.  However, the Debtors intend to object to the Alameda Loan Facility Claims and seek equitable subordination of the Alameda Loan Facility Claims in advance of the Combined Hearing and in light of, among other things, the massive and historic-in-scale fraud committed by AlamedaFTX.

56.     The absolute priority rule prohibits junior classes of claims and interests from "receiv[ing] or retain[ing] under the plan on account of such junior claim or interest any property" unless senior claims receive full value in the amount of such senior claims.  11 U.S.C. § 1129(b)(2)(B)(ii).  However, Section 510(c) of the Bankruptcy Code provides that:

> "after notice and a hearing, the court may—

> (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or
> (2) order that any lien securing such a subordinated claim be transferred to the estate."[6]

57.    Equitable subordination under section 510(c) can be ordered upon a showing that (1) the targeted creditor has engaged in inequitable conduct, (2) that conduct harmed other creditors or benefited the targeted creditor, and (3) subordination is not otherwise inconsistent with the Code.  *In re Lehman Bros. Holdings Inc.*, 541 B.R. 551, 582 (S.D.N.Y. 2015); *In re LightSquared Inc.*, 511 B.R. 253, 346 (Bankr. S.D.N.Y. 2014) citing *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 699–700 (5th Cir. 1977).  The Amended Disclosure Statement provides ample disclosure with regard to AlamedaFTX's fraudulent conduct and related grounds for subordination.[7]  The Debtors believe that the Alameda Loan Facility Claims should be equitably subordinated due to AlamedaFTX's inequitable conduct that has harmed the Debtors' creditors in multiple instances, and the Debtors are prepared to meet their burden with respect such subordination at the Combined Hearing.  Accordingly, the Plan is consistent with the Bankruptcy Code, and AlamedaFTX's objection that the plan is patently unconfirmable should be overruled.

58.    The issue of equitable subordination is properly raised in the filing of a chapter 11 plan.  Bankruptcy Rule 7001(8) provides that a proceeding to subordinate any allowed claim is an adversary proceeding, ***except*** when a chapter 11 plan provides for subordination.  Courts have recognized that claims may be subordinated under a plan rather than through an adversary proceeding.  See, e.g. *In re Best Products Co., Inc.*, 168 B.R. 35, 65 (Bankr. S.D.N.Y. 1994), *appeal dismissed*, 177 B.R. 791 (S.D.N.Y.), *aff'd*, 68 F.3d 26 (2d Cir. 1995) (interpreting 7001(8)

---

[6]    11 U.S.C. 510(c)

[7]    For the avoidance of doubt, the Debtors intend to take discovery of AlamedaFTX and will present additional evidence at the Combined Hearing.

to find that appellant creditor's procedural argument that subordination can only be adjudicated in an adversary proceeding "is simply wrong" in the context of a chapter 11 plan); *In re Wash. Mut., Inc.*, 462 B.R. 137, 145 (Bankr. D. Del. 2011) ("In this case, the Debtors' plan has provided for a class of subordinated claims. Therefore, an adversary proceeding is not required to reach the issue of claim subordination"); *In re Fuller*, 255 B.R. 300, 305 (Bankr. W.D. Mich. 2000) ("[A] Chapter 11, 12 or 13 plan may provide for equitable relief and subordinate liens even if an adversary proceeding would be required to secure such relief outside of the plan confirmation process.").

59.     Indeed, the Advisory Committee to the Federal Rules of Bankruptcy Procedure has directly spoken on the issue of equitable subordination under section 510(c) of the Bankruptcy Code as it relates to Bankruptcy Rule 7001(8): "Also included as adversary proceedings are proceedings . . . to subordinate under § 510(c), other than as part of a plan, an allowed claim or interest . . . ." Fed. R. Bankr. P. 7001(8), Notes of Advisory Committee On Rules, ¶ 5 (1983). Thus, the Bankruptcy Rules, case law, and the Advisory Committee agree that an adversary proceeding is neither required, nor the sole means to appropriately subordinate claims or interests.

60.     The Debtors seek to subordinate the Alameda Loan Facility Claims under the Plan and are confident that they carry the burden of proof and will demonstrate that all elements are met to equitably subordinate the Alameda Loan Facility Claims given AlamedaFTX's inequitable conduct that harmed other creditors. Therefore, providing recoveries on account of Account Holder Claims and General Unsecured Claims ahead of recoveries on account of the Alameda Loan Facility Claims is appropriate and consistent with the absolute priority rule.

61.     Notably, the Debtors also dispute that the Alameda Loan Facility Claims are held at OpCo. The governing loan agreement was entered into by HoldCo and guaranteed by TopCo— the agreement was specifically structured in such a manner, through mutual agreement, so that

AlamedaFTX's Claims would be structurally subordinate to Account Holder Claims, which are held at OpCo.

62.    The Amended Disclosure Statement is confirmable even without reliance on section 510(c) for subordination.  In the event that the Court elects not to subordinate the Alameda Loan Facility Claims, the Disclosure Statement describes the treatment of those claims and their entitlement to distribution in accordance with Section 1129(b) of the Bankruptcy Code.  *See* Amended Disclosure Statement, Article IV.O.  Accordingly, the Court should overrule this objection.

**B.    The Plan Complies with Section 1129(a)(7) of the Bankruptcy Code.**

63.    The AlamedaFTX Objection also asserts that the Plan fails the best interest of creditors test under Section 1129(a)(7) of the Bankruptcy Code because it fails to provide a recovery not less than what such claims would be entitled under a hypothetical chapter 7 liquidation.  AlamedaFTX is wrong, but this issue is again properly considered in connection with confirmation of the Plan.

64.    As previously stated, the Debtors intend to object to the Alameda Loan Facility Claims and seek to subordinate such Claims.  Holders of Alameda Loan Facility Claims will not receive a recovery under the Plan if such claims are subordinated to Account Holder Claims and General Unsecured Claims, nor would Holders of such Claims receive a recovery in a hypothetical chapter 7 liquidation.  Therefore, because the Plan provides that holders of Alameda Loan Facility Claims will receive the same recovery on account of such Claims as they would receive in a hypothetical chapter 7 liquidation, the Plan satisfies the Section 1129(a)(7) best interest of creditors test.  Accordingly, the Court should overrule the Objections.

### C. The Plan's Classification of Claims Complies with Section 1122(a) of the Bankruptcy Code.

65.    The AlamedaFTX Objection asserts that the Plan impermissibly gerrymanders Classes of Claims by separately classifying Alameda Loan Facility Claims from General Unsecured Claims without a business purpose in an attempt to obtain an impaired consenting class.

66.    The Debtors' classification scheme is not new to AlamedaFTX.  In connection with the FTX US Transaction, the Debtors proposed a plan that separately classified Alameda Loan Facility Claims from General Unsecured Claims and Account Holder Claims.  AlamedaFTX did not allege that such a classification scheme was designed to gerrymander an impaired accepting class, or that such classification is improper.  The Court approved the FTX US Disclosure Statement that contemplated such a classification scheme.

67.    AlamedaFTX's reversal of course and objection to Plan classification is disingenuous.  Contrary to AlamedaFTX's new assertion, legitimate business reasons exist for separately classifying Alameda Loan Facility Claims from the General Unsecured Claims given that the Alameda Loan Facility Claims include an unsecured loan, which is an entirely different makeup than trade vendors, marketing contract parties, and other holders of General Unsecured Claims at each Debtor entity.  While the Debtors are effectuating a sale of their assets to Binance.US and a subsequent wind-down of their estates, Account Holders are the go-forward customers of Binance.US and critical to the value maximizing transaction contemplated by the Binance.US APA.  On the other hand, AlamedaFTX will not be a go-forward creditor of Binance.US, and the rampart and systemic fraud committed by AlamedaFTX necessitates the subordination of their Claims.  The Debtors' discretion to classify Account Holders apart from the Alameda Loan Facility Claims is firmly grounded in their sound business judgment.

**Conclusion**

68.    For the reasons set forth herein, the Debtors respectfully request that the Court: (a) conditionally approve the Disclosure Statement; (b) overrule the Objections (to the extent that they remain pending as of the hearing on the Disclosure Statement); (c) enter the Revised Disclosure Statement Order; and (d) grant such other relief as the Court deems appropriate under the circumstances.

[*Remainder of page intentionally left blank.*]

Dated:  January 8, 2023  
New York, New York

/s/ Joshua A. Sussberg
_____

**KIRKLAND & ELLIS LLP**  
**KIRKLAND & ELLIS INTERNATIONAL LLP**  
Joshua A. Sussberg, P.C.  
Christopher Marcus, P.C.  
Christine A. Okike, P.C.  
Allyson B. Smith (admitted *pro hac vice*)  
601 Lexington Avenue  
New York, New York 10022  
Telephone:     (212) 446-4800  
Facsimile:      (212) 446-4900  
Email:          jsussberg@kirkland.com  
                cmarcus@kirkland.com  
                christine.okike@kirkland.com  
                allyson.smith@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

## Exhibit A

**Response Chart**

| Chart of Objections Received to the Debtors' Disclosure Statement[1] | | | |
|---|---|---|---|
| **Objection** | **Objection** | **Debtors' Response** | **Applicable Provision** |
| **Disclosure Related Objections** | | | |
| **Adequate Information.** The Disclosure Statement fails to provide adequate information regarding the Binance.US Transaction and does not include the Binance.US APA as an attachment to the Disclosure Statement. | Vermont Objection ¶¶ 8–9 | The Debtors attached the Binance.US APA as <u>Exhibit D</u> to the Amended Disclosure Statement.<br><br>The Amended Disclosure Statement provides disclosure related to the Binance.US Transaction, including, among other things, a description of the FTX US collapse and abandonment of the FTX Transaction, the recommencement of the marketing process and negotiation of the Binance.US APA, the consideration being offered by Binance.US, the treatment of Account Holders under the Plan, the mechanics of facilitating distributions to Account Holders, including the Rebalancing Exercise, anticipated distributions to Account Holders under the Binance.US Transaction and the Toggle Transaction, and a detailed "<u>Frequently Asked Questions</u>" for Account Holders. | Articles II, V.B, VIII.N, <u>Ex. C</u> |
| **Adequate Information.** The description of the Binance.US Transaction is inaccurate and confusing. | Vermont Objection ¶¶ 10–15 | The Amended Disclosure Statement explains the terms and mechanics of the Binance.US Transaction and includes additional clarifying details with respect to the Binance.US Transaction and the Rebalancing Exercise.  The Debtors also added substantially similar language to the language requested by Vermont to clarify certain points regarding the Rebalancing Exercise.  The Amended Disclosure Statement makes it clear that the Debtors will retain all right, title, and interest in the Cryptocurrency until the Effective Date. | Articles II, V.A.4, V.B, VIII.N |
| **Adequate Information.** The Disclosure Statement does not contain adequate information about the Rebalancing Exercise. | SEC Objection ¶ 2; Vermont Objection ¶¶ 11–12 | The Amended Disclosure Statement provides enhanced detail regarding the Rebalancing Exercise.  It explains the need for the Rebalancing Exercise, including an explanation of the "hole" created by the Debtors' loan to 3AC, the process by which the Debtors will effectuate the Rebalancing Exercise, and the types of transactions and market makers that will likely be involved in the Rebalancing Exercise<br><br>The Debtors have also clarified that the Rebalancing Exercise is necessary whether the Debtors pursue the Binance.US Transaction or the Toggle Transaction. | Article V.4.A |

---

[1]    Capitalized terms used but not otherwise defined herein have the meaning ascribed to such terms in the Plan, the Amended Disclosure Statement, the Disclosure Statement Motion, or the relevant Objection, as applicable.

| Chart of Objections Received to the Debtors' Disclosure Statement[1] | | | |
|---|---|---|---|
| **Objection** | **Objection** | **Debtors' Response** | **Applicable Provision** |
| **Adequate Information**. The Disclosure Statement does not contain adequate information about the tax consequences of the Binance.US Transaction. | Vermont Objection ¶ 14 | The Amended Disclosure Statement provides provides adequate information with respect to the tax consequences of the Binance.US Transaction.<br><br>The Amended Disclosure Statement provides, in part, the Debtors' belief that "amounts [distributed in-kind] may be treated as a non-taxable transaction with respect to the underlying cryptocurrency," but also that, "[w]hether the Plan is structured as a Sale Transaction or a Liquidation Transaction, there is a material risk that U.S. Holders of Account Holder Claims will have a taxable event in connection with the consummation of the Plan or the 'dollarization' of Claims (or separate taxable events for one or both events). This is the case even though the Sale Transaction contemplates the migration of customers to an acquiring cryptocurrency platform and even though the Liquidation Transaction contemplates that Account Holders can withdraw cryptocurrency from the Voyager platform." | Article XII |
| **Adequate Information**. The Disclosure Statement does not contain adequate information about Binance.US's ability to consummate the Binance.US Transaction, including information regarding the financial wherewithal of Binance.US. | New Jersey Objection ¶¶ 15-26; SEC Objection ¶ 2; Texas Objection ¶ 28; Vermont Objection ¶ 20 | The Amended Disclosure Statement includes significant disclosure related to Binance.US's financial wherewithal, including Binance.US's ability to consummate the Binance.US Transaction.<br><br>Binance.US is well-capitalized and utilizes a business model that makes it significantly less susceptible to a "run on the bank" than business models of other companies in the cryptocurrency sector. Among other things, (i) Binance.US holds customer assets on a one-to-one basis, meaning that Binance.US has the ability and liquidity to meet all customer withdrawals at any time; (ii) Binance.US does not lend customer assets out to third parties; (iii) Binance.US's reserves exceed customer deposits; and (iv) Binance.US has ample capital to pay the upfront costs of up to $35 million to consummate the Binance.US Transaction. | Article V.B.1(a) |
| **Adequate Information**. The Disclosure Statement does not contain adequate information about the diligence efforts taken by the Debtors with respect to Binance.US regarding Binance.US's ability to consummate the Binance.US Transaction. | New Jersey Objection ¶ 37 Texas Objection ¶ 28 | The Debtors disclose the diligence efforts undertaken in connection with the Binance.US APA in the Tichenor Declaration, which included reviews of certain audited financial statements, interim unaudited financial statements, available liquidity related party services agreements, wallet infrastructure, AML/KYC procedures, money transmitter licensing status, and business plans submitted to selected state regulators in connection with the issuance of money transmitter licenses. | Tichenor Declaration ¶ 21 |
| **Adequate Information**. The Disclosure Statement does not contain adequate information about the entity that will custody Account Holder | New Jersey Objection ¶¶ 27, 29, 34–35; Texas | BAM Trading Services Inc. d/b/a Binance.US, a Delaware corporation, is the entity that will hold Account Holder assets, which shall be treated consistently with all other U.S. customers post-closing on the Binance.US platform. | Article V.B.1(b) |

| Chart of Objections Received to the Debtors' Disclosure Statement[1] | | | |
|---|---|---|---|
| **Objection** | **Objection** | **Debtors' Response** | **Applicable Provision** |
| assets and the jurisdiction of such entity. | Objection ¶ 26; Vermont Objection ¶ 22 | The Amended Disclosure Statement clarifies the custody protocol that Binance.US will have in place during the customer onboarding process. | |
| **Adequate Information**. The Disclosure Statement does not contain adequate information about how the Debtors and Binance.US intend to secure assets prior to and after consummation of the Binance.US Transaction. | SEC Objection ¶ 2 | The Amended Disclosure Statement describes the security protocols that the Debtors have in place to protect Account Holder assets from loss or theft. Additionally, the Amended Disclosure Statement provides the various security protocols that Binance.US has in place to ensure the safe storage of customer assets. | Article V.B.1(b) |
| **Adequate Information**. The Disclosure Statement does not contain adequate information about the treatment of Account Holders in Unsupported Jurisdictions. | Texas Objection ¶ 25; Vermont Objection ¶ 26 | The Amended Disclosure Statement contains enhanced disclosure regarding the treatment of Account Holders in Unsupported Jurisdictions under the Plan and the process by which such Account Holders will receive distributions. Pursuant to the Plan, if Binance.US does not receive the necessary regulatory approvals in Unsupported Jurisdictions within six months following the Closing Date (as defined in the Binance.US APA), Account Holders in Unsupported Jurisdictions will receive the "value [of their Claim] in Cash at which such Net Owned Coins allocable to such Account Holder are liquidated." For the avoidance of doubt, if Binance.US does receive the necessary regulatory approvals in that six-month period, Account Holders in those Unsupported Jurisdictions will receive distributions in-kind.

Additionally, the Binance.US APA, attached to the Amended Disclosure Statement as Exhibit D, provides a detailed description of the mechanics of distributions to Account Holders in Unsupported Jurisdictions. | Articles V.B.1(c), IV.D; Binance.US APA, Section 6.12, 6.14; Plan, Article III.C.3(c) |
| **Adequate Information**. The Disclosure Statement does not contain adequate information about the Plan's Third-Party Releases. | New Jersey Objection ¶ 38; Texas Objection ¶ 27; Vermont Objection ¶ 28 | The Amended Disclosure Statement explicitly provides that the releases are "opt in" and describes the nature of such releases. All Holders of Claims and Interests have the requisite information necessary to determine whether to object to the Debtor releases and whether to opt into the third-party release provisions in the Plan. | Article IV.P |
| **Adequate Information**. The Disclosure Statement does not contain adequate information about the 3AC Liquidation Proceeding. | Vermont Objection ¶ 29 | The Debtors added a description of the material updates in the 3AC Liquidation Proceeding to the Amended Disclosure Statement. While the Debtors face strict confidentiality limitations on disclosure as part of the Official Committee of Unsecured Creditors in the 3AC Liquidation Proceeding, the Amended Disclosure Statement contains all substantive, non-confidential information the Debtors are permitted to disclose. | Article VIII.G |

| Chart of Objections Received to the Debtors' Disclosure Statement[1] | | | |
|---|---|---|---|
| **Objection** | **Objection** | **Debtors' Response** | **Applicable Provision** |
| **Adequate Information.** The Disclosure Statement is inconsistent with the Binance.US APA regarding the treatment of VGX. | U.S. Trustee Objection, Sec. C | Regardless of whether Binance.US ultimately supports the trading of VGX on its platform, Account Holders may withdraw such tokens from their accounts on the Binance.US platform when available to them in accordance with the Binance.US APA and the Plan, and subject to Binance.US's Terms of Use. | Article V.B.1(e) |
| **Adequate Information.** The Disclosure Statement does not contain adequate information about the regulatory risks in connection with Binance.US's business after the Binance.US Transaction is consummated. | New Jersey Objection ¶¶ 33, 36, Texas Objection ¶¶ 30–42 | The Amended Disclosure Statement clarifies that Binance.US does not currently intend to engage in any activities in connection with or related to the Binance.US APA that require registration with the SEC or any other state securities and/or commodities authorities and contains a complete list of each jurisdiction in which Binance.US holds a money transmitter license has licenses, authorizations, or exemptions (as applicable). Further, the Amended Disclosure Statement contains detailed disclosure of the risks posed to the Debtors in connection with consummation of the Binance.US Transaction in light of the regulatory landscape. | Article V.B, IV.J, V.B, IX.D.1 |
| **Adequate Information.** The Disclosure Statement does not disclose that the Debtors and Binance.US are engaging in unauthorized money transmission in Texas and are not in compliance with Texas state law. | Texas Objection ¶¶ 30–42 | While the Debtors disagree with the underlying assertions that the Debtors are not in compliance with Texas state law and are engaging in unauthorized money transmission, to clarify governmental regulatory authority with respect to Binance.US and the Debtors, the Debtors already included the language proposed by Texas into the proposed order filed with the Binance.US APA Motion and have incorporated such language into the Revised Disclosure Statement Order. | Docket No. 775, Ex. A ¶¶ 13–14; Revised Disclosure Statement Order ¶ 21-22 |
| **Adequate Information.** The Disclosure Statement does not contain adequate information about the basis for the discriminatory and improper treatment of the Alameda Loan Facility Claims. | AlamedaFTX Objection ¶¶ 30–32 | The Amended Disclosure Statement includes additional disclosure regarding the underlying rationale and related legal standard for the treatment of Alameda Loan Facility Claims. Specifically, the Amended Disclosure Statement provides that the Debtors believe that the Alameda Loan Facility Claims should be equitably subordinated due to AlamedaFTX's inequitable conduct that has harmed the Debtors' creditors in multiple instances. The Amended Disclosure Statement also provides a detailed overview of the related conduct by AlamedaFTX. In the event the Court finds that subordination was improper, the Amended Disclosure Statement provides that "such Alameda Loan Facility Claims shall be *pari passu* with General Unsecured Claims at the applicable Debtor entity." | Articles IV.O, VII.B |
| **Adequate Information.** The Disclosure Statement does not contain adequate information about Alameda's purported administrative expense | AlamedaFTX Objection ¶¶ 33–35 | The Amended Disclosure Statement provides that the Debtors dispute that AlamedaFTX holds a preference claim and, in the event Alameda is found to have a preference claim, that it would be classified as an administrative expense claim. | Articles IV.O, VII.B |

| Chart of Objections Received to the Debtors' Disclosure Statement[1] | | | |
|---|---|---|---|
| **Objection** | **Objection** | **Debtors' Response** | **Applicable Provision** |
| claim and its impact on the Debtors' ability to confirm the Plan and creditor recoveries. | | The Amended Disclosure Statement includes additional disclosure regarding the impact on creditor recoveries if AlamedaFTX prevails on its claim." The Amended Disclosure Statement includes a description of AlamedaFTX's alleged preference claims. | |
| **Adequate Information**. The Disclosure Statement does not contain adequate information about the treatment of Intercompany Claims under the Plan. | AlamedaFTX Objection ¶¶ 39–41 | The Amended Disclosure Statement provides detail with respect to the Intercompany Transactions, including the amount of each intercompany transfer, the transferring and receiving entities involved in the transactions, and the nature and circumstances surrounding each Intercompany Transaction.  Further, the Debtors disclose, with respect to each Intercompany Transaction, the assumptions that the Debtors have made regarding whether the Intercompany Transactions are likely to be loans or capital contributions, if litigated, for purposes of estimating recoveries under the Plan.  The Amended Disclosure Statement assumes that such Intercompany Transactions would be capital contributions and provides that "in the event that any Intercompany Obligation or Intercompany Receivable owed by OpCo one the one hand to TopCo or HoldCo on the other hand is determined to be a loan, recoveries to Account Holders and Holders of OpCo General Unsecured Claims may be reduced." | Article VI.C.2 |
| **Confirmation Related Objections** | | | |
| **Unfair Discrimination.**  The Plan unfairly discriminates against Holders of Alameda Loan Facility Claims, in violation of the absolute priority rule. | AlamedaFTX Objection ¶¶ 10–18 | Objections to the permissibility of the Debtors' treatment of Claims are premature.  The rights of all parties with respect to the classification and treatment of Claims and Interests under the Plan are fully reserved and preserved and may be raised as objections to Confirmation of the Plan. The Debtors intend to object to the Alameda Loan Facility Claims and seek equitable subordination of the Alameda Loan Facility Claims in advance of the Combined Hearing in light of, among other things, the fraud committed by AlamedaFTX.  The Debtors believe that the Alameda Loan Facility Claims should be equitably subordinated due to AlamedaFTX's inequitable conduct that has harmed the Debtors' creditors in multiple instances, and the Debtors are prepared to meet their burden with respect such subordination at the Combined Hearing.  TheAmended Disclosure Statement provides ample disclosure regarding AlamedaFTX's fraudulent conduct and related grounds for subordination. | Articles IV.O, VII.B |
| **Best Interest of Creditors Test.**  The Plan fails the best interest of creditors | AlamedaFTX Objection ¶¶ 19–20 | Objections to whether the Plan satisfies the best interest of creditors test are premature.  The Debtors are prepared to meet their evidentiary burden (if any) with | Articles IV.O, XI.B |

| | | Chart of Objections Received to the Debtors' Disclosure Statement[1] | | |
|---|---|---|---|
| **Objection** | **Objection** | **Debtors' Response** | **Applicable Provision** |
| test under Section 1129(a)(7) of the Bankruptcy Code because it fails to provide a recovery not less than what such claims would be entitled to under a hypothetical chapter 7 liquidation. | | respect to such matters at the Combined Hearing, and the rights of all parties with respect to treatment of Claims and Interests under the Plan are fully reserved and preserved and may be raised as objections to Confirmation of the Plan. The Debtors intend to object to the Alameda Loan Facility Claims and seek to equitably subordinate such Claims. Holders of Alameda Loan Facility Claims will not receive a recovery under the Plan if such Claims are subordinated to Account Holder Claims and General Unsecured Claims, nor would Holders of such Claims receive a recovery in a hypothetical chapter 7 liquidation. | |
| **Classification,     Unfair Discrimination.** The Debtors' classification of similarly situated claims into separate classes is impermissible. | AlamedaFTX Objection ¶¶ 21–26 | Objections to the permissibility of the Debtors' classification scheme are premature. The Debtors are prepared to meet their evidentiary burden with respect to such matters at the Combined Hearing, and the rights of all parties with respect to the classification of Claims and Interests under the Plan are fully reserved and preserved and may be raised as objections to Confirmation of the Plan. Legitimate business reasons exist for separately classifying Alameda Loan Facility Claims from the General Unsecured Claims given that the Alameda Loan Facility Claims include an unsecured loan, which is an entirely different other General Unsecured Claims at each Debtor entity. While the Debtors are effectuating a sale of their assets to Binance.US and a subsequent wind-down of their estates, Account Holders are the go-forward customers of Binance.US and critical to the value maximizing transaction contemplated by the Binance.US APA. On the other hand, Alameda will not be a go-forward creditor of Binance.US, and the rampant fraud committed by Alameda necessitates the subordination of their Claims. The Debtors' discretion to classify Account Holders and General Unsecured Claims apart from Alameda Loan Facility Claims is firmly grounded in their sound business judgment. | Articles IV.D, IV.O |