**MCDERMOTT WILL & EMERY LLP**
Darren Azman
Joseph B. Evans
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone: (212) 547-5400
Facsimile: (212) 547-5444

**MCDERMOTT WILL & EMERY LLP**
Charles R. Gibbs (admitted *pro hac vice*)
Grayson Williams (admitted *pro hac vice*)
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201-1664
Telephone: (214) 295-8000
Facsimile: (972) 232-3098

*Counsel to the Official Committee of
Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*, | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |

**STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS IN SUPPORT OF (A) DEBTORS' MOTION FOR ENTRY OF
AN ORDER (I) AUTHORIZING ENTRY INTO THE BINANCE US
PURCHASE AGREEMENT AND (II) GRANTING RELATED RELIEF; AND
(B) SUBMISSION OF THE COMMITTEE'S SOLICITATION LETTER IN
SUPPORT OF THE DEBTORS' THIRD AMENDED JOINT PLAN**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the

above-captioned chapter 11 cases (the "Chapter 11 Cases") of Voyager Digital Holdings,

Inc., *et al.* (collectively, the "Debtors") hereby submits: (i) this statement in support of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Voyager Digital Holdings, Inc.'s and Voyager Digital Ltd.'s principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003. Voyager Digital, LLC's principal place of business is 701 S. Miami Ave, 8th Floor, Miami, FL 33131.

*Debtors' Motion for Entry of An Order (I) Authorizing Entry Into the Binance US Purchase Agreement and (II) Granting Related Relief* [Docket No. 775] (the "Motion"),[2] and (ii) the letter prepared by the Committee (the "Solicitation Letter"), attached hereto as **Exhibit A**, to be included in the Debtors' solicitation package in connection with the *Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 777] (as amended, modified, or supplemented, the "Plan") for approval by the Court, and respectfully states as follows:

## STATEMENT

1.   Since the unexpected collapse of FTX, the Committee has worked tirelessly to evaluate strategic exits from chapter 11 to ensure that the maximum amount of fiat and crypto is returned to creditors as quickly and safely as possible. To that end, the Committee considered two options: (i) self-liquidation; and (ii) an alternative transaction with a third party. Ultimately, BAM Trading Services Inc. d/b/a Binance.US ("Binance.US") made the best and highest offer to acquire the Debtors' assets, and for the reasons discussed below, the Committee supports the transaction.

2.   *First*, the Committee considered a "self-liquidation" centered around a distribution of crypto directly from the Debtors' platform to customers. Although this option avoided the risks associated with a third-party purchaser, there are significant regulatory and practical hurdles in returning hundreds of millions of dollars in fiat and crypto to customers. For example, many creditors prefer distributions in crypto, but the Debtors' platform was the only place certain creditors traded and held crypto. Accordingly, those creditors would be forced to obtain self-hosted wallets or register and onboard with a new crypto exchange to accept distributions. Even after educating creditors on that subject, a self-liquidation plan would likely include a large number of test transactions and other administrative burdens.

---

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

2

3. Thus, an existing, operating crypto exchange with the infrastructure to handle millions of retail customer crypto transactions appeared to be the most efficient option. The Committee ultimately determined, in consultation with the Debtors, that conducting a self-liquidation would materially decrease recoveries for a variety of reasons (e.g., value leakage from mass sales of crypto and working capital funding) and delay returning fiat and crypto to creditors, as compared to a sale to a third party. Moreover, the Debtors would receive no cash consideration from a purchaser in a self-liquidation, thereby further reducing creditor recoveries.

4. *Second*, after FTX's collapse, other potential purchasers began to engage with the Debtors. Throughout this process, the Committee had extensive discussions with a number of interested parties to assess the relative value of their offers, including their ability to close timely. In the end, the only purchaser that presented an economically attractive and actionable offer was Binance.US. Despite the compelling economics of the Binance.US offer, the Committee found the initial drafts of the proposed purchase agreement to be problematic.

5. In light of the FTX implosion, the Committee worked diligently to negotiate protections in the asset purchase agreement with Binance.US to accelerate recoveries to creditors and ensure that all crypto would be safe in the event of a Binance.US insolvency. Recognizing the unstable state of the crypto industry following FTX's collapse, the Committee was principally concerned with protecting crypto that would be transferred to Binance.US. The initial Binance.US proposal contemplated the transfer of nearly all of the Debtors' crypto immediately upon closing to Binance.US. However, certain of that crypto would not be made available to creditors for up to six months because of, among other things, regulatory restrictions in four states. This structure would have put creditors at risk in the event of an unexpected Binance.US insolvency. Accordingly, the Committee viewed this structure as sub-optimal and voiced its concerns to the Debtors and Binance.US.

6. Although Binance.US assured the Committee that the crypto would be protected, given the unexpected collapse of FTX and the general risk of theft and fraud in the cryptocurrency industry, the Committee sought greater protections. Accordingly, as of the filing of the Motion, the Committee could not support the Binance.US Transaction. Following the filing of the Motion, however, the Committee worked diligently to include protections in the purchase agreement to accelerate recoveries and ensure the safety of creditors' crypto.

7. Binance.US ultimately supported the Committee's efforts and agreed to restructure the way in which crypto is transferred. On January 9, 2023, the Debtors filed the First Amended Asset Purchase Agreement [Docket No. 835] (the "Amended Purchase Agreement"). Pursuant to the Amended Purchase Agreement, after the transaction closes, crypto will move from the Debtors to Binance.US on a weekly basis, and the only crypto that will be transferred is crypto that will be immediately distributed to creditor accounts. In other words, cryptocurrency *will not* be transferred to Binance.US unless: (i) Binance.US has the required licenses or authorizations to make distributions in a creditor's state or territory; (ii) a creditor has signed up for Binance.US's platform; (iii) that creditor has met Binance.US's onboarding requirements; **and** (iv) Binance.US has received notice of the exact amount of distribution that will be made available to that creditor. As a result, the time between when Binance.US receives crypto from the Debtors and when creditors can access, trade, convert, sell, stake, or withdraw that crypto is now very limited.

8. The foregoing material change, along with additional modifications reflected in the Amended Purchase Agreement, provide the necessary protections give the Committee comfort to support the transaction.

9. In addition, the Amended Purchase Agreement and Plan provide a mechanism pursuant to which Account Holders in Unsupported Jurisdictions (as defined in the Amended

Purchase Agreement) may be able to receive distributions in kind, which is the preference of many creditors. The proposed transaction further provides a potential pathway for Account Holders in Unsupported Jurisdictions to receive such in-kind distributions. Contrary to the objections from Texas, New York, Vermont, and Hawaii, the proposed transaction benefits all Account Holders, including those in the Unsupported Jurisdictions, by providing a path toward the ultimate goal in these chapter 11 cases–the return of customers' crypto in kind. The Committee has been engaged in discussions with certain regulators and continues to support engagement towards solutions for regulatory impediments to in-kind distributions in Unsupported Jurisdictions.

10. The Committee believes that the transaction, relative to all alternatives (whether in the form of an alternative sale transaction or a self-liquidation), provides the highest and best value for creditors.

11. As an additional safeguard against the delay of distributions, the Committee also insisted on a "toggle" in the Plan, which allows for self-liquidation and the return of crypto to creditors if the Binance.US deal fails to close for any reason. Accordingly, if Binance.US cannot or does not close, the Debtors will not need to develop a new plan and instead can continue with a self-liquidation to avoid further delays.

12. In light of the Amended Purchase Agreement and the "toggle" feature, the Committee prepared the attached Solicitation Letter in support of the Plan, which provides creditors with: (i) additional information as to why the Committee supports the Plan; (ii) explanations of Contributed Third Party Claims (as defined in the Plan) and third-party releases; (iii) the Committee's recommendation to "opt in" to Contributed Third Party Claims; and (iv) guidance on how to complete ballots. The Committee respectfully requests that the Court approve the Solicitation Letter, which the Debtors have agreed to include in the solicitation packages.

| | |
|---|---|
| Dated: New York, New York<br>January 9, 2022 | **MCDERMOTT WILL & EMERY LLP**<br><br>*/s/ Darren Azman*<br>Darren Azman<br>Joseph B. Evans<br>One Vanderbilt Avenue<br>New York, NY 10017-3852<br>Telephone: (212) 547-5400<br>Facsimile: (212) 547-5444<br>E-mail: dazman@mwe.com<br>E-mail: jbevans@mwe.com<br><br>and<br><br>Charles R. Gibbs (admitted *pro hac vice*)<br>Grayson Williams (admitted *pro hac vice*)<br>2501 North Harwood Street, Suite 1900<br>Dallas, TX 75201<br>Telephone: (214) 295-8000<br>Facsimile: (972) 232-3098<br>E-mail: cgribbs@mwe.com<br>E-mail: gwilliams@mwe.com<br><br>and<br><br>Gregg Steinman (admitted *pro hac vice*)<br>333 SE 2nd Avenue, Suite 4500<br>Miami, FL 33131-2184<br>Telephone: (305) 329-4473<br>Facsimile: (305) 503-8805<br>E-mail: gsteinman@mwe.com<br><br>*Counsel to the Official*<br>*Committee of Unsecured Creditors* |