The Honorable Judge Michael E Wiles,

I write on behalf of millions of Voyager clients being unfairly robbed off of our lifesavings. Stephen Ehrlich repeated reassured us, our assets were safe upto the last day. He was knowingly embroiled with SBF. Now even the Binance deal is on a precipice, and lawyers are getting enriched with our hard earned savings. References for case law below.

I specifically write today to earnestly request the following:

1. Please consider us, Voyager customers as secured creditors and not unsecured creditors: the currencies we purchased on the platform were always sold to us as ours, and are even reported as our on the platform interface and customer agreement.

2. Please treat staked cryptocurrencies (like SOL) differently to coins loaned out by Voyager to 3AC. Ehlrich acknowledged publicly on 8/30/22, SOL is still being held by Voyager (staked in nodes) and was never loaned out. These are coins we bought to stake, and Voyager did not loan out, and continues to earn on them. Return these asap. They are not the bankruptcy estate. Celsius and Blockfi have returned these.

3. Please freeze bonuses and cut salaries for executives as they undergo this process..

To elucidate: Excerpts from the Voyager customer agreement which states crypto is a customer's: "customer's cryptocurrency"  The agreement also states in the event of bankruptcy, the status would be at best debatable, but never once does it say it would Voyager's estate.

(C) Customer Cryptocurrency. Customer authorizes and instructs Voyager to hold Customer's Cryptocurrency (whether purchased on the Platform or deposited by Customer into the Account pursuant to the Cryptocurrency Deposit mechanics outlined above) on its behalf. Customer understands that Voyager may hold Customer's Cryptocurrency together with the Cryptocurrency of other Voyager customers in omnibus accounts or wallets. In addition, Customer understands and authorizes Voyager to delegate some or all custody functions to one or more Affiliates or third parties (which may include, but not be limited to exchanges and custodians) at Voyager's discretion (each a "Custodian"). Some or all custody functions provided by a Custodian may be performed, supported, or conducted in foreign jurisdictions, or conducted by Custodians domiciled, registered, or subject to the laws and regulations of foreign jurisdictions. Voyager will exercise reasonable skill and care in the selection, appointment, and periodic review of any such Custodian. Voyager will maintain true, complete and accurate records relating to Customer Cryptocurrency. Customer and Voyager understand that the legal treatment of Cryptocurrency is unsettled and disparate across different jurisdictions. In the event that Customer, Voyager or a Custodian become subject to an insolvency proceeding it is unclear how Customer Cryptocurrency would be treated and what rights Customer would have to such Cryptocurrency. How an insolvency court would categorize and treat Customer Cryptocurrency is a highly fact-dependent inquiry that necessarily depends upon the circumstances of each individual case. In addition, within the U.S. there is notably little case law addressing insolvency proceedings involving Cryptocurrency. As such, the law governing the likely treatment of Customer Cryptocurrency in the event of a Customer, Voyager or Custodian insolvency proceeding remains largely unsettled. Voyager does not make any representation as to the likely treatment of Customer Cryptocurrency in the event of a Customer, Voyager, or Custodian insolvency proceeding whether in the U.S. or in any other jurisdiction. Customer explicitly understands and acknowledges that the treatment of Customer Cryptocurrency in the event of a Customer, Voyager, or Custodian insolvency proceeding is unsettled, not guaranteed, and may result in a number of outcomes that are impossible to predict, including but not limited to Customer being treated as an unsecured creditor and/or the total loss of all Customer Cryptocurrency.

While i am no legal expert, based on my elementary reading especially from this site
https://www.proskauer.com/alert/the-other-side-of-the-coin-cryptocurrency-assets-in-bankruptcy

"existing common law, existing provisions of Uniform Commercial Code (UCC) Article 8, and proposed amendments to the UCC recognize that if the arrangement and relationship between the exchange and its customers is one that is characterized as "custodial," the crypto assets held by the exchange should remain property of the customer and, hence, not subject to dilution by general unsecured claimholders.

The common law.  When assets are held by a "custodian" for the benefit of the customers of the custodian, the assets are owned by the customer and would not form part of the debtor's bankruptcy estate.  The United States Court of Appeals for the Seventh Circuit determined in In re Joliet-Will County Community Action Agency[1] that property held by the debtor as a custodian or other intermediary who then generally lacks beneficial ownership rights is not an asset of the bankruptcy estate.
In Joliet-Will, the agreement provided for controls on the holder's use of the funds and the holder was "in effect an agent to carry out specified tasks rather than a borrower, or an entrepreneur using invested funds."  The court concluded the relationship was "custodial" and, thus, the funds were not property of the bankruptcy estate.

Thus, customers remain the beneficial owner of the assets, and not unsecured claim holders.

The commingling of customer assets, or the contractual right of an exchange in possession or control of the customer's assets to grant a security interest in that property do not, of themselves, prevent the assets from remaining the property of the customer.[2]

Article 8 of the Uniform Commercial Code mirrors these rules for financial assets held by a securities intermediary.  Under Article 8, a securities intermediary[4] includes a "custodian" of a "financial asset"[5] who otherwise meets the definition of a securities intermediary.[6]  Critically, existing language in Section 8-503(a) of the UCC outlines the ownership interest of a customer whose cryptocurrency is held by an intermediary such as an exchange, if the exchange is a "securities intermediary," has agreed with the customer to treat the cryptocurrency as a "financial asset,"[7] and has credited the financial asset to a securities account.[8]  This is true under Article 8 even though the securities intermediary holds the financial assets in "fungible" form (i.e., they are commingled).[9]  Article 8 in effect codifies the common law custodian rules for transactions within the scope of Article 8—the customer of the custodian retains its property interest and has a pro rata interest in the commingled assets held by the custodian.
Pending amendments to the UCC further implement the rule that custodially held crypto assets should not be property of the bankruptcy estate in a bankruptcy of a custodian-cryptocurrency exchange.   Under these amendments, cryptocurrencies would fit into a new category of collateral under the UCC, referred to as "controllable electronic records" (a form of general intangible) (CERs), which would generally include information stored in a nontangible medium that can be subjected to control.

Notably, the proposed amendments to the official comments to Article 8 of the UCC primarily serve to make clear that a securities intermediary and a customer of a securities intermediary can agree to treat a cryptocurrency as a "financial asset" and credit it to a securities account with the treatment described above.

The proposed amendments to the official comments in Section 8-501(d) note that assets such as CERs might also be controlled by a securities intermediary outside of a securities account for the benefit of a customer—similar to traditional securities, in which case the bankruptcy of the intermediary often times would not put in doubt the customer's ownership of securities in in that circumstance held by the intermediary:

While the proposed amendments to the UCC have yet to be finalized and adopted by the States, many of the amendments to the UCC as they relate to the ownership interest of a cryptocurrency exchange customer in custodially held cryptocurrency are proposed as amendments to the official comments, without revision to the operative statutory provisions themselves because the existing statutory provisions already provide for the described results.  Thus, a bankruptcy court could rely on the existing state UCC statute as a basis to determine that when cryptocurrency is held as a financial asset credited to customer accounts, the cryptocurrency is property of the customer, rather than bankruptcy estate.  This is the same result outside of Article 8 as discussed above.

Conclusion: Crypto assets held custodially by an exchange or other entity for a customer should be treated as the property of the customer.

**References**

[1]  See In re Joliet-Will Cnty. Community Action Agency, 847 F.2d 430, 431 (7th Cir. 1988) (Posner, J) ("Did they constitute Joliet–Will a trustee, custodian, or other intermediary, who lacks beneficial title and is merely an agent for the disbursal of funds belonging to another? If so, the funds (and the personal property bought with them, cf. In re Kaiser, 791 F.2d 73, 77 (7th Cir.1986)) were not assets of the bankrupt estate." (Emphasis added)).
[2]  See also Restatement (Third) of Restitution and Unjust Enrichment § 59 (property interest in asset continues in commingled assets when the interests can be traced).  See also Illustration 26 (400 customers of smelter deliver silver to smelter, who keeps records of the amount of silver delivered by each customer, refines the silver for a fee, and agrees to return a corresponding amount of silver to each customer; when smelter fails, each customer has a pro rata property interest in the refined silver, which is not the property of smelter); UCC § 9-207(c)(3).
[3]  Joliet-Will, 847 F.2d at 432.
[4]  "Securities intermediary" is defined in Section 8-102(a)(14) of the UCC.
[5]  "Financial asset" is defined in Section 8-102(a)(9) of the UCC.
[6]  UCC § 8-102(a)(14) and Comment 14.
[7]  See Section 8-102(a)(9)(iii) of the UCC.
[8]  Section 8-503(a) provides that "[t]o the extent necessary for a securities intermediary to satisfy all security entitlements with respect to a particular financial asset, all interests in that financial asset held by the securities intermediary are held by the securities intermediary for the entitlement holders, are not property of the securities intermediary, and are not subject to claims of creditors of the securities intermediary, except as otherwise provided in Section 8-511."
[9]  This rule is the same as the smelting example described above from the Restatement (Third) of Restitution and Unjust Enrichment.
[10]  A financial asset does not have to be a "security" (as defined in Article 8 of the UCC) to be a financial asset.  As long as the relationship between the securities intermediary and the customer creates a "securities account" (UCC § 8-501, Comment 1), the securities intermediary and its customer (referred to as an "entitlement holder") can agree to have any asset treated as a "financial asset".  UCC § 8-102(a)(9)(iii).