**Hearing Date: January 24, 2023 at 11:00 a.m.**
**(prevailing Eastern Time)**

| | |
|---|---|
| Darren Azman | Charles R. Gibbs (admitted *pro hac vice*) |
| Joseph B. Evans | Grayson Williams (admitted *pro hac vice*) |
| **MCDERMOTT WILL & EMERY LLP** | **MCDERMOTT WILL & EMERY LLP** |
| One Vanderbilt Avenue | 2501 North Harwood Street, Suite 1900 |
| New York, New York 10017-3852 | Dallas, Texas 75201-1664 |
| Telephone: (212) 547-5400 | Telephone: (214) 295-8000 |
| Facsimile: (212) 547-5444 | Facsimile: (972) 232-3098 |

*Counsel to the Official Committee of Unsecured Creditors*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*, | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |

### OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO CELSIUS NETWORK LLC'S MOTION SEEKING AN ORDER (I) LIFTING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(D)(1) AND BANKRUPTCY RULE 4001 AND (II) GRANTING LEAVE TO FILE LATE PROOF OF CLAIM PURSUANT TO BANKRUPTCY RULES 3003(C) AND 9006(B)(1)[2]

The Official Committee of Unsecured Creditors (the "<u>Committee</u>") appointed in the

chapter 11 cases of the above-captioned debtors (collectively, the "<u>Debtors</u>" or "<u>Voyager</u>")

hereby objects (the "<u>Objection</u>") to the Motion[3] filed by Celsius Network LLC ("<u>Celsius</u>")

seeking an order (1) lifting the automatic stay to allow commencement of an adversary

proceeding to recover alleged preferential transfers and (2) extending the time to file a proof of

claim. In support of the Objection, the Committee respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Voyager Digital Holdings, Inc.'s and Voyager Digital Ltd.'s principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003. Voyager Digital, LLC's principal place of business is 701 S. Miami Ave, 8th Floor, Miami, FL 33131.

[2] Celsius's motion was originally filed at Docket No. 727 (the "<u>Motion</u>"). Celsius subsequently filed an "updated" motion at Docket No. 789, but the only change was to include the new objection deadline of January 17, 2023.

[3] Unless otherwise defined herein, capitalized terms have the same meanings as in the Motion.

## PRELIMINARY STATEMENT

1.     Celsius's request for special treatment should be denied. The bar date applies to all creditors, and Celsius has no excuse for filing a late proof of claim. Celsius also provides no compelling reason for why it should be able to front-run other creditors by lifting the automatic stay. Put simply, the Motion provides no basis to depart from the applicable bar dates and Bankruptcy Rules. The Motion should be denied in its entirety.

2.     Voyager and Celsius are both chapter 11 debtors in the Southern District of New York. On July 5, 2022, Voyager commenced its chapter 11 case (the "Voyager Case"),[4] and on July 13, 2022, Celsius commenced its chapter 11 case (the "Celsius Case").[5] Voyager filed bankruptcy amidst extreme turmoil in the cryptocurrency industry. Indeed, the June 2022 beginning of "crypto winter" saw many market participants struggle and ultimately, fail. This "cryptopocalypse" spread rapidly through the mainstream news, as many retail customers found themselves unable to access their cryptocurrency because of withdrawal "freezes" on crypto platforms. Voyager was the first of these companies to commence chapter 11 proceedings, and Celsius filed only eight days later. The details of this sudden collapse across the industry, including Voyager's Case, are set forth in detail in the first day declaration (the "Celsius First Day Declaration") filed by Celsius's former Chief Executive Officer, Alex Mashinsky.[6]

3.     On August 3, 2022, this Court established October 3, 2022 as the bar date (the "Bar Date") in the Voyager Case.[7] On September 23, 2022, Voyager mailed the notice of Bar

---

[4]  The Voyager Case is jointly administered under the case captioned *In re Voyager Digital Holdings, Inc.,* et al., Case No. 22-10943 (MEW) (Bankr. S.D.N.Y.).

[5]  The Celsius Case is jointly administered under the case captioned *In re Celsius Network LLC,* et al., Case No. 22-10964 (MG) (Bankr. S.D.N.Y.). Filings in the Celsius case are cited as "CN Docket No. #."

[6]  CN Docket No. 23.

[7]  *See* Docket No. 218 (the "Bar Date Order").

2

Date to Celsius,[8] and on August 11, 2022 published the notice of Bar Date in the *New York Times* and the *Financial Times*.[9] The notice of Bar Date, like many of the filings in the Voyager Case, was widely publicized by media reports and on social media.[10] Voyager even provided notice on its own website describing the "claims process for your crypto" and making clear that "you will need to submit [a] proof of claim on or before the Bar Date of October 3, 2022, at 5:00 PM (EST)."[11] The Committee also published the Bar Date and clear instructions on its own Twitter account.[12]

4.      Celsius has also been represented by sophisticated bankruptcy counsel and advisors (many of which also represent Voyager). Despite all of this, Celsius failed to file a timely proof of claim.

5.      Celsius is now seeking authority to file a $7.7 million preference claim months after the Bar Date has passed. However, Celsius has not proffered any compelling excuse for missing the Bar Date. That is because no excuse exists. Celsius not only had actual and

---

[8]  Exhibit A to Docket No. 459 (averring that notice was sent to "Celsius" at "35 Great St. Helen's, London, UK EC3A 6AP"). Celsius concedes this fact. Ferraro Decl. at ¶ 6 ("Voyager attempted to provide notice of the bar date in its chapter 11 case to Celsius UK"). Celsius alleges, however, that the address is out of date. *Id*. at ¶ 7 ("35 Great St. Helen's, London, United Kingdom" is "an out of date address for a space that Celsius UK no longer occupies").

[9]  Docket Nos. 271 and 272.

[10]  Voyager (@investvoyager), Twitter (Aug. 26, 2022, 6:19 PM), https://twitter.com/investvoyager/status/1563290000187219969 (providing a link to additional information about the claims process, including the Bar Date); JD Supra, *Voyager Creditors—Deadline Set for Filing Bankruptcy Proofs of Claim*, Aug. 11, 2022, https://www.jdsupra.com/legalnews/voyager-creditors-deadline-set-for-2824111/ (stating that the proof of claim "deadline is 5:00 p.m. ET on October 3, 2022); Emily Tonelli, *Crypto Exchange FTX Wins Bid to Buy Out Bankruptcy Voyager for $1.4B*, Sept. 27, 2022, https://decrypt.co/110601/crypto-exchange-ftx-wins-bid-buy-out-bankrupt-voyager-1-4b (stating that the proof of claim deadline is October 3); Christian Nwobodo, *Bankrupt Crypto Lender Voyager Set to Auction Off its Assets on Sept. 13*, Sept. 7, 2022, https://cryptoslate.com/bankrupt-crypto-lender-voyager-set-to-auction-off-its-assets-on-sept-13/ (same).

[11]  The Voyager Team, *Claims Process for Your Crypto: Next Steps*, Aug. 24, 2022, https://www.investvoyager.com/blog/claims-process-crypto-next-steps/.

[12]  Voyager Official Committee of Unsecured Creditors (@VoyagerUCC), Twitter (August 31, 2022, 5:07 PM), https://twitter.com/VoyagerUCC/status/1565083929413140480.

constructive notice of the Bar Date, but it also knew about the allegedly preferential transfers well in advance of the deadline. In August, more than one month before the Bar Date, Celsius made public statements about Voyager withdrawing funds from Celsius's platform prepetition, but failed to take any action to preserve its claim.

6.      Celsius admits it filed a late proof of claim, but argues that its neglect should be excused. Celsius's neglect is not excusable. And, because Celsius's claim is time-barred, its request to obtain relief from the automatic stay is futile.[13] *See, e.g., In re GGC, LLC*, 329 B.R. 36, 39 (Bankr. W.D. Pa. 2005) ("stay relief should not be granted to accomplish a futile act, the Court is constrained to deny [the] instant motion for relief from the automatic stay."); *In re Denman*, 513 B.R. 720, 727 (Bankr. W.D. Tenn. 2014) (denying stay relief when the underlying act—exercising invalid option rights—is futile). For these reasons and the reasons below, the Motion should be denied.

## **OBJECTION**

## I.      **Celsius Fails to Establish Excusable Neglect**

7.      "Dates matter in bankruptcy" and, "[f]or creditors, none is more important than the 'bar date.'" *Ellis v. Westinghouse Elec. Co., LLC*, 11 F.4th 221, 226 (3d Cir. 2021). "It not only allows the trustee or debtor-in-possession to estimate the debtor's potential liabilities, it is also essential in formulating a viable reorganization plan. Without a final claims deadline, participants in the reorganization process would be hindered by undue caution in their negotiations and in voting on the plan." *Id.* at 232 (quoting *In re Energy Future Holdings Corp.*, 619 B.R. 99, 118 n.109 (Bankr. D. Del. 2020)). "Thus, a bar [date] does not function merely as a

---

[13] Paragraph 6 of the Bar Date Order provides that any holder of a claim that fails to timely submit a proof of claim shall not be treated as a creditor with respect to such claim for purposes of participating in any distribution on account of such claim.

procedural gauntlet, but as an integral part of the reorganization process." *In re Hooker Invs., Inc.*, 937 F.2d 833, 840 (2d Cir. 1991) (quotations and citation omitted).

8.      Courts will only permit late proofs of claims in extraordinary circumstances. "[Bankruptcy Rule] 9006(b)(1) governs the filing of proofs of claim after a bar date." *In re Motors Liquidation Co.*, 600 B.R. 482, 487–88 (Bankr. S.D.N.Y. 2019), *aff'd*, No. 19-CV-5666 (JMF), 2020 WL 3120379 (S.D.N.Y. June 12, 2020) (citing *In re Enron Corp.*, 419 F.3d 115, 121 (2d Cir. 2005)). The rule allows enlargement of the time to take an action ***only*** where "failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1); *see Motors Liquidation*, 600 B.R. at 488 (quotations omitted) ("Accordingly, a proof of claim filed after the bar date will only be permitted if the failure to file before the bar date was the result of excusable neglect.").

9.      Courts evaluate whether neglect is "excusable" by applying the *Pioneer* factors, which are as follows: (1) "the danger of prejudice to others"; (2) "the length of the delay and its potential impact on proceedings"; (3) "the reason for the delay, including whether it was in the reasonable control of the movant"; and (4) "whether the movant acted in good faith." *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 396 (1993); s*ee In re Tronox Inc.*, 626 B.R. 688, 698 (Bankr. S.D.N.Y. 2021) ("'excusable neglect' requires consideration of four factors").

10.     Courts are reluctant to allow late claims. "The Second Circuit strictly observes bar dates and has adopted what has been characterized as a 'hard line' in applying the *Pioneer* test." *In re Motors Liquidation Co.*, 619 B.R. 63, 74 (Bankr. S.D.N.Y. 2020) (quoting *In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 119 (Bankr. S.D.N.Y. 2010)); *In re AMR Corp.*, 492 B.R. 660, 666 (Bankr. S.D.N.Y. 2013) ("The Second Circuit has adopted a strict standard on

excusable neglect.").[14] "Critically, in the Second Circuit, 'the equities will rarely if ever favor a party who fails to follow the clear dictates of a court rule, and . . . where the rule is entirely clear . . . a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *Lehman Bros. Holdings*, 433 B.R. at 119 (quoting *Enron*, 419 F.3d at 123) (alterations in original).

### A.    The Reason for the Delay Does Not Establish Excusable Neglect.

11.    The "reason for the delay" is the key *Pioneer* factor. *See Williams v. KFC Nat'l Mgmt. Co.*, 391 F.3d 411, 415–16 (2d Cir. 2004) ("it is the third factor—the reason for delay— that predominates, and the other three are significant only in close cases.") In addressing this factor, Celsius provides two excuses: (1) "not receiv[ing] notice of the bar date"; and (2) being unaware of its claim because of "its own massive bankruptcy proceeding." Motion at ¶ 40. Neither of these reasons supports a ruling that Celsius's neglect was "excusable."

### (1)    Celsius Received Notice and Had Actual Knowledge of the Bar Date

12.    Celsius claims that "[t]he fact that Celsius never received notice of the Voyager bar date [] is sufficient to establish excusable neglect." Motion at ¶ 54. That's wrong for many reasons.

13.    ***First***, and most critically, Celsius had ***actual knowledge*** of the Bar Date. When a creditor "receive[s] actual knowledge of the Bar Date despite the fact that the notice was sent to the wrong address, or acquired actual knowledge of the Bar Date in some other manner, [the creditor] [is] not free to ignore it." *In re Avaya Inc.*, No. 17-10089 (SMB), 2018 WL 4381524, at

---

[14] This "strict" approach is consistent amongst courts. *See, e.g.*, *Nicholson v. City of Warren*, 467 F.3d 525, 526 (6th Cir. 2006) ("Excusable neglect has been held to be a strict standard which is met only in extraordinary cases."); 10 Collier on Bankruptcy ¶ 9006.06[3] (16th ed. 2022) (explaining that cases "demonstrate a reluctance on the part of the courts to be generous in determining whether the situation is one resulting from neglect that is excusable.").

*5 (Bankr. S.D.N.Y. Sept. 12, 2018); *see also In re Queen Elizabeth Realty Corp.*, No. 13-12335

(SMB), 2017 WL 1102865, at *5 (Bankr. S.D.N.Y. Mar. 24, 2017), *aff'd*, 586 B.R. 95 (S.D.N.Y.

2018) ("a creditor who has actual knowledge of the bar date ignores it at its peril"); *In re*

*Fairchild Aircraft Corp.*, 128 B.R. 976, 985 (Bankr. W.D. Tex. 1991) (a "creditor, like the

Plaintiffs in this case, who has actual knowledge of the bar date, be it by formal notice or

otherwise, certainly has the reasonable notice required"); *In re Sunland, Inc.*, 534 B.R. 793, 799

(Bankr. D.N.M. 2015) ("actual knowledge of the bar date" is "more than enough to provide due

process").

14.    For example, in Kmart's bankruptcy, a creditor (Simmons) "was not listed on any

of Kmart's schedules and never physically received notice of the Bar Date from the debtor." *In*

*re Kmart Corp.*, 381 F.3d 709, 717 (7th Cir. 2004). However, "it [was] undisputed that

Simmons's **attorney** had ***actual knowledge*** of the Original Bar Date." *Id.* at 711 (emphasis

added). The Seventh Circuit affirmed the bankruptcy court's denial of the tardy claim because

"Simmons's counsel had actual knowledge of the Original Bar Date. And the attorney's

knowledge is chargeable to the client." *Id.* at 717; *see also In re Linzer*, 264 B.R. 243, 248

(Bankr. E.D.N.Y. 2001) ("notice to or actual knowledge acquired by an agent is imputed to the

principal" and the rule applies "to the relation of attorney and client" and "to bankruptcy cases").

15.    Kirkland & Ellis ("Kirkland") is the lead law firm representing Celsius and

Voyager. Kirkland filed the motion establishing the Bar Date in the Voyager Case.[15] Celsius's

---

[15] Compare the lead lawyer on the bar date motion in the Voyager Case [Docket No. 98] with the lead lawyer on the
application to retain Kirkland in the Celsius Case [CN Docket No. 360], the motions for extension of time to file
schedules and statements of financial affairs in the Celsius Case [CN Docket Nos. 8, 431, 833], and Celsius'
*Global Notes and Statement of Limitations, Methodology and Disclaimers Regarding the Debtors' Schedules of
Assets and Liabilities and Statement of Financial Affairs* [CN Docket No. 973], which includes a schedule of
alleged preferential transfers.

and Voyager's Claims and Noticing Agent and Administrative Advisor is Stretto, Inc.

("Stretto"). Stretto served the notice of Bar Date on Celsius and published the notice of Bar Date

in the *New York Times* and the *Financial Times* for Voyager, and assisted Celsius in preparing its

Schedules and Statements of Financial Affairs.[16]

16.    Moreover, the Voyager Case also has been highly publicized on both social media

and media reports, including with respect to the Bar Date.[17] Voyager was the largest

cryptocurrency bankruptcy ever filed in the United States when the case was commenced, and

the case presides in the same court as the Celsius Case. There is no question that Celsius had

actual knowledge of the Voyager Case and the accompanying Bar Date. Celsius is a

sophisticated party whose own advisors requested the Bar Date at issue – they cannot now cry

foul for their failure to comply.[18]

17.    ***Second***, Celsius received actual notice by mail of the Bar Date. Celsius believes

its neglect is excusable because it did not "***receive*** notice of the bar date." Motion at ¶ 40

(emphasis added). But "due process does not require that the interested party actually receive the

---

[16] *See* Docket Nos. 67 and 241 (authorizing the retention of Stretto as Claims and Noticing Agent and Administrative Advisor); *see* CN Docket Nos. 54 and 841 (same).

[17] *See* Voyager (@investvoyager), Twitter (Aug. 26, 2022, 6:19 PM), https://twitter.com/investvoyager/status/1563290000187219969 (providing a link to additional information about the claims process, including the Bar Date); JD Supra, *Voyager Creditors—Deadline Set for Filing Bankruptcy Proofs of Claim*, Aug. 11, 2022, https://www.jdsupra.com/legalnews/voyager-creditors-deadline-set-for-2824111/ (stating that the proof of claim "deadline is 5:00 p.m. ET on October 3, 2022); Emily Tonelli, *Crypto Exchange FTX Wins Bid to Buy Out Bankrupt Voyager for $1.4B*, Sept. 27, 2022, https://decrypt.co/110601/crypto-exchange-ftx-wins-bid-buy-out-bankrupt-voyager-1-4b (stating that the proof of claim deadline is October 3); Christian Nwobodo, *Bankrupt Crypto Lender Voyager Set to Auction Off its Assets on Sept. 13*, Sept. 7, 2022, https://cryptoslate.com/bankrupt-crypto-lender-voyager-set-to-auction-off-its-assets-on-sept-13/ (same).

[18] In fact, the Second Circuit confirmed (in another context) that actual knowledge satisfies due process. *See In re Medaglia*, 52 F.3d 451 (2d Cir. 1995). *Medaglia* dealt with section 523(a)(3)(B) in dischargeability actions. The issue was "whether [the creditors'] actual knowledge of the bankruptcy petition was a constitutionally permissible substitute for formal notice of the [bar date], satisfying the requirements of due process." *Id*. at 453. The court held that "section 523(a)(3)(B)], which permits general knowledge of a case to substitute for particular knowledge of the bar date, [does not] violate[] constitutional due process." *Id*. at 454. If general knowledge of the case is constitutionally sufficient, then actual knowledge of the bar date is beyond sufficient.

notice." *In re Lehman Bros. Inc.*, 493 B.R. 437, 445 (Bankr. S.D.N.Y. 2013) (quoting *SIPC v. Stellatos (In re Blinder, Robinson & Co., Inc.)*, 124 F.3d 1238, 1243 (10th Cir. 1997)).[19] Due process merely requires that notice be "reasonably calculated under all the circumstances" to "apprise interested parties of the pendency of the action." *Id.* (quoting *Mullane*, 339 U.S. at 314).

18.     "Mailing a notice by First Class U.S. Mail to the ***last known address*** of a creditor satisfies due process because it is ***reasonably calculated*** to inform the creditor of the bar date for filing proofs of claim." *Thornton v. Seadrill Ltd.*, 626 B.R. 422, 427 (S.D. Tex. 2021) (quoting *In re Eagle Bus Mfg., Inc.*, 62 F.3d 730, 736 (5th Cir. 1995)) (emphasis added); *In re Agway, Inc.*, 313 B.R. 31, 39 (Bankr. N.D.N.Y. 2004) (same); *In re La Sierra Fin. Servs., Inc.*, 290 B.R. 718, 733 (B.A.P. 9th Cir. 2002) (same). "Importantly, '[t]he ***creditor is responsible*** for notifying the debtor, trustee, or the court of any changes in [its] mailing address to guarantee that [it] be given reasonable notice.'" *Seadrill*, 626 B.R. at 427 (quoting *Eagle Bus*, 62 F.3d at 736) (emphasis in original). That's because "notice to a known creditor is sufficient if provided to the address shown in the debtor's books and records." *In re The Brooklyn Hosp. Ctr.*, 513 B.R. 810, 820 (Bankr. E.D.N.Y. 2014); *Lehman Bros.*, 493 B.R. at 445 ("notice of the Bar Date [was] still adequate regardless of actual receipt by the Respondents because the Trustee properly relied upon addresses taken directly from [the debtor's] records").

19.     Celsius contends that notice was sent to the wrong entity—Celsius Network Limited ("Celsius UK") instead of Celsius Network LLC ("Celsius US"). Celsius provides

---

[19] Likewise, in approving publication notice, the Supreme Court recognized "that publication notices often are not read and often do not actually come to the attention of all of the desired recipients." *Tronox*, 626 B.R. at 719 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950) ("It would be idle to pretend that publication alone as prescribed here, is a reliable means of acquainting interested parties of the fact that their rights are before the courts.")). Nevertheless, publication notice satisfies due process even if it never reaches the intended recipients.

absolutely no support for the view that sending notice to a parent company, which is also a debtor in the Celsius Case, instead of its subsidiary, makes the notice ineffective. In any event, that position has no merit here.

20.    Celsius UK scheduled an Omnibus Wallet Service Agreement with Voyager on its Schedule G.[20] Celsius US's schedules do not include any agreements with Voyager. Celsius UK's address in the Omnibus Wallet Service Agreement is 35 Great St Helen's, London, EC63A 6AP, United Kingdom—the same address at which Voyager served the notice of Bar Date. Thus, it is reasonable that Voyager would serve the notice at that address. At bottom, "[i]f the creditor fails to update [its] address and as a consequence does not receive a notice of the bar date that was properly mailed, [the creditor] cannot later argue that [its] due process rights were violated."[21] *Seadrill*, 626 B.R. at 427 (quoting *Eagle Bus*, 62 F.3d at 736). Consequently, mailing notice to Celsius's last known address satisfied due process.

21.    ***Third***, Celsius is an "unknown" creditor because it has unasserted litigation claims. *See DePippo v. Kmart Corp.*, 335 B.R. 290, 297 (S.D.N.Y. 2005) (Creditors are "unknown" when their "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]."). Constructive notice is sufficient for "unknown" creditors and thus, Voyager's publication of the Bar Date was adequate due process. *Id.* at 295–96. "Typically, a known creditor may have engaged in some communication with a debtor concerning the existence of the creditor's claim." *In re Drexel Burnham Lambert Grp. Inc.*, 151 B.R. 674, 681 (Bankr. S.D.N.Y.

---

[20] *See* Case No. 22-10966-MG, [Docket No. 7], p. 232. A true and correct copy of page 232 of Celsius UK's Schedule G is attached hereto as **Exhibit A**.

[21] Celsius states incorrectly that, "[t]hrough ***no fault of its own***, Celsius did not receive notice of the Voyager bar date." Motion at ¶ 55. But failure to keep a debtor apprised of address changes ***is the creditor's fault***.

1993), *aff'd*, 157 B.R. 532 (S.D.N.Y. 1993). Accordingly, courts repeatedly hold that creditors

with undiscovered or unasserted litigation claims (like Celsius) are unknown.[22]

22.    The facts in *In re XO Communications* are similar to those present here. 301 B.R.

782 (Bankr. S.D.N.Y. 2003). The debtor ("XO") and the party seeking authority to file a late

claim, Teligent, Inc. ("Teligent"), were both chapter 11 debtors. XO and Teligent had a long-

standing business relationship. *Id*. at 786. Although it was unclear whether Teligent was a

creditor of XO, XO included Teligent on its service list. *Id*. However, Teligent's address was

incorrect and the notice of bar date was returned to XO as undeliverable, and XO took no further

action to remedy the incorrect address. *Id*. XO also published notice of the bar date in the *Wall

Street Journal*. *Id*. at 787. Six weeks after XO's bar date, Teligent's chapter 11 plan was

confirmed and a representative was appointed to investigate and pursue avoidance actions. *Id*. A

few months later, the representative filed a claim against XO asserting preference claims, and a

motion to allow the claim as timely. *Id*. Based on these facts, the court determined that Teligent

was an "unknown" creditor of XO because a preference claim is merely "conceivable,

conjectural or speculative" and depends on "whether a claimant will 'opt' to pursue the claim."

*Id*. at 794. Because Teligent was an "unknown" creditor, the court concluded that XO's notice by

publication was sufficient. *Id*. at 801.

---

[22] *See, e.g.*, *DePippo*, 335 B.R. at 297 (litigation claimant was "clearly an 'unknown' creditor" where "prior to the institution of the present lawsuit . . . plaintiff never communicated any intention of making a claim against [the debtors] and [the debtors] were unaware plaintiff intended making such a claim"); *In re Victory Mem'l Hosp.*, 435 B.R. 1, 6 (Bankr. E.D.N.Y. 2010) (litigation claimant "was an unknown creditor" where "[s]he did not commence an action against the Debtor until" after the bar date); *In re Chateaugay Corp. Reomar, Inc.*, No. 86 B 11270 BRL, 2009 WL 367490, at *5 (Bankr. S.D.N.Y. Jan. 14, 2009) ("[Debtor] did not become aware of Plaintiffs' claims until the [] receipt of the Complaints" and, "[a]s such, the Plaintiffs were unknown creditors."); *In re Best Prod. Co., Inc.*, 140 B.R. 353, 356 (Bankr. S.D.N.Y. 1992) (litigation claimants were unknown because, "until their complaint was served," the debtor "had no notice of the existence of their claims").

11

23.    Accordingly, Voyager's publication of the Bar Date is sufficient notice for Voyager's "unknown" creditors, which includes Celsius's alleged preference claim. Celsius received the same notice that all holders of undiscovered and unasserted litigation claims normally receive. *See Tronox*, 626 B.R. at 719 (noting that "for ***unknown*** parties, reasonable publication notice is sufficient") (citing *Mullane*, 339 U.S. at 314–18) (emphasis in original).

24.    ***Fourth***, it is "well established" that lack of knowledge regarding the bar date or a due process violation does not automatically excuse a dilatory creditor.[23] Thus, even if Celsius lacked notice and knowledge, it would not be "entitled" to file a late proof of claim. Motion at ¶ 40. Celsius would still need to satisfy *Pioneer*, which it cannot do.

### (2)    Celsius's Ignorance of Its Claim Precludes Relief.

25.    Celsius's only other explanation is that it was unaware of its claim due to being "consumed with its own bankruptcy case." Motion at ¶¶ 54, 2 (noting that "the bar date passed before Celsius ***became aware*** of its claim") (emphasis added). That statement, however, is false. As early as August 30, 2022, more than one month before the Bar Date, Celsius acknowledged that the alleged preferential transfers occurred. Specifically, Celsius stated:

> Voyager has been a customer with deposits held by [Celsius] and has maintained two deposit accounts on the Celsius platform—one that was opened in 2019 and another that was opened in 2020. Both accounts were substantially withdrawn upon prior to the Petition Date and the current value of the accounts is now approximately $11,300.[24]

---

[23] *See, e.g.*, *In re Roman Cath. Diocese of Syracuse*, 638 B.R. 33, 40 (Bankr. N.D.N.Y. 2022) ("concur[ing] with ***well established precedent*** that lack of knowledge alone does not suffice to establish a right to relief from the bar date based on excusable neglect") (emphasis added) (citing *Tronox*, 626 B.R. at 731 ("movant's lack of actual knowledge of the bar date" is "not enough, by itself, to show that a movant's delays were beyond the movant's reasonable control"); *Motors Liquidation*, 619 B.R. at 74 (applying the "*Pioneer* [test] when denying certain creditors' motion for leave to file late claims . . . despite the alleged due process violation" based on lack of notice); *Drexel Burnham*, 151 B.R. 674, 681 n.3 (Bankr. S.D.N.Y.) (noting that "the debtor's obligation to give actual notice to known creditors does not completely absolve a creditor of its duty to file a proof of claim").

[24] CN Docket No. 637, ¶ 5.

Additionally, Celsius filed its Schedules and Statements on October 5—two days after the Voyager Bar Date. Motion at ¶ 15. Statements must identify all "transfers to creditors within 90 days before filing [the] case."[25] Celsius began preparing its Schedules and Statements *before* its case was filed on July 13, 2022. Motion at ¶ 11. When the Schedules and Statements were ultimately filed two days after the Bar Date, they included a detailed transaction history with Voyager.[26] Clearly, this transaction history was developed during Celsius's preparations of its Schedules and Statements, which occurred in advance of the Bar Date.

26.    Putting aside the fact that Celsius was aware of its potential claim in advance of the Bar Date, "ignorance of one's own claim does not constitute excusable neglect." *Jones v. Chemetron Corp.*, 212 F.3d 199, 205 (3d Cir. 2000); *Motors Liquidation*, 598 B.R. at 758 (denying late claim motion where the "excuse essentially boil[ed] down to ignorance" because "[i]gnorance of one's own claim does not constitute excusable neglect" (quoting *Best Prod.*, 140 B.R. at 359)); *Energy Future Holdings*, 619 B.R. at 113 (same); *In re Charter Co.*, 113 B.R. 725, 729 (M.D. Fla. 1990) (same).

27.    In *XO Communications*, the court dismissed an analogous situation as lacking merit to establish excusable neglect. The court found that Teligent was aware that preference actions existed in advance of XO's bar date, but "made an informed decision to get its plan confirmed first" and afterwards complete its investigation and pursuit of avoidance actions. *XO Communications, Inc.*, 301 B.R. at 799. "Accordingly, it was within the reasonable control of Teligent to file a timely claim, but it opted to forego such a filing until after confirmation of its plan and thereby assumed the reasonably foreseeable consequences of such a determination." *Id.*

---

[25] The official form is available at https://www.uscourts.gov/sites/default/files/form_b_207.pdf.

[26] CN Docket No. 973, p. 13815. A true and correct copy of page 13815 of Celsius US's Statements of Financial Affairs is attached hereto as **Exhibit B**.

28.    Celsius had knowledge of the alleged claim and the bar date, but seemingly prioritized other aspects of its case.[27] That is not a basis for excusable neglect. *See id.* ("There is nothing in the record that would support a finding that Teligent could not have made an inquiry regarding any particular preference claim, the collection of which may have been negatively impacted with the passage of time, and not simultaneously pursued its primary goal of getting its plan confirmed."); *see Motors Liquidation*, 599 B.R. at 716 ("Appellant, however, offers no authority, and the Court's own research has disclosed none, to support the proposition that a claimant who was otherwise able to file a proof of claim should be excused from timely doing so because [it] was focused on more pressing priorities."). Indeed, allowing late claims whenever a creditor is focused on matters it subjectively deemed more pressing would nullify bar dates. *Id.* ("A bar date rule that would yield to undisclosed subjective priorities of creditors would effect no viable gatekeeping function at all."). Being "too busy" is not a basis for excusable neglect.[28]

29.    The district court's opinion in *Motors Liquidation* also makes clear that preoccupation with other matters does not establish excusable neglect. 599 B.R. 706. A creditor who missed the bar date in *General Motors* argued "his failure to file [a claim] was excusable because, as of the bar date, he was incarcerated and concentrating on pursuing his freedom from

---

[27] Any difficulty identifying Voyager as a possible preference target due to poor recordkeeping is no excuse. A company has exclusive control over the quality of its own records. Requiring several months to uncover a claim from its own books and records was therefore undeniably within Celsius's own control. To reiterate, "creditors themselves have the 'responsibility to diligently investigate what claims they may have against the debtor.'" *Motors Liquidation*, 598 B.R. at 753 (quoting *DPWN Holdings*, 871 F.Supp.2d at 158).

[28] *See, e.g.*, *Tronox*, 626 B.R. at 734 ("As a general rule, 'excusable neglect requires something more than a simple failure to meet the deadline due to a busy schedule.'" (quoting *United States v. Dumas*, 94 F.3d 286, 289 (7th Cir. 1996), *cert. denied*, 520 U.S. 1105 (1997))); *In re Frontier Commc'ns Corp.*, 641 B.R. 64, 74 (Bankr. S.D.N.Y. 2022) ("The Second Circuit has noted that the following reasons for delay do not weigh in favor of finding a mistake excusable: ... 'preoccupation or an excessive workload.'" (quoting *Enron*, 419 F.3d at 126)); *In re Eagle–Picher Indus., Inc.*, 158 B.R. 713, 715–16 (Bankr. S.D. Ohio 1993) (rejecting excuse of "overworked and underfunded" staff); *In re Peninsular Oil Corp.*, 399 B.R. 532, 537 (Bankr. M.D. Fla. 2008) (noting "preoccupation will never be recognized as excusable neglect.").

14

a wrongful conviction." *Id*. at 716. The court was "mindful that it is indeed difficult to diligently supervise one's legal affairs while incarcerated" and accepted "that his priority was to secure his own freedom before turning his attention to collecting civil damages for the harm he suffered." *Id*. Nevertheless, the district court affirmed that the bankruptcy court had appropriately denied the creditor's late claim motion stating that "[a] bar date rule that would yield to undisclosed subjective priorities of creditors would effect no viable gatekeeping function at all." *Id*. at 716–17.

30.     If an innocent prisoner focused on overturning his conviction is not a valid excuse for filing a late claim, Celsius's claim that it was too busy should not be valid either. Particularly given: (i) the lack of complexity in filing a claim, *see Ellis*, 11 F.4th at 237 (stating that the burden to "comply with a bar date is low" and "[a] creditor does not even have to know the amount or validity of the claim"); and (ii) that Celsius is a sophisticated company represented by competent counsel. *See Motors Liquidation*, 598 B.R. at 758 (quoting *In re Hills Stores Co.*, 167 B.R. 348, 351 (Bankr. S.D.N.Y. 1994)) (when "analyzing the reason for the delay, courts also 'take[] into account the movant's sophistication.").

31.     Celsius, in its words, "is one of the largest and most sophisticated cryptocurrency-based finance platforms in the world." Motion at ¶ 8. On top of that, it is represented by not one, but *three*, of the largest and most sophisticated law firms in the world.[29] Celsius's status as a "sophisticated party holding a substantial claim" that "is [extremely well] represented by counsel" undoubtedly "weighs heavily against a finding of excusable [neglect] under the applicable standards in this Circuit." *AMR Corp.*, 492 B.R. at 666.

---

[29] See CN Docket Nos. 838; 843; 845, authorizing Celsius's retention of Latham & Watkins, Akin Gump, and Kirkland & Ellis, respectively.

32.     To be sure, Celsius *easily* could have asked one of the many lawyers at its

disposal to file a protective claim.[30] It decided not to, and that decision forecloses relief. *In re*

*Pac. Drilling S.A.*, 616 B.R. 634, 645 (Bankr. S.D.N.Y. 2020) ("A decision not to file a claim,

even if that decision turns out to be unwise, is not 'neglect' of a kind that Rule 9006 excuses."

(citing *United States v. Darling*, 706 F. App'x 34, 36 (2d Cir. 2017))).

33.     In sum, Celsius has no legitimate excuse for missing the Bar Date. Celsius, like

all creditors, must comply with the Bar Date. There is no reason for special treatment. Because

the legitimacy of Celsius's reason for missing the Bar Date is not a "close case," the Motion

should be denied. *See Williams*, 391 F.3d at 416 ("the other three [*Pioneer* factors] are

significant only in close cases").

**B.      None of the Other Factors Justify Extending the Bar Date.**

34.     The remaining factors—"prejudice," "length of delay," and "good faith"—do not

support a finding of excusable neglect.

35.     ***First***, as to factor one (prejudice), the Debtors (and their creditors) would be

significantly prejudiced. Arguing to the contrary, Celsius makes three points: (1) Voyager is "in

the preliminary stages of its bankruptcy and no plan has been confirmed"; (2) Celsius's claim is

"*de minimus* relative to [the] total unsecured claims pool"; and (3) the "circumstances

surrounding [Celsius's preference claim] are unique." Motion at ¶¶ 46–49. Each argument fails.

36.     Initially, arguments "that the judicial administration of the cases would not be

impacted because the Debtors [have] not yet filed a plan and disclosure statement at the time

movant filed the [late claim] Motion" are "not enough for movant to prevail." *AMR Corp.*, 492

---

[30] The notion that Celsius was working "with limited resources" is nonsense. Motion at ¶ 54. How many creditors in
this (and every other) bankruptcy have an army of restructuring professionals representing them? If Celsius
couldn't fill out a protective proof of claim—a simple 3-page standardized form—then no creditor can.

B.R. at 667. "Indeed, if a late claim was permitted so long as it was filed before the plan, the bar

date would serve little purpose." *Id.*; *see also Ellis*, 11 F.4th at 232 (bar dates are "essential in

***formulating*** a viable reorganization plan") (emphasis added); *see also XO Communications, Inc.*,

301 B.R. 782, 799 ("the Bar Date Order was meant to function as a statute of limitations and

effectively exclude such late claims in order to provide the Debtor and its creditors with finality

to the claims process."). Plus, the Voyager Case is hardly in its infancy. The Voyager Case,

which filed more than six months ago, has been highly publicized. After a two-week auction in

September, Voyager filed its first chapter 11 plan, which contemplated a sale to West Realm

Shires Inc. d/b/a FTX US ("FTX"). That plan was upended in the middle of solicitation by

FTX's unexpected collapse. Since then, Voyager has filed a new plan with solicitation having

already begun.

37.    Additionally, the fact that a claim is supposedly "*de minimis*" in size is

immaterial. "The argument that a claim is *de minimis* when viewed in the context of an entire

case was rejected [by the Second Circuit] in the *Enron* case." *In re Northwest Airlines Corp.*, No.

05-17930 ALG, 2010 WL 502837, at *3 (Bankr. S.D.N.Y. Feb. 9, 2010) (citing *Enron*, 419 F.3d

at 129.[31] Also, "considered in absolute terms, $12.5 million [or $7.7 million] is no small amount"

and "[i]f it were, [the creditor] would likely not invest the time or resources it has in pursuing the

claim." *Enron*, 419 F.3d at 131.

38.    Most importantly, by focusing on the claim's size and uniqueness, Celsius misses

the bigger picture. "The prejudice to the Debtors is not traceable to the filing of any single

additional claim but to the impact of permitting exceptions that will encourage others to seek

---

[31] *See also AMR Corp.*, 492 B.R. at 667 (denying late claim "represent[ing] only 0.01% of the total claims filed
against the Debtors' estate"); *Kmart*, 381 F.3d at 714 (denying late claim "represent[ing] only a small fraction of
the approximately $6 billion total of unsecured claims").

similar leniency." *Lehman Bros. Holdings*, 433 B.R. at 121. "Allowing even a single late claim

risks inspiring similar efforts from creditors who also missed the bar date." *Motors Liquidation*,

598 B.R. at 758.

39.     "[C]oncerns about opening the floodgates to potential claimants" are "pronounced

in a very large bankruptcy case such as this one." *Roman Cath. Diocese of Syracuse, N.Y.*, 638

B.R. at 39. "The mere prospect of litigating additional motions to file post-bar-date proofs of

claim is enough to prejudice the debtor." *Motors Liquidation*, 598 B.R. at 759 (explaining that

the "fear of rampant late-claims litigation is especially germane in a case like this one where the

universe of potential creditors is practically limitless").[32] Ultimately, "every late-filed claim that

is allowed would reduce the already-low percentage recoveries" to creditors and "therefore

would be prejudicial to those other claimants." *Tronox*, 626 B.R. at 699.

40.     The Second Circuit explained in *Enron* that "[e]ven if [a] claim is negligible

relative to the total size of [the debtor's] bankruptcy," the "more relevant question" is whether

allowing the claim would lead to additional claims that "the bankruptcy court, having admitted

the first claim, would be hard pressed to reject." 419 F.3d at 131–32. The overwhelming majority

of Voyager creditors are unrepresented individuals. If a sophisticated institutional creditor with a

---

[32] The first-day declaration notes that Voyager's platform has 3.5 million active users. Docket No. 15 at ¶ 2. Any one of those users could potentially have a claim. Significantly, "[t]he burden of establishing lack of prejudice lies with the party seeking relief under Bankruptcy Rule 9006, and [Celsius] 'introduced no evidence concerning the number of ***potential*** claimants who might [be] prompted to file late claims in the wake of a ruling' in its favor." *In re Caritas Health Care, Inc.*, 435 B.R. 111, 117 (Bankr. E.D.N.Y. 2010) (quoting *Enron*, 419 F.3d at 132) (emphasis in original). Celsius's speculation that "it is unlikely that granting Celsius the relief it seeks will result in a cascade [of additional claims]" counts for nothing. Motion at ¶ 49.

18

legion of lawyers can flout the Bar Date, the Court will certainly be "hard pressed" not to excuse ordinary individuals with late claims. That is reason enough to deny relief.[33]

41.    ***Second***, as to factor two (length of delay), Celsius's delay weighs against finding excusable neglect. The bar date lapsed on October 3, and Celsius did not attempt to assert its claim until December 14 (when the Motion was filed). A multi-month delay, in absolute terms, is not insignificant. More importantly, though, ***any*** delay is too long when the reason is inadequate. *See Enron*, 419 F.3d at 128–29 (noting that courts "have rejected claims filed just one day late" and stating that "where an explanation is nonexistent, or not credible," the delay may "weigh in favor of the debtor, even if the delay is, in absolute terms, quite short"); *Kmart*, 381 F.3d at 714 (affirming denial of a late claim even though the "claim was only one day late" where the reason was "a poor one"). Celsius's proffered reasons for the delay are inadequate, so even a "quite short" delay would support denying relief.

42.    Assuming Celsius's ignorance was a valid reason (it is not), ignorance does not fully explain the delay. Celsius filed its Schedules and Statements, which included the alleged preferential transfers on October 5. Motion at ¶ 15. In August, Celsius stated publicly that Voyager withdrew the majority of its funds from Celsius's platform. However, Celsius alleges that it did not discover the claim until November 5, and Celsius did not file the Motion until December 14. There is no excuse for these delays, and the delays alone justify denial of the Motion.

---

[33] Celsius makes much of the fact that the bar date was extended due to an amendment to the Debtors' schedules. Motion at ¶ 48. Once more, that misses the point. The question is not whether a bar date can be extended. The question, rather, is what effect excusing a creditor's compliance with the bar date would have when other creditors learn they, too, missed the bar date.

43.    *Third*, as to the last factor (good faith), Celsius contends it "acted in good faith." Motion at ¶ 55. Regardless of whether that's true, "good faith cannot singlehandedly overcome the fact that it has failed to meet the other requirements of excusable neglect." *Motors Liquidation*, 598 B.R. at 759; *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003) ("And rarely in the decided cases is the absence of good faith at issue").

44.    Putting that aside, it is not clear from the record that Celsius acted in good faith. "[T]here is no formal presumption of good faith" when applying the *Pioneer* factors. *In re Lyondell Chemical Company*, 543 B.R. 400, 410 (Bankr. S.D.N.Y. 2016). Celsius states that it began exploring its claims against Voyager as soon as it was made aware of the transfers. Motion at ¶ 55. If that is the case, then a timely claim should have been filed because Celsius was made aware of the transfers as early as August 30, 2022. Celsius also states that as soon as it was made aware of the transfers, Celsius began referring the matter to conflicts counsel. However, Celsius's conflicts counsel, Akin Gump Strauss Hauer & Feld LLP, did not file a notice of retention to handle this matter until November 11, 2022.[34] And the retention is effective as of October 14, 2022—six weeks after Celsius stated publicly that Voyager withdrew crypto prepetition and nine days after Celsius filed Schedules and Statements that included the transfers.

45.    Celsius also relies heavily on its position that it did not receive notice of the Bar Date "[t]hrough no fault of its own" in support of good faith. Motion at ¶ 55. This statement is troubling. Celsius was aware of Voyager's Case—it is referenced in Celsius's First Day Declaration—and Celsius was aware of Voyager's withdrawals in advance of the Bar Date. Relying on a purported incorrect service address as a defense when notice was provided by other means (publication) and Celsius had knowledge of the bankruptcy does not constitute good faith.

---

[34] CN Docket No. 1330.

*See In re J.S. II, L.L.C.*, 397 B.R. 383, 389 (Bankr. N.D. Ill. 2008) ("inaction during the pendency of the timeline for filing a claim against the Debtors does not constitute good faith.").

46.    Moreover, in the Ferraro Declaration filed in support of the Motion, Mr. Ferraro states that the Omnibus Wallet Agreement between Voyager and Celsius UK was amended and Celsius UK assigned its rights under the agreement to Celsius US and Celsius EU UAB. Ferraro Dec. at ¶ 5. Thus, according to Ferraro, Voyager should have served the notice of Bar Date on Celsius US and Celsius EU UAB, not Celsius UK. However, the Omnibus Wallet Agreement is reflected on Celsius UK's schedules, not Celsius US.[35]

47.    Celsius's public filings and statements conflict with certain of its arguments in support of good faith. *See XO Communications, Inc.*, 301 B.R. at 800 (finding that the movant failed to establish good faith when it proffered conflicting statements regarding notice of the bar date). For that reason, Celsius has not met its burden of establishing good faith.

48.    As this Court has stated, courts do not "enjoy the job of enforcing the foregoing standards" but they are "bound to apply strict due process and excusable neglect standards" even when "the results are harsh." *Tronox*, 626 B.R. at 699. A bar date's "essential function" in "ensuring the sound administration of the bankruptcy estate" demands this result. *See Enron*, 419 F.3d at 127–28. In view of that, the Bar Date must be enforced and the Motion denied.

**II.    No Cause Exists to Lift the Automatic Stay.**

49.    Because there's no basis for extending the bar date, there's also no reason to grant relief from the automatic stay. Celsius requests stay relief for "cause" under Bankruptcy Code section 362(d)(1). Cause, in this context, "is an intentionally broad and flexible concept which must be determined on a case-by-case basis." *In re Celsius Network LLC*, 642 B.R. 497, 501

---

[35] Celsius EU UAB is not a debtor in the Celsius Case.

(Bankr. S.D.N.Y. 2022) (citing *In re Project Orange Assocs., LLC*, 432 B.R. 89, 101 (Bankr.

S.D.N.Y. 2010)). Courts consider various factors,[36] but, ultimately, the "decision whether to

grant relief from the automatic stay falls within the discretion of the bankruptcy court." *Id*. at 502

(citing *Burger Boys, Inc. v. S. St. Seaport Ltd. P'ship (In re Burger Boys, Inc.)*, 183 B.R. 682,

687–88 (S.D.N.Y. 1994)). Here, relief from the stay is not warranted because (1) granting relief

would be futile and (2) the relevant *Sonnax* factors do not support the relief.

### A. Granting Relief From the Stay Would Be Futile.

50.    Without the ability to file a proof of claim, Celsius's pursuit of its claim is futile.

Courts consistently refuse to modify the automatic stay when the movant will ultimately be

unable to assert a claim against the estate.

51.    For example, in *Wright v. Placid Oil Co.*, 107 B.R. 104 (Bankr. N.D. Tex. 1989),

a creditor moved to modify the automatic stay to pursue a tort claim in state court. "However, the

bar date for filing proofs of claims . . . had already passed." *Id*. at 105. The district court affirmed

the lower court's refusal to modify the stay because the creditor would "not [have been] allowed

to file a proof of claim as a result of any judgment in that case; therefore, allowing that litigation

to go forward would serve no purpose." *Id*. at 108.

---

[36] The "*Sonnax* factors" are: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;(5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms. *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990) (citing *In re Curtis,* 40 B.R. 795, 799–800 (Bankr. D. Utah 1984)).

52.    Likewise, in *In re Holland*, 562 B.R. 305 (Bankr. E.D. Va. 2016), the debtor filed

for bankruptcy in the midst of a divorce. His non-filing spouse (Ms. Holland) moved for stay

relief to continue the divorce proceeding and, hopefully, obtain an equitable distribution award.

She had not, however, filed a proof of claim. As a consequence, the court refused to lift the stay,

explaining that the "deciding factor in this case is that the bar date to file proofs of claims

expired without Ms. Holland having filed a proof of claim." *Id*. at 308. "Without a timely-filed

proof of claim, she [could] not receive a distribution." *Id*. The requested relief would have

caused "additional litigation, expense and delay for something that would have no significance."

*Id*. Because an "award by the [other] court would [have been] futile," the court denied relief. *Id*.

53.    Similarly, in *In re Elias*, No. 13-CV-01269 CBA, 2014 WL 1248042 (E.D.N.Y.

Mar. 25, 2014), a creditor sought to pursue claims in state court. In affirming the bankruptcy

court, the district court noted that the "relief [the creditor] sought from the automatic stay would

have been to allow her to continue pursuing her state court actions against [the debtor,]" but

those actions "were brought to collect the very debts that [the debtor] sought to have discharged

in bankruptcy." *Id*. at *8. Thus, "attempts to pursue those claims in state court—were the

automatic stay to be lifted—would be futile," so there was "no cause" to lift the stay. *Id*.

54.    Celsius's failure to file a proof of claim renders stay relief futile. Because "stay relief should not be granted to accomplish a futile act," *GGC, LLC*, 329 B.R. at 39,[37] lifting the stay would serve only to create "additional litigation, expense and delay for something that would have no significance," *Holland*, 562 B.R. at 308. "It would be absurd to allow the [] action to go ahead and require the estate to spend money litigating a debt that might [or, in this case, *will*] ultimately be uncollectible." *Benedor Corp. v. Conejo Enter., Inc. (In re Conejo Enter., Inc.)*, 96 F.3d 346, 352–53 (9th Cir. 1996). Denying stay relief is therefore appropriate.

**B.    The *Sonnax* Factors Do Not Demonstrate Cause to Lift the Stay.**

55.    Assuming that lifting the stay would not be an exercise in futility, the relief remains unwarranted under the factors articulated in *Sonnax*.[38]

56.    ***Factor (1)***: whether relief would result in a partial or complete resolution of the issues. Lifting the stay is only a partial resolution. If the stay is lifted, Celsius will commence preference litigation against Voyager in the Celsius Case. Depending on the outcome of that proceeding, Celsius would need to return to this Court to seek to have its claim allowed and determine the claim's treatment. Factor (1) therefore supports denying relief. *In re Residential Capital*, No. 12-12020 (MG), 2012 WL 3249641, at *4 (Bankr. S.D.N.Y. Aug. 7, 2012) (first

---

[37] Numerous other cases reinforce this conclusion. *See, e.g.*, *In re Denman*, 513 B.R. 720, 727 (Bankr. W.D. Tenn. 2014) (because purchase option was not enforceable, "relief from the automatic stay [to exercise option] would be futile" and movant therefore could not "establish sufficient cause under a totality of the existing facts and circumstances to warrant a termination of the automatic stay"); *Ivester v. Miller*, 398 B.R. 408, 428 (M.D.N.C. 2008) (lower court was "within its discretion to deny relief from stay" where doing so "could result in a futile exercise"); *In re United Imports, Inc.*, 203 B.R. 162, 168 (Bankr. D. Neb. 1996) ("[Creditor] is not eligible to share in the distribution of any estate assets. It therefore does not stand to reason that the debtor should be forced to defend a lawsuit in which any monetary judgment obtained in the suit could not be enforced against assets of the estate."); *Fedders North America, Inc. v. Branded Products, Inc. (In re Branded Products, Inc.)*, 154 B.R. 936, 952 (Bankr. W.D. Tex. 1993) (denying stay relief where "[movant] ha[d] not filed a claim in this bankruptcy case" and "was not currently entitled to share in any distribution of assets of this estate").

[38] The third (whether the other proceeding involves the debtor as a fiduciary), eighth (whether the judgment claim arising from the other action is subject to equitable subordination), and ninth (whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor) *Sonnax* factors are not applicable.

factor weighed against lifting the stay because movants would need to go through the bankruptcy court claims process to collect on any judgment).

57.      *Factor (2)*: lack of connection or interference with the bankruptcy case. Lifting the stay would subject the Debtors to litigation in another forum, directly contradicting the stay's purpose. *In re Atreus Enterprises, Ltd.*, 120 B.R. 341, 346 (Bankr. S.D.N.Y. 1990) (explaining that the "stay is intended as an umbrella to protect a debtor temporarily from the shower of law suits and collection efforts by creditors ***outside the bankruptcy court administering the debtor's case***") (emphasis added). "[E]ven slight interference with the administration [of the estate] may be enough to preclude relief [from the stay]." *In re U.S. Brass Corp.*, 173 B.R. 1000, 1006 (Bankr. E.D. Tex. 1994). Factor (2) therefore supports denying relief.

58.      *Factor (4)*: whether a specialized tribunal with the necessary expertise has been established to hear the claim. Preference claims arise under the Bankruptcy Code, and all bankruptcy judges are adept at applying preference law. No "specialized tribunal" is required. Factor (4) therefore supports denying relief.

59.      *Factor (5)*: whether the debtor's insurer has assumed responsibility for defending the claim. Celsius seeks to recover directly from the Debtors' estates and litigation costs will be paid by the estates. Factor (5) therefore supports denying relief.

60.      *Factor (6)*: whether the action primarily involves third parties. The claim involves just two parties: Voyager and one of its unsecured creditors. Factor (6) therefore supports denying relief.

61.      *Factor (7)*: whether litigation in another forum would prejudice the interests of other creditors. Permitting one creditor to proceed in its preferred forum encourages others to seek the same relief. *In re SunEdison, Inc.*, 557 B.R. 303, 308–09 (Bankr. S.D.N.Y. 2016)

25

(recognizing the risk of "encourag[ing] other claimants to file their own stay relief motions"). The costs of litigating additional stay relief motions would prejudice creditors. Factor (7) therefore supports denying relief.

62.     ***Factor (10)***: the interests of judicial economy and the expeditious and economical resolution of litigation. Again, lifting the stay would result in one court (the Celsius court) addressing the claim's merits and another court (this Court) determining the claim's allowability and treatment. Consequently, ***refusing*** to lift the stay would promote judicial economy by allowing all issues to be resolved in one forum. Factor (10) therefore supports denying relief.

63.     ***Factor (11)***: whether the parties are ready for trial in the other proceeding. Unlike many cases, where litigants have already expended time and energy in another proceeding, no complaint has even been filed. Celsius is not seeking to continue a proceeding that's well underway—it's seeking to commence a brand-new proceeding. Factor (11) therefore supports denying relief.

64.     ***Factor (12)***: impact of the stay on the parties and the balance of harms. "Unsecured creditors like [Celsius] bear a heavy burden in proving that the balance of hardships favors lifting the stay." *Celsius Network*, 642 B.R. at 504 (citing *In re W.R. Grace & Co.*, 2007 WL 1129170, at *3 (Bankr. D. Del. Apr. 13, 2007) (describing "the heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief")). Celsius will not suffer any unique harm by having to pursue its claim in this Court, as it is in the exact same boat as every other creditor. In fact, the stay creates no hardship whatsoever for Celsius because an action "which would otherwise be enjoined by [the automatic stay] if initiated in any other context, is not subject to the automatic stay if commenced in the bankruptcy court where the debtor's bankruptcy case is pending." *Atreus Enterprises*, 120 B.R.

26

at 346. Creditors like Celsius remain entirely free to pursue their claims; what they cannot do, however, is pursue their claims in another venue.

65.    Thus, as it relates to the stay, the only question is whether Celsius will need to resolve its claim in Voyager's bankruptcy (like everyone else) or whether it will receive special treatment. Celsius "is merely one more creditor trying to recover from the limited assets of a bankruptcy estate, and its claim has no greater dignity than that of any other unsecured creditor." *See Branded Products*, 154 B.R. at 952. Celsius should therefore be denied special treatment, and its claim, like every other claim, should be resolved in this proceeding.

## CONCLUSION

WHEREFORE, the Committee requests that the Court deny the Motion.

Dated:   New York, New York
         January 17, 2023

MCDERMOTT WILL & EMERY LLP

/s/ Darren Azman
Darren Azman
Joseph B. Evans
One Vanderbilt Avenue
New York, NY 10017-3852
Telephone: (212) 547-5400
Facsimile: (212) 547-5444
E-mail: dazman@mwe.com
E-mail: jbevans@mwe.com

- and -

Charles R. Gibbs (admitted *pro hac vice*)
Grayson Williams (admitted *pro hac vice*)
2501 North Harwood Street, Suite 1900
Dallas, TX 75201
Telephone: (214) 295-8000
Facsimile: (972) 232-3098
E-mail: cgribbs@mwe.com
E-mail: gwilliams@mwe.com

- and -

Gregg Steinman (admitted *pro hac vice*)
333 SE 2nd Avenue, Suite 4500
Miami, FL 33131-2184
Telephone: (305) 329-4473
Facsimile: (305) 503-8805
E-mail: gsteinman@mwe.com

*Counsel to the Official Committee of
Unsecured Creditors*

## <u>CERTIFICATE OF SERVICE</u>

  I hereby certify that on this 17th day of January 2023, I caused a true and correct copy of the foregoing *Objection of the Official Committee of Unsecured to Celsius Network LLC's Motion Seeking an Order (I) Lifting the Automatic Stay Pursuant to 11 U.S.C. § 362(D)(1) and Bankruptcy Rule 4001 and (II) Granting Leave to File Late Proof of Claim Pursuant to Bankruptcy Rule 3003(C) and 9006(B)(1)* to be served via (i) electronic notification pursuant to the CM/ECF system for the United States Bankruptcy Court for the Southern District of New York or (ii) e-mail, as indicated in the service list attached hereto.

          */s/ Darren Azman*_____
          Darren Azman

## SERVICE LIST

| Name | Attention | Address 1 | Address 2 | City | State | Zip | Country | Email | Method of Service |
|---|---|---|---|---|---|---|---|---|---|
| DISTRICT OF COLUMBIA | OFFICE OF THE ATTORNEY GENERAL | 400 6TH STREET NW | | WASHINGTON | DC | 20001 | | OAG@DC.GOV | VIA E-MAIL |
| FRANCINE DE SOUSA | C/O SISKINDS LLP | ATTN: ANTHONY O'BRIEN | 100 LOMBARD STREET SUITE 302 | TORONTO | ON | M5C1M3 | | ANTHONY.OBRIEN@SISKINDS.COM | VIA E-MAIL |
| FRANCINE DE SOUSA | C/O SISKINDS LLP | ATTN: MICHAEL G. ROBB & GARETT M. HUNTER | 275 DUNDAS STREET UNIT 1 | LONDON | ON | N6B3L1 | | MICHAEL.ROBB@SISKINDS.COM GARETT.HUNTER@SISKINDS.COM | VIA E-MAIL |
| GOOGLE, LLC | | 1600 AMPHITHEATRE PKWY | | MOUNTAIN VIEW | CA | 94043 | | COLLECTIONS@GOOGLE.COM | VIA E-MAIL |
| INTERNAL REVENUE SERVICE | | PO BOX 7346 | | PHILADELPHIA | PA | 19101-7346 | | | VIA FIRST CLASS MAIL |
| OFFICE OF THE UNITED STATES TRUSTEE | FOR THE SOUTHERN DIST OF NEW YORK | ATTN: RICHARD C. MORRISSEY, ESQ. AND MARK BRUH, ESQ. | 201 VARICK STREET, ROOM 1006 | NEW YORK | NY | 10014 | | RICHARD.MORRISSEY@USDOJ.GOV MARK.BRUH@USDOJ.GOV | VIA E-MAIL |
| SECURITIES & EXCHANGE COMMISSION | | 100 F STREET NE | | WASHINGTON | DC | 20549 | | SECBANKRUPTCY-OGC-ADO@SEC.GOV | VIA E-MAIL |
| SECURITIES & EXCHANGE COMMISSION | NEW YORK REGIONAL OFFICE | 100 PEARL STREET SUITE 20-100 | | NEW YORK | NY | 10004-2616 | | NYROBANKRUPTCY@SEC.GOV | VIA E-MAIL |
| SECURITIES & EXCHANGE COMMISSION | NEW YORK REGIONAL OFFICE | ATTN: ANDREW CALAMARI REGIONAL DIRECTOR | 200 VESEY STREET SUITE 400 | NEW YORK | NY | 10281-1022 | | BANKRUPTCYNOTICESCHR@SEC.GOV | VIA E-MAIL |
| STATE OF ALABAMA | OFFICE OF THE ATTORNEY GENERAL | 501 WASHINGTON AVE | | MONTGOMERY | AL | 36104 | | CONSUMERINTEREST@ALABAMAAG.GOV | VIA E-MAIL |
| STATE OF ALASKA | OFFICE OF THE ATTORNEY GENERAL | 1031 W 4TH AVE, STE 200 | | ANCHORAGE | AK | 99501 | | ATTORNEY.GENERAL@ALASKA.GOV | VIA E-MAIL |
| STATE OF ARIZONA | OFFICE OF THE ATTORNEY GENERAL | 2005 N CENTRAL, AVE | | PHOENIX | AZ | 85004 | | AGINFO@AZAG.GOV | VIA E-MAIL |
| STATE OF ARKANSAS | OFFICE OF THE ATTORNEY GENERAL | 323 CENTER ST, STE 200 | | LITTLE ROCK | AR | 72201 | | OAG@ARKANSASAG.GOV | VIA E-MAIL |
| STATE OF CALIFORNIA | OFFICE OF THE ATTORNEY GENERAL | PO BOX 944255 | | SACRAMENTO | CA | 94244-2550 | | XAVIER.BECERRA@DOJ.CA.GOV | VIA E-MAIL |
| STATE OF COLORADO | OFFICE OF THE ATTORNEY GENERAL | RALPH L. CARR JUDICIAL BUILDING | 1300 BROADWAY, 10TH FL | DENVER | CO | 80203 | | CORA.REQUEST@COAG.GOV | VIA E-MAIL |
| STATE OF CONNECTICUT | OFFICE OF THE ATTORNEY GENERAL | 165 CAPITOL AVENUE | | HARTFORD | CT | 06106 | | ATTORNEY.GENERAL@CT.GOV | VIA E-MAIL |
| STATE OF FLORIDA | OFFICE OF THE ATTORNEY GENERAL | THE CAPITOL PL01 | | TALLHASSEE | FL | 32399 | | ASHLEY.MOODY@MYFLORIDALEGAL.CO | VIA E-MAIL |
| STATE OF GEORGIA | OFFICE OF THE ATTORNEY GENERAL | 40 CAPITOL SQ SW | | ATLANTA | GA | 30334 | | | VIA FIRST CLASS MAIL |
| STATE OF HAWAII | OFFICE OF THE ATTORNEY GENERAL | 425 QUEEN STREET | | HONOLULU | HI | 96813 | | HAWAIIAG@HAWAII.GOV | VIA E-MAIL |
| STATE OF IDAHO | OFFICE OF THE ATTORNEY GENERAL | 700 W. JEFFERSON ST, SUITE 210 | PO BOX 83720 | BOISE | ID | 83720 | | LAWRENCE.WASDEN@AG.IDAHO.GOV AGWASDEN@AG.IDAHO.GOV | VIA E-MAIL |
| STATE OF ILLINOIS | OFFICE OF THE ATTORNEY GENERAL | JAMES R. THOMPSON CENTER | 100 W. RANDOLPH ST | CHICAGO | IL | 60601 | | INFO@LISAMADIGAN.ORG | VIA E-MAIL |
| STATE OF INDIANA | OFFICE OF THE INDIANA ATTORNEY GENERAL | INDIANA GOVERNMENT CENTER SOUTH | 302 W WASHINGTON ST, 5TH FLOOR | INDIANAPOLIS | IN | 46204 | | | VIA FIRST CLASS MAIL |
| STATE OF IOWA | OFFICE OF THE ATTORNEY GENERAL | HOOVER STATE OFFICE BUILDING | 1305 E. WALNUT STREET | DES MOINES | IA | 50319 | | CONSUMER@AG.IOWA.GOV | VIA E-MAIL |
| STATE OF KANSAS | ATTN: ATTORNEY GENERAL DEREK SCHMIDT | 120 SW 10TH AVE, 2ND FLOOR | | TOPEKA | KS | 66612 | | DEREK.SCHMIDT@AG.KS.GOV | VIA E-MAIL |
| STATE OF KENTUCKY | ATTORNEY GENERAL - DANIEL CAMERON | 700 CAPITAL AVENUE, SUITE 118 | | FRANKFORT | KY | 40601 | | | VIA FIRST CLASS MAIL |
| STATE OF LOUISIANA | DEPT. OF JUSTICE - ATTORNEY GENERAL'S OFFICE | 300 CAPITAL DRIVE | | BATON ROUGE | LA | 70802 | | ADMININFO@AG.STATE.LA.US | VIA E-MAIL |
| STATE OF MAINE | OFFICE OF THE ATTORNEY GENERAL | 6 STATE HOUSE STATION | | AUGUSTA | ME | 04333 | | ATTORNEY.GENERAL@MAINE.GOV | VIA E-MAIL |
| STATE OF MARYLAND | OFFICE OF THE ATTORNEY GENERAL | 200 ST. PAUL PLACE | | BALTIMORE | MD | 21202 | | OAG@OAG.STATE.MD.US | VIA E-MAIL |
| STATE OF MASSACHUSETTS | ATTORNEY GENERAL'S OFFICE | 1 ASHBURTON PLACE, 20TH FLOOR | | BOSTON | MA | 02108 | | | VIA FIRST CLASS MAIL |
| STATE OF MICHIGAN | DEPARTMENT OF ATTORNEY GENERAL | 525 W OTTAWA ST | | LANSING | MI | 48906 | | | VIA FIRST CLASS MAIL |
| STATE OF MINNESOTA | OFFICE OF THE ATTORNEY GENERAL | 445 MINNESOTA ST, STE 1400 | | ST. PAUL | MN | 55101 | | ATTORNEY.GENERAL@AG.STATE.MN.US | VIA E-MAIL |
| STATE OF MISSISSIPPI | OFFICE OF THE ATTORNEY GENERAL | WALTER SILLERS BUILDING | 550 HIGH ST, PO BOX 220 | JACKSON | MS | 39201 | | | VIA FIRST CLASS MAIL |
| STATE OF MISSOURI | OFFICE OF THE ATTORNEY GENERAL | SUPREME COURT BUILDING | 207 W HIGH ST | JEFFERSON CITY | MO | 65101 | | CONSUMER.HELP@AGO.MO.GOV | VIA E-MAIL |
| STATE OF MONTANA | OFFICE OF THE ATTORNEY GENERAL | JUSTICE BUILDING, 3RD FLOOR | 215 N SANDERS, PO BOX 201401 | HELENA | MT | 59602 | | CONTACTDOJ@MT.GOV | VIA E-MAIL |
| STATE OF NEBRASKA | OFFICE OF THE ATTORNEY GENERAL | 2115 STATE CAPITOL | | LINCOLN | NE | 68509 | | | VIA FIRST CLASS MAIL |
| STATE OF NEVADA | OFFICE OF THE ATTORNEY GENERAL | OLD SUPREME COURT BUILDING | 100 N CARSON ST | CARSON CITY | NV | 89701 | | | VIA FIRST CLASS MAIL |
| STATE OF NEW HAMPSHIRE | OFFICE OF THE ATTORNEY GENERAL | NH DEPARTMENT OF JUSTICE | 33 CAPITOL ST. | CONCORD | NH | 03301 | | ATTORNEYGENERAL@DOJ.NH.GOV | VIA E-MAIL |
| STATE OF NEW JERSEY | OFFICE OF THE ATTORNEY GENERAL | RICHARD J. HUGHES JUSTICE COMPLEX | 25 MARKET ST 8TH FL, WEST WING BOX 080 | TRENTON | NJ | 08611 | | | VIA FIRST CLASS MAIL |
| STATE OF NEW MEXICO | OFFICE OF THE ATTORNEY GENERAL | 408 GALISTEO STREET | VILLAGRA BUILDING | SANTA FE | NM | 87501 | | HBALDERAS@NMAG.GOV | VIA E-MAIL |
| STATE OF NEW YORK | OFFICE OF THE ATTORNEY GENERAL | THE CAPITOL | 2ND FLOOR | ALBANY | NY | 12224 | | | VIA FIRST CLASS MAIL |
| STATE OF NORTH CAROLINA | OFFICE OF THE ATTORNEY GENERAL | 114 W EDENTON ST | | RALEIGH | NC | 27603 | | | VIA FIRST CLASS MAIL |
| STATE OF NORTH DAKOTA | OFFICE OF THE ATTORNEY GENERAL | STATE CAPITOL, 600 E | DEPT. 125 | BISMARCK | ND | 58505 | | NDAG@ND.GOV | VIA E-MAIL |
| STATE OF OHIO | OFFICE OF THE ATTORNEY GENERAL | STATE OFFICE TOWER | 30 E BROAD ST 14TH FL | COLUMBUS | OH | 43215 | | | VIA FIRST CLASS MAIL |
| STATE OF OKLAHOMA | OFFICE OF THE ATTORNEY GENERAL | 313 NE 21ST ST | | OKLAHOMA CITY | OK | 73105 | | QUESTIONS@OAG.OK.GOV | VIA E-MAIL |
| STATE OF OREGON | OFFICE OF THE ATTORNEY GENERAL | 1162 COURT ST NE | | SALEM | OR | 97301-4096 | | ELLEN.ROSENBLUM@DOG.STATE.OR.US ATTORNEYGENERAL@DOJ.STATE.OR.U | VIA E-MAIL |
| STATE OF PENNSYLVANIA | OFFICE OF THE ATTORNEY GENERAL | STRAWBERRY SQUARE 16TH FL | | HARRISBURG | PA | 17120 | | | VIA FIRST CLASS MAIL |
| STATE OF RHODE ISLAND | OFFICE OF THE ATTORNEY GENERAL | 150 S MAIN ST | | PROVIDENCE | RI | 02903 | | AG@RIAG.RI.GOV | VIA E-MAIL |
| STATE OF SOUTH CAROLINA | OFFICE OF THE ATTORNEY GENERAL | PO BOX 11549 | | COLUMBIA | SC | 29211 | | | VIA FIRST CLASS MAIL |
| STATE OF SOUTH CAROLINA | OFFICE OF THE ATTORNEY GENERAL | REMBERT C. DENNIS BLDG | 1000 ASSEMBLY ST RM 519 | COLUMBIA | SC | 29201 | | | VIA FIRST CLASS MAIL |
| STATE OF SOUTH DAKOTA | OFFICE OF THE ATTORNEY GENERAL | 1302 E HIGHWAY 14, STE 1 | | PIERRE | SD | 57501-8501 | | | VIA FIRST CLASS MAIL |

| Name | Firm/Attorney | Address 1 | Address 2 | City | State | Zip | | Email | Method |
|---|---|---|---|---|---|---|---|---|---|
| STATE OF TENNESSEE | OFFICE OF THE ATTORNEY GENERAL | PO BOX 20207 | | NASHVILLE | TN | 37202-0207 | | | VIA FIRST CLASS MAIL |
| STATE OF TEXAS | OFFICE OF THE ATTORNEY GENERAL | 300 W. 15TH ST | | AUSTIN | TX | 78701 | | | VIA FIRST CLASS MAIL |
| STATE OF UTAH | OFFICE OF THE ATTORNEY GENERAL | UTAH STATE CAPITOL COMPLEX | 350 NORTH STATE ST STE 230 | SALT LAKE CITY | UT | 84114 | | UAG@UTAH.GOV | VIA E-MAIL |
| STATE OF VERMONT | OFFICE OF THE ATTORNEY GENERAL | 109 STATE ST. | | MONTPELIER | VT | 05609 | | AGO.INFO@VERMONT.GOV | VIA E-MAIL |
| STATE OF VIRGINIA | OFFICE OF THE ATTORNEY GENERAL | 202 N. NINTH ST. | | RICHMOND | VA | 23219 | | MAIL@OAG.STATE.VA.US | VIA E-MAIL |
| STATE OF WASHINGTON | OFFICE OF THE ATTORNEY GENERAL | 1125 WASHINGTON ST SE | | OLYMPIA | WA | 98501 | | | VIA FIRST CLASS MAIL |
| STATE OF WASHINGTON | OFFICE OF THE ATTORNEY GENERAL | PO BOX 40100 | | OLYMPIA | WA | 98504-00 | | | VIA FIRST CLASS MAIL |
| STATE OF WEST VIRGINIA | OFFICE OF THE ATTORNEY GENERAL | STATE CAPITOL, 1900 KANAWHA | BUILDING 1 RM E-26 | CHARLESTON | WV | 25305 | | CONSUMER@WVAGO.GOV | VIA E-MAIL |
| STATE OF WISCONSIN | OFFICE OF THE ATTORNEY GENERAL | 17 WEST MAIN STREET, ROOM 114 EAST P | | MADISON | WI | 53702 | | | VIA FIRST CLASS MAIL |
| STATE OF WYOMING | OFFICE OF THE ATTORNEY GENERAL | 109 STATE CAPITOL | | CHEYENNE | WY | 82002 | | | VIA FIRST CLASS MAIL |
| TORONTO STOCK EXCHANGE | | 300 - 100 ADELAIDE ST. | | WEST TORONTO | ON | M5H 1S3 | | WEBMASTER@TMX.COM | VIA E-MAIL |
| UNITED STATES ATTORNEY'S OFFICE | SOUTHERN DISTRICT OF NEW YORK | ONE ST. ANDREWS PLAZA | | NEW YORK | NY | 10007 | | | VIA FIRST CLASS MAIL |
| UNITED STATES DEPARTMENT OF | ATTORNEY GENERAL OF THE U.S. | 950 PENNSYLVANIA AVE, NW | | WASHINGTON | DC | 20530-0001 | | | VIA FIRST CLASS MAIL |
| KELLEHER PLACE MANAGEMENT, LLC | HORWOOD MARCUS & BERK CHARTERED | 500 W. MADISON ST. | SUITE 3700 | CHICAGO | IL | 60661 | | AHAMMER@HMBLAW.COM NDELMAN@HMBLAW.COM | VIA ECF |
| METROPOLITAN COMMERCIAL BANK | BALLARD SPAHR LLP | 200 IDS CENTER | 80 SOUTH 8TH STREET | MINNEAPOLIS | MN | 55402-2119 | | SINGERG@BALLARDSPAHR.COM | VIA E-MAIL |
| METROPOLITAN COMMERCIAL BANK | WACHTELL, LIPTON, ROSEN & KATZ | 51 WEST 52ND STREET | | NEW YORK | NY | 10019-6150 | | RGMASON@WLRK.COM ARWOLF@WLRK.COM AKHERRING@WLRK.COM | VIA E-MAIL VIA E-MAIL VIA E-MAIL |
| JASON RAZNICK | JAFFE RAITT HEUER & WEISS, P.C. | 27777 FRANKLIN ROAD | SUITE 2500 | SOUTHFIELD | MI | 48034 | | PHAGE@JAFFELAW.COM | VIA ECF |
| STEVE LAIRD | FORSHEY & PROSTOK LLP | 777 MAIN STREET | SUITE 1550 | FORT WORTH | TX | 76102 | | BFORSHEY@FORSHEYPROSTOK.COM | VIA ECF |
| ORACLE AMERICA, INC. | BUCHALTER, A PROFESSIONAL CORPORA | 425 MARKET ST. | SUITE 2900 | SAN FRANCISCO | CA | 94105 | | SCHRISTIANSON@BUCHALTER.COM | VIA ECF |
| ALAMEDA RESEARCH LLC & AFFILIATES | SULLIVAN & CROMWELL, LLP | 125 BROAD STREET | | NEW YORK | NY | 10004 | | DIETDERICHA@SULLCROM.COM GLUECKSTEINB@SULLCROM.COM BELLERBB@SULLCROM.COM | VIA ECF VIA ECF VIA E-MAIL |
| VOYAGER DIGITAL HOLDINGS, INC., ET AL. | KIRKLAND & ELLIS LLP KIRKLAND & ELLIS INTERNATIONAL LLP | 601 LEXINGTON AVENUE | | NEW YORK | NY | 10022 | | JSUSSBERG@KIRKLAND.COM CMARCUS@KIRKLAND.COM CHRISTINE.OKIKE@KIRKLAND.COM ALLYSON.SMITH@KIRKLAND.COM | VIA ECF VIA E-MAIL VIA E-MAIL VIA E-MAIL |
| EMERALD OCEAN ISLE, LLC, AMANO GLOBAL HOLDINGS, INC., SHINGO LAVINE, AND ADAM LAVINE | C/O GOLDSTEIN & MCCLINKOCK LLLP | ATTN: MATTHEW E. MCCLINTOCK, HARLEY GOLDSTEIN, AND STEVE YACHIK | 111 W WASHINGTON STREET SUITE 1221 | CHICAGO | IL | 60602 | | MATTM@GOLDMCLAW.COM HARLEYG@RESTRUCTURINGSHOP.COM STEVENY@GOLDMCLAW.COM | VIA E-MAIL VIA E-MAIL VIA E-MAIL |
| EMERALD OCEAN ISLE, LLC, AMANO GLOBAL HOLDINGS, INC., SHINGO LAVINE, AND ADAM LAVINE | C/O LAW OFFICES OF DOUGLAS T. TABACHNIK, P.C. | ATTN: DOUGLAS T. TABACHNIK | 63 WEST MAIN STREET SUITE C | FREEHOLD | NJ | 07728-2141 | | DTABACHNIK@DTTLAW.COM | VIA E-MAIL |
| MATTHEW EDWARDS | C/O LIZ GEORGE AND ASSOCIATES | ATTN: LYSBETH GEORGE | 8101 S. WALKER SUITE F | OKLAHOMA CITY | OK | 73139 | | GEORGELAWOK@GMAIL.COM | VIA ECF |
| TEXAS STATE SECURITIES BOARD | OFFICE OF THE ATTORNEY GENERAL OF TEXAS | ATTN: ABIGAIL R RYAN, LAYLA D MILLIGAN & JASON B BINFORD | BANKRUPTCY & COLLECTIONS DIVISION PO BOX 12548 | AUSTIN | TX | 78711-2548 | | ABIGAIL.RYAN@OAG.TEXAS.GOV LAYLA.MILLIGAN@OAG.TEXAS.GOV JASON.BINFORD@OAG.TEXAS.GOV | VIA E-MAIL VIA E-MAIL VIA E-MAIL |
| OFFICE OF THE ATTORNEY GENERAL OF TEXAS | | ATTN: ROMA N. DESAI | BANKRUPTCY & COLLECTIONS DIVISION PO BOX 12548 | AUSTIN | TX | 78711-2548 | | ROMA.DESAI@OAG.TEXAS.GOV | VIA ECF |
| OFFICE OF THE ATTORNEY GENERAL | BANKRUPTCY DIVISION | ATTN: MARVIN E. CLEMENTS, JR. | BANKRUPTCY DIVISION P O BOX 20207 | NASHVILLE | TN | 37202-0207 | | AGBANKNEWYORK@AG.TN.GOV | VIA ECF |
| VERMONT DEPARTMENT OF FINANCIAL REGULATION | ASSISTANT GENERAL COUNSEL | ATTN: JENNIFER ROOD | 89 MAIN STREET THIRD FLOOR | MONTPELIER | VT | 05620 | | JENNIFER.ROOD@VERMONT.GOV | VIA ECF |
| ROBERT SNYDERS & LISA SNYDERS | C/O JOHNSON, POPE, BOKOR, RUPPEL & BURNS, LLP | ATTN: ANGELINA E. LIM | 401 E JACKSON STREET SUITE 3100 | TAMPA | FL | 33602 | | ANGELINAL@JPFIRM.COM | VIA ECF |
| MICHAEL LEGG | C/O MCCARTHY, LEBIT, CRYSTAL & LIFFMAN CO | ATTN: ROBERT R. KRACHT & NICHOLAS R. OLESKI | 1111 SUPERIOR AVENUE EAST SUITE 2700 | CLEVELAND | OH | 44114 | | RRK@MCCARTHYLEBIT.COM NRO@MCCARTHYLEBIT.COM | VIA E-MAIL VIA ECF |
| MICHAEL GENTSCH | C/O BARSKI LAW PLC | ATTN: CHRIS D. BARSKI | 9375 E. SHEA BLVD. STE 100 | SCOTTSDALE | AZ | 85260 | | CBARSKI@BARSKILAW.COM | VIA ECF |
| ILLINOIS SECRETARY OF STATE | C/O OFFICE OF THE ATTORNEY GENERAL | ATTN: JOHN P. REDING | 100 W. RANDOLPH ST FLOOR 13 | CHICAGO | IL | 60601 | | JOHN.REDING@ILAG.GOV | VIA ECF |
| GEORGIA DEPARTMENT OF BANKING AND FINANCE | | ATTN: NATHAN HOVEY, ASSISTANT ATTORNEY GENERAL | DEPARTMENT OF LAW 40 CAPITOL SQUARE SW | ATLANTA | GA | 30334 | | NHOVEY@LAW.GA.GOV | VIA ECF |
| MARK CUBAN AND DALLAS BASKETBALL LIMITED, D/B/A DALLAS MAVERICKS | C/O BROWN RUDNICK LLP | ATTN: SIGMUND S. WISSNER-GROSS ESQ. & KENNETH J. AULET | SEVEN TIMES SQUARE | NEW YORK | NY | 10036 | | SWISSNER-GROSS@BROWNRUDNICK.COM KAULET@BROWNRUDNICK.COM | VIA ECF VIA E-MAIL |
| MARK CUBAN AND DALLAS BASKETBALL LIMITED, D/B/A DALLAS MAVERICKS | C/O BROWN RUDNICK LLP | ATTN: STEPHEN A. BEST ESQ & RACHEL O. WOLKINSON, ESQ. | 601 THIRTEENTH STREET NW SUITE 600 | WASHINGTON | DC | 2005 | | SBEST@BROWNRUDNICK.COM RWOLKINSON@BROWNRUDNICK.COM | VIA E-MAIL VIA E-MAIL |
| ED BOLTON | C/O AKERMAN LLP | ATTN: R. ADAM SWICK, JOHN H. THOMPSON, JOANNE GELFAND | 1251 AVENUE OF THE AMERICAS, 37TH FL | NEW YORK | NY | 10020 | | ADAM.SWICK@AKERMAN.COM; JOHN.THOMPSON@AKERMAN.COM; JOANNE.GELFAND@AKERMAN.COM | VIA ECF VIA ECF VIA ECF |
| JON GIACOBBE | | ATTN: A. MANNY ALICANDRO | 11 BROADWAY, SUITE 615 | NEW YORK | NY | 10004 | | MANNY@ALICANDROLAWOFFICE.COM | VIA ECF |
| WELLS FARGO BANK, N.A. | C/O ALDRIDGE PITE, LLP | ATTN: GREGORY WALLACH | FIFTEEN PIEDMONT CENTER 3575 PIEDMONT ROAD, N.E. | ATLANTA | GA | 30305 | | GWALLACH@ALDRIDGEPITE.COM | VIA ECF |
| AD HOC GROUP OF EQUITY INTEREST HOLDERS | C/O KILPATRICK TOWNSEND & STOCKTON LLP | ATTN: DAVID M. POSNER & KELLY E. MOYNIHAN | THE GRACE BUILDING 1114 AVENUE OF THE | NEW YORK | NY | 10036 | | DPOSNER@KILPATRICKTOWNSEND.COM KMOYNIHAN@KILPATRICKTOWNSEND.C | VIA ECF VIA E-MAIL |
| AD HOC GROUP OF EQUITY INTEREST HOLDERS | C/O KILPATRICK TOWNSEND & STOCKTON LLP | ATTN: PAUL M. ROSENBLATT | 1100 PEACHTREE STREET NE SUITE 2800 | ATLANTA | GA | 30309 | | PROSENBLATT@KILPATRICKTOWNSEND.COM | VIA E-MAIL |
| PIERCE ROBERTSON | C/O PACHULSKI STANG ZIEHL & JONES LLP | ATTN: RICHARD M. PACHULSKI, ALAN J. KORNFELD, DEBRA I. GRASSGREEN, AND JASON H. ROSELL | 10100 SANTA MONICA BLVD 13TH FLOOR | LOS ANGELES | CA | 90067 | | RPACHULSKI@PSZJLAW.COM AKORNFELD@PSZJLAW.COM DGRASSGREEN@PSZJLAW.COM JROSELL@PSZJLAW.COM | VIA E-MAIL VIA E-MAIL VIA E-MAIL VIA ECF |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| STATE OF WASHINGTON | OFFICE OF ATTORNEY GENERAL | ATTN: STEPHEN MANNING, ASSISTANT ATTORNEY GENERAL | GOVERNMENT COMPLIANCE AND ENFORCEMENT DIVISION P.O. BOX 40100 | OLYMPIA | WA | 98504-4010 | STEPHEN.MANNING@ATG.WA.GOV | VIA ECF |
| MARCUM LLP | MINTZ & GOLD LLP | ATTN: ANDREW R. GOTTESMAN | 600 THIRD AVENUE, 25TH | NEW YORK | NY | 10016 | GOTTESMAN@MINTZANDGOLD.COM | VIA ECF |
| U.S. SECURITIES & EXCHANGE COMMISSION | | ATTN: THERESE A. SCHEUER | 100 F STREET, NE | WASHINGTON | DC | 20549 | SCHEUERT@SEC.GOV | VIA E-MAIL |
| NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES | CONSUMER PROTECTION AND FINANCIAL ENFORCEMENT | ATTN: KEVIN R. PUVALOWSKI, LINDA DONAHUE, JASON D. ST. JOHN | ONE STATE STREET | NEW YORK | NY | 10004 | KEVIN.PUVALOWSKI@DFS.NY.GOV LINDA.DONAHUE@DFS.NY.GOV JASON.STJOHN@DFS.NY.GOV | VIA E-MAIL VIA E-MAIL VIA ECF |
| NEW JERSEY BUREAU OF SECURITIES | C/O MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP | ATTN: VIRGINIA T. SHEA | 1300 MT KEMBLE AVENUE PO BOX 2075 | MORRISTOWN | NJ | 02075 | VSHEA@MDMC-LAW.COM | VIA ECF |
| NEW JERSEY BUREAU OF SECURITIES | C/O MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP | ATTN: NICOLE LEONARD | 225 LIBERTY STREET, 36TH FLOOR | NEW YORK | NY | 10281 | NLEONARD@MDMC-LAW.COM | VIA ECF |
| USIO, INC. | PULMAN, CAPPUCCIO & PULLEN, LLP | ATTN: RANDALL A. PULMAN | 2161 NW MILITARY HIGHWAY SUITE 400 | SAN ANTONIO | TX | 78213 | RPULMAN@PULMANLAW.COM | E-MAIL |
| BAM TRADING SERVICES INC. D/B/A BINANCE.US | LATHAM & WATKINS LLP | ATTN: ADAM J. GOLDBERG, NACIF TAOUSSE, JONATHAN J. WEICHSELBAUM | 1271 AVENUE OF THE AMERICAS | NEW YORK | NY | 10020 | ADAM.GOLDBERG@LW.COM NACIF.TAOUSSE@LW.COM JON.WEICHSELBAUM@LW.COM | VIA ECF VIA E-MAIL VAI E-MAIL |
| BAM TRADING SERVICES INC. D/B/A BINANCE.US | LATHAM & WATKINS LLP | ATTN: ANDREW D. SORKIN | 555 ELEVENTH STREET, NW SUITE 1000 | WASHINGTON | DC | 20004 | ANDREW.SORKIN@LW.COM | VIA E-MAIL |
| ATTORNEY FOR THE STATES OF ALABAMA, ARKANSAS, CALIFORNIA, DISTRICT OF COLUMBIA, HAWAII, MAINE, NORTH DAKOTA, OKLAHOMA, AND SOUTH | C/O NATIONAL ASSOCIATION OF ATTORNEYS GENERAL | ATTN: KAREN CORDRY BANKRUPTCY COUNSEL | 1850 M ST. NW 12TH FLOOR | WASHINGTON | DC | 20036 | KCORDRY@NAAG.ORG | VIA ECF |
| USIO, INC. & FICENTIVE, INC. | RUSKIN MOSCOU FALTISCHEK, P.C. | ATTN: SHERYL P. GIUGLIANO | 1425 RXR PLAZA, 15TH FLOOR | UNIONDALE | NY | 11556 | SGIUGLIANO@RMFPC.COM | VIA ECF |