Jonathan D. Canfield
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000

Matthew M. Murphy
Michael C. Whalen
PAUL HASTINGS LLP
71 S. Wacker Drive
Forty-Fifth Floor
Chicago, Illinois 60606
Telephone: (312) 499-6000

*Proposed Special Regulatory and Conflicts Counsel*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: Docket Nos. 727 and 789** |

**DEBTORS' OBJECTION TO MOTION OF CELSIUS NETWORK LLC FOR ORDER
(I) LIFTING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. 362(d)(1) AND
BANKRUPTCY RULE 4001 AND (II) GRANTING LEAVE TO FILE LATE PROOF OF
CLAIM PURSUANT TO BANKRUPTCY RULES 3003(c) AND 9006(b)(1)**

The above-captioned debtors and debtors in possession (collectively, the "Debtors" or

"Voyager") respectfully submit this objection (this "Objection") to the *Motion of Celsius Network*

*LLC for Order (I) Lifting the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule*

*4001 and (II) Granting Leave to File Late Proof of Claim Pursuant to Bankruptcy Rules 3003(c)*

*and 9006(b)(1)* (ECF Nos. 727 and 789) ("Motion").

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

## Preliminary Statement

1.      The Debtors' bar date has passed and has delivered "finality to a process that will ultimately lead to the rehabilitation of the [Debtors] and the payment of claims under a plan of reorganization." *In re Drexel Burnham Lambert Grp. Inc.*, 151 B.R. 674, 679 (Bankr. S.D.N.Y.). Celsius Network LLC ("Celsius"), itself a reorganizing debtor in bankruptcy proceedings before this Court, has now come forward and threatened to upend that finality by plunging the Debtors into costly and uncertain litigation all without having timely filed a claim in the Debtors' chapter 11 cases.  Celsius, by its Motion, seeks extraordinary relief from this Court, in the form of (i) an extension of the Debtors' bar date so that it may file an out-of-time claim *and* (ii) relief from the automatic stay so that it may pursue novel legal theories against the Debtors' in order to substantiate that claim, *and upon which its claim is wholly contingent*.  Celsius is entitled to no such relief.

2.      The burden of obtaining an extension of the bar date to file a late claim lies squarely with the late creditor.  Celsius cannot demonstrate to the Court that its failure to comply with the well-publicized bar date (which was also sent by notice to the address on file for Celsius in the Debtors' books and records) was the result of "excusable neglect."   In fact, Celsius's only justification for its tardiness is that it was busy with its own bankruptcy proceeding around the time of the October 3, 2022 bar date in the Debtors' chapter 11 cases.  *See Order (I) Setting Deadlines for Submitting Proofs of Claim, (II) Approving Procedures for Submitting Proofs of Claim, and (III) Approving Notice Thereof* ("Bar Date Order") (ECF No. 218).[2]  While this may be neglect, it certainly is not excusable.

---

[2]     References to docket entries in this case are denoted by "(ECF No. ___)."  References to docket entries in Celsius's bankruptcy case, *In re Celsius Network LLC, et al.*, Case No. 22-10964 (MG) (Bankr. S.D.N.Y.), are denoted by "(Celsius ECF No. ___)."

3.       Celsius tacitly admits the weakness of its excuse by inverting the logical order of the relief it seeks.   That is, in its Motion Celsius seeks relief from the automatic stay so that it may pursue legal claims against the Debtors *before* asking this Court to permit it to actually file a claim against the Debtors.   This is, of course, completely backwards, as the Court would not reach the question of whether to grant any relief from the automatic stay until after determining whether Celsius filed a timely claim in the first place.   Tactics aside, the simple fact of the matter is that Celsius cannot carry its burden to show that its failure to file a timely claim was excusable. Moreover, Celsius admits that its claim (if allowed) would be a general unsecured claim against debtor Voyager Digital LLC, which currently has a claim pool of only $14 million.   Thus, Celsius's claim, if ultimately allowed, would represent approximately 35% of the claims in that class and significantly reduce recoveries to the extreme prejudice to the creditors of Voyager Digital LLC. At best, distributions to creditors in Class 4A will be delayed and/or minimized pending the resolution of the Celsius claim.

4.       Finally, even if Celsius could establish excusable neglect for its failure to file a timely claim (and it cannot), Celsius still cannot carry its burden to demonstrate cause to lift the automatic stay.   As explained at length herein, Celsius is not entitled to the extraordinary relief from the automatic stay that it seeks so that it may assert speculative, novel arguments against the Debtors in some other forum that will take an untold amount of time, energy, and resources to resolve.   This is particularly the case where it is primarily the Debtors' creditors who will be significantly prejudiced due to the late and reduced recoveries that they will receive if Celsius is permitted to effectively divert the Debtors' time and resources to defend against potentially futile claims by an entity that is alleging entitlement to such a large percentage of the unsecured creditors' claim pool.   Celsius's Motion should be denied in its entirety.

**Background**

5.      The Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on July 5, 2022.  The Debtors were the first major cryptocurrency exchange to file bankruptcy cases in the United States.  The Court set a bar date of October 3, 2022 for the filing of claims against the Debtors.  *See* Bar Date Order (ECF No. 218).

**I.      Celsius Files Chapter 11 Cases Shortly After the Debtors and Asserts Ownership Over Certain Assets on Celsius's Platforms, Including Assets of the Debtors.**

6.      Celsius and certain affiliated debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court on July 13, 2022.  At the time of Celsius's voluntary petitions, Celsius offered two different platforms through which customers could invest cryptocurrency and other funds with Celsius: an "Earn" platform, which Celsius claimed provided a return on any amounts placed thereon by customers, and a "Withhold" platform, which did not provide any return.  *See generally Debtors' Amended Motion for Entry of an Order (I) Establishing Ownership of Assets in the Debtors' Earn Program, (II) Permitting the Sale of Stablecoin in the Ordinary Course and (III) Granting Related Relief* (Celsius ECF No. 1325) (explaining Celsius's view of the two platforms).

7.      The Debtors were a customer of Celsius and held significant funds on Celsius's Earn and Withhold platforms.   The Debtors' placement of assets on Celsius's various cryptocurrency platforms, including the "Earn" platform, was governed by an Omnibus Wallet Services Agreement (the "Wallet Agreement") entered into as of June 12, 2020 between the Debtors and a Celsius affiliate.  *See* Wallet Agreement (attached as **Exhibit A** to the Whalen Decl.[3]).   The Debtors entered into an amended Wallet Agreement (the "Amended Wallet

---

[3]     "Whalen Decl." means the *Declaration of Michael C. Whalen in Support of Debtors' Objection to Motion of Celsius Network LLC for Order (I) Lifting the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy*

Agreement") on August 19, 2021 with certain Celsius affiliates, including the Celsius affiliate that was party to the Wallet Agreement.  *See* Amended Wallet Agreement (attached as **Exhibit B** to the Whalen Decl.).

8.      The amount of funds that the Debtors held on Celsius's platforms varied over time, and the Debtors actively managed any funds that they held on Celsius's platforms.

9.      As of the filing of Celsius's chapter 11 cases, Celsius took the position, contrary to the views of its customers, including the Debtors, that it held title to all assets placed on Celsius's "Earn" platform by customers.  Subsequently, Celsius has argued that any assets placed on its "Earn" platform by customers which were transferred off of that platform by customers in the ninety days prior to the commencement of Celsius's chapter 11 cases "are likely subject to preference claims by Celsius under section 547 of the Bankruptcy Code."  Motion ¶ 19.

10.      Celsius claims that the Debtors transferred $7,700,675.01 worth of cryptocurrency off of the "Earn" platform in the ninety days prior to the commencement of Celsius's chapter 11 cases.

## II.    **Celsius's Claim Would Fall into a Class of Claims that Currently Has $14 Million in Projected Claims.**

11.      On January 13, 2023, the Debtors Filed their *Second Amended Disclosure Statement Relating to the Third Amended Joint Plan Of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "Disclosure Statement") (ECF No. 863).  The Court approved the Disclosure Statement on the same day.  *See Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Adequacy of the Debtors' Disclosure Statement, (III) Approving (A)*

---

*Rule 4001 and (II) Granting Leave to File Late Proof of Claim Pursuant to Bankruptcy Rules 3003(c) and 9006(b)(1),* filed simultaneous herewith.

*Procedures for Solicitation, (B) Forms of Ballots and Notices, (C) Procedures for Tabulation Of*

*Votes and (D) Procedures for Objections* (ECF No. 861)

12.    Under the terms of the Debtors' proposed plan of reorganization, as explained in

the Disclosure Statement, Celsius's claim—if granted permission to file late—would fall into Class

4A OpCo General Unsecured Claims.   In its Motion, Celsius asserts that its claim would be

unsecured and that Voyager Digital, LLC is the entity against which Celsius would bring such

claim, as it was the counterparty to the Wallet Agreement, and thus the accountholder for purposes

of placing assets on Celsius's platforms.

13.    Voyager Digital, LLC is the "OpCo" entity for purposes of determining claims that

fall into Class 4A under the Debtors' proposed plan of reorganization, and so holders of general

unsecured claims against Voyager Digital, LLC are members of Class 4A.  *See* Disclosure

Statement at 56 (defining Voyager Digital, LLC as "OpCo").   The current projected amount of

allowed claims in Class 4A OpCo General Unsecured Claims is $14 million.  *See* Disclosure

Statement Order, Ex. 4 at 2 (ECF No. 861-1).  Based on the $14 million in claim amounts projected

for Class 4A, the Debtors project recoveries of between 35% and 50% based on projected outcomes

in the Debtors' chapter 11 cases.  *Id*.  Celsius's claim for approximately $7.7 million would likely

(i) fall into Class 4A, (ii) represent approximately 35% of the ***entire*** Class 4A claim pool, and (iii)

diminish customer recoveries accordingly.

## **Objection**

## III.    **Celsius Has Not Carried Its Burden of Demonstrating Excusable Neglect in Failing to Timely File a Claim by the Court's Bar Date.**

14.    The Federal Rules of Bankruptcy Procedure require bankruptcy courts to set a bar

date for filing claims against a debtor.  *See* Fed. R. Bankr. P. 3003(c)(3) ("The court shall fix and

for cause shown may extend the time within which proofs of claim or interest may be filed.").  "A

bar order serves the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate and the general amount of the claims, a necessary step in achieving the goal of a successful reorganization." *In re Hooker Invs., Inc.*, 937 F.2d 833, 840 (2d Cir. 1991).  The bar date set by the Court is critical in "provid[ing] a date certain after which a plan can be negotiated, formulated, and eventually confirmed." *In re Drexel Burnham Lambert Grp. Inc.*, 151 B.R. 674, 679 (Bankr. S.D.N.Y.).  "Thus, a bar order does not 'function merely as a procedural gauntlet,' but as an integral part of the reorganization process." *Hooker*, 937 F.2d at 840 (quoting *In re Kolstad*, 928 F.2d 171, 173 (5th Cir. 1991)).

15.     Federal Rule of Bankruptcy Procedure 9006(b)(1) provides a limited exception to creditors who miss the bar date "where the failure [of the creditor] to act was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1).  "A creditor seeking to extend the bar date bears the burden of proving 'excusable neglect.'" *In re Houbigant, Inc.*, 188 B.R. 347, 354 (Bankr. S.D.N.Y. 1995), *corrected* (Nov. 8, 1995) (quoting *In re R.H. Macy & Co., Inc.,* 161 B.R. 355, 360 (Bankr. S.D.N.Y.1993)).

16.     In evaluating whether a creditor has demonstrated "excusable neglect," Courts in this Circuit apply the so-called *Pioneer* test, and consider "the danger of prejudice to the [non-movant], the length of the delay and its potential impact upon judicial proceedings, the reason for the delay, including whether it was in the reasonable control of the movant, and whether the movant acted in good faith." *United States v. Hooper*, 9 F.3d 257, 259 (2d Cir. 1993) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)); *See In re Lyondell Chem. Co.*, 543 B.R. 400, 409 (Bankr. S.D.N.Y. 2016) ("Courts have consistently applied the *Pioneer* test in this Circuit." (collecting cases)).

17.     Critically, the *Pioneer* factors are not afforded equal weight.  The third factor—the reason for the creditor's delay—is "the predominant factor."  *Lyondell*, 543 B.R. at 409 (Bankr. S.D.N.Y. 2016) (quoting *In re Musicland Holding Corp.*, 356 B.R. 603, 607 (Bankr. S.D.N.Y. 2006)).  "Indeed, the other factors are relevant 'only in close cases.'"  *In re Victory Mem'l Hosp.*, 435 B.R. 1, 5 (Bankr. E.D.N.Y. 2010) (quoting *Williams v. KFC Nat'l Mgmt. Co.*, 391 F.3d 411, 416 (2d Cir. 2004)).  "Notwithstanding increased emphasis on the reason for delay, 'the slightest indication of bad faith, prejudice, or adverse impact on the administration of the case' is a reason to find the neglect inexcusable."  *Id.* at 409 n. 37 (quoting *In re Keene Corp.*, 188 B.R. 903, 908 (Bankr. S.D.N.Y. 1995)).

18.     Here, each of the four *Pioneer* factors weighs against granting Celsius relief from its failure to file a claim by the bar date.

### A.    Celsius Has Not Established and Cannot Establish a Valid Reason for Delay.

19.     Celsius does not offer a valid reason for its failure to timely file a claim.  In its Motion, Celsius provides two entirely baseless justifications for its delay:  (i) that it did not receive notice of the bar date, and (ii) that it was justifiably occupied with its own bankruptcy case such that it could not comply with the Court's bar date in the Debtors' cases.

20.     ***First,*** Celsius unquestionably received adequate notice of the bar date.   In bankruptcy law, there are two categories of creditors:  known and unknown creditors.  Debtors are only required to provide actual notice of the bar date to 'known' creditors.  *In re XO Commc'ns, Inc.*, 301 B.R. 782, 792 (Bankr. S.D.N.Y. 2003).  By contrast, constructive notice suffices if a creditor is 'unknown' to the debtor.  *Id.*  "An 'unknown' creditor is a claimant whose identity or claim is not 'reasonably ascertainable' or is merely 'conceivable, conjectural or speculative.'"  *Id.* at 793 (quoting *In re Thomson McKinnon Sec., Inc.,* 130 B.R. 717, 720 (Bankr. S.D.N.Y. 1991).

"[A] debtor is not obligated to try to find and serve notice on any individual who could potentially be a creditor." *In re BGI, Inc.*, 476 B.R. 812, 823 (Bankr. S.D.N.Y. 2012). For unknown creditors, notice by publication satisfies a debtor's bar date notice requirement. *Id*. at 820.

21.    In its Motion, Celsius assumes it is a "known" creditor entitled to actual notice of the bar date, which it argues it did not receive. However, in reality, Celsius is an ***unknown*** creditor and was not entitled to anything more than constructive notice of the bar date. As explained, Celsius's purported claim rests on a novel legal theory regarding the ownership of funds placed on Celsius's "Earn" platform by the Debtors and other Celsius customers. Celsius articulated this theory in its own bankruptcy proceedings ***after*** the Debtors filed their chapter 11 cases and their schedules and statements therein. Even at this point, Celsius' claim is nothing more than "conjectural" because it remains subject to adjudication between Celsius and its customers. *In re Chemtura Corp.*, No. 09-11233 (JLG), 2016 WL 11651714, at *12 (Bankr. S.D.N.Y. Nov. 23, 2016) ("An 'unknown' creditor is one whose interests are either conjectural or future[.]" (internal quotations and citations omitted)). Indeed, this is Celsius's very reason for wanting to file a claim in the Debtors' bankruptcy cases: to litigate its theory of ownership over certain assets that the Debtors had placed on Celsius's "Earn" platform. Put simply, there is no way that the Debtors could have foreseen that Celsius would come up with this novel argument and therefore consider itself a creditor here. Celsius is clearly an unknown creditor.

22.    The Debtors published notice of the bar date in the New York Times on August 10, 2022, and the Financial Times on August 11, 2022. *See Proof of Publication in the New York Times* (ECF No. 272) & *Proof of Publication in the Financial Times* (ECF No. 271). As an unknown creditor, Celsius, was on notice of the deadline through Voyager's publication in these

nationally renowned papers.[4]  Celsius's arguments that it did not receive the actual notice of the bar date are irrelevant because it was not entitled to such notice.

23.     Further, Celsius received actual notice of the bar date even though it was not technically entitled to it.  The Debtors sent Celsius notice of the bar date to an address provided by Celsius in both the Wallet Agreement and the Amended Wallet Agreement.  In its Motion, Celsius argues that that address is "an out of date address for a space that Celsius UK no longer occupies."  Ferraro Decl. ¶ 7 (ECF No. 729).  But there was no other logical place for the Debtors to send a notice related to that agreement, and that address was the only address that the Debtors were legally required to notice.  *See In re Best Prod. Co., Inc.*, 140 B.R. 353, 358 (Bankr. S.D.N.Y. 1992) ("Whereas a debtor must review its own books and records to ascertain the identity of creditors, a debtor is not required to search elsewhere for those who might have been injured.").

24.     ***Second,*** Celsius's argument that it can still demonstrate a valid reason for its delay even if it received adequate notice also fails.  As a matter of law, Celsius's contemporaneous preoccupation with its own bankruptcy filing is not a compelling reason for delay.  *See Ragguette v. Premier Wines & Spirits*, 691 F.3d 315, 330 (3d Cir. 2012) ("It is well established that a busy caseload generally does not constitute a basis for a finding of excusable neglect.").  It is also belied by the facts here.  In its own bankruptcy case, Celsius filed three motions to extend the deadline

---

[4]  In addition, the Debtors' bankruptcy filing was widely reported.  *See, e.g.*, Crypto Broker Voyager Digital Files for Bankruptcy Protection, Wall St. J. (July 6, 2022, 7:18 PM), https://www.wsj.com/articles/crypto-broker-voyager-digital-files-for-bankruptcy-protection-11657098630; Crypto Broker Voyager Digital Files For Chapter 11 Bankruptcy, Forbes (July 6, 2022, 1:12 AM), https://www.forbes.com/sites/ninabambysheva/2022/07/06/crypto-broker-voyager-digital-files-for-chapter-11-bankruptcy/?sh=53a068d13845; Crypto brokerage Voyager Digital files for Chapter 11 bankruptcy protection, CNBC (July 6, 2022, 4:43 AM), https://www.cnbc.com/2022/07/06/crypto-firm-voyager-digital-files-for-chapter-11-bankruptcy-protection.html.

to file its schedules and statements, the first of which was filed on July 14, 2022,[5] and the last of

which was filed on September 16, 2022.[6]   While the Court apparently never ruled on that motion,[7]

Celsius ultimately filed its schedules and statements in its own bankruptcy case on October 5,

2022, a mere two days after the Debtors' bar date.   Thus, the record reflects that Celsius was

working on compiling its schedules and statements for at least more than two months prior to the

Debtors' bar date.   Celsius would necessarily have identified Voyager as a potential creditor well

in advance of the Debtors' bar date.   Interestingly, while Celsius argues that its focus on its own

bankruptcy caused it to miss the bar date in the Debtors' proceedings, it is actually Celsius's very

preparation of schedules and statements in its own bankruptcy that should have highlighted its

potential claim against Voyager and put it on notice that it should file a claim in the Debtors'

proceedings.  This argument also fails.

25.    Finally, Celsius's argument that preference claims are generally identified by

debtors later in chapter 11 cases does not justify Celsius's delay here.  The Debtors' chapter 11

cases are the first US-based bankruptcy proceedings for a cryptocurrency brokerage, a relatively

nascent industry that includes Celsius.  It is implausible that Celsius was not actively aware of the

Debtors' bankruptcy, and Celsius makes no such assertion.  Further, Celsius and the Debtors had

been in business together since at least June of 2020.  *See* Wallet Agr't (**Ex. A**).  Celsius would

necessarily have known that the Debtors—either presently or historically—had placed significant

---

[5] *See Motion Seeking Entry of an Order (I) Extending Time to File Schedules of Assets and Liabilities, Schedules of Current Income and Expenditures, Schedules of Executory Contracts and Unexpired Leases, and Statements of Financial Affairs, (II) Extending Time to File Rule 2015.3 Financial Reports and (III) Granting Related Relief* (Celsius ECF No. 8).

[6] *See Motion Seeking Entry of an Order Granting a Third Extension of Time to File Schedules and Statements of Financial Affairs* (Celsius ECF No. 833).

[7] *See Notice of Withdrawal of Debtors' Motion Seeking Entry of an Order Granting a Third Extension of Time to File Schedules And Statements of Financial Affairs* (Celsius ECF No. 1064).

cryptocurrency deposits onto Celsius's platform. Thus, upon learning of the Debtors' bankruptcy, which made national and international news, Celsius should reasonably have known that it might have claims to assert in the Debtors' chapter 11 proceedings, whether preference-based or otherwise. In fact, Celsius first raised questions regarding the ownership of assets on its platforms "[o]n the first day of [Celsius's] chapter 11 cases," ***months before the Debtors' bar date***. *See Debtors' Amended Motion for Entry of an Order (I) Establishing Ownership of Assets in the Debtors' Earn Program, (II) Permitting the Sale of Stablecoin in the Ordinary Course and (III) Granting Related Relief* at 2 (Celsius ECF No. 1325). Thus it is implausible that Celsius would not have been aware that the Debtors' bankruptcy likely had significant ramifications for Celsius's own accounts and its position regarding funds on the "Earn" platform, and its failure to timely assert a claim, whether a preference claim or otherwise, is anything but excusable.

26. Celsius does not establish a valid reason for its delay, and the Court should deny the Motion on this basis alone. *See Victory Mem'l Hosp.*, 435 B.R. at 5 (other factors irrelevant where movant has inadequate reason for delay). Celsius received adequate notice of the bar date as an unknown creditor, received actual notice of the bar date even though it was not entitled to the same, and cannot establish excusable neglect based solely on its occupation with its own bankruptcy case, which would have led to the discovery of its claim against the Debtors not distracted it from the same. Even if Celsius did have a valid reason for its delay (it does not), the remaining *Pioneer* factors also counsel in favor of denying Celsius's motion to file a late claim.

**B.    The Debtors and Their Creditors Will Be Prejudiced by Celsius's Late Claim.**

27. The Debtors and their constituents, namely the unsecured creditors, will be significantly prejudiced by Celsius's late claim. Celsius minimizes the likely impact of its late claim by focusing solely on the potential ramifications of the relief it seeks vis-a-vis other

preference claims filed by creditors of the Debtors who are themselves reorganizing. The ramifications of Celsius's late claim would strike far further, however. If Celsius is allowed to file a late claim based only on its having been too occupied with its own bankruptcy to have noticed the bar date in this case, any other unknown creditor (and there could be many, hence why they are "unknown") could come forward seek to file a late claim on the same or a similar basis. This would undermine the very logic behind the bar date and threaten to upend the Debtors' chapter 11 cases.

28.     For the same reason, Celsius's argument regarding the limited extension of the Debtors' bar date is unavailing. That extension was for known creditors placed on the Debtors' amended schedules and statements, not unknown creditors—like Celsius—with speculative claims that are altogether unknown to the Debtors. *See In re Keene Corp.*, 188 B.R. 903, 913 (Bankr. S.D.N.Y. 1995) ("[A]llowing Fibreboard's claim could adversely affect the administration of the case by possibly opening the floodgates to many similar claims.").

29.     Moreover, the only stated basis for Celsius's claim is a novel legal issue that will require lengthy and time-consuming litigation at the expense of the resources of the Debtors' estates. Allowing Celsius to file a late claim to permit it to potentially pursue untested claims would significantly prejudice Debtors and their constituencies.

30.     Finally, the size of Celsius's claim—$7.7 million—is material and risks appreciably decreasing the recovery for unsecured creditors. *See Black v. Diamond*, 163 Fed. App'x 58, 60-61 (2d Cir. 2006) (holding that the impact on other constituents by allowing an untimely claim to collect from a "discrete fund" is a relevant consideration under *Pioneer*). This is particularly so where Celsius's claim will almost certainly fall into Class 4A OpCo General Unsecured Claims, which has a limited claim pool of $14 million. Allowing Celsius to file its late

claim would expand the current Class 4A claim pool by more than 50%, with Celsius's claim ultimately representing approximately 35% of the entire class of claims.  Celsius's attempt to deflect the size of its potential claim by reference to the Debtors' entire claim pool is misleading.  *See In re Tronox Inc.*, 626 B.R. 688, 725 (Bankr. S.D.N.Y. 2021) (holding that if the late claims "would have a large impact on the recoveries of other creditors, then permitting the late-filed claims would be a form of prejudice that weighs against a finding of excusable neglect." (internal quotations and citations omitted)).  Celsius's proposed claim is significant and prejudicial when appropriately viewed in terms of the relative size of claims in Class 4A.[8]

31.    All of these factors prejudice the Debtors and their restructuring constituencies and require enforcement of the bar date.

C.    **The Late Claim Will Have a Significant Impact on the Administration of the Debtors' Estates in the Form of Significant Administrative Costs.**

32.    Allowing Celsius to file its claim late will adversely impact the progression of the Debtors chapter 11 cases.  As explained above (*supra* ¶ 21), Celsius's claim is entirely speculative and based solely on novel legal arguments.  As a result, allowing Celsius to file a late claim is not simply a matter of permitting access to the Debtors' claim pool.  Celsius's claim and the novel underlying legal issues will require significant litigation from all Celsius customers, including the Debtors, that had assets on Celsius's "Earn" platform and withdrew those assets during Celsius's preference period.

33.    Litigation over the ownership of assets placed on Celsius's platforms will necessarily, and negatively impact creditor distributions.  At the moment, the Court has set March

---

[8] Celsius has also indicated that its purported claim of $7.7 million claim may be not be all that it is seeking.  "Other withdrawals and transfers [by the Debtors] may also be subject to challenge." Celsius Mot. ¶ 19.

2, 2023 as the date of the Debtors' confirmation hearing.  *See* Disclosure Statement Order at 10 (ECF No. 861).  Were this Court to grant Celsius relief from the automatic stay, it is unlikely that such litigation could even commence before the Debtors' confirmation hearing, with any resolution as to the ownership issues suspended in the distant future.  This means that the Debtors would need to set aside a reserve for amounts potentially due to Celsius following the resolution of litigation between Celsius and the Debtors at some point in the future.  **Such a reserve would delay millions of dollars in distributions to the Debtors' creditors by months or even years.**

34.     Celsius points only to the fact that the Debtors do not yet have a confirmed plan to support its argument that Celsius's late claim will not adversely impact the Debtors' bankruptcy cases.  In so doing, Celsius incorrectly cites *In re Keene*, wherein the Court held that the fact that the debtor's plan had not yet been confirmed was insufficient to overcome the fact that the movant failed to establish excusable neglect.  *See Keene*, 188 B.R. at 913 (holding that lack of confirmed plan does not overcome lack of excusable neglect).  Likewise, here, the lack of a confirmed plan does nothing to mitigate the prejudice and impact to the Debtors' chapter 11 cases that would result from allowing Celsius to file a speculative, late claim.

### D.     Celsius Fails to Establish Its Good Faith in Missing the Bar Date

35.     While the Debtors do not contend that Celsius acted in bad faith, it is Celsius's affirmative duty to establish its good faith.  Because Celsius still needs to provide an adequate explanation for its delay, Celsius fails to establish its good faith.  And, to be clear, even if Celsius could establish good faith in missing the bar date, that would not be enough to overcome its inability to demonstrate excusable neglect, or otherwise carry its burden to file a late claim.  *See In re Lehman Bros.*, 433 B.R. at 121 (holding that although there was no evidence of movants' having acted in bad faith, movants' good faith was insufficient to overcome their inability to demonstrate excusable neglect). As a result, this factor does not favor relief from the bar date. *In re BGI, Inc.*,

476 B.R. 812, 826 (Bankr. S.D.N.Y. 2012) (good faith factor does not support finding of excusable

neglect where movant fails to carry burden to show good faith).

**IV.     Celsius Does Not Carry Its Burden to Show the Stay Should Be Lifted, and the *Sonnax* Factors Favor Continuing the Stay.**

36.    The Court need not, and should not, entertain Celsius's request to lift the stay

because Celsius has failed to establish excusable neglect for missing the bar date.  Absent a timely

claim against the Debtors, Celsius has nothing to litigate and there is no justification for granting

relief from the automatic stay.

37.    But even if this Court somehow determined that Celsius met the excusable neglect

standard (it should not), the Court should still deny Celsius's request to lift the automatic stay to

pursue its novel arguments against the Debtors.  In order to obtain relief from the automatic stay,

Celsius bears the burden of demonstrating "cause" for such relief under Section 362(d)(1) of the

Bankruptcy Code.  *See In re Residential Cap., LLC*, 501 B.R. 624, 643 (Bankr. S.D.N.Y. 2013).

In assessing a request for relief from the automatic stay, courts analyze the following factors from

*In re Sonnax Indus., Inc.* (the "*Sonnax* Factors"):

> (1) whether relief would result in a partial or complete resolution of
> the issues,
>
> (2) the lack of any connection with or interference with the
> bankruptcy case,
>
> (3) whether the other proceeding involves the debtor as a fiduciary,
>
> (4) whether a specialized tribunal with the necessary expertise has
> been established to hear the cause of action,
>
> (5) whether the debtor's insurer has assumed full responsibility for
> defending the action,
>
> (6) whether the action primarily involves third parties,
>
> (7) whether litigation in another forum would prejudice the interests
> of other creditors,

(8) whether the judgment claim arising from the other action is subject to equitable subordination,

(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor,

(10) the interests of judicial economy and the expeditious and economical resolution of litigation,

(11) whether the parties are ready for trial in the other proceeding and

(12) the impact of the stay on the parties and the balance of harms.

907 F.2d 1280, 1286 (2d Cir. 1990). "Not all of the *Sonnax* Factors are relevant in every case, and 'cause' is a broad and flexible concept that must be determined on a case-by-case basis." *In re Residential Cap., LLC*, 501 B.R. 624, 643 (Bankr. S.D.N.Y. 2013).

38.    In total, seven *Sonnax* Factors are relevant here,[9] and all weigh in favor of maintaining the stay.

39.    *Balance of the harms*.  There would be significant harm to the Debtors' estates and creditors in the form of significant legal fees and procedural delay if the stay is lifted and Celsius's entirely speculative preference action is allowed to proceed.  *See, e.g.*, *In re Motors Liquidation Co.*, 2010 WL 4630327, at *4, *7 (S.D.N.Y. Nov. 8, 2010) (affirming denial of lift-stay motion and noting that "allowing Appellant to proceed with the ERISA suit would force MLC to expend estate resources to defend that action" and "increased costs associated with litigation in a separate forum would prejudice the Reorganized Debtors").  Any amount that Celsius could potentially recover—to the extent that the same quantifies the harm Celsius might experience by denial of its motion—is likely far less than the amount of its claim.  This is because as an unsecured creditor,

---

[9] Celsius has selectively addressed a limited number of *Sonnax* Factors, and tellingly ignores many that are relevant here.  Celsius also improperly analyzes the few *Sonnax* Factors it does address, all of which support denying Celsius's request to lift the stay.  The other relevant *Sonnax* Factors that go unaddressed by Celsius further support denying the Motion.

Celsius is likely to recover only a fraction of its claim, and an amount that may be subsumed by Celsius's own litigation expense in pursuing its theory regarding assets on the "Earn" platform. Conversely, the Debtors would be significantly harmed by the litigation costs they would incur in defending the action, with the potential that such expenditures exceed any dollar recovery Celsius receives, should Celsius succeed. *See In re General Oil Distributors, Inc.*, 33 B.R. 717 (Bankr. E.D.N.Y. 1983) (denying motion to lift stay where, among other things, "the potential harm to the debtor of greater legal fees and other expenses defending [the action] is a strong countervailing factor").

40.     The Court cannot dissociate its analysis of the relative harm to the Debtors from Celsius's concurrent request to extend the bar date. As it stands now, Celsius has *no* litigation claim to commence unless it also is allowed to file a late claim against the Debtors in these chapter 11 cases, which alone would disturb the Debtors' and creditors' reliance on the finality of the bar date, in addition to forcing the Debtors to expend resources litigating the claim. The harm to the Debtors is not thus limited to legal fees expended in defense of Celsius's purported preference claim and supporting legal theories but also those fees and resources expended in addressing Celsius's claim, dealing with an altered claim pool, and potentially defending additional requests to file late claims.

41.     *Prejudice to creditors of another forum.* Lifting the stay and allowing the action to proceed in another forum would diminish resources that would otherwise go to other creditors. *See In re Residential Cap., LLC*, 501 B.R. 624, 644 (Bankr. S.D.N.Y. 2013) (holding that allowing litigation to proceed in a different forum would prejudice the interest of other creditors because, among other things, "[a]ny litigation costs would diminish the bankruptcy estate"). The Debtors' attorneys and the attorneys for other constituents would have to file appearances in another forum

18

and potentially research applicable procedural and substantive law governing any proceeding between the Debtors and Celsius outside of these cases.

42.    Celsius attempts to gloss over this concern by repeating the refrain that issues relating to the Debtors' assets on the Celsius platforms will be resolved in Celsius's bankruptcy case before another judge of this Court.  *See* Mot. ¶ 31.  This is misleading, however, because the Wallet Agreement and Amended Wallet Agreement between the Debtors and Celsius contain a mandatory arbitration clause that requires arbitration of "[a]ny civil action or legal proceeding arising out of or relating to" those agreements.  *See* Amended Wallet Agreement § 4 (Ex. B) (requiring arbitration under New York law and the rules of the American Arbitration Association).  As a result, Celsius's assertion that the Debtors' assets on the "Earn" platform are assets of Celsius's estate must be litigated in arbitration prior to the resolution of Celsius's preference claim.  *Id.*; *see also Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995) (explaining that arbitration clauses must be broadly construed in light of federal policy).

43.    *Judicial economy.*  Judicial economy is not served here, where the Debtors and Celsius face a circuitous procedural path to resolve the many overlapping issues between them.  First, Celsius and the Debtors would need to participate in a private arbitration over the ownership of the Debtors' digital assets on Celsius's platform.  Once complete, a judge of this Court would need to invest time to understand the arbitrated claims to determine whether Celsius can meet all of the elements of a preference under Section 547 of the Bankruptcy Code and whether the Debtors possess defenses under that section.  From there, potentially yet another judge of this Court would need to adjudicate any objections to the claim the Debtors filed in Celsius's bankruptcy cases and the impact of all prior rulings on that claim.  This is the opposite of economical and would

significantly tax judicial resources.  *See In re Lehman Bros. Holdings Inc.*, 594 B.R. 33, 53 (Bankr. S.D.N.Y. 2018) (holding that judicial economy is not served by litigation across multiple forums).

44.     *Readiness for trial*.  This factor weighs against lifting the stay first and foremost because Celsius needed to, but did not, timely file a claim.  Courts have denied lifting the automatic stay for litigation that was significantly further along than Celsius's unfiled claim here, including where actions had already been briefed and pending before the stay came into effect.  *See, e.g.*, *Motors Liquidation*, 2010 WL 4630327, at *4 ("the dispositive motions filed in the ERISA suit were pending for over a year before the automatic stay came into effect."); *In re SquareTwo Fin. Servs. Corp.*, 2017 WL 4012818, at *2 (Bankr. S.D.N.Y. Sept. 11, 2017) (appeal pending when debtors filed for bankruptcy).  Here, Celsius admits that any litigation relating to the ownership of the Debtors' assets on Celsius's "Earn" platform has not been initiated; in fact, its claim leaves open the possibility that it would seek to pursue additional amounts that have not been identified to date.  *See* Mot. ¶ 19 ("Other withdrawals and transfers [by the Debtors] may also be subject to challenge.").  Put simply, both parties would be starting from scratch in any litigation that Celsius were to bring.

45.     *Lack of connection with or interference with Voyager's bankruptcy cases*.  Here, there is a clear connection to and interference with the Debtors' chapter 11 cases should the stay be lifted.  The Debtors would need to divert time and resources from the chapter 11 cases to engage in a wholly new proceeding in arbitration and potentially further litigate Celsius's preference claim in yet another forum.  The substance of Celsius's claim also relates directly to the Debtors' assets and, if Celsius prevails, would diminish the pool of assets from which creditors may recover—clearly impacting the Debtors' cases.  *Cf. In re Robles*, No. 22-10828 (MG), 2022 WL 3384638, at *5 (Bankr. S.D.N.Y. Aug. 16, 2022) (no interference with bankruptcy case where debtor had no

interest in property at issue in litigation).  At the very least, the Debtors would have to hold aside a large reserve pending the outcome of some future litigation between the parties, thereby significantly reducing distributions to other creditors.

46.    *Involvement of third parties*.  This factor does not support lifting the stay.  This factor does not favor lifting the stay the debtor has a direct interest in the underlying dispute, and only favors stay relief where the debtor simply possesses "goods or proceeds" related to the dispute without a substantive interest therein.  *Musso v. Hirsch*, 2011 WL 4543225, at *12 (E.D.N.Y. Sept. 29, 2011) (internal quotations omitted).  Here, the action is against the Debtors and directly impacts the Debtors' chapter 11 cases and recoveries to other creditors, as explained previously.

47.    *Debtor as fiduciary*.  This factor weighs against lifting the stay.  Voyager was a customer of Celsius and did not owe them a fiduciary duty.  *Cf. In re Robles*, 2022 WL 3384638, at *5 (factor favors lifting stay where debtor is a fiduciary).

48.    In total, seven *Sonnax* Factors weigh against lifting the stay, and none justify the relief Celsius seeks.  Celsius's request for relief from the automatic stay should be denied.

## Conclusion

49.    For the reasons set forth herein, the Debtors respectfully request that the Court enter an order denying the Motion.

*[Remainder of page intentionally left blank.]*

**PAUL HASTINGS LLP**

Dated: January 17, 2023
      New York, New York

/s/ Jonathan D. Canfield
_____
Jonathan D. Canfield
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
Email: joncanfield@paulhastings.com

-and-

Matthew M. Murphy (*pro hac vice* admission pending)
Michael C. Whalen (*pro hac vice* admission pending)
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone:  (312) 499-6000
Email: mattmurphy@paulhastings.com
         michaelcwhalen@paulhastings.com

*Proposed Special Regulatory and Conflicts Counsel*