AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000
Mitchell P. Hurley
Dean L. Chapman Jr.
mhurley@akingump.com
dchapman@akingump.com

*Attorneys for Celsius Network LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X
:
In re:                                             :          Chapter 11
:
VOYAGER DIGITAL HOLDINGS, INC., *et al.*,          :          Case No. 22-10943 (MEW)
:
:          Jointly Administered
Debtors.              :
:
-----------------------------------------------------------------X

**OMNIBUS REPLY OF CELSIUS NETWORK LIMITED IN SUPPORT OF ITS MOTION**
**FOR ORDER (I) LIFTING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. 362(d)(1)**
**AND BANKRUPTCY RULE 4001 AND (II) GRANTING LEAVE TO FILE LATE PROOF**
**OF CLAIM PURSUANT TO BANKRUPTCY RULES 3003(c) AND 9006(b)(1)**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................................1

REPLY ..........................................................................................................................................4

    I.     Celsius Is Entitled to File a Late Proof of Claim ........................................................4

        A.    Relief Is Appropriate Because Voyager Failed to Provide Celsius
            with Actual Notice of the Bar Date in Violation of its Due Process
            Rights .............................................................................................................4

            (i)     Voyager Did Not Provide Actual Notice of the Bar Date to
                   Celsius. ...........................................................................................5

            (ii)    Celsius Is Not an "Unknown" Creditor. ..........................................6

        B.    Additionally, Relief Is Appropriate Because Celsius' Delay Was
            the Result of Excusable Neglect ...................................................................9

            (i)     Celsius' Delay Was Reasonable and Outside of its
                   Reasonable Control ........................................................................10

                  a.     Celsius' Lack of Knowledge Regarding the Bar
                        Date Constitutes a Valid Reason for Delay. .......................10

                  b.     Celsius' Immersion in its Own Bankruptcy
                        Constitutes a Valid Reason for Delay ................................12

                    c.     Celsius Did Not Learn of its Claim or the Bar Date
                        Until After the Bar Date, which was Reasonable
                        Under the Circumstances ...................................................14

            (ii)    The Other Pioneer Factors Weigh in Celsius' Favor......................17

                  a.     Lack of Prejudice to the Debtors Weighs in Celsius'
                        Favor .................................................................................17

                    b.     Celsius Acted in Good Faith to Minimize any Delay ........20

    II.    The Court Should Modify the Automatic Stay to Permit Ligation of the
        Preference Claim in the Celsius Bankruptcy in the Interest of Judicial
        Economy .................................................................................................................21

         A.    *Sonnax* Factor 10:  Judicial Economy Favors Celsius ...............................22

        B.    *Sonnax* Factor 12:  The Balance of Harms Favors Celsius........................24

        C.    *Sonnax* Factor 7:  Litigation in the Celsius Bankruptcy Would Not
            Prejudice Voyager's Other Creditors ..........................................................26

         D.    The Remaining *Sonnax* Factors Are Either Irrelevant, Neutral, or
            of Nominal Value ........................................................................................27

CONCLUSION.............................................................................................................................29

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                    **Page(s)**

*In re Beltrami Enters., Inc.*,
   178 B.R. 389 (Bankr. M.D. Pa. 1994) ....................................................................19

*In re Best Prod. Co., Inc.*,
   140 B.R. 353 (Bankr. S.D.N.Y. 1992) ..............................................................5, 11

*In re Bethlehem Steel Corp. v. Moran Towing Corp. (In re Bethlehem Steel
   Corp.)*,
   390 B.R. 784 (Bankr. S.D.N.Y. 2008) .............................................................23, 24

*In re Celsius Network LLC*,
   642 B.R. 497 (Bankr. S.D.N.Y. 2022) ..................................................................21

*In re Charter Co.*,
   113 B.R. 725 (M.D. Fl. 1990) ..............................................................................16

*Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*,
   58 F.3d 16 (2d Cir. 1995) .....................................................................................23

*Curtis, Collins & Holbrook Co. v. United States*,
   262 U.S. 215 (1923) .............................................................................................14

*In re Drexel Burnham Lambert Grp. Inc.*, 151 B.R. 674 (Bankr. S.D.N.Y. 1993),
   *aff'd*, 157 B.R. 532 (S.D.N.Y. 1993) ...........................................................6, 7, 8, 9

*In re Eagle-Picher Indus., Inc.*,
   158 B.R. 713 (Bankr. S.D. Ohio 1993) ................................................................13

*In re Energy Future Holdings Corp.*,
   619 B.R. 99 (Bankr. D. Del. 2020) ......................................................................16

*In re Enron Corp.*,
   419 F.3d 115 (2d Cir. 2005) .................................................................................19

*In re Frontier Comms. Corp.*,
   641 B.R. 64 (Bankr. S.D.N.Y. 2022) ...................................................................13

*In re Herman's Sporting Goods, Inc.*,
   166 B.R. 581 (Bankr. D.N.J. 1994) .....................................................................17

*In re J.A. Jones, Inc.*,
   492 F.3d 242 (4th Cir. 2007) ..............................................................................6, 8

*In re JCK Legacy Co.*,
   No. 20-10418 (MEW), 2022 WL 628320 (Bankr. S.D.N.Y. Mar. 3, 2022).........................4, 5

*Jones v. Chemetron Corp.*,
    212 F.3d 199 (3d Cir. 2000)....................................................................16

*In re Keene Corp.*,
    188 B.R. 903 (Bankr. S.D.N.Y. 1995) ...................................................17

*In re Lyondell Chem. Co.*,
    402 B.R. 596 (Bankr. S.D.N.Y. 2009) ...................................................22

*Maldonado v. Ramirez*,
    757 F.2d 48 (3d Cir. 1985).....................................................................15

*Marah Wood Prods., LLC v. Jones*,
    534 B.R. 465 (D. Conn. 2015).................................................................24

*In re Massa*,
    187 F.3d 292 (2d Cir. 1999)......................................................................4

*In re Medaglia*,
    52 F.3d 451 (2d Cir. 1995)......................................................................11

*In re Motors Liquidation Co.*,
    598 B.R. 744 (S.D.N.Y. 2019)................................................................16

*In re Motors Liquidation Co.*,
    599 B.R. 706 (S.D.N.Y. 2019)..........................................................13, 16

*New York v. N.Y., N.H. & H.R. Co.*,
    344 U.S. 293 (1953).................................................................................4

*In re Peninsular Oil Corp.*,
    399 B.R. 532 (Bankr. M.D. Fl. 2008) ....................................................13

*In re Perle*,
    725 F.3d 1023 (9th Cir. 2013) ................................................................14

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
    507 U.S. 380 (1993).......................................................................2, 9, 10

*In re Project Orange Assocs., LLC*,
    432 B.R. 89 (Bankr. S.D.N.Y. 2010)................................................21, 28

*In re Queen Elizabeth Realty Corp.*,
    No. 13-12335 (SMB), 2017 WL 1102865 (Bankr. S.D.N.Y. Mar. 24, 2017),
    *aff'd*, 586 B.R. 95 (S.D.N.Y. 2018) ................................................. *passim*

*Ragguette v. Premier Wines and Spirits*,
    691 F.3d 315 (3d Cir. 2012)....................................................................13

*In re Rochester Drug Coop., Inc.*,
   620 B.R. 699 (Bankr. W.D.N.Y. 2020) ...............................................................................26

*In re Roman Cath. Diocese of Syracuse, New York*,
   638 B.R. 33 (Bankr. N.D.N.Y. 2022) ..................................................................................19

*In re Sonnax Industries*,
   907 F.2d 1280 (2d Cir. 1990)....................................................................................... *passim*

*In re Tronox Inc.*,
   626 B.R. 688 (Bankr. S.D.N.Y. 2021) .................................................................................12

*In re Try The World, Inc.*,
   20-01013-JLG, 2021 WL 3502607 (Bankr. S.D.N.Y. Aug. 9, 2021)...............................23, 24

*In re U.S.H. Corp. of N.Y.*,
   223 B.R. 654 (Bankr. S.D.N.Y. 1998) ...................................................................................9

*In re Worldcom, Inc.*,
   325 B.R. 511 (Bankr. S.D.N.Y. 2005) ...................................................................................8

*In re XO Commc'ns*,
   301 B.R. 782 (Bankr. S.D.N.Y. 2003), *aff'd*, No. 04 CIV. 01489LAK, 2004
   WL 2414815 (S.D.N.Y. June 14, 2004) .........................................................................8, 9, 16

**Statutes**

11 U.S.C. § 341.........................................................................................................................11

11 U.S.C. § 362.........................................................................................................................21

28 U.S.C. § 157.........................................................................................................................24

11 U.S.C. § 541.........................................................................................................................25

11 U.S.C. § 547.........................................................................................................................25

**Other Authorities**

Fed. R. Bankr. P. 2002(a)(7).....................................................................................................6

Fed. R. Bankr. P. 9006(b)(1).....................................................................................................9

Celsius Network Limited ("Celsius") respectfully submits this omnibus reply (the "Reply") in support of its *Motion for Order (I) Lifting the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001 and (II) Granting Leave to File Late Proof of Claim Pursuant to Bankruptcy Rules 3003(c) and 9006(b)(1)* [ECF Nos. 727, 789] ("Motion"),[1] and in response to the objections thereto ("Objections") filed by the above-captioned debtors and debtors in possession (the "Debtors" or "Voyager")[2] and Voyager's Official Committee of Unsecured Creditors (the "Committee," and together with Voyager, the "Objectors").[3] Celsius respectfully submits as follows:[4]

## PRELIMINARY STATEMENT

1.    Celsius respectfully submits that it should be granted leave to file a proof of claim in these cases, and that any such proof of claim should be deemed timely filed.  First, Voyager did not provide the notice required to Celsius of Voyager's October 3, 2022 bar date.  Celsius' claim was "reasonably ascertainable" by Voyager, and thus Celsius was a known creditor entitled to actual notice of the bar date.  Indeed, Voyager admitted as much by (i) listing its contract with Celsius on its schedule of executory contracts and (ii) attempting to serve Celsius with notice of the bar date.  But as Celsius has demonstrated—and the Objectors do not dispute—the actual notice

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

[2] *Debtors' Objection to Motion of Celsius Network LLC for Order (I) Lifting the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001 and (II) Granting Leave to File Late Proof of Claim Pursuant to Bankruptcy Rules 3003(c) and 9006(b)(1)* [ECF No. 867] ("Voyager Objection").

[3] *Objection of the Official Committee of Unsecured Creditors to Motion of Celsius Network LLC for Order (I) Lifting the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001 and (II) Granting Leave to File Late Proof of Claim Pursuant to Bankruptcy Rules 3003(c) and 9006(b)(1)* [ECF No. 866] ("Committee Objection").

[4] Celsius acknowledges that this omnibus reply brief exceeds the 15-page limit set forth in paragraph 17 of the *Notice, Case Management and Administrative Procedures Order* [ECF No. 240].  Celsius respectfully submits that because this reply brief responds, on an expedited basis, to two separate Objections that are a combined 49 pages (well in excess of the 35-page objection limit), its length is appropriate.  Celsius regrets being unable to seek leave of the Court to permit the filing of a brief in excess of 15 pages in advance of filing, but had only three business days and a weekend to prepare the papers.

was addressed to Celsius UK at an address in the United Kingdom that Celsius UK no longer occupied. Moreover, service on Celsius UK would have been inadequate even if it had been sent to a valid address, because Celsius' U.K. entity had assigned the underlying agreement to Celsius' U.S. entity more than a year earlier in a written agreement to which Voyager was a party. The notice was also flawed because it was put in the mail in the United States to be sent across the Atlantic Ocean a mere ten days before the bar date. And while Objectors argue that Celsius should have been aware that Voyager was in bankruptcy, the law is crystal clear that mere knowledge of a Chapter 11 bankruptcy ***filing*** does not constitute knowledge of a ***bar date***. Thus, Voyager clearly failed to provide the requisite notice of its bar date, and the Court should grant Celsius relief on that ground alone.

2.      Second, even assuming *arguendo* that Voyager's notice to Celsius was satisfactory, Celsius' inability to file by the bar date was the product of excusable neglect. The Supreme Court recognizes that a "flexible understanding of 'excusable neglect' accords with" the Bankruptcy Code's "aim" of "avoiding forfeitures by creditors." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 389 (1993). Celsius has shown the requisite "excusable neglect" to permit its late-filed proof of claim under *Pioneer*'s four-factor test.

3.      Critically, Celsius has established valid reasons for delay—the predominant *Pioneer* factor. As discussed above, Celsius was not aware of the bar date until after it had passed. Furthermore, it is undisputed that Celsius did not discover its potential claim until November 2022 (approximately a month after the bar date passed), and promptly took action to pursue it. Celsius' failure to discover the claim until November was justifiable, including because Celsius had been fully consumed with its own multi-billion-dollar bankruptcy filing during the period between its bankruptcy filing and the passage of the Voyager bar date. It is an unfortunate coincidence that

the relevant period for Voyager's unsecured creditors to identify and file claims overlapped substantially with the time that Celsius was unexpectedly confronted with a sudden bankruptcy filing and the need to prepare an extensive analysis of its books and records. The Objectors essentially argue that Celsius—to the detriment of Celsius' estate and stakeholders—should have halted its three-month effort preparing its over **30,000 pages** of Schedules and Statements, including **three million rows of data** reflecting transfers in the 90 days prior to filing, to identify and assert an unknown preference claim before an unknown bar date. Discovering and filing a claim in advance of an unknown bar date was simply not practical under the circumstances.

4.    The remaining *Pioneer* factors similarly weigh in Celsius' favor. Regarding prejudice to Voyager and its estate, there is none. The Objectors cannot point to any non-hypothetical flood of late-filed claims, and the Debtors misrepresent (unintentionally, we assume) the treatment of creditors under their own plan to state that Celsius' $7.7 million preference claim would dilute the $14 million Class 4A creditor pool. In reality, and as stated in Voyager's recently filed Second Amended Disclosure Statement, "Class 3 Account Holder Claims and Class 4A OpCo General Unsecured Claims are treated the same under the Plan,"[5] and Celsius' claim scarcely makes a ripple in the $1.8B unsecured claim pool. Celsius further acted with good faith and without unreasonable delay in prosecuting its claim once it had notice of it. At bottom, if there was neglect here, it was excusable, and the Court should permit Celsius' late-filed claim.

5.    Additionally, the Court should lift the automatic stay to permit Celsius to prosecute its preference claim in the Celsius Bankruptcy, where Judge Glenn will hear hundreds, if not thousands, of preference claims raising similar issues of fact and law. Litigating the claim in this

---

[5] *Second Amended Disclosure Statement Relating to the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [ECF No. 863] ("Second Amended Disclosure Statement"), at 96.

action would be inefficient—causing needless expense to both estates—and could lead to inconsistent judgments. Moreover, since the filing of Celsius' Motion, Judge Glenn has ruled that assets in Celsius' Earn accounts belong to Celsius, and not its customers—a critical component of Celsius' claims that the objectors undoubtedly will seek to re-litigate in this forum if given the chance. It would be wasteful for this Court to engage in the same analysis all over again, and risk inconsistent results. It is only logical that the preference claim be asserted and determined in Celsius' own bankruptcy proceeding.

## **REPLY**

### I. **Celsius Is Entitled to File a Late Proof of Claim**

#### A. **Relief Is Appropriate Because Voyager Failed to Provide Celsius with Actual Notice of the Bar Date in Violation of its Due Process Rights**

6.      Celsius was a known creditor of Voyager, entitled to actual notice of Voyager's bar date. Voyager failed to provide actual notice in violation of Celsius' due process rights. As a result, Celsius should be permitted to file its proof of claim.

7.      It is "well-settled that due process requires that 'known' creditors be given direct notice, by mail, of a bar date and of other proceedings relevant to their claims. *In re JCK Legacy Co.*, No. 20-10418 (MEW), 2022 WL 628320, at *3 (Bankr. S.D.N.Y. Mar. 3, 2022) (citing *New York v. N.Y., N.H. & H.R. Co.*, 344 U.S. 293, 297 (1953) ("[E]ven creditors who have knowledge of a reorganization have a right to assume that the statutory 'reasonable notice' will be given to them before their claims are forever barred"). "The Debtor[s] bear[] the burden of proving that a creditor received adequate notice of the bar date." *Id.* (citing *In re Massa*, 187 F.3d 292, 296 (2d Cir. 1999)).

### (i)    *Voyager did not provide actual notice of the bar date to Celsius.*

8.      Objectors cannot meet their burden that Celsius did in fact receive actual notice of the bar date.  There is ***unrebutted*** declaration testimony conclusively establishing the opposite. *See* Ferraro Decl. ¶¶ 4–9.[6]  Indeed, it is undisputed that Voyager attempted to provide notice of the bar date in its chapter 11 case by mail to Celsius UK.  *Id.* ¶¶ 6, 7.  It is further undisputed that Celsius UK had assigned all rights, title and interest to the underlying Omnibus Wallet Service Agreement more than one year beforehand to Celsius US and Celsius EU in a written agreement to which Voyager was a party.  *Id.* ¶ 5.[7]  And there is unrebutted declaration evidence that Voyager mailed the notice to "an out of date address for a space that Celsius UK no longer occupies," and critically, that "no Celsius agent or employee ever received the Notice of the bar date in Voyager's bankruptcy."  *Id.* ¶ 7, 9.  In sum, the undisputed, unrebutted evidence shows that Voyager sent the bar date notice to the wrong party's wrong address, and Celsius did not otherwise receive the notice.

9.      Even so, the Objectors argue that service on Celsius UK's address was sufficient to satisfy actual notice.  This argument misses the mark for a few reasons.  First and foremost, Celsius UK had not been Voyager's contractual counterparty for more than a year, which should have been reflected in Voyager's own books and records.[8]  *See In re Best Prod. Co., Inc.*, 140 B.R. 353, 358 (Bankr. S.D.N.Y. 1992) (noting that "a debtor must review its own books and records to ascertain

---

[6] The "Ferraro Declaration" means *Declaration of Christopher Ferraro in Support of Motion of Celsius Network LLC for an Order (i) Lifting the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001 and (ii) Granting Leave to File Late Proof of Claim Pursuant to Bankruptcy Rules 3003(c) and 9006(b)(1)* [ECF No. 729].

[7] *See also* Assignment and Amendment to Omnibus Wallet Service Agreement ("Assignment"), Exhibit B to *Declaration of Michael C. Whalen in Support of Debtors' Objection to Motion of Celsius Network LLC for Order (I) Lifting the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001 and (II) Granting Leave to File Late Proof of Claim Pursuant to Bankruptcy Rules 3003(c) and 9006(b)(1)* [ECF No. 868] ("Whalen Declaration").

[8] The Debtors erroneously claim that the London address was reflected "in both the Wallet Agreement and the [Assignment]."  Voyager Objection ¶ 23.  The London address is not listed in the Assignment.

the identity of creditors"). Additionally, Voyager did not send the bar date notice until September 23, 2022—just 10 days before the bar date itself. Thus, even granting the Objectors' arguments that mailing a notice to the wrong entity's wrong address could be considered adequate notice, **sending** the notice overseas 10 days before the bar date cannot establish adequate notice to creditors, much less guarantee that the notice arrives in time to act on it. *See also* Fed. R. Bankr. P. 2002(a)(7) (providing that creditors shall receive "at least 21 days' notice by mail" of the time fixed for filing proofs of claim).[9]

### (ii)    Celsius is not an "unknown" creditor.

10.    The Objectors alternatively argue that Celsius was an "unknown" creditor, and therefore not entitled to actual notice of the bar date. But even if that is true—and it is not—it does not change the fact that Celsius indisputably did not receive notice and that the lack of such receipt contributed to Celsius missing the bar date.

11.    In any event, Celsius was a "known creditor." "Known creditors are defined as creditors that a debtor knew of, or should have known of, when serving notice of the bar date." *In re Drexel Burnham Lambert Grp., Inc.*, 151 B.R. 674, 681 (Bankr. S.D.N.Y. 1993), *aff'd*, 157 B.R. 532 (S.D.N.Y. 1993). "It is important to note that there is no bright-line rule to be applied in determining whether a particular creditor is known or unknown to a debtor for constitutional notice purposes. Rather, the known creditor analysis must properly focus on the totality of the circumstances in each case." *In re J.A. Jones, Inc.*, 492 F.3d 242, 250 (4th Cir. 2007). "A known

---

[9] Furthermore, under the Assignment and Amendment to the Omnibus Wallet Service Agreement, Voyager "acknowledge[d] that, in connection with the Migration, the Services will be subject to updated terms of use with Celsius US," and the operative terms of use included an address for Celsius US (i.e., Celsius Network Limited) in Hoboken, New Jersey which is and remains Celsius' current address. *See* Celsius Terms of Use, dated August 3, 2021, Exhibit A-7 to *Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, Providing Terms of Use Dating Back to February 18, 2018* [Celsius ECF No. 393]. *See In re Drexel Burnham Lambert Grp. Inc.*, 151 B.R. at 681 ("A debtor is obligated . . . to undertake more than a cursory review of its records and files to ascertain its known creditors.").

claim arises from facts that would alert the reasonable debtor to the possibility that a claim might reasonably be filed against it." *In re Drexel Burnham Lambert Group Inc.*, 151 B.R. at 681. A known creditor's claim need not be actually known by the debtor; it must merely be "reasonably ascertainable." *Id.* at 680.

12.    Celsius' preference claim was reasonably ascertainable by Voyager, if it was not actually known. Celsius and Voyager had an ongoing business relationship, are engaged in similar businesses, and filed bankruptcy petitions within a week of each other, and each was indisputably aware of the others' filing. Voyager makes much of the supposed novel nature of the preference action that Celsius seeks to bring. *E.g.*, Voyager Objection ¶¶ 1, 4, 21, 29, 32, 37. But Voyager was aware of Celsius' bankruptcy, and Voyager's own books and records surely demonstrate that it received multiple transfers in the 90 days prior to Celsius' bankruptcy filing.[10] Such transfers are textbook preferences. And while there is a "novel" element to the question of whether customer digital assets are estate property, that question is hardly novel to Voyager, which is also a bankrupt crypto company *that has confronted the exact same issue and taken the exact same position as Celsius that such assets are estate property*.[11] Thus, "facts [existed] that would alert

---

[10] Indeed, Celsius' own books and records reflect the various withdrawals by Voyager from its Celsius Network LLC Earn accounts. Those withdrawals are set forth on page 13,815 of *Celsius Network LLC's Statement of Financial Affairs* [Celsius ECF No. 973].

[11] Indeed, in this case's hearing on Voyager's First Day Motions, this Court immediately raised the issue of the estate's ownership of the coins in Voyager customers' accounts.

> [T]here can be difficulty figuring out . . . how ownership is determined. How ownership is determined can be very important applying various provisions of the Bankruptcy Code. Of more immediate concern to me is not so much the hypothetical issue of exactly how you nail down what the property is, but you've described your business in some places as [an] arrangement under which customers store cryptocurrency with you in exchange for interest payments, *but under which the actual cryptocurrency are the company's to keep*.

First Day Hr'g Tr. 11:22–12:8 (July 8, 2022) [ECF No. 61]. Voyager's counsel then confirmed the Court's understanding that Voyager views these coins as property of the estate. *Id.* at 17:15–19 ("In addition, Your Honor, we have $1.3 billion of crypto assets on the platform. And to Your Honor's question and comment, the customer agreements say that this is commingled crypto and *it's effectively property of the estate*; it's not held in trust for the benefit of customers.").

the reasonable debtor to the possibility that a claim might reasonably be filed against it." *In re Drexel Burnham Lambert Group Inc.*, 151 B.R. at 681; *see also In re J.A. Jones*, 492 F.3d at 245 (creditor was "known" to debtor where debtor was indisputably aware of events giving rise to claim, even though claim was not filed and debtor did not believe it was liable); *In re Worldcom, Inc.*, 325 B.R. 511, 516 (Bankr. S.D.N.Y. 2005) (movant seeking permission to file belated preference claim against debtor was "known creditor" which received "actual notice").

13.    Moreover, the Objectors' argument is belied by the Debtors' own actions and statements.    Indeed, it is undisputed that Voyager included "Celsius" in its own schedule of executory contracts. *See Amended Schedules of Assets and Liabilities of Voyager Digital, LLC (Case No. 22-10945)* [ECF No. 10].    And, as discussed, Voyager attempted to provide notice of the bar date to Celsius, but failed.    Ferraro Decl. ¶¶ 6–9.    These acts constitute admissions that Celsius was a known creditor, or at the very least, demonstrate that Celsius' claims were reasonably ascertainable.

14.    Both Objectors rely on *In re XO Communications, Inc.*, but that case is distinguishable from the instant case.    In *XO Communications*, the creditor filed for bankruptcy over a year before the debtor filed for bankruptcy.    301 B.R. 782, 785–87 (Bankr. S.D.N.Y. 2003), *aff'd*, No. 04 CIV. 01489LAK, 2004 WL 2414815 (S.D.N.Y. June 14, 2004).    Here, however, Voyager and Celsius filed for bankruptcy one week apart and in the same Court.    And unlike the debtor and creditor in *XO Communications*, Celsius and Voyager are engaged in a substantially similar businesses and face the same issues regarding ownership of customer assets. *See supra* n. 9. Moreover, unlike in *XO Communications*, Voyager's filings in support of its first day motion reveal Voyager's awareness of Celsius' highly distressed financial situation. *See Declaration of Stephen Ehrlich, Chief Executive Officer of the Debtors, in Support of Ch. 11 Petitions and First*

*Day Motions* at 23 [ECF No. 15] (discussing Celsius pausing all account withdrawals and transfers). Indeed, the two bankruptcy filings were frequently reported together.[12] And unlike here, the debtor in *XO Communications* did not list the creditor on any of its schedules. *See* 301 B.R. at 786. All these facts render Celsius' claim vis-à-vis Voyager far more "reasonably ascertainable" then the purely speculative preference claim at issue in *XO Communications*.

15.    In sum, the Objectors cannot meet their burden to show that Celsius received actual notice, and Celsius is entitled to relief on that ground alone. *In re Drexel Burnham Lambert Grp.*, 151 B.R. at 679 (a "claim against the [bankruptcy] estate[] constitutes property within the meaning of the Amendment[] and cannot be forfeited through proceedings lacking in due process"); *see also In re U.S.H. Corp. of N.Y.*, 223 B.R. 654, 658 (Bankr. S.D.N.Y. 1998) ("[I]f a creditor is not given reasonable notice of the bankruptcy proceeding and the relevant bar dates, its claim cannot be constitutionally discharged.").

## B.    Additionally, Relief Is Appropriate Because Celsius' Delay Was the Result of Excusable Neglect

16.    Bankruptcy Rule 9006(b)(1) provides that the Court may excuse the late filing of a claim based on "excusable neglect." The relevant factors to be considered are (1) the danger of prejudice; (2) the length of the delay and its potential impact on proceedings; (3) the reason for the delay, including whether it was in the reasonable control of the movant; and (4) whether the

---

[12] *See, e.g.*, Becky Yerak & Akiko Matsuda, *For Crypto Customers, a Long Battle Ahead in Bankruptcy*, WALL STREET JOURNAL (Aug. 1, 2022), https://www.wsj.com/articles/for-crypto-customers-a-long-battle-ahead-in-bankruptcy-11659379620; David Hollerith & Ines Ferre, *'I have been in shock': Letters reveal financial distress after Celsius, Voyager bankruptcies*, Yahoo! Finance (July 31, 2022), https://finance.yahoo.com/news/celsius-voyager-bankruptcy-stories-123654851.html. Ryan Deffenbaugh, *Crypto bankruptcy plunges the industry into uncharted territory*, PROTOCOL (July 15, 2022), https://www.protocol.com/fintech/crypto-bankruptcy-voyager-celsius; Frances Yue, *'I just wake up and cry': Voyager and Celsius bankrupcies have destroyed some crypto investors' confidence in centralized platforms*, MARKETWATCH (July 14, 2022), https://www.marketwatch.com/story/i-just-wake-up-and-cry-voyager-and-celsius-bankruptcies-have-destroyed-some-crypto-investors-confidence-in-centralized-platforms-11657803496.

movant acted in good faith. *See Pioneer Inv. Servs. v. Brunswick Assocs., Ltd. P'ship*, 507 U.S. 380, 395 (1993).

### (i)    *Celsius' Delay Was Reasonable and Outside of its Reasonable Control*

17.    Celsius first addresses the reason for the delay—the "predominant factor" in the *Pioneer* analysis.  *See In re Queen Elizabeth Realty Corp.*, No. 13-12335 (SMB), 2017 WL 1102865, at *6 (Bankr. S.D.N.Y. Mar. 24, 2017), *aff'd*, 586 B.R. 95 (S.D.N.Y. 2018).  Celsius advances two valid reasons for its delay that were outside of its reasonable control: (1) Celsius never received notice of the Voyager bar date, and (2) even if Celsius *had* received notice, it was consumed with its own complex, freefall bankruptcy case and could not reasonably be expected to undertake an extensive preference analysis at such an early stage in its bankruptcy.[13]  As such, Celsius' delay is justifiable and its late filing does not even amount to the "inadvertence, mistake, or carelessness" that Congress contemplated may be overlooked to permit a late-filed proof of claim.  *See Pioneer*, 507 U.S. at 388.

### a.    Celsius' Lack of Knowledge Regarding the Bar Date Constitutes a Valid Reason for Delay.

18.    Even if the Court finds that Voyager's attempt at noticing the bar date to Celsius complied with due process, the unrebutted declaration testimony shows that Voyager sent the bar date notice to the wrong party's wrong address, and Celsius did not otherwise have actual knowledge of the bar date.

19.    The Committee makes much of the fact that the Voyager bankruptcy was widely reported and that Celsius and its professionals were aware of Voyager's filing.  Committee

---

[13] The Objectors improperly attempt to isolate Celsius' two bases for excusable neglect, arguing that neither is individually sufficient to meet the standard.  However, these bases cannot be disaggregated so.  Given that "the determination [of excusable neglect] is at bottom an equitable one, taking account of *all relevant circumstances* surrounding the party's omission," Celsius submits that its two bases, together, establish excusable neglect even if the Court finds one or both bases individually insufficient.  *See Pioneer*, 507 U.S. at 395.

Objection ¶ 16.  But awareness of a bankruptcy filing—or a bankruptcy proceeding—is entirely different than awareness of a bar date, and the law is crystal clear that awareness of a bankruptcy proceeding is not sufficient to constitute notice of a bar date in that proceeding.  *In re Queen Elizabeth Realty Corp.*, 2017 WL 1102865, at *4 ("In chapter 11 cases, notice of or awareness that a bankruptcy case is pending does not give the creditor the information needed to ascertain the bar date, and a creditor who was not served with notice of the bar date but nonetheless learns that a case is pending is not under a duty to discover the bar date.") (internal citations omitted).[14]  The Objectors have not and cannot point to any pleading or other evidence in which Celsius acknowledged the Voyager **bar date**.  Moreover, while Voyager and Celsius filed for bankruptcy within a week of one another in July 2022, Voyager implemented a bar date approximately three months after filing (October 3, 2022), while Celsius implemented a bar date approximately seven months after filing (February 9, 2023).  The substantial discretion the Bankruptcy Code affords a debtor in setting a bar date is precisely why notice of such bar date to potential creditors is so critical.

---

[14] Thus, the Committee's claim that "general knowledge of the case is constitutionally sufficient," to impute knowledge of the bar date is patently false, and its reliance on *Medaglia* is highly misleading.  *See* Committee Objection ¶ 18 n.16 (citing *In re Medaglia,* 52 F.3d 451 (2d Cir. 1995)).  Indeed, *Medaglia* is completely inapposite as it involved an individual chapter 7 case and analyzed knowledge of the deadline to file objections to dischargeability under Bankruptcy Code section 523(a)(3)(B).  *See* 52 F.3d at 451.  In fact, *Medaglia* is self-distinguishing on its application to the facts of this case: "By their very nature corporate reorganizations frequently do not lend themselves to the goal of promptness.  Unlike knowledge of an individual debtor petition, *knowledge of a corporate reorganization petition does not readily enable a creditor to estimate the bar date*."  *Id.* at 457.  In summary, and as stated in another of the Objectors' cases,

> The law respecting notice of the bar date to which a creditor is entitled differs in a Chapter 11 case like this one from a Chapter 7 case. That is so because the bar date in a Chapter 7 case is fixed by the Federal Rules of Bankruptcy Procedure; anyone with knowledge of the case can ascertain the date fixed for the meeting of creditors under 11 U.S.C. § 341 and then calculate the bar date. . . .  In a corporate chapter 11 case, on the other hand, more is required.

*In re Best Prod. Co., Inc.*, 140 B.R. 353, 357 (Bankr. S.D.N.Y. 1992).

b. Celsius' Immersion in its Own Bankruptcy Constitutes a Valid Reason for Delay

20.    In its opening papers, Celsius explained that beginning shortly before its bankruptcy filing in July 2022 and continuing until two days after the Voyager bar date on October 5, 2022 (i.e., nearly the exact period in which Voyager expected its unsecured creditors to file claims), it was engaged in a herculean effort to prepare its Schedules and Statements as required under the Bankruptcy Code.  The Celsius bankruptcy was a freefall filing involving billions in assets and liabilities.  As described in the undisputed Declaration of Holden Bixler of Alvarez & Marsal, from July through October 2022, all available Celsius resources were devoted to compiling its Schedules and Statements.  Bixler Decl. ¶¶ 6–11; *see also* Ferraro Decl. ¶ 10.  The work performed to prepare the Schedules and Statements was all-consuming, and the results speak for themselves: Schedules and Statements totaling ***30,000 pages*** with more than ***three million rows of transfers*** in the 90 days prior to the filing of Celsius' bankruptcy petition.  Bixler Decl. ¶ 11.

21.    The Objectors argue that Celsius should have identified its needle of a preference claim against Voyager in the course of preparing its haystack of Schedules and Statements.  This argument is completely divorced from reality and without regard to the ordinary course of chapter 11 cases.  It is precisely because Celsius was fully-consumed with preparing its Schedules and Statements that it was unable to identify potential preference actions.  Indeed, it is uncontroverted that analysis of potential preference claims typically follows preparation of schedules and statements in complex bankruptcy proceedings, and that is exactly what happened here.  Bixler Decl. ¶ 12.  Once the claims and bar date were identified, Celsius acted swiftly to seek a resolution with Voyager, and then filed this Motion.

22.    The Cases relied on by the Objectors are all readily distinguishable on these grounds and others.  *See In re Tronox Inc.*, 626 B.R. 688, 734 (Bankr. S.D.N.Y. 2021) (observing

that while a claimant's busy schedule or other personal circumstances might explain missing the bar date in the first instance, it could not excuse delaying filing claims until six years or more after the bar date); *In re Motors Liquidation Co*., 599 B.R. 706, 716 (S.D.N.Y. 2019) (where prisoner was aware of all facts giving rise to claim against debtor for many years prior to the bar date, failure to timely file that known (albeit contingent) claim was not excused by fact that he also was involved in appeals of criminal conviction); *In re Peninsular Oil Corp*., 399 B.R. 532, 537–38 (Bankr. M.D. Fl. 2008) (court rejected claimant's alleged preoccupation with being acquired by another company as the reason for its delay where claim was specifically scheduled by the debtors, claimant was a member of the unsecured creditors committee, claimant conceded it received actual notice of the bar date, and claimant waited more than two years after bar date passed before seeking leave to file a late claim); *In re Eagle-Picher Indus., Inc*., 158 B.R. 713, 715–16 (Bankr. S.D. Ohio 1993) (no excusable neglect where claimant school district (i) admitted it received actual notice of the bar date at least three months in advance, (ii) did not dispute that it was aware at all relevant times of the facts underpinning its claim,  but (iii) nevertheless failed to file a timely proof of claim based on "other duties and priorities," thus expressing "indifference" to the need for complying with the court's order).[15]

---

[15] In one case the Committee cites, the court found excusable neglect even though it was not satisfied with the reason for the delay where, as here, there was no evidence of bad faith, or that the brief delay (three months) would result in any cognizable prejudice to the debtor. *See In re Frontier Comms. Corp*., 641 B.R. 64, 77 (Bankr. S.D.N.Y. 2022).  The sole case the Debtors cite, *Ragguette v. Premier Wines and Spirits*, evaluated excusable neglect in connection with Federal Rule of Appellate Procedure 4 concerning filing a late notice of appeal.  691 F.3d 315, 330 (3d Cir. 2012).  The court rejected counsel's argument that her "busy schedule" caused her not to see that a notice of appeal deadline had not been calendared by her new associate/appellate motions clerk or ultimately filed, determining that a "reasonably competent attorney would have better managed her own caseload and would have done more to make sure that the critical task of properly filing a notice of appeal was completed despite how busy she may have been at the time." *Id.*  The court focused on the attorney's lack of competence in failing to discover that no notice of appeal had been filed and failing to "at least take[] steps to investigate the matter" given that the attorney had participated in briefing the issue, an order had been entered, and there was nothing on ECF indicating a notice of appeal had been filed. *Id.*  In contrast here, there has been no allegation of attorney incompetence leading to "missing a deadline."  The record clearly lays out Celsius' efforts to prepare and file its own complicated bankruptcy case, gather materials, and perform an extensive analysis of all potential preference claims with limited resources.

        c.   <u>Celsius Did Not Learn of its Claim or the Bar Date Until After the Bar
Date, which was Reasonable Under the Circumstances</u>

23.     The timeline of Celsius' discovery of the preference claim is virtually undisputed.

Celsius completed its voluminous and complex Schedules and Statements on October 5, 2022, two

days after the Voyager bar date passed.  Bixler Decl. ¶ 11.  On November 2, 2022, Alvarez and

Marsal ("<u>A&M</u>") was asked to look into the Voyager withdrawals that occurred within the 90-day

preference period ahead of Celsius' chapter 11 filing.  Bixler Decl. ¶ 13.  A&M confirmed such

withdrawals occurred and the matter was referred to conflicts counsel on November 5, 2022.

Hurley Decl. ¶ 4.[16]  Conflicts counsel performed its own preliminary investigation and then

reached out to Voyager to bring the matter to its attention ten days later (November 15, 2022) in

an effort to reach a resolution without the need for costly and time-consuming motion practice.

Hurley Decl. ¶ 5.

24.     Still, the Objectors make various arguments—in flagrant disregard for ethical

implications and against the weight of agency law—that Celsius' knowledge of the preference

claim arose earlier or that Celsius' lack of knowledge was unreasonable.

25.     First, the Objectors argue that because Kirkland & Ellis ("<u>Kirkland</u>") represented

both sets of debtors, knowledge of Voyager's bar date can be imputed to Celsius.[17]  However,

knowledge is imputed only where an agent is acting within the scope of its authority and the

knowledge pertains to matters within the scope of the agent's authority.  *Curtis, Collins &

Holbrook Co. v. United States*, 262 U.S. 215, (1923); *see also In re Perle*, 725 F.3d 1023, 1028

(9th Cir. 2013) ("Perle has identified no case, nor are we able to find one, that imputes to a client

---

[16] The "Hurley Declaration" means *Declaration of Mitchell Hurley in Support of Motion of Celsius Network LLC
Lifting the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001 and (ii) and Granting Relief to
File Late Proof of Claims Pursuant to Bankruptcy Rules 3003(c) and 9006(b)(1)* [ECF No. 730].

[17] The Objectors raise the same argument with respect to Stretto—both Celsius' and Voyager's claims agent—and the
argument fails for the same reasons stated herein.

knowledge that his lawyer gained while representing a different client. In fact, the authority is to

the contrary."); *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985) ("Generally, however, an

attorney's representation of a party in one action does not make the attorney an agent for the party

in an unrelated case between the same parties."). Kirkland's knowledge of Voyager's case

(including the bar date) obtained through its representation of Voyager is outside the scope of its

representation of Celsius. Therefore, such knowledge cannot be imputed to Celsius.

26.    Indeed, in an August 30, 2022 submission that the Committee themselves cite,

Kirkland expressly advised that it does not and will not, represent Celsius in connection with any

matter adverse to Voyager.[18] Kirkland made a similar representation in connection with Celsius

in its filings in the Voyager bankruptcy.[19] Kirkland's knowledge of the bar date (by virtue of its

representation of Voyager) cannot be imputed to Celsius any more than Kirkland's knowledge of

Celsius' affairs (by virtue of its representation of Celsius) can be imputed to Voyager. While the

Kirkland Retention Reply acknowledges that Voyager maintained a small balance on the Celsius

platform, it says nothing about the timing of any Voyager withdrawals, or otherwise suggests that

Celsius was then aware it had preference claims against Celsius. Indeed, by the petition date,

"there were over 600,000 Earn users" on the Celsius platform, many of whom made pre-petition

withdrawals from Celsius.[20] But that does not by itself mean any or all of those other customers

---

[18] *Debtors' Reply to the Letter Regarding the Debtors' Retention of Kirkland & Ellis LLP and Kirkland & Ellis International LLP* [Celsius ECF No. 637] ("Kirkland Retention Reply") ("Kirkland has not represented, and will not represent, the Debtors adverse to Voyager during the pendency of Voyager's bankruptcy cases" and "Kirkland has not represented, and will not represent, Voyager adverse to the Debtors during the pendency of these chapter 11 cases.").

[19] *First Supplemental Declaration of Joshua A. Sussberg in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective as of July 5, 2022* [ECF No. 201] ("Kirkland has not represented, and will not represent, the Debtors adverse to Celsius during the pendency of Celsius' bankruptcy proceedings. Similarly, Kirkland has not represented, and will not represent, Celsius adverse to the Debtors during the pendency of these chapter 11 cases.").

[20] *See Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions* [Celsius ECF No. 23], ¶ 49; *see also id.* ¶ 9 ("By July 2022, Celsius had

are subject to preference claims.  That determination requires further analysis by Celsius, just as did the Voyager withdrawals.

27.     Finally, the Committee argues that Celsius' "ignorance" of its claim "does not constitute excusable neglect."  In doing so, the Committee cites mass tort cases that are easily distinguishable and that do not preclude a finding of excusable neglect here.[21]  Unlike the facts and circumstances of the Committee's cases, not only has the bar date barely passed—and indeed was extended to certain claimants for a time after Celsius filed its Motion—but Celsius submitted sufficient evidence that it took measures to gather information and investigate its potential preference claims in the few short months after Celsius itself filed its chapter 11 cases.  Bixler Decl. ¶¶ 5–14.  In other words, Celsius did not "sit on its rights," but investigated its potential claims in what would ordinarily be a timely manner, failing to meet the bar date deadline only because it was in the midst of its own bankruptcy and had limited resources to gather information and complete its investigation.  *Cf. In re XO Communications*, 301 B.R. at 799 (finding no excusable neglect where, unlike here, it was "within the reasonable control" of the claimant to file

---

approximately 1.7 million registered users and approximately 300,000 active users with account balances of more than $100").

[21] In *Jones v. Chemetron Corp.*, the court held that mass tort claimants who had waited to file claims until four years after passage of bar date, and two years after confirmation of plan, could not establish excusable neglect where claimants "introduced no evidence to show what measures they took to specifically investigate the cause of their medical problems," despite fact that news reports concerning depleted uranium contamination at relevant site were frequent, and had begun at least twelve years earlier, and eight years before the bar date.  212 F.3d 199, 204–05 (3d Cir. 2000).  In *In re Motors Liquidation Co.* a "sophisticated" claimant "sat on its rights" for nine years after the bar date based on a "mistake of law" as to when its claim accrued, a period during which "[e]ffectively all case activity," including confirmation of a plan and emergence, occurred).  598 B.R. 744, 758 (S.D.N.Y. 2019). In *In re Energy Future Holdings Corp.*, the court found that asbestos claimants who actively participated in the bankruptcy proceedings but made the "tactical" choice not to file proofs of claims for years after their asbestosis diagnosis could not satisfy excusable neglect standard.  619 B.R. 99, 117 (Bankr. D. Del. 2020) (noting that claimants "chose not to file claims or motions to enlarge the time to file claims for years"); *see also In re Charter Co.*, 113 B.R. 725, 729 (M.D. Fl. 1990) (pre-*Pioneer* case holding that movant failed to demonstrate excusable neglect where debtor not identified as defendant until six years after death of alleged victim and two years after passage of bar date).

a timely claim, "but it opted to forego such a filing until after confirmation of its plan and thereby assumed the reasonably foreseeable consequences of such a determination").[22]

28.    In short, Celsius has valid reasons for its delay sufficient to show excusable neglect.

### (ii)    *The Other Pioneer Factors Weigh in Celsius' Favor*

#### a.    Lack of Prejudice to the Debtors Weighs in Celsius' Favor

29.    First, the Objectors disagree that a late-filed claim will not prejudice the Debtors because no plan has been confirmed.  *See In re Herman's Sporting Goods, Inc.*, 166 B.R. 581, 584 (Bankr. D.N.J. 1994) ("The absence of a confirmed plan of reorganization indicates a lack of prejudice to the debtor."); *see also In re Keene Corp.*, 188 B.R. 903, 913 (Bankr. S.D.N.Y. 1995) (the fact that "although the principal constituents have negotiated and published a plan, it has not been confirmed" was a "factor[] militat[ing] against finding prejudice").  The Committee points to its recently filed plan of reorganization, as disclosed in the Second Amended Disclosure Statement.  However, Celsius filed its Motion one month before Voyager filed the Second Amended Disclosure Statement, and Celsius informed Voyager (and other key constituencies) of its potential claim a month before that.  *See* Hurley Decl. ¶¶ 4–5.  The Debtors and their counterparties therefore had ample notice of Celsius' claim to consider it in connection with plan negotiations.

30.    Second, the Debtors dispute that Celsius' claim would be *de minimus* relative to total unsecured claims pool of $1.8 billion.[23]  Specifically, the Debtors argue that "Celsius's claim

---

[22] The Committee argues mistakenly that Celsius should have identified its claims against Voyager before the bar date passed because Celsius was at all times represented by sophisticated bankruptcy advisors.  First, Celsius never was represented by either Kirkland & Ellis or Latham & Watkins in connection with matters adverse to Voyager, and it is undisputed that Akin Gump was retained in that regard only after the bar date passed.  Second, Celsius' financial advisors, while undoubtedly sophisticated, were not tasked with identifying preference claims against Voyager or anyone else, were confronted with millions of rows of data relating to transactions on the Celsius platform, and had no mandate or practical ability to identify the Voyager transaction for consideration as preferences.

[23] The Committee also argues that the fact that a claim is *de minimus* is "immaterial."  However, another bankruptcy court in this district has specifically found that "[t]he size of the claim is [] relevant." *In re Queen Elizabeth Realty*

will almost certainly fall into Class 4A OpCo General Unsecured Claims, which has a limited

claim pool of $14 million," which "would expand the current Class 4A claim pool by more than

50%, with Celsius's claim ultimately representing approximately 35% of the entire class of

claims." Voyager Objection ¶ 27.  The Debtors' argument is disingenuous; the plan is set up to

treat the OpCo General Unsecured Claimants ("GUCs") in a manner that gives them the same

recovery as account holders in Class 3, albeit not in same form of consideration.  Indeed, the

Second Amended Disclosure Statement lists the same recoveries for Class 3 and Class 4A, and in

the context of cramdown, states: "Class 3 Account Holder Claims and Class 4A OpCo General

Unsecured Claims are treated the same under the Plan."  *See* Second Amended Disclosure

Statement at 14–17, 87.  Therefore, while this claim may increase the size of Class 4A, the actual

economic dilution would be spread across both Class 4A and Class 3 and would be negligible (less

than one half of one percent).

     31.    Third, the Objectors assert that to permit Celsius' late claim would "open[] the

floodgates to potential claimants."  *See* Committee Objection ¶ 39.  Specifically, the Committee

speculates that Voyager's active users might similarly be enticed to file a late claim should Celsius

be granted relief.  However, the Objectors' "evidence [or lack thereof] of prejudice is entirely

hypothetical . . . because there are no other lurking, similarly-situated creditors that have been

brought to the Court's attention."  *In re Queen Elizabeth Realty Corp.*, 2017 WL 1102865, at *7

("[P]rejudice is not an imagined or hypothetical harm; a finding of prejudice should be a

conclusion based on facts in evidence.") (quoting *In re Enron Corp.*, 419 F.3d 115, 131 (2d Cir.

2005)); *see also In re Beltrami Enters., Inc.*, 178 B.R. 389, 392 (Bankr. M.D. Pa. 1994) (no

---

*Corp.*, 2017 WL 1102865, at *7 (noting that the Supreme Court in *Pioneer* "must have had more in mind than a simple dollar-for-dollar depletion of assets otherwise available for timely filed claims. Otherwise, virtually all late filings would be condemned by this factor, because they seek to share, with timely filed claims, in the bankrupt's limited resources.") (cleaned up) (quotations omitted).

prejudice where "[n]o evidence was placed on the record to indicate that there were hordes of claimants ready to file claims should [the moving creditor] be allowed to file its claim late."). And, Voyager's users cannot remotely be described as "similarly-situated" to Celsius. Indeed, Celsius is the **only** party identified in connection with this Motion that seeks to assert a preference claim arising under the Bankruptcy Code that it was unable to file timely due to a failure to receive notice of the bar date combined with being fully consumed with its own multi-billion-dollar freefall bankruptcy. *See In re Queen Elizabeth Realty Corp.*, 2017 WL 1102865, at *7. In sum, there is no evidence that a cascade of similar late claims will follow if Celsius' motion is granted, and "any hypothetical harm that could result . . . is minimized by the statutory and common law safeguards of Rule 9006(b)(1) and the *Pioneer* Factors." *In re Roman Cath. Diocese of Syracuse, New York*, 638 B.R. 33, 39 (Bankr. N.D.N.Y. 2022). Thus, the Objectors' floodgates arguments fail.

32.    Finally,[24] the Objectors claim that litigating the preference action will take substantial resources, thus prejudicing the estate. Not so. First, the mere fact that a late-filed claim may create **some** additional cost or inconvenience for the debtor cannot by itself constitute "prejudice," or this factor would weight against extending the bar date in **all** cases. *In re Queen Elizabeth Realty*, 2017 WL 1102865, at *7 ("[T]he [Supreme Court in *Pioneer*] must have had more in mind than a simple dollar-for-dollar depletion of assets otherwise available for timely filed claims. [O]therwise, virtually all late filings would be condemned by this factor . . . .") (internal

---

[24] Objectors failed to respond meaningfully to Celsius' argument that Voyager already permitted an extension of the bar date to December 23, 2022 for certain creditors. *See Notice of (I) Filing of Amendment to Schedule of Assets and Liabilities for Voyager Digital, LLC and (II) Deadline Requiring Submission of Proofs of Claim on or Before December 23, 2022 and Related Procedures for Submitting Proofs of Claim in the Above-Captioned Chapter 11 Cases* [ECF No. 666]. In light of the new deadline for a significant number of parties, it is unlikely that allowing one additional party (Celsius) to file proof of claims after the original bar date would prejudice the Debtors in any meaningful way.

citation and quotations omitted).  Additionally, the Objectors exaggerate the likely cost and inconvenience associated with Celsius' Motion.  Despite the Objectors' repeated arguments that Celsius presents a novel claim, Judge Glenn has already ruled that assets in Celsius' Earn accounts belong to Celsius, and not its customers—perhaps the most important component and issue relating to Celsius' preference action against Voyager.  Furthermore, should the Court grant Celsius' Motion in full and permit the Celsius Bankruptcy Court to preside over the preference claim, Voyager would be able to join forces (and potentially share costs) with hundreds or thousands of Celsius customers who similarly withdrew estate property from Celsius accounts within 90 days of Celsius' petition date.  Therefore, the risk of prejudice to Voyager and its stakeholders is minimal.

b.  <u>Celsius Acted in Good Faith to Minimize any Delay</u>

33.    A review of the undisputed timeline here supports Celsius' claim that (1) it acted in good faith, and (2) its delay was short and reasonable under the circumstances.  As discussed above, Celsius worked diligently to gather and organize the information required in its Schedules and Statements upon filing its bankruptcy petition and that work continued until the morning of October 5, 2022, when Celsius filed its Schedules and Statements.  Bixler Decl. ¶¶ 6–11; *see also* Ferraro Decl. ¶ 10.  As soon as Celsius became aware of a potential claim on November 2, 2022, it instructed its financial advisor to investigate.  Bixler Decl. ¶ 13.  It then retained conflicts counsel on November 5, 2022, and thereafter notified the Debtors of the claim on November 15, 2022.[25] Hurley Decl. ¶¶ 4–5.  Therefore, the final two *Pioneer* factors weigh in Celsius' favor.

---

[25] The Committee alleges that Akin Gump's retention as conflicts counsel was "as of October 14, 2022."  Committee Objection ¶ 44.  This is misleading.  The retention application cited by the Committee involved Akin Gump's retention as conflicts counsel for two matters: Rhodium and Voyager.  *See Declaration of Mitchell P. Hurley in Support of the Notice of Proposed Additional Services, Effective as of October 14, 2022, with Respect to the Retention and Employment of Akin Gump Strauss Hauer & Feld LLP, as Special Litigation Counsel for the Debtors and Debtors in*

## II.    The Court Should Modify the Automatic Stay to Permit Ligation of the Preference Claim in the Celsius Bankruptcy in the Interest of Judicial Economy

34.    There is ample cause to lift the automatic stay for the limited purpose of allowing the Voyager preference claim to be litigated in the Celsius Bankruptcy, where hundreds or even thousands of similar claims will be litigated at once.[26]  The Bankruptcy Code instructs that courts "shall grant relief from the automatic stay . . . for cause."  11 U.S.C. § 362(d)(1).  As the Committee concedes, "[c]ause . . . is an intentionally broad and flexible concept which must be determined on a case-by-case basis."  Committee Objection ¶ 49 (quoting *In re Celsius Network LLC*, 642 B.R. 497, 501 (Bankr. S.D.N.Y. 2022)).  In determining whether cause is shown, courts in this Circuit consider the twelve factors set out by the Second Circuit in *In re Sonnax Industries*, 907 F.2d 1280 (2d Cir. 1990).[27]  A court need only apply the factors that are relevant to the particular case, and does not need to give each factor equal weight.  *In re Project Orange Assocs., LLC*, 432 B.R. 89, 104 (Bankr. S.D.N.Y. 2010).  Here, the applicable *Sonnax* factors—judicial economy, balance of the harms, and prejudice—all weigh in favor of lifting the automatic stay.[28]

---

*Possession* [Celsius ECF No. 1330].  The October 14, 2022 date refers to Akin Gump's work in connection with Rhodium; Akin Gump's Voyager work did not begin until November 5, 2022.  Hurley Decl. ¶ 5.

[26] Celsius does not dispute that if the Court does not permit its late-filed claim, its request to lift the stay is mooted.

[27] Those factors are: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.  *Id.* at 1286.

[28] Tellingly, the Objectors cannot agree which of the *Sonnax* factors apply here.  And, even where they agree, the Objectors offer completely different arguments for their conclusions.  Celsius submits that this disconnect evidences the Debtors' and Committee's separate attempts to throw every conceivable argument at the wall, hoping that something sticks.

A.    *Sonnax* Factor 10:  Judicial Economy Favors Celsius

35.    Here, judicial economy is served by allowing Celsius to resolve its preference claim in a single proceeding—the Celsius Bankruptcy.   "[T]he interests of judicial economy and expeditious resolution of the litigation normally are amongst the most important factors in any *Sonnax* analysis," and this case is no exception.  *In re Lyondell Chem. Co*., 402 B.R. 596, 609–10 (Bankr. S.D.N.Y. 2009).  Celsius submits that Voyager's transfers and withdrawals from its Celsius accounts in the 90 days before Celsius' petition date constitute avoidable preferences. Judge Glenn has already answered a key question relevant to this claim, holding that assets in Celsius' Earn accounts are property of the Celsius estate.  *See Memorandum Opinion and Order Regarding Ownership of Earn Account Assets* [Celsius ECF No. 1822] at 4.  It would not be "expeditious" for this Court to retread the same ground.  The next step in the analysis is to determine whether and which withdrawals from the Earn accounts constitute preferential transfers. Not only will it be more efficient for one court to familiarize itself with issues concerning the Celsius platform to determine these questions, it also will reduce the risk of inconsistency for one court to make determinations about hundreds or perhaps thousands of similar preference claims. Accordingly, lifting the stay to permit the preference claim's resolution in the Celsius Bankruptcy promotes judicial economy and the expeditious resolution of litigation.

36.    The Committee argues that refusing to lift the stay would promote judicial economy by allowing all issues to be resolved in one forum.  But it would not be efficient for this Court to consider issues that have already been and will continue to be decided by a sister Bankruptcy Court.  And to the extent Celsius does obtain a judgment in the Celsius Bankruptcy, the sole role of this Court will be to allow an unsecured claim on account of that judgment.

37.    The Debtors' argument is completely different, but similarly baseless.  The Debtors argue that before resolution of the preference claim in a bankruptcy court, "Celsius and the Debtors

would need to participate in a private arbitration over the ownership of the Debtors' digital assets on Celsius's platform." Voyager Objection ¶ 43. However, Judge Glenn already decided the ownership issue after accepting briefing from a variety of constituencies, many with interests aligning with Voyager's. Moreover, while the Debtors are correct that the Omnibus Wallet Service Agreement includes an arbitration provision, preference claims and adjudications relating to the scope of estate property are not subject to arbitration[29] because they are substantively core claims arising from the Bankruptcy Code that belong to the estate creditors, who are not parties to the agreement to arbitrate.[30]

38.    First, to determine whether parties have agreed to arbitrate, bankruptcy courts examine whether the claims asserted belong to a debtor or to the estate's creditors. *In re Try The World, Inc.*, 20-01013-JLG, 2021 WL 3502607, at *8 (Bankr. S.D.N.Y. Aug. 9, 2021). Here, the preference claim belongs to Celsius' creditors, who are not party to the Omnibus Wallet Service Agreement, and thus arbitration cannot be compelled. *See id.* at *10 ("Avoidance claims are not derivative of the debtor's rights, rather they are statutory claims created in favor of creditors that can only be prosecuted by a trustee or debtor in possession . . . . The creditors are not parties to the APA, and as such, the Arbitration Clause is not binding on them.") (internal quotation and citation omitted).

---

[29] The Debtors' sole supporting case—*Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16 (2d Cir. 1995)—is a generic case about the federal policy favoring arbitration, with no regard at all for the intersection of arbitration clauses and the Bankruptcy Code.

[30] To resolve a request to compel arbitration, bankruptcy courts examine four factors: (1) whether the parties agreed to arbitrate; (2) whether the dispute falls within the relevant arbitration clause; (3) if federal statutory claims are raised, whether Congress intend those claims to be arbitrable; and (4) if the court concludes that some but not all of the claims are arbitrable, whether it should stay the non-arbitrable claims pending the conclusion of the arbitration. *See In re Bethlehem Steel Corp. v. Moran Towing Corp. (In re Bethlehem Steel Corp.)*, 390 B.R. 784, 789 (Bankr. S.D.N.Y. 2008).

39.     Additionally, to determine whether Congress intended the Bankruptcy Code to override an arbitration provision, courts consider (1) whether the claim arises in a core or non-core proceeding,[31] and (2) if the claim is core, whether any underlying purpose of the Bankruptcy Code would be adversely affected by enforcing the arbitration clause.  *In re Try The World, Inc.*, 2021 WL 3502607, at *9.  Courts will distinguish "procedurally core" claims from "substantively core" claims.  *Id.* at *10.  Substantively core claims "involve rights created under the Bankruptcy Code." *Id.*  These claims "often are not subject to a contractual arbitration clause," and even if they are, arbitrating substantively core claims "likely [] will conflict with the policy of the Bankruptcy Code that created the right in dispute."  *Id.*  Here, preference claims and issues relating to the scope of estate property are substantively core claims because they were both created by the Bankruptcy Code—to wit, sections 547 and 541, respectively.  Accordingly, compelling arbitration on these claims "would severely conflict with relevant provisions of the Bankruptcy Code."  *Bethlehem*, 390 B.R. at 794 (finding that preference claims were "core matters that are integral to a bankruptcy proceeding").

40.     In conclusion, the Debtors' arbitration argument is irrelevant, and neither Objector asserts a colorable basis to dispute that judicial economy—clearly the most important factor in this case—weighs in Celsius' favor.

**B.     *Sonnax* Factor 12:  The Balance of Harms Favors Celsius**

41.     Voyager transferred or withdrew at least $7.7 million of Celsius' estate property from Celsius accounts within 90 days of Celsius' petition date.  Celsius seeks to avoid certain of

---

[31] Preference claims and actions to determine the scope of estate property are "core" proceedings under the Bankruptcy Code.  *See* 28 U.S.C. § 157(b)(2) ("Core proceedings include, but are not limited to . . . matters concerning the administration of the estate; . . . orders to turn over property of the estate; . . . proceedings to determine, avoid, or recover preferences . . . .");  *Marah Wood Prods., LLC v. Jones*, 534 B.R. 465, 477 (D. Conn. 2015) (interpleader action to determine scope of bankruptcy estate was "core").

those transfers as preferential under Bankruptcy Code section 547.  While the automatic stay is in place, Celsius cannot pursue its claims against Voyager in its own bankruptcy case.  Therefore, Celsius **and its estate** are prejudiced by the stay.

42.    Conversely, and for the reasons stated *supra*, the Objectors cannot show prejudice. The Debtors argue that any limited recovery to Celsius "may be subsumed [*sic*] by Celsius' own litigation expense."  Voyager Objection ¶ 39.  The Debtors also claim that to litigate in the Celsius Bankruptcy would cost more than litigating in this Court.  *Id.*  Both of these points ignore the fact that Celsius is likely to pursue hundreds, if not thousands, of nearly identical claims with nearly identical issues in the Celsius Bankruptcy.  Thus, the Debtors would actually ***benefit*** by adjudicating the claim in the Celsius Bankruptcy, where they can potentially join forces and share litigation costs with similarly-situated defendant parties.  Furthermore, the claim that Celsius will spend more in litigation costs than it stands to gain is belied by the Debtors' own Second Amended Disclosure Statement, which contemplates that Celsius stands to recover around $3.5 million to $3.75 million (*i.e.*, 45-50% of the $7.7 million claim amount) if successful on its claim.  *See* Second Amended Disclosure Statement at 14–17.  Such a sum is far greater than what it would cost to pursue a preference action in Celsius' Bankruptcy, especially considering the overlap of issues between this preference claim and the countless others that may be prosecuted simultaneously.

43.    The Committee's argument that Celsius seeks "special treatment" is also unavailing.  Celsius is not "in the exact same boat as every other creditor," as the Committee suggests, but is a debtor in its own bankruptcy, as the Committee well knows.  *See* Committee Objection ¶¶ 64–65.  Celsius is not aware of any other debtor-creditors here, nor is it aware of any other creditor asserting preference claims.  And, as stated *ad nauseam*, Celsius' motivation to

litigate in its own Court is borne out of efficiency *for the Court and all parties*, which would be served if the stay was lifted as requested.[32]

44.    In conclusion, because both Celsius *and* Voyager would save litigation costs in the Celsius Bankruptcy court, the balance of the harms weighs in Celsius' favor.

### C.    *Sonnax* Factor 7:  Litigation in the Celsius Bankruptcy Would Not Prejudice Voyager's Other Creditors

45.    The preference litigation in the Celsius Bankruptcy does not prejudice the interests of Debtor's other creditors because Celsius' preference claims are unique to Celsius and not available to all unsecured creditors. *See In re Rochester Drug Coop., Inc.*, 620 B.R. 699, 705 (Bankr. W.D.N.Y. 2020) (finding that factor 7 weighed in favor of granting stay relief for party to assert a counterclaim for setoff against the debtor because the alleged setoff claim was "not a claim available to all unsecured creditors").

46.    The Committee argues that Voyager's creditors would be prejudiced if litigation proceeded in the Celsius Bankruptcy because "[p]ermitting one creditor to proceed in its preferred forum encourages others to seek the same relief."   Committee Objection ¶ 61.   The Committee again ignores the fact that there simply are no other similarly-situated creditors with their own pending bankruptcy actions.   The Debtors argue that allowing the action to proceed in another forum would diminish resources that would otherwise be spent for the benefit of Voyager creditors. *See* Voyager Objection ¶ 41.   But litigation costs will be incurred regardless of where the litigation

---

[32] Celsius concedes that there is necessarily tension between two litigating debtors as to the proper bankruptcy forum to settle disputes.  However, it is only by virtue of its rights under the Bankruptcy Code, acquired by commencing the Celsius Bankruptcy, that Celsius can assert a preference claim.  Therefore, Celsius submits that the proper forum to assert its own preference claim is in its own bankruptcy court.

proceeds, and as explained above, Celsius submits that fewer costs will be incurred by all parties if the litigation proceeds in the Celsius Bankruptcy.[33]

**D.    The Remaining *Sonnax* Factors Are Either Irrelevant, Neutral, or of Nominal Value**

47.    While only *Sonnax* factors 7, 10, and 12 weigh in any party's favor in a material way (all in favor of lifting the stay to permit litigation in the Celsius Bankruptcy), Celsius must briefly respond to the Objectors' arguments regarding the other *Sonnax* factors.

48.    <u>Factor 1:  Whether relief would result in complete resolution</u>.  Notably, only the Committee believes that this factor weighs in its favor, arguing that if Celsius is successful in lifting the stay, Celsius will have to prevail in the other forum, then "return to this Court to seek to have its claim allowed and determine the claim's treatment."    Committee Objection ¶ 56. However, if and when Celsius prevails on its preference claim and secures a judgment issued by a bankruptcy court in this District, Celsius will not need to re-litigate the merits in this Court.  Rather, its unsecured judgment would be allowed without any meaningful subsequent litigation.

49.    <u>Factor 2:  Lack of any connection with or interference with the bankruptcy case</u>. If anything, this factor weighs slightly in Celsius' favor because its preference action does not relate to any issues in the Voyager Bankruptcy.  Still, the Committee argues that "[l]ifting the stay would subject the Debtors to litigation in another forum, directly contradicting the stay's purpose." Committee Objection ¶ 57 (citing cases discussing the broad policies of the automatic stay, but not relating to *Sonnax* factor 2).  By that logic, relief from the stay would never be granted to pursue litigation in another forum.  The Debtors fare no better, arguing (1) they would have to devote time and resources to the case; (2) if Celsius prevails on its claim, it would diminish assets available to

---

[33] The Debtors also argue, without stating any connection to prejudice, that the ownership of the Debtors' digital assets on Celsius' platform is subject to arbitration.  This argument fails for the reasons discussed above.

other creditors; and (3) the Debtors would have to set aside a reserve of funds while the claim is pending.  Voyager Objection ¶ 45.  All of these arguments fail because they are true ***regardless*** of where the claim is litigated.

50.    <u>Factor 3:  Whether the other proceeding involves the debtor as a fiduciary</u>.  The Debtors argue that this factor is relevant and weighs in their favor. Celsius concedes that Voyager is not its fiduciary in that case.  However, the Debtors provide no explanation as to why this factor is relevant, and the Committee omits it completely.  This factor is irrelevant.  *See In re Project Orange Assocs., LLC*, 432 B.R. at 104 ("A court need only apply the factors that are relevant to the particular case.").

51.    <u>Factor 4:  Whether a specialized tribunal with the necessary expertise has been established to hear the cause of action</u>.  The Committee, but not the Debtors, argues that this factor weighs in favor of denying the stay.  However, this factor is at the very least neutral; this Court and the court presiding over the Celsius Bankruptcy are both specialized tribunals with ample expertise to hear Celsius' preference claim.  However, Judge Glenn is already considering many of the issues underlying the preference claim, as discussed above.  In that sense, the Celsius Bankruptcy Court has the most expertise to hear the cause of action.

52.    <u>Factor 5:  Whether the Debtors' insurer has assumed full responsibility for defense</u>.  The Committee argues that this factor applies and weighs in favor of denying relief, stating only that "Celsius seeks to recover directly from the Debtors' estates and litigation costs will be paid by the estates."  Committee Objection ¶ 59.  Celsius has no reason to dispute the statement, but submits that this factor is far less important than any of those weighing in favor of lifting the stay.  Indeed, the Debtors did not even mention the availability of insurance in their Objection.

53.    <u>Factor 6:  Whether the action primarily involves third parties</u>.  Both Objectors argue that this factor does not support lifting the stay, because the preference claim involves just Voyager and Celsius.  While that is technically true, there will be numerous other preference claims with virtually identical underlying facts asserted in the Celsius Bankruptcy involving many third parties. As such, this factor is neutral, at best.

54.    <u>Factor 11: Whether the parties are ready for trial in the other proceeding</u>.  The Objectors both argue that this factor weighs in their favor.  The Committee argues that "Celsius is . . . seeking to commence a brand-new proceeding," Committee Objection ¶ 63, and the Debtors argue that "both parties would be starting from scratch," Voyager Objection ¶ 44.  However, Judge Glenn has already decided the issue of whether coins in Earn accounts are estate property, an important step in the ultimate adjudication of the preference action.  Therefore, *Sonnax* factor 11 has no material impact on the analysis under these circumstances.

\*\*\*

55.    Ultimately, Celsius has demonstrated the requisite cause for the automatic stay to be lifted or modified to permit Celsius to assert a preference action against Voyager in the Celsius Bankruptcy.

<u>**CONCLUSION**</u>

**WHEREFORE**, Celsius respectfully requests that the Court (i) enter an Order (a) lifting the automatic stay in this Chapter 11 case to permit Celsius to commence an adversary proceeding in Celsius' Chapter 11 case to pursue a preference action against Voyager and (b) granting leave under Bankruptcy Rules 3003(c) and 9006(b)(1) to file a belated claim related to any judgment Celsius may recover in the preference action or, alternatively, granting Celsius an extension of time to file a placeholder claim to protect its interests until the preference action is resolved and (ii) grant Celsius such other and further relief as the Court deems just, equitable and proper.

Dated: New York, New York
January 22, 2023

AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.
*Attorneys for Celsius Network Limited*
By:

/s/ *Mitchell P. Hurley*
Mitchell P. Hurley
Dean L. Chapman Jr.
One Bryant Park
New York, New York 10036
(212) 872-1000
mhurley@akingump.com
dchapman@akingump.com