Jonathan D. Canfield
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000

Matthew M. Murphy
Michael C. Whalen
PAUL HASTINGS LLP
71 S. Wacker Drive
Forty-Fifth Floor
Chicago, Illinois 60606
Telephone: (312) 499-6000

*Proposed Special Regulatory and Conflicts Counsel*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | Case No. 22-10943 (MEW) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF MICHAEL C. WHALEN IN SUPPORT OF
DEBTORS' OBJECTION TO MOTION OF CELSIUS NETWORK LLC FOR ORDER (I)
LIFTING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. 362(D)(1) AND
BANKRUPTCY RULE 4001 AND (II) GRANTING LEAVE TO FILE LATE PROOF OF
CLAIM PURSUANT TO BANKRUPTCY RULES 3003(C) AND 9006(B)(1)**

I, Michael C. Whalen, hereby declare pursuant to section 1746 of title 28 of the United States Code:

1.    I am an associate attorney at Paul Hastings LLP. I am attorney in good standing of the bar in the State of Illinois and the bars of the United States District Courts of the Northern

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

District of Illinois and Eastern District of Michigan as well as the United States Courts of Appeals for the 6th and 7th Circuits. My application for admission to practice *pro hac vice* before this Court is being filed simultaneous herewith.

2. I submit this declaration (the "Declaration")[2] in support of the Debtors' objection (the "Objection") to the Motion of Celsius Network LLC for Order (I) Lifting the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001 and (II) Granting Leave to File Late Proof of Claim Pursuant to Bankruptcy Rules 3003(c) and 9006(b)(1) (the "Motion").

3. Attached as Exhibit A hereto is a true and correct copy of the Omnibus Wallet Service Agreement among Celsius Network Limited and Voyager, dated June 12, 2020, and which is referred to in the Objection as the Wallet Agreement.

4. Attached as Exhibit B hereto is a true and correct copy of the Assignment and Amendment to the Omnibus Wallet Service Agreement, dated August 19, 2021, and which is referred to in the Objection as the Amended Wallet Agreement.

Dated: January 17, 2023
      Chicago, Illinois

/s/ Michael C. Whalen
Michael C. Whalen

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Objection.

# EXHIBIT A

## OMNIBUS WALLET SERVICE AGREEMENT

**THIS OMNIBUS WALLET SERVICE AGREEMENT** (this "**Agreement**") dated as of [6/12/2020], 2020 (the "**Effective Date**"), is entered into by and between **CELSIUS NETWORK LIMITED**, registered number **11-98-050**, with its registered address at 35 Great St Helen's, London, EC3A 6AP, United Kingdom ("**Celsius**"), and Voyager , with its registered address at 33 Irving Place 3060 New York, NY 10003 ("**Partner**").

**WHEREAS,** Celsius owns and operates a proprietary platform which allows Partner's **Users** (as defined below) to gain rewards on the cryptocurrencies in their Wallets (as defined below), or borrow cryptocurrency from Celsius (the "**Services**"), all in accordance with the Terms of Service; and

**WHEREAS**, Partner is the owner and operator of a secure digital online platform (the "**Platform**") available on the domain: investvoyager.com (the "**Domain**"), which allows Voyager Users to open and manage cryptocurrency brokerage accounts in which they can hold, transfer and exchange certain kinds of cryptocurrency; and

**WHEREAS**, the Partner wishes to obtain and Celsius wishes to grant Partner a limited, revocable, non-exclusive, non-transferable, non-assignable right and license to use Celsius' proprietary application program interface (the "**API**") to access the Services and the Partner shall provide Partner's Users (as defined below) with the ability to gain rewards on the cryptocurrencies in their wallet (as defined below) ("**Partner's Services**").

**NOW THEREFORE**, in consideration of the mutual covenants and undertakings hereinafter contained, each of Celsius and Partner (each, a "**Party**" and collectively, the "**Parties**") hereby agree as follows:

**Definitions**

1.1. "**Partner's Users**" refers to users engaged with the Partner and wish to use the Partner's Services through Partner's Platform, including users referred to the Platform by Partner's affiliates and partners. For the avoidance of doubt, such Partner's Users are not and shall not be deemed as Celsius' users and shall not have any commercial arrangement with Celsius solely based on the terms of this Agreement. "**Partner's Wallet**" refers to secure digital cryptocurrency wallets, hosted on Partner's Platform.

1.2. "**Terms of Service**" refers to the terms governing the use of the Services, available at https://celsius.network/terms-of-use/. The existing terms are to be adjusted by Celsius at its own discretion.

2. **Licence**

During the period commencing on the Effective Date and for the remainder of the Term (as defined in 5.1 below), and subject to Partner's compliance with the terms and conditions of this Agreement, Celsius agrees to grant Partner a non-exclusive, non-transferable, non-sublicensable, limited, revocable license to use the API to access the Services.

3. **Referral Awards**

3.1. Partner shall be entitled to receive referral awards ("**Referral Awards**") equal to 10% of the rewards generated (also known as a 50/50 revenue split with Celsius) of the average quarterly cryptocurrency amount held by Celsius as result of the Partner depositing cryptocurrency in its Wallet with Celsius (the "**Deposit**"). For this purpose, a cryptocurrency amount shall be calculated as part of the average only in case it was held by Celsius for a period longer than seven (7) days.

3.2. The Referral Awards, with respect to each coin type, is calculated quarterly and distributed to the Partner by Celsius , either (i) in the same currency type provided ; or (ii) in the form of CEL Tokens at an increased rewards rate (non-US companies only)IM, per the Partner's election, in the first week of each calendar quarter, with respect to the previous quarter's activity, provided such Referral Awards, in the aggregate, are equal to no less than $2,000 USD (calculated on the first business day of each

- calendar quarter) (the "**Minimum Referral Awards**"). If the Referral Awards are equal to or less than the Minimum Referral Awards, such amounts shall be accrued and deferred until such month in which the Awards are equal to or exceed the Minimum Referral Awards. Once the Minimum Referral Awards are met, the payout will occur at the end of the next quarterly pay period.

3.3. Following the Effective Date, Celsius shall in accordance with 3.2 above, provide to Partner a statement giving particulars of the transactions completed (if any) by the Partner during the preceding quarter, the amount of the Referral Awards payable to Partner and the calculation or evidence supporting the calculation of such Referral Awards (including a copy of the invoice for the payment of its own fees). If any dispute arises as to the amount of Referral Awards payable by the Celsius to Partner, the same shall be referred to Partner's auditors for settlement and their decision, save in the case of manifest error, shall be final and binding on both Parties.

3.4. Transaction costs related to the payment of Referral Awards shall be borne by Partner, i.e. the amounts actually received by it shall consist of the full amount calculated under Section 3.1 above, minus transaction fees on the blockchain. Celsius shall provide Partner with a breakdown showing any transaction fees incurred by Partner.

3.5. Partner will pay all sales, use, withholding and other taxes, duties, or fees imposed by any applicable laws and regulations as a result of the Referral Awards it receives under this Agreement.

**Responsibilities of the Parties**

4. Each Party shall maintain records and books of accounts in accordance with International Financial Reporting Standards.

4.1. Partner acknowledges that Celsius will have no direct interaction with Partner's Users, and as such Celsius accepts no liability whatsoever with respect to any Partner's User, other than where such liability is as a result of fraud, willful misconduct or gross negligence of Celsius or its affiliates, resellers, employees or agents.

4.2. Partner will comply with any Celsius policies or rules relating to marketing of the Services which Celsius may adopt and inform Partner in writing reasonable time in advance during the Term. Additionally, Partner agrees to the following:

   4.2.1. Customer facing product screens must include 'powered by Celsius' branding.

   4.2.2. All use of Celsius' logo and name must be in accordance with Celsius' brand kit.

   4.2.3. All press, including any blog posts or affiliated content must be pre-approved by the Celsius marketing team.

4.3. In the event the Partner does not launch the product in ninety (90) days from Effective date, Celsius may terminate the agreement at their discretion subject to section 4.6.

4.4. Partner will be fully and sole responsible for performing (or having a third party perform on behalf of the Partner) any and all necessary "know-your-customer", anti-money laundering and/or any other compliance checks Partner reasonably requires, regarding Partner's Users, including verification of any incoming documentation regarding Partner's Users and their respective source of funds. The Partner acknowledges that Celsius will be relying on the successful completion of all compliance checks to be done in accordance with the Partner's KYC/AML policy to be approved by Celsius as part of the opening of the Partner's omnibus account with Celsius, while the KYC/AML policy may be revisited by Celsius from time to time, based on its sole discretion upon any amendments thereto.

4.5. The Parties agree that in the event that the Partner's Users are deemed or claimed to be deemed Celsius' users by any competent authority, the Partner undertakes to provide Celsius with the respected Partner's Users' documentation and information upon request.

4.6. Each Party will comply with all applicable laws and regulations in performing under this Agreement, including, without limitation, relating to "know-your-customer", anti-money laundering, anti-bribery

2

and corruption, sanctions, and will acquire and maintain any required licenses thereof. Partner will not refer to the Partner's Services any Partner's User that involves high risk of money laundering, terror financing or otherwise involvement in any illegal activities. Partner shall ensure no Partner's User is subject to any sanctions regime or is listed on any 'black list' of any government or international body, or in any way engages in any adult, obscene, pornographic, defamatory, libelous, infringing, abusive, or illegal activity, or any activity that promotes hate or discrimination, facilitates the sale of firearms or illegal drugs, or that participates or encourages participation in, illegal activities. Partner shall provide Celsius with any and all documents, policies, procedures, etc. as Celsius may require, demonstrating Partner's ongoing compliance with the aforementioned.

4.7. Each Party represents and warrants that neither it nor any of its affiliates or officers, directors, brokers or agents (i) has violated any applicable anti-terrorism laws, (ii) is publicly identified on the most current list of "Specially Designated Nationals and Blocked Persons" published by the Office of Foreign Assets Control of the U.S. Department of the Treasury ("**OFAC**") or resides, is organized or chartered, or has a place of business in a country or territory subject to OFAC sanctions or embargo programs, (iii) conducts any business or engages in making or receiving any contribution of goods, services or money to or for the benefit of any person described in clauses (ii) above, (iv) deals in, or otherwise engages in any transaction related to, any property or interests in property blocked pursuant to any anti-terrorism law, or (v) engages in or conspires to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in any anti-terrorism law. To the extent Partner or any of its affiliates or officers, directors, brokers or agents violates (i) through (vii) or becomes aware of any Partner's User having violated or potentially violated (i) through (vii), Partner will immediately notify Celsius in writing as soon as it becomes aware of such violations. Each Party reserves the right to research and investigate the other Party and its activities and, at their own discretion, determine whether or not any of the aforementioned practices are being employed. Without limiting any other remedy available to Celsius hereunder or pursuant to any applicable law, either Party may immediately terminate this Agreement at any time for any violation by the other Party of the foregoing representations, warranties and covenants and all Referral Awards will be cancelled and forfeited.

4.8. Partner acknowledges that Celsius reserves the right to update the API infrastructure for security and scalability purposes and the Partner consents to updates without prior notice.

5. **Term and Termination**

5.1. This Agreement will continue for one (1) year (the "**Initial Term**") and may be renewed subject to the mutual agreement of both Parties (the "**Term**"), which may contain new terms and conditions.

5.2. Either Party may terminate this Agreement for convenience at any time, upon thirty (30) days' prior written notice to the other Party.

5.3. Each Party may terminate this Agreement with immediate effect by delivering notice of the termination to the other Party, if the other Party fails to perform, has made or makes any inaccuracy in, or otherwise materially breaches, any of its obligations, covenants, or representations, and the failure, inaccuracy, or breach continues for a period of fifteen (15) days after the injured Party delivers notice to the breaching Party reasonably detailing the breach.

5.4. If either Party becomes insolvent, bankrupt, or enters receivership, dissolution, or liquidation, the other Party may terminate this Agreement with immediate effect.

5.5. Subject to clause 5.6 below, on termination or expiration of this Agreement, each Party's rights and obligations under this agreement will cease immediately.

5.6. Sections 6, 7, 8, 9 and 10 will survive termination or expiration of this Agreement for any reason.

5.7. Upon termination of this Agreement, the Parties undertake all to use all reasonable best endeavours to agree upon and set up a migration plan for the Users.

3

6. **Intellectual Property Rights**

The Parties acknowledge and agree that neither Party will hold any intellectual property rights in the other Party's products including, but not limited to, copyright and trademark rights. Each Party agrees not to claim any such ownership in the other Party's intellectual property at any time prior to, during, or after termination or expiration of this Agreement.

7. **Disclaimer Of Warranty.**

CELSIUS OFFERS NO WARRANTY UNDER THIS AGREEMENT AND TO THE EXTENT ALLOWED BY APPLICABLE LAW ALL EXPRESS OR IMPLIED CONDITIONS, REPRESENTATIONS, AND WARRANTIES INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTIES OR CONDITIONS OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SATISFACTORY QUALITY, OR ARISING FROM A COURSE OF DEALING, USAGE, OR TRADE PRACTICE, OR WARRANTY OF NON-INFRINGEMENT ARE DISCLAIMED.

8. **Indemnification**

8.1. Subject to 8.2 below, Partner will indemnify, defend, and hold harmless Celsius, its affiliates, resellers, employees and agents from and against all liabilities, damages, and costs (including reasonable attorneys' fees) arising out of any claim, demand, suit or proceeding by a third party resulting from (i) Partner's breach of this Agreement, (ii) any act or omission of Partner on anyone on Partner's behalf, or (iii) Partner's breach of applicable law, other than where such liabilities, damages or costs are as a result of fraud, willful misconduct or negligence of Celsius or its affiliates, resellers, employees or agents.

8.2. In the event of breach of contractual obligations by one Party, its affiliates, resellers, employees and agents, the Party shall only be liable towards the other Party for typically foreseeable and occurring damages within this Agreement.

8.3. Neither Party shall under any circumstances whatever to be liable to the other, whether in contract, tort (including negligence), breach of statutory duty, or otherwise, for (i) any loss of profit, sales, revenue, or business, (ii) loss of anticipated savings, (iii) loss of or damage to goodwill, (iv) loss of agreements or contracts, (v) loss of use or corruption of software, data or information, (vi) any loss that is an indirect or secondary consequences of any act or omission of the Party in question.

9. **Confidential Information**

9.1. "**Confidential Information**" shall mean any and all information disclosed by one Party ("**Disclosing Party**") to the other ("**Receiving Party**") regarding past, present, or future marketing and business plans, customer lists, lists of prospective customers, technical, financial or other proprietary or confidential information of the Disclosing Party, formulae, concepts, discoveries, data, designs, ideas, inventions, methods, models, research plans, procedures, designs, formulations, processes, specifications and techniques, prototypes, samples, analyses, computer programs, trade secrets, data, methodologies, techniques, non-published patent applications (together with its attached documents and that such application has been submitted) and any other data or information, as well as improvements and know-how related thereto. Confidential Information includes all tangible materials which contain the information described above, including without limitation, written or printed documents and electronic media. Confidential Information does not include information which as shown by written records, (i) is or becomes generally known or available through no act or failure to act by the Receiving Party; (ii) is already known by the Receiving Party without breaching any confidentiality obligation; (iii) is rightfully furnished to the Receiving Party by a third party without restriction or disclosure; (iv) is independently developed by the Receiving Party without reference to Confidential Information of the Disclosing Party; (v) is released pursuant to a binding order of a government agency or a court so long as prior to any such release the Receiving Party provides the Disclosing Party with a notice so that the Disclosing Party may seek a protective order or other appropriate remedy. In any such event described in clause (v) above, the Receiving Party will

4

disclose only such Confidential Information as is legally required and will exercise reasonable efforts to obtain confidential treatment for any Confidential Information being disclosed. Any disclosure pursuant to the provisions of clause (v) above shall not permit the Receiving Party to issue any press release or otherwise discuss or further disseminate the information required to be disclosed.

9.2. The Receiving Party understands that the Disclosing Party has disclosed or may disclose Confidential Information during the Term of this Agreement or in connection thereto. The Receiving Party agrees: (i) to take commercially reasonable precautions to protect such Confidential Information; (ii) not to use (except as expressly permitted herein) or divulge to any third party any such Confidential Information; (iii) protect and safeguard the Confidential Information against any unauthorized use, disclosure, transfer or publication with at least the same degree of care as it uses for its own confidential or proprietary information, but in no event with less than reasonable care; (iv) to take appropriate measures with all persons acting on its behalf to ensure that such persons are bound by a like covenant of confidentiality, and informing such persons that such Confidential Information shall not be disclosed except as provided herein; and (v) notify Disclosing Party upon discovery of any unauthorized use or disclosure of the Confidential Information and take reasonable steps to regain possession of the Confidential Information and prevent further unauthorized actions or other breach of this Agreement. Whenever requested by the Disclosing Party or upon the expiration or termination of this Agreement, each Party will immediately either return to the other or, at Disclosing Party's request, destroy all manifestations of Disclosing Party's Confidential Information.

10. **Modification**

10.1. Celsius reserves the right, in its sole discretion, to modify any of the terms and conditions contained in this Agreement or any related document upon notice to Partner. If a material modification is unacceptable to Partner, Partner's sole and exclusive recourse will be to terminate this Agreement within seven (7) days following receipt of such notice. Partner's continued performance of any duties under this Agreement beyond the seven (7) days following Company' change notice will be deemed Partner's binding acceptance of the change.

10.2. Without derogating from the generality of Section 10.1 above, Celsius may, at its sole discretion and with no prior notice, cease or suspend the provision of the Services.

11. **Miscellaneous**

11.1. Either Party may enforce any provision of this Agreement by obtaining equitable relief in addition to all other remedies at law or under this Agreement. The non-breaching Party's remedies at law for a breach of any provision of this Agreement may be inadequate and such Party may suffer irreparable harm from any such breach. The rights and remedies of the non-breaching Party under this Agreement are cumulative and not alternative and are in addition to any other right or remedy set forth in any other agreement between the Parties, or which may now or subsequently exist at law or in equity, by statute or otherwise.

11.2. All notices or other communications hereunder shall be in writing and given in person, by registered mail, by an overnight courier service which obtains a receipt to evidence delivery, or by facsimile or email transmission with written confirmation of receipt, addressed to the address set forth in the preamble to this Agreement or to such other address as any Party hereto may designate to the other in accordance with the aforesaid procedure. All notices and other communications delivered in person or by courier service shall be deemed to have been given upon delivery, those given by facsimile or email transmission shall be deemed given on the business day following transmission, and those sent by registered mail shall be deemed given three calendar days after posting.

11.3. Each Party to this Agreement will be excused for delays in performing or from its failure to perform hereunder (other than payment delays) to the extent that the delays or failures result from causes beyond the reasonable control of such Party; provided that, in order to be excused from delay or failure to perform, such Party must act diligently to remedy the cause of the delay or failure.

11.4. Except as provided herein, neither Party may assign or otherwise transfer any of its rights under this Agreement, or delegate any of its obligations or duties under this Agreement, without the other Party's express prior written consent. Notwithstanding anything to the contrary having provided the other party with at least 60 days' notice, either Party may assign this Agreement (i) to any affiliate of that Party (each, an "**Affiliate**") or (ii) to any third party in connection with the sale of all or substantially all of that Party's business or assets, whether by merger, sale of assets, sale of stock, or otherwise without the other Party's prior consent. Subject to the foregoing, this Agreement will be binding upon each Party and its successors and permitted assigns.

11.5. This Agreement shall be interpreted, construed and enforced in accordance with the laws of England and Wales without regard to principles of conflict of laws. Any civil action or legal proceeding arising out of or relating to this Agreement will be brought under the Rules of Arbitration of the International Chamber of Commerce by one arbitrator appointed in accordance with the said Rules. The arbitration shall be held in the English language and the place of arbitration shall be London, England. The arbitrator's decision will be final and binding upon the Parties. All arbitration costs and expenses, including the arbitrator's fees, will be borne equally by the Parties, unless otherwise awarded by the arbitrator in his discretion. Each Party hereby waives any forum non convenience claim in connection with said arbitration or any similar objection or any claims against the enforcement of the arbitrator's ruling in any applicable jurisdiction. If a court of competent jurisdiction should find any part of this Agreement invalid, that provision will be omitted and the remainder of this Agreement remains in effect and be construed so as to best effectuate the original intent and purpose of this Agreement.

11.6. No waiver by either Party of any breach of this Agreement will constitute a waiver of any other breach of the same or other provisions of this Agreement. No waiver by either Party will be effective unless made in writing and signed by an authorized representative of that Party.

11.7. If any provision in this Agreement is invalid or unenforceable in any circumstance, its application in any other circumstances and the remaining provisions of this Agreement will not be affected thereby.

11.8. This Agreement constitutes the entire agreement and understanding of the Parties relating to the subject matter hereof. This Agreement supersedes all prior written and oral agreements and all other communications between Celsius and Partner. Amendments to this Agreement will be effective only if written and signed by Celsius and Partner.

11.9. Each Party shall act only as an independent contractor and not as an employee, agent, servant, or representative of the other. The Parties' relationship will not be construed to be one of employment, joint venture, agency or similar relationship. Neither Party will have, nor will it represent that it has, any power, right or authority to bind the other, or to assume or create any obligation or responsibility, express or implied, on behalf of the other Party or in its name, except as expressly provided otherwise herein. Neither Party shall have any authority to transact business or make any commitments on behalf of the other unless expressly authorized in writing by an officer of such other Party.

11.10. This Agreement may be executed and delivered by the Parties in counterparts (each of which will be considered for all purposes an original) and by facsimile or by e-mail transmission in PDF format, and when a counterpart has been executed and delivered by each of the Parties, by facsimile, e-mail in PDF format or otherwise, all such counterparts and facsimiles will together constitute one agreement.

*[REMAINDER OF PAGE INTENTIONALLY BLANK]*

**IN WITNESS WHEREOF**, the Parties have signed this Agreement effective as of the Effective Date:

| | |
|---|---|
| DocuSigned by:<br>*Camilla Churcher*<br>A7E625D241DA4DE...<br>**Celsius Network Limited** | DocuSigned by:<br>*Ryan Whooley*<br>3CFBF52B044D42C...<br>_____ |
| Name: Camilla Churcher | Name: Ryan Whooley |
| Title: Head of Business Development | Title: Head of Trading & Treasury |

*[SIGNATURE PAGE OF SERVICES AGREEMENT]*

7

## Attachment A

### Third-Party Reliance Terms and Conditions

These Terms and Conditions are to be read in conjunction with the Service Agreement, which, by its terms, incorporates these by reference or have them printed on the back or attached to them.

1. **Definitions**:

    1.1. In these Terms and Conditions, the following terms shall have the meanings ascribed to them below:

"**AML**" means anti-money laundering and counter-terrorism financing;

"**Celsius**" means Celsius Network LTD. (UK), whose address is at 35 Great St. Helen's, London, United Kingdom, EC3A 6AP;

"**Identifying Information**" means the customer's full name, date of birth, citizenship, address and ID number.

"**Partner's Users**" means users engaged with the Partner and wish to use the Services through Partner's Platform, including users referred to the Platform by Partner's affiliates and partners. For the avoidance of doubt, such Partner's Users are not and shall not be deemed as Celsius' users and shall not have any commercial arrangement with Celsius solely based on the terms of this Agreement. Partner's Users are customers of Partner who have been approved by Partner following KYC and AML procedures for use of the Partner' services.

"**Partner**" means _____, whose address is at _____.

"**KYC**" means Know-your-Customer;

"**KYC Documents**" are all KYC and AML due diligence documents and information collected by Partner for each Partner's Users, and maintained by Partner, as required under applicable AML laws and/or by any competent authority;

"**Parties**" means Celsius and Partner;

2. **Terms and Conditions:**

    2.1. Partner hereby agrees and confirms, in relation to each Partner's User that:

        2.1.1. Partner has concluded KYC and AML due diligence measures in relation to this Partner's User, and has obtained and maintained all the information and documents in a manner and form that complies with its AML Policy and applicable law, including but not limited to, the Identifying Information, one form of government-issued photographic identification and proof of verification of the Partner's User's residential address by a document that satisfies Partner's own regulatory requirements.

2.1.2. Partner confirms that it has in place a system of identifying whether a Partner's User is a politically exposed person ("PEP") or an immediate family member or close associate of a PEP. Partner shall promptly notify Celsius, in writing, when it identifies a Partner's User as a PEP (or being connected to a PEP) and acknowledges that such customers must be deemed to present high risk and subject to additional KYC due diligence documents and requirements.

2.1.3. Partner confirms it checks, on acceptance of a customer and regularly from time to time thereafter, all persons associated with any Partner's User against international sanction lists as issued (and updated) including, but not limited to, by the United Nations Security Council and the United States Office of Foreign Assets Control (a/k/a OFAC"). In case of any Partner's User or related person appearing on a sanction list, Partner shall inform Celsius with immediate effect.

2.1.4. Partner confirms that it has a business relationship with the Partner's User and that it has no knowledge or suspicion that any Partner's User is involved in money laundering, terrorism financing or proliferation financing. If this should change at any time, Partner shall immediately notify Celsius of such knowledge and or suspicions, in writing.

2.1.5. Partner consents to Celsius relying on the performance of Partner's identification and record-keeping measures in relation to each Partner's User.

2.1.6. Immediately upon introducing any Partner's Users, Partner shall provide Celsius with such Partner's User's Identifying Information through the API.

2.1.7. Partner undertakes to maintain the KYC Documents for at least five years after the termination of the Service Agreement or the termination of Partner's relationship with the Partner's User for any reason (whichever is later) or for such longer period as is required pursuant to applicable laws.

2.1.8. Partner undertakes to provide Celsius with all KYC Documents without delay and, in any case, within forty-eight (48) hours of Celsius requesting the same. This undertaking to provide documents on request will extend for a period of five years from the termination of the Service Agreement or the termination of Partner's relationship with the Partner's User for any reason (whichever is later) or for such longer period as is required pursuant to applicable laws.

2.1.9. In the event of the termination of Partner's relationship with Celsius as established pursuant to the Service Agreement, Partner undertakes to provide to Celsius all the KYC Documents maintained by Partner in respect of each Partner's User within seven (7) days of such termination.

2.1.10. Partner confirms that it is permitted to provide Celsius with the KYC Documents within the timeframes specified in paragraphs 2.1.6 and 2.1.8 above under applicable laws and regulations.

2.2. Partner represents and warrants to Celsius that:

2.2.1. All information provided by Partner in respect of the Partner's Users at any time, shall be true and accurate, and Celsius will rely on the accuracy of this information in providing its services;

9

DocuSign Envelope ID: 2329DDDB-6ABD-441E-BE15-D8B155308070

2.2.2. Partner is not bound by any data protection, secrecy or other laws which would restrict or prohibit its ability to provide Celsius with the KYC Documents, the Identifying Information and any other relevant information as provided herein;

2.2.3. Partner has obtained from the Partner's User full consent to provide the KYC Documents, the Identifying Information and any other relevant information to Celsius pursuant to paragraphs 2.1.6 and 2.1.8 above; and

2.2.4. To the extent that Partner uses any third-party service providers for any KYC/AML related purpose, Partner has full authority to require from such third-party providers any and all information and documentation to be provided to Celsius hereunder.

2.3. Partner undertakes to provide Celsius, each year for the duration of Partner's relationship with Celsius, with a letter confirming Partner's representations and warranties herein.

2.4. Partner undertakes to immediately inform Celsius in writing of any change in applicable laws or practices which may prohibit or restrict its ability to provide Celsius with the KYC Documents, the Identifying Information and any other relevant information as provided herein.

2.5. Partner acknowledges that these Terms and Conditions shall be valid in respect of every Partner's User until the lapse of five years from the latter of: (1) the termination of the Service Agreement; or (2) the termination of Partner's relationship with the Partner's User for any reason.

2.6. Partner undertakes to immediately notify Celsius (in writing) of any legal, criminal or regulatory action taken against any Partner's User or against Partner by any professional body or authorized body that regulates, supervises and monitors Partner, whether the license, authorization, approval or membership has been suspended, canceled, revoked or withdrawn or in any other way restricted.

2.7. Partner shall notify Celsius immediately if any evidence of the verification of the identity of a Partner's User in Partner records proves unsatisfactory.

2.8. In the event of the termination of Partner's business relationship with a Partner's User, for whatever reason, Partner shall within seven (7) days:
2.8.1. Provide Celsius with the KYC Documents maintained by Partner in respect of the Partner's User; or
2.8.2. Notify Celsius in writing of the arrangements, satisfactory to Celsius that Partner will put in place to ensure that Celsius will be able to access the KYC Documents of such Partner's User whenever requested.

2.9. Partner shall indemnify Celsius against all actions, claims, costs (including all legal costs), demands, expenses, liabilities and proceedings which may be taken or made or incurred by Celsius directly pursuant to or in connection with its reliance on the representations and warranties contained in these Terms and Conditions.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

DocuSign Envelope ID: 2329DDDB-6ABD-441F-BE15-D8B155208072

IN WITNESS WHEREOF, the Parties have signed these Terms and Conditions effective and thereby incorporated in the Service Agreement on the Service Agreement's effective date:

_____         _____

Celsius Network Limited                 _____

Name:                                   Name:

Title:                                  Title:

**EXHIBIT B**

**ASSIGNMENT AND AMENDMENT TO OMNIBUS WALLET SERVICE AGREEMENT**

THIS ASSIGNMENT AND AMENDMENT TO OMNIBUS WALLET SERVICE AGREEMENT (this "**Amendment**") dated August 19, 2021 is made by and between Celsius Network Limited ("**Celsius UK**"), Celsius Network LLC ("**Celsius US**"), Celsius EU UAB ("**Celsius EU**") and Voyager Digital LLC, ("**Partner**") (each, a "**Party**" and collectively, the "**Parties**" and Partner and Celsius UK, the "**Original Parties**").  Any capitalized terms used but not defined herein shall have the meanings given to them in the Agreement.

**WHEREAS**, the Original Parties hereto entered into that certain Omnibus Wallet Service Agreement dated as of 06/12/2020 (the "**Agreement**");

**WHEREAS,** in connection with Celsius UK, Celsius US and Celsius EU migrating the provision of certain services from Celsius UK to Celsius US and Celsius EU (the "**Migration**"), Celsius UK wishes to assign to Celsius US and Celsius EU all of its rights, title and interest under the Agreement and Celsius US and Celsius EU wish to assume all of Celsius UK's duties and obligations under the Agreement;

**WHEREAS**, in connection with the Migration, the Parties now desire to amend the Agreement regarding contractual modifications as further set forth herein.

**NOW, THEREFORE**, for and in consideration of the mutual promises, covenants and obligations contained herein, the Parties hereto agree as follows:

1. <u>Assignment and Assumption</u>. Pursuant to Section 11.4 of the Agreement, Celsius UK hereby assigns, grants, conveys and transfers to Celsius US and Celsius EU all of Celsius UK's right, title and interest in and to the Agreement. Celsius US and Celsius EU hereby accept such assignment and assume all of Celsius UK's duties and obligations under the Agreement and agree to pay, perform and discharge, as and when due, all of the obligations of Celsius UK under the Agreement accruing on and after the date hereof. Partner hereby consent to the foregoing assignment and assumption and waive, in this instance, their rights to receive 60 days notice of the foregoing assignment from Celsius UK to its affiliates, Celsius US and Celsius EU.
2. <u>Terms of Use</u>. Partner understands and acknowledges that, in connection with the Migration, the Services will be subject to updated terms of use with Celsius US and Celsius EU, and that Celsius US and Celsius EU may, at any time and in their sole discretion, modify their terms of use as available at their website (http://celsius.network). Celsius US and Celsius EU shall endeavor, but shall not be obligated, to provide Partner advance notice of any updates or changes to Celsius US' and Celsius EU's terms of use.
3. <u>Extension of Term</u>: The Parties agree to extend the Term for an additional period of two (2) years from the date of this Amendment. All provisions of the Agreement that relate to the Term and termination of the Agreement remain in full force and effect.
4. <u>Amendment to Section 11.5</u>: Section 11.5 of the Agreement is hereby amended by deleting the present section in its entirety and substituting the following in lieu thereof:

"This Agreement shall be interpreted, construed and enforced in accordance with the laws of state of New York without regard to principles of conflict of laws. Any civil action or legal proceeding arising out of or relating to this Agreement will be brought under the Rules of the American Arbitration Association by one arbitrator appointed in accordance with the said Rules. The arbitration shall be held in the English language and the place of arbitration shall be Manhattan, New York. The arbitrator's decision will be final and binding upon the Parties. All arbitration costs and expenses, including the arbitrator's fees, will be borne equally by the Parties, unless otherwise awarded by the arbitrator in his discretion. Each Party hereby waives any forum nonconvenience claim in connection with said arbitration or any similar objection or any claims against the enforcement of the arbitrator's ruling in any applicable jurisdiction. If a court of competent jurisdiction should find any part of this Agreement invalid, that provision will be omitted and the remainder of this Agreement remains in effect and be construed so as to best effectuate the original intent and purpose of this Agreement."

This Amendment to the Agreement shall be effective as of the date of this Amendment. Except as hereby modified, the Agreement shall remain in full force and effect.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, each party to this Amendment has caused it to be executed on the date first written above.

**CELSIUS NETWORK LIMITED**

By: *Roni Cohen Pavon*
(Signature)

Name: Roni Cohen Pavon
Title: Chief Revenue Officer
Email: Roni@celsius.network

**CELSIUS NETWORK LLC**

By: *Roni Cohen Pavon*
(Signature)

Name: Roni Cohen Pavon
Title: Chief Revenue Officer
Email: Roni@celsius.network

**CELSIUS EU UAB**

By: *Roni Cohen Pavon*
(Signature)

Name: Roni Cohen Pavon
Title: Chief Revenue Officer
Email: Roni@celsius.network

**Voyager Digital LLC**

By: *Evan Psaropoulos*
(Signature)

Name: Evan Psaropoulos
Title: CFO
Email: epsaropoulos@investvoyager.com