**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF KATTEN**
**MUCHIN ROSENMAN LLP AS SPECIAL COUNSEL FOR DEBTOR VOYAGER**
**DIGITAL LTD., ON BEHALF OF AND AT THE SOLE DIRECTION OF THE**
**INDEPENDENT DIRECTOR, EFFECTIVE AS OF NOVEMBER 11, 2022**

Upon the application (the "Application")[2] of Voyager Digital Ltd., one of the above-captioned debtors and debtors in possession ("TopCo") for the entry of an order (this "Order") authorizing TopCo to retain and employ Katten Muchin Rosenman LLP ("Katten") as special counsel for TopCo, on behalf of and at the sole direction of Matthew D. Ray (the "Independent Director"), pursuant to sections 327(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"); and the Court having reviewed the Application, the Declaration of Steven J. Reisman, a partner of Katten (the "Reisman Declaration"), and the declaration of Matthew D. Ray, Independent Director for Voyager Digital Ltd. (the "Ray Declaration" and, together with the Reisman Declaration, the "Declarations"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

*Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Application is in the best interests of TopCo's estate, its creditors, and other parties in interest; and this Court having found that TopCo's notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "<u>Hearing</u>"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Application is granted as set forth herein.

2.      TopCo is authorized pursuant to 327(a) and 328 of the Bankruptcy Code to retain and employ Katten as of November 11, 2022 as special counsel, on behalf of and at the sole direction of the Independent Director, to advise the Independent Director in connection with investigating certain historical transactions between TopCo and certain of its subsidiaries, in accordance with the terms and conditions set forth in the Application and in the Engagement Letter attached hereto as **<u>Exhibit 1</u>**.

3.      Katten shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with TopCo's chapter 11 case in compliance

with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Local Rules, and any other applicable procedures and orders of the Court.

4.     Notwithstanding anything to the contrary in the Application, the Engagement Letter, or the Declarations attached to the Application, the reimbursement provisions allowing the reimbursement of fees and expenses incurred in connection with participating in, preparing for, or responding to any action, claim, suit, or proceeding brought by or against any party that relates to the legal services provided under the Engagement Letter and fees for defending any objection to Katten's fee applications under the Bankruptcy Code are not approved pending further order of the Court.

5.     Katten shall not charge a markup to TopCo with respect to fees billed by contract attorneys who are hired by Katten to provide services to TopCo and shall ensure that any such contract attorneys are subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code and Bankruptcy Rules.

6.     Katten shall provide ten-business-days' notice to TopCo, the U.S. Trustee, and the Committee before any increases in the rates set forth in the Application or the Engagement Letter are implemented and shall file such notice with the Court.  The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

7.     TopCo and Katten are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

8.     Katten shall use its reasonable best efforts to avoid any duplication of services provided by any of Debtors' other retained professionals in these chapter 11 cases.

9.      Notice of the Application as provided therein is deemed to be good and sufficient notice of such Application, and the requirements of the Local Rules are satisfied by the contents of the Application.

10.     To the extent the Application, the Reisman Declaration, the Ray Declaration, or the Engagement Letter is inconsistent with this Order, the terms of this Order shall govern.

11.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

12.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: January 25, 2023

**s/Michael E. Wiles**
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Engagement Letter**

# Katten

50 Rockefeller Plaza
New York, NY 10020-1605
212.940.8800 tel
www.katten.com

**Steven J. Reisman**
sreisman@katten.com
212.940.8700 direct

Dated as of November 11, 2022

*VIA EMAIL: mray@pppllc.com*

Matthew Ray
Independent Director of
Voyager Digital Ltd.
Portage Point Partners
300 North LaSalle, Suite 1420
Chicago, Illinois  60654

Re:  **Engagement Agreement**

Dear Mr. Ray:

We are pleased to confirm the engagement of Katten Muchin Rosenman LLP (the "Firm") to act as special counsel to Voyager Digital Ltd. ("Voyager Ltd." or "you" or "Client" or "Company") to render independent services at the sole direction of Matthew Ray in his capacity as the independent director of Voyager Ltd. (the "Independent Director"), in connection with (a) investigating certain transactions between the Company and certain of its subsidiaries, and (b) the Chapter 11 cases of *Voyager Digital Holdings, Inc.* and its debtor affiliates (collectively, the "Debtors") jointly administered at Bankruptcy Case No: 22-10943, pending before the Honorable Judge Michael E. Wiles in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") as it relates to the preceding clause (a) (collectively, the "Matter").  To the extent the Client requests and the Firm agrees to provide additional services, the terms and scope of such services will be set forth in an addendum to this Engagement Agreement.

This letter and the enclosed Terms of Engagement, which contains a provision on conflicts of interest, describe the basis on which the Firm will provide legal services to the Client.

The Company has agreed to be responsible to the Firm for all reasonable legal fees and expenses incurred in this Matter as described in this engagement agreement. This undertaking by the Company is made with the express understanding that the sole professional obligation of myself and the Firm is to the Client at the sole direction of the Independent Director.  The Firm is not required to disclose any legal strategy, theory, plan of action, or the like to the Company, and the payment of legal fees by the Company to the Firm in no way depends upon such disclosure.

**Katten**

Matthew Ray
Dated as of November 11, 2022
Page 2

Notwithstanding anything contained herein, the the parties hereto agree that the Firm shall have a professional relationship with the Independent Director as a result of the rendering of legal services by us in connection with the matter, and the Independent Director shall control any attorney-client, work product, or other privilege belonging to the Company in connection with the Firm's work or privileged communications on the Matter.

Nevertheless, certain confidential communications between the Firm and counsel for the Debtors may, with the Independent Director's consent, occur. These confidential communications will be subject to any and all applicable privileges, to the extent provided under law and agreed upon by the Firm and counsel for the Debtors. Once again, however, the payment of legal fees and expenses under this agreement is neither conditioned upon nor dependent upon the Firm's cooperation with counsel for the Debtors or any other party.

On a monthly basis, the Firm will send a detailed invoice to the Client providing a fulsome description for all timekeeper entries and a summary of work performed during the billing period. The Firm will apply for compensation for professional services rendered and reimbursement of expenses incurred in this matter in compliance with 11 U.S.C. §§ 330 and 331 and applicable provisions of the Federal Rules of Bankruptcy Procedure, the local rules of the Bankruptcy Court, the Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief [Docket No. 236], and any other applicable procedures and orders of the Bankruptcy Court.

I will be the lawyer at the firm with the primary responsibility for the Matter and understand that it is your expectation, as well as my own intention, that I be involved in managing all aspects of this engagement. I will be assisted by Shaya Rochester, and such other partners, associates, and other members of the Firm as appropriate. As indicated in the Terms of Engagement, our fees are based upon our hourly rates unless otherwise noted herein.

I understand that Voyager Digital Holdings, Inc. has engaged Kirkland & Ellis LLP ("K&E") as general chapter 11 counsel to the Debtors, including the Company. The services rendered and functions performed by the Firm will not be duplicative of work performed by K&E or any other law firm retained by the Company.

Please review the Terms of Engagement (which immediately follow the signature page), with the assistance of independent counsel if you wish, and let me know if you have any questions about them. If all the terms are satisfactory, please indicate your consent by signing this letter and returning it to me. However, your continuing instructions in this matter will amount to your acceptance of the terms of this letter, including the Terms of Engagement (collectively, the "Terms"). All parties to this agreement agree that a digital signature shall be effective to prove each party's agreement to the Terms. Furthermore, the parties agree that the Terms may be proven

# Katten

Matthew Ray
Dated as of November 11, 2022
Page 3

through an electronic copy in digital format, and that no "original" hard-copy document need be retained to prove the Terms.

A schedule of the Firm's standard hourly rates is attached as <u>Exhibit A</u>. The Firm's disbursements that are billed on a per-unit basis are attached as <u>Exhibit B</u>. The Firm's wiring instructions are attached as <u>Exhibit C</u>, and the Firm's W-9 Taxpayer Certification is attached as <u>Exhibit D</u>.

Thank you for allowing us the privilege of this representation. We value and appreciate the trust and confidence you have placed in us and we assure you we will do our best to see that your expectations are satisfied.

My best.

Sincerely,

*/s/ Steven J. Reisman*

Steven J. Reisman

w/attachments

cc:    Joshua A. Sussberg, P.C. (w/attachments, via email: joshua.sussberg@kirkland.com)
       Christine A. Okike, P.C. (w/attachments, via email: christine.okike@kirkland.com)
              (Kirkland & Ellis LLP)
       Shaya Rochester, Esq. (w/attachments, via email: srochester@katten.com)
              (Katten Muchin Rosenman LLP)

# Katten

Matthew Ray
Dated as of November 11, 2022
Page 4


This letter and the Terms of Engagement are agreed to:

**MATTHEW RAY**
**INDEPENDENT DIRECTOR OF**
**VOYAGER DIGITAL LTD.**


By: _____

Name: Matthew Ray
Title:   Independent Director
        Dated as of November 11, 2022

**Katten**

Matthew Ray
Dated as of November 11, 2022
Page 5


Acknowledged and agreed to:

**VOYAGER DIGITAL LTD, a Canadian Limited Company**


By: _____

Name: David Brosgol

Title: General Counsel

Dated as of November 9, 2022

# KATTEN MUCHIN ROSENMAN LLP
## TERMS OF ENGAGEMENT

The information below describes the terms that apply to the legal services provided for you by Katten Muchin Rosenman LLP (the "Firm"). We encourage you to discuss any of these Terms with us at any time. If modifications to the Terms are needed, you should discuss that with us so that agreement on changes can be reached and reduced to writing. All references to "you" or "your" means only the client or clients identified in our engagement letter. **Individuals or entities that are related to or affiliated with you, such as partners, officers, directors, stockholders, parent companies, related companies, or family members, are not clients, unless we otherwise agree in writing.**

I.      **Scope of Representation**.  The scope of the work we will do for you is limited to the description stated in our engagement letter. Any changes or additions to the scope of our work, which we would be pleased to consider, must be agreed to and memorialized by letter or email. Unless that description states otherwise, **our engagement does not include responsibility for:** (1) review of your insurance policies to determine the possibility of coverage for our fees and costs or for the claim asserted against you, (2) notification of your insurance carriers about a matter, (3) advice to you about your disclosure obligations concerning a matter under the federal securities laws or any other applicable law, or (4) advice to you about tax issues that relate to a matter. If we agree to represent you in additional matters, we will do so in writing by letter or email, and the Terms of our engagement will remain the same for these additional matters unless changed by agreement in writing.

Additionally, if in response to your request or by requirement of lawful process we: testify; gather and/or produce documents; respond to document hold or production requests; or respond to any other requests in connection with possible, threatened or actual proceedings commenced by third parties that relate to our representation of you, you agree to pay us our reasonable fees and costs incurred.

II.     **Staffing.**  Steven J. Reisman will have the primary responsibility for our relationship. We assign additional lawyers and other personnel when needed based upon the type of work and the appropriate experience level required.

III.    **Client Responsibilities.**  You agree to use best efforts to provide us with all information that we believe is necessary or appropriate to fulfill our professional responsibilities in this matter and to cooperate with us in matters such as fact investigation, preparation of pleadings, discovery responses, settlement conferences, etc. You will designate one or more persons to give us instructions and authority to receive our requests and inquiries. You further agree that without our express written consent, you will not use our name or the fact of your engagement of us in any form of advertising or solicitation of business.

IV.     **Financial Arrangements.**

        A.      Fees and Expenses.  Our fees are based primarily upon the hourly rates of our lawyers and other personnel in effect when the services are performed. These rates change periodically based upon economic factors and the experience level of our personnel. We

are affiliated with Katten Muchin Rosenman UK LLP of London, England, and if we obtain advice or services on your behalf from that firm, we will include their time and expenses on our bill.

Expenses include items such as consultants, experts, filing fees, court reporting fees, travel costs, overnight or other special mail services, messenger services, photocopies, long distance telephone, outgoing faxes, research service charges (e.g., LEXIS), secretarial and other staff overtime charges (when required to meet the needs of the matter), and other special services such as document imaging. Certain of these charges are adjusted to include administrative and overhead expenses incurred by the Firm to provide the billed service. With respect to costs incurred and payable to third parties, such as court reporters or experts, it is our usual policy to forward those bills to you for payment directly to the third party, and you agree to pay those fees directly to the provider. As an accommodation to you, however, we may advance those costs on your behalf and include them in our monthly bills. Some large disbursements may be forwarded to you for direct payment. Some charges may not be in the system at the time of monthly billing and will appear on a later bill.

B.      Fee Deposits.  Intentionally omitted.

C.      Billing and Payment.  We generally forward our statements monthly; however, we may request payment more frequently, such as on a weekly or bi-weekly basis. The statements will include a brief description of the work performed, the date the work was performed, the time required to do the work, and the expenses incurred. Payment is due within 20 days of mailing of our invoice. We reserve the right to terminate our representation of clients who do not pay promptly. We do not and cannot guarantee the outcome of any matter, and payment of our fees and disbursements is not conditioned on any particular outcome.

**V.      Electronic Communication.**  The use of email can be an efficient means of communication, and we use it often in communicating with clients. Some clients also use instant messaging as a means of communication. However, these electronic communications can be delayed or blocked (for example, by anti-spam software) or otherwise not transmitted. You must not assume that an email or instant message sent to us was actually opened and read by us unless you receive a non-automated reply message indicating that we have read your message.

**VI.      Responses to Auditors' Inquiries.**  We are frequently asked to provide information to auditing firms regarding client legal matters and we respond to those inquiries with the same level of care and professionalism used to handle the client's other legal work. We will accordingly charge for those services at the same rates. When you make a written request that we provide information to an auditing firm, we will deem your request to be your consent for us to disclose the requested information on your behalf. Additionally, when an auditing firm makes a written request for information on your behalf, that request will be deemed to be your consent for us to disclose that information to the auditing firm.

**VII.      Conflicts of Interest Issues.**  As you know, we are a large general services law firm with many clients and with offices located in Charlotte, North Carolina; Chicago, Illinois; Dallas,

Texas; Los Angeles, California (Century City and Downtown); New York, New York; Orange County, California; Washington D.C.; and Shanghai, China, and we have an affiliate in London, England.  It is possible that, during the course of our engagement, an existing or future client may seek to hire the Firm in connection with an actual or potential transaction or pending or potential litigation or other dispute resolution proceeding in which such other client's interests are or potentially may become adverse to your interests.

Because the duty of loyalty would otherwise prevent the Firm from being adverse to a current client, rules of professional conduct prevent the Firm from accepting such engagements during the Firm's representation of you absent informed consent by you and the waiver of the duty of loyalty.  Notwithstanding any affirmative consent and waiver, the Firm will not undertake any such representation unless we first reasonably determine that we will be able to provide competent and diligent representation to both of the affected clients. We also will continue to maintain the confidentiality of the confidential information you provide to us in the course of the Firm's engagement by you, and will not use such information for any purpose except for the benefit of, and on behalf of, you without your written consent.

Potential adverse consequences may result from the Firm's representing parties that are adverse to you.  These may include a perception that the Firm's loyalty and independence of judgment with respect to you are impaired.  Also, the Firm's representation of parties adverse to you may come at a time when it would harm your interests to terminate the services of the Firm, or after expenditures of fees and costs to the Firm that might need to be replicated by new counsel.  The Firm encourages you to have this conflicts waiver reviewed by independent counsel acting on your behalf before agreeing to these Terms of Engagement.

Further, in the course of our representation of you, it may be necessary for our lawyers to analyze or address their professional duties or responsibilities or those of the Firm, and to consult with the Firm's General Counsel, Deputy General Counsel, Conflicts Counsel, or other lawyers in doing so.  To the extent we are addressing our duties, obligations or responsibilities to you in those consultations, it is possible that a conflict of interest might be deemed to exist as between our Firm and you.  As a condition of this engagement, you waive any conflict of interest that might be deemed to arise out of any such consultations.  You further agree that these consultations are protected from disclosure by the Firm's attorney-client privilege.  Nothing in the foregoing shall diminish or otherwise affect our obligation to keep you informed of material developments in your representation, including any conclusions arising out of such consultations to the extent that they affect your interests.

**VIII.    Arbitration of Disputes.**  At the prior request of the United States Trustee in other cases, this paragraph has been removed.

**IX.    Conclusion of Representation.**  Our representation of you will terminate when we send you our final statement for services rendered in this matter.  We may also terminate our representation for any reason consistent with rules of professional responsibility, including conflicts of interest or your failure to pay our fees and expenses.  Our representation may also be terminated upon your request.  Following termination, any nonpublic information you have supplied to us which is retained by us will be kept confidential in accordance with applicable rules of professional responsibility.  Once our representation is concluded, we will not be obligated to

take any steps such as keeping track of deadlines, filing papers, pursuing appeals, or monitoring or advising you about changes in the law or circumstances that might bear upon the concluded matter.

**X.    Disposition of Client Files.**  Upon conclusion of your representation, we may return to you your original papers, documents and/or other property that you provided to the Firm during our engagement. You agree to accept the return of such documents and/or property.  If you so request, we will also provide to you, at your expense, copies or originals of your complete file.  We reserve the right to make, at our expense, copies of all documents generated or received by us in the course of our representation of you.  The Firm will not provide copies or originals of the Firm Administrative or Matter Administration files pertaining to the matter, which will be retained by the Firm.  All such documents retained by the Firm, including client files (including any original documents and/or property that we attempted unsuccessfully to return to you) and Firm Administrative or Matter Administration files, will be transferred to the person responsible for administering our records retention program.  For various reasons, including the minimization of unnecessary storage expenses, we reserve the right to destroy or otherwise dispose of any documents or other materials retained by us within a reasonable time, but not less than seven (7) years after the matter is closed.  We will not destroy, discard or otherwise dispose of any such documents without first providing you with thirty (30) days' prior written notice.

**EXHIBIT A**

**RATES**

| PROFESSIONALS | STANDARD RANGE |
|---|---|
| Partner | $835 - $1,795 |
| Associate | $300 - $935 |
| Counsel and Special Staff | $460 - $1,230 |
| Of Counsel | $735 - $1,440 |
| Paralegal | $90 - $650 |

## EXHIBIT B

## PER UNIT EXPENSES

| DESCRIPTION | COST PER PAGE |
| --- | --- |
| Fax | $1.60 |
| Photocopy Costs | $  .20 |
| Photocopy – Wide Format | $1.00 |
| Color Printing / Copies | $  .25 |