# EXHIBIT 9

**SULLIVAN & CROMWELL LLP**

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

**125 Broad Street
New York, New York 10004-2498**

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

July 22, 2022

Voyager Digital Holdings, Inc.

    c/o Jared Dermont
    Moelis & Company LLC
    399 Park Avenue, 4th Floor
    New York, NY 10022

    c/o Joshua A. Sussberg, P.C.
    Kirkland & Ellis LLP
    601 Lexington Avenue
    New York, NY 10022

    Re:    <u>Customer Liquidity and Asset Purchase Agreement</u>

Dear Jared and Josh,

    FTX Trading Ltd and West Realm Shires Inc. (collectively, "FTX") and Alameda Ventures Ltd ("Alameda") have asked us to convey their joint proposal to enter into a Customer Liquidity and Asset Purchase Agreement, subject to the terms and conditions we describe in this letter and more fully in the attached term sheet.

    FTX and Alameda have heard the statements made by Voyager about the importance of protecting customers. The chapter 11 case exposes customers with unsecured claims to extended illiquidity and a substantial risk of further losses, without the right to the appreciation of the specific crypto assets in which they originally invested.

    FTX and Alameda each recognizes the scope of customer losses and jointly propose a transaction to mitigate the harm. Under this transaction, Voyager's customers would receive at least partial liquidity immediately, and the opportunity to withdraw that liquidity or freely reinvest it in their choice of digital assets. Our approach is not novel. It is consistent with how other failed retail financial institutions have prioritized the upfront protection of customers.

Specifically, as described in more detail in the attached term sheet, FTX and Alameda jointly propose a two-prong transaction whereby:

- Alameda will purchase all Voyager digital assets and digital asset loans (other than the loans to Three Arrows Capital ("3AC"), discussed below) in immediately available cash at fair market value. Alameda would pay the cash value of Voyager's digital assets into escrow; and

- FTX (or an applicable subsidiary thereof) will offer those Voyager customers who on-board with FTX the ability to receive their share of that cash in an account at FTX. Customers could withdraw their cash without gates or lockups or, if they choose, re-invest it in digital assets of their choice. FTX would waive the first month of trading fees for Voyager customers who wish to purchase digital assets rather than withdraw their cash.

Customers are under no obligation to sign up with FTX and doing so would be fully voluntary. FTX is also not requiring any minimum number of customers who would need to agree to participate. Any customer that does not wish to sign up with FTX would continue to retain all of their rights and claims in the bankruptcy proceedings, but would not receive early access to a distribution on their claim via FTX.

As unsecured creditors, Voyager's customers have a fixed US Dollar claim based on the value of digital assets in their wallets on July 5 (the "Petition Date"). The allowable amount of an unsecured claim does not change with fluctuations in the value of the debtor's property after the Petition Date.[1] However, customers are exposed to the risk of depreciation in cryptocurrency prices, as well as case costs, because each of these will reduce recoveries on the fixed US Dollar claim of the customer. This "one-way" risk results from customers having unsecured claims rather than property rights, and Voyager operating with co-mingled assets before and after the Petition Date.

Our proposal aims to solve this problem. Even those customers who wish to be "long" cryptocurrency should not be forced to do so by holding unsecured claims in a bankrupt company, at least not when there is an opportunity to receive cash immediately.

---

[1] "Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, **shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition**, and shall allow such claim in such amount . . . ." 11 U.S.C. § 502(b) (emphasis added). For example, unsecured foreign currency claims are converted to US Dollar claims on the same basis.

-3-

A few other notes with respect to the proposal. First, FTX and Alameda are not interested in purchasing, and plan to leave behind in the bankruptcy estate, all 3AC-related litigation claims. The chapter 11 case is the best place to pursue recoveries relating to Voyager's loan to 3AC. We expect Voyager will use its bankruptcy powers to monetize these claims and provide supplemental recoveries to customers.

Second, Alameda will write off its own $75 million loan claim as part of the proposed transaction. This claim would otherwise share in supplemental recoveries. By writing off our loan, we will permit customers and other unsecured creditors to receive 100% of any incremental recoveries from the enforcement of the 3AC claim and any related litigation claims.

Third, we recognize that Voyager may have other ways to provide customers with liquidity with respect to 'FBO' cash accounts. We are open to including or excluding these accounts from the transaction, as best for customers.

Fourth, FTX and Alameda do not ascribe independent value to the Voyager brand or intellectual property. The proposal contemplates acquiring the brand and IP to avoid any customer confusion. However, if Voyager has other parties interested in purchasing the Voyager brand or IP on a stand-alone basis, we can explore modifying the price and terms of the proposal to accommodate a separate transaction.

Time is of the essence. Whatever goodwill exists with customers continues to erode with the passage of time. More importantly, every day that passes with customers having their account value frozen exposes them to downside risk of cryptocurrency depreciation without a way to sell or hedge.

FTX and Alameda would like to move immediately to document and close this transaction. They will pay their own expenses and seek no financial bid protections. However, they are not in a position to hold their offer open subject to the continued loss of value that typically accompanies the insolvency of retail financial institutions. We request an initial response to the proposal by Tuesday, July 26, and would aim for documentation to be in final form for execution by Saturday, July 30.

We understand that you are soliciting interest in Voyager's business from other potential buyers and have asked for indications of interest by Friday, July 29. We have no concern with your doing so while also working expeditiously with us. Voyager can then decide whether to sign our agreement depending on the terms and viability of the other bids received. If Voyager chooses to sign with FTX and Alameda, we would do so over the weekend of July 30 and seek prompt bankruptcy court approval of the transaction, which we expect to implement pursuant to section 363 of the Bankruptcy Code.

-4-

        Attached is a term sheet describing the legal and financial terms of the customer liquidity transaction, as well as a short annex describing some of its benefits for FTX and Voyager customers.  As with other financial institution insolvencies, we would seek expedited approval from the Bankruptcy Court of the customer liquidity transaction. We would aim to have a closing by August 17, so that we can begin customer migration promptly.

        We are available to discuss this proposal with you at your earliest convenience.

        Sincerely,

        Andy Dietderich

cc:    Mitchell S. Eitel (Sullivan & Cromwell LLP)

# Annex A

## Term Sheet:  Customer Liquidity and Asset Purchase Agreement

*The following summary has been prepared to facilitate the preparation of a definitive agreement on the terms below (the "<u>Agreement</u>").  The summary is not binding and may be missing material terms, so no customer or other stakeholder should rely on anything herein.  A binding commitment will require agreed documentation and internal approvals not yet obtained.*

| | |
|---|---|
| **Buyers** | One or more of FTX Trading Ltd. and its affiliates ("<u>FTX International</u>"), and West Realm Shires Inc. and its affiliates ("<u>FTX US</u>", and together with FTX International "<u>FTX</u>"), and Alameda Ventures Ltd. and its affiliates (together, "<u>Alameda</u>"). |
| | FTX and Alameda are independently partnering together to make a joint proposal (each, a "<u>Buyer</u>" and collectively, the "<u>Buyers</u>").  FTX and Alameda will execute the Agreement and take financial responsibility for the performance by all applicable parties of the obligations of the Buyers. |
| **Seller** | Voyager Digital Holdings, Inc., Voyager Digital Ltd. and Voyager Digital, LLC, jointly and severally (the "<u>Sellers</u>"). |
| **Acquired Assets** | Subject to the terms hereof, on the Closing Date (as defined below), the applicable Buyer will purchase, and the Sellers will sell, as part of a simultaneous transaction (the "<u>Acquisition</u>"), all right, title and interest in the following assets (the "<u>Acquired Assets</u>"), free and clear of any liens, claims, interests and encumbrances, under section 363 of the Bankruptcy Code: |
| | 1. all digital assets and digital asset loans (other than loans to Three Arrows Capital and its affiliates) ("<u>Digital Assets</u>"); |
| | 2. all customer information and exclusive referral rights with respect to customer accounts, including digital asset and  "FBO" cash accounts ("<u>Customer Accounts</u>"); |
| | 3. all preference, avoidance or other claims against customers or relating to Digital Assets, other than claims related to the loans to Three Arrows Capital; |
| | 4. all trademarks and other intellectual property of the |

|  | |
|---|---|
|  | Sellers used or useful in the Sellers' business operations (the "Brand Assets"); and<br><br>5.  at the option of the Buyers, any contracts, documents, accounts, rights, causes of action, books and records and other property or assets related to any of the foregoing. |
| **Excluded Assets** | "Excluded Assets" will include:<br><br>1.  all cash;<br>2.  all claims and causes of action relating to loans to Three Arrows Capital;<br>3.  all other claims and causes of action not associated with an Acquired Asset; and<br>4.  insurance policies and related rights. |
| **Assumed Liabilities** | None, other than obligations under any contract that the Buyers expressly agree to assume and perform.<br><br>For the avoidance of doubt, FTX will not assume or perform the user agreements entered into by the Sellers with customers. Instead, FTX intends to on-board customers on FTX, subject to KYC requirements (utilizing the Sellers' files and relevant information to the fullest extent possible) and confirmation of customers' eligibility for an FTX account (see "New Customer Accounts at FTX" below).<br><br>Any customer with a 'FBO' account with an available cash balance will have the opportunity to transfer that cash balance to an 'FBO' account through FTX pursuant to such mechanism as the Buyers and the Sellers agree. |
| **Purchase Price** | The purchase price (the "Purchase Price") will comprise:<br><br>1.  with respect to Digital Assets, the Fair Market Value (as defined below) of such Digital Assets as of the second trading day immediately prior to the Closing Date (as defined below) or such other reference date as the parties may agree;<br>2.  with respect to customer information and exclusive referral rights with respect to customer accounts, US$15 million; and<br>3.  with respect to all other Acquired Assets, the |

| | |
|---|---|
| | cancellation of all amounts due under Alameda's $75 million loan to Voyager Digital Holdings, Inc. (on-lent to Voyager Digital, LLC). |
| | The "Fair Market Value" of any Digital Assets will be calculated by Alameda in good faith based on market practice and available pricing information, subject to confirmation by the Sellers of the reasonableness of such determination. If the parties cannot agree on the price of any specific Digital Asset, such Digital Asset shall constitute an Excluded Asset. |
| **Seller Option to Exclude Brand Assets** | The Sellers may by notice to the Buyers at any time prior to 11:59 p.m., Monday, August 1, notify the Buyer that they would like to exclude the Brand Assets from the Acquisition, in which case the parties will mutually agree on a reduction in the Purchase Price. If the parties are unable to agree on such a reduction, then the Acquisition shall not proceed. |
| **New Customer Accounts at FTX** | Each customer with a Customer Account who completes FTX's on-boarding and KYC process will receive a new account with FTX International or FTX US (their "FTX Account") into which the Sellers shall deposit all distributions payable to such customer with respect to the chapter 11 cases. These distributions will include an initial cash distribution (the "Initial Distribution") paid within 45 days of the Closing Date equal to the maximum amount the Sellers determine (in consultation with the Buyers) to be appropriate for distribution at such time, with subsequent distributions payable pursuant to any chapter 11 plan or as otherwise approved by the Bankruptcy Court. |
| | All amounts paid for the benefit of a customer to their FTX Account shall be payable in USD and immediately available to such customer for trading or withdrawal on the FTX platform. FTX will waive transaction fees for the first month of trading in order to allow customers to re-invest into the cryptocurrencies of their choice that are offered on FTX's platform. |
| | The procedures for the orderly and transparent migration of customers onto the FTX platform shall be developed by the Buyers, reasonably acceptable to the Sellers and subject to approval by the Court. Prominent links on the |

| | home page for all Voyager mobile and web platforms shall direct customers to the FTX migration process. |
|---|---|
| **Funding** | The Buyers shall pay the Purchase Price for the Digital Assets on the Closing Date into an escrow account with a financial institution selected by the Buyers and reasonably acceptable to the Sellers (the "Escrow Account").  During the first 45 days after the Closing Date, funds in the Escrow Account shall be released solely to fund Initial Distributions to FTX Accounts when established as contemplated above. After 45 days, the remaining balance shall be paid to the Sellers. |
| | The Purchase Price for all other Acquired Assets shall be paid to the Sellers on the Closing Date. |
| **Court Approval and Closing** | The Buyers' commitment would be subject to strict compliance with the following milestones, which reflects the accelerated timetable common for the acquisition of customer accounts upon the bankruptcy of a financial institution: |
| | 1. a motion for approval of the Agreement and the Acquisition filed in agreed form on or prior to August 3, 2022; |
| | 2. court approval of the Agreement and the Acquisition on or prior to August 15, 2022; and |
| | 3. closing on a date (the "Closing Date") on or prior to August 17, 2022. |
| | The Buyers recognize that this timeline is subject to the scheduling orders of the Court as well as any regulatory requirements applicable to either party, but reserves the right to modify deal terms in the event of a material delay that changes the value of the Acquired Assets to the Buyers. |
| **Conditions** | The Buyers' commitment would be subject to satisfaction of customary closing conditions, including compliance with customary interim operating covenants. |
| **Deal Protection** | No exclusivity or no-shop provisions.  No overbid requirements.  No commitment, break or other fees. |
| **Expense Reimbursement** | None.  The Buyers will pay advisory fees out-of-pocket |

|  | without reimbursement from the Sellers. |
|---|---|

**Annex B**

**BENEFITS OF THE TRANSACTION**

**Benefits for FTX – Why Are FTX and Alameda Proposing This Transaction?**

1. FTX benefits from the opportunity to build relationships with new customers. No customer would be required to remain a customer of FTX. FTX expects that customers will like the FTX platform and decide to stay.

2. Alameda benefits from the opportunity to monetize the digital assets it is acquiring for fair market value. Alameda believes it can do so far more effectively than a chapter 11 debtor.

3. FTX and Alameda also benefit from showing that a crypto business can be resolved like other financial institutions in a manner that focuses first on reducing harm to customers. Crypto businesses will sometimes fail, just like other financial institutions. Reducing customer losses will help keep confidence in crypto as an asset class.

**Benefits for Customers – Why Do We Believe This Transaction Helps Customers?**

1. Customers benefit from immediate liquidity and access to a substantial portion of their investment in Voyager.

2. Customers benefit from the option to take their recovery in cash or to reinvest in any crypto asset on the FTX platform, without trading fees for their first month of trading.

3. Customers benefit from the elimination of the 'one-way risk' of holding a capped unsecured claim in a crypto business, as well as reduced exposure to chapter 11 costs.

4. Customers benefit from FTX agreeing to pay full fair market value for the digital assets of Voyager, all at once, without discount.

5. Finally, customers can still benefit from the proceeds of the assets and causes of action not purchased by FTX, including all claims related to Three Arrows Capital. All this traditional bankruptcy litigation work can occur on a schedule that is independent of the customer liquidity transaction and may be a source of material supplemental recoveries.