Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>VOYAGER DIGITAL HOLDINGS, INC. et. al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 22-10943 (MEW)<br>(Jointly Administered)<br><br>**DEBTORS' NOTICE OF SUBPOENA TO SAMUEL BANKMAN-FRIED** |

Pursuant to Federal Rule of Civil Procedure 45, as made applicable to this proceeding through Rule 9016 of the Federal Rules of Bankruptcy Procedure, Voyager Digital Holdings, Inc., Voyager Digital Ltd., and Voyager Digital, LLC (collectively, "Voyager" or the "Debtors") will serve the enclosed *Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case (or Adversary Proceeding)* on Samuel Bankman-Fried, requesting that he produce all Documents and Communications responsive to the document requests set forth in Attachment A, in the manner provided in the Definitions and Instructions set forth below, at the offices of KIRKLAND & ELLIS LLP, 601 Lexington Avenue, New York, New York 10022, ATTN: Joshua Sussberg and Christine Okike, and 300 North LaSalle Street, Chicago, Illinois, 60654, ATTN: Michael Slade and Ravi Subramanian Shankar, no later than February 17, 2023, or by such other date as may be agreed to by the parties or ordered by the Bankruptcy Court.

Dated:  February 6, 2023              Kirkland & Ellis LLP

                                 */s/ Michael B. Slade*

                                 Michael B. Slade
                                 KIRKLAND & ELLIS LLP
                                 300 North LaSalle
                                 Chicago, IL  60654
                                 Telephone: (312) 862-2000
                                 Facsimile: (312) 862-2200

                                 *Attorneys for Debtors*

**Attachment A**

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____ Southern _____ District of _____ New York _____

In re  VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1]

            Debtor

*(Complete if issued in an adversary proceeding)*

_____

            Plaintiff

            v.

_____

            Defendant

Case No.  22-10943 (MEW) _____

Chapter ___11_____

(Jointly Administered)

Adv. Proc. No.  _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:  Samuel Bankman-Fried, 743 Cooksey Lake, Stanford, CA 94305-8417 _____

*(Name of person to whom the subpoena is directed)*

[X] *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  See Exhibit A

| PLACE  Kirkland & Ellis LLP, 3330 Hillview Avenue, Palo Alto, CA 94304 or at any other location agreed upon between the parties | DATE AND TIME  February 17, 2023 9:00 AM |
|---|---|

[ ] *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  February 6, 2023

            CLERK OF COURT

                        OR

_____            ___ */s/ Michael B. Slade* ___
*Signature of Clerk or Deputy Clerk*            *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* Debtors and Debtors in Possession _____ , who issues or requests this subpoena, are:

Michael B. Slade, Kirkland & Ellis LLP, Kirkland & Ellis International LLP, 300 North LaSalle, Chicago, IL 60654, mslade@kirkland.com, (312) 862-3348

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____
_____
_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____
_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the
witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

 My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


        I declare under penalty of perjury that this information is true and correct.

Date: _____

                                        _____
                                                        *Server's signature*

                                        _____
                                                        *Printed name and title*

                                        _____
                                                        *Server's address*


Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

   (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

   (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

     (i) is a party or a party's officer; or

     (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

   (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

   (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

   *(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

   *(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

     (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

     (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

   *(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

     (i) fails to allow a reasonable time to comply;

     (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

     (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

     (iv) subjects a person to undue burden.

   *(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

     (i) disclosing a trade secret or other confidential research, development, or commercial information; or

     (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

   *(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

     (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

     (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

   *(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

   *(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

   *(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

   *(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

   *(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

     (i) expressly make the claim; and

     (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

   *(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## EXHIBIT A

## DEFINITIONS

As used herein, the following terms shall have these meanings:

1.    The term "<u>Alameda Loan Agreement</u>" means the *Loan Agreement* by and among Alameda Ventures, Voyager Digital Holdings, Inc., and Voyager Digital Ltd., dated June 21, 2022.

2.    The connectives "<u>and</u>" and "<u>or</u>" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of any Interrogatory all responses that might otherwise be construed to be outside of its scope.

3.    The term "<u>any</u>" shall be construed to include the term "all," and the term "<u>all</u>" as used herein includes the term "any."

4.    The term "<u>Benzinga.com</u>" means the financial media outlet Benzinga.com, Benzinga-related entities, their predecessors in interest, and their past and present officers, directors, agents, servants, employees, and anyone else acting on its behalf or otherwise subject to their control, individually and collectively, including Jason Raznick.

5.    The term "<u>Binance</u>" means Binance Holdings Ltd., its affiliates and subsidiaries, any advisor to or representative thereof, or anyone who was or could have been acting on their behalf, individually and collectively.

6.    The term "<u>Communications</u>" means every manner of transmitting or receiving information, in the form of facts, opinions, thoughts, ideas, inquiries or otherwise including, but not limited to, any written, oral, electronic and/or other communication of whatever sort, as well as any document which records, reflects, and/or pertains to any such communication, including but not limited to, emails, electronic private messages, handwritten notes, letters, facsimiles, message slips, personal calendars, memoranda and/or sound records and transcripts thereof.

7.      The terms the "Debtors" or "Voyager" shall mean Voyager Digital Holdings, Inc., Voyager Digital Limited, and Voyager Digital, LLC, including any advisor to or representative thereof, or anyone who was or could have been acting on their behalf, individually and collectively.

8.      The term "Document" shall include, without limitation, any written, recorded, or graphic matter, whether produced, reproduced or stored on paper, cards, tape, film, electronic facsimile, computer storage devices, disks, or other media, electronic form, or data compilation from which information can be obtained, including originals, copies (with or without notes or changes thereon) and drafts, including, without limitation, papers, books, letters, tangible things, correspondence, telegrams, cables, telex messages, memoranda, notes, notations, work papers, transcripts, minutes, reports, recordings of telephone conversations, interviews, conferences or other meetings, affidavits, statements, summaries, reports, studies, analyses, evaluations, appraisals, estimates, projections, charts, schedules, work sheets, proposals, contracts, agreements, statistical records, desk calendars, appointment books, diaries, lists, tabulations, sound recordings, computer print-outs, data processing output and input, microfilms, photographs or negatives thereof, all other records kept by electronic, photographic or mechanical means (including but not limited to e-mails, slack messages, text messages, telegram messages, or any other message sent via electronic communication of any kind), and things similar to any of the foregoing however denominated and any or all matter or material attached or affixed to any of the above.  Any copy or excerpt of a Document which bears any notes, additions, inserts or other markings of any kind is to be considered a separate "Document" for purposes of responding hereto.

9.      The term "DOJ" means the U.S. Department of Justice.

10.     The term "Dietderich Supplemental Declaration" means the *Supplemental Declaration of Andrew G. Dietderich in Support of Debtors' Application for an Order Authorizing*

the Retention and Employment of Sullivan & Cromwell LLP as Counsel to the Debtors and
Debtors-in-Possession Nunc Pro Tunc *to the Petition Date*, filed at Docket No. 510 in *In re FTX
Trading Ltd.*, No. 22-bk-11068 (Bankr. D. Del.).

11.    The term "Ellison Admissions" means statements by Caroline Ellison while
pleading guilty to one or more crimes, including wire fraud and conspiracy to commit wire fraud,
securities fraud, commodities fraud, and money laundering, in *U.S. v. Ellison*, No. 22-cr-673
(S.D.N.Y.).

12.    The term "Fraud Cases" means any cases related to fraud perpetrated by any FTX-
Related Entity or any of their directors, officers, employees, advisors, or representatives, including:
*U.S. v. Bankman-Fried*, No. 22-cr-673 (S.D.N.Y); *U.S. v. Ellison*, No. 22-cr-673 (S.D.N.Y.); and
*U.S. v. Wang*, No. 22-cr-673 (S.D.N.Y.).

13.    The terms "FTX-Related Entity" or "FTX-Related Entities" means all debtors in
the cases jointly administered as *In re FTX Trading Ltd.*, No. 22-bk-11068 (Bankr. D. Del.),
including but not limited to: FTX Trading Ltd.; Alameda Aus Pty Ltd.; Alameda Global Services
Ltd.; Alameda Research (Bahamas) Ltd.; Alameda Research Holdings Inc.; Alameda Research
KK; Alameda Research LLC; Alameda Research Ltd.; Alameda Research Pte Ltd.; Alameda
Research Yankari Ltd.; Alameda TR Ltd.; Alameda TR Systems S. de R. L.; Allston Way Ltd.;
Analisya Pte Ltd.; Atlantis Technology Ltd.; Bancroft Way Ltd.; Blockfolio, Inc.; Blue Ridge Ltd.;
Cardinal Ventures Ltd.; Cedar Bay Ltd.; Cedar Grove Technology Services, Ltd.; Clifton Bay
Investments LLC; Clifton Bay Investments Ltd.; Cottonwood Grove Ltd.; Cottonwood
Technologies Ltd.; Crypto Bahamas LLC; DAAG Trading, DMCC; Deck Technologies Holdings
LLC; Deck Technologies Inc.; Deep Creek Ltd.; Digital Custody Inc.; Euclid Way Ltd.; FTX
(Gibraltar) Ltd.; FTX Canada Inc.; FTX Certificates GmbH; FTX Crypto Services Ltd.; FTX

Digital Assets LLC; FTX Digital Holdings (Singapore) Pte Ltd.; FTX EMEA Ltd.; FTX Equity Record Holdings Ltd.; FTX EU Ltd.; FTX Europe AG; FTX Exchange FZE; FTX Hong Kong Ltd.; FTX Japan Holdings K.K.; FTX Japan K.K.; FTX Japan Services KK; FTX Lend Inc.; FTX Marketplace, Inc.; FTX Products (Singapore) Pte Ltd.; FTX Property Holdings Ltd.; FTX Services Solutions Ltd.; FTX Structured Products AG; FTX Switzerland GmbH; FTX Trading GmbH; FTX Trading Ltd.; FTX TURKEY TEKNOLOJİ VE TİCARET ANONİM ŞİRKET; FTX US Services, Inc.; FTX US Trading, Inc.; FTX Ventures Ltd.; FTX Zuma Ltd.; GG Trading Terminal Ltd.; Global Compass Dynamics Ltd.; Good Luck Games, LLC; Goodman Investments Ltd.; Hannam Group Inc.; Hawaii Digital Assets Inc.; Hilltop Technology Services LLC; Hive Empire Trading Pty Ltd.; Innovatia Ltd.; Island Bay Ventures Inc.; Killarney Lake Investments Ltd.; Ledger Holdings Inc.; LedgerPrime Bitcoin Yield Enhancement Fund, LLC; LedgerPrime Bitcoin Yield Enhancement Master Fund LP; LedgerPrime Digital Asset Opportunities Fund, LLC; LedgerPrime Digital Asset Opportunities Master Fund LP; Ledger Prime LLC; LedgerPrime Ventures, LP; Liquid Financial USA Inc.; LiquidEX LLC; Liquid Securities Singapore Pte Ltd.; LT Baskets Ltd.; Maclaurin Investments Ltd.; Mangrove Cay Ltd.; North Dimension Inc.; North Dimension Ltd.; North Wireless Dimension Inc.; Paper Bird Inc.; Pioneer Street Inc.; Quoine India Pte Ltd.; Quoine Pte Ltd.; Quoine Vietnam Co. Ltd.; SNG INVESTMENTS YATIRIM VE DANIŞMANLIK ANONİM ŞİRKETİ; Strategy Ark Collective Ltd.; Technology Services Bahamas Limited; Verdant Canyon Capital LLC; West Innovative Barista Ltd.; West Realm Shires Financial Services Inc.; West Realm Shires Inc.; West Realm Shires Services Inc.; Western Concord Enterprises Ltd.; Zubr Exchange Ltd.; and including all officers, directors, employees, members, consultants, representatives, agents, and advisors (including attorneys) for such entities.

14.    The term "FTX Purchase Agreement" means the *Asset Purchase Agreement Dated as of September 27, 2022 By and Between West Realm Shire Inc. as Purchaser and Voyager Digital, Inc. as Seller*, executed on September 27, 2022.

15.    The term "July 24, 2022, SBF Tweetstorm" means Samuel Bankman-Fried's July 24, 2022, tweets related to the Debtors, which are numbered 1 to 15.

16.    The term "November 11, 2022, FTX Press Release" means the press release posted by @FTX_Official on November 11, 2022, titled, "FTX Group Companies Commence Voluntary Chapter 11 Proceedings in the United States Begin Orderly Process to Review and Monetize Assets for Benefit of Global Stakeholders John J. Ray III Appointed Chief Executive Officer; Sam Bankman-Fried Resigns."

17.    The term "Person" means not only natural persons, but also firms, partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, trusts, groups, and organizations; federal state, or local governments or government agencies, offices, bureaus, departments, or entities; other legal, business, or government entities; and all subsidiaries, affiliates, divisions, departments, branches, and other units thereof or any combination thereof.

18.    The term "Ray Declaration" means the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings*, filed at Docket No. 24 in *In re FTX Trading Ltd.*, No. 22-bk-11068 (Bankr. D. Del.).

19.    The term "SEC" means to the U.S. Securities and Exchange Commission.

20.    The term "SEC Cases" means *S.E.C. v. Bankman-Fried*, No. 22-cv-10501 (S.D.N.Y.); and *S.E.C. v. Ellison*, No. 22-cv-10794 (S.D.N.Y.).

21.     The term "Sullivan & Cromwell" means Sullivan & Cromwell LLP, any representative thereof, or anyone who was or could have been acting on its behalf, individually and collectively.

22.     The term "Voyager Auction" means the auction commenced in these chapter 11 cases for the sale of 100% of the Debtors' equity or some or all of Debtors' assets.

23.     The term "Voyager Official Committee of Unsecured Creditors" means the Official Committee of Unsecured Creditors in *In re Voyager Digital Holdings, Inc.*, No. 22-bk-10943 (Bankr. S.D.N.Y.).

24.     The term "Wang Admissions" means statements by Gary Wang while pleading guilty to one or more federal crimes, including wire fraud and to conspiracy to commit wire fraud, commodities fraud, and securities fraud, in *U.S. v. Wang*, No. 22-cr-673 (S.D.N.Y.).

25.     The terms "WRS" means West Realm Shires Inc., any advisor to or representative thereof, or anyone who was or could have been acting on its behalf, individually and collectively.

26.     The terms "You" or "Your" means Samuel Bankman-Fried.

27.     The use of the singular form of any word includes the plural and vice versa.

## **INSTRUCTIONS**

1.     The Documents requested herein include all responsive Documents in Your possession, custody, or control, whether located onsite or at an offsite facility, regardless of whether such Documents are possessed by You personally or by Your agents, employees, representatives, affiliates, accountants, investigators, relatives, or Your attorneys or their agents, employees, representatives, or investigators.

2.     Each Request herein seeks production of each Document in its entirety, without abbreviation or redaction, with all non-identical copies and drafts thereof, including any Document appended to, included with, incorporated by or referred to in the Document.

3.      All Documents are to be produced as they are kept in the usual course of business or should be organized and labeled to correspond to the categories in the Requests.  All pages should be given a Document or Bates number.  If there are no Documents responsive to a specific Request, the response thereto shall state so in writing.

4.      If a Document that is responsive to a Request contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material.  If a privilege is asserted with regard to part of the material contained in a Document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed.  When a Document has been redacted or altered in any fashion, at each location of redaction, indicate the word redacted and the reason for the redaction.

5.      In producing Documents, all Documents that are physically attached to each other when located for production shall be left so attached.  Documents that are segregated or separated from other Documents, whether by inclusion of binders, files, sub-files or by use of dividers, tabs, or any other method, shall be left so segregated or separated.  Documents shall be retained in the order in which they were maintained and in the file where found.

6.      If, in responding to the Requests, You encounter any ambiguities when construing a Request or definition, Your response shall set forth the matter deemed ambiguous and the construction used in responding.

7.      These Requests are continuing in nature so as to require prompt supplemental responses in accordance with the Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil Procedure.

## DOCUMENT REQUESTS

1.      All Communications between You, Your representatives, or any FTX-Related Entity and the DOJ related in any way to the Fraud Cases.

2.      All Documents provided to the DOJ related in any way to its investigation of any FTX-Related Entity or the Fraud Cases.

3.      All Communications between You, Your representatives, or any FTX-Related Entity and the SEC related in any way to the SEC Cases.

4.      All Documents provided to the SEC related in any way to its investigation of any FTX-Related Entity or the SEC Cases.

5.      To the extent not produced in response to Request Nos. 1-4, all Documents and Communications that You have provided to state or federal regulators or prosecutors related in any way to any FTX-Related Entity.

6.      All Documents related in any way to the Ellison Admissions.

7.      All Documents related in any way to the Wang Admissions.

8.      Any Documents that exist that would refute or challenge the statements made in the Ellison Admissions or the Wang Admissions.

9.      All Documents related in any way to John Ray's statement that FTX-Related Entities "use[d] software to conceal the misuse of customer funds," as referenced in paragraph 65 of the Ray Declaration, including any Documents that exist that would refute or challenge that statement.

10.      All Documents related in any way to John Ray's statements that "the FTX Group did not keep appropriate books and records," as referenced and described in paragraph 65 of the Ray Declaration, including any Documents that exist that would refute or challenge that statement.

11.     All Documents related in any way to John Ray's statement that, "Never in my career have I seen such a complete failure of corporate controls and such a complete absence of trustworthy financial information as occurred here," as referenced in paragraph 5 of the Ray Declaration, including any Documents that exist that would refute or challenge that statement.

12.     All Documents, including all financial records and all Communications related thereto, related in any way to the actual financial condition of each FTX-Related Entity as of the following dates: December 31, 2020; March 31, 2021; June 30, 2021; September 30, 2021; December 31, 2021; February 9, 2022; February 22, 2022; March 31, 2022; June 13, 2022; June 30, 2022; August 3, 2022; September 1, 2022; October 1, 2022; November 1, 2022; November 8, 2022; November 11, 2022; and November 14, 2022.

13.     All Documents and Communications related in any way to the outstanding loan portfolio between Voyager and the FTX-Related Entities at any time in May, June, or July 2022.

14.     All Communications (including text messages, Slack messages, Telegram and Signal messages, and any other Communications regardless of application or medium) between You and any other employee at any FTX-Related Entity related in any way to: (a) the books and records of any FTX-Related Entity; (b) the accounting records of any FTX-Related Entity; (c) the use of customer deposit funds by any FTX-Related Entity; (d) the financial condition of any of the FTX-Related Entity; or (e) Voyager.

15.     All Documents and Communications related in any way to Voyager's requests in June 2022 and July 2022 that the FTX-Related Entities return then-outstanding loans, including documents related in any way to: (i) whether the FTX-Related Entities had the liquidity to return the loans at the time; (ii) the FTX-Related Entities' financial condition at the time; and (iii) internal

Communications related in any way to whether the FTX-Related Entities should, could, or would return the loans.

16.     All Documents and Communications related in any way to the FTX-Related Entities either delaying or stalling loan repayments to Voyager.

17.     All Documents and Communications related in any way to the FTX-Related Entities' request to include outside counsel on loan-related due diligence calls with Voyager.

18.     All Documents and Communications related in any way to the November 11, 2022, FTX Press Release.

19.     All Documents and Communications related in any way to the July 24, 2022, SBF Tweetstorm.

20.     All Documents and Communications related in any way to the Voyager Auction, including all Communications with or about other prospective or actual bidders in the Voyager Auction or Communications with any other Persons about the Voyager Auction.

21.     All Documents and Communications related in any way to the Debtors' marketing or sale of its assets in these chapter 11 cases, whether as part of the Voyager Auction or otherwise, including (i) the FTX-Related Entities' participation in the Debtors' auction process, (ii) the FTX-Related Entities' decision to bid on those assets, and (iii) You, the FTX-Related Entities', and Your or their representatives' Communications with other Persons related in any way to Voyager's marketing or sale of its assets in these chapter 11 cases.

22.     Any "portfolio" or set of materials that Samuel Bankman-Fried created regarding Changpeng Zhao, and all Communications made by You, any FTX-Related Entity, or Your or its representatives to any Person or entity about Changpeng Zhao.

23.     All Communications between (i) You, the FTX-Related Entities, or Your or their representatives and (ii) third parties, including reporters and news outlets, related in any way to Voyager's marketing or sale of its assets in Voyager's chapter 11 cases.

24.     All Communications between (i) You, the FTX-Related Entities, or Your or their representatives and (ii) third parties, including reporters and news outlets, related in any way to Binance.

25.     All Documents and Communications related in any way to Binance's participation in the Voyager Auction.

26.     All Communications between You, the FTX-Related Entities, or Your or their representatives, including Sullivan & Cromwell, and the Voyager Official Committee of Unsecured Creditors, its members, or any its representatives (including any counsel to the Voyager Official Committee of Unsecured Creditors or any of its members).

27.     All Communications that occurred during these chapter 11 cases between (i) You, the FTX-Related Entities, or Your or their representatives and (ii) any federal or state governmental agency or regulatory body, related in any way to Voyager, Binance, or Changpeng Zhao.

28.     All Communications between You, the FTX-Related Entities, or Your or their representatives, and any person associated with the Benzinga.com website, related in any way to: (i) Voyager; (ii) Binance; or (iii) any FTX-Related Entity.

29.     All Documents and Communications related in any way to Sullivan & Cromwell's July 27, 2022, statement to the Voyager Official Committee of Unsecured Creditors' counsel: "FTX has a bottomless sea of ordinary cryptocurrency[.]"

30.     All Documents and Communications related in any way to Sullivan & Cromwell's November 7, 2022, statement to the Voyager Official Committee of Unsecured Creditors' counsel: "FTX is rock solid, doesn't use customer funds or take credit risk at all.  It cannot have 'liquidity' issues because it doesn't lend."

31.     All Communications related in any way to the Alameda Loan Agreement.

32.     All Documents and Communications related in any way to Section 4.7 of the Alameda Loan Agreement, including the requirement that "Borrower . . . shall work with Lender to restructure the outstanding Crypto loan from Borrower to Genesis in a manner and on terms satisfactory to Borrower and Lender."

33.     All Documents and Communications related in any way to Alameda's reasons for entering into the Alameda Loan Agreement.

34.     All Documents and Communication related in any way to the FTX-Related Entities' use of Voyager's loaned crypto upon consummation of the Alameda Loan Agreement, including proceeds from rehypothecation of such crypto to third parties or internally within the FTX-Related Entities.

35.     All Documents and Communications related in any way to the return to any FTX-Related Entity of the crypto non-term loans in or around September 2022, including the movements of loaned crypto and the corresponding collateral returns in FTT and SRM.

36.     All Documents and Communications related in any way to the valuation or movement of FTT coins within the FTX-Related Entities in and between July 2022 to November 2022.

37.     All Documents and Communications related in any way to the return to the FTX-Related Entities of the crypto term loans in or around October 2022, including the movements of loaned crypto.

38.     All Documents and Communications, including analysis, related in any way to the potential value of revenue attributed to the acquisition of Voyager customers in the Voyager Auction, including comparisons of the assumed going market rates for customer acquisition costs compared to the compensation amounts proposed in the bidding process.

39.     All Documents and Communications related in any way to Your following statements: (i) "[a]nd I think when you look at Voyager, we'll see what happens, but best guess is like, that's $70 million down the drain that we probably won't see again," and (ii) "[t]he way we structured it was basically there's $70 million that we knew we would maybe never see again." *See* Stacy Elliot & Daniel Roberts, *Sam Bankman-Fried: Voyager Deal Likely '$70M Down the Drain*,' DECRYPT (Aug. 10, 2022), https://decrypt.co/107143/sam-bankman-fried-voyager-deal-likely-70m-down-thedrain.

40.     All Documents and Communications related in any way to the basis for or accuracy of the representations and warranties in each of Sections 4.4 and 4.5(a)-(b) of the FTX Purchase Agreement.

41.     All Documents and Communications related in any way to Schedule 2.1(a) of the FTX Purchase Agreement.

42.     All Documents and Communications related in any way to any FTX-Related Entity's intentions to influence token prices or engage in arbitrage during the "Reference Period," as referenced in the FTX Purchase Agreement.

43. All Documents and Communications related in any way to the appointment of John Ray as Chief Executive Officer of the FTX-Related Entities, as described in paragraph 5 of the Dietderich Supplemental Declaration.

44. All Documents and Communications related in any way to the FTX-Related Entities' stopping the processing of customer withdrawals, as described in paragraph 10 of the Dietderich Supplemental Declaration.

45. All Documents and Communications related in any way to the departures of Can Sun, Daniel Friedberg, Ryne Miller, and Tim Wilson from the FTX-Related Entities, as described in the Dietderich Supplemental Declaration.

46. All Documents and Communications related in any way to the FTX-Related Entities' corporate governance or risk-management measures.

47. All Documents and Communications related in any way to the FTX-Related Entities' decision not to proceed with the FTX Purchase Agreement.

48. All Documents and Communications concerning WRS's ability to consummate the FTX Purchase Agreement as of September 27, 2022.

49. All Documents and Communications related in any way to the withdrawal of over $75 million of staked Ether from the FTX.com trading platform on or about June 8, 2022.

50. The FTX-Related Entities' trading logs related in any way to the VGX token in or between April 2022 and November 11, 2022.

51. The FTX-Related Entities' trading logs related in any way to the Terra (LUNA) token in or between March 2022 and April 2022, and the FTX-Related Entities' Communications related in any way to influence the price of such token.

52.     The FTX-Related Entities' trading logs related in any way to the FTT token in or between March 2022 and November 11, 2022, and the FTX-Related Entities' Communications related in any way to influence the price of such token.

53.     All Communications since April 2022 related in any way to the "Exchange Coordination" Signal message group or other exchange-related coordination groups.

54.     All Documents and Communications between July 4, 2022, and October 20, 2022, related in any way to Voyager's and its representatives', including financial advisors', due diligence requests to any FTX-Related Entity.

55.     Each FTX-Related Entity's document retention policies at all times up through the present

56.     All Communications between You and any person affiliated with the FTX-Related Entities, John Ray, or any persona affiliated with Sullivan & Cromwell between August 1, 2022, and the present.