Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC. *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF HEARING**
**ON DEBTORS' MOTION FOR**
**ENTRY OF AN ORDER (I) APPROVING POST HOC**
**THE CONSENT OF THE MANAGER AND MEMBERS**
**OF VYGR MANAGEMENT LLC AND (II) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Motion for Entry of an Order (I) Approving Post Hoc the Consent of the Manager and Members of VYGR Management LLC and (II) Granting Related Relief* (the "Motion"), will be held on **February 22, 2023, at 10:00 a.m., prevailing Eastern Time** (the "Hearing"). In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted telephonically. Any parties wishing to participate must do so by making arrangements through CourtSolutions by visiting https://www.court-solutions.com.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Motion shall:  (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served so as to be actually received by **February 15, 2023, at 4:00 p.m., prevailing Eastern Time**, by (i) the entities on the Master Service List available on the case website of the above-captioned debtors and debtors in possession (the "Debtors")  at  https://cases.stretto.com/Voyager  and  (ii) any person or entity with a particularized interest in the subject matter of the Motion.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing.  Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/Voyager.  You may also obtain copies of the Motion and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

2

Dated: February 6, 2023          */s/ Joshua A. Sussberg*
New York, New York               **KIRKLAND & ELLIS LLP**
                                 **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                 Joshua A. Sussberg, P.C.
                                 Christopher Marcus, P.C.
                                 Christine A. Okike, P.C.
                                 Allyson B. Smith (admitted *pro hac vice*)
                                 601 Lexington Avenue
                                 New York, New York 10022
                                 Telephone:    (212) 446-4800
                                 Facsimile:    (212) 446-4900
                                 Email:        jsussberg@kirkland.com
                                               cmarcus@kirkland.com
                                               christine.okike@kirkland.com
                                               allyson.smith@kirkland.com

                                 *Counsel to the Debtors and Debtors in Possession*

Hearing Date: February 22, 2023, at 10:00 a.m. (prevailing Eastern Time)
Objection Deadline: February 15, 2023, at 4:00 p.m. (prevailing Eastern Time)

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC. *et al.*,[1] | Case No. 22-10943 (MEW) |
| Debtors. | (Jointly Administered) |

## DEBTORS' MOTION FOR
## ENTRY OF AN ORDER (I) APPROVING POST HOC
## THE CONSENT OF THE MANAGER AND MEMBERS
## OF VYGR MANAGEMENT LLC AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state the following in support of this motion (this "Motion"):

### Relief Requested

1.    The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"): (a) approving on a post hoc basis the entry into the consent of the manager

and members of VYGR Management LLC (the "Consent") and a related agreement among VYGR

Holdings LLC ("Holdings") and its members (the "Related Agreement"), annexed as Exhibit 1 to

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

the Order, to (i) permit VYGR Management LLC ("Management," and together with Holdings, the "Joint Venture") to terminate its current employees, (ii) permit Management and Voyager Digital Holdings, Inc. ("Voyager") to waive the No Hiring or Solicitation of Employees provision of the Side Letter dated July 31, 2021, by and among Market Rebellion, LLC ("Market Rebellion"), Voyager, and Management (the "Management Side Letter"), (iii) permit VYGR Holdings LLC ("Holdings") and Voyager to waive the No Hiring or Solicitation of Employees provision of the Side Letter dated July 31, 2021, by and among Market Rebellion, Voyager, and Holdings (the "Holdings Side Letter," and together with the Management Side Letter, the "Side Letters"), (iv) permit Market Rebellion to hire the terminated employees, and (v) have the terminated employees provide Management, Holdings, Market Rebellion, Voyager, and Voyager Digital Securities, LLC ("VDS") with a full and complete release from all claims and causes of action of any kind or nature whatsoever arising out of their employment, including severance claims (if any), related to the employees' hire, benefits, employment, termination, or separation from employment with Management, and (b) granting related relief.  In further support of this Motion, the Debtors respectfully submit as follows.

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012.  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.          Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.          The basis for the relief requested herein is section 105(a) of title 11 of the United

States Code (the "Bankruptcy Code").

## Background

5.          On July 5, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for

relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and

circumstances of these chapter 11 cases is set forth in the *Declaration of Stephen Ehrlich, Chief*

*Executive Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions*

[Docket No. 15] (the "First Day Declaration"), incorporated by reference herein.[2]

6.          The Debtors are operating their business and managing their property as debtors in

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases

have been consolidated for procedural purposes only and are jointly administered pursuant to

Bankruptcy Rule 1015(b) [Docket No. 18].  On July 19, 2022, the United States Trustee for the

Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured

creditors [Docket No. 102] (the "Committee").

## Overview of the Joint Venture

7.          VDS, a California limited liability company, is a subsidiary of Holdings and was

formed as a broker-dealer with the intent of allowing individual investors on the Debtors' platform

to trade stock alongside cryptocurrency.  Market Rebellion, a Delaware limited liability company,

is a financial media company, which is focused on the development of trading applications as well

as trading education, content, and other tools to assist independent investors.  In July 2021,

Voyager entered into the Joint Venture with Market Rebellion under which each entity held 50

---

[2]     Capitalized terms not defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

percent ownership in Holdings and 50 percent ownership in Management, which served as the management company for Holdings.

8.      The Joint Venture was an effort to increase the trading and investing products provided on the Debtors' platform by allowing individual investors to trade equities, options, and futures.  In the Joint Venture, Market Rebellion was tasked with building a team of developers to develop the trading platform that would complement the Debtors' cryptocurrency trading.  Voyager, on the other hand, was tasked with carrying out any trades that would have been placed through the Debtors' platform.  As of the Petition Date, the Joint Venture was still in the early development phase, and it did not materially advance thereafter.

9.      As part of these chapter 11 cases, the Debtors undertook to market and sell substantially all of their assets.  During the extensive pre- and post-petition marketing process for the Debtors' assets, including a highly competitive two-week auction, no bidder expressed interest in acquiring Voyager's interests in the Joint Venture as a going concern in a standalone sale or in connection with their overall bid for the Debtors' other assets.  As such, the Debtors began to explore alternatives to minimize Voyager's liabilities attributable to the Joint Venture and maximize Voyager's return from the Joint Venture.

10.     In September 2022, the Debtors and Market Rebellion began to have discussions regarding the possible sale of Voyager's equity interests in the Joint Venture in exchange for the termination of Voyager's expense obligations.  Pursuant to the limited liability company agreements of each Holdings and Management, neither Voyager nor Market Rebellion had an affirmative obligation to continue funding the Joint Venture.  However, Market Rebellion agreed to fund the payroll expenses of the Joint Venture for a short duration in order to maintain the Joint Venture as a going concern while such discussions continued.

11.    Despite weeks of negotiation and extensive discussions with stakeholders, the Debtors and Market Rebellion were ultimately unable to identify a sale structure that would be supported by all parties in interest.  Because Voyager did not have sufficient capital to fund the Joint Venture's operations, including payroll, or any obligation to provide such funding even if it had sufficient capital, and Market Rebellion was not willing to continue funding on its own past November 30, 2022, the individuals employed by Management (collectively, the "Employees") were terminated.

12.    Prior to the Joint Venture's formation, the Employees were employees of Market Rebellion.  Although a sale of Voyager's Joint Venture interests could not be effectuated, Market Rebellion had an interest in preserving the jobs of the Employees by rehiring them following their termination by the Joint Venture.  Voyager, in turn, wished to prevent any additional liabilities or potential claims by the Employees from being filed against the Debtors' estates.

13.    Voyager and Market Rebellion therefore determined it to be in their mutual best interests to negotiate and execute the Consent and the Related Agreement, which would waive certain non-hire provisions in the Side Letters.

**The Consent and the Related Agreement**

14.    Under the Side Letters, specifically the No Hiring or Solicitation of Employees provisions, Market Rebellion was prohibited (among other things) from rehiring the Employees following their termination by the Joint Venture.  Thus, in connection with Market Rebellion's effort to preserve the jobs of the Employees, Voyager and Market Rebellion agreed to waive the applicable Side Letter provisions to the extent necessary to permit Market Rebellion to rehire the Employees.  In exchange, each Employee provided Management, Holdings, Market Rebellion, Voyager, and VDS with a full and complete release of all claims and causes of action of any kind

whatsoever related to such Employee's hire, benefits, employment, termination, or separation from employment with Management.  For the avoidance of doubt, any and all claims Voyager may have against Market Rebellion are preserved by the Consent.

15.    In connection with the Consent and the Related Agreement, each Employee entered into a separation agreement with Management, substantially in the form annexed as <u>Exhibit 2</u> to **<u>Exhibit A</u>**, releasing each Employee from the restrictive covenants in the Employee Proprietary Information and Inventions Agreement with Employer ("<u>EPII</u>") and the Employee's Award Agreement.  The remaining provisions of the EPII, such as the requirement to return any and all company documents and property to Management, have survived to ensure that none of the assets or proprietary information of Debtors or the Joint Venture has been or will be transferred to Market Rebellion.  This guarantees that any confidential information obtained by the Employees during their tenure with the Joint Venture will be safeguarded and cannot be used to the detriment of the Debtors or the Joint Venture.

16.    Neither the Consent nor the Related Agreement provide for the transfer of any of the assets of the Debtors or the Joint Venture, nor will they prejudice the Debtors or the Joint Venture in any manner.  The Debtors had no options for monetizing their interest in the Joint Venture.

17.    The Debtors do not believe that Voyager's execution of the Consent and the Related Agreement required Court approval, as they did not implicate the use, sale or lease of any property of the Debtors' estates.  Nevertheless, the Consent by its terms indicated that the Debtors would seek post hoc Court approval out of an abundance of caution.

18.    Therefore, the Debtors request post hoc approval of Voyager's entry into the Consent and the Related Agreement.

6

**Basis for Relief**

I.    **The Court Should Approve the Entry into the Consent and the Related Agreement On a Post Hoc Basis Because it Was and Is a Sound Exercise of Voyager's Business Judgment.**

19.    In an exercise of their sound business judgment, the Debtors determined that executing the Consent and the Related Agreement was and is appropriate in light of the facts and circumstances of these chapter 11 cases and was and is in the best interest of their estates and all parties in interest.  "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted). *See also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

20.    As explained above, the Debtors previously included the Joint Venture in their extensive pre- and post-petition marketing process, including the two-week public auction, but no bidder expressed an interest in acquiring Voyager's interests.  The Debtors also engaged in extensive discussions with Market Rebellion to explore a sale transaction that would be supported by all stakeholders, but those discussions were not successful.  The operations of the Joint Venture were being maintained solely through the funding of Market Rebellion, which (like Voyager) was under no legal obligation to fund the Joint Venture, and which indicated to Voyager that it would cease its voluntary funding of the Joint Venture as of November 30, 2022.

21.    The Debtors therefore had no viable options for this interest other than the one presented.  In light of these circumstances, the Debtors believe that entry into the Consent and the Related Agreement was and is the best path forward for the estate.  Therefore, the Debtors

7

respectfully request that the Court approve entry into the Consent and the Related Agreement on a post hoc basis.

## **Reservation of Rights**

22.     Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## **Motion Practice**

23.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

## Notice

24.    The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable:  (a) the U.S. Trustee; (b) the Committee; (c) the lender under the Debtors' prepetition loan facility; (d) the United States Attorney's Office for the Southern District of New York; (e) the Internal Revenue Service; (f) the Toronto Stock Exchange; (g) the attorneys general in the states where the Debtors conduct their business operations; (h) Market Rebellion; and (i)  any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

25.    No prior request for the relief sought in this Motion has been made to this or any other court.


*[Remainder of page intentionally left blank]*

9

WHEREFORE, the Debtors respectfully request that the Court enter the Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated:  February 6, 2023
New York, New York

/s/ Joshua A. Sussberg
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:          jsussberg@kirkland.com
                cmarcus@kirkland.com
                christine.okike@kirkland.com
                allyson.smith@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER (I) APPROVING POST HOC THE CONSENT**
**OF THE MANAGER AND MEMBERS OF VYGR**
**MANAGEMENT LLC AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the Debtors for entry of an order (this "Order"),
(i) approving on a post hoc basis the entry into the consent of the manager and members of VYGR
Management LLC (the "Consent") and a related agreement among VYGR Holdings LLC
("Holdings") and its members (the "Related Agreement"), annexed as **Exhibit 1** hereto, to
(a) permit VYGR Management LLC ("Management," and together with VYGR Holdings LLC,
the "Joint Venture") to terminate its current employees, (b) permit Management and Voyager
Digital Holdings, Inc. ("Voyager") to waive the No Hiring or Solicitation of Employees provision
of the Side Letter dated July 31, 2021, by and among Market Rebellion, LLC ("Market
Rebellion"), Voyager, and Management (the "Management Side Letter"), (c) permit VYGR
Holdings LLC ("Holdings") and Voyager to waive the No Hiring or Solicitation of Employees
provision of the Side Letter dated July 31, 2021, by and among Market Rebellion, Voyager, and
Holdings (the "Holdings Side Letter," and together with the Management Side Letter, the "Side
Letters"), (d) permit Market Rebellion to hire Management's terminated employees, and (e) have

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC
(8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY
10003.

the terminated employees provide Management, Holdings, Market Rebellion, Voyager, and Voyager Digital Securities, LLC ("VDS") with a full and complete release from all claims and causes of action of any kind or nature whatsoever, including severance claims (if any), related to the employees' hire, benefits, employment, termination, or separation from employment with Management, and (ii) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefore, it is HEREBY FOUND AND DETERMINED THAT:

1.      The Motion is granted in its entirety, subject to the terms and conditions contained herein.

2.      The Consent and the Related Agreement are approved as of November 29, 2022,

and this Order and the Consent and the Related Agreement shall be binding retroactively upon and govern the acts of all persons and entities, including, without limitation, Voyager, Management, Holdings, and Market Rebellion, their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee or chapter 7 trustee hereinafter appointed for the Debtors' estates, all creditors of the Debtors (whether known or unknown), filing agents, filing officers, title agents, recording agencies, governmental authorities, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Joint Venture.

3.      The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby retroactively lifted with respect to Market Rebellion to the extent necessary, without further order of the Court, to allow Market Rebellion to deliver any notice provided for in the Consent and to take any and all actions permitted under the Consent in accordance with the terms and conditions thereof.

4.      Voyager will continue to cooperate with Market Rebellion and Market Rebellion will continue to cooperate with Voyager, in each case in a commercially reasonable manner, in each case to ensure that the steps contemplated by the Consent, to the extent not already implemented, are implemented.

5.      This Order shall inure retroactively to the benefit of Market Rebellion, Voyager, the Debtors, and their respective successors and assigns, including but not limited to any chapter 11 trustee or chapter 7 trustee that may be appointed in the Debtors' cases, and shall be binding upon any trustee, party, entity, or fiduciary that may be appointed in connection with these cases or any other or further cases involving the Debtors, whether under chapter 7 or chapter 11 of the

Bankruptcy Code.

6.      The Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order and the Consent and the Related Agreement in all respects and to decide any disputes concerning this Order and the Consent and the Related Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Consent and the Related Agreement and this Order including, but not limited to, the interpretation of terms, conditions, and provisions hereof and thereof, the status, nature, and extent of the Joint Venture and all issues and disputes arising in connection with the relief authorized herein.

7.      Notwithstanding Bankruptcy Rules 6004 and 7062, this Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a) and shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.

8.      The provisions of this Order are non-severable and mutually dependent.

9.      To the extent any provisions of this Order conflict with the terms and conditions of the Consent or the Related Agreement, this Order shall govern and control.

10.      The Debtors are authorized retroactively to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

New York, New York
Dated: _____, 2023

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Consent of the Manager and Members of VYGR Management LLC and the Related Agreement**

Execution Version

**CONSENT OF THE MANAGER AND MEMBERS
OF VYGR MANAGEMENT LLC**

**Dated as of November 29, 2022**

The undersigned, being the sole Manager and all of the Members of VYGR Management LLC, a Delaware limited liability company (the "Company"), acting pursuant to the provisions of the Company's Amended and Restated Limited Liability Company Agreement dated July 31, 2021 (the "LLC Agreement"), hereby take the following action (capitalized terms herein shall have the meaning set forth in the LLC Agreement):

**WHEREAS**, the Company does not have capital sufficient to continue its operations and the Manager has recommended, and the Members agree, that it is in the best interest of the Company to terminate all employees of the Company;

**WHEREAS**, each of the terminated employees was a previous employee of Market Rebellion, LLC ("Market Rebellion") or a consultant of Market Rebellion, and Market Rebellion has agreed to hire all of the terminated employees;

**WHEREAS**, the Company, Market Rebellion and Voyager Digital Holdings, Inc. ("Voyager") are parties to a Side Letter dated July 31, 2021; and

**WHEREAS**, the Company and Voyager agree to waive Section 5 (No Hiring or Solicitation of Employees) of the Side Letter to the extent necessary to permit Market Rebellion to hire all of the terminated employees.

**NOW, THEREFORE, BE IT RESOLVED**, that the Manager, on behalf of the Company, is authorized to notify all employees of the Company that their employment with the Company is terminated effective November 30, 2022;

**FURTHER RESOLVED**, that Section 5 (No Hiring or Solicitation of Employees) of the Side Letter is hereby waived effective the date hereof with respect to the terminated employees, and the Company and Voyager hereby acknowledge that Market Rebellion has represented that it will be offering employment to each of the terminated employees;

**FURTHER RESOLVED**, each of the terminated employees shall provide the Company, Voyager, VYGR Holdings LLC ("Holdings"), and Voyager Digital Securities, LLC ("VDS") with a full and complete release of all claims and causes of action of any kind or nature whatsoever arising out of their employment, including severance claims (if any) related to Company's termination of the employees; and

**FURTHER RESOLVED**, that Market Rebellion, at the direction of the Company, will cause any Company, Holdings or VDS property on laptops maintained by the employees (such laptops being the property of Market Rebellion) to be permanently erased and any user names and passwords to the Company's, Holdings' or VDS's share drives or similar cloud storage to be transferred to the Company, Holdings or VDS at Market Rebellion's sole expense (if any), and no

Execution Version

employees shall be permitted to retain or use Company, Holdings or VDS property in connection with such employee's employment by Market Rebellion or otherwise, such transfer to be confirmed by a representative of the Company;

FURTHER RESOLVED, that for the avoidance of doubt, all claims that Voyager may have against Market Rebellion are preserved by this Written Consent; and

FURTHER RESOLVED, that the Company and Market Rebellion acknowledge that Voyager shall file a motion seeking either (a) approval of this Written Consent by the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") or (b) the Bankruptcy Court's determination that court approval of this Written Consent is not necessary.

This Written Consent may be signed in one or more counterparts, each of which shall be deemed an original, but all of which together, once assembled, shall constitute one and the same instrument. Counterparts may be delivered via facsimile, electronic mail (including pdf or any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

[Signature Page Follows]

Execution Version

IN WITNESS WHEREOF, the undersigned have executed this Consent of Manager and Members of VYGR Management LLC as of the date set forth above.

Manager:

VYGR Management LLC

By_____
   Stephen Ehrlich, Manager

Members:

Market Rebellion, LLC

By_____
Its_____

Voyager Digital Holdings, Inc.

By_____
Its___Chief Executive Officer_____

Execution Version

IN WITNESS WHEREOF, the undersigned have executed this Consent of Manager and Members of VYGR Management LLC as of the date set forth above.

Manager:

VYGR Management LLC

By_____
    Stephen Ehrlich, Manager

Members:

Market Rebellion, LLC

By_____
Its_____

Voyager Digital Holdings, Inc.

By_____
Its_____

Execution Version

## AGREEMENT

### Dated as of November 29, 2022

Consistent with the Consent of the Manager and Members of VYGR Management LLC dated as of November 29, 2022, each of Voyager Digital Holdings, Inc. ("Voyager") and VYGR Holdings LLC ("Holdings") hereby agree that Section 8 (No Hiring or Solicitation of Employees) of the certain Side Letter dated July 31, 2021 among Market Rebellion, LLC ("Market Rebellion"), Voyager and Holdings is hereby waived under the Side Letter to the extent necessary to permit Market Rebellion to hire the terminated employees as described in such Consent, effective the date hereof.

Market Rebellion, LLC

By _____
Its _____ Managing Partner

Voyager Digital Holdings, Inc.

By _____
Its _____

VYGR Holdings LLC

By _____
      Stephen Ehrlich, Manager

Execution Version

**AGREEMENT**

**Dated as of November 29, 2022**

Consistent with the Consent of the Manager and Members of VYGR Management LLC dated as of November 29, 2022, each of Voyager Digital Holdings, Inc. ("Voyager") and VYGR Holdings LLC ("Holdings") hereby agree that Section 8 (No Hiring or Solicitation of Employees) of the certain Side Letter dated July 31, 2021 among Market Rebellion, LLC ("Market Rebellion"), Voyager and Holdings is hereby waived under the Side Letter to the extent necessary to permit Market Rebellion to hire the terminated employees as described in such Consent, effective the date hereof.


Market Rebellion, LLC

By_____
Its_____


Voyager Digital Holdings, Inc.

By_____
Its_____
    Chief Executive Officer


VYGR Holdings LLC

By_____
    Stephen Ehrlich, Manager

**<u>Exhibit 2</u>**

**Separation Agreement**

Final Template Form

# SEPARATION AGREEMENT

This Separation Agreement (the "**Agreement**") is entered into by and between VYGR Management LLC, a Delaware limited liability company (the "**Employer**"), VYGR Holdings LLC, a Delaware limited liability company ("**Holdings**") and [EMPLOYEE NAME] (the "**Employee**"), as of [date]. The Employer, Holdings, and Employee are collectively referred to as the "**Parties**."

WHEREAS, Employee began working for Employer on or about [DATE] as set forth in the agreement between Employee and Employer (the "**Employment Agreement**");

WHEREAS, at the start of Employee's employment, he signed an Employee Proprietary Information and Inventions Agreement with Employer ("**EPII**") setting forth certain confidentiality obligations and imposing certain restrictive covenants on Employee;

WHEREAS, upon hiring, as an incentive for Employee to participate in the success and growth of Holdings, Employee was provided certain units in Holdings as a consequence of Employee's employment as set forth in a VYGR Holdings LLC Award Agreement (the "**Award Agreement**");

WHEREAS, in conjunction with the ongoing bankruptcy proceedings of Voyager Digital Holdings, Inc. *et al.*, Employer decided to terminate all of its employees, including Employee, with an effective date of November 30, 2022 (the "**Effective Date**");

WHEREAS, Employer agrees that it will pay all accrued base pay in accordance with the Employer's regular payroll practices, less all relevant taxes and other withholdings, through the Effective Date;

WHEREAS, Employer has agreed to release Employee from the restrictive covenants in Employee's EPII while other surviving provisions shall remain in full force and effect as set forth therein;

WHEREAS, Employee agrees that all unvested and vested units in Holdings shall be considered null and void as a consequence of the termination; and

WHEREAS, Holdings has agreed to release Employee from the restrictive covenants in Employee's Award Agreement while other surviving provisions shall remain in full force and effect as set forth therein;

NOW, THEREFORE, in consideration of the premises set out above and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.    <u>Salary Payments</u>. Employer agrees that it will pay all accrued base pay in accordance with the Employer's regular payroll practices, less all relevant taxes and other withholdings, through the Effective Date.

2.    <u>Extinguishment of Units</u>. As of the Effective Date, the Parties agree that all of Employee's vested or unvested Series P Units in Holdings as set forth in the Award Agreement shall be considered null and void as a consequence of the termination.

3.      Return of Property. On or prior to the Effective Date, the Employee must return all Employer's and Holdings' property, including laptops and monitors, electronically stored documents or files, physical files, and any other Employer and Holdings property in the Employee's possession, to be confirmed by a representative of Employer.

4.      Employee Representations. The Employee specifically represents, warrants, and confirms that the Employee (a) has not filed any claims, complaints, or actions of any kind against the Employer with any federal, state, or local court or government or administrative agency;  (b) has been properly paid for all hours worked for the Employer; and (c) has received all salary, wages, commissions, bonuses, and other compensation due to the Employee, including as set forth herein; and (d) has not engaged in and is not aware of any unlawful conduct relating to the business of the Employer. If any of these statements is not true, the Employee cannot sign this Agreement and must notify the Employer immediately in writing of the statements that are not true.

5.      Employee's General Release and Waiver of Claims. In exchange for the consideration provided in this Agreement, Employee and the Employee's heirs, executors, representatives, administrators, agents, and assigns (collectively, the "**Releasors**") irrevocably and unconditionally fully and forever waive, release, and discharge the Employer, including the Employer's parents, subsidiaries, affiliates, predecessors, successors, and assigns, and each of its and their respective officers, directors, employees, contractors, members and managers, in their corporate and individual capacities, including but not limited to Holdings, Voyager Digital Holdings, Inc., and Voyager Digital Securities, LLC (collectively, the "**Released Parties**"), from any and all claims, demands, actions, causes of actions, judgments, rights, fees, damages, debts, obligations, liabilities, and expenses (inclusive of attorneys' fees) of any kind whatsoever, whether known or unknown (collectively, "**Claims**"), that Releasors may have or have ever had against the Released Parties, or any of them, arising out of, or in any way related to the Employee's hire, benefits, employment, termination, or separation from employment with the Employer by reason of any actual or alleged act, omission, transaction, practice, conduct, occurrence, or other matter from the beginning of time up to and including the date of the Employee's execution of this Agreement, including, but not limited to:

(a)      any and all claims under Title VII of the Civil Rights Act of 1964 (Title VII), the Americans with Disabilities Act (ADA), the Family and Medical Leave Act (FMLA) (regarding existing but not prospective claims), the Fair Labor Standards Act (FLSA), the Equal Pay Act, the Employee Retirement Income Security Act (ERISA) (regarding unvested benefits), the Civil Rights Act of 1991, Section 1981 of U.S.C. Title 42, the Fair Credit Reporting Act (FCRA), the Worker Adjustment and Retraining Notification (WARN) Act, the Genetic Information Nondiscrimination Act (GINA), the Illinois Human Rights Act (IHRA), the Right to Privacy in the Workplace Act, the Illinois Worker Adjustment and Retraining Notification Act, the Illinois One Day Rest in Seven Act, the Illinois Employment Contract Act, the Illinois Labor Dispute Act, the Victims' Economic Security and Safety Act, the Illinois Whistleblower Act, the Illinois Equal Pay Act, the Illinois Biometric Information Privacy Act, the Illinois Constitution, as well as any claims under local statutes and ordinances that may be legally waived and released, including the Cook County Human Rights Ordinance, the Chicago Human Rights Ordinance, all including any amendments and their respective implementing regulations, and any other federal, state, local, or foreign law (statutory, regulatory, or otherwise) that may be legally

2

waived and released; however, the identification of specific statutes is for purposes of example only, and the omission of any specific statute or law shall not limit the scope of this general release in any manner;

(b)     any and all claims for compensation of any type whatsoever, including but not limited to claims for salary, wages, bonuses, commissions, incentive compensation, vacation, and severance that may be legally waived and released;

(c)     any and all claims arising under tort, contract, and quasi-contract law, including but not limited to claims of breach of an express or implied contract, tortious interference with contract or prospective business advantage, breach of the covenant of good faith and fair dealing, promissory estoppel, detrimental reliance, invasion of privacy, nonphysical injury, personal injury or sickness or any other harm, wrongful or retaliatory discharge, fraud, defamation, slander, libel, false imprisonment, and negligent or intentional infliction of emotional distress;

(d)     any and all claims for monetary or equitable relief, including but not limited to attorneys' fees, back pay, front pay, reinstatement, experts' fees, medical fees or expenses, costs and disbursements, punitive damages, liquidated damages, and penalties; and

(e)     indemnification rights the Employee may have against the Employer.

However, this general release and waiver of claims excludes, and the Employee does not waive, release, or discharge: (A) any right to file an administrative charge or complaint with, or testify, assist, or participate in an investigation, hearing, or proceeding conducted by, the Equal Employment Opportunity Commission or other similar federal or state administrative agencies, although the Employee waives any right to monetary relief related to any filed charge or administrative complaint; (B) any right to report allegations of unlawful conduct, including criminal conduct and unlawful employment practices, to federal, state, or local authorities; and (C) any right to make claims under the Illinois Workers' Compensation Act, the Illinois Workers' Occupational Disease Act, the Employee Credit Privacy Act, the Illinois Wage Payment and Collection Act, the Illinois Unemployment Insurance Act, and any claims that cannot be waived by law, such as claims for unemployment benefit rights and workers' compensation.

6.     <u>Release from Restrictive Covenants</u>. As of the Effective Date, the Employer and Holdings hereby waive any and all rights they have to demand compliance with or to enforce provisions by which the Employee has agreed not to compete with the Employer and/or Holdings and not to solicit Employer's and/or Holdings' customers and employees in future employment as set forth in Section 4 of the EPII and in the Restrictive Covenants Section of the Award Agreement. This Agreement does not waive, release, or modify any other obligations that survive the Employee's termination of employment as set forth in the Employment Agreement, EPII, Award Agreement, or such other agreement, including but not limited to confidentiality obligations contained in such agreements, which shall remain in full force and effect and are not altered by this Agreement.

7.     <u>Knowing and Voluntary Acknowledgment</u>. The Employee specifically agrees and acknowledges that (a) the Employee has read this Agreement in its entirety and understands all

3

of its terms; (b) by this Agreement, the Employee has been advised to consult with an attorney before executing this Agreement before signing this Agreement; (c) the Employee knowingly, freely, and voluntarily assents to all of this Agreement's terms and conditions including, without limitation, the waiver, release, and covenants contained in it; (d) the Employee is signing this Agreement, including the waiver and release, in exchange for good and valuable consideration in addition to anything of value to which the Employee is otherwise entitled; and (e) the Employee is not waiving or releasing rights or claims that may arise after the Employee signs this Agreement.

8.      <u>Successors and Assigns</u>. The Employer may freely assign this Agreement at any time. This Agreement shall inure to the benefit of the Employer and its successors and assigns. The Employee may not assign this Agreement in whole or in part. Any purported assignment by the Employee shall be null and void from the initial date of the purported assignment.

9.      <u>Governing Law, Jurisdiction, and Venue</u>. This Agreement and all matters arising out of or relating to this Agreement and the Employee's employment or termination of employment with Employer, whether sounding in contract, tort, or statute, for all purposes shall be governed by and construed in accordance with the laws of Delaware (including its statutes of limitations) without regard to any conflicts of laws principles that would require the laws of any other jurisdiction to apply. Any action or proceeding by either of the Parties to enforce this Agreement shall be brought only in any state or federal court located in the state of Illinois, county of Cook. The Parties hereby irrevocably submit to the exclusive jurisdiction of these courts and waive the defense of inconvenient forum to the maintenance of any action or proceeding in such venue.

10.     <u>Entire Agreement</u>. Unless specifically provided herein, this Agreement contains all of the understandings and representations between Employer and Employee relating to the subject matter hereof and supersedes all prior and contemporaneous understandings, discussions, agreements, representations, and warranties, both written and oral, regarding such subject matter.

11.     <u>Modification and Waiver</u>. No provision of this Agreement may be amended or modified unless the amendment or modification is agreed to in writing and signed by the Employee and the Employer. No waiver by either Party of any breach by the other party of any condition or provision of this Agreement to be performed by the other Party shall be deemed a waiver of any similar or dissimilar provision or condition at the same or any prior or subsequent time, nor shall the failure of or delay by any Party in exercising any right, power, or privilege under this Agreement operate as a waiver thereof to preclude any other or further exercise thereof or the exercise of any other such right, power, or privilege.

12.     <u>Severability</u>. If any provision of this Agreement is found by a court of competent jurisdiction to be invalid, illegal, or unenforceable in any respect, or enforceable only if modified, such finding shall not affect the validity of the remainder of this Agreement, which shall remain in full force and effect and continue to be binding on the Parties. The Parties further agree that any such court is expressly authorized to modify any such invalid, illegal, or unenforceable provision of this Agreement instead of severing the provision from this Agreement in its entirety, whether by rewriting, deleting, or adding to the offending provision, or by making such other modifications as it deems necessary to carry out the intent and agreement

4

of the Parties as embodied in this Agreement to the maximum extent permitted by law. Any such modification shall become a part of and treated as though originally set forth in this Agreement. If such provision or provisions are not modified, this Agreement shall be construed as if such invalid, illegal, or unenforceable provisions had not been set forth in it. The Parties expressly agree that this Agreement as so modified by the court shall be binding on and enforceable against each of them.

13.    Interpretation. Captions and headings of the sections and paragraphs of this Agreement are intended solely for convenience and no provision of this Agreement is to be construed by reference to the caption or heading of any section or paragraph. Moreover, this Agreement shall not be construed against either Party as the author or drafter of the Agreement.

14.    Counterparts. The Parties may execute this Agreement in counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one and the same instrument. Delivery of an executed counterpart's signature page of this Agreement by email in portable document format (.pdf), or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document has the same effect as delivery of an executed original of this Agreement.

15.    Notices. All notices under this Agreement must be given in writing by receipted email at the addresses indicated in this Agreement or any other address designated in writing by either Party. When providing written notice to Employer, a copy must be provided to Employer's Designated Representative at the address below.

Notice to Employer:

[NOTICE ADDRESS]

Notice to Holdings:

[NOTICE ADDRESS]

Notice to the Employee:

[EMPLOYEE NAME]
Address:

_____
_____
_____
Email: _____

16.    Acknowledgment of Full Understanding. THE EMPLOYEE ACKNOWLEDGES AND AGREES THAT THE EMPLOYEE HAS FULLY READ, UNDERSTANDS, AND VOLUNTARILY ENTERS INTO THIS AGREEMENT. THE EMPLOYEE ACKNOWLEDGES AND AGREES THAT THE EMPLOYEE HAS HAD AN OPPORTUNITY TO ASK QUESTIONS AND CONSULT WITH AN ATTORNEY OF THE EMPLOYEE'S CHOICE BEFORE SIGNING THIS AGREEMENT. THE EMPLOYEE FURTHER ACKNOWLEDGES THAT THE EMPLOYEE'S SIGNATURE BELOW IS AN

5

AGREEMENT TO RELEASE EMPLOYER FROM ANY AND ALL CLAIMS THAT CAN BE
RELEASED AS A MATTER OF LAW.

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the Execution Date above.

<div style="margin-left: 50%;">

VYGR MANAGEMENT LLC


_____

Name: _____

Title: _____



VYGR HOLDINGS LLC


_____

Name: _____

Title: _____

</div>

_____

[EMPLOYEE NAME]

7