Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | Case No. 22-10943 (MEW) |
| Debtors. | (Jointly Administered) |

**NOTICE OF FILING OF FIRST AMENDED PLAN SUPPLEMENT**

**PLEASE TAKE NOTICE THAT** on January 13, 2023, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an *Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Adequacy of the Debtors' Disclosure Statement, (III) Approving (A) Procedures for Solicitation, (B) Forms of Ballots and Notices, (C) Procedures for Tabulation of Votes and (D) Procedures for Objections, and (IV) Granting Related Relief* (the "Disclosure Statement Order") [Docket No. 861],[2] (a) authorizing the debtors and debtors in possession (collectively, the "Debtors") to solicit votes for the *Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as modified, amended, or supplemented from time to time, the "Plan") [Docket No. 852]; (b) conditionally approving the *Second Amended Disclosure Statement Relating to the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "Disclosure Statement") [Docket No. 853] as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the Solicitation Packages; (d) approving procedures for soliciting, receiving, and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2] Capitalized terms not otherwise defined herein shall have the meaning given to them in the Plan or Disclosure Statement Order, as applicable.

KE 93766081

tabulating votes on the Plan and for filing objections to the Plan; and (e) scheduling the Combined Hearing.

**PLEASE TAKE FURTHER NOTICE THAT** on February 1, 2023, the above-captioned debtors and debtors-in-possession (the "Debtors") filed the plan supplement (the "Plan Supplement") [Docket No. 943], in support of the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors hereby file this amended plan supplement (the "First Amended Plan Supplement"), in support of the Plan and as contemplated by the Plan and the Disclosure Statement Order.

**PLEASE TAKE FURTHER NOTICE THAT** as contemplated by the Plan and the Disclosure Statement Order, the First Amended Plan Supplement includes the following documents:[3]

| Exhibit | Description |
|---|---|
| B | Schedule of Retained Causes of Action |
| C | Customer Onboarding Protocol |

**PLEASE TAKE FURTHER NOTICE THAT** the documents contained in the First Amended Plan Supplement are integral to, and are considered part of, the Plan. If the Plan is approved, the documents contained in the First Amended Plan Supplement will be approved by the Court pursuant to the Confirmation Order.

**PLEASE TAKE FURTHER NOTICE THAT** the Combined Hearing will commence on **March 2, 2023, at 10:00 a.m.** **prevailing Eastern Time**, before the Honorable Michael E. Wiles, in the United States Bankruptcy Court for the Southern District of New York, located at One Bowling Green, New York, New York 10004.

**PLEASE TAKE FURTHER NOTICE THAT** pursuant to the Court's General Order M-543, dated March 20, 2020 ("General Order M-543"), the Combined Hearing will be conducted telephonically. Parties wishing to participate in the Combined Hearing should do so by making arrangements through CourtSolutions LLC. Instructions to register for CourtSolutions LLC are attached to General Order M-543.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan or Disclosure Statement is **February 22, 2023, at 4:00 p.m.** **prevailing Eastern Time** (the "Objection Deadline"). Any objections to the relief sought at the Combined Hearing must: (a) be in writing; (b) conform to the Bankruptcy Rules and the Local Rules; (c) state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; and (d) be filed

---

[3] The Debtors anticipate filing the remaining Plan Supplement exhibits on or before February 15, 2023 as contemplated by the Disclosure Statement Order.

2

with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be *actually received* on or before the Objection Deadline:

| *Debtors* |  |
|---|---|
| **Voyager Digital Holdings, Inc.**<br>33 Irving Place, Suite 3060<br>New York, NY 10003<br>Attention:  Stephen Ehrlich and David Brosgol |  |
| *Counsel to the Debtors* | *Counsel to the Committee* |
| **Kirkland & Ellis LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Attention:  Joshua A. Sussberg; Christopher Marcus; Christine A. Okike; Allyson B. Smith | **McDermott Will & Emery LLP**<br>One Vanderbilt Avenue<br>New York, NY 10017<br>Attention:  Darren Azman; Joseph B. Evans; Grayson Williams; Gregg Steinman |
| *United States Trustee* |  |
| **Office of the United States Trustee for the Southern District of New York**<br>U.S. Federal Office Building<br>201 Varick Street, Room 1006<br>New York, NY 10014<br>Attention:  Richard Morrissey; Mark Bruh |  |

**PLEASE TAKE FURTHER NOTICE THAT** certain documents, or portions thereof, contained in the First Amended Plan Supplement remain subject to ongoing review, revision, and further negotiation among the Debtors and interested parties with respect thereto.  The Debtors reserve the right to alter, amend, modify, or supplement any document in this First Amended Plan Supplement in accordance with the Plan at any time before the Effective Date of the Plan or any such other date as may be provided for by the Plan or by order of the Court; *provided* that if any document in this First Amended Plan Supplement is altered, amended, modified, or supplemented in any material respect prior to the date of the Combined Hearing, the Debtors will file a blackline of such document with the Court.

**PLEASE TAKE FURTHER NOTICE THAT** copies of the Plan, the Disclosure Statement, the Disclosure Statement Order, and other pleadings filed in these chapter 11 cases are available free of charge by visiting the website of Stretto at http://www.cases.stretto.com/Voyager. You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov/ in accordance with the procedures and fees set forth therein.

[*Remainder of page intentionally left blank*]

| | |
|---|---|
| Dated: February 8, 2023<br>New York, New York | */s/ Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>Christopher Marcus, P.C.<br>Christine A. Okike, P.C.<br>Allyson B. Smith (admitted *pro hac vice*)<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone: (212) 446-4800<br>Facsimile: (212) 446-4900<br>Email: jsussberg@kirkland.com<br>cmarcus@kirkland.com<br>christine.okike@kirkland.com<br>allyson.smith@kirkland.com<br><br>*Counsel to the Debtors and Debtors in Possession* |

**Exhibit B**

**Schedule of Retained Causes of Action**

This **Exhibit B** contains the Schedule of Retained Causes of Action.

**Article IV.P** of the Plan provides as follows:

In accordance with section 1123(b) of the Bankruptcy Code, the Wind-Down Entity shall succeed to all rights to commence and pursue any and all Vested Causes of Action of the Debtors, whether arising before or after the Petition Date, including, without limitation, any actions specifically enumerated in the Schedule of Retained Causes of Action other than Causes of Action released, waived, settled, compromised, or transferred. Such rights shall be preserved by the Debtors and Wind-Down Debtors and shall vest in the Wind-Down Entity, with the Wind-Down Entity's rights to commence, prosecute, or settle such Causes of Action preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action expressly released, waived, settled, compromised, or transferred by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII of the Plan or pursuant to the Asset Purchase Agreement, which shall be deemed released and waived by the Debtors and Wind-Down Debtors as of the Effective Date.

The Wind-Down Trust may pursue such Causes of Action, as appropriate, in accordance with the best interests of the beneficiaries of the Wind-Down Trust and in accordance with the Wind-Down Trust Agreement and the Plan. **No Entity may rely on the absence of a specific reference in the Schedules of Assets and Liabilities or Statement of Financial Affairs, the Plan, the Plan Supplement, the Disclosure Statement, or the Schedule of Retained Causes of Action to any Cause of Action against it as any indication that the Debtors, the Wind-Down Debtors or the Wind-Down Trust, as applicable, will not pursue any and all available Causes of Action of the Debtors against it. The Wind-Down Trust, on behalf of the Debtors and the Wind-Down Debtors, expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise provided in the Plan, including Article VIII of the Plan.** Unless any Cause of Action of the Debtors is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order, the Wind-Down Trust, on behalf of the Debtors and Wind-Down Debtors and in accordance with the Wind-Down Trust Agreement, expressly reserves all such Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), lack of standing or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or Consummation.

The Wind-Down Trust, on behalf of the Debtors and Wind-Down Debtors, reserves and shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Cause of Action that a Debtor may hold against any Entity shall vest in the Wind-

Down Trust, except as otherwise provided in the Plan, including Article VIII of the Plan. The Wind-Down Trust, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Wind-Down Trust shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court in accordance with the Plan.

**The Causes of Action set forth in the Plan and as set forth below, are non-exclusive and are not intended to be a comprehensive list of all retained Causes of Action.**

**The Debtors and the Wind-Down Debtors expressly reserve the right to alter, modify, amend, remove, augment, or supplement the List of Retained Causes of Action as set forth below, at any time with additional Causes of Action. Failure to include any Cause of Action herein at any time shall not be a bar nor have any impact on the Wind-Down Debtors' rights to bring any Cause of Action not otherwise released pursuant to the Plan.**

All rights to enforce, commence, prosecute, pursue, settle, or take any other action with respect to any Cause of Action shall be preserved for the sole benefit of the Wind-Down Debtors, regardless of whether any Causes of Action or any entity is specifically referenced herein, in the Plan, in the Disclosure Statement, or in any Plan Supplement. The decision whether to enforce, commence, prosecute, pursue, settle, or take any other action with respect to any Causes of Action, or to refrain from doing so, shall remain within the discretion of the Wind-Down Trustee.

Notwithstanding, and without limiting the generality of Article IV.P of the Plan and the express disclaimers set forth above, this **Exhibit B** includes certain types of Causes of Actions preserved by the Debtors and the Wind-Down Debtors, subject to the terms of the Plan and the information provided in this **Exhibit B**. Without limiting the full universe of Causes of Action vesting in the Wind-Down Debtors under the Plan, these Causes of Action include (but are not limited to) the following types of claims:

I.    **Claims Related to Insurance Policies**

Unless otherwise released by the Plan, the Debtors expressly reserve all Causes of Action against the D&O Carriers (as defined in the Plan) based in whole or in part upon any and all insurance contracts and insurance policies to which any Debtor or Wind-Down Debtor is a party or pursuant to which any Debtor or Wind-Down Debtor has any rights whatsoever, regardless of whether such contract or policy is specifically identified in the Plan, this Plan Supplement, or any amendments thereto, including, without limitation, Causes of Action against insurance carriers, reinsurance carriers, insurance brokers, underwriters, occurrence carriers, or surety bond issuers relating to coverage, indemnity, contribution, reimbursement, or any other matters. These Causes of Action include, without limitation, the Non-Released D&O Claims and the Non-Released Insurance Claims, as such terms are defined in the Plan.

2

**II.     Claims Related to Tax Refunds**

Unless otherwise released by the Plan, the Debtors expressly reserve all Causes of Action against federal, state, local, or international taxing authorities based in whole or in part upon any and all tax obligations, tax credits, refunds, offsets, or other claims to which any Debtor or Wind-Down Debtor is a party or pursuant to which any Debtor or Wind-Down Debtor has any rights whatsoever, including, without limitation, against or related to all federal, state, local, or international taxing authorities that owe or that may in the future owe money related to tax obligations, tax credits, refunds, offsets, or other claims to the Debtors or the Wind-Down Debtors, regardless of whether such entity is specifically identified herein.

**III.    Claims, Defenses, Cross-Claims, and Counter-Claims Related to Litigation and Possible Litigation, Including Adversary Proceedings**

Unless otherwise released by the Plan, the Debtors expressly reserve all Causes of Action against or related to all Entities that are party to or that may in the future become party to litigation, arbitration, any adversary proceeding in these chapter 11 cases (including, without limitation, *Voyager Digital Holdings, Inc. v. Lavine et al*, Adv. Case No. 22-01150), or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal or judicial or non-judicial, regardless of whether such Entity is specifically identified in the Plan, this Plan Supplement, or any amendments thereto, including, but not limited to, the 3AC Claims, Alameda Claims, and FTX Claims (each as defined in the Plan), and any such Claims against directors, officers, employees, managers, investment committee members, special committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, agents, trustees, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, or other professionals and/or advisors, or any other persons or entities affiliated with 3AC, Alameda or FTX, or any of their respective related parties, which include any Cause of Action assertable in the FTX Bankruptcy Cases or adversary proceedings initiated thereunder (including, without limitation, *Alameda Research Ltd. v. Voyager Digital LLC et al*, Adv. Case No. 23-50084).

**IV.    Claims Related to Accounts Receivable and Accounts Payable**

Unless otherwise released by the Plan, the Debtors expressly reserve all Causes of Action against or related to all Entities that owe or that may in the future owe money to the Debtors or Wind-Down Debtors, regardless of whether such Entity is expressly identified in the Plan, this Plan Supplement, or any amendments thereto.  Furthermore, the Debtors expressly reserve all Causes of Action against or related to all Entities who assert or may assert that the Debtors or Wind Down Debtors, as applicable, owe money to them.  The claims and Causes of Action reserved include Causes of Action against vendors, suppliers of goods and services, or any other parties.

3

V.   **Claims Related to Deposits, Adequate Assurance Postings, and Other Collateral Postings**

Unless otherwise released by the Plan, the Debtors and the Wind-Down Debtors expressly reserve all Causes of Action based in whole or in part upon any and all postings of a security deposit, adequate assurance payment, or any other type of deposit or collateral, regardless of whether such posting of security deposit, adequate assurance payment, or other type of deposit or collateral is specifically identified herein.

VI.  **Claims Related to Contracts and Leases**

Unless otherwise specifically released by the Plan, the Debtors and the Wind-Down Debtors expressly reserve the claims or Causes of Actions, based in whole or in part upon any and all contracts and leases to which any Debtor or Wind-Down Debtor is a party or pursuant to which any Debtor or Wind-Down Debtor has any rights whatsoever, regardless of whether such Entity is expressly identified in the Plan, this Plan Supplement, or any amendments thereto, including without limitation all contracts and leases that are assumed pursuant to the Plan, were previously assumed by the Debtors, or rejected by the Debtors. The claims and Causes of Actions reserved include, without limitation, claims and Causes of Action against vendors, suppliers of goods or services, customers, landlords, utilities, promoters, banks, or any other parties, unless such claims or Causes of Action were previously released through the Plan or separate written agreement executed by the Debtors for, among other things: (a) overpayments, back charges, duplicate payments, improper holdbacks, deposits, warranties, guarantees, indemnities, recoupment, or setoff; (b) breach of contract, wrongful or improper termination, suspension of services or supply of goods, or failure to meet other contractual or regulatory obligations; (c) failure to fully perform or to condition performance on additional requirements under contracts with any one or more of the Debtors before the assumption or rejection, if applicable, of such contracts; (d) payments, deposits, holdbacks, reserves, or other amounts owed by any creditor, utility, supplier, vendor, insurer, surety, factor, lender, bondholder, lessor, or other party; (e) any liens, including mechanic's, artisan's, materialmen's, possessory, or statutory liens held by any one or more of the Debtors; (f) environmental or contaminant exposure matters against landlords, lessors, environmental consultants, environmental agencies, or suppliers of environmental services or goods; (g) counterclaims and defenses related to any contractual obligations; (h) any turnover actions arising under section 542 or 543 of the Bankruptcy Code; (i) and unfair competition, interference with contract or potential business advantage, breach of contract, infringement of intellectual property, or any business tort claims.

VII. **Avoidance Actions**

Unless otherwise released by the Plan or transferred to the Purchaser pursuant to the Asset Purchase Agreement, the Debtors and the Wind-Down Debtors expressly reserve all actual or potential Causes of Action that may be brought by or on behalf of the Debtors, the Wind-Down Debtors, their Estates, or other authorized parties in interest to avoid a transfer of property or an obligation incurred by the Debtors (including, without limitation, the Retained Avoidance Actions under the Asset Purchase Agreement) pursuant to any applicable section of the Bankruptcy Code, including sections 502, 510, 542, 544, 545, 547 through and including 553, and 724(a) of the

Bankruptcy Code, under similar or related state or federal statutes and common law, including preference and fraudulent transfer laws.

### VIII. Non-Released D&O Claims

The Debtors and the Wind-Down Debtors expressly reserve the Non-Released D&O Claims and may pursue such claims subject to the limitations in Articles IV.E and IV.F of the Plan. The Debtors and the Wind-Down Debtors also expressly reserve and may assert claims for aiding and abetting breach of fiduciary duties against third parties unaffiliated with the Debtors who are not Released Parties as defined in the Plan.

### IX. Promoter Claims

Unless otherwise released by the Plan, the Debtors and the Wind-Down Debtors expressly reserve all claims against public promoters, marketers, and advertisers of the Debtors who are not Released Parties as defined in the Plan for, among other things, false or deceptive marketing or advertising, false inducement of the Debtors' customers, misleading or fraudulent claims, aiding and abetting breaches of fiduciary duty, and other claims or causes of action relating to any oral or written statements made in connection with the Debtors' services.

### X. Claims Against Professional Persons

Unless identified as a "Released Professional", or otherwise released or exculpated by the Plan, the Debtors and the Wind-Down Debtors expressly reserve all claims against any attorneys, financial advisors, investment bankers, auditors, or other professional persons for any claims or causes of action, including, without limitation, negligence, malpractice, fraud, misrepresentation, and aiding and abetting breaches of fiduciary duty in connection with services rendered to the Debtors.

### XI. Contributed Third-Party Claims

The Debtors and the Wind-Down Debtors expressly reserve all Contributed Third-Party Claims, subject to the procedures identified in Articles IV.Q and IV.R of the Plan and the ballots, which such Contributed Third-Party Claims shall have been irrevocably contributed to the Wind-Down Debtors.

*[Remainder of page intentionally left blank.]*

## Exhibit C

**Customer Onboarding Protocol**

# Customer Onboarding Protocol
## Voyager Digital, LLC to BAM Trading Services Inc. (d/b/a Binance.US)

## Timeline

| Phase | Claims Portal Live | Early Opt In | Post-Closing Assets Available | Post-Expiration |
|---|---|---|---|---|
| **Data** | *No transfer of customer data* | *Data of customers who opt in to early transfer sent on daily basis* | *All remaining customers' data transfers* | *Migration period expires* |
| **Est. Date** | 5 Jan 2023 | On or around 1 Feb 2023 | On or around 16 Mar | 3-6 mos. after closing, depending on jurisdiction |

## Experience

Voyager customers will go through 4 distinct phases pending the closing of the asset purchase agreement between Voyager and Binance.US.

**Phase 1: Claims Portal**

**Go-live date:** Already live

**Description:** Voyager app will begin showing a screen to customers that will give them details about their claim including the USD value of their assets as of July 5, 2022.



**Phase 2: Pre-Closing Data Transfer Opt-In**

**Go-live date:** First week of February 2023 *(tentative)*

In the Voyager app and via email, Voyager will inform customers of the asset purchase agreement Voyager entered into with Binance.US and announce that they will gain access to their cryptocurrency distributions on the Binance.US platform once the Binance.US purchase transaction closes.

Customers will be encouraged to start the process of connecting their existing Voyager account with a Binance.US account in order to facilitate these distributions. In order to do this, customers will need to consent to transferring their data to Binance.US before the closing of the transaction, which they will be able to do in the Voyager app. Customers will also be presented with a link to the Binance.US privacy policy, which will apply to their data after it transfers.

Once the customer consents, Voyager will share their data with Binance.US using a secured protocol. Voyager may periodically share customers' data with Binance.US in batches.

Binance.US will perform quality control checks on the data to ensure it is parsed, validated and meets Binace.US' KYC standards.

Binance.US will then check customers' data (SSN and date of birth) against its own existing customers to see if the Voyager customer already has an account with Binance.US.

Once these checks have been performed, customers whose data has been validated will either be notified that they already have an existing Binance.US account, or that they need to open a new Binance.US account, in accordance with the flows below.



**Case 1: For customers who already have a Binance.US account:**

If a customer has an account with Binance.US, they will get an email from Binance.US saying no further action is necessary from their side.



**Case 2: For customers who do not have a Binance.US account:**

If a customer does not have an account with Binance.US, they will receive an email invitation from Binance.US asking them to set-up an account. This email invitation will have a special link that will expedite Binance.US account creation. The link will take the customer to a Binance.US account creation flow where they will choose a password, accept the Binance.US terms of use and privacy policy, and verify (using SMS) the phone number that was registered with Voyager. All other customer profile data (SSN, date of birth, address, picture of an ID if present, etc.) will automatically be saved to their account.



**Case 3: Special Cases:**

There will be some special cases where the data sent by Voyager may not match what Binance.US has (e.g., date of birth for the same SSN is different, an email or phone number is registered with a different person, etc.). Binance.US will handle these special cases separately by redoing their Know Your Customer check, verifying their information using uploaded ID documents, or interacting directly with the customer if needed.

Certain users may reside in states where Binance.US is still working on securing the requisite licensing or authorization to operate (i.e., Hawaii, New York, Texas, and Vermont). Binance.US will not open accounts for customers who reside in these states until the required license or authorization is received.

Regardless of which of the 3 cases above applies, once an account is connected (using SSN and date of birth), there is no action necessary from the customer. The customer may choose to immediately begin using Binance.US for currently available services in their region; however, they will not be able to access their Voyager distributions until the transaction closes.

**Phase 3: After the asset purchase agreement between Binance.US and Voyager closes and distributions are sent by Voyager to Binance.US**

**Go-live date:** March 2023 *(tentative)*

**Case 1: For customers who have opted in to the pre-closing transfer of their data and whose accounts are already linked (Cases 1 and 2 in Phase 2 above)**

When the asset purchase agreement closes, Binance.US will receive distributions of cryptocurrency from Voyager in respect of customers who have already linked their Voyager accounts to their Binance.US accounts, and will make these distributions available to those customers in their Binance.US accounts within five business days of receiving those distributions. Customers will receive a notification / email when their distributions are available. At that point they may go to their Binance.US wallet and see the details of their distributions.



**Case 2: For customers who have not opted in to the pre-closing transfer of their data**

Voyager will send their data (such as SSN, date of birth, address, picture of an ID if present, etc.) to Binance.US upon the closing of the asset purchase agreement. As described in Phase 2 above, Binance.US will check this data (SSN and date of birth) against its own existing customers to see if the Voyager customer already has an account with Binance.US.

For customers who have Binance.US accounts, no further action is required. Binance.US will notify Voyager that such customer has an existing Binance.US account, and Voyager will send to Binance.US the distribution allocable to such customer. Binance.US will make such customers' distributions available to those customers in their Binance.US accounts within five business days of receiving those distributions.

Customers who do not have a Binance.US account as of this date will be sent an email asking them to set-up an account. The link will take the customer to a Binance.US account creation flow where they will choose a password, accept the Binance.US terms of use and privacy policy, and verify (using SMS) the phone number that was registered with Voyager. All other customer information profile data (SSN, date of birth, address, picture of an ID if present, etc.) will be automatically saved to their account. After a customer has accepted the Binance.US terms of use and privacy policy and verified their phone number, Binance.US will notify Voyager that such customer has opened a Binance.US account, and Voyager will send to Binance.US the distributions allocable to such customers. Binance.US will make such customers' distributions available to those customers in their Binance.US accounts within five business days of receiving those distributions.

**Case 3: Special Cases**

**Customer takes no action**

For customers that do not have a Binance.US account and have not created one following the closing of the purchase transaction, Binance.US will ask these customers to take action via email.

**Customer is from unsupported states**

If Binance.US receives a required license or authorization in an unsupported state (i.e., Hawaii, New York, Texas and Vermont) within 6 months of the closing of the asset purchase agreement, Binance.US will follow the procedures for customers who do not have previously existing Binance.US accounts, as described in Case 2 above.

To the extent Binance.US does not receive the required licensing and/or authorization to operate in the unsupported states within 6 months from the closing of the asset purchase agreement, Voyager will convert the distributions allocable to such customers to cash and will distribute them separately.

**Customer account has data issue / suspected fraud**

There will be some special cases where the data sent by Voyager may not match what Binance.US has. (e.g., date of birth for the same SSN is different, an email or phone number is registered with a different person, etc.). Binance.US will handle these special cases separately by redoing their Know Your Customer check, verifying their information using uploaded ID documents, or interacting directly with the customer if needed. Voyager app will show a 30-digit account number during phase 3. This may be used by Binance.US to verify ownership of assets on Voyager.



**Phase 4: Post-expiration**

For customers who have not accepted the Binance.US terms of use and privacy policy and otherwise taken necessary action to open an account, if required, by 3 months following the closing of the asset purchase agreement, Binance.US will liquidate their cryptocurrency distributions and deliver the resulting cash to Voyager for distribution in accordance with Voyager's bankruptcy plan.

This time period will be extended to 6 months for users in unsupported jurisdictions (i.e., Hawaii, New York, Texas and Vermont).

