Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**CERTIFICATE OF NO OBJECTION REGARDING**
**DEBTORS' MOTION FOR ENTRY OF AN ORDER(I) APPROVING**
**POST HOC THE CONSENT OF THE MANAGER AND MEMBERS**
**OF VYGR MANAGEMENT LLC AND (II) GRANTING RELATED RELIEF**

Pursuant to 28 U.S.C. § 1746, rule 9075-2 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), and in accordance with this Court's case management procedures set forth in the *Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No. 240] (the "Case Management Order"), the undersigned counsel for the above-captioned debtors and debtors in possession (the "Debtors") hereby certifies as follows:

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

1.    On February 6, 2023, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Approving Post Hoc the Consent of the Manager and Members of VYGR Management LLC and (II) Granting Related Relief* [Docket No. 975] (the "Motion").

2.    In accordance with the Case Management Order, responses or objections to the Motion and the relief requested therein were due no later than February 15, 2023, at 4:00 p.m., prevailing Eastern Time (the "Objection Deadline").  Local Rule 9075-2 provides that the motion may be granted without a hearing if (a) no objections or other responsive pleadings have been filed on or before the applicable objection deadline and (b) the attorney for the entity that filed the motion complies with such rule.

3.    As of the filing of this certificate of no objection, more than forty-eight hours have elapsed since the Objection Deadline and, to the best of my knowledge, no responsive pleading to the Motion has been (a) filed with the Court on the docket of the above-captioned chapter 11 cases or (b) served on the Debtors or their counsel.

4.    Accordingly, the Debtors respectfully request entry of the proposed order attached hereto as **Exhibit A** (the "Proposed Order") at the Court's earliest convenience.

*[Remainder of page intentionally left blank.]*

Dated: February 17, 2023          /s/ Joshua A. Sussberg
New York, New York                **KIRKLAND & ELLIS LLP**
                                  **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                  Joshua A. Sussberg, P.C.
                                  Christopher Marcus, P.C.
                                  Christine A. Okike, P.C.
                                  Allyson B. Smith (admitted *pro hac vice*)
                                  601 Lexington Avenue
                                  New York, New York 10022
                                  Telephone:     (212) 446-4800
                                  Facsimile:     (212) 446-4900
                                  Email:         jsussberg@kirkland.com
                                                 cmarcus@kirkland.com
                                                 christine.okike@kirkland.com
                                                 allyson.smith@kirkland.com

                                  *Counsel to the Debtors and Debtors in Possession*

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER (I) APPROVING POST HOC THE CONSENT**
**OF THE MANAGER AND MEMBERS OF VYGR**
**MANAGEMENT LLC AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the Debtors for entry of an order (this "Order"),

(i) approving on a post hoc basis the entry into the consent of the manager and members of VYGR

Management LLC (the "Consent") and a related agreement among VYGR Holdings LLC

("Holdings") and its members (the "Related Agreement"), annexed as **Exhibit 1** hereto, to

(a) permit VYGR Management LLC ("Management," and together with VYGR Holdings LLC,

the "Joint Venture") to terminate its current employees, (b) permit Management and Voyager

Digital Holdings, Inc. ("Voyager") to waive the No Hiring or Solicitation of Employees provision

of the Side Letter dated July 31, 2021, by and among Market Rebellion, LLC ("Market

Rebellion"), Voyager, and Management (the "Management Side Letter"), (c) permit VYGR

Holdings LLC ("Holdings") and Voyager to waive the No Hiring or Solicitation of Employees

provision of the Side Letter dated July 31, 2021, by and among Market Rebellion, Voyager, and

Holdings (the "Holdings Side Letter," and together with the Management Side Letter, the "Side

Letters"), (d) permit Market Rebellion to hire Management's terminated employees, and (e) have

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC
(8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY
10003.

the terminated employees provide Management, Holdings, Market Rebellion, Voyager, and Voyager Digital Securities, LLC ("VDS") with a full and complete release from all claims and causes of action of any kind or nature whatsoever, including severance claims (if any), related to the employees' hire, benefits, employment, termination, or separation from employment with Management, and (ii) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefore, it is HEREBY FOUND AND DETERMINED THAT:

1.      The Motion is granted in its entirety, subject to the terms and conditions contained herein.

2.      The Consent and the Related Agreement are approved as of November 29, 2022,

and this Order and the Consent and the Related Agreement shall be binding retroactively upon and govern the acts of all persons and entities, including, without limitation, Voyager, Management, Holdings, and Market Rebellion, their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee or chapter 7 trustee hereinafter appointed for the Debtors' estates, all creditors of the Debtors (whether known or unknown), filing agents, filing officers, title agents, recording agencies, governmental authorities, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Joint Venture.

3.      The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby retroactively lifted with respect to Market Rebellion to the extent necessary, without further order of the Court, to allow Market Rebellion to deliver any notice provided for in the Consent and to take any and all actions permitted under the Consent in accordance with the terms and conditions thereof.

4.      Voyager will continue to cooperate with Market Rebellion and Market Rebellion will continue to cooperate with Voyager, in each case in a commercially reasonable manner, in each case to ensure that the steps contemplated by the Consent, to the extent not already implemented, are implemented.

5.      This Order shall inure retroactively to the benefit of Market Rebellion, Voyager, the Debtors, and their respective successors and assigns, including but not limited to any chapter 11 trustee or chapter 7 trustee that may be appointed in the Debtors' cases, and shall be binding upon any trustee, party, entity, or fiduciary that may be appointed in connection with these cases or any other or further cases involving the Debtors, whether under chapter 7 or chapter 11 of the

Bankruptcy Code.

6.      The Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order and the Consent and the Related Agreement in all respects and to decide any disputes concerning this Order and the Consent and the Related Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Consent and the Related Agreement and this Order including, but not limited to, the interpretation of terms, conditions, and provisions hereof and thereof, the status, nature, and extent of the Joint Venture and all issues and disputes arising in connection with the relief authorized herein.

7.      Notwithstanding Bankruptcy Rules 6004 and 7062, this Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a) and shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.

8.      The provisions of this Order are non-severable and mutually dependent.

9.      To the extent any provisions of this Order conflict with the terms and conditions of the Consent or the Related Agreement, this Order shall govern and control.

10.      The Debtors are authorized retroactively to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

New York, New York
Dated: _____, 2023

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

## **Exhibit 1**

**Consent of the Manager and Members of VYGR Management LLC and the Related Agreement**

Execution Version

## CONSENT OF THE MANAGER AND MEMBERS
## OF VYGR MANAGEMENT LLC

### Dated as of November 29, 2022

The undersigned, being the sole Manager and all of the Members of VYGR Management LLC, a Delaware limited liability company (the "Company"), acting pursuant to the provisions of the Company's Amended and Restated Limited Liability Company Agreement dated July 31, 2021 (the "LLC Agreement"), hereby take the following action (capitalized terms herein shall have the meaning set forth in the LLC Agreement):

**WHEREAS**, the Company does not have capital sufficient to continue its operations and the Manager has recommended, and the Members agree, that it is in the best interest of the Company to terminate all employees of the Company;

**WHEREAS**, each of the terminated employees was a previous employee of Market Rebellion, LLC ("Market Rebellion") or a consultant of Market Rebellion, and Market Rebellion has agreed to hire all of the terminated employees;

**WHEREAS**, the Company, Market Rebellion and Voyager Digital Holdings, Inc. ("Voyager") are parties to a Side Letter dated July 31, 2021; and

**WHEREAS**, the Company and Voyager agree to waive Section 5 (No Hiring or Solicitation of Employees) of the Side Letter to the extent necessary to permit Market Rebellion to hire all of the terminated employees.

**NOW, THEREFORE, BE IT RESOLVED**, that the Manager, on behalf of the Company, is authorized to notify all employees of the Company that their employment with the Company is terminated effective November 30, 2022;

**FURTHER RESOLVED**, that Section 5 (No Hiring or Solicitation of Employees) of the Side Letter is hereby waived effective the date hereof with respect to the terminated employees, and the Company and Voyager hereby acknowledge that Market Rebellion has represented that it will be offering employment to each of the terminated employees;

**FURTHER RESOLVED**, each of the terminated employees shall provide the Company, Voyager, VYGR Holdings LLC ("Holdings"), and Voyager Digital Securities, LLC ("VDS") with a full and complete release of all claims and causes of action of any kind or nature whatsoever arising out of their employment, including severance claims (if any) related to Company's termination of the employees; and

**FURTHER RESOLVED**, that Market Rebellion, at the direction of the Company, will cause any Company, Holdings or VDS property on laptops maintained by the employees (such laptops being the property of Market Rebellion) to be permanently erased and any user names and passwords to the Company's, Holdings' or VDS's share drives or similar cloud storage to be transferred to the Company, Holdings or VDS at Market Rebellion's sole expense (if any), and no

Execution Version

employees shall be permitted to retain or use Company, Holdings or VDS property in connection with such employee's employment by Market Rebellion or otherwise, such transfer to be confirmed by a representative of the Company;

FURTHER RESOLVED, that for the avoidance of doubt, all claims that Voyager may have against Market Rebellion are preserved by this Written Consent; and

FURTHER RESOLVED, that the Company and Market Rebellion acknowledge that Voyager shall file a motion seeking either (a) approval of this Written Consent by the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") or (b) the Bankruptcy Court's determination that court approval of this Written Consent is not necessary.

This Written Consent may be signed in one or more counterparts, each of which shall be deemed an original, but all of which together, once assembled, shall constitute one and the same instrument. Counterparts may be delivered via facsimile, electronic mail (including pdf or any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

[Signature Page Follows]

Execution Version

IN WITNESS WHEREOF, the undersigned have executed this Consent of Manager and Members of VYGR Management LLC as of the date set forth above.

Manager:

VYGR Management LLC

By _____

Stephen Ehrlich, Manager

Members:

Market Rebellion, LLC

By _____
Its _____

Voyager Digital Holdings, Inc.

By _____
Its   Chief Executive Officer

Execution Version

IN WITNESS WHEREOF, the undersigned have executed this Consent of Manager and Members of VYGR Management LLC as of the date set forth above.

Manager:

VYGR Management LLC

By_____
     Stephen Ehrlich, Manager


Members:


Market Rebellion, LLC

By_____
Its_____Managing Partner_____


Voyager Digital Holdings, Inc.

By_____
Its_____

Execution Version

## AGREEMENT

### Dated as of November 29, 2022

Consistent with the Consent of the Manager and Members of VYGR Management LLC dated as of November 29, 2022, each of Voyager Digital Holdings, Inc. ("Voyager") and VYGR Holdings LLC ("Holdings") hereby agree that Section 8 (No Hiring or Solicitation of Employees) of the certain Side Letter dated July 31, 2021 among Market Rebellion, LLC ("Market Rebellion"), Voyager and Holdings is hereby waived under the Side Letter to the extent necessary to permit Market Rebellion to hire the terminated employees as described in such Consent, effective the date hereof.

Market Rebellion, LLC

By_____
Its_____ Managing Partner

Voyager Digital Holdings, Inc.

By_____
Its_____

VYGR Holdings LLC

By_____
         Stephen Ehrlich, Manager

Execution Version

**AGREEMENT**

**Dated as of November 29, 2022**

Consistent with the Consent of the Manager and Members of VYGR Management LLC dated as of November 29, 2022, each of Voyager Digital Holdings, Inc. ("Voyager") and VYGR Holdings LLC ("Holdings") hereby agree that Section 8 (No Hiring or Solicitation of Employees) of the certain Side Letter dated July 31, 2021 among Market Rebellion, LLC ("Market Rebellion"), Voyager and Holdings is hereby waived under the Side Letter to the extent necessary to permit Market Rebellion to hire the terminated employees as described in such Consent, effective the date hereof.

Market Rebellion, LLC

By_____
Its_____

Voyager Digital Holdings, Inc.

By_____
Its_____
        Chief Executive Officer

VYGR Holdings LLC

By_____
        Stephen Ehrlich, Manager

## Exhibit 2

**Separation Agreement**

## SEPARATION AGREEMENT

This Separation Agreement (the "**Agreement**") is entered into by and between VYGR Management LLC, a Delaware limited liability company (the "**Employer**"), VYGR Holdings LLC, a Delaware limited liability company ("**Holdings**") and [EMPLOYEE NAME] (the "**Employee**"), as of [date]. The Employer, Holdings, and Employee are collectively referred to as the "**Parties**."

WHEREAS, Employee began working for Employer on or about [DATE] as set forth in the agreement between Employee and Employer (the "**Employment Agreement**");

WHEREAS, at the start of Employee's employment, he signed an Employee Proprietary Information and Inventions Agreement with Employer ("**EPII**") setting forth certain confidentiality obligations and imposing certain restrictive covenants on Employee;

WHEREAS, upon hiring, as an incentive for Employee to participate in the success and growth of Holdings, Employee was provided certain units in Holdings as a consequence of Employee's employment as set forth in a VYGR Holdings LLC Award Agreement (the "**Award Agreement**");

WHEREAS, in conjunction with the ongoing bankruptcy proceedings of Voyager Digital Holdings, Inc. *et al.*, Employer decided to terminate all of its employees, including Employee, with an effective date of November 30, 2022 (the "**Effective Date**");

WHEREAS, Employer agrees that it will pay all accrued base pay in accordance with the Employer's regular payroll practices, less all relevant taxes and other withholdings, through the Effective Date;

WHEREAS, Employer has agreed to release Employee from the restrictive covenants in Employee's EPII while other surviving provisions shall remain in full force and effect as set forth therein;

WHEREAS, Employee agrees that all unvested and vested units in Holdings shall be considered null and void as a consequence of the termination; and

WHEREAS, Holdings has agreed to release Employee from the restrictive covenants in Employee's Award Agreement while other surviving provisions shall remain in full force and effect as set forth therein;

NOW, THEREFORE, in consideration of the premises set out above and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. <u>Salary Payments. Employer agrees that it</u> will pay all accrued base pay in accordance with the Employer's regular payroll practices, less all relevant taxes and other withholdings, through the Effective Date<u>.</u>

2. <u>Extinguishment of Units. As of the Effective Date, the Parties agree that all of Employee's vested or unvested Series P Units in Holdings as set forth in the Award Agreement shall be considered null and void as a consequence of the termination.</u>

3.     <u>Return of Property</u>. On or prior to the Effective Date, the Employee must return all Employer's and Holdings' property, including laptops and monitors, electronically stored documents or files, physical files, and any other Employer and Holdings property in the Employee's possession, to be confirmed by a representative of Employer.

4.     <u>Employee Representations</u>. The Employee specifically represents, warrants, and confirms that the Employee (a) has not filed any claims, complaints, or actions of any kind against the Employer with any federal, state, or local court or government or administrative agency;  (b) has been properly paid for all hours worked for the Employer; and (c) has received all salary, wages, commissions, bonuses, and other compensation due to the Employee, including as set forth herein; and (d) has not engaged in and is not aware of any unlawful conduct relating to the business of the Employer. If any of these statements is not true, the Employee cannot sign this Agreement and must notify the Employer immediately in writing of the statements that are not true.

5.     <u>Employee's General Release and Waiver of Claims</u>. In exchange for the consideration provided in this Agreement, Employee and the Employee's heirs, executors, representatives, administrators, agents, and assigns (collectively, the "**Releasors**") irrevocably and unconditionally fully and forever waive, release, and discharge the Employer, including the Employer's parents, subsidiaries, affiliates, predecessors, successors, and assigns, and each of its and their respective officers, directors, employees, contractors, members and managers, in their corporate and individual capacities, including but not limited to Holdings, Voyager Digital Holdings, Inc., and Voyager Digital Securities, LLC (collectively, the "**Released Parties**"), from any and all claims, demands, actions, causes of actions, judgments, rights, fees, damages, debts, obligations, liabilities, and expenses (inclusive of attorneys' fees) of any kind whatsoever, whether known or unknown (collectively, "**Claims**"), that Releasors may have or have ever had against the Released Parties, or any of them, arising out of, or in any way related to the Employee's hire, benefits, employment, termination, or separation from employment with the Employer by reason of any actual or alleged act, omission, transaction, practice, conduct, occurrence, or other matter from the beginning of time up to and including the date of the Employee's execution of this Agreement, including, but not limited to:

(a)     any and all claims under Title VII of the Civil Rights Act of 1964 (Title VII), the Americans with Disabilities Act (ADA), the Family and Medical Leave Act (FMLA) (regarding existing but not prospective claims), the Fair Labor Standards Act (FLSA), the Equal Pay Act, the Employee Retirement Income Security Act (ERISA) (regarding unvested benefits), the Civil Rights Act of 1991, Section 1981 of U.S.C. Title 42, the Fair Credit Reporting Act (FCRA), the Worker Adjustment and Retraining Notification (WARN) Act, the Genetic Information Nondiscrimination Act (GINA), the Illinois Human Rights Act (IHRA), the Right to Privacy in the Workplace Act, the Illinois Worker Adjustment and Retraining Notification Act, the Illinois One Day Rest in Seven Act, the Illinois Employment Contract Act, the Illinois Labor Dispute Act, the Victims' Economic Security and Safety Act, the Illinois Whistleblower Act, the Illinois Equal Pay Act, the Illinois Biometric Information Privacy Act, the Illinois Constitution, as well as any claims under local statutes and ordinances that may be legally waived and released, including the Cook County Human Rights Ordinance, the Chicago Human Rights Ordinance, all including any amendments and their respective implementing regulations, and any

other federal, state, local, or foreign law (statutory, regulatory, or otherwise) that may be legally waived and released; however, the identification of specific statutes is for purposes of example only, and the omission of any specific statute or law shall not limit the scope of this general release in any manner;

(b)     any and all claims for compensation of any type whatsoever, including but not limited to claims for salary, wages, bonuses, commissions, incentive compensation, vacation, and severance that may be legally waived and released;

(c)     any and all claims arising under tort, contract, and quasi-contract law, including but not limited to claims of breach of an express or implied contract, tortious interference with contract or prospective business advantage, breach of the covenant of good faith and fair dealing, promissory estoppel, detrimental reliance, invasion of privacy, nonphysical injury, personal injury or sickness or any other harm, wrongful or retaliatory discharge, fraud, defamation, slander, libel, false imprisonment, and negligent or intentional infliction of emotional distress;

(d)     any and all claims for monetary or equitable relief, including but not limited to attorneys' fees, back pay, front pay, reinstatement, experts' fees, medical fees or expenses, costs and disbursements, punitive damages, liquidated damages, and penalties; and

(e)     indemnification rights the Employee may have against the Employer.

However, this general release and waiver of claims excludes, and the Employee does not waive, release, or discharge: (A) any right to file an administrative charge or complaint with, or testify, assist, or participate in an investigation, hearing, or proceeding conducted by, the Equal Employment Opportunity Commission or other similar federal or state administrative agencies, although the Employee waives any right to monetary relief related to any filed charge or administrative complaint; (B) any right to report allegations of unlawful conduct, including criminal conduct and unlawful employment practices, to federal, state, or local authorities; and (C) any right to make claims under the Illinois Workers' Compensation Act, the Illinois Workers' Occupational Disease Act, the Employee Credit Privacy Act, the Illinois Wage Payment and Collection Act, the Illinois Unemployment Insurance Act, and any claims that cannot be waived by law, such as claims for unemployment benefit rights and workers' compensation.

6.     <u>Release from Restrictive Covenants. As of the Effective Date, the Employer and Holdings hereby waive any and all rights they have to demand compliance with or to enforce provisions by which the Employee has agreed not to compete with the Employer and/or Holdings and not to solicit Employer's and/or Holdings' customers and employees in future employment as set forth in Section 4 of the EPII and in the Restrictive Covenants Section of the Award Agreement. This Agreement does not waive, release, or modify any other obligations that survive the Employee's termination of employment as set forth in the Employment Agreement, EPII, Award Agreement, or such other agreement, including but not limited to confidentiality obligations contained in such agreements, which shall remain in full force and effect and are not altered by this Agreement.</u>

7.    <u>Knowing and Voluntary Acknowledgment</u>. The Employee specifically agrees and acknowledges that (a) the Employee has read this Agreement in its entirety and understands all of its terms; (b) by this Agreement, the Employee has been advised to consult with an attorney before executing this Agreement before signing this Agreement; (c) the Employee knowingly, freely, and voluntarily assents to all of this Agreement's terms and conditions including, without limitation, the waiver, release, and covenants contained in it; (d) the Employee is signing this Agreement, including the waiver and release, in exchange for good and valuable consideration in addition to anything of value to which the Employee is otherwise entitled; and (e) the Employee is not waiving or releasing rights or claims that may arise after the Employee signs this Agreement.

8.    <u>Successors and Assigns</u>. The Employer may freely assign this Agreement at any time. This Agreement shall inure to the benefit of the Employer and its successors and assigns. The Employee may not assign this Agreement in whole or in part. Any purported assignment by the Employee shall be null and void from the initial date of the purported assignment.

9.    <u>Governing Law, Jurisdiction, and Venue</u>. This Agreement and all matters arising out of or relating to this Agreement and the Employee's employment or termination of employment with Employer, whether sounding in contract, tort, or statute, for all purposes shall be governed by and construed in accordance with the laws of Delaware (including its statutes of limitations) without regard to any conflicts of laws principles that would require the laws of any other jurisdiction to apply. Any action or proceeding by either of the Parties to enforce this Agreement shall be brought only in any state or federal court located in the state of Illinois, county of Cook. The Parties hereby irrevocably submit to the exclusive jurisdiction of these courts and waive the defense of inconvenient forum to the maintenance of any action or proceeding in such venue.

10.    <u>Entire Agreement</u>. Unless specifically provided herein, this Agreement contains all of the understandings and representations between Employer and Employee relating to the subject matter hereof and supersedes all prior and contemporaneous understandings, discussions, agreements, representations, and warranties, both written and oral, regarding such subject matter.

11.    <u>Modification and Waiver</u>. No provision of this Agreement may be amended or modified unless the amendment or modification is agreed to in writing and signed by the Employee and the Employer. No waiver by either Party of any breach by the other party of any condition or provision of this Agreement to be performed by the other Party shall be deemed a waiver of any similar or dissimilar provision or condition at the same or any prior or subsequent time, nor shall the failure of or delay by any Party in exercising any right, power, or privilege under this Agreement operate as a waiver thereof to preclude any other or further exercise thereof or the exercise of any other such right, power, or privilege.

12.    <u>Severability</u>. If any provision of this Agreement is found by a court of competent jurisdiction to be invalid, illegal, or unenforceable in any respect, or enforceable only if modified, such finding shall not affect the validity of the remainder of this Agreement, which shall remain in full force and effect and continue to be binding on the Parties. The Parties further agree that any such court is expressly authorized to modify any such invalid, illegal, or unenforceable provision of this Agreement instead of severing the provision from this

Final Template Form

Agreement in its entirety, whether by rewriting, deleting, or adding to the offending provision, or by making such other modifications as it deems necessary to carry out the intent and agreement of the Parties as embodied in this Agreement to the maximum extent permitted by law. Any such modification shall become a part of and treated as though originally set forth in this Agreement. If such provision or provisions are not modified, this Agreement shall be construed as if such invalid, illegal, or unenforceable provisions had not been set forth in it. The Parties expressly agree that this Agreement as so modified by the court shall be binding on and enforceable against each of them.

13.    <u>Interpretation</u>. Captions and headings of the sections and paragraphs of this Agreement are intended solely for convenience and no provision of this Agreement is to be construed by reference to the caption or heading of any section or paragraph. Moreover, this Agreement shall not be construed against either Party as the author or drafter of the Agreement.

14.    <u>Counterparts</u>. The Parties may execute this Agreement in counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one and the same instrument. Delivery of an executed counterpart's signature page of this Agreement by email in portable document format (.pdf), or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document has the same effect as delivery of an executed original of this Agreement.

15.    <u>Notices</u>. All notices under this Agreement must be given in writing by receipted email at the addresses indicated in this Agreement or any other address designated in writing by either Party. When providing written notice to Employer, a copy must be provided to Employer's Designated Representative at the address below.

Notice to Employer:

[NOTICE ADDRESS]

Notice to Holdings:

[NOTICE ADDRESS]

Notice to the Employee:

[EMPLOYEE NAME]
Address:

_____
_____
_____
Email: _____

16.    <u>Acknowledgment of Full Understanding</u>. THE EMPLOYEE ACKNOWLEDGES AND AGREES THAT THE EMPLOYEE HAS FULLY READ, UNDERSTANDS, AND VOLUNTARILY ENTERS INTO THIS AGREEMENT. THE EMPLOYEE ACKNOWLEDGES AND AGREES THAT THE EMPLOYEE HAS HAD AN OPPORTUNITY TO ASK QUESTIONS AND CONSULT WITH AN ATTORNEY OF THE EMPLOYEE'S CHOICE BEFORE SIGNING THIS AGREEMENT. THE EMPLOYEE

FURTHER ACKNOWLEDGES THAT THE EMPLOYEE'S SIGNATURE BELOW IS AN AGREEMENT TO RELEASE EMPLOYER FROM ANY AND ALL CLAIMS THAT CAN BE RELEASED AS A MATTER OF LAW.

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the Execution Date above.

VYGR MANAGEMENT LLC

_____

Name: _____

Title: _____

VYGR HOLDINGS LLC

_____

Name: _____

Title: _____

_____

[EMPLOYEE NAME]