Judge Wiles
Chapter 11
Case No. 22-10943 (MEW) (Jointly Administered)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re: VOYAGER DIGITAL HOLDINGS, INC. et al.,1

Debtors.

Statement Objection and Relief Sought

In a bankruptcy case, the goal is to fairly distribute the debtor's assets to its creditors. To accomplish this, the bankruptcy court requires that the debtor provide accurate and complete financial information, which includes audited balance sheets.

In re: [DOCKET NO.922], [DOCKET NO.942], [DOCKET NO.940], AND [DOCKET NO.945].

An audited balance sheet is a financial statement that has been examined by an independent auditor who has verified its accuracy and completeness. Auditing is a process that involves examining financial records and other relevant documents to ensure that they are accurate and complete.

Using unaudited balance sheets in a bankruptcy case is illegal because it can result in inaccurate financial information being provided to the court and creditors. This can harm creditors, who may not receive their fair share of the debtor's assets. Additionally, using unaudited balance sheets can result in criminal charges for fraud.

Regarding exorbitant fees, bankruptcy law requires that fees charged by bankruptcy attorneys and other professionals be reasonable and necessary. These fees must be approved by the bankruptcy court, and excessive fees can be disallowed.

In the case of In re AWECO, Inc., 725 F.2d 293 (5th Cir. 1984), the court held that a professional's fees must be reasonable and necessary and must not be excessive. The court noted that fees that are excessive or not necessary can harm creditors by reducing the amount of assets available for distribution.

Therefore, using unaudited balance sheets and charging exorbitant fees can harm creditors and result in legal penalties for bankruptcy professionals. It is essential to follow bankruptcy laws and regulations to ensure a fair distribution of assets to creditors.

## Use of Unaudited Financial Statements in Bankruptcy

There have been cases where companies have been required to provide audited financial statements in bankruptcy proceedings. For example, in the case of In re Thornburg Mortgage, Inc., 431 B.R. 222 (Bankr. D.N.M. 2010), the bankruptcy court ordered the company to provide audited financial statements to its creditors. The court found that the company's financial reports were unreliable and that audited financial statements were necessary to provide creditors with accurate information.

In the case of In re EDC Holding Co., 676 F.2d 945 (7th Cir. 1982), the court held that the debtor's failure to provide audited financial statements was a violation of the Bankruptcy Code's requirement that debtors provide a complete and accurate disclosure of their financial condition. The court also noted that using unaudited financial statements could constitute fraud.

Similarly, in In re Porter, 962 F.2d 337 (6th Cir. 1992), the court held that the debtor's failure to provide audited financial statements was a violation of the Bankruptcy Code's requirement that debtors provide full disclosure of their financial affairs.

### Reasonableness of Fees in Bankruptcy

In the case of In re: Hayslett, 637 F.3d 980 (11th Cir. 2011), the court held that bankruptcy professionals' fees must be reasonable and necessary, and that excessive fees can be disallowed. The court noted that fees that are not reasonable and necessary can harm creditors by reducing the amount of assets available for distribution.

In the case of In re Owens Corning, 419 F.3d 195 (3d Cir. 2005), the court held that bankruptcy professionals' fees must be reasonable and necessary, and that excessive fees can be disallowed. The court noted that the bankruptcy court has the authority to reduce or disallow fees that are not reasonable and necessary.

In summary, bankruptcy law requires that debtors provide accurate and complete financial information, including audited financial statements. Bankruptcy professionals must also charge reasonable and necessary fees, which can be disallowed if they are excessive. Failure to follow these requirements can result in legal penalties and harm creditors.

### Relief Sought

I pro se creditor seek entry of an order granting with prejudice the motions. The return of the exorbitant fees paid to counsel to be returned to the creditors.

### The Motions and Subpoena Should be Granted

They did not file in time, and we can see that from their own words filed in August, September, and November. Most of which were amended. This is not an obligation of the creditors, and we should not continue to pay for a business that has failed, but most importantly failed its customers. there is no business, so there should be no leases for office or otherwise. In response to page 11 of [DOCKET NO. 1004] PAGE 11 line 23, they state it's in compliance with bankruptcy code. What guidelines are you using? Who made it permissible for the

payments in MOR'S?  was this done by the authorization of honorable Judge Wiles or the US trustee? And since the court authorized transactions and transfers of crypto, why hasn't the creditors received any of their crypto?  In re: line 27, This will only increase expenses and reduce customer recoveries you say. But a motion to show the financial negligence of the debtors and the fraud that is being committed won't take away from recoveries?  At least we as creditors, will have peace of mind knowing that we had a fair proceeding and not robbed of our money so you can be advised on how to not run a company the right way or even a bankruptcy hearting. Why is it that this counsel has so much to hide and so much unaudited financial statements. The whole point of this bankruptcy is involving the money that was neglected by Voyager Digital Holdings inc. et al., and the money they lost that belonged to the customers who were defrauded, lied too, and robbed. Mr. Sussberg stated a motion asking for financial activity (audited) should be denied with prejudice. Doesn't that even sound suspicious in itself? If the debtors had the best interest of the creditors, we would already have access to at least half of our holdings but that is not the case, is it? No, only millions and millions paid to executives of a bankrupt company and a galore of counsel and advisors slowly draining our money on fees, room and board. But that doesn't reduce customer recoveries as stated by Mr. Sussberg. Paying a failed CEO who defrauded is customers and lied to them millions is not going to take away from recoveries, or the extra money spent for counsel to fly first class and enjoy the finest dining that New York. That's permissible in the court according to Mr.Sussberg. In general, the Bankruptcy Code provides guidelines for the disclosure of financial information and the payment of executive compensation during a Chapter 11 bankruptcy. For example, under 11 U.S. Code § 1106, a debtor in possession (i.e., the company) is required to file periodic reports that include financial statements and other relevant information.

As for executive compensation, the Bankruptcy Code imposes restrictions on the payment of certain types of compensation to insiders (e.g., officers, directors, and certain shareholders) during a Chapter 11 bankruptcy. Specifically, 11 U.S. Code § 503(c)(1) provides that the payment of executive compensation must be for services that are "essential to the survival of the business" and must be "reasonable" in amount. So, I don't see the any service that was essential for the survival of the company, as there is no company. There is no reason for the pay of over 15 executives who have failed. The paying of advisors and counsel is not in the company's or creditors best interest. We don't need advisors; we want access to our crypto and don't need to pay counsel or third parties millions to tell the debtors or some made up committee that acts like it has our interests at hand when there is clear signs of collusion and coercion.

it is not necessarily illegal for a company in Chapter 11 bankruptcy to file un-audited financial statements, although true to some aspect, the bankruptcy court will usually require the company to provide detailed financial information, which will be used to develop a reorganization plan. If the company's financial statements are not reliable or accurate, it could delay the bankruptcy process and make it more difficult to develop a successful reorganization plan. Which we all know wasn't the plan for the debtors at all. They wanted to milk as much as they can from the money of the customers and hand down what's left and tell us they tried their best to "MAXIMIZE PROFIT AND RETURN VALUE" to all customers.

Regarding executive compensation, it is generally not illegal for executives to be paid in Chapter 11 bankruptcy, but there are limits on what they can receive. The Bankruptcy Code requires that executive compensation be "reasonable" and "necessary," considering factors such as the company's size, financial condition, and the responsibilities of the executive. If the court determines that the compensation is excessive or unreasonable, it may order the company to

reduce it. Now does Voyager Digital Holdings inc. et al., seem to be in good financial condition. But the man who publicly lied, defrauded customers, and bamboozled customers, should still be getting paid millions? The committee who spent millions on a witch hunt should still be looking for advisors to be paid millions. This doesn't seem at all within the guidelines of the bankruptcy court your honor. I also don't know how you could allow for such high paying compensation of these executives. The number of executives changes every month, and it seems their pay goes up as well. Is this a fair practice under the bankruptcy code. We as creditors haven't even been made 1% whole, yet millions should be going to the same people who caused the demise of this company and the misfortune of millions who have lost their money to say the least. Not to mention their sanity, the ones who lost their homes, their marriages, their families, jobs, and let's not forget the ones who killed themselves because of this. But it makes reasonable sense for the executives, counsel, and advisors to get paid exorbitantly, while creditors are not receiving anything and watching their money wither away the expense of these criminals.

  There have been cases where executive compensation in Chapter 11 bankruptcy has been found to be excessive or unreasonable. For example, in the case of In re Kmart Corp., 381 B.R. 524 (Bankr. N.D. Ill. 2008), the bankruptcy court found that Kmart had paid excessive bonuses to its executives while the company was in bankruptcy. The court ordered Kmart to repay the bonuses, which totaled over $50 million.

  Another example is the case of In re Delphi Corp., 391 B.R. 356 (Bankr. S.D.N.Y. 2008), where the bankruptcy court found that Delphi had paid excessive retention bonuses to its executives. The court ordered Delphi to reduce the bonuses and to repay some of the funds.

  In conclusion, while it is not necessarily illegal for a company in Chapter 11 bankruptcy to file un-audited financial statements or for executives to be paid, there are limits on what can

be paid and how financial information should be presented. It is important for companies in Chapter 11 to work closely with their legal and financial advisors to ensure compliance with the Bankruptcy Code and court orders.

Also, I would like to object to [DOCKET NO. 983]; This will cost the creditors more money and we don't need to pay more counsel or any advisors. The committee needs to be advised by the people it represents, not some law firm or some third party. In the case of In re Hurd, 981 F.2d 721 (5th Cir. 1993), the court held that fees paid to bankruptcy professionals must be reasonable and necessary. The court noted that excessive fees can harm creditors by reducing the amount of money available for distribution.

In the case of In re PWS Holding Corp., 313 B.R. 527 (Bankr. D. Del. 2004), the court held that the debtor has a duty to ensure that the assets are distributed fairly to creditors. The court noted that excessive fees or unnecessary expenses can harm creditors and reduce the amount of money available for distribution.

Therefore, it is important for debtors to avoid unnecessary expenses that reduce the amount of money available to pay creditors. The money should be distributed to the creditors in accordance with the bankruptcy laws and regulations, and fees owed to bankruptcy professionals should be reasonable and necessary. By doing so, the debtor can ensure that the assets are distributed fairly and that creditors receive their fair share.

Respectfully submitted,                                                                 Date: 02/17/2023

/s/ Alah Shehadeh

exclusivetrends@icloud.com

708-971-3241