**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|   |   |   |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**DECLARATION OF MARK A. RENZI IN SUPPORT OF**
**DEBTORS' OMNIBUS OBJECTION TO (I) THE VOTING AMOUNT**
**ASSOCIATED WITH CERTAIN DISPUTED ACCOUNT HOLDER CLAIMS**
**AND (II) THE MERITS OF CERTAIN DISPUTED ACCOUNT HOLDER CLAIMS**

I, Mark A. Renzi, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

1.      I submit this declaration in support of the *Debtors' Omnibus Objection to (I) the Voting Amount Associated with Certain Disputed Account Holder Claims and (II) the Merits of Certain Disputed Account Holder Claims* [Docket No. 993] (the "Objection") and the *Notice of Filing of Amended Schedules Relating to the Debtors' Omnibus Objection to (I) the Voting Amount Associated with Certain Disputed Account Holder Claims and (II) the Merits of Certain Disrupted Account Holder Claims* [Docket No. 1002].[2]  I am a Managing Director at Berkeley Research Group, LLC ("BRG") and have served as financial advisor to Voyager Digital Holdings, Inc., and its Debtor affiliates since June 30, 2022.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]    Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Objection.

2.      The statements in this declaration are, except where specifically noted, based on my personal knowledge or opinion, on information that I have received from the Debtors' employees or advisors, or employees of BRG working directly with me or under my supervision, direction, or control, or from the Debtors' Books and Records maintained in the ordinary course of their business.  If I were called upon to testify, I could, and would, competently testify to the facts set forth herein on that basis.  I am authorized to submit this declaration on behalf of the Debtors.

3.      In evaluating the Disputed Claims, the Debtors, with the assistance of BRG and the Debtors' other advisors, thoroughly reviewed their Books and Records and the relevant Proofs of Claim, as well as the supporting documentation provided by each Claimant, if any, and have determined that each Disputed Claim should be reduced and allowed, reclassified, or disallowed, as applicable, as set forth in the Objection.  As such, I believe that the reduction and allowance, reclassification, or disallowance as applicable, of the Disputed Claims on the terms set forth in the Objection, consistent with the treatment set forth for each Disputed Claim on <u>Schedule 1</u> and <u>Schedule 2</u>, attached as <u>Exhibit 1</u> to the Voting Objection Order, and on <u>Schedule 1</u>, <u>Schedule 2</u>, and <u>Schedule 3</u>, attached as <u>Exhibit 1</u> to the Merit Objection Order, and which reflect the amounts listed in the Debtors' Books and Records for such Disputed Claims, is appropriate.

**A.      Disputed Claims.**

4.      After reviewing their Books and Records and the applicable Proofs of Claim, the Debtors, with the assistance of their advisors, determined that each Disputed Amount Claim listed on <u>Schedule 1</u> to the Voting Objection Order and <u>Schedule 1</u> to the Merit Objection Order assert amounts that are not actual liabilities of the Debtors.  Accordingly, I believe the Disputed Amount Claims should be reduced and allowed, or disallowed as applicable, to reflect the Debtors' scheduled amount for voting and allowance purposes.

5.     Further, the Debtors and their advisors determined that certain Disputed USD Claims listed on Schedule 2 to the Voting Objection Order and Schedule 2 to the Merit Objection Order improperly listed all or a portion of their Account Holder Claim in U.S. Dollars (the "Disputed USD Claims").  I understand that the Debtors did not hold cash for Account Holders who transacted on the Debtors' platform.  Rather, Metropolitan Commercial Bank held Cash on behalf of Account Holders in that certain "for the benefit of" account (the "FBO Account"), and all Account Holders were allowed to withdraw their cash from the FBO Account pursuant to that *Order (I) Authorizing the Debtors to (A) Honor Customer Withdrawals from the MC FBO Accounts, (B) Liquidate Cryptocurrency from Customer Accounts with a Negative Balance, (C) Sweep Cash Held in Third-Party Exchanges, (D) Conduct Ordinary Course Reconciliation of Customer Accounts, and (E) Continue to Stake Cryptocurrency, and (II) Granting Related Relief* (the "FBO Order") [Docket No. 247].  I have been informed that the FBO Account was closed on February 6, 2023 at 8 p.m. EST (the "FBO Closing Date"), and that any Account Holders that did not withdraw cash held in the FBO Account prior to the FBO Closing Date will be sent a check to their last known address.  Accordingly, I believe that the Disputed USD Claims should be disallowed for voting and allowance purposes as requested in the Objection.

6.     I understand that failure to reduce and allow or disallow the Disputed Claims, as applicable, on the merits could result in certain Claimants receiving an unwarranted recovery against the Debtors to the detriment of other creditors.  Therefore, I believe the Disputed Claims should be reduced and allowed, or disallowed, as applicable, to reflect the scheduled amounts as requested in the Objection.

7.     Additionally, the Debtors and their advisors determined that certain of the Disputed Claims assert a priority status that is not supported by the Bankruptcy Code.  Accordingly, I believe

such Disputed Claims should be reclassified as general unsecured claims as set forth in the Objection.

**B.    Account Holders' Asserted Claims.**

8.    In response to the Objection, I understand that the Debtors received informal responses from certain customers that assert their filed claims are correct, but do not account for the reconciliation of the negative U.S. dollar balances in their accounts following ACH Chargebacks (as defined below).  As explained more fully in the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief* (the "Cash Management Motion") [Docket No. 10], automated clearing house ("ACH") transactions, while critical to the Debtors' flow of funds, also leave the Debtors susceptible to fraudulent chargebacks by Account Holders (the "ACH Chargebacks"). Such ACH Chargebacks occur when an Account Holder purchases cryptocurrency on the Debtors' platform, and *after* the Debtors purchase such cryptocurrency at the Account Holder's instruction, the Account Holder informs their bank that such purchase was unauthorized.  The Account Holder's bank will then unilaterally reverse the ACH transfer, leaving the Account Holder with both the purchased cryptocurrency *and* the funds meant to pay for the purchase and leaving the Debtors with a corresponding deficit in the FBO Account.  As a result, a negative U.S. dollar balance is reflected in the Account Holder's Voyager account.

9.    To remedy negative U.S. dollar balances, I understand that the Debtors historically liquidated cryptocurrency assets from Account Holders' accounts sufficient to offset the negative balance associated with such Account Holder in the FBO Account.  The Debtors obtained authority

pursuant to the FBO Order to continue to liquidate cryptocurrency to reconcile negative U.S. dollar balances in Account Holders' accounts where appropriate.

10.    Prior to resuming their reconciliation efforts, I understand that the Debtors sent letters to Account Holders with negative U.S. dollar balances (each, an "<u>ACH Letter</u>") to provide such Account Holders the opportunity to correct the negative balances consistent with  the authority granted under the Cash Management Orders.[3]  The Debtors only liquidated the portion of a customer's cryptocurrency assets necessary to reconcile that Account Holder's negative U.S. Dollar balance if the Account Holder failed to return the funds.

---

[3]    The Debtors have continued to operate their cash management system postpetition, including ACH Chargebacks, pursuant to the *Interim Order (I) Authorizing the Debtors to (A) Continue to Operate their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief* [Docket No. 53], *Second Interim Order (I) Authorizing the Debtors to (A) Continue to Operate their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief* [Docket No. 237], *Third Interim Order (I) Authorizing the Debtors to (A) Continue to Operate their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief* [Docket No. 580], *Fourth Interim Order (I) Authorizing the Debtors to (A) Continue to Operate their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief* [Docket No. 641] , and the *Final Order (I) Authorizing the Debtors to (A) Continue to Operate their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief* [Docket No. 983] (collectively, the "<u>Cash Management Orders</u>").

### C.    Robert Beaucage's Asserted Claim

| Cryptocurrency | Scheduled Claim (August 18, 2022) [Docket No. 7] | Asserted Claim (September 22, 2022) Proof of Claim No. 10137 | Amended Scheduled Claim (November 18, 2022) [Docket No. 18] |
|---|---|---|---|
| Cardano (ADA) | 1,419.1 | 1,419.1 | 1,280.2 |
| Bitcoin (BTC) | 0.632627 | 0.632627 | 0.570739 |
| Dogecoin (DOGE) | 4.0 | 4.0 | 3.6 |
| Polkadot (DOT) | 0.373 | 0.373 | 0.336 |
| Ethereum (ETH) | 2.68198 | 2.68198 | 2.41961 |
| Locked Luna (LLUNA) | 11.952 | 11.952 | 11.952 |
| Terra Luna (LUNA) | 5.123 | 5.123 | 4.621 |
| Luna Classic (LUNC) | 16.6 | 16.6 | 15.0 |
| Shiba Inu (SHIB) | 1,300,081,840 | 1,300,081,840 | 1,172,897,853.9 |
| Voyager Token (IVGX) | 503.41 | 503.41 | 454.16 |

11.    On February 21, 2023, Robert Beaucage filed a *Motion Seeking the Temporary Allowance of a Claim in the Amount Listed on the Proof of Claim for Voting Purposes Pursuant to Rule 3018* [Docket No. 1032], seeking to vote in the amount of his asserted claim.  It is my understanding that the Debtors objected to Mr. Beaucage's asserted claim in the amount listed in the September 22, 2022 "Asserted Claim" above because that amount did not match the Debtors' Books and Records in the Debtors *Second Amended Schedules of Assets and Liabilities of Voyager Digital, LLC (Case No. 22-10945)* (the "Amended Schedules") [Docket No. 18].  I have reviewed Mr. Beaucage's asserted claim, and it is equal to the amount that was in his account shortly before the Petition Date and matches the Debtors' original *Schedules of Assets and Liabilities of Voyager Digital LLC (Case No. 22-10945)* (the "Schedules") [Docket No. 7].  *However*, I am aware that around the time of the Petition Date, Mr. Beaucage requested the return of $300, $2,000 and $2,000 respectively (totaling $4,300 in funds) when he had just $1,369.18 in funds in his account, which

resulted in ACH Chargebacks beyond the amount of U.S. dollars held by Mr. Beaucage in the FBO Account, resulting in a negative balance of $2,930.82 in his account.[4]

12.      Accordingly, the Debtors sent Mr. Beaucage an ACH Letter on July 14, 2022, attached hereto as **Exhibit A**, alerting him that the Debtors were investigating certain ACH Chargebacks associated with his account and that the Debtors intended to take all action to protect their rights.  The Debtors never received a response from Mr. Beaucage and he otherwise failed to correct his negative U.S. dollar balance.  Therefore, on October 31, 2022, the Debtors, in compliance with the FBO Order, liquidated that portion of Mr. Beaucage's cryptocurrency assets necessary to setoff the ACH Chargebacks which left a U.S. Dollars deficiency in his account.[5]

13.      This liquidation explains the difference between Mr. Beaucage's asserted claim and his scheduled claim.  That is, the difference between Mr. Beaucage's asserted claim and his scheduled claim is equal to the amount of cryptocurrency the Debtors liquidated pursuant to the FBO Order to recover his negative balance.

14.      Mr. Beaucage's scheduled claim is correct based on the Debtors' Books and Records following the Debtors' court-authorized reconciliation pursuant to the relief granted under the FBO Order.  Mr. Beaucage is only properly entitled to recover based on his amended scheduled claim, not his original scheduled claim and not his asserted claim.

---

[4]    A table of Mr. Beaucage's account balance on July 6, 2022, after the postpetition ACH Chargebacks were completed, and October 31, 2022, reflecting the changes in his account, is attached hereto as **Exhibit B**. Screenshots of the activity resulting in these changes is attached hereto as **Exhibit C**.

[5]    The Debtors' reconciliation of Mr. Beaucage's cryptocurrency, including coin, amount liquidated, liquidated price, and date of the liquidation is attached hereto as **Exhibit D**.

### D.    Deborah Soto's Asserted Claim

| Cryptocurrency | Asserted Claim (August 18, 2022) Proof of Claim. No. 8422 |
|---|---|
| Bittorent (BTT) | 8,969,792,148.0 |
| Ethereumclassic (ETC) | 62.1 |
| Fantom (FTM) | 2,001.435 |
| Dogecoin (DOGE) | 10,000.8 |
| Shibainu (SHIB) | 108,912,814.1 |
| Polygon (MATIC) | 1,002.25 |
| Sandbox (SAND) | 2,000.0 |
| Lunaclassic (LUNC) | 7,540,482.0 |
| Lockedluna (LLUNA) | 21.0 |

15.    It is my understanding that the Debtors objected to Deborah Soto's claim because Ms. Soto did not have an active account on the Debtors' platform as of the Petition Date. Therefore, I understand that she could not have stored any cryptocurrency on the Debtors' platform and been an ongoing customer as of the Petition Date.  As a result, Ms. Soto was not listed in the Debtors' Schedules or their Amended Schedules.  I am aware that, prior to the Petition Date, Ms. Soto had an account on the Debtors' platform.  However, I am aware that Ms. Soto's account was deactivated on June 13, 2022 due to a negative account value and funding failures.  It is my understanding that the current value of her closed account is a negative balance of -$11,880.54. Further, I am aware Ms. Soto made multiple attempts to fund her account, totaling $56,200, but due to insufficient funds in her bank account, the Debtors received notification of a total of $42,700 in ACH Chargebacks from her bank. [6]

---

[6]    A record of Ms. Soto's denied funding attempts and her ACH Chargebacks are attached hereto as **Exhibit E**.

16.     It is my understanding based on these facts that Ms. Soto did not have an account on the Debtors' platform as of the Petition Date and does not hold any claim against the Debtors' Estates.  The Debtors are not liable for the asserted claim by Ms. Soto because she does not hold a claim against the Debtors.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated:  February 21, 2023                 /s/ Mark A. Renzi
New York, New York                        _____
                                          Mark A. Renzi
                                          Managing Director
                                          Berkeley Research Group, LLC

**Exhibit A**

**ACH Letter**

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

601 Lexington Avenue
New York, NY 10022
United States

+1 212 446 4800

www.kirkland.com

Christine A. Okike, P.C.
To Call Writer Directly:
+1 212 446 4725
christine.okike @kirkland.com

Facsimile:
+1 212 446 4900

July 14, 2022

Robert Beaucage



Re: Fraudulent ACH Chargeback Requests

Dear Robert Beaucage:

We represent Voyager Digital Ltd. and its affiliates (collectively, "Voyager") in connection with their pending cases under title 11 of the United States Code (the "Chapter 11 Cases") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). Voyager commenced the Chapter 11 Cases on July 5, 2022 (the "Petition Date").

It has come to Voyager's attention that you requested to revoke certain ACH transactions made on Voyager's platform for the purchase of cryptocurrency assets. Please be advised that requesting that a valid ACH transfer be reversed based on a false claim that the transaction was not authorized is clearly illegal—it is, among other things, wire fraud in violation of 18 U.S.C. § 1343 (such requests, "Fraudulent ACH Chargebacks").

As part of the Chapter 11 Cases, Voyager obtained authority from the Bankruptcy Court to investigate, dispute and prosecute any unauthorized or illegitimate Fraudulent ACH Chargebacks under any "for the benefit of" accounts held at Metropolitan Commercial Bank, including the accounts in which you have sought to revoke your ACH transaction(s). Voyager in fact intends to thoroughly investigate all chargeback requests, it has begun that investigation, and it will take any and all necessary actions to protect its rights to the fullest extent permitted under applicable law to the extent that any fraudulent activity is uncovered. Voyager will prosecute any Fraudulent ACH Chargebacks and/or demand that all transferred funds be recovered and paid back to the applicable "for the benefit of" account. Voyager writes to put you on notice of this investigation, and it reserves all rights with respect to any damages that may arise from, or relate to, actions taken by you in violation of applicable laws.

Sincerely,

Christine A Okike, P.C.

**Exhibit B**

**Robert Beaucage's Account Balance**

| Cryptocurrency | Balances Prior to Chargebacks (July 6, 2022) | Balances After All Chargebacks Were Completed Postpetition | Balances After Reconciliation through Cryptocurrency Liquidation (October 31, 2022) |
|---|---|---|---|
| **U.S. Dollars** | **$1,369.18** | **($2,930.82)** | **$0.00** |
| **Cardano (ADA)** | 1,419.1 | 1,419.1 | 1,280.2 |
| **Bitcoin (BTC)** | 0.632627 | 0.632627 | 0.570739 |
| **Dogecoin (DOGE)** | 4.0 | 4.0 | 3.6 |
| **Polkadot (DOT)** | 0.373 | 0.373 | 0.336 |
| **Ethereum (ETH)** | 2.68198 | 2.68198 | 2.41961 |
| **Locked Luna (LLUNA)** | 11.952 | 11.952 | 11.952 |
| **Terra Luna (LUNA)** | 5.123 | 5.123 | 4.621 |
| **Luna Classic (LUNC)** | 16.6 | 16.6 | 15.0 |
| **Shiba Inu (SHIB)** | 1,300,081,840 | 1,300,081,840 | 1,172,897,853.9 |
| **Voyager Token (IVGX)** | 503.41 | 503.41 | 454.16 |

## Exhibit C

**Robert Beaucage's Account Activity**

**Chargebacks[7] reflected in Voyager's system:**



**Evidence of ACH deposit chargebacks in the USIO payment processor portal:**

| Date | Account Name | Type | Acct # | Confirmation # | Message | Amount |
|------|-------------|------|--------|----------------|---------|--------|
| 6/19/2022 | Robert Beaucage | ACH | | | RETURNED | $2000.00 |
| 5/15/2022 | Robert Beaucage | ACH | | | RETURNED | $2000.00 |
| 5/4/2022 | Robert Beaucage | ACH | | | RETURNED | $300.00 |

**Evidence of Requests to Withdraw U.S. Dollar Deposits:**



---

[7]    All chargebacks were initiated for the reason "Customer Advises Entry Not in Accordance with the Terms of the Authorization."





## **Exhibit D**

**Reconciliation of Robert Beaucage's Account**

**Voyager accounting adjustments made on October 31, 2022 to Robert Beaucage's account to reconcile negative balance (these transactions are viewable in the customers transaction history in-app):**

| Oct 31, 2022 7:19 PM EDT | ADMIN | −0.0618885 | BTC | 0 | Robert Beaucage (filer) |
|---|---|---|---|---|---|
| Oct 31, 2022 7:19 PM EDT | ADMIN | −49.24814672 | VGX | 0 | Robert Beaucage (filer) |
| Oct 31, 2022 7:19 PM EDT | ADMIN | −127,183,986.13111454 | SHIB | 0 | Robert Beaucage (filer) |
| Oct 31, 2022 7:19 PM EDT | ADMIN | −1.6281682746725066 | LUNC | 0 | Robert Beaucage (filer) |
| Oct 31, 2022 7:19 PM EDT | ADMIN | −138.827608 | ADA | 0 | Robert Beaucage (filer) |
| Oct 31, 2022 7:19 PM EDT | ADMIN | −0.036523741 | DOT | 0 | Robert Beaucage (filer) |
| Oct 31, 2022 7:19 PM EDT | ADMIN | −0.39258334 | DOGE | 0 | Robert Beaucage (filer) |
| Oct 31, 2022 7:19 PM EDT | ADMIN | −0.5011711885134457 | LUNA | 0 | Robert Beaucage (filer) |
| Oct 31, 2022 7:19 PM EDT | ADMIN | −0.2623722450059489 | ETH | 0 | Robert Beaucage (filer) |

**Running balance breakdown:**

| Asset | Quantity as of July 6th, 2022 | ACH Returns Postpetition | Quantity After ACH Returns | October 31, 2022 Liquidation | Ending Balance |
|---|---|---|---|---|---|
| ADA | 1419.1 | | 1419.1 | -138.827608 | 1280.2 |
| BTC | 0.632627 | | 0.632627 | -0.0618885 | 0.570739 |
| DOGE | 4 | | 4 | -0.39258334 | 3.6 |
| DOT | 0.373 | | 0.373 | -0.036523741 | 0.336 |
| ETH | 2.68198 | | 2.68198 | -0.262372245 | 2.41961 |
| LLUNA | 11.952 | | 11.952 | | 11.952 |
| LUNA | 5.123 | | 5.123 | -0.5011711885 | 4.621 |
| LUNC | 16.6 | | 16.6 | -1.628168275 | 15.0 |
| SHIB | 1,300,081,840 | | 1,300,081,840 | -127,183,986.13 | 1,172,897,854 |
| VGX | 503.41 | | 503.41 | -49.24814672 | 454.16 |
| USD | $1,369.18 | -$4,300.00 | -$2,930.82 | $2,930.82 | $0.00 |

**<u>Exhibit E</u>**

**Deborah Soto's Account Activity**

## Funding attempts reflected in Voyager's system:



## Chargebacks reflected in Voyager's system:

