UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
In re:

VOYAGER DIGITAL HOLDINGS, INC., *et al.*[1]

Debtors.

------------------------------------------------------------------x

Chapter 11

Case No.: 22-10943 (MEW)

(Jointly Administered)

## OBJECTION BY FEDERAL TRADE COMMISSION TO DEBTORS' THIRD AMENDED JOINT PLAN

The Federal Trade Commission ("FTC" or "Commission") by and through its undersigned counsel, hereby files this objection ("Objection") to the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Dkt. No. 863, the "Proposed Plan"). The Debtors' Proposed Plan should not be confirmed because it impermissibly seeks to give the Debtors a discharge to which they are not legally entitled. The FTC respectfully requests the Court deny confirmation of the Proposed Plan or strike the releases and injunctive provisions. In support thereof, the FTC states as follows:

## BACKGROUND

1. The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41, *et seq*. The FTC is charged with, *inter alia*, enforcement of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The Commission is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and other rules and regulations enforced by the FTC such as the Gramm-Leach-Bliley Act, 15 U.S.C. § 6821. The FTC may obtain injunctive relief under Section 13(b) of the FTC Act. The FTC also may secure monetary relief, as may be appropriate in each case, for violations of certain rules and regulations promulgated by the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

FTC. 15 U.S.C. §57(b)(a)(1). Specifically, Section 19(b) of the FTC Act, 15 U.S.C. §57b(b), provides that a federal court "shall have jurisdiction to grant such relief as the court finds necessary to redress injury to consumers . . . resulting from the rule violation." This relief "may include, but shall not be limited to, rescission or reformation of contracts, the refund or return of property, the payment of damages, and public notification respecting the rule violation." *Id.*

2. The FTC has commenced an investigation into certain acts and practices of Debtors and Debtors' employees, directors, and officers, for their deceptive and unfair marketing of cryptocurrency to the public. Pursuant to 11 U.S.C. § 362(b)(4), such investigation is not stayed by the commencement of the Debtors' chapter 11 bankruptcy proceedings. (*See also* Dkt. No. 55, Order (a) Restating And Enforcing The Worldwide Automatic Stay, Anti-Discrimination Provisions, And Ipso Facto Protections Of The Bankruptcy Code, (B) Approving The Form And Manner Of Notice, And (C) Granting Related Relief.)

3. On January 10, 2023, Debtors filed the Second Amended Disclosure Statement Relating to the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Dkt. No. 853), which Debtors subsequently revised on January 13, 2023 (Dkt. No. 863, "Disclosure Statement"; *Id.*, Exhibit A, "Proposed Plan").

4. Section VIII.B of the Debtors' Proposed Plan describes "Releases by Holders of Claims and Interests." Specifically, this section provides as follows:

> Except as expressly set forth in the Plan, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Releasing Parties, in each case on behalf of themselves and their respective successors, assigns, and representatives, from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted or assertable on behalf of any of the Debtors, that such Entity would have been legally entitled to assert in its own right (whether individually or collectively or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity), based on or relating to, or in any manner arising from, in whole or in part, the

2

Debtors (including the management, ownership, or operation thereof), their capital structure, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Definitive Documents or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Definitive Documents, the pursuit of consummation of the Plan, the administration and implementation of the Restructuring Transactions, or upon any other act or omission, transaction, agreement, event, or other occurrence related to the Debtors taking place on or before the Effective Date, ***provided that nothing in this Article VIII.B shall be construed to release the Released Parties from actual fraud, willful misconduct, or gross negligence as determined by a Final Order***.

(Dkt. No. 863, Proposed Plan at 56-57 [emphasis added].)

5. "Causes of Action" is broadly defined, and includes claims and interests, as well as any action for a violation of federal law. (*Id.* at 4.)

6. Section VIII.D of the Proposed Plan contains an "Injunction." Specifically, the Injunction provides as follows:

> The assets of the Debtors and of the Wind-Down Entity shall be used for the satisfaction of expense obligations and the payment of Claims and Interests only in the manner set forth in this Plan and shall not be available for any other purpose. ***All Persons and Entities who have held, hold, or may hold Claims or Interests based upon any act, omission, transaction, or other activity of any kind or nature related to the Debtors, the Wind-Down Entity, or the Debtors' Chapter 11 Cases that occurred prior to the Effective Date, other than as expressly provided in the Plan or the Confirmation Order, shall be precluded and permanently enjoined on and after the Effective Date from interfering with the use and distribution of the Debtors' assets in the manner contemplated by the Plan.*** In addition, as of the Effective Date and subject to the occurrence of the Effective Date, except as otherwise specifically provided in this Plan or the Confirmation Order, ***all Persons and Entities who have held, hold, or may hold Claims or Interests that are fully satisfied pursuant to the Plan or any Claim or Interest that is subject to the releases and exculpations set forth in Article VIII.B and Article VIII.C of this Plan shall be precluded and permanently enjoined on and after the Effective Date from enforcing, pursuing, or seeking any setoff or relief with respect to such Claims or Interests, except for the receipt of the payments or distributions that are contemplated by this Plan.***

(*Id.* at 58 [emphasis added].)

3

7.      By order dated January 13, 2023, the Court conditionally approved the adequacy of the Disclosure Statement and set a hearing on the Disclosure Statement and confirmation of the Proposed Plan for March 2, 2023.  (Dkt. No. 861.)

8.      Objections to confirmation of the Proposed Plan and Disclosure Statement are due February 22, 2023.

**OBJECTION**

The Proposed Plan cannot be confirmed because it violates the Bankruptcy Code and relevant case law.  Section 1129(a) of the Bankruptcy Code provides that "[t]he court shall confirm a plan only if it complies with all" of the requirements of section 1129(a).  11 U.S.C. § 1129(a). Among other requirements, section 1129(a) mandates that "[t]he Plan complies with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(1).  The Debtors, as plan proponents, bear the burden of proof with respect to the confirmation requirements by a preponderance of the evidence.  *In re Charter Commc'ns*, 419 B.R. 221, 243 (Bankr. S.D.N.Y. 2009) (*citing Heartland Fed. Savs. & Loan, Ass'n v. Briscoe Enters. (In re Briscoe Enters.)*, 994 F.2d 1160, 1165 (5th Cir. 1993)); *In re Worldcom, Inc.*, No. 02-13533 (AJG), 2003 WL 23861928, at *46 (Bankr. S.D.N.Y. Oct. 31, 2003) (*citing Briscoe*).  Debtors cannot meet this burden, and the FTC objects to confirmation because the Proposed Plan grants Debtors a discharge to which they are not entitled and in contravention to Section 1141(d)(6), which precludes discharge of fraud-related debts held by a governmental unit.

Proposed Plan Section VIII.B, although styled as a "release," is nothing more than a disguised discharge.  Section VIII.B releases Debtors and Debtors' officers, directors, and employees, among others, from all "Causes of Action" by all "Releasing Parties."[2]  (Proposed Plan

---

[2] "Releasing Parties" means, collectively, in each case in its capacity as such: (a) the Debtors; (b) the Wind-Down Debtors; (c) the Committee, and each of the members thereof; (d) each of the Released Professionals; (e) each of the Released Voyager Employees; (f) Purchaser and each of its Related Parties to the extent Purchaser is able to bind such Related Parties; (g) all Holders of Claims that vote to accept the Plan and affirmatively opt into the releases provided

4

at 56-57.) "Causes of Action" is broadly defined, and includes claims and any action for a violation of federal law. (*Id.* at 4.) Debtors further the effect of this "discharge" through operation of the "Injunction" provisions contained in Proposed Plan Section VIII.D. This section precludes "All Persons and Entities"[3] from interfering with distribution of the "Debtors' assets" and precludes seeking relief outside of the Proposed Plan. (Proposed Plan at 58.) The effect is to preclude even holders of nondischargeable claims from seeking any recovery from Debtors' available assets post-confirmation and potentially limiting such claims to what is recoverable *pro rata* through the bankruptcy case.

Debtors are clearly not entitled to a discharge here. Section 1141(d)(3) of the Bankruptcy Code provides that the confirmation of a plan ***does not discharge a debtor if*** "(A) the plan provides for the liquidation of all or substantially all of the property of the estate; (B) the debtor does not engage in business after consummation of the plan; and (C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title." 11 U.S.C. § 1141(d)(3). Here, the Debtors' Proposed Plan is a "liquidating" plan. (*See, e.g.*, Disclosure Statement at 35 ["The Debtors are liquidating under chapter 11 of the Bankruptcy Code."].) Moreover, it would establish a "Wind-Down Trust." Disclosure Statement at 37. "The Wind-Down Trust will conduct no business operations and will be charged with winding down the Debtors' Estates." *Id.* Accordingly, the requirements of § 1141(d)(3) have been met: the plan is a liquidation plan; Debtors will no longer engage in business after consummation of the plan; and as corporations, Debtors are not entitled to a discharge under Section 727(a)(1).[4] Therefore, Debtors

---

by the Plan; (h) all Holders of Claims that vote to reject the Plan and affirmatively opt into the releases provided by the Plan; and (i) all Holders of Claims or Interests that abstain from voting (or are otherwise not entitled to vote) on the Plan and affirmatively opt into the releases provided by the Plan; provided that if the Asset Purchase Agreement is terminated, Purchaser and each of its Related Parties shall not be "Releasing Parties" under the Plan. Proposed Plan at 13.

[3] Notably, the Injunction is not limited to those claimants who expressly opt-in, *i.e.*, "Releasing Parties."

[4] Section 727(a), entitled "Discharge", provides that: "(a) The court shall grant the debtor a discharge, unless—(1) the debtor is not an individual. . . ." Here, the Debtors are not individuals and thus are not entitled to a discharge under chapter 7.

are not entitled to a discharge. *In re Cypresswood Land Partners, I*, 409 B.R. 396, 423 (Bankr. S.D. Tex. 2009) (debtor could not grant itself a discharge in violation of Section 1141(d)(3), which prohibits the discharge when all three elements met; court *sua sponte* amended plan to remove noncomplying provision); *Um v. Spokane Rock I, LLC*, 904 F.3d 815, 819 (9th Cir. 2018) (no discharge where a "business entity will not engage in business post bankruptcy when its assets are liquidated and the entity is dissolved."); *In re Motors Liquidation Co.*, 462 B.R. 494, 497n5 (Bankr. S.D.N.Y. 2012) (observing "[t]here is no discharge upon confirmation of a corporation's liquidating plan of reorganization, *see* Code section 1141(d)(3), and there was no discharge here."); *In re Hotel Mt. Lassen, Inc.*, 207 B.R. 935, 940 (Bankr. E.D. Cal. 1997) (holding "discharges are, as a matter of law, not permitted for debtors that are not individuals and that have substantially all their assets liquidated and that do not remain in business. 11 U.S.C. § 1141(d)(3).").

Further, even if Debtors were entitled to a discharge (through operation of consensual releases, for example), the Code specifically precludes the discharge of fraud-related debts held by a governmental unit.[5] *See* § 1141(d)(6); *In re Hawker Beechcraft, Inc.*, 515 B.R. 416, 425 (S.D.N.Y. 2014); *In re Mallinckrodt PLC*, No. 20-12522 (JTD), 2021 WL 2460227, at *4 (Bankr. D. Del. June 16, 2021) ("'A preconfirmation debt is dischargeable unless it falls within an express exception to discharge'" [], noting that such express exception is set forth in Section 1141(d)(6) for fraud debts) (citing *Fed. Commc'ns Comm'n v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 303 (2003)). Specifically, the Bankruptcy Code limits a corporate debtor's discharge as follows:

> (6) Notwithstanding paragraph (1), the confirmation of a plan does not discharge a debtor that is a corporation from any debt—
> (A) of a kind specified in paragraph (2)(A) or (2)(B) of section 523(a) that is owed to a domestic governmental unit . . . .

11 U.S.C. § 1141(d)(6). Although Debtors exclude claims for "actual fraud, willful misconduct,

---

[5] The FTC does not consent to a release of its claims for injunctive or monetary relief against the Debtors or other non-debtor third parties, such as Debtors' CEO.

and gross negligence" from the releases, (Proposed Plan at 56), the releases do not track the language of the Bankruptcy Code, which excludes *all* debts under Section 523(a)(2), including debts for "false representation," and "false pretenses," as well as debts under § 523(a)(2)(B).[6] *See* 11 U.S.C. §§ 1141(d)(6) and 523(a)(2).  By not excluding, *inter alia*, false pretenses and false representations, the release can be read to interfere with causes of action by a governmental unit like the FTC.[7]  This is impermissible.  Accordingly, the Court should deny entry of the release and injunctions, or clarify the scope of the release and injunction excludes all fraud-related debts within the scope of Bankruptcy Code Section 1141(d)(6).[8]

WHEREFORE, for the foregoing reasons, the FTC respectfully requests the Court (1) deny confirmation of the Debtors' Proposed Plan; (2) strike Section VIII.B and D of the Proposed Plan; or grant any other relief the Court deems just and proper.

| | |
|---|---|
| Dated:  February 22, 2023<br>Washington, D.C. | /s/ Katherine Johnson<br>Katherine Johnson (admitted *pro hac vice*)<br>FEDERAL TRADE COMMISSION<br>600 Pennsylvania Ave., NW<br>Mail Stop CC-9528<br>Washington, DC  20580<br>(202) 326-2185<br>(202) 326-3197 (fax)<br>kjohnson3@ftc.gov<br>*ATTORNEY FOR FEDERAL TRADE COMMISSION* |

---

[6] It is unclear from the Proposed Plan whether "actual fraud" includes other fraud, such as false pretenses or fraud obtained by false financial statement, within the scope of § 523(a)(2)(A) and (B).  At minimum, Debtors should clarify this or unambiguously exclude all fraud-related debts that are otherwise excluded per § 1141(d)(6).

[7] Although the FTC is not bound by the release (because it will not affirmatively opt into the release), consumers could opt-in, and Debtors could argue the release confines the FTC's right to collect redress for consumers arising from fraud (it does not).  Nevertheless, the release should be clear that fraud-related debts within the scope of Section 523(a)(2)(A) and (B) are not subject to the release.

[8] In prior bankruptcy cases, the FTC has negotiated a carve-out of its claims from proposed releases and injunctions like the ones proposed here.  *See, e.g.*, *In re Frontier Commc'ns Corp.*, Bankr. Case No. 20-22476 (Bankr. S.D.N.Y. filed April 14, 2020), Dkt. No. 984, Ex. A at 77 (no release in plan of any claims held by, *inter alia*, the U.S. or its agencies).  Debtors have provided such a carve-out to the SEC and OSC in the Proposed Plan (Proposed Plan at 58); the FTC has requested similar treatment from Debtors.  Debtors are still "reviewing" the FTC's request.

## CERTIFICATE OF SERVICE

      I hereby certify that on February 22, 2023, the foregoing was filed and served electronically through the Court's CM/ECF system and by email on the Master Service List.

                                        /s/ Katherine Johnson