**Hearing Date: March 2, 2023 at 10:00 a.m. (ET)**
**Objection Deadline: February 22, 2023 at 4:00 p.m. (ET)**

| | |
|---|---|
| David M. Posner | Paul M. Rosenblatt, Esq. |
| Kelly E. Moynihan | **KILPATRICK TOWNSEND &** |
| **KILPATRICK TOWNSEND &** | **STOCKTON LLP** |
| **STOCKTON LLP** | 1100 Peachtree Street NE, Suite 2800 |
| The Grace Building | Atlanta, GA 30309 |
| 1114 Avenue of the Americas | Telephone: (404) 815-6500 |
| New York, NY 10036 | Facsimile: (404) 815-6555 |
| Telephone: (212) 775-8700 | Email: prosenblatt@kilpatricktownsend.com |
| Facsimile: (212) 775-8800 | |
| Email: dposner@kilpatricktownsend.com | |
| kmoynihan@kilpatricktownsend.com | |

*Counsel to the Ad Hoc Group of Equity Holders of Voyager Digital Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| **VOYAGER DIGITAL HOLDINGS, LLC,** *et al.*, | : | Case No. 22-10943 (MEW) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

**OBJECTION OF THE AD HOC GROUP OF EQUITY HOLDERS TO CONFIRMATION OF THE THIRD AMENDED JOINT PLAN OF VOYAGER DIGITAL HOLDINGS, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ..............................................................................................................................2

    A.    General Background ..............................................................................................2

    B.    The Class Action and Intercompany Claims ...........................................................3

    C.    The Debtors' Original Plan of Reorganization ........................................................5

    D.    The Failure of the Proposed Purchaser ...................................................................7

    E.    The New Plan.............................................................................................................9

ARGUMENT ..................................................................................................................................11

    I.    The Plan Does Not Properly Describe the Class 7 Intercompany Claims .............12

    II.    To the Extent Class 7 Intercompany Claims are Impaired, the Plan
           Violates Code Section 1123(a)(3) ...........................................................................13

    III.    The Plan Contemplates Depriving Certain Equity Interests Which May Be
           Entitled to Distributions.........................................................................................14

CONTESTED MATTER................................................................................................................17

RESERVATION OF RIGHTS .......................................................................................................17

CONCLUSION................................................................................................................................18

i

The Ad Hoc Group of Equity Holders (the "AHG") of Voyager Digital Ltd. ("TopCo"), a debtor and debtor-in-possession in the above-captioned chapter 11 cases (collectively with each other debtor in the above-captioned cases, the "Debtors" or the "Company," as applicable), by and through its undersigned counsel, hereby submits this objection (the "Objection") to the *Third Amended Joint Plan of Voyager Digital Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 852], filed on January 10, 2023 (the "Plan"). In support of its Objection, the AHG respectfully states as follows:

## PRELIMINARY STATEMENT[2]

1.      The AHG has two concerns with the Plan – treatment of intercompany claims and the preservation of the rights of parties that do not "opt in" to the releases. The AHG's concerns can be satisfied by including language in any order confirming the Plan that (i) neither the Plan nor such order will have any impact on the validity, extent, priority, or treatment of the Intercompany Claims, and (ii) the Plan releases will not prejudice the rights of any party that did not "opt in" to the releases.

2.      Regarding the Intercompany Claims, the Debtors confirmed to the AHG that the upcoming Plan confirmation hearing will not be used to adjudicate the validity, extent, priority, or treatment of the Intercompany Claims. Rather, any determination as to the validity, extent, priority, or treatment of the Intercompany Claims will be brought before the Court on notice separate from the upcoming Plan confirmation hearing. As set forth in the Disclosure Statement, the independent directors at TopCo, HoldCo, and OpCo have engaged independent counsel and are conducting a review to analyze the Intercompany Claims and their treatment. Dkt. No. 863 at p. 53 of 420, ¶ (C)2. The AHG understands this review remains ongoing. The AHG reserves

---

[2] Undefined terms used in this Objection shall have the meanings ascribed to them below or in the Plan, as applicable.

all rights to challenge any determination arrived at by the independent directors regarding the Intercompany Claims. Given that the Plan currently contains language that would allow the Debtors to unilaterally determine the validity, extent, priority and treatment of Intercompany Claims, language should be included in any order confirming the Plan that neither the Plan nor such order will have any impact on the validity, extent, priority, or treatment of the Intercompany Claims. And that any determination as to the validity, extent, priority, or treatment of the Intercompany Claims shall be brought before the Court in a separate matter on proper notice to parties in interest.

3. Regarding the Releases, the Plan proposes to provide certain releases to the Released Parties. The Disclosure Statement provides "the failure to 'opt in' does not prejudice any" electing party's rights. Dkt. No. 863 at p. 33 of 420, ¶ P. The AHG asserts that any order confirming the Plan should contain similar language confirming that the Plan releases will not prejudice the rights of any party that did not "opt in" to the applicable releases.

4. Including appropriate language on these two issues in any order confirming the Plan will resolve the AHG's concerns with respect to the treatment of Intercompany Claims under the Plan. Nevertheless, in the absence of such language and out of an abundance of caution, the AHG files this Objection.

**BACKGROUND**

**A.    General Background**

5. On July 5, 2022 (the "Petition Date"), the Debtors each filed a voluntary petition for relief (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

6. On or about September 19, 2022, the AHG, which comprises holders of equity interests in Debtor Voyager Digital Ltd. ("TopCo," "TopCo Interests," and "TopCo Interest

2

Holders"), formally retained counsel and a financial advisor in connection with the Chapter 11 Cases. See *Second Amended Verified Statement of the Ad Hoc Group of Equity Holders Pursuant to Bankruptcy Rule 2019* [Dkt. No. 511].

    **B.    The Class Action and Intercompany Claims**

        **i.    The Class Action**

7. On July 6, 2022, a Notice of Action (the "Notice of Action") regarding a class action suit was filed with the Ontario Superior Court of Justice (Court File Number CV-22-00683699-00CP) (the "Class Action"). TopCo and certain of its directors and officers, including the Debtors' CEO, are defendants in the Class Action (collectively the "Class Action Defendants"). The Notice of Action is attached to the Dundon Declaration as Exhibit 1.[3]

8. The Class Action arises from a series of alleged misrepresentations by TopCo and the individual defendants regarding, among other things, (i) its credit risk levels; (ii) the nature of certain loans and other transactions, especially with regard to a March 2022 loan (the "3AC Loan") that TopCo provided to Three Arrows Capital ("3AC"), a cryptocurrency hedge fund; and (iii) the ramifications for the 3AC Loan arising from the May 2022 collapse of cryptocurrency platform Terra and its related cryptocurrency assets Terra and Luna (the "Terra Collapse").

9. According to the Notice of Action, in certain documents and public statements dated May 16, 2022, TopCo and the director and officer defendants, misrepresented, among other things, that TopCo had no exposure to the Terra Collapse and that it had no credit risk due to strong capitalization. *See id.* at 8-10.

---

[3] All references to the Dundon Declaration refer to the *Declaration of Matthew Dundon in Support of the Objection of the Ad Hoc Group of Equity Interests Holders to the Debtors' Motions for Entries of Orders Approving the Adequacy of the Disclosure Statement, Solicitation and Notice Procedures, Forms of Ballots and Notices in Connection Therewith, and Certain Dates with Respect Thereto*. *See* Dkt. No. 525.

3

10. On June 22, 2022, TopCo corrected its statements regarding exposure to the Terra Collapse and other misrepresentations. *See id.* TopCo disclosed the previously undisclosed 3AC Loan, noting that it may have to issue a notice of default to 3AC for nonpayment. *See id.* Following these disclosures, TopCo's share price dropped significantly. *See id.*

11. Along with its disclosure of the 3AC Loan, TopCo also disclosed that it had secured a loan from Alameda Ventures Ltd. as a backstop against the fallout of the Terra Collapse (the "Alameda Loan"). *See id.* The Notice of Action alleges that this statement was also a misrepresentation, as TopCo required "an immediate cash infusion or else it would be required to enter insolvency proceedings." *See id.*

12. The Notice of Action provides that this alleged misrepresentation was corrected on "July 6, 2022 when Voyager Digital disclosed that it had filed for Chapter 11 bankruptcy protection in the US." *See id.* at 9.

### ii. The Intercompany Claims

13. TopCo holds over $230 million in intercompany claims against its subsidiaries, as detailed in its Schedule of Assets. [Case No. 22-10944, Dkt. No. 8, p. 34].

14. According to the *Second Report of the Information Officer* dated September 30, 2022 (the "Second IO Report") that was filed in the associated Canadian proceeding pending in the Ontario Superior Court of Justice under the Companies' Creditors Arrangement Act and is attached to the Dundon Declaration as Exhibit 4, approximately $229 million of the Intercompany Claims comprise intercompany receivables owing to TopCo from other Debtors and non-Debtor affiliates. *See* Second IO Report § 6.4.

15. Additionally, in the fiscal year ended June 30, 2022, in connection with an acquisition, TopCo advanced approximately $46 million in equity to Debtor Voyager Digital

4

Holdings, Inc. ("OpCo") and approximately $16 million to non-Debtor affiliate Voyager European Holdings ApS. *Id.* § 6.5.

16. In addition to the Intercompany Claims described in the Second IO Report, TopCo is the guarantor under the Alameda Loan, the current outstanding amounts of which total approximately $75 million. Other than TopCo's obligation with respect to such guaranty (the "Alameda Guaranty"), the claims against TopCo are *de minimis* in nature.[4] Moreover, the AHG submits that the Alameda Guaranty is invalid or should be treated as an equity infusion, and unenforceable as a claim against TopCo.

### C. The Debtors' Original Plan of Reorganization

17. On July 6, 2022, the Debtors filed the *Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 17].

18. On August 12, 2022, the Debtors filed the *First Amended Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 287] (the "First Amended Plan").

19. In conjunction with the filing of the First Amended Plan, the Debtors filed the proposed *Disclosure Statement Relating to the First Amended Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 288].

20. Also on August 12, 2022, the Debtors filed the *Debtors' Motion for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) Solicitation and Notice*

---

[4] Although various US state agencies filed identical security violation claims against OpCo, HoldCo and TopCo, such state agencies have no jurisdiction over TopCo, such claims are inapplicable to TopCo as a Canadian entity and such claims are subject to disallowance as to TopCo. *See, e.g.,* Claim No. 12037 filed by The New Jersey Bureau of Securities on December 30, 2022.

5

*Procedures, (III) Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates With Respect Thereto* [Dkt. No. 289].

21. On October 5, 2022, the Debtors filed the *Second Amended Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 590] (the "Second Amended Plan").

22. In conjunction with the filing of the Second Amended Plan, the Debtors also filed the *First Amended Disclosure Statement Relating to the Second Amended Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 498] (the "First Amended Disclosure Statement").

23. On October 12, 2022, the AHG filed the *Objection of the Ad Hoc Group of Equity Holders to Debtors' Motion for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates With Respect Thereto* [Dkt. No. 524].

24. The Debtors then filed several iterations of the Second Amended Plan [Dkt. Nos. 539, 564, 584] and First Amended Disclosure Statement [Dkt. Nos. 540, 565, 585], culminating in the October 24, 2022 filings of the *Second Amended Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 590] (the "Final Second Amended Plan") and the *First Amended Disclosure Statement Relating to the Second Amended Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 591] (the Final First Amended Disclosure Statement").

25. The Final Second Amended Plan contemplated the sale of the Company (the "Sale") pursuant to an Asset Purchase Agreement (the "FTX APA") between the Debtors and

6

West Realm Shires Inc. ("FTX US"). *See* Final First Amended Disclosure Statement § II [Dkt. No. 591 at p. 16 of 199].

### D. The Failure of the Proposed Purchaser

26. On November 2, 2022, reports surfaced that Alameda Research Ltd., a cryptocurrency trading firm with the same owner as FTX US's non-U.S. affiliate, FTX Trading Ltd. ("FTX"), was holding disproportionate amounts of FTX's in-house token, FTT.[5] Of Alameda Research Ltd.'s approximately $14.6 billion in assets, approximately $3.66 billion consists of "unlocked FTT," with another approximately $2.16 billion in "FTT Collateral."[6] Moreover, the firm's approximately $8 billion in liabilities includes approximately $292 million in "locked FTT."[7]

27. The disclosure of Alameda Research Ltd.'s significant investment in FTT led to concerns with the firm's liquidity, and by extension, the liquidity of FTX.[8] The price of FTT began to decline, at one point falling 14% in 24 hours.[9] Withdrawal runs on FTX resulted in the removal of approximately $451 million from the FTX platform, as well as approximately $15 million from FTX US.[10] FTX's margin lending platforms saw interest rates spike from 5% to

---

[5] Ian Allison, *Divisions in Sam Bankman-Fried's Crypto Empire Blur on His Trading Titan Alameda's Balance Sheet*, COINDESK (Nov. 2, 2022), https://www.coindesk.com/business/2022/11/02/divisions-in-sam-bankman-frieds-crypto-empire-blur-on-his-trading-titan-alamedas-balance-sheet/.

[6] *Id.*

[7] *Id.*

[8] Sam Reynolds, *FTX Token Plummets on Withdrawal Concerns as Contagion Hits Broader Crypto Markets*, COINDESK (Nov. 7, 2022), https://www.coindesk.com/markets/2022/11/08/ftt-plummets-as-market-fears-possible-alameda-contagion/.

[9] *Id.*

[10] *Id.*

10% for USDT, a "stablecoin" with a value pegged to the U.S. dollar.[11]  As of November 8, 2022, FTX's Bitcoin balance had fallen from 20,000 to one.[12]

28.    In the wake of the mass withdrawals, FTX announced that it had signed a non-binding letter of intent to be acquired by Binance, a major competitor of FTX (the "FTX <u>Binance Transaction</u>").[13]

29.    On November 9, 2022, *Bloomberg* reported that the Securities and Exchange Commission and the Commodity Futures Trading Commission had been investigating FTX, FTX US, and Alameda Research for several months (the "<u>Federal Investigations</u>").[14]

30.    Later that day, Binance announced that it was backing out of the FTX Binance Transaction, citing the Federal Investigations, as well as its initial due diligence reports.[15]

31.    Also on November 9, 2022, the Wall Street Journal reported that United States Department of Justice had opened an investigation into FTX and FTX US.[16]

32.    On November 10, 2022, the California Department of Financial Protection and Innovation stated that it had begun investigating FTX, following the lead of several other states.[17] On the same day, the Securities Commission of the Bahamas froze the assets of FTX affiliate

---

[11] *Id.*

[12] *Id.*

[13] Tracy Wang and Nick Baker, *FTX Agrees to Sell Itself to Rival Binance Amid Liquidity Scare at Crypto Exchange*, COINDESK (Nov. 9, 2022), https://www.coindesk.com/business/2022/11/08/ftx-reaches-deal-with-binance-amid-liquidity-scare-sam-bankman-fried-says/.

[14] Jack Schickler, *US Regulators Probing FTX Handling of Customer Funds: Bloomberg*, COINDESK (Nov. 9, 2022), https://www.coindesk.com/policy/2022/11/09/us-regulators-probing-ftx-handling-of-customer-funds-bloomberg/.

[15] Kevin Reynolds, *Binance Walks Away From Deal to Acquire FTX*, COINDESK (Nov. 9, 2022), https://www.coindesk.com/business/2022/11/09/binance-walks-away-from-ftx-deal-wsj/.

[16] Nikhilesh De, *FTX Faces US Justice Department Probe: Report*, COINDESK (Nov. 9, 2022), https://www.coindesk.com/policy/2022/11/09/ftx-faces-us-justice-department-probe-report/.

[17] Nikhilesh De, *California Financial Regulator Announces FTX Investigation*, COINDESK (Nov. 11, 2022), https://www.coindesk.com/policy/2022/11/10/california-financial-regulator-announces-ftx-investigation/.

8

FTX Digital Markets and appointed an attorney to oversee liquidation of FTX Digital Markets' assets.[18]

33. Also on November 10, 2022, the Debtors asked FTX US to waive section 5.2 of the FTX APA, the agreement's "No-Shop" provision. FTX agreed, and on December 9, 2022, the Debtors filed the *Joint Stipulation and Agreed Order Between the Debtors and FTX US* [Dkt. No. 717], which the Court approved on January 10, 2023 [Dkt. No. 849].

34. On November 11, 2022, FTX, Alameda Research Ltd., and approximately 130 affiliates filed voluntary petitions for bankruptcy relief in the Bankruptcy Court for the District of Delaware. *See In re FTX Trading Ltd., et al.*, No. 22-11068-JTD (Bankr. D. Del.).

35. Following negotiations with several potential purchasers, the Debtors selected a bid from Binance, and on December 18, 2022, the Debtors entered into an asset purchase agreement (the "Binance APA") with BAM Trading Services Inc. (d/b/a Binance.US) ("Binance.US"). *See Second Amended Disclosure Statement Relating to the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 863] (the "Disclosure Statement") § III.

36. On January 10, 2023, the Debtors filed a stipulation terminating the FTX APA. *See Joint Stipulation and Agreed Order Between the Debtors and FTX US* [Dkt. No. 849].

E.   **The New Plan**

37. Following entry into the Binance APA, on January 10, 2023, the Debtors filed their *Third Amended Joint Plan of Voyager Digital Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 852] (the "Plan").

38. On January 13, 2023, the Debtors filed the Disclosure Statement.

---

[18] Nelson Wang, *FTX Assets Frozen by Bahamian Regulator*, COINDESK (Nov. 10, 2022), https://www.coindesk.com/business/2022/11/10/ftx-digital-markets-assets-frozen-by-bahamian-regulator-bloomberg/.

9

39. On February 1, 2023, the Debtors filed the *Notice of Filing of Plan Supplement* [Dkt. No. 943] (the "Initial Plan Supplement").

40. On February 8, 2023, the Debtors filed the *Notice of Filing of First Amended Plan Supplement* [Dkt. No. 986] (the "First Amended Plan Supplement").

41. On February 15, 2023, the Debtors filed the *Notice of Filing of Second Amended Plan Supplement* [Dkt. No. 1006] (the "Second Amended Plan Supplement").

42. The Plan includes nine classes of creditors, including three subclasses of Class 4 Holders of Allowed General Unsecured Claims: (i) Class 4A OpCo General Unsecured Claims; (ii) Class 4B HoldCo General Unsecured Claims; and (iii) Class 4C TopCo General Unsecured Claims ((i)-(iii) collectively, "General Unsecured Claims"). Plan §§ III.C.4(b), III.C.5(b), III.C.6(b) [Dkt. No. 852, pp. 31-37 of 151]. Each of Class 4A, 4B, and 4C are impaired and entitled to vote on the Plan.

43. The Plan provides that on the Effective Date, a Wind-Down Entity will be established that will be responsible for distributions of certain Wind-Down Entity Assets to Holders of Claims in Classes 3-9. *See generally* Plan § H.

44. Class 7 under the Plan comprises all Intercompany Claims. On the Effective Date, the Debtors will either reinstate or convert to equity, set off, settle, distribute, contribute, or cancel the Intercompany Claims. Plan § III.C.9(b) [Dkt. No. 852, p. 36 of 151]. The Plan provides that the treatment of the Intercompany Claims will be "in accordance with the Restructuring Transactions Memorandum." *Id.* [Dkt. No. 852, p. 36 of 151]. Holders of Class 7 Claims are either Impaired or Unimpaired based on the Debtors' chosen treatment, and such Holders are deemed to have accepted the Plan. *Id.* § III.C.9(c) [Dkt. No. 852, p. 36 of 151].

45. Class 9 comprises all Existing Equity Interests ("Class 9 Interests"), including those of TopCo Interest Holders. Holders of Class 9 Interests will only receive distributions from the Wind-Down Entity from assets attributable to TopCo, and then only after payment in full of Allowed Administrative Claims, Allowed Priority Tax Claims, and Classes 1-4C. *Id.* § III.C.11(b) [Dkt. No. 852, p. 37 of 151]. Class 9 is Impaired and is deemed to reject the Plan. *Id.* § III.C.11(c) [Dkt. No. 852, p. 37 of 151].

## ARGUMENT

46. The requirements for confirmation are set forth in section 1129 of the Bankruptcy Code. A plan proponent bears the burden of proving to the Court that a proposed plan satisfies every applicable confirmation requirement under Bankruptcy Code section 1129. *See In re Genco Shipping & Trading Ltd.,* 513 B.R. 233, 241 (Bankr. S.D.N.Y. 2014); 7 *Collier on Bankruptcy* ¶ 1129.05[1][d] (16th ed. rev. 2015) ("At [the confirmation] hearing, the proponent bears the burdens of both introduction of evidence and persuasion that each subsection of 1129(a) has been satisfied . . . . If nonconsensual confirmation is sought, the proponent of such a plan will have to satisfy the court that the requirements of section 1129(b) are also met. In either situation, the plan proponent bears the burden of proof by a preponderance of the evidence."). For the reasons discussed herein, the Plan cannot be confirmed because the Debtors have not and cannot carry their burden to satisfy each and every statutory requirement under section 1129 of the Bankruptcy Code.

47. Namely, the Plan (i) violates Bankruptcy Code section 1123(a)(2) by failing to specify whether Holders of Class 7 Intercompany Claims are Impaired or Unimpaired and inappropriately describes such Holders as deemed to accept the Plan; (ii) to the extent such Intercompany Claims are Impaired, fails to specify treatment for an Impaired Class under Bankruptcy Code section 1123(a)(3); and (iii) in the event that Intercompany Claims are to be

cancelled or otherwise extinguished, seeks to deprive certain Class 9 Existing Equity Interest Holders of distributions to which they are entitled.

**I.     The Plan Does Not Properly Describe the Class 7 Intercompany Claims**

48.     Section 1123(a)(2) of the Bankruptcy Code requires the Debtors to specify whether certain classes are not impaired. 11 U.S.C. § 1123(a)(2).

49.     The Plan provides that Class 7 Intercompany Claims are either Impaired or Unimpaired and that Holders of such Intercompany Claims are deemed to accept the Plan. Plan § III.C.9(b), (c) [Dkt. No. 852, 36 of 151].

50.     It is unclear how a class of claims under the Plan can be deemed to accept a Plan unless such class is unimpaired. *See* 11 U.S.C. § 1126(f) (holders of unimpaired claims are deemed to accept a plan). Having been so deemed under the Plan, Class 7 Intercompany Claims, it follows, should be Unimpaired. The Debtors' failure to clearly specify that such Claims are Unimpaired violates section 1123(a)(2) of the Bankruptcy Code, which requires specification of classes that are not impaired.

51.     Given the failure of the Debtors to comply with "the applicable provisions of this title," 11 U.S.C. § 1129(a)(1), by not specifying that the Class 7 Intercompany Claims are Unimpaired under the Plan (to the extent such Claims actually are so Unimpaired), as well as the general confusion in the Plan surrounding the classification of Class 7 Intercompany Claims, the Court should deny confirmation of the Plan subject to the addition of express language setting forth the status of such Claims as Impaired or Unimpaired and clarifying the reason why, if any, Holders of such Claims have been deemed to accept the Plan.

**II.     To the Extent Class 7 Intercompany Claims are Impaired, the Plan Violates Code Section 1123(a)(3)**

52.     However, even if the Debtors had stated that Class 7 Intercompany Claims are Unimpaired, the Debtors do not satisfy the Bankruptcy Code's requirements for being labeled Unimpaired. *See* 11 U.S.C. § 1124(1) (unless a plan does not alter a claim holders' rights, such claim is impaired). Unless the Debtors choose to reinstate or otherwise properly satisfy the Class 7 Intercompany Claims, the rights of Holders of such Claims will be altered, meaning that the Class should be considered Impaired.

53.     Section 1123(a)(3) requires that the Debtors must "specify the treatment of any class of claims or interests that is impaired" under the Plan. 11 U.S.C. § 1123(a)(3).

54.     Although the classification and treatment of the Class 7 Intercompany Claims remains unclear, to the extent that any eventual proposed treatment will render such Claims Impaired, the Plan must specify such treatment or else it fails to comply with all applicable provisions of the Code.

55.     According to the Plan, the treatment of the Class 7 Intercompany Claims was to be "in accordance with the Restructuring Transactions Memorandum." Plan § III.C.9(b) [Dkt. No. 852, p. 36 of 151]. This treatment is no longer accurate, as the Debtors indicated at a prior hearing on the Disclosure Statement that the Restructuring Transactions Memorandum would not substantively affect the Intercompany Claims.

56.     On February 15, 2023, the Debtors filed the Restructuring Transactions Memorandum as an exhibit to the Second Amended Plan Supplement. Consistent with the Debtors' prior position, the Restructuring Transactions Memorandum is silent concerning the treatment of Class 7 Intercompany Claims.

13

57.     By failing to describe the proposed treatment of the Class 7 Intercompany Claims, to the extent that such Claims are Impaired under the Plan, the Debtors have not specified the treatment for such Claims and are in violation of section 1123(a)(3) of the Bankruptcy Code.

### III. The Plan Contemplates Depriving Certain Equity Interests Which May Be Entitled to Distributions

58.     A court may not confirm a plan of reorganization unless, among other things, one of two scenarios occurs: (i)(a) each class of claims or interest must be unimpaired under the plan or must accept the plan, *see* 11 U.S.C. § 1129(a)(8), and (b) each holder of an impaired claim or interest must accept the plan or receive the distribution to which the holder would be entitled under a chapter 7 liquidation, *see* 11 U.S.C. § 1129(a)(7); or (ii) if the plan satisfies all requirements under section 1129 except section 1129(a)(8), the plan may be confirmed if it does not discriminate unfairly and is fair and equitable to each impaired, non-accepting class of claims or interests. *See* 11 U.S.C. § 1129(b)(1).

59.     The Debtors' Plan does not satisfy either scenario and is therefore unconfirmable.

60.     First, the Plan fails because, among other things, TopCo Interest Holders would receive materially larger recoveries in a liquidation than they would under the Plan. A plan of reorganization "may not be confirmed where the evidence is not sufficient on which to base an independent factual determination that the proposed plan is in the best interests of the creditors pursuant to § 1129(a)(7)." *In re MCorp Fin., Inc.*, 137 B.R. 219, 228 (Bankr. S.D. Tex. 1992); *see also In re Cantu*, 784 F.3d 253, 262 (5th Cir. 2015) ("A reorganization plan must either be accepted by each creditor or satisfy the Code's 'best interests of the creditor' rule, which requires that the holder of a claim receive under the reorganization plan at least as much as the holder would receive in the event of a chapter 7 liquidation"); 7 Collier, *supra*, ¶ 1129.02[7] (Section 1129(a)(7) provides "an individual guaranty to each creditor or interest

holder that it will receive at least as much in reorganization as it would in liquidation"). The best interests test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan. *See Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441 n.13 (1999).

61. TopCo Interests are classified in Class 9 Interests and are impaired and are deemed to reject the Plan. *See* Plan III.C.11(c) [Dkt. No. 852, 37 of 151]. Although the Class 9 Interests are not technically being cancelled, holders of such Class 9 Interests will almost certainly not receive any distribution under the Plan. Further, under the current Plan the holders of Class 9 Interests do not stand to receive anything close to the amounts they would receive under a chapter 7 liquidation. Namely, TopCo holds nearly $230 million in Intercompany Claims, which, when liquidated, may provide a recovery not only to General Unsecured Creditors at TopCo, but also to TopCo Interest Holders. Moreover, other than its possibly void obligation with respect to the Alameda Guaranty, TopCo lacks any material liabilities. *See* Dundon Declaration ¶¶ 5, 13, 14, 25. Indeed, even if the $75 million Alameda Guaranty is enforceable, which the AHG disputes, the Intercompany Claims will still be sufficient to provide a distribution to TopCo Interest Holders.

62. Currently, the Plan, by way of the Disclosure Statement, blatantly attempts to avoid such distributions by asserting that several of the underlying loans supporting the Intercompany Claims are subject to subordination or recharacterization. *See* Disclosure Statement. However, as of the filing of this Objection, there has been no judicial determination invalidating the properly scheduled Intercompany Claims.[19] Without certainty regarding the status of the Intercompany Claims, the Plan's current treatment of the same is unwarranted.

---

[19] The AHG has commenced an adversary proceeding seeking to establish that the loans supporting the Intercompany Claims are valid. *See* Dkt. No. 631, Adv Pro. No. 22-1170.

15

63. Because TopCo Interest Holders could be entitled to a recovery, let alone one as significant as is likely to be available in this case, the Plan in its current form is unable to guarantee that TopCo Interest Holders will receive the recovery to which they would be entitled under chapter 7 of the Bankruptcy Code. The current Plan seeks to subordinate TopCo Interests to an extent that would remove any hope of a recovery, but as detailed above, funds are very likely available for distribution to TopCo Interest Holders. Accordingly, the Plan cannot satisfy the first scenario under which a plan may be confirmed.

64. Second, the Plan is not "fair and equitable" with respect to the Class 9 Interests. Because the Class 9 Interests are impaired and are deemed to reject the Plan, the Debtors will be required to satisfy the requirements of section 1129(b) of the Bankruptcy Code—the "cramdown requirements"—as to each class that does not vote to accept the Plan. A plan may only be confirmed as to a dissenting creditor class if it does not discriminate unfairly and is fair and equitable. 11 U.S.C. § 1129(b)(1).

65. Under the current Plan, in the absence of distributions based on liquidated Intercompany Claims, holders of Class 9 Interests (*i.e.*, the TopCo Interests) will almost certainly not receive the value of their respective interests. Additionally, there is no class of interests junior to the Class 9 Interests. Accordingly, the Plan is not fair and equitable with respect to the Class 9 Interests. Thus, the Plan cannot satisfy the second scenario under which a plan may be confirmed.

66. Because the Plan, by its own terms, cannot satisfy sections 1129(a)(7), (a)(8), and (b)(1) of the Bankruptcy Code, the Court should not confirm the Plan.

**IV    The "Opt In" Releases**

67.    The Plan contains certain release provisions that only apply to those parties that "opt in" to the releases. For example, "Releasing Parties" do not include Holders of Claims or Interests that do not "opt in" to the releases. Dkt. No. 852 at p. 22 of 151, ¶ 135. In addition, the Plan provides with respect to Non-Released D&O Claims, "For the avoidance of doubt, this provision does not enjoin, limit, or impair direct claims held by third parties against the Debtors' CEO or CCO (if any) other than any direct claims held by Holders of Claims or Interests that opt into the third-party release in Article VIII.B of this Plan." Dkt. No. 852 at p. 41 of 151, ¶ F. Moreover, the Disclosure Statement provides "the failure to 'opt in' does not prejudice any" party's rights. Dkt. No. 863 at p. 33 of 420, ¶ P.

68.    For the avoidance of doubt, and for the sake of clarity, any order confirming the Plan should include affirmative language that confirms both the Disclosure Statement and the Plan, that the applicable releases do not apply to Holders of Claims or Interests that did not affirmatively "opt in" to such releases.

**CONTESTED MATTER**

69.    Pursuant to Bankruptcy Rule 9014, confirmation of the Plan is a contested matter and the AHG reserves all rights to seek discovery and present evidence at the Confirmation Hearing.

**RESERVATION OF RIGHTS**

70.    The AHG reserves its rights to raise such other or further objections to the Plan as may be necessary or appropriate at or prior to the Confirmation Hearing.

17

## **CONCLUSION**

WHEREFORE, the Committee respectfully requests that the Court enter an order (i) denying confirmation of the Plan; and (ii) granting such other and further relief as the Court deems just and proper.

Dated: February 22, 2023

*/s/ David M. Posner*
**KILPATRICK TOWNSEND & STOCKTON LLP**
David M. Posner, Esq.
Kelly E. Moynihan, Esq.
The Grace Building
1114 Avenue of the Americas
New York, New York 10036-7703
Telephone: (212) 775-8700
Facsimile: (212) 775-8800
Email: dposner@kilpatricktownsend.com
kmoynihan@kilpatricktownsend.com

- and –

Paul M. Rosenblatt, Esq.
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
Email: prosenblatt@kilpatricktownsend.com

*Counsel to the Ad Hoc Group of Equity Holders
of Voyager Digital Ltd.*