Hearing Date: March 2, 2023, at 10:00 a.m. (prevailing Eastern Time)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC., et al.,[1] | ) Case No. 22-10943-MEW |
| Debtors. | ) (Jointly Administered) |

### OBJECTION OF THE NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES TO DEBTORS' THIRD AMENDED PLAN

The New York State Department of Financial Services (the "Department" or "DFS"), files this objection (the "Objection") to the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code [Dkt. No. 852] (the "Plan"). Prior to the bankruptcy, the Debtors onboarded New York customers and thus illegally operated a virtual currency business within the state without a license, in violation of New York laws and regulations, and thus deprived those New York customers of the consumer protections inherent in the regulatory supervision that arises from such a license. The Debtors are now proposing to sell their assets to BAM Trading Services Inc. d/b/a Binance.US ("Binance US"), which is also unlicensed to do business in New York, pursuant to an asset purchase agreement ("APA").[2] Even putting aside for the moment the Debtors' past violations of law, the Debtors' Plan as proposed unfairly discriminates against these New Yorkers by

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC (8013), collectively all entities are referred to as "Voyager" or the "Debtors." The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2] Voyager Digital LLC is selling its assets to Binance US pursuant to the Asset Purchase Agreement, dated December 18, 2022, and as amended by the First Amendment to the Asset Purchase Agreement, dated January 8, 2023. *See* Notice of Filing of First Amendment to Asset Purchase Agreement [Dkt. No. 835] ("APA").

materially delaying their recovery compared to creditors in the same class and by not allowing them the option to recover cryptocurrency instead of liquidated assets.

## OVERVIEW

1. The Department objects to the Plan primarily because of the discriminatory provisions of Article III.C.3 of the Plan, and Section 6.12(b) of the APA, which delay recoveries to Account Holders (*i.e.,* those who held cryptocurrency accounts at Voyager Digital, LLC, as of the petition date)[3] in Unsupported Jurisdictions, including New York, where Binance US is not licensed.[4] Under the proposed Plan and APA, Voyager will hold the Coins (*i.e.*, units of cryptocurrency)[5] associated with these Account Holders until Binance US has received Unsupported Jurisdiction Approval, defined as a license, consent, approval or authorization applicable to Binance US in an Unsupported Jurisdiction,[6] or for six months after the Closing Date, whichever comes first.[7] During these six months, the New York Account Holders will have no ability to control the assets in their accounts, including whether to sell the cryptocurrency to avoid further risk in the volatile cryptocurrency market. In contrast, Account Holders in jurisdictions other than Unsupported Jurisdictions ("Supported Jurisdictions") will have the freedom to trade the cryptocurrency owed to them, defined as "Net Owed Coins" in the APA,[8] once their Binance US accounts are set up and their assets are migrated, which could be as much as

---

[3] Capitalized terms not defined herein have the definition provided in the Plan. All Account Holders have been classified as unsecured claims in Class 3, according to the Plan.

[4] The Plan's definition of Unsupported Jurisdiction refers to the APA. Section 6.12(b) of the APA defines "Unsupported Jurisdictions" as New York, Texas, Vermont, and Hawaii, which are jurisdictions in which Binance US is not licensed, as well as other jurisdictions where Binance US may need a license to operate and does not have one.

[5] APA, § 11.1(r).

[6] APA, § 4.3(a).

[7] "Closing Date" is used as defined in Section 2.3 of the APA, the third business day following full satisfaction of the closing conditions.

[8] The term "Net Owed Coins" is defined at Section 11.1(hhh) of the APA.

six months sooner than for the Account Holders in Unsupported Jurisdictions. Indeed, even those Account Holders in Supported Jurisdictions who do not choose to become Binance US customers will receive the liquidated value of their Net Owed Coins three months earlier than Account Holders in Unsupported Jurisdictions, despite being categorized in the same class of creditors. There is no reasonable basis for discriminating against New York Account Holders in this fashion, and the Plan as proposed should not be approved.

## FACTUAL BACKGROUND

2.  The Department supervises and regulates the activities of nearly 3000 financial institutions, including banks, trust companies and insurance companies. DFS is responsible for, among other things, protecting consumers, fighting consumer fraud, and ensuring that regulated entities comply with applicable New York and federal laws and regulations. DFS accomplishes this, among other methods, by investigating and bringing enforcement actions against individuals and entities who may have violated such laws and regulations. *See* New York Financial Services Law §§ 102, 201, 301, 306, 404, 408 ("Applicable Law"). Specifically relevant to this matter, the Department administers and enforces New York's nation-leading virtual currency (also known as "cryptocurrency") regime. *See* 23 N.Y.C.R.R Part 200.

3.  The Debtors are engaged in virtual currency brokerage, custody, and lending businesses, with a customer base purporting to be international in scope.[9] If and to the extent the Debtors' virtual currency business activities are conducted in New York State or with New Yorkers, they would be subject to licensure and regulation under Applicable Law.

4.  To date, the Department has not licensed any of the Debtors to conduct virtual currency business activities in New York State or with New York consumers. The Debtors

---

[9] Debtors' Motion for Entry of an Order (I) Restating and Enforcing the Worldwide Automatic Stay, Anti-Discrimination Provisions, and Ipso Facto Protections of the Bankruptcy Code, (II) Approving the Form and Manner of Notice, and (III) Granting Related Relief, No. 22-10943 (Bankr. S.D.N.Y.), Dkt. No. 6, ¶ 8.

currently have pending with the Department applications for Voyager Digital New York, LLC, which the Department understands to be a not-yet operational member of the Voyager family of companies, to become licensed as both a virtual currency business and a money transmission business in New York. *See* Second Amended Disclosure Statement Relating to the Third Amended Joint Plan, No. 22-10943 (Bankr. S.D.N.Y.), Dkt. No. 863 ("Disclosure Statement"), § IV.J. n.20.

5. Despite the fact that none of the Debtors are licensed in New York, the Department is aware of allegations and other information indicating that one or more of the Debtors may have operated and may be continuing to operate in New York in violation of Applicable Law.

6. On July 5, 2002, Voyager filed for bankruptcy and continued to operate its businesses as a debtor-in-possession pursuant to sections 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code").[10]

7. During the latter half of September 2022, after the Debtors' marketing efforts to sell the company, an auction of the Debtors' assets was held and West Realm Shires, Inc. ("FTX") was the winning bidder [Dkt. No. 457]. On October 20, 2022, the Court entered an order authorizing entry into the asset purchase agreement with FTX [Dkt. No. 581].

8. In November 2022, FTX itself filed for bankruptcy, and, as a result, the Voyager asset sale to FTX did not close.

9. On or about December 21, 2022, the Debtors filed the Debtors' motion seeking approval to enter into the APA with Binance US [Dkt. No. 775] ("APA Motion").

10. On January 4, 2022, the Department filed a limited objection to the APA Motion [Dkt. No. 811]. The states of Vermont, New Jersey, and Texas also submitted objections to the

---

[10] Voluntary Petition for Non-Individuals Filing for Bankruptcy, No. 22-10943 (Bankr. S.D.N.Y.), Dkt. No. 1.

APA Motion, as did the U.S. Trustee, and the Securities and Exchange Commission. [Dkt. Nos. 807, 808, 810, 811, 815].

11. On January 8, 2023, the Debtors submitted an Omnibus Reply to Objections to APA Motion [Dkt. 831] ("Omnibus Reply").

12. On January 10, 2023, the Debtors filed the Plan.

13. On January 10, 2023, this Court held a hearing in this case regarding the Debtors' Disclosure Statement and the APA Motion. On January 13, 2023, this Court signed an order granting the Debtors' APA Motion [Dkt. 860].

## THE PLAN AND THE APA

14. Article III.C.3 of the Plan lays out the treatment of Account Holder Claims in both Supported Jurisdictions and Unsupported Jurisdictions.[11] Assuming the sale to Binance US closes, the Account Holder, under its Account Holder Claim, will receive its Net Owed Coins under Sections 6.10 and 6.12 of the Asset Purchase Agreement, "*provided* that for Account Holders in Unsupported Jurisdictions and only to the extent that the Purchaser does not obtain the Unsupported Jurisdiction Approval for the jurisdiction in which such Account Holder resides within 6 months following the Closing Date (as defined in the Asset Purchase Agreement), such Account Holders shall receive, after expiration of such time period, value in Cash at which such Net Owed Coins allocable to such Account Holder are liquidated." Plan, Art. III.C.3.(c)(i)(A). Article VI.C.8. further reads, "[i]f any Account Holder . . . is located in an Unsupported Jurisdiction … then the Net Owed Coins, if applicable . . . shall be handled pursuant to Section 6.12(b), or, if applicable, Section 6.14(d) of the Asset Purchase Agreement."[12]

---

[11] Account Holder Claims are defined in the Plan as "any Claim against the Debtors that is held by an Account Holder on account of such Holder's Account." Plan, Art. I.A.8.

[12] Section 6.14(d) of the APA explains the procedures for Additional Bankruptcy Distributions.

5

15. Section 6.12 (b) of the APA creates unjustifiable discriminatory treatment between Account Holders in Unsupported Jurisdictions, such as New York, and Account Holders in other states:

> (b) Notwithstanding anything to the contrary herein or otherwise, (i) for any Person (including any User or Eligible Creditor) that is located in Hawaii, New York, Texas or Vermont, to the extent that Purchaser does not have a Money Transmitter License or similar license in such jurisdiction or in any other jurisdiction where the applicable Governmental Body asserts after the date of this Agreement that Purchaser or any of its Affiliates requires a Money Transmitter License or similar license in order to consummate the Transactions or perform its obligations hereunder (each, an "Unsupported Jurisdiction"), . . . Seller shall not deliver to Purchaser any Coins, cash, or other asset with respect to any User or Eligible Creditor located in a jurisdiction that is an Unsupported Jurisdiction as of the Closing (and Seller shall retain and hold such Coins, cash, or other asset with respect to such User or Eligible Creditor (including in accordance with Section 6.12(f))) until the relevant Unsupported Jurisdiction Approval is received and Purchase has confirmed in writing that the relevant User or Eligible Creditor has satisfied the requirements set forth in Section 6.10 for onboarding to the Binance.US Platform, in which case, Purchaser shall (following receipt of any applicable assets if required) [distribute Net Owed Coins to the relevant Binance.US Platform account] . . . ; provided that to the extent Purchaser does not receive such Unsupported Jurisdiction Approval(s) with respect to any Unsupported Jurisdiction prior to the date that is six (6) months following the Closing Date, then instead of delivering such Coins, cash or other assets with respect to such Users or Eligible Creditors to Purchaser hereunder, Seller shall convert such Coins into United States Dollars and deliver such United States Dollars (and such other cash or other assets) in respect of such Users or Eligible Creditors in accordance with the Plan.

16. Under Section 6.12(b), the Debtors will hold the Coins, cash and other assets associated with any person located in an Unsupported Jurisdiction until the Unsupported Jurisdiction Approval is received. If it is not received six months after the Closing Date, then instead of receiving Coins, Voyager shall convert those Coins into United States Dollars and distribute them. For that conversion, Voyager may use Binance US or another entity. APA, § 6.12(b).

17. In contrast, for persons in a Supported Jurisdiction, the APA anticipates an early email notification to allow Account Holders to opt-in to an early transfer of the person's data. APA, § 6.6(a). Then, on the "Asset Migration Date,"[13] Binance US "shall credit, or cause to be credited, (i) to the Binance.US Platform account of each [Account Holder], such [Account Holder's] Net Owed Coins."[14] Then, "as promptly as practicable," and in any event by the Asset Migration Date, Binance US shall allow the Account Holder to access trading services on the Binance US platform. *Id.* In other words, shortly after Voyager delivers the Account Holder's Coins to Binance US, Account Holders in Supported Jurisdictions have their recovery and can begin trading.

18. Even if a person in a Supported Jurisdiction ignores Binance US, chooses not to migrate to that platform, or simply wants a distribution in cash, then "with respect to any [Account Holder] . . . that does not satisfy [migration requirements] prior to the date that is three (3) months following the later of the Closing Date and the date on which such terms and conditions are made available for such [Account Holder]," then Voyager shall deliver those Coins to Binance US. APA, § 6.12(a). Then Binance US shall deliver United States Dollars within five business days to Voyager, and then Voyager will distribute to the Account Holder pursuant to the Plan. *Id.*

## OBJECTION

19. Section 1129(a) provides that the Court shall confirm a plan only if it complies with all applicable provisions of the Bankruptcy Code. 11 U.S.C. 1129(a)(1). The debtors bear the

---

[13] The "Asset Migration Date" is defined as, "with respect to any User or Eligible Creditor, as applicable, who has satisfied the requirements set forth in Section 6.10 and Section 6.12(b) for onboarding to the Binance.US Platform, the date that is five (5) Business Days following the date on which Seller has delivered to Purchaser the Acquired Coins or cash to be distributed by Purchaser to such User or Eligible Creditor, as applicable, pursuant to [the APA]." APA, § 11.1(i).

[14] APA, § 6.12(a). The APA uses the term "User," defined as "any Person located and having a home address in the United States that had a Cryptocurrency account on the Voyager Platform as of the Petition Date." APA, § 11.1(vvvv). The Plan uses the term "Account Holder" to mean "any Person or Entity who holds an Account with [Voyager Digital, LLC] as of the Petition Date." Plan, Art. I.A.7. Though not identical, the terms are similar, and this Objection uses "Account Holder" for consistency.

7

burden of proof with respect to the confirmation requirements, by a preponderance of the evidence. *In re Charter Commc'ns*, 419 B.R. 221, 243 (Bankr. S.D.N.Y. 2009) (citing *Heartland Fed. Savs. & Loan, Ass'n v. Brisco Enters. (In re Brisco Enters.)*, 994 F.2d 1160, 1165 (5th Cir. 1993)). Section 1123(a)(4) of the Bankruptcy Code requires that a plan shall "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest."

20.     "The Bankruptcy Code does not permit the unequal treatment of creditors in the same class." *In re Pac. Drilling S.A.*, 2018 Bankr. LEXIS 3024, *6 (Bankr. S.D.N.Y. Oct. 1, 2018). Section 1123(a)(4) does not require that holders receive the same amount of money, and the key inquiry is not whether the claimants all receive the same thing, but whether they have the same opportunity. *In re LATAM Airlines Grp. S.A.*, 2022 Bankr. LEXIS 1725, *109 (Bankr. S.D.N.Y. June 18, 2022); *In re AMR Corp.*, 562 B.R. 20, 34 n.18 (Bankr. S.D.N.Y. 2016); *In re Mesa Air Grp., Inc.*, 2011 Bankr. LEXIS 3855, *19 (Bankr. S.D.N.Y. Jan. 20, 2011).

21.     Neither the Debtors nor Binance US has a license to conduct cryptocurrency-related activities in New York. Both the Debtors and Binance US have pending license applications with the Department. Although those applications are under review, there is no date certain for determination.

22.     The licensing status should not unfairly disadvantage any recovery owed to New Yorkers, as compared to Account Holders in other states, either in time or form. The failures of the Debtors and Binance US to achieve New York licensing cannot properly be the basis to relegate New York Account Holders to a disadvantaged "Unsupported Jurisdiction" status, where they will have no control over their assets for six months after the Closing Date, while Account Holders in other jurisdictions, members of the same class of creditors, will not be subject to the same

8

constraint. As the Debtors acknowledged in their Omnibus Reply, "time is of the essence in these chapter 11 cases." Omnibus Reply, ¶ 6.

23. This is not a case where a delayed receipt of distribution to certain members of a class is justified because those class members' claims are disputed. *See, e.g., Enron Corp. v. New Power Co. (In re New Power Co.)*, 438 F.3d 1113, 1122 (11th Cir. 2006) (no violation of Section 1123(a)(4) where distribution delay is because movant's claims were disputed); *see also In re AMR Corp.*, 562 B.R. 20, 23-24 (Bankr. S.D.N.Y. 2016) (distinguishing between claims allowed as of the effective date, and after the effective date). Here, New York Account Holders are not subject to specific disputes that do not affect Account Holders in Supported Jurisdictions.

24. Nevertheless, the Plan substantially disadvantages Account Holders from Unsupported Jurisdictions by making them wait months longer to access their assets than other Account Holders — a difference that could be devastating in a market as volatile as the cryptocurrency market is — and by mandating a distribution of assets in cash, which could generate significant tax implications. These disadvantages cannot reasonably be justified simply because Binance US wants the opportunity to establish a customer relationship with Account Holders in the event that it could obtain a license during the relevant period.

A. <u>The Plan Unfairly Discriminates By Delaying Distributions to New York Consumers</u>

25. Courts have elaborated that a difference in the timing of distributions, or "other procedural variations that have a legitimate basis" do not violate Section 1123(a)(4), unless they produce a substantive difference in the ability to recover. *In re W.R. Grace & Co.*, 729 F.3d 311, 327 (3d Cir. 2013). Here, the Plan fails on both counts. First, the Plan could well lead to a difference in ability to recover, as, given the volatility of the cryptocurrency market, a difference of six or even three months might make a significant difference in recovery. Second, there is simply no "legitimate basis" for having Account Holders in Unsupported Jurisdictions wait longer

9

than Account Holders in Supported Jurisdictions — the only reason proffered for the difference in treatment is to give Binance US an opportunity to establish a customer relationship (should the Account Holder so elect) if such a relationship becomes lawful (should the Department give Binance US a license) within the relevant time period. Whatever small commercial benefit this contingent and unlikely scenario presents to Binance US is insufficient to justify plainly discriminatory treatment.

26. Voyager offers no argument why Account Holders in Unsupported Jurisdictions must wait for an additional three months to obtain their recovery. If the intention is that the additional three months affords more time for Binance US to receive Unsupported Jurisdiction Approval, Voyager offers no reason or justification that those three months will make a material difference in Binance US's likelihood of being licensed. Moreover, the explanation cannot be that it is technically not feasible for Voyager to distribute to these Account Holders since the APA and the Plan make clear that it is technically feasible to do so (and is indeed required to be done) if Binance US does not obtain Unsupported Jurisdiction Approval at the end of six months — at that point, Voyager must liquidate and distribute the assets to these New York Account Holders.[15] Given that Voyager must have the capacity to effect the return of liquidated assets after six months, there is no legitimate reason why it cannot have the capacity to do so beforehand.

B. The Plan Unfairly Discriminates by Offering No Option to Recover Cryptocurrency

27. Moreover, the Plan is discriminatory because some Account Holders (those who do not establish accounts with Binance US) are deprived of receiving their assets in-kind while those

---

[15] Similarly, and alternatively, there is clearly a feasible and required process for returning assets to Account Holders in Supported Jurisdictions who choose not to establish a Binance US account within three months, when Voyager must deliver the account assets to Binance US for liquidation and distribution back to Voyager within five days of such delivery. This process may occur three months earlier than any return anticipated to Account Holders in Unsupported Jurisdictions where Binance US does not obtain licensing approval in six months. Practically, if this process were to be employed for the return of assets to New York Account Holders, it would be even more stream-lined than doing so for Account Holders who choose not to establish a Binance US account after three months, as no waiting period and no individual monitoring of accounts would be required for New York Account Holders, since there is no reasonable basis for Voyager to expect that Binance US will obtain New York licensing approval within six months.

10

who do establish accounts with Binance US are given the choice to receive in-kind distributions. New York Account Holders should have the same options as other Account Holders.

28. Under the Plan and the APA, unless Binance US obtains a license in the relevant time period, Account Holders in New York and other Unsupported Jurisdictions must receive their recovery as liquidated assets and are denied the option of receiving Coins instead of fiat currency, whereas Account Holders in Supported Jurisdictions have a choice. There may be various considerations that a New York customer may have for choosing the return of Coin rather than liquidated assets, including potentially significant tax consequences arising from liquidation. New York customers should not have fewer, and perhaps less financially advantageous, options simply because Voyager engaged in unlicensed activity in New York.

29. Courts have held that all claimants in a class must have the same opportunity. *See, e.g.*, *In re Mesa Air Grp., Inc.*, 2011 Bankr. LEXIS 3855, *22 (Bankr. S.D.N.Y. Jan. 20, 2011) (where unsecured U.S. citizen creditors received notes and stocks, unsecured non-U.S. citizen creditors appropriately received notes and warrants with a 10% premium over shares offered to citizens, as the premium was "necessary to equate the value between the [stock] and [warrants] based on how the two securities would trade on the open market.").[16] Here, absent Binance US obtaining a license in the relevant period, the Account Holders in Unsupported Jurisdictions are given no choice to obtain cryptocurrency for their recovery, without regard to any consequences for that lack of choice. To create equal treatment, New York Account Holders should have the option to obtain their recovery in cryptocurrency just as other Account Holders do.

---

[16] "If anything, the testimony shows that the premium *is necessary* to ensure equal treatment under 1123(a)(4)." *In re Mesa Air Grp., Inc.*, 2011 Bankr. LEXIS 3855, *22 (Bankr. S.D.N.Y. Jan. 20, 2011) (emphasis added).

11

## RELIEF REQUESTED

30.     The Department respectfully requests that the Plan be amended to eliminate unfair discrimination against Account Holders in New York by (i) amending Article III of the Plan and Section 6.12(b) of the APA such that Account Holder Claims in New York are paid out at the same time that Account Holders in Supported Jurisdictions are provided access to their Accounts, but at no time later than the time of payment of the claims of Account Holders in Supported Jurisdictions who choose not to migrate to Binance US, and (ii) amending Article III of the Plan, and Section 6.12(b) of the APA, so that Account Holder Claims in New York can be paid out in cryptocurrency should the Account Holder so choose.

## PRAYER

31.     WHEREFORE, based on the foregoing, the New York State Department of Financial Services respectfully requests that that the Plan be amended to eliminate unfair discrimination against Account Holders in New York by (i) amending Article III of the Plan and Section 6.12(b) of the APA such that Account Holder Claims in New York are paid out at the same time that Account Holders in Supported Jurisdictions are provided access to their Accounts, but at no time later than the time of payment of the claims of Account Holders in Supported Jurisdictions who choose not to migrate to Binance US, and (ii) amending Article III of the Plan, and Section

6.12(b) of the APA, so that Account Holder Claims in New York can be paid out in cryptocurrency should the Account Holder so choose.

Dated:  New York, New York
        February 22, 2023

                                           */s/ Kevin R. Puvalowski*
Kevin R. Puvalowski
Acting Executive Deputy Superintendent
Consumer Protection and Financial Enforcement
New York State Department of Financial Services
One State Street
New York, New York 10004-1511
(212) 709-7156
Kevin.Puvalowski@dfs.ny.gov

*/s/ Linda Donahue*
Linda Donahue
Deputy General Counsel for Litigation
New York State Department of Financial Services
One State Street
New York, New York 10004-1511
(212) 709-1641
Linda.Donahue@dfs.ny.gov

*/s/ Jason D. St. John*
Jason D. St. John
Assistant Deputy Superintendent
Consumer Protection and Financial Enforcement
New York State Department of Financial Services
One State Street
New York, New York 10004-1511
(646) 343-4199
Jason.StJohn@dfs.ny.gov

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| VOYAGER DIGITAL HOLDINGS, INC., et al.,[1] | ) Case No. 22-10943-MEW |
| | ) (Jointly Administered) |
| Debtors. | ) |

CERTIFICATE OF SERVICE

The undersigned counsel, of the New York State Department of Financial Services, hereby certifies that on the 22nd day of February, 2023, he caused a true and correct copy of the *Objection of the New York State Department of Financial Services to Debtors' Third Amended Plan* to be served on those parties appearing on Exhibit A by e-mail.

Dated: New York, New York
       February 22, 2023

/s/ Jason D. St. John
Jason D. St. John
Assistant Deputy Superintendent
Consumer Protection and Financial Enforcement
New York State Department of Financial Services
One State Street
New York, New York 10004-1511
(646) 343-4199
Jason.Stjohn@dfs.ny.gov

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687, hereinafter "Holdings"); Voyager Digital, Ltd. (7224, hereinafter, the "Canadian Parent Company"); and Voyager Digital, LLC (8013, hereinafter, "Voyager"). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

**Exhibit A**

| Kirkland & Ellis LLP<br>Attn: Joshua A. Sussberg; Christopher Marcus; Christine A. Okike; Allyson B. Smith<br>601 Lexington Avenue<br>New York, NY 10022<br><br>jsussberg@kirkland.com<br>cmarcus@kirkland.com<br>Christine.okike@kirkland.com<br>Allyson.smith@kirkland.com<br><br>*Counsel to Debtors* | McDermott, Will & Emery LLP<br>Attn: John J. Calandra; Joseph B. Evans;  Darren Azman<br>One Vanderbilt Avenue<br>New York, NY 10017-3852<br><br>jcalandra@mwe.com<br>jbevans@mwe.com<br>dazman@mwe.com<br><br>*Counsel to the Official Committee of Unsecured Creditors* | Office of the United States Trustee for the Southern District of New York<br>Attn: Richard C. Morrissey; Mark Bruh<br>201 Varick Street, Room 1006<br>New York, NY 10014<br><br>Richard.morrissey@usdoj.gov<br>Mark.bruh@usdoj.gov |
| --- | --- | --- |
| Securities & Exchange Commission<br>Attn: Therese A. Scheuer<br>scheuert@sec.gov<br>nyrobankruptcy@sec.gov | | |