HEARING DATE: March 1, 2023<br>
HEARING TIME: 10:00 a.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
:
In re                                                      :    Chapter 11
                                                           :
VOYAGER DIGITAL HOLDINGS,                                   :    Case No. 22-10943 (MEW)
INC., *et al.*,[1]                                          :
                                                           :    Jointly Administered
                                        Debtors.            :
                                                           x
----------------------------------------------------------

### OBJECTION OF UNITED STATES TRUSTEE TO APPLICATION OF DEBTORS FOR AUTHORITY TO EMPLOY AND RETAIN PAUL HASTINGS LLP AS SPECIAL REGULATORY AND CONFLICTS COUNSEL, EFFECTIVE AS OF THE PETITION DATE

William K. Harrington, the United States Trustee for Region 2 (the "**United States Trustee**"), by his undersigned counsel, respectfully objects to the Application of Debtors for Authority to Employ and Retain Paul Hastings LLP as Special Regulatory and Conflicts Counsel, Effective as of the Petition Date (the "**Paul Hastings Retention Application**"), ECF No. 505.  In support of his objection, the United States Trustee respectfully states as follows:

### PRELIMINARY STATEMENT

The Bankruptcy Code prohibits the Debtors from retaining a professional that "hold[s] or represent[s] adverse to the estate, and that are [not] disinterested persons. . . ." 11 U.S.C. § 327(a).  Although the Paul Hastings Retention Application states that the firm's retention is proposed under section 327(e) of the Bankruptcy Code, on information and belief after

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (N/A); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003

discussions with the firm, the firm will be retained as conflicts counsel under section 327(a). While a debtor-in-possession in a chapter 11 case is normally afforded great deference in its choice of counsel, including conflicts counsel, that deference is not without limits. Among other things, a debtor's selection of counsel must be consistent with "the important policy of ensuring that all professionals . . . tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities." *In re Crivello*, 134 F.3d 831, 836 (7th Cir. 1998) (quoting *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir. 1994)). As discussed below, because Paul Hastings LLP ("**Paul Hastings**") concurrently represents employees of an entity in the case that has an interest adverse to the interests of the Debtors, the Paul Hastings Retention Application must be denied.

According to the Paul Hastings Retention Application, Paul Hastings currently represents, or has represented, current or former officers of Celsius Network LLC ("**Celsius**"). Celsius (and/or one or more of its affiliates) is a (disputed) creditor in these cases (the "**Celsius Clients**"). Although Paul Hastings avers that Celsius itself is not among the firm's clients, Celsius did pay the sum of $750,000 to Paul Hastings on account of the firm's services to the Celsius Clients. Moreover, the firm received that payment just one day before the filing of the chapter 11 petitions of Celsius and its affiliated debtors. The timing of this payment makes Paul Hastings the potential target of a fraudulent conveyance or avoidance action in the *Celsius* bankruptcy cases.

The proposed retention of Paul Hastings by the Debtors in the Voyager cases is particularly problematic, as the firm is to be retained as conflicts counsel specifically and exclusively to represent the Debtors in connection with a dispute between Voyager and Celsius. To make matters worse, the Paul Hastings Retention Application was not filed until January 25,

2023, the day *after* the hearing regarding Celsius's claim against Voyager. Thus, Paul Hastings went ahead with the argument without first waiting for the Court to approve its retention as conflicts counsel to the Debtors.

Furthermore, Paul Hastings has been retained to act as counsel the Official Committee of Unsecured Creditors in the chapter 11 cases of FTX Trading Ltd., and certain of its affiliates. On information and belief, the Debtors do not intend to have Paul Hastings provide services as conflicts counsel in connection with any claim that the Debtors may have against FTX or vice versa. The law firm's connection to the FTX cases is nevertheless disqualifying under the disinterestedness standard set forth in section 327(a) of the Bankruptcy Code. As the Court and the parties-in-interest are well-aware, the Debtors have asserted significant claims against FTX and its affiliates and vice versa. Under the section 327(a) standard, Paul Hastings' connections to both the FTX chapter 11 cases and Celsius should preclude the firm from being retained as conflicts counsel to the Debtors. Given these factual circumstances, Paul Hastings does not possess undivided loyalty to the Debtors in these cases. Thus, the Court cannot approve the Paul Hastings Retention Application.[2]

Finally, given the nature of the adverse interest presented here, Paul Hastings has an actual conflict of interest. The Paul Hastings Retention Applications presents an unusual case where proposed conflicts counsel itself has a disabling conflict. Accordingly, as more fully addressed below, the Paul Hastings Retention Application must be denied.[3]

---

[2] The United States Trustee reserves his rights to raise additional issues regarding Paul Hastings' failure to disclose pertinent facts regarding the Celsius Clients' retention of the firm prior to the filing of the Supplemental Declaration.

[3] The Debtors retained Paul Hastings early in these cases as an Ordinary Course Professional ("**OCP**") to handle certain regulatory matters. As special counsel under section 327(e) of the Bankruptcy Code, Paul Hastings need not be disinterested, so long as it neither represents nor holds an interest adverse to the debtor in connection with those matters. So long as the firm's representation of the Debtors as special counsel does not relate to Celsius or FTX, the

3

## FACTUAL BACKGROUND

1.  The Debtors each commenced a chapter 11 bankruptcy case on July 5, 2022 (the "**Petition Date**").  ECF Doc. No. 1.

2.  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

3.  On July 19, 2022, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "**Voyager Committee**") (ECF Doc. Nos. 102, 106).

4.  On August 5, 2022, the Court entered an Order authorizing the retention and compensation of professionals utilized in the ordinary course of business (the "**OCP Order**"). ECF Doc. No. 244; Paul Hastings Retention Application, ¶ 7.

5.  On August 17, 2022, in connection with the OCP Order, Paul Hastings filed a Declaration of Disinterestedness.  ECF Doc. No. 303.

6.  On October 5, 2022, debtor Celsius Network Limited – one of the affiliated debtors of lead debtor Celsius Network LLC[4] ("collectively, "**Celsius**") filed a Statement of Financial Affairs.  SDNY Case No. 22-10966 (MG), ECF Doc. No. 6.  Paul Hastings is listed among the recipients of "payments or transfers to creditors within 90 days before filing this case." SDNY Case No. 22-10966 (MG), ECF Doc. No. 6, pg. 40 of 64.  In fact, that payment was made just one day before the commencement of the Celsius cases.

7.  On December 14, 2022, Celsius filed a Motion to File Proof of Claim After

---

United States Trustee does not object to Paul Hastings' continued services to the Debtor under section 327(e) to handle the matters for which it was retained under the OCP Order.

[4] The lead SDNY case number for the jointly administered *Celsius* cases is 22-10964 (MG).

Claims Bar Date (the "**First Celsius Motion**"). ECF Doc. No. 727.

8. On December 22, 2022, counsel to Celsius, the Debtors, and the Committee entered into a Joint Stipulation and Agreed Order fixing the time to file objections to the First Celsius Motion. ECF Doc. No. 781. Paul Hastings signed the Joint Stipulation as Counsel for Voyager Digital LLC. *See id.*

9. On December 23, 2022, Celsius filed an Updated Motion for an Order (I) Lifting the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001and (II) Granting Leave to File Late Proof of Claim Pursuant to Bankruptcy Rules 3003(c) and 9006(b)(1) (the "**Updated Celsius Motion**"). ECF Doc. No. 789.

10. On January 17, 2023, the Debtors filed an Objection to the First Celsius Motion and the Updated Celsius Motion (collectively, the "**Celsius Motions**"). ECF Doc. No. 867. Paul Hastings signed the Objection as Debtors' "Proposed Special Regulatory and Conflicts Counsel." *See id.* at pg. 1 and 22 of 22.

11. The hearing on the Celsius Motions was held before this Court on January 24, 2023. *See* ECF Doc. No. 921. Paul Hastings represented the Debtors at the hearing.

12. On January 25, 2023, the day after the hearing, the Debtors filed the Paul Hastings Retention Application. ECF Doc. No. 911.

13. The Debtors stated that, because Paul Hastings had exceeded the fee caps provided for in the OCP Order, the Debtors sought to retain Paul Hastings under section 327(e) of the Bankruptcy Code as special regulatory counsel to the Debtors. *See id.* at ¶ 8. At the same time, Debtors seek to retain Paul Hastings as conflicts counsel. *See id.* at ¶¶ 8, 11, 13, 15, 16.

14. Specifically, the Debtors seek to retain Paul Hastings as conflicts counsel with respect to one matter, the Debtors' opposition to the Celsius Motions. *See id.* at ¶¶ 9, 15, 16.

5

15. According to the Declaration of Matthew M. Murphy in Support of Debtors' Application Pursuant to Sections 327(e) and 330 of the Bankruptcy Code for Authority to Employ and Retain Paul Hastings LLP as Special Regulatory and Conflicts Counsel, Effective as of the Petition Date (the "**Murphy Declaration**"), Paul Hastings' current clients include "[c]ertain current and former officers of Celsius Network LLC, in their individual capacity." Murphy Declaration, ¶ 13b, ECF Doc. No. 911, pg. 30 of 56.

16. The Murphy Declaration also states that Paul Hastings serves "as lead counsel to the Official Committee of Unsecured Creditors (the "**FTX Committee**") in the chapter 11 cases of *FTX Trading Ltd.* and certain of its affiliates (collectively, the "**FTX Cases**").[5] *Id.* at ¶ 13e, ECF Doc. No. 911, pg. 31 of 56.

17. On February 22, 2023, Paul Hastings filed a Supplemental Declaration of Matthew M. Murphy in Support of the Paul Hastings Retention Application (the "**Supplemental Murphy Declaration**"). ECF Doc. No. 1053.

18. The Supplemental Murphy Declaration states that, although Celsius itself was not a party to the engagement letters with the latter's current and former officers, Celsius "did sign one of the Engagement Letters as an indemnitor and guarantor of legal fees." Supplemental Murphy Declaration, ¶ 4.[6]

19. Moreover, the Supplemental Murphy Declaration discloses that, on July 12, 2022 Celsius paid $750,000 to Paul Hastings "on behalf of the [Celsius] Officers, as an advance

---

[5] The *FTX* Cases are being administered by the Bankruptcy Court for the District of Delaware, at Case No. 22-11068 (JTD).

[6] The Declaration also states that certain of the firm's individual clients have filed proofs of claim in the Celsius bankruptcy cases with respect to Celsius's indemnification obligations. Supplemental Murphy Declaration, ¶ 4.

retainer for Paul Hastings representation of the Officers." *Id.* at ¶ 5.

## OBJECTION

A.  **Governing Standards**

Section 327 of the Bankruptcy Code governs the employment of professional persons and provides, in part:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, [. . .] or other professional persons, **that do not hold or represent an interest adverse to the estate, and that are disinterested persons**, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a) (emphasis added).

Thus, a professional

> (1) must not hold an interest adverse to the bankruptcy estate; (2) must not represent an interest adverse to the estate; and (3) must be disinterested.

*In re Worldcom*, 311 B.R. 151, 163 (Bankr. S.D.N.Y. 2004). Pursuant to 11 U.S.C. § 101(14), a person is disinterested if he or she:

> does not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14); *see In re Black and White Stripes, LLC*, 623 B.R. 23 (Bankr. S.D.N.Y. 2020) ("the structure of the Bankruptcy Code distills the[] dual requirements [that is, distinterestedness and the absence of an adverse interest] into a single test for analysis of a conflict"). The disinterestedness standard under Section 327(a) is designed to guarantee "that the professionals' service presents no conflict of interest." *In re Vouzianas*, 259 F.3d 103, 107 (2d Cir. 2001); *see also In re Vebeliunas*, 231 B.R. 181, 191 (Bankr. S.D.N.Y. 1999) (even the appearance of a conflict is to be avoided). "What is clear is that undivided loyalty is central to disinterestedness." *In re Angelika Films 57th Inc.*, 227 B.R. 29, 39 (Bankr. S.D.N.Y. 1998). *See*

7

*also Project Orange Assocs,* 432 B.R. 363, 369 (Bankr. S.D.N.Y. 2010) (professional to be retained under section 327 must have no interest adverse to the estate).

"The 'materially adverse' standard incorporated in the disinterestedness test and the 'interest adverse to the estate' language in section 327(a) overlap . . . and form a single test to judge conflicts of interest." *In re Granite Partners, L.P.*, 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998) (citations omitted); *In re Leslie Fay Companies, Inc.*, 175 B.R. 525, 532 (Bankr. S.D.N.Y. Dec. 15, 1994) (quoting *In re Martin*, 817 F.2d 175, 181 (1st Cir.1987)) ("[T]he twin requirements of disinterestedness and lack of adversity telescope into a single hallmark."). Section 327(a)'s prohibition of "[a]n interest adverse to the estate" has been construed strictly, and operates as a 'catch-all clause,' *In re Vebeliunas*, 231 B.R. at 191 n.10, 191–92, where any doubt will result in disqualification. *See In re Angelika Films 57th Inc.*, 227 B.R. at 39.

While the term "adverse interest" is not defined in the Bankruptcy Code, the Second Circuit has adopted the following definition:

> (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate.

*Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610, 623 (2d Cir. 1999); *see also In re Enron*, No. 01-16034, 2002 WL 32034346 at *1, *8 (Bankr. S.D.N.Y. May 23, 2002) ("Said another way, if it is plausible that the representation of another interest may cause the professional to act any differently than they would without that other representation, then that professional would have a conflict and an interest adverse to the estate warranting disqualification."). The decision whether an adverse interest exists is determined by the court on

a case-by-case basis. *See AroChem*, 176 F.3d at 623; *In re Caldor, Inc. NY*, 193 B.R. 165, 171 (Bankr. S.D.N.Y. 1996).

A disabling adverse interest arises where a professional has "a meaningful incentive, **or the perception of one**, to act contrary to the interests of the estates." *In re Granite Partners*, 219 B.R. at 36 (emphasis added); *see also In re Leslie Fay Companies, Inc.*, 175 B.R. at 534 (debtor's counsel investigating a client "had a perceptible economic incentive not to pursue the possibility of claims . . . with the same vigor and intensity it might have otherwise applied.). "To be disinterested is 'to prevent even the appearance of a conflict irrespective of the integrity of the person or firm under consideration.'" *In re Vebeliunas*, 231 B.R. at 191. A conflict related to a party that is central to a debtor's reorganization may be disqualifying even where the proposed counsel seeks to utilize "conflicts counsel." *See In re Project Orange Assocs., LLC*, 431 B.R. 363, 379 (Bankr. S.D.N.Y. 2010).

Section 327(c) of the Code provides that a professional is not disqualified from employment by the debtor in possession solely because of the professional's representation of a creditor. Section 327(c) provides in full:

> (c) In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

Thus, section 327(c) does not eliminate the basic requirements of section 327(a) that the professional be disinterested and not hold or represent an interest adverse to the estate. By the same token, section 327(c) expresses the recognition that a prospective professional for a trustee or debtor in possession may have represented, or even continue to represent, one or more creditors unless there is an actual conflict of interest. While not defined in the Code, an actual

9

conflict of interest has been interpreted to mean "an active competition between two interests, in which one interest can only be served at the expense of the other." *In re Mercury*, 280 B.R. 35, 54 (Bankr. S.D.N.Y. 2002).

Former Chief Judge Tina Brozman stated that "[w]hen the [law] firm concurrently represents both parties, courts are to apply a *per se* prohibition; the representation is *prima facie* improper unless the clients consent or the attorney shows, at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation." *In re Wingspread Corp.*, 152 B.R. 861, 863 (Bankr. S.D.N.Y. 1993) (internal citations omitted).

Moreover, section 328(c) of the Bankruptcy Code provides that "disinterestedness" is a prerequisite to allowance of compensation for a professional person who is employed under Section 1103 of the Bankruptcy Code. Section 328(c) states, in relevant part:

> …the court may deny compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the estate with respect to the matter on which such professional person is employed.

*See* 11 U.S.C. § 328(c).

The requirement that retained professionals have no conflicts is accompanied by the requirement that the professional in question *disclose* "all connections to creditors and parties in interest" that may indicate the existence of a conflict. 11 U.S.C. § 329(a); Fed. R. Bankr. P. 2014(a) and 2016(b); *see also In re NNN Capitol Center 16 LLC*, 632 B.R. 243, 261 (D. Del. 2021), *aff'd*, 2022 WL 17831445 (3d Cir. Dec. 21, 2022). The failure to disclose such connections may result in the professional's disqualification. *See In re NNN Capitol Center*, 632 B.R. at 261 (failure to meet disclosure requirements "may, at the bankruptcy court's discretion, result in the law firm's disqualification"). This requirement is in effect even where the connections in question

do not "rise to the level of a disqualifying conflict." *Id.* at 264; *see also Kagan v. Stubbe (In re El San Juan Hotel Corp.)*, 239 B.R. 635, 647 (B.A.P. 1st Cir. 1999) (attorneys to be retained under section 327 "cannot pick and choose which connections to disclose").

The Stringent requirements and standards for the employment of professionals under the Bankruptcy Code and Bankruptcy Rules are designed to ensure the integrity of the bankruptcy process and the public's confidence in the bankruptcy courts. *See In re Lee Way Holding Co.*, 100 B.R. 950, 961 (Bankr. S.D. Ohio 1989).

**B.     Paul Hastings Has, and Failed to Disclose, an Adverse Interest**

Because Paul Hastings has represented both the Debtors and Celsius Clients – whose legal fees to Paul Hastings were paid by Celsius – the law firm is not disinterested for purposes of section 327(a). In the instant case, while representing the Debtors, Paul Hastings has a duty to the Debtors. To carry out its mandate as conflicts counsel, Paul Hastings must provide advice and vigorously assert positions adverse to the interests of Celsius in connection with the Celsius Motions. The firm's duty as conflicts counsel was to oppose Celsius's claims. However, as counsel to the Celsius Clients, Paul Hastings has rendered services that apparently inured to the benefit of Celsius – given that Celsius paid Paul Hastings $750,000.00 just one day before Celsius and its affiliates filed their respective bankruptcy petitions.[7]

Significantly, notwithstanding its relationship with Celsius and its employees, Paul Hastings went ahead with its representation of the Debtors without first filing a retention application. In fact, before it filed the Paul Hastings Retention Application, the law firm had

---

[7] Although the Celsius SOFA does not divulge the reason for the $750,000 payment to Paul Hastings, *see* SDNY Case No. 22-10966 (MG), ECF Doc. No. 6, pg. 40 of 64, the Supplemental Murphy Declaration describes that payment as "an advance retainer for Paul Hastings' representation of the Officers" in connection with Celsius's "Indemnification Obligations." Supplemental Murphy Declaration, ¶ 5

filed pleadings in connection with the Celsius Motions and argued the motion at the January 24, 2023 hearing. *See* ECF Doc. Nos. 781, 867, 921. By failing to ensure that its retention as conflicts counsel would be approved by the Court, Paul Hastings ran the risk of rendering services to the Debtors without compensation. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 538-39 (2004) (Debtor's attorney not retained under section 327 of the Bankruptcy Code not eligible to receive compensation under section 330(a)(1)); *see also In re NNN Capitol Center*, 632 B.R. at 256, (Attorney seeking compensation under section 330(a) "must first be employed under § 327").

As noted above, Paul Hastings seeks to be retained to provide services that directly involve Celsius. In fact, the Celsius Motion is quite simply a two-party dispute: Celsius vs. Voyager. That motion pitted an entity that had paid a law firm to represent certain of its current and former employees (albeit on matters presumably unrelated to the Celsius Motion) against an entity that seeks to retain the same law firm. *See* Paul Hastings Retention Application, ¶ 8. Moreover, although the Paul Hastings Retention Applications states that the firm "does not have any connection with any creditors," *id.* at ¶ 19, it received a $750,000 within the preference period not from just "any creditors," but from Celsius -- the very creditor whose motion Voyager retained the firm to oppose.

Even though Paul Hastings – on the eve of the filing of the Celsius cases -- already received a large payment from Celsius on account of its services to the Celsius Clients, it does not necessarily follow that the firm possesses undivided loyalty to Voyager. In fact, the current and former officers of Celsius are current, not former, clients of Paul Hastings.[8] *See* Murphy

---

[8] That Paul Hastings continues to represent the Celsius Clients distinguishes this retention from the retention at issue in *AroChem*, where the firm seeking to be retained as special counsel in a chapter 7 case no longer represented the creditor's interests. *AroChem*, 176 F.3d at 623-24.

12

Declaration, ¶ 13b.  Paul Hastings thus acknowledges that it continues to perform services for these individual clients – and does not suggest that the firm will receive payment for such continuing services by any individual or entity other than Celsius.  *See id.*  The firm, which has already received at least one significant payment for its representation of the Celsius Clients, has held -- and continues to hold -- an interest adverse to the estate and is not disinterested.  *See In re Martin*, 817 F.2d 175, 179-80 (1st Cir. 1987) ("the twin requirements of disinterestedness and a lack of adversity telescope into a single hallmark"); see also *Angelika Films 57th, Inc.*, 227 B.R. 29, 37 (Bankr. S.D.N.Y. 1998) (citing section 327(a) requirement both that debtor's counsel "not hold or represent an interest adverse to the bankruptcy estate" and be disinterested).[9]

### C.    Paul Hastings Cannot Serve as Conflicts Counsel to Voyager While Simultaneously Serving as Lead Committee Counsel in the FTX Chapter 11 Cases

Although the United States Trustee understands that the FTX Committee retained not only Paul Hastings, but also another firm as co-counsel, Paul Hastings cannot cure its conflict problem merely by (1) walling itself off from the FTX's claim against Voyager and Voyager's claims against FTX in the *FTX* cases, and (2) by limiting itself to the Celsius Claim in the *Voyager* cases.  Where a conflict involves a matter essential to resolving a case, the use of other counsel does not resolve the conflict.  *Project Orange Assocs,* 432 B.R. 363, 376 (Bankr. S.D.N.Y. 2010); *see also, In re WM Distribution, Inc.*, 571 B.R. 866, 873 (Bankr. D.N.M. 2017)

---

[9] Paul Hastings does not state in the Paul Hastings Retention Application that to protect confidentiality it has erected an information barrier between its professionals that represent the Celsius Clients and those that represent Voyager.  *See In re Ampal-American Israel Corp.*, 534 B.R. 569, 583 (Bankr. S.D.N.Y. 2015) ("Although associated attorneys are presumed to share client confidences … that presumption is rebutted through evidence that an ethical wall prevents information sharing.").  However, even if such a barrier had been erected, it would not have eliminated Paul Hastings' conflict.  *See Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 822 ("Screening measures … do nothing to mitigate conflict arising from concurrent adverse client relationships, since the purpose of the prohibition against such relationships is to preserve the attorney's duty of loyalty, not confidentiality, to his client.").

("use of conflicts counsel is not appropriate where the adverse interests of the debtors represented by the same general bankruptcy counsel are central to the reorganization efforts of either debtor or to the other resolutions of the chapter 11 case or where the adverse interest are so extensive that each debtor should have its own independent bankruptcy counsel."); *Git-n-Go, Inc.,* 321 B.R. 54, 61-62 (Bankr. N.D. Okla. 2004) (proposed bankruptcy counsel disqualified although debtor proposed to retain conflicts counsel to provide advice in connection with creditors represented by proposed bankruptcy counsel).

In *Project Orange Assocs.,* General Electric ("**GE**") was the largest unsecured creditor in the case, the resolution of whose claim was essential to a successful reorganization. *Project Orange Assocs,* 432 B.R. at 365-366. The Debtor sought to retain DLA Piper (US) ("**DLA Piper**") as its bankruptcy counsel. *Id*. at 367-368. DLA Piper, however, represented affiliates of GE in unrelated matters. *Id*. at 368. DLA Piper International, LLP ("**DLA Piper International**"), a separate affiliate of DLA Piper, also represented an affiliate of GE, General Electric International, Inc. ("**GEII**"), which was a creditor in the case. *Id*. at 368. In claiming that it did not have a disqualifying conflict, DLA Piper asserted, among other things, that (i) the debtor retained another firm to handle all matters DLA Piper could not, *id*. at 369, and (ii) it obtained a conflicts waiver from GE. *Id*. The Court denied the retention application. *Id*. at 379. In its ruling, the Court held that "where proposed counsel is conflicted from representing a debtor with regards to matters central to the bankruptcy, even the presence of conflicts counsel does not make the retention appropriate." *Id*. at 376.[10]

---

[10] The Court in *Project Orange* further found that a conflicts waiver was not sufficient. The Court determined that "an agreement between DLA Piper and GE, *i.e.*, the Conflicts Waiver, could not trump the requirements of section 327(a). Even if GE agreed that DLA Piper could act against GE on all issues, through litigation, negotiation or otherwise, DLA Piper must still have been able to satisfy the requirements of section 327(a) to be retained as general bankruptcy counsel." *Project Orange*, 432 B.R. at 374.

14

In the instant matter, Paul Hastings has simultaneously represented the FTX Committee and Voyager, two adversaries in both the *Voyager* and *FTX* chapter 11 cases. In fact, in *Voyager* FTX entities' interests conflict with those of *Voyager* in three distinct areas: Alameda is Voyager's largest equity holder, Alameda is Voyager's largest unsecured creditor, and Voyager has commenced an adversary proceeding against FTX in connection with the abortive sale of Voyager's assets to FTX. Moreover, FTX and its affiliates have asserted at least three separate claims in the *Voyager* cases.[11] Paul Hastings' conflict is actual, multifaceted, obvious – and disqualifying.

## CONCLUSION

WHEREFORE, the United States Trustee respectfully requests that the Court deny the Paul Hastings Retention Application and grant such other and further relief as it may deem just and proper.

Dated: New York, New York
February 22, 2023

                                                                               Respectfully submitted,

                                                                               WILLIAM K. HARRINGTON
                                                                               UNITED STATES TRUSTEE, REGION 2

                                   By:    /s/ *Richard C. Morrissey*
                                                 Richard C. Morrissey
                                                 Trial Attorney
                                                 Office of the United States Trustee – NY Office
                                                 Alexander Hamilton Custom House
                                                 One Bowling Green, Room 534
                                                 New York, NY 10004-1408
                                                 Telephone: (212) 510-0500

---

[11] The Voyager Committee has filed an Objection to three claims of FTX and its affiliates. *See* Objection of Official Committee of Unsecured Creditors to Proofs of Claim Nos. 11206, 11209, and 11213, ECF Doc. No. 936. That Objection is still pending before this Court.