UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

**Hearing Date:  March 2, 2023**
**Hearing Time:  10:00 am**

-------------------------------------------------------- x
                       :

In re                           :          Chapter 11
                       :

VOYAGER DIGITAL HOLDINGS, *et al.*,[1]   :         Case No. 22-10943 (MEW)
                       :

          Debtors.         :          Jointly Administered
                       :

-------------------------------------------------------- x

## OBJECTION OF THE UNITED STATES TRUSTEE TO FINAL APPROVAL OF SECOND AMENDED DISCLOSURE STATEMENT AND TO CONFIRMATION OF THIRD AMENDED JOINT PLAN OF REORGANIZATION OF VOYAGER DIGITAL HOLDINGS, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

TO:    **THE HONORABLE MICHAEL E. WILES,**
       **UNITED STATES BANKRUPTCY JUDGE:**

William K. Harrington, the United States Trustee for Region 2 (the "**United States Trustee**"), hereby submits this objection (the "Objection") (1) to the final approval of the Second Amended Disclosure Statement (the "**Amended Disclosure Statement**") Relating to the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (the "**Amended Plan**") and (2) to confirmation of the Amended Plan. ECF Doc. Nos. 863, 852.[2]  In support thereof, the United States Trustee respectfully submits as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (N/A); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2] On January 4, 2023, the United States Trustee filed an Objection to the above-captioned Debtors' Motions for Entry of Orders (A) (1) Authorizing Entry into the Binance.US Purchase Agreement and (II) Granting Related Relief (the "**APA Motion**") [ECF Doc. No. 775], and (B) (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Adequacy of the Debtors' Disclosure Statement, (III) Approving (A) Procedures for Solicitation, (B) Forms of Ballots and Notices, (C) Procedures for Tabulation of Votes, and (D) Procedures for Objections, and (IV) Granting Related Relief (the "Scheduling Motion") [ECF Doc. No. 779].

## PRELIMINARY STATEMENT

The United States Trustee objects to final approval of the Amended Disclosure Statement

and to confirmation of the Amended Plan on the following grounds:

a. Prior to the January 10, 2023 hearing before this Court, the United States Trustee

filed an Objection to the Debtors' Motions to enter into an asset purchase agreement

with Binance.US and for conditional approval of the Debtors' Amended Disclosure

Statement (the "**APA/DS Objection**").  ECF Doc. No. 811.  The United States

Trustee argued in the APA/DS Objection that, in the wake of the collapse of their

transaction with FTX US, the Amended Disclosure Statement should have contained

much more information concerning the new proposed purchaser, Binance.US, "its

ability to consummate the sale and its ability to protect customer assets."  APA/DS

Objection, pg. 2-3 of 16.  This is especially true given that the Amended Plan invites

Voyager's customers to move over to Binance.US's platform.  Among other

unanswered questions involved Binance.US's applications to obtain Money

Transmitter licenses from four jurisdictions.  In addition, the Amended Disclosure

Statement states simply that Binance.US has the financial wherewithal to meet its

obligations under the APA and that it can protect the Voyager customers'

cryptocurrency.  The Amended Disclosure Statement, however, provides no detail on

either of these points.  Finally, the Amended Disclosure Statement provides that

Binance.US will not engage in any activities that will require regulatory approval

without identifying the "activities" that might otherwise require regulatory approval.

Although the Debtors revised the Amended Disclosure Statement after the January

10, 2023 hearing, ECF Doc. No. 863, that document leaves several questions related to Binance.US unanswered.

b.  The Amended Plan provides for the granting of broad releases to third parties.  In addition, neither the Amended Disclosure Statement nor the Amended Plan provide sufficient justification for including all the employees of Voyager and its affiliates, as well as for the retained professionals in these cases.  Neither the Amended Disclosure Statement nor the Amended Plan provides a justification for their inclusion among the Released Parties.  Thus, the Amended Disclosure Statement should not be accorded final approval because it fails to provide creditors with sufficient information to allow them to make an informed choice as to whether to approve or reject the Amended Plan.

c.  The Amended Plan inappropriately provides prospective releases to entities that do not yet exist.  Specifically, the Wind-Down Debtors, the Plan Administrator, among others, are to receive prospective releases under the Amended Plan's release provisions.

d.  The Amended Plan's proposed exculpation provision is overly broad and should be narrowed consistent with this Court's guidance on the appropriate scope of exculpation provisions as detailed below.

e.  Although the Amended Disclosure Statement discloses both a Management Transition Plan and an Employee Transition Plan, it does not disclose the terms of these plans.  Although the United States Trustee has no objection to the implementation of the Transition Plans, the Amended Plan and Confirmation Order should make clear that the Court is not approving the as-yet undisclosed terms of the

3

Transition Plans.  Specifically, the Amended Plan and Confirmation order should provide that the Court is not approving any bonuses or severance plans that may be contemplated in connection with the Transition Plans.

f.  The Amended Plan improperly provides that all proofs of claim are to "be considered objected to and [d]isputed without further action by the Debtors."  This provision violates the Federal Rule of Bankruptcy Procedure 3001(f), which provides that properly filed proofs of claim are prima facie valid and are allowed unless a party in interest files an objection.

g.  The Wind-Down Entity should not be the only entity with the right to object to a Proof of Claim.

h.  A claim filed after the Bar Date should be deemed a "late-filed" claim; it should not be automatically deemed disallowed and expunged.

For these reasons, as detailed more fully below, the United States Trustee respectfully requests that the Court decline to give final approval of the Amended Disclosure Statement and deny confirmation of the Amended Plan unless modified to address these issues.

## FACTUAL BACKGROUND

**General Background**

1.    Voyager Digital Holdings, Inc. and its affiliated entities (collectively, "**Voyager**" or the "**Debtors**") commenced voluntary cases under chapter 11 of the Bankruptcy Code on July 5, 2022 (the "**Petition Date**").  ECF Doc. No. 1.

2.    The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4

3.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.  ECF No. 73.

4.      Voyager has operated a cryptocurrency trading platform that has enabled its "customers to buy, sell, and store cryptocurrency." *See* Disclosure Statement, section II, pg. 19 of 420, ECF Doc. No. 863.

**Plan and Disclosure Statement**

5.      On December 18, 2022, after the collapse FTX US (and its affiliated entities) had "derailed . . . the Debtors' journey to consummation" of its Asset Purchase Agreement with that entity, the Debtors entered into an Asset Purchase Agreement (the "**APA**") with BAM Trading Services Inc. ("**Binance.US**" or the "**Purchaser**").  Amended Disclosure Statement, section II, pg. 20 of 420, ECF Doc. No. 863.

6.      The Debtors filed the Amended Plan and accompanying Amended Disclosure Statement on January 10, 2023 and January 13, 2023, respectively.  ECF Doc. Nos. 852, 863.

7.      On January 13, 2023, the Court issued an Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Adequacy of the Debtors' Disclosure Statement, (III) Approving (A) Procedures for Solicitation, (B) Forms of Ballots and Notices, (C) Procedures for Tabulation of Votes and (D) Procedures for Objections.  ECF Doc. No. 861.

8.      According to the Amended Disclosure Statement, as of December 19, 2022, the value of the sale to Binance.US was $1.022.  *Id.*  This amount consisted principally of the estimated value of the cryptocurrency on Voyager's platform as of December 19, 2022 --

$1.022 billion – and "additional consideration equal to $20 million of incremental value." *Id.* at section II, pg. 16 of 420, ECF Doc. No. 863.

9.       The Amended Plan gives Voyager account holders the option of opening an account of the Binance.US platform. *Id.*

10.      The Debtors estimate that "recoveries to hypothetical Holders of Account Holder Claims" will amount to 51%. *Id.* at section II, pg. 17 of 420, ECF Doc. No. 863. This amount, however, could vary considerably, depending on the future value of cryptocurrencies, as well as the outcome of certain litigation. *See id.*; *see also* Amended Disclosure Statement, Exhibit C, Frequently Asked Questions & Answers, pg. 198 of 420, ECF Doc. No. 863 (should the Court allow the disputed claim of Alameda Research Ltd. against the Debtors, the distribution to general unsecured creditors could "potentially reduc[e] illustrative recoveries to approximately 26% from 51%"). Elsewhere, the Amended Disclosure Statement notes that "the ultimate treatment of certain Intercompany Obligations, and whether Alameda prevails on its asserted preference and related administrative claim . . . could substantially reduce the [projected general unsecured creditor] recoveries." Amended Disclosure Statement, section IV, pg. 23 of 420, n. 17, ECF Doc. No. 863.

11.      The Amended Plan contains a "toggle" feature, whereby if the sale transaction is not consummated by an "Outside Date" – defined in section 8.1 of the APA as four (4) months after the date of the APA, ECF Doc. No. 775, pg. 108 of 150 -- or if the APA is terminated, the Debtors will pivot to a standalone plan. Amended Disclosure Statement, Section IV, at pg. 29 of 420, ECF Doc. No. 863.

12.    The Amended Plan provides for releases by Holders of Claims or Interests

(Amended Plan, Art. VIII.B.), Exculpation (Plan, Art. VIII.C.), and an Injunction (Plan, Art.

VIII.D.).  Amended Plan, pg. 65 of 151, ECF Doc. No. 852.

13.    Article I.A. of the Plan defines "Related Party (¶ 131)," "Released Parties" (¶

132), Released Voyager Employees (¶ 134), and "Releasing Parties" (¶ 135).  *Id.* at pg. 21-22

of 151.

14.    Article VIII.B. of the Amended Plan provides, in relevant part, as follows:

> Except as expressly set forth in the Plan, effective of the
> Effective Date, in exchange for good and valuable consideration,
> the adequacy of which his hereby confirmed, each Released Party
> is hereby conclusively absolutely, unconditionally, irrevocably,
> and forever released and discharged by each and all of the
> Releasing Parties . . . from any and all Causes of Action. . . .

Amended Plan, Art. VIII.B., pg. 65 of 151, ECF Doc. No. 852.

15.    The Amended Plan defines Released Parties as follows:

> 132.    "*Released Parties*" means, collectively, in each case
> in its capacity as such: (a) the Debtors; (b) the Wind-Down
> Debtors; (c) the Committee, and each of the members thereof; (d)
> each of the Released Professionals; (e) Purchaser and each of its
> Related Parties; and (f) each of the Released Voyager Employees
> (subject to the limitations contained in Article IV.F and Article
> IVG of the Plan); *provided* that if the Asset Purchase Agreement is
> terminated, Purchaser and each of its Related Parties shall not be
> "Released Parties" under the Plan.

*Id.* at Art. I.A., ¶ 132, pg. 21 of 151.

16.    The Amended Plan defines Released Voyager Employees as follows:

> 134.    "*Released Voyager Employees*" means all directors,
> officers, and Persons employed by each of the Debtors and their
> Affiliates serving in such capacity on or after the Petition Date but
> before the Effective Date (subject to the limitations contained in
> Article IV.F and Article IV.G of the Plan.

*Id.* at Art. I.A., ¶ 134, pg. 21 of 151.

7

17.    The Amended Plan defines Releasing Parties as follows:

135.    "*Releasing Parties*" means, collectively, in each case in its capacity as such: (a) the Debtors; (b) the Wind-Down Debtors; (c) the Committee, and each of the members thereof; (d) each of the Released Professionals; (e) each of the Released Voyager Employees; (f) Purchaser and each of its Related Parties to the extent Purchaser is able to bind such Related Parties; (g) all Holders of Claims that vote to accept the Plan and affirmatively opt into the releases provided by the Plan; (h) all Holders of Claims that vote to reject the Plan and affirmatively opt into the releases provided by the Plan; and (i) all Holders of Claims or Interests that abstain from voting (or are otherwise not entitled to vote) on the Plan and affirmatively opt into the releases provided by the Plan; *provided* that if the Asset Purchase Agreement is terminated, Purchaser and each of its Related Parties shall not be "Releasing Parties" under the Plan.

*Id.* at Art. I.A., ¶ 135, pg. 22 of 151.

18.    On February 15, 2023, the Debtors filed a Second Amended Plan Supplement (the "**Plan Supplement**").  ECF Doc. No. 1006.[3]

## OBJECTION

### A.    General Standards

Section 1125 of the Bankruptcy Code provides that a disclosure statement must contain "adequate information" describing a confirmable plan.  11 U.S.C. § 1125.  The Bankruptcy Code defines "adequate information" as:

information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable a such a hypothetical reasonable investor . . . to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1); *see also Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994); *In re Adelphia Commc'ns Corp.*,

---

[3] The Debtors filed their original Plan Supplement on February 1, 2023, ECF Doc. No. 943, and its First Amended Plan Supplement on February 8, 2023, ECF Doc. No. 986.  Subsequently, on February 21, 2023, the Debtors filed a Third Amended Plan Supplement, ECF Doc. No. 1035.

352 B.R. 592, 596 (Bankr. S.D.N.Y. 2006); *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 54 (S.D.N.Y. 1999).

To be approved, a disclosure statement must include sufficient information to apprise creditors of the risks and financial consequences of the proposed plan. *See In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) ("substantial financial information with respect to the ramifications of any proposed plan will have to be provided to, and digested by, the creditors and other parties in interest in order to arrive at an informed decision concerning the acceptance or rejection of a proposed plan"). Although the adequacy of the disclosure statement is determined on a case-by-case basis, the disclosure statement must "contain simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible [Bankruptcy Code] alternatives . . . ." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988).

Section 1125 of the Bankruptcy Code is biased towards more disclosure rather than less. *See In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990). The "adequate information" requirement merely establishes a floor, and not a ceiling, for disclosure to voting creditors. *Adelphia*, 352 B.R. at 596 (citing *Century Glove, Inc. v. First American Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988)). Once the "adequate disclosure" floor is satisfied, additional information can go into a disclosure statement too, at least so long as the additional information is accurate, and its inclusion is not misleading. *Adelphia*, 352 B.R. at 596. The purpose of the disclosure statement is to give creditors enough information so that they can make an informed choice of whether to approve or reject the debtor's plan. *In re Duratech Indus.*, 241 B.R. 291, 298 (Bankr. E.D.N.Y. 1999), *aff'd*, 241 B.R. 283 (E.D.N.Y. 1999). The

disclosure statement must inform the average creditor what it will receive and when and what

contingencies might intervene. *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

> **B.**     <u>**The Debtors Have Not Demonstrated That The Amended Plan Feasible**</u>

Although the United States Trustee is mindful that section 363(b) of the Bankruptcy Code

authorizes chapter 11 debtors to enter into agreements outside of the normal course of business

under the "legitimate business justification" standard, *Comm. Of Equity Sec. Holders v. Lionel*

*Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983), certain provisions of the APA

are troubling and should not be approved.

The Debtors have failed to describe with any specificity in the APA Motion the due

diligence it undertook with respect to Binance.US before agreeing to the terms of the APA.

Instead, the Debtors made a vague statement that the company and its advisors had considered

"both the viability and risk factors associated with each proposed transaction" during the auction

process.  APA Motion, ¶ 12, pg. 9 of 150.  Given what the Debtors themselves described as "the

shocking collapse of FTX" that had "gutted any possibility of closing the FTX transaction," *id.* at

¶ 1, pg. 5 of 150, one would have thought that the Debtors would undertake an extra effort to

assure the parties and the Court that no "shocking" developments would derail the second APA.

Unfortunately, the Debtors' general statement that they took "the viability and risk" factors into

account is not enough to allay the concerns of Voyager's creditors.

Adding to the uncertainty regarding the Amended Plan, on December 30, 2022, the

United States of America (the "**Government**"), by its counsel, filed a Notice of the United States

of America Concerning the Review of Certain Transactions by the Committee on Foreign

Investment in the United States (the "**CFIUS Notice**").  ECF Doc. No. 797.  Without mentioning

either of the parties to the APA by name, the Government explained that it

> respectfully submits this statement to address the possibility that
> one or more transactions contemplated by the Debtors may be
> subject to review by the Committee on Foreign Investment in the
> United States ("CFIUS"), which could affect the ability of the
> parties to complete the transactions, the timing of completion, or
> relevant terms.

CFIUS Notice, pg. 1 of 10. In light of the filing of the CFIUS Notice, parties-in-interest and

Court need and deserve extra assurance that the Amended Plan is feasible and that the sale

agreement between the Debtors and Binance.US will suffer the fate of the asset purchase

agreement between the Debtors and FTX. Instead, to date the Debtors have offered only a vague

and wholly inadequate statements that they have performed due diligence on all entities that have

submitted bids for the company's assets.

1.    Binance.US's Financial Wherewithal

The Amended Disclosure Statement's assurance that Binance.US has the financial

wherewithal to live up to the terms of the proposed purchase of Voyager's assets consists of a

plain statement that (1) Binance.US has the wherewithal to make the required payments under

the APA, (2) that the company "maintains 100% reserves for all its customers' digital assets,"

and (3) that the company "has a sizeable and adequately capitalized balance sheet." Amended

Disclosure Statement, § V.B(a), pg. 43 of 420, ECF Doc. No. 863. The Amended Disclosure

Statement also invites parties-in-interest to look up Binance.US's Terms of Use. *See id.*

This brief provision places the burden on creditors to do their own investigation of

Binance.US's financial wherewithal. Moreover, this section of the Amended Disclosure

Statement is silent on the question of whether Binance.US has transfers assets to, or receives

assets from, any affiliates. Questions such as whether any of the assets will be transferred to any

11

related entities after the sale is consummated or the independence of Binance.US from its

affiliated entities are unanswered.

       2.    <u>The Protection of the Customers' Cryptocurrency</u>

As the APA explains, a valid Money Transmitter License is a prerequisite for Binance.US to

transfer the customers' cryptocurrency to its platform.  *See* APA, § 6.12(b), attached to APA

Motion as Exhibit B, pg. 96 of 150, ECF Doc. No. 775.  Without a Money Transmitter License,

Binance.US cannot "consummate the Transactions or perform its obligations hereunder."  *Id.*  As

far as the United States Trustee is aware, Binance.US does not have a Money Transmitter

License in Hawaii, New York, Texas, or Vermont.  *Id.*  The United States Trustee's concern in

this regard is that under the APA, the Debtors have the option to "deliver [cryptocurrency] Coins

[of any User or Eligible Creditor] to Binance.US at closing.  *Id.*  If Binance.US does not receive

one or more of the Money Transmitter Licenses within six (6) months after the sale closing date,

Binance.US must convert any coins it is holding into United States Dollars and deliver such

Dollars to the Debtors.  *Id.*  Then the Debtors, in turn, are to distribute them in accordance with

the Plan.  *Id.*  In the meantime, Binance.US can hold onto the customers' cryptocurrency for up to

six (6) months after the closing of the sale transaction.  That Binance.US may hold the

customers' coins for an extended period gives a heightened urgency to Binance.US's ability to

protect the customers' coins.  Although the Amended Plan contains a description of

Binance.US's security procedures, Amended Plan, Art. that description is not adequate.  Neither

the APA nor the Amended Disclosure Statement describes the security protocols that

Binance.US intends to put into place if the Court approves the Binance.US Transaction.  If the

customers are to be denied access to their coins, at the very least Binance.US should set forth the

measures it is taking to ensure that those coins will be safe and secure.

The Amended Disclosure Statement contains a brief statement regarding "Binance.US's holding of customer assets. Amended Disclosure Statement, § V.B(b), pg. 44 of 420, ECF Doc. No. 863. Apart from stating that "Binance.US. has various security protocols in place to ensure the safe storage of customer assets, and that it has "achieved various third-party expert certifications attesting their compliance with industry standards," *id.*, the Amended Disclosure Statement fails to describe those protocols and standards.[4] This vague description of Binance.US's security procedures will provide little assurance to Voyager's customers worried about hacking or other dangers to their cryptocurrency.

    3.    <u>Regulatory Issues</u>

In addition to the fact that Binance.US does not yet have money transmitter licenses in four jurisdictions, the Amended Disclosure Statement provides that Binance.US has no plans to

> engag[e] in any activities in connection with or related to the Asset Purchase Agreement that require registration with the United States Securities and Exchange Commission, the United States Commodity Futures Trading Commission, or any state securities and/or commodities authorities."

Amended Disclosure Statement, V.B(c), pg. 44-45 of 420, ECF Doc. No. 863. This provision is overly vague, as it does not identify the "activities" to which it refers. A more fulsome description here might assure parties-in-interest that Binance.US will not engage in activities that may cause these and other government agencies to question whether such activities do not in fact require registration.

Voyager's customers must decide whether to have their coins transferred – possibly after several months have passed – to Binance.US's platform, Amended Disclosure Statement,

---

[4] That the Amended Disclosure Statement's description of Voyager's security processes and procedures is much more fulsome, Amended Disclosure Statement, § VI.B.7, pg. 52 of 420, ECF Doc. No. 863, highlights the deficiency of the Amended Disclosure Statement's description of Binance.US's security procedures.

section II.A., pg. 16 of 420, ECF Doc. No. 863, or, in the alternative, to elect to receive a cash

distribution.  *Id.* at section III.H., pg. 29 of 420.  They cannot be expected to make an informed

decision having learned so little about the company that operates their new platform from the

company that operated their old platform.  The Amended Disclosure Statement devotes only

three (3) of its 98 pages to Binance.US's wherewithal to consummate the sale transaction, its

ability to protect the customers' cryptocurrency, and regulatory issues.  Amended Disclosure

Statement, V.B(c), pg. 43-45 of 420, ECF Doc. No. 863.  From the customers' perspective, the

Amended Plan's main feature is the proposed transfer of their coins to Binance.US.  In that

sense, the Amended Plan is more about Binance.US than about Voyager.  The paucity of

information about Binance.US in the Amended Disclosure Statement should cause the Court to

decline to give it final approval.

C.    **The Debtors Have Failed to Include Sufficient Information To
      Permit Creditors To Make Informed Judgments Regarding
      Whether Each of the Released Parties Made Sufficient
      <u>Contributions to the Plan to Merit Third-Party Releases</u>**

The Second Circuit has held that a bankruptcy court may preclude the assertion of third-

party claims against non-debtors if such claims "directly affect the *res* of the bankruptcy estate."

*In re Johns-Manville Corp.*, 517 F.3d 52, 66 (2d Cir. 2008), *vacated & remanded on other*

*grounds*, 557 U.S. 137 (2009), *aff'g in part & rev'g in part*, 600 F.3d 135 (2d Cir. 2010); *see*

*also In re Aegean Marine Petroleum Network, Inc.*, 599 B.R. 717, 723 (Bankr. S.D.N.Y 2019)

("third-party claims that are the subject of the proposed releases in this case are not claims

against the estate or against property of the estate.  A bankruptcy court has no *in rem* jurisdiction

over such third-party claims.")[5]   The Amended Disclosure Statement does not explain why the

_____

[5] Although *Aegean*, involved nonconsensual releases, a finding that the releases here were, in fact, consensual does
not expand the Court's jurisdiction to enable it to bar claims that do not relate to the *res* of the estate.  *See Johns-*

Debtors believe that this Court can or should release the claims of non-debtors against other non-debtors.

The Amended Plan, if confirmed, will provide third parties with broad releases.  The Amended Plan's definition of Released Parties includes all employees of Voyager and its affiliates who were employed by the Debtors from the Petition Date to the Effective Date. Amended Plan, Art. I.A., ¶ 134, pg. 21 of 151, ECF Doc. No. 852.  Neither the Amended Disclosure Statement nor the Amended Plan explain what, if any, consideration these employees did to earn their releases.   Except for the Released Parties mentioned by name the Amended Plan, it is not known what substantial contribution some of the parties being released have made to the Amended Plan.

1.   Retained Professionals Should Not Be Included Among the Released Parties

Exculpations and third-party releases perform two separate functions.  Whereas a chapter 11 plan's exculpation provision protects fiduciaries and retained professionals with respect to "conduct during their case," third-party releases shield other non-debtor third parties from "preconfirmation liability."  *Patterson v. Mahwah Bergen Retail Group, Inc.*, 636 B.R. 641, 700 (E.D. Va. 2022); *see In re Aegean Marine Petroleum Network Inc.*, 599 B.R. 717, 721 (Bankr. S.D.N.Y. 2019) (exculpation properly protects both "court-supervised fiduciaries [and] court-supervised and court-approved transactions").  Absent a showing that each of the professionals provided good and valuable consideration in exchange for a release, they should not be given double protection as both Exculpated and Released Parties.

---

*Manville*, 517 F.3d 66; *see also In re Dreier LLP*, 429 B.R. 112, 133 (Bankr. S.D.N.Y. 2010) (non-debtor third-party releases must be limited to claims that are derivative of the debtors).

Neither the Amended Disclosure Statement nor the Amended Plan contain any explanation or justification as to why the professionals were accorded a special definition -- "Released Professionals" -- in the Amended Plan. *See Amended Plan*, Art, I.A., ¶ 133, pg. 21 of 151, ECF Doc. No. 852. Merely inserting this category of released parties is insufficient to support a finding that the professionals provided any, let alone adequate, consideration for their releases. The professionals have received, and will continue to receive, compensation for doing their respective jobs. Moreover, as noted above, they are already under the protective umbrella as Exculpated Parties. They do not need, and have not shown that they are entitled to, the extra protection of a third-party release.

The third-party releases contained in the Plan are material terms and should be addressed in a fulsome manner in the Amended Disclosure Statement, so that interested creditors can determine (i) exactly what releases will be imposed upon them, and (ii) the likelihood of the Debtors' success in confirming a Plan with such broad third-party releases. Although third-party releases may be permissible if the Court determines that they are fully consensual, *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 142-43 (2d Cir. 2005), the Amended Disclosure Statement should explain what contributions the Released Parties have made to the confirmation process.

**D.      The Plan Inappropriately Provides Prospective
         Releases for Entities that Do Not Yet Exist**

The Plan's release provisions provide prospective releases for entities that have not yet come into being. Specifically, the Wind-Down Debtors are included in the definition of "Released Parties." Amended Plan, Art. I.A., ¶ 132, pg. 21 of 151. Moreover, the Amended Plan provides that "[o]n or after the Effective Date, the Wind-

16

Down Trust shall have no liability on account of any Claims or Interests except as set forth herein and in the Wind-Down Trust Agreement." *Id.* at Art. IV.H.12, pg. 121 of 151. Yet another Amended Plan provision purports to protect the Wind-Down Trustee, the Wind-Down Trust Oversight Committee, among others. *Id.* at Art. Iv.H.11, pg. 120 of 151. These Wind-Down entities and individuals (collectively, the "**Wind-Down Parties**") will not be in place until the Amended Plan's Effective Date. *Id.* at Art. 1.A., ¶ 170, pg. 24 of 151; Art. IV.H.4., pg. 117 of 151. The Plan Administrator will similarly be entitled to the benefits of prospective limitation of liability. *See* Plan Supplement, Exh. F, Plan Administrator Agreement, Art. V, pg. 24-26, ECF Doc. No. 1006. The Amended Plan should not give prospective releases to entities that do not yet exist on account of future conduct and claims that have yet to arise. The Wind-Down Debtors should be stricken from the list of Released Parties and should not be covered by the Amended Plan's release provisions. In addition, and the provisions shielding the Wind-Down Parties from liability for their future conduct should be stricken from the Amended Plan.

E.    **The Amended Plan's Exculpation Provision is Overly Broad**

Article VIII.C. of the Amended Plan of the Plan provides that a broad list of "Exculpated Parties," including the Released Voyager Employees, as define in the Amended Plan, Art. I.A., ¶ 77, pg. 17 of 15. Under the Amended Plan's Exculpation Provision, the Exculpated Parties shall neither have nor incur any liability for, and is to be exculpated from, any causes of action related not only to the Exculpated Parties' good-faith solicitation of acceptance or rejection of the Amended Plan, but also

17

> . . . for any act or omission arising between the Petition Date and
> the Effective date based on the Chapter 11 Cases . . . the filing of
> the Chapter 11 Cases, or the distribution of property under the Plan
> or any other related agreement. . . .

Amended Plan, Art. VIII.C., pg. 66 of 151.

The exculpation provision is overly broad.  First, the provision applies to all the Released

Voyager Employees are included.  Absent the unlikely showing that *all* such employees are

"fiduciaries," the provision should be narrowed so that it covers only fiduciaries.  Second, the

exculpation provision inappropriately expands the scope of the relevant statute, section 1125(e)

of the Bankruptcy Code.  *See* 11 U.S.C. § 1125(e) (providing for limitation of liability in

connection with certain good faith solicitation and plan participation efforts). Alternatively, the

exculpation provision should be limited, as this Court has previously explained, to bar only

"claims against the exculpated parties based on the negotiation, execution, and implementation

of agreements and transactions that were approved by the Court." *In re Aegean Marine*

*Petroleum Network Inc.*, 599 B.R. 717, 721 (Bankr. S.D.N.Y. 2019).

Additionally, the exculpation and limitation of liability should contain an express carve-

out for malpractice claims consistent with Rule 1.8(h) of the New Rules of Professional Conduct,

which provides that a lawyer shall not make an agreement prospectively limiting the lawyer's

liability to a client for malpractice.[6]

## F.    The Specific Terms of the Management and Employee Transition Plans Should Not Be Given Court Approval

The Amended Disclosure Statement describes both a Management Transition Plan and an

Employee Transition Plan (collectively, the "**Transition Plans**").  Amended Disclosure

---

[6] The Amended Plan's definition of Exculpated Parties includes the Distribution Agent.  Amended Plan, Art. I.A.77, pg. 17 of 51, ECF Doc. No. 852.  In *In re Mallinckrodt PLC*, 639 B.R. 837 (Bank. D. Del. 2022), the Court recently held that exculpation "only extends to conduct that occurs between the Petition Date and the effective

Statement, § V.A.5, 6, pg. 406 of 420, ECF Doc. No. 863; Amended Plan Supplement, Exh. H,

pg. 41 of 45, ECF Doc. No. 1006.  The Amended Disclosure Statement, however, does not

disclose the terms of the Transition Plans.  Although the United States Trustee has no objection

to the implementation of the Transition Plans, the Amended Plan and Confirmation Order should

make clear that the Court is not approving the as-yet undisclosed terms of the Transition Plans.

Specifically, the Amended Plan and Confirmation order should provide that the Court is not

approving any bonuses or severance plans that may be contemplated in connection with the

Transition Plans.[7]

## G.    The Amended Plan Improperly Labels All Claims As Disputed Claims

Section 502(a) of the Bankruptcy Code provides that a proof of claim is deemed allowed

unless a party-in-interest objects.  11 U.S.C. § 502(a); *see Trustees of Operating Engineers Local

324 Pension Fund v. Bourdow Contracting Inc.*, 919 F.3d 368, 381 (6th Cir. 2019) (pension

fund's uncontested proof of claim in chapter 7 case was a final judgment on the merits for res

judicata purposes); *EDP Medical Comput. Sys., Inc. v. United States*, 480 F.3d 621, 627 (2d Cir.

2007) (same).  Rule 3003(b)(5) of the Federal Rules of Bankruptcy Procedure, in turn, provides

that a properly filed proof of claim "shall supersede any scheduling of that claim or interest

pursuant to § 521(a)(1) of this title."  Fed. R. Bankr. P. 3003(b)(5).  Moreover, a proof of claim

filed in accordance with the Federal Rules of Bankruptcy Procedure "shall constitute prima facie

evidence of the validity and amount of the claim."  Fed. R. Bankr. P. 3001(f).  Finally, once an

---

date," and ordered the debtors to strike contrary language from the exculpation provision. *Id*. at 883.  The Debtors have advised the United States Trustee that, in response to a concern raised informally by the United States Trustee, the Wind-Down Debtor/Entity, whose role in these cases begins on the Effective Date, will be deleted from the list of Exculpated Parties.  In addition, The Debtors have agreed to add a carve-out for malpractice claims to both the release and exculpation provisions.

[7] The Debtors have agreed to add language to the proposed Confirmation Order that states that they are not seeking Court approval of the terms of the Transition Plans.

uncontested proof of claim is allowed, it is deemed "approved by court order." *EDP Medical Comput. Sys.*, 480 F.3d at 625.[8]

Notwithstanding the foregoing statutory and caselaw, the Amended Plan addresses the proofs of claim filed in these cases as follows:

> Unless relating to a Claim or Interest expressly Allowed pursuant to the Plan, all Proofs of Claim filed in these Chapter 11 Cases shall be considered objected to and Disputed without further action by the Debtors.

Amended Plan, Art. VII.A., pg. 61 of 151, ECF Doc. No. 852.  Although the *prima facie* validity of a proof of claim is rebuttable by the filing of an objection, the Debtors seek to avoid that burden by inserting a provision into the Amended Plan that effectively abrogates Rule 3001(f). Debtors cannot dispute properly filed proofs of claim simply by calling them "disputed" in a chapter 11 plan; they must file objections to such proofs of claims.  *See Trustees of Operating Engineers Local 324 Pension Fund*, 919 F.3d at 382, quoting *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 530 (9th Cir. 1998) ("people can raise objections and litigate them . . . but if they do not, the claim will be treated in all respects as a claim allowed by the court itself").

Accordingly, the provision quoted above should be stricken from the Amended Plan. Alternatively, it should be modified to make clear that, consistent with Federal Rule of Bankruptcy 3001(f), properly filed proofs of claim in these cases are prima facie valid unless and until a party-in-interest files an objection.

---

[8] The Debtors have agreed to remove from the Amended Plan the language that states that late claims will be disallowed and expunged.

H.    **The Wind-Down Entity Should Not Be The Sole**
      **Entity That Can Object To Proofs of Claim**

Section 502(a) of the Bankruptcy Code provides that a proof of claim "is deemed

allowed, unless a party in interest . . . objects.  11 U.S.C. § 502(a).  By contrast, under the

Amended Plan, only the Wind-Down Entity may object to proofs of claim.  Amended Plan, Art.

VII.B., pg. 61 of 151, ECF Doc. No. 852.  Specifically, the Amended Plan gives the Wind-Down

Entity "the sole authority to [*inter alia*] [f]ile, withdraw, or litigate to judgment, any objections to

Claims or Interests."  *Id.*  This provision should be either stricken or revised to provide that any

party in interest may object to a proof of claim in accordance with Section 502(a).

I.    **Although Claims Filed After The Bar Date May**
      **Be Deemed Late-Filed Claims And Not Paid Under The**
      **Plan, They Should Not Be Disallowed And Expunged**

Section 502(b)(9) of the Bankruptcy Code provides, in part, that a tardily filed claim *may*

be disallowed, but not under all circumstances.  11 U.S.C. § 502(b)(9).  The Amended Plan, on

the other hand, provides that, unless the Debtors or the Wind-Down Entity otherwise agree, "any

and all Proofs of Claim Filed after the Bar Date shall be deemed disallowed and expunged as of

the Effective Date. . . ."  Amended Plan, Art. VII.I., pg. 64 of 51, ECF Doc. No. 852.  This

provision should be either stricken or revised to provide that claims filed after the Bar Date shall

be deemed late-filed claims and not entitled to payment under the Amended Plan.

WHEREFORE, the United States Trustee respectfully requests that the Court sustain the

Objection of the United States Trustee and grant such other relief as is just and proper.

Dated:  New York, New York
        February 24, 2023

                              Respectfully submitted,

                              WILLIAM K. HARRINGTON
                              UNITED STATES TRUSTEE, Region 2

                    By:    /s/ Richard C. Morrissey
                           Richard C. Morrissey
                           Office of the United States Trustee – NY Office
                           Trial Attorney
                           Alexander Hamilton Custom House
                           One Bowling Green, Rm. 534
                           New York, New York 10004-1408
                           Tel.: (212) 510-0500