**Hearing Date: March 2, 2023 at 10:00 a.m. (prevailing Eastern Time)**
**Re: Docket Nos. 1059 and 1061**

Darren Azman
Joseph B. Evans
**MCDERMOTT WILL & EMERY LLP**
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone: (212) 547-5400
Facsimile: (212) 547-5444

Charles R. Gibbs (admitted *pro hac vice*)
Grayson Williams (admitted *pro hac vice*)
**MCDERMOTT WILL & EMERY LLP**
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201-1664
Telephone: (214) 295-8000
Facsimile: (972) 232-3098

Gregg Steinman (admitted *pro hac vice*)
**MCDERMOTT WILL & EMERY LLP**
333 SE 2nd Avenue, Suite 4500
Miami, FL 33131-2184
Telephone: (305) 329-4473
Facsimile: (305) 503-8805

*Counsel to the Official Committee of*
*Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*, | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |

### STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN SUPPORT OF THE THIRD AMENDED JOINT PLAN OF VOYAGER DIGITAL HOLDINGS, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

The Official Committee of Unsecured Creditors (the "Committee") appointed in the

chapter 11 cases (the "Chapter 11 Cases") of the above-captioned debtors (collectively, the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Voyager Digital Holdings, Inc.'s and Voyager Digital Ltd.'s principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003. Voyager Digital, LLC's principal place of business is 701 S. Miami Ave, 8th Floor, Miami, FL 33131.

"Debtors") hereby files this statement[2] in support of the *Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be modified, amended, or supplemented, the "Plan")[3] and in reply to certain objections to the Plan, including the: (i) *Notice of Filing of Objection of Unsecured Creditors to 1) Debtors' Motion for Final Order Approving the Amended Purchase Agreement and Amended Disclosure Statement With Respect to the Appropriateness of Third Party Releases, 2) the Inadequacy of the Plan to Meet the Bankruptcy Fair and Equitable Standard for the Outcome of VGX, and 3) the Appointment of the Proposed Wind Down Trustee, Legal Counsel and Existing UCC Members* [Docket No. 1059]; and (ii) *Objection to Disclosure Statements and Plan, with Motion to: 1) Remove Existing Debtor and UCC Leadership, and their Appointees for Administration of Wind Down Trust, in Lieu of UST Appointed Trustee 2) Classify Debtor Creditors as Fraud Victims for Relief Under IRS Revenue Ruling 2009-9 3) Remove All Releases for Debtors and 3rd Parties* [Docket No. 1061]. In support of the Statement, the Committee submits the Declaration of Jason Raznick, attached hereto as **Exhibit A**. In further support of this statement, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.　　After careful analysis and consultation with its advisors, the Committee is confident that the Plan represents the best possible outcome for general unsecured creditors. As such, the Committee joins the Debtors' Confirmation Brief and fully supports the Plan.

2.　　The Committee's primary goal throughout these Chapter 11 Cases has been to distribute the maximum amount of crypto and fiat as quickly as possible to creditors and

---

[2]　Contemporaneous with the filing of this Statement, the Debtors are filing their confirmation brief (the "Confirmation Brief").

[3]　Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan.

preserve claims that will allow a post-confirmation entity (*i.e.*, the Wind-Down Debtor) to generate future distributions, all in an effort to bring creditors as close to whole as possible. To accomplish this goal, the Committee negotiated extensively with the Debtors regarding the Releases, the Plan Settlement, and the Wind-Down Debtor. The culmination of those negotiations is the Plan, which also embodies the Sale Transaction, all of which provide the highest and best value for creditors as well as the fastest and most efficient path to distributions.

3.      Certain *pro se* creditors, among others, have raised concerns with the Plan. Although the Committee would not ordinarily publicly disclose deep insights into discussions, negotiations, and analyses that the Committee has engaged in throughout the case, such as how particular committee members voted on certain issues, the Committee supports full transparency for all creditors and providing a clear record for this Court to confirm the Plan.

4.      For these reasons and the reasons discussed below, the Plan should be confirmed.

## **BACKGROUND**

5.      On July 5, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      On July 19, 2022, the Office of the United States Trustee for the Southern District of New York appointed the Committee pursuant to section 1102(a) of the Bankruptcy Code. Docket No. 106.

**STATEMENT**

I.    **The Plan**

    a.    **The Committee Investigation**

    7.    A special committee of independent directors of the Debtors (the "Special Committee") was appointed to investigate claims that the Debtors may have against Mr. Ehrlich and other insiders. The Committee conducted its own investigation (the "Committee Investigation") of the claims on behalf of unsecured creditors. The Committee Investigation was necessary to ensure that no viable causes of action against insiders would be released through any chapter 11 plan proposed by the Debtors absent fair compensation.

    8.    The Committee Investigation revealed that the Debtors' Chief Executive Officer, Stephen Ehrlich, and the Debtors' Chief Commercial Officer, Evan Psaropoulos, were extremely careless in their investigation of Three Arrows Capital Ltd.'s ("3AC") creditworthiness and in their decision to loan almost $1 billion to 3AC. As a result, the Committee concluded that the Debtors have valid and substantial claims against Mr. Ehrlich and Mr. Psaropoulos for breach of their duties of care relating to their role in approving the Debtors' loans to 3AC.

    9.    On October 5, 2022, the Debtors filed the *Second Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 496] (the "Second Amended Plan"). The Second Amended Plan contained broad releases, including releases of the Debtors' causes of action against Mr. Ehrlich and Mr. Psaropoulos (the "Releases"), without any consideration going to the Debtors in exchange for those Releases. *See generally* Second Amended Plan, Art. VIII(B). This outcome is precisely why the Committee conducted its investigation.

10.     Accordingly, on October 12, 2022, the Committee filed the *Objection of the Official Committee of Unsecured Creditors to Debtors' Motion for Entry of an Order Approving (I) the Adequacy of the Amended Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [Docket No. 526] (the "<u>Disclosure Statement Objection</u>").[4] The Committee's consternation with the Releases was addressed in the Disclosure Statement Objection, which stated:

> The Debtors' directors and officers, including CEO Stephen Ehrlich approved loans to 3AC of almost $1 billion with almost no due diligence whatsoever, in a blatant disregard of their fiduciary obligations. This alone caused the Debtors to suffer up to $650 million in losses when 3AC defaulted on those loans three months later. The Debtors' directors and officers also operated illegally without proper licensing in 23 states, during which time the Debtors (and specifically Mr. Ehrlich) advertised that the Debtors were licensed in 49 out of 50 states. Then, on the eve of bankruptcy, the Debtors transferred $10 million to obtain a $10 million insurance policy, which can only be used to cover legal fees that the directors and officers will likely incur to defend lawsuits brought against them for their prior misconduct. This was an act of self-dealing by the directors and officers, by using an insolvent company's money to pay their own legal fees ahead of any payments to the Debtors' creditors. Put simply, the Committee uncovered substantial evidence of wrongdoing, and believes that these causes of action, if pursued, would result in, at a minimum, *tens of millions of dollars* (and likely more) in value to the Debtors' creditors.

Disclosure Statement Obj., ¶ 4 (emphasis in original). Most troubling about the proposed Releases is that they were being provided for no consideration. As the Committee explained, "the beneficiaries of the releases are providing the Debtors with **no consideration whatsoever** in exchange for the releases." *Id*. at ¶ 2 (emphasis in original).

11.     Although the Committee wanted to avoid causing delays to plan confirmation, the Special Committee had the sole authority to prosecute, settle, or extinguish any and all claims or causes of action on behalf of the Debtors. Thus, the Committee's only option to ensure that

---

[4]     An unredacted copy of the Disclosure Statement Objection is available at Docket No. 998.

viable causes of action were not released for no consideration was to object to the Releases and contest plan confirmation, with all the attendant cost and expense.

      **b.**      **The Plan Settlement**

      12.      The Committee's decisions throughout these Chapter 11 Cases have been rooted in the Committee's underlying goal: maximize distributions to creditors and return funds as quickly as possible. As part of this goal, the Committee frequently needed to decide whether to fight or settle, as is the choice committees need to make throughout most chapter 11 cases. Thus, although the Committee remained steadfast in preparing to object to the Releases, the Committee took a balanced approach by engaging with the Special Committee and the Debtors to discuss a potential resolution.

      13.      The Special Committee, through its counsel, proposed a settlement that would require Mr. Ehrlich to pay the Debtors $1.125 million in exchange for releases of personal liability, but would preserve the Debtors' rights to bring their claims against Mr. Ehrlich and Mr. Psaropoulos with the proviso that the Debtors' recovery would be limited to the amount payable under the D&O insurance policies. The Committee, through its counsel, pushed back stating that $1.125 million was insufficient. The Special Committee argued, however, that neither Mr. Ehrlich nor Mr. Psaropoulos had significant assets against which the Debtors could hope to collect.

      14.      The Committee responded that it (and the Special Committee) must be permitted to investigate Mr. Ehrlich's and Mr. Psaropoulos' personal finances to determine the size of their personal assets, which would inform the extent to which a finding of liability would lead to a tangible recovery for creditors. In the meantime, both individuals provided written financial disclosures attesting to their assets under penalty of perjury. According to those financial

6

statements, neither Mr. Ehrlich nor Mr. Psaropoulos had substantial assets that would justify the

uncertainty and expense of protracted litigation over contesting plan confirmation, let alone

pursuing breach of fiduciary duty claims against them (and related collectability efforts if

successful). Mr. Ehrlich's disclosure reflected assets of approximately $2.7 million (inclusive of

his home). At the request of the Committee, the financial disclosures also required Mr. Ehrlich

and Mr. Psaropoulos to detail any transfers they made of their assets greater than $100,000 since

January 1, 2020.

15.     Ultimately, the parties reached a proposed settlement (the "Plan Settlement").[5]

Although the amount is insignificant from the standpoint of the damages caused, the Plan

Settlement requires Ehrlich to pay $1.125 million, which represents more than 40% of his

personal assets. As stated above, despite the Plan Settlement, the Wind-Down Debtor will retain

the right to prosecute claims against Mr. Ehrlich and Mr. Psaropoulos for their role in the 3AC

loan, but the recovery is limited to amounts available under applicable D&O insurance policies.

16.     In other words, although the Debtors are foregoing claims against Mr. Ehrlich's

and Mr. Psaropoulos' *personal* assets, the Debtors' rights to sue those individuals are preserved,

albeit effectively capped at the insurance policy limits. The Plan Settlement also: (i) requires Mr.

Ehrlich and Mr. Psaropoulos to agree to subordinate any and all rights and entitlements under the

Cornerstone A-Side Management Liability Insurance Policy to Voyager Digital Ltd., Policy

Number ELU184179-22, to any recovery by the Debtors and/or the Wind Down Debtor on

account of the Debtors' and/or Wind Down Debtor's claims for the avoidance of the premium

---

[5]     The Plan Settlement is summarized in Section VII(A)(2)(b)(ii) of the *Second Amended Disclosure Statement Relating to the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 863] (as may be modified, amended, or supplemented, the "Disclosure Statement").

paid for the policy;[6] (ii) requires Mr. Ehrlich to subordinate prepetition claims and Mr.

Psaropoulos to subordinate 50% of his prepetition claims such that creditor claims must be paid

first; and (iii) requires Mr. Ehrlich and Mr. Psaropoulos to agree that, because the Debtors are in

bankruptcy, the Debtors are unable to provide advancement or indemnification to Mr. Ehrlich

and Mr. Psaropoulos, and Mr. Ehrlich's and Mr. Psaropoulos's recourse is limited to the

Management Liability Policy, the Excess Policies, and the Side-A Policy (except as set forth in

(i) above). *See generally* Disclosure Statement, pp. 53-55.

17.     The Committee was surprised by Mr. Ehrlich's apparent lack of wealth,

particularly given media reports regarding previous sales of his stock in the Debtors.

Accordingly, the Committee also negotiated certain safeguards with respect to the Plan

Settlement, including the continued investigation of the individuals' sworn financial statements.

Pursuant to the Plan Settlement, (i) if the Committee uncovers that the sworn financial

statements are materially untrue before confirmation then it will withdraw its support of the

Releases, and (ii) if at any point in the future a court determines that the financial statements are

materially untrue, then the Releases shall become void and ineffective.

18.     In connection with the Plan Settlement, the Committee conducted a further

investigation into the personal finances of Mr. Ehrlich and Mr. Psaropoulos, including serving

requests for production on Mr. Ehrlich and Mr. Psaropoulos. The Committee reviewed 476

documents produced in response to those requests, including account statements and tax returns.

The Committee also conducted depositions of Mr. Psaropoulos and Mr. Ehrlich on February 17,

2023 and February 28, 2023, respectively. Nothing the Committee learned from the documents

---

[6]     On November 3, 2022, the Special Committee sent correspondence to one of the Debtors' two insurance
carriers notifying them of the potential avoidance of amounts paid by the Debtors for the annual policy
premium before the Petition Date. Docket No. 1000-1, n. 317.

produced and the two depositions has changed the Committee's view about the Debtors' ability

to collect significant sums of money from either Mr. Ehrlich or Mr. Psaropoulos

     **c.**     **The Committee's Plan Settlement Vote**

19.     The Committee is comprised of seven members. Docket No. 106. Each

Committee member is a retail customer of the Debtors. Shortly after formation, the Committee

selected Jason Raznick to serve as chair of the Committee by unanimous vote. Raznick Dec., ¶ 8.

20.     The Committee meets regularly, with weekly standing calls, as well as specially

called meetings, as necessary. Raznick Dec., ¶ 11. The Committee makes decisions by a majority

vote, with each member's vote counting equally. *Id.* As the chair of the Committee, Mr. Raznick

does not have a greater voice than any other Committee member. In the event of situations like a

dead-lock vote, Mr. Raznick does not carry the controlling vote. *Id.*

21.     As mentioned above, on October 12, 2022, the Committee filed an objection to

the Releases in the Plan, which at the time provided no consideration to the Debtors. This also

occurred prior to the Committee's receipt of the financial disclosure statements from Mr. Ehrlich

and Mr. Psaropoulos attesting to their lack of significant assets. As a result of the negotiations

that ensued (discussed above), the Committee held a two-hour meeting on October 16, 2022, the

majority of which was dedicated to consideration of the proposed Plan Settlement. Raznick Dec.,

¶ 12.

22.     After a lengthy discussion of the pros and cons of the Plan Settlement, each

Committee member was asked to vote on whether to accept or reject it. *Id.* A majority of the

Committee members voted to *approve* the Plan Settlement. Mr. Raznick abstained. *Id.*

**d.    The Committee's Role in the Binance.US Negotiations**

23.    As discussed in greater detail in the Disclosure Statement, following the

November 2022 FTX collapse, the Debtors engaged with alternative third-party purchasers to

identify an alternative transaction partner. *See generally* Disclosure Statement, § II(B).

24.    On December 9, 2022, the Debtors informed the Committee that they intended to

proceed with a sale to BAM Trading Services, Inc. d/b/a Binance.US ("Binance.US").

At that time, the Committee immediately conducted a review of the material terms and

mechanics of the proposed sale. The Committee was principally concerned with ensuring the

safety of crypto that would be transferred by the Debtors to Binance.US given the unstable state

of the crypto industry following FTX's collapse.

25.    The initial Binance.US proposal contemplated the transfer of nearly all of the

Debtors' crypto to Binance.US immediately upon closing. Certain of that crypto, however,

would not be made available to creditors for up to six months because of, among other things,

regulatory restrictions in four states.[7] This structure would put creditors at risk in the event of an

unexpected Binance.US insolvency between the time that Binance.US received the crypto and

when that crypto was made available to customers. Accordingly, the Committee viewed this

structure as sub-optimal and voiced its concerns to the Debtors and Binance.US.

26.    Although Binance.US assured the Committee that the crypto would be protected,

given the unexpected collapse of FTX and the general risk of theft and fraud in the

cryptocurrency industry, the Committee pushed for greater protections, going as far as indicating

to Binance.US and the Debtors that the Committee was intending to object to the Binance.US

---

[7]    *See generally Asset Purchase Agreement* attached as Exhibit B to the *Debtors' Motion for Entry of An Order (I) Authorizing Entry Into the Binance US Purchase Agreement and (II) Granting Related Relief* [Docket No. 775] (the "Sale Motion").

transaction. Accordingly, as of the December 21, 2022 Sale Motion filing, the Committee could not support the Binance.US transaction. Following the filing of the Sale Motion, however, the Committee worked diligently to include protections in the purchase agreement to accelerate recoveries and ensure the safety of creditors' crypto.

27.     Binance.US ultimately supported the Committee's efforts and agreed to restructure the way in which crypto is transferred. On January 9, 2023, the Debtors filed the *First Amended Asset Purchase Agreement* [Docket No. 835] (the "APA"). Pursuant to the APA, after the transaction closes, crypto will move from the Debtors to Binance.US on a weekly basis, and the only crypto that will be transferred is crypto that will be immediately distributed to creditor accounts. In other words, cryptocurrency will not be transferred to Binance.US unless: (i) Binance.US has the required licenses or authorizations to make distributions in a creditor's state or territory; (ii) a creditor has signed up for Binance.US's platform; (iii) that creditor has met Binance.US's onboarding requirements; and (iv) Binance.US has received notice of the exact amount of distribution that will be made available to that creditor. As a result, the time between when Binance.US receives crypto from the Debtors and when creditors can access, trade, convert, sell, stake, or withdraw that crypto is now very limited.

28.     The foregoing material change, along with additional modifications reflected in the APA, provided the necessary protections that gave the Committee comfort to support the transaction. On January 9, 2023, the Committee filed its statement in support of the sale to Binance.US (the "Sale Transaction").[8] *See* Docket No. 837.

---

[8]     Pursuant to the APA, the Debtors will retain "any preference or avoidance claim, right or cause of action under Chapter 5 of the Bankruptcy Code or any analogous state law claim against (i) Three Arrows Capital, Ltd. or any of its Affiliates, (ii) any insider as defined in the Bankruptcy Code, (iii) any other such claim, right or cause of action that Purchaser agrees in writing prior to the Closing may be retained by the Debtors, (iv) any person for an actual fraudulent transfer, and (v) West Realm Shires Inc., Alameda Ventures Ltd., or any of their Affiliates." APA, Art. XI (bbb). The Committee has negotiated with Binance.US for an additional

e.    **The Sale Transaction Is the Best Option to Maximize Recoveries**

29.    The Sale Transaction provides the highest and best value for the Debtors'

creditors, as well as the fastest and most efficient path to distributions. Following the demise of

FTX, the Committee considered two options: (1) self-liquidation; and (2) an alternative

transaction with a third party. For the following reasons, the Committee supports the Sale

Transaction.

30.    *First*, the Committee considered a "self-liquidation." This option avoided the

risks associated with a third-party purchaser. However, there are significant regulatory and

practical hurdles in returning hundreds of millions of dollars in fiat and crypto to creditors. For

example, many creditors prefer distributions in crypto, but the Debtors' platform was the only

place such creditors traded and held crypto. Those creditors would need to obtain self-hosted

wallets or a new crypto exchange account to accept distributions. A self-liquidation plan would

also likely include a large number of test transactions and other administrative burdens. Thus, an

operating crypto exchange with the infrastructure to handle millions of retail customer crypto

transactions appeared to be the most efficient option. Ultimately, the Committee determined that

conducting a self-liquidation would materially decrease recoveries for a variety of reasons (*e.g.*,

value leakage from mass sales of crypto and working capital funding) and delay returning fiat

and crypto to creditors, as compared to a sale to a third party. Moreover, Voyager would receive

no cash consideration from a purchaser in a self-liquidation, thereby further reducing creditor

recoveries.

31.    *Second*, after FTX's collapse, other potential purchasers began to engage with the

Debtors. Throughout this process, the Committee had extensive discussions with a number of

---

approximately 32,000 avoidance actions that will be retained by the Debtors. The parties are currently preparing
definitive documentation regarding these actions.

interested parties to assess the relative value of their offers, including their ability to close timely. Ultimately, the only purchaser that presented an economically attractive and actionable offer was Binance.US. As discussed in greater detail above, the Committee has worked diligently to negotiate protections in the APA to accelerate recoveries to creditors and ensure that all crypto will be safe in the event of a Binance.US insolvency.

32.     Additionally, the Plan includes a "toggle" feature wherein if the Sale Transaction fails, the Debtors have the ability to distribute crypto to creditors outside of a sale without delay (*i.e.*, without the need to prepare, file, and solicit a new chapter 11 plan). If the Sale Transaction fails to close, the Plan permits the Debtors to conduct a self-liquidation.

33.     The alternatives to the Sale Transaction, including the self-liquidation "toggle," are not as favorable to the Debtors' estates or their creditors. Indeed, the Debtors' Liquidation Analysis reflects that the Sale Transaction will result in a 4% greater recovery (*i.e.*, approximately $100 million) than the "toggle", and a 10%-14% greater recovery (*i.e.*, approximately $200-$230 million) than a chapter 7 liquidation.[9] Based upon the Committee's analysis, and in full exercise of its fiduciary duties, the Committee has determined that the Plan provides the best possible means to expeditiously wind down the Debtors' estates, preserve any remaining value, and distribute that value to the creditor body. Thus, the Plan represents the only sensible outcome for all general unsecured creditors and the Debtors' estates under the circumstances of these Chapter 11 Cases. Indeed, the vast majority of creditors agree.[10]

---

[9]     The Liquidation Analysis is attached to the Disclosure Statement as Exhibit B. The Liquidation Analysis uses spot cryptocurrency prices as of December 18, 2022. Given the volatility of cryptocurrency, the values in the Liquidation Analysis are constantly changing. Regardless of the volatility, the conclusion reached in the Liquidation Analysis that the Sale Transaction will result in greater recoveries is constant.

[10]    *See generally* Voting Report filed contemporaneously herewith (the "Voting Report"). Pursuant to the Voting Report: (i) 97% in number and 98% in dollar amount of voting Holders of Class 3 Account Holder Claims voted to accept the Plan; (ii) 100% in number and 100% in dollar amount of voting Holders of Class 4A OpCo General Unsecured Claims voted to accept the Plan; (iii) 80% in number and 100% in dollar amount of voting Holders of Class 4B HoldCo General Unsecured Claims voted to accept the Plan; and (iv) 90% in number and

      **f.**      **Thousands of Causes of Action are Being Retained by the Wind-Down Debtor to be Pursued by the Plan Administrator**

34.     There are only two buckets of causes of action that are *not* being preserved for the Wind-Down Debtor.[11]

35.     ***First***, the causes of action subject to the Releases. However, as discussed above, such causes of action are subject to a significant exception—the Plan Administrator is permitted to pursue certain causes of action against Mr. Ehrlich and Mr. Psaropoulos, limited to recoveries from the applicable D&O insurance policies. Further, in the event a court enters an order finding that the financial disclosures provided by Mr. Ehrlich and Mr. Psaropoulos are materially inaccurate, the Plan Releases become void.

36.     ***Second***, avoidance actions that are being purchased by Binance.US, which includes avoidance actions against Account Holders. However, Binance.US has agreed to carve out approximately 32,000 parties subject to potential avoidance actions that were identified by the Committee.

37.     ***All*** other causes of action, including claims against 3AC and FTX, are being preserved. If the Plan is confirmed, all such causes of action that the Debtors are entitled to bring against third parties will be transferred to the Wind-Down Debtor. Moreover, all causes of action contributed by creditors that opted in to contributing their third party claims to the Wind-Down Debtor will be transferred to the Wind-Down Debtor.

38.     The contributed third party claim concept, which is embodied in Art. IV(R) of the Plan, can be a valuable source of recovery for creditors, and has been utilized in other cases. *See*,

---

    100% in dollar amount of voting Holders of Class 4C TopCo General Unsecured Claims voted to accept the Plan.

[11]  *See generally Notice of Filing of First Amended Plan Supplement* [Docket No. 986], which includes the Schedule of Retained Causes of Action.

*e.g., Zazzali v. Hirschler Fleischer, P.C.,* 482 B.R. 495 (D. Del. 2012) (creditor claims assigned

to a liquidating trust); *Grede v. Bank of New York Mellon,* 598 F.3d 899 (7th Cir. 2010) (same);

*In re Woodbridge Group of Companies, LLC, et al.*, Case No. 17-12560 (KJC), Docket No. 2903

(Bankr. D. Del. Oct. 26, 2018) (same); *In re Health Diagnostic Laboratory, Inc.*, No. 15-32919,

2017 WL 4457609 (Bankr. E.D. Va. Oct. 4, 2017) (same); *In re Consolidated Meridian Funds*,

485 B.R. 604 (Bankr. W.D. Wa. 2013) (same); *Segner v. Securities America, Inc.*, No. 3-10-cv-

01884-F, 2011 WL 13394778 (N.D. Tex. Aug. 4, 2011) (same); *Taberna Capital Management,*

*LLC v. Jaggi*, No. 08 Civ. 11355(DLC), 2010 WL 1424002 (S.D.N.Y. April 9, 2010) (same); *see*

*also Semi–Tech Litigation, LLC v. Bankers Trust Co.*, 272 F.Supp. 2d 319 (S.D.N.Y. 2003),

*aff'd*, 450 F.3d 121 (2d Cir. 2006) (involving third party claims assigned to post confirmation

litigation entity).

39.     In most instances, a post-confirmation entity's acquisition of creditor claims is

prudent when such claims are similar to and overlapping with facts underlying claims that the

entity intends to investigate and pursue against third parties. *See, e.g., Grede*, 598 F.3d at 900

(assigning creditors believed they were defrauded by the debtor and the same third party); *Semi–*

*Tech Litigation*, 272 F.Supp. at 321 (assigning creditors were beneficial owners of notes

damaged by the same parties); *Health Diagnostic Laboratory*, 2017 WL 4457609, at *2-*3

(mass fraud in which assigning creditors had substantially the same claims against different third

parties); *Zazzali*, 482 B.R. at 504 (ponzi scheme with overlapping claims); *Segner v. Securities*

*America, Inc.*, No. 3-10-cv-01884-F, 2011 WL 13394778 at *2 (same); *Consolidated Meridian*

*Funds*, 485 B.R. at 609 (same); *Woodbridge Group of Companies*, Case No. 17-12560 (KJC),

Docket No. 2903 (same). In these circumstances, the assignment of claims can be extraordinarily

beneficial to creditors for several reasons, including: (i) it relieves creditors (or their

representatives) from the individual cost and time associated with litigation; (ii) it results in more efficiencies on multiple fronts, including a single party with one counsel pursuing defendants in a single forum, which also reduces the risk of duplicative and inconsistent litigation; and (iii) expedited litigation and greater likelihood of settlement given that the defendant can resolve many claims with a single settlement.

40.     As the direct result of its negotiations with the Debtors, the Committee has ensured that the Plan Administrator, an independent fiduciary selected by the Committee, will assume control of the Wind-Down Debtor after the Effective Date of the Plan. The Plan Administrator will be responsible for investigating, pursuing, and prosecuting the preserved causes of action, including the contributed third-party causes of action, subject to review by an Oversight Committee that is comprised of three members of the Committee (*i.e.*, Russell Stewart, Richard Kiss, and Melissa Freeman).

## II.    The Plan Administrator

41.     Certain *pro se* creditors have raised issues regarding the selection of the Plan Administrator. *See generally* Docket Nos. 1059 and 1061. These issues are addressed below.

### a.      The Selection of the Plan Administrator

42.     On July 6, 2022, the Debtors filed the *Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 17] (the "Original Plan"). Pursuant to the Debtors' Original Plan, the Debtors' insiders were obtaining releases for no consideration, and *the Debtors* had the sole and exclusive authority to select new management of the reorganized company.[12] *See generally* Original Plan,

---

[12]    On August 12, 2022, the Debtors filed the *First Amended Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 287], which sought the same relief.

Art. VIII(B). Moreover, the Original Plan stated that the Debtors' causes of actions would vest in the reorganized company and the decision as to whether to pursue such causes of actions would be at the discretion of the Debtors' hand-picked managers of the reorganized company. *See id.* at Art. IV(I) ("On and after the Effective Date, except as otherwise provided herein, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.").

43.    The Committee was unwilling to permit the Debtors' current management to have a controlling role in any post-confirmation entity and, in particular, the decision to pursue any retained causes of action. Instead, the Committee began advocating that a separate post-confirmation vehicle should be established to pursue causes of action, and that vehicle should be led by someone appointed by the Committee to act in the best interests of creditors.

44.    Ultimately, the Debtors agreed with the Committee's position, and the Second Amended Plan included the concept of a Wind-Down Trust and Wind-Down Trustee (each as defined in the Second Amended Plan) to be selected by the Committee, in consultation with the Debtors. Under the current amended Plan, the Wind-Down Trustee role has been replaced by a Plan Administrator.

45.    On November 8, 2022, the Committee interviewed three individuals for the Plan Administrator role, including: (i) Anna Phillips; (ii) Stephen Gray; and (iii) Paul Hage. After the interviews, the Committee held a meeting to discuss the candidates and make a selection as to

who would serve in the role. Following a thorough discussion regarding the experience, costs, and expertise of the individuals, the Committee selected Mr. Hage by a majority vote.[13]

46.    Mr. Hage's curriculum vitae (CV), which was provided to the Committee along with Ms. Phillips's and Mr. Gray's, is attached hereto as **Exhibit B**. As set forth on Mr. Hage's CV, Mr. Hage:

a.    has twice been selected by the Sixth Circuit Court of Appeals as a finalist for a bankruptcy judgeship in the United States Bankruptcy Court for the Eastern District of Michigan;

b.    is on the Board of Directors and Executive Committee, and serves as Secretary, of the American Bankruptcy Institute;

c.    is a Fellow in the American College of Bankruptcy;

d.    is certified by the American Board of Certification as a specialist in business bankruptcy law;

e.    is an Executive Editor of the American Bankruptcy Institute Journal;

f.    regularly authors and provides written contributions to bankruptcy publications and books, such as Norton Institutes on Bankruptcy Law, the American Bankruptcy Institute, the American Bar Association, ThomsonReuters, and the Journal of Bankruptcy Law & Practice;

g.    is the Co-Chair of the Business Restructuring, Bankruptcy & Creditors' Rights Group at his law firm, Taft Stettinius & Hollister, LLP;

h.    has received a number of prestigious bankruptcy-related awards, such as the American Bankruptcy Institute 40 Under 40 Award and American Bankruptcy Institute Committee Leader of the Year Award; and

i.    is regularly invited to speak on bankruptcy-related topics, including, most recently, on third-party releases in chapter 11 bankruptcy at the Seventy-Sixth Judicial Conference of the Sixth Circuit Court of Appeals.

---

[13]    On February 15, 2023, the Debtors filed the *Notice of Filing of Second Amended Plan Supplement* [Docket No. 1006], which identified (i) Paul Hage as the Plan Administrator and (ii) the Committee members that will comprise the Oversight Committee (i.e., Russell Stewart, Richard Kiss, and Melissa Freeman).

47.     The Committee's decision to select Mr. Hage was based on, among other things: (i) Mr. Hage's institutional knowledge of these Chapter 11 Cases; (ii) the cost of Mr. Hage's services, which are less than any other candidate in consideration;[14] and (iii) Mr. Hage's extensive experience as a bankruptcy practitioner. Mr. Hage's CV speaks for itself. He has considerable experience in complex chapter 11 cases and representing post-confirmation entities, in addition to his vast publications and roles in bankruptcy-related academia. Such qualifications are the reason why Mr. Hage has been a finalist to serve as a bankruptcy judge on multiple occasions.

### b.    Any Perceived Connections Between the Committee and the Debtors are Misplaced

#### i.     The Debtors and Benzinga

48.     Mr. Raznick is the CEO of the news, data, and educational website "Benzinga," which is dedicated to building personal wealth.[15] Raznick Dec., ¶ 2. Benzinga's mission is to empower investors with information on investment opportunities. *Id.* Mr. Raznick founded Benzinga in 2010.[16] *Id.* In 2021, Mr. Raznick sold his majority stake in Benzinga to an unaffiliated investment fund.[17] *Id.* Since its launch, Benzinga has become an extremely popular hub for information on capital markets with approximately 25 million readers per month.[18] *Id.*

49.     Benzinga is heavily focused on the stock market, cryptocurrency, and other developing technologies.[19] Raznick Dec., ¶ 2. As a media company in the cryptocurrency

---

[14]    Mr. Hage's hourly rate of $500/hour was also far more economical than the rates of others who were considered, some of which ranged up to $50,000/month, which is not atypical for liquidation trustees or plan administrators in cases of this magnitude.

[15]    Benzinga is not a creditor in these Chapter 11 Cases.

[16]    *See* https://www.benzinga.com/about ("Our mission is to connect the world with news, data and education that makes the path to financial prosperity easier for everyone, everyday").

[17]    https://www.freep.com/story/money/business/2021/10/25/benzinga-detroit-sale/6172916001/.

[18]    https://www.benzinga.com/about.

[19]    https://www.benzinga.com/crypto.

industry, Benzinga and the Debtors often overlapped in business, much like Benzinga did with the 145 other cryptocurrency and crypto-adjacent companies that have advertised on Benzinga's website. Raznick Dec., ¶ 4. These relationships are important to cryptocurrency companies who seek to increase the visibility of their products and services through sponsorships and advertisements on Benzinga. *Id.* Indeed, before the Petition Date, the Debtors sponsored certain events hosted by Benzinga. *Id.* Each of these events had numerous other sponsors, including multiple other cryptocurrency companies. *Id.*

50.     Mr. Raznick also became a contact of Stephen Ehrlich, the Debtors' CEO, and Mr. Raznick (not Benzinga) became one of the Debtors' largest customers (and now creditors) by depositing millions of dollars of his personal funds into his account with the Debtors.[20] Raznick Dec., ¶¶ 3, 5. Mr. Raznick, like all of the Debtors' customers, has been impacted directly and personally by these Chapter 11 Cases. Raznick Dec., ¶ 5. Indeed, Mr. Raznick was the Debtors' third largest creditor, as reflected on the Debtors' list of top creditors. Docket No. 1.

51.     Any cordial relationship that existed between Mssrs. Ehrlich and Raznick ended after the Debtors commenced these Chapter 11 Cases. Raznick Dec., ¶ 6.

### ii.     The Committee's Retention of Professionals

52.     After its appointment, the Committee received twelve pitchbooks from law firms seeking to represent the Committee. Raznick Dec., ¶ 10. After narrowing down the candidates to five law firms, the Committee conducted interviews of each of the five law firms on July 20, 2022. *Id.* The Committee deliberated for nearly two days before ultimately selecting McDermott

---

[20]     To the Committee's knowledge, no Committee member other than Mr. Raznick had any relationship with Mr. Ehrlich prior to the Petition Date. None of the Committee's professionals had any relationship with Mr. Raznick prior to being interviewed by the Committee in these Chapter 11 Cases.

Will & Emery LLP ("McDermott") as its counsel. *Id.* Shortly thereafter, the Committee retained

FTI Consulting, Inc. as its financial advisor. *Id.*

53.    McDermott is an international law firm with more than 1,300 lawyers in 20 cities.

McDermott has one of the largest crypto-specific legal practices in the world. McDermott's

crypto team works exclusively on crypto-related matters. Like any other legal specialization,

McDermott attends and sponsors crypto-specific events to generate brand awareness, remain

current on crypto matters, and market McDermott's crypto capabilities.

54.    On December 7, 2022, Joseph B. Evans, a partner at McDermott and counsel to

the Committee, attended the "Future of Crypto" conference (the "Conference") organized by

Benzinga in New York City, where Mr. Evans practices. Mr. Evans is the Co-Chair of the

FinTech & Blockchain Group and Head of Crypto Litigation and Regulatory Defense at

McDermott. The Conference, one of the largest crypto conferences nationwide, is known as the

"biggest day of the year for crypto enthusiasts, entrepreneurs, investors and networkers,

[bringing] together the brightest minds in crypto and dealmaking."[21] More than 80 companies

sponsored the Conference, including a number of large professional service firms, such as

Deloitte, Goodwin Proctor, and Venable.[22] McDermott purchased a $15,000 sponsorship for the

Conference (sponsorships were available up to $150,000). Mr. Evans attended the conference

with other members of McDermott's crypto-exclusive team.

---

[21]  *See* https://www.mwe.com/events/future-of-crypto-by-benzinga/#:~:text=Resolution%20FinTech%20%26%20Blockchain-,Overview,minds%20in%20crypto%20and%20dealmaking.
[22]  *See* https://www.benzinga.com/events/crypto/.

### iii.    Mr. Hage Has No Affiliation with the Debtors

55.    Mr. Hage has no affiliation with the Debtors. His experience with the Debtors is limited to his role as counsel to Mr. Raznick in these Chapter 11 Cases.[23] Any relationship between Mr. Raznick's company, Benzinga, and the Debtors or between Mssrs. Raznick and Ehrlich are irrelevant to Mr. Hage's credentials and abilities to serve as Plan Administrator for at least four reasons.

56.    *First*, Benzinga is not a creditor. Even if it were a creditor, Benzinga did not have any special relationship with the Debtors as compared to the 145 other crypto or crypto-adjacent companies that Benzinga conducts business with.

57.    *Second*, any relationship that Mr. Raznick had with Mr. Ehrlich soured after the Debtors commenced these Chapter 11 Cases, and Mr. Raznick was left with the inability to access millions of his personal assets (and is set to recover only a percentage of those assets as a result of the filing).

58.    *Third*, Mr. Raznick's role in these Chapter 11 Cases will cease as of the Effective Date when the Committee is dissolved.

59.    *Fourth*, as Plan Administrator, Mr. Hage serves in a fiduciary capacity obligated to act in the best interests of creditors. Mr. Hage is a decorated and respected figure in the bankruptcy community. If there was any indication that Mr. Hage would risk his status by derogating from these duties, the Committee would not have selected him to serve as Plan Administrator. If for some unknown reason Mr. Hage did so, creditors (and the Oversight Committee) have the right to pursue breach of fiduciary duty claims against him.

---

[23]    Mr. Hage has not represented Mr. Raznick on any engagement other than in connection with these Chapter 11 Cases. Raznick Dec., ¶ 13.

60.     Moreover, any assertion that Mr. Hage will not relentlessly pursue recoveries for general unsecured creditors is unfounded. Since the completion of the Committee Investigation, the Committee has maintained that there are viable causes of action against Mr. Ehrlich and Mr. Psaropoulos. Indeed, the ability to pursue such causes of action are preserved in the Plan Settlement up to applicable insurance amounts. Thus, Mr. Hage intends to pursue these actions upon being appointed as the Plan Administrator.

61.     As a practical matter, the Plan Settlement should not have any relevance to Mr. Hage's appointment as Plan Administrator. If the Plan is confirmed and thus the Releases are approved, then even if there as an affiliation (there is not) between Mr. Hage and Mr. Ehrlich or the Debtors, there would be no incentive for Mr. Hage to derogate from his responsibilities because Mr. Ehrlich's assets cannot be pursued as part of the settlement.

62.     For the foregoing reasons, the Committee submits that Mr. Hage is the ideal candidate to serve as the Plan Administrator.[24]

## III.    **Communications with Creditors**

63.     These Chapter 11 Cases have presented many aspects that are novel to bankruptcy. One such aspect is that the substantial majority of the Debtors' general unsecured creditor body is comprised of retail customers who deposited their personal assets on the Debtors' platform. Accordingly, the Committee undertook unusual and proactive efforts to communicate with creditors.

---

[24]     If the Plan is confirmed, Mr. Hage will be appointed on the Effective Date. Thereafter, Mr. Hage will have the ability to retain professionals in accordance with the Plan.

64.    *First*, the Committee established a social media presence, creating a Twitter page to share information with creditors in real time.[25] During these Chapter 11 Cases, the Committee has posted 200 tweets.

65.    ***Second***, the Committee endeavored to host regular town halls on various platforms to reach the broadest audience. On August 11, 2022, the Committee conducted its first town hall by presenting a 51-minute video on the Chapter 11 Cases and general information regarding chapter 11.[26] On September 8, 2022, the Committee conducted its second town hall via a Reddit "Ask Me Anything," which permitted creditors to ask questions that could be answered directly by the Committee in writing.[27] On November 4, 2022, the Committee conducted its third town hall via Twitter Spaces, which permitted creditors to ask questions to Committee counsel directly.[28] On January 25, 2023, the Committee conducted its fourth town hall also via Twitter Spaces.[29]

66.    The Committee also encouraged creditors to contact Committee counsel directly via email or phone with any questions. For example, Committee counsel had three phone calls and almost 30 email exchanges with creditor Trevor Brucker—one of the *pro se* creditors who has objected to the Plan.

---

[25]    The Committee's Twitter page currently has approximately 9,600 followers. The page is available at https://twitter.com/VoyagerUCC.

[26]    The Committee's first town hall, which currently has approximately 8,700 views, is available at https://www.youtube.com/watch?v=ZLk4qsLpPck.

[27]    The Committee's second town hall is available at https://www.reddit.com/r/VoyagerUCC/comments/x97dp7/ama_official_committee_of_unsecured_creditors_of/.

[28]    The Committee's third town hall, which took place over approximately three hours with 10,800 people in attendance is available at https://twitter.com/VoyagerUCC/status/1588589175175274496.

[29]    The Committee's fourth town hall, which took place over approximately four and a half hours with 4,500 people in attendance is available at https://twitter.com/VoyagerUCC/status/1618308205502947328.

67.     As explained via Twitter and on each town hall, the Committee is bound by various forms of confidentiality agreements that prevent the Committee from responding to many of the questions that were asked by creditors, either directly or during town halls. Moreover, the Committee was unable to share information that might waive the attorney-client privilege with the Committee's counsel.

## **RESERVATION OF RIGHTS**

68.     The Committee reserves all rights to supplement this Statement in advance of the Confirmation Hearing, respond to any objections or modifications to the Plan, and to address any such issues at the Confirmation Hearing.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court confirm the Plan,

overrule any objections thereto, and grant such other and further relief as the Court may deem

just and proper.

Dated:   New York, New York                  McDermott Will & Emery LLP
         February 28, 2023

                                             /s/ Darren Azman
                                             Darren Azman
                                             Joseph B. Evans
                                             One Vanderbilt Avenue
                                             New York, NY 10017-3852
                                             Telephone: (212) 547-5400
                                             Facsimile: (212) 547-5444
                                             E-mail: dazman@mwe.com
                                             E-mail: jbevans@mwe.com

                                             - and -

                                             Charles R. Gibbs (admitted *pro hac vice*)
                                             Grayson Williams (admitted *pro hac vice*)
                                             2501 North Harwood Street, Suite 1900
                                             Dallas, TX 75201
                                             Telephone: (214) 295-8000
                                             Facsimile: (972) 232-3098
                                             E-mail: cgribbs@mwe.com
                                             E-mail: gwilliams@mwe.com

                                             - and -

                                             Gregg Steinman (admitted *pro hac vice*)
                                             333 SE 2nd Avenue, Suite 4500
                                             Miami, FL 33131-2184
                                             Telephone: (305) 329-4473
                                             Facsimile: (305) 503-8805
                                             E-mail: gsteinman@mwe.com

                                             *Counsel to the Official Committee of*
                                             *Unsecured Creditors*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of February 2023, I caused a true and correct copy of the foregoing *Statement of the Official Committee of Unsecured Creditors in Support of the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "Statement") to be served on the Service List by (i) by electronic notification pursuant to the CM/ECF system for the United States Bankruptcy Court for the Southern District of New York, (ii) e-mail, or (iii) First Class U.S. Mail, as indicated in the attachment hereto. I further certify that I caused the Statement to be served on this 28th day of February 2023 upon the parties listed below by e-mail.

*/s/ Darren Azman*_____
Darren Azman

Tracy Hendershott
tokyotracy@gmail.com

Seth Jones
VoyagerVictims@gmail.com

Jon Warren
jontenxmedia@gmail.com

Trevor Brucker
TrevorBrucker@hotmail.com

Daniel Newsom
newsomds@outlook.com

## SERVICE LIST

| Name | Attention | Address 1 | Address 2 | City | State | Zip | Country | Email | Method of Service |
|---|---|---|---|---|---|---|---|---|---|
| DISTRICT OF COLUMBIA | OFFICE OF THE ATTORNEY GENERAL | 400 6TH STREET NW | | WASHINGTON | DC | 20001 | | OAG@DC.GOV | VIA E-MAIL |
| FRANCINE DE SOUSA | C/O SISKINDS LLP | ATTN: ANTHONY O'BRIEN | 100 LOMBARD STREET SUITE 302 | TORONTO | ON | M5C1M3 | | ANTHONY.OBRIEN@SISKINDS.COM | VIA E-MAIL |
| FRANCINE DE SOUSA | C/O SISKINDS LLP | ATTN: MICHAEL G. ROBB & GARETT M. HUNTER | 275 DUNDAS STREET UNIT 1 | LONDON | ON | N6B3L1 | | MICHAEL.ROBB@SISKINDS.COM GARETT.HUNTER@SISKINDS.COM | VIA E-MAIL |
| GOOGLE, LLC | | 1600 AMPHITHEATRE PKWY | | MOUNTAIN VIEW | CA | 94043 | | COLLECTIONS@GOOGLE.COM | VIA E-MAIL |
| INTERNAL REVENUE SERVICE | | PO BOX 7346 | | PHILADELPHIA | PA | 19101-7346 | | | VIA FIRST CLASS MAIL |
| OFFICE OF THE UNITED STATES TRUSTEE | FOR THE SOUTHERN DIST OF NEW YORK | ATTN: RICHARD C. MORRISSEY, ESQ. AND MARK BRUH, ESQ. | 201 VARICK STREET, ROOM 1006 | NEW YORK | NY | 10014 | | RICHARD.MORRISSEY@USDOJ.GOV MARK.BRUH@USDOJ.GOV | VIA E-MAIL VIA E-MAIL |
| SECURITIES & EXCHANGE COMMISSION | | 100 F STREET NE | | WASHINGTON | DC | 20549 | | SECBANKRUPTCY-OGC-ADO@SEC.GOV | VIA E-MAIL |
| SECURITIES & EXCHANGE COMMISSION | NEW YORK REGIONAL OFFICE | 100 PEARL STREET SUITE 20-100 | | NEW YORK | NY | 10004-2616 | | NYROBANKRUPTCY@SEC.GOV | VIA E-MAIL |
| SECURITIES & EXCHANGE COMMISSION | NEW YORK REGIONAL OFFICE | ATTN: ANDREW CALAMARI REGIONAL DIRECTOR | 200 VESEY STREET SUITE 400 | NEW YORK | NY | 10281-1022 | | BANKRUPTCYNOTICESCHR@SEC.GOV | VIA E-MAIL |
| STATE OF ALABAMA | OFFICE OF THE ATTORNEY GENERAL | 501 WASHINGTON AVE | | MONTGOMERY | AL | 36104 | | CONSUMERINTEREST@ALABAMAAG.GO | VIA E-MAIL |
| STATE OF ALASKA | OFFICE OF THE ATTORNEY GENERAL | 1031 W 4TH AVE, STE 200 | | ANCHORAGE | AK | 99501 | | ATTORNEY.GENERAL@ALASKA.GOV | VIA E-MAIL |
| STATE OF ARIZONA | OFFICE OF THE ATTORNEY GENERAL | 2005 N CENTRAL AVE | | PHOENIX | AZ | 85004 | | AGINFO@AZAG.GOV | VIA E-MAIL |
| STATE OF ARKANSAS | OFFICE OF THE ATTORNEY GENERAL | 323 CENTER ST, STE 200 | | LITTLE ROCK | AR | 72201 | | OAG@ARKANSASAG.GOV | VIA E-MAIL |
| STATE OF CALIFORNIA | OFFICE OF THE ATTORNEY GENERAL | PO BOX 944255 | | SACRAMENTO | CA | 94244-2550 | | XAVIER.BECERRA@DOJ.CA.GOV | VIA E-MAIL |
| STATE OF COLORADO | OFFICE OF THE ATTORNEY GENERAL | RALPH L. CARR JUDICIAL BUILDING | 1300 BROADWAY, 10TH FL | DENVER | CO | 80203 | | CORA.REQUEST@COAG.GOV | VIA E-MAIL |
| STATE OF CONNECTICUT | OFFICE OF THE ATTORNEY GENERAL | 165 CAPITOL AVENUE | | HARTFORD | CT | 06106 | | ATTORNEY.GENERAL@CT.GOV | VIA E-MAIL |
| STATE OF FLORIDA | OFFICE OF THE ATTORNEY GENERAL | THE CAPITOL PL01 | | TALLHASSEE | FL | 32399 | | ASHLEY.MOODY@MYFLORIDALEGAL.CO | VIA E-MAIL |
| STATE OF GEORGIA | OFFICE OF THE ATTORNEY GENERAL | 40 CAPITOL SQ SW | | ATLANTA | GA | 30334 | | | VIA FIRST CLASS MAIL |
| STATE OF HAWAII | OFFICE OF THE ATTORNEY GENERAL | 425 QUEEN STREET | | HONOLULU | HI | 96813 | | HAWAIIAG@HAWAII.GOV | VIA E-MAIL |
| STATE OF IDAHO | OFFICE OF THE ATTORNEY GENERAL | 700 W. JEFFERSON ST, SUITE 210 | PO BOX 83720 | BOISE | ID | 83720 | | LAWRENCE.WASDEN@AG.IDAHO.GOV AGWASDEN@AG.IDAHO.GOV | VIA E-MAIL |
| STATE OF ILLINOIS | OFFICE OF THE ATTORNEY GENERAL | JAMES R. THOMPSON CENTER | 100 W. RANDOLPH ST | CHICAGO | IL | 60601 | | INFO@LISAMADIGAN.ORG | VIA E-MAIL |
| STATE OF INDIANA | OFFICE OF THE INDIANA ATTORNEY GENERAL | INDIANA GOVERNMENT CENTER SOUTH | 302 W WASHINGTON ST, 5TH FLOOR | INDIANAPOLIS | IN | 46204 | | | VIA FIRST CLASS MAIL |
| STATE OF IOWA | OFFICE OF THE ATTORNEY GENERAL | HOOVER STATE OFFICE BUILDING | 1305 E. WALNUT STREET | DES MOINES | IA | 50319 | | CONSUMER@AG.IOWA.GOV | VIA E-MAIL |
| STATE OF KANSAS | ATTN: ATTORNEY GENERAL DEREK SCHMIDT | 120 SW 10TH AVE, 2ND FLOOR | | TOPEKA | KS | 66612 | | DEREK.SCHMIDT@AG.KS.GOV | VIA E-MAIL |
| STATE OF KENTUCKY | ATTORNEY GENERAL - DANIEL CAMERON | 700 CAPITAL AVENUE, SUITE 118 | | FRANKFORT | KY | 40601 | | | VIA FIRST CLASS MAIL |
| STATE OF LOUISIANA | DEPT. OF JUSTICE - ATTORNEY GENERAL'S OFFICE | 300 CAPITAL DRIVE | | BATON ROUGE | LA | 70802 | | ADMININFO@AG.STATE.LA.US | VIA E-MAIL |
| STATE OF MAINE | OFFICE OF THE ATTORNEY GENERAL | 6 STATE HOUSE STATION | | AUGUSTA | ME | 04333 | | ATTORNEY.GENERAL@MAINE.GOV | VIA E-MAIL |
| STATE OF MARYLAND | OFFICE OF THE ATTORNEY GENERAL | 200 ST. PAUL PLACE | | BALTIMORE | MD | 21202 | | OAG@OAG.STATE.MD.US | VIA E-MAIL |
| STATE OF MASSACHUSETTS | ATTORNEY GENERAL'S OFFICE | 1 ASHBURTON PLACE, 20TH FLOOR | | BOSTON | MA | 02108 | | | VIA FIRST CLASS MAIL |
| STATE OF MICHIGAN | DEPARTMENT OF ATTORNEY GENERAL | 525 W OTTAWA ST | | LANSING | MI | 48906 | | | VIA FIRST CLASS MAIL |
| STATE OF MINNESOTA | OFFICE OF THE ATTORNEY GENERAL | 445 MINNESOTA ST, STE 1400 | | ST. PAUL | MN | 55101 | | ATTORNEY.GENERAL@AG.STATE.MN.US | VIA E-MAIL |
| STATE OF MISSISSIPPI | OFFICE OF THE ATTORNEY GENERAL | WALTER SILLERS BUILDING | 550 HIGH ST, PO BOX 220 | JACKSON | MS | 39201 | | | VIA FIRST CLASS MAIL |
| STATE OF MISSOURI | OFFICE OF THE ATTORNEY GENERAL | SUPREME COURT BUILDING | 207 W HIGH ST | JEFFERSON CITY | MO | 65101 | | CONSUMER.HELP@AGO.MO.GOV | VIA E-MAIL |
| STATE OF MONTANA | OFFICE OF THE ATTORNEY GENERAL | JUSTICE BUILDING, 3RD FLOOR | 215 N SANDERS, PO BOX 201401 | HELENA | MT | 59602 | | CONTACTDOJ@MT.GOV | VIA E-MAIL |
| STATE OF NEBRASKA | OFFICE OF THE ATTORNEY GENERAL | 2115 STATE CAPITOL | | LINCOLN | NE | 68509 | | | VIA FIRST CLASS MAIL |
| STATE OF NEVADA | OFFICE OF THE ATTORNEY GENERAL | OLD SUPREME COURT BUILDING | 100 N CARSON ST | CARSON CITY | NV | 89701 | | | VIA FIRST CLASS MAIL |
| STATE OF NEW HAMPSHIRE | OFFICE OF THE ATTORNEY GENERAL | NH DEPARTMENT OF JUSTICE | 33 CAPITOL ST. | CONCORD | NH | 03301 | | ATTORNEYGENERAL@DOJ.NH.GOV | VIA E-MAIL |
| STATE OF NEW JERSEY | OFFICE OF THE ATTORNEY GENERAL | RICHARD J. HUGHES JUSTICE COMPLEX | 25 MARKET ST 8TH FL, WEST WING BOX 080 | TRENTON | NJ | 08611 | | | VIA FIRST CLASS MAIL |
| STATE OF NEW MEXICO | OFFICE OF THE ATTORNEY GENERAL | 408 GALISTEO STREET | VILLAGRA BUILDING | SANTA FE | NM | 87501 | | HBALDERAS@NMAG.GOV | VIA E-MAIL |
| STATE OF NEW YORK | OFFICE OF THE ATTORNEY GENERAL | THE CAPITOL | 2ND FLOOR | ALBANY | NY | 12224 | | | VIA FIRST CLASS MAIL |
| STATE OF NORTH CAROLINA | OFFICE OF THE ATTORNEY GENERAL | 114 W EDENTON ST | | RALEIGH | NC | 27603 | | | VIA FIRST CLASS MAIL |
| STATE OF NORTH DAKOTA | OFFICE OF THE ATTORNEY GENERAL | STATE CAPITOL, 600 E | DEPT. 125 | BISMARCK | ND | 58505 | | NDAG@ND.GOV | VIA E-MAIL |
| STATE OF OHIO | OFFICE OF THE ATTORNEY GENERAL | STATE OFFICE TOWER | 30 E BROAD ST 14TH FL | COLUMBUS | OH | 43215 | | | VIA FIRST CLASS MAIL |
| STATE OF OKLAHOMA | OFFICE OF THE ATTORNEY GENERAL | 313 NE 21ST ST | | OKLAHOMA CITY | OK | 73105 | | QUESTIONS@OAG.OK.GOV | VIA E-MAIL |
| STATE OF OREGON | OFFICE OF THE ATTORNEY GENERAL | 1162 COURT ST NE | | SALEM | OR | 97301-4096 | | ELLEN.ROSENBLUM@DOJ.STATE.OR.US ATTORNEYGENERAL@DOJ.STATE.OR.U | VIA E-MAIL |
| STATE OF PENNSYLVANIA | OFFICE OF THE ATTORNEY GENERAL | STRAWBERRY SQUARE 16TH FL | | HARRISBURG | PA | 17120 | | | VIA FIRST CLASS MAIL |
| STATE OF RHODE ISLAND | OFFICE OF THE ATTORNEY GENERAL | 150 S MAIN ST | | PROVIDENCE | RI | 02903 | | AG@RIAG.RI.GOV | VIA E-MAIL |
| STATE OF SOUTH CAROLINA | OFFICE OF THE ATTORNEY GENERAL | PO BOX 11549 | | COLUMBIA | SC | 29211 | | | VIA FIRST CLASS MAIL |
| STATE OF SOUTH CAROLINA | OFFICE OF THE ATTORNEY GENERAL | REMBERT C. DENNIS BLDG | 1000 ASSEMBLY ST RM 519 | COLUMBIA | SC | 29201 | | | VIA FIRST CLASS MAIL |
| STATE OF SOUTH DAKOTA | OFFICE OF THE ATTORNEY GENERAL | 1302 E HIGHWAY 14, STE 1 | | PIERRE | SD | 57501-8501 | | | VIA FIRST CLASS MAIL |

| Name | Firm/Contact | Address 1 | Address 2 | Address 3 | City | State | Zip | Email | Method |
|---|---|---|---|---|---|---|---|---|---|
| STATE OF TENNESSEE | OFFICE OF THE ATTORNEY GENERAL | PO BOX 20207 | | | NASHVILLE | TN | 37202-0207 | | VIA FIRST CLASS MAIL |
| STATE OF TEXAS | OFFICE OF THE ATTORNEY GENERAL | 300 W. 15TH ST | | | AUSTIN | TX | 78701 | | VIA FIRST CLASS MAIL |
| STATE OF UTAH | OFFICE OF THE ATTORNEY GENERAL | UTAH STATE CAPITOL COMPLEX | 350 NORTH STATE ST STE 230 | | SALT LAKE CITY | UT | 84114 | UAG@UTAH.GOV | VIA E-MAIL |
| STATE OF VERMONT | OFFICE OF THE ATTORNEY GENERAL | 109 STATE ST. | | | MONTPELIER | VT | 05609 | AGO.INFO@VERMONT.GOV | VIA E-MAIL |
| STATE OF VIRGINIA | OFFICE OF THE ATTORNEY GENERAL | 202 N. NINTH ST. | | | RICHMOND | VA | 23219 | MAIL@OAG.STATE.VA.US | VIA E-MAIL |
| STATE OF WASHINGTON | OFFICE OF THE ATTORNEY GENERAL | 1125 WASHINGTON ST SE | | | OLYMPIA | WA | 98501 | | VIA FIRST CLASS MAIL |
| STATE OF WASHINGTON | OFFICE OF THE ATTORNEY GENERAL | PO BOX 40100 | | | OLYMPIA | WA | 98504-00 | | VIA FIRST CLASS MAIL |
| STATE OF WEST VIRGINIA | OFFICE OF THE ATTORNEY GENERAL | STATE CAPITOL, 1900 KANAWHA | BUILDING 1 RM E-26 | | CHARLESTON | WV | 25305 | CONSUMER@WVAGO.GOV | VIA E-MAIL |
| STATE OF WISCONSIN | OFFICE OF THE ATTORNEY GENERAL | 17 WEST MAIN STREET, ROOM 114 EAST P | | | MADISON | WI | 53702 | | VIA FIRST CLASS MAIL |
| STATE OF WYOMING | OFFICE OF THE ATTORNEY GENERAL | 109 STATE CAPITOL | | | CHEYENNE | WY | 82002 | | VIA FIRST CLASS MAIL |
| TORONTO STOCK EXCHANGE | | 300 - 100 ADELAIDE ST. | | | WEST TORONTO | ON | M5H 1S3 | WEBMASTER@TMX.COM | VIA FIRST CLASS MAIL |
| UNITED STATES ATTORNEY'S OFFICE | SOUTHERN DISTRICT OF NEW YORK | ONE ST. ANDREWS PLAZA | | | NEW YORK | NY | 10007 | | VIA FIRST CLASS MAIL |
| UNITED STATES DEPARTMENT OF | ATTORNEY GENERAL OF THE U.S. | 950 PENNSYLVANIA AVE, NW | | | WASHINGTON | DC | 20530-0001 | | VIA FIRST CLASS MAIL |
| KELLEHER PLACE MANAGEMENT, LLC | HORWOOD MARCUS & BERK CHARTERED | 500 W. MADISON ST. | SUITE 3700 | | CHICAGO | IL | 60661 | AHAMMER@HMBLAW.COM NDELMAN@HMBLAW.COM | VIA ECF |
| METROPOLITAN COMMERCIAL BANK | BALLARD SPAHR LLP | 200 IDS CENTER | 80 SOUTH 8TH STREET | | MINNEAPOLIS | MN | 55402-2119 | SINGERG@BALLARDSPAHR.COM | VIA E-MAIL |
| METROPOLITAN COMMERCIAL BANK | WACHTELL, LIPTON, ROSEN & KATZ | 51 WEST 52ND STREET | | | NEW YORK | NY | 10019-6150 | RGMASON@WLRK.COM ARWOLF@WLRK.COM AKHERRING@WLRK.COM | VIA E-MAIL VIA ECF VIA ECF |
| JASON RAZNICK | JAFFE RAITT HEUER & WEISS, P.C. | 27777 FRANKLIN ROAD | SUITE 2500 | | SOUTHFIELD | MI | 48034 | PHAGE@JAFFELAW.COM | VIA ECF |
| STEVE LAIRD | FORSHEY & PROSTOK LLP | 777 MAIN STREET | SUITE 1550 | | FORT WORTH | TX | 76102 | BFORSHEY@FORSHEYPROSTOK.COM | VIA ECF |
| ORACLE AMERICA, INC. | BUCHALTER, A PROFESSIONAL CORPORA | 425 MARKET ST. | SUITE 2900 | | SAN FRANCISCO | CA | 94105 | SCHRISTIANSON@BUCHALTER.COM | VIA ECF |
| ALAMEDA RESEARCH LLC & AFFILIATES | SULLIVAN & CROMWELL LLP | 125 BROAD STREET | | | NEW YORK | NY | 10004 | DIETDERICHA@SULLCROM.COM GLUECKSTEINB@SULLCROM.COM BELLERB@SULLCROM.COM | VIA ECF VIA ECF VIA E-MAIL |
| VOYAGER DIGITAL HOLDINGS, INC., ET AL. | KIRKLAND & ELLIS LLP KIRKLAND & ELLIS INTERNATIONAL LLP | 601 LEXINGTON AVENUE | | | NEW YORK | NY | 10022 | JSUSSBERG@KIRKLAND.COM CMARCUS@KIRKLAND.COM CHRISTINE.OKIKE@KIRKLAND.COM ALLYSON.SMITH@KIRKLAND.COM | VIA ECF VIA E-MAIL VIA E-MAIL VIA E-MAIL |
| EMERALD OCEAN ISLE, LLC, AMANO GLOBAL HOLDINGS, INC., SHINGO LAVINE, AND ADAM LAVINE | C/O GOLDSTEIN & MCCLINKOCK LLLP | ATTN: MATTHEW E. MCCLINTOCK, HARLEY GOLDSTEIN, AND STEVE YACHIK | 111 W WASHINGTON STREET SUITE 1221 | | CHICAGO | IL | 60602 | MATTM@GOLDMCLAW.COM HARLEYG@RESTRUCTURINGSHOP.COM STEVENY@GOLDMCLAW.COM | VIA E-MAIL VIA E-MAIL VIA E-MAIL |
| EMERALD OCEAN ISLE, LLC, AMANO GLOBAL HOLDINGS, INC., SHINGO LAVINE, AND ADAM LAVINE | C/O LAW OFFICES OF DOUGLAS T. TABACHNIK, P.C. | ATTN: DOUGLAS T. TABACHNIK | 63 WEST MAIN STREET SUITE C | | FREEHOLD | NJ | 07728-2141 | DTABACHNIK@DTTLAW.COM | VIA ECF |
| MATTHEW EDWARDS | C/O LIZ GEORGE AND ASSOCIATES | ATTN: LYSBETH GEORGE | 8101 S. WALKER SUITE F | | OKLAHOMA CITY | OK | 73139 | GEORGELAWOK@GMAIL.COM | VIA ECF |
| TEXAS STATE SECURITIES BOARD | OFFICE OF THE ATTORNEY GENERAL OF TEXAS | ATTN: ABIGAIL R RYAN, LAYLA D MILLIGAN & JASON B BINFORD | BANKRUPTCY & COLLECTIONS DIVISION PO BOX 12548 | | AUSTIN | TX | 78711-2548 | ABIGAIL.RYAN@OAG.TEXAS.GOV LAYLA.MILLIGAN@OAG.TEXAS.GOV JASON.BINFORD@OAG.TEXAS.GOV | VIA E-MAIL VIA E-MAIL VIA E-MAIL |
| OFFICE OF THE ATTORNEY GENERAL OF TEXAS | | ATTN: ROMA N. DESAI | BANKRUPTCY & COLLECTIONS DIVISION PO BOX 12548 | | AUSTIN | TX | 78711-2548 | ROMA.DESAI@OAG.TEXAS.GOV | VIA ECF |
| OFFICE OF THE ATTORNEY GENERAL | BANKRUPTCY DIVISION | ATTN: MARVIN E. CLEMENTS, JR. | BANKRUPTCY DIVISION P O BOX 20207 | | NASHVILLE | TN | 37202-0207 | AGBANKNEWYORK@AG.TN.GOV | VIA ECF |
| VERMONT DEPARTMENT OF FINANCIAL REGULATION | ASSISTANT GENERAL COUNSEL | ATTN: JENNIFER ROOD | 89 MAIN STREET THIRD FLOOR | | MONTPELIER | VT | 05620 | JENNIFER.ROOD@VERMONT.GOV | VIA ECF |
| ROBERT SNYDERS & LISA SNYDERS | C/O JOHNSON, POPE, BOKOR, RUPPEL & BURNS, LLP | ATTN: ANGELINA E. LIM | 401 E JACKSON STREET SUITE 3100 | | TAMPA | FL | 33602 | ANGELINAL@JPFIRM.COM | VIA ECF |
| MICHAEL LEGG | C/O MCCARTHY, LEBIT, CRYSTAL & LIFFMAN CO. | ATTN: ROBERT R. KRACHT & NICHOLAS R. OLESKI | 1111 SUPERIOR AVENUE EAST SUITE 2700 | | CLEVELAND | OH | 44114 | RRK@MCCARTHYLEBIT.COM NRO@MCCARTHYLEBIT.COM | VIA E-MAIL VIA ECF |
| MICHAEL GENTSCH | C/O BARSKI LAW PLC | ATTN: CHRIS D. BARSKI | 9375 E. SHEA BLVD. STE 100 | | SCOTTSDALE | AZ | 85260 | CBARSKI@BARSKILAW.COM | VIA ECF |
| ILLINOIS SECRETARY OF STATE | C/O OFFICE OF THE ATTORNEY GENERAL | ATTN: JOHN P. REDING | 100 W. RANDOLPH ST FLOOR 13 | | CHICAGO | IL | 60601 | JOHN.REDING@ILAG.GOV | VIA ECF |
| GEORGIA DEPARTMENT OF BANKING AND FINANCE | | ATTN: NATHAN HOVEY, ASSISTANT ATTORNEY GENERAL | DEPARTMENT OF LAW 40 CAPITOL SQUARE SW | | ATLANTA | GA | 30334 | NHOVEY@LAW.GA.GOV | VIA ECF |
| MARK CUBAN AND DALLAS BASKETBALL LIMITED, D/B/A DALLAS MAVERICKS | C/O BROWN RUDNICK LLP | ATTN: SIGMUND S. WISSNER-GROSS ESQ. & KENNETH J. AULET | SEVEN TIMES SQUARE | | NEW YORK | NY | 10036 | SWISSNER-GROSS@BROWNRUDNICK.COM KAULET@BROWNRUDNICK.COM | VIA ECF VIA E-MAIL |
| MARK CUBAN AND DALLAS BASKETBALL LIMITED D/B/A DALLAS MAVERICKS | C/O BROWN RUDNICK LLP | ATTN: STEPHEN A. BEST ESQ & RACHEL O. WOLKINSON, ESQ. | 601 THIRTEENTH STREET NW SUITE 600 | | WASHINGTON | DC | 2005 | SBEST@BROWNRUDNICK.COM RWOLKINSON@BROWNRUDNICK.COM | VIA E-MAIL VIA E-MAIL |
| ED BOLTON | C/O AKERMAN LLP | ATTN: R. ADAM SWICK, JOHN H. THOMPSON, JOANNE GELFAND | 1251 AVENUE OF THE AMERICAS, 37TH FL | | NEW YORK | NY | 10020 | ADAM.SWICK@AKERMAN.COM; JOHN.THOMPSON@AKERMAN.COM; JOANNE.GELFAND@AKERMAN.COM | VIA ECF VIA ECF VIA ECF |
| JON GIACOBBE | | ATTN: A. MANNY ALICANDRO | 11 BROADWAY, SUITE 615 | | NEW YORK | NY | 10004 | MANNY@ALICANDROLAWOFFICE.COM | VIA ECF |
| WELLS FARGO BANK, N.A. | C/O ALDRIDGE PITE, LLP | ATTN: GREGORY WALLACH | FIFTEEN PIEDMONT CENTER 3575 PIEDMONT ROAD, N.E. | | ATLANTA | GA | 30305 | GWALLACH@ALDRIDGEPITE.COM | VIA ECF |
| AD HOC GROUP OF EQUITY INTEREST HOLDERS | C/O KILPATRICK TOWNSEND & STOCKTON LLP | ATTN: DAVID M. POSNER & KELLY E. MOYNIHAN | THE GRACE BUILDING 1114 AVENUE OF THE | | NEW YORK | NY | 10036 | DPOSNER@KILPATRICKTOWNSEND.COM KMOYNIHAN@KILPATRICKTOWNSEND.C | VIA ECF |
| AD HOC GROUP OF EQUITY INTEREST HOLDERS | C/O KILPATRICK TOWNSEND & STOCKTON LLP | ATTN: PAUL M. ROSENBLATT | 1100 PEACHTREE STREET NE SUITE 2800 | | ATLANTA | GA | 30309 | PROSENBLATT@KILPATRICKTOWNSEND. COM | VIA E-MAIL |
| PIERCE ROBERTSON | C/O PACHULSKI STANG ZIEHL & JONES LLP | ATTN: RICHARD M. PACHULSKI, ALAN J. KORNFELD, DEBRA I. GRASSGREEN, AND JASON H. ROSELL | 10100 SANTA MONICA BLVD 13TH FLOOR | | LOS ANGELES | CA | 90067 | RPACHULSKI@PSZJLAW.COM AKORNFELD@PSZJLAW.COM DGRASSGREEN@PSZJLAW.COM JROSELL@PSZJLAW.COM | VIA E-MAIL VIA E-MAIL VIA E-MAIL VIA ECF |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| STATE OF WASHINGTON | OFFICE OF ATTORNEY GENERAL | ATTN: STEPHEN MANNING, ASSISTANT ATTORNEY GENERAL | GOVERNMENT COMPLIANCE AND ENFORCEMENT DIVISION P.O. BOX 40100 | OLYMPIA | WA | 98504-4010 | | STEPHEN.MANNING@ATG.WA.GOV | VIA ECF |
| MARCUM LLP | MINTZ & GOLD LLP | ATTN: ANDREW R. GOTTESMAN | 600 THIRD AVENUE, 25TH | NEW YORK | NY | 10016 | | GOTTESMAN@MINTZANDGOLD.COM | VIA ECF |
| U.S. SECURITIES & EXCHANGE COMMISSION | | ATTN: THERESE A. SCHEUER | 100 F STREET, NE | WASHINGTON | DC | 20549 | | SCHEUERT@SEC.GOV | VIA E-MAIL |
| NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES | CONSUMER PROTECTION AND FINANCIAL ENFORCEMENT | ATTN: KEVIN R. PUVALOWSKI, LINDA DONAHUE, JASON D. ST. JOHN | ONE STATE STREET | NEW YORK | NY | 10004 | | KEVIN.PUVALOWSKI@DFS.NY.GOV LINDA.DONAHUE@DFS.NY.GOV JASON.STJOHN@DFS.NY.GOV | VIA E-MAIL VIA E-MAIL VIA ECF |
| NEW JERSEY BUREAU OF SECURITIES | C/O MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP | ATTN: VIRGINIA T. SHEA | 1300 MT KEMBLE AVENUE PO BOX 2075 | MORRISTOWN | NJ | 02075 | | VSHEA@MDMC-LAW.COM | VIA ECF |
| NEW JERSEY BUREAU OF SECURITIES | C/O MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP | ATTN: NICOLE LEONARD | 225 LIBERTY STREET, 36TH FLOOR | NEW YORK | NY | 10281 | | NLEONARD@MDMC-LAW.COM | VIA ECF |
| NEW JERSEY BUREAU OF SECURITIES | C/O MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP | ATTN: JEFFREY BERNSTEIN | 570 BROAD STREET, SUITE 1500 | NEWARK | NJ | 07102 | | JBERNSTEIN@MDMC-LAW.COM | VIA ECF |
| USIO, INC. | PULMAN, CAPPUCCIO & PULLEN, LLP | ATTN: RANDALL A. PULMAN | 2161 NW MILITARY HIGHWAY SUITE 400 | SAN ANTONIO | TX | 78213 | | RPULMAN@PULMANLAW.COM | E-MAIL |
| BAM TRADING SERVICES INC. D/B/A BINANCE.US | LATHAM & WATKINS LLP | ATTN: ADAM J. GOLDBERG, NACIF TAOUSSE, JONATHAN J. WEICHSELBAUM | 1271 AVENUE OF THE AMERICAS | NEW YORK | NY | 10020 | | ADAM.GOLDBERG@LW.COM NACIF.TAOUSSE@LW.COM JON.WEICHSELBAUM@LW.COM | VIA ECF VIA E-MAIL VAI E-MAIL |
| BAM TRADING SERVICES INC. D/B/A BINANCE.US | LATHAM & WATKINS LLP | ATTN: ANDREW D. SORKIN | 555 ELEVENTH STREET, NW SUITE 1000 | WASHINGTON | DC | 20004 | | ANDREW.SORKIN@LW.COM | VIA E-MAIL |
| ATTORNEY FOR THE STATES OF ALABAMA, ARKANSAS, CALIFORNIA, DISTRICT OF COLUMBIA, HAWAII, MAINE, NORTH DAKOTA, OKLAHOMA, AND SOUTH | C/O NATIONAL ASSOCIATION OF ATTORNEYS GENERAL | ATTN: KAREN CORDRY BANKRUPTCY COUNSEL | 1850 M ST. NW 12TH FLOOR | WASHINGTON | DC | 20036 | | KCORDRY@NAAG.ORG | VIA ECF |
| USIO, INC. & FICENTIVE, INC. | RUSKIN MOSCOU FALTISCHEK, P.C. | ATTN: SHERYL P. GIUGLIANO | 1425 RXR PLAZA, 15TH FLOOR | UNIONDALE | NY | 11556 | | SGIUGLIANO@RMFPC.COM | VIA ECF |
| CELSIUS NETWORK LLC | AKIN GUMP STRAUSS HAUER & FELD, L.L.P | ATTN: MITCHELL P. HURLEY, DEAN L. CHAPMAN, JR. | ONE BRYANT PARK | NEW YORK | NY | 10036 | | MHURLEY@AKINGUMP.COM DCHAPMAN@AKINGUMP.COM | VIA ECF VIA E-MAIL |
| VOYAGER DIGITAL HOLDINGS, INC., ET AL. | PAUL HASTINGS LLP | ATTN: JONATHAN D. CANFIELD | 200 PARK AVENUE | NEW YORK | NY | 10166 | | JONCANFIELD@PAULHASTINGS.COM | VIA ECF |
| VOYAGER DIGITAL HOLDINGS, INC., ET AL. | PAUL HASTINGS LLP | ATTN: MATTHEW M. MURPHY, MICHAEL C. WHALEN | 71 SOUTH WACKER DRIVE SUITE 4500 | CHICAGO | IL | 60606 | | MATTMURPHY@PAULHASTINGS.COM MICHAELCWHALEN@PAULHASTINGS.COM | VIA E-MAIL VIA E-MAIL |
| FEDERAL TRADE COMMISSION | | ATTN: KATHERINE JOHNSON | 600 PENNSYLVANIA AVE., NW MAIL STOP CC-9528 | WASHINGTON | DC | 20580 | | KJOHNSON3@FTC.GOV | VIA ECF |
| OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF NEW YORK | SENIOR ENFORCEMENT COUNSEL INVESTOR PROTECTION BUREAU | ATTN: TANYA TRAKHT | 28 LIBERTY STREET 21ST FLOOR | NEW YORK | NY | 10005 | | TANYA.TRAKHT@AG.NY.GOV | VIA ECF |
| VOYAGER DIGITAL HOLDINGS, INC., ET AL. | KIRKLAND & ELLIS LLP KIRKLAND & ELLIS INTERNATIONAL LLP | ATTN: RAVI SUBRAMANIAN SHANKAR | 300 NORTH LASALLE | CHICAGO | IL | 60654 | | RAVI.SHANKAR@KIRKLAND.COM | VIA ECF |
| U.S. SECURITIES & EXCHANGE COMMISSION | | ATTN: WILLIAM M. UPTEGROVE | 950 EAST PACES FERRY RD., N.E.  SUITE 900 | ATLANTA | GA | 30326 | | UPTEGROVEW@SEC.GOV | VIA E-MAIL |
| THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC. ALTERNATIVE LOAN TRUST 2005-38 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-38 | MCCALLA RAYMER LEIBERT PIERCE, LLC | ATTN: PHILLIP RAYMOND | 420 LEXINGTON AVENUE SUITE 840 | NEW YORK | NY | 10170 | | NY_ECF_NOTICES@MCCALLA.COM PHILLIP.RAYMOND@MCCALLA.COM MCCALLAECF@ECF.COURTDRIVE.COM | VIA ECF |