## **EXHIBIT A**

**Raznick Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*, | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |

### DECLARATION OF JASON RAZNICK IN SUPPORT OF THE STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN SUPPORT OF THE THIRD AMENDED JOINT PLAN OF VOYAGER DIGITAL HOLDINGS, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

Pursuant to 28 U.S.C. § 1746, I, Jason Raznick, do hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1.  I am over 18 years of age and I submit this declaration in support of the *Statement of the Official Committee of Unsecured Creditors in Support of the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "Statement")[2] filed contemporaneously herewith.

2.  I founded the media company Benzinga in 2010 to empower individual investors with access to information, which only institutions had the advantage of during the Great Recession. To this day, I fight as an individual and with Benzinga to level the investing

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Voyager Digital Holdings, Inc.'s and Voyager Digital Ltd.'s principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003. Voyager Digital, LLC's principal place of business is 701 S. Miami Ave, 8th Floor, Miami, FL 33131.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Statement.

playing field for all. The same drive that caused me to found Benzinga is what pushed me to join the Committee.

3. Benzinga has become a leading financial resource with 25 million readers every month. Benzinga is heavily focused on the stock market, cryptocurrency, and other developing technologies. In 2021, I sold my majority stake in Benzinga to an unaffiliated investment fund. Nonetheless, I continue to serve as the CEO of Benzinga.

4. In my capacity as CEO of Benzinga, I developed a relationship with Stephen Ehrlich. At the time, Mr. Ehrlich was the CEO of Lightspeed Financial. Our relationship continued after he founded the Debtors.

5. Because the mission of Benzinga is to level the investing playing field for all, Benzinga launched coverage of crypto markets several years ago. Today, Benzinga is one of the most read cryptocurrency publications.

6. As a media company in the cryptocurrency industry, Benzinga and the Debtors often overlapped in business, much like Benzinga did with the 145 other cryptocurrency and crypto-adjacent companies that have advertised on Benzinga's website. These relationships are important to cryptocurrency companies who seek to increase the visibility of their products and services through sponsorships and advertisements on Benzinga. For example, before the Petition Date, the Debtors sponsored certain events hosted by Benzinga. These events had numerous other sponsors, including multiple other cryptocurrency companies.

7. In the years prior to the commencement of these bankruptcy cases, I became one of the Debtors' largest customers by depositing millions of dollars of my own personal funds into my account on the Debtors' platform. Like many retail customers of the Debtors, I believed that the money that I deposited on the Debtors' platform was as safe as money held at

a traditional bank. The money that I deposited on the Debtors' platform represents a sizeable and significant investment on my own behalf and I have been greatly impacted personally by the filing of these Chapter 11 Cases.

8. Any cordial relationship I had with Mr. Ehrlich ended after the Debtors filed these Chapter 11 Cases and I lost the ability to access millions of dollars of my personal funds.

9. On July 19, 2022, William K. Harrington, United States Trustee for Region 2, appointed the Official Committee of Unsecured Creditors of Voyager Digital Holdings, Inc. and its affiliated debtors-in-possession (the "Committee").[3]

10. The Committee itself is comprised of seven individual retail customers of the Debtors. Shortly after formation, the Committee members appointed me to serve as the chair of the Committee by unanimous vote.

11. From the very formation of the Committee, my singular goal in these Chapter 11 Cases has been to get retail customers as much of their money back as possible, as soon as possible. I have endeavoured to serve as a voice for creditors who did not have the means or opportunity to meaningfully participate in the process.

12. The Committee received twelve pitchbooks from law firms seeking to represent the Committee. The Committee narrowed down the candidates to five law firms, each of which completed a virtual interview with the Committee members on July 20, 2022. The Committee then deliberated for nearly two days before ultimately selecting McDermott Will & Emery LLP ("McDermott") as its counsel. Shortly thereafter, the Committee retained FTI Consulting, Inc. as its financial advisor.

---

[3] Docket No. 102.

13. The Committee meets regularly, with standing weekly calls and special meetings, as necessary. During these meetings, McDermott and other professionals retained by the Committee provide thorough analysis and research relating to important case developments. This analysis and vetting of information ensures that the Committee makes informed decisions and fully understands the implications of all sides of any decision. Importantly, through discourse and review of the research presented at such meetings, the Committee makes these decisions by a majority vote, with each member's vote counting equally. Despite my designation as chair of the Committee, neither my voice nor my vote is any stronger than that of any other Committee member. Additionally, in the event of a deadlock vote, my vote does not carry the controlling vote.

14. On October 16, 2022, the Committee held a two-hour meeting, the majority of which was dedicated to consideration of the proposed Plan Settlement. At this meeting, I specifically voiced my belief that Mr. Ehrlich and others should be held accountable for their actions and that the amount of money being contributed by Mr. Ehrlich as part of the Plan Settlement was insufficient. After a lengthy discussion of the pros and cons of the Plan Settlement, each Committee member was asked to vote on whether to accept or reject it. A majority of the Committee members voted to approve the Plan Settlement. I abstained.

15. I retained Paul R. Hage and the law firm of Jaffe Raitt Heuer & Weiss, P.C. n/k/a Taft Stettinius & Hollister, LLP to represent me in my personal capacity in these Chapter 11 Cases. I selected Mr. Hage for his stellar reputation and his wealth of experience as a bankruptcy professional. Mr. Hage has not represented me on any engagement other than in connection with these Chapter 11 Cases.

Dated: February 28, 2023	By: */s/ Jason Raznick*
	Name: Jason Raznick, not in his individual capacity but solely as chair of the Official Committee of Unsecured Creditors of Voyager Digital Holdings, Inc., *et al*

5