Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF FILING OF THE REVISED**
**ORDER (I) APPROVING THE SECOND AMENDED**
**DISCLOSURE STATEMENT AND (II) CONFIRMING THE THIRD**
**AMENDED JOINT PLAN OF VOYAGER DIGITAL HOLDINGS, INC. AND ITS**
**DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

PLEASE TAKE NOTICE on February 28, 2023, the Debtors filed the *Order*
*(I) Approving the Second Amended Disclosure Statement and (II) Confirming the Third Amended*
*Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of*
*the Bankruptcy Code* [Docket No. 1120].

**PLEASE TAKE FURTHER NOTICE** on March 3, 2023, the Debtors filed the amended
*Order (I) Approving the Second Amended Disclosure Statement and (II) Confirming the Third*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC
(8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY
10003.

*Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1130] (the "Revised Confirmation Order").

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file a revised *Order (I) Approving the Second Amended Disclosure Statement and (II) Confirming the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "Amended Revised Confirmation Order"), attached hereto as **Exhibit A**. A redline of the Amended Revised Confirmation Order is attached hereto as **Exhibit B**, which reflects changes from the Revised Confirmation Order.

**PLEASE TAKE FURTHER NOTICE** that the hearing at which the Court will consider approval and entry of the Amended Revised Confirmation Order will continue before the Honorable Michael E. Wiles of the United States Bankruptcy Court for the Southern District of New York (the "Court") on **March 6, 2023, at 10:00 a.m. (prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right to materially alter, amend, or modify the Amended Revised Confirmation Order; *provided* that if the Amended Revised Confirmation Order is altered, amended, or modified in any materials respect, the Debtors will file a revised version of such document with the Court.

**PLEASE TAKE FURTHER NOTICE** that copies of the Amended Revised Confirmation Order and other pleadings filed in the above-captioned chapter 11 cases may be obtained free of charge by visiting the website of Stretto at http://www.cases.stretto.com/Voyager. You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated:  March 5, 2023
New York, New York

/s/ Joshua A. Sussberg

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          jsussberg@kirkland.com
                cmarcus@kirkland.com
                christine.okike@kirkland.com
                allyson.smith@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**Exhibit A**

**Amended Revised Confirmation Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER (I) APPROVING THE SECOND AMENDED
DISCLOSURE STATEMENT AND (II) CONFIRMING THE THIRD
AMENDED JOINT PLAN OF VOYAGER DIGITAL HOLDINGS, INC. AND ITS
DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Voyager Digital Holdings, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors")[2] having:

a.  commenced, on July 5, 2022 (the "Petition Date"), these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief in the United States Bankruptcy Court for the Southern District of New York (the "Court") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

b.  continued to operate their business and manage their property during these Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c.  filed,[3] on July 6, 2022, the *Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 17];

d.  filed, on July 21, 2022, the *Debtors' Motion Seeking Entry of an Order (I) Approving the Bidding Procedures and Related Dates and Deadlines, (II) Scheduling Hearings and Objection Deadlines with Respect to the Debtors'*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan, the Disclosure Statement, the Asset Purchase Agreement, or the Bankruptcy Code (each as defined herein), as applicable. The rules of interpretation set forth in Article I.B. of the Plan apply.

[3]  Unless otherwise indicated, use of the term "filed" herein refers also to the service of the applicable document filed on the docket in these Chapter 11 Cases, as applicable.

*Sale, Disclosure Statement, and Plan Confirmation, and (III) Granting Related Relief* [Docket No. 126];

e.    obtained, on August 5, 2022, the entry of the *Order (I) Approving the Bidding Procedures, (II) Scheduling the Bid Deadlines and the Auction, (III) Approving the Form and Manner of Notice Thereof, (IV) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Sale, Disclosure Statement, and Plan Confirmation and (V) Granting Related Relief* [Docket No. 248] (the "<u>Bidding Procedures Order</u>") approving the *Bidding Procedures for the Submission, Receipt, and Analysis of Bids in Connection with the Sale of the Debtors*, attached to the Bidding Procedures Order as <u>Exhibit 1</u> (the "<u>Bidding Procedures</u>");

f.    filed, on August 12, 2022, the *First Amended Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 287], the *Disclosure Statement Relating to the First Amended Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 288], and the *Debtors' Motion for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [Docket No. 289];

g.    commenced, on September 13, 2022, the Auction for the sale of substantially all of the Debtors' assets in accordance with the Bidding Procedures;

h.    closed, on September 26, 2022, the Auction and selected West Realm Shires Inc. ("<u>FTX US</u>") as the Winning Bidder (as defined in the Bidding Procedures);

i.    obtained, on October 20, 2022, entry of the *Order (I) Authorizing Entry of the Asset Purchase Agreement and (II) Granting Related Relief* [Docket No. 581], which authorized entry into that certain asset purchase agreement by and between Voyager Digital, LLC and West Realm Shires Inc. (together with its affiliates, "<u>FTX US</u>," and the asset purchase agreement, the "<u>FTX US Asset Purchase Agreement</u>");

j.    filed, on October 24, 2022, the *Second Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 590] and the *First Amended Disclosure Statement Relating to the Second Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 591];

k.    filed, on December 9, 2022, the *Stipulation and Agreed Order* [Docket No. 717] by and between FTX US and the Debtors (the "<u>FTX US APA Stipulation</u>"), terminating the FTX US Asset Purchase Agreement;

l.    filed, on December 21, 2022, the *Debtors' Motion for Entry of an Order (I) Authorizing Entry into the Binance US Purchase Agreement and (II) Granting Related Relief* [Docket No. 775] and that certain asset purchase agreement by and between Voyager Digital, LLC and BAM Trading Services Inc. d/b/a Binance.US

(together with its affiliates, "Binance.US," and the asset purchase agreement, the "Asset Purchase Agreement")

m.    filed, on December 22, 2022, the *Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 777] (as amended, modified, or supplemented from time to time, the "Plan"), the *Second Amended Disclosure Statement Relating to the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 778] (as amended, modified, or supplemented from time to time, the "Disclosure Statement"), and the *Debtors' Motion for Entry of an Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Adequacy of the Debtors' Disclosure Statement, (III) Approving (A) Procedures for Solicitation, (B) Forms of Ballots and Notices, (C) Procedures for Tabulation of Votes, and (D) Procedures for Objections, and (IV) Granting Related Relief* [Docket No. 779];

n.    filed, on January 9, 2023, the first amendment to the Asset Purchase Agreement [Docket No. 835];

o.    obtained, on January 10, 2023, approval of the FTX US APA Stipulation [Docket No. 849];

p.    filed, on January 10, 2023, the revised Plan [Docket No. 852];

q.    filed, on January 13, 2023, the revised Disclosure Statement [Docket No. 863];

r.    obtained, on January 13, 2023, entry of the *Order (I) Authorizing Entry into the Asset Purchase Agreement and (II) Granting Related Relief* [Docket No. 775], which granted entry into the asset purchase agreement with Binance.US (the "Asset Purchase Agreement Order");

s.    obtained, on January 13, 2023, entry of the *Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Adequacy of the Debtors' Disclosure Statement, (III) Approving (A) Procedures for Solicitation, (B) Forms of Ballots and Notices, (C) Procedures for Tabulation of Votes and (D) Procedures for Objections* [Docket No. 861] (the "Conditional Disclosure Statement Order") conditionally approving the Disclosure Statement, solicitation procedures (the "Solicitation Procedures"), and solicitation materials, including notices, forms, and ballots (collectively, the "Solicitation Packages");

t.    caused the Solicitation Packages and notice of the Combined Hearing and the deadline for objecting to the Disclosure Statement and to confirmation of the Plan ("Confirmation") to be distributed on or before January 25, 2023 (the "Solicitation Date"), in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), the Disclosure Statement Order, and the

Solicitation Procedures, as evidenced by, among other things, the *Affidavit of Service* [Docket No. 926] and the *Supplemental Affidavit of Service* [Docket Nos. 927 and 1016] (collectively, the "Affidavit of Solicitation");

u.  filed, on February 1, 2023, the *Plan Supplement for the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates* [Docket No. 943] (the "Initial Plan Supplement") and caused notice of the filing of the Initial Plan Supplement to be distributed in accordance with paragraph 12 of the Disclosure Statement Order, as evidenced by, among other things, the *Affidavit of Service* [Docket No. 951];

v.  published, on February 3, 2023, notice of the Combined Hearing (the "Combined Hearing Notice") in the *The New York Times* (National Edition) and *Financial Times* (International Edition), as evidenced by the *Affidavits of Publication* [Docket Nos. 954 and 955] (the "Publication Affidavits" and, together with the Affidavit of Solicitation, the "Affidavits");

w.  filed, on February 8, 2023, the *First Amended Plan Supplement for the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates* [Docket No. 986] (the "First Amended Plan Supplement") and caused notice of the filing of the First Amended Plan Supplement to be distributed in accordance with paragraph 12 of the Disclosure Statement Order, as evidenced by, among other things, the *Affidavit of Service* [Docket No. 992];

x.  filed, on February 15, 2023, the *Second Amended Plan Supplement for the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates* (the "Second Amended Plan Supplement") [Docket No. 1006] and caused notice of the filing of the Second Amended Plan Supplement to be distributed in accordance with paragraph 12 of the Disclosure Statement Order, as evidenced by, among other things, the *Affidavit of Service* [Docket No. 1037];

y.  filed, on February 21, 2023, the *Third Amended Plan Supplement for the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates* (the "Third Amended Plan Supplement") [Docket No. 1035] and caused notice of the filing of the Third Amended Plan Supplement to be distributed in accordance with paragraph 12 of the Disclosure Statement Order, as evidenced by, among other things, the *Affidavit of Service* [Docket No. 1058];

z.  filed, on February 28, 2023, the *Debtors' Motion for Entry of an Order Approving Joint Stipulation and Agreed Order Between the Voyager Debtors, the FTX Debtors, and Their Respective Official Committees of Unsecured Creditors* [Docket No. 1106] (the "FTX Settlement");

aa.  filed, on February 28, 2023, the *Declaration of Leticia Sanchez Regarding the Solicitation and Tabulation of Votes on the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1108];

4

bb.     filed, on February 28, 2023, the *Debtors' Memorandum of Law in Support of (I) Final Approval of the Second Amended Disclosure Statement Relating to the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code and (II) an Order Confirming the Debtors' Third Amended Joint Chapter 11 Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates* [Docket No. 1110] (the "Confirmation Brief");

cc.     filed, on February 28, 2023, the *Declaration of Timothy R. Pohl, Independent Director and Member of the Special Committee of the Board of Directors of Voyager Digital, LLC, in Support of Confirmation of the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1111] (the "Pohl Declaration")

dd.     filed, on February 28, 2023, the *Declaration of Brian Tichenor in Support of Confirmation of the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1113] (the "Tichenor Declaration");

ee.     filed, on February 28, 2023, the *Fourth Amended Plan Supplement for the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates* (the "Fourth Amended Plan Supplement") (together with the Initial Plan Supplement, First Amended Plan Supplement, Second Amended Plan Supplement, and Third Amended Plan Supplement, and as may be modified, amended, or supplemented from time to time, the "Plan Supplement") [Docket No. 1115] and will cause notice of the filing of the Fourth Amended Plan Supplement to be distributed in accordance with paragraph 12 of the Disclosure Statement Order; and

ff.     filed, on February 28, 2023, the revised version of the *Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1117];

gg.     filed, on February 28, 2023, the *Declaration of Mark A. Renzi in Support of Confirmation of the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1119] (the "Renzi Declaration");

hh.     filed, on February 28, 2023, the *Notice of Filing of Proposed Findings of Fact, Conclusions of Law, and Order (I) Approving the Second Amended Disclosure Statement and (II) Confirming the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*;

ii.     filed, on March 1, 2023, the revised version of the *Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1125];

5

jj.  filed, on March 1, 2023, the *Amended Declaration of Leticia Sanchez Regarding the Solicitation and Tabulation of Votes on the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1127] (the "Voting Report");

kk.  filed, on March 2, 2023, the revised version of the *Notice of Filing of Proposed Findings of Fact, Conclusions of Law, and Order (I) Approving the Second Amended Disclosure Statement and (II) Confirming the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1130];

ll.  filed, on March 5, 2023, the revised version of the *Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1138];

mm.  filed, on March 5, 2023, filed the *Supplemental Declaration of Mark A. Renzi in Support of Confirmation of the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1139] (the "Supplemental Renzi Declaration," and, together with the Voting Report, the Pohl Declaration, the Tichenor Declaration, and the Renzi Declaration, the "Declarations"); and

nn.  filed, on March 5, 2023, the revised version of the *Notice of Filing of Proposed Findings of Fact, Conclusions of Law, and Order (I) Approving the Second Amended Disclosure Statement and (II) Confirming the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "Confirmation Order").

The Court having:

a.  entered the Bidding Procedures Order on August 5, 2022 [Docket No. 248];

b.  entered the Asset Purchase Agreement Order on January 13, 2023 [Docket No. 775];

c.  entered the Conditional Disclosure Statement Order on January 13, 2023 [Docket No. 861];

d.  set February 22, 2023, at 4:00 p.m. (prevailing Eastern Time) as the deadline to object to the Disclosure Statement and the Plan and to object to proposed cure costs and any assumption of an Executory Contract or Unexpired Lease pursuant to the *Schedule of Assumed Executory Contracts and Unexpired Leases* (the "Assumed Contract Schedule"), filed as Exhibit A to the Plan Supplement (the "Plan Objection Deadline");

e.  set February 22, 2023, at 4:00 p.m. (prevailing Eastern Time) as the deadline for voting on the Plan (the "Voting Deadline");

6

f.    set March 2, 2023 at 10:00 a.m. (prevailing Eastern Time) as the date and time for the commencement of the Combined Hearing, pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

g.    reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Brief, the Declarations, the Voting Report, the Combined Hearing Notice, the Affidavits, and all filed pleadings, exhibits, statements, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

h.    held the Combined Hearing on March 2, 2023 at 10:00 a.m., prevailing Eastern Time;

i.    heard the statements and arguments made by counsel with respect to final approval of the Disclosure Statement and Confirmation of the Plan;

j.    considered all oral representations, live testimony, written direct testimony, designated deposition testimony, exhibits, documents, filings, and other evidence presented at the Combined Hearing;

k.    overruled any and all objections to the Disclosure Statement and the Plan and to Confirmation and all statements and reservations of rights not consensually resolved, agreed to, or withdrawn, unless otherwise indicated; and

l.    taken judicial notice of all papers and pleadings and other documents filed, all orders entered, and all evidence and arguments presented in these Chapter 11 Cases.

NOW, THEREFORE, the Court having found that the notice of the Combined Hearing and the opportunity for any party in interest to object to approval of the Disclosure Statement and confirmation of the Plan were adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated therein, and that the legal and factual bases set forth in the documents filed in support of approval of the Disclosure Statement and confirmation of the Plan and other evidence presented at the Combined Hearing and the record of the Chapter 11 Cases establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court makes and issues the following findings of fact and conclusions of law, and orders:

## <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.    Findings and Conclusions.**

1.    The findings and conclusions set forth herein and in the record of the Combined Hearing constitute the Court's findings of fact and conclusions of law under rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.    Jurisdiction, Venue, and Core Proceeding.**

2.    The Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012.  The Court has exclusive jurisdiction to determine whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

**C.    Eligibility for Relief.**

3.    The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

**D.    Commencement and Joint Administration of the Chapter 11 Cases.**

4.    On the Petition Date, each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  In accordance with the *Order (I) Directing Joint Administration of the Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 18], these Chapter 11 Cases were consolidated for procedural purposes only and are being jointly

administered pursuant to Bankruptcy Rule 1015. Since the Petition Date, the Debtors have operated their business and managed their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

**E.      Appointment of the Committee.**

5.      On July 19, 2022, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 106].

**F.      Judicial Notice, Objections Overruled.**

6.      The Court takes judicial notice of (and deems admitted into evidence for purposes of final approval of the Disclosure Statement and Confirmation of the Plan) the docket of the Chapter 11 Cases maintained by the clerk of the Court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of these Chapter 11 Cases. All objections, statements, informal objections, and reservations of rights not consensually resolved, agreed to, or withdrawn, if any, related to the Disclosure Statement, the Plan, or Confirmation are overruled on the merits unless otherwise indicated in this Confirmation Order.

**G.      Conditional Disclosure Statement Order.**

7.      On January 13, 2023, the Court entered the Conditional Disclosure Statement Order [Docket No. 861], which, among other things, set (i) February 22, 2023, at 4:00 p.m. (prevailing Eastern Time) as (a) the Plan Objection Deadline and (b) the Voting Deadline and (ii) March 2, 2023, at 10:00 a.m. (prevailing Eastern Time) as the date and time for commencement of the Combined Hearing.

**H.    Adequacy of the Disclosure Statement.**

8.    The Disclosure Statement contains (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations, including the Securities Act, and (b) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein.    The filing of the Disclosure Statement with the clerk of the Court satisfied Bankruptcy Rule 3016(b), and the Disclosure Statement, the Plan, and the Solicitation Packages provided all parties-in-interest with sufficient notice regarding the settlement, release, exculpation, and injunction provisions contained in the Plan in compliance with Bankruptcy Rule 3016(c).

**I.    Burden of Proof—Confirmation of the Plan.**

9.    The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation.

**J.    Notice.**

10.    The Debtors provided due, adequate, and sufficient notice of the Disclosure Statement, the Conditional Disclosure Statement Order, the Plan, the Plan Supplement, the Solicitation Packages, the Combined Hearing Notice, the proposed assumption and rejection of Executory Contracts and Unexpired Leases and the proposed cure amounts, and all the other materials distributed by the Debtors in connection with Confirmation of the Plan, together with the Plan Objection Deadline, the Voting Deadline, and the Combined Hearing, and any applicable bar dates and hearings described in the Conditional Disclosure Statement Order, in compliance with the Bankruptcy Rules, Local Rules, and the procedures set forth in the Disclosure Statement Order.    No other or further notice is or shall be required.

### K.    Solicitation.

11.    Prior to the Combined Hearing, the Debtors filed the Voting Report.  The Voting Report was admitted into evidence during the Combined Hearing.  As described in the Voting Report, the solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable rules, laws, and regulations.

12.    As described in the Voting Report, following the Petition Date, the Solicitation Packages, the Plan Supplement, and the Combined Hearing Notice were transmitted and served, including to all Holders of Claims in Class 3 (Account Holder Claims), Class 4A (OpCo General Unsecured Claims), Class 4B (HoldCo General Unsecured Claims), and Class 4C (TopCo General Unsecured Claims) (collectively, the "Voting Classes") that held a Claim as of January 10, 2023 (the date specified in such documents for the purpose of solicitation) (the "Voting Record Date"), in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, the Disclosure Statement Order, and any applicable nonbankruptcy law.  Transmission and service of the Solicitation Packages and the Combined Hearing Notice were timely, adequate, and sufficient. The establishment and notice of the Voting Record Date were reasonable and sufficient.  No other or further notice is required.

13.    The period during which Holders in the Voting Classes were required to submit acceptances or rejections to the Plan was reasonable and sufficient for such Holders to make an informed decision to accept or reject the Plan.

14.    As set forth in the Plan, Holders of Claims in the Voting Classes were eligible to vote on the Plan in accordance with the Solicitation Procedures.  Holders of Claims in Class 1

11

(Secured Tax Claims) and Class 2 (Other Priority Claims) (collectively, the "Presumed Accepting Classes") are Unimpaired and conclusively presumed to accept the Plan and, therefore, did not vote to accept or reject the Plan.  Holders of Claims in Class 7 (Intercompany Claims) and Interests in Class 8 (Intercompany Interests) either are Unimpaired and conclusively presumed to have accepted the Plan (to the extent reinstated) or Impaired and conclusively deemed to have rejected the Plan, and, therefore, are not entitled to vote to accept or reject the Plan.  Holders of Claims in Class 5 (Alameda Loan Facility Claims) and Class 6 (Section 510(b) Claims) and Interests in Class 9 (Existing Equity Claims) (collectively, the "Deemed Rejecting Classes") are Impaired under the Plan and are deemed to have rejected the Plan.  Nevertheless, the Debtors served Holders in such Deemed Rejecting Classes with the Plan, the Disclosure Statement, the Non-Voting Status Notice, and the Combined Hearing Notice.

## L.    Voting.

15.    As evidenced by the Voting Report, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Conditional Disclosure Statement Order, and any applicable nonbankruptcy law, rule, or regulation.

16.    As evidenced by the Voting Report, Class 3 (Account Holder Claims), Class 4A (OpCo General Unsecured Claims), Class 4B (HoldCo General Unsecured Claims), and Class 4C (TopCo General Unsecured Claims) voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code.

17.    Based on the foregoing, and as evidenced by the Voting Report, at least one Impaired Class of Claims (excluding the acceptance by any insiders of any of the Debtors) has voted to accept the Plan in accordance with the requirements of sections 1124 and 1126 of the Bankruptcy Code.

### M.    Plan Supplement.

18.    The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the filing and notice of the documents included in the Plan Supplement are adequate and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Conditional Disclosure Statement Order, and the facts and circumstances of the Chapter 11 Cases.  No other or further notice is or will be required with respect to the Plan Supplement.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan, compliance with the Bankruptcy Code and the Bankruptcy Rules, and, solely to the extent set forth under the Asset Purchase Agreement, consent of the Purchaser, and in a form reasonably acceptable to the Committee, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement before the Effective Date.

### N.    Modifications to the Plan.

19.    Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan since the commencement of Solicitation described or set forth herein constitute technical changes or changes with respect to particular Claims or Interests made pursuant to the agreement of the Holders of such Claims or Interests and do not materially and adversely affect or change the treatment of any other Claims or Interests. Pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

20.    This Confirmation Order contains modifications to the Plan that were made to address objections and informal comments received from various parties in interest.  Modifications to the Plan since the entry of the Conditional Disclosure Statement Order, if any, are consistent

13

with the provisions of the Bankruptcy Code. The disclosure of any Plan modifications prior to or on the record at the Combined Hearing constitutes due and sufficient notice of any and all Plan modifications. The Plan as modified shall constitute the Plan submitted for Confirmation.

**O.    Bankruptcy Rule 3016.**

21.    The Plan and all modifications thereto are dated and identify the Entities submitting them, thereby satisfying Bankruptcy Rule 3016(a). The Debtors appropriately filed the Disclosure Statement and the Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b). The injunction, release, and exculpation provisions in the Disclosure Statement and the Plan describe, in bold font and with specific and conspicuous language, all acts to be enjoined and identify the entities that will be subject to the injunction, thereby satisfying Bankruptcy Rule 3016(c).

**P.    Compliance with Bankruptcy Code Requirements—Section 1129(a)(1).**

22.    The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code.

**(i)    Proper Classification—Sections 1122 and 1123(a)(1).**

23.    The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. In accordance with sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Interests into eleven Classes. Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests. The classifications were not implemented for any improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Interests. Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class. Accordingly, the Plan satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.

14

       **(ii)**        **Specified Unimpaired Classes—Section 1123(a)(2).**

24.     Article III of the Plan specifies that Claims in Class 1 (Secured Tax Claims) and

Class 2 (Other Priority Claims) are Unimpaired under the Plan and Claims and Interests in Class 7

(Intercompany Claims) and Class 8 (Intercompany Interests), respectively, are either Impaired or

Unimpaired under the Plan.

25.     Article III of the Plan specifies that Claims in the following Classes are Unimpaired

under the Plan within the meaning of section 1124 of the Bankruptcy Code:

| Class | Designation |
|-------|-------------|
| 1 | Secured Tax Claims |
| 2 | Other Priority Claims |

26.     Additionally, Article II of the Plan specifies that Allowed Administrative Claims,

Allowed Professional Fee Claims, Allowed Priority Tax Claims, and all fees due and payable

pursuant to section 1930 of title 28 of the United States Code before the Effective Date will be

paid in full in accordance with the terms of the Plan, although these Claims are not separately

classified under the Plan. Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of

the Bankruptcy Code.

       **(iii)**        **Specified Treatment of Impaired Classes—Section 1123(a)(3).**

27.     The Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

Article III of the Plan specifies that Claims and Interests, as applicable, in the following Classes

(collectively, the "Impaired Classes") are Impaired under the Plan within the meaning of section

1124 of the Bankruptcy Code, and describes the treatment of such Classes.

| Class | Designation |
|-------|-------------|
| 3 | Account Holder Claims |
| 4A | OpCo General Unsecured Claims |
| 4B | HoldCo General Unsecured Claims |
| 4C | TopCo General Unsecured Claims |
| 5 | Alameda Loan Facility Claims |
| 6 | Section 510(b) Claims |
| 9 | Existing Equity Interests |

**(iv)      No Discrimination—Section 1123(a)(4).**

28.      The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.

**(v)      Adequate Means for Plan Implementation—Section 1123(a)(5).**

29.      The Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code. The provisions in Article IV and elsewhere in the Plan and the Plan Supplement, and in the exhibits and attachments to the Disclosure Statement provide, in detail, adequate and proper means for the Plan's implementation, including the:    (a) effectuation of the Restructuring Transactions contemplated by the Plan, the Restructuring Transactions Memorandum, and the Customer Onboarding Protocol; (b) consummation of the Sale Transaction by the Outside Date pursuant to the Asset Purchase Agreement; (c) if the Sale Transaction is not consummated by the Outside Date pursuant to the Asset Purchase Agreement, then the effectuation of the Liquidation Transaction in accordance with the Liquidation Procedures; (d) adoption and implementation of the Employee Transition Plan; (e) retention of certain Claims or Causes of Action held by the Debtors or their Estates, which shall be assigned and transferred to the Wind-Down Debtor after the Effective Date; (f) effectuation of the terms of the D&O Settlement; (g) authorization for the Debtors and the Wind-Down Debtor, as applicable, to take all actions as may be necessary or appropriate to

16

effectuate the Restructuring Transactions and any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan; (h) establishment of the Wind-Down Debtor pursuant to the Plan Administrator Agreement and the transfer of the Wind-Down Debtor Assets to the Wind-Down Debtor after the Effective Date; (i) the funding and sources of consideration for the Plan distributions; and (j) settlement, satisfaction, and compromise of Claims and Interests as set forth in the Plan.

**(vi)     Voting Power of Equity Securities—Section 1123(a)(6).**

30.    Section 1123(a)(6) of the Bankruptcy Code requires that a debtor's corporate constituent documents prohibit the issuance of nonvoting equity securities.  On the Effective Date the Wind-Down Debtor Assets shall, subject to the Plan Administrator Agreement, be transferred to and vest in the Wind-Down Debtor.  The Wind-Down Debtor shall be managed by the Plan Administrator and shall be subject to a Wind-Down Debtor Oversight Committee.  The Plan Administrator shall be responsible for, among other things:  (a) implementing the Wind-Down Debtor, and making distributions contemplated by the Plan; (b) marshalling, marketing for sale, and winding down any of the Debtors' assets constituting Wind-Down Debtor Assets; (c) appointing an independent director at each Debtor to act as a fiduciary for such Debtor entity in connection with the resolution of the Intercompany Claims; (d) overseeing the accounts of the Debtors and the Wind-Down Debtor and the wind-down and dissolution of the Debtors and the Wind-Down Debtor, including effectuating the transactions described in the Restructuring Transactions Memorandum;  (e) receiving, maintaining, conserving, supervising, prosecuting, collecting, settling, managing, investing, protecting, and where appropriate, causing the Wind-Down Debtor to abandon the Wind-Down Debtor Assets, including causing the Wind-Down Debtor to invest any moneys held as Wind-Down Debtor Assets; (f) opening and maintaining bank accounts on behalf of or in the name of the Debtors or the Wind-Down Debtor, including, in the

Plan Administrator's discretion, separate bank accounts for each of the Debtors; (g) entering into any agreement or executing any document or instrument required by or consistent with the Plan, this Confirmation Order, or the Plan Administrator Agreement, and to perform all obligations thereunder; (h) collecting and liquidating all Wind-Down Debtor Assets, including the sale of any Wind-Down Debtor Assets; (i) protecting and enforcing the rights to the Wind-Down Debtor Assets (including any Vested Causes of Action and Contributed Third-Party Claims) vested in the Wind-Down Debtor and Plan Administrator by the Plan Administrator Agreement by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise; (j) investigating any Wind-Down Debtor Assets, and any other potential Vested Causes of Action and Contributed Third-Party Claims; (k) reviewing, reconciling, compromising, settling, objecting, or prosecuting Claims or Interests of any kind; (l) seeking the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004; (m) retaining professionals, disbursing agents, and other agents, independent contractors, and third parties pursuant to the Plan Administrator Agreement and paying the reasonable compensation thereof; (n) paying all lawful expenses, debts, charges, taxes, and other liabilities, and making all other payments relating to the Wind-Down Debtor Assets, solely out of Wind-Down Debtor Assets; (o) prosecuting and settling the Vested Causes of Action, including, without limitation, the 3AC Claims, FTX Claims, Alameda Claims, Contributed Third-Party Claims, and any causes of action not included in the Asset Purchase Agreement or released under the Plan; (p) reviewing, reconciling, pursuing, commencing, prosecuting, compromising, settling, dismissing, releasing, waiving, withdrawing, abandoning, resolving, or electing not to pursue all Vested Causes of Action and Contributed Third-Party Claims; (q) acquiring litigation and other claims related to the Debtors, and prosecuting such claims; (r) reviewing and compelling turnover of the Debtors or the Wind-Down

Debtor's property; (s) calculating and making all Distributions to the holders of Allowed Claims against each Debtor and, solely to the extent of payment in full of Allowed Claims, to holders of Allowed Interests, as provided for in, or contemplated by, the Plan and the Plan Administrator Agreement; *provided* that because the Plan does not substantively consolidate the Debtors' Estates, the Plan Administrator shall make Distributions from the Wind-Down Debtor Assets to the holders of Claims and Interests (if applicable) against that specific Debtor; (t) establishing, administering, adjusting, and maintaining the Wind-Down Reserve and the Disputed Claims Reserve; (u) withholding from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the Plan Administrator has determined, based upon the advice of his agents or professionals, may be required to be withheld from such Distribution under the income tax or other laws of the United States or of any state or political subdivision thereof; (v) in reliance upon the Debtors' Schedules, the official Claims Register maintained in the Chapter 11 Cases and the Debtors' filed lists of equity security holders, reviewing, and where appropriate, allowing or objecting to Claims and (if applicable) Interests, and supervising and administering the commencement, prosecution, settlement, compromise, withdrawal, or resolution of all objections to Disputed Claims and (if applicable) Disputed Interests required to be administered by the Wind-Down Debtor; (w) making all tax withholdings, filing tax information returns, filing and prosecuting tax refunds claims, making tax elections by and on behalf of the Debtors or the Wind-Down Debtor, and filing tax returns for the Debtors or the Wind-Down Debtor pursuant to and in accordance with the Plan, and paying taxes, if any, payable for and on behalf of the Debtors or the Wind-Down Debtor, as applicable; *provided, however*, that notwithstanding any other provision of the Plan Administrator Agreement, the Plan Administrator shall not have any responsibility or personal liability in any capacity whatsoever for the signing or accuracy of the

Debtors' income tax returns that are due to be filed after the Effective Date or for any tax liability

related thereto; (x) abandoning or donating to a charitable organization qualifying under IRC

section 501(c)(3) any Wind-Down Debtor Assets that the Plan Administrator determines to be too

impractical to distribute or of inconsequential value; (y) seeking a determination of tax liability or

refund under Bankruptcy Code section 505; (z) establishing reserves for taxes, assessments, and

other expenses of administration of the Debtors or the Wind-Down Debtor as may be necessary

and appropriate for the proper operation of matters incident to the Debtors or the Wind-Down

Debtor; paying Wind-Down Debtor Expenses; (aa) if the Plan Administrator deems appropriate in

the Plan Administrator's sole discretion, seeking to establish a bar date for filing proofs of Interest

in any Debtor or otherwise to determine the holders and extent of Allowed Interests in any Debtor;

(bb) purchasing and carrying all insurance policies that the Plan Administrator deems reasonably

necessary or advisable and paying all associated insurance premiums and costs; (cc) undertaking

all administrative functions remaining in the Chapter 11 Cases to the extent necessary to carry out

the Debtors', the Wind-Down Debtor's, or the Plan Administrator's duties under the Plan,

including reporting and making required payments of fees to the U.S. Trustee and overseeing the

closing of the Chapter 11 Cases;  (dd) retaining, terminating, appointing, hiring, or otherwise

employees, personnel, management, and directors at any of the Debtors to the extent necessary to

carry out the purposes of the Plan Administrator Agreement and the Plan, including, without

limitation, to address any disputes between the Debtors; (ee) exercising, implementing, enforcing,

and discharging all of the terms, conditions, powers, duties, and other provisions of the Plan, the

Confirmation Order, and the Plan Administrator Agreement; and (ff) taking all other actions

consistent with the provisions of the Plan and the Plan Administrator Agreement that the Plan

Administrator deems reasonably necessary or desirable to administer the Debtors and the

Wind-Down Debtor. Further, on or prior to the Effective Date, the Wind-Down Debtor's organizational documents will be amended to prohibit the issuance of non-voting equity securities. Accordingly, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

>    **(vii)      Directors and Officers—Section 1123(a)(7).**

31.      The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. Article IV.J of the Plan provides that, upon filing of the certificate of dissolution (or equivalent document), the Wind-Down Debtor will be dissolved. Article IV.H of the Plan provides for the formation of the Wind-Down Debtor for the benefit of the Wind-Down Debtor Beneficiaries. The Wind-Down Debtor shall be managed by the Plan Administrator and shall be subject to a Wind-Down Debtor Committee. The selection of the Plan Administrator by the Committee, in consultation with the Debtors, is consistent with the interests of Holders of Claims and Interests and public policy. The appointment of the Plan Administrator identified in the Plan Supplement is approved, and the Plan Administrator's duties shall commence as of the Effective Date. In accordance with the Plan Administrator Agreement, the Plan Administrator shall serve in such capacity through the earlier of (i) the date on which the Wind-Down Debtor is dissolved in accordance with the Plan Administrator Agreement, and (ii) the date on which the Plan Administrator resigns, is terminated, or is otherwise unable to serve; *provided*, *however*, that, in the event that the Plan Administrator resigns, is terminated, or is otherwise unable to serve, the Wind-Down Debtor Oversight Committee shall appoint a successor to serve as the Plan Administrator in accordance with the Plan Administrator Agreement. If the Wind-Down Debtor Oversight Committee does not appoint a successor within the time periods specified in the Plan Administrator Agreement, then the Court, upon the motion of any party-in-interest, including counsel to the Wind-Down Debtor, shall approve a successor to serve as the Plan Administrator. Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

21

**(viii)     Impairment / Unimpairment of Classes—Section 1123(b)(1).**

32.     The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code.  Article III

of the Plan leaves each Class of Claims and Interests Impaired or Unimpaired.

**(ix)     Treatment of Executory Contracts and Unexpired Leases—Section 1123(b)(2).**

33.     The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.  Article V

of the Plan provides that, on the Effective Date, except as otherwise provided in the Plan, each

Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and

assigned, including any employee benefit plans, severance plans, and other Executory Contracts

under which employee obligations arise, shall be deemed automatically rejected pursuant to

sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired

Lease:  (1) is specifically described in the Plan as to be assumed in connection with Confirmation

of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the

Plan or the Plan Supplement; (2) is subject to a pending motion to assume such Unexpired Lease

or Executory Contract as of the Effective Date; (3) is to be assumed by the Debtors or assumed by

the Debtors and assigned to another third party, as applicable, in connection with the Sale

Transaction; (4) is a contract, instrument, release, indenture, or other agreement or document

entered into in connection with the Plan; or (5) is a D&O Liability Insurance Policy other than the

Side-A Policy.  Each of the Debtors' determinations regarding the assumption and rejection of

Executory Contracts and Unexpired Leases is based on and within the sound business judgment

of the Debtors, is necessary to the implementation of the Plan, and is in the best interests of the

Debtors, their Estates, Holders of Claims and Interests, and other parties in interest in these Chapter

11 Cases.

(x)        **Settlement, Releases, Exculpation, Injunction, and Preservation
of Claims and Causes of Action—Section 1123(b)(3).**

34.    The Plan is consistent with section 1123(b)(3) of the Bankruptcy Code.  Except as

otherwise provided in the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy

Rule 9019, and in consideration for the classification, distributions, releases, and other benefits

provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a

good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies

settled, compromised, satisfied, or otherwise resolved pursuant to the Plan.  The Plan is deemed a

motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes

of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of this Confirmation

Order constitutes the Court's approval of such compromise and settlement under section 1123 of

the Bankruptcy Code and Bankruptcy Rule 9019 of all such Claims, Interests, Causes of Action,

and controversies, as well as a finding that such compromise and settlement is fair, equitable,

reasonable, and in the best interests of the Debtors, their Estates, and Holders of Claims and

Interests.  Subject to Article VI of the Plan, all distributions made to Holders of Allowed Claims

and Interests in any Class are intended to be and shall be final.

(xi)        **Additional Plan Provisions—Section 1123(b)(6).**

35.    The other discretionary provisions of the Plan are appropriate and consistent with

the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the

Bankruptcy Code.

Q.    **Debtor Compliance with the Bankruptcy Code—Section 1129(a)(2).**

36.    The Debtors have complied with the applicable provisions of the Bankruptcy Code,

except as otherwise provided or permitted by orders of the Court, and thus, satisfied the

requirements of section 1129(a)(2) of the Bankruptcy Code.  Specifically, each Debtor:

a.  is an eligible debtor under section 109, and a proper proponent of the Plan under section 1121(a), of the Bankruptcy Code; and

b.  complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Local Rules, any applicable nonbankruptcy law, rule and regulation, the Conditional Disclosure Statement Order, and all other applicable law, in transmitting the Solicitation Packages and related documents and notices, and in soliciting and tabulating the votes on the Plan.

**R.    Plan Proposed in Good Faith—Section 1129(a)(3).**

37.    The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  In so determining, the Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan itself, the process leading to Confirmation, including the support of Holders of Claims and Interests for the Plan, and the transactions to be implemented pursuant thereto.  These Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to implement the Restructuring Transactions and maximize the value of the Estates and the recoveries of Holders of Claims and Interests.

**S.    Payment for Services or Costs and Expenses—Section 1129(a)(4).**

38.    The procedures set forth in the Plan for the Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

**T.    Directors, Officers, and Insiders—Section 1129(a)(5).**

39.    Because the Plan provides for the winding down and dissolution of the Debtors, section 1129(a)(5) of the Bankruptcy Code does not apply to the Debtors.  To the extent section 1129(a)(5) applies to the Wind-Down Debtor, the requirements of this provision are satisfied by,

among other things, disclosing the identity and terms of compensation of the Plan Administrator

and the Wind-Down Debtor Oversight Committee.

**U.      No Rate Changes—Section 1129(a)(6).**

40.      Section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11

Cases.  The Plan does not propose any rate change subject to the jurisdiction of any governmental

regulatory commission.

**V.      Best Interest of Creditors—Section 1129(a)(7).**

41.      The Plan is in the best interests of the Debtors' creditors and satisfies the

requirements of section 1129(a)(7) of the Bankruptcy Code.  The liquidation analysis attached to

the Disclosure Statement and the other evidence related thereto in support of the Plan that was

proffered or adduced in the Declarations or at, prior to, or in connection with the Combined

Hearing:  (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or

evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate

methodologies and assumptions; (c) have not been controverted by other evidence; and

(d) establish that Holders of Allowed Claims and Interests in each Class will recover at least as

much under the Plan on account of such Claim or Interest, as of the Effective Date, as such Holder

would receive if the Debtors were liquidated, on the Effective Date, under chapter 7 of the

Bankruptcy Code.

**W.      Acceptance by Certain Classes—Section 1129(a)(8).**

42.      Class 1 (Secured Tax Claims) and Class 2 (Other Priority Claims) are Unimpaired

under the Plan and are deemed to have accepted the Plan pursuant to section 1126(f) of the

Bankruptcy Code.   Class 3 (Account Holder Claims), Class 4A (OpCo General Unsecured

Claims), Class 4B (HoldCo General Unsecured Claims), and Class 4C (TopCo General Unsecured

Claims) are impaired under the Plan and voted to accept the Plan.  Class 5 (Alameda Loan Facility

Claims), Class 6 (Section 510(b) Claims), and Class 9 (Existing Equity Holders) are impaired under the Plan and are deemed to reject the Plan. Because the Plan has not been accepted by the Deemed Rejecting Classes, the Debtors seek Confirmation under section 1129(b), solely with respect to the Deemed Rejecting Classes, rather than section 1129(a)(8) of the Bankruptcy Code. Although section 1129(a)(8) has not been satisfied with respect to the Deemed Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes as described further below. As a result, the requirements of section 1129(b) of the Bankruptcy Code are satisfied.

**X.     Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code—Section 1129(a)(9).**

43.     The treatment of Allowed Administrative Claims, Allowed Professional Fee Claims, and Allowed Priority Tax Claims under Article II of the Plan, and of Allowed Other Priority Claims under Article III of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**Y.     Acceptance by At Least One Impaired Class—Section 1129(a)(10).**

44.     The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As evidenced by the Voting Report, the Voting Classes voted to accept the Plan by the requisite numbers and amounts of Claims, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code), specified under the Bankruptcy Code.

**Z.     Feasibility—Section 1129(a)(11).**

45.     The Plan satisfies section 1129(a)(11) of the Bankruptcy Code. The evidence supporting the Plan proffered or adduced by the Debtors at or before the Combined Hearing: (a) is

reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) has not been controverted by other persuasive evidence; (c) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization; (d) establishes that the Distribution Agent, or the Wind-Down Debtor, as applicable, will have sufficient funds available to meet their obligations under the Plan—including sufficient amounts of Cash, Cryptocurrency, or other consideration, as applicable, to reasonably ensure payment of, among other things, Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Account Holder Claims, and Allowed General Unsecured Claims, as applicable, pursuant to the terms of the Plan and in accordance with section 507(a) of the Bankruptcy Code; and (e) establishes that the Wind-Down Debtor will have the financial wherewithal to satisfy their obligations following the Effective Date.

**AA.    Payment of Statutory Fees—Section 1129(a)(12).**

46.    The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code. Article XII.C of the Plan provides for the payment of all fees due and payable under 28 U.S.C. § 1930 by each of the Wind-Down Debtor (or the Distribution Agent on behalf of the Wind-Down Debtor).

**BB.    Continuation of Employee Benefits—Section 1129(a)(13).**

47.    The Debtors do not have any remaining obligations to pay retiree benefits (as defined in section 1114 of the Bankruptcy Code). Therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases or the Plan.

**CC.    Non-Applicability of Certain Sections—Sections 1129(a)(14), (15), and (16).**

48.    Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.  The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.

**DD.    "Cram Down" Requirements—Section 1129(b).**

49.    The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that the Deemed Rejecting Classes have not accepted the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code.  *First*, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met.  *Second*, the Plan is fair and equitable with respect to Class 5 (Alameda Loan Facility Claims), Class 6 (Section 510(b) Claims), and Class 9 (Existing Equity Interests).  The Plan has been proposed in good faith, is reasonable, and meets the requirements that (a) no Holder of any Claim or Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Interest, and (b) no Holder of a Claim or Interest in a Class senior to such Classes is receiving more than payment in full on account of its Claim or Interest. Specifically, to the extent Class 8 (Intercompany Interests) are Reinstated, such treatment is provided for administrative convenience and efficiency, and not on account of such Interests, and will not alter the treatment provided for any other Holder of any Claim or Interest.  Further, Class 7 (Intercompany Claims) will receive the treatment as determined by the Court.  Accordingly, the Plan is fair and equitable towards all Holders of Claims and Interests in the Deemed Rejecting Classes.  *Third*, the Plan does not discriminate unfairly with respect to the Deemed Rejecting Classes because similarly situated Claim and Interest Holders will receive substantially similar treatment on account of their Claims or Interests, as applicable, in such class.  Therefore, the Plan may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

28

### EE.    Only One Plan—Section 1129(c).

50.    The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code. The Plan is the only chapter 11 plan filed in each of these Chapter 11 Cases.

### FF.    Principal Purpose of the Plan—Section 1129(d).

51.    The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

### GG.    Not Small Business Cases—Section 1129(e).

52.    The Chapter 11 Cases are not small business cases and, accordingly, section 1129(e) of the Bankruptcy Code does not apply to the Chapter 11 Cases.

### HH.    Good Faith Solicitation—Section 1125(e).

53.    The Debtors have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to support and consummation of the Plan, including the solicitation and receipt of acceptances of the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

### II.    Satisfaction of Confirmation Requirements.

54.    Based on the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

### JJ.    Likelihood of Satisfaction of Conditions Precedent to the Effective Date.

55.    Each of the conditions precedent to the Effective Date, as set forth in Article IX.A of the Plan, has been or is reasonably likely to be satisfied or, as applicable, waived in accordance with Article IX.B of the Plan.

**KK.    Implementation.**

56.    All documents and agreements necessary to implement the transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement, and all other relevant and necessary documents (including the Asset Purchase Agreement) have been negotiated in good faith and at arm's length, are in the best interests of the Debtors, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and shall not be in conflict with any federal, state, or local law.  The Debtors are authorized to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby.

**LL.    Executory Contracts and Unexpired Leases.**

57.    The Debtors' decisions to assume or reject certain Executory Contracts and Unexpired Leases, as provided in Article V of the Plan and in the Plan Supplement, are reasonable exercises of the Debtors' business judgment.  The Debtors have demonstrated adequate assurance of future performance of the assumed Executory Contracts and Unexpired Leases within the meaning of section 365(b)(1)(C) of the Bankruptcy Code by the Wind-Down Debtor.

58.    Except with respect to the Executory Contracts and Unexpired Leases discussed in the following paragraph of this Confirmation Order, the amounts set forth in the Plan Supplement (the "Cure Amounts") are the sole amounts necessary to be paid upon assumption of the associated Executory Contracts and Unexpired Leases under section 365(b)(1)(A) and (B) of the Bankruptcy Code, and the payment of such amounts will effect a cure of all defaults existing under such Executory Contracts and Unexpired Leases and compensate the counterparties to such Executory Contracts and Unexpired Leases for any actual pecuniary loss resulting from all defaults existing under such Executory Contracts and Unexpired Leases as of the Effective Date.

59.     The objections of counterparties to the assumption of their Executory Contracts and Unexpired Leases, to the extent that such objection was timely raised in accordance with Article V.C of the Plan, are preserved and will be considered by the Court at a date and time to be scheduled.   As provided in the Conditional Disclosure Statement Order and the Solicitation Packages, the Debtors and the Wind-Down Debtor have reserved the right to (a) add any Executory Contract or Unexpired Lease to the Assumed Contract Schedule and assume such Executory Contract or Unexpired Lease pursuant to the terms of the Plan, or remove any Executory Contract or Unexpired Lease from the Assumed Contract Schedule, in each case, up until the Effective Date and (b) contest any Claim asserted in connection with rejection of any Executory Contract or Unexpired Lease.

## MM.    Disclosure of Facts.

60.     The Debtors have disclosed all material facts regarding the Plan, including with respect to consummation of the Sale Transaction and the Liquidation Transaction, as applicable.

## NN.    Appropriate Exercise of Business Judgment.

61.     The Debtors' decision to effectuate the Sale Transaction or the Liquidation Transaction, as applicable, is an appropriate exercise of their business judgment.

## OO.    Good Faith.

62.     The Debtors, the Released Parties, and the Releasing Parties have been and will be acting in good faith if they proceed to:  (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed by this Confirmation Order to wind-down the Debtors' businesses and effect the Sale Transaction or the Liquidation Transaction, as applicable, and the other Restructuring Transactions.   The Released Parties have made a substantial contribution to these Chapter 11 Cases.

**PP.    Essential Elements of the Plan.**

63.    The Sale Transaction is an essential element of the Plan, and consummation of the Sale Transaction is in the best interests of the Debtors, their estates, and their creditors. The Debtors have exercised sound business judgment in selecting the Purchaser and the Debtors have done so without collusion and in good faith.  The Purchaser is consummating the Sale Transaction in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code.  The Purchaser has proceeded in good faith and without collusion in all respects in connection with the Sale Transaction.  The Purchaser is therefore entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code, and the Sale Transaction, to the extent consummated, may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

64.    The Debtors' marketing process with respect to the Sale Transaction afforded a full, fair, and reasonable opportunity for any party to make a higher or otherwise better offer.  No other party or parties has offered to purchase the Acquired Assets for greater overall value to the Debtors' Estates than the Purchaser.  The Asset Purchase Agreement will provide a greater recovery for the Debtors' Estates than would be provided by any other available alternative.  The Debtors' determination that the Sale Transaction is the most value-maximizing transaction is a valid and sound exercise of the Debtors' business judgment.  Consummation of the Sale Transaction is in the best interests of the Debtors' Estates, their creditors, and other parties in interest.

65.    The consideration provided by the Purchaser pursuant to the Asset Purchase Agreement (a) is fair and reasonable, (b) constitutes the best offer for the Acquired Assets, and (c) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy

Code) and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

66.    The Purchaser is not a mere continuation or substantial continuation of the Debtors or their Estates and there is no continuity of enterprise or common identity between the Purchaser and any of the Debtors.  The Purchaser is not holding itself out to the public as a continuation of any of the Debtors.  The Purchaser is not a successor to the Debtors or their Estates by reason of any theory of law or equity, and the Sale Transaction does not amount to a consolidation, merger, or de facto merger of the Purchaser with or into any of the Debtors.  The Purchaser has entered into the Asset Purchase Agreement in material reliance on and with fair consideration provided for the Sale Transaction being free and clear of all claims and interests relating to the Debtors arising prior to the closing of the Sale Transaction, including any successor or vicarious liabilities of any kind or nature, as set forth herein and in the Asset Purchase Agreement, and would not have entered into the Asset Purchase Agreement or the Sale Transaction without such terms and the findings herein.

67.    The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtors may sell, and upon the Closing of the Sale Transaction shall be deemed to have sold, assets and property pursuant to the Asset Purchase Agreement free and clear of any claims, liens, encumbrances, or other interests of any kind or nature whatsoever other than as expressly provided under the Asset Purchase Agreement.  In addition to and without limiting the foregoing, the proposed Sale Transaction is to be consummated under the Plan, and the assets and property to be sold pursuant to the Sale Transaction are dealt with by the Plan; therefore, except as expressly provided under the Asset Purchase Agreement, the Debtors may sell, and upon the Closing of the Sale Transaction shall be deemed to have sold, assets and property pursuant to the

33

Asset Purchase Agreement free and clear of any claims, liens, encumbrances, or other interests of any kind or nature whatsoever pursuant to section 1141(c) of the Bankruptcy Code.

68.     The Debtors may sell, and upon the Closing of the Sale Transaction shall be deemed to have sold, such assets free and clear of all claims, liens, encumbrances, and other interests of any kind or nature whatsoever (other than as expressly permitted under the Asset Purchase Agreement) because, in each case, one or more of the standards set forth in sections 363(f)(l)–(5), 1129(b)(2)(A)(ii), 1141(a), or 1141(c) of the Bankruptcy Code has been satisfied. All holders of such claims, liens, encumbrances, or other interests against the Debtors, their Estates, or any of the assets subject to the Sale Transaction (a) who did not object, or who withdrew their objections, to the Sale Transaction are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code and (b) are bound by the Plan pursuant to section 1141(a) of the Bankruptcy Code.  All holders of such claims, liens, encumbrances, or other interests are adequately protected by having their claims, liens, encumbrances, or other interests, if any, in each instance against the Debtors, their Estates, or any of the assets subject to the Sale Transaction, attach to the proceeds of the Sale Transaction ultimately attributable to the assets in which such creditor alleges a claim, lien, encumbrance, or other interest, in the same order of priority, with the same validity, force, and effect that such claim, lien, encumbrance, or other interest had prior to consummation of the Sale Transaction, subject to any claims and defenses the Debtors and their Estates may possess with respect thereto, and with such claims, liens, encumbrances, or other interests being treated in accordance with the Plan.

69.     Article VIII.A of the Plan describes certain releases granted by the Debtors, the Wind-Down Debtor, and the Debtors' and the Wind-Down Debtor's Estates (the "Debtor Release").  The Debtors have satisfied the business judgment standard with respect to the propriety

of the Debtor Release.  Such release is a necessary and integral element of the Plan, and is fair, reasonable, and in the best interests of the Debtors, the Debtors' Estates, and Holders of Claims and Interests.  The Debtors', the Wind-Down Debtor's and their Estates' pursuit of any such claims against the Released Parties is not in the best interests of the Estates' various constituencies because the costs involved would likely outweigh any potential benefit from pursuing such claims. Additionally, including for the reasons set forth in the Declarations, the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by the Released Parties following extensive, arm's-length negotiations between sophisticated parties represented by able counsel; (b) a good-faith settlement and compromise of such Causes of Action released by the Debtor Release, which bore a substantial likelihood of complex and protracted litigation, with attendant expense, inconvenience, and delay; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; (f) a sound exercise of the Debtors' business judgment; and (g) except to the extent contemplated by Article IV.F of the Plan, a bar to any of the Debtors, the Wind-Down Debtor or their Estates asserting any Cause of Action related thereto, of any kind, against any of the Released Parties or their property.

70.    Article IV.G of the Plan describes the D&O Settlement.  The D&O Settlement constitutes a good-faith compromise and settlement of all Claims, Causes of Action, disputes, and controversies released, settled, compromised, or otherwise resolved between the Debtors and the CEO and CCO.  The D&O Settlement is fair, equitable, and reasonable and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.

71.    Article VIII.B of the Plan describes certain releases granted by the Releasing Parties (the "Third-Party Release").  The Third-Party Release provides finality for the

Debtors, the Wind-Down Debtor, and the other Released Parties. The Third-Party Release is consensual with respect to the Releasing Parties. The Combined Hearing Notice sent to Holders of Claims and Interests and published in *The New York Times* (National Edition) and the *Financial Times* (International Edition) on February 3, 2023, and the ballots and notices, as applicable, sent to Holders of Claims and Interests unambiguously stated that the Plan contains the Third-Party Release and that each Holder of Claims or Interests may elect not to grant such Third-Party Release. Such release provisions of the Plan were conspicuous, emphasized with boldface type in the Plan, the Disclosure Statement, and the ballots and notices. Among other things, the Plan provides appropriate and specific disclosure with respect to the claims and Causes of Action that are subject to the Third-Party Release, and no other disclosure or notice is necessary. The Third-Party Release is a necessary and integral element of the Plan, and is fair, equitable, reasonable, and in the best interests of the Debtors, the Debtors' Estates, and all Holders of Claims and Interests. Also, the Third-Party Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good-faith settlement and compromise of such the Claims released by the Third-Party Releases; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; (f) a sound exercise of the Debtors' business judgment; and (g) except to the extent contemplated by Article IV.E and Article IV.F of the Plan, a bar to any of the Debtors or Wind-Down Debtor or their respective Estates asserting any Cause of Action related thereto, of any kind, against any of the Released Parties or their property.

72. The Third-Party Releases are consensual and those Holders of Claims and Interests who are bound by the Third-Party Releases voluntarily opted-in to the Third-Party Releases. The Plan does not release any third party's direct claims against non-Debtors (to the extent such direct

claims exist) without such third party's express consent.  Holders of Claims and Interests also had the ability to affirmatively elect to "contribute" their claims to the Wind-Down Debtor and vest the Wind-Down Debtor with authority to pursue such claims against the Debtors.

73.    The exculpation described in Article VIII.C of the Plan (the "Exculpation") is appropriate under applicable law because it was proposed in good faith, was formulated following extensive good-faith, arm's-length negotiations with key constituents, and is appropriately limited in scope.  Without limiting anything in the Exculpation, each Exculpated Party has participated in these Chapter 11 Cases in good faith and, except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated as set forth in the Plan; *provided* that the foregoing "Exculpation" shall have no effect on the liability of any entity that results from any such act or omission that is determined by a Final Order to have constituted actual fraud, gross negligence, or willful misconduct, but in all respects such entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have participated in any and all activities potentially underlying any claim related to the Exculpation provision in good faith and in compliance with the applicable laws, including distribution of Cryptocurrency in accordance with the Plan and the Asset Purchase Agreement.  The Exculpation, including its carve-out for actual fraud, gross negligence, or willful misconduct, is consistent with established practice in this jurisdiction and others.

74.    The injunction provision set forth in Article VIII.D of the Plan is necessary to prevent interference with the payment of Claims and Interests in the manner set forth in the Plan and is narrowly tailored to achieve these purposes.

75.     Article IV.P of the Plan provides that, in accordance with section 1123(b)(3) of the Bankruptcy Code, any Cause of Action that a Debtor may hold against any Entity shall vest in the Wind-Down Debtor, except as otherwise provided in the Plan, including Article VIII of the Plan. The Wind-Down Debtor, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Wind-Down Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Court in accordance with the Plan. The provisions regarding the preservation of Causes of Action in the Plan, including the Plan Supplement, are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Debtors' estates, and Holders of Claims and Interests.

76.     The full release and discharge of all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates described in Article VIII.E of the Plan (the "Lien Release") is necessary to implement the Plan. The provisions of the Lien Release are appropriate, fair, equitable, and reasonable and are in the best interests of the Debtors, the Debtors' estates, and Holders of Claims and Interests.

## ORDER

BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

77.     **Findings of Fact and Conclusions of Law.** The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made

applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

78.    **Approval of the Disclosure Statement.**    The Disclosure Statement, the Solicitation Packages, and the Solicitation Procedures are approved on a final basis pursuant to section 1125 of the Bankruptcy Code.

79.    **Solicitation.**  To the extent applicable, the solicitation of votes on the Plan complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations, and was appropriate and satisfactory and is approved in all respects.

80.    **Notice of Combined Hearing.**  The Notice of Combined Hearing was appropriate and satisfactory and is approved in all respects.

81.    **Confirmation of the Plan.**  The Plan is approved in its entirety and CONFIRMED under section 1129 of the Bankruptcy Code.  The terms of the Plan, including the Plan Supplement, are incorporated by reference into and are an integral part of this Confirmation Order.

82.    **Objections.**  All objections and all reservations of rights pertaining to Confirmation of the Plan and approval of the Disclosure Statement that have not been withdrawn, waived, or consensually resolved are overruled on the merits unless otherwise indicated in this Confirmation Order.  All withdrawn objections, if any, are deemed withdrawn with prejudice. All objections to approval of the Disclosure Statement and Confirmation of the Plan not filed and served prior to the Objection Deadline, if any, are deemed waived and shall not be considered by the Court.

83.    All parties have had a full and fair opportunity to litigate all issues raised or that might have been raised in the objections to approval of the Disclosure Statement and Confirmation

of the Plan, and the objections have been fully and fairly litigated or resolved, including by agreed-upon reservations of rights as set forth in this Confirmation Order.

84.     **Plan Modifications.**  The Plan Modifications do not materially adversely affect the treatment of any Claim against or Interest in any of the Debtors under the Plan, and are hereby approved pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019.  After giving effect to the Plan Modifications, the Plan continues to meet the requirements of sections 1122 and 1123 of the Bankruptcy Code.  The filing with the Court on February 28, 2023 of the modifications to the Plan and the disclosure of any additional Plan Modifications on the record at the Combined Hearing constitute due and sufficient notice thereof.  Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

85.     **Deemed Acceptance of Plan.**  In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims and Interests who voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan, as modified by the Plan Modifications.  No Holder of a Claim or Interest shall be permitted to change its vote as a consequence of the Plan Modifications.

86.     **Restructuring Transactions**.  On or before the Effective Date, the applicable Debtors will take any action as may be necessary or advisable to effectuate the Restructuring Transactions described in the Plan, the Restructuring Transactions Memorandum, and the Customer Onboarding Protocol, including:  (a) the execution and delivery of any appropriate

agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (d) the transfer or distribution of any Cryptocurrency or Cash pursuant to the Asset Purchase Agreement and the Plan, as applicable; (e) the execution and delivery of the Plan Administrator Agreement; (f) any transactions necessary or appropriate to form the Wind-Down Debtor; (g) such other transactions that are required to effectuate the Restructuring Transactions, including any sales, mergers, consolidations, restructurings, conversions, dispositions, transfers, formations, organizations, dissolutions, or liquidations; (h) all transactions necessary to provide for the purchase of the Acquired Assets by Purchaser under the Asset Purchase Agreement; and (i) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

87.    This Confirmation Order shall, and shall be deemed to, pursuant to sections 1123 and 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including, as applicable, the Sale Transaction, the Liquidation Transaction, and the Restructuring Transactions, including, for the avoidance of doubt, entry into any agreements following the Confirmation Date by the Debtors, the Purchaser, and any of the Unsupported Jurisdictions in connection with Distributions contemplated to be made by Purchaser

to Users and Eligible Creditors (as such terms are defined in the Asset Purchase Agreement) located in Unsupported Jurisdictions, pursuant to and in accordance with the Plan and the Asset Purchase Agreement.

88.    **The Sale Transaction.** The Sale Transaction and the Asset Purchase Agreement, all other ancillary documents, and all of the terms and conditions thereof, are hereby approved, pursuant to sections 105, 363, 364, and 554 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014, each as applicable. Entry of this Confirmation Order shall authorize the Debtors, the Purchaser, and the Wind-Down Debtor, as applicable, to undertake the transactions contemplated by the Asset Purchase Agreement, as applicable, including pursuant to sections 363, 365, 1123(a)(5)(B), and 1123(a)(5)(D) of the Bankruptcy Code.

89.    Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Sale Transaction pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement, (b) close the Sale Transaction as contemplated in the Asset Purchase Agreement, and (c) execute and deliver, perform under, consummate, implement, and fully close the Asset Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement and the Sale Transaction.

90.    Subject to the restrictions set forth in this Confirmation Order, the Plan, and the Asset Purchase Agreement, the Debtors and the Purchaser hereby are authorized to take any and all actions as may be necessary or desirable, including any actions that otherwise would require further approval by shareholders, members, or its board of directors, as the case may be, without the need of obtaining such approvals, to implement the Sale Transaction, and any actions taken by

the Debtors or the Purchaser necessary or desirable to implement the Sale Transaction prior to the date of this Confirmation Order, hereby are approved and ratified.

91.     This Confirmation Order and the terms and provisions of the Asset Purchase Agreement shall be binding in all respects upon the Debtors, their affiliates, their estates, all creditors of and holders of equity interests in any Debtor, any holders of Liens, Claims, or other interests (whether known or unknown) in, against, or on all or any portion of the Acquired Assets, all counterparties to any executory contract or unexpired lease of the Debtors, the Purchaser and all successors and assigns of the Purchaser, the Acquired Assets, and any trustees, examiners, or receivers, if any, subsequently appointed in any of the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Debtors' cases.   This Confirmation Order and the Asset Purchase Agreement shall inure to the benefit of the Debtors, their estates and creditors, the Purchaser, and the respective successors and assigns of each of the foregoing.

92.     Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Acquired Assets in accordance with the terms of the Asset Purchase Agreement and such transfer shall constitute a legal, valid, binding, and effective sale of the Acquired Assets and shall vest Purchaser with title to the Acquired Assets subject to the Asset Purchase Agreement, and the Acquired Assets shall be free and clear of all Liens, Claims, Encumbrances, and other interests of any kind or nature whatsoever (other than as expressly permitted under the Asset Purchase Agreement), with all such Liens, Claims, or other interests to attach to the cash proceeds of the Purchase Price ultimately attributable to the property against or in which such Liens, Claims, or other interests are asserted, subject to the terms thereof, with the same validity, force, and effect, and in the same order of priority, which such Liens,

43

Claims, or other interests had prior to the Transaction, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

93.     The sale of the Acquired Assets to the Purchaser pursuant to the Asset Purchase Agreement and the consummation of the transactions contemplated by the Asset Purchase Agreement do not require any consents other than as specifically provided for in the Asset Purchase Agreement.  Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.  A certified copy of this Confirmation Order may be filed with the appropriate clerk or recorded with the recorder of any state, county, or local authority to act to cancel any of the Liens, Claims, and other encumbrances of record.

94.     If any person or entity that has filed statements or other documents evidencing Claims or Liens on, or interests in, all or any portion of the Acquired Assets shall not have delivered to the Debtors, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Claims, Liens, or interests which the person or entity has or may assert with respect to all or any portion of the Acquired Assets, the Debtors are hereby authorized, and the Purchaser is hereby authorized, on behalf of the Debtors and the Debtors' creditors, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Acquired Assets.  The Debtors and the Purchaser are each authorized to file a copy of this Confirmation Order, which, upon filing, shall be conclusive evidence of the release and termination of such Claim, Lien or interest.

95.     This Confirmation Order is and shall be binding upon and govern the acts of all

persons and entities, including, without limitation, all filing agents, filing officers, title agents, title

companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative

agencies, governmental departments, secretaries of state, federal, state, and local officials, and all

other persons and entities who may be required by operation of law, the duties of their office, or

contract, to accept, file, register, or otherwise record or release any documents or instruments; and

each of the foregoing persons and entities is hereby directed to accept for filing any and all of the

documents and instruments necessary and appropriate to consummate the transactions

contemplated by the Asset Purchase Agreement.

96.     All persons and entities that are presently, or on the Closing may be, in possession

of some or all of the Acquired Assets pursuant to the Asset Purchase Agreement are hereby

directed to surrender possession of the Acquired Assets to the Purchaser unless such person or

entity was a good faith, bona fide purchaser of the Acquired Assets without notice of the Debtors'

rights in such property.   Subject to the terms, conditions, and provisions of this Confirmation

Order, all persons and entities are hereby forever prohibited and enjoined from taking any action

that would adversely affect or interfere with the ability of the Debtors to sell and/or transfer the

Acquired Assets to the Purchaser in accordance with the terms of the Asset Purchase Agreement

and this Confirmation Order.

97.     Except as otherwise permitted by the Asset Purchase Agreement, the Plan, or this

Confirmation Order, all persons and entities, including, but not limited to, all debt security holders,

equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors,

litigation claimants, and other creditors, holding Liens, Claims, or other interests of any kind or

nature whatsoever against or in all or any portion of the Acquired Assets (whether legal or

45

equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated

or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way

relating to the Debtors, the Acquired Assets, the operation of the Debtors' business prior to the

closing of the Sale Transaction, or the transfer of the Acquired Assets to the Purchaser, hereby are

forever barred, estopped and permanently enjoined from asserting against the Purchaser, any of

the foregoing's affiliates, successors, or assigns, their property or the Acquired Assets, such

persons' or entities' Liens, Claims, or interests in and to the Acquired Assets, including, without

limitation, the following actions:  (a) commencing or continuing in any manner any action or other

proceeding against the Purchaser and each of its affiliates, successors, assets or properties;

(b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or

order against the Purchaser and each of its affiliates, successors, assets, or properties; (c) creating,

perfecting, or enforcing any Lien or other Claim against the Purchaser and each of its affiliates,

successors, assets, or properties; (d) asserting any setoff, right of subrogation, or recoupment of

any kind against any obligation due the Purchaser, its affiliates or its successors; or (e)

commencing or continuing any action, in any manner or place, that does not comply or is

inconsistent with the provisions of this Confirmation Order, or the agreements or actions

contemplated or taken in respect thereof.

98.     All persons and entities are hereby forever prohibited and enjoined from taking any

action that would adversely affect or interfere with the ability of the Debtors to sell and transfer

the Acquired Assets to the Purchaser in accordance with the terms of the Asset Purchase

Agreement, the Plan, and this Confirmation Order.

99.     Purchaser shall have no Liability (as defined in the Asset Purchase Agreement) for

any Excluded Liability, and, other than as expressly set forth in the Asset Purchase Agreement,

Purchaser is not assuming, by virtue of the consummation of the Sale Transaction, nor shall the Purchaser be liable or responsible for, as a successor or otherwise (including under any theory of successor or vicarious liability of any kind or character or any other theory of law or equity, including any theory of antitrust, environmental successor or transferee liability, labor law, *de facto* merger, or substantial continuity (including under applicable Money Transmitter Requirements or any securities or commodities Laws of any Governmental Body)):

> (i)    any Liability (as defined in the Asset Purchase Agreement), debts, commitments, or obligations of the Debtors or any of their predecessors or affiliates or any obligations of the Debtors or their predecessors or affiliates, in all cases whether known or unknown, disclosed or undisclosed, now existing or hereafter arising, asserted or unasserted, fixed or contingent, choate or inchoate, liquidated or unliquidated, and in all cases to the extent relating to or arising from, in any way whatsoever, the Acquired Assets or the Debtors' operation of their businesses or use of the Acquired Assets or any such liabilities, debts, commitments, or obligations that in any way whatsoever are to be observed, paid, satisfied, compromised, or performed (in each case, including any liabilities that result from, relate to or arise out of tort or product liability claims), or

> (ii)    any Liability (as defined in the Asset Purchase Agreement) calculable by reference to the Debtors or their assets or operations, or relating to the operation of the Debtors' businesses prior to the Closing of the Sale Transaction, or relating to continuing conditions existing, including with respect to any of Debtors' predecessors or affiliates, which liabilities, debts,

commitments, and obligations are hereby extinguished insofar as they may give rise to successor liability, without regard to whether the claimant asserting any such liabilities, debts, commitments, or obligations has delivered to the Purchaser a release thereof.

For the avoidance of doubt, (i) nothing herein shall release the Purchaser with respect to its obligations as Distribution Agent of Cryptocurrency and Cash to Holders of Account Holder Claims and OpCo General Unsecured Creditor Claims as provided in, and subject to the terms and conditions of, the Asset Purchase Agreement and the Plan, and (ii) notwithstanding the transfer to Purchaser, pursuant to the Asset Purchase Agreement, of any Acquired Assets that constitute Coins or Cash, each User and Eligible Creditor shall retain, from and after the Closing of the Sale Transaction, all right, title, and interest in and to such Coins and Cash allocated to it on the Binance.US Platform in accordance with the Asset Purchase Agreement (notwithstanding any terms and conditions of the Binance.US Platform to the contrary, if any) through and including such time as such Coins and Cash are returned or distributed to Seller or such User and Eligible Creditor, as applicable, and such Coins and Cash shall be held by Purchaser solely in a custodial capacity in trust and solely for the benefit of Seller or the applicable User or Eligible Creditor thereafter.

100.    The Asset Purchase Agreement and any related documents or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court.

101.    Paragraphs 88–100 of this Confirmation Order shall be deemed to be excised from this Confirmation Order in the event that the Asset Purchase Agreement is terminated prior to Closing.  For the avoidance of doubt, subject to the requirements set forth in the Asset Purchase

Agreement (including, without limitation, Sections 6.22 and 5.2(c) thereof), the Debtors may exercise the "fiduciary out" in Section 8.1(g) of the Asset Purchase Agreement at any time prior to Closing.

102. **Corporate Action.**  Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, directors, managers, managing-members, limited or general partners, or officers of the Debtors, the Wind-Down Debtor, or any other Entity.

103. All matters provided for in the Plan involving the corporate structure of the Debtors or the Wind-Down Debtor, as applicable, and any corporate action required by the Debtors or the Wind-Down Debtor, as applicable, in connection with the Plan shall be deemed to have occurred on, and shall be in effect as of, the Effective Date, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Wind-Down Debtor, as applicable.  On or, as applicable, prior to the Effective Date, the appropriate officers of the Debtors or the Wind-Down Debtor, as applicable, shall be authorized and, as applicable, directed to issue, execute, and deliver the agreements, documents, certificates of incorporation, certificates of formation, bylaws, operating agreements, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Wind-Down Debtor, and any and all other agreements, documents, and instruments relating to the foregoing.  The authorizations and approvals contemplated by Article IV.J of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

104. As soon as practicable after the Effective Date, the Wind-Down Debtor shall take such actions as the Wind-Down Debtor may determine to be necessary or desirable to carry out

the purposes of the Plan.  Any certificate of dissolution or equivalent document may be executed by the Wind-Down Debtor on behalf of any Wind-Down Debtor without need for any action or approval by the shareholders or board of directors or managers of such Debtor.  On and after the Effective Date, the Debtors or the Wind-Down Debtor (1) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (2) shall be deemed to have cancelled pursuant to the Plan all Interests, and (3) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.  Pursuant to the terms of the Plan, any Money Transmitter Licenses that have not been terminated shall be deemed withdrawn and no further action is required to be taken by the Debtors or the Wind-Down Debtor to effectuate such withdrawal; *provided* that, following the Effective Date, the Debtors or the Wind-Down Debtor, as applicable, shall use commercially reasonable efforts to comply with all state banking department requirements for the surrender of a Money Transmitter License.  Notwithstanding such Debtors' dissolution, such Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

105.    **Binding Effect.**  Upon the occurrence of the Effective Date, the terms of the Plan are immediately effective and enforceable and deemed binding on the Debtors, the Wind-Down Debtor, any and all Holders of Claims or Interests (regardless of whether such Holders of Claims or Interests have, or are deemed to have, accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan or this Confirmation Order, and any and all non-Debtor

50

parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

106.    Pursuant to section 1141 of the Bankruptcy Code, subject to the occurrence of the Effective Date and subject to the terms of the Plan and this Confirmation Order, all prior orders entered in these Chapter 11 Cases and all documents and agreements executed by the Debtors as authorized and directed thereunder as of the Effective Date shall be binding upon and shall inure to the benefit of the Debtors, the Purchaser, or the Wind-Down Debtor, as applicable, and their respective successors and assigns.

107.    **Vesting of Assets.**  Except as otherwise provided in the Plan, this Confirmation Order, the Asset Purchase Agreement, the Schedule of Retained Causes of Action, or in any agreement, instrument, or other documented incorporated herein or therein, or in any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, notwithstanding any prohibition of assignability under applicable non-bankruptcy law and in accordance with section 1141 of the Bankruptcy Code, on the Effective Date, all property constituting Wind-Down Debtor Assets, including all Vested Causes of Action of the Debtors (unless otherwise released, waived, compromised, settled, satisfied, or transferred pursuant to the Plan) shall vest in the Wind-Down Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.

108.    Prior to the Effective Date, any and all of the Debtors' assets shall remain assets of the Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and on the Effective Date the Wind-Down Debtor Assets shall, subject to the Plan Administrator Agreement, be transferred to and vest in the Wind-Down Debtor.  For the avoidance of doubt, to the extent not otherwise waived in writing, released, settled, compromised, assigned, or sold pursuant to a prior order or

51

the Plan, the Plan Administrator specifically retains and reserves the right to assert, after the Effective Date, any and all of the Vested Causes of Action and related rights, whether or not asserted as of the Effective Date, and all proceeds of the foregoing, subject to the terms of the Plan, including without limitation Article IV.F.

109.    Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, only the Wind-Down Debtor and the Plan Administrator shall have the right to pursue or not to pursue, or, subject to the terms hereof and the Plan Administrator Agreement, compromise or settle any Wind-Down Debtor Assets transferred to the Wind-Down Debtor.  On and after the Effective Date, the Wind-Down Debtor and the Plan Administrator may, without further Court approval, commence, litigate, and settle any Vested Causes of Action or Claims relating to any Wind-Down Debtor Assets transferred to the Wind-Down Debtor or rights to payment or Claims that belong to the Debtors as of the Effective Date or are instituted by the Wind-Down Debtor and Plan Administrator on or after the Effective Date, except as otherwise expressly provided herein and in the Plan Administrator Agreement.  The Wind-Down Debtor shall be entitled to enforce all defenses and counterclaims to all Claims asserted against the Debtors and their Estates, including setoff, recoupment and any rights under section 502(d) of the Bankruptcy Code.

110.    Notwithstanding any prohibition on assignability under applicable non-bankruptcy law, on the Effective Date and thereafter if additional Wind-Down Debtor Assets become available, the Debtors shall be deemed, subject to the Plan Administrator Agreement, to have automatically transferred to the applicable Wind-Down Debtor all of their right, title, and interest in and to all of the Wind-Down Debtor Assets, in accordance with section 1141 of the Bankruptcy Code.  All such assets shall automatically vest in the Wind-Down Debtor free and clear of all Claims, Liens, and other interests, subject only to the Allowed Claims and Interests as set forth in

the Plan and the expenses of the Wind-Down Debtor as set forth in the Plan and in the Plan

Administrator Agreement.  Thereupon, the Debtors shall have no interest in or with respect to the

Wind-Down Debtor Assets or the Wind-Down Debtor.

111.    On the Effective Date, the Debtors or Plan Administrator, as applicable, may

establish one or more accounts or funds to hold and dispose of certain assets, pursue certain

litigation (including the Vested Causes of Action), and/or satisfy certain Claims (including Claims

that are contingent or have not yet been Allowed).  For any such account or fund, the Debtors or

the Plan Administrator, as applicable, may take the position that grantor trust treatment applies in

whole or in part.  To the extent such treatment applies to any such account or fund, for all U.S.

federal income tax purposes, the beneficiaries of any such account or fund would be treated as

grantors and owners thereof, and it is intended, to the extent reasonably practicable, that any such

account or fund would be classified as a liquidating trust under section 301.7701-4 of the Treasury

Regulations.  Alternatively, any such account or fund may be subject to the tax rules that apply to

"disputed ownership funds" under 26 C.F.R. 1.468B–9.  If such rules apply, such assets would be

subject to entity-level taxation, and the Debtors and Plan Administrator would be required to

comply with the relevant rules.

112.    **Effectiveness of All Actions**.  All actions contemplated by the Plan, including all

actions in connection with the Sale Transaction or the Liquidation Transaction, as applicable, are

hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable,

under this Confirmation Order, without further application to, or order of the Court, or further

action by the respective officers, directors, managers, members, or equity holders of the Debtors

or the Wind-Down Debtor and with the effect that such actions had been taken by unanimous

action of such officers, directors, managers, members, or equity holders.

113.    **Cancellation of Notes, Instruments, Certificates, and Other Documents.**  On

the later of the Effective Date and the date on which distributions are made pursuant to the Plan

(if not made on the Effective Date), except for the purpose of evidencing a right to and allowing

Holders of Claims and Interests to receive a distribution under the Plan or to the extent otherwise

specifically provided for in the Plan, this Confirmation Order, or any agreement, instrument, or

other document entered into in connection with or pursuant to the Plan or the Restructuring

Transactions, all notes, bonds, indentures, certificates, Securities, shares, purchase rights, options,

warrants, collateral agreements, subordination agreements, intercreditor agreements, or other

instruments or documents directly or indirectly evidencing, creating, or relating to any indebtedness

or obligations of, or ownership interest in, the Debtors, giving rise to any Claims against or Interests

in the Debtors or to any rights or obligations relating to any Claims against or Interests in the

Debtors shall be deemed cancelled without any need for a Holder to take further action with respect

thereto.

114.    For the avoidance of doubt, cancellation of Existing Equity Interests pursuant to the

Plan shall not affect the rights of the Holders of Existing Equity Interests to receive distributions,

if any, under the Plan on account of such Existing Equity Interests.  Holders of Existing Equity

Interests shall continue to possess all rights, powers, privileges, and standing associated with such

Existing Equity Interests as if those Existing Equity Interests continue to exist subject to the terms

of the Plan and this Confirmation Order.

115.    **Distributions.**  The procedures governing distributions contained in Article VI of

the Plan shall be, and hereby are, approved in their entirety.  Except as otherwise set forth in the

Plan or this Confirmation Order, the Plan Administrator shall make all distributions required under

the Plan and the timing of distributions required under the Plan or this Confirmation Order shall

be made in accordance with and as set forth in the Plan, this Confirmation Order, or the Plan Administrator Agreement, as applicable; *provided* that, if a creditor does not timely provide the Plan Administrator with its taxpayer identification number in the manner and by the deadline established by the Plan Administrator and/or the Plan, the creditor shall be deemed to have forfeited its right to any current, reserved or future distributions provided for under the Plan and such creditor's Claim or Interest shall be disallowed and expunged without further order of the Court. Any such forfeited distribution shall be deemed to have reverted back to the Wind-Down Debtor for all purposes, including for distributions to other holders of Allowed Claims or Allowed Interests (as applicable) against the particular Debtor in respect of which the forfeited distribution was made, notwithstanding any federal, provincial or state escheat, abandoned or unclaimed property law to the contrary.

116.    **Claims Register.**  Any Claim or Interest that has been paid, satisfied, amended, superseded, cancelled, or otherwise expunged (including pursuant to the Plan) may be adjusted or expunged, as applicable, on the Claims Register at the direction of the Debtors or Wind-Down Debtor without the Debtors or Wind-Down Debtor having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Court.

117.    **Preservation of Rights of Action.**  In accordance with section 1123(b) of the Bankruptcy Code, the Wind-Down Debtor shall succeed to all rights to commence and pursue any and all Vested Causes of Action of the Debtors, whether arising before or after the Petition Date, including, without limitation, any actions specifically enumerated in the Schedule of Retained Causes of Action other than Causes of Action released, waived, settled, compromised, or transferred.  Such rights shall be preserved by the Debtors and Wind-Down Debtor and shall vest

in the Wind-Down Debtor, with the Wind-Down Debtor's rights to commence, prosecute, or settle

such Causes of Action preserved notwithstanding the occurrence of the Effective Date, other than

the Causes of Action expressly released, waived, settled, compromised, or transferred by the

Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII

of the Plan or pursuant to the Asset Purchase Agreement, which shall be deemed released and

waived by the Debtors and the Wind-Down Debtor as of the Effective Date.

118.    The Wind-Down Debtor may pursue such Causes of Action, as appropriate, in

accordance with the best interests of the beneficiaries of the Wind-Down Debtor and in accordance

with the Plan Administrator Agreement and the Plan.  No Entity may rely on the absence of a

specific reference in the Schedules of Assets and Liabilities or Statement of Financial Affairs, the

Plan, the Plan Supplement, the Disclosure Statement, or the Schedule of Retained Causes of Action

to any Cause of Action against it as any indication that the Debtors or the Wind-Down Debtor will

not pursue any and all available Causes of Action against it.  The Wind-Down Debtor, on behalf

of the Debtors and the Wind-Down Debtor, expressly reserves all rights to prosecute any and all

Causes of Action against any Entity, except as otherwise provided in the Plan, including Article

VIII of the Plan.  Unless any Cause of Action of the Debtors is expressly waived, relinquished,

exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order, the Wind-

Down Debtor, on behalf of the Debtors and Wind-Down Debtor and in accordance with the Plan

Administrator Agreement, expressly reserves all such Causes of Action for later adjudication, and,

therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue

preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to

such Causes of Action upon, after, or as a consequence of Confirmation.

119.    The Wind-Down Debtor, on behalf of the Debtors and the Wind-Down Debtor, reserves and shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Cause of Action that a Debtor may hold against any Entity shall vest in the Wind-Down Debtor, except as otherwise provided in the Plan, including Article VIII of the Plan.  The Wind-Down Debtor, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Wind-Down Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Court in accordance with the Plan.

120.    **Subordination.**  Except as expressly provided in the Plan, the allowance, classification, and treatment of all Allowed Claims against and Allowed Interests in the Debtors and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors and the Wind-Down Debtor reserve the right to reclassify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

121.    **Release of Liens.**  Except as otherwise provided in the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan

or this Confirmation Order on the Effective Date, and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors shall automatically revert to the applicable Debtor or Wind-Down Debtor, as applicable, and their successors and assigns, in each case, without any further approval or order of the Court and without any action or Filing being required to be made by the Debtors.  The presentation or filing of this Confirmation Order to or with any local, state, federal, or foreign agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

122.    **Governance of the Wind-Down Debtor.**  The Plan Administrator shall appoint an independent director at each Debtor to act as a fiduciary for such Debtor entity in connection with the resolution of the Intercompany Claims.

123.    **Intercompany Claims.**  For the avoidance of doubt, nothing in this Confirmation Order or the Plan shall have any impact on the validity, extent, priority, or treatment of the Intercompany Claims.  Any determination as to the validity, extent, priority, or treatment of the Intercompany Claims shall be determined by the Court in a separate matter on proper notice to parties in interest.  Notwithstanding anything to the contrary in this Confirmation Order or the Plan, the rights of the ad hoc group of equityholders (the "AHG") to continue or participate in any adjudication of the Intercompany Claims are preserved, and any party reserves any and all rights, claims, and defenses in connection therewith, including without limitation, the Debtors and/or the

Wind-Down Debtor's right to challenge the AHG's standing with respect thereto*; provided* that such right, claim, or defense is not based on any provision in this Confirmation Order or the Plan.

124.    **FTX Settlement.**  Pursuant to the terms of the FTX Settlement, the Debtors shall reserve and hold the amount of $445 million in Cash on account of the Preference Claims (as defined in the FTX Settlement) asserted by FTX, Alameda, and their estates in the FTX Bankruptcy Proceeding, subject to all defenses and counterclaims thereto, until the final resolution of the Preference Claims by settlement or a final and unappealable order by the court in the FTX Bankruptcy Proceeding, including any appeals therefrom.

125.    **General Settlement of Claims and Interests.**  As discussed in detail in the Disclosure Statement and as otherwise provided in the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan.  The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of this Confirmation Order shall constitute the Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 of all such Claims, Interests, Causes of Action, and controversies, as well as a finding by the Court that such compromise and settlement is fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.  Subject to Article VI of the Plan, all distributions made to Holders of Allowed Claims and Interests in any Class are intended to be and shall be final.

126.    **Third-Party Releases.**    For the avoidance of doubt, any party that did not affirmatively "opt in" to the Third-Party Releases contained in the Plan shall not be deemed to grant such Third-Party Releases contained in the Plan.

127.    **Contributed Third Party Claims.**    For the avoidance of doubt, any party that did not affirmatively "opt in" to contribute their Contributed Third-Party Claims to the Wind-Down Debtor shall not be deemed to contribute their claims to the Wind-Down Debtor; *provided*, *however*, that any party may contribute their Contributed Third-Party Claims to the Wind-Down Debtor on or after the Effective Date by separate agreement with the Plan Administrator and Wind-Down Debtor. Any such agreement shall be valid to the same extent as if the party affirmatively opted in to contribute their Contributed Third-Party Claims to the Wind-Down Debtor.

128.    **Operations After Closing.**    On and after the Effective Date, expect as otherwise provided in the Plan, the Debtors or the Wind-Down Debtor may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

129.    **Assumption and Rejection of Executory Contracts and Unexpired Leases.**    On the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (a) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (b) is subject to a pending motion to assume such Unexpired Lease or Executory

Contract as of the Effective Date; (c) is to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with the Sale Transaction; (d) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (e) is a D&O Liability Insurance Policy other than the Side-A Policy. Entry of this Confirmation Order constitutes approval of such assumptions, assignments, and rejections, including the assumption of the Executory Contracts or Unexpired Leases as provided in the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Except as otherwise provided in this Confirmation Order, any and all objections or reservations of rights in connection with the rejection of an Executory Contract or Unexpired Lease under the Plan, if any, are overruled on their merits.

130. **Waiver or Estoppel.** Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed prior to the Confirmation Date.

131. **Insurance Policies and Surety Bonds.** Each D&O Liability Insurance Policy (including, without limitation, any "tail policy" and all agreements, documents, or instruments related thereto) other than the Side-A Policy shall be assumed, in their entirety, without the need for any further notice to or action, order, or approval of the Court, as of the Effective Date, pursuant to sections 105 and 365 of the Bankruptcy Code with the Wind-Down Debtor being authorized to pursue any proceeds thereof on behalf of the Debtors or the Wind-Down Debtor. The Side-A Policy shall remain in effect during these Chapter 11 Cases with the Debtors, and the Wind-Down

Debtor preserves all avoidance and other actions in connection with the premium paid thereunder. All beneficiaries under the D&O Insurance Policies reserve their rights under such D&O Insurance Policies subject to the limitations set forth in the Plan.

132.    The Debtors or the Wind-Down Debtor, as applicable, shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policy (including, without limitation, any "tail policy" and all agreements, documents, or instruments related thereto) in effect prior to the Effective Date, and subject in all respects to the D&O Settlement, any current and former directors, officers, managers, and employees of the Debtors who served in such capacity at any time before or after the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy subject to the terms thereof regardless of whether such directors, officers, managers, and employees remain in such positions after the Effective Date. Notwithstanding anything to the contrary in the Plan, the Debtors or the Wind-Down Debtor shall retain the ability to supplement such D&O Liability Insurance Policy as the Debtors or Wind-Down Debtor may deem necessary, subject to the prior written consent of the Wind-Down Debtor.

133.    The Debtors shall continue to satisfy their obligations under their insurance policies in full and continue such programs in the ordinary course of business. Each of the Debtors' insurance policies, and any agreements, documents, or instruments relating thereto shall be treated as Executory Contracts under the Plan. On the Effective Date: (a) the Debtors shall be deemed to have assumed all such insurance policies and any agreements, documents, and instruments relating thereto in their entirety and (b) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the applicable Wind-Down Debtor(s) unaltered.

134.     **Authorization to Consummate.**  The Debtors are authorized to consummate the

Plan at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by the

required parties) of the conditions precedent to consummation as set forth in Article IX of the Plan.

135.     **Professional Compensation.**  All final requests for payment of Professional Fee

Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation

Date must be Filed no later than sixty (60) days after the Effective Date.  The Court shall determine

the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance

with the procedures established by the Bankruptcy Code and Bankruptcy Rules.  The Wind-Down

Debtor shall pay Professional Fee Claims in Cash to such Professionals in the amount the Court

allows, including from funds held in the Professional Fee Escrow Account as soon as reasonably

practicable after such Professional Fee Claims are Allowed by entry of an order of the Court;

*provided* that the Debtors' and the Wind-Down Debtor's obligations to pay Allowed Professional

Fee Claims shall not be limited or deemed limited to funds held in the Professional Fee Escrow

Account.

136.     No later than the Effective Date, the Debtors shall establish and fund the

Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount.  The

Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for

no other Entities until all Professional Fee Claims Allowed by the Court have been irrevocably

paid in full to the Professionals pursuant to one or more Final Orders of the Court.  No Liens,

claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the

Professional Fee Escrow Account in any way.  No funds held in the Professional Fee Escrow

Account shall be property of the Estates of the Debtors or the Wind-Down Debtor.  When all

Professional Fee Claims Allowed by the Court have been irrevocably paid in full to the

Professionals pursuant to one or more Final Orders of the Court, any remaining funds held in the Professional Fee Escrow Account shall be turned over to the Wind-Down Debtor without any further notice to or action, order, or approval of the Court or any other Entity.

137.    The Professionals shall deliver to the Debtors a reasonable and good-faith estimate of their unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Confirmation Date projected to be outstanding as of the anticipated Effective Date, and shall deliver such estimate no later than five Business Days prior to the anticipated Effective Date.  For the avoidance of doubt, no such estimate shall be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of a Professional's final request for payment of Professional Fee Claims Filed with the Court, and such Professionals are not bound to any extent by the estimates.  If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.  The total aggregate amount so estimated to be outstanding as of the anticipated Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account; provided that the Wind-Down Debtor shall use Cash on hand to increase the amount of the Professional Fee Escrow Account to the extent fee applications are Filed after the Effective Date in excess of the amount held in the Professional Fee Escrow Account based on such estimates.

138.    Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors and/or the Wind-Down Debtor, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Wind-Down Debtor.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331,

363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered

after such date shall terminate, and the Wind-Down Debtor may employ and pay any Professional

in the ordinary course of business for the period after the Confirmation Date without any further

notice to or action, order, or approval of the Court.

139.    **Return of Deposits.**  All utilities, including, but not limited to, any Person or Entity

that received a deposit or other form of adequate assurance of performance under section 366 of

the Bankruptcy Code during these Chapter 11 Cases, must return such deposit or other form of

adequate assurance of performance to the Wind-Down Debtor promptly following the occurrence

of the Effective Date, if not returned or applied earlier.

140.    **Release, Exculpation, and Injunction Provisions.**   The release, exculpation,

injunction, opt in, and related provisions set forth in the Plan are approved and authorized in their

entirety, and such provisions are effective and binding on all Persons and Entities to the extent

provided therein except as otherwise provided in this Confirmation Order, *provided*, *however*, that

nothing in the exculpation related provisions of the Plan shall release the Debtors from the

provisions of the Plan governing satisfaction of Allowed Claims including Allowed

Administrative Expense Claims or change the standard for liability on Allowed Claims or Allowed

Administrative Expense Claims, subject to any applicable bankruptcy and non-bankruptcy law.

141.    For the avoidance of doubt, the Debtors are not seeking a discharge under section

1141(d).

142.    **Governmental Units.**  Nothing in this Confirmation Order or the Plan shall effect

a release by the United States, the States or any of their agencies of any claim arising under the

Internal Revenue Code, the environmental laws or any civil or criminal laws of the United States

or the States, or under any rules or regulations enforced by the United States, the States or any of

their agencies against the Released Parties, nor shall anything in the Confirmation Order or the Plan enjoin the United States or the States from bringing any claim, suit, action or other proceedings against the Released Parties for any liability for any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any civil or criminal laws of the United States or the States, or under any rules or regulations enforced by the United States, the States or any of their agencies, nor shall anything in the Confirmation Order or the Plan exculpate any such party from any liability to the United States, the States or any of their agencies, arising under the Internal Revenue Code, the environmental laws or any civil or criminal laws of the United States or the States, or under any rules or regulations enforced by the United States, the States or any of their agencies; *provided*, however, that nothing in this Confirmation Order or the Plan shall modify in any respect the relief previously granted in the Bar Date Order and thus no person or entity, including the United States, the States or any of their agencies, can seek or receive a direct or indirect distribution of any property of the Debtors' estates unless they filed a Proof of Claim prior to the Governmental Bar Date; *provided*, further, that the United States, the States, and their agencies may not, and will not, allege that the Restructuring Transactions are a violation of any rules or regulations enforced by the United States, the States or any of their agencies, nor will they bring any claim against any Person on account of or relating to the Restructuring Transactions.

143.    Nothing in this Confirmation Order, the Disclosure Statement, the Plan, or the Asset Purchase Agreement releases, precludes, or enjoins: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) ("Governmental Unit") that is not a "claim" as defined in 11 U.S.C. § 101(5) ("Claim"); (ii) any Claim of a Governmental Unit arising on or after the Effective Date; or (iii) any liability to a Governmental Unit on the part of any non-Debtor (except to the extent set forth in paragraphs 97 and 99 herein); *provided*, however, that nothing in this Confirmation Order

or the Plan shall modify in any respect the relief previously granted in the Bar Date Order; *provided*, further, that no Governmental Unit will allege that the Restructuring Transactions are a violation of any rules or regulations enforced by the United States, the States or any of their agencies, nor will they bring any claim against any Person on account of or relating to the Restructuring Transactions. Nothing in this Confirmation Order, the Disclosure Statement, the Plan, or the Asset Purchase Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, without compliance with all applicable legal requirements.

144.    **Securities and Exchange Commission Provisions.**  Notwithstanding anything to the contrary in this Confirmation Order, or any findings announced at the Combined Hearing, nothing in this Confirmation Order, or announced at the Combined Hearing, constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the SEC to challenge transactions involving crypto tokens on any basis is expressly reserved.

145.    Notwithstanding any provision herein to the contrary, nothing in this Confirmation Order or the Plan grants this Court jurisdiction over any police and regulatory actions by the SEC, and the SEC shall retain the power and authority to commence and continue any such actions against any person or entity, including without limitation, the Debtors, in any forum with jurisdiction; *provided*, however, that nothing in this Confirmation Order or the Plan shall modify in any respect the relief previously granted in the Bar Date Order; *provided*, *however*, that the SEC will not allege that the Restructuring Transactions are a violation of any rules or regulations enforced by the SEC, nor will they bring any claim against any Person on account of or relating to the Restructuring Transactions.

146.     Upon the occurrence of the Effective Date, the Debtors' books and records shall be transferred to the Wind-Down Debtor, which shall continue to preserve all financial books and records, emails, and other financial documents relating to the Debtors' business that are currently in the Debtors' possession. The Wind-Down Debtor shall not destroy or otherwise abandon any such documents or records without providing advance notice to the SEC (c/o Therese Scheuer, U.S. Securities and Exchange Commission, 100 F Street, NE, Washington, DC 20549, ScheuerT@SEC.GOV) and seeking further authorization from this Court.  Nothing in the Plan or this Confirmation Order shall affect the obligations of the pre-Effective Date Debtors, the Wind-Down Debtor, and/or any transferee or custodian to maintain all books and records that are subject to any governmental subpoena, document preservation letter, or other investigative request from a governmental agency.

147.     Notwithstanding any language to the contrary herein, no provision in the Plan or this Confirmation Order shall (a) preclude the OSC or the SEC from enforcing its police or regulatory powers or (b) enjoin, limit, impair or delay the OSC or SEC from commencing or continuing any claims, causes of action, proceeding, or investigations against any non-Debtor person or non-Debtor entity in any forum.

148.     **Employee Transition Plan.**  The Employee Transition Plan, the terms of which are included in the Plan Supplement as <u>Exhibit H</u>, will be implemented following the Effective Date and is not subject to the Court's approval.

149.     **Compliance with Tax Requirements.**  In connection with the Plan, to the extent applicable, the Debtors, the Wind-Down Debtor, any Distribution Agent, and any other applicable withholding and reporting agents shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be

subject to such withholding and reporting requirements.  Notwithstanding any provision in the

Plan to the contrary, the Debtors, the Wind-Down Debtor, the Distribution Agent, and any other

applicable withholding and reporting agents shall be authorized to take all actions necessary or

appropriate to comply with such withholding and reporting requirements, including winding-down

a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable

withholding taxes, withholding distributions pending receipt of information necessary to facilitate

such distributions, or establishing any other mechanisms that are reasonable and appropriate;

*provided* that the Wind-Down Debtor and the Distribution Agent, as applicable, shall request

appropriate documentation from the applicable distributees and allow such distributees a

reasonable amount of time to respond.  The Debtors, the Wind-Down Debtor, the Distribution

Agent, and any other applicable withholding and reporting agents reserve the right to allocate all

distributions made under the Plan in compliance with all applicable wage garnishments, alimony,

child support, and other spousal awards, liens, and encumbrances.

150.    **Exemption from Certain Taxes and Fees.**  To the fullest extent permitted by

section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Debtor, the

Wind-Down Debtor, the Purchaser, or to any other Entity) of property under the Plan or pursuant

to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest

in the Debtors or the Wind-Down Debtor; (b) the creation, modification, consolidation,

termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest,

or the securing of additional indebtedness by such or other means; (c) the making, assignment, or

recording of any lease or sublease; or (d) the making, delivery, or recording of any deed or other

instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds,

bills of sale, assignments, or other instrument of transfer executed in connection with any

transaction arising out of, contemplated by, or in any way related to the Plan, including the Asset Purchase Agreement, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, sales or use tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

151.    **Termination of Asset Purchase Agreement.**  If the Asset Purchase Agreement is terminated and the Sale Transaction is not consummated, all provisions in this Confirmation Order relating to the Asset Purchase Agreement, the Sale Transaction, and the Purchaser shall be of no force and effect, and the Debtors are authorized to consummate the Liquidation Transaction without further order of the Court.

152.    **The Liquidation Transaction.**  If the Asset Purchase Agreement is terminated, the Debtors shall pursue the Liquidation Transaction contemplated under the Plan and shall provide all Holders of Claims and Interests with the treatment afforded to such Holders under the Plan.  In the event that the Debtors determine to pursue the Liquidation Transaction contemplated under Article IV of the Plan, the Debtors shall promptly notify the Court and all parties in interest.  The

Plan shall be deemed to satisfy all requirements under the Bankruptcy Code with respect to either the Sale Transaction or the Liquidation Transaction pursuant to this Confirmation Order.

153. **Documents, Mortgages, and Instruments.** Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the Plan, including the Restructuring Transactions, and this Confirmation Order.

154. **The BNY Objection.** This Confirmation Order confirms that the Deed of Trust and Assignment of Rents recorded January 5, 2023 Official Records of Orange County (the "Deed") transferring title of 37 Black Hawk, Irvine, California 92603 (the "Property") from Michael G. Beason and Mickey L. Wiebeis (collectively, the "Property Borrowers") to Voyager Digital, LLC is void. This Confirmation Order may be recorded against the Property as evidence and confirmation that the Deed is void. The Bank Of New York Mellon f/k/a the Bank Of New York, As Trustee For The Certificateholders Of CWALT, Inc., Alternative Loan Trust 2005-38, Mortgage Pass-Through Certificates, Series 2005-38 as Serviced by Shellpoint Mortgage Servicing ("Shellpoint") shall be permitted to take any other the necessary actions to void the Deed. To the extent necessary, the automatic stay is lifted solely as it pertains to Shellpoint's rights to take action against the Property and shall be effective immediately upon entry of this Confirmation Order. The Debtor(s) shall not be party to any foreclosure or other proceeding related to the Property as they lack any interest in the Property. Shellpoint shall release the Debtors and the Wind-Down Debtor of any costs and claims incurred on account of the Property, including any actions taken in any foreclosure or other proceeding or associated with voiding the Deed. This Confirmation Order shall in no way prevent Shellpoint from pursuing any and all lawful rights and remedies as to the Property Borrowers.

155.    **Continued Effect of Stays and Injunction.**  Unless otherwise provided in the Plan

or this Confirmation Order, all injunctions or stays arising under or entered during these

Chapter 11 Cases under section 362 of the Bankruptcy Code or otherwise and in existence on the

Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the

date indicated in the order providing for such injunction or stay.

156.    **Non-Severability.**  Each term and provision of the Plan, as it may have been altered

or interpreted in accordance with the foregoing, is:  (a) valid and enforceable pursuant to its terms;

(b) integral to the Plan and may not be deleted or modified without the Debtors' consent, consistent

with the terms set forth herein; and (c) non-severable and mutually dependent.

157.    **Notice of Subsequent Pleadings.**  Except as otherwise provided in the Plan or in

this Confirmation Order, notice of all subsequent pleadings in these Chapter 11 Cases after the

Effective Date will be limited to the following parties:  (a) the Wind-Down Debtor and its counsel;

(b) the U.S. Trustee; (c) counsel to the Purchaser; (d) any party known to be directly affected by

the relief sought by such pleadings; and (e) any party that specifically requests additional notice in

writing to the Debtors, the Wind-Down Debtor, or the Plan Administrator, as applicable, or files a

request for notice under Bankruptcy Rule 2002 after the Effective Date.  The Notice and Claims

Agent shall not be required to file updated service lists.

158.    **Post-Confirmation Modifications.**  Subject to the limitations and terms contained

in the Plan and Purchaser's consent rights under the Asset Purchase Agreement, the Debtors, with

the consent of the Committee, reserve the right to (a) amend or modify the Plan before the entry

of this Confirmation Order, in accordance with the Bankruptcy Code and the Bankruptcy Rules

and (b) after the entry of this Confirmation Order, the Debtors or the Wind-Down Debtor, as

applicable, may, upon order of the Court, amend or modify the Plan, in accordance with section

1127(b) of the Bankruptcy Code, to remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan consistent with the terms set forth in the Plan.

159.    **Plan Classification Controlling.**  The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder and the classifications set forth on the ballots tendered to or returned by the Holders of Claims or Interests in connection with voting on the Plan:  (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

160.    **Choice of Law.**  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, documents, instruments, or contracts, in which case the governing law of such agreement shall control); provided that corporate, limited liability company, or partnership governance matters relating to the Debtors or the Wind-Down Debtor, as applicable, shall be governed by the laws of the jurisdiction of incorporation or formation of the relevant Debtor or Wind-Down Debtor, as applicable.

161. **Applicable Nonbankruptcy Law.** The provisions of this Confirmation Order, the Plan and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

162. **Waiver of Filings.** Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the Court or the Office of the U.S. Trustee is permanently waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

163. **Governmental Approvals Not Required.** This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority with respect to the dissemination, implementation, or consummation of the Plan and the Disclosure Statement, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement. As provided in section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license of the Debtors or Wind-Down Debtor on account of the filing or pendency of the Chapter 11 Cases.

164. **Protection Against Discriminatory Treatment.** As provided by section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Entity, including Governmental Units, shall discriminate against any Wind-Down Debtor or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, any Wind-Down Debtor, or any Entity with which a Wind-Down Debtor has been or is associated, solely because such Wind-Down Debtor was a debtor under chapter 11 of the Bankruptcy Code or

may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases).

165.    **Notices of Confirmation and Effective Date.**  The Debtors or the Wind-Down Debtor, as applicable, shall serve notice of entry of this Confirmation Order, of the occurrence of the Effective Date, and of applicable deadlines (the "Notice of Confirmation") in accordance with Bankruptcy Rules 2002 and 3020(c) on all parties served with the Combined Hearing Notice seven Business Days after the Effective Date; *provided* that no notice of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Combined Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.  For those parties receiving electronic service, filing on the docket is deemed sufficient to satisfy such service and notice requirements.

166.    No later than ten Business Days after the Effective Date, the Wind-Down Debtor shall cause the Notice of Confirmation, modified for publication, to be published on one occasion in *The New York Times* (national edition) and *USA Today* (national edition).  Mailing and publication of the Notice of Confirmation in the time and manner set forth in this paragraph will be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c).  No further notice is necessary.

167.    The Notice of Confirmation will have the effect of an order of the Court, will constitute sufficient notice of the entry of this Confirmation Order to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable

nonbankruptcy law.  The above-referenced notices are adequate under the particular circumstances of these Chapter 11 Cases and no other or further notice is necessary.

168.    **Dissolution of Statutory Committees.**   On the Effective Date, any statutory committee appointed in the Chapter 11 Cases shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases; *provided*, *however*, that such committees will remain in existence for the limited purposes of (a) pursuing, supporting, or otherwise participating in, any outstanding appeals in the Chapter 11 Cases; and (b) filing, objecting, or otherwise participating in, any final fee applications of Professionals.

169.    **Exemption from Registration.**  The Plan Administrator shall hold the equity of the Voyager Digital Ltd., to the extent that any new equity is issued, in an agency capacity, for the benefit of and to facilitate the rights of Holders of Interests provided under the Plan; *provided* that such equity, if issued, shall be uncertificated and non-transferable.

170.    The offering, distribution, issuance, and action contemplated by the Plan, including, but not limited to, the Restructuring Transactions, the rebalancing transactions as set forth in Article IV.D.2 of the Plan, and distribution of Cryptocurrency to Holders of Claims, shall be offered, distributed, issued, or otherwise consummated without registration under the Securities Act or any similar federal, state, or local law in reliance upon (i) section 1145 of the Bankruptcy Code or (ii) pursuant to section 4(a)(2) under the Securities Act and/or Regulation D thereunder.

171.    Notwithstanding anything to the contrary in the Plan, no entity may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the Cryptocurrency, to the extent deemed to be a "security," is exempt from registration.

172.    Distributions to Holders of Claims and Interests in accordance with the Plan shall not be deemed to be unlicensed money transmission.

173.    **Effect of Non-Occurrence of Conditions to Confirmation.**  If the Effective Date does not occur within 120 days after the Confirmation Date, then the Plan will be null and void in all respects, any and all compromises or settlements not previously approved by Final Order of the Court embodied in the Plan (including with respect to the fixing, limiting, or treatment of any Claim or Interest), shall be deemed null and void, and nothing contained in the Plan or the Disclosure Statement shall:  (a) constitute a waiver or release of any Claims, Interests, or Causes of Action held by any Debtor or any other Entity; (b) prejudice in any manner the rights of any Debtor or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by any Debtor or any other Entity in any respect.

174.    **Substantial Consummation.**  On the Effective Date, the Plan shall be deemed to have been substantially consummated or shall be anticipated to be substantially consummated concurrent with the occurrence of the Effective Date.

175.    **Waiver of Stay.**  For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

176.    **Immediate Binding Effect.**  Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Wind-Down Debtor, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, exculpations, and injunctions described in the Plan, each

Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims against and Interests in the Debtors shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or Interest has voted on the Plan.

177. **References to and Omissions of Plan Provisions.** References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan. The failure to specifically include or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by reference.

178. **Headings.** Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

179. **Effect of Conflict.** This Confirmation Order supersedes any Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order. If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall govern and control. For the avoidance of doubt, the *Stipulation and Agreed Order Between the Debtors and Metropolitan Commercial Bank* [Docket No. 821] remains in effect and is not superseded by this Confirmation Order.

180. **Final, Appealable Order.** This Confirmation Order is a final judgment, order, or decree for purposes of 28 U.S.C. § 158(a), and the period in which an appeal must be filed shall commence upon the entry hereof.

181.    **Retention of Jurisdiction.**  The Court may properly, and upon the Effective Date

shall, to the full extent set forth in the Plan, retain jurisdiction over all matters arising out of, or

related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the

Bankruptcy Code, including (i) the matters set forth in Article XI of the Plan and (ii) as set forth

in Section 10.13 of the Asset Purchase Agreement.


New York, New York
Dated: _____, 2023

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT A**

**The Plan**

**Exhibit B**

**Redline**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT AND (II) CONFIRMING THE THIRD AMENDED JOINT PLAN OF VOYAGER DIGITAL HOLDINGS, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

Voyager Digital Holdings, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors")[2] having:

    a.    commenced, on July 5, 2022 (the "Petition Date"), these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief in the United States Bankruptcy Court for the Southern District of New York (the "Court") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

    b.    continued to operate their business and manage their property during these Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

    c.    filed,[3] on July 6, 2022, the *Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 17];

    d.    filed, on July 21, 2022, the *Debtors' Motion Seeking Entry of an Order (I) Approving the Bidding Procedures and Related Dates and Deadlines, (II) Scheduling Hearings and Objection Deadlines with Respect to the Debtors'*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan, the Disclosure Statement, the Asset Purchase Agreement, or the Bankruptcy Code (each as defined herein), as applicable. The rules of interpretation set forth in Article I.B. of the Plan apply.

[3] Unless otherwise indicated, use of the term "filed" herein refers also to the service of the applicable document filed on the docket in these Chapter 11 Cases, as applicable.

*Sale, Disclosure Statement, and Plan Confirmation, and (III) Granting Related Relief* [Docket No. 126];

e.  obtained, on August 5, 2022, the entry of the *Order (I) Approving the Bidding Procedures, (II) Scheduling the Bid Deadlines and the Auction, (III) Approving the Form and Manner of Notice Thereof, (IV) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Sale, Disclosure Statement, and Plan Confirmation and (V) Granting Related Relief* [Docket No. 248] (the "Bidding Procedures Order") approving the *Bidding Procedures for the Submission, Receipt, and Analysis of Bids in Connection with the Sale of the Debtors*, attached to the Bidding Procedures Order as Exhibit 1 (the "Bidding Procedures");

f.  filed, on August 12, 2022, the *First Amended Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 287], the *Disclosure Statement Relating to the First Amended Joint Plan of Reorganization of Voyager Digital Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 288], and the *Debtors' Motion for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [Docket No. 289];

g.  commenced, on September 13, 2022, the Auction for the sale of substantially all of the Debtors' assets in accordance with the Bidding Procedures;

h.  closed, on September 26, 2022, the Auction and selected West Realm Shires Inc. ("FTX US") as the Winning Bidder (as defined in the Bidding Procedures);

i.  obtained, on October 20, 2022, entry of the *Order (I) Authorizing Entry of the Asset Purchase Agreement and (II) Granting Related Relief* [Docket No. 581], which authorized entry into that certain asset purchase agreement by and between Voyager Digital, LLC and West Realm Shires Inc. (together with its affiliates, "FTX US," and the asset purchase agreement, the "FTX US Asset Purchase Agreement");

j.  filed, on October 24, 2022, the *Second Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 590] and the *First Amended Disclosure Statement Relating to the Second Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 591];

k.  filed, on December 9, 2022, the *Stipulation and Agreed Order* [Docket No. 717] by and between FTX US and the Debtors (the "FTX US APA Stipulation"), terminating the FTX US Asset Purchase Agreement;

l.  filed, on December 21, 2022, the *Debtors' Motion for Entry of an Order (I) Authorizing Entry into the Binance US Purchase Agreement and (II) Granting Related Relief* [Docket No. 775] and that certain asset purchase agreement by and

2

between Voyager Digital, LLC and BAM Trading Services Inc. d/b/a Binance.US (together with its affiliates, "Binance.US," and the asset purchase agreement, the "Asset Purchase Agreement")

m.    filed, on December 22, 2022, the *Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 777] (as amended, modified, or supplemented from time to time, the "Plan"), the *Second Amended Disclosure Statement Relating to the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 778] (as amended, modified, or supplemented from time to time, the "Disclosure Statement"), and the *Debtors' Motion for Entry of an Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Adequacy of the Debtors' Disclosure Statement, (III) Approving (A) Procedures for Solicitation, (B) Forms of Ballots and Notices, (C) Procedures for Tabulation of Votes, and (D) Procedures for Objections, and (IV) Granting Related Relief* [Docket No. 779];

n.    filed, on January 9, 2023, the first amendment to the Asset Purchase Agreement [Docket No. 835];

o.    obtained, on January 10, 2023, approval of the FTX US APA Stipulation [Docket No. 849];

p.    filed, on January 10, 2023, the revised Plan [Docket No. 852];

q.    filed, on January 13, 2023, the revised Disclosure Statement [Docket No. 863];

r.    obtained, on January 13, 2023, entry of the *Order (I) Authorizing Entry into the Asset Purchase Agreement and (II) Granting Related Relief* [Docket No. 775], which granted entry into the asset purchase agreement with Binance.US (the "Asset Purchase Agreement Order");

s.    obtained, on January 13, 2023, entry of the *Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Adequacy of the Debtors' Disclosure Statement, (III) Approving (A) Procedures for Solicitation, (B) Forms of Ballots and Notices, (C) Procedures for Tabulation of Votes and (D) Procedures for Objections* [Docket No. 861] (the "Conditional Disclosure Statement Order") conditionally approving the Disclosure Statement, solicitation procedures (the "Solicitation Procedures"), and solicitation materials, including notices, forms, and ballots (collectively, the "Solicitation Packages");

t.    caused the Solicitation Packages and notice of the Combined Hearing and the deadline for objecting to the Disclosure Statement and to confirmation of the Plan ("Confirmation") to be distributed on or before January 25, 2023 (the "Solicitation Date"), in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Bankruptcy

3

Rules for the Southern District of New York (the "<u>Local Rules</u>"), the Disclosure Statement Order, and the Solicitation Procedures, as evidenced by, among other things, the *Affidavit of Service* [Docket No. 926] and the *Supplemental Affidavit of Service* [Docket Nos. 927 and 1016] (collectively, the "<u>Affidavit of Solicitation</u>");

u.    filed, on February 1, 2023, the *Plan Supplement for the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates* [Docket No. 943] (the "<u>Initial Plan Supplement</u>") and caused notice of the filing of the Initial Plan Supplement to be distributed in accordance with paragraph 12 of the Disclosure Statement Order, as evidenced by, among other things, the *Affidavit of Service* [Docket No. 951];

v.    published, on February 3, 2023, notice of the Combined Hearing (the "<u>Combined Hearing Notice</u>") in the *The New York Times* (National Edition) and *Financial Times* (International Edition), as evidenced by the *Affidavits of Publication* [Docket Nos. 954 and 955] (the "<u>Publication Affidavits</u>" and, together with the Affidavit of Solicitation, the "<u>Affidavits</u>");

w.    filed, on February 8, 2023, the *First Amended Plan Supplement for the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates* [Docket No. 986] (the "<u>First Amended Plan Supplement</u>") and caused notice of the filing of the First Amended Plan Supplement to be distributed in accordance with paragraph 12 of the Disclosure Statement Order, as evidenced by, among other things, the *Affidavit of Service* [Docket No. 992];

x.    filed, on February 15, 2023, the *Second Amended Plan Supplement for the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates* (the "<u>Second Amended Plan Supplement</u>") [Docket No. 1006] and caused notice of the filing of the Second Amended Plan Supplement to be distributed in accordance with paragraph 12 of the Disclosure Statement Order, as evidenced by, among other things, the *Affidavit of Service* [Docket No. 1037];

y.    filed, on February 21, 2023, the *Third Amended Plan Supplement for the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates* (the "<u>Third Amended Plan Supplement</u>") [Docket No. 1035] and caused notice of the filing of the Third Amended Plan Supplement to be distributed in accordance with paragraph 12 of the Disclosure Statement Order, as evidenced by, among other things, the *Affidavit of Service* [Docket No. 1058];

z.    filed, on February 28, 2023, the *Debtors' Motion for Entry of an Order Approving Joint Stipulation and Agreed Order Between the Voyager Debtors, the FTX Debtors, and Their Respective Official Committees of Unsecured Creditors* [Docket No. 1106] (the "<u>FTX Settlement</u>");

aa.    filed, on February 28, 2023, the *Declaration of Leticia Sanchez Regarding the Solicitation and Tabulation of Votes on the Third Amended Joint Plan of Voyager*

*Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1108];

bb.   filed, on February 28, 2023, the *Debtors' Memorandum of Law in Support of (I) Final Approval of the Second Amended Disclosure Statement Relating to the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code and (II) an Order Confirming the Debtors' Third Amended Joint Chapter 11 Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates* [Docket No. 1110] (the "Confirmation Brief");

cc.   filed, on February 28, 2023, the *Declaration of Timothy R. Pohl, Independent Director and Member of the Special Committee of the Board of Directors of Voyager Digital, LLC, in Support of Confirmation of the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1111] (the "Pohl Declaration")

dd.   filed, on February 28, 2023, the *Declaration of Brian Tichenor in Support of Confirmation of the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1113] (the "Tichenor Declaration");

ee.   filed, on February 28, 2023, the *Fourth Amended Plan Supplement for the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates* (the "Fourth Amended Plan Supplement") (together with the Initial Plan Supplement, First Amended Plan Supplement, Second Amended Plan Supplement, and Third Amended Plan Supplement, and as may be modified, amended, or supplemented from time to time, the "Plan Supplement") [Docket No. 1115] and will cause notice of the filing of the Fourth Amended Plan Supplement to be distributed in accordance with paragraph 12 of the Disclosure Statement Order; and

ff.   filed, on February 28, 2023, the revised version of the *Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1117];

gg.   filed, on February 28, 2023, the *Declaration of Mark A. Renzi in Support of Confirmation of the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1119] (the "Renzi Declaration," and, together with the Voting Report, the Pohl Declaration, the Tichenor Declaration, and the Renzi Declaration, the "Declarations");

hh.   filed, on February 28, 2023, the *Notice of Filing of Proposed Findings of Fact, Conclusions of Law, and Order (I) Approving the Second Amended Disclosure Statement and (II) Confirming the Third Amended Joint Plan of Voyager Digital*

*Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*;

ii.  filed, on March 1, 2023, the revised version of the *Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1125];

jj.  filed, on March 1, 2023, the *Amended Declaration of Leticia Sanchez Regarding the Solicitation and Tabulation of Votes on the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1127] (the "Voting Report"); ~~and~~

kk.  filed, on March 2, 2023, the revised version of the *Notice of Filing of Proposed Findings of Fact, Conclusions of Law, and Order (I) Approving the Second Amended Disclosure Statement and (II) Confirming the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1130];

ll.  filed, on March 5, 2023, the revised version of the *Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1138];

mm.  filed, on March 5, 2023, filed the *Supplemental Declaration of Mark A. Renzi in Support of Confirmation of the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1139] (the "Supplemental Renzi Declaration," and, together with the Voting Report, the Pohl Declaration, the Tichenor Declaration, and the Renzi Declaration, the "Declarations"); and

nn.  ~~kk.~~ filed, on March ~~2~~5, 2023, the revised version of the *Notice of Filing of Proposed Findings of Fact, Conclusions of Law, and Order (I) Approving the Second Amended Disclosure Statement and (II) Confirming the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (~~this~~the "Confirmation Order").

The Court having:

a.  entered the Bidding Procedures Order on August 5, 2022 [Docket No. 248];

b.  entered the Asset Purchase Agreement Order on January 13, 2023 [Docket No. 775];

c.  entered the Conditional Disclosure Statement Order on January 13, 2023 [Docket No. 861];

d.  set February 22, 2023, at 4:00 p.m. (prevailing Eastern Time) as the deadline to object to the Disclosure Statement and the Plan and to object to proposed cure costs and any assumption of an Executory Contract or Unexpired Lease pursuant

6

to the *Schedule of Assumed Executory Contracts and Unexpired Leases* (the "<u>Assumed Contract Schedule</u>"), filed as <u>Exhibit A</u> to the Plan Supplement (the "<u>Plan Objection Deadline</u>");

e.      set February 22, 2023, at 4:00 p.m. (prevailing Eastern Time) as the deadline for voting on the Plan (the "<u>Voting Deadline</u>");

f.      set March 2, 2023 at 10:00 a.m. (prevailing Eastern Time) as the date and time for the commencement of the Combined Hearing, pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

g.      reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Brief, the Declarations, the Voting Report, the Combined Hearing Notice, the Affidavits, and all filed pleadings, exhibits, statements, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

h.      held the Combined Hearing on March 2, 2023 at 10:00 a.m., prevailing Eastern Time;

i.      heard the statements and arguments made by counsel with respect to final approval of the Disclosure Statement and Confirmation of the Plan;

j.      considered all oral representations, live testimony, written direct testimony, designated deposition testimony, exhibits, documents, filings, and other evidence presented at the Combined Hearing;

k.      overruled any and all objections to the Disclosure Statement and the Plan and to Confirmation and all statements and reservations of rights not consensually resolved, agreed to, or withdrawn, unless otherwise indicated; and

l.      taken judicial notice of all papers and pleadings and other documents filed, all orders entered, and all evidence and arguments presented in these Chapter 11 Cases.

NOW, THEREFORE, the Court having found that the notice of the Combined Hearing and the opportunity for any party in interest to object to approval of the Disclosure Statement and confirmation of the Plan were adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated therein, and that the legal and factual bases set forth in the documents filed in support of approval of the Disclosure Statement and confirmation of the Plan and other evidence presented at the Combined Hearing and the record

7

of the Chapter 11 Cases establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.      Findings and Conclusions.**

1.      The findings and conclusions set forth herein and in the record of the Combined Hearing constitute the Court's findings of fact and conclusions of law under rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.      Jurisdiction, Venue, and Core Proceeding.**

2.      The Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012.  The Court has exclusive jurisdiction to determine whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

**C.      Eligibility for Relief.**

3.      The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

**D.      Commencement and Joint Administration of the Chapter 11 Cases.**

4.      On the Petition Date, each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  In accordance with the *Order (I) Directing Joint Administration of the Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 18], these Chapter 11 Cases were consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015.  Since the Petition Date, the Debtors have operated their business and managed their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

**E.      Appointment of the Committee.**

5.      On July 19, 2022, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 106].

**F.      Judicial Notice, Objections Overruled.**

6.      The Court takes judicial notice of (and deems admitted into evidence for purposes of final approval of the Disclosure Statement and Confirmation of the Plan) the docket of the Chapter 11 Cases maintained by the clerk of the Court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of these Chapter 11 Cases.  All objections, statements, informal objections, and reservations of rights not consensually resolved, agreed to, or withdrawn, if any, related to the Disclosure Statement, the Plan, or Confirmation are overruled on the merits unless otherwise indicated in this Confirmation Order.

G.       **Conditional Disclosure Statement Order.**

7.       On January 13, 2023, the Court entered the Conditional Disclosure Statement Order [Docket No. 861], which, among other things, set (i) February 22, 2023, at 4:00 p.m. (prevailing Eastern Time) as (a) the Plan Objection Deadline and (b) the Voting Deadline and (ii) March 2, 2023, at 10:00 a.m. (prevailing Eastern Time) as the date and time for commencement of the Combined Hearing.

H.       **Adequacy of the Disclosure Statement.**

8.       The Disclosure Statement contains (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations, including the Securities Act, and (b) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein.  The filing of the Disclosure Statement with the clerk of the Court satisfied Bankruptcy Rule 3016(b), and the Disclosure Statement, the Plan, and the Solicitation Packages provided all parties-in-interest with sufficient notice regarding the settlement, release, exculpation, and injunction provisions contained in the Plan in compliance with Bankruptcy Rule 3016(c).

I.       **Burden of Proof—Confirmation of the Plan.**

9.       The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation.

J.       **Notice.**

10.       The Debtors provided due, adequate, and sufficient notice of the Disclosure Statement, the Conditional Disclosure Statement Order, the Plan, the Plan Supplement, the

Solicitation Packages, the Combined Hearing Notice, the proposed assumption and rejection of Executory Contracts and Unexpired Leases and the proposed cure amounts, and all the other materials distributed by the Debtors in connection with Confirmation of the Plan, together with the Plan Objection Deadline, the Voting Deadline, and the Combined Hearing, and any applicable bar dates and hearings described in the Conditional Disclosure Statement Order, in compliance with the Bankruptcy Rules, Local Rules, and the procedures set forth in the Disclosure Statement Order.  No other or further notice is or shall be required.

**K.    Solicitation.**

11.    Prior to the Combined Hearing, the Debtors filed the Voting Report.  The Voting Report was admitted into evidence during the Combined Hearing.  As described in the Voting Report, the solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable rules, laws, and regulations.

12.    As described in the Voting Report, following the Petition Date, the Solicitation Packages, the Plan Supplement, and the Combined Hearing Notice were transmitted and served, including to all Holders of Claims in Class 3 (Account Holder Claims), Class 4A (OpCo General Unsecured Claims), Class 4B (HoldCo General Unsecured Claims), and Class 4C (TopCo General Unsecured Claims) (collectively, the "<u>Voting Classes</u>") that held a Claim as of January 10, 2023 (the date specified in such documents for the purpose of solicitation) (the "<u>Voting Record Date</u>"), in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, the Disclosure Statement Order, and any applicable nonbankruptcy law.  Transmission

11

and service of the Solicitation Packages and the Combined Hearing Notice were timely, adequate, and sufficient. The establishment and notice of the Voting Record Date were reasonable and sufficient. No other or further notice is required.

13.     The period during which Holders in the Voting Classes were required to submit acceptances or rejections to the Plan was reasonable and sufficient for such Holders to make an informed decision to accept or reject the Plan.

14.     As set forth in the Plan, Holders of Claims in the Voting Classes were eligible to vote on the Plan in accordance with the Solicitation Procedures. Holders of Claims in Class 1 (Secured Tax Claims) and Class 2 (Other Priority Claims) (collectively, the "Presumed Accepting Classes") are Unimpaired and conclusively presumed to accept the Plan and, therefore, did not vote to accept or reject the Plan. Holders of Claims in Class 7 (Intercompany Claims) and Interests in Class 8 (Intercompany Interests) either are Unimpaired and conclusively presumed to have accepted the Plan (to the extent reinstated) or Impaired and conclusively deemed to have rejected the Plan, and, therefore, are not entitled to vote to accept or reject the Plan. Holders of Claims in Class 5 (Alameda Loan Facility Claims) and Class 6 (Section 510(b) Claims) and Interests in Class 9 (Existing Equity Claims) (collectively, the "Deemed Rejecting Classes") are Impaired under the Plan and are deemed to have rejected the Plan. Nevertheless, the Debtors served Holders in such Deemed Rejecting Classes with the Plan, the Disclosure Statement, the Non-Voting Status Notice, and the Combined Hearing Notice.

**L.      Voting.**

15.     As evidenced by the Voting Report, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the

Bankruptcy Rules, the Local Rules, the Conditional Disclosure Statement Order, and any applicable nonbankruptcy law, rule, or regulation.

16.    As evidenced by the Voting Report, Class 3 (Account Holder Claims), Class 4A (OpCo General Unsecured Claims), Class 4B (HoldCo General Unsecured Claims), and Class 4C (TopCo General Unsecured Claims) voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code.

17.    Based on the foregoing, and as evidenced by the Voting Report, at least one Impaired Class of Claims (excluding the acceptance by any insiders of any of the Debtors) has voted to accept the Plan in accordance with the requirements of sections 1124 and 1126 of the Bankruptcy Code.

**M.    Plan Supplement.**

18.    The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the filing and notice of the documents included in the Plan Supplement are adequate and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Conditional Disclosure Statement Order, and the facts and circumstances of the Chapter 11 Cases.  No other or further notice is or will be required with respect to the Plan Supplement.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan, compliance with the Bankruptcy Code and the Bankruptcy Rules, and, solely to the extent set forth under the Asset Purchase Agreement, consent of the Purchaser, and in a form reasonably acceptable to the Committee, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement before the Effective Date.

**N.      Modifications to the Plan.**

19.      Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan

since the commencement of Solicitation described or set forth herein constitute technical

changes or changes with respect to particular Claims or Interests made pursuant to the agreement

of the Holders of such Claims or Interests and do not materially and adversely affect or change

the treatment of any other Claims or Interests. Pursuant to Bankruptcy Rule 3019, these

modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or

the resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that

the Holders of Claims or Interests be afforded an opportunity to change previously cast

acceptances or rejections of the Plan.

20.      This Confirmation Order contains modifications to the Plan that were made to

address objections and informal comments received from various parties in interest.

Modifications to the Plan since the entry of the Conditional Disclosure Statement Order, if any,

are consistent with the provisions of the Bankruptcy Code.  The disclosure of any Plan

modifications prior to or on the record at the Combined Hearing constitutes due and sufficient

notice of any and all Plan modifications.  The Plan as modified shall constitute the Plan

submitted for Confirmation.

**O.      Bankruptcy Rule 3016.**

21.      The Plan and all modifications thereto are dated and identify the Entities

submitting them, thereby satisfying Bankruptcy Rule 3016(a).  The Debtors appropriately filed

the Disclosure Statement and the Plan with the Court, thereby satisfying Bankruptcy

Rule 3016(b).  The injunction, release, and exculpation provisions in the Disclosure Statement

and the Plan describe, in bold font and with specific and conspicuous language, all acts to be

14

enjoined and identify the entities that will be subject to the injunction, thereby satisfying Bankruptcy Rule 3016(c).

**P.      Compliance with Bankruptcy Code Requirements—Section 1129(a)(1).**

22.      The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code.

**(i)          Proper Classification—Sections 1122 and 1123(a)(1).**

23.      The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code.  In accordance with sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Interests into eleven Classes.  Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests.  The classifications were not implemented for any improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Interests. Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  Accordingly, the Plan satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.

**(ii)          Specified Unimpaired Classes—Section 1123(a)(2).**

24.      Article III of the Plan specifies that Claims in Class 1 (Secured Tax Claims) and Class 2 (Other Priority Claims) are Unimpaired under the Plan and Claims and Interests in Class 7 (Intercompany Claims) and Class 8 (Intercompany Interests), respectively, are either Impaired or Unimpaired under the Plan.

25.      Article III of the Plan specifies that Claims in the following Classes are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code:

| Class | Designation |
| --- | --- |
| 1 | Secured Tax Claims |

| | |
|---|---|
| 2 | Other Priority Claims |

26.    Additionally, Article II of the Plan specifies that Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, and all fees due and payable pursuant to section 1930 of title 28 of the United States Code before the Effective Date will be paid in full in accordance with the terms of the Plan, although these Claims are not separately classified under the Plan. Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

(iii)        **Specified Treatment of Impaired Classes—Section 1123(a)(3).**

27.    The Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code. Article III of the Plan specifies that Claims and Interests, as applicable, in the following Classes (collectively, the "Impaired Classes") are Impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, and describes the treatment of such Classes.

| Class | Designation |
|---|---|
| 3 | Account Holder Claims |
| 4A | OpCo General Unsecured Claims |
| 4B | HoldCo General Unsecured Claims |
| 4C | TopCo General Unsecured Claims |
| 5 | Alameda Loan Facility Claims |
| 6 | Section 510(b) Claims |
| 9 | Existing Equity Interests |

(iv)        **No Discrimination—Section 1123(a)(4).**

28.    The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.

16

(v)       **Adequate Means for Plan Implementation—Section 1123(a)(5).**

29.      The Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code. The provisions in Article IV and elsewhere in the Plan and the Plan Supplement, and in the exhibits and attachments to the Disclosure Statement provide, in detail, adequate and proper means for the Plan's implementation, including the:   (a) effectuation of the Restructuring Transactions contemplated by the Plan, the Restructuring Transactions Memorandum, and the Customer Onboarding Protocol; (b) consummation of the Sale Transaction by the Outside Date pursuant to the Asset Purchase Agreement; (c) if the Sale Transaction is not consummated by the Outside Date pursuant to the Asset Purchase Agreement, then the effectuation of the Liquidation Transaction in accordance with the Liquidation Procedures; (d) adoption and implementation of the Employee Transition Plan; (e) retention of certain Claims or Causes of Action held by the Debtors or their Estates, which shall be assigned and transferred to the Wind-Down Debtor after the Effective Date; (f) effectuation of the terms of the D&O Settlement; (g) authorization for the Debtors and the Wind-Down Debtor, as applicable, to take all actions as may be necessary or appropriate to effectuate the Restructuring Transactions and any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan; (h) establishment of the Wind-Down Debtor pursuant to the Plan Administrator Agreement and the transfer of the Wind-Down Debtor Assets to the Wind-Down Debtor after the Effective Date; (i) the funding and sources of consideration for the Plan distributions; and (j) settlement, satisfaction, and compromise of Claims and Interests as set forth in the Plan.

(vi)       **Voting Power of Equity Securities—Section 1123(a)(6).**

30.      Section 1123(a)(6) of the Bankruptcy Code requires that a debtor's corporate constituent documents prohibit the issuance of nonvoting equity securities.  On the Effective

17

Date the Wind-Down Debtor Assets shall, subject to the Plan Administrator Agreement, be transferred to and vest in the Wind-Down Debtor. The Wind-Down Debtor shall be managed by the Plan Administrator and shall be subject to a Wind-Down Debtor Oversight Committee. The Plan Administrator shall be responsible for, among other things: (a) implementing the Wind-Down Debtor, and making distributions contemplated by the Plan; (b) marshalling, marketing for sale, and winding down any of the Debtors' assets constituting Wind-Down Debtor Assets; (c) appointing an independent director at each Debtor to act as a fiduciary for such Debtor entity in connection with the resolution of the Intercompany Claims; (d) overseeing the accounts of the Debtors and the Wind-Down Debtor and the wind-down and dissolution of the Debtors and the Wind-Down Debtor, including effectuating the transactions described in the Restructuring Transactions Memorandum; (e) receiving, maintaining, conserving, supervising, prosecuting, collecting, settling, managing, investing, protecting, and where appropriate, causing the Wind-Down Debtor to abandon the Wind-Down Debtor Assets, including causing the Wind-Down Debtor to invest any moneys held as Wind-Down Debtor Assets; (f) opening and maintaining bank accounts on behalf of or in the name of the Debtors or the Wind-Down Debtor, including, in the Plan Administrator's discretion, separate bank accounts for each of the Debtors; (g) entering into any agreement or executing any document or instrument required by or consistent with the Plan, this Confirmation Order, or the Plan Administrator Agreement, and to perform all obligations thereunder; (h) collecting and liquidating all Wind-Down Debtor Assets, including the sale of any Wind-Down Debtor Assets; (i) protecting and enforcing the rights to the Wind-Down Debtor Assets (including any Vested Causes of Action and Contributed Third-Party Claims) vested in the Wind-Down Debtor and Plan Administrator by the Plan Administrator Agreement by any method deemed appropriate, including, without limitation, by

18

judicial proceedings or otherwise; (j) investigating any Wind-Down Debtor Assets, and any

other potential Vested Causes of Action and Contributed Third-Party Claims; (k) reviewing,

reconciling, compromising, settling, objecting, or prosecuting Claims or Interests of any kind;

(l) seeking the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure

2004; (m) retaining professionals, disbursing agents, and other agents, independent contractors,

and third parties pursuant to the Plan Administrator Agreement and paying the reasonable

compensation thereof; (n) paying all lawful expenses, debts, charges, taxes, and other liabilities,

and making all other payments relating to the Wind-Down Debtor Assets, solely out of

Wind-Down Debtor Assets; (o) prosecuting and settling the Vested Causes of Action, including,

without limitation, the 3AC Claims, FTX Claims, Alameda Claims, Contributed Third-Party

Claims, and any causes of action not included in the Asset Purchase Agreement or released

under the Plan; (p) reviewing, reconciling, pursuing, commencing, prosecuting, compromising,

settling, dismissing, releasing, waiving, withdrawing, abandoning, resolving, or electing not to

pursue all Vested Causes of Action and Contributed Third-Party Claims; (q) acquiring litigation

and other claims related to the Debtors, and prosecuting such claims; (r) reviewing and

compelling turnover of the Debtors or the Wind-Down Debtor's property; (s) calculating and

making all Distributions to the holders of Allowed Claims against each Debtor and, solely to the

extent of payment in full of Allowed Claims, to holders of Allowed Interests, as provided for in,

or contemplated by, the Plan and the Plan Administrator Agreement; *provided* that because the

Plan does not substantively consolidate the Debtors' Estates, the Plan Administrator shall make

Distributions from the Wind-Down Debtor Assets to the holders of Claims and Interests (if

applicable) against that specific Debtor; (t) establishing, administering, adjusting, and

maintaining the Wind-Down Reserve and the Disputed Claims Reserve; (u) withholding from

the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the Plan Administrator has determined, based upon the advice of his agents or professionals, may be required to be withheld from such Distribution under the income tax or other laws of the United States or of any state or political subdivision thereof; (v) in reliance upon the Debtors' Schedules, the official Claims Register maintained in the Chapter 11 Cases and the Debtors' filed lists of equity security holders, reviewing, and where appropriate, allowing or objecting to Claims and (if applicable) Interests, and supervising and administering the commencement, prosecution, settlement, compromise, withdrawal, or resolution of all objections to Disputed Claims and (if applicable) Disputed Interests required to be administered by the Wind-Down Debtor; (w) making all tax withholdings, filing tax information returns, filing and prosecuting tax refunds claims, making tax elections by and on behalf of the Debtors or the Wind-Down Debtor, and filing tax returns for the Debtors or the Wind-Down Debtor pursuant to and in accordance with the Plan, and paying taxes, if any, payable for and on behalf of the Debtors or the Wind-Down Debtor, as applicable; *provided, however*, that notwithstanding any other provision of the Plan Administrator Agreement, the Plan Administrator shall not have any responsibility or personal liability in any capacity whatsoever for the signing or accuracy of the Debtors' income tax returns that are due to be filed after the Effective Date or for any tax liability related thereto; (x) abandoning or donating to a charitable organization qualifying under IRC section 501(c)(3) any Wind-Down Debtor Assets that the Plan Administrator determines to be too impractical to distribute or of inconsequential value; (y) seeking a determination of tax liability or refund under Bankruptcy Code section 505; (z) establishing reserves for taxes, assessments, and other expenses of administration of the Debtors or the Wind-Down Debtor as may be necessary and appropriate for the proper operation of matters incident to the Debtors or

20

the Wind-Down Debtor; paying Wind-Down Debtor Expenses; (aa) if the Plan Administrator

deems appropriate in the Plan Administrator's sole discretion, seeking to establish a bar date for

filing proofs of Interest in any Debtor or otherwise to determine the holders and extent of

Allowed Interests in any Debtor; (bb) purchasing and carrying all insurance policies that the Plan

Administrator deems reasonably necessary or advisable and paying all associated insurance

premiums and costs; (cc) undertaking all administrative functions remaining in the Chapter 11

Cases to the extent necessary to carry out the Debtors', the Wind-Down Debtor's, or the Plan

Administrator's duties under the Plan, including reporting and making required payments of fees

to the U.S. Trustee and overseeing the closing of the Chapter 11 Cases; (dd) retaining,

terminating, appointing, hiring, or otherwise employees, personnel, management, and directors

at any of the Debtors to the extent necessary to carry out the purposes of the Plan Administrator

Agreement and the Plan, including, without limitation, to address any disputes between the

Debtors; (ee) exercising, implementing, enforcing, and discharging all of the terms, conditions,

powers, duties, and other provisions of the Plan, the Confirmation Order, and the Plan

Administrator Agreement; and (ff) taking all other actions consistent with the provisions of the

Plan and the Plan Administrator Agreement that the Plan Administrator deems reasonably

necessary or desirable to administer the Debtors and the Wind-Down Debtor.  Further, on or

prior to the Effective Date, the Wind-Down Debtor's organizational documents will be amended

to prohibit the issuance of non-voting equity securities.  Accordingly, the Plan satisfies the

requirements of section 1123(a)(6) of the Bankruptcy Code.

### (vii)    Directors and Officers—Section 1123(a)(7).

31.    The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

Article IV.J of the Plan provides that, upon filing of the certificate of dissolution (or equivalent

document), the Wind-Down Debtor will be dissolved. Article IV.H of the Plan provides for the formation of the Wind-Down Debtor for the benefit of the Wind-Down Debtor Beneficiaries. The Wind-Down Debtor shall be managed by the Plan Administrator and shall be subject to a Wind-Down Debtor Committee. The selection of the Plan Administrator by the Committee, in consultation with the Debtors, is consistent with the interests of Holders of Claims and Interests and public policy. The appointment of the Plan Administrator identified in the Plan Supplement is approved, and the Plan Administrator's duties shall commence as of the Effective Date. In accordance with the Plan Administrator Agreement, the Plan Administrator shall serve in such capacity through the earlier of (i) the date on which the Wind-Down Debtor is dissolved in accordance with the Plan Administrator Agreement, and (ii) the date on which the Plan Administrator resigns, is terminated, or is otherwise unable to serve; *provided*, *however*, that, in the event that the Plan Administrator resigns, is terminated, or is otherwise unable to serve, the Wind-Down Debtor Oversight Committee shall appoint a successor to serve as the Plan Administrator in accordance with the Plan Administrator Agreement. If the Wind-Down Debtor Oversight Committee does not appoint a successor within the time periods specified in the Plan Administrator Agreement, then the Court, upon the motion of any party-in-interest, including counsel to the Wind-Down Debtor, shall approve a successor to serve as the Plan Administrator. Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

      **(viii)**        **Impairment / Unimpairment of Classes—Section 1123(b)(1).**

32.      The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code. Article III of the Plan leaves each Class of Claims and Interests Impaired or Unimpaired.

      **(ix)**        **Treatment of Executory Contracts and Unexpired Leases—Section 1123(b)(2).**

33.      The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code. Article V of the Plan provides that, on the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease:  (1) is specifically described in the Plan as to be assumed in connection with Confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (2) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (3) is to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with the Sale Transaction; (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (5) is a D&O Liability Insurance Policy other than the Side-A Policy.  Each of the Debtors' determinations regarding the assumption and rejection of Executory Contracts and Unexpired Leases is based on and within the sound business judgment of the Debtors, is necessary to the implementation of the Plan, and is in the best interests of the Debtors, their Estates, Holders of Claims and Interests, and other parties in interest in these Chapter 11 Cases.

(x)      **Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action—Section 1123(b)(3).**

34.      The Plan is consistent with section 1123(b)(3) of the Bankruptcy Code.  Except as otherwise provided in the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies settled, compromised, satisfied, or otherwise resolved pursuant to the Plan.  The Plan is deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of this Confirmation Order constitutes the Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 of all such Claims, Interests, Causes of Action, and controversies, as well as a finding that such compromise and settlement is fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.  Subject to Article VI of the Plan, all distributions made to Holders of Allowed Claims and Interests in any Class are intended to be and shall be final.

(xi)      **Additional Plan Provisions—Section 1123(b)(6).**

35.      The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

**Q.      Debtor Compliance with the Bankruptcy Code—Section 1129(a)(2).**

36.      The Debtors have complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court, and thus,

satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.  Specifically, each

Debtor:

    a.   is an eligible debtor under section 109, and a proper proponent of the Plan under section 1121(a), of the Bankruptcy Code; and

    b.   complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Local Rules, any applicable nonbankruptcy law, rule and regulation, the Conditional Disclosure Statement Order, and all other applicable law, in transmitting the Solicitation Packages and related documents and notices, and in soliciting and tabulating the votes on the Plan.

### R.    Plan Proposed in Good Faith—Section 1129(a)(3).

37.    The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  In so

determining, the Court has examined the totality of the circumstances surrounding the filing of

these Chapter 11 Cases, the Plan itself, the process leading to Confirmation, including the

support of Holders of Claims and Interests for the Plan, and the transactions to be implemented

pursuant thereto.  These Chapter 11 Cases were filed, and the Plan was proposed, with the

legitimate purpose of allowing the Debtors to implement the Restructuring Transactions and

maximize the value of the Estates and the recoveries of Holders of Claims and Interests.

### S.    Payment for Services or Costs and Expenses—Section 1129(a)(4).

38.    The procedures set forth in the Plan for the Court's review and ultimate

determination of the fees and expenses to be paid by the Debtors in connection with these

Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, satisfy

the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

**T.      Directors, Officers, and Insiders—Section 1129(a)(5).**

39.      Because the Plan provides for the winding down and dissolution of the Debtors, section 1129(a)(5) of the Bankruptcy Code does not apply to the Debtors.  To the extent section 1129(a)(5) applies to the Wind-Down Debtor, the requirements of this provision are satisfied by, among other things, disclosing the identity and terms of compensation of the Plan Administrator and the Wind-Down Debtor Oversight Committee.

**U.      No Rate Changes—Section 1129(a)(6).**

40.      Section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases.   The Plan does not propose any rate change subject to the jurisdiction of any governmental regulatory commission.

**V.      Best Interest of Creditors—Section 1129(a)(7).**

41.      The Plan is in the best interests of the Debtors' creditors and satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.  The liquidation analysis attached to the Disclosure Statement and the other evidence related thereto in support of the Plan that was proffered or adduced in the Declarations or at, prior to, or in connection with the Combined Hearing:  (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that Holders of Allowed Claims and Interests in each Class will recover at least as much under the Plan on account of such Claim or Interest, as of the Effective Date, as such Holder would receive if the Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.

### W.    Acceptance by Certain Classes—Section 1129(a)(8).

42.    Class 1 (Secured Tax Claims) and Class 2 (Other Priority Claims) are Unimpaired under the Plan and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Class 3 (Account Holder Claims), Class 4A (OpCo General Unsecured Claims), Class 4B (HoldCo General Unsecured Claims), and Class 4C (TopCo General Unsecured Claims) are impaired under the Plan and voted to accept the Plan.  Class 5 (Alameda Loan Facility Claims), Class 6 (Section 510(b) Claims), and Class 9 (Existing Equity Holders) are impaired under the Plan and are deemed to reject the Plan.  Because the Plan has not been accepted by the Deemed Rejecting Classes, the Debtors seek Confirmation under section 1129(b), solely with respect to the Deemed Rejecting Classes, rather than section 1129(a)(8) of the Bankruptcy Code.  Although section 1129(a)(8) has not been satisfied with respect to the Deemed Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes as described further below.  As a result, the requirements of section 1129(b) of the Bankruptcy Code are satisfied.

### X.    Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code—Section 1129(a)(9).

43.    The treatment of Allowed Administrative Claims, Allowed Professional Fee Claims, and Allowed Priority Tax Claims under Article II of the Plan, and of Allowed Other Priority Claims under Article III of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

### Y.    Acceptance by At Least One Impaired Class—Section 1129(a)(10).

44.    The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.  As evidenced by the Voting Report, the Voting Classes voted to accept the

Plan by the requisite numbers and amounts of Claims, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code), specified under the Bankruptcy Code.

**Z.      Feasibility—Section 1129(a)(11).**

45.      The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  The evidence supporting the Plan proffered or adduced by the Debtors at or before the Combined Hearing: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) has not been controverted by other persuasive evidence; (c) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization; (d) establishes that the Distribution Agent, or the Wind-Down Debtor, as applicable, will have sufficient funds available to meet their obligations under the Plan—including sufficient amounts of Cash, Cryptocurrency, or other consideration, as applicable, to reasonably ensure payment of, among other things, Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Account Holder Claims, and Allowed General Unsecured Claims, as applicable, pursuant to the terms of the Plan and in accordance with section 507(a) of the Bankruptcy Code; and (e) establishes that the Wind-Down Debtor will have the financial wherewithal to satisfy their obligations following the Effective Date.

**AA.      Payment of Statutory Fees—Section 1129(a)(12).**

46.      The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.  Article XII.C of the Plan provides for the payment of all fees due and payable under 28 U.S.C. § 1930 by each of the Wind-Down Debtor (or the Distribution Agent on behalf of the Wind-Down Debtor).

28

**BB.    Continuation of Employee Benefits—Section 1129(a)(13).**

47.    The Debtors do not have any remaining obligations to pay retiree benefits (as defined in section 1114 of the Bankruptcy Code).   Therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases or the Plan.

**CC.    Non-Applicability of Certain Sections—Sections 1129(a)(14), (15), and (16).**

48.    Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.  The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.

**DD.    "Cram Down" Requirements—Section 1129(b).**

49.    The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that the Deemed Rejecting Classes have not accepted the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code.  *First*, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met.  *Second*, the Plan is fair and equitable with respect to Class 5 (Alameda Loan Facility Claims), Class 6 (Section 510(b) Claims), and Class 9 (Existing Equity Interests).  The Plan has been proposed in good faith, is reasonable, and meets the requirements that (a) no Holder of any Claim or Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Interest, and (b) no Holder of a Claim or Interest in a Class senior to such Classes is receiving more than payment in full on account of its Claim or Interest.   Specifically, to the extent Class 8 (Intercompany Interests) are Reinstated, such treatment is provided for administrative convenience and efficiency, and not on account of such Interests, and will not alter the treatment provided for any other Holder of any Claim or Interest. Further, Class 7 (Intercompany Claims) will receive the treatment as determined by the Court.

Accordingly, the Plan is fair and equitable towards all Holders of Claims and Interests in the Deemed Rejecting Classes. *Third*, the Plan does not discriminate unfairly with respect to the Deemed Rejecting Classes because similarly situated Claim and Interest Holders will receive substantially similar treatment on account of their Claims or Interests, as applicable, in such class. Therefore, the Plan may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

### EE.    Only One Plan—Section 1129(c).

50.    The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code. The Plan is the only chapter 11 plan filed in each of these Chapter 11 Cases.

### FF.    Principal Purpose of the Plan—Section 1129(d).

51.    The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

### GG.    Not Small Business Cases—Section 1129(e).

52.    The Chapter 11 Cases are not small business cases and, accordingly, section 1129(e) of the Bankruptcy Code does not apply to the Chapter 11 Cases.

### HH.    Good Faith Solicitation—Section 1125(e).

53.    The Debtors have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to support and consummation of the Plan, including the solicitation and receipt of acceptances of the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

II.     **Satisfaction of Confirmation Requirements.**

54.     Based on the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

JJ.     **Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

55.     Each of the conditions precedent to the Effective Date, as set forth in Article IX.A of the Plan, has been or is reasonably likely to be satisfied or, as applicable, waived in accordance with Article IX.B of the Plan.

KK.     **Implementation.**

56.     All documents and agreements necessary to implement the transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement, and all other relevant and necessary documents (including the Asset Purchase Agreement) have been negotiated in good faith and at arm's length, are in the best interests of the Debtors, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and shall not be in conflict with any federal, state, or local law.  The Debtors are authorized to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby.

LL.     **Executory Contracts and Unexpired Leases.**

57.     The Debtors' decisions to assume or reject certain Executory Contracts and Unexpired Leases, as provided in Article V of the Plan and in the Plan Supplement, are reasonable exercises of the Debtors' business judgment.  The Debtors have demonstrated adequate assurance of future performance of the assumed Executory Contracts and Unexpired Leases within the meaning of section 365(b)(1)(C) of the Bankruptcy Code by the Wind-Down Debtor.

58.     Except with respect to the Executory Contracts and Unexpired Leases discussed in the following paragraph of this Confirmation Order, the amounts set forth in the Plan Supplement (the "Cure Amounts") are the sole amounts necessary to be paid upon assumption of the associated Executory Contracts and Unexpired Leases under section 365(b)(1)(A) and (B) of the Bankruptcy Code, and the payment of such amounts will effect a cure of all defaults existing under such Executory Contracts and Unexpired Leases and compensate the counterparties to such Executory Contracts and Unexpired Leases for any actual pecuniary loss resulting from all defaults existing under such Executory Contracts and Unexpired Leases as of the Effective Date.

59.     The objections of counterparties to the assumption of their Executory Contracts and Unexpired Leases, to the extent that such objection was timely raised in accordance with Article V.C of the Plan, are preserved and will be considered by the Court at a date and time to be scheduled.  As provided in the Conditional Disclosure Statement Order and the Solicitation Packages, the Debtors and the Wind-Down Debtor have reserved the right to (a) add any Executory Contract or Unexpired Lease to the Assumed Contract Schedule and assume such Executory Contract or Unexpired Lease pursuant to the terms of the Plan, or remove any Executory Contract or Unexpired Lease from the Assumed Contract Schedule, in each case, up until the Effective Date and (b) contest any Claim asserted in connection with rejection of any Executory Contract or Unexpired Lease.

**MM.  Disclosure of Facts.**

60.     The Debtors have disclosed all material facts regarding the Plan, including with respect to consummation of the Sale Transaction and the Liquidation Transaction, as applicable.

**NN.    Appropriate Exercise of Business Judgment.**

61.    The Debtors' decision to effectuate the Sale Transaction or the Liquidation Transaction, as applicable, is an appropriate exercise of their business judgment.

**OO.    Good Faith.**

62.    The Debtors, the Released Parties, and the Releasing Parties have been and will be acting in good faith if they proceed to:  (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed by this Confirmation Order to wind-down the Debtors' businesses and effect the Sale Transaction or the Liquidation Transaction, as applicable, and the other Restructuring Transactions.  The Released Parties have made a substantial contribution to these Chapter 11 Cases.

**PP.    Essential Elements of the Plan.**

63.    The Sale Transaction is an essential element of the Plan, and consummation of the Sale Transaction is in the best interests of the Debtors, their estates, and their creditors. The Debtors have exercised sound business judgment in selecting the Purchaser and the Debtors have done so without collusion and in good faith.  The Purchaser is consummating the Sale Transaction in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code.  The Purchaser has proceeded in good faith and without collusion in all respects in connection with the Sale Transaction.  The Purchaser is therefore entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code, and the Sale Transaction, to the extent consummated, may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

64.    The Debtors' marketing process with respect to the Sale Transaction afforded a full, fair, and reasonable opportunity for any party to make a higher or otherwise better offer.  No

other party or parties has offered to purchase the Acquired Assets for greater overall value to the Debtors' Estates than the Purchaser. The Asset Purchase Agreement will provide a greater recovery for the Debtors' Estates than would be provided by any other available alternative. The Debtors' determination that the Sale Transaction is the most value-maximizing transaction is a valid and sound exercise of the Debtors' business judgment. Consummation of the Sale Transaction is in the best interests of the Debtors' Estates, their creditors, and other parties in interest.

65.    The consideration provided by the Purchaser pursuant to the Asset Purchase Agreement (a) is fair and reasonable, (b) constitutes the best offer for the Acquired Assets, and (c) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

66.    The Purchaser is not a mere continuation or substantial continuation of the Debtors or their Estates and there is no continuity of enterprise or common identity between the Purchaser and any of the Debtors. The Purchaser is not holding itself out to the public as a continuation of any of the Debtors. The Purchaser is not a successor to the Debtors or their Estates by reason of any theory of law or equity, and the Sale Transaction does not amount to a consolidation, merger, or de facto merger of the Purchaser with or into any of the Debtors. The Purchaser has entered into the Asset Purchase Agreement in material reliance on and with fair consideration provided for the Sale Transaction being free and clear of all claims and interests relating to the Debtors arising prior to the closing of the Sale Transaction, including any successor or vicarious liabilities of any kind or nature, as set forth herein and in the Asset

Purchase Agreement, and would not have entered into the Asset Purchase Agreement or the Sale Transaction without such terms and the findings herein.

67.    The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtors may sell, and upon the Closing of the Sale Transaction shall be deemed to have sold, assets and property pursuant to the Asset Purchase Agreement free and clear of any claims, liens, encumbrances, or other interests of any kind or nature whatsoever other than as expressly provided under the Asset Purchase Agreement.  In addition to and without limiting the foregoing, the proposed Sale Transaction is to be consummated under the Plan, and the assets and property to be sold pursuant to the Sale Transaction are dealt with by the Plan; therefore, except as expressly provided under the Asset Purchase Agreement, the Debtors may sell, and upon the Closing of the Sale Transaction shall be deemed to have sold, assets and property pursuant to the Asset Purchase Agreement free and clear of any claims, liens, encumbrances, or other interests of any kind or nature whatsoever pursuant to section 1141(c) of the Bankruptcy Code.

68.    The Debtors may sell, and upon the Closing of the Sale Transaction shall be deemed to have sold, such assets free and clear of all claims, liens, encumbrances, and other interests of any kind or nature whatsoever (other than as expressly permitted under the Asset Purchase Agreement) because, in each case, one or more of the standards set forth in sections 363(f)(l)–(5), 1129(b)(2)(A)(ii), 1141(a), or 1141(c) of the Bankruptcy Code has been satisfied. All holders of such claims, liens, encumbrances, or other interests against the Debtors, their Estates, or any of the assets subject to the Sale Transaction (a) who did not object, or who withdrew their objections, to the Sale Transaction are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code and (b) are bound by the Plan pursuant to section

35

1141(a) of the Bankruptcy Code.  All holders of such claims, liens, encumbrances, or other interests are adequately protected by having their claims, liens, encumbrances, or other interests, if any, in each instance against the Debtors, their Estates, or any of the assets subject to the Sale Transaction, attach to the proceeds of the Sale Transaction ultimately attributable to the assets in which such creditor alleges a claim, lien, encumbrance, or other interest, in the same order of priority, with the same validity, force, and effect that such claim, lien, encumbrance, or other interest had prior to consummation of the Sale Transaction, subject to any claims and defenses the Debtors and their Estates may possess with respect thereto, and with such claims, liens, encumbrances, or other interests being treated in accordance with the Plan.

69.    Article VIII.A of the Plan describes certain releases granted by the Debtors, the Wind-Down Debtor, and the Debtors' and the Wind-Down Debtor's Estates (the "Debtor Release").  The Debtors have satisfied the business judgment standard with respect to the propriety of the Debtor Release.  Such release is a necessary and integral element of the Plan, and is fair, reasonable, and in the best interests of the Debtors, the Debtors' Estates, and Holders of Claims and Interests.  The Debtors', the Wind-Down Debtor's and their Estates' pursuit of any such claims against the Released Parties is not in the best interests of the Estates' various constituencies because the costs involved would likely outweigh any potential benefit from pursuing such claims.  Additionally, including for the reasons set forth in the Declarations, the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by the Released Parties following extensive, arm's-length negotiations between sophisticated parties represented by able counsel; (b) a good-faith settlement and compromise of such Causes of Action released by the Debtor Release, which bore a substantial likelihood of complex and protracted litigation, with attendant expense, inconvenience, and delay; (c) in the best interests of

the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; (f) a sound exercise of the Debtors' business judgment; and (g) except to the extent contemplated by Article IV.F of the Plan, a bar to any of the Debtors, the Wind-Down Debtor or their Estates asserting any Cause of Action related thereto, of any kind, against any of the Released Parties or their property.

70.    Article IV.G of the Plan describes the D&O Settlement.  The D&O Settlement constitutes a good-faith compromise and settlement of all Claims, Causes of Action, disputes, and controversies released, settled, compromised, or otherwise resolved between the Debtors and the CEO and CCO.  The D&O Settlement is fair, equitable, and reasonable and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.

71.    Article VIII.B of the Plan describes certain releases granted by the Releasing Parties (the "Third-Party Release").  The Third-Party Release provides finality for the Debtors, the Wind-Down Debtor, and the other Released Parties.  The Third-Party Release is consensual with respect to the Releasing Parties.  The Combined Hearing Notice sent to Holders of Claims and Interests and published in *The New York Times* (National Edition) and the *Financial Times* (International Edition) on February 3, 2023, and the ballots and notices, as applicable, sent to Holders of Claims and Interests unambiguously stated that the Plan contains the Third-Party Release and that each Holder of Claims or Interests may elect not to grant such Third-Party Release.  Such release provisions of the Plan were conspicuous, emphasized with boldface type in the Plan, the Disclosure Statement, and the ballots and notices.  Among other things, the Plan provides appropriate and specific disclosure with respect to the claims and Causes of Action that are subject to the Third-Party Release, and no other disclosure or notice is necessary.  The Third-Party Release is a necessary and integral element of the Plan, and is fair,

37

equitable, reasonable, and in the best interests of the Debtors, the Debtors' Estates, and all Holders of Claims and Interests. Also, the Third-Party Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good-faith settlement and compromise of such the Claims released by the Third-Party Releases; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; (f) a sound exercise of the Debtors' business judgment; and (g) except to the extent contemplated by Article IV.E and Article IV.F of the Plan, a bar to any of the Debtors or Wind-Down Debtor or their respective Estates asserting any Cause of Action related thereto, of any kind, against any of the Released Parties or their property.

72.    The Third-Party Releases are consensual and those Holders of Claims and Interests who are bound by the Third-Party Releases voluntarily opted-in to the Third-Party Releases. The Plan does not release any third party's direct claims against non-Debtors (to the extent such direct claims exist) without such third party's express consent. Holders of Claims and Interests also had the ability to affirmatively elect to "contribute" their claims to the Wind-Down Debtor and vest the Wind-Down Debtor with authority to pursue such claims against the Debtors.

73.    The exculpation described in Article VIII.C of the Plan (the "Exculpation") is appropriate under applicable law because it was proposed in good faith, was formulated following extensive good-faith, arm's-length negotiations with key constituents, and is appropriately limited in scope. Without limiting anything in the Exculpation, each Exculpated Party has participated in these Chapter 11 Cases in good faith and, except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each

38

Exculpated Party is hereby released and exculpated as set forth in the Plan; *provided* that the foregoing "Exculpation" shall have no effect on the liability of any entity that results from any such act or omission that is determined by a Final Order to have constituted actual fraud, gross negligence, or willful misconduct, but in all respects such entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have participated in any and all activities potentially underlying any claim related to the Exculpat~~edion~~ ~~Claim~~provision in good faith and in compliance with the applicable laws, including distribution of Cryptocurrency in accordance with the Plan and the Asset Purchase Agreement. The Exculpation, including its ~~carve-out~~carve-out for actual fraud, gross negligence, or willful misconduct, is consistent with established practice in this jurisdiction and others.

74.     The injunction provision set forth in Article VIII.D of the Plan is necessary to prevent interference with the payment of Claims and Interests in the manner set forth in the Plan and is narrowly tailored to achieve these purposes.

75.     Article IV.P of the Plan provides that, in accordance with section 1123(b)(3) of the Bankruptcy Code, any Cause of Action that a Debtor may hold against any Entity shall vest in the Wind-Down Debtor, except as otherwise provided in the Plan, including Article VIII of the Plan. The Wind-Down Debtor, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Wind-Down Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Court in accordance

with the Plan.  The provisions regarding the preservation of Causes of Action in the Plan, including the Plan Supplement, are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Debtors' estates, and Holders of Claims and Interests.

76.    The full release and discharge of all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates described in Article VIII.E of the Plan (the "<u>Lien Release</u>") is necessary to implement the Plan.  The provisions of the Lien Release are appropriate, fair, equitable, and reasonable and are in the best interests of the Debtors, the Debtors' estates, and Holders of Claims and Interests.

## <u>ORDER</u>

BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

77.    **Findings of Fact and Conclusions of Law.**  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

78.    **Approval of the Disclosure Statement.**    The Disclosure Statement, the Solicitation Packages, and the Solicitation Procedures are approved on a final basis pursuant to section 1125 of the Bankruptcy Code.

79.    **Solicitation.**    To the extent applicable, the solicitation of votes on the Plan complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations, and was appropriate and satisfactory and is approved in all respects.

80. **Notice of Combined Hearing.** The Notice of Combined Hearing was appropriate and satisfactory and is approved in all respects.

81. **Confirmation of the Plan.** The Plan is approved in its entirety and CONFIRMED under section 1129 of the Bankruptcy Code. The terms of the Plan, including the Plan Supplement, are incorporated by reference into and are an integral part of this Confirmation Order.

82. **Objections.** All objections and all reservations of rights pertaining to Confirmation of the Plan and approval of the Disclosure Statement that have not been withdrawn, waived, or consensually resolved are overruled on the merits unless otherwise indicated in this Confirmation Order. All withdrawn objections, if any, are deemed withdrawn with prejudice. All objections to approval of the Disclosure Statement and Confirmation of the Plan not filed and served prior to the Objection Deadline, if any, are deemed waived and shall not be considered by the Court.

83. All parties have had a full and fair opportunity to litigate all issues raised or that might have been raised in the objections to approval of the Disclosure Statement and Confirmation of the Plan, and the objections have been fully and fairly litigated or resolved, including by agreed-upon reservations of rights as set forth in this Confirmation Order.

84. **Plan Modifications.** The Plan Modifications do not materially adversely affect the treatment of any Claim against or Interest in any of the Debtors under the Plan, and are hereby approved pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019. After giving effect to the Plan Modifications, the Plan continues to meet the requirements of sections 1122 and 1123 of the Bankruptcy Code. The filing with the Court on February 28, 2023 of the modifications to the Plan and the disclosure of any additional Plan Modifications on the

41

record at the Combined Hearing constitute due and sufficient notice thereof. Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

85.    **Deemed Acceptance of Plan.**    In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims and Interests who voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan, as modified by the Plan Modifications. No Holder of a Claim or Interest shall be permitted to change its vote as a consequence of the Plan Modifications.

86.    **Restructuring Transactions**.    On or before the Effective Date, the applicable Debtors will take any action as may be necessary or advisable to effectuate the Restructuring Transactions described in the Plan, the Restructuring Transactions Memorandum, and the Customer Onboarding Protocol, including: (a) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (d) the transfer or distribution of any Cryptocurrency or Cash pursuant to the Asset Purchase Agreement and the Plan, as applicable;

(e) the execution and delivery of the Plan Administrator Agreement; (f) any transactions necessary or appropriate to form the Wind-Down Debtor; (g) such other transactions that are required to effectuate the Restructuring Transactions, including any sales, mergers, consolidations, restructurings, conversions, dispositions, transfers, formations, organizations, dissolutions, or liquidations; (h) all transactions necessary to provide for the purchase of the Acquired Assets by Purchaser under the Asset Purchase Agreement; and (i) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

87.     This Confirmation Order shall, and shall be deemed to, pursuant to sections 1123 and 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including, as applicable, the Sale Transaction, the Liquidation Transaction, and the Restructuring Transactions, including, for the avoidance of doubt, entry into any agreements following the Confirmation Date by the Debtors, the Purchaser, and any of the Unsupported Jurisdictions in connection with Distributions contemplated to be made by Purchaser to Users and Eligible Creditors (as such terms are defined in the Asset Purchase Agreement) located in Unsupported Jurisdictions, pursuant to and in accordance with the Plan and the Asset Purchase Agreement.

88.     **The Sale Transaction.** The Sale Transaction and the Asset Purchase Agreement, all other ancillary documents, and all of the terms and conditions thereof, are hereby approved, pursuant to sections 105, 363, 364, and 554 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014, each as applicable.  Entry of this Confirmation Order shall authorize the Debtors, the Purchaser, and the Wind-Down Debtor, as applicable, to undertake the transactions

contemplated by the Asset Purchase Agreement, as applicable, including pursuant to sections 363, 365, 1123(a)(5)(B), and 1123(a)(5)(D) of the Bankruptcy Code.

89.    Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Sale Transaction pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement, (b) close the Sale Transaction as contemplated in the Asset Purchase Agreement, and (c) execute and deliver, perform under, consummate, implement, and fully close the Asset Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement and the Sale Transaction.

90.    Subject to the restrictions set forth in this Confirmation Order, the Plan, and the Asset Purchase Agreement, the Debtors and the Purchaser hereby are authorized to take any and all actions as may be necessary or desirable, including any actions that otherwise would require further approval by shareholders, members, or its board of directors, as the case may be, without the need of obtaining such approvals, to implement the Sale Transaction, and any actions taken by the Debtors or the Purchaser necessary or desirable to implement the Sale Transaction prior to the date of this Confirmation Order, hereby are approved and ratified.

91.    This Confirmation Order and the terms and provisions of the Asset Purchase Agreement shall be binding in all respects upon the Debtors, their affiliates, their estates, all creditors of and holders of equity interests in any Debtor, any holders of Liens, Claims, or other interests (whether known or unknown) in, against, or on all or any portion of the Acquired Assets, all counterparties to any executory contract or unexpired lease of the Debtors, the Purchaser and all successors and assigns of the Purchaser, the Acquired Assets, and any trustees,

examiners, or receivers, if any, subsequently appointed in any of the Debtors' chapter 11 cases

or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Debtors' cases. This

Confirmation Order and the Asset Purchase Agreement shall inure to the benefit of the Debtors,

their estates and creditors, the Purchaser, and the respective successors and assigns of each of the

foregoing.

92.     Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy

Code, the Debtors are authorized to transfer the Acquired Assets in accordance with the terms of

the Asset Purchase Agreement and such transfer shall constitute a legal, valid, binding, and

effective sale of the Acquired Assets and shall vest Purchaser with title to the Acquired Assets

subject to the Asset Purchase Agreement, and the Acquired Assets shall be free and clear of all

Liens, Claims, Encumbrances, and other interests of any kind or nature whatsoever (other than as

expressly permitted under the Asset Purchase Agreement), with all such Liens, Claims, or other

interests to attach to the cash proceeds of the Purchase Price ultimately attributable to the

property against or in which such Liens, Claims, or other interests are asserted, subject to the

terms thereof, with the same validity, force, and effect, and in the same order of priority, which

such Liens, Claims, or other interests had prior to the Transaction, subject to any rights, claims,

and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

93.     The sale of the Acquired Assets to the Purchaser pursuant to the Asset Purchase

Agreement and the consummation of the transactions contemplated by the Asset Purchase

Agreement do not require any consents other than as specifically provided for in the Asset

Purchase Agreement.   Each and every federal, state, and local governmental agency or

department is hereby authorized to accept any and all documents and instruments necessary and

appropriate to consummate the transactions contemplated by the Asset Purchase Agreement. A

certified copy of this Confirmation Order may be filed with the appropriate clerk or recorded with the recorder of any state, county, or local authority to act to cancel any of the Liens, Claims, and other encumbrances of record.

94.     If any person or entity that has filed statements or other documents evidencing Claims or Liens on, or interests in, all or any portion of the Acquired Assets shall not have delivered to the Debtors, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Claims, Liens, or interests which the person or entity has or may assert with respect to all or any portion of the Acquired Assets, the Debtors are hereby authorized, and the Purchaser is hereby authorized, on behalf of the Debtors and the Debtors' creditors, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Acquired Assets.  The Debtors and the Purchaser are each authorized to file a copy of this Confirmation Order, which, upon filing, shall be conclusive evidence of the release and termination of such Claim, Lien or interest.

95.     This Confirmation Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments; and each of the foregoing persons and entities is hereby directed to accept for filing any and all

of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

96.     All persons and entities that are presently, or on the Closing may be, in possession of some or all of the Acquired Assets pursuant to the Asset Purchase Agreement are hereby directed to surrender possession of the Acquired Assets to the Purchaser unless such person or entity was a good faith, bona fide purchaser of the Acquired Assets without notice of the Debtors' rights in such property.  Subject to the terms, conditions, and provisions of this Confirmation Order, all persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and/or transfer the Acquired Assets to the Purchaser in accordance with the terms of the Asset Purchase Agreement and this Confirmation Order.

97.     Except as otherwise permitted by the Asset Purchase Agreement, the Plan, or this Confirmation Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants, and other creditors, holding Liens, Claims, or other interests of any kind or nature whatsoever against or in all or any portion of the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors, the Acquired Assets, the operation of the Debtors' business prior to the closing of the Sale Transaction, or the transfer of the Acquired Assets to the Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchaser, any of the foregoing's affiliates, successors, or assigns, their property or the Acquired Assets, such persons' or entities' Liens, Claims, or interests in and to the Acquired

47

Assets, including, without limitation, the following actions:  (a) commencing or continuing in any manner any action or other proceeding against the Purchaser and each of its affiliates, successors, assets or properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Purchaser and each of its affiliates, successors, assets, or properties; (c) creating, perfecting, or enforcing any Lien or other Claim against the Purchaser and each of its affiliates, successors, assets, or properties; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Purchaser, its affiliates or its successors; or (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Confirmation Order, or the agreements or actions contemplated or taken in respect thereof.

98.    All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Acquired Assets to the Purchaser in accordance with the terms of the Asset Purchase Agreement, the Plan, and this Confirmation Order.

99.    Purchaser shall have no Liability (as defined in the Asset Purchase Agreement) for any Excluded Liability, and, other than as expressly set forth in the Asset Purchase Agreement, Purchaser is not assuming, by virtue of the consummation of the Sale Transaction, nor shall the Purchaser be liable or responsible for, as a successor or otherwise (including under any theory of successor or vicarious liability of any kind or character or any other theory of law or equity, including any theory of antirust, environmental successor or transferee liability, labor law, *de facto* merger, or substantial continuity (including under applicable Money Transmitter Requirements or any securities or commodities Laws of any Governmental Body)):

48

(i)     any Liability (as defined in the Asset Purchase Agreement), debts, commitments, or obligations of the Debtors or any of their predecessors or affiliates or any obligations of the Debtors or their predecessors or affiliates, in all cases whether known or unknown, disclosed or undisclosed, now existing or hereafter arising, asserted or unasserted, fixed or contingent, choate or inchoate, liquidated or unliquidated, and in all cases to the extent relating to or arising from, in any way whatsoever, the Acquired Assets or the Debtors' operation of their businesses or use of the Acquired Assets or any such liabilities, debts, commitments, or obligations that in any way whatsoever are to be observed, paid, satisfied, compromised, or performed (in each case, including any liabilities that result from, relate to or arise out of tort or product liability claims), or

(ii)    any Liability (as defined in the Asset Purchase Agreement) calculable by reference to the Debtors or their assets or operations, or relating to the operation of the Debtors' businesses prior to the Closing of the Sale Transaction, or relating to continuing conditions existing, including with respect to any of Debtors' predecessors or affiliates, which liabilities, debts, commitments, and obligations are hereby extinguished insofar as they may give rise to successor liability, without regard to whether the claimant asserting any such liabilities, debts, commitments, or obligations has delivered to the Purchaser a release thereof.

For the avoidance of doubt, (i) nothing herein shall release the Purchaser with respect to its obligations as Distribution Agent of Cryptocurrency and Cash to Holders of Account Holder Claims and OpCo General Unsecured Creditor Claims as provided in, and subject to the terms and conditions of, the Asset Purchase Agreement and the Plan, and (ii) notwithstanding the transfer to Purchaser, pursuant to the Asset Purchase Agreement, of any Acquired Assets that constitute Coins or Cash, each User and Eligible Creditor shall retain, from and after the Closing of the Sale Transaction, all right, title, and interest in and to such Coins and Cash allocated to it on the Binance.US Platform in accordance with the Asset Purchase Agreement (notwithstanding any terms and conditions of the Binance.US Platform to the contrary, if any) through and including such time as such Coins and Cash are returned or distributed to Seller or such User and Eligible Creditor, as applicable, and such Coins and Cash shall be held by Purchaser solely in a custodial capacity in trust and solely for the benefit of Seller or the applicable User or Eligible Creditor thereafter.

100.    The Asset Purchase Agreement and any related documents or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court.

101.    Paragraphs 88–100 of this Confirmation Order shall be deemed to be excised from this Confirmation Order in the event that the Asset Purchase Agreement is terminated prior

to Closing. For the avoidance of doubt, subject to the requirements set forth in the Asset Purchase Agreement (including, without limitation, Sections 6.22 and 5.2(c) thereof), the Debtors may exercise the "fiduciary out" in Section 8.1(g) of the Asset Purchase Agreement at any time prior to Closing.

102. **Corporate Action.** Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, directors, managers, managing-members, limited or general partners, or officers of the Debtors, the Wind-Down Debtor, or any other Entity.

103. All matters provided for in the Plan involving the corporate structure of the Debtors or the Wind-Down Debtor, as applicable, and any corporate action required by the Debtors or the Wind-Down Debtor, as applicable, in connection with the Plan shall be deemed to have occurred on, and shall be in effect as of, the Effective Date, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Wind-Down Debtor, as applicable. On or, as applicable, prior to the Effective Date, the appropriate officers of the Debtors or the Wind-Down Debtor, as applicable, shall be authorized and, as applicable, directed to issue, execute, and deliver the agreements, documents, certificates of incorporation, certificates of formation, bylaws, operating agreements, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Wind-Down Debtor, and any and all other agreements, documents, and instruments relating to the foregoing. The authorizations and approvals contemplated by Article IV.J of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

104.    As soon as practicable after the Effective Date, the Wind-Down Debtor shall take

such actions as the Wind-Down Debtor may determine to be necessary or desirable to carry out

the purposes of the Plan.  Any certificate of dissolution or equivalent document may be executed

by the Wind-Down Debtor on behalf of any Wind-Down Debtor without need for any action or

approval by the shareholders or board of directors or managers of such Debtor.  On and after the

Effective Date, the Debtors or the Wind-Down Debtor (1) for all purposes shall be deemed to

have withdrawn their business operations from any state in which the Debtors were previously

conducting, or are registered or licensed to conduct, their business operations, and shall not be

required to file any document, pay any sum, or take any other action in order to effectuate such

withdrawal, (2) shall be deemed to have cancelled pursuant to the Plan all Interests, and (3) shall

not be liable in any manner to any taxing authority for franchise, business, license, or similar

taxes accruing on or after the Effective Date.  Pursuant to the terms of the Plan, any Money

Transmitter Licenses that have not been terminated shall be deemed withdrawn and no further

action is required to be taken by the Debtors or the Wind-Down Debtor to effectuate such

withdrawal; *provided* that, following the Effective Date, the Debtors or the Wind-Down Debtor,

as applicable, shall use commercially reasonable efforts to comply with all state banking

department requirements for the surrender of a Money Transmitter License.  Notwithstanding

such Debtors' dissolution, such Debtors shall be deemed to remain intact solely with respect to

the preparation, filing, review, and resolution of applications for Professional Fee Claims.

105.    **Binding Effect.**  Upon the occurrence of the Effective Date, the terms of the Plan

are immediately effective and enforceable and deemed binding on the Debtors, the Wind-Down

Debtor, any and all Holders of Claims or Interests (regardless of whether such Holders of Claims

or Interests have, or are deemed to have, accepted the Plan), all Entities that are parties to or are

subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan or this Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

106. Pursuant to section 1141 of the Bankruptcy Code, subject to the occurrence of the Effective Date and subject to the terms of the Plan and this Confirmation Order, all prior orders entered in these Chapter 11 Cases and all documents and agreements executed by the Debtors as authorized and directed thereunder as of the Effective Date shall be binding upon and shall inure to the benefit of the Debtors, the Purchaser, or the Wind-Down Debtor, as applicable, and their respective successors and assigns.

107. **Vesting of Assets.** Except as otherwise provided in the Plan, this Confirmation Order, the Asset Purchase Agreement, the Schedule of Retained Causes of Action, or in any agreement, instrument, or other documented incorporated herein or therein, or in any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, notwithstanding any prohibition of assignability under applicable non-bankruptcy law and in accordance with section 1141 of the Bankruptcy Code, on the Effective Date, all property constituting Wind-Down Debtor Assets, including all Vested Causes of Action of the Debtors (unless otherwise released, waived, compromised, settled, satisfied, or transferred pursuant to the Plan) shall vest in the Wind-Down Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.

108. Prior to the Effective Date, any and all of the Debtors' assets shall remain assets of the Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and on the Effective

Date the Wind-Down Debtor Assets shall, subject to the Plan Administrator Agreement, be transferred to and vest in the Wind-Down Debtor.  For the avoidance of doubt, to the extent not otherwise waived in writing, released, settled, compromised, assigned, or sold pursuant to a prior order or the Plan, the Plan Administrator specifically retains and reserves the right to assert, after the Effective Date, any and all of the Vested Causes of Action and related rights, whether or not asserted as of the Effective Date, and all proceeds of the foregoing, subject to the terms of the Plan, including without limitation Article IV.F.

109.    Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, only the Wind-Down Debtor and the Plan Administrator shall have the right to pursue or not to pursue, or, subject to the terms hereof and the Plan Administrator Agreement, compromise or settle any Wind-Down Debtor Assets transferred to the Wind-Down Debtor.  On and after the Effective Date, the Wind-Down Debtor and the Plan Administrator may, without further Court approval, commence, litigate, and settle any Vested Causes of Action or Claims relating to any Wind-Down Debtor Assets transferred to the Wind-Down Debtor or rights to payment or Claims that belong to the Debtors as of the Effective Date or are instituted by the Wind-Down Debtor and Plan Administrator on or after the Effective Date, except as otherwise expressly provided herein and in the Plan Administrator Agreement.  The Wind-Down Debtor shall be entitled to enforce all defenses and counterclaims to all Claims asserted against the Debtors and their Estates, including setoff, recoupment and any rights under section 502(d) of the Bankruptcy Code.

110.    Notwithstanding    any    prohibition    on    assignability    under    applicable non-bankruptcy law, on the Effective Date and thereafter if additional Wind-Down Debtor Assets become available, the Debtors shall be deemed, subject to the Plan Administrator Agreement, to have automatically transferred to the applicable Wind-Down Debtor all of their

right, title, and interest in and to all of the Wind-Down Debtor Assets, in accordance with section 1141 of the Bankruptcy Code.  All such assets shall automatically vest in the Wind-Down Debtor free and clear of all Claims, Liens, and other interests, subject only to the Allowed Claims and Interests as set forth in the Plan and the expenses of the Wind-Down Debtor as set forth in the Plan and in the Plan Administrator Agreement.  Thereupon, the Debtors shall have no interest in or with respect to the Wind-Down Debtor Assets or the Wind-Down Debtor.

111.    On the Effective Date, the Debtors or Plan Administrator, as applicable, may establish one or more accounts or funds to hold and dispose of certain assets, pursue certain litigation (including the Vested Causes of Action), and/or satisfy certain Claims (including Claims that are contingent or have not yet been Allowed).  For any such account or fund, the Debtors or the Plan Administrator, as applicable, may take the position that grantor trust treatment applies in whole or in part.  To the extent such treatment applies to any such account or fund, for all U.S. federal income tax purposes, the beneficiaries of any such account or fund would be treated as grantors and owners thereof, and it is intended, to the extent reasonably practicable, that any such account or fund would be classified as a liquidating trust under section 301.7701-4 of the Treasury Regulations.  Alternatively, any such account or fund may be subject to the tax rules that apply to "disputed ownership funds" under 26 C.F.R. 1.468B–9.  If such rules apply, such assets would be subject to entity-level taxation, and the Debtors and Plan Administrator would be required to comply with the relevant rules.

112.    **Effectiveness of All Actions**.  All actions contemplated by the Plan, including all actions in connection with the Sale Transaction or the Liquidation Transaction, as applicable, are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable, under this Confirmation Order, without further application to, or order of the Court, or further

action by the respective officers, directors, managers, members, or equity holders of the Debtors or the Wind-Down Debtor and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or equity holders.

113.    **Cancellation of Notes, Instruments, Certificates, and Other Documents.**  On the later of the Effective Date and the date on which distributions are made pursuant to the Plan (if not made on the Effective Date), except for the purpose of evidencing a right to and allowing Holders of Claims and Interests to receive a distribution under the Plan or to the extent otherwise specifically provided for in the Plan, this Confirmation Order, or any agreement, instrument, or other document entered into in connection with or pursuant to the Plan or the Restructuring Transactions, all notes, bonds, indentures, certificates, Securities, shares, purchase rights, options, warrants, collateral agreements, subordination agreements, intercreditor agreements, or other instruments or documents directly or indirectly evidencing, creating, or relating to any indebtedness or obligations of, or ownership interest in, the Debtors, giving rise to any Claims against or Interests in the Debtors or to any rights or obligations relating to any Claims against or Interests in the Debtors shall be deemed cancelled without any need for a Holder to take further action with respect thereto.

114.    For the avoidance of doubt, cancellation of Existing Equity Interests pursuant to the Plan shall not affect the rights of the Holders of Existing Equity Interests to receive distributions, if any, under the Plan on account of such Existing Equity Interests.  Holders of Existing Equity Interests shall continue to possess all rights, powers, privileges, and standing associated with such Existing Equity Interests as if those Existing Equity Interests continue to exist subject to the terms of the Plan and this Confirmation Order.

115.    **Distributions.**  The procedures governing distributions contained in Article VI of the Plan shall be, and hereby are, approved in their entirety.  Except as otherwise set forth in the Plan or this Confirmation Order, the Plan Administrator shall make all distributions required under the Plan and the timing of distributions required under the Plan or this Confirmation Order shall be made in accordance with and as set forth in the Plan, this Confirmation Order, or the Plan Administrator Agreement, as applicable; *provided* that, if a creditor does not timely provide the Plan Administrator with its taxpayer identification number in the manner and by the deadline established by the Plan Administrator and/or the Plan, the creditor shall be deemed to have forfeited its right to any current, reserved or future distributions provided for under the Plan and such creditor's Claim or Interest shall be disallowed and expunged without further order of the Court. Any such forfeited distribution shall be deemed to have reverted back to the Wind-Down Debtor for all purposes, including for distributions to other holders of Allowed Claims or Allowed Interests (as applicable) against the particular Debtor in respect of which the forfeited distribution was made, notwithstanding any federal, provincial or state escheat, abandoned or unclaimed property law to the contrary.

116.    **Claims Register.**  Any Claim or Interest that has been paid, satisfied, amended, superseded, cancelled, or otherwise expunged (including pursuant to the Plan) may be adjusted or expunged, as applicable, on the Claims Register at the direction of the Debtors or Wind-Down Debtor without the Debtors or Wind-Down Debtor having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Court.

117.    **Preservation of Rights of Action.**  In accordance with section 1123(b) of the Bankruptcy Code, the Wind-Down Debtor shall succeed to all rights to commence and pursue

any and all Vested Causes of Action of the Debtors, whether arising before or after the Petition

Date, including, without limitation, any actions specifically enumerated in the Schedule of

Retained Causes of Action other than Causes of Action released, waived, settled, compromised,

or transferred.  Such rights shall be preserved by the Debtors and Wind-Down Debtor and shall

vest in the Wind-Down Debtor, with the Wind-Down Debtor's rights to commence, prosecute, or

settle such Causes of Action preserved notwithstanding the occurrence of the Effective Date,

other than the Causes of Action expressly released, waived, settled, compromised, or transferred

by the Debtors pursuant to the releases and exculpations contained in the Plan, including in

Article VIII of the Plan or pursuant to the Asset Purchase Agreement, which shall be deemed

released and waived by the Debtors and the Wind-Down Debtor as of the Effective Date.

118.    The Wind-Down Debtor may pursue such Causes of Action, as appropriate, in

accordance with the best interests of the beneficiaries of the Wind-Down Debtor and in

accordance with the Plan Administrator Agreement and the Plan.  No Entity may rely on the

absence of a specific reference in the Schedules of Assets and Liabilities or Statement of

Financial Affairs, the Plan, the Plan Supplement, the Disclosure Statement, or the Schedule of

Retained Causes of Action to any Cause of Action against it as any indication that the Debtors or

the Wind-Down Debtor will not pursue any and all available Causes of Action against it.  The

Wind-Down Debtor, on behalf of the Debtors and the Wind-Down Debtor, expressly reserves all

rights to prosecute any and all Causes of Action against any Entity, except as otherwise provided

in the Plan, including Article VIII of the Plan.  Unless any Cause of Action of the Debtors is

expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or

pursuant to a Final Order, the Wind-Down Debtor, on behalf of the Debtors and Wind-Down

Debtor and in accordance with the Plan Administrator Agreement, expressly reserves all such

Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation.

119.    The Wind-Down Debtor, on behalf of the Debtors and the Wind-Down Debtor, reserves and shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Cause of Action that a Debtor may hold against any Entity shall vest in the Wind-Down Debtor, except as otherwise provided in the Plan, including Article VIII of the Plan.  The Wind-Down Debtor, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Wind-Down Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Court in accordance with the Plan.

120.    **Subordination.**  Except as expressly provided in the Plan, the allowance, classification, and treatment of all Allowed Claims against and Allowed Interests in the Debtors and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors and the Wind-Down

Debtor reserve the right to reclassify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

121.    **Release of Liens.**    Except as otherwise provided in the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan or this Confirmation Order on the Effective Date, and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors shall automatically revert to the applicable Debtor or Wind-Down Debtor, as applicable, and their successors and assigns, in each case, without any further approval or order of the Court and without any action or Filing being required to be made by the Debtors.    The presentation or filing of this Confirmation Order to or with any local, state, federal, or foreign agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

122.    **Governance of the Wind-Down Debtor.**    The Plan Administrator shall appoint an independent director at each Debtor to act as a fiduciary for such Debtor entity in connection with the resolution of the Intercompany Claims.

123.    **Intercompany Claims.**    For the avoidance of doubt, nothing in this Confirmation Order or the Plan shall have any impact on the validity, extent, priority, or treatment of the Intercompany Claims.    Any determination as to the validity, extent, priority, or treatment of the Intercompany Claims shall be determined by the Court in a separate matter on proper notice to parties in interest.    Notwithstanding anything to the contrary in this Confirmation Order or the

Plan, the rights of the ad hoc group of equityholders (the "AHG") to continue or participate in any adjudication of the Intercompany Claims are preserved, and any party reserves any and all rights, claims, and defenses in connection therewith, including without limitation, the Debtors and/or the Wind-Down Debtor's right to challenge the AHG's standing with respect thereto; *provided* that such right, claim, or defense is not based on any provision in this Confirmation Order or the Plan.

124. **FTX Settlement.** Pursuant to the terms of the FTX Settlement, the Debtors shall reserve and hold the amount of $445 million in Cash on account of the Preference Claims (as defined in the FTX Settlement) asserted by FTX, Alameda, and their estates in the FTX Bankruptcy Proceeding, subject to all defenses and counterclaims thereto, until the final resolution of the Preference Claims by settlement or a final and unappealable order by the court in the FTX Bankruptcy Proceeding, including any appeals therefrom.

125. **General Settlement of Claims and Interests.** As discussed in detail in the Disclosure Statement and as otherwise provided in the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan. The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of this Confirmation Order shall constitute the Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 of all such Claims, Interests, Causes of Action, and controversies, as

61

well as a finding by the Court that such compromise and settlement is fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests. Subject to Article VI of the Plan, all distributions made to Holders of Allowed Claims and Interests in any Class are intended to be and shall be final.

126.    **Third-Party Releases.**    For the avoidance of doubt, any party that did not affirmatively "opt in" to the Third-Party Releases contained in the Plan shall not be deemed to grant such Third-Party Releases contained in the Plan.

127.    **Contributed Third Party Claims.**    For the avoidance of doubt, any party that did not affirmatively "opt in" to contribute their Contributed Third-Party Claims to the Wind-Down Debtor shall not be deemed to contribute their claims to the Wind-Down Debtor; *provided*, *however*, that any party may contribute their Contributed Third-Party Claims to the Wind-Down Debtor on or after the Effective Date by separate agreement with the Plan Administrator and Wind-Down Debtor. Any such agreement shall be valid to the same extent as if the party affirmatively opted in to contribute their Contributed Third-Party Claims to the Wind-Down Debtor.

128.    **Operations After Closing.**    On and after the Effective Date, expect as otherwise provided in the Plan, the Debtors or the Wind-Down Debtor may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

129.    **Assumption and Rejection of Executory Contracts and Unexpired Leases.** On the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including any

employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (a) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (b) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (c) is to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with the Sale Transaction; (d) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (e) is a D&O Liability Insurance Policy other than the Side-A Policy.  Entry of this Confirmation Order constitutes approval of such assumptions, assignments, and rejections, including the assumption of the Executory Contracts or Unexpired Leases as provided in the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Except as otherwise provided in this Confirmation Order, any and all objections or reservations of rights in connection with the rejection of an Executory Contract or Unexpired Lease under the Plan, if any, are overruled on their merits.

130.    **Waiver or Estoppel.**  Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed prior to the Confirmation Date.

131.    **Insurance Policies and Surety Bonds.**  Each D&O Liability Insurance Policy (including, without limitation, any "tail policy" and all agreements, documents, or instruments related thereto) other than the Side-A Policy shall be assumed, in their entirety, without the need for any further notice to or action, order, or approval of the Court, as of the Effective Date, pursuant to sections 105 and 365 of the Bankruptcy Code with the Wind-Down Debtor being authorized to pursue any proceeds thereof on behalf of the Debtors or the Wind-Down Debtor. The Side-A Policy shall remain in effect during these Chapter 11 Cases with the Debtors, and the Wind-Down Debtor preserves all avoidance and other actions in connection with the premium paid thereunder.  All beneficiaries under the D&O Insurance Policies reserve their rights under such D&O Insurance Policies subject to the limitations set forth in the Plan.

132.    The Debtors or the Wind-Down Debtor, as applicable, shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policy (including, without limitation, any "tail policy" and all agreements, documents, or instruments related thereto) in effect prior to the Effective Date, and subject in all respects to the D&O Settlement, any current and former directors, officers, managers, and employees of the Debtors who served in such capacity at any time before or after the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy subject to the terms thereof regardless of whether such directors, officers, managers, and employees remain in such positions after the Effective Date.  Notwithstanding anything to the contrary in the Plan, the Debtors or the Wind-Down Debtor shall retain the ability to supplement such D&O Liability Insurance Policy as the Debtors or Wind-Down Debtor may deem necessary, subject to the prior written consent of the Wind-Down Debtor.

64

133.    The Debtors shall continue to satisfy their obligations under their insurance policies in full and continue such programs in the ordinary course of business.  Each of the Debtors' insurance policies, and any agreements, documents, or instruments relating thereto shall be treated as Executory Contracts under the Plan.  On the Effective Date:  (a) the Debtors shall be deemed to have assumed all such insurance policies and any agreements, documents, and instruments relating thereto in their entirety and (b) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the applicable Wind-Down Debtor(s) unaltered.

134.    **Authorization to Consummate.**  The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to consummation as set forth in Article IX of the Plan.

135.    **Professional Compensation.**  All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than sixty (60) days after the Effective Date.  The Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and Bankruptcy Rules.  The Wind-Down Debtor shall pay Professional Fee Claims in Cash to such Professionals in the amount the Court allows, including from funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by entry of an order of the Court; *provided* that the Debtors' and the Wind-Down Debtor's obligations to pay Allowed Professional Fee Claims shall not be limited or deemed limited to funds held in the Professional Fee Escrow Account.

136.    No later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Court.  No Liens, claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way.  No funds held in the Professional Fee Escrow Account shall be property of the Estates of the Debtors or the Wind-Down Debtor.  When all Professional Fee Claims Allowed by the Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Court, any remaining funds held in the Professional Fee Escrow Account shall be turned over to the Wind-Down Debtor without any further notice to or action, order, or approval of the Court or any other Entity.

137.    The Professionals shall deliver to the Debtors a reasonable and good-faith estimate of their unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Confirmation Date projected to be outstanding as of the anticipated Effective Date, and shall deliver such estimate no later than five Business Days prior to the anticipated Effective Date.  For the avoidance of doubt, no such estimate shall be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of a Professional's final request for payment of Professional Fee Claims Filed with the Court, and such Professionals are not bound to any extent by the estimates.  If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.  The total aggregate amount so estimated to be outstanding as of the anticipated Effective Date shall be utilized by the Debtors to determine the amount to be funded to the

Professional Fee Escrow Account; provided that the Wind-Down Debtor shall use Cash on hand to increase the amount of the Professional Fee Escrow Account to the extent fee applications are Filed after the Effective Date in excess of the amount held in the Professional Fee Escrow Account based on such estimates.

138.    Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors and/or the Wind-Down Debtor, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Wind-Down Debtor.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Wind-Down Debtor may employ and pay any Professional in the ordinary course of business for the period after the Confirmation Date without any further notice to or action, order, or approval of the Court.

139.    **Return of Deposits.**  All utilities, including, but not limited to, any Person or Entity that received a deposit or other form of adequate assurance of performance under section 366 of the Bankruptcy Code during these Chapter 11 Cases, must return such deposit or other form of adequate assurance of performance to the Wind-Down Debtor promptly following the occurrence of the Effective Date, if not returned or applied earlier.

140.    **Release, Exculpation, and Injunction Provisions.**  The release, exculpation, injunction, opt in, and related provisions set forth in the Plan are approved and authorized in their entirety, and such provisions are effective and binding on all Persons and Entities to the extent provided therein except as otherwise provided in this Confirmation Order, *provided,*

*however*, that nothing in the exculpation related provisions of the Plan shall release the Debtors from the provisions of the Plan governing satisfaction of Allowed Claims including Allowed Administrative Expense Claims or change the standard for liability on Allowed Claims or Allowed Administrative Expense Claims, subject to any applicable bankruptcy and non-bankruptcy law.

141.    For the avoidance of doubt, the Debtors are not seeking a discharge under section 1141(d).

142.    **Governmental Units.**  Nothing in this Confirmation Order or the Plan shall effect a release by the United States, the States or any of their agencies of any claim arising under the Internal Revenue Code, the environmental laws or any civil or criminal laws of the United States or the States, or under any rules or regulations enforced by the United States, the States or any of their agencies against the Released Parties, nor shall anything in the Confirmation Order or the Plan enjoin the United States or the States from bringing any claim, suit, action or other proceedings against the Released Parties for any liability for any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any civil or criminal laws of the United States or the States, or under any rules or regulations enforced by the United States, the States or any of their agencies, nor shall anything in the Confirmation Order or the Plan exculpate any such party from any liability to the United States, the States or any of their agencies, arising under the Internal Revenue Code, the environmental laws or any civil or criminal laws of the United States or the States, or under any rules or regulations enforced by the United States, the States or any of their agencies; *provided*, however, that nothing in this Confirmation Order or the Plan shall modify in any respect the relief previously granted in the Bar Date Order and thus no person or entity, including the United States, the States or any of

their agencies, can seek or receive a direct or indirect distribution of any property of the Debtors' estates unless they filed a Proof of Claim prior to the Governmental Bar Date; *provided*, further, that the United States, the States, and their agencies may not, and will not, allege that the Restructuring Transactions are a violation of any rules or regulations enforced by the United States, the States or any of their agencies, nor will they bring any claim against any Person on account of or relating to the Restructuring Transactions.

143.    Nothing in this Confirmation Order, the Disclosure Statement, the Plan, or the Asset Purchase Agreement releases, precludes, or enjoins: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) ("Governmental Unit") that is not a "claim" as defined in 11 U.S.C. § 101(5) ("Claim"); (ii) any Claim of a Governmental Unit arising on or after the Effective Date; or (iii) any liability to a Governmental Unit on the part of any non-Debtor (except to the extent set forth in paragraphs 97 and 99 herein); *provided*, however, that nothing in this Confirmation Order or the Plan shall modify in any respect the relief previously granted in the Bar Date Order; *provided*, further, that no Governmental Unit will allege that the Restructuring Transactions are a violation of any rules or regulations enforced by the United States, the States or any of their agencies, nor will they bring any claim against any Person on account of or relating to the Restructuring Transactions.  Nothing in this Confirmation Order, the Disclosure Statement, the Plan, or the Asset Purchase Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, without compliance with all applicable legal requirements.

144.    **Securities and Exchange Commission Provisions.**  Notwithstanding anything to the contrary in this Confirmation Order, or any findings announced at the Combined Hearing, nothing in this Confirmation Order, or announced at the Combined Hearing, constitutes a finding

under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the SEC to challenge transactions involving crypto tokens on any basis is expressly reserved.

145.    Notwithstanding any provision herein to the contrary, nothing in this Confirmation Order or the Plan grants this Court jurisdiction over any police and regulatory actions by the SEC, and the SEC shall retain the power and authority to commence and continue any such actions against any person or entity, including without limitation, the Debtors, in any forum with jurisdiction; *provided*, however, that nothing in this Confirmation Order or the Plan shall modify in any respect the relief previously granted in the Bar Date Order; *provided*, *however*, that the SEC will not allege that the Restructuring Transactions are a violation of any rules or regulations enforced by the SEC, nor will they bring any claim against any Person on account of or relating to the Restructuring Transactions.

146.    Upon the occurrence of the Effective Date, the Debtors' books and records shall be transferred to the Wind-Down Debtor, which shall continue to preserve all financial books and records, emails, and other financial documents relating to the Debtors' business that are currently in the Debtors' possession. The Wind-Down Debtor shall not destroy or otherwise abandon any such documents or records without providing advance notice to the SEC (c/o Therese Scheuer, U.S. Securities and Exchange Commission, 100 F Street, NE, Washington, DC 20549, ScheuerT@SEC.GOV) and seeking further authorization from this Court.  Nothing in the Plan or this Confirmation Order shall affect the obligations of the pre-Effective Date Debtors, the Wind-Down Debtor, and/or any transferee or custodian to maintain all books and records that are subject to any governmental subpoena, document preservation letter, or other investigative request from a governmental agency.

147.    Notwithstanding any language to the contrary herein, no provision in the Plan or this Confirmation Order shall (a) preclude the OSC or the SEC from enforcing its police or regulatory powers or (b) enjoin, limit, impair or delay the OSC or SEC from commencing or continuing any claims, causes of action, proceeding, or investigations against any non-Debtor person or non-Debtor entity in any forum.

148.    **Employee Transition Plan.**  The Employee Transition Plan, the terms of which are included in the Plan Supplement as <u>Exhibit H</u>, will be implemented following the Effective Date and is not subject to the Court's approval.

149.    **Compliance with Tax Requirements.**  In connection with the Plan, to the extent applicable, the Debtors, the Wind-Down Debtor, any Distribution Agent, and any other applicable withholding and reporting agents shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Debtors, the Wind-Down Debtor, the Distribution Agent, and any other applicable withholding and reporting agents shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including winding-down a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms that are reasonable and appropriate; *provided* that the Wind-Down Debtor and the Distribution Agent, as applicable, shall request appropriate documentation from the applicable distributees and allow such distributees a reasonable amount of time to respond.  The Debtors, the Wind-Down Debtor, the Distribution Agent, and any other applicable withholding and reporting

agents reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

150.    **Exemption from Certain Taxes and Fees.**   To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Debtor, the Wind-Down Debtor, the Purchaser, or to any other Entity) of property under the Plan or pursuant to:   (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Wind-Down Debtor; (b) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; or (d) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, including the Asset Purchase Agreement, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, sales or use tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.   All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever

appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall

forgo the collection of any such tax or governmental assessment, and shall accept for filing and

recordation any of the foregoing instruments or other documents without the payment of any

such tax or governmental assessment.

151.    **Termination of Asset Purchase Agreement.**  If the Asset Purchase Agreement

is terminated and the Sale Transaction is not consummated, all provisions in this Confirmation

Order relating to the Asset Purchase Agreement, the Sale Transaction, and the Purchaser shall be

of no force and effect, and the Debtors are authorized to consummate the Liquidation

Transaction without further order of the Court.

152.    **The Liquidation Transaction.**  If the Asset Purchase Agreement is terminated,

the Debtors shall pursue the Liquidation Transaction contemplated under the Plan and shall

provide all Holders of Claims and Interests with the treatment afforded to such Holders under the

Plan.    In the event that the Debtors determine to pursue the Liquidation Transaction

contemplated under Article IV of the Plan, the Debtors shall promptly notify the Court and all

parties in interest.  The Plan shall be deemed to satisfy all requirements under the Bankruptcy

Code with respect to either the Sale Transaction or the Liquidation Transaction pursuant to this

Confirmation Order.

153.    **Documents, Mortgages, and Instruments.**  Each federal, state, commonwealth,

local, foreign, or other governmental agency is authorized to accept any and all documents,

mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate

the Plan, including the Restructuring Transactions, and this Confirmation Order.

154.    **The BNY Objection.**  This Confirmation Order confirms that the Deed of Trust

and Assignment of Rents recorded January 5, 2023 Official Records of Orange County (the

"Deed") transferring title of 37 Black Hawk, Irvine, California 92603 (the "Property") from

Michael G. Beason and Mickey L. Wiebeis (collectively, the "Property Borrowers") to Voyager

Digital, LLC is void.  This Confirmation Order may be recorded against the Property as evidence

and confirmation that the Deed is void.  The Bank Of New York Mellon f/k/a the Bank Of New

York, As Trustee For The Certificateholders Of CWALT, Inc., Alternative Loan Trust 2005-38,

Mortgage Pass-Through Certificates, Series 2005-38 as Serviced by Shellpoint Mortgage

Servicing ("Shellpoint") shall be permitted to take any other the necessary actions to void the

Deed.  To the extent necessary, the automatic stay is lifted solely as it pertains to Shellpoint's

rights to take action against the Property and shall be effective immediately upon entry of this

Confirmation Order.  The Debtor(s) shall not be party to any foreclosure or other proceeding

related to the Property as they lack any interest in the Property.  Shellpoint shall release the

Debtors and the Wind-Down Debtor of any costs and claims incurred on account of the Property,

including any actions taken in any foreclosure or other proceeding or associated with voiding the

Deed.  This Confirmation Order shall in no way prevent Shellpoint from pursuing any and all

lawful rights and remedies as to the Property Borrowers.

155.    **Continued Effect of Stays and Injunction.**  Unless otherwise provided in the

Plan or this Confirmation Order, all injunctions or stays arising under or entered during these

Chapter 11 Cases under section 362 of the Bankruptcy Code or otherwise and in existence on the

Confirmation Date, shall remain in full force and effect until the later of the Effective Date and

the date indicated in the order providing for such injunction or stay.

156.    **Non-Severability.**  Each term and provision of the Plan, as it may have been

altered or interpreted in accordance with the foregoing, is:  (a) valid and enforceable pursuant to

its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors'

consent, consistent with the terms set forth herein; and (c) non-severable and mutually dependent.

157.    **Notice of Subsequent Pleadings.**  Except as otherwise provided in the Plan or in this Confirmation Order, notice of all subsequent pleadings in these Chapter 11 Cases after the Effective Date will be limited to the following parties:  (a) the Wind-Down Debtor and its counsel; (b) the U.S. Trustee; (c) counsel to the Purchaser; (d) any party known to be directly affected by the relief sought by such pleadings; and (e) any party that specifically requests additional notice in writing to the Debtors, the Wind-Down Debtor, or the Plan Administrator, as applicable, or files a request for notice under Bankruptcy Rule 2002 after the Effective Date. The Notice and Claims Agent shall not be required to file updated service lists.

158.    **Post-Confirmation Modifications.**    Subject to the limitations and terms contained in the Plan and Purchaser's consent rights under the Asset Purchase Agreement, the Debtors, with the consent of the Committee, reserve the right to (a) amend or modify the Plan before the entry of this Confirmation Order, in accordance with the Bankruptcy Code and the Bankruptcy Rules and (b) after the entry of this Confirmation Order, the Debtors or the Wind-Down Debtor, as applicable, may, upon order of the Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, to remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan consistent with the terms set forth in the Plan.

159.    **Plan Classification Controlling.**  The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder and the classifications set forth on the ballots tendered to or returned by the Holders of Claims or Interests in connection with voting on the Plan:  (a) were set forth thereon solely for purposes of

voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

160. **Choice of Law.**  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, documents, instruments, or contracts, in which case the governing law of such agreement shall control); provided that corporate, limited liability company, or partnership governance matters relating to the Debtors or the Wind-Down Debtor, as applicable, shall be governed by the laws of the jurisdiction of incorporation or formation of the relevant Debtor or Wind-Down Debtor, as applicable.

161. **Applicable Nonbankruptcy Law.**  The provisions of this Confirmation Order, the Plan and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

162. **Waiver of Filings.**  Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the Court or the Office of the U.S. Trustee is permanently waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

163.  **Governmental Approvals Not Required.**   This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority with respect to the dissemination, implementation, or consummation of the Plan and the Disclosure Statement, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.   As provided in section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license of the Debtors or Wind-Down Debtor on account of the filing or pendency of the Chapter 11 Cases.

164.  **Protection Against Discriminatory Treatment.**   As provided by section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Entity, including Governmental Units, shall discriminate against any Wind-Down Debtor or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, any Wind-Down Debtor, or any Entity with which a Wind-Down Debtor has been or is associated, solely because such Wind-Down Debtor was a debtor under chapter 11 of the Bankruptcy Code or may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases).

165.  **Notices of Confirmation and Effective Date.**   The Debtors or the Wind-Down Debtor, as applicable, shall serve notice of entry of this Confirmation Order, of the occurrence of the Effective Date, and of applicable deadlines (the "Notice of Confirmation") in accordance with Bankruptcy Rules 2002 and 3020(c) on all parties served with the Combined Hearing Notice seven Business Days after the Effective Date; *provided* that no notice of any kind shall be

required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Combined Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.  For those parties receiving electronic service, filing on the docket is deemed sufficient to satisfy such service and notice requirements.

166.    No later than ten Business Days after the Effective Date, the Wind-Down Debtor shall cause the Notice of Confirmation, modified for publication, to be published on one occasion in *The New York Times* (national edition) and *USA Today* (national edition).  Mailing and publication of the Notice of Confirmation in the time and manner set forth in this paragraph will be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c).  No further notice is necessary.

167.    The Notice of Confirmation will have the effect of an order of the Court, will constitute sufficient notice of the entry of this Confirmation Order to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable nonbankruptcy law.  The above-referenced notices are adequate under the particular circumstances of these Chapter 11 Cases and no other or further notice is necessary.

168.    **Dissolution of Statutory Committees.**  On the Effective Date, any statutory committee appointed in the Chapter 11 Cases shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases; *provided*, *however*, that such committees will remain in existence for the limited purposes of (a) pursuing, supporting, or otherwise participating in, any outstanding appeals in the Chapter

11 Cases; and (b) filing, objecting, or otherwise participating in, any final fee applications of Professionals.

169.    **Exemption from Registration.**  The Plan Administrator shall hold the equity of the Voyager Digital Ltd., to the extent that any new equity is issued, in an agency capacity, for the benefit of and to facilitate the rights of Holders of Interests provided under the Plan; *provided* that such equity, if issued, shall be uncertificated and non-transferable.

170.    The offering, distribution, issuance, and action contemplated by the Plan, including, but not limited to, the Restructuring Transactions, the rebalancing transactions as set forth in in Article IV.D.2 of the Plan, and distribution of Cryptocurrency to Holders of Claims, shall be offered, distributed, issued, or otherwise consummated without registration under the Securities Act or any similar federal, state, or local law in reliance upon (i) section 1145 of the Bankruptcy Code or (ii) pursuant to section 4(a)(2) under the Securities Act and/or Regulation D thereunder.

171.    Notwithstanding anything to the contrary in the Plan, no entity may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the Cryptocurrency, to the extent deemed to be a "security," is exempt from registration.

172.    ~~170.~~ Distributions to Holders of Claims and Interests in accordance with the Plan shall not be deemed to be unlicensed money transmission.

173.    ~~171.~~ **Effect of Non-Occurrence of Conditions to Confirmation.**    If the Effective Date does not occur within 120 days after the Confirmation Date, then the Plan will be null and void in all respects, any and all compromises or settlements not previously approved by Final Order of the Court embodied in the Plan (including with respect to the fixing, limiting, or

treatment of any Claim or Interest), shall be deemed null and void, and nothing contained in the Plan or the Disclosure Statement shall:  (a) constitute a waiver or release of any Claims, Interests, or Causes of Action held by any Debtor or any other Entity; (b) prejudice in any manner the rights of any Debtor or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by any Debtor or any other Entity in any respect.

174.   ~~172.~~ **Substantial Consummation.**  On the Effective Date, the Plan shall be deemed to have been substantially consummated or shall be anticipated to be substantially consummated concurrent with the occurrence of the Effective Date.

175.   ~~173.~~ **Waiver of Stay.**  For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

176.   ~~174.~~ **Immediate Binding Effect.**  Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Wind-Down Debtor, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, exculpations, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims against and Interests in the Debtors shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or Interest has voted on the Plan.

177.    175. **References to and Omissions of Plan Provisions.**  References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.  The failure to specifically include or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by reference.

178.    176. **Headings.**  Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

179.    177. **Effect of Conflict.**  This Confirmation Order supersedes any Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order.  If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall govern and control.  For the avoidance of doubt, the *Stipulation and Agreed Order Between the Debtors and Metropolitan Commercial Bank* [Docket No. 821] remains in effect and is not superseded by this Confirmation Order.

180.    178. **Final, Appealable Order.**  This Confirmation Order is a final judgment, order, or decree for purposes of 28 U.S.C. § 158(a), and the period in which an appeal must be filed shall commence upon the entry hereof.

181.    179. **Retention of Jurisdiction.**  The Court may properly, and upon the Effective Date shall, to the full extent set forth in the Plan, retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including (i) the matters set forth in Article XI of the Plan and (ii) as set forth in Section 10.13 of the Asset Purchase Agreement.

New York, New York
Dated: _____, 2023

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

**<u>EXHIBIT A</u>**

**The Plan**