**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**CORRECTED AND AMENDED ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT AND (II) CONFIRMING THE THIRD AMENDED JOINT PLAN OF VOYAGER DIGITAL HOLDINGS, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Voyager Digital Holdings, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors")[2] having:

    a.    commenced, on July 5, 2022 (the "Petition Date"), these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief in the United States Bankruptcy Court for the Southern District of New York (the "Court") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

    b.    continued to operate their business and manage their property during these Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

    c.    filed,[3] on July 21, 2022, the *Debtors' Motion Seeking Entry of an Order (I) Approving the Bidding Procedures and Related Dates and Deadlines, (II) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Sale, Disclosure Statement, and Plan Confirmation, and (III) Granting Related Relief* [Docket No. 126];

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital, Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan, the Disclosure Statement, the Asset Purchase Agreement, or the Bankruptcy Code (each as defined herein), as applicable. The rules of interpretation set forth in Article I.B. of the Plan apply.

[3]    Unless otherwise indicated, use of the term "filed" herein refers also to the service of the applicable document filed on the docket in these Chapter 11 Cases, as applicable.

d.    obtained, on August 5, 2022, the entry of the *Order (I) Approving the Bidding Procedures, (II) Scheduling the Bid Deadlines and the Auction, (III) Approving the Form and Manner of Notice Thereof, (IV) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Sale, Disclosure Statement, and Plan Confirmation and (V) Granting Related Relief* [Docket No. 248] (the "Bidding Procedures Order") approving the *Bidding Procedures for the Submission, Receipt, and Analysis of Bids in Connection with the Sale of the Debtors*, attached to the Bidding Procedures Order as Exhibit 1 (the "Bidding Procedures");

e.    commenced, on September 13, 2022, the Auction for the sale of substantially all of the Debtors' assets in accordance with the Bidding Procedures;

f.    selected West Realm Shires Inc. ("FTX US") as the Winning Bidder (as defined in the Bidding Procedures);

g.    obtained, on October 20, 2022, entry of the *Order (I) Authorizing Entry of the Asset Purchase Agreement and (II) Granting Related Relief* [Docket No. 581], which authorized entry into that certain asset purchase agreement by and between Voyager Digital, LLC and West Realm Shires Inc. (together with its affiliates, "FTX US," and the asset purchase agreement, the "FTX US Asset Purchase Agreement");

h.    filed, on December 9, 2022, the *Stipulation and Agreed Order* [Docket No. 717] by and between FTX US and the Debtors (the "FTX US APA Stipulation"), terminating the FTX US Asset Purchase Agreement;

i.    filed, on December 21, 2022, the *Debtors' Motion for Entry of an Order (I) Authorizing Entry into the Binance US Purchase Agreement and (II) Granting Related Relief* [Docket No. 775] and that certain asset purchase agreement by and between Voyager Digital, LLC and BAM Trading Services Inc. d/b/a Binance.US (together with its affiliates, "Binance.US," and the asset purchase agreement, the "Asset Purchase Agreement")

j.    filed, on December 22, 2022, the *Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 777] (as amended, modified, or supplemented from time to time, the "Plan"), the *Second Amended Disclosure Statement Relating to the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 778] (as amended, modified, or supplemented from time to time, the "Disclosure Statement"), and the *Debtors' Motion for Entry of an Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Adequacy of the Debtors' Disclosure Statement, (III) Approving (A) Procedures for Solicitation, (B) Forms of Ballots and Notices, (C) Procedures for Tabulation of Votes, and (D) Procedures for Objections, and (IV) Granting Related Relief* [Docket No. 779];

k.      filed, on January 9, 2023, the first amendment to the Asset Purchase Agreement [Docket No. 835];

l.      obtained, on January 10, 2023, approval of the FTX US APA Stipulation [Docket No. 849];

m.      filed, on January 10, 2023, the revised Plan [Docket No. 852];

n.      filed, on January 13, 2023, the revised Disclosure Statement [Docket No. 863];

o.      obtained, on January 13, 2023, entry of the *Order (I) Authorizing Entry into the Asset Purchase Agreement and (II) Granting Related Relief* [Docket No. 775], which granted entry into the asset purchase agreement with Binance.US (the "Asset Purchase Agreement Order");

p.      obtained, on January 13, 2023, entry of the *Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Adequacy of the Debtors' Disclosure Statement, (III) Approving (A) Procedures for Solicitation, (B) Forms of Ballots and Notices, (C) Procedures for Tabulation of Votes and (D) Procedures for Objections* [Docket No. 861] (the "Conditional Disclosure Statement Order") conditionally approving the Disclosure Statement, solicitation procedures (the "Solicitation Procedures"), and solicitation materials, including notices, forms, and ballots (collectively, the "Solicitation Packages");

q.      caused the Solicitation Packages and notice of the Combined Hearing and the deadline for objecting to the Disclosure Statement and to confirmation of the Plan ("Confirmation") to be distributed on or before January 25, 2023 (the "Solicitation Date"), in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), the Disclosure Statement Order, and the Solicitation Procedures, as evidenced by, among other things, the *Affidavit of Service* [Docket No. 926] and the *Supplemental Affidavit of Service* [Docket Nos. 927 and 1016] (collectively, the "Affidavit of Solicitation");

r.      filed, on February 1, 2023, the *Plan Supplement for the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates* [Docket No. 943] (the "Initial Plan Supplement") and caused notice of the filing of the Initial Plan Supplement to be distributed in accordance with paragraph 12 of the Disclosure Statement Order, as evidenced by, among other things, the *Affidavit of Service* [Docket No. 951];

s.      published, on February 3, 2023, notice of the Combined Hearing (the "Combined Hearing Notice") in the *The New York Times* (National Edition) and *Financial Times* (International Edition), as evidenced by the *Affidavits of Publication* [Docket Nos. 954 and 955] (the "Publication Affidavits" and, together with the Affidavit of Solicitation, the "Affidavits");

t.      filed, on February 8, 2023, the *First Amended Plan Supplement for the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates* [Docket No. 986] (the "First Amended Plan Supplement") and caused notice of the filing of the First Amended Plan Supplement to be distributed in accordance with paragraph 12 of the Disclosure Statement Order, as evidenced by, among other things, the *Affidavit of Service* [Docket No. 992];

u.      filed, on February 15, 2023, the *Second Amended Plan Supplement for the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates* (the "Second Amended Plan Supplement") [Docket No. 1006] and caused notice of the filing of the Second Amended Plan Supplement to be distributed in accordance with paragraph 12 of the Disclosure Statement Order, as evidenced by, among other things, the *Affidavit of Service* [Docket No. 1037];

v.      filed, on February 21, 2023, the *Third Amended Plan Supplement for the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates* (the "Third Amended Plan Supplement") [Docket No. 1035] and caused notice of the filing of the Third Amended Plan Supplement to be distributed in accordance with paragraph 12 of the Disclosure Statement Order, as evidenced by, among other things, the *Affidavit of Service* [Docket No. 1058];

w.      filed, on February 28, 2023, the *Declaration of Leticia Sanchez Regarding the Solicitation and Tabulation of Votes on the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1108];

x.      filed, on February 28, 2023, the *Debtors' Memorandum of Law in Support of (I) Final Approval of the Second Amended Disclosure Statement Relating to the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code and (II) an Order Confirming the Debtors' Third Amended Joint Chapter 11 Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates* [Docket No. 1110] (the "Confirmation Brief");

y.      filed, on February 28, 2023, the *Declaration of Timothy R. Pohl, Independent Director and Member of the Special Committee of the Board of Directors of Voyager Digital, LLC, in Support of Confirmation of the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1111] (the "Pohl Declaration"), which was admitted into evidence at the Combined Hearing;

z.      filed, on February 28, 2023, the *Declaration of Brian Tichenor in Support of Confirmation of the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1113] (the "Tichenor Declaration"), which was admitted into evidence at the Combined Hearing;

4

aa.     filed, on February 28, 2023, the *Fourth Amended Plan Supplement for the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates* (the "Fourth Amended Plan Supplement") [Docket No. 1115] and will cause notice of the filing of the Fourth Amended Plan Supplement to be distributed in accordance with paragraph 12 of the Disclosure Statement Order;

bb.     filed, on February 28, 2023, the revised version of the *Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1117];

cc.     filed, on February 28, 2023, the *Declaration of Mark A. Renzi in Support of Confirmation of the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1119] (the "Renzi Declaration"), which was admitted into evidence at the Combined Hearing for certain limited purposes;

dd.     filed, on March 1, 2023, the revised version of the *Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1125];

ee.     filed, on March 1, 2023, the *Amended Declaration of Leticia Sanchez Regarding the Solicitation and Tabulation of Votes on the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1127] (the "Voting Report" and, together with the Pohl Declaration, the Tichenor Declaration and the Renzi Declaration, the "Declarations");

ff.     filed, on March 5, 2023, the revised version of the *Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1138];

gg.     filed, on March 6, 2023, the *Fifth Amended Plan Supplement for the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates* [Docket No. 1143]; and

hh.     filed, on March 7, 2023, a revised *Fifth Amended Plan Supplement for the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates* (the "Fifth Amended Plan Supplement") (together with the Initial Plan Supplement, First Amended Plan Supplement, Second Amended Plan Supplement, Third Amended Plan Supplement, and Fourth Amended Plan Supplement, and as may be modified, amended, or supplemented from time to time, the "Plan Supplement") [Docket No. 1149] and will cause notice of the filing of the Fifth Amended Plan Supplement to be distributed in accordance with paragraph 12 of the Disclosure Statement Order.

The Court having:

a.     entered the Bidding Procedures Order on August 5, 2022 [Docket No. 248];

5

b.      entered the Asset Purchase Agreement Order on January 13, 2023 [Docket No. 775];

c.      entered the Conditional Disclosure Statement Order on January 13, 2023 [Docket No. 861];

d.      set February 22, 2023, at 4:00 p.m. (prevailing Eastern Time) as the deadline to object to the Disclosure Statement and the Plan and to object to proposed cure costs and any assumption of an Executory Contract or Unexpired Lease pursuant to the *Schedule of Assumed Executory Contracts and Unexpired Leases* (the "Assumed Contract Schedule"), filed as Exhibit A to the Plan Supplement (the "Plan Objection Deadline");

e.      set February 22, 2023, at 4:00 p.m. (prevailing Eastern Time) as the deadline for voting on the Plan (the "Voting Deadline");

f.      set March 2, 2023 at 10:00 a.m. (prevailing Eastern Time) as the date and time for the commencement of the Combined Hearing, pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

g.      reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Brief, the Declarations, the Voting Report, the Combined Hearing Notice, the Affidavits, and all filed pleadings, exhibits, statements, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

h.      held the Combined Hearing beginning March 2, 2023 at 10:00 a.m., prevailing Eastern Time and continuing on March 3, 2023, March 6, 2023, and March 7, 2023;

i.      heard the statements and arguments made by counsel with respect to final approval of the Disclosure Statement and Confirmation of the Plan;

j.      considered all oral representations, live testimony, written direct testimony, exhibits, documents, filings, and other evidence presented at the Combined Hearing; and

k.      dictated its decision with respect to disputed factual and legal issues at the conclusion of Combined Hearing, the text of which shall be revised as necessary and issued as the Court's formal decision with respect to Confirmation of the Plan and resolution of all outstanding objections thereto (the "Decision"),

NOW, THEREFORE, after due deliberation thereon and good cause appearing therefor,

the Court makes and issues the following findings of fact and conclusions of law, and orders:

## JURISDICTION, VENUE AND CORE PROCEEDING

The Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and

1334 and the *Amended Standing Order of Reference from the United States District Court for the*

*Southern District of New York*, entered February 1, 2012.  The Court has exclusive jurisdiction to

determine whether the Disclosure Statement and the Plan comply with the applicable provisions

of the Bankruptcy Code and should be approved and confirmed, respectively.  Venue is proper

pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding within

the meaning of 28 U.S.C. § 157(b)(2).

## MODIFICATIONS TO PROPOSED PLAN

The following modifications and amendments to the Plan and its supporting documents

either have already been made or hereby are deemed to have been made.  **All references herein**

**to the "Plan" (including the copy of the Plan that is attached hereto) and to the "Asset**

**Purchase Agreement" shall be interpreted as references to the Plan and the Asset Purchase**

**Agreement as modified by the following provisions.**

A.      Article VIII.C of each filed versions of the Plan is hereby stricken in its

entirety and Article VIII.C of the Plan is deemed to have been revised to state as follows:

> **"Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor release or the third-party release, and except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby exculpated from, any liability for damages based on the negotiation, execution and implementation of any transactions or actions approved by the Bankruptcy Court in the Chapter 11 Cases, except for Causes of Action related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence; *provided* that nothing in**

7

the Plan shall limit the liability of professionals to their clients pursuant to
N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.8 Rule 1.8(h)(1) (2009).

The Exculpated Parties have, and upon Consummation of the Plan shall be
deemed to have, participated in good faith and in compliance with the
applicable laws with regard to the solicitation of votes.

In addition, the Plan contemplates certain rebalancing transactions and the
completion of distributions of cryptocurrencies to creditors. The Exculpated
Parties shall have no liability for, and are exculpated from, any claim for fines,
penalties, damages, or other liabilities based on their execution and completion
of the rebalancing transactions and the distribution of cryptocurrencies to
creditors in the manner provided in the Plan.

For the avoidance of doubt, the foregoing paragraph reflects the fact that
Confirmation of the Plan requires the Exculpated Parties to engage in certain
rebalancing transactions and distributions of cryptocurrencies and the fact
that no regulatory authority has taken the position during the Combined
Hearing that such conduct would violate applicable laws or regulations.
Nothing in this provision shall limit in any way the powers of any
Governmental Unit to contend that any rebalancing transaction should be
stopped or prevented, or that any other action contemplated by the Plan
should be enjoined or prevented from proceeding further. Nor does anything
in this provision limit the enforcement of any future regulatory or court order
that requires that such activities either cease or be modified, or limit the
penalties that may be applicable if such a future regulatory or court order is
issued and is violated. Similarly, nothing herein shall limit the authority of the
Committee on Foreign Investment of the United States to bar any of the
contemplated transactions. Nor does anything in this provision alter the terms
of the Plan regarding the compliance of the Purchaser with applicable laws in
the Unsupported Jurisdictions before distributions of cryptocurrency occur in
those Unsupported Jurisdictions.

And all references herein the approval, reasonableness, scope or applicability of Article VIII.C of

the Plan. or of the "exculpation" provisions of the Plan, shall refer only to the exculpation

provisions as set forth above.

      B.     The following proviso is deemed to have been added to Article I.A.60 of

the Plan:

"*provided* that any documents included in subsection (i) only include
documents arising on or after the Petition Date but prior to the Effective Date
and that are within the jurisdiction of the Bankruptcy Court";

C.    The following definition is deemed to have been added as Article I.A.98 of

the Plan:

"'*Independent Directors*' means the independent directors at HoldCo, OpCo,
and TopCo from the Petition Date forward, including, for the avoidance of
doubt, following the Effective Date";

D.    The following definition is deemed to have been added as Article I.A.104

of the Plan:

"'*Investigated Matters*' means (i) the Debtors' loans to third parties, including
the 3AC Loan; (ii) the diligence performed in connection with the loans
described in (i); (iii) the formation and function of the Debtors' Risk
Committee; (iv) the Debtors' staking of cryptocurrency assets; (v) the Debtors'
regulatory compliance; (vi) the Debtors' communications with the public; and
(vii) the Debtors' pre-petition transfers to Released Voyager Employees
(including customer withdrawals) within one (1) year of the Petition Date";

E.    Article I.A.77 of the Plan is deemed to have been revised to state:

"'*Exculpated Parties*' means, collectively, and in each case in its capacity as
such:  (a) each of the Debtors; (b) the Committee, and each of the members
thereof, solely in their capacity as such; (c) each of the Released Professionals;
(d) each of the Released Voyager Employees; (e) the Plan Administrator;
(f) the Distribution Agent; (g) each of the Independent Directors; and (h) any
other person acting in a fiduciary capacity on behalf of the Debtors in
connection with the negotiation, execution and implementation of any
transactions or actions approved by the Bankruptcy Court in the Chapter 11
Cases";

F.    Article I.A.140 of the Plan is deemed to have been revised to state:

"'*Released Voyager Employees*' means the following directors, officers, and
members of senior management of the Debtors serving in such capacity on or
after the Petition Date whose conduct was reviewed as part of the Special
Committee Investigation: Jennifer Ackert, David Brill, Brian Brooks, David
Brosgol, Jonathan Brosnahan, Dan Constantino, Stephen Ehrlich, Philip
Eytan, Rakesh Gidwani, Gerard Hanshe, Marshall Jensen, Pam Kramer,
Manisha Lalwani, Brian Nistler, Ashwin Prithipaul, Evan Psaropoulos, Brian
Silard, Glen Stevens, Krisztian Toth, and Ryan Whooley (subject to the
limitations contained in Article IV.F and Article IV.G of the Plan)";

G.    The following language is deemed to have been removed from Article

VIII.A:

**"in whole or in part, the Debtors (including the management, ownership, or operation thereof), their capital structure, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party" and replaced with "the Investigated Matters";**

H.    Article IV.H.5(c) of the Plan is deemed to have been revised to state:

**"appointing an independent director at each Debtor to act as a fiduciary for such Debtor entity solely in connection with matters that may implicate actual or potential intra-Debtor conflicts of interests between the Plan Administrator and the applicable Debtor(s) or Wind-Down Debtor including (i) the Intercompany Claims; (ii) the Alameda Loan Facility Claims; (iii) the Signatory Governmental Claims (as defined in the Governmental Claimant Stipulation) asserted against TopCo; and (iv) any matter involving the transfer or allocation of value, claims, or costs between or among the Debtors, but only to the extent that such issues continue to implicate actual or potential intra-Debtor conflicts of interests between the Plan Administrator and the applicable Debtor(s) or Wind-Down Debtor";**

I. Article VI.C.6 of the Plan is deemed revised to state:

**"In the event that any distribution to any Holder is returned as undeliverable and/or otherwise remains unclaimed, the Plan Administrator shall use reasonable efforts to contact such Holder; *provided* that no further distributions to such Holder shall be made unless and until the Plan Administrator has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided*, *further*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the applicable Distribution Date. After such date, all unclaimed property or interests in property shall revert to the Wind-Down Debtor automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim or Interest of any Holder to such property or interest in property shall not be entitled to any distributions under the Plan.**

**A distribution shall be deemed unclaimed if a Holder has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Wind-Down Debtor of an intent to accept a particular distribution; (c) responded to the Wind-Down Debtor's**

**requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution";**

J.      All references to section 1145 of the Bankruptcy Code and related provisions in the Plan have been removed;

K.      References to "Confirmation Date" in Article II.B.1 of the Plan are deemed revised to state "Effective Date"; and

L.      The Asset Purchase Agreement has been and is deemed to be amended to contain the following provisions:

1.    **There will be a two-week period for Account Holders to opt out of transferring (i) selfies, (ii) uploaded IDs or bank statements and (iii) bank account information to the Purchaser. Any opted out information would not be acquired by the Purchaser in the Sale Transaction. The opt out notice will be provided by the Debtors at the Debtors' expense;**

2.    **The Seller Expense Start Date will be moved back to April 1, 2023 (from March 18, 2023);**

3.    **If the Purchaser is ready to close by April 1, 2023 (assuming closing conditions are satisfied or waived by the Purchaser) and the Seller is not (including because the Seller declines to waive any Closing conditions, other than breaches or defaults by the Purchaser), then the Seller will cease to have Seller Expense reimbursement protection thereafter;**

4.    **Each of the Seller and Purchaser acknowledge that (i) the closing condition relating to entry and finalization of the Asset Purchase Agreement Order has been satisfied and (ii) to its knowledge, there is no breach of the Asset Purchase Agreement by the other party as of the date that this Confirmation Order is entered.**

## FINDINGS OF FACT[4]

1.    The findings of fact set forth in the Decision are incorporated herein by reference.

---

[4]    The findings of fact and the conclusions of law set forth herein and in the Decision of the Court announced at the conclusion of the Combined Hearing constitute the Court's findings of fact and its conclusions of law under rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. Many issues raised in connection with Confirmation of the Plan are mixed issues of law and fact, so to the extent any of the listed finding of fact constitute conclusions of law, or vice versa, they are adopted as such.

2.      The Disclosure Statement contains (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations, including the Securities Act, and (b) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein.  All objections to the contents of the Disclosure Statement are overruled.

3.      The Debtors provided due, adequate, and sufficient notice of the Disclosure Statement, the Conditional Disclosure Statement Order, the Plan, the Plan Supplement, the Solicitation Packages, the Combined Hearing Notice, the proposed assumption and rejection of Executory Contracts and Unexpired Leases and the proposed cure amounts, and all the other materials distributed by the Debtors in connection with Confirmation of the Plan, together with the Plan Objection Deadline, the Voting Deadline, and the Combined Hearing, and any applicable bar dates and hearings described in the Conditional Disclosure Statement Order, in compliance with the Bankruptcy Rules, Local Rules, and the procedures set forth in the Disclosure Statement Order.

4.      Prior to the Combined Hearing, the Debtors filed the Voting Report.  The Voting Report was admitted into evidence during the Combined Hearing.  As described in the Voting Report, the solicitation of votes on the Plan complied with the Solicitation Procedures.

5.      The Solicitation Packages, the Plan Supplement, and the Combined Hearing Notice were transmitted and served in compliance with this Court's orders, and such transmission and service was timely, adequate, and sufficient.

6.      The period during which Holders in the Voting Classes were required to submit acceptances or rejections to the Plan was reasonable and sufficient for such Holders to make an informed decision to accept or reject the Plan.

7.      Holders of Claims in Class 1 (Secured Tax Claims) and Class 2 (Other Priority Claims) (collectively, the "Presumed Accepting Classes") are Unimpaired and conclusively presumed to accept the Plan and, therefore, did not vote to accept or reject the Plan.  Holders of Claims in Class 7 (Intercompany Claims) and Interests in Class 8 (Intercompany Interests) either are Unimpaired and conclusively presumed to have accepted the Plan (to the extent reinstated) or Impaired and conclusively deemed to have rejected the Plan, and, therefore, are not entitled to vote to accept or reject the Plan.  Holders of Claims in Class 5 (Alameda Loan Facility Claims) and Class 6 (Section 510(b) Claims) and Interests in Class 9 (Existing Equity Interests) (collectively, the "Deemed Rejecting Classes") are Impaired under the Plan and are deemed to have rejected the Plan.

8.      As evidenced by the Voting Report, Class 3 (Account Holder Claims), Class 4A (OpCo General Unsecured Claims), Class 4B (HoldCo General Unsecured Claims), and Class 4C (TopCo General Unsecured Claims) voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code.

9.      Based on the foregoing, and as evidenced by the Voting Report, at least one Impaired Class of Claims (excluding the acceptance by any insiders of any of the Debtors) has voted to accept the Plan.

10.      The Filing and notice of the documents included in the Plan Supplement were adequate and proper and in compliance with this Court's orders.

11.     Any modifications to the Plan since the commencement of Solicitation described or set forth herein constitute technical changes or changes with respect to particular Claims or Interests made pursuant to the agreement of the Holders of such Claims or Interests and do not materially and adversely affect or change the treatment of any other Claims or Interests.

12.     The Plan and all modifications thereto are dated and identify the Entities submitting them, thereby satisfying Bankruptcy Rule 3016(a).  The Debtors appropriately filed the Disclosure Statement and the Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b).  The injunction, release, and exculpation provisions in the Disclosure Statement and the Plan describe, in bold font and with specific and conspicuous language, all acts to be enjoined and identify the entities that will be subject to the injunction, thereby satisfying Bankruptcy Rule 3016(c).

13.     The Debtors' decisions to assume or reject certain Executory Contracts and Unexpired Leases, as provided in Article V of the Plan and in the Plan Supplement, are reasonable exercises of the Debtors' business judgment.  The Debtors have demonstrated adequate assurance of future performance of the assumed Executory Contracts and Unexpired Leases within the meaning of section 365(b)(1)(C) of the Bankruptcy Code by the Wind-Down Debtor.

14.     Consummation of the Sale Transaction is in the best interests of the Debtors, their Estates, and their creditors.  The Debtors have exercised sound business judgment in selecting the Purchaser and the Debtors have done so without collusion and in good faith.  The Purchaser is consummating the Sale Transaction in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code.  The Purchaser has proceeded in good faith and without collusion in all respects in connection with the Sale Transaction.

15.    The consideration provided by the Purchaser pursuant to the Asset Purchase Agreement (a) is fair and reasonable, (b) constitutes the best offer for the Acquired Assets, and (c) represents reasonably equivalent value for the assets being acquired.

16.    As explained more fully in this Court's Decision, the Debtors' decision to effectuate the Sale Transaction or the Liquidation Transaction, as applicable, is an appropriate exercise of their business judgment.

17.    The D&O Settlement constitutes a good-faith compromise and settlement of all Claims, Causes of Action, disputes, and controversies released, settled, compromised, or otherwise resolved between the Debtors and the CEO and CCO.  The D&O Settlement is fair, equitable, and reasonable and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.

## CONCLUSIONS OF LAW

18.     The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code.

(a)     In accordance with sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Interests into eleven Classes.  Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests.  The classifications were not implemented for any improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Interests.  Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  Accordingly, the Plan satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.

(b)     Article III of the Plan specifies that Claims in Class 1 (Secured Tax Claims) and Class 2 (Other Priority Claims) are Unimpaired under the Plan and Claims and Interests in Class 7 (Intercompany Claims) and Class 8 (Intercompany Interests), respectively, are either Impaired or Unimpaired under the Plan.  Article II of the Plan specifies that Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, and all fees due and payable pursuant to section 1930 of title 28 of the United States Code before the Effective Date will be paid in full in accordance with the terms of the Plan, although these Claims are not separately classified under the Plan.  Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

(c)     Article III of the Plan specifies that Claims and Interests, as applicable, in the following Classes (collectively, the "Impaired Classes") are Impaired under the Plan

16

within the meaning of section 1124 of the Bankruptcy Code, and describes the treatment
of such Classes, in compliance with section 1123(a)(3) of the Bankruptcy Code:

| Class | Designation |
|---|---|
| 3 | Account Holder Claims |
| 4A | OpCo General Unsecured Claims |
| 4B | HoldCo General Unsecured Claims |
| 4C | TopCo General Unsecured Claims |
| 5 | Alameda Loan Facility Claims |
| 6 | Section 510(b) Claims |
| 9 | Existing Equity Interests |

(d)     The Plan provides for the same treatment by the Debtors for each Claim or
Interest in each respective Class unless the Holder of a particular Claim or Interest has
agreed to a less favorable treatment of such Claim or Interest, and complies with section
1123(a)(4) of the Bankruptcy Code.

(e)     The provisions in Article IV and elsewhere in the Plan and the Plan
Supplement, and in the exhibits and attachments to the Disclosure Statement provide, in
detail, adequate and proper means for the Plan's implementation, in satisfaction of the
requirements of section 1123(a)(5) of the Bankruptcy Code.

(f)     On the Effective Date the Wind-Down Debtor Assets shall, subject to the
Plan Administrator Agreement, be transferred to and vest in the Wind-Down Debtor.  The
Wind-Down Debtor shall be managed by the Plan Administrator and shall be subject to a
Wind-Down Debtor Oversight Committee.   On or prior to the Effective Date, the
Wind-Down Debtor's organizational documents will be amended to prohibit the issuance
of non-voting equity securities.  Accordingly, the Plan satisfies the requirements of section
1123(a)(6) of the Bankruptcy Code.

(g)      The Debtors have disclosed that the independent director at (i) Voyager Digital, LLC shall be Timothy R. Pohl and/or Jill Frizzley, (ii) Voyager Digital Holdings, Inc. shall be Scott Vogel, and (iii) Voyager Digital Ltd. shall be Matthew D. Ray. Article IV.J of the Plan provides that, upon filing of the certificate of dissolution (or equivalent document), the Wind-Down Debtor will be dissolved. Article IV.H of the Plan provides for the formation of the Wind-Down Debtor for the benefit of the Wind-Down Debtor Beneficiaries. Paul R. Hage will serve as Plan Administrator. The Wind-Down Debtor shall be managed by the Plan Administrator and shall be subject to a Wind-Down Debtor Oversight Committee, which will consist of Russell Stewart, Richard Kiss, and Melissa Freeman. The selection of the Plan Administrator and the appointment of the independent directors, and the provisions of the Plan and the Plan Administrator Agreement regarding the potential selection of successors to such persons, is consistent with the interests of Holders of Claims and Interests and public policy. Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

(h)      Article III of the Plan specifies that some Classes of Claims are Impaired and others are not Impaired, as permitted by section 1123(b)(1) of the Bankruptcy Code.

(i)      As permitted by section 1123(b)(2) of the Bankruptcy Code, Article V of the Plan provides that, on the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) is specifically described in the Plan as to be assumed in connection

with Confirmation of the Plan, or is specifically scheduled to be assumed or assumed and

assigned pursuant to the Plan or the Plan Supplement; (2) is subject to a pending motion to

assume such Unexpired Lease or Executory Contract as of the Effective Date; (3) is to be

assumed by the Debtors or assumed by the Debtors and assigned to another third party, as

applicable, in connection with the Sale Transaction; (4) is a contract, instrument, release,

indenture, or other agreement or document entered into in connection with the Plan; or (5)

is a D&O Liability Insurance Policy other than the Side-A Policy.

(j)     The Plan provides for the settlement of certain potential claims against Mr.

Ehrlich and Mr. Psaropolous, as permitted by section 1123(b)(3) of the Bankruptcy Code.

It also provides for the retention of various causes of action as permitted by section

1123(b)(3).

(k)     The Plan provides for a sale of assets as permitted by section 1123(a)(4) of

the Bankruptcy Code.

(l)     The Plan includes other discretionary provisions that are approved in

various parts of this Confirmation Order.  The inclusion of such provisions is consistent

with section 1123(b)(6) of the Bankruptcy Code.

19.     The Debtors have complied with the applicable provisions of the Bankruptcy Code

and satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.  Specifically, each

Debtor:

(a)     is an eligible debtor under section 109 of the Bankruptcy Code and a proper

proponent of the Plan under section 1121(a) of the Bankruptcy Code; and

(b)     complied with the applicable provisions of the Bankruptcy Code, including

sections 1125 and 1126, the Bankruptcy Rules, the Local Rules, any applicable

nonbankruptcy law, rule, and regulation, the Conditional Disclosure Statement Order, and all other applicable law, in transmitting the Solicitation Packages and related documents and notices, and in soliciting and tabulating the votes on the Plan.

20.     The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors have proposed the Plan in good faith and not by any means forbidden by law.

21.     Any payment made or to be made by the Debtors for services or for costs and expenses in or in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, shall be subject to the approval of the Court for reasonableness, in compliance with section 1129(a)(4) of the Bankruptcy Code.

22.     The Debtors have disclosed the names of the individuals who will serve as independent directors, as Plan Administrator, and as members of the Wind-Down Debtor Oversight Committee, and the appointment of such persons is consistent with the interests of creditors and equityholders and with public policy.

23.     Section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases.  The Plan does not propose any rate change subject to the jurisdiction of any governmental regulatory commission.

24.     The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis attached to the Disclosure Statement and the other evidence related thereto in support of the Plan that was proffered or adduced in the Declarations or at, prior to, or in connection with the Combined Hearing:  (a) are reasonable; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that Holders of Allowed Claims and Interests in each Class will recover at least as much under the Plan on account of such Claim or Interest, as of the Effective Date, as such Holder

would receive if the Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.

25.    No Class of voting creditors voted to reject the Plan.  However, Class 5 (Alameda Loan Facility Claims), Class 6 (Section 510(b) Claims), and Class 9 (Existing Equity Interests) are impaired under the Plan and are deemed to reject the Plan.  Because the Plan has not been accepted by the Deemed Rejecting Classes, the Debtors seek Confirmation under section 1129(b), solely with respect to the Deemed Rejecting Classes, rather than section 1129(a)(8) of the Bankruptcy Code.  Although section 1129(a)(8) has not been satisfied with respect to the Deemed Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes as described further below.

26.    The treatment of Allowed Administrative Claims, Allowed Professional Fee Claims, and Allowed Priority Tax Claims under Article II of the Plan, and of Allowed Other Priority Claims under Article III of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

27.    The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As evidenced by the Voting Report, the Voting Classes voted to accept the Plan by the requisite numbers and amounts of Claims, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code), specified under the Bankruptcy Code.

28.    The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  The evidence supporting the Plan proffered or adduced by the Debtors at or before the Combined Hearing is reasonable, persuasive, and credible, has not been controverted by other persuasive evidence, and

establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization except as contemplated by the Plan itself.

29.     The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code. Article XII.C of the Plan provides for the payment of all fees due and payable under 28 U.S.C. § 1930 by each of the Wind-Down Debtor (or the Distribution Agent on behalf of the Wind-Down Debtor).

30.     The Debtors do not have any remaining obligations to pay retiree benefits (as defined in section 1114 of the Bankruptcy Code). Therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases or the Plan.

31.     Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases. The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.

32.     The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that the Deemed Rejecting Classes have not accepted the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code. *First*, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met. *Second*, the Plan is fair and equitable with respect to Class 5 (Alameda Loan Facility Claims), Class 6 (Section 510(b) Claims), and Class 9 (Existing Equity Interests). The Plan has been proposed in good faith, is reasonable, and meets the requirements that (a) no Holder of any Claim or Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Interest, and (b) no Holder of a Claim or Interest in a Class senior to such Classes is receiving more than payment in full on account of its Claim or Interest.

Specifically, to the extent Class 8 (Intercompany Interests) are Reinstated, such treatment is provided for administrative convenience and efficiency, and not on account of such Interests, and will not alter the treatment provided for any other Holder of any Claim or Interest. Further, Class 7 (Intercompany Claims) will receive the treatment as determined by the Court. Accordingly, the Plan is fair and equitable towards all Holders of Claims and Interests in the Deemed Rejecting Classes. *Third*, the Plan does not discriminate unfairly with respect to the Deemed Rejecting Classes because similarly situated Claim and Interest Holders will receive substantially similar treatment on account of their Claims or Interests, as applicable, in such class. Therefore, the Plan may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

33.     The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code. The Plan is the only chapter 11 plan filed in each of these Chapter 11 Cases.

34.     The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

35.     The Chapter 11 Cases are not small business cases and, accordingly, section 1129(e) of the Bankruptcy Code does not apply to the Chapter 11 Cases.

36.     The Debtors have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to support and consummation of the Plan, including the solicitation and receipt of acceptances of the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

37.     For the reasons set forth in the Decision, the exculpation provisions of the Plan (as modified herein) are reasonable in scope and consistent with applicable authority.

38.     Based on the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

## ORDER

BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

39.     **Approval of the Disclosure Statement.**   The Disclosure Statement, the Solicitation Packages, and the Solicitation Procedures are approved on a final basis pursuant to section 1125 of the Bankruptcy Code.

40.     **Solicitation.**  To the extent applicable, the solicitation of votes on the Plan complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations, and was appropriate and satisfactory and is approved in all respects.

41.     **Notice of Combined Hearing.**  The Notice of Combined Hearing was appropriate and satisfactory and is approved in all respects.

42.     **Confirmation of the Plan.**  The Plan (as it has been modified by the parties, including any modifications set forth herein) is approved in its entirety and CONFIRMED under section 1129 of the Bankruptcy Code.

43.     **Objections.**  All objections and all reservations of rights pertaining to Confirmation of the Plan and approval of the Disclosure Statement that have not been withdrawn, waived, or consensually resolved are overruled on the merits unless otherwise indicated in this Confirmation Order.

44.     **Plan Modifications.**  The Plan Modifications do not materially adversely affect the treatment of any Claim against or Interest in any of the Debtors under the Plan.  Pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125

24

of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code,
nor do they require that the Holders of Claims or Interests be afforded an opportunity to change
previously cast acceptances or rejections of the Plan.  Accordingly, the Plan Modifications are
hereby approved pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019.
After giving effect to the Plan Modifications, the Plan continues to meet the requirements of
sections 1122 and 1123 of the Bankruptcy Code.

45.    **Deemed Acceptance of Plan.**  In accordance with section 1127 of the Bankruptcy
Code and Bankruptcy Rule 3019, all Holders of Claims and Interests who voted to accept the Plan
or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan, as
modified by the Plan Modifications.  No Holder of a Claim or Interest shall be permitted to change
its vote as a consequence of the Plan Modifications.

46.    **Restructuring Transactions**.  On or before the Effective Date, the applicable
Debtors will take any action as may be necessary or advisable to effectuate the Restructuring
Transactions described in the Plan, the Restructuring Transactions Memorandum, and the
Customer Onboarding Protocol, including, without limitation, the execution and delivery of
appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property,
right, liability, debt, or obligation on terms consistent with the terms of the Plan, the transfer or
distribution of any Cryptocurrency or Cash pursuant to the Asset Purchase Agreement and the
Plan, as applicable, and the execution and delivery of the Plan Administrator Agreement

47.    **The Sale Transaction.**  The Sale Transaction and the Asset Purchase Agreement,
all other ancillary documents, and all of the terms and conditions thereof, are hereby approved,
pursuant to sections 105, 363, 364, and 554 of the Bankruptcy Code and Bankruptcy Rules 2002,
4001, 6004, and 9014, each as applicable.  Entry of this Confirmation Order shall authorize the

25

Debtors, the Purchaser, and the Wind-Down Debtor, as applicable, to undertake the transactions contemplated by the Asset Purchase Agreement, as applicable, including pursuant to sections 363, 365, 1123(a)(5)(B), and 1123(a)(5)(D) of the Bankruptcy Code.

48.     Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Sale Transaction pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement, (b) close the Sale Transaction as contemplated in the Asset Purchase Agreement, and (c) execute and deliver, perform under, consummate, implement, and fully close the Asset Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement and the Sale Transaction.

49.     Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Acquired Assets in accordance with the terms of the Asset Purchase Agreement and such transfer shall constitute a legal, valid, binding, and effective sale of the Acquired Assets and shall vest Purchaser with title to the Acquired Assets subject to the Asset Purchase Agreement, and to the fullest extent permitted by sections 363(f) and 1123(b)(4) of the Bankruptcy Code the Acquired Assets shall be free and clear of all Liens, Claims, Encumbrances, and other interests of any kind or nature whatsoever (other than as expressly permitted under the Asset Purchase Agreement), with all such Liens, Claims, or other interests to attach to the cash proceeds of the Purchase Price ultimately attributable to the property against or in which such Liens, Claims, or other interests are asserted, subject to the terms thereof, with the same validity, force, and effect, and in the same order of priority, which such Liens, Claims, or

other interests had prior to the Sale Transaction, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

50.     Except as otherwise permitted by the Asset Purchase Agreement, the Plan, or this Confirmation Order, all persons and entities holding Claims against or other interests in the Debtors, or any Liens against the Acquired Assets arising prior to the Effective Date, are hereby forever barred, estopped, and permanently enjoined from asserting such Claims, interests, or Liens against the Purchaser, any of the foregoing's affiliates, successors, or assigns, their property or the Acquired Assets.

51.     The Purchaser has acted in good faith and is entitled to the protections afforded under section 363(m) of the Bankruptcy Code.  No evidence has been presented to this Court indicating that the Sale Transaction may be avoided pursuant to section 363(n) of the Bankruptcy Code.

52.     Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.  A certified copy of this Confirmation Order may be filed with the appropriate clerk or recorded with the recorder of any state, county, or local authority to act to cancel any of the Liens, Claims, and other encumbrances of record.

53.     The Debtors and the Purchaser are each authorized to file a copy of this Confirmation Order, which, upon filing, shall be conclusive evidence of the release and termination of any Claim, Lien, or interest that is terminated under the terms of the Plan.

54.     This Confirmation Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title

companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative

agencies, governmental departments, secretaries of state, federal, state, and local officials, and all

other persons and entities who may be required by operation of law, the duties of their office, or

contract, to accept, file, register, or otherwise record or release any documents or instruments; and

each of the foregoing persons and entities is hereby directed to accept for filing any and all of the

documents and instruments necessary and appropriate to consummate the transactions

contemplated by the Asset Purchase Agreement.

55.    All persons and entities that are presently, or on the Closing may be, in possession

of some or all of the Acquired Assets pursuant to the Asset Purchase Agreement are hereby

directed to surrender possession of the Acquired Assets to the Purchaser unless such person or

entity was a good faith, bona fide purchaser of the Acquired Assets without notice of the Debtors'

rights in such property.  Subject to the terms, conditions, and provisions of this Confirmation

Order, all persons and entities are hereby forever prohibited and enjoined from taking any action

that would adversely affect or interfere with the ability of the Debtors to sell and/or transfer the

Acquired Assets to the Purchaser in accordance with the terms of the Asset Purchase Agreement

and this Confirmation Order.

56.    To the fullest extent permitted by sections 363(f) and 1123(b)(4) of the Bankruptcy

Code, and except as otherwise specified in the Asset Purchase Agreement, the Purchaser shall

acquire the Acquired Assets free of any claim that it is liable for liabilities of the Debtors under

theories of successor liability, *de facto* merger, substantial continuity or other similar theory.  For

the avoidance of doubt, (i) nothing herein shall release the Purchaser with respect to its obligations

as Distribution Agent of Cryptocurrency and Cash to Holders of Account Holder Claims and OpCo

General Unsecured Creditor Claims as provided in, and subject to the terms and conditions of, the

Asset Purchase Agreement and the Plan, and (ii) notwithstanding the transfer to Purchaser, pursuant to the Asset Purchase Agreement, of any Acquired Assets that constitute Coins or Cash, each User and Eligible Creditor shall retain, from and after the Closing of the Sale Transaction, all right, title, and interest in and to such Coins and Cash allocated to it on the Binance.US Platform in accordance with the Asset Purchase Agreement (notwithstanding any terms and conditions of the Binance.US Platform to the contrary, if any) through and including such time as such Coins and Cash are returned or distributed to Seller or such User and Eligible Creditor, as applicable, and such Coins and Cash shall be held by Purchaser solely in a custodial capacity in trust and solely for the benefit of Seller or the applicable User or Eligible Creditor thereafter.

57.     The Asset Purchase Agreement and any related documents or other instruments may be modified, amended, or supplemented by the parties thereto in non-material ways in accordance with the terms thereof, without further order of the Court.  Any material changes require the approval of this Court.

58.     Paragraphs 47–57 of this Confirmation Order shall be deemed to be excised from this Confirmation Order in the event that the Asset Purchase Agreement is terminated prior to Closing.  For the avoidance of doubt, subject to the requirements set forth in the Asset Purchase Agreement (including, without limitation, Sections 6.22 and 5.2(c) thereof), the Debtors may exercise the "fiduciary out" in Section 8.1(g) of the Asset Purchase Agreement at any time prior to Closing.

59.     **Actions by the Wind-Down Debtor.**  As soon as practicable after the Effective Date, the Wind-Down Debtor shall take such actions as the Wind-Down Debtor may determine to be necessary or desirable to carry out the purposes of the Plan.  Any certificate of dissolution or equivalent document may be executed by the Wind-Down Debtor on behalf of any Wind-Down

Debtor without need for any action or approval by the shareholders or board of directors or managers of such Debtor; *provided*, that, no Debtor shall be dissolved while the independent director(s) at such Debtor remains in place.  On and after the Effective Date, the Debtors or the Wind-Down Debtor (1) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal (2) shall be deemed to have cancelled pursuant to the Plan all Interests, and (3) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.  Pursuant to the terms of the Plan, any Money Transmitter Licenses that have not been terminated shall be deemed withdrawn and no further action is required to be taken by the Debtors or the Wind-Down Debtor to effectuate such withdrawal; *provided* that, following the Effective Date, the Debtors or the Wind-Down Debtor, as applicable, shall use commercially reasonable efforts to comply with all state banking department requirements for the surrender of a Money Transmitter License.  Notwithstanding such Debtors' dissolution, such Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

60.    **[Reserved]**

61.    **[Reserved]**

62.    **[Reserved]**

63.    **Binding Effect.**  Upon the occurrence of the Effective Date, the terms of the Plan are immediately effective and enforceable and deemed binding on the Debtors, the Wind-Down Debtor, any and all Holders of Claims or Interests (regardless of whether such Holders of Claims

or Interests have, or are deemed to have, accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan or this Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

64.    Pursuant to section 1141 of the Bankruptcy Code, subject to the occurrence of the Effective Date and subject to the terms of the Plan and this Confirmation Order, all prior orders entered in these Chapter 11 Cases and all documents and agreements executed by the Debtors as authorized and directed thereunder as of the Effective Date shall be binding upon and shall inure to the benefit of the Debtors, the Purchaser, or the Wind-Down Debtor, as applicable, and their respective successors and assigns.

65.    **Vesting of Assets.**  Except as otherwise provided in the Plan, this Confirmation Order, the Asset Purchase Agreement, the Schedule of Retained Causes of Action, or in any agreement, instrument, or other documented incorporated herein or therein, or in any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, notwithstanding any prohibition of assignability under applicable non-bankruptcy law and in accordance with section 1141 of the Bankruptcy Code, on the Effective Date, all property constituting Wind-Down Debtor Assets, including all Vested Causes of Action of the Debtors (unless otherwise released, waived, compromised, settled, satisfied, or transferred pursuant to the Plan) shall vest in the Wind-Down Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.

66.    Prior to the Effective Date, any and all of the Debtors' assets shall remain assets of the Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and on the Effective Date

the Wind-Down Debtor Assets shall, subject to the Plan Administrator Agreement, be transferred
to and vest in the Wind-Down Debtor.  For the avoidance of doubt, to the extent not otherwise
waived in writing, released, settled, compromised, assigned, or sold pursuant to a prior order or
the Plan, the Plan Administrator specifically retains and reserves the right to assert, after the
Effective Date, any and all of the Vested Causes of Action and related rights, whether or not
asserted as of the Effective Date, and all proceeds of the foregoing, subject to the terms of the Plan,
including without limitation Article IV.F.

67.    On the Effective Date, the Debtors or Plan Administrator, as applicable, may
establish one or more accounts or funds to hold and dispose of certain assets, pursue certain
litigation (including the Vested Causes of Action), and/or satisfy certain Claims (including Claims
that are contingent or have not yet been Allowed).

68.    **Effectiveness of All Actions**.  All actions required to implement the Plan, including
all actions in connection with the Sale Transaction or the Liquidation Transaction, as applicable,
are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as
applicable, under this Confirmation Order, without further application to, or order of the Court, or
further action by the respective officers, directors, managers, members, or equity holders of the
Debtors or the Wind-Down Debtor and with the effect that such actions had been taken by
unanimous action of such officers, directors, managers, members, or equity holders.

69.    **Cancellation of Notes, Instruments, Certificates, and Other Documents.**  On
the later of the Effective Date and the date on which distributions are made pursuant to the Plan
(if not made on the Effective Date), except for the purpose of evidencing a right to and allowing
Holders of Claims and Interests to receive a distribution under the Plan or to the extent otherwise
specifically provided for in the Plan, this Confirmation Order, or any agreement, instrument, or

other document entered into in connection with or pursuant to the Plan or the Restructuring Transactions, all notes, bonds, indentures, certificates, Securities, shares, purchase rights, options, warrants, collateral agreements, subordination agreements, intercreditor agreements, or other instruments or documents directly or indirectly evidencing, creating, or relating to any indebtedness or obligations of, or ownership interest in, the Debtors, giving rise to any Claims against or Interests in the Debtors or to any rights or obligations relating to any Claims against or Interests in the Debtors shall be deemed cancelled without any need for a Holder to take further action with respect thereto.

70.    For the avoidance of doubt, cancellation of Existing Equity Interests pursuant to the Plan shall not affect the rights of the Holders of Existing Equity Interests to receive distributions, if any, under the Plan on account of such Existing Equity Interests.  Holders of Existing Equity Interests shall continue to possess all rights, powers, privileges, and standing associated with such Existing Equity Interests as if those Existing Equity Interests continue to exist subject to the terms of the Plan and this Confirmation Order.

71.    **Distributions.**  The procedures governing distributions contained in Article VI of the Plan shall be, and hereby are, approved in their entirety.  Except as otherwise set forth in the Plan or this Confirmation Order, the Plan Administrator shall make all distributions required under the Plan and the timing of distributions required under the Plan or this Confirmation Order shall be made in accordance with and as set forth in the Plan, this Confirmation Order, or the Plan Administrator Agreement, as applicable; *provided* that, if a creditor does not timely provide the Plan Administrator with its taxpayer identification number in the manner and by the deadline established by the Plan Administrator and/or the Plan, the creditor shall be deemed to have forfeited its right to any current, reserved or future distributions provided for under the Plan and

such creditor's Claim or Interest shall be disallowed and expunged without further order of the Court. Any such forfeited distribution shall be deemed to have reverted back to the Wind-Down Debtor for all purposes, including for distributions to other holders of Allowed Claims or Allowed Interests (as applicable) against the particular Debtor in respect of which the forfeited distribution was made, notwithstanding any federal, provincial or state escheat, abandoned or unclaimed property law to the contrary.

72.    **Claims Register.**  Any Claim or Interest that has been paid, satisfied, amended, superseded, cancelled, or otherwise expunged (including pursuant to the Plan) may be adjusted or expunged, as applicable, on the Claims Register at the direction of the Debtors or Wind-Down Debtor without the Debtors or Wind-Down Debtor having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Court.

73.    **Preservation of Rights of Action.**  In accordance with section 1123(b) of the Bankruptcy Code, the Wind-Down Debtor shall succeed to all rights to commence and pursue any and all Vested Causes of Action of the Debtors, whether arising before or after the Petition Date, including, without limitation, any actions specifically enumerated in the Schedule of Retained Causes of Action other than Causes of Action released, waived, settled, compromised, or transferred.  Such rights shall be preserved by the Debtors and Wind-Down Debtor and shall vest in the Wind-Down Debtor, with the Wind-Down Debtor's rights to commence, prosecute, or settle such Causes of Action preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action expressly released, waived, settled, compromised, or transferred by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII

of the Plan or pursuant to the Asset Purchase Agreement, which shall be deemed released and waived by the Debtors and the Wind-Down Debtor as of the Effective Date.

74.    No Entity may rely on the absence of a specific reference in the Schedules of Assets and Liabilities or Statement of Financial Affairs, the Plan, the Plan Supplement, the Disclosure Statement, or the Schedule of Retained Causes of Action to any Cause of Action against it as any indication that the Debtors or the Wind-Down Debtor will not pursue any and all available Causes of Action against it.  The Wind-Down Debtor, on behalf of the Debtors and the Wind-Down Debtor, expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise provided in the Plan, including Article VIII of the Plan.  Unless any Cause of Action of the Debtors is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order, the Wind-Down Debtor, on behalf of the Debtors and Wind-Down Debtor and in accordance with the Plan Administrator Agreement, expressly reserves all such Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action as a consequence of Confirmation.

75.    **Subordination.**  Pursuant to section 510 of the Bankruptcy Code, the Debtors and the Wind-Down Debtor reserve the right to reclassify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

76.    **Release of Liens.**  Except as otherwise provided in the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan or this Confirmation Order on the Effective Date, and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other

security interests against any property of the Estates shall be fully released, settled, and compromised, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors shall automatically revert to the applicable Debtor or Wind-Down Debtor, as applicable, and their successors and assigns, in each case, without any further approval or order of the Court and without any action or Filing being required to be made by the Debtors. The presentation or filing of this Confirmation Order to or with any local, state, federal, or foreign agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

77.    **Intercompany Claims.** For the avoidance of doubt, nothing in this Confirmation Order or the Plan shall have any impact on the validity, extent, priority, or treatment of the Intercompany Claims. Any determination as to the validity, extent, priority, or treatment of the Intercompany Claims shall be determined by the Court in a separate matter on proper notice to parties in interest. Notwithstanding anything to the contrary in this Confirmation Order or the Plan, the rights of the ad hoc group of equityholders (the "AHG") to continue or participate in any adjudication of the Intercompany Claims are preserved, and any party reserves any and all rights, claims, and defenses in connection therewith, including without limitation, the Debtors and/or the Wind-Down Debtor's right to challenge the AHG's standing with respect thereto; *provided* that such right, claim, or defense is not based on any provision in this Confirmation Order or the Plan.

78.    **Reserve for FTX Preference Claims.** The Debtors shall reserve and hold the amount of $445 million in Cash on account of the preference claims asserted by FTX, Alameda, and their estates in the FTX Bankruptcy Proceeding, until such time as this Court rules upon the Debtors' pending motion for approval of a stipulation with FTX and Alameda.

79.    **Third-Party Releases.**    For the avoidance of doubt, any party that did not affirmatively "opt in" to the Third-Party Releases contained in the Plan shall not be deemed to grant such Third-Party Releases contained in the Plan.

80.    **Contributed Third Party Claims.**    For the avoidance of doubt, any party that did not affirmatively "opt in" to contribute their Contributed Third-Party Claims to the Wind-Down Debtor shall not be deemed to contribute their claims to the Wind-Down Debtor; *provided*, *however*, that any party may contribute their Contributed Third-Party Claims to the Wind-Down Debtor on or after the Effective Date by separate agreement with the Plan Administrator and Wind-Down Debtor. Any such agreement shall be valid to the same extent as if the party affirmatively opted in to contribute their Contributed Third-Party Claims to the Wind-Down Debtor.

81.    **Operations After Closing.**    On and after the Effective Date, expect as otherwise provided in the Plan, the Debtors or the Wind-Down Debtor may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

82.    **Assumption and Rejection of Executory Contracts and Unexpired Leases.**    On the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (a) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (b) is subject to a pending motion to assume such Unexpired Lease or Executory

Contract as of the Effective Date; (c) is to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with the Sale Transaction; (d) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (e) is a D&O Liability Insurance Policy other than the Side-A Policy. Entry of this Confirmation Order constitutes approval of such assumptions, assignments, and rejections, including the assumption of the Executory Contracts or Unexpired Leases as provided in the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Except as otherwise provided in this Confirmation Order, any and all objections or reservations of rights in connection with the rejection of an Executory Contract or Unexpired Lease under the Plan, if any, are overruled on their merits.

83.    Except with respect to the Executory Contracts and Unexpired Leases discussed in the following paragraph of this Confirmation Order, the amounts set forth in the Plan Supplement (the "Cure Amounts") are the sole amounts necessary to be paid upon assumption of the associated Executory Contracts and Unexpired Leases under section 365(b)(1)(A) and (B) of the Bankruptcy Code, and the payment of such amounts will effect a cure of all defaults existing under such Executory Contracts and Unexpired Leases and compensate the counterparties to such Executory Contracts and Unexpired Leases for any actual pecuniary loss resulting from all defaults existing under such Executory Contracts and Unexpired Leases as of the Effective Date.

84.    The objections of counterparties to the assumption of their Executory Contracts and Unexpired Leases, to the extent that such objection was timely raised in accordance with Article V.C of the Plan, are preserved and will be considered by the Court at a date and time to be scheduled. As provided in the Conditional Disclosure Statement Order and the Solicitation Packages, the Debtors and the Wind-Down Debtor have reserved the right to (a) add any Executory

Contract or Unexpired Lease to the Assumed Contract Schedule and assume such Executory Contract or Unexpired Lease pursuant to the terms of the Plan, or remove any Executory Contract or Unexpired Lease from the Assumed Contract Schedule, in each case, up until the Effective Date and (b) contest any Claim asserted in connection with rejection of any Executory Contract or Unexpired Lease.

85.     **Insurance Policies and Surety Bonds.**  The Debtors shall continue to satisfy their obligations under their insurance policies in full and continue such programs in the ordinary course of business.   Each of the Debtors' insurance policies, and any agreements, documents, or instruments relating thereto shall be treated as Executory Contracts under the Plan.  Without ruling as to whether the assumption of an insurance policy was required, for the avoidance of doubt, on the Effective Date:  (a) the Debtors shall be deemed to have assumed, to the extent necessary, each D&O Liability Insurance Policy (including, without limitation, any "tail policy" and all agreements, documents, or instruments related thereto) other than the Side-A Policy, with the Wind-Down Debtor being authorized to pursue any proceeds thereof on behalf of the Debtors or the Wind-Down Debtor; and (b) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the applicable Wind-Down Debtor(s) unaltered.  The Side-A Policy shall remain in effect, with all insureds retaining the right to coverage (subject to the D&O settlement); *provided*, however, that Wind-Down Debtor preserves all avoidance and other actions against the D&O Carriers in connection with the premium paid thereunder.  All beneficiaries under the D&O Insurance Policies reserve their rights under such D&O Insurance Policies (including the Side-A Policy) subject to the limitations set forth in the Plan.

86.     Subject to their rights to pursue claims against the D&O Carriers to seek avoidance of the policy premium paid for the Side-A Policy, as detailed in Paragraph 85 herein, the Debtors

or the Wind-Down Debtor, as applicable, shall not terminate or otherwise reduce the coverage

under any D&O Liability Insurance Policy (including, without limitation, any "tail policy" and all

agreements, documents, or instruments related thereto) in effect prior to the Effective Date, and

subject in all respects to the D&O Settlement, any current and former directors, officers, managers,

and employees of the Debtors who served in such capacity at any time before or after the Effective

Date shall be entitled to the full benefits of any such policy for the full term of such policy subject

to the terms thereof regardless of whether such directors, officers, managers, and employees

remain in such positions after the Effective Date.  Notwithstanding anything to the contrary in the

Plan, the Debtors or the Wind-Down Debtor shall retain the ability to supplement such D&O

Liability Insurance Policy as the Debtors or Wind-Down Debtor may deem necessary, subject to

the prior written consent of the Wind-Down Debtor.

87.    Nothing in paragraphs 85–86 shall be read to alter, impair, waive, or otherwise limit

the Debtors' and the Wind-Down Debtors' rights to pursue claims against the D&O Carriers to

seek avoidance of the policy premium for the Side-A Policy.

88.    **Authorization to Consummate.**  The Debtors are authorized to consummate the

Plan at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by the

required parties) of the conditions precedent to consummation as set forth in Article IX of the Plan.

89.    **Professional Compensation.**  All final requests for payment of Professional Fee

Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date

must be Filed no later than sixty (60) days after the Effective Date.  The Court shall determine the

Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with

the procedures established by the Bankruptcy Code and Bankruptcy Rules.  The Wind-Down

Debtor shall pay Professional Fee Claims in Cash to such Professionals in the amount the Court

allows, including from funds held in the Professional Fee Escrow Account as soon as reasonably

practicable after such Professional Fee Claims are Allowed by entry of an order of the Court;

*provided* that the Debtors' and the Wind-Down Debtor's obligations to pay Allowed Professional

Fee Claims shall not be limited or deemed limited to funds held in the Professional Fee Escrow

Account.

90.     No later than the Effective Date, the Debtors shall establish and fund the

Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount.  The

Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for

no other Entities until all Professional Fee Claims Allowed by the Court have been irrevocably

paid in full to the Professionals pursuant to one or more Final Orders of the Court.  No Liens,

claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the

Professional Fee Escrow Account in any way.  No funds held in the Professional Fee Escrow

Account shall be property of the Estates of the Debtors or the Wind-Down Debtor.  When all

Professional Fee Claims Allowed by the Court have been irrevocably paid in full to the

Professionals pursuant to one or more Final Orders of the Court, any remaining funds held in the

Professional Fee Escrow Account shall be turned over to the Wind-Down Debtor without any

further notice to or action, order, or approval of the Court or any other Entity.

91.     The Professionals shall deliver to the Debtors a reasonable and good-faith estimate

of their unpaid fees and expenses incurred in rendering services to the Debtors before and as of

the Confirmation Date projected to be outstanding as of the anticipated Effective Date, and shall

deliver such estimate no later than five Business Days prior to the anticipated Effective Date.  For

the avoidance of doubt, no such estimate shall be considered or deemed an admission or limitation

with respect to the amount of the fees and expenses that are the subject of a Professional's final

41

22-10943-mew    Doc 1166    Filed 03/10/23    Entered 03/10/23 08:17:02    Main Document
Pg 42 of 55

request for payment of Professional Fee Claims Filed with the Court, and such Professionals are not bound to any extent by the estimates.  If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.  The total aggregate amount so estimated to be outstanding as of the anticipated Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account; provided that the Wind-Down Debtor shall use Cash on hand to increase the amount of the Professional Fee Escrow Account to the extent fee applications are Filed after the Effective Date in excess of the amount held in the Professional Fee Escrow Account based on such estimates.

92.     Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Debtors and/or the Wind-Down Debtor, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Wind-Down Debtor.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Wind-Down Debtor may employ and pay any Professional in the ordinary course of business for the period after the Confirmation Date without any further notice to or action, order, or approval of the Court.

93.     **Return of Deposits.**  All utilities, including, but not limited to, any Person or Entity that received a deposit or other form of adequate assurance of performance under section 366 of the Bankruptcy Code during these Chapter 11 Cases, must return such deposit or other form of adequate assurance of performance to the Wind-Down Debtor promptly following the occurrence of the Effective Date, if not returned or applied earlier.

94.    **Release, Exculpation, and Injunction Provisions.**  The release and exculpation

provisions set forth in the Plan and as modified herein (including as set forth in sections VI.B.1,

VIII.A, VIII.B, and VIII.C of the Plan) are approved and authorized, and such provisions are

effective and binding on all Persons and Entities to the extent provided therein except as otherwise

provided in this Confirmation Order, *provided*, *however*, that nothing in the exculpation related

provisions of the Plan shall release the Debtors from the provisions of the Plan governing

satisfaction of Allowed Claims including Allowed Administrative Expense Claims or change the

standard for liability on Allowed Claims or Allowed Administrative Expense Claims, subject to

any applicable bankruptcy and non-bankruptcy law.

95.    As set forth in Article VIII.C of the Plan, the assets of the Debtors and of the

Wind-Down Debtor shall be used for the satisfaction of expense obligations and the payment of

Claims and Interests only in the manner set forth in this Plan and shall not be available for any

other purpose.  All Persons and Entities who have held, hold, or may hold Claims or Interests

based upon any act, omission, transaction, or other activity of any kind or nature related to the

Debtors, the Wind-Down Debtor, or the Debtors' Chapter 11 Cases that occurred prior to the

Effective Date, other than as expressly provided in the Plan or the Confirmation Order, shall be

precluded and permanently enjoined on and after the Effective Date from interfering with the use

and distribution of the Debtors' assets in the manner contemplated by the Plan.

96.    In addition, as of the Effective Date and subject to the occurrence of the Effective

Date, except as otherwise specifically provided in this Plan or the Confirmation Order, all Persons

and Entities who have held, hold, or may hold Claims or Interests that are fully satisfied pursuant

to the Plan or any Claim or Interest that is subject to the releases and exculpations set forth in

Article VIII.B and Article VIII.C of this Plan shall be precluded and permanently enjoined on and

after the Effective Date from enforcing, pursuing, or seeking any setoff or relief with respect to such Claims or Interests, except for the receipt of the payments or distributions that are contemplated by this Plan.

97.     Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor release or the third-party release, and except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby exculpated from, any liability for damages based on the negotiation, execution and implementation of any transactions or actions approved by the Bankruptcy Court in the Chapter 11 Cases, except for Causes of Action related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence; *provided* that nothing in the Plan shall limit the liability of professionals to their clients pursuant to N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.8 Rule 1.8(h)(1) (2009).

98.     The Exculpated Parties have, and upon Consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes.

99.     In addition, the Plan contemplates certain rebalancing transactions and the completion of distributions of cryptocurrencies to creditors.  The Exculpated Parties shall have no liability for, and are exculpated from, any claim for fines, penalties, damages, or other liabilities based on their execution and completion of the rebalancing transactions and the distribution of cryptocurrencies to creditors in the manner provided in the Plan.  For the avoidance of doubt, this paragraph reflects the fact that Confirmation of the Plan requires the Exculpated Parties to engage in certain rebalancing transactions and distributions of cryptocurrencies and the fact that no regulatory authority has taken the position during the Combined Hearing that such conduct would

44

violate applicable laws or regulations.  Nothing in this provision shall limit in any way the powers of any Governmental Unit to contend that any rebalancing transaction should be stopped or prevented, or that any other action contemplated by the Plan should be enjoined or prevented from proceeding further.  Nor does anything in this provision limit the enforcement of any future regulatory or court order that requires that such activities either cease or be modified, or limit the penalties that may be applicable if such a future regulatory or court order is issued and is violated. Similarly, nothing herein shall limit the authority of the Committee on Foreign Investment of the United States to bar any of the contemplated transactions.  Nor does anything in this provision alter the terms of the Plan regarding the compliance of the Purchaser with applicable laws in the Unsupported Jurisdictions before distributions of cryptocurrency occur in those Unsupported Jurisdictions.

100.    For the avoidance of doubt, the Debtors are not entitled to a discharge under section 1141(d).

101.    **Governmental Units.**  Except as set forth in the exculpation provisions set forth in the Plan (including sections VI.B.1 and VIII.C of the Plan) and in this Confirmation Order, nothing in this Confirmation Order or the Plan shall release or restrict any claim by the United States, the States or any of their agencies of any claim arising under the Internal Revenue Code, the environmental laws or any civil or criminal laws of the United States or the States, or under any rules or regulations enforced by the United States, the States or any of their agencies against the Released Parties, nor shall anything in the Confirmation Order or the Plan enjoin the United States or the States from bringing any claim, suit, action or other proceedings against the Released Parties for any liability for any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any civil or criminal laws of the United States or the States, or under any

45

rules or regulations enforced by the United States, the States or any of their agencies, nor shall anything in the Confirmation Order or the Plan exculpate any such party from any liability to the United States, the States or any of their agencies, arising under the Internal Revenue Code, the environmental laws or any civil or criminal laws of the United States or the States, or under any rules or regulations enforced by the United States, the States or any of their agencies; *provided*, however, that nothing in this Confirmation Order or the Plan shall modify in any respect the relief previously granted in the Bar Date Order.

102.    Except as set forth in the exculpation provisions set forth in the Plan (including sections VI.B.1 and VIII.C of the Plan) and in this Confirmation Order, nothing in this Confirmation Order, the Disclosure Statement, the Plan, or the Asset Purchase Agreement releases, precludes, or enjoins: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) ("Governmental Unit") that is not a "claim" as defined in 11 U.S.C. § 101(5) ("Claim"); (ii) any Claim of a Governmental Unit arising on or after the Effective Date; or (iii) any liability to a Governmental Unit on the part of any non-Debtor (except to the extent set forth in paragraphs 49 and 56 herein); *provided*, however, that nothing in this Confirmation Order or the Plan shall modify in any respect the relief previously granted in the Bar Date Order.

103.    **Securities and Exchange Commission Provisions.**  Notwithstanding anything to the contrary in this Confirmation Order, or any findings announced at the Combined Hearing, nothing in this Confirmation Order, or announced at the Combined Hearing, constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the SEC to challenge transactions involving crypto tokens on any basis is expressly reserved.

104.    Notwithstanding any provision herein to the contrary, nothing in this Confirmation Order or the Plan grants this Court jurisdiction over any police and regulatory actions by the SEC, and the SEC shall retain the power and authority to commence and continue any such actions against any person or entity, including without limitation, the Debtors, in any forum with jurisdiction; *provided*, however, that nothing in this Confirmation Order or the Plan shall modify in any respect the relief previously granted in the Bar Date Order.

105.    Upon the occurrence of the Effective Date, the Debtors' books and records shall be transferred to the Wind-Down Debtor, which shall continue to preserve all financial books and records, emails, and other financial documents relating to the Debtors' business that are currently in the Debtors' possession. The Wind-Down Debtor shall not destroy or otherwise abandon any such documents or records without providing advance notice to the SEC (c/o Therese Scheuer, U.S. Securities and Exchange Commission, 100 F Street, NE, Washington, DC 20549, ScheuerT@SEC.GOV) and seeking further authorization from this Court.  Nothing in the Plan or this Confirmation Order shall affect the obligations of the pre-Effective Date Debtors, the Wind-Down Debtor, and/or any transferee or custodian to maintain all books and records that are subject to any governmental subpoena, document preservation letter, or other investigative request from a governmental agency.

106.    Notwithstanding any language to the contrary herein, no provision in the Plan or this Confirmation Order shall (a) preclude the OSC or the SEC from enforcing its police or regulatory powers or conducting any investigations of any person or entity, or (b) subject to the exculpation provisions set forth in the Plan (including sections VI.B.1 and VIII.C of the Plan) and in this Confirmation Order, enjoin, limit, impair or delay the OSC or SEC from commencing or

continuing any claims, causes of action or proceeding against any non-Debtor person or non-Debtor entity in any forum.

107.    **Employee Transition Plan.** The Employee Transition Plan, the terms of which are included in the Plan Supplement as <u>Exhibit H</u>, will be implemented following the Effective Date and is not subject to the Court's approval.

108.    **Compliance with Tax Requirements.** In connection with the Plan, to the extent applicable, the Debtors, the Wind-Down Debtor, any Distribution Agent, and any other applicable withholding and reporting agents shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Debtors, the Wind-Down Debtor, the Distribution Agent, and any other applicable withholding and reporting agents shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including winding-down a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms that are reasonable and appropriate; *provided* that the Wind-Down Debtor and the Distribution Agent, as applicable, shall request appropriate documentation from the applicable distributees and allow such distributees a reasonable amount of time to respond. The Debtors, the Wind-Down Debtor, the Distribution Agent, and any other applicable withholding and reporting agents reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

109.    **Exemption from Certain Taxes and Fees.**  To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Debtor, the Wind-Down Debtor, the Purchaser, or to any other Entity) of property under the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Wind-Down Debtor; (b) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; or (d) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, including the Asset Purchase Agreement, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, sales or use tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

110.    **Termination of Asset Purchase Agreement.**  If the Asset Purchase Agreement is terminated and the Sale Transaction is not consummated, all provisions in this Confirmation Order relating to the Asset Purchase Agreement, the Sale Transaction, and the Purchaser shall be of no force and effect, and the Debtors are authorized to consummate the Liquidation Transaction without further order of the Court.

111.    **The Liquidation Transaction.**  If the Asset Purchase Agreement is terminated, the Debtors shall pursue the Liquidation Transaction contemplated under the Plan and shall provide all Holders of Claims and Interests with the treatment afforded to such Holders under the Plan.  In the event that the Debtors determine to pursue the Liquidation Transaction contemplated under Article IV of the Plan, the Debtors shall promptly notify the Court and all parties in interest.  The Plan shall be deemed to satisfy all requirements under the Bankruptcy Code with respect to either the Sale Transaction or the Liquidation Transaction pursuant to this Confirmation Order.

112.    **Documents, Mortgages, and Instruments.**  Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the Plan, including the Restructuring Transactions, and this Confirmation Order.

113.    **The BNY Objection.**  This Confirmation Order confirms that the Deed of Trust and Assignment of Rents recorded January 5, 2023 Official Records of Orange County (the "Deed") transferring title of 37 Black Hawk, Irvine, California 92603 (the "Property") from Michael G. Beason and Mickey L. Wiebeis (collectively, the "Property Borrowers") to Voyager Digital, LLC is void.  This Confirmation Order may be recorded against the Property as evidence and confirmation that the Deed is void.  The Bank Of New York Mellon f/k/a the Bank Of New York, As Trustee For The Certificateholders Of CWALT, Inc., Alternative Loan Trust 2005-38,

50

Mortgage Pass-Through Certificates, Series 2005-38 as Serviced by Shellpoint Mortgage Servicing ("Shellpoint") shall be permitted to take any other the necessary actions to void the Deed. To the extent necessary, the automatic stay is lifted solely as it pertains to Shellpoint's rights to take action against the Property and shall be effective immediately upon entry of this Confirmation Order. The Debtor(s) shall not be party to any foreclosure or other proceeding related to the Property as they lack any interest in the Property. Shellpoint shall release the Debtors and the Wind-Down Debtor of any costs and claims incurred on account of the Property, including any actions taken in any foreclosure or other proceeding or associated with voiding the Deed. This Confirmation Order shall in no way prevent Shellpoint from pursuing any and all lawful rights and remedies as to the Property Borrowers.

114. **Continued Effect of Stays and Injunction.** Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays arising under or entered during these Chapter 11 Cases under section 362 of the Bankruptcy Code or otherwise and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

115. **Notice of Subsequent Pleadings.** Except as otherwise provided in the Plan or in this Confirmation Order, notice of all subsequent pleadings in these Chapter 11 Cases after the Effective Date will be limited to the following parties: (a) the Wind-Down Debtor and its counsel; (b) the U.S. Trustee; (c) counsel to the Purchaser; (d) any party known to be directly affected by the relief sought by such pleadings; and (e) any party that has previously requested notice or who files a request for notice under Bankruptcy Rule 2002 after the Effective Date. The Claims, Noticing, and Solicitation Agent shall not be required to file updated service lists.

116.    **Choice of Law.**  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, documents, instruments, or contracts, in which case the governing law of such agreement shall control); provided that corporate, limited liability company, or partnership governance matters relating to the Debtors or the Wind-Down Debtor, as applicable, shall be governed by the laws of the jurisdiction of incorporation or formation of the relevant Debtor or Wind-Down Debtor, as applicable.

117.    **Protection Against Discriminatory Treatment.**  As provided by section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Entity, including Governmental Units, shall discriminate against any Wind-Down Debtor or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, any Wind-Down Debtor, or any Entity with which a Wind-Down Debtor has been or is associated, solely because such Wind-Down Debtor was a debtor under chapter 11 of the Bankruptcy Code or may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases).

118.    **Notices of Confirmation and Effective Date.**  The Debtors or the Wind-Down Debtor, as applicable, shall serve notice of entry of this Confirmation Order, of the occurrence of the Effective Date, and of applicable deadlines (the "Notice of Confirmation") in accordance with Bankruptcy Rules 2002 and 3020(c) on all parties served with the Combined Hearing Notice seven

Business Days after the Effective Date; *provided* that no notice of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Combined Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. For those parties receiving electronic service, filing on the docket is deemed sufficient to satisfy such service and notice requirements.

119.    No later than ten Business Days after the Effective Date, the Wind-Down Debtor shall cause the Notice of Confirmation, modified for publication, to be published on one occasion in *The New York Times* (national edition) and *USA Today* (national edition). Mailing and publication of the Notice of Confirmation in the time and manner set forth in this paragraph will be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c). No further notice is necessary.

120.    **Dissolution of Statutory Committees.** On the Effective Date, any statutory committee appointed in the Chapter 11 Cases shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases; *provided*, *however*, that such committees will remain in existence for the limited purposes of (a) pursuing, supporting, or otherwise participating in, any outstanding appeals in the Chapter 11 Cases; and (b) filing, objecting, or otherwise participating in, any final fee applications of Professionals.

121.    **Exemption from Registration.** The Plan Administrator shall hold the equity of Voyager Digital Ltd., to the extent that any new equity is issued, in an agency capacity, for the

benefit of and to facilitate the rights of Holders of Interests provided under the Plan; *provided* that such equity, if issued, shall be uncertificated and non-transferable.

122.    **Effect of Non-Occurrence of Conditions to Confirmation.**  If the Effective Date does not occur within 120 days after the Confirmation Date, then the Plan will be null and void in all respects, any and all compromises or settlements not previously approved by Final Order of the Court embodied in the Plan (including with respect to the fixing, limiting, or treatment of any Claim or Interest), shall be deemed null and void, and nothing contained in the Plan or the Disclosure Statement shall:  (a) constitute a waiver or release of any Claims, Interests, or Causes of Action held by any Debtor or any other Entity; (b) prejudice in any manner the rights of any Debtor or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by any Debtor or any other Entity in any respect.

123.    **Substantial Consummation.**  On the Effective Date, the Plan shall be deemed to have been substantially consummated or shall be anticipated to be substantially consummated concurrent with the occurrence of the Effective Date.

124.    **Waiver of Stay.**  For good cause shown, the stay of this Confirmation Order provided by the Bankruptcy Rules shall terminate at the end of the day on March 13, 2023, and this Confirmation Order shall be effective and enforceable immediately thereafter.

125.    **Headings.**  Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

126.    **Effect of Conflict.**  This Confirmation Order supersedes any Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order.  If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall govern and control.  For the avoidance of doubt, the

*Stipulation and Agreed Order Between the Debtors and Metropolitan Commercial Bank* [Docket No. 821] remains in effect and is not superseded by this Confirmation Order.

127. **Final, Appealable Order.** This Confirmation Order is a final judgment, order, or decree for purposes of 28 U.S.C. § 158(a), and the period in which an appeal must be filed shall commence upon the entry hereof.

128. **Retention of Jurisdiction.** The Court may properly, and upon the Effective Date shall, to the full extent set forth in the Plan, retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including (i) the matters set forth in Article XI of the Plan and (ii) as set forth in Section 10.13 of the Asset Purchase Agreement.

Dated:  New York, New York
      March 10, 2023

                          /s/ **Michael E. Wiles**
                          THE HONORABLE MICHAEL E. WILES
                          UNITED STATES BANKRUPTCY JUDGE