UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
In re:                                                  :        Chapter 11
                                                        :
VOYAGER DIGITAL HOLDINGS, INC., et al.,                 :        Case No. 22-10943 (MEW)
                                                        :
Debtors.                                                :        (Jointly Administered)
                                                        :
------------------------------------------------------------------------

# DECISION AND ORDER DENYING THE GOVERNMENT'S MOTION FOR A STAY OF THE CONFIRMATION ORDER PENDING APPEAL

A P P E A R A N C E S:

OFFICE OF THE UNITED STATES ATTORNEY,
SOUTHERN DISTRICT OF NEW YORK
New York, New Yori
  By:  Lawrence H. Fogelman, Esq.
       Jean-David Barnea, Esq.
       Peter Aronoff, Esq.

OFFICE OF THE UNITED STATES TRUSTEE
New York, New York
  By:  Linda A. Riffkin, Esq.;
       Richard C. Morrissey, Esq.
       Mark Bruh, Esq.

KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
New York, New York and Chicago, Illinois
*Attorneys for Debtors*
  By: Joshua Sussberg, Esq.
      Christopher Marcus, Esq.
      Christine Okike, Esq.
      Michael Slade, Esq.
      Allyson Smith, Esq.
      Richard U.S. Howell, Esq.

McDERMOTT WILL & EMERY LLP
New York, New York; Dallas, Texas; and Miami, Florida
*Attorneys for the Official Committee of Unsecured Creditors*
  By:  Darren T. Azman, Esq.
       Joseph B. Evans, Esq.
       Charles R. Gibbs, Esq.
       Gregg Steinman, Esq.

1

I entered an order confirming the Debtor's plan of reorganization in these cases on March 8, 2023 (ECF No. 1157), and the corrected and operative version of the order was entered on March 10, 2023 (the "**Confirmation Order**") (ECF No. 1166.)  I had previously dictated a decision into the record on March 7, 2023, and the corrected and final version of my decision (the "**Decision**") was entered on the docket on Saturday, March 11, 2023 (ECF No. 1170), with some typographical errors corrected in a further Order entered March 13, 2023 (ECF No. 1173). The United States Government, through the Office of the United States Trustee and the Office of the United States Attorney for the Southern District of New York, has moved for a stay of the Confirmation Order pending an appeal, or in the alternative for a stay of the "exculpation" provisions that are included in the Confirmation Order and in the underlying plan of reorganization.  The Government has submitted a memorandum in support of its motion (the "**Govt. Mem.**," ECF No.1182) and the Debtors have submitted a memorandum in opposition to the motion (the "**Debtors' Mem.**," ECF No.1186), as has the Official Committee of Unsecured Creditors (the "**UCC Mem**.," ECF No. 1187).  The Court heard argument on the motion on March 15, 2023.

## Discussion

Rule 8007 of the Federal Rules of Bankruptcy Procedure provides that a party seeking a stay pending appeal must apply in the first instance to the bankruptcy court.  Fed. R. Bankr. P. 8007(a)(1)(A).  The decision to deny a stay is within the discretion of the bankruptcy court.  *In re Overmyer*, 53 B.R. 952, 955 (Bankr. S.D.N.Y. 1985).  The relevant criteria have been worded somewhat differently in different cases, but as a general matter the court must consider: (1) whether the movant has made a "strong showing" that it is likely to succeed on appeal, (2) whether the movant will suffer irreparable injury absent a stay, (3) whether another party will

2

suffer substantial injury if a stay is issued, and (4) how public interests may be affected. *See 461 7th Ave. Mkt., Inc. v. Delshah 461 Seventh Ave., LLC (In re 461 7th Ave. Market, Inc.)*, No. 20-3555, 2021 U.S. App. LEXIS 36995, at *1 (2d Cir. Dec. 15, 2021).

I conclude based on these factors that the Government is not entitled to a stay. However, at the Court's request the parties have agreed (and the Court has ordered) that a stay will remain in effect through Monday, March 20, 2023. This modest extension of the current stay is made in recognition of the likelihood that a stay application will be made to the District Court, and to afford the District Court a reasonable opportunity to read the relevant papers and to make its own ruling.

1.   **Likelihood/Possibility of Success on Appeal**

The Government contends that it is likely to succeed on appeal. However, if one were to read the Government's papers without having first read my Decision, one would have little to no idea of what I had actually ordered, or the bases on which I had done so. The Government has not even discussed the actual theory upon which I relied in support of the exculpation provision that I approved. Nor has it even discussed the many court decisions (including Second Circuit authorities) that I cited in support of the relief that I ordered.

I explained in the Decision that my order will have the effect, under section 1142(a) of the Bankruptcy Code, of requiring the Debtors to engage in the purchase and sales of cryptocurrencies in order to "rebalance" the Debtors' cryptocurrency portfolios, and will require the Debtors, the Wind-Down Debtors, the Plan Administrator and Binance.US (acting as the Debtors' distribution agent and as a trustee for that purpose) to distribute cryptocurrencies to customers. *Id.* at 34-35. I explained further that I believed that under a long line of authority parties should not be liable for doing things that my order will require them to do, particularly

3

where the Government (during the confirmation hearing) has not actually contended that any of these activities would be illegal. *Id.* I cited some decisions on this point when I announced my original decision in open court,[1] and when I issued my final decision I cited additional Second Circuit and other authorities that are directly on point.[2] The Debtors have cited many additional authorities in the memorandum they filed today. *See* Debtors' Mem. at 14-17. The Government contends that it will likely win on appeal, but in making its arguments the Government has not even discussed any of the authorities that I cited, or the actual theory on which I relied.

Instead, the Government's papers exaggerate and in some places mischaracterize what I have done and the authorities on which I have relied, and in other instances rely on hyperbole or on "straw man" arguments.

---

[1] *See* Decision at 31-32, *citing Airadigm Commc'ns., Inc. v. FCC (In re Airadigm Communs., Inc.)*, 519 F.3d 640, 655-57 (7th Cir. 2008); *In re Granite Broad Corp.*, 369 B.R. 120, 139 (Bankr. S.D.N.Y. 2007); *In re LATAM Airlines Grp. S.A.*, 2022 Bankr. LEXIS 1725, at *159 (Bankr. S.D.N.Y. June 18, 2022) ; *In re Murray Metallurgical Coal Holdings, LLC*, 623 B.R. 444, 504 (Bankr. S.D. Ohio 2021); *In re Ditech Holding Corp.*, 2021 Bankr. LEXIS 2274, at *25-26 (Bankr. S.D.N.Y. Aug 20, 2021).

[2] *See* Decision at 35-36, *citing Bradford Audio Corp. v. Pious*, 392 F.2d 67, 72-73 (2d Cir. 1968) (receiver was immune from liability for having done what a court order approved and directed the receiver to do); *Dana Commercial Credit Corp. v. Center Teleproductions, Inc. (In re Center Teleproductions, Inc.),* 112 B.R. 567, 577-78 (Bankr. S.D.N.Y. 1990) (trustee granted absolute immunity from action brought by an entity with a security interest in property where trustee acted pursuant to court order); *see also Boullion v. McClanahan,* 639 F.2d 213, 214 (5th Cir. 1981) (holding that where a bankruptcy trustee sought and obtained court approval for his actions he was entitled to absolute immunity); *T& W Inv. Co. v. Kurtz*, 588 F.2d 801, 802 (10th Cir. 1978) (finding immunity appropriate when "every action by [the receiver] objected to in this suit was known to and approved by the state court judge supervising the receiver," the plaintiff "had an opportunity to and did object throughout the state court proceedings" and "the receiver was in fact following the orders of the court and complying therewith"); *Phoenician Mediterranean Villa, LLC v. Swope (In re J&S Props., LLC)*, 545 B.R. 91, 103 (Bankr. W.D. Pa 2015) (where a bankruptcy trustee acts pursuant to an order of court, a bankruptcy trustee is generally afforded absolute immunity*); In re XRX, Inc.*, 77 B.R. 797, 798 (Bankr. D. Nev. 1987) (a trustee acting pursuant to a court order in making a disbursement is not subject to personal liability.)

**(a)     Jurisdiction**

The Government argues that I overstepped my jurisdictional authority, contending that that I did not have the power to do anything in these chapter 11 cases other than to resolve pre-petition claims. (Govt. Mem. at 21-22.) However, one of the things that must be resolved in every chapter 11 plan, and in a confirmation order with respect to a plan, is what will happen to a debtor's assets – *i.e.,* whether they will be sold, retained or distributed. *See* 11 U.S.C. § 1123(a)(5). In this case, the Debtors' assets consist primarily of cryptocurrencies. The plan requires the purchase and sale of cryptocurrencies (as part of rebalancing efforts in preparation for distributions) and it requires the distribution of cryptocurrencies to account holders. Indeed, it would be impossible to have a liquidation of the Voyager Debtors without some or both of those activities.

The Debtors proposed a plan of reorganization, and I was required to make a ruling as to whether it could be confirmed. Where regulatory issues were actually identified (such as with respect to distributions of cryptocurrencies in "Unsupported Jurisdictions,") those issues were accounted for in both the plan and in my Confirmation Order. However, the federal authorities made clear during the confirmation hearing that they do not actually contend that the contemplated rebalancing activities or proposed distributions of cryptocurrencies would violate any applicable laws. As I explained in my Decision, the evidence and argument before me during the confirmation hearing did not suggest there were any illegalities in what the plan contemplated, and compelled a conclusion that the transactions could and should proceed.

No party has disputed my jurisdiction over these cases, or my jurisdiction and my power to enter a confirmation order. The effect of my order (under section 1142(a) of the Bankruptcy Code) is that certain parties will be obligated to do what the plan calls for regarding the

5

rebalancing of the cryptocurrency portfolios and the distribution of cryptocurrencies to customers. I have left open the right of the Government to seek to stop the activities at any time if the Government believes that they should be stopped. All I have done – based on the authorities I cited and which the Government has not even discussed – is to confirm that, in the meantime, the people who are required to do things pursuant to my confirmation order will not be held liable for having done what I have required. So long as I have jurisdiction to issue the confirmation order (which I plainly do), and so long has my order requires that certain actions be taken (as it plainly does), then that ruling is proper under the authorities that I have cited.

**(b)     Clarity of the Provision**

The Government has argued that my Confirmation Order is not sufficiently clear as to what conduct it purports to immunize and that it is subject to misinterpretation. (Govt. Mem. at 22.) The full text of the language that I approved is as follows:

> Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor release or the third-party release, and except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby exculpated from, any liability for damages based on the negotiation, execution and implementation of any transactions or actions approved by the Bankruptcy Court in the Chapter 11 Cases, except for Causes of Action related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence; *provided* that nothing in the Plan shall limit the liability of professionals to their clients pursuant to N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.8 Rule 1.8(h)(1) (2009).
>
> The Exculpated Parties have, and upon Consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes.
>
> In addition, the Plan contemplates certain rebalancing transactions and the completion of distributions of cryptocurrencies to creditors. The Exculpated Parties shall have no liability for, and are exculpated from, any claim for fines, penalties, damages, or other liabilities based on their execution and

>completion of the rebalancing transactions and the distribution of cryptocurrencies to creditors in the manner provided in the Plan.
>
>For the avoidance of doubt, the foregoing paragraph reflects the fact that Confirmation of the Plan requires the Exculpated Parties to engage in certain rebalancing transactions and distributions of cryptocurrencies and the fact that no regulatory authority has taken the position during the Combined Hearing that such conduct would violate applicable laws or regulations. Nothing in this provision shall limit in any way the powers of any Governmental Unit to contend that any rebalancing transaction should be stopped or prevented, or that any other action contemplated by the Plan should be enjoined or prevented from proceeding further. Nor does anything in this provision limit the enforcement of any future regulatory or court order that requires that such activities either cease or be modified, or limit the penalties that may be applicable if such a future regulatory or court order is issued and is violated. Similarly, nothing herein shall limit the authority of the Committee on Foreign Investment of the United States to bar any of the contemplated transactions. Nor does anything in this provision alter the terms of the Plan regarding the compliance of the Purchaser with applicable laws in the Unsupported Jurisdictions before distributions of cryptocurrency occur in those Unsupported Jurisdictions.

The first paragraph of this exculpation provision states that parties are exculpated from liability for things that I authorized during the course of the bankruptcy case, with an explicit exclusion for fraud, willful misconduct or gross negligence. This language is much narrower than the provision that the Debtors had originally proposed. More importantly, the language describing the matters that are covered (*i.e.,* liability for damages based on the negotiation, execution and implementation of transactions or actions approved by the Bankruptcy Court) is precisely the modification that the United States Trustee suggested in the objection that it filed. As the Debtors have pointed out, the language also is comparable to (if anything, it is narrower than) the language that has been approved in countless other bankruptcy cases, usually without any objection by the Government and without any suggestion that it has been misinterpreted or misapplied. *See* Debtors' Mem. at 14-16, 17-18.

The second paragraph of the exculpation language just implements the terms of section 1125(e) of the Bankruptcy Code, and the Government does not challenge that provision.

7

The third and fourth paragraphs of the exculpation provisions that I approved are specifically limited to the fact that the parties must buy and sell cryptocurrencies as part of the portfolio rebalancing that the plan requires, and must distribute cryptocurrencies to customers. The point is to protect the parties from belated allegations that those very activities are somehow violative of law and that parties should be penalized just for doing what I have ordered them to do. The Government nevertheless has strained to find potential ambiguities in these terms. It theorizes, for example, that my Order might somehow be interpreted as immunizing fraud, or theft, or tax avoidance. (Govt. Mem. at 27-28.) Those contentions are red herrings; I do not believe that the Government actually thinks that my Order has such effect, or that anyone could reasonably contend that it has such effect. The last two paragraphs make clear that they protect people for doing the things that they are required to do under the plan and under my order. Although the plan and the Confirmation Order require the parties to sell cryptocurrencies, they certainly do not require (or permit) anyone to commit fraud in the course of doing so, or to engage in theft in the course of doing so. (Govt. Mem. at 27-28.) Similarly, there is nothing in the plan that requires or permits the Debtors to evade their tax obligations, and there is nothing in my Order that reasonably could be construed to mean that the Debtors do not have to pay taxes. (Govt. Mem. at 26-7.) Nor is there anything in the plan that requires or permits the parties to violate environmental laws, or that could be reasonably construed as having done so.

    **(c)**     **Third Party Release Arguments**

The Government continues to argue that I have granted "third party releases" and that the case authorities relating to "third party releases" would not authorize what I have done. (Govt. Mem. at 22-23, 24.) But I have repeatedly made clear that I am not relying on the authorities and

8

arguments that purportedly justify the "third party releases" that are at issue in the cases cited by the Government.

Cases that have approved "third party releases" rely on general contentions that a bankruptcy court may do what is "necessary" to the confirmation of a plan, coupled with contentions that releases of claims that third parties have against other third parties are necessary to secure settlements or other contributions to a plan. *See, e.g., In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 143 (2d Cir. 2005); *In re Purdue Pharma, L.P.*, 635 B.R. 26, 106 (S.D.N.Y. 2021). I have made it quite clear that I have not relied on any of those authorities or arguments in this case. In fact, I have previously expressed my own strong skepticism about third party releases that are granted on these theories. *See In re Aegean Marine Petroleum Network, Inc.*, 599 B.R. 717, 726-27 (Bankr. S.D.N.Y. 2019).

The exculpation provision that I have approved is based on entirely different principles and authorities, as explained above and as also explained in my prior *Aegean* decision and in my Decision in this case. The Government's contention that every exculpation provision somehow should be treated as though it is an outgrowth of the "third party release" cases, and that all other legal theories in support of exculpation should just be ignored, is without merit.

**(d)    Section 1142(a)**

The Government argues that section 1142(a) of the Code does not by its own terms refer to an exculpation of parties. (Govt. Mem. at 23-24.) But by focusing solely on the language of section 1142(a) the Government has focused on only part of the relevant equation. My confirmation order will have the effect, under section 1142(a), of affirmatively requiring that certain actions be taken. The proposed exculpation results from the theory that people who must

9

do what my confirmation order requires are entitled to protection. That protection derives from my confirmation order and from the many other authorities cited above.

    **(e)**    **Whether Prospective Conduct Should Be Covered**

The Government persists in characterizing what I have done as a "release," and having applied this label the Government then argues further that a "release" should only focus on past conduct. (Govt. Mem. at 22, 25, 27-8, 29.) Again, the argument is based on a false analogy and a false label, and just ignores the actual theory on which I approved the exculpation provision. The whole point, in this case, is that the confirmation order will require certain actions to be taken in the future. Parties who act under the direction of that Order are entitled to know that they are not being ordered (in effect) to incur liabilities for having done so. As the Debtors have pointed out, courts regularly have approved exculpation provisions that cover prospective conduct that will occur during the implementation of a plan. *See* Debtors' Mem. at 16-17. If anything, the language in this case regarding proposed rebalancing trades and cryptocurrency distributions is far narrower and far more specific than the terms that have been approved in other cases.

    **(f)**    **Notice to the Government**

The Government asserts that it did not receive fair notice of the proposed exculpation terms. (Govt. Mem. at 25-6.) However, the initial version of the Plan that was filed on December 22, 2022 (ECF No. 777) included a broad exculpation provision in Article VIII.C. That provision would have immunized the "Exculpated Parties" based on any act or omission arising on or after the Petition Date – whether I had approved it or not – with exceptions for fraud, willful misconduct or gross negligence. That would have been far broader than the first paragraph of the exculpation provisions that I approved. The Debtors' proposal also would have

deemed the Exculpated Parties to have acted "in compliance with the applicable laws" with regard to the distributions contemplated by the plan, and proposed that the Exculpated Parties "shall not be" liable "at any time" for the violation of any applicable law, rule, or regulation governing such distributions.  This, too, was broader than the language that I eventually approved, as it would have declared for all time that the Debtors' activities were deemed to be lawful and presumably would have thereby barred any legal effort to stop them.

The Debtors' proposed language appeared in every amended version of the Plan that was filed.  *See* ECF Nos. 830, 1117, 1125.  Notably, the SEC and the Office of the United States Attorney did not object to any of those provisions.  The Office of the United States Trustee filed an objection (ECF No. 1085), but that objection just asked that the proposed exculpation be narrowed, not eliminated.

The first draft of the proposed confirmation order, submitted on February 28, 2023 (ECF No. 1120) included a paragraph that would have exempted the Government from the proposed exculpation provision.  *Id.* ¶ 141.  However, no such exemption was included in the plan itself, and the draft of the proposed order was filed well after the objection period had already passed.  It appears that this language was included in the first draft of the confirmation order as a possible resolution of a separate objection that the FTC had filed regarding the FTC's ability to pursue claims based on pre-petition business activities of the Debtors and their personnel. In any event, the Debtors removed this provision in the next version of the proposed confirmation order that they filed.  (ECF No. 1130.)  The Government officials who currently object to the Confirmation Order do not contend that had negotiated for the inclusion of such a term in the confirmation order, or even that they were aware of it at the time.  What actually got the Government's attention on March 2, 2023 was the Debtors' request to *expand* the previous exculpation

**11**

provision and to state explicitly that the Government would be barred from ever contending, in any context, that the relevant transactions violated any rule or regulation.

I agree that the extra and expanded language that the Debtors proposed on March 2, 2023 was overreaching and was made without adequate notice.  At the same time, however, the Government should not be permitted to pretend that March 2, 2023 was the first time it received notice of the proposed exculpation provisions.  The Government was on notice of those proposed exculpation terms since December 2022, and the relief that I ultimately granted was actually narrower than the relief that the plan sought.

**(g)    Coverage of Non-Fiduciaries**

The Government argues that parties should not be the beneficiaries of exculpation unless they are "estate fiduciaries." (Govt. Mem. at 28-29.)  As I explained in *Aegean*, however, the point of an exculpation provision is not only to protect court-supervised fiduciaries, but also to protect parties who engage in court-supervised and court-ordered transactions. *See Aegean,* 599 B.R. at 720-21.  If parties are authorized (or directed) to do things under my Order, they deserve protection. *Id.*  Other courts, based on similar reasoning, have extended exculpation provisions to persons who were not fiduciaries of the estate. *See* Debtors' Mem. at 16-17.

Furthermore, in this case, the Debtors plainly are fiduciaries, and the persons who implement the rebalancing trades and distributions on behalf of the Debtors will be acting under the authority I have granted to the Debtors.  In addition, Binance.US will distribute cryptocurrencies to customers as a distribution agent of the Debtors, and in that capacity Binance.US will receive and distribute cryptocurrencies "in trust" for the Debtors.

The Office of the United States Trustee at one point contended that exculpation provisions in favor of Debtors or other fiduciaries should not extent to employees or other people

who act for the Debtors. However, the Debtors are corporate entities; they can only act through human beings. It would make no sense to say that the Debtors themselves are exculpated from liability, but that the human beings through which the Debtors act are not similarly protected.

**(h)    Other arguments**

I do not believe there is merit to the Government's other arguments.

I have not "enjoined" the Government's exercises of police and regulatory powers, I have not "prospectively immunized" the parties from enforcement actions, and I have not barred regulatory actions to stop the contemplated transactions. (Govt. Mem. at 21-2.) The Government's arguments to the contrary are just hyperbole. I have made it quite clear that the Government can step in at any time if (due to changing or evolving regulatory views) the Government thinks the rebalancing transactions or cryptocurrency distributions should be stopped. My order also made quite clear that I have not purported to limit the liability of any person for anything they have done that I have not explicitly authorized and/or directed them to do. The Order that I have entered is narrow in scope and is limited to the protection of people who, at least for now and in the absence of regulatory action, will have to do what my order requires.

Notwithstanding the Government's argument (Govt. Mem. at 25), there plainly was a "case or controversy" as to whether the parties who would be required to do certain things following a plan confirmation would nevertheless potentially be subject to personal liability to the Government for having done what a confirmation order requires. As I explained in the Decision, the Government did not actually contend that any of the transactions required by the plan would be illegal in any way. However, the SEC revealed cryptically at the close of the day on March 3, 2023 that the staff of the SEC believed that the VGX token had "aspects" of a

13

security (without specifying what those aspects were) and that Binance.US was operating as an unregistered securities dealer (without specifying why the staff thought so).  The SEC further stated that the staff's views are not the views of the Commission itself; that the Commission itself was not taking the position that the proposed transactions were illegal; and that the SEC did not intend to offer any evidence or any further explanation as to exactly what the staff's concerns were.  On the following Monday, March 6, 2023, the Government argued that the persons who would implement the plan should just "take their chances" as to whether the Government might later contend, after the fact, that the transactions were improper and that such persons were subject to penalties or other liabilities – even though (as noted) the Government was not prepared to oppose the confirmation of the plan, and even though the confirmation of the plan would require people to engage in the very cryptocurrency trades and cryptocurrency distributions that the Government wanted to reserve the right to penalize.  I am not quite sure just what could have brought that particular issue into more direct focus.

The Government continues to argue that any immunity that derives from a court's order should just be an affirmative defense in future proceedings, and that the persons who may have to assert such defenses (and the courts who need to rule on them) should be left without any guidance, from me, as to what exactly it is that I think the confirmation order requires and what activities parties will be conducting under the authority of my order.  (Govt. Mem. at 27.)  I have already explained, in my Decision, why I do not think that makes sense.  I see no reason why a future court should have to guess as to just what activities I have authorized and that I thereby intend to be subject to the relevant immunities.

Finally, the Government argues that in some bankruptcy cases exculpation provisions have not covered claims that the Government may have.  (Govt. Mem. at 29-30.)  That is true,

**14**

but it certainly has not always been the case, and the fact remains that the Government has been subject to countless court-approved exculpation provisions in other cases. *See, e.g.,* Debtors' Mem. at 17-18.

2. **Balance of Hardships/Equities**

The Government has not contended that it faces an "irreparable injury" in the absence of a stay except for the risk that an appeal might be rendered equitably moot if a stay were not granted. It is not entirely clear to me that this would be the case. For example, the Government has criticized my Order as allegedly being unclear or overbroad in what it covers. I believe, as explained above, that the Government's arguments in that regard are red herrings, and I do not believe there is any actual ambiguity in how the exculpation will be applied with respect to cryptocurrency sales and distributions, or that further clarifications actually are required. However, if the Government really thinks that my Order could be misinterpreted, and if the real purpose of an appeal is to obtain further clarification (for example) that my Order does not authorize the Debtors to commit fraud in their purchase or sales of cryptocurrencies, or that it does not permit a theft of cryptocurrencies, or that it does not free the Debtors of any tax liabilities, then I cannot imagine that appeals on such grounds would be barred based on equitable mootness. I do not believe that anybody contends or would ever contend that my Order authorizes any of the kinds of fraud, theft, or tax avoidance that the Government has identified, or that immunization from such misconduct somehow was an intended and inextricable feature of the plan and confirmation order.

The real point of my order, of course, is to protect parties who must buy, sell and distribute cryptocurrencies from being subjected to liability based on belated contentions that those very actions might be contrary to the securities laws, commodities laws or other laws. I

15

certainly could understand and agree that an appeal on that particular ground would be considered equitably moot at to transactions that had already been completed in reliance on the authority of my order.  Curiously, though, during argument today the Government stated that it would not likely seek to impose penalties upon people for things they had already done in reliance on my order, and that any suggestion to the contrary was merely hypothetical.  If that is so, then the Government's entire argument about the "equitable mootness" risk is merely hypothetical, because the Government cannot identify anything that it actually would want to do, or should be allowed to do, that would be rendered equitably moot in the absence of a stay.

The Government argues in its papers that I have somehow "tied its hands" in dealing with cryptocurrencies, and that my order will somehow stop the Government from addressing "fraud and abuse" in the cryptocurrency field generally or from addressing "[o]utright fraud, scams and theft in digital asset markets." (Govt. Mem. at 30-31.)  During argument today the Government similarly argued that my Order will somehow prevent the Government from taking action to protect the public health, safety and welfare.  These arguments are sheer hyperbole.  I could not have said any more clearly that the Government is free at any time to take action to stop the Debtors' cryptocurrency trades and/or cryptocurrency distributions if the Government decides that those activities should be stopped.  My Order just says that in the meantime the people and entities who do what my order requires will not themselves be liable for having done so.  I fail to see how that possibly threatens the public health, safety or welfare, or how it ties the Government's hands in any way.  If the Government has not already taken regulatory actions with respect to cryptocurrencies, or if it delays in taking any further regulatory actions, those delays will certainly not be attributable in any way to my order.

The Government also argues that a stay will not harm the Debtors because the proposed transaction with Binance.US may not close until later this month. To the extent that what the Government wants is a reasonable time to seek a stay from the District Court, the parties have agreed to provide that by extending the stay through March 20, 2023 at 5:00 p.m. However, the Government presumably does not contend that the entire appeal process could be resolved in the next few weeks. The stay that the Government is actually seeking would extend long past the time when the Binance.US deal is scheduled to close. A stay could threaten the availability of that transaction, and the uncontroverted evidence before me at the confirmation hearing is that a loss of the Binance.US transaction would lead to a reduction of approximately $100 million in the assets available for distribution to creditors. The stay the Government seeks would also postpone the Debtors' ability to implement their "toggle" plan, and would further delay distributions to customers.

Every delay in these cases means that further administrative expenses will be incurred, which just further reduces creditor recoveries. Delays themselves also are a massive issue for the Debtors' customers. The automatic stay and other provisions of the Bankruptcy Code have had the effect of delaying customers' access to their investments since July 2022, and many of those customers invested significant portions of the life savings or retirement savings in cryptocurrencies held by the Debtors. The harm that a stay would pose to the Debtors, and their constituents, is therefore quite significant and immediate. I am compelled to conclude that the harm that the Debtors and their constituents would suffer if a stay were to be granted exceeds any harm that the Government might incur due to the absence of a stay.

3.  **Public Interest**

Finally, the public interest does not favor a stay. Notwithstanding the Government's efforts to manufacture ambiguities or excesses, (a) the first paragraph of the modified exculpation provision that I approved is almost identical to what the U.S. Trustee requested in its written objection, and (b) the last two paragraphs make clear that they do not prohibit any regulatory action, including actions to stop the cryptocurrency sales and distributions that the plan contemplates. The only thing my order does in that regard is to say that the parties who will engage in those activities under the authority and direction of my order – after the Government stated that it did not contend that the activities were illegal – should not in the interim be liable for doing what my order requires. I cannot imagine any "public interest" or equitable consideration that would require a different result.

The public interest also favors the timely resolution of bankruptcy cases. As noted above, a stay would adversely affect many thousands of customers.

### Conclusion

As noted above, the parties have consented to a stay through 5:00 p.m. on March 20, 2023. For the reasons stated above, the Government's request for a further stay pending appeal is denied.

Dated:  New York, New York
        March 15, 2023

/s/ **Michael E. Wiles**
Hon. Michael E. Wiles
United States Bankruptcy Judge