Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF PRESENTMENT AND OPPORTUNITY**
**FOR HEARING ON PROPOSED STIPULATION AND ORDER**
**BETWEEN THE DEBTORS, THE OFFICIAL COMMITTEE OF**
**UNSECURED CREDITORS, USIO, INC. AND ITS WHOLLY OWNED SUBSIDIARY**
**FICENTIVE, INC. AUTHORIZING ASSUMPTION OF AUTOMATED CLEARING**
**HOUSE SERVICES AGREEMENT, AS AMENDED, AND RESOLVING CURE CLAIM**

**PLEASE TAKE NOTICE** that the Official Committee of Unsecured Creditors

(the "UCC"), Usio Inc., ("Usio"), Ficentive, Inc. ("FiCentive"), and the above-captioned

debtors and debtors in possession (collectively, the "Debtors") will present the *Proposed*

*Stipulation and Order Between the Debtors, the Official Committee of Unsecured Creditors,*

*Usio, Inc. and Its Wholly Owned Subsidiary Ficentive, Inc. Authorizing Assumption of*

*Automated Clearing House Services Agreement, as Amended, and Resolving Cure Claim,*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC
(8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY
10003.

attached hereto as **Exhibit A** (the "Stipulation and Order"), to the Honorable Michael E. Wiles, United States Bankruptcy Judge, for approval and signature on **April 28, 2023, at 4:00 p.m., prevailing Eastern Time**.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Stipulation and Order shall:  (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) and (d) be served in accordance with the *Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No. 240] by **April 28, 2023, at 12:00 p.m., prevailing Eastern Time**, by (i) the entities on the Master Service List available on the case website of the above-captioned debtors and debtors in possession (the "Debtors") at https://cases.stretto.com/voyager and (ii) any person or entity with a particularized interest in the subject matter of the Stipulation and Order.

**PLEASE TAKE FURTHER NOTICE** that if no objections or other responses are timely filed and served by the Objection Deadline with respect to the Stipulation and Order, the Debtors shall, on the Presentment Date, submit the Stipulation and Order to the Court, which order the Court may enter without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that if a written objection is timely filed, the Court

2

will notify the moving and objecting parties of the date and time of the hearing and of the moving

party's obligation to notify all other parties entitled to receive notice. The moving and objecting

parties are required to attend the hearing, and failure to attend in person or by counsel may result

in relief being granted or denied upon default.

**PLEASE TAKE FURTHER NOTICE** that copies of the Stipulation and Order and other

pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of

Stretto at https://cases.stretto.com/Voyager.  You may also obtain copies of the Stipulation and

Order and other pleadings filed in these chapter 11 cases by visiting the Court's website at

http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank]*

3

KE 95809974.1

Dated:  April 14, 2023
New York, New York

/s/ Joshua A. Sussberg

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        jsussberg@kirkland.com
              cmarcus@kirkland.com
              christine.okike@kirkland.com
              allyson.smith@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

## Exhibit A

**Proposed Stipulation and Order**

Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**PROPOSED STIPULATION AND ORDER BETWEEN**
**THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS, USIO, INC. AND ITS WHOLLY OWNED SUBSIDIARY**
**FICENTIVE, INC. AUTHORIZING ASSUMPTION OF AUTOMATED CLEARING**
**HOUSE SERVICES AGREEMENT, AS AMENDED, AND RESOLVING CURE CLAIM**

This stipulation (this "Stipulation") is made this 13th day of April, 2023 by each of the

above-captioned debtors and debtors in possession (collectively, the "Debtors"), the Official

Committee of Unsecured Creditors (the "Committee"), Usio, Inc. ("Usio"), and Usio's wholly

owned subsidiary FiCentive, Inc. ("FiCentive" and collectively with Usio and the Debtors, the

"Parties").

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are:  Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC
(8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY
10003.

## Recitals

**WHEREAS**, on July 5, 2022 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").

**WHEREAS**, Debtor CryptoTrading Technologies, LLC (now known as Voyager Digital, LLC) and Payment Data Systems, Inc. (now known as Usio) are parties to that certain *Automated Clearing House Services Agreement*, dated October 4, 2018 (as amended and supplemented from time to time, the "ACH Contract"). Pursuant to the ACH Contract, Usio provides certain essential services to the Debtors, including but not limited to providing the Debtors' customers the ability to withdraw their funds to their bank account.

**WHEREAS**, on October 3, 2022, FiCentive filed a proof of claim against Voyager Digital Holdings, Inc. (P.O.C. No. 11227). On December 23, 2022, FiCentive filed Amended Proof of Claim No. 12027 asserting a general unsecured claim against Voyager Digital, LLC in the amount of $343,838.00 (the "FiCentive Proof of Claim"), which superseded P.O.C. No. 11227.

**WHEREAS,** on October 3, 2022, Usio filed a proof of claim against Voyager Digital Holdings, Inc. (P.O.C. No. 11225). On December 23, 2022, Usio filed Amended Proof of Claim No. 12028 asserting a general unsecured claim against Voyager Digital, LLC in the amount of $6,535,063.15 (the "Usio Proof of Claim"), which superseded P.O.C. No. 11225.

**WHEREAS,** as of the Petition Date, Voyager Digital Holdings, Inc. is holding 142,857 shares in Usio, a publicly traded company (the "Usio Shares"), purchased pursuant to a Securities Purchase Agreement between these two parties dated December 19, 2021.

**WHEREAS,** as of the Petition Date, FiCentive is the holder of a deposit account at Metropolitan Bank titled "*0818 FBO FiCentive Pooled Funds" (the "FiCentive Deposit

Account"), and of the balance held, $386,453 is held by FiCentive for the benefit of Voyager Digital, LLC.

**WHEREAS**, on February 1, 2023, the Debtors filed the *Notice of Filing of Plan Supplement* [Docket No. 943] as amended by that *Notice of Filing of First Amended Plan Supplement* [Docket No. 986] filed on February 8, 2023, that *Notice of Filing of Second Amended Plan Supplement* [Docket No. 1006] filed on February 15, 2023, that *Notice of Filing of Third Amended Plan Supplement* [Docket No. 1035] filed on February 21, 2023, that *Notice of Filing of Fourth Amended Plan Supplement* [Docket No. 1115] filed on February 28, 2023, that *Notice of Filing of Fifth Amended Plan Supplement* [Docket No. 1143] filed on March 6, 2023, that *Notice of Filing of Sixth Amended Plan Supplement* [Docket No. 1161] filed on March 9, 2023, and that *Notice of Filing of Seventh Amended Plan Supplement* [Docket No. 1233] filed on March 27, 2023 (collectively, the "Plan Supplement").  The Plan Supplement provides for the assumption of the ACH Contract under the Schedule of Assumed Executory Contracts and Unexpired Leases set forth in Exhibit A of the Plan Supplement.

**WHEREAS**, on February 23, 2023, pursuant to the *Stipulation Between the Debtors and Usio, Inc. Regarding Assumption of Automated Clearing House Services Agreement* [Docket No. 1068] (the "Original Stipulation"), the Parties conferred in an attempt to resolve issues regarding the proposed assumption of the ACH Contract and cure amounts thereunder and agreed to extend the Debtors' deadline to assume or reject the ACH Contract to March 10, 2023 (the "Assumption or Rejection Deadline").  The Parties further agreed that Usio's deadline to respond to any such decision would be fourteen days thereafter on March 24, 2023 (the "Response Deadline").

**WHEREAS**, pursuant to the *Stipulation Between the Debtors and Usio, Inc. Regarding Assumption of Automated Clearing House Services Agreement* [Docket No. 1168] (the "<u>Second Stipulation</u>") the Parties agreed to extend the Assumption or Rejection Deadline to March 24, 2023, and to extend the Response Deadline to April 7, 2023.

**WHEREAS**, on March 7, 2023, the Court confirmed the Debtors' *Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* and on March 8, 2023, the Court entered the *Amended Order (I) Approving the Second Amended Disclosure Statement and (II) Confirming the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1159] (the "<u>Confirmation Order</u>").[2]

**WHEREAS,** since March 24, 2023, the Parties have conferred and agreed to resolve the issue regarding the proposed assumption of the ACH Contract and cure amounts thereunder, as well as outstanding issues concerning the FiCentive Claim and the FiCentive Deposit Account.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, AND UPON APPROVAL BY THE BANKRUPTCY COURT, IT IS ORDERED AS FOLLOWS**:

1.      The Debtors will assume the ACH Contract, as modified by the Fifth Amendment to the ACH Contract (the "<u>Fifth Amendment</u>") annexed hereto as **Exhibit A**.

2.      Pursuant to the terms of the Fourth Amendment to the ACH Contract, the Debtors may elect to pay a fee of $1,000,000.00 to terminate the ACH Contract early, but only after two years of performance by the Debtors under the ACH Contract ("<u>Early Termination Fee</u>"), in lieu of paying a rejection damages claim.  Usio and the Debtors have negotiated and agreed ~~and~~ that

---

[2]    On March 9, 2023, the United States Government appealed the Confirmation Order. Accordingly, the Confirmation Order is currently pending on appeal.

Usio will waive the two-year performance requirement for early termination which exists under the Fourth Amendment, and allow the Debtors to exercise their right to an early termination of the ACH Contract. The Fifth Amendment sets the termination date of the ACH Contract on December 31, 2023, and omits any early termination provisions. Accordingly, the ACH Contract will stay in place, as modified under the Fifth Amendment, until December 31, 2023; *provided* that, the Fifth Amendment may be renewed on six-month terms by mutual written consent of the Debtors, the Committee, and Usio; *provided further* that such consent shall not be unreasonably withheld by any Party. Usio and the Debtors have further agreed that in consideration, Usio is entitled to a cure claim in the amount of $1,000,000.00 as an administrative expense claim (the "Cure Claim") in connection with the Debtors' proposed assumption of the ACH Contract, as modified by the Fifth Amendment.

3.      Under the ACH Contract, Usio is entitled to require the Debtors to deposit funds in a "Reserve Account" in connection with the transactions Usio will facilitate for the Debtors' customers. Usio currently holds a Reserve Account balance of $22,256.29 for the benefit of the Debtors. Under the Fifth Amendment, the Debtor has agreed to deposit an additional $500,000.00 into a Reserve Account (as defined in the ACH Contract) held by Usio. The Debtors shall deposit the $500,000.00 in the Reserve Account within five (5) days of entry of a final and non-appealable order approving this Stipulation. Within ninety (90) days after the termination of the ACH Contract or the later of the last date a transaction or return was processed by Usio on behalf of the Debtors, as amended by the Fifth Amendment, Usio will refund the remaining balance of the Reserve Account to the Debtors, after deducting all appropriate charges under the ACH Contract.

4.      The Parties agree that upon entry of a final and non-appealable order approving this Stipulation, the Cure Claim shall be satisfied as follows:

5

        a.        FiCentive shall exercise its right of set-off pursuant to Section 553 of title 11, United States Code (the "Bankruptcy Code") with respect to the FiCentive Proof of Claim from the FiCentive Deposit Account, and refund the Debtors the difference of $42,615.00. Usio consents and agrees to credit the set-off amount ($343,838.00) as partial satisfaction of the Cure Claim. The Parties agree that the stay provided for under Bankruptcy Code § 362(a)(7) shall be lifted in order to accomplish the set-off.

        b.        Voyager Digital Holdings, Inc. shall return the Usio Shares to Usio, the Issuer of those shares, at the agreed price of $1.09 per share. Usio consents and agrees to credit this amount ($142,857.00) as partial satisfaction of the Cure Claim. The transfer of the Usio Shares to Usio shall be considered a sale pursuant to Bankruptcy Code § 363 and Usio shall be considered a good faith purchaser and will receive the Usio Shares free and clear of all, liens, claims and encumbrances.

        c.        The Debtors shall make a one-time cash payment to Usio in the amount of $500,000.00 in order to satisfy the balance of the Cure Claim after set-off by FiCentive against the FiCentive Deposit Account, and redemption of the Usio Shares. For the avoidance of doubt, this cash payment by the Debtors is separate from and in addition to the requirement of a deposit in the amount of $500,000.00 for the Reserve Account.

        5.        In connection with the Debtors' redemption of the Usio Shares set forth in Section 4(b) above, the Debtors shall complete and return to Usio the Stock Transfer Form annexed hereto as **Exhibit B** and execute any other paperwork that maybe required to transfer the Usio Shares to the issuer, Usio.

6.      Upon approval of this Stipulation in the form a final and non-appealable order, Usio and FiCentive shall immediately withdraw the Usio Proof of Claim and the FiCentive Proof of Claim, respectively – *i.e.,* P.O.C. Nos. 11227, 12027, 11225, 12028.

7.      Upon approval of this Stipulation in the form of a final and non-appealable order, satisfaction of the Cure Claim in full, and withdrawal of the Usio Proof of Claim and the FiCentive Proof of Claim as set forth in Section 6 of this Stipulation, in consideration of the covenants, agreements, and undertakings of the Parties under this Stipulation, each of Usio and FiCentive (the "Usio Parties") hereby releases waives and forever discharges each of the Debtors and their jointly administered estates, and each of the Debtors and their jointly administered estates hereby releases waives and forever discharges each of the Usio Parties of and from any and all actions, causes of action, suits, losses, liabilities, rights, debts, dues, sums of money, accounts, reckonings, obligations, costs, expenses, liens, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands, of every kind and nature whatsoever, whether now known or unknown, foreseen or unforeseen, matured or unmatured, suspected or unsuspected, in law, admiralty or equity (collectively, the "Claims"), which any of such Usio Parties or the Debtors ever had, now have, or hereafter can, shall or may have against the other for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of time, except for any surviving obligations under this Stipulation and the ACH Contract as modified by the Fifth Amendment, and Claims relating to rights and obligations preserved by, created by, or otherwise arising out of this Stipulation and the ACH Contract as modified by the Fifth Amendment.

8.      Any notices, requests, consents, claims, demands, waivers, summons, or other legal process, or similar types of communications hereunder (each a "Notice") must be in writing and

addressed to the relevant Party at the address set forth below (or to such other address that may be

designated by the receiving Party from time to time in accordance with this Section 7), with a copy

to counsel at the addresses on the last page of this Stipulation.  All Notices must be delivered by

personal delivery, nationally recognized overnight courier (with all fees pre-paid), or certified or

registered mail (in each case, return receipt requested, postage prepaid).

If to Usio:

Usio, Inc.
3611 Paesanos Parkway, Suite 300
San Antonio, Texas 78231
Attn: Corporate Counsel

If to FiCentive:
FiCentive, Inc.
3611 Paesanos Parkway, Suite 300
San Antonio, Texas 78231
Attn: Corporate Counsel

If to the Debtors:

33 Irving Place, Suite 3060
New York, NY 10003
Attn: Steve Ehrlich

If to the Committee:

McDermott Will & Emery LLP
One Vanderbilt Avenue
New York, NY 10017-3852
Attn: Darren Azman

9.    The Parties agree that all deadlines set forth and agreed to in the Second Stipulation

shall be tolled pending (a) entry of a final and non-appealable order approving this Stipulation, at

which time those deadlines will be moot, or (b) entry of a final and non-appealable order denying

this Stipulation for a substantive and non-curable reason, at which time the Parties shall have all

rights, remedies and defenses available to them at the time this Stipulation was executed, as set

forth in the Second Stipulation, including but not limited to Usio's right to file a rejection damages claim and the Debtors' and Committee's right to object to such claim.   The Parties further agree that in the event of Section 9(b) of this Stipulation, such tolling of deadlines shall survive notwithstanding the fact that this Stipulation was not approved by the Bankruptcy Court.

10.    The Court shall retain exclusive jurisdiction to hear any matters or disputes arising from or relating to this Stipulation.

11.    This Stipulation and ACH Contract may be amended by the mutual written consent of the Debtors, the Committee, Usio, and FiCentive.

12.    In case any provision of this Stipulation shall be invalid, illegal, or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby and such provision shall be ineffective only to the extent of such invalidity, illegality, or unenforceability.

13.    This Stipulation hereby amends and supersedes all prior stipulations between the Parties.

14.    The Parties represent and warrant that they have full authority to enter into this Stipulation.

15.    This Stipulation may be executed in counterparts, each of which is deemed an original, but all of which constitute one and the same agreement.   Delivery of an executed counterpart of this Stipulation electronically or by facsimile shall be effective as deliver of an original executed counterpart of this Stipulation.

16.    Each of the Parties shall, and shall cause its respective affiliates to, from time to time at the request of another Party, without any additional consideration, furnish the requesting Party such further information or assurances, execute and deliver such additional documents,

9

instruments, and conveyances, and take such other actions and do such other things, as may be reasonably necessary to carry out the provisions of this Stipulation and to give effect to the transactions contemplated hereby.

17.    All of the recitals stated above are incorporated by reference as if fully set forth herein.  No modification, amendment or waiver of any of the provisions of this Stipulation shall be effective unless in writing and signed by the Parties and approved by the Bankruptcy Court.

*[Signature page follows.]*

**IN WITNESS WHEREOF,** the Parties, executed this Stipulation as of the date first written above.

**AGREED AS TO FORM AND CONTENT**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**

/s/ Joshua A. Sussberg
Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email:    jsussberg@kirkland.com
            cmarcus@kirkland.com
            christine.okike@kirkland.com
            allyson.smith@kirkland.com

*Counsel for the Debtors and Debtors-in-Possession*


**PULMAN, CAPPUCCIO & PULLEN, LLP**

/s/ Randall A. Pulman
Randall A. Pulman
2161 N.W. Military Highway, Suite 400
San Antonio, Texas 78213
Email:  rpulman@pulmanlaw.com

-and-

**RUSKIN MOSCOU FALTISCHEK P.C.**
Sheryl P. Giugliano
1425 RXR Plaza, East Tower, 15th Floor
Uniondale, NY 11556
Email:    sgiugliano@rmfpc.com

*Co-Counsel for Usio, Inc.*


**McDERMOTT WILL & EMERY LLP**

/s/ Darren Azman
Darren Azman
Joseph B. Evans
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone: (212) 547-5400
Facsimile: (212) 547-5444

*Counsel for the Official Committee of Unsecured Creditors*


Dated: April 13, 2023

**Exhibit A**

Fifth Amendment to ACH Contract

## FIFTH AMENDMENT TO AUTOMATED CLEARING HOUSE SERVICES AGREEMENT

This Amendment (the "Fifth Amendment"), to the Automated Clearing House Services (the "ACH Contract") dated October 4, 2018, between CryptoTrading Technologies, LLC now known as Voyager Digital, LLC, ("Company") and Payment Data Systems, Inc., now known as Usio, Inc. ("Processor") is entered into on April _____, 2023 and is made part of the Agreement which is hereby amended as follows:

### RECITALS

Whereas, the ACH Contract has been previously amended, renewed and extended by the Company and Processor, and all references to the ACH Contract include all previous amendments.

Whereas, the ACH Contract was last renewed and extended by way of the Fourth Amendment entered into on September 20, 2021, for a three (3) year term ending on October 31, 2024;

Whereas, the Company and Processor have agreed that the Company may exercise the right to terminate the ACH Contract for convenience prior to the expiration of 2 years from the beginning of the last term of the Agreement and avoid the payment of early terminations fees;

Whereas, on July 5, 2022 (the "Petition Date") Company filed for bankruptcy protection under Title 11 of the United States Code and desires to assume the ACH Contract as modified as part of its Third Amended Plan of Reorganization (as amended, the "Plan");

Whereas, Processor alleges that Company is in breach of several material terms of the ACH Contract which prevent assumption of the ACH Contract by the Company, and the Company denies that it is breach of any material terms of the ACH Contract;

Whereas, Company and Processor have agreed that the ACH Contract as previously amended maybe modified and then assumed by Company on the terms set forth in this Fifth Amendment, subject to approval by the Bankruptcy Court.

NOW, THEREFORE, Company and Processor, in exchange for adequate consideration, the receipt of which is hereby acknowledged by both parties, agree to modify the ACH Contract as follows:

1.  The above recitals are incorporated herein by reference.

2.  <u>Definitions.</u> All capitalized terms used herein and not expressly defined herein shall have the respective meanings given to such terms in the ACH Contract.

3.  <u>Entire Agreement.</u> Except as expressly modified by this Fifth Amendment, the ACH Contract shall be and remain in full force and effect in accordance with its terms and shall constitute the legal, valid, binding and enforceable obligations of Processor and Company. This Fifth Amendment and the ACH Contract, together with all prior amendments, are the complete agreement of the parties and supersedes any prior agreements or representations, whether oral or written, with respect thereto.

4.  <u>Successors and Assigns.</u> This Amendment shall be binding upon and insure to the benefit of the successors and permitted assigns of the parties hereto.

5.  <u>Section References.</u> Section titles and references used in this Fifth Amendment shall be without substantive meaning or content of any kind whatsoever and are not a part of the agreements among the parties hereto evidenced hereby.

6.      This Fifth Amendment is subject to Bankruptcy Court approval as part of global resolution of claims between the Processor and its affiliates and the Company and its affiliates and its terms shall be considered void if such approval is not obtained by the Company.

7.      New Section 5.6 is added to Article V of the ACH Contract, as follows:

5.6      Processor shall have the unfettered right and sole discretion to approve the depository institution sponsoring the Company's Settlement Account, but that approval will not be unreasonably withheld.

8.      Section 6.1(g) of the ACH Contract is amended as follows:

(g) Funds used to meet any minimum Reserve Balance or collateral requirement may be held by Processor and will not be available to Company until ninety (90) days after termination of this Agreement or of processing of Entries through Processor. Upon termination of this Agreement, Processor may require, and Company shall promptly remit, funds that Processor reasonably estimates are needed to cover potential Returns, chargebacks, Adjustments, legal funds, and claims that may arise after termination.

9.      New Section 11.9 is added to Article XI of the Agreement, as follows:

11.9      Processor and Company agree that the term of this Agreement shall end on December 31, 2023.

10.      Modification of Exhibits "C," "D," "E" & "F."

Exhibits, "C," "D," "E" and "F" are hereby replaced in their entirety by the exhibits attached hereto of the same name.

This Fifth Amendment modifies and amends the ACH Contract as set forth herein. All other previously existing obligations under the ACH Contract are hereby reaffirmed in all respects.

In witness thereof, the Parties hereto have executed the Fifth Amendment in multiple originals by their duly authorized representatives on the dates shown below.

**Usio, Inc.**                                                                    **Voyager Digital , LLC**

By: _____                          By: _____
    C62E08E9D4C047A...                                        3724C7F0863B426...

Name: Louis Hoch                                          Name: Steve Ehrlich

Title: President and CEO                              Title: Chief Executive Officer.

Date: 4/13/2023 | 1:12 PM CDT                      Date: 4/13/2023 | 1:46 PM CDT

DocuSign Envelope ID: A5BCFBD9-22B9-4859-B464-110EF07CD24B

**Exhibit C** to the ACH  Contract is hereby replaced in its entirety by the following
**EXHIBIT C**

| PROCESSING FEES Description | Fees |
|---|---|
| ACH Application/Setup fee – per account | $25.00 |
| Monthly Minimum Processing Fee – per account | $500.00 |
| Monthly Fee – Sunday File Processing | $100.00 |
| ACH Processing fee – per transaction – PPD, CCD, WEB | $0.20 + 0.05% |
| SDA (Same Day ACH) Fee* - per transaction- PPD, CCD, WEB | $0.10 |
| Addenda Records | $0.05 |
| Negative Database Verification (*all transactions submitted*) | $0.10 |
| Account Inquiry | $0.25 |
| RCC Check Clearing Fee ($) | $0.35 |
| RCC Check Clearing Fee (%) | 0.05% |
| RCC Returned Check Fee | $2.00 |
| RCC Warranty/Adjustment Fee | $25.00 |
| ACH Notification of Change | $0.55 |
| ACH NOC Violation | $35.00 |
| ACH Return Items | $1.00 |
| ACH Unauthorized Return Items (*R05, R07, R10, R29, R51*) | $5.00 |
| RDFI Imposed Unauthorized Entry Fee | $4.50 |
| ACH Rejects | $5.00 |
| LOI (Letter of Indemnification) Submittals | $25.00 |
| POA (Proof of Authorization) Submittals | $25.00 |
| Late POA processing (*delivered or not*) | $25.00 |
| Reversals | $50.00 |
| Deletions | $50.00 |
| Processor initiated refunds | $5.00 |
| RDFI / ODFI Customer Service Call Referrals | $10.00 |
| Incoming Wire Fee | $35.00 |
| Per hour development charge for customization | $225.00 |
| Text to Pay Inbound Phone Number- Monthly | $25.00 |
| Text to Pay Monthly Minimum (including 100 originations per month) | $25.00 |
| Text to Pay Origination Fee** (after the first 100 originations) | $0.25 |

\* NOTE: Origination fees are in addition to ACH fees

4867-4061-0138, v. 6

| **NON-COMPLIANCE FEES** Description | Fees |
|---|---|
| Failure to timely provide response to records request by Processor and/or ODFI pursuant to Section **3.2 Records** of the Agreement…......................... | $250.00 per week |
| Failure to provide executed Certificate of Compliance within thirty (30) days of the end of any quarter ...................................................................... ................................ | $250.00 |
| Failure to provide executed Certificate of Compliance within sixty (60) days of the end of any quarter ...................................................................... ................................ | $500.00 |
| Failure to timely provide copies of annual financial statements to Processor or ODFI pursuant to Section **3.6 Financial Statements** of the Agreement ............ | $250.00 per week |

Company – Initials: _____     Processor – Initials: _____

**EXHIBIT D** to the ACH Contract is hereby replaced in its entirety by the following:

## EXHIBIT D

## SETTLEMENT ACCOUNT

Company has created the Settlement Account described below, to or from which all transactions that Processor originates for Company will be settled pursuant to Article V of the Automated Clearing House Services Agreement (the "Agreement") between Company and Processor  dated October 4, 2018. All capitalized terms shall have the meaning set forth in the Agreement.

Settlement Bank Name:    _____

Bank ABA Number:    _____

Bank Account Number:    _____

Account Name:    _____

Settlement will occur as follows:

All Debit Entries and RCC transactions originated by Company will be settled via ACH Credit by Processor on the **Third** business day as the effective Entry Date or the settlement date assigned by the ACH Operator whichever is later, *provided* that settlement may be delayed in the event that the frequency of transactions, number of items per transmission, or dollar amount of each transaction exceeds those set forth in <u>Exhibit F</u>.  Settlement may also be held if the percentage of Returns exceeds those set forth in <u>Exhibit F.</u>

All Credit Entries and RCC transactions originated by Company will be settled via ACH Debit by Processor on the **Next** business day as the effective Entry Date or the settlement date assigned by the ACH Operator whichever is later, *provided* that all Credit Entries required to be pre-funded pursuant to Section 5.4 of the Agreement **are pre-funded prior to receipt** and origination of such Entries.

In accordance with the terms of Sections 4.10 and 5.1 of the Agreement, all Returns received by Processor for Company shall be debited or credited to Settlement Account immediately upon receipt of Return.

In accordance with the terms of Section 5.1 of the Agreement, Processor and ODFI reserve the right to debit the Settlement Account for a period of one-hundred-eighty days (180) days after processing of the last transaction or return for the purpose of reclaiming funds owed to Processor or ODFI for any fees incurred by Processor or ODFI during the period of the Agreement or for losses Processor or ODFI have incurred due to Company.

Company – Initials: _____        Processor – Initials: _____

DocuSign Envelope ID: A6BCFBD9-2228-4859-B464-110EF07CD24B

**EXHIBIT E** to the ACH Contract is hereby replaced in its entirety by the following:

**EXHIBIT E**

**RESERVE ACCOUNT**

The Reserve Balance shall be:      **$** 522,256.29 ($500,000 to be funded on or before April 1, 2023, and combined with the existing reserve account balance of $22,256.29)

Company has created the Reserve Account titled in the name of the Processor and established and maintained for the beneficial ownership of the Processor in accordance with the terms of Section 6.1 of the Automated Clearing House Services Agreement (the "Agreement") between Company and Processor dated October 4, 2018.  All capitalized terms shall have the meaning set forth in the Agreement.

The Reserve Balance funds shall be held by the Processor at ODFI in the Reserve Account. Pursuant to Section 8.4 of the Agreement, Processor reserves the right to allocate up to forty percent (40%) of the Reserve Balance to the Indemnification Reserve and may hold such funds in the Indemnification Reserve for up to four (4) years after termination of the Agreement to cover any Indemnified Liabilities that may arise during that time.

Among other rights, Processor reserves the right to debit the remaining funds in the Reserve Account not allocated to the Indemnification Reserve for a period of ninety (90) business days after processing of the last transaction or return or until all rights of return or refund associated with Entries previously processed in Company's name have expired pursuant to Section 6.1 of the Agreement.

Processor shall have the right to modify the Reserve Amount at any time upon providing Company written notice.  The Reserve Balance funds will be refunded in accordance with the terms of the Agreement.

Company – Initials: _SE_____      Processor – Initials: _UH_____

**EXHIBIT F** to the ACH Contract is hereby replaced in its entirety by the following:

## EXHIBIT F

## MAXIMUM EXPOSURE LIMITS AND TRANSACTION LIMITS

### DEBIT ORIGINATION

| | |
|---|---|
| Individual Transaction Limit | $0.00 |
| Daily Transaction Limit | $0.00 |
| Maximum Monthly Exposure Limit | $0.00 |
| Maximum Frequency | Daily |
| Overall Return Percentage (ACH) | 15% |
| Admin Return Percentage (ACH) | 3.00% |
| Unauthorized Return Rate Threshold (ACH) | 0.50% |
| Overall Return Percentage (RCC) | 25% |

### CREDIT ORIGINATION

| | |
|---|---|
| Individual Transaction Limit | $100,000.00 |
| Daily Transaction Limit | $10,000,000.00 |
| Maximum Monthly Exposure Limit | $50,000,000.00 |
| Maximum Frequency | Daily |

**Processor and ODFI shall have the right to modify the Maximum Exposure Limits and/or Transaction Limits at any time upon providing Company written notice.**

Company – Initials: _SE_

Processor – Initials: _UA_

**DocuSign**

| Certificate Of Completion | | |
|---|---|---|
| Envelope Id: ACBCEBD922284859B161110EE07CD21B | | Status: Completed |
| Subject: Complete with DocuSign: FIFTH AMENDMENT TO AUTOMATED CLEARING HOUSE SERVICES AGREEMENT (Final).pdf | | |
| Source Envelope: | | |
| Document Pages: 7 | Signatures: 2 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 8 | Louis Hoch |
| AutoNav: Enabled | | 3611 Paesanos Pkwy |
| EnvelopeId Stamping: Enabled | | Suite 300 |
| Time Zone: (UTC-06:00) Central Time (US & Canada) | | San Antonio, TX  78231 |
| | | louis.hoch@usio.com |
| | | IP Address: 71.78.162.130 |

| Record Tracking | | |
|---|---|---|
| Status: Original | Holder: Louis Hoch | Location: DocuSign |
| 4/13/2023 1:07:05 PM | louis.hoch@usio.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Louis Hoch | *DocuSigned by:* | Sent: 4/13/2023 1:11:43 PM |
| louis.hoch@usio.com | C62E08E9D4C047A... | Viewed: 4/13/2023 1:11:57 PM |
| President and CEO | | Signed: 4/13/2023 1:12:22 PM |
| Usio, Inc. | | |
| Security Level: Email, Account Authentication (None) | Signature Adoption: Drawn on Device | |
| | Using IP Address: 71.78.162.130 | |
| **Electronic Record and Signature Disclosure:** | | |
| Not Offered via DocuSign | | |
| Steve Ehrlich | *DocuSigned by:* | Sent: 4/13/2023 1:11:44 PM |
| sehrlich@investvoyager.com | Steve Ehrlich | Viewed: 4/13/2023 1:46:02 PM |
| Chief Executive Officer. | 3724C7F0863B426... | Signed: 4/13/2023 1:46:16 PM |
| Voyager Digital Holdings, Inc. | | |
| Security Level: Email, Account Authentication (None) | Signature Adoption: Pre-selected Style | |
| | Using IP Address: 65.246.174.98 | |
| **Electronic Record and Signature Disclosure:** | | |
| Accepted: 4/13/2023 1:46:02 PM | | |
| ID: 6aa3535b-e90b-4660-9d8e-45d82b116edf | | |
| Company Name: Usio, Inc. | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Nikki Sauer Gavey | **COPIED** | Sent: 4/13/2023 1:11:44 PM |
| nikki.sauer@kirkland.com | | Viewed: 4/13/2023 1:14:16 PM |
| Security Level: Email, Account Authentication (None) | | |
| **Electronic Record and Signature Disclosure:** | | |
| Not Offered via DocuSign | | |

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Randy Pulman | **COPIED** | Sent: 4/13/2023 1:11:44 PM |
| rpulman@pulmanlaw.com | | Viewed: 4/13/2023 1:23:33 PM |
| Managing Partner | | |
| Security Level: Email, Account Authentication (None) | | |
| **Electronic Record and Signature Disclosure:** | | |
| Not Offered via DocuSign | | |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 4/13/2023 1:11:44 PM |
| Certified Delivered | Security Checked | 4/13/2023 1:46:02 PM |
| Signing Complete | Security Checked | 4/13/2023 1:46:16 PM |
| Completed | Security Checked | 4/13/2023 1:46:16 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Usio, Inc. (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $20.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Usio, Inc.:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: support@usio.com

**To advise Usio, Inc. of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at support@usio.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Usio, Inc.**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to support@usio.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Usio, Inc.**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to support@usio.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Usio, Inc. as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Usio, Inc. during the course of your relationship with Usio, Inc..

**Exhibit B**

Stock Transfer Form

**AMERICAN STOCK**
*Transfer & Trust Company, LLC*
LINK GROUP network

# Transfer of Ownership with W-9 Form
## Page 1 of 2: Current Registration
Instructions are located within each section of the form.
Please print clearly.

**1** **Name of Stock to Be Transferred:**
Enter the full name of the stock to be transferred.

**2** **AST Account Number:**
Enter the AST 10-digit numerical account number printed on all account mailings.

**3** **Current Registration:**
Enter the current registration as it appears on the account(s) to be transferred.

**4**

| # of Certificated Shares | | # of Book Shares | | # of DRIP Shares | | Total # of Shares |
|---|---|---|---|---|---|---|
| | + | | + | | = | |

**You MUST submit your original certificate(s) or an Affidavit of Loss with your properly completed documents.**

**Reinvest Dividends (if applicable)**

☐ Yes    ☐ No

When a transfer involves Dividend Reinvestment Plan (DRIP) shares, if the new owner intends to have the shares remain enrolled in the company's reinvestment program, they must check the box next to "Yes" in order to reinvest their dividends. For more information about DRIP shares, see question 8 in the FAQs section of the *At-A-Glance*.

**5** **Transfer Reason:** Check only one box below. All transfers will be assumed to be gifts if no reason is provided. If we receive documentation (e.g., death certificate) indicating that the registered shareowner is deceased, the transfer reason will default to death. For more information about your Transfer Reason, see question 6 in the FAQs section of the *At-A-Glance*.

☐ **Gift:**  Date of Gift: __/__/____    ☐ **Death:**  Date of Death: __/__/____    Cost Basis Per Share: _____. __ __ USD

☐ **Private Sale:**  Date of Sale: __/__/____    Cost Basis Per Share: _____.__ __USD

☐ **No Change of Ownership (please specify):** _____

**6** **Date:** [          ]    **Daytime Phone #:** [          ]    **Email Address:** [          ]

**7** **Signature of Assigner(s) and Capacity** (if applicable):

X _____    _____
            SIGNATURE                    CAPACITY

X _____    _____
            SIGNATURE                    CAPACITY

I do hereby irrevocably constitute and appoint American Stock Transfer & Trust Company, LLC (AST), attorney to transfer said stock on the books of the corporation with full power of substitution in the premises.

If the current owner is **not** signing this Transfer of Ownership form, the legal representative signing on their behalf **must** state next to their signature the capacity in which they are authorized to sign. Such capacity as executor or administrator for a deceased owner; power of attorney; heir, and the like, is to be defined and proven to the Guarantor in order to obtain a Medallion Signature Guarantee.

**8** **Medallion Signature Guarantee**

**All signatures must be Medallion Signature Guaranteed** by an eligible Guarantor Institution. No other form of signature verification, including a notary seal, can be accepted.

**Not familiar with a Medallion Signature Guarantee?**
For more information, please see questions 1-2 in the FAQs section of the *At-A-Glance*.

PLACE MEDALLION SIGNATURE GUARANTEE HERE



**AMERICAN STOCK**
*Transfer & Trust Company, LLC*
LINK GROUP network

# Transfer of Ownership with W-9 Form
## Page 2 of 2: New Registration
Instructions are located within each section of the form.
Please print clearly.

**9** **New Registration:**
Enter full name of the new
registration.

**10** **Type of Registration:**
Select the registration type.

☐ Individual
☐ Joint Account
☐ Custodian Account

☐ Transfer on Death (TOD) *Name of Beneficiary:*_____
☐ Trust   *Trustee:*_____ *Trust Date:* __/__/____
☐ Other:_____

Check the box above that corresponds with the type of registration.

- **Joint Account:** "joint tenants" unless otherwise indicated.
- **Trust:** include name of trustees, trust title and date.
- **Transfer on Death ("TOD"):** only one beneficiary may be named on a TOD account.
- **Custodian Account:** Uniform Transfers to Minors Act (UTMA) or Uniform Gifts to Minors Act (UGMA) is based on the state (ST) in which the custodianship was created. For more information on UTMA/UGMA, see question 18 in the FAQs section of the *At-A-Glance*.

| Designating the Type of Registration Examples: | |
|---|---|
| Joint Tenants | John Smith and Mary Smith JT Ten |
| Tenants in Common | John Smith and Mary Smith Ten Com |
| Custodian Account | John Smith Cust Mary Smith UTMA/ST |
| Trust | John Smith TTEE John Smith Trust U/A DTD 01/23/2014 |

**11** **Full Address:**
Enter the complete address of the new owner.

**12**

### Substitute Form W-9

**Check the appropriate box:**

☐ Individual/Sole Proprietor
☐ S Corporation
☐ Limited Liability Company: _____
Enter the tax classification (C = C Corporation, S = S Corporation,  P = Partnership)
☐ Other: _____

☐ C Corporation
☐ Partnership
☐ Trust/Estate

☐ Exempt Payee
Exempt payee code or Exemption from FATCA reporting code (if any) _____

**Part I: Taxpayer Identification Number (TIN)**

Enter your TIN in the box. The TIN provided must match your name to avoid backup withholding. For individuals, this is your Social Security Number (SSN).

☐☐☐ ☐☐ ☐☐☐☐

**Part II: Certification**

Under penalties of perjury, I certify that: 1) the number shown above is my correct U.S. Taxpayer Identification Number, 2) I am a U.S. citizen, and 3) I am not subject to withholding because: (a) I am exempt from backup withholding, (b) I have not been notified by the IRS that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS notified me that I am no longer subject to withholding.

**X**
SIGNATURE                                          **Date:**

The new owner **must** sign the Substitute Form W-9. Failure to complete this form will result in backup withholdings per IRS regulations. If the new account is to be registered to Joint Tenants, use the Taxpayer Identification Number (TIN) of the first owner named on the account. If you are not a U.S. citizen or do not have a Social Security Number, please use the appropriate Form W-8.