Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF FILING OF EIGHTH AMENDED PLAN SUPPLEMENT

**PLEASE TAKE NOTICE THAT** on March 10, 2023, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an *Amended Order (I) Approving the Second Amended Disclosure Statement and (II) Confirming the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1166] (the "Confirmation Order").[2]

**PLEASE TAKE FURTHER NOTICE THAT** on February 1, 2023, the above-captioned debtors and debtors-in-possession (the "Debtors") filed the *Notice of Filing of Plan Supplement* [Docket No. 943].

**PLEASE TAKE FURTHER NOTICE THAT** on February 8, 2023, the Debtors filed the *Notice of Filing of First Amended Plan Supplement* [Docket No. 986].

**PLEASE TAKE FURTHER NOTICE THAT** on February 15, 2023, the Debtors filed the *Notice of Filing of Second Amended Plan Supplement* [Docket No. 1006].

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013).  The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2]    Capitalized terms not otherwise defined herein shall have the meaning given to them in the Plan or Confirmation Order, as applicable.

**PLEASE TAKE FURTHER NOTICE THAT** on February 21, 2023, the Debtors filed the *Notice of Filing of Third Amended Plan Supplement* [Docket No. 1035].

**PLEASE TAKE FURTHER NOTICE THAT** on February 28, 2023, the Debtors filed the *Notice of Filing of Fourth Amended Plan Supplement* [Docket No. 1115].

**PLEASE TAKE FURTHER NOTICE THAT** on March 6, 2023, the Debtors filed the *Notice of Filing of Fifth Amended Plan Supplement* [Docket No. 1143].

**PLEASE TAKE FURTHER NOTICE THAT** on March 7, 2023, the Debtors filed the *Notice of Filing of Revised Fifth Amended Plan Supplement* [Docket No. 1149].

**PLEASE TAKE FURTHER NOTICE THAT** on March 9, 2023, the Debtors filed the *Notice of Filing of Sixth Amended Plan Supplement* [Docket No. 1161].

**PLEASE TAKE FURTHER NOTICE THAT** on March 27, 2023, the Debtors filed the *Notice of Filing of Seventh Amended Plan Supplement* [Docket No. 1233] (the "Seventh Amended Plan Supplement").

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors hereby file this eighth amended plan supplement (the "Eighth Amended Plan Supplement").

**PLEASE TAKE FURTHER NOTICE THAT** as contemplated by the Plan, the Eighth Amended Plan Supplement includes the following documents:

| Exhibit | Description |
|---------|-------------|
| **F** | Plan Administrator Agreement |
| **F-1** | Redline of **Exhibit F** to Exhibit F of the Seventh Amended Plan Supplement |

**PLEASE TAKE FURTHER NOTICE THAT** the documents contained in the Eighth Amended Plan Supplement are integral to, and are considered part of, the Plan. The documents contained in the Eighth Amended Plan Supplement are approved by the Court pursuant to the Confirmation Order.

**PLEASE TAKE FURTHER NOTICE THAT** certain documents, or portions thereof, contained in the Eighth Amended Plan Supplement remain subject to ongoing review, revision, and further negotiation among the Debtors and interested parties with respect thereto. The Debtors reserve the right to alter, amend, modify, or supplement any document in the Eighth Amended Plan Supplement in accordance with the Plan at any time before the Effective Date of the Plan or any such other date as may be provided for by the Plan or by order of the Court.

**PLEASE TAKE FURTHER NOTICE THAT** copies of the the Confirmation Order, and other pleadings filed in these chapter 11 cases are available free of charge by visiting the website of Stretto at http://www.cases.stretto.com/Voyager. You may also obtain copies of any pleadings

by visiting the Court's website at http://www.nysb.uscourts.gov/ in accordance with the procedures and fees set forth therein.

| | |
|---|---|
| Dated: April 20, 2023<br>New York, New York | */s/ Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>Christopher Marcus, P.C.<br>Christine A. Okike, P.C.<br>Allyson B. Smith (admitted *pro hac vice*)<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:   (212) 446-4800<br>Facsimile:   (212) 446-4900<br>Email:   jsussberg@kirkland.com<br>          cmarcus@kirkland.com<br>          christine.okike@kirkland.com<br>          allyson.smith@kirkland.com<br><br>*Counsel to the Debtors and Debtors in Possession* |

**<u>Exhibit F</u>**

**Plan Administrator Agreement**

## Plan Administrator Agreement

This Plan Administrator Agreement (as it may be amended, modified, supplemented, or restated from time to time, this "Agreement") dated as of [●], 2023, is made and entered into by and among the entities listed as "Debtors" on the signature pages hereto (each, a "Debtor"), and Paul R. Hage, solely in his capacity as Plan Administrator for purposes of this Agreement (the "Plan Administrator"), and is executed in connection with and pursuant to the terms of the *Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* dated January 10, 2023 [Docket No. 852] (as it may be amended, modified, supplemented, or restated from time to time, the "Plan").[1]

## Recitals

WHEREAS, on July 5, 2022, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York, (the "Bankruptcy Court"), and their chapter 11 cases are being jointly administered as *In re Voyager Digital Holdings, Inc., et al.,* Case No. 23-10943 (MEW);

WHEREAS, on July 19, 2022, the United States Trustee for Region 2 (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee");[2]

WHEREAS, the Plan contemplates that a plan administrator will be appointed to perform its duties in accordance with the Plan and this Agreement;

WHEREAS, the Plan provides that the Plan Administrator will, among other things, retain, preserve, and distribute certain assets of the Wind-Down Debtor for the benefit of Holders of Allowed Claims or Allowed Interests that are entitled to receive distributions pursuant to the terms of the Plan, whether or not such Claims or Interests are Allowed as of the Effective Date;

WHEREAS on March 8, 2023, the Bankruptcy Court entered an order ("Confirmation Order")[3] confirming the Plan, which became effective on [●], 2023 ("Effective Date");

WHEREAS, this Agreement is entered into in accordance with, and to facilitate the implementation and execution of, the Plan;

WHEREAS, on the Effective Date of the Plan, the Plan Administrator shall be appointed in accordance with the Plan, and the Plan Administrator is willing to serve in such capacity, in each case upon the terms set forth in this Agreement and pursuant to the Plan; and

---

[1]    All capitalized terms used in this Agreement and not otherwise defined herein have the meanings ascribed to such defined terms in the Plan.

[2]    Docket No. 106.

[3]    Docket No 1159.

WHEREAS, the Plan provides that the Plan Administrator shall act for the Debtors and Wind-Down Debtor in the same fiduciary capacity as applicable to a board of directors and officers, subject to the provisions of the Plan and this Agreement;

NOW, THEREFORE, in accordance with the Plan and the Confirmation Order, and in consideration of the promises, and the mutual covenants and agreements of the Parties contained in the Plan and herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree and declare as follows:

## RECITALS, INTERPRETATION, AND CONSTRUCTION

1.1     <u>Recitals</u>. The Recitals are incorporated into and made terms of this Agreement.

1.2     <u>Interpretation; Headings</u>. All references herein to specific provisions of the Plan or Confirmation Order are without exclusion or limitation of other applicable provisions of the Plan or Confirmation Order. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender. The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.

1.3     <u>Construction of Agreement</u>. This Agreement shall not be construed to impair or limit in any way the rights of any Person under the Plan.

1.4     <u>Conflict Among Plan Documents</u>. In the event of any inconsistency between the terms of this Agreement and the terms of the Plan, the terms of the Plan shall govern and control. In the event of any inconsistency between this Agreement, on the one hand, and the Confirmation Order, on the other hand, the Confirmation Order shall control and take precedence.

## ARTICLE II
## ACCEPTANCE OF POSITION; OBLIGATION TO PAY CLAIMS; FIDUCIARY STATUS

2.1     <u>Acceptance</u>. (a) Paul. R. Hage hereby accepts appointment as the Plan Administrator; and (b) Paul R. Hage agrees to observe and perform all duties and obligations imposed upon the Plan Administrator under the Plan, this Agreement, other orders of the Bankruptcy Court, and applicable law.

2.2     <u>Fiduciary</u>. The Plan Administrator shall perform its obligations consistent with the Plan, this Agreement, and applicable orders of the Bankruptcy Court. Subject to sections 1.4 and 3.3.3 hereof, the Plan Administrator shall be the sole officer and director of the Wind-Down Debtor.  The Plan Administrator shall hold the equity of the Voyager Digital Ltd., to the extent that any new equity is issued, in an agency capacity, for the benefit of and to facilitate the rights of Holders of Interests provided under the Plan. The Plan Administrator shall act for the Wind-Down Debtor in the same fiduciary capacity as applicable to a board of directors and officers, subject to the provisions in the Plan (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same). On the Effective Date, the authority, power, and incumbency of the persons acting as directors (excluding

the Independent Directors (as defined herein)) and officers of the Debtors and the Wind-Down Debtor shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator or a representative of the Plan Administrator shall be appointed as a director and the sole officer of the Debtors and the Wind-Down Debtor and shall succeed to the powers of the Debtors' directors and officers who resign on the Effective Date. Subject to sections 1.4 and 3.3.3 hereof, from and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Debtors and the Wind-Down Debtor. For the avoidance of doubt, (i) the foregoing shall not limit the authority of the Debtors, the Wind-Down Debtor, or the Plan Administrator, as applicable, to continue the employment any former director, officer, or employee, including pursuant to the Purchase Agreement (if any) or any transition services agreement entered into on or after the Effective Date by and between the Debtors, the Wind-Down Debtor, and the Purchasers, and (ii) subject to the Plan Administrator's powers under section 3.3.3, the Independent Directors (or any successor Independent Directors) shall remain in their current positions on and after the Effective Date to resolve any Conflict Matters (as defined herein) until such Conflict Matters are resolved.

## ARTICLE III
## GENERAL POWERS, RIGHTS AND OBLIGATIONS OF THE PLAN ADMINISTRATOR

3.1    <u>Rights, Powers, and Privileges of Plan Administrator Generally</u>. Effective as of the Effective Date, the Plan Administrator is appointed under the Plan for purposes of implementing the terms and conditions of the Plan with respect to (i) effectuating the transactions beneficial and necessary to wind down the Debtors and the Wind-Down Debtor, including as set forth in the Restructuring Transactions Memorandum, (ii) administration of, and distributions with respect to, the claims asserted against the Debtors, and (iii) such other matters agreed to by the Debtors and Plan Administrator in accordance with the terms of the Plan (collectively, the "<u>Plan Administrator Responsibilities</u>"), in each case, subject to the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order. The Plan Administrator is hereby appointed to make all disbursements and distributions under the Plan, subject to the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order. The Debtors and the Wind-Down Debtor shall be managed, administered, and wound down by the Plan Administrator in accordance with the terms of the Plan, in consultation with the Oversight Committee established pursuant to this Agreement (the "<u>Oversight Committee</u>") as set forth in this Agreement, and the Plan Administrator shall have full authority to administer the provisions of the Plan, and subject to the terms and conditions of this Agreement, the Plan, and the Confirmation Order. The Plan Administrator shall be deemed to be a judicial substitute and estate representative for the Debtors as the party-in-interest in the Chapter 11 Cases, under the Plan, or in any judicial proceeding or appeal to which any of the Debtors or Wind-Down Debtor is a party. The Plan Administrator shall be deemed a "representative" of the estate as contemplated by Bankruptcy Code section 1123(b)(3)(B), and performance of certain services in connection with this Agreement shall be authorized by the execution of this Agreement to the extent not already authorized by the Plan or the Confirmation Order.

3.1.1    <u>Power to Contract</u>. In furtherance of the purpose of the Debtors and the Wind-Down Debtor, and except as otherwise specifically restricted in the Plan, Confirmation Order, or this Agreement, the Plan Administrator shall have the right and power on behalf of the

Wind-Down Entity, and also may cause the Debtors or the Wind-Down Debtor, to enter into any covenants or agreements binding the Debtors or the Wind-Down Debtor, and to execute, acknowledge and deliver any and all instruments that are necessary or deemed by the Plan Administrator to be consistent with and advisable in furthering the purpose of the Plan or this Agreement.

      3.1.2   <u>Ultimate Right to Act Based on Advice of Counsel or Other Professionals</u>. Nothing in this Agreement shall be deemed to prevent the Plan Administrator from taking or refraining to take any action on behalf of the Debtors or the Wind-Down Debtor that, based upon the advice of counsel or other professionals, the Plan Administrator determines he is obligated to take or to refrain from taking in the performance of any duty under the Plan, Confirmation Order, or this Agreement.

      3.2   <u>Oversight Committee Member Designation</u>. If a conflict arises that prevents the involvement of the Plan Administrator from performing his duties, the Oversight Committee shall designate a member of the Oversight Committee to act as the Plan Administrator solely with respect to such conflict. During such time as an Oversight Committee member is acting as Plan Administrator, such member shall not be entitled to vote on matters requiring Oversight Committee approval and the voting provisions set forth in section 6.1 hereof shall apply.

      3.3   <u>Powers of Plan Administrator</u>. The Plan Administrator shall provide the post-Effective Date administration, wind down, dissolution, and liquidation services related to the Plan Administrator Responsibilities that are necessary, required, desirable, or advisable to effectuate the terms and conditions of the Plan and the wind down of the Debtors and the Wind-Down Debtor, in consultation with the Oversight Committee as set forth in this Agreement. Subject to the oversight and direction of the Oversight Committee set forth in Article VI of this Agreement, the Plan Administrator shall have all duties, powers, and rights set forth herein, in the Plan, and in the Confirmation Order, including but not limited to, the following services related to the Debtors and the Wind-Down Debtor:

      3.3.1   implementing the Wind-Down Debtor, and making distributions contemplated by the Plan;

      3.3.2   marshalling, marketing for sale, and winding down any of the Debtors' assets constituting Wind-Down Debtor Assets;

      3.3.3   appointing an independent director at each Debtor to act as a fiduciary for such Debtor entity (each, an "<u>Independent Director</u>") solely in connection with matters that may implicate actual or potential intra-Debtor conflicts of interests between the Plan Administrator and the applicable Debtor(s) or Wind-Down Debtor (such matters, "<u>Conflict Matters</u>") including (i) the Intercompany Claims; (ii) the Alameda Loan Facility Claims; (iii) the Signatory Governmental Claims (as defined in the Governmental Claimant Stipulation) asserted against TopCo; and (iv) any matter involving the transfer or allocation of value, claims, or costs between or among the Debtors, but only to the extent that such issues continue to implicate actual or potential intra-Debtor conflicts of interests between the Plan Administrator and the applicable Debtor(s) or Wind-Down Debtor;

3.3.4   overseeing the accounts of the Debtors and the Wind-Down Debtor and the wind down and dissolution of the Debtors and the Wind-Down Debtor, including effectuating the transactions described in the Restructuring Transactions Memorandum;

3.3.5   receiving, maintaining, conserving, supervising, prosecuting, collecting, settling, managing, investing, protecting, and where appropriate, causing the Wind-Down Debtor to abandon the Wind-Down Debtor Assets, including causing the Wind-Down Debtor to invest any moneys held as Wind-Down Debtor Assets;

3.3.6   opening and maintaining bank accounts on behalf of or in the name of the Debtors or the Wind-Down Debtor, including, in the Plan Administrator's discretion, separate bank accounts for each of the Debtors;

3.3.7   entering into any agreement or executing any document or instrument required by or consistent with the Plan, the Confirmation Order, or this Agreement, and to perform all obligations thereunder;

3.3.8   collecting and liquidating all Wind-Down Debtor Assets, including the sale of any Wind-Down Debtor Assets;

3.3.9   protecting and enforcing the rights to the Wind-Down Debtor Assets (including any Vested Causes of Action and Contributed Third-Party Claims) vested in the Wind-Down Debtor and Plan Administrator by this Agreement by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

3.3.10  investigating any Wind-Down Debtor Assets, and any other potential Vested Causes of Action and Contributed Third-Party Claims;

3.3.11  reviewing, reconciling, compromising, settling, objecting, or prosecuting Claims or Interests of any kind;

3.3.12  seeking the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004;

3.3.13  retaining professionals, disbursing agents, and other agents, independent contractors, and third parties pursuant to this Agreement and pay the reasonable compensation thereof;

3.3.14  paying all lawful expenses, debts, charges, taxes, and other liabilities, and make all other payments relating to the Wind-Down Debtor Assets, solely out of Wind-Down Debtor Assets;

3.3.15  prosecuting and settling the Vested Causes of Action, including, without limitation, the 3AC Claims, FTX Claims, Alameda Claims, Contributed Third-Party Claims, and any causes of action not included in the Asset Purchase Agreement or released under the Plan;

3.3.16 reviewing, reconciling, pursuing, commencing, prosecuting, compromising, settling, dismissing, releasing, waiving, withdrawing, abandoning, resolving, or electing not to pursue all Vested Causes of Action and Contributed Third-Party Claims;

3.3.17 acquiring litigation and other claims related to the Debtors, and prosecuting such claims;

3.3.18 reviewing and compelling turnover of the Debtors or the Wind-Down Debtor's property;

3.3.19 calculating and making all Distributions to the holders of Allowed Claims against each Debtor and, solely to the extent of payment in full of Allowed Claims, to holders of Allowed Interests, as provided for in, or contemplated by, the Plan and this Agreement; *provided* that because the Plan does not substantively consolidate the Debtors' Estates, the Plan Administrator shall make Distributions from the Wind-Down Debtor Assets to the holders of Claims and Interests (if applicable) against that specific Debtor;

3.3.20 establishing, administering, adjusting, and maintaining the Wind-Down Reserve and the Disputed Claims Reserve;

3.3.21 withholding from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the Plan Administrator has determined, based upon the advice of his agents or professionals, may be required to be withheld from such Distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

3.3.22 in reliance upon the Debtors' Schedules, the official Claims Register maintained in the Chapter 11 Cases and the Debtors' filed lists of equity security holders, reviewing, and where appropriate, allowing or objecting to Claims and (if applicable) Interests, and supervising and administering the commencement, prosecution, settlement, compromise, withdrawal, or resolution of all objections to Disputed Claims and (if applicable) Disputed Interests required to be administered by the Wind-Down Debtor;

3.3.23 making all tax withholdings, filing tax information returns, filing and prosecuting tax refunds claims, making tax elections by and on behalf of the Debtors or the Wind-Down Debtor, and filing tax returns for the Debtors or the Wind-Down Debtor pursuant to and in accordance with the Plan, and paying taxes, if any, payable for and on behalf of the Debtors or the Wind-Down Debtor, as applicable; *provided, however*, that notwithstanding any other provision of this Agreement, the Plan Administrator shall not have any responsibility or personal liability in any capacity whatsoever for the signing or accuracy of the Debtors' income tax returns that are due to be filed after the Effective Date or for any tax liability related thereto;

3.3.24 abandoning or donating to a charitable organization qualifying under IRC section 501(c)(3) any Wind-Down Debtor Assets that the Plan Administrator determines to be too impractical to distribute or of inconsequential value;

3.3.25 seeking a determination of tax liability or refund under Bankruptcy Code section 505;

3.3.26 establishing reserves for taxes, assessments, and other expenses of administration of the Debtors or the Wind-Down Debtor as may be necessary and appropriate for the proper operation of matters incident to the Debtors or the Wind-Down Debtor;

3.3.27 paying the Wind-Down Debtor Expenses;

3.3.28 if the Plan Administrator deems appropriate in the Plan Administrator's sole discretion, seeking to establish a bar date for filing proofs of Interest in any Debtor or otherwise to determine the holders and extent of Allowed Interests in any Debtor;

3.3.29 purchasing and carrying all insurance policies that the Plan Administrator deems reasonably necessary or advisable and to pay all associated insurance premiums and costs;

3.3.30 undertaking all administrative functions remaining in the Chapter 11 Cases to the extent necessary to carry out the Debtors', the Wind-Down Debtor's, or the Plan Administrator's duties under the Plan, including reporting and making required payments of fees to the U.S. Trustee and overseeing the closing of the Chapter 11 Cases;

3.3.31 retaining, terminating, appointing, hiring, or otherwise employees, personnel, management, and directors at any of the Debtors (the "Operators") to the extent necessary to carry out the purposes of this Agreement and the Plan, including, without limitation, to address any disputes between the Debtors;

3.3.32 exercising, implementing, enforcing, and discharging all of the terms, conditions, powers, duties, and other provisions of the Plan, the Confirmation Order, and this Agreement; and

3.3.33 taking all other actions consistent with the provisions of the Plan and this Agreement that the Plan Administrator deems reasonably necessary or desirable to administer the Debtors and the Wind-Down Debtor.

3.4    <u>Exclusive Authority to Pursue Vested Causes of Action</u>. The Plan Administrator shall have the exclusive right, power, and interest to review, reconcile, enforce, collect, compromise, settle, or elect not to pursue the Vested Causes of Action, including, without limitation, the FTX Claims, 3AC Claims, Alameda Claims, and the Contributed Third-Party Claims, on behalf of the Wind-Down Debtor. The Plan Administrator shall be the sole representative of the Estates under Bankruptcy Code section 1123(b)(3) with respect to the Vested Causes of Action. The Wind-Down Debtor shall be vested with and entitled to assert all setoffs and defenses of the Debtors or the Wind-Down Debtor and the Contributed Third-Party Claimants to any counterclaims that may be asserted by any defendant with respect to any Vested Cause of Action or Contributed Third-Party Claim, as applicable. The Wind-Down Debtor shall also be vested with and entitled to assert all of the Debtors' and the Estates' rights with respect to any such counterclaims, under Bankruptcy Code section 558. All costs and expenses of pursuing the Vested Causes of Action and the Contributed Third-Party Claims shall be satisfied first from the Wind-Down Debtor Assets, and all other expenses of the Wind-Down Debtor shall be paid or reserved for, before any proceeds of Vested Causes of Action or Contributed Third-Party Claims are distributed. For the avoidance of doubt, all evidentiary privileges of the Debtors of any type or nature whatsoever, including the Debtors' attorney-client privilege, the work product privilege,

and any other applicable evidentiary privileges of the Debtors, shall and shall be deemed to be assigned by the Debtors and shall vest in the Wind-Down Debtor as of the Effective Date.

3.5    Authority to Enter Into Settlement Agreements. The Plan Administrator shall have the exclusive right to enter into settlements regarding the Vested Causes of Action and Contributed Third-Party Claims without requiring court approval, subject to gaining majority approval from the Oversight Committee for any such action in excess of $5,000,000.00.

3.6    Abandonment. If, in the Plan Administrator's reasonable judgment, any non-cash Wind-Down Debtor Assets cannot be sold in a commercially reasonable manner or the Plan Administrator believes in good faith that such property has inconsequential value, the Plan Administrator shall have the right to cause the Wind-Down Debtor to abandon or otherwise dispose of such property, including by donation of such property to a charitable organization.

3.7    Responsibility for Administration of Claims. From and after the Effective Date, the Wind-Down Debtor shall become responsible for administering and paying Distributions to the holders of Allowed Claims and (if applicable) Allowed Interests. The Wind-Down Debtor shall have the exclusive right on behalf of the Debtors to object to the allowance of any Claim or Interest on any ground, to file, withdraw, or litigate to judgment objections to Claims or Interests, to settle or compromise any Disputed Claims or Disputed Interests without any further notice to or action, order, or approval by the Bankruptcy Court, and to assert all defenses of the Debtors and their Estates. The Wind-Down Debtor shall also be entitled to assert all of the Debtors' and the Estates' rights under, without limitation, Bankruptcy Code section 558. The Wind-Down Debtor may also seek estimation of any Claims under and subject to Bankruptcy Code section 502(c).  For the avoidance of doubt, any party may object to any Claims or Interests prior to the Claims Objection Bar Date.

3.8    Agents and Professionals. The Plan Administrator may, but shall not be required to, consult with and retain attorneys, financial advisors, accountants, appraisers, and other professionals the Plan Administrator believes has qualifications necessary to assist in the administration of the Wind-Down Debtor, including professionals previously retained by the Debtors or the Committee. For the avoidance of doubt, and without limitation of applicable law, nothing in this Agreement shall limit the Plan Administrator from engaging counsel or other professionals, including the Plan Administrator himself, to do work for the Wind-Down Debtor. The Plan Administrator may pay the reasonable salaries, fees, and expenses of such Persons out of the Wind-Down Debtor Assets in the ordinary course of business.

3.9    Maintenance and Disposition of Wind-Down Debtor's Records. The Plan Administrator shall maintain accurate records of the administration of the Wind-Down Debtor Assets, including receipts and disbursements and other activity of the Wind-Down Debtor. The Wind-Down Debtor may, but has no obligation to, engage a claims agent (including, but not limited to, the Claims, Noticing, and Solicitation Agent) to continue to maintain and update the Claims Register maintained in the Chapter 11 Cases throughout the administration of the Wind-Down Debtor. To the extent of any Unsecured Claims reflected thereon, the Claims Register may serve as the Plan Administrator's register of beneficial interests held by creditors. The Plan Administrator shall be provided with originals or copies of or access to all documents and business records of the Debtors that are in the possession of the Debtors and reasonably necessary for the

disposition of the Wind-Down Debtor Assets and objections to Claims or (if applicable) Interests except, in each case, to the extent necessary to: (i) ensure compliance with any applicable law or an order of the Bankruptcy Court; (ii) preserve any applicable privilege (including the attorney-client privilege); or (iii) comply with any contractual confidentiality obligations. The Debtors and the Wind-Down Debtor shall use commercially reasonable efforts to cooperate with the Plan Administrator in connection with the Plan Administrator's investigation and prosecution of Vested Causes of Action, Contributed Third-Party Claims, and objections to Claims and Interests, including with respect to providing evidence and information as reasonably requested by the Plan Administrator. Nothing in the Plan or the Confirmation Order shall affect the obligations of the Debtors, the Wind-Down Debtor, or any transferee or custodian to maintain all books and records that are subject to any governmental subpoena, document preservation letter, or other investigative request from a governmental agency.

3.10    Reporting Requirements. The Plan Administrator shall provide the Oversight Committee the information and reports they may reasonably request concerning the Wind-Down Debtor's administration.

## ARTICLE IV
## DISTRIBUTIONS

4.1    Reserves; Pooling of Reserved Funds. Before any distribution can be made to any holders of Allowed Claims and (if applicable) Allowed Interests, the Plan Administrator shall, in his reasonable discretion, establish reserves in an amount sufficient to meet any and all expenses and liabilities of the Wind-Down Debtor, including attorneys' fees and expenses, the fees and expenses of other professionals, and fees owed the U.S. Trustee. The Wind-Down Debtor may also maintain as necessary a Disputed Claims Reserve with respect to Claims and (if applicable) Interests required to be administered by the Wind-Down Debtor. For the avoidance of doubt, the Plan Administrator may withhold any distribution pending the Plan Administrator's determination of whether to object to any Claim or Interest. Any such withheld distribution shall become part of the Wind-Down Debtor's Disputed Claims Reserve and shall be distributed to the appropriate claimholder no later than the first Distribution Date after a decision is made not to object to the pertinent Claim or Interest, or the Claim or Interest becomes Allowed. The Plan Administrator need not maintain the Wind-Down Debtor's reserves in segregated bank accounts and may pool funds in the reserves with each other and other funds of the Wind-Down Debtor; *provided*, *however*, that the Wind-Down Debtor shall treat all such reserved funds as being held in a segregated manner in its books and records, by use of book entries, subledgers, or other means of recognizing the separateness of non-consolidated estates, such that the Wind-Down Debtor will be able to account for all distributions under the Plan separately for each Debtor, as expressly contemplated by the Plan.

4.2    Plan Distributions in General. Except as otherwise provided in the Plan, the Distribution Agent shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the applicable register or in the Debtors' records as of the date of any such distribution (as applicable), including the address set forth in any Proof of Claim filed by that Holder.

4.3     Record Date of Distributions. On the Distribution Record Date, the various transfer registers for each Class of Claims or Interests as maintained by the Debtors or their respective agents shall be deemed closed, and there shall be no further changes in the record Holders of any Claims or Interests. The Distribution Agent shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Distribution Record Date. In addition, with respect to payment of any Cure amounts or disputes over any Cure amounts, neither the Debtors nor the Distribution Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the Effective Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure amount.

4.4     Tax Identification Numbers. The Plan Administrator may require any creditor to furnish its taxpayer identification number as assigned by the Internal Revenue Service, including without limitation by providing an executed current Form W-9, Form W-8 or similar tax form, as a prerequisite to receiving any distribution under the Plan or this Agreement. If a creditor does not timely provide the Plan Administrator with its taxpayer identification number in the manner and by the deadline established by the Plan Administrator and/or the Plan, the creditor shall be deemed to have forfeited its right to any current, reserved or future distributions provided for under the Plan and such creditor's Claim or Interest shall be disallowed and expunged without further order of the Bankruptcy Court. Any such forfeited distribution shall be deemed to have reverted back to the Wind-Down Debtor for all purposes, including for distributions to other holders of Allowed Claims or Allowed Interests (as applicable) against the particular Debtor in respect of which the forfeited distribution was made, notwithstanding any federal, provincial or state escheat, abandoned or unclaimed property law to the contrary.

4.5     Unclaimed and Undeliverable Distributions. If any distribution to a creditor is returned to the Plan Administrator as undeliverable and/or otherwise remains unclaimed, the Plan Administrator shall use reasonable efforts to contact such creditors, *provided* that no further Plan Distributions to such creditor shall be made unless and until the Plan Administrator has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided, further*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the applicable Distribution Date. A distribution shall be deemed unclaimed if a Holder has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Wind-Down Debtor of an intent to accept a particular distribution; (c) responded to the Wind-Down Debtor's requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

After the passage of the deadlines set forth in Article VI.C(6) of the Plan, such distribution shall be deemed unclaimed property under Bankruptcy Code section 347(b) and all title to and beneficial interest in such undeliverable Distribution shall revert to or remain in the Wind-Down Debtor automatically and without any need for further order by the Bankruptcy Court, notwithstanding any federal, provincial or state escheat, abandoned or unclaimed property laws to the contrary, and shall be distributed in accordance with this Article IV and the Plan. For the avoidance of doubt, undeliverable or unclaimed Plan distributions shall be administered in accordance with this Article IV as supplemented hereby.

4.6     No Responsibility to Attempt to Locate Creditors. The Plan Administrator may, in his sole discretion, attempt to determine a creditor's current address or otherwise locate a creditor, but nothing in this Agreement or the Plan shall require the Plan Administrator to do so.

4.7     Disallowance of Claims and Interests; Cancellation of Corresponding Beneficial Interests. All Claims in respect of undeliverable or unclaimed Distributions that have been deemed to have reverted back to the Plan Administrator for all purposes (including, but not limited to, for distribution to holders of other Allowed Claims or Allowed Interests, as applicable, against the particular Debtor in respect of which the unclaimed or undeliverable distribution was made) pursuant to Article VI of the Plan shall be deemed disallowed and expunged without further action by the Wind-Down Debtor or Plan Administrator and without further order of the Bankruptcy Court, and the corresponding interests of any creditor holding such disallowed Claims or Interests shall be deemed canceled. The creditor with respect to any such disallowed Claim or Interest shall no longer have any right, claim, or interest in or to any distributions in respect of such Claim or Interest, and further, such creditor is forever barred, estopped, and enjoined from receiving any distributions under the Plan or this Agreement and from asserting such disallowed Claim or Interest against the Wind-Down Debtor or Plan Administrator.

4.8     Inapplicability of Escheat, Abandoned, or Unclaimed Property Laws.  Unclaimed property held by the Wind-Down Debtor shall not be subject to the escheat, abandoned or unclaimed property laws of the United States, any state, any local or any foreign governmental unit.

4.9     Delivery of Distributions.   Subject to the terms of this Agreement, the Plan Administrator shall cause the Wind-Down Debtor to make Distributions to creditors in the manner provided in the Plan.

## ARTICLE V
## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

5.1     Parties Dealing With the Plan Administrator. In the absence of actual knowledge to the contrary, any Person dealing with the Wind-Down Debtor or the Plan Administrator shall be entitled to rely on the authority of the Plan Administrator or any of the Plan Administrator's agents to act in connection with the Wind-Down Debtor Assets. There is no obligation of any Person dealing with the Plan Administrator to inquire into the validity or expediency or propriety of any transaction by the Plan Administrator or any agent of the Plan Administrator.

5.2     Limitation of Plan Administrator, Independent Directors and Oversight Committee Liability. In exercising the rights granted herein, the Plan Administrator shall exercise the Plan Administrator's best judgment with respect to the affairs of the Wind-Down Debtor and the interests of creditors. However, notwithstanding anything herein to the contrary, neither the Plan Administrator, the Independent Directors, nor any Operator, nor any member of the Oversight Committee, nor any of their respective firms, companies, affiliates, partners, officers, directors, members, employees, designees, professionals, advisors, attorneys, representatives, disbursing agents, or agents, and any of such Person's successors and assigns, shall incur any responsibility or liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with this Agreement, including with respect to any intercreditor

or other issues that may arise as a result of the non-consolidation of Estates under the Plan, whether sounding in tort, contract, or otherwise, except for fraud, gross negligence, or willful misconduct that is found by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered by the Wind-Down Debtor. In no event shall the Plan Administrator, any Independent Director, any Operator, or any member of the Oversight Committee be liable for indirect, punitive, special, incidental, or consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Plan Administrator, the Independent Directors, any Operator, or the Oversight Committee has been informed of the likelihood of such loss or damages and regardless of the form of action. Without limiting the foregoing, the Plan Administrator, the Independent Directors and the Operators shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in Article IV of the Plan, and the Plan Administrator, the Independent Directors, the Operators and the Oversight Committee shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in the Confirmation Order.

5.3    No Liability for Acts of Other Persons. None of the Persons identified in the immediately preceding section 5.2 of this Agreement shall be liable for the act or omission of any other Person identified in that section.

5.4    No Liability for Acts of Predecessors. No successor Plan Administrator shall be in any way responsible for the acts or omissions of any Plan Administrator in office prior to the date on which such successor becomes the Plan Administrator, unless a successor Plan Administrator expressly assumes such responsibility.

5.5    No Liability for Good Faith Error of Judgment. Neither the Plan Administrator nor the Independent Directors nor any Operator shall be liable for any error of judgment made in good faith, unless it shall be finally determined by a final judgment of a court of competent jurisdiction (not subject to further appeal or review) that the Plan Administrator, any Independent Director or any Operator, as applicable, was grossly negligent in ascertaining the pertinent facts.

5.6    Reliance on Documents and Advice of Counsel or Other Persons. Except as otherwise provided herein, the Plan Administrator, the Independent Directors and the Operators may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties. The Plan Administrator, the Independent Directors and the Operators may engage and consult with their respective legal counsel and other agents and advisors, and shall not be liable for any action taken, omitted, or suffered in reliance upon the advice of such counsel, agents, or advisors.

5.7    No Liability For Acts Approved by Bankruptcy Court. The Plan Administrator shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Wind-Down Debtor. The Plan Administrator, the Independent Directors and the Operators shall not be liable for any act or omission that has been approved by the Bankruptcy Court, and all such actions or omissions shall conclusively be deemed not to constitute fraud, gross negligence, or willful misconduct.

5.8     No Personal Obligation for Wind-Down Debtor's Liabilities. Persons dealing with the Plan Administrator shall have recourse only to the Wind-Down Debtor Assets to satisfy any liability incurred by the Plan Administrator to any such Person in carrying out the terms of this Agreement, and the Plan Administrator shall have no personal, individual obligation to satisfy any such liability.

5.9     Indemnification. The Plan Administrator, the Independent Directors, the Operators and the Oversight Committee, and their respective consultants, agents, attorneys, accountants, financial advisors, estates, employees, officers, directors, principals, professionals, and other representatives, each in their representative capacity as such, and any of such Person's successors and assigns (collectively, the "Indemnified Parties" and each, an "Indemnified Party") shall, to the fullest extent permitted by applicable law, be defended, held harmless, and indemnified by the Wind-Down Debtor from time to time and receive reimbursement from and against any and all loss, liability, expense (including counsel fees), or damage of any kind, type or nature, whether sounding in tort, contract, or otherwise, that the Indemnified Parties may incur or sustain in connection with the exercise or performance of any of the Wind-Down Debtor's, the Plan Administrator's, each Independent Director's, each Operator's or the Oversight Committee's respective powers and duties under this Agreement or in rendering services by the Indemnified Party to the Wind-Down Debtor or the Plan Administrator, including, without limitation, the costs of counsel or others in investigating, preparing, defending, or settling any action or claim (whether or not litigation has been initiated against the Indemnified Party) or in enforcing this Agreement (including its indemnification provisions), except if such loss, liability, expense, or damage is finally determined by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to result directly and primarily from the fraud, gross negligence, or willful misconduct of the Indemnified Party asserting this provision.

5.9.1     Expense of Wind-Down Debtor; Limitation on Source of Payment of Indemnification. All indemnification liabilities of the Wind-Down Debtor under this section 5.9 shall be expenses of the Wind-Down Debtor. The amounts necessary for such indemnification and reimbursement shall be paid by the Wind-Down Debtor out of the available Wind-Down Debtor Assets after reserving for all other actual and anticipated expenses and liabilities of the Wind-Down Debtor. Neither the Plan Administrator, the Independent Directors, the Operators, nor the Oversight Committee or its members shall be personally liable for the payment of any Wind-Down Debtor's expense or claim or other liability of the Wind-Down Debtor, and no Person shall look to the Plan Administrator, the Independent Directors, the Operators, the Oversight Committee, or other Indemnified Parties personally for the payment of any such expense or liability.

5.9.2     Procedure for Current Payment of Indemnified Expenses; Undertaking to Repay. The Wind-Down Debtor shall promptly pay an Indemnified Party all amounts subject to indemnification under this section 5.9 on submission of invoices for such amounts by the Indemnified Party. By accepting any indemnification payment, the Indemnified Party undertakes to repay such amount promptly if it is determined that the Indemnified Party is not entitled to be indemnified under this Agreement. The Bankruptcy Court shall hear and finally determine any dispute arising out of this section 5.9.

5.10    No Implied Obligations. The Plan Administrator shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the Plan Administrator.

5.11    Confirmation of Survival of Provisions. Without limitation in any way of any provision of this Agreement, the provisions of this Article V shall survive the death, dissolution, liquidation, incapacity, resignation, replacement, or removal, as may be applicable, of the Plan Administrator, or the termination of the Wind-Down Debtor or this Agreement, and shall inure to the benefit of the Plan Administrator's and the Indemnified Parties' heirs and assigns.

## ARTICLE VI
## OVERSIGHT COMMITTEE

6.1    Appointment, Composition, and Governance of Oversight Committee. As provided for in Article IV of the Plan, the Oversight Committee shall consist of those initial members identified on **Exhibit A** hereto. In the event that a member of the Oversight Committee resigns, the Plan Administrator may appoint a new member, subject to the unanimous approval of the remaining members of the Oversight Committee. If, in the future, the Oversight Committee consists of greater than three members, then upon the resignation of an Oversight Committee member, only majority consent of the remaining members shall be necessary. If (A) there are two remaining members and unanimous consent is not obtained or (B) there are three or more remaining members and a majority of the remaining members do not consent, the members may, upon motion, request that the Bankruptcy Court determine the matter. Notwithstanding the foregoing, in the event that fewer than three persons are willing to serve on the Oversight Committee or there shall have been fewer than three (3) Oversight Committee members for a period of thirty (30) consecutive days, then during such vacancy all references to the Oversight Committee's ongoing rights and duties in the Plan, this Agreement, and the Confirmation Order will require the Oversight Committee's unanimous consent.

6.2    Resignation of Oversight Committee Members. Any member of the Oversight Committee may resign upon reasonable notice to the Plan Administrator, counsel for the Plan Administrator, and other members of the Oversight Committee. Sixty (60) days' prior written notice shall constitute reasonable notice under this Section 6.2. Pursuant to Section 6.1 of this Agreement, during the sixty-day notice period, the Plan Administrator will seek a replacement for the position on the Oversight Committee that will begin their duties under this Agreement immediately following resignation or replacement of the previous member. Any member of the Oversight Committee may be removed by the Bankruptcy Court for cause or inactivity. The Oversight Committee may authorize its own dissolution by filing with the Bankruptcy Court an appropriate notice that its responsibilities under the Plan have concluded.

6.3    Fiduciary Duties. Members of the Oversight Committee shall have fiduciary duties to creditors in the same manner that members of an official committee of creditors appointed pursuant to Bankruptcy Code section 1102 have fiduciary duties to the constituents represented by such a committee, and shall be entitled to indemnification from the Wind-Down Debtor in the same manner as the Plan Administrator for service as members of the Oversight Committee from and after the Effective Date of the Plan under or in connection with this Agreement.

6.4     <u>Limitations on Plan Administrator's Actions</u>. The Plan Administrator shall obtain the approval of the Oversight Committee by at least a majority vote prior to taking any action regarding the administration, reconciliation, objection to, compromise, resolution, settlement, or litigation of any Claim (as determined by the Plan Administrator in his sole discretion) where the asserted Claim exceeds $5,000,000.00.

6.5     <u>Payment of Fees and Expenses</u>. The Plan Administrator shall pay from the Wind-Down Debtor Assets the reasonable out-of-pocket expenses of the members of the Oversight Committee incurred solely in connection with their role as an Oversight Committee member, and not in their individual capacity. For the avoidance of doubt, attorneys' fees incurred by an Oversight Committee member, including, but not limited to, attendance at any meetings of the Oversight Committee shall not be paid out of the Wind-Down Debtor Assets pursuant to this section 6.5. The Bankruptcy Court shall hear and finally determine any dispute arising out of this section 6.5.

**ARTICLE VII**
**REMOVAL, REPLACEMENT**
**AND COMPENSATION OF PLAN ADMINISTRATOR**

7.1     <u>Initial Plan Administrator</u>. The Initial Plan Administrator shall be Paul R. Hage. The Plan Administrator shall be approved in the Confirmation Order, and the Plan Administrator's duties shall commence as of the Effective Date.

7.2     <u>Term of Service</u>. The Plan Administrator shall serve until: (a) the completion of the administration of the Wind-Down Debtor Assets and the Wind-Down Debtor, including the winding down of the Debtors and the Wind-Down Debtor, in accordance with this Agreement and the Plan; (b) the termination of the Wind-Down Debtor in accordance with the terms of this Agreement and the Plan; or (c) the Plan Administrator's resignation, death, dissolution, incapacity, liquidation, or removal. In the event that the Plan Administrator's appointment terminates by reason of resignation, death, dissolution, incapacity, liquidation, or removal, the Plan Administrator shall be immediately compensated for all reasonable fees and expenses accrued but unpaid through the effective date of termination, whether or not previously invoiced. The provisions of Article V of this Agreement shall survive the resignation or removal of any Plan Administrator.

7.3     <u>Removal of Plan Administrator for Cause</u>: The Oversight Committee may seek to remove the Plan Administrator for cause by filing a motion (the "<u>Removal Motion</u>") with the Bankruptcy Court upon not less than thirty (30) days' prior written notice to the Plan Administrator. For purposes of this agreement, "cause" means

7.3.1     arrest or conviction (or plea of guilty or nolo contendere) of the Plan Administrator for any felony, or any other crime involving dishonesty or moral turpitude;

7.3.2     a finding by the Oversight Committee that the Plan Administrator engaged in willful misconduct, or was grossly negligent, in the performance of its duties;

15

7.3.3    a determination, in good faith, by the Oversight Committee that the Plan Administrator is not acting in the best interest of the creditors; or

7.3.4    a determination, in good faith, by the Oversight Committee that the Plan Administrator has a material and direct conflict of interest, not previously disclosed or specifically waived in advance by the Wind-Down Debtor.

7.4    <u>Resignation of Plan Administrator</u>. The Plan Administrator may resign at any time upon no less than sixty (60) days' prior written notice to the Oversight Committee. The resignation shall be effective on the later of (i) the date specified in the notice of resignation and (ii) the date that is sixty days (60) after the date such notice is delivered to the Oversight Committee members. In the event of a resignation, the resigning Plan Administrator shall render to the Oversight Committee a full and complete accounting of monies and assets received, disbursed, and held during the term of office of such Plan Administrator.

7.5    <u>Appointment of Successor Plan Administrator</u>. Upon the resignation, death, or removal of the Plan Administrator, the Oversight Committee shall appoint a successor. In the event the Oversight Committee does not seek the appointment of a successor Plan Administrator, the Bankruptcy Court may do so on its own motion. Any successor Plan Administrator so appointed (a) shall consent to and accept his, her, or its appointment as successor Plan Administrator, which may be done by e-mail or through acquiescence in not objecting to a motion for approval of his, her, or its appointment as successor Plan Administrator and (b) shall not have any liability or responsibility for the acts or omissions of any predecessor(s).

7.6    <u>Powers and Duties of Successor Plan Administrator</u>. A successor Plan Administrator shall have all the rights, privileges, powers, and duties of his, her, or its predecessor under this Agreement, the Plan, and Confirmation Order.

7.7    <u>Compensation of Plan Administrator and Costs of Administration</u>. The Plan Administrator shall receive fair and reasonable compensation for his services in accordance with the terms and conditions of the Plan, which shall be a charge against and paid out of the Wind-Down Debtor Assets. All costs, expenses, and obligations incurred by the Plan Administrator (or professionals who may be employed by the Plan Administrator in administering the Wind-Down Debtor, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid by the Wind-Down Debtor from the Wind-Down Debtor Assets prior to any distribution to holders of Allowed Claims or Allowed Interests. The terms of the compensation of the Plan Administrator are set forth on **Exhibit B** hereto. The Oversight Committee may modify the Plan Administrator's compensation as agreed to by a majority vote.

## ARTICLE VIII
## CLOSING OF THE CHAPTER 11 CASES

8.1    <u>Termination</u>. When each of the following have occurred or will have occurred by the hearing on a motion to close the Chapter 11 Cases, the Plan Administrator shall promptly seek authority from the Bankruptcy Court to close the Chapter 11 Cases for each of the Wind-Down Estates in accordance with the Bankruptcy Code and the Bankruptcy Rules: (a) all Claims against

the Wind-Down Estates entitled to payment under the Plan (i) have been satisfied in accordance with the Plan or (ii) have been disallowed by Final Order; (b) all assets have been liquidated and converted into Cash (other than those assets abandoned by the Wind-Down Estates in the Plan Administrator's sole discretion), and such Cash has been distributed in accordance with the Plan; and (c) all wind-down costs and expenses have been paid in full in Cash. Notwithstanding the foregoing, the Plan Administrator may seek authority from the Bankruptcy Court to close the Chapter 11 Cases of the Debtors individually, prior to the requirements above being met with respect to all of the Debtors' Chapter 11 Cases, and may seek to close the Chapter 11 Cases in the event the Debtors lack sufficient funding for further administration. Subject to further order of the Court, this Agreement shall terminate when the Bankruptcy Court enters a final decree contemplated by Bankruptcy Code section 350 and Bankruptcy Rule 3022 closing the Debtors' Chapter 11 Cases with respect to each Debtor.

8.2     <u>Winding Up, Discharge, and Release of the Plan Administrator, Independent Directors and Oversight Committee</u>. For the purposes of winding up the affairs of the Debtors and/or the Wind-Down Debtor, as applicable, the Plan Administrator shall continue to act as Plan Administrator and the Oversight Committee and Independent Directors shall continue their duties under this Agreement until such duties have been fully discharged or their role as Plan Administrator, Independent Directors, and/or on the Oversight Committee are otherwise terminated under this Agreement and the Plan. Upon a motion or notice by the Plan Administrator, Independent Directors, and/or the Oversight Committee, the Bankruptcy Court may enter an order relieving the Plan Administrator, Independent Directors, and/or Oversight Committee, its members, agents, and employees of any further duties and discharging and releasing the Plan Administrator, Independent Directors, and/or the Oversight Committee.

## ARTICLE IX
## MISCELLANEOUS

9.1     <u>Cumulative Rights and Remedies</u>. The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

9.2     <u>Notices</u>. All notices to be given to creditors may be given by electronic mail, first class mail, or may be delivered personally, at the addresses for such creditors appearing on the books kept by the Plan Administrator. Any notice or other communication that may be or is required to be given, served, or sent to the Plan Administrator shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

If to the Plan Administrator:
Paul R. Hage, Plan Administrator
27777 Franklin Rd.
Suite 2500
Southfield, Michigan 48034
Email: phage@taftlaw.com

with a copy to counsel:

17

[                    ]

or to such other address as may from time to time be provided in written notice by the Plan Administrator.

9.3     Governing Law. This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York.

9.4     Successors and Assigns. This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

9.5     Particular Words. Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement. The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

9.6     Execution. All funds in the Wind-Down Debtor shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a creditor, and no creditor or any other Person can execute upon, garnish or attach the Wind-Down Debtor Assets or the Plan Administrator in any manner or compel payment from the Wind-Down Debtor except by Final Order of the Bankruptcy Court. Payments will be solely governed by the Plan and this Agreement.

9.7     Amendment. This Agreement may be amended by written agreement of the Plan Administrator and the Oversight Committee or by order of the Bankruptcy Court; *provided*, *however*, that such amendment may not be inconsistent with the Plan or the Confirmation Order.

9.8     No Waiver. No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

9.9     No Relationship Created. Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership or joint venture of any kind.

9.10     Severability. If any term, provision covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

9.11     Further Assurances. The Parties agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes and provide for the full implementation of this Agreement and the pertinent provisions of the Plan, and to consummate the transactions contemplated hereby.

9.12     Counterparts. This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

9.13    <u>Jurisdiction</u>. The Bankruptcy Court shall have jurisdiction regarding the Debtors, the Wind-Down Debtor, the Plan Administrator, the Oversight Committee, and the Wind-Down Debtor Assets, including, without limitation, the determination of all disputes arising out of or related to administration of the Wind-Down Debtor. The Bankruptcy Court shall have continuing jurisdiction and venue to hear and finally determine all disputes and related matters among the Parties arising out of or related to this Agreement or the administration of the Wind-Down Debtor. The Parties expressly consent to the Bankruptcy Court hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Agreement, the provisions of this Agreement shall have no effect on and shall not control, limit or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.

* * * * *

IN WITNESS WHEREOF, the Parties have or are deemed to have executed this Agreement as of the day and year written above.

Voyager Digital Holdings, Inc.

By:_____

Name:_____

Title:_____

Voyager Digital Ltd.

By:_____

Name:_____

Title:_____

Voyager Digital Holdings, LLC

By: _____

Name_____

Title:_____

Paul Hage, as Plan Administrator

By: _____

Name_____

Title:_____

**<u>EXHIBIT A</u>**

**Oversight Committee Members**

## <u>Oversight Committee Members</u>

1.  Richard Kiss

2.  Russell Stewart

3.  Melissa Freeman

## EXHIBIT B

**Plan Administrator Compensation**

**Plan Administrator Compensation**

| Plan Administrator | Compensation |
|---|---|
| Paul R. Hage | $500 per hour for professional services rendered, plus reimbursement of reasonable and documented out-of-pocket fees, costs, and expenses. This hourly rate is subject to annual rate increases to reflect economic and other conditions. |

**Exhibit F-1**

**Redline of <u>Exhibit F</u> to <u>Exhibit F</u> of the Seventh Amended Plan Supplement**

## PLAN ADMINISTRATOR AGREEMENT

This Plan Administrator Agreement (as it may be amended, modified, supplemented, or restated from time to time, this "Agreement") dated as of [   ], 2023, is made and entered into by and among the entities listed as "Debtors" on the signature pages hereto (each, a "Debtor"), and Paul R. Hage, solely in his capacity as Plan Administrator for purposes of this Agreement (the "Plan Administrator"), and is executed in connection with and pursuant to the terms of the *Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* dated January 10, 2023 [Docket No. 852] (as it may be amended, modified, supplemented, or restated from time to time, the "Plan").[1]

### RECITALS

WHEREAS, on July 5, 2022, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York, (the "Bankruptcy Court"), and their chapter 11 cases are being jointly administered as *In re Voyager Digital Holdings, Inc., et al.,* Case No. 23-10943 (MEW);

WHEREAS, on July 19, 2022, the United States Trustee for Region 2 (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee");[2]

WHEREAS, the Plan contemplates that a plan administrator will be appointed to perform its duties in accordance with the Plan and this Agreement;

WHEREAS, the Plan provides that the Plan Administrator will, among other things, retain, preserve, and distribute certain assets of the Wind-Down Debtor for the benefit of Holders of Allowed Claims or Allowed Interests that are entitled to receive distributions pursuant to the terms of the Plan, whether or not such Claims or Interests are Allowed as of the Effective Date;

---

[1]    All capitalized terms used in this Agreement and not otherwise defined herein have the meanings ascribed to such defined terms in the Plan.

[2]    Docket No. 106.

WHEREAS on March 8, 2023, the Bankruptcy Court entered an order ("Confirmation Order")[3] confirming the Plan, which became effective on [  ], 2023 ("Effective Date");

WHEREAS, this Agreement is entered into in accordance with, and to facilitate the implementation and execution of, the Plan;

WHEREAS, on the Effective Date of the Plan, the Plan Administrator shall be appointed in accordance with the Plan, and the Plan Administrator is willing to serve in such capacity, in each case upon the terms set forth in this Agreement and pursuant to the Plan; and

WHEREAS, the Plan provides that the Plan Administrator shall act for the Debtors and Wind-Down Debtor in the same fiduciary capacity as applicable to a board of directors and officers, subject to the provisions of the Plan and this Agreement;

NOW, THEREFORE, in accordance with the Plan and the Confirmation Order, and in consideration of the promises, and the mutual covenants and agreements of the Parties contained in the Plan and herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree and declare as follows:

**RECITALS, INTERPRETATION, AND CONSTRUCTION**

1.1     Recitals. The Recitals are incorporated into and made terms of this Agreement.

1.2     Interpretation; Headings. All references herein to specific provisions of the Plan or Confirmation Order are without exclusion or limitation of other applicable provisions of the Plan or Confirmation Order. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender. The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.

1.3     Construction of Agreement. This Agreement shall not be construed to impair or limit in any way the rights of any Person under the Plan.

1.4     Conflict Among Plan Documents. In the event of any inconsistency between the terms of this Agreement and the terms of the Plan, the terms of the Plan shall govern and control. In the event of any inconsistency between this Agreement, on the one hand, and the Confirmation Order, on the other hand, the Confirmation Order shall control and take precedence.

**ARTICLE II**

---

[3]     Docket No 1159.

## ACCEPTANCE OF POSITION; OBLIGATION TO PAY CLAIMS; FIDUCIARY STATUS

2.1    <u>Acceptance</u>. (a) Paul. R. Hage hereby accepts appointment as the Plan Administrator; and (b) Paul R. Hage agrees to observe and perform all duties and obligations imposed upon the Plan Administrator under the Plan, this Agreement, other orders of the Bankruptcy Court, and applicable law.

2.2    <u>Fiduciary</u>. The Plan Administrator shall perform its obligations consistent with the Plan, this Agreement, and applicable orders of the Bankruptcy Court. Subject to sections 1.4 and 3.3.3 hereof, the Plan Administrator shall be the sole officer and director of the Wind-Down Debtor.  The Plan Administrator shall hold the equity of the Voyager Digital Ltd., to the extent that any new equity is issued, in an agency capacity, for the benefit of and to facilitate the rights of Holders of Interests provided under the Plan. The Plan Administrator shall act for the Wind-Down Debtor in the same fiduciary capacity as applicable to a board of directors and officers, subject to the provisions in the Plan (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same). On the Effective Date, the authority, power, and incumbency of the persons acting as directors (excluding the Independent Directors (as defined herein)) and officers of the Debtors and the Wind-Down Debtor shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator or a representative of the Plan Administrator shall be appointed as a director and the sole officer of the Debtors and the Wind-Down Debtor and shall succeed to the powers of the Debtors' directors and officers who resign on the Effective Date. Subject to sections 1.4 and 3.3.3 hereof, from and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Debtors and the Wind-Down Debtor. For the avoidance of doubt, (i) the foregoing shall not limit the authority of the Debtors, the Wind-Down Debtor, or the Plan Administrator, as applicable, to continue the employment any former director ~~or,~~ officer, <u>or employee,</u> including pursuant to the Purchase Agreement (if any) or any transition services agreement entered into on or after the Effective Date by and between the Debtors, the Wind-Down Debtor, and the Purchasers, and (ii) subject to the Plan Administrator's powers under section 3.3.3, the Independent Directors (or any successor Independent Directors) shall remain in their current positions on and after the Effective Date to resolve any Conflict Matters (as defined herein) until such Conflict Matters are resolved.

## ARTICLE III
## GENERAL POWERS, RIGHTS AND OBLIGATIONS OF THE PLAN ADMINISTRATOR

3.1    <u>Rights, Powers, and Privileges of Plan Administrator Generally</u>. Effective as of the Effective Date, the Plan Administrator is appointed under the Plan for purposes of implementing the terms and conditions of the Plan with respect to (i) effectuating the transactions beneficial and necessary to wind down the Debtors and the Wind-Down Debtor, including as set forth in the Restructuring Transactions Memorandum, (ii) administration of, and distributions with respect to, the claims asserted against the Debtors, and (iii) such other matters agreed to by the Debtors and Plan Administrator in accordance with the terms of the Plan (collectively, the "<u>Plan Administrator Responsibilities</u>"), in each case, subject to the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order. The Plan

Administrator is hereby appointed to make all disbursements and distributions under the Plan, subject to the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order. The Debtors and the Wind-Down Debtor shall be managed, administered, and wound down by the Plan Administrator in accordance with the terms of the Plan, in consultation with the Oversight Committee established pursuant to this Agreement (the "Oversight Committee") as set forth in this Agreement, and the Plan Administrator shall have full authority to administer the provisions of the Plan, and subject to the terms and conditions of this Agreement, the Plan, and the Confirmation Order. The Plan Administrator shall be deemed to be a judicial substitute and estate representative for the Debtors as the party-in-interest in the Chapter 11 Cases, under the Plan, or in any judicial proceeding or appeal to which any of the Debtors or Wind-Down Debtor is a party. The Plan Administrator shall be deemed a "representative" of the estate as contemplated by Bankruptcy Code section 1123(b)(3)(B), and performance of certain services in connection with this Agreement shall be authorized by the execution of this Agreement to the extent not already authorized by the Plan or the Confirmation Order.

      3.1.1   Power to Contract. In furtherance of the purpose of the Debtors and the Wind-Down Debtor, and except as otherwise specifically restricted in the Plan, Confirmation Order, or this Agreement, the Plan Administrator shall have the right and power on behalf of the Wind-Down Entity, and also may cause the Debtors or the Wind-Down Debtor, to enter into any covenants or agreements binding the Debtors or the Wind-Down Debtor, and to execute, acknowledge and deliver any and all instruments that are necessary or deemed by the Plan Administrator to be consistent with and advisable in furthering the purpose of the Plan or this Agreement.

      3.1.2   Ultimate Right to Act Based on Advice of Counsel or Other Professionals. Nothing in this Agreement shall be deemed to prevent the Plan Administrator from taking or refraining to take any action on behalf of the Debtors or the Wind-Down Debtor that, based upon the advice of counsel or other professionals, the Plan Administrator determines he is obligated to take or to refrain from taking in the performance of any duty under the Plan, Confirmation Order, or this Agreement.

      3.2   Oversight Committee Member Designation. If a conflict arises that prevents the involvement of the Plan Administrator from performing his duties, the Oversight Committee shall designate a member of the Oversight Committee to act as the Plan Administrator solely with respect to such conflict. During such time as an Oversight Committee member is acting as Plan Administrator, such member shall not be entitled to vote on matters requiring Oversight Committee approval and the voting provisions set forth in section 6.1 hereof shall apply.

      3.3   Powers of Plan Administrator. The Plan Administrator shall provide the post-Effective Date administration, wind down, dissolution, and liquidation services related to the Plan Administrator Responsibilities that are necessary, required, desirable, or advisable to effectuate the terms and conditions of the Plan and the wind down of the Debtors and the Wind-Down Debtor, in consultation with the Oversight Committee as set forth in this Agreement. Subject to the oversight and direction of the Oversight Committee set forth in Article VI of this Agreement, the Plan Administrator shall have all duties, powers, and rights set forth

herein, in the Plan, and in the Confirmation Order, including but not limited to, the following services related to the Debtors and the Wind-Down Debtor:

3.3.1 implementing the Wind-Down Debtor, and making distributions contemplated by the Plan;

3.3.2 marshalling, marketing for sale, and winding down any of the Debtors' assets constituting Wind-Down Debtor Assets;

3.3.3 appointing an independent director at each Debtor to act as a fiduciary for such Debtor entity (each, an "Independent Director") solely in connection with matters that may implicate actual or potential intra-Debtor conflicts of interests between the Plan Administrator and the applicable Debtor(s) or Wind-Down Debtor (such matters, "Conflict Matters") including (i) the Intercompany Claims; (ii) the Alameda Loan Facility Claims; (iii) the Signatory Governmental Claims (as defined in the Governmental Claimant Stipulation) asserted against TopCo; and (iv) any matter involving the transfer or allocation of value, claims, or costs between or among the Debtors, but only to the extent that such issues continue to implicate actual or potential intra-Debtor conflicts of interests between the Plan Administrator and the applicable Debtor(s) or Wind-Down Debtor;

3.3.4 overseeing the accounts of the Debtors and the Wind-Down Debtor and the wind down and dissolution of the Debtors and the Wind-Down Debtor, including effectuating the transactions described in the Restructuring Transactions Memorandum;

3.3.5 receiving, maintaining, conserving, supervising, prosecuting, collecting, settling, managing, investing, protecting, and where appropriate, causing the Wind-Down Debtor to abandon the Wind-Down Debtor Assets, including causing the Wind-Down Debtor to invest any moneys held as Wind-Down Debtor Assets;

3.3.6 opening and maintaining bank accounts on behalf of or in the name of the Debtors or the Wind-Down Debtor, including, in the Plan Administrator's discretion, separate bank accounts for each of the Debtors;

3.3.7 entering into any agreement or executing any document or instrument required by or consistent with the Plan, the Confirmation Order, or this Agreement, and to perform all obligations thereunder;

3.3.8 collecting and liquidating all Wind-Down Debtor Assets, including the sale of any Wind-Down Debtor Assets;

3.3.9 protecting and enforcing the rights to the Wind-Down Debtor Assets (including any Vested Causes of Action and Contributed Third-Party Claims) vested in the Wind-Down Debtor and Plan Administrator by this Agreement by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

3.3.10 investigating any Wind-Down Debtor Assets, and any other potential Vested Causes of Action and Contributed Third-Party Claims;

3.3.11 reviewing, reconciling, compromising, settling, objecting, or prosecuting Claims or Interests of any kind;

3.3.12 seeking the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004;

3.3.13 retaining professionals, disbursing agents, and other agents, independent contractors, and third parties pursuant to this Agreement and pay the reasonable compensation thereof;

3.3.14 paying all lawful expenses, debts, charges, taxes, and other liabilities, and make all other payments relating to the Wind-Down Debtor Assets, solely out of Wind-Down Debtor Assets;

3.3.15 prosecuting and settling the Vested Causes of Action, including, without limitation, the 3AC Claims, FTX Claims, Alameda Claims, Contributed Third-Party Claims, and any causes of action not included in the Asset Purchase Agreement or released under the Plan;

3.3.16 reviewing, reconciling, pursuing, commencing, prosecuting, compromising, settling, dismissing, releasing, waiving, withdrawing, abandoning, resolving, or electing not to pursue all Vested Causes of Action and Contributed Third-Party Claims;

3.3.17 acquiring litigation and other claims related to the Debtors, and prosecuting such claims;

3.3.18 reviewing and compelling turnover of the Debtors or the Wind-Down Debtor's property;

3.3.19 calculating and making all Distributions to the holders of Allowed Claims against each Debtor and, solely to the extent of payment in full of Allowed Claims, to holders of Allowed Interests, as provided for in, or contemplated by, the Plan and this Agreement; *provided* that because the Plan does not substantively consolidate the Debtors' Estates, the Plan Administrator shall make Distributions from the Wind-Down Debtor Assets to the holders of Claims and Interests (if applicable) against that specific Debtor;

3.3.20 establishing, administering, adjusting, and maintaining the Wind-Down Reserve and the Disputed Claims Reserve;

3.3.21 withholding from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the Plan Administrator has determined, based upon the advice of his agents or professionals, may be required to be withheld from such Distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

3.3.22 in reliance upon the Debtors' Schedules, the official Claims Register maintained in the Chapter 11 Cases and the Debtors' filed lists of equity security holders, reviewing, and where appropriate, allowing or objecting to Claims and (if applicable) Interests, and supervising and administering the commencement, prosecution, settlement, compromise,

withdrawal, or resolution of all objections to Disputed Claims and (if applicable) Disputed Interests required to be administered by the Wind-Down Debtor;

3.3.23 making all tax withholdings, filing tax information returns, filing and prosecuting tax refunds claims, making tax elections by and on behalf of the Debtors or the Wind-Down Debtor, and filing tax returns for the Debtors or the Wind-Down Debtor pursuant to and in accordance with the Plan, and paying taxes, if any, payable for and on behalf of the Debtors or the Wind-Down Debtor, as applicable; *provided, however*, that notwithstanding any other provision of this Agreement, the Plan Administrator shall not have any responsibility or personal liability in any capacity whatsoever for the signing or accuracy of the Debtors' income tax returns that are due to be filed after the Effective Date or for any tax liability related thereto;

3.3.24 abandoning or donating to a charitable organization qualifying under IRC section 501(c)(3) any Wind-Down Debtor Assets that the Plan Administrator determines to be too impractical to distribute or of inconsequential value;

3.3.25 seeking a determination of tax liability or refund under Bankruptcy Code section 505;

3.3.26 establishing reserves for taxes, assessments, and other expenses of administration of the Debtors or the Wind-Down Debtor as may be necessary and appropriate for the proper operation of matters incident to the Debtors or the Wind-Down Debtor;

3.3.27 paying the Wind-Down Debtor Expenses;

3.3.28 if the Plan Administrator deems appropriate in the Plan Administrator's sole discretion, seeking to establish a bar date for filing proofs of Interest in any Debtor or otherwise to determine the holders and extent of Allowed Interests in any Debtor;

3.3.29 purchasing and carrying all insurance policies that the Plan Administrator deems reasonably necessary or advisable and to pay all associated insurance premiums and costs;

3.3.30 undertaking all administrative functions remaining in the Chapter 11 Cases to the extent necessary to carry out the Debtors', the Wind-Down Debtor's, or the Plan Administrator's duties under the Plan, including reporting and making required payments of fees to the U.S. Trustee and overseeing the closing of the Chapter 11 Cases;

3.3.31 retaining, terminating, appointing, hiring, or otherwise employees, personnel, management, and directors at any of the Debtors (the "Operators") to the extent necessary to carry out the purposes of this Agreement and the Plan, including, without limitation, to address any disputes between the Debtors;

3.3.32 exercising, implementing, enforcing, and discharging all of the terms, conditions, powers, duties, and other provisions of the Plan, the Confirmation Order, and this Agreement; and

3.3.33 taking all other actions consistent with the provisions of the Plan and this Agreement that the Plan Administrator deems reasonably necessary or desirable to administer the Debtors and the Wind-Down Debtor.

3.4     Exclusive Authority to Pursue Vested Causes of Action. The Plan Administrator shall have the exclusive right, power, and interest to review, reconcile, enforce, collect, compromise, settle, or elect not to pursue the Vested Causes of Action, including, without limitation, the FTX Claims, 3AC Claims, Alameda Claims, and the Contributed Third-Party Claims, on behalf of the Wind-Down Debtor. The Plan Administrator shall be the sole representative of the Estates under Bankruptcy Code section 1123(b)(3) with respect to the Vested Causes of Action. The Wind-Down Debtor shall be vested with and entitled to assert all setoffs and defenses of the Debtors or the Wind-Down Debtor and the Contributed Third-Party Claimants to any counterclaims that may be asserted by any defendant with respect to any Vested Cause of Action or Contributed Third-Party Claim, as applicable. The Wind-Down Debtor shall also be vested with and entitled to assert all of the Debtors' and the Estates' rights with respect to any such counterclaims, under Bankruptcy Code section 558. All costs and expenses of pursuing the Vested Causes of Action and the Contributed Third-Party Claims shall be satisfied first from the Wind-Down Debtor Assets, and all other expenses of the Wind-Down Debtor shall be paid or reserved for, before any proceeds of Vested Causes of Action or Contributed Third-Party Claims are distributed. For the avoidance of doubt, all evidentiary privileges of the Debtors of any type or nature whatsoever, including the Debtors' attorney-client privilege, the work product privilege, and any other applicable evidentiary privileges of the Debtors, shall and shall be deemed to be assigned by the Debtors and shall vest in the Wind-Down Debtor as of the Effective Date.

3.5     Authority to Enter Into Settlement Agreements. The Plan Administrator shall have the exclusive right to enter into settlements regarding the Vested Causes of Action and Contributed Third-Party Claims without requiring court approval, subject to gaining majority approval from the Oversight Committee for any such action in excess of $5,000,000.00.

3.6     Abandonment. If, in the Plan Administrator's reasonable judgment, any non-cash Wind-Down Debtor Assets cannot be sold in a commercially reasonable manner or the Plan Administrator believes in good faith that such property has inconsequential value, the Plan Administrator shall have the right to cause the Wind-Down Debtor to abandon or otherwise dispose of such property, including by donation of such property to a charitable organization.

3.7     Responsibility for Administration of Claims. From and after the Effective Date, the Wind-Down Debtor shall become responsible for administering and paying Distributions to the holders of Allowed Claims and (if applicable) Allowed Interests. The Wind-Down Debtor shall have the exclusive right on behalf of the Debtors to object to the allowance of any Claim or Interest on any ground, to file, withdraw, or litigate to judgment objections to Claims or Interests, to settle or compromise any Disputed Claims or Disputed Interests without any further notice to or action, order, or approval by the Bankruptcy Court, and to assert all defenses of the Debtors and their Estates. The Wind-Down Debtor shall also be entitled to assert all of the Debtors' and the Estates' rights under, without limitation, Bankruptcy Code section 558. The Wind-Down Debtor may also seek estimation of any Claims under and subject to Bankruptcy Code section

502(c). For the avoidance of doubt, any party may object to any Claims or Interests prior to the Claims Objection Bar Date.

3.8    <u>Agents and Professionals</u>. The Plan Administrator may, but shall not be required to, consult with and retain attorneys, financial advisors, accountants, appraisers, and other professionals the Plan Administrator believes have qualifications necessary to assist in the administration of the Wind-Down Debtor, including professionals previously retained by the Debtors or the Committee. For the avoidance of doubt, and without limitation of applicable law, nothing in this Agreement shall limit the Plan Administrator from engaging counsel or other professionals, including the Plan Administrator himself, to do work for the Wind-Down Debtor. The Plan Administrator may pay the reasonable salaries, fees, and expenses of such Persons out of the Wind-Down Debtor Assets in the ordinary course of business.

3.9    <u>Maintenance and Disposition of Wind-Down Debtor's Records</u>. The Plan Administrator shall maintain accurate records of the administration of the Wind-Down Debtor Assets, including receipts and disbursements and other activity of the Wind-Down Debtor. The Wind-Down Debtor may, but has no obligation to, engage a claims agent (including, but not limited to, the Claims, Noticing, and Solicitation Agent) to continue to maintain and update the Claims Register maintained in the Chapter 11 Cases throughout the administration of the Wind-Down Debtor. To the extent of any Unsecured Claims reflected thereon, the Claims Register may serve as the Plan Administrator's register of beneficial interests held by creditors. The Plan Administrator shall be provided with originals or copies of or access to all documents and business records of the Debtors that are in the possession of the Debtors and reasonably necessary for the disposition of the Wind-Down Debtor Assets and objections to Claims or (if applicable) Interests except, in each case, to the extent necessary to: (i) ensure compliance with any applicable law or an order of the Bankruptcy Court; (ii) preserve any applicable privilege (including the attorney-client privilege); or (iii) comply with any contractual confidentiality obligations. The Debtors and the Wind-Down Debtor shall use commercially reasonable efforts to cooperate with the Plan Administrator in connection with the Plan Administrator's investigation and prosecution of Vested Causes of Action, Contributed Third-Party Claims, and objections to Claims and Interests, including with respect to providing evidence and information as reasonably requested by the Plan Administrator. Nothing in the Plan or the Confirmation Order shall affect the obligations of the Debtors, the Wind-Down Debtor, or any transferee or custodian to maintain all books and records that are subject to any governmental subpoena, document preservation letter, or other investigative request from a governmental agency.

3.10    <u>Reporting Requirements</u>. The Plan Administrator shall provide the Oversight Committee the information and reports they may reasonably request concerning the Wind-Down Debtor's administration.

## ARTICLE IV
## DISTRIBUTIONS

4.1    <u>Reserves; Pooling of Reserved Funds</u>. Before any distribution can be made to any holders of Allowed Claims and (if applicable) Allowed Interests, the Plan Administrator shall, in his reasonable discretion, establish reserves in an amount sufficient to meet any and all expenses and liabilities of the Wind-Down Debtor, including attorneys' fees and expenses, the fees and

expenses of other professionals, and fees owed the U.S. Trustee. The Wind-Down Debtor may also maintain as necessary a Disputed Claims Reserve with respect to Claims and (if applicable) Interests required to be administered by the Wind-Down Debtor. For the avoidance of doubt, the Plan Administrator may withhold any distribution pending the Plan Administrator's determination of whether to object to any Claim or Interest. Any such withheld distribution shall become part of the Wind-Down Debtor's Disputed Claims Reserve and shall be distributed to the appropriate claimholder no later than the first Distribution Date after a decision is made not to object to the pertinent Claim or Interest, or the Claim or Interest becomes Allowed. The Plan Administrator need not maintain the Wind-Down Debtor's reserves in segregated bank accounts and may pool funds in the reserves with each other and other funds of the Wind-Down Debtor; *provided*, *however*, that the Wind-Down Debtor shall treat all such reserved funds as being held in a segregated manner in its books and records, by use of book entries, subledgers, or other means of recognizing the separateness of non-consolidated estates, such that the Wind-Down Debtor will be able to account for all distributions under the Plan separately for each Debtor, as expressly contemplated by the Plan.

4.2     Plan Distributions in General. Except as otherwise provided in the Plan, the Distribution Agent shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the applicable register or in the Debtors' records as of the date of any such distribution (as applicable), including the address set forth in any Proof of Claim filed by that Holder.

4.3     Record Date of Distributions. On the Distribution Record Date, the various transfer registers for each Class of Claims or Interests as maintained by the Debtors or their respective agents shall be deemed closed, and there shall be no further changes in the record Holders of any Claims or Interests. The Distribution Agent shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Distribution Record Date. In addition, with respect to payment of any Cure amounts or disputes over any Cure amounts, neither the Debtors nor the Distribution Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the Effective Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure amount.

4.4     Tax Identification Numbers. The Plan Administrator may require any creditor to furnish its taxpayer identification number as assigned by the Internal Revenue Service, including without limitation by providing an executed current Form W-9, Form W-8 or similar tax form, as a prerequisite to receiving any distribution under the Plan or this Agreement. If a creditor does not timely provide the Plan Administrator with its taxpayer identification number in the manner and by the deadline established by the Plan Administrator and/or the Plan, the creditor shall be deemed to have forfeited its right to any current, reserved or future distributions provided for under the Plan and such creditor's Claim or Interest shall be disallowed and expunged without further order of the Bankruptcy Court. Any such forfeited distribution shall be deemed to have reverted back to the Wind-Down Debtor for all purposes, including for distributions to other holders of Allowed Claims or Allowed Interests (as applicable) against the particular Debtor in respect of which the forfeited distribution was made, notwithstanding any federal, provincial or state escheat, abandoned or unclaimed property law to the contrary.

4.5    Unclaimed and Undeliverable Distributions. If any distribution to a creditor is returned to the Plan Administrator as undeliverable and/or otherwise remains unclaimed, the Plan Administrator shall use reasonable efforts to contact such creditors, *provided* that no further Plan Distributions to such creditor shall be made unless and until the Plan Administrator has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided, further*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the applicable Distribution Date. A distribution shall be deemed unclaimed if a Holder has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Wind-Down Debtor of an intent to accept a particular distribution; (c) responded to the Wind-Down Debtor's requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

> After the passage of the deadlines set forth in Article VI.C(6) of the Plan, such distribution shall be deemed unclaimed property under Bankruptcy Code section 347(b) and all title to and beneficial interest in such undeliverable Distribution shall revert to or remain in the Wind-Down Debtor automatically and without any need for further order by the Bankruptcy Court, notwithstanding any federal, provincial or state escheat, abandoned or unclaimed property laws to the contrary, and shall be distributed in accordance with this Article IV and the Plan. For the avoidance of doubt, undeliverable or unclaimed Plan distributions shall be administered in accordance with this Article IV as supplemented hereby.

4.6    No Responsibility to Attempt to Locate Creditors. The Plan Administrator may, in his sole discretion, attempt to determine a creditor's current address or otherwise locate a creditor, but nothing in this Agreement or the Plan shall require the Plan Administrator to do so.

4.7    Disallowance of Claims and Interests; Cancellation of Corresponding Beneficial Interests. All Claims in respect of undeliverable or unclaimed Distributions that have been deemed to have reverted back to the Plan Administrator for all purposes (including, but not limited to, for distribution to holders of other Allowed Claims or Allowed Interests, as applicable, against the particular Debtor in respect of which the unclaimed or undeliverable distribution was made) pursuant to Article VI of the Plan shall be deemed disallowed and expunged without further action by the Wind-Down Debtor or Plan Administrator and without further order of the Bankruptcy Court, and the corresponding interests of any creditor holding such disallowed Claims or Interests shall be deemed canceled. The creditor with respect to any such disallowed Claim or Interest shall no longer have any right, claim, or interest in or to any distributions in respect of such Claim or Interest, and further, such creditor is forever barred, estopped, and enjoined from receiving any distributions under the Plan or this Agreement and from asserting such disallowed Claim or Interest against the Wind-Down Debtor or Plan Administrator.

4.8     Inapplicability of Escheat, Abandoned, or Unclaimed Property Laws.  Unclaimed property held by the Wind-Down Debtor shall not be subject to the escheat, abandoned or unclaimed property laws of the United States, any state, any local or any foreign governmental unit.

4.9     Delivery of Distributions.  Subject to the terms of this Agreement, the Plan Administrator shall cause the Wind-Down Debtor to make Distributions to creditors in the manner provided in the Plan.

## ARTICLE V
## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

5.1     Parties Dealing With the Plan Administrator. In the absence of actual knowledge to the contrary, any Person dealing with the Wind-Down Debtor or the Plan Administrator shall be entitled to rely on the authority of the Plan Administrator or any of the Plan Administrator's agents to act in connection with the Wind-Down Debtor Assets. There is no obligation of any Person dealing with the Plan Administrator to inquire into the validity or expediency or propriety of any transaction by the Plan Administrator or any agent of the Plan Administrator.

5.2     Limitation of Plan Administrator, Independent Directors and Oversight Committee Liability. In exercising the rights granted herein, the Plan Administrator shall exercise the Plan Administrator's best judgment with respect to the affairs of the Wind-Down Debtor and the interests of creditors. However, notwithstanding anything herein to the contrary, neither the Plan Administrator, the Independent Directors, nor any Operator, nor any member of the Oversight Committee, nor any of their respective firms, companies, affiliates, partners, officers, directors, members, employees, designees, professionals, advisors, attorneys, representatives, disbursing agents, or agents, and any of such Person's successors and assigns, shall incur any responsibility or liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with this Agreement, including with respect to any intercreditor or other issues that may arise as a result of the non-consolidation of Estates under the Plan, whether sounding in tort, contract, or otherwise, except for fraud, gross negligence, or willful misconduct that is found by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered by the Wind-Down Debtor. In no event shall the Plan Administrator, any Independent Director, any Operator, or any member of the Oversight Committee be liable for indirect, punitive, special, incidental, or consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Plan Administrator, the Independent Directors, any Operator, or the Oversight Committee has been informed of the likelihood of such loss or damages and regardless of the form of action. Without limiting the foregoing, the Plan Administrator and, the Independent Directors and the Operators shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in Article IV of the Plan, and the Plan Administrator, the Independent Directors, the Operators and the Oversight Committee shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in the Confirmation Order.

5.3     No Liability for Acts of Other Persons. None of the Persons identified in the immediately preceding section 5.2 of this Agreement shall be liable for the act or omission of any other Person identified in that section.

5.4     No Liability for Acts of Predecessors. No successor Plan Administrator shall be in any way responsible for the acts or omissions of any Plan Administrator in office prior to the date on which such successor becomes the Plan Administrator, unless a successor Plan Administrator expressly assumes such responsibility.

5.5     No Liability for Good Faith Error of Judgment. Neither the Plan Administrator nor the Independent Directors nor any Operator shall be liable for any error of judgment made in good faith, unless it shall be finally determined by a final judgment of a court of competent jurisdiction (not subject to further appeal or review) that the Plan Administrator or, any Independent Director or any Operator, as applicable, was grossly negligent in ascertaining the pertinent facts.

5.6     Reliance on Documents and Advice of Counsel or Other Persons. Except as otherwise provided herein, the Plan Administrator and, the Independent Directors and the Operators may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties. The Plan Administrator and, the Independent Directors and the Operators may engage and consult with their respective legal counsel and other agents and advisors, and shall not be liable for any action taken, omitted, or suffered in reliance upon the advice of such counsel, agents, or advisors.

5.7     No Liability For Acts Approved by Bankruptcy Court. The Plan Administrator shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Wind-Down Debtor. The Plan Administrator and, the Independent Directors and the Operators shall not be liable for any act or omission that has been approved by the Bankruptcy Court, and all such actions or omissions shall conclusively be deemed not to constitute fraud, gross negligence, or willful misconduct.

5.8     No Personal Obligation for Wind-Down Debtor's Liabilities. Persons dealing with the Plan Administrator shall have recourse only to the Wind-Down Debtor Assets to satisfy any liability incurred by the Plan Administrator to any such Person in carrying out the terms of this Agreement, and the Plan Administrator shall have no personal, individual obligation to satisfy any such liability.

5.9     Indemnification. The Plan Administrator, the Independent Directors, the Operators and the Oversight Committee, and their respective consultants, agents, attorneys, accountants, financial advisors, estates, employees, officers, directors, principals, professionals, and other representatives, each in their representative capacity as such, and any of such Person's successors and assigns (collectively, the "Indemnified Parties" and each, an "Indemnified Party") shall, to the fullest extent permitted by applicable law, be defended, held harmless, and indemnified by the Wind-Down Debtor from time to time and receive reimbursement from and against any and all loss, liability, expense (including counsel fees), or damage of any kind, type

13

or nature, whether sounding in tort, contract, or otherwise, that the Indemnified Parties may incur or sustain in connection with the exercise or performance of any of the Wind-Down Debtor's, the Plan Administrator's, each Independent Director's, each Operator's or the Oversight Committee's respective powers and duties under this Agreement or in rendering services by the Indemnified Party to the Wind-Down Debtor or the Plan Administrator, including, without limitation, the costs of counsel or others in investigating, preparing, defending, or settling any action or claim (whether or not litigation has been initiated against the Indemnified Party) or in enforcing this Agreement (including its indemnification provisions), except if such loss, liability, expense, or damage is finally determined by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to result directly and primarily from the fraud, gross negligence, or willful misconduct of the Indemnified Party asserting this provision.

5.9.1    Expense of Wind-Down Debtor; Limitation on Source of Payment of Indemnification. All indemnification liabilities of the Wind-Down Debtor under this section 5.9 shall be expenses of the Wind-Down Debtor. The amounts necessary for such indemnification and reimbursement shall be paid by the Wind-Down Debtor out of the available Wind-Down Debtor Assets after reserving for all other actual and anticipated expenses and liabilities of the Wind-Down Debtor. Neither the Plan Administrator, the Independent Directors, the Operators, nor the Oversight Committee or its members shall be personally liable for the payment of any Wind-Down Debtor's expense or claim or other liability of the Wind-Down Debtor, and no Person shall look to the Plan Administrator, the Independent Directors, the Operators, the Oversight Committee, or other Indemnified Parties personally for the payment of any such expense or liability.

5.9.2    Procedure for Current Payment of Indemnified Expenses; Undertaking to Repay. The Wind-Down Debtor shall promptly pay an Indemnified Party all amounts subject to indemnification under this section 5.9 on submission of invoices for such amounts by the Indemnified Party. By accepting any indemnification payment, the Indemnified Party undertakes to repay such amount promptly if it is determined that the Indemnified Party is not entitled to be indemnified under this Agreement. The Bankruptcy Court shall hear and finally determine any dispute arising out of this section 5.9.

5.10    No Implied Obligations. The Plan Administrator shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the Plan Administrator.

5.11    Confirmation of Survival of Provisions. Without limitation in any way of any provision of this Agreement, the provisions of this Article V shall survive the death, dissolution, liquidation, incapacity, resignation, replacement, or removal, as may be applicable, of the Plan Administrator, or the termination of the Wind-Down Debtor or this Agreement, and shall inure to the benefit of the Plan Administrator's and the Indemnified Parties' heirs and assigns.

## ARTICLE VI
## OVERSIGHT COMMITTEE

6.1    Appointment, Composition, and Governance of Oversight Committee. As provided for in Article IV of the Plan, the Oversight Committee shall consist of those initial

members identified on **Exhibit A** hereto. In the event that a member of the Oversight Committee resigns, the Plan Administrator may appoint a new member, subject to the unanimous approval of the remaining members of the Oversight Committee. If, in the future, the Oversight Committee consists of greater than three members, then upon the resignation of an Oversight Committee member, only majority consent of the remaining members shall be necessary. If (A) there are two remaining members and unanimous consent is not obtained or (B) there are three or more remaining members and a majority of the remaining members do not consent, the members may, upon motion, request that the Bankruptcy Court determine the matter. Notwithstanding the foregoing, in the event that fewer than three persons are willing to serve on the Oversight Committee or there shall have been fewer than three (3) Oversight Committee members for a period of thirty (30) consecutive days, then during such vacancy all references to the Oversight Committee's ongoing rights and duties in the Plan, this Agreement, and the Confirmation Order will require the Oversight Committee's unanimous consent.

6.2     Resignation of Oversight Committee Members. Any member of the Oversight Committee may resign upon reasonable notice to the Plan Administrator, counsel for the Plan Administrator, and other members of the Oversight Committee. Sixty (60) days' prior written notice shall constitute reasonable notice under this Section 6.2. Pursuant to Section 6.1 of this Agreement, during the sixty-day notice period, the Plan Administrator will seek a replacement for the position on the Oversight Committee that will begin their duties under this Agreement immediately following resignation or replacement of the previous member. Any member of the Oversight Committee may be removed by the Bankruptcy Court for cause or inactivity. The Oversight Committee may authorize its own dissolution by filing with the Bankruptcy Court an appropriate notice that its responsibilities under the Plan have concluded.

6.3     Fiduciary Duties. Members of the Oversight Committee shall have fiduciary duties to creditors in the same manner that members of an official committee of creditors appointed pursuant to Bankruptcy Code section 1102 have fiduciary duties to the constituents represented by such a committee, and shall be entitled to indemnification from the Wind-Down Debtor in the same manner as the Plan Administrator for service as members of the Oversight Committee from and after the Effective Date of the Plan under or in connection with this Agreement.

6.4     Limitations on Plan Administrator's Actions. The Plan Administrator shall obtain the approval of the Oversight Committee by at least a majority vote prior to taking any action regarding the administration, reconciliation, objection to, compromise, resolution, settlement, or litigation of any Claim (as determined by the Plan Administrator in his sole discretion) where the asserted Claim exceeds $5,000,000.00.

6.5     Payment of Fees and Expenses. The Plan Administrator shall pay from the Wind-Down Debtor Assets the reasonable out-of-pocket expenses of the members of the Oversight Committee incurred solely in connection with their role as an Oversight Committee member, and not in their individual capacity. For the avoidance of doubt, attorneys' fees incurred by an Oversight Committee member, including, but not limited to, attendance at any meetings of the Oversight Committee shall not be paid out of the Wind-Down Debtor Assets pursuant to this

section 6.5. The Bankruptcy Court shall hear and finally determine any dispute arising out of this section 6.5.

## ARTICLE VII
## REMOVAL, REPLACEMENT
## AND COMPENSATION OF PLAN ADMINISTRATOR

7.1     Initial Plan Administrator. The Initial Plan Administrator shall be Paul R. Hage. The Plan Administrator shall be approved in the Confirmation Order, and the Plan Administrator's duties shall commence as of the Effective Date.

7.2     Term of Service. The Plan Administrator shall serve until: (a) the completion of the administration of the Wind-Down Debtor Assets and the Wind-Down Debtor, including the winding down of the Debtors and the Wind-Down Debtor, in accordance with this Agreement and the Plan; (b) the termination of the Wind-Down Debtor in accordance with the terms of this Agreement and the Plan; or (c) the Plan Administrator's resignation, death, dissolution, incapacity, liquidation, or removal. In the event that the Plan Administrator's appointment terminates by reason of resignation, death, dissolution, incapacity, liquidation, or removal, the Plan Administrator shall be immediately compensated for all reasonable fees and expenses accrued but unpaid through the effective date of termination, whether or not previously invoiced. The provisions of Article V of this Agreement shall survive the resignation or removal of any Plan Administrator.

7.3     Removal of Plan Administrator for Cause: The Oversight Committee may seek to remove the Plan Administrator for cause by filing a motion (the "Removal Motion") with the Bankruptcy Court upon not less than thirty (30) days' prior written notice to the Plan Administrator. For purposes of this agreement, "cause" means

7.3.1   arrest or conviction (or plea of guilty or nolo contendere) of the Plan Administrator for any felony, or any other crime involving dishonesty or moral turpitude;

7.3.2   a finding by the Oversight Committee that the Plan Administrator engaged in willful misconduct, or was grossly negligent, in the performance of its duties;

7.3.3   a determination, in good faith, by the Oversight Committee that the Plan Administrator is not acting in the best interest of the creditors; or

7.3.4   a determination, in good faith, by the Oversight Committee that the Plan Administrator has a material and direct conflict of interest, not previously disclosed or specifically waived in advance by the Wind-Down Debtor.

7.4     Resignation of Plan Administrator. The Plan Administrator may resign at any time upon no less than sixty (60) days' prior written notice to the Oversight Committee. The resignation shall be effective on the later of (i) the date specified in the notice of resignation and (ii) the date that is sixty days (60) after the date such notice is delivered to the Oversight Committee members. In the event of a resignation, the resigning Plan Administrator shall render

to the Oversight Committee a full and complete accounting of monies and assets received, disbursed, and held during the term of office of such Plan Administrator.

7.5    Appointment of Successor Plan Administrator. Upon the resignation, death, or removal of the Plan Administrator, the Oversight Committee shall appoint a successor. In the event the Oversight Committee does not seek the appointment of a successor Plan Administrator, the Bankruptcy Court may do so on its own motion. Any successor Plan Administrator so appointed (a) shall consent to and accept his, her, or its appointment as successor Plan Administrator, which may be done by e-mail or through acquiescence in not objecting to a motion for approval of his, her, or its appointment as successor Plan Administrator and (b) shall not have any liability or responsibility for the acts or omissions of any predecessor(s).

7.6    Powers and Duties of Successor Plan Administrator. A successor Plan Administrator shall have all the rights, privileges, powers, and duties of his, her, or its predecessor under this Agreement, the Plan, and Confirmation Order.

7.7    Compensation of Plan Administrator and Costs of Administration. The Plan Administrator shall receive fair and reasonable compensation for his services in accordance with the terms and conditions of the Plan, which shall be a charge against and paid out of the Wind-Down Debtor Assets. All costs, expenses, and obligations incurred by the Plan Administrator (or professionals who may be employed by the Plan Administrator in administering the Wind-Down Debtor, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid by the Wind-Down Debtor from the Wind-Down Debtor Assets prior to any distribution to holders of Allowed Claims or Allowed Interests. The terms of the compensation of the Plan Administrator are set forth on **Exhibit B** hereto. The Oversight Committee may modify the Plan Administrator's compensation as agreed to by a majority vote.

## ARTICLE VIII
## CLOSING OF THE CHAPTER 11 CASES

8.1    Termination. When each of the following have occurred or will have occurred by the hearing on a motion to close the Chapter 11 Cases, the Plan Administrator shall promptly seek authority from the Bankruptcy Court to close the Chapter 11 Cases for each of the Wind-Down Estates in accordance with the Bankruptcy Code and the Bankruptcy Rules: (a) all Claims against the Wind-Down Estates entitled to payment under the Plan (i) have been satisfied in accordance with the Plan or (ii) have been disallowed by Final Order; (b) all assets have been liquidated and converted into Cash (other than those assets abandoned by the Wind-Down Estates in the Plan Administrator's sole discretion), and such Cash has been distributed in accordance with the Plan; and (c) all wind-down costs and expenses have been paid in full in Cash. Notwithstanding the foregoing, the Plan Administrator may seek authority from the Bankruptcy Court to close the Chapter 11 Cases of the Debtors individually, prior to the requirements above being met with respect to all of the Debtors' Chapter 11 Cases, and may seek to close the Chapter 11 Cases in the event the Debtors lack sufficient funding for further administration. Subject to further order of the Court, this Agreement shall terminate when the

Bankruptcy Court enters a final decree contemplated by Bankruptcy Code section 350 and Bankruptcy Rule 3022 closing the Debtors' Chapter 11 Cases with respect to each Debtor.

8.2    <u>Winding Up, Discharge, and Release of the Plan Administrator, Independent Directors and Oversight Committee</u>. For the purposes of winding up the affairs of the Debtors and/or the Wind-Down Debtor, as applicable, the Plan Administrator shall continue to act as Plan Administrator and the Oversight Committee and Independent Directors shall continue their duties under this Agreement until such duties have been fully discharged or their role as Plan Administrator, Independent Directors, and/or on the Oversight Committee are otherwise terminated under this Agreement and the Plan. Upon a motion or notice by the Plan Administrator, Independent Directors, and/or the Oversight Committee, the Bankruptcy Court may enter an order relieving the Plan Administrator, Independent Directors, and/or Oversight Committee, its members, agents, and employees of any further duties and discharging and releasing the Plan Administrator, Independent Directors, and/or the Oversight Committee.

## ARTICLE IX
## MISCELLANEOUS

9.1    <u>Cumulative Rights and Remedies</u>. The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

9.2    <u>Notices</u>. All notices to be given to creditors may be given by electronic mail, first class mail, or may be delivered personally, at the addresses for such creditors appearing on the books kept by the Plan Administrator. Any notice or other communication that may be or is required to be given, served, or sent to the Plan Administrator shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

> If to the Plan Administrator:
> Paul R. Hage, Plan Administrator
> 27777 Franklin Rd.
> Suite 2500
> Southfield, Michigan 48034
> Email: phage@taftlaw.com
>
> with a copy to counsel:
> [                              ]

or to such other address as may from time to time be provided in written notice by the Plan Administrator.

9.3    <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York.

9.4     Successors and Assigns. This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

9.5     Particular Words. Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement. The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

9.6     Execution. All funds in the Wind-Down Debtor shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a creditor, and no creditor or any other Person can execute upon, garnish or attach the Wind-Down Debtor Assets or the Plan Administrator in any manner or compel payment from the Wind-Down Debtor except by Final Order of the Bankruptcy Court. Payments will be solely governed by the Plan and this Agreement.

9.7     Amendment. This Agreement may be amended by written agreement of the Plan Administrator and the Oversight Committee or by order of the Bankruptcy Court; *provided*, *however*, that such amendment may not be inconsistent with the Plan or the Confirmation Order.

9.8     No Waiver. No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

9.9     No Relationship Created. Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership or joint venture of any kind.

9.10     Severability. If any term, provision covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

9.11     Further Assurances. The Parties agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes and provide for the full implementation of this Agreement and the pertinent provisions of the Plan, and to consummate the transactions contemplated hereby.

9.12     Counterparts. This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

9.13     Jurisdiction. The Bankruptcy Court shall have jurisdiction regarding the Debtors, the Wind-Down Debtor, the Plan Administrator, the Oversight Committee, and the Wind-Down Debtor Assets, including, without limitation, the determination of all disputes arising out of or related to administration of the Wind-Down Debtor. The Bankruptcy Court shall have continuing jurisdiction and venue to hear and finally determine all disputes and related matters among the Parties arising out of or related to this Agreement or the administration of the Wind-Down

Debtor. The Parties expressly consent to the Bankruptcy Court hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Agreement, the provisions of this Agreement shall have no effect on and shall not control, limit or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.

\* \* \* \* \*

IN WITNESS WHEREOF, the Parties have or are deemed to have executed this Agreement as of the day and year written above.

Voyager Digital Holdings, Inc.

By:_____

Name:_____

Title:_____

Voyager Digital Ltd.

By:_____

Name:_____

Title:_____

Voyager Digital Holdings, LLC

By: _____

Name_____

Title:_____

Paul Hage, as Plan Administrator

By: _____

Name_____

Title:_____

## EXHIBIT A

### Oversight Committee Members

## **Oversight Committee Members**

1. Richard Kiss

2. Russell Stewart

3. Melissa Freeman

# **EXHIBIT B**

**Plan Administrator Compensation**

**Plan Administrator Compensation**

| Plan Administrator | Compensation |
|---|---|
| Paul R. Hage | $500 per hour for professional services rendered, plus reimbursement of reasonable and documented out-of-pocket fees, costs, and expenses. This hourly rate is subject to annual rate increases to reflect economic and other conditions. |