Joshua A. Sussberg, P.C.
Christopher Marcus, P.C.
Christine A. Okike, P.C.
Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | ) | Case No. 22-10943 (MEW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF FILING OF NINTH AMENDED PLAN SUPPLEMENT

**PLEASE TAKE NOTICE THAT** on March 10, 2023, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an *Amended Order (I) Approving the Second Amended Disclosure Statement and (II) Confirming the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1166] (the "Confirmation Order").[2]

**PLEASE TAKE FURTHER NOTICE THAT** on February 1, 2023, the above-captioned debtors and debtors-in-possession (the "Debtors") filed the *Notice of Filing of Plan Supplement* [Docket No. 943].

**PLEASE TAKE FURTHER NOTICE THAT** on February 8, 2023, the Debtors filed the *Notice of Filing of First Amended Plan Supplement* [Docket No. 986].

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2] Capitalized terms not otherwise defined herein shall have the meaning given to them in the Plan or Confirmation Order, as applicable.

**PLEASE TAKE FURTHER NOTICE THAT** on February 15, 2023, the Debtors filed the *Notice of Filing of Second Amended Plan Supplement* [Docket No. 1006] (the "Second Amended Plan Supplement").

**PLEASE TAKE FURTHER NOTICE THAT** on February 21, 2023, the Debtors filed the *Notice of Filing of Third Amended Plan Supplement* [Docket No. 1035].

**PLEASE TAKE FURTHER NOTICE THAT** on February 28, 2023, the Debtors filed the *Notice of Filing of Fourth Amended Plan Supplement* [Docket No. 1115].

**PLEASE TAKE FURTHER NOTICE THAT** on March 6, 2023, the Debtors filed the *Notice of Filing of Fifth Amended Plan Supplement* [Docket No. 1143].

**PLEASE TAKE FURTHER NOTICE THAT** on March 7, 2023, the Debtors filed the *Notice of Filing of Revised Fifth Amended Plan Supplement* [Docket No. 1149].

**PLEASE TAKE FURTHER NOTICE THAT** on March 9, 2023, the Debtors filed the *Notice of Filing of Sixth Amended Plan Supplement* [Docket No. 1161].

**PLEASE TAKE FURTHER NOTICE THAT** on March 27, 2023, the Debtors filed the *Notice of Filing of Seventh Amended Plan Supplement* [Docket No. 1233].

**PLEASE TAKE FURTHER NOTICE THAT** on April 20, 2023, the Debtors filed the *Notice of Filing of Eighth Amended Plan Supplement* [Docket No. 1323].

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors hereby file this ninth amended plan supplement (the "Ninth Amended Plan Supplement").

**PLEASE TAKE FURTHER NOTICE THAT** as contemplated by the Plan, the Ninth Amended Plan Supplement includes the following documents:

| Exhibit | Description |
|---------|-------------|
| D | Restructuring Transactions Memorandum |
| F-1 | Redline of **Exhibit D** to Exhibit D of the Second Amended Plan Supplement |

**PLEASE TAKE FURTHER NOTICE THAT** the documents contained in the Ninth Amended Plan Supplement are integral to, and are considered part of, the Plan. The documents contained in the Ninth Amended Plan Supplement are approved by the Court pursuant to the Confirmation Order.

**PLEASE TAKE FURTHER NOTICE THAT** certain documents, or portions thereof, contained in the Ninth Amended Plan Supplement remain subject to ongoing review, revision, and further negotiation among the Debtors and interested parties with respect thereto. The Debtors reserve the right to alter, amend, modify, or supplement any document in the Ninth Amended Plan

Supplement in accordance with the Plan at any time before the Effective Date of the Plan or any such other date as may be provided for by the Plan or by order of the Court.

**PLEASE TAKE FURTHER NOTICE THAT** copies of the the Confirmation Order, and other pleadings filed in these chapter 11 cases are available free of charge by visiting the website of Stretto at http://www.cases.stretto.com/Voyager.  You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov/ in accordance with the procedures and fees set forth therein.

Dated:  May 19, 2023          */s/ Joshua A. Sussberg*
New York, New York            **KIRKLAND & ELLIS LLP**
                              **KIRKLAND & ELLIS INTERNATIONAL LLP**
                              Joshua A. Sussberg, P.C.
                              Christopher Marcus, P.C.
                              Christine A. Okike, P.C.
                              Allyson B. Smith (admitted *pro hac vice*)
                              601 Lexington Avenue
                              New York, New York 10022
                              Telephone:    (212) 446-4800
                              Facsimile:    (212) 446-4900
                              Email:        jsussberg@kirkland.com
                                            cmarcus@kirkland.com
                                            christine.okike@kirkland.com
                                            allyson.smith@kirkland.com

                              *Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit D</u>**

**Restructuring Transactions Memorandum**

## Restructuring Transactions Memorandum

In accordance with the Plan, the steps set forth in this Restructuring Transactions Memorandum[1] remain subject to modification until the Effective Date.

Unless otherwise set forth below, the following steps shall occur in the order set forth below.

1.  On and after the Effective Date, with respect to a Holder of an Account Holder Claim who, in accordance with the Plan, chooses to withdraw its Pro Rata share of Distributable Cryptocurrency through the Voyager Platform, OpCo shall be deemed to make an in-kind distribution to such Holder of such Distributable Cryptocurrency in proportionate satisfaction of such Person's Account Holder Claim.

2.  Intercompany Claims shall be addressed in all events consistent with the terms of any settlement between TopCo, HoldCo and/or Opco on account of the Intercompany Claims and otherwise as set forth in the books and records of the Debtors.

3.  As soon as practicable following the later of (a) the Effective Date, and (b) the earliest date on which: (i) the Ontario Superior Court of Justice (Commercial List) enters an order recognizing and giving effect in Canada to the Confirmation Order (the "Plan Confirmation Recognition Order") ein the proceedings in respect of TopCo under Part IV of the *Companies' Creditors Arrangement Act*, which Plan Confirmation Order includes provisions required to effect the share redemption, cancellation and issuance addressed below (the "Share Cancellation and Issuance Provisions"); or (ii) another court of competent jurisdiction as may be required under applicable law enters an order including the Share Cancellation and Issuance Provisions; all issued and outstanding shares in the capital of TopCo shall be redeemed for cancellation and cancelled (the persons who held such shares, the "Prior Shareholders") and a single common share shall thereafter be issued to the Plan Administrator to be held by the Plan Administrator for the sole benefit of the Prior Shareholders. Such transactions shall occur pursuant to the Plan, the Confirmation Order and the Plan Confirmation Recognition Order in the following manner and order:  (X) first, the articles of TopCo shall be amended and altered to vary the special rights and restrictions contained therein (the "Articles Amendment") and by the filing of a notice of alteration with the Registrar of Companies for British Columbia to permit the redemption by TopCo for cancellation of all common shares and Variable Voting shares (collectively, the "Shares") in the capital of TopCo at a redemption price of $0.0001 per Share (the "Initial Redemption Price"), and to provide that TopCo shall not be required to issue payment of the Initial Redemption Price to any registered holder of Shares unless the aggregate Initial Redemption Price payable to such registered holder exceeds $20,000.0000; *provided* that, for the avoidance of doubt, holders whose shares are cancelled will also be entitled to receive the amount of any distribution, if any, to which such holder may be entitled in the future under the Plan; (Y) second, the Shares shall be redeemed and cancelled in accordance with the Articles Amendment, and (Z) third, TopCo shall issue one common share to the Plan Administrator (for the sole benefit of the Prior Shareholders) from treasury such that the Plan Administrator shall upon such issuance be the sole shareholder (for the sole benefit of the Prior Shareholders) of TopCo.

4.  The Debtors shall make other distributions on the Effective Date pursuant to the Plan.

---

[1] Capitalized terms that are not defined herein shall have the meaning ascribed to them in the Plan or Disclosure Statement, as the case may be.

5.   On or after the Effective Date, certain Wind-Down Debtor Assets may be transferred to an entity treated as a corporation for U.S. federal income tax purposes, the equity interests of which are thereafter distributed by the Wind-Down Debtor (or its Affiliate) to applicable Holders pursuant to the Plan in respect of Claims, as reflected on the books and records of the Wind-Down Debtor.

*[Remainder of page intentionally left blank.]*

**Exhibit D-1**

**Redline of <u>Exhibit D</u> to <u>Exhibit D</u> of the Second Amended Plan Supplement**

## ~~Exhibit D~~

### Restructuring Transactions Memorandum

In accordance with the Plan, the steps set forth in this Restructuring Transactions Memorandum[1] remain subject to modification until the Effective Date. ~~The following assumes that the Sale Transaction is consummated by the Outside Date. If the Sale Transaction is not consummated by the Outside Date or the Asset Purchase Agreement (the "APA") is terminated, a materially different Restructuring Transactions Memorandum will be filed.~~

Unless otherwise set forth below, the following steps shall occur in the order set forth below.

~~1. Prior to the Effective Date, including in connection with the Rebalancing Exercise (as defined in the APA), Voyager Digital, LLC, a Delaware limited liability company ("Seller") may transfer Cryptocurrency to BAM Trading Services Inc. d/b/a Binance.us, a Delaware corporation ("Purchaser") or an Affiliate thereof or another third party as permitted or required by the APA (any such transferee, a "Step 1 Transferee"); provided, any such transfer by Seller to a Step 1 Transferee (including pursuant to Section 6.11(b) or 6.12(e) of the APA) shall be made in a manner such that legal title of the transferred Cryptocurrency does not pass to a Step 1 Transferee and without a Step 1 Transferee acquiring any ownership interest in such transferred Cryptocurrency, and any Step 1 Transferee shall hold or utilize, as applicable, any such Cryptocurrency solely for the specific purpose that Seller transferred such Cryptocurrency to such Step 1 Transferee pursuant to the APA.~~

~~2. [HoldCo] is designated as the Wind-Down Debtor[, and no Wind-Down Trust will be established].~~

~~3. On the Effective Date (and, for the avoidance of doubt, following the Rebalancing Exercise (as defined in the APA)), with respect to Holders of Account Holder Claims who are entitled to receive Net Owed Coins pursuant to the Plan and the APA on the Effective Date, Seller shall to the maximum extent possible (and for such purpose, proportionately across such Holders of Account Holder Claims) be deemed to make an in-kind distribution, from the fraction of Acquired Coins (as defined in the APA) attributable to such Holders of Account Holder Claims on such date, to such Holders of Account Holder Claims of the same type of Cryptocurrency in each such Person's account on the Voyager Platform (as defined in the APA) as of the Petition Date, in each case,~~ in proportionate satisfaction of such Person's ~~Account Holder Claim, and immediately thereafter each such~~ Holder of an Account Holder ~~Claim shall be deemed to transfer such Cryptocurrency that it received to Purchaser or Purchaser's applicable Affiliate in a manner consistent with the APA. To the extent that any of the Cryptocurrency that is deemed transferred in this Step 3 is held by a Step 1 Transferee for the benefit of Seller, such Step 1 Transferee shall be deemed to transfer such Cryptocurrency back to Seller immediately prior to Seller's deemed transfer of such Cryptocurrency to the applicable Holder of an Account Holder Claim.~~

---

[1] Capitalized terms that are not defined herein shall have the meaning ascribed to them in the Plan or Disclosure Statement, as the case may be.

1. ~~4.~~ [On and after the Effective Date, ~~in redemption of all of the stock of TopCo pursuant to a plan (and in complete liquidation of TopCo pursuant to a plan), Existing Equity Interests shall be cancelled and Holders of Existing Equity Interests shall receive the entitlement to payments from the Wind-Down Debtor of their Pro Rata share of Wind-Down Trust Assets as determined pursuant to the Plan.  For the avoidance of doubt, Voyager Digital Ltd. shall continue to exist with no new equity being issued or held by any party.]~~ with respect to a Holder of an Account Holder Claim who, in accordance with the Plan, chooses to withdraw its Pro Rata share of Distributable Cryptocurrency through the Voyager Platform, OpCo shall be deemed to make an in-kind distribution to such Holder of such Distributable Cryptocurrency in proportionate satisfaction of such Person's Account Holder Claim.

2. Intercompany Claims shall be addressed in all events consistent with the terms of any settlement between TopCo, HoldCo and/or Opco on account of the Intercompany Claims and otherwise as set forth in the books and records of the Debtors.

3. As soon as practicable following the later of (a) the Effective Date, and (b) the earliest date on which: (i) the Ontario Superior Court of Justice (Commercial List) enters an order recognizing and giving effect in Canada to the Confirmation Order (the "Plan Confirmation Recognition Order") e in the proceedings in respect of TopCo under Part IV of the *Companies' Creditors Arrangement Act*, which Plan Confirmation Order includes provisions required to effect the share redemption, cancellation and issuance addressed below (the "Share Cancellation and Issuance Provisions"); or (ii) another court of competent jurisdiction as may be required under applicable law enters an order including the Share Cancellation and Issuance Provisions; all issued and outstanding shares in the capital of TopCo shall be redeemed for cancellation and cancelled (the persons who held such shares, the "Prior Shareholders") and a single common share shall thereafter be issued to the Plan Administrator to be held by the Plan Administrator for the sole benefit of the Prior Shareholders. Such transactions shall occur pursuant to the Plan, the Confirmation Order and the Plan Confirmation Recognition Order in the following manner and order:  (X) first, the articles of TopCo shall be amended and altered to vary the special rights and restrictions contained therein (the "Articles Amendment") and by the filing of a notice of alteration with the Registrar of Companies for British Columbia to permit the redemption by TopCo for cancellation of all common shares and Variable Voting shares (collectively, the "Shares") in the capital of TopCo at a redemption price of $0.0001 per Share (the "Initial Redemption Price"), and to provide that TopCo shall not be required to issue payment of the Initial Redemption Price to any registered holder of Shares unless the aggregate Initial Redemption Price payable to such registered holder exceeds $20,000.0000; *provided* that, for the avoidance of doubt, holders whose shares are cancelled will also be entitled to receive the amount of any distribution, if any, to which such holder may be entitled in the future under the Plan; (Y) second, the Shares shall be redeemed and cancelled in accordance with the Articles Amendment, and (Z) third, TopCo shall issue one common share to the Plan Administrator (for the sole benefit of the Prior Shareholders) from treasury such that the Plan Administrator shall upon such issuance be the sole shareholder (for the sole benefit of the Prior Shareholders) of TopCo.

4. ~~5.~~ The Debtors shall make other distributions on the Effective Date pursuant to the Plan.

5. On or after the Effective Date, certain Wind-Down Debtor Assets may be transferred to an entity treated as a corporation for U.S. federal income tax purposes, the equity interests of which are thereafter distributed by the Wind-Down Debtor (or its Affiliate) to applicable Holders pursuant to the Plan in respect of Claims, as reflected on the books and records of the Wind-Down Debtor.

[*Remainder of page intentionally left blank.*]

6. If Seller delivers any Delayed Acquired Coins (as defined in the APA) to Purchaser or an applicable Affiliate (a "Step 6 Transferee") for such person to convert into United States Dollars, and such Step 6 Transferee thereafter returns such United States Dollars to Seller for Seller to distribute in accordance with the Plan, all pursuant to Section 6.12(a) of the APA, then the delivery of such Delayed Acquired Coins by Seller shall be made in a manner such that legal title of such Delayed Acquired Coins does not pass to a Step 6 Transferee and without a Step 6 Transferee acquiring any ownership interest in such Cryptocurrency, and any Step 6 Transferee shall hold or utilize, as applicable, any such Cryptocurrency solely for the specific purpose that Seller transferred such Cryptocurrency to such Step 6 Transferee pursuant to the APA.

7. If Holders of Account Holder Claims become entitled to receive Net Owed Coins pursuant to the Plan and the APA after the Effective Date, then such Holders of Account Holder Claims shall be deemed to receive such Net Owed Coins through the transactions described in Step 3, applied *mutatis mutandis*.