**Hearing Date: June 14, 2023**
**Time: 11:00 a.m.**

Lori Lapin Jones, Esq.
Independent Fee Examiner
Lori Lapin Jones PLLC
98 Cutter Mill Road – Suite 255 South
Great Neck, New York 11021
Telephone: (516) 466-4110
Email: ljones@jonespllc.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1] | Case No. 22-10943 (MEW) |
| Debtors. | (Jointly Administered) |

------------------------------------------------------------x

**FINAL REPORT OF LORI LAPIN JONES, ESQ., INDEPENDENT FEE EXAMINER,
ON INTERIM APPLICATIONS FOR COMPENSATION AND REIMBURSEMENT
OF EXPENSES OF RETAINED PROFESSIONALS**

Lori Lapin Jones, Esq., Independent Fee Examiner ("Fee Examiner"), hereby files her

report and recommendations ("Final Report") pursuant to the Fee Examiner Order (defined

below) with respect to interim applications for compensation and reimbursement of expenses.

**Preliminary Statement**

1.   This Final Report covers sixteen interim applications for compensation and

reimbursement of expenses (each an "Interim Fee Application" and collectively, the "Interim Fee

Applications") filed by fourteen professionals (each a "Retained Professional" and collectively

the "Retained Professionals") retained by either the above-captioned debtors ("Debtors")

(including by the special committee or at the direction of independent directors) or the Official

Committee of Unsecured Creditors ("Creditors' Committee"). The Interim Fee Applications seek

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

compensation in the aggregate amount of $27,591,465.28 and reimbursement of expenses in

the aggregate amount of $320,685.56.  For certain Retained Professionals the Interim Fee

Application is a first application; for certain Retained Professionals the Interim Fee Application

is a second application; and as to two Retained Professionals, the Final Report covers both

their first and second Interim Fee Applications.

2.    Following a diligent and comprehensive review of the Interim Fee Applications and a

meaningful consultation process with Retained Professionals, the Fee Examiner makes the

recommendations set forth in this Final Report with the consent of each Retained Professional as

to its respective Interim Fee Application.

### Background and Case Status

3.    The Debtors filed petitions under Chapter 11 of the United States Bankruptcy Code

("Bankruptcy Code") on July 5, 2023 in the United States Bankruptcy Court for the Southern

District of New York ("Bankruptcy Court").  The Debtors remained in possession of their assets

and operation of their businesses as debtors-in-possession. No trustee has been appointed. At the

outset of these cases, the Creditors' Committee was appointed.

4.    The Debtors' first attempt at a sale of their assets unexpectedly failed. Subsequently,

the Debtors filed a Chapter 11 plan predicated on a sale of their assets to a new buyer with

alternative provisions for a liquidation process if that sale did not close (the plan, as modified,

corrected, supplemented, and amended, the "Plan").  The Bankruptcy Court confirmed the Plan

by amended Order dated March 8, 2023 (Doc 1159) as corrected by Order dated March 10,

2023 (Doc 1166) (together, the "Confirmation Order"). The Confirmation Order was appealed

and subsequently stayed by the United States District Court for the Southern District of New

York ("District Court") which stay the District Court subsequently extended. Thereafter, the

District Court entered an order approving the Joint Stipulation and Order Regarding the Stay

Pending Appeal whereby the stay of the Confirmation Order was lifted except as to an

exculpation provision in the Plan. As a result, the Plan was able to go effective.

5.   On May 18, 2023, the Bankruptcy Court entered the Order (I) Approving The

Liquidation Procedures And (II) Granting Related Relief (Doc 1398). The effective date of

the Plan was May 19, 2023 (Doc 1405).

### Interim Compensation Procedures

6.   On August 4, 2022, the Bankruptcy Court entered the Order (I) Establishing

Procedures For Interim Compensation And Reimbursement Of Expenses For Retained

Professionals And (II) Granting Related Relief (Doc 236) ("Interim Compensation Order").

The Interim Compensation Order sets forth Compensation Procedures (as defined therein) which

permit Retained Professionals to be partially paid on an interim and monthly basis. In summary,

under the Compensation Procedures, each Retained Professional is authorized to file and serve a

detailed monthly fee statement ("Monthly Fee Statement") on or after the 20th day following the

month for which compensation is sought. The Monthly Fee Statement must contain a list of

individuals who provided services, including title, billing rate, and aggregate hours spent by each

timekeeper and include contemporaneous time records maintained in increments of 1/10 of an

hour. The Monthly Fee Statement must also provide a reasonably detailed breakdown of

disbursements incurred in accordance with applicable local rules and guidelines. (Interim

Compensation Order ¶ 2. a. – c.)

7.   Following an objection period, the Debtors are required to pay 80% of fees and 100%

of expenses set forth in the Monthly Fee Statement if no objection has been served.

8.   For Retained Professionals filing Monthly Fee Statements, interim fee applications

covering four-month intervals ("Interim Fee Period") are required to be filed no later than 45 days after the end of the Interim Fee Period. The first Interim Fee Period covered the period from the petition date (or the effective date of the Retained Professional's retention) through and including October 31, 2022 ("First Interim Fee Applications").

**First Interim Fee Applications/Appointment of the Fee Examiner/Role of the Fee Examiner**

9.    The appointment of the Fee Examiner was occasioned by objections filed to the First Interim Fee Applications which included requests for the appointment of a fee examiner and which were heard on February 7, 2023 ("February 2023 Fee Hearing"). The February 2023 Fee Hearing resulted in two orders from the Bankruptcy Court.

10. First, by Order dated February 16, 2023 (Doc 1013) ("First Interim Fee Order"), the Bankruptcy Court granted the First Interim Fee Applications by awarding 80% of fees requested and 100% of expenses requested, in each case net of reductions agreed to by Retained Professionals following negotiations with the Office of the United States Trustee ("U.S. Trustee").

11. Second, the Bankruptcy Court entered the Order Appointing Independent Fee Examiner And Establishing Related Procedures For The Review Of Fee Applications Of Retained Professionals dated April 10, 2023 ("Fee Examiner Order") (Doc 1277). Pursuant to the Fee Examiner Order, Lori Lapin Jones, Esq. was appointed Fee Examiner.

12. The Fee Examiner's duties and responsibilities include reviewing and assessing interim and final applications for compensation for compliance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules, and applicable guidelines for compensation (Fee Examiner Order ¶ 7).  Following review of each fee application, the Fee Examiner is tasked with providing each Retained Professional a report on its respective fee

application ("Preliminary Report") which sets forth any potential issues or objections. The Fee

Examiner and the Retained Professional then have an opportunity to confer with the objective to

resolve, to the mutual satisfaction of the Fee Examiner and the Retained Professional, any issues

identified by the Fee Examiner. The Fee Examiner then files a Final Report to which any

Retained Professional may file a reply (Fee Examiner Order ¶ 8 (a) – (c)). Reference is made to

the Fee Examiner Order for a more complete description of the duties and responsibilities of the

Fee Examiner and the procedures, protocols, and protections of the fee examination process.

13. In these cases, the Fee Examiner's duties and responsibilities, as set forth in the Fee

Examiner Order, apply only to the interim and final fee applications submitted after February 21,

2023 (Fee Examiner Order at ¶ 5). As discussed below, the Fee Examiner's role was expressly

limited with respect to the First Interim Fee Applications.

## Work Performed by the Fee Examiner

### *Initial Preparation*

14. The Fee Examiner was assisted in this engagement by Diana G. Adams, as Fee

Reviewer, and National CRS, LLC ("NCRS") as Database Service Provider each of whom has

substantial experience in the examination of fee applications. Both professionals were retained

by the Fee Examiner with approval of the Bankruptcy Court (Doc 1367).

15. At the outset of her appointment, the Fee Examiner requested that all Retained

Professionals transmit to NCRS their time records for their respective Interim Fee Application in

LEDES or excel format which NCRS in turn downloaded into its proprietary software for review

and analysis.

16. As part of her initial preparation, the Fee Examiner reviewed, inter alia, the

Bankruptcy Court docket in these cases and certain substantive filings in the Bankruptcy Court.

The Fee Examiner also reviewed the Interim Compensation Order, the transcript from the February 2023 Fee Hearing, objections filed to the First Interim Fee Applications, and reply papers. The Fee Examiner also conferred with the U.S. Trustee.

17. During the course of her work, the Fee Examiner was contacted by parties in interest to discuss generally the Fee Examiner's work and to provide their views on the Interim Fee Applications. The Fee Examiner communicated with individuals who reached out, invited them to email the Fee Examiner any information they wanted the Fee Examiner to consider, and informed the individuals that the appointment of the Fee Examiner did not preclude any creditor or party in interest from filing their own objections or positions with respect to Interim Fee Applications.

### *First Interim Fee Applications*

18. At the February 2023 Fee Hearing, the Bankruptcy Court expressed a preference that the appointed fee examiner does not incur the costs of a wholesale re-review of the First Interim Fee Applications. Accordingly, the Fee Examiner's duties and responsibilities under the Fee Examiner Order were applicable to interim and final fee applications submitted after February 21, 2023 (Fee Examiner Order ¶ 5). In addition, the Fee Examiner Order provides:

> With respect to the Interim Applications heard by the Court at the February 7, 2023 hearing (the "First Interim Fee Applications"), the Fee Examiner shall communicate with the U.S. Trustee concerning the U.S. Trustee's prior review of the First Interim Fee Applications and the U.S. Trustee's discussions with professionals concerning those Applications. To the extent the Fee Examiner and the U.S. Trustee jointly determine that there is good cause for the Fee Examiner to review one or more of the First Interim Fee Applications (or portions thereof), the Fee Examiner may review those First Interim Fee Applications, confer with professionals, and report to the Court.

Fee Examiner Order ¶ 6.

19. In compliance with the Fee Examiner Order, the Fee Examiner and two attorneys

6

from the U.S. Trustee's office met on April 20, 2023. They discussed general procedures and

protocols and discussed in detail the U.S. Trustee attorneys' review of each of the First Interim

Fee Applications including issues identified, objections raised, guidance provided for future fee

applications, discussions with Retained Professionals, and the bases for reductions agreed to.

20. As a result, a preliminary determination was jointly made that, at this juncture, a

wholesale review by the Fee Examiner of the First Interim Fee Applications was not warranted

but that the Fee Examiner should consult one or more of the First Interim Fee Applications as

may be warranted or helpful in connection with the Fee Examiner's review of the pending

Interim Fee Applications. The joint determination that the Fee Examiner will not perform a

comprehensive review of the First Interim Fee Applications at this time can be revisited on an

application-by-application basis as these cases proceed to a hearing on final fee applications.

### *Review of Interim Fee Applications/Preparation of Preliminary Reports*

21. The Bankruptcy Court expressed concern at the February 2023 Fee Hearing that the

approach of a prospective fee examiner might be to obtain a preset percentage reduction of fees.

The Fee Examiner assures the Bankruptcy Court that obtaining a specific percentage reduction of

fees was neither a goal of the Fee Examiner nor a method employed by the Fee Examiner. As

outlined in detail below, a comprehensive and tailored process was employed by the Fee

Examiner to review and assess each Interim Fee Application and there was no preset goal to

achieve a specific level of reductions or to achieve any reductions. Certain areas of examination

are objective and if reductions are warranted, they are easy to quantify.[2] Certain areas of

examination (including determinations of reasonableness and staffing) are subjective and as to

those areas the Fee Examiner exercised her best judgment. In so doing, the Fee Examiner was

---

[2] The Fee Examiner endeavored to be consistent in her positions on issues in her review of the Interim Fee
Applications. The application of certain objective findings resulted in nominal reductions of fees and/or expenses for
certain Retained Professionals and, for consistency, such nominal reductions were requested.

mindful of the practical judgments that professionals make on an ongoing basis and often under time constraints. The Fee Examiner also considered the complexity of the Debtors' cases and the unexpected trajectory of these cases as well as the specific and sometimes unique issues in these cases. The Fee Examiner's recommendations were also informed by the consultation process following issuance of the Preliminary Reports.

22. With respect to each Interim Fee Application, the Fee Examiner (or the Fee Reviewer) reviewed: (a) the retention application; (b) the declaration of disinterestedness; (c) the Order approving retention of the Retained Professional; (d) supplemental declarations of disinterestedness or disclosures; (e) any notice of rate change; and (f) the interim fee application including the narrative and all exhibits. Thereafter, the Fee Examiner (or Fee Reviewer) reviewed and analyzed time records in NCRS' proprietary software which allows for the review by multiple methods including, without limitation: by timekeeper; by date; by project category; searches by a targeted word or words; by Court hearing; by time spent in a day; for mathematical errors; etc. The software also allows NCRS to produce reports that allow for efficient review by the Fee Examiner for, inter alia, duplicate time entries, mathematical discrepancies, billing rate and date changes, etc. As the Fee Examiner navigated the review, she cross referenced other Interim Fee Applications and reviewed specific filings in the Bankruptcy Court. The NCRS software also allows the Fee Examiner to extrapolate time entries and prepare charts based on specific searches.

23. Review of the Interim Fee Applications was performed for compliance with, inter alia, (a) Bankruptcy Code sections 330 and 331, as applicable, (b) Federal Rule of Bankruptcy Procedure 2016, (c) Local Bankruptcy Rule 2016-1, (d) the applicable retention order, (e) the Interim Compensation Order, and (f) governing guidelines including the (i) Guidelines Relating

8

to the Bankruptcy Reform Act of 1994, 28 C.F.R. Part 58, Appendix A, and (ii) Guidelines For

Reviewing Applications For Compensation And Reimbursement Of Expenses Filed Under

U.S.C. § 330 By Attorneys In Large Chapter 11 Cases, 28 C.F.R. Part 58, Appendix B.

      24. The Fee Examiner's review encompassed many specific areas including, but not

limited to:

a. Rates charged and the proper implementation of any rate increases;

b. Budgeted versus actual fees;

c. Whether work performed fell within the scope of retention under the applicable retention order;

d. Necessity of services performed and benefit to the estate;

e. Overlap and duplication among firms and within a firm;

f. Excessive time spent on a particular task or filing;

g. Appropriateness of staffing;

h. Use of transitory timekeepers;

i. Timekeepers who billed a high number of hours in a day;

j. Level of attendance at Bankruptcy Court hearings, at meetings, and on calls;

k. Time spent on the preparation of monthly fee statements and fee applications;

l. Time spent on non-compensable tasks such as those not ordinarily billed to clients outside of bankruptcy (e.g., conflict checks, preparation of engagement letters, revising time records);

m. Billing rates for non-working travel time;

n. Vague time entries;

o. Repetitive time entries;

p. Block billing;

q. Duplicate time entries; and

r.  Mathematical errors.

25. The Fee Examiner also reviewed all expenses for which reimbursement was sought and for certain expenses requested backup documentation. Expenses were also reviewed for a multitude of issues including, but not limited to:

a.  Whether the amount charged was within the caps for out-of-town meals, lodging, and overtime meals;

b.  Ensuring that airfare was billed at coach rates;

c.  To determine whether the expense was non-compensable overhead;

d.  To confirm that there was no markup on expenses charged;

e.  Whether a timekeeper's overtime meal or overtime transportation was warranted based on the hours worked that day by the timekeeper;

f.  Duplicate expenses; and

g.  Whether the expense was erroneously billed to these cases.

26. Following the comprehensive review of fees and expenses in an Interim Fee Application, the Fee Examiner prepared a confidential Preliminary Report which set forth in detail objections or potential objections (if any) to specific time charges or expenses in the Interim Fee Application. When appropriate the Fee Examiner provided exhibits to support objections. Each Preliminary Report for the Interim Fee Applications was transmitted to the respective Retained Professional on May 12, 2023.

### *Communications With Professionals Regarding Preliminary Reports*

27. Following transmittal of the Preliminary Report, and consistent with the Fee Examiner Order, the Fee Examiner set an approximate two-week period to communicate with Retained Professionals with a goal of reaching mutually satisfactory resolutions of objections or issues raised. Certain Retained Professionals accepted the fee and expense reductions

recommended by the Fee Examiner in the Preliminary Report. Certain professionals provided

detailed explanations and/or further information to address objections or potential objections

raised in the Preliminary Report which the Fee Examiner generally found helpful.  Meetings

were conducted with Retained Professionals to discuss their respective Preliminary Report and

there were further communications by telephone and email. In the end, with respect to each

objection raised, either the Retained Professional accepted the Fee Examiner's proposed

reduction, provided the Fee Examiner with information to satisfy the objection raised, or the Fee

Examiner and the Retained Professional reached an accord on specific reductions.

28. Without exception, the Retained Professionals were responsive, reasonable, and

cooperative.

## Recommendations on Interim Fee Applications[3]

29.  Set forth below are summaries of the Fee Examiner's review of each Interim Fee

Application, communications with each Retained Professional, and the Fee Examiner's

recommendations with respect to the fees and expenses requested in each of the Interim Fee

Applications.

### *Debtors' Professionals*

**Firm: Kirkland & Ellis LLP and Kirkland & Ellis International LLP ("Kirkland")**
Role: Counsel to Debtors
Period Covered: November 1, 2022 – February 28, 2023 ("Second Application")
Fees Requested: $8,539,709.50
Expenses Requested: $100,083.69
Blended Hourly Rate for Attorneys: $1,155.57

30. Kirkland serves as counsel to the Debtors. Kirkland's Second Application covers a

period of four months. During the period covered by the Second Application, Kirkland billed

---

[3]  Two pending interim fee applications were not reviewed by the Fee Examiner and are not covered in this Final
Report: the second interim fee application of Moelis & Company (review of which is excepted under the charge of
the Fee Examiner pursuant to paragraph 7 of the Fee Examiner Order); and the second interim fee application of
Stretto, Inc. (*see* Declaration of Disinterestedness of Lori Lapin Jones, Esq., at paragraph 6.e.i. (Doc 1267-2)).

7,836.4 hours by 65 attorneys (31 partners, one of counsel, and 33 associates) and 20

paraprofessionals (eight paralegals, six junior paralegals, and six support staff). Kirkland

discloses in its Second Application that it voluntarily reduced its fees by $72,754.00 and

its expenses by $2,788.41 which amounts are not sought in its Second Application.

31. The Fee Examiner's Preliminary Report to Kirkland addressed the following

issues: implementation of rate change; transitory timekeepers; non-compensable work; vague

time entries; level of attendance at Court hearings; time spent on reviewing and revising

invoices; potentially excessive associate time; time spent addressing objections to fee

applications; and miscellaneous time entries that did not appear compensable or appeared

excessive. The Fee Examiner also requested further information (a) as to the division of the

regulatory work between Kirkland and the Debtors' special regulatory counsel, Paul Hastings

LLP and (b) the reasonableness of what appeared to be excessive time spent preparing certain

Bankruptcy Court filings.

32. Following a review of the Fee Examiner's Preliminary Report, the Fee Examiner and

attorneys from Kirkland met at which time Kirkland provided certain additional information

and agreed to certain reductions. Kirkland and the Fee Examiner conferred further by email. As a

result, Kirkland has agreed to a reduction in its fee request in the amount of $134,351.25.

33. The Fee Examiner reviewed the expenses requested by Kirkland in its Second Fee

Application and requested certain backup documentation and verification. In providing this

information, Kirkland identified an invoice that was erroneously billed to these cases. In

addition, based on objections of the Fee Examiner, Kirkland agreed to reduce its request for

certain overtime meals, transportation invoices and research charges. In the aggregate,

Kirkland has agreed to reduce its expenses by $6,450.72.  With that reduction, the Fee Examiner

12

has no objection to the balance of expenses requested by Kirkland in its Second Application.

**Firm: Paul Hastings LLP ("Paul Hastings")**
Role: Special Regulatory Counsel to Debtors
Periods Covered:  July 5, 2022 – October 31, 2022 ("First Application")
                              November 1, 2022 – February 28, 2023 ("Second Application")
Fees Requested: $1,333,197.50 (First Application)
                          $1,143,583.40 (Second Application)
Expenses Requested: $9,651.89 (First Application)
                                $8,143.16 (Second Application)
Blended Hourly Rate for Attorneys: $931.64 (First Application)
                                                  $949.12 (Second Application)

34.   Paul Hastings initially served as an ordinary course professional performing

regulatory work for the Debtors.  When Paul Hastings' fees exceeded the cap for ordinary course

professionals, the Debtors sought to formally retain Paul Hastings as special regulatory counsel.

At about this time, Celsius Network LLC ("Celsius") filed a motion in these cases which the

Debtors' lead counsel, Kirkland, could not address due to a conflict. Thus, the Debtors'

application to retain Paul Hastings as special regulatory counsel also requested that Paul

Hastings be retained to represent the Debtors in connection with the Celsius matter (also referred

to as the Conflict Matter). The U.S. Trustee filed an objection to Paul Hastings' proposed

retention to the extent it included the Celsius matter, to which objection Paul Hastings replied.

Ultimately, Paul Hastings determined that it could not proceed with that portion of the retention

relating to the Celsius matter because of a conflict or connection and that portion of the retention

application as it related to the Celsius matter was withdrawn with prejudice. The Court then

approved the Debtors' retention of Paul Hastings solely as special regulatory counsel. The order

approving Paul Hastings' retention expressly prohibits Paul Hastings from seeking compensation

in connection with its representation of the Debtors for work related to the Celsius matter (Doc

1234 at ¶ 3).

35. As Paul Hastings is now a Retained Professional, and no longer an ordinary course professional, it is required to file fee applications. Paul Hastings filed its First Application (from the petition date through October 31, 2022) and its Second Application (from November 1, 2022 through February 28, 2023).  For efficiency, the Fee Examiner reviewed the First Application and Second Application together and issued one Preliminary Report to Paul Hastings.

36. During the almost four-month period covered by the First Application, Paul Hastings billed 1,434.4 hours utilizing 25 attorneys (six partners, four counsel, 14 associates, and one other attorney) and two paraprofessionals. During the four-month period covered by the Second Application, Paul Hastings billed 1,235.4 hours utilizing 31 attorneys (eight partners, seven counsel, 15 associates, and one other attorney) and four paraprofessionals.  Paul Hastings discloses that when it was retained by the Debtors in the pre-petition period (in 2021), Paul Hastings reduced its hourly rates by twenty percent (20%).  Paul Hastings continued that discount in the Debtors' chapter 11 cases.

37. The Fee Examiner's Preliminary Report to Paul Hastings addressed the following issues: implementation of rate increases; a small computation error; transitory timekeepers; potential non-compensable work; work that appeared to be outside the scope of Paul Hastings' retention as regulatory counsel; and vague and repetitive entries. The Fee Examiner also noted issues relating to work performed under the category of Retention/Fee Application including: non-compensable work relating to conflict checks and invoices; potentially excessive work relating to preparation of Paul Hastings' retention application; work relating to that portion of Paul Hastings retention application that dealt with the Celsius matter; and work relating to addressing and defending against the U.S. Trustee's partial objection to Paul Hastings' retention.

38. Following review of the Preliminary Report, the Fee Examiner and Paul Hastings met

14

and discussed in detail each of the issues raised by the Fee Examiner. As to certain issues, Paul

Hastings agreed to the reductions recommended by the Fee Examiner. As to other issues, Paul

Hastings provided the Fee Examiner with further information that satisfied the Fee Examiner as

to the issue raised. And with respect to several issues, Paul Hastings and the Fee Examiner

reached resolutions.

39. As a result, Paul Hastings has agreed to reduce its fee requests by $124,215.17. The

allocation of this reduction is: $15,680.95 (First Application) and $108,534.22 (Second

Application).

40. The Fee Examiner reviewed the requests for reimbursement of expenses in the First

Application and Second Application and requested certain backup documentation for expenses

requested in both applications. As to the expenses requested in the First Application,

Paul Hastings has agreed to reduce its request for expenses by $1,800.00.  The Fee

Examiner has no objection to the request for reimbursement of expenses in the Second

Application.

**Firm: Quinn Emanuel Urquhart & Sullivan, LLP  ("Quinn")**
Role: Special Counsel for Voyager Digital, LLC (at the direction of the Special Committee)
Period Covered: November 1, 2022 – February 28, 2023 ("Second Application")
Fees Requested: $580,788.45
Expenses Requested: $3,322.65
Blended Hourly Rate for Attorneys: $1,179.39

41.   In its role as Special Counsel for Voyager Digital, LLC (at the direction of the

Special Committee), this is Quinn's Second Application. The Second Application covers a

period of four months. During this period, Quinn billed 501.4 hours utilizing seven attorneys

(one partner, one counsel, four associates, and one attorney), one paralegal, one managing

clerk, and one litigation support. Quinn has provided Voyager Digital, LLC with a 10% discount

off its customary hourly fees. The Fee Examiner notes that the fees sought by Quinn in its

Second Application are 80% less than the fees sought by Quinn in its First Interim Fee

Application.

42. The Fee Examiner's Preliminary Report to Quinn noted issues based on:

computation errors; a transitory timekeeper; a limited number of vague time entries; potentially

excessive time spent preparing the fee application; time spent addressing objections to Quinn's

First Fee Application; and time billed that might possibly be outside the scope of Quinn's

retention.

43. Following review of the Preliminary Report, the Fee Examiner met with Quinn to

address the concerns raised by the Fee Examiner. At that time, Quinn provided the Fee Examiner

with explanations on certain issues raised by the Fee Examiner. Following this consultation

process, Quinn agreed to reduce its fee request by $23,311.80.

44. The Fee Examiner reviewed Quinn's request for reimbursement of expenses and

requested certain information. Quinn has agreed to reduce its expense request by $13.94. With

that reduction, the Fee Examiner has no objection to the reimbursement of the balance of

expenses requested by Quinn in its Second Application.


**Firm: Katten Muchin Rosenman LLP ("Katten")**
Role: Special Counsel for Voyager Digital, Ltd. at the direction of its Independent Director
Period Covered: November 11, 2022 – February 28, 2023 ("First Application")
Fees Requested: $815,130.50
Expenses Requested: $9,936.50
Blended Hourly Rate for Attorneys: $1,140.04

45. Katten serves as Special Counsel for Voyager Digital, Ltd. at the direction of its

Independent Director. This is Katten's First Application and it covers a period of approximately

three and a half months. During the period covered by the First Application, Katten billed 729.7

hours utilizing ten attorneys (four partners and six associates) and one paraprofessional. Katten

discloses that it has written off $10,014.50 of fees incurred by timekeepers billing less than three

hours during the period covered by the First Application.

46. The Fee Examiner's Preliminary Report to Katten identified issues based on:

implementation of rate increases; certain potentially non-compensable work; and vague time

entries.

47. Following review of the Preliminary Report, Katten provided the Fee Examiner with

a detailed written response to each of the issues raised by the Fee Examiner. Thereafter, the Fee

Examiner met with attorneys at Katten to discuss the Fee Examiner's objections and Katten's

responses. As a result, Katten has agreed to reduce its fee request by $20,963.50.

48. The Fee Examiner reviewed Katten's request for reimbursement of expenses in its

First Application and has no objection to the expenses requested.


**Firm: ArentFox Schiff LLP ("ArentFox")**
Role: Special Counsel to Voyager Digital Holdings, Inc. at the direction of its Independent
     Director
Period Covered: November 10, 2022 – February 28, 2023 ("First Application")
Fees Requested: $229,416.00
Expenses Requested: $93.50
Blended Hourly Rate for Attorneys: $902.71

49. As special counsel to Voyager Digital Holdings, Inc. (at the direction of its

Independent Director), this is ArentFox's First Application. It covers a period of slightly less

than four months. During the period covered by the First Application, ArentFox billed 274.70

hours utilizing five attorneys (two partners, one counsel, and two associates) and one para-

professional.

50. The Fee Examiner's Preliminary Report to ArentFox identified three issues:

implementation of rate increases; non-compensable work; and a computation error.

51. Following a review of the Preliminary Report, ArentFox agreed to the Fee Examiner's recommended reduction of fees totaling $12,441.00.

52. The Fee Examiner has no objection to the reimbursement of expenses sought in ArentFox's First Application.

**Firm: Potter Anderson & Corroon LLP ("Potter")**
Role: Delaware Counsel to the Debtors
Period Covered: November 30, 2022 through February 28, 2023 ("First Application")
Fees Requested: $141,701.50
Expenses Requested: $35.00
Blended Hourly Rate for Attorneys: $658.05

53. Potter is Delaware counsel to the Debtors. This is Potter's First Application and it covers a period of three months. During the period covered by the First Application, Potter billed 217.3 hours by five attorneys (two partners and three associates, one of which was elevated to partner) and two paralegals.

54. The Fee Examiner's Preliminary Report to Potter identified time entries that might be non-compensable.

55. Following review of the Preliminary Report, Potter provided the Fee Examiner information which satisfied the Fee Examiner's concern. Accordingly, the Fee Examiner does not recommend a reduction in the fees requested by Potter.

56. The Fee Examiner has no objection to reimbursement of the expenses sought in Potter's First Application.

**Firm: Berkeley Research Group, LLC ("Berkeley")**
Role: Financial Advisors to the Debtors
Period Covered: November 1, 2022 through February 28, 2023 ("Second Application")
Fees Requested: $4,917,378.00
Expenses Requested: $26,853.95
Blended Hourly Rate for All Professionals: $680.01

57. Berkeley is the Debtors' financial advisor. This is Berkeley's Second Application and it covers a period of four months. During the period covered by the Second Application, Berkeley billed 7,231.3 hours utilizing 24 professionals (six managing directors, three directors, three associate directors one of which was elevated from senior managing consultant, two senior managing consultants, two managing consultants, three senior associates one of which was elevated from associate, and five associates), one case manager and one case assistant.

58. The Fee Examiner's Preliminary Report to Berkeley noted issues based on: implementation of rate increases; potentially excessive and non-compensable time relating to preparation of fee statements; transitory timekeepers; potential duplication/overlap of services with the Debtors' investment banker; and level of attendance at meetings or on calls.

59. Following a review of the Preliminary Report, the Fee Examiner met with professionals from Berkeley to discuss in detail the issues raised by the Fee Examiner. Berkeley also provided the Fee Examiner with further information concerning the specific work Berkeley performed. Thereafter, the Fee Examiner and Berkeley continued to confer. The consultation process resulted in Berkeley agreeing to reduce its fee request by $159,784.25.

60. The Fee Examiner reviewed the expenses requested by Berkeley and requested certain supporting documentation. In providing that documentation, Berkeley determined it had erroneously charged above the cap for certain meals. As a result, Berkeley has agreed to reduce its expense request by $854.29. With that reduction, the Fee Examiner has no objection to the balance of expenses requested by Berkeley in its Second Fee Application.

**Firm: Deloitte Tax LLP ("Deloitte Tax")**
Role: Tax Services Provider to the Debtors
Periods Covered: August 1, 2022 through November 30, 2022 ("First Application")
                        December 1, 2022 through March 31, 2023 ("Second Application")
Fees Requested: $867,517.00 (First Application)
                        $478,046.00 (Second Application)
Expenses Requested: N/A
Blended Hourly Rate for All Professionals: $906.78 (First Application)
                        $821.95 (Second Application)

61. Deloitte Tax serves as tax services provider to the Debtors. Deloitte Tax filed its First Application (from August 1, 2022 through November 30, 2022) and its Second Application (from December 1, 2022 through March 31, 2023).  For efficiency, the Fee Examiner reviewed the First Application and Second Application together and issued one Preliminary Report to Deloitte Tax.

62. During the four-month period covered by the First Application, Deloitte Tax billed 956.70 hours utilizing 41 professionals (ten partners, five managing directors, eight senior managers, seven managers, two senior consultants, and nine consultants). During the four-month period covered by the Second Application, Deloitte Tax billed 581.60 hours utilizing 24 professionals (six partners, two managing directors, two senior managers, four managers, four senior consultants, and six consultants).

63. The Fee Examiner's Preliminary Report to Deloitte Tax noted issues based on: transitory timekeepers; potential non-compensable work; and staffing levels at meetings and on calls.

64. Following review of the Preliminary Report, Deloitte Tax provided the Fee Examiner with a written detailed response addressing each of the issues raised in the Preliminary Report. Thereafter, the Fee Examiner and Deloitte Tax met to address the issues raised in the Preliminary Report. Further communications by email and telephone followed this meeting. The consultation

20

process concluded with Deloitte Tax agreeing to a fee reduction of $39,880.37 in total for both

fee applications. The Fee Examiner has allocated this reduction as follows: $27,510.00 (First

Application) and $12,370.37 (Second Application).

65. Deloitte Tax did not seek reimbursement of expenses in either its First Application or

Second Application.

### _Creditors' Committee's Professionals_

**Firm: McDermott Will & Emery LLP ("McDermott")**
Role: Counsel to Official Committee of Unsecured Creditors
Period Covered: November 1, 2022 – February 28, 2023 ("Second Application")
Fees Requested: $5,676,302.50
Expenses Requested: $104,318.90
Blended Hourly Rate for Attorneys: $981.43

66. McDermott serves as counsel to the Creditors' Committee. This is McDermott's

Second Application and it covers a period of four months. During the period covered by the

Second Application, McDermott billed 6,166.2 hours utilizing 43 professionals (12 partners,

three counsel, four staff attorneys, and 24 associates), one law clerk and 12 paraprofessionals.

The Fee Examiner notes that McDermott discounted its standard hourly rates by 10% for these

cases. In addition to this 10% discount, McDermott agreed to a maximum hourly rate of $1,300

and, upon a rate change on notice (effective in January 2023), a maximum hourly rate of

$1,490.00. McDermott discloses in its Second Application that it also voluntarily reduced its fees

by $2,090.50 for three hours billed by transitory timekeepers.

67. The Fee Examiner's Preliminary Report to McDermott raised issues concerning:

implementation of rate increases; duplicate entries; computation errors; non-compensable time;

level of time spent on preparation of monthly fee statements; and rates charged for non-working

travel. The Fee Examiner also questioned the time spent on certain Bankruptcy Court filings and

time billed by one attorney.

68. Following a review of the Preliminary Report, McDermott provided the Fee

Examiner with a detailed written response in which it agreed to reductions recommended by the

Fee Examiner on certain issues and it proposed resolutions on other issues raised by the Fee

Examiner. The response also provided the Fee Examiner with useful information that

assisted the Fee Examiner in assessing certain time spent on tasks. The Fee Examiner thereafter

met twice with McDermott attorneys to discuss the issues raised in the Preliminary Report.

69. As a result, McDermott has agreed to reduce its fee request in the amount of

$100,900.80.

70. The Fee Examiner requested backup documentation for certain expenses requested by

McDermott in the Second Application. McDermott provided the Fee Examiner with the

requested documentation which, upon review, was satisfactory to the Fee Examiner.

Accordingly, the Fee Examiner has no objection to the reimbursement of expenses sought by

McDermott in its Second Application.


**Firm: Harney Westwood & Riegels LP ("Harney")**
Role: BVI Counsel to the Official Committee of Unsecured Creditors
Period Covered: November 1, 2022 through February 28, 2023 ("Second Application")
Fees Requested: $25,120.00
Expenses Requested: N/A
Blended Hourly Rate for Attorneys: $734.50

71. As BVI counsel to the Creditors' Committee, this is Harney's Second Application. It

covers a period of four months. During the period covered by the Second Application, Harney

billed 34.2 hours utilizing two attorneys (one partner and one associate).

72. The Fee Examiner's Preliminary Report to Harney noted limited issues relating to

time spent on invoices and implementation of rate increases.

73. Following a review of the Preliminary Report, Harney agreed to the Fee Examiner's recommended reduction of fees in the amount of $605.00.

74. No expense reimbursement was requested by Harney in its Second Application.

**Firm: Cassels Brock & Blackwell LLP ("Cassels")**
Role: Canadian Counsel to the Official Committee of Unsecured Creditors
Period Covered: November 1, 2022 through February 28, 2023
Fees Requested: USD $46,487.18; CAD $63,084.15
Expenses Requested: USD $428.81; CAD $579.77
Blended Hourly Rate for Attorneys: USD $451.77; CAD $613.06

75. Cassels is Canadian counsel to the Creditors' Committee. This is Cassels' Second Application and it covers a period of four months. During the period covered by the Second Application, Cassels billed 102.9 hours utilizing three attorneys (two partners and one associate). Cassels discounted its hourly rates by 10%.

76. The Fee Examiner's Preliminary Report to Cassels noted one small issue relating to implementation of rate increases and one issue relating to an expense.

77. Following a review of the Preliminary Report, Cassels agreed to the recommended reduction of fees in the amount of $77.91 (USD) and reduction of expenses in the amount of $70.00 (USD).

**Firm: FTI Consulting, Inc. ("FTI")**
Role: Financial Advisor to the Official Committee of Unsecured Creditors
Period Covered: November 1, 2022 – February 28, 2023 ("Second Application")
Fees Requested: $2,471,323.85
Expenses Requested: $4,793.29
Blended Hourly Rate for All Professionals: $851.59

78. FTI is Financial Advisor to the Creditors' Committee. This is FTI's Second Application and it covers a period of four months. During the period covered by the Second Application, FTI billed 2,902 hours utilizing 38 professionals (eight senior managing directors,

four managing directors, six senior directors, seven directors, four senior consultants, eight consultants, and one manager). FTI discloses in its Second Application that it voluntarily reduced its fees by $5,688.05 for time spent reviewing time entries and preparing fee budget analyses ($4,092.05) and for the time of two transitory timekeepers ($1,596.00).

79. The Fee Examiner's Preliminary Report to FTI raised issues concerning: implementation of rate increases; transitory timekeepers; non-compensable and potentially excessive time spent on invoices; other non-compensable time; vague time entries; and potentially excessive time preparing and reviewing emails. The Fee Examiner also questioned whether certain work was within the scope of FTI's retention following the retention of M3 Advisory Partners, LP.

80. Following a review of the Preliminary Report, FTI provided the Fee Examiner with a detailed response in which FTI agreed with certain reductions recommended by the Fee Examiner and proposed a resolution on one issue which was acceptable to the Fee Examiner. FTI also provided the Fee Examiner with a detailed explanation on the potential overlap of work with M3 Advisory Partners identified by the Fee Examiner which ultimately led to a negotiated reduction on that issue.

81. Based on the above, FTI has agreed to reduce its fee request by $44,719.70.

82. The Fee Examiner reviewed the expenses requested by FTI in its Second Application. The Fee Examiner sought and received confirmation from FTI that certain expenses were specific to these cases and not overhead. The Fee Examiner also requested a reduction of $60.00 in expenses for three overtime meals which FTI agreed to.

24

**Firm: M3 Advisory Partners, LP** ("**M3**")
Role: Financial Advisor to the Official Committee of Unsecured Creditors
Period Covered: January 4, 2023 – February 28, 2023 ("First Application")
Fees Requested: $305,671.00
Expenses Requested: $168.10
Blended Hourly Rate for All Professionals: $917.10

83. The retention of M3 as financial advisor to the Creditors' Committee resulted from FTI's conflict which arose when FTI became financial advisor to the creditors' committee in the FTX chapter 11 cases. The role of M3 was limited to performing that work which FTI could no longer perform because of the FTX conflict.

84. This is the First Application filed by M3 and it covers a period of slightly less than two months. During the period covered by the First Application, M3 billed 333.3 hours utilizing seven professionals (two managing directors, one director, one vice president, one senior associate, one associate, and one analyst).

85. The Fee Examiner's Preliminary Report to M3 addressed the use of a transitory timekeeper and time entries that were vague. In addition, the Fee Examiner also sought an explanation as to certain work performed by M3 and whether it overlapped with work performed by FTI.

86. Following a review of the Preliminary Report, M3 supplemented vague time records to the satisfaction of the Fee Examiner, agreed to a reduction based on time billed by one professional, and at a meeting with the Fee Examiner adequately explained why certain work M3 performed was within the scope of its retention.

87. Based on the above, M3 has agreed to reduce its fee request by $3,750.00.

88. The Fee Examiner has no objection to the reimbursement of expenses sought in M3's First Application.

**Firm: Epiq Corporate Restructuring, LLC** ("**Epiq**")
Role: Noticing and Information Agent to the Official Committee of Unsecured Creditors
Period Covered: November 1, 2022 – February 28, 2023 ("Second Application")
Fees Requested: $20,092.90
Expenses Requested: $52,856.12
Blended Hourly Rate for Timekeepers: $159.47

89. Epiq is Noticing and Information Agent to the Creditors' Committee. This is Epiq's

Second Application and it covers a period of four months. During the period covered by the

Second Application, Epiq's timekeepers billed 126 hours.

90. The Fee Examiner's Preliminary Report to Epiq noted time entries that might reflect

duplication of services of several timekeepers.

91. Following a review of the Preliminary Report, Epiq agreed to the recommended

reduction of fees in the amount of $450.00.

92. The Fee Examiner reviewed Epiq's expenses and obtained confirmation that Epiq

makes no profit on expenses it charges the estate for an outside vendor who provides mass email

communications. Accordingly, the Fee Examiner has no objection to the reimbursement of

expenses sought by Epiq in its Second Application.

## Conclusion

93.  For the reasons set forth above, the Fee Examiner respectfully submits this

Final Report and recommends (a) awards of compensation in the amounts requested net of the

reductions agreed to by Retained Professionals (if applicable) and (b) reimbursement of

expenses in the amounts requested net of reductions agreed to by Retained Professionals (if

applicable), each as set forth in this Final Report and on Exhibit A.

94. The Fee Examiner will be available to respond to inquiries from the Court at the

hearing on the Interim Fee Applications currently scheduled for June 14, 2023 at 11:00 a.m.

Dated:  Great Neck, New York
       June 1, 2023

                                    Respectfully submitted,

                                    /s/ Lori Lapin Jones
                                    Lori Lapin Jones, Esq.
                                    Independent Fee Examiner

                                    Lori Lapin Jones PLLC
                                    98 Cutter Mill Road – Suite 255 South
                                    Great Neck, New York 11021
                                    Telephone: (516) 466-4110
                                    Email: ljones@jonespllc.com

**EXHIBIT A**

| FIRM | COMPENSATION REQUESTED | EXPENSES REQUESTED | AGREED COMPENSATION REDUCTION | AGREED EXPENSE REDUCTION | INTERIM FEES RECOMMENDED | INTERIM EXPENSES RECOMMENDED |
|---|---|---|---|---|---|---|
| **Debtors' Professionals** | | | | | | |
| Kirkland & Ellis LLP | $ 8,539,709.50 | $ 100,083.69 | $ 134,351.25 | $ 6,450.72 | $ 8,405,358.25 | $ 93,632.97 |
| Paul Hastings LLP (First Interim) | $ 1,333,197.50 | $ 9,651.89 | $ 15,680.95 | $ 1,800.00 | $ 1,317,516.55 | $ 7,851.89 |
| Paul Hastings LLP (Second Interim) | $ 1,143,583.40 | $ 8,143.16 | $ 108,534.22 | $ - | $ 1,035,049.18 | $ 8,143.16 |
| Quinn Emanuel Urquhart & Sullivan LLP | $ 580,788.45 | $ 3,322.65 | $ 23,311.80 | $ 13.94 | $ 557,476.65 | $ 3,308.71 |
| Katten Muchin Rosenman LLP | $ 815,130.50 | $ 9,936.50 | $ 20,963.50 | $ - | $ 794,167.00 | $ 9,936.50 |
| ArentFox Schiff LLP | $ 229,416.00 | $ 93.50 | $ 12,441.00 | $ - | $ 216,975.00 | $ 93.50 |
| Potter Anderson & Corroon LLP | $ 141,701.50 | $ 35.00 | $ - | $ - | $ 141,701.50 | $ 35.00 |
| Berkeley Research Group | $ 4,917,378.00 | $ 26,853.95 | $ 159,784.25 | $ 854.29 | $ 4,757,593.75 | $ 25,999.66 |
| Deloitte Tax LLP (First Interim) | $ 867,517.00 | $ - | $ 27,510.00 | $ - | $ 840,007.00 | $ - |
| Deloitte Tax LLP (Second Interim) | $ 478,046.00 | $ - | $ 12,370.37 | $ - | $ 465,675.63 | $ - |
| | | | | | | |
| **Official Committee of Unsecured Creditors' Professionals** | | | | | | |
| McDermott Will & Emery LLP | $ 5,676,302.50 | $ 104,318.90 | $ 100,900.80 | $ - | $ 5,575,401.70 | $ 104,318.90 |
| Harney Westwood & Riegels LLP | $ 25,120.00 | $ - | $ 605.00 | $ - | $ 24,515.00 | $ - |
| Cassels Brock & Blackwell LLP | $ 46,487.18 | $ 428.81 | $ 77.91 | $ 70.00 | $ 46,409.27 | $ 358.81 |
| FTI Consulting, Inc. | $ 2,471,323.85 | $ 4,793.29 | $ 44,719.70 | $ 60.00 | $ 2,426,604.15 | $ 4,733.29 |
| M3 Advisory Partners LP | $ 305,671.00 | $ 168.10 | $ 3,750.00 | $ - | $ 301,921.00 | $ 168.10 |
| Epiq Corporate Restructuring | $ 20,092.90 | $ 52,856.12 | $ 450.00 | $ - | $ 19,642.90 | $ 52,856.12 |
| **Total** | **$ 27,591,465.28** | **$ 320,685.56** | | | | |