**Jeremy McAleer, Ph.D.**
*Pro se creditor*
jpmcaleer32@gmail.com

June 11, 2023

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**Re:** *Voyager Digital Holdings, Inc., et. al., Debtors*
**Chapter 11:** *case 22-10943 (MEW)*

# OBJECTION TO ALL AMENDED LIQUIDATION PROCEDURES PAST, PRESENT AND FUTURE THAT DECREASE AND/OR DELAY CUSTOMER ASSET RECOVERIES

**1. Introduction**

　1. *Statements from Debtor Plan (Doc 1166, filed 03/10/23)*

　　A. *Page 33:* "The procedures governing distributions contained in Article VI of the Plan shall be, and hereby are, approved in their entirety."

　　B. *Article VI, Section A:* "…each Holder of an Allowed Claim shall receive the full amount of distributions that the Plan provides for Allowed Claims in the applicable Class from the Distribution Agent."

　2. *Statements from Liquidation Procedures Approval (Doc 1398, filed on 05/18/23), referring to the Liquidation Procedures (Doc 1374, filed on 05/05/23)*

　　A. *Page 2:* "Procedures are in the best interests of the Debtors' estates, their creditors, and other parties in interest…"

　　B. *Page 2:* "The debtors are authorized to take all actions necessary to effectuate the Liquidation Procedures"

　　C. *Page 2:* "The terms and conditions of this Order shall be immediately effective…"

**As an unrepresented pro se creditor, I object to the Amended Liquidation Procedures for the following reasons:**

**Jeremy McAleer, Ph.D.**
*Pro se creditor*
jpmcaleer32@gmail.com

2. **Voyager has frozen hundreds and thousands of customer accounts for more than 11 months.**  Despite this, I only identified one individual who filed an objection to the Liquidation Procedures (Doc 1383).  The minuscule number of creditor objections demonstrates overwhelming support for moving forward with the Plan (Doc 1166) and Liquidation Procedures (Doc 1374).  Customers understand that any plan is imperfect, but the approved plan is the best step forward (1).
   1. *Doc 1398, P*age 2: "Procedures are in the best interests of the Debtors' estates, their creditors, and other parties in interest…"

3. **Equal treatment of claims within the same creditor class is an important consideration in Chapter 11 cases.**  As described in Doc. 1430, the first Amended Liquidation Plan (Doc 1419) does not treat creditors equally because it does not treat crypto coins equally.  This argument resulted in the court not approving the Amended Liquidation Plan (Doc 1419).  Therefore, all Liquidation Procedure Amendments in the present or future should be denied be cause they will treat customers unequally, decrease customer asset recovery, and delay customer asset recovery.

4. **Amended Liquidation Procedures decrease customer recoveries.**  It is unfathomable for proposed Liquidation Procedures Amendments to increase recovery for customers.  On the contrary, they are certain to *DECREASE* recoveries, contradicting statements in the Liquidation Procedures Approval (1).
   1. Doc 1398, Page 2: "Procedures are in the best interests of the Debtors' estates, their creditors, and other parties in interest…"

5. **The Plan Administrator only follows some, but not all, parts of the plan.**  When a customer filed complaints about distribution amounts (Doc 1358, 1359, 1366, 1368), the Plan Administrator responded (Doc 1444) by referencing the Plan to reject the motions (1). *This demonstrated intricate knowledge of the Plan contents by the Plan Administrator.*  Nevertheless, the Plan Administrator did not adhere to

**Jeremy McAleer, Ph.D.**
*Pro se creditor*
jpmcaleer32@gmail.com

sections of the Plan related to customer distributions (2).  This inaction is contrary to statements in the Liquidation Procedures Approval from Doc 1398 (3).  By utilizing the Plan to reject the customer's requests, and making an independent decision to not distribute assets to customers as described in the Plan, the Plan Administrator has chosen to only follow parts of it.  This is not in accordance to statements in the Debtors' Plan (Doc 1166) that approve distributions in their entirety for each Holder (4).

1. *Doc 1444, page 4:* "…those objections are moot following the Court's approval of the Plan and entry of the Confirmation Order"
2. Doc 1166, page 33: "The procedures governing distributions contained in Article VI of the Plan shall be, and hereby are, approved in their entirety… the Plan Administrator shall make all distributions required under the Plan and the timing of distributions required under the Plan or this Confirmation Order shall be made in accordance with and as set forth in the Plan…"
3. *Doc 1398, page 2:* "The debtors are authorized to take all actions necessary to effectuate the Liquidation Procedures."  "The terms and conditions of this Order shall be immediately effective…"
4. *Doc 1166, Article VI, Section A:* "…on the Effective Date, or as soon as reasonably practicable thereafter…each Holder of an Allowed Claim shall receive the full amount of distributions that the Plan provides for Allowed Claims in the applicable Class from the Distribution Agent."

6. **Despite the significant delay in customer distributions, the Plan Administrator does not explain why amended Liquidation Procedures proposals are better than the approved plan (Doc 1374, 1398).**  In fact, Amended Liquidation Procedures proposals harm customers by delaying recoveries and decreasing recoveries through means which have not been approved by the Court.

7. **There are potential conflicts of interest between the Plan Administrator and debtors (described in Doc 1430, page 10).**  The Plan Administrator has professional relationships with the debtors and UCC which can potentially harm the

**Jeremy McAleer, Ph.D.**
*Pro se creditor*
jpmcaleer32@gmail.com

customers by decreasing asset recoveries.  Therefore, the Plan Administrator is not impartial.  One of the responsibilities of the Plan Administrator is to identify and correct conflicts of interest (1); however, this function cannot be performed if the Plan Administrator has a conflict of interest with the debtors.  While the court does not need to determine the reason why the Plan Administrator did not release customer assets, the court should recognize that the distribution section of the Plan was not followed.  To remain in accordance with the Liquidation Procedures Approval (2), the court should consider replacing the Plan Administrator with someone that has no conflicts of interest to the debtors and can remain impartial.

1. Plan Article IV, Section H, Responsibilities of Plan Administrator: "appointing an independent director at each Debtor to act as a fiduciary for such Debtor entity solely in connection with matters that may implicate actual or potential intra-Debtor conflicts of interests between the Plan Administrator and the applicable Debtor(s)."
2. *Doc 1398, Page 2:* "Procedures are in the best interests of the Debtors' estates, their creditors, and other parties in interest…"

**Based on the above information, the following requests are made:**

8. **Immediately release customer assets for both "supported" and "unsupported" tokens.** The Voyager team is capable of operating the app to allow customer recoveries.  Allowing distributions would be in accordance with the approved Plan and Liquidation Procedures.  In order to treat customers equally and fairly, we must gain access to our shares of both "Supported" and "Unsupported" tokens.  As described in Doc 1430, unfair treatment of all crypto assets would lead to unfair treatment of all creditors.  The way to avoid unfair treatment is to release the customer share of "supported" and "unsupported" assets.  Some customers live in jurisdictions that make it difficult to use the Voyager app, and some customers are not technically savvy to transfer tokens to external wallets.  Therefore, to remain fair, customers need to choose between transferring crypto to an external wallet, transferring the USD value to a bank account, or receiving a check in the mail.

**Jeremy McAleer, Ph.D.**
*Pro se creditor*
jpmcaleer32@gmail.com

9. **After the initial customer recovery period, replace the Plan Administrator.**

    Once customers have received their initial distribution by transferring assets to external wallets, transferring assets to bank accounts, or receiving checks for the dollar value of their share, the court should appoint a new Plan Administrator with no perceived conflicts of interest to the debtors.  Having a professional relationship with the debtors can potentially harm customers by delaying and decreasing recovery.  Any harm resulting from a conflict of interest is contrary to statements in the Liquidation Procedures Approval (1).  For example, the Plan Administrator has authority to file Liquidation Procedures amendments using customer assets to fund the litigation and to continue paying the debtors' salaries.  Over time, this significantly decreases customer recoveries.  Whether or not the debtors should even receive salary is debatable, but not the focus of this objection.  The Plan Administrator was chosen by the UCC with no input from customers (Plan Article IV, Section H, Appointment of Plan Administrator).  Responsibilities of the Plan Administrator include identifying and correcting conflicts of interest (2).  It is not likely that the Plan Administrator can perform this function if he has a conflict of interest with the debtor.  Therefore, the Plan Administrator should be replaced.  If the Plan Administrator is replaced after assets are released, then customers should have representation in the selection of a new Plan Administrator.  This would help to improve the likelihood of selecting a willing, able and impartial Plan Administrator, in alignment with the Liquidation Procedures Approval (1).

    1. *Doc 1398, Page 2:* "Procedures are in the best interests of the Debtors' estates, their creditors, and other parties in interest…"
    2. Plan Article IV, Section H, Responsibilities of Plan Administrator: "appointing an independent director at each Debtor to act as a fiduciary for such Debtor entity solely in connection with matters that may implicate actual or potential intra-Debtor conflicts of interests between the Plan Administrator and the applicable Debtor(s)."

Thank you for your time and attention to this matter,

**Jeremy McAleer, Ph.D.**
*Pro se creditor*
jpmcaleer32@gmail.com

*Jeremy McAleer, Ph.D.*

Jeremy McAleer, Ph.D.

pro se creditor

jpmcaleer32@gmail.com