**MCDERMOTT WILL & EMERY LLP**
Darren Azman
Joseph B. Evans
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone: (212) 547-5400
Facsimile: (212) 547-5444

**MCDERMOTT WILL & EMERY LLP**
Gregg Steinman (admitted *pro hac vice*)
333 SE 2nd Avenue, Suite 4500
Miami, FL 33131-2184
Telephone: (305) 329-4473
Facsimile: (305) 503-8805
E-mail: gsteinman@mwe.com

**MCDERMOTT WILL & EMERY LLP**
Charles R. Gibbs (admitted *pro hac vice*)
Grayson Williams (admitted *pro hac vice*)
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201-1664
Telephone: (214) 295-8000
Facsimile: (972) 232-3098

**FOR INFORMATIONAL PURPOSES ONLY. NO RELIEF IS BEING REQUESTED FROM THE COURT AND NO ACTION IS REQUIRED.**

*Counsel to the Plan Administrator*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>VOYAGER DIGITAL HOLDINGS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-10943 (MEW)<br><br>(Jointly Administered) |

## PLAN ADMINISTRATOR'S FIRST STATUS REPORT TO CREDITORS

I, Paul R. Hage, in my capacity as the Plan Administrator (the "Plan Administrator") for the *Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1166-1] (the "Plan")[2] of Voyager Digital

---

[1] The Wind-Down Debtors in these chapter 11 cases, along with the last four digits of each Wind-Down Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The service address for purposes of these chapter 11 cases is 27777 Franklin, Suite 2500, Southfield, MI 48034.

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Plan.

Holdings, Inc., *et al.* (collectively, the "Wind-Down Debtors"), hereby submit this *First Status Report to Creditors* (the "First Report") and respectfully state as follows:

## INTRODUCTION

1. The Effective Date of the Plan occurred on May 19, 2023.[3] In the three weeks since my appointment, my professionals and I have worked diligently on a number of matters necessary to maximize the return to creditors and wind down the Estates. My team has also fielded hundreds of creditor calls and inquiries regarding a variety of matters. In an effort to communicate with the entire creditor body, I intend to file periodic updates such as this one on the Court's docket, as and when appropriate. This update is not intended to be a comprehensive update on all matters that are being investigated or pursued for the benefit of creditors. Rather, this update, and all future updates, will address matters for which there are substantive updates that can be shared publicly without adversely impacting my administration of the Wind-Down Debtors.

## INITIAL DISTRIBUTION

2. Since the occurrence of the Effective Date, my top priority has been to prepare to legally, efficiently and securely commence the initial distribution to creditors contemplated under the Plan. My professionals, the remaining Voyager employees and I have worked tirelessly since the Effective Date to ensure that this initial distribution occurs as soon as reasonably practicable.

3. I understand and appreciate that creditors have been waiting for close to a year to receive a distribution from the Estates, and that many creditors have suffered extreme hardship due to their inability to access the funds held by the Estates. Indeed, of the inquiries that we have received from creditors, by far the most frequent inquiry involves the timeline for the initial distribution.

---

[3] Docket No. 1405.

2

4.      As all interested parties will likely appreciate, identifying and executing a process for legally liquidating Unsupported Tokens in an uncertain and constantly changing regulatory environment is not a simple task. Additionally, significant work on the Voyager app was required to ensure that the initial distribution to creditors occurs efficiently and securely.

5.      Despite the foregoing challenges, we are now in a position to set forth the below timeline for the initial distribution. For the avoidance of doubt, the initial distribution will be conducted in accordance with and consistent with the Liquidation Procedures.

   a.   On or about June 15, 2023, the Voyager app will be updated so that creditors will be able to view the forms and amounts of their initial distribution.

   b.   I estimate that between June 20, 2023 and July 5, 2023, the Voyager app will be reopened to enable creditors to withdraw their crypto in-kind for a period of 30 days.[4]

6.      All creditors will receive a 35.72% initial distribution as described in more detail in the Plan and the Liquidation Procedures.[5]

7.      In most circumstances, the initial distributions of cryptocurrency will be made to creditors between three to seven calendar days after a withdrawal request is submitted on the Voyager platform. The amount of time between the submission of the withdrawal request and the date on which a creditor actually receives cryptocurrency will depend on a number of factors, including, among other things, the volume of withdrawal requests then outstanding, security and anti-fraud protocols (which are virtually identical to the protocols that existed prior to the Petition Date), and technical limitations (which vary by blockchain).

---

[4]   Due to the evolving and unpredictable nature of the cryptocurrency industry, creditors are strongly encouraged to remove their initial distribution from the Voyager app in-kind as soon as possible.

[5]   Docket No. 1374.

8. In advance of the June 20, 2023 reopening of the Voyager app, creditors will receive communications from the Wind-Down Debtors regarding the platform reopening. Answers to frequently asked questions will also be distributed. Users who have questions or require support related to the initial recovery should first visit the Help Center (available at https://support.investvoyager.com/hc/en-us), and use the search bar or chat function to search answers to frequently asked questions in order to troubleshoot their issue(s).[6]

## FTX MEDIATION

9. There are a number of pending disputes that involve Alameda Ventures Ltd., Alameda Research Ventures Ltd., West Realm Shires Inc. d/b/a FTX US, and Alameda Research Ltd. (collectively, and with their affiliates, the "FTX Debtors"). Such disputes relate to, among other things:

   a. that certain *Asset Purchase Agreement* (including all exhibits and schedules, the "Initial Asset Purchase Agreement")[7] and the *First Amendment to the Initial Asset Purchase Agreement* (together with the Initial Asset Purchase Agreement, the "FTX APA");[8] and

   b. that certain *Complaint to Avoid and Recover Preferential Transfers* (the "FTX Adversary Proceeding")[9] filed by one of the FTX Debtors, Alameda Research Ltd.

---

[6] If further assistance is required, users can submit a support ticket either: (1) through the chat function, found in the lower right corner of the app under "Support" or on the Help Center website, or (2) on the Help Center website, by clicking [SUBMIT A REQUEST] at the top right corner and filling out the form with specifics of their request. (https://support.investvoyager.com/hc/en-us/requests/new?ticket_form_id=1260809518610).

[7] Docket No. 472-B.

[8] Docket No. 582.

[9] The FTX Adversary Proceeding is captioned *In re FTX Trading Ltd.*, Adv. Pro. No. 23- 50084 (JTD) (Bankr. D. Del. Jan. 30, 2023).

("Alameda Research") asserting certain preference claims against Voyager Digital, LLC ("Voyager OpCo") and HTC Trading Inc. (the "Preference Claims").

10. The Wind-Down Debtors and the FTX Debtors previously entered into a *Joint Stipulation* (the "Stipulation"), which was approved by Court order.[10] Pursuant to the Stipulation, the Wind-Down Debtors reserved and presently hold $445 million in U.S. Dollars pending final resolution of the Preference Claims. Moreover, pursuant to the Stipulation, the $5 million deposit provided by the FTX Debtors under the FTX APA remains held by Voyager OpCo pending an ownership determination by the Court. All other claims and defenses between the Wind-Down Debtors and the FTX Debtors are reserved by the parties.

11. Also pursuant to the Stipulation, the parties agreed to participate in good faith in non-binding mediation with respect to all claims between the parties. The FTX Debtors and I will be seeking the appointment of Judge Shelley C. Chapman (Ret.) to serve as mediator with respect to these claims. It is anticipated that the mediation will commence in the Fall of 2023 with briefing to be submitted in advance.

## THREE ARROWS CAPITAL

12. On June 29, 2022, the Eastern Caribbean Supreme Court in the High Court of Justice Virgin Islands (Commercial Division) entered an order appointing Russell Crumpler and Christopher Farmer of Teneo (BVI) Limited as joint liquidators (the "Joint Liquidators") to conduct an orderly and equitable wind down (the "3AC Liquidation Proceeding") of Three Arrows Capital, Ltd. ("3AC").[11]

---

[10] Docket No. 1266.

[11] On July 28, 2022, the United States Bankruptcy Court for the Southern District of New York entered an order granting recognition of the 3AC Liquidation Proceeding as a "foreign main proceeding" pursuant to chapter 15 of the Bankruptcy Code (the "Chapter 15 Proceeding").

13. Voyager OpCo is one of the largest creditors of 3AC with a claim of approximately $650 million.[12] Voyager OpCo is a member of the committee of creditors (the "3AC Committee") in the 3AC Liquidation Proceeding. The other members of the 3AC Committee are Blockchain.com, CoinList, Digital Currency Group, and MatrixPort.

14. Since the Effective Date, I have served as the authorized representative of Voyager OpCo as a member of the 3AC Committee. I have met with the Joint Liquidators on numerous occasions to understand what efforts are being undertaken to recover assets for 3AC's creditors and, ultimately, Voyager creditors.

15. I cannot disclose many of the efforts being undertaken by the Joint Liquidators due to the confidential nature of that proceeding. However, I can disclose that, in their ongoing efforts to trace, seek information on, and preserve the 3AC estate's assets, the Joint Liquidators have taken the following actions: (i) obtained relief entrusting the Joint Liquidators with the administration and realization of 3AC's affairs and assets located in the U.S.; (ii) obtained relief suspending any third party's right to transfer, encumber, or otherwise dispose of any 3AC assets in the U.S.; and (iii) obtained discovery relating to 3AC's U.S. assets from third parties. With respect to point (iii) in particular, the Joint Liquidators have taken additional steps within the Chapter 15 Proceeding to obtain subpoenas against a variety of individuals and financial institutions based in, or connected to, the United States.

## CONCLUSION

16. I understand and appreciate the frustration felt by creditors throughout what has been a long and challenging process since these bankruptcy cases were commenced nearly one

---

[12] The Wind-Down Debtors' claim against 3AC is comprised of 350 million USDC and 15,250 BTC.

year ago. My singular goal as the Plan Administrator is to undertake every effort to return as much money as possible to creditors, as soon as possible.

17. Right now, my top priority is to prepare to legally, efficiently, and securely commence the initial distribution to creditors contemplated under the Plan. Although I am working through a number of other issues contemporaneously, as soon as the initial distribution is complete, the primary focus will shift to recovering additional assets that can be distributed to creditors through, among other things, litigation claims and asset sales.

18. Many of the issues and disputes, including those discussed in this First Report, are highly complex and novel. They will take time to resolve. I will endeavor to make future distributions as soon as possible but, given the nature of many of the disputes, and the amounts at issue, I must ensure that we are comprehensive and diligent in undertaking these efforts. Each decision I make as Plan Administrator has been, and will continue to be, made with creditor interests first in mind.

Dated: June 14, 2023

*/s/ Paul R. Hage*
Paul R. Hage, solely in my capacity
as the Plan Administrator