**MCDERMOTT WILL & EMERY LLP**
Darren Azman
Joseph B. Evans
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone: (212) 547-5400
Facsimile: (212) 547-5444

**MCDERMOTT WILL & EMERY LLP**
Charles R. Gibbs (admitted *pro hac vice*)
Grayson Williams (admitted *pro hac vice*)
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201-1664
Telephone: (214) 295-8000
Facsimile: (972) 232-3098

**MCDERMOTT WILL & EMERY LLP**
Gregg Steinman (admitted *pro hac vice*)
333 SE 2nd Avenue, Suite 4500
Miami, FL 33131-2184
Telephone: (305) 329-4473
Facsimile: (305) 503-8805

*Counsel to Paul R. Hage, in his capacity as the Plan Administrator for the Wind-Down Debtors*

**FOR INFORMATIONAL PURPOSES ONLY. NO RELIEF IS BEING REQUESTED FROM THE COURT AND NO ACTION IS REQUIRED.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*, | Case No. 22-10943 (MEW) |
| Debtors.[1] | (Jointly Administered) |

**PLAN ADMINISTRATOR'S THIRD STATUS REPORT TO CREDITORS**

I, Paul R. Hage, in my capacity as the Plan Administrator (the "Plan Administrator") for the *Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1166-1] (the "Plan")[2] of Voyager Digital

---

[1] The Wind-Down Debtors in these chapter 11 cases, along with the last four digits of each Wind-Down Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The service address for purposes of these chapter 11 cases is 27777 Franklin, Suite 2500, Southfield, MI 48034.

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Plan.

Holdings, Inc., *et al.* (collectively, the "Wind-Down Debtors"), hereby submit this *Third Status Report to Creditors* and respectfully state as follows:

### IN-KIND INITIAL DISTRIBUTIONS HAVE CONCLUDED

1.  Consistent with the Plan and the Liquidation Procedures [Docket No. 1374] (the "Liquidation Procedures"), on June 23, 2023, the Voyager app reopened to permit customer-creditors to request initial in-kind distributions of cryptocurrency for an approved thirty-day period. That period ended on July 23, 2023 at 11:59 p.m. (ET). Prior to and during the in-kind thirty-day withdrawal period, creditors were strongly encouraged to withdraw their cryptocurrency in-kind.

2.  The Wind-Down Debtors endeavored to process all withdrawals within seven days after a request was made. In the interest of safeguarding against fraudulent activity and other distribution-related concerns, certain withdrawal requests were pending for longer periods of time. The amount of time that it took for a particular withdrawal request to be processed varied due to several factors, including the volume of requests outstanding, the size of a withdrawal, security and anti-fraud protocols, and technical limitations (which vary by blockchain).

3.  The initial in-kind distribution process was a success. Of the approximately $627 million of cryptocurrency available for initial distribution, over $491 million (approximately 79%) has been withdrawn or is in the process of being withdrawn. The Wind-Down Debtors received approximately 655,000 separate withdrawal requests during the thirty-day withdrawal period, of which 99.14% have been processed. The Wind-Down Debtors anticipate that they will be able to process the remaining pending withdrawal requests, assuming such requests pass the Wind-Down Debtors' compliance and security procedures, in the coming days.

4. In the days leading up to and during the thirty-day withdrawal period, the Wind-Down Debtors communicated via e-mail with the creditor body as a whole on eleven occasions. These communications reminded customers how their initial distribution amount was calculated, and detailed the requirements, procedures, and deadlines for withdrawing cryptocurrency in-kind. They also addressed frequently asked questions.

5. During the thirty-day withdrawal period, the Wind-Down Debtors received approximately 62,000 support tickets from creditors. A significant percentage of these tickets were responded to with automated responses because the tickets raised common issues (*e.g.,* log-in and password issues) addressed in the Wind-Down Debtors' published FAQs. Additionally, the Wind-Down Debtors' customer support team manually responded to approximately 25,000 support tickets.

6. During the thirty-day period, the Wind-Down Debtors manually reviewed over 22,000 cryptocurrency withdrawal requests for submission to the blockchain that did not pass their pre-determined auto-approval logic. In many cases, the Wind-Down Debtors' customer support team followed up directly with creditors to request additional information or identification before manually approving a withdrawal request to ensure that the requested withdrawals were not fraudulent.

7. I believe that the success of the initial in-kind distribution process is due, in large part, to the dedicated and talented operations and customer support teams at the Wind-Down Debtors, the members of which worked long hours under at times difficult circumstances to facilitate creditors' withdrawal requests in a timely and secure fashion.

**INITIAL CHECK DISTRIBUTIONS**

8.  As contemplated by the Plan and the Liquidation Procedures, creditors that did not initiate the withdrawal of their initial distribution in-kind within the thirty-day withdrawal period will receive their initial distribution in U.S. dollars.

9.  The Wind-Down Debtors and their professionals are working to identify the most efficient and value-maximizing method for liquidating the remaining approximately $136 million in cryptocurrency that was not withdrawn by customer-creditors during the thirty-day withdrawal period (the "Remaining Assets").

10. As soon as reasonably practicable upon the completion of the liquidation of the Remaining Assets, the Wind-Down Debtors will make initial, pro rata, U.S. dollar distributions to creditors by check. Consistent with the Liquidation Procedures, these distributions will be subject to market fluctuations and other terms of the Plan. Additional information regarding the initial check distribution process will be provided to creditors in the next few weeks.

11. For those entitled to an initial distribution check, such check will be mailed to the record holders of claims as of May 19, 2023 (the "Effective Date") and will be delivered to the address for each such holder as indicated in the Wind Down Debtors' records or applicable claims register. **General unsecured creditors, including non-customer creditors, that are eligible to receive an initial check distribution are encouraged to confirm and, if necessary, update, their current mailing address using: (i) the Voyager app (for customer claimants), or (ii) by completing this form (for non-customer claimants) as soon as possible, but in any event no later than 11:59 p.m. (ET) on August 11, 2023.**

12. The Voyager app will remain open for a limited period of time to permit customers to view their total withdrawals, update their mailing address, and view their transaction history.

The Wind-Down Debtors are evaluating different options for making certain limited creditor information available after the Voyager app is taken down.

13.  The Wind-Down Debtors will not be issuing 1099 tax forms to creditors and the Wind-Down Debtors and their professionals will not be providing tax advice. The Wind-Down Debtors encourage all creditors to obtain their own tax advice with respect to any distributions received.

## DATA BREACH ALLEGATIONS AND INVESTIGATION

14.  We have been informed of numerous scams and phishing attempts that have targeted creditors of the Wind-Down Debtors in recent weeks. These schemes mirror fraudulent activities reportedly seen in other cryptocurrency bankruptcy cases during the same period. Because some of these schemes have involved names, contact information, and claim amounts of creditors, it has been suggested that a data breach may have occurred with respect to the Wind-Down Debtors' creditor information.

15.  I take these allegations very seriously. Upon learning of these schemes, the Wind-Down Debtors retained outside professionals with specialized expertise to conduct an investigation of the situation. That investigation is in process. We have reported the information that we have learned about these incidents to the appropriate law enforcement authorities, and we will continue to communicate with such authorities going forward.

16.  The Wind-Down Debtors have worked closely with their professionals to attempt to curtail these schemes as much as possible by, among other things, identifying, reporting, and attempting to take down fraudulent websites and e-mail addresses. We have also communicated directly with creditors by e-mail to inform them of the fraudulent schemes, encourage them to be on high alert, and to remind them of the specific forms of communication used by the Wind-Down

Debtors to communicate with creditors. The Wind-Down Debtors will continue to work diligently to combat the behavior of the bad actors behind these schemes.

## LITIGATION AND RECOVERIES

17.     Since the Effective Date, I have obtained access to Voyager's books and records and, with the assistance of the Wind-Down Debtors' professionals, have begun the investigation into a variety of claims and causes of action. That investigation is ongoing and there are no substantive updates that can be shared publicly at this time.

18.     Since the filing of my *Second Status Report to Creditors* [Docket No. 1480], the Wind-Down Debtors have received the D&O Settlement payment (as defined in the Plan) from Voyager's former Chief Executive Officer, Stephen Ehrlich, totaling $1,900,000.00, less applicable taxes.

19.     The mediation process with respect to the litigation with Alameda Ventures Ltd., Alameda Research Ventures Ltd., West Realm Shires Inc. d/b/a FTX US, and Alameda Research Ltd. (collectively, and with their affiliates, the "FTX Debtors") is now well underway. The parties' confidential opening briefs in that mediation proceeding were submitted to the mediator on July 21, 2023. In person mediation sessions are scheduled to occur starting in September 2023. Because of the confidential nature of the mediation proceedings, there is limited information that can be shared about the litigation with the FTX Debtors at this time.

20.     The Wind-Down Debtors continue to be actively involved in the Three Arrows' Capital, Ltd. insolvency proceedings pending in the British Virgin Islands. Indeed, The Wind-Down Debtors serve as a member of the creditors' committee in those proceedings. Again because of the confidential nature of such proceedings, there is limited information that can be shared about such proceedings at this time.

21. Finally, the Wind-Down Debtors and their professionals are engaged in discussions with a variety of parties regarding the potential sale of certain assets of the Wind-Down Debtors' estates. The Wind-Down Debtors will continue to explore transactions that benefit the estates and their creditors.

## CONCLUSION

22. The Wind-Down Debtors and their professionals continue to work to efficiently maximize the value of the Wind-Down Debtors' assets for the benefit of creditors. We remain singularly focused on returning as much value to creditors as possible, as soon as possible. I will file additional status updates such as this on the Court's docket as and when appropriate.

Respectfully submitted,

By: /s/ Paul R. Hage
Paul R. Hage, solely in my capacity as the Plan Administrator for the Voyager Wind-Down Debtors

Dated: July 28, 2023