**Hearing Date: September 13, 2023**
**Time: 11:00 a.m.**

Lori Lapin Jones, Esq.
Independent Fee Examiner
Lori Lapin Jones PLLC
98 Cutter Mill Road – Suite 255 South
Great Neck, New York 11021
Telephone: (516) 466-4110
Email: ljones@jonespllc.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re:

VOYAGER DIGITAL HOLDINGS, INC., *et al.*,[1]

                              Debtors.

-----------------------------------------------------------x

Chapter 11

Case No. 22-10943 (MEW)

(Jointly Administered)

## FINAL REPORT OF LORI LAPIN JONES, ESQ., INDEPENDENT FEE EXAMINER, ON FINAL APPLICATIONS FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES OF RETAINED PROFESSIONALS

Lori Lapin Jones, Esq., Independent Fee Examiner ("Fee Examiner"), hereby files her report and recommendations ("Final Report") pursuant to the Fee Examiner Order (defined below) with respect to the fees and expenses requested for the Final Interim Period (defined below) in the final applications for compensation and reimbursement of expenses.

### Preliminary Statement

1.    This Final Report covers applications for compensation and reimbursement of expenses (each a "Fee Application" and collectively, the "Fee Applications") filed by fifteen professionals (each a "Retained Professional" and collectively the "Retained Professionals") retained by either the above-captioned debtors ("Debtors") (including by the special committee or at the direction of independent directors) or the Official Committee of Unsecured Creditors

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

("Creditors' Committee"). The Fee Applications are final fee applications. Each Fee Application

seeks approval of (a) compensation for an interim period not applied for in prior fee applications

("Final Interim Period") and (b) all compensation (from retention through the Final Interim

Period) on a final basis.

2.    The aggregate compensation requested by Retained Professionals for the Final

Interim Period is $15,331,025.99 in fees and $270,671.47 in expenses. For certain Retained

Professionals, the Fee Application is a third application; for certain Retained Professionals, the

Fee Application is a second application; and for one Retained Professional, the Fee Application

is a first application.  The Fee Examiner limited her review to the compensation sought in the

Final Interim Period because (a) she previously reviewed the compensation requested in the

second interim period (as to which resolutions on reductions were reached) (Doc 1425) and

(b) the United States Trustee had previously reviewed the compensation requests for the first

interim period (and reached resolutions on those requests). Further, the Fee Examiner's scope of

review for the first interim period was expressly limited since the United States Trustee had

already reviewed those applications.  Accordingly, a re-review of compensation requested for

periods prior to the Final Interim Period was not conducted by the Fee Examiner.

3.    Following a diligent and comprehensive review of the compensation sought in the

Fee Applications for the Final Interim Period and a meaningful consultation process with

Retained Professionals, the Fee Examiner makes the recommendations set forth in this Final

Report with the consent of each Retained Professional as to their respective compensation

request for the Final Interim Period.

## Background and Case Status

4.    The Debtors filed petitions under Chapter 11 of the United States Bankruptcy Code

("Bankruptcy Code") on July 5, 2022 in the United States Bankruptcy Court for the Southern

District of New York ("Bankruptcy Court"). The Debtors remained in possession of their assets

and operation of their businesses as debtors-in-possession. No trustee was appointed. At the

outset of these cases, the Creditors' Committee was appointed.

5.    The Debtors' first attempt at a sale of their assets unexpectedly failed. Subsequently,

the Debtors filed a Chapter 11 plan predicated on a sale of their assets to a new buyer with

alternative provisions for a liquidation process if that sale did not close (the plan, as modified,

corrected, supplemented, and amended, the "Plan"). The Bankruptcy Court confirmed the Plan

by amended Order dated March 8, 2023 (Doc 1159) as corrected by Order dated March 10,

2023 (Doc 1166) (together, the "Confirmation Order"). The Confirmation Order was appealed

and subsequently stayed by the United States District Court for the Southern District of New

York ("District Court") which stay the District Court subsequently extended. Thereafter, the

District Court entered an order approving the Joint Stipulation and Order Regarding the Stay

Pending Appeal whereby the stay of the Confirmation Order was lifted except as to an

exculpation provision in the Plan. As a result, the Plan was able to go effective.

6.    On May 18, 2023, the Bankruptcy Court entered the Order (I) Approving The

Liquidation Procedures And (II) Granting Related Relief (Doc 1398). The effective date of

the Plan was May 19, 2023 (Doc 1405).

**Interim Compensation Procedures**

7.    On August 4, 2022, the Bankruptcy Court entered the Order (I) Establishing

Procedures For Interim Compensation And Reimbursement Of Expenses For Retained

Professionals And (II) Granting Related Relief (Doc 236) ("Interim Compensation Order").

The Interim Compensation Order sets forth Compensation Procedures (as defined therein) which

permit Retained Professionals to be partially paid on an interim and monthly basis. In summary,

under the Compensation Procedures, each Retained Professional is authorized to file and serve a

detailed monthly fee statement ("<u>Monthly Fee Statement</u>") on or after the 20th day following the

month for which compensation is sought. The Monthly Fee Statement contains a list of

individuals who provided services, including title, billing rate, and aggregate hours spent by each

timekeeper and includes contemporaneous time records maintained in increments of 1/10 of an

hour. The Monthly Fee Statement also provides a reasonably detailed breakdown of

disbursements incurred in accordance with applicable local rules and guidelines. (Interim

Compensation Order ¶ 2. a. – c.)

8.   Following an objection period, the Debtors are required to pay 80% of fees and 100%

of expenses set forth in the Monthly Fee Statement if no objection has been served.

9.   For Retained Professionals filing Monthly Fee Statements, interim fee applications

covering four-month intervals ("<u>Interim Fee Period</u>") are required to be filed no later than 45

days after the end of the Interim Fee Period. The first Interim Fee Period covered the period from

the petition date (or the effective date of the Retained Professional's retention) through and

including October 31, 2022 ("<u>First Interim Fee Applications</u>").

**<u>First Interim Fee Applications/Appointment of the Fee Examiner/Role of the Fee Examiner</u>**

10.   The appointment of the Fee Examiner was occasioned by objections filed to the First

Interim Fee Applications which included requests for the appointment of a fee examiner and

which were heard on February 7, 2023 ("<u>February 2023 Fee Hearing</u>"). The February 2023 Fee

Hearing resulted in two orders from the Bankruptcy Court.

11. First, by Order dated February 16, 2023 (Doc 1013) ("<u>First Interim Fee Order</u>"), the

Bankruptcy Court granted the First Interim Fee Applications by awarding 80% of fees requested

and 100% of expenses requested, in each case net of reductions agreed to by Retained

Professionals following negotiations with the Office of the United States Trustee ("U.S.

Trustee").

12. Second, the Bankruptcy Court entered the Order Appointing Independent Fee

Examiner And Establishing Related Procedures For The Review Of Fee Applications Of

Retained Professionals dated April 10, 2023 ("Fee Examiner Order") (Doc 1277). Pursuant to the

Fee Examiner Order, Lori Lapin Jones, Esq. was appointed Fee Examiner.

13. The Fee Examiner's duties and responsibilities include reviewing and assessing

interim and final applications for compensation for compliance with the Bankruptcy Code, the

Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules, and applicable guidelines

for compensation (Fee Examiner Order ¶ 7).  Following review of each fee application, the Fee

Examiner is tasked with providing each Retained Professional a report on its respective fee

application ("Preliminary Report") which sets forth any potential issues or objections.  The Fee

Examiner and the Retained Professional then have an opportunity to confer with the objective to

resolve, to the mutual satisfaction of the Fee Examiner and the Retained Professional, any issues

identified by the Fee Examiner. The Fee Examiner then files a Final Report to which any

Retained Professional may file a reply (Fee Examiner Order ¶ 8 (a) – (c)).  Reference is made to

the Fee Examiner Order for a more complete description of the duties and responsibilities of the

Fee Examiner and the procedures, protocols, and protections of the fee examination process.

14. In these cases, the Fee Examiner's duties and responsibilities, as set forth in the Fee

Examiner Order, applied only to the interim and final fee applications submitted after February

21, 2023 (Fee Examiner Order at ¶ 5) since the U.S. Trustee had already reviewed the First

Interim Fee Applications.

**Second Interim Fee Applications**

15. A second round of interim fee applications covering the period ending February 28, 2023 were reviewed by the Fee Examiner. Following the review and consultation process, the Fee Examiner reached resolutions with all Retained Professionals and thereafter issued a detailed final report regarding those interim fee applications (Doc 1425). A hearing followed on June 14, 2023 at which the Court approved awards of 80% of fees and 100% of expenses based on the recommendations set forth in the Fee Examiner's report.

**Work Performed by the Fee Examiner in Connection With
Compensation Sought in the Final Interim Period**

**Initial Preparation**

16. The Fee Examiner was assisted in this engagement by Diana G. Adams, as Fee Reviewer, and National CRS, LLC ("NCRS") as Database Service Provider, each of whom has substantial experience in the examination of fee applications. Both professionals were retained by the Fee Examiner with approval of the Bankruptcy Court (Doc 1367).

17. At the outset of her appointment, the Fee Examiner requested that all Retained Professionals transmit to NCRS their time records in LEDES or excel format which NCRS in turn downloads into its proprietary software for review and analysis. The Retained Professionals each submitted their time records to NCRS in LEDES or excel format for the Final Interim Period.

18. As this was the second round of applications being reviewed by the Fee Examiner, the Fee Examiner was already familiar with the work the Retained Professionals were retained to perform and with the trajectory of these cases. In addition, the Fee Examiner kept current on the substantive filings in these cases. Accordingly, there was less background work required of the Fee Examiner for her review of the Fee Applications.

### Review of Fee Applications/Preparation of Preliminary Reports

19. As outlined in detail below, a comprehensive and tailored process was employed by the Fee Examiner to review and assess each Fee Application. There was no preset goal to achieve a specific level of reductions or to achieve any reductions. Certain areas of examination are objective and if reductions are warranted, they are easy to quantify.[2] Certain areas of examination (including determinations of reasonableness and staffing) are subjective and as to those areas the Fee Examiner exercised her best judgment. In so doing, the Fee Examiner was mindful of the practical judgments that professionals make on an ongoing basis and often under time constraints. The Fee Examiner also considered the complexity of the Debtors' cases and the unexpected trajectory of these cases as well as the specific and sometimes unique issues in these cases. The Fee Examiner's recommendations were also informed by the consultation process following issuance of the Preliminary Reports.

20. The Fee Examiner (or the Fee Reviewer) had previously reviewed with respect to each Retained Professional: (a) the retention application; (b) the declaration of disinterestedness; (c) the Order approving retention of the Retained Professional; (d) supplemental declarations of disinterestedness or disclosures; and (e) any notice of rate change. In connection with the review of the Fee Applications, these documents were consulted as needed. The Fee Examiner (or the Fee Reviewer) reviewed each Fee Application including the narrative and all exhibits. Thereafter, the Fee Examiner (or Fee Reviewer) reviewed and analyzed time records in NCRS' proprietary software which allows for the review by multiple methods including, without limitation: by timekeeper; by date; by project category; searches by a targeted word or words; by Court hearing; by time spent in a day; for mathematical errors; etc. The software also allows

---

[2]  The Fee Examiner endeavored to be consistent in her positions on issues in her review of the Fee Applications. The application of certain objective findings resulted in nominal reductions of fees and/or expenses for certain Retained Professionals and, for consistency, such nominal reductions were requested.

NCRS to produce reports that allow for efficient review by the Fee Examiner for, inter alia, duplicate time entries, mathematical discrepancies, billing rates and date changes, etc. As the Fee Examiner navigated the review, she cross referenced among Fee Applications and, as needed, reviewed specific filings. The NCRS software also allows the Fee Examiner to extrapolate time entries and prepare charts based on specific searches.

21. Review of the Fee Applications was performed for compliance with, inter alia, (a) the Bankruptcy Code, (b) Federal Rule of Bankruptcy Procedure 2016, (c) Local Bankruptcy Rule 2016-1, (d) the applicable retention order, (e) the Interim Compensation Order, and (f) governing guidelines including the (i) Guidelines Relating to the Bankruptcy Reform Act of 1994, 28 C.F.R. Part 58, Appendix A, and (ii) Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under U.S.C. § 330 By Attorneys In Large Chapter 11 Cases, 28 C.F.R. Part 58, Appendix B.

22. The Fee Examiner's review of fees for the Final Interim Period encompassed many specific areas including, but not limited to:

a. Rates charged and the proper implementation of any rate increases;

b. Budgeted fees versus actual fees;

c. Whether work performed fell within the scope of retention under the applicable retention order;

d. Necessity of services performed and benefit to the estate;

e. Overlap and duplication among firms and within a firm;

f. Excessive time spent on a particular task or filing;

g. Appropriateness of staffing;

h. Use of transitory timekeepers;

i. Timekeepers who billed a high number of hours in a day;

j.   Level of attendance at Bankruptcy Court hearings, at meetings, and on calls;

k.   Time spent on the preparation of monthly fee statements and fee applications;

l.   Time spent on non-compensable tasks such as those not ordinarily billed to clients outside of bankruptcy (e.g., conflict checks, preparation of engagement letters, revising time records);

m.  Billing rates for non-working travel time;

n.   Vague time entries;

o.   Repetitive time entries;

p.   Block billing;

q.   Duplicate time entries; and

r.   Mathematical errors.

23.   The Fee Examiner also reviewed all expenses for which reimbursement was sought in the Fina Interim Period and for certain expenses requested backup documentation. Expenses were also reviewed for a multitude of issues including, but not limited to:

a.   Whether the amount charged was within the caps for out-of-town meals, lodging, and overtime meals;

b.   Ensuring that airfare was billed at coach rates;

c.   To determine whether the expense was non-compensable overhead;

d.   To confirm that there was no markup on expenses charged;

e.   Whether a timekeeper's overtime meal or overtime transportation was warranted based on the hours worked that day by the timekeeper;

f.   Duplicate expenses; and

g.   Whether the expense was erroneously billed to these cases.

24.   Following the comprehensive review of fees and expenses for the Final Interim Period in a Fee Application, the Fee Examiner prepared a confidential Preliminary Report which

set forth in detail objections or potential objections (if any) to specific time charges or expenses

in the Fee Application. When appropriate, the Fee Examiner provided exhibits to support

objections. Each Preliminary Report for the Fee Applications was transmitted to the respective

Retained Professional on August 11, 2023.

**Communications With Professionals Regarding Preliminary Reports**

25. Following transmittal of the Preliminary Report, and consistent with the Fee

Examiner Order, the Fee Examiner set an approximate two-week period to communicate with

Retained Professionals with a goal of reaching mutually satisfactory resolutions of objections

or issues raised. Certain Retained Professionals accepted the fee and expense reductions

recommended by the Fee Examiner in the Preliminary Report. Certain professionals provided

detailed explanations and/or further information to address objections or potential objections

raised in the Preliminary Report which the Fee Examiner generally found helpful.  As needed,

meetings were conducted with Retained Professionals to discuss their respective Preliminary

Report and there were communications by email. In the end, with respect to each objection

raised, either the Retained Professional accepted the Fee Examiner's proposed reduction,

provided the Fee Examiner with information to satisfy the objection raised, or the Fee Examiner

and the Retained Professional reached an accord on specific reductions.

26. The Fee Examiner notes that each of the Retained Professionals were responsive,

reasonable, and cooperative with the Fee Examiner during the review and consultation process.

**General Observations Regarding the Compensation Requests For the Final Interim Period**

27.  The Final Interim Period in most of the Fee Applications cover a shorter time period

than the time periods covered in prior compensation applications (approximately two and one-

half months instead of four months). However, the Fee Applications cover a period that required

very intensive work including, *inter alia,*: a contested confirmation hearing (combined with a disclosure statement hearing) spanning four days; litigation of an emergency stay of the Confirmation Order and the appellate process at both the District Court and the United States Court of Appeals for the Second Circuit; preparation for closing on the Binance transaction, the abrupt termination of the asset purchase agreement with Binance, and the swift pivot to the liquidation toggle in the Plan; preparation of liquidation procedures and obtaining Bankruptcy Court approval for the liquidation procedures; and preparation for the transition to post-effective date management by the Plan Administrator including preparing for prompt distributions. All this intensive and extensive work occurred in 80 days.

28. The Fee Examiner also observes that during the Final Interim Period, the parties negotiated the Joint Stipulation and Order Regarding the Stay Pending Appeal (approved by the District Court) whereby the stay of the Confirmation Order was lifted, except as to an exculpation provision in the Plan, which in turn created a path for the Plan to go effective. This stipulation brought the cases to the point that distributions could be made and also likely reduced fees in these cases.

29. Finally, the Fee Examiner notes that in many instances issues addressed with Retained Professionals in the prior fee applications reviewed by the Fee Examiner did not recur in the Fee Applications for the Final Interim Period.

**Recommendations on Requests for Compensation for the Final Interim Period in Each Fee Application**[3]

30. Set forth below are summaries of the Fee Examiner's review of the compensation requests for the Final Interim Period in each Fee Application, communications with each

---

[3] Two fee applications were not reviewed by the Fee Examiner and are not covered in this Final Report: the final fee application of Moelis & Company (review of which is excepted under the charge of the Fee Examiner pursuant to paragraph 7 of the Fee Examiner Order); and the third interim and final fee application of Stretto, Inc. (*see* Declaration of Disinterestedness of Lori Lapin Jones, Esq., at paragraph 6.e.i. (Doc 1267-2)).

Retained Professional, and the Fee Examiner's recommendations with respect to the fees and

expenses requested for the Final Interim Period in each of the Fee Applications.

### *Debtors' Professionals*

**Firm: Kirkland & Ellis LLP and Kirkland & Ellis International LLP ("Kirkland")**
Role: Counsel to Debtors
Period Covered: March 1, 2023 – May 19, 2023 ("Final Interim Period")
Fees Requested: $4,597,228.00
Expenses Requested: $78,196.69
Blended Hourly Rate for Attorneys: $1,294.53

31. Kirkland serves as counsel to the Debtors. The Final Interim Period covered by the

Fee Application is from March 1, 2023 through May 19, 2023. During the Final Interim Period,

Kirkland billed 3,806.90 hours utilizing 61 attorneys (28 partners, two of counsel, and 31

associates) and 22 paraprofessionals (eight paralegals, twelve junior paralegals, and two support

staff).

32. The Fee Examiner's Preliminary Report to Kirkland addressed the following

issues: transitory timekeepers; a small mathematical error; certain non-compensable work; non-

working travel time; vague time entries; level of attendance at Court hearings; and time spent on

reviewing and revising invoices. The Fee Examiner also requested further information as to the

division of the regulatory work between Kirkland and the Debtors' special regulatory counsel,

Paul Hastings LLP, during the Final Interim Period.

33. Following a review of the Fee Examiner's Preliminary Report, the Fee Examiner and

attorneys from Kirkland met at which time Kirkland provided explanations on issues raised by

the Fee Examiner, engaged in discussions with the Fee Examiner, and agreed to certain

reductions. As a result, Kirkland has agreed to a reduction of its fee request for the Final Interim

Period in the amount of $94,348.30.

34. The Fee Examiner reviewed the expenses requested by Kirkland for the Final Interim

Period. During its reconciliation process, Kirkland identified four invoices totaling $14,112.50

that were erroneously charged to these cases, and which will be withdrawn from the expense

request.  The Fee Examiner also reviewed backup documentation for certain invoices and,

following discussion, Kirkland agreed to reduce expenses by $1,716.18. Accordingly, in the

aggregate, Kirkland has agreed to reduce its expenses by $15,828.68.

35. Based on the above, the Fee Examiner recommends an award to Kirkland for the

Final Interim Period of fees in the amount of $4,502,879.70 and reimbursement of expenses in

the amount of $62,378.01.

**Firm: Paul Hastings LLP ("Paul Hastings")**
Role: Special Regulatory Counsel to Debtors
Period Covered:  March 1, 2023 – May 19, 2023 ("Final Interim Period")
Fees Requested: $475,185.90
Expenses Requested: $5,527.68
Blended Hourly Rate for Attorneys: $1,055.13

36. Paul Hastings initially served as an ordinary course professional performing

regulatory work for the Debtors.  When Paul Hastings' fees exceeded the cap for ordinary course

professionals, the Debtors sought to formally retain Paul Hastings as special regulatory counsel.

At about this time, Celsius Network LLC ("Celsius") filed a motion in these cases which the

Debtors' lead counsel, Kirkland, could not address due to a conflict. Thus, the Debtors'

application to retain Paul Hastings as special regulatory counsel also requested that Paul

Hastings be retained to represent the Debtors in connection with the Celsius matter (also referred

to as the Conflict Matter). The U.S. Trustee filed an objection to Paul Hastings' proposed

retention to the extent it included the Celsius matter, to which objection Paul Hastings replied.

Ultimately, Paul Hastings determined that it could not proceed with that portion of the

retention relating to the Celsius matter because of a conflict or connection and that portion of the retention application as it related to the Celsius matter was withdrawn with prejudice. The Court then approved the Debtors' retention of Paul Hastings solely as special regulatory counsel. The order approving Paul Hastings' retention expressly prohibits Paul Hastings from seeking compensation in connection with its representation of the Debtors for work related to the Celsius matter (Doc 1234 at ¶ 3).

37. As a Retained Professional, and no longer an ordinary course professional, Paul Hastings is required to file fee applications. The Final Interim Period covered in the Fee Application is from March 1, 2023 through May 19, 2023. During the Final Interim Period, Paul Hastings billed 371.4 hours utilizing 41 attorneys (ten partners, seven counsel, 22 associates, and two other attorneys) and nine paraprofessionals. Paul Hastings discloses that when it was retained by the Debtors in the pre-petition period (in 2021), Paul Hastings reduced its hourly rates by twenty percent (20%). Paul Hastings continued that discount in the Debtors' Chapter 11 cases.

38. The Fee Examiner's Preliminary Report to Paul Hastings addressed the following issues: certain non-compensable work; work relating to addressing and defending against the U.S. Trustee's partial objection to Paul Hastings' retention; and staffing at Court hearings.

39. Following review of the Preliminary Report, Paul Hastings agreed to a reduction of fees in the amount of $27,886.80.

40. The Fee Examiner reviewed the requests for reimbursement of expenses for the Final Interim Period and has no objections.

41. Based on the above, the Fee Examiner recommends an award to Paul Hastings for the Final Interim Period of fees in the amount of $447,299.10 and reimbursement of expenses in

the amount of $5,527.68.

**Firm: Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn")**
Role: Special Counsel for Voyager Digital, LLC (at the direction of the Special Committee)
Period Covered: March 1, 2023 – May 19, 2023 ("Final Interim Period")
Fees Requested: $155,217.15
Expenses Requested: $1,814.27
Blended Hourly Rate for Attorneys: $1,324.68

42.    Quinn serves as Special Counsel for Voyager Digital, LLC (at the direction of the Special Committee). The Final Interim Period covered in Quinn's Fee Application is from March 1, 2023 through May 19, 2023. During this Final Interim Period, Quinn billed 117.30 hours utilizing four attorneys (one partner, one counsel, one associate, and one attorney) and one managing clerk. Quinn has provided Voyager Digital, LLC with a 10% discount off its customary hourly fees.

43. The Fee Examiner's Preliminary Report noted an objection to only $479.25 of fees based on three small time entries for work that was non-compensable. Quinn agreed to this reduction.

44. The Fee Examiner reviewed Quinn's request for reimbursement of expenses and has no objection.

45. Based on the above, the Fee Examiner recommends an award to Quinn for the Final Interim Period of fees in the amount of $154,737.90 and reimbursement of expenses in the amount of $1,814.27.

**Firm: Katten Muchin Rosenman LLP ("Katten")**
Role: Special Counsel for Voyager Digital, Ltd. at the direction of its Independent Director
Period Covered: March 1, 2023 – May 19, 2023 ("Final Interim Period)"
Fees Requested: $613,347.00
Expenses Requested: $2,612.92
Blended Hourly Rate for Attorneys: $1,173.20

46. Katten serves as Special Counsel for Voyager Digital, Ltd. at the direction of its

Independent Director. The Final Interim Period covered by Katten's Fee Application is from March 1, 2023 through May 19, 2023. During the Final Interim Period, Katten billed 552.20 hours utilizing eight attorneys (four partners and four associates) and one paraprofessional.

47. The Fee Examiner's Preliminary Report to Katten identified issues based on: mathematical errors; certain potentially non-compensable work; staffing at the confirmation hearing; and time spent on preparation of fee statements.

48. Following review of the Preliminary Report, Katten provided the Fee Examiner with a detailed written response to each of the issues raised by the Fee Examiner. Thereafter, the Fee Examiner communicated with attorneys at Katten to address the Fee Examiner's objections and Katten's responses. As a result, Katten has agreed to reduce its fee request by $24,600.75.

49. The Fee Examiner reviewed Katten's request for reimbursement of expenses for the Final Interim Period and has no objection to reimbursement of the expenses requested.

50. Based on the above, the Fee Examiner recommends an award to Katten for the Final Interim Period of fees in the amount of $588,746.25 and reimbursement of expenses in the amount of $2,612.92.

**Firm: ArentFox Schiff LLP ("ArentFox")**
Role: Special Counsel to Voyager Digital Holdings, Inc. at the direction of its Independent
       Director
Period Covered: March 1, 2023 – May 19, 2023 ("Final Interim Period")
Fees Requested: $108,180.50
Expenses Requested: $910.00
Blended Hourly Rate for Attorneys: $989.51

51. ArentFox serves as special counsel to Voyager Digital Holdings, Inc. (at the direction of its Independent Director). The Final Interim Period covered in ArentFox's Fee Application is from March 1, 2023 through May 19,2023. During this Final Interim Period, ArentFox billed 119.60 hours utilizing three attorneys (two partners and one associate) and one paraprofessional.

16

52. The Fee Examiner's Preliminary Report to ArentFox identified non-compensable time in the fee application category.

53. Following a review of the Preliminary Report, ArentFox agreed to the Fee Examiner's recommended reduction of fees totaling $3,570.00.

54. The Fee Examiner reviewed the expenses requested by ArentFox for the Final Interim Period and recommended a reduction of $210.00 which reduction ArentFox agreed to.

55. Based on the above, the Fee Examiner recommends an award to ArentFox for the Final Interim Period of fees in the amount of $104,610.50 and reimbursement of expenses in the amount of $700.00.

**Firm: Potter Anderson & Corroon LLP ("Potter")**
Role: Delaware Counsel to the Debtors
Period Covered: March 1, 2023 through May 19, 2023 ("Final Interim Period")
Fees Requested: $113,507.50
Expenses Requested: $351.30
Blended Hourly Rate for Attorneys: $542.33

56. Potter is Delaware counsel to the Debtors. The Final Interim Period in Potter's Fee Application is from March 1, 2023 through May 19, 2023. During this Final Interim Period, Potter billed 212.70 hours utilizing four attorneys (three partners and one associate) and one paralegal.

57. The Fee Examiner's Preliminary Report to Potter identified a limited number of time entries for non-compensable work relating to preparation of invoices.

58. Following review of the Preliminary Report, Potter and the Fee Examiner communicated following which Potter agreed to a reduction of fees in the amount of $3,176.50.

59. The Fee Examiner reviewed the expenses requested by Potter for the Final Interim

Period and has no objection to reimbursement in full.

60. Based on the above, the Fee Examiner recommends an award to Potter for the

Final Interim Period of fees in the amount of $110,331.00 and reimbursement of expenses in the

amount of $351.30.

**Firm: Berkeley Research Group, LLC ("Berkeley")**
Role: Financial Advisors to the Debtors
Period Covered: March 1, 2023 through May 19, 2023 ("Final Interim Period")
Fees Requested: $2,619,472.00
Expenses Requested: $27,876.27
Blended Hourly Rate for All Professionals: $655.80

61. Berkeley is the Debtors' financial advisor. The Final Interim Period covered in

Berkeley's Fee Application is from March 1, 2023 through May 19, 2023. During this Final

Interim Period, Berkeley billed 3,994.30 hours utilizing 21 professionals (six managing directors,

three directors, two associate directors, two senior managing consultants, two managing

consultants, one senior associate, and five associates), one case manager and one case assistant.

62. The Fee Examiner's Preliminary Report to Berkeley noted certain non-compensable

time including relating to preparation of fee statements and Berkeley's staffing at Court hearings.

The Fee Examiner also requested further information to determine whether rebalancing work

performed by Berkeley overlapped with work performed by the Debtors' investment banker.

63. Following a review of the Preliminary Report, the Fee Examiner met with

professionals from Berkeley to discuss the issues raised by the Fee Examiner. Berkeley

also provided the Fee Examiner with further information concerning the rebalancing work

Berkeley performed in the Final Interim Period. The consultation process resulted in Berkeley

agreeing to reduce its  request for fees by $17,595.00.

64. The Fee Examiner reviewed the expenses requested by Berkeley and requested

certain supporting documentation. In providing that documentation, Berkeley reduced its request

for expenses by $100.00 based on a duplicate charge. With that reduction, the Fee Examiner has

no objection to reimbursement of the balance of expenses requested by Berkeley for the Final

Interim Period.

65. Based on the above, the Fee Examiner recommends an award to Berkeley for the

Final Interim Period of fees in the amount of $2,601,877.00 and reimbursement of expenses in

the amount of $27,776.27.


**Firm: Deloitte Tax LLP ("Deloitte Tax")**
Role: Tax Services Provider to the Debtors
Period Covered: April 1, 2023 through May 19, 2023 ("Final Interim Period")
Fees Requested: $349,166.00
Expenses Requested: N/A
Blended Hourly Rate for All Professionals: $554.32

66. Deloitte Tax serves as tax services provider to the Debtors. The Final Interim Period

covered by the current Fee Application is for a period of approximately one and a half months

from April 1, 2023 through May 19, 2023. During this Final Interim Period, Deloitte Tax billed

629.90 hours utilizing 27 professionals (seven partners, three managing directors, two senior

managers, four managers, four senior consultants, and seven consultants).

67. The Fee Examiner's Preliminary Report to Deloitte Tax noted issues based on

transitory timekeepers, non-compensable work, and a small duplicate entry.

68. Following review of the Preliminary Report, Deloitte Tax provided the Fee Examiner

with a written detailed response addressing each of the issues raised in the Preliminary Report.

Following communications with the Fee Examiner, Deloitte Tax agreed to a fee reduction of

$2,872.00.

69. Deloitte Tax did not seek reimbursement of expenses for the Final Interim Period.

70. Based on the above, the Fee Examiner recommends an award to Deloitte Tax for the

Final Interim Period of fees in the amount of $346,294.00

**Firm: Grant Thornton LLP ("Grant Thornton")**
Role: Tax Compliance and Tax Advisory Services to the Debtors
Period Covered: July 5, 2022 through March 31, 2023 ("Final Interim Period")
Fees Requested: $120,000.00
Expenses Requested: N/A
Blended Hourly Rate for All Professionals: $298.04

71. Grant Thornton provided tax compliance and tax advisory services to the Debtors

which work was ultimately transitioned to Deloitte Tax.  This is Grant Thornton's first and final

Fee Application and it covers an almost nine-month period from July 5, 2022 through March 31,

2023. During this Final Interim Period, Grant Thornton billed 404.5 hours utilizing 27

professionals (four partners, two senior managers, one experienced manager, six senior

associates, two managers, four associates, and eight analysts).

72. The Fee Examiner's Preliminary Report to Grant Thornton addressed whether

billings were in accordance with the Statement of Work, vague time entries, and non-

compensable time.

73. Following review of the Preliminary Report, Grant Thornton and the Fee

Examiner met and discussed the issues raised in the Preliminary Report. As explained to the Fee

Examiner, Grant Thornton had been engaged by the Debtors prior to the bankruptcy filings. At

that time, Grant Thornton discussed with Debtors' management that Grant Thornton's fees

would be approximately $120,000.00. The Statement of Work provided for a 50% discount on

standard hourly rates for much (but not all) of the work Grant Thornton was retained to perform.

Grant Thornton demonstrated to the Fee Examiner that discounted fees, in accordance with the

Statement of Work, amounted to approximately $128,000.00, but Grant Thornton further

voluntarily discounted its fees to $120,000.00. The issues identified by the Fee Examiner in the

Preliminary Report fell within the discount voluntarily provided by Grant Thornton.

Accordingly, the Fee Examiner has no objection to the fees requested by Grant Thornton. Grant

Thornton did not seek reimbursement of expenses.

74. Based on the above, the Fee Examiner recommends an award to Grant Thornton for

the Final Interim Period of fees in the amount of $120,000.00.

### *Creditors' Committee's Professionals*

**Firm: McDermott Will & Emery LLP ("McDermott")**
Role: Counsel to Official Committee of Unsecured Creditors
Periods Covered: – March 1, 2023 – May 31, 2023 ("Final Interim Period")
                June 1, 2023 – June 23, 2023 (June 2023)
                Post June 23, 2023 Reserve ("Reserve")
Fees Requested: $5,170,435.00 (Final Interim Period)
                $    52,207.00 (June 2023)
                $    50,000.00 (Reserve)
Expenses Requested: $151,221.11
Blended Hourly Rate for Attorneys: $1,023.84 (Final Interim Period)

75. McDermott serves as counsel to the Creditors' Committee. The Final Interim Period

covered by the Fee Application is from March 1, 2023 through May 31, 2023.  During the Final

Interim Period, McDermott billed 5,332.60 hours utilizing 67 professionals (26 partners,

three counsel, four staff attorneys, and 34 associates), one law clerk and 14 paraprofessionals.

The Fee Examiner notes that McDermott discounted its standard hourly rates by 10% for these

cases. In addition to this 10% discount, McDermott agreed to a maximum hourly rate of

$1,300.00 and, upon a rate change on notice (effective in January 2023), a maximum hourly rate

of $1,490.00.

76. The Fee Examiner's Preliminary Report to McDermott raised issues concerning:

mathematical errors; hourly rate of a non-admitted attorney; time spent preparing fee statements;

time spent working on fee applications of other Creditors' Committee professionals; rates for

non-working travel time; staffing at the confirmation hearing and another hearing; work billed by

transitory timekeepers and a staff attorney; and miscellaneous non-compensable time entries.

77. Following a review of the Preliminary Report, McDermott met with the Fee

Examiner and provided information and detailed responses to the issues raised in the Preliminary

Report. As a result of the consultation process, McDermott has agreed to reduce its fee request

for the Final Interim Period in the amount of $90,481.00.

78. Included in McDermott's final request for fees (which is in addition to the fees

requested for the Final Interim Period) is $52,207.00 for post-effective date time in June 2023

(up to the filing of McDermott's final fee application). These fees relate solely to preparing

McDermott's monthly fee statements, McDermott's Fee Application, and assisting other

Creditors' Committee professionals with finalizing and filing their monthly fee statements and

final fee applications. Any objections that the Fee Examiner had to time entries during this

period were resolved as part of and included in the reduction agreed to by McDermott as detailed

above.

79. Also included in McDermott's final fee request (which is in addition to the fees

outlined above) is a request for approval of a Reserve for $50,000.00 apparently anticipating that

its final fee application may not capture all work performed and all time billed. After a

reconciliation and consultation with the Fee Examiner, McDermott has agreed to withdraw its

request for the Reserve of $50.000.00.

80. The Fee Examiner requested backup documentation for certain expenses requested by

McDermott in the Fee Application. McDermott provided the Fee Examiner with documentation

which, upon review, was satisfactory to the Fee Examiner. Accordingly, the Fee Examiner has

no objection to the reimbursement of expenses in full sought by McDermott in the Final Interim Period.

81. Based on the above, the Fee Examiner recommends (a) an award to McDermott for the Final Interim Period of fees in the amount of $5,079,954.00 and expenses in the amount $151,221.11, (b) inclusion in the final fee award to McDermott of an award of fees in the amount of $52,207.00 representing the June 2023 fees, and (c) as agreed to by McDermott, excluded from the final fee award, the $50,000 Reserve.

**Firm: Harney Westwood & Riegels LP ("Harney")**
Role: BVI Counsel to the Official Committee of Unsecured Creditors
Period Covered: March 1, 2023 through May 18, 2023 ("Final Interim Period")
Fees Requested: $36,750.00
Expenses Requested: N/A
Blended Hourly Rate for Attorneys: $665.76

82. Harney is BVI counsel to the Creditors' Committee., The Final Interim Period covered by the Fee Application is from March 1, 2023 through May 18, 2023. During the Final Interim Period, Harney billed 55.20 hours utilizing three attorneys (one partner and two associates).

83. The Fee Examiner's Preliminary Report to Harney noted limited issues relating to non-compensable time in connection with invoices and payment.

84. Following a review of the Preliminary Report, Harney agreed to the Fee Examiner's recommended reduction of fees in the amount of $1,690.00.

85. Based on the above, the Fee Examiner recommends an award to Harney for the Final Interim Period of fees in the amount of $35,060.00.

**Firm: Cassels Brock & Blackwell LLP ("Cassels")**
<u>Role</u>: Canadian Counsel to the Official Committee of Unsecured Creditors
<u>Period Covered</u>: March 1, 2023 through May 18, 2023 ("<u>Final Interim Period</u>")
                   May 19, 2023 through July 1, 2023 ("<u>Post-Effective Date Fees</u>")
<u>Fees Requested</u>: USD $61,552.75; CAD $82,454.85 (Final Interim Period)
                      USD $  3,358.39; CAD $  4,451.15 (Post-Effective Date Fees)
<u>Expenses Requested</u>: USD $576.67; CAD $771.23
<u>Blended Hourly Rate for Attorneys</u>: USD $457.36; CAD $613.00 (<u>Final Interim Period</u>)

86. Cassels is Canadian counsel to the Creditors' Committee. The Final Interim Period covered by the Fee Application is from March 1, 2023 through May 18, 2023. During the Final Interim Period, Cassels billed 145.60 hours utilizing five attorneys three partners and two associates) and one law student. Cassels discounted its hourly rates by 10%.

87. The Fee Examiner's Preliminary Report noted no objections to the fees requested by Cassels for the Final Interim Period.

88. Cassels also seeks as part of its final fee award $3,358.39 (USD) of fees incurred after the effective date of the Plan and before Cassels filed its Fee Application. The Fee Examiner requested and reviewed the time records in support of these fees which related to preparation of Cassels monthly fee statements and its Fee Application. The Fee Examiner has no objection to these fees.

89.  The Fee Examiner reviewed the expenses requested by Cassels for the Final Interim Period. Following communications, Cassels agreed to reduce its expenses by $70.00 (USD).

90. Based on the above, the Fee Examiner recommends an award to Cassels for the Final Interim Period of fees in the amount of $61,552.75 (USD) and expenses in the amount of $506.57 (USD). The Fee Examiner also recommends inclusion in the final fee award to Cassels of fees in the amount of $3,358.39 (USD) representing the Post-Effective Date Fees.

**Firm: FTI Consulting, Inc. ("FTI")**
Role: Financial Advisor to the Official Committee of Unsecured Creditors
Period Covered: March 1, 2023 – May 19, 2023 ("Final Interim Period")
Fees Requested: $522,342.50
Expenses Requested: $325.75
Blended Hourly Rate for All Professionals: $966.23

91. FTI is the Financial Advisor to the Creditors' Committee. The Final Interim Period covered by the Fee Application is from March 1, 2023 through May 19, 2023. During the Final Interim Period, FTI billed 540.60 hours utilizing 13 professionals (two senior managing directors, four managing directors, two senior directors, two directors, two senior consultants, and one consultant).

92. The Fee Examiner's Preliminary Report to FTI raised issues concerning: implementation of rate increase for one timekeeper; transitory timekeepers; non-compensable and potentially excessive time spent on fee statements; other non-compensable time; vague time entries; and staffing.

93. Following a review of the Preliminary Report, FTI provided the Fee Examiner with a detailed response on each issue raised by the Fee Examiner. Following communications, FTI agreed to a reduction of fees in the amount of $20,601.00.

94. The Fee Examiner reviewed the expenses requested by FTI for the Final Interim Period and has no objection to reimbursement in full.

95. Based on the above, the Fee Examiner recommends an award to FTI for the Final Interim Period of fees in the amount of $501,741.50 and expenses in the amount of $325.75.

**Firm: M3 Advisory Partners, LP** ("**M3**")
Role: Financial Advisor to the Official Committee of Unsecured Creditors
Period Covered: March 1, 2023 – May 18, 2023 ("Final Interim Period")
Fees Requested: $273,519.50
Expenses Requested: $616.38
Blended Hourly Rate for All Professionals: $911.73

96. The retention of M3 as financial advisor to the Creditors' Committee resulted from FTI's conflict which arose when FTI became financial advisor to the creditors' committee in the FTX Chapter 11 cases. The role of M3 was limited to performing that work which FTI could no longer perform because of the FTX conflict.

97. The Final Interim Period covered by the Fee Application is from March 1, 2023 through May 18, 2023. During the Final Interim Period, M3 billed 300 hours utilizing three professionals (one managing director, one director, and one senior associate).

98. The Fee Examiner's Preliminary Report to M3 addressed: time spent on preparation of a monthly fee statement and fee application; staffing at the confirmation hearing; and certain potentially non-compensable time.

99. Following a review of the Preliminary Report, M3 met with the Fee Examiner and provided detailed responses to the issues raised. Based on these communications, M3 has agreed to reduce its fee request by $4,200.00.

100.    The Fee Examiner has no objection to the reimbursement of expenses sought for the Final Interim Period.

101.    Based on the above, the Fee Examiner recommends an award to M3 for the Final Interim Period of fees in the amount of $269,319.50 and expenses in the amount of $616.38.

26

**Firm: Epiq Corporate Restructuring, LLC** ("**Epiq**")
<u>Role:</u> Noticing and Information Agent to the Official Committee of Unsecured Creditors
<u>Period Covered</u>: March 1, 2023 – May 18, 2023 ("<u>Final Interim Period</u>")
<u>Fees Requested:</u> $9,556.80
<u>Expenses Requested:</u> $642.43
<u>Blended Hourly Rate for Timekeepers:</u> $173.13

102.    Epiq is Noticing and Information Agent to the Creditors' Committee. The Final

Interim Period covered by the Fee Application is from March 1, 2023 through May 18, 2023.

During the Final Interim Period, Epiq billed 55.20 hours utilizing 22 timekeepers.

103.    The Fee Examiner's Preliminary Report to Epiq requested information on certain

rate increases, identified non-compensable time, and identified one small duplicate time entry.

104.    Following a review of the Preliminary Report, Epiq provided the Fee Examiner

with the information requested and agreed to a reduction of fees in the amount of $355.30.

105.    The Fee Examiner reviewed Epiq's expenses and has no objection to

reimbursement in full of the expenses requested by Epiq in the Final Interim Period.

106.    Based on the above, the Fee Examiner recommends an award to Epiq for

the Final Interim Period of fees in the amount of $9,201.60 and expenses in the amount

of $642.43.

### Conclusion

107.    For the reasons set forth above, the Fee Examiner respectfully submits this

Final Report and recommends (a) awards of compensation in the amounts requested net of the

reductions agreed to by Retained Professionals (if applicable) for the Final Interim Period (and,

as applicable, the limited fees sought for the post-effective date period) and (b) reimbursement of

expenses in the amounts requested net of reductions agreed to by Retained Professionals (if

applicable) for the Final Interim Period, all as set forth in this Final Report and on Exhibit A.

108.    As addressed above, since the prior interim fee applications were previously

reviewed by the U.S. Trustee (first interim applications) and the Fee Examiner (second interim fee applications), the Fee Examiner did not undertake a re-review of compensation requests for periods prior to the Final Interim Period. The Fee Examiner notes that: nothing has come to the attention of the Fee Examiner that would lead her to recommend any downward adjustments of prior awards; nothing has come to the attention of the Fee Examiner that is a basis for the Court not to award holdbacks; and nothing has come to the attention of the Fee Examiner that is a reason not to recommend an award of all requested fees and expenses on a final basis, net of any reductions agreed to by Retained Professionals relating to the current or prior fee applications. Accordingly, the Fee Examiner recommends payment in full of all fees and expenses, net of agreed to reductions, on a final basis.

109.    The Fee Examiner will be available to respond to inquiries from the Court at the hearing on the Fee Applications currently scheduled for September 13, 2023 at 11:00 a.m.

Dated:  Great Neck, New York
          August 30, 2023

                                        Respectfully submitted,

                                        /s/ Lori Lapin Jones
                                        Lori Lapin Jones, Esq.
                                        Independent Fee Examiner

                                        Lori Lapin Jones PLLC
                                        98 Cutter Mill Road – Suite 255 South
                                        Great Neck, New York 11021
                                        Telephone: (516) 466-4110
                                        Email: ljones@jonespllc.com

| EXHIBIT A * | | | | | | | |
|---|---|---|---|---|---|---|---|
| FIRM | PERIOD COVERED | COMPENSATION REQUESTED | EXPENSES REQUESTED | AGREED COMPENSATION REDUCTION | AGREED EXPENSE REDUCTION | FEES RECOMMENDED FOR THE FINAL INTERIM PERIOD | EXPENSES RECOMMENDED FOR THE FINAL INTERIM PERIOD |
| **Debtors' Professionals** | | | | | | | |
| Kirkland & Ellis LLP | 3/1/23 - 5/19/23 | 4,597,228.00 | 78,196.69 | 94,348.30 | 15,828.68 | 4,502,879.70 | 62,368.01 |
| Paul Hastings LLP | 3/1/23 - 5/19/23 | 475,185.90 | 5,527.68 | 27,886.80 | 0.00 | 447,299.10 | 5,527.68 |
| Quinn Emanuel Urquhart & Sullivan, LLP | 3/1/23 - 5/19/23 | 155,217.15 | 1,814.27 | 479.25 | 0.00 | 154,737.90 | 1,814.27 |
| Katten Muchin Rosenman LLP | 3/1/23 - 5/19/23 | 613,347.00 | 2,612.92 | 24,600.75 | 0.00 | 588,746.25 | 2,612.92 |
| ArentFox Schiff LLP | 3/1/23 - 5/19/23 | 108,180.50 | 910.00 | 3,570.00 | 210.00 | 104,610.50 | 700.00 |
| Potter Anderson & Corroon LLP | 3/1/23 - 5/19/23 | 113,507.50 | 351.30 | 3,176.50 | 0.00 | 110,331.00 | 351.30 |
| Berkeley Research Group | 3/1/23 - 5/19/23 | 2,619,472.00 | 27,876.27 | 17,595.00 | 100.00 | 2,601,877.00 | 27,776.27 |
| Deloitte Tax LLP | 4/1/23 - 5/19/23 | 349,166.00 | N/A | 2,872.00 | N/A | 346,294.00 | N/A |
| Grant Thornton LLP | 7/5/22 - 3/31/23 | 120,000.00 | N/A | 0.00 | N/A | 120,000.00 | N/A |
| **Official Committee of Unsecured Creditors' Professionals** | | | | | | | |
| McDermott Will & Emery LLP | 3/1/23 - 5/31/23 | 5,170,435.00 | 151,221.11 | 90,481.00 | 0.00 | 5,079,954.00 | 151,221.11 |
| McDermott Will & Emery LLP | 6/1/23-6/23/23 | 52,207.00 | N/A | 0.00 | N/A | 52,207.00 | N/A |
| McDermott Will & Emery LLP | Reserve | 50,000.00 | N/A | 50,000.00 | N/A | 0.00 | N/A |
| Harney Westwood & Riegels LLP | 3/1/23 - 5/18/23 | 36,750.00 | N/A | 1,690.00 | N/A | 35,060.00 | N/A |
| Cassels Brock & Blackwell LLP[1] | 3/1/23 - 5/18/23 | 61,552.75 | 576.67 | 0.00 | 70.00 | 61,552.75 | 506.67 |
| Cassels Brock & Blackwell LLP[1] | 5/19/23 - 6/23/23 | 3,358.39 | N/A | 0.00 | N/A | 3,358.39 | N/A |
| FTI Consulting, Inc. | 3/1/23 - 5/19/23 | 522,342.50 | 325.75 | 20,601.00 | 0.00 | 501,741.50 | 325.75 |
| M3 Advisory Partners LP | 3/1/23 - 5/18/23 | 273,519.50 | 616.38 | 4,200.00 | 0.00 | 269,319.50 | 616.38 |
| Epiq Corporate Restructuring | 3/1/23 - 5/18/23 | 9,556.80 | 642.43 | 355.30 | 0.00 | 9,201.60 | 642.43 |
| **Total** | | **$15,331,025.99** | **$270,671.47** | | | | |

* This chart relates to requests for compensation for the last interim period and not the entirety of the period of the professional's retention, except for Grant Thornton LLP's application which is a first and final application.

[1] Amounts are in USD