Benjamin Toledano
*Pro Se* Creditor
Elkins Park, PA

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Voyager Digital Holdings, Inc., et al., | Case No. 22-10943 (MEW) |
| Debtors | (Jointly Administered) |

To The Honorable Judge Michael Wiles;

I, Benjamin Toledano, along with the backing of many other Voyager creditors would like the following points discussed and possibly ruled upon at the upcoming voyager hearing on September 13th at 11:00 AM please.

**1A)** Pending Investigations mentioned below: The full withholding of professional fees from the Attorneys for the Debtors, Kirkland & Ellis LLP, in the amount of $27,973,771.50 as well as any fees submitted moving forward, until the conclusion of those investigations. I have no objection to the reimbursement of allowed expenses.

**1B)** Pending Investigations mentioned below: The full withholding of professional fees from the Counsel for the Official Committee of Unsecured Creditors, McDermott Will & Emery LLP, in the amount of $16,481,771.20 as well as any fees moving forward, until the conclusion of those investigations. I have no objection to the reimbursement of allowed expenses.

**2A)** Using litigation fund Wind down trust money; a court ordered <u>Independent</u> investigation into the Voyager auction process for the FTX/Almeda winning bid.

**2B)** The removal of enforcing any remaining NDAs, just in regard to the auction and sale of Voyager

**2C)** Using litigation fund Wind down trust money; a court ordered <u>Independent</u> investigation into the apparent breech of Voyager Creditors' personal information and data.

**3A)** Objection in regard to Voyager not sending a tax form or letter with how much was lost (1099 variation)

**3B)** While the Voyager wind down trust is not and should not act as creditors' accountants, it would add value to the creditors if there was a "Frequently Asked Questions" (FAQ) section on the voyager website in regard to broad tax implications for the general investor; As well as a personal statement with 2 columns showing Net Dollar deposits into each crypto holding held at the time of bankruptcy in column 1, followed by the dollar amount either transferred or liquidated during the initial distribution for each crypto holding in column 2.

**4A)** One year from September 13th and each following year up until complete closure of the wind down trust, a complete and extensive filing in regard to whom The Plan Administrator is currently going after with the litigation funds and at what stage in litigation they are.

**4B)** A written statement on record that the Plan Administrator is confident in a return of at least 12-15 percent of Voyager's claim amount against 3AC.

**4C)** If the wind down trust decides not to sell Voyager's claim against 3AC, then a yearly extensive update in regard to the 3AC liquidation and when distributions would be expected is requested.

**5)** It has been claimed that there were 10's of millions of dollars available in the DAO insurance that Steven Ehrlich had at Voyager. It seems that a $10 million dollar policy was taken out just 3-4 days prior to the filling of bankruptcy. I would like an explanation of what went wrong and why the final amount collected was only $1.9 Million.

To further go into Detail with each point:

**1-2)**

The Plan Administrator has stated the following in court documents:
"Each decision I make as Plan Administrator has been, and will continue to be, made with creditor interests first in mind."
"We remain singularly focused on returning as much value to creditors as possible, as soon as possible."

These statements can not be held true until investigations into the Auction/Sale of Voyager and the apparent Voyager Data breach are looked into as part of The Plan Administrator's fiduciary duty to the Creditors.

Furthermore, precedent was set in this bankruptcy case when $445 Million was held back from Voyager creditors, pending the FTX Clawback arbitration and potential trial. So to, money should be held back from all those potentially involved in the auction process, as well as the potential Voyager Data breach, pending the investigation's results to determine what happened. Trust but Verify.

After FTX won the bid for Voyager, FTX was forced to file for Bankruptcy. Right before this happened, FTX tried some sort of merger with Binance which was announced, pending Due Diligence from Binance. Less than 24-48 hours later, Binance pulled out. While the information available to the public could be different from insider facts, it would seem that it took Binance mere days to realize the disarray that FTX was in. So the question remains; why in the weeks and months leading up to the auction and sale of Voyager was this not realized about FTX by the people overseeing the auction process? We trust that during the auction process every potential buyer was vetted thoroughly and correctly by all parties overseeing the bidding, but this must be verified independently.

If authorized, the investigation would potentially go nowhere unless the NDAs are lifted, which is why it is imperative for that to happen (if the NDAs signed are still binding).

**3)**

Precedent was already set during this bankruptcy for creditors to receive tax forms, as many received a 1099 for the 2022 tax year.
Is it in the best interest for creditors and would it add value to creditors to receive some sort of tax form, a FAQ summary, and overall statement after the initial distribution? The answer is an unquestionable yes, and from the Plan Administrator's own words is his main goal.

**4)**

While understanding that litigation against is part of bankruptcy, and understanding the need for some information being held back; it would seem in the best interest of everyone to have a court ordered deadline before extensive and unredacted information is made public who Voyager is in current litigation against.
For the creditors, they see who is currently being litigated and receive information on how far along each litigation is.
For the wind down trust this is also beneficial since those whom they go after might not want their name and potential damages exposed in this document, so they might be more willing to settle within a year's time.
By the Plan Administrator's own statement of "returning as much value to creditors as possible, as soon as possible" this would seem to benefit his goal as well as all the creditors goal with this request.

Furthermore, in regard to the 3AC claim: There are 3rd party investors who have been seen willing to pay upwards of 10 percent for claims against 3AC. My asking for an on the record statement from the Plan Administrator that Voyager expects at least 15 percent of their claim against 3AC back stems from the fact that the 3AC liquidation might not be resolved for at least 2-3 years. Getting 10 percent back now and investing it now at a conservative 5 percent back per year vs. 12-15 percent back 2-3 years down the line but adding in all the lawyer fees involved would seem to be about equal.
By the Plan Administrator's own statement of "returning as much value to creditors as possible, as soon as possible" the creditors would need assurances that waiting till the 3AC distributions are made YEARS down the line would lead to more value for us than if Voyager sold that claim now and distributed it to creditors as soon as possible.

I am hopeful that these issues can be addressed during the September 13, 2023 hearing at 11 AM.

Thank you.

Benjamin Toledano