UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC. *et al.*,[1] | ) ) ) | Case No. 22-10943 (MEW) |
| Debtors. | ) ) ) | (Jointly Administered) |

**DECLARATION IN SUPPORT OF FINAL
APPLICATION OF MOELIS & COMPANY LLC FOR COMPENSATION FOR
PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL
AND NECESSARY EXPENSES AS INVESTMENT BANKER TO THE DEBTORS
FROM JULY 5, 2022 THROUGH AND INCLUDING MAY 19, 2023**

Pursuant to a request from the Office of the United States Trustee for Region 2 (the "U.S. Trustee"), Moelis & Company LLC ("**Moelis**"), the retained investment banker to the above-captioned debtors and debtors-in-possession (the "**Debtors**"), hereby submits this declaration (this "**Declaration**") in further support of Moelis' pending final application for the allowance of compensation for professional services performed by Moelis for the period from July 5, 2022 through and including May 19, 2023 (the "**Compensation Period**"), and reimbursement of its actual and necessary expenses incurred (the "**Expenses**") during the Compensation Period [D.I. 1494] (the "**Application**"), and respectfully states as follows:[2]

**RELEVANT BACKGROUND**

1. On August 16, 2022, this Court entered an order pursuant to section 328 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended (the **"Bankruptcy Code")** authorizing

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (N/A); and Voyager Digital, LLC (8013). The location of the Debtors' principal place of business is 33 Irving Place, Suite 3060, New York, NY 10003.

[2] Moelis reserves the right to raise any and all further arguments it deems necessary during the hearing on Moelis' Application.

the Debtors to retain Moelis as their investment banker and capital markets advisor [D.I. 298] (the "**Retention Order**") effective as of July 5, 2022 (the "**Petition Date**"), pursuant to the terms and conditions set forth in the engagement letter attached thereto (the "**Engagement Letter**"), subject to certain related agreed modifications set forth in the Retention Order.

2. On March 10, 2023, the Court entered an order confirming the Debtors' Chapter 11 Plan [D.I. 1166] (the "**Plan**"), which Plan went effective on May 19, 2023.

3. On June 28, 2023, Moelis filed its pending Application, which seeks (a) allowance of compensation for services rendered in the amount of $12,261,290.32, (b) allowance of reimbursement of actual and necessary expenses in the amount of $113,101.09, and (c) payment in the amount of $2,330,295.86, representing the 20% holdback of Moelis' October, November, December, January, February, March, April and May monthly fees, and 20% of Moelis' Restructuring Fee (defined below).[3]

**RELEVANT TERMS OF ENGAGEMENT LETTER AND RETENTION ORDER**

4. As described in the Application and further explained below, Moelis seeks payment of its Monthly Fees and Expenses incurred during the Compensation Period, and its Restructuring Fee (defined below) due and owing to Moelis upon confirmation of the Plan,

---

[3] Moelis' requested compensation for the Compensation Period includes (i) Monthly Fees (as defined below) totaling $2,122,580.64 (or $200,000 per month for October, November and December 2022, and January, February, March, April and May 2023, pro rated through May 19) and (ii) a net Restructuring Fee (defined below) in the amount of $10,138,709.68. Moelis' Restructuring Fee totals $11,000,000, less a 50% crediting for each of the Monthly Fees earned and paid to Moelis pursuant to the Engagement Letter. The crediting applicable to the Restructuring Fee requested in the Application includes 50% of eight $200,000 Monthly Fees, and one prorated Monthly Fee totaling $122,580.65 (for the period from May 1, 2023 through May 19, 2023), for a total credit of $861,290.32 to be applied in reduction of Moelis' Restructuring Fee ($11,000,000 Restructuring Fee minus $861,290.32 in credits equals a net Restructuring Fee of $10,138,709.68). Thus, the fees requested by Moelis in the Application for the Compensation Period total $12,261,290.32 (Monthly Fees totaling $2,122,580.64, plus a net Restructuring Fee of $10,138,709.68, for total aggregate fees of $12,261,290.32). Eighty percent (80%) of Moelis' Restructuring Fee requested herein has already been approved and paid by Debtors pursuant to Moelis' Combined Tenth and Eleventh Monthly Fee Application [D.I. 1410], leaving twenty percent (20%) of such Restructuring Fee unpaid as of the date hereof.

pursuant to the terms of its Court approved Engagement Letter (as modified by the Retention Order).

5. Pursuant to the terms of Moelis' approved Engagement Letter, Moelis is entitled to certain "Monthly Fees" during the term of its engagement in these cases as follows:

> **During the term of this agreement, a fee of $200,000 per month (the "Monthly Fee")**, payable in advance of each month. The Company will pay the first Monthly Fee immediately upon the execution of this agreement, and all subsequent Monthly Fees prior to each monthly anniversary of the date of this agreement. Whether or not a Restructuring, Sale Transaction or Capital Transaction occurs, Moelis shall earn and be paid the Monthly Fee every month during the term of this agreement. **50% of the Monthly Fee shall be offset, to the extent previously paid, against the first Sale Transaction Fee and the Restructuring Fee.**

Retention Order, Exhibit 1 (emphasis added). This provision relating to Monthly Fees was not modified by the Retention Order. Thus, Moelis has earned and is entitled to approval of the Monthly Fees included in the pending Application.

6. Moelis' Engagement Letter defines a "Restructuring" as follows:

> **"Restructuring" means any restructuring, reorganization, repayment, refinancing, rescheduling or recapitalization of all or a material portion of the liabilities of the Company (including its direct or indirect subsidiaries), however such result is achieved, including, without limitation, through a plan of reorganization or liquidation (a "Plan") confirmed in connection with a case (a "Bankruptcy Case") commenced by or against the Company or any of its subsidiaries or affiliates under title 11 of the United States Code (the "Bankruptcy Code"),** an exchange offer or consent solicitation, covenant relief, a rescheduling of debt maturities, a change in interest rates, a settlement or forgiveness of debt, a conversion of debt into equity, or other amendments to the Company's debt instruments, an issuance of new securities, raising of new debt or equity capital, or a sale, disposition or other transfer (regardless of form), including to existing creditors of the Company, of all or a significant portion of the equity, interests, assets, properties, cash flows or businesses of the Company.

Retention Order, Exhibit 1 (emphasis added). This definition of "Restructuring" was not modified by the Retention Order, and the Debtors' Plan clearly constitutes a "Restructuring" pursuant to the approved terms of Moelis' retention in these cases.

7. Pursuant to the Retention Order, the "Restructuring Fee" to be earned by Moelis upon the occurrence of a "Restructuring" is defined as follows:

At the closing of a Restructuring, a fee (the "**Restructuring Fee**") of $11,000,000.

Retention Order at § 12b.[4]

8. The Retention Order also provided for possible credits to be applied against the Restructuring Fee, but only in the event that a "Crypto Liquidation" occurred:

**In the event of a Crypto Liquidation (as defined below) requiring the Company to retain a third-party to sell crypto and distribute the proceeds through a liquidating plan**, 50% of such third party's fees shall be credited against the Restructuring Fee, subject to a crediting cap of $2,000,000. **A "Crypto Liquidation" is the sale or conversion into USD of at least 50% of the Company cryptocurrency coins, tokens, or other blockchain-related assets (collectively "Crypto Assets")**, which is: (x) executed directly by the Company at prevailing market prices through one or more of its existing liquidity providers; (y) executed on a bilateral basis through bid list requests for the various Crypto Assets (e.g., the Company soliciting Bids Wanted in Competition or "BWICs") in one or more transactions; or (z) executed as a block trade(s) negotiated directly by the Company with one or more of its existing liquidity providers. **Notwithstanding the foregoing, any transaction that Moelis had direct involvement in soliciting or negotiating shall not be deemed a Crypto Liquidation.**

For the avoidance of doubt, a Crypto Liquidation excludes any transaction in which an Acquirer (i) purchases the Crypto Assets as part of a broader transaction (e.g., the FTX proposal publicly made on July 22nd or any variations thereof), (ii) acquires any other assets of the Company in one or a series of transactions, in addition to the Crypto Assets, or (iii) a transaction which is determined by the Official Committee of Unsecured Creditors to be preferred to a transaction available through the Bidding Procedures process that would not be a Crypto Liquidation

---

[4] Pursuant to the Retention Order, Moelis is entitled to a "Sale Transaction Fee" if all or substantially all of the Company's customer accounts are transferred in one or a series of transactions to an acquirer. However, the Retention Order further provides that:
"To the extent a Transaction is both a Sale Transaction and a Restructuring, the Company shall pay the Restructuring Fee. Notwithstanding anything to the contrary contained in this Agreement, in no event shall Moelis be paid (a) more than one Restructuring Fee; (b) more than one Sale Transaction Fee; or (c) both a Restructuring Fee and a Sale Transaction Fee."
Retention Order at § 12c. Accordingly, Moelis is entitled to and seeks only a Restructuring Fee in its pending Application.

Retention Order at § 12b (emphasis added). In order for there to have been a "Crypto Liquidation" giving rise to credits against Moelis' Restructuring Fee, the Debtors were required to retain and pay a third-party to sell or convert into USD at least 50% of the Debtors' Crypto Assets (defined above) and distribute the proceeds through a liquidating plan. *See* Retention Order at § 12b. During these cases, the Debtors never retained or paid any third-party to sell or convert greater than 50% of their Crypto Assets. In fact, to Moelis' knowledge the Debtors never retained any third-party to sell or convert any of their Crypto Assets at all.[5] Furthermore, in a process designed to obtain the highest value available for the Debtors' estates, Moelis was involved in soliciting, negotiating and/or structuring processes and procedures, and making related recommendations to the Debtors, for all Crypto Asset related transactions and conversions during these cases, and the Debtors' themselves then executed on such processes and procedures and executed all related transactions. Moelis' involvement in these transactions expressly excludes such transactions from the definition of "Crypto Liquidation" set forth above. For these reasons, no "Crypto Liquidation" occurred in these cases, and no "Crypto Liquidation" related credits apply to Moelis' requested Restructuring Fee.

9. Finally, the Engagement Letter and Retention Order both clearly provide for Moelis to be reimbursed by the Debtors for reasonable and documented out-of-pocket expenses incurred in connection with Moelis' engagement. Thus, Moelis is entitled to reimbursement of the expenses included in the pending Application.

---

[5] A review of the docket in these cases also evidences the fact that no such third-party retention was ever presented by the Debtors or approved by this Court, and no related payments were approved in these cases that should be credited against Moelis' Restructuring Fee.

**SERVICES RENDERED DURING THE COMPENSATION PERIOD**

10. As described in further detail in the Application, Moelis provided extensive and valuable investment banking and capital markets advisory services to the Debtors throughout the Debtors' chapter 11 cases, including, without limitation, extensively marketing the Debtors' assets to various potential purchasers, facilitating related due diligence, and analyzing and negotiating the terms of possible sale transactions, first with FTX (the "**FTX Sale Negotiation**") and then with Binance.US (the "**Binance.US Sale Negotiation**").

11. The FTX Sale Negotiation included working with the Debtors and their advisors to prepare, analyze, and negotiate FTX transaction documentation, and analyzing such transaction's corresponding impact on account holder recoveries. Moelis also facilitated diligence for, and helped the Debtors prepare and provide materials for FTX and other parties during this process. In addition, Moelis analyzed specific components of the FTX transaction proposal, and provided related illustrative recovery analyses and sensitivities based on crypto market performance.

12. When the FTX Sale Negotiation failed, Moelis worked with the Debtors and their advisors to prepare, analyze, and negotiate possible FTX transaction alternatives, and analyzed such alternatives' corresponding impact on account holder recoveries. Moelis facilitated further due diligence, and helped the Debtors prepare materials for various parties in interest in this process. Moelis helped management to prepare and analyze extensive financial models upon which the Debtors could evaluate various plan of reorganization alternatives.

13. Ultimately, a second possible sale transaction was negotiated with Binance.US (the "**Binance.US Sale Negotiation**").

14. Just as Moelis did in connection with the FTX Sale Negotiation, Moelis worked extensively with the Debtors' and Official Committee of Unsecured Creditors throughout the

Binance.US Sale Negotiation. Unfortunately, the Binance.US Sale Negotiation also ultimately failed when Binance.US terminated their asset purchase agreement with the Debtors for reasons beyond the control of the Debtors or Moelis.

15. Upon the termination of the Binance.US Sale Negotiation, Moelis advised and assisted the Debtors and Debtors' advisors in toggling to the self-liquidating plan and Liquidation Procedures, providing extensive input and analysis in that effort which ultimately culminated in the Debtors' Plan.

16. In short, Moelis' extensive efforts during these cases were instrumental in supporting and facilitating the Debtors' path through bankruptcy and ultimate Plan.

Accordingly, Moelis respectfully requests that final allowance be made to Moelis for 100% of its fees of $12,261,290.32 and 100% of its expenses of $113,101.09 incurred during the Compensation Period. Moelis also respectfully requests payment by the Debtors of $2,330,295.86, representing the unpaid 20% holdback of its fees during the Compensation Period.

Dated: September 11, 2023  
New York, New York

*/s/ Brian Tichenor*  
Brian Tichenor  
Managing Director  
Moelis & Company LLC