# EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*, | ) ) ) | Case No. 22-10943 (MEW) |
| Debtors.[1] | ) ) | (Jointly Administered) |

**ORDER APPROVING THE JOINT MOTION OF
THE SETTLEMENT PARTIES AND THE AHEG
FOR THE ENTRY OF AN ORDER PURSUANT TO RULE 9019
OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
(A) APPROVING (I) THE SETTLEMENT AGREEMENT AMONG
THE PLAN ADMINISTRATOR, VOYAGER DIGITAL LTD.,
VOYAGER DIGITAL HOLDINGS, INC., AND VOYAGER DIGITAL, LLC;
AND (II) THE SUBSTANTIAL CONTRIBUTION CLAIM OF THE
AHEG PARTIES IN THE SETTLEMENT AGREEMENT; (B)
APPROVING THE VOYAGER/GOVERNMENTAL CLAIMANTS
STIPULATION; AND (C) GRANTING RELATED RELIEF**

Upon the *Joint Motion of the Settlement Parties and the AHEG for the Entry of an Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (A) Approving (I) the Settlement Agreement among the Plan Administrator, Voyager Digital Ltd., Voyager Digital Holdings, Inc., and Voyager Digital, LLC; and (II) the Substantial Contribution Claim of the AHEG Parties in the Settlement Agreement; (B) Approving the Voyager/Governmental Claimants Stipulation; and (C) Granting Related Relief* (the "Motion");[2] and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and this Court having the power to enter a final order

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The location of the Voyager Digital Holdings, Inc.'s, Voyager Digital Ltd.'s, and Voyager Digital, LLC's principal place of business is 33 Irving Place, New York, NY 10003.

[2] Capitalized terms used but not defined herein shall have the same meanings ascribed to them in the Motion.

consistent with Article III of the United States Constitution; and venue being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and sufficient notice and opportunity for a hearing having been given; and no other or further notice being required; and the Court having reviewed the Motion; and after due deliberation and sufficient cause appearing therefor, IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED as set forth herein.

2. The Settlement Agreement is approved under Bankruptcy Rule 9019, and the Settlement Parties are authorized to enter into and perform under the Settlement Agreement.

3. The AHEG Substantial Contribution Claim is approved and allowed in its entirety.

4. The Voyager/Governmental Claimants Stipulation is hereby approved, and the Parties thereunder are authorized to enter into and perform under the Voyager/Governmental Claimants Stipulation.

5. The Governmental Claims of the Signatory Governmental Claimants against OpCo are subordinated to (a) Allowed Class 3 Account Holder Claims and (b) upon payment in full of such claims, Allowed Class 4A OpCo General Unsecured Claims other than Governmental Claims in that class.

6. With respect to any recovery the Signatory Governmental Claimants receive on account of the Governmental Proofs of Claim against HoldCo and TopCo, the Signatory Governmental Claimants shall contribute those funds to OpCo for distribution to Holders of Allowed Class 3 Account Holder Claims.

7. The Parties are authorized to take any action as may be necessary or appropriate to implement, effectuate and fully perform under the Settlement Agreement in accordance with herewith, including without limitation to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate to implement, effectuate and fully

perform under the Settlement Agreement in accordance herewith.

8. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the Local Rules are satisfied by such notice.

9. Notwithstanding any procedural rule to the contrary, the terms of this Order shall become effective immediately upon its entry.

10. This Court retains exclusive jurisdiction of any matter arising from or relating to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2023
       New York, New York

                                          THE HONORABLE MICHAEL E. WILES
                                          UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT 1**

**Settlement Agreement**

*Execution Version*

# RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement ("Agreement"), dated as of September 8, 2023, is entered into by and among (i) Voyager Digital Ltd. ("TopCo") at the direction of the TopCo Independent Director (defined below), (ii) Voyager Digital Holdings, Inc. ("HoldCo") at the direction of the HoldCo Independent Director (defined below), (iii) Voyager Digital, LLC ("OpCo")[1] at the direction of the OpCo Independent Director (defined below), and (iv) Paul R. Hage, in his capacity as the Plan Administrator (the "the Plan Administrator") appointed in the Chapter 11 Cases (defined below). Each of the foregoing parties is referred to herein individually as a "Party" and collectively as the "Parties".

## RECITALS

A. WHEREAS, on February 12, 2021, TopCo and OpCo entered into that certain term loan agreement in the principal amount of $70 million (the "February 2021 Term Loan"). As of the Petition Date (defined below), $78,893,457 was outstanding under the February 2021 Term Loan.

B. WHEREAS, on February 12, 2021, TopCo and OpCo entered into that certain revolving credit agreement with a maximum facility amount of $17.5 million (the "February 2021 Revolver"). As of the Petition Date, $1,477,523 was outstanding under the February 2021 Revolver.

C. WHEREAS, on October 26, 2021, HoldCo issued a promissory note to TopCo in the principal amount of $6.0 million (the "October 2021 HoldCo Promissory Note"). As of the Petition Date, $6,329,943 was outstanding under the October 2021 HoldCo Promissory Note.

D. WHEREAS, in November 2021, TopCo received a third-party equity investment in the amount of $75 million and transferred the investment to OpCo (the "November 2021 Intercompany Transfer"). As of the Petition Date, $79,270,440 was outstanding on account of the November 2021 Intercompany Transfer.

E. WHEREAS, in May 2022, TopCo received a third-party equity investment in the amount of $57 million and transferred the investment to OpCo (the "May 2022 Intercompany Transfer"). As of the Petition Date, $57,817,288 was outstanding on account of the May 2022 Intercompany Transfer.

F. WHEREAS, in June 2022, HoldCo received an investment under the Alameda Loan Facility (as defined in the Plan) in the amount of $75 million from Alameda (as defined in the Plan) for the purpose of providing funding directly to OpCo and transferred the entire investment down to OpCo (the "June 2022 HoldCo Intercompany Transfer" and, collectively with each of the transactions identified in Recitals A through E, the "Intercompany Transfers").

---

[1] Prior to the Plan Effective Date (defined herein), TopCo, HoldCo and OpCo are collectively referred to as the "Debtors" and, after the Plan Effective Date, as the "Wind-Down Debtors".

157931230

As of the Petition Date, approximately $75,528,875 million was outstanding on account of the June 2022 HoldCo Intercompany Transfer.

G. WHEREAS, the Debtors historically, in the ordinary course of business, engaged in routine business relationships with each other, including making payments by one Debtor on behalf of another, resulting in intercompany receivables between Debtor entities (the "Intercompany Receivables" and together with the Intercompany Transfers, the "Intercompany Transactions"). As of the Petition Date, the following Intercompany Receivables were outstanding: (i) approximately $138,079 owed by OpCo to HoldCo; (ii) approximately $26.3 million owed by HoldCo to OpCo; and (iii) approximately $2.1 million owed by HoldCo to TopCo.

H. WHEREAS, on July 5, 2022 (the "Petition Date"), each of TopCo, HoldCo and OpCo filed for Chapter 11 bankruptcy protection in U.S. Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), thereby commencing the Debtors' Chapter 11 cases, which are being jointly administered under Case No. 22-10943 (MEW) (the "Chapter 11 Cases").

I. WHEREAS, on the Petition Date, the board of directors of TopCo voted to appoint Matthew Ray as independent director of TopCo (the "TopCo Independent Director"), and vested the TopCo Independent Director with authority to, among other things, investigate certain prepetition intercompany transactions relating to TopCo.

J. WHEREAS, on the Petition Date, the board of directors of HoldCo voted to appoint Scott Vogel as independent director of HoldCo (the "HoldCo Independent Director"), and vested the HoldCo Independent Director with authority to, among other things, investigate prepetition intercompany transactions relating to HoldCo.

K. WHEREAS, on the Petition Date, the board of directors of OpCo established a Special Committee, consisting of independent directors Timothy Pohl and Jill Frizzley (together, the "OpCo Independent Directors", and collectively with the TopCo Independent Director and HoldCo Independent Director, the "Independent Directors"), and vested the Special Committee with authority to, among other things, investigate prepetition intercompany transactions relating to OpCo, and retained Quinn Emanuel Urquhart & Sullivan, LLP to act on behalf of and at the direction of the OpCo Independent Directors to represent OpCo. After the Plan Effective Date (defined below), Timothy Pohl became the sole OpCo Independent Director.

L. WHEREAS, on November 11, 2022, the Ad Hoc Group of Equity Holders of TopCo (the "AHEG") filed a complaint under adversary case number no. 22-01170 (the "Adversary Proceeding"), thereby commencing an adversary proceeding in the Chapter 11 Cases, seeking a declaratory judgment that TopCo's intercompany claims are valid and enforceable unsecured claims.

M. WHEREAS, prior to the commencement of the Adversary Proceeding, TopCo, at the direction of the TopCo Independent Director, retained Katten Muchin Rosenman LLP to represent TopCo in connection with its investigation of certain historical transactions between

2

TopCo and certain of its subsidiaries, and HoldCo, at the direction of the HoldCo Independent Director, retained ArentFox Schiff LLP to represent HoldCo in connection with its investigation of certain prepetition intercompany transactions relating to HoldCo.

N.     WHEREAS, on February 28, 2023, the Debtors filed their *Motion for Entry of an Order Approving the Joint Stipulation By and Among the Debtors, the FTX Debtors, and Their Respective Unsecured Creditor Committees* [Docket No. 1106] (such stipulation, the "Voyager/FTX Stipulation").

O.     WHEREAS, the Voyager/FTX Stipulation provides, among other things, that "[t]he FTX Debtors will, at the Voyager Debtors' election with the consent of the Voyager UCC, in their sole discretion, following written notice to counsel to the FTX Debtors and FTX UCC of such election, which written notice shall be given no later than the date that is 30 days after the Voyager Confirmation Hearing, (a) withdraw the Alameda Loan Facility Claims in their entirety, with prejudice to the FTX Debtors or any other party reasserting such claims, or (b) contribute the Alameda Loan Facility Claims to Voyager OpCo."

P.     WHEREAS, on April 6, 2023, the Bankruptcy Court entered an order approving the Voyager/FTX Stipulation [Docket No. 1266] (the "Voyager/FTX Order"), which order provides, among other things, that "[w]ithin five days of entry of this Order, the FTX Debtors shall withdraw the Alameda Loan Facility Claims in their entirety, with prejudice to the FTX Debtors or any other party reasserting such claims."

Q.     WHEREAS, on March 1, 2023, the Debtors entered into that certain Amended Joint Stipulation and Agreed Order Between the Debtors and Governmental Claimants [Docket No. 1124] (the "Voyager/Governmental Claimants Stipulation"), however, the Bankruptcy Court has yet to so order the Voyager/Governmental Claimants Stipulation.

R.     WHEREAS, on March 5, 2023, the Debtors filed the *Third Amended Joint Plan of Voyager Digital Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1138] (as may be amended from time to time, the "Plan").

S.     WHEREAS, on March 10, 2023, the Bankruptcy Court entered its *Corrected and Amended Order (I) Approving the Second Amended Disclosure Statement and (II) Confirming the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1166] (the "Confirmation Order"), which confirmed the Plan.

T.     WHEREAS, on May 19, 2023 (the "Plan Effective Date"), the effective date of the Plan occurred [Docket No. 1403].

U.     WHEREAS, upon the Plan Effective Date, the Plan Administrator was appointed.

V.     WHEREAS, under Article III.C.9 of the Plan, all claims arising under or related to the Intercompany Transfers, the Intercompany Receivables and any other intercompany

3

transactions by and among the Parties (collectively, the "Intercompany Claims") "shall receive the treatment for such Intercompany Claim[s] as determined by the Bankruptcy Court."

W. WHEREAS, the Debtors and Wind-Down Debtors have asserted certain Intercompany Claims against one another, and have alleged certain arguments and defenses relating to the Intercompany Claims.

X. WHEREAS, the Parties have each decided to enter into this Agreement in order to avoid the expense, inconvenience, uncertainty, and delay of litigation and to compromise, settle, forever resolve, and finally dispose of the Intercompany Claims and other matters specifically set forth below, without any admission of fault or liability.

Y. WHEREAS, the Parties agree that this Agreement shall have no force and effect in any respect unless and until it is approved pursuant to a final, non-appealable order of the Bankruptcy Court.

NOW, THEREFORE, in consideration of the mutual promises and covenants provided herein, and other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the Parties agree as follows:

1. Recitals.  Each of the Recitals set forth above is incorporated herein by reference.

2. Settlement Effective Date.  Notwithstanding anything contained herein, this Agreement and the terms contained herein shall not be effective and binding on the Parties until the date on which the following conditions precedent have been satisfied (such date, the "Settlement Effective Date"): (i) the Bankruptcy Court shall have entered a final, non-appealable order approving this Agreement; and (ii) the Bankruptcy Court shall have entered a final, non-appealable order approving the Voyager/Governmental Claimants Stipulation in form and substance reasonably satisfactory to the Plan Administrator.  The Plan Administrator shall use its reasonable best efforts to obtain Bankruptcy Court approval of this Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, and each of the Parties agrees to support and take all actions reasonably necessary to facilitate the approval of the Agreement by the Bankruptcy Court.  Without limiting the generality of the foregoing, each of the Parties agrees that it will not directly or indirectly object to, delay, impede, or take any other action to interfere with the approval of the Agreement by the Bankruptcy Court and implementing the terms contained therein.

3. Settlement of Intercompany Claims.  In full and final satisfaction of the Intercompany Claims, the Parties agree that the Intercompany Claims are hereby settled as follows:

> i. TopCo shall have an allowed general unsecured claim against OpCo in the aggregate amount of $35,235,000 to be classified in Class 4A of the Plan as an OpCo General Unsecured Claim (as defined in the Plan).

4

    ii.    HoldCo shall receive no recovery on its Intercompany Claims or any other claims against TopCo or OpCo; and each of TopCo and OpCo shall receive no recovery on their Intercompany Claims or any other claims against HoldCo.

    iii.    Any and all administrative priority expense claims under Bankruptcy Code section 503(b) held at any time by OpCo against TopCo and/or HoldCo shall be waived and released in their entirety.

    iv.    Any and all administrative priority expense claims under Bankruptcy Code section 503(b) held at any time by TopCo against OpCo and/or HoldCo shall be waived and released in their entirety.

    v.    Any and all administrative priority expense claims under Bankruptcy Code section 503(b) held at any time by HoldCo against OpCo and/or TopCo shall be waived and released in their entirety.

    vi.    No Party shall appeal, challenge or in any way seek to set aside the Voyager/FTX Order or otherwise contest the withdrawal of the Alameda Loan Facility Claims.

    vii.    If none of the AHEG, its individual members and the AHEG's professional advisors (collectively, the "AHEG Parties") object to this Agreement, the Parties shall take all actions reasonably necessary to support the allowance of the AHEG Parties' administrative priority expense claim(s) under section 503(b)(3)(D) of the Bankruptcy Code against TopCo in an amount not to exceed $1,700,000 on account of the substantial contribution made by the AHEG in the Chapter 11 Cases (the "AHEG Substantial Contribution Claim"). In the event the Bankruptcy Court does not approve the AHEG Substantial Contribution Claim as part of the motion seeking approval of this Agreement, the Parties shall affirmatively support any separate motion filed by the AHEG Parties seeking court approval of the AHEG Substantial Contribution Claim. The AHEG Substantial Contribution Claim shall be paid within five business days after any Bankruptcy Court order approving the allowance of the AHEG Substantial Contribution Claim becomes a final non-appealable order via wire transfer in accordance with the wire instructions attached hereto as Exhibit A.

    viii.    Within five (5) business days following the Settlement Effective Date, the Adversary Proceeding shall be dismissed with prejudice and without costs to any party or otherwise.

5

        ix.     Upon the Settlement Effective Date, the retention of each Independent Director by TopCo, HoldCo and OpCo, respectively, shall be terminated, except that each Independent Director and its counsel shall remain in place solely with respect to application and allowance for Professional Fee Claims (as defined in the Plan) made by professionals acting at the direction of the respective Independent Directors in accordance with the terms of the Plan.

4.     Mutual Releases.  Except as otherwise provided in Section 3 of this Agreement, each Party, on behalf of itself and its predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case in their capacity as such (collectively, the "Releasing Parties"), hereby expressly and generally releases, acquits, and discharges (i) each of the other Parties, (ii) each of the Parties' respective predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, principals, shareholders, members, partners, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case in their capacity as such, and (iii) the current and former directors (including the Independent Directors) of each of the Parties and their subsidiaries, in each case for the foregoing sub-clauses (i) through (iii), in their capacity as such (collectively, the "Released Parties"), from any and all claims, obligations, allegations, demands, promises, acts, agreements, contracts, costs, expenses, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Parties, any claims asserted or assertable on behalf of any holder of any claim against or interest in the Debtors or Wind-Down Debtors, and any claims asserted or assertable on behalf of any other entity, whether known or unknown, foreseen or unforeseen, matured or unmatured, in law, equity, contract, tort, or otherwise, by statute or otherwise, that such Releasing Parties (whether individually or collectively) ever had, now has, or may have, based on or relating to, or in any manner arising from, in whole or in part, the Intercompany Transactions and/or Intercompany Claims, the negotiation, formulation, preparation, or execution of the transactions underlying the Intercompany Claims, in each case, arising on or before the execution of this Agreement; provided, however, (a) the provisions in this Section 4 shall not operate to waive or release rights to enforce this Agreement, and (b) to the extent the releases contained in this Section 4 conflict with the terms of the Plan, the Plan shall control.

5.     Legal Capacity.  Each Party represents and warrants to each other Party that: (a) such Party has the legal capacity and authority to enter into this Agreement; (b) such Party has the legal capacity and authority to enter into and perform all of the terms of this Agreement that constitute the voluntary, legal, valid, and binding obligation of said Party; (c) the signatory on behalf of such Party has the legal capacity and authority to execute and deliver this Agreement on behalf of such Party and to bind such Party to adhere to the terms of this Agreement; and (d) such Party is the sole owner of any claims and matters subject to respective releases hereunder.

6.     No Admission of Fact or Liability.  Each of the Parties understands and agrees that this Agreement affects the settlement of Intercompany Claims, which are contested.

Nothing contained in this Agreement is or shall be construed as an admission by any of the Parties of any fact or liability of any kind.

7. <u>No Assignment</u>.  The Parties represent and warrant that they have not assigned, nor in any way conveyed, transferred, or encumbered, all or any portion of the claims or rights covered by this Agreement.

8. <u>Binding Effect</u>.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors.

9. <u>Entire Agreement</u>.  This Agreement is the entire Agreement of the Parties and succeeds all prior agreements, whether oral or in writing.  This Agreement cannot be modified, supplemented, or amended unless agreed in advance, in writing, and signed by all the Parties.  The Parties acknowledge and represent that in executing this Agreement, they have not relied upon any inducements, promises, or representations made by one of the other Parties or any entity representing or serving such other Party not already included in the Agreement.  The Parties have carefully read this Agreement and execute this Agreement of their own free will.

10. <u>Interpretation</u>.  The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any Party.  No Party shall be deemed the drafter of this Agreement.  The Parties acknowledge that the terms of the Agreement are contractual and are the product of arms-length negotiations negotiations among the Parties. The Parties cooperated in the drafting and preparation of the Agreement.  In any construction to be made of the Agreement, the Agreement shall not be construed against any Party.

11. <u>Choice of Law and Forum Selection</u>.  The laws of the State of New York, without giving effect to its conflict of law provisions, shall govern any dispute, claim, action, or proceeding relating to or arising out of this Agreement.  The parties agree that any action to enforce the terms of this Agreement shall be brought before the Bankruptcy Court.

12. <u>Counterparts</u>.  This Agreement may be executed in multiple counterparts by the Parties hereto.  All counterparts so executed shall constitute one agreement binding upon all Parties, notwithstanding that all Parties are not signatories to the original or the same counterpart.  Each counterpart shall be deemed an original Agreement, all of which shall constitute one Agreement to be valid as of the date of this Agreement.  Email, executed documents scanned and transmitted electronically, and electronic signatures shall be deemed original signatures for purposes of this Agreement and all matters related thereto, with such Email, scanned, and electronic signatures having the same legal effect as original signatures.

13. <u>Further Assurances</u>.  Each of the Parties shall do and perform, or cause to be done and performed, all such further acts and things, and shall execute and deliver all such other arrangements and documents, as any of the other Parties may reasonably request in order to carry out the intent and accomplish the purposes of this Agreement and the consummation of the transactions contemplated hereby.

14. <u>Waiver</u>.  No waiver of any provision of this Agreement shall constitute a waiver of any other provision, nor shall such waiver constitute a continuing waiver.

15. <u>Severability</u>.  If any provision of this Agreement is determined by the Bankruptcy Court or other tribunal of competent jurisdiction to be invalid, illegal, or unenforceable, such determination shall not affect or impair the validity, legality, or enforceability of the remaining provisions, which shall remain in full force and effect, to the extent that enforcement of the remaining provisions would be consistent with the Parties' intent, as contained in the Recitals to this Agreement.

16. <u>Acknowledgment of Counsel</u>.  Each Party acknowledges that it was represented by counsel.  Accordingly, any rule of law or any legal decision that would provide any Party with a defense to the enforcement of the terms of this Agreement against such Party based upon lack of legal counsel shall have no application and is expressly waived.

17. <u>Headings</u>.  The headings contained in this Agreement are for convenience of reference only and will have no effect on the interpretation or operation hereof.

[remainder of page is intentionally omitted]

**IN WITNESS WHEREOF**, the Parties hereby execute this Agreement.

**VOYAGER DIGITAL LTD. AT THE DIRECTION OF ITS INDEPENDENT DIRECTOR**

By: _____
Name: Matthew Ray
Title: TopCo Independent Director

By: _____
Steven J. Reisman
Katten Muchin Rosenman LLP
50 Rockefeller Plaza
New York, NY 10200

*Counsel for Voyager Digital Ltd., at the direction of the TopCo Independent Director*

**VOYAGER DIGITAL HOLDINGS, INC. AT THE DIRECTION OF ITS INDEPENDENT DIRECTOR**

By: _____
Name: Scott Vogel
Title: HoldCo Independent Director

By: _____
Jeffrey R. Gleit
ArentFox Schiff LLP
1301 Avenue of the Americas
New York, NY 10019

*Counsel for Voyager Digital Holdings, Inc., at the direction of the HoldCo Independent Director*

**VOYAGER DIGITAL, LLC AT THE DIRECTION OF ITS INDEPENDENT DIRECTOR**

By: _____
Name: Timothy Pohl
Title: OpCo Independent Director

By: _____
Susheel Kirpalani
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010

*Counsel for Voyager Digital LLC at the direction of the OpCo Independent Director*

**PLAN ADMINISTRATOR**

By: _____
Name: Paul R. Hage
Title: Plan Administrator

By: _____
Darren Azman
McDermott Will & Emery LLP
One Vanderbilt Avenue
New York, NY 10017

*Counsel for the Plan Administrator*

[Signature Page to Release and Settlement Agreement]

## **EXHIBIT A**

**WIRE INSTRUCTIONS**

Banking information redacted