**MCDERMOTT WILL & EMERY LLP**
Darren Azman
Joseph B. Evans
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone: (212) 547-5400
Facsimile: (212) 547-5444

**MCDERMOTT WILL & EMERY LLP**
Charles R. Gibbs (admitted pro hac vice)
Grayson Williams (admitted pro hac vice)
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201-1664
Telephone: (214) 295-8000
Facsimile: (972) 232-3098

**MCDERMOTT WILL & EMERY LLP**
Gregg Steinman (admitted pro hac vice)
333 SE 2nd Avenue, Suite 4500
Miami, FL 33131-2184
Telephone: (305) 329-4473
Facsimile: (305) 503-8805

*Counsel to the Plan Administrator*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re*: | Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*, | Case No. 22-10943 (MEW) |
| Debtors.[1] | (Jointly Administered) |

## THE PLAN ADMINISTRATOR'S *EX PARTE* MOTION FOR ENTRY OF AN ORDER PURSUANT TO FEDERAL RULES OF BANKRUPTCY PROCEDURE 2004 AND 9016 AUTHORIZING AND DIRECTING SUBPOENA FOR THE PRODUCTION OF DOCUMENTS BY, AND THE EXAMINATION OF, <u>METROPOLITAN COMMERCIAL BANK</u>

---

[1] The Wind-Down Debtor in these chapter 11 cases, along with the last four digits of each Wind-Down Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The service address for purposes of these chapter 11 cases is 27777 Franklin, Suite 2500, Southfield, MI 48034.

Paul R. Hage, in his capacity as the Plan Administrator (the "Plan Administrator")

for the *Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates*

*Pursuant to Chapter 11 of the Bankruptcy Code* (the "Bankruptcy Code") [Docket No. 1166-1]

(the "Plan") of Voyager Digital Holdings, Inc., *et al.* (collectively, the "Wind-Down Debtor",

or "Voyager"), hereby submits this *ex parte* motion (the "Motion"), for the entry of an order,

substantially in the form attached hereto as **Exhibit A** (the "Order"), pursuant to section 105 of

the Bankruptcy Code, Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and Local Rule 2004-1 of the Local Bankruptcy Rules for the Southern

District of New York (the "Local Rules").

The requested Order authorizes the Plan Administrator to serve a subpoena

substantially in the form attached hereto as **Exhibit B** (the "Subpoena") for the production of

documents by, and the examination of, Metropolitan Commercial Bank ("MCB" or "Rule 2004

Party").[2]  In support of this Motion, the Plan Administrator represents as follows:

## PRELIMINARY STATEMENT

1.    The Plan Administrator respectfully requests that the United States Bankruptcy

Court for the Southern District of New York (the "Court") enter the Order authorizing him to issue

the Subpoena for testimony and the production of documents from MCB pursuant to Bankruptcy

Rule 2004 and the Plan. The Plan Administrator is a fiduciary appointed under the Plan who is

expressly charged with the responsibility of "seeking the examination of any Person pursuant to

Federal Rule of Bankruptcy Procedure 2004 [.]"[3]

---

[2] The Plan Administrator requests that any Rule 2004 Party that is not a natural person be required to designate a
representative of such Rule 2004 Party who is most knowledgeable about the matters for examination set forth in the
Subpoena pursuant to Federal Rule of Civil Procedure 30(b)(6).
[3] Docket No. 1166.

2.      MCB possesses information that relate to the "liabilities and financial condition of the debtor" and would "affect the administration of the debtor's estate." *See* Fed. R. Bank. P. 2004 (b). MCB had substantial business dealings with Voyager. For instance, Voyager and MCB entered into an FBO Account Services Agreement (the "FBOA") for MCB to provide account and transfer services for Voyager's customers' fiat currency. The FBOA provides that, "[MCB] hereby appoints Client [i.e. Voyager] as Bank's representative to market, offer [,] and sell crypto currency exchange services, and other related products[.]"[4] All fiat that was deposited by customers into Voyager was initially deposited to an MCB FBO account. The MCB FBO account was the account by which all Voyager fiat money transmission was conducted. In addition, MCB and Voyager jointly marketed Voyager's products.

3.      Given Voyager's substantial relationship and dealings with MCB, the Subpoena seeks information well within the ambit of Rule 2004. The Subpoena is narrowly tailored, will not unduly burden MCB, and properly relates to "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(a) (b).

## JURISDICTION AND VENUE

4.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory predicates for the relief requested herein are Section 105 of the Bankruptcy Code and Bankruptcy Rules 2004 and 9016.

---

[4] FBOA § 2.1

## BACKGROUND

7.      On July 5, 2022 (the "Petition Date"), the Wind-Down Debtor filed voluntary petitions for relief in the Court under the Bankruptcy Code.

8.      On March 10, 2023, the Court entered the Corrected and Amended Order approving the Plan, pursuant to which third parties could contribute their claims to the Wind-Down Debtor, and such claims became the Wind-Down Debtor's assets as of May 19, 2023, the Effective Date of the Plan.[5]

9.      Pursuant to the Plan, the Plan Administrator is the sole representative of the Wind-Down Debtor and has authority to administer, pursue, prosecute, litigate, settle, dismiss or otherwise take action with respect to the Wind-Down Debtor's claims—including assigned claims from third parties. Specifically, the Plan tasks the Plan Administrator with seeking Bankruptcy Rule 2004 examinations of any individual, partnership, and corporation.[6]

10.     On June 3, 2019, Voyager and MCB entered into the FBOA for MCB to provide all services associated with the transfer and holding of fiat currency in Voyager customer accounts. The MCB FBO account was the account by which all Voyager fiat money transmission was conducted. Voyager customers would link their personal bank accounts to the Voyager App and use the Voyager App to transfer funds to FBO accounts held at MCB. Under the FBOA, MCB appointed Voyager as MCB's "representative to market, offer [,] and sell crypto currency exchange services, and other related products […]" The FBOA gave MCB robust unilateral audit and inspection rights of Voyager information and documents, and the parties agreed that "MCB

---

[5] Docket No. 1166-1, 1405.
[6] Docket No. 1166-1. ("Responsibilities of the Plan Administrator shall be identified in the Plan Administrator Agreement and shall include . . . seeking the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004.").

exercises primary authority and control over" the program that MCB and Voyager developed and implemented jointly.

11.    Voyager's Customer Agreement was attached to the FBOA. Pursuant to the Voyager Customer Agreement, "[c]ash deposited into Customer's [Voyager] Account is maintained in an omnibus account at [MCB], which is a member of the Federal Deposit Insurance Corporation […] [MCB] provides all services associated with the movement of and holdings of USD in connection with the provision of each Account." All fiat currency that was deposited by customers into Voyager was initially deposited into a MCB bank account.

12.    In addition, according to Voyager's CEO Steve Ehrlich, MCB told Voyager that, under the FBOA, Voyager could operate everywhere, and that Voyager did not need to obtain independent money transmitter licenses.

13.    The Plan Administrator is seeking information concerning that statement, MCB's knowledge of the truth or falsity of the marketing materials and of other representations relating to Voyager, MCB's knowledge and views concerning Voyager's regulatory and licensing status, MCB's knowledge and views concerning Voyager Earn Program[7] and related lending program, and its knowledge and views of the overall safety and risk profile of the Voyager platform.

14.    Accordingly, the Plan Administrator is seeking to issue the Subpoena pursuant to Bankruptcy Rule 2004 to MCB, which is likely in possession of this critical information "which may affect the administration of the estate." *See* Fed. R. Bankr. P. 2004(b). The information requested herein properly relates to "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." *Id.*

---

[7] Voyager Earn Program" means the investment product "Earn" launched by Voyager in or around late 2019. Voyager Earn Program, https://www.investvoyager.com/earn/ (last updated June 1, 2023).

## RELIEF REQUESTED

15.    By this Motion, the Plan Administrator respectfully requests entry of an order, substantially in the form of the Order attached hereto as **Exhibit A**, authorizing the Plan Administrator to serve the Subpoena for Rule 2004 examinations substantially in the form attached hereto as **Exhibit B** on MCB.

## BASIS FOR REQUESTED RELIEF

### I.    Powers and Duties of the Plan Administrator

16.    Pursuant to section 1123(b) of the Bankruptcy Code, a plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate" or the retention and enforcement by "a representative of the estate appointed for such purpose, of any such claim or interest." Moreover, pursuant to Bankruptcy Rule 2004, "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a) (b).

17.    Under the Plan, the Plan Administrator is a "party in interest" entitled to conduct Bankruptcy Rule 2004 examinations for the following reasons.

18.    *First,* the Plan appointed the Plan Administrator as the sole representative of the Wind-Down Debtor and vested in him the authority to administer, pursue, prosecute, litigate, settle, dismiss or otherwise take action with respect to the Wind-Down Debtor's claims and causes of action.

19.    *Second,* the Plan expressly tasks the Plan Administrator with the responsibility to seek "the examination of any [individual, partnership, and corporation] pursuant to the Federal Rule of Bankruptcy Procedure 2004."[8]

---

[8] Docket No. 1166.

20.     *Finally*, the Plan Administrator has a fiduciary obligation to stakeholders to make an informed decision as to whether potential claims exist, and if so, whether to pursue them. Conducting Rule 2004 examinations will allow the Plan Administrator to seek the information necessary to discharge this fiduciary obligation.

## II.     Applicable Law

21.     As explained above, Bankruptcy Rule 2004 provides that, "on motion of any party in interest, the court may order examination of any entity" related to "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." Fed. R. Bankr. P. 2004(a) (b). *In re China Fishery Group Ltd*., 2017 WL 3084397 at *4 (Bankr. S.D.N.Y. 2017); *In re SunEdison, Inc*., 562 B.R. 243, 249 (Bankr. S.D.N.Y. 2017).

22.     The purpose of a Bankruptcy Rule 2004 examination is to "assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *In re Recoton Corp*., 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) (allowing Rule 2004 examination because "on its face the Motion appears to be a legitimate attempt to investigate potential claims that might benefit the bankruptcy estates.") Bankruptcy Rule 2004 permits discovery "to determine the extent of the estate's assets and recover those assets for the benefit of creditors." *In re Madison Williams & Co., LLC*, 2014 WL 56070, at *3 (Bankr. S.D.N.Y. 2014) (holding that non-party witnesses were not entitled to a protective order with respect to the scope of discovery sought under the Bankruptcy Rule 2004 examination because "the scope of the information sought was properly within the scope of permissible inquiry by [the Trustee] in investigating the acts, conduct, or property of the debtor"); *see also In re Duratech Indus., Inc*., 241 B.R. 291, 296 (Bankr. E.D.N.Y. 1999) (explaining that

Bankruptcy Rule 2004 facilitates "the central purpose of a bankruptcy case, namely, to maximize the distribution of assets or plan payments to unsecured creditors").

23.     The party seeking Bankruptcy Rule 2004 discovery has the burden to show good cause for the examination it seeks, and the decision to grant the requested relief lies within the sound discretion of the Bankruptcy Court.  *See In re Bernard L. Madoff Inv. Secs. LLC*, 2014 WL 5486279, at *2 (Bankr. S.D.N.Y. 2014).  Good cause is established when a Bankruptcy Rule 2004 examination is used for the purpose of "'discovering assets, examining transactions, and determining whether wrongdoing has occurred' on behalf of the Debtors' estate." *In re Gawker Media LLC*, 2017 WL 2804870 at *5 (Bankr. S.D.N.Y. 2017) (allowing Plan Administrator to conduct 2004 Examination when the proceeds of litigation will be paid to the creditors under the Plan). As long as the examination is not designed to "abuse or harass" a third party, the court will allow it.  *See In re Recoton Corp.*, 307 B.R. at 755.

24.     The scope of discovery allowed under Bankruptcy Rule 2004 is "very broad and great latitude of inquiry is ordinarily permitted." *In re Madison Williams*, 2014 WL 56070, at *3. "It is well settled that the scope of examination allowed under Bankruptcy Rule 2004 is broader than discovery allowed under the Federal Rules of Civil Procedure and may be in the name of a 'fishing expedition.'" *In re Hughes*, 281 B.R. 224, 231 (Bankr. S.D.N.Y. 2002) (denying motion to quash Bankruptcy Rule 2004 subpoenas because the subpoenas enable the Joint Liquidators to exercise the powers entrusted by the court, which is to investigate the debtor's "financial affairs, and contribute to an economical and expeditious administration of this estate").

25.     Courts routinely allow examination of third parties who have had prior business dealings with the debtor. *See In re Recoton Corp.*,307 B.R. at 755 ("Any third party who has a relationship with a debtor may be made subject to a Rule 2004 investigation").

26.     Additionally, Bankruptcy Rule 2004 examinations are appropriate with respect to assigned claims as "the assignment of a nondebtor's claim against another nondebtor may constitute property of the estate if such assigned claim became part of the bankruptcy estate as a result of a post-petition transaction by the trustee and in accordance with the trustee's duties to administer the debtor's estate." *In re Ecam Publ'ns, Inc*., 131 B.R. 556, 561 (Bankr. S.D.N.Y. 1991). *See also Semi-Tech Litig., LLC v. Bankers Trust Co.*, 272 F. Supp. 2d 319, 323-24 (S.D.N.Y. 2003)*, aff'd & adopted,* 450 F.3d 121, 123 (2d Cir. 2006) (holding that the liquidating trust has standing to bring third party claims assigned to it under a confirmed Chapter 11 plan).

### III.     Good Cause Exists to Allow the Plan Administrator's Rule 2004 Subpoena

27.     The Subpoena requested herein fits squarely within the purpose of Bankruptcy Rule 2004, as the Plan Administrator seeks to examine a third party, with whom Voyager had substantial business dealings, for the purpose of "discovering assets, examining transactions, and determining whether wrongdoing has occurred." *In re Gawker Media LLC*, 2017 WL 2804870 at *5. MCB's business dealings with Voyager provided substantial assistance to Voyager in engaging in the activities that are now or were the subject of complaints and investigations by governmental entities. Accordingly, the Plan Administrator has demonstrated that good cause exists for issuing the Subpoena.

### NOTICE

28.     Pursuant to Judge Wiles' Chambers Rules on 2004 Orders, "[r]equests for 2004 orders may be submitted *ex parte* but the Court, in its discretion, may require notice and a hearing." The Plan Administrator is proceeding with this Motion on an *ex parte* basis. Courts in this district and others have recognized that a Bankruptcy Rule 2004 examination may be commenced by an *ex parte* motion. *See In re Toft*, 453 B.R. 186, 198 (Bankr. S.D.N.Y. 2011) (noting that "an

examination under Bankruptcy Rule 2004 may be commenced by an *ex parte* motion"); *In re Kramer*, 492 B.R. 366, 372 (Bankr. E.D.N.Y. 2013) (noting "[t]he Rule 2004 Application could have been made *ex parte*" and that "Rule 2004 does not require notice"). Indeed, bankruptcy courts in this district have recently granted similar requests to serve subpoenas *ex parte*. *See, e.g., In re Celsius Network LLC, et al.*, Case No. 22-10964 (MG), Docket No. 2701 (S.D.N.Y. Bankr. 2023) (granting *ex parte* motion for Rule 2004 examinations).  Accordingly, requests for relief under Bankruptcy Rule 2004(a) are usually granted *ex parte. See In re Silverman*, 36 B.R. 254, 256-57 (Bankr. S.D.N.Y. 1984).

29.    Although this Motion is being filed *ex parte*, any concerns regarding notice or due process are addressed by the fact that any person or entity ultimately served with a Subpoena will receive a copy of the Order and they may contest the scope or issuance of any Subpoena.  MCB will have ample opportunity to seek from this Court protection from any Subpoena or information sought by the Subpoena issued by the Plan Administrator that MCB believes it has a basis to challenge.

30.    Based on the foregoing, the Plan Administrator submits that the Motion can and should be granted *ex parte*, and that no further notice should be required.

## NO PRIOR REQUEST

31.    No prior request for the relief requested herein has been made by the Plan Administrator to this Court or any other court.

## RESERVATION OF RIGHTS

32.    The Plan Administrator reserves all rights, claims, defenses, and remedies, including, without limitation, the right to amend, modify, or supplement this Motion, to seek additional discovery from any party, add additional parties, or to raise additional grounds for granting this Motion during any hearing on the Motion, if one should be held.

## CONCLUSION

**WHEREFORE**, for the reasons stated herein, the Plan Administrator respectfully requests that this Court enter an Order, pursuant to Bankruptcy Rule 2004, substantially in the form attached hereto as **Exhibit A**, authorizing the issuance of the Subpoena for testimony and the production of documents from MCB, and granting to the Plan Administrator such other and further relief as this Court may deem just and proper.

Dated:  October 12, 2023
     New York, New York

                                       **MCDERMOTT WILL &EMERY LLP**

                                       */s/ Joseph B. Evans*
                                       Joseph B. Evans
                                       One Vanderbilt Avenue
                                       New York, New York 10017-3852
                                       Telephone: (212) 547-5400
                                       Facsimile: (212) 547-5444
                                       E-mail: jbevans@mwe.com

                                       *Counsel to the Plan Administrator*

**<u>Exhibit A</u>**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:<br><br>VOYAGER DIGITAL HOLDINGS, INC., et al.,[1]<br><br><div align=center>Debtors.</div> | Chapter 11<br><br>Case No. 22-10943 (MEW)<br><br>(Jointly Administered) |

### ORDER PURSUANT TO RULES 2004 AND 9016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING DISCOVERY, AND EXAMINATION OF, METROPOLITAN COMMERCIAL BANK

Upon the *ex parte* Motion by the Plan Administrator[2] seeking an Order from this Court authorizing and directing discovery from MCB; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. §157(b)(2); and the Court having found that the venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interest of the Debtors' estates, their creditors and other parties in interest; and the Court having found that no notice of the relief sought being required or necessary; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation; and sufficient cause appearing, it is hereby **ORDERED** that:

1. The Motion is **GRANTED** to the extent provided herein.

---

[1] The Wind-Down Debtor in these chapter 11 cases, along with the last four digits of each Wind-Down Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The service address for purposes of these chapter 11 cases is 27777 Franklin, Suite 2500, Southfield, MI 48034.

[2] Capitalized terms herein shall have the same meaning as defined in the Wind-Down Debtor's Motion.

2. The Plan Administrator is authorized to serve the Subpoena on MCB, including any person or entity the Plan Administrator, through his investigation, may identify as having been involved in or having knowledge of any claim or potential claim.

3. MCB shall designate a representative who is most knowledgeable about the matters for examination set forth in the Subpoena pursuant to Federal Rule of Civil Procedure 30(b)(6).

4. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

5. This Order is without prejudice to the rights of the Plan Administrator to apply for other or further discovery from any party in interest or other entity or person.

6. This Order is without prejudice to the rights of the Rule 2004 Party to object in accordance with the applicable rules.

Dated: _____, 2023
   New York, New York

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

## **Exhibit B**

**Proposed Subpoena**

# UNITED STATES BANKRUPTCY COURT

Southern _____ District of _____ New York _____

In re VOYAGER DIGITAL HOLDINGS, INC., et al.,                    Case No.  22-10943 (MEW)

                                        Debtor                   Chapter  11 _____

## SUBPOENA FOR RULE 2004 EXAMINATION

To:  Metropolitan Commercial Bank

*(Name of person to whom the subpoena is directed)*

☒  *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure.  A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
| MCDERMOTT WILL & EMERY LLP; One Vanderbilt Avenue; New York, New York 10017-3852 Zoom link will be provided for remote participation | TBD |

The examination will be recorded by this method:   By videographic or stenographic means _____

☒  *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See **Schedule A** attached hereto; documents to be produced to the offices of MCDERMOTT WILL & EMERY LLP; One Vanderbilt Avenue; New York, New York 10017-3852; Attn: Joseph B. Evans; Email:  jbevans@mwe.com

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _____

                    CLERK OF COURT

                                        OR

        _____              _____
        *Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* Paul R. Hage, in his capacity as the Plan Administrator _____, who issues or requests this subpoena, are:

Joseph B. Evans: One Vanderbilt Avenue New York, New York 10017-3852
Telephone: (212) 547-5400; E-mail: jbevans@mwe.com.

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____
_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the
witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## SCHEDULE A

PLEASE TAKE NOTICE that, pursuant to Rule 2004(c) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") and Rule 45 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 9016 of the Bankruptcy Rules, and Rule 2004-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New York, Paul R. Hage, in his capacity as the Plan Administrator (the "Plan Administrator") for the *Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "Bankruptcy Code") [Docket No. 1166-1] (the "Plan") of Voyager Digital Holdings, Inc., *et al.* (collectively, the "Wind-Down Debtor" or "Voyager") hereby requests that Metropolitan Commercial Bank ("MCB") produce the following Documents and information in response to the requests contained herein (the "Requests") in its possession, custody, or control to the offices of McDermott Will & Emery LLP, One Vanderbilt Avenue New York, New York 10017-3852, at such date and time upon which the parties may mutually agree or may be ordered by the United States Bankruptcy Court for the Southern District of New York (the "Court").

PLEASE TAKE FURTHER NOTICE that the Plan Administrator reserves his rights under the Bankruptcy Code and any applicable law regarding the subject matter hereof to amend, supplement, and/or modify the Requests in accordance with the Bankruptcy Code, the Bankruptcy Rules, and other applicable law.

### DEFINITIONS

The following definitions of terms apply to all Requests and Topics. All words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.

1.      The following rules of construction shall apply to all discovery requests:

    a.      the connectives "**and**" and "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

    b.      the use of the present or past tense shall be construed to include both the present and past tenses as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

    c.      "**any**" and "**each**" shall be construed to include and encompass "**all**"; and

    d.      the use of the singular form of any word includes the plural and vice versa.

2.      Any references to a corporation, partnership, proprietorship, association, organization, or any other business or legal entity (Including any of the Debtors) shall be deemed to include the corporation's, partnership's, proprietorship's, association's, organization's, or other business or legal entities' agents, accountants, advisors, employees, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors, successors, assigns, or any other person acting or purporting to act on behalf of the corporation, partnership, proprietorship, association, organization, or other business or legal entity.

3.      "MCB" "You" and "Your" shall mean Metropolitan Commercial Bank, Including, as applicable, its predecessors, successors, partners, joint ventures, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, employees, agents, representatives, consultants, attorneys, auditors, accountants, consultants or any other Person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

4.      "<u>3AC</u>" shall mean Three Arrows Capital, Ltd., and all other entities affiliated with what is commonly known as 3AC, Including their predecessors, successors, partners, joint ventures, subsidiaries, affiliates, divisions, directors (especially Su Zhu, Kyle Davies, and Tim Lo), officers, principals, trustees, employees, agents, representatives, consultants, attorneys, auditors, accountants, consultants or any other Person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

5.      "<u>Terraform</u>" shall mean Terraform Labs PTE Ltd., and all other entities affiliated with what is commonly known as Terraform, Including their predecessors, successors, partners, joint ventures, subsidiaries, affiliates, divisions, directors (especially Do Hyeong Kwon), officers, principals, trustees, employees, agents, representatives, consultants, attorneys, auditors, accountants, consultants or any other Person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

6.      "<u>Voyager</u>" shall mean Voyager Digital Ltd., Voyager Digital, LLC, Voyager Digital Holdings, Inc., Voyager Digital Canada, Ltd., and all other entities affiliated with what is commonly known as Voyager (https://www.investvoyager.com), Including, as applicable, its predecessors, successors, partners, joint ventures, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, employees, agents, representatives, consultants, attorneys, auditors, accountants, consultants or any other Person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

7.      "<u>Voyager Engagement</u>" shall mean any work, service, product, thing, or information of value that You have performed or provided, or engaged any third parties to perform or provide, for or on behalf of Voyager or any of Voyager's products or services.

8.    "Voyager Earn Program" shall mean the investment product "Earn" launched by Voyager in or around late 2019.[1]

9.    "Voyager Interest Program" shall mean the investment product launched by Voyager in or around late 2019.[2]

10.    "Voyager Loyalty Program" shall mean the tier-based reward program launched by Voyager in or around late 2020.[3]

11.    "Voyager Reward(s) Program" "Reward Program" or "Rewards Program" shall mean all reward programs or investment products launched by Voyager, Including, Voyager Earn Program, Voyager Interest Program, and Voyager Loyalty Program.

12.    "Cryptocurrency" means all digital assets that are traded on a blockchain, and shall be interpreted broadly to include all types of digital assets, Including virtual currency, tokens, ERC-20 compliant tokens, security tokens, utility tokens, stablecoins, and any other digital assets. This includes, but is not limited to, Bitcoin, Bitcoin Cash, Ethereum, USD Coin (USDC), VGX, Tether (USDt), Dai, IDOL, XRP, Cardano, Polkadot, Binance Coin, Litecoin, Chainlink, Stellar, Dogecoin, Aave, Uniswap, Wrapped Bitcoin, Bitcoin SV, EOS, Monero, Maker, Cosmos, TRON, NEM, Synthetix, Tezos, THETA, Compound, VeChain, Neo SushiSwap, Huobi Token, UMA, Elrond, IOTA, Solana, and any other digital asset, Including all derivative instruments based on any of the foregoing assets.

---

[1] Voyager, *Voyager Earn Program*, https://www.investvoyager.com/earn/ (last updated June 1, 2023).
[2] Voyager, *Earn Interest on Bitcoin*, https://www.investvoyager.com/blog/3-interest-on-bitcoin/ (last updated Oct. 23, 2018, 11:47 EDT).
[3] Voyager, *The Voyager Loyalty Program,* https://www.investvoyager.com/vlp/ (last visited Aug. 17, 2023).

13.    "<u>Agreement</u>" shall mean any Agreement between MCB and Voyager, Including the FBO Account Services Agreement (the "<u>FBOA</u>"), dated June 3, 2019 and the ACH Origination Agreement, dated May 9, 2018, Including any drafts, amendments, restatements, or renewals of the same, or any subsequent Agreements between MCB and Voyager.

14.    "<u>FDIC</u>" shall mean Federal Deposit Insurance Corporation.

15.    "<u>FBO Account</u>" shall mean any "for the benefit of" accounts held at, and maintained by, MCB on behalf of Voyager.

16.    "<u>Business Dealings</u>" shall mean all conduct and Communications between two or more parties Concerning the provision of goods or services in exchange for payment or other value, Including releasing information, conducting negotiations, or making offers prior to the conclusion of a contract, even if no contract is concluded as a result.

17.    "<u>Communication</u>" shall mean the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).  For the avoidance of doubt, this may encompass any oral, written, or electronic transmission of information without limitation, Including meetings, discussions, conversations, telephone calls, e-mail messages, text messages, chats, iMessages, Bloomberg, Telegram, WhatsApp, GroupMe, WeChat, Signal, Dust, Slack, Proton, QQ, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, videotapes, photographs, microfilm, microfiche, magnetic disks, or other media of any kind.

18.    "<u>Concerning</u>" shall mean relating to, referring to, describing, evidencing, or constituting.

19.    "<u>Documents</u>" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A). For the avoidance of doubt, this may encompass all written, graphic, or printed matter of any kind, however produced or reproduced, Including all originals, drafts, working papers, and non-identical copies, whether different from the originals by reason of any

5

notation made on such copies or otherwise, and all electronic, mechanical, or optical records or representations of any kind or other data compilations from which information can be obtained or translated, if necessary, through detection devices into reasonable usable form, and any associated metadata.  The term "Documents" includes, but is not limited to:

a.  Correspondence, memoranda, notes, calendar or diary entries, statistics, letters, electronic mail, notebooks, telegrams, journals, minutes, agendas, notices, announcements, instructions, charts, schedules, requests, contracts, prospective contracts, agreements, prospective agreements, licenses, prospective licenses, order forms, books, accounts, records, reports, studies, surveys, experiments, analyses, checks, cancelled checks, wire confirmations, statements, receipts, returns, vouchers, statements, credit memoranda, sales slips, promissory notes, summaries, pamphlets, prospectuses, manuals, brochures, announcements, certificates, drawings, plans, inter-office and intraoffice Communications, pitchbooks, marketing materials, or offers;

b.  any written, or electronic transmission of information without limitation, Including any Communications and notations in any form made of conversations, telephone calls, meetings, negotiations, or other Communications;

c.  bulletins, circulars, schedules, lists, guides, printed matter (Including newspapers, magazines and other publications, articles and clippings therefrom), press releases, computer printouts, teletypes, telecopies, telexes, invoices, ledgers, balance sheets, financial statements, or worksheets;

d.  electronic, mechanical, or optical records or representations of any kind (Including tapes, cassettes, discs, hard drives, recordings, voice mail, electronic mail, and computer-stored data or material), or transcriptions thereof; and

e.  all drafts, alterations, modifications, changes, and amendments of any of the

foregoing, and any material underlying, supporting, or used in the preparation of any Document.

f.      A draft or non-identical copy is a separate Document within the meaning of this term.

20.      "<u>Including</u>" shall not be construed as limiting any request, and shall mean the same as "including, but not limited to."

21.      "<u>Person</u>" shall mean any individual, natural person, or business entity, Including sole proprietorship, partnership, association, corporation, organization, joint venture, company, or any other legal, business, formal, or informal entity, Including governmental bodies and/or agencies, and any department, affiliate, joint enterprise, or representative thereof.

22.      "<u>Records</u>" means all documents and communications in any way related to an Account, Including emails, statements, applications, onboarding forms, communications, correspondence, know your customer/anti-money laundering related documents, SWIFT records, records reflecting transactions, checks (front and back), wire transfers, tax documents and filings, certificates of foreign status of beneficial owners, memoranda, notes, custodian agreements, trustee agreements, forms and/or related documents and communications, beneficiary agreements, forms and/or related documents and communications, and all other documents concerning the owners, signatories, beneficial owners, trustees, and all other persons associated with an Account in any way, and any other documents, communications, or bank records.

## INSTRUCTIONS

1.      The preceding definitions apply to these Instructions and each of the succeeding Requests.

2.      All terms defined above shall have the meanings set forth therein, whether capitalized in the Requests or not.

3.      You are required to produce all responsive Documents in Your possession, custody, or control, wherever located, Including those in the custody of Your representatives, agents, professionals, affiliates, or anyone acting on Your behalf.

4.      These Requests are continuing requests pursuant to the Bankruptcy Rules. You must supplement any production of Documents that are received, discovered, or created after any of Your responses to the Requests, or that are otherwise within Your possession, custody, or control, wherever located, Including those in the custody of Your representatives, agents, professional, affiliates, or anyone acting on Your behalf.

5.      If You object to any part of any Request, You must produce all Documents that are responsive to the portions of the Request to which You do not object. You also must state the nature of, and grounds for, the objection.

6.      If You cannot comply with any Request in full, You must comply to the fullest extent possible, and You should provide an explanation as to why full compliance is not possible.

7.      Where You assert a claim of privilege or any other grounds for withholding in objecting to a Request and withhold a responsive Document on this basis, You must provide a withholding log setting forth (a) the nature of the privilege being claimed, (b) the type of Document being withheld, (c) the general subject matter of the Document, (d) the date of the Document, and (e) such other information sufficient to permit evaluation of the claim of privilege or other asserted basis for withholding, Including, where appropriate, the author of the Document, the title or subject line of the Document, the addressee of the Document, and, where not apparent, the relationship of the author and the addressee to each other.

8.      If a Document contains both privileged and non-privileged material, You must disclose the non-privileged material to the fullest extent possible without thereby disclosing the privileged material.  If a party asserts a privilege to part of the material contained in a Document, the party asserting the privilege must clearly indicate the portions as to which it claims the

privilege.  When a Document has been redacted or altered in any fashion, You must identify as to

each Document the reason for the redaction or alteration, the date of the redaction or alteration,

and the Person performing the redaction or alteration.  Any redaction must be clearly visible on

the redacted Documents.

9.    All Documents produced in electronic format shall be in their native format and

shall be OCR (Optical Character Recognition) capable and shall be produced with Relativity

compatible load files.

10.    Additional special processing of certain electronically stored information shall be

as follows: Microsoft Excel spreadsheet fields shall not be converted to TIFF files and shall be

produced in native format.  A placeholder TIFF image shall be created, Bates numbered, and the

produced Excel file shall be renamed to match the Bates number on its corresponding placeholder

page.  The exception shall be for redacted spreadsheets which shall be produced in TIFF format.

Images for the redacted spreadsheets shall display the content in the same manner as if it were

printed. The extractable metadata and text shall be provided for native files, and OCR will be

provided for the un-redacted portions of the Documents.

11.    If any Document called for by these Requests has been destroyed or discarded, You

must identify that Document in writing by providing the following information: (a) any

sender/author and any addressee; (b) any indicated or blind copies; (c) the Document's date,

subject matter, number of pages, and attachments or appendices; (d) all Persons to whom the

Document was distributed, shown, or explained; (e) its date of destruction or discard, manner of

destruction or discard, and reason for destruction or discard; (f) the Persons who authorized and

carried out such destruction or discard; and (g) whether any copies of the Document presently exist

and, if so, the name of the custodian of each copy.

12.    Any copy of a Document that varies in any way whatsoever from the original or

from any other copy of the Document, whether by reason or any handwritten mark or other notation

9

or any omission, is a separate Document and must be produced, whether or not the original of such a Document is within Your possession, custody, or control. A request for any Document includes a request for all drafts thereof, and all revisions and modifications thereto, Including any red-lined versions or Document comparisons, in addition to the Document itself. Each Document is to be produced in its entirety, without abbreviation or expurgation.

13.     In producing Documents, all Documents that are physically attached to each other, or segregated or separated from other Documents, when originally located, should be produced as is.  If no Document exists that is responsive to a particular request, You must state so in writing.

14.     Except where otherwise specified, the Document Requests seek Documents dated, created, or otherwise obtained on or between January 1, 2018 and the present.

## REQUESTS

1.     All Documents or Communications Concerning the negotiations, execution, drafts, terms, meaning, or performance of the FBOA, Including:

> a.     Documents sufficient to show what MCB understood "The Program" to refer to as that term is used in Section 2.1 of the FBOA in the heading "GENERAL DESCRIPTION OF PROGRAM";

> b.     Documents sufficient to show what actions MCB undertook to satisfy its obligation as defined in Section 6.4(a) of the FBOA that MCB "shall be responsible for monitoring Client's performance of services hereunder and the results of the Program developed and implemented jointly with Client."

2.     All Documents and Communications Concerning the following representations in Section 5(A) of the Voyager Customer Agreement: "Therefore, each customer is a customer of the Bank. All U.S. regulatory obligations associated with the movement of, and holding of USD in connection with each Account are the responsibility of the Bank."

3.      All Documents and Communications Concerning Voyager's compliance with statutory or regulatory requirements, Including securities laws, money transmitter licensing requirements, know-your-customer/anti-money-laundering laws, and consumer protection requirements, Including:

   a.      All Documents and Communications between You and Voyager Concerning state money transmitter licensing requirements.

   b.      All non-privileged legal advice or memoranda Concerning state money transmitter licensing, Including, for example, memoranda shared by You with state regulators or third parties.

   c.      All Documents and Communications Concerning the need for Voyager to obtain money transmitter licenses. All Documents and Communications Concerning any statement made by Voyager executives regarding Voyager obtaining money transmitter licenses.

   d.      All Documents and Communications Concerning any representation made by You Concerning the Agreements exempting Voyager from compliance with money transmitter licensing requirements.

2.      All Documents and Communications Concerning FDIC insurance, Including:

   a.      All Documents and Communications, Including all drafts, Concerning a statement released by MCB on or around July 1, 2022 on its website stating that "FDIC insurance coverage is available only to protect against the failure of Metropolitan Commercial Bank. FDIC insurance does not protect against the failure of Voyager…or the loss in value of cryptocurrency or other assets."

   b.      All Documents and Communications with the FDIC Concerning statements Voyager or You made about FDIC insurance.

11

3.      All Documents and Communications, Including all drafts, Concerning MCB's decision, announced in a press release on or around January 9, 2023, that "it will fully exit the crypto asset related vertical."

4.      All Documents and Communications Concerning the Agreement(s), Including all Documents and Communications Concerning due diligence, Including legal opinions and diligence requests, performed on Voyager, and all Documents and Communications Concerning the negotiation, drafting, execution, and performance of the Agreement(s).

5.      All Documents and Communications Concerning representations made to You by Voyager Concerning Voyager or Voyager's products or services, Including the Voyager Rewards Program, Voyager Earn Program, Voyager Interest Program, Voyager Loyalty Program, VGX, and the purchase or sale of any Cryptocurrency on Voyager's platform.

6.      All Documents and Communications Concerning Voyager Earn Program and Voyager's lending program.

7.      All Documents and Communications Concerning any diligence inquires, memoranda, inspection, audit, or examination Concerning Voyager, and all Documents reflecting the conclusions of any such due diligence or other similar reviews Concerning Voyager.

8.      All Documents, Communications, and Records Concerning Voyager's FBO Account(s).

9.      All Documents and Communications Concerning any representations or public statements You made Concerning Voyager.

10.     All Documents and Communications Concerning the truth or falsity of any statement You made Concerning Voyager, Including in marketing materials, social media posts, advertisements, commercials, or other public statements.

11.     All Documents and Communications Concerning all media releases, public announcements, and public disclosures Concerning Your relationship with Voyager Including,

disclosures made in accordance with legal, accounting, or regulatory requirements.

12.    All Documents and Communications Concerning the use by Voyager of any of MCB's name, logo, or branding, or the use by You of any of Voyager's name, logo, or branding.

13.    All Documents and Communications Concerning drafts, versions, and copies of Your onboarding questionnaires and related procedures, policies, and internal discussions Concerning customers in the Cryptocurrency industry.

14.    All Documents and Communications Concerning drafts, versions, and copies of Your onboarding questionnaires and related procedures for customers seeking accounts which will hold customer funds, Including FBO and trust accounts.

15.    All Documents and Communications Concerning risks related to the FBOA, Voyager, or Cryptocurrency.

16.    All Documents and Communications Concerning Your Business Dealings with Voyager.

17.    All Documents and Communications Concerning any Voyager Engagement.

18.    Documents sufficient to identify each and every individual, entity, firm, vendor, subcontractor or other company, Including those under Your direct or indirect control, that have been involved in any Voyager Engagement.

19.    All Documents, Records, and Communications Concerning the measuring, monitoring, assessment, or evaluation of customer acquisition, conversion rate, or other measures of the effectiveness of, any Voyager Engagement, Including the Agreement(s).

20.    All Communications between or among You and any Person from Voyager, Including Communications between or among Steve Ehrlich, Philip Eytan, Gaspard de Dreuzy, Gerard Hanshe, Evan Psaropoulos, Daniel Costantino, David Brosgol, Pamela (Pam) Kramer, Marshall Jensen, Rakesh Gidwani, MaryBeth Auleta, Mark DeFazio, Nick Rosenberg, Kyle Hingher, David Jenkins and Ashwin Prithipaul.

21.    All Documents and Communications Concerning Voyager's bankruptcy.

22.    All Documents and Communications Concerning all compensation paid by Voyager to You, Including invoices, outstanding or otherwise, and requests for payment.

23.    All Communications between You and state or federal regulators Concerning Voyager, and all Documents provided by You Concerning Voyager to any government agency, regulator, or any other government entity.

24.    All Documents and Communications Concerning investigations or litigations involving Voyager, Including all Documents produced by You or to You in any litigations or investigations Concerning Voyager, Including:

    a.    *Robertson et al. v. Mark Cuban, et al.,* Index No. 22-cv-22538 (S.D. Fl. 2022);

    b.    *Roberts et al. v. Ehrlich et al.,* Index No. 22-cv-09590 (S.D.N.Y., 2022);

    c.    *U.S. Bank National Association v. Voyager Digital, LLC*, Index No. 22-cv-01336 (D. Minn. 2022).

25.    Copies of all subpoenas, demand letters, complaints, customer complaints, or other similar correspondence Concerning Voyager.

26.    All Documents and Communications Concerning the termination of Kyle Hingher's employment with MCB as it pertains to Voyager.

27.    All Documents and Communications between You and 3AC.

28.    All Documents and Communications between You and Terraform.

## **SCHEDULE B**

PLEASE TAKE FURTHER NOTICE that pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") and Rules 45 and 30(b)(6) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 9016 of the Bankruptcy Rules, and Rule 2004-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New York, Voyager intends to conduct a Rule 2004 Examination of the designated corporate representative of MCB remotely via Zoom, at a date and time which the parties may mutually agree or may be ordered by the Court.  The examination will be recorded by stenographic means and may also be videotaped.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), MCB shall designate and produce at the deposition those of its officers, directors, managing agents, or other persons who consent to testify on its behalf, about those matters set forth in this notice under the heading "Topic of Examination" (the "Topics") set forth herein based on the information known or reasonably available to MCB. MCB shall designate to Voyager by November 10, 2023 whom it is identifying as its corporate representative for purposes of the deposition.

PLEASE TAKE FURTHER NOTICE that the Plan Administrator reserves his rights under the Bankruptcy Code and any applicable law regarding the subject matter hereof to amend, supplement, and/or modify the Topics in accordance with the Bankruptcy Code, the Bankruptcy Rules, and other applicable law.

**TOPICS OF EXAMINATION**

1.      The Voyager Engagement.

2.      The Business Dealings between You and Voyager.

3.      The Agreement(s), Including negotiation and execution of the Agreement(s).

4.      Any work, service, advice, guidance, product or thing or information of value that You have performed or provided for Voyager or any of Voyager's products or services.

5.      Voyager's bankruptcy.

6.      All issues set forth in the Requests.

7.      All steps You took to locate and produce Documents and Communications in response to the Requests.