**Presentment Date: January 8, 2024 at 1:00 p.m. (prevailing Eastern Time)**
**Objection Deadline: January 4, 2024 at 4:00 p.m. (prevailing Eastern Time**

**MCDERMOTT WILL & EMERY LLP**
Darren Azman
Joseph B. Evans
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone: (212) 547-5400
Facsimile: (212) 547-5444

**MCDERMOTT WILL & EMERY LLP**
Charles R. Gibbs (admitted pro hac vice)
Grayson Williams (admitted pro hac vice)
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201-1664
Telephone: (214) 295-8000
Facsimile: (972) 232-3098

**MCDERMOTT WILL & EMERY LLP**
Gregg Steinman (admitted pro hac vice)
333 SE 2nd Avenue, Suite 4500
Miami, FL 33131-2184
Telephone: (305) 329-4473
Facsimile: (305) 503-8805

*Counsel to the Plan Administrator*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re*: | Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*, | Case No. 22-10943 (MEW) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF PRESENTMENT AND OPPORTUNITY FOR HEARING ON PLAN ADMINISTRATOR'S MOTION FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 DIRECTING SUBPOENA FOR THE PRODUCTION OF DOCUMENTS BY, AND THE EXAMINATION OF, METROPOLITAN COMMERCIAL BANK**

**PLEASE TAKE NOTICE** that the Plan Administrator (the "Plan Administrator") for the

*Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to*

---

[1] The Wind-Down Debtor in these chapter 11 cases, along with the last four digits of each Wind-Down Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The service address for purposes of these chapter 11 cases is 27777 Franklin, Suite 2500, Southfield, MI 48034.

Chapter 11 of the Bankruptcy Code (the "Bankruptcy Code") [Docket No. 1166-1] (the "Plan") of Voyager Digital Holdings, Inc., *et al.* (collectively, the "Wind-Down Debtor" or "Voyager") hereby files to *Motion For Entry of An Order Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016 Authorizing and Directing Subpoena for the Production of Documents By, and the Examination Of, Metropolitan Commercial Bank* (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that counsel for the Plan Administrator will present the proposed order for entry by the Court, attached to the Motion as Exhibit A (the "Proposed Order") to the Honorable Michael E. Wiles, United States Bankruptcy Judge, for signature on **January 8, 2024 at 1:00 p.m. (prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that responses or objections (the "Objections"), if any, to the Proposed Order or the relief requested in the Motion shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served in accordance with the *Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No. 240] by **January 4, 2024 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline") by the following: (i) counsel to the Plan Administrator, McDermott Will & Emery LLP, One Vanderbilt Avenue, New York, NY 10173 (Attn: Darren Azman and Joseph B. Evans), email: dazman@mwe.com and

jbevans@mwe.com; and (ii) all parties in interest who has filed a Notice of Appearance and a request for service pursuant to Bankruptcy Rule 2002.

**PLEASE TAKE FURTHER NOTICE** that if no objections or other responses are timely filed and served by the Objection Deadline with respect to the Proposed Order, counsel for the Plan Administrator shall, on the Presentment Date, submit the Proposed Order to the Court, which order the Court may enter without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that if an Objection is timely filed, the Court will notify the moving and objecting parties of the date and time of the hearing and of the moving party's obligation to notify all other parties entitled to receive notice. The moving and objecting parties are required to attend the hearing, and failure to attend in person or by counsel may result in relief being granted or denied upon default.

**PLEASE TAKE FURTHER NOTICE** that copies of the Proposed Order and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/Voyager. You may also obtain copies of the Proposed Order and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated: December 26, 2023
New York, New York

Respectfully submitted,

**MCDERMOTT WILL & EMERY LLP**

/s/ *Joseph B. Evans*
Joseph B. Evans
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone: (212) 547-5400
Facsimile: (212) 547-5444
E-mail: jbevans@mwe.com

*Counsel to the Plan Administrator*

**Presentment Date: January 8, 2024 at 1:00 p.m. (prevailing Eastern Time)**
**Objection Deadline: January 4, 2024 at 4:00 p.m. (prevailing Eastern Time**

**MCDERMOTT WILL & EMERY LLP**
Darren Azman
Joseph B. Evans
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone: (212) 547-5400
Facsimile: (212) 547-5444

**MCDERMOTT WILL & EMERY LLP**
Charles R. Gibbs (admitted pro hac vice)
Grayson Williams (admitted pro hac vice)
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201-1664
Telephone: (214) 295-8000
Facsimile: (972) 232-3098

**MCDERMOTT WILL & EMERY LLP**
Gregg Steinman (admitted pro hac vice)
333 SE 2nd Avenue, Suite 4500
Miami, FL 33131-2184
Telephone: (305) 329-4473
Facsimile: (305) 503-8805

*Counsel to the Plan Administrator*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re*:<br><br>VOYAGER DIGITAL HOLDINGS, INC., *et al.*,<br><br>Debtors.[2] | Chapter 11<br><br>Case No. 22-10943 (MEW)<br><br>(Jointly Administered) |

**THE PLAN ADMINISTRATOR'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO FEDERAL RULES OF BANKRUPTCY PROCEDURE 2004 AND 9016 AUTHORIZING AND DIRECTING SUBPOENA FOR THE PRODUCTION OF DOCUMENTS BY, AND THE EXAMINATION OF, METROPOLITAN COMMERCIAL BANK**

Paul R. Hage, in his capacity as the Plan Administrator (the "Plan Administrator") for the

*Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to*

---

[2] The Wind-Down Debtor in these chapter 11 cases, along with the last four digits of each Wind-Down Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The service address for purposes of these chapter 11 cases is 27777 Franklin, Suite 2500, Southfield, MI 48034.

*Chapter 11 of the Bankruptcy Code* (the "Bankruptcy Code") [Docket No. 1166-1] (the "Plan") of Voyager Digital Holdings, Inc., *et al.* (collectively, the "Wind-Down Debtor" or "Voyager"), seeks entry of an order (the "Proposed Order") authorizing and directing a subpoena for the production of documents by, and the examination of Metropolitan Commercial Bank, pursuant to section 105 of the Bankruptcy Code, Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 2004-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

The requested Proposed Order, attached hereto as **Exhibit A**, authorizes the Plan Administrator to serve a narrow and tailored subpoena substantially in the form attached hereto as **Exhibit B** (the "Subpoena") for the production of documents by, and the examination of, Metropolitan Commercial Bank ("MCB" or "Rule 2004 Party").[1]  In support of this Motion, the Plan Administrator represents as follows:

### PRELIMINARY STATEMENT

1.    The Plan Administrator respectfully requests that the United States Bankruptcy Court for the Southern District of New York (the "Court") enter the Proposed Order authorizing him to issue the Subpoena for testimony and the production of documents from MCB pursuant to Bankruptcy Rule 2004 and the Plan.  The Plan Administrator is a fiduciary appointed under the Plan who is expressly charged with the responsibility of "seeking the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004 [.]"[2]

2.    MCB possesses information that relate to the "liabilities and financial condition of the debtor" and would "affect the administration of the debtor's estate." *See* Fed. R. Bank. P. 2004

---

[1] The Plan Administrator requests that any Rule 2004 Party that is not a natural person be required to designate a representative of such Rule 2004 Party who is most knowledgeable about the matters for examination set forth in the Subpoena pursuant to Federal Rule of Civil Procedure 30(b)(6).
[2] Docket No. 1166.

(b).  MCB had substantial business dealings with Voyager.  For instance, Voyager and MCB entered into an FBO Account Services Agreement (the "FBOA") for MCB to provide account and transfer services for Voyager's customers' fiat currency.  The FBOA provides that, "[MCB] hereby appoints Client [i.e. Voyager] as Bank's representative to market, offer [,] and sell crypto currency exchange services, and other related products[.]"[3]  All fiat that was deposited by customers into Voyager was initially deposited to an MCB FBO account.  The MCB FBO account was the account by which all Voyager fiat money transmission was conducted.  In addition, MCB and Voyager jointly marketed Voyager's products.  As such, discovery is required from MCB in order to assess the Wind Down Debtor's potential causes of action against MCB.

3.      Given Voyager's substantial relationship and dealings with MCB, the Subpoena seeks information well within the ambit of Rule 2004. The Subpoena is narrowly tailored, will not unduly burden MCB, and properly relates to "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge."  Fed. R. Bankr. P. 2004(a) (b).

## JURISDICTION AND VENUE

4.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory predicates for the relief requested herein are Section 105 of the Bankruptcy Code and Bankruptcy Rules 2004 and 9016.

---

[3] FBOA § 2.1

3

## BACKGROUND

7.      On July 5, 2022 (the "Petition Date"), the Wind-Down Debtor filed voluntary petitions for relief in the Court under the Bankruptcy Code.

8.      On March 10, 2023, the Court entered the Corrected and Amended Order approving the Plan, pursuant to which third parties could contribute their claims to the Wind-Down Debtor, and such claims became the Wind-Down Debtor's assets as of May 19, 2023, the Effective Date of the Plan.[4]

9.      Pursuant to the Plan, the Plan Administrator is the sole representative of the Wind-Down Debtor and has authority to administer, pursue, prosecute, litigate, settle, dismiss or otherwise take action with respect to the Wind-Down Debtor's claims—including assigned claims from third parties.  Specifically, the Plan tasks the Plan Administrator with seeking Bankruptcy Rule 2004 examinations of any individual, partnership, and corporation.[5]

10.      On June 3, 2019, Voyager and MCB entered into the FBOA for MCB to provide all services associated with the transfer and holding of fiat currency in Voyager customer accounts. The MCB FBO account was the account by which all Voyager fiat money transmission was conducted.  Voyager customers would link their personal bank accounts to the Voyager App and use the Voyager App to transfer funds to FBO accounts held at MCB.  Under the FBOA, MCB appointed Voyager as MCB's "representative to market, offer [,] and sell crypto currency exchange services, and other related products [...]"  The FBOA gave MCB robust unilateral audit and inspection rights of Voyager information and documents, and the parties agreed that "MCB

---

[4] Docket No. 1166-1, 1405.
[5] Docket No. 1166-1. ("Responsibilities of the Plan Administrator shall be identified in the Plan Administrator Agreement and shall include . . . seeking the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004.").

exercises primary authority and control over" the program that MCB and Voyager developed and implemented jointly.

11.     Voyager's Customer Agreement was attached to the FBOA.  Pursuant to the Voyager Customer Agreement, "[c]ash deposited into Customer's [Voyager] Account is maintained in an omnibus account at [MCB], which is a member of the Federal Deposit Insurance Corporation […] [MCB] provides all services associated with the movement of and holdings of USD in connection with the provision of each Account."  All fiat currency that was deposited by customers into Voyager was initially deposited into a MCB bank account.

12.     In addition, according to Voyager's former CEO Steve Ehrlich, MCB told Voyager that, under the FBOA, Voyager could operate everywhere, and that Voyager did not need to obtain independent Money Transmitter Licenses.

13.     The Plan Administrator is seeking information concerning that statement, MCB's knowledge of the truth or falsity of the marketing materials and of other representations relating to Voyager, MCB's knowledge and views concerning Voyager's regulatory and licensing status, MCB's knowledge and views concerning Voyager Earn Program[6] and related lending program, and its knowledge and views of the overall safety and risk profile of the Voyager platform.  This information is necessary in order for the Plan Administrator to assess potential causes of action against MCB.

14.     Accordingly, the Plan Administrator is seeking to issue the Subpoena pursuant to Bankruptcy Rule 2004 to MCB, which is likely in possession of this critical information "which may affect the administration of the estate."  *See* Fed. R. Bankr. P. 2004(b).  The information requested herein properly relates to "acts, conduct, or property or to the liabilities and financial

---

[6] Voyager Earn Program" means the investment product "Earn" launched by Voyager in or around late 2019.
Voyager Earn Program, https://www.investvoyager.com/earn/ (last updated June 1, 2023).

condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." *Id.*

## RELIEF REQUESTED

15.    By this Motion, the Plan Administrator respectfully requests entry of an order, substantially in the form of the Proposed Order attached hereto as **Exhibit A**, authorizing the Plan Administrator to serve the Subpoena for Rule 2004 examinations substantially in the form attached hereto as **Exhibit B** on MCB.

## BASIS FOR REQUESTED RELIEF

### I.    Powers and Duties of the Plan Administrator

16.    Pursuant to section 1123(b) of the Bankruptcy Code, a plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate" or the retention and enforcement by "a representative of the estate appointed for such purpose, of any such claim or interest."  Moreover, pursuant to Bankruptcy Rule 2004, "[o]n motion of any party in interest, the court may order the examination of any entity."  Fed. R. Bankr. P. 2004(a) (b).

17.    Under the Plan, the Plan Administrator is a "party in interest" entitled to conduct Bankruptcy Rule 2004 examinations for the following reasons.

18.    *First,* the Plan appointed the Plan Administrator as the sole representative of the Wind-Down Debtor and vested in him the authority to administer, pursue, prosecute, litigate, settle, dismiss or otherwise take action with respect to the Wind-Down Debtor's claims and causes of action.

19.     *Second,* the Plan expressly tasks the Plan Administrator with the responsibility to seek "the examination of any [individual, partnership, and corporation] pursuant to the Federal Rule of Bankruptcy Procedure 2004."[7]

20.     *Finally*, the Plan Administrator has a fiduciary obligation to stakeholders to make an informed decision as to whether potential claims exist, and if so, whether to pursue them.[8] Conducting Rule 2004 examinations will allow the Plan Administrator to seek the information necessary to discharge this fiduciary obligation.

## II.     Applicable Law

21.     As explained above, Bankruptcy Rule 2004 provides that, "on motion of any party in interest, the court may order examination of any entity" related to "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate."  Fed. R. Bankr. P. 2004(a) (b).  *In re China Fishery Group Ltd*., 2017 WL 3084397 at *4 (Bankr. S.D.N.Y. 2017); *In re SunEdison, Inc*., 562 B.R. 243, 249 (Bankr. S.D.N.Y. 2017).

22.     The purpose of a Bankruptcy Rule 2004 examination is to "assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred."  *In re Recoton Corp*., 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) (allowing Rule 2004 examination because "on its face the Motion appears to be a legitimate attempt to investigate potential claims that might benefit the bankruptcy estates.") Bankruptcy Rule 2004 permits discovery "to determine the extent of the estate's assets and recover those assets for the benefit of creditors."  *In re Madison Williams & Co., LLC*, 2014 WL 56070, at *3 (Bankr. S.D.N.Y. 2014) (holding that non-party witnesses were not entitled to a

---

[7] Docket No. 1166.
[8] *Id.*

protective order with respect to the scope of discovery sought under the Bankruptcy Rule 2004 examination because "the scope of the information sought was properly within the scope of permissible inquiry by [the Trustee] in investigating the acts, conduct, or property of the debtor"); *see also In re Duratech Indus., Inc.*, 241 B.R. 291, 296 (Bankr. E.D.N.Y. 1999) (explaining that Bankruptcy Rule 2004 facilitates "the central purpose of a bankruptcy case, namely, to maximize the distribution of assets or plan payments to unsecured creditors").

23.    The party seeking Bankruptcy Rule 2004 discovery has the burden to show good cause for the examination it seeks, and the decision to grant the requested relief lies within the sound discretion of the Bankruptcy Court.  *See In re Bernard L. Madoff Inv. Secs. LLC*, 2014 WL 5486279, at *2 (Bankr. S.D.N.Y. 2014).   Good cause is established when a Bankruptcy Rule 2004 examination is used for the purpose of "'discovering assets, examining transactions, and determining whether wrongdoing has occurred' on behalf of the Debtors' estate." *In re Gawker Media LLC*, 2017 WL 2804870 at *5 (Bankr. S.D.N.Y. 2017) (allowing Plan Administrator to conduct 2004 Examination when the proceeds of litigation will be paid to the creditors under the Plan). As long as the examination is not designed to "abuse or harass" a third party, the court will allow it.  *See In re Recoton Corp.*, 307 B.R. at 755.

24.    The scope of discovery allowed under Bankruptcy Rule 2004 is "very broad and great latitude of inquiry is ordinarily permitted."  *In re Madison Williams*, 2014 WL 56070, at *3. "It is well settled that the scope of examination allowed under Bankruptcy Rule 2004 is broader than discovery allowed under the Federal Rules of Civil Procedure and may be in the name of a 'fishing expedition.'" *In re Hughes*, 281 B.R. 224, 231 (Bankr. S.D.N.Y. 2002) (denying motion to quash Bankruptcy Rule 2004 subpoenas because the subpoenas enable the Joint Liquidators to

exercise the powers entrusted by the court, which is to investigate the debtor's "financial affairs, and contribute to an economical and expeditious administration of this estate").

25.     Courts routinely allow examination of third parties who have had prior business dealings with the debtor. *See In re Recoton Corp.*,307 B.R. at 755 ("Any third party who has a relationship with a debtor may be made subject to a Rule 2004 investigation").

26.     Additionally, Bankruptcy Rule 2004 examinations are appropriate with respect to assigned claims as "the assignment of a nondebtor's claim against another nondebtor may constitute property of the estate if such assigned claim became part of the bankruptcy estate as a result of a post-petition transaction by the trustee and in accordance with the trustee's duties to administer the debtor's estate." *In re Ecam Publ'ns, Inc.*, 131 B.R. 556, 561 (Bankr. S.D.N.Y. 1991). *See also Semi-Tech Litig., LLC v. Bankers Trust Co.,* 272 F. Supp. 2d 319, 323-24 (S.D.N.Y. 2003)*, aff'd & adopted,* 450 F.3d 121, 123 (2d Cir. 2006) (holding that the liquidating trust has standing to bring third party claims assigned to it under a confirmed Chapter 11 plan).

### III.     Good Cause Exists to Allow the Plan Administrator's Rule 2004 Subpoena

27.     The Subpoena requested herein fits squarely within the purpose of Bankruptcy Rule 2004, as the Plan Administrator seeks to examine a third party, with whom Voyager had substantial business dealings, for the purpose of "discovering assets, examining transactions, and determining whether wrongdoing has occurred." *In re Gawker Media LLC*, 2017 WL 2804870 at *5. MCB's business dealings with Voyager provided substantial assistance to Voyager in engaging in the activities that are now or were the subject of complaints and investigations by governmental entities. Accordingly, the Plan Administrator has demonstrated that good cause exists for issuing the Subpoena.

## MOTION PRACTICE

28.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

## NOTICE

29.     The Plan Administrator will give notice of this Motion to the following parties and/or their respective counsel, as applicable: (a) the U.S. Trustee; (b) Metropolitan Commercial Bank; and (c) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the requested relief's nature, the Plan Administrator submits that no other or further notice need be given.

## RESERVATION OF RIGHTS

30.     The Plan Administrator reserves all rights, claims, defenses, and remedies, including, without limitation, the right to amend, modify, or supplement this Motion, to seek additional discovery from any party, add additional parties, or to raise additional grounds for granting this Motion during any hearing on the Motion, if one should be held.

## CONCLUSION

**WHEREFORE**, for the reasons stated herein, the Plan Administrator respectfully requests that this Court enter an order, pursuant to Bankruptcy Rule 2004, substantially in the form attached hereto as **Exhibit A**, authorizing the issuance of the Subpoena for testimony and the production of documents from MCB, and granting to the Plan Administrator such other and further relief as this Court may deem just and proper.

Dated:  December 26, 2023
New York, New York

**MCDERMOTT WILL & EMERY LLP**

/s/ Joseph B. Evans
Joseph B. Evans
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone: (212) 547-5400
Facsimile: (212) 547-5444
E-mail: jbevans@mwe.com

*Counsel to the Plan Administrator*

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| *In re*: | Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*, | Case No. 22-10943 (MEW) |
| Debtors.[1] | (Jointly Administered) |

## ORDER AUTHORIZING PLAN ADMINISTRATOR
## TO ISSUE SUBPOENAS DIRECTING EXAMINATION AND
## PRODUCTION OF DOCUMENTS

The Plan Administrator for the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan Administrator") filed a motion (the "Motion") for an order, pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure, seeking authorization for the Plan Administrator to issue subpoenas, without prejudice to the right of Metropolitan Commercial Bank ("MCB") to object, (a) directing the production for inspection and copying records of documents relating to Voyager Digital Holdings, Inc., *et al.*, and (b) directing the appearance and submission to an oral examination to be taken under oath; and the Court having jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and sufficient notice having been provided; and the Court having found and determined that the relief sought in the Application is in the best interest of the Wind-Down Debtors and their estates; and the legal

---

[1] The Wind-Down Debtor in these chapter 11 cases, along with the last four digits of each Wind-Down Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The service address for purposes of these chapter 11 cases is 27777 Franklin, Suite 2500, Southfield, MI 48034.

and factual bases set forth in the Application having established just cause for the relief granted

herein; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      The relief requested in the Application is GRANTED to the extent set forth herein.

2.      The Plan Administrator may issue a subpoena directing MCB to produce

documents in response to the request attached hereto as Schedule A (the "Document Request")

without prejudice to the right of MCB to object in accordance with the applicable rules.

3.      The Plan Administrator may issue a subpoena directing a representative of MCB to

appear for an examination under oath to testify as to Voyager Digital Holdings in response to the

request attached hereto as Schedule B without prejudice to the right of MCB to object.

4.      To the extent necessary, the Plan Administrator's rights are reserved to request

additional examinations or documents under Bankruptcy Rule 2004 based on any information that

may be revealed as a result of the discovery obtained pursuant to this Order.

5.      This Order shall be served upon (i) MCB; (ii) the Office of the U.S. Trustee: and

(iii) all parties who have appeared in this chapter 11 case.

6.      This Court retains jurisdiction to resolve all matters arising under or related to this

Order, and to interpret, implement, and enforce the provisions of this Order.

Dated: New York, New York

_____, 2023

_____
          UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Subpoena**

## SCHEDULE A

PLEASE TAKE NOTICE that, pursuant to Rule 2004(c) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") and Rule 45 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 9016 of the Bankruptcy Rules, and Rule 2004-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New York, Paul R. Hage, in his capacity as the Plan Administrator (the "Plan Administrator") of Voyager Digital Holdings, Inc., *et al.* (collectively, the "Wind-Down Debtor" or "Voyager") under the *Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "Bankruptcy Code") [Docket No. 1166-1] (the "Plan"), hereby requests that Metropolitan Commercial Bank ("MCB") produce the following Documents and information in response to the requests contained herein (the "Requests") in its possession, custody, or control to the offices of McDermott Will & Emery LLP, One Vanderbilt Avenue New York, New York 10017-3852, at such date and time upon which the parties may mutually agree or may be ordered by the United States Bankruptcy Court for the Southern District of New York (the "Court").

PLEASE TAKE FURTHER NOTICE that the Plan Administrator reserves his rights under the Bankruptcy Code and any applicable law regarding the subject matter hereof to amend, supplement, and/or modify the Requests in accordance with the Bankruptcy Code, the Bankruptcy Rules, and other applicable law.

## DEFINITIONS

The following definitions of terms apply to all Requests and Topics. All words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.

2

1.      The following rules of construction shall apply to all Requests and Topics:

a.      the connectives "**and**" and "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request or Topic all responses that might otherwise be construed to be outside of its scope;

b.      the use of the present or past tense shall be construed to include both the present and past tenses as necessary to bring within the scope of the Request or Topic all responses that might otherwise be construed to be outside of its scope;

c.      "**any**" and "**each**" shall be construed to include and encompass "**all**"; and

d.      the use of the singular form of any word includes the plural and vice versa.

2.      Any references to a corporation, partnership, proprietorship, association, organization, or any other business or legal entity (Including any of the Voyager debtors) shall be deemed to include the corporation's, partnership's, proprietorship's, association's, organization's, or other business or legal entities' agents, accountants, advisors, employees, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors, successors, assigns, or any other Person acting or purporting to act on behalf of the corporation, partnership, proprietorship, association, organization, or other business or legal entity.

3.      "Account" shall mean any fiat or Cryptocurrency depository, Including any company or service that hosts or provides digital wallets or otherwise permits trading and storage of Cryptocurrency (Including Cryptocurrency exchanges and Cryptocurrency custodians), checking accounts, savings accounts, trust accounts, custodian accounts, money market accounts, investment accounts, transactional accounts, certificates of deposit, safety deposit boxes, and any other holder of assets or value of any kind, Including cash, securities, debt instruments, precious

metals, jewelry, important documents, deeds, or any other asset or medium of exchange. The term "Account(s)" also specifically includes any bank account held at Your institution.

4.      "Agreement" shall mean any Agreement between MCB and Voyager, Including the FBO Account Services Agreement (the "FBOA"), dated June 3, 2019, the Deposit Agreement, dated October 30, 2019, and the ACH Origination Agreement, dated May 9, 2018, Including any drafts, amendments, restatements, or renewals of the same, or any subsequent Agreements between MCB and Voyager.

5.      "Communication" shall mean the transmittal of information (in the form of facts, ideas, inquiries, or otherwise). For the avoidance of doubt, this may encompass any oral, written, or electronic transmission of information without limitation, Including meetings, discussions, conversations, telephone calls, e-mail messages, text messages, chats, iMessages, Bloomberg, Telegram, WhatsApp, GroupMe, WeChat, Signal, Dust, Slack, Proton, QQ, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, videotapes, photographs, microfilm, microfiche, magnetic disks, or other media of any kind.

6.      "Concerning" shall mean relating to, referring to, describing, evidencing, or constituting.

7.      "Cryptocurrency" shall mean all digital assets that are traded on a blockchain, and shall be interpreted broadly to include all types of digital assets, Including virtual currency, tokens, ERC-20 compliant tokens, security tokens, utility tokens, stablecoins, and any other digital assets. This includes, but is not limited to, Bitcoin, Bitcoin Cash, Ethereum, USD Coin (USDC), VGX, Tether (USDt), Dai, IDOL, XRP, Cardano, Polkadot, Binance Coin, Litecoin, Chainlink, Stellar, Dogecoin, Aave, Uniswap, Wrapped Bitcoin, Bitcoin SV, EOS, Monero, Maker, Cosmos, TRON, NEM, Synthetix, Tezos, THETA, Compound, VeChain, Neo SushiSwap, Huobi Token, UMA,

Elrond, IOTA, Solana, and any other digital asset, Including all derivative instruments based on any of the foregoing assets.

8.      "<u>Documents</u>" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A).  For the avoidance of doubt, this may encompass all written, graphic, or printed matter of any kind, however produced or reproduced, Including all originals, drafts, working papers, and non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, and all electronic, mechanical, or optical records or representations of any kind or other data compilations from which information can be obtained or translated, if necessary, through detection devices into reasonable usable form, and any associated metadata.

9.      "<u>FBO Account</u>" shall mean any "for the benefit of" accounts held at, and maintained by, MCB on behalf of Voyager.

10.      "<u>FBOA</u>" shall mean the FBO Account Services Agreement, between Voyager and MCB, dated June 3, 2019.

11.      "<u>FDIC</u>" shall mean Federal Deposit Insurance Corporation.

12.      "<u>Including</u>" shall not be construed as limiting any request, and shall mean the same as "including, but not limited to."

13.      "<u>MCB</u>" "<u>You</u>" and "<u>Your</u>" shall mean Metropolitan Commercial Bank, Including, as applicable, its predecessors, successors, partners, joint ventures, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, employees, agents, representatives, consultants, attorneys, auditors, accountants, consultants or any other Person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

14.     "Person" shall mean any individual, natural person, or business entity, Including sole proprietorship, partnership, association, corporation, organization, joint venture, company, or any other legal, business, formal, or informal entity, Including governmental bodies and/or agencies, and any department, affiliate, joint enterprise, or representative thereof.

15.     "Records" means all Documents and Communications in any way related to an Account, Including emails, statements, applications, onboarding forms, Communications, correspondence, know your customer/anti-money laundering related Documents, SWIFT records, records reflecting transactions, checks (front and back), wire transfers, tax Documents and filings, certificates of foreign status of beneficial owners, memoranda, notes, custodian agreements, trustee agreements, forms and/or related Documents and Communications, beneficiary agreements, forms and/or related Documents and Communications, and all other Documents concerning the owners, signatories, beneficial owners, trustees, and all other persons associated with an Account in any way, and any other Documents, Communications, or bank records.

16.     "Voyager" shall mean Voyager Digital Ltd., Voyager Digital, LLC, Voyager Digital Holdings, Inc., Voyager Digital Canada, Ltd., and all other entities affiliated with what is commonly known as Voyager (https://www.investvoyager.com), Including, as applicable, its predecessors, successors, partners, joint ventures, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, employees, agents, representatives, consultants, attorneys, auditors, accountants, consultants or any other Person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

17.     "Voyager Customer Agreement" shall mean the Voyager Customer Agreement, updated as of January 7, 2022, and its previous iterations, Including as Schedule E to the FBOA.

18.    "Voyager Earn Program" shall mean the investment product "Earn" launched by Voyager in or around late 2019.[12]

19.    "Voyager Interest Program" shall mean the investment product launched by Voyager in or around late 2019.[13]

20.    "Voyager Loyalty Program" shall mean the tier-based reward program launched by Voyager in or around late 2020.[14]

21.    "Voyager Reward(s) Program" "Reward Program" or "Rewards Program" shall mean all reward programs or investment products launched by Voyager, Including, Voyager Earn Program, Voyager Interest Program, and Voyager Loyalty Program.

## INSTRUCTIONS

1.    The preceding definitions apply to these Instructions and each of the succeeding Requests and Topics.

2.    All terms defined above shall have the meanings set forth therein, whether capitalized in the Requests or not.

3.    You are required to produce all responsive Documents in Your possession, custody, or control, wherever located, Including those in the custody of Your representatives, agents, professionals, affiliates, or anyone acting on Your behalf.

4.    These Requests are continuing requests pursuant to the Bankruptcy Rules. You must supplement any production of Documents that are received, discovered, or created after any of Your responses to the Requests, or that are otherwise within Your possession, custody, or control,

---

[12] Voyager, *Voyager Earn Program*, https://www.investvoyager.com/earn/ (last updated June 1, 2023).
[13] Voyager, Earn Interest on Bitcoin, https://www.investvoyager.com/blog/3-interest-on-bitcoin/ (last updated Oct. 23, 2018, 11:47 EDT).
[14] Voyager, The Voyager Loyalty Program, https://www.investvoyager.com/vlp/ (last visited Aug. 17, 2023).

wherever located, Including those in the custody of Your representatives, agents, professional, affiliates, or anyone acting on Your behalf.

5.      If You object to any part of any Request, You must produce all Documents that are responsive to the portions of the Request to which You do not object.  You also must state the nature of, and grounds for, the objection.

6.      If You cannot comply with any Request in full, You must comply to the fullest extent possible, and You should provide an explanation as to why full compliance is not possible.

7.      Where You assert a claim of privilege or any other grounds for withholding in objecting to a Request and withhold a responsive Document on this basis, You must provide a withholding log setting forth (a) the nature of the privilege being claimed, (b) the type of Document being withheld, (c) the general subject matter of the Document, (d) the date of the Document, and (e) such other information sufficient to permit evaluation of the claim of privilege or other asserted basis for withholding, Including, where appropriate, the author of the Document, the title or subject line of the Document, the addressee of the Document, and, where not apparent, the relationship of the author and the addressee to each other.

8.      If a Document contains both privileged and non-privileged material, You must disclose the non-privileged material to the fullest extent possible without thereby disclosing the privileged material.  If a party asserts a privilege to part of the material contained in a Document, the party asserting the privilege must clearly indicate the portions as to which it claims the privilege.  When a Document has been redacted or altered in any fashion, You must identify as to each Document the reason for the redaction or alteration, the date of the redaction or alteration, and the Person performing the redaction or alteration.  Any redaction must be clearly visible on the redacted Documents.

9.      All Documents produced in electronic format shall be in their native format and shall be OCR (Optical Character Recognition) capable and shall be produced with Relativity compatible load files.

10.      Additional special processing of certain electronically stored information shall be as follows: Microsoft Excel spreadsheet fields shall not be converted to TIFF files and shall be produced in native format.  A placeholder TIFF image shall be created, Bates numbered, and the produced Excel file shall be renamed to match the Bates number on its corresponding placeholder page.  The exception shall be for redacted spreadsheets which shall be produced in TIFF format. Images for the redacted spreadsheets shall display the content in the same manner as if it were printed.  The extractable metadata and text shall be provided for native files, and OCR will be provided for the un-redacted portions of the Documents.

11.      If any Document called for by these Requests has been destroyed or discarded, You must identify that Document in writing by providing the following information: (a) any sender/author and any addressee; (b) any indicated or blind copies; (c) the Document's date, subject matter, number of pages, and attachments or appendices; (d) all Persons to whom the Document was distributed, shown, or explained; (e) its date of destruction or discard, manner of destruction or discard, and reason for destruction or discard; (f) the Persons who authorized and carried out such destruction or discard; and (g) whether any copies of the Document presently exist and, if so, the name of the custodian of each copy.

12.      Any copy of a Document that varies in any way whatsoever from the original or from any other copy of the Document, whether by reason or any handwritten mark or other notation or any omission, is a separate Document and must be produced, whether or not the original of such a Document is within Your possession, custody, or control.  A request for any Document includes

a request for all drafts thereof, and all revisions and modifications thereto, Including any red-lined versions or Document comparisons, in addition to the Document itself. Each Document is to be produced in its entirety, without abbreviation or expurgation.

13.     In producing Documents, all Documents that are physically attached to each other, or segregated or separated from other Documents, when originally located, should be produced as is. If no Document exists that is responsive to a particular request, You must state so in writing.

14.     Except where otherwise specified, the Document Requests seek Documents dated, created, or otherwise obtained on or between January 1, 2018 and the present.

### REQUESTS

1.     All Documents or Communications Concerning the definitions of the capitalized terms in the FBOA, Including what MCB understood them to mean and/or refer to and Documents containing definitions applicable to the FBOA.

2.     The definitions used in or applicable to Your "standard account opening agreements" referenced in Section 1.1 of the FBOA.

3.     All Documents and Communications Concerning the following provisions from the FBOA, Including how You or Voyager interpreted and/or performed these provisions:

    a.  MCB's "monitor[ing of] Client's performance of services hereunder and the results of the Program developed and implemented jointly with Client." (FBOA, Section 6.4(a));

    b.  MCB's "strategic objectives and customer goals." (FBOA Section 6.1);

    c.  "[MCB] hereby appoints Client [i.e. Voyager] as Bank's representative to market, offer [,] and sell crypto currency exchange services, and other related products[.]" (FBOA Section 2.1);

d.  "The Parties agree that Bank exercises primary oversight and control over the Programs . . . ." (FBOA Section 7.1);

e.  "Client agrees that, at Bank's sole discretion, Bank, its authorized representatives, or agents and any government entity with regulatory or supervisory authority over Bank (collectively the 'Auditing Party'), shall have the right to inspect, audit, and examine all of Client's facilities, records and personnel relating to the Program at any time during normal business hours upon reasonable notice." (FBOA Section 4.1);

f.  the definition and scope of the term "Program" as used in the FBOA; and

g.  The definition and scope of the term "representative" as used in Section 2.1 of the FBOA.

4.      MCB's FBO agreements with parties in the Cryptocurrency industry other than Voyager.

5.      All Documents and Communications Concerning the following statement in Section 5(A) of the Voyager Customer Agreement[15], Including how You or Voyager interpreted and/or performed this provision: "Therefore, each customer is a customer of the Bank.  All U.S. regulatory obligations associated with the movement of, and holding of USD in connection with each Account are the responsibility of the Bank."

6.      All Documents and Communications Concerning the matter raised in Nick Rosenberg's June 21, 2021 correspondence to Voyager Concerning MCB's efforts "to ensure the crypto lending part does not introduce risk to the card program."

---

[15] Bankr. S.D.N.Y. Cas No. 22-10943-mew, ECF No. 73 at 26–65 ("Voyager Customer Agreement")

7.      All Documents and Communications Concerning the matter raised in David Jenkins' September 24, 2021 correspondence to Voyager Concerning Steve Ehrlich's "willingness to hear our compliance and legal team out," Including Documents and Communications Concerning MCB's compliance and legal team's Communications with Voyager as referenced in the language quoted above.

8.      All Documents and Communications Concerning MCB's review, revisions, and/or approval of Voyager's marketing materials, Including the marketing materials sent by Janice Barrilleaux of Voyager on May 10, 2022 for MCB's review.

9.      All Documents and Communications Concerning the matter raised in a November 2021 email exchange between You and Voyager where You asked Voyager to change how it described FDIC insurance in the terms and conditions for Voyager's debit card, because MCB found the statement that funds in the debit card account would be FDIC insured as "potentially misleading."

10.     All Documents and Communications Concerning Voyager's debit card program.

11.     All Documents and Communications Concerning Voyager's public statements about FDIC insurance, the safety and security of Voyager's platform, its lending activities, its due diligence of existing or potential borrowers, its compliance with law, and/or its money transmitter licenses, Including Documents discussing whether such statements were true, complete, accurate, and/or misleading.

12.     All Documents and Communications Concerning Voyager's compliance or non-compliance with, or consideration of, statutory or regulatory requirements, Including securities laws, money transmitter licensing requirements, know-your-customer/anti-money-laundering laws, and consumer protection requirements.

13.    All Documents and Communications Concerning the legality of Voyager's Voyager Rewards Program, Voyager Earn Program, Voyager Interest Program, and Voyager Loyalty Program.

14.    All Communications Concerning any statements made by Voyager Concerning FDIC insurance, Including a statement released by MCB on or around July 1, 2022 on its website stating that "FDIC insurance coverage is available only to protect against the failure of Metropolitan Commercial Bank.    FDIC insurance does not protect against the failure of Voyager…or the loss in value of cryptocurrency or other assets."

15.    All Communications between You and state or federal regulators, Including the FDIC, Concerning Voyager, and all Documents provided by You Concerning Voyager to any government agency, regulator, or any other government entity.

16.    All Documents and Communications Concerning the negotiation and execution of the FBOA, Including any drafts thereof exchanged between You and Voyager.

17.    All Documents and Communications Concerning Voyager's lending activities, Including the creditworthiness of Voyager's borrowers, Voyager's lending due diligence, and the functioning and role of Voyager's risk committee(s).

18.    All Documents and Communications Concerning drafts, versions, and copies of Your onboarding questionnaires and related procedures, policies, and internal discussions Concerning customers in the Cryptocurrency industry and customers seeking FBO or trust Accounts.

19.    All Documents and Communications Concerning complaints, customer support requests or inquiries You received from Voyager customers.

20.    Documents sufficient to show when You first learned or suspected that Voyager may file for bankruptcy and/or may be insolvent.

21.    Documents sufficient to show MCB's revenues and collected fees attributable to MCB's relationship with Voyager, Including monies MCB made from having invested the fiat that was deposited into the FBO Account.

22.    All Documents and Communications, Including all drafts, Concerning MCB's decision to exit the "crypto asset related vertical." *See* MCB, Press Release (Jan. 9, 2023) *available at*    [https://investors.mcbankny.com/news-events/news/news-details/2023/Metropolitan-Bank-Holding-Corp.-to-Exit-Crypto-Asset-Related-Vertical/default.aspx](https://investors.mcbankny.com/news-events/news/news-details/2023/Metropolitan-Bank-Holding-Corp.-to-Exit-Crypto-Asset-Related-Vertical/default.aspx).

23.    All Documents and Communications Concerning the termination of Kyle Hingher's employment with MCB as it pertains to Voyager, if any.

24.    All Documents produced by You in any litigations or investigations Concerning Voyager, Including:

      a.    *Robertson et al. v. Mark Cuban, et al*., No. 22-cv-22538 (S.D. Fl. 2022);

      b.    *Roberts et al. v. Ehrlich et al*., No. 22-cv-09590 (S.D.N.Y., 2022);

      c.    *U.S. Bank National Association v. Voyager Digital, LLC*, No. 22-cv-01336 (D. Minn. 2022).

## <u>SCHEDULE B</u>

PLEASE TAKE FURTHER NOTICE that pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedures (the "<u>Bankruptcy Rules</u>") and Rules 45 and 30(b)(6) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 9016 of the Bankruptcy Rules, and Rule 2004-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New York, Voyager intends to conduct a Rule 2004 Examination of the designated corporate representative of MCB remotely via Zoom, at a date and time which the parties may mutually agree or may be ordered by the Court. The examination will be recorded by stenographic means and may also be videotaped.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), MCB shall designate and produce at the deposition those of its officers, directors, managing agents, or other persons who consent to testify on its behalf, about those matters set forth in this notice under the heading "Topic of Examination" (the "<u>Topics</u>") set forth herein based on the information known or reasonably available to MCB. MCB shall designate to Voyager by December 19, 2023 whom it is identifying as its corporate representative for purposes of the deposition.

PLEASE TAKE FURTHER NOTICE that the Plan Administrator reserves his rights under the Bankruptcy Code and any applicable law regarding the subject matter hereof to amend, supplement, and/or modify the Topics in accordance with the Bankruptcy Code, the Bankruptcy Rules, and other applicable law.

## TOPICS OF EXAMINATION

1.      The Agreement(s), Including negotiation and execution of the Agreement(s).

2.      Any work, service, advice, guidance, product or thing or information of value that You have performed or provided for Voyager or any of Voyager's products or services.

3.      Voyager's bankruptcy.

4.      All issues set forth in the Requests.

5.      All steps You took to locate and produce Documents and Communications in response to the Requests.