**MCDERMOTT WILL & EMERY LLP**
Darren Azman
Joseph B. Evans
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone: (212) 547-5400
Facsimile: (212) 547-5444

**MCDERMOTT WILL & EMERY LLP**
Gregg Steinman (admitted *pro hac vice*)
333 SE 2nd Avenue, Suite 4500
Miami, FL 33131-2184
Telephone: (305) 329-4473
Facsimile: (305) 503-8805

*Counsel to Paul R. Hage, in his capacity as Plan Administrator for the Wind-Down Debtor*

MCDERMOTT WILL & EMERY LLP
Charles R. Gibbs (admitted *pro hac vice*)
Grayson Williams (admitted *pro hac vice*)
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201-1664
Telephone: (214) 295-8000
Facsimile: (972) 232-3098

**FOR INFORMATIONAL PURPOSES ONLY. NO RELIEF IS BEING REQUESTED FROM THE COURT AND NO ACTION IS REQUIRED.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| VOYAGER DIGITAL HOLDINGS, INC., *et al.*, | Case No. 22-10943 (MEW) |
| Debtors.[1] | (Jointly Administered) |

**PLAN ADMINISTRATOR'S FIFTH STATUS REPORT TO CREDITORS**

I, Paul R. Hage, in my capacity as the Plan Administrator (the "Plan Administrator") of Voyager Digital Holdings, Inc., *et al.* (collectively, the "Wind-Down Debtor" or "Voyager") under the *Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant*

---

[1] The Wind-Down Debtors in these chapter 11 cases, along with the last four digits of each Wind-Down Debtor's federal tax identification number, are: Voyager Digital Holdings, Inc. (7687); Voyager Digital Ltd. (7224); and Voyager Digital, LLC (8013). The service address for purposes of these chapter 11 cases is 27777 Franklin, Suite 2500, Southfield, MI 48034.

1

to Chapter 11 of the Bankruptcy Code [Doc. No. 1166-1] (the "Plan")[2] hereby submit this *Fifth Status Report to Creditors*.

## INITIAL DISTRIBUTION

1.  The Wind-Down Debtor began the process of making the initial distribution to creditors of Voyager Digital, LLC under the Plan shortly after the May 19, 2023 effective date of the Plan (the "Effective Date"). The first phase of the initial distribution, an in-kind distribution, commenced in late June 2023. Of the approximately $627 million of cryptocurrency available for initial distribution, over $490 million (approximately 79%) was withdrawn by creditors in connection with the in-kind distribution. Upon the completion of the in-kind distribution period, substantially all of the cryptocurrency held by the Wind-Down Debtor was liquidated and converted into cash.

2.  Consistent with the Plan and the Liquidation Procedures, creditors that did not initiate the in-kind withdrawal of their initial distribution within the thirty-day withdrawal period were to receive their initial distribution in U.S. dollars by check. Checks for the balance of the initial distribution were distributed to record holders of general unsecured claims of Voyager Digital, LLC, and were delivered to the address identified in the official claims register.

3.  Between September 15, 2023 and October 31, 2023, the Wind-Down Debtor issued approximately 630,000 checks (worth approximately $130 million) to creditors. To date, creditors have deposited approximately 330,000 checks with a value of approximately $106 million. There are approximately 300,000 uncashed checks outstanding with a total remaining value of $24 million. Of these outstanding checks, approximately 198,000 are for less than $25.

---

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Plan.

4.  As noted in the *Plan Administrator's Fourth Status Report to Creditors* [Doc. No. 1593], the Wind-Down Debtor has developed a portal (the "Creditor Portal") that creditors can use to view relevant information related to their claim, their distribution and the chapter 11 cases generally.[3] The Creditor Portal permits creditors to request a check reissuance in the event that they have not yet received, or have lost, their initial distribution check. To protect creditors from potentially fraudulent requests, the check reissuance request process requires creditors to input certain personally identifiable information to ensure the validity of such reissuance requests. In connection with these requests, creditors may also update their mailing and e-mail addresses.

5.  Between October 24, 2023 and January 3, 2024, the Wind-Down Debtor sent six targeted emails to creditors who had not yet deposited their initial distribution checks.[4] These correspondences notified creditors that their checks had not yet been deposited, encouraged them to deposit their checks or request a replacement check through the Creditor Portal, and reminded them that if they failed to deposit their check, they may not be entitled to future distributions under the Plan.

6.  Based on this targeted outreach, approximately 46,000 creditors have requested the issuance of replacement checks totaling $14.4 million. The Wind-Down Debtor continues to issue replacement checks on a rolling basis.

7.  In the coming weeks, the Wind-Down Debtor will examine the outstanding checks and develop a reasonable, proportionate plan for further outreach to creditors to ensure that as

---

[3] The Creditor Portal can be accessed through the Wind-Down Debtor's website, www.investvoyager.com.

[4] In addition to targeted e-mails, the Wind-Down Debtor has sent 17 e-mails to the entire creditor body since the commencement of the initial distribution.

3

many creditors as possible receive their initial distribution from the Wind-Down Debtor and, as a result, will be eligible for any future distributions from the estate under the Plan.

**CREDITOR COMMUNICATIONS**

8. In addition to providing information to creditors through periodic status reports, we have endeavored to be as responsive as possible to inquiries received from creditors. Since the Effective Date, we have responded to hundreds of inquiries from creditors of the Wind-Down Debtor.

9. Additionally, as mentioned above, the Wind-Down Debtor has created the Creditor Portal, which permits creditors to view important information related to these chapter 11 cases. Through the Creditor Portal, creditors can: (i) obtain their individual claim and distribution information, (ii) obtain access to the periodic status reports filed with the Court; (iii) obtain access to key documents from these bankruptcy cases, (iv) request assistance from the Help Center, and (v) connect to CoinLedger to obtain transaction history free of charge and tax reports at the creditor's expense.

10. Additionally, the Creditor Portal now contains a full, searchable copy of the Bankruptcy Court docket, which can be accessed free of charge. Because the full docket is now available on the Creditor Portal, and in the interest of protecting and preserving estate resources, we have terminated the Stretto website that was maintained by Voyager prior to and after the Effective Date.

11. Creditors are encouraged to utilize the Help Center feature on the Creditor Portal in the event they have questions regarding their claims or the bankruptcy process generally. The Wind-Down Debtor will continue to respond to inquiries submitted via the Help Center as promptly as possible.

12. Additionally, because the Wind-Down Debtor has the ability to communicate with substantially all creditors in these cases via electronic mail, we will continue to send important updates and communications to creditors through e-mail. Creditors desiring to update their e-mail address can do that on the Creditor Portal.

## THREE ARROWS CAPITAL UPDATE

13. The Wind-Down Debtor is one of the largest creditors in the Three Arrows Capital, Ltd. ("Three Arrows Capital") insolvency proceeding that is currently pending before the Eastern Caribbean Supreme Court in the High Court of Justice in the British Virgin Islands. That liquidation process is being led by the court-appointed Joint Liquidators of Three Arrows Capital, Russell Crumpler and Christopher Farmer (the "Joint Liquidators").[5] The Wind-Down Debtor has an agreed upon claim in the Three Arrows Capital proceeding of approximately $675 million.

14. Because of the size of the Wind-Down Debtor's claim, the Wind-Down Debtor is a member of the Three Arrows Capital creditors' committee. In that capacity, we have worked closely with the Joint Liquidators and other significant creditors to try to maximize the return to creditors in that proceeding.

15. As a member of that creditors' committee, we have access to privileged and confidential information about the liquidation process in that case that we are not permitted to disclose. It has been publicly reported, however, that the Three Arrows Capital estate has several assets including, but not limited to, cash, tokens (both liquid and illiquid), investments and litigation claims against third parties including, notably, litigation claims against the founders of Three Arrows Capital, Kyle Davies and Su Zhu. Substantial work is being undertaken to liquidate

---

[5] Public information regarding the Three Arrows Capital insolvency proceeding can be found at the website maintained by the Joint Liquidators: https://3acliquidation.com.

those assets so that an initial distribution can be made to Three Arrows Capital creditors, including the Wind-Down Debtor, as soon as possible.

16. We are hopeful that there will be a material distribution to the Wind-Down Debtor in the Three Arrows Capital proceeding. Due to confidentiality obligations, however, we cannot comment on the reports of projected distribution amounts or the projected timing of any initial distribution. Whatever the distribution from the Three Arrows Capital estate ends up being, Voyager creditors should understand that such distribution is likely to be received over a period of multiple years. Funds received from the Three Arrows Capital estate will be included in a future distribution to creditors from the Wind-Down Debtor.

**FTX/ALAMEDA UPDATE**

17. The Wind-Down Debtor has received several inquiries from creditors regarding the status of the FTX/Alameda litigation. Indeed, I personally receive more inquiries regarding this litigation than any other matter involving the Wind-Down Debtor.

18. On January 30, 2023, Alameda Research, Ltd. ("Alameda"), one of the jointly administered debtors in the chapter 11 bankruptcy cases of FTX Trading Ltd., *et al.* (collectively, "FTX"), filed its *Complaint to Avoid and Recover Preferential Transfers* [FTX Adv. Pro. 23-50084-JTD] seeking to avoid and recover approximately $450 million in payments that Alameda allegedly made to Voyager in the months before FTX's bankruptcy filing. The Wind-Down Debtor has raised several defenses to Alameda's claims. It has also filed affirmative claims against the FTX debtors in the amount of $583,100,000 based on their fraudulent conduct with respect to Voyager.

19. Prior to the Effective Date, the parties agreed to mediate these and other disputes with a highly respected former bankruptcy judge, Hon. Shelley C. Chapman, and such mediation

is ongoing. The Wind-Down Debtor first met in person with the mediator and FTX's professionals in late September 2023. We have had several follow up conversations since then.

20. While mediation can be an effective tool for quickly and efficiently resolving disputes, for complex matters such as this, mediation frequently takes several months or longer. That is particularly true where, as here, the disputes involve hundreds of millions of dollars in claims. We anticipate that there will be additional mediation sessions in the coming months as the parties continue to exchange documents and flesh out the legal issues, which are complex and, in some cases, novel.

21. At the end of the day, a mediated settlement with FTX may not be achievable, in which case the parties will need to litigate their disputes. All involved are mindful that litigation would take many months or even years (particularly when one considers the delay that might result from appeals of any judgments). Litigation of these disputes would be expensive and, as with all litigation, the outcome would be uncertain. We would very much like to avoid litigation if possible, but not at the expense of walking away from merit worthy claims and defenses. There is simply too much at stake for Voyager creditors.

22. FTX recently filed the *Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [FTX Doc. No. 4861] (the "FTX Plan") in their bankruptcy cases. The FTX Plan may have significant implications on the disputes between the parties. The Wind-Down Debtor may end up filing and prosecuting an objection to confirmation of the FTX Plan. Indeed, we filed a statement to that effect in the FTX bankruptcy cases on December 21, 2023. *See Statement of the Voyager Wind-Down Debtor Regarding the Third Motion of Debtors for Entry of an Order Extending the Exclusive Periods During Which Only the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof* [FTX Doc. No. 5081].

23. We appreciate creditors' desire for more detailed information about the status of the FTX mediation. The resolution of the claims that are being dealt with in that mediation will materially impact the ultimate recovery for creditors of the Wind-Down Debtor. Due to confidentiality requirements necessarily associated with the mediation, however, there is not much more that can be shared about that process at this time.

### D&O INSURANCE MEDIATION

24. Creditors will recall that the Plan contained a settlement that released substantially all of the claims that the Wind-Down Debtor might otherwise pursue against Voyager's former insiders, including its former Chief Executive Officer Stephen Ehrlich. As part of that settlement, Mr. Ehrlich was required to pay approximately $1.9 million, less applicable taxes, to the bankruptcy estate. That payment was received in July 2023.

25. One notable carve out from the release provided for under the Plan is the Wind-Down Debtor's ability to pursue claims against insurers related to certain insider actions and conduct detailed in the *Investigation Report of the Special Committee of the Board of Directors of Voyager Digital, LLC* [Doc. No. 1000] and the *Official Committee of Unsecured Creditors' Investigative Report Concerning Loans Made to Three Arrows Capital* [Doc. No. 1112]. The preserved claims include breach of fiduciary duty claims related to, among other things, the Three Arrows Capital loan transactions. The preserved claims also include fraudulent transfer claims related to the diversion, in the days before the commencement of these bankruptcy cases, of $15.6 million from the Voyager estate to an insurer to purchase additional directors and officer insurance to cover future defense costs of Voyager's directors and officers.

26. The Wind-Down Debtor has prepared draft complaints for purposes of pursuing the aforementioned claims. In lieu of filing those complaints, we have agreed to mediate the claims

with the insurers. The parties selected David Murphy, a highly respected New York-based attorney, to serve as their mediator. That mediation started in late November 2023. Unlike the FTX mediation discussed above, which will likely continue for many more months, we believe we are nearing a conclusion in the D&O insurance mediation. Either a settlement will be achieved in short order, or we will be filing the complaints and moving forward with litigation. Again, because of confidentiality requirements associated with the mediation, there is not much more that we are permitted to share about this process at this time.

## FEDERAL TRADE COMMISSION SETTLEMENT

27. The Federal Trade Commission (the "FTC") has been investigating claims against Voyager and Mr. Ehrlich for over a year. The claims primarily relate to allegations that false or misleading statements were made to Voyager customers regarding the existence of Federal Deposit Insurance Corporation ("FDIC") insurance for deposited funds.

28. We have spent many months negotiating a resolution of these claims with the FTC. Those negotiations resulted in the filing of a *Complaint for Permanent Injunction, Monetary Relief and Other Relief* (the "FTC Complaint") by the FTC against the Wind-Down Debtor and Mr. Ehrlich in the United States District Court for the Southern District of New York on October 12, 2023 [Case No. 23-cv-08960].

29. Contemporaneous with the filing of the FTC Complaint, the FTC and the Wind-Down Debtor submitted a stipulated order to the court resolving the FTC's claims against the Wind-Down Debtor.

30. On November 27, 2023, the *Stipulated Order for Permanent Injunction, Monetary Judgment, and Other Relief* [the "Stipulated Order"] was entered by the United States District Court for the Southern District of New York. Among other things, the Stipulated Order enjoins

the Wind-Down Debtor from conducting certain business operations and disclosing nonpublic personal information of creditors to third parties. It also contemplates that the Wind-Down Debtor will cooperate with the FTC going forward by, among other things, responding to requests for information related to the FTC's ongoing litigation with Mr. Ehrlich, which litigation was not impacted by the settlement.

31.     The Stipulated Order also resolves the FTC's $1.6 billion proof of claim filed in these bankruptcy proceedings. The Stipulation allows the FTC's claim against the Wind-Down Debtor in its entirety but suspends the FTC's right to receive a distribution on account of such claim so long as the Wind-Down Debtor complies with certain limited obligations, which we fully expect to comply with. For the avoidance of doubt, because the FTC's claim against the Wind-Down Debtor is suspended, the Stipulated Order will not impair creditor distributions.

## OTHER LITIGATION CLAIMS

32.     Consistent with my duties under the Plan, we are investigating potential litigation claims against a number of third parties.

33.     In furtherance of these investigations, the Wind-Down Debtor is seeking to compel the production of documents and the scheduling of examinations from certain parties under Rule 2004 of the Federal Rules of Bankruptcy Procedure. Rule 2004 examinations are a common tool utilized by bankruptcy fiduciaries for purposes of investigating potential causes of action that can be pursued for the benefit of creditors. It should be noted that the fact that the Wind-Down Debtor has requested information from a third party does not necessarily mean that claims will ultimately be pursued against such parties. It simply means that, based on our review to date of Voyager's history, we believe that such parties may have access to information that should be reviewed and

investigated. We will continue to work with the identified third parties and others to agree on a reasonable document production and examination schedule over the coming months.

34. The investigation of potential litigation claims against third parties is in its early stages. It would be premature to speculate on what claims will ultimately be pursued and what impact such claims might have on creditor recoveries.

## VENTURE PORTFOLIO AND OTHER ASSET LIQUIDATIONS

35. Prior to the commencement of these bankruptcy cases, Voyager acquired investment interests in a number of entities. The Wind-Down Debtor also held various assets that were used by Voyager in the operation of its business.

36. Since the Effective Date, the Wind-Down Debtor has worked to market and sell many of these assets for the benefit of creditors of the estate. Collectively, such sale transactions have resulted in the recovery of over $2.7 million in sale proceeds for creditors. The Wind-Down Debtor will continue to engage in discussions with prospective purchasers regarding the sale of various assets held by the estate.

37. Additionally, the Wind-Down Debtor is in the process of liquidating various additional cryptocurrency assets that have been identified or that, due to liquidity or other logistics considerations, have not yet been monetized.

## DATA BREACH INVESTIGATION

38. In July 2023, the Wind-Down Debtor started receiving reports from creditors who had received communications from scammers purporting to be Voyager. These communications included information about the claimants that was sealed in this case and not otherwise publicly

available.[6] Regrettably, data breaches and phishing schemes by fraudulent actors have been a consistent problem in many of the cryptocurrency bankruptcy proceedings filed over the past two years.

39. The Wind-Down Debtor, with the assistance of specialized outside professionals, continues to investigate the potential source of these issues. We have not yet determined how the perpetrators obtained creditor information. However, based upon the reports that the Wind-Down Debtor has received to date, we have narrowed the likely source of information to certain vendors. The Wind-Down Debtor has requested information from these vendors about any recent security incidents that they may have experienced. The Wind-Down Debtor remains committed to investigating this issue and will provide an update to creditors as more information becomes available.

40. **AS A REMINDER, ALL COMMUNICATIONS FROM THE WIND-DOWN DEBTOR WILL BE SENT FROM THE INVESTVOYAGER.COM DOMAIN ONLY. PLEASE BE DILIGENT IN REVIEWING VOYAGER-RELATED COMMUNICATIONS AND CONFIRM THAT THEY WERE SENT FROM @INVESTVOYAGER.COM ONLY. IN NO CIRCUMSTANCE SHOULD ACCOUNT OR WALLET INFORMATION BE PROVIDED IN RESPONSE TO A VOYAGER-RELATED COMMUNICATION.**

41. **AS NOTED, THE WIND-DOWN DEBTOR HAS LIQUIDATED AND CONVERTED TO CASH SUBSTANTIALLY ALL OF THE CRYPTOCURRENCY THAT IT PREVIOUSLY HELD. THE VOYAGER APP WAS SHUT DOWN IN MID-AUGUST. ALL FUTURE DISTRIBUTIONS TO CREDITORS WILL BE MADE BY CHECK ONLY**

---

[6] We continue to report the information that we have learned about these incidents to the appropriate law enforcement authorities. Moreover, we have undertaken a number of actions to ensure the security of customer information held by the Wind-Down Debtor.

**AND ADVANCE NOTICE OF ANY SUCH DISTRIBUTIONS WILL BE PROVIDED IN A STATUS REPORT FILED WITH THE COURT. THE WIND-DOWN DEBTOR WILL NOT ASK CREDITORS FOR ACCOUNT OR WALLET INFORMATION AND, THUS, CREDITORS SHOULD BE HIGHLY SUSPICIOUS OF ANY SUCH COMMUNICATIONS.**

## CONCLUSION

42. The purpose of this report is to provide a high-level update to creditors regarding the status of the liquidation of the Wind-Down Debtor consistent with the Plan. The foregoing is not intended to be a comprehensive update of all of the matters that the Wind-Down Debtor and its professionals have been working on. We will prepare and file additional status reports to creditors as and when more relevant information becomes available.

Respectfully submitted,

By: /s/ Paul R. Hage
Paul R. Hage, solely in my capacity as
the Plan Administrator for the Voyager
Wind-Down Debtor

Dated: January 3, 2024